Michael A. Williams
mwilliams@williamsdirks.com
Matthew L. Dameron
matt@williamsdirks.com
WILLIAMS DIRKS DAMERON LLC
1100 Main Street, Suite 2600
Kansas City, Missouri 64105

*Counsel for Plaintiff in Bissell v. Hyundai Motor America, et al., No. 8:22-cv-02298 (W.D. Mo.)*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL CASES | Case No.: 8:22-ML-3052 JVS(KESx)<br><br>**APPLICATION OF MICHAEL A. WILLIAMS FOR LEADERSHIP APPOINTMENT**<br><br>Date:   February 7, 2023<br>Time:  9:00 a.m.<br>Place:  411 W. Fourth Street,<br>         Santa Ana, CA 92701<br>         Court Room 10C |
|---|---|

Michael A. Williams and his firm, Williams Dirks Dameron LLC, are counsel in one of the transferee actions styled *Bissell v. Hyundai Motor America Corporation*. In Williams, the Court is presented with a candidate that is well-qualified to tackle complex litigation while also fulfilling the judiciary's goal of advancing diverse candidates into MDL leadership positions.

Accordingly, Williams respectfully requests that the Court appoint him to leadership in the MDL. In support of his Application, Williams respectfully submits the following:

## LEGAL STANDARD

"The judge's primary responsibility in the selection process is to ensure that the lawyers appointed to leadership positions are capable and experienced and that they will responsibly and fairly represent all plaintiffs, keeping in mind the benefits of diversity of experience, skills, and backgrounds." Bolch Judicial Institute, Duke Law School, *Guidelines and Best Practices for Large and Mass-Tort MDLs*, Best Practice 3C at p. 38 (2d ed. Sept. 2018) ("Bolch Guidelines").[1]

Section 10.2 of the *Manual for Complex Litigation, Fourth* also provides guidance to courts that are contemplating the appointment of lead counsel in multidistrict litigation, and section 40.22 outlines the duties of those counsel. MANUAL FOR COMPLEX

---

[1] Available at https://scholarship.law.duke.edu/bolch/5/ (last accessed January 18, 2023).

LITIGATION, FOURTH (2004) ("the Manual" or "MCL"). Section 10.224 of the Manual also sets forth several concerns that a court should consider, including the qualifications of counsel, counsel's competence for assignments, and "whether designated counsel fairly represents the various interests in the litigation . . ." *Id.* at § 10.224.

As set forth herein, all these factors weigh in favor of appointing Williams to leadership in the pending MDL.

## SUGGESTIONS IN SUPPORT OF WILLIAMS'S APPLICATION

### I. Williams Is Qualified to Serve in Leadership

Williams has been practicing law for over twenty years, primarily in federal courts in the Midwest and across the country. After graduating from law school, Williams worked as an attorney for nearly ten years at a major Midwest law firm (then Lathrop Gage) defending large and medium-sized corporations across the United States. In that role, he defended a variety of claims, including class actions, and first-chaired trials in federal courts. The firm elevated him to the partnership in 2006.

In 2010, Williams formed his own law firm, which was the precursor to his current firm Williams Dirks Dameron LLC ("WDD"). WDD was formed in March 2014 and has maintained the same partnership configuration since then. It focuses on complex and class action litigation in federal courts. Since its formation, the firm has successfully litigated several class actions and complex matters on behalf of vehicle owners, consumers, and employees.

A brief list of representative cases include:

- Co-lead counsel in certified antitrust class action on behalf of home sellers in Missouri concerning real estate commissions. The case is set for trial in October 2023; the plaintiffs have successfully defended summary judgment and obtained class certification. *Burnett, et al. v. National Association of Realtors, et al.*, No. 19-332 (W.D. Missouri).

- Lead counsel in a private nuisance case on behalf of property owners against a water company. The matter resolved one week before the scheduled trial, and the plaintiffs successfully litigated class certification (including successfully defending class decertification), several intermediary appellate writs, expert matters, and dispositive motions. The certified class included over 6,000 homeowners in the Kansas City metropolitan area. *Strohm, et al. v. Missouri-American Water Co.*, No. 16AE-CV01252 (Platte County, Missouri).

- Lead counsel in a nationwide class and collective action against CVS Caremark and related entities for underpayment of wages. The matter settled after five years of litigation. *Woods, et al. v. Caremark PHC, LLC, et al.*, No. 14-583 (W.D. Missouri).

- Counsel for the City of Kansas City, Missouri and Jackson County, Missouri in public nuisance litigation related to the manufacture and distribution of opioids. Williams and WDD were retained by both public entities after a rigorous vetting

and application process. *In re National Prescription Opiate Litigation*, No. 17-MD-2804 (N.D. Ohio).

These cases demonstrate that WDD has the professional background to prosecute complex litigation, as well as the wherewithal to "go the distance" in large cases.

