Kenneth B. McClain
kbm@hfmlegal.com
HUMPHREY FARRINGTON & McCLAIN, P.C.
221 W. Lexington Ave., Suite 400
Independence, MO 64050
Telephone: (816) 836-5050
Facsimile: (816) 836-8966
*Initial Conference Counsel and Counsel for Plaintiffs Bendorf, Bendorf, Jones, Moon, Fruhling, Mason, Burke, Brady, Price, Bodie, Lui, Hall, Pue, Kozmic, Loburgio, Loburgio, Flannagan, Mitchell, Simmons, Denney, Cole, Day, Plaza, Yeghianian, and Zanmiller*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 8:22-ML-3052 JVS(KESx) <br><br> APPLICATION OF KENNETH B. McCLAIN FOR POSITION OF CO-LEAD COUNSEL FOR PLAINTIFFS |
| This document relates to: <br> ALL CASES | Date:   February 7, 2023 <br> Time:   9:00 a.m. <br> Place:  411 W. Fourth Street, <br>             Santa Ana, CA 92701 <br>             Court Room 10C |

To The Honorable James V. Selna:

Please accept my application for appointment to the position of Co-Lead Counsel for Plaintiffs. In addition, I am applying to serve as the Co-Lead Counsel representative on one, or more, of the subcommittees as established by the Court. Specifically, I would respectfully submit my application for appointment as the Co-Lead Counsel member of the Plaintiffs' Expert Witness Discovery Subcommittee.

In its Order No. 1, the Court identified four criteria for counsel appointments: 1) knowledge and experience in prosecuting complex litigation, including class actions; 2) willingness to commit to a time-consuming process; 3) ability to work cooperatively with others; and (4) access to sufficient resources to prosecute. As demonstrated in more detail below, I am exceptionally qualified in all four criteria.

First, the background, experience, and resources that I, and my firm, bring to this litigation will benefit the Kia and Hyundai vehicle owners that have been adversely impacted by decisions these companies made that left customers vulnerable to having their cars and property stolen.

My knowledge and experience in prosecution of complex litigation is substantial. During my forty-year career, I have had the fortune to work on a wide variety of complex litigation matters, including multidistrict litigation (MDL) class actions, complex products liability cases, commercial litigation, ERISA, environmental, and property damage claims. I would bring this diversity of experience to the role of Co-Lead Counsel in these cases. In total, I have tried over 500 cases, involving thousands of plaintiffs, in state, federal, and arbitral forums.

As to the Court's second criteria, I am both willing, and able, to devote myself to this litigation. During my career, I have demonstrated that both I, and my firm, will devote the time and resources necessary to successfully prosecute any claim we pursue.

Third, as I will outline below, I have worked on numerous cases where multiple law firms were needed to reach a favorable outcome for the clients. In fact, I am

1

APPLICATION OF KENNETH B. McCLAIN FOR POSITION OF
CO-LEAD COUNSEL FOR PLAINTIFFS

No. 8:22-ML-3052 JVS(KESx)

currently or recently involved in several cases where a consortium of lawyers worked together for the benefit of our clients.

Finally, I am supported by a firm of 15 lawyers and more than 15 staff members. We have successfully pursued cases against the largest and most powerful companies and industries in the world. Our firm has the financial and individual resources to draw on to prosecute these claims against Kia and Hyundai and to do so in an efficient and timely manner.

## BIOGRAPHY

By way of background, I graduated from the University of Michigan Law School in 1982, where I served as an Editor of the Journal of Law Reform. I have been with my current law firm since 1985 where I have enjoyed a diverse trial law practice in areas such as class action litigation (consumer protection, property damage and employment discrimination), tobacco litigation (personal injury claims and governmental claims for reimbursement of medical expenses), asbestos litigation (property diminution and personal injury), toxic torts (our firm literally pioneered litigation involving workers who developed "popcorn lung" from exposure to the butter flavoring diacetyl used in foods such as microwave popcorn) and general negligence or products liability personal injury claims. The profile section of our firm website and a copy of my résumé are attached as exhibits to this application.

