James B. Barton, Esq. (admitted *pro hac vice*)
*jbb@bartonlegalsc.com*
BARTON LEGAL S.C.
313 N. Plankinton Ave., Ste. 207
Milwaukee, WI 53203
*Counsel for Plaintiffs in Marvin et al. v. Kia America Inc., et al., No. 8:22–cv–02304–JVS–KES (E.D. Wis.) & Henry et al. v. Kia America Inc., et al., No. 8:22–cv–01729–JWH –DFM (C.D. Cal.)*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>ALL CASES | CASE NO.: 8:22–ML–3052 JVS(KESx)<br><br>**APPLICATION OF JAMES B. BARTON FOR APPOINTMENT TO LEADERSHIP POSITION**<br><br>Date: February 7, 2023<br>Time: 9:00 a.m.<br>Place: 411 W. Fourth St.<br>　　　Santa Ana, CA 92701<br>　　　Court Room 10C |

## I.   INTRODUCTION

Nearly twenty-four months ago, as the Milwaukee metropolitan area was being enveloped in an auto theft "epidemic," as the Milwaukee Police Department ("MPD") put it, our firm began to investigate why the vehicles of two importers, Kia America, Inc., and Hyundai Motor America (collectively, "Defendants"), comprised nearly 70% of these thefts. Our findings revealed that for more than twenty-five years, Defendants flouted the advice of the National Highway Safety Transportation Administration ("NHTSA") and the mores of the automotive industry by failing to equip most of their vehicles with ubiquitous antitheft technologies designed to curb easy cases of auto theft.  Defendants consciously made this decision as a cost-saving measure; they touted the utility of certain antitheft measures to NHTSA, but only installed this technology as standard equipment on their high-end models.

Thus, on June 23, 2021, we filed the first class action against Defendants in the Milwaukee County Circuit Court, which was then removed to the Eastern District of Wisconsin. *See Marvin v. Kia America, Inc.*, E.D. Wis. Case No. 2:21-cv-01146-PP (the "*Marvin* Suit" or the "First-Filed Suit"), *renumbered as* C.D. Cal. Case No. 8:22-CV-02304-JVS-KESx (hereafter, the "*Marvin* Dkt."). The First Amended Complaint ("FAC") in the *Marvin* Suit was filed on November 4, 2021 and Defendants' motions to dismiss the FAC were fully briefed and have been awaiting disposition since March 25, 2022.

Despite prosecuting the *Marvin* Suit for more than a year before the next related action was filed, it did not receive widespread publicity because the Complaint and FAC were filed under seal. Although a nascent firm in our position would have relished the press coverage, we felt obliged to take steps within our control to avoid exacerbating the problem. Indeed, given the detailed allegations in our pleadings that explained the defect in Defendants' vehicles at the heart of this crisis, there was serious concern that publishing this information in one, cohesive

Application of James B. Barton For A Leadership Position

1  document could cause auto thefts to proliferate—both in Wisconsin and beyond its

2  borders. Jude Pepper ultimately agreed, finding good cause existed to seal the FAC

3  and approving a set of stipulated redactions, so that a publicly available version could

4  be filed to mitigate these risks:

5      *Having reviewed the 168–page amended complaint* and the proposed

6      redactions, the court is satisfied that *the parties have made sufficient effort*

7      *to narrowly tailor the redactions to prevent the disclosure of the design defect that*

8      *allegedly makes it easy to steal the Kia and Hyundai cars. While some of this*

9      *information could be discovered through an internet search, not all of it appears*

10     *to be publicly available or consolidated into a single document.* The court finds

11     that the parties have established good cause for restricting the amended

12     complaint and for filing a redacted version of the same.

13  (*Marvin* Dkt. # 34.)

14      The redacted FAC became publicly available on July 8, 2022. (*Id.*, Dkt. # 35.)

15  In the weeks thereafter, a deluge of copycat actions ensued, many of which crib—and

16  in some instances, copy verbatim—the unredacted allegations from the FAC. To

17  expand the scope of the *Marvin* Suit, and given the situs of Defendants' corporate

18  headquarters, our firm and our co-counsel, Sauder Schelkopf LLC, filed a separate

19  action in the Central District of California that was initially assigned to Judge

20  Holcomb and Magistrate Judge McCormick. *See Henry v. Kia America, Inc.*, C.D. Cal.

21  Case No. 8:22-cv-01729 (the "*Henry* Suit"). On December 13, 2022, the JPML

22  ordered all pending class actions to be consolidated before this Court.

