1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Steve W. Berman, Esq. (pro hac vice)
*steve@hbsslaw.com*
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Facsimile: (206) 623-0594

*Initial Conference Counsel and Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 8:22-ML-3052 JVS(KESx) |
| | **APPLICATION OF STEVE W. BERMAN FOR APPOINTMENT AS MEMBER AND CHAIR OF LEAD COUNSEL COMMITTEE** |
| This document relates to: | Date:    February 7, 2023 |
| | Time:    9:00 a.m. |
| ALL CASES | Place:    411 W. Fourth Street, Santa Ana, CA 92701 Court Room 10C |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION AND REQUEST FOR APPOINTMENT ................................ 1

II.   THIS APPLICATION SATISFIES THE COURT'S PRIMARY CRITERA
      FOR APPOINTMENT ................................................................................ 2

      A.    My firm and I have extensive knowledge and experience in prosecuting
            complex class actions. ................................................................................ 2

      B.    I will commit to a time-consuming process. ...................................... 7

      C.    I routinely work cooperatively with others. ...................................... 9

      D.    My firm and I have sufficient resources to prosecute this case on behalf
            of all plaintiffs. ................................................................................ 9

      E.    Other considerations that recommend me for a leadership position. ............ 9

i

# I.   INTRODUCTION AND REQUEST FOR APPOINTMENT

Pursuant to the Court's Case Management Order No. 1: Initial Conference ("Order"), Steve W. Berman applies to be appointed as Chair and member of the Lead Counsel Committee, as well as a member of the Expert Discovery Subcommittee, in accordance with the proposed case management structure set forth in Section I of the forthcoming January 30, 2023, Joint Preliminary Report to be filed by Initial Conference Counsel.[1]

In this application, I address the main criteria for appointment set forth in the Court's Order.  *First*, as set forth below, I and my firm have extensive knowledge and experience in prosecuting complex litigation, including many class actions involving defective automobiles.  *Second*, I am willing and can commit to a time-consuming process and have lengthy experience in helping steward class actions that take years to resolve.  If appointed by the Court to serve as Co-Lead Counsel, I commit to dedicate whatever time is necessary to successfully manage and prosecute this case and, indeed, have already been intimately and personally involved in progressing the case.

*Third*, throughout my career I believe I have demonstrated my ability to work cooperatively with others.  I have worked with many other attorneys in scores of different cases and believe I earned the trust and confidence of those attorneys.  *Fourth*, my law firm is one of the largest law firms in the country handling contingent litigation on behalf of plaintiffs, has dedicated its practice exclusively to litigating and trying lawsuits, and has demonstrated that it has the resources to handle those cases effectively and efficiently as I describe below.  In addition, my firm has put together a team of lawyers who have the breadth of knowledge and experience to successfully prosecute this case.

---

[1] Initial Conference Counsel will recommend the following structure for Plaintiffs' counsel: A three-member Lead Counsel Committee with one of those members serving as Chair; a four-member Executive Committee; a five-member Fact Discovery Subcommittee; and five-member Expert Discovery Subcommittee. This proposed structure is designed to ensure that the interests of all categories of plaintiffs and putative class members are adequately represented and provides an opportunity for multiple firms to participate in leadership positions.

-1-

## II.    THIS APPLICATION SATISFIES THE COURT'S PRIMARY CRITERA FOR APPOINTMENT

### A.    My firm and I have extensive knowledge and experience in prosecuting complex class actions.

I have extensive, nationwide experience in class actions and other complex litigation.  Since its founding in 1993, my firm and I have represented plaintiffs in a broad spectrum of complex, multi-party cases ranging from automobile, securities, antitrust, and general consumer class actions.  The firm's work includes many landmark cases, and we have robust experience in automobile defect cases, described below.

I have been recognized by courts throughout the country for my ability and experience in handling major complex litigation.  Among the hundreds of MDLs and class actions in which I have held leadership positions are numerous cases, such as this one, where different types of claims have been consolidated for prosecution, requiring unique case structures and coordination.  As described below, Hagens Berman is one of the few law firms in the country that regularly *tries* class actions, MDLs, and other complex cases to verdict.  Many courts have acknowledged my class action leadership, excellence, and high ethical standards. In *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, this Court commented that "Class counsel has consistently demonstrated extraordinary skill and effort."   In appointing the firm as Interim Class Counsel in *In re: Stericycle, Inc. v. Steri-Safe Contract Litig.*, MDL No. 2455, Senior Judge Milton I. Shadur of the Northern District of Illinois commented that my "track record" was "impressive," and that the firm had "a substantial number of really outstanding big-ticket results."   And in selecting Hagens Berman as lead counsel in *In re Optical Disk Drive Prods. Antitrust Litig.* (N.D. Cal.), the court stated: "[A] clear choice emerges. That choice is the Hagens Berman firm."

