Steve W. Berman, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Elizabeth A. Fegan, Esq.
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain, Esq.
HUMPHREY FARRINGTON & McCLAIN, P.C.
221 W. Lexington Ave., Suite 400
Independence, MO 64050

*Initial Conference Counsel and Counsel for Consumer Class Plaintiffs*

Peter J. Brennan, Esq.
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456

*Initial Conference Counsel and Counsel for Defendants*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 8:22-ML-3052 JVS(KESx) |
| | **JOINT PRELIMINARY REPORT** |
| This document relates to: | Date: February 7, 2023 |
| | Time: 9:00 a.m. |
| ALL CASES | Place: 411 W. Fourth Street, Santa Ana, CA 92701 Court Room 10C |

# TABLE OF CONTENTS

**Page**

I.   PROPOSED STRUCTURE OF COUNSEL ........................................ 1

   A.   Plaintiffs' Statement ......................................................... 1

   B.   Defendants' Statement ...................................................... 4

II.  STATEMENT OF FACTS AND CRITICAL LEGAL ISSUES ......... 4

   A.   Joint Statement of Facts and Legal Issues................................. 4

   B.   Plaintiffs' Statement Of Facts And Legal Issues ...................... 6

      1.   Hyundai and Kia Failure to Use Engine Immobilizer Technology................................................... 6

      2.   Theft of Hyundai and Kia Vehicles Without Engine Immobilizer Technology.................................. 7

   C.   Defendants' Statement of Facts and Legal Issues...................... 8

   D.   Dispositive Issues ........................................................... 11

      1.   Plaintiffs' Position .................................................... 11

      2.   Defendants' Position.................................................. 11

III. PROPOSED DEFINITION OF CORE DISCOVERY ..................... 13

   A.   Plaintiffs' Identification of Core Discovery............................. 13

      1.   Core Discovery Topics ................................................ 13

      2.   Relevant Time Period for Core Discovery ................... 17

      3.   Types of Discovery .................................................... 17

      4.   Timing ...................................................................... 18

   B.   Defendants' Identification of Core Discovery ......................... 18

      1.   Core Discovery Topics ................................................ 18

      2.   Timing ...................................................................... 20

IV.  PENDING MOTIONS ................................................................ 21

V.    KNOWN RELATED CASES ............................................................ 21

VI.   PARENTS, SUBSIDIARIES, AND COMPANIES
      AFFILIATED WITH THE CORPORATE PARTIES ...................... 21

VII.  COUNSEL ASSOCIATED IN THE LITIGATION .......................... 22

# JOINT PRELIMINARY REPORT

Pursuant to the Court's Case Management Order No. 1: Initial Conference ("Order") dated December 22, 2022, Initial Conference Counsel respectfully submit the following Joint Preliminary Report. Order, ⁋ 4.3.[1]

## I.    PROPOSED STRUCTURE OF COUNSEL

The Order preliminarily contemplated a counsel structure with a "Leadership Committee" with responsibility for drafting and presenting to the Court an overall scheduling plan, including a discovery plan, and a Subcommittee each for fact discovery and expert discovery. The Order invited the parties to comment on two specific issues: (i) "whether there should be specific representation on the Leadership Committee for commercial interests, such as fleet owners"; and (ii) "whether a liaison committee should be appointed to coordinate with state proceedings." Order at 2.

## A.    Plaintiffs' Statement

Having met and conferred with various Plaintiffs' Counsel, Initial Conference Counsel for Plaintiffs recommend the following structure for Plaintiffs' counsel. This structure was sent to all counsel on file at the time, and all Plaintiffs' counsel supported the overall structure:

- **Lead Counsel Committee**
  - Three members, with one member appointed Chair.
  - The Lead Counsel Committee is responsible for (i) steering the overall litigation for the plaintiffs, (ii) communicating with, and presenting arguments to, the Court, (iii) drafting and submitting all pleadings and briefing to the Court, (iv) managing all discovery, (v) convening meetings of counsel as needed, (vi) engaging in any settlement

---

[1] Defendants in the transferred cases include Kia America, Inc. ("KA"), Kia Corporation ("KC"), Hyundai Motor America ("HMA"), Hyundai Motor Company ("HMC"), and Hyundai America Technical Center, Inc. ("HATCI"). Not all Defendants have been served in every case.

1

negotiations, and (vii) otherwise assisting in the coordination of activities and positions.

- **Executive Committee**
  - o Four members to include: (i) a lawyer that has fleet owners as clients, (ii) a lawyer that has clients with stolen cars and who were insured, (iii) a lawyer that has clients with stolen cars and who did not have insurance, (iv) a lawyer with clients whose cars were not stolen. Further, the Court may appoint two additional members at a later time to include (v) a firm that represents an insurer, should insurers enter the MDL; and (vi) a dealer, should dealers enter the MDL.
  - o The Executive Committee members shall advise lead counsel on any issues impacting their clients and may also serve on the Fact or Expert subcommittees if the Court so desires.

- **Fact Discovery Subcommittee**
  - o Comprised of five lawyers.
  - o Two of the five members come from Lead Counsel.
  - o The Fact Discovery Subcommittee is responsible for directing fact discovery aimed at defendants and for facilitating responses to fact discovery served on plaintiffs.

