Steve W. Berman, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

*Consumer Class Action Leadership Counsel and Counsel for Plaintiffs*
*(Additional counsel on signature page)*

Peter J. Brennan, Esq.
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456

*Counsel for Defendants*

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 8:22-ML-3052 JVS(KESx) |
| | **JOINT CASE MANAGEMENT STATEMENT** |
| | Date:   March 13, 2023 |
| This document relates to: | Time:   8:00 a.m. |
| | Place:   411 W. Fourth Street, |
| ALL CASES | Santa Ana, CA 92701 |
| | Court Room 10C |

# TABLE OF CONTENTS

**Page**

I.   GENERAL MATTERS ................................................................ 3

   A.   Overview of the Case ....................................................... 3

      1.   Plaintiffs' statement of the case. ..................................... 3

      2.   Defendants' statement of the case. .................................. 5

   B.   Federal Rule of Civil Procedure 16 Matters ............................ 6

      1.   Rule 16(a) ............................................................. 6

      2.   Rule 16(c) ............................................................. 7

   C.   Consolidated Complaint .................................................... 8

      1.   Plaintiffs' Statement. .................................................. 9

      2.   Defendants' Statement. ................................................ 9

   D.   Compliance with Federal Rules, Local Rules, and this Court's Rules .................................................................. 12

   E.   Jurisdiction and Coordination with State Actions .................... 12

   F.   Service List ............................................................... 13

II.   MOTION PRACTICE ............................................................. 13

   A.   Pending Motions .......................................................... 13

   B.   Presently Anticipated Motions .......................................... 14

   C.   Motion Cut-Off and Briefing Schedules ............................... 15

   D.   Procedures for Class Certification ...................................... 16

   E.   Compliance with the Local Rules and this Court's Orders Regarding Motions ...................................................... 16

III.   DISCOVERY AND DISCLOSURES ........................................... 16

   A.   Dates and Procedures for Disclosures .................................. 16

1

B.  Subjects Where Discovery May Be Needed ........................... 17

    1.  Plaintiffs' identification of core discovery. ................... 17

    2.  Defendants' identification of core discovery. ............... 22

    3.  Timing. ..................................................................... 24

C.  Sequencing of Discovery ........................................................ 26

D.  Discovery Cut-Off Dates ........................................................ 26

E.  Protective Order ..................................................................... 26

F.  Orders for the Preservation of Documents .............................. 26

G.  Document Depository .............................................................. 26

H.  Document Numbering System ................................................. 26

I.  Changes to the Limitations on Discovery Imposed by the Federal Rules .......................................................................... 26

J.  Provisions for the Disclosure or Discovery of Electronically Stored Information ................................................................... 27

K.  Expert Discovery .................................................................... 27

    1.  Class Experts. ........................................................... 27

    2.  Liability Experts. ....................................................... 27

L.  Procedures for Resolving Discovery Disputes/Special Master 28

IV.  SETTLEMENT ................................................................................. 28

V.  PROPOSED TIMETABLE ............................................................... 28

Pursuant to the Court's Order No. 2: Adoption of Organization Plan and Appointment of Counsel ("Order") dated February 9, 2023, Counsel respectfully submit the following Joint Case Management Statement.

# I.   GENERAL MATTERS

## A.   Overview of the Case

### 1.   Plaintiffs' statement of the case.

All cases transferred as part of MDL 3052 involve claims that Defendants violated express or implied warranties, violated various state consumer protection laws, or designed, marketed, distributed, and sold defective and unsafe vehicles that, among other things, did not include effective "engine immobilizer" technology necessary to prevent vehicle theft. Certain Kia vehicles between model years 2011-2022 and certain Hyundai vehicles between model years 2011-2022 lack engine immobilizers (the "Affected Vehicles")[1] and, as a result, are easily stolen.

#### a.   Plaintiffs' claims.

Insurance industry data has shown that factory-installed vehicle immobilizer systems[2] significantly reduce vehicle theft.  *See* Highway Loss Data Institute (HLDI) Bulletin Vol. 38, No. 28 (December 2021) at pg. 1.  While most automobiles sold in the United States include these anti-theft features with their vehicles, Hyundai and Kia has lagged well behind the industry in implementing this technology.  For example, in 2015,

---

[1] Plaintiffs will file a Consolidated Consumer Class Action Complaint by April 10, which may alter the specific vehicle models that comprise the Affected Vehicles. However, the current complaints generally allege the following vehicle models: 2011-2022 Kia vehicles or 2011-2022 Hyundai vehicles which do not contain an engine immobilizer. Plaintiffs adopt this definition of the Affected Vehicles for purposes of this Report.

[2] The National Highway Traffic Safety Administration ("NHTSA") defines an engine immobilizer as "an anti-theft device that combines microchip and transponder technology with engine and fuel immobilizer components that can prevent vehicles from starting unless a verified code is received by the transponder.  *See* Fed. Reg. Vol. 81, No. 189 at 66833, Sept. 29, 2016; *see also* 49 CFR § 543.4 ("*Immobilizer* means a device that, when activated, is intended to prevent a motor vehicle from being powered by its own propulsion system.") (italics in original).

Hyundai and Kia only equipped 26% of their vehicles with standard-equipment immobilizers, while the rest of the industry equipped 96% of all other vehicles with immobilizer technology.  By 2020, the automotive industry—other than Hyundai and Kia—equipped nearly all vehicles with immobilizers as standard equipment. Preliminary information suggests that the number of vehicles lacking immobilizer technology may exceed 8 million across the various vehicle lines.  Although they failed to include this technology as standard equipment, both Hyundai and Kia understood the benefits provided by engine immobilizer technology.

The overwhelming majority of the transferred cases involve claims seeking certification of nationwide classes or, alternatively, certification of single-state classes. At this time, it is understood that all the transferred cases involve claims seeking recovery of some form of economic loss or damage.  None of the transferred cases involve claims for personal injury or death arising from the alleged defect(s) that exist in Defendants' vehicles.  In its Transfer Order, the JPML specifically noted that the issue of whether personal injury claims were to be included in this MDL was not before the Panel and would be dealt with as part of the conditional transfer order process.

