Steve W. Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain
HUMPHREY FARRINGTON &
McCLAIN, P.C.
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Plaintiffs' Consumer Class Action Leadership Committee*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

In Re: KIA HYUNDAI VEHICLE
THEFT MARKETING, SALES
PRACTICES, AND PRODUCTS
LIABILITY LITIGATION

_____

*This document relates to:*

CONSUMER CLASS ACTION

Case No.: 8:22-ml-03052-JVS-KES

The Honorable James V. Selna

**CONSOLIDATED AMENDED
CONSUMER CLASS ACTION
COMPLAINT**

**DEMAND FOR JURY TRIAL**

# TABLE OF CONTENTS

**Page**

I.    NATURE OF THE ACTION ...................................................................... 1

II.   JURISDICTION AND VENUE ................................................................. 5

      A.    HMC and KC Engage In Forum-Related Activities ........................... 6

      B.    HMC And KC Control HMA And KC ................................................ 7

III.  PARTIES ................................................................................................... 10

      A.    Hyundai Plaintiffs ............................................................................ 10

            1.    Alabama Plaintiff ................................................................... 10

            2.    California Plaintiffs ............................................................... 13

            3.    Colorado Plaintiff .................................................................. 20

            4.    Florida Plaintiff ..................................................................... 22

            5.    Georgia Plaintiff .................................................................... 26

            6.    Illinois Plaintiffs ................................................................... 28

            7.    Iowa Plaintiffs ....................................................................... 37

            8.    Louisiana Plaintiffs ............................................................... 41

            9.    Maryland Plaintiffs ............................................................... 45

            10.   Michigan Plaintiffs ............................................................... 50

            11.   Minnesota Plaintiff ............................................................... 53

            12.   Missouri Plaintiffs ................................................................ 56

            13.   New Mexico Plaintiff ............................................................ 62

            14.   New York Plaintiff ................................................................ 64

            15.   Ohio Plaintiffs ....................................................................... 66

            16.   Oklahoma Plaintiff ................................................................ 70

17. Tennessee Plaintiff ................................................................. 73

18. Texas Plaintiff ....................................................................... 75

19. Virginia Plaintiff ................................................................... 77

B. Kia Plaintiffs ................................................................................. 80

1. Alabama Plaintiff .................................................................. 80

2. Arizona Plaintiff ................................................................... 81

3. California Plaintiffs ............................................................... 83

4. Colorado Plaintiff ................................................................. 95

5. Connecticut Plaintiff ............................................................ 98

6. Delaware Plaintiffs ............................................................. 100

7. Florida Plaintiffs ................................................................. 105

8. Illinois Plaintiffs ................................................................ 111

9. Indiana Plaintiff .................................................................. 125

10. Kansas Plaintiff ................................................................... 127

11. Kentucky Plaintiffs ............................................................. 129

12. Louisiana Plaintiff .............................................................. 132

13. Maryland Plaintiffs ............................................................. 135

14. Massachusetts Plaintiff ....................................................... 139

15. Michigan Plaintiffs ............................................................. 141

16. Minnesota Plaintiffs ........................................................... 146

17. Missouri Plaintiffs .............................................................. 153

18. Nebraska Plaintiffs ............................................................. 163

19. Nevada Plaintiff .................................................................. 167

20. New York Plaintiffs ............................................................ 168

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

21.    Ohio Plaintiffs......................................................173

22.    Oklahoma Plaintiff..............................................179

23.    Pennsylvania Plaintiffs .......................................182

24.    Tennessee Plaintiff..............................................186

25.    Texas Plaintiffs ...................................................188

26.    Virginia Plaintiff.................................................192

27.    Wisconsin Plaintiff.............................................194

C.    Defendants .....................................................................196

IV.    SUBSTANTIVE ALLEGATIONS..................................................199

A.    Hyundai and Kia Became One of The Most Popular
Automakers In The United States By Promoting The
Safety, Quality, and Reliability of Their Vehicles ..........199

B.    For Over Fifty Years, Auto Thefts Have Been Known to
Pose a Serious Safety Risk..............................................206

C.    Engine Immobilizers Are an Inexpensive and Proven
Means to Dramatically Reduce Auto Theft ......................212

D.    The Class Vehicles Are Theft Prone Defective and Do
Not Comply With FMVSS No. 114..................................219

1.    The Class Vehicles' steering column does not
contain a hardened collar or any security feature...................223

2.    The Class Vehicles' ignition lock assembly is
woefully insecure..................................................224

E.    Defendants Failed To Install Adequate Alarm Systems To
Deter Theft .....................................................................230

F.    Defendants Knowingly Manufactured and Sold Millions
of Class Vehicles That Are Easily Stolen In Less Than
Ninety Seconds ...............................................................231

1.    Defendants should have uncovered the Theft Prone Defect through its FMVSS self-certification process and pre-sale testing. ...................................................232

2.    Defendants' specific knowledge concerning the efficacy of engine immobilizers and their use of immobilizers in non-Class Vehicles should have notified them of the Theft Prone Defect. ..................................235

3.    Defendants were on notice of the Theft Prone Defect from their efforts to monitor Class Vehicle thefts, which have occurred at a shocking rate. .......................238

4.    Defendants knew about the Theft Prone Defect from customer complaints, dealership records, warranty claims, and replacement parts orders. .....................248

G.    The Theft Prone Defect Has Caused Plaintiffs And Class Members To Suffer A Multitude Of Harms .......................................251

1.    Precisely as NHTSA warned over fifty years ago, the Theft Prone Defect creates a substantial safety risks. ........................................................................................251

2.    Stolen Class Vehicles sustain thousands of dollars in damages. ..................................................................................253

3.    Class Members suffer damages beyond those to vehicles themselves. ................................................................256

4.    The Theft Prone Defect causes insurance premiums to increase and the loss of necessary insurance coverage. .........................................................................................258

5.    The Class Vehicles' resale values are diminished as a result of the Theft Prone Defect. ...........................................261

H.    Defendants Have Failed To Adequately Remedy The Theft Prone Defect In All Class Vehicles .........................................262

I.    Fraudulent Omission/Concealment Allegations .................................264

J.    Privity Exists Between Defendants and Plaintiffs and Class Members .........................................................................................267

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

V.    TOLLING OF STATUTES OF LIMITATIONS .......................................268

      A.    Discovery Rule.............................................................................268

      B.    Fraudulent Concealment .............................................................269

      C.    Estoppel........................................................................................270

VI.   CALIFORNIA LAW APPLIES TO NATIONWIDE CLAIMS .................271

VII.  CLASS ALLEGATIONS.........................................................................279

VIII. CLAIMS FOR RELIEF ..........................................................................290

      A.    Nationwide / California Counts ..................................................290

            1.    Nationwide / California Count 1: Breach of Implied
                  Warranty of Merchantability (Cal. Com. Code
                  §§ 2314 and 10212) Against HMA and KA...........................290

            2.    Nationwide / California Count 2: Violations of the
                  California Song-Beverly Consumer Warranty Act
                  for Breach of Implied Warranty of Merchantability
                  (Cal. Civ. Code §§ 1791.1 and 1792) Against HMA
                  and KA..................................................................................293

            3.    Nationwide / California Count 3: False Advertising
                  Under the California False Advertising Law (Cal.
                  Bus. & Prof. Code § 17500, et seq.) Against All
                  Defendants. ..........................................................................295

            4.    Nationwide/California Count 4: Violation of the
                  California Consumer Legal Remedies Act (Cal.
                  Civ. Code §§ 1750, *et seq.*) Against All
                  Defendants. ..........................................................................298

            5.    Nationwide / California Count 5: Violation of the
                  California Unfair Competition Law (Cal. Bus. &
                  Prof. Code § 17200) Against All Defendants..........................303

            6.    Nationwide / California Count 6: Fraud by
                  Omission and Concealment Against All Defendants..............308

            7.    Nationwide / California Count 7: Unjust
                  Enrichment Against All Defendants.......................................311

B.   State Counts ................................................................................. 313

   1.   Alabama ......................................................................... 313

       a.   Alabama Count 1: Breach of Implied Warranty of Merchantability (Ala. Code §§ 7-2-314 and 7-2a-212) Against HMA and KA ................................................. 313

       b.   Alabama Count 2: Violation of the Alabama Deceptive Trade Practices Act (Ala. Code §§ 8-19-1, et seq.) Against All Defendants ................... 316

       c.   Alabama Count 3: Fraud by Omission and Concealment Against All Defendants ........................... 320

       d.   Alabama Count 4: Unjust Enrichment Against All Defendants ................................................. 323

   2.   Alaska ........................................................................... 324

       a.   Alaska Count 1: Breach of Implied Warranty (Alaska Stat. Ann. §§ 45.02.314 and 45.12.212) Against HMA and KA ............................... 324

       b.   Alaska Count 2: Violation of the Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. Ann. § 45.50.471, *et seq*.) Against All Defendants ............... 327

       c.   Alaska Count 3: Fraud by Omission and Concealment Against All Defendants ........................... 332

       d.   Alaska Count 4: Unjust Enrichment Against All Defendants ................................................. 335

   3.   Arizona ......................................................................... 336

       a.   Arizona Count 1: Breach of Implied Warranty of Merchantability (Ala. Code §§ 7-2-314 and 7-2a-212) Against HMA and KA ................................................. 336

b.    Arizona Count 2: Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*) Against All Defendants. .................339

c.    Arizona Count 3: Fraud by Omission and Concealment Against All Defendants ..........................342

d.    Arizona Count 4: Unjust Enrichment Against All Defendants ................................................345

4.    Arkansas .................................................................347

a.    Arkansas Count 1: Breach of Implied Warranty (Ark. Code Ann. §§ 4-2-314 and 4-2A-212) Against HMA and KA ....................................347

b.    Arkansas Count 2: Violation of the Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.*) Against All Defendants .................................................................349

c.    Arkansas Count 3: Fraud by Omission and Concealment Against All Defendants ..........................353

d.    Arkansas Count 4: Unjust Enrichment Against All Defendants ................................................356

5.    Colorado .................................................................358

a.    Colorado Count 1: Breach of Implied Warranty of Merchantability (Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212) Against HMA and KA ................................................358

b.    Colorado Count 2: Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*) Against All Defendants .................361

c.    Colorado Count 3: Fraud by Omission and Concealment Against All Defendants ..........................364

d.    Colorado Count 4: Unjust Enrichment Against All Defendants ................................................367

6.    Connecticut .................................................................369

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

a.  Connecticut Count 1: Breach of Implied Warranty of Merchantability (Conn. Gen. Stat. Ann. §§ 42a-2-314 and § 42a-2a-504) Against HMA and KA ...................................369

b.  Connecticut Count 2: Violation of the Connecticut Unlawful Trade Practices Act (Conn. Gen. Stat. Ann. § 42-110a, *et seq.*) Against All Defendants ...................................372

c.  Connecticut Count 3: Fraud by Omission and Concealment Against All Defendants .........................375

d.  Connecticut Count 4: Unjust Enrichment Against All Defendants ...................................378

7.  Delaware ...................................380

a.  Delaware Count 1: Breach of Implied Warranty (6 Del. Code §§ 2-314 and 2A-212) Against HMA and KA ...........................380

b.  Delaware Count 2: Violation of the Delaware Consumer Fraud Act (6 Del. Code § 2511, *et seq.*) Against All Defendants .......................382

c.  Delaware Count 3: Violation of the Delaware Deceptive Trade Practices Act (6 Del. Code § 2531, *et seq.*) Against All Defendants .......................386

d.  Delaware Count 4: Fraud by Omission and Concealment Against All Defendants ...........................390

e.  Delaware Count 5: Unjust Enrichment Against All Defendants ...................................393

8.  Florida ...................................394

a.  Florida Count 1: Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212) Against HMA and KA ...................................394

b.  Florida Count 2: Violation of the Florida Deceptive & Unfair Trade Practices Act (Fla.

Stat. § 501.201, *et seq.*) Against All
Defendants ................................................................ 397

    c.    Florida Count 3: Fraud by Omission and
Concealment Against All Defendants .......................... 400

    d.    Florida Count 4: Unjust Enrichment Against
All Defendants ............................................................. 403

9.    Georgia .......................................................................... 405

    a.    Georgia Count 1: Breach of Implied
Warranty (Ga. Code. Ann. §§ 11-2-314 and
11-2A-212) Against HMA and KA ............................... 405

    b.    Georgia Count 2: Violation of the Georgia
Uniform Deceptive Trade Practices Act (Ga.
Code Ann. § 10-1-370, *et seq.*) Against All
Defendants ................................................................... 408

    c.    Georgia Count 3: Violation of the Georgia
Fair Business Practices Act (Ga. Code Ann.
§ § 10-1-390, *et seq.*) Against All Defendants ............. 411

    d.    Georgia Count 4: Fraud by Omission and
Concealment Against All Defendants .......................... 414

    e.    Georgia Count 5: Unjust Enrichment Against
All Defendants ............................................................. 417

10.    Hawaii ........................................................................... 419

    a.    Hawaii Count 1: Breach of Implied Warranty
(Haw. Rev. Stat. §§ 490:2-314 and 490:2A-
212) Against HMA and KA .......................................... 419

    b.    Hawaii Count 2: Unfair and Deceptive Acts
in Violation of Hawaii Law (Haw. Rev. Stat.
§ 480, *et seq.*) Against All Defendants ....................... 421

    c.    Hawaii Count 3: Fraud by Omission and
Concealment Against All Defendants .......................... 425

    d.    Hawaii Count 4: Unjust Enrichment Against
All Defendants ............................................................. 428

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

11. Idaho .................................................................. 429

    a. Idaho Count 1: Breach of Implied Warranty (Idaho Code §§ 28-2-314 and 28-12-212) Against HMA and KA .................................................. 429

    b. Idaho Count 2: Violation of the Idaho Consumer Protection Act (Idaho Code § 48-601, *et seq.*) Against All Defendants ............................ 432

    c. Idaho Count 3: Fraud by Omission and Concealment Against All Defendants .......................... 436

    d. Idaho Count 4: Unjust Enrichment Against All Defendants ................................................. 439

12. Illinois ................................................................ 440

    a. Illinois Count 1: Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314 and 5/2A-212) Against HMA and KA .................. 440

    b. Illinois Count 2: Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*) Against All Defendants ........................................ 443

    c. Illinois Count 3: Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/1, *et seq.*) Against All Defendants ................................................. 447

    d. Illinois Count 4: Fraud by Omission and Concealment Against All Defendants .......................... 450

    e. Illinois Count 5: Unjust Enrichment Against All Defendants ................................................. 453

13. Indiana ............................................................... 454

    a. Indiana Count 1: Breach of Implied Warranty of Merchantability (Ind. Code §§ 26-1-2-314 and 26-1-2.1-212) Against HMA and KA .................................................. 454

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

b.   Indiana Count 2: Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-1, *et seq.*) Against All Defendants ..............457

c.   Indiana Count 3: Fraud by Omission and Concealment Against All Defendants ...........................461

d.   Indiana Count 4: Unjust Enrichment Against All Defendants .................................................................464

14.   Iowa .....................................................................466

a.   Iowa Count 1: Breach of Implied Warranty (Iowa Code §§ 554.2314 and 554.13212) Against HMA and KA .....................................466

b.   Iowa Count 2: Violation of the Private Right of Action for Consumer Frauds Act (Iowa Code § 714h.1, *et seq.*) Against All Defendants ...................................................................469

c.   Iowa Count 3: Fraud by Omission and Concealment Against All Defendants ...........................472

d.   Iowa Count 4: Unjust Enrichment Against All Defendants .................................................................475

15.   Kansas .................................................................477

a.   Kansas Count 1: Breach of Implied Warranty (Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212) Against HMA and KA .........................................477

b.   Kansas Count 2: Violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. § 50-623, *et seq.*) Against All Defendants ...................479

c.   Kansas Count 3: Fraud by Omission and Concealment Against All Defendants ...........................483

d.   Kansas Count 4: Unjust Enrichment Against All Defendants .................................................................486

16.   Kentucky .............................................................488

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

a.  Kentucky Count 1: Breach of Implied
    Warranty (Ky. Rev. Stat. §§ 335.2-314 and
    355.2A-212) Against HMA and KA ............................488

b.  Kentucky Count 2: Violation of the
    Consumer Protection Act (Kentucky Rev.
    Stat. § 367.110, *et seq.*) Against All
    Defendants .................................................................490

c.  Kentucky Count 3: Fraud by Omission and
    Concealment Against All Defendants ..........................494

d.  Kentucky Count 4: Unjust Enrichment
    Against All Defendants ...............................................497

17.  Louisiana ..................................................................498

a.  Louisiana Count 1: Breach of Implied
    Warranty of Merchantability/Warranty
    Against Redhibitory Theft Prone Defects
    (La. Civ. Code Art. 2520, 2524) Against
    HMA and KA ..............................................................498

b.  Louisiana Count 2: Violation of the
    Louisiana Unfair Trade Practices and
    Consumer Protection Law (La. Rev. Stat.
    § 51:1401, *et seq.*) Against All Defendants .................501

c.  Louisiana Count 3: Fraud by Omission and
    Concealment Against All Defendants ..........................505

d.  Louisiana Count 4: Unjust Enrichment
    Against All Defendants ...............................................508

18.  Maine .......................................................................509

a.  Maine Count 1: Breach of Implied Warranty
    (Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212)
    Against HMA and KA..................................................509

b.  Maine Count 2: Violation of the Maine
    Unfair Trade Practices Act (Me. Rev. Stat.
    Ann. Tit. 5 § 205-a, *et seq.*) Against All
    Defendants .................................................................512

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

c.      Maine Count 3: Fraud by Omission and Concealment Against All Defendants...........................516

d.      Maine Count 4: Unjust Enrichment Against All Defendants...................................................519

19.     Maryland...................................................................520

a.      Maryland Count 1: Breach of Implied Warranty of Merchantability (Md. Code Com. Law §§ 2-314 and 2A-212) Against HMA and KA ........................................520

b.      Maryland Count 2: Violation of the Maryland Consumer Protection Act (Md. Code, Com. Law, § 13-101, *et seq.*) Against All Defendants.................................................523

c.      Maryland Count 3: Fraud by Omission and Concealment Against All Defendants...........................527

d.      Maryland Count 4: Unjust Enrichment Against All Defendants ...............................................530

20.     Massachusetts ..........................................................531

a.      Massachusetts Count 1: Breach of Implied Warranty of Merchantability (Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212) Against HMA and KA ........................................531

b.      Massachusetts Count 2: Violation of the Deceptive Acts or Practices Prohibited By Massachusetts Law (Mass. Gen. Laws ch. 93a, § 1, *et seq.*) Against All Defendants.......................534

c.      Massachusetts Count 3: Fraud by Omission and Concealment Against All Defendants ...................538

d.      Massachusetts Count 4: Unjust Enrichment Against All Defendants ...............................................541

21.     Michigan...................................................................543

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

      a.     Michigan Count 1: Breach of Implied Warranty of Merchantability (Mich. Comp. Laws §§ 440.2314 and 440.2862) Against HMA and KA ................................................................ 543

      b.     Michigan Count 2: Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901, *et seq.*) Against All Defendants ................................................................ 546

      c.     Michigan Count 3: Fraud by Omission and Concealment Against KC and KA ................................. 550

      d.     Michigan Count 4: Unjust Enrichment Against All Defendants ................................................. 553

  22.    Minnesota ........................................................................ 554

      a.     Minnesota Count 1: Breach of Implied Warranty of Merchantability (Minn. Stat. §§ 336.2-314 and 336.2A-212) Against HMA and KA ................................................................ 554

      b.     Minnesota Count 2: Violation of the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq.* and Minn. Stat. § 8.31, subd. 3a) Against All Defendants ................................................................ 557

      c.     Minnesota Count 3: Violation of the Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. § All Defendants ................. 561

      d.     Minnesota Count 4: Fraud by Omission and Concealment Against All Defendants ........................... 564

      e.     Minnesota Count 5: Unjust Enrichment Against All Defendants ................................................. 567

  23.    Mississippi ........................................................................ 569

      a.     Mississippi Count 1: Breach of Implied Warranty (Miss. Code §§ 75-2-314 and 75-2A-212) Against HMA, and KA .................................... 569

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

b.   Mississippi Count 2: Violation of the
Mississippi Consumer Protection Act (Miss.
Code. Ann. § 75-24-1, *et seq.*) Against All
Defendants .................................................................. 571

c.   Mississippi Count 3: Fraud by Omission and
Concealment Against All Defendants ......................... 576

d.   Mississippi Count 4: Unjust Enrichment
Against All Defendants ............................................... 579

24.   Missouri ........................................................................... 580

a.   Missouri Count 1: Breach of Implied
Warranty of Merchantability (Mo. Rev. Stat.
§§ 400.2-314 and 400.2A-212) Against
HMA and KA ............................................................. 580

b.   Missouri Count 2: Violation of the Missouri
Merchandising Practices Act (Mo. Rev. Stat.
§ 407.010, *et seq.*) Against All Defendants ................. 583

c.   Missouri Count 3: Fraud by Omission and
Concealment Against All Defendants ......................... 587

d.   Missouri Count 4: Unjust Enrichment
Against All Defendants ............................................... 590

25.   Montana ........................................................................... 591

a.   Montana Count 1: Breach of Implied
Warranty (Mont. Code §§ 30-2-314 and 30-
2A-212) Against HMA and KA .................................. 591

b.   Montana Count 2: Violation of the Montana
Unfair Trade Practices and Consumer
Protection Act of 1973 (Mont. Code Ann.
§ 30-14-101, *et seq.*) Against All Defendants .............. 594

c.   Montana Count 3: Fraud by Omission and
Concealment Against All Defendants ......................... 597

d.   Montana Count 4: Unjust Enrichment
Against All Defendants ............................................... 600

26.   Nebraska ................................................................ 602

      a.   Nebraska Count 1: Breach of Implied
           Warranty (Neb. Rev. St. U.C.C. §§ 2-314
           and 2A-212) Against HMA and KA ............................ 602

      b.   Nebraska Count 2: Violation of the Nebraska
           Consumer Protection Act (Neb. Rev. Stat.
           § 59-1601, *et seq.*) Against All Defendants ................. 605

      c.   Nebraska Count 3: Fraud by Omission and
           Concealment Against All Defendants .......................... 608

      d.   Nebraska Count 4: Unjust Enrichment
           Against All Defendants ...................................... 611

27.   Nevada .................................................................. 613

      a.   Nevada Count 1: Breach of Implied
           Warranty of Merchantability (Nev. Rev. Stat.
           §§ 104.2314 and 104A.2212) Against HMA
           and KA ...................................................... 613

      b.   Nevada Count 2: Violation of the Nevada
           Deceptive Trade Practices Act (Nev. Rev.
           Stat. § 598.0903, et seq.) Against All
           Defendants .................................................. 616

      c.   Nevada Count 3: Fraud by Omission and
           Concealment Against All Defendants .......................... 619

      d.   Nevada Count 4: Unjust Enrichment Against
           All Defendants .............................................. 622

28.   New Hampshire ........................................................... 623

      a.   New Hampshire Count 1: Breach of Implied
           Warranty (N.H. Rev. Stat. §§ 382-A:2-314
           and 2A-212) Against HMA and KA ............................. 623

      b.   New Hampshire Count 2: Violation of the
           N.H. Consumer Protection Act (N.H. Rev.
           Stat. Ann. § 358-a:1, *et seq.*) Against All
           Defendants .................................................. 626

c.   New Hampshire Count 3: Fraud by Omission
and Concealment Against All Defendants ................... 630

d.   New Hampshire Count 4: Unjust Enrichment
Against All Defendants ................................ 633

29.   New Jersey .......................................................... 634

a.   New Jersey Count 1: Breach of Implied
Warranty of Merchantability (N.J. Stat. Ann.
§§ 12A:2-314 and 12A:2A-212) Against
HMA and KA ...................................... 634

b.   New Jersey Count 2: Violation of New
Jersey Consumer Fraud Act (N.J. Stat. Ann.
§ 56:8-1, *et seq.*) Against All Defendants ................... 637

c.   New Jersey Count 3: Fraud by Omission and
Concealment Against All Defendants .......................... 641

d.   New Jersey Count 4: Unjust Enrichment
Against All Defendants ................................ 644

30.   New Mexico ....................................................... 645

a.   New Mexico Count 1: Breach of Implied
Warranty (N.M. Stat. §§ 55-2-314 and 55-
2A-212) Against HMA and KA .................................. 645

b.   New Mexico Count 2: Violation of the New
Mexico Unfair Practices Act (N.M. Stat.
Ann. §§ 57-12-1, *et seq.*) Against All
Defendants ........................................ 648

c.   New Mexico Count 3: Fraud by Omission
and Concealment Against All Defendants ................... 651

d.   New Mexico Count 4: Unjust Enrichment
Against All Defendants ................................ 654

31.   New York .......................................................... 656

a.   New York Count 1: Violation of New York
General Business Law § 349 (N.Y. Gen. Bus.
Law § 349) Against All Defendants .............................. 656

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

b.    New York Count 2: Violation of New York
General Business Law § 350 (N.Y. Gen. Bus.
Law § 350) Against All Defendants..............................659

c.    New York Count 3: Fraud by Omission and
Concealment Against All Defendants..........................663

d.    New York Count 4: Unjust Enrichment
Against All Defendants................................................666

32.    North Carolina ........................................................................667

a.    North Carolina Count 1: Violation of the
North Carolina Unfair and Deceptive Trade
Practices Act (N.C. Gen. Stat. § 75-1.1, *et
seq.*) Against All Defendants .........................................667

b.    North Carolina Count 2: Fraud by Omission
and Concealment Against All Defendants....................670

c.    North Carolina Count 3: Unjust Enrichment
Against All Defendants................................................673

33.    North Dakota .........................................................................675

a.    North Dakota Count 1: Breach of Implied
Warranty (N.D. Cent. Code §§ 41-02-31 and
41-02.1-21) Against HMA and KA ..............................675

b.    North Dakota Count 2: Violation of the
North Dakota Consumer Fraud Act (N.D.
Cent. Code § 51-15-02, *et seq.*) Against All
Defendants...................................................................678

c.    North Dakota Count 3: Fraud by Omission
and Concealment Against All Defendants....................681

d.    North Dakota Count 4: Unjust Enrichment
Against All Defendants................................................684

34.    Ohio .......................................................................................686

a.    Ohio Count 1: Breach of Implied Warranty
(Ohio Rev. Code Ann. §§ 1302.27 and
1310.19) Against HMA and KA ...................................686

- xviii -

b.   Ohio Count 2: Violation of Ohio Consumer Sales Practices Act (Ohio Rev. Code §§ 1345.01, *et seq.*) Against All Defendants ............... 689

c.   Ohio Count 3: Violation of the Ohio Deceptive Trade Practices Act (Ohio Rev. Code § 4165.01, *et seq.*) Against All Defendants ................................................... 692

d.   Ohio Count 4: Fraud by Omission and Concealment Against All Defendants .......................... 696

e.   Ohio Count 5: Unjust Enrichment Against All Defendants ................................................... 699

35.   Oklahoma ................................................... 700

a.   Oklahoma Count 1: Breach of Implied Warranty of Merchantability (Okla. Stat. Ann. tit. 12A, §§ 2-314 and 2A-212) Against HMA and KA ............................................ 700

b.   Oklahoma Count 2: Violation of the Oklahoma Consumer Protection Act (Okla. Stat. Ann. tit. 15, § 751, *et seq.*) Against All Defendants ................................................... 703

c.   Oklahoma Count 3: Fraud by Omission and Concealment Against All Defendants .......................... 707

d.   Oklahoma Count 4: Unjust Enrichment Against All Defendants ............................... 710

36.   Oregon ................................................... 711

a.   Oregon Count 1: Breach of Implied Warranty (Or. Rev. Stat. § 72.3140 and 72A.2120) Against HMA and KA ................ 711

b.   Oregon Count 2: Violation of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. §§ 646.605, *et seq.*) Against All Defendants ............... 714

c. Oregon Count 3: Fraud by Omission and Concealment Against All Defendants ..........................718

d. Oregon Count 4: Unjust Enrichment Against All Defendants ................................................721

37. Pennsylvania ................................................................722

a. Pennsylvania Count 1: Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212) Against HMA and KA ..............................................................722

b. Pennsylvania Count 2: Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. §§ 201-1, *et seq.*) Against All Defendants ....................725

c. Pennsylvania Count 3: Fraud by Omission and Concealment Against All Defendants ....................729

d. Pennsylvania Count 4: Unjust Enrichment Against All Defendants ................................................732

38. Rhode Island ................................................................733

a. Rhode Island Count 1: Breach of Implied Warranty (R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212) Against HMA and KA..............................733

b. Rhode Island Count 2: Violation of Rhode Island Deceptive Trade Practices Act (R.I. Gen. Laws § 6-13.1, *et seq.*) Against All Defendants ................................................................736

c. Rhode Island Count 3: Fraud by Omission and Concealment Against All Defendants ....................740

d. Rhode Island Count 4: Unjust Enrichment Against All Defendants ................................................743

39. South Carolina ................................................................744

a. South Carolina Count 1: Breach of Implied Warranty of Merchantability (S.C. Code

Ann. §§ 36-2-314 and 36-2A-212) Against
HMA and KA .............................................................. 744

b.      South Carolina Count 2: Violation of the
        South Carolina Unfair Trade Practices Act
        (S.C. Code Ann. § 39-5-10, *et seq.*) Against
        All Defendants.............................................. 747

c.      South Carolina Count 3: Violation of the
        South Carolina Regulation of Manufacturers,
        Distributors, and Dealers Act (S.C. Code
        Ann. § 56-15-10, *et seq.*) Against All
        Defendants..................................................... 751

d.      South Carolina Count 4: Fraud by Omission
        and Concealment Against All Defendants ................... 753

e.      South Carolina Count 5: Unjust Enrichment
        Against All Defendants ................................. 756

40.     South Dakota .................................................... 758

a.      South Dakota Count 1: Breach of Implied
        Warranty of Merchantability (S.D. Codified
        Laws §§ 57A-2-314 and 57A-2A-212)
        Against HMA and KA................................... 758

b.      South Dakota Count 2: Violation of the
        South Dakota Deceptive Trade Practices and
        Consumer Protection Law (S.D. Codified
        Laws § 37-24-1, *et seq.*) Against All
        Defendants..................................................... 761

c.      South Dakota Count 3: Fraud by Omission
        and Concealment Against All Defendants ................... 764

d.      South Dakota Count 4: Unjust Enrichment
        Against All Defendants ................................. 767

41.     Tennessee ......................................................... 768

a.      Tennessee Count 1: Breach of Implied
        Warranty (Tenn. Code §§ 47-2-314 and 47-
        2A-212) Against HMA and KA ..................... 768

- xxi -

b.   Tennessee Count 2: Violation of the
Tennessee Consumer Protection Act of 1977
(Tenn. Code Ann. § 47-18-101, *et seq.*)
Against All Defendants ..................................................771

c.   Tennessee Count 3: Fraud by Omission and
Concealment Against All Defendants ..........................776

d.   Tennessee Count 4: Unjust Enrichment
Against All Defendants ..................................................779

42.   Texas ...................................................................................780

a.   Texas Count 1: Breach of Implied Warranty
of Merchantability (Tex. Bus. & Com. Code
Ann. §§ 2.314 and 2A.212) Against HMA
and KA..............................................................................780

b.   Texas Count 2: Violation of the Deceptive
Trade Practices-Consumer Protection Act
(Tex. Bus. & Com. Code Ann. § 17.41, *et
seq.*) Against All Defendants .........................................783

c.   Texas Count 3: Fraud by Omission and
Concealment Against All Defendants ..........................787

d.   Texas Count 4: Unjust Enrichment Against
All Defendants..................................................................790

43.   Utah......................................................................................792

a.   Utah Count 1: Breach of Implied Warranty
(Utah Code Ann. §§ 70A-2-314 and 70A-
2A-212) Against HMA and KA .....................................792

b.   Utah Count 2: Violation of the Utah
Consumer Sales Practices Act (Utah Code
Ann. § 13-11-1, *et seq.*) Against All
Defendants........................................................................794

c.   Utah Count 3: Violation of the Utah Truth in
Advertising Law (Utah Code Ann. § 13-11a-
1, *et seq.*) Against All Defendants................................798

d.  Utah Count 4: Fraud by Omission and Concealment Against All Defendants ........................... 802

e.  Utah Count 5: Unjust Enrichment Against All Defendants ................................................. 805

44.  Vermont ......................................................................... 806

a.  Vermont Count 1: Breach of Implied Warranty (Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212) Against HMA and KA .............................. 806

b.  Vermont Count 2: Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*) Against All Defendants .................. 809

c.  Vermont Count 3: Fraud by Omission and Concealment Against All Defendants ........................... 813

d.  Vermont Count 4: Unjust Enrichment Against All Defendants .................................................. 816

45.  Virginia ......................................................................... 817

a.  Virginia Count 1: Breach of Implied Warranty (Va. Code Ann. §§ 8.2-314 and 8.2A-212) Against HMA and KA .............................. 817

b.  Virginia Count 2: Violation of the Virginia Consumer Protection Act (Va. Code Ann. §§ 59.1-196, *et seq.*) Against All Defendants ............... 820

c.  Virginia Count 3: Fraud by Omission and Concealment Against All Defendants ........................... 824

d.  Virginia Count 4: Unjust Enrichment Against All Defendants ................................................. 827

46.  Washington ......................................................................... 828

a.  Washington Count 1: Breach of Implied Warranty of Merchantability (Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212) Against HMA and KA .................................................. 828

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

b.    Washington Count 2: Violation of the
Washington Consumer Protection Act
(Wash. Rev. Code § 19.86.010, *et seq.*)
Against All Defendants ................................................ 831

c.    Washington Count 3: Fraud by Omission and
Concealment Against All Defendants ......................... 834

d.    Washington Count 4: Unjust Enrichment
Against All Defendants ................................................ 837

47.   West Virginia ....................................................................... 838

a.    West Virginia Count 1: Breach of Implied
Warranty (W. Va. Code §§ 46-2-314 and 46-
2A-212) Against HMA and KA .................................... 838

b.    West Virginia Count 2: Violation of the
Consumer Credit and Protection Act (W. Va.
Code § 46A-1-101, *et seq.*) Against All
Defendants ................................................................... 841

c.    West Virginia Count 3: Fraud by Omission
and Concealment Against All Defendants ................... 845

d.    West Virginia Count 4: Unjust Enrichment
Against All Defendants ................................................ 848

48.   Wisconsin .............................................................................. 850

a.    Wisconsin Count 1: Breach of Implied
Warranty of Merchantability (Wis. Stat.
§§ 402.314 and 411.212) Against HMA and
KMA ............................................................................ 850

b.    Wisconsin Count 2: Violation of the
Wisconsin Deceptive Trade Practices Act
(Wis. Stat. § 100.18, *et seq.*) Against All
Defendants ................................................................... 853

c.    Wisconsin Count 3: Fraud by Omission and
Concealment Against All Defendants ......................... 855

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

d.    Wisconsin Count 4: Unjust Enrichment
Against All Defendants .................................................858

49.    Wyoming ........................................................................859

a.    Wyoming Count 1: Breach of Implied
Warranty (Wyo. Stat. §§ 34.1-2-314 and
34.1-2.A-212) Against HMA and KA...........................859

b.    Wyoming Count 2: Violation of the
Wyoming Consumer Protection Act (Wyo.
Stat. §§ 40-12-101, *et seq.*) Against All
Defendants....................................................................862

c.    Wyoming Count 3: Fraud by Omission and
Concealment Against All Defendants...........................866

d.    Wyoming Count 4: Unjust Enrichment
Against All Defendants .................................................869

IX.    PRAYER FOR RELIEF ........................................................................870

X.    JURY DEMAND ...................................................................................870

Plaintiffs, individually and on behalf of all those similarly situated, complain of Defendants Kia America, Inc., formerly known as KIA Motors America, Inc. ("KA"), KIA Motors Corporation ("KC," and with KA, "Kia"), Hyundai Motor Company ("HMC"), and Hyundai Motor America ("HMA," and with HMC, "Hyundai") (Kia and Hyundai are collectively referred to as "Defendants"), based upon their personal knowledge as to facts specific to them and based upon the investigation of counsel in all other respects, as follows:

## I.      NATURE OF THE ACTION

*"Motor vehicles are the primary mode of transportation for most of us, and often an indispensable part of our lives. But what would happen if your vehicle suddenly disappeared?"*[1]

1.      Over fifty years ago, the U.S. Department of Transportation ("DOT") recognized that "stolen cars constitute a major hazard to life and limb … [and] cause unreasonable risk of accident, personal injury, and death[.]" 33 Fed. Reg. 6,471 (Apr. 27, 1968). In recognition of the safety risk caused by auto thefts, Federal Motor Vehicle Safety Standards ("FMVSS" or "Safety Standards") were promulgated. The National Highway Traffic Safety Administration ("NHTSA") concluded that, "a reduction in the incidence of auto theft would make a substantial contribution to motor vehicle safety." *Id.*

2.      One of the most fundamental Safety Standards is FMVSS No. 114, titled "Theft Protection and rollaway prevention," which requires manufacturers to install in each of their vehicles "a starting system which, whenever the key is removed from the starting system prevents: (a) The normal activation of the vehicle's engine or motor; and (b) Either steering, or forward self–mobility, of the vehicle, or both." 49 C.F.R. § 571.114 S5.1.1.

---

[1] https://www.nhtsa.gov/road-safety/vehicle-theft-prevention (last accessed March 22, 2023).

3.      Today, and at all times relevant to this Complaint, NHTSA works with manufacturers to encourage the installation of "anti-theft devices, like immobilizer systems, as standard equipment on their vehicles."[2]

4.      An engine immobilizer is an anti-theft device that can prevent vehicles from starting unless a verified code is received by a transponder module that controls the engine. *See* 81 Fed. Reg. 66,833 (Sept. 29, 2016). This anti-theft device thus prevents the vehicle from being "hotwired" or started by any means other than an authorized key. Engine immobilizers have been described as "simple and low-cost anti-theft device[s]."[3] The cost to a manufacturer—such as Defendants—to install an immobilizer is a modest $50 per vehicle.

5.      Engine immobilizers have been found to be highly effective at preventing auto thefts. Indeed, more than a decade ago and prior to the sale of the first Class Vehicle,[4] Defendants acknowledged in filings with NHTSA that the installation of immobilizers results in "a clear reduction in vehicle thefts," ranging from 50% to 80% between pre- and post-introduction of immobilizer devices as standard equipment. 75 Fed. Reg. 1,447, 1448 (Jan. 11, 2010).

6.      Given the effectiveness and relatively minimal cost, manufacturers have installed immobilizers in virtually all their vehicles in order to ensure the safety of their vehicle and compliance with FMVSS No. 114. Beginning with at least 2000 model year ("MY") vehicles, immobilizers were standard on 62% of models sold by Defendants' competitors in the U.S. market, and 90% of all

---

[2] https://www.nhtsa.gov/road-safety/vehicle-theft-prevention (last accessed March 22, 2023).

[3] van Ours, Jan C. and Vollaard, Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 14, 2013). CentER Discussion Paper Series No. 2013-004, TILEC Discussion Paper No. 2013-001, Available at SSRN: https://ssrn.com/abstract=2202165.

[4] The "Class Vehicles" mean all 2011-2022 Kia vehicles and 2011-2022 Hyundai vehicles which do not contain an engine immobilizer. On information and belief, this includes all Hyundai and Kia models, except for the most expensive trim packages, and following models: Kia Niro (except 2017); Kia Stinger; Hyundai Azera; Hyundai Equus; Hyundai G80; Hyundai Genesis; and Hyundai Ioniq.

2008MY and later non-Hyundai or Kia vehicles sold in the United States were sold with immobilizers. By the time 2015 MY vehicles were introduced, over 96% of all non- Hyundai or Kia vehicles sold in the United States were sold with immobilizers.[5]

7.     Yet, despite Defendants' recognition that immobilizers are very effective in  reducing auto thefts, the relatively negligible cost to install the component, and the fact that nearly all their competitors offer immobilizers as a standard feature, Defendants have knowingly sold millions of Class Vehicles that do not contain this vital safety component and have other design flaws that eschew FMVSS No. 114. Defendants' pursuit of profits over safety have put millions of people at risk of loss, injury, and even death.

8.     But there is more. Design flaws in the Class Vehicles also allow thieves to steal a Class Vehicle in less than ninety seconds. The series of design flaws in the Class Vehicles include: (i) the steering columns do not contain adequately secure collars or casings, allowing easy access to the ignition assembly; (ii) the ignition lock cylinders do not have a locking mechanism and can be easily removed with minimal force, and in so doing, leaves the ignition switch intact; (iii) the exposed ignition switch can be started with any set of pliers, or the current generation of thieves' tool of choice, a USB connector; and (iv) the Class Vehicles do not contain engine immobilizers (collectively, the "Theft Prone Defect").

9.     In 2020, the number of Class Vehicle thefts skyrocketed. After a group of teenagers in Milwaukee, Wisconsin called the "Kia Boyz" discovered how the Theft Prone Defect made the theft of the Class Vehicles simple, the theft rate for Kia vehicles in the city increased by almost 3,200% year-over-year in the first six months of 2021, and thefts for Hyundai vehicles were up more than 1,700% over

---

[5] Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 14, 2013). CentER Discussion Paper Series No. 2013-004, TILEC Discussion Paper No. 2013-001, Available at SSRN: https://ssrn.com/abstract=2202165.

the same period. While Defendants account for approximately 10% of U.S. auto sales, 66% of all vehicles stolen in the city during this period were manufactured and sold by Defendants.[6] Thefts of Class Vehicles have skyrocketed. For example, St. Paul, Minnesota reported a 1,300% increase in Kia thefts and nearly a 600% increase in Hyundai thefts in the first half of 2022.[7] St. Petersburg, Florida police reported that 41% of vehicles stolen over the same time period were Hyundai and Kia vehicles.[8] Cities across the country have reported similar theft statistics (*see infra* ¶¶ 1330-59). In just the first three weeks of 2023, Hyundai and Kia vehicles accounted for 44% of all car thefts.[9]

10. After heavy public scrutiny by customers, media, and politicians, Defendants have acknowledged that the Class Vehicles are highly prone to theft, yet they have failed to admit that they suffer from the Theft Prone Defect, issue a safety recall, provide warranty coverage, or offer a complete remedy for the Theft Prone Defect in the Class Vehicles.

11. For most Americans, the purchase or lease of a motor vehicle is their second largest financial transaction, following only the purchase or lease of a home. Had Plaintiffs and other Class Members known of the Theft Prone Defect at the time of purchase or lease, they would not have bought or leased the Class Vehicles or would have paid substantially less for them.

12. As a result of Defendants' unfair, deceptive, and/or fraudulent business practices, owners and/or lessees of the Class Vehicles, including Plaintiffs and

---

[6] https://www.wsj.com/articles/too-easy-to-steal-in-milwaukee-car-theft-kia-hyundai-city-council-11642720288 (last accessed Aug. 26, 2022).

[7] https://www.fox9.com/news/minneapolis-woman-had-kias-targeted-three-times-in-six-months (last accessed March 22, 2023).

[8] https://www.abcactionnews.com/news/region-pinellas/st-pete-police-warn-about-troubling-car-theft-trend-targeting-kia-hyundai-cars (last accessed Aug. 26, 2022).

[9] https://illinoisattorneygeneral.gov/pressroom/2023_03/AG_Letter_to_Hyundia_and_Kia_final.pdf (last accessed March 22, 2023).

1  members of the Classes, have suffered an ascertainable loss of money and/or
2  property in the form of, for example, loss of value, loss of use of the vehicles, repair
3  costs, insurance deductible costs, higher insurance premiums, lost time, and other
4  inconvenience and anguish.

5      13.     Accordingly, Plaintiffs bring this action to redress Defendants'
6  misconduct. Plaintiffs seek equitable relief in the form of an adequate remedy for
7  the Theft Prone Defect, an appropriate curative notice regarding the existence the
8  Theft Prone Defect, recovery of damages, a repair under state consumer-protection
9  statutes and implied warranties, and reimbursement of all expenses associated with
10  the repair or replacement of the Class Vehicle and damage caused by the Theft
11  Prone Defect.

12              **II.    JURISDICTION AND VENUE**

13      14.     This Court has subject matter jurisdiction under the Class Action
14  Fairness Act of 2005, 28 U.S.C. §§1332(d)(2) and (6) because: (i) there are 100 or
15  more class members, (ii) there is an aggregate amount in controversy exceeding
16  $5,000,000.00 exclusive of interest and costs, and (iii) there is minimal diversity
17  because at least one plaintiff and one defendant are citizens of different states. This
18  Court also has supplemental jurisdiction over the state law claims under 28 U.S.C.
19  § 1367.

20      15.     Venue is proper in this judicial district under 28 U.S.C. § 1391 because
21  Defendants transact substantial business and because HMA and KA are
22  headquartered in this district. HMA and KA advertised in this district and
23  Defendants received substantial revenue and profits from sales and/or leases of the
24  Class Vehicles in this district. Defendants also have research and development
25  offices in this district. Therefore, a substantial part of the events and/or omissions
26  giving rise to the claims occurred, in part, within this district.

27      16.     This Court has personal jurisdiction over Defendants by virtue of their
28  transactions and business conducted in this judicial district, and because HMA and

KA are headquartered in California. Defendants have transacted and done business, and violated statutory and common law, in the State of California and in this judicial district.

17.    The Court has specific jurisdiction over HMC and KC pursuant to the long-arm statute of California (Cal. Code Civ. Proc. § 410.10) based on their forum-related activities from which this case arises, and the forum-related activities of their primary domestic subsidiaries, HMA and KA, which HMC and KC, respectively, substantially control.

**A.    HMC and KC Engage In Forum-Related Activities**

18.    HMC and KC design, manufacture, market, distribute, and sell the Class Vehicles under their registered trademarks "Hyundai" and "Kia." From 2010 to the present, when Class Vehicles were sold and marketed to Class Members— HMC and KC purposefully availed themselves of the United States' legal protections by registering and maintaining registrations with the United States government for trademarks associated with their vehicles and parts, which HMC and KC used to identify and distinguish its vehicles and parts in the United States, this District, and transferor jurisdictions.

19.    HMC and KC purposely availed themselves of markets in the United States, each selling approximately half a million vehicles per year in this market through their respective domestic subsidiaries, HMA and KA. *See infra* ¶¶ 1204-05.

20.    HMC and KC manufactured over eight million of the Class Vehicles, which were delivered to HMA and KA for sale in the United States. Although HMC and KC manufactured the vast majority of these Class Vehicles in Korea, it specifically segregated them from other Class Vehicles that were intended for sale in other countries, placed certification labels on them that assured compliance with U.S. federal safety requirements, and ensured those Class Vehicles shipped to the United States with full knowledge that HMA and KA would then distribute them across the United States. These certification labels give rise or relate to Plaintiffs'

claims because they misleadingly suggested the Class Vehicles were safe and comply with U.S. Safety Standards, including FMVSS No. 114.

21.    These Class Vehicles were not merely placed into a stream of commerce—they were directly targeted to the United States market. HMA and KA certified that the vehicles complied with United States safety requirements and ensured that they shipped directly to a wholly owned subsidiary responsible for distribution in the United States. Indeed, the Class Vehicles produced by Defendants for the United States market would not be allowed to be sold in the E.U., Australia, Canada, or other markets, that require engine immobilizers.

22.    HMC and KC affixed federal safety certification labels to the Class Vehicles manufactured in Korea, and directly approved the same labels for Class Vehicles manufactured in the United States, in each case knowing that they would be sold in the United States. The certification labels represented that the Class Vehicles conformed to U.S. safety standards, thereby enabling the vehicles to be sold in all 50 states. These misleading certification labels give rise or relate to Plaintiffs' claims.

23.    HMC and KC played key roles in HMA's and KA's analysis and decision-making relating to the design and/or manufacturing of the Class Vehicles sold in the United States containing the Theft Prone Defect, including the lack of immobilizers, steering column covers, ignition assemblies, and alarm systems.

24.    On information and belief, HMC and KC were intimately involved with in HMA's and KA's monitoring of the rate of Class Vehicle thefts, their attempts to remedy the Theft Prone Defect, and their discussions with NHTSA concerning the Theft Prone Defect.

**B.    HMC And KC Control HMA And KC**

25.    HMC and KC exercise control over HMA and KA, respectively, through several formal and informal mechanisms.

26.     Upon information and belief, HMC and KC have the power to appoint board members to HMA and KA, respectively. They have exercised this power to appoint board members to these subsidiaries that they believe will manage the subsidiaries with the principal goal of benefiting them.

27.     HMC and KC purposely availed themselves of markets in the United States. For example, HMC and KC each regularly submitted applications to the EPA to obtain certification necessary for the sale of their vehicles in the United States.[10]

28.     HMC maintains a "Global Command and Control Center" on the second floor of its headquarters in Korea.[11] The Center operates around the clock and boasts dozens of screens relaying live data and video feeds from all of Hyundai and Kia's assembly lines and research centers around the world. The production data is generated on the assembly lines and displayed on boards where team members can see it, and headquarters can see the same data at the same time. From the Global Command and Control Center, HMC controls Hyundai operations around the world, including those in the United States.

29.     On information and belief, KC representatives also monitor Kia's global operations from HMC's Global Command and Control Center.

30.     If HMC's or KC's quality monitors in Korea spot errors or problems, they call the factory immediately. Additionally, employees of HMA and KA report on quality issues to HMC and KC, respectively. For instance, one of the Hyundai plants monitored at the Global Command and Control Center is in Alabama. That

---

[10] *E.g.*, https://www.epa.gov/sites/default/files/2019-07/documents/kmc-off-cycle-ghg-credit-high-efficiency-alternator-2019-06-10.pdf (last accessed March 24, 2023); https://www.epa.gov/system/files/documents/2022-09/hyundai-ghg-credit-pwm-hvac-blm-apl-2020-12-15.pdf (last accessed March 24, 2023).

[11] https://digitaledition.strategy-business.com/publication/?i=145911&p=70 (last accessed March 24, 2023).

plant's production chief was quoted as saying, "if there's a hiccup at any of those boards, headquarters wants to know what needs to be done about it – right now."[12]

31.     Senior Korean executives at HMC and KC also regularly visit Hyundai and Kia plants and offices in the United States, including HMA's and KA's California headquarters.

32.     Korean speaking "coordinators" work at HMA and KA and report on their activities to Korean executives at HMC and KC, respectively, every business day.

33.     HMC and HMA share common executives. For example, Jose Muñoz is the current Global Chief Operating Officer of HMC as well as the President and CEO of Hyundai Motor America, Inc.[13] HMC states that "[b]ased in Hyundai's U.S. headquarters in Fountain Valley, California, Muñoz also oversees the entire American market, including Hyundai Motor North, Central and South America, as the head of the Hyundai Motor Americas Region." Brian Latouf serves as the Global Chief Safety Officer for HMC, as well as the chief safety officer of HMA.[14]

34.     KC and KA also share common employees. For example, SeungKyu (Sean) Yoon currently serves as President and CEO of KA, as well as Senior Managing Director of KC, where he is the President & CEO of the Kia North America Region.[15] Prior to his current role, Mr. Yoon served as the America Group Leader for KC.

---

[12] https://digitaledition.strategy-business.com/publication/?i=145911&p=70 (last accessed March 24, 2023).

[13] https://www.hyundainews.com/en-us/bios/jose-munoz (last accessed March 24, 2023).

[14] https://www.hyundainews.com/en-us/bios/brian-latouf- (last accessed April 10, 2023).

[15] https://www.kiamedia.com/us/en/media/pressreleases/13858/seungkyu-sean-yoon-1 (last accessed Aug. 29, 2022); https://www.linkedin.com/in/seungkyu-sean-yoon-3251b1a9/ (last accessed March 24, 2023); https://www.automotive world.com/news-releases/kia-america-debuts-in-us-new-name-replaces-kia-motors-america-as-part-of-kia-corporation-global-brand-strategy/ (last accessed March 24,

35.     Moreover, HMC and KC have overlapping management. Eui-Sun Chung serves as the President of KC and the Executive Vice Chairman of HMC.[16]

36.     HMC and KC control the public name and brand of HMA and KA, respectively. In consumer transactions, like those with Plaintiffs, HMC's and KC's brands and logos serve as their person and their subsidiaries' official seal and signature to consumers.

## III.    PARTIES

### A.    Hyundai Plaintiffs

#### 1.    Alabama Plaintiff

37.     Plaintiff Kari Eldridge ("Plaintiff," for purposes of this section) is a resident of St. Louis, Missouri. Plaintiff purchased a new 2017 Hyundai Tucson from Bentley Hyundai in Huntsville, Alabama on or around June 24, 2017. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2017 Hyundai Tucson is a Class Vehicle subject to the Theft Prone Defect.

38.     On information and belief, Bentley Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

39.     Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

40.     Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality.

41.     Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft

---

2023); https://www.zippia.com/kia-motors-america-careers-28628/executives/ (last accessed March 24, 2023).

[16] https://worldwide.kia.com/int/company/ir/info/board-of-directors

Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

42.    Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai branded vehicles.

43.    On or about August 10, 2022, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

44.    Two or three days later, Plaintiff was informed by the police that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found it destroyed, including broken windows, scratches on the body, damage to the underside of the vehicle, and a hole in the engine.

45.    Plaintiff's insurance declared the vehicle a total loss and compensated her for the value of the vehicle, but she was forced to pay the policy's $1,000 deductible out of pocket.

46.    Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Specifically, after the theft of the vehicle, rental cars were not available due to high demand and Plaintiff struggled to find transportation. Having no form of transportation was not only a major inconvenience but it was stressful too. Plaintiff worried about what would happen if there was an emergency or if she needed a doctor's appointment. Because of the increased demand for vehicles brought on by the COVID-19 pandemic, vehicle prices had increased dramatically. Although Plaintiff was compensated by her insurance company for the total loss, the sharp increase in car prices meant that she could afford less with the compensation she received. Plaintiff had to purchase an economy vehicle via financing. Prior to the Theft Prone Defect, Plaintiff had a fully paid for, ostensibly luxury vehicle. Now, because of the Theft Prone Defect, she has a car payment on a vehicle she would not have otherwise chosen to purchase. All of this also caused unnecessary financial stress. Even today with her new vehicle, Plaintiff constantly

worries about theft. She wonders every time she parks if it is a safe place or if she should look for some place safer. She does not feel comfortable keeping a USB cord in her new vehicle. Finally, when her car was stolen things were missing that had her address on it. This caused her stress and anxiety as she does not know who might have her address, and she worries if she is safe at home now.

47.    Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

48.    At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Bentley Hyundai.

49.    Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

50.    Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

51.     Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

**2.     California Plaintiffs**

52.     Plaintiff Brittany Kingsbury ("Plaintiff," for purposes of this section) is a resident of Los Angeles, California. Plaintiff purchased a used 2015 Hyundai Sonata from Keyes Hyundai of Van Nuys in Van Nuys, California in or around 2017. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Class Vehicle subject to the Theft Prone Defect.

53.     Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business's name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

54.     On information and belief, Keyes Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

55.     Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

56.     Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

57.     Plaintiff saw and heard Hyundai television and radio commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

58.     Plaintiff also viewed at least three Hyundai billboard advertisements touting the quality of Hyundai-branded vehicles.

59.     On or about July 16, 2022, Plaintiff's Class Vehicle was stolen for the first time. Plaintiff was in the process of moving into a new residence and parked her car on the street with moving boxes overnight. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report with the Culver City Police Department.

60.     On or about August 18, 2022, Plaintiff was informed by the Culver City Police Department that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found that the vehicle suffered significant damages. Because Plaintiff was uninsured against theft, she incurred approximately $2,800 in damages related to repairing, among other things, the vehicle's ignition system, steering wheel, paint, and door lock. Additionally, Plaintiff spent approximately $60 to purchase a steering wheel lock. Following the incident, Plaintiff stopped driving the vehicle for a period of three months due to concern of theft.

61.     On or about November 17, 2022, Plaintiff's Class Vehicle was stolen for a second time. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report with the Culver City Police Department and insurance claim with her insurance company.

62.     On or about November 19, 2022, Plaintiff was informed by the Culver City Police Department that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found that the vehicle suffered significant damages. The vehicle was deemed a total loss by Plaintiff's insurance carrier.

63.     While Plaintiff's insurance covered the loss of the vehicle from the theft, she was forced to pay the policy's $500 deductible out of pocket.

64.     Plaintiff experienced inconvenience and emotional distress related to multiple thefts of her vehicle caused by the Theft Prone Defect.

65.     At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Keyes Hyundai.

66.     Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

67.     Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

68.     Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

69.     Plaintiff Miyoshi Morrow ("Plaintiff," for purposes of this section) is a resident of Los Angeles, California. Plaintiff purchased a used 2016 Hyundai Elantra from CarMax in Inglewood, California in or around May 2017. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Class Vehicle subject to the Theft Prone Defect.

70.     Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

71.     Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

72.     Plaintiff purchased her Class Vehicle primarily for personal, family, and household use.

73.     On or about August 25, 2022, Plaintiff's Class Vehicle was stolen while it was parked outside her home. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report.

74.     On or about August 30, 2022, Plaintiff was informed by the Los Angeles Police Department that they recovered her Class Vehicle. They had pulled over a suspect driving her Class Vehicle and arrested him. After receiving the vehicle back, Plaintiff filed an insurance claim, and her Class Vehicle was deemed a total loss.

75.     While Plaintiff's insurance provided Plaintiff with a total loss check, Plaintiff was forced to pay the policy's $1,000 deductible out of pocket.

76.     Plaintiff incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred alternative transportation costs, personal property losses when her personal items, including portable jumper cables, were stolen from her vehicle, and lost wages. Since the theft, Plaintiff has been unable to purchase another vehicle and pays for public transportation and, when she can, ride share services. Not only did Plaintiff have to miss work on the day of the theft, but she has also completely lost her entire second source of income that she had from working a night job. She cannot use public transportation to

commute to her night job because public transportation services do not operate after hours and therefore, she could no longer sustain employment at her night job without a personal vehicle.

77.     Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Specifically, Plaintiff relies primarily on public transportation since the loss of her Class Vehicle and constantly worries that she may be robbed. She often limits how much she carries so she is not left vulnerable to attack and secures her purse under her clothing so it cannot be stolen. When she must use public transportation with her child, she fears for both of their safety, causing her constant anxiety. Plaintiff is also under significant stress due to the financial strain of losing her second source of income.

78.     At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had she disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above.

79.     Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

80.     Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

81.     Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

82.     Plaintiff Stefani Poblete Taylor ("Plaintiff," for purposes of this section) is a resident of Cerritos, California. Plaintiff purchased a new 2013 Hyundai Elantra GLS Limited from Commerce Hyundai in Commerce, California in or around May 1, 2012. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2013 Hyundai Elantra GLS Limited is a Class Vehicle subject to the Theft Prone Defect.

83.     On information and belief, Commerce Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

84.     Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

85.     Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

86.     Plaintiff purchased her Class Vehicle primarily for personal, family, and household use.

87.     On or about June 30, 2022, Plaintiff's Class Vehicle was stolen from the Long Beach Exchange in Long Beach, California. Plaintiff was there to get lunch and was away from her Class Vehicle for about an hour. When she returned to where the Class Vehicle was parked it was gone. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

88.     On or about a week later, Plaintiff's Class Vehicle was located Compton, California. Plaintiff's Class Vehicle was completely stripped and

everything of value was gone. Even the Class Vehicle's tires were gone and had been replaced with old tires. Plaintiff's Class Vehicle was determined to be a total loss.

89.     Plaintiff's insurance paid her approximately $10,000 for her Class Vehicle because it was a total loss. Plaintiff paid a $500 deductible that was deducted from the insurance payment for the Class Vehicle. Plaintiff's insurance premium was increased.

90.     Plaintiff incurred significant out-of-pocket expenses and losses arising from the theft of her Class Vehicle. Specifically, Plaintiff paid $152.32 for a rental vehicle and approximately $200 to replace personal items. Plaintiff also incurred significant expenses for a replacement vehicle. She leased a vehicle for months at $599 a month. After the lease is over, the residual value of the replacement vehicle is $19,599.45. Because of the vehicle inventory crisis in July 2022, there was a very limited selection of new cars and interest rates were extremely high, so Plaintiff overpaid for her new vehicle. There were no attractive financing offers for new vehicles like when Plaintiff purchased the Class Vehicle in 2012.

91.     Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff has been attending therapy for anxiety and PTSD.

92.     At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Commerce Hyundai.

93. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

94. Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

95. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

**3. Colorado Plaintiff**

96. Plaintiff Adam Lippert ("Plaintiff," for purposes of this section) is a resident of Denver, Colorado. Plaintiff purchased a new 2016 Hyundai Elantra GT from Arapahoe Hyundai in Centennial, Colorado, in or around August 2015. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition. On information and belief, Plaintiff's 2016 Hyundai Elantra is a Class Vehicle subject to the Theft Prone Defect.

97. Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business's name. It was Plaintiff's only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, he purchased it with personal funds and kept it at his residence.

98. On information and belief, Arapahoe Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

99. Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

100.   Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

101.   On or about July 5, 2022, Plaintiff's Class Vehicle was stolen from his apartment complex's garage. On realizing that his Class Vehicle was stolen, Plaintiff filed a police report with the Denver Police Department and an insurance claim with Progressive Insurance.

102.   On or about August 3, 2022, Plaintiff was informed by the Denver Police Department that his Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found that the vehicle was destroyed and deemed a total loss not fit for auction by Progressive Insurance. Inside the recovered vehicle there was evidence of drug use, bodily fluids, and other biological contaminants.

103.   While Plaintiff's insurance provided coverage for the loss, he was forced to pay the policy's $1,000 deductible out of pocket. The insurance coverage was not sufficient for Plaintiff to purchase a replacement vehicle. Plaintiff also is forced to incur out-of-pocket expenses for alternative modes of transportation including rental car expenses and Uber charges.

104.   As a result of the theft of his Class Vehicle, Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect.

105.   At no point before Plaintiff purchased his vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have

learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Arapahoe Hyundai.

106.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

107.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

108.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

### 4.   Florida Plaintiff

109.   Plaintiff Michael Kay ("Plaintiff," for purposes of this section) is a resident of Wellington, Florida. Plaintiff purchased a new 2015 Hyundai Tucson SE from Napleton Hyundai in West Palm Beach, Florida on or around June 2, 2015. Plaintiff's 2015 Hyundai Tucson has a traditional "insert-and-turn" steel key ignition system. Plaintiff also purchased a 2020 Hyundai Kona SEL from Napleton Hyundai on or about March 26, 2020. On information and belief, Plaintiff's 2015 Hyundai Tucson SE and 2020 Hyundai Kona are Class Vehicles subject to the Theft Prone Defect.

110.   On information and belief, Napleton Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

111.   Plaintiff purchased both Class Vehicles primarily for personal, family, and household purposes in that they were not purchased on behalf of a business and were not titled in a business' name. They were Plaintiff's vehicles and he used them for all his personal, family, and household transportation needs such as household

errands and driving to and from work. Plaintiff purchased the Class Vehicles with personal, family funds and kept the vehicles at his residence.

112.   Plaintiff purchased his Class Vehicles because he believed that the vehicles were safe, reliable, and high quality. Before purchasing the Class Vehicles, Plaintiff reviewed and relied on numerous statements and representations about them. Plaintiff reviewed several outlets for information including Consumer Reports and other consumer review publications and services.

113.   Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicles were affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicles' safety, reliability, and quality.

114.   At no point before Plaintiff purchased his Class Vehicles did Hyundai disclose that the vehicles suffered from the Theft Prone Defect, which renders them highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes them a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicles, Plaintiff would have learned of the concealed information through, for example, channels such as Consumer Reports.

115.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

116.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased vehicles that are of a lesser standard, grade, and quality than represented, and he did not receive vehicles that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicles.

117.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicles, or would have paid less to do so.

118.   Plaintiff Mollie McGeehon ("Plaintiff," for purposes of this section) is a resident of St. Louis, Missouri. Plaintiff purchased a used 2012 Hyundai Elantra from Headquarter Hyundai in Sanford, Florida in or around July 2015. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2012 Hyundai Elantra is a Class Vehicle subject to the Theft Prone Defect.

119.   On information and belief, Headquarter Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

120.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

121.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

122.   Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. The sales representative from Headquarter Hyundai represented the Class Vehicle as a safe, reliable and quality vehicle. The Class Vehicle was sold to Plaintiff as a certified pre-owned vehicle with a 100,000-mile warranty. Plaintiff also investigated the Hyundai Elantra and found it to be highly rated in Consumer Reports and other publications that review and rate automobiles with respect to quality, safety and reliability.

123.   On or about July 28, 2022, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

124.   On the same day, the police recovered Plaintiff's Class Vehicle. The vehicle needed to be towed and required multiple repairs.

125.   While Plaintiff's insurance covered a portion of the repairs to her Class Vehicle, it has not covered all the repairs, nor did it cover the full cost to tow the vehicle. Plaintiff has paid her $500 deductible and the costs for repairs and towing beyond what the insurer paid. She also had to rent a car and borrow a car from family members when her vehicle was being repaired.

126.   As a result of the theft, Plaintiff's insurance premiums are also increasing.

127.   As a result of the Theft Prone Defect and theft of the Class Vehicle, Plaintiff purchased a steering wheel lock to deter theft of the Class Vehicle.

128.   Plaintiff has experienced inconvenience and emotional distress related to the Theft Prone Defect. She no longer feels safe driving her vehicle out of town or far from home.

129.   At no point before Plaintiff purchased her Class Vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Headquarter Hyundai.

130.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

131.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

132.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

**5.    Georgia Plaintiff**

133.   Plaintiff Herbert Taylor ("Plaintiff," for purposes of this section) is a resident of Decatur, Georgia. Plaintiff purchased a new 2016 Hyundai Sonata from Rick Case Hyundai in Duluth, Georgia in or around March 2016. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2016 Hyundai Sonata is a Class Vehicle subject to the Theft Prone Defect.

134.   On information and belief, Rick Case Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

135.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

136.   Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

137.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai branded vehicles.

138.   Plaintiff purchased his Class Vehicle primarily for personal, family, and household use.

139.   Despite the fact that his vehicle was not stolen or targeted based on the Theft Prone Defect, Plaintiff was recently informed that his annual insurance premium was to be raised by an astronomical $800.

140.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Specifically, Plaintiff stopped driving the vehicle to certain places for fear of theft or attempted theft. When Plaintiff would drive the vehicle, Plaintiff kept stops to short durations in places where Plaintiff could keep an eye on the vehicle.

141.   At no point before Plaintiff purchased his vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Rick Case Hyundai.

142.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

143.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

144.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

**6.     Illinois Plaintiffs**

145.   Plaintiff Arlecia Brown ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff purchased a new 2015 Hyundai Sonata from Family Hyundai in Tinley Park, Illinois in or around July 2015. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Class Vehicle subject to the Theft Prone Defect.

146.   On information and belief, Family Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

147.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

148.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

149.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

150.   Over the course of eight months, Plaintiff's Class Vehicle was stolen and recovered three times. The first and second times it was stolen, the vehicle sustained significant body damage totaling more than $2,000 in repair costs each time. The third time it was stolen, the vehicle sustained body damage totaling nearly $2,000, and the vehicle was used in the commission of a homicide. Each time the vehicle was stolen while parked on a public street outside of Plaintiff's residence. Each time the vehicle was stolen, the vehicle was fully locked. Plaintiff filed police reports and insurance claims for each theft.

151.   While Plaintiff's insurance covered the repair costs from these thefts, she had to pay her $500 deductible out of pocket each time.

152.   Because of the Theft Prone Defect and these resulting thefts, Plaintiff's insurance premium increased twice and now her insurer is terminating her policy.

153.   Even worse, each theft and repair period prevented Plaintiff from performing her duties with the Illinois Department of Children and Family Services, which requires significant driving. She was unable to drive her car for nearly two months, collectively.

154.   Plaintiff also incurred other out-of-pocket expenses following the theft of her Class Vehicle, including the taxes for her rental car.

155.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect.

156.   At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the

advertising channels described above or through discussions with the salesperson at Family Hyundai.

157.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

158.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

159.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

160.   Plaintiff Edith Bucio ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff purchased a new 2020 Hyundai Elantra from World Hyundai Matteson in Matteson, Illinois in or around March 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2020 Hyundai Elantra is a Class Vehicle subject to the Theft Prone Defect.

161.   On information and belief, World Hyundai Matteson is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

162.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it, including those made by the salesperson.

163.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands.

Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

164.   On or about January 14, 2023, Plaintiff's Class Vehicle was stolen. The next day, Plaintiff was leaving for work when she discovered her car was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

165.   A few weeks later, Plaintiff's Class Vehicle was recovered, but it had sustained significant damage. The steering wheel was broken, the underside was damaged, the brakes required replacement, and it was dented all along its left side.

166.   Plaintiff was also without her vehicle for several weeks before it was recovered and then another week while it was at the mechanic for repairs.

167.   While Plaintiff's insurance company initially agreed to cover her rental car, it quickly concluded that she did not have coverage for the theft, and only paid 2-3 days of car rental. Plaintiff had to cover all other expenses and costs out of pocket, including repair, rental, and towing.

168.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Specifically, Plaintiff experienced stress during the time-consuming process of dealing with her insurance. She needs a car to get to work and had to scramble to find affordable rental cars. Additionally, for the three days her insurance decided to cover her car rental, the car rental company was constantly calling her and telling her that her insurance would not cover any rental fees. Due to her lack of a vehicle, Plaintiff had to walk in the cold often, which aggravated her asthma.

169.   At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the

existence of the Theft Prone Defect from consumers like Plaintiff. Had they

disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle,

Plaintiff would have learned of the concealed information through, for example, the

advertising channels described above or through discussions with the salesperson at

World Hyundai Matteson.

170.   Plaintiff suffered an ascertainable loss due to Defendants' wrongful

conduct associated with the Theft Prone Defect.

171.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased

a vehicle that is of a lesser standard, grade, and quality than represented, and she

did not receive a vehicle that met ordinary and reasonable consumer expectations

regarding quality design, and safe and reliable operation. The Theft Prone Defect

has significantly diminished the value of Plaintiff's Class Vehicle.

172.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not

have purchased her Class Vehicle, or would have paid less to do so.

173.   Plaintiff Matthew Pavonetti ("Plaintiff," for purposes of this section) is

a resident of Chicago, Illinois. Plaintiff purchased a new 2014 Hyundai Elantra SE

from Hyundai of Lincolnwood in Lincolnwood, Illinois in or around August 2014.

Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On

information and belief, Plaintiff's 2014 Hyundai Elantra is a Class Vehicle subject

to the Theft Prone Defect.

174.   On information and belief, Hyundai of Lincolnwood is part of

Hyundai's network of authorized dealers across the United States and is promoted

on HMA's website, which includes an updated list of the dealership's inventory.

175.   Plaintiff purchased his Class Vehicle because he believed that the

vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle,

Plaintiff reviewed and relied on numerous statements and representations about it.

176.   Plaintiff visited the Hyundai website and reviewed representations

about the Class Vehicle's safety, reliability, and quality. Because Defendants failed

to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

177.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

178.   On or about September 27, 2022, Plaintiff's Class Vehicle was stolen.

179.   Approximately one week later, Plaintiff found his Class Vehicle on the city's tow list. The vehicle had the following damage: a broken passenger rear window which caused weather damage to the interior, a torn steering column, a destroyed ignition column, a broken passenger-side mirror, and extensive body damage from a collision.

180.   Because Plaintiff was uninsured against theft or damage, he incurred approximately $700 in repair costs.

181.   Plaintiff incurred significant out-of-pocket expenses following the theft of his Class Vehicle. Specifically, in addition to the $700 already spent on repairs, Plaintiff will need to spend $3500 more to return his Class Vehicle to its pre-theft condition. He also incurred $100 in transportation costs due to the theft.

182.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff has experienced frustration, anxiety and inconvenience due to the theft of his Class Vehicle because he did not have a personal vehicle for approximately thirty days, and it is still not completely repaired. He has lost many hours searching for his Class Vehicle when it was missing and subsequently dealing with the body shop regarding repairs to his Class Vehicle, adding to his frustration and distress. Additionally, during the time his Class Vehicle was missing, Plaintiff received 14 traffic tickets after his Class Vehicle was identified 14 times on various red-light cameras and speed cameras throughout Cook County, Illinois. Plaintiff had to take many hours off work to

attend court appearances which was a tremendous inconvenience and compounded his frustration and distress.

183.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, he purchased it with personal funds and kept it at his residence.

184.   At no point before Plaintiff purchased his Class Vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Hyundai of Lincolnwood.

185.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

186.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

187.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

188.   Plaintiff Jason Reyes ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff purchased a new 2021 Hyundai Venue SEL from Gurnee Hyundai in Gurnee, Illinois on or around May 24, 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Hyundai Venue is a Class Vehicle subject to the Theft Prone Defect.

189.   On information and belief, Gurnee Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

190.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

191.   Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

192.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

193.   Plaintiff saw an increase in his Class Vehicle's annual insurance premium from his initial agreement in 2021. He expects the cost to rise again during the 2023 renewal period.

194.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff experiences sleep deprivation and added stress due to concerns that his Class Vehicle could be stolen if he should happen to leave it alone at the grocery store, mall, or anywhere else alone for longer than ten minutes while running errands. Plaintiff's anxiety about his defective Class Vehicle causes headaches, mood changes, and a lack of energy throughout his workdays. Plaintiff

has stopped using his Class Vehicle at night due to fears that his Class Vehicle may be stolen or attempted to be stolen. To socialize with his friends, he is forced to limit his activities to those who have their own cars and can offer him a ride.

195.   At no point before Plaintiff purchased his vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Gurnee Hyundai.

196.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

197.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

198.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, he purchased it with personal funds and kept it at his residence.

199.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle or would have paid less to do so.

### 7.    Iowa Plaintiffs

200.   Plaintiff Ann Brady ("Plaintiff," for purposes of this section) is a resident of Des Moines, Iowa. Plaintiff purchased a new 2019 Hyundai Tucson SE from Stew Hansen Hyundai in Clive, Iowa in or around July 2019. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2019 Hyundai Tucson SE is a Class Vehicle subject to the Theft Prone Defect.

201.   On information and belief, Stew Hansen Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

202.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

203.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased by or on behalf of a business and was not titled in a business' name. It was used primarily for transportation needs such as household errands and to drive to and from work. The vehicle was bought with personal funds and kept at the apartment complex where Plaintiff lived.

204.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

205.   In or around July 2022, Plaintiff's Class Vehicle was stolen while visiting Milwaukee, Wisconsin for a conference. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and then later an insurance claim.

206.   The Class Vehicle was recovered by the Milwaukee Police Department three days after the theft and was severely damaged. The Class Vehicle's rear passenger and windshield were shattered, the axel and steering column were damaged, and the front driver's tire had been replaced with the spare, which was

1   now bald, flat, and had a damaged rim. Plaintiff's insurer declared the Class

2   Vehicle a total loss.

3       207.   While Plaintiff's insurer paid her for the total loss of the vehicle, she

4   was forced to pay the policy's $500 deductible out of pocket.

5       208.   Plaintiff also incurred other out-of-pocket expenses following the theft

6   of her Class Vehicle. Specifically, Plaintiff's insurer only partially covered the cost

7   of her rental vehicle, and she had to pay out of pocket for the remainder. She also

8   had personal property stolen from her Class Vehicle that was not covered by her

9   insurer. The value of the personal property was approximately $500.

10       209.   Plaintiff experienced inconvenience and emotional distress related to

11   the Theft Prone Defect. Because she was out of town when the car was stolen, she

12   had to find transportation home with a co-worker. Purchasing a replacement vehicle

13   was very time consuming due to a lack of available inventory.

14       210.   At no point before Plaintiff purchased her vehicle did Hyundai

15   disclose that it suffered from the Theft Prone Defect, which renders it highly

16   susceptible and predisposed to theft by experienced and amateur thieves, and which

17   makes it a prime target to be used as instrumentalities through which thieves engage

18   in reckless driving or other criminal activity. Indeed, Hyundai concealed the

19   existence of the Theft Prone Defect from consumers like Plaintiff. Had they

20   disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle,

21   Plaintiff would have learned of the concealed information through, for example, the

22   advertising channels described above or through discussions with the salesperson at

23   Stew Hansen Hyundai.

24       211.   Plaintiff suffered an ascertainable loss as a result of Defendants'

25   wrongful conduct associated with the Theft Prone Defect.

26       212.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased

27   a vehicle that is of a lesser standard, grade, and quality than represented, and she

28   did not receive a vehicle that met ordinary and reasonable consumer expectations

regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

213. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

214. Plaintiff Mark Thompson ("Plaintiff," for purposes of this section) is a resident of Council Bluffs, Iowa. Plaintiff purchased a used 2016 Hyundai Tucson SE from Edwards Hyundai in Council Bluffs, Iowa in or around October 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2016 Hyundai Tucson SE is a Class Vehicle subject to the Theft Prone Defect.

215. On information and belief, Edwards Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

216. Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

217. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased by or on behalf of a business and was not titled in a business' name. It was used primarily for transportation needs such as household errands, to go to the grocery store and to drive to and from work. The vehicle was bought and is being paid for with personal funds and is kept at Plaintiff's residence.

218. Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

219.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

220.   Currently, Plaintiff is unable to fully insure the vehicle because of the Theft Prone Defect. To insure it fully, he was informed by his insurance company that he must buy and install a security kit valued at approximately $1,099. He cannot afford to do so right now.

221.   Because his Class Vehicle is not fully insured, Plaintiff incurred and is incurring significant out-of-pocket expenses for alternative transportation such as public transportation, ride share, and rides from friends and family.

222.   At no point before Plaintiff purchased his Class Vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Edwards Hyundai.

223.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

224.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

225.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

8.    **Louisiana Plaintiffs**

226.    Plaintiff Renee Ledet ("Plaintiff," for purposes of this section) is a resident of New Orleans, Louisiana. Plaintiff purchased a used 2016 Hyundai Sonata from Terrebonne Ford in Houma, Louisiana, in or around September 2016. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2016 Hyundai Sonata is a Class Vehicle subject to the Theft Prone Defect.

227.    On information and belief, Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

228.    Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Plaintiff reviewed safety ratings available online that indicated that the Class Vehicle was a safe, reliable and quality automobile. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

229.    Plaintiff heard and saw television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

230.    Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

231.    On or about December 25, 2022, Plaintiff's Class Vehicle was stolen from the driveway at Plaintiff's home. On December 26, 2022, the New Orleans

Police Department came to Plaintiff's home and informed her that they had recovered her vehicle and that it was being investigated as part of a homicide investigation.

232. On or about December 26, 2022, Plaintiff was informed that her Class Vehicle was being released by the New Orleans Police Department. After receiving the vehicle back, Plaintiff found it had sustained severe damage. The Class Vehicle's steering column and side mirrors were damaged and multiple windows were shattered.

233. Because Plaintiff was uninsured against theft when her Class Vehicle was stolen, she was unable to afford the cost to repair the vehicle. Also, because the Class Vehicle was possibly used to commit a homicide, Plaintiff did not feel safe in continuing to drive the Class Vehicle for fear of retaliation. However, as the Class Vehicle was not yet paid off, she continues to make payments on it.

234. Since Plaintiff's six-month policy term ended in December 2022, Plaintiff has also been unable to fully insure the vehicle because of the Theft Prone Defect. The few insurers she found willing to insure it offered policies that are too expensive. At the time the Class Vehicle was stolen the car was not being driven by Plaintiff because she could not afford the insurance premiums.

235. Plaintiff incurred other significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff paid for a rental vehicle, as well as alternative transportation such as ride shares and rides from friends and family. She paid out of pocket to purchase an anti-theft device for her Class Vehicle.

236. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. In addition to the constant inconvenience of not having a vehicle for personal use, Plaintiff has experienced the fear of potential retaliation based upon a mistaken belief that she was involved in any crime that was committed using her vehicle.

237.   At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above.

238.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

239.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

240.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

241.   Plaintiff Ian Michael Scott ("Plaintiff," for purposes of this section) is a resident of New Orleans, Louisiana. Plaintiff purchased a used 2019 Hyundai Sonata SE from Hyundai of Metairie in Metairie, Louisiana on or around December 23, 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2019 Hyundai Sonata is a Class Vehicle subject to the Theft Prone Defect.

242.   On information and belief, Hyundai of Metairie is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

243.   Plaintiff purchased his Class Vehicle because he believed that the
vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle,
Plaintiff reviewed and relied on numerous statements and representations about it.

244.   Plaintiff visited Hyundai dealership websites and numerous car review
websites and reviewed representations about the Class Vehicle's safety, reliability,
and quality. Because Defendants failed to disclose the Theft Prone Defect,
Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft
Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and
quality.

245.   Plaintiff's Class Vehicle was stolen twice. On or about July 25, 2022,
Plaintiff's Class Vehicle was stolen for the first time. On or about October 31,
2022, Plaintiff's Class Vehicle was stolen for the second time. On realizing that his
Class Vehicle was stolen, Plaintiff filed an insurance claim regarding both thefts.

246.   After the first theft, on or about July 27, 2022, Plaintiff was informed
by police that his Class Vehicle was recovered. After receiving the vehicle back,
Plaintiff found it heavily damaged: the passenger side front window was broken,
there was left rear fender and roof body damage, the ignition was pulled out, and
there was likely damage to the transmission. After the second theft, on or about
November 12, 2022, the police called Plaintiff and told him his vehicle was
recovered. Plaintiff again found it heavily damaged: the passenger side front
window was broken, the ignition was ripped out, there was damage from cigarette
smoke and cigarette burns, as well as possible body damage.

247.   While Plaintiff's insurance covered all the repair costs from the thefts,
he was forced to pay the policy's $1,500 deductible out of pocket for each theft.

248.   Plaintiff incurred significant out-of-pocket expenses following the
thefts of his Class Vehicle. Specifically, Plaintiff incurred the following expenses:
approximately $400 to replace stolen personal property and $2,466.53 in rental car
costs. Plaintiff also purchased a steering wheel lock for approximately $50.

249.   Plaintiff experienced inconvenience and emotional distress related to
the Theft Prone Defect. Since the thefts, Plaintiff suffers constant anxiety and bouts
of panic relating to his Class Vehicle and worries it could be stolen again.

250.   At no point before Plaintiff purchased his vehicle did Hyundai disclose
that it suffered from the Theft Prone Defect, which renders it highly susceptible and
predisposed to theft by experienced and amateur thieves, and which makes it a
prime target to be used as instrumentalities through which thieves engage in
reckless driving or other criminal activity. Indeed, Hyundai concealed the existence
of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the
Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have
learned of the concealed information through, for example, the advertising channels
described above or through discussions with the salesperson at Hyundai of
Metairie.

251.   Plaintiff suffered an ascertainable loss as a result of Defendants'
wrongful conduct associated with the Theft Prone Defect.

252.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a
vehicle that is of a lesser standard, grade, and quality than represented, and he did
not receive a vehicle that met ordinary and reasonable consumer expectations
regarding quality design, and safe and reliable operation. The Theft Prone Defect
has significantly diminished the value of Plaintiff's Class Vehicle.

253.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not
have purchased his Class Vehicle, or would have paid less to do so.

**9.    Maryland Plaintiffs**

254.   Plaintiff Irene Beach ("Plaintiff," for purposes of this section) is a
resident of Landover, Maryland. Plaintiff leased a new 2021 Hyundai Elantra SE
from Pohanka Hyundai in Capitol Heights, Maryland in or around April 2021.
Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On

information and belief, Plaintiff's 2021 Hyundai Elantra is a Class Vehicle subject to the Theft Prone Defect.

255.   On information and belief, Pohanka Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

256.   Plaintiff leased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before leasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

257.   Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

258.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

259.   Plaintiff purchased her Class Vehicle primarily for personal, family, and household use.

260.   On or about March 13, 2023, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

261.   On or about March 13, 2023, Plaintiff was informed by the police that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found it with a broken window; damaged steering column; damaged and dirtied interior; damaged, dented, and scratched exterior; and with damage to a front wheel.

262.   While Plaintiff's insurance covered all the repair costs from the theft, she was forced to pay the policy's $1,000 deductible out of pocket.

263.   Plaintiff incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred personal property losses

in an amount of approximately $2,500. The thieves took Plaintiff's car seat, booster seat, shoes, and tools.

264.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff has experienced frustration, anxiety, and inconvenience due to the theft of her Class Vehicle. She has additionally lost many hours dealing with her insurance and the police.

265.   At no point before Plaintiff leased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Pohanka Hyundai.

266.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

267.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

268.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

269.   Plaintiff Leilani Cabrera ("Plaintiff," for purposes of this section) is a resident of Bowie, Maryland. Plaintiff purchased a new 2018 Hyundai Elantra SE from Ourisman Hyundai of Bowie in Bowie, Maryland in or around October 2018. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On

information and belief, Plaintiff's 2018 Hyundai Elantra is a Class Vehicle subject to the Theft Prone Defect.

270.   On information and belief, Ourisman Hyundai of Bowie is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

271.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. Plaintiff used the Class Vehicle for personal, family, and household transportation needs such as household errands and going to and from home to her job with the school district. Plaintiff purchased the Class Vehicle with personal funds and kept it at her residence.

272.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it. The sales representatives at Ourisman Hyundai represented to Plaintiff that it had a quality anti-theft system, and that the system would be safe and reliable.

273.   Plaintiff visited Hyundai's website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

274.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

275.   On or about August 5, 2022, in the early hours of the morning, Plaintiff's Class Vehicle was stolen from in front of her home. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and later an insurance claim.

276.   Several hours after it had been reported stolen, Plaintiff was informed by Bowie Police Department that her Class Vehicle was recovered. After receiving

the vehicle back, Plaintiff found the Class Vehicle's steering column was damaged, the driver's side window had been shattered, and it had various mechanical problems.

277. While Plaintiff's insurance covered all the repair costs from the theft, she was forced to pay the policy's $500 deductible out of pocket.

278. Plaintiff's annual insurance premium has also increased following the theft and insurance claim.

279. Plaintiff incurred other out-of-pocket expenses because of the theft. Specifically, Plaintiff's insurer only partially covered the cost of her rental vehicle, and she had to pay out of pocket for the remainder. Plaintiff also paid out of pocket for an immobilizer for her Class Vehicle.

280. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff had recently started a new job and had to miss substantial amounts of work due to the theft of her vehicle and that caused stress and anxiety with respect to her new position.

281. At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Ourisman Hyundai of Bowie.

282. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

283.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

284.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

**10.   Michigan Plaintiffs**

285.   Plaintiff John Dylan Burton ("Plaintiff," for purposes of this section) is a resident of Lansing, Michigan. Plaintiff purchased a 2015 Hyundai Sonata SD from Williams Hyundai in Lansing, Michigan on or around June 6, 2019. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Class Vehicle subject to the Theft Prone Defect.

286.   On information and belief, Williams Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

287.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

288.   Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

289.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

290.   Plaintiff's Class Vehicle was stolen twice. Plaintiff's Class Vehicle was first stolen on or about July 1, 2022. Plaintiff's Class Vehicle was stolen for a second time on or about August 16, 2022.

291.   After the first theft, on or about July 5, 2022, Plaintiff was informed by Lansing Police Department that his Class Vehicle was recovered. After the second theft, on or about August 26, 2022, Plaintiff was informed by Lansing Police Department that his Class Vehicle was recovered. After receiving the vehicle back from the first theft, Plaintiff found the steering column damaged. After the second theft, the Class Vehicle was involved in collisions causing extensive body damage to the front and back of the Class Vehicle. The interior of the Class Vehicle was also significantly damaged.

292.   Because Plaintiff only had liability and not theft insurance, he incurred significant expenses. After the first theft, Plaintiff incurred $409 in towing costs and $2,132 in repairs. The damage to Plaintiff's Class Vehicle after the second theft would cost more in repairs than the Class Vehicle was worth, and Plaintiff lost the entire value of his Class Vehicle. He sold his Class Vehicle for scrap to a towing company to pay for the $485 towing fee.

293.   Plaintiff incurred out-of-pocket expenses following the theft of his Class Vehicle. Specifically, Plaintiff incurred public transportation expenses for one month while his Class Vehicle was being repaired after the first theft. After the second theft, he had to purchase a new vehicle.

294.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect including but not limited to feelings of being unsafe even today, difficulties in having the vehicle repaired at the Hyundai dealership and the loss of important keepsakes that were gifts from his time living abroad. Plaintiff has experienced frustration, anxiety and inconvenience due to the thefts of his Class Vehicle. He has additionally lost many hours dealing with the body shop and

towing company. Plaintiff also had personal sentimental items stolen from his Class Vehicles that were irreplaceable.

295.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, he purchased it with personal funds and kept it at his residence.

296.   At no point before Plaintiff purchased his vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above and through discussions with the salesperson at Williams Hyundai.

297.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

298.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

299.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

### 11.   Minnesota Plaintiff

300.   Plaintiff Eric Bain ("Plaintiff," for purposes of this section) is a resident of Minneapolis, Minnesota. Plaintiff purchased a used 2013 Hyundai Sonata SE from Inver Grove Hyundai in Inver Grove Heights, Minnesota on or around August 8, 2015. Plaintiff also purchased a used 2017 Hyundai Santa Fe SE from Luther Bloomington Hyundai in Bloomington, Minnesota in or about December 2017. Each of Plaintiff's vehicles had a traditional "insert-and-turn" steel key. On information and belief, Plaintiff's 2013 Hyundai Sonata and 2017 Hyundai Santa Fe are Class Vehicles subject to the Theft Prone Defect.

301.   On information and belief, Inver Grove Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory. On information and belief, Luther Bloomington Hyundai is also a part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

302.   Plaintiff purchased the Class Vehicles for personal, family and household use. The Class Vehicles were used for family errands, driving children to and from school, and driving to and from work. The Class Vehicles were titled in Plaintiff's name and were not titled in the name of a business. The Class Vehicles were kept at Plaintiff's residence.

303.   Plaintiff purchased his Class Vehicles because he believed that the vehicles were safe, reliable, and high quality. Before purchasing the Class Vehicles, Plaintiff reviewed and relied on numerous statements and representations about them and Hyundai-branded vehicles. Plaintiff spoke with sales representatives at both Inver Grove Hyundai and Luther Bloomington Hyundai prior to purchasing the Class Vehicles. Sales representatives of both dealerships represented the Class Vehicles as safe, reliable, quality vehicles.

304.   Plaintiff visited the Hyundai website and reviewed online representations about the Class Vehicles' safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicles were affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicles' safety, reliability, and quality.

305.   Plaintiff saw Hyundai television commercials and print advertisements that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles. Plaintiff also received voluminous advertising and promotional materials from Hyundai because of his purchase of the 2013 Hyundai Sonata Class Vehicle.

306.   On or about October 22, 2022, Plaintiff's 2013 Hyundai Sonata Class Vehicle was stolen. On realizing that this Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

307.   On or about October 24, 2022, two days after the theft, Plaintiff was informed that his Class Vehicle was recovered a few blocks from Plaintiff's house. After receiving the vehicle back, Plaintiff found it significantly damaged. The 2013 Hyundai Sonata Class Vehicle had extensive damage to the steering column and the driver's door. The vehicle was towed to a Hyundai dealership.

308.   While Plaintiff's insurance covered all the repair costs from the theft, he was forced to pay the policy's $1,000 deductible out-of-pocket.

309.   Plaintiff also has been informed that his insurance may be cancelled and/or that his premiums may increase when the time for the insurance renewal arrives.

310.   Plaintiff incurred out-of-pocket expenses following the theft of his Class Vehicle. Specifically, Plaintiff incurred the following expenses: rental car costs, the cost to obtain two steering wheel locks at a cost of $30 each, and Uber and Lyft ride fees during the time he was without the 2013 Hyundai Sonata Class Vehicle.

311.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff obtained video of the 2013 Hyundai Sonata Class Vehicle being stolen from his driveway, which exacerbated his feelings of being violated. He also had to deal with the stress of working with police and insurance companies regarding the theft. Plaintiff experienced tremendous inconvenience to his family's schedule during the more than four months it took to complete repairs due to lack of parts availability.

312.   At no point before Plaintiff purchased his vehicles did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had Defendants disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above and through discussions with salespersons at the dealership.

313.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

314.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased vehicles that are of a lesser standard, grade, and quality than represented, and he did not receive vehicles that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicles.

315.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicles, or would have paid less to do so.

1

12.    **Missouri Plaintiffs**

2

316.   Plaintiff Steven Hufford ("Plaintiff," for purposes of this section) is a

3

resident of Arnold, Missouri. Plaintiff purchased a new 2021 Hyundai Venue SEL

4

from Dean Team Hyundai in Baldwin, Missouri on or around April 30, 2021.

5

Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system OR

6

push start ignition. On information and belief, Plaintiff's 2021 Hyundai Venue is a

7

Class Vehicle subject to the Theft Prone Defect.

8

317.   On information and belief, Dean Team Hyundai is part of Hyundai's

9

network of authorized dealers across the United States and is promoted on

10

Hyundai's website, which includes an updated list of the dealership's inventory.

11

318.   Plaintiff purchased his Class Vehicle because he believed that the

12

vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle,

13

Plaintiff reviewed and relied on numerous statements and representations about it.

14

319.   Plaintiff visited the Hyundai website and reviewed representations

15

about the Class Vehicle's safety, reliability, and quality. Because Defendants failed

16

to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the

17

Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted

18

the Class Vehicle's safety, reliability, and quality.

19

320.   Plaintiff saw Hyundai television commercials that touted, among other

20

things, the safety, reliability, and quality of Hyundai-branded vehicles.

21

321.   At no point before Plaintiff purchased his vehicle did Hyundai disclose

22

that it suffered from the Theft Prone Defect, which renders it highly susceptible and

23

predisposed to theft by experienced and amateur thieves, and which makes it a

24

prime target to be used as instrumentalities through which thieves engage in

25

reckless driving or other criminal activity. Indeed, Hyundai concealed the existence

26

of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the

27

Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have

28

learned of the concealed information through, for example, the advertising channels

described above or through discussions with the salesperson at Dean Team Hyundai.

322.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

323.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

324.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

325.   Plaintiff Talysia Ruff ("Plaintiff," for purposes of this section) is a resident of St. Louis, Missouri. Plaintiff purchased a new 2020 Hyundai Accent SE from Napleton Hyundai in Hazelwood, Missouri in or around March 27, 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2020 Hyundai Accent is a Class Vehicle subject to the Theft Prone Defect.

326.   On information and belief, Napleton Hyundai is part of Hyundai network of authorized dealers across the United States and is promoted on HMA website, which includes an updated list of the dealership's inventory.

327.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe and reliable. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

328.   Plaintiff heard Hyundai radio advertisements that touted, among other things, the safety and reliability of Hyundai-branded vehicles.

329.   On or about August 22, 2022, Plaintiff's Class Vehicle was broken into. On realizing that her Class Vehicle was broken into, Plaintiff filed a police report and insurance claim.

330.   On or about the end of October 2022, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

331.   The next day, Plaintiff was informed by police that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found it with the window broken, the ignition damaged, and the car was not drivable.

332.   While Plaintiff's insurance covered all of the repair costs from the break in and theft, she was forced to pay two deductibles totaling $600 out of pocket.

333.   Plaintiff incurred out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred the following expenses: Uber rides in the amount of $30-$40 a day to replace transportation in August 2022 and then again from December 2022 to March 2023, as well as lost income due to missed days of works caused by lost transportation.

334.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and the theft of her Class Vehicle. Specifically, she always prided herself on being a good worker. Yet, because her insurance only covered 45 days of rental fees, and because she was without her car from October 2022 to March 2023 (due to the high number of thefts, replacement parts were not readily available), she was forced to miss several days of work. This is because on certain days, either the Uber rates were too high, or no local driver was available. She felt ashamed because she felt like she was no longer a dependable worker. She also felt like her life was on hold or frozen during this time, as it became hard to travel anywhere. Her grandmother was not mobile, and Plaintiff was one of the few people who visited her and took care of her. She felt terrible that she could no longer hold her near enough. Even today, she has anxiety. She wakes up in the middle of the night to check if her car is still where she left it. Each time her dog barks she panics that her car is being broken into yet again.

335.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

336.   At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Napleton Hyundai.

337.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

338.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

339.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

340.   Plaintiff Tyler McGill ("Plaintiff," for purposes of this section) is a resident of St. Louis, Missouri. Plaintiff purchased a used 2015 Hyundai Sonata Sport from Suntrup Hyundai in St. Louis, Missouri on or around February 20, 2017.

Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2015 Hyundai Sonata is a Class Vehicle subject to the Theft Prone Defect.

341.   On information and belief, Suntrup Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA website, which includes an updated list of the dealership's inventory.

342.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchased the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it and Hyundai-branded Vehicles.

343.   Plaintiff saw television commercials and heard radio advertisements from Suntrup Hyundai that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

344.   On or about April 16, 2022, Plaintiff's Class Vehicle was stolen. On realizing that his Class Vehicle was stolen, Plaintiff filed a police report.

345.   On the next day, at 2:30 in the morning, Plaintiff was informed by the St. Louis Police Department that his Class Vehicle was recovered. The vehicle had been crashed and was considered totaled.

346.   Plaintiff suffered insurance-related damages in that his insurance premium increased by $43 per month.

347.   Because Plaintiff was uninsured against theft, he incurred a total loss of the value of the vehicle.

348.   Plaintiff incurred significant out-of-pocket expenses following the theft of his Class Vehicle. Specifically, Plaintiff incurred the following expenses: total loss of the value of the vehicle, towing fee in the amount of $149, costs to replace the vehicle, and last wages from missing work for two weeks, in the amount of $1,230 per week.

349.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and the theft of his Class Vehicle. Specifically, he was inside a gas station with the keys when it was stolen from the pump. He returned from inside to see his car gone and shattered glass in its place. He had just picked up his friend from the airport, and his friend lost nine bags of luggage. That night, he was awoken at 2:30am by a call from police that his car had been recovered. He had to then go into a dangerous part of town in the middle of the night, and when he arrived his car was covered in blood. It was clear to him someone's head had gone through the windshield. He had the car towed to his house, and discovered the inside was also covered in blood, as well as white powder, and an arm-cast had been cutoff someone's arm and left in his car. Knowing his car was involved in violence and having to retrieve it from a dangerous part of town in the middle of the night caused emotional distress. Plaintiff was also significantly inconvenienced because at the time this was the only working car he and his spouse had; thanks to the Theft Prone Defect, the two of them were suddenly without a car.

350.   At no point before Plaintiff purchased his vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described.

351.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business, was not titled in a business' name. It was his only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it

was his only vehicle and he used it for personal purposes, he purchased it with personal funds and kept it at his residence.

352.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

353.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

354.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

### 13.   New Mexico Plaintiff

355.   Plaintiff John McGraw ("Plaintiff," for purposes of this section) is a resident of Albuquerque, New Mexico. Plaintiff purchased a new 2013 Hyundai Genesis Coupe 3.8 R-Spec from Gene Messer Hyundai in Lubbock, Texas in or around April 2014. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2013 Hyundai Genesis is a Class Vehicle subject to the Theft Prone Defect.

356.   Plaintiff's car was attempted to be stolen on four different occasions – the most recent two incidents occurring on approximately May 18, 2021, and October 24, 2021.

357.   On information and belief, Gene Messer Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

358.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased on behalf of a business and was not titled in a business' name. It was used primarily for transportation needs such as

household errands and to drive to and from work. The vehicle was purchased with personal funds and kept at Plaintiff's residence.

359.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

360.   Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

361.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

362.   Plaintiff incurred out-of-pocket expenses due to the Theft Prone Defect. Specifically, Plaintiff incurred expenses for his purchase of a steering wheel lock. In addition, during the attempted thefts, the Plaintiff incurred expenses to replace damaged locks and repair other damage to the vehicle. The approximate out-of-pocket expense was $5,000 or more.

363.   At no point before Plaintiff purchased his vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Gene Messer Hyundai.

364.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

365.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

366.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

**14.    New York Plaintiff**

367.   Plaintiff Cameron Morton ("Plaintiff," for purposes of this section) is a resident of Mayville, New York. Plaintiff purchased a used 2019 Hyundai Sonata SE from Northtown Hyundai in Amherst, New York in or around December 2022. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2019 Hyundai Sonata is a Class Vehicle subject to the Theft Prone Defect.

368.   On information and belief, Northtown Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

369.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it. He purchased the car as a certified pre-owned vehicle.

370.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased on behalf of a business and was not titled in a business' name. It was primarily used by Plaintiff's son for transportation needs such as household errands and to drive to and from work. The

vehicle was purchased with personal funds and kept primarily at Plaintiff's son's residence.

371.   Plaintiff visited the various websites and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

372.   On or about January 4 or 5, 2023, Plaintiff's Class Vehicle was stolen. On realizing that his Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

373.   On or about January 5, 2023, Plaintiff was informed by Buffalo police that his Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found over $7,000 worth of damage done to the vehicle.

374.   On approximately March 30, 2023, an attempted theft of the vehicle was made.

375.   During the attempted theft of the vehicle, the rear passenger side window and trim was damaged.

376.   While insurance covered all the repair costs from the theft, he was forced to pay the policy's $1,000 deductible out of pocket. Plaintiff has also incurred damage for repair to the window.

377.   Plaintiff incurred significant out-of-pocket expenses following the theft of his Class Vehicle. Specifically, Plaintiff incurred the following expenses: $970.72 for a rental vehicle and $125 in towing cost. Additionally, Plaintiff paid approximately $60 for a steering wheel lock.

378.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff had pre-existing anxiety and the experience of having his car stolen aggravated or exacerbated that pre-existing anxiety condition.

In addition, Plaintiff and his family lost use of the vehicle for an extended period
due to the lack of available parts to perform repairs to the vehicle.

379.   At no point before Plaintiff purchased his vehicle did Hyundai disclose
that it suffered from the Theft Prone Defect, which renders it highly susceptible and
predisposed to theft by experienced and amateur thieves, and which makes it a
prime target to be used as instrumentalities through which thieves engage in
reckless driving or other criminal activity. Indeed, Hyundai concealed the existence
of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the
Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have
learned of the concealed information through, for example, the advertising channels
described above or through discussions with the salesperson at Northtown Hyundai.

380.   Plaintiff suffered an ascertainable loss as a result of Defendants'
wrongful conduct associated with the Theft Prone Defect.

381.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a
vehicle that is of a lesser standard, grade, and quality than represented, and he did
not receive a vehicle that met ordinary and reasonable consumer expectations
regarding quality design, and safe and reliable operation. The Theft Prone Defect
has significantly diminished the value of Plaintiff's Class Vehicle.

382.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not
have purchased his Class Vehicle, or would have paid less to do so.

### 15.   Ohio Plaintiffs

383.   Plaintiff Lexii Cummings ("Plaintiff," for purposes of this section) is a
resident of Columbus, Ohio. Plaintiff purchased a used 2018 Hyundai Elantra SE
from Germain Hyundai in Columbus, Ohio in or around October 2021. Plaintiff's
vehicle has a traditional "insert-and-turn" steel key ignition system. On information
and belief, Plaintiff's 2018 Hyundai Elantra SE is a Class Vehicle subject to the
Theft Prone Defect.

384.   On information and belief, Germain Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

385.   Plaintiff purchased her Class Vehicle because she believed that the Class Vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff had discussions with the salesperson at Germain Hyundai about the safety, reliability, and high quality of her Class Vehicle.

386.   Plaintiff purchased her Class Vehicle primarily for personal, family, and household use.

387.   On or about August 11, 2022, Plaintiff's Class Vehicle was stolen. The Class Vehicle was stolen in the early morning and was found by police and taken to an impound lot two days later. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

388.   On or about August 13, 2022, Plaintiff was informed by the police that her Class Vehicle was recovered. After receiving the Class Vehicle back, Plaintiff found it significantly damaged, including damage to the frame of the car and, ignition system, and windows were broken.

389.   While Plaintiff's insurance covered all the repair costs from the theft, she was forced to pay the policy's $600 deductible out of pocket.

390.   Plaintiff also was subjected to additional insurance-related damages in that her insurance was cancelled.

391.   Plaintiff incurred additional out-of-pocket expenses arising from the theft of her Class Vehicle. Specifically, Plaintiff paid for a Club steering wheel lock, and car rentals.

392.   On or about November 27, 2022, Plaintiff's Class Vehicle was damaged in an attempted theft. The Class Vehicle was damaged, including scraping of the driver's side door, a broken door handle, and a broken key lock.

393.   Plaintiff has been forced to obtain garage parking for her car, at a cost of $100 per month, in order to prevent further theft and damage from attempted thefts of her Class Vehicle.

394.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and the theft and attempted theft of her Class Vehicle. The theft and attempted theft burdened Plaintiff emotionally and financially. She is concerned about where it is safe to park, she has taken on a new monthly payment of $100 in order to have garage parking, and finding an insurer willing to insure the Class Vehicle has been difficult.

395.   At no point before Plaintiff purchased her Class Vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Germain Hyundai.

396.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

397.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

398.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

399.   Plaintiff Matthew Jacobsen ("Plaintiff," for purposes of this section) is a resident of Cincinnati, Ohio. Plaintiff purchased a used 2017 Hyundai Elantra SE from Superior Hyundai in Cincinnati, Ohio on or around November 24, 2018. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2017 Hyundai Elantra is a Class Vehicle subject to the Theft Prone Defect.

400.   On information and belief, Superior Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

401.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it or Hyundai-branded vehicles.

402.   Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

403.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

404.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect including but not limited to not driving the car for a prolonged period due to the threat of theft and avoiding parking in public spaces that are prone to theft whenever possible. Due to the Theft Prone Defect, Plaintiff was anxious his Class Vehicle could be easily stolen so he did not use his Class Vehicle for several months. Instead, he relied on alternative transportation and, at times, walked to his destinations.

405.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, he purchased it with personal funds and kept it at his residence.

406.   At no point before Plaintiff purchased his vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Superior Hyundai.

407.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

408.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

409.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

**16.   Oklahoma Plaintiff**

410.   Plaintiff Dennette Ray ("Plaintiff," for purposes of this section) is a resident of Enid, Oklahoma. Plaintiff purchased a new 2011 Hyundai Tucson from Tulsa Hyundai in Tulsa, Oklahoma on or around June 6, 2011. Plaintiff's vehicle

has a traditional insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2011 Hyundai Tucson is a Class Vehicle subject to the Theft Prone Defect.

411. On information and belief, Tulsa Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

412. Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

413. Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

414. Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

415. On or about January 2023, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff reported it stolen and made an insurance claim.

416. On or about February 2023, Plaintiff was informed by the police that her Class Vehicle was recovered. After receiving the vehicle back, there was at least $4,000 worth of damage.

417. Plaintiff's insurance company is still processing her claim for the repair costs from the theft and required her to pay the policy's $500 deductible out of pocket. Additionally, she lost several personal items including golf clubs, golf rangefinder, and prescription sunglasses.

418. Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was

not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Plaintiff used it for personal purposes, and she purchased it with personal funds and kept it at her residence.

419.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect including not parking it in certain locations that might encourage theft. Plaintiff has spent hours dealing with the police and experienced emotional strain because of the theft of her Class Vehicle. The thieves also took Plaintiff's irreplaceable personal items, which caused her additional distress. Plaintiff additionally has anxiety and worries for her family as Class Vehicles like hers are prime targets for theft.

420.   At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Tulsa Hyundai.

421.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

422.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

423.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

**17.    Tennessee Plaintiff**

424.   Plaintiff Brian Helm ("Plaintiff," for purposes of this section) is a resident of Memphis, Tennessee. Plaintiff purchased a new 2022 Hyundai Kona SE from Wolfchase Hyundai in Memphis, Tennessee in or around November 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2022 Hyundai Kona SE is a Class Vehicle subject to the Theft Prone Defect.

425.   On information and belief, Wolfchase Hyundai is part of Hyundai network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

426.   Plaintiff purchased his Class Vehicle because he believed that the Class Vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

427.   Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

428.   Plaintiff purchased his vehicle primarily for personal, family, and household use.

429.   On or about September 2, 2022, Plaintiff's Class Vehicle was subject to an attempted theft. The rear driver's side window was broken, and the steering column had been torn apart. On realizing that there was an attempt to steal his Class Vehicle, Plaintiff filed a police report and insurance claim.

430. While Plaintiff's insurance covered all the repair costs from the theft, he was forced to pay the policy's $750 deductible out of pocket.

431. Plaintiff incurred significant out-of-pocket expenses following the theft of his Class Vehicle. Specifically, Plaintiff purchased a steering wheel lock for $52, paid $1,412.27 for a Hertz rental car, and incurred $3,500 in lost wages.

432. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and attempted theft of his Class Vehicle. Specifically, Plaintiff and his wife were emotionally distressed and purchased a SimpliSafe home alarm system with a front door camera. Additionally, Plaintiff was unable to drive his car from September 2, 2022, through October 25, 2022.

433. At no point before Plaintiff purchased his Class Vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Wolfchase Hyundai.

434. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

435. Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

436.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

### 18.   Texas Plaintiff

437.   Plaintiff Adriana Pilant ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff purchased a used 2017 Hyundai Sonata SE from Hertz Car Sales in Houston, Texas in or around April 2019. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2017 Hyundai Sonata is a Class Vehicle subject to the Theft Prone Defect.

438.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it or Hyundai-branded vehicles.

439.   Plaintiff visited the Hyundai website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Hyundai touted the Class Vehicle's safety, reliability, and quality.

440.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

441.   On or about October 2022, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff reported it stolen and made an insurance claim.

442.   On or about the next day, Plaintiff was informed by the police that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found that the ignition key and parts around it were broken, and the right back door window was broken.

443.   While Plaintiff's insurance covered all repair costs from the theft, she was forced to pay the policy's $500 deductible out of pocket.

444.   Plaintiff's monthly insurance payment has increased after her Class Vehicle was stolen.

445.   Plaintiff incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred the following expenses: $2,678 for a car rental for the months her insurance did not cover; costs for Uber rides on five occasions; and $39 for a club twin hook lock.

446.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Following the theft of her vehicle, Plaintiff experienced significant stress during the three months she was without a personal vehicle, especially because Plaintiff's son has disabilities and cannot take public transportation. Because of this, a rental car was her only option. Plaintiff learned that rental companies would give their best rate for only a week or two, so she had to rent from a new company every week or two, always looking ahead to which company had the best rates so she could rent from them next. Plaintiff also experienced stress and lost time dealing with her insurer, the police, and rental car companies, and especially in the constant struggle to find cost-effective rental cars. Now that she has her car back, Plaintiff is still stressed and worried that it will be stolen again. She finds herself constantly checking outside the window to see if her car is still there.

447.   At no point before Plaintiff purchased her vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle,

- 76 -

Plaintiff would have learned of the concealed information through, for example, the advertising channels described above.

448.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

449.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

450.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

451.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 19.   Virginia Plaintiff

452.   Plaintiff Luis Enrique Vargas Rodriguez ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff purchased a used 2017 Hyundai Elantra from Virginia Cars, Inc. in Midlothian, Virginia on or around December 29, 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2017 Hyundai Elantra is a Class Vehicle subject to the Theft Prone Defect.

453.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it or Hyundai-branded vehicles.

454.   Plaintiff saw Hyundai television commercials that touted, among other things, the safety, reliability, and quality of Hyundai-branded vehicles.

455.   On or about November 8, 2022, Plaintiff's Class Vehicle was stolen. On realizing that his Class Vehicle was stolen, Plaintiff reported it stolen and made an insurance claim.

456.   On or about the next day, Plaintiff was informed that his Class Vehicle was recovered and that it had been in an accident. After receiving the vehicle back, Plaintiff found that the windshield was broken, the ignition was broken, and the front end was destroyed.

457.   While Plaintiff's insurance covered the total loss of Plaintiff's Class Vehicle, it did not cover all his damages.

458.   Although Plaintiff's insurance deemed his Class Vehicle a total loss, Plaintiff also had to pay $800 out of pocket to for the remaining balance on his Class Vehicle his insurance did not cover.

459.   Plaintiff incurred significant out-of-pocket expenses following the theft of his Class Vehicle. Specifically, Plaintiff incurred $300 for a rental car.

460.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff has experienced frustration, anxiety, and inconvenience due to the theft of his Class Vehicle. He has additionally lost many hours dealing with his insurance and the police. Specifically, Plaintiff lived and worked in Virginia, but was visiting Chicago due to his dad passing away when his car was stolen. As a result, he could not figure out how to get back to Virginia in enough time to get back to work before he was laid off for not working. After losing his job in Virginia, he was forced to stay in Chicago, which he did not want to do. Now, even though he has a different car, he is still stressed and anxious about it being stolen. He bought a wheel lock for it and every day when he wakes up the first thing he does is check outside to make sure his car has not been stolen or broken into.

461.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, he purchased it with personal funds and kept it at his residence.

462.   At no point before Plaintiff purchased his vehicle did Hyundai disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above.

463.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

464.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

465.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

**B.     Kia Plaintiffs**

    **1.     Alabama Plaintiff**

466.   Plaintiff David Lucas ("Plaintiff," for purposes of this section) is a resident of Birmingham, Alabama. Plaintiff purchased a new 2021 Kia Sportage from Riverchase Kia in Pelham, Alabama in or around December 18, 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Kia Sportage is a Class Vehicle subject to the Theft Prone Defect.

467.   On information and belief, Riverchase Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

468.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

469.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

470.   At no point before Plaintiff purchased his vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Riverchase Kia.

471.   Plaintiff purchased his Class Vehicle primarily for personal, family, and household use.

472.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

473.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

474.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

## 2.    Arizona Plaintiff

475.   Plaintiff Leanna Adams ("Plaintiff," for purposes of this section) is a resident of Minneapolis, Minnesota. Plaintiff purchased a new 2020 Kia Forte FE from Kia of Yuma in Yuma, Arizona on or around February 6, 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2020 Kia Forte is a Class Vehicle subject to the Theft Prone Defect.

476.   On information and belief, Kia of Yuma is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

477.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it, including the salesperson.

478.   Plaintiff received a booklet from Kia and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

479.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

480.   On or about May 25, 2022, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

481.   On or about June 1, 2022, Plaintiff was informed by her insurance company that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found it with a broken steering column, dents and damage to the front bumper, body damage over one of the wheels, and a bad smell of urine inside the car.

482.   While Plaintiff's insurance covered all the repair costs from the theft, she was forced to pay the policy's $500 deductible out of pocket.

483.   Plaintiff's insurance premium also increased from $160 per month to $214 per month.

484.   Plaintiff incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred the following expenses: bus fare and transportation costs for 47 days during which time her vehicle was waiting to be repaired, the cost of a wheel lock, and the cost of her monthly car payment despite the fact her vehicle was not in her possession.

485.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff was without a vehicle for 47 days, during which time she had to use public transportation to get around. Her boyfriend did not have a car, so the theft significantly reduced the amount of time she got to spend with him. For instance, the day she found her car stolen she had gotten up early to prepare food so the two of them could enjoy a good meal and quality time together. She was very upset that she could not see him that day. When Plaintiff's vehicle was recovered, she had to visit the DMV to claim her vehicle because the registration was stolen and then have the car towed to a repair shop. Plaintiff was

then left with a vehicle at risk of theft or attempted theft. She was stressed out about the possibility of a second theft every time she parked.

486.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

487.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

488.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 3.   California Plaintiffs

489.   Plaintiff Iona Barnes ("Plaintiff," for purposes of this section) is a resident of Las Vegas, Nevada. Plaintiff purchased a new 2015 Kia Optima LX from Garden Grove Kia in Garden Grove, California, on or around August 15, 2014. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2015 Kia Optima LX is a Class Vehicle subject to the Theft Prone Defect.

490.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business's name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

491.   On information and belief, Garden Grove Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

492.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

493.   Plaintiff visited the Kia website as well as several other new car rating websites and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

494.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

495.   In or about July 2022, there was an attempted theft and vandalism of Plaintiff's Class Vehicle from the parking lot outside of Plaintiff's place of work. On realizing the attempted theft and vandalism of her Class Vehicle, Plaintiff filed a police report with the Metro Las Vegas Police Department and an insurance claim with Progressive.

496.   Plaintiff incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred approximately $1,200 in expenses to repair the vehicle's ignition system and door locks, as well as additional towing expenses. These expenses were not reimbursed by Plaintiff's insurer because they did not exceed her policy's $2,500 deductible amount.

497.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and the attempted theft of her vehicle. In particular, Plaintiff suffered extreme distress when she found a thief sitting in her vehicle attempting to steal her car.

498.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a

prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Garden Grove Kia.

499.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

500.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

501.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

502.   Plaintiff Craig Granville ("Plaintiff," for purposes of this section) is a resident of Victorville, California. Plaintiff purchased a used 2016 Kia Sorento LX from Valley-Hi Kia in Victorville, California in or around September 22, 2018. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's Kia Sorento 2016 is a Class Vehicle subject to the Theft Prone Defect.

503.   On information and belief, Valley-Hi Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

504.   Plaintiff purchased their Class Vehicle because they believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

505.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

506.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

507.   Plaintiff purchased their Class Vehicle primarily for personal, family, and household use.

508.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Specifically, after learning about the Theft Prone Defect, Plaintiff no longer felt safe driving his 2016 Kia Sorento. He began leaving his Kia Sorento at home and driving his family's other vehicle in order to prevent theft or attempted theft.

509.   At no point before Plaintiff purchased their vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Valley-Hi Kia.

510.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

511.   Plaintiff did not receive the benefit of their bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and they did not receive a vehicle that met ordinary and reasonable consumer expectations

regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

512.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased their Class Vehicle, or would have paid less to do so.

513.   Plaintiff Jisun Kang ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff purchased a used 2016 Kia Optima LX from CT Motors in Los Angeles, California, in or around the Summer of 2018. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2016 Kia Optima LX is a Class Vehicle subject to the Theft Prone Defect.

514.   Plaintiff purchased the Class Vehicle for personal, family, and household use. The Class Vehicle was titled in Plaintiff's name and was not titled in the name of a business. Plaintiff paid for the Class Vehicle using personal funds and kept the vehicle at her residence.

515.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

516.   Prior to purchase of the Class Vehicle, Plaintiff visited the Kia website and other vehicle review websites that touted and promoted the safety, reliability and quality of the Optima. Plaintiff relied upon the information regarding the safety, reliability and quality of the Optima in making the decision to purchase the Class Vehicle.

517.   On or about August 2022, the Subject Vehicle was damaged and vandalized during an attempted theft. During the attempted theft, the right rear window was broken, and the steering column was damaged. Plaintiff made a claim with her insurance company for the damage to the Class Vehicle. Plaintiff paid a deductible of $100 and was without use of the vehicle for several weeks while the vehicle was being repaired.

518.   In September 2022, Plaintiff got the Class Vehicle back following repair and vandalized again in an attempted theft in September 2022. During the second attempted theft, the right rear window was broken, the steering column was damaged, and the rear door was dented. Plaintiff made a claim on her insurance policy for damage from the attempted theft. As a result of the Theft Prone Defect, Plaintiff incurred a second $100 insurance deductible payment.

519.   Additionally, as a result of the Theft Prone Defect, Plaintiff's insurance premiums increased by $22 per month.

520.   Further, Plaintiff incurred an additional expense of $39.96 when Plaintiff purchased a car cover to hide the make and model of the Class Vehicle when parked.

521.   As a result of the foregoing incidents, Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. The attempted thefts occurred at the complex where Plaintiff lived at the time. Because the Class Vehicle was the only vehicle in the complex parking area that was vandalized and attempted to be stolen, Plaintiff suffered increased anxiety due to the concern over the safety of her person and property.

522.   Given the problems created by the undisclosed Defect, on or about November 26, 2022, Plaintiff sold her Class Vehicle at a loss. Plaintiff would not have sold her Class Vehicle but for the Theft Prone Defect.

523.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have

learned of the concealed information through, for example, the advertising channels described above.

524. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

525. Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

526. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

527. Plaintiff Michelle Pollack ("Plaintiff," for purposes of this section) is a resident of Orlando, Florida. Plaintiff purchased a used 2014 Kia Soul + from Roseville Hyundai, located in Roseville, California, on or around March 18, 2017. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2014 Kia Soul + is a Class Vehicle subject to the Theft Prone Defect.

528. Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business's name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

529. On information and belief, Roseville Hyundai is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

530.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

531.   Plaintiff visited the Kia website and other internet websites to research the Kia Soul and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

532.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

533.   On or about November 20, 2022, Plaintiff's Class Vehicle was stolen from the parking lot outside her residence. Consistent with other reports of Class Vehicle thefts, thieves stole Plaintiff's vehicle and attempted to take it on a joy ride but never made it out of the parking lot before crashing the vehicle. Plaintiff filed a police report with the Orange County Police Department.

534.   As a result of the attempted joy ride and crash in the parking lot, Plaintiff's vehicle sustained significant damage to the front bumper, headlights, hood, radiator, steering wheel column, and ignition system. The vehicle was a total loss as a result of the incident.

535.   Because Plaintiff was uninsured against theft, she incurred $15,500 in expenses to replace her Class Vehicle, which was declared a total loss.

536.   Plaintiff also incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred the following expenses: $1,600 in lost wages; $50 in personal property destroyed and/or stolen from her vehicle; and $200 in gas and toll expenses which were necessary to borrow a temporary replacement vehicle.

537.   As a result of the total loss of her vehicle, Plaintiff sold her car for scraps in January 2023. Plaintiff received a total of $960 for the vehicle.

538.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Since Plaintiff's vehicle only had liability coverage, she suffered a significant financial loss on the value of the vehicle and the cost of finding a replacement vehicle. This financial distress was compounded when Plaintiff was unable to work her second job due to lack of transportation.

539.   At no point before Plaintiff purchased her vehicle did Hyundai or Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Hyundai or Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Roseville Hyundai.

540.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

541.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

542.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle or would have paid less to do so.

543.   Plaintiff Rachel Perry ("Plaintiff," for purposes of this section) is a resident of West Covina, California. Plaintiff purchased a new 2015 Kia Optima

from Covina Valley Kia in Covina, California in or around August 9, 2015. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2015 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

544.   On information and belief, Covina Valley Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

545.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

546.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

547.   Plaintiff saw Kia television commercials and brochures that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

548.   Plaintiff purchased her Class Vehicle primarily for personal, family, and household use.

549.   On or around July 11, 2022, Plaintiff's Class Vehicle was stolen in Las Vegas, Nevada. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

550.   A few days after Plaintiff's Class Vehicle was stolen, Plaintiff was informed by the Las Vegas Police Department that her Class Vehicle was recovered. It was a total loss.

551.   While Plaintiff's insurance covered the total loss from the theft, she was forced to pay the policy's $500 deductible out of pocket.

552. Plaintiff incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred rental car costs and was forced to purchase a new vehicle. Plaintiff also lost approximately $2,000 worth of personal possessions, including work tools.

553. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and the theft of her Class Vehicle. Plaintiff's Class Vehicle was stolen while she was away in Las Vegas, and she experienced significant stress and hardship finding a way to travel home. She further suffered stress and inconvenience in the loss of her work tools because she was in Las Vegas for work. The theft also happened on the first day of her trip and she was not able to do her job, causing significant frustration, stress, and loss of that income. Plaintiff has two children, and, at the time, her job required her to have a vehicle. She experienced significant worry and anxiety about the financial stability of her family following the loss of her Class Vehicle. Plaintiff was without a personal vehicle for approximately one month and had to miss work to purchase a new vehicle at a higher price than she would have otherwise paid.

554. At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had she disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Covina Valley Kia.

555. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

556.  Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

557.  Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

558.  Plaintiff Claire Roberts ("Plaintiff," for purposes of this section) is a resident of Tempe, Arizona. Plaintiff purchased a used 2016 Kia Soul + from Hudiburg Nissan in Oklahoma City, Oklahoma on or around September 25, 2017. At the time, Plaintiff was a resident of California. Plaintiff found the Kia Soul + online, purchased the car over the phone, and had the vehicle shipped to California. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2016 Kia Soul is a Class Vehicle subject to the Theft Prone Defect.

559.  Plaintiff purchased the Class Vehicle primarily for personal, family, or household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. Plaintiff used it for all personal and household transportation needs such as driving to and from work and for household errands. Plaintiff purchased the vehicle with personal funds and kept it at her residence.

560.  Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high-quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it. Plaintiff had previously owned a 2015 Kia Soul and believed that vehicle to be a safe, reliable, and high-quality vehicle. When purchasing the 2015 Kia Soul she was provided and learned information about the safety systems of the vehicle. Nothing in the information provided to Plaintiff or learned through ownership of the 2015 Kia Soul disclosed the fact that the Class Vehicles lacked an immobilizer.

561.   Plaintiff saw Kia television commercials that touted, among other things, the style and quality of Kia-branded vehicles.

562.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had Defendants disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising described above. Based upon the information provided to Plaintiff and from ownership of the 2015 Kia Soul, Plaintiff expected the Class Vehicle to have all features necessary to make it a safe and reliable vehicle.

563.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

564.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

565.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 4.   Colorado Plaintiff

566.   Plaintiff Mary Kathryn Morrison ("Plaintiff," for purposes of this section) is a resident of Fort Collins, Colorado. Plaintiff purchased two Class Vehicles. The first vehicle was a new 2018 Kia Soul + from Fowler I-25 Kia of Longmont (then known as Ehrlich I-25 Kia) in Longmont, Colorado on or around April 4, 2018. Plaintiff's 2018 Kia Soul + has a traditional "insert-and-turn" steel

key ignition system without the optional immobilizer. On information and belief, Plaintiff's 2018 Kia Soul + is a Class Vehicle subject to the Theft Prone Defect.

567.   On information and belief, Fowler I-25 Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

568.   Plaintiff also purchased a new 2012 Kia Optima LX from Fort Collins Kia (then known as Tynan's Kia in Fort Collins), located in Fort Collins, Colorado, on or about May 14, 2012. Plaintiff's 2012 Kia Optima LX has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2012 Kia Optima LX is a Class Vehicle subject to the Theft Prone Defect.

569.   On information and belief, Fort Collins Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

570.   Plaintiff purchased the Class Vehicles primarily for personal, family, and household purposes in that they were not purchased on behalf of a business and were not titled in a business's name. They were Plaintiff's vehicles used for all her personal, family, and household transportation needs such as household errands. Because they were Plaintiff's family vehicles and Plaintiff used them for personal purposes, she purchased them with personal funds and kept them at her residences.

571.   Plaintiff purchased her Class Vehicles because she believed that the vehicles were safe, reliable, and high quality. Before purchasing the Class Vehicles, Plaintiff reviewed and relied on numerous statements and representations about it.

572.   Plaintiff performed internet research and viewed various websites about the Class Vehicles' safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicles were affected by the Theft Prone Defect, and instead Kia touted the Class Vehicles' safety, reliability, and quality.

573.   On or about September 17, 2020, Plaintiff's 2018 Kia Soul was stolen. On realizing that her 2018 Kia Soul was stolen, Plaintiff filed a police report with the Denver Police Department and an insurance claim.

574.   Approximately three weeks after the vehicle was stolen, on or about October 2, 2020, Plaintiff was informed by the Denver Police Department that her 2018 Kia Soul was found abandoned in a parking lot.

575.   After receiving the vehicle back, Plaintiff found it suffered significant damage, in excess of $16,000. The vehicle showed clear signs that it crashed, and it was filled with evidence of drug usage. Among other damages, the steering column was stripped, the ignition assembly was removed, the front end of the vehicle was smashed inward, and the front tires were destroyed.

576.   While Plaintiff's insurance covered all the repair costs from the theft, Plaintiff was forced to pay the policy's $1,000 deductible out of pocket.

577.   Plaintiff incurred out-of-pocket expenses following the theft of her 2018 Kia Soul. Specifically, Plaintiff paid $254.99 for an upgraded alarm system to be installed in the vehicle.

578.   Despite purchasing an additional alarm system for the vehicle, Plaintiff's 2018 Kia Soul was nearly stolen two more times. On at least two occasions after the stolen vehicle as recovered and repaired, thieves were found sitting in the vehicle attempting to steal the car.

579.   In light of the foregoing problems created by the Theft Prone Defect, on September 5, 2022, Plaintiff sold her 2018 Kia Soul to CarMax at a diminished price.

580.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and its theft. For example, after the Class Vehicle was recovered, Plaintiff was without her vehicle for an additional two months while it was being repaired. Moreover, the entire experience of having her vehicle destroyed and attempted to be stolen multiple times has been very traumatic for Plaintiff.

Plaintiff received multiple calls from her teenage daughter sobbing and terrified after finding thieves repeatedly breaking into her vehicle.

581.   At no point before Plaintiff purchased her Class Vehicles did Kia disclose that they suffered from the Theft Prone Defect, which renders them highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicles, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salespersons at Fort Collins Kia and Fowler I-25.

582.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

583.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased vehicles that are of a lesser standard, grade, and quality than represented, and she did not receive vehicles that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicles.

584.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicles, or would have paid less to do so.

**5.     Connecticut Plaintiff**

585.   Plaintiff Patricia Sumpterbynum ("Plaintiff," for purposes of this section) is a resident of New Haven, Connecticut. Plaintiff purchased a used 2019 Kia Forte LXS from Premier Kia of Branford in Branford, Connecticut, on or around November 30, 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2019 Kia Forte is a Class Vehicle subject to the Theft Prone Defect.

586.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business's name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

587.   On information and belief, Premier Kia of Branford is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

588.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it by the salesperson at Premier Kia of Branford.

589.   On or about December 27, 2022, there was an attempted theft and vandalism of Plaintiff's Class Vehicle. On realizing that her Class Vehicle was vandalized Plaintiff filed a police report with the New Haven Police Department and insurance claim with Main Street America

590.   While Plaintiff's insurance covered $2652.88 of the repair costs from the attempted theft and vandalism, she was forced to pay the policy's $500 deductible out of pocket.

591.   Plaintiff incurred significant out-of-pocket expenses following the attempted theft and vandalism of her Class Vehicle. Specifically, Plaintiff incurred alternative transportation costs of $3,000 for a rental vehicle while her Class Vehicle was undergoing repairs for the attempted theft and vandalism.

592.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff was without her Class Vehicle for over 3 months while it was undergoing repairs. Since the Class Vehicle has been returned Plaintiff, she has the constant fear that it will be stolen. Plaintiff parks her vehicle in an area

where at night she can make sure that the light from her home will illuminate the Class Vehicle as a deterrent to thieves.

593.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through discussions with the salesperson at Premier Kia of Branford.

594.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

595.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

596.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

**6.     Delaware Plaintiffs**

597.   Plaintiff Kristina McKnight ("Plaintiff," for purposes of this section) is a resident of Dover, Delaware. Plaintiff purchased a used 2015 Kia Optima from Felton Holly Kia in Felton, Delaware in or around February 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2015 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

598.   On information and belief, Felton Holly Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

599.   Plaintiff purchased her Class Vehicle because she believed that it was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

600.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality.

601.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

602.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household use.

603.   On or about October 1, 2022, Plaintiff's Class Vehicle was stolen. On realizing this, Plaintiff filed a police report and insurance claim.

604.   On or about October 1, 2022, Plaintiff recovered the Class Vehicle after it was seen on the side of the road in a neighborhood near her home. When she received the Class Vehicle back, Plaintiff found the ignition ripped out of the steering column and the plastic cover broken off. The inside of the Class Vehicle was also trashed.

605.   Plaintiff's insurance did not cover any of the repair costs from the theft, and Plaintiff was forced to take out a loan to cover the approximately $1,400 in repairs. Plaintiff also lost about $600 in income because she could not get to work on certain days without her Class Vehicle.

606.   Because her Class Vehicle was at the dealership for repairs for about a month, Plaintiff had to pay for daily transportation. Plaintiff also had personal items stolen from the Class Vehicle, including prescription glasses, shoes, and clothes.

607.   Plaintiff has since purchased a steering wheel lock out of pocket.

608.   As a result of the theft, Plaintiff's insurance premiums also increased.

609.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. She no longer felt safe living where she did at the time and has now moved.

610.   At no point before Plaintiff purchased her Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Felton Holly Kia.

611.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

612.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

613.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

614.   Plaintiff Trina Johnson ("Plaintiff," for purposes of this section) is a resident of Dover, Delaware. Plaintiff purchased a new 2019 Kia Optima from

Felton Holly Kia in Felton, Delaware on or about November 23, 2019. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2019 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

615.   On information and belief, Felton Holly Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

616.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it. Plaintiff received a flyer from Holy Kia containing statements and representations about Kia. The salesperson also made statements and representations.

617.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

618.   On or about October 30, 2022, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

619.   The police reported that they recovered Plaintiff's vehicle, but they have not returned it. The police reported that the air bags were deployed, wires were pulled out everywhere, and the drivers' side dashboard was destroyed.

620.   Plaintiffs' insurance carrier denied her claim.

621.   Since October 30, 2022, Plaintiff has suffered significant loss of income because she has not been able to work her part-time jobs delivering for GrubHub and Door Dash. She also has had to pay for alternative transportation.

622.   Plaintiff has experienced inconvenience and emotional distress related to the Theft Prone Defect. Specifically, she is distressed because she has been taken advantage of and lied to. She worked hard to make sure she could make her monthly payment each month so she could go where she needed to go when she needed to go. As a result of the theft, she now must rely on public transportation and the kindness of others, making errands stressful. She feels rushed in the store because she knows her ride is waiting for her to finish shopping and she does not want to be any more of a burden than she has to be. Her insurance denied her claim and her car was not paid off when it was stolen, adding significant financial stress and damaging her credit score to the point that she is unable to get a replacement car. As a result, she has been without a car ever since the theft. Finally, she is constantly worried because she does not know who stole her car and there was personal information in the car, so she does not know how many criminals out there have her address and other information.

623.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

624.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have

learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Felton Holly Kia.

625.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

626.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

627.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 7.   Florida Plaintiffs

628.   Plaintiff Marcella Blum ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff purchased a used 2021 Kia Seltos from Greenway Kia in Orlando, Florida in or around May 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Kia Seltos is a Class Vehicle subject to the Theft Prone Defect.

629.   On information and belief, Evergreen Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

630.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

631.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. She knew she could get an insurance reduction if it had anti-theft components, so she remembers seeing that it did and purchased it for that reason.

632.    Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

633.    On or about November 28, 2022, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

634.    Plaintiff's Class Vehicle was recovered but it was declared a total loss. The vehicle had body damage on all four sides, plus it was declared a biohazard because of the extensive evidence of drug use inside the vehicle.

635.    Plaintiff had insurance which covered the loss of the vehicle, but she was forced to pay the $500 deductible.

636.    Plaintiff has experienced inconvenience and emotional distress, including a severe panic attack, related to the Theft Prone Defect. Specifically, Plaintiff had a panic attack the day her vehicle was stolen. She has never had one before or since. She is still completely shaken up because of being a victim of car theft and has not purchased a new car so as to avoid the anxiety she knows that will come with owning a car and constantly worrying when it will be stolen. She also had the stress of spending days and days dealing with the police and her insurance company.

637.    Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

638.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Greenway Kia.

639.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

640.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

641.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

642.   Plaintiff Matthew Butler ("Plaintiff," for purposes of this section) is a resident of Jacksonville, Florida. Plaintiff purchased a used 2011 Kia Optima from Family Kia in St. Augustine, Florida in or around April 2017. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2011 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

643.   On information and belief, Family Kia is part of Kia's network of authorized dealers across the United States and is promoted on Kia's website, which includes an updated list of the dealership's inventory.

644.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

645.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

646.   On or about November 11, 2022, Plaintiff's Class Vehicle was stolen. On realizing that his Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

647.   Due to the theft, the Class Vehicle needed to be towed and has required multiple repairs.

648.   While Plaintiff's insurance covered a portion of the repairs to the vehicle, Plaintiff was forced to pay his $500 deductible out of pocket. He also has had to pay for alternative transportation while his car is in the shop.

649.   Plaintiff has experienced inconvenience and emotional distress related to the Theft Prone Defect including but not limited to feelings of insecurity from having the car stolen out of his driveway. Now Plaintiff attempts to avoid parking in public parking spaces out of fear that the car will get stolen again. Additionally, Plaintiff was unable to use the vehicle for numerous weeks while it was repaired.

650.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, he purchased it with personal funds and kept it at his residence.

651.   At no point before Plaintiff purchased his vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Family Kia.

652.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

653.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

654.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

655.   Plaintiff Kayla Collyer ("Plaintiff," for purposes of this section) is a resident of University Place, Washington. Plaintiff purchased a used 2014 Kia Forte from Galeana Kia in Fort Myers, Florida in or around July 2017. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2014 Kia Forte is a Class Vehicle subject to the Theft Prone Defect.

656.   On information and belief, Galeana Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

657.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

658.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

659.   Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

660.   Plaintiff purchased the vehicle primarily for personal, family, and household use.

661.   On or about August 8, 2022, Plaintiff's Class Vehicle was damaged during an attempted theft. The right-side passenger window was smashed and there was damage to the steering column. On discovery of the damage, Plaintiff filed a police report and insurance claim.

662.   Plaintiff's insurance declared Plaintiff's car a total loss and thereafter canceled her insurance. While Plaintiff's insurance paid its determination as to the value of Plaintiff's loss of the Class Vehicle, the insurer reduced this payment by $500 to account for the policy's deductible.

663.   Plaintiff incurred other out-of-pocket costs arising from the attempted theft of her Class Vehicle including new vehicle fees, costs, and taxes.

664.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff suffered emotional distress as a result of the theft and significant inconvenience during the time her Class Vehicle was being evaluated and was unusable, and she spent substantial time filing and administering her insurance claim.

665.   At no point before Plaintiff purchased her Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly

susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Galeana Kia.

666.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

667.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

668.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

**8.   Illinois Plaintiffs**

669.   Plaintiff David Larsen ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff purchased a new 2014 Kia Soul from Willowbrook Kia in Willowbrook, Illinois, in or around March 2014. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2014 Kia Soul is a Class Vehicle subject to the Theft Prone Defect.

670.   On information and belief, Willowbrook Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

671.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle,

Plaintiff reviewed and relied on numerous statements and representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

672.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, he purchased it with personal funds and kept it at his residence.

673.   In September 2022, Plaintiff's Class Vehicle was damaged in a theft attempt. The vehicle was parked on a public street outside of Plaintiff's residence at time of the attempted theft. The window of the vehicle was shattered, and the steering column was damaged. Upon learning of the attempted theft, Plaintiff filed a police report and insurance claim.

674.   While Plaintiff's insurance covered the repair costs from the theft, he paid the policy's $500 deductible out of pocket. Plaintiff could not drive his vehicle for six months while it awaited repairs.

675.   Plaintiff also incurred other out-of-pocket costs and losses arising from the theft attempt of his Class Vehicle, including the balance of rental car costs not covered by his insurer, daily fees to park his rental car on his street where permits are required, the purchase of an anti-theft device, and time off work spent dealing with the attempted theft and its consequences.

676.   Plaintiff suffered inconvenience and stress because of the Theft Prone Defect and resulting theft attempt of his Class Vehicle.

677.   At no point before Plaintiff purchased his vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and

predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Willowbrook Kia.

678.   In fact, just days before the attempted theft, Plaintiff took his Class Vehicle to Willowbrook Kia for routine maintenance, and they again failed to notify Plaintiff of the Theft Prone Defect or warn him about the rampant thefts arising from the Theft Prone Defect.

679.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

680.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

681.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

682.   Plaintiff Anthony Loburgio ("Plaintiff," for purposes of this section) is a resident of Steger, Illinois. Plaintiff purchased a new 2021 Kia Seltos S from Hawkinson Kia in Matteson, Illinois in or around February 2021. Plaintiff's vehicle has a traditional insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Kia Seltos is a Class Vehicle subject to the Theft Prone Defect.

683. On information and belief, Hawkinson Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

684. Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. Plaintiff uses the car for personal, family, and household transportation needs such as household errands and for his wife to drive to and from work. Plaintiff uses it for personal purposes, he purchased it with personal funds and keeps it at his residence.

685. Plaintiff purchased the Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

686. Plaintiff visited the Kia website, researched online reviews and watched YouTube videos and reviewed online representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

687. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles and the awards that Kia has received for its vehicles being safe and reliable vehicles.

688. As a result of the Theft Prone Defect, Plaintiff's insurance premium for his Class Vehicle has increased $200 per year.

689. Plaintiff incurred out-of-pocket expenses relating to the Theft Prone Defect. Specifically, Plaintiff incurred costs for rideshares at $75 per ride to go to the doctor's office on multiple occasions. Plaintiff has attempted to purchase a steering wheel lock but was unable to because the product was not available in his area.

690.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff has constant anxiety about his Class Vehicle's susceptibility to theft. Plaintiff no longer uses his Class Vehicle to drive into Chicago and has missed several gatherings because he worries his Class Vehicle can be easily stolen. He even worries when it is parked at his home.

691.   At no point before Plaintiff purchased his Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising and online channels described above or through discussions with the salesperson at Hawkinson Kia.

692.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

693.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

694.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

695.   Plaintiff Katelyn McNerney ("Plaintiff," for purposes of this section) is a resident of Crystal Lake, Illinois. Plaintiff leased a new 2022 Kia Seltos from Gary Lang Auto in McHenry, Illinois in or around September 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information

and belief, Plaintiff's 2022 Kia Seltos is a Class Vehicle subject to the Theft Prone Defect.

696.   On information and belief, Gary Lang Auto is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

697.   Plaintiff leased her Class Vehicle because she believed it was safe, reliable, and high quality. Before leasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

698.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

699.   Plaintiff leased her Class Vehicle primarily for personal, family, and household use.

700.   On or about July 27, 2022, Plaintiff's Class Vehicle was stolen from a parking garage in downtown Milwaukee, Wisconsin. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

701.   When the Class Vehicle was subsequently located, the steering wheel was torn apart, the steering column cladding was removed, and the thieves left behind the USB cord used to steal the Class Vehicle. There were paint marks along the sides of the Class Vehicle from sideswiping other vehicles during the theft. There was black ink all over the Class Vehicle and its back window was smashed, leaving glass everywhere inside. The Class Vehicle was not drivable.

702.   While Plaintiff's insurance covered all the repair costs from the theft, she paid the policy's $500 deductible out of pocket.

703.   Plaintiff incurred additional out-of-pocket expenses and losses following the theft of her Class Vehicle. Specifically, Plaintiff paid $550 to replace

1   personal items that were stolen from the Class Vehicle, and Plaintiff purchased a
2   steering lock.

3       704.   Plaintiff experienced inconvenience and emotional distress related to
4   the Theft Prone Defect. Plaintiff's insurance only covered a rental vehicle for 30
5   days and Plaintiff's Class Vehicle was in the shop awaiting repairs from July 2022
6   to October 2022. That meant she had to borrow a vehicle, or she was otherwise
7   stuck at home. Plaintiff called Kia and asked them to take the Class Vehicle back
8   because she did not feel comfortable driving it given the Theft Prone Defect and the
9   ease with which her vehicle could be stolen, particularly when she had to drive into
10  downtown Chicago. Kia told Plaintiff she would have to pay off the remainder of
11  her lease to return it, which at the time was approximately $10,000, even though
12  Plaintiff felt unsafe driving it.

13      705.   At no point before Plaintiff leased her vehicle did Kia disclose that it
14  suffered from the Theft Prone Defect, which renders it highly susceptible and
15  predisposed to theft by experienced and amateur thieves, and which makes it a
16  prime target to be used as instrumentalities through which thieves engage in
17  reckless driving or other criminal activity. Indeed, Kia concealed the existence of
18  the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft
19  Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have
20  learned of the concealed information through, for example, the advertising channels
21  described above or through discussions with the salesperson at Gary Lang Auto.

22      706.   Plaintiff suffered an ascertainable loss as a result of Defendants'
23  wrongful conduct associated with the Theft Prone Defect.

24      707.   Plaintiff did not receive the benefit of her bargain. Plaintiff leased a
25  vehicle that is of a lesser standard, grade, and quality than represented, and she did
26  not receive a vehicle that met ordinary and reasonable consumer expectations
27  regarding quality design, and safe and reliable operation. The Theft Prone Defect
28  has significantly diminished the value of Plaintiff's Class Vehicle.

708.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have leased her Class Vehicle, or would have paid less to do so.

709.   Plaintiff Eryca Smith ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff purchased a used 2021 Kia Forte from Hyundai of Lincolnwood in Lincolnwood, Illinois in or around June 2022. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Kia Forte is a Class Vehicle subject to the Theft Prone Defect.

710.   On information and belief, Hyundai of Lincolnwood is part of Hyundai's network of authorized dealers across the United States and is promoted on HMA's website, which includes an updated list of the dealership's inventory.

711.   On or about August 23, 2022, Plaintiff's Class Vehicle was stolen from outside of her home. Her ring camera obtained footage of the theft which she turned in to the police. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

712.   On or about August 24, 2022, Plaintiff was informed by the police that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found its steering column torn apart, the rear passenger window shattered, and the passenger side door dented.

713.   While Plaintiff's insurance covered the repair costs for the steering column and window, she had to pay out of pocket to repair the dented door. She also paid the policy's $500 deductible out of pocket.

714.   Plaintiff incurred other significant out-of-pocket expenses because of the theft of her Class Vehicle. Specifically, Plaintiff paid for ride shares and public transportation for more than five months while her vehicle could not be driven due to the damage to the vehicle. Plaintiff's insurance company did not approve the claim for approximately two months. Then, the parts needed for the repairs were on back order. The dealership informed Plaintiff that the parts were on back order

because so many similar vehicles were being stolen and damaged around this same time. Plaintiff did not get her Class Vehicle back until January 21, 2023.

715.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. The entire process was extremely stressful for Plaintiff, as this was her first-ever vehicle. She had to use public transportation in Chicago for months while her vehicle was fixed. She had to have numerous phone calls with the police department and insurance company. She is still worried today about future thefts and issues with the vehicle. She tried to return the car to the Hyundai dealership and other dealerships, but no one would purchase it or trade it in due to the ongoing theft issues.

716.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Hyundai of Lincolnwood.

717.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

718.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

719.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

720.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

721.   Plaintiff Dave Sessions ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff purchased a 2014 Kia Optima EX from McGrath Arlington Kia in Arlington Heights, Illinois in or around Summer 2017. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2014 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

722.   On information and belief, McGrath Arlington Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

723.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

724.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

725.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles. Plaintiff

1  specifically relied on Kia's representations about the Class Vehicle winning a JD

2  Power award, which Kia advertised in its television commercials and online.

3      726.   On or about December 22, 2022. Plaintiff's Class Vehicle was stolen.

4  After it was stolen, Plaintiff filed a police report and filed an insurance claim.

5      727.   The next day, Plaintiff found his Class Vehicle at a city impound lot.

6  Plaintiff found it had scratches, dents, damaged interior, and torn steering column.

7      728.   While Plaintiff's insurance covered all of the repair costs from the

8  theft, he was forced to pay his policies' $1,000 auto and $500 renter deductibles out

9  of pocket. Plaintiff also incurred $300 in additional insurance costs.

10     729.   Plaintiff incurred significant out-of-pocket expenses following the

11 theft of his Class Vehicle. Specifically, Plaintiff incurred the following expenses:

12 $300-$400 in travel expenses while his Class Vehicle was being repaired, and $100

13 for a steering wheel lock.

14     730.   Plaintiff experienced inconvenience and emotional distress related to

15 the Theft Prone Defect. Plaintiff has significant anxiety that his Class Vehicle may

16 be stolen again, having bouts of panic, and he goes to check frequently to see if his

17 Class Vehicle is still parked where he left it. Plaintiff also experiences frustration

18 and stress due to the financial situation the Theft Prone Defect has put him in. He

19 has also lost many hours dealing with his insurance and the body shop to get his

20 Class Vehicle repaired.

21     731.   At no point before Plaintiff purchased his vehicle did Kia disclose that

22 it suffered from the Theft Prone Defect, which renders it highly susceptible and

23 predisposed to theft by experienced and amateur thieves, and which makes it a

24 prime target to be used as instrumentalities through which thieves engage in

25 reckless driving or other criminal activity. Indeed, Kia concealed the existence of

26 the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft

27 Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have

28 learned of the concealed information through, for example, the advertising channels

described above or through discussions with the salesperson at McGrath Arlington Kia.

732.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

733.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

734.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, he purchased it with personal funds and kept it at his residence.

735.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

736.   Plaintiff Tajia Turner ("Plaintiff," for purposes of this section) is a resident of Chicago, Illinois. Plaintiff leased a new 2021 Kia Sorento LX from Hawkinson Kia in Matteson, Illinois on or around April 9, 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Kia Sorento is a Class Vehicle subject to the Theft Prone Defect.

737.   On information and belief, Hawkinson Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

738.   Plaintiff leased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before leasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

739.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

740.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

741.   On or about November 5, 2022, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report.

742.   On or about November 7, 2022, Plaintiff was informed by the police that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found it with the steering column broken, key cylinder broken, back passenger window broken, damage to the motor, and scratches to the body.

743.   Because Plaintiff was uninsured against theft or damage, she has to cover all repair costs out-of-pocket.

744.   Plaintiff incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Because parts are still on national backorder, Plaintiff's Class Vehicle is still awaiting repairs. She will have to cover those costs out-of-pocket. Plaintiff incurred and will continue to incur daily expenses for rideshares and has lost and continues to lose significant amounts of daily income as a delivery driver because she does not have a vehicle to make deliveries.

745.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. The situation with Plaintiff's Class Vehicle has caused her significant amounts of frustration and stress. She does not know when her Class Vehicle will be able to be repaired because of the part shortage and has continued to

pay her monthly payment, causing significant financial strain and frustration. She is incredibly inconvenienced by the loss of a personal vehicle as she has to arrange and pay for rideshares so her daughters can get to and from school each day or find alternative transportation so she can take them to school.

746.   At no point before Plaintiff leased her Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Hawkinson Kia.

747.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

748.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

749.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

750.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 9.    Indiana Plaintiff

751.    Plaintiff Laura Roberts ("Plaintiff," for purposes of this section) is a resident of Sellersburg, Indiana. Plaintiff purchased a new 2021 Kia Forte from Kia of Clarksville in Clarksville, Indiana in or around May 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Kia Forte is a Class Vehicle subject to the Theft Prone Defect.

752.    On information and belief, Kia of Clarksville is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

753.    Plaintiff purchased her Class Vehicle because she believed it was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

754.    Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

755.    Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

756.    Plaintiff purchased her Class Vehicle primarily for personal, family, and household use.

757.    On or about September 17, 2022, Plaintiff's Class Vehicle was stolen in Louisville, Kentucky. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and then later an insurance claim.

758.    Plaintiff's Class Vehicle was recovered the next day, September 18, 2022, but she was not notified about this until September 23, 2022. Plaintiff's insurance company told her the Class Vehicle was recovered and directed her to contact the impound lot where it was being held. When Plaintiff contacted the

impound lot, they referred her to the detective assigned to the case. The detective told Plaintiff her Class Vehicle was being held as evidence in a homicide. The most he would tell Plaintiff was that her Class Vehicle had blood in it, and there was damage to the vehicle's front, rear, and steering column. To date, Plaintiff cannot access the Class Vehicle to retrieve her personal belongings, even assuming they are still there and undamaged.

759.   Plaintiff's insurer paid her for the total loss of the vehicle.

760.   Even with the insurance payout, Plaintiff could not afford to purchase the same or similar model vehicle given market prices and availability for new cars. Instead, she purchased a used Nissan Rogue Sport, and her vehicle payment now is nearly double what it was for her Class Vehicle.

761.   Plaintiff's insurance premium also went up by about $120 annually.

762.   Plaintiff incurred other out-of-pocket expenses following the theft of their Class Vehicle. Specifically, Plaintiff incurred a license plate fee, the costs of her personal property in the Class Vehicle that has not been recovered, and lost wages for two to three days of missed work.

763.   Plaintiff experienced inconvenience and emotional distress because of the Theft Prone Defect and the resulting Class Vehicle theft. Plaintiff's stolen Class Vehicle was involved in a murder and is being held in police custody. Plaintiff's garage opener was in the vehicle when it was stolen, and Plaintiff is fearful her home will be broken into. Additionally, Plaintiff avoids the area from which her Class Vehicle was stolen for fear her replacement vehicle will be stolen.

764.   At no point before Plaintiff purchased her Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft

Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Kia of Clarksville.

765.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

766.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

767.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 10.   Kansas Plaintiff

768.   Plaintiff Hubert Matthews ("Plaintiff," for purposes of this section) is a resident of Kansas City, Kansas. Plaintiff purchased a new 2021 Kia Seltos S from Lawrence Kia in Lawrence, Kansas in or around June 2021. Plaintiff's vehicle has a traditional "insert and turn" steel key ignition. On information and belief, Plaintiff's 2021 Kia Seltos S is a Class Vehicle subject to the Theft Prone Defect.

769.   On information and belief, Lawrence Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

770.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household use. Plaintiff bought the car for use by his daughter to drive to and from home to school and to drive to school activities. Plaintiff purchased the vehicle with personal funds and kept the car at his residence.

771.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

The sales representative from Lawrence Kia represented the Class Vehicle was safe, reliable and of high quality.

772.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect.

773.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

774.   At no point before Plaintiff purchased his vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or from discussions with the salesperson at Lawrence Kia.

775.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

776.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

777.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

### 11. Kentucky Plaintiffs

778. Plaintiff Rita Day ("Plaintiff," for purposes of this section) is a resident of Lexington, Kentucky. Plaintiff purchased a used 2014 Kia Sorento EX from CarMax in Lexington, Kentucky in or around August 2016. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2014 Kia Sorento is a Class Vehicle subject to the Theft Prone Defect.

779. Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it or Kia-branded vehicles.

780. Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

781. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

782. Plaintiff has suffered rising insurance rates for her Class Vehicle.

783. Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

784. At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a

prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above.

785.  Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

786.  Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

787.  Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

788.  Plaintiff Kasey Weinfurtner ("Plaintiff," for purposes of this section) is a resident of Cold Spring, Kentucky. Plaintiff purchased a new 2020 Kia Sportage from Jake Sweeney Kia in Florence, Kentucky in or around July 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2020 Kia Sportage is a Class Vehicle subject to the Theft Prone Defect.

789.  On information and belief, Jake Sweeney Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

790.  Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

791.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

792.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

793.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household use.

794.   On or about July 30, 2022, there was an attempted theft of Plaintiff's Class Vehicle. When Plaintiff entered her parked vehicle, she noticed the front passenger window was shattered and that the steering column had been ripped out leaving the wires exposed. On realizing that there was an attempted theft of her Class Vehicle, Plaintiff filed a police report and later an insurance claim.

795.   While Plaintiff's insurance covered all the repair costs from the attempted theft, she was forced to pay the policy's $500 deductible out of pocket.

796.   Plaintiff paid out-of-pocket for an immobilizer for her Class Vehicle. Both keys for the Class Vehicle also needed to be replaced.

797.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. As a social worker, Plaintiff uses her Class Vehicle to visit clients and transport her youth clients. On the day the attempt was made to steal her Class Vehicle, she did not have the means to do her job. Additionally, during the time Plaintiff drove a rental, she was concerned it might get damaged by her juvenile clients. Finally, her insurance only covered a rental for 30 days after which she had to negotiate a rental with her dealer. This process was stressful.

798.   At no point before Plaintiff purchased her Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which

makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Jake Sweeney Kia.

799.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

800.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

801.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

**12.   Louisiana Plaintiff**

802.   Plaintiff Charles Hession ("Plaintiff," for purposes of this section) is a resident of New Orleans, Louisiana. Plaintiff purchased a new 2020 Kia Optima from Ray Brandt Kia in Harvey, Louisiana in or around June 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2020 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

803.   On information and belief, Ray Brant Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

804.   Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

805.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

806.   On or about October 23, 2022, Plaintiff's Class Vehicle was stolen in New Orleans, Louisiana. On realizing that his Class Vehicle was stolen, Plaintiff filed a police report and later an insurance claim.

807.   Several hours after Plaintiff reported his vehicle stolen, he was informed by the New Orleans Police Department that his Class Vehicle was recovered. After receiving the vehicle back, Plaintiff saw the steering column and ignition were damaged.

808.   While Plaintiff's insurance covered all the repair costs from the theft, he will be forced to pay the policy's $500 deductible out of pocket.

809.   Plaintiff also incurred other out-of-pocket expenses following the theft of his Class Vehicle. Specifically, Plaintiff's insurer only partially covered the cost of his rental vehicle, and he had to pay out of pocket for the remainder. He also incurred out-of-pocket expenses for alternative transportation such as public transportation and ride shares.

810.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and resulting theft. Specifically, Plaintiff discovered his car was stolen when he was leaving for the airport at 4:00 a.m. with his new bride for their honeymoon, and as a result of the theft, they missed their flight. Plaintiff had to scramble to file a police report and an insurance claim as well as find and book a new flight. Fortunately, he was able to find one the next day but there was a cloud hanging over the entire honeymoon. Due to the high number of thefts caused by the Theft Prone Defect, he still does not have his car back, as replacement parts are scarce. His rental car allowance ran out and his wife works on the other side of the

city, so he has to take the bus to and from work or rely on the kindness of others for transportation.

811.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and he used it for all his personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, he purchased it with personal funds and kept it at his residence.

812.   At no point before Plaintiff purchased his vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Ray Brant Kia.

813.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

814.   Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

815.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

### 13.   Maryland Plaintiffs

816.   Plaintiff Molly O'Connor ("Plaintiff," for purposes of this section) is a resident of Hyattsville, Maryland. Plaintiff purchased a used 2019 Kia Sorento from Darcars Kia of Lanham in Lanham, Maryland in or around June 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2019 Kia Sorento is a Class Vehicle subject to the Theft Prone Defect.

817.   On information and belief, Darcars Kia of Lanham is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

818.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

819.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

820.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

821.   Plaintiff purchased her vehicle primarily for personal, family, and household use.

822.   On or about September 25, 2022, Plaintiff's Class Vehicle was stolen from right outside the front of her home where it had been parked. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim. Because the vehicle could not be found initially, Plaintiff's insurer declared the Class Vehicle a total loss.

823.   On or about November 2, 2022, Plaintiff was informed by the Washington D.C. Police Department that her Class Vehicle was recovered. Because the Class Vehicle was previously declared a total loss and title was signed over to the insurer before it was recovered, Plaintiff does not know the extent of the damage the Class Vehicle sustained from the theft.

824.   Plaintiff's insurer paid her for the total loss of the vehicle, but she was forced to pay the policy's $500 deductible out of pocket.

825.   Plaintiff also incurred other out-of-pocket expenses and losses arising from the theft of her Class Vehicle. Specifically, Plaintiff's insurer only partially covered the cost of her rental vehicle, and she had to pay out of pocket for the remainder. She also had personal property stolen from her Class Vehicle that was not covered by her insurer.

826.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. After the Class Vehicle was stolen, transporting her seven-week-old baby was stressful and inconvenient. Her baby's car seat and stroller were in the Class Vehicle when it was stolen and those have not been recovered.

827.   At no point before Plaintiff purchased her Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Darcars Kia of Lanham.

828.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

829.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

830.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

831.   Plaintiff Rejene Jackson ("Plaintiff," for purposes of this section) is a resident of Temple Hills, Maryland. Plaintiff purchased a new 2018 Kia Optima LX from Darcars Kia in Temple Hills, Maryland in or around July 2018. Plaintiff's vehicle has a traditional insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2018 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

832.   On information and belief, Darcars Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

833.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

834.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

835.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

836. On or about December 13, 2022, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

837. On or about December 15, 2022, Plaintiff was informed by the Prince George County Police Department that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found damage to the ignition, the door frame and steering wheel molding was bent, damage to the tires, a window was shattered, and the battery was dead. Plaintiff is still uncovering further damage.

838. While Plaintiff's insurance covered all the repair costs from the theft, she was forced to pay the policy's $500 deductible out of pocket.

839. Plaintiff's insurance premium also increased as a result of the theft.

840. Plaintiff incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred the following expenses: alternative transportation costs for three months while the vehicle was repaired, a $2,000 down payment for the repairs to the vehicle, personal property losses, and use of personal time off days at work to deal with theft-related issues. Additionally, Plaintiff incurred expenses for her purchase of a steering wheel lock.

841. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Specifically, Plaintiff felt and still feels anger, anxiety, and mental anguish as a result of the theft and expenses incurred, which put her behind on her other bills. Additionally, Plaintiff spent significant time dealing with police, the insurer, and the dealership related to the theft.

842. At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft

Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Darcars Kia.

843.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

844.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

845.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 14.   Massachusetts Plaintiff

846.   Plaintiff Tiffany Devonish ("Plaintiff," for purposes of this section) is a resident of Providence, Rhode Island. Plaintiff purchased a used 2020 Kia Sportage LX from Wagner Kia of Shrewsbury in Shrewsbury, Massachusetts in or around July 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2020 Kia Sportage is a Class Vehicle subject to the Theft Prone Defect.

847.   On information and belief, Wagner Kia of Shrewsbury is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

848.   Plaintiff purchased her Class Vehicle because she believed that it was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

849.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class

Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class

Vehicle's safety, reliability, and quality.

850.   Plaintiff purchased the Class Vehicle primarily for personal, family,

and household use.

851.   On or about September 13, 2022, Plaintiff's Class Vehicle was stolen.

On realizing this, Plaintiff filed an insurance claim.

852.   On or about September 16, 2022, Plaintiff was informed by the police

that her Class Vehicle had been recovered, and it was released to Plaintiff's

insurance company. Plaintiff's Class Vehicle had substantial damage, including a

broken driver-side window, a destroyed steering column, ripped off wipers, and

extensive body damage to the rear.

853.   While Plaintiff's insurance covered all the repair costs from the theft,

Plaintiff was forced to pay the policy's $500 deductible out of pocket.

854.   Plaintiff incurred out-of-pocket expenses arising from the theft of her

Class Vehicle, including rental car expenses of $369.

855.   Plaintiff experienced inconvenience and emotional distress related to

the Theft Prone Defect. Plaintiff had given permission to her brother to drive her

Class Vehicle. When he came into the house and told her the Class Vehicle was

nowhere to be seen so he could not drive it, Plaintiff was shocked and distraught. It

was distressing not knowing if she would see her Class Vehicle again and, if she

did, what its condition might be. Plaintiff has experienced frustration, anxiety, and

inconvenience due to the theft of her Class Vehicle. She lost many hours dealing

with her insurer and the police. Further, even though Plaintiff's Class Vehicle was

repaired, the repair work was insufficient to return her Class Vehicle to its pre-theft

state, specifically, the electronic door locks do not work.

856.   At no point before Plaintiff purchased her Class Vehicle did Kia

disclose that it suffered from the Theft Prone Defect, which renders it highly

susceptible and predisposed to theft by experienced and amateur thieves, and which

makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Wagner Kia of Shrewsbury.

857.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

858.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

859.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

**15.   Michigan Plaintiffs**

860.   Plaintiff Darlene Bennor ("Plaintiff," for purposes of this section) is a resident of Rockford, Michigan. Plaintiff purchased a new 2021 Kia Sportage LX from Summit Place Kia in Grand Rapids, Michigan in or around April 3, 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Kia Sportage is a Class Vehicle subject to the Theft Prone Defect.

861.   On information and belief, Summit Place Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

862.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle,

Plaintiff reviewed and relied on numerous statements and representations about it. The sales representatives at Summit Kia repeatedly pointed out the safety features of the vehicle prior to purchase and Plaintiff relied upon those representations in making the purchase decision.

863.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased by or on behalf of a business and was not titled in a business' name. It was used primarily for daily transportation needs such as household errands and to go to the grocery store. The vehicle was bought with personal funds and was being kept at Plaintiff's residence.

864.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

865.   Plaintiff saw and heard Kia television and radio commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

866.   In approximately May 2022, Plaintiff's Class Vehicle was stolen. The theft was reported to the police and Plaintiff filed an insurance claim.

867.   Approximately three weeks later, Plaintiff was informed by the police that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found it with a broken window, the steering wheel torn apart, the gas cap ripped off, damage to the front bumper, and extensive body damage to the driver's side. Approximately 1,000 miles were also added to the Class Vehicle.

868.   While Plaintiff's insurance covered all the repair costs from the theft, Plaintiff was forced to pay the policy's $100 deductible out of pocket.

869.   Plaintiff incurred significant out-of-pocket losses following the theft of her Class Vehicle. Specifically, Plaintiff traded her Class Vehicle in at a significant

loss even though it had only 7,000 miles and had been fully repaired. She also had to borrow money to put down on a new vehicle because of the devaluation of her Class Vehicle due to the theft. She also had to make insurance payments on her vehicle for the six months it was not in her possession and being repaired. Personal items were also stolen from her Class Vehicle during the theft.

870.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff has experienced frustration, anxiety and inconvenience due to the theft of her Class Vehicle, especially in the six months she was without her personal vehicle. She has additionally lost many hours dealing with the body shop and attempting to trade her Class Vehicle in and not suffer a financial loss due to the Theft Prone Defect.

871.   At no point before Plaintiff purchased her Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Summit Place Kia.

872.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

873.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

874.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

875.   Plaintiff Jacquella Russell ("Plaintiff," for purposes of this section) is a resident of Plymouth, Michigan. Plaintiff purchased a new 2018 Kia Optima SE from Kia of Canton in Canton, Michigan in or around November 2019. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2018 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

876.   On information and belief, Kia of Canton is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

877.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

878.   The sales representative from Kia of Canton represented to Plaintiff that the Class Vehicle was a safe, reliable and high-quality automobile.

879.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Plaintiff purchased it with personal funds and kept it at her residence.

880.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

881.   On or about July 7, 2022, Plaintiff's Class Vehicle was stolen.

882.   On or about August 1, 2022, Plaintiff was informed by the police that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found it with no ignition or steering column, two missing tires, the motor ripped from the

manifold, battery compartment ripped out, body damage, the rear driver window, and the front windshield broken.

883.   Because Plaintiff was uninsured against theft Plaintiff has been unable to have her Class Vehicle repaired. Plaintiff's vehicle was a total loss. At the time of the theft, the Class Vehicle was worth approximately $15,000.

884.   Plaintiff incurred out-of-pocket expenses following the theft of her Class Vehicle, including that Plaintiff must now pay for public transportation.

885.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff experiences significant stress because has been unable to have her Class Vehicle repaired, which is currently in an undriveable condition. She has experienced anxiety and distress due to the financial hardship the theft of her Class Vehicle has caused and worries about her credit worthiness and how that may affect her job as a bank employee. In addition, until she was able obtain another vehicle, she experienced extreme inconvenience having to use public transportation.

886.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Kia of Canton.

887.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

888.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she

did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

889.    Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 16.    Minnesota Plaintiffs

890.    Plaintiff Lauren Hernandez ("Plaintiff," for purposes of this section) is a resident of Minneapolis, Minnesota. Plaintiff leased a new 2019 Kia Soul from Luther Kia of Bloomington in Bloomington, Minnesota in or around January 26, 2019. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. Plaintiff also leased a new 2022 Kia Seltos from Luther Kia in or around December 13, 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2019 Kia Soul and 2022 Kia Seltos are both Class Vehicles subject to the Theft Prone Defect.

891.    On information and belief, Luther Kia is part of Kia's network of authorized dealers across the United States and is promoted on Kia's website, which includes an updated list of the dealership's inventory.

892.    Plaintiff leased her Class Vehicles because she believed that the vehicles were safe, reliable, and high quality. Before leasing the Class Vehicles, Plaintiff reviewed and relied on numerous statements and representations about them.

893.    Plaintiff visited the Kia website and reviewed representations about the Class Vehicles' safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicles were affected by the Theft Prone Defect, and instead Kia touted the Class Vehicles' safety, reliability, and quality.

894.    Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

895.   Plaintiff leased her Class Vehicles primarily for personal, family, and household use.

896.   On or about December 1, 2021, Plaintiff's 2019 Kia Soul was stolen. Plaintiff was attending a virtual work conference, and after performing errands in the morning, parked her 2019 Kia Soul in the surface parking lot behind her apartment. After finishing her workday, she returned to the parking lot and found her vehicle was gone and observed shattered glass in the parking spot. On realizing that her Class Vehicle was stolen, Plaintiff called the Minneapolis Police Department and reported the theft. On December 14, 2021, Plaintiff's insurance company informed her that her Soul had not been located, and that the vehicle was deemed a total loss.

897.   Before her 2019 Soul was stolen, Plaintiff intended to lease another vehicle after the lease expired in January 2022, and thus placed a deposit on a 2022 Kia Seltos on September 29, 2022. After her Soul was stolen, she was reluctant to lease another Kia, but the salesperson at Luther Kia informed her that the Seltos was equipped with an immobilizer. Plaintiff also viewed news articles regarding Kia and Hyundai thefts across the country, in which Kia and Hyundai represented that all 2022 model year vehicles were equipped with immobilizers. Based on these representations, Plaintiff executed a lease agreement for the 2022 Kia Seltos on December 13, 2021.

898.   On March 24, 2022, Plaintiff returned home from work at approximately 5:30 and parked her Seltos in her parking lot. The following morning, she returned to the parking lot and saw that someone had attempted to break into her Seltos and removed the steering column cover. Fearing for her safety, she returned to her apartment and called her insurance company and the Minneapolis Police Department.

899.   Plaintiff brought her vehicle to Caliber Collision in Minneapolis for repairs, which were completed in early April 2022.

900.   On June 1, 2022, she again returned to her parking lot and this time found that her Seltos had been stolen. After her Soul was stolen, Plaintiff installed an application on her phone called AirTag, which allowed her to track her car. She observed her Seltos was 6 miles away in the Frogtown neighborhood of St. Paul, Minnesota. Plaintiff then called the Minneapolis Police Department and reported the vehicle stolen and relayed its location. The Minneapolis Police recovered the Seltos, and Plaintiff brought it back to Caliber Collision for repairs.

901.   While Plaintiff's insurance covered some of the repair costs from the theft, she was forced to pay approximately $1,250 in insurance deductibles out of pocket.

902.   The premiums on Plaintiff's insurance also increased. Moreover, Plaintiff was forced to switch insurance companies three times since her 2019 Soul was stolen due to the rising insurance costs. Plaintiff's insurance originally had a $500 deductible (which she paid twice) with an annual premium of $838. Her current annual premium is $1,017.

903.   Plaintiff incurred significant out-of-pocket expenses arising from the theft of her Class Vehicles. Specifically, Plaintiff paid approximately $975 in car payments while she was without a vehicle, $300 in parking fees for her assigned spot at her apartment complex despite being without a vehicle, and approximately $300 in transportation costs she would not have otherwise incurred had her vehicles not been broken into and stolen.

904.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff feared for her safety and worried that the criminals were constantly monitoring her vehicles and attempting to steal them. Plaintiff also lost the use of her vehicle, as described above, and was forced to store her Seltos at her fiancé's parents' home, and now Plaintiff stores it in the garage of her new home, in hopes that the vehicle will not be stolen again. Plaintiff also lost time addressing the thefts, which affected her work, and the time period she did not have

access to a vehicle impacted her commute to work. The rising insurance costs have also impacted Plaintiff's financial security and finances.

905.    At no point before Plaintiff leased her vehicles did Kia disclose that they suffered from the Theft Prone Defect, which renders them highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes them a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had Kia disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicles, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Luther Kia.

906.    Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

907.    Plaintiff did not receive the benefit of her bargain. Plaintiff leased vehicles that are of a lesser standard, grade, and quality than represented, and she did not receive vehicles that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect significantly diminished the value of Plaintiff's Class Vehicles.

908.    Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have leased her Class Vehicles.

909.    Plaintiff John Pope ("Plaintiff," for purposes of this section) is a resident of Minneapolis, Minnesota. Plaintiff purchased a used 2018 Kia Optima from Luther Kia of Bloomington in Bloomington, Minnesota on or around April 16, 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2018 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

910. On information and belief, Luther Kia of Bloomington is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

911. Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

912. Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

913. Plaintiff purchased his Class Vehicle primarily for personal, family, and household use.

914. On or about June 14, 2022, Plaintiff's Class Vehicle was stolen from the parking lot outside his residence in Minneapolis, Minnesota. On realizing that his Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

915. When Plaintiff's Class Vehicle was subsequently located, the Class Vehicle's back window and front window was broken, the steering column was broken, and the cladding had been removed. All told, the Class Vehicle suffered approximately $1,500 in damage.

916. While Plaintiff's insurance covered some of the repair costs from the theft, Plaintiff still paid around $700 out of pocket to fix his vehicle.

917. While Plaintiff's insurance was not canceled, his insurer did threaten to cancel his policy if his vehicle was stolen again. Plaintiff's insurance premiums were also increased.

918. At no point before Plaintiff purchased his vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a

prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Luther Kia of Bloomington.

919.    Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

920.    Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

921.    Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

922.    Plaintiff Pauline Ragsdale ("Plaintiff," for purposes of this section) is a resident of Northwood, Iowa. Plaintiff purchased a new 2020 Kia Sportage LX from Kia of Mankato in Mankato, Minnesota in or around July 11, 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2020 Kia Sportage is a Class Vehicle subject to the Theft Prone Defect.

923.    On information and belief, Kia of Mankato is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

924.    Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

925.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

926.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

927.   Plaintiff purchased her Class Vehicle primarily for personal, family, and household use.

928.   Presumably because of the Theft Prone Defect, Plaintiffs' car insurance premium went up approximately $100 over the last year.

929.   Plaintiff also experienced inconvenience and emotional distress related to the Theft Prone Defect. Specifically, Plaintiff has stopped driving the vehicle to certain crowded places such as the mall, because Plaintiff fears the risk of theft or attempted theft.

930.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Kia of Mankato.

931.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

932.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she

did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

933.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 17.   Missouri Plaintiffs

934.   Plaintiff Kathy Hughes ("Plaintiff," for purposes of this section) is a resident of St. Louis, Missouri. Plaintiff purchased a new 2012 Kia Optima from Lou Fusz Kia in St. Louis, Missouri in or around March 2013. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2012 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

935.   On information and belief, Lou Fusz Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

936.   Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased on behalf of a business and was not titled in a business' name. It was primarily used by Plaintiff for transportation needs such as household errands and to drive to and from work. The vehicle was purchased with personal funds and kept primarily at Plaintiff's residence.

937.   Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

938.   Plaintiff had discussions with the salesman at Lou Fusz Kia regarding the Class Vehicles, including their safety, reliability, quality and that they were great cars.

939.   Plaintiff saw Kia advertisements that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

940.   On or about August 8, 2022, Plaintiff's Class Vehicle was stolen. The car was stolen from in front of her home. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report.

941.   On or about September 1, 2022, Plaintiff was informed by the St. Louis City tow lot informed her that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found it in a state of total loss. The vehicle, which had been a perfectly running vehicle, was completely totaled and had been towed to a tow yard in St. Louis. It had no wheels, no tires, no battery, no radiator, the wires were cut.

942.   Plaintiff's insurance premiums increased as a result of the recent thefts of cars in her neighborhood and surrounding areas.

943.   Because Plaintiff was uninsured against theft she suffered a total loss of the vehicle, including the Kelly Blue Book of the vehicle at the time, in the amount of $11,000 and other incidental losses like new tires that had been recently installed, in the amount of $600.

944.   Plaintiff incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred the following expenses: purchasing a replacement vehicle, missing three days of work trying to purchase a replacement vehicle, being without a vehicle for three weeks, and having to pay for public transportation during that time.

945.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and the theft of her Class Vehicle. Having her car stolen from her home caused her increased emotional distress and anxiety that she did not have before the theft. She had to use public transportation until a replacement vehicle could be obtained.

946.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a

prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above and through discussions with the salesperson at Lou Fusz Kia.

947.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

948.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

949.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

950.   Plaintiff Rosemary Winner Johnson ("Plaintiff," for purposes of this section) is a resident of St. Louis, Missouri. Plaintiff purchased a used 2011 Kia Optima from Capital City Motors in St. Louis, Missouri on or around September 21, 2021. Plaintiff also purchased a used 2020 Kia Sorento from Napleton's Mid Rivers Kia in St. Peters, Missouri on or around September 20, 2021. Plaintiff's vehicles have a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2011 Kia Optima and 2020 Kia Sorento are Class Vehicles subject to the Theft Prone Defect.

951.   On information and belief, Napleton's Mid Rivers Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

952.   Plaintiff purchased her Class Vehicles because she believed that the vehicles were safe, reliable, and high quality. Before purchasing the Class Vehicles,

Plaintiff reviewed and relied on numerous statements and representations about it or Kia-branded Vehicles.

953.   Plaintiff visited the Kia dealership website and reviewed representations about the Class Vehicles' reliability. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicles were affected by the Theft Prone Defect, and instead Kia touted the Class Vehicles' safety, reliability, and quality.

954.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

955.   On or about August 2022, Plaintiff's 2011 Kia Optima Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report.

956.   On or about the same day, Plaintiff was informed by the police that her 2011 Kia Optima Class Vehicle was recovered. After receiving the vehicle back, Plaintiff learned that it was wrecked and totaled. It was not drivable.

957.   Plaintiff also experienced an increase of premium and the total loss of a vehicle on her record.

958.   Because Plaintiff was uninsured against theft, she incurred damages in the form of the total lost value of the 2011 Kia Optima Class Vehicle

959.   Plaintiff incurred significant out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred the following expenses, including the total loss of the value of the 2011 Kia Optima Class Vehicle.

960.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and the theft of her Class Vehicle. Specifically, she is a single mother of two boys, both who live with her and both driving age. She needed this second car so they could use it to get to school, work, and sports practices and events, and social events. Being down to just one car for three people was terrible. She had to rehaul her daily schedule, costing her sleep and time. Her youngest son

is going to college in the fall, and she is now stressed about finances as she attempts to figure out how to get him a car, as he will need one. She had to take money out of her 401(k) to buy the stolen vehicle. She continues to be stressed and have anxiety about the car that was not stolen. She bought a club and uses it every time she parks it. She constantly wonders if her car will be stolen. She knows it's a target and worries about it.

961.   Approximately a week before her 2011 Class Vehicle was stolen, her 2020 Class Vehicle was broken into. She filed a police report but did not file an insurance claim because her deductible was $500 and the cost to fix the damage was $350.

962.   Plaintiff purchased the Class Vehicles primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. These were Plaintiff's only vehicles and she used it for all her personal, family, and household transportation needs such as household errands. Because they were Plaintiff's only vehicles and Plaintiff used them for personal purposes, she purchased them with personal funds and kept them at her residence.

963.   At no point before Plaintiff purchased her vehicles did Kia disclose that they suffered from the Theft Prone Defect, which renders them highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes them a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicles, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above through discussions with the salesperson at the dealership.

964.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

965.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased vehicles that are of a lesser standard, grade, and quality than represented, and she did not receive vehicles that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicles.

966.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle.

967.   Plaintiff Maggie Ketchie ("Plaintiff," for purposes of this section) is a resident of St. Louis, Missouri. Plaintiff purchased a new 2021 Kia Rio S from Lou Fusz Kia in St. Louis, Missouri on or around October 14, 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Kia Rio is a Class Vehicle subject to the Theft Prone Defect.

968.   On information and belief, Lou Fusz Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

969.   Plaintiff purchased Plaintiff's Class Vehicle because Plaintiff believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations online about it.

970.   Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

971.   Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

972.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

973.   On or about October 29, 2022, at approximately 3:00 a.m., Plaintiff's Class Vehicle was broken into. Plaintiff heard the alarm go off, disarmed the car, and shouted at the perpetrator, causing them to flee. Later in the morning on October 29, 2022, Plaintiff realized that the Class Vehicle's window had been broken during the incident.

974.   Additionally, because each of the three different times Plaintiff went to obtain a free Steering Wheel Lock being offered by the City of Saint Louis (including on July 18, 2022, and July 19, 2022) the Steering Wheel Locks were always out of stock, Plaintiff paid approximately $30.00 out of pocket to obtain a Steering Wheel Lock to help deter the theft of Plaintiff's Class Vehicle in late July of 2022.

975.   Because the damage to Plaintiff's Class Vehicle did not meet the deductible, Plaintiff incurred $256.29 in costs to have her Class Vehicle's window replaced and incurred additional costs for cleaning to have glass removed from her Class Vehicle.

976.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. She did not drive her Class Vehicle for a total of two days due to the Theft Prone Defect. Plaintiff now frequently worries about where to go and if her Class Vehicle will be safe and secure. Additionally, Plaintiff is very concerned that her Class Vehicle will become uninsurable, and that the resale value of the Class Vehicle will be significantly less than it would have been worth had it not had the Theft Prone Defect.

977.   At no point before Plaintiff purchased Plaintiff's Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above and/or through discussions with the salesperson at Lou Fusz Kia.

978.   Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

979.   Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

980.   Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle.

981.   Plaintiff Peggy Ciafullo ("Plaintiff," for purposes of this section) is a resident of Lees Summit, Missouri. Plaintiff purchased a new 2018 Kia Sportage from Shawnee Mission Kia in Merriam, Kansas, in or around August 2018. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2018 Kia Sportage is a Class Vehicle subject to the Theft Prone Defect.

982.   On information and belief, Shawnee Mission Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

983.  Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

984.  Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

985.  Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

986.  On or about November 26, 2022, while visiting her son, Plaintiff's Class Vehicle was stolen from the street in front of her son's apartment in Chicago, Illinois. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and later an insurance claim.

987.  On or about November 27, 2022, the Chicago Police Department informed Plaintiff that her Class Vehicle had been abandoned and recovered. After it was recovered, Plaintiff found her Class Vehicle severely damaged. The Class Vehicle's windshield was shattered, the back passenger window was shattered, the steering column was damaged, and the Class Vehicle had engine and mechanical issues.

988.  While Plaintiff's insurance covered all the repair costs from the theft, she was forced to pay the policy's $500 deductible out of pocket.

989.  In December 2022, following the theft and insurance claim, Plaintiff's annual insurance premium increased by approximately $500.

990.  Plaintiff also incurred other out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff's insurer only partially covered the cost of her rental vehicle, and she had to pay out of pocket for the remainder. She also had personal property stolen from her Class Vehicle that was not covered by her

insurer. Additionally, after the theft, Plaintiff had to leave her Class Vehicle in Chicago to get repaired, and she had to pay out of pocket for alternative transportation from Chicago to Kansas City for herself and her husband.

991.   Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Specifically, Plaintiff's Class Vehicle was stolen over Thanksgiving while she was visiting her son in Chicago, which ruined the holiday, turning an enjoyable Thanksgiving into a terrible situation. Plaintiff had to take the train home and wait for her Class Vehicle to be repaired in Chicago, as it was undriveable and due to the high number of thefts caused by the Theft Prone Defect, replacement parts were hard to get. On top of this, Plaintiff's insurance only covered thirty days of rental car, so in the middle of the next Holiday Season (Christmas and New Years), Plaintiff found herself without a car again. Plaintiff experienced anxiety during this time as she did not know how long she would be without a car. Her husband traveled a lot, so she was left at home, on her own, without transportation, and not knowing how long this unfortunate situation would last. Even today, she still has anxiety and concerns over whether her car will be stolen again. It is always on her mind, for instance, when she parks, as she wonders if she is in a safe spot or if she should move it somewhere else.

992.   Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

993.   At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in

reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Shawnee Mission Kia.

994. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

995. Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

996. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 18. Nebraska Plaintiffs

997. Plaintiff Amber Hall ("Plaintiff," for purposes of this section) is a resident of Nebraska City, Nebraska. Plaintiff purchased a used 2012 Kia Sportage from H&H Kia in Omaha, Nebraska in or around May 28, 2022. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2012 Kia Sportage is a Class Vehicle subject to the Theft Prone Defect.

998. On information and belief, H&H Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

999. Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle.

1   She spoke to the sales representative at H&H Kia that represented the Class Vehicle

2   as a safe and reliable vehicle.

3       1000.  Plaintiff purchased the Class Vehicle primarily for personal, family,

4   and household use in that this was not purchased by or on behalf of a business and

5   was not titled in a business' name. It was used primarily for daily transportation

6   needs such as household errands and to go to and from her work as a schoolteacher.

7   The vehicle was bought with personal funds and is kept at Plaintiff's residence.

8       1001.  Plaintiff saw Kia television commercials that touted, among other

9   things, the safety, reliability, and quality of Kia-branded vehicles.

10      1002.  Plaintiff experienced inconvenience and emotional distress related to

11  the Theft Prone Defect. Plaintiff experiences worry and concern regarding the risks

12  the Theft Prone Defect poses to her Class Vehicle. She works in a large city, and

13  she is overcome with anxiety that her Class Vehicle may be stolen at any time.

14  Even routine trips to the store cause Plaintiff bouts of anxiety and panic.

15      1003.  At no point before Plaintiff purchased her vehicle did Kia disclose that

16  it suffered from the Theft Prone Defect, which renders it highly susceptible and

17  predisposed to theft by experienced and amateur thieves, and which makes it a

18  prime target to be used as instrumentalities through which thieves engage in

19  reckless driving or other criminal activity. Indeed, Kia concealed the existence of

20  the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft

21  Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have

22  learned of the concealed information through, for example, the advertising channels

23  described above or through discussions with the salesperson at H&H Kia.

24      1004.  Plaintiff suffered an ascertainable loss as a result of Defendants'

25  wrongful conduct associated with the Theft Prone Defect.

26      1005.  Plaintiff did not receive the benefit of her bargain. Plaintiff purchased

27  a vehicle that is of a lesser standard, grade, and quality than represented, and she

28  did not receive a vehicle that met ordinary and reasonable consumer expectations

1  regarding quality design, and safe and reliable operation. The Theft Prone Defect
2  has significantly diminished the value of Plaintiff's Class Vehicle.

3        1006.  Had Defendants disclosed the Theft Prone Defect, Plaintiff would not
4  have purchased her Class Vehicle, or would have paid less to do so.

5        1007.  Plaintiff Michael Ryle ("Plaintiff," for purposes of this section) is a
6  resident of Omaha, Nebraska. Plaintiff purchased a used 2012 Kia Sportage LX
7  from H&H Kia in Omaha, Nebraska in or around April 2014. Plaintiff also
8  purchased a used 2019 Kia Sorrento from H&H Kia in Omaha, Nebraska in or
9  around 2020. Plaintiff's vehicles have a traditional insert-and-turn" steel key
10 ignition system. On information and belief, Plaintiff's 2012 Kia Sportage and 2019
11 Kia Sorrento are Class Vehicles subject to the Theft Prone Defect.

12       1008.  On information and belief, H&H Kia is part of Kia's network of
13 authorized dealers across the United States and is promoted on KA's website,
14 which includes an updated list of the dealership's inventory.

15       1009.  Plaintiff purchased the Class Vehicles primarily for personal, family,
16 and household purposes in that this was not purchased on behalf of a business and
17 was not titled in a business' name.

18       1010.  Plaintiff purchased the Class Vehicles because he believed that the
19 vehicles were safe, reliable, and high quality. Before purchasing the Class Vehicles,
20 Plaintiff reviewed and relied on numerous statements and representations about
21 them or Kia-branded vehicles.

22       1011.  Before purchasing the Class Vehicles, Plaintiff visited the Kia website
23 and reviewed representations about the Class Vehicles' safety, reliability, and
24 quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's
25 research did not uncover that the Class Vehicles were affected by the Theft Prone
26 Defect, and instead Kia touted the Class Vehicles' safety, reliability, and quality.
27 Prior to purchase, the H&H sales representatives promoted the anti-theft features of
28 the cars and the safety and reliability of the vehicles.

1012. Plaintiff's 2012 Kia Sportage Class Vehicle was the subject of an attempted theft twice. The first break-in occurred in or about June 2021. The second break-in occurred in or around June 2022. Plaintiff was able to thwart the perpetrators from taking his Class Vehicle on both occasions through his home's security system.

1013. Plaintiff incurred out-of-pocket expenses following the attempted theft of his Class Vehicle. Specifically, Plaintiff incurred the expense of a new garage door opener system because the perpetrators stole Plaintiff's garage door opener. They also stole Plaintiff's tools.

1014. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff experiences anxiety regarding the rash of thefts of Class Vehicles, as many people living in Plaintiff's neighborhood had their Kia-branded vehicles stolen recently. On information and belief, these Kia-branded vehicles are Class Vehicles. Plaintiff also has suffered from anxiety and inconvenience because he no longer drives his Class Vehicles to the downtown area and instead obtains rides from other people when he goes downtown.

1015. At no point before Plaintiff purchased his Class Vehicles did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes them a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicles, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at H&H Kia.

1016. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1017. Plaintiff did not receive the benefit of his bargain. Plaintiff purchased vehicles that are of a lesser standard, grade, and quality than represented, and he did not receive vehicles that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicles.

1018. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicles, or would have paid less to do so.

### 19.    Nevada Plaintiff

1019. Plaintiff James DePorche ("Plaintiff," for purposes of this section) is a resident of North Las Vegas, Nevada. Plaintiff purchased a new 2019 Kia Sorento LX from Jim Marsh Kia in North Las Vegas Nevada, in or around September 2018. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2019 Kia Sorento is a Class Vehicle subject to the Theft Prone Defect.

1020. On information and belief, Jim Marsh Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

1021. Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1022. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use in that this was not purchased by or on behalf of a business and was not titled in a business' name. It was used primarily for daily transportation needs such as household errands. The vehicle was bought with personal funds and is kept at Plaintiff's residence.

1023. Plaintiff visited the Kia website and reviewed online representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the

Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality. The sales representatives at Jim Marsh Kia represented the Class Vehicle to be a safe and reliable, quality vehicle.

1024. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

1025. At no point before Plaintiff purchased his vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Jim Marsh Kia and the other Las Vegas Kia dealerships he visited.

1026. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1027. Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1028. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

**20.   New York Plaintiffs**

1029. Plaintiff Ronald DeSarro ("Plaintiff," for purposes of this section) is a resident of Syracuse, New York. Plaintiff leased a new 2021 Kia Sportage LX from Driver's Village Kia in Cicero, New York in or around March 2021. Plaintiff's

vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Kia Sportage is a Class Vehicle subject to the Theft Prone Defect.

1030. On information and belief, Driver's Village Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

1031. Plaintiff purchased his Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1032. Plaintiff leased the Class Vehicle primarily for personal, family, and household use in that this was not leased by or on behalf of a business and was not titled in a business' name. It was used primarily for transportation needs such as household errands, to drive to the gym, to drive to hockey games and to drive to and from work. The vehicle was leased with personal funds and kept at Plaintiff's residence.

1033. Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

1034. Plaintiff saw Kia commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

1035. On or about February 26, 2023, Plaintiff's Class Vehicle was stolen. On realizing that his Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

1036. On or about February 27, 2023, Plaintiff was informed by Syracuse police that his Class Vehicle was recovered. After receiving the vehicle back,

Plaintiff found a window broken, damage to front bumper, damage to rear lift gate, the seat was cut with a knife, and the interior was damaged.

1037. While Plaintiff's insurance covered all of the repair costs from the theft, he will be forced to pay the policy's $500 deductible out of pocket.

1038. Plaintiff incurred significant out-of-pocket expenses following the theft of his Class Vehicle. Specifically, Plaintiff incurred repair costs (approximately $6,000), towing costs ($840), and stolen personal property such as hockey equipment, sunglasses, etc. in excess of $1,000.

1039. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Indeed, Plaintiff has spent many hours on the phone with the tow company, body shop, insurance company, and dealership, and the repairs are still not complete. As a result, Plaintiff has suffered frustration and anger.

1040. At no point before Plaintiff leased his vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Driver's Village Kia.

1041. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1042. Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations

regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1043. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

1044. Plaintiff Teresa Harris ("Plaintiff," for purposes of this section) is a resident of Buffalo, New York. Plaintiff purchased a used 2018 Kia Optima FE from Northtown Kia in Buffalo, New York in or around April 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2019 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

1045. On information and belief, Northtown Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

1046. Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1047. Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

1048. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

1049. On or about October 4, 2022, Plaintiff's Class Vehicle was broken into. On realizing that her Class Vehicle was broken into, Plaintiff filed a police report.

1050. Plaintiff had insurance but had to pay a $500 deductible. She also had to pay a $50 deposit for her rental fee.

1051. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and the breaking into of her Class Vehicle. Specifically, her car was broken into during the day right in front of where she lives. When she approached her car to go to work, she saw broken glass shattered onto her daughter's car seat. She feels violated and insecure. Owning the car continues to stress her out as she worries if it will get broken into again. It was also inconvenient not having a car for a few days while she waited for a rental car.

1052. Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

1053. At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Northtown Kia.

1054. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1055. Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations

regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1056. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 21.   Ohio Plaintiffs

1057. Plaintiff Cameron Cunningham ("Plaintiff," for purposes of this section) is a resident of Cincinnati, Ohio. Plaintiff purchased a used 2013 Kia Optima LX from Kerry Ford Automotive in Cincinnati, Ohio, in or around August 2016. Plaintiff's Class Vehicle had a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2013 Kia Optima is a Class Vehicle subject to the Theft Prone Defect.

1058. Plaintiff purchased his Class Vehicle primarily for personal, family, and household use.

1059. Plaintiff purchased her Class Vehicle because he believed that the vehicle was safe, reliable, and high-quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1060. Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

1061. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

1062. On or about June 20, 2022, Plaintiff's Class Vehicle was stolen from her home. Plaintiff learned of the theft when the Forest Park Police department informed him that his car was found by local police that same morning, under a mile from Plaintiff's home.

1063. On or about June 20, 2022, Plaintiff was informed by Forest Park Police that his Class Vehicle was recovered, but had been totaled. The car was ruled a total loss on the spot because the Class Vehicle had been crashed into a concrete barrier and a tree, destroying the engine and the front of the Class Vehicle.

1064. Because Plaintiff was uninsured against theft, he received no money from his insurer and incurred significant out-of-pocket expenses, including: 2.5 months of Uber and/or Lyft payments amounting to approximately $65 per day, Class Vehicle replacement costs of at least a $1,000 down payment and $801.31 a month, and tow truck fees from the scene of the crash in the amount of $250.

1065. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect and the theft of his Class Vehicle.

1066. At no point before Plaintiff purchased his Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had Defendants disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above.

1067. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1068. Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1069. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

1070. Plaintiff Shatoya McKinney ("Plaintiff," for purposes of this section) is a resident of Cleveland, Ohio. Plaintiff purchased a used 2021 Kia Seltos S from Kia of Bedford in Bedford, Ohio in or around August 9, 2022. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2021 Kia Seltos is a Class Vehicle subject to the Theft Prone Defect.

1071. On information and belief, Kia of Bedford is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

1072. Plaintiff purchased their Class Vehicle because they believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1073. At Kia of Bedford, Plaintiff saw representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

1074. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

1075. Plaintiff purchased their Class Vehicle primarily for personal, family, and household use.

1076. In November 2022, Plaintiff's Class Vehicle was stolen from Plaintiff's driveway. On realizing that their Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

1077. About ten days later, Plaintiff was informed by the city of Cleveland Police that their Class Vehicle was recovered. After receiving the vehicle back,

Plaintiff found visible damage to the body of the car including dents and scratches. The vehicle also had low tire pressure, and the steering wheel appeared damaged and was not turning correctly.

1078. Plaintiff immediately took the car to be repaired, however the repair shop informed Plaintiff the repair would not be complete until February of 2023 due to the high demand for repairs related to the Theft Prone Defect.

1079. While Plaintiff's insurance covered all the repair costs from the theft, they were forced to pay the policy's $500 deductible out of pocket.

1080. In February 2023, Plaintiff's monthly insurance premium increased from $250 to $450.

1081. Plaintiff incurred significant out-of-pocket expenses following the theft of their Class Vehicle. Specifically, Plaintiff purchased a club to protect the car from further theft attempts and paid for alternative transportation, including paying coworkers for rides to work.

1082. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Because of the damage done to their vehicle and the extreme delay in repair time, Plaintiff was forced to stay with friends who could help drive Plaintiff to work or their children to school. Plaintiff also had to arrange rides because they could not afford several months of rental car costs. Lastly, Plaintiff took a pay cut at work resulting in lost wages, because Plaintiff was unable to fulfill time commitments as a travel nurse without a working vehicle.

1083. At no point before Plaintiff purchased their vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have

learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Kia of Bedford.

1084. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1085. Plaintiff did not receive the benefit of their bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and they did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1086. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased their Class Vehicle, or would have paid less to do so.

1087. Plaintiff Gerald Smith ("Plaintiff," for purposes of this section) is a resident of Powell, Ohio. Plaintiff leased a new 2022 Kia Sportage from Capital Kia in Columbus, Ohio in or around June 21, 2021. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2022 Kia Sportage is a Class Vehicle subject to the Theft Prone Defect.

1088. On information and belief, Capital Kia is part of Kia's network of authorized dealers across the United States and is promoted on Kia's website, which includes an updated list of the dealership's inventory.

1089. Plaintiff leased the Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before leasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1090. Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

1091. Plaintiff saw Kia television commercials (both on television and via YouTube and social media) that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

1092. Plaintiff leased his Class Vehicle primarily for personal, family, and household use.

1093. On or about July 11, 2022, Plaintiff's Class Vehicle was stolen. Plaintiff leased the vehicle for his daughter, who parked it at her apartment complex. When she reached the parking lot, the Sportage was not where she had left it, and she observed a piece of the steering column cover on the ground along with shattered glass. On realizing that the Class Vehicle was stolen, Plaintiff called the Columbus Police Department.

1094. On or about July 12, 2022, Plaintiff was informed by the Columbus Police Department that the Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found it had a shattered window, scrapes along the passenger's side of the vehicle, a dented roof and hood, and a vandalized interior. Plaintiff's insurance company informed him that the Sportage was deemed a total loss.

1095. While Plaintiff's insurance covered the loss from the theft, he was forced to pay the policy's $500 deductible out of pocket.

1096. Plaintiff also experienced increased premiums as a result of the theft. Prior to the theft, Plaintiff's insurance premium was approximately $200 per month, and after the theft it was raised to $270 per month. As a result, Plaintiff had to find another insurance provider.

1097. Plaintiff incurred significant out-of-pocket expenses and losses arising from the theft of the Class Vehicle. Specifically, Plaintiff paid $200 for a rental car while Plaintiff secured a replacement vehicle, monthly lease payments for the Honda that exceeded those for the Sportage by $202, and approximately $4,000 in lost equity that Kia Motor Finance retained pursuant to the parties' lease agreement.

1098. Plaintiff also attempted to initiate arbitration through the BBB Auto Line as specified in Kia's warranty. He submitted an application on August 4, 2022, but the BBB Auto Line rejected it on August 19, 2022, stating his claim was not arbitrable.

1099. At no point before Plaintiff leased his vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above.

1100. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1101. Plaintiff did not receive the benefit of his bargain. Plaintiff leased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect significantly diminished the value of Plaintiff's Class Vehicle.

1102. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have leased his Class Vehicle, or would have paid less to do so.

### 22.   Oklahoma Plaintiff

1103. Plaintiff Lauren Kawetschansky ("Plaintiff," for purposes of this section) is a resident of Milwaukee, Wisconsin. Plaintiff purchased a new 2020 Kia Soul from Big Red Kia in Norman, Oklahoma in or around May 2, 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information

and belief, Plaintiff's 2020 Kia Soul is a Class Vehicle subject to the Theft Prone Defect.

1104. On information and belief, Big Red Kia is part of Kia's network of authorized dealers across the United States and is promoted on Kia's website, which includes an updated list of the dealership's inventory.

1105. Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1106. Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

1107. Plaintiff saw Kia television commercials and heard radio advertisements that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

1108. Plaintiff purchased her Class Vehicle primarily for personal, family, and household use.

1109. On or about June 1, 2021, Plaintiff's Class Vehicle was stolen. Plaintiff parked her vehicle around the corner from her apartment building at approximately 9:30 p.m. The following morning, Plaintiff left her apartment to commute to work at approximately 6:40 a.m. and when she arrived at where she parked her Soul, the vehicle was no longer there, and shattered glass was scattered across the ground. On realizing that her Class Vehicle was stolen, Plaintiff called the Milwaukee Police Department and reported her vehicle stolen to her insurance company.

1110. About one week later, Plaintiff was informed by the Milwaukee Police department that her Class Vehicle was recovered. Plaintiff was also informed that her Soul was deemed a total loss.

1111. While Plaintiff's insurance covered the loss from the theft, she was forced to pay the policy's $1,000 deductible out of pocket.

1112. Plaintiff incurred other out-of-pocket expenses and losses arising from the theft of her Class Vehicle, including $300 worth of textbooks that were stolen and for which she was never compensated.

1113. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff paid for therapy sessions as a result of the theft. Plaintiff became afraid of her neighborhood and still suffers from emotional distress if she does not find her parked car right away and fears it has been stolen again.

1114. Plaintiff also attempted to initiate arbitration through the BBB Auto Line as specified in Kia's warranty. She submitted an application on August 4, 2022, but the BBB Auto Line rejected it on August 16, 2022, stating her claim was not arbitrable.

1115. At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above.

1116. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1117. Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1118. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle.

### 23. Pennsylvania Plaintiffs

1119. Plaintiff Shana Eberhardt ("Plaintiff," for purposes of this section) is a resident of Pittsburgh, Pennsylvania. Plaintiff purchased a used 2011 Kia Sorento LX from Monroeville Kia in Monroeville, Pennsylvania, in or around February 2015. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2011 Kia Sorento LX is a Class Vehicle subject to the Theft Prone Defect.

1120. On information and belief, Monroeville Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

1121. Plaintiff purchased her Class Vehicle because she believed that the Class Vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1122. Plaintiff visited the Kia dealership's website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

1123. Plaintiff purchased her vehicle primarily for personal, family, and household use.

1124. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Specifically, Plaintiff was worried about the Theft Prone Defect resulting in her Class Vehicle being stolen. Before buying the Club, Plaintiff consistently parked in parking spots that were near the establishment (for example, grocery stores) that she was entering in order to help deter theft.

1125. Because of the Theft Prone Defect, Plaintiff paid out of pocket for a Club steering lock.

1126. At no point before Plaintiff purchased her Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above, including through the Monroeville Kia dealership's website and at Monroeville Kia via the salesperson's presentations.

1127. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1128. Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1129. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

1130. Plaintiff Michelle Wagner ("Plaintiff," for purposes of this section) is a resident of Philadelphia, Pennsylvania. Plaintiff bought a new 2020 Kia Sorento

L/LX from Kia on the Boulevard in Philadelphia, Pennsylvania in or around August 2020. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2020 Kia Sorento is a Class Vehicle subject to the Theft Prone Defect.

1131. On information and belief, Kia on the Boulevard is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

1132. Plaintiff bought her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before leasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1133. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

1134. On or about January 30, 2023, Plaintiff's Class Vehicle was broken into. The perpetrators damaged Plaintiff's vehicle. On realizing that her Class Vehicle was the subject of a theft attempt, Plaintiff filed a police report and then made an insurance claim.

1135. While Plaintiff's insurance covered all the repair costs from the break-in, she was forced to pay the policy's $500 deductible out of pocket.

1136. Plaintiff incurred out-of-pocket expenses following the attempted theft of her Class Vehicle. Specifically, Plaintiff lost cash that was stolen from her Class Vehicle. She also had to miss work due to the attempted theft.

1137. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Plaintiff has experienced frustration, anxiety, and inconvenience due to the attempted theft of her Class Vehicle. Plaintiff has additionally spent many hours dealing with her insurance. Further, Plaintiff was getting ready to leave for work on Monday morning when she discovered her car was broken into and would not start. She screamed and cried, as she felt violated. The break-in was in January, and she did not get her car back until late March.

During that time, her transportation was extremely limited as she had to rely on the kindness of others. She could not see her parents as much as she wanted to, had to constantly switch around her shifts at work, and had to stress over how to get to doctor and other appointments. She is extremely anxious that her Class Vehicle will get stolen again.

1138. Plaintiff purchased the car primarily for personal, family, and household purposes in that this was not purchased on behalf of a business and was not titled in a business' name. It was Plaintiff's only vehicle and she used it for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's only vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

1139. At no point before Plaintiff leased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Kia on the Boulevard.

1140. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1141. Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1142. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

**24.    Tennessee Plaintiff**

1143. Plaintiff Adrian Matthews ("Plaintiff," for purposes of this section) is a resident of Memphis, Tennessee. Plaintiff purchased a new 2020 Kia Soul LX from Gossett Kia South in Memphis, Tennessee on or around December 31, 2019. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2020 Kia Soul is a Class Vehicle subject to the Theft Prone Defect.

1144. On information and belief, Gossett Kia South is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

1145. Plaintiff purchased her Class Vehicle primarily for personal, family, and household use.

1146. Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high-quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1147. Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

1148. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia -branded vehicles.

1149. On or about July 30, 2022, Plaintiff's Class Vehicle was stolen. On realizing that her Class Vehicle was stolen, Plaintiff filed a police report and insurance claim.

1150. On or about August 8th, 2022, Plaintiff was informed by the Memphis Police Department that her Class Vehicle was recovered. After receiving the vehicle back, Plaintiff found damages on the hood, scratches down the length of the vehicle on each side, the right rear window was broken, and the steering column was destroyed. Additionally, there was water damage from the rain coming in through the broken window.

1151. While Plaintiff's insurance covered the repair costs from the theft, she was forced to pay the policy's $500 deductible out-of-pocket.

1152. Plaintiff's insurance premium also increased as a result of the theft.

1153. Plaintiff incurred out-of-pocket expenses following the theft of her Class Vehicle. Specifically, Plaintiff incurred expenses related to the purchase of a steering wheel club.

1154. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. Indeed, Plaintiff was without her Class Vehicle for approximately two months because there was a lack of parts to repair it. Additionally, she was in shock, frantic, panicked, and always has to check on her Class Vehicle to make sure it is not stolen because she is constantly afraid that she will lose it again. Further, she was unable to attend family events or to take her grandson to school like she often did.

1155. At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Gossett Kia South.

1156. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1157. Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1158. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 25.   Texas Plaintiffs

1159. Plaintiff Carolyn Catlos ("Plaintiff," for purposes of this section) is a resident of Detroit, Michigan. Plaintiff purchased a new 2015 Kia Soul from Fredy Kia in Houston, Texas in or around June 22, 2015. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2015 Kia Soul is a Class Vehicle subject to the Theft Prone Defect.

1160. On information and belief, Fredy Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA website, which includes an updated list of the dealership's inventory.

1161. Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1162. Plaintiff visited the Consumer Reports website and reviewed representations about the Class Vehicle's safety, reliability, and quality, as well as visited the dealership. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

1163. Plaintiff purchased her vehicle primarily for personal, family, and household use.

1164. On or about October 26, 2022, Plaintiff's Class Vehicle was stolen. Plaintiff's Class Vehicle was stolen from her neighborhood during a night when multiple Kia Soul vehicles were stolen from Plaintiff's neighborhood. On realizing that her Class Vehicle was stolen, Plaintiff was forced to spend hours of her time responding to the theft, including filing a police report and an insurance claim.

1165. On or about October 30, 2022, Plaintiff's Class Vehicle was recovered. The Class Vehicle had been completely stripped and gutted, and her wheels and the cargo hold had been stolen.

1166. Plaintiff's Class Vehicle was declared a total loss and Plaintiff was forced to pay the policy's $1,000 deductible out of pocket.

1167. Plaintiff also has experienced an increase in her insurance premium as a result of the new theft.

1168. Plaintiff incurred other out-of-pocket expenses and losses following the theft of her Class Vehicle. Specifically, Plaintiff spent $129.39 on alternate transportation, and her Thule Dock Glide Kayak Rack and Evo Wingbar Roof Rack System valued at $672.85 and 264.95, respectively, were lost as a result of the theft. Additionally, on her replacement vehicle, Plaintiff paid out of pocket to install a combination kill switch and a steering wheel lock.

1169. Plaintiff experienced inconvenience and emotional distress related to the Theft Prone Defect. The theft caused Plaintiff a burden emotionally and financially. More than one Kia Soul was stolen from Plaintiff's neighborhood on the same night her Class Vehicle was stolen. Plaintiff felt unsafe and she worries about the impact of multiple Class Vehicle thefts in her neighborhood on the value of her home, the cost of insuring her home, and the cost of insuring her vehicles. In addition to that emotional burden Plaintiff experienced as a result of being victim to theft, Plaintiff experienced a significant loss of time due to having to coordinate

with police and the insurance company, finding rides to and from work or for
necessities like grocery shopping, and doing research into, and seeking temporary
and permanent transportation solutions.

1170. At no point before Plaintiff purchased her Class Vehicle did Kia
disclose that it suffered from the Theft Prone Defect, which renders it highly
susceptible and predisposed to theft by experienced and amateur thieves, and which
makes it a prime target to be used as instrumentalities through which thieves engage
in reckless driving or other criminal activity. Indeed, Kia concealed the existence of
the Theft Prone Defect from consumers like Plaintiff. Had Kia disclosed the Theft
Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have
learned of the concealed information through, for example, the advertising channels
described above or through the Consumer Reports review of the Kia Soul that
Plaintiff reviewed before purchasing the Class Vehicle.

1171. Plaintiff suffered an ascertainable loss as a result of Defendants'
wrongful conduct associated with the Theft Prone Defect.

1172. Plaintiff did not receive the benefit of her bargain. Plaintiff purchased
a vehicle that is of a lesser standard, grade, and quality than represented, and she
did not receive a vehicle that met ordinary and reasonable consumer expectations
regarding quality design, and safe and reliable operation. The Theft Prone Defect
has significantly diminished the value of Plaintiff's Class Vehicle.

1173. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not
have purchased her Class Vehicle, or would have paid less to do so.

1174. Plaintiff Albert Lui ("Plaintiff," for purposes of this section) is a
resident of Stafford, Texas. Plaintiff purchased a new 2016 Kia Sorento LX from
Fort Bend Kia in Rosenberg, Texas in or around April 2015. Plaintiff's vehicle has
a traditional "insert-and-turn" steel key ignition system. On information and belief,
Plaintiff's 2016 Kia Sorento LX is a Class Vehicle subject to the Theft Prone
Defect.

1175. On information and belief, Fort Bend Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

1176. Plaintiff purchased the Class Vehicle primarily for personal, family, and household use. Plaintiff bought the car as a daily driving car to go from home to work and for family errands. Plaintiff purchased the vehicle with personal funds and kept the car at his residence.

1177. Plaintiff purchased the Class Vehicle because he believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it. The sales representatives at Fort Bend Kia represented to Plaintiff that the Class Vehicle would provide safe and reliable transportation and was a quality automobile.

1178. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research and information did not uncover that the Class Vehicle was affected by the Theft Prone Defect.

1179. Due to the Theft Prone Defect, Plaintiff's insurance premium on his Class Vehicle has been increasing, even as the vehicle is getting older.

1180. Plaintiff incurred out-of-pocket expenses due to the Theft Prone Defect. Specifically, Plaintiff purchased a steering wheel lock after learning of the Theft Prone Defect in order to prevent or deter theft.

1181. At no point before Plaintiff purchased his Class Vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of

the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through discussions with the salesperson at Fort Bend Kia.

1182. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1183. Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1184. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

### 26.   Virginia Plaintiff

1185. Plaintiff Nadine Quate Francis ("Plaintiff," for purposes of this section) is a resident of Glen Allen, Virginia. Plaintiff purchased a used 2016 Kia Forte from Carmax in Glen Allen, Virginia in or around August 26, 2019. Plaintiff's vehicle has a traditional "insert-and-turn" steel key ignition system. On information and belief, Plaintiff's 2016 Kia Forte is a Class Vehicle subject to the Theft Prone Defect.

1186. Plaintiff purchased the Class Vehicle primarily for personal, family, and household purposes in that it was not purchased on behalf of a business and was not titled in a business's name. It was Plaintiff's vehicle used for all her personal, family, and household transportation needs such as household errands. Because it was Plaintiff's family vehicle and Plaintiff used it for personal purposes, she purchased it with personal funds and kept it at her residence.

1187. Plaintiff purchased her Class Vehicle because she believed that the vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1188. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

1189. After the Kia Challenge had been popularized, Plaintiff's six-month insurance premium increased, and her monthly insurance bill increased more than $20.

1190. At no point before Plaintiff purchased her vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above.

1191. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1192. Plaintiff did not receive the benefit of her bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and she did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1193. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased her Class Vehicle, or would have paid less to do so.

### 27.   Wisconsin Plaintiff

1194. Plaintiff Michael Scalise ("Plaintiff," for purposes of this section) is a resident of Mequon, Wisconsin. Plaintiff purchased a new 2021 Kia Forte LXS from Janesville Kia in Janesville, Wisconsin in or around April 24, 2021. Plaintiff's Class Vehicle has a traditional "insert-and-turn" steel key ignition. On information and belief, Plaintiff's 2021 Kia Forte is a Class Vehicle subject to the Theft Prone Defect.

1195. On information and belief, Janesville Kia is part of Kia's network of authorized dealers across the United States and is promoted on KA's website, which includes an updated list of the dealership's inventory.

1196. Plaintiff purchased their Class Vehicle because he believed that the Class Vehicle was safe, reliable, and high quality. Before purchasing the Class Vehicle, Plaintiff reviewed and relied on numerous statements and representations about it.

1197. Plaintiff visited the Kia website and reviewed representations about the Class Vehicle's safety, reliability, and quality. Because Defendants failed to disclose the Theft Prone Defect, Plaintiff's research did not uncover that the Class Vehicle was affected by the Theft Prone Defect, and instead Kia touted the Class Vehicle's safety, reliability, and quality.

1198. Plaintiff saw Kia television commercials that touted, among other things, the safety, reliability, and quality of Kia-branded vehicles.

1199. Plaintiff purchased his Class Vehicle primarily for personal, family, and household use.

1200. Plaintiff no longer drives his Class Vehicle near larger-sized cities where theft is prevalent and has, therefore, lost the benefit of the use of the Class Vehicle and has expended time, energy, and financial resources to find replacement transportation or forego such trips.

1201. At no point before Plaintiff purchased their vehicle did Kia disclose that it suffered from the Theft Prone Defect, which renders it highly susceptible and predisposed to theft by experienced and amateur thieves, and which makes it a prime target to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. Indeed, Kia concealed the existence of the Theft Prone Defect from consumers like Plaintiff. Had they disclosed the Theft Prone Defect before Plaintiff acquired the Class Vehicle, Plaintiff would have learned of the concealed information through, for example, the advertising channels described above or through conversations with the salespersons or review of the Kia brochures at Janesville Kia.

1202. Plaintiff suffered an ascertainable loss as a result of Defendants' wrongful conduct associated with the Theft Prone Defect.

1203. Plaintiff did not receive the benefit of his bargain. Plaintiff purchased a vehicle that is of a lesser standard, grade, and quality than represented, and he did not receive a vehicle that met ordinary and reasonable consumer expectations regarding quality design, and safe and reliable operation. The Theft Prone Defect has significantly diminished the value of Plaintiff's Class Vehicle.

1204. Had Defendants disclosed the Theft Prone Defect, Plaintiff would not have purchased his Class Vehicle, or would have paid less to do so.

1205. Plaintiffs collectively assert nationwide claims on behalf of themselves and all putative class members that purchased or leased a Class Vehicle in the United States.

1206. Each individual Plaintiff also asserts state claims on behalf of themselves and all putative class members for the state in which they purchased or leased a Class Vehicle. For example, Plaintiff Michael Scalise purchased his Class Vehicle in the state of Wisconsin, and he asserts Wisconsin state claims on behalf of himself and all putative class members that purchased or leased a Class Vehicle in Wisconsin.

## C.    Defendants

1207. Defendant HMA is a California corporation with its principal place of business in Fountain Valley, California. HMA also maintains a 4,300-acre testing facility in Irwindale, California. HMA is a subsidiary of HMC and is actively engaged in manufacturing, assembling, marketing, and distributing Hyundai vehicles sold in California and the rest of the United States.

1208. HMA's C-Suite, executives, and employees responsible for the manufacture, development, distribution, marketing, sales, customer service, and warranty servicing of Hyundai vehicles are located at the company's Fountain Valley headquarters. As detailed *infra*, the decisions regarding the marketing and sale of the Class Vehicles, the development and issuance of safety recalls and product updates, and decisions regarding the disclosure or non-disclosure of the Theft Prone Defect were in whole or substantial part made by HMA at its California headquarters.

1209. HMA has 830 dealerships across the United States which serve as its agents to Class Members. For example, in HMA's announcement of its "Anti-Theft Software Upgrade," it instructs Class Members to bring their Class Vehicles into "Hyundai dealers" for the update. Similarly, in unrelated recall notices to Class Members, HMA instructs Class Vehicle owners and lessees to visit the "nearest Hyundai dealer" for defect repairs.[17]

1210. Defendant HMC is a South Korean corporation with its headquarters located in Seoul, South Korea. HMC is the parent corporation of HMA and owns a 33.88% stake in KC.

---

[17] https://static.nhtsa.gov/odi/rcl/2020/RCONL-20V543-0565.pdf (last accessed March 17, 2023).

1211. HMC promotes on its own website all Hyundai models sold by HMA in the United States and directs U.S. consumers to HMA's website.[18]

1212. HMC states in promotional materials that it "help[s] [its] overseas subsidiaries, sales corporations, and newly established enterprises in particular to establish the direction of their customer service strategies."[19]

1213. On information and belief, HMC and HMA control various details regarding their dealers' operations through various written agreements, such as: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Class Vehicles.

1214. For example, HMC developed a "dealership facility program-known as the 'Global Dealership Space Identity,'" which was implemented by HMA across the United States.[20] With the assistance of a third party, HMA created "a Global Design Space Identity (GDSI) Facility Standards Manual that outlined all of the new requirements for interior and exterior elements that US dealerships would need." HMA also "developed the GDSI Facility Design Services Program—a multi-faceted … program including individual surveys of every dealership, site-specific recommendations, and the installation of all new brand elements." As part of the GDSI Facility Design Services Program, HMA provides "every dealer with a

---

[18] https://www.hyundai.com/worldwide/en/vehicles (last accessed March 17, 2023); https://www.hyundai.com/worldwide/en/onepage/country.us (last accessed March 17, 2023).

[19] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed Aug. 24, 2022).

[20] https://www.agi.net/our-work/a-subsidiary-of-hyundai-motor-company-of-korea-distributes-cars-and-sport-utility-vehicles-throughout-the-united-states (last accessed March 22, 2023).

complete design intent document" and each dealership works with the third-party retained by HMA "from start to finish—ending each project with an on-site GDSI Facility Compliance Review to make sure every installation was successful[.]"

1215. Defendant KA is a California corporation with its principal place of business in Irvine, California. KA is a subsidiary of KC and is actively engaged in manufacturing, assembling, marketing, and distributing Kia vehicles sold in the United States.

1216. KA's C-Suite, executives, and employees responsible for the manufacture, development, distribution, marketing, sales, customer service, and warranty servicing of Kia vehicles are located at the company's Irvine headquarters. As detailed *infra*, the decisions regarding the marketing and sale of the Class Vehicles, the development and issuance of safety recalls and product updates, and decisions regarding the disclosure or non-disclosure of the Theft Prone Defect were in whole or substantial part made by KA at its California headquarters.

1217. Defendant KC is a South Korean corporation with its headquarters located in Seoul, South Korea. KC is the parent corporation of KA.

1218. KC refers to the U.S. market as "the center of the global auto industry."[21] The United States is KC's most important market for the sale of its "Kia" branded vehicles. For example, in 2017, 21.4% of all vehicles sold by KC were sold in the United States, more than Korea (18.8%), Europe (17.1%), and China (14.3%).[22]

1219. On its own website, KC promotes Kia branded vehicles sold by KA in the United States.[23]

---

[21] 2011 KC Annual Report, available at https://worldwide.kia.com/int/company/ir/archive/annual-report.

[22] 2017 KC Annual Report, available at https://worldwide.kia.com/int/company/ir/archive/annual-report.

[23] *E.g.*, https://worldwide.kia.com/na/sportage (last accessed Aug. 24, 2022).

1220. KA has over 750 dealerships across the United States which serve as its agents to Class Members.[24] For example, KA tells Class Members that they must "bring their vehicle[s] to the nearest Kia dealership" in order to receive the "enhanced security software" designed to remedy the Theft Prone Defect.[25]

1221. On information and belief, KA and KC control various details regarding their dealers' operations through various written agreements, such as: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Class Vehicles.

## IV. SUBSTANTIVE ALLEGATIONS[26]

### A. Hyundai and Kia Became One of The Most Popular Automakers In The United States By Promoting The Safety, Quality, and Reliability of Their Vehicles

1222. HMC was established in South Korea in 1967 and started selling vehicles in the United States in 1986 through its subsidiary HMA. Since that time, HMC has become one of the largest automakers in the United States and around the world.

1223. KC was founded in 1944 manufacturing bicycles and motorcycles and is Korea's oldest manufacturer of motor vehicles. KA was formed in 1992 when KC first imported its vehicles into the United States.

---

[24] https://www.prnewswire.com/news-releases/kia-america-completes-best-retail-sales-year-in-company-history-301713187.html (last accessed March 22, 2023).

[25] https://www.cbsnews.com/chicago/news/kia-software-update-auto-theft-crisis/ (last accessed March 17, 2023).

[26] Emphasis added throughout unless stated otherwise.

1224. In 1999, HMC announced that it had acquired a controlling interest in KC, and that KC would obtain an ownership interest in approximately twenty-two (22) HMC subsidiaries. In subsequent years, HMC divested a portion of its interest and currently controls approximately 34% of KC.

1225. Through its network of more than 800 dealerships nationwide, HMA sells and services its vehicles, including the Hyundai Elantra (Hyundai's best-selling model), Hyundai Santa Fe, Hyundai Tucson, and Hyundai Accent. Likewise, KA sells and services a complete line of vehicles in the U.S. through its own network of over 700 dealers.

1226. Today, over half the cars HMC sells in the United States are designed and manufactured domestically at HMA's facilities, including at its "design, research, and testing grounds in California" near its corporate headquarters.[27] In total, HMC and HMA employ approximately 5,000 people at these facilities, and an additional 20,000 employees at U.S. dealerships.

1227. Hyundai and Kia branded vehicles share many of the same components and the same group of engineers work on Hyundai and Kia vehicles at Hyundai-KA Technical Center, Inc. ("HATCI").[28] HATCI serves as a "authorized representative" for HMC, HMA, KC, and KA when dealing with NHTSA in connection with various Safety Standards.

1228. Hyundai and Kia vehicles are also frequently rebranded or "rebadged" versions of the same vehicles. For example, the Hyundai Entourage "is identical to the [Kia] Sedona, except for cosmetics and the packaging of a few features."[29] The

---

[27] https://www.hyundainews.com/en-us/about-us (last accessed Aug. 26, 2022).

[28] https://www.forbes.com/sites/jimhenry/2013/05/31/balancing-act-hyundai-and-kia-share-products-under-the-skin-but-must-avoid-blurring-identities/?sh=210585421c7a (last accessed Aug. 26, 2022); https://www.hyundainews.com/en-us/releases/398 (last accessed July 14, 2021).

[29] https://www.nytimes.com/2006/11/12/automobiles/autoreviews/12AUTO.html (last accessed Aug. 26, 2022).

engines are the same in these vehicles, the climate controls are placed in the same locations, even the number of cupholders (14) are identical.

1229. Because Hyundai and Kia vehicles are often rebadged vehicles, they frequently use identical and interchangeable parts. That is why when HMA announces a recall of its vehicles, an identical Kia recall is typically announced shortly thereafter, or vice versa. For example, in 2013, Hyundai and Kia recalled 1.7 million vehicles across thirteen models which shared the same defective brake light switches.[30] The *Los Angeles Times* noted that the "massive recall of 1.7 million vehicles … was a sign of what can go wrong when parts are shared by" Hyundai and Kia. Additionally, in 2018, Hyundai and Kia both announced a recall of vehicles with the same defective Airbag Control Units.[31]

1230. Collectively, Defendants are the world's fourth-largest automaker. Defendants reported global sales of 6.6 million vehicles in 2022, down from 7.19 million vehicles in 2019.[32]

1231. Within the United States alone, HMA sold an average of 625,264 vehicles per year since 2006, approximately 4.13% of the total U.S. market:[33]

| Year | Vehicles Sold | Market Share (%) |
|------|---------------|------------------|
| **2006** | 455,520 | 2.75 |
| **2007** | 467,009 | 2.89 |
| **2008** | 401,742 | 3.03 |
| **2009** | 435,064 | 4.17 |
| **2010** | 538,228 | 4.64 |
| **2011** | 645,691 | 5.05 |

[30] https://www.latimes.com/business/la-xpm-2013-apr-03-la-fi-hy-hyundai-kia-motors-recall-20130403-story.html (last accessed Aug. 26, 2022).

[31] https://www.consumerreports.org/car-safety/nhtsas-new-airbag-investigation-covers-123-million-vehicles/

[32] https://www.wardsauto.com/industry-news/numbers-tell-story-who-s-best-car-company-world (last accessed August 24, 2022); https://www.reuters.com/article/us-hyundai-motor-sales/hyundai-kia-salesdrop-to-seven-year-low-on-china-weakness-forecast-better-2020-idUSKBN1Z10AC (last accessed Aug. 24, 2022).

[33] https://carsalesbase.com/us-hyundai/ (last accessed Aug. 24, 2022).

| Year | Vehicles Sold | Market Share (%) |
|------|---------------|------------------|
| 2012 | 703,007 | 4.85 |
| 2013 | 720,783 | 4.63 |
| 2014 | 725,718 | 4.39 |
| 2015 | 761,710 | 4.36 |
| 2016 | 768,057 | 4.38 |
| 2017 | 664,943 | 3.86 |
| 2018 | 667,634 | 3.85 |
| 2019 | 688,771 | 4.03 |
| 2020 | 622,269 | 4.26 |
| 2021 | 738,081 | 4.91 |

1232. Over the same time period, KA sold an average of 500,351 vehicles per year, or approximately 3.3% of the U.S. market:[34]

| Year | Vehicles Sold | Market Share (%) |
|------|---------------|------------------|
| 2006 | 294,302 | 1.78 |
| 2007 | 305,473 | 1.89 |
| 2008 | 273,397 | 2.06 |
| 2009 | 300,063 | 2.88 |
| 2010 | 366,268 | 3.16 |
| 2011 | 485,492 | 3.8 |
| 2012 | 557,599 | 3.85 |
| 2013 | 535,179 | 3.43 |
| 2014 | 580,234 | 3.51 |
| 2015 | 625,818 | 3.58 |
| 2016 | 647,598 | 3.69 |
| 2017 | 589,668 | 3.42 |
| 2018 | 589,673 | 3.4 |
| 2019 | 615,338 | 3.6 |
| 2020 | 586,105 | 4.01 |
| 2021 | 701,416 | 4.66 |

[34] https://carsalesbase.com/us-kia/ (last accessed Aug. 25, 2022).

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

1233. Additionally, a recent report by McKinsey & Company found that over twice as many second-owned used vehicles are sold in the United States each year compared to new vehicles.[35]

1234. On HMC's webpage devoted to promoting its vehicles sold around the world, including those sold by HMA, HMC touts the safety of its vehicles.[36] HMC states that it "is focusing on technology that can be applied to as many passenger cars as possible[,]" "[w]hile having [a] constant effort on car safety, Hyundai drives the adoption of new technologies."[37] HMC further advertises that "[f]rom the moment you step into a Hyundai Motor's vehicle, safety surrounds you from all corners at every second, even in places you never imagined."[38]

1235. HMC touts its continued improvement of quality and safety measures and how it conducts extensive post-sale monitoring of its vehicles and it does so because HMC knows that safety and quality are material to consumers:[39]

> ***[W]e continue upgrading overall quality and safety systems not only by promoting preemptive quality and safety measures from the vehicle development stage, but also by preventing any significant problems afterward through early detection, early improvement and early after-sales actions.*** In particular, we will establish a sustainable safety management system designed to maximize customer satisfaction and strengthen trust by developing quality and safety training programs, operating quality and safety reporting centers, analyzing safety information, and establishing safety test sites.

---

[35] https://www.mckinsey.com/industries/automotive-and-assembly/our-insights/used-cars-new-platforms-accelerating-sales-in-a-digitally-disrupted-market# (last accessed Aug. 24, 2022).

[36] *E.g.*, https://www.hyundai.com/worldwide/en/suv/tucson-2021/safety (last accessed (last accessed Aug. 24, 2022).

[37] https://www.hyundai.com/worldwide/en/company/innovation/safety/inside (last accessed Aug. 24, 2022).

[38] https://www.hyundai.com/worldwide/en/company/innovation/safety/research (last accessed Aug. 24, 2022).

[39] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed Aug. 24, 2022).

1236. In HMA's 2019 Hyundai Tucson brochure, the company states that its "commitment to Hyundai owners doesn't end with the transfer of keys" and that the vehicle includes "more standard safety features" and that it is "flush with … advanced safety technologies."[40] In particular, HMA claims that ***"[u]nlike many competitors, Tucson doesn't require you to move up to costlier trim levels to enjoy" certain safety features***."

1237. The 2017 Tucson brochure similarly provides that the vehicle contains "[a]n arsenal of advanced safety features" that are "class-leading and these like other advertisements cited herein featured safety as such is known to HMC to be material to consumers."[41]

1238. Likewise, KA advertises that it "believe[s] in the outstanding quality and durability of every new Kia that rolls off the assembly line" and that "[f]rom design to technology, materials to safety features, Kia continues to innovate[.]"[42]

1239. KA states on its website that it works "tirelessly to ensure [its] vehicle safety features are designed to help [its] drivers handle or avoid the unexpected."[43]

1240. KA claims that "Kia engineers are passionate about producing vehicles that are exceptionally well designed and reliable. Their dedication to quality and attention to detail give Kia the confidence to back every model with an industry-leading warranty program."[44]

1241. KA's Warranty and Consumer Information Manual and promotional materials for Kia Class Vehicles similarly promote its purported dedication to safety.

---

[40] https://secure.viewer.zmags.com/publication/2f65b9a9#/2f65b9a9/16 (last accessed Aug. 26, 2022).

[41] http://viewer.zmags.com/publication/006d43a3?cs:o=%272017_Certifed_Tucson_Brochure%27#/006d43a3/1 (last accessed Aug. 26, 2022).

[42] https://www.kia.com/us/en/why-kia (last accessed Aug. 26, 2022).

[43] https://www.kia.com/us/en/why-kia (last accessed March 22, 2023).

[44] https://manualzz.com/doc/7136122/kia-2015-sorento-brochure---dealer-e (last accessed Aug. 26, 2022).

1242. In KA's brochure for the 2020 Kia Sorento, KA states that "[a]t Kia, the priority is always on improving all aspects of safety. Advanced sensor systems, strategically placed airbags, and breakthroughs in materials and design that have led to strong body construction are just a few of the ways we never stop working to increase your protection."[45] KA adds "IT HELPS DETECT, COORDINATE, AND REACT to give you more peace of mind."

1243. In the 2011 Kia Sportage brochure, KA states that the vehicle offers "advanced features" including "[a]dvances safety systems" that "are comprehensive and advanced, all as standard equipment."[46]

1244. In KA's brochure for the 2016 Kia Sorento, KA claims that the vehicle contains "[a] long list of technologically advanced features … [that] inspire confidence and enhance everyday convenience."[47] The marketing brochure dedicates an entire page to "Advanced safety systems—because life is full of curves[.] Sorento features advanced safety systems designed to help give … you peace of mind every time you drive."

1245. In KA's brochure for the 2015 Kia Sorento, the company similarly claimed that the vehicle is "equipped with advanced safety features" and "systems that help give you peace of mind every time you drive[.]"[48] KA also states in the 2014 Sorento brochure that the vehicle "is also equipped with advanced active and passive safety features designed to ensure your peace of mind[.]"[49]

---

[45] https://www.auto-brochures.com/makes/Kia/Sportage/Kia_US%20Sportage_2020.pdf (last accessed Aug. 24, 2022).

[46] https://www.auto-brochures.com/makes/Kia/Sportage/Kia_US%20Sportage_2011.pdf (last accessed Aug. 24, 2022).

[47] https://www.auto-brochures.com/makes/Kia/Sorento/Kia_US%20Sorento_2016.pdf (last accessed Aug. 26, 2022).

[48] https://manualzz.com/doc/7136122/kia-2015-sorento-brochure---dealer-e (last accessed Aug. 26, 2022).

[49] https://cdn.dealereprocess.org/cdn/brochures/kia/2014-sorento.pdf (last accessed Aug. 26, 2022).

1246. Defendants also affix to each Class Vehicle a label or tag certifying that the vehicle "complies with applicable motor vehicle safety standards[.]" On information and belief, each Class Vehicle contained this label. Below is a sample certification label affixed by KC to a 2015 Kia Optima Class Vehicle prior to its sale in the United States, in which it represents that "this vehicle conforms to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture…":



## B.  For Over Fifty Years, Auto Thefts Have Been Known to Pose a Serious Safety Risk

1247. It is well-established that auto thefts pose a serious safety risk to vehicle owners and bystanders. In 1966, Congress enacted the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), 49 U.S.C. § 30101 *et seq.*, "to reduce traffic accidents and deaths and injuries resulting from traffic accidents" and "to prescribe motor vehicle safety standards."

1248. In 1968, the DOT promulgated a new Safety Standard No. 114 titled "Theft Protection; Passenger Cars," pursuant to the Safety Act. *See* 33 Fed. Reg. 6,471 (Apr. 27, 1968).

1249. FMVSS No. 114 was implemented after it was "demonstrated that ***stolen cars constitute a major hazard to life and limb on the highways.***" *Id.*

(emphasis added). As part of its evaluation of FMVSS No. 114, the DOT found that
"[t]he evidence shows that cars operated by unauthorized persons are far more
likely to cause unreasonable risk of accident, personal injury, and death than those
which are driven by authorized individuals." *Id*.

1250. Among the evidence used in support of this conclusion was a 1968
study conducted by the Department of Justice ("DOJ"). The DOJ found that a
substantially significant number of stolen vehicles would result in personal injury
accidents:

> [T]here were an estimated 94,000 stolen cars involved in
> accidents in 1966, and more than 18,000 of these
> accidents resulted in injury to one or more people. On a
> proportionate basis, 18.2 percent of the stolen cars
> became involved in accidents, and 19.6 percent of the
> stolen-car accidents resulted in personal injury. The same
> study predicted that automobile thefts in 1967 total about
> 650,000; about 100,000 of these stolen cars could be
> expected to become involved in highway accidents.
> ***Comparing these figures with statistics for vehicles
> which are not stolen, the approximate rate for stolen
> cars would be some 200 times the normal accident rate
> for other vehicles***.

*Id*.

1251. The DOJ survey found that "[t]he number of car thieves who start cars
with so-called 'master keys' and devices which bypass the lock is … large enough
to produce a significant safety hazard." *Id*. Accordingly, FMVSS No. 114 was
explicitly designed to "defeat" this method for stealing a vehicle and requires "[a]
large number of locking-system combinations and a steering or self-mobility lock."
*Id*.

1252. When promulgating FMVSS No. 114, the DOT rejected several
comments in opposition to the Standard that argued that "since any locking system,
no matter how it is constructed, can be defeated by persons possessing sufficient
skill, equipment, and tenacity, provisions for ensuring removal of ignition keys
would be futile because a thief need not make use of a key." *Id*. In particular, the
DOT relied on the DOJ study which found that "the large majority of car thieves

are amateurs, almost half of whom are engaged in so-called 'joy-riding'" and that "most" of the thieves are juveniles. *Id.* This finding would be shown to be a prescient warning to automobile manufacturers and just as relevant fifty years later.

1253. Given the dramatic increase in the accident rate caused by stolen vehicles, the DOT determined that "***a reduction in the incidence of auto theft would make a substantial contribution to motor vehicle safety***. It would not only reduce the number of injuries and deaths among those who steal cars, it would also protect the many innocent members of the public who are killed and injured by stolen cars each year." *Id.* (emphasis added). Further, the DOT "concluded that a standard that would reduce the incidence of unauthorized use of cars meets the need for motor vehicle safety" and rejected the contention that the Theft Protection rules are "not related to improving motor vehicle safety." *Id.*

1254. The first iteration of FMVSS No. 114, Theft Protection; Passenger Cars, stated in relevant part:

> S1. *Purpose and scope*. This standard specifies requirements for theft protection to reduce the incidence of accidents resulting from unauthorized use.
>
> S2. *Application*. This standard applies to passenger cars.
>
> S4. *Requirements*.
>
> **S4.1 Each passenger car shall have a key-locking system that, whenever the key is removed, will prevent-**
>
>> **(a) Normal activation of the car's engine or other main source of motive power; and**
>>
>> **(b) Either steering or self-mobility of the car, or both.**
>
> S4.2 The prime means for deactivating the car's engine or other main source of motive power shall not activate the deterrent required by S4.1(b).
>
> S4.3 The number of different combinations of the key locking systems required by S4.1 of each manufacturer shall be at least 1,000, or a number equal to the number of passenger cars manufactured by such manufacturer, whichever is less.

> S4.4 A warning to the driver shall be activated when the key required by S4.1 has been left in the locking system and the driver's door is opened.

*Id.* The standard became effective on January 1, 1970. *See id.*

1255. In the half century since the DOT recognized the safety risks posed by auto thefts, the agency has continued to monitor the safety risks posed by auto thefts and modernize its rules designed to prevent auto thefts.

1256. In 1984, Congress enacted the Motor Vehicle Theft Law Enforcement Act (the "Theft Act"), 49 U.S.C. 33101, *et seq.*, which directs NHTSA to establish theft prevention standards for passenger vehicles. *See* 81 Fed. Reg. 66,833, 66,834 (Sept. 29, 2016). Pursuant to the Theft Act, NHTSA implemented 49 C.F.R. Part 541, which requires manufacturers of designated high theft passenger car lines to inscribe or affix the Vehicle Identification Number (VIN) onto the engine, the transmission, and major body parts. Each vehicle in a high-theft line must have its major parts and major replacement parts-marked unless the vehicle line is granted an exemption from the parts marking requirements ("PMR"). A manufacturer may petition for a PMR exemption when it plans to install a standard equipment antitheft device on the entire line. *See* 49 C.F.R. §§ 543.1, *et seq*. The agency must determine that the antitheft device to be installed on the line is likely to be as effective in reducing and deterring motor vehicle theft as parts-marking.

1257. In 1992, Congress enacted the Anti Car Theft Act (Pub. L. No. 102-519, codified at 49 U.S.C. chapter 331), which expanded the PMR to include multipurpose passenger vehicles and certain light duty trucks. On April 6, 2004, the Federal Motor Vehicle Theft Prevention Standard was extended to include all passenger cars, multipurpose passenger vehicles with a gross vehicle weight rating (GVWR) of 6,000 pounds or less, all light-duty trucks (LDTs) determined to be high-theft (with a gross vehicle weight rating of 6,000 pounds or less), and all low-theft LDTs with major parts that are interchangeable with a majority of the covered

major parts of those passenger motor vehicle lines subject to the theft prevention standard. 69 Fed. Reg. 17,960 (Apr. 6, 2004).

1258. In 2006, NHTSA iterated that its "safety standard on theft protection [FMVSS No. 114] specifies vehicle performance requirements intended to reduce the incidence of crashes resulting from theft and accidental rollaway of motor vehicles." *See* 71 Fed. Reg. 17,752 (Apr. 7, 2006). NHTSA goes on to make clear that "the standard sought to ensure that the vehicle could not be easily operated without the key" and that "thieves… could [not] bypass the ignition lock." *Id*. at 17,752-53.

1259. The ignition lock (also referred to as an ignition cylinder or lock cylinder) is the portion of the ignition assembly where the key is inserted. The ignition cylinder prevents the ignition switch, which is located behind the lock cylinder, from turning to start the vehicle without the right key.

1260. If the correct key is inserted, small actuators in the lock cylinder will match up with the key and allow the driver to turn it; a process that, in turn, rotates the vehicle's ignition switch, thereby starting the vehicle.

1261. FMVSS No. 114 is currently codified as 49 C.F.R. 571.114, which provides:

> **S1. Scope**. This standard specifies vehicle performance requirements intended to reduce the incidence of crashes resulting from theft and accidental rollaway of motor vehicles.
>
> **S2. Purpose**. The purpose of this standard is to decrease the likelihood that a vehicle is stolen, or accidentally set in motion.
>
> **S3. Application**. This standard applies to all passenger cars, and to trucks and multipurpose passenger vehicles with a GVWR of 4,536 kilograms (10,000 pounds) or less. However, it does not apply to walk- in van-type vehicles. Additionally, paragraph S5.3 of this standard applies to all motor vehicles, except trailers and motorcycles, with a GVWR of 4,536 kilograms (10,000 pounds) or less.
>
> **S4. Definition**s.

*Combination* means a variation of the key that permits the starting system of a particular vehicle to be operated.

*Key* means a physical device or an electronic code which, when inserted into the starting system (by physical or electronic means), enables the vehicle operator to activate the engine or motor.

...

*Starting system* means the vehicle system used in conjunction with the key to activate the engine or motor.

S5 **Requirements**. Each vehicle subject to this standard must meet the requirements of S5.1, S5.2, and S5.3. Open-body type vehicles are not required to comply with S5.1.3.

S5.1 **Theft protection**.

S5.1.1 Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:

(a) The normal activation of the vehicle's engine or motor; and

(b) Either steering, or forward self-mobility, of the vehicle, or both.

1262. FMVSS No. 114 is a "self-certification" process.[50] In other words, "NHTSA does not issue type approval certifications and does not certify any motor vehicles or motor vehicle equipment as complying with applicable FMVSS."

1263. NHTSA is also required to periodically obtain and publish accurate and reliable theft data. 49 U.S.C. 33104(b)(4) (Designation of high theft vehicle lines and parts). The National Crime Information Center ("NCIC") of the Federal Bureau of Investigation provides this data to NHTSA. The NCIC is a governmental system that receives vehicle theft data from approximately 23,000 criminal justice agencies and other law enforcement authorities throughout the United States. This national data includes the reported thefts of self-insured and uninsured vehicles, not all of which are reported to other data sources.

---

[50] *See* https://www.nhtsa.gov/sites/nhtsa.gov/files/manufacturer_information_march2014.pdf (last accessed March 24, 2023).

1264. In connection with fulfilling its administrative mandate under both the Safety Act and the Theft Act, NHTSA regularly interacts with, seeks comment from, and shares information with, automotive manufacturers and their authorized representatives, including HMA and KA.

## C.   Engine Immobilizers Are an Inexpensive and Proven Means to Dramatically Reduce Auto Theft

1265. Over the last fifty years since FMVSS No. 114 was issued, manufacturers have developed a bevy of safety features, many of which would have been inconceivable to drivers in 1968, and others which are directly contemplated by the initial promulgation of the Safety Standard. Falling into the latter category are engine immobilizers, which have become standard in consumer vehicles across the globe—including in Defendants' high-end vehicles and those sold outside the U.S. market.

1266. An immobilizer is an anti-theft device that can prevent vehicles from starting unless a verified code is received by a transponder module that controls the engine. *See* 81 Fed. Reg. 66,833 (Sept. 29, 2016). This theft-prevention device thus prevents the vehicle from being "hot-wired" or started by any means other than an authorized key. Engine immobilizers have been described as "simple and low-cost anti-theft device[s]."[51]

1267. Since 1986, there have been three popular engine immobilizing antitheft devices: resistor-pellet, transponder-based, and magnetic rotation device systems.

1268. In 1986, General Motors ("GM") introduced the vehicle antitheft system ("VATS") or Pass-Key I system on its Corvette models. It was the first system to be an integrated part of the vehicle electronics and ushered in the engine

---

[51] van Ours, Jan C. and Vollaard, Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 14, 2013). CentER Discussion Paper Series No. 2013-004, TILEC Discussion Paper No. 2013-001, available at SSRN: https://ssrn.com/abstract=2202165.

immobilizer concept. The system availability expanded through the various GM product lines since 1986, and by 1994, over 66% of GM domestically produced vehicles were Pass-Key equipped. In 1992, GM introduced the Pass-Key II.

1269. The Pass-Key VATS worked as follows: When a properly cut ignition key is inserted into the ignition lock keyway and rotated, the resistor pellet embedded in the key shank touches the contacts located in the outer ignition lock keyway, transmitting a signal to the Pass-Key decoder module located in the instrument panel in the passenger compartment. The signal's electrical resistance is measured by the decoder module by comparing its value to the fixed resistance value in the module. If the resistance value is correct for that specific vehicle, the starter-enable relay is energized and a discrete signal is sent to the vehicle's electronic control module to enable engine functions and allow fuel injector pulses to begin. If an invalid key is rotated, the resistance value is read as incorrect and the decoder module will shut down for two to four minutes, preventing the engine from starting during this time interval.

1270. Next came transponder-based electronic immobilizer systems, which were first introduced by Ford in 1996 and named SecuriLock.

1271. With a transponder-based immobilizer, when the ignition key is turned to the start position, the transponder located in the key head transmits a code to the powertrain's electronic control module ("ECM"). Each transponder is programed by the manufacturer with a unique code. The engine functions are enabled only if the transponder code matches the code previously programmed into the ECM. Ford explained that the "device is activated when the driver/operator turns off the engine by using the properly coded ignition key." 64 Fed. Reg. 7,949 (Feb. 17, 1999) (describing SecuriLock).

1272. Shortly after Ford introduced a transponder-based immobilizer, other manufacturers followed its lead. GM began installing its transponder-based system called the Pass-Key III in 1997. DaimlerChrysler has been installing its Sentry Key

Immobilizer System ("SKIS") in its vehicles as standard equipment since 1999. Nissan has its own transponder-based system since 2001, which has been installed as standard equipment in its vehicles as well. *See* 66 Fed. Reg. 53,830 (Oct. 24, 2001) (Nissan's PMR petition); 74 Fed Reg 28,768 (June 17, 2009) (describing Nissan's immobilizer device).

1273.  The third type of immobilizer utilizes a magnetic rotation device. In 1996, GM began phasing out its use of its Pass-Key systems, replacing them with its magnetic-rotation system device called "PassLock I." The following year, it began installing its PassLock II, a magnetic-rotation system device. The magnetic rotation system uses a coded magnet embedded in the ignition lock cylinder (as opposed to the key shank as in Pass-Key systems), and an electronic sensor mounted on the column assembly housing surrounding the ignition lock. When the ignition lock core is rotated within the housing using the correctly cut key, the magnet passes over the housing-mounted sensor, generating a signal that is sent to the decoder module, which measures the voltage. If the value of the sensor's voltage matches the value stored in the memory of the decoder, the decoder sends an encoded signal to the power control module ("PCM") to start the flow of fuel and enable engine functions. If an invalid key is used, an improper voltage value is measured, which sends a signal to the PCM to prevent the flow of fuel for ten minutes.

1274.  Over the last three decades, these immobilizers have been proven to be highly effective in dramatically reducing auto theft.

1275.  A study conducted in Europe after immobilizers were mandated found that the overall rate of auto thefts fell by 46% between 1995 and 2008.[52] The same study also found that the additional manufacturing costs related to installing an

---

[52] van Ours, Jan C. and Vollaard, Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 31, 2013). CESifo Working Paper Series No. 4092, available at SSRN: https://ssrn.com/abstract=2214895.

engine immobilizer was as little as approximately $50 per vehicle, and the benefits in terms of prevented thefts are many times higher than the costs of installing the device.

1276. Given how effective and relatively inexpensive engine immobilizers are, most automotive regulators around globe require the installation of the device in new vehicles sold.

1277. In November 1995, the European Union ("EU") adopted Directive 74/61/EEC, which made installation of an electronic engine immobilizer mandatory in all new passenger cars sold within the EU as of October 1998.[53] Australia has required immobilizers in vehicles sold since 2001 and Canada has required the component since 2007. In parts of Australia and Canada, the legislation also extended to the existing car fleet.[54]

1278. NHTSA has repeatedly demonstrated its support for the installation of immobilizers and has stated that the device complies with FMVSS No. 114. In 2006, *NHTSA noted that FMVSS No. 114 was promulgated due to the agency's "concern about car thieves who could bypass the ignition lock."* 71 Fed. Reg. 17,752, 17,753. NHTSA went on to explain how a manufacturer's engine immobilizer satisfied FMVSS No. 114:

> We note that in promulgating FMVSS No. 114, the agency expressed concern about car thieves who could bypass the ignition lock. In response to this concern, the agency decided to require a device, which would prevent either self-mobility or steering even if the ignition lock were bypassed (see 33 FR 4471, April 27, 1968).
>
> The engine control module immobilizer described in your letter satisfies the requirements of S4.2(b) because it locks out the engine control module if an attempt is made to start the vehicle without the correct key or to bypass the electronic ignition system. When the engine control module is locked, the vehicle is not capable of forward

---

[53] van Ours, Jan C. and Vollaard, Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 31, 2013).

[54] *Id.*

self-mobility because it is incapable of moving forward under its own power.

*Id.*

1279. NHTSA has also noted that in addition to the installation of immobilizers, manufacturers have sought to comply with FMVSS No. 114 by installing "improved antitheft deterrents, such as hardened collars that shield the upper and lower casing of the steering column… [which] deter theft by increasing significantly the time required to disable the locking mechanism for the ignition, steering wheel and automatic transmission gear selector." *Id*.

1280. Since the introduction of engine immobilizers, the rate of auto thefts has fallen dramatically as demonstrated in the following table published by NHTSA in 2017 and detailing the theft rate in the United States from 1993 through 2014:



Figure 1:  Theft Rate Data Trend (MY/CY 1993-2014)

82 Fed. Reg. 28,246, 28247 (June 21, 2017).

1281. In a 2013 NHTSA report regarding the drop in the vehicle theft rate from 1993 through 2011, NHTSA noted that it "***believes that the theft rate reduction is a result of several factors, including*** vehicle parts marking; ***the increased use of standard antitheft devices and other advances in electronic***

*technology (i.e., immobilizers) and theft prevention methods*; increased and improved prosecution efforts by law enforcement organizations; and, increased public awareness which may have contributed to the overall reduction in vehicle thefts." 78 Fed. Reg. 41,016, 41,017 (July 9, 2013).

1282. Studies, of which the defendants as prudent car manufacturers were well aware of, conducted by the Highway Loss Data Institute ("HLDI"), similarly found that "vehicle theft losses plunged after immobilizers were introduced."[55]

1283. The National Insurance Crime Bureau ("NICB"), an organization dedicated exclusively to fighting insurance fraud and crime, noted in a 2013 report concerning auto thefts that a reduction in vehicle thefts requires an immobilizer.[56] The NCIB put it simply: "Generally speaking, if your vehicle can't be started, it can't be stolen."

1284. The following table identifies each make and model that has received a PMR exemption for installing an immobilizer and/or other antitheft measure consistent with FMVSS, as of August 23, 2022:

---

[55] *See* https://www.iihs.org/news/detail/hyundais-kias-are-easy-targets-amid-boom-in-vehicle-thefts (last accessed March 21, 2023).

[56] https://www.nicb.org/sites/files/2017-10/2013-Hot-Wheels-Report.pdf (last accessed March 22, 2023).

| Manufacturer | Subject lines |
|---|---|
| BMW | MINI, MINI Countryman (MPV), X1 (MPV), X1, X2 (MPV), X3 (MPV), X4 (MPV), X5 (MPV), Z4, 2 Series,[1] 3 Series, 4 Series, 5 Series, 6 Series, 7 Series, 8 Series. |
| CHRYSLER | 200, 300, Dodge Charger, Dodge Challenger, Dodge Dart, Dodge Journey, Fiat 500, Fiat 124 Spider, Jeep Cherokee, Jeep Compass, Jeep Grand Cherokee (MPV), Jeep Gladiator,[1] Jeep Patriot, Jeep Wrangler/Wrangler JK,[2] Jeep Wrangler JL (new), Town and Country MPV. |
| FORD MOTOR CO | C-Max, EcoSport, Edge, Escape, Explorer, Fiesta, Focus, Fusion, Lincoln Corsair,[1] Lincoln MKC, Lincoln MKX, Lincoln Nautilus, Mustang. |
| GENERAL MOTORS | Buick LaCrosse/Regal, Buick Encore,[1] Buick Verano, Cadillac ATS, Cadillac CTS, Cadillac SRX, Cadillac XTS, Cadillac XT4, Chevrolet Bolt, Chevrolet Camaro, Chevrolet Corvette, Chevrolet Cruze, Chevrolet Equinox, Chevrolet Impala/Monte Carlo, Chevrolet Malibu, Chevrolet Sonic, Chevrolet Spark, Chevrolet Volt, GMC Terrain. |
| HONDA | Accord, Acura TLX,[1] Acura MDX, Civic, CR–V, Passport, Pilot. |
| HYUNDAI | Azera, Equus, Genesis G70,[1] Genesis G80,[3] IONIQ. |
| JAGUAR | F-Type, XE, XF, XJ, Land Rover Discovery Sport, Land Rover E-Pace,[1] Land Rover F-Pace, Land Rover Range Rover Evoque, Land Rover Velar. |
| KIA | Niro, Stinger. |
| MASERATI | Ghibli, Levante (SUV), Quattroporte. |
| MAZDA | 2, 3, 5, 6, CX–3, CX–5, CX–9, MX–5 Miata. |
| MERCEDES–BENZ | smart Line Chassis, smart USA fortwo, SL-Line Chassis (SL-Class), (the models within this line are): SL400/SL450, SL550, SL 63/AMG, SL 65/AMG, SLK-Line Chassis (SLK-Class/SLC-Class), (the models within this line are): SLK 250, SLK 300, SLK 350, SLK 55 AMG, SLC 300 AMG, SLC 43, S-Line Chassis (S/CL/S-Coupe Class/S-Class Cabriolet/Mercedes Maybach), (the models within this line are): S400 Hybrid, S550, S600, S63 AMG, S65 AMG, Mercedes-Maybach S560, Mercedes-Maybach S650, CL550, CL600, CL63 AMG, CL65 AMG, NGCC Chassis Line (CLA/GLA/B-Class/A-Class), (the models within this line are): A220, B250e, CLA250, CLA45 AMG, GLA250, GLA45 AMG, C-Line Chassis (C-Class/CLK/GLK-Class/GLC-Class), (the models within this line are): C63 AMG, C240, C250, C300, C350, CLK 350, CLK 550, CLK 63AMG, GLK250, GLK350, E-Line Chassis (E-Class/CLS Class), (the models within this line are): E55, E63 AMG, E320 BLUETEC, E350 BLUETEC, E320/E320DT CDi, E350/E500/E550, E400 HYBRID, CLS400, CLS500/550, CLS55 AMG, CLS63 AMG. |
| MITSUBISHI | Eclipse Cross, iMiEV, Lancer, Outlander, Outlander Sport, Mirage. |
| NISSAN | Altima, Juke, Leaf, Maxima, Murano, NV200 Taxi, Pathfinder, Quest, Rogue, Kicks, Sentra, Infiniti Q70, Infiniti Q50/60, Infiniti QX50, Infiniti QX60, Versa.[1] |
| PORSCHE | 911, Boxster/Cayman, Macan, Panamera, Taycan.[1] |
| SUBARU | Ascent, Forester, Impreza, Legacy, Outback, WRX, XV Crosstrek/Crosstrek.[4] |
| TESLA | Model 3, Model S, Model X, Model Y.[1] |
| TOYOTA | Avalon, Camry, Corolla, C–HR,[1] Highlander, Lexus ES, Lexus GS, Lexus LS, Lexus NX, Lexus RX, Prius, RAV4, Sienna. |
| VOLKSWAGEN | Atlas, Beetle, Eos, Jetta, Passat, Tiguan, Golf/Golf Sport wagen/eGolf/Alltrack, Audi A3, Audi A4, Audi A4Allroad MPV, Audi A6, Audi A8, Audi Q3, Audi Q5, Audi TT. |
| VOLVO | S60. |

[1] Granted an exemption from the parts-marking requirements beginning with MY 2020.
[2] Jeep Wrangler (2009–2019) nameplate changed to Jeep Wrangler JK, JK discontinued after MY 2018.
[3] Hyundai discontinued use of its parts-marking exemption for the Genesis vehicle line beginning with the 2010 model year, line was reintroduced as the Genesis G80.
[4] Subaru XV Crosstrek nameplate changed to Crosstrek beginning with MY 2016.

87 Fed. Reg. 51,616 (Aug. 23, 2022).

1285. As the table above reveals, nearly all the best-selling cars in America (except for Hyundai and Kia vehicles) have received PMR exemptions, including Toyota Rav4, Honda CR-V, Toyota Camry, Nissan Rogue, Toyota Highlander, and the Honda Civic.[57] On information and belief, each of these vehicles received a PMR exemption based on the installation of an engine immobilizer.

1286. A study conducted by the HLDI found that immobilizers were standard on 62% of non-Hyundai and Kia vehicles by the introduction of 2000 MY

---

[57] https://www.caranddriver.com/news/g36005989/best-selling-cars-2021/ (last accessed Aug. 26, 2022).

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

vehicles.[58] By the time 2015MY vehicles were sold, 96% of non-Hyundai and Kia vehicles were equipped with immobilizers. However, only 26% of Hyundai and Kia vehicles were sold with immobilizer as standard equipment.



Figure 1: Percentage of vehicle series with passive immobilizer as standard equipment by model year

1287. Many of the vehicles with PMR exemptions are comparably priced to Hyundai and Kia vehicles and directly compete for Plaintiffs' and the Class's purchases. For instance, the MSRP for a 2021 Hyundai Elantra ranges from $19,650 to $28,100, and the MSRP for a 2021 Honda Civic, which includes an engine immobilizer, ranges from $21,050 to $28,100.[59]

**D.   The Class Vehicles Are Theft Prone Defective and Do Not Comply With FMVSS No. 114**

1288. As the DOT and DOJ found in 1968, amateur thieves stealing cars to go joy-riding make up a significant portion of all auto thefts in America. Moreover, these thieves can steal cars using simple means, such a pair of pliers to remove the ignition lock. That is why simple measures such as the installation of an immobilizer are so effective at preventing the majority of auto thefts.

---

[58] Highway Loss Data Institute (HLDI) Bulletin Vol. 38, No. 28 (December 2021), available at https://www.iihs.org/news/detail/hyundais-kias-are-easy-targets-amid-boom-in-vehicle-thefts (last accessed March 22, 2023).

[59] https://www.edmunds.com/hyundai/elantra/2021/ (last accessed Aug. 26, 2022).

1289. But Defendants eschewed this relatively inexpensive antitheft device and designed and/or manufactured the Class Vehicles with several critical design and/or manufacturing defects that allow thieves to steal Class Vehicles in a matter of seconds.

1290. In or around 2020, a group of teenagers in Milwaukee, who dubbed themselves the "Kia Boyz," discovered the Theft Prone Defect and began to publicize precisely how to take advantage of the Theft Prone Defect to steal Class Vehicles in a matter of seconds.

1291. *First*, the thieves recognized that the vast majority Hyundai and Kia vehicles on the road do not have an engine immobilizer. The thieves are easily able to identify the Class Vehicles because, on information and belief, each Hyundai and Kia vehicle sold with a traditional "insert-and-turn" key ignition systems, as opposed to "push-to-start" ignition, lacks an immobilizer. As shown below, it is easy to identify the Class Vehicles by peering through a car window, because the "push-to-start" vehicles have a start button located at the bottom of the dash and the "insert-and-turn" vehicles have an ignition cylinder on the steering column:

 

*2016 Hyundai Tucson SE*
*(insert-and-turn key)*        *2016 Hyundai Tucson Limited*
                               *(push-to-start)*

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

1292. *Second*, the thieves discovered that the Class Vehicles do not contain alarms or sensors attached to the windows, which allows them to enter the vehicles without drawing attention to themselves.

1293. *Third*, once they stealthily entered the vehicles, the thieves found that the steering columns in the Class Vehicles do not contain adequate casing or a hardened collar, and are therefore, easily pulled off.

1294. *Fourth*, the thieves realized that the ignition lock assembly, which contains the lock cylinder, is easily disassembled with a screwdriver or with minimal force, thereby exposing the ignition switch.

1295. *Fifth*, in a truly modern take on a decades old technique to steal a car, these thieves found that the ignition switch fits perfectly into the end of a USB cable, which has become ubiquitous in vehicles today, and can start with a simple twist. While the USB cable end is frequently used, any set of pliers works just as well. Once the ignition switch is turned and the vehicle starts, the steering lock is disengaged.

1296. The simple steps detailed above can be completed by a complete novice thief in less than ninety seconds.[60]

1297. Contrary to Defendants' statements concerning how they employ the latest technology and safety features in their vehicles (*see supra* ¶¶ 1207, 1211), the automotive news website *The Drive* noted that the Theft Prone Defect allows thieves to start the engines and steal the cars with "the same trick [used] on a car from the 1980s."[61]

1298. In a February 3, 2021 *Milwaukee Journal-Sentinel* article, one repair shop owner noted that the rise in Hyundai and Kia thefts was due to the fact that the

---

[60] *See* https://www.tmj4.com/news/local-news/mpd-hyundai-and-kia-vehicles-too-easy-to-steal-leading-to-spike-in-car-thefts (last accessed March 22, 2022).

[61] https://www.thedrive.com/news/how-thieves-are-stealing-hyundais-and-kias-with-just-a-usb-cable (last accessed Aug. 26, 2022).

cars "are easy to steal, and young people have figured that out[.]"[62] The business owner commented that "thieves know they can break the back window without setting off an alarm, unlock the door, quickly peel back the steering column, and either use a screwdriver or a USB port to crank the car and go." Another body shop owner in Waukesha, Wisconsin noted that he is seeing multiple Kia and Hyundai vehicles brought into his shop for repairs every week and that "[t]he thieves … are quite consistent" in the way they steal and damage the vehicle.[63]

1299. In a complaint filed by a Class Member with NHTSA, the owner noted that his vehicle was stolen and he could not comprehend how Kia sold a vehicle that could be stolen by "children":[64]

> Hello, My Kia was stolen last night. The criminals apparently the "KIA BOYS" took my car, it wasn't until after I spoke with my daughter she expressed to me that she saw a video on social media about Kia's and another car, being stolen excessively. So after doing my research I was sent to this page to share my story. I am sure Kia is aware of the situation, so much so to where they are/have made a change in their 2022 model. But those of use who have a Kia model that is not a 2022, we are screwed. ***I make monthly payments on a vehicle engineered by adults, but what I've just found out is the criminals are mainly middle school age children who takes the cars for a joy ride. It is hard to process this oversight by Kia***, I love my car, I've had 2 Kias. But this will be my last. Especially if they (Kia) doesn't own this oversight. To have my car stolen hurts, I didn't leave the key in, nor the door unlocked. I parked my car, activated my alarm, only to wake up and my car gone.

1300. Notably, while the Milwaukee teenagers publicized the Theft Prone Defect on social media platforms, these design and/or manufacturing flaws have existed since the Class Vehicles were first sold and have allowed amateur and professional thieves to steal the Vehicles with little effort for over a decade.

---

[62] https://www.jsonline.com/story/news/solutions/2021/02/03/motor-vehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/ (last accessed March 22, 2023).

[63] https://www.wisn.com/article/critics-question-design-of-kia-hyundai-vehicles-in-massive-theft-spike/36828234 (last accessed March 22, 2023).

[64] NHTSA ID Number: 11472960.

1301.  The Class Vehicles do not comply with FMVSS No. 114 because they do not contain a meaningful anti-theft device, such as an immobilizer or other effective anti-theft features that prevent the normal activation of the vehicle's engine without a valid key. Consequently, the Class Vehicles do not contain starting systems that prevent forward self-mobility of the Vehicles when the key is removed.

### 1.    The Class Vehicles' steering column does not contain a hardened collar or any security feature.

1302.  In 1997, NHTSA noted that it could (and did) guide automobile manufacturers that they can satisfy FMVSS No. 114 and may be entitled to PMR exemptions by installing engine immobilizers and/or "hardened collars that shield the upper and lower casing of the steering column." 62 Fed. Reg 54,152.

1303.  Steering column collars come in a variety of forms, but what they have in common is that they are a piece of metal, or an equally durable material, that locks around the steering column, covering the ignition lock assembly, so that the ignition cylinder cannot be accessed. Because the collar prevents thieves from accessing the ignition cylinder, it's virtually impossible to "hot-wire" a vehicle, even without an immobilizer. Below are two examples of hardened steering column collars:



CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

1304. But Defendants ignored NHTSA's guidance and installed unsecure, flimsy plastic steering column covers, which are made of the same material as the interior door paneling, in each of the Class Vehicles.



1305. The flimsy steering column covers in the Class Vehicles are easily torn apart and in no way equivalent to "hardened collars" described by NHTSA in 1997. The top and bottom pieces of the steering column cover in the Class Vehicles are connected via plastic tabs that "pop off" with minimal force by design.[65]

1306. While hardened steering column collars are not common in modern vehicles, that is because most responsible automobile manufacturers have installed immobilizers as standard features in their vehicles and, therefore, do not need to install hardened column collars.

**2.      The Class Vehicles' ignition lock assembly is woefully insecure.**

1307. The flaws affecting Class Vehicles culminate in the defective design and/or manufacturing of the ignition lock assemblies.

---

[65] *See* https://www.youtube.com/watch?v=bTeVgfPM0Xw (last accessed March 22, 2023).

1308. On information and belief, the ignition lock assemblies in each of the Class Vehicles are attached to the vulnerable steering column. Below is a diagram of the steering column and the ignition lock assembly, which is generally comprised of the ignition cylinder and ignition switch:



1309. The ignition assembly is designed to work as follows. A key is inserted into the lock cylinder, which only fits the correct key. When the correct key is inserted, small actuators in the lock cylinder match up with the key and allow the driver to turn the cylinder. The lock cylinder has a "female" port at the end of the component that connects to the ignition switch's external "male" connector, referred to as a "spade." When the cylinder turns, the female port turns the ignition switch's spade thereby starting the vehicle.

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9



*Exposed female port at the back of ignition cylinder*

10
11
12
13
14
15
16
17
18
19
20
21
22



*Exposed ignition switch spade after ignition cylinder is removed*

1310. Thieves realized decades ago that they do not need to turn the cylinder in order to start a vehicle's engine. Instead, they only need to rotate the vehicle's ignition switch. And if you can easily remove the cylinder, the switch can be turned by using any pair of pliers, a USB connector, or even one's bare hands:

23
24
25
26
27
28

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

*USB cable attached to ignition switch spade and used as makeshift key*

1311. As explained and shown above, the ignition assemblies in the Class Vehicles are located within or attached to the steering column. Although some other manufacturers also install their ignition assemblies within or attached to the steering column, they ensure that the ignition cylinder and switch are not easily exposed and bypassed.

1312. Among the various designs that accomplish this is by placing the ignition cylinder behind the steering wheel. This requires the entire steering wheel to be removed in order to access the cylinder, which is a difficult task that requires specific knowledge of how each vehicle's steering column and wheel is designed, takes considerable time, and is hard to accomplish surreptitiously.

1313. Other manufacturers design the cylinder so that it can only be removed from the ignition assembly, thereby exposing the ignition switch, if a hidden release mechanism (the "pin") that requires special curved tools, is engaged. And some manufacturers fully engrain the ignition cylinder within a metal housing, which can only be removed by drilling a hole into the cylinder and completely destroying the component.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1314. Defendants did not implement *any* of these safeguards for the ignition switches installed in the Class Vehicles. After a thief removes the steering column cover—which, again, has no protective lock or hardened material—the ignition cylinder is exposed. Once the thief has access to the ignition cylinder, the cylinder's release pin is in plain sight and requires no special tools to be removed while preserving the ignition switch.

1315. Below is a picture showing the release pin and housing for the ignition cylinder.



*The red circle on the right is the cylinder release pin and the red circle on the left is the hole that the pin enters to keep the cylinder in place*

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

*YouTube video demonstrating how to trigger the lock cylinder release pin with any basic screwdriver*

1316. Thieves have found that they do not even need to bother using a screwdriver to trigger the lock cylinder's release pin. Instead, they can simply pry the lock cylinder from the ignition assembly. Given the weak plastic housing, thieves can jam a screwdriver into the lock cylinder and shake the component until the cylinder's release pin slips out of the casing hole. This method works just as well triggering the pin from the outside of the cylinder and similarly does not damage the ignition switch.

1317. At that point, once the cylinder is removed the intact ignition switch is exposed, and any set of pliers, a USB cable or one's bare hands can rotate the switch to start the engine.

1318. While the Class Vehicles are believed to contain an ostensible steering lock, the series of design and/or manufacturing flaws above renders the device worthless. As its name implies, steering locks prevent someone from turning the steering wheel when the engine is turned off. The steering lock is designed to

disengage once the ignition switch is turned. Consequently, the purported steering lock is totally ineffective, as anyone can easily neutralize the lock with a USB cable.

1319. Defendants may claim that the presence of their steering lock satisfies FMVSS No. 114, which sets forth minimal performance standards. But Defendants' useless "steering lock" neither prevents "steering" or "forward self-mobility" of Class Vehicles when the key is removed.

**E.      Defendants Failed To Install Adequate Alarm Systems To Deter Theft**

1320. A modern car alarm system consists of: (i) sensors; (ii) a siren or speaker; (iii) a radio receiver; (iv) an alarm control unit; and (v) an auxiliary battery.[66]

1321. There are many types of sensors attached to the alarm system. The door sensor is the most common and foundational. When a door, the hood, or the trunk is opened the sensor is triggered and sends a signal to the control unit.

1322. Because opening a door is just one way among many of entering a locked car, modern alarm systems also include shock sensors. Shock sensors, as its name implies, are triggered when somebody hits, jostles or otherwise physically moves the vehicle.

1323. The final sensors that are typically used to prevent window intrusions are "window" and "pressure" sensors. These sensors are critical because breaking into a car through a window is very common. "A fully equipped car alarm system has a device that senses this intrusion."[67]

1324. Window sensors are usually made up of a microphone installed in the vehicle that is triggered when it detects the sound of glass breaking. Breaking glass produces a distinctive sound frequency, so it is easy to identify.

---

[66] https://auto.howstuffworks.com/car-alarm.htm (last accessed April 10, 2023).

[67] https://auto.howstuffworks.com/car-alarm.htm (last accessed April 10, 2023).

1325.   Pressure sensors are another way of detecting unauthorized entry into the vehicle. When a window glass is broken or a door is opened, the air pressure within the vehicle fluctuates. The pressure sensor is triggered when it detects this change in air pressure.

1326.   When a sensor is triggered, it will send a signal to the alarm system's radio receiver and/or the alarm control unit. The control unit is like a miniature computer that monitors all the sensors, speakers, and radio receiver and is the "brain" of the system. If the control unit receives a signal from one of the sensors, it will sound an audible alarm that is recognizable to bystanders and, typically, distinct for each vehicle. The control unit may also send a signal to flash the headlights. Once the siren sounds the owner or authorized driver of the vehicle can use a key fob to communicate with the radio receiver that interacts with the alarm control unit.

1327.   The alarm system primarily relies on the vehicle's main 12-volt battery, but it also has an auxiliary battery so that it remains functional even when the main battery dies or is disconnected.

1328.   On information and belief, the Class Vehicles' alarm system is deficiently designed because the alarm is not triggered when one or more of the windows are shattered, which is how many thieves enter the vehicle.

1329.   On information and belief, Defendants failed to install pressure sensors and/or one or more of these additional (low cost) design features in the Class Vehicles. Rather, on information and belief, the Class Vehicles are equipped with a basic door alarm system, which allows thieves to enter the vehicles by smashing a window and climbing inside without setting off the alarm.

**F.   Defendants Knowingly Manufactured and Sold Millions of Class Vehicles That Are Easily Stolen In Less Than Ninety Seconds**

1330.   After considerable public outcry and scrutiny, in 2022, Defendants slowly began to acknowledge that their vehicles suffer from the Theft Prone Defect,

and therefore, are easily stolen. But as detailed below, Defendants have known or should have known of the Theft Prone Defect long before they sold the first Class Vehicle.

1331. On information and belief, each Defendant was aware of the Theft Prone Defect and the safety risk it posed to Class Vehicle owners (as well as bystanders), through the following sources, including, but not limited to their (1) presale testing and Safety Standards self-certification process for Class Vehicles; (2) analyses and usage of engine immobilizers in non-Class Vehicles, their PMP petitions, and usage of engine immobilizers in Class Vehicles sold outside the U.S. market; (3) monitoring of Class Vehicle thefts; and (4) monitoring of customer complaints, dealership records, warranty claims, and replacement parts orders.

1332. Further, on information and belief, given the corporate relationships between Defendants, each of them shared the underlying facts on an ongoing basis in real time that should have notified them of the Theft Prone Defect.

**1.    Defendants should have uncovered the Theft Prone Defect through its FMVSS self-certification process and pre-sale testing.**

1333. Defendants are experienced in the design and manufacture of consumer vehicles. As experienced manufacturers, Defendants are aware of applicable Safety Standards, including FMVSS No. 114.

1334. Under 49 U.S.C. § 30115, Defendants are required to certify that each of their vehicles "complies with applicable motor vehicle safety standards."

1335. On information and belief, Defendants employ consultants and engineers that are knowledgeable of FMVSS No. 114 and who are involved in the design, manufacturing, and testing of the Class Vehicles prior to sale to ensure compliance with the Safety Standard.

1336. On information and belief, Defendants also conduct pre-sale tests to verify the parts are free from defects and align with their specifications.

1337. KC conducts expansive presale testing on its vehicles to make sure they "endure over a long time without fault."[68] KC states that it conducts "performance and durability tests" on "all Kia vehicles sold in the U.S." at the California Proving Ground.[69]

1338. HMA claims that its staff "hand check nuts, bolts, cables, wiring and power components before any Hyundai leaves the plant. Then every vehicle is road tested to eliminate squeaks and rattles that can't be detected on the factory floor."[70] Further, HMA states that it has "250 robots, equipped with optical sensors far more sensitive than the human eye, [that] inspect[] every vehicle for quality welds and proper fit. This ensures tight seams and seals, as well as perfect alignment."

1339. HMC states that it conducts "preemptive quality and safety measures from the vehicle development stage"[71]

1340. HMC touts its robust Product Quality Management systems, "based on its "quality philosophy of 'producing defect-free vehicles that will never break down' backed by cutting-edge safety technologies:"[72]

> **Establishing Quality Management System** Hyundai seeks to create "customer safety" values by securing leading quality standards in the global market and strengthening quality management through technical preventive quality activities, among other initiatives. We have established a company-wide integrated quality management system to satisfy customers' diverse quality and safety requirements, …..

---

[68] https://www.kia.com/fj/experience/innovation-story/performance.Kappa.html (last accessed Aug. 29, 2022).

[69] KC 2017 Annual Report, p.58, *available at* https://worldwide.kia.com/int/company/ir/archive/annual-report (last accessed Aug. 26, 2022).

[70] https://www.auto-brochures.com/makes/Hyundai/Entourage/Hyundai_US%20Entourage_2008.pdf (last accessed Aug. 26, 2022).

[71] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed August 24, 2022).

[72] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed Aug. 26, 2022).

**Quality Management Standards and Techniques**
Hyundai has introduced and applied quality management techniques to strengthen its market competitiveness on the basis of "defect-free quality". Our quality management techniques, aimed at providing customers with vehicles of the very highest quality in all fields, such as R&D, production, sales, and services, are supported by the best experts in each field (Man); optimal equipment (Machine); the best parts (Material); the best method (Method); thorough verification (Measurement); and commitment to defect free quality (Moral). ….. We also make continuous efforts to upgrade quality management standards and criteria based on the data collected and analyzed in quality risk management processes, such as quality checks, case studies, and improvements.

**Preemptive Management of Quality Risks** From the early design stage of new vehicle development, Hyundai preemptively inspects and manages parts suppliers as well as its own production process quality. Based on product drawings, we conduct a comprehensive review of parts in terms of functions, structures, reliability, and durability, while carefully analyzing our own processes and those of suppliers before issuing the final approval, thereby eliminating quality risks throughout production processes in advance. In addition to our own verification of test vehicles, Hyundai relies on the test drive opinions of customers and professional quality organizations to identify major issues and carry out improvement activities in parallel. *Moreover, Hyundai holds quality inspection meetings on regular basis, and in particular, on the verge of new car models' mass production, reports the quality risk assessment results and taken measures to the highest level of management.*

**Quality Risk Assessment – Identification and Improvement** Hyundai has established a control tower devoted to the management of vehicle quality risks in the production process. *Whenever a quality risk is detected from information acquired through statistical process control, periodic inspections, and shipment pass rates, the control tower takes the lead in conducting joint investigations and taking the necessary countermeasures*. Also, in order to prevent quality risks from occurring in the vehicle production process, we take thorough preventive measures, such as process management by suppliers, assessment of quality prevention activities, validation of quality inspection equipment, and reliability testing of parts.

…

**Strengthening Quality Verification Capabilities**
Hyundai provides annual training on the roles and major tasks involved in securing its pre-manufacturing quality,

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

manufacturing quality, and ***market quality as a way to strengthen the verification capability of its overall quality value chain***. …. In addition, we offer expert courses on quality verification in collaboration with external educational institutions to verify new technologies following the transition to electrification and to strengthen the verification of quality issues from the customer's point of view.

1341. Through this testing and as part of their 49 U.S.C. § 30115 self-certification process, Defendants should have uncovered the Theft Prone Defect, including that the Vehicles' lack of immobilizers, lack of window alarms, unprotected steering columns, and insecure ignition assemblies rendered the Class Vehicles highly susceptible to theft and do not prevent "steering" or "forward self-mobility" of Class Vehicles when the key is removed.

**2.      Defendants' specific knowledge concerning the efficacy of engine immobilizers and their use of immobilizers in non-Class Vehicles should have notified them of the Theft Prone Defect.**

1342. Defendants have long been aware of the efficacy of immobilizers and other anti-theft technology that Defendants employ in other vehicles that they make and distribute.

1343. HMC and KC sell the very same, or substantially similar, vehicles to the Class Vehicles in other countries, with one major difference: all HMC and KC vehicles sold in Europe (since 1998), Australia (since 2001) and Canada (since 2007) have engine immobilizers. For example, in the 2020 Kia Sportage Owner's Manual for Canada, Kia notes that the "vehicle is equipped with an electronic engine immobilizer system to reduce the risk of unauthorized vehicle use."[73]

1344. Further, Defendants have long known the anti-theft and security benefits offered by immobilizers given that Defendants have incorporated immobilizers as standard technology in select higher-end models and as a feature in higher-end trim packages on other models in the United States.

---

[73] *See, e.g.,* https://www.destinationkia.com/blogs/1016/wp-content/uploads/2019/07/2020-Kia-Sportage-Owners-Manual.pdf (last accessed Aug. 29, 2022).

1345. On March 2, 2007, HATCI, acting on behalf of HMA, petitioned NHTSA for a PMR exemption for the Hyundai Azera vehicle line beginning with model year (MY) 2008. *See* 72 Fed. Reg. 39,661 (July 19, 2007). In that petition, Hyundai stated that it "will install its passive antitheft device as standard equipment on the vehicle line. Features of the antitheft device will include a passive immobilizer consisting of an EMS (engine control unit), SMARTRA (immobilizer unit), an antenna coil and transponder ignition keys." This form of immobilizer was transponder based, which was first introduced in 1996, and already standard in Defendants' competitors' vehicles. *See supra* ¶¶ __ - __. The petition specifically notes that Hyundai "believes that the GM Pass-Key and Ford Securilock devices contain components that are functionally and operationally similar to its device," which have been shown in theft data from the NCIC to produce "*a clear reduction in vehicle thefts* after the introduction of the GM and Ford devices." *Id.*

1346. On October 22, 2007, HATCI, on behalf of Hyundai, submitted a petition for PMR exemption for its luxury Hyundai Genesis vehicle line beginning with MY 2009. 73 Fed. Reg. 4,304, 4,305 (Jan. 24, 2008). That same day, HATCI submitted a PMR exemption petition on behalf of KC (then known as Kia Motors Corporation) for its luxury Kia Amanti vehicle line beginning with MY 2009. 75 Fed. Reg. 1,447, 1,448 (Jan. 11, 2010).

1347. Like the Azera petition, HATCI stated that Defendants would install a passive immobilizer consisting of an EMS (engine control unit), SMARTRA 3 (immobilizer unit), an antenna coil and transponder ignition keys standard in the vehicle lines. *Id*. In both petitions, HATCI again touted the success of immobilizers in GM and Ford vehicles in reducing auto thefts. *Id*. In particular, HATCI reiterated the same statistics touting immobilizers:

> *[Hyundai and HATCI] provided theft rate data for the Chevrolet Camaro and Pontiac Firebird vehicle lines showing a substantial reduction in theft rates comparing the lines between pre- and post introduction of the Pass-Key device.* [Hyundai and HATCI] also provided "percent

reduction" data for theft rates between pre- and post-production years for the Ford Taurus and Mustang, and Oldsmobile Toronado and Riviera vehicle lines normalized to the three-year average of the Camaro and Firebird pre-introduction data. *[Hyundai and HATCI] stated that the data shows a <u>dramatic reduction</u> of theft rates due to the introduction of devices substantially similar to the [Hyundai and Kia] immobilizer device.* Specifically, the Taurus, Mustang, Riviera and Toronado vehicle lines showed a *63, 70, 80 and 58 percent theft rate reduction respectively between pre- and post-introduction of immobilizer devices as standard equipment on these vehicle lines.*

*Id.*

1348. In a petition filed by Hyundai in 2009 for its VI vehicle line, beginning with MY 2011, Hyundai stated it will "install its passive Smart-key Immobilizer device and alarm system (audible and visual) on the VI vehicle line as standard equipment." 75 Fed. Reg. 6,253 (Feb. 8. 2010). In support of its petition, Hyundai relied on an "April 2006 report by JP Research, Inc., which concluded that antitheft devices were consistently much more effective in reducing thefts when compared to parts marking."

1349. In particular, the cited JP Research report found that vehicle lines containing antitheft devices "*were 70% more effective than parts marking in deterring theft*." Hyundai's petition also relied on theft data from other manufacturer's vehicle lines (Lincoln Town Car, Chrysler Town and Country, Mazda MX–5 Miata and Mazda 3) that have been exempted from the theft prevention standard. Hyundai noted that "[t]heft rates for the Lincoln Town Car, Chrysler Town and Country, Mazda MX–5 Miata and Mazda 3 all are below the median theft rate of 3.5826." Further, Hyundai touted the success of its immobilizers in its Azera model, stating:

Hyundai also compared the theft rates for its Azera model which has been installed with an antitheft device as standard equipment since (MY 2006) and was granted an exemption from the theft prevention standard in MY 2008 to the overall theft rate reported by NHTSA for model years (MYs') 2006 and 2007. The theft rate for the MY 2006 Hyundai Azera was 0.7758 which was

comparatively lower than the overall theft rate of 2.08 for MY 2006. The theft rate for the MY 2007 Azera was 1.8003, also comparatively lower than the overall theft rate of 1.86 for MY 2007. *Conclusively, Hyundai stated that it believes the data indicate that installation of antitheft devices are effective in reducing thefts*.

1350. On September 8, 2016, and January 22, 2017, HATCI, on behalf of HMA and KA, respectively, submitted PMR exemption petitions for two hybrid electric vehicle lines, the MY 2017 Hyundai Ioniq and the MY 2018 Kia Niro. *See* 82 Fed. Reg. 22,051, 22,048 (May 11, 2017) 82 Fed. Reg. 22,048 (May 11, 2017). As part of these petitions, HATCI again touted the JP Research Report's conclusion that antitheft devices "were 70% more effective than parts marking in deterring theft."

1351. Accordingly, Defendants possessed, analyzed, and explicitly relied on factual data pertaining to the rate of thefts in vehicles with and without immobilizers. Moreover, Defendants' PMR petitions show that they were aware that immobilizers had become standard safety components in the industry and meaningfully eliminated the risk of thieves bypassing ignition locks.

1352. Defendants thus were keenly aware of the disparate risk created by their decision not to install immobilizers in the Class Vehicles years before the first Class Vehicle was sold and the current theft epidemic began to plague Class Members nationwide.

**3.   Defendants were on notice of the Theft Prone Defect from their efforts to monitor Class Vehicle thefts, which have occurred at a shocking rate.**

1353. In addition to the research cited in Defendants' PMR petitions, publicly available information concerning vehicle thefts in the United States over the last decade notified Defendants as to the extent of the issue created by the Theft Prone Defect.

1354. For years, Class Vehicles have suffered high rates of thefts. But the number of reported Class Vehicle thefts would skyrocket in 2020 when the existence of the Theft Prone Defect began to circulate on social media.

1355. While the rate of Class Vehicle thefts exploded in 2020, the Class Vehicles have always suffered from the Theft Prone Defect, and as a result, have been among the most stolen vehicles in the nation for a decade.

1356. As shown *supra* ¶¶ 1204-1205, beginning around 2010, Hyundai and Kia started to increase the number of vehicles sold in the U.S.—built upon their marketing campaigns concerning the safety and reliability of their vehicles.

1357. Coinciding with the growth in sales of Hyundai and Kia vehicles and the prevalence of Class Vehicles on U.S. streets, more and more of Defendants' vehicles began to appear in crime statistics.

1358. Every year since 2007, the NCIB publishes its "Hot Wheels" report that identifies the most stolen vehicles in the United States.[74] The report examines vehicle theft data submitted by law enforcement to the NCIC and determines the vehicle make, model and model year most reported stolen each year. In fact, the NCIC data relied on by the NICB was utilized by Defendants when seeking PMR exemptions. *See* 72 Fed. Reg. 39,661.

1359. Hyundai and Kia Class Vehicles first made the cut in a Hot Wheels report in 2013, when the 2013 Hyundai Elantra was listed as the sixth most stolen new car in 2013.[75] The 2013 Elantra did not, however, make the list of top-10 best selling vehicles that year.[76] Accordingly, the 2013 Elantra was stolen at a disproportionate rate.

---

[74] *See* https://www.nicb.org/news/blog/hot-wheels-americas-10-most-stolen-vehicles (last accessed Aug. 26, 2022).

[75] https://www.nicb.org/sites/files/2017-10/2013-Hot-Wheels-Report.pdf (last accessed Aug. 29, 2022).

[76] https://www.edmunds.com/car-reviews/top-10/top-10-best-selling-vehicles-for-2013.html (last accessed Aug. 29, 2022).

1360. The 2015 Hot Wheels report named the 2015 Hyundai Sonata as the seventh most stolen new vehicle that year, the 2013 Hyundai Sonata was identified as the tenth most stolen vehicle in Maryland, and the 2015 Hyundai Elantra made the list as the third most stolen vehicle in Vermont.[77]

1361. The 2016 Hot Wheels report named the 2016 Hyundai Sonata the sixth most stolen new car in the United States, followed by the 2016 Hyundai Elantra in eighth place.[78] Additionally, the 2011 Sonata was the eighth most stolen vehicle in Delaware, the 2016 Hyundai Sonata was the eighth most stolen vehicle in Florida, the 2013 Hyundai Sonata was the seventh most stolen vehicle in Maryland, and the 2014 Hyundai Sonata was the ninth most stolen vehicle in Rhode Island.

1362. The 2017 Hot Wheels report identified the 2017 Hyundai Elantra as the fourth most stolen new car in the United States and the 2017 Hyundai Sonata as the tenth most stolen new car.[79] Defendants fared no better in the state report: the 2011 Sonata was the ninth most stolen vehicle in Connecticut; the 2013 Sonata and 2016 Elantra were fourth and sixth, respectively, on Delaware's most stolen cars list; the 2016 Sonata checked in at No. 6 on Washington D.C.'s most stolen cars list; the 2016 Sonata and 2017 Elantra were eighth and tenth, respectively, on Florida's most stolen cars list; the 2013 Elantra was the eighth most stolen car in Maine; the 2013 Sonata was the seventh most stolen car in Maryland; the 2017 Hyundai Sonata was the eighth most stolen car in New York; the 2013 Hyundai Sonata was the ninth most stolen car in North Carolina; and the 2013 Hyundai Sonata was the eighth most stolen car in Virginia.

---

[77] https://www.nicb.org/sites/files/2017-11/2015-Hot-Wheels-Report.pdf (last accessed Aug. 29, 2022)

[78] https://www.nicb.org/sites/files/2017-11/2016-Hot-Wheels-Report.pdf (last accessed Aug. 29, 2022).

[79] https://www.nicb.org/sites/files/2019-06/HotWheelsReleaseFINAL18 WEB.pdf (last accessed Aug. 29, 2022).

1363. Defendants were also frequently named in the 2018 Hot Wheels report, including: the 2018 Hyundai Elantra as the sixth most stolen new vehicle in the country; the 2011 Hyundai Sonata and 2015 Hyundai Elantra were seventh and ninth, respectively, on Washington D.C.'s most stolen cars list; the 2013 Hyundai Sonata and 2017 Hyundai Elantra were eighth and tenth on Florida's list; the 2013 Hyundai Sonata and the 2017 Hyundai Accent were sixth and ninth, respectively, on Maine's list; the 2013 Hyundai Sonata and 2018 Hyundai Elantra were ninth and tenth, respectively, on Maryland's list; the 2018 Hyundai Elantra was the tenth most stolen car in Nevada; the 2017 Hyundai Sonata was the third most stolen car in New Mexico; the 2011 Hyundai Sonata was the eighth most stolen car in North Carolina; the 2017 Hyundai Sonata was the seventh most stolen car in Rhode Island; the 2013 Hyundai Sonata was the tenth most stolen car in Virginia; and the 2015 Kia was the sixth most stolen car in New Mexico.[80]

1364. In the 2019 Hot Wheels report, Defendants earned the following distinctions: the 2011 Hyundai Sonata was named the eighth most stolen vehicle in Connecticut; the 2013 Hyundai Sonata was named fifth most stolen vehicle in Delaware; the 2015 Hyundai Sonata was named tenth most stolen vehicle in the District of Columbia; the 2013 Hyundai Sonata was named eighth most stolen vehicle in Florida, followed by the 2017 Hyundai Elantra in ninth place in the state; the 2017 Hyundai Elantra was named eighth most stolen vehicle in Maryland, followed by the 2013 Hyundai Sonata in ninth place in the state; the 2014 Hyundai Elantra was named the eighth most stolen vehicle in New Hampshire; the 2015 Hyundai Sonata was named third most stolen vehicle in New Mexico, followed by 2015 Kia Optima in fifth, and the 2013 Hyundai Elantra in eighth; the 2011

---

[80]https://www.nicb.org/sites/files/2020-01/2018%20Hot%20Wheels%20Report.pdf (last accessed Aug. 29, 2022).

Hyundai Sonata was identified as the tenth most stolen vehicle in North Carolina; and the 20018 Hyundai Elantra was the sixth most stolen vehicle in Wyoming.[81]

1365.  The 2020 Hot Wheels report begins to reveal the explosion in public knowledge of the Theft Prone Defect.[82] In particular, the report identifies the following Class Vehicles: the 2017/2016 Hyundai Sonata and the 2015 Kia Optima as the eighth and tenth, respectively, as the most stolen vehicles in Colorado; the 2015 Hyundai Sonata was the ninth most stolen vehicle in Connecticut; the 2012 Hyundai Sonata was the tenth most stolen vehicle in Delaware; the 2011 Hyundai Sonata was the sixth most stolen vehicle in Washington D.C., while the 2018 Hyundai Elantra was the eighth most stolen vehicle in the District; the 2011 Hyundai Sonata was the ninth most stolen vehicle in Florida; the 2013 Hyundai Sonata and 2017 Hyundai Elantra were seventh and ninth, respectively, for Maryland; the 2019 Hyundai Elantra was the tenth most stolen car in Massachusetts; the 2019 Kia Forte was the ninth most stolen car in New Hampshire; the 2013 Hyundai Elantra, 2015 Hyundai Sonata, and 2015 Kia Optima were the third, fifth, and seventh, respectively, most stolen cars in New Mexico; the 2019 Hyundai Elantra was the ninth most stolen car in Pennsylvania; the 2013 Hyundai Accent was third, the 2019 Kia Rio was fourth, the 2019 Kia Soul was fifth, the 2017 Hyundai Tucson was seventh, and the 2017 Hyundai Elantra was the eighth most stolen cars in Puerto Rico; the 2019 Hyundai Elantra was the seventh most stolen vehicle in Rhode Island; the 2013 Hyundai Elantra and 2013 Hyundai Sonata were the eighth and tenth, respectively, most stolen vehicles in Virginia; and the 2011 Hyundai Sonata was the seventh most stolen vehicle in Wisconsin.

1366.  As expected, Defendants made a dominant showing on the 2021 Hot Wheels report: the 2017 Hyundai Sonata was fifth in Colorado, followed by the

[81] https://www.nicb.org/sites/files/2020-10/2019_State_Top10Report_01wTT.pdf (last accessed Aug. 29, 2022).

[82] https://www.nicb.org/news/news-releases/nicb-releases-annual-hot-wheels-report-americas-top-ten-most-stolen-vehicles (last accessed Aug. 29, 2022).

2015 Kia Optima in sixth and the 2017 Kia Sportage in ninth; the 2015 Kia Optima was the tenth most stolen vehicle in California; the 2020 Hyundai Elantra was tenth on Connecticut's list; the 2013 Hyundai Sonata was sixth for Delaware, followed by the 2013 Hyundai Elantra; the 2018 Hyundai Elantra and 2011 Hyundai Sonata were seventh and eighth, respectively, for the District of Columbia; the 2017 Hyundai Elantra and 2015 Hyundai Sonata were eighth and tenth, respectively, for Maryland; the 2015 Hyundai Sonata, 2018 Hyundai Elantra, and 2015 Kia Optima were named fourth, sixth, and seventh, respectively, for New Mexico; the 2013 Hyundai Sonata was ninth for North Carolina; the 2020 Hyundai Elantra and 2011 Hyundai Sonata were eighth and tenth, respectively, in Pennsylvania; the 2017 Hyundai Tucson was third in Puerto Rico, followed by the 2018 Kia Soul in fourth, the 2019 Hyundai Accent in sixth, the 2019 Kia Rio in seventh, 2020 Kia Sedona in eighth, and the 2019 Kia Forte in tenth; the 2013/2011 Hyundai Sonata was tenth for Rhode Island; the 2013 Hyundai Elantra was tenth in West Virginia; and the 2021/2016 Kia Forte was tenth in Vermont.[83]

1367. The 2021 Hot Wheels report for Wisconsin provides a dark picture for Class Vehicle owners and does not bode well for Defendants and Class Members across the rest of the nation when 2022 statistics are released. In Wisconsin, Hyundai and Kia vehicles took the first seven spots for the most stolen vehicles in the state, far exceeding its competitors:

1368. The data disclosed in the NCIB's Hot Wheels reports is corroborated in insurance data.

---

[83] https://www.nicb.org/news/news-releases/chevrolet-and-ford-full-size-pick-ups-most-stolen-vehicles-second-year-row (last accessed Aug. 29, 2022); https://www.nicb.org/sites/files/2022-07/Hot%20Wheels_Top%2010%20By%20State.pdf (last accessed Aug. 29, 2022).

1369. In September 2022, the HLDI, which collects information on insurance claims, revealed that "2015-2019 Hyundai and Kia models are roughly twice as likely to be stolen as other vehicles of similar age."[84]

1370. The nationwide and statewide data reported in the Hot Wheels reports and the HLDI's data are also substantiated in the crime statistics reported by cities and municipalities across the country since 2021.

1371. In just the first six months of 2021, Hyundai thefts were up more than 1,700% year-over-year in Milwaukee, while Kia thefts increased by almost 3,200%.[85]

1372. In July 2022, St. Louis reported 669 stolen Hyundai and vehicles for the first six as of June 30, 2022, compared to 137 vehicles over same period in 2021, an increase of 388%. In the month of July alone, the city reported 78 Hyundai and 68 Kia vehicles as stolen.

1373. St. Paul, Minnesota reported that as of June 30, 2022, there were 256 thefts involving Kia vehicles, as compared to 18 thefts in the first six months of 2021, a staggering 1,300% increase.[86] And Hyundai thefts increased from 31 reports to 212 over the same period, an increase of nearly 600%.

1374. St. Petersburg, Florida police reported that 41% of vehicles stolen in approximately the first six months of 2022 were Hyundai and Kia vehicles.[87] A detective in the police department explained the dramatic percentage of Class Vehicles stolen: "What the thieves are doing is they're defeating the steering

[84] https://www.cnn.com/2022/09/22/business/hldi-hyundai-kia-theft/index.html (last accessed April 10, 2023).

[85] https://www.kbb.com/car-news/milwaukee-police-report-hyundais-kias-stolen-in-record-numbers/ (last accessed Aug. 26, 2022).

[86] https://www.fox9.com/news/minneapolis-woman-had-kias-targeted-three-times-in-six-months (last accessed Aug. 26, 2022).

[87] https://www.abcactionnews.com/news/region-pinellas/st-pete-police-warn-about-troubling-car-theft-trend-targeting-kia-hyundai-cars (last accessed Aug. 26, 2022).

column, and they're able to override the ignition mechanism, allowing them to steal the vehicle much more easily and without a key or a key fob[.]"[88] The detective added that the widespread knowledge of the Theft Prone Defect has "trickled its way down south, and it seems that it's like wildfire. It's burning through all the states now[.]"

1375.  In Columbus, Ohio, a total of 4,013 vehicles had been reported stolen to Columbus police from January through July 2022, of which over 38% were either Kia or Hyundai vehicles.[89] In comparison, in 2021, before knowledge of the Theft Prone Defect became widespread in Columbus, Hyundai and Kia vehicles accounted for approximately 10% of stolen vehicle in the city.

1376.  In Cook County, Illinois, 642 Kia and Hyundai vehicles were reported stolen from July 1, 2022, to August 10, 2022, as compared to 74 Kia and Hyundai vehicles stolen over the same period in 2021, an increase of 767%.[90]

1377.  The chart below shows monthly totals of both Hyundai and Kia vehicles reported stolen to Chicago Police from January 1, 2022, through November 30, 2022:[91]

---

[88] *Id.*

[89] https://www.dispatch.com/story/news/2022/07/11/kia-and-hyundai-cars-being-stolen-higher-rates-columbus/7813529001/ (last accessed Aug. 26, 2022).

[90] https://www.cbsnews.com/chicago/news/thefts-of-kias-and-hyundais-are-skyrocketing-up-767-this-summer-in-cook-county/ (last accessed Aug. 26, 2022).

[91] https://www.nbcchicago.com/consumer/safety-advocates-say-hyundai-kias-anti-theft-upgrade-doesnt-go-far-enough/3078577/ (last accessed April 10, 2023).

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT



Chart: Tom Jones, NBC5 · Source: Chicago Police Department · Get the data · Created with Datawrapper

1378.  Seattle reported a year-over-year increase of 720% in Kia thefts for July 2022.[92] Omaha, Nebraska reported a year-over-year increase of 80% in Class Vehicle thefts in 2022.[93]

1379.  And the rate of Class Vehicle thefts shows no signs of falling in 2023. For example, Buffalo, New York reported 350 thefts involving Hyundai and Kia vehicles in the first two months of 2023, which is an increase of over 87% compared to all of 2022.[94]

1380.  The amount of any given vehicle model on the road will impact the frequency of vehicle thefts for that model. But in the case of Hyundai and Kia vehicles, which make up a relatively small percentage of vehicles in the United

---

[92] https://spdblotter.seattle.gov/2022/08/15/warning-to-kia-drivers-recent-spike-in-thefts-may-be-tied-to-tiktok-videos/ (last accessed Aug. 26, 2022).

[93] https://omaha.com/news/local/crime-and-courts/omaha-police-link-increase-of-kia-hyundai-thefts-to-social-media-trend/article_1390835a-0eb3-11ed-94f0-47493c6cff0e.html#:~:text=Omaha%20police%20have%20seen%20an%20increase%20in%20the,young%20thieves%20driving%20stolen%20vehicles%2C%20police%20said%20Thursday (last accessed Aug. 26, 2022).

[94] https://www.wgrz.com/article/news/crime/kia-hyundai-theft-victims-speak-out-stolen-car-numbers-soar/71-1d399638-a5cf-44d9-a230-379e76810f96 (last accessed April 10, 2023).

States—approximately 10%,[95] "the theft rates are far out of proportion to their numbers on the road."[96]

1381. In April 2022, it was reported that approximately 33% of all stolen vehicles in Denver are Hyundai or Kia branded.[97]

1382. In November 2022, Hyundai and Kia thefts accounted for 59% of all Chicago motor vehicle thefts.[98]

1383. From January to June 2021, 66% of all vehicles stolen in the Milwaukee were manufactured and sold by Defendants.[99]

1384. The Washington D.C. Metropolitan Police Department reported that Hyundai and Kia vehicles accounted for 44% of all car thefts (176 thefts out of a total of 393) in just the first three weeks of January 2023.[100]

1385. On information and belief, Defendants monitored Class Vehicle theft rates, including the Hot Wheels reports and the underlying NCIC data.

1386. On information and belief, Defendants collected and analyzed its own data sets of theft rates for the Class Vehicles. For instance, Hyundai cited the theft rate for the Azera model line in its 2009 PMR petition for its VI vehicle line. *See* 75 Fed. Reg. 6,253 (Feb. 8. 2010).

---

[95] https://www.coxautoinc.com/market-insights/cox-automotive-analysis-hyundai-motors-q4-2022-u-s-market-performance/#:~:text=Hyundai%2C%20Kia%20Push%20Hyundai%20Motor%20Market%20Share%20to%2010.7%25&text=The%20Hyundai%20brand%20rose%20to,with%204.4%25%20a%20year%20ago. (last accessed March 22, 2023).

[96] https://www.cnn.com/2022/09/22/business/hldi-hyundai-kia-theft/index.html

[97] https://www.imfromdenver.com/why-are-denver-thieves-going-after-hyundais-and-kias/ (last accessed March 22, 2023).

[98] https://www.nbcchicago.com/consumer/safety-advocates-say-hyundai-kias-anti-theft-upgrade-doesnt-go-far-enough/3078577/ (last accessed March 22, 2023).

[99] https://www.wsj.com/articles/too-easy-to-steal-in-milwaukee-car-theft-kia-hyundai-city-council-11642720288 (last accessed Aug. 26, 2022).

[100] https://illinoisattorneygeneral.gov/pressroom/2023_03/AG_Letter_to_Hyundia_and_Kia_final.pdf (last accessed March 22, 2023).

1387. On information and belief, Defendants conducted investigations into the Class Vehicle thefts, which would have shown that the thefts were primarily conducted in a similar manner.

**4.   Defendants knew about the Theft Prone Defect from customer complaints, dealership records, warranty claims, and replacement parts orders.**

1388. After the first Class Vehicle was sold and stolen, Defendants were made aware of the Theft Prone Defect through customer complaints concerning Vehicle thefts, as well as dealership records, warranty claims, and replacement part orders related to repairs necessary to restore these damaged vehicles.

1389. On information and belief, KA's and HMA's customer relations divisions regularly receive and respond directly to customer calls and letters concerning product defects and vehicle thefts.

1390. On information and belief, customers explained to KA's and HMA's customer relations divisions how their Class Vehicles were stolen and/or damaged. Namely, windows were broken, without an alarm sounding, which allowed the thief to enter the car. Once inside, the thief would remove the plastic collar around the steering column, pop out the ignition lock and turn the ignition switch.

1391. On information and belief, HMA and KA provide information relating to customer calls and letters to HMC and KA.

1392. On information and belief, HMA and KA's customer relations departments, which interact with authorized service technicians in order to identify potentially widespread vehicle problems and assist in the diagnosis of vehicle issues, have received numerous reports of the Theft Prone Defect, including the design and/or manufacturing flaws related to the windows, steering column casing, ignition cylinder and switch, and lack of engine immobilizer in Class Vehicles. Customer relations also collects and analyzes field data including, but not limited to, repair requests made at dealerships and service centers, technical reports

1 prepared by engineers that have reviewed vehicles for which warranty coverage is
2 requested, parts sales reports, and warranty claims data.

3     1393. Defendants' warranty departments similarly review and analyze
4 warranty data submitted by their dealerships and authorized technicians in order to
5 identify defect trends in their vehicles. Defendants dictate that when a repair is
6 made under warranty (or warranty coverage is requested), service centers must
7 provide Defendants with detailed documentation of the problem and the fix that
8 describes the complaint, cause, and correction, and also save the broken part in case
9 Defendants later determine to audit the dealership or otherwise verify the warranty
10 repair. For their part, service centers are meticulous about providing this detailed
11 information about in-warranty repairs to Defendants because Defendants will not
12 pay the service centers for the repair if the complaint, cause, and correction are not
13 sufficiently described.

14     1394. The rise in thefts would also be shown in Defendants' customer
15 complaints—both directly and as relayed through their dealers—and replacement
16 part orders for repairs, including windows, steering columns, ignition cylinders and
17 switches, and engine immobilizers.

18     1395. Upon information and belief, each Defendant knew or should have
19 known about the Theft Prone Defect because of the high number of replacement
20 parts likely ordered from Defendants. All HMA and KA service centers are
21 required to order replacement parts, including windows, steering columns, ignition
22 cylinders and switches, and engine immobilizers directly from HMA, HMC, KA, or
23 KC. Other independent vehicle repair shops that service Class Vehicles also order
24 replacement parts directly from Defendants. Defendants routinely monitor part
25 sales reports and are responsible for shipping parts requested by dealerships and
26 technicians. Thus, Defendants all have detailed, accurate, and real-time data
27 regarding the number and frequency of replacement part orders. The increase in
28 orders of auto-parts necessary to fix damage caused by vehicle thefts of the Class

Vehicles was known to all Defendants and should have alerted them to the scope and severity of the Theft Prone Defect.

1396. HMC states that it thoroughly reviews customer complaints as part of its Product Quality Management systems:[101]

> **Quality Mindset Campaign** Hyundai is carrying out the "Quality Mindset Campaign" with the purpose of spreading a quality culture throughout its entire car development, production and sales processes, while its employees internalize the quality first mindset. ***The campaign serves as an opportunity for the company to listen directly to voice of customers (VOCs) on quality issues through various initiatives***… Based on the VOC, Hyundai is conducting the New Vehicle Quality Assurance Program, among others, as a way to deliver products of perfect quality to its customers. We will continue to promote various quality improvement activities by promoting close communication with customers and their active participation.
>
> ….
>
> **Quality Assurance and Management** Hyundai strives to enhance its quality assurance and management for the safety and protection of customers after product sales as well as quality management from vehicle development to production, thereby ensuring safety of customers and happiness of their families. In addition, ***we take quality improvement measures aimed at boosting customer satisfaction by identifying customers' specific complaints, while continuously reinforcing maintainability by evaluating the consistency of maintenance services and improving diagnosis methods, among others***.

1397. Further, as part of a 2014 Consent Decree entered into by HMA and HATCI with NHTSA, HMA "commit[ed] and agree[ed] to … [make] corporate organizational and process improvements" including the creation of a U.S. Technical Committee to review and make decisions regarding potential safety

---

[101] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed Aug. 26, 2022).

recalls. The head of the U.S. Technical Committee was also granted "direct access to the board of directors and the Chief Executive Officer ('CEO') of [HMA]."[102]

1398. On information and belief, the customer relations and warranty divisions of Defendants interact with one another and discuss potential issues in Hyundai and Kia vehicles which share components and designs.

1399. On information and belief, the engineering offices, safety offices, and safety investigators of Defendants interact with one another and discuss potential issues in Hyundai and Kia vehicles which share components and designs.

1400. Through these sources, Defendants were made aware of the Theft Prone Defect and had knowledge of its potential danger.

### G. The Theft Prone Defect Has Caused Plaintiffs And Class Members To Suffer A Multitude Of Harms

#### 1. Precisely as NHTSA warned over fifty years ago, the Theft Prone Defect creates a substantial safety risks.

1401. The safety risks created by the Theft Prone Defect could not be more serious. In fact, there have already been reports of fatalities involving Class Vehicles taken for joy rides, including the death of a 70-year-old bystander.[103] In another incident, a 16-year-old boy was killed after the Class Vehicle he stole was involved in a head-on crash following a police chase.[104] Of his two 12-year-old passengers, one was in critical condition when taken to a hospital; the other suffered two broken legs.

---

[102] https://www.nhtsa.gov/sites/nhtsa.gov/files/2021-11/TQ14-002-Hyundai-Consent-Order-8-7-2014-tag.pdf (last accessed Aug. 26, 2022).

[103] https://www.fox9.com/news/minneapolis-woman-had-kias-targeted-three-times-in-six-months (last accessed Aug. 26, 2022).

[104] https://www.wisn.com/article/teen-car-theft-suspect-killed-in-head-on-crash-5-others-injured/36741640 (last accessed Aug. 26, 2022).

1402. A police commander in Columbus, Ohio noted that, in addition to bystanders, police officers "are being put at risk to chase these cars down and stop this from happening[.]"[105]

1403. A coalition of 22 attorneys general noted in a letter to HMA and KA, dated March 20, 2023, that Class Vehicle "thefts often result in more than simple property crimes."[106] The letter cited several incidents that resulted in fatal injuries, including an incident where "four teens were killed after the stolen Kia they were riding in crashed into an embankment at high speed."

1404. The attorneys general also warned that stolen Class Vehicles have been used to "smash through the walls of business in order to rob them."[107] Moreover, given the ease in which a criminal can anonymously steal a Class Vehicle they are frequently used in connection with "robberies, shootings, and homicides."[108]

1405. As just one example, a group of eight thieves in Michigan, stole a Kia SUV and crashed it into the exterior wall of a gun store.[109] The thieves exited the vehicle and went through the store strategically picking out 50 of the "good" and "expensive" weapons. In an interview with the media after the incident, the owner of the store was at a loss for words when discussing the seriousness of the incident: "It hurts, it truly does hurt because whatever they do with the guns, we don't know what they're going to do, where they're going to do it at. It's just terrible."

---

[105] https://www.dispatch.com/story/news/2022/07/11/kia-and-hyundai-cars-being-stolen-higher-rates-columbus/7813529001/ (last accessed Aug. 26, 2022).

[106] https://illinoisattorneygeneral.gov/pressroom/2023_03/AG_Letter_to_Hyundia_and_Kia_final.pdf (last accessed March 22, 2023).

[107] https://illinoisattorneygeneral.gov/pressroom/2023_03/AG_Letter_to_Hyundia_and_Kia_final.pdf (last accessed March 22, 2023).

[108] https://illinoisattorneygeneral.gov/pressroom/2023_03/AG_Letter_to_Hyundia_and_Kia_final.pdf (last accessed March 22, 2023).

[109] https://www.fox2detroit.com/news/thieves-crash-stolen-kia-through-westland-gun-store-steal-50-firearms (last accessed March 22, 2023).

1406. Police in St. Louis reported that in 2022, two thieves stole Class Vehicles (one a Hyundai, the other a Kia).[110] The thieves entered a busy intersection when they began to have a shootout, leaving a teenager with gunshot wound.

1407. The epidemic of Class Vehicles has created a sense of lawlessness in many cities. A woman in St. Louis County was charged with murder after she tracked down her stolen Hyundai and killed two men.[111]

**2.      Stolen Class Vehicles sustain thousands of dollars in damages.**

1408. When thieves—particularly, amateur teenagers—steal Class Vehicles, they typically cause thousands of dollars in damage to the vehicle before abandoning them. If a Class Member is lucky enough to recover their vehicle, the first thing that must be done is repair the window and steering column, which can exceed $3,000.[112] But that is not the only expense a Class Vehicle owner incurs after their vehicle is stolen. Because the vehicles are typically stolen by amateurs going on reckless joyrides, damage expenses frequently exceed $10,000.

1409. A Class Member reported to NHTSA that his 2017 Hyundai Tucson was stolen for a joyride and sustained serious damage when "it was crashed into another vehicle during the thieves joyride before they ultimately jumped out the car and abandoned it in an intersection."[113] The owner reported that the incident put his "livelihood… in jeopardy" and that "there is no way [he] would have purchased this vehicle knowing that the car was missing a major safety and anti-theft component."

---

[110] https://www.nytimes.com/2023/03/10/us/car-thefts-kia-challenge-tiktok.html (last accessed March 22, 2023).

[111] https://www.nytimes.com/2023/03/10/us/car-thefts-kia-challenge-tiktok.html (last accessed March 22, 2023).

[112] *See* https://www.jsonline.com/story/news/solutions/2021/02/03/motor-vehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/ (last accessed March 22, 2023).

[113] NHTSA ID Number: 11494936.

1410. A lieutenant with the San Antonio Police Department, noted that its rate that Class Vehicles are recovered "in good condition…[t]hey are [usually] torn up, ripped up, marked on, painted on."[114]

1411. According to statistics collected in connection with the FBI's Uniform Crime Reporting (UCR) Program for 2019, stolen vehicles suffer an average of $8,886.[115] But this statistic likely understates the damage found in Class Vehicles, because unlike many professional thieves that seek to sell stolen vehicles for the highest price, the Class Vehicles are stolen for joyrides, with little regard for their final condition.

1412. Darrell Russell, the director of operations for the NCIB, noted that the way in which thieves take advantage of the Theft Prone Defect to steal Class Vehicles tends to cause excessive damage and is indicative of amateur thieves: "When you forcibly break the ignition, you're causing so much damage that it's not easy to re-VIN and resell the vehicle on the open market[.]"

1413. Plaintiffs' personal experiences highlight the significant cost to repair stolen Class Vehicles.

1414. Yet even after Class Members pay thousands of dollars to repair their vehicles, the vehicles are no more protected from the Theft Prone Defect than they were prior to being stolen. That is because the repair shops only replace the damaged components (e.g., windows and steering columns), they do not install immobilizers. Consequently, repair shops note that they frequently have the same vehicles brought into their shops due to the Theft Prone Defect within months of repair jobs.

1415. One Class Vehicle owner bemoaned that her vehicle was stolen three times in 2022 alone: "We would joke that lightning would not strike three times,

---

[114] https://www.nytimes.com/2023/03/10/us/car-thefts-kia-challenge-tiktok.html (last accessed April 10, 2023).

[115] https://ucr.fbi.gov/crime-in-the-u.s/2019/crime-in-the-u.s.-2019/topic-pages/motor-vehicle-theft (last accessed April 10, 2023).

but I just feel super unlucky … It actually spent like more than 30 days in repairs because 56, the shop that I went to, had so many stolen KIAs that they couldn't get parts in time to fix mine."[116]

1416.   This Class Member's complaint was echoed by a Wisconsin mechanic who noted that due to the quantity and frequency in which Class Vehicles are stolen, the parts necessary to repair the vehicles are "are all on backorder so it's [sic] might take a few weeks" to complete a repair job that otherwise would take a couple of days.[117] Another mechanic noted that he too was having difficulty acquiring the parts needed to repair Class Vehicles, as there is a national backorder of up to eight weeks in some cases.[118]

1417.   On information and belief, authorized HMA and KA dealerships also suffer from backorders and are unable to repair stolen Class Vehicles in a timely manner.

1418.   Moreover, approximately 31% of drivers do not have any theft coverage for their vehicles.[119] If these drivers are lucky enough to recover their stolen Class Vehicle, they are left with thousands of dollars in unreimbursed expenses.

1419.   Insured owners and lessees of Class Vehicles do not come off unharmed when their vehicle is stolen either. The average deductible for insurance policies in the United States is $500.[120] For example, when Plaintiffs Ian Michael

---

[116] https://www.fox35orlando.com/news/kia-hyundai-car-thefts-florida-police-seeing-increase-in-vehicle-thefts-of-older-models (last accessed Aug. 26, 2022).

[117] https://www.wisn.com/article/critics-question-design-of-kia-hyundai-vehicles-in-massive-theft-spike/36828234 (last accessed March 22, 2023).

[118] https://www.jsonline.com/story/news/solutions/2021/02/03/motor-vehicle-thefts-up-152-milwaukee-so-far-2021/4266701001/ (last accessed Aug. 26, 2022).

[119] *See* https://www.iii.org/fact-statistic/facts-statistics-uninsured-motorists; (last accessed March 20, 2023); https://www.iii.org/fact-statistic/facts-statistics-auto-insurance (last accessed March 20, 2023).

[120] *See* https://www.caranddriver.com/car-insurance/a35824412/average-car-insurance-deductible/ (last accessed March 22, 2023).

Scott, Miyoshi Morrow, and Mary Kathryn Morrison had their vehicles stolen they were forced to pay $1,500, $1,000, and $1,000, respectively, in policy deductibles.

1420. On information and belief, Class Members have paid tens of millions of dollars in deductibles as a direct result of the Theft Prone Defect.

1421. Finally, not all Class Members are lucky enough to recover their vehicles after they are stolen as a result of the Theft Prone Defect.

1422. On average, approximately 40% of stolen vehicles are never recovered in the United States.[121]

1423. These Class Members suffer the complete loss of value of their Class Vehicles, which can be tens of thousands of dollars. In total, Plaintiffs estimate that Class Members suffered hundreds of millions of dollars in losses relating to uninsured stolen Class Vehicles that were never recovered.

**3.    Class Members suffer damages beyond those to vehicles themselves.**

1424. Class Members suffer substantial damages beyond damage to the stolen vehicles themselves.

1425. *First*, personal property stored within the locked Class Vehicles is rarely found after the vehicles are stolen. Class Members have reported thousands of dollars in such losses, including stolen iPads, laptops, and other expensive electronics.

1426. *Second*, even if the Class Vehicle is recovered, owners will typically go weeks or months before they get back their vehicle in an operable condition. During this time, owners incur hundreds and thousands of dollars in expenses related to rental cars, taxis, and alternative modes of transportation to replace their

---

[121] https://www.nicb.org/news/blog/fbi-releases-new-auto-theft-numbers-nearly-750000-motor-vehicles-stolen-2018 (according to the FBI's 2018 Uniform Crime Report Data, the recovery rate for stolen motor vehicles in 2018 came in at 59.3 percent) (last accessed March 20, 2023).

Class Vehicles. Indeed, this category of damages is made worse by the nationwide backorder of the components necessary to repair the stolen vehicles.

1427.  For example, on August 2, 2022, the owner of a 2019 Hyundai Tucson "locked and parked [the vehicle] in a secure location," only to come back and find out that "someone broke the window, opened the steering column and was able to start the car with simply a USB."[122] After recovering the vehicle, the owner reported that it has "been in the shop for 50 days attempting to repair the damage done by the thieves." The owner noted that the incident has caused significant and various forms of damages, including "tons of money in deductibles, transportation fees, [and] rental coverage."

1428.  Another owner complained on *Reddit* that their 2019 Hyundai was stolen and consequently they needed to pay out of pocket for a rental vehicle, but "still no word on when the parts going to be in."[123]

1429.  *Third*, Class Members are incurring hundreds of dollars in expenses attempting to alleviate the risks caused by the Theft Prone Defect. For example, Class Members have paid for steering wheel locks, aftermarket alarm systems, ignition kill switches, and third party (*i.e.*, less secure) "push to start" features, in the hope of deterring the thieves.[124] Some Class Members have opted to pay HMA over $500 to install third party "security kits."[125] Others have gone as far as to remove the Hyundai and Kia decals from their vehicles and install other logos in their places.[126]

---

[122] NHTSA ID Number: 11485277.

[123] https://www.reddit.com/r/Hyundai/comments/11s6e3x/can_i_join_the_class_action_theft_lawsuit_and_if/ (last accessed March 22, 2023).

[124] https://www.motortrend.com/how-to/jdi-distributors-inc-ghost-key-anti-theft-conversion-kit-review/ (last accessed March 22, 2023).

[125] https://www.caranddriver.com/news/a41477937/hyundai-security-kit-easy-to-steal-models/ (last accessed March 22, 2023).

[126] *See* https://www.reddit.com/r/kia/comments/11he72z/theft_and_kia/ (last accessed March 22, 2023).

1430. *Fourth*, Class Members are reporting that months after their Class Vehicles are stolen, they receive in the mail hundreds of dollars' worth of speeding tickets, red light camera violations, and parking tickets incurred by the thieves.[127]

### 4.    The Theft Prone Defect causes insurance premiums to increase and the loss of necessary insurance coverage.

1431. Among the most critical factors insurance companies look to when pricing policies is the rate of thefts.[128] "Cars that are stolen often … generally have higher rates for comprehensive insurance, the part of an auto policy that pays out when your car is stolen or damaged by something not traffic-related, such as floods, fire and vandalism."[129]

1432. Although not all Class Vehicles are protected with theft coverage, most are. As a result, hundreds of thousands of additional claims were being made to insurance companies as a result of the Theft Prone Defect. For instance, in 2021, theft claims for Hyundai and Kia vehicles jumped by more than 3,000% in dollar terms over 2019.[130]

1433. The increase in theft coverage payouts began to affect insurance companies, which in turn causes Class Members' premiums to increase.

1434. In January 2023, Class Members reported that their annual insurance premiums increased dramatically. For example, American Family Insurance quoted

---

[127] *See* https://www.reddit.com/r/Hyundai/comments/11vlpg0/cleveland_woman_devastated_after_new_antitheft/ (last accessed March 22, 2023).

[128] *See* https://www.nerdwallet.com/article/insurance/how-much-is-car-insurance?trk_channel=web&trk_copy=Average%20Cost%20of%20Car%20Insurance%20for%20March%202023&trk_element=hyperlink&trk_elementPosition=1&trk_location=PostList&trk_subLocation=image-list (last accessed April 10, 2023).

[129] *See* https://www.nerdwallet.com/article/insurance/how-much-is-car-insurance?trk_channel=web&trk_copy=Average%20Cost%20of%20Car%20Insurance%20for%20March%202023&trk_element=hyperlink&trk_elementPosition=1&trk_location=PostList&trk_subLocation=image-list (last accessed March 22, 2023).

[130] *See* https://www.cnn.com/2022/09/22/business/hldi-hyundai-kia-theft/index.html (last accessed March 22, 2023).

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

a Class Member an annual rate increase of $300.[131] In 2023, a Class Member complained on *Reddit* that State Farm raised their premiums by $25 a month and another Class Member responded that Liberty Mutual raised their premiums by over $60 a month.[132]

1435. Similarly, Plaintiff Herbert Taylor sought to renew his policy and was quoted $214 per month, an increase of $54 per month.

1436. The rate increases Class Members face defy the normal functioning of insurance markets, where premiums typically decrease with the age and corresponding value of a vehicle.[133]

1437. By January 2023, two of the largest insurance companies in the United States, State Farm and Progressive, ceased offering insurance coverage for certain Class Vehicles.

1438. Commenting on the outsized risk of theft for Class Vehicles, Progressive spokesman, Jeff Sibel, noted that the insurer would increase premiums and ceased issuing policies in certain circumstances:

> During the past year we've seen theft rates for certain Hyundai and Kia vehicles more than triple and in some markets these vehicles are almost 20 times more likely to be stolen than other vehicles… ***Given that we price our policies based on the level of risk they represent, this explosive increase in thefts in many cases makes these vehicles extremely challenging for us to insure.*** In response, in some geographic areas we have increased our rates and limited our sale of new insurance policies on some of these models.[134]

---

[131] https://www.autoblog.com/2023/01/30/insurance-companies-refusing-policies-hyundai-kia-models-thefts/ (last accessed March 22, 2023).

[132] https://www.reddit.com/r/Hyundai/comments/11dloyo/insurance_refuses_to_insure_new_hyundai/ (last accessed March 22, 2023).

[133] *See* https://www.motorbiscuit.com/hyundai-kia-owners-denied-insurance-coverage-theft-exploit/ (last accessed March 22, 2023).

[134] https://www.cnn.com/2023/01/27/business/progressive-state-farm-hyundai-kia/index.html (last accessed March 22, 2023).

1439. Similarly, State Farm noted that it "has temporarily stopped writing new business in some states for certain model years and trim levels of Hyundai and Kia vehicles because theft losses for these vehicles have increased dramatically[.]"[135] State Farm acknowledged that "[t]his is a serious problem impacting our customers and the entire auto insurance industry," but did not reverse its decision.

1440. A representative for the Insurance Information Institute noted that it was very unusual for auto insurers to simply stop writing new policies on a given make or model of vehicle because insurance companies seek to expand their market share, not intentionally constrain growth.[136]

1441. As early as June 21, 2022, a Class Member filed a NHTSA complaint stating that their insurance company denied renewal of their policy due to the vehicle being stolen and vandalized once and "almost stolen a second time."[137]

1442. In February 2023, the owner of a 2020 Hyundai Elantra reported that they "tried getting insurance through All state, Liberty, Progressive, Geico and Pemco. All have said they are not insuring my type of car because of the auto thefts."[138]

1443. Making matters worse, insurance coverage is required in some states to own and operate a vehicle. Accordingly, some Class Members are unable to enjoy the benefit of their bargain when purchasing or leasing a Class Vehicle—namely, as safe and reliable motor vehicle—as a result of the Theft Prone Defect, without violating state law.

---

[135] https://www.cnn.com/2023/01/27/business/progressive-state-farm-hyundai-kia/index.html (last accessed March 22, 2023).

[136] https://www.cnn.com/2023/01/27/business/progressive-state-farm-hyundai-kia/index.html (last accessed March 22, 2023).

[137] NHTSA ID Number: 11470313.

[138] https://www.reddit.com/r/Hyundai/comments/11dloyo/insurance_refuses_to_insure_new_hyundai/ (last accessed March 22. 2023).

1444. Insurance agreements are commonly issued for 6-month terms, so it is inevitable that an increasing number of Class Members will suffer from increased premiums or the failure to obtain insurance coverage for their vehicles over the coming months as old policies expire and have to be renewed.[139]

## 5. The Class Vehicles' resale values are diminished as a result of the Theft Prone Defect.

1445. Plaintiffs and members of the Class purchased or leased Class Vehicles unaware of the Theft Prone Defect, and thus suffered other damages related to their purchase or lease of the Class Vehicles in the form of diminished market value, and loss of the benefit of their bargain as a direct result of Defendants' misrepresentations and omissions regarding the Class Vehicles' characteristics and the existence of the Theft Prone Defect.

1446. No reasonable consumer, including Plaintiffs, would purchase or lease as vehicle, for tens of thousands of dollars, that has an outsized, unmitigated risk of theft, or they would have paid less for their vehicles. Indeed, the diminution in value is even greater now that Class Vehicles are becoming uninsurable, and therefore unfit for their ordinary use.

1447. A certified auto appraiser and insurance expert based in Houston noted the obvious in September 2022, stating that "[y]ou're going to be in for a loss of market value due to these vehicles constantly being stolen."[140]

1448. The loss of value for Class Vehicles as the result of the Theft Prone Defect has been noted by others too. For example, *Nerdwallet* highlighted that even Class Members whose Vehicles have not been stolen suffer as a result of the Theft Prone Defect, "including pricier insurance and reduced resale value on a vehicle

---

[139] *See* https://money.com/car-insurance-kia-hyundai-thefts/ (last accessed March 22. 2023).

[140] https://www.ksdk.com/article/news/local/hyundai-kia-thefts-hit-insurance-appraisal-industry/63-24673a34-d557-452c-9fce-f10d6ce94c02 (last accessed March 22, 2023).

that's known to be easily stolen."[141] The article quotes Christine Hines, legislative director with the National Association of Consumer Advocates, who warned that resale values for Class Vehicles will be impacted due to widespread knowledge of the Theft Prone Defect, stating "[i]t's not going to be worth what it should be worth if they want to sell it, and that's not fair."

1449.  Notably, the diminution in value is even greater in Class Vehicles that have been stolen and suffered significant damages. On average a vehicle that has been in an accident loses $500 to $2,100 of its value.[142]

## H.  Defendants Have Failed To Adequately Remedy The Theft Prone Defect In All Class Vehicles

1450.  Defendants have denied warranty coverage for the Theft Prone Defect, have failed to inform Plaintiffs Class Members that their vehicles contain the Theft Prone Defect, and have refused to reimburse Plaintiffs and Class Members for their losses incurred as a result of the Theft Prone Defect. Furthermore, Class Members who presented their Class Vehicles to HMA and KA dealerships because of issues related to the Theft Prone Defect were denied warranty repairs and, instead, were informed that their vehicles did not contain any defective components.

1451.  Defendants have identified a third-party component that could be installed in the Class Vehicles that "'targets the method of entry thieves are using to access these vehicles' and disables the starter if the alarm is triggered."[143] But Defendants are not repairing Class Vehicles by installing this device. As one Class Member noted in a complaint filed with NHTSA: "Hyundai's alarm is defective which is causing theft, and car jackings. This too is a known safety issue and

---

[141] https://www.nerdwallet.com/article/insurance/kia-hyundai-theft (last accessed March 22, 2023).

[142] https://www.carfax.com/blog/understanding-diminished-car-value-after-an-accident (last accessed March 21, 2023).

[143] https://www.foxnews.com/auto/hyundai-prevent-cars-stolen (last accessed March 21, 2023).

nothing is being done unless she pays $550 for a security feature to be added to the vehicle. This is a problem! Hyundai should pay for this!"[144]

1452.  After news of the Theft Prone Defect became common knowledge and an epidemic of vehicle thefts began to take hold over the country, Defendants announced that going forward, they would install immobilizers in all their vehicles. This change would affect certain 2022 model vehicles and all Hyundai and Kia vehicles from 2023 onward.

1453.  Defendants' recent change in design does not provide any relief to the millions of Class Vehicle owners and lessees presently suffering harm as a result of the Theft Prone Defect.

1454.  In fact, millions of Class Vehicles contain one or more unrelated safety defects that can cause a vehicle to spontaneous erupt in flames when the car is parked. Defendants warn these Class Members that in order to avoid catastrophic fires they must park their vehicles "outside and away from structures until the recall remedy is completed," which can take months.[145] Class Members are therefore forced to decide whether to park their vehicle outside where it faces a high likelihood of theft or risk parking their vehicle in a secure garage where it can cause their home or office to catch fire.

1455.  As stated above, in August 2022, Defendants represented that they developed a security kit that purportedly "'targets the method of entry thieves are using to access these vehicles' and disables the starter if the alarm is triggered."[146] But Defendants did not offer to install this device free of charge, as they are required to do under their warranties and applicable laws and regulations. Instead, Defendants will be charging Class Members for this device. It was reported that

---

[144] NHTSA ID Number: 11505372.

[145] E.g., https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V543-3047.PDF (last accessed March 21, 2023).

[146] https://www.foxnews.com/auto/hyundai-prevent-cars-stolen (last accessed March 21, 2023).

HMA was charging Class Members $170 for the security kit and up to $500 in labor costs.[147]

1456. On February 14, 2023, HMA and Kia announced that they have designed a software update for *certain Class Vehicles* that requires the key to be in the ignition switch to turn the vehicles on and extends the length of the alarm sound from 30 seconds to one minute.[148]

1457. According to HMA, the software works as follows:

> The software upgrade modifies certain vehicle control modules on Hyundai vehicles equipped with standard "turn-key-to-start" ignition systems. As a result, locking the doors with the key fob will set the factory alarm and activate an "ignition kill" feature so the vehicles cannot be started when subjected to the popularized theft mode. Customers must use the key fob to unlock their vehicles to deactivate the "ignition kill" feature.[149]

1458. But the software update is far from the panacea for the Theft Prone Defect that Defendants tout it as because it does not apply to all Class Vehicles. On information and belief, millions of Class Vehicles are ineligible for the software update.

## I.    Fraudulent Omission/Concealment Allegations

1459. Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals employed by Defendants responsible for making false and misleading statements regarding the Class Vehicles. Defendants necessarily are in possession of all of this information. Plaintiffs' claims arise out of Defendants' fraudulent omission/concealment of the Theft Prone Defect, as well as their representations about the quality, reliability, and safety of the Class Vehicles.

---

[147] https://www.caranddriver.com/news/a41477937/hyundai-security-kit-easy-to-steal-models/ (last accessed March 21, 2023).

[148] *See* https://www.nhtsa.gov/press-releases/hyundai-kia-campaign-prevent-vehicle-theft (last accessed March 21, 2023).

[149] https://www.hyundainews.com/en-us/releases/3768 (last accessed March 21, 2023).

1460. Plaintiffs allege that at all relevant times, including specifically at the time they and Class Members purchased their Class Vehicles, Defendants knew, or were reckless in not knowing, of the Theft Prone Defect; Defendants had a duty to disclose the Theft Prone Defect based upon their exclusive knowledge; and Defendants never disclosed the Theft Prone Defect to Plaintiffs or the public at any time or place in any manner prior to 2022.

1461. Plaintiffs make the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendants:

1462. **Who**: each Defendant (HMA, HMC, KA, and KC) actively concealed and omitted the Theft Prone Defect from Plaintiffs and Class Members while simultaneously touting the quality, safety, and dependability of the Class Vehicles, as alleged herein. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals responsible for such decisions.

1463. **What**: that the Class Vehicles contain the Theft Prone Defect, as alleged herein. Defendants concealed and omitted the Theft Prone Defect while making representations about the safety, dependability, and other attributes of the Class Vehicles, as alleged herein.

1464. **When**: Defendants concealed and omitted material information regarding the Theft Prone Defect at all times while making representations about the quality, safety, and dependability of the Class Vehicles on an ongoing basis, and continuing to this day. Defendants still have not disclosed the truth about the full scope of the Theft Prone Defect in the Class Vehicles. And when consumers brought their vehicles to HMA and KA dealerships or called Defendants' respective customer service and warranty departments complaining of the Theft Prone Defect, Defendants denied an adequate repair for the Theft Prone Defect and warranty coverage.

1465. *Where*: Defendants concealed and omitted material information regarding the true nature of the Theft Prone Defect in every communication they had with Plaintiffs and Class Members and made representations about the quality, reliability, and safety of the Class Vehicles. Plaintiffs are aware of no document, communication, or other place or thing, in which Defendant disclosed the truth about the full scope of the Theft Prone Defect in the Class Vehicles prior to 2022. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendants' websites. There are channels through which Defendants could have disclosed the Theft Prone Defect, including, but not limited to: (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Class Members through means such as state vehicle registry lists and e-mail notifications.

1466. *How*: Defendants concealed and omitted the Theft Prone Defect from Plaintiffs and Class Members and made representations about the quality, safety, and dependability of the Class Vehicles. Each Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Theft Prone Defect from Plaintiffs and Class Members at all times, even though they each knew about the Theft Prone Defect and knew that information about the Theft Prone Defect would be important to a reasonable consumer, and Defendants promised in their marketing materials that Class Vehicles have qualities that they do not have.

1467. *Why*: Defendants actively concealed and omitted material information about the Theft Prone Defect in the Class Vehicles for the purpose of inducing Plaintiffs and Class Members to purchase and/or lease Class Vehicles, rather than purchasing or leasing competitors' vehicles, and made representations about the quality, safety, and durability of the Class Vehicles. Had Defendants disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiffs and Class Members (all reasonable consumers) would have been aware of

it, and would not have bought or leased the Class Vehicles or would not have paid as much for them.

**J.     Privity Exists Between Defendants and Plaintiffs and Class Members**

1468. Plaintiffs and Class members purchased and/or leased their respective Class Vehicles from Defendants, through Defendants' authorized dealerships with the understanding that these dealerships were acting on behalf of Defendants, or were otherwise expected to be the eventual purchasers of the Class Vehicles when bought from a third party.

1469. The sole and express purpose that each authorized Kia and Hyundai dealership has when it acquires vehicles from Defendants is to immediately re–sell them to the end–users like Plaintiffs and Class members. Defendants' conduct, and the conduct of their respective dealerships, thus created a justifiable belief on the part of Plaintiffs and Class members that the dealerships are agents of Defendants, which the Plaintiffs relied on to their detriment. Thus, each Hyundai and Kia dealership operates as the actual and/or apparent agent of HMA and KMA respectively, which satisfies any privity requirement.

1470. Privity further exists between Defendants on the one hand, and the Plaintiffs and Class members on the other by virtue of the express warranties provided through their purchase and/or lease agreements.

1471. Defendants also control various details regarding their respective dealerships' operations through various written agreements, such as: (i) granting each dealership a license to use their respective trademarks and intellectual property; (ii) furnishing each dealership with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealerships from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Class Vehicles.

1472. Plaintiffs and the Class members were the intended and direct beneficiaries of agreements between Defendants and their dealerships regarding sales and leases of the Class Vehicles, because, upon information and belief, the agreements expressly were made for the direct benefit of Plaintiffs and Class members as ultimate consumers of the Class Vehicles.

1473. Moreover, Defendants' false and misleading representations in marketing materials and brochures for each of the Class Vehicles, were intended for car purchasers and lessees, rather than the dealerships themselves.

## V.    TOLLING OF STATUTES OF LIMITATIONS

1474. Any applicable statute(s) of limitations have been tolled by HMA's, HMC's, KA's, and KC's knowing and active concealment and denial of the facts alleged herein. Plaintiffs and the members of the Class could not have reasonably discovered the true nature of the Theft Prone Defect because Defendants concealed it. Plaintiffs' claims were thus tolled pursuant to the discovery rule, for fraudulent concealment, and for estoppel.

## A.    Discovery Rule

1475. The causes of action alleged herein did not accrue until Plaintiffs and Class Members discovered that their Class Vehicles contained the Theft Prone Defect.

1476. As alleged above, Class Members had no way of knowing about the Theft Prone Defect in their Class Vehicles. Defendants concealed their knowledge of the Theft Prone Defect while KA and HMA continued to market and sell the Class Vehicles as safe, secure, high-quality, and reliable vehicles. To this day, Defendants failed to disclose the full extent of the Theft Prone Defect and the risks faced by Class Vehicle drivers.

1477. Within any applicable statutes of limitation, Class Members could not have discovered through the exercise of reasonable diligence that Defendants were

concealing the conduct complained of herein and misrepresenting the true qualities of the Class Vehicles.

1478. Class Members did not know facts that would have caused a reasonable person to suspect that there was a Theft Prone Defect affecting their vehicle and an ordinary person would be unable to appreciate that the vehicle was defective. Even if a Class Vehicle owner or lessee learns that their vehicle or another's Class Vehicle was stolen, as an ordinary consumer, without sophisticated knowledge of mechanical systems and antitheft devices, would not and could not suspect that the Class Vehicle that was stolen was, in fact, attributable to a pervasive Theft Prone Defect because Defendants withheld this information and pointed to their express warranties, which purport to disclaim liability for these damages.

1479. For ordinary consumers, the existence and partial extent of the Theft Prone Defect only came to light after media outlets began to cover the abnormal risk of theft for the Class Vehicles in or around 2021.

1480. For these reasons, all applicable statutes of limitation have been tolled by operation of the discovery rule with respect to the claims in this litigation.

**B.    Fraudulent Concealment**

1481. As the manufacturers, distributors, sellers, and/or warrantors of the Class Vehicles, Defendants were under a continuous duty to disclose to Class Members the existence of the Theft Prone Defect found in the Class Vehicles.

1482. Defendants were and remain under a continuing duty to disclose to Plaintiffs and the Members of the Class the true character, quality, and nature of the Class Vehicles, that the Theft Prone Defect found in the Class Vehicles will allow unsophisticated thieves—even juveniles—to steal the vehicle in less than two minutes, that they will require costly repairs, pose safety concerns, cause damage to their personal property, and diminish the resale value of the Class Vehicles.

1483. Instead of publicly disclosing the Theft Prone Defect in the Class Vehicles, Defendants kept owners and lessees in the dark about the Theft Prone Defect present in their vehicles. To this day, Defendants have knowingly or recklessly failed to disclose the full extent of the Theft Prone Defect, including that the Class Vehicles do not comply with FMVSS No. 114, and have failed to offer adequate remedies for the Theft Prone Defect.

1484. Class Members were not at fault for failing to discover the existence of the Theft Prone Defect present in their Class Vehicles.

1485. Until the Theft Prone Defect was exposed to the public known through a series of media coverage as the epidemic exploded in 2021, Plaintiffs had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice of such a connection. In particular, Class Members did not possess the aggregate data concerning vehicle thefts, which was beginning to cluster in specific areas around the United States, or the technical data related to the design of the Class Vehicles, which has ultimately led to this crisis.

1486. This ignorance of the existence of the Theft Prone Defect present in the Class Vehicles is common across each Plaintiff and Class Member.

1487. Due to each Defendant's concealment throughout the time period relevant to this action, all applicable statutes of limitation have been tolled.

**C.      Estoppel**

1488. Defendants were, and are, under a continuous duty to disclose to Plaintiffs and Class Members the true character, quality, and nature of the Class Vehicles. Defendants failed to disclose the existence of the Theft Prone Defect and actively concealed the true character, quality, and nature of the Class Vehicles while knowingly making representations about the quality and reliability of the Vehicles. Plaintiffs and Class Members reasonably relied upon each Defendant's knowing and affirmative representations and/or active concealment of these facts.

Based on the foregoing, each Defendant is estopped from relying on any statutes of limitation in defense of this action.

## VI.   CALIFORNIA LAW APPLIES TO NATIONWIDE CLAIMS

1489. California law applies to Plaintiffs' nationwide claims because Plaintiffs' injuries emanate from HMA's and KA's actions in California. Each pertinent decision related to the decision to conceal the Theft Prone Defect from Class Members, including the marketing, commercial distribution, and attempted Theft Prone Defect repairs for the Class Vehicles in the United States, was made from HMA's and KA's California headquarters by their respective executives and employees located in California.

1490. On information and belief, HMC and KC conducted an investigation into the Theft Prone Defect and potential remedies in California and their subsidiaries' California headquarters.

1491. Defendant HMA is headquartered in Fountain Valley, California and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Hyundai Class Vehicles.

1492. On HMA's website, the company promotes a quote by Brandon Ramirez, Sr., Group Manager of Product Public Relations (who is based in Fountain Valley),[150] which states that "[e]very aspect of a car model, from the initial concept all the way until it launches and even planning the next generation, happens right here in the U.S."[151]

1493. HMA's C-Suite, and employees responsible for HMA's distribution of Class Vehicles, decision to conceal the Theft Prone Defect, HMA's public

---

[150] https://www.linkedin.com/in/brandon-ramirez-b891265 (last accessed Aug. 29, 2022).

[151] https://www.hyundaiusa.com/us/en/why-hyundai/made-in-america?adobe mc=MCMID%3D306036122547715901117361901999937139533%7CMCORGID %3DC3BCE0154FA24300A4C98A1%2540AdobeOrg%7CTS%3D1626118865 (last accessed March 24, 2022).

statements to the U.S. market concerning Class Vehicles, as well as whether to repair the Theft Prone Defect and issue a recall, are also based in California.

1494. José Muñoz serves as the Global Chief Operating Officer of HMC and the President and CEO of HMA.[152] "Based in Hyundai's U.S. headquarters in Fountain Valley, California," Mr. Muñoz oversees the entire American market.

1495. Brian K. Latouf served as the Global Chief Safety Officer of HMA from December 2019 through July 2022, when he was appointed to the same role for HMC.[153] Based in California, Mr. Latouf is responsible for all safety regulation matters, including the strategic legal direction and oversight of all safety investigations and recalls in the U.S., Canada and Mexico.

1496. Wayne Gates serves as Director of Product Analysis Group at HMA.[154] Based in Fountain Valley, California, Mr. Gates oversees, among other things, safety, compliance, and regulatory issues involving Hyundai vehicles, and liaisons with NHTSA regarding Hyundai recalls.[155]

1497. Omar Rivera serves as HMA's Executive Director of Quality and Service Engineering.[156] Based in Fountain Valley, California, Mr. Rivera and his team are responsible for model line engineering and engineering analysis, among other responsibilities.[157]

---

[152] https://www.hyundainews.com/en-us/bios/jose-munoz (last accessed Aug. 29, 2022).

[153] https://www.hyundainews.com/en-us/bios/brian-latouf (last accessed Aug. 29, 2022); https://www.linkedin.com/in/brian-latouf-b6a8b7b4/ (last accessed Aug. 29, 2022); https://www.prnewswire.com/news-releases/hyundai-motor-appoints-brian-latouf-to-lead-new-global-safety-office-301589377.html (last accessed Aug. 29, 2022).

[154] https://www.linkedin.com/in/wayne-gates-b8a85b7/ (last accessed Aug. 29, 2022).

[155] *Id.*; https://static.nhtsa.gov/odi/rcl/2020/RCAK-20V543-1854.pdf (last accessed Aug. 29, 2022).

[156] https://www.hyundainews.com/en-us/bios/omar-rivera (last accessed Aug. 29, 2022).

[157] *Id.*; https://www.linkedin.com/in/omar-rivera-a917363/(last accessed Aug. 29, 2022).

1498. Paul Imhoff serves as Director of Customer Experience at HMA.[158]
Based in California, Mr. Imhoff is responsible for the "customer experience for
Hyundai in the U.S."[159] and "[o]versees all aspects of the customer experience,
from retail processes and after sales improvements to call centers and customer
feedback surveys." Prior to his current role, Mr. Imhoff served as HMA's Director
of Marketing Communications, where he was responsible for brand strategy,
national and regional advertising, experiential marketing, auto shows, branded
content, social media and multicultural marketing.

1499. Danial Kim serves as the Senior Group Manager of North America
Safety Office at HMA at the company's offices in California, and previously served
as a Senior Manager of Engineering & Design Analysis.[160] Mr. Kim serves as
Hyundai's "[l]iaison responsible for corporate compliance with NHTSA
enforcement of potential safety-related product defects." Mr. Kim also
"facilitate[es] product safety recall/campaign decisions in accordance with federal
regulation and guidelines, manage[s] [ ] TREAD compliance program including
EWR reporting, collaboration with ODI in joint product safety investigations, recall
filing and completion reporting, coordinating with overseas R&D, manufacturing,
and service in identifying and closing potential safety defects."

1500. Cole Stutz serves as the Director of Safety Field Investigations at
HMA.[161] Based in Fountain Valley, California, Mr. Stutz liaisons with NHTSA
regarding safety recalls, among other things.[162]

---

[158] https://www.hyundainews.com/en-us/bios/paul-imhoff (last accessed Aug.
29, 2022).

[159] *Id*.; https://www.linkedin.com/in/pimhoff/ (last accessed Aug. 29, 2022).

[160] https://www.linkedin.com/in/daniel-kim-60013228/ (last accessed Aug. 29,
2022).

[161] https://www.linkedin.com/in/cole-stutz-2b7796103/ (last accessed Aug. 29,
2022).

[162] *Id*.; https://static.nhtsa.gov/odi/rcl/2021/RCAK-21V303-6447.pdf (last
accessed Aug. 29, 2022).

1501. Scott Stewart serves as the Senior Group Manager of Safety Field Investigations at HMA and is based at the company's offices in California.[163]

1502. Barry Ratzlaff serves as the Chief Customer Officer of HMA.[164] In this role, he is responsible for Hyundai's customer experience strategy, retail process, sales and service training, product quality and service engineering. Mr. Ratzlaff is a 30-year automotive veteran with roles in manufacturing, quality and product development. Mr. Ratzlaff is based in Fountain Valley, California.

1503. Angela Zepeda serves as the Chief Marketing Officer for HMA.[165] Based in Fountain Valley, California, Ms. Zepeda "is responsible for all of Hyundai's marketing and advertising activities in the U.S., including the strategic direction, brand development, national and regional advertising, experiential marketing, digital and social media, brand partnerships, and lead generation, among other responsibilities."[166]

1504. Randy Parker serves as Chief Executive Officer for HMA.[167] Prior to his promotion in July 2022, Mr. Parker served as Senior Vice President of National Sales at HMA. Mr. Parker is based in Fountain Valley, California, where he was "responsible for all aspects of sales and distribution of Hyundai vehicles in the U.S., including sales strategies, fleet and certified pre-owned operations, dealer relations, market representation, and other related activities with the mission to

---

[163] https://www.linkedin.com/in/scott-stewart-10048094/ (last accessed Aug. 29, 2022).

[164] https://www.hyundainews.com/en-us/bios/barry-ratzlaff (last accessed Aug. 29, 2022); https://www.linkedin.com/in/barry-ratzlaff-54b40811/ (last accessed Aug. 29, 2022).

[165] https://www.hyundainews.com/en-us/bios/angela-zepeda (last accessed Aug. 29, 2022).

[166] *Id.*; https://www.linkedin.com/in/angela-zepeda-8bb8293/ (last accessed Aug. 29, 2022).

[167] https://www.prnewswire.com/news-releases/randy-parker-named-chief-executive-officer-of-hyundai-motor-america-301595523.html (last accessed Aug. 29, 2022).

grow Hyundai sales and market share."[168] Mr. Parker "also overs[aw] Hyundai's seven regions that work directly with Hyundai retailers on sales and service."

1505. Fred DePerez serves as the Vice President of Product Line Management and Sales Planning for HMA.[169] Based in Fountain Valley, California, Mr. DePerez oversees Product Line Management, Sales Planning, and Retail Operations.[170]

1506. Robert Grafton serves as an Executive Director of Dealer Development & Strategy for HMA.[171] Based in Fountain Valley, California, Mr. Grafton is "responsible for managing and implementing the Hyundai dealer network strategy by optimizing retail representation and improving dealer relations."[172]

1507. David VandeLinde is the Vice President of After-Sales for HMA and based in Fountain Valley, California.[173] In this role, Mr. VandeLinde is responsible for leading dealer service programs and operations, parts and accessory sales, and owner marketing. Prior to his current role, Mr. VandeLinde served as the director of Dealer Service Process where he oversaw Hyundai's retail service process, parts planning, parts and service field ops, and parts and service training. Mr. VandeLinde led a team of over fifty team members who were responsible for Service Analytics and Technician Retention. Mr. VandeLinde was also central to

---

[168] *Id.*; https://www.linkedin.com/in/randy-parker-24806232/ (last accessed Aug. 29, 2022); https://web.archive.org/web/20210202225203/https://www.hyundainews.com/en-us/bios/randy-parker (Aug. 29, 2022).

[169] https://www.hyundainews.com/en-us/bios/fred-deperez (last accessed Aug. 29, 2022).

[170] *Id.*; https://www.linkedin.com/in/freddeperez/ (last accessed Aug. 29, 2022).

[171] https://www.hyundainews.com/en-us/bios/robert-grafton (last accessed Aug. 29, 2022).

[172] *Id.*; https://www.linkedin.com/in/robertgrafton/ (last accessed Aug. 29, 2022).

[173] https://www.hyundainews.com/en-us/bios/david-vandelinde (last accessed Aug. 29, 2022); https://www.linkedin.com/in/dave-vandelinde-6b2b2078/ (last accessed Aug. 29, 2022).

HMA "establishing and operationalizing a platform for gathering and publishing
dealer best practices, developing and publishing the first ever Hyundai Service
Process Manual (the Car Care Process Guide), and revolutionizing Hyundai's
approach to field training to be more experiential."

1508. Kate Fabian serves as the director of Marketing Communications for
HMA.[174] Based in Fountain Valley, California, Ms. Fabian "is responsible for brand
strategy and planning, multicultural marketing, media strategy, national and
regional dealer advertising, experiential marketing, branded content and social
media."[175]

1509. Ricky Lao serves as HMA's Director of Product Planning.[176] Based in
Fountain Valley, California, Mr. Lao and his team are "responsible for leading the
product planning process from concept phase through product launch, and
subsequent lifecycle management, for all current and future cars and SUVs
representing the Hyundai North American market."

1510. Additionally, HMA's "Customer Care Center," which handles
customer complaints and warranty inquiries for Hyundai Class Vehicle owners and
lessees, is located in Fountain Valley.[177]

---

[174] https://www.hyundainews.com/en-us/bios/kate-fabian-- (last accessed Aug.
29, 2022).

[175] *Id.*; https://www.linkedin.com/in/kate-fabian-b1150412/ (last accessed Aug.
29, 2022).

[176] https://www.hyundainews.com/en-us/bios/ricky-lao (last accessed Aug. 29,
2022); https://www.linkedin.com/in/ricky-lao-189303/ (last accessed Aug. 29,
2022).

[177]
https://www.hyundaiusa.com/content/dam/hyundai/us/com/pdf/assurance/2021
_Owners_Handbook_Warranty.pdf (Aug. 29, 2022).

1511. On information and belief, HMA's website, including the "Consumer Assistance Center" webpage,[178] is managed by Hyundai's marketing and customer service departments located in Fountain Valley.

1512. In addition to HMA's engineering and safety investigation teams responsible for post-sale investigations located at its Fountain Valley headquarters, HMA conducts pre-sale testing in California, including at its "California Proving Ground" and the "Hyundai Design and Technical Center" located in Irvine.[179] The Hyundai Design and Technical Center is HMA's "90,000-square-foot state-of-the-art facility" and "is home to Hyundai automobile designers, engineers, model-makers and technicians[.]"

1513. Defendant KA is headquartered in Irvine, California and is the sole entity in the United States responsible for distributing, selling, leasing, and warranting Kia vehicles, including the Kia Class Vehicles.

1514. KA's C-Suite, and employees responsible for KA's distribution of Class Vehicles, decision to conceal the Theft Prone Defect, Kia's public statements to the U.S. market concerning Class Vehicles, as well as whether to repair the Theft Prone Defect and issue a recall, are also based in California.

1515. SeungKyu (Sean) Yoon is the President and CEO of KA and is responsible for its strategy and operations in the U.S., including its manufacturing.[180] Mr. Yoon is based at KA's headquarters in Irvine, California.

1516. Russell Wager serves as KA's Vice President of Marketing and oversees all of the company's marketing communications including the marketing

---

[178] https://owners.hyundaiusa.com/us/en/contact-us.html (last accessed Aug. 29, 2022).

[179] *See* https://www.hyundainews.com/en-us/releases/1250; https://www.hyundainews.com/en-us/releases/1251 (last accessed Aug. 29, 2022).

[180] https://www.kiamedia.com/us/en/media/pressreleases/13858/seungkyu-sean-yoon-1 (last accessed Aug. 29, 2022); https://www.linkedin.com/in/seungkyu-sean-yoon-3251b1a9/ (last accessed Aug. 29, 2022); https://www.automotiveworld.com/news-releases/kia-america-debuts-in-us-new-name-replaces-kia-motors-america-as-part-of-kia-corporation-global-brand-strategy/ (last accessed Aug. 29, 2022).

operations, customer journey, and public relations areas.[181] Mr. Wager is based at KA's headquarters in Irvine, California.

1517. J.S. (Jurassic) Park serves as KA's Chief Safety Officer and Vice President of Regulatory Compliance.[182] Based at KA's headquarters in Irvine, California, Mr. Park participates in all safety-recall decision-making for the U.S. market and acts as the company's liaison with NHTSA regarding Kia recalls, among other things.

1518. KA's Regulatory Compliance managers and employees are also located at its headquarters in Irvine, California.[183] The Regulatory Compliance office works with KC and its affiliates (including HATCI) to, *inter alia*, monitor safety regulatory issues and advise on statements made to consumers, including on Monroney labels.

1519. Additionally, KA's "Customer Assistance Center" and Consumer Affairs Department, which handles customer complaints and warranty inquiries for Kia Class Vehicle owners and lessees, is located in Irvine, California.[184]

1520. On information and belief, KA's website, including the "Consumer Assistance Center" webpage,[185] is managed by KA's marketing and customer service departments located in Irvine, California.

---

[181] https://www.kiamedia.com/us/en/media/pressreleases/17221/russell-wager (last accessed Aug. 29, 2022); https://www.linkedin.com/in/russell-wager/ (last accessed Aug. 29, 2022).

[182] https://static.oemdtc.com/Recall/21V447/RCAK-21V447-9829.pdf (last accessed Aug. 29, 2022); https://static.nhtsa.gov/odi/rcl/2020/RCAK-20V518-6959.pdf (last accessed Aug. 29, 2022).

[183] *See* https://www.linkedin.com/jobs/view/regulatory-compliance-manager-at-kia-motors-america-2432082551/?refId=db5aad21-355f-41fe-b515-f22f69d9a0e5&trackingId=61TH90nuMf9kICG1U9DG2A%3D%3D (last accessed Aug. 29, 2022).

[184] https://www.kia.com/us/content/dam/kia/us/en/images/warranty/manual/general-warranty-and-consumer-info/2020_warranty.pdf (last accessed Aug. 29, 2022).

[185] https://ksupport.kiausa.com/ConsumerAffairs (last accessed Aug. 29, 2022).

1521. In addition to KA's engineering and safety investigation teams responsible for post-sale investigations located at its Irvine headquarters, KA conducts pre-sale durability testing in California, including at its "California Proving Ground" and the Hyundai-Kia Design and Technical Center located in Irvine.[186] The "$30 million state-of-the-art" Design and Technical Center "houses more than 100 auto designers, engineers, model makers and technicians."

1522. Finally, while HMC and KC participated in the investigations of the Theft Prone Defect in Hyundai and Kia vehicles, the ultimate decisions concerning whether to recall the Class Vehicles were made by HMA and KA executives at their respective California headquarters.

## VII.   CLASS ALLEGATIONS

1523. Plaintiffs bring this action pursuant to Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure on behalf of themselves and all others similarly situated.

1524. Plaintiffs seek to represent a class ("Hyundai Nationwide Class") under the laws of the State of California defined as:

> All persons or entities that purchased or leased a Hyundai Class Vehicle in the United States.

1525. Plaintiffs seek to represent a class ("Kia Nationwide Class") under the laws of the State of California defined as:

> All persons or entities that purchased or leased a Kia Class Vehicle in the United States.

1526. Class Vehicle is defined as all 2011-2022 Kia vehicles and 2011-2022 Hyundai vehicles which do not contain an engine immobilizer. On information and belief, this includes all Hyundai and Kia models, except for the most expensive trim packages, and following models: Kia Niro (except 2017); Kia Stinger; Hyundai Azera; Hyundai Equus; Hyundai G80; Hyundai Genesis; and Hyundai Ioniq.

---

[186] https://www.hyundainews.com/en-us/releases/1270 (last accessed Aug. 29, 2022).

1527. In addition, and in the alternative to the Nationwide Classes, Plaintiffs seek to represent the following State Subclasses:

**Hyundai Alabama Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Alabama.

**Kia Alabama Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Alabama.

**Hyundai Alaska Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Alaska.

**Kia Alaska Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Alaska.

**Hyundai Arizona Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Arizona.

**Kia Arizona Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Arizona.

**Hyundai Arkansas Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Arkansas.

**Kia Arkansas Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Arkansas.

**Hyundai California Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of California.

**Kia California Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of California.

**Hyundai Colorado Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Colorado.

**Kia Colorado Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Colorado.

**Hyundai Connecticut Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Connecticut.

**Kia Connecticut Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Connecticut.

**Hyundai Delaware Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Delaware.

**Kia Delaware Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Delaware.

**Hyundai Florida Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Florida.

**Kia Florida Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Florida.

**Hyundai Georgia Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Georgia

**Kia Georgia Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Georgia.

**Hyundai Hawaii Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Hawaii.

**Kia Hawaii Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Hawaii.

**Hyundai Idaho Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Idaho

**Kia Idaho Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Idaho

**Hyundai Illinois Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Illinois.

**Kia Illinois Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Illinois.

**Hyundai Indiana Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Indiana.

**Kia Indiana Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Indiana.

**Hyundai Iowa Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Iowa.

**Kia Iowa Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Iowa.

**Hyundai Kansas Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Kansas.

**Kia Kansas Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Kansas.

**Hyundai Kentucky Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Kentucky.

**Kia Kentucky Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Kentucky.

**Hyundai Louisiana Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Louisiana.

**Kia Louisiana Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Louisiana.

**Hyundai Maine Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Maine.

**Kia Maine Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Maine.

**Hyundai Maryland Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Maryland.

**Kia Maryland Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Maryland.

**Hyundai Massachusetts Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Massachusetts.

**Kia Massachusetts Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Massachusetts.

**Hyundai Michigan Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Michigan

**Kia Michigan Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Michigan.

**Hyundai Minnesota Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Minnesota.

**Kia Minnesota Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Minnesota.

**Hyundai Mississippi Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Mississippi.

**Kia Mississippi Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Mississippi.

**Hyundai Missouri Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Missouri.

**Kia Missouri Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Missouri.

**Hyundai Montana Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Montana.

**Kia Montana Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Montana.

**Hyundai Nebraska Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Nebraska.

**Kia Nebraska Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Nebraska.

**Hyundai Nevada Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Nevada.

**Kia Nevada Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Nevada.

**Hyundai New Hampshire Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of New Hampshire.

**Kia New Hampshire Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of New Hampshire.

**Hyundai New Jersey Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of New Jersey.

**Kia New Jersey Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of New Jersey.

**Hyundai New Mexico Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of New Mexico.

**Kia New Mexico Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of New Mexico.

**Hyundai New York Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of New York.

**Kia New York Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of New York.

**Hyundai North Carolina Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of North Carolina.

**Kia North Carolina Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of North Carolina.

**Hyundai North Dakota Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of North Dakota.

**Kia North Dakota Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of North Dakota.

**Hyundai Ohio Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Ohio.

**Kia Ohio Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Ohio.

**Hyundai Oklahoma Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Oklahoma.

**Kia Oklahoma Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Oklahoma.

**Hyundai Oregon Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Oregon.

**Kia Oregon Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Oregon.

**Hyundai Pennsylvania Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Pennsylvania.

**Kia Pennsylvania Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Pennsylvania.

**Hyundai Rhode Island Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Rhode Island.

**Kia Rhode Island Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Rhode Island.

**Hyundai South Carolina Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of South Carolina.

**Kia South Carolina Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of South Carolina.

**Hyundai South Dakota Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of South Dakota.

**Kia South Dakota Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of South Dakota.

**Hyundai Tennessee Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Tennessee.

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

**Kia Tennessee Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Tennessee.

**Hyundai Texas Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Texas.

**Kia Texas Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Texas.

**Hyundai Utah Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Utah.

**Kia Utah Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Utah.

**Hyundai Vermont Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Vermont.

**Kia Vermont Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Vermont.

**Hyundai Virginia Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Virginia.

**Kia Virginia Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Virginia.

**Hyundai Washington Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Washington.

**Kia Washington Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of Washington.

**Hyundai West Virginia Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of West Virginia.

**Kia West Virginia Subclass:**
All persons or entities that purchased or leased a Kia Class Vehicle in the State of West Virginia.

**Hyundai Wisconsin Subclass:**
All persons or entities that purchased or leased a Hyundai Class Vehicle in the State of Wisconsin.

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

**Kia Wisconsin Subclass:**
All persons or entities that purchased or leased a Kia
Class Vehicle in the State of Wisconsin.

**Hyundai Wyoming Subclass:**
All persons or entities that purchased or leased a Hyundai
Class Vehicle in the State of Wyoming.

**Kia Wyoming Subclass:**
All persons or entities that purchased or leased a Kia
Class Vehicle in the State of Wyoming.

1528. The Nationwide Classes and the State Subclasses are collectively referred to herein as the Classes.

1529. Excluded from the Classes are Defendants, their affiliates, employees, officers and directors, persons or entities that purchased the Class Vehicles for resale, and the Judge(s) assigned to this case. Plaintiffs reserve the right to modify, change, or expand the Classes definitions based on discovery and further investigation.

1530. <u>Numerosity</u>: Upon information and belief, the Classes are so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendants and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that at least eight million Class Vehicles have been sold and leased in the United States.

1531. <u>Existence and Predominance of Common Questions of Fact and Law</u>: Common questions of law and fact exist as to all members of the Classes. These questions predominate over the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

   a.    Whether Defendants engaged in the conduct alleged herein;

   b.    Whether Plaintiffs' claims emanate from HMA's and KA's conduct in California;

   c.    Whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Class Vehicles into the stream of

commerce in the United States;

d.    Whether the Class Vehicles were sold with a safety defect;

e.    Whether Defendants knew of the Theft Prone Defect but failed to disclose the problem and its consequences to their customers;

f.    Whether Defendants knew of the Theft Prone Defect but misrepresented the Class Vehicles as safe, reliable, and secure;

g.    Whether a reasonable consumer would consider the Theft Prone Defect or its consequences to be material;

h.    When Defendants discovered the Theft Prone Defect in the Class Vehicles, and what, if anything, they did in response;

i.    Whether Defendants should be required to disclose the existence of the Theft Prone Defect;

j.    Whether Defendants' conduct violates the California Legal Remedies Act, California Unfair Competition Law, and the other statutes asserted herein;

k.    Whether Plaintiffs and Class Members overpaid for their Class Vehicles; and

l.    Whether Plaintiffs and Class Members experienced out-of-pocket losses as a result of the Theft Prone Defect, and if so, how much.

1532. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the Classes because Plaintiffs purchased Class Vehicles with the same Theft Prone Defect as did each member of the Classes. Furthermore, Plaintiffs and all Members of the Classes sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class Members and assert claims, if they had insurance, for all monies paid by their insurance company as a result of the theft or damage to a Class Vehicle resulting

from the manifestation of the Theft Prone Defect, subject to any applicable right of subrogation..

1533. <u>Adequacy</u>: Plaintiffs are adequate representatives because their interests do not conflict with the interests of the Classes that they seek to represent, they have retained counsel competent and highly experienced in complex class action litigation, and they intend to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiffs and their counsel.

1534. <u>Superiority</u>: A class action brought by consumers is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and Members of the Classes. The injury suffered by each individual Class Member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for Members of the Classes individually to redress effectively the wrongs done to them. Even if the Members of the Classes could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, Defendants' vehicle identification numbers, warranty claims, registration records, and database of complaints. Further, allowing insured consumers to proceed on behalf of themselves and any insurance company who paid a loss resulting from the Theft Prone Defect is superior to these claims being split and prosecuted by both

the injured consumer and their insurance company.  In such an instance subrogation rights can be dealt with in the claims processing part of the case.

1535. Defendants have acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

## VIII.  CLAIMS FOR RELIEF

**A.     Nationwide / California Counts**

**1.     Nationwide / California Count 1: Breach of Implied Warranty of Merchantability (Cal. Com. Code §§ 2314 and 10212) Against HMA and KA.**

1536. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1537. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Hyundai Nationwide Class and Hyundai California Class, against HMA.

1538. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Kia Nationwide Class and Kia California Class, against KA.

1539. For purposes of this count, members of the Hyundai Nationwide Class, Hyundai California Class, Kia Nationwide Class, and Kia California Class shall be referred to as "Class Members."

1540. For purposes of this count, HMA and KA shall be referred to as "Defendants."

1541. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Cal. Com. Code §§ 2314 and 10212.

1542. Defendants are and were at all relevant times "merchants" of motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c), and "sellers" of motor vehicles under § 2103(1)(d).

1543. Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

1544. All Class Members who purchased Class Vehicles are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

1545. All Class Members who leased Class Vehicles are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

1546. The Class Vehicles were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

1547. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1548. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1549. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

1550. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1551. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

1552. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect;

however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

1553. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**2. Nationwide / California Count 2: Violations of the California Song-Beverly Consumer Warranty Act for Breach of Implied Warranty of Merchantability (Cal. Civ. Code §§ 1791.1 and 1792) Against HMA and KA.**

1554. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1555. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Hyundai Nationwide Class and Hyundai California Class, against HMA.

1556. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Kia Nationwide Class and Kia California Class, against KA.

1557. For purposes of this count, members of the Hyundai Nationwide Class, Hyundai California Class, Kia Nationwide Class, and Kia California Class shall be referred to as "Class Members."

1558. For purposes of this count, HMA and KA shall be referred to as "Defendants."

1559. Defendants are "manufacturer[s]" of the Class Vehicles within the meaning of Cal. Civ. Code § 1791(j).

1560. Defendants are and were at all relevant times "sellers" of motor vehicles under Cal. Civ. Code § 1791(l).

1561. Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Civ. Code § 1791(i).

1562. All Class Members who purchased Class Vehicles are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

1563. All Class Members who leased Class Vehicles are "lessees" within the meaning of Cal. Civ. Code § 1791(h).

1564. The Class Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

1565. Defendants impliedly warranted to Plaintiffs and Class Members that their Class Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

1566. Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label.

1567. The Class Vehicles would not pass without objection in the automotive trade due to the Theft Prone Defect. Because of the Theft Prone Defect, the Class Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

1568. The Class Vehicles are not adequately labeled because the labeling fails to disclose the Theft Prone Defect. The Class Vehicles do not conform to the promises and affirmations made by Defendants regarding safety, security, quality, and reliability of the Class Vehicles.

1569. As a direct and proximate result of the breaches of the implied warranty of merchantability by Defendants, Plaintiffs' and Class Members' Class

Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles was not remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

1570. Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs and Class Members seek an order enjoining Defendants from continuing their unfair and/or deceptive acts or practices, and for damages, punitive damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

   **3.    Nationwide / California Count 3: False Advertising Under the California False Advertising Law (Cal. Bus. & Prof. Code § 17500, et seq.) Against All Defendants.**

1571. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

1572. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Hyundai Nationwide Class and Hyundai California Class, against HMA and HMC.

1573. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Kia Nationwide Class and Kia California Class, against KA and KC.

1574. For purposes of this count, members of the Hyundai Nationwide Class, Hyundai California Class, Kia Nationwide Class, and Kia California Class shall be referred to as "Class Members."

1575. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Cal. Bus. & Prof. Code § 17506.

1576. The California False Advertising Law ("California FAL") prohibits false advertising. California Bus. & Prof. Code § 17500.

1577. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

1578. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the California FAL in the course of their business. Specifically, they owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1579. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect to consumers, Defendants engaged in untrue and misleading advertising prohibited by California Bus. & Prof. Code § 17500.

1580. Defendants made or caused to be made and disseminated throughout California advertising, marketing, labeling, and other publications containing numerous statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care they should have been known to be untrue and misleading to consumers, including Plaintiffs and Class Members.

1581. Defendants' unfair or deceptive acts and practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles were safe, secure, and reliable, and that they did not contain the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety, and reliability of Class Vehicles, the quality of the Class Vehicles and their brands, and the true value of the Class Vehicles.

1582. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations and omissions that the Class Vehicles were safe, secure, and reliable in deciding to purchase and lease those vehicles.

1583. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that those representations were false and misleading, or

otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1584. Had Plaintiffs and Class Members known the truth about the Theft Prone Defect, they would not have purchased or leased Class Vehicles, or would have paid significantly less for them.

1585. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1586. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. The unlawful acts and practices complained of herein affect the public interest.

1587. Plaintiffs and Class Members seek an order enjoining Defendants' false advertising, any such orders or judgments as may be necessary to restore to Plaintiffs and Class Members any money acquired by unfair competition, including restitution and/or restitutionary disgorgement, and any other just and proper relief available under the false advertising provisions of the California FAL.

1588. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs would have no adequate legal remedy.

4.      **Nationwide/California Count 4: Violation of the California Consumer Legal Remedies Act (Cal. Civ. Code §§ 1750, *et seq.*) Against All Defendants.**

1589. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1590. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Hyundai Nationwide Class and Hyundai California Class, against HMA and HMC.

1591. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Kia Nationwide Class and Kia California Class, against KA and KC.

1592. For purposes of this count, members of the Hyundai Nationwide Class, Hyundai California Class, Kia Nationwide Class, and Kia California Class shall be referred to as "Class Members."

1593. The Class Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

1594. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Cal. Civ. Code § 1761(c).

1595. Plaintiffs and Class Members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

1596. The California Legal Remedies Act ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

1597. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the CLRA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

1598. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the CLRA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to

disclose all the material facts concerning the Theft Prone Defect in the Class

Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about

        facts regarding the Theft Prone Defect and Defendants knew these

        facts were not known to or reasonably discoverable by Plaintiffs or

        Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

        and Class Members lack the sophisticated expertise in vehicle

        components that would be necessary to discover the Theft Prone

        Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety

        concerns for the consumers who use the Class Vehicles, and the Theft

        Prone Defect would have been a material fact to the Class Members'

        decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and

        reliability of the Class Vehicles while purposefully withholding

        material facts about a known safety defect. In uniform advertising and

        materials provided with each Class Vehicle, HMA, and KA

        intentionally concealed, suppressed, and failed to disclose to the

        consumers that the Class Vehicles contained the Theft Prone Defect.

        Because they volunteered to provide information about the Class

        Vehicles that they marketed and offered for sale and lease to

        consumers, HMA and KA had the duty to disclose the whole truth.

1599.	As detailed above, the information concerning the Theft Prone Defect

was known to Defendants at the time of advertising and selling the Class Vehicles,

all of which was intended to induce consumers to purchase the Class Vehicles.

1600.	By misrepresenting the Class Vehicles as safe and reliable and by

failing to disclose and actively concealing the dangers and risk posed by the Theft

Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices as defined in Cal. Civ. Code § 1770(a):

    a.    representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b.    representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

    c.    advertising the Class Vehicles with the intent not to sell or lease them as advertised; and

    d.    representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

Cal. Civ. Code §§ 1770(a)(5), (7), (9), and (16).

1601. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

1602. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1603. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the

Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

1604. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1605. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1606. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1607. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

1608. In accordance with § 1782(a) of the CLRA, Plaintiffs' counsel on behalf of Plaintiffs and the Class Members, served Defendants via Certified Mail on August 18, 2022, and September 12, 2022 with notice of their alleged violations of Cal. Civ. Code § 1770(a) relating to the Class Vehicles purchased by Plaintiffs and Class Members and demanded that they correct or agree to correct the actions described therein within thirty (30) days of such notice. Because Defendants failed to adequately remedy their unlawful conduct within the requisite time period, the Plaintiffs seek all damages and relief to which they and the Class Members are entitled.

1609. Pursuant to Cal. Civ. Code § 1780(a), Plaintiffs seek an order enjoining Defendants from engaging in the methods, acts, or practices alleged

herein, including further concealment of the Theft Prone Defect, and awarding actual damages, treble damages, restitution, attorneys' fees, and any other just and proper relief available under the CLRA.

**5.    Nationwide / California Count 5: Violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code § 17200) Against All Defendants.**

1610.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1611.  Plaintiffs bring this count under California law, individually and on behalf of the other members of the Hyundai Nationwide Class and Hyundai California Class, against HMA and HMC.

1612.  Plaintiffs bring this count under California law, individually and on behalf of the other members of the Kia Nationwide Class and Kia California Class, against KA and KC.

1613.  For purposes of this count, members of the Hyundai Nationwide Class, Hyundai California Class, Kia Nationwide Class, and Kia California Class shall be referred to as "Class Members."

1614.  The California Unfair Competition Law ("UCL"), California Business and Professions Code § 17200, prohibits any "unlawful, unfair, or fraudulent business acts or practices."

1615.  Defendants' knowing and intentional conduct described in this complaint constitutes unlawful, unfair, and fraudulent business acts and practices in violation of the UCL. Specifically, Defendants' conduct is unlawful, unfair, and fraudulent in at least the following ways:

a.    By knowingly and intentionally concealing from Plaintiffs and Class Members that the Class Vehicles suffer from the Theft Prone Defect while obtaining money from Plaintiffs and Class Members;

b.    By purposefully designing and manufacturing the Class Vehicles to contain the Theft Prone Defect, concealing the Theft Prone Defect

from Plaintiffs and the Class Members, and failing to fix the Theft Prone Defect free of charge; and

c.   By marketing the Class Vehicles as safe, convenient, and defect free, with cutting edge technology, all while knowing of the Theft Prone Defect.

1616. The Class Vehicles are defectively designed for the reasons set forth above, including that the Class Vehicles can be started by simply defeating the key slot/starting system and using a common USB cable (or any other similarly shaped object) to activate the engine and achieve both forward self-mobility and steering. Upon information and belief, at this point, the USB cable can be removed without deactivating the engine. Accordingly, the Class Vehicles do not contain starting systems with anti-theft features or design elements that would prevent forward self-mobility and steering when the key is removed from the starting system.

1617. In intentionally deciding—uniquely among manufacturers selling vehicles in the United States—not to equip Class Vehicles with sufficient anti-theft design, Defendants committed an unlawful business act or practice in violation of § 17200.

1618. Defendants also committed an unlawful business act or practice in violation of § 17200 by violating the California FAL, the CLRA, and other laws alleged herein.

1619. Defendants' acts, omission, and conduct were also "unfair" because they offend public policy and constitute immoral, unethical, and unscrupulous activities that caused substantial injury, including to Plaintiffs and Class Members. The gravity of harm resulting from Defendants' conduct outweighs any potential benefits attributable to the conduct and there were reasonably available alternatives to further Defendants legitimate business interests.

1620. Selling cars without anti-theft features or design elements sufficient to comply with FMVSS 114 is unfair to consumers because it exposes consumers to elevated risks of theft without fair warning or justification.

1621. Defendants failed to provide notice that the Class Vehicles lacked any anti-theft feature or design element sufficient to provide an adequate theft deterrent, or otherwise comply with FMVSS 114, and failed to give any notice as to the risks associated with operating or even owning a vehicle that does not comply with FMVSS 114.

1622. Defendants intentionally failed to disclose and actively concealed the fact that the Class Vehicles were defective and also did not comply with FMVSS 114. In marketing materials, Defendants often advertised that higher-end trim packages came with a "push button start" feature rather than a traditional turn-key ignition. However, Defendants did not inform consumers that the Class Vehicles were being sold without adequate anti-theft protection to safeguard life and property. Defendants long have provided immobilizers as standard technology in select higher-end models and as a feature in higher-end trim packages on other models. Meanwhile, the less expensive trim packages of those same models were manufactured and sold without an immobilizer or any other anti-theft feature or design element that would prevent theft and satisfy FMVSS 114.

1623. Defendants did not include features or design elements on the Class Vehicles that would bring those vehicles into compliance with the letter or intent of FMVSS 114. Thus, Defendants designed, developed, manufactured, marketed, and sold their vehicles in a dangerous and defective condition. This too was unfair to consumers, and therefore violated the UCL.

1624. Additionally, Defendants committed fraudulent acts or practices in violation of § 17200. Specifically, as alleged in detail above, Defendants designed, developed, manufactured, and/or knowingly and intentionally marketed and sold Class Vehicles with the Theft Prone Defect, while misrepresenting the safety,

quality, and reliability of the Class Vehicles, and/or and omitting, and failing to disclose material facts regarding the existence, nature, and scope of the Theft Prone Defect in the Class Vehicles from consumers, including Plaintiffs and Class Members.

1625. Defendants had an ongoing duty to Plaintiffs and other Class Members to refrain from unfair or deceptive practices in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect because:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.     Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.     Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.     Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to

consumers, HMA and KA had the duty to disclose the whole truth.

1626. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1627. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

1628. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1629. Accordingly, Plaintiffs and Class Members have suffered ascertainable loss and actual damages as a direct and proximate result of Defendants' concealment of and failure to disclose material information regarding the Theft Prone Defect.

1630. Defendants' violations present a continuing risk to Plaintiffs and Class Members as well as to the general public. Defendants' unlawful acts and practices complained of herein affect the public interest.

1631. Plaintiffs request that this Court enter an order enjoining Defendants from continuing their unfair, unlawful, and/or deceptive practices and restoring to Plaintiffs and Class Members any money Defendants acquired by unfair competition as provided in Cal. Bus. & Prof. Code § 17203 and Cal. Bus. & Prof. Code § 3345, and for such other relief set forth below.

1632. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**6.     Nationwide / California Count 6: Fraud by Omission and Concealment Against All Defendants**

1633. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1634. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Hyundai Nationwide Class and Hyundai California Class, against HMA and HMC.

1635. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Kia Nationwide Class and Kia California Class, against KA and KC.

1636. For purposes of this count, members of the Hyundai Nationwide Class, Hyundai California Class, Kia Nationwide Class, and Kia California Class shall be referred to as "Class Members."

1637. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

1638. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1639. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1640. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

1641. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

1642. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1643. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1644. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1645. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they

otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1646. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1647. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1648. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**7. Nationwide / California Count 7: Unjust Enrichment Against All Defendants**

1649. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

1650. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Hyundai Nationwide Class and Hyundai California Class, against HMA and HMC.

1651. Plaintiffs bring this count under California law, individually and on behalf of the other members of the Kia Nationwide Class and Kia California Class, against KA and KC.

1652. For purposes of this count, members of the Hyundai Nationwide Class, Hyundai California Class, Kia Nationwide Class, and Kia California Class shall be referred to as "Class Members."

1653. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1654. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1655. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1656. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1657. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1658. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**B.    State Counts**

    **1.    Alabama**

        **a.    Alabama Count 1: Breach of Implied Warranty of Merchantability (Ala. Code §§ 7-2-314 and 7-2a-212) Against HMA and KA**

1659. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1660. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Alabama Class, against HMA.

1661. Plaintiffs bring this count individually and on behalf of the other members of the Kia Alabama Class, against KA.

1662. For purposes of this count, the Hyundai Alabama Class Members and Kia Alabama Class Members together shall be referred to as "Class Members."

1663. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

1664. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

1665. Defendants are and were at all relevant times "merchants" with respect to motor vehicles Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and "sellers" of motor vehicles under § 7-2-103(1)(d).

1666. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ala. Code § 7-2A-103(1)(p).

1667. Plaintiffs and Class Members who purchased Class Vehicles in Alabama are "buyers" within the meaning of Ala. Code § 7-2-103(1)(a).

1668. Plaintiffs and Class Members who leased Class Vehicles in Alabama are "lessees" within the meaning of Ala. Code 7-2A-103(1)(n).

1669. The Class Vehicles were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

1670. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1671. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1672. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity

in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

1673.  Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1674.  Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

1675.  Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

1676.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.** **Alabama Count 2: Violation of the Alabama Deceptive Trade Practices Act (Ala. Code §§ 8-19-1, et seq.) Against All Defendants**

1677. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1678. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Alabama Class, against HMA and HMC.

1679. Plaintiffs bring this count individually and on behalf of the other members of the Kia Alabama Class, against KA and KC.

1680. For purposes of this count, the Hyundai Alabama Class Members and Kia Alabama Class Members shall be referred to as "Class Members."

1681. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Ala. Code § 8-19-3(5).

1682. Plaintiffs and Class Members are "consumers" within the meaning of Ala. Code § 8-19-3(2).

1683. The Class Vehicles are "goods" within the meaning of Ala. Code. § 8-19-3(3).

1684. Defendants were and are engaged in "trade or commerce" within the meaning of Ala. Code § 8-19-3(8).

1685. The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce[.]" Ala. Code § 8-19-5.

1686. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

1687. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Alabama DTPA in the course of

their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

    1688. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

1689. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ala. Code § 8-19-5:

    a.    Causing confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

    b.    Representing that the Class Vehicles have approval, characteristics, uses, benefits, and qualities which they do not have;

    c.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

    d.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and

    e.    Engaging in unconscionable, false, misleading, and deceptive acts and practices in the conduct of trade or commerce pertaining to the Class Vehicles.

Ala. Code §§ 8-19-5(2), (5), (7), (9) and (27).

1690. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

1691. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1692. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

1693. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1694. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1695. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1696. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

1697. On August 18, 2022, and September 12, 2022, Class Members sent Defendants notice of the Theft Prone Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within

a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

1698. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Class Vehicles contained the Theft Prone Defect, however, did nothing to remedy the Theft Prone Defect.

1699. Pursuant to Ala. Code § 8-19-10, Plaintiffs and the Class Members seek an order enjoining Defendants' unfair or deceptive acts and/or practices and awarding damages and any other just and proper relief available under the Alabama DTPA.

### c. Alabama Count 3: Fraud by Omission and Concealment Against All Defendants

1700. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1701. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Alabama Class, against HMA and HMC.

1702. Plaintiffs bring this count individually and on behalf of the other members of the Kia Alabama Class, against KA and KC.

1703. For purposes of this count, the Hyundai Alabama Class Members and Kia Alabama Class Members shall be referred to as "Class Members."

1704. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

1705. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in

connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1706. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1707. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable

person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

1708. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

1709. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1710. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1711. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1712. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1713. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1714. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1715. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Alabama Count 4: Unjust Enrichment Against All Defendants

1716. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

1717. Plaintiffs bring this count under Alabama law, individually and on behalf of the other members of the Hyundai Alabama Class, against HMA and HMC.

1718. Plaintiffs bring this count under Alabama law, individually and on behalf of the other members of the Kia Alabama Class, against KA and KC.

1719. For purposes of this count, members of the Hyundai Alabama Class and Kia Alabama Class shall be referred to as "Class Members."

1720. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1721. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from

the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1722. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1723. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1724. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1725. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**2.    Alaska**

**a.    Alaska Count 1: Breach of Implied Warranty (Alaska Stat. Ann. §§ 45.02.314 and 45.12.212) Against HMA and KA**

1726. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1727. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1728. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Alaska Class, against HMA.

1729. Plaintiffs bring this count individually and on behalf of the other members of the Kia Alaska Class, against KA.

1730. For purposes of this count, the Hyundai Alaska Class Members and Kia Alaska Class Members together shall be referred to as "Class Members."

1731. For purposes of this count, HMA and KA together shall be referred to as "Defendants.

1732. "Defendants were at all relevant times "merchants" with respect to motor vehicles under Alaska Stat. Ann. §§ 45.02.104(a) and 45.12.103(c)(11), and "sellers" of motor vehicles under § 45.02.103(a)(4).

1733. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. Ann. § 45.12.103(a)(16).

1734. The Class Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. Ann. §§ 45.02.105(a) and 45.12.103(a)(8).

1735. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Alaska Stat. §§ 45.02.314 and 45.12.212.

1736. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1737. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary

purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1738. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

1739. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1740. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice

1  letters sent by Class Members within a reasonable amount of time after the Theft
2  Prone Defect became public. Additionally, on August 18, 2022, and September 12,
3  2022, Class Members sent notice letters to them.

4      1741. Alternatively, Plaintiffs and the Class Members were excused from
5  providing Defendants with notice and an opportunity to cure the breach, because it
6  would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants
7  have long known that the Class Vehicles contained the Theft Prone Defect;
8  however, to date, Defendants have not instituted an adequate and meaningful repair
9  program with respect to the Class Vehicles. As such, Plaintiffs and Class Members
10 had no reason to believe that Defendants would have adequately repaired the Theft
11 Prone Defect if they presented their Class Vehicles to them for repair.

12     1742. As a direct and proximate result of Defendants' breach of the implied
13 warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were
14 and are defective, and the Theft Prone Defect in their Class Vehicles has not been
15 remedied. Therefore, Plaintiffs and Class Members have been damaged, in an
16 amount to be proven at trial.

17           **b.    Alaska Count 2: Violation of the Alaska Unfair Trade
                     Practices and Consumer Protection Act (Alaska Stat. Ann.
18                   § 45.50.471, *et seq*.) Against All Defendants**

19     1743. Plaintiffs reallege and incorporate by reference all preceding
20 allegations as though fully set forth herein.

21     1744. Plaintiffs bring this count individually and on behalf of the other
22 members of the Hyundai Alaska Class, against HMA and HMC.

23     1745. Plaintiffs bring this count individually and on behalf of the other
24 members of the Kia Alaska Class, against KA and KC.

25     1746. For purposes of this count, the Hyundai Alaska Class Members and
26 Kia Alaska Class Members shall be referred to as "Class Members."

27     1747. Plaintiffs and Class Members are "consumers" within the meaning of
28 Alaska Stat. Ann. § 45.50.561.

1748. The Alaska Unfair Trade Practices Act and Consumer Protection Act ("Alaska CPA") declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce . . . are unlawful." Alaska Stat. Ann. § 45.50.471(a).

1749. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

1750. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Alaska CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding

material facts about a known safety defect. In uniform advertising and
materials provided with each Class Vehicle, HMA, and KA
intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

1751. As detailed above, the information concerning the Theft Prone Defect
was known to Defendants at the time of advertising and selling the Class Vehicles,
all of which was intended to induce consumers to purchase the Class Vehicles.

1752. By misrepresenting the Class Vehicles as safe and reliable and by
failing to disclose and actively concealing the dangers and risk posed by the Theft
Prone Defect, Defendants engaged in one or more of the following unfair or
deceptive business practices prohibited by Alaska Stat. Ann. § 45.50.471(b):

    a.    Causing a likelihood of confusion or of misunderstanding as to the
approval or certification of the Class Vehicles;

    b.    Representing that the Class Vehicles have approval, characteristics,
uses, or benefits that they do not have;

    c.    Representing that the Class Vehicles are of a particular standard,
quality, and grade when they are not;

    d.    Advertising the Class Vehicles with the intent not to sell or lease them
as advertised;

    e.    Engaging in other conduct which created a likelihood of confusion or
of misunderstanding and that misleads, deceives, or damages; and

    f.    Using or employing deception, fraud, false pretense, false promise or
misrepresentation, or the concealment, suppression, or omission of a
material fact with intent that others rely upon such concealment,
suppression or omission, in connection with the advertisement and

sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

Alaska Stat. Ann. § 45.50.471(b)(3), (4), (6), (8), (11), and (12).

1753. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

1754. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1755. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

1756. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1757. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1758. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1759. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

1760. On August 18, 2022, and September 12, 2022, Class Members sent Defendants notice of the Theft Prone Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

1761. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Class Vehicles contained the Theft Prone Defect, however, did nothing to remedy the Theft Prone Defect.

1762. Pursuant to Alaska Stat. Ann. §§ 45.50.531 and 45.50.535, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Alaska CPA.

c.   **Alaska Count 3: Fraud by Omission and Concealment Against All Defendants**

1763.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1764.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Alaska Class, against HMA and HMC.

1765.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Alaska Class, against KA and KC.

1766.  For purposes of this count, the Hyundai Alaska Class Members and Kia Alaska Class Members shall be referred to as "Class Members."

1767.  Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

1768.  Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft

- 332 -

Prone Defect would have been a material fact to the Class Members'
decisions to buy or lease Class Vehicles; and

d.    Defendants made incomplete representations about the safety and
reliability of the Class Vehicles while purposefully withholding
material facts about a known safety defect. In uniform advertising and
materials provided with each Class Vehicle, HMA, and KA
intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

1769.  In breach of their duties, Defendants failed to disclose the Theft Prone
Defect to Plaintiffs and Class Members in connection with the sale of the Class
Vehicles.

1770.  For the reasons set forth above, the Theft Prone Defect within the
Class Vehicles is material to the sale of the Class Vehicles because a reasonable
person would find it important in purchasing, leasing, or retaining a new or used
motor vehicle and because it directly impacts the value of the Class Vehicles
purchased or leased by the Plaintiffs and Class Members.

1771.  Defendants intended for the Plaintiffs and Class Members to rely on
their omissions and concealment—which they did by purchasing and leasing the
Class Vehicles at the prices they paid believing that their vehicles would not have a
Theft Prone Defect that would affect the quality, reliability, and safety of the Class
Vehicles.

1772.  Plaintiffs and Class Members' reliance was reasonable, as they had no
way of discerning that learning the facts that Defendants had concealed or failed to
disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants'
deception on their own.

1773. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1774. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1775. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1776. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1777. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1778. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.      Alaska Count 4: Unjust Enrichment Against All Defendants

1779. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

1780. Plaintiffs bring this count under Alaska law, individually and on behalf of the other members of the Hyundai Alaska Class, against HMA and HMC.

1781. Plaintiffs bring this count under Alaska law, individually and on behalf of the other members of the Kia Alaska Class, against KA and KC.

1782. For purposes of this count, members of the Hyundai Alaska Class and Kia Alaska Class shall be referred to as "Class Members."

1783. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1784. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1785. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1786. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1787. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and

Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1788. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 3. Arizona

#### a. Arizona Count 1: Breach of Implied Warranty of Merchantability (Ala. Code §§ 7-2-314 and 7-2a-212) Against HMA and KA

1789. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1790. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Arizona Class, against HMA.

1791. Plaintiffs bring this count individually and on behalf of the other members of the Kia Arizona Class, against KA.

1792. For purposes of this count, the Hyundai Arizona Class Members and Kia Arizona Class Members together shall be referred to as "Class Members."

1793. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

1794. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212.

1795. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ariz. Rev. Stat. Ann. §§ 47-2104(A) and 47-2A103(C)(11), and "sellers" of motor vehicles under § 47-2103(A)(4).

1796. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ariz. Rev. Stat. Ann. § 47-2a103(A)(16).

1797. All Class members who purchased Class Vehicles in Arizona are "buyers" within the meaning of Ariz. Rev. Stat. Ann. § 47-2103(A)(1).

1798. All Class members who leased Class Vehicles in Arizona are "lessees" within the meaning of Ariz. Rev. Stat. Ann. § 47-2a103(A)(14).

1799. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. Ann. §§ 47-2105(A) and 47-2A103(A)(8).

1800. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1801. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1802. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations

are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

1803. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1804. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

1805. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members

1   had no reason to believe that Defendants would have adequately repaired the Theft

2   Prone Defect if they presented their Class Vehicles to them for repair.

3       1806. As a direct and proximate result of Defendants' breach of the implied

4   warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were

5   and are defective, and the Theft Prone Defect in their Class Vehicles has not been

6   remedied. Therefore, Plaintiffs and Class Members have been damaged, in an

7   amount to be proven at trial.

8           **b.     Arizona Count 2: Violation of the Arizona Consumer Fraud**
            **Act (Ariz. Rev. Stat. Ann. § 44-1521, *et seq.*) Against All**
9           **Defendants.**

10      1807. Plaintiffs reallege and incorporate by reference all preceding

11  allegations as though fully set forth herein.

12      1808. Plaintiffs bring this count individually and on behalf of the other

13  members of the Hyundai Arizona Class, against HMA and HMC.

14      1809. Plaintiffs bring this count individually and on behalf of the other

15  members of the Kia Arizona Class, against KA and KC.

16      1810. For purposes of this count, the Hyundai Arizona Class Members and

17  Kia Arizona Class Members shall be referred to as "Class Members."

18      1811. Defendants, Plaintiffs, and Class Members are "persons" within the

19  meaning of Ariz. Rev. Stat. Ann. § 44-1521(6).

20      1812. The Class Vehicles are "merchandise" within the meaning of Ariz.

21  Rev. Stat. Ann § 44-1521(5).

22      1813. The Arizona Consumer Fraud Act ("Arizona CFA") prohibits unlawful

23  business practices and declares them to be unlawful. Ariz. Rev. Stat. Ann § 44-

24  1522(A).

25      1814. In the course of its business, Defendants, through their agents,

26  employees, and/or subsidiaries, violated the Arizona CFA by knowingly and

27  intentionally misrepresenting, omitting, concealing, and/or failing to disclose

28

material facts regarding the quality, reliability, and safety of the Class Vehicles, as detailed above.

1815. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Arizona CFA in the course of its business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.  Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.  Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1816. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

1817. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in deceptive acts or practices, as outlined in Ariz. Rev. Stat. § 44-1522(A), including using or employing deception, deceptive or unfair acts or practices, fraud, false pretenses, false promises or misrepresentations, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale or lease of the Class Vehicles.

1818. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

1819. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1820. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the

1  Class Vehicles were safe and reliable in deciding to purchase and lease Class

2  Vehicles.

3      1821.  Plaintiffs' and Class Members' reliance was reasonable, as they had no

4  way of discerning Defendants' representations were false and misleading, or

5  otherwise learning that the Class Vehicles contained the Theft Prone Defect, as

6  alleged above. Plaintiffs and Class Members did not, and could not, unravel

7  Defendants' deception on their own.

8      1822.  Had they known the truth about the Theft Prone Defect, Plaintiffs and

9  Class Members would not have purchased or leased the Class Vehicles, or would

10  have paid significantly less for them.

11      1823.  Plaintiffs and Class Members suffered ascertainable losses and actual

12  damages as a direct and proximate result of Defendants' concealment,

13  misrepresentations, and/or failure to disclose material information.

14      1824.  Defendants' violations present a continuing risk to Plaintiffs and Class

15  Members, as well as to the general public, because the Class Vehicles remain

16  unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices

17  complained of herein affect the public interest.

18      1825.  Plaintiffs and Class Members seek an order enjoining Defendants'

19  unfair and/or deceptive acts or practices and awarding damages and any other just

20  and proper relief available under the Arizona CFA.

21          **c.    Arizona Count 3: Fraud by Omission and Concealment
             Against All Defendants**

22

23      1826.  Plaintiffs reallege and incorporate by reference all preceding

24  allegations as though fully set forth herein.

25      1827.  Plaintiffs bring this count individually and on behalf of the other

26  members of the Hyundai Arizona Class, against HMA and HMC.

27      1828.  Plaintiffs bring this count individually and on behalf of the other

28  members of the Kia Arizona Class, against KA and KC.

1829. For purposes of this count, the Hyundai Arizona Class Members and Kia Arizona Class Members shall be referred to as "Class Members."

1830. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

1831. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect.

Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1832. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1833. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

1834. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

1835. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1836. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1837. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1838. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1839. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1840. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1841. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Arizona Count 4: Unjust Enrichment Against All Defendants

1842. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

1843. Plaintiffs bring this count under Arizona law, individually and on behalf of the other members of the Hyundai Arizona Class, against HMA and HMC.

1844. Plaintiffs bring this count under Arizona law, individually and on behalf of the other members of the Kia Arizona Class, against KA and KC.

1845. For purposes of this count, members of the Hyundai Arizona Class and Kia Arizona Class shall be referred to as "Class Members."

1846. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1847. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1848. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1849. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1850. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1851. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

4.     **Arkansas**

a.     **Arkansas Count 1: Breach of Implied Warranty (Ark. Code Ann. §§ 4-2-314 and 4-2A-212) Against HMA and KA**

1852.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1853.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Arkansas Class, against HMA.

1854.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Arkansas Class, against KA.

1855.  For purposes of this count, the Hyundai Arkansas Class Members and Kia Arkansas Class Members together shall be referred to as "Class Members."

1856.  For purposes of this count, HMA and KA together shall be referred to as "Defendants."

1857.  Defendants were at all relevant times "merchants" with respect to motor vehicles under Ark. Code Ann. §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under § 4-2-103(1)(d).

1858.  With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ark. Code Ann. § 4-2A-103(1)(p).

1859.  The Class Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

1860.  A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ark. Code Ann. §§ 4- 2-314 and 4-2A-212.

1861.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class

Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1862. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1863. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

1864. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1865. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

1866. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

1867. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

  **b.**  **Arkansas Count 2: Violation of the Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, *et seq.*) Against All Defendants**

1868. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1869. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Arkansas Class, against HMA and HMC.

1870. Plaintiffs bring this count individually and on behalf of the other members of the Kia Arkansas Class, against KA and KC.

1871. For purposes of this count, the Hyundai Arkansas Class Members and Kia Arkansas Class Members shall be referred to as "Class Members."

1872. Defendants, Plaintiffs, and Class are "persons" within the meaning of Ark. Code Ann. § 4-88-102(5).

1873. The Class Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

1874. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") makes unlawful "[d]eceptive and unconscionable trade practices." Ark. Code Ann. § 4-88-107(a).

1875. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

1876. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Arkansas DTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.     Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.     Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1877. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

1878. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ark. Code Ann. § 4-88-107(a):

a.     knowingly making false representations as to the characteristics, uses, benefits, approval, or certification of the Class Vehicles;

b.     representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

c.     advertising the Class Vehicles with the intent not to sell or lease them

as advertised; and

d.      engaging in any other unconscionable, false, or deceptive act or practice.

Ark. Code Ann. § 4-88-107(a)(1), (3), and (10).

1879. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

1880. Defendants deceptive and unconscionable acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did not in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, the true value of the Class Vehicles.

1881. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

1882. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as

alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1883. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1884. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1885. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

1886. Pursuant to Ark. Code Ann. § 4-88-113(f), Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding other just and proper relief available under the Arkansas DTPA.

### c.     Arkansas Count 3: Fraud by Omission and Concealment Against All Defendants

1887. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1888. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Arkansas Class, against HMA and HMC.

1889. Plaintiffs bring this count individually and on behalf of the other members of the Kia Arkansas Class, against KA and KC.

1890. For purposes of this count, the Hyundai Arkansas Class Members and Kia Arkansas Class Members shall be referred to as "Class Members."

1891. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

1892. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1893. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

1894. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

1895. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

1896. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1897. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

1898. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1899. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they

otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1900. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1901. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1902. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Arkansas Count 4: Unjust Enrichment Against All Defendants

1903. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

1904. Plaintiffs bring this count under Arkansas law, individually and on behalf of the other members of the Hyundai Arkansas Class, against HMA and HMC.

1905. Plaintiffs bring this count under Arkansas law, individually and on behalf of the other members of the Kia Arkansas Class, against KA and KC.

1906. For purposes of this count, members of the Hyundai Arkansas Class and Kia Arkansas Class shall be referred to as "Class Members."

1907. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1908. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1909. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1910. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1911. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1912. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

5.       **Colorado**

    a.       **Colorado Count 1: Breach of Implied Warranty of Merchantability (Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212) Against HMA and KA**

1913. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1914. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Colorado Class, against HMA.

1915. Plaintiffs bring this count individually and on behalf of the other members of the Kia Colorado Class, against KA.

1916. For purposes of this count, the Hyundai Colorado Class Members and Kia Colorado Class Members together shall be referred to as "Class Members."

1917. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

1918. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Colo. Rev. Stat. §§ 4-2-314 and 4-2.5-212.

1919. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Colo. Rev. Stat. §§ 4-2-104(1) and 4-2.5-103(3), and "sellers" of motor vehicles under § 4-2-103(1)(d).

1920. With respect to leases, the Defendants are and were at all relevant times "lessors" of motor vehicles under Colo. Rev. Stat. § 4-2.5-103(1)(p).

1921. All Class Members who purchased Class Vehicles in Colorado are "buyers" within the meaning of Colo. Rev. Stat. § 4-2-103(1)(a).

1922. All Class Members who leased Class Vehicles in Colorado are "lessees" within the meaning of Colo. Rev. Stat. § 4-2.5-103(1)(p).

1923. The Class Vehicles are and were at all relevant times "goods" within the meaning of Colo. Rev. Stat. §§ 4-2-105(1) and 4-2.5-103(1)(h).

1924. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1925. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1926. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity

in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

1927. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1928. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

1929. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

1930. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.**   **Colorado Count 2: Violation of the Colorado Consumer Protection Act (Colo. Rev. Stat. § 6-1-101, *et seq.*) Against All Defendants**

1931. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1932. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Colorado Class, against HMA and HMC.

1933. Plaintiffs bring this count individually and on behalf of the other members of the Kia Colorado Class, against KA and KC.

1934. For purposes of this count, the Hyundai Colorado Class Members and Kia Colorado Class Members shall be referred to as "Class Members."

1935. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Colo. Rev. Stat. § 6-1-102(6).

1936. The Class Vehicles are "Motor vehicles" within the meaning of Colo. Rev. Stat. § 6-1-102(5.5).

1937. The Colorado Consumer Protection Act ("Colorado CPA") prohibits unfair, unconscionable, and deceptive acts or practices in the course of the person's business, vocation, or occupation. Colo. Rev. Stat. § 6-1-105.

1938. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Colorado CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles, and the Theft Prone Defect, as detailed above.

1939. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Colorado DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.      Defendants had exclusive access to and far superior knowledge about

1   facts regarding the Theft Prone Defect and Defendants knew these
2   facts were not known to or reasonably discoverable by Plaintiffs or
3   Class Members;

4   b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs
5   and Class Members lack the sophisticated expertise in vehicle
6   components that would be necessary to discover the Theft Prone
7   Defect on their own;

8   c.   Defendants knew that the Theft Prone Defect gave rise to safety
9   concerns for the consumers who use the Class Vehicles, and the Theft
10   Prone Defect would have been a material fact to the Class Members'
11   decisions to buy or lease Class Vehicles; and

12   d.   Defendants made incomplete representations about the safety and
13   reliability of the Class Vehicles while purposefully withholding
14   material facts about a known safety defect. In uniform advertising and
15   materials provided with each Class Vehicle, HMA, and KA
16   intentionally concealed, suppressed, and failed to disclose to the
17   consumers that the Class Vehicles contained the Theft Prone Defect.
18   Because they volunteered to provide information about the Class
19   Vehicles that they marketed and offered for sale and lease to
20   consumers, HMA and KA had the duty to disclose the whole truth.

21   1940. As detailed above, the information concerning the Theft Prone Defect
22   was known to Defendants at the time of advertising and selling the Class Vehicles,
23   all of which was intended to induce consumers to purchase the Class Vehicles.

24   1941. By misrepresenting the Class Vehicles as safe and reliable and by
25   failing to disclose and actively concealing the dangers and risk posed by the Theft
26   Prone Defect, Defendants engaged in one or more of the following unfair or
27   deceptive business practices prohibited by Colo. Rev. Stat. § 6-1-105:

28   a.   knowingly or recklessly making a false representation as to the

approval, or certification of the Class Vehicles;

b.    knowingly or recklessly making a false representation as to the characteristics, uses, benefits, and false representations of the Class Vehicles;

c.    representing that the Class Vehicles are of a particular standard, qualify, or grade when they are not;

d.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised;

e.    Engaging in the other unconscionable, false, misleading, or deceptive acts or practices pertaining to the Class Vehicles "actionable at common law or under other statutes of [Colorado]."

Colo. Rev. Stat. §§ 6-1-105(1)(b), (e), (g), (i), and (3).

1942. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

1943. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

1944. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and

suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

1945. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

1946. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

1947. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1948. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

1949. Pursuant to Colo. Rev. Stat. § 6-1-113, Plaintiffs and the Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Colorado CPA.

       **c.**    **Colorado Count 3: Fraud by Omission and Concealment Against All Defendants**

1950. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1951. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Colorado Class, against HMA and HMC.

1952. Plaintiffs bring this count individually and on behalf of the other members of the Kia Colorado Class, against KA and KC.

1953. For purposes of this count, the Hyundai Colorado Class Members and Kia Colorado Class Members shall be referred to as "Class Members."

1954. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

1955. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA

intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

1956. In breach of their duties, Defendants failed to disclose the Theft Prone
Defect to Plaintiffs and Class Members in connection with the sale of the Class
Vehicles.

1957. For the reasons set forth above, the Theft Prone Defect within the
Class Vehicles is material to the sale of the Class Vehicles because a reasonable
person would find it important in purchasing, leasing, or retaining a new or used
motor vehicle and because it directly impacts the value of the Class Vehicles
purchased or leased by the Plaintiffs and Class Members.

1958. Defendants intended for the Plaintiffs and Class Members to rely on
their omissions and concealment—which they did by purchasing and leasing the
Class Vehicles at the prices they paid believing that their vehicles would not have a
Theft Prone Defect that would affect the quality, reliability, and safety of the Class
Vehicles.

1959. Plaintiffs and Class Members' reliance was reasonable, as they had no
way of discerning that learning the facts that Defendants had concealed or failed to
disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants'
deception on their own.

1960. Defendants actively concealed and suppressed these material facts, in
whole or in part, to maintain a market for the Class Vehicles, to protect profits, and
to avoid costly recalls that would expose them to liability for those expenses and
harm the commercial reputations of Defendants and their products. They did so at
the expense of Plaintiffs and Class Members.

1961. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

1962. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

1963. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

1964. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

1965. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Colorado Count 4: Unjust Enrichment Against All Defendants

1966. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

1967. Plaintiffs bring this count under Colorado law, individually and on behalf of the other members of the Hyundai Colorado Class, against HMA and HMC.

1968. Plaintiffs bring this count under Colorado law, individually and on behalf of the other members of the Kia Colorado Class, against KA and KC.

1969. For purposes of this count, the Hyundai Colorado Class Members and Kia Colorado Class Members shall be referred to as "Class Members."

1970. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

1971. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

1972. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

1973. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

1974. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

1975. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 6. Connecticut

#### a. Connecticut Count 1: Breach of Implied Warranty of Merchantability (Conn. Gen. Stat. Ann. §§ 42a-2-314 and § 42a-2a-504) Against HMA and KA

1976. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1977. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Connecticut Class, against HMA.

1978. Plaintiffs bring this count individually and on behalf of the other members of the Kia Connecticut Class, against KA.

1979. For purposes of this count, the Hyundai Connecticut Class Members and Kia Connecticut Class Members together shall be referred to as "Class Members."

1980. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

1981. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Conn. Gen. Stat. Ann. §§ 42A-2-314 and § 42a-2a-504.

1982. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Conn. Gen. Stat. Ann. §§ 42a-2-104(1) and 42a-2-103(2), and a "seller" of motor vehicles under § 42a-2-103(1)(c).

1983. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Conn. Gen. Stat. Ann. § 42a-2A-102(a)(23).

1984. All Class Members who purchased Class Vehicles in Connecticut are "buyers" within the meaning of Conn. Gen. Stat. Ann. § 42a-2-103(1)(a).

1985. All Class Members who leased Class Vehicles in Connecticut are "lessees" within the meaning of Conn. Gen. Stat. Ann. § 42a-2A-102(a)(21).

1986. The Class Vehicles are and were at all relevant times "goods" within the meaning of Conn. Gen. Stat. Ann. §§ 42a-2-105(1) and 42a-2-103(2).

1987. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1988. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1989. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time

limits contained in Defendants' warranty periods were also unconscionable and
inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs
and Class Members had no meaningful choice in determining these time
limitations, the terms of which unreasonably favored Defendants. A gross disparity
in bargaining power existed between Defendants and Plaintiffs and other Class
Members. Additionally, Defendants knew of the Theft Prone Defect at the time of
sale.

1990. Furthermore, the circumstances described herein caused Defendants'
exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and
Class Members may seek alternative remedies. Indeed, these breaches of warranties
have denied Plaintiffs and Class Members the benefit of their respective bargains,
which presupposes they were (or are) able to use the Class Vehicles in a meaningful
manner without the ever–present risk of them being stolen.

1991. Plaintiffs and Class Members have provided Defendants with
reasonable notice and opportunity to cure the breaches of their implied warranties
by way of the numerous complaints filed against them and the individual notice
letters sent by Class Members within a reasonable amount of time after the Theft
Prone Defect became public. Additionally, on August 18, 2022, and September 12,
2022, Class Members sent notice letters to them.

1992. Alternatively, Plaintiffs and the Class Members were excused from
providing Defendants with notice and an opportunity to cure the breach, because it
would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants
have long known that the Class Vehicles contained the Theft Prone Defect;
however, to date, Defendants have not instituted an adequate and meaningful repair
program with respect to the Class Vehicles. As such, Plaintiffs and Class Members
had no reason to believe that Defendants would have adequately repaired the Theft
Prone Defect if they presented their Class Vehicles to them for repair.

1993. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

      **b.**    **Connecticut Count 2: Violation of the Connecticut Unlawful Trade Practices Act (Conn. Gen. Stat. Ann. § 42-110a, *et seq.*) Against All Defendants**

1994. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1995. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Connecticut Class, against HMA and HMC.

1996. Plaintiffs bring this count individually and on behalf of the other members of the Kia Connecticut Class, against KA and KC.

1997. For purposes of this count, the Hyundai Connecticut Class Members and Kia Connecticut Class Members shall be referred to as "Class Members."

1998. Defendants**,** Plaintiffs, and Class Members are "persons" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(3).

1999. Defendants were and are engaged in "trade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(4).

2000. The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a).

2001. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Connecticut UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2002. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Connecticut UTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.      Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.      Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.      Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2003. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2004. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Conn. Gen. Stat. § 42-110b(a).

2005. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2006. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2007. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2008. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2009. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2010. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2011. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2012. Pursuant to Conn. Gen. Stat. Ann. § 42-110g, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Connecticut UTPA.

### c. Connecticut Count 3: Fraud by Omission and Concealment Against All Defendants

2013. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2014. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Connecticut Class, against HMA and HMC.

2015. Plaintiffs bring this count individually and on behalf of the other members of the Kia Connecticut Class, against KA and KC.

2016. For purposes of this count, the Hyundai Connecticut Class Members and Kia Connecticut Class Members shall be referred to as "Class Members."

2017. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2018. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect.

Because they volunteered to provide information about the Class

Vehicles that they marketed and offered for sale and lease to

consumers, HMA and KA had the duty to disclose the whole truth.

2019. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2020. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

2021. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2022. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2023. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2024. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2025. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2026. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2027. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2028. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. Connecticut Count 4: Unjust Enrichment Against All Defendants

2029. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2030. Plaintiffs bring this count under Connecticut law, individually and on behalf of the other members of the Hyundai Connecticut Class, against HMA and HMC.

2031. Plaintiffs bring this count under Connecticut law, individually and on behalf of the other members of the Kia Connecticut Class, against KA and KC.

2032. For purposes of this count, members of the Hyundai Connecticut Class and Kia Connecticut Class shall be referred to as "Class Members."

2033. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2034. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2035. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2036. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2037. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2038. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

7. **Delaware**

    a. **Delaware Count 1: Breach of Implied Warranty (6 Del. Code §§ 2-314 and 2A-212) Against HMA and KA**

2039. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2040. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Delaware Class, against HMA.

2041. Plaintiffs bring this count individually and on behalf of the other members of the Kia Delaware Class, against KA.

2042. For purposes of this count, the Hyundai Delaware Class Members and Kia Delaware Class Members together shall be referred to as "Class Members."

2043. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2044. Defendants were at all relevant times "merchants" with respect to motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

2045. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

2046. The Class Vehicles are and were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

2047. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 6 Del. C. §§ 2-314 and 2A-212.

2048. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class

Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2049.  However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2050.  Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2051.  Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2052. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2053. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2054. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

     **b.**     **Delaware Count 2: Violation of the Delaware Consumer Fraud Act (6 Del. Code § 2511, *et seq.*) Against All Defendants**

2055. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2056. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Delaware Class, against HMA and HMC.

2057. Plaintiffs bring this count individually and on behalf of the other members of the Kia Delaware Class, against KA and KC.

2058. For purposes of this count, the Hyundai Delaware Class Members and Kia Delaware Class Members shall be referred to as "Class Members."

2059. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of 6 Del. Code § 2511(7) and § 2531(5).

2060. The Delaware Consumer Fraud Act ("Delaware CFA") makes unlawful the "act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, or the concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale, lease or advertisement of any merchandise, whether or not any person has in fact been misled, deceived or damaged thereby." 6 Del. Code § 2513(a).

2061. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Delaware CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2062. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the CFA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

   a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or

1    Class Members;

2    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

3          and Class Members lack the sophisticated expertise in vehicle

4          components that would be necessary to discover the Theft Prone

5          Defect on their own;

6    c.    Defendants knew that the Theft Prone Defect gave rise to safety

7          concerns for the consumers who use the Class Vehicles, and the Theft

8          Prone Defect would have been a material fact to the Class Members'

9          decisions to buy or lease Class Vehicles; and

10   d.    Defendants made incomplete representations about the safety and

11         reliability of the Class Vehicles while purposefully withholding

12         material facts about a known safety defect. In uniform advertising and

13         materials provided with each Class Vehicle, HMA, and KA

14         intentionally concealed, suppressed, and failed to disclose to the

15         consumers that the Class Vehicles contained the Theft Prone Defect.

16         Because they volunteered to provide information about the Class

17         Vehicles that they marketed and offered for sale and lease to

18         consumers, HMA and KA had the duty to disclose the whole truth.

19   2063. As detailed above, the information concerning the Theft Prone Defect

20   was known to Defendants at the time of advertising and selling the Class Vehicles,

21   all of which was intended to induce consumers to purchase the Class Vehicles.

22   2064. Defendants engaged in one or more of the following unlawful acts or

23   practices prohibited by 6 Del. Code § 2513(a): using or employing deception, fraud,

24   false pretense, false promise, misrepresentation, unfair practice, or the concealment,

25   suppression, or omission of a material fact with intent that others rely upon such

26   concealment, suppression or omission, in connection with the advertisement and

27   sale/lease of the Class Vehicles, whether or not any person has in fact been misled,

28   deceived or damaged thereby.

2065. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2066. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2067. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2068. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2069. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2070. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2071. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2072. Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the Delaware CFA and DTPA (6 Del. Code §§ 2525).

        c.       **Delaware Count 3: Violation of the Delaware Deceptive Trade Practices Act (6 Del. Code § 2531, *et seq.*) Against All Defendants**

2073. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2074. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Delaware Class, against HMA and HMC.

2075. Plaintiffs bring this count individually and on behalf of the other members of the Kia Delaware Class, against KA and KC.

2076. For purposes of this count, the Hyundai Delaware Class Members and Kia Delaware Class Members shall be referred to as "Class Members."

2077. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of 6 Del. Code § 2531(5).

2078. The Delaware Deceptive Trade Practices Act ("Delaware DTPA") makes it unlawful to engage in a deceptive trade practice in the course of a business." 6 Del. Code § 2532(a).

2079. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Delaware DTPA by knowingly and

intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2080. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the DTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to

1    consumers, HMA and KA had the duty to disclose the whole truth.

2       2081. As detailed above, the information concerning the Theft Prone Defect

3    was known to Defendants at the time of advertising and selling the Class Vehicles,

4    all of which was intended to induce consumers to purchase the Class Vehicles.

5       2082. By misrepresenting the Class Vehicles as safe and reliable and free

6    from defects, and by failing to disclose and actively concealing the dangers and risk

7    posed by the Theft Prone Defect, Defendants also engaged in one or more of the

8    following deceptive trade practices enumerated by the Delaware Deceptive Trade

9    Practices Act at 6 Del. Code § 2532:

10      a.    Causing likelihood of confusion or of misunderstanding as to the

11            approval or certification of the Class Vehicles;

12      b.    Representing that the Class Vehicles have approval, characteristics,

13            uses, or benefits that they do not have;

14      c.    Representing that the Class Vehicles are of a particular standard,

15            quality, and grade when they are not;

16      d.    Advertising the Class Vehicles with the intent not to sell or lease them

17            as advertised; and/or

18      e.    Engaging in any other conduct which created a likelihood of confusion

19            or of misunderstanding.

20   6 Del. Code § 2532 (2), (5), (7), (9), and (12).

21      2083. Defendants intended for Plaintiffs and Class Members to rely on them

22   to provide adequately designed Class Vehicles, and to honestly and accurately

23   reveal the safety hazards described above.

24      2084. Defendants' unfair or deceptive acts or practices were designed to

25   mislead and had a tendency or capacity to mislead and create a false impression in

26   consumers that the Class Vehicles had adequate anti-theft protection, and that the

27   Class Vehicles were not affected by the Theft Prone Defect. Indeed, those

28   misrepresentations, concealments, omissions, and suppressions of material facts did

in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2085. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2086. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2087. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2088. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2089. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2090. Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble

damages, and any other just and proper relief available under the Delaware CFA and DTPA (6 Del. Code § 2533).

### d. Delaware Count 4: Fraud by Omission and Concealment Against All Defendants

2091. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2092. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Delaware Class, against HMA and HMC.

2093. Plaintiffs bring this count individually and on behalf of the other members of the Kia Delaware Class, against KA and KC.

2094. For purposes of this count, the Hyundai Delaware Class Members and Kia Delaware Class Members shall be referred to as "Class Members."

2095. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2096. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety
concerns for the consumers who use the Class Vehicles, and the Theft
Prone Defect would have been a material fact to the Class Members'
decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and
reliability of the Class Vehicles while purposefully withholding
material facts about a known safety defect. In uniform advertising and
materials provided with each Class Vehicle, HMA, and KA
intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

2097.  In breach of their duties, Defendants failed to disclose the Theft Prone
Defect to Plaintiffs and Class Members in connection with the sale of the Class
Vehicles.

2098.  For the reasons set forth above, the Theft Prone Defect within the
Class Vehicles is material to the sale of the Class Vehicles because a reasonable
person would find it important in purchasing, leasing, or retaining a new or used
motor vehicle and because it directly impacts the value of the Class Vehicles
purchased or leased by the Plaintiffs and Class Members.

2099.  Defendants intended for the Plaintiffs and Class Members to rely on
their omissions and concealment—which they did by purchasing and leasing the
Class Vehicles at the prices they paid believing that their vehicles would not have a
Theft Prone Defect that would affect the quality, reliability, and safety of the Class
Vehicles.

2100.  Plaintiffs and Class Members' reliance was reasonable, as they had no
way of discerning that learning the facts that Defendants had concealed or failed to

disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2101. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2102. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2103. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2104. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2105. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2106. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to

deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.    Delaware Count 5: Unjust Enrichment Against All Defendants

2107. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2108. Plaintiffs bring this count under Delaware law, individually and on behalf of the other members of the Hyundai Delaware Class, against HMA and HMC.

2109. Plaintiffs bring this count under Delaware law, individually and on behalf of the other members of the Kia Delaware Class, against KA and KC.

2110. For purposes of this count, members of the Hyundai Delaware Class and Kia Delaware Class shall be referred to as "Class Members."

2111. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2112. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2113. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2114. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2115. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2116. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**8.    Florida**

**a.    Florida Count 1: Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212) Against HMA and KA**

2117. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2118. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Florida Class, against HMA.

2119. Plaintiffs bring this count individually and on behalf of the other members of the Kia Florida Class, against KA.

2120. For purposes of this count, the Hyundai Florida Class Members and Kia Florida Class Members together shall be referred to as "Class Members."

2121. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2122. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Fla. Stat. §§ 672.314 and 680.212.

2123. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

2124. Defendants are and were at all relevant times "lessors" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

2125. All Class Members who purchased Class Vehicles in Florida are "buyers" within the meaning of Fla. Stat. §§ 672.103(1)(a).

2126. All Class Members who leased Class Vehicles in Florida are "lessees" within the meaning of Fla. Stat. § 680.1031(1)(n).

2127. The Class Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

2128. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2129. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles

vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2130. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2131. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2132. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2133. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it

would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2134. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.** **Florida Count 2: Violation of the Florida Deceptive & Unfair Trade Practices Act (Fla. Stat. § 501.201, *et seq.*) Against All Defendants**

2135. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2136. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Florida Class, against HMA and HMC.

2137. Plaintiffs bring this count individually and on behalf of the other members of the Kia Florida Class, against KA and KC.

2138. For purposes of this count, the Hyundai Florida Class Members and Kia Florida Class Members shall be referred to as "Class Members."

2139. The Plaintiffs and Class Members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

2140. Defendants were and are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

2141. The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or

practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

2142. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2143. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA

intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2144. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2145. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

2146. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2147. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2148. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members

were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2149. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2150. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2151. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2152. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2153. Pursuant to Fla. Stat. § 501.211, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Florida UDTPA.

      **c.**    **Florida Count 3: Fraud by Omission and Concealment Against All Defendants**

2154. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2155. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Florida Class, against HMA and HMC.

2156. Plaintiffs bring this count individually and on behalf of the other members of the Kia Florida Class, against KA and KC.

2157. For purposes of this count, the Hyundai Florida Class Members and Kia Florida Class Members shall be referred to as "Class Members."

2158. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2159. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA

1    intentionally concealed, suppressed, and failed to disclose to the

2    consumers that the Class Vehicles contained the Theft Prone Defect.

3    Because they volunteered to provide information about the Class

4    Vehicles that they marketed and offered for sale and lease to

5    consumers, HMA and KA had the duty to disclose the whole truth.

6    2160. In breach of their duties, Defendants failed to disclose the Theft Prone

7  Defect to Plaintiffs and Class Members in connection with the sale of the Class

8  Vehicles.

9    2161. For the reasons set forth above, the Theft Prone Defect within the

10  Class Vehicles is material to the sale of the Class Vehicles because a reasonable

11  person would find it important in purchasing, leasing, or retaining a new or used

12  motor vehicle and because it directly impacts the value of the Class Vehicles

13  purchased or leased by the Plaintiffs and Class Members.

14    2162. Defendants intended for the Plaintiffs and Class Members to rely on

15  their omissions and concealment—which they did by purchasing and leasing the

16  Class Vehicles at the prices they paid believing that their vehicles would not have a

17  Theft Prone Defect that would affect the quality, reliability, and safety of the Class

18  Vehicles.

19    2163. Plaintiffs and Class Members' reliance was reasonable, as they had no

20  way of discerning that learning the facts that Defendants had concealed or failed to

21  disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants'

22  deception on their own.

23    2164. Defendants actively concealed and suppressed these material facts, in

24  whole or in part, to maintain a market for the Class Vehicles, to protect profits, and

25  to avoid costly recalls that would expose them to liability for those expenses and

26  harm the commercial reputations of Defendants and their products. They did so at

27  the expense of Plaintiffs and Class Members.

28

2165. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2166. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2167. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2168. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2169. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.  Florida Count 4: Unjust Enrichment Against All Defendants

2170. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2171. Plaintiffs bring this count under Florida law, individually and on behalf of the other members of the Hyundai Florida Class, against HMA and HMC.

2172. Plaintiffs bring this count under Florida law, individually and on behalf of the other members of the Kia Florida Class, against KA and KC.

2173. For purposes of this count, members of the Hyundai Florida Class and Kia Florida Class shall be referred to as "Class Members."

2174. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2175. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2176. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2177. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2178. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2179. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims

for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**9.      Georgia**

      **a.      Georgia Count 1: Breach of Implied Warranty (Ga. Code. Ann. §§ 11-2-314 and 11-2A-212) Against HMA and KA**

2180. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2181. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Georgia Class, against HMA.

2182. Plaintiffs bring this count individually and on behalf of the other members of the Kia Georgia Class, against KA.

2183. For purposes of this count, the Hyundai Georgia Class Members and Kia Georgia Class Members together shall be referred to as "Class Members."

2184. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2185. Defendants were at all relevant times "merchants" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(1) and 11-2A-103(3), and "sellers" of motor vehicles under § 11-2-103(1)(d).

2186. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga. Code Ann. § 11-2A-103(1)(p).

2187. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

2188. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ga. Code Ann. §§ 11- 2-314 and 11-2A-212.

2189. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts

- 405 -

thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2190. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2191. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2192. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2193. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2194. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2195. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.**   **Georgia Count 2: Violation of the Georgia Uniform Deceptive Trade Practices Act (Ga. Code Ann. § 10-1-370, *et seq.*) Against All Defendants**

2196. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2197. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Georgia Class, against HMA.

2198. Plaintiffs bring this count individually and on behalf of the other members of the Kia Georgia Class, against KA.

2199. For purposes of this count, the Hyundai Georgia Class Members and Kia Georgia Class Members together shall be referred to as "Class Members."

2200. Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code. Ann. § 10-1-371(5).

2201. The Georgia UDTPA prohibits any "deceptive trade practices," which include misrepresenting the "standard, quality, or grade" of goods or services, and engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code. Ann. § 10-1-372(a).

2202. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2203. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Georgia UDTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.   Defendants had exclusive access to and far superior knowledge about

facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2204. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2205. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Georgia UTPA:

a. Causing likelihood of confusion or of misunderstanding as to the

approval or certification of the Class Vehicles;

b.  Representing that the Class Vehicles have approval, characteristics, uses, and benefits which they do not have;

c.  Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

d.  Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and

e.  Engaging in conduct which creates a likelihood of confusion or of misleading persons regarding the Class Vehicles.

Ga. Code. Ann. § 10-1-372(2), (5), (7), (9), (12).

2206. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2207. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2208. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the

Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2209. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2210. H Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2211. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2212. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2213. Pursuant to Ga. Code. Ann § 10-1-373, Plaintiffs and the Georgia State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices and any other just and proper relief available under the Georgia UDTPA.

         **c.**     **Georgia Count 3: Violation of the Georgia Fair Business Practices Act (Ga. Code Ann. § § 10-1-390, *et seq.*) Against All Defendants**

2214. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2215. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Georgia Class, against HMA and HMC.

2216. Plaintiffs bring this count individually and on behalf of the other members of the Kia Georgia Class, against KA and KC.

2217. For purposes of this count, the Hyundai Georgia Class Members and Kia Georgia Class Members shall be referred to as "Class Members."

2218. The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful. Ga. Code. Ann. § 10-1-393(a).

2219. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia FBPA.

2220. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2221. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Georgia UTPA:

a. Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

b. Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

c. Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and

d. Advertising the Class Vehicles with the intent not to sell or lease them as advertised.

Ga. Code. Ann. § 10-1-393(b).

2222. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2223. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2224. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2225. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2226. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2227. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2228. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2229. On August 18, 2022, and September 12, 2022, Class Members sent Defendants notice of the Theft Prone Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

2230. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Class Vehicles contained the Theft Prone Defect, however, did nothing to remedy the Theft Prone Defect.

2231. Pursuant to Ga. Code. Ann. § 10-1-399, Plaintiffs and the Georgia State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding any other just and proper relief available under the Georgia FBPA.

### d.   Georgia Count 4: Fraud by Omission and Concealment Against All Defendants

2232. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2233. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Georgia Class, against HMA and HMC.

2234. Plaintiffs bring this count individually and on behalf of the other members of the Kia Georgia Class, against KA and KC.

2235. For purposes of this count, the Hyundai Georgia Class Members and Kia Georgia Class Members shall be referred to as "Class Members."

2236. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2237. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect.

Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2238. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2239. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

2240. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2241. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2242. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2243. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2244.  Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2245.  Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2246.  As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2247.  Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.      Georgia Count 5: Unjust Enrichment Against All Defendants

2248.  Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2249.  Plaintiffs bring this count under Georgia law, individually and on behalf of the other members of the Hyundai Georgia Class, against HMA and HMC.

2250.  Plaintiffs bring this count under Georgia law, individually and on behalf of the other members of the Kia Georgia Class, against KA and KC.

2251. For purposes of this count, members of the Hyundai Georgia Class and Kia Georgia Class shall be referred to as "Class Members."

2252. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2253. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2254. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2255. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2256. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2257. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

10. **Hawaii**

   a. **Hawaii Count 1: Breach of Implied Warranty (Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212) Against HMA and KA**

2258. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2259. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Hawaii Class, against HMA.

2260. Plaintiffs bring this count individually and on behalf of the other members of the Kia Hawaii Class, against KA.

2261. For purposes of this count, the Hyundai Hawaii Class Members and Kia Hawaii Class Members together shall be referred to as "Class Members."

2262. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2263. Defendants were at all relevant times "merchants" with respect to motor vehicles under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), and "sellers" of motor vehicles under § 490:2-103(1)(d).

2264. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Haw. Rev. Stat. § 490:2A-103(a)(16).

2265. The Class Vehicles are and were at all relevant times "goods" within the meaning of Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

2266. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212.

2267. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class

- 419 -

Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2268. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2269. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2270. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2271. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2272. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2273. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

      **b.**    **Hawaii Count 2: Unfair and Deceptive Acts in Violation of Hawaii Law (Haw. Rev. Stat. § 480, *et seq.*) Against All Defendants**

2274. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2275. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Hawaii Class, against HMA and HMC.

2276. Plaintiffs bring this count individually and on behalf of the other members of the Kia Hawaii Class, against KA and KC.

2277. For purposes of this count, the Hyundai Hawaii Class Members and Kia Hawaii Class Members shall be referred to as "Class Members."

2278. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Haw. Rev. Stat. § 480-1.

2279. Plaintiffs and Class Members are "consumers" within the meaning of Haw. Rev. Stat. § 480-1.

2280. The Class Vehicles are "commodities" within the meaning of Haw. Rev. Stat. § 480-1.

2281. Defendants are engaged in trade or commerce within the meaning of Haw.480-1.

2282. The Hawaii Unfair and Deceptive Acts and Practices Act (Hawaii UDAP") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.…" Haw.480-2(a).

2283. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Hawaii UDAP by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2284. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Hawaii UDAP in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.    Defendants had exclusive access to and far superior knowledge about

1         facts regarding the Theft Prone Defect and Defendants knew these

2         facts were not known to or reasonably discoverable by Plaintiffs or

3         Class Members;

4     b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

5         and Class Members lack the sophisticated expertise in vehicle

6         components that would be necessary to discover the Theft Prone

7         Defect on their own;

8     c.    Defendants knew that the Theft Prone Defect gave rise to safety

9         concerns for the consumers who use the Class Vehicles, and the Theft

10       Prone Defect would have been a material fact to the Class Members'

11       decisions to buy or lease Class Vehicles; and

12    d.    Defendants made incomplete representations about the safety and

13       reliability of the Class Vehicles while purposefully withholding

14       material facts about a known safety defect. In uniform advertising and

15       materials provided with each Class Vehicle, HMA, and KA

16       intentionally concealed, suppressed, and failed to disclose to the

17       consumers that the Class Vehicles contained the Theft Prone Defect.

18       Because they volunteered to provide information about the Class

19       Vehicles that they marketed and offered for sale and lease to

20       consumers, HMA and KA had the duty to disclose the whole truth.

21    2285. As detailed above, the information concerning the Theft Prone Defect

22 was known to Defendants at the time of advertising and selling the Class Vehicles,

23 all of which was intended to induce consumers to purchase the Class Vehicles.

24    2286. By misrepresenting the Class Vehicles as safe and reliable and by

25 failing to disclose and actively concealing the dangers and risk posed by the Theft

26 Prone Defect, Defendants engaged in one or more unfair or deceptive business

27 practices as defined Haw. Rev. Stat. § 480-2(a).

28

2287. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2288. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2289. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2290. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2291. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2292. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2293. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2294. Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Hawaii UDAP.

### c. Hawaii Count 3: Fraud by Omission and Concealment Against All Defendants

2295. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2296. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Hawaii Class, against HMA and HMC.

2297. Plaintiffs bring this count individually and on behalf of the other members of the Kia Hawaii Class, against KA and KC.

2298. For purposes of this count, the Hyundai Hawaii Class Members and Kia Hawaii Class Members shall be referred to as "Class Members."

2299. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2300. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.  Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.  Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2301. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2302. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used

motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

2303. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2304. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2305. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2306. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2307. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2308. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2309. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2310. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. Hawaii Count 4: Unjust Enrichment Against All Defendants

2311. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2312. Plaintiffs bring this count under Hawaii law, individually and on behalf of the other members of the Hyundai Hawaii Class, against HMA and HMC.

2313. Plaintiffs bring this count under Hawaii law, individually and on behalf of the other members of the Kia Hawaii Class, against KA and KC.

2314. For purposes of this count, members of the Hyundai Hawaii Class and Kia Hawaii Class shall be referred to as "Class Members."

2315. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2316. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2317. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2318. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2319. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2320. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

## 11.    Idaho

### a.    Idaho Count 1: Breach of Implied Warranty (Idaho Code §§ 28-2-314 and 28-12-212) Against HMA and KA

2321. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2322. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Idaho Class, against HMA.

2323. Plaintiffs bring this count individually and on behalf of the other members of the Kia Idaho Class, against KA.

2324. For purposes of this count, the Hyundai Idaho Class Members and Kia Idaho Class Members together shall be referred to as "Class Members."

2325. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2326. Defendants were at all relevant times "merchants" with respect to motor vehicles Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under § 28-2- 103(1)(d).

2327. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Idaho Code § 28-12-103(1)(p).

2328. The Class Vehicles are and were at all relevant times "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

2329. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant Idaho Code §§ 28-2-314 and 28-12-212.

2330. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2331. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a

substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2332. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2333. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2334. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2335. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2336. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

      **b.**     **Idaho Count 2: Violation of the Idaho Consumer Protection Act (Idaho Code § 48-601, *et seq.*) Against All Defendants**

2337. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2338. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Idaho Class, against HMA and HMC.

2339. Plaintiffs bring this count individually and on behalf of the other members of the Kia Idaho Class, against KA and KC.

2340. For purposes of this count, the Hyundai Idaho Class Members and Kia Idaho Class Members shall be referred to as "Class Members."

2341. Defendants, Plaintiffs and Class Members are "persons" within the meaning of Idaho Code § 48-602(1).

2342. Defendants are engaged in "trade" or "commerce" within the meaning of Idaho Code § 48-602(2).

2343. The Class Vehicles are "goods" within the meaning of Idaho Code § 48-602(6).

2344. The Idaho Consumer Protection Act ("Idaho CPA") makes "unfair methods of competition and unfair or deceptive acts or practices" unlawful.

2345. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2346. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Idaho CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding

- 433 -

material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2347. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2348. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Idaho Code § 48-603:

a. Causing likelihood of confusion or of misunderstanding as to the approval, or certification of the Class Vehicles;

b. Representing that the Class Vehicles had approval, characteristics, uses, or benefits that they did not have;

c. Representing that the Class Vehicles were of a particular standard, quality or grade that they did not have;

d. Advertising the Class Vehicles with the intent not to sell them as advertised;

e. Engaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer; and

f. Engaging in any unconscionable method, act or practice in the conduct of trade or commerce.

Idaho Code § 48-603(2), (5), (7), (9), (17), and (18).

2349. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2350. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2351. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2352. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2353. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2354. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2355. Pursuant to Idaho Code § 48-608, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, punitive damages, and any other just and proper relief available under the Idaho CPA.

### c.   Idaho Count 3: Fraud by Omission and Concealment Against All Defendants

2356. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2357. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Idaho Class, against HMA and HMC.

2358. Plaintiffs bring this count individually and on behalf of the other members of the Kia Idaho Class, against KA and KC.

2359. For purposes of this count, the Hyundai Idaho Class Members and Kia Idaho Class Members shall be referred to as "Class Members."

2360. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2361. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in

connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

    2362. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

    2363. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable

person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

2364. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2365. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2366. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2367. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2368. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2369. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2370. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2371. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.   Idaho Count 4: Unjust Enrichment Against All Defendants

2372. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2373. Plaintiffs bring this count under Idaho law, individually and on behalf of the other members of the Hyundai Idaho Class, against HMA and HMC.

2374. Plaintiffs bring this count under Idaho law, individually and on behalf of the other members of the Kia Idaho Class, against KA and KC.

2375. For purposes of this count, members of the Hyundai Idaho Class and Kia Idaho Class shall be referred to as "Class Members."

2376. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2377. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2378. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2379. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2380. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2381. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**12.   Illinois**

     **a.   Illinois Count 1: Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314 and 5/2A-212) Against HMA and KA**

2382. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2383. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Illinois Class, against HMA.

2384. Plaintiffs bring this count individually and on behalf of the other members of the Kia Illinois Class, against KA.

2385. For purposes of this count, the Hyundai Illinois Class Members and Kia Illinois Class Members together shall be referred to as "Class Members."

2386. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2387. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810 ILCS 5/2-314 and 5/2A-212.

2388. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 810 ILCS 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under 5/2-103(1)(d).

2389. Defendants are and were at all relevant times "lessors" of motor vehicles under 810 ILCS 5/2A-103(1)(p).

2390. All Class Members who purchased Class Vehicles in Illinois are "buyers" within the meaning of 810 ILCS 5/2-103(1)(a).

2391. All State Class Members who leased Class Vehicles in Illinois are "lessees" within the meaning of 810 ILCS 5/2A-103(1)(n).

2392. The Class Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1) and 5/2A-103(1)(h).

2393. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2394. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary

purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2395. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2396. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2397. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice

letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2398.  Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2399.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

### b. Illinois Count 2: Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, *et seq.*) Against All Defendants

2400.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2401.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Illinois Class, against HMA and HMC.

2402.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Illinois Class, against KA and KC.

2403.  For purposes of this count, the Hyundai Illinois Class Members and Kia Illinois Class Members shall be referred to as "Class Members."

2404.  Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of 815 ILCS 505/1(c).

2405. The Plaintiffs and Class Members are "consumers" within the meaning of 815 ILCS 505/1(e).

2406. The Class Vehicles are "merchandise" within the meaning of 815 ILCS 505/1(b).

2407. Defendants were and are engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

2408. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices[.]" 815 ILCS 505/2.

2409. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2410. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety

- 444 -

concerns for the consumers who use the Class Vehicles, and the Theft
Prone Defect would have been a material fact to the Class Members'
decisions to buy or lease Class Vehicles; and

d.     Defendants made incomplete representations about the safety and
reliability of the Class Vehicles while purposefully withholding
material facts about a known safety defect. In uniform advertising and
materials provided with each Class Vehicle, HMA, and KA
intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

2411. As detailed above, the information concerning the Theft Prone Defect
was known to Defendants at the time of advertising and selling the Class Vehicles,
all of which was intended to induce consumers to purchase the Class Vehicles.

2412. By misrepresenting the Class Vehicles as safe and reliable and by
failing to disclose and actively concealing the dangers and risk posed by the Theft
Prone Defect, Defendants engaged in one or more of the following unfair or
deceptive business practices prohibited by 815 ILCS 505/2 and 510/2:

a.     Causing likelihood of confusion or of misunderstanding as to the
approval or certification of the Class Vehicles;

b.     Representing that the Class Vehicles have approval, characteristics,
uses, or benefits that they do not have;

c.     Representing that the Class Vehicles are of a particular standard,
quality, and grade when they are not;

d.     Advertising the Class Vehicles with the intent not to sell or lease them
as advertised;

e.     Engaging in other conduct which created a likelihood of confusion or

1     of misunderstanding; and/or

2       f.     Using or employing deception, fraud, false pretense, false promise or

3             misrepresentation, or the concealment, suppression, or omission of a

4             material fact with intent that others rely upon such concealment,

5             suppression, or omission, in connection with the advertisement and

6             sale/lease of the Class Vehicles, whether or not any person has in fact

7             been misled, deceived, or damaged thereby.

8 ILCS 505/2, 815 ILCS 510/2

9     2413. Defendants intended for Plaintiffs and Class Members to rely on them

10 to provide adequately designed Class Vehicles, and to honestly and accurately

11 reveal the safety hazards described above.

12     2414. Defendants' unfair or deceptive acts or practices were designed to

13 mislead and had a tendency or capacity to mislead and create a false impression in

14 consumers that the Class Vehicles had adequate anti-theft protection, and that the

15 Class Vehicles were not affected by the Theft Prone Defect. Indeed, those

16 misrepresentations, concealments, omissions, and suppressions of material facts did

17 in fact deceive reasonable consumers, including Plaintiffs and Class Members,

18 about the true safety and reliability of Class Vehicles, the quality of the Class

19 Vehicles, and the true value of the Class Vehicles.

20     2415. Defendants' misrepresentations, omissions, and concealment of

21 material facts regarding the Theft Prone Defect and true characteristics of the Class

22 Vehicles were material to the decisions of Plaintiffs and Class Members to purchase

23 and lease those vehicles, as Defendants intended. Plaintiffs and Class Members

24 were exposed to those misrepresentations, concealments, omissions, and

25 suppressions of material facts, and relied on Defendants' misrepresentations that the

26 Class Vehicles were safe and reliable in deciding to purchase and lease Class

27 Vehicles.

28

2416. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2417. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2418. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2419. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2420. Pursuant to 815 ILCS 505/10a, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Illinois CFA.

      **c.   Illinois Count 3: Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/1, *et seq.*) Against All Defendants**

2421. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

2422. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Illinois Class, against HMA and HMC.

2423. Plaintiffs bring this count individually and on behalf of the other members of the Kia Illinois Class, against KA and KC.

2424. For purposes of this count, the Hyundai Illinois Class Members and Kia Illinois Class Members shall be referred to as "Class Members."

2425. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of 815 ILCS 510/1(5).

2426. The Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. 815 ILCS 510/2(a).

2427. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2428. Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a):

    a.    Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

    c.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and

    d.    engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

815 ILCS 510/2(a)(5), (7), (9), and (12)

2429. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2430. Defendants' unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2431. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2432. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2433. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2434. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2435. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2436. Pursuant to 815 ILCS 510/3, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding other just and proper relief available under the Illinois UDTPA.

2437. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### d.   Illinois Count 4: Fraud by Omission and Concealment Against All Defendants

2438. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2439. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Illinois Class, against HMA and HMC.

2440. Plaintiffs bring this count individually and on behalf of the other members of the Kia Illinois Class, against KA and KC.

2441. For purposes of this count, the Hyundai Illinois Class Members and Kia Illinois Class Members shall be referred to as "Class Members."

2442. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2443. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in

connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2444. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2445. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable

person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

2446. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2447. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2448. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2449. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2450. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2451. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2452. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2453. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e.      **Illinois Count 5: Unjust Enrichment Against All Defendants**

2454. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2455. Plaintiffs bring this count under Illinois law, individually and on behalf of the other members of the Hyundai Illinois Class, against HMA and HMC.

2456. Plaintiffs bring this count under Illinois law, individually and on behalf of the other members of the Kia Illinois Class, against KA and KC.

2457. For purposes of this count, members of the Hyundai Illinois Class and Kia Illinois Class shall be referred to as "Class Members."

2458. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2459. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2460. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2461. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2462. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2463. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**13. Indiana**

   **a.    Indiana Count 1: Breach of Implied Warranty of Merchantability (Ind. Code §§ 26-1-2-314 and 26-1-2.1-212) Against HMA and KA**

2464. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2465. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Indiana Class, against HMA.

2466. Plaintiffs bring this count individually and on behalf of the other members of the Kia Indiana Class, against KA.

2467. For purposes of this count, the Hyundai Indiana Class Members and Kia Indiana Class Members shall be referred to as "Class Members."

2468. For purposes of this count, HMA and KA shall be referred to as "Defendants."

2469. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

2470. Defendants were and are at all relevant times "merchants" with respect to motor vehicles under Ind. Code §§ 26-1-2.1-103(3) and 26-1-2-104(1), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

2471. Defendants were and are at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

2472. All Class Members who purchased Class Vehicles in Indiana are "buyers" within the meaning of Ind. Code § 26-1-2-103(1)(a).

2473. All Class Members who leased Class Vehicles in Indiana are "lessees" within the meaning of Ind. Code § 26-1-2.1-103(1)(n).

2474. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ind. Code §§ 26-1-2.1-103(1)(h) and 26-1-2-105(1).

2475. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2476. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary

purpose of providing reasonably reliable, safe, and secure transportation at the time
of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft
Prone Defect, lacking any anti-theft features or design elements to provide an
adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a
substantial safety hazard because the Theft Prone Defect renders Class Vehicles
vulnerable to theft, making them prime targets to be used as instrumentalities
through which thieves engage in reckless driving or other criminal activity.

2477. Any attempt by Defendants to disclaim or limit the implied warranty
of merchantability for their respective Class Vehicles vis-à-vis consumers is
unconscionable and unenforceable. Specifically, Defendants' warranty limitations
are unenforceable because Defendants knowingly sold or leased defective Class
Vehicles without informing consumers about the Theft Prone Defect. The time
limits contained in Defendants' warranty periods were also unconscionable and
inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs
and Class Members had no meaningful choice in determining these time
limitations, the terms of which unreasonably favored Defendants. A gross disparity
in bargaining power existed between Defendants and Plaintiffs and other Class
Members. Additionally, Defendants knew of the Theft Prone Defect at the time of
sale.

2478. Furthermore, the circumstances described herein caused Defendants'
exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and
Class Members may seek alternative remedies. Indeed, these breaches of warranties
have denied Plaintiffs and Class Members the benefit of their respective bargains,
which presupposes they were (or are) able to use the Class Vehicles in a meaningful
manner without the ever–present risk of them being stolen.

2479. Plaintiffs and Class Members have provided Defendants with
reasonable notice and opportunity to cure the breaches of their implied warranties
by way of the numerous complaints filed against them and the individual notice

letters sent by Class Members within a reasonable amount of time after the Theft
Prone Defect became public. Additionally, on August 18, 2022, and September 12,
2022, Class Members sent notice letters to them.

2480. Alternatively, Plaintiffs and the Class Members were excused from
providing Defendants with notice and an opportunity to cure the breach, because it
would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants
have long known that the Class Vehicles contained the Theft Prone Defect;
however, to date, Defendants have not instituted an adequate and meaningful repair
program with respect to the Class Vehicles. As such, Plaintiffs and Class Members
had no reason to believe that Defendants would have adequately repaired the Theft
Prone Defect if they presented their Class Vehicles to them for repair.

2481. As a direct and proximate result of Defendants' breach of the implied
warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were
and are defective, and the Theft Prone Defect in their Class Vehicles has not been
remedied. Therefore, Plaintiffs and Class Members have been damaged, in an
amount to be proven at trial.

**b.      Indiana Count 2: Violation of the Indiana Deceptive
          Consumer Sales Act (Ind. Code § 24-5-0.5-1, *et seq.*) Against
          All Defendants**

2482. Plaintiffs reallege and incorporate by reference all preceding
allegations as though fully set forth herein.

2483. Plaintiffs bring this count individually and on behalf of the other
members of the Hyundai Indiana Class, against HMA and HMC.

2484. Plaintiffs bring this count individually and on behalf of the other
members of the Kia Indiana Class, against KA and KC.

2485. For purposes of this count, the Hyundai Indiana Class Members and
Kia Indiana Class Members shall be referred to as "Class Members."

2486. Defendants are "suppliers" within the meaning of Ind. Code § 24-5-
0.5-2(a)(3).

2487. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Ind. Code § 24-5-0.5-2(a)(2).

2488. Defendants were and are engaged in "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

2489. The Class Vehicles were the "subject of a consumer transaction" within the meaning of Ind. Code §24-5-0.5-2(a)(4).

2490. The Indiana Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a supplier from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a).

2491. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Indiana DCSA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2492. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Indiana DCSA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.     Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2493.  As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2494.  By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ind. Code § 24-5-0.5-3:

a.    Representing that the Class Vehicles have approval, performance, characteristics, accessories, uses, or benefits that they do not have;

b.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and

c.    Advertising the Class Vehicles can be purchased as advertised if the supplier does not intend to sell it as advertised.

Ind. Code §§ 24-5-0.5-3(b)(1), (2), and (11).

2495. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2496. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2497. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2498. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2499. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2500. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2501. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2502. On August 18, 2022, and September 12, 2022, Class Members sent Defendants notice of the Theft Prone Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

2503. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Class Vehicles contained the Theft Prone Defect, however, did nothing to remedy the Theft Prone Defect.

2504. Pursuant to Ind. Code § 24-5-0.5-4, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, treble damages, and any other just and proper relief available under the Indiana DCSA.

**c.    Indiana Count 3: Fraud by Omission and Concealment Against All Defendants**

2505. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2506. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Indiana Class, against HMA and HMC.

2507. Plaintiffs bring this count individually and on behalf of the other members of the Kia Indiana Class, against KA and KC.

2508. For purposes of this count, the Hyundai Indiana Class Members and Kia Indiana Class Members shall be referred to as "Class Members."

2509. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2510. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding

material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2511. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2512. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

2513. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2514. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2515. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and

harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2516. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2517. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2518. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2519. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2520. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Indiana Count 4: Unjust Enrichment Against All Defendants

2521. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2522. Plaintiffs bring this count under Indiana law, individually and on behalf of the other members of the Hyundai Indiana Class, against HMA and HMC.

2523. Plaintiffs bring this count under Indiana law, individually and on behalf of the other members of the Kia Indiana Class, against KA and KC.

2524. For purposes of this count, members of the Hyundai Indiana Class and Kia Indiana Class shall be referred to as "Class Members."

2525. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2526. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2527. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2528. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2529. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2530. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**14.    Iowa**

**a.    Iowa Count 1: Breach of Implied Warranty (Iowa Code §§ 554.2314 and 554.13212) Against HMA and KA**

2531. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2532. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Iowa Class, against HMA.

2533. Plaintiffs bring this count individually and on behalf of the other members of the Kia Iowa Class, against KA.

2534. For purposes of this count, the Hyundai Iowa Class Members and Kia Iowa Class Members shall be referred to as "Class Members."

2535. For purposes of this count, HMA and KA shall be referred to as "Defendants."

2536. Defendants were at all relevant times "merchants" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under § 554.2103(1)(d).

2537. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

2538. The Class Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

2539. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Iowa Code §§ 554.2314 and 554.13212.

2540. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2541. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2542. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity

in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2543. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2544. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2545. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2546. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.    Iowa Count 2: Violation of the Private Right of Action for Consumer Frauds Act (Iowa Code § 714h.1, *et seq.*) Against All Defendants**

2547.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2548.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Iowa Class, against HMA and HMC.

2549.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Iowa Class, against KA and KC.

2550.  For purposes of this count, the Hyundai Iowa Class Members and Kia Iowa Class Members shall be referred to as "Class Members."

2551.  Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of Iowa Code § 714H.2(7).

2552.  Plaintiffs and Class Members are "consumers" within the meaning of Iowa Code § 714H.2(3).

2553.  The Class Vehicles are "merchandise" and "consumer merchandise" within the meanings of Iowa Code § 714H.2(4), and (6).

2554.  The Iowa Private Right of Action for Consumer Frauds Act (the "Iowa CFA") prohibits a person from engaging in any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3(1) .

2555.  In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Iowa CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2556. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair practices, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact under the Iowa CFA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to

- 470 -

consumers, HMA and KA had the duty to disclose the whole truth.

2557. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2558. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risks posed by the Theft Prone Defect, Defendants engaged in deceptive acts or practices including, but not limited conduct prohibited by Iowa Code § 714H.3(1).

2559. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2560. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2561. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2562. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2563. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2564. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2565. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2566. Pursuant to Iowa Code § 714H.5, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the Iowa CFA.

### c. Iowa Count 3: Fraud by Omission and Concealment Against All Defendants

2567. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2568. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Iowa Class, against HMA and HMC.

2569. Plaintiffs bring this count individually and on behalf of the other members of the Kia Iowa Class, against KA and KC.

2570. For purposes of this count, the Hyundai Iowa Class Members and Kia Iowa Class Members shall be referred to as "Class Members."

2571. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2572. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to

consumers, HMA and KA had the duty to disclose the whole truth.

2573. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2574. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

2575. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2576. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2577. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2578. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2579. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did

induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2580. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2581. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2582. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Iowa Count 4: Unjust Enrichment Against All Defendants

2583. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2584. Plaintiffs bring this count under Iowa law, individually and on behalf of the other members of the Hyundai Iowa Class, against HMA and HMC.

2585. Plaintiffs bring this count under Iowa law, individually and on behalf of the other members of the Kia Iowa Class, against KA and KC.

2586. For purposes of this count, members of the Hyundai Iowa Class and Kia Iowa Class shall be referred to as "Class Members."

2587. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2588. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2589. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2590. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2591. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2592. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**15.    Kansas**

  **a.    Kansas Count 1: Breach of Implied Warranty (Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212) Against HMA and KA**

2593. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2594. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Kansas Class, against HMA.

2595. Plaintiffs bring this count individually and on behalf of the other members of the Kia Kansas Class, against KA.

2596. For purposes of this count, the Hyundai Kansas Class Members and Kia Kansas Class Members together shall be referred to as "Class Members."

2597. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2598. Defendants were at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

2599. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

2600. The Class Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

2601. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. Ann. §§ 84- 2-314 and 84-2A-212.

2602. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class

Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2603. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2604. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2605. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2606. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2607. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2608. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

      **b.**      **Kansas Count 2: Violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. § 50-623, *et seq.*) Against All Defendants**

2609. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2610. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Kansas Class, against HMA and HMC.

2611. Plaintiffs bring this count individually and on behalf of the other members of the Kia Kansas Class, against KA and KC.

2612. For purposes of this count, the Hyundai Kansas Class Members and Kia Kansas Class Members shall be referred to as "Class Members."

2613. Defendants are "suppliers" within the meaning of Kan. Stat. Ann. § 50-624(l). The Class Members are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b).

2614. Defendants and Plaintiffs are all "persons" within the meaning of Kan. Stat. Ann. § 50-624(i).

2615. The sale or lease of the Class Vehicles is a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

2616. The Kansas Consumer Credit and Protection Act ("Kansas CPA") states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-626(a).

2617. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Kansas CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2618. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Kansas CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these

1   facts were not known to or reasonably discoverable by Plaintiffs or

2   Class Members;

3   b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

4        and Class Members lack the sophisticated expertise in vehicle

5        components that would be necessary to discover the Theft Prone

6        Defect on their own;

7   c.   Defendants knew that the Theft Prone Defect gave rise to safety

8        concerns for the consumers who use the Class Vehicles, and the Theft

9        Prone Defect would have been a material fact to the Class Members'

10       decisions to buy or lease Class Vehicles; and

11  d.   Defendants made incomplete representations about the safety and

12       reliability of the Class Vehicles while purposefully withholding

13       material facts about a known safety defect. In uniform advertising and

14       materials provided with each Class Vehicle, HMA, and KA

15       intentionally concealed, suppressed, and failed to disclose to the

16       consumers that the Class Vehicles contained the Theft Prone Defect.

17       Because they volunteered to provide information about the Class

18       Vehicles that they marketed and offered for sale and lease to

19       consumers, HMA and KA had the duty to disclose the whole truth.

20  2619. As detailed above, the information concerning the Theft Prone Defect

21  was known to Defendants at the time of advertising and selling the Class Vehicles,

22  all of which was intended to induce consumers to purchase the Class Vehicles.

23  2620. By misrepresenting the Class Vehicles as safe and reliable and free

24  from defects, and by failing to disclose and actively concealing the dangers and risk

25  posed by the Theft Prone Defect, Defendants engaged in one or more

26  unconscionable acts or practices prohibited by Kan. Stat. Ann. § 50-627(a):

27  a.   Representing that the Class Vehicles had approval, accessories,

28       characteristics, uses, or benefits that they do not have;

b.  Representing that the Class Vehicles are of a particular standard or quality that they do not have; and

c.  Representing that the Class Vehicles have uses, benefits or characteristics that Defendants knew they did not have;

d.  Failing to state material facts or willfully concealing, suppressing, or omitting material facts regarding the Class Vehicles; and

e.  Offering the Class Vehicles without the intent to sell them as advertised.

Kan. Stat. Ann. § 50-626(b)(1)(A)(D), (F), (G), (b)(3), (b)(5).

2621. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2622. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2623. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2624. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2625. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2626. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2627. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2628. Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Kansas CPA. Kan. Stat. Rev. § 50-634.

### c. Kansas Count 3: Fraud by Omission and Concealment Against All Defendants

2629. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2630. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Kansas Class, against HMA and HMC.

2631. Plaintiffs bring this count individually and on behalf of the other members of the Kia Kansas Class, against KA and KC.

2632. For purposes of this count, the Hyundai Kansas Class Members and Kia Kansas Class Members shall be referred to as "Class Members."

2633. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2634. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to

consumers, HMA and KA had the duty to disclose the whole truth.

2635. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2636. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

2637. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2638. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2639. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2640. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2641. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did

induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2642. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2643. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2644. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Kansas Count 4: Unjust Enrichment Against All Defendants

2645. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2646. Plaintiffs bring this count under Kansas law, individually and on behalf of the other members of the Hyundai Kansas Class, against HMA and HMC.

2647. Plaintiffs bring this count under Kansas law, individually and on behalf of the other members of the Kia Kansas Class, against KA and KC.

2648. For purposes of this count, members of the Hyundai Kansas Class and Kia Kansas Class shall be referred to as "Class Members."

2649. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2650. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2651. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2652. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2653. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2654. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**16.   Kentucky**

     **a.   Kentucky Count 1: Breach of Implied Warranty (Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212) Against HMA and KA**

2655. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2656. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Kentucky Class, against HMA.

2657. Plaintiffs bring this count individually and on behalf of the other members of the Kia Kentucky Class, against KA.

2658. For purposes of this count, the Hyundai Kentucky Class Members and Kia Kentucky Class Members together shall be referred to as "Class Members."

2659. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2660. Defendants were at all relevant times "merchants" with respect to motor vehicles under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under § 355.2-103(1)(d).

2661. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

2662. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

2663. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212.

2664. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class

Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2665. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2666. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2667. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2668. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2669. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2670. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

> **b.** **Kentucky Count 2: Violation of the Consumer Protection Act (Kentucky Rev. Stat. § 367.110, *et seq.*) Against All Defendants**

2671. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2672. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Kentucky Class, against HMA and HMC.

2673. Plaintiffs bring this count individually and on behalf of the other members of the Kia Kentucky Class, against KA and KC.

2674. For purposes of this count, the Hyundai Kentucky Class Members and Kia Kentucky Class Members shall be referred to as "Class Members."

2675. Defendants, Plaintiffs and Class Members are each a "person" within the meaning of Kentucky Rev. Stat. § 367.110(1).

2676. Defendants are engaged in "trade" and "commerce" within the meaning of Kentucky Rev. Stat. § 367.110(2).

2677. The Kentucky Consumer Protect Action ("Kentucky CPA") states that "[u]nfair, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Kentucky Rev. Stat. § 367.170.

2678. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2679. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair, misleading, or deceptive practices under the Kentucky CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.     Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

and Class Members lack the sophisticated expertise in vehicle
components that would be necessary to discover the Theft Prone
Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety
concerns for the consumers who use the Class Vehicles, and the Theft
Prone Defect would have been a material fact to the Class Members'
decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and
reliability of the Class Vehicles while purposefully withholding
material facts about a known safety defect. In uniform advertising and
materials provided with each Class Vehicle, HMA, and KA
intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

2680. As detailed above, the information concerning the Theft Prone Defect
was known to Defendants at the time of advertising and selling the Class Vehicles,
all of which was intended to induce consumers to purchase the Class Vehicles.

2681. By misrepresenting the Class Vehicles as safe and reliable and free
from defects, and by failing to disclose and actively concealing the dangers and risk
posed by the Theft Prone Defect, Defendants engaged in unfair, misleading, or
deceptive acts or practices in the conduct of trade and commerce as prohibited by
Kentucky Rev. Stat. § 367.170(1).

2682. Defendants intended for Plaintiffs and Class Members to rely on them
to provide adequately designed Class Vehicles, and to honestly and accurately
reveal the safety hazards described above.

2683. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2684. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2685. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2686. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2687. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2688. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2689. Pursuant to Kentucky Rev. Stat. § 367.220, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages, punitive damages, and any other just and proper relief available under the Kentucky CPA.

### c. Kentucky Count 3: Fraud by Omission and Concealment Against All Defendants

2690. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2691. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Kentucky Class, against HMA and HMC.

2692. Plaintiffs bring this count individually and on behalf of the other members of the Kia Kentucky Class, against KA and KC.

2693. For purposes of this count, the Hyundai Kentucky Class Members and Kia Kentucky Class Members shall be referred to as "Class Members."

2694. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2695. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these

- 494 -

1        facts were not known to or reasonably discoverable by Plaintiffs or

2        Class Members;

3    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

4        and Class Members lack the sophisticated expertise in vehicle

5        components that would be necessary to discover the Theft Prone

6        Defect on their own;

7    c.    Defendants knew that the Theft Prone Defect gave rise to safety

8        concerns for the consumers who use the Class Vehicles, and the Theft

9        Prone Defect would have been a material fact to the Class Members'

10        decisions to buy or lease Class Vehicles; and

11    d.    Defendants made incomplete representations about the safety and

12        reliability of the Class Vehicles while purposefully withholding

13        material facts about a known safety defect. In uniform advertising and

14        materials provided with each Class Vehicle, HMA, and KA

15        intentionally concealed, suppressed, and failed to disclose to the

16        consumers that the Class Vehicles contained the Theft Prone Defect.

17        Because they volunteered to provide information about the Class

18        Vehicles that they marketed and offered for sale and lease to

19        consumers, HMA and KA had the duty to disclose the whole truth.

20    2696. In breach of their duties, Defendants failed to disclose the Theft Prone

21 Defect to Plaintiffs and Class Members in connection with the sale of the Class

22 Vehicles.

23    2697. For the reasons set forth above, the Theft Prone Defect within the

24 Class Vehicles is material to the sale of the Class Vehicles because a reasonable

25 person would find it important in purchasing, leasing, or retaining a new or used

26 motor vehicle and because it directly impacts the value of the Class Vehicles

27 purchased or leased by the Plaintiffs and Class Members.

28

2698. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2699. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2700. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2701. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2702. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2703. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2704. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to

them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2705. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. Kentucky Count 4: Unjust Enrichment Against All Defendants

2706. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2707. Plaintiffs bring this count under Kentucky law, individually and on behalf of the other members of the Hyundai Kentucky Class, against HMA and HMC.

2708. Plaintiffs bring this count under Kentucky law, individually and on behalf of the other members of the Kia Kentucky Class, against KA and KC.

2709. For purposes of this count, members of the Hyundai Kentucky Class and Kia Kentucky Class shall be referred to as "Class Members."

2710. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2711. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2712. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2713. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2714. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2715. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 17.   Louisiana

#### a.   Louisiana Count 1: Breach of Implied Warranty of Merchantability/Warranty Against Redhibitory Theft Prone Defects (La. Civ. Code Art. 2520, 2524) Against HMA and KA

2716. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2717. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Louisiana Class, against HMA.

2718. Plaintiffs bring this count individually and on behalf of the other members of the Kia Louisiana Class, against KA.

2719. For purposes of this count, the Hyundai Louisiana Class Members and Kia Louisiana Class Members shall be referred to as "Class Members."

2720. For purposes of this count, HMA and KA shall be referred to as "Defendants."

2721. Defendants were at all relevant times "merchants" with respect to motor vehicles.

2722. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law in the instant transactions.

2723. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2724. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2725. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2726. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2727. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2728. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect;

however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2729. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.    Louisiana Count 2: Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. § 51:1401, *et seq.*) Against All Defendants**

2730. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2731. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Louisiana Class, against HMA and HMC.

2732. Plaintiffs bring this count individually and on behalf of the other members of the Kia Louisiana Class, against KA and KC.

2733. For purposes of this count, the Hyundai Louisiana Class Members and Kia Louisiana Class Members shall be referred to as "Class Members."

2734. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of La. Rev. Stat. § 51:1402(8).

2735. Plaintiffs and Class Members are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1)

2736. Defendants were and are engaged in "trade" and "commerce" within the meaning of La. Rev. Stat. § 51:1402(10).

2737. The sale or lease of the Class Vehicles by Defendants are "consumer transactions" within the meaning of La. Rev. Stat. § 51:1402(3).

2738. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405(A).

2739. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2740. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the CPL in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

   a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

   b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

   c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

   d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding

material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2741. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2742. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce as prohibited by La. Rev. Stat. § 51:1405(A).

2743. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2744. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2745. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2746. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2747. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2748. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2749. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2750. Pursuant to La. Rev. Stat. § 51:1409(A), Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages, treble damages, and other just and proper relief available under the Louisiana CPL.

c.    **Louisiana Count 3: Fraud by Omission and Concealment Against All Defendants**

2751. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2752. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Louisiana Class, against HMA and HMC.

2753. Plaintiffs bring this count individually and on behalf of the other members of the Kia Louisiana Class, against KA and KC.

2754. For purposes of this count, the Hyundai Louisiana Class Members and Kia Louisiana Class Members shall be referred to as "Class Members."

2755. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2756. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft

Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2757. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2758. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

2759. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2760. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2761. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2762. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2763. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2764. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2765. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2766. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.   Louisiana Count 4: Unjust Enrichment Against All Defendants

2767. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2768. Plaintiffs bring this count under Louisiana law, individually and on behalf of the other members of the Hyundai Louisiana Class, against HMA and HMC.

2769. Plaintiffs bring this count under Louisiana law, individually and on behalf of the other members of the Kia Louisiana Class, against KA and KC.

2770. For purposes of this count, members of the Hyundai Louisiana Class and Kia Louisiana Class shall be referred to as "Class Members."

2771. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2772. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2773. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2774. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2775. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2776. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 18.   Maine

#### a.   Maine Count 1: Breach of Implied Warranty (Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212) Against HMA and KA

2777. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2778. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Maine Class, against HMA.

2779. Plaintiffs bring this count individually and on behalf of the other members of the Kia Maine Class, against KA.

2780. For purposes of this count, the Hyundai Maine Class Members and Kia Maine Class Members together shall be referred to as "Class Members."

2781. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2782. Defendants were at all relevant times "merchants" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1), and 2-1103(3), and is a "seller" of motor vehicles under § 2-103(1)(d).

2783. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

2784. The Class Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11 §§ 2-105(1), and 2-1103(1)(h).

2785. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Me. Rev. Stat. Ann. Tit. 11 §§ 2-314, and 2-1212.

2786. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2787. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2788. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and

1    inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs

2    and Class Members had no meaningful choice in determining these time

3    limitations, the terms of which unreasonably favored Defendants. A gross disparity

4    in bargaining power existed between Defendants and Plaintiffs and other Class

5    Members. Additionally, Defendants knew of the Theft Prone Defect at the time of

6    sale.

7        2789. Furthermore, the circumstances described herein caused Defendants'

8    exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

9    Class Members may seek alternative remedies. Indeed, these breaches of warranties

10   have denied Plaintiffs and Class Members the benefit of their respective bargains,

11   which presupposes they were (or are) able to use the Class Vehicles in a meaningful

12   manner without the ever–present risk of them being stolen.

13       2790. Plaintiffs and Class Members have provided Defendants with

14   reasonable notice and opportunity to cure the breaches of their implied warranties

15   by way of the numerous complaints filed against them and the individual notice

16   letters sent by Class Members within a reasonable amount of time after the Theft

17   Prone Defect became public. Additionally, on August 18, 2022, and September 12,

18   2022, Class Members sent notice letters to them.

19       2791. Alternatively, Plaintiffs and the Class Members were excused from

20   providing Defendants with notice and an opportunity to cure the breach, because it

21   would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants

22   have long known that the Class Vehicles contained the Theft Prone Defect;

23   however, to date, Defendants have not instituted an adequate and meaningful repair

24   program with respect to the Class Vehicles. As such, Plaintiffs and Class Members

25   had no reason to believe that Defendants would have adequately repaired the Theft

26   Prone Defect if they presented their Class Vehicles to them for repair.

27       2792. As a direct and proximate result of Defendants' breach of the implied

28   warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were

and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.      Maine Count 2: Violation of the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 § 205-a,** *et seq.***) Against All Defendants**

2793.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2794.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Maine Class, against HMA and HMC.

2795.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Maine Class, against KA and KC.

2796.  For purposes of this count, the Hyundai Maine Class Members and Kia Maine Class Members shall be referred to as "Class Members."

2797.  Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(2).

2798.  Defendants are engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(3).

2799.  The Maine Unfair Trade Practices Act ("Maine UTPA") states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Me. Rev. Stat. Ann. Tit. 5, § 207.

2800.  In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Maine UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2801.  Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Maine UTPA in the course of

their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2802. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2803. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in unfair methods of competition and unfair and deceptive acts or practices prohibited by Me. Rev. Stat. Ann. Tit. 5, § 207.

2804. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2805. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2806. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

2807. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2808. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2809. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2810. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2811. On August 18, 2022, and September 12, 2022, Class Members sent Defendants notice of the Theft Prone Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

2812. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Class Vehicles contained the Theft Prone Defect, however, did nothing to remedy the Theft Prone Defect.

2813. Pursuant to Me. Rev. Stat. Tit. 5 § 213, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, restitution, and any other just and proper relief available under the Maine UTPA.

c.     **Maine Count 3: Fraud by Omission and Concealment Against All Defendants**

2814.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2815.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Maine Class, against HMA and HMC.

2816.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Maine Class, against KA and KC.

2817.  For purposes of this count, the Hyundai Maine Class Members and Kia Maine Class Members shall be referred to as "Class Members."

2818.  Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2819.  Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.     Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.     Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft

Prone Defect would have been a material fact to the Class Members'
decisions to buy or lease Class Vehicles; and

d.     Defendants made incomplete representations about the safety and
reliability of the Class Vehicles while purposefully withholding
material facts about a known safety defect. In uniform advertising and
materials provided with each Class Vehicle, HMA, and KA
intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

2820. In breach of their duties, Defendants failed to disclose the Theft Prone
Defect to Plaintiffs and Class Members in connection with the sale of the Class
Vehicles.

2821. For the reasons set forth above, the Theft Prone Defect within the
Class Vehicles is material to the sale of the Class Vehicles because a reasonable
person would find it important in purchasing, leasing, or retaining a new or used
motor vehicle and because it directly impacts the value of the Class Vehicles
purchased or leased by the Plaintiffs and Class Members.

2822. Defendants intended for the Plaintiffs and Class Members to rely on
their omissions and concealment—which they did by purchasing and leasing the
Class Vehicles at the prices they paid believing that their vehicles would not have a
Theft Prone Defect that would affect the quality, reliability, and safety of the Class
Vehicles.

2823. Plaintiffs and Class Members' reliance was reasonable, as they had no
way of discerning that learning the facts that Defendants had concealed or failed to
disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants'
deception on their own.

2824. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2825. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2826. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2827. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2828. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2829. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

d.  **Maine Count 4: Unjust Enrichment Against All Defendants**

2830. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2831. Plaintiffs bring this count under Maine law, individually and on behalf of the other members of the Hyundai Maine Class, against HMA and HMC.

2832. Plaintiffs bring this count under Maine law, individually and on behalf of the other members of the Kia Maine Class, against KA and KC.

2833. For purposes of this count, members of the Hyundai Maine Class and Kia Maine Class shall be referred to as "Class Members."

2834. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2835. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2836. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2837. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2838. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and

Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2839. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 19. Maryland

#### a. Maryland Count 1: Breach of Implied Warranty of Merchantability (Md. Code Com. Law §§ 2-314 and 2A-212) Against HMA and KA

2840. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2841. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Maryland Class, against HMA.

2842. Plaintiffs bring this count individually and on behalf of the other members of the Kia Maryland Class, against KA.

2843. For purposes of this count, the Hyundai Maryland Class Members and Kia Maryland Class Members together shall be referred to as "Class Members."

2844. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2845. Defendants are and were at all relevant times "merchants" with respect to motor vehicles Md. Code Com. Law §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

2846. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code. Com. Law § 2A-103(1)(p).

2847. All Class Members who purchased Class Vehicles in Maryland are "buyers" within the meaning of Md. Code. Com. Law § 2-103(1)(a).

2848. All Class Members who leased Class Vehicles in Maryland are "lessees" within the meaning of Md. Code. Com. Law § 2A-103(1)(n).

2849. The Class Vehicles are and were at all relevant times "goods" within the meaning of Md. Code. Com. Law §§ 2-105(1) and 2A-103(1)(h).

2850. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Md. Code Com. Law §§ 2-314 and 2A-212.

2851. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2852. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2853. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class

Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2854. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2855. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2856. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2857. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.    Maryland Count 2: Violation of the Maryland Consumer Protection Act (Md. Code, Com. Law, § 13-101, *et seq.*) Against All Defendants**

2858. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2859. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Maryland Class, against HMA and HMC.

2860. Plaintiffs bring this count individually and on behalf of the other members of the Kia Maryland Class, against KA and KC.

2861. For purposes of this count, the Hyundai Maryland Class Members and Kia Maryland Class Members shall be referred to as "Class Members."

2862. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Md. Code, Com. Law, § 13-101(h).

2863. Plaintiffs and Class Members are "consumers" within the meaning of Md. Code, Com. Law, § 13-101(c).

2864. The Class Vehicles and installed in them are "merchandise" within the meaning of Md. Code, Com. Law, § 13-101(f).

2865. The Maryland Consumer Protection Act ("Maryland CPA") declares that "[a] person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division." Md. Code, Com. Law, § 13-303. Section 13-301 defines "unfair, abusive or deceptive trade practices." *Id.* at § 13-301.

2866. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and

intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2867. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Maryland CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.     Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.     Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.     Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to

1    consumers, HMA and KA had the duty to disclose the whole truth.

2    2868. As detailed above, the information concerning the Theft Prone Defect

3    was known to Defendants at the time of advertising and selling the Class Vehicles,

4    all of which was intended to induce consumers to purchase the Class Vehicles.

5    2869. By misrepresenting the Class Vehicles as safe and reliable, and by

6    failing to disclose and actively concealing the dangers and risk posed by the Theft

7    Prone Defect, Defendants engaged in one or more of the following unfair or

8    deceptive business practices prohibited by Md. Code, Com. Law, § 13-303:

9    a.    Making false or misleading oral or written statements, visual

10        descriptions, or other representations of any kind which had the

11        tendency or effect of deceiving or misleading consumers about the

12        Class Vehicles;

13    b.    Representing that the Class Vehicles have approval, accessories,

14        characteristics, uses, and benefits that they do not have;

15    c.    Representing that the Class Vehicles are of a particular standard,

16        quality, or grade when they are not;

17    d.    Failure to state material facts about the Class Vehicles that deceives or

18        tends to deceive;

19    e.    Advertising the Class Vehicles with the intent not to sell or lease them

20        as advertised; and

21    f.    Engaging in deception, fraud, false pretense, false premise,

22        misrepresentation, or knowing concealment, suppression, or omission

23        of material facts regarding the safety of the Class Vehicles.

24    Md. Code, Com. Law, §§ 13-301(1), (2)(i), (2)(iv), (3), (5)(i), and (9)(i).

25    2870. Defendants intended for Plaintiffs and Class Members to rely on them

26    to provide adequately designed Class Vehicles, and to honestly and accurately

27    reveal the safety hazards described above.

28

- 525 -

2871. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

2872. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease those vehicles.

2873. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2874. Had they known the truth, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2875. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2876. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2877. Pursuant to Md. Code, Com. Law, § 13-408, Plaintiffs and Class Members seek an order enjoining Defendant'' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Maryland CPA.

### c. Maryland Count 3: Fraud by Omission and Concealment Against All Defendants

2878. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2879. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Maryland Class, against HMA and HMC.

2880. Plaintiffs bring this count individually and on behalf of the other members of the Kia Maryland Class, against KA and KC.

2881. For purposes of this count, the Hyundai Maryland Class Members and Kia Maryland Class Members shall be referred to as "Class Members."

2882. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2883. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these

1        facts were not known to or reasonably discoverable by Plaintiffs or

2        Class Members;

3   b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

4        and Class Members lack the sophisticated expertise in vehicle

5        components that would be necessary to discover the Theft Prone

6        Defect on their own;

7   c.   Defendants knew that the Theft Prone Defect gave rise to safety

8        concerns for the consumers who use the Class Vehicles, and the Theft

9        Prone Defect would have been a material fact to the Class Members'

10       decisions to buy or lease Class Vehicles; and

11   d.   Defendants made incomplete representations about the safety and

12       reliability of the Class Vehicles while purposefully withholding

13       material facts about a known safety defect. In uniform advertising and

14       materials provided with each Class Vehicle, HMA, and KA

15       intentionally concealed, suppressed, and failed to disclose to the

16       consumers that the Class Vehicles contained the Theft Prone Defect.

17       Because they volunteered to provide information about the Class

18       Vehicles that they marketed and offered for sale and lease to

19       consumers, HMA and KA had the duty to disclose the whole truth.

20   2884. In breach of their duties, Defendants failed to disclose the Theft Prone

21 Defect to Plaintiffs and Class Members in connection with the sale of the Class

22 Vehicles.

23   2885. For the reasons set forth above, the Theft Prone Defect within the

24 Class Vehicles is material to the sale of the Class Vehicles because a reasonable

25 person would find it important in purchasing, leasing, or retaining a new or used

26 motor vehicle and because it directly impacts the value of the Class Vehicles

27 purchased or leased by the Plaintiffs and Class Members.

28

2886. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2887. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2888. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2889. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2890. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2891. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2892. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to

them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2893. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.  Maryland Count 4: Unjust Enrichment Against All Defendants

2894. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2895. Plaintiffs bring this count under Maryland law, individually and on behalf of the other members of the Hyundai Maryland Class, against HMA and HMC.

2896. Plaintiffs bring this count under Maryland law, individually and on behalf of the other members of the Kia Maryland Class, against KA and KC.

2897. For purposes of this count, members of the Hyundai Maryland Class and Kia Maryland Class shall be referred to as "Class Members."

2898. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2899. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2900. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2901. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2902. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2903. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 20. Massachusetts

#### a. Massachusetts Count 1: Breach of Implied Warranty of Merchantability (Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212) Against HMA and KA

2904. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2905. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Massachusetts Class, against HMA.

2906. Plaintiffs bring this count individually and on behalf of the other members of the Kia Massachusetts Class, against KA.

2907. For purposes of this count, the Hyundai Massachusetts Class Members and Kia Massachusetts Class Members together shall be referred to as "Class Members."

2908. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2909. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mass. Gen. Laws ch. 106, §§ 2-314 and 2A-212.

2910. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mass. Gen. Laws ch. 106, §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

2911. Defendants are and were at all relevant times "lessors" of motor vehicles under Mass. Gen. Laws ch. 106, § 2A-103(1)(p).

2912. All Class Members who purchased Class Vehicles in Massachusetts are "buyers" within the meaning of Mass. Gen. Laws ch. 106, § 2-103(1)(a).

2913. All Class Members who leased Class Vehicles in Massachusetts are "lessees" within the meaning of Mass. Gen. Laws ch. 106, § 2A-103(1)(n).

2914. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws ch. 106, §§ 2-105(1) and 2A-103(1)(h).

2915. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2916. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2917. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2918. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2919. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2920. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2921. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

      **b.**    **Massachusetts Count 2: Violation of the Deceptive Acts or Practices Prohibited By Massachusetts Law (Mass. Gen. Laws ch. 93a, § 1, *et seq.*) Against All Defendants**

2922. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2923. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Massachusetts Class, against HMA and HMC.

2924. Plaintiffs bring this count individually and on behalf of the other members of the Kia Massachusetts Class, against KA and KC.

2925. For purposes of this count, the Hyundai Massachusetts Class Members and Kia Massachusetts Class Members shall be referred to as "Class Members."

2926. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Mass. Gen. Laws ch. 93A, § 1(a).

2927. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws ch. 93A, § 1(b).

2928. The Massachusetts consumer protection law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws ch. 93A, § 2.

2929. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2930. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Massachusetts Act in the course of their business. Specifically, Defendants owed the Massachusetts Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety

concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.      Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2931. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2932. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Mass. Gen. Laws ch. 93A, § 2.

2933. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2934. Defendants' unfair methods of competition and unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs and Class Members,

about the true safety and reliability of Class Vehicles, the quality of Class Vehicles, and the true value of Class Vehicles.

2935. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts were material regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease the Class Vehicles.

2936. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2937. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

2938. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2939. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

2940. On August 18, 2022, and September 12, 2022, Class Members sent Defendants notice of the Theft Prone Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the

governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

2941. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Class Vehicles contained the Theft Prone Defect, however, did nothing to remedy the Theft Prone Defect.

2942. Pursuant to Mass. Gen. Laws ch. 93A, § 9, the Plaintiffs and Class Members seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Massachusetts Act.

### c. Massachusetts Count 3: Fraud by Omission and Concealment Against All Defendants

2943. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2944. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Massachusetts Class, against HMA and HMC.

2945. Plaintiffs bring this count individually and on behalf of the other members of the Kia Massachusetts Class, against KA and KC.

2946. For purposes of this count, the Hyundai Massachusetts Class Members and Kia Massachusetts Class Members shall be referred to as "Class Members."

2947. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

2948. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a

duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2949. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

2950. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

2951. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

2952. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

2953. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

2954. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

2955. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

2956. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

2957. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

2958. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.     Massachusetts Count 4: Unjust Enrichment Against All Defendants

2959. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

2960. Plaintiffs bring this count under Massachusetts law, individually and on behalf of the other members of the Hyundai Massachusetts Class, against HMA and HMC.

2961. Plaintiffs bring this count under Massachusetts law, individually and on behalf of the other members of the Kia Massachusetts Class, against KA and KC.

2962. For purposes of this count, members of the Hyundai Massachusetts Class and Kia Massachusetts Class shall be referred to as "Class Members."

2963. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

2964. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

2965. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

2966. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

2967. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

2968. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**21.    Michigan**

      **a.    Michigan Count 1: Breach of Implied Warranty of Merchantability (Mich. Comp. Laws §§ 440.2314 and 440.2862) Against HMA and KA**

2969. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2970. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Michigan Class, against HMA.

2971. Plaintiffs bring this count individually and on behalf of the other members of the Kia Michigan Class, against KA.

2972. For purposes of this count, the Hyundai Michigan Class Members and Kia Michigan Class Members together shall be referred to as "Class Members."

2973. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

2974. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mich. Comp. Laws §§ 440.2314 and 440.2862.

2975. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), and "sellers" of motor vehicles under § 440.2103(1)(c).

2976. Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

2977. All Class Members who purchased Class Vehicles in Michigan are "buyers" within the meaning of Mich. Comp. Laws § 440.2103(1)(a).

2978. All Class Members who leased Class Vehicles in Michigan are "lessees" within the meaning of Mich. Comp. Laws § 440.2803(1)(n).

2979. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

2980.  Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2981.  However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2982.  Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity

in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

2983. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2984. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

2985. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

2986. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

### b. Michigan Count 2: Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901, *et seq.*) Against All Defendants

2987. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2988. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Michigan Class, against HMA and HMC.

2989. Plaintiffs bring this count individually and on behalf of the other members of the Kia Michigan Class, against KA and KC.

2990. For purposes of this count, the Hyundai Michigan Class Members and Kia Michigan Class Members shall be referred to as "Class Members."

2991. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

2992. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

2993. The Michigan Consumer Protection Act ("Michigan CPA") prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce[.]" Mich. Comp. Laws § 445.903(1).

2994. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Michigan CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

2995. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Michigan CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because they possessed exclusive knowledge of and intentionally concealed the Theft Prone Defect from Plaintiffs and Class Members, and they

made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

  a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

  b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

  c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

  d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

2996. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

2997. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft

Prone Defect, Defendants engaged in one or more of the unfair or deceptive business practices prohibited by Mich. Comp. Laws §§ 445.903:

    a.    Causing a probability of confusion or misleading as to the approval or certification of the Class Vehicles;

    b.    Representing that the Class Vehicles have approval, characteristics, uses, or benefits which they do not have;

    c.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

    d.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised;

    e.    Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; and

    f.    Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner.

Mich. Comp. Laws §§ 445.903(1)(a), (c), (e), (g), (s), and (cc).

2998. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

2999. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of those vehicles.

3000. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3001. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3002. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Kia Class Vehicles, or would have paid significantly less for them.

3003. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and failure to disclose material information.

3004. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3005. Pursuant to Mich. Comp. Laws § 445.911, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Michigan CPA.

c.    **Michigan Count 3: Fraud by Omission and Concealment Against KC and KA**

3006. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3007. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Michigan Class, against HMA and HMC.

3008. Plaintiffs bring this count individually and on behalf of the other members of the Kia Michigan Class, against KA and KC.

3009. For purposes of this count, the Hyundai Michigan Class Members and Kia Michigan Class Members shall be referred to as "Class Members."

3010. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3011. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft

Prone Defect would have been a material fact to the Class Members'
decisions to buy or lease Class Vehicles; and

d.       Defendants made incomplete representations about the safety and
reliability of the Class Vehicles while purposefully withholding
material facts about a known safety defect. In uniform advertising and
materials provided with each Class Vehicle, HMA, and KA
intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

3012.  In breach of their duties, Defendants failed to disclose the Theft Prone
Defect to Plaintiffs and Class Members in connection with the sale of the Class
Vehicles.

3013.  For the reasons set forth above, the Theft Prone Defect within the
Class Vehicles is material to the sale of the Class Vehicles because a reasonable
person would find it important in purchasing, leasing, or retaining a new or used
motor vehicle and because it directly impacts the value of the Class Vehicles
purchased or leased by the Plaintiffs and Class Members.

3014.  Defendants intended for the Plaintiffs and Class Members to rely on
their omissions and concealment—which they did by purchasing and leasing the
Class Vehicles at the prices they paid believing that their vehicles would not have a
Theft Prone Defect that would affect the quality, reliability, and safety of the Class
Vehicles.

3015.  Plaintiffs and Class Members' reliance was reasonable, as they had no
way of discerning that learning the facts that Defendants had concealed or failed to
disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants'
deception on their own.

3016. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3017. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3018. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3019. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3020. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3021. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.      Michigan Count 4: Unjust Enrichment Against All Defendants

3022. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3023. Plaintiffs bring this count under Michigan law, individually and on behalf of the other members of the Hyundai Michigan Class, against HMA and HMC.

3024. Plaintiffs bring this count under Michigan law, individually and on behalf of the other members of the Kia Michigan Class, against KA and KC.

3025. For purposes of this count, members of the Hyundai Michigan Class and Kia Michigan Class shall be referred to as "Class Members."

3026. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3027. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3028. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3029. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3030. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3031. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

## 22. Minnesota

### a. Minnesota Count 1: Breach of Implied Warranty of Merchantability (Minn. Stat. §§ 336.2-314 and 336.2A-212) Against HMA and KA

3032. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3033. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Minnesota Class, against HMA.

3034. Plaintiffs bring this count individually and on behalf of the other members of the Kia Minnesota Class, against KA.

3035. For purposes of this count, the Hyundai Minnesota Class Members and Kia Minnesota Class Members together shall be referred to as "Class Members."

3036. For purposes of this count, HMA and KA together shall be referred to as "Defendants."

3037. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

3038. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3), and "sellers" of motor vehicles under § 336.2-103(1)(d).

3039. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

3040. All Class Members who purchased Class Vehicles in Minnesota are "buyers" within the meaning of Minn. Stat. § 336.2-103(1)(a),

3041. All Class Members who leased Class Vehicles in Minnesota are "lessees" within the meaning of Minn. Stat. § 336.2A-103(1)(n).

3042. The Class Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

3043. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3044. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3045. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3046. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3047. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

3048. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect;

however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

3049. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

>               **b.**    **Minnesota Count 2: Violation of the Minnesota Prevention of Consumer Fraud Act (Minn. Stat. § 325F.68, *et seq.* and Minn. Stat. § 8.31, subd. 3a) Against All Defendants**

3050. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3051. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Minnesota Class, against HMA and HMC.

3052. Plaintiffs bring this count individually and on behalf of the other members of the Kia Minnesota Class, against KA and KC.

3053. For purposes of this count, the Hyundai Minnesota Class Members and Kia Minnesota Class Members together shall be referred to as "Class Members."

3054. Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of Minn. Stat. § 325F.68(3).

3055. The Class Vehicles are "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

3056. The Minnesota Prevention of Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any

merchandise, whether or not any person has in fact been misled, deceived, or damaged[.]" Minn. Stat. § 325F.69(1).

3057. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the California FAL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3058. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Minnesota CFA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA

intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3059. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3060. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect to both consumers and NHTSA, Defendants engaged in unfair or deceptive business practices prohibited by Minn. Stat. § 325F.69, including use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise.

3061. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3062. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3063. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3064. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3065. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3066. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3067. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3068. Pursuant to Minn. Stat. §§ 8.31(3a) and 549.20(1)(a), Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Minnesota CFA.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   c.   **Minnesota Count 3: Violation of the Minnesota Uniform Deceptive Trade Practices Act (Minn. Stat. § All Defendants**

3069. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI above as though fully set forth herein.

3070. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Minnesota Class, against HMA and HMC.

3071. Plaintiffs bring this count individually and on behalf of the other members of the Kia Minnesota Class, against KA and KC.

3072. For purposes of this count, the Hyundai Minnesota Class Members and Kia Minnesota Class Members together shall be referred to as "Class Members."

3073. The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. Minn. Stat. § 325D.44, Subd. 1.

3074. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3075. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Minnesota DTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

   a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

   b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.     Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.     Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3076.  As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3077.  By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect to both consumers and NHTSA, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Minn. Stat. § 325D.44, Subd. 1:

a.     Causing likelihood of confusion or misunderstanding as the approval or certification of the Class Vehicles;

b.     Representing that the Class Vehicles have characteristics, uses, and benefits which they do not have;

c.     Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

d.     Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and

e.     Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. §§ 325D.44, Subd. 1(1) (5), (7), (9), and (13).

3078. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3079. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3080. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3081. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or

otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3082. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3083. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3084. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3085. Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and any other just and proper relief available under the Minnesota CFA.

### d.   Minnesota Count 4: Fraud by Omission and Concealment Against All Defendants

3086. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3087. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Minnesota Class, against HMA and HMC.

3088. Plaintiffs bring this count individually and on behalf of the other members of the Kia Minnesota Class, against KA and KC.

3089. For purposes of this count, the Hyundai Minnesota Class Members and Kia Minnesota Class Members shall be referred to as "Class Members."

3090. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3091. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to

consumers, HMA and KA had the duty to disclose the whole truth.

3092. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3093. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3094. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3095. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3096. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3097. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3098. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did

induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3099. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3100. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3101. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e.   Minnesota Count 5: Unjust Enrichment Against All Defendants

3102. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3103. Plaintiffs bring this count under Minnesota law, individually and on behalf of the other members of the Hyundai Minnesota Class, against HMA and HMC.

3104. Plaintiffs bring this count under Minnesota law, individually and on behalf of the other members of the Kia Minnesota Class, against KA and KC.

3105. For purposes of this count, members of the Hyundai Minnesota Class and Kia Minnesota Class shall be referred to as "Class Members."

3106. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3107. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3108. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3109. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3110. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3111. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

23. **Mississippi**

    a.    **Mississippi Count 1: Breach of Implied Warranty (Miss. Code §§ 75-2-314 and 75-2A-212) Against HMA, and KA**

3112. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3113. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Mississippi Class, against HMA.

3114. Plaintiffs bring this count individually and on behalf of the other members of the Kia Mississippi Class, against KA.

3115. For purposes of this count, the Hyundai Mississippi Class Members and Kia Mississippi Class Members shall be referred to as "Class Members."

3116. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3117. Defendants were at all relevant times "merchants" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

3118. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

3119. The Class Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

3120. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Miss. Code §§ 75-2- 314 and 75-2A-212.

3121. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class

Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3122. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3123. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3124. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3125. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

3126. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

3127. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

      **b.**    **Mississippi Count 2: Violation of the Mississippi Consumer Protection Act (Miss. Code. Ann. § 75-24-1, *et seq.*) Against All Defendants**

3128. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3129. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Mississippi Class, against HMA and HMC.

3130. Plaintiffs bring this count individually and on behalf of the other members of the Kia Mississippi Class, against KA and KC.

3131. For purposes of this count, the Hyundai Mississippi Class Members and Kia Mississippi Class Members shall be referred to as "Class Members."

3132. Defendants, Plaintiffs and Class Members are "persons" within the meaning of Miss. Code Ann. § 75-24-3(a).

3133. Defendants are engaged in "trade" and "commerce" within the meaning of Miss. Code Ann. § 75-24-3(b).

3134. The Mississippi Consumer Protection Act ("Miss. CPA") states that "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited." Miss. Code Ann. § 75-24-5(1).

3135. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Miss. CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3136. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Miss. CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.     Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3137. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3138. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Miss. Code Ann. § 75-24-5:

a. Misrepresenting the approval or certification of the Class Vehicles;

b. Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

c. Representing that the Class Vehicles are of a particular standard,

quality, and grade when they are not; and

d.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised.

Miss. Code Ann. § 75-24-5(2)(b), (e), (g), and (i).

3139. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3140. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3141. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3142. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3143. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3144. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3145. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3146. On August 18, 2022, and September 12, 2022, Class Members sent Defendants notice of the Theft Prone Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiffs seek all damages and relief to which Class Members are entitled.

3147. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Class Vehicles contained the Theft Prone Defect, however, did nothing to remedy the Theft Prone Defect.

3148. Pursuant to Miss Code Ann. §§ 75-24-9, -11, and -15, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Miss. CPA, including but not limited to, restitution under Miss. Code Ann. § 75-24-11.

c.    **Mississippi Count 3: Fraud by Omission and Concealment Against All Defendants**

3149.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3150.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Mississippi Class, against HMA and HMC.

3151.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Mississippi Class, against KA and KC.

3152.  For purposes of this count, the Hyundai Mississippi Class Members and Kia Mississippi Class Members shall be referred to as "Class Members."

3153.  Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3154.  Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft

Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3155. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3156. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3157. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3158. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3159. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3160. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3161. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3162. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3163. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3164. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.   Mississippi Count 4: Unjust Enrichment Against All Defendants

3165. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3166. Plaintiffs bring this count under Mississippi law, individually and on behalf of the other members of the Hyundai Mississippi Class, against HMA and HMC.

3167. Plaintiffs bring this count under Mississippi law, individually and on behalf of the other members of the Kia Mississippi Class, against KA and KC.

3168. For purposes of this count, members of the Hyundai Mississippi Class and Kia Mississippi Class shall be referred to as "Class Members."

3169. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3170. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3171. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3172. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3173. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3174. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 24.   Missouri

#### a.   Missouri Count 1: Breach of Implied Warranty of Merchantability (Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212) Against HMA and KA

3175. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3176. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Missouri Class, against HMA.

3177. Plaintiffs bring this count individually and on behalf of the other members of the Kia Missouri Class, against KA.

3178. For purposes of this count, the Hyundai Missouri Class Members and Kia Missouri Class Members shall be referred to as "Class Members."

3179. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3180. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212.

3181. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104(1) and 400.2A-103(3), and "sellers" of motor vehicles under § 400.2-103(1)(d).

3182. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mo. Rev. Stat. § 400.2A-103(1)(p).

3183. Class Members who purchased Class Vehicles in Missouri are "buyers" within the meaning of Mo. Rev. Stat. § 400.2-103(1)(a).

3184. Class Members who leased Class Vehicles in Missouri are "lessees" within the meaning of Mo. Rev. Stat. § 400.2A-103(1)(n).

3185. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mo. Rev. Stat. §§ 400.2-105(1) and 400.2A-103(1)(h).

3186. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3187. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3188. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3189. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3190. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

3191. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect;

however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

3192. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

       **b.**      **Missouri Count 2: Violation of the Missouri Merchandising Practices Act (Mo. Rev. Stat. § 407.010, *et seq.*) Against All Defendants**

3193. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3194. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Missouri Class, against HMA and HMC.

3195. Plaintiffs bring this count individually and on behalf of the other members of the Kia Missouri Class, against KA and KC.

3196. For purposes of this count, the Hyundai Missouri Class Members and Kia Missouri Class Members shall be referred to as "Class Members."

3197. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

3198. Defendants were and are engaged in "trade or commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

3199. The Class Vehicles are "merchandise" within the meaning of Mo. Rev. Sta. § 407.010(4). The sale or lease of the Class Vehicles is a "sale" within the meaning of Mo. Rev. Stat. § 407.010(6).

3200. The Missouri Merchandising Practices Act ("Missouri MPA") states that "[t]he act, use or employment by any person of any deception, fraud, false

pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020(1).

3201. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3202. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Missouri MPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding

material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3203. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3204. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Mo. Rev. Stat. § 407.020(1): using or employing deception, fraud, false pretense, false promise or misrepresentation, unfair practice or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of the Class Vehicles in trade or commerce.

3205. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3206. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and State Class

Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3207. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Kia Class Vehicles.

3208. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3209. Had Class Members known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3210. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3211. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3212. Pursuant to Mo. Rev. Stat. § 407.025, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and

awarding damages, punitive damages and any other just and proper relief available under the Missouri MPA.

### c. Missouri Count 3: Fraud by Omission and Concealment Against All Defendants

3213. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3214. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Missouri Class, against HMA and HMC.

3215. Plaintiffs bring this count individually and on behalf of the other members of the Kia Missouri Class, against KA and KC.

3216. For purposes of this count, the Hyundai Missouri Class Members and Kia Missouri Class Members shall be referred to as "Class Members."

3217. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3218. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.  Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.     Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.     Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they voluntarily to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3219.  In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3220.  For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3221.  Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3222.  Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to

disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3223. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3224. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3225. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3226. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3227. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3228. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to

deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. Missouri Count 4: Unjust Enrichment Against All Defendants

3229. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3230. Plaintiffs bring this count under Missouri law, individually and on behalf of the other members of the Hyundai Missouri Class, against HMA and HMC.

3231. Plaintiffs bring this count under Missouri law, individually and on behalf of the other members of the Kia Missouri Class, against KA and KC.

3232. For purposes of this count, members of the Hyundai Missouri Class and Kia Missouri Class shall be referred to as "Class Members."

3233. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3234. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3235. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3236. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3237. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3238. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 25. Montana

#### a. Montana Count 1: Breach of Implied Warranty (Mont. Code §§ 30-2-314 and 30-2A-212) Against HMA and KA

3239. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3240. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Montana Class, against HMA.

3241. Plaintiffs bring this count individually and on behalf of the other members of the Kia Montana Class, against KA.

3242. For purposes of this count, Hyundai Montana Class Members and Kia Montana Class Members shall be referred to as "Class Members."

3243. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3244. Defendants were at all relevant times "merchants" with respect to motor vehicles under Mont. Code § 30-2-104(1) and "sellers" of motor vehicles under § 30-2-103(1)(d).

3245. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Mont. Code § 30-2A-103(1)(p).

3246. The Class Vehicles are and were at all relevant times "goods" within the meaning of Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).5. 904.

3247. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Mont. Code §§ 30-2- 314 and 30-2A-212.

3248. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3249. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3250. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is

unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3251. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3252. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

3253. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members

had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

3254. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

> **b.    Montana Count 2: Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1973 (Mont. Code Ann. § 30-14-101, *et seq.*) Against All Defendants**

3255. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3256. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Montana Class, against HMA and HMC.

3257. Plaintiffs bring this count individually and on behalf of the other members of the Kia Montana Class, against KA and KC.

3258. For purposes of this count, Hyundai Montana Class Members and Kia Montana Class Members shall be referred to as "Class Members."

3259. Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

3260. Plaintiffs and Class Members are "consumers" within the meaning of Mont. Code Ann. § 30-14-102(1).

3261. Defendants are engaged in "trade" or "commerce" within the meaning of Mont. Code Ann. § 30-14-102(8).

3262. The Montana Unfair Trade practices and Consumer Protection Act ("Montana CPA") states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code Ann. § 30-14-103.

3263. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Montana CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3264. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Montana CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect.

Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3265. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3266. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged unfair methods of competition and/or unfair or deceptive acts or practices in the conduct of any trade or commerce in violation of Mont. Code Ann. § 30-14-103.

3267. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3268. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3269. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the

Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3270. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

3271. Had Plaintiffs and Class Members known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3272. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3273. Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3274. Pursuant to Mont. Code Ann. §30-14-133, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, treble damages, and any other just and proper relief available under the Montana CPA.

### c. Montana Count 3: Fraud by Omission and Concealment Against All Defendants

3275. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3276. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Montana Class, against HMA and HMC.

3277. Plaintiffs bring this count individually and on behalf of the other members of the Kia Montana Class, against KA and KC.

3278. For purposes of this count, the Hyundai Montana Class Members and Kia Montana Class Members shall be referred to as "Class Members."

3279. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3280. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA

- 598 -

intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

3281. In breach of their duties, Defendants failed to disclose the Theft Prone
Defect to Plaintiffs and Class Members in connection with the sale of the Class
Vehicles.

3282. For the reasons set forth above, the Theft Prone Defect within the
Class Vehicles is material to the sale of the Class Vehicles because a reasonable
person would find it important in purchasing, leasing, or retaining a new or used
motor vehicle and because it directly impacts the value of the Class Vehicles
purchased or leased by the Plaintiffs and Class Members.

3283. Defendants intended for the Plaintiffs and Class Members to rely on
their omissions and concealment—which they did by purchasing and leasing the
Class Vehicles at the prices they paid believing that their vehicles would not have a
Theft Prone Defect that would affect the quality, reliability, and safety of the Class
Vehicles.

3284. Plaintiffs and Class Members' reliance was reasonable, as they had no
way of discerning that learning the facts that Defendants had concealed or failed to
disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants'
deception on their own.

3285. Defendants actively concealed and suppressed these material facts, in
whole or in part, to maintain a market for the Class Vehicles, to protect profits, and
to avoid costly recalls that would expose them to liability for those expenses and
harm the commercial reputations of Defendants and their products. They did so at
the expense of Plaintiffs and Class Members.

3286. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3287. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3288. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3289. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3290. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. Montana Count 4: Unjust Enrichment Against All Defendants

3291. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3292. Plaintiffs bring this count under Montana law, individually and on behalf of the other members of the Hyundai Montana Class, against HMA and HMC.

3293. Plaintiffs bring this count under Montana law, individually and on behalf of the other members of the Kia Montana Class, against KA and KC.

3294. For purposes of this count, members of the Hyundai Montana Class and Kia Montana Class shall be referred to as "Class Members."

3295. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3296. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3297. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3298. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3299. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3300. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 26.    Nebraska

#### a.    Nebraska Count 1: Breach of Implied Warranty (Neb. Rev. St. U.C.C. §§ 2-314 and 2A-212) Against HMA and KA

3301. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3302. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Nebraska Class, against HMA.

3303. Plaintiffs bring this count individually and on behalf of the other members of the Kia Nebraska Class, against KA.

3304. For purposes of this count, the Hyundai Nebraska Class Members and Kia Nebraska Class Members shall be referred to as "Class Members."

3305. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3306. Defendants were at all relevant times "merchants" with respect to motor vehicles under Neb. Rev. St. U.C.C. § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

3307. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Neb. Rev. St. U.C.C. § 2A-103(1)(p).

3308. The Class Vehicles are and were at all relevant times "goods" within the meaning of Neb. Rev. St. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

3309. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Neb. Rev. St. U.C.C.§§ 2-314 and 2A-212.

3310. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3311. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3312. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity

in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3313. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3314. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

3315. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

3316. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

      **b.**     **Nebraska Count 2: Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601, *et seq.*) Against All Defendants**

3317. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3318. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Nebraska Class, against HMA and HMC.

3319. Plaintiffs bring this count individually and on behalf of the other members of the Kia Nebraska Class, against KA and KC.

3320. For purposes of this count, the Hyundai Nebraska Class Members and Kia Nebraska Class Members shall be referred to as "Class Members."

3321. The Class Vehicles are "assets" within the meaning of Neb. Rev. Stat. § 59-1601(1).

3322. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Neb. Rev. Stat. § 59-1601(1).

3323. Defendants are engaged in "trade" and "commerce" within the meaning of Neb. Rev. Stat. § 59-1501(2).

3324. The Nebraska Consumer Protection Act ("CPA") declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce shall be unlawful." Neb Rev. Stat. § 59-1602.

3325. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3326. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to

disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3327. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3328. By misrepresenting the Class Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Theft

Prone Defect, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce as prohibited by Neb. Rev. Stat. § 59-1602.

3329. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3330. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3331. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3332. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3333. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3334. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3335. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3336. Pursuant to Neb. Rev. Stat. § 59-1609, Plaintiffs seek an order enjoining Defendants from engaging in the methods, acts, or practices alleged herein, including further concealment of the Theft Prone Defect, and awarding actual damages, increased damages, restitution, attorneys' fees, and any other just and proper relief available under the CPA.

### c.   Nebraska Count 3: Fraud by Omission and Concealment Against All Defendants

3337. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3338. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Nebraska Class, against HMA and HMC.

3339. Plaintiffs bring this count individually and on behalf of the other members of the Kia Nebraska Class, against KA and KC.

3340. For purposes of this count, the Hyundai Nebraska Class Members and Kia Nebraska Class Members shall be referred to as "Class Members."

3341. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3342. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3343. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3344. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3345. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3346. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3347. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3348. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3349. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they

otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3350. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3351. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3352. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.     Nebraska Count 4: Unjust Enrichment Against All Defendants

3353. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3354. Plaintiffs bring this count under Nebraska law, individually and on behalf of the other members of the Hyundai Nebraska Class, against HMA and HMC.

3355. Plaintiffs bring this count under Nebraska law, individually and on behalf of the other members of the Kia Nebraska Class, against KA and KC.

3356. For purposes of this count, members of the Hyundai Nebraska Class and Kia Nebraska Class shall be referred to as "Class Members."

3357. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3358. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3359. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3360. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3361. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3362. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

1

**27.  Nevada**

2

    **a.  Nevada Count 1: Breach of Implied Warranty of Merchantability (Nev. Rev. Stat. §§ 104.2314 and 104A.2212) Against HMA and KA**

3

4

3363. Plaintiffs reallege and incorporate by reference all preceding

5

allegations as though fully set forth herein.

6

3364. Plaintiffs bring this count individually and on behalf of the other

7

members of the Hyundai Nevada Class, against HMA.

8

3365. Plaintiffs bring this count individually and on behalf of the other

9

members of the Kia Nevada Class, against KA.

10

3366. For purposes of this count, the Hyundai Nevada Class Members and

11

Kia Nevada Class Members shall be referred to as "Class Members."

12

3367. For purposes of this count, HMA and KA shall be referred to as

13

"Defendants."

14

3368. A warranty that the Class Vehicles were in merchantable condition and

15

fit for the ordinary purpose for which such goods are used is implied by law

16

pursuant to Nev. Rev. Stat. §§ 104.2314 and 104A.2212.

17

3369. Defendants are and were at all relevant times "merchants" with respect

18

to motor vehicles under Nev. Rev. Stat. §§ 104.2104(1) and 104A.2103(3), and

19

"sellers" of motor vehicles under § 104.2103(1)(c).

20

3370. With respect to leases, Defendants were and are at all relevant times

21

"lessors" of motor vehicles under Nev. Rev. Stat. § 104A.2103(1)(p).

22

3371. Class Members who purchased Class Vehicles in Nevada are "buyers"

23

within the meaning of Nev. Rev. Stat. § 104.2103(1)(a).

24

3372. Class Members who leased Class Vehicles in Nevada are "lessees"

25

within the meaning of Nev. Rev. Stat. § 104A.2103(1)(n).

26

3373. The Class Vehicles are and were at all relevant times "goods" within

27

the meaning of Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

28

3374. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3375. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3376. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity

in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3377. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3378. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

3379. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

3380. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.     Nevada Count 2: Violation of the Nevada Deceptive Trade Practices Act (Nev. Rev. Stat. § 598.0903, et seq.) Against All Defendants**

3381. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3382. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Nevada Class, against HMA and HMC.

3383. Plaintiffs bring this count individually and on behalf of the other members of the Kia Nevada Class, against KA and KC.

3384. For purposes of this count, the Hyundai Nevada Class Members and Kia Nevada Class Members shall be referred to as "Class Members."

3385. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev. Rev. Stat. § 598.0903, et. seq. prohibits the use of deceptive trade practices in the course of business and occupation.

3386. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Immobilizer Theft Prone Defect, as detailed above.

3387. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Nevada DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because they possessed exclusive knowledge, they intentionally concealed the Theft Prone Defect from Plaintiffs and Class Members, and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

3388. Specifically, by misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk

posed by the Class Vehicles and the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Nev. Rev. Stat. §§ 598.0915, 598.0923, and 598.0925:

    a.    Representing that the Class Vehicles have certifications which they do not have;

    b.    Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    c.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

    d.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised;

    e.    Failing to disclose the Theft Prone Defect in connection with the sale of the Toyota Class Vehicles; and

    f.    Making an assertion of scientific fact in an advertisement which would cause a reasonable person to believe that the assertion is true.

Nev. Rev. Stat. §§ 598.0915(5), (7), (9), (15), 598.0923(2), and 598.0925.

3389. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3390. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3391. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3392. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3393. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3394. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3395. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3396. Pursuant to Nev. Rev. Stat. §§ 41.600, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Nevada DTPA.

c.    **Nevada Count 3: Fraud by Omission and Concealment Against All Defendants**

3397. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3398. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Nevada Class, against HMA and HMC.

3399. Plaintiffs bring this count individually and on behalf of the other members of the Kia Nevada Class, against KA and KC.

3400. For purposes of this count, the Hyundai Nevada Class Members and Kia Nevada Class Members shall be referred to as "Class Members."

3401. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3402. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft

Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3403. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3404. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3405. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3406. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3407. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3408. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3409. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3410. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3411. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3412. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

d.     **Nevada Count 4: Unjust Enrichment Against All Defendants**

3413. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3414. Plaintiffs bring this count under Nevada law, individually and on behalf of the other members of the Hyundai Nevada Class, against HMA and HMC.

3415. Plaintiffs bring this count under Nevada law, individually and on behalf of the other members of the Kia Nevada Class, against KA and KC.

3416. For purposes of this count, members of the Hyundai Nevada Class and Kia Nevada Class shall be referred to as "Class Members."

3417. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3418. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3419. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3420. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3421. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and

Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3422. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 28. New Hampshire

#### a. New Hampshire Count 1: Breach of Implied Warranty (N.H. Rev. Stat. §§ 382-A:2-314 and 2A-212) Against HMA and KA

3423. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3424. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New Hampshire Class, against HMA.

3425. Plaintiffs bring this count individually and on behalf of the other members of the Kia New Hampshire Class, against KA.

3426. For purposes of this count, the Hyundai New Hampshire Class Members and Kia New Hampshire Class Members shall be referred to as "Class Members."

3427. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3428. Defendants were at all relevant times "merchants" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2- 103(1)(d).

3429. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

3430. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

3431. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212.

3432. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3433. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3434. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and

inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3435. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3436. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

3437. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

3438. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were

and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

> **b.    New Hampshire Count 2: Violation of the N.H. Consumer Protection Act (N.H. Rev. Stat. Ann. § 358-a:1, *et seq.*) Against All Defendants**

3439. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3440. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New Hampshire Class, against HMA and HMC.

3441. Plaintiffs bring this count individually and on behalf of the other members of the Kia New Hampshire Class, against KA and KC.

3442. For purposes of this count, the Hyundai New Hampshire Class Members and Kia New Hampshire Class Members shall be referred to as "Class Members."

3443. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of N.H. Rev. Stat.§ 358-A:1.

3444. Defendants engaged in "trade" and "commerce" within the meaning of N.H. Rev. Stat.§ 358-A:1.

3445. The New Hampshire Consumer Protection Act ("New Hampshire CPA") declares it unlawful "for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat.§ 358-A:2.

3446. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3447. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the New Hampshire CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3448. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3449. By misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by N.H. Rev. Stat. 358-A:2:

a. Representing that the Class Vehicles have characteristics, uses, benefits, or qualities which they do not have;

b. Representing that the Class Vehicles are of a particular standard, quality, and grade when they are of another; and

c. Advertising goods or services with intent not to sell them as advertised.

N.H. Rev. Stat. § 358-A:2(III), (VII), (IX).

3450. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3451. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3452. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class

1   Vehicles were material to the decisions of Plaintiffs and Class Members to purchase

2   and lease those vehicles, as Defendants intended. Plaintiffs and Class Members

3   were exposed to those misrepresentations, concealments, omissions, and

4   suppressions of material facts, and relied on Defendants' misrepresentations that the

5   Class Vehicles were safe and reliable in deciding to purchase and lease Class

6   Vehicles.

7   3453. Plaintiffs' and Class Members' reliance was reasonable, as they had no

8   way of discerning Defendants' representations were false and misleading, or

9   otherwise learning that the Class Vehicles contained the Theft Prone Defect, as

10   alleged above. Plaintiffs and Class Members did not, and could not, unravel

11   Defendants' deception on their own.

12   3454. Had they known the truth about the Theft Prone Defect, Plaintiffs and

13   Class Members would not have purchased or leased the Class Vehicles, or would

14   have paid significantly less for them.

15   3455. Plaintiffs and Class Members suffered ascertainable losses and actual

16   damages as a direct and proximate result of Defendants' concealment,

17   misrepresentations, and/or failure to disclose material information.

18   3456. Defendants' violations present a continuing risk to Plaintiffs and Class

19   Members, as well as to the general public, because the Class Vehicles remain

20   unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices

21   complained of herein affect the public interest.

22   3457. Pursuant to N.H. Rev. Stat.§ 358-A:10, Plaintiffs and Class Members

23   seek an order seek an order enjoining Defendants' unfair and/or deceptive acts or

24   practices, and awarding damages, punitive damages, and any other just and proper

25   relief available under the New Hampshire CPA.

26

27

28

c.      **New Hampshire Count 3: Fraud by Omission and Concealment Against All Defendants**

3458. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3459. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New Hampshire Class, against HMA and HMC.

3460. Plaintiffs bring this count individually and on behalf of the other members of the Kia New Hampshire Class, against KA and KC.

3461. For purposes of this count, the Hyundai New Hampshire Class Members and Kia New Hampshire Class Members shall be referred to as "Class Members."

3462. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3463. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.      Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.      Defendants knew that the Theft Prone Defect gave rise to safety

concerns for the consumers who use the Class Vehicles, and the Theft
Prone Defect would have been a material fact to the Class Members'
decisions to buy or lease Class Vehicles; and

d.    Defendants made incomplete representations about the safety and
reliability of the Class Vehicles while purposefully withholding
material facts about a known safety defect. In uniform advertising and
materials provided with each Class Vehicle, HMA, and KA
intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

3464. In breach of their duties, Defendants failed to disclose the Theft Prone
Defect to Plaintiffs and Class Members in connection with the sale of the Class
Vehicles.

3465. For the reasons set forth above, the Theft Prone Defect within the
Class Vehicles is material to the sale of the Class Vehicles because a reasonable
person would find it important in purchasing, leasing, or retaining a new or used
motor vehicle and because it directly impacts the value of the Class Vehicles
purchased or leased by the Plaintiffs and Class Members.

3466. Defendants intended for the Plaintiffs and Class Members to rely on
their omissions and concealment—which they did by purchasing and leasing the
Class Vehicles at the prices they paid believing that their vehicles would not have a
Theft Prone Defect that would affect the quality, reliability, and safety of the Class
Vehicles.

3467. Plaintiffs and Class Members' reliance was reasonable, as they had no
way of discerning that learning the facts that Defendants had concealed or failed to

disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3468. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3469. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3470. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3471. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3472. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3473. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to

deter such conduct in the future, which amount shall be determined according to proof at trial.

**d.    New Hampshire Count 4: Unjust Enrichment Against All Defendants**

3474.  Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3475.  Plaintiffs bring this count under New Hampshire law, individually and on behalf of the other members of the Hyundai New Hampshire Class, against HMA and HMC.

3476.  Plaintiffs bring this count under New Hampshire law, individually and on behalf of the other members of the Kia New Hampshire Class, against KA and KC.

3477.  For purposes of this count, members of the Hyundai New Hampshire Class and Kia New Hampshire Class shall be referred to as "Class Members."

3478.  When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3479.  Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3480.  Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3481. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3482. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3483. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 29. New Jersey

#### a. New Jersey Count 1: Breach of Implied Warranty of Merchantability (N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212) Against HMA and KA

3484. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3485. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New Jersey Class, against HMA.

3486. Plaintiffs bring this count individually and on behalf of the other members of the Kia New Jersey Class, against KA.

3487. For purposes of this count, the Hyundai New Jersey Class Members and Kia New Jersey Class Members shall be referred to as "Class Members."

3488. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3489. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212.

3490. Defendants were and are at all relevant times "merchants" with respect to motor vehicles under N.J. Stat. Ann. §§ 12A:2-104(1) and 12A:2A-103(3), and "sellers" of motor vehicles under § 12A:2-103(1)(d).

3491. With respect to leases, Defendants were and are at all relevant times "lessors" of motor vehicles under N.J. Stat. Ann. § 12A:2A-103(1)(p).

3492. Class Members who purchased Class Vehicles in New Jersey are "buyers" within the meaning of N.J. Stat. Ann. § 12A:2-103(1)(a).

3493. Class Members who leased Class Vehicles in New Jersey are "lessees" within the meaning of N.J. Stat. Ann. § 12A:2A-103(1)(n).

3494. Class Vehicles are and were at all relevant times "goods" within the meaning of N.J. Stat. Ann. §§ 12A:2-105(1) and 2A-103(1)(h).

3495. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3496. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles

1 vulnerable to theft, making them prime targets to be used as instrumentalities
2 through which thieves engage in reckless driving or other criminal activity.

3     3497. Any attempt by Defendants to disclaim or limit the implied warranty
4 of merchantability for their respective Class Vehicles vis-à-vis consumers is
5 unconscionable and unenforceable. Specifically, Defendants' warranty limitations
6 are unenforceable because Defendants knowingly sold or leased defective Class
7 Vehicles without informing consumers about the Theft Prone Defect. The time
8 limits contained in Defendants' warranty periods were also unconscionable and
9 inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs
10 and Class Members had no meaningful choice in determining these time
11 limitations, the terms of which unreasonably favored Defendants. A gross disparity
12 in bargaining power existed between Defendants and Plaintiffs and other Class
13 Members. Additionally, Defendants knew of the Theft Prone Defect at the time of
14 sale.

15     3498. Furthermore, the circumstances described herein caused Defendants'
16 exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and
17 Class Members may seek alternative remedies. Indeed, these breaches of warranties
18 have denied Plaintiffs and Class Members the benefit of their respective bargains,
19 which presupposes they were (or are) able to use the Class Vehicles in a meaningful
20 manner without the ever–present risk of them being stolen.

21     3499. Plaintiffs and Class Members have provided Defendants with
22 reasonable notice and opportunity to cure the breaches of their implied warranties
23 by way of the numerous complaints filed against them and the individual notice
24 letters sent by Class Members within a reasonable amount of time after the Theft
25 Prone Defect became public. Additionally, on August 18, 2022, and September 12,
26 2022, Class Members sent notice letters to them.

27     3500. Alternatively, Plaintiffs and the Class Members were excused from
28 providing Defendants with notice and an opportunity to cure the breach, because it

would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

3501. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

        **b.**    **New Jersey Count 2: Violation of New Jersey Consumer Fraud Act (N.J. Stat. Ann. § 56:8-1, *et seq.*) Against All Defendants**

3502. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3503. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New Jersey Class, against HMA and HMC.

3504. Plaintiffs bring this count individually and on behalf of the other members of the Kia New Jersey Class, against KA and KC.

3505. For purposes of this count, the Hyundai New Jersey Class Members and Kia New Jersey Class Members shall be referred to as "Class Members."

3506. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

3507. The Kia Class Vehicles are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

3508. The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unlawful practices. N.J. Stat. Ann. § 56:8-2.

3509. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3510. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the New Jersey CFA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect.

Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3511. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3512. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by N.J. Stat. Ann. § 56:8-2: using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3513. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3514. Defendants' unlawful acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs and Class Members, about the true safety and reliability of the Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3515. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3516. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3517. Had the Class Members known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3518. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3519. Defendants' violations present a continuing risk to the Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Additionally, their unlawful acts and practices complained of herein affect the public interest.

3520. Pursuant to N.J. Stat. Ann. § 56:8-19, Plaintiffs and Class Members seek an order enjoining Defendants' unlawful acts or practices and awarding damages and any other just and proper relief available under the New Jersey CFA.

c.    **New Jersey Count 3: Fraud by Omission and Concealment Against All Defendants**

3521. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3522. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New Jersey Class, against HMA and HMC.

3523. Plaintiffs bring this count individually and on behalf of the other members of the Kia New Jersey Class, against KA and KC.

3524. For purposes of this count, the Hyundai New Jersey Class Members and Kia New Jersey Class Members shall be referred to as "Class Members."

3525. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3526. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft

Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3527. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3528. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3529. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3530. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3531. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3532. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3533. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3534. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3535. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3536. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. New Jersey Count 4: Unjust Enrichment Against All Defendants

3537. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3538. Plaintiffs bring this count under New Jersey law, individually and on behalf of the other members of the Hyundai New Jersey Class, against HMA and HMC.

3539. Plaintiffs bring this count under New Jersey law, individually and on behalf of the other members of the Kia New Jersey Class, against KA and KC.

3540. For purposes of this count, members of the Hyundai New Jersey Class and Kia New Jersey Class shall be referred to as "Class Members."

3541. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3542. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3543. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3544. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3545. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3546. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 30. New Mexico

#### a. New Mexico Count 1: Breach of Implied Warranty (N.M. Stat. §§ 55-2-314 and 55-2A-212) Against HMA and KA

3547. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3548. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New Mexico Class, against HMA.

3549. Plaintiffs bring this count individually and on behalf of the other members of the Kia New Mexico Class, against KA.

3550. For purposes of this count, the Hyundai New Mexico Class Members and Kia New Mexico Class Members shall be referred to as "Class Members."

3551. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3552. Defendants were at all relevant times "merchants" with respect to motor vehicles under N.M. Stat. § 55-2-104(1) and "sellers" of motor vehicles under § 55-2-103(1)(d).

3553. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.M. Stat. § 55-2A-103(1)(p).

3554. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

3555. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.M. Stat. §§ 55-2- 314 and 55-2A-212.

3556. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3557. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3558. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and

inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3559. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3560. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

3561. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

3562. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were

and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.      New Mexico Count 2: Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-1, *et seq.*) Against All Defendants**

3563. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3564. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New Mexico Class, against HMA and HMC.

3565. Plaintiffs bring this count individually and on behalf of the other members of the Kia New Mexico Class, against KA and KC.

3566. For purposes of this count, the Hyundai New Mexico Class Members and Kia New Mexico Class Members shall be referred to as "Class Members."

3567. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of N.M. Stat. Ann. § 57-12-2.

3568. Defendants are engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. § 57-12-2.

3569. The New Mexico Unfair Trade Practices Act ("NM UTPA") makes unlawful any "[u]nfair methods or deceptive trade practices and unconscionable trade practices [.]" N.M. Stat. Ann. § 57-12-3.

3570. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the NM UPTA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3571. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the NM UTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a

duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3572. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3573. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk

posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices or unconscionable trade practices prohibited by N.M. Stat. Ann. § 57-12-3:

    a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

    b.    Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

    c.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

    d.    Taking advantage of the lack of knowledge, ability, experience, or capacity of a person to grossly unfair degree; and

    e.    Resulting in a gross disparity between the value received by a person and the price paid.

N.M. Stat. Ann. § 57-12-2(D)(2), (5), (7); N.M. Stat. Ann. § 570-12-2(E)(1)-(2).

3574. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3575. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3576. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase

and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3577.   Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3578.   Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3579.   Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3580.   Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3581.   Pursuant to N.M. Stat. Ann. § 57-12-10, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the NM UTPA.

        **c.**    **New Mexico Count 3: Fraud by Omission and Concealment Against All Defendants**

3582.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3583. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New Mexico Class, against HMA and HMC.

3584. Plaintiffs bring this count individually and on behalf of the other members of the Kia New Mexico Class, against KA and KC.

3585. For purposes of this count, the Hyundai New Mexico Class Members and Kia New Mexico Class Members shall be referred to as "Class Members."

3586. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3587. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding

material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3588. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3589. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3590. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3591. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3592. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and

harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3593. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3594. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3595. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3596. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3597. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> **d.   New Mexico Count 4: Unjust Enrichment Against All Defendants**

3598. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3599. Plaintiffs bring this count under New Mexico law, individually and on behalf of the other members of the Hyundai New Mexico Class, against HMA and HMC.

3600. Plaintiffs bring this count under New Mexico law, individually and on behalf of the other members of the Kia New Mexico Class, against KA and KC.

3601. For purposes of this count, members of the Hyundai New Mexico Class and Kia New Mexico Class shall be referred to as "Class Members."

3602. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3603. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3604. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3605. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3606. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3607. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 31. New York

#### a. New York Count 1: Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349) Against All Defendants

3608. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3609. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New York Class, against HMA and HMC.

3610. Plaintiffs bring this count individually and on behalf of the other members of the Kia New York Class, against KA and KC.

3611. For purposes of this count, the Hyundai New York Class Members and Kia New York Class Members together shall be referred to as "Class Members."

3612. Plaintiffs and Class Members are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

3613. Defendants are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

3614. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law. § 349.

3615. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3616. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the New York DAPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.  Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.  Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles;

d.  HMA, HMC, KA, and KC made general affirmative representations about the technological and safety innovations included with the Class Vehicles without telling consumers that the Class Vehicles had the Theft Prone Defect that would affect the safety, quality, and performance of the Class Vehicles; and

e.  Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect.

Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3617. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect to both consumers and NHTSA, Defendants engaged in deceptive acts or practices in the conduct of business, trade or commerce, and/or in the furnishing of any service, as prohibited by N.Y. Gen. Bus. Law § 349.

3618. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3619. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3620. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3621. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3622. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3623. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3624. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3625. Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New York DAPA.

**b.      New York Count 2: Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350) Against All Defendants**

3626. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3627. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New York Class, against HMA and HMC.

3628. Plaintiffs bring this count individually and on behalf of the other members of the Kia New York Class, against KA and KC.

3629. For purposes of this count, the Hyundai New York Class Members and Kia New York Class Members together shall be referred to as "Class Members."

3630. Defendants were and are engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

3631. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.

3632. Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known by them to be untrue and misleading to consumers, including Plaintiffs and Class Members. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

3633. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3634. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the New York FAA in the course of their business. Specifically, they owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.      Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.      Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles;

d.      Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3635. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect to both consumers and NHTSA, Defendants engaged in the false and misleading advertising practices prohibited by N.Y. Gen. Bus. Law § 350.

3636. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members,

1    about the true safety and reliability of Class Vehicles, the quality of the Class

2    Vehicles, and the true value of the Class Vehicles.

3           3637. Defendants' misrepresentations, omissions, and concealment of

4    material facts regarding the Theft Prone Defect and true characteristics of the Class

5    Vehicles were material to the decisions of Plaintiffs and Class Members to purchase

6    and lease those vehicles, as Defendants intended. Plaintiffs and Class Members

7    were exposed to those misrepresentations, concealments, omissions, and

8    suppressions of material facts, and relied on Defendants' misrepresentations that the

9    Class Vehicles were safe and reliable in deciding to purchase and lease Class

10   Vehicles.

11          3638. Plaintiffs' and Class Members' reliance was reasonable, as they had no

12   way of discerning Defendants' representations were false and misleading, or

13   otherwise learning that the Class Vehicles contained the Theft Prone Defect, as

14   alleged above. Plaintiffs and Class Members did not, and could not, unravel

15   Defendants' deception on their own.

16          3639. Had they known the truth about the Theft Prone Defect, Plaintiffs and

17   Class Members would not have purchased or leased the Class Vehicles, or would

18   have paid significantly less for them.

19          3640. Plaintiffs and Class Members suffered ascertainable losses and actual

20   damages as a direct and proximate result of Defendants' concealment,

21   misrepresentations, and/or failure to disclose material information.

22          3641. Defendants' violations present a continuing risk to Plaintiffs and Class

23   Members, as well as to the general public, because the Class Vehicles remain

24   unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices

25   complained of herein affect the public interest.

26          3642. Pursuant to New York FAA, Plaintiffs and Class Members seek an

27   order enjoining Defendants' false advertising practices and awarding damages and

28   any other just and proper relief available under the New York FAA.

c.     **New York Count 3: Fraud by Omission and Concealment Against All Defendants**

3643.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3644.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai New York Class, against HMA and HMC.

3645.  Plaintiffs bring this count individually and on behalf of the other members of the Kia New York Class, against KA and KC.

3646.  For purposes of this count, the Hyundai New York Class Members and Kia New York Class Members shall be referred to as "Class Members."

3647.  Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3648.  Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.     Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.     Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft

Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3649. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3650. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3651. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3652. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3653. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3654. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3655. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3656. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3657. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3658. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

      **d.    New York Count 4: Unjust Enrichment Against All Defendants**

3659. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3660. Plaintiffs bring this count under New York law, individually and on behalf of the other members of the Hyundai New York Class, against HMA and HMC.

3661. Plaintiffs bring this count under New York law, individually and on behalf of the other members of the Kia New York Class, against KA and KC.

3662. For purposes of this count, members of the Hyundai New York Class and Kia New York Class shall be referred to as "Class Members."

3663. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3664. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3665. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3666. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3667. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3668. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**32. North Carolina**

**a. North Carolina Count 1: Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, *et seq.*) Against All Defendants**

3669. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3670. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai North Carolina Class, against HMA and HMC.

3671. Plaintiffs bring this count individually and on behalf of the other members of the Kia North Carolina Class, against KA and KC.

3672. For purposes of this count, the Hyundai North Carolina Class Members and Kia North Carolina Class Members shall be referred to as "Class Members."

3673. Defendants were and are engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

3674. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3675. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the North Carolina UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.  Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.  Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3676. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3677. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.C. Gen. Stat. § 75-16.

3678. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3679. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3680. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3681. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

3682. Had Plaintiffs and Class Members known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3683. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3684. Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the .Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3685. Pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the North Carolina UDTPA.

### b. North Carolina Count 2: Fraud by Omission and Concealment Against All Defendants

3686. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3687. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai North Carolina Class, against HMA and HMC.

3688. Plaintiffs bring this count individually and on behalf of the other members of the Kia North Carolina Class, against KA and KC.

3689. For purposes of this count, the Hyundai North Carolina Class Members and Kia North Carolina Class Members shall be referred to as "Class Members."

3690. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3691. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the

consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3692. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3693. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3694. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3695. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3696. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3697. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3698. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3699. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3700. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3701. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### c. North Carolina Count 3: Unjust Enrichment Against All Defendants

3702. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3703. Plaintiffs bring this count under North Carolina law, individually and on behalf of the other members of the Hyundai North Carolina Class, against HMA and HMC.

3704. Plaintiffs bring this count under North Carolina law, individually and on behalf of the other members of the Kia North Carolina Class, against KA and KC.

3705. For purposes of this count, members of the Hyundai North Carolina Class and Kia North Carolina Class shall be referred to as "Class Members."

3706. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3707. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3708. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3709. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3710. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and

Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3711. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 33. North Dakota

#### a. North Dakota Count 1: Breach of Implied Warranty (N.D. Cent. Code §§ 41-02-31 and 41-02.1-21) Against HMA and KA

3712. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3713. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai North Dakota Class, against HMA.

3714. Plaintiffs bring this count individually and on behalf of the other members of the Kia North Dakota Class, against KA.

3715. For purposes of this count, the Hyundai North Dakota Class Members and Kia North Dakota Class Members shall be referred to as "Class Members."

3716. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3717. Defendants were at all relevant times "merchants" with respect to motor vehicles under N.D. Cent. Code § 41-02.04(3) and "sellers" of motor vehicles under § 41-02-03(1)(d).

3718. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.D. Cent. Code § 41-02.1-03(1)(p).

3719. The Class Vehicles are and were at all relevant times "goods" within the meaning of N.D. Cent. Code §§ 41-02-05(2) and 41-02.1-03(1)(h).5.

3720. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.D. Cent. Code §§ 41-02-31 and 41-02.1-21.

3721. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3722. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3723. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and

1  inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs

2  and Class Members had no meaningful choice in determining these time

3  limitations, the terms of which unreasonably favored Defendants. A gross disparity

4  in bargaining power existed between Defendants and Plaintiffs and other Class

5  Members. Additionally, Defendants knew of the Theft Prone Defect at the time of

6  sale.

7      3724.  Furthermore, the circumstances described herein caused Defendants'

8  exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

9  Class Members may seek alternative remedies. Indeed, these breaches of warranties

10  have denied Plaintiffs and Class Members the benefit of their respective bargains,

11  which presupposes they were (or are) able to use the Class Vehicles in a meaningful

12  manner without the ever–present risk of them being stolen.

13      3725.  Plaintiffs and Class Members have provided Defendants with

14  reasonable notice and opportunity to cure the breaches of their implied warranties

15  by way of the numerous complaints filed against them and the individual notice

16  letters sent by Class Members within a reasonable amount of time after the Theft

17  Prone Defect became public. Additionally, on August 18, 2022, and September 12,

18  2022, Class Members sent notice letters to them.

19      3726.  Alternatively, Plaintiffs and the Class Members were excused from

20  providing Defendants with notice and an opportunity to cure the breach, because it

21  would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants

22  have long known that the Class Vehicles contained the Theft Prone Defect;

23  however, to date, Defendants have not instituted an adequate and meaningful repair

24  program with respect to the Class Vehicles. As such, Plaintiffs and Class Members

25  had no reason to believe that Defendants would have adequately repaired the Theft

26  Prone Defect if they presented their Class Vehicles to them for repair.

27      3727.  As a direct and proximate result of Defendants' breach of the implied

28  warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were

and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.    North Dakota Count 2: Violation of the North Dakota Consumer Fraud Act (N.D. Cent. Code § 51-15-02, *et seq.*) Against All Defendants**

3728. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3729. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai North Dakota Class, against HMA and HMC.

3730. Plaintiffs bring this count individually and on behalf of the other members of the Kia North Dakota Class, against KA and KC.

3731. For purposes of this count, the Hyundai North Dakota Class Members and Kia North Dakota Class Members shall be referred to as "Class Members."

3732. Defendants, Plaintiffs and Class Members are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

3733. Defendants are engaged in the "sale" of "merchandise" within the meaning of N.D. Cent. Code § 51-15-02(3), (5).

3734. The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use, or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise…." N.D. Cent. Code § 51-15-02.

3735. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the North Dakota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3736. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the North Dakota CFA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3737. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3738. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by the N.D. Cent. Code § 51-15-02: using or employing deception, fraud, false pretense, false promise or misrepresentation, with intent that others rely thereon, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3739. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3740. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3741. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the

Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3742. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

3743. Had Plaintiffs and Class Members known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3744. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3745. Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3746. Pursuant to N.D. Cent. Code Ann. §§ 51-15-07 and 51-15-09, Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the North Dakota CFA.

### c. North Dakota Count 3: Fraud by Omission and Concealment Against All Defendants

3747. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3748. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai North Dakota Class, against HMA and HMC.

1    3749. Plaintiffs bring this count individually and on behalf of the other
2  members of the Kia North Dakota Class, against KA and KC.

3    3750. For purposes of this count, the Hyundai North Dakota Class Members
4  and Kia North Dakota Class Members shall be referred to as "Class Members."

5    3751. Defendants were aware of the Theft Prone Defect when they marketed
6  and sold the Class Vehicles to Plaintiffs and Class Members.

7    3752. Having been aware of the Theft Prone Defect within the Class
8  Vehicles, and having known that Plaintiffs and Class Members could not have
9  reasonably been expected to know of the Theft Prone Defect, Defendants had a
10 duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in
11 connection with the sale of the Class Vehicles. Defendants further had a duty to
12 disclose the Theft Prone Defect because:

13    a.    Defendants had exclusive access to and far superior knowledge about
14          facts regarding the Theft Prone Defect and Defendants knew these
15          facts were not known to or reasonably discoverable by Plaintiffs or
16          Class Members;

17    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs
18          and Class Members lack the sophisticated expertise in vehicle
19          components that would be necessary to discover the Theft Prone
20          Defect on their own;

21    c.    Defendants knew that the Theft Prone Defect gave rise to safety
22          concerns for the consumers who use the Class Vehicles, and the Theft
23          Prone Defect would have been a material fact to the Class Members'
24          decisions to buy or lease Class Vehicles; and

25    d.    Defendants made incomplete representations about the safety and
26          reliability of the Class Vehicles while purposefully withholding
27          material facts about a known safety defect. In uniform advertising and
28          materials provided with each Class Vehicle, HMA, and KA

- 682 -

intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3753. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3754. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3755. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3756. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3757. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3758. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3759. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3760. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3761. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3762. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**d.  North Dakota Count 4: Unjust Enrichment Against All Defendants**

3763. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3764. Plaintiffs bring this count under North Dakota law, individually and on behalf of the other members of the Hyundai North Dakota Class, against HMA and HMC.

3765. Plaintiffs bring this count under North Dakota law, individually and on behalf of the other members of the Kia North Dakota Class, against KA and KC.

3766. For purposes of this count, members of the Hyundai North Dakota Class and Kia North Dakota Class shall be referred to as "Class Members."

3767. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3768. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3769. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3770. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3771. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3772. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 34.   Ohio

#### a.   Ohio Count 1: Breach of Implied Warranty (Ohio Rev. Code Ann. §§ 1302.27 and 1310.19) Against HMA and KA

3773. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3774. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Ohio Class, against HMA.

3775. Plaintiffs bring this count individually and on behalf of the other members of the Kia Ohio Class, against KA.

3776. For purposes of this count, the Hyundai Ohio Class Members and Kia Ohio Class Members shall be referred to as "Class Members."

3777. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3778. Defendants were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

3779. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(20).

3780. The Class Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

3781. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

3782. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3783. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3784. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity

1   in bargaining power existed between Defendants and Plaintiffs and other Class

2   Members. Additionally, Defendants knew of the Theft Prone Defect at the time of

3   sale.

4        3785. Furthermore, the circumstances described herein caused Defendants'

5   exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

6   Class Members may seek alternative remedies. Indeed, these breaches of warranties

7   have denied Plaintiffs and Class Members the benefit of their respective bargains,

8   which presupposes they were (or are) able to use the Class Vehicles in a meaningful

9   manner without the ever–present risk of them being stolen.

10        3786. Plaintiffs and Class Members have provided Defendants with

11   reasonable notice and opportunity to cure the breaches of their implied warranties

12   by way of the numerous complaints filed against them and the individual notice

13   letters sent by Class Members within a reasonable amount of time after the Theft

14   Prone Defect became public. Additionally, on August 18, 2022, and September 12,

15   2022, Class Members sent notice letters to them.

16        3787. Alternatively, Plaintiffs and the Class Members were excused from

17   providing Defendants with notice and an opportunity to cure the breach, because it

18   would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants

19   have long known that the Class Vehicles contained the Theft Prone Defect;

20   however, to date, Defendants have not instituted an adequate and meaningful repair

21   program with respect to the Class Vehicles. As such, Plaintiffs and Class Members

22   had no reason to believe that Defendants would have adequately repaired the Theft

23   Prone Defect if they presented their Class Vehicles to them for repair.

24        3788. As a direct and proximate result of Defendants' breach of the implied

25   warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were

26   and are defective, and the Theft Prone Defect in their Class Vehicles has not been

27   remedied. Therefore, Plaintiffs and Class Members have been damaged, in an

28   amount to be proven at trial.

**b. Ohio Count 2: Violation of Ohio Consumer Sales Practices Act (Ohio Rev. Code §§ 1345.01, *et seq.*) Against All Defendants**

3789. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3790. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Ohio Class, against HMA.

3791. Plaintiffs bring this count individually and on behalf of the other members of the Kia Ohio Class, against KA.

3792. For purposes of this count, the Hyundai Ohio Class Members and Kia Ohio Class Members together shall be referred to as "Class Members."

3793. Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of Ohio Rev. Code § 1345.01(B). Defendants are so "supplier[s]" as defined by Ohio Rev. Code § 1345.01(C).

3794. Plaintiff and the Ohio State Class Members are "consumers" within the meaning of Ohio Rev. Code § 1345.01(D), and their purchase and leases of the Class Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

3795. The Ohio Consumer Sales Practices Act ("Ohio CSPA") prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Ohio Rev. Code § 1345.02.

3796. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Ohio CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3797. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Ohio CSPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a

duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3798. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3799. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk

posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Ohio DTPA:

    a.    Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have; and

    b.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not.

Ohio Rev. Code § 1345.02.

3800. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3801. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3802. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3803. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or

otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3804. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3805. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3806. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3807. Pursuant to Ohio Rev. Code § 1345.09, Plaintiff and the Ohio State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Ohio CSPA.

      c.     **Ohio Count 3: Violation of the Ohio Deceptive Trade Practices Act (Ohio Rev. Code § 4165.01, *et seq.*) Against All Defendants**

3808. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3809. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Ohio Class, against HMA.

3810. Plaintiffs bring this count individually and on behalf of the other members of the Kia Ohio Class, against KA.

3811. For purposes of this count, the Hyundai Ohio Class Members and Kia Ohio Class Members together shall be referred to as "Class Members."

3812. Defendants, Plaintiffs, and the Class Members are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

3813. Defendants are engaged in "the course of [their] business" within the meaning of Ohio Rev. Code § 4165.02(A).

3814. The Ohio Deceptive Trade Practices Act ("Ohio DTPA") makes unlawful deceptive trade practices. Ohio Rev. Code § 4165.02(A).

3815. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Ohio DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3816. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Ohio DTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.  Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.  Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3817. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

3818. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Ohio DTPA:

a. Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

b. Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

c. Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and

d. Advertising the Class Vehicles with the intent not to sell or lease them as advertised.

Ohio Rev. Code § 4165.02(A).

3819. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3820. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3821. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3822. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3823. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3824. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3825. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3826. Pursuant to Ohio Rev. Code §§ 2727.02 and 4165.03, Plaintiff and the Ohio State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Ohio DTPA.

> ### d. Ohio Count 4: Fraud by Omission and Concealment Against All Defendants

3827. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3828. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Ohio Class, against HMA and HMC.

3829. Plaintiffs bring this count individually and on behalf of the other members of the Kia Ohio Class, against KA and KC.

3830. For purposes of this count, the Hyundai Ohio Class Members and Kia Ohio Class Members shall be referred to as "Class Members."

3831. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3832. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

   a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these

1        facts were not known to or reasonably discoverable by Plaintiffs or

2        Class Members;

3    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

4        and Class Members lack the sophisticated expertise in vehicle

5        components that would be necessary to discover the Theft Prone

6        Defect on their own;

7    c.    Defendants knew that the Theft Prone Defect gave rise to safety

8        concerns for the consumers who use the Class Vehicles, and the Theft

9        Prone Defect would have been a material fact to the Class Members'

10       decisions to buy or lease Class Vehicles; and

11    d.    Defendants made incomplete representations about the safety and

12       reliability of the Class Vehicles while purposefully withholding

13       material facts about a known safety defect. In uniform advertising and

14       materials provided with each Class Vehicle, HMA, and KA

15       intentionally concealed, suppressed, and failed to disclose to the

16       consumers that the Class Vehicles contained the Theft Prone Defect.

17       Because they volunteered to provide information about the Class

18       Vehicles that they marketed and offered for sale and lease to

19       consumers, HMA and KA had the duty to disclose the whole truth.

20    3833. In breach of their duties, Defendants failed to disclose the Theft Prone

21 Defect to Plaintiffs and Class Members in connection with the sale of the Class

22 Vehicles.

23    3834. For the reasons set forth above, the Theft Prone Defect within the

24 Class Vehicles is material to the sale of the Class Vehicles because a reasonable

25 person would find it important in purchasing, leasing, or retaining a new or used

26 motor vehicle and because it directly impacts the value of the Class Vehicles

27 purchased or leased by the Plaintiffs and Class Members.

28

3835. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3836. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3837. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3838. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3839. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3840. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3841. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to

them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3842. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

e.     **Ohio Count 5: Unjust Enrichment Against All Defendants**

3843. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3844. Plaintiffs bring this count under Ohio law, individually and on behalf of the other members of the Hyundai Ohio Class, against HMA and HMC.

3845. Plaintiffs bring this count under Ohio law, individually and on behalf of the other members of the Kia Ohio Class, against KA and KC.

3846. For purposes of this count, members of the Hyundai Ohio Class and Kia Ohio Class shall be referred to as "Class Members."

3847. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3848. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3849. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft

Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3850. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3851. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3852. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 35. Oklahoma

#### a. Oklahoma Count 1: Breach of Implied Warranty of Merchantability (Okla. Stat. Ann. tit. 12A, §§ 2-314 and 2A-212) Against HMA and KA

3853. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3854. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Oklahoma Class, against HMA.

3855. Plaintiffs bring this count individually and on behalf of the other members of the Kia Oklahoma Class, against KA.

3856. For purposes of this count, the Hyundai Oklahoma Class Members and Kia Oklahoma Class Members shall be referred to as "Class Members."

3857. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3858. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Okla. Stat. Ann. tit. 12A, §§ 2-314 and 2A-212.

3859. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Okla. Stat. Ann. tit. 12A, §§ 2-104(1) and 2-A-103(3), and "sellers" of motor vehicles under § 2-103(1)(c).

3860. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Ann. tit. 12A, § 2A-103(1)(p).

3861. Class Members who purchased Class Vehicles in Oklahoma are "buyers" within the meaning of Okla. Stat. Ann. tit. 12A, § 2-103(1)(a).

3862. Class Members who leased Class Vehicles in Oklahoma are "lessees" within the meaning of Okla. Stat. Ann. tit. 12A, § 2A-103(1)(n).

3863. The Class Vehicles were at all relevant times "goods" within the meaning of Okla. Stat. Ann. tit. 12A, §§ 2-105(1) and 2A-103(1)(h).

3864. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3865. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft

Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3866.  Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3867.  Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3868.  Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft

1   Prone Defect became public. Additionally, on August 18, 2022, and September 12,

2   2022, Class Members sent notice letters to them.

3       3869. Alternatively, Plaintiffs and the Class Members were excused from

4   providing Defendants with notice and an opportunity to cure the breach, because it

5   would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants

6   have long known that the Class Vehicles contained the Theft Prone Defect;

7   however, to date, Defendants have not instituted an adequate and meaningful repair

8   program with respect to the Class Vehicles. As such, Plaintiffs and Class Members

9   had no reason to believe that Defendants would have adequately repaired the Theft

10  Prone Defect if they presented their Class Vehicles to them for repair.

11      3870. As a direct and proximate result of Defendants' breach of the implied

12  warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were

13  and are defective, and the Theft Prone Defect in their Class Vehicles has not been

14  remedied. Therefore, Plaintiffs and Class Members have been damaged, in an

15  amount to be proven at trial.

16          **b.    Oklahoma Count 2: Violation of the Oklahoma Consumer
               Protection Act (Okla. Stat. Ann. tit. 15, § 751, _et seq._)**
17          **Against All Defendants**

18      3871. Plaintiffs reallege and incorporate by reference all preceding

19  allegations as though fully set forth herein.

20      3872. Plaintiffs bring this count individually and on behalf of the other

21  members of the Hyundai Oklahoma Class, against HMA and HMC.

22      3873. Plaintiffs bring this count individually and on behalf of the other

23  members of the Kia Oklahoma Class, against KA and KC.

24      3874. For purposes of this count, the Hyundai Oklahoma Class Members and

25  Kia Oklahoma Class Members shall be referred to as "Class Members."

26      3875. Defendants, the Oklahoma Plaintiff, and the Oklahoma State Class

27  Members are "persons" within the meaning of Okla. Stat. tit. 15, § 752(1).

28

3876. Defendants are and were engaged in "consumer transactions" within the meaning of Okla. Stat. tit. 15, § 752(2).

3877. The Class Vehicles are "merchandise" within the meaning of Okla. Stat. tit. 15, § 752(7).

3878. The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits deceptive and unfair trade practices.

3879. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3880. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Oklahoma CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT

d.  Defendants made incomplete representations about the safety and
reliability of the Class Vehicles while purposefully withholding
material facts about a known safety defect. In uniform advertising and
materials provided with each Class Vehicle, HMA, and KA
intentionally concealed, suppressed, and failed to disclose to the
consumers that the Class Vehicles contained the Theft Prone Defect.
Because they volunteered to provide information about the Class
Vehicles that they marketed and offered for sale and lease to
consumers, HMA and KA had the duty to disclose the whole truth.

3881.  As detailed above, the information concerning the Theft Prone Defect
was known to Defendants at the time of advertising and selling the Class Vehicles,
all of which was intended to induce consumers to purchase the Class Vehicles.

3882.  By misrepresenting the Class Vehicles as safe and reliable and by
failing to disclose and actively concealing the dangers and risk posed by the Theft
Prone Defect, Defendants engaged in one or more of the following unfair or
deceptive business practices prohibited by Okla. Stat. tit. 15, § 753:

a.  Representing that the Class Vehicles are approved and certified as safe
and reliable;

b.  Representing that the Class Vehicles are of a particular standard,
quality, and grade when they are not;

c.  Advertising the Class Vehicles as safe and free from defects, with the
intent not to sell or lease them as advertised; and

d.  Engaging in the immoral, unethical, oppressive, unscrupulous, or
substantially injurious to consumers described above, which offends
established public policy.

Okla. Stat. tit. 15, §§ 753(5), (7), (8), and (20).

3883. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

3884. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3885. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3886. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3887. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3888. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3889. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3890. Pursuant to Okla. Stat. tit. 15, § 761.1, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Oklahoma CPA.

### c.   Oklahoma Count 3: Fraud by Omission and Concealment Against All Defendants

3891. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3892. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Oklahoma Class, against HMA and HMC.

3893. Plaintiffs bring this count individually and on behalf of the other members of the Kia Oklahoma Class, against KA and KC.

3894. For purposes of this count, the Hyundai Oklahoma Class Members and Kia Oklahoma Class Members shall be referred to as "Class Members."

3895. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3896. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in

connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3897. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3898. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable

person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3899. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3900. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3901. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3902. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3903. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3904. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3905.  As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3906.  Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Oklahoma Count 4: Unjust Enrichment Against All Defendants

3907.  Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3908.  Plaintiffs bring this count under Oklahoma law, individually and on behalf of the other members of the Hyundai Oklahoma Class, against HMA and HMC.

3909.  Plaintiffs bring this count under Oklahoma law, individually and on behalf of the other members of the Kia Oklahoma Class, against KA and KC.

3910.  For purposes of this count, members of the Hyundai Oklahoma Class and Kia Oklahoma Class shall be referred to as "Class Members."

3911.  When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3912.  Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from

the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3913. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3914. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3915. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3916. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**36.   Oregon**

    **a.   Oregon Count 1: Breach of Implied Warranty (Or. Rev. Stat. § 72.3140 and 72A.2120) Against HMA and KA**

3917. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3918. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Oregon Class, against HMA.

3919. Plaintiffs bring this count individually and on behalf of the other members of the Kia Oregon Class, against KA.

3920. For purposes of this count, the Hyundai Oregon Class Members and Kia Oregon Class Members shall be referred to as "Class Members."

3921. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3922. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Or. Rev. Stat. §§ 72.1040(1) and 72A.1030(1)(t), and "sellers" of motor vehicles under § 72.1030(1)(d).

3923. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Or. Rev. Stat. § 72A.1030(1)(p).

3924. The Class Vehicles are and were at all relevant times "goods" within the meaning of Or. Rev. Stat. §§ 72.1050(1) and 72A.1030(1)(h).

3925. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Or. Rev. Stat. §§ 72.3140 and 72A-2120.

3926. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3927. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft

Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3928. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3929. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3930. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft

1   Prone Defect became public. Additionally, on August 18, 2022, and September 12,
2   2022, Class Members sent notice letters to them.

3       3931.  Alternatively, Plaintiffs and the Class Members were excused from
4   providing Defendants with notice and an opportunity to cure the breach, because it
5   would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants
6   have long known that the Class Vehicles contained the Theft Prone Defect;
7   however, to date, Defendants have not instituted an adequate and meaningful repair
8   program with respect to the Class Vehicles. As such, Plaintiffs and Class Members
9   had no reason to believe that Defendants would have adequately repaired the Theft
10  Prone Defect if they presented their Class Vehicles to them for repair.

11      3932.  As a direct and proximate result of Defendants' breach of the implied
12  warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were
13  and are defective, and the Theft Prone Defect in their Class Vehicles has not been
14  remedied. Therefore, Plaintiffs and Class Members have been damaged, in an
15  amount to be proven at trial.

16
17      **b.  Oregon Count 2: Violation of the Oregon Unlawful Trade Practices Act (Or. Rev. Stat. §§ 646.605, *et seq.*) Against All Defendants**

18      3933.  Plaintiffs reallege and incorporate by reference all preceding
19  allegations as though fully set forth herein.

20      3934.  Plaintiffs bring this count individually and on behalf of the other
21  members of the Hyundai Oregon Class, against HMA and HMC.

22      3935.  Plaintiffs bring this count individually and on behalf of the other
23  members of the Kia Oregon Class, against KA and KC.

24      3936.  For purposes of this count, the Hyundai Oregon Class Members and
25  Kia Oregon Class Members shall be referred to as "Class Members."

26      3937.  Defendants, Plaintiffs, and Class Members are "persons" within the
27  meaning of Or. Rev. Stat. § 646.605(4).

28

3938. Defendants are engaged in "trade" and "commerce" within the meaning of Or. Rev. Stat. § 646.605(8).

3939. The Oregon Unfair Trade Practices Act ("Oregon UTPA") prohibits unlawful practice in the course of business. Or. Rev. Stat. § 646.608(1).

3940. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Oregon UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

3941. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Oregon UTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding

1   material facts about a known safety defect. In uniform advertising and
2   materials provided with each Class Vehicle, HMA and KA
3   intentionally concealed, suppressed, and failed to disclose to the
4   consumers that the Class Vehicles contained the Theft Prone Defect.
5   Because they volunteered to provide information about the Class
6   Vehicles that they marketed and offered for sale and lease to
7   consumers, HMA and KA had the duty to disclose the whole truth.

8   3942. As detailed above, the information concerning the Theft Prone Defect

9   was known to Defendants at the time of advertising and selling the Class Vehicles,

10   all of which was intended to induce consumers to purchase the Class Vehicles.

11   3943. By misrepresenting the Class Vehicles as safe and reliable and free

12   from defects, and by failing to disclose and actively concealing the dangers and risk

13   posed by the Theft Prone Defect, Defendants engaged in one or more of the

14   following unfair or deceptive business practices prohibited by Or. Rev. Stat.

15   § 646.608(1):

16   a.   Causing likelihood of confusion or of misunderstanding as to the
17        approval or certification of the Class Vehicles;

18   b.   Representing that the Class Vehicles have approval, characteristics,
19        uses, or benefits that they do not have;

20   c.   Representing that the Class Vehicles are of a particular standard,
21        quality, and grade when they are not; and/or

22   d.   Advertising the Class Vehicles with the intent not to sell or lease them
23        as advertised.

24   Or. Rev. Stat. § 646.608(1)(b), (e), (g), (i),

25   3944. Defendants intended for Plaintiffs and Class Members to rely on them

26   to provide adequately designed Class Vehicles, and to honestly and accurately

27   reveal the safety hazards described above.

28

3945. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

3946. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

3947. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3948. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

3949. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3950. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3951. Pursuant to Or. Re. Stat. § 646.638, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Oregon UTPA.

### c.   Oregon Count 3: Fraud by Omission and Concealment Against All Defendants

3952. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3953. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Oregon Class, against HMA and HMC.

3954. Plaintiffs bring this count individually and on behalf of the other members of the Kia Oregon Class, against KA and KC.

3955. For purposes of this count, the Hyundai Oregon Class Members and Kia Oregon Class Members shall be referred to as "Class Members."

3956. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

3957. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or

Class Members;

b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3958. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

3959. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

3960. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the

Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

3961. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

3962. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

3963. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

3964. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3965. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

3966. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

3967. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.   Oregon Count 4: Unjust Enrichment Against All Defendants

3968. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

3969. Plaintiffs bring this count under Oregon law, individually and on behalf of the other members of the Hyundai Oregon Class, against HMA and HMC.

3970. Plaintiffs bring this count under Oregon law, individually and on behalf of the other members of the Kia Oregon Class, against KA and KC.

3971. For purposes of this count, members of the Hyundai Oregon Class and Kia Oregon Class shall be referred to as "Class Members."

3972. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

3973. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

3974. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs

and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

3975. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

3976. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

3977. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**37.   Pennsylvania**

     **a.   Pennsylvania Count 1: Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212) Against HMA and KA**

3978. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3979. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Pennsylvania Class, against HMA.

3980. Plaintiffs bring this count individually and on behalf of the other members of the Kia Pennsylvania Class, against KA.

3981. For purposes of this count, the Hyundai Pennsylvania Class Members and Kia Pennsylvania Class Members shall be referred to as "Class Members."

3982. For purposes of this count, HMA and KA shall be referred to as "Defendants."

3983. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

3984. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(c), and "sellers" of motor vehicles under § 2103(a).

3985. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

3986. Class Members who purchased Class Vehicles in Pennsylvania are "buyers" within the meaning of 13 Pa. Cons. Stat. § 2103(a).

3987. Class Members who leased Class Vehicles in Pennsylvania are "lessees" within the meaning of 13 Pa. Cons. Stat. § 2A103(a).

3988. The Class Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

3989. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3990. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft

Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3991. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

3992. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3993. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft

1   Prone Defect became public. Additionally, on August 18, 2022, and September 12,
2   2022, Class Members sent notice letters to them.

3   3994.  Alternatively, Plaintiffs and the Class Members were excused from
4   providing Defendants with notice and an opportunity to cure the breach, because it
5   would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants
6   have long known that the Class Vehicles contained the Theft Prone Defect;
7   however, to date, Defendants have not instituted an adequate and meaningful repair
8   program with respect to the Class Vehicles. As such, Plaintiffs and Class Members
9   had no reason to believe that Defendants would have adequately repaired the Theft
10  Prone Defect if they presented their Class Vehicles to them for repair.

11  3995.  As a direct and proximate result of Defendants' breach of the implied
12  warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were
13  and are defective, and the Theft Prone Defect in their Class Vehicles has not been
14  remedied. Therefore, Plaintiffs and Class Members have been damaged, in an
15  amount to be proven at trial.

16  **b.    Pennsylvania Count 2: Violation of the Pennsylvania Unfair**
**Trade Practices and Consumer Protection Law (73 Pa.**
17  **Cons. Stat. §§ 201-1, *et seq.*) Against All Defendants**

18  3996.  Plaintiffs reallege and incorporate by reference all preceding
19  allegations as though fully set forth herein.

20  3997.  Plaintiffs bring this count individually and on behalf of the other
21  members of the Hyundai Pennsylvania Class, against HMA and HMC.

22  3998.  Plaintiffs bring this count individually and on behalf of the other
23  members of the Kia Pennsylvania Class, against KA and KC.

24  3999.  For purposes of this count, the Hyundai Pennsylvania Class Members
25  and Kia Pennsylvania Class Members shall be referred to as "Class Members."

26  4000.  Defendants, Plaintiffs and Class Members are "persons" within the
27  meaning of 73 Pa. Cons. Stat. § 201-2(2).

28

4001. Plaintiffs and Class Members purchased their Class Vehicles primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

4002. Defendants were and are engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

4003. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

4004. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4005. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the CPL in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft

1    Prone Defect would have been a material fact to the Class Members'

2    decisions to buy or lease Class Vehicles; and

3    d.    Defendants made incomplete representations about the safety and

4    reliability of the Class Vehicles while purposefully withholding

5    material facts about a known safety defect. In uniform advertising and

6    materials provided with each Class Vehicle, HMA, and KA

7    intentionally concealed, suppressed, and failed to disclose to the

8    consumers that the Class Vehicles contained the Theft Prone Defect.

9    Because they volunteered to provide information about the Class

10   Vehicles that they marketed and offered for sale and lease to

11   consumers, HMA and KA had the duty to disclose the whole truth.

12   4006. As detailed above, the information concerning the Theft Prone Defect

13   was known to Defendants at the time of advertising and selling the Class Vehicles,

14   all of which was intended to induce consumers to purchase the Class Vehicles.

15   4007. By misrepresenting the Class Vehicles as safe and reliable and free

16   from defects, and by failing to disclose and actively concealing the dangers and risk

17   posed by the Theft Prone Defect, the Defendants engaged in one or more of the

18   following unfair or deceptive business practices prohibited by 73 Pa. Cons. Stat.

19   § 201-2(3):

20   a.    Representing that the Class Vehicles have characteristics, uses,

21   benefits, and qualities which they do not have.

22   b.    Representing that the Class Vehicles are of a particular standard,

23   quality, and grade when they are not.

24   c.    Advertising the Class Vehicles with the intent not to sell or lease them

25   as advertised.

26   d.    Engaging in any other fraudulent or deceptive conduct which creates a

27   likelihood of confusion or of misunderstanding.

28   Pa. Cons. Stat. § 201-2(4)(v), (vii), (ix) and (xxi).

4008. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

4009. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4010. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4011. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4012. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4013.  Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4014.  Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4015.  Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), the Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Pennsylvania CPL.

### c.    Pennsylvania Count 3: Fraud by Omission and Concealment Against All Defendants

4016.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4017.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Pennsylvania Class, against HMA and HMC.

4018.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Pennsylvania Class, against KA and KC.

4019.  For purposes of this count, the Hyundai Pennsylvania Class Members and Kia Pennsylvania Class Members shall be referred to as "Class Members."

4020.  Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4021.  Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in

connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4022. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4023. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable

person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

4024. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

4025. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4026. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4027. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4028. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4029. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4030. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4031. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. Pennsylvania Count 4: Unjust Enrichment Against All Defendants

4032. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4033. Plaintiffs bring this count under Pennsylvania law, individually and on behalf of the other members of the Hyundai Pennsylvania Class, against HMA and HMC.

4034. Plaintiffs bring this count under Pennsylvania law, individually and on behalf of the other members of the Kia Pennsylvania Class, against KA and KC.

4035. For purposes of this count, members of the Hyundai Pennsylvania Class and Kia Pennsylvania Class shall be referred to as "Class Members."

4036. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4037. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from

the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4038. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4039. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4040. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4041. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**38.  Rhode Island**

    **a.  Rhode Island Count 1: Breach of Implied Warranty (R.I. Gen. Laws §§ 6A-2-314 and 6A-2.1-212) Against HMA and KA**

4042. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4043. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Rhode Island Class, against HMA.

4044. Plaintiffs bring this count individually and on behalf of the other members of the Kia Rhode Island Class, against KA.

4045. For purposes of this count, the Hyundai Rhode Island Class Members and Kia Rhode Island Class Members shall be referred to as "Class Members."

4046. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4047. Defendants were and are at all relevant times "merchants" with respect to motor vehicles under R.I. Gen. Laws §§ 6A-2-104(1) and 6A-2.1-103(1)(t), and "sellers" of motor vehicles under § 6A-2-103(a)(4).

4048. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under R.I. Gen. Laws § 6A-2.1-103(1)(p).

4049. The Class Vehicles are and were at all relevant times "goods" within the meaning of R.I. Gen. Laws §§ 6A-2-105(1) and 6A-2.1-103(1)(h).

4050. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to R.I. Gen. Laws §§ 6A2-314 and 6A-2.1-212.

4051. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4052. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft

Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4053. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4054. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4055. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft

1  Prone Defect became public. Additionally, on August 18, 2022, and September 12,
2  2022, Class Members sent notice letters to them.

3      4056.  Alternatively, Plaintiffs and the Class Members were excused from
4  providing Defendants with notice and an opportunity to cure the breach, because it
5  would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants
6  have long known that the Class Vehicles contained the Theft Prone Defect;
7  however, to date, Defendants have not instituted an adequate and meaningful repair
8  program with respect to the Class Vehicles. As such, Plaintiffs and Class Members
9  had no reason to believe that Defendants would have adequately repaired the Theft
10  Prone Defect if they presented their Class Vehicles to them for repair.

11      4057.  As a direct and proximate result of Defendants' breach of the implied
12  warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were
13  and are defective, and the Theft Prone Defect in their Class Vehicles has not been
14  remedied. Therefore, Plaintiffs and Class Members have been damaged, in an
15  amount to be proven at trial.

16          **b.**    **Rhode Island Count 2: Violation of Rhode Island Deceptive**
17                     **Trade Practices Act (R.I. Gen. Laws § 6-13.1, *et seq.*)**
                      **Against All Defendants**

18      4058.  Plaintiffs reallege and incorporate by reference all preceding
19  allegations as though fully set forth herein.

20      4059.  Plaintiffs bring this count individually and on behalf of the other
21  members of the Hyundai Rhode Island Class, against HMA and HMC.

22      4060.  Plaintiffs bring this count individually and on behalf of the other
23  members of the Kia Rhode Island Class, against KA and KC.

24      4061.  For purposes of this count, the Hyundai Rhode Island Class Members
25  and Kia Rhode Island Class Members shall be referred to as "Class Members."

26      4062.  Defendants, Plaintiffs and Class Members are "persons" within the
27  meaning of R.I. Gen. Laws § 6-13.1-1(3).

28

4063. Defendants are engaged in "trade" or "commerce" within the meaning of R.I. Gen. Laws § 6-13.1-1(5).

4064. The Rhode Island Deceptive Trade Practices Act ("Rhode Island DTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce." R.I. Gen. Laws § 6-13.1-2.

4065. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Rhode Island DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4066. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Rhode Island DTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.  Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.  Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.  Defendants made incomplete representations about the safety and

reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4067. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

4068. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by R.I. Gen. Laws § 6-13.1-1(6):

a. Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

b. Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

c. Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

d. Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

e. Engaging in other conduct which created a likelihood of confusion or of misunderstanding.

4069. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

4070. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4071. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4072. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

4073. Had Plaintiffs and Class Members known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4074.  Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4075.  Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4076.  Pursuant to R.I. Gen. Laws § 6-13.1-5.2(a), Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Rhode Island DTPA.

### c.   Rhode Island Count 3: Fraud by Omission and Concealment Against All Defendants

4077.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4078.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Rhode Island Class, against HMA and HMC.

4079.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Rhode Island Class, against KA and KC.

4080.  For purposes of this count, the Hyundai Rhode Island Class Members and Kia Rhode Island Class Members shall be referred to as "Class Members."

4081.  Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4082.  Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in

connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4083. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4084. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable

person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

4085. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

4086. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4087. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4088. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4089. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4090. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4091. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4092. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. Rhode Island Count 4: Unjust Enrichment Against All Defendants

4093. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4094. Plaintiffs bring this count under Rhode Island law, individually and on behalf of the other members of the Hyundai Rhode Island Class, against HMA and HMC.

4095. Plaintiffs bring this count under Rhode Island law, individually and on behalf of the other members of the Kia Rhode Island Class, against KA and KC.

4096. For purposes of this count, members of the Hyundai Rhode Island Class and Kia Rhode Island Class shall be referred to as "Class Members."

4097. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4098. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from

the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4099. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4100. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4101. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4102. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**39.   South Carolina**

    **a.   South Carolina Count 1: Breach of Implied Warranty of Merchantability (S.C. Code Ann. §§ 36-2-314 and 36-2A-212) Against HMA and KA**

4103. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4104. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai South Carolina Class, against HMA.

4105. Plaintiffs bring this count individually and on behalf of the other members of the Kia South Carolina Class, against KA.

4106. For purposes of this count, the Hyundai South Carolina Class Members and Kia South Carolina Class Members shall be referred to as "Class Members."

4107. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4108. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to S.C. Code Ann. §§ 36-2-314 and 36-2A-212.

4109. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.C. Code Ann. §§ 36-2-104(1) and 36-2A-103(3), and "sellers" of motor vehicles under § 36-2-103(1)(d).

4110. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under S.C. Code Ann. § 36-2A-103(1)(p).

4111. Class Members who purchased Class Vehicles in South Carolina are "buyers" within the meaning of S.C. Code Ann. § 36-2-103(1)(a).

4112. Class Members who leased Class Vehicles in South Carolina are "lessees" within the meaning of S.C. Code Ann. § 36-2A-103(1)(n).

4113. Class Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code Ann. §§ 36-2-105(1) and 36-2A-103(1)(h).

4114. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4115. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4116. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4117. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4118. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4119. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4120. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.    South Carolina Count 2: Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. § 39-5-10, *et seq.*) Against All Defendants**

4121. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4122. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai South Carolina Class, against HMA and HMC.

4123. Plaintiffs bring this count individually and on behalf of the other members of the Kia South Carolina Class, against KA and KC.

4124. For purposes of this count, the Hyundai South Carolina Class Members and Kia South Carolina Class Members shall be referred to as "Class Members."

4125. Defendants were and are engaged in "trade" or "commerce" within the meaning of S.C. Code Ann. § 39-5-10(b).

4126. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" S.C. Code Ann. § 39-5-20(a).

4127. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4128. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the South Carolina UTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft

- 748 -

Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4129. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

4130. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect to both consumers and NHTSA, Defendants engaged in unfair or deceptive business practices prohibited by S.C. Code Ann. § 39-5-20(a).

4131. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

4132. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members,

1   about the true safety and reliability of Class Vehicles, the quality of the Class

2   Vehicles, and the true value of the Class Vehicles.

3       4133. Defendants' misrepresentations, omissions, and concealment of

4   material facts regarding the Theft Prone Defect and true characteristics of the Class

5   Vehicles were material to the decisions of Plaintiffs and Class Members to purchase

6   and lease those vehicles, as Defendants intended. Plaintiffs and Class Members

7   were exposed to those misrepresentations, concealments, omissions, and

8   suppressions of material facts, and relied on Defendants' misrepresentations that the

9   Class Vehicles were safe and reliable in deciding to purchase and lease Class

10  Vehicles.

11      4134. Plaintiffs' and Class Members' reliance was reasonable, as they had no

12  way of discerning Defendants' representations were false and misleading, or

13  otherwise learning that the Class Vehicles contained the Theft Prone Defect, as

14  alleged above. Plaintiffs and Class Members did not, and could not, unravel

15  Defendants' deception on their own.

16      4135. Had they known the truth about the Theft Prone Defect, Plaintiffs and

17  Class Members would not have purchased or leased the Class Vehicles, or would

18  have paid significantly less for them.

19      4136. Plaintiffs and Class Members suffered ascertainable losses and actual

20  damages as a direct and proximate result of Defendants' concealment,

21  misrepresentations, and/or failure to disclose material information.

22      4137. Defendants' violations present a continuing risk to Plaintiffs and Class

23  Members, as well as to the general public, because the Class Vehicles remain

24  unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices

25  complained of herein affect the public interest.

26      4138. Pursuant to S.C. Code Ann. § 39-5-140(a), the South Carolina Plaintiff

27  and South Carolina State Class Members seek an order enjoining Defendants'

28

unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the South Carolina UTPA.

### c. South Carolina Count 3: Violation of the South Carolina Regulation of Manufacturers, Distributors, and Dealers Act (S.C. Code Ann. § 56-15-10, *et seq.*) Against All Defendants

4139. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4140. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai South Carolina Class, against HMA and HMC.

4141. Plaintiffs bring this count individually and on behalf of the other members of the Kia South Carolina Class, against KA and KC.

4142. For purposes of this count, the Hyundai South Carolina Class Members and Kia South Carolina Class Members shall be referred to as "Class Members."

4143. Defendants are "manufacturer[s]" as set forth in S.C. Code Ann. § 56-15-10(b), as they were engaged in the business of manufacturing or assembling new and unused motor vehicles. Defendants are also "distributors" and/or "wholesalers" as set forth in S.C. Code Ann. § 56-15-10(g), (p).

4144. The South Carolina Regulation of Manufacturers, Distributors, and Dealers Act ("Manufacturers Act") prohibits "unfair or deceptive acts or practices" as defined in S.C. Code Ann. § 56-15-40. S.C. Code Ann. § 56-15-30(a). Accordingly, the Manufacturers Act prohibits any manufacturer from engaging in bad faith and unconscionable actions that cause damage to the parties or the public; it also prohibits manufacturers from using false or misleading advertising in connection with their business. S.C. Code Ann. § 56-15-40(1), (3)(d).

4145. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

4146. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in unfair or deceptive business practices by committing bad faith and unconscionable actions prohibited by Manufacturers Act.

4147. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described herein.

4148. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4149. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4150. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as

alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4151. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4152. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4153. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4154. Plaintiffs and the Class Members are entitled to double their actual damages, the cost of the suit, attorney's fees pursuant to S.C. Code Ann. § 56-15-110. Plaintiffs also seek injunctive relief under S.C. Code Ann. § 56-15-110. Plaintiffs also seek treble damages because the Defendants acted maliciously.

### d. South Carolina Count 4: Fraud by Omission and Concealment Against All Defendants

4155. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4156. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai South Carolina Class, against HMA and HMC.

4157. Plaintiffs bring this count individually and on behalf of the other members of the Kia South Carolina Class, against KA and KC.

4158. For purposes of this count, the Hyundai South Carolina Class Members and Kia South Carolina Class Members shall be referred to as "Class Members."

4159. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4160. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.     Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.     Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.     Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to

consumers, HMA and KA had the duty to disclose the whole truth.

4161. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4162. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

4163. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

4164. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4165. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4166. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4167. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did

induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4168. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4169. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4170. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

> **e.** **South Carolina Count 5: Unjust Enrichment Against All Defendants**

4171. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4172. Plaintiffs bring this count under South Carolina law, individually and on behalf of the other members of the Hyundai South Carolina Class, against HMA and HMC.

4173. Plaintiffs bring this count under South Carolina law, individually and on behalf of the other members of the Kia South Carolina Class, against KA and KC.

4174. For purposes of this count, members of the Hyundai South Carolina Class and Kia South Carolina Class shall be referred to as "Class Members."

4175. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4176. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4177. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4178. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4179. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4180. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

40. **South Dakota**

    a.    **South Dakota Count 1: Breach of Implied Warranty of Merchantability (S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212) Against HMA and KA**

4181. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4182. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai South Dakota Class, against HMA.

4183. Plaintiffs bring this count individually and on behalf of the other members of the Kia South Dakota Class, against KA.

4184. For purposes of this count, the Hyundai South Dakota Class Members and Kia South Dakota Class Members shall be referred to as "Class Members."

4185. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4186. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212.

4187. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.D. Codified Laws §§ 57A-2-104(1) and 57A-2A-103(3), and "sellers" of motor vehicles under § 57A-2-103(1)(d).

4188. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

4189. Class Members who purchased Class Vehicles in South Dakota are "buyers" within the meaning of S.D. Codified Laws § 57A-2-103(1)(a).

4190. Class Members who leased Class Vehicles in South Dakota are "lessees" within the meaning of S.D. Codified Laws § 57A-2A-103(1)(n).

4191. The Class Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57A-2-105(1) and 57A-2A-103(1)(h).

4192. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4193. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4194. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity

in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4195. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4196. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4197. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4198. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**b.**    **South Dakota Count 2: Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, *et seq.*) Against All Defendants**

4199. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4200. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai South Dakota Class, against HMA and HMC.

4201. Plaintiffs bring this count individually and on behalf of the other members of the Kia South Dakota Class, against KA and KC.

4202. For purposes of this count, the Hyundai South Dakota Class Members and Kia South Dakota Class Members shall be referred to as "Class Members."

4203. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of S.D. Codified Laws § 37-24-1(8).

4204. The Class Vehicles are "merchandise" within the meaning of S.D. Codified Laws § 37-24-1(7).

4205. Defendants are and were engaged in "trade" or "commerce" within the meaning of S.D. Codified Laws § 37-24-1(13).

4206. The South Dakota Deceptive Trade Practices and Consumer Protection Law ("South Dakota DTPA") prohibits "deceptive acts or practices." S.D. Codified Laws § 37-24-6(1).

4207. In the course of its business, Defendants, through their agents, employees, and/or subsidiaries, violated the South Dakota DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4208. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the South Dakota DTPA in the course of its business. Specifically, Defendants owed Plaintiffs and Class Members

a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.      Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.      Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.      Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4209. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

4210. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk

posed by the Theft Prone Defect to both consumers and NHTSA, Defendants engaged in unfair or deceptive business practices prohibited by S.D. Codified Laws § 37-24-6(1).

4211. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

4212. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4213. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4214. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4215. Had Plaintiffs and Class Members known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased Class Vehicles, or would have paid significantly less for them.

4216. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4217. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4218. Pursuant to S.D. Codified Laws § 37-24-31, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the South Dakota DTPA.

### c. South Dakota Count 3: Fraud by Omission and Concealment Against All Defendants

4219. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4220. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai South Dakota Class, against HMA and HMC.

4221. Plaintiffs bring this count individually and on behalf of the other members of the Kia South Dakota Class, against KA and KC.

4222. For purposes of this count, the Hyundai South Dakota Class Members and Kia South Dakota Class Members shall be referred to as "Class Members."

4223. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4224. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have

reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.  Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.  Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4225.  In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4226. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

4227. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

4228. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4229. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4230. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4231. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4232. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4233. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4234. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    South Dakota Count 4: Unjust Enrichment Against All Defendants

4235. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4236. Plaintiffs bring this count under South Dakota law, individually and on behalf of the other members of the Hyundai South Dakota Class, against HMA and HMC.

4237. Plaintiffs bring this count under South Dakota law, individually and on behalf of the other members of the Kia South Dakota Class, against KA and KC.

4238. For purposes of this count, members of the Hyundai South Dakota Class and Kia South Dakota Class shall be referred to as "Class Members."

4239. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4240. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4241. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4242. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4243. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4244. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

### 41.  Tennessee

#### a.  Tennessee Count 1: Breach of Implied Warranty (Tenn. Code §§ 47-2-314 and 47-2A-212) Against HMA and KA

4245. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4246. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Tennessee Class, against HMA.

4247. Plaintiffs bring this count individually and on behalf of the other members of the Kia Tennessee Class, against KA.

4248. For purposes of this count, the Hyundai Tennessee Class Members and Kia Tennessee Class Members shall be referred to as "Class Members."

4249. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4250. Defendants were at all relevant times "merchants" with respect to motor vehicles under Tenn. Code §§ 47-2-104(1) and 47-2A-103(1)(t), and "sellers" of motor vehicles under § 47-2-103(1)(d).

4251. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tenn. Code § 47-2A-103(1)(p).

4252. The Class Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code §§ 47-2-105(1) and 47-2A-103(1)(h).

4253. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Tenn. Code §§ 47-2- 314 and 47-2A-212.

4254. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4255. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4256. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4257. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4258. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4259. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4260. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.** **Tennessee Count 2: Violation of the Tennessee Consumer Protection Act of 1977 (Tenn. Code Ann. § 47-18-101, *et seq.*) Against All Defendants**

4261. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4262. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Tennessee Class, against HMA and HMC.

4263. Plaintiffs bring this count individually and on behalf of the other members of the Kia Tennessee Class, against KA and KC.

4264. For purposes of this count, the Hyundai Tennessee Class Members and Kia Tennessee Class Members shall be referred to as "Class Members."

4265. Defendants, Plaintiffs and Class Members are "persons" within the meaning of Tenn. Code § 47-18-103(18).

4266. Plaintiffs and Class Members are "consumers" within the meaning of Tenn. Code § 47-18-103(6).

4267. The Class Vehicles are "goods" within the meaning of Tenn. Code § 47-18-103(12).

4268. Defendants are engaged in "trade, commerce, or consumer transaction[s]" within the meaning of Tenn. Code § 47-18-103(24).

4269. The Tennessee Consumer Protection Act ("Tennessee CPA") prohibits "[u]nfair or deceptive acts or practices." Tenn. Code § 47-18-104.

4270. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4271. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Tennessee CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle

1          components that would be necessary to discover the Theft Prone

2          Defect on their own;

3    c.    Defendants knew that the Theft Prone Defect gave rise to safety

4          concerns for the consumers who use the Class Vehicles, and the Theft

5          Prone Defect would have been a material fact to the Class Members'

6          decisions to buy or lease Class Vehicles; and

7    d.    Defendants made incomplete representations about the safety and

8          reliability of the Class Vehicles while purposefully withholding

9          material facts about a known safety defect. In uniform advertising and

10         materials provided with each Class Vehicle, HMA and KA

11         intentionally concealed, suppressed, and failed to disclose to the

12         consumers that the Class Vehicles contained the Theft Prone Defect.

13         Because they volunteered to provide information about the Class

14         Vehicles that they marketed and offered for sale and lease to

15         consumers, HMA and KA had the duty to disclose the whole truth.

16    4272. As detailed above, the information concerning the Theft Prone Defect

17 was known to Defendants at the time of advertising and selling the Class Vehicles,

18 all of which was intended to induce consumers to purchase the Class Vehicles.

19    4273. By misrepresenting the Class Vehicles as safe and reliable and free

20 from defects, and by failing to disclose and actively concealing the dangers and risk

21 posed by the Theft Prone Defect, Defendants engaged in one or more of the

22 following unfair or deceptive business practices prohibited by Tenn. Code § 47-18-

23 104:

24    a.    Causing likelihood of confusion or of misunderstanding as to the

25          approval or certification of the Class Vehicles;

26    b.    Representing that the Class Vehicles have approval, characteristics,

27          uses, or benefits that they do not have;

28    c.    Representing that the Class Vehicles are of a particular standard,

1    quality, and grade when they are not;

2    d.    Advertising the Class Vehicles with the intent not to sell or lease them

3          as advertised;

4    e.    Engaging in other conduct which created a likelihood of confusion or

5          of misunderstanding; and/or

6    f.    Using or employing deception, fraud, false pretense, false promise or

7          misrepresentation, or the concealment, suppression, or omission of a

8          material fact with intent that others rely upon such concealment,

9          suppression or omission, in connection with the advertisement and

10         sale/lease of the Class Vehicles, whether or not any person has in fact

11         been misled, deceived or damaged thereby.

12   Tenn. Code § 47-18-104 (2), (5), (7), (9), and (27).

13   4274. Defendants intended for Plaintiffs and Class Members to rely on them

14   to provide adequately designed Class Vehicles, and to honestly and accurately

15   reveal the safety hazards described above.

16   4275. Defendants' unfair or deceptive acts or practices were designed to

17   mislead and had a tendency or capacity to mislead and create a false impression in

18   consumers that the Class Vehicles had adequate anti-theft protection, and that the

19   Class Vehicles were not affected by the Theft Prone Defect. Indeed, those

20   misrepresentations, concealments, omissions, and suppressions of material facts did

21   in fact deceive reasonable consumers, including Plaintiffs and Class Members,

22   about the true safety and reliability of Class Vehicles, the quality of the Class

23   Vehicles, and the true value of the Class Vehicles.

24   4276. Defendants' misrepresentations, omissions, and concealment of

25   material facts regarding the Theft Prone Defect and true characteristics of the Class

26   Vehicles were material to the decisions of Plaintiffs and Class Members to purchase

27   and lease those vehicles, as Defendants intended. Plaintiffs and Class Members

28   were exposed to those misrepresentations, concealments, omissions, and

suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4277. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4278. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4279. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4280. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4281. Pursuant to Tenn. Code §§ 47-18-108, 47-18-109, and 47-18-109(a)(3), Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Tennessee CPA.

4282. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Plaintiffs will have no adequate legal remedy.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

   c.   **Tennessee Count 3: Fraud by Omission and Concealment
          Against All Defendants**

4283.  Plaintiffs reallege and incorporate by reference all preceding
allegations as though fully set forth herein.

4284.  Plaintiffs bring this count individually and on behalf of the other
members of the Hyundai Tennessee Class, against HMA and HMC.

4285.  Plaintiffs bring this count individually and on behalf of the other
members of the Kia Tennessee Class, against KA and KC.

4286.  For purposes of this count, the Hyundai Tennessee Class Members and
Kia Tennessee Class Members shall be referred to as "Class Members."

4287.  Defendants were aware of the Theft Prone Defect when they marketed
and sold the Class Vehicles to Plaintiffs and Class Members.

4288.  Having been aware of the Theft Prone Defect within the Class
Vehicles, and having known that Plaintiffs and Class Members could not have
reasonably been expected to know of the Theft Prone Defect, Defendants had a
duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in
connection with the sale of the Class Vehicles. Defendants further had a duty to
disclose the Theft Prone Defect because:

   a.   Defendants had exclusive access to and far superior knowledge about
        facts regarding the Theft Prone Defect and Defendants knew these
        facts were not known to or reasonably discoverable by Plaintiffs or
        Class Members;

   b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs
        and Class Members lack the sophisticated expertise in vehicle
        components that would be necessary to discover the Theft Prone
        Defect on their own;

   c.   Defendants knew that the Theft Prone Defect gave rise to safety
        concerns for the consumers who use the Class Vehicles, and the Theft

Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4289. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4290. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

4291. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

4292. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4293. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4294. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4295. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4296. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4297. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4298. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

1

### d.    Tennessee Count 4: Unjust Enrichment Against All Defendants

2

4299. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4300. Plaintiffs bring this count under Tennessee law, individually and on behalf of the other members of the Hyundai Tennessee Class, against HMA and HMC.

4301. Plaintiffs bring this count under Tennessee law, individually and on behalf of the other members of the Kia Tennessee Class, against KA and KC.

4302. For purposes of this count, members of the Hyundai Tennessee Class and Kia Tennessee Class shall be referred to as "Class Members."

4303. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4304. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4305. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4306. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4307. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4308. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**42.   Texas**

**a.   Texas Count 1: Breach of Implied Warranty of Merchantability (Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212) Against HMA and KA**

4309. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4310. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Texas Class, against HMA.

4311. Plaintiffs bring this count individually and on behalf of the other members of the Kia Texas Class, against KA.

4312. For purposes of this count, the Hyundai Texas Class Members and Kia Texas Class Members shall be referred to as "Class Members."

4313. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4314. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212.

4315. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tex. Bus. & Com. Code Ann. §§ 2.104(a) and 2A.103(c), and "sellers" of motor vehicles under § 2.103(a)(4).

4316. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code Ann. § 2A.103(a)(16).

4317. All Class Members who purchased Class Vehicles in Texas are "buyers" within the meaning of Tex. Bus. & Com. Code Ann. § 2.103(a)).

4318. All Class Members who leased Class Vehicles in Texas are "lessees" within the meaning of Tex. Bus. & Com. Code Ann. § 2A.103(a)(14).

4319. The Class Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code Ann. §§ 2.105(a) and 2A.103(a)(8).

4320. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4321. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4322. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4323. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4324. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4325. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect;

however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4326.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.  Texas Count 2: Violation of the Deceptive Trade Practices-Consumer Protection Act (Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*) Against All Defendants**

4327.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4328.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Texas Class, against HMA and HMC.

4329.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Texas Class, against KA and KC.

4330.  For purposes of this count, the Hyundai Texas Class Members and Kia Texas Class Members shall be referred to as "Class Members."

4331.  Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(3).

4332.  The Plaintiffs and Class Members are "consumers" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(4).

4333.  The Class Vehicles are "goods" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(1).

4334.  Defendants were and are engaged in "trade" or "commerce" within the meaning of Tex. Bus. & Com. Code Ann. § 17.45(6).

4335. The Deceptive Trade Practices-Consumer Protection Act ("Texas DTPA") prohibits "[f]alse, misleading, or deceptive acts or practices in the conduct of any trade or commerce[,]" Tex. Bus. & Com. Code Ann. § 17.46(a), and an "unconscionable action or course of action[,]" Tex. Bus. & Com. Code Ann. §§ 17.45(5) and 17.50(a)(3).

4336. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Texas DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4337. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Texas DTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Immobilizer Theft Prone Defect in the Class Vehicles because as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and

reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4338. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

4339. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Tex. Bus. & Com. Code Ann. §§ 17.46:

    a.    Representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b.    Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and

    c.    Advertising the Class Vehicles with the intent not to sell or lease them as advertised.

Tex. Bus. & Com. Code Ann. §§ 17.46(5), (7), and (9).

4340. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

4341. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in

consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4342. Defendant's misrepresentations, concealments, omissions, and suppressions of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of the Plaintiffs and Class Members to purchase and lease those vehicles, as intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4343. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4344. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased Class Vehicles, or would have paid significantly less for them.

4345. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4346. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain

unsafe due to the .Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4347. On August 18, 2022, and September 12, 2022, Class Members sent Defendants notice of the Theft Prone Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiff seek all damages and relief to which Class Members are entitled.

4348. Alternatively, any requirement to give notice to the Defendants under Tex. Bus. & Com. Code Ann. § 17.505(a) is excused because, *inter alia*, notice was impracticable due to the necessity of filing suit in order to prevent the expiration of the statute of limitations on certain Plaintiffs and Class Members' claims.

4349. Pursuant to Tex. Bus. & Com. Code Ann. § 17.505, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Texas DTPA.

**c.   Texas Count 3: Fraud by Omission and Concealment Against All Defendants**

4350. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4351. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Texas Class, against HMA and HMC.

4352. Plaintiffs bring this count individually and on behalf of the other members of the Kia Texas Class, against KA and KC.

4353. For purposes of this count, the Hyundai Texas Class Members and Kia Texas Class Members shall be referred to as "Class Members."

4354. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4355. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect.

Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4356. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4357. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

4358. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

4359. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4360. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4361. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4362. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4363. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4364. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4365. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Texas Count 4: Unjust Enrichment Against All Defendants

4366. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4367. Plaintiffs bring this count under Texas law, individually and on behalf of the other members of the Hyundai Texas Class, against HMA and HMC.

4368. Plaintiffs bring this count under Texas law, individually and on behalf of the other members of the Kia Texas Class, against KA and KC.

4369. For purposes of this count, members of the Hyundai Texas Class and Kia Texas Class shall be referred to as "Class Members."

4370. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4371. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4372. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4373. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4374. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4375. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**43.** **Utah**

    **a.** **Utah Count 1: Breach of Implied Warranty (Utah Code Ann. §§ 70A-2-314 and 70A-2A-212) Against HMA and KA**

4376. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4377. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Utah Class, against HMA.

4378. Plaintiffs bring this count individually and on behalf of the other members of the Kia Utah Class, against KA.

4379. For purposes of this count, the Hyundai Utah Class Members and Kia Utah Class Members shall be referred to as "Class Members."

4380. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4381. Defendants were at all relevant times "merchants" with respect to motor vehicles under Utah Code § 70A-2-104(1) and 70A-2a-103(1)(t), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

4382. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code § 70A-2a-103(1)(p).

4383. The Class Vehicles are and were at all relevant times "goods" within the meaning of Utah Code §§ 70A-2-105(1) and 70A-2a-103(1)(h).

4384. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Utah Code §§ 70A-2- 314 and 70A-2a-212.

4385. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class

Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4386. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4387. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4388. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4389. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4390. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4391. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

      **b.**    **Utah Count 2: Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. § 13-11-1, *et seq.*) Against All Defendants**

4392. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4393. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Utah Class, against HMA and HMC.

4394. Plaintiffs bring this count individually and on behalf of the other members of the Kia Utah Class, against KA and KC.

4395. For purposes of this count, the Hyundai Utah Class Members and Kia Utah Class Members shall be referred to as "Class Members."

4396. Defendants are "supplier[s]" within the meaning of Utah Code § 13-11-3(6).

4397. Plaintiff and the Utah State Class Members are "persons" under Utah Code § 13-11-3(5).

4398. The sales and leases of the Class Vehicles to the Plaintiff and Utah State Class Members were "consumer transactions" within the meaning of Utah Code § 13-11-3(2).

4399. The Utah Consumer Sales Practices Act ("Utah CSPA") makes unlawful any "deceptive act or practice by a supplier in connection with a consumer transaction." Utah Code § 13-11-4. "An unconscionable act or practice by a supplier in connection with a consumer transaction" also violates the Utah CSPA. Utah Code § 13-11-5.

4400. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Utah CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4401. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Utah CSPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.  Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.  Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4402. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

4403. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Utah CSPA:

a.    Indicating that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

b.    Indicating that the Class Vehicles are of a particular standard, quality, and grade when they are not; and

c.    Indicating that the Class Vehicles were supplied in accordance with Defendants' prior representations, although they were not as represented.

Utah Code § 13-11-4.

4404. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

4405. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4406. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4407. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4408. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4409. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4410. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4411. Plaintiff and the Utah State Class seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Utah CSPA.

      **c.**    **Utah Count 3: Violation of the Utah Truth in Advertising Law (Utah Code Ann. § 13-11a-1, *et seq.*) Against All Defendants**

4412. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4413. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Utah Class, against HMA and HMC.

4414. Plaintiffs bring this count individually and on behalf of the other members of the Kia Utah Class, against KA and KC.

4415. For purposes of this count, the Hyundai Utah Class Members and Kia Utah Class Members shall be referred to as "Class Members."

4416. Plaintiffs, Defendants, and Class Members are "person[s]" within the meaning of Utah Code § 13-11a-1(7).

4417. Utah's Truth In Advertising law makes unlawful any deceptive practice undertaken in the course of a person's business. Utah Code § 13-11a-3.

4418. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Utah Truth In Advertising Law by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4419. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Utah Truth In Advertising Law in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding

material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4420. By misrepresenting the Class Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Utah Code § 13-11a-3:

a. Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

b. Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

c. Representing that the Class Vehicles are of a particular standard, quality and grade when they are not;

d. Advertising the Class Vehicles with the intent not to sell or lease them as advertised; and/or

e. Engaging in other conduct which created a likelihood of confusion or of misunderstanding about the true characteristics of the Class Vehicles.

4421. Defendants' unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect.

Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4422. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4423. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4424. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4425. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4426. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4427. Plaintiffs and the Class Members seek an order enjoining Defendants'
unfair and/or deceptive acts or practices pursuant to Utah Code Ann. § 13-11a-4,
and awarding damages, punitive damages, and any other just and proper relief
available under the Utah Truth In Advertising law.

### d.  Utah Count 4: Fraud by Omission and Concealment Against All Defendants

4428. Plaintiffs reallege and incorporate by reference all preceding
allegations as though fully set forth herein.

4429. Plaintiffs bring this count individually and on behalf of the other
members of the Hyundai Utah Class, against HMA and HMC.

4430. Plaintiffs bring this count individually and on behalf of the other
members of the Kia Utah Class, against KA and KC.

4431. For purposes of this count, the Hyundai Utah Class Members and Kia
Utah Class Members shall be referred to as "Class Members."

4432. Defendants were aware of the Theft Prone Defect when they marketed
and sold the Class Vehicles to Plaintiffs and Class Members.

4433. Having been aware of the Theft Prone Defect within the Class
Vehicles, and having known that Plaintiffs and Class Members could not have
reasonably been expected to know of the Theft Prone Defect, Defendants had a
duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in
connection with the sale of the Class Vehicles. Defendants further had a duty to
disclose the Theft Prone Defect because:

a.    Defendants had exclusive access to and far superior knowledge about
facts regarding the Theft Prone Defect and Defendants knew these
facts were not known to or reasonably discoverable by Plaintiffs or
Class Members;

b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs
and Class Members lack the sophisticated expertise in vehicle

1      components that would be necessary to discover the Theft Prone

2      Defect on their own;

3   c.   Defendants knew that the Theft Prone Defect gave rise to safety

4      concerns for the consumers who use the Class Vehicles, and the Theft

5      Prone Defect would have been a material fact to the Class Members'

6      decisions to buy or lease Class Vehicles; and

7   d.   Defendants made incomplete representations about the safety and

8      reliability of the Class Vehicles while purposefully withholding

9      material facts about a known safety defect. In uniform advertising and

10     materials provided with each Class Vehicle, HMA, and KA

11     intentionally concealed, suppressed, and failed to disclose to the

12     consumers that the Class Vehicles contained the Theft Prone Defect.

13     Because they volunteered to provide information about the Class

14     Vehicles that they marketed and offered for sale and lease to

15     consumers, HMA and KA had the duty to disclose the whole truth.

16     4434. In breach of their duties, Defendants failed to disclose the Theft Prone

17  Defect to Plaintiffs and Class Members in connection with the sale of the Class

18  Vehicles.

19     4435. For the reasons set forth above, the Theft Prone Defect within the

20  Class Vehicles is material to the sale of the Class Vehicles because a reasonable

21  person would find it important in purchasing, leasing, or retaining a new or used

22  motor vehicle and because it directly impacts the value of the Class Vehicles

23  purchased or leased by the Plaintiffs and Class Members.

24     4436. Defendants intended for the Plaintiffs and Class Members to rely on

25  their omissions and concealment—which they did by purchasing and leasing the

26  Class Vehicles at the prices they paid believing that their vehicles would not have a

27  Theft Prone Defect that would affect the quality, reliability, and safety of the Class

28  Vehicles.

4437. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4438. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4439. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4440. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4441. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4442. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4443. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants

an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### e. Utah Count 5: Unjust Enrichment Against All Defendants

4444. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4445. Plaintiffs bring this count under Utah law, individually and on behalf of the other members of the Hyundai Utah Class, against HMA and HMC.

4446. Plaintiffs bring this count under Utah law, individually and on behalf of the other members of the Kia Utah Class, against KA and KC.

4447. For purposes of this count, members of the Hyundai Utah Class and Kia Utah Class shall be referred to as "Class Members."

4448. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4449. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4450. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4451. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4452. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4453. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**44.     Vermont**

**a.     Vermont Count 1: Breach of Implied Warranty (Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212) Against HMA and KA**

4454. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4455. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Vermont Class, against HMA.

4456. Plaintiffs bring this count individually and on behalf of the other members of the Kia Vermont Class, against KA.

4457. For purposes of this count, the Hyundai Vermont Class Members and Kia Vermont Class Members shall be referred to as "Class Members."

4458. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4459. Defendants were at all relevant times "merchants" with respect to motor vehicles under Vt. Stat. Tit. 9A, § 2-104(1) and 2A-103(1)(t), and "sellers" of motor vehicles under § 2- 103(1)(d).

4460. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Vt. Stat. Tit. 9A, § 2A-103(1)(p).

4461. The Class Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

4462. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Vt. Stat. Tit. 9A, §§ 2- 314 and 2A-212.

4463. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4464. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4465. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is

unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4466. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4467. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4468. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members

had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4469. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.   Vermont Count 2: Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. Tit. 9, § 2451, *et seq.*) Against All Defendants**

4470. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4471. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Vermont Class, against HMA and HMC.

4472. Plaintiffs bring this count individually and on behalf of the other members of the Kia Vermont Class, against KA and KC.

4473. For purposes of this count, the Hyundai Vermont Class Members and Kia Vermont Class Members shall be referred to as "Class Members."

4474. Plaintiffs, and the Class Members are "consumers" within the meaning of Vt. Stat. Tit. 9, § 2451a(1).

4475. The Class Vehicles are "goods" within the meaning of Vt. Stat. Tit. 9, § 2451a(2).

4476. The Vermont Consumer Protection Act ("Vermont CPA") prohibits "[u]nfair methods of competition . . . and unfair or deceptive acts or practices." Vt. Stat. Tit. 9, § 2453(a).

4477. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Vermont CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose

material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4478. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Vermont CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.  Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.  Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4479. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

4480. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Vt. Stat. Tit. 9, § 2453(a):

a. Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Class Vehicles;

b. Representing that the Class Vehicles have approval, characteristics, uses, or benefits that they do not have;

c. Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not;

d. Advertising the Class Vehicles with the intent not to sell or lease them as advertised;

e. Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

f. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

Vt. Stat. Tit. 9, § 2453(a).

4481. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

4482. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4483. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4484. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4485. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4486. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4487. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4488. Pursuant to Vt. Stat. Tit. 9, § 2461(b), Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Vermont CPA.

### c. Vermont Count 3: Fraud by Omission and Concealment Against All Defendants

4489. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4490. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Vermont Class, against HMA and HMC.

4491. Plaintiffs bring this count individually and on behalf of the other members of the Kia Vermont Class, against KA and KC.

4492. For purposes of this count, the Hyundai Vermont Class Members and Kia Vermont Class Members shall be referred to as "Class Members."

4493. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4494. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these

1        facts were not known to or reasonably discoverable by Plaintiffs or

2        Class Members;

3   b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs

4        and Class Members lack the sophisticated expertise in vehicle

5        components that would be necessary to discover the Theft Prone

6        Defect on their own;

7   c.   Defendants knew that the Theft Prone Defect gave rise to safety

8        concerns for the consumers who use the Class Vehicles, and the Theft

9        Prone Defect would have been a material fact to the Class Members'

10       decisions to buy or lease Class Vehicles; and

11   d.   Defendants made incomplete representations about the safety and

12       reliability of the Class Vehicles while purposefully withholding

13       material facts about a known safety defect. In uniform advertising and

14       materials provided with each Class Vehicle, HMA, and KA

15       intentionally concealed, suppressed, and failed to disclose to the

16       consumers that the Class Vehicles contained the Theft Prone Defect.

17       Because they volunteered to provide information about the Class

18       Vehicles that they marketed and offered for sale and lease to

19       consumers, HMA and KA had the duty to disclose the whole truth.

20   4495. In breach of their duties, Defendants failed to disclose the Theft Prone

21 Defect to Plaintiffs and Class Members in connection with the sale of the Class

22 Vehicles.

23   4496. For the reasons set forth above, the Theft Prone Defect within the

24 Class Vehicles is material to the sale of the Class Vehicles because a reasonable

25 person would find it important in purchasing, leasing, or retaining a new or used

26 motor vehicle and because it directly impacts the value of the Class Vehicles

27 purchased or leased by the Plaintiffs and Class Members.

28

4497. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

4498. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4499. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4500. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4501. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4502. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4503. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to

them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4504. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Vermont Count 4: Unjust Enrichment Against All Defendants

4505. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4506. Plaintiffs bring this count under Vermont law, individually and on behalf of the other members of the Hyundai Vermont Class, against HMA and HMC.

4507. Plaintiffs bring this count under Vermont law, individually and on behalf of the other members of the Kia Vermont Class, against KA and KC.

4508. For purposes of this count, members of the Hyundai Vermont Class and Kia Vermont Class shall be referred to as "Class Members."

4509. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4510. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4511. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4512. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4513. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4514. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**45.    Virginia**

    **a.    Virginia Count 1: Breach of Implied Warranty (Va. Code Ann. §§ 8.2-314 and 8.2A-212) Against HMA and KA**

4515. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4516. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Virginia Class, against HMA.

4517. Plaintiffs bring this count individually and on behalf of the other members of the Kia Virginia Class, against KA.

4518. For purposes of this count, the Hyundai Virginia Class Members and Kia Virginia Class Members shall be referred to as "Class Members."

4519. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4520. Defendants were at all relevant times "merchants" with respect to motor vehicles under Va. Code § 8.2-104(1) and 8.2A-103(1)(t), and "sellers" of motor vehicles under § 8.2- 103(1)(d).

4521. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code § 8.2A-103(1)(p).

4522. The Class Vehicles are and were at all relevant times "goods" within the meaning of Va. Code §§ 8.2-105(1) and 8.2A-103(1)(h).

4523. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Va. Code §§ 8.2-314 and 8.2A-212.

4524. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4525. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a

substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4526. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4527. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4528. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4529.  Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4530.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

### b. Virginia Count 2: Violation of the Virginia Consumer Protection Act (Va. Code Ann. §§ 59.1-196, *et seq.*) Against All Defendants

4531.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4532.  Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Virginia Class, against HMA and HMC.

4533.  Plaintiffs bring this count individually and on behalf of the other members of the Kia Virginia Class, against KA and KC.

4534.  For purposes of this count, the Hyundai Virginia Class Members and Kia Virginia Class Members shall be referred to as "Class Members."

4535.  Defendants, Plaintiffs and Class Members are "persons" within the meaning of Va. Code § 59.1-198.

4536.  Defendants are "supplier[s]" within the meaning of Va. Code § 59.1-198.

4537. The Virginia Consumer Protection Act ("Virginia CPA") makes unlawful "fraudulent acts or practices." Va. Code § 59.1-200(A).

4538. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4539. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Virginia CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA

intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4540. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

4541. By misrepresenting the Class Vehicles as safe and/or reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Class Vehicles and the Theft Prone Defect, Defendants engaged in one or more of the following fraudulent, unfair or deceptive acts or practices as defined in Va. Code § 59.1-200(A):

a.   Misrepresenting that the Class Vehicles had characteristics, uses, benefits, and qualities which they do not have;

b.   Representing that the Class Vehicles are of a particular standard, quality, and grade when they are not; and/or

c.   Advertising the Class Vehicles with the intent not to sell or lease them as advertised.

4542. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

4543. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members,

about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4544. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiff and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiff and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4545. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4546. Had they and Class Members known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4547. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4548. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4549. Pursuant to Va. Code § 59.1-204(A)-(B), Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Virginia UDTPA.

4550. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Plaintiff will have no adequate legal remedy.

### c.   Virginia Count 3: Fraud by Omission and Concealment Against All Defendants

4551. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4552. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Virginia Class, against HMA and HMC.

4553. Plaintiffs bring this count individually and on behalf of the other members of the Kia Virginia Class, against KA and KC.

4554. For purposes of this count, the Hyundai Virginia Class Members and Kia Virginia Class Members shall be referred to as "Class Members."

4555. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4556. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle

- 824 -

1    components that would be necessary to discover the Theft Prone

2    Defect on their own;

3    c.    Defendants knew that the Theft Prone Defect gave rise to safety

4         concerns for the consumers who use the Class Vehicles, and the Theft

5         Prone Defect would have been a material fact to the Class Members'

6         decisions to buy or lease Class Vehicles; and

7    d.    Defendants made incomplete representations about the safety and

8         reliability of the Class Vehicles while purposefully withholding

9         material facts about a known safety defect. In uniform advertising and

10        materials provided with each Class Vehicle, HMA, and KA

11        intentionally concealed, suppressed, and failed to disclose to the

12        consumers that the Class Vehicles contained the Theft Prone Defect.

13        Because they volunteered to provide information about the Class

14        Vehicles that they marketed and offered for sale and lease to

15        consumers, HMA and KA had the duty to disclose the whole truth.

16   4557. In breach of their duties, Defendants failed to disclose the Theft Prone

17   Defect to Plaintiffs and Class Members in connection with the sale of the Class

18   Vehicles.

19   4558. For the reasons set forth above, the Theft Prone Defect within the

20   Class Vehicles is material to the sale of the Class Vehicles because a reasonable

21   person would find it important in purchasing, leasing, or retaining a new or used

22   motor vehicle and because it directly impacts the value of the Class Vehicles

23   purchased or leased by the Plaintiffs and Class Members.

24   4559. Defendants intended for the Plaintiffs and Class Members to rely on

25   their omissions and concealment—which they did by purchasing and leasing the

26   Class Vehicles at the prices they paid believing that their vehicles would not have a

27   Theft Prone Defect that would affect the quality, reliability, and safety of the Class

28   Vehicles.

4560. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4561. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4562. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4563. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4564. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4565. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4566. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants

an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.  Virginia Count 4: Unjust Enrichment Against All Defendants

4567.  Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4568.  Plaintiffs bring this count under Virginia law, individually and on behalf of the other members of the Hyundai Virginia Class, against HMA and HMC.

4569.  Plaintiffs bring this count under Virginia law, individually and on behalf of the other members of the Kia Virginia Class, against KA and KC.

4570.  For purposes of this count, members of the Hyundai Virginia Class and Kia Virginia Class shall be referred to as "Class Members."

4571.  When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4572.  Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4573.  Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4574. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4575. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4576. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**46.    Washington**

**a.    Washington Count 1: Breach of Implied Warranty of Merchantability (Wash. Rev. Code §§ 62A.2-314 and 62A.2A-212) Against HMA and KA**

4577. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4578. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Washington Class, against HMA.

4579. Plaintiffs bring this count individually and on behalf of the other members of the Kia Washington Class, against KA.

4580. For purposes of this count, the Hyundai Washington Class Members and Kia Washington Class Members shall be referred to as "Class Members."

4581. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4582. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were

sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4583. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4584. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4585.  Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4586.  Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4587.  Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4588.  As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial

**b.** **Washington Count 2: Violation of the Washington Consumer Protection Act (Wash. Rev. Code § 19.86.010, *et seq.*) Against All Defendants**

4589. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4590. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Washington Class, against HMA and HMC.

4591. Plaintiffs bring his count individually and on behalf of the other members of the Kia Washington Class, against KA and KC.

4592. For purposes of this count, the Hyundai Washington Class Members and Kia Washington Class Members shall be referred to as "Class Members."

4593. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Wash. Rev. Code § 19.86.010(1).

4594. Class Vehicles and their ignition systems and anti-theft features are "assets" within the meaning of Wash. Rev. Code § 19.86.010(3).

4595. Defendants are and were engaged in "trade" or "commerce" within the meaning of Wash. Rev. Code § 19.86.010(2).

4596. The Washington Consumer Protection Act ("Washington CPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Wash. Rev. Code § 19.86.020.

4597. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles, and the Theft Prone Defect, as detailed above.

4598. Defendants had an ongoing duty to Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Washington CPA in the course of their business. Specifically, Defendants owed Plaintiffs and Class Members a

duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4599. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

4600. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk

posed by the Theft Prone Defect Defendants engaged in unfair or deceptive business practices prohibited by Wash. Rev. Code § 19.86.020.

4601. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

4602. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4603. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease the Class Vehicles.

4604. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4605. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4606. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4607. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4608. Pursuant to Wash. Rev. Code §§ 19.86.090, Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Washington CPA.

### c. Washington Count 3: Fraud by Omission and Concealment Against All Defendants

4609. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4610. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Washington Class, against HMA and HMC.

4611. Plaintiffs bring this count individually and on behalf of the other members of the Kia Washington Class, against KA and KC.

4612. For purposes of this count, the Hyundai Washington Class Members and Kia Washington Class Members shall be referred to as "Class Members."

4613. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4614. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have

reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.   Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they voluntarily to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4615. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4616. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

4617. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

4618. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4619. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4620. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4621. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4622. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4623. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4624. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d.    Washington Count 4: Unjust Enrichment Against All Defendants

4625. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4626. Plaintiffs bring this count under Washington law, individually and on behalf of the other members of the Hyundai Washington Class, against HMA and HMC.

4627. Plaintiffs bring this count under Washington law, individually and on behalf of the other members of the Kia Washington Class, against KA and KC.

4628. For purposes of this count, members of the Hyundai Washington Class and Kia Washington Class shall be referred to as "Class Members."

4629. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4630. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4631. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4632. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4633. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4634. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**47.  West Virginia**

**a.  West Virginia Count 1: Breach of Implied Warranty (W. Va. Code §§ 46-2-314 and 46-2A-212) Against HMA and KA**

4635. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4636. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai West Virginia Class, against HMA.

4637. Plaintiffs bring this count individually and on behalf of the other members of the Kia West Virginia Class, against KA.

4638. For purposes of this count, the Hyundai West Virginia Class Members and Kia West Virginia Class Members shall be referred to as "Class Members."

4639. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4640. Defendants were at all relevant times "merchants" with respect to motor vehicles under W. Va. Code §§ 46-2-104(1) and 46-2A-103(1)(t), and "sellers" of motor vehicles under § 46-2-103(1)(d).

4641. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code § 46-2A-103(1)(p).

4642. The Class Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code §§ 46-2-105(1) and 46-2A-103(1)(h).

4643. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to W. Va. Code §§ 46-2- 314 and 46-2A-212.

4644. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4645. However, the Class Vehicles did not comply with the implied warranty
of merchantability because they were defective and not in merchantable condition,
would not pass without objection in the trade, and were not fit for their ordinary
purpose of providing reasonably reliable, safe, and secure transportation at the time
of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft
Prone Defect, lacking any anti-theft features or design elements to provide an
adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a
substantial safety hazard because the Theft Prone Defect renders Class Vehicles
vulnerable to theft, making them prime targets to be used as instrumentalities
through which thieves engage in reckless driving or other criminal activity.

4646. Any attempt by Defendants to disclaim or limit the implied warranty
of merchantability for their respective Class Vehicles vis-à-vis consumers is
unconscionable and unenforceable. Specifically, Defendants' warranty limitations
are unenforceable because Defendants knowingly sold or leased defective Class
Vehicles without informing consumers about the Theft Prone Defect. The time
limits contained in Defendants' warranty periods were also unconscionable and
inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs
and Class Members had no meaningful choice in determining these time
limitations, the terms of which unreasonably favored Defendants. A gross disparity
in bargaining power existed between Defendants and Plaintiffs and other Class
Members. Additionally, Defendants knew of the Theft Prone Defect at the time of
sale.

4647. Furthermore, the circumstances described herein caused Defendants'
exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and
Class Members may seek alternative remedies. Indeed, these breaches of warranties
have denied Plaintiffs and Class Members the benefit of their respective bargains,
which presupposes they were (or are) able to use the Class Vehicles in a meaningful
manner without the ever–present risk of them being stolen.

4648. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4649. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4650. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

**b.  West Virginia Count 2: Violation of the Consumer Credit and Protection Act (W. Va. Code § 46A-1-101, *et seq.*) Against All Defendants**

4651. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4652. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai West Virginia Class, against HMA and HMC.

4653. Plaintiffs bring this count individually and on behalf of the other members of the Kia West Virginia Class, against KA and KC.

4654. For purposes of this count, the Hyundai West Virginia Class Members and Kia West Virginia Class Members shall be referred to as "Class Members."

4655. Defendants, Plaintiffs and Class Members are "persons" within the meaning of W. Va. Code § 46A-1-102(31). The Class Members are "consumers" within the meaning of W. Va. Code §§ 46A-6-102(2) and 46A-1-102(12).

4656. Defendants are engaged in "trade" or "commerce" within the meaning of W. Va. Code within the meaning of W. Va. Code § 46A-6-102(6).

4657. The West Virginia Consumer Credit and Protection Act (West Virginia CCPA") makes unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." W. Va. Code § 46A-6-104.

4658. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the West Virginia CCPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4659. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the West Virginia CCPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

 a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

 b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone

1    Defect on their own;

2    c.    Defendants knew that the Theft Prone Defect gave rise to safety

3          concerns for the consumers who use the Class Vehicles, and the Theft

4          Prone Defect would have been a material fact to the Class Members'

5          decisions to buy or lease Class Vehicles;

6    d.    Defendants made incomplete representations about the safety and

7          reliability of the Class Vehicles while purposefully withholding

8          material facts about a known safety defect. In uniform advertising and

9          materials provided with each Class Vehicle, HMA and KA

10         intentionally concealed, suppressed, and failed to disclose to the

11         consumers that the Class Vehicles contained the Theft Prone Defect.

12         Because they volunteered to provide information about the Class

13         Vehicles that they marketed and offered for sale and lease to

14         consumers, HMA and KA had the duty to disclose the whole truth.

15   4660. As detailed above, the information concerning the Theft Prone Defect

16   was known to Defendants at the time of advertising and selling the Class Vehicles,

17   all of which was intended to induce consumers to purchase the Class Vehicles.

18   4661. By misrepresenting the Class Vehicles as safe and reliable and free

19   from defects, and by failing to disclose and actively concealing the dangers and risk

20   posed by the Theft Prone Defect, Defendants engaged in one or more of the

21   following unfair or deceptive business practices prohibited by W. Va. Code § 46A-

22   6-102(7):

23   a.    representing that the Class Vehicles have characteristics, uses,

24         benefits, and qualities which they do not have;

25   b.    representing that the Class Vehicles are of a particular standard,

26         quality, and grade when they are not;

27   c.    advertising the Class Vehicles with the intent not to sell them as

28         advertised;

d.   engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding; and

e.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Class Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

4662. Defendants intended for Plaintiffs and Class Members to rely on them to provide adequately designed Class Vehicles, and to honestly and accurately reveal the safety hazards described above.

4663. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4664. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Prone Defect and true characteristics of the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4665. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiff and Class Members did not, and could not, unravel Defendants' deception on their own.

4666. Had Plaintiffs and Class Members known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4667. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4668. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4669. Pursuant to W. Va. Code § 46A-6-106(a), Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the West Virginia CCPA.

### c. West Virginia Count 3: Fraud by Omission and Concealment Against All Defendants

4670. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4671. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai West Virginia Class, against HMA and HMC.

4672. Plaintiffs bring this count individually and on behalf of the other members of the Kia West Virginia Class, against KA and KC.

4673. For purposes of this count, the Hyundai West Virginia Class Members and Kia West Virginia Class Members shall be referred to as "Class Members."

4674. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4675. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

    b.    Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

    c.    Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect.

1          Because they volunteered to provide information about the Class

2          Vehicles that they marketed and offered for sale and lease to

3          consumers, HMA and KA had the duty to disclose the whole truth.

4      4676. In breach of their duties, Defendants failed to disclose the Theft Prone

5  Defect to Plaintiffs and Class Members in connection with the sale of the Class

6  Vehicles.

7      4677. For the reasons set forth above, the Theft Prone Defect within the

8  Class Vehicles is material to the sale of the Class Vehicles because a reasonable

9  person would find it important in purchasing, leasing, or retaining a new or used

10  motor vehicle and because it directly impacts the value of the Class Vehicles

11  purchased or leased by the Plaintiffs and Class Members.

12      4678. Defendants intended for the Plaintiffs and Class Members to rely on

13  their omissions and concealment—which they did by purchasing and leasing the

14  Class Vehicles at the prices they paid believing that their vehicles would not have a

15  Theft Prone Defect that would affect the quality, reliability, and safety of the Class

16  Vehicles.

17      4679. Plaintiffs and Class Members' reliance was reasonable, as they had no

18  way of discerning that learning the facts that Defendants had concealed or failed to

19  disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants'

20  deception on their own.

21      4680. Defendants actively concealed and suppressed these material facts, in

22  whole or in part, to maintain a market for the Class Vehicles, to protect profits, and

23  to avoid costly recalls that would expose them to liability for those expenses and

24  harm the commercial reputations of Defendants and their products. They did so at

25  the expense of Plaintiffs and Class Members.

26      4681. If Defendants had fully and adequately disclosed the Theft Prone

27  Defect to consumers, Plaintiffs and Class Members would have seen such a

28  disclosure.

4682.  Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4683.  Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4684.  As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4685.  Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

#### d.    West Virginia Count 4: Unjust Enrichment Against All Defendants

4686.  Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4687.  Plaintiffs bring this count under West Virginia law, individually and on behalf of the other members of the Hyundai West Virginia Class, against HMA and HMC.

4688. Plaintiffs bring this count under West Virginia law, individually and on behalf of the other members of the Kia West Virginia Class, against KA and KC.

4689. For purposes of this count, members of the Hyundai West Virginia Class and Kia West Virginia Class shall be referred to as "Class Members."

4690. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4691. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4692. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4693. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4694. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4695. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims

for damages are dismissed or judgment is entered on them in favor of Defendants,
Plaintiffs will have no adequate legal remedy.

### 48. Wisconsin

#### a. Wisconsin Count 1: Breach of Implied Warranty of Merchantability (Wis. Stat. §§ 402.314 and 411.212) Against HMA and KMA

4696. Plaintiffs reallege and incorporate by reference all preceding
allegations as though fully set forth herein.

4697. Plaintiffs bring this count individually and on behalf of the other
members of the Hyundai Wisconsin Class, against HMA.

4698. Plaintiffs bring this count individually and on behalf of the other
members of the Kia Wisconsin Class, against KA.

4699. For purposes of this count, the Hyundai Wisconsin Class Members and
Kia Wisconsin Class Members shall be referred to as "Class Members."

4700. For purposes of this count, HMA and KA shall be referred to as
"Defendants."

4701. A warranty that the Class Vehicles were in merchantable condition and
fit for the ordinary purpose for which such goods are used is implied by law
pursuant to Wis. Stat. §§ 402.314 and 411.212.

4702. Defendants are and were at all relevant times "merchants" with respect
to motor vehicles under Wis. Stat. §§ 402.104(3) and 411.103(1)(t), and "sellers" of
motor vehicles under § 402.103(1)(d).

4703. With respect to leases, the Defendants are and were at all relevant
times "lessors" of motor vehicles under Wis. Stat. § 411.103(1)(p).

4704. All Class Members who purchased Class Vehicles in Wisconsin are
"buyers" within the meaning of Wis. Stat. § 402.103(1)(a).

4705. All Class Members who leased Class Vehicles in Wisconsin are
"lessees" within the meaning of Wis. Stat. § 411.103(1)(n).

4706. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4707. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4708. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity

in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4709. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4710. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4711. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4712. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial

  **b.**  **Wisconsin Count 2: Violation of the Wisconsin Deceptive Trade Practices Act (Wis. Stat. § 100.18, *et seq.*) Against All Defendants**

4713. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4714. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Wisconsin Class, against HMA and HMC.

4715. Plaintiffs bring this count individually and on behalf of the other members of the Kia Wisconsin Class, against KA and KC.

4716. For purposes of this count, the Hyundai Wisconsin Class Members and Kia Wisconsin Class Members shall be referred to as "Class Members."

4717. Defendants are "person[s], firm[s], corporation[s], or association[s]" within the meaning of Wis. Stat. § 100.18(1).

4718. Plaintiffs and Class are members of "the public" within the meaning of Wis. Stat. § 100.18(1).

4719. The Class Vehicles are "merchandise" within the meaning of Wis. Stat. § 100.18(1).

4720. The Wisconsin Deceptive Trade Practices Act ("Wisconsin DTPA") prohibits any "assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. § 100.18(1).

4721. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Wisconsin DTPA by knowingly and intentionally misrepresenting material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4722. By misrepresenting the Class Vehicles as safe and reliable and free from defects, Defendants violated the Wisconsin DTPA by making assertions, representations and statements of fact which are untrue, deceptive or misleading, as prohibited by Wis. Stat. § 100.18(1).

4723. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs and Class Members, about the true safety and reliability of Class Vehicles, the quality of the Class Vehicles, and the true value of the Class Vehicles.

4724. Defendants' misrepresentations of material facts regarding the Theft Prone Defect the Class Vehicles were material to the decisions of Plaintiffs and Class Members to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Class Members were exposed to those misrepresentations of material facts, and relied on Defendants' misrepresentations that the Class Vehicles were safe and reliable in deciding to purchase and lease Class Vehicles.

4725. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning that Defendants representations were false and misleading. Plaintiffs and Class Members did not, and could not, unravel Defendants deception on their own.

4726. Had Plaintiffs and Class Members known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased Class Vehicles, or would have paid significantly less for them.

4727. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4728. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

4729. Pursuant to Wis. Stat. § 100.18(11)(b)(2), Plaintiffs and Class Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Wisconsin DTPA.

### c. Wisconsin Count 3: Fraud by Omission and Concealment Against All Defendants

4730. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4731. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Wisconsin Class, against HMA and HMC.

4732. Plaintiffs bring this count individually and on behalf of the other members of the Kia Wisconsin Class, against KA and KC.

4733. For purposes of this count, the Hyundai Wisconsin Class Members and Kia Wisconsin Class Members shall be referred to as "Class Members."

4734. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4735. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.      Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle

components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect. Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4736. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4737. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

4738. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

4739. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4740. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4741. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4742. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4743. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4744. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4745. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants

an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. Wisconsin Count 4: Unjust Enrichment Against All Defendants

4746. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4747. Plaintiffs bring this count under Wisconsin law, individually and on behalf of the other members of the Hyundai Wisconsin Class, against HMA and HMC.

4748. Plaintiffs bring this count under Wisconsin law, individually and on behalf of the other members of the Kia Wisconsin Class, against KA and KC.

4749. For purposes of this count, members of the Hyundai Wisconsin Class and Kia Wisconsin Class shall be referred to as "Class Members."

4750. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4751. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4752. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4753. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4754. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4755. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**49.    Wyoming**

      **a.    Wyoming Count 1: Breach of Implied Warranty (Wyo. Stat. §§ 34.1-2-314 and 34.1-2.A-212) Against HMA and KA**

4756. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4757. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Wyoming Class, against HMA.

4758. Plaintiffs bring this count individually and on behalf of the other members of the Kia Wyoming Class, against KA.

4759. For purposes of this count, the Hyundai Wyoming Class Members and Kia Wyoming Class Members shall be referred to as "Class Members."

4760. For purposes of this count, HMA and KA shall be referred to as "Defendants."

4761. Defendants were at all relevant times "merchants" with respect to motor vehicles under Wyo. Stat. §§ 34.1-2-104(a) and 34.1-2.A-103(a)(xx), and "sellers" of motor vehicles under § 34.1-2-103(a)(iv).

4762. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Wyo. Stat. § 34.1-2.A-103(a)(xvi).

4763. The Class Vehicles are and were at all relevant times "goods" within the meaning of Wyo. Stat. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

4764. A warranty that the Class Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Wyo. Stat. §§ 34.1-2- 314 and 34.1-2.A-212.

4765. Defendants knew or had reason to know of the specific use for which the Class Vehicles were purchased or leased. Defendants provided Plaintiffs and the Class Members with an implied warranty that the Class Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Class Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4766. However, the Class Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Class Vehicles contained the Theft Prone Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Theft Prone Defect renders Class Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4767. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Class Vehicles vis-à-vis consumers is

unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Class Vehicles without informing consumers about the Theft Prone Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs and Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Theft Prone Defect at the time of sale.

4768. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Class Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Class Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4769. Plaintiffs and Class Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Theft Prone Defect became public. Additionally, on August 18, 2022, and September 12, 2022, Class Members sent notice letters to them.

4770. Alternatively, Plaintiffs and the Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Class Vehicles. As such, Plaintiffs and Class Members

had no reason to believe that Defendants would have adequately repaired the Theft Prone Defect if they presented their Class Vehicles to them for repair.

4771. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Class Members' Class Vehicles were and are defective, and the Theft Prone Defect in their Class Vehicles has not been remedied. Therefore, Plaintiffs and Class Members have been damaged, in an amount to be proven at trial.

### b. Wyoming Count 2: Violation of the Wyoming Consumer Protection Act (Wyo. Stat. §§ 40-12-101, *et seq.*) Against All Defendants

4772. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4773. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Wyoming Class, against HMA and HMC.

4774. Plaintiffs bring this count individually and on behalf of the other members of the Kia Wyoming Class, against KA and KC.

4775. For purposes of this count, the Hyundai Wyoming Class Members and Kia Wyoming Class Members shall be referred to as "Class Members."

4776. Defendants, Plaintiffs, and Class Members are "persons" within the meaning of Wyo. Stat. Ann. § 40-12-102(a)(i).

4777. The Class Vehicles are "merchandise" pursuant to Wyo. Stat. Ann. § 40-12-102(a)(vi).

4778. Each sale or lease of a Class Vehicle to Plaintiff or Class Members was a "consumer transaction" as defined by Wyo. Stat. Ann. § 40-12-102(a)(ii). These consumer transactions occurred "in the course of [Defendants'] business" under Wyo. Stat. Ann.§ 40-12-105(a).

4779. The Wyoming Consumer Protection Act ("Wyoming CPA") prohibits deceptive trade practices. Wyo. Stat. Ann. § 40-12-105(a).

4780. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Wyoming CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect, as detailed above.

4781. Defendants had an ongoing duty to the Plaintiffs and Class Members to refrain from unfair or deceptive practices under the Wyoming CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Class Members a duty to disclose all the material facts concerning the Theft Prone Defect in the Class Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b. Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Prone Defect on their own;

c. Defendants knew that the Theft Prone Defect gave rise to safety concerns for the consumers who use the Class Vehicles, and the Theft Prone Defect would have been a material fact to the Class Members' decisions to buy or lease Class Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Class Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Class Vehicles contained the Theft Prone Defect.

Because they volunteered to provide information about the Class Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

4782. As detailed above, the information concerning the Theft Prone Defect was known to Defendants at the time of advertising and selling the Class Vehicles, all of which was intended to induce consumers to purchase the Class Vehicles.

4783. By misrepresenting the Class Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Prone Defect, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Wyo. Stat. Ann. §§ 40-12-105(a):

    a.    representing that the Class Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b.    representing that the Class Vehicles are of a particular standard, or grade when they are not;

    c.    advertising the Class Vehicles with the intent not to sell or lease them as advertised; and

    d.    representing that the subject of a transaction has been supplied in accordance with a previous representation when it has not.

4784. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Class Vehicles had adequate anti-theft protection, and that the Class Vehicles were not affected by the Theft Prone Defect.

4785. Plaintiffs' and Class Members' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Class Vehicles contained the Theft Prone Defect, as alleged above. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own

4786. Had they known the truth about the Theft Prone Defect, Plaintiffs and Class Members would not have purchased or leased the Class Vehicles, or would have paid significantly less for them.

4787. Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4788. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Class Vehicles remain unsafe due to the Theft Prone Defect. Defendants' unlawful acts and practices complained of herein affect the public interest

4789. On August 18, 2022, and September 12, 2022, Class Members sent Defendants notice of the Theft Prone Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct within the requisite time period, Plaintiff seek all damages and relief to which Class Members are entitled.

4790. Alternatively, Plaintiffs and Class Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged above, Defendants have long known that the Class Vehicles contained the Theft Prone Defect; however, to date, Defendants have not instituted a recall or any other repair program, or even acknowledged that the Theft Prone Defect exists. Therefore, Plaintiffs and Class Members had no reason to believe that Defendants would have repaired the Theft Prone Defect if Plaintiffs and Class Members presented their Class Vehicles to Defendants for repair.

4791. Pursuant to Wyo. Stat. Ann. §§ 40-12-108(a) and 40-12-108(b), Plaintiffs and Class Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive damages, and any other just and proper relief available under the Wyoming CPA.

### c.     Wyoming Count 3: Fraud by Omission and Concealment Against All Defendants

4792. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4793. Plaintiffs bring this count individually and on behalf of the other members of the Hyundai Wyoming Class, against HMA and HMC.

4794. Plaintiffs bring this count individually and on behalf of the other members of the Kia Wyoming Class, against KA and KC.

4795. For purposes of this count, the Hyundai Wyoming Class Members and Kia Wyoming Class Members shall be referred to as "Class Members."

4796. Defendants were aware of the Theft Prone Defect when they marketed and sold the Class Vehicles to Plaintiffs and Class Members.

4797. Having been aware of the Theft Prone Defect within the Class Vehicles, and having known that Plaintiffs and Class Members could not have reasonably been expected to know of the Theft Prone Defect, Defendants had a duty to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles. Defendants further had a duty to disclose the Theft Prone Defect because:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Prone Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Class Members;

b.     Given the Theft Prone Defect's hidden and technical nature, Plaintiffs and Class Members lack the sophisticated expertise in vehicle

components that would be necessary to discover the Theft Prone

Defect on their own;

c.   Defendants knew that the Theft Prone Defect gave rise to safety

concerns for the consumers who use the Class Vehicles, and the Theft

Prone Defect would have been a material fact to the Class Members'

decisions to buy or lease Class Vehicles; and

d.   Defendants made incomplete representations about the safety and

reliability of the Class Vehicles while purposefully withholding

material facts about a known safety defect. In uniform advertising and

materials provided with each Class Vehicle, HMA, and KA

intentionally concealed, suppressed, and failed to disclose to the

consumers that the Class Vehicles contained the Theft Prone Defect.

Because they volunteered to provide information about the Class

Vehicles that they marketed and offered for sale and lease to

consumers, HMA and KA had the duty to disclose the whole truth.

4798. In breach of their duties, Defendants failed to disclose the Theft Prone Defect to Plaintiffs and Class Members in connection with the sale of the Class Vehicles.

4799. For the reasons set forth above, the Theft Prone Defect within the Class Vehicles is material to the sale of the Class Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Class Vehicles purchased or leased by the Plaintiffs and Class Members.

4800. Defendants intended for the Plaintiffs and Class Members to rely on their omissions and concealment—which they did by purchasing and leasing the Class Vehicles at the prices they paid believing that their vehicles would not have a Theft Prone Defect that would affect the quality, reliability, and safety of the Class Vehicles.

4801. Plaintiffs and Class Members' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and Class Members did not, and could not, unravel Defendants' deception on their own.

4802. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Class Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Class Members.

4803. If Defendants had fully and adequately disclosed the Theft Prone Defect to consumers, Plaintiffs and Class Members would have seen such a disclosure.

4804. Through their omissions and concealment with respect to the Theft Prone Defect within the Class Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Class Members to either purchase a Class Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

4805. Had Plaintiffs and Class Members known of the Theft Prone Defect within the Class Vehicles, they would not have purchased the Class Vehicles or would have paid less for them.

4806. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Class Members either overpaid for the Class Vehicles or would not have purchased the Class Vehicles at all if the Theft Prone Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Class Members for their damages in an amount to be proven at trial.

4807. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Class Members' rights and well-being; and to enrich themselves. Defendants' misconduct warrants

an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

### d. Wyoming Count 4: Unjust Enrichment Against All Defendants

4808. Plaintiffs reallege and incorporate by reference all allegations in Sections I-VI as if fully set forth herein.

4809. Plaintiffs bring this count under Wyoming law, individually and on behalf of the other members of the Hyundai Wyoming Class, against HMA and HMC.

4810. Plaintiffs bring this count under Wyoming law, individually and on behalf of the other members of the Kia Wyoming Class, against KA and KC.

4811. For purposes of this count, members of the Hyundai Wyoming Class and Kia Wyoming Class shall be referred to as "Class Members."

4812. When they purchased and leased the Class Vehicles, Plaintiffs and Class Members conferred tangible and material economic benefits upon Defendants, who readily accepted and retained these benefits.

4813. Plaintiffs and Class Members would not have purchased or leased their Class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease. Therefore, Defendants profited from the sale and lease of the Class Vehicles to the detriment and expense of Plaintiffs and Class Members.

4814. Defendants appreciated these economic benefits. These benefits were the expected result of Defendants acting in their pecuniary interest at the expense of their customers. They knew of these benefits because they were aware of the Theft Prone Defect, yet they failed to disclose this knowledge and misled the Plaintiffs and Class Members regarding the nature and quality of the Class Vehicles while profiting from this deception.

4815. It would be unjust, inequitable, and unconscionable for Defendants to retain these benefits, including because they were procured as a result of their wrongful conduct alleged above.

4816. Plaintiffs and Class Members are entitled to restitution of the benefits Defendants unjustly retained and/or any amounts necessary to return Plaintiffs and Class Members to the position they occupied prior to dealing with those Defendants, with such amounts to be determined at trial.

4817. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered on them in favor of Defendants, Plaintiffs will have no adequate legal remedy.

## IX.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on their own behalf and on behalf of the Class members, respectfully request judgment against Defendants as follows:

A.    Certifying the proposed Nationwide Classes and State Law Classes;

B.    Appointing Plaintiffs and their counsel to represent the Classes;

C.    Ordering injunctive relief, restitution, disgorgement, and/or other appropriate relief;

D.    Awarding compensatory, punitive, exemplary, and other recoverable damages;

E.    Awarding reasonable attorney's fees and expenses;

F.    Awarding pre-judgment and post-judgment interest; and

G.    Awarding such other and further relief as this Court may deem just and proper.

## X.    JURY DEMAND

Plaintiffs demand a trial by jury of all issues so triable.

Dated: April 10, 2023.

Respectfully Submitted.

By:   *Steve W. Berman*
          Steve W. Berman, Esq.
          HAGENS BERMAN SOBOL SHAPIRO LLP
          1301 Second Avenue, Suite 2000
             Seattle, WA 98101

By:   *Elizabeth A. Fegan*
          Elizabeth A. Fegan, Esq.
          FEGAN SCOTT LLC
          150 S. Wacker Dr., 24th Floor
          Chicago, IL 60606

By:   *Kenneth B. McClain*
          Kenneth B. McClain, Esq.
          HUMPHREY FARRINGTON & McCLAIN
          221 W. Lexington Ave., Suite 400
          Independence, MO 64050

By:   *Roland Tellis*
          Roland Tellis, Esq.
          BARON & BUDD, P.C.
          15910 Ventura Blvd., Suite 1600
          Encino, CA 91436

*Consumer Class Action Leadership Counsel and Counsel for Plaintiffs*

CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT