# EXHIBIT A

# EXHIBIT A

# CFR

**Federal Register** / Vol. 75, No. 6 / Monday, January 11, 2010 / Notices **1447**

incorporate health IT and the market for health IT records exchanges develops, we anticipate that we will develop more detailed information about the reasonable costs for obtaining medical records through health IT. Consequently, we will periodically review the uniform national rate for reimbursing all non-federal medical providers for the reasonable costs of supplying health IT medical records.

When we revise the uniform national rate, we will publish another notice in the **Federal Register**.

Dated: January 4, 2010.

Michael J. Astrue,

*Commissioner of Social Security.*

[FR Doc. 2010–225 Filed 1–8–10; 8:45 am]

BILLING CODE 4191–02–P

## DEPARTMENT OF TRANSPORTATION

### Surface Transportation Board

**[STB Finance Docket No. 34658]**

### Alaska Railroad Corporation—Construction and Operation Exemption—Rail Line Between North Pole and Delta Junction, AK

By petition filed on July 6, 2007, Alaska Railroad Corporation (ARRC), a Class III rail carrier incorporated in, and owned by, the State of Alaska, seeks an exemption under 49 U.S.C. 10502 from the prior approval requirements of 49 U.S.C. 10901 for authority to construct and operate approximately 80 miles of new main line track, referred to as the Northern Rail Extension (NRE), in the State of Alaska. The proposed NRE would extend southeasterly from Mile 20 on ARRC's existing Eielson Branch near the community of North Pole (located just south of Fairbanks) to the southern side of the community of Delta Junction.

In a decision served on October 4, 2007, the Board instituted a proceeding under 49 U.S.C. 10502(b). The Board's Section of Environmental Analysis (SEA) has conducted an environmental review of the proposed construction and alternatives. A detailed Draft Environmental Impact Statement (EIS) prepared by SEA together with eight cooperating agencies [1] was issued for public review and comment on February 2, 2009. SEA then prepared a Final EIS that was issued on September

[1] U.S. Department of Defense Alaskan Command, Bureau of Land Management, Federal Transit Administration, Federal Railroad Administration, U.S. Air Force 354th Fighter Wing Command from Eielson Air Force Base, U.S. Army Corps of Engineers, U.S. Coast Guard, and State of Alaska Department of Natural Resources.

18, 2009. The Final EIS considered all the comments received on the Draft EIS, reflects SEA's further independent analysis, and sets forth SEA's preferred rail alignments and final recommended environmental mitigation measures.

After considering the entire record, including both the transportation aspects of the petition and the potential environmental issues, we granted the requested construction and operation exemption in a decision served on January 6, 2010, permitting ARRC to build any of the preferred rail alignments set out in the decision, subject to compliance with the environmental mitigation measures listed in Appendix 1 of the decision. Vice Chairman Mulvey dissented with a separate expression. Petitions to reopen must be filed by February 5, 2010.

Board decisions and notices are available on our Web site at *www.stb.dot.gov.*

Decided: January 5, 2010.

By the Board, Chairman Elliott, Vice Chairman Mulvey, and Commissioner Nottingham. Vice Chairman Mulvey dissented with a separate expression.

Kulunie L. Cannon,

*Clearance Clerk.*

[FR Doc. 2010–217 Filed 1–8–10; 8:45 am]

BILLING CODE 4915–01–P

## DEPARTMENT OF TRANSPORTATION

### Federal Aviation Administration

### Receipt of Noise Compatibility Program Update and Request for Review for Modesto City-County Airport, Modesto, CA

**AGENCY:** Federal Aviation Administration, DOT.

**ACTION:** Notice, correction.

**SUMMARY:** The Federal Aviation Administration (FAA) published a notice in the **Federal Register** on December 18, 2009. (74 FR 67305). This action corrects an error in a date in that document. The notice announced that the FAA is reviewing a proposed noise compatibility program update that was submitted for Modesto City-County Airport under the provisions of 49 U.S.C. 47501 *et seq.* (the Aviation Safety and Noise Abatement Act) and 14 CFR Part 150 by City of Modesto.

**FOR FURTHER INFORMATION CONTACT:** Camille Garibaldi, Telephone number: (650) 876–2778, extension 613.

### Correction

In Notice document (**Federal Register** Doc. E9–30186) published on December

18, 2009 (74 FR 67305) make the following correction:

On page 67305 in the second column, in the fourth line of the third paragraph under the heading **SUPPLEMENTARY INFORMATION:** the date December 6, 2009, is corrected to read, December 9, 2009.

