Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain
HUMPHREY FARRINGTON & McCLAIN, P.C.
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd, Suite 1600
Encino, CA 91436

*Plaintiffs' Consumer Class Action Leadership Committee*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

This document relates to:

ALL ACTIONS

Case No.: 8:22-ml-03052-JVS-KES

The Honorable James V. Selna

**CONSUMER CLASS ACTION PLAINTIFFS' RESPONSE TO INSURANCE PLAINTIFFS' APPLICATION FOR APPOINTMENT TO (1) CHAIR A SUBROGATION INSURANCE CLASS ACTION COMMITTEE, (2) FOR REPRESENTATION ON THE CONSUMER CLASS ACTION LEADERSHIP COMMITTEE (3) TO VACATE CASE MANAGEMENT DEADLINES RELATED TO THE SUBROGATION INSURANCE CLASS ACTION AND (4) LEAVE TO FILE A CONSOLIDATED INSURANCE CLASS ACTION COMPLAINT**

# TABLE OF CONTENTS

**INTRODUCTION** ..................................................................................................1

**RELEVANT BACKGROUND** ...........................................................................2

**ARGUMENT** ........................................................................................................3

    1.    **The Insurance Plaintiffs' Request for Appointment to the Consumer Leadership Committee Is Improper Because Their Claims Are Separate and Distinct from the Consumer Plaintiffs' Claims.** ...................................................................................................3

    2.    **The Allegations In the Consumer Plaintiffs' Amended Complaint Do Not Provide a Basis for Insurance Counsels' Appointment to the Consumer Leadership Committee.** ......................................................5

    3.    **Creating an Insurance Subrogation Track and a Subrogation Committee Appropriately Addresses the Insurance Plaintiffs' Concerns Regarding Representation.** ..........................................................6

**CONCLUSION** ....................................................................................................7

# INTRODUCTION

The Insurance Plaintiffs' Motion raises simple issues of case management that can be resolved with the creation of an Insurance Subrogation track and an Insurance Subrogation Committee (the "Subrogation Committee") which will adequately protect the Insurance Plaintiffs' interests by allowing them to litigate their unique claims as they see fit (*i.e.* file their own Consolidated Complaint, seek Court approval of a leadership structure for their track, negotiate their own case schedule, etc.) while coordinating with the Consumer track and the Governmental Entities track plaintiffs where appropriate.

However, in their Motion, the Insurance Plaintiffs drastically overreach by seeking two of six seats on the Consumer Class Action Leadership Committee (the "Consumer Leadership Committee"), apparently seeking to assert control over the Consumer Plaintiffs' claims. The Insurance Plaintiffs' audacious request should be denied because: (i) the Insurance Plaintiffs concede that their claims and damages are different from the Consumer Plaintiffs' claims and damages; (ii) the Consumer Plaintiffs' Consolidated Amended Class Action Complaint ("CAC") (ECF 84) does not seek to recover insurance proceeds for the Consumer Plaintiffs or circumvent the Insurance Plaintiffs' subrogation rights; and (iii) Insurance Counsel does not represent any Consumer Plaintiffs or members of the consumer putative classes in any action consolidated in this MDL, so they cannot fairly and adequately protect the interests of the consumer classes as required by Fed. R. Civ. P. 23(a)(4).

In sum, there is no basis for the Insurance Plaintiffs to encroach on and potentially interfere with the separate and distinct claims of the Consumer Plaintiffs. As more fully explained below, the Consumer Plaintiffs oppose Insurance Counsels' request for

appointment to the Consumer Leadership Committee but support Insurance Counsels' request for the creation of an Insurance Subrogation track and a Subrogation Committee.

## RELEVANT BACKGROUND

On December 22, 2022, the JPML established this MDL and transferred the pending consumer class action cases to this Court. Shortly thereafter the JPML conditionally transferred related cases filed by the City of Seattle and City of Columbus alleging public nuisance.

The Consumer Plaintiffs bring claims against Defendants Kia America, Inc., formerly known as Kia Motors America, Inc. ("KA"), Kia Motors Corporation ("KC," and with KA, "Kia"), Hyundai Motor Company ("HMC"), and Hyundai Motor America ("HMA," and with HMC, "Hyundai") (Kia and Hyundai are collectively referred to as "Defendants"), for knowingly selling millions of Class Vehicles without engine immobilizers and other design flaws that eschew Federal Motor Vehicle Safety Standards No. 114. Because of the Theft Prone Defect,[1] millions of Class Vehicles are at increased risk of theft, especially following the proliferation of the viral "Kia Boyz" challenge videos on social media that instructed viewers how to steal a Class Vehicle in less than ninety seconds. CAC ¶¶ 8-9.

