**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Alice S. Kim (SBN 317479)
AKim@jenner.com
Madeline P. Skitzki (SBN 318233)
MSkitzki@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
PBrennan@jenner.com
Michael T. Brody (*pro hac vice*)
MBrody@jenner.com
353 North Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ML-3052-JVS(KESx) |
| | The Honorable James V. Selna |
| | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS CONSOLIDATED AMENDED CONSUMER CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| This document relates to: <br><br> ALL CASES | Hearing Date:   TBD <br> Hearing Time:   TBD |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendants Kia America, Inc. ("KA"), Hyundai Motor America ("HMA"), Kia Corporation ("KC"), and Hyundai Motor Company ("HMC") (collectively, "Defendants") will and hereby move the above-entitled Court pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss Plaintiffs' Consolidated Amended Consumer Class Action Complaint.

The Court should dismiss Plaintiffs' Consolidated Amended Consumer Class Action Complaint for several reasons.  First, the conduct animating this case is action taken not by Defendants but by unrelated third-party criminals, and Plaintiffs cannot hold Defendants accountable for the actions of third parties.  Second, Plaintiffs' affirmative misrepresentation-based claims fail because Plaintiffs do not allege that they reviewed or relied on any of the challenged representations, the challenged representations are non-actionable puffery, and the challenged representations are not false or misleading.  Third, Plaintiffs fail to state any omission/concealment-based claims because they do not specify what Defendants should have disclosed or where that information should have been disclosed; do not plausibly allege that Defendants were aware of the alleged defects and any increased susceptibility to theft; do not plausibly allege a duty to disclose; and do not plausibly allege intent. Fourth, Plaintiffs cannot state a claim for breach of an implied warranty because they do not allege that their vehicles are not fit for their ordinary purpose of providing safe, reliable transportation (as they plainly are), and Plaintiffs are not in privity with Defendants.  Fifth, Plaintiffs' unjust enrichment claims fail because some states do not recognize such claims, and Plaintiffs do not plausibly allege that Defendants were unjustly enriched.  Sixth, Plaintiffs' claims under the "unlawful" and "unfair" prongs of California's Unfair Competition Law fail because Plaintiffs do not plausibly allege that Defendants engaged in unlawful or unfair practices.  And finally, Plaintiffs cannot seek equitable relief because Plaintiffs do not plausibly allege that they lack an adequate remedy at law.

1   Defendants' Motion is based on this Notice of Motion and Motion, the
2   following Memorandum of Points and Authorities, any additional briefing on this
3   subject (including Defendants' reply brief), and the evidence and arguments that will
4   be presented to the Court at the hearing on this matter.  Plaintiffs' Consolidated
5   Amended Consumer Class Action Complaint is located at Dkt. 84 and is not attached
6   to this Motion because of its length.

7   For the above reasons and for the reasons set forth in the accompanying
8   Memorandum, Defendants respectfully request that the Court dismiss Plaintiffs'
9   Consolidated Amended Consumer Class Action Complaint as to their claims under
10  the laws of California, Missouri, Florida, New York, Pennsylvania, and Texas with
11  prejudice.

12  This Motion is made following multiple conferences of counsel pursuant to
13  L.R. 7-3.

14

15  Dated:  May 1, 2023                JENNER & BLOCK LLP

16

17  */s/ Peter J. Brennan*
    Kate T. Spelman
18  Alice S. Kim
    Madeline P. Skitzki
19  515 South Flower Street, Suite 3300
    Los Angeles, CA  90071-2246
20  Telephone:  (213) 239-5100
    Facsimile:  (213) 239-5199
21  KSpelman@jenner.com
    AKim@jenner.com
22  MSkitzki@jenner.com

23  Peter J. Brennan (*pro hac vice*)
    Michael T. Brody (*pro hac vice*)
24  JENNER & BLOCK LLP
    353 North Clark Street
25  Chicago, IL  60654-3456
    Telephone:  (312) 222-9350
26  Facsimile:  (312) 527-0484
    PBrennan@jenner.com
27  MBrody@jenner.com

28  *Attorneys for Defendants*

2

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................. 1

BACKGROUND ................................................................................................... 2

I.      Kia and Hyundai Thefts Go Viral. ........................................................... 2

II.     Defendants and the Relevant Regulations................................................. 3

III.    Plaintiffs and the Challenged Representations.......................................... 5

IV.     Procedural Background. ............................................................................ 6

LEGAL STANDARD .......................................................................................... 9

ARGUMENT...................................................................................................... 10

I.      California Law Does Not Apply to a Nationwide Class.......................... 10

II.     Defendants Are Not Liable for Plaintiffs' Alleged Injuries, Which
        Were Caused by Intervening Criminal Acts of Third Parties. ................ 13

III.    Plaintiffs' Misrepresentation-Based Claims Fail. .................................. 15

        A.      Plaintiffs Do Not Allege Causation, Reliance, or Statutory
                Standing Because They Do Not Allege They Viewed Any
                Challenged Representations............................................................ 15

        B.      The Challenged Representations Are Non-Actionable Puffery. ........ 18

        C.      The Challenged Representations Are Not False or Misleading. ........ 21

IV.     Plaintiffs' Omission/Concealment-Based Claims Fail. ........................... 24

        A.      Plaintiffs' Omission/Concealment-Based Claims Do Not
                Satisfy Rule 9(b). ......................................................................... 24

        B.      Plaintiffs Do Not Plausibly Plead Defendants' Knowledge............... 26

        C.      Plaintiffs Do Not Plausibly Allege a Duty to Disclose...................... 30

        D.      Plaintiffs Do Not Plausibly Plead Intent........................................... 33

V.      Plaintiffs Fail to State Plausible Warranty Claims................................. 34

A.      The Vehicles Were Fit for Their Ordinary Purpose. ..........................34

B.      Plaintiffs Lack Privity with Defendants.............................................36

VI.    Plaintiffs Fail to State a Plausible Unjust Enrichment Claim. .....................38

A.      Unjust Enrichment is Not an Independent Cause of Action In California and Texas. ........................................................................39

B.      Plaintiffs Do Not Allege That Defendants Were Unjustly Enriched. .............................................................................................39

i.      Plaintiffs Do Not State Plausible Consumer Protection Claims. ....................................................................................40

ii.     Plaintiffs Did Not Purchase Their Vehicles Directly from Defendants. .............................................................................41

iii.    Plaintiffs Received the Vehicles They Purchased...................42

VII.   Plaintiffs' UCL "Unlawful" and "Unfair" Claims Fail...............................43

VIII.  Plaintiffs Cannot Seek Equitable Relief......................................................46

CONCLUSION.................................................................................................48

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adams v. Nissan N. Am., Inc.,*
  395 F. Supp. 3d 838 (S.D. Tex. 2018) ............................................................. 27

*In re Aftermarket Filters Antitrust Litig.,*
  No. 08-4883, 2010 WL 1416259 (N.D. Ill. Apr. 1, 2010) ................................. 40

*In re Air Bag Prod. Liab. Litig.,*
  7 F. Supp. 2d 792 (E.D. La. 1998) ............................................................. 34, 35

*Altman v. PNC Mortg.,*
  850 F. Supp. 2d 1057 (E.D. Cal. 2012) ............................................................ 43

*American Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.,*
  390 F. Supp. 2d 1170 (M.D. Fla. 2005) ............................................................ 40

*American Safety Ins. Serv., Inc. v. Griggs,*
  959 So. 2d 322 (Fla. Dist. Ct. App. 2007) ........................................................ 41

*Anderson v. Ford Motor Co.,*
  No. 17-3244, 2020 WL 1853321 (W.D. Mo. Feb. 14, 2020) ...................... 27, 33

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ..................................................................................... 9, 34

*Astiana v. Hain Celestial Grp., Inc.,*
  783 F.3d 753 (9th Cir. 2015) ............................................................................ 39

*Azoulai v. BMW of N. Am. LLC,*
  No. 16-589, 2017 WL 1354781 (N.D. Cal. Apr. 13, 2017) ............................... 21

*Bader Farms, Inc. v. BASF Corp.,*
  39 F.4th 954 (8th Cir. 2022) ............................................................................ 14

*Beardsall v. CVS Pharmacy, Inc.,*
  953 F.3d 969 (7th Cir. 2020) ............................................................................ 18

*Becerra v. Dr. Pepper/Seven Up, Inc.,*
  945 F.3d 1225 (9th Cir. 2019) ..................................................................... 18, 19

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

*Beck v. FCA US LLC*,
    273 F. Supp. 3d 735 (E.D. Mich. 2017) ..........................................20, 21, 28, 29

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...................................................................................... 9

*Berry v. Budget Rent A Car Sys., Inc.*,
    497 F. Supp. 2d 1361 (S.D. Fla. 2007) ............................................................. 16

*Bowles v. Mars, Inc.*,
    No. 14-2258, 2015 WL 3629717 (S.D. Tex. June 10, 2015) ............................. 18

*In re Bridgestone/Firestone, Inc.*,
    288 F.3d 1012 (7th Cir. 2002) ......................................................................... 12

*Brisson v. Ford Motor Co.*,
    349 F. App'x 433 (11th Cir. 2009) .................................................................... 36

*Bristol Vill., Inc. v. Louisiana-Pac. Corp.*,
    916 F. Supp. 2d 357 (W.D.N.Y. 2013) ............................................................. 41

*Browning v. Am. Honda Motor Co.*,
    549 F. Supp. 3d 996 (N.D. Cal. 2021) .............................................................. 25

*Cadena v. Am. Honda Motor Co.*,
    No. 18-4007, 2019 WL 3059931 (C.D. Cal. May 29, 2019) ....................... 12, 25

*United States ex rel. Cafasso v. Gen. Dynamics C4 Sys., Inc.*,
    637 F.3d 1047 (9th Cir. 2011) ....................................................................... 9, 23

*Casey v. Gen. Motors, LLC*,
    No. 20-299, 2021 WL 5417041 (S.D. Cal. Nov. 19, 2021) ....................... 45, 46

*Celebrity Chefs Tour, LLC v. Macy's, Inc.*,
    No. 13-2714, 2014 WL 12160745 (S.D. Cal. Sept. 19, 2014) .......................... 14

*Clark v. Am. Honda Motor Co.*,
    528 F. Supp. 3d 1108 (C.D. Cal. 2021) ....................................................... 34, 35

*Clemens v. DaimlerChrysler Corp.*,
    534 F.3d 1017 (9th Cir. 2008) ......................................................................... 36

*Clemente v. Mercedes-Benz USA, LLC*,
    No. 20-1577, 2021 WL 4539041 (C.D. Cal. June 3, 2021) .............................. 31

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

*Cohen v. Subaru of Am., Inc.*,
   No. 20-08442, 2022 WL 721307 (D.N.J. Mar. 10, 2022) ..................... 21, 31, 33

*Cummings v. FCA US LLC*,
   401 F. Supp. 3d 288 (N.D.N.Y. 2019) .............................................. 27

*Dack v. Volkswagen Grp. of Am.*,
   565 F. Supp. 3d 1135 (W.D. Mo. 2021) ........................................... 34, 35

*Davis-Lynch, Inc. v. Asgard Techs., LLC*,
   472 S.W.3d 50 (Tex. App. 2015) ................................................... 13

*Deburro v. Apple, Inc.*,
   2013 WL 5917665 (W.D. Tex. Oct. 31, 2013) ................................. 22, 27, 33

*Deitrick v. Costa*,
   No. 06-1556, 2015 WL 1605700 (M.D. Pa. Apr. 9, 2015) .................... 13

*Deskovic v. City of Peekskill*,
   673 F. Supp. 2d 154 (S.D.N.Y. 2009) ............................................. 13

*Doll v. Ford Motor Co.*,
   814 F. Supp. 2d 526 (D. Md. 2011) ................................................ 41

*Drake v. Toyota Motor Corp.*,
   No. 20-1421, 2021 WL 2024860 (C.D. Cal. May 17, 2021) ................. 47

*Druker v. Fortis Health*,
   No. 06-52, 2007 WL 38322 (S.D. Tex. Jan. 4, 2007) ......................... 19

*Drumheller v. Johnson & Johnson*,
   No. 20-6535, 2021 WL 1853407 (E.D. Pa. May 10, 2021) .................. 42

*Ellis v. Nissan N. Am. Inc.*,
   No. 19-750, 2020 WL 3105097 (W.D. Mo. June 11, 2020) ................. 26, 40

*Emery v. Visa Internat. Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002) ........................................................ 14

*In re Flonase Antitrust Litig.*,
   692 F. Supp. 2d 524 (E.D. Pa. 2010) .............................................. 39, 41

*Fusco v. Uber Techs., Inc.*,
   No. 17-36, 2018 WL 3618232 (E.D. Pa. July 27, 2018) ..................... 19

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

*Gerstle v. Am. Honda Motor Co., Inc.*,
   No. 16-4384, 2017 WL 2797810 (N.D. Cal. June 28, 2017) ............................ 39

*Gonzales v. CarMax Auto Superstores, LLC*,
   No. 13-1391, 2013 WL 12207506 (C.D. Cal. Nov. 5, 2013) ....................... 35, 36

*Grodzitsky v. Am. Honda Motor Co.*,
   No. 12-1142, 2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ............................... 28

*Hall v. Bristol-Myers Squibb Co.*,
   No. 06-5203, 2009 WL 5206144 (D.N.J. Dec. 30, 2009) ................................ 16

*Hamm v. Mercedes-Benz USA, LLC*,
   No. 16-3370, 2022 WL 913192 (N.D. Cal. Mar. 29, 2022) ............................. 47

*Harris v. Pfizer Inc.*,
   586 F. Supp. 3d 231 (S.D.N.Y. 2022) .................................................. 27, 32, 33

*Heeter v. Honeywell Int'l Inc.*,
   195 F. Supp. 3d 753 (E.D. Pa. 2016), *aff'd sub nom. Heeter v.*
   *Honeywell Int'l Inc*, 706 F. App'x 63 (3d Cir. 2017) .................................... 14, 15

*Herskowitz v. Apple Inc.*,
   940 F. Supp. 2d 1131 (N.D. Cal. 2013) ......................................................... 45

*Hill v. Roll Int'l Corp.*,
   195 Cal. App. 4th 1295 (2011) ....................................................................... 19

*Hodsdon v. Mars, Inc.*,
   891 F.3d 857 (9th Cir. 2018) .......................................................................... 30

*Horowitz v. Stryker Corp.*,
   613 F. Supp. 2d 271 (E.D.N.Y. 2009) ............................................................ 18

*Howard v. Turnbull*,
   316 S.W.3d 431 (Mo. Ct. App. 2010) ........................................................... 39

*Hunt v. U.S. Tobacco Co.*,
   538 F.3d 217 (3d Cir. 2008), *as amended* (Nov. 6, 2008) .............................. 17

*Hurley v. BMW of N. Am., LLC*,
   No. 18-5320, 2020 WL 1624861 (E.D. Pa. Apr. 2, 2020) ......................... 34, 35

*In re iPhone Application Litig.*,
    6 F. Supp. 3d 1004 (N.D. Cal. 2013)......................................................... 16

*Johnson v. FCA US LLC*,
    555 F. Supp. 3d 488 (E.D. Mich. 2021) .................................................... 21

*Johnson v. Nissan N. Am., Inc.*,
    No. 17-517, 2018 WL 905850 (N.D. Cal. Feb. 15, 2018) ............................ 37

*Kane v. Hartford Accident & Indem. Co.*,
    98 Cal. App. 3d 350 (1979) .................................................................... 14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ........................................................... 9, 24

*Kerr v. State Farm Mut. Auto. Ins. Co.*,
    No. 18-309, 2018 WL 5809989 (W.D. Pa. Nov. 6, 2018) ............................ 27

*In re Kia Hyundai Vehicle Theft Litig.*,
    MDL No. 3052, 2022 WL 17843100 (J.P.M.L. Dec. 13, 2022)...................... 6

*Kommer v. Ford Motor Co.*,
    No. 17-296, 2017 WL 3251598 (N.D.N.Y. July 28, 2017) ............................ 19

*Kwan v. SanMedica Int'l*,
    854 F.3d 1088 (9th Cir. 2017) ................................................................ 9

*LiMandri v. Judkins*,
    52 Cal. App. 4th 326 (1997) ........................................................... 30, 31

