TIMOTHY E. CARY, ESQ. (SBN 093608)
CaryT@StutmanLaw.com
DANIEL HOGAN, ESQ
HoganD@StutmanLaw.com  (*pro hac vice motion pending*)
**LAW OFFICES OF ROBERT A. STUTMAN, P.C.**
1260 Corona Pointe Court, Suite 306
Corona, California 92879
Telephone: (951) 387-4700 / Facsimile: (951) 963-1298
Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| In re: KIA and HYUNDAI IMMOBILIZER PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>ALL CASES | CASE NO. 8:22-ml-03052-JVS-KES<br>**DECLARATION OF DANIEL HOGAN AND TIMOTHY CARY** |

Daniel Hogan and Timothy E. Cary, declare under penalty of perjury as follows:

1.     We, Daniel Hogan and Timothy E. Cary, are attorneys with the Law Offices of Robert A. Stutman, P.C. ("Stutman Law").  We respectfully submit this Declaration in support of our clients' application for our appointment to a Subrogation Committee in the above referenced MDL.  Our declaration is based on our personal knowledge of the facts set forth herein, and, if called to do so, we could and would testify competently thereto.

2.     Attached hereto as **Exhibit A** is a true and correct copy of Case Management Order No. 1 signed by Judge S. Gerald Corso in *In Re: Riverwalk Fire Cases*, No. 08-23265 (Montgomery County,  2008) appointing Stutman Law as

liaison counsel on behalf of subrogated carriers.

3.      Attached hereto as **Exhibit B** is a true and correct copy of the October 23, 2014 Order appointing Daniel Hogan as interim class counsel in *Cole, et al. v. Nibco, Inc.,* Case No. 3:13-cv-07871-FLW-TJB (D. NJ 2014).

4.      Attached hereto as **Exhibit C** is a true and correct copy of the Case Management Order appointing Timothy E. Cary to the liaison committee in *California North Bay Fire Cases,* Case No. JCCP 4995 (Ca. Super. Ct., San Francisco Co.)

5.      Attached hereto as **Exhibit D** is a true and correct copy of the Case Management Order appointing Timothy E. Cary to the liaison committee in *Southern California Fire Cases,* JCCP No. 4965 (CA Super. Ct, Los Angeles Co.)

**A.      Background Information: Daniel Hogan.**

6.      I, Daniel Hogan, am admitted to practice in Pennsylvania, New Jersey, New York, the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the Eastern District of Michigan and the District of New Jersey.  I am in good standing in every Court before which I am admitted to practice and have never been subject to any disciplinary proceedings in any Court.

7.      My entire practice is devoted to litigation with a focus on prosecuting property damage actions including but not limited to the prosecution of mass tort actions involving defective products.

8.      From 1999-2002, prior to joining Stutman Law, I was an Assistant District Attorney with the Philadelphia District Attorney's Office where I litigated numerous jury trials and hundreds of bench trials.

9.      I received my Bachelor of Arts degree from Philadelphia University (f/k/a Philadelphia College of Textiles and Sciences) in 1996 and graduated from Temple University School of Law in 1999.

**Relevant Experience**

10.      *Prudential, et al. v. General Electric, et al.,* Index No. 2002-757;

*Metropolitan Property and Casualty, et al. v. International Wire, et al.,* Index No. 2003-1209; *Travelers Indemnity Company, et al. v. International Wire, et al.,* Index No. 2003-1738; *Safeco Insurance Company, et al. v. International Wire, et al.,* Index No. 2003-2528 (Saratoga County, Supreme Court, New York) (hereinafter, collectively referred to as the "Saratoga County Actions"). I served as lead counsel in the successful prosecution of a mass tort action brought on behalf of 19 different subrogated insurers in Saratoga County, New York. The Saratoga County Actions involved thousands of property damage claims that were caused by a common defect associated with rayon reinforced washing machine hoses.

11.    *United Services Automobile Association a/s/o Insureds, et al. v. Interline Brands, Inc., et al.*, Docket No.: ATL-L-845-13; *Cincinnati Insurance Company a/s/o Insureds v. Interline Brands, Inc., et al.*, Docket No.: ATL-L-1941-13; *American Mercury Insurance Company a/s/o Insureds, et al. v. Interline Brands, Inc., et al.*, Docket No.: ATL-L-1942-13; *Safeco Insurance Company of America a/s/o Insureds et al. v. Interline Brands, Inc. et al.*, Docket No.:  ATL-L-1944-13; *Erie Insurance Exchange a/s/o Insureds, et al. v. Interline Brands, Inc.*, et al., Docket No.: ATL-L-216-13; *Liberty Lloyds of Texas Insurance Company a/s/o Insureds, et al. v. Interline Brands, Inc., et al.*, Docket No.: ATL-L-219-13; *United Services Automobile Association a/s/o Mannix v. Interline Brands, Inc., et al.*, Docket No.: ATL-L-303-13; *The First Liberty Insurance Corporation a/s/o Insureds v. Interline Brands, Inc., et al.*, Docket No.: ATL-L-7652-12; *Liberty Mutual Fire Insurance Company a/s/o Insureds v. Interline Brands, Inc., et al.*, Docket No.:   ATL-L-7653-12; *ACA Insurance Company a/s/o Insureds, et al. v. Interline Brands, Inc., et al.,* Docket No.: ATL-L-000452-14; *Allstate Fire and Casualty Insurance Co., et al. v. Interline Brands, Inc., et al.,* ATL-L-001785-14; *Westfield Insurance Company a/s/o Insureds v Linx, Ltd., et al.*, Civil Action No. 12-6775 (D.N.J.); *Auto Club Indemnity Company, et al. v. Interline Brands, Inc. et al.,* Docket No. ATL-L-1137-15; *Allstate Indemnity Co., et al. v. Interline Brands, Inc., et. al.,* Docket No. ATL-L-2266-16; *Allstate Fire*

& Casualty Co., et al. v. Interline Brands, Inc. et. al., Docket No. ATL-L-763-17; Allstate Fire & Casualty Ins. Co., et al. v. Interline Brands, Inc. et al., Docket No. ATL-L-002615-17 (Atlantic Co., NJ) (hereinafter collectively referred to as the "DuraPro Supply Line Cases"). I served as lead attorney on behalf of all plaintiffs in the DuraPro Supply Line cases litigated in the Atlantic County Superior Court and the District Court for the District of New Jersey.[1] The plaintiffs in the DuraPro Supply Line Cases insured properties that contained toilets equipped with DuraPro brand water supply lines. With respect to each of the claims included in those actions, the plaintiffs contended that the DuraPro supply lines failed and caused property damage as a result of defective polymeric plastic coupling nuts.

12. *Allstate et al. v. Watts Regulator Co.,* Docket. No. 1:15-CV-13195-ABD and *Allstate et al. v. Watts Regulator Co.,* Docket No. 1:16-CV-10022-ABD (D. Ma.); *Allstate et al., v. Watts Regulator Co.,* Docket No. SUCV15-2498-BLS2 (Ma. Superior Ct., Suffolk Co.) These mass tort cases involved product defect claims related to water heater supply lines designed, manufactured and/or sold by Watts Regulator Co. (hereinafter, the "Water Heater Supply Line Cases"). In these lawsuits and related claims against Watts Regulator Co., I represented over 50 subrogated insurance companies that alleged damages related to Watts Regulator Co.'s plumbing products.

13. *Northern California Nevada & Utah Insurance Exchange, et al. v. PG&E and PG&E Corp.* Case No. CIV 514497 (Calif. Super. Ct., San Mateo County). I served as co-counsel in the complex, consolidated subrogation actions that were filed and litigated in connection with the 2010 San Bruno gas explosion and fire incident known as the "San Bruno Fire." The litigation involved damages well in excess of $100,000,000.00.

---

[1] The case filed by Westfield Insurance Company was removed on the basis of diversity jurisdiction. All other DuraPro Supply Line cases were litigated in the Atlantic County Superior Court.

14.     *In Re: Riverwalk Fire Cases*, CCP No. 08-23265 (Montgomery County, PA). Stutman Law was appointed as Liaison Counsel on behalf of all subrogated insurance carrier plaintiffs in a class action that was filed on behalf of tenants and business owners who suffered damages as a result a catastrophic fire that destroyed two condominium complexes in Montgomery County, Pennsylvania.  I was one of the lead attorneys at Stutman Law responsible for prosecuting the *Riverwalk Fire* cases and worked with class counsel to procure a $36 million out-of-court settlement within just one year of the fire.

15.     *The Harleysville Mutual Ins. Co. a/s/o Frank Riccobono v. D.A.C. Electric, Inc.,* CCP No.:  5977 CV 2007 (Monroe County, PA).  Serving as lead counsel for the plaintiff, I obtained a jury verdict and judgment in the amount of $700,000.00 against an electrical contractor who negligently caused a fire at an outlet store in Marshalls Creek, Pennsylvania.

16.     *Dennis and Eddie Benedict, individually and The Cincinnati Insurance Company, a/s/o Dennis and Eddie Benedict v. Consumers Energy Company,* Case No.: 04-04233-CK (Jackson County, MI).  Serving as lead counsel for the plaintiffs, I obtained a jury verdict and judgment in the amount of $700,000.00 against Consumers Energy for causing a gas explosion in Jackson County, Michigan. I established that the utility company had negligently responded to a gas leak and recovered 100% of the plaintiffs' damages along with taxable costs and attorney fees.

17.     *Harleysville Worcester Ins. Co. a/s/o Tolis Property Associates, LLC, et al. v. 8930 Sutphin Boulevard, LLC, et al.*, Docket Number 107144-08 (New York, NY).  Serving as lead counsel for plaintiff, I obtained summary judgment against an adjoining property owner for failing to properly underpin a commercial building during excavation operations.   I obtained summary judgment in this case after proving that the adjacent property owner had a non-delegable duty under New York law to provide lateral support to neighboring properties when excavating.   After judgment was entered against the adjacent property owner, the case settled for $1.1

million.

18.    *The Cincinnati Insurance Company a/s/o Philadelphia Academy Charter v. SJL Company, Inc., et al.,* Docket Number 00417 (Philadelphia, PA). Serving as lead counsel for plaintiff, I obtained a jury verdict and judgment for the plaintiff, a subrogated insurance company, in the amount of $1,550,000.00, following a catastrophic water damage incident at an elementary school in Philadelphia.

19.    *American Economy Insurance, et al. v. Fluidmaster*, Docket No. 30-2015-00766507-CU-MT-CXC (Calif. Super. Ct., Orange County); *Interinsurance Exchange of the Automobile Club a/s/o Jodie Bullock and Marc Goldstein v. Fluidmaster, Inc*., Docket No. 30-2014-00732761-CU-PO-CJC (Calif. Super. Ct., Orange County); *Interinsurance Exchange of the Automobile Club a/s/o Ardyce Jarvis v. Fluidmaster, Inc.*, Docket No. 37-2014-00015115-CU-PL.CTL (Calif. Super. Ct., San Diego Co.); *Erie Insurance Exchange a/s/o Insureds v. Fluidmaster, Inc.*, Docket No. 30-2015-00774506-CU-MT-CXC (Calif. Super. Ct.,  Orange Co). The preceding four actions are referred to hereinafter as the "Fluidmaster State Cases."  In the Fluidmaster State Cases, I represented 32 insurance carriers with respect to over 400 individual claims against Fluidmaster, Inc., alleging the existence of product defects within Fluidmaster's "NO-BURST" water supply lines.  *American Select Ins. Co., et al. v. Fluidmaster, Inc.,* Docket No. 8:15-cv-00073-JVS-JCG (C.D. Ca.), part of MDL captioned *In re: Fluidmaster, Inc., Water Connector Components Products Liability Litigation,* MDL Docket No. 2575 (N.D. Ill., Eastern Div.) (hereinafter, "Fluidmaster Federal MDL").  Similar to the Fluidmaster State Cases, in the Fluidmaster Federal MDL, I represented 19 insurance carriers with respect to product liability claims against Fluidmaster stemming from the "NO-BURST" water supply lines.

20.    *Megown, et al. v. Auto Club Family Ins. Co.,* Docket No. 17SL-CC01315 (Cir. Ct. Mo., St. Louis Co.)  As lead counsel for a subrogated insurer, I obtained an award of 100% of my client's damages following a bench trial.  The award amounted

STUTMAN

1    to over $700,000.00.

2        21.    *In re: Downtown Durham Explosion,* Case No. 21-CVS-1878 (Sup. Ct.

3    NC, Durham Co.).  I represented multiple insurance carriers with respect to damages

4    stemming from the 2019 catastrophic gas explosion in downtown Durham, NC.  The

5    explosion resulted in multiple injuries and millions of dollars in property damages.

6    Numerous lawsuits arising from the explosion were filed, consolidated and litigated.

7    This case is still pending.

8        22.    *GuideOne Specialty Mutual Insurance Co. v. Wolf Fire Protection, Inc.*

9    (U.S. Dist. Ct. Md., So. Div.).  I represented the insurer of a condominium building

10   that sustained substantial damage following a water damage incident caused by a

11   ruptured sprinkler pipe.  After working with top experts and overcoming significant

12   legal hurdles stemming from an AIA contract, I obtained a $3 million settlement from

13   the sprinkler pipe installation company for Stutman Law's client.

14   **B.      Background Information: Timothy E. Cary**

15       23.    I, Timothy E. Cary, am admitted to practice in the State of California;

16   the United States District Courts for the Central, Eastern, Southern and Northern

17   Districts of California; and the United States Court of Appeals for the Ninth Circuit.

18   I obtained an LL.B. from the University of Leicester in England in 1978 and was

19   admitted to the California Bar in 1980. I have been in continuous good standing in

20   every Court before which I am admitted to practice and have never been subject to

21   any disciplinary proceedings in any Court.

22       24.    My entire practice is devoted to litigation with a focus on prosecuting

23   property damage actions, including but not limited to the prosecution of mass tort

24   actions.

25       25.    From 1980-1987, I served as a prosecutor in the California Attorney

26   General's office and represented the State in over 100 appeals, including before the

27   California Supreme Court.  I also defended the State of California in numerous tort

28   and civil rights actions.

26.     From 1987-2007, I was in private practice in the State of California, litigating complex civil cases, including matters involving construction defects, personal injuries and product liability.