The firm has also pursued litigation on behalf of vehicle owners, including: *Hays v. Nissan North America, Inc.*, No. 17-353 (W.D. Missouri) (allegedly defective floorpans in Nissan Altima vehicles); *Simerlein, et al. v. Toyota Motor Corp., et al.*, No. 17-1091 (D. Conn.) (allegedly defective sliding doors); and *Buchholz v. General Motors LLC*, No. 23-6004 (W.D. Missouri) (allegedly defective piston and piston ring assemblies). In *Hays*, WDD was co-lead counsel and successfully:

- defeated initial dispositive motions and subsequent motions for summary judgment;

- marshaled experts related to the alleged defect and the plaintiffs' damages theory, and successfully defended those experts against motion practice under *Daubert*;

- obtained class certification and successfully defended that certification under Rule 23(f)—the class included approximately 70,000 current and former vehicle owners; and

- navigated the matter to a successful settlement that obtained meaningful financial and injunctive relief for members of the class.

In addition to this relevant experience concerning vehicle defects, Williams has previously been appointed to serve in MDL leadership in a matter concerning allegedly defective pet collars. *See In re Seresto Flea and Tick Collar Marketing, Sales Practices and Products Liability Litigation*, No. 21-4447 (N.D. Ill.).

Thus, Williams and his firm have the relevant background and experience to successfully serve in leadership of this MDL.

Additionally, Williams does not have a multitude of other professional commitments that would dilute his service to this MDL. He maintains one other MDL appointment and, in this respect, he is not over-extended with demanding multidistrict litigation.[2] Thus, while he is skillful at prosecuting complex litigation, he maintains a docket that enables him to focus his efforts in a meaningful and productive way without the risk of delegation or distraction. *See* Bolch Guidelines, Best Practice 3C(iii) at p. 39 ("The transferee judge should strongly consider requiring applicants to identify ongoing professional commitments such as other lead-counsel appointments that will compete for

---

[2] Williams is not a "repeat player" in MDL leadership—a practice criticized by some authorities. "[W]hen the same group of lawyers from the same group of law firms is tapped repeatedly [] there is not only decreased diversity, but also a cost to the legal profession as a whole: New lawyers cannot gain valuable experience in this increasingly important area of law." Hon. Stephen R. Bough & Elizabeth Chamblee Bunch, *Collected Wisdom on Selecting Leaders and Managing MDLs*, Judicature Vol. 106 No. 1 69, 71; *see also* Hon. Stanwood J. Duval, Jr., *Considerations in Choosing Counsel for Multidistrict Litigation*, 74 La. L. Rev. 391, 392-93 (2014) ("My colleagues and I often see the same attorneys appointed to all such committees. This repetition is not necessarily a good thing.").

their attention and resources, because some courts have found that prominent attorneys may obtain an appointment and then delegate their principal duties to subordinates.").[3]

Finally, Williams has the temperament for serving in a leadership position. "The added demands and burdens of complex litigation place a premium on attorney professionalism, and the judge should encourage counsel to act responsibly. . . . Counsel need to fulfill their obligations as advocates in a manner that will foster and sustain good working relations among fellow counsel and with the court." MCL § 10.21. In 2022, Williams co-chaired and moderated the Kansas City Metropolitan Bar Association's Civility Summit—a symposium of attorneys and judges focused on professionalism and civility in the legal profession. Additionally, he was awarded the "Congenial Counselor Award" by the local bar association in 2009. Thus, Williams is recognized by his peers for his professionalism and courtesy—traits that are critical for managing large, complex litigation with a wide variety of stakeholders, and for fostering positive relationships with co-counsel and adverse counsel.

In sum, Williams possesses not just the aptitude for a leadership position, but also other important characteristics such as temperament, the ability to work well with others,

---

[3] The other major case on Williams's docket is currently set for a jury trial during the week of February 6, 2023. Thus, although Williams may not be able to personally attend the Court's initial conference scheduled for February 7, he nonetheless anticipates being available for all future hearings after the conclusion of his trial.

and the docket capacity to prioritize the litigation and advance it. In this respect, Williams is more than qualified to serve in leadership.

## II. Williams Will Bring Diverse Perspectives to Leadership

If selected, Williams will bring diverse perspectives and viewpoints to the litigation in a variety of areas:

*First,* as an African American, Williams can offer the perspective of a historically underrepresented community. This is particularly important where Hyundai / KIA purchasers account for about 10% of the African American vehicle market,[4] and Hyundai has made concerted and overt efforts to market to African American purchasers. *See* Timothy Boyer, *Hyundai Appeals to Black Car Shoppers*, Torque News (Oct. 27, 2021).[5] Thus, a substantial portion of the claimants in the MDL likely will be from the African American community.

*Second,* Williams can offer the perspective of a former defense attorney and partner at a major defense firm; in this way, his appointment would enhance cognitive diversity. "When courts consider applications, they should aim to compile the best team—not the best individual lawyers. In doing so they should keep size and skills in mind. . . . As to

---

[4] *See Which Brands Most Attract African-American Buyers*, Auto Remarketing (April 27, 2011), available at https://www.autoremarketing.com/content/trends/which-brands-most-attract-african-american-buyers (last accessed January 18, 2023).