## DISCUSSION

**1. Experience in Prosecution of Complex Litigation, Including Class Action Claims**

From the very beginning of my career, I have been involved in cases that were both factually and legally complex. Due to my successes, the geographic and subject-matter scope of my practice has continued to expand since that time. In my career I have tried cases on behalf of plaintiffs in 18 different states.

- ***In Re: Dollar General Corp. Motor Oil Marketing and Sales Practices Litigation*** (**Nationwide Class Action**)

Specifically with respect to MDL class action litigation, from 2016-2021 I served as Liaison Counsel for the plaintiffs in the case of *In Re: Dollar General Corp. Motor Oil Marketing and Sales Practices Litigation,* MDL No. 2709, that was pending before the Honorable Gary A. Fenner in the Western District of Missouri. The *Dollar General* case involved claims that Dollar General Stores sold motor oil products that were obsolete and unfit for vehicles manufactured after 1988. In addition to my role as Liaison Counsel, I was heavily involved in fact and expert witness discovery. Finally, I led the plaintiffs' settlement negotiations that resulted in a nationwide class settlement that included both monetary relief to the class and injunctive relief aimed to prevent Dollar General Stores from engaging in future similar conduct.

- ***DST Systems, Inc. ERISA Litigation***

While the majority of litigation in the United States was halted during the COVID-19 pandemic, I personally tried hundreds of AAA arbitrations in groups against DST Systems, Inc. for violations of fiduciary duty under ERISA using the ZOOM videoconference platform. From 2020 to 2021, I led a group of four law firms that successfully arbitrated claims in favor of our clients resulting in more than $35 million in awards. I was lead trial counsel for over 300 arbitrations and enjoyed a success rate of more than 80 percent.

- ***Williams et al. v. Sprint/United Management Co.*** (**Nationwide Class Action**)

I served as lead counsel in *Williams et al. v. Sprint/United Management Co.*, Case No. 03-02200-JWL in the District of Kansas that was presided over by the Honorable John W. Lungstrum. *Williams* involved nearly 1,700 workers claiming age discrimination. In 2007, we reached a settlement that provided $57 million in relief paid to the class (this amount does not include attorney fees). I worked cooperatively with co-counsel and opposing counsel to fashion a settlement beneficial to all class members

while ensuring that retirement and pension benefits were unaffected by the settlement reached.

- ***Sanford v. Centurytel of Missouri, LLC* (Missouri State Class Action)**

In 2018, in a case where I was lead counsel, our firm obtained final approval of a $7.5 million settlement with Centurytel of Missouri to reimburse customers for more than 80% of disputed Universal Service Fund Charges that plaintiffs claimed were improperly charged by a cable television and internet service provider. The *Sanford* case was presided over by the Honorable Jeff Harris in the Boone County, Missouri, Circuit Court I received court approval of a settlement that provided class members nearly complete relief from these improper charges, despite the fact that the defendant argued the service agreement included both an enforceable arbitration clause and a clause that prevented claims to being brought as a class action.

- ***In Re: Blitz U.S.A., Inc. et al.,***

*In Re: Blitz U.S.A., Inc., et al.,* involved numerous claims of burn injuries resulting from defectively designed plastic gas cans sold manufactured and distributed by *Blitz, U.S.A., Inc.* This case was presided over by the Honorable Peter J. Walsh (retired) of the United States Bankruptcy Court for the District of Delaware. I became involved in the *Blitz* litigation in 2013, and, within approximately nine months, I was successful in negotiating and coordinating settlement of more than 200 personal injury cases with a settlement value exceeding $200 million. Bringing these cases to conclusion was possible because of my ability to work not only with the 50 counsel representing injured persons and families – but also because I had the ability to work with over 70 opposing counsel representing insurance carriers to craft settlements beneficial to my clients.

- ***Demetre v. HMS Holdings Group***

In 2017, I led a team of four law firms that obtained a $60 million verdict for breach of contract in favor of our clients who suffered economic losses following the sale of their medical data software company. The defendant failed to use "best efforts" to generate profits that would have flowed to our clients as part of "earn-out payments"

under the purchase agreement. The *Demetre* case was tried in the Supreme Court of the State of New York in the County of New York, before the Honorable Saliann Scarpulla.