23      Pursuant to Case Management Order No. 1 (the "Order"), (*see* Dkt. # 2), I

24  respectfully request appointment to the Plaintiffs' Leadership Committee and/or an

25  appropriate subcommittee given our initiation of the First–Filed Suit; our integral

26  knowledge of the factual and legal issues at issue; the substantial commitment of

27  time and resources we have already invested; and the need to ensure that the class

28

Application of James B. Barton For A Leadership Position

1  members in Milwaukee and its surrounding municipalities—the community most

2  afflicted by this crisis—have a voice in this MDL.

3  **II.   ARGUMENT**

4          The Order requires any leadership applications to be filed with the Court on

5  or before January 23, 2023, and further outlines the following criteria governing the

6  Court's consideration of suitable candidates: "(1) knowledge and experience in

7  prosecuting complex litigation, including class actions; (2) willingness and ability to

8  commit to a time-consuming process; (3) ability to work cooperatively with others;

9  and (4) access to sufficient resources to prosecute." (Dkt. # 2, at 2-3.) Each

10  consideration is addressed below.

11              **1.  Knowledge and Experience in Prosecuting Complex Litigation**

12          I am the founding shareholder of Barton Legal S.C., a complex litigation

13  boutique in Milwaukee, Wisconsin.  From 2013 to 2019, I was selected by *Wisconsin*

14  *Super Lawyers* as a "Rising Star" in the field of business litigation, a distinction held

15  by the top 2.5% of attorneys in Wisconsin who have practiced for less than ten years.

16  Since 2020, I have also been annually designated as a "Super Lawyer" in business

17  litigation, which is reserved to the top 5% of attorneys in the state.

18          I have also been consistently recognized by *Best Lawyers* for my work in

19  commercial litigation since 2019.  Apart from these personal recognitions, my firm,

20  Barton Legal S.C., has been consistently recognized since 2020 by *U.S. News & World*

21  *Report* in its list of "Best Law Firms," receiving a regional ranking in Wisconsin for

22  the work we do in commercial litigation. These professional honors are awarded after

23  an extensive peer (and in some instances, client) review process based on our

24  experience, success, and commitment to client service.

25          I began my career as an associate in the litigation practice group of Michael

26  Best & Friedrich LLP ("MBF"), one of Wisconsin's largest law firms, where my

27  practice focused extensively on product liability matters, which frequently involved

28

3

defending consumer protection claims. I spent significant time litigating these types of cases throughout the country, including a case before this Court,[1] and counseling the firm's clients on the scope and enforceability of the warranties they furnished with their consumer products, which are subject to the Magnuson–Moss Warranty Act and Chapter 2 of the Uniform Commercial Code.

Additionally, I've been fortunate over my career to have the opportunity to litigate a variety of complex disputes that implicated myriad complex legal issues, including my substantial involvement in the following matters:

- Lead counsel to a North American machine tool distributor in an international arbitration against a Korean manufacturer with more than $10MM in dispute, which was pending before JAMS International and settled under favorable terms; in prior litigation before the Eastern District of Wisconsin, I obtained a permanent injunction to halt a parallel foreign arbitration that the manufacturer initiated before the Korean Commercial Arbitration Board in Seoul, Korea. *See Dynamic Intl of Wisconsin, Inc. v. SMEC CO., LTD.*, E.D. Wis. Case No. 2:18–cv–582.

- Lead counsel for a French client seeking recognition of a foreign judgment that it obtained against a Wisconsin company in France; the Eastern District of Wisconsin ultimately recognized the French Judgment as valid in the United States to allow the French client to initiate collection activities. The *Wisconsin Lawyer* later named this case one of the "Top 9 Recent Wisconsin Federal Court Decisions" in 2018, given the novel issues of international law that were previously unaddressed in Wisconsin. *See Societe D'Amenagement et de Gestion de L'Abri Nautique v. Marine Travelift, Inc.*, E.D. Wis. Case No. 16–CV–785.