I am honored to have been recognized by legal publications as a significant leader in complex litigation. *The National Law Journal* named me one of the 100 most powerful lawyers in the nation and repeatedly named Hagens Berman one of the top 10 plaintiffs' firms in the country.  I was named an MVP of the Year by *Law360* from 2016

-2-

to 2020 in class-action litigation and received the 2017 and 2022 Plaintiffs' Trailblazer award. And I was recently recognized for the sixth year as an Elite Trial Lawyer by *The National Law Journal*. Additionally, I've been named a Titan of the Plaintiffs Bar by *Law360* every eligible year, and my cases have received the American Antitrust Institute's Honoree for Outstanding Antitrust Litigation Achievement in Private Law Practice recognition three times since 2018. *Law360* also named my firm to its list of Most Feared Plaintiffs Firms, and *BestLawyers* named me to its 2023 list of Best Lawyers in America in plaintiffs' litigation.

A representative sample of my relevant experience is summarized below, including in class actions against Kia and Hyundai. A more complete summary of Hagens Berman's experience a sampling of complex litigation experience is set forth in the firm resume attached as Exhibit A, or on the law firm's website, www.hbsslaw.com.

- Co-Lead Counsel in *In re Hyundai and Kia Engine Litig.*, No. 8:17-cv-00838-JLS-JDE (C.D. Cal.), alleging a defect in more than 4 million vehicles equipped with Theta II GDI engines that can cause engine seizure, stalling, failure, and fires. A settlement package valued at up to $1.3 billion was approved in May 2021.

- Co-Settlement Class Counsel in *In re Hyundai & Kia Fuel Econ. Litig.*, No. 2:13-md-2424-GW-FFM (C.D. Cal.), where defendants overstated the MPG fuel economy ratings on 900,000 cars. Hyundai admitted error and offered actual losses, plus a 15% inconvenience fee. We identified major gaps in the program, investigated errors at the Korean facility, secured approval of a settlement that added a lump-sum option (which was selected over the defendants' existing offer nine out of 10 times), and expanded the benefit class. The settlement provided $360 million for the class. We successfully petitioned for *en banc* review of an adverse Ninth Circuit panel decision, argued, and obtained full affirmance of the settlement. *See id.*, 926 F.3d 539, 552 (9th Cir. 2019).

- Class Counsel in *Zakikhani, et al. v. Hyundai Motor Co.*, No. 8:20-cv-01584-SB-JDE (C.D. Cal.), which involves a potentially deadly hydraulic engine control unit defect

in over three million Hyundai and Kia vehicles that causes spontaneous engine compartment fires.  A settlement in the case has received preliminary approval, with a final fairness hearing scheduled for April 2023.

- Co-Lead Counsel in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prods. Liab. Litig.*, No. 8:10-ml-02151-JVS-FMO (C.D. Cal.) (Selna, J.), which alleged that a defect caused vehicles to undergo sudden, unintended acceleration.  The resulting settlement was valued at over $1.6 billion and included $500 million in cash payments to class members, many of whom received checks for thousands of dollars; installation of a safety enhancing brake override system on numerous vehicle models, which all but eliminated reports of unintended acceleration; and a program that substantially extended warranties.

- Lead counsel in class cases concerning defective high-pressure fuel pumps for diesel vehicles*: Chapman v. General Motors LLC*, No. 19-cv-12333 (E.D. Mich.) (class certification pending); *Droesser v. Ford Motor Co.*, No. 19-cv-12365 (E.D. Mich.); *Withrow v. FCA US LLC*, No. 19-cv-13214 (E.D. Mich.) (Michelson, J.); *Sharp v. FCA US LLC*, No. 21-cv-12497 (E.D. Mich.).

- Lead counsel in *Raymo v. FCA US LLC*, No. 17-cv-12168 (E.D. Mich.), involving recalled vehicles that contain defects in the emissions system.

- *Kiriacopoulos v. General Motors LLC*, No. 22-cv-10785 (E.D. Mich.), alleging vehicles' PCV valve is prone to clogging in winter months, causing sudden loss of oil.