- **Expert Discovery Subcommittee**
  - o Comprised of five lawyers.
  - o Two of the five members come from Lead Counsel.
  - o The Expert Discovery Subcommittee is responsible for working with plaintiffs' experts and directing discovery aimed at the defense experts.

This proposed structure ensures that the interests of all categories of plaintiffs and putative class members are adequately represented (including non-consumers), provides numerous firms with the opportunity to participate in leadership positions, yet is

sufficiently streamlined to ensure sufficiency. *See* ANNOTATED MANUAL FOR COMPLEX LITIGATION (FOURTH), § 10.221 at 37 (2022).

As to the Court's question about whether a liaison committee should be appointed to coordinate with state proceedings, we believe that it is unnecessary. This is not a case that involves personal injury and wrongful death and, consequently, there are unlikely to be related state proceedings.

Plaintiffs also do not believe it is appropriate to appoint a member representing a local government to leadership, at this stage of the MDL.  The parties are aware of only one local government action filed to date, which was just filed on January 24, 2023. This action is meaningfully distinct from the other actions involved in this litigation as it brings just one count for public nuisance and does not seek to represent a class of consumers. *See infra* § II.A (detailing the types of claims/causes of action alleged in this litigation). As stated below, it is anticipated that one or more parties may object to the transfer of this local government action into the MDL. *See id.* It is conceivable that other local governments may become involved in this litigation in an effort to recover the increased costs associated with responding to and investigating the dramatic increase in auto theft. If such cases do get filed and are transferred into the MDL, it may then be appropriate to appoint a liaison to those cases (if filed in state court) or to appoint a representative for the local government plaintiffs to the Executive Committee.

As a final matter, Initial Conference Counsel for Plaintiffs circulated a draft of this proposed leadership structure and Joint Status Report to all known consumer plaintiffs' counsel on January 12 and 18, 2023. Initial Conference Counsel for Plaintiffs want to express their appreciation for all other plaintiffs' counsel that thoughtfully reviewed the draft and shared their thoughts. In their decades of collective experience overseeing large MDLs such as this one, Initial Conference Counsel were pleasantly surprised to see an overwhelming consensus regarding their proposed structure. The overall agreement on this proposed leadership structure is evident in the various appointment applications submitted by plaintiffs' counsel.

**B.    Defendants' Statement**

Defendants generally agree with the structure set forth by Plaintiffs except for the proposed Executive Committee.  The proposed Executive Committee introduces an unnecessary layer of bureaucracy, as it is almost inevitable that the Lead Counsel will have clients in proposed categories (ii), (iii), and (iv).  However, there are currently no cases involving (i) "fleet owners," (v) "insurers," or (vi) "dealers" as plaintiffs.  A simple direction to the Lead Counsel Committee to listen to and consider the views of any counsel who have clients with special or differing interests—something that members of that committee will undoubtedly do in any event—should be more than sufficient.  Defendants also agree with Plaintiffs that there is no need to appoint a member representing local governments to leadership at this time, particularly given that there are currently no cases involving local government plaintiffs in this MDL.

## II.    STATEMENT OF FACTS AND CRITICAL LEGAL ISSUES

**A.    Joint Statement of Facts and Legal Issues**

On December 13, 2022, the Judicial Panel on Multidistrict Litigation (JPML) issued an order in MDL No. 3052 transferring sixteen cases from fourteen District Courts across the United States to this Court for consolidation and pre-trial coordination pursuant to 28 U.S.C. §1407. At that time, an additional 34 cases were identified by the JPML as potentially-related actions. To date, a total of approximately 55 cases from 26 District Courts are currently pending in this MDL.

All of the cases transferred as part of MDL No. 3052 involve claims arising from the allegation that certain vehicles distributed or manufactured by Defendants did not include "engine immobilizers," which allegedly made them more susceptible to theft. The various complaints contain different putative class definitions, but the majority of the complaints define "Class Vehicles" (or "Affected Vehicles") as certain Kia vehicles

between model years 2011-2021 and certain Hyundai vehicles between model years 2015-2021 that lack engine immobilizers.[2]

The overwhelming majority of the transferred cases involve claims seeking certification of nationwide classes or, alternatively, certification of single state classes. Only two cases do not involve class claims. At this time, the transferred cases only involve claims for economic damages; none of the transferred cases involve claims for personal injury or death. Defendants have objected to the transfer of one case involving wrongful death claims—that objection is currently being litigated before the JPML. Additionally, one case was recently filed involving a local government plaintiff with a sole count for public nuisance—one or more parties may object to its transfer to this MDL.

In general, the transferred cases allege the following types of claims/causes of action:

- Violations of consumer protection and deceptive trade practices acts;
- Misrepresentation (fraud/fraudulent concealment, negligent misrepresentation);
- Breach of warranty (implied, express, Magnuson-Moss Warranty Act);
- Product liability (including design defect and failure to warn); and
- Unjust enrichment.

The categories of economic damages sought can be generally described as follows:
- Reimbursement related to vehicle theft;
- Diminution in value of vehicle; and
- Damages related to insurance.