In general, the cases currently pending involve the Magnuson-Moss Warranty Act and the following types of state law claims or causes of action:

- Violations of consumer protection and deceptive trade practices acts;
- Fraud;
- Fraudulent concealment;
- Breach of implied warranty;
- Breach of express warranty;
- Negligent design;
- Negligent failure to warn;
- Strict liability design defect;
- Strict liability failure to warn;
- Unjust enrichment; and

4

- Recission.

As discussed above, the claims asserted in these cases seek primarily economic damages.  The categories of economic damages sought can be generally described as follows:

- Reimbursement for costs of retrofitting or equipping vehicles with engine immobilizers;
- Reimbursement of damages, including if applicable, insurance deductibles and copayments associated with vehicle repair or replacement;
- Reimbursement of uninsured property damage claims for owners without automobile insurance for vehicle repair or replacement;
- Payment for value of vehicles stolen and not recovered or not repairable;
- Reimbursement of expenses for damages for loss of use of vehicles and/or costs of rental cars while vehicles are inoperable prior to repair or replacement;
- Reimbursement for incidental personal property lost or damaged in stolen vehicles;
- Reimbursement for cost of anti-theft devices such as steering wheel locks, car alarm systems, etc.;
- Lost wages;
- Diminution in value of vehicles;
- Increased cost of insurance premiums; and
- Damages due to cancellation or non-renewal of insurance.

**2.      Defendants' statement of the case.**

As explained in the Joint Preliminary Report's Joint Statement of Facts and Legal Issues (Dkt. 40 at 4–6), the cases transferred as part of MDL No. 3052 involve claims arising from the allegation that certain vehicles distributed or manufactured by

Defendants[3] did not include "engine immobilizers," which allegedly made them more susceptible to theft.  The various complaints contain different putative class definitions, but the majority of the complaints define "Class Vehicles" (or "Affected Vehicles") as certain Kia vehicles between model years 2011-2021 and certain Hyundai vehicles between model years 2015-2021 that lack engine immobilizers.[4]  In general, these cases are Plaintiffs' attempt to impose a retroactive immobilizer requirement on vehicles going back 12+ years—something no U.S. regulatory body has ever done—and to hold Defendants liable for the actions of third-party criminals.  The Class Vehicles were manufactured as designed and as represented, and fully complied and comply with all applicable regulations.  Moreover, importantly, KA and HMA have recently launched an update to the software in millions of Class Vehicles, which includes the application of antitheft decals, and are providing this update to their customers free of charge.

For these and various other reasons, Defendants intend to move to dismiss Plaintiffs' claims, and to the extent any claims survive the motion to dismiss stage, intend to oppose class certification and/or move for summary judgment.

**B.      Federal Rule of Civil Procedure 16 Matters**

**1.      Rule 16(a).**

Rule 16(a) provides that the Court and parties may consider provisions for "(1) expediting disposition of the action; (2) establishing early and continuing control so that the case will not be protracted because of lack of management; (3) discouraging wasteful pretrial activities; (4) improving the quality of the trial through more thorough preparation; and (5) facilitating settlement."

---

[3] Defendants in the transferred cases include Kia America, Inc. ("KA"), Kia Corporation ("KC"), Hyundai Motor America ("HMA"), Hyundai Motor Company ("HMC"), and Hyundai America Technical Center, Inc. ("HATCI").  Not all Defendants have been served in every case.

[4] Defendants understand that Plaintiffs intend to expand this putative class definition(s) in their forthcoming Consolidated Amended Consumer Class Action Complaint.

Plaintiffs believe that the best mechanism for accommodating these efficiency factors is for the Court to hold regular status conferences and to enact a pre-trial schedule that moves the case along at a reasonably aggressive pace and contains deadlines for salient events, such as class certification.  The Court has already indicated its desire to hold monthly status conferences (with some exceptions; *see* Order No. 2 at 5), and Plaintiffs believe that the proposed schedule in Section V below otherwise satisfies these goals.

Defendants believe that the schedule should take into account various decision points that are not appropriately accommodated in Plaintiffs' proposed schedule and that the litigation should be managed in a way that is consistent with the limits of an MDL proceeding.  Indeed, Plaintiffs propose a trial date even though the vast majority of the cases in this MDL proceeding will be sent back to different districts for trial.  Even for cases within this district, a trial should only be set after a ruling on summary judgment motions, which will likely significantly circumscribe what needs to be tried (to the extent anything remains to be tried).  To that end, Defendants propose an alternate schedule below that both moves this matter along efficiently and takes into account the special status of this proceeding.

### 2.    Rule 16(c).

At any pretrial conference, the court may consider and take appropriate action on the following matters: "(A) formulating and simplifying the issues, and eliminating frivolous claims or defenses; (B) amending the pleadings if necessary or desirable; (C) obtaining admissions and stipulations about facts and documents to avoid unnecessary proof, and ruling in advance on the admissibility of evidence; (D) avoiding unnecessary proof and cumulative evidence, and limiting the use of testimony under Federal Rule of Evidence 702; (E) determining the appropriateness and timing of summary adjudication under Rule 56; (F) controlling and scheduling discovery, including orders affecting disclosures and discovery under Rule 26 and Rules 29 through 37; (G) identifying witnesses and documents, scheduling the filing and exchange of any pretrial briefs, and

7

setting dates for further conferences and for trial; (H) referring matters to a magistrate judge or a master; (I) settling the case and using special procedures to assist in resolving the dispute when authorized by statute or local rule; (J) determining the form and content of the pretrial order; (K) disposing of pending motions; (L) adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems; (M) ordering a separate trial under Rule 42(b) of a claim, counterclaim, crossclaim, third-party claim, or particular issue; (N) ordering the presentation of evidence early in the trial on a manageable issue that might, on the evidence, be the basis for a judgment as a matter of law under Rule 50(a) or a judgment on partial findings under Rule 52(c); (O) establishing a reasonable limit on the time allowed to present evidence; and (P) facilitating in other ways the just, speedy, and inexpensive disposition of the action."