Issued in Hawthorne, California on December 29, 2009.

Mark A. McClardy,

*Manager, Airports Division, AWP–600, Western-Pacific Region.*

[FR Doc. 2010–114 Filed 1–8–10; 8:45 am]

BILLING CODE 4910–13–M

## DEPARTMENT OF TRANSPORTATION

### National Highway Traffic Safety Administration

### Petition for Exemption From the Vehicle Theft Prevention Standard; Hyundia-Kia America Technical Center, Inc.

**AGENCY:** National Highway Traffic Safety Administration (NHTSA), Department of Transportation (DOT).

**ACTION:** Grant of petition for exemption.

**SUMMARY:** This document grants in full the petition of Hyundai-Kia Motors Corporation (HATCI) in accordance with § 543.9(c)(2) of 49 CFR part 543, *Exemption from the Theft Prevention Standard,* for the Kia Amanti vehicle line beginning with model year (MY) 2009. This petition is granted because the agency has determined that the antitheft device to be placed on the line as standard equipment is likely to be as effective in reducing and deterring motor vehicle theft as compliance with the parts-marking requirements of the Theft Prevention Standard. HATCI requested confidential treatment for its information and attachments submitted in support of its petition. In a letter dated January 30, 2008, the agency denied HATCI's request for confidential treatment. Subsequently, HATCI requested reconsideration of the determination. In a letter dated September 25, 2008, the agency granted the petitioner's request for reconsideration of confidential treatment of the indicated areas of its petition.

**DATES:** The exemption granted by this notice is effective beginning with model year (MY) 2009.

**FOR FURTHER INFORMATION CONTACT:** Ms. Deborah Mazyck, International Policy, Fuel Economy and Consumer Programs, NHTSA, 1200 New Jersey Avenue, SE., Washington, DC 20590. Ms. Mazyck's telephone number is (202) 366–0846. Her fax number is (202) 493–2290.

Cozen O' Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017

# EXHIBIT B

# EXHIBIT B

## Exemplar Subrogation Policies



**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

  **1.** Whatever is necessary to enable us to exercise our rights; and

  **2.** Nothing after loss to prejudice them.

  However, our rights in this Paragraph **(A.)** do not apply under Part **D**, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

  **1.** Hold in trust for us the proceeds of the recovery; and

  **2.** Reimburse us to the extent of our payment.

**POLICY PERIOD AND TERRITORY**

**A.** This policy applies only to accidents and losses which occur:

  **1.** During the policy period as shown in the Declarations; and

  **2.** Within the policy territory.

**B.** The policy territory is:

  **1.** The United States of America, its territories or possessions;

  **2.** Puerto Rico; or

  **3.** Canada.

  This policy also applies to loss to, or accidents involving, "your covered auto" while being transported between their ports.

  All coverages except Uninsured Motorists apply to accidents and losses in Mexico, if within 25 miles of the United States boundary. We will base the amount of any Comprehensive or Collision loss in Mexico on cost at the nearest United States point.

  NOTE: You may need to buy auto insurance from a Mexican insurance company — regardless of coverage provided by this policy — before driving in Mexico. Otherwise, you may be subject to jail detention, auto impoundment, and other legal complications in case of an accident.

**TERMINATION**

**A. Cancellation**

  This policy may be cancelled during the policy period as follows:

  **1.** The named insured shown in the Declarations may cancel by:

    **a.** Returning this policy to us; or

    **b.** Giving us advance written or oral notice of the date cancellation is to take effect.

  **2.** We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

    **a.** At least 10 days notice:

      **(1)** If cancellation is for nonpayment of premium; or

      **(2)** If notice is mailed during the first 60 days this policy is in effect and this is not a renewal or continuation policy; or

    **b.** At least 30 days notice in all other cases.

A 4500 07 16                                                          **Page 22 of 27**

Sample Copy

We may deny coverage for an accident or loss if you or a person seeking coverage has concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, in connection with the presentation or settlement of a claim.

## Payment of premium and fees

If your initial premium payment is by check, draft, electronic funds transfer, or similar form of remittance, coverage under this policy is conditioned upon payment to us by the financial institution. If the financial institution upon presentment does not honor the check, draft, electronic funds transfer, or similar form of remittance, this policy may, at our option, be deemed void from its inception (void ab initio), as though the policy never took effect. This means we will not be liable under this policy for any claims or damages that would otherwise be covered if the check, draft, electronic funds transfer, or similar form of remittance had been honored by the financial institution. Any action by us to present the remittance for payment on more than one occasion shall not affect our right to void this policy.