---

[1] As defined in the CAC, the "Theft Prone Defect" in Class Vehicles includes: (i) the steering columns do not contain adequately secure collars or casings, allowing easy access to the ignition assembly; (ii) the ignition lock cylinders do not have a locking mechanism and can be easily removed with minimal force, and in so doing, leaves the ignition switch intact; (iii) the exposed ignition switch can be started with any set of pliers, or the current generation of thieves' tool of choice, a USB connector; and (iv) the Class Vehicles do not contain engine immobilizers." CAC ¶ 8. The Class Vehicles are defined as all 2011-2022 Kia vehicles and 2011-2022 Hyundai vehicles which do not contain an engine immobilizer. *See id.* ¶ 5 fn. 4.

On January 30, 2023, the Consumer Plaintiffs and Defendants submitted a Joint Preliminary Report ("Preliminary Report") to the Court outlining, among other things, a proposed leadership structure. In the Preliminary Report, the Consumer Plaintiffs addressed an application filed on January 23, 2023, by Plaintiff City of Seattle seeking representation on the Consumer Leadership Committee. *See* ECF 35. Specifically, the Consumer Plaintiffs argued that City of Seattle's action is, "meaningfully distinct from the other actions involved in this litigation as it brings just one count for public nuisance and does not seek to represent a class of consumers." ECF 40 at 6.

On February 9, 2023, the Court issued Order No. 2: Adoption of Organization Plan and Appointment of Counsel. *See* ECF 50. The Court seemingly agreed with the Consumer Plaintiffs and created a separate, "Governmental Entities Committee." *Id*.

Thereafter, on March 10, 2023, the Insurance Plaintiffs filed their complaint. *See State Automobile Mutual Insurance Company et al. v. Hyundai Motor America et al,*. Case No. 8:23-cv-00443 (C.D. Cal. Mar. 10, 2023). The Insurance Plaintiffs filed the instant Motion on April 12, 2023. ECF 85.

## ARGUMENT

1.  **The Insurance Plaintiffs' Request for Appointment to the Consumer Leadership Committee Is Improper Because Their Claims Are Separate and Distinct from the Consumer Plaintiffs' Claims.**

The Insurance Plaintiffs go to great lengths in their Motion to differentiate their claims from the Consumer Plaintiffs' claims. For example, the Insurance Plaintiffs recognize that:

- "[T]he Consumer Plaintiffs seek damages for alleged overpayment for purchase of class vehicles, as well as damages for diminution in value of vehicles owned by class members which have not yet been stolen. *Id*. Neither

of these claims, nor any of the other damages alleged by Consumer Counsel Plaintiffs, are involved in the Insurance Plaintiffs' claims." ECF 85 at 5.

- "The Insurance Plaintiffs' claims do not include the various diminution in value claims being alleged by the consumer plaintiffs." *Id.* at 6.

- "[E]ach set of plaintiffs—the Insurance Plaintiffs, the Consumer Counsel Plaintiffs representing uninsured consumer claims, and municipality plaintiffs—are able to independently prosecute and resolve their claims against the Hyundai and Kia defendants, irrespective of the timing of any potential recovery or settlement for each class of Plaintiffs." *Id.* at 10.

- "The only injuries identified by the named Plaintiffs in the Consumer Counsel Complaint, however, are damages in the form of diminution of value, paid deductible, and other uninsured losses . . . This stands in stark contrast to the claims and damages alleged by the Insurance Plaintiffs, which are based only on paid claims, and projected future claims, capable of calculation to the penny." *Id.* at 11.

- "[T]he Insurance Plaintiffs' causes of action [] are separate and distinct from those being claimed by the Consumer Plaintiffs." *Id.* at 12.

The Insurance Plaintiffs' Motion concedes these differences exist between the Insurance and the Consumer Plaintiffs, yet it fails to explain how Insurance Counsel could meet their obligation under Fed. R. Civ. P. 23(a)(4) to protect the interests of two classes of Plaintiffs with separate and distinct claims, or why Insurance Counsel would have any incentive to prosecute claims brought by the Consumer Plaintiffs.

## 2. The Allegations In the Consumer Plaintiffs' Amended Complaint Do Not Provide a Basis for Insurance Counsels' Appointment to the Consumer Leadership Committee.

The Insurance Plaintiffs argue that *two* paragraphs in Plaintiffs' *4,817* paragraph CAC requires, "Cozen O'Connor to have coequal standing on the Executive Committee" because these two paragraphs attempt to "lay claim" to the Insurance Plaintiffs' damages. *See* ECF 85 at 12. But even a cursory reading of those allegations makes clear that the Consumer Plaintiffs are not seeking to recover insurance proceeds for themselves or to circumvent the Insurance Plaintiffs' subrogation rights.