*Marsikian v. Mercedes-Benz USA, LLC*,
    No. 08-4876, 2009 WL 10673466 (C.D. Cal. Aug. 13, 2009).......................... 37

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012), *overruled in part on other grounds*
    *by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods*
    *LLC*, 31 F.4th 651 (9th Cir. 2022)................................................. 11, 12

*McGrain v. C.R. Bard, Inc.*,
    551 F. Supp. 3d 529 (E.D. Pa. 2021)....................................................... 42

*Mesa v. BMW of N. Am., LLC*,
    904 So. 2d 450 (Fla. Dist. Ct. App. 2005)................................................. 36

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

*Miller v. Ford Motor Co.*, No. 22-1796, --- F. Supp. 3d ----, 2022 WL
    3229503 (E.D. Cal. Aug. 10, 2022) ...................................................................... 37

*Myers v. Provident Life & Accident Ins. Co.*,
    472 F. Supp. 3d 1149 (M.D. Fla. 2020) ........................................................ 26, 33

*Nat. Answers, Inc. v. SmithKline Beecham Corp.*,
    529 F.3d 1325 (11th Cir. 2008) ............................................................................ 16

*O'Connor v. Ford Motor Co.*,
    567 F. Supp. 3d 915 (N.D. Ill. 2021) ............................................................ 40, 42

*Ocana v. Ford Motor Co.*,
    992 So. 2d 319 (Fla. Dist. Ct. App. 2008) .......................................................... 37

*Oda v. DeMarini Sports Inc.*,
    No. 15-2131, 2017 WL 10402605 (C.D. Cal. Apr. 27, 2017) ............................ 38

*Owen v. Gen. Motors Corp.*,
    No. 06-4067, 2007 WL 172355 (W.D. Mo. Jan. 18, 2007) ............................... 32

*Padilla v. Porsche Cars N. Am, Inc.*,
    391 F. Supp. 3d 1108 (S.D. Fla. 2019) ............................................................... 38

*Palma v. Sonic Momentum VWA, L.P.*,
    No. 09-2974, 2010 WL 11652068 (S.D. Tex. Apr. 16, 2010) ........................... 32

*Pelayo v. Hyundai Motor Am., Inc.*,
    No. 20-1503, 2021 WL 1808628 (C.D. Cal. May 5, 2021) .......................... 25, 26

*Perez v. Toyota Motor Sales, U.S.A., Inc.*,
    No. 22-780, 2022 WL 14768831 (C.D. Cal. Oct. 25, 2022) ........................ 36, 38

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ............................................................................... 14

*In re Pharm. Indus. Average Wholesale Price Litig.*,
    230 F.R.D. 61 (D. Mass. 2005) ........................................................................... 12

*Phillips Petroleum Co. v. Shutts*,
    472 U.S. 797 (1985) ............................................................................................ 10

*Pierre v. Healthy Beverage, LLC*,
    No. 20-4934, 2022 WL 596097 (E.D. Pa. Feb. 28, 2022) .................................. 18

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

*Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*,
   896 S.W.2d 156 (Tex. 1995) ............................................................... 28

*R.J. Reynolds Tobacco Co. v. Whitmire*,
   260 So. 3d 536 (Fla. Dist. Ct. App. 2018) ........................................... 31

*Red v. Kraft Foods, Inc.*,
   No. 10-1028, 2012 WL 5504011 (C.D. Cal. Oct. 25, 2012) ............... 22

*Reeves v. Keesler*,
   921 S.W.2d 16 (Mo. Ct. App. 1996) .................................................. 32

*In re Relafen Antitrust Litig.*,
   221 F.R.D. 260 (D. Mass. 2004) ........................................................ 12

*Richards v. Stanley*,
   43 Cal. 2d 60 (1954) ................................................................... 14, 15

*Rodriguez v. Nissan N. Am., Inc.*,
   No. 22-1672, 2023 WL 2683162 (C.D. Cal. Jan. 30, 2023) .......... 30, 33

*Schmidt v. Ford Motor Co.*,
   972 F. Supp. 2d 712 (E.D. Pa. 2013) ................................................. 41

*In re Seagate Tech. LLC Litig.*,
   233 F. Supp. 3d 776 (N.D. Cal. 2017) ............................................... 38

*Sharma v. Volkswagen AG*,
   524 F. Supp. 3d 891 (N.D. Cal. 2021) ............................................... 47

*Sheet Metal Workers Loc. 441 Health & Welfare Plan v.*
   *GlaxoSmithKline, PLC*,
   737 F. Supp. 2d 380 (E.D. Pa. 2010) ................................................. 40

*Sherwin v. Samsung Elecs. Am., Inc.*,
   No. 16-7535, 2018 WL 11216896 (N.D. Ill. Mar. 2, 2018) ......... 28, 29

*Silverstein v. Percudani*,
   No. 04-1262, 2005 WL 1252199 (M.D. Pa. May 26, 2005) ............... 33

*Sims v. Kia Motors Am., Inc.*,
   No. 13-1791, 2014 WL 12558251 (C.D. Cal. Oct. 8, 2014) ............... 24

*In re Sling Media Slingbox Advert. Litig.*,
    202 F. Supp. 3d 352 (S.D.N.Y. 2016) ................................................................ 27

*Slippery Rock Area Sch. Dist. v. Tremco, Inc.*,
    No. 15-1020, 2016 WL 3198122 (W.D. Pa. June 9, 2016) .......................... 27, 33

*Smith v. Apple, Inc.*,
    583 F. Supp. 3d 554 (S.D.N.Y. 2022) ................................................................ 34

*Smith v. Forest River, Inc.*,
    No. 19-14174, 2019 WL 8226095 (S.D. Fla. Nov. 25, 2019) ........................... 19

*Sokolow v. Damico*,
    No. 19-80278, 2019 WL 7188563 (S.D. Fla. Dec. 26, 2019) ........................... 31

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020) ............................................................................. 47

*In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection*
    *HDTV Television Litig.*,
    758 F. Supp. 2d 1077 (S.D. Cal. 2010) ................................................. 19, 21, 23

*Sosa v. Coleman*,
    646 F.2d 991 (5th Cir. 1981) ............................................................................. 14

*State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*,
    42 A.D.3d 301 (N.Y. App. Div. 2007) .............................................................. 41

*Stansifer v. Chrysler Motors Corp.*,
    487 F.2d 59 (9th Cir. 1973) ............................................................................... 37

*Steinberg v. CVS Caremark Corp.*,
    899 F. Supp. 2d 331 (E.D. Pa. 2012) ................................................................. 17

*Sweeny v. Toyota Motor Sales, U.S.A., Inc.*,
    No. 22-949, 2023 WL 2628697 (C.D. Cal. Feb. 9, 2023) .................................. 47

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
    992 F. Supp. 2d 962 (C.D. Cal. 2014) ............................................................... 39

*Taleshpour v. Apple Inc.*,
    549 F. Supp. 3d 1033 (N.D. Cal. 2021), *aff'd*, No. 21-16282, 2022
    WL 1577802 (9th Cir. May 19, 2022) ............................................................... 23

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

*Taylor v. Trevino*,
  No. 20-393, 2021 WL 347566 (N.D. Tex. Feb. 2, 2021)....................................39

*Tietsworth v. Sears, Roebuck & Co.*,
  No. 09-288, 2009 WL 3320486 (N.D. Cal. Oct. 13, 2009)..............................23

*Toy v. Metro. Life Ins. Co.*,
  863 A.2d 1 (Pa. Super. 2004), *aff'd*, 928 A.2d 186 (Pa. 2007).........................17

*In re Toyota Motor Corp. Unintended Acceleration Mktg, Sales*
  *Pracs., & Prod. Liab. Litig.*,
  785 F. Supp. 2d 925 (C.D. Cal. 2011).........................................................10, 11

*United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*,
  414 F.3d 558 (5th Cir. 2005)...................................................................27, 32

*In re Vioxx Class Cases*,
  180 Cal. App. 4th 116 (2009)..........................................................................46

*Webb v. Volvo Cars of N.A.*,
  No. 12-2394, 2018 WL 1470470 (E.D. Pa. Mar. 26, 2018)..............................39

*Weiss v. Gen. Motors LLC*,
  418 F. Supp. 3d 1173 (S.D. Fla. 2019).....................................................34, 35

*Williams v. HSBC Bank USA, N.A.*,
  467 S.W.3d 836 (Mo. Ct. App. 2015) ............................................................17

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012)...............................................................26, 28

*Wright v. Bath & Body Works Direct, Inc.*,
  No. 12-99, 2012 WL 12088132 (W.D. Mo. Oct. 17, 2012)..............................19

*Yocca v. Pittsburgh Steelers Sports, Inc.*,
  854 A.2d 425 (Pa. 2004)...............................................................................17

*Zachmann v. Coleman Co. Inc.*,
  No. 20-9146, 2022 WL 161480 (S.D.N.Y. Jan. 18, 2022) ..........................17, 18

*Zafarana v. Pfizer, Inc.*,
  724 F. Supp. 2d 545 (E.D. Pa. 2010)..............................................................42

xi

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*,
   601 F. Supp. 3d 625 (C.D. Cal. 2022) .................................................................. 34

*Zwerling v. Ford Motor Co.*,
   No. 19-3622, 2023 WL 2899524 (N.D. Cal. Apr. 10, 2023) ............................. 32

**Statutes**

Cal. Bus & Prof. Code § 17200. ..............................................................*passim*

Cal. Bus. & Prof. Code § 17204 ..................................................................... 16

Cal. Bus & Prof. Code § 17500 ...............................................................*passim*

Cal. Bus. & Prof. Code § 17535 ..................................................................... 16

Cal. Civ. Code § 1750 ...............................................................................*passim*

Cal. Civ. Code § 1780 ....................................................................................... 16

Cal. Civ. Code § 1791.1 ............................................................................... 8, 34

Cal. Civ. Code § 1792 .................................................................................. 8, 34

Cal. Com. Code § 2314 ...................................................................................... 8

Cal. Com. Code § 10212 .................................................................................... 8

Fla. Sta. § 501.201 ..............................................................................8, 16, 19

Fla. Sta. § 672.314 ............................................................................................. 8

Fla. Sta. § 680.212 ............................................................................................. 8

Fla. Stat. Ann. § 501.211 ................................................................................. 16

Mo. Ann. Stat. § 407.025 ................................................................................. 17

Mo. Rev. Stat. § 400.2-314 ............................................................................... 8

Mo. Rev. Stat. § 400.2A-212 ............................................................................ 8

Mo. Rev. Stat. § 407.010 . ..................................................................*passim*

New York General Business Law § 349 ............................................................ 8

xii

New York General Business Law § 350 .................................................................. 8

13 Pa. Cons. Stat. § 2A212 ................................................................................... 8

13 Pa. Cons. Stat. § 2314 ...................................................................................... 8

73 Pa. Cons. Stat. § 201-1 ............................................................................. *passim*

73 Pa. Stat. § 201-9.2 ......................................................................................... 17

Tex. Bus. & Com. Code Ann. § 2.314 .................................................................... 9

Tex. Bus. & Com. Code Ann. § 2A.212 .................................................................. 9

Tex. Bus. & Com. Code Ann. § 17.41 .......................................................... *passim*

49 U.S.C. § 30118 .............................................................................................. 45

49 U.S.C. § 30120 .............................................................................................. 45

**Court Rules**

Fed. R. Civ. P. 8 ................................................................................................ 23

Fed. R. Civ. P. 9(b) ..................................................................................... *passim*

Fed. R. Civ. P. 12 ........................................................................................... 7, 9

**Other Authorities**

49 C.F.R. 543 ....................................................................................................... 4

49 C.F.R. 571.114 ................................................................................ 4, 43, 44, 46

33 Fed. Reg. 6,472 (Apr. 27, 1968) ..................................................................... 44

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

1

## <u>INTRODUCTION</u>

2       Seeking to represent a nationwide class of consumers, Plaintiffs contend that

3   certain Hyundai and Kia vehicles made as long ago as 2011 contain "defects" that

4   allegedly make them easier for thieves to steal.  According to the Consolidated

5   Amended Consumer Class Action Complaint (the "Consolidated Amended

6   Complaint" or "CAC"), thefts of Kia and Hyundai brand vehicles began to rise in

7   2020, nine years into the alleged class period, due to the dissemination on social

8   media of videos that detail how thieves can exploit the vehicles' alleged "defects"

9   to steal the cars.  Plaintiffs are owners and lessees of Kia and Hyundai vehicles

10  purportedly affected by these alleged defects.  Some—but not all—of Plaintiffs'

11  vehicles have been allegedly stolen by the popularized theft method.

12      Plaintiffs have sued Kia America, Inc. ("KA"), Kia Corporation ("KC")

13  (together with KA, "Kia"), Hyundai Motor America ("HMA"), and Hyundai Motor

14  Company ("HMC") (together with HMA, "Hyundai") (collectively, "Defendants")

15  in an attempt to blame Defendants for the unforeseen consequences of a viral social

16  media trend promoting criminal acts of unknown third parties.

17      Plaintiffs have tried to shoehorn their alleged product defect claims into

18  consumer fraud claims.  Yet they do not allege that they viewed any specific

19  advertisements and do not allege what any advertisements they viewed actually said.

20  Nor do they identify what they claim should have been disclosed or where or how

21  they believe it should have been disclosed.

22      The CAC is flawed for several reasons.  First, Plaintiffs cannot apply

23  California law to consumers who did not purchase or lease their vehicles in

24  California.  Second, the conduct animating this case is action taken not by

25  Defendants but by unrelated third-party criminals, and Plaintiffs cannot hold

26  Defendants accountable for the actions of third parties.  Third, Plaintiffs' affirmative

27  misrepresentation-based claims fail because Plaintiffs do not allege that they

28  reviewed or relied on any of the challenged representations, the challenged

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

representations are non-actionable puffery, and the challenged representations are not false or misleading.  Fourth, Plaintiffs fail to state any omission/concealment-based claims because they do not specify what Defendants should have disclosed or where that information should have been disclosed; do not plausibly allege that Defendants were aware of the alleged defects and any increased susceptibility to theft; do not plausibly allege a duty to disclose; and do not plausibly allege intent.  Fifth, Plaintiffs cannot state a claim for breach of an implied warranty because they do not allege that their vehicles are not fit for their ordinary purpose of providing safe, reliable transportation (as they plainly are), and Plaintiffs are not in privity with Defendants.  Sixth, Plaintiffs' unjust enrichment claims fail because some states do not recognize such claims, and Plaintiffs do not plausibly allege that Defendants were unjustly enriched.  Seventh, Plaintiffs' claims under the "unlawful" and "unfair" prongs of California's Unfair Competition Law fail because Plaintiffs do not plausibly allege that Defendants engaged in unlawful or unfair practices.  And finally, Plaintiffs cannot seek equitable relief because Plaintiffs do not plausibly allege that they lack an adequate remedy at law.

Accordingly, Defendants respectfully request that this Court dismiss Plaintiffs' claims under the laws of California, Missouri, Florida, New York, Pennsylvania, and Texas, with prejudice.[1]

# BACKGROUND

## I. Kia and Hyundai Thefts Go Viral.

The theft of Kia and Hyundai vehicles allegedly "skyrocket[ed] in 2020" when a new viral theft method "began to circulate on social media."  CAC ¶ 1354. The trend was popularized by a "group of teenagers in Milwaukee, Wisconsin called the 'Kia Boyz'" who "began to publicize" how to steal Hyundai and Kia vehicles.

---

[1] As directed by the Court and described further below, Defendants move to dismiss claims under the laws of six states chosen by the parties.  *See* Dkt. 70.  Defendants reserve the right to address the claims under the laws of the remaining states asserted in the CAC.  *See id.*

*Id.* ¶¶ 9, 1290.

As a result of the "explosion in public knowledge" due to the viral disclosure of this previously-unknown theft method, Kia and Hyundai vehicles were stolen in increasing numbers beginning in 2020 and 2021. *See id.* ¶¶ 1365–66. For example, "[i]n just the first six months of 2021, Hyundai thefts were up more than 1,700% year-over-year in Milwaukee, while Kia thefts increased by almost 3,200%." *Id.* ¶ 1371. Plaintiffs allege that data tracking vehicle thefts in 2022 and 2023 suggest this trend is continuing. *Id.* ¶¶ 1372–79.