27.     I joined Stutman Law in 2008 and have been representing property subrogation plaintiffs for the last 15 years.

## **Relevant Experience**

28.     I have represented dozens of subrogated insurance carriers seeking recovery of tens of millions of dollars in damages following catastrophic wildfire events.  These wildfire events, which occurred throughout California and surrounding states, resulted in the following mass lawsuits against various utility companies and others, which I litigated on behalf of Stutman Law's insurance carrier clients:

    a. *California North Bay Fire Cases*, JCCP 4995 (Calif. Super. Ct., San Francisco Co.) As set forth above, I was named to the Subrogation Plaintiffs' Executive Committee for this mass action. *See* **Ex. C**, p. 9**.**

    b. *Southern California Fire Cases,* JCCP 4965 (Calif. Super. Ct., Los Angeles Co.).   As set forth above, I was named to the Subrogation Plaintiffs' Executive Committee for this mass action.  *See* **Ex. D**, p. 10.

    c. *Woolsey Fire Cases,* JCCP 5000 (Calif. Super. Ct., Los Angeles Co.)

    d. *In re Kincade Fire Cases,* JCCP 5157 (Calif. Super. Ct., San Francisco Co.)

    e. *Dixie Fire Cases,* JCCP 5208 (Calif. Super. Ct., San Francisco Co.)

    f. *In re Creek Fire Cases,* _Lead Case 18STCV03092 (Los Angeles Superior Court).

    g. *Markel American Ins. Co. v. PacificCorp,* Docket No 22CV18470 (Cir. Ct. OR, Douglas Co., 16th Dist.) (part of the "Archie Creek Wildfire Cases") (Circuit Ct of the State of Oregon for the Cty of Douglas, Sixteenth Judicial District).

    h. *Liberty Mutual Fire Ins. Co. et, al. v. EZ-Flo, International, Inc.,* Docket

No. CIV1308758 (Calif. Super. Ct., San Bernadino Co.).  In that consolidated case, I represented 30 subrogated insurance carriers with respect to over 175 product liability claims related to the defendant's flexible water supply lines.

i. *American Fire and Casualty Company, et al. v. Brasscraft Manufacturing Company, et al.,* Docket No. RIC 1905223 (Calif. Super. Ct., Riverside Co.); *California Automobile Ins. v. Brasscraft Manufacturing Co., et al.,* Docket No. RIC2002385 (Calif. Super. Ct., Riverside Co.) (collectively, the "California Brasscraft Actions").  In these consolidated mass tort actions, I represented subrogated insurance carriers with respect to hundreds of product liability claims stemming from water damage incidents caused by the defendants' water supply line products.  Other attorneys from Stutman Law litigated multiple mass tort lawsuits in jurisdictions outside California against *Brasscraft Manufacturing Co.* and others alleging the same or similar defects in the water supply line products at issue in the above referenced California Brasscraft Actions.

j. *Allstate Insurance Company et al., v. LSP Products Group, Inc.,* Docket No. 20STCV35909 (Calif. Super. Ct., Los Angeles Co.);  *California Automobile Ins. Co. et al. v. LSP Products Group, Inc.,* Docket No. 21STCV28733   (Calif. Super. Ct., Los Angeles Co.); *California Automobile Ins. Co. et al. v. LSP Products Group, Inc.,* Docket No. 22STCV29425 (Calif. Super. Ct., Los Angeles Co.).  In these mass tort actions, I am currently representing multiple subrogated insurers with respect to 71 separate water damage incidents allegedly caused by the defendant's defective water supply lines.

C.   **Stutman Law – Recent Recoveries**

29.   Stutman Law is a plaintiff's law firm with a national practice, having recovered in excess of $100 million on behalf of institutional, individual and business

clients.  Stutman Law has extensive experience litigating complex cases on behalf of individual and institutional clients.  Some recent cases litigated by Stutman Law include the following:

   a.  *Travelers Indemnity Co. v. Phillips Electronics N.A. Corporation d/b/a Phillips Lighting Company, et al.,* Docket Number CL09-2026 (Cir. Ct. Va., Virginia Beach).  A large commercial warehouse was destroyed by one of the largest fires in the city's history. After several years of litigation and discovery, Stutman Law established that the fire was caused by a defective metal halide lamp that had endured what is known in the lighting industry as a "non-passive end of life failure." Through discovery, Stutman Law established that metal halide lamp manufacturers have known about the explosive nature of metal halide lamps since the 1970's, and the technology for the development of explosion-proof bulbs has existed since the early 1990's. With this evidence, Stutman Law was able to establish that the metal halide lamp which caused the fire was defective and unreasonably dangerous because it was not explosion proof and was not accompanied by sufficient warnings regarding its propensity to explode and cause fires.  The efforts of Stutman Law in attributing liability for the cause and spread of the fire yielded a substantial recovery for its clients.

   b.  *BDI-Laguna, Inc. v. Ackerman Security, et al.,* Docket Number 04-07868-03 (Super. Ct. Ga, Gwinnett County).  After six days of trial, Stutman Law attorneys obtained a jury verdict against an alarm company in excess of $1 million.  The case resulted from an undetected burglary which caused the plaintiff to suffer a significant loss of electronic appliances.

   c.  *Travelers Property Casualty Co. of America f/k/a Travelers Indemnity Co. of Illinois a/s/o Edgewood Village Market, Inc. and McCaffrey's Commissary, Inc. v. Joseph Strong, Inc., et al.,* Docket Number 05-2174

10

(U.S. Dist. Ct., E.D. Pa). Stutman Law obtained a multi-million dollar settlement in this construction defect action involving a supermarket that was destroyed by fire.   The supermarket had been designed and constructed with an elaborate wooden façade and overhang but was not protected with sprinkler heads as required by the code.  A fire of unknown cause started in mulch underneath the overhang, spread to a bush and then to the wooden overhang and façade. Pennsylvania has a 12-year Statute of Repose for improvements to real property, and the original construction of the façade and the building occurred more than 12 years before the fire. Several design professionals and contractors did, however, perform additions and renovations less than twelve years before the fire. The designer and installer of the sprinkler system also conducted yearly inspections from the time of the original construction, up to the year of the fire. Stutman Law obtained a $4 million recovery from multiple defendants, including the supermarket's architects, general contractors, code enforcement officials and the sprinkler system installer/designer.

d. *Eagle PA Associates, L.P. v. Infinity Hardwood Floors, LLC, Lenmar, Inc. and Olson Floor Supply Co., Inc. d/b/a Olson Floor Supply of New Jersey, f/k/a New Jersey Wood Floor Supply, Inc., et al.,* Docket Number 0734 (Pa. Ct. of Comm. Pls, Philadelphia Co.) Stutman Law obtained a $5.5 million settlement in this action which arose out of a fire caused by the spontaneous combustion of sawdust and polyurethane.  In particular, dry sawdust which had been coated with polyurethane spontaneously ignited a destroyed a large commercial building in Southeastern Pennsylvania. Stutman Law was ultimately able to establish that the polyurethane product was defective because it lacked adequate warnings and the contractors who utilized the polyurethane did so in a negligent manner. The case settled at mediation, shortly before trial, after a long and

Case No. 8:22-ml-03052-JVS-KES
DECLARATION OF DANIEL HOGAN AND TIMOTHY CARY

contested litigation.

e. *Travelers Indemnity Company a/s/o Rotterdam Ventures, Inc., Scotia Industrial Park, Inc. and Distribution Unlimited, Inc. v. Tire Conversion Technologies, Inc.*, Index Number 2004-0615 (New York Sup. Ct, Schenectady Co.). Stutman law obtained a $1.25 million dollar jury verdict in this litigation which arose out of a fire that destroyed a commercial building that was leased and occupied by a tire recycling business. Stutman Law's client insured the commercial building owner, not the lessee. Though the fire was caused by unknown vandals, Stutman Law was able to establish the tire recycling business had improperly stored fire's fuel, rubber tires, against the exterior of the commercial building in violation of the New York Statewide Fire Code.

f. *Travelers Indemnity Company a/s/o Raymour and Flanigan Furniture v. Horst Construction Company, et al.*, Docket Number 2:10-cv-03889-FSH-PS (U.S. Dist. Ct. NJ). Stutman Law obtained a $700,000.00 settlement in this litigation involving water damage to a Raymour & Flanigan furniture store. In particular, the water loss occurred when a metal cap that had been affixed to an abandoned water pipe separated from the pipe and enabled large quantities of water to enter the store. The cap had failed as a result of a corrosive process known as "graphitization." Graphitization occurred in this case because the cap and associated pipe fitting were composed of dissimilar, incompatible metals. After identifying the cause of the water damage incident, Stutman Law attorneys obtained building department records for the subject building and found that a plumber had removed and capped unspecified plumbing lines inside the store approximately ten years before the loss. Stutman Law's experts subsequently performed metallurgical testing on the solder used to connect the failed cap and established that the solder was approximately ten years

old.  At the conclusion of discovery and during the final pre-trial conference, this litigation settled.

**D.     Stutman Law is Well Suited to Serve on an Insurance Subcommittee**

32.     Stutman Law is committed to devoting the resources necessary to effectively and vigorously litigate this case on behalf of its clients and similarly situated subrogated insurance carriers.  We have the resources required to litigate a large-scale, complex lawsuit such as this; our firm consists of twenty (30) attorneys and a number of experienced and capable paralegals and support staff.

33.     We are mindful of all professional time that has been and will be billed to this case, and will carefully monitor it to ensure that the case is litigated efficiently, and to avoid any duplicative or unnecessary work.


I, Daniel Hogan, declare under penalty of perjury that the foregoing is true and correct.

DATED:  May 15, 2023                              _/s/ Daniel Hogan_
                                                                      Daniel Hogan


I, Timothy E. Cary, declare under penalty of perjury that the foregoing is true and correct.

DATED:  May 15, 2023                              _/s/ Timothy E. Cary_
                                                                      Timothy E. Cary

Exhibit A

**IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY,
PENNSYLVANIA
CIVIL ACTION – LAW**

In Re: Riverwalk Fire Cases       :       No. 08-23265
                                                  Master Litigation Docket

## PROPOSED CASE MANAGEMENT ORDER NUMBER 1

By Order of the Honorable S. Gerald Corso, Judge of the Civil Trial Division of the

Court of Common Pleas of Montgomery County, Pennsylvania, all pending cases arising out of

the August 13, 2008 fire at the Stables at Millennium and Riverwalk at Millennium in

Conshohocken, Pennsylvania ("the Riverwalk Fire") are coordinated for purposes of all pre-trial

proceedings and discovery (collectively, the "Fire Cases"), to include at the present time the

following actions:

Melman et al. v. O'Neill Properties Group, et al., No. 08-23265

Mainka et al. v. O'Neill Properties Group, et al., No. 08-24705

Spry et al. v. O'Neill Properties Group, et al., No. 08-23682

Harleysville Mut. Ins. Co. et al. v. O'Neill Properties Group, et al., No. 08-24374 (Solely

for purposes of this Case Management Order, these four actions shall be referred to as the Class

Action Cases and the named Plaintiffs in the Class Action Cases will be collectively referred to

hereinafter as "Class Action Plaintiffs"),

Riverwalk Realty Co., Inc. v. Washington Street Associates V, LP, et al., No 08-28678

(the Plaintiff therein may be referred to herein as "Riverwalk Realty" and this action may

sometimes be separately referred to herein as the "Riverwalk Realty Complaint."

Law Offices of Robert A. Stutman, P.C., who is counsel for the five (5) subrogated insurance carriers in the case captioned Harleysville Mut. Ins. Co., et al. v. O'Neill Properties Group, et al., No. 08-24374, will work in conjunction with the Class Action Plaintiffs as Liaison Counsel for the subrogated insurance carrier Plaintiffs. The designation of the Law Offices of Robert A. Stutman, P.C. as liaison counsel for the subrogated plaintiffs does not apply to Plaintiff, Riverwalk Realty. Plaintiff Riverwalk Realty is represented by Christopher Konzelmann from White and Williams LLP.

In order to litigate these cases in a fashion that promotes judicial economy, minimizes resources and eliminates a duplication of efforts, the parties, including those parties named for discovery purposes only, have entered into the following Stipulation.

All parties, whether Plaintiffs or Defendants, shall be bound by this Case Management Order.

In order to achieve these objectives, Case Management Order Number 1 is entered this 2nd day of February, 2009 for the Fire Cases.

## I. FIRE CASES

### A. Master Litigation Docket

The Court has established a master litigation docket at No. 08-23265 ("Master Litigation Docket"). This Master Litigation Docket Number has been established as a depository for the filing of all pleadings, motions, Orders and other documents, common to all of the Fire Cases. Once a pleading, motion, Order or other document is filed in the Master Litigation Docket and copies are served on all interested counsel or unrepresented parties involved in the litigation, the pleading, motion and Order or other document may be incorporated by reference either orally before the Court or within another properly filed pleading, motion, Order or other document.

2

When a new case is hereafter filed arising from the Riverwalk Fire, the present parties will circulate a copy of this Order to all new counsel or directly to any unrepresented party, and consideration will be given at that time as to whether such case should be included as a Fire Case subject to the provisions of this Stipulation.

**B.    Pleadings**

1.    By January 23, 2009, the Class Action Plaintiffs shall file a Master Complaint ("Master Complaint"). The Master Complaint shall set forth each cause of action (as required by the Pennsylvania Rules of Civil Procedure) relating to the Riverwalk Fire that the Class Action Plaintiffs believe to be suitable and wish to assert against any of the Defendants relating to the Riverwalk Fire, and shall raise the specific factual basis for claims of punitive damages or fraud, if said claims exist.

2.    Filing and service of the Master Complaint shall be made upon counsel for all Defendants and directly upon all non-represented Defendant(s) on or before January 23, 2009.

3.    Defendant(s) shall jointly file Preliminary Objections to the Master Complaint and/or the Riverwalk Realty Complaint by February 23, 2009. All Preliminary Objections previously filed to the Class Action Cases or the Riverwalk Realty Complaint shall be deemed moot.

4.    If no Preliminary Objections to either the Master Complaint or the Riverwalk Realty Complaint are filed by February 23, 2009, Defendants shall file a Master Answer to each such Complaints as set forth in paragraph 9 below by April 7, 2009.

5.    If Preliminary Objections to either the Master Complaint and/or the Riverwalk Realty Complaint are filed by February 23, 2009, Plaintiffs shall have thirty (30) days to respond to Defendants' Preliminary Objections, unless the parties reach an agreement by written stipulation to extend the response time.

3

6.      The Moving Defendant(s) shall have fifteen (15) days to file a Reply
Memorandum and the Court will schedule oral argument in a reasonable time thereafter
regarding all such Preliminary Objections.

7.      In the event that the Preliminary Objections are granted as to one or more Counts
of the Master Complaint and/or the Riverwalk Realty Complaint, Plaintiffs, if so ordered, shall
file a conforming Amended Master Complaint and/or Amended Riverwalk Realty Complaint, as
the case may be, within twenty (20) days of the issuance of the Order granting the Objections.
The Court does not contemplate that any further Preliminary Objections will be filed to the
Master Complaint or the Riverwalk Realty Complaint.  Defendants are not, however, precluded
from thereafter raising with the Court any issues with respect to the legal sufficiency of either the
Amended Master Complaint or the Amended Riverwalk Realty Complaint (if one is filed) that
they deem appropriate under the circumstances and the Court shall make such further Orders as
the Court deems necessary.

8.      Following judicial disposition of the aforementioned Preliminary Objections, the
Defendants shall file a "Master Answer" to the Master Complaint (or the Amended Master
Complaint, as the case may be) and the Riverwalk Realty Complaint (or the Amended Riverwalk
Realty Complaint, as the case may be) (collectively the "Complaints") within 20 days, and all
New Matter and Affirmative Defenses available under the law shall be deemed asserted.  Each
Defendant (and Joined Defendants, if any) shall Verify that portion of the Master Answer
responding to the allegations in the Master Complaint (or Joinder Complaint) against it.