[5] Available at https://www.torquenews.com/14093/hyundai-appeals-black-car-shoppers (last accessed January 18, 2023).

skills, the goal is to appoint a small, cognitively diverse group whose members possess different information [], knowledge, and tools. . . . Cognitive diversity, on the other hand, considers whether people have diverse knowledge and expertise stemming from training, experiences, and, yes, identity."[6] Williams's career background as a defense attorney accomplishes the goal of appointing a "cognitively diverse leadership team" with differing "knowledge, skills, information, and tools."[7]

*Finally,* Williams's practice in the Midwest also enhances cognitive diversity, particularly for a case with significant ties to the Midwest. In their brief before the JPML, Defendants highlighted the Midwestern links to the litigation, noting that "the vast majority of the actions had already been filed around the Midwest" and that the cases are "clustered" in the Midwest.[8] Thus, given the litigation's concentration in the Midwest, appointing counsel from the Midwest would further enhance any leadership slate.

### III. Williams Renders Service to the Judiciary and the Profession

Courts and attorneys in the Midwest have turned to Williams to serve in volunteer leadership positions in a variety of instances. For example:

---

[6] Elizabeth Chamblee Burch, *Diversity in MDL Leadership: A Field Guide*, 89 UMKC L. Rev. 841, 851-52 (Summer 2021).

[7] *Id.* at 852.

[8] *In re Kia Hyundai Vehicle Theft Litigation*, MDL No. 3052 (JPML Sept. 23, 2022) at Defendants' Response to Motion for Transfer and Consolidation [Doc. 17] at pp. 6 and 9.

- The U.S. District Court for the District of Kansas appointed Williams to serve as the Chair of its Magistrate Selection Panel—a group of attorneys charged with vetting applicants for a vacant magistrate judge position and advancing finalists' names to the District's Article III judges for consideration.

- The U.S. District Court for the Western District of Missouri appointed Williams as the Court's representative to the Program Committee for the 2021 Eighth Circuit Judicial Conference.

- The Missouri Supreme Court appointed Williams to its Commission on Racial and Ethnic Fairness.

- The Missouri Supreme Court appointed Williams to serve as Chair of the Disciplinary Counsel for Division IV.

- Attorneys in the Sixteenth Judicial Circuit (the Circuit encompassing the majority of the Kansas City metropolitan area) elected Williams to serve on the Judicial Selection Commission—a panel of attorneys that vet judicial applicants and advance selected names to Missouri's governor.

- Williams previously served as an adjunct professor at the University of Missouri School of Law.

- Williams previously served as the first African American member of the Board of Governors for the Kansas Bar Association.

- In 2020, Missouri's Governor Mike Parson appointed Williams to serve on the Board of Curators for the University of Missouri System—a four campus system with an annual budget of nearly $4 billion.

A full list of Williams's appointments and service is attached hereto as Exhibit A, but these highlights demonstrate that Williams's peers and local courts regularly turn to him for service in leadership positions.[9]

### IV. Williams and WDD Have Access to Sufficient Resources

Williams and his firm have access to sufficient resources to assist with prosecuting the litigation. WDD is well-capitalized with significant revenues, and the firm is prepared to commit its resources to pursuing the litigation. The firm does not rely on third-party litigation funding sources, nor does it have any extraordinary financing agreements with other law firms or litigation funding companies.

### CONCLUSION

As set forth herein, Williams has the necessary qualifications and skills to serve in leadership, as well as the ability to bring critical diversity to the litigation. Accordingly, Williams respectfully requests that the Court appoint him to a leadership position in the pending MDL.

---

[9] Williams invites the Court to contact any federal judges in the Western District of Missouri or the District of Kansas as references, including Senior Judge Julie Robinson (Kansas), Chief Judge Beth Phillips (W.D. Missouri), and Judge Brian C. Wimes (W.D. Missouri).

DATED: January 23, 2023  Respectfully Submitted,

WILLIAMS DIRKS DAMERON LLC

/s/ Michael A. Williams
Michael A. Williams
Matthew L. Dameron
1100 Main Street, Suite 2600
Kansas City, Missouri 64105
Telephone: (816) 945-7110
Facsimile: (816) 945-7118
mwilliams@williamsdirks.com
matt@williamsdirks.com

*Counsel for Plaintiff in Bissell v. Hyundai Motor America, et al., No. 8:22-cv-02298 (W.D. Mo.)*

# CERTIFICATE OF COMPLIANCE

I, Michael A. Williams, Counsel for Plaintiff in *Bissell v. Hyundai Motor America, et al., No. 8:22-cv-02298 (W.D. Mo.)*, certify that the foregoing application contains 2,466 words which complies with the word limit of L.R.11-6.1. I further certify that on this 23rd day of January 2023, I electronically filed the foregoing document using the CM/ECF system which will send notification of such filing to the e-mail addresses registered in the CM/ECF system, as denoted on the Electronic Mail Notice List.

/s/ Michael A. Williams
Michael A. Williams
WILLIAMS DIRKS DAMERON LLC

*Counsel for Plaintiff in Bissell v. Hyundai Motor America, et al., No. 8:22-cv-02298 (W.D. Mo.)*