- **Asbestos Removal Litigation**

I was one of the first lawyers in the United States to pioneer asbestos litigation for owners of building seeking damages for costs of abatement. In 1986, I tried the first successful case of its type for a local school district. After that time, I tried similar cases in ten different states in both federal and state courts. With respect to this litigation, I would highlight the following:

  o *Michigan School District Class Actions*

The Michigan School District asbestos class action involved claims against more than a dozen defendants in separate trials on behalf of 300 school districts in the State of Michigan. In total, I succeeded in recovering more than $50 million on behalf of the school districts.

  o *THS Northstar v. W.R. Grace & Co.*

In 1993, I obtained a $19.7 million verdict for costs associated with asbestos abatement and removal for owners of the Northstar Center in Minneapolis, Minnesota. The Northstar Building case was before the late Honorable Robert G. Renner of the United States District Court for the District of Minnesota.

  o *City of Kansas City v. Keene Corp.*

The *KCMO v. Keene Corp.* case involved claims for expense to abate asbestos contamination at the Kansas City International Airport. In 1991, I obtained verdict of more than $14 million in compensatory and punitive damages in favor of the City of Kansas City.

In addition, I represented school districts and other property owners across the United States, recovering in excess of $100 million.

- *Asbestos Personal Injury Litigation*

In cases consolidated before the West Virginia Mass Litigation Panel, I was part of a three-lawyer team that represented more than 7000 individuals with claims for personal

injury from asbestos exposure. Following a successful plaintiff's verdict in a liability trial, confidential settlements were reached with all defendants.

- ***Department of General Services v. Monsanto Corp. ("PennDOT")***

In 2000, I obtained a $90 million verdict for the Commonwealth of Pennsylvania for damages resulting from PCB contamination in the Pennsylvania Transportation & Safety Building in Harrisburg, Pennsylvania. The PennDOT case was presided over by the late Honorable Charles P. Mirarchi, Jr. On re-trial the PennDot case was before the Honorable Robert Simpson (retired) in the Pennsylvania Commonwealth Court.

- ***Petrovic v. Amoco Oil Co.* (Class Action)**

In 1999, in *Petrovic v. Amoco Oil Co.*, I negotiated a settlement for local Missouri property owners as well as two local municipalities for pollution caused by an oil refinery which provided payment to owners far in excess of the fair-market value of the property. *Petrovic* was presided over by the Honorable Fernando J. Gaitan, Jr., of the United States District Court for the Western District of Missouri.

- ***Diacetyl Litigation***

In 2000, the National Institute of Occupational Safety and Health (NIOSH) investigated an outbreak of lung disease among workers at a microwave popcorn factory in Jasper, Missouri, who worked with a butter flavoring ingredient called diacetyl. By 2004, our firm had investigated and successfully brought to trial the first case involving a worker injured from exposure to this toxic chemical. In 2004, I obtained a verdict of $20 million for an injured worker in *Peoples v Bush, Boake Allen* in the Circuit Court of Jasper County, Missouri.

Following the success in the *Peoples*, case, I continued to try cases on behalf of individuals injured by diacetyl exposure, successfully trying to verdict *McNeely v. Bush, Boake Allen, et al.,* ($15 million) in Jasper County, Missouri; *Solis v. BASF Corporation* ($32 million) in Cook County, Illinois; *Kuiper v. Givaudan Flavors, Inc.*, ($7.5 million) in the United States District Court for the Northern District of Iowa; and *Watson v. Dillon Companies*, ($7.2 million) in the United States District Court for the District of Colorado.

I have also been successful in reaching settlements on behalf of many large groups of workers injured by exposure to diacetyl in the workplace. The two largest groups were claims in bankruptcy court involving Chemtura Corporation (more than 225 individuals) and Polarome Corporation (involving more than 300 different workers). *In Re: Chemtura Corp,* which settled for $50 million, was pending before the Honorable Robert E. Gerber (retired) in the United States Bankruptcy Court for the Southern District of New York. In addition, I have successfully negotiated confidential settlements for two different groups of more than 150 workers each against different flavoring manufacturers using diacetyl in their products.