- Integral member of the litigation and trial team that represented a Native American Tribe and its casino in a multi-fora $90MM dispute stemming from a failed bond transaction, which was pending for eight years in the Western District of Wisconsin (twice), the Seventh Circuit Court of Appeals (twice), the Lac Du Flambeau Tribal Court, and the Waukesha County Circuit Court; after multiple bond documents were declared void under the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701, *et seq.*, the

---

[1] *See Abrica v. Grob, Inc. et al.*, C.D. Cal. Case No. 2:10–cv–03424–JLS–PLA.

Application of James B. Barton For A Leadership Position

remaining aspects of the case were slated for a seven-week jury trial; I successfully briefed and argued various pre-trial motions, including two *Daubert* motions that preserved the testimony of our clients' liability and damages experts; the case settled during *voir dire* following these rulings under terms extremely favorable to our clients. *See Saybrook Tax Exempt Investors LLC et al. vs. Lac Du Flambeau Band Of Lake Superior Chippewa Indians et al.*, Waukesha County Cir. Ct. Case No. 2012-CV-187.

- Lead counsel for the plaintiff in a shareholder dispute concerning the value of a leading luxury brand; I first-chaired the private, four-day arbitration and was responsible for handling all motion practice, cross-examining the lead defendant, and examining numerous experts; the panel issued a $5MM arbitration award in favor of plaintiff, which was dramatically in excess of the amount proffered by defendants' experts.

- Lead counsel for the defendant in a copyright infringement action against plaintiffs seeking a seven-figure damages award for willful infringement; I obtained summary judgment in defendant's favor on all copyright claims, which prompted an extremely favorable settlement given the fee-shifting provision under the Copyright Act. *See Boehm v. Legends of the Field, LLC et al.*, W.D. Wis. Case No. 15-CV-00683.

As this list of exemplar matters evinces, I've gained substantial experience in successfully handling complex litigation over my legal career. A biography is also attached hereto as **_Exhibit A_**. Although I have not been lead counsel in a class action, "the fact that class counsel has little class action experience does not destroy his or her adequacy as class counsel." *See O'Dell v. Nat'l Recovery Agency*, 291 F. Supp. 3d 687, 701 (E.D. Pa. 2018) (citing 1 NEWBERG ON CLASS ACTIONS, § 3.73 (5th ed.)); *accord O'Neill v. Gourmet Sys. of Minn., Inc.*, 219 F.R.D. 445, 454 (W.D. Wis. 2002) (same); *Alhassid v. Bank of Am., N.A.*, 307 F.R.D. 684, 699 (S.D. Fla. 2015) (same).[2]

---

[2] *See also Elliott v. LVNV Funding, LLC*, No. 3:16-kcv-00675-RGJ, 2019 WL 4007219, at *5 (W.D. Ky. 2019) ("[W]hile experience prosecuting class action suits is a factor to be weighed when determining the adequacy of class counsel, it is not dispositive") (citing *Wells v. Allstate Co.*, 210 F.R.D. 1, 11 (D.D.C. 2002)); *Whittington*

Application of James B. Barton For A Leadership Position

1    In fact, courts in this circuit have explained that in assessing the qualifications

2    of proposed class counsel, an important consideration is "*such counsel's performance in*

3    *the action itself.*" *Scholl v. Mnuchin*, 489 F. Supp. 3d 1008, 1045 (N.D. Cal. 2020)

4    (emphasis added) (collecting cases); *see also Jama v. State Farm Fire & Cas. Co.*, 339

5    F.R.D. 255, 269 (W.D. Wash. 2021) (finding class counsel adequate when they "have

6    demonstrated throughout the course of this case their knowledge of the applicable

7    law and the subject matter of this case").