- Plaintiffs' Steering Committee in *In re FCA US LLC Monostable Elec. Gearshift Litig.*, No. 2:16-md-02744-DML-DRG (E.D. Mich.), alleging FCA fraudulently concealed and failed to remedy a design defect in 811,000 vehicles that can cause cars to roll away after they are parked, causing injuries and accidents.  The case went to trial and resulted in a mixed verdict.

- Co-Lead Counsel in *In re General Motors LLC Ignition Switch Litig.,* No. 14-md-02543-JMF (S.D.N.Y), an ignition switch defect concealed by GM resulted in economic loss, injury, and death.  It settled for $120 million.

- *Co-Lead Counsel in In re MyFord Touch Consumer Litig.*, No. 3:13-cv-03072-EMC (N.D. Cal.), on behalf of owners of vehicles equipped with MyFord Touch, an in-car package, that put drivers at risk of an accident.  In 2019, the district court finally approved a $17 million dollar settlement.

- Automotive emissions fraud cases: *Volkswagen Diesel Emissions Litigation* (Plaintiffs' Steering Committee; $14.7 billion settlement); *Volkswagen Dealers Litigation* (Class Counsel; $1.6 billion settlement); *Albers v. Mercedes-Benz USA, LLC,* No. 2:16-cv-00881 (D.N.J.) (Co-Lead Counsel; $700 million settlement); *Counts v. General Motors LLC*, No. 1:16-cv-12541 (E.D. Mich.); *In re Chrysler-Dodge-Jeep EcoDiesel Mktg. Sales Practices, & Prods. Liab. Litig.*, No. 3:17-md-02777 (N.D. Cal.) (Steering Committee); *Bledsoe v. FCA US LLC*, No. 4:16-cv-14024 (E.D. Mich.); *In re Duramax Diesel Litig.*, No. 1:17-cv-11661 (E.D. Mich.); *Bledsoe v. FCA US LLC*, No. 16-cv-14024 (E.D. Mich.) (lead counsel).

My experience in other, complex class actions and other complex cases outside the automotive sphere include:

- Serving as co-lead trial and appellate counsel in *Alston v. National Collegiate Athletic Association (In re NCAA Ath. Grant-In-Aid Cap Antitrust Litig.)*, No. 14-md-02541-CW (N.D. Cal.), which settled for $208 million in damages for tens of thousands of current and former NCAA Division 1 college athletes, after prevailing at a separate trial on injunctive relief.  A unanimous Supreme Court affirmed the injunction prohibiting the NCAA from restricting the education-related benefits that its members may offer student athletes.

- *In re Elec. Books Antitrust Litig.*, No. 11-md-2293 DLC (S.D.N.Y.).  We pioneered this litigation as lead counsel against Apple and the largest brick-and-mortar publishers on behalf of purchasers of e-books in 19 states and four U.S. Territories.

1   We worked in novel partnership with the U.S. Department of Justice and 33 State
2   Attorneys General.  As a result of the settlement, the class received up to $560
3   million to resolve price-fixing allegations, on single damages of $270 million.

4   • *In re Visa Check/Mastercard Antitrust Litig.*, No. CV-96-5238 (E.D.N.Y.).  We
5   were co-lead counsel in this case, which settled on the eve of trial for over $3 billion
6   in cash and over $20 billion in injunctive relief, making it the largest antitrust
7   settlement in history.

8   • In *Enron ERISA Litig.*, Civ. Action No. H-01-3913, MDL No. 1446 (S.D. Tex.), I
9   was co-lead counsel and brought the case on behalf of participants and beneficiaries
10   of Enron's Retirement Savings Plan and ESOP against Enron and other defendants.
11   The ERISA litigation recovered more than $220 million, one of the largest
12   settlements ever involving claims arising out of an ERISA Plan's holdings of
13   company stock.

14   • *In re Pharmaceutical Indus. Average Wholesale Price (AWP) Litig.*, MDL No. 1456
15   (D. Mass.), involved claims that most major pharmaceutical companies engaged in
16   fraudulent reporting of fictitious Average Wholesale Prices ("AWP"s) that inflated
17   drug prices paid by insurers and consumers.  I served as lead trial counsel in a three
18   month-long trial against several defendants and obtained a verdict in favor of
19   plaintiffs, which the First Circuit affirmed in *In re Pharm. Indus. Average Wholesale
20   Price Litig.*, 582 F.3d 156 (1st Cir. 2009).  The cases resulted in $338 million in
21   settlements.