Plaintiffs may also seek declaratory relief in the form of a public relations or notice campaign once a fix is available.

Plaintiffs' Interim Conference Counsel expect that, once appointed, Plaintiffs' Lead Counsel Committee will request a reasonable time period to prepare and file a

---

[2] The parties expect the putative class definition(s) to be further refined as this MDL continues.

Consolidated Amended Complaint that synthesizes the various facts, class definitions, and causes of action alleged in the lawsuits constituting this MDL. Plaintiffs' Interim Conference Counsel envisions that all counsel will need to be consulted with in preparing this pleading to insure that all possible claims are considered. They request that the timing of this pleading account for such consultation. Similarly, Defendants request that, in conjunction with setting the timing for that pleading, a schedule also be set for briefing motion(s) to dismiss that pleading, as Defendants believe that a decision on that motion will result in the resolution of this litigation.

**B.   Plaintiffs' Statement Of Facts And Legal Issues**

**1.      Hyundai and Kia Failure to Use Engine Immobilizer Technology**

The National Highway Traffic Safety Administration ("NHTSA") defines an engine immobilizer as "an anti-theft device that combines microchip and transponder technology with engine and fuel immobilizer components that can prevent vehicles from starting unless a verified code is received by the transponder. *See* Fed. Reg. Vol. 81, No. 189 at 66833, Sept. 29, 2016. *See also* 49 CFR §543.4 ("*Immobilizer* means a device that, when activated, is intended to prevent a motor vehicle from being powered by its own propulsion system.") (italics in original).

Engine immobilizer technology started became commonplace in the automotive industry in the mid-1990s. By 1998, the European Union began requiring engine immobilizers in all new vehicles being sold. *See* European Union Directive 74/61/EEC. Similar laws went into effect in Australia in 2001 and Canada in 2007. *See* Australian Design Rule 82/00 – Engine Immobilsers; Canadian Motor Vehicle Safety Standard 114, Theft Protection and Rollaway Prevention.

Insurance industry data has shown that once factory-installed vehicle immobilizer systems began being installed, they significantly reduced vehicle theft. *See* Highway Loss Data Institute (HLDI) Bulletin Vol. 38, No. 28 (December 2021) at pg. 1. While the majority of automobiles sold in the United States included these anti-theft features with their vehicles, Hyundai and KIA remained well behind the industry in implementing

this technology. *Id*. For example, in 2015, Hyundai and KIA only equipped 26% of their vehicles with standard-equipment immobilizers, while 96% of all other vehicles were equipped with immobilizer technology. *Id*.



*Id*. at pg. 2. As the graph above shows, in 2020, the automotive industry equipped nearly all vehicles with immobilizers as standard equipment.

Although they failed to include this technology as standard equipment, both Hyundai and KIA understood the benefits provided by engine immobilizer technology.

While discovery will demonstrate the actual scope of Affected Vehicles, preliminary information suggests that the number of vehicles lacking immobilizer technology may exceed 8 million across the various vehicle lines.

### 2.    Theft of Hyundai and Kia Vehicles Without Engine Immobilizer Technology

Predictably, this lack of anti-theft technology in Hyundai and KIA vehicles was exploited. In 2019, Denver, Colorado-area law enforcement began to take notice of an acute increase in the number of Hyundai and KIA vehicles being stolen. See *Denver Police Report Huge Spike in Kia Thefts*, https://cbsnews.com/colorado/news/denver-police-kia-thefts/ (accessed January 9, 2023). This trend continued and, by 2021, the Highway Loss Data Institute reported that from 2019 to 2021, the frequency of Hyundai and KIA theft claims in Denver increased by a factor of 10. HLDI Bulletin at pg. 1. During this same time period, the increase in vehicle theft was even more pronounced in Milwaukee, Wisconsin, where thefts of Hyundai and KIA vehicles increased by 30 times.

*Id.* While not as dramatic, the nationwide change in Hyundai and KIA vehicle thefts in 2021 increased 100% over the same reporting period for the previous year as reflected in the following table. *Id.*



*Id.*

Prior to 2020, theft of Hyundai and KIA model vehicles generally tracked that of vehicles made by other manufacturers. However, as the graph below clearly shows, in January 2020, theft claims for Hyundai and KIA model vehicles began to rise and by the following year the incidence of Hyundai and KIA vehicle theft was approximately double that for all other vehicles.



*Id.* at pg. 5.

## C.   Defendants' Statement of Facts and Legal Issues

As an initial matter, Defendants do not believe it is appropriate at this time to delve into statistics and studies related to immobilizer technology and vehicle theft.  To the extent this case proceeds past the motion to dismiss stage, discovery can be used to

explain and contextualize the available research.  Nonetheless, to respond to Plaintiffs' inaccurate characterization of the data, Defendants note the following: In the NICB 2021 *Hot Wheels Report*, none of the vehicle models at issue here appeared in the NICB's national Top 10 "most stolen vehicles." *See Chevrolet and Ford Full Size Pick-Ups Most Stolen Vehicles For Second Year in a Row*, NATIONAL INSURANCE CRIME BUREAU (July 19, 2022), https://www.nicb.org/news/news-releases/chevrolet-and-ford-full-size-pick-ups-most-stolen-vehicles-second-year-row.