The parties have addressed the Rule 16(c) topics that they believe the Court should consider now—including amending the pleadings, deadlines for summary adjudication, controlling and scheduling discovery, the use of a magistrate judge, and use of a mediator for settlement discussions—elsewhere in this Joint Case Management Statement. The parties submit that addressing the remaining topics is premature, and that they can revisit those topics in a future Joint Case Management Statement when appropriate.

**C.    Consolidated Complaint**

Per the Court's Order No. 2, a Consolidated Amended Consumer Class Action Complaint (the "Consolidated Complaint") is due on or before April 10, 2023.  The Leadership Committee is consulting with all Plaintiffs' counsel and will prepare and file a Consolidated Amended Complaint that synthesizes the various facts, class definitions, and causes of action alleged in the lawsuits constituting this MDL.  The Leadership Committee has also met and conferred with Defendants' Counsel regarding the management of this litigation.

### 1.     Plaintiffs' Statement

Plaintiffs' Leadership Committee intends to file a Consolidated Amended Class Action Complaint, and intends to analyze and determine the appropriate claims to be brought on behalf of the putative Classes. The Consolidated Class Action Complaint will "represent[] the best judgment of [the Plaintiffs' Leadership Committee] as to the claims that should be included in this action and the manner in which those claims should be pled." *Paul v. Intel Corp. (In re Intel Corp. Microprocessor Antitrust Litig.)*, 2006 U.S. Dist. LEXIS 70688, *3 (D. Del. Sept. 26, 2006). While Plaintiffs have conferred with Defendants regarding their proposal below, it is premature for this Court to enter any Orders regarding required scope of allegations or claims to be included.

### 2.     Defendants' Statement

Given that a consolidated complaint in an MDL is a mere "procedural device" that should be designed to make the litigation run more efficiently, Defendants believe that there is no point in the Leadership Committee filing a Consolidated Complaint unless there is information in the Consolidated Complaint that makes briefing motions to dismiss efficacious and narrows other issues for any later stage in the litigation. *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 785 F. Supp. 2d 925, 928, 931 (C.D. Cal. 2011). To that end, Defendants ask the Court to require that the Consolidated Complaint include at least the following categories of information for each Plaintiff named in the Consolidated Complaint including all of the named Plaintiffs in all of the actions that have been transferred to this MDL proceeding: brand (Kia or Hyundai); model name (*e.g.*, Sonata, Sorento); trim level (*e.g.*, EX, SX) and model year of the vehicle(s) purchased/leased; date of purchase/lease of the vehicle(s); whether the vehicle(s) was obtained new or used (*i.e.*, previously owned) and from whom/what (*e.g.*, private party, new vehicle dealer, used vehicle dealer (*e.g.*, CarMax)); if leased, for how long and whether it was turned in at the end of the lease or purchased; geographical location where the vehicle(s) was purchased/leased; state of primary residence at the time of the purchase/lease; any written

or oral statements reviewed and/or relied upon prior to purchase/lease; whether the vehicle(s) has been sold, traded in, or otherwise disposed of including the date of disposition and any sale or trade in price.

Defendants also believe that any Consolidated Complaint should be structured in such a way that, if this Court decides to enter final judgment in any of the actions sent to the MDL, the affected Plaintiffs and corresponding action can be readily identified.  That is because this MDL proceeding "is merely a collection of individual cases, combined to achieve efficiencies in pretrial proceedings" and that one "cannot lose sight of the separate and distinct nature of those actions."  *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, 785 F. Supp. 2d 925, 930 (C.D. Cal. 2011).  For example, if this Court rules that there are no viable causes of action under Ohio law, judgment can be entered in all of the cases in which Ohio law applies.  These procedures should help facilitate the progress of this litigation, particularly because all of the information suggested above should be easily obtained by Plaintiffs' counsel.

In addition, with respect to causes of action, Defendants believe that the Consolidated Complaint should make clear which causes of action from the 50+ cases they intend to pursue and which ones they intend to abandon.  Given that the individual cases "remain fundamentally separate actions, intended to resume their independent status once the pretrial stage of litigation is over," they must be managed in a manner that "take[s] into account that the cases are destined to be returned to their transferee jurisdictions."  *Id.*; *see also Bell v. Publix Super Markets, Inc.*, 982 F.3d 468, 488–92 (7th Cir. 2020) (discussing appealability of judgments in some but not all of the cases that had been transferred to an MDL proceeding).  Otherwise, this MDL might only dispose of a fraction of the causes of action, and then remand to the transferor courts potentially for years of additional pretrial litigation over the remaining claims.  For example, in *Marvin v. Kia America, Inc.*, No. 2:21-cv-01146 (E.D. Wis.), Plaintiffs asserted a cause of action under the face-to-face solicitation statute, in addition to the

10

commonly seen causes of action. The Consolidated Complaint should make clear whether Plaintiffs intend to pursue or abandon that cause of action. Answers to such questions will streamline the litigation, make it easier for judgment to be entered in each of the cases transferred to this MDL, and avoid unnecessary motions to dismiss and other pretrial motions practice after this MDL concludes and each case is sent back to its respective district.

This Court has explained that "[n]either the general authorization of the coordination and consolidation under the MDL statute or the more specific use of consolidated complaints, as the Court has required here, is intended to alter the substantive rights of the parties." *In re Toyota*, 785 F. Supp. 2d at 931. And, just to be crystal clear at the outset of this MDL, while Defendants recognize that "parties may choose to manage those [MDL] cases in ways that can change that default rule," Defendants here do not wish to do anything and do not consent to changing from that "default rule . . . that separate actions transferred for those pretrial proceedings retain their separate identities." *Bell*, 982 F.3d at 488. With that said, Defendants believe that all parties are better served by knowing from the Plaintiffs with their filing of a Consolidated Complaint the causes of action Plaintiffs intend to pursue and the causes of action Plaintiffs intend to abandon. That would make sure that the procedural device of a Consolidated Complaint does not unwillingly alter the substantive rights of the parties while at the same time permitting Plaintiffs to fully assess which causes of action they wish to continue to pursue, whether in this MDL or when these matters are remanded to the transferor courts. Put another way, Defendants seek clarity rather than ambiguity over the causes of action that are, or are not, part of this litigation. Defendants' Counsel have discussed the above proposal with the Leadership Committee.