Fees may be charged on your policy in addition to premium. We may charge fees for installment payments, late payments, and other transactions. Payments made on your policy will be applied first to fees, then to premium due.

## Legal action against us

A.  No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part **A**, no legal action may be brought against us until:

   1.  We agree in writing that the "insured" has an obligation to pay; or

   2.  The amount of that obligation has been finally determined by judgment after trial.

B.  No person or organization has any right under this policy to bring us into any action to determine the liability of an "insured".

## Our right to recover payment

A.  If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

   1.  Whatever is necessary to enable us to exercise our rights; and

   2.  Nothing after loss to prejudice them.

   However, our rights in this Paragraph (**A.**) do not apply under Part **D**, against any person using "your covered auto" with a reasonable belief that that person is entitled to do so.

B.  If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

   1.  Hold in trust for us the proceeds of the recovery; and

   2.  Reimburse us to the extent of our payment.

C.  If we elect to exercise our rights of recovery against another, we will also attempt to recover any deductible incurred by an "insured" under this policy unless we are specifically instructed by that person to not pursue the deductible. We have no obligation to pursue recovery against another for any loss not covered by this policy.

Form 1, Ohio, September 2017                                                              Page 24 of 27

13

a. does not apply to the portion of the otherwise covered damages or loss that is less than or equal to **minimum limits** or minimum amounts of coverage required by law; and

b. continues to apply to the portion of the damages or loss that is greater than **minimum limits** or minimum amounts of coverage required by law.

All other Policy terms remain unchanged and in full effect.

## OUR RIGHTS TO RECOVER PAYMENTS - SUBROGATION & REIMBURSEMENT

As to subrogation and reimbursement, the following terms apply:

1. Any **person** or party, to or for whom a payment is made under this Policy, must:

   a. cooperate with **us** by doing whatever is needed to protect **our** interests and rights to recover **our** payment if there is another responsible or at-fault **person** or party. This cooperation includes, but is not limited to, filing legal papers and taking action as requested by **us** to recover **our** payment. The filing of any lawsuit must be done:

      (1) against all parties possibly liable for an **accident**, loss or damage; and

      (2) within the statute of limitations that applies; and

   b. not do anything after the **accident** or loss to harm **our** interests and rights.

2. If a payment is made under this Policy, then to the extent allowed by law and for the amount of that payment made by **us** to any **person** or party:

   a. the right of recovery of any such **person** or party passes to **us**, and **we** will be subrogated to all the rights of recovery that such **person** or party has against another.

   b. any such **person** or party who recovers loss or damages from a responsible or at-fault **person** or party, or an insurer of that person or party, shall hold the proceeds of that recovery in trust for **us** and reimburse **us**.

   c. which is not actually covered by this Policy but is required by law, then (to the extent allowed by law) **you** must reimburse **us** to the full extent of all damages or loss paid by **us** as well as **our** claims adjustment expenses.

   **Our** rights to recover or be reimbursed from any **person** or party, as listed directly above, and in whatever way **we** choose to enforce those rights:

   a. shall be a first priority claim to be paid before any other claims which may exist are paid; and

   b. will apply as a first priority claim even if that **person** or party has not been "made whole" and/or has not been fully compensated for all damages or loss.

3. **Our** rights to recover do not apply as to a payment made under:

   a. Physical Damage Coverage when a **person**, with the permission of **you**, a **relative** or a **rated driver**, uses an **insured auto** or a **newly acquired auto**.

   b. Uninsured Motorist Coverage and/or Underinsured Motorist Coverage if **we**:

      (1) have been given prompt written notice, by certified or registered mail, of a proposed settlement between an insured and the insurer of an **uninsured motor vehicle** or **underinsured motor vehicle** (as defined in that coverage part); and

      (2) fail to make advance payment to that insured in an amount equal to the proposed settlement within thirty (30) days after receipt of notice of the proposed settlement.

      If **we** make advance payment to the insured in an amount equal to the proposed settlement within those thirty (30) days after receipt of notice, **our** rights are retained and the insured must cooperate with **us** and assist **us** in recovering those sums from any and all responsible or at-fault **persons** or parties.

   c. Part B – Personal Injury Protection Coverage except as allowed by and subject to the Kentucky Motor Vehicle Reparations Act, as amended.