The two paragraphs at issue, paragraphs 1532 and 1534, are not part of the Consumer Plaintiffs' substantive allegations or prayer for relief; rather, they are part of the "Class Allegations" section that demonstrate that the Rule 23 requirements of typicality and superiority are met in this action. In each of those paragraphs, the Consumer Plaintiffs explicitly recognize the Insurance Plaintiffs' subrogation rights. For example, paragraph 1532, which alleges that the Consumer Plaintiffs' claims are typical of the claims of the Classes, recognizes that the Consumer Plaintiffs are asserting claims on behalf of insured plaintiffs for damages "subject to any applicable right of subrogation." Similarly, paragraph 1534, which alleges that a class action is superior to all other available means of efficient adjudication of the claims asserted by the Consumer Plaintiffs and putative class members, recognizes the Insurance Plaintiffs' subrogation rights by alleging that "subrogation rights can be dealt with in the claims processing part of the case."[2]

---

[2] "Class allegations are typically tested on a motion for class certification, not at the pleading stage." *Gonsalves v. Conair Corp.*, No. SACV21138JVSADSX, 2021 WL 3521078, at *3 (C.D. Cal. May 26, 2021) (Selna, J.) (quoting *In re Clorox Consumer Litigation*, 894 F. Supp. 2d 1224, 1237 (C.D. Cal. 2012)).

Since these two paragraphs regarding typicality and superiority recognize the Insurance Plaintiffs' subrogation rights, they do not impede the Insurance Plaintiffs' rights to pursue subrogation.[3] And any effort by Insurance Counsel to argue otherwise highlights why separate and independent leadership for the Consumer Plaintiffs and the Insurance Plaintiffs is necessary. Either way, the Consumer Plaintiffs' allegations do not support the Insurance Plaintiffs' misguided attempt to seek two of six seats on the Consumer Leadership Committee and accompanying control over the Consumer Plaintiffs' claims.

3. **Creating an Insurance Subrogation Track and a Subrogation Committee Appropriately Addresses the Insurance Plaintiffs' Concerns Regarding Representation.**

This Court can maintain the Consumer Plaintiffs' and the Insurance Plaintiffs' distinct claims by establishing a separate Insurance Subrogation track led by a Subrogation Committee, just as it did for the Governmental entities. Indeed, adding an Insurance Subrogation track alongside the Consumer and Governmental entities allows the separate groups of plaintiffs to pursue their unique claims and damages against Defendants, while allowing for coordinated, tandem discovery where appropriate.[4]

---

[3] The Insurance Plaintiffs also make repeated reference to unrelated class cases filed by counsel appointed to the Consumer Leadership Committee. *See* ECF 85 at 10 fn. 3. Although these external cases have no bearing on the case management needs of this MDL, the Insurance Plaintiffs apparently cite them to show the Consumer Plaintiffs' acknowledgement that they lack standing to seek subrogation claims. At bottom, the argument is based on the Insurance Plaintiffs' erroneous reading of the CAC allegations.

[4] Other courts have found that a separate insurance subrogation track is appropriate in similar circumstances. *See, e.g.*, *In re Fluidmaster, Inc.*, 149 F. Supp. 3d 940, 945 (N.D. Ill. 2016) (defective product MDL involving consumers and subrogation plaintiffs, where subrogation plaintiffs were not party to the consumer complaint).

Insurance Counsel, through the Subrogation Committee, can also liaise with the other committees and/or tracks as necessary.

Had Insurance Counsel met and conferred with the Consumer Leadership Committee prior to filing their Motion as required by C.D. Cal. Local Rule 7.3, the parties could have reached agreement on this issue and avoided needless motion practice. Moreover, Insurance Counsel's filing of their Motion without conferring with the Consumer Leadership Committee runs afoul of the Court's Order establishing the process for appointment of lead counsel, in which the Court emphasized the need "to work cooperatively with others," ECF 2 at 3—and provides an additional basis for rejecting Insurance Counsel's request for representation on the Consumer Leadership Committee.

Nevertheless, the Consumer Leadership Committee is willing and able to work cooperatively with Insurance Counsel to coordinate parallel litigation and discovery, where appropriate, so that all counsel may best represent the interests of their clients.

## CONCLUSION

Both the Consumer Plaintiffs and the Insurance Plaintiffs have the right to pursue their own claims. Because those claims and damages are separate and distinct—as the Insurance Plaintiffs concede—the proper avenue to do so is the establishment of separate litigation tracks within this MDL. Accordingly, the Insurance Plaintiffs' attempt to assume control of the Consumer Leadership Committee and ostensibly assume representation of the Consumer Plaintiffs should be denied for the reasons stated above.

//
//
//
//

1  Dated: April 24, 2023

Respectfully Submitted.

By: *Steve W. Berman*
Steve W. Berman, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

By: *Elizabeth A. Fegan*
Elizabeth A. Fegan, Esq.
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

By: *Kenneth B. McClain*
Kenneth B. McClain, Esq.
HUMPHREY FARRINGTON & McCLAIN
221 W. Lexington Ave., Suite 400
Independence, MO 64050

By: *Roland Tellis*
Roland Tellis, Esq.
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Plaintiffs' Consumer Class Action Leadership Committee and Counsel for Plaintiffs*