Plaintiffs broadly allege that the "Class Vehicles" share "several critical design and/or manufacturing defects" allegedly making the vehicles more susceptible to theft, namely: (1) "the steering columns do not contain adequately secure collars or casings"; (2) "the ignition lock cylinders do not have a locking mechanism and can be easily removed with minimal force"; (3) "the exposed ignition switch can be started with any set of pliers" or "a USB connector"; and (4) the vehicles "do not contain engine immobilizers." *Id.* ¶¶ 8, 1289. Plaintiffs refer to this combination of alleged "defects" as the "Theft Prone Defect." *Id.* ¶ 8.

The Kia and Hyundai thefts popularized by the "Kia Boyz" represent a new type of vehicle theft. These vehicles are being stolen in a way that makes it apparent the vehicle has been stolen (broken windows to gain entry, damage to steering column to start the car, etc.). And the vehicles are only being driven briefly and then being abandoned.

**II.    Defendants and the Relevant Regulations.**

HMC and KC "design, manufacture, market, distribute, and sell [vehicles] under their registered trademarks 'Hyundai' and 'Kia.'" *Id.* ¶ 18. KA and HMA distribute Hyundai and Kia branded vehicles to independent third-party dealerships who resell the vehicles to consumers. *Id.* ¶ 20.

At the core of Plaintiffs' "defect" claim is the Federal Motor Vehicle Safety Standards ("FMVSS"), particularly FMVSS 114, which outlines minimum theft-

1    protection standards. *See id.* ¶ 1261. FMVSS 114, for example, requires a "starting

2    system" that prevents the "normal activation of the vehicle's engine or motor" and

3    "steering, or forward self-mobility, of the vehicle, or both," "whenever the key is

4    removed." *Id.* (citing 49 C.F.R. 571.114). Plaintiffs argue that Defendants do not

5    comply with FMVSS 114 because their vehicles "do not contain a meaningful anti-

6    theft device, such as an immobilizer." *Id.* ¶ 1301. But the regulations do not require

7    the particular type of anti-theft device that Plaintiffs ask this Court to order. *See id.*

8    ¶ 1278. The federal regulator—the National Highway Traffic Safety Administration

9    ("NHTSA")—"has stated that the [immobilizer] *complies* with FMVSS No. 114,"

10   not that FMVSS 144 *requires* it. *Id.* (emphasis added).

11        Throughout the class period alleged in the CAC, NHTSA has imposed a "parts

12   marking requirement," referred to as a "PMR," pursuant to its authority under the

13   Motor Vehicle Theft Law Enforcement Act. *Id.* ¶ 1256 (citing 49 C.F.R. 543). The

14   PMR requires "manufacturers of designated high theft passenger car lines to inscribe

15   or affix the Vehicle Identification Number (VIN) onto the engine, the transmission,

16   and major body parts . . . unless the vehicle line is granted an exemption." *Id.* An auto

17   manufacturer "may petition for a PMR exemption when it plans to install a standard

18   equipment antitheft device on the entire line," and NHTSA "must determine that the

19   antitheft device to be installed on the line is likely to be as effective in reducing and

20   deterring motor vehicle theft as parts-marking." *Id.* Contrary to Plaintiffs' suggestion

21   otherwise, NHTSA does not *require* any such alternative anti-theft devices; NHTSA

22   merely *accepts* them as substitutes for its actual requirement, the PMR.

23        Plaintiffs' CAC implies their preferred alternative designs—including an

24   immobilizer that would restrict forward mobility—should substitute for the

25   regulator's judgment in effect when all of the Class Vehicles were manufactured.

26   The CAC frames theft prevention as "safety" features rather than "security" features.

27   *See, e.g., id.* ¶¶ 6–7, 1265, 1297. But Plaintiffs do not allege that the *vehicles*

28   themselves are unsafe; rather, they allege that third-party thieves driving stolen

4

vehicles may pose safety concerns. *See, e.g., id.* ¶¶ 8–9, 1290–99.

## III.   Plaintiffs and the Challenged Representations.

In this Motion, Defendants address the claims of Plaintiffs who purchased vehicles in California (*id.* ¶¶ 52–95, 489–565); Missouri (*id.* ¶¶ 316–54, 934–96); Florida (*id.* ¶¶ 109–32; 628–68); New York (*id.* ¶¶ 367–82, 1029–56); Texas (*id.* ¶¶ 437–51; 1159–84); and Pennsylvania (*id.* ¶¶ 1119–42). Although most of these Plaintiffs purchased or leased their vehicles from authorized dealerships, some purchased vehicles from other sellers, such as Carmax and Hertz Car Sales. *Id.* ¶¶ 69, 437, 950.

The Plaintiffs at issue in this Motion generally allege they visited the Hyundai or Kia websites and "[r]eviewed representations about the Class Vehicle's safety, reliability, and quality." *Id.* ¶¶ 56, 71, 85, 122, 319, 371, 439, 493, 505, 531, 546, 631, 971, 984, 1033, 1047, 1122, 1162.[2] Yet they do not identify any specific representation they viewed on the websites or which parts of the websites they reviewed. Several Plaintiffs also generally allege that they "saw and heard" unspecified television and/or radio commercials. *Id.* ¶ 57; *see also id.* ¶¶ 320, 343, 440, 494, 506, 532, 547, 632, 645, 658, 954, 970, 1048, 1133, 1178. Again, none of those Plaintiffs identify any specific commercials they "saw and heard" or what specifically they "saw and heard" in those commercials. Plaintiff Kingsbury also claims to have viewed unspecified "billboard advertisements." *Id.* ¶ 58. And Plaintiffs McGeehon and Lui allege that unidentified "sales representative[s]" made general claims about "safe[ty]" and "reliabil[ity]." *Id.* ¶¶ 122, 1177. Finally, Plaintiffs Kay, McGeehon, and Catlos claim they viewed third-party publications like "Consumer Reports." *Id.* ¶¶ 112, 122, 1162.

Plaintiffs highlight a smattering of representations they seem to be challenging, although they do not allege they reviewed, relied on, or were aware of

---

[2] Some Plaintiffs not as issue in this Motion do not allege that they viewed or heard any representations at all. *See, e.g.,* CAC ¶¶ 160–72, 669–81, 709–20.

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

1    the representations before they purchased their vehicles.  These include statements

2    on the Hyundai and Kia websites and a random assortment of product brochures.  *Id.*

3    ¶¶ 1234–45.  The challenged non-specific representations concern "safety" (*id.*

4    ¶¶ 1234–37, 1239, 1242–45), "quality" (*id.* ¶¶ 1235, 1238), "durability" (*id.* ¶ 1238),

5    and "reliab[ility]" (*id.* ¶ 1240).  Nowhere do Plaintiffs identify any statements

6    Defendants made about security features or vehicle theft.

7    **IV.    Procedural Background.**

8           This litigation, which now involves nearly 60 consumer actions filed across

9    the United States, began with *Marvin v. Kia America, Inc*., filed in the Circuit Court

10   of Milwaukee County, Wisconsin on June 23, 2021, and removed to U.S. District

11   Court for the Eastern District of Wisconsin on October 5, 2021.[3]  Like the copycat

12   actions that would follow, *Marvin* alleged that certain security features on certain

13   Hyundai and Kia vehicles were inadequate.  KA and HMA moved to dismiss the

14   *Marvin* complaint on December 22, 2021.

15          Starting over a year after the filing of the original complaint, and prior to the

16   *Marvin* court ruling on KA and HMA's pending motion to dismiss, several law firms

17   began filing nearly-identical actions in other jurisdictions.  These actions assert

18   nearly identical claims to those pleaded in *Marvin* (but are brought under different

19   states' laws).

20          On August 31, 2022, the plaintiffs in one of the copycat actions moved before

21   the U.S. Judicial Panel on Multidistrict Litigation (the "JPML") to consolidate all of

22   the actions into a single multidistrict proceeding.  *See In re Kia Hyundai Vehicle*

23   *Theft Litig*., MDL No. 3052, 2022 WL 17843100, at *1 (J.P.M.L. Dec. 13, 2022).

24   The JPML created MDL No. 3052 in this Court on December 13, 2022.  *Id*.

25          On March 13, 2023, the Court directed Plaintiffs' Consumer Class Action

26   Leadership Committee to file a consolidated amended complaint.  *See* Dkt. 70.

27

28   ─────────────────────
     [3] KC and HMC were not named as defendants in the *Marvin* action.

Plaintiffs filed the CAC on April 10, 2023. *See* Dkt. 84. It names 85 Plaintiffs who purchased or leased vehicles in 30 states and asserts claims under the laws of all 50 states. CAC ¶¶ 37–1206, 1536–4817. In general, Plaintiffs assert claims for (1) violation of state consumer protection statutes based on both alleged misrepresentations and omissions, (2) breach of implied warranty, (3) fraud by omission and concealment, and (4) unjust enrichment. *Id.* ¶¶ 1536–4817. Notably, many of the Plaintiffs named in the Consolidated Amended Complaint were not named in any of the individual consumer actions and are completely new additions to the MDL.[4]

Plaintiffs purport to bring claims on behalf of nationwide classes of Hyundai and Kia purchasers and subclasses from all 50 states for both Kia and Hyundai purchasers. *Id.* ¶¶ 1524–56. The putative "Class Vehicles" include all 2011–2022 Kia and Hyundai vehicles that do not contain engine immobilizers. *Id.* ¶ 1526.

On March 13, 2023, this Court ordered Defendants to "brief the law of six (6) representatives states" in their Rule 12 motion to dismiss the Consolidated Amended Complaint. *See* Dkt. 70 at 2. Plaintiffs selected California, Florida, and Missouri. Defendants select Pennsylvania, Texas, and New York. Accordingly, Defendants bring this Motion to Dismiss Plaintiffs' claims under the laws of California, Florida, Missouri, Pennsylvania, Texas, and New York (together, the "Subject States") without prejudice to their rights to further move to dismiss Plaintiffs' remaining claims. *See* Dkt. 70.[5]

---

[4] Additionally, many of the named plaintiffs in actions consolidated in this MDL were not included in the CAC. And Plaintiffs did not name Hyundai America Technical Center, Inc. ("HATCI"), which was named in some of the actions consolidated in this MDL, as a defendant in the CAC.

[5] In line with the Court's expectation that the parties select states covering "a substantial number of cars," Defendants have chosen the next three most populous states after Plaintiffs' selection of California and Florida. Mar. 13, 2023 Hearing Tr. at 4:11. Missouri, selected by Plaintiffs, is the 18th most populous state.

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

As relevant to this Motion, Plaintiffs assert the following claims:

**California Counts**: (1) breach of implied warranty of merchantability, Cal. Com. Code §§ 2314 and 10212 (*id.* ¶¶ 1536–53); (2) violation of the California Song-Beverly Consumer Warranty Act ("Song-Beverly Act") for breach of the implied warranty of merchantability, Cal. Civ. Code §§ 1791.1 and 1792 (*id.* ¶¶ 1554–70); (3) violation of the California False Advertising Law ("FAL"), Cal. Bus & Prof. Code § 17500, *et seq.* (*id.* ¶¶ 1571–88); (4) violation of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.* (*id.* ¶¶ 1589–1609); (5) violation of the California Unfair Competition Law ("UCL"), Cal. Bus & Prof. Code § 17200, *et seq.* (*id.* ¶¶ 1610–32); (6) fraud by omission and concealment (*id.* ¶¶ 1633–48); and (7) unjust enrichment (*id.* ¶¶ 1649–58).

**Florida Counts**: (1) breach of implied warranty of merchantability, Fla. Sta. §§ 672.314 and 680.212 (*id.* ¶¶ 2117–34); (2) violation of the Florida Deceptive & Unfair Trade Practices Act ("FDUTPA"), Fla. Sta. § 501.201, *et seq.* (*id.* ¶¶ 2135–53); (3) fraud by omission and concealment (*id.* ¶¶ 2154–69); and (4) unjust enrichment (*id.* ¶¶ 2170–79).

**Missouri Counts**: (1) breach of the implied warranty of merchantability, Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212 (*id.* ¶¶ 3175–92); (2) violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. §§ 407.010, *et seq.* (*id.* ¶¶ 3193–3212); (3) fraud by omission and concealment (*id.* ¶¶ 3213–28); and (4) unjust enrichment (*id.* ¶¶ 3229–38).

**New York Counts**: (1) violation of New York General Business Law ("GBL") § 349, (*id.* ¶¶ 3608–25); (2) violation of GBL § 350 (*id.* ¶¶ 3626–42); (3) fraud by omission and concealment (*id.* ¶¶ 3643–58); and (4) unjust enrichment (*id.* ¶¶ 3659–68).

**Pennsylvania Counts**: (1) breach of the implied warranty of merchantability, 13 Pa. Cons. Stat. §§ 2314 and 2A212 (*id.* ¶¶ 3978–95); (2) violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"),

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

1  73 Pa. Cons. Stat. §§ 201-1, *et seq.* (*id.* ¶¶ 3996–4015); (3) fraud by omission and
2  concealment (*id.* ¶¶ 4016–31); and (4) unjust enrichment (*id.* ¶¶ 4032–41).

3      **Texas Counts**: (1) breach of the implied warranty of merchantability, Tex.
4  Bus. & Com. Code Ann. §§ 2.314 and 2A.212 (*id.* ¶¶ 4309–26); (2) violation of the
5  Deceptive Trade Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com.
6  Code Ann. § 17.41, *et seq.* (*id.* ¶¶ 4327–49); (3) fraud by omission and concealment
7  (*id.* ¶¶ 4350–65); and (4) unjust enrichment (*id.* ¶¶ 4366–75).

8  ## LEGAL STANDARD

9      "[A] complaint must contain sufficient factual matter, accepted as true, to
10  'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,
11  678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facts
12  indicating the "mere possibility of misconduct" fall short. *Id.* at 679.  "[C]onclusory
13  allegations" and "unwarranted inferences" are also "insufficient to avoid dismissal"
14  under Rule 12(b)(6). *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017)
15  (citations omitted).  Rather, the plaintiff must "allege more by way of factual content
16  to 'nudg[e]' his claim" of unlawful action "across the line from conceivable to
17  plausible." *Iqbal*, 556 U.S. at 683 (quoting *Twombly*, 550 U.S. at 570).

18      Further, Plaintiffs' claims that sound in fraud are also subject to Rule 9(b)'s
19  heightened pleading standard.  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125
20  (9th Cir. 2009) (holding that Rule 9(b) applies to state-law claims that "allege a
21  unified course of fraudulent conduct," including UCL and CLRA claims, regardless
22  of whether fraud is a necessary element of those claims).  Rule 9(b) requires
23  Plaintiffs to "state with particularity the circumstances constituting fraud"—or, in
24  other words, to "identify the who, what, when, where, and how of the misconduct
25  charged, as well as what is false or misleading about [the purportedly fraudulent]
26  statement, and why it is false." *United States ex rel. Cafasso v. Gen. Dynamics C4
27  Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011) (citations and internal quotation
28  marks omitted).

1

**ARGUMENT**

2

**I.   California Law Does Not Apply to a Nationwide Class.**

3       Plaintiffs allege "California law applies to Plaintiffs' nationwide claims

4  because Plaintiffs' injuries emanate from HMA's and KA's actions in California."

5  CAC ¶ 1489.   Essentially, Plaintiffs assert California law should apply to a

6  nationwide class because HMA and KA—only two of the Defendants in this

7  action—are headquartered in California.   *Id*. ¶¶ 1489–1522.   This Court has

8  previously rejected a similar attempt to apply California law to a nationwide class in

9  an automotive class action.   Courts across the country have reached the same

10 conclusion.  There is no reason to deviate from those decisions here.

11       In *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales*

12 *Practices, & Product Liability Litigation*, this Court considered whether plaintiffs

13 could assert claims under California law on behalf of a nationwide class.  785 F.

14 Supp. 2d 925, 927 (C.D. Cal. 2011).  This Court recognized there were material

15 differences in state laws.  *Id.* at 932 n.6.  And considering various factors, including

16 those "unique to multidistrict litigation," this Court held California law could not be

17 applied to the claims of a nationwide class.  *Id.* at 928.  *In re Toyota* is instructive,

18 and the same result should apply here.