9.      All such New Matters and Affirmative Defenses shall be deemed denied by the
Plaintiffs without the necessity of filing any responses thereto.

4

10.     The Plaintiffs' Class Certification Motion, the Defendants' Response thereto and Plaintiffs' Reply to such Response shall be filed, and a hearing on the Class Certification held, in accordance with the Pennsylvania Rules of Civil Procedure.

11.     All crossclaims available under the law, including, but not limited to, common law, contractual and/or statutory, are deemed to have been raised by each Defendant as crossclaims in response to the Complaints by the filing by counsel for such Defendant of an Entry of Appearance in the Master Litigation Docket and a Verification of such Defendant to the Master Answer as set forth above and all such crossclaims shall be deemed denied by the Defendants without the necessity of filing any response thereto, without the need to so state in the Master Answer or any response thereto.

12.     The Master Complaint filed on or before January 23, 2009 will substitute for and supersede any and all Complaints previously filed in the Class Action Cases pending in the Court of Common Pleas of Montgomery County, Pennsylvania, but shall not affect the Riverwalk Realty Complaint for which the currently filed Complaint shall continue in effect subject to the filing of Preliminary Objections as set forth above.

13.     Joinder of any additional person or entity (each a "Joined Defendant") in any Fire Case (other than Design Professionals) shall be made no later than June 30, 2009. All Joined Defendants shall be deemed to have joined the Master Answer as described above upon the filing of an Entry of Appearance and Praecipe to add their Verification to the Joinder Complaint. All Defendants and Joined Defendants shall be deemed to have asserted crossclaims for common law and/or contractual contribution or indemnification against all Defendants and  Joined Defendants without the necessity of filing crossclaims. All such crossclaims shall be deemed denied without the necessity of filing a response. Any such Joinder actions filed in the Master

Litigation Docket shall be deemed asserted in each individual case filed in these coordinated proceedings. The Court may permit additional joinder for good cause.

C.     **Organization of Plaintiffs' and Defendants' Counsel**

1.     Robert Mongeluzzi is designated "Plaintiffs' Notice Counsel" ("PNC") to receive Orders and notices from the Court on behalf of all Class Action Plaintiffs. Christopher Konzelmann is designated as "Riverwalk Realty Notice Counsel" ("RRNC") to receive Orders and notices from the Court on behalf of Plaintiff Riverwalk Realty Co., Inc. F. Warren Jacoby is designated "Defendants' Notice Counsel" ("DNC") to receive Orders and notices from the Court on behalf of all Defendants. It shall be the obligation of PNC, RRNC and DNC to:

(a)     distribute to their respective constituent counsel all Orders and notices from the Court;

(b)     to confer and agree with their constituent counsel on scheduling matters relating to court hearings, depositions and deadlines affecting them generally, and upon proposed agenda items for court hearings;

(c)     to coordinate communications by, among and between their respective constituents generally relating to non-dispositive disputes or motions;

(d)     to coordinate scheduling and examination of witnesses at a deposition or hearing;

(e)     to coordinate communications with the Court concerning any requested changes in this Case Management Order.

2.     If Defendants file a single pleading or other paper directed to all Class Action Plaintiffs, the response on behalf of the Class Action Plaintiffs shall be made into a single pleading or other paper to be served by the PNC with the concurrence and participation of other Class Action Plaintiffs' counsel. Leave of Court is required before responses in a form other than a single pleading or other paper are permitted. Upon leave of Court, any party may serve a separate and distinct response, pleading or other document, as long as it is not duplicative of the position set forth in the response by the PNC on behalf of all Class Action Plaintiffs generally.

6

3.     If the Class Action Plaintiffs file a single pleading or other paper directed to all Defendants, the response on behalf of the Defendants shall be made in the single pleading or other paper to be served by the DNC with concurrence or participation of other Defendants' counsel. Upon leave of Court, any or all Defendants may serve a separate and distinct responsive pleading or other paper as long as it is not duplicative of the position set forth in the response by the DNC on behalf of all Defendants generally.

4.     If Defendants file a single pleading or other paper directed to Riverwalk Realty, the response on behalf of Riverwalk Realty shall be made into a single pleading or other paper to be served by the RRNC.

5.     If the RRNC files a single pleading or other paper directed to all Defendants, the response on behalf of the Defendants shall be made in the single pleading or other paper to be served by the DNC with concurrence or participation of other Defendants' counsel. Upon leave of Court, any or all Defendants may serve a separate and distinct responsive pleading or other paper as long as it is not duplicative of the position set forth in the response by the DNC on behalf of all Defendants generally.

6.     In the event that the Defendants join any Joined Defendants, this Case Management Order shall be amended to address any provisions of this Case Management Order to by applied to such Joined Defendants, to the extent not provided herein.

**D.     Discovery**

1.     It is the intention of the parties to work together in trying to resolve any and all discovery issues and disputes. The PNC, RRNC and DNC will meet from time to time to resolve and agree upon specific discovery issues as they arise.

2.     Discovery shall proceed throughout and after the pleading stage; provided, however, that commencing on February 23, 2009 and for forty-five (45) days thereafter, the only discovery that will be permitted shall be requests or subpoenas for the production of documents.

3.     Within ten (10) days from the date of this Case Management Order, each of the parties shall provide the other parties (through Notice Counsel) with copies of all Subpoenas issued by them to date, and identify any discoverable information and documents received by them from third parties relating to the Riverwalk Fire, whether in response to such Subpoenas or not. The documents shall then be made available to the other parties by production pursuant to the protocols set forth by the technology professionals identified in Paragraph III below.

4.     Any discovery disputes among the parties must be addressed to the Court by the filing of a letter motion with Judge Corso. Such letters and any responses thereto shall be filed in a fashion consistent with the Motion Practice Rules set forth for the Court of Common Pleas of Montgomery County and at least 10 days prior to the next monthly Case Management Conference. Any responses thereto must be submitted to the Court no later than 5 days prior to such Case Management Conference. The Court may appoint a Special Master to assist it with resolving various issues that may arise, including, but not limited to, discovery disputes, whose compensation shall be borne by the parties, and not the Court.

5.     Documents produced in response to discovery shall be directed to the party originally serving said discovery and the PNC, RRNC and DNC. All documents, drawings, photographs, videotapes and other items (excluding artifacts from the Riverwalk Fire produced in discovery, but including information obtained in response to any Subpoena Duces Tecum) shall be managed pursuant to the protocols established by the technology professionals set forth in paragraph III below.

6.     The PNC shall be responsible for the preparation of and shall serve Interrogatories and Requests for Production of Documents upon all Defendants and Joined Parties.

7.     The DNC shall be responsible for the preparation of and shall serve Interrogatories and Requests for Production of Documents to all Plaintiffs on behalf of the Defendants and Joined Defendants.

8.     Notwithstanding the foregoing, the RRNC may only serve supplemental Interrogatories and Requests for Production of Documents upon Defendants and Joined Defendants that are relevant upon the Riverwalk Realty Complaint and are not duplicative of the discovery served by the PNC. The DNC may serve Interrogatories and Requests for Production of Documents of behalf of the Defendants and Joined Defendants upon the RRNC that are relevant to the Riverwalk Realty Complaint and not duplicative of the discovery served to the PNC. The RRNC shall respond to discovery propounded by the DNC on the PNC, in addition to any discovery propounded by the DNC directly on the RRNC.

9.     Objections to Interrogatories and Document Production Requests shall be served within twenty (20) days of service of the discovery.

10.    Responses to the aforesaid discovery set forth in paragraphs 5, 6 and 7 above shall be completed forty-five (45) days from the receipt of the same, unless otherwise stipulated by the PNC, RRNC and DNC. No individual Class Action Plaintiff, without leave of Court, shall serve discovery upon any individual Defendant or Joined Defendant, and no Defendant or Joined Defendant, without leave of Court shall serve discovery upon any individual Plaintiff.

11.    All documents produced shall be bates-stamped with the identity of the party producing the documents and numbered serially.

9

12.     PNC, RRNC and DNC shall meet and confer within thirty (30) days of entry of this Order in order to develop a deposition schedule for Plaintiffs, Defendants, Joined Defendants and non-parties.

13.     The depositions of any party or non-party may be videotaped, including at the election of any attending counsel video recording of the interrogator. Any party intending to videotape a deposition shall serve the notice in accordance with the Pennsylvania Rules of Civil Procedure prior to the date therein fixed for the taking of the deposition and all of such notices and depositions shall be subject to the Pennsylvania Rules of Civil Procedure.

## II.     COMMUNICATION AMONG COUNSEL

1.     The Court recognizes that cooperation by and among Class Action Plaintiffs' counsel and by and among Defendants' counsel, and the RRNC, is essential for the orderly and expeditious resolution of this litigation. Communication of information among and between Class Action Plaintiffs' counsel and among and between Defendants' counsel shall not be deemed a waiver of the attorney/client privilege or the protection afforded attorneys' work product. The cooperative efforts so contemplated above shall not in any way be used against any Class Action Plaintiff by any Defendant or against any Defendant by any Class Action Plaintiff or Riverwalk Realty. Nothing contained in this provision shall be construed to limit the rights of any party or counsel to assert the attorney/client privilege or attorney work product doctrine. Nothing in this provision shall also extend the privilege beyond that which is normally afforded litigants. Further, nothing in this provision protects communications between persons other than those who have entered their appearance in these cases and specifically does not protect other attorneys who are not employed by the firms which have entered their appearances.

## III.   TECHNOLOGY

The parties hereby agree to utilize the court reporting services of Veritext, Inc. and/or Golkow Technologies (to be determined by the parties upon meeting with each of such vendors), who will provide offices in Philadelphia and/or Montgomery County to conduct all depositions. A document repository of all documents produced in this case pursuant to any discovery shall be established by Reliable Companies. If there is any issue as to the designation of such vendors, or as to the sharing or allocation of costs for any of the foregoing services, this shall be submitted to the Court for determination. If there is an issue as to the venue of a deposition, the attorney defending the witness may raise such objection and seek either agreement of the parties or Court intervention, as necessary.

## IV.   DEADLINES

All discovery shall be completed no later than April 16, 2010. Expert reports shall be served by all parties asserting affirmative claims requiring expert testimony by June 11, 2010. Expert reports responding to claims asserted in the June 11, 2010, reports shall be served by July 9, 2010. Rebuttal reports shall be served by July 30, 2010. Dispositive motions and supporting briefs shall be filed by August 27, 2010. Answers and briefs in opposition to any dispositive motions shall be filed by September 17, 2010. Oral argument on said motions shall be held on October 1, 2010. Trial shall commence on November 8, 2010. In advance of trial, counsel shall submit to the Court and to opposing counsel no later than October 25, 2010, the following:

(1)   A Pre-Trial Statement in conformance with Pa. R.Civ.P. 212.2(a)(1) through (6) inclusive. In addition, said statement shall set forth:

(a)   a summary of any settlement discussions;

      (b)    any anticipated unusual evidentiary issues;

      (c)    any anticipated unusual legal issues;

      (d)    any anticipated scheduling problems;

(2)    All Motions in Limine;

~~(3)    All requested Voir Dire Questions;~~

(4)    All requested Points for Charge; and

(5)    Proposed Verdict Sheet.

**Any of the above-identified materials not submitted to the Court by the deadline of October 25, 2010, shall not be considered.**

**ORDERED BY THE COURT**, this *2nd* day of *February*, 2009.

S. GERALD CORSO    J.

CC:
Robert J. Mongeluzzi, Esq.
Robert A. Stutman, Esq.
F. Warren Jacoby, Esq.
Christopher Konzelmann, Esq.
Michael R. Kehs, Esq., Court Administrator
Patricia A. Ranieri, Esq., Deputy Ct. Adminis., Civil Division
Elizabeth Catalano, Court Administration
Jackie McAllister, Court Administration

Exhibit B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

KIMBERLY COLE, ALAN COLE, and     :
JAMES MONICA, on behalf of     :
themselves and all others similarly     :
situated,     :

          Plaintiffs,     :

      vs.     :

NIBCO, Inc.,     :

         Defendant.     :

Civil Action No. 3:13-cv-07871-FLW-TJB

CLASS ACTION

RECEIVED

OCT 23 2014

AT 8:30_____M
WILLIAM T WALSH CLERK

## [~~PROPOSED~~] ORDER APPOINTING INTERIM CLASS COUNSEL

**WHEREAS,** Plaintiffs Kimberly Cole, Alan Cole, and James Monica (together, "Plaintiffs") have moved for an order appointing Joseph Sauder and Matthew Schelkopf of Chimicles & Tikellis LLP ("Chimicles & Tikellis" or "C&T"), Daniel Hogan and Michael Hopkins of Law Offices of Robert A. Stutman, P.C. ("Stutman Law"), and Bruce Greenberg of Lite DePalma Greenberg ("LDG") as Interim Co-Lead Counsel, and the appointment of an executive committee,[1] (collectively, "Interim Class Counsel"). *No opposition has been filed.*

**WHEREAS,** the Court has considered the following factors: (1) the work done by Proposed Interim Class Counsel in identifying and/or investigating potential claims in the action; (2) Proposed Interim Class Counsel's experience in handling class actions, other complex litigation, and claims of the type asserted in this action; (3) Proposed Interim Class Counsel's

---

[1] The proposed Executive Committee shall consist of Michael McShane of Audet & Partners LLP, Stewart Cohen of Cohen, Placitella & Roth, Charles LaDuca of Cuneo Gilbert & LaDuca LLP and Robert K. Shelquist of Lockridge Grindal Nauen PLLP.

        - 1 -

knowledge of the applicable law; and (4) the resources that Proposed Interim Class Counsel will commit to representing the class;

IT IS HEREBY ORDERED:

1.     Pursuant to FED. R. CIV. P. 23(g)(3), Proposed Interim Co-Lead Counsel are hereby appointed Interim Co-Lead Counsel with the sole responsibility for and authority over the following matters on behalf of all Plaintiffs in this action:

a.     Determining and presenting motions, briefs, oral argument or such other related items as may be appropriate, and the position of all of the Plaintiffs as to all matters arising during all pretrial and trial proceedings;

b.     Conducting or coordinating discovery on behalf of the Plaintiffs consistent with the Federal Rules of Civil Procedure, including the preparation of joint interrogatories, requests for production of documents, requests for admissions and the examination of witnesses in deposition;

c.     Communicating with the Court;

d.     Communicating with defense counsel;

e.     Directing, supervising and monitoring the activities of Plaintiffs' counsel and implementing procedures to ensure that schedules are met and unnecessary expenditures of time and funds by all counsel are avoided;

f.     Signing any consolidated complaint, motions, briefs, discovery requests or objections, subpoenas or notices on behalf of all Plaintiffs or those Plaintiffs filing the particular papers;

g.     Conducting all pre-trial proceedings on behalf of all Plaintiffs;

h.     Employing and consulting with experts;

      i.      Conducting settlement discussions with defense counsel on behalf of all Plaintiffs and the putative class;

      j.      Informing all Plaintiffs of the progress of this litigation as necessary; and

      k.      Otherwise coordinating the work of all Plaintiffs' counsel, and performing such other duties as necessary or as authorized by further order of this Court.