- ***Tobacco Litigation***

In 1993, when I took my first tobacco case, such cases were considered impossible to win. In 1997, I reached a confidential settlement on behalf of Janet Sackman, the former poster model for Lucky Strike cigarettes. Notably, the *Sackman* case was the first action to deprivilege thousands of tobacco industry documents that were the lynchpin to further success against tobacco companies nationwide. In the *Sackman* case I appeared before the late Honorable Arthur D. Spatt of the United States District Court for the Eastern District of New York. In addition to settlement of the *Sackman* case, I have successfully tried to verdict numerous cases against the tobacco industry including *Smith v Brown & Williamson* ($22 million) and *Burton v. R.J. Reynolds Tobacco Co.* ($15.2 million).

I have also represented state and provincial governments in claims against the tobacco industry to recover costs associated with smoking and addiction. I was lead liability counsel employed by the State of Missouri to prosecute, and settle, claims on its behalf for expenses incurred for treatment of smoking-related illness.

Currently, I represent the Province of Newfoundland and Labrador, Canada, prosecuting its claim against the tobacco industry to be reimbursed for medical expenses incurred due to smoking-related illness. My work on behalf of the Newfoundland and Labrador government required that I become a member of the Canadian bar. As a result,

I sat for – and passed – the Canadian bar examination. In 2013, I was admitted to the bars of Ontario, Manitoba, and Newfoundland and Labrador.

- *Toxic Tort Litigation*

In addition to successfully settling claims on behalf of my clients, I have received numerous verdicts in excess of $20 million for claims of individual personal injury involving various toxic torts. My experience at trial in these complex cases against the best defense firms throughout the nation is relevant to my qualifications to serve in a leadership position in this case.

For example, in *Kirk v. FAG Bearings,* I obtained a $20.6 million verdict for exposure to trichloroethylene (TCE) in groundwater. The *Kirk* case was tried in 2016 before the Honorable D. Greg Kays in the United States District Court for the Western District of Missouri.

In 2013, I received a $28 million verdict in favor of our client who suffered a lung injury from exposure to toxic metal working fluid in the workplace. The *Berger v. Copeland Compressor Corp.* case was tried in the Circuit Court of Laclede County, Missouri, before the late Honorable Ralph Jaynes.

**2. Willingness and Ability to Commit to a Time-Consuming Process**

By their very nature, the cases that my firm and I are involved in require both the willingness and ability to commit to the work necessary to pursue the claim to a successful outcome. My firm has already demonstrated its commitment to investing the time, talent, and monetary resources necessary to prosecute these claims. Of the cases pending before this Court, our office represents the plaintiffs in 13 cases[1] that were the first-filed class actions in their home states, including California. We currently represent over 400 individuals from more than thirty states who have suffered damage due to the lack of engine immobilizers in these vehicles.

---

[1] Our office represents the first-filed putative classes in California, Colorado Florida, Illinois, Iowa, Kansas, Kentucky, Minnesota, Missouri, Nebraska, New York, Ohio, and Texas. As required by Iowa law, our firm obtained authority to bring a claim on behalf of Iowa residents from the Iowa Attorney General's office prior to suit being filed.

In addition, our office has been actively preparing to litigate these cases. We have retained and consulted with experts to evaluate the claims and advise us on issues such as theories of defect, industry standards, Federal Motor Vehicle Safety Standards (FMVSS) and damage models.

**3. Ability to Work Cooperatively With Others**

Over the past several months, our office has already demonstrated the ability to work in cooperation with other lawyers involved in this litigation. Most recently, I worked with Mr. Berman and Ms. Fegan in preparing the draft of the Joint Preliminary Report that will be submitted to the Court later this month. Prior to these cases being transferred to this Court, our office has worked cooperatively with Mr. Brennan and others at Jenner & Block to eliminate unnecessary expense to the parties and conserve resources of the transferor courts.