8    Applied here, we filed the *Marvin* Suit more than a year before the next related

9    action. Our work product was created from scratch through our detailed investigation,

10   well before any other law firm or media outlet identified: (i) the contours of the

11   multifaceted defect that make Kias and Hyundais easy to steal; or (ii) Defendants'

12   knowledge of the risk that this defect posed, which is central to the consumer

13   protection claims in all related actions. Further, we have already researched and

14   briefed numerous legal issues in opposing Defendants' motions to dismiss the *Marvin*

15   FAC—*e.g.*, Defendants' preemption, superseding cause, and standing arguments—that:

16   (i) have been awaiting disposition since March 2022; (ii) are common to all related

17   actions; and (iii) forcibly explain why these defenses lack merit.

18   Given the voluminous docket in this MDL, the redacted FAC in the *Marvin*

19   Suit is being attached hereto as **_Exhibit B_** and the parties' motion to dismiss briefing

20   is being attached hereto as **_Exhibits C-F_** for the Court's convenience.[3] As I believe

21   the Court will appreciate, the quality and detail of this work product demonstrates

22   that our firm has "done substantial work to develop and prosecute this matter, and

23   ――――――――――――――

24   *v. United States*, 240 F.R.D. 344, 352 (S.D. Tex. 2006) (same); *Klender v. U.S.*, 218
     F.R.D. 161, 166 (E.D. Mich. 2003) (same).

25   [3] The unredacted FAC was ordered sealed by Judge Pepper, which does not

26   appear to have been affected by the Court's recent Order. (*See* Dkt. # 2, § 5.5 (only
     vacating orders from transferor courts "imposing dates for pleading or discovery).)

27   Thus, a redacted version (without exhibits) is being filed herewith. The original FAC

28   is available at *Marvin* Dkt. # 12-1 (FAC) & 12-2 -12-20 (Exs. A-S).

6

Application of James B. Barton For A Leadership Position

1  [has] not ridden on [other counsel's] coattails." *In re 5–Hour Energy Mktg. v. Innovation*

2  *Ventures, LLC*, No. CV134001PSGPLAX, 2013 WL 12134144, at *3 (C.D. Cal. Nov.

3  8, 2013); *see also In re GSE Bonds Antitrust Litig.*, 377 F. Supp. 3d 437, 438 (S.D.N.Y.

4  2019) (appointing firm that filed the first case as class counsel because, *inter alia*, that

5  firm's "complaint [was] clearly the template for the great majority of the cases filed

6  since and here consolidated").

7        Nor have we rested on our laurels in seeking this appointment. To gain further

8  insight into the mechanics of an MDL, I obtained Duke Law School's Mass Tort MDL

9  Certificate by participating in the Bolch Judicial Institute's MDL program in

10  November 2022. And to further augment our team's capabilities, we co-counseled

11  with Mr. Matthew D. Schelkopf, of Sauder Schelkopf LLC, to jointly prosecute the

12  *Marvin* and *Henry* Suits. Given Mr. Schelkopf's prior work as a mechanic and lifelong

13  car enthusiast, his experience in automotive defect class actions is impeccable and he

14  has been an invaluable resource to: (i) confirm and expound upon the nature of the

15  defect; and (ii) help navigate any procedural complexities in these proceedings.

16        Accordingly, my experience in other facets of complex litigation—coupled with

17  my substantial involvement in this case from the outset—qualifies me to serve in a

18  leadership position. This is especially true considering the contemplated leadership

19  structure where other applicants with more class action experience will also be

20  appointed to leadership positions.

21        **2.  Willingness and Ability to Commit to a Time-Consuming Process**

22        My firm and I are eagerly willing and able to commit to this time-consuming

23  process. We have already expended significant time and effort in this litigation as

24  evidenced by the length and detail of the *Marvin* FAC, the active litigation in which

25  we have already engaged in that case, and through our prosecution of the *Henry* Suit,

26  a companion action that expands the geographic scope of the First-Filed Suit.

27

28

Application of James B. Barton For A Leadership Position

### 3.  Ability to Work Cooperatively With Others

My firm and I also pledge to work cooperatively with all counsel involved in this MDL.  Much of our practice is focused on serving clients in Milwaukee and Southeast Wisconsin, which is a relatively small legal market when compared to New York, Chicago, Los Angeles, and/or Chicago. On the main, this means that the Wisconsin bar is a collegial lot because repeat litigation against the same lawyers and law firms is a common occurrence. From a personal standpoint, I also take pride in the professional relationships I've forged with lawyers throughout my career, whether in their capacities as local counsel, co-counsel, or opposing counsel. The law, as with any industry, is a relationship business. Thus, we have and will continue to strive to treat all counsel with the same level of respect and professionalism that is incumbent upon all of us as officers of the court.