22   • *New England Carpenters, et al. v. McKesson*, No. 05-11148 (D. Mass.).  As an
23   outgrowth of the *AWP* MDL, Hagens Berman discovered that McKesson and First
24   Data had conspired to increase the list price on most brand-name drugs in the United
25   States by 4%. We successfully obtained a nationwide class on behalf of all
26   purchasers of over 400 brand-name drugs.  The case settled for $350 million and a
27   rollback of the price of brand-name drugs that took effect in September 2009 that
28

-6-

result in billions in savings on drug purchases.  I was lead counsel and argued all motions.

- *In re Schwab Corp. Secs. Litig.*, No. 08-cv-01510 WHA (C.D. Cal.).  The court appointed Hagens Berman as lead counsel in this federal class action on behalf of investors in Schwab's YieldPlus Fund.  The case alleges that Schwab marked the fund as a money market alternative and a safe place to invest cash when fund managers over-concentrated fund assets in risky mortgage-backed securities.  Hagens Berman negotiated a settlement of the federal securities class claims for $200 million.

- *Attorney General Tobacco Litigation*.  Hagens Berman played a major role in representing state government in the historic litigation against the tobacco industry.  The firm represented 13 states in pursuing innovative claims against the tobacco companies and helped achieve the largest recovery in litigation history ($260 billion).  I was actively involved in every aspect of the case and in negotiating the nationwide settlement.  Hagens Berman was also one of only two law firms who took a case to trial against the tobacco industry.

**B.    I will commit to a time-consuming process.**

Another consideration qualifying me for a leadership position is my complete focus on litigating cases on behalf of plaintiffs in large class action cases.  Each of my days is devoted to working on the nuts-and-bolts of my cases.  I do this because it is what I enjoy most.  That focus, however myopic some may view it, makes a difference to my clients and those I work with.  And it makes me personally accountable to the Court.  As a leader, my commitment to excellence, professionalism, and high ethical standards make life easier for the parties and the Court in complex, hard-fought litigation.

My extensive experience in bringing and pursuing complex cases such as this one demonstrates that I fully understand the substantial investment of time and resources necessary to pursue and lead the case properly, and I am committed to making the necessary investment.  As a result of leading classes in cases against Hyundai/Kia,

-7-

1   Toyota, General Motors, FCA, and others, I have lived and breathed automotive

2   economic loss cases daily for over 12 years.  I undertake substantive work in all the cases

3   that I prosecute, from drafting complaints and pleadings, engaging in discovery, and

4   working with experts.  Years of commandeering complex class actions have taught us to

5   pursue a vigorous and efficient prosecution with a nimble leadership team and clear lines

6   of responsibility.  We become experts in the facts, the law, and the science of the case

7   and marshal a counsel team committed to doing the same.  As lead, I do not delegate all

8   the trench-work solely to others.  For example, in *In re Toyota Motor Corp. Unintended*

9   *Acceleration Marketing, Sales Practices & Prods. Liab. Litig.*, I was in Toyota's code

10  vault for weeks reviewing source code for errors and personally reviewed all coded hot

11  documents each week.  And, unlike many class action firms, we take complex cases to

12  trial.  I did so in *Tobacco*, the three-month *AWP* trial, *In re General Motors LLC Ignition*

13  *Switch Litig., In re FCA US LLC Monostable Elec. Gearshift Litig.*, and *In re NCAA Ath.*

14  *Grant-In-Aid Cap Antitrust Litig.*

15       I am supported in this commitment by a team of highly qualified, seasoned

16  paralegals and investigators, many of whom have been with the law firm since its earliest

17  years.  I commit to personally dedicating whatever time is necessary to successfully

18  manage and prosecute this case and expect to devote a substantial amount of my time to

19  this matter.  In addition, I will be assisted in this case by senior Hagens Berman attorneys

20  with extensive class action experience, including Rachel E. Fitzpatrick, who has spent

21  the past two years diligently working with me on the firm's other cases against Hyundai

22  and Kia.  Senior Partner and Management Committee member Sean R. Matt, who

23  assisted me in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices*

24  *& Prods. Liab. Litig.* and many other auto class actions, is also working on the case with

25  me.  In 2020, *Lawdragon* named Mr. Matt one of 500 Leading Lawyers in America,

26  Plaintiff Financial Lawyers.

27       The firm's resume also demonstrates its ability to fund adequately its share of

28  litigation costs over the years it may take to prosecute a complex and hard-fought case

to conclusion.  The firm's success record in seeing complex and risky cases to conclusion through trial or settlement underscores this commitment.