Further, as Plaintiffs try to ignore, immobilizer technology has not been and still is not required in vehicles sold in the United States.  Thus, these cases are an attempt to impose a retroactive requirement going back 10-plus years that requires all automotive companies to have produced their vehicles with an immobilizer as standard equipment on all trim levels regardless of price point even though neither NHTSA nor any other regulatory body in the United States has ever imposed such a requirement.  It is not the place of the courts to impose such a requirement, notwithstanding Plaintiffs' mischaracterization of engine immobilizers as a "safety" feature.

These cases are also an attempt by Plaintiffs to hold Defendants liable for the actions of third-party criminals.  This apparent theft wave by amateur thief joy-riders based on social media videos was unforeseeable; indeed, no one could have predicted a universe in which thieves were comfortable driving around with a broken window, thereby signaling that they are driving a stolen vehicle, and uploading footage of their crimes to social media as a social media "challenge."  Further, the chain of causation is too attenuated to hold Defendants liable.

Plaintiffs cannot legitimately dispute that the Class Vehicles were manufactured as designed and as represented to purchasers.  Plaintiffs purchased and leased vehicles and/or vehicle trim levels without immobilizers and now say that they should not have been able to do so.  Indeed, they say that no vehicle should have been offered by sale by any manufacturer unless it came equipped with a standard immobilizer.  Although Plaintiffs claim Defendants made misrepresentations, they are unable to identify any

specific misrepresentations or explain how they relied on any misrepresentations to their detriment.   The Class Vehicles fully complied and comply with all applicable regulations, including Federal Motor Vehicle Safety Standard ("FMVSS") 114, which does not require the use of immobilizers.

As Plaintiffs' description of the issues makes clear, Plaintiffs differ in countless respects, including:

- Some Plaintiffs own or lease vehicles *with* immobilizers.
- Only some Plaintiffs have allegedly had their vehicles stolen.
- The circumstances of the vehicle thefts differ greatly.
- The Plaintiffs whose vehicles were allegedly stolen suffered different alleged injuries.
- Some Plaintiffs allege damages connected to the thefts, while others do not.
- Some Plaintiffs allege their vehicles were repaired, while others allege that their vehicles were not repaired for various reasons.
- Of the Plaintiffs whose vehicles were allegedly stolen, not all have recovered their vehicles.
- Some Plaintiffs have vehicles with warranties that are still within the warranty periods, and some do not.
- Some Plaintiffs purchased/leased new vehicles, and some Plaintiffs purchased/leased used vehicles.
- Only some Plaintiffs purchased vehicles from authorized Kia or Hyundai dealerships.
- Only some Plaintiffs allege (broadly) that they viewed and/or relied on representations made by Defendants.

These differences will also exist among class members, ultimately precluding certification of any class in the unlikely event Plaintiffs are able to survive motion(s) to dismiss.   Additional questions will also have to be answered on an individual basis, precluding class certification, including: (i) whether the value of a putative class

member's vehicle has diminished (and, if so, by how much); and (ii) if the putative class member's vehicle was stolen, the cause of that theft.  Further, many of the Plaintiffs and putative class members, including those whose vehicles have not been stolen, lack Article III standing, as they have not suffered any injury.

Plaintiffs also purchased their vehicles in different states and reside in different states, and therefore different states' laws will apply to different Plaintiffs' claims. Relatedly, Plaintiffs will not be able to certify a nationwide class because of the many differences in state laws.

Defendants intend to make numerous dispositive legal arguments via motion(s) to dismiss (or via motion for summary judgment to the extent any claims survive the motion to dismiss stage).  Those arguments are discussed in the next section.

**D.    Dispositive Issues**

    **1.    Plaintiffs' Position**

Plaintiffs do not foresee any potentially dispositive motions. First, Plaintiffs believe that, for purposes of this Report, elaborate detail and argument about Defendants' anticipated dispositive motions is inappropriate. Plaintiffs reserve the right to fully contest Defendants' arguments at the appropriate time, after discovery has commenced and such issues can be informed by factual development; after Plaintiffs determine on which claims and theories to proceed through either a consolidated complaint or amended complaints. While Plaintiffs will respond to any such arguments at the appropriate time, they do not believe any such "dispositive" motion would be meritorious.

    **2.    Defendants' Position**

Defendants intend to file motions to dismiss, which Defendants expect to dispose entirely of these cases.  Indeed, that is why Defendants filed motions to dismiss in the first-filed of these actions more than a year ago and those motions have been fully briefed, yet undecided, for nearly a year.  To the extent this MDL proceeds past the motion to dismiss stage, Defendants intend to raise such arguments in a motion for

11

summary judgment.  Potential arguments are listed below (although Defendants intend to more fully flesh out these arguments in an appropriate motion):