**D.  Compliance with Federal Rules, Local Rules, and this Court's Rules**

The parties will comply with the Federal Rules, the Local Rules for the Central District, and this Court's orders, rules, and procedures. The only exception the parties

are currently considering is in Section III(I) below regarding the presumptive number of depositions.

**E.      Jurisdiction and Coordination with State Actions and Other Actions**

This Court has subject matter jurisdiction over these actions under 28 U.S.C. § 1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and because this is a class action in which the members of the classes and Defendants are citizens of different states.  This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.  This MDL was transferred to this Court by the United States Judicial Panel on Multidistrict Litigation (the "JPML") pursuant to 28 U.S.C. § 1407. Venue of the actions filed in or removed to the Central District of California is proper in this judicial district under 28 U.S.C. § 1391(b)(3).

At this time, the parties are aware of one state case that may be removed and become part of this MDL.  In addition, there is a case filed by the City of Seattle in the Western District of Washington and another case filed by the City of Columbus in the Southern District of Ohio that have not been transferred to this MDL by the JPML.[5] Defendants have opposed transfer in the *City of Seattle* case and have opposed transfer in the *City of Columbus* case.[6]  Finally, Defendants have opposed transfer of a wrongful death case in the Western District of New York, which has not been opposed.

Because the two governmental entity cases are not currently part of this MDL, the Leadership Committee and Defendants' Counsel respectfully submit that any orders affirmatively setting any deadlines for the governmental entity cases should be vacated.

---

[5] Although counsel for the City of Seattle have filed Notices of Appearance before this Court indicating that the *City of Seattle* case has already been "transferred to this district by the Judicial Panel on Multidistrict Litigation ('JPML') pursuant to 28 U.S.C. § 1407" and "assigned case number 2:23-cv-00098-JLR," the JPML in fact has not finalized any such transfer order.  ECF Nos. 54, 55, 57.

[6] The parties understand that the JPML will not hear either opposition at its upcoming March 30, 2023 hearing session; the JPML's next upcoming hearing session is scheduled for May 25, 2023.

*See* Order No. 2 (setting deadlines for a consolidated government entities complaint and briefing stipulation and Rule 12 motion).  Any deadlines can be reset if and when any of the governmental entity cases are actually transferred to the MDL.  Should any of the governmental entity cases later become part of this MDL, the Leadership Committee and Defendants' Counsel will meet and confer regarding any needed deadlines.[7]

**F.    Service List**

A Master Service List is attached as Exhibit A.

## II.    MOTION PRACTICE

**A.    Pending Motions**

Two motions to dismiss and one motion to take judicial notice are still pending in *Marvin v. Kia America, Inc.*, No. 2:21-cv-01146 (E.D. Wis.):

1.    Defendants Kia America, Inc. and Hyundai Motor America's Motion to Dismiss (Dec. 22, 2021) (Dkts. 19, 20);

2.    Defendant Hyundai America Technical Center, Inc.'s Motion to Dismiss (Dec. 22, 2021) (Dkts. 21, 22); and

3.    Plaintiffs' Motion to Take Judicial Notice (Aug. 23, 2022) (Dkt. 36).

**B.    Presently Anticipated Motions**

Defendants anticipate filing a motion to dismiss Plaintiffs' forthcoming Consolidated Complaint under Rule 12(b)(6), and given the number of states' law involved, Defendants suggest an alternative streamlined procedure that should promote judicial efficiency:

---

[7] Despite the fact that there are no governmental entity cases currently before this Court in this MDL, counsel for the City of Seattle has contacted the Leadership Committee and Defendants' Counsel indicating that they intend to continue filing substantive documents before this Court, and follow this Court's prior order(s).  Counsel anticipate that counsel for the City of Seattle will file a response to this Joint Case Management Statement and appear in person at the March 13, 2023 Conference.

13

1.     Defendants brief the law of six (6) states in a motion to dismiss that will cover a number of cases that are part of this MDL (with Plaintiffs selecting three (3) states and Defendants selecting three (3) states);

2.     Plaintiffs respond to that motion to dismiss;

3.     Defendants reply; and

4.     Oral argument is held perhaps in conjunction with a monthly status conference.

After the Court's decision on that motion, the parties can then assess the next best steps and make suggestions to the Court. The Court's decision is likely to influence what the parties will want to do with the remaining Plaintiffs. Consistent with the current status, no other motions to dismiss or answers will be required unless and until the Court orders otherwise. In other words, Defendants reserve their rights to move to dismiss as to the remaining states and Plaintiffs reserve their rights to request leave to amend.

Given the anticipated length and breadth of the Consolidated Complaint, Defendants also anticipate requesting leave to extend page limitations for the motion to dismiss briefing with a comparable extension for the response and 50% of that extension for the reply. At this point, the parties will suggest 50 pages for the opening brief, 50 pages for the responsive brief, and 25 pages for the reply to cover the 6 states referenced earlier.

Plaintiffs anticipate that they will move, pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3), to certify a relevant class or classes.

The parties believe that it is too early to determine whether they will file any additional motions, although Defendants anticipate filing dispositive motions after the close of expert discovery.

**C.    Motion Cut-Off and Briefing Schedules**

The parties propose the motion cut-off and briefing schedules contained in the Case Schedule set forth below in Section V.

For the Rule 12(b)(6) motion described above:

| Plaintiffs Notify Defendants of 3 State Selection | April 12, 2023 |
|---|---|
| Deadline for Defendants to Respond to Consolidated Consumer Class Action Complaint | May 17, 2023 |
| Plaintiffs' Opposition to any Motion to Dismiss | June 14, 2023 |
| Defendants' Replies in support of Motion to Dismiss | July 7, 2023 |
| Hearing on Motion to Dismiss | To Be Decided by Court |

As indicated above, within two weeks of the Court's decision on that motion, the parties will meet and confer and Plaintiffs will inform Defendants of Plaintiffs' decision to seek to amend the Consolidated Complaint.  In the event that Plaintiffs do not amend their Consolidated Complaint, Defendants will file any additional motions to dismiss 4 weeks thereafter, and the Court will set a briefing schedule after considering any suggestions from the parties.  Any schedule will be similar to that set forth above.