Form 1918 KY (02-2022)                                          Page **55** of **59**

14

**PART F – GENERAL PROVISIONS**

| | |
|---|---|
| **BANKRUPTCY** | Bankruptcy or insolvency of the **covered person** shall not relieve us of any obligation under this policy. |
| **CHANGES** | **A.** This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.<br>**B.** If a change requires a premium adjustment, we will adjust the premium as of the effective date of change in accordance with rules prescribed by the Texas Department of Insurance or its successor. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:<br>**1.** The number, type or use classification of the insured autos;<br>**2.** Operators using insured autos;<br>**3.** The place of principal garaging of insured autos;<br>**4.** Coverage, deductible or limits.<br>**C.** If this policy form is revised to provide more coverage without additional premium charge, we will automatically provide the additional coverage as of the date the revision is effective.<br>**D.** We will compute the premium at the rates in effect on each anniversary date of the policy's inception date for a policy written for more than a full year. |
| **LEGAL ACTION AGAINST US** | **A.** No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Liability Coverage, no legal action may be brought against us until:<br>**1.** We agree in writing that the **covered person** has an obligation to pay; or<br>**2.** The amount of that obligation has been finally determined by judgment after trial.<br>**B.** No person or organization has any right under this policy to bring us into any action to determine the liability of a **covered person**. |
| **OUR RIGHT TO RECOVER PAYMENT** | **A.** If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:<br>**1.** Whatever is necessary to enable us to exercise our rights; and<br>**2.** Nothing after loss to prejudice them.<br>(A release of the insurer of an underinsured motor vehicle does not prejudice our rights.) However, our rights in this paragraph do not apply under Part D, against any person using **your covered auto** with a reasonable belief that person is entitled to do so.<br>**B.** If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:<br><br>**1.** Hold in trust for us the proceeds of the recovery; and<br>**2.** Reimburse us to the extent of our payment. (However, we may not claim the amount recovered from an insurer of any underinsured motor vehicle.) |
| **POLICY PERIOD AND TERRITORY** | **A.** This policy applies only to accidents and losses which occur:<br>**1.** During the policy period as shown in the Declarations; and<br>**2.** Within the policy territory.<br>**B.** The policy territory is:<br>**1.** The United States of America, its territories or possessions;<br>**2.** Puerto Rico; or<br>**3.** Canada.<br>This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports. |
| **TERMINATION** | **A. Cancellation.** This policy may be cancelled during the policy periods as follows:<br>**1.** The named insured shown in the Declarations may cancel by: |

RCM.POL.2020.09

18

Cozen O' Connor<br>601 S. Figueroa Street, Suite 3700<br>Los Angeles, CA 90017

15

2. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen.

3. Permit us to inspect and appraise the damaged property before its repair or disposal.

---

**PART F – GENERAL PROVISIONS**

**BANKRUPTCY**

Bankruptcy or insolvency of the **insured** shall not relieve us of any obligations under this Policy.

**CHANGES**

**A.** This Policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

**B.** If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles; or

4. Coverage, deductible or limits.

If a change resulting from **A.** or **B.** requires a premium adjustment, we will make the premium adjustment in accordance with our manual rules.

**C.** If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (**C.**) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or

2. An Amendatory Endorsement.

**FRAUD**

We do not provide coverage for any **insured** who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this Policy.

**LEGAL ACTION AGAINST US**

**A.** No legal action may be brought against us until there has been full compliance with all the terms of this Policy. In addition, under Part **A**, no legal action may be brought against us until:

1. We agree in writing that the **insured** has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this Policy to bring us into any action to determine the liability of an **insured**.

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under this Policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (**A.**) do not apply under Part **D**, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this Policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

This provision does not apply to **Medical Payments Coverage**.

**POLICY PERIOD AND TERRITORY**

**A.** This Policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

**B.** The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This Policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

**TERMINATION**

**A. Cancellation**

This Policy may be cancelled during the policy period as follows:

1. You may cancel this policy at any time, but the effective date of the cancellation cannot be earlier than the date of the request unless we agree to an earlier date.

2. We may cancel by mailing by registered or certified mail or United States Post Office certificate of mailing to the named insured shown in the Declarations at the address shown in this Policy:

   a. At least 15 days' notice if cancellation is for nonpayment of the first premium, and this is not a renewal or continuation policy;

   b. At least 10 days' notice:

   (1) If cancellation is for nonpayment of premium other than as described in **a.** above; or

   (2) If cancellation is due to material misrepresentation and notice is mailed during the first 60 days this Policy is in effect, and this is not a renewal or continuation policy; or

   c. At least 45 days' notice in all other cases.