19       First, relying on *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 820 (1985),

20 the Court recognized that plaintiffs' "procedural engineering . . . should not be

21 determinative of which state's substantive law to apply."  785 F. Supp. 2d at 928–

22 29.  Second, the Court reasoned that it "must consider the separate and distinct

23 identities of the member cases to this MDL and . . . should be prepared to follow the

24 statutory mandate to remand them at the conclusion of the pretrial proceedings."  *Id.*

25 at 929–31.  Third, the Court concluded that "[n]either the general authorization of

26 the coordination and consolidation under the MDL statute nor the more specific use

27 of consolidated complaints . . . is intended to alter the substantive rights of the

28 parties."  *Id.* at 931–33.  For all of those reasons, the Court determined that California

10

law should not apply nationwide.  The Court rejected the plaintiffs' reliance on "cases in which courts have certified nationwide classes of plaintiffs asserting claims under California law," finding that "none of those cases have done so under" similar facts, and "they do not counsel or compel a contrary conclusion." *Id.* at 933–35.

The Court should follow *In re Toyota* here.  There is no need to re-litigate the material differences in state law here—indeed, this brief demonstrates some of those differences.  The Court should again reject Plaintiffs' attempt to engage in "procedural engineering" to apply California law to a nationwide class.  The cases consolidated in this MDL were filed throughout the country, and neither the fact that the MDL was assigned to this California Court, nor the fact that two of the Defendants are located in California, should change the applicable substantive law. The Court's finding that briefing the laws of six states on this Motion "makes a lot of sense" and should cover "a substantial number of cars," represents the Court's implicit recognition that California law would not be applied across a nationwide class.  Mar. 13, 2023 Hearing Tr. at 4:8–12.

In cases involving products, including automobiles, courts have consistently rejected attempts to apply the law of the headquartering state across a nationwide class where the class members purchased the product or resided outside of that state. *Mazza v. Am. Honda Motor Co.*, is instructive.  In that case, the Ninth Circuit vacated the district court's class certification order upon finding California law could not be applied across a nationwide class.  666 F.3d 581, 594 (9th Cir. 2012), *overruled in part on other grounds by Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022).  There, the defendant "Honda's corporate headquarters, the advertising agency that produced the allegedly fraudulent misrepresentations, and one fifth of the proposed class members [were] located in California." *Id.* at 590.  The court applied California's governmental interest choice of law test, which looks at "whether the interests of other states outweigh California's interest." *Id.*  First, the court found that there were material differences

in consumer protection laws across the 43 states at issue.  *Id.* at 591.  Second, the court found each state has an interest "in balancing the range of products and prices offered to consumers with the legal protections afforded to them" and "being able to assure individuals and commercial entities operating within its territory that applicable limitations on liability set forth in the jurisdiction's law will be available to those individuals and businesses in the event they are faced with litigation in the future." *Id.* at 592–93 (citation omitted).  Finally, the court found "[t]he district court did not adequately recognize that each foreign state has an interest in applying its law to transactions within its borders and that, if California law were applied to the entire class, foreign states would be impaired in their ability to calibrate liability to foster commerce." *Id.* at 593.  The court held "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Id.*

As in *Mazza*, each state has an interest in regulating commercial transactions within its territory that would be defeated if California law were applied across the class.  Other courts, applying a variety of choice-of-law tests, have refused to apply the law of the headquartering state to a nationwide class.  *See, e.g.*, *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1017 (7th Cir. 2002) ("If recovery for breach of warranty or consumer fraud is possible, the injury is decidedly where the consumer is located, rather than where the seller maintains its headquarters."); *Cadena v. Am. Honda Motor Co.*, No. 18-4007, 2019 WL 3059931, at *8 (C.D. Cal. May 29, 2019) ("[E]ach class member's claims must be governed by the law of the state in which he or she bought his or her Class Vehicle."); *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 83 (D. Mass. 2005) ("Courts have generally rejected application of the law of a defendant's principal place of business to a nationwide class."); *In re Relafen Antitrust Litig.*, 221 F.R.D. 260, 277 (D. Mass. 2004) (declining to apply the law of the state of defendant's headquarters, reasoning "the primary aim of antitrust and consumer protection laws . . is compensating

consumers, not policing corporate conduct" and therefore "the more significant contact" is "the location of the sales to the end payor plaintiffs"). This Court should follow the weight of authority and hold that California law does not apply to a nationwide class.

## II.   Defendants Are Not Liable for Plaintiffs' Alleged Injuries, Which Were Caused by Intervening Criminal Acts of Third Parties.

Plaintiffs allege the thefts alleged in the CAC were committed by "amateur thieves" and "teenagers," not Defendants. *E.g.*, CAC ¶¶ 9, 48, 1408. They allege that the thefts began with a group of creative teenage thieves in Milwaukee in 2020 and spread nationwide through social media. *Id.* ¶¶ 9, 1290, 1299. But Plaintiffs do not allege that the Class Vehicles themselves do not operate as they should. As such, any injuries alleged in Plaintiffs' CAC do not result from the design, manufacture, or advertising of Defendants' vehicles but rather from the theft of those vehicles by third-party youths influenced by a social media trend. For that reason, Plaintiffs cannot establish the causation needed to state any of their claims.

Under Pennsylvania, Texas, and New York law, a defendant is not liable for a plaintiff's harm where intervening criminal conduct constitutes a superseding cause of the alleged injury. *See, e.g.*, *Deitrick v. Costa*, No. 06-1556, 2015 WL 1605700, at *16 (M.D. Pa. Apr. 9, 2015) (noting "[t]he chain of causation may be broken, and a defendant will not be subject to liability for negligent conduct, if the intervening act of a third party constitutes a superseding cause," and "[t]he commission of a crime or intentional tort by a third person is a superseding cause") (citations omitted); *Davis-Lynch, Inc. v. Asgard Techs., LLC*, 472 S.W.3d 50, 64 (Tex. App. 2015) ("[T]he criminal conduct of a third party is a superseding cause that extinguishes any liability of the previous actor."); *Deskovic v. City of Peekskill*, 673 F. Supp. 2d 154, 161 (S.D.N.Y. 2009) ("'Generally, an intervening intentional or criminal act' is a type of superseding cause that severs the liability of the original tort-feasor.") (citation omitted).

1  In the remaining states—California, Florida, and Missouri—proximate cause

2  requires foreseeability, meaning a defendant cannot be liable for harm that was

3  ultimately caused by unforeseeable criminal acts.  *See Bader Farms, Inc. v. BASF*

4  *Corp.*, 39 F.4th 954, 962 (8th Cir. 2022) (Missouri); *Sosa v. Coleman*, 646 F.2d 991,

5  993–94 (5th Cir. 1981) (Florida); *Kane v. Hartford Accident & Indem. Co.*, 98 Cal.

6  App. 3d 350, 360 (1979) (California).[6]

7  Under the laws of the Subject States, Defendants are not the proximate cause

8  of Plaintiffs' harm due to the intervening criminal acts of car thieves.  *Heeter v.*

9  *Honeywell Int'l, Inc.* is instructive.  195 F. Supp. 3d 753 (E.D. Pa. 2016), *aff'd sub*

10  *nom. Heeter v. Honeywell Intl Inc.*, 706 F. App'x 63 (3d Cir. 2017).  There, an

11  intruder broke into the plaintiff's home and stole a gun that he later used to kill the

12  plaintiff's son.  *Id.* at 754.  The plaintiff sued the manufacturers of her alarm system

13  that failed to notify her or the police of the break-in.  *Id.*  The court dismissed the

14  claims against the manufacturers for failure to plausibly plead proximate causation.

15  It held that "[t]he alarm system's failure merely created a situation harmless in itself

16  unless and until acted upon by another force . . . for which Defendants were not

17  responsible."  *Id.* at 760–61.

18  *Richards v. Stanley* is also on point.  43 Cal. 2d 60 (1954).  There, the court

19  held a defendant who left her car unlocked with the keys in the ignition could not be

20  liable for injuries caused by a thief who stole the car and hit the plaintiff.  *Id.* at 61,

21  69.  In so concluding, the court emphasized that when the defendant left the car, "it

22  was in a position where it could harm no one, [and] no harm occurred until it had

23  been taken by a thief."  *Id.* at 65.  Although the plaintiff claimed that her injuries

24  resulted from the defendant's negligence, the court held that, "in the absence of a

[6] California's consumer protection statutes do not impose secondary liability for the conduct of others.  *See, e.g.*, *Celebrity Chefs Tour, LLC v. Macy's, Inc.*, No. 13-2714, 2014 WL 12160745, at *14 (S.D. Cal. Sept. 19, 2014); *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 808 (9th Cir. 2007); *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 964 (2002).

special relationship between the parties," the defendant had "no duty to control the conduct of a third person so as to prevent him from causing harm to another." *Id.*

As in *Heeter* and *Richards*, third-party criminals are responsible for Plaintiffs' alleged injuries. Defendants did not proximately cause any harm and are not liable for the alleged thefts, which constitute a superseding cause of Plaintiffs' alleged injuries. Further, Plaintiffs do not allege any facts to suggest the rise in vehicle thefts associated with the viral social media trend was foreseeable. Indeed, Plaintiffs make clear that the social media videos showing how to steal the vehicles arose only in 2020, resulting in increased vehicle thefts, even though the Class Vehicles were first sold a decade earlier. CAC ¶¶ 9, 1354. Accordingly, even if Defendants did any wrong (and they did not), the thieves' unforeseeable criminal acts have broken the chain of legal causation.

## III.    Plaintiffs' Misrepresentation-Based Claims Fail.

In their statutory consumer protection claims, Plaintiffs allege Defendants made affirmative misrepresentations. *See* CAC ¶¶ 1577, 1579, 1597, 1600, 1624, 2142, 2145, 3201, 3204, 3615, 3617, 3633, 3635, 4004, 4007, 4336, 4339. To the extent the statutory claims are based on affirmative misrepresentations, they fail because (1) Plaintiffs do not allege that they reviewed or relied on any of the challenged representations and therefore do not establish an element of each Subject State's claims, whether described as causation, reliance, or statutory standing; (2) the challenged representations are non-actionable puffery; and (3) the challenged representations are not false or misleading.

### A.    Plaintiffs Do Not Allege Causation, Reliance, or Statutory Standing Because They Do Not Allege They Viewed Any Challenged Representations.

Although Plaintiffs challenge specific representations, they do not allege any Plaintiff reviewed or relied on any of those particular representations. *See* CAC ¶¶ 1234–40, 1242–45. Absent such allegations, Plaintiffs fail to allege causation, reliance, or statutory standing, which are the required elements of their claims.

**California.**  Plaintiffs must plausibly plead a causal link between Defendants' alleged misrepresentations and Plaintiffs' injuries to establish statutory standing under the CLRA, UCL, and FAL.  *See In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1022 (N.D. Cal. 2013); Cal. Bus. & Prof. Code § 17204 (UCL action may only be brought "by a person who has suffered injury in fact and has lost money or property as a result of the unfair competition"); Cal. Bus. & Prof. Code § 17535 (FAL action seeking injunction may only be brought by a "person who has suffered injury in fact and has lost money or property as a result of a violation" of the FAL); Cal. Civ. Code § 1780(a) (CLRA action may be brought by "[a]ny consumer who suffers any damage as a result of the use or employment by any person of a method, act, or practice declared to be unlawful by" the CLRA).  This requires that Plaintiffs actually relied on the challenged representations.  *See In re iPhone Application Litig.*, 6 F. Supp. 3d at 1015, 1027.  Plaintiffs do not allege they relied on the challenged statements.  Accordingly, they lack statutory standing to bring UCL, FAL, and CLRA claims.

**Florida.**  Plaintiffs may only recover under the FDUTPA if they have "suffered a loss as a result of a violation."  Fla. Stat. Ann. § 501.211(2).  Put another way, "[t]o bring a claim under [the FDUTPA], the plaintiff must have been aggrieved by the alleged unfair and deceptive act."  *Nat. Answers, Inc. v. SmithKline Beecham Corp.*, 529 F.3d 1325, 1333 (11th Cir. 2008).  Applying this standard, courts dismiss FDUTPA claims where plaintiffs "fail to identify any specific advertisements" they "viewed, how they were misled by these advertisements, . . . and how these advertisements caused any of their injuries."  *Hall v. Bristol-Myers Squibb Co.*, No. 06-5203, 2009 WL 5206144, at *9 (D.N.J. Dec. 30, 2009); *see also Berry v. Budget Rent A Car Sys., Inc.*, 497 F. Supp. 2d 1361, 1367 n.4 (S.D. Fla. 2007) (ignoring allegations based on claims on website where complaint did not allege that representations on website were "relied upon, or even viewed" by the plaintiffs).  Because Plaintiffs do not allege that they reviewed or relied on the challenged

1    misrepresentations, their FDUTPA claim fails for lack of causation.

2    **Missouri.**  Under the MMPA, Plaintiffs must allege "an ascertainable loss

3    caused by th[e] alleged representation." *Williams v. HSBC Bank USA, N.A.*, 467

4    S.W.3d 836, 843 (Mo. Ct. App. 2015); *see also* Mo. Ann. Stat. § 407.025(1).

5    Because Plaintiffs do not allege that they reviewed or relied on the challenged

6    misrepresentations, the MMPA claim fails for lack of causation.

7    **Pennsylvania.**  To state a claim under the UTPCPL, Plaintiffs must plead

8    reliance and causation. *Toy v. Metro. Life Ins. Co.*, 863 A.2d 1, 11 (Pa. Super. 2004),

9    *aff'd*, 928 A.2d 186 (Pa. 2007).  Courts hold that "[t]o bring a private cause of action

10   under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's

11   wrongful conduct or representation and that he suffered harm as a result of that

12   reliance." *Yocca v. Pittsburgh Steelers Sports, Inc.*, 854 A.2d 425, 438 (Pa. 2004);

13   *see also* 73 Pa. Stat. § 201-9.2(a) (plaintiffs must allege that they "suffer[ed] any

14   ascertainable loss . . . as a result of" the fraudulent or deceptive practice).  Courts

15   dismiss UTPCPL claims where plaintiffs do not allege awareness of or reliance on

16   challenged representations.  *See, e.g.*, *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 227

17   (3d Cir. 2008), *as amended* (Nov. 6, 2008) (finding that district court should have

18   dismissed UTPCPL claim where plaintiff had "not adequately alleged that he

19   justifiably relied on [defendant's] deception" where he did not allege deception

20   induced him to "purchase [defendant's] products or engage in any other detrimental

21   activity"); *Steinberg v. CVS Caremark Corp.*, 899 F. Supp. 2d 331, 341 (E.D. Pa.

22   2012) (dismissing UTPCPL claims where plaintiff "failed to allege that he was

23   aware of the defendants' representations" or that "he relied on those statements in

24   electing to fill his prescriptions at CVS").  Because Plaintiffs do not allege that they

25   reviewed or relied on the challenged misrepresentations, the UTPCPL claim fails for

26   failure to plead reliance and causation.

27   **New York.**  Under the GBL, "a plaintiff must establish causation, that is, 'a

28   causal connection between some injury to plaintiffs and some misrepresentation by

17

defendants.'" *Zachmann v. Coleman Co. Inc.*, No. 20-9146, 2022 WL 161480, at *3–4 (S.D.N.Y. Jan. 18, 2022) (dismissing GBL claims where plaintiffs did "not sufficiently allege a causal connection between their purchase of defendant's coolers and defendant's labelling"). Thus, to state a claim, "a plaintiff must plead reliance on a false advertisement at the time the product was purchased." *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 288 (E.D.N.Y. 2009) (dismissing GBL claims where plaintiff did not "allege that she ever relied on any representations made by defendants"). Because Plaintiffs do not allege they reviewed or relied on the challenged misrepresentations, they fail to plead reliance and causation, and their GBL claims should be dismissed.

**Texas.** To state a DTPA claim, "the consumer must show that the misrepresentation was a producing cause of his or her damages and that the consumer relied on the misrepresentation to his or her detriment." *Bowles v. Mars, Inc.*, No. 14-2258, 2015 WL 3629717, at *4 (S.D. Tex. June 10, 2015) (citation omitted) (dismissing claim where plaintiff "did not rely on the defendants' label when purchasing" product). Thus, because Plaintiffs do not allege that they reviewed or relied on the challenged misrepresentations (and, indeed, Plaintiff Catlos alleges only that she reviewed the third-party Consumer Reports website (CAC ¶ 1162)), the DTPA claim fails for failure to plead reliance and causation.