2.      Michael McShane of Audet & Partners LLP, Stewart Cohen of Cohen, Placitella & Roth, Charles LaDuca of Cuneo Gilbert & LaDuca LLP and Robert K. Shelquist of Lockridge Grindal Nauen PLLP are hereby appointed to the Executive Committee.

3.      Unless otherwise ordered by the Court upon a showing of good cause, this Order shall apply to any action filed in, transferred to, or removed to this Court, which relates to the subject matter at issue in the Action.

**IT IS SO ORDERED** on this _23rd_ day of _October_ , 2014.

_____
Hon. Freda L. Wolfson
**United States District Judge**

The Court shall conduct a teleconference in this Matter on November 3, 2014 at 11:30 a.m. Plaintiff's counsel shall arrange and initiate telecommunications.

Exhibit C

F I L E
San Francisco County Super

MAR 6 - 2018

CLERK OF THE COURT

BY: _____
Deputy Clerk

61766260
Mar 06 2018
03:18PM

E-SERVICE
File & ServeXpress

SUPERIOR COURT OF CALIFORNIA

COUNTY OF SAN FRANCISCO

| | |
|---|---|
| COORDINATION PROCEEDING SPECIAL TITLE [RULE 3.550] | Judicial Council Coordination Proceeding No.: 4955 |
| ***California North Bay Fire Cases*** | **CASE MANAGEMENT ORDER NO. 1** |

I conducted a case management conference (CMC) February 27, 2018.[1]

There are five groups in this litigation: 1) Individual Plaintiffs, which include cases brought on behalf of persons and business entities; 2) Public Entity Plaintiffs; 3) Class Action Plaintiffs (together with the Individual Plaintiffs and the Public Entity Plaintiffs the "Direct Action Plaintiffs"); 4) Subrogation Plaintiffs; and 5) Defendants.

**ORGANIZATION OF PLAINTIFFS' COUNSEL**

    **A.**    **Individual Plaintiffs**

        **1.**    **Lead Counsel for Individual Plaintiffs**

The Court appoints the following lawyers as Individual Plaintiffs' Lead Counsel for those cases:

> Michael A. Kelly
> Walkup, Melodia, Kelly & Schoenberger
> 650 California Street, 26th Floor
> San Francisco, CA 94108
> Tel: (415) 981-7210

---

[1] The Department's User Manual may be found at <http://sfsuperiorcourt.org/divisions/civil/litigation>

- 1 -

mkelly@walkuplawoffice.com

Frank Pitre
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
fpitre@cpmlegal.com

Bill Robins, III
Robins Cloud LLP
808 Wilshire Boulevard, Suite 450
Santa Monica, CA 90401
Tel.: (310) 929-4200
robins@robinscloud.com

Lead Counsel for Individual Plaintiffs shall be members of, as well as authorize and direct the work of the Plaintiffs' Executive Committee and Individual Plaintiffs' Steering Committee for cases involving Individual Plaintiffs. Individual Plaintiffs' Lead Counsel shall also be responsible for coordinating the activities of the Direct Action Plaintiffs during pretrial proceedings, and in consultation and with the assistance of the Plaintiffs' Executive Committee, shall:

a.   Appear before the Court and present the position of Individual Plaintiffs at all Case Management Conferences, Status Conferences, or other court ordered hearings;

b.   Direct and coordinate the briefing and argument of all motions directed at or brought by Direct Action Plaintiffs generally;

c.   Direct and coordinate the filing of opposing briefs and argue motions in proceedings initiated by other parties against Direct Action Plaintiffs' interests (except as to matters directed to specific individual plaintiffs and their counsel or a specific Plaintiff group);

d.   Initiate and coordinate all discovery proceedings on behalf of Direct Action Plaintiffs, including propounded general liability written discovery,

document production discovery and the taking of oral depositions;[2]

e.  Manage the selection of all cases for trial setting;

f.  Coordinate the initiation of, and conduct discovery on behalf of Direct Action Plaintiffs consistent with the requirements of the California Code of Civil Procedure and Rules of Court or any order of this Court;

g.  Assign work for the investigation and discovery of common liability and damages matters for all Direct Action Plaintiffs' counsel, and delegate specific tasks to other Direct Action Plaintiffs' counsel, in a manner to ensure that pretrial preparation for Individual Plaintiffs is conducted effectively, efficiently and economically;

h.  Enter into stipulations, on behalf of Direct Action Plaintiffs, with opposing counsel as necessary for the conduct of the litigation;

i.  Prepare and distribute to other Individual Plaintiffs' counsel periodic status reports;

j.  Perform such other duties as may be necessary to the representation of Individual Plaintiffs, proper coordination of Individual Plaintiffs' activities or authorized by order of the Court; and

k.  Submit, if appropriate, additional Individual Plaintiffs' committees and counsel for designation by the Court.

**2.   Individual Plaintiffs' Liaison Counsel**

The Court appoints the following lawyers as Individual Plaintiffs' Liaison Counsel:

> Khaldoun A. Baghdadi
> Walkup, Melodia, Kelly & Schoenberger
> 650 California Street, 26th Floor
> San Francisco, CA 94108
> Tel: (415) 981-7210
> kbaghdadi@walkuplawoffice.com

---

[2] Discovery initiated by Defendants directed to specific individual plaintiffs shall be handled by the attorney for those specific individuals.

Amy Eskin
Levin Simes LLP
44 Montgomery Street, Floor 32
San Francisco, CA 94104
Tel: (415) 426-3000
aeskin@levinsimes.com

Steven J. Skikos
Skikos, Crawford, Skikos & Joseph, LLP
One Sansome Street, Suite 2830
San Francisco, CA 94104
Tel: (415) 546-7300
sskikos@skikos.com

Liaison Counsel shall be members of the Plaintiffs' Executive Committee and have the following responsibilities:

    a.    Upon the designation of Individual Plaintiffs' Lead Counsel, appear before the Court and present the position of Individual Plaintiffs at all Case Management Conferences, Status Conferences, or other court ordered hearings;

    b.    To make available to the Court, to counsel for Individual Plaintiffs, and to counsel for Defendants an up-to-date comprehensive Service List of all Individual Plaintiffs' counsel (including the date of the most recent revision);

    c.    To receive and distribute to Individual Plaintiffs' counsel as appropriate, orders, notices and correspondence from the Court;

    d.    To maintain and make available to other Individual Plaintiffs, on reasonable notice and at reasonable times, a complete set of all filed pleadings and orders filed and/or served in these coordinated proceedings; and

    e.    To coordinate the filing of notices and papers by any Individual Plaintiff, including the designation of responsibilities to encourage the filing of a

single set of papers by the Individual Plaintiffs in situations where the
Individual Plaintiffs have a common position.

**3.** **Individual Plaintiffs' Executive Committee**

The Court appoints the lawyers and firms identified in Addendum A to the Individual
Plaintiffs' Executive Committee.  Individual Plaintiffs' Executive Committee shall have the
following responsibilities with respect to matters of common concern to all Individual Plaintiffs:

    a.    Coordination of Individual Plaintiffs' pretrial activities and work
performed by the Individual Plaintiffs' lead counsel and liaison counsel;

    b.    Calling meetings of Individual Plaintiffs' counsel when appropriate and to
consult with Individual Plaintiffs' counsel on matters of common concern;

    c.    Designating additional Individual Plaintiffs' subcommittees to perform
services on behalf of Individual Plaintiffs and designate additional
Individual Plaintiffs' counsel to serve on such subcommittees; and

    d.    When appropriate, chairing and organizing Individual Plaintiffs' sub-
committees as necessary to address specific issues of concern to claims of
Individual Plaintiffs, Subrogation Plaintiffs, Government Plaintiffs and
Class Plaintiffs.

**4.** **Individual Plaintiffs' Steering Committee**

The Court appoints the lawyers and firms identified in Addendum B to the Individual
Plaintiffs' Steering Committee.  The Individual Plaintiffs' Steering Committee shall have the
following responsibilities with respect to matters of common concern to all Individual Plaintiffs:

    a.    To meet, strategize, and provide guidance to Individual Plaintiffs' Lead
Counsel, Liaison Counsel, and Executive Committee with respect to the

direction of Individual Plaintiffs' pretrial activities and overall litigation strategy;

b.  To provide recommendations concerning the execution of Individual Plaintiffs' pretrial activities and work performed by the Individual Plaintiffs' lead counsel and liaison counsel, including the drafting of motions and opposing briefs and taking of depositions;

c.  To call meetings of Individual Plaintiffs' counsel when appropriate and to consult with Individual Plaintiffs' counsel on matters of common concern; and

d.  Serve on additional Individual Plaintiffs' subcommittees to perform services on behalf of Individual Plaintiffs and designate additional Individual Plaintiffs' counsel to serve on such subcommittees.

**B.    Public Entity Plaintiffs**

The Court appoints the following lawyer as Lead Counsel:

> Scott Summy
> Baron & Budd, P.C.
> 3102 Oak Lawn Ave #1100
> Dallas, TX 75219
> Tel: (214) 521-3605
> ssummy@baronbudd.com

Public Entities' Lead Counsel shall be responsible for responding to discovery, briefing, and argument of issues that are specific to the Public Entity cases. Public Entities' Lead Counsel shall maintain a current listing of all filed Public Entity cases and identify same for the Executive Plaintiffs Committee, Defendants and the Court. Counsel in any Public Entity cases shall cooperate with the Lead Counsel for Individual Plaintiffs, Public Entities' Lead Counsel and the Court in the production of information necessary to prepare for any status conference or in the scheduling of any discovery, or hearing.

C.    **Class Action Plaintiffs**

The Class Action committee will be formed and the Committee Chairs are identified below:

>    Elizabeth Cabraser
>    Lexi Hazam
>    Lieff Cabraser Heimann & Bernstein, LLP
>    275 Battery Street, 29th Floor
>    San Francisco, CA 94111-3339
>    Tel: (415) 956-1000
>    ecabraser@lchb.com
>    lhazam@lchb.com

The Committee shall be responsible for the prosecution and management of the class actions, including discovery, briefing, and argument of issues that are specific to the class cases. The Committee shall maintain a current listing of all filed class action cases and identify same for Lead Counsel for Individual Plaintiffs, Defendants and the Court. Counsel in any Class Action case shall cooperate with the Committee, Lead Counsel for Individual Plaintiffs and the Court in the production of information necessary to prepare for any status conference or in the scheduling of any discovery, or hearing. The Committee should evaluate consolidated complaints and  certification hearings, and report in the next CMC statement its views on the timing of these. While there is no stay of class related discovery, the Committee expects that the liability discovery described below will be used for certification briefing.

D.    **Subrogation Plaintiffs**

The Court appoints the following lawyers as Lead Counsel and Liaison Counsel for the Subrogation Plaintiffs and the Executive Committee for Subrogation Plaintiffs. They have the same duties/responsibilities within/to the Subrogation Plaintiffs group as the lawyers serving as Lead Counsel and Liaison Counsel and the Executive Committee for the Individual Plaintiffs:

1

### 1.   Lead Counsel for Subrogation Plaintiffs[3]

2

Shawn Caine
The Law Offices of Shawn E. Caine
3
1221 Camino Del Mar
Del Mar, CA 92014
4
Tel: (619) 838-1365
scaine@cainelaw.com
5

Mark Grotefeld
6
Grotefeld Hoffmann
Shepard Mountain Plaza
7
6034 West Courtyard Drive, Suite 200
Austin, TX 78730
8
Tel: (737) 226-5310
mgrotefeld@ghlaw-llp.com
9

Howard Maycon
10
Cozen O'Connor
601 S. Figueroa Street, Suite 3700
11
Los Angeles, CA 90017
Tel: (213) 892-7900
12
hmaycon@cozen.com

13
Maura Walsh Ochoa
Grotefeld Hoffmann
14
700 Larkspur Landing Circle, Suite 280
Larkspur, California 94939
15
Tel: (415) 344-9670
mochoa@ghlaw-llp.com
16

Craig Simon
17
Berger Kahn, A Law Corporation
1 Park Plaza, Suite 340
18
Irvine, CA 92614
Tel: (949) 748-4444
19
csimon@bergerkahn.com

20

21      Lead Counsel for Subrogation Plaintiffs shall be responsible for discovery, briefing, and

22   argument of issues that are specific to the Subrogation cases. Lead Counsel for the Subrogation

23   Plaintiffs shall maintain a current listing of all filed Subrogation cases and identify same for

24   Lead Counsel for Individual Plaintiffs, Defendants and the Court. Counsel in any Subrogation

25   cases shall cooperate with Lead Counsel for the Subrogation Plaintiffs, Subrogation Plaintiffs'

26   Executive Committee and the Court in the production of information necessary to prepare for

27   ───────────────────────
[3] The rights and obligations of Lead Counsel for Subrogation Plaintiffs mirror the rights and obligations of Lead Counsel for Individual Plaintiffs.

any status conference or in the scheduling of any discovery, or hearing.

        **2.**      **Liaison Counsel for Subrogation Plaintiffs**

        Alan Jang
        Jang & Associates
        1766 Lacassie Avenue, Suite 200
        Walnut Creek, CA 94596
        Tel: (925) 937-1400
        ajang@janglit.com

        Scott Loewe
        Bauman Loewe Witt & Maxwell, PLLC
        8765 East Bell Road, Suite 210
        Scottsdale, Arizona 85260
        Tel: (480) 502-4664
        sloewe@blwmlawfirm.com

        Waylon Pickett
        Grotefeld Hoffmann
        0324 SW Abernethy Street
        Portland, Oregon 97239
        Tel: (503) 384-2772
        wpickett@ghlaw-llp.com

        **3.**      **Subrogation Plaintiffs' Executive Committee**

        Mark Bauman
        Bauman Loewe Witt & Maxwell, PLLC
        8765 East Bell Road, Suite 210
        Scottsdale, Arizona 85260
        Tel: (480) 502-4664
        mbauman@blwmlawfirm.com

        Kevin Bush
        Cozen O'Connor
        601 S. Figueroa Street, Suite 3700
        Los Angeles, CA 90017
        Tel: (213) 892-7900
        kbush@cozen.com

        Tim Cary
        Stutman Law
        1260 Corona Pointe Ct., Suite 306
        Corona, CA 92879
        Tel: (951) 963-1298
        caryt@stutmanlaw.com

        Eric Schroeder
        Schroeder Loscotoff

7410 Greenhaven Dr., Ste. 200
Sacramento, CA 95831
Tel: (916) 438-8306
emschroeder@calsubro.com

## II.   DEFENDANTS' COUNSEL

Defendants are represented by Cravath, Swaine & Moore LLP, Wilson Sonsini Goodrich & Rosati and Clarence Dyer & Cohen LLP.