Virtually all of the cases highlighted above required that I, along with my law firm, work cooperatively with other law firms in order to obtain successful outcomes. For example, the *Dollar General* cases involved collaboration between our office and firms throughout the United States – including Louisiana, Texas, Kentucky, Oregon, Wisconsin and New Jersey. When representing the State of Missouri in tobacco litigation, I was part of a four-firm consortium hired by the Missouri Attorney General to prosecute, and ultimately settle, that claim. Similarly, the *DST Systems* litigation involved four law firms working cooperatively to ensure success for the entire group. Collaboration and cooperation was also required for the *Demetre* case (four law firms) as well as the many asbestos property damage cases in which I have been involved over my career.

Finally, I believe it is worth highlighting to the Court that my ability to work cooperatively also extends to counsel for defendants. I have learned throughout my career that being the best advocate for my client and my client's position means developing a relationship of mutual trust and cooperation with opposing counsel.

### 4. Access to Sufficient Resources to Prosecute

Our firm is well equipped to support my role in a Co-Lead Counsel position. For more than thirty years our office has demonstrated that it has the financial resources to engage in any case regardless of the opponent. The best example of the strength of our firm can be demonstrated in the track record that we established in tobacco litigation. For many years, the strategy of the tobacco industry was to overwhelm opposing counsel in every aspect of the case. Each time, our law firm met that challenge – whether it be in terms of financial or personnel resources.

My office is fortunate to have 13 attorneys in our litigation section. While I have now been at this firm for nearly 40 years, one of my litigation partners has been with me for more than 35 years and six more have been with the firm for more than ten years. In addition, we have more than 15 support staff, including paralegals and legal assistants. Many of our support staff have been with our firm for more than ten years.

Simply put, we are a strong firm with an established track record of success. Our firm regularly handles complex cases in which we invest tremendous resources of every type. We are willing and able to apply these resources of talent and capital to the Kia and Hyundai cases as well.

### CONCLUSION

Based upon my background and experience as described above, I respectfully seek appointment as Co-Lead Counsel in this litigation and appointment to the Plaintiffs' Expert Witness Discovery Subcommittee. While the Court has made clear that this is an individual appointment, if selected I will bring not only my own experience, but the collective experience and substantial resources of my firm.

These cases will present challenges at every step in the litigation. I look forward to the opportunity to work with co-counsel on behalf of the plaintiffs to fashion a resolution that will afford the best possible relief for all who have been affected by the circumstances surrounding these cases. Thank you for consideration of my application.

1  Dated: January 23, 2023      By: /s/ *Kenneth B. McClain*
2                                   Kenneth B. McClain, Esq.
                                    HUMPHREY FARRINGTON & McCLAIN
3                                   221 W. Lexington Ave., Suite 400
                                    Independence, MO 64050
4
5                                   Initial Conference Counsel and Counsel for
                                    Plaintiffs Bendorf, Bendorf, Jones, Moon,
6                                   Fruhling, Mason, Burke, Brady, Price, Bodie, Lui,
                                    Hall, Pue, Kozmic, Loburgio, Loburgio,
7                                   Flannagan, Mitchell, Simmons, Denney, Cole,
                                    Day,  Plaza, Yeghianian, and Zanmiller
8

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 11-6.1**

The undersigned counsel of record for Plaintiffs Bendorf, Bendorf, Jones, Moon, Fruhling, Mason, Burke, Brady, Price, Bodie, Lui, Hall, Pue, Kozmic, Loburgio, Loburgio, Flannagan, Mitchell, Simmons, Denney, Cole, Day, Plaza, Yeghianian, and Zanmiller certifies that the above document contains 3,344 words which complies with Local Rule 11-6.1.

 /s/ Kenneth B. McClain
 Kenneth B. McClain

**CERTIFICATE OF SERVICE**

I certify that on January 23, 2023, I filed the above document using the CM/ECF system which served counsel of record via electronic service.

 /s/ Kenneth B. McClain
 Kenneth B. McClain