### 4.  Access to Sufficient Resources to Prosecute

My firm also possesses sufficient resources to prosecute this case to a resolution, including the financial resources to commit towards this litigation to secure class certification and/or through trial. Indeed, we have already devoted significant resources to this case through our substantial investigative efforts and prosecution of the *Marvin* and *Henry* Suits, including, amongst other commitments, our retainer of a consulting engineering expert to opine on facets of the defect.

### 5.  Other Considerations

Finally, the Order indicated that the Court will "strive for diversity in the appointments, including race, age, sex, and geographical location."  (Dkt. # 2 at 3.) The Court's laudable emphasis on these factors is presumably rooted in the "repeat player problem" in many MDL proceedings on which many courts and legal scholars have commented. *See generally e.g.*, Elizabeth C. Burch, *Diversity in MDL Leadership: A Field Guide*, 89 UMKC L. Rev. 1, 4 (2021). Relevant here, as a thirty-nine-year-old lawyer who has been practicing for fifteen years, I have ample experience in complex

Application of James B. Barton For A Leadership Position

1  litigation but can bring a fresh perspective to this MDL, especially when coupled
2  with the substantial investigation we have undertaken to date. *See id.* at 4 (discussing
3  leadership selection "based on attorneys' *cognitive* diversity—meaning different
4  knowledge, skills, information, and tool kits[,]" which also implicates the diversity
5  factors enumerated in the Order) (emphasis in original).

6       Further, the epicenter of this auto theft crisis is in Milwaukee, Wisconsin, my
7  hometown for eighteen years and whose citizens have been disproportionately
8  affected by it. At bottom, the impact that this crisis has had on my community is why
9  we brought suit in the first instance and have zealously fought to vindicate the rights
10 of so many who could not do so for themselves. Appointing a Wisconsin-based
11 lawyer to a leadership position will help ensure that the interests of these Wisconsin
12 class members are protected and further aligns with the Court's goal of promoting
13 geographic diversity, amongst other considerations.

## CONCLUSION

15       For the foregoing reasons, Plaintiffs from the *Marvin* and *Henry* Suits
16 respectfully request that the Court appoint James B. Barton to a leadership position
17 in this MDL.

18                                   **BARTON LEGAL S.C.**

19                                   /s/ *James B. Barton*
20                                   James B. Barton (admitted *pro hac vice*)
                                     *jbb@bartonlegalsc.com*
21                                   313 N. Plankinton Ave., Suite 207
22                                   Milwaukee, WI 53203
                                     T: (414) 488–1822
23                                   F: (414) 877–3039
24
25                                   *Attorneys for Plaintiffs in Marvin et al. v. Kia America*
                                     *Inc., et al., No. 8:22–cv–02304–JVS–KES (E.D. Wis.)*
26                                   *& Henry et al. v. Kia America Inc., et al., No. 8:22–*
                                     *cv–01729–JWH –DFM (C.D. Cal.)*
27
28

Application of James B. Barton For A Leadership Position

## CERTIFICATE OF COMPLIANCE

I, James B. Barton, Counsel for Plaintiffs in *in Marvin et al. v. Kia America Inc., et al.*, No. 8:22–cv–02304–JVS–KES (E.D. Wis.), and *Henry et al. v. Kia America Inc., et al.*, No. 8:22–cv–01729–JWH–DFM (C.D. Cal.), hereby certify that the foregoing Application complies with the page limit set forth in the Court's Order No. 1, and contains 2,943 words, which complies with the word limit set forth in L.R. 11-6.1. I further certify that on January 23, 2023, I caused the foregoing Application to be electronically filed using the Court's CM/ECF system, thereby electronic serving it upon on all counsel of record.

*/s/ James B. Barton*
James B. Barton

Application of James B. Barton For A Leadership Position