## C.     I routinely work cooperatively with others.

The firm's history demonstrates its ability to collaborate with firms across the country, and I have worked effectively for over three decades with many of our colleague firms when occupying a leadership position in landmark cases.  I have extensive experience allocating and supervising work among participating firms, managing multiple-firm funding of complex cases, coordinating discovery among plaintiffs and defendants, and negotiating resolutions of issues involving divergent interests.  Regular communication and coordination of effort among all counsel on a case are important to avoid the duplication of efforts and the waste of resources.  I have already been working collaboratively here with other firms and the defense.

## D.     My firm and I have sufficient resources to prosecute this case on behalf of all plaintiffs.

Hagens Berman is a well-established and successful law firm that has the substantial resources and personnel necessary to pursue a case of this magnitude as it has demonstrated in numerous similar large-scale complex cases since its founding.  We have 85 lawyers with offices in Seattle, Los Angeles, San Diego, Berkeley, Phoenix, Chicago, Boston, and New York, and affiliates in London and The Netherlands.  Because we are prudent managers, we can fund litigation costs over many years of litigation and trial, often alone. We have repeatedly demonstrated the financial ability to simultaneously litigate scores of class actions against behemoth corporate defendants with nearly unlimited resources.  And the firm's resources are not merely financial, but also include substantial expertise and work-product, discussed above.  These resources allow us to work cooperatively and efficiently without duplicating efforts with other counsel in the case.

## E.     Other considerations that recommend me for a leadership position.

*I Advocate for Strong Settlements.*  Business interests, politicians, and even many

-9-

distinguished jurists have lamented class action results where class members receive pennies after onerous claims processes, while class action lawyers get millions.  My firm and I have a reputation for bucking that trend.  In the *AWP* cases, class members received three-fold their losses; in *E-Books*, class members received a 100-200% recovery; in the *Schwab Yield Plus* securities litigation, class members received 42% of federal law and 82% of state law damages; and in the *Volkswagen* and *Mercedes* emissions fraud class actions, many class members received tens-of-thousands of dollars.  In *Toyota Sudden Unintended Acceleration*, I refused a settlement offer exceeding $1 billion until Toyota agreed to fix what I perceived to be a dangerous and life-threatening defect, and Toyota relented.  In sum, we settle only when a defendant offers genuine relief to consumers. We look to make our clients whole, not ourselves.

*I am already devoted to this case*.  On August 19, 2022, on behalf of the *McNerney* Plaintiffs, co-counsel Jeff Goldenberg and I filed a proposed class action in this Court on behalf of a nationwide class, and Illinois and Ohio subclasses.  On November 16, 2022, we filed an additional case in this Court on behalf of a nationwide class and Alabama, Arkansas, California, Delaware, Georgia, Illinois, Indiana, Kentucky, Maryland, Massachusetts, Michigan, Minnesota, North Carolina, Ohio, Pennsylvania, Rhode Island, Tennessee, Texas, and Wisconsin subclasses. These complaints are the most comprehensive filed in these actions, and between these two cases, we represent 37 plaintiffs from 19 states.  We represent plaintiffs who have had their cars stolen (with and without comprehensive insurance coverage) and those who have not (yet).  I have conducted extensive fact research into the case, helped draft the two complaints that we filed, filed the motion with the MDL Panel to transfer and consolidate the related actions in this District, conducted a preliminary damage analysis, and members of my team have spoken with scores of plaintiffs and putative class members during our research.  I have also diligently carried out my duties as Initial Conference Counsel by communicating with other plaintiffs' counsel and defense counsel and jointly preparing the Joint Preliminary Report.

-10-

1

Dated: January 23, 2023.          Respectfully Submitted.

2

3                                  By: */s/ Steve W. Berman*
                                       Steve W. Berman, Esq. (pro hac vice)
4                                      HAGENS BERMAN SOBOL SHAPIRO LLP
                                       1301 Second Avenue, Suite 2000
5                                      Seattle, WA 98101
                                       Telephone: (206) 623-7292
6                                      Facsimile: (206) 623-0594
7

8                                      *Initial Conference Counsel and Counsel for*
                                       *Plaintiffs*
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BERMAN APPLICATION FOR CO-LEAD COUNSEL APPOINTMENT          No. 8:22-ML-3052 JVS(KESx)
011112-11/2136398 V1

1

**PROOF OF SERVICE**

2

I hereby certify that a true copy of the above document was served upon the attorney of record for each other party through the Court's electronic filing service on January 23, 2023.

3

4

5

6

<u>/s/ Steve W. Berman</u>

Steve W. Berman

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BERMAN APPLICATION FOR CO-LEAD COUNSEL APPOINTMENT          No. 8:22-ML-3052 JVS(KESx)
011112-11/2136398 V1