- Plaintiffs' claims are preempted.
- Defendants are not liable for the intervening acts of third parties.
- Many of Plaintiffs' claims are barred by the applicable statutes of limitations.
- Plaintiffs whose vehicles have not been stolen lack Article III standing.
- Plaintiffs cannot seek equitable relief because they have an adequate remedy at law.
- As to the breach-of-warranty claims:
  - Many Plaintiffs did not provide notice of the alleged breach to Defendants.
  - The warranty period has expired for many of the Plaintiffs' claims.
  - The express warranties expressly exclude coverage for the allegations here.
  - Defendants have not breached any implied or express warranties.
  - Plaintiffs lack privity with Defendants.
- As to the fraud, misrepresentation, and consumer protection statute claims:
  - Plaintiffs cannot establish reliance.
  - Plaintiffs cannot establish causation.
  - Defendants did not make any actionable affirmative misrepresentations.
  - Defendants did not fail to disclose any information they were obligated to disclose.
  - Many Plaintiffs' claims are barred by the economic loss rule.
- As to the product liability and negligence claims (including failure to warn and design defect claims):
  - Many Plaintiffs' claims are barred by the economic loss rule.
  - Many Plaintiffs did not suffer any physical harm.
  - Defendants did not breach any duty.

- o   Plaintiffs cannot establish causation.
- As to the unjust enrichment claims:
  - o   Many states do not recognize unjust enrichment as a separate cause of action.
  - o   The unjust enrichment claims fail with Plaintiffs' other claims.
  - o   Plaintiffs received something of value.
  - o   Defendants were not unjustly enriched.

### III.   PROPOSED DEFINITION OF CORE DISCOVERY

## A.   Plaintiffs' Identification of Core Discovery

Based on their investigation to date, Plaintiffs identify the following core discovery topics.

### 1.   Core Discovery Topics

The factual issues that will be the subject of discovery in this litigation primarily concern Defendants' design, manufacture, and marketing of the putative Affected Vehicles, and the timing and extent of Defendants' knowledge of the alleged Defect(s) and the attendant auto theft risks.

Plaintiffs anticipate the following core discovery topics relating to the design and manufacture of the Affected Vehicles:[3]

- The nature, scope, and existence of design and/or manufacturing defect(s) in the Affected Vehicles that create a security vulnerability in the vehicles and makes them highly prone to theft;
- The design, development, and manufacture of the Affected Vehicles' steering column assembly and ignition systems, including, the ignition lock cylinders and ignition switches, as well as alternative and competitive product designs;

---

[3] The core discovery topics listed in the paragraphs below are not exclusive to the stated topic. For example, Defendants' decisions to exclude engine immobilizers as a standard safety component in all of their vehicles sold in the United States prior to 2023 is relevant to issues pertaining to design of the Affected Vehicles as well as Defendants' knowledge of the alleged Defect(s) and increased risk of auto theft.

- The design, development, and manufacture of the Affected Vehicles' anti-theft and alarm systems, as well as alternative and competitive product designs;

- Whether Defendants' design, development, and manufacture of the Affected Vehicles comport with the standard of care in the automotive industry and Federal Motor Vehicle Safety Standards ("FMVSS"), including FMVSS No. 114;

- Defendants' documentation, testing and evaluation demonstrating compliance with FMVSS No. 114;

- Defendants' submissions to NHTSA regarding any proposed rulemaking concerning FMVSS 114, engine immobilizers, or exemptions to parts marking requirements ("PMR");

- Whether the alleged Defect(s) in the Affected Vehicles was a substantial factor in auto thefts of such Vehicles;

- Defendants' applications to NHTSA for exemptions from PMR for certain of their vehicles, pursuant to 49 C.F.R. §§ 543.1 *et seq.*;

- Defendants' knowledge concerning the effectiveness of engine immobilizers in preventing auto thefts;

- Defendants' decisions to exclude engine immobilizers as a standard safety component in all of their vehicles sold in the United States prior to model year 2023 vehicles and Defendants' decisions to include immobilizers in certain models;

- Defendants' decision to install engine immobilizers in any of their U.S. vehicles.

Plaintiffs anticipate the following core discovery topics relating to the timing, nature, and extent of Defendants' knowledge of the alleged Defect(s) and the increased risk of theft for the Affected Vehicles:

- Defendants' notice, awareness, and intent, *i.e.*, what they knew or should have known regarding the alleged Defect(s) and attendant increased risk of auto thefts;

- The incidents of auto thefts involving the Affected Vehicles and other vehicles made by Defendants, and people who have experienced, witnessed or documented such incidents, including insurance and law enforcement personnel;

- What Defendants did and failed to do when it learned of the alleged Defect(s) and attendant auto theft problem;

- Defendants' representations and conduct regarding the alleged Defect(s) and attendant auto theft problem;

- Defendants' concealment and omissions regarding the alleged Defect(s) and attendant auto theft problem;

- Defendants' communications with affiliates and their dealerships relating to the alleged Defect(s) and attendant auto theft problem;

- Information provided by dealerships to Defendants relating to the alleged Defect(s) and attendant auto theft problem;

- Warranty and replacement part records for components affected by the alleged Defect(s), including steering column assemblies, ignition lock cylinders, ignition switches, windows, and alarm systems;

- Customer reports, complaints, lawsuits and claims relating to the alleged Defect(s) and attendant auto theft problem;

- Defendants' dealings with regulatory agencies, including NHTSA relating to the alleged Defect(s) and attendant auto theft problem;

- Defendants' position(s) in government and legislative investigations relating to the alleged Defect(s) and attendant auto theft problem.