For the class certification motion:

| Plaintiffs to Move for Class Certification and Provide any Expert Reports Related to Class Certification | May 19, 2024 but no earlier than 6 months after the Court completes ruling on all Rule 12(b)(6) motions |
|---|---|
| Defendants to File Any Opposition to Class Certification and Provide any Expert Reports Related to Class Certification | July 21, 2024 |
| Plaintiffs to File Reply in Further Support of Class Certification and any Rebuttal Expert Reports related to Class Certification | August 18, 2024 |
| Hearing on Motion for Class Certification | To Be Decided by Court |

For dispositive motions:

| Deadline to File Dispositive Motions | 6 months after Court's decision on Class Certification to Allow for Notice and Opt Outs Before Any Motion is Filed |
|---|---|
| Deadline to File Oppositions to Dispositive Motions | Six Weeks After Filing of Dispositive Motions |

15

| Deadline to File Replies for Dispositive Motions | Four Weeks After Filing of Opposition |
|---|---|
| Hearing on Dispositive Motions | To Be Decided by Court |

## D.   Procedures for Class Certification

The proposed Case Schedule in Section V below anticipates the process for class certification.

## E.   Compliance with the Local Rules and this Court's Orders Regarding Motions

The parties do not foresee any problems with complying with the Local Rules and this Court's orders regarding motions.

## III.   DISCOVERY AND DISCLOSURES

## A.   Dates and Procedures for Disclosures

The parties propose to exchange Initial Disclosures on April 14, 2023, but differ over the scope of those disclosures, as explained below.

Plaintiffs request that the parties be required to exchange initial disclosures as contemplated by Fed. R. Civ. P. 26(a)(1). The exchange will ensure the Parties' mutual access to basic foundational information without delay and with minimal burden.

Defendants believe that it would be premature to require the parties to exchange initial disclosures prior to the filing of the Consolidated Complaint, and as outlined above, Defendants intend to move to dismiss that Consolidated Complaint on several grounds, many or all of which cannot be addressed through amendment.  Under these circumstances, Defendants do not believe the parties should engage in extensive and expensive early discovery or initial disclosures before the Court has had the opportunity to determine whether, and how, this case will move forward.  However, in the spirit of good faith and cooperation, Defendants propose exchanging limited Initial Disclosures. Although Defendants believe copies of documents and identities of individuals should be handled in the normal course of litigation, through normal discovery mechanisms, Defendants propose that they can share categories of individuals and documents or information by April 14, 2023, following the filing of the Consolidated Complaint.

16

**B.      Subjects Where Discovery May Be Needed**

The parties anticipate that discovery will address issues concerning liability, damages, class certification, and defenses.

**1.      Plaintiffs' identification of core discovery.**

The factual issues that will be the subject of discovery in this litigation primarily concern Defendants' design, manufacture, and marketing of the putative Affected Vehicles, and the timing and extent of Defendants' knowledge of the alleged defect(s) and the attendant auto theft risks.

Plaintiffs anticipate the following core discovery topics relating to the design and manufacture of the Affected Vehicles:[8]

- The nature, scope, and existence of design and/or manufacturing defect(s) in the Affected Vehicles that create a security vulnerability in the vehicles and makes them highly prone to theft;

- The design, development, and manufacture of the Affected Vehicles' steering column assembly and ignition systems, including, the ignition lock cylinders and ignition switches, as well as alternative and competitive product designs;

- The design, development, and manufacture of the Affected Vehicles' anti-theft and alarm systems, as well as alternative and competitive product designs;

- Whether Defendants' design, development, and manufacture of the Affected Vehicles comport with the standard of care in the automotive industry and Federal Motor Vehicle Safety Standards ("FMVSS"), including FMVSS No. 114;

- Defendants' documentation, testing and evaluation demonstrating compliance with FMVSS No. 114;

---

[8] The core discovery topics listed in the paragraphs below are not exclusive to the stated topic. For example, Defendants' decisions to exclude engine immobilizers as a standard safety component in all their vehicles sold in the United States prior to 2023 is relevant to issues pertaining to design of the Affected Vehicles as well as Defendants' knowledge of the alleged defect(s) and increased risk of auto theft.

17

- Defendants' submissions to NHTSA regarding any proposed rulemaking concerning FMVSS 114, engine immobilizers, or exemptions to parts marking requirements ("PMR");

- Whether the alleged defect(s) in the Affected Vehicles was a substantial factor in auto thefts of such Vehicles;

- Defendants' applications to NHTSA for exemptions from PMR for certain of their vehicles, pursuant to 49 C.F.R. §§ 543.1 *et seq.*;

- Defendants' knowledge concerning the effectiveness of engine immobilizers in preventing auto thefts;

- Defendants' decisions to exclude engine immobilizers as a standard safety component in all of their vehicles sold in the United States prior to model year 2023 vehicles and Defendants' decisions to include immobilizers in certain models; and

- Defendants' decision to install engine immobilizers in any of their U.S. vehicles.

Plaintiffs anticipate the following core discovery topics relating to the timing, nature, and extent of Defendants' knowledge of the alleged defect(s) and the increased risk of theft for the Affected Vehicles:

- Defendants' notice, awareness, and intent, *i.e.*, what they knew or should have known regarding the alleged defect(s) and attendant increased risk of auto thefts;

- The incidents of auto theft involving the Affected Vehicles and other vehicles made by Defendants, and people who have experienced, witnessed, or documented such incidents, including insurance and law enforcement personnel;

- What Defendants did and failed to do when they learned of the alleged defect(s) and attendant auto theft problem;

- Defendants' representations and conduct regarding the alleged defect(s) and attendant auto theft problem;

- Defendants' concealment and omissions regarding the alleged defect(s) and attendant auto theft problem;

- Defendants' communications with affiliates and their dealerships relating to the alleged defect(s) and attendant auto theft problem;

- Information provided by dealerships to Defendants relating to the alleged defect(s) and attendant auto theft problem;

- Warranty and replacement part records for components affected by the alleged defect(s), including steering column assemblies, ignition lock cylinders, ignition switches, windows, and alarm systems;

- Customer reports, complaints, lawsuits, and claims relating to the alleged defect(s) and attendant auto theft problem;

- Defendants' dealings with regulatory agencies, including NHTSA relating to the alleged defect(s) and attendant auto theft problem; and

- Defendants' position(s) in government and legislative investigations relating to the alleged defect(s) and attendant auto theft problem.