3. After this Policy is in effect for 60 days, or if this is a renewal or continuation policy, we will cancel only:

   a. For nonpayment of premium; or

   b. If your driver's license or motor vehicle registration or that of:

   (1) Any driver who lives with you; or

   (2) Any driver who customarily uses **your covered auto**;

   has been revoked. This must have occurred:

   (1) During the policy period; or

   (2) If this Policy is a renewal, during its policy period or the 180 days next preceding its effective date.

Connecticut A-713 (02/22)

11

---

COZEN O'CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

1. We agree in writing that the **insured** has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

**B.** No person or organization has any right under this Policy to bring us into any action to determine the liability of an **insured**.

**OUR RIGHT TO RECOVER PAYMENT**

**A.** If we make a payment under this Policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them.

However, our rights in this paragraph (**A.**) do not apply under Part **D**, against any person using **your covered auto** with a reasonable belief that that person is entitled to do so.

**B.** If we make a payment under this Policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment.

**POLICY PERIOD AND TERRITORY**

**A.** This Policy applies only to accidents and losses which occur:

1. During the policy period as shown in the Declarations; and

2. Within the policy territory.

**B.** The policy territory is:

1. The United States of America, its territories or possessions;

2. Puerto Rico; or

3. Canada.

This Policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

**TERMINATION**

**A. Cancellation**

This Policy may be cancelled during the policy period as follows:

1. You may cancel this policy at any time, but the effective date of the cancellation cannot be earlier than the date of the request unless we agree to an earlier date.

2. We may cancel by mailing to the named insured shown in the Declarations at the address last known by us:

   **a.** At least 10 days' notice:

   **(1)** If cancellation is for nonpayment of premium; or

   **(2)** If notice is mailed during the first 90 days this Policy is in effect and this is not a renewal or continuation policy; or

   **b.** At least 30 days' notice in all other cases.

3. After this Policy is in effect for 90 days, or if this is a renewal or continuation policy, we will cancel only:

   **a.** For nonpayment of premium;

   **b.** If your driver's license or that of any **family member** covered as a driver has been suspended or revoked. This must have occurred:

   **(1)** During the policy period; or

   **(2)** Since the last anniversary of the original effective date if the policy period is other than one year.

However, in the event that the driver's license of any **family member** covered as a driver has been suspended or revoked, we may issue an endorsement providing that coverage will not be afforded to that named person;

**c.** If fraud, concealment or misrepresentation was made by the insured to us of any material fact in the procurement or renewal of the insurance or in the submission of claims; or

**d.** If the place of residence of the insured or the state of registration or license of the insured auto is changed to a state or country in which we are not authorized to write auto coverage.

**B. Nonrenewal**

If we decide not to renew or continue this Policy, we will mail notice to the named insured shown in the Declarations at the address last known by us. Notice will be mailed at least 30 days before the end of the policy period. If the policy period is other than one year, or written without a fixed expiration date, we will have the right not to renew or continue it only at each anniversary of its original effective date.

**C. Automatic Termination**

If you obtain other insurance on **your covered auto**, any similar insurance provided by this Policy will terminate as to that auto on the effective date of the other insurance.

**D. Other Termination Provisions**

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this Policy is cancelled, you may be entitled to a premium refund. If so, we will send you the refund. The premium refund, if any, will be computed according to our manuals.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**

**A.** Your rights and duties under this Policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto.**

**B.** Coverage will only be provided until the end of the policy period.

**TWO OR MORE AUTO POLICIES**

If this Policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

**ELECTRONIC DELIVERY**

If we mutually agree, we may electronically deliver any document or notice, including a notice to renew, nonrenew, or cancel, instead of mailing it or delivering it by other means. Proof of transmission will be sufficient proof of notice.

14

Ohio A-714 (02/22)

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

# EXHIBIT C

COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# EXHIBIT C

## Feldman Bio



# Elliott R. Feldman

**Co-Chair, Subrogation & Recovery Department**

**Philadelphia**

**efeldman@cozen.com | (215) 665-2071**

Elliott R. Feldman serves as co-chair of the Subrogation & Recovery Department, which has been his principal area of practice for the past 40-plus years. Elliott joined Cozen O'Connor in 1982, and has litigated and tried numerous complex and substantial cases on behalf of the firm's insurance and commercial clients. Elliott is a member of Cozen O'Connor's board of directors, and also serves on the firm's Management Committee.

Elliott received his Bachelor of Arts, *summa cum laude*, in 1975 from Temple University and, after doing graduate work at Harvard University, earned his law degree, *cum laude*, from Temple University School of Law in 1980.