**B.   The Challenged Representations Are Non-Actionable Puffery.**

Plaintiffs' consumer deception claims are "governed by the 'reasonable consumer' test," which requires Plaintiffs to "show that members of the public are *likely* to be deceived." *Becerra v. Dr. Pepper/Seven Up, Inc.*, 945 F.3d 1225, 1228 (9th Cir. 2019) (emphasis added); *see also Beardsall v. CVS Pharmacy, Inc.*, 953 F.3d 969, 973 & n.2 (7th Cir. 2020) (applying reasonable consumer standard to claims under consumer protection laws of California, Florida, Missouri, New York, and Texas); *Pierre v. Healthy Beverage, LLC*, No. 20-4934, 2022 WL 596097 (E.D. Pa. Feb. 28, 2022) (applying reasonable consumer standard under New York and

18

Pennsylvania law).

The "reasonable consumer" standard "requires more than a mere possibility" that Defendants' labeling "might conceivably be misunderstood by some few consumers viewing it in an unreasonable manner." *Becerra*, 945 F.3d at 1228 (citation omitted). The standard is not that of a "least sophisticated consumer" or an "unwary consumer." *Hill v. Roll Int'l Corp.*, 195 Cal. App. 4th 1295, 1304 (2011) (citation and emphasis omitted). "Rather, the reasonable consumer standard requires a *probability* that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Becerra*, 945 F.3d at 1228–29 (emphasis added) (citation and internal quotation marks omitted).

"Generalized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1089 (S.D. Cal. 2010) (citation omitted). This is true for claims under the consumer protection statutes of all the Subject States. *See, e.g.*, *id.* (dismissing claims under laws of over 40 states, including UCL, CLRA, and FAL claims, that were premised on puffery); *Smith v. Forest River, Inc.*, No. 19-14174, 2019 WL 8226095, at *3 (S.D. Fla. Nov. 25, 2019) (puffery not actionable under FDUTPA); *Wright v. Bath & Body Works Direct, Inc.*, No. 12-99, 2012 WL 12088132, at *2 (W.D. Mo. Oct. 17, 2012) (puffery not actionable under MMPA); *Fusco v. Uber Techs., Inc.*, No. 17-36, 2018 WL 3618232, at *5 (E.D. Pa. July 27, 2018) (puffery not actionable under UTPCPL); *Kommer v. Ford Motor Co.*, No. 17-296, 2017 WL 3251598, at *3 (N.D.N.Y. July 28, 2017) (puffery not actionable under GBL); *Druker v. Fortis Health*, No. 06-52, 2007 WL 38322, at *4 (S.D. Tex. Jan. 4, 2007) (puffery not actionable under DTPA).

The challenged statements constitute non-actionable puffery. For example, the CAC contains the following:

- Allegation the Hyundai website "advertises that '[f]rom the moment you step

19

into a Hyundai Motor's vehicle, safety surrounds you from all corners at every second, even in places you never imagined.'"  CAC ¶ 1234.

- Allegation that 2019 Hyundai Tucson brochure states HMA's "commitment to Hyundai owners doesn't end with the transfer of keys" and that the vehicle includes "more standard safety features" and that it is "flush with . . . advanced safety technologies."  *Id.* ¶ 1236.

- Allegation that Kia United States website advertises that KA "believe[s] in the outstanding quality and durability of every new Kia that rolls off the assembly line" and that "[f]rom design to technology, materials to safety features, Kia continues to innovate."  *Id.* ¶ 1238.

- Allegation that the 2016 Kia Sorento brochure provides that "the vehicle contains '[a] long list of technologically advanced features . . . [that] inspire confidence and enhance everyday convenience.'"  *Id.* ¶ 1244.

As reflected in these examples, Plaintiffs challenge general representations about "safety" (*id.* ¶¶ 1234–37, 1239, 1242–45), "quality" (*id.* ¶¶ 1235, 1238), "durability" (*id.* ¶ 1238), and "reliab[ility]" (*id.* ¶ 1240).

Courts consistently find such statements constitute puffery.  *Beck v. FCA US LLC* is on point.  273 F. Supp. 3d 735 (E.D. Mich. 2017).  There, the plaintiff challenged FCA's website representations that its "objective is to ensure vehicle quality and safety"; its "vehicles meet the highest standard in terms of safety, ecological profile, driving performance and quality"; and "[t]o ensure that FCA vehicles deliver maximum safety and quality to customers over their entire life, every mechanical and electronic component, body part and trim element is rigorously tested.  The designers work with a team of researchers during the testing phase to ensure vehicles meet the highest standards in terms of safety, ecological profile, driving performance and quality."  *Id.* at 749–50 (citation omitted).  The plaintiff further challenged website representations that the vehicle at issue reflected "[d]ecades of rigorous safety, security and quality testing" and was "equipped with

1   some of the most advanced safety and security technology available."  *Id.* at 750.
2   The court dismissed the plaintiff's UCL claims on the basis that the "representations
3   regarding their vehicles' general safety, quality, reliability, or performance" all
4   "undoubtedly constitute non-actionable puffery."  *Id.*

5          The challenged representations on Defendants' websites and in their product
6   brochures are similar.  Other courts have found similar representations regarding
7   safety, quality, durability, and reliability constitute puffery.  *See, e.g.*, *Cohen v.*
8   *Subaru of Am., Inc.*, No. 20-08442, 2022 WL 721307, at *17–18 (D.N.J. Mar. 10,
9   2022) (finding that representations in "advertisements and sales brochures generally
10  promoting the 'safety,' 'dependability,' and 'reliability'" of vehicles constituted
11  puffery); *Azoulai v. BMW of N. Am. LLC*, No. 16-589, 2017 WL 1354781, at *8
12  (N.D. Cal. Apr. 13, 2017) (finding that representation that vehicle feature operated
13  "safely" was puffery because "there is nothing 'specific and measurable' about the
14  word 'safely'"); *Johnson v. FCA US LLC*, 555 F. Supp. 3d 488, 506 (E.D. Mich.
15  2021) ("Courts in this district have repeatedly held that the kind of broad, non-
16  quantifiable statements about a vehicle's safety or reliability that Plaintiffs identify
17  here are non-actionable puffery . . . ."); *In re Sony*, 758 F. Supp. 2d at 1089 (finding
18  that statements that "televisions were of 'high' or 'superior' quality" were puffery
19  and could "[]not support a claim under the UCL, FAL, or CLRA").  Because the
20  challenged representations are all puffery, to the extent the statutory consumer
21  claims are premised on affirmative misrepresentations, they should be dismissed.

22          **C.     The Challenged Representations Are Not False or Misleading.**

23          To the extent the challenged representations do not constitute puffery,
24  Plaintiffs fail to state a claim based on affirmative misrepresentations because the
25  challenged representations are not false or misleading, as they do not relate to the
26  alleged "defect."  As discussed, the challenged representations all vaguely refer to
27  "safety" (CAC ¶¶ 1234–37, 1239, 1242, 1243–45), "quality" (*id.* ¶¶ 1235, 1238),
28  "durability" (*id.* ¶ 1238), and "reliab[ility]" (*id.* ¶ 1240).  Yet Plaintiffs are alleging

1  that the vehicles are "defective" because they do not contain certain theft-prevention
2  features and are therefore allegedly susceptible to theft.  Plaintiffs challenge no
3  representations regarding the alleged defective theft-prevention features.  No
4  reasonable consumer would read the challenged representations and understand
5  them to be saying anything about the security or theft-protection features in the Class
6  Vehicles.  *See Red v. Kraft Foods, Inc.*, No. 10-1028, 2012 WL 5504011, at *3 (C.D.
7  Cal. Oct. 25, 2012) (noting that courts consistently dismiss claims alleging "that a
8  consumer will read a true statement on a package and . . . assume things about the
9  products *other than* what the statement actually says").

10     Plaintiffs' allegation that "auto thefts pose a serious safety risk to vehicle
11  owners and bystanders" does not bridge the gap.  CAC ¶ 1247; *see generally id.*
12  ¶¶ 1248–58.  Plaintiffs challenge representations that concern the safety of the
13  vehicles themselves.  Consumers undoubtedly understand safety to refer to systems
14  that protect occupants during an impact or help to avoid one altogether, such as
15  airbags or antilock brakes.  Plaintiffs do not allege the vehicles themselves are not
16  safe; rather, they allege that once a thief steals a vehicle using the series of steps
17  described in the CAC, that *thief* driving the stolen vehicle may pose a safety risk.
18  The challenged representations say nothing about that scenario.

19     Courts regularly dismiss claims premised on misrepresentations unrelated to
20  the alleged product defect.  For example, in *Deburro v. Apple, Inc.*, the plaintiffs
21  alleged that Apple made misrepresentations about laptops sold with defective logic
22  boards, which allegedly could cause the USB ports not to function or the laptops to
23  be unusable.  No. 13-784, 2013 WL 5917665, at *1 (W.D. Tex. Oct. 31, 2013).  To
24  support their fraud and DTPA claims, they "point[ed] to various Apple press releases
25  making generic comments about MacBook laptops," including "State of the Art,
26  Breakthrough, Easy Access to Connections and Ports."  *Id.* at *4.  The plaintiffs did
27  not, however, "identif[y] any representation Apple made about the logic boards or
28  even the life expectancy of the laptops generally."  *Id.*  Accordingly, the court

dismissed the DTPA claim in part on the ground that the challenged representations were "irrelevant[] because they deal[t] with aspects of the product not challenged in th[e] suit." *Id.* at *5.

Courts have dismissed affirmative misrepresentation claims for similar reasons. *See, e.g.*, *Tietsworth v. Sears, Roebuck & Co.*, No. 09-288, 2009 WL 3320486, at *8 (N.D. Cal. Oct. 13, 2009) (dismissing UCL and CLRA claims where "the alleged misrepresentations [were] not related directly" to the defective product part); *cf. Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1041 (N.D. Cal. 2021), *aff'd*, No. 21-16282, 2022 WL 1577802 (9th Cir. May 19, 2022) (dismissing fraud claims where the challenged representations were unrelated to product defect); *In re Sony*, 758 F. Supp. 2d at 1092 (finding that plaintiffs could not plead reliance for UCL, CLRA, and FAL claims where "the alleged misrepresentations . . . d[id] not relate to the claimed defect"). This Court should follow suit, as Plaintiffs have not alleged Defendants made any misrepresentations related to the purportedly "defective" theft-prevention features.

Relatedly, the affirmative misrepresentation claims fail under Rule 9(b) because Plaintiffs do not set forth "what is false or misleading" about the challenged representations and "why" they are false or misleading. *Cafasso*, 637 F.3d at 1055. Plaintiffs simply list some affirmative representations in one section of the CAC and then later in the CAC allege that Defendants made misrepresentations, but they make no attempt to describe why or how the representations are false or misleading. Thus, Plaintiffs' affirmative misrepresentation claims fail under both Rule 8 and Rule 9(b).[7]

---

[7] To the extent Plaintiffs allege Defendants affirmatively misrepresent their compliance with safety and theft-prevention standards (CAC ¶ 1246), Plaintiffs do not plausibly allege noncompliance, as discussed *infra*, § VII.

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

## IV.   Plaintiffs' Omission/Concealment-Based Claims Fail.

In their statutory consumer protection claims and common-law fraud claims, Plaintiffs allege that Defendants conceal and/or omit "material facts regarding the quality, reliability, and safety of the Class Vehicles and the Theft Prone Defect" as well as the "Theft Prone Defect" itself.  *See, e.g.*, CAC ¶¶ 1577, 1597, 1622, 1639, 2142, 2160, 3201, 3219, 3615, 3633, 3649, 4004, 4022, 4336, 4356.  As described above, Plaintiffs define the "Theft Prone Defect" as a "series of design flaws in the Class Vehicles," which include four alleged "defects." *Id.* ¶ 8.

Plaintiffs' omission/concealment-based claims fail because (1) Plaintiffs do not sufficiently specify the information they allege should have been disclosed or link the allegedly omitted information to the channels they allege should have disclosed the information, thereby violating Rule 9(b); (2) Plaintiffs do not plausibly allege Defendants had knowledge of the "Theft Prone Defect" and the alleged risks it posed at the time of sale of Plaintiffs' vehicles; (3) Plaintiffs fail to plausibly allege a duty to disclose; and (4) Plaintiffs do not plausibly plead intent.

### A.   Plaintiffs' Omission/Concealment-Based Claims Do Not Satisfy Rule 9(b).

Under Rule 9(b), omissions claims must be pleaded with particularity. *Kearns*, 567 F.3d at 1127.  Plaintiffs' omission and concealment claims fail under Rule 9(b) for two reasons.

First, Plaintiffs do not specify the information they allege should have been disclosed.  *Sims v. Kia Motors Am., Inc.* is instructive.  No. 13-1791, 2014 WL 12558251 (C.D. Cal. Oct. 8, 2014).  There, the court concluded that the plaintiffs' omissions claim failed to satisfy Rule 9(b) because the plaintiffs alleged only that the defendants "had a duty to disclose '[t]he gas tank defects described herein,' without describing more specifically what Defendants had to disclose," and therefore "fail[ed] to make clear the specifics of the omission." *Id.* at *4.  The court reasoned that the complaint "never state[d], for example, whether Defendants might

1   have discharged their duty by disclosing the described design choices (e.g., the use
2   of a plastic fuel pump service cover), whether Defendants also had to disclose that
3   these design choices created certain risks, or whether some other specific disclosure
4   was required." *Id.*

5         Here too, Plaintiffs do not specify whether Defendants should have disclosed
6   design choices, alleged increased theft risk due to design choices, or any other
7   specific information.  Other courts in the Ninth Circuit have also dismissed claims
8   under Rule 9(b) in similar circumstances.  For example, in *Browning v. Am. Honda*
9   *Motor Co.*, the plaintiffs alleged that the vehicles contained certain "design defects"
10   that caused issues when shifting gears.  549 F. Supp. 3d 996, 1001 (N.D. Cal. 2021).
11   The court found that the plaintiffs did not satisfy Rule 9(b) because, despite alleging
12   the issues caused by the "design defects," the plaintiffs had "not specifically alleged
13   the content of the omission," thereby preventing the court from being able to "tell
14   what, exactly, Plaintiffs wanted [the defendant] to disclose."  *Id.* at 1012.  And in
15   *Cadena*, where the plaintiffs alleged that an owner's guide failed to disclose that the
16   driver-assistive technology, known as "Sensing," "can fail due to the aforementioned
17   normal everyday driving conditions," the court found the plaintiffs "fail[ed] to
18   identify what information should have been disclosed" because it was "unclear what
19   Plaintiffs mean[t] by their assertion that Honda should have disclosed that 'Sensing
20   can fail.'"  2019 WL 3059931, at *13.  These cases make clear that to state an
21   omission claim under Rule 9(b), it is not enough to generally allege a defect; rather,
22   Plaintiffs must be clear about the information they claim should have been disclosed.

23         Second, Plaintiffs' "generalized allegations fail to draw a link between the
24   allegedly omitted information, and the channels through which Plaintiffs contend
25   the information should or could have been revealed."  *Pelayo v. Hyundai Motor Am.,*
26   *Inc.*, No. 20-1503, 2021 WL 1808628, at *6 (C.D. Cal. May 5, 2021).  Of the
27   Plaintiffs who allege that they reviewed any Hyundai and Kia materials, they allege
28   only that they visited the Hyundai and Kia "websites" (without alleging what

1   specifically they reviewed on those websites), saw and heard unspecified "television
2   and radio commercials" (again without specifying what they heard or saw on the
3   commercials), and viewed unspecified "billboards."[8]  CAC ¶¶ 56–57, 71, 85, 122,
4   319–20, 343, 360–61, 371, 439–40, 493–94, 505–06, 532, 546–47, 631–32, 645,
5   658, 740, 954, 970–71, 984, 1033, 1047–48, 1122, 1133, 1177–78.  The Court, thus,
6   cannot conclude that "information about a defect 'should or could have been
7   revealed,' in the materials Plaintiffs reviewed," as it is implausible for Plaintiffs to
8   allege that every section of the website and every commercial and billboard should
9   have disclosed the alleged "defect."  *Pelayo*, 2021 WL 1808628, at *6 (citation
10  omitted).