Evan R. Chesler,
Timothy G. Cameron
Kevin J. Orsini
Damaris Hernandez
Cravath, Swaine & Moore LLP
Worldwide Plaza
825 8th Avenue
New York, New York 10019
Tel: (212) 474-1000
echesler@cravath.com
tcameron@cravath.com
korsini@cravath.com
dhernandez@cravath.com

Keith E. Eggleton
John P. Flynn
Rodney G. Strickland
Colleen Bal
Wilson Sonsini Goodrich & Rosati
650 Page Mill Road
Palo Alto, California 94304, and
One Market Plaza, Suite 3300
San Francisco, CA 94105
Tel: (650) 493-9300
Tel: (415) 947-2000
keggleton@wsgr.com
jflynn@wsgr.com
rstrickland@wsgr.com
cbal@wsgr.com

Kate Dyer
Clarence Dyer & Cohen LLP
899 Ellis Street
San Francisco, California 94109
Tel: (415) 749-1800
kdyer@clarencedyer.com

**JURISDICTION AND WAIVER OF SERVICE OF PROCESS**

The parties agree that this court has jurisdiction over the parties and that there are no challenges to personal or subject matter jurisdiction. The parties have met and conferred and Defendants have agreed to waive service of process in cases filed in JCCP No. 4955 in which they are named. For such cases, Plaintiffs shall send the Notice of Adoption of Short Form Complaint and Short Form Complaint by email to the following individuals, Kevin J. Orsini (korsini@cravath.com), Brittany L. Sukiennik, (bsukennik@cravath.com), Keith E. Eggleton (keggleton@wsgr.com), and Rodney Strickland (rstrickland@wsgr.com) or by U.S. Mail to:

> Kevin J. Orsini
> Brittany L. Sukiennik
> Cravath, Swaine & Moore LLP
> Worldwide Plaza
> 825 8th Avenue
> New York, New York 10019-7475
>
> Keith E. Eggleton
> Rodney G. Strickland
> Wilson Sonsini Goodrich & Rosati, EC
> 650 Page Mill Road
> Palo Alto, California 94304

The parties agree that complying with these provisions shall constitute personal service of process under the California Code of Civil Procedure.

### A.     Master Pleadings

The parties agree that a Master Complaint for Individual Plaintiffs, a Master Complaint for Subrogation Plaintiffs and a Master Complaint for the Public Entity Plaintiffs shall be lodged with the Court. Corresponding Master Answers for Defendants in response to each of the three Master Complaints shall govern the pleadings for those actions.[4] Drafts of the applicable Master Complaints for the Individual Plaintiffs, Public Entity Plaintiffs and Subrogation Plaintiffs are being exchanged and will be presented to the Court.

---

[4] Subsections B, C and D do not apply to the Class Action Plaintiffs.

## B.     Challenges to Master Pleadings

The parties anticipate a single challenge to the Master Complaints concerning the applicability of inverse condemnation to a private utility.

Defendants will file that challenge on March 16, 2018. The Individual Plaintiffs' Lead Counsel (on behalf of the Direct Action Plaintiffs) and the Subrogation Plaintiffs' Lead Counsel shall each file their opposition no later than April 16, 2018. Defendants will file a single reply to both oppositions, which shall not exceed 20 pages, by April 30, 2018. The hearing is set for **May 18, 2018 at 9:00 a.m.**

## C.     Notice of Adoption of Master Complaint and Master Answer

The parties will meet and confer regarding the Notice of Adoption of Master Complaint, and Notice of Potential Add-On Cases and Request for Coordination. Plaintiffs will provide Defendants the applicable documents for review and submission to the Court. The Master Complaints shall be filed no later than March 12, 2018. The Master Answers shall be filed no later than March 16, 2018. The Master Complaints and the Master Answers will not be verified.

### 1.     Notice of Adoption of Master Complaint

Each Direct Action Plaintiff or Subrogation Plaintiff with a case already on file in JCCP No. 4955 shall serve on their respective Lead Counsel a Notice of Adoption of Master Complaint within 30 days of the date the Master Complaint is filed. The Notice of Adoption shall contain the following information: 1) the name and address of each plaintiff; 2) the fire(s) by which each plaintiff was allegedly harmed;[5] 3) the causes of action each plaintiff is joining and against which defendant(s) they are pled; and 4) the categories of damages allegedly incurred by each plaintiff and for which that plaintiff is seeking recovery and from which defendant(s).

For existing Individual Plaintiffs, the filing of a Notice of Adoption of Master Complaint

---

[5] Counsel are to agree on a naming convention for the fires.

shall not require the payment of an additional filing fee or a new case number. Each Notice of Adoption shall constitute an amended complaint for all purposes. Upon filing the Notice of Adoption, the Master Complaint, as amended by the Plaintiff's Notice of Adoption, shall be the operative pleading. The date on which the Master Complaint is filed shall have no bearing on whether any Plaintiff has satisfied the applicable statute of limitations. Rather, the date on which an individual Plaintiff's properly filed original complaint initiating his or her action was filed shall be the operative date for statute of limitations purposes.

For cases naming more than one Plaintiff, except those naming a derivative Plaintiff (e.g., an heir asserting a wrongful death claim) each Plaintiff must file an individual Notice of Adoption.[6]

### 2.   Notice of Adoption of Master Answer

The Defendants' Notice of Adoption of Master Answer must be filed within 30 days of the filing of Plaintiffs' Notice of Adoption of Master Complaint. All responses pled in PG&E's Master Answer will be deemed pled in any previously filed Complaint and Responsive Pleading now pending in this JCCP proceeding, and in any Notice of Adoption filed thereafter.

### 3.   Cases to Be Filed

Plaintiffs who have not yet filed an action will initiate an action by Filing a Short Form Complaint and Notice of Adoption of Master Complaint, in a proper venue in California. As indicated above, the Notice of Adoption shall contain the following information: 1) the name and address of each plaintiff; 2) the fire(s) by which each plaintiff was allegedly harmed; 3) the causes of action each plaintiff is joining and against which defendant(s) they are pled; and 4) the categories of damages allegedly incurred by each plaintiff and for which that plaintiff is seeking recovery and from which defendant(s).

---

[6] Members of a single household need only file one notice of adoption.

- 13 -

Upon that filing, the Master Complaint, as Amended by the Notice of Adoption, shall be the operative pleading. The date on which the Master Complaint is filed shall have no bearing on whether any Plaintiff has satisfied any applicable statute of limitations. Rather, the later date on which an individual Plaintiff properly filed the Short Form Complaint or Notice of Adoption initiating his or her action shall be the operative date for statute of limitations purposes. For any future case filed, the Plaintiff must include a civil cover sheet identifying this JCCP (California North Bay Fire Cases, JCCP No. 4955).

### D.    Adding Cases into These Coordinated Proceedings

Add-on cases may be handled by stipulation of all parties or by petition of Defendants consistent with the procedures and requirements of CRC 3.531 and C.C.P. § 404.4.

### E.    Cross-Complaints

The parties agree that Defendants may or may not file cross-complaints as they choose.

However, if a cross-complaint is not filed at the time Defendants file the Master Answers, but instead is filed by an existing Defendant at a later date, by whatever means or procedure, such later filing will not, absent good cause or as otherwise provided by the Code of Civil Procedure, constitute cause for delay of any then-existing trial date or trial.

### Discovery Phases

The parties have agreed to stage discovery. Stage One relates to: 1) liability discovery; and 2) damages discovery from Individual Plaintiffs, Public Entity Plaintiffs and Subrogation Plaintiffs. Stage Two relates to expert discovery on issues of both liability and damages and will be subject to further order of this Court.

- 14 -

**Stage One: Liability Discovery**

    **1.**    **By Direct Action and Subrogation Plaintiffs.**

Liability discovery shall be conducted as directed by Lead Counsel for the Individual Plaintiffs and Lead Counsel for Subrogation Plaintiffs. Lead Counsel for Individual Plaintiffs have informed counsel for PG&E regarding the initial round of liability discovery that includes: a set of initial Requests for Admission to elicit whether PG&E is contesting causation on the origin of each of the North Bay Fires; a Deposition notice for the person most qualified at PG&E on the general topics of how the company stores, accesses, exchanges and retrieves data on vegetation management and electrical infrastructure; and a request for inspection and/or production of photographs or recordings of any item of physical evidence related to PG&E equipment or vegetation inspected as a potential cause of a fire included in these proceedings. Direct Action Plaintiffs and Subrogation Plaintiffs may seek liability discovery concerning the origin and cause of each of the North Bay Fires:, such as vegetation management, electrical infrastructure and wildfire risk management.

Prior to serving Defendants with liability discovery, Direct Action Plaintiffs and Subrogation Plaintiffs have agreed to cooperate in good faith to coordinate such discovery. Either the Individual Plaintiffs' Lead Counsel (on behalf of Direct Action Plaintiffs) or the Subrogation Plaintiffs' Lead Counsel may serve discovery on Defendants. After liability discovery is served on Defendants, regardless of which Plaintiff group was the serving party, the Individual Plaintiffs' Lead Counsel (on behalf of Direct Action Plaintiffs) and the Subrogation Plaintiffs' Lead Counsel shall collectively meet and confer with Defendants concerning Defendants' discovery responses. Plaintiffs shall not serve duplicative or cumulative discovery on Defendants.

Should any Plaintiff or law firm after consultation with the Individual Plaintiffs' Lead Counsel and the Subrogation Plaintiffs' Lead Counsel believe that they need to propound liability discovery that has not been or will not be propounded by the Individual Plaintiffs' Lead

Counsel or the Subrogation Plaintiffs' Lead Counsel, such Plaintiff or law firm may seek an order from the Court allowing such discovery to be propounded. Otherwise, no Plaintiff may serve separate liability discovery.

### 2.     By Defendants

Defendants will serve any liability discovery directed to any specific individual Plaintiff or the Subrogation Plaintiffs on Individual Plaintiffs' Lead Counsel, Subrogation Plaintiffs' Lead Counsel and counsel of record for the specific individual plaintiff(s). Where appropriate, the Direct Action Plaintiffs or Subrogation Plaintiffs will serve Defendants with a Master Response. To the extent such discovery relates to a specific Plaintiffs' group, Defendants may serve such discovery requests on Lead Counsel for each applicable Plaintiffs' group or, in the case of the Class Action Plaintiffs, the Committee, Lead Counsel or Committee shall similarly serve Defendants with a Master Response for such group.

### Stage One: Damages Discovery

### 3.     Subrogation Plaintiffs

Damages discovery may be propounded to all Subrogation Plaintiffs in a Master Request to All Subrogation Plaintiffs. The Subrogation Plaintiffs will serve a Master Response to the Master Request to All Subrogation Plaintiffs, and each Subrogation Plaintiff will then serve an Adoption of the Master Response in Full or in Part. If the response adopts "in Part", the responding Subrogation Plaintiff will set forth any answers that are different from the Master Response in the Adoption. These Adoptions will be verified by each responding Subrogation Plaintiff.

The Subrogation Plaintiffs will set forth a list of claims for which they are seeking reimbursement. The Subrogation Plaintiffs will provide to Defendants an updated list of the names, addresses, dates of loss, claim numbers, the amounts paid by Subrogation Plaintiffs and

open reserves (as that information is available) as to each of the subrogated claims for which they are seeking reimbursement (hereinafter the "List of Claims") not later than June 30, 2018. The Subrogation Plaintiffs will provide an updated List of Claims at least on a quarterly basis, or more frequently as necessary to advise Defendants of additional payments made on any claims, and/or as reasonably requested by the Defendants. In any event, Subrogation Plaintiffs will provide a final List of Claims to Defendants on or before October 31, 2020 (prior to the statute of limitations), which will constitute the final list of claims to be included in the litigation.[7] The original and/or any amended adoption complaint filed by the Subrogation Plaintiffs will be deemed to set forth all of the information in the List of Claims provided to Defendants pursuant to this order. Any claims not disclosed by the Subrogating Plaintiffs on or before October 31, 2020, will be barred by statute.

The parties agree that the Lists of Claims provided by the Subrogation Plaintiffs will not be admissible in evidence unless the Defendants later reach an agreement with the Subrogation Plaintiff that prepared the List of Claims that the List of Claims is admissible.

The Subrogation Plaintiffs will produce claim files on a rolling basis. The parties will meet and confer regarding a schedule and protective order to govern the production of claim files and will report back to the Court on this issue in the next joint CMC statement. The Subrogation Plaintiffs will continue to produce on a rolling basis any supplements to the claim files as required to update Defendants on any additional payments made on the claims following the production of the claim files. Defendants will also be notified of additional payments on any of the claims by the Subrogating Plaintiffs by the periodic production of an updated List of Claims. Claim files may be requested sooner for any Plaintiff claiming a preference or on a case-by-case basis, and Subrogation Plaintiffs will make every effort to produce such claim files within 15 days of a request.

---

[7] This is not an implication that trials be delayed until after this date.

### 4.     Individual Plaintiffs

Each individual plaintiff shall complete the Notice of Adoption of Master Complaint which contains specific facts regarding the case. All other damages case specific discovery is stayed including any written discovery, contention discovery, or deposition discovery until further order of the court and as contemplated by sections below relating to bellwether trial settings and preference trial settings.

**Privileged Communications**

Pursuant to the parties' agreement, the communication, transmission, or dissemination of information of common interest among Plaintiffs' counsel or among Defendants' counsel shall be protected by the attorney-client privilege, the protections afforded by the attorney work product doctrine, the protections afforded to material prepared for litigation or any other privilege to which a party may otherwise be entitled. Further, cooperative efforts shall not in any way be used against any of the parties, be cited as purported evidence of conspiracy, wrongful action or wrongful conduct, and shall not be communicated to any jury.

**Trial**

*Preferential Trial Settings*: The Plaintiffs anticipate that it may be appropriate to file motions for preferential trial settings per C.C.P. § 36.

*Bellwether Process*: The parties have agreed to meet and confer on the scope and procedure relating to any potential bellwether process, including a bellwether case selection process, case specific discovery and law and motion practice in bellwether and non-bellwether cases, if any, and the conduct of bellwether trials. The parties contemplate that if they agree upon a bellwether process, an order of this Court relating to the bellwether process will include: trial settings and the bellwether selection process, discovery and motion practice appropriate for

bellwether selected cases, and whether or not motion practice may be appropriate to cases outside of those selected as bellwethers.

*Jury or Non-Jury*: Plaintiffs demand jury trials.

*Trial Date*: Trial dates and length, and close of discovery dates will be set in future case management conferences.

*Place of Trial*: Complaints in this matter have been filed in the Superior Court of Napa, Sonoma, and San Francisco. Locations of trials are reserved for future consideration.

**Pro Hac Vice Admissions:**

A number of counsel have been admitted *pro hac vice* in the underlying cases now coordinated in this JCCP. Such counsel are deemed admitted for all purposes in this JCCP and all current and future actions coordinated in this JCCP.  Counsel not yet been admitted *pro hac vice* shall file his or her *pro hac vice* application with this Court.

*Protective Order*:  The parties are expected to present a proposed stipulated protective order within 30 days. I ask the parties to review the Department's User Manual especially on sealing issues, and to resist the urge to over-designate under the protective order.