Plaintiffs anticipate the following core discovery topics relating to the sale and marketing of the Affected Vehicles:

- Defendants' marketing and promotional efforts regarding the Affected Vehicles and the results of these efforts, including Defendants' marketing campaigns regarding the safety, quality, and reliability of the Affected Vehicles;

- Defendants' development and dissemination of owner manuals for the Affected Vehicles;
- Defendants' duty and responsibility to disclose the alleged Defect(s) and attendant auto theft problem;
- Defendants' decisions as to whether and when to notify owners, purchasers, and lessees of the Affected Vehicles of the alleged Defect(s) and attendant auto theft problem.

Plaintiffs anticipate the following core discovery topics that relate to other matters relevant to Plaintiffs' claims:

- Defendants' management structures, corporate hierarchies, the role of particular divisions and the identity of specific personnel responsible for matters relevant to the claims and defenses in these actions, i.e., the core discovery topics;
- Defendants' preservation of relevant evidence, including potential loss, destruction, or spoliation of evidence, including electronically stored information;
- The feasibility of repairing the alleged Defect(s) and/or preventing auto theft incidents involving the Affected Vehicles, including the potential cost, availability, or effectiveness of possible remedies;
- Whether consumers have been harmed by the alleged Defect(s) in the Affected Vehicles;
- The diminution of value of the Affected Vehicles as a result of the alleged Defect(s) and attendant auto theft problem;
- Consequential damages borne by Class Vehicle owners and lessees as a result of the alleged Defect(s) and attendant auto theft problem, including increased insurance expenses;
- Whether Defendants' conduct and business practices concerning the alleged Defect(s) and attendant auto theft problem were unfair, unlawful, fraudulent, and/or misleading;

16

- The nature and extent of any damages Plaintiffs have suffered.

Additionally, because Plaintiffs' claims include rescission/restitution claims, and statutory claims that provide for multiple damages and/or penalties, and because punitive damages have been alleged by Plaintiffs, discovery into Defendants' finances and profits will also be required.

### 2.    Relevant Time Period for Core Discovery

This litigation concerns over a decade's worth of vehicles manufactured and sold by Defendants, which go back to model year 2011 vehicles. Typically, it takes several years to design a vehicle and each vehicle incorporates design elements from prior model years. This means that many of the key components central to this litigation (*i.e.*, ignition, anti-theft, and alarm systems) were likely designed by Defendants many years before they were sold. Defendants have installed engine immobilizers as standard equipment in all of their vehicles sold in Europe since 1998, Australia since 2001, and Canada since 2007. Accordingly, the scope of discovery for topics relating to the design of the Affected Vehicles and Defendants' knowledge of the auto theft problem involving Affected Vehicles should go back to at least 1998.

### 3.    Types of Discovery

Core discovery will involve the deposition of Defendants' employees and corporate designees involved in the design and implementation, development, and manufacture of the Affected Vehicles' steering column assembly, ignition systems, and anti-theft and alarm systems, and those current and former employees who have knowledge of the alleged Defect(s) and attendant auto theft problem in both the design stage of the vehicles as well as post-sale.

Plaintiffs also anticipate taking the depositions of employees and corporate designees of Defendants' affiliates, *e.g.*, Hyundai America Technical Center, Inc. ("HATCI"),[4] third-party component suppliers of various components installed in the

---

[4] HATCI has been named a defendant in some, but not most, related actions.

Affected Vehicles, including, steering column assemblies, ignition lock cylinders, ignition switches, windows, and alarm systems, and insurance and/or law enforcement personnel who have experience with the auto theft problem created by the alleged Defect(s).

Defendants and other third parties in the automotive industry largely rely on electronic records. Plaintiffs anticipate that electronically stored information will be the primary form of information sought.

Document discovery can start expeditiously, by Defendants' production of the documents, information, and statements that they have exchanged with NHTSA, legislatures, and/or the news media relating to the auto theft problem. Additionally, Defendants can expedite discovery by producing all records relating to their ongoing investigations into the auto theft problem and their proposed or anticipated remedies for the alleged Defect(s).

Plaintiffs anticipate that Defendants will seek written discovery and oral testimony from each Plaintiff related to their purchase or lease of their Class Vehicle.

### 4.   Timing

Plaintiffs contend that discovery should proceed notwithstanding any forthcoming Rule 12 motion practice.

## B.   Defendants' Identification of Core Discovery

### 1.   Core Discovery Topics

*From Defendants*

Defendants understand that Plaintiffs will seek the discovery described above. Defendants will provide their objections at the appropriate time if the litigation proceeds to the discovery stage.  For informational purposes, Defendants note the following: HMA and KA distribute for further sale and market certain Hyundai and Kia brand vehicles, respectively, in the United States.  HMA and KA are not now, nor have they ever been, responsible for the design, manufacture, developmental testing, FMVSS compliance

testing, or assembly of any Hyundai or Kia brand vehicles.  HMC and KC are responsible for the overall design and testing of Hyundai and Kia vehicles, respectively.