Plaintiffs anticipate the following core discovery topics relating to the sale and marketing of the Affected Vehicles:

- Defendants' marketing and promotional efforts regarding the Affected Vehicles and the results of these efforts, including Defendants' marketing campaigns regarding the safety, quality, and reliability of the Affected Vehicles;

- Defendants' development and dissemination of owner manuals for the Affected Vehicles;

- Defendants' duty and responsibility to disclose the alleged defect(s) and attendant auto theft problem; and

- Defendants' decisions as to whether and when to notify owners, purchasers, and lessees of the Affected Vehicles of the alleged defect(s) and attendant auto theft problem.

Plaintiffs anticipate the following core discovery topics that relate to other matters relevant to Plaintiffs' claims:

- Defendants' management structures, corporate hierarchies, the role of particular divisions and the identity of specific personnel responsible for matters relevant to the claims and defenses in these actions, *i.e.*, the core discovery topics;

- Defendants' preservation of relevant evidence, including potential loss, destruction, or spoliation of evidence, including electronically stored information ("ESI");

- The feasibility of repairing the alleged defect(s) and/or preventing auto theft incidents involving the Affected Vehicles, including the potential cost, availability, or effectiveness of possible remedies;

- Whether consumers have been harmed by the alleged defect(s) in the Affected Vehicles;

- The diminution of value of the Affected Vehicles as a result of the alleged defect(s) and attendant auto theft problem;

- Consequential damages borne by Affected Vehicle owners and lessees as a result of the alleged defect(s) and attendant auto theft problem, including increased insurance expenses;

- Whether Defendants' conduct and business practices concerning the alleged defect(s) and attendant auto theft problem were unfair, unlawful, fraudulent, and/or misleading; and

- The nature and extent of any damages Plaintiffs have suffered.

Additionally, because Plaintiffs' claims include rescission/restitution claims, and statutory claims that provide for multiple damages and/or penalties, and because punitive damages have been alleged by Plaintiffs, discovery into Defendants' finances and profits will also be required.

20

### a. Relevant time period for core discovery.

This litigation concerns over a decade's worth of vehicles manufactured and sold by Defendants, which go back to model year 2011 vehicles. Typically, it takes several years to design a vehicle and each vehicle incorporates design elements from prior model years. This means that many of the key components central to this litigation (*i.e.*, ignition, anti-theft, and alarm systems) were likely designed by Defendants many years before they were sold. Defendants have installed engine immobilizers as standard equipment in all of their vehicles sold in Europe since 1998, Australia since 2001, and Canada since 2007. Accordingly, the scope of discovery for topics relating to the design of the Affected Vehicles and Defendants' knowledge of the auto theft problem involving Affected Vehicles should go back to at least 1998.

### b. Types of discovery.

Core discovery will involve written discovery and the depositions of Defendants' employees and corporate designees involved in the design and implementation, development, and manufacture of the Affected Vehicles' steering column assembly, ignition systems, and anti-theft and alarm systems, and those current and former employees who have knowledge of the alleged defect(s) and attendant auto theft problem in both the design stage of the vehicles as well as post-sale.

Plaintiffs also anticipate taking the depositions of employees and corporate designees of Defendants' affiliates, *e.g*., Hyundai America Technical Center, Inc. ("HATCI"),[9] third-party component suppliers of various components installed in the Affected Vehicles, including, steering column assemblies, ignition lock cylinders, ignition switches, windows, and alarm systems, and insurance and/or law enforcement personnel who have experience with the auto theft problem created by the alleged defect(s).

---

[9] HATCI has been named a defendant in some, but not most, related actions.

Defendants and other third parties in the automotive industry largely rely on electronic records.  Plaintiffs anticipate that ESI will be the primary form of information sought.

Document discovery can start expeditiously, by Defendants' production of the documents, information, and statements that they have exchanged with NHTSA, legislatures, and/or the news media relating to the auto theft problem.  Additionally, Defendants can expedite discovery by producing all records relating to their ongoing investigations into the auto theft problem and their proposed or anticipated remedies for the alleged defect(s).

Plaintiffs anticipate that Defendants will seek written discovery and oral testimony from each Plaintiff related to their purchase or lease of their Affected Vehicle.

**2.     Defendants' identification of core discovery.**

*From Defendants*

Defendants understand that Plaintiffs will seek the discovery described above. Defendants will provide their objections at the appropriate time if the litigation proceeds to the discovery stage.  For informational purposes, Defendants note the following: HMA and KA distribute for further sale and market certain Hyundai and Kia brand vehicles, respectively, in the United States.  HMA and KA are not now, nor have they ever been, responsible for the design, manufacture, developmental testing, FMVSS compliance testing, or assembly of any Hyundai or Kia brand vehicles.  HMC and KC are responsible for the overall design and testing of Hyundai and Kia vehicles, respectively.

*From Plaintiffs*

Defendants anticipate taking Plaintiffs' depositions and seeking written discovery on the following categories:

- Documents/information concerning Plaintiffs' vehicles, including:
  o Year, make, model, and VIN;
  o Location of the vehicle;
  o Ownership history;

1       o  Service and maintenance history;

2       o  Prior accidents; and

3       o  Aftermarket modifications.

4  • Documents/information concerning the alleged thefts of Plaintiffs' vehicles,

5  including:

6       o  Date and time of thefts;

7       o  Witnesses with knowledge of thefts;

8       o  Police reports regarding thefts;

9       o  Insurance communications; and

10      o  Injury/damages related to theft.

11 • General background information concerning Plaintiffs, including:

12      o  Identifying information;

13      o  Education history;

14      o  Employment history;

15      o  Vehicle history; and

16      o  Litigation history.