On a personal basis, Elliott and his family are highly engaged in supporting efforts of the Juvenile Diabetes Research Foundation to find a cure for Type 1 diabetes. Elliott is a former member of the board of directors of the JDRF's Philadelphia Chapter.

### Experience

Filed a landmark lawsuit in the U.S. District Court for the Southern District of New York, under the Anti-Terrorism Act and other statutory and common law authority, to recover compensation for $11 billion plus in property damage resulting from the September 11, 2001 World Trade Center attack. The defendants include a number of multi-billion dollar banks, pan-Arabic business entities and so-called "elites" who have been designated or implicated as providing material support for terrorist activities connected with the 9/11 attack.

**Practice Areas**
- Subrogation & Recovery
- Self-insured Recovery

**Industry Sectors**
- Aviation
- Food & Beverage
- Insurance
- Real Estate & Construction

**Education**
- Temple University School of Law, J.D., *cum laude*, 1980
- Temple University, B.A., *summa cum laude*, 1975

**Bar Admissions**
- Pennsylvania
- North Carolina

**Court Admissions**
- U.S. District Court -- Arizona
- U.S. District Court -- Connecticut
- U.S. District Court -- Michigan
- U.S. District Court -- Eastern District of Pennsylvania

**Affiliations**
- American Bar Association
- Association of Trial Lawyers
- National Association of Subrogation Professionals (NASP)
- Pennsylvania Association for Justice
- Pennsylvania Bar Association
- Philadelphia Bar Association
- Philadelphia Trial Lawyers Association

**Awards & Honors**
- FIRST JUDICIAL DISTRICT - 2008
- Pro Bono Honor Roll of the First Judicial District of Pennsylvania 2008
- Pennsylvania Super Lawyer 2004 - 2022
- Best Lawyers in America 2020-2021



Elliott R. Feldman
efeldman@cozen.com
P: (215) 665-2071 | F: (215) 701-2071

©2023 Cozen O'Connor. All rights reserved.



# EXHIBIT D

**EXHIBIT D**

**Subrogation Department Profile**



# Cozen O'Connor is the world's leading subrogation and recovery law firm.

We founded our subrogation and recovery practice in 1970 and have been at the forefront of this dynamic area ever since, representing most industry leading P&C insurers, together with multiple syndicates, third party administrators, managing general agents and self-insured companies.

**Why do the largest insurers in the United States, Canada and the London Market trust us with their subrogation and recovery claims?**

**$2+ billion** recovered in 2020-2022.

200+ top trial lawyers, recovery analysts, paralegals and subrogation tech coordinators, **distributed throughout all 50 US states (plus DC and Puerto Rico) and all 10 CN provinces.**

Unparalleled record of success in handling complex industrial, commercial and personal lines claims.

19

Best in class proprietary predictive analytics technology to immediately identify all subrogation opportunities for high volume/low severity property and auto claims.

Real time electronic management level reporting on all claims together with detailed narrative reports from our handling attorneys and analysts.

Tailored staffing for large losses handled by firm attorneys and for moderate losses handled by recovery analysts at our fully integrated subsidiary, **National Subrogation Services**.

SubroScholar™ utilization by our clients, consisting of our proprietary electronic library with numerous 50 state jurisdiction comparative charts and actionable reference materials authored by our attorneys on a broad spectrum of insurance and subrogation issues.

Unrivaled national network of forensic consultants.

Innovative contingent fee structures.

# Relentless Focus

Our success rests on two pillars: personnel and technology. In a complex and technical domain such as subrogation, experience often is the difference between success and failure. For decades, Cozen O'Connor and **National Subrogation**

**Services** have successfully handled tens of thousands of subrogation claims, setting the standard of excellence in the subrogation industry.

**How do we consistently achieve extraordinary results for our clients?**

**All claims with potential are identified and aggressively pursued;** there are no missed opportunities. All non-viable claims are archived without expending client resources.

**Exclusive claim databases**, including comprehensive tracking of systemic product failures/product recalls with associated technical and forensic details.

**Proprietary predictive analytics** programs and workflow processes which are uniquely designed to maximize recoveries and increase the value of our services to our clients.

Standing subject matter task forces for numerous industry sectors and lines of business to reduce learning curves and accelerate recoveries.

Immediate deployment of resources as soon as a casualty event occurs with the capability to launch and coordinate a site investigation into the cause of a major loss within 24 to 48 hours of notification.



Emphasis on identifying repetitive failure claims, which are handled through mass tort and subrogation industry class actions to reduce expense and optimize recovery potential.