11       **B.     Plaintiffs Do Not Plausibly Plead Defendants' Knowledge.**

12       The statutory consumer deception and common-law fraud claims in the
13  Subject States require Plaintiffs to plausibly plead Defendants' knowledge of the
14  alleged defect (and falsity of representations) at the time of Plaintiffs' purchases.
15  Plaintiffs do not plausibly do so.

16       **California.**  *See Pelayo*, 2021 WL 1808628, at *6 ("[F]raudulent omission
17  and fraudulent concealment claims require [plaintiffs] to allege that Defendants had
18  knowledge of the alleged defect at the time of sale or lease."); *Wilson v. Hewlett-*
19  *Packard Co.*, 668 F.3d 1136, 1146 (9th Cir. 2012) (knowledge required for UCL,
20  CLRA, and common-law fraud claims).

21       **Florida.**  *See Myers v. Provident Life & Accident Ins. Co.*, 472 F. Supp. 3d
22  1149, 1178 (M.D. Fla. 2020) (fraud claim, including omissions claim, requires
23  knowledge of falsity).

24       **Missouri.**  *See Ellis v. Nissan N. Am. Inc.*, No. 19-750, 2020 WL 3105097, at
25  *4–5 (W.D. Mo. June 11, 2020) (dismissing fraudulent concealment and MMPA
26  omissions claims where plaintiff did not plead factual support for defendant's

27  _____
    [8] Plaintiffs Catlos and Kay allege only that they reviewed third-party publications.
28  CAC ¶¶ 112, 1162.

                                    26
    _____
              MOTION TO DISMISS CONSOLIDATED AMENDED
                 CONSUMER CLASS ACTION COMPLAINT

knowledge of brake issue and the "danger it present[ed] to drivers"); *Anderson v. Ford Motor Co.*, No. 17-3244, 2020 WL 1853321, at *2 (W.D. Mo. Feb. 14, 2020) (fraud claim, including nondisclosure claim, requires knowledge).

**New York.**  *See In re Sling Media Slingbox Advert. Litig.*, 202 F. Supp. 3d 352, 359 (S.D.N.Y. 2016) (under GBL, "a defendant's failure to reveal facts about which even it was unaware at the time will not lead to liability"); *Cummings v. FCA US LLC*, 401 F. Supp. 3d 288, 309 (N.D.N.Y. 2019) (dismissing GBL omissions claims where plaintiff had not "plausibly suggested that Defendant had knowledge of the defect before she purchased the Class Vehicle"); *Harris v. Pfizer Inc.*, 586 F. Supp. 3d 231, 241 (S.D.N.Y. 2022) (dismissing GBL and common-law fraudulent omission claims under New York law for lack of knowledge).

**Pennsylvania.**  *See Kerr v. State Farm Mut. Auto. Ins. Co.*, No. 18-309, 2018 WL 5809989, at *5 (W.D. Pa. Nov. 6, 2018) (knowledge required for UTPCPL claim); *Slippery Rock Area Sch. Dist. v. Tremco, Inc.*, No. 15-1020, 2016 WL 3198122, at *8 (W.D. Pa. June 9, 2016) (knowledge required for fraudulent omission claim).

**Texas.**  *See Deburro*, 2013 WL 5917665, at *4–5 (fraud and DTPA failure-to-disclose claims require knowledge at the time of sale); *United Tchr. Assocs. Ins. Co. v. Union Lab. Life Ins. Co.*, 414 F.3d 558, 567 (5th Cir. 2005) (under Texas law, "nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation"); *Adams v. Nissan N. Am., Inc.*, 395 F. Supp. 3d 838, 847 (S.D. Tex. 2018) (fraudulent concealment requires knowledge).

Plaintiffs do not plausibly plead Defendants were aware of the vehicles' susceptibility to theft until 2020 at the earliest and therefore do not plausibly allege knowledge of the "Theft Prone Defect" before then (if at all).  Plaintiffs allege that Defendants were aware of the "risk . . . posed" by the "Theft Prone Defect" through "(1) presale testing and Safety Standards self-certification process for Class Vehicles; (2) analyses and usage of engine immobilizers in non-Class Vehicles, their

PMP petitions, and usage of engine immobilizers in Class Vehicles sold outside the U.S. market; (3) monitoring of Class Vehicle thefts; and (4) monitoring of customer complaints, dealership records, warranty claims, and replacement parts orders." CAC ¶ 1331.   These allegations do not plausibly allege knowledge and do not specify when Defendants allegedly acquired such knowledge.

First, Plaintiffs allege "Defendants should have uncovered the 'Theft Prone Defect' through its [sic] FMVSS self-certification process and pre-sale testing." CAC at p. 232.   As an initial matter, allegations that Defendants "should have known" are insufficient to allege knowledge.   *See, e.g.*, *Sherwin v. Samsung Elecs. Am., Inc.*, No. 16-7535, 2018 WL 11216896, at *4 (N.D. Ill. Mar. 2, 2018) (allegation that defendant "should have known" of defect because it was a "manufacturer and industry leader" did not sufficiently establish knowledge); *Prudential Ins. Co. of Am. v. Jefferson Assocs., Ltd.*, 896 S.W.2d 156, 162 (Tex. 1995) (no liability for "failing to disclose what [defendant] only should have known").   Moreover, such allegations are conclusory: Plaintiffs allege generally that Defendants conduct safety and quality tests on their vehicles and conclude from that that Defendants should have discovered a "defect" that allegedly made the Class Vehicles susceptible to theft.   Plaintiffs' conclusion does not logically follow from those vague allegations.

Indeed, courts have rejected the inference that general product information demonstrates knowledge.   *See, e.g.*, *Wilson*, 668 F.3d at 1147 ("The allegation that HP, as the manufacturer, had 'access to the aggregate information and data regarding the risk of overheating' is speculative and does not suggest how any tests or information could have alerted HP to the defect."); *Grodzitsky v. Am. Honda Motor Co.*, No. 12-1142, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013) ("Plaintiffs' generalized assertion that unspecified 'pre-release testing data' and 'aggregate data from Honda dealers' fails to suggest how this information could have informed Defendant of the alleged defect at the time of sale."); *Beck*, 273 F. Supp. 3d at 753

28

1    (finding "generic allegations of . . . access to 'testing' and 'analysis' . . . insufficient

2    to support an inference that a defendant knew about a design defect at the product's

3    time of sale").

4        Second, Plaintiffs allege that "Defendants' specific knowledge concerning the

5    efficacy of engine immobilizers and their use of immobilizers in non-Class Vehicles

6    should have notified them of the Theft Prone Defect."  CAC at p. 235.  Again,

7    allegations that Defendants "should have" been aware are insufficient.  *Sherwin*,

8    2018 WL 11216896, at *4.  Furthermore, Plaintiffs cite petitions by non-party

9    HATCI, which show at most that Defendants were aware that immobilizers were a

10   possible anti-theft device.  But, as previously discussed, an immobilizer is one type

11   of theft deterrent; it is not the only one nor is it required.  *See supra*, § II.  Plaintiffs

12   do not allege Defendants were aware the Class Vehicles were particularly

13   susceptible to theft or that Defendants anticipated the methods used in the social

14   media trend.

15       Third, Plaintiffs allege that "Defendants were on notice of the Theft Prone

16   Defect from their efforts to monitor Class Vehicle thefts, which have occurred at a

17   shocking rate."  CAC at p. 238 (emphasis omitted).  Yet Plaintiffs do not actually

18   allege that Defendants engaged in any specific "efforts to monitor Class Vehicle

19   thefts" and Plaintiffs do not allege that the "publicly available" theft rate information

20   they cite showed Hyundais and Kias were stolen at rates disproportionate to their

21   sales.  The data Plaintiffs cite make clear that thefts only started noticeably

22   increasing in 2020, at the earliest, due to a social media trend.  CAC ¶¶ 9, 1354.

23   Accordingly, Plaintiffs have not shown that Defendants were aware Hyundai and

24   Kias faced any unusual susceptibility to theft *at any time*, and at most have alleged

25   that Defendants should have been aware of potential susceptibility to theft in 2020,

26   after the majority of the Class Vehicles had been manufactured and purchased.

27       Fourth, Plaintiffs allege that "Defendants knew about the Theft Prone Defect

28   from customer complaints, dealership records, warranty claims, and replacement

29

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

1   parts orders." CAC at p. 248. Yet Plaintiffs do not cite a single customer complaint,

2   dealership record, warranty claim, or replacement parts order to back up this

3   speculation. Simply alleging that Defendants would be aware of the "Theft Prone

4   Defect" if they had received related customer complaints, dealership records,

5   warranty claims, and replacement parts orders is insufficient to establish knowledge

6   and does not make clear when Plaintiffs allege Defendants acquired their knowledge.

7           **C.      Plaintiffs Do Not Plausibly Allege a Duty to Disclose.**

8           Plaintiffs also fail to plausibly allege a duty to disclose, which is required to

9   state claims for common-law fraudulent omissions/concealment in each Subject

10  State, as well as violation of the consumer protection statutes of California, Texas,

11  and Pennsylvania.

12          **California.** Claims for California common-law fraud based on

13  omissions/concealment and violation of the UCL, FAL, and CLRA require a duty to

14  disclose. *See Rodriguez v. Nissan N. Am., Inc.*, No. 22-1672, 2023 WL 2683162, at

15  *4 (C.D. Cal. Jan. 30, 2023); *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 863–65 (9th Cir.

16  2018). Under California law, "[a] duty to disclose material facts can arise in four

17  different situations: (1) when there is a fiduciary relationship between the parties;

18  (2) when the defendant had exclusive knowledge of facts unknown to the plaintiff;

19  (3) when the defendant actively conceals a material fact from plaintiff; and (4) when

20  the defendant makes partial representations while not disclosing other material

21  facts." *Rodriguez*, 2023 WL 2683162, at *5 (citing *LiMandri v. Judkins*, 52 Cal.

22  App. 4th 326, 336 (1997)); *see also Hodsdon*, 891 F.3d at 863–65 (applying

23  *LiMandri* factors to UCL, FAL, and CLRA claims).

24          "[T]he second, third, and fourth circumstances giving rise to a duty to disclose

25  'presupposes the existence of some . . . relationship between the plaintiff and

26  defendant.'" *Rodriguez*, 2023 WL 2683162, at *5 (quoting *LiMandri*, 52 Cal. App.

27  4th at 336–37). In this context, "relationship" is equivalent to a "transaction"

28  between the parties. *Id.* at *5. Thus, because Plaintiffs did not directly purchase

their vehicles from any Defendants, they cannot establish such a "relationship" and therefore cannot establish a duty to disclose. *See, e.g.*, *id.* at *5–6 (finding no duty to disclose where plaintiffs purchased vehicles from third-party sellers); *Clemente v. Mercedes-Benz USA, LLC*, No. 20-1577, 2021 WL 4539041, at *3 (C.D. Cal. June 3, 2021) (similar).

Even if a transactional or fiduciary relationship were not required to satisfy the *LiMandri* factors, the CAC is still defective.  Plaintiffs do not plausibly allege exclusive knowledge; at most they allege, based on "publicly available" information that was equally available to Plaintiffs, that Defendants became aware of the susceptibility of the Class Vehicles to theft in 2020 when thefts allegedly "skyrocketed."  CAC ¶¶ 9, 1353.  Further, Plaintiffs provide no factual support for their conclusory allegations of concealment.  Finally, Plaintiffs do not plausibly allege any partial representations.  As such, they fail to allege Defendants owed a duty to disclose under California law, and their omissions claims under California law should be dismissed.

**Florida.**   Under Florida law, fraudulent concealment and non-disclosure claims require a duty to disclose the information.  *See Sokolow v. Damico*, No. 19-80278, 2019 WL 7188563, at *3 (S.D. Fla. Dec. 26, 2019).  A duty to disclose "arises when one party has information that the other party has a right to know because of a fiduciary or other relation of trust or confidence between them."  *Id.*  Notably neither duty arises "[i]n a commercial transaction in which the parties are dealing at arm's length," as alleged here.  *Cohen*, 2022 WL 721307, at *21 (quoting *R.J. Reynolds Tobacco Co. v. Whitmire*, 260 So. 3d 536, 538–39 (Fla. Dist. Ct. App. 2018)).  Because Plaintiffs fail to allege a fiduciary or other relation of trust or confidence, their omission claims under Florida law should be dismissed.  *See Cohen*, 2022 WL 721307, at *21 (dismissing omissions fraud claims under Florida law where there was no fiduciary relationship).

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

  
**Missouri.** Nondisclosure is actionable under Missouri law only where a defendant has a duty to disclose. *Owen v. Gen. Motors Corp.*, No. 06-4067, 2007 WL 172355, at *4 (W.D. Mo. Jan. 18, 2007). "A duty to disclose arises 'either where there is a relation of trust and confidence between the parties or where one party has superior knowledge or information not within the fair and reasonable reach of the other party.'" *Id.* (quoting *Reeves v. Keesler*, 921 S.W.2d 16, 21 (Mo. Ct. App. 1996)). Plaintiffs do not allege a relation of trust and confidence, and, as with the omissions claims under California law, they fail to plausibly allege Defendants had superior knowledge. Their omissions claims under Missouri law should therefore be dismissed.

**Texas.** Nondisclosure or concealment can form a basis for a Texas fraud or DTPA claim only where a defendant has a duty to disclose. *See United Tchr. Assocs. Ins. Co.*, 414 F.3d at 566; *Palma v. Sonic Momentum VWA, L.P.*, No. 09-2974, 2010 WL 11652068, at *5 (S.D. Tex. Apr. 16, 2010). "Texas law creates a duty to disclose 'only in limited circumstances where there is a fiduciary or confidential relationship.'" *Zwerling v. Ford Motor Co.*, No. 19-3622, 2023 WL 2899524, at *6 (N.D. Cal. Apr. 10, 2023) (citation omitted). Because there is no fiduciary or confidential relationship, there is no duty to disclose under Texas law, and the omissions claims should be dismissed.

**New York.** A duty to disclose is required for New York common-law fraud claims based on omissions/concealment. *Harris*, 586 F. Supp. 3d at 241 (dismissing fraud claim premised on omissions for failure to plausibly plead duty to disclose). A duty to disclose arises where (1) the parties are in a fiduciary relationship, (2) "one party makes a partial or ambiguous statement that requires additional disclosure to avoid misleading the other party," or (3) "one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." *Id.* (citation omitted). Plaintiffs do not plausibly allege any of these circumstances. Thus, Plaintiffs cannot establish a duty to disclose under

1   New York law.

2       **Pennsylvania.**  Pennsylvania common-law and UTPCPL claims premised on

3   omissions require a duty to disclose.  *See Silverstein v. Percudani*, No. 04-1262,

4   2005 WL 1252199, at *7–9 (M.D. Pa. May 26, 2005) (dismissing UTPCPL claim

5   for failure to allege duty to disclose).  A duty to disclose requires the "existence of

6   a confidential relationship."  *Id.* at *8.  Because Plaintiffs do not plead the existence

7   of a confidential relationship between themselves and Defendants, the Pennsylvania

8   claims premised on omissions should be dismissed.  *See Cohen*, 2022 WL 721307,

9   at *24 (dismissing common-law fraudulent omissions claim under Pennsylvania law

10  for failure to plead fiduciary duty).

11      **D.    Plaintiffs Do Not Plausibly Plead Intent.**

12      To state claims under the DTPA and for common-law fraudulent

13  omission/concealment in the Subject States, Plaintiffs must plausibly plead intent to

14  defraud or conceal.  *See Rodriguez*, 2023 WL 2683162, at *4 (California: fraudulent

15  concealment claim requires that defendant "intentionally concealed or suppressed

16  the fact with the intent to defraud the plaintiff"); *Myers*, 472 F. Supp. 3d at 1178

17  (Florida: fraud, including omission claim, requires "intent to induce reliance");

18  *Anderson*, 2020 WL 1853321, at *2 (Missouri: fraud claim, including nondisclosure

19  claim, requires intent); *Harris*, 586 F. Supp. 3d at 241 (New York: fraud claim,

20  including omissions claim, requires intent); *Slippery Rock Area Sch. Dist.*, 2016 WL

21  3198122, at *8 (Pennsylvania: intent required for fraudulent omission claim);

22  *Deburro*, 2013 WL 5917665, at *3, 5 (Texas: fraud and DTPA claims require intent).