**Next Case Management Conference**

A date will be selected for the next CMC at the May 18, 2018 hearing. In addition to issues noted above, the parties are invited to advise on (1) the status of a discovery plan, including discovery focused on e.g., (i)  PG&E policies and actions and (ii) causes and circumstances of ignitions; (2) whether a cut-off date for the addition of new parties should be set (which could be avoided on a showing that  new information supported leave of court to add

1

2

the party); a general description of the discovery required for meaningful settlement discussions,

and the likely time needed to acquire it.

3

4

Dated: March 6, 2018

5

6

Curtis E.A. Karnow

Judge Of The Superior Court

*Addendum A – Individual Plaintiffs' Executive Committee*

Individual Plaintiffs request that the Court appoint the following attorneys and firms to the Executive Committee:

Mary Alexander
Mary Alexander & Associates, P.C.
44 Montgomery Street, Suite 1303
San Francisco, CA 9410 I
Tel: (415) 433-4440
malexander@maryalexanderlaw.com

Thomas Brandi
The Brandi Law Firm
354 Pine St. Floor, 3rd floor
San Francisco, CA 94104-3231
Tel (415) 989-1800
tjb@brandilaw.com

Elizabeth Cabraser
Lexi Hazam
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
ecabraser@lchb.com
lhazam@lchb.com

Steven M. Campora
Dreyer Babich Buccola Wood Campora LLP
20 Bicentennial Circle
Sacramento, CA 95826
Tel: (916) 379-3500
scampora@dbbwc.com

Ahmed S. Diab
Dixon Diab & Chambers LLP
501 W. Broadway, Suite 800
San Diego, CA 92101
Tel: (619) 354-2662
diab@theddcfirm.com

Amy Eskin **(Co-Liaison)**
Levin Simes LLP
44 Montgomery Street, Floor 32
San Francisco, CA 94104
Tel: (415) 426-3000
aeskin@levinsimes.com

Dario de Ghetaldi
Corey, Luzaich, de Ghetaldi & Riddle LLP
700 El Camino Real
Millbrae, CA 94030
Tel: (650) 871-5666
deg@coreylaw.com

Michael A. Kelly **(Co-Lead)**
Khaldoun A. Baghdadi **(Co-Liaison)**
Walkup, Melodia, Kelly & Schoenberger
650 California Street, 26th Floor
San Francisco, CA 94108
Tel: (415) 981-7210
mkelly@walkuplawoffice.com
kbaghdadi@walkuplawoffice.com

Brendan M. Kunkle
Michael Green
Abbey, Weitzenberg, Warren & Emery
100 Stony Point Rd, Suite 200
Santa Rosa, CA 95401
Tel: (707) 542-5050
bkunkle@abbeylaw.com
mgreen@abbeylaw.com

Brian Panish
Rahul Ravipudi
Panish Shea & Boyle, LLP
11111 Santa Monica Blvd. #700
Los Angeles, CA 90025
Tel: (310) 477-1700
panish@psblaw.com
ravipudi@psblaw.com

Frank Pitre **(Co-Lead)**
Cotchett, Pitre & McCarthy, LLP
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
fpitre@cpmlegal.com

Bill Robins III **(Co-Lead)**
Robins Cloud, LLP
808 Wilshire Boulevard, Suite 450
Santa Monica, CA 90401
Tel: (310) 929-4200
robins@robinscloud.com

1

1 | Mark Robinson
Robinson Calcagnie, Inc.
2 | 19 Corporate Plaza Dr.
Newport Beach, CA 92660
3 | Tel: (949) 720-1288
mrobinson@robinsonfirm.com
4 |
Steve Skikos (**Co-Liaison**)
5 | Greg Skikos
Matt Skikos
6 | Skikos, Crawford, Skikos & Joseph, LLP
One Sansome Street, Suite 2830
7 | San Francisco, CA 94104
Tel: (415) 546-7300
8 | sskikos@skikos.com
gskikos@skikos.com
9 | mskikos@skikos.com

Scott Summy (**Lead for Public Entities**)
Baron & Budd
N 7000 Mopac Service Road #200
Austin, TX 78731
Tel: (214) 521-3605
ssummy@baronbudd.com

10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

2

1  ***Addendum B – Individual Plaintiffs' Steering Committee***

2       Individual Plaintiffs request that the Court create and name the following individuals to a

3  Steering Committee:

4  Elliot Adler
  Adler Law Group, APLC
5  402 W. Broadway, Suite 860
  San Diego, CA 92101
6  Tel: (619) 531-8700
  eadler@theadlerfirm.com

7

8  Michael Caddell
  Cynthia Chapman
  Caddell & Chapman
9  628 E. 9th Street
  Houston, TX 77077
10 Tel: (713) 751-0400
  mac@caddellchapman.com
11 cbc@caddellchapman.com

12 Don Edgar
  Edgar Law Firm
13 408 College Avenue
  Santa Rosa, CA 95401
14 Tel: (707) 799-4090
  don@classattorneys.com

15

16 Dave Fox
  Fox Law, APC
  Plaza Building
17 225 West Plaza Street, Suite 102
  Solana Beach, CA 92075
18 Tel: (858) 256-7616
  dave@foxlawapc.com
19
  Sean Higgins
20 Andrews & Thornton
  2 Corporate Park, Suite 110
21 Irvine, California 92606
  Tel: (949) 748-1000
22 shiggins@andrewsthornton.com

23 John F. McGuire
  Thorsnes Bartolotta McGuire, LLP
24 2550 Fifth Avenue, 11th Floor
  San Diego, CA 92103
25 Tel: (619) 236-9363
  mcguire@tbmlawyers.com

26

27

28

Patrick McNicholas
McNicholas & McNicholas, LLP
10866 Wilshire Blvd., Suite 1400
Los Angeles, CA 90024
Tel: (310) 474-1582
pmc@mcnicholaslaw.com

Francis O. Scarpulla
Law Offices of Francis O. Scarpulla
456 Montgomery Street, 17th Floor
San Francisco, CA 94104
Tel: (415) 788-7210
fos@scarpullalaw.com

Christopher Sieglock
Sieglock Law, APC
1221 Camino Del Mar
Del Mar, CA 92014
Tel: (858) 793-0380
chris@sieglocklaw.com

Gerald Singleton
Singleton Law Firm
115 Plaza St
Solana Beach, CA 92075
Tel: (760) 697-1330
gerald@slffirm.com

Terry L. Singleton
Terry Singleton, APC
1950 5th Avenue, Suite 200
San Diego, CA 92101-2344
Tel: (619) 239-3225
terry@terrysingleton.com

Tom Tosdal
777 South Highway 101, Suite 215
Solana Beach, CA 92075
Tel: (858) 704-4709
tom@tosdallaw.com

Mikal C. Watts
Guy Watts
Watts Guerra LLP
5726 W. Hausman Rd, Suite 119
San Antonio, Texas
Tel: (210) 527-0500
mcwatts@wattsguerra.com
gwatts@wattsguerra.com

1

Ben Wilson
Morgan & Morgan, PLLC
4450 Old Canton Rd. Suite 200
Jackson, MS 39211
Tel: (601) 949-3388
BWilson@ForThePeople.com

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ADDENDUM B - PLAINTIFFS' STEERING COMMITTEE - JCCP No. 4955

**CERTIFICATE OF ELECTRONIC SERVICE**
(CCP 1010.6(6) & CRC 2.260(g))

I, DANIAL LEMIRE, a Deputy Clerk of the Superior Court of the County of San Francisco, certify that I am not a party to the within action.

On        MAR 6 – 2018        , I electronically served THE ATTACHED DOCUMENT via File & ServeXpress on the recipients designated on the Transaction Receipt located on the File & ServeXpress website.

Dated:

MAR 6 – 2018

T. Michael Yuen, Clerk

By: _____
DANIAL LEMIRE, Deputy Clerk

Exhibit D

Rec'd Room 109

JUL 1 0 2018

**FILED**
Superior Court of California
County of Los Angeles

JUL 11 2018

Sherri R. Carter, Executive Officer/Clerk
By _____ Deputy
Jeannine Lorenz

SUPERIOR COURT OF THE STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

By Fax

| | |
|---|---|
| Coordination Proceeding<br>Special Title (Rule 3.550)<br><br>SOUTHERN CALIFORNIA FIRE CASES | Case No. JCCP No. 4965<br>[Honorable Daniel Buckley – Room 222]<br><br>[PROPOSED] CASE MANAGEMENT<br>ORDER NO. 1<br><br>Date:      July 5, 2018<br>Time:      1:45 p.m.<br>Dept.:     Stanley Mosk, Room 222 |

The Court conducted a case management conference ("CMC") on July 5, 2018, which included representatives of the four groups who are parties to this proceeding: (1) Individual Plaintiffs, which include cases brought on behalf of persons and business entities, including class cases; (2) Subrogation Plaintiffs; (3) Public Entity Plaintiffs; and (4) Defendants.

**I.     LEADERSHIP STRUCTURE**

    **A.     Individual Plaintiffs**

        **1.     Lead Counsel for Individual Plaintiffs.**

Individual Plaintiffs, which include cases brought on behalf of persons and business entities, including class cases, have proposed that the Court appoint the following lawyers as Individual Plaintiffs' Lead Counsel for those cases. The Court hereby appoints the following lawyers as Individual Plaintiffs' Lead Counsel for cases involving Individual Plaintiffs:

1583293.15

Brian Panish
Rahul Ravipudi
Panish, Shea & Boyle LLP
11111 Santa Monica Blvd., Ste 700
Los Angeles, CA 90025
Tel.: (310) 477-1700
panish@psblaw.com
ravipudi@psblaw.com

Robert Nelson
Lexi Hazam
Lieff Cabraser Heimann & Bernstein, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111-3339
Tel: (415) 956-1000
rnelson@lchb.com
lhazam@lchb.com

Lead Counsel for Individual Plaintiffs shall be members of, as well as authorize and direct the work of the Plaintiffs' Executive Committee for cases involving Individual Plaintiffs. Individual Plaintiffs' Lead Counsel shall also be responsible for coordinating the activities of the Direct Action Plaintiffs during pretrial proceedings, and in consultation with the Court and with the assistance of the Plaintiffs' Executive Committee, shall have the following duties and responsibilities. Counsel for any Individual Plaintiff who objects to Lead Counsel's execution of these duties and responsibilities preserves their right to raise their objections with the Court.

    a.    Appear before the Court and present the position of Individual Plaintiffs at all Case Management Conferences, Status Conferences, or other court ordered hearings;

    b.    Direct and coordinate the briefing and argument of all motions directed at or brought by Direct Action Plaintiffs generally;

    c.    Direct and coordinate the filing of opposing briefs and argue motions in proceedings initiated by other parties against Direct Action Plaintiffs' interests (except as to matters directed to specific individual plaintiffs and their counsel or a specific Plaintiff group);

    d.    Initiate and coordinate all discovery proceedings on behalf of Direct Action Plaintiffs, including propounded general liability written

1583293.15

- 2 -

discovery, document production discovery and the taking of oral depositions;[1]

e.    Coordinate all aspects of the Class Litigation;[2]

f.    Coordinate the bellwether process for Individual Plaintiffs subject to the Court's guidance;

g.    Coordinate the initiation of, and conduct discovery on behalf of Direct Action Plaintiffs consistent with the requirements of the California Code of Civil Procedure and Rules of Court relating to discovery or any subsequent order of this Court;

h.    Assign work for the investigation and discovery of common liability and damages matters for all Direct Action Plaintiffs' counsel, and delegate specific tasks to other Direct Action Plaintiffs' counsel, in a manner to ensure that pretrial preparation for Individual Plaintiffs is conducted effectively, efficiently and economically;

i.    Enter into stipulations, on behalf of Direct Action Plaintiffs, with opposing counsel as necessary for the conduct of the litigation;

j.    Prepare and distribute to other Individual Plaintiffs' counsel periodic status reports;

k.    Perform such other duties as may be necessary to the representation of Individual Plaintiffs, proper coordination of Individual Plaintiffs' activities or authorized by further Order of the Court; and

l.    Submit, if appropriate, additional Individual Plaintiffs' committees and counsel for designation by the Court.

---

[1] Any discovery activity initiated by Defendants directed to specific individual Plaintiffs shall be handled by the attorney for those specific individuals.

[2] With respect to litigation of the Class Action, the parties stipulate that the discovery specific to the class and motion for class certification deadlines are stayed, and the stay will be lifted only upon an Order of the Court.

- 3 -

2.    **Individual Plaintiffs' Liaison Counsel.**

Individual Plaintiffs have requested that the court appoint the following lawyers as Individual Plaintiffs' Liaison Counsel. The Court hereby appoints the following lawyers as Individual Plaintiffs' Liaison Counsel:

> Lyssa A. Roberts
> Panish, Shea & Boyle LLP
> 11111 Santa Monica Blvd., Suite 700
> Los Angeles, CA 90025
> Tel.: (310) 477-1700
> roberts@psblaw.com
>
> Walter Lack
> Greg Waters
> Engstrom, Lipscomb & Lack
> 10100 Santa Monica Blvd., 12th Floor
> Los Angeles, CA 90069
> Tel: (310) 552-3800
> gwaters@elllaw.com

Individual Plaintiffs' Liaison Counsel shall be members of the Plaintiffs' Executive Committee and shall have the following responsibilities:

a.    Upon the designation of Individual Plaintiffs' Lead Counsel, appear before the Court and present the position of Individual Plaintiffs at all Case Management Conferences, Status Conferences, or other court ordered hearings;

b.    To make available to the Court, to counsel for Individual Plaintiffs, and to counsel for Defendants an up-to-date comprehensive Service List of all Individual Plaintiffs' counsel (including the date of the most recent revision);

c.    To receive and distribute to Individual Plaintiffs' counsel as appropriate, orders, notices and correspondence from the Court;

d.    To maintain and make available to other Individual Plaintiffs, on reasonable notice and at reasonable times, a complete set of all filed pleadings and orders filed and/or served in these coordinated

1      proceedings; and

2          e.      To coordinate the filing of notices and papers by any Individual

3                  Plaintiff, including the designation of responsibilities to encourage

4                  the filing of a single set of papers by the Individual Plaintiffs in

5                  situations where the Individual Plaintiffs have a common position.