*From Plaintiffs*

Defendants anticipate taking Plaintiffs' depositions and seeking written discovery on the following categories:

- Documents/information concerning Plaintiffs' vehicles, including
    - Year, make, model, and VIN
    - Location of the vehicle
    - Ownership history
    - Service and maintenance history
    - Prior accidents
    - Aftermarket modifications
- Documents/information concerning the alleged thefts of Plaintiffs' vehicles, including
    - Date and time of thefts
    - Witnesses with knowledge of thefts
    - Police reports regarding thefts
    - Insurance communications
    - Injury/damages related to theft
- General background information concerning Plaintiffs, including
    - Identifying information
    - Education history
    - Employment history
    - Vehicle history
    - Litigation history
- Other potential damages information, including
    - Price paid for vehicle, lease payment history for vehicle, or vehicle financing history

19

1    o   Efforts to sell or trade in the vehicle, including any offers made or accepted

2    o   Purported evidence of diminution in value of the vehicle

3   *From Third Parties*

4       Defendants may seek the following discovery from third parties:

5   • Theft data and statistics

6   • Documents from insurers, including documents regarding underwriting and pricing

7   • Documents reflecting ownership of Plaintiffs' vehicles, including title/lease

8       documents

9   • Documents reflecting maintenance, repairs, or alterations to Plaintiffs' vehicles

10  • Documents reflecting financing of Plaintiffs' vehicles

11  • Police reports or other documents related to thefts of Plaintiffs' vehicles

12  *Expert Discovery*

13      Defendants anticipate using experts but believe it is premature to discuss the topics

14  of that discovery at this time.

15      **2.   Timing**

16      Plaintiffs should be required to survive motions to dismiss before Defendants are

17  required to produce any discovery, particularly given that Plaintiffs are unlikely to

18  survive the motion to dismiss stage.  *See, e.g.*, *Mujica v. AirScan Inc.*, 771 F.3d 580, 593

19  (9th Cir. 2014) (The Supreme Court has stated . . . that plaintiffs must satisfy the pleading

20  requirements of Rule 8 *before* the discovery stage, not after it.) (citing *Ashcroft v. Iqbal*,

21  556 U.S. 662, 678–79 (2009)); *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 225 F. Supp.

22  3d 1178, 1180 (S.D. Cal. 2016) ("Plaintiffs are not entitled to discovery in order to allege

23  sufficient facts to 'nudge [their] claim across the line from conceivable to plausible.'")

24  (citations omitted).  And even if motions to dismiss does not entirely dispose of all

25  Plaintiffs' claims, they will undoubtedly narrow the claims and accordingly narrow the

26

27

28

scope of discovery.  Thus, it is most efficient to stay discovery until Plaintiffs can survive motions to dismiss.[5]

## IV.   PENDING MOTIONS

Motions are pending in only one case, *Marvin et al. v. Kia America, Inc. et al.*, No. 2:21-cv-01146-PP (E.D. Wis.), and are set forth below:

1.   Defendants Kia America, Inc. and Hyundai Motor America's Motion to Dismiss (Dec. 22, 2021) (Dkts. 19, 20)

2.   Defendant Hyundai America Technical Center, Inc.'s Motion to Dismiss (Dec. 22, 2021) (Dkts. 21, 22)

3.   Plaintiffs' Motion to Take Judicial Notice (Aug. 23, 2022) (Dkt. 36)

## V.   KNOWN RELATED CASES

Attached as <u>Exhibit A</u> is a chart listing all related federal cases that the parties are currently aware of, as well as the status of each such case.

Attached as <u>Exhibit B</u> is a chart listing one federal case currently pending an opposition to its transfer before the JPML.

Attached as <u>Exhibit C</u> is a chart listing one federal case whose transfer may be opposed by one or more parties before the JPML.

The parties are not currently aware of any state court cases that are related to this litigation and that have not yet been removed to federal court.

## VI.   PARENTS, SUBSIDIARIES, AND COMPANIES AFFILIATED WITH THE CORPORATE PARTIES

*Kia Entities*

Kia America, Inc. ("KA") is a California corporation with its principal place of business in Irvine, California.  KA is a wholly-owned subsidiary of Kia Corporation

---

[5] Defendants further note that they have had motions to dismiss pending in the first-filed case, *Marvin et al. v. Kia America, Inc. et al.*, No. 2:21-cv-01146-PP (E.D. Wis.), since December 2021.  That motion has been fully briefed since March 2022.  The court in that case ultimately declined to rule on the motions once the MDL proceedings before the JPML had begun, but Defendants expect that a ruling on those motions would have deterred the filing or pursuit of many of the cases in this MDL.

("KC").  KC is a publicly traded corporation on the Korean stock exchange and is organized under the laws of the Republic of Korea with its principal place of business in Seoul, South Korea.  Hyundai Motor Company owns 10% or more of KC's stock.

*Hyundai Entities*

Hyundai Motor America ("HMA") is a California corporation with its principal place of business in Fountain Valley, California.  Hyundai Motor Company ("HMC") is the sole parent corporation and owner of HMA.   HMA is not a publicly traded corporation.  HMC is a publicly traded corporation on the Korean stock exchange and is organized under the laws of the Republic of Korea with its principal place of business in Seoul, South Korea.  Hyundai MOBIS Co., Ltd. owns 10% or more of HMC's stock.