17 • Other potential damages information, including:

18      o  Price paid for vehicle, lease payment history for vehicle, or vehicle financing

19 history;

20      o  Efforts to sell or trade in the vehicle, including any offers made or accepted;

21 and

22      o  Purported evidence of diminution in value of the vehicle.

23 *From Third Parties*

24 Defendants may seek the following discovery from third parties:

25 • Theft data and statistics;

26 • Documents from insurers, including documents regarding underwriting and

27 pricing;

28

JOINT CASE MANAGEMENT STATEMENT     No. 8:22-ML-3052 JVS(KESx)

- Documents reflecting ownership of Plaintiffs' vehicles, including title/lease documents;

- Documents reflecting maintenance, repairs, or alterations to Plaintiffs' vehicles;

- Documents reflecting financing of Plaintiffs' vehicles; and

- Police reports or other documents related to thefts of Plaintiffs' vehicles.

*Expert Discovery*

Defendants anticipate using experts but believe it is premature to discuss the topics of that discovery at this time.

### 3.  Timing

#### a.  Plaintiffs' position

Plaintiffs do not believe that a discovery stay is appropriate. "'[T]he Federal Rules of Civil Procedure do[] not provide for automatic or blanket stays of discovery when a potentially dispositive motion is pending. Indeed, district courts look unfavorably upon such blanket stays of discovery." *Sonneveldt v. Mazda Motor of Am., Inc.*, No. 819CV01298JLSKES, 2021 WL 4814990, at *1 (C.D. Cal. May 4, 2021) (citation omitted).

The Court may stay discovery only upon a showing of "good cause." *See* Fed. R. Civ. P. 26(c)(1). As other Courts in this District have held:

> Several factors may be considered in determining whether a stay of discovery is appropriate: whether the motion is potentially dispositive of the entire case or dispositive of the issues on which discovery is sought; whether the pending motion can be decided without additional discovery; whether, upon a preliminary analysis of the merits of the motion there appears to be an immediate and clear possibility that it will be granted; the nature and complexity of the action; the posture or stage of the litigation; the expected extent of discovery; and any other relevant circumstances.

*See, e.g., Soundgarden v. UMG Recordings, Inc.*, No. LACV1905449JAKMRWX, 2020 WL 4342261, at *2 (C.D. Cal. May 11, 2020) (internal quotations omitted).

Defendants here cannot meet their "heavy burden to make a strong showing" that this action warrants a stay. *NMS 1539, LLC v. City of Santa Monica*, No. 220CV11318FLAJPRX, 2022 WL 3575311, at *1 (C.D. Cal. July 26, 2022). Even if Defendants' forthcoming motion to dismiss were granted, the court liberally gives leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). *See also NMS 1539, LLC*, 2022 WL 3575311, *2 (denying motion to stay discovery pending outcome of motion to dismiss); *Singh v. Google, Inc.*, No. 16-cv-3734, 2016 WL 10807598, at *2 (N.D. Cal. Nov. 4, 2016) (denying motion to stay discovery because, "even if Defendant were correct that Plaintiff's claims must be dismissed as alleged, the Court would consider whether leave to amend should be granted, rendering [Defendant's] motion not dispositive").

Moreover, Defendants have proposed a two-stage process for the motions to dismiss. While Plaintiffs agree that briefing certain bellwether states on the initial motion to dismiss will be efficient for the parties and this Court, Plaintiffs do not agree that the protracted schedule Defendants propose should prejudice Plaintiffs through the lengthy stay of discovery that would result.

### b. Defendants' position

Plaintiffs should be required to survive motions to dismiss before Defendants are required to produce any discovery, particularly given that Plaintiffs are unlikely to survive the motion to dismiss stage. *See, e.g.*, *Mujica v. AirScan Inc.*, 771 F.3d 580, 593 (9th Cir. 2014) ("The Supreme Court has stated . . . that plaintiffs must satisfy the pleading requirements of Rule 8 *before* the discovery stage, not after it.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009)); *Persian Gulf Inc. v. BP W. Coast Prod. LLC*, 225 F. Supp. 3d 1178, 1180 (S.D. Cal. 2016) ("Plaintiffs are not entitled to discovery in order to allege sufficient facts to 'nudge [their] claim across the line from conceivable to plausible.'") (citations omitted). And even if motions to dismiss do not entirely dispose of all Plaintiffs' claims, they will undoubtedly narrow the claims and accordingly narrow

the scope of discovery.  Thus, it is most efficient to stay discovery until Plaintiffs can survive motions to dismiss.

**C.    Sequencing of Discovery**

The proposed Case Schedule in Section V below anticipates sequencing fact and expert discovery.

**D.    Discovery Cut-Off Dates**

The parties propose the following discovery cutoff dates contained in the Case Schedule set forth below in Section V: May 1, 2024 for the completion of class discovery, and August 30, 2024 for the completion of fact discovery.

The parties believe that discovery should be conducted as noted above with a focus on class discovery in the early phases.

**E.    Protective Order**

The parties anticipate working together to develop and submit a Stipulated Protective Order that will govern the production of trade secrets and other confidential information.

**F.    Orders for the Preservation of Documents**

The parties filed a joint motion for an extension of time to submit their Proposed Preservation Order on March 1, 2023.

**G.    Document Depository**

The parties do not anticipate that a document depository will be required.

**H.    Document Numbering System**

The parties will meet and confer and agree to a protocol that identifies documents produced by each of the parties in the case.

**I.    Changes to the Limitations on Discovery Imposed by the Federal Rules**

The parties will meet and confer prior to noticing or conducting any depositions (including any depositions of non-parties).  Plaintiffs believe that this case will warrant an increase from the presumptive limits on the number of depositions set forth in Fed. R. Civ. P. 30.  The parties agree to meet and confer regarding the appropriate number of

depositions, the timing and length of those depositions, and the manner in which depositions are to be conducted.

If necessary, the Parties will seek the Court's assistance in resolving any dispute about modifications to the discovery rules.

**J.  Provisions for the Disclosure or Discovery of Electronically Stored Information**

The parties intend on reaching agreement on a protocol governing the production of ESI that will govern document production and discovery in this case.  If necessary, the parties will seek the Court's assistance in resolving any e-discovery disputes.