Building deep relationships with our clients through an ongoing dialogue; we continually curate our subrogation services to fit our clients' business objectives.

Cozen O'Connor: 30+ US offices and 3 CN offices; NSS: Recovery Specialists located in 26+ states. Combined resources provide for an unmatched, comprehensive US and CN geographic footprint, with proximity to any location in North America where a loss may occur.

# Cutting Edge Technology

**SubroSpeed™**, our industry-leading predictive analytics engine combines our expertise with the latest generation proprietary technology to mine, evaluate, and score individual claims.

SubroSpeed™ is designed to process both structured and unstructured data for claim volume of the highest magnitude.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



**Highly secure web-based claims management system** enables our clients to access and manage

Watch the Demo

real time information for all pending and closed claims.

# Subro Leadership

Our leadership in the subrogation and recovery practice area has long been recognized by our peers and within the insurance industry.

Our credentials include: former NASP President; present and former NASP board members; former leadership positions in the Loss Executives Association; regular seminars at numerous industry conferences including the PLRB (2023 award for top presenter), CLM and others.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Our lawyers have been recognized by The Best Lawyers in America©, Super Lawyers, and other lawyer rating services.**

Cozen O'Connor is nationally ranked by Chambers and Partners.

Our CE/CLE approved monthly webinars on a wide spectrum of cutting-edge claims, legal, and forensic recovery and claims issues have been attended by countless professionals; private client training is available upon request

We employ a diverse complement of attorneys and staff, and strive to foster greater inclusion in the legal profession. **Learn more about Cozen O'Connor's commitment to Diversity, Equity & Inclusion here**.

COZEN O'CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

# EXHIBIT E

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Cozen O' Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017

# EXHIBIT E

## Dooley Bio



**Practice Areas**
- Class Actions
- Commercial Litigation
- Copyright & Content
- Intellectual Property

**Industry Sectors**
- Gaming

**Education**
- University of California, Berkeley School of Law (Boalt Hall), J.D., 2002
- Queen's University, M.A., 1995
- University of Saskatchewan, B.A., 1993

**Bar Admissions**
- California
- Ontario
- British Columbia

**Court Admissions**
- California Superior Court
- U.S. Court of Appeals for the Ninth Circuit
- U.S. District Court -- Central District of California
- U.S. District Court -- Northern District of California
- Ontario Superior Court of Justice

**Clerkships**
Honorable Arthur L. Alarcon, U.S. Court of Appeals for the Ninth Circuit; Honorable S. James Otero, U.S. District Court -- Central District of California

# Nathan Dooley

**Member**

**Los Angeles**

**ndooley@cozen.com | (213) 892-7933**

Nathan serves as counsel on high profile complex commercial litigation matters filed in California. He represents some of the firm's most prominent clients.

His successes include a string of victories in consumer class action cases brought in state and federal court. He successfully defended class action claims brought against shippers, retailers, and cosmetic manufacturers. He also represented a group of corporate plaintiffs in a successful class action against a Chinese manufacturer of faulty dehumidifiers that caused hundreds of house fires across the country. He advises food manufacturers on matters related to contamination, labeling, trademarks, and intellectual property. He recently procured a large settlement on the behalf of a food manufacturer that suffered contamination of its product by a third party.

Nathan has extensive trial and appellate experience in the intellectual property arena, where he has successfully prosecuted actions against salespeople and executives who wrongfully absconded with trade secrets to start their own firms. He successfully defended engineers and entrepreneurs accused of misappropriating trade secrets and copyright infringement after leaving large corporations to launch their own successful products. He has defeated claims of alleged trademark infringement, copyright infringement, and has substantial experience with high-profile patent litigation.

Fluent in Korean, Nathan has led investigations into large claims in South Korea and served as trial counsel in an international arbitration against a large Korean corporation in the International Chamber of Commerce. Nathan's trial victories extend to a Grammy-Award winning music producer, and he has quashed attempts to extort public figures with libelous accusations, discretely handling such matters without any publicity.

He earned his law degree from the University of California Berkeley School of Law (Boalt Hall). After law school, he clerked for the Honorable Carolyn B. Kuhl of Los Angeles Superior Court, the Honorable S. James Otero of the U.S. District Court for the Central District of California, and the Honorable Arthur Alarcon of the Ninth Circuit Court of Appeals. He earned a master's degree from Queen's University in Canada and a bachelor's degree from the University of Saskatchewan.

## Experience

Obtained a six-figure settlement on behalf of an insurance industry client in a FINRA arbitration related to an alleged Ponzi scheme.