23      The CAC contains no factual support for any allegations of intent to deceive

24  at any time.  Given that Plaintiffs fail to even allege that Defendants had knowledge

25  of risks posed by the "Theft Prone Defect" until 2020 at the earliest, they

26  unquestionably fail to plausibly plead intent to deceive before then.  Although Rule

27  9(b) permits intent to be alleged "generally," the Supreme Court has made clear that

28  a plaintiff cannot "plead the bare elements of his cause of action, affix the label

1  'general allegation,' and expect his complaint to survive a motion to dismiss."  *See*

2  *Iqbal*, 556 U.S. at 687.  Plaintiffs' common-law fraud claims should all be dismissed

3  for failure to plausibly allege intent.

4  **V.      Plaintiffs Fail to State Plausible Warranty Claims.**

5          Plaintiffs' claims for breach of implied warranty of merchantability and

6  violation of the Song-Berverly Act fail because (1) Plaintiffs' vehicles were fit for

7  their ordinary purpose; and (2) Plaintiffs are not in privity with Defendants.[9]

8          **A.      The Vehicles Were Fit for Their Ordinary Purpose.**

9          To state a claim for breach of the implied warranty of merchantability in the

10  Subject States, Plaintiffs must plausibly allege that their vehicles are not fit for their

11  ordinary purpose.  *See, e.g.*, *Dack v. Volkswagen Grp. of Am.*, 565 F. Supp. 3d 1135,

12  1148 (W.D. Mo. 2021) (Missouri law); *In re Air Bag Prod. Liab. Litig.*, 7 F. Supp.

13  2d 792, 806 (E.D. La. 1998) (Texas law); *Weiss v. Gen. Motors LLC*, 418 F. Supp.

14  3d 1173, 1183 (S.D. Fla. 2019) (Florida law); *Hurley v. BMW of N. Am., LLC*, No.

15  18-5320, 2020 WL 1624861, at *7 (E.D. Pa. Apr. 2, 2020) (Pennsylvania law); *Clark

16  v. Am. Honda Motor Co.*, 528 F. Supp. 3d 1108, 1120 (C.D. Cal. 2021) (California

17  law).  The same is true under the Song-Berverly Act.  *See In re ZF-TRW Airbag

18  Control Units Prod. Liab. Litig.*, 601 F. Supp. 3d 625, 809 (C.D. Cal. 2022).

19          Plaintiffs' implied warranty claims are premised on the assertion that the Class

20  Vehicles "contained the Theft Prone Defect, lacking any anti-theft features or design

21  elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114,

22  resulting in a substantial safety hazard."  *See* CAC ¶¶ 1548, 2129, 3187, 3990, 4321.

23  Plaintiffs misunderstand the implied warranty of merchantability, which "only

24  requires that the goods sold be of a minimal level of quality," *Smith v. Apple, Inc.*,

25  583 F. Supp. 3d 554, 567 (S.D.N.Y. 2022) (citation omitted), and in this context is

26  satisfied where vehicles can provide transportation (which must be safe and reliable

27

28  [9] Plaintiffs do not assert a breach of implied warranty claim under New York law.

1   in some states).

2       **Texas, Missouri, and Florida.**  Under Texas, Missouri, and Florida law, a

3   vehicle is fit for its ordinary purpose if it can provide transportation.  *See Dack*, 565

4   F. Supp. 3d at 1148 (in Missouri, the ordinary purpose of a vehicle is to "provid[e]

5   transportation"); *In re Air Bag Prod. Liab. Litig.*, 7 F. Supp. 2d at 806 (in Texas,

6   "the ordinary purpose of an automobile is to provide transportation") (citation

7   omitted); *Weiss*, 418 F. Supp. 3d at 1183 (in Florida, "[c]ars are fit for the ordinary

8   purpose of transportation").  Plaintiffs do not and cannot allege that their vehicles

9   failed to provide transportation.  As such, they do not plausibly allege a breach of

10  the implied warranty of merchantability under Texas, Missouri, and Florida law.

11      **California and Pennsylvania.**  Under Pennsylvania law, a car is generally

12  considered merchantable if it can provide *safe* transportation.  *Hurley*, 2020 WL

13  1624861, at *7 (under Pennsylvania law, the vehicle must "operate in a safe

14  condition and [be] substantially free of defects").  In California, the ordinary purpose

15  of a vehicle is to provide "safe, reliable transportation."  *Clark,* 528 F. Supp. 3d at

16  1120.

17      Plaintiffs assert the Class Vehicles' alleged lack of certain preferred security

18  measures means that the Class Vehicles are not able to provide "safe" and "reliable"

19  transportation.  *See* CAC ¶¶ 1548, 2129, 3187, 3990, 4321.  Yet, as discussed above,

20  in the automobile context, safety, on the one hand, and security or theft prevention,

21  on the other, are not synonymous.  A vehicle's safety system includes features such

22  as airbags that protect occupants during an impact or help to avoid one altogether.

23  Although Plaintiffs allege the Class Vehicles are not as secure against theft as

24  Plaintiffs would like, they do not allege that the Class Vehicles themselves are not

25  *safe*.  And Plaintiffs only make conclusory allegations that their vehicles are not

26  reliable, which are insufficient to demonstrate that their vehicles are not

27  merchantable and therefore insufficient to plausibly allege a breach of the implied

28  warranty of merchantability under California law.  *See Gonzales v. CarMax Auto*

35

*Superstores, LLC*, No. 13-1391, 2013 WL 12207506, at *3 (C.D. Cal. Nov. 5, 2013) (finding plaintiff did not sufficiently allege that vehicle was not fit for its ordinary purpose where, "[a]part from Plaintiff's conclusory allegation that he 'feels unsafe' in the Vehicle," he did not plead any facts to "indicate that the Vehicle does not in fact provide safe and reliable transportation").

## B.   Plaintiffs Lack Privity with Defendants.

California and Florida law limit warranty claims to buyers in privity with a product seller.  *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) ("Under California Commercial Code section 2314 . . . , a plaintiff asserting breach of warranty claims must stand in vertical contractual privity with the defendant."); *Mesa v. BMW of N. Am., LLC*, 904 So. 2d 450, 458 (Fla. Dist. Ct. App. 2005) (same under Florida law).

"A buyer and seller stand in privity if they are in adjoining links of the distribution chain."  *Clemens*, 534 F.3d at 1023.  Thus, where a plaintiff purchases her vehicle from third party, such as a dealership, and not the defendant, as here, the plaintiff is not in privity with the defendant.  *See id.* (under California law, "[a]n end consumer . . . who buys from a retailer is not in privity with a manufacturer"); *Brisson v. Ford Motor Co.*, 349 F. App'x 433, 434 (11th Cir. 2009) (under Florida law, finding that plaintiff who purchased vehicle from dealership was not in privity with manufacturer).

Plaintiffs do not allege that they purchased their vehicles from Defendants. Instead, Plaintiffs attempt to avoid the privity requirement by alleging that (1) "each Hyundai and Kia dealership operates as the actual and/or apparent agent of HMA and K[A] respectively"; and (2) Plaintiffs were the intended and direct beneficiaries of the agreements between Defendants and Hyundai and Kia dealerships.  CAC ¶¶ 1469, 1472.  Those allegations are unavailing.

Allegations of an agency relationship do not discharge the privity requirement.  *Perez v. Toyota Motor Sales, U.S.A., Inc.*, No. 22-780, 2022 WL

14768831, at *4 (C.D. Cal. Oct. 25, 2022) (questioning viability of agency argument under Florida privity analysis).  Moreover, "courts have routinely recognized that auto dealerships are not the agents of manufacturers or national distributors." *Marsikian v. Mercedes-Benz USA, LLC*, No. 08-4876, 2009 WL 10673466, at *3 (C.D. Cal. Aug. 13, 2009).  *Ocana v. Ford Motor Co.* is instructive.  992 So. 2d 319 (Fla. Dist. Ct. App. 2008).  There, the court noted that to plead actual agency, the plaintiff must allege: (1) acknowledgement by the manufacturer that the dealership was acting as its agent; (2) acceptance of the undertaking by the dealership; and (3) control by the manufacturer over the dealer's day-to-day activities during the course of the agency.  *Id.* at 326.  And to plead apparent agency, the plaintiff must allege (1) a representation by the purported principal (i.e., the manufacturer); (2) reliance on that representation by the buyer; and (3) a change in position by the buyer in reliance on the representation.  *Id.*  The court found that allegations that the manufacturer exercised some control over the dealer's decisions, conduct, and training—similar to Plaintiffs' allegations here—were insufficient to establish either actual or apparent agency.  *Id.* at 326–27; *see also Stansifer v. Chrysler Motors Corp.*, 487 F.2d 59, 65 (9th Cir. 1973) (finding that courts have "consistently" held that distributorship agreements "do not create a relationship of agency, but rather one of buyer and seller[ ]").  Accordingly, because allegations of agency do not satisfy the privity requirement, and, in any event, Plaintiffs cannot plausibly allege that independent, third-party dealerships are agents of Defendants, Plaintiffs' implied warranty claims fail for lack of privity.

Plaintiffs' third-party beneficiary argument fares no better, as courts in the relevant states have rejected it as a matter of law.  *See, e.g.*, *Johnson v. Nissan N. Am., Inc.*, No. 17-517, 2018 WL 905850, at *5 (N.D. Cal. Feb. 15, 2018) ("Florida law does not recognize [the third-party beneficiary] exception"); *Miller v. Ford Motor Co.*, No. 22-1796, --- F. Supp. 3d ----, 2022 WL 3229503, at *2 (E.D. Cal. Aug. 10, 2022) (third-party beneficiary exception to privity is foreclosed under

California law).

And even if courts recognized a third-party beneficiary exception to the privity requirement, Plaintiffs do not plausibly allege that they are third-party beneficiaries.  Plaintiffs claim they "were the intended and direct beneficiaries of agreements between Defendants and their dealerships . . . because the agreements expressly were made for the direct benefit of Plaintiffs and Class members as the ultimate consumers of the Class Vehicles."  CAC ¶ 1472.  Similar conclusory allegations have been found insufficient.  *See Padilla v. Porsche Cars N. Am, Inc.*, 391 F. Supp. 3d 1108, 1119 (S.D. Fla. 2019) (if the third-party beneficiary exception exists under Florida law, "Plaintiffs' conclusory allegations—that they were the intended third-party beneficiaries of 'contacts between Porsche and its dealers' and 'Porsche's implied warranties' []—fall short of invoking this exception to the privity requirement").  Plaintiffs do not allege any facts regarding those contracts or any facts supporting their contention that the agreements were made for their benefit. *See Perez*, 2022 WL 14768831, at *3 (under Florida law, "in the manufacturer-dealership-consumer context, . . . 'in order to sustain an action instigated by a party beneficiary, the plaintiff must plead the contract which was expressly for his benefit and one under which it clearly appears that he was a beneficiary'") (citation omitted).[10]  Accordingly, Plaintiffs' implied warranty claims under California and Florida law fail for lack of privity.

**VI.**    **Plaintiffs Fail to State a Plausible Unjust Enrichment Claim.**

Plaintiffs' unjust enrichment claims fail because (1) unjust enrichment is not an independent cause of action in California and Texas; and (2) Plaintiffs do not plausibly allege that Defendants were unjustly enriched.

---

[10] Relatedly, a plaintiff may not plead around [the] privity requirement for implied warranty claims . . . by alleging that he is a third-party beneficiary simply by virtue of his status as an end user of the product."  *Oda v. DeMarini Sports Inc.*, No. 15-2131, 2017 WL 10402605, at *3 (C.D. Cal. Apr. 27, 2017) (applying California law); *In re Seagate Tech. LLC Litig.*, 233 F. Supp. 3d 776, 787 (N.D. Cal. 2017) (same).

1

2

**A.      Unjust Enrichment is Not an Independent Cause of Action In California and Texas.**

3     Plaintiffs' unjust enrichment claims fail under California and Texas law

4   because those states do not recognize a separate cause of action for unjust

5   enrichment.  *See Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir.

6   2015) ("[I]n California, there is not a standalone cause of action for 'unjust

7   enrichment,' which is synonymous with 'restitution.'"); *Tae Hee Lee v. Toyota*

8   *Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 981 (C.D. Cal. 2014) ("Under

9   California law, a claim for unjust enrichment cannot stand alone as an independent

10   claim for relief.") (citations omitted); *Taylor v. Trevino*, No. 20-393, 2021 WL

11   347566, at *4 (N.D. Tex. Feb. 2, 2021) (dismissing unjust enrichment claim at

12   motion to dismiss stage and holding that it is not an independent cause of action).

13   Accordingly, Plaintiffs' unjust enrichment claims under California and Texas law

14   should be dismissed.

15

**B.      Plaintiffs Do Not Allege That Defendants Were Unjustly Enriched.**

16     While the elements of unjust enrichment "vary state by state[]," almost all

17   states "require plaintiffs to allege that they conferred a benefit or enrichment upon

18   defendant and that it would be inequitable or unjust for defendant to accept and retain

19   the benefit." *In re Flonase Antitrust Litig.*, 692 F. Supp. 2d 524, 541 (E.D. Pa. 2010)

20   (applying Florida law); *Gerstle v. Am. Honda Motor Co., Inc.*, No. 16-4384, 2017

21   WL 2797810, at *14 (N.D. Cal. June 28, 2017) (applying California, New York,

22   Florida, and Texas law); *Webb v. Volvo Cars of N.A.*, No. 12-2394, 2018 WL

23   1470470, at *10 (E.D. Pa. Mar. 26, 2018) (applying Pennsylvania law); *Howard v.*

24   *Turnbull*, 316 S.W.3d 431, 436 (Mo. Ct. App. 2010) (applying Missouri law).

25   Plaintiffs fail to plausibly plead that Defendants have been unjustly enriched for

26   three reasons.

27

28

i.     <u>Plaintiffs Do Not State Plausible Consumer Protection Claims.</u>

Where, as here, a plaintiff asserts an unjust enrichment claim based on a defendant's retention of benefits from alleged misrepresentations or omissions, the plaintiff must plausibly state claims premised on those misrepresentations and omissions.  Indeed, courts in the remaining Subject States hold that "if an unjust enrichment claims rests on the same alleged conduct that is identified in the underlying tort claim, the unjust enrichment claim will rise or fall with the underlying tort."[11]  *O'Connor v. Ford Motor Co.*, 567 F. Supp. 3d 915, 968 (N.D. Ill. 2021) (applying Pennsylvania law); *accord American Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1178 (M.D. Fla. 2005) (applying Florida law); *In re Aftermarket Filters Antitrust Litig.*, No. 08-4883, 2010 WL 1416259, at *2 (N.D. Ill. Apr. 1, 2010) (dismissing unjust enrichment claim under New York law because Plaintiffs' underlying consumer protection claim failed); *Sheet Metal Workers Loc. 441 Health & Welfare Plan v. GlaxoSmithKline, PLC*, 737 F. Supp. 2d 380, 431 (E.D. Pa. 2010) ("A California court ruling on plaintiffs' unjust enrichment claim would look to the underlying theory for recovery, and grant or deny a motion to dismiss the unjust enrichment claim based on whether the underlying claim could proceed."); *Ellis*, 2020 WL 3105097, at *5 (noting that, under Missouri law, "unjust enrichment requires that defendant accepts or retains the benefit under circumstances which render the acceptance or retention unequitable" and therefore dismissing unjust enrichment claim where plaintiff failed to state consumer fraud claims).

Plaintiffs' unjust enrichment claims are premised on the allegation that they "would not have purchased or leased their class Vehicles, or would have paid less for them, had they known of the Theft Prone Defect at the time of purchase or lease."

---

[11] To the extent unjust enrichment can be brought as an independent cause of action in California, such a claim would also fail along with Plaintiffs' consumer protection claims.