6      **3.      Individual Plaintiffs' Executive Committee.**

7      Individual Plaintiffs have requested that the Court designate the lawyers and firms to the

8  Individual Plaintiffs' Executive Committee. The Court hereby accepts the designation of the

9  following lawyers and firms to the Individual Plaintiffs' Executive Committee:

10                 A. Barry Cappello
                   Leila J. Noel
11                 Cappello & Noël LLP
                   831 State Street
12                 Santa Barbara, CA 93101
                   Phone: (805) 564-2444
13                 abc@cappellonoel.com
                   lnoel@cappellonoel.com
14

15                 Frank Pitre
                   Allison Cordova
16                 Cotchett, Pitre & McCarthy, LLP
                   840 Malcolm Road, Suite 200
17                 Burlingame, CA 94010
                   Tel.: (650) 697-6000
18                 fpitre@cpmlegal.com
                   ACordova@cpmlegal.com
19

20                 Matthew McNicholas
                   McNicholas & McNicholas
21                 10866 Wilshire Blvd. Suite 1400
                   Los Angeles, CA 90024
22                 Tel.: (310) 474-1582
                   msm@mcnicholaslaw.com
23

24                 Robert Curtis
                   Foley Bezek Behle & Curtis, LLP
25                 15 W. Carrillo St.
                   Santa Barbara, CA 93101
26                 Tel.: (805) 962-9495
                   rcurtis@foleybezek.com
27

28

Mark Robinson
Shannon Lukei
Lila Razmara
Robinson Calcagnie, Inc.
19 Corporate Plaza Drive
Newport Beach, CA 92660
Tel.: (949) 720-1288
mrobinson@rcrlaw.net
slukei@rcrlaw.net
lrazmara@rcrlaw.net

Michael A. Kelly
Khaldoun Baghdadi
Walkup, Melodia, Kelly & Schoenberger
650 California Street, 26th Floor
San Francisco, CA 94108
Tel.: (415) 981-7210
MKelly@WalkupLawOffice.com
KBaghdadi@WalkupLawOffice.com

Dave Fox
Elliot Adler
Christopher Sieglock
Wildfire Legal Group
225 West Plaza Street, Suite 102
Solana Beach, CA 92075
Tel.: (858) 256-7616
Dave@foxlawapc.com
elliotadler@gmail.com
chris@sieglocklaw.com

Alexander Robertson
Joe Liebman
Robertson & Associates
32121 Lindero Canyon Road #200
Westlake Village, CA 91361
Tel.: (818) 851-3850
arobertson@arobertsonlaw.com
jliebmanlaw@gmail.com

Amanda L. Riddle
Steven M. Berki
Corey, Luzaich, Ghetaldi & Riddle LLP
700 El Camino Real
Millbrae, CA 94030
Tel.: (650) 871-5666
alr@coreylaw.com
smb@coreylaw.com

Bill Robins
Robins Cloud LLP
808 Wilshire Blvd. #450
Santa Monica, CA 90401
Tel.: (310) 929-4200
robins@robinscloud.com

Alan R. Templeman
Brett C. Templeman
John H. Howard
Lowthorp, Richards, McMillan, Miller &
Templeman
300 E. Esplanade Drive, Suite 850
Oxnard, CA 93036
Tel.: (805) 804-3848
atempleman@lrmmt.com
btempleman@lrmmt.com
jhoward@lrmmt.com

The Individual Plaintiffs' Executive Committee shall have the following responsibilities with respect to matters of common concern to all Individual Plaintiffs:

    a.    Coordination of Individual Plaintiffs' pretrial activities and work performed by the Individual Plaintiffs' lead counsel and liaison counsel;

    b.    Calling meetings of Individual Plaintiffs' counsel when appropriate and to consult with Individual Plaintiffs' counsel on matters of common concern;

    c.    Designating additional Individual Plaintiffs' subcommittees to perform services on behalf of Individual Plaintiffs and designate additional Individual Plaintiffs' counsel to serve on such subcommittees; and

    d.    When appropriate, chairing and organizing Individual Plaintiffs' subcommittees as necessary to address specific issues of concern to claims of Individual Plaintiffs, Subrogation Plaintiffs, Government Plaintiffs and Class Plaintiffs.

- 7 -

**B.**     **Public Entity Plaintiffs**

The Public Entity Plaintiffs have requested that the court designate the following lawyers as their Lead Counsel. The Court hereby appoints the following lawyers as Lead Counsel for these Public Entity Plaintiffs:

> Scott Summy
> Baron & Budd
> 3102 Oak Lawn Ave. #110
> Dallas, TX 75219
> Tel: (214) 521-3605
> SSummy@baronbudd.com
>
> John Fiske
> Baron & Budd
> 603 N. Coast Highway G
> Solana Beach, CA 92075
> Tel.: (858) 225-7200
> JFiske@baronbudd.com

Public Entities' Lead Counsel shall be responsible for propounding discovery, responding to discovery, briefing, and argument of issues that are specific to the Public Entity cases. Public Entities' Lead Counsel shall maintain a current listing of all filed Public Entity cases and identify the same for the Executive Plaintiffs Committee, Defendants and the Court. Counsel in any Public Entity cases shall cooperate with the Lead Counsel for Individual Plaintiffs, Public Entities' Lead Counsel and the Court in the production of information necessary to prepare for any status conference or in the scheduling of any discovery, or hearing.

**C.**     **Subrogation Plaintiffs**

The Subrogation Plaintiffs have requested, and the Court hereby appoints, the following lawyers as Lead Counsel and Liaison Counsel for the Subrogation Plaintiffs. These lawyers shall serve as the members of the Executive Committee for Subrogation Plaintiffs, and said counsel shall have the same duties/responsibilities within/to the Subrogation Plaintiffs group as the lawyers serving as Lead Counsel and Liaison Counsel and the Executive Committee for the Individual Plaintiffs shall have with respect to the Individual Plaintiffs group:

1.      **Lead Counsel for Subrogation Plaintiffs.**[3]

Shawn Caine
The Law Offices of Shawn E. Caine
1221 Camino Del Mar
Del Mar, CA 92014
Tel: (619) 838-1365
scaine@cainelaw.com

Mark Grotefeld
Grotefeld Hoffmann
Shepard Mountain Plaza
6034 West Courtyard Drive, Suite 200
Austin, TX 78730
Tel: (737) 226-5310
mgrotefeld@ghlaw-llp.com

Howard Maycon
Cozen O'Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Tel: (213) 892-7900
hmaycon@cozen.com

Maura Walsh Ochoa
Grotefeld Hoffmann
700 Larkspur Landing Circle, Suite 280
Larkspur, California 94939
Tel: (415) 344-9670
mochoa@ghlaw-llp.com

Waylon Pickett
Grotefeld Hoffmann
0324 SW Abernethy Street
Portland, OR 97239
Tel.: (502) 384-2772
wpickett@ghlaw-llp.com

Craig Simon
Berger Kahn, A Law Corporation
1 Park Plaza, Suite 340
Irvine, CA 92614
Tel: (949) 748-4444
csimon@bergerkahn.com

Lead Counsel for Subrogation Plaintiffs shall be responsible for discovery, briefing, and

argument of issues that are specific to the Subrogation cases. Lead Counsel for the Subrogation

Plaintiffs shall maintain a current listing of all filed subrogation cases and identify same for Lead

Counsel for Individual Plaintiffs, Defendants and the Court. Counsel in any Subrogation cases

---

[3] The rights and obligations of Lead Counsel for Subrogation Plaintiffs mirrors the rights and obligations of Lead Counsel for Individual Plaintiffs.

1583293.15

- 9 -

shall cooperate with Lead Counsel for the Subrogation Plaintiffs, Subrogation Plaintiffs'

Executive Committee and the Court in the production of information necessary to prepare for any

status conference or in the scheduling of any discovery, or hearing. Further, the Court appoints

the following lawyers to the designated positions below:

2. **Liaison Counsel for Subrogation Plaintiffs.**

Alan Jang
Sally Noma
Jang & Associates
1766 Lacassie Avenue, Suite 200
Walnut Creek, CA 94596
Tel: (925) 937-1400
ajang@janglit.com
snoma@janglit.com

Ed Witt
Bauman Loewe Witt & Maxwell, PLLC
8765 East Bell Road, Suite 210
Scottsdale, Arizona 85260
Tel: (480) 502-4664
ewitt@blwmlawfirm.com

3. **Subrogation Plaintiffs' Executive Committee.**

Mark Bauman
Bauman Loewe Witt & Maxwell, PLLC
8765 East Bell Road, Suite 210
Scottsdale, Arizona 85260
Tel: (480) 502-4664
mbauman@blwmlawfirm.com

Peter Lynch
Cozen O'Connor
601 S. Figueroa Street, Suite 3700
Los Angeles, CA 90017
Tel: (213) 892-7900
kbush@cozen.com

Tim Cary
Stutman Law
1260 Corona Pointe Ct., Suite 306
Corona, CA 92879
Tel: (951) 963-1298
caryt@stutmanlaw.com

Eric Schroeder
Schroeder Loscotoff
7410 Greenhaven Dr., Ste. 200
Sacramento, CA 95831
Tel: (916) 438-8306
emschroeder@calsubro.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**D.    Defendants**

Defendants Southern California Edison Company and Edison International (collectively, "SCE") are represented as follows:

> John C. Hueston
> Alex G. Romain
> Alison L. Plessman
> Moez M. Kaba
> Douglas J. Dixon
> Jennifer Bunn Hayden
> Hueston Hennigan
> 620 Newport Center Drive, Suite 1300
> Newport Beach, CA 92660
> Tel.: (949) 229-8640
> jhueston@hueston.com
> aromain@hueston.com
> aplessman@hueston.com
> mkaba@hueston.com
> ddixon@hueston.com
> jbhayden@hueston.com
>
> Leon Bass, Jr.
> Brian Cardoza
> Southern California Edison
> 2244 Walnut Grove Ave.
> Rosemead, CA 91770
> Tel.: (626) 302-6628
> leon.bass@sce.com
> brian.cardoza@sce.com

Defendant Montecito Water District is represented as follows:

> Linda Bauermeister
> Robert Kostrenich
> Barber & Bauermeister
> 1551 N. Tustin Ave. #720
> Santa Ana, CA 92705
> Tel.: (714) 973-1075
> linda@bandbfirm.com
> bob@bandbfirm.com

1583293.15

- 11 -

Defendant City of San Buenaventura is represented as follows:

Thomas M. Madruga
Edward B. Kang
Olivarez Madruga Lemieux O'Neill, LLP
500 S. Grand Ave., 12th Floor
Los Angeles, CA 90071
Tel.: (213) 744-0099
tmadruga@omlolaw.com
ekang@omlolaw.com

## II.    ADDITIONAL PARTIES

The Court orders the following system for a Plaintiff to join this litigation:

### A.    Master Pleadings

A Master Complaint for Individual Plaintiffs, Master Complaint for Public Entity Plaintiffs and a Master Complaint for Subrogation Plaintiffs shall be lodged with the Court. Corresponding Master Answers for Defendants in response to each of these Master Complaints shall govern the pleadings for those actions.[4]

All Plaintiffs, including Subrogation Plaintiffs, have entered into a tolling agreement to November 6, 2018 with Montecito Water District. Plaintiffs who desire to proceed with government tort claims against Montecito Water District must file those claims by November 12. Thereafter, Montecito Water District will file its responsive pleadings December 5, opposition due January 4, 2019, and reply due January 21, 2019.

### B.    Notice of Adoption/Amendment of Master Complaint and Master Answer

The parties are ordered to meet and confer regarding the Notice of Adoption/Amendment of Master Complaint, and Notice of Potential Add-On Cases and Request for Coordination. Plaintiffs will provide Defendants the applicable documents for review and submission to the Court.

The Master Complaints shall be filed no later than July 12, 2018.

If Defendants do not file a challenge to the Master Complaints, the Master Answers shall be filed on or before the date Defendants' challenge to the Master Complaints would have been

---

[4] Subsections A, B and C will not apply to the class cases. Instead, the Code of Civil Procedure shall apply. Furthermore, all class cases are stayed pending further order of the Court (see Section XI).

1583293.15

due as referenced in Section III below. If Defendants file a challenge to the Master Complaints, the Master Answers shall be filed no later than seven (7) days after the Court's ruling on any challenge(s).

The Master Complaints and the Master Answers will not be verified.

### 1. Notice of Adoption/Amendment of Master Complaint

Each Individual Plaintiff, Public Entity Plaintiff, or Subrogation Plaintiff with a case already on file in JCCP No. 4965 shall serve on their respective Lead Counsel a Notice of Adoption/Amendment of Master Complaint within thirty (30) days of the date the Master Complaint is filed. The Notice of Adoption/Amendment shall contain the following information: (1) the name and address of each Plaintiff; (2) whether each Plaintiff was allegedly harmed by the Thomas Fire, Rye Fire, and/or Mudslides; (3) the causes of action each Plaintiff is joining and against which Defendant(s) they are pled; (4) the categories of damages allegedly incurred by each Plaintiff and for which that Plaintiff is seeking recovery and from which Defendant(s); and (5) the Plaintiff's relevant Superior Court case number.

For existing Individual Plaintiffs, Subrogation Plaintiffs, and Public Entity Plaintiffs, the filing of a Notice of Adoption/Amendment of Master Complaint shall not require the payment of an additional filing fee or a new case number, unless the complex fee has not been paid. Each Notice of Adoption/Amendment shall constitute an amended complaint for all purposes. Upon filing the Notice of Adoption/Amendment, the Master Complaint, as amended by the Plaintiff's Notice of Adoption/Amendment, shall be the operative pleading. The date on which the Master Complaint is filed shall have no bearing on whether any Plaintiff has satisfied the applicable statute of limitations. Rather, the date on which an individual Plaintiff's properly-filed original complaint initiating his, her, or its action was filed shall be the operative date for statute of limitations purposes.

For cases naming more than one Plaintiff, each Plaintiff must file an individual Notice of Adoption/Amendment, except those naming a derivative Plaintiff (*e.g.*, an heir asserting a wrongful death claim) or those naming members of a single household, or members/owners/partners of a single trust, property, or business, who need only file one Notice of

1  Adoption/Amendment.

2  **2.**     **Notice of Adoption/Amendment of Master Answer**

3  The Defendants' Notice of Adoption/Amendment of Master Answer shall be filed within

4  thirty (30) days of the filing of Plaintiffs' Notice of Adoption/Amendment of Master Complaint.

5  All responses pled in SCE's Master Answer will be deemed pled in any previously filed

6  Complaint and Responsive Pleading now pending in this JCCP proceeding, and in any Notice of

7  Adoption/Amendment filed thereafter.

8  **3.**     **Cases to Be Filed**

9  Plaintiffs who have not yet filed an action ("Future Cases") will initiate an action by

10  Filing a Short Form Complaint and Notice of Adoption/Amendment of Master Complaint, in a

11  proper venue in California. Each new case filed shall name a single Plaintiff, except those naming

12  a derivative Plaintiff (*e.g.*, an heir asserting a wrongful death claim) or those naming members of

13  a single household, or members/owners/partners of a single trust, property, or business, who may

14  collectively file a single complaint.  For Subrogation Plaintiffs, those insurers in a single family

15  of a group of insurers may file a short form complaint/adoption together in one action.  The filing

16  of any future case in Los Angeles Superior Court shall not waive the rights of any party to move

17  to transfer the action to another proper venue.

18  The Notice of Adoption/Amendment shall contain the following information as indicated

19  above.  For any Future Case filed, the Plaintiff must include a civil cover sheet identifying this

20  JCCP (SOUTHERN CALIFORNIA FIRE CASES, JCCP No. 4965).

21  **C.**     **Adding Cases Into These Coordinated Proceedings**

22  Potential add-on cases will be allowed by stipulation of all parties or by petition of

23  Defendants consistent with the procedures and requirements of California Rules of Court, Rule

24  3.544 and Code of Civil Procedure § 404.4.