Hyundai America Technical Center, Inc. ("HATCI") is a Michigan corporation with its principal place of business in Superior Township, Michigan.  HATCI is a wholly-owned subsidiary of HMC.

## VII.  COUNSEL ASSOCIATED IN THE LITIGATION

*Plaintiffs' Counsel*

The following counsel will be involved in this MDL proceeding on behalf of Plaintiffs:

- Baer Law, LLC
- Baker & Patterson LLP
- Baron & Budd, P.C.
- Barton Legal S.C.
- Begam Marks & Traulsen, PA
- Boni, Zack & Snyder
- Brad Sohn Law Firm, PLLC
- Burns Charest LLP
- Bursor & Fisher, P.A.
- Chestnut Cambronne, PA
- Conley Griggs Partin, LLP

- Consumer Protection Legal LLC
- DiCello Levitt Gutzler LLC
- Donner Applewhite, Attorneys at Law
- Fegan Scott LLC
- Futscher Law, PLLC
- Gadtke Law Firm, P.A.
- Gertler Law Firm
- Glancy Prongay & Murray LLP
- Goldenberg Schneider, LPA
- Golomb Spirt Grunfeld, P.C.
- Gustafson Gluek PLLC
- Hagens Berman Sobol Shapiro LLP
- The Harrington Firm
- Hellmuth & Johnson, PLLC
- Humphrey, Farrington & McClain, P.C.
- Hovde Dassow & Deets, LLC
- Janet, Janet & Suggs, LLC
- Johnson Becker PLLC
- Kazerouni Law Group, APC
- Kent, Beatty & Gordon, LLP
- Kohn, Swift & Graf, P.C.
- Law Office of Francis J. Flynn, Jr.
- Law Office of Rhett Francisco
- Law Office of Thomas G. Adams
- Lenze Lawyers, PLC
- Lockridge Grindal Nauen P.L.L.P.
- The Lyon Firm, LLC
- Maschka, Riedy, Ries, & Frentz

- McLafferty Law Firm, P.C.
- Meyer Njus Tanick, P.A.
- Migliaccio & Rathod LLP
- Milberg Coleman Bryson Phillips Grossman PLLC
- MLG, APLC
- Morgan & Morgan Complex Litigation Group
- Morris Law Firm
- Nye, Stirling, Hale & Miller, LLP
- Oliver Law Group PC
- Payne Law LLC
- Pollock Cohen, LLP
- Precept Group, LLP
- Pro Injury Attorneys, APC
- Reinhardt Wendorf & Blanchfield
- Rubens Kress & Mulholland
- Sauder Schelkopf LLC
- Schubert Jonckheer & Kolbe LLP
- Sina Rez Law, P.C.
- Siri & Glimstad LLP
- Smith & McElwain Firm
- Sommers Schwartz, PC
- Spector Roseman & Kodroff, P.C.
- Throndset Michenfelder LLC
- Turke Strauss, LLP
- Williams Dirks Dameron LLC
- Wolf Haldenstein Adler Freeman & Herz LLC

The following counsel are involved in one individual case currently pending an opposition to its transfer before the JPML:

- Richmond Vona, LLC

The following counsel are involved in one individual case whose transfer may be opposed by one or more parties before the JPML:

- Keller Rohrback LLP
- Seattle City Attorney

*Defendants' Counsel*

The following counsel will be involved in this MDL proceeding on behalf of Defendants:

- Jenner & Block LLP

The following counsel have been involved in individual cases that have been transferred to this MDL but are not expected to be involved in this MDL proceeding:

- Baker Sterchi Cowden & Rice LLC
- Belin McCormick, P.C.
- Greene Espel PLLP
- Hill Ward & Henderson, P.A.
- LeVan Stapleton Segal Cochran LLC
- Sturgill, Turner, Barker & Moloney, PLLC

The following counsel are involved in one individual case currently pending an opposition to its transfer before the JPML:

- Gibson, McAskill & Crosby, LLP

Dated: January 30, 2023          Respectfully Submitted.


By:  /s/ Steve W. Berman
        Steve W. Berman, Esq.
        HAGENS BERMAN SOBOL SHAPIRO LLP
        1301 Second Avenue, Suite 2000
        Seattle, WA 98101

25

1

2   By: /s/ Elizabeth A. Fegan

3       Elizabeth A. Fegan, Esq.
    FEGAN SCOTT LLC

4       150 S. Wacker Dr., 24th Floor

5       Chicago, IL 60606

6

7   By: /s/ Kenneth B. McClain

8       Kenneth B. McClain, Esq.
    HUMPHREY FARRINGTON & McCLAIN

9       221 W. Lexington Ave., Suite 400
    Independence, MO 64050

10

11       *Initial Conference Counsel and Counsel for Plaintiffs*

12

13

14   By: /s/ Peter J. Brennan

15       Peter J. Brennan, Esq.
    JENNER & BLOCK LLP

16       353 North Clark Street
    Chicago, IL 60654-3456

17

18       *Initial Conference Counsel and Counsel for Defendants*

19

20

21

22

23

24

25

26

27

28

JOINT PRELIMINARY REPORT      No. 8:22-ML-3052 JVS(KESx)