**K.  Expert Discovery**

**1.  Class Experts**

The parties propose the following schedule for the disclosure of expert opinions associated with class certification contained in the Case Schedule set forth below in Section V and copied herein:

| | |
|---|---|
| Plaintiffs to Move for Class Certification and Provide any Expert Reports Related to Class Certification | May 19, 2024 but no earlier than 6 months after the Court completes ruling on all Rule 12(b)(6) motions |
| Defendants to File Any Opposition to Class Certification and Provide any Expert Reports Related to Class Certification | July 21, 2024 |
| Plaintiffs to File Reply in Further Support of Class Certification and any Rebuttal Expert Reports related to Class Certification | August 18, 2024 |

**2.  Liability Experts**

The parties agree that the schedule for Rule 26(a)(2) liability expert disclosures should be deferred until a decision on class certification. The scope of liability expert opinions will be tied to the nature of the claims and scope of any classes certified.

## L.   Procedures for Resolving Discovery Disputes/Special Master

The parties agree to attempt in good faith to resolve discovery issues amongst themselves in a courteous, reasonable, and professional manner, and to adhere to the Civility and Responsibility Guidelines adopted by the United States District Court for the Central District of California.  Specifically, in accordance with L.R. 37-1, prior to the filing of any motion relating to discovery pursuant to Federal Rules of Civil Procedure 26 through 37, counsel for the parties will confer in a good faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible.

In the event the parties are unable to resolve discovery disputes amongst themselves, the parties believe that discovery disputes should be resolved by the currently assigned magistrate judge pursuant to this Court's rules and the procedures set forth in L.R. 37 (or as otherwise ordered by the magistrate judge).

## IV.   SETTLEMENT

The parties prefer the alternative dispute resolution mechanism of private mediation, and the parties have agreed to mediate under the auspices of the Honorable Margaret Morrow (ret.).

## V.   PROPOSED TIMETABLE

| Event | Deadline |
|---|---|
| Parties to Exchange Limited Initial Disclosures Pursuant to Rule 26(a) | April 14, 2023 |
| Deadline to File Consolidated Consumer Class Action Complaint | April 10, 2023 |
| Plaintiffs to Provide 3 State Selection | April 12, 2023 |
| Deadline for Defendants to File Motions Described Above to Dismiss Consolidated Consumer Class Action Complaint | May 17, 2023 |
| Plaintiffs' Opposition to any Motion to Dismiss | June 14, 2023 |
| Defendants' Replies in Support of Motion to Dismiss As Described Above | July 7, 2023 |
| Hearing on Motion to Dismiss As Described Above | To Be Decided by Court |

28

| Event | Deadline |
|---|---|
| Substantial Completion of Rolling Production of Documents | February 1, 2024 |
| Plaintiffs to Move for Class Certification and Provide any Expert Reports Related to Class Certification | May 19, 2024 but no earlier than 6 months after the Court completes ruling on all Rule 12(b)(6) motions |
| Defendants to File Any Opposition to Class Certification and Provide any Expert Reports Related to Class Certification | July 21, 2024 |
| Plaintiffs to File Reply in Further Support of Class Certification and any Rebuttal Expert Reports Related to Class Certification | August 18, 2024 |
| Hearing on Motion for Class Certification | To Be Decided by Court |
| Completion of Class Discovery | May 1, 2024 |
| Completion of Fact Discovery | August 30, 2024 |
| Deadline to File Dispositive Motions | 6 months after Court's decision granting the certification of any proposed class to allow for notice and opt outs or otherwise 3 months after Court's class certification decision but no earlier than 30 days after the completion of Expert Discovery |
| Deadline to File Oppositions to Dispositive Motions | Six Weeks After Filing of Dispositive Motions |
| Deadline to File Replies for Dispositive Motions | Four Week After Filing of Oppositions |
| Hearing on Dispositive Motions | To Be Decided by Court |
| Trials | To Be Decided by Courts to Which Cases are Remanded |

Dated: March 3, 2023.          Respectfully Submitted.


By: */s/ Steve W. Berman*
    Steve W. Berman, Esq.
    HAGENS BERMAN SOBOL SHAPIRO LLP
    1301 Second Avenue, Suite 2000
    Seattle, WA 98101

29

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By: */s/ Elizabeth A. Fegan*
    Elizabeth A. Fegan, Esq.
    FEGAN SCOTT LLC
    150 S. Wacker Dr., 24th Floor
    Chicago, IL 60606


By: */s/ Kenneth B. McClain*
    Kenneth B. McClain, Esq.
    HUMPHREY FARRINGTON & McCLAIN
    221 W. Lexington Ave., Suite 400
    Independence, MO 64050


By: */s/ Roland Tellis*
    Roland Tellis, Esq.
    BARON & BUDD, P.C.
    15910 Ventura Blvd., Suite 1600
    Encino, CA 91436


    *Consumer Class Action Leadership Counsel and*
    *Counsel for Plaintiffs*


By: */s/ Peter J. Brennan*
    Peter J. Brennan, Esq.
    JENNER & BLOCK LLP
    353 North Clark Street
    Chicago, IL 60654-3456

    *Counsel for Defendants*

JOINT CASE MANAGEMENT STATEMENT          No. 8:22-ML-3052 JVS(KESx)

1

## __SIGNATURE ATTESTATION__

2          Pursuant to Local Rule 5-4.3.4(a)(2)(i), I, Peter J. Brennan, hereby attest that Steve

3    W. Berman, Elizabeth A. Fegan, Kenneth B. McClain, and Roland Tellis, on whose

4    behalf this filing is also submitted, has concurred in the content of this Joint Case

5    Management Statement and has authorized its filing.

6

7    Dated: March 3, 2023.              Respectfully Submitted.

8

9                                   By: */s/ Peter J. Brennan*

10                                      Peter J. Brennan, Esq.
                                        JENNER & BLOCK LLP
11                                      353 North Clark Street
                                        Chicago, IL 60654-3456
12
13                                      *Counsel for Defendants*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JOINT CASE MANAGEMENT STATEMENT                                    No. 8:22-ML-3052 JVS(KESx)