Filed suit against a technology start-up company, recovering funds for a dissatisfied investor in a convertible bond issued by the start-up.

Obtained a favorable settlement on behalf of Plaintiff insurance carriers in a consumer class action filed against a foreign manufacturer of defective home products that caused a series of home fires nationwide.

Obtained partial dismissal, and transfer of venue, of a consumer class action brought against a high-end cosmetic and skin cream manufacturer. The remainder of the action settled on terms favorable to our client.

Nathan Dooley
ndooley@cozen.com
P: (213) 892-7933 | F: (213) 892-7999

©2023 Cozen O'Connor. All rights reserved.




COZEN O' CONNOR
601 S. FIGUEROA STREET, SUITE 3700
LOS ANGELES, CA 90017

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Obtained dismissal of a series of class actions brought under the Consumers Legal Remedies Act (CLRA), and section 17200 of the California Business & Professions Code, against terminal operators and carriers at the ports of Los Angeles and Long Beach.

Obtained dismissal of an action brought against terminal operators related to demurrage charges imposed during work slowdowns at the ports of Los Angeles and Long Beach.

Successfully defended a public figure who was the target of an extortion attempt based on false accusations.

Advised a public figure on various branding and trademark issues in connection with a new consumer product line.

Obtained a $4.2 million binding arbitration award from an International Chamber of Commerce (ICC) Court of Arbitration in London, England, on behalf of an insurance company client in a dispute arising from water damage and construction defects at a military installation in South Korea.

Advised foreign companies and investors on establishing, or investing in businesses based in California.

Won a series of cases brought against the founders of a gaming industry startup by their former employer, successfully defending them against allegations of alleged misappropriation of trade secrets, breach of contract, and intentional interference with contractual relations.

Won favorable settlement from multinational corporation threatening lawsuit against small Canadian food manufacturer in a trademark action.

Won favorable settlement in trademark action brought by high-end apparel manufacturer brought against one of its former distributors.

Won case brought by retail fashion apparel manufacturer against third party distributor for alleged breach of contract. Representing the distributor as a defendant, the case settled for an amount greater than the fees incurred in handling the dispute on the eve of trial.

Represented Grammy-award winning Ivory Productions in litigation in Los Angeles Superior Court. After a protracted trial, we successfully defended our client in a significant breach of contract and declaratory judgment action, and prevailed on a claim for over $400,000 in counsel fees.

Tried and won cases before arbitration panels, including a dispute over a scuttled real estate development deal.

Discretely resolved several matters in Los Angeles for high-profile clients without any public press or attention.

Won case for prominent online publication after the publication determined that it was being fed problematic polling data.

Successfully defended large nationwide religious organization in a suit brought by one of its former officers for fraud and breach of contract.

Won a series of cases for corporate clients on claims brought by plaintiffs for wrongful death or injury.

Successfully defended start-up companies against claims by established competitors for the alleged misappropriation of trade secrets, copyright infringement and interference with contract.

**Nathan Dooley**
ndooley@cozen.com
P: (213) 892-7933 | F: (213) 892-7999

©2023 Cozen O'Connor. All rights reserved.



1

2

3

4

Obtained favorable settlement for clients in a series of securities class-action cases.

5

Prevailed by demurrer on a string of cases representing real estate agents and developers in cases related to the sale or lease of real estate.

6

Substituting into a case on the eve of trial, won motion to exclude testimony from Plaintiff's damages expert, reducing exposure by more than twenty million dollars and leading to prompt settlement.

7

Won complete defense victory in the early stages of litigation for large corporation named as defendant in toxic tort case.

8

Managed litigation, retained local counsel, experts, and conducted investigation in Seoul Korea on a case related to the destruction of a distribution center near Seoul.

9

Won a complete defense victory for software developers who were sued in California and Florida by their former employer for alleged copyright infringement and misappropriation of trade secrets after they launched their own successful start-up.

10

11

Won a lawsuit for a popular recording artist brought by a concert promoter for breach of contract.

12

Represented Full Tilt Poker, winning a stay and dismissal of a series of related cases, including allegations of defamation, breach of contract, alleged violation of RICO and antitrust laws.

13

Provided pro bono representation to non-English speaking members of the Korean American community and also to clients of the Christian Legal Aid Clinic.

14

15

16

17

18

19

20

21

22

23

24

25

**Nathan Dooley**
ndooley@cozen.com
P: (213) 892-7933 | F: (213) 892-7999

26

©2023 Cozen O'Connor. All rights reserved.



27

28

Cozen O'Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017