CAC ¶¶ 1654, 2175, 3234, 3664, 4037, 4371. To plausibly plead unjust enrichment, they, thus, would have to show that Defendants misrepresented information or omitted information they were required to disclose about the "Theft Prone Defect." As discussed above, they fail to do so, requiring dismissal of their unjust enrichment claims.

ii.     Plaintiffs Did Not Purchase Their Vehicles Directly from Defendants.

Plaintiffs' unjust enrichment claims under New York, Pennsylvania, and Florida law also fail because Plaintiffs did not confer a benefit directly upon Defendants. In Pennsylvania and Florida, the "'benefit' must be conferred by the plaintiff directly—indirect benefits bestowed by third parties will not support a claim for unjust enrichment." *Schmidt v. Ford Motor Co.*, 972 F. Supp. 2d 712, 721–22 (E.D. Pa. 2013); *see also In re Flonase Antitrust Litig.*, 692 F. Supp. 2d at 544 (dismissing unjust enrichment claim under Florida law brought by "indirect purchaser" plaintiffs and recognizing that "Florida courts have indicated that in order to state a claim for unjust enrichment, the plaintiff must confer a direct benefit on the defendant"); *American Safety Ins. Serv., Inc. v. Griggs*, 959 So. 2d 322, 331 (Fla. Dist. Ct. App. 2007) ("The plaintiffs must show they directly conferred a benefit on the defendants."). Similarly, Plaintiffs cannot state an unjust enrichment claim under New York law "if the relationship between the parties is too attenuated." *Bristol Vill., Inc. v. Louisiana-Pac. Corp.*, 916 F. Supp. 2d 357, 367 (W.D.N.Y. 2013) (dismissing unjust enrichment claim because plaintiff was "not a direct purchaser . . . from [d]efendant"); *accord State ex rel. Spitzer v. Daicel Chem. Indus., Ltd.*, 42 A.D.3d 301, 304 (N.Y. App. Div. 2007) (affirming dismissal of unjust enrichment claim because "the end-users of the products . . . [were] too attenuated" from defendants).

Here, Plaintiffs do not plausibly allege that they directly conferred any direct benefit on Defendants, as they do not (and cannot) allege that they purchased or

41

leased their vehicles directly from Defendants. Courts have applied this principle to dismiss unjust enrichment claims against automobile manufacturers. For example, in *Doll v. Ford Motor Co.*, the court dismissed the plaintiffs' unjust enrichment claim under Pennsylvania law upon finding that Ford was not directly benefited by plaintiffs' used car purchases. 814 F. Supp. 2d 526, 551–52 (D. Md. 2011). The court observed that even if plaintiffs had purchased their vehicles from Ford dealerships, courts "have strongly suggested that automobile dealerships are generally not agents of automobile manufacturers in the selling of vehicles." *Id.* at 552; *see also O'Connor*, 567 F. Supp. 3d at 968 (dismissing unjust enrichment claim under New Jersey law, which also requires that the plaintiff directly confer a benefit on the defendant, because plaintiff failed to "'connect the dots' to explain how the sums paid by Plaintiffs conferred a benefit on Defendant, rather than on its dealers"). Defendants—who do not sell vehicles directly to consumers—are too attenuated from Plaintiffs who are the "end-user of the products." *State ex rel. Spitzer*, 42 A.D.3d at 304. Accordingly, Plaintiffs' unjust enrichment claims fail under Pennsylvania, Florida, and New York law for failure to plead a direct benefit.

### iii. Plaintiffs Received the Vehicles They Purchased.

Plaintiffs' unjust enrichment claim also fails under Pennsylvania law because Plaintiffs received the vehicles they purchased. *See McGrain v. C.R. Bard, Inc.*, 551 F. Supp. 3d 529, 546 (E.D. Pa. 2021) (dismissing unjust enrichment claim under Pennsylvania law because "Plaintiff acknowledge[d] that she received and used Defendants' product"); *Zafarana v. Pfizer, Inc.*, 724 F. Supp. 2d 545, 561 (E.D. Pa. 2010) (dismissing unjust enrichment claim under Pennsylvania law where complaint alleged that "Defendants misled Plaintiffs into desiring a product, which Defendants then provided to Plaintiffs in exchange for payment"); *Drumheller v. Johnson & Johnson*, No. 20-6535, 2021 WL 1853407, at *18 (E.D. Pa. May 10, 2021) (similar).

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

1  **VII.**   **Plaintiffs' UCL "Unlawful" and "Unfair" Claims Fail.**

2        Plaintiffs separately allege claims under the UCL's "unlawful" and "unfair"

3  prongs premised on allegations that (1) the Class Vehicles were "defectively

4  designed" because they did not comply with FMVSS 114; and (2) Defendants

5  misrepresented and/or omitted information related to the alleged defects.   CAC

6  ¶¶ 1616–23.

7        The "unlawful" prong of the "UCL 'borrows' violations of other laws and

8  treats them as unlawful practices independently actionable under the UCL." *Altman*

9  *v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1076 (E.D. Cal. 2012).

10        Plaintiffs ostensibly rely on a violation of FMVSS 114 to assert a violation of

11  the unlawful prong of the UCL.   *See* CAC ¶¶ 1620–21.   Plaintiffs assert that "[t]he

12  Class Vehicles do not comply with FMVSS No. 114 because they do not contain a

13  meaningful anti-theft device, such as an immobilizer or other effective anti-theft

14  features that prevent the normal activation of the vehicle's engine without a valid

15  key.   Consequently, the Class Vehicles do not contain starting systems that prevent

16  forward self mobility of the Vehicles when the key is removed."   *Id.* ¶ 1301.

17  Plaintiffs are wrong.

18        In relevant part, FMVSS 114 provides:

19        S5.1.1 Each vehicle must have a starting system which, whenever the key is

20        removed from the starting system prevents:

21            (a) The normal activation of the vehicle's engine or motor; and

22            (b) Either steering, or forward self-mobility, of the vehicle, or both.

23  49 C.F.R. 571.114(S5.1.).

24        If Plaintiffs claim the absence of an immobilizer is unlawful, Plaintiffs have

25  pleaded themselves out of Court.   As described above, and as Plaintiffs tacitly

26  acknowledge (CAC ¶ 1278), NHTSA does not require immobilizers.   It merely

27  accepts immobilizers as a substitute for the PMR requirement.   Yet that seems to be

28  the heart of the CAC.   Plaintiffs define the putative classes to include all Hyundai

and Kia vehicles without engine immobilizers, which highlights that the focus of their defect allegations is the lack of immobilizer.  They cannot establish a violation of FMVSS 114 based on the lack of immobilizers in the Class Vehicles.

To the extent Plaintiffs assert that their allegations of unlawfulness are based on more than just the lack of immobilizer, Plaintiffs misunderstand the standard. "[N]ormal activation" of an engine does not include the series of events Plaintiffs describe thieves go through to steal the Class Vehicles; rather, "normal activation" refers to reasonably anticipated scenarios.  The use of the phrase "normal activation" makes clear that the regulation does not contemplate thieves breaking a window, climbing into the vehicle through the broken window, ripping off a steering column using brute force, disassembling the ignition lock assembly, and then proceeding to turn the ignition switch with some tool.  CAC ¶¶ 1293–95.  Indeed, when FMVSS 114 was first promulgated, the Federal Highway Administrator recognized "the impossibility of constructing a system which, upon removal of the key, would prevent operation of the powerplant absolutely and in all events," and therefore, "the provisions of paragraph S3(a) of the notice were revised to require only that removal of the key must prevent normal activation of the powerplant."  33 Fed. Reg. 6,472 (Apr. 27, 1968).  In situations of "normal activation," the Class Vehicles cannot be started without a key, as removal of the key prevents steering and forward mobility. Furthermore, the purpose of FMVSS 114 is only "to decrease the likelihood that a vehicle is stolen, or accidentally set in motion," so the fact that a vehicle can potentially be stolen does not establish a violation of FMVSS 114.  49 C.F.R. 571.114(S2).

Moreover, the fact that NHTSA has not found that Defendants are in violation of FMVSS 114 confirms that Defendants' conduct is not unlawful in the context of the regulation.  If NHTSA determines that a vehicle has a safety defect or does not comply with an applicable motor vehicle safety standard, it notifies the manufacturer, and the manufacturer is required to notify owners and remedy the

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

1    defect or noncompliance.  49 U.S.C. §§ 30118, 30120.  Notably, Plaintiffs do not

2    allege that NHTSA has notified Defendants of any noncompliance or defect related

3    to the "Theft Prone Defect" or required any remedy.

4          Because Plaintiffs fail to plausibly allege that the Class Vehicles do not

5    comply with FMVSS 114, their claim under the unlawful prong of the UCL should

6    be dismissed.  *See Casey v. Gen. Motors, LLC*, No. 20-299, 2021 WL 5417041, at

7    *6 (S.D. Cal. Nov. 19, 2021) (dismissing UCL unlawful claim where plaintiff failed

8    to plausibly allege a violation of the challenged FMVSS).[12]

9          Plaintiffs' claim under the unfair prong should also be dismissed.  Courts

10   apply two tests to determine if conduct violates the UCL unfair prong in the

11   consumer context: (1) the "tethering test," which requires that the public policy

12   serving as a predicate be "tethered to specific constitutional, statutory, or regulatory

13   provisions"; and (2) the "balancing test," which "examines whether the challenged

14   business practice is immoral, unethical, oppressive, unscrupulous or substantially

15   injurious to consumers and requires the court to weigh the utility of the defendant's

16   conduct against the gravity of the harm to the alleged victim."  *Herskowitz v. Apple

17   Inc.*, 940 F. Supp. 2d 1131, 1145–46 (N.D. Cal. 2013) (citations omitted).

18   Regardless of the test this Court employs, Plaintiffs' claim under the "unfair" prong

19   fails.

20         To the extent Plaintiffs tie this claim to FMVSS 114, it fails because

21   Defendants comply with FMVSS 114, as discussed above.  *See Casey*, 2021 WL

22   5417041, at *6 (finding "GM's alleged conduct [was] not 'tethered to any underlying

23   constitutional, statutory or regulatory provision,' . . . because the Court ha[d] already

24   concluded that the SAC fail[ed] to allege facts to support an inference that GM's

25   conduct violated the Song-Beverly Act or NHTSA regulations").  Again, the purpose

26

27   _____
     [12] To the extent the UCL unlawful claim is premised on violation of the FAL, CLRA,
28   or other laws alleged in the CAC (*e.g.*, CAC ¶ 1618), it fails because, as discussed
     elsewhere, Plaintiffs do not plausibly allege any claims.

of FMVSS 114 is only "to decrease the likelihood that a vehicle is stolen, or accidentally set in motion."   49 C.F.R. 571.114(S2).   Thus, NHTSA clearly recognizes that preventing vehicle thefts altogether or making vehicles entirely theft-proof is an impossibility.  Plaintiffs, thus, also cannot plausibly base their claim on a policy argument related to FMVSS 114.

Plaintiffs also allege:

> Defendants' acts, omission, and conduct were also "unfair" because they offend public policy and constitute immoral, unethical, and unscrupulous activities that caused substantial injury, including to Plaintiffs and Class Members. The gravity of harm resulting from Defendants' conduct outweighs any potential benefits attributable to the conduct and there were reasonably available alternatives to further Defendants legitimate business interests.

CAC ¶ 1619.  These conclusory allegations are insufficient to state a claim.  *See Casey*, 2021 WL 5417041, at *6 (rejecting similar conclusory allegations).  Further, Plaintiffs acknowledge that immobilizers are available in Defendants' higher-end vehicles.  CAC ¶ 1622.  Plaintiffs, thus, had the option to purchase a vehicle equipped with an immobilizer by selecting a higher-end model, and yet made the choice not to.  And the presence (or lack of) immobilizers was never hidden from Plaintiffs—Plaintiffs do not (and cannot plausibly) argue that the Class Vehicle product brochures do not reveal whether the vehicles include immobilizers.  There is nothing immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers about charging consumers more for different vehicle trim options.  Accordingly, Plaintiffs' claim under the UCL unfair prong should also be dismissed.

## VIII.  **Plaintiffs Cannot Seek Equitable Relief.**

Even if this Court does not dismiss Plaintiffs' claims outright, it should dismiss their claims to the extent they seek restitution, an injunction, and other equitable relief.  This would require dismissal of Plaintiffs' claims for unjust enrichment and under the UCL and FAL in their entirety, as well as Plaintiffs' remaining claims to the extent they seek equitable relief.  *See generally In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 130 (2009) (UCL and FAL remedies "are

1    limited to injunctive relief and restitution"). As the Ninth Circuit has held, plaintiffs
2    cannot seek equitable relief without establishing that they lack an adequate remedy
3    at law. *See Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841 (9th Cir. 2020).
4    Several of Plaintiffs' claims permit them to recover money damages, and those
5    damages would adequately compensate them for their alleged injuries, including
6    recovery under a benefit-of-the-bargain theory and for alleged expenses they
7    incurred when their vehicles were stolen. *Sonner* accordingly bars them from
8    seeking equitable relief.

9        Courts in this Circuit have relied on *Sonner* to dismiss claims for equitable
10   relief in cases alleging defects in automobiles. *See, e.g.*, *Sweeny v. Toyota Motor
11   Sales, U.S.A., Inc.*, No. 22-949, 2023 WL 2628697, at *16 (C.D. Cal. Feb. 9, 2023)
12   (finding *Sonner* barred claims for equitable relief where plaintiffs alleged windshield
13   defect); *Hamm v. Mercedes-Benz USA, LLC*, No. 16-3370, 2022 WL 913192, at *2
14   (N.D. Cal. Mar. 29, 2022) (finding "the availability of an adequate legal remedy
15   [was] clear from the face of the SAC" where plaintiff sought "redress in the form of
16   (1) Plaintiff's out-of-pocket expenses for the repair of his vehicle and/or (2) the
17   diminution in value of his vehicle"); *Sharma v. Volkswagen AG*, 524 F. Supp. 3d
18   891, 908–09 (N.D. Cal. 2021) (finding *Sonner* barred claims for equitable relief
19   where plaintiffs alleged braking defect); *Drake v. Toyota Motor Corp.*, No. 20-1421,
20   2021 WL 2024860, at *7 (C.D. Cal. May 17, 2021) (finding *Sonner* barred claims
21   for equitable relief where plaintiffs alleged steering defect). This Court should
22   follow suit.

23       Plaintiffs claim they lost money due to Defendants' conduct, and they seek
24   money damages to make themselves whole. In light of those allegations, Plaintiffs
25   cannot plausibly allege that they lack an adequate remedy at law, and *Sonner*
26   precludes them from seeking restitution, an injunction, or other equitable relief.

27

28

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court grant their Motion and dismiss Plaintiffs' Consolidated Amended Consumer Class Action Complaint as to their claims under the laws of California, Missouri, Florida, New York, Pennsylvania, and Texas, with prejudice.


Dated:  May 1, 2023                              JENNER & BLOCK LLP


                                                 */s/ Peter J. Brennan*
                                                 Kate T. Spelman
                                                 Alice S. Kim
                                                 Madeline P. Skitzki
                                                 515 South Flower Street, Suite 3300
                                                 Los Angeles, CA  90071-2246
                                                 Telephone:  (213) 239-5100
                                                 Facsimile:  (213) 239-5199
                                                 KSpelman@jenner.com
                                                 AKim@jenner.com
                                                 MSkitzki@jenner.com

                                                 Peter J. Brennan (*pro hac vice*)
                                                 Michael T. Brody (*pro hac vice*)
                                                 JENNER & BLOCK LLP
                                                 353 North Clark Street
                                                 Chicago, IL  60654-3456
                                                 Telephone:  (312) 222-9350
                                                 Facsimile:  (312) 527-0484
                                                 PBrennan@jenner.com
                                                 MBrody@jenner.com

                                                 *Attorneys for Defendants*

MOTION TO DISMISS CONSOLIDATED AMENDED
CONSUMER CLASS ACTION COMPLAINT

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Section 5 of Order No. 1, I certify that the parties conferred in a good-faith effort to resolve the matter without court action prior to the filing of this Motion.

Dated:  May 1, 2023                    JENNER & BLOCK LLP

                                       */s/ Peter J. Brennan*
                                       Peter J. Brennan

                                       *Attorneys for Defendants*