25  The parties will apprise the Court of potential add-on cases pursuant to California Rules of

26  Court, Rule 3.544. In addition to the procedures set forth in Rule 3.544, potential add-on cases

27  may be added to these coordinated proceedings by submitting a stipulation and proposed order to

28  add the case to the coordinated proceedings, signed by counsel for the parties to the potential add-

1583293.15                                      - 3 -

on case, Plaintiffs' Lead Counsel, and counsel for all Defendants.

After entry of an order adding a case to the coordinated proceedings, the add-on Plaintiff(s) will file a Notice of Adoption/Amendment as set forth above. Plaintiffs' Lead Counsel will provide the Plaintiffs in each action added to these coordinated proceedings with access as appropriate to electronic or paper copies of pleadings, filings, orders, discovery, and other papers.

All procedures and orders approved by the Court will apply to later-joined actions.

**D.    Cross-Complaints**

Defendants may or may not file cross-complaints as they choose. The Parties are ordered to meet and confer regarding the deadline by which cross complaints must be filed before a motion for good cause must be filed.

**E.    Guardian *Ad Litem* Applications**

Plaintiffs will periodically provide the Court with a list of cases with pending Guardian *ad litem* applications through a folder created on CaseHomePage (an electronic case management system and hereinafter "CHP") to facilitate the Court's review of such applications. Parties are directed to call the Court to provide additional notice of such submissions for the first few weeks.

**F.    Master List of Cases**

Counsel for SCE, Hueston Hennigan LLP, will maintain a master list of all filed cases that it will update regularly and provide to the Court and all parties through a folder on CHP. Counsel for SCE are directed to call the Court to provide notice of such submissions for the first few weeks.

**III.    RESOLUTION OF SIGNIFICANT ISSUES IDENTIFIED BY THE COURT**

**A.    Inverse Condemnation**

The schedule for demurrers addressing inverse condemnation is as follows:

- Any individual Defendant filing such a demurrer, which shall not exceed 25 pages, shall file it on or before August 3, 2018;
- Individual Plaintiffs' Lead Counsel, the Subrogation Plaintiffs' Lead Counsel and the Public Entities Plaintiffs' Lead Counsel shall file their respective oppositions, each of which shall not exceed 20 pages, no later than August 31, 2018;

1583293.15

- 4 -

1  • Each of the individual Defendants may file a reply to any opposition, which shall not

2  exceed 20 pages, no later than September 21, 2018.

3  • The hearing on any challenge(s) to the Master Complaints will be held on October 4, 2018

4  at 1:45 pm.

5  The Parties are further ordered to meet and confer as to whether a demurrer would address the

6  potential liability of Montecito Water District through the doctrine of inverse condemnation,

7  specifically determining whether or not this question can be answered by a demurrer or whether it

8  is a question of both law and fact.

9      **B.**    **Economic Loss Rule**

10      The parties need not file any motion addressing the economic loss rule until after the

11  California Supreme Court issues its ruling in the *Southern California Gas Leak Cases*, S246669,

12  *review granted*, 411 P.3d 526, 229 Cal.Rptr.3d 345.  In the meantime, all rights and defenses,

13  including Defendants' right to demurrer to any claims under the economic loss rule, are

14  preserved.

15  **IV.**    **JURISDICTION & VENUE**

16      The parties agree that this court has jurisdiction over the parties and that there are no

17  challenges to personal or subject matter jurisdiction.

18  **V.**    **SERVICE**

19      Parties first appearing after the date of this CMO may serve new complaints or cross-

20  complaints on any party presently in the case by uploading all documents via CHP, along with a

21  blank Notice and Acknowledgement of Receipt directed to the party being served. Service will be

22  deemed completed when counsel for the defendant(s) or cross-defendant(s) uploads a copy of the

23  signed Notice & Acknowledgement of Receipt to CHP.

24      Each firm of record and unrepresented litigant is required to sign up with CHP and will be

25  individually responsible for payment of applicable CHP fees.

26      A Judge's folder has been created for the Court on CHP that will contain pleadings filed

27  with the Court, and a two-way "bulletin board" that may be used for communication between the

28  Court and the parties.

1583293.15        - 5 -

1   An Order regarding Electronic Service will be filed separately by the Court.

2   **VI.**     **INSURANCE**

3         Defendants SCE, Montecito Water District, and City of San Buenaventura have disclosed

4   initial information regarding their insurance coverage. Plaintiffs have some additional questions

5   raised by the disclosures, and the parties will meet and confer regarding the issues, and bring any

6   disputes to the Court.

7   **VII.**     **DISCOVERY PLAN**

8         Discovery in these proceedings shall proceed in two stages:

9         Stage One shall relate to: (1) liability discovery; and (2) damages discovery from

10  Individual Plaintiffs, Public Entity Plaintiffs and Subrogation Plaintiffs.

11        Stage Two shall relate to expert discovery on issues of both liability and damages and will

12  be subject to further order of this Court.

13        **A.**     **Stage One: Liability Discovery**

14           **1.**     **By Individual, Public Entity and Subrogation Plaintiffs.**

15        Discovery shall be conducted as directed by Lead Counsel for the Individual Plaintiffs,

16  Lead Counsel for the Public Entities, and Lead Counsel for Subrogation Plaintiffs. Plaintiffs have

17  provided to SCE an overview of the initial liability discovery they will be propounding, attached

18  as Exhibit A. Plaintiffs indicated they intend to propound initial written discovery, depositions of

19  persons most qualified on certain topics, and physical examinations. The Parties are ordered to

20  provide the Court with a summary of discovery conducted to date and a description of the next

21  phase of liability discovery they will seek in advance of the August Status Conference.

22        In order to provide efficiency, economy, and uniformity, prior to serving Defendants with

23  liability discovery, Individual Plaintiffs, Public Entity Plaintiffs, and Subrogation Plaintiffs have

24  agreed to cooperate in good faith to coordinate such discovery. Either the Individual Plaintiffs'

25  Lead Counsel, Public Entities' Lead Counsel or the Subrogation Plaintiffs' Lead Counsel may

26  serve discovery on Defendants. After liability discovery is served on Defendants, regardless of

27  which Plaintiff group was the serving party, the Individual Plaintiffs' Lead Counsel, Public

28  Entities' Lead Counsel, and the Subrogation Plaintiffs' Lead Counsel shall collectively meet and

1583293.15

- 6 -

1  confer with Defendants concerning Defendants' discovery responses. Plaintiffs shall not serve
2  duplicative or cumulative discovery on Defendants.

3     **2.**  **By Defendants.**

4    Defendants shall serve any liability discovery directed to any specific individual Plaintiff,
5  Public Entity Plaintiffs or the Subrogation Plaintiffs on Individual Plaintiffs' Lead Counsel,
6  Subrogation Plaintiffs' Lead Counsel, Public Entities' Lead Counsel, and counsel of record for
7  the specific individual plaintiff(s). Where appropriate, the Individual Plaintiffs, Public Entity
8  Plaintiffs, or Subrogation Plaintiffs shall serve Defendants with a Master Response. To the extent
9  such discovery relates to a specific group of Plaintiffs, Defendants may serve such discovery
10 requests on Lead Counsel for each applicable group.

11   As to verifications, since Individual Plaintiffs, Public Entity Plaintiffs and Subrogating
12 Plaintiffs may not have knowledge of the liability facts and may only be responding on
13 information and belief, no verification of a Master Response will generally need to be served by
14 any Plaintiff, and the Master Responses will be deemed verified by the Individual, Public Entity,
15 and Subrogating Plaintiffs, and will have the same force and effect as if verified by each and
16 every Plaintiff, unless within fourteen (14) days of service of the Master Responses, an
17 Individual, Public Entity or Subrogation Plaintiff serves notice that he, she or it does not agree
18 with the Master Response. Once liability discovery requests are propounded on Plaintiffs, the
19 parties agree to meet and confer regarding how to handle responses from any individual Plaintiffs
20 with eyewitness knowledge regarding liability issues such as origin and cause.

21   If a Plaintiff objects to any portion of a Master Response, that Plaintiff must serve his, her
22 or its own verified response to the request(s) at issue within fourteen (14) days of service of the
23 Master Response.

24    **3.**  **By Future Parties.**

25   When a Future Case is added after discovery has commenced, the new party shall not be
26 permitted to conduct any discovery that is duplicative or cumulative of discovery already
27 conducted, absent a determination of good cause by the Court. For the avoidance of doubt, the
28 fact that a party is new shall not be good cause for permitting discovery that is duplicative or

1583293.15

- 7 -

1    cumulative of discovery already conducted.

2    **B.    Stage One: Damages Discovery**

3    **1.    Subrogation Plaintiffs.**

4    Damages discovery may be propounded to all Subrogation Plaintiffs through a "Master

5    Request to All Subrogation Plaintiffs". The Subrogation Plaintiffs shall serve a "Master Response

6    to the Master Request to All Subrogation Plaintiffs", and each Subrogation Plaintiff shall then

7    serve an "Adoption of the Master Response in Full or in Part". If the response adopts "in Part,"

8    the responding Subrogation Plaintiff will set forth any answers that are different from the Master

9    Response in its Adoption. These Adoptions will be verified by each responding

10   Subrogation Plaintiff.

11   The Subrogation Plaintiffs shall set forth a list of claims for which they are seeking

12   reimbursement. The Subrogation Plaintiffs shall provide to Defendants an updated list of the

13   names, addresses, dates of loss, claim numbers, the amounts paid by Subrogation Plaintiffs and

14   open reserves (as that information is available) as to each of the subrogated claims for which they

15   are seeking reimbursement (hereinafter the "List of Claims") no later than July 18, 2018. The

16   Subrogation Plaintiffs shall provide an updated List of Claims as reasonably requested by the

17   Defendants. Subrogation Plaintiffs shall provide a final List of Claims to Defendants on or before

18   the expiration of the applicable statute of limitations, which will constitute the final list of claims

19   to be included in the litigation. The original and/or any amended adoption complaint filed by the

20   Subrogation Plaintiffs will be deemed to set forth all of the information in the List of Claims

21   provided to Defendants pursuant to this Order. Any claims not disclosed by the Subrogating

22   Plaintiffs on or before the due dates above, will be barred by statute. Should there be new

23   mudslide events in the future that Subrogation Plaintiffs allege arise out of the Thomas Fire, the

24   list will be provided before the expiration of the applicable statute of limitations.

25   The List of Claims provided by the Subrogation Plaintiffs will not be admissible in

26   evidence unless the Defendants later reach an agreement with the Subrogation Plaintiff that

27   prepared the List of Claims that the List of Claims is admissible.

28   The Subrogation Plaintiffs shall produce claim files on a rolling basis to all Defendants.

1583293.15                                    - 8 -

1    The parties shall meet and confer regarding a schedule for the production of claim files and shall

2    report back to the Court on this issue in sixty (60) days. The Subrogation Plaintiffs suggest rolling

3    out closed claim files first and the parties are discussing the proposal. The parties will submit to

4    the Court how they will deal with any supplements to the claim files, and how Defendants will be

5    notified of additional payments on any of the claims. Claim files may be requested sooner for any

6    Plaintiff claiming a preference or on a case-by-case basis, and Subrogation Plaintiffs will make

7    every effort to produce such claim files within fifteen (15) days of such a request. Subrogation

8    Plaintiffs are already working on a first listing of claims at SCE's request.

9                    **2.       Individual Plaintiffs.**

10           Each individual plaintiff shall complete the Notice of Adoption/Amendment of Master

11   Complaint, which contains specific facts regarding the case. All other damages case specific

12   discovery including any written discovery, contention discovery or deposition discovery, is stayed

13   until further order of the court.[5]

14                   **3.       Miscellaneous Discovery Issues.**

15           Plaintiffs and Defendants will agree to use one court reporter service for all depositions in

16   these coordinated actions. All Individual Plaintiffs shall have the right to have their depositions

17   conducted in the County of their residence if they so request.

18           Discovery requests propounded by any party will be numbered consecutively and

19   sequentially among all sets of discovery.

20           **C.       Privileged Communications**

21           The communication, transmission, or dissemination of information of common interest

22   among Plaintiffs' counsel or among Defendants' counsel shall be protected by the attorney-client

23   privilege, the protections afforded by the attorney work-product doctrine, the protections afforded

24   to material prepared for litigation or any other privilege to which a party may otherwise be

25   entitled. Cooperative efforts shall not in any way be used against any of the parties, be cited as

26   purported evidence of conspiracy, wrongful action or wrongful conduct, and shall not be

27   _____

28   [5] Defendants reserve their rights to conduct damages discovery from the class action Plaintiffs, but the parties will meet and confer as to the scope and timing of such discovery, which will be subject to further order of this Court.

1583293.15                                   - 9 -

1  communicated to any jury.

2      **D.**    **Preferential Trial Settings**

3      The parties are ordered to meet and confer on issues relating to preferential trial settings

4  pursuant to Code of Civil Procedure § 36 and report back to the Court at the next

5  Status Conference.

6      **E.**    **Trial Structure**

7      The parties are ordered to meet and confer on the appropriate structure for trial(s) in these

8  coordinated proceedings, including the scope and procedure relating to any potential bellwether

9  process, such as a bellwether case selection process, case specific discovery and law and motion

10  practice in bellwether and non-bellwether cases, if any, the conduct of bellwether trials, and the

11  suitability of any issue(s) for a mini-trial(s). The parties will report back to the Court at the next

12  Status Conference with further details.

13  **VIII.**   **ELECTRONICALLY STORED INFORMATION**

14      The parties are ordered to meet and confer on an ESI protocol, and if unable to reach

15  agreement will submit their disputes to the Court by July 16, 2018.

16  **IX.**   **PROTECTIVE ORDER**

17      The Court adopts the parties' agreed-upon Protective Order, filed separately.

18  **X.**   **STAY OF CLASS ACTION PROCEEDINGS**

19      All class action cases are stayed pending further order of the Court. The Parties are to

20  meet and confer regarding how the class cases will progress.

21  **XI.**   **INSPECTION OF CONDUCTOR REMOVED FROM ANLAUF CANYON**

22      Plaintiffs may not conduct another physical, non-destructive inspection of the same

23  conductor that is the subject of the protocol attached as Exhibit B absent agreement of the Parties

24  or order of the Court.

25  **XII.**   **NEXT CASE MANAGEMENT CONFERENCE**

26      The next Status Conference will be held on August 23, 2018 at 10 am. The next Status

27  Conference Statement is due to the Court by 5:00 P.M. on August 20, 2018.

28      Going forward, Court Call is only to be used for attendance. Those who wish to speak or

1    make a presentation must appear in person.

2

3    IT IS SO ORDERED.

4

5    Dated: July 11, 2018

                                        _____
                                        Judge Daniel J. Buckley

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1583293.15                        - 11 -

[PROPOSED] CASE MANAGEMENT ORDER NO. 1
CASE NO.  JCCP NO. 4965