**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Alice S. Kim (SBN 317479)
AKim@jenner.com
Madeline P. Skitzki (SBN 318233)
MSkitzki@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: (213) 239-5100
Facsimile: (213) 239-5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
PBrennan@jenner.com
Michael T. Brody (*pro hac vice*)
MBrody@jenner.com
353 North Clark Street
Chicago, IL 60654-3456
Telephone: (312) 222-9350
Facsimile: (312) 527-0484

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ML-3052-JVS(KESx) |
| | The Honorable James V. Selna |
| | **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND** |
| This document relates to: | Hearing Date: June 8, 2023 |
| *Sanders v. Kia America, Inc.*, Case No. 8:23-CV-00486 | |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 5

    I.      Jurisdiction Exists Under CAFA Based on Claims Already Before This Court ..................................................................................... 6

          A.     The Parties Are Minimally Diverse ........................................ 10

          B.     There Is at Least $5,000,000 in Controversy. ....................... 13

          C.     There Are More Than 100 Members of the Putative Class ........................................................................................ 15

    II.     Plaintiffs Are Not Entitled to Fees or Costs in Connection With Their Motion. .............................................................................. 15

CONCLUSION ................................................................................................. 16

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abrego Abrego v. The Dow Chemical Co.*,
   443 F.3d 676 (9th Cir. 2006) ........................................................................ 14

*Bridewell-Sledge v. Blue Cross of California*,
   798 F.3d 923 (9th Cir. 2015) .......................................................................... 6

*Brown v. MHN Government Services, Inc.*,
   No. 12-5513, 2012 WL 3834963 (W.D. Wash. Sept. 4, 2012) ...................... 12

*Chambers v. Whirlpool Corp.*,
   980 F.3d 645 (9th Cir. 2020) ........................................................................ 12

*Dart Cherokee Basin Operating Co., LLC v. Owens*,
   574 U.S. 81 (2014) .......................................................................................... 6

*Duenas v. Dole Food Co.*,
   No. 09-215, 2009 WL 666802 (C.D. Cal. Mar. 9, 2009) .............................. 11

*Freeman v. Blue Ridge Paper Prod., Inc.*,
   551 F.3d 405 (6th Cir. 2008) .............................................................. 8, 12, 14

*Grancare, LLC v. Thrower by & through Mills*,
   889 F.3d 543 (9th Cir. 2018) ........................................................................ 16

*Greene v. Harley-Davidson, Inc.*,
   965 F.3d 767 (9th Cir. 2020) ................................................................... 13, 14

*Hampton v. Monsanto Co.*,
   No. 11-1662, 2011 WL 5307835 (E.D. Mo. Nov. 3, 2011) ........................... 11

*Johnson v. Advance America*,
   549 F.3d 932 (4th Cir. 2008) ........................................................................ 11

*In re Kitec Plumbing System Products Liability Litigation*,
   No. 09-2098, 2010 WL 11618052 (N.D. Tex. Aug. 23, 2010) ................*passim*

*Korn v. Polo Ralph Lauren Corp.*,
   536 F. Supp. 2d 1199 (E.D. Cal. 2008) ........................................................ 13

ii

*Lewis v. Verizon Commc'ns, Inc.*,
    627 F.3d 395 (9th Cir. 2010) ............................................................... 13

*Lussier v. Dollar Tree Stores, Inc.*,
    518 F.3d 1062 (9th Cir. 2008) ...................................................... 15, 16

*Martin v. Franklin Cap. Corp*,
    546 U.S. 132 (2005) ............................................................................ 15

*In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*,
    460 F.3d 1217 (9th Cir. 2006) ........................................................ 6, 7

*In re Plumbing Fixture Cases*,
    298 F. Supp. 484 (J.P.M.L. 1968) ....................................................... 6

*Rea v. Michaels Stores Inc.*,
    742 F.3d 1234 (9th Cir. 2014) ........................................................... 13

*Rosas v. Carnegie Mortg., LLC*,
    No. 11-7692, 2012 WL 1865480 (C.D. Cal. May 21, 2012) .............. 10

*Simon v. Marriott International, Inc.*,
    No. 19-1792, 2019 WL 4573415 (D. Md. Sept. 20, 2019) ......................*passim*

*In re Sony SXRD Rear Projection Television Class Action Litig.*,
    No. 06-5173, 2008 WL 1956267 (S.D.N.Y. May 1, 2008) .............. 14

*Std. Fire Ins. Co. v. Knowles*,
    568 U.S. 588 (2013) ............................................................................ 13

*Tanoh v. Dow Chem. Co.*,
    561 F.3d 945 (9th Cir. 2009) ...................................................... 8, 12, 14

*In re Textainer P'ship Sec. Litig.*,
    No. 05-0969, 2005 WL 1791559 (N.D. Cal. July 27, 2005) ............... 6

*Wilson v. Airborne, Inc.*,
    No. 07-770, 2008 WL 3854963 (C.D. Cal. Aug. 13, 2008) .............. 14

**Statutes**

28 U.S.C. § 1332 ..............................................................................*passim*

28 U.S.C. § 1441 .................................................................................... 5

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

28 U.S.C. § 1447................................................................................................15

28 U.S.C. § 1453..................................................................................................5

Cal. Civ. Code § 1750..........................................................................................4

**Court Rules**

9th Cir. R. 36-3.................................................................................................16

Fed. R. App. P. 32.1.........................................................................................16

**Other Authorities**

McDermott, John T., "The Judicial Panel on Multidistrict Litigation,"
    57 F.R.D. 215 (1973)........................................................................................7

S. Rep. 109-14...................................................................................................6

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **<u>INTRODUCTION</u>**

After filing a consumer class action that wholly subsumes Plaintiffs' claims and actively participating in an ongoing MDL, Plaintiffs' counsel chose to file a near-identical lawsuit—artfully styled as a mass tort action—in California state court against Defendants Kia America, Inc. and Hyundai Motor America (together, "Defendants").[1]  This action is a transparent attempt by Plaintiffs' counsel to skirt federal jurisdiction, avoid the centralized MDL proceedings already before this Court, drain judicial resources, and create duplicative paths for Plaintiffs—and therefore Plaintiffs' counsel—to recover.  This purported "mass action" is a consumer class action in disguise, and is properly subject to removal under the Class Action Fairness Act ("CAFA") and consolidation in the MDL.

The parties were able to locate only a single case addressing a similar attempt at procedural manipulation in an MDL—*Simon v. Marriott International, Inc.*, No. 19-1792, 2019 WL 4573415 (D. Md. Sept. 20, 2019).  As Plaintiffs ignore, the court in that case held that a plaintiff cannot pursue a lawsuit in state court consisting of claims that are already included in a suit removed under CAFA within an existing MDL by manipulating the allegations in the complaint to avoid federal jurisdiction under CAFA.  This Court should come to the same conclusion here.

In their "Motion to Remand to Superior Court of the State of California for the County of Orange and Request for Award of Attorneys Fees in the Amount of $19,005" (the "Motion to Remand" or "Motion"), Plaintiffs make no attempt to distinguish *Marriott* or call its reasoning into question.  *Sanders v. Kia America, Inc.*, Case No. 8:23-cv-00486 (C.D. Cal. Mar. 17, 2023), ECF No. 12.  And despite contending that removal was "unwarranted and improper," *id*. at 2, they fail to cite a single controlling case prohibiting removal in these circumstances.

---

[1] "Plaintiffs" refers to the 116 named plaintiffs in the *Sanders* action.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1         Rather than engage with Defendants' basis for removal, Plaintiffs argue that
2    (1) removal is improper under the "mass action" provision of CAFA; and
3    (2) Defendants cannot cite unpublished cases.  Both arguments are meritless.  First,
4    as is apparent from Defendants' Notice of Removal, Defendants did not remove this
5    action under the "mass action" provision of CAFA; instead, Defendants removed
6    this case as a class action under CAFA because Plaintiffs are included within several
7    putative classes in cases consolidated in the MDL.  Plaintiffs do not directly
8    challenge this basis for removal.  Second, Plaintiffs cite no authority for their
9    contention that Defendants cannot cite unpublished cases—because none exists.  As
10   further discussed below, this Court properly has jurisdiction over this case under
11   CAFA and should therefore deny Plaintiffs' Motion.

12   **<u>BACKGROUND</u>**

13        On December 13, 2022, the U.S. Judicial Panel on Multidistrict Litigation (the
14   "JPML") created MDL No. 3052 in the Central District of California for suits by
15   consumer plaintiffs who purchased or leased Kia and Hyundai branded vehicles that
16   lack certain anti-theft technology, which those plaintiffs allege should have been
17   standard.  *See In re Kia Hyundai Vehicle Theft Litig.*, 2022 WL 17843100, at *1
18   (J.P.M.L. Dec. 13, 2022).  As of the date of this filing, there are nearly 60 consumer
19   actions currently centralized in MDL No. 3052 (the "MDL Actions") before this
20   Court.  The overwhelming majority of the MDL Actions are putative consumer class
21   actions (the "MDL Consumer Class Actions").  The MDL Consumer Class Actions
22   have been brought by more than 150 named plaintiffs and assert claims on behalf of
23   putative classes that include all purchasers or lessees of Kia and Hyundai branded
24   vehicles that lack engine immobilizers nationwide.

25        Plaintiffs' counsel filed one of the MDL Consumer Class Actions,
26   *McQuarrie*, in the Central District of California on September 21, 2022.  *See*
27   *McQuarrie v. Kia America, Inc.*, Case No. 8:22-cv-01721 (C.D. Cal. Sept. 21, 2022).

28

Attached hereto as **Exhibit 1** is a copy of the complaint in *McQuarrie*. The *McQuarrie* complaint includes nine causes of action under California, Florida, and Nevada law, and is brought by plaintiffs who reside in Florida, Nevada, and California. Ex. 1, *McQuarrie* Compl. ¶¶ 7–9, 54–244. The *McQuarrie* plaintiffs seek to represent a nationwide class consisting of purchasers and lessees of Kia and Hyundai branded vehicles "equipped with traditional key ignition starter systems" and, alternatively, a "California Class" consisting of "all individuals and entities in California," a "Nevada Class" consisting of "all individuals and entities in Nevada," and a "Florida Class" consisting of "all individuals and entities in Florida." *Id*. ¶¶ 39–42. *McQuarrie* was transferred to this Court as part of MDL No. 3052 on January 20, 2023. *McQuarrie*, Case No. 8:22-cv-01721 (C.D. Cal. Sept. 21, 2022), ECF No. 15.

After the cases were consolidated in MDL No. 3052, the Court directed Plaintiffs' Consumer Class Action Leadership Committee to file a consolidated amended complaint. *See* Dkt. 70. That Consolidated Amended Consumer Class Action Complaint (the "Consolidated Amended Complaint" or "CAC") was filed on April 10, 2023. *See* Dkt. 84. The Consolidated Amended Complaint names 85 Plaintiffs who purchased or leased vehicles in 30 states, including California, and asserts claims under the laws of all 50 states. CAC ¶¶ 37–1206, 1536–4817. Plaintiffs assert seven causes of action under California law, *id*. ¶¶ 1536–1658, and seek to represent a nationwide class as well as subclasses of consumers from all 50 states, including California. *Id*. ¶¶ 1524–25, 1527.

Plaintiffs filed this action in Orange County Superior Court on February 6, 2023, after the cases were consolidated in MDL No. 3052. *Sanders v. Kia America, Inc.*, Case No. 8:23-cv-00486 (C.D. Cal. Mar. 17, 2023), ECF No. 1, Ex. A. Attached hereto as **Exhibit 2** is a copy of the complaint in *Sanders*. Plaintiffs' allegations are nearly identical to the allegations in the MDL Consumer Class

Actions and the Consolidated Amended Complaint.  Plaintiffs allege that certain Kia and Hyundai vehicles contain a purported defect that allows these vehicles to be stolen by third parties.  *See, e.g.*, Ex. 2, *Sanders* Compl. ¶¶ 1–5, 130–36.  Based on these allegations, Plaintiffs assert five grounds for relief: (1) violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750 *et seq.* (Count I, *id.* ¶¶ 137–62), (2) strict liability – design defect (Count II, *id.* ¶¶ 163–70), (3) gross negligence (Count III, *id.* ¶¶ 171–82), (4) gross negligence – failure to recall (Count IV, *id.* ¶¶ 183–92), and (5) breach of implied warranty of merchantability (Count V, *id.* ¶¶ 193–201).   In their prayer for relief, Plaintiffs seek a judgment against Defendants for, *inter alia*, compensatory damages, punitive damages, injunctive relief, and attorneys' fees. *Id.* at 29–30.

Plaintiffs' claims are entirely subsumed within *McQuarrie*, numerous other MDL Consumer Class Actions, and the Consolidated Amended Complaint.  *Id.* ¶¶ 137–201 (asserting claims for violations of the CLRA, strict liability – design defect, gross negligence, gross negligence – failure to recall, and breach of implied warranty of merchantability), *with* Ex. 1, *McQuarrie* Compl. ¶¶ 54–244 (asserting claims for, *inter alia*, violations of the CLRA, strict liability – design defect, negligence, and breach of implied warranty of merchantability on behalf of putative nationwide and California consumer classes), *and* CAC ¶¶ 1536–1658 (asserting claims for, *inter alia*, violations of the CLRA, California False Advertising Law, and California Unfair Competition law, breach of implied warranty of merchantability, fraud by omission and concealment, and unjust enrichment on behalf of, *inter alia*, putative nationwide and California consumer classes).[2]   Indeed, Plaintiffs are

---

[2] In addition to the plaintiffs in the Consolidated Amended Complaint, the plaintiffs in seven individual MDL Consumer Class Actions seek to represent putative California subclasses of which Plaintiffs are members.  *See Yeghiaian v. Kia America, Inc.*, Case No. 8:22-cv-01440 (C.D. Cal. filed Aug. 3, 2022); *Morrow v. Hyundai Motor America*, Case No. 8:22-cv-01674 (C.D. Cal. filed Sept. 12, 2022); *McQuarrie*, Case No. 8:22-cv-01721 (C.D. Cal. filed Sept. 21, 2022); *Lamons v. Kia America, Inc.*, Case No. 8:22-cv-01956 (C.D. Cal. filed Oct. 24, 2022); *Lucas v. Kia America, Inc.*, Case No. 8:22-cv-02090 (C.D. Cal. filed Nov. 16, 2022); *Winston v.*

members of the California and nationwide putative classes defined in *McQuarrie* and the Consolidated Amended Complaint, for they, too, allege that they are California purchasers or lessees of 2011-2021 Kia vehicles or 2015-2021 Hyundai vehicles equipped with traditional key ignition starter systems and lacking engine immobilizers.  *See* Ex. 2, *Sanders* Compl. ¶¶ 7–122; Ex. 1, *McQuarrie* Compl. ¶¶ 39, 41; CAC ¶¶ 1524–25, 1527.  The only real difference is that, in *Sanders*, Plaintiffs do not seek to represent a class.  Nonetheless, Plaintiffs are putative class members of several of the MDL Consumer Class Actions and the Consolidated Amended Complaint already before this Court.

## **ARGUMENT**

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction."   28 U.S.C. § 1441(a).  Under the Class Action Fairness Act ("CAFA" or the "Act"), the district courts of the United States have original jurisdiction over any class action (i) involving a plaintiff class of 100 or more members; (ii) where at least one member of the plaintiff class is a citizen of a state different from any defendant ("minimal diversity"); and (iii) in which the matter in controversy exceeds (in the aggregate) the sum or value of $5,000,000, exclusive of interest and costs.   28 U.S.C. § 1332(d)(2), (5); *see also* 28 U.S.C. § 1453(b).[3]

Although Plaintiffs' counsel has not styled this action as a "class action," as demonstrated below, that fact does not preclude removal under CAFA.  To the contrary, the strong public policy embodied in CAFA that supports removal and centralization with the pending MDL in this circumstance militates in favor of looking past the four corners of the pleading (as several other courts have done under

---

*Kia America, Inc.*, Case No. 8:22-cv-02329 (C.D. Cal. removed Dec. 29, 2022); *Placencia v. Kia America*, Case No. 8:23-cv-00139 (C.D. Cal. filed Jan. 23, 2023).

[3] By demonstrating that this matter is removable under 28 U.S.C. § 1332(d), Defendants do not waive, and expressly reserve, their arguments that there is no basis to certify a class in this matter.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

similar circumstances) to find that all three conditions of CAFA are met in this action, and therefore the action is removable under 28 U.S.C. § 1332(d).

In their Motion to Remand, Plaintiffs do not dispute that the numerosity requirement of CAFA is established in this case.   Instead, Plaintiffs argue Defendants fail to meet CAFA's minimal diversity and amount in controversy requirements.  They are wrong.

## I.     Jurisdiction Exists Under CAFA Based on Claims Already Before This Court.

CAFA was designed to create "a federal forum where [similar, overlapping class actions] could be coordinated and consolidated before one judge to promote judicial efficiency."  *Bridewell-Sledge v. Blue Cross of California*, 798 F.3d 923, 932 (9th Cir. 2015).  The Act is intended to "make[] it harder for plaintiffs' counsel to 'game the system' by trying to defeat diversity jurisdiction, [and] create[] efficiencies in the judicial system by allowing overlapping and 'copycat' cases to be consolidated in a single federal court."  *In re Textainer P'ship Sec. Litig.*, No. 05-0969, 2005 WL 1791559, at *4 (N.D. Cal. July 27, 2005) (quoting S. Rep. 109-14, at 5).  The Supreme Court has made clear that CAFA's "provisions should be read broadly," evidencing a preference for federal jurisdiction where appropriate.  *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. Rep. 109-14, at 43).

This is especially true in the MDL context.   The MDL procedure was established to avoid the "multiplied delay, confusion, conflict, inordinate expense and inefficiency" associated with litigating numerous related actions in isolated venues.  *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d 1217, 1230 (9th Cir. 2006) (quoting *In re Plumbing Fixture Cases,* 298 F. Supp. 484, 495 (J.P.M.L. 1968)).  With an MDL, coordinated cases can "proceed toward resolution on the merits with less burden and expense overall than were each litigated through

pretrial individually." *Id*. at 1229; *see generally* John T. McDermott, "The Judicial Panel on Multidistrict Litigation," 57 F.R.D. 215, 217 (1973) ("Implicit in Section 1407 is the assumption that the transferee judge will . . . establish a national unified discovery program to avoid delay, repetition and duplication and to insure that the litigation is processed as efficiently and economically as possible."). The Ninth Circuit has observed that "multidistrict litigation is a special breed of complex litigation where the whole is bigger than the sum of its parts. The district court needs to have broad discretion to administer the proceeding as a whole, which necessarily includes keeping the parts in line." *In re Phenylpropanolamine (PPA) Prod. Liab. Litig.*, 460 F.3d at 1232.

Courts have relied on CAFA's broad reach to set aside artificial limitations on putative classes such as the one created by counsel in this case. For example, in *Marriott*, the plaintiffs, on behalf of themselves and others similarly situated, sought injunctive relief and monetary damages in Connecticut state court for claims arising out of a data breach incident that was the subject of an ongoing MDL in the United States District Court for the District of Maryland. 2019 WL 4573415, at *1. The plaintiffs' counsel had intentionally manipulated the pleading to seem to fall outside the confines of CAFA and therefore avoid removal and inclusion in the MDL. *Id*. Nonetheless, Defendant Marriott removed the action, which was transferred to the District of Maryland where the MDL that subsumed the plaintiffs' claims was already pending. *Id*. at *2. The plaintiffs moved to remand, arguing the court lacked subject matter jurisdiction because CAFA's minimal diversity requirement was not met. *Id*.

The *Marriott* court faced a closely analogous issue to what is presented here: "Can a class action plaintiff pursue a lawsuit in state court consisting of claims that already are included in a CAFA suit within an existing MDL by manipulating the allegations in their complaint to skirt the minimal diversity requirement of CAFA?"

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

*Id*. at *3.  The court answered in the negative, acknowledging that "both CAFA and MDL considerations warrant[ed] looking beyond the pleadings."  *Id*. at *4.  Because the plaintiffs' claims were "wholly included" in the other two class actions pending in the MDL, the court found that the plaintiffs' attempt to plead around the minimal diversity requirement "defeat[ed] the purpose of CAFA by forcing litigation of the same claims, in both state and federal court."  *Id.*

Accordingly, the *Marriott* court rejected the plaintiffs' "transparent effort to avoid federal jurisdiction" in order to "recover from both their state court action and from the MDL" and denied the motion to remand.  *Id.*; *see also Tanoh v. Dow Chem. Co.*, 561 F.3d 945, 954 (9th Cir. 2009) (recognizing that "competing claims to represent the same class of plaintiffs might raise concerns that overlapping or identical claims would be litigated in multiple jurisdictions"); *see also Freeman v. Blue Ridge Paper Prod., Inc.*, 551 F.3d 405, 407 (6th Cir. 2008) ("CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction.").

The *Marriott* court reiterated that the "interest in fairness and efficiency is even stronger in the context of MDLs than in a stand-alone CAFA class action because MDLs combine multiple class (and individual) actions into one lawsuit for purposes of pretrial proceedings."  *Marriott*, 2019 WL 4573415, at *4.  Thus, CAFA promotes federal jurisdiction where, as here, an MDL proceeding covering the same issues—and the same putative class members—is already underway.  *Id*. ("Allowing [plaintiffs] to manipulate CAFA would be harmful . . . because it could disrupt the orderly progress of the pretrial process in the [] MDL.").

The court in *In re Kitec Plumbing System Products Liability Litigation* reached the same conclusion.  No. 09-2098, 2010 WL 11618052 (N.D. Tex. Aug. 23, 2010).  In *Kitec*, while an MDL involving allegedly defective HVAC pipe was proceeding in Texas, residents of two small communities in Washington filed class

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

actions in state court asserting the same claims. *Id.* at *1. After the cases were removed to federal court and transferred to the MDL, the plaintiffs filed motions to remand on the basis that CAFA's amount-in-controversy threshold was not met in their separate respective actions, as the plaintiffs had expressly stated in their complaints that damages would be less than $5 million. *Id.* at *2–4, 6.

The MDL court denied the motions to remand. *Id.* at *8. Because the plaintiffs and putative class members were part of the larger MDL class, the court held it could "pierce the pleadings in order to determine the propriety of federal jurisdiction," and look to the overlapping claims in the MDL class that were "already properly before th[e] Court." *Id.* at *6. The court reasoned further that allowing the removed plaintiffs to proceed in state court would erode the judicial efficiencies created by the MDL and undermine CAFA's aim of eliminating both gamesmanship and copycat actions. *Id.* at *6–7. The court observed that the MDL before it "implicate[d] [the] multistate or national interests" that CAFA was designed to protect, and the removed actions threatened to "create duplicative, overlapping or even identical litigation to [the MDL] if they were to be remanded." *Id.* at *7.

The reasoning in *Marriott* and *Kitec* applies with equal force here. Indeed, the MDL Consolidated Amended Complaint seeks certification of nationwide and California consumer classes that encompass Plaintiffs. And the individual MDL Consumer Class Actions in MDL No. 3052 seek certification of at least 7 putative California subclasses and 48 putative nationwide classes that also encompass Plaintiffs. For example, in *McQuarrie*, plaintiffs—again, represented by the same Plaintiffs' counsel here—seek to represent a California class comprised of "all individuals and entities in California that purchased or leased a 2011-21 Kia vehicle or 2015-21 Hyundai vehicle equipped with traditional key ignition starter systems but which lack an engine immobilizer." Ex. 1, *McQuarrie* Compl. ¶ 41. This Court may look past the artificial manner in which Plaintiffs have attempted to "divest[]

th[e] [MDL] court of jurisdiction it already has acquired." *Marriott*, 2019 WL 4573415, at *4.

Moreover, as in *Marriott* and *Kitec*, allowing Plaintiffs to pursue their individual claims in a California state court runs counter to the aims of both CAFA and the MDL. Plaintiffs are pursuing the same damages arising from the same alleged events that are at issue in the MDL, and they are doing so on behalf of a subset of the same individuals whose interests are already being adjudicated in the MDL.

Given CAFA's broad reach, this Court should follow the *Marriott* and *Kitec* courts and look to the putative class members in the MDL Consumer Class Actions to establish minimal diversity and amount in controversy in this case.

## A.    The Parties Are Minimally Diverse.

KA is a California corporation with its principal place of business in Irvine, California. *See* Ex. 2, *Sanders* Compl. ¶ 123. HMA is a California corporation with its principal place of business in Fountain Valley, California. *Id.* ¶ 124. Thus, Defendants are both citizens of California. *See* 28 U.S.C. § 1332(c)(1). Plaintiffs also reside in California. *See* Ex. 2, *Sanders* Compl. ¶¶ 7–122. Nonetheless, the minimal diversity requirement of CAFA is satisfied based on class allegations in other MDL Consumer Class Actions. For example, the *McQuarrie* plaintiffs seek to represent a "Nationwide Class," "Nevada Class," and "Florida Class," in addition to a "California Class." Ex. 1, *McQuarrie* Compl. ¶¶ 39–42. Further, the named proposed class representatives in *McQuarrie* reside in Florida, Nevada, and California. *Id.* ¶¶ 7–9. Accordingly, the minimal diversity requirement is satisfied because at least one member of the putative classes asserted in an MDL Consumer Class Action resides in a state other than California. *See* 28 U.S.C. § 1332(d)(2)(A); *see also Rosas v. Carnegie Mortg., LLC*, No. 11-7692, 2012 WL 1865480, at *5

(C.D. Cal. May 21, 2012) ("Because the complaint alleges a 'nationwide class,' minimal diversity necessarily exists.") (citations omitted).

In their Motion to Remand, Plaintiffs argue that because "Plaintiffs are masters of the complaint," Defendants cannot "bootstrap in the Plaintiffs from the class action cases [] in the MDL . . . to establish the 'minimal diversity'" requirement. Mot. at 6–7 (capitalization omitted). Yet Plaintiffs do not cite a single case concerning the issue here: whether prospective class members can pursue a lawsuit in state court consisting of claims that already are included in a CAFA suit within an existing MDL by manipulating the allegations in their complaint to skirt the requirements of CAFA.

Plaintiffs' reliance on two cases that involve CAFA's mass action provision, (28 U.S.C. § 1332(d)(11))—*Duenas v. Dole Food Co.*, No. 09-215, 2009 WL 666802 (C.D. Cal. Mar. 9, 2009), and *Hampton v. Monsanto Co.*, No. 11-1662, 2011 WL 5307835 (E.D. Mo. Nov. 3, 2011)—is misplaced. Defendants have not invoked the mass action provision of CAFA to remove this case; rather, Defendants have removed this action as "a consumer class action in disguise." *Sanders v. Kia America, Inc.*, Case No. 8:23-cv-00486 (C.D. Cal. Mar. 17, 2023), ECF No. 1, Not. of Removal at 4 ("Not. of Removal"). Accordingly, these cases do not support remand.

Plaintiffs' other cases are similarly inapposite. At most they support the general proposition that plaintiffs are the masters of their complaints, but they do not address the specific issues presented here. In *Johnson v. Advance America*, the court rejected the defendants' attempt to "mischaracterize[]" the plaintiffs' class definition in their complaint in order to establish the minimal diversity requirement in their removal. 549 F.3d 932, 936 (4th Cir. 2008). Defendants here make no such characterizations of terms within Plaintiffs' complaint; rather, Defendants argue this Court should look *outside* of the four corners of Plaintiffs' complaint to establish

federal jurisdiction.  And in *Brown v. MHN Government Services, Inc.*, the court
granted plaintiffs' motion to remand where the plaintiffs had expressly limited their
damages to under $5,000,000 in order to avoid CAFA jurisdiction.  No. 12-5513,
2012 WL 3834963, at *1 (W.D. Wash. Sept. 4, 2012).  Again, this is not the factual
scenario here.

Critically, neither of these cases arise in the MDL context, and they therefore
lack any of the unique considerations now before this Court.  Defendants do not
dispute "the well-established rule that plaintiffs [are] masters of their complaint."
*Tanoh*, 561 F.3d at 953.[4]  But where, as here, "manipulat[ing] CAFA would be
harmful . . . because it could disrupt the orderly progress of the pretrial process in
[an ongoing] MDL," courts are empowered to take necessary measures to prevent
"[h]arm to putative class members and defendants."  *Marriott*, 2019 WL 4573415,
at *4; *see also Kitec*, 2010 WL 11618052, at *7 ("The larger principle against
litigating overlapping claims in multiple jurisdiction cautions against remand in this
case."); *see also Freeman*, 551 F.3d at 409 ("[W]here recovery is expanded, rather
than limited, by virtue of splintering of lawsuits for no colorable reason, the total of
such identical splintered lawsuits may be aggregated.").  Plaintiffs' counsel cannot
be permitted to multiply their potential recovery by litigating identical claims within
the MDL and outside of it.

Finally, Plaintiffs' assertion that "[f]ederal [c]ourts have jurisdiction **only
where there is complete diversity**," (Mot. at 5 (quoting 28 U.S.C. § 1332(c)(1)),
ignores the fact that "CAFA . . . requires only minimal diversity (instead of complete
diversity)."  *Chambers v. Whirlpool Corp.*, 980 F.3d 645, 657 (9th Cir. 2020).
Indeed, CAFA's minimal diversity standard is satisfied when "any member of a class
of plaintiffs is a citizen of a State different from any defendant."  28 U.S.C.

---

[4] Indeed, Plaintiffs' counsel were "masters of their complaint" when they filed a
multi-state class action complaint in federal court in September 2022, thereby
invoking CAFA jurisdiction.  Plaintiffs' counsel should not be permitted to invoke
both federal and state court jurisdiction for the same claims.

§ 1332(d)(2)(A).   Again, this requirement is satisfied here because at least one member of the putative classes asserted in the MDL Consumer Class Actions resides in a state other than California.

**B.      There Is at Least $5,000,000 in Controversy.**

"In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008).   The court must then "add[] up the value of the claim of each person who falls within the definition of [the] proposed class." *Std. Fire Ins. Co. v. Knowles*, 568 U.S. 588, 592 (2013).

To satisfy the amount-in-controversy requirement, a defendant must establish only that "the potential damages *could* exceed the jurisdictional amount." *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014) (emphasis added) (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 397 (9th Cir. 2010)).   In other words, "[t]he ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Korn*, 536 F. Supp. 2d at 1205; *see also, e.g.*, *Greene v. Harley-Davidson, Inc.*, 965 F.3d 767, 772 (9th Cir. 2020) ("[T]he amount in controversy is the 'amount *at stake* in the underlying litigation.'   'Amount at stake' does not mean likely or probable liability; rather it refers to possible liability.") (citations omitted).

Because Plaintiffs are subsumed within numerous putative classes already in the MDL, including the classes in the Consolidated Amended Complaint (and the *McQuarrie* classes), and this action is structured solely to avoid CAFA jurisdiction, the Court may look to the amount placed in controversy in the MDL Consumer Class Actions, such as *McQuarrie*, to satisfy this requirement.   *See Marriott,* 2019 WL 4573415, at *1 (holding that damages could be aggregated across several actions in determining whether the court had jurisdiction under CAFA because there was no

1  colorable basis for separating plaintiffs); *see also Freeman*, 551 F. 3d at 407–08

2  (similar); *see also Kitec*, 2010 WL 11618052, at *7 (similar).

3        As an example, the amount placed in controversy in the *McQuarrie* complaint

4  satisfies CAFA's jurisdictional threshold.  Plaintiffs allege that "tens of thousands"

5  of vehicles contain the purported defect, and although Plaintiffs' complaint does not

6  specify a precise amount of damages, it alleges that those putative class vehicles

7  have caused potentially "thousands or tens of thousands" of putative class members

8  various damages, including "the difference in value" between a vehicle with the

9  alleged defect and a similar vehicle without the alleged defect, "repairs to damaged

10 vehicles," the "replacement cost of stolen vehicles," "the purchase price of security

11 devices to prevent theft," and "the increase in insurance premiums."  Ex. 1,

12 *McQuarrie* Compl. ¶¶ 44, 48, 190.  Moreover, Plaintiffs also seek attorneys' fees,

13 which, in the consumer class action context, can be significant.  *See id.* at 46; *Wilson*

14 *v. Airborne, Inc.*, No. 07-770, 2008 WL 3854963, at *12 (C.D. Cal. Aug. 13, 2008)

15 (awarding $3,459,946 in attorneys' fees in false advertising class action); *In re Sony*

16 *SXRD Rear Projection Television Class Action Litig.*, No. 06-5173, 2008 WL

17 1956267, at *15–16 (S.D.N.Y. May 1, 2008) (finding $1.6 million in attorneys' fees

18 was reasonable in class action involving product defect).

19       Given the existence of tens of thousands of putative class vehicles and class

20 members, it is more than "reasonably possible" that there is at least $5,000,000 in

21 controversy.  *Greene*, 965 F.3d at 772.  As such, the district courts of the United

22 States have jurisdiction over this matter.  *See* 28 U.S.C. § 1332(d)(2).

23       Relying on *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676 (9th Cir.

24 2006), Plaintiffs claim that Defendants "completely ignore[]" the requirement under

25 CAFA's mass action provision "that at least one Plaintiff must have an amount in

26 controversy of at least $75,000."  Mot. at 12–14.[5]  But Defendants did not remove

27 ─────────────────────────────────
   [5] Plaintiffs also cite *Tanoh*, 561 F.3d 945, which again concerns CAFA's mass action
28 provision and is therefore inapposite.  Mot. at 10.

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

this action pursuant to the mass action provision of CAFA.  Though this action has been artfully styled as a mass tort action, Defendants maintain that it is a consumer class action in disguise.  *See* Not. of Removal at 4.  Therefore, Defendants need only establish that the amount in controversy exceeds (in the aggregate) the sum or value of $5,000,000, exclusive of interest and costs, which they have done.  28 U.S.C. § 1332(d)(2), (6).

### C.   There Are More Than 100 Members of the Putative Class.

Although Plaintiffs do not challenge Defendants' satisfaction of the numerosity requirement, there is no question that it is satisfied here because Plaintiffs are subsumed within numerous putative classes already in the MDL for which there are over 100 members.

## II.   Plaintiffs Are Not Entitled to Fees or Costs in Connection With Their Motion.

For the foregoing reasons, the Court should deny Plaintiffs' Motion to Remand, thereby mooting this request.  But even if the Court grants the Motion, Plaintiffs are not entitled to fees in connection with the Motion.

A Plaintiff opposing removal is entitled to attorneys' fees or costs under 28 U.S.C. § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Cap. Corp*, 546 U.S. 132, 141 (2005).  "Conversely, when an objectively reasonable basis exists, fees should be denied."  *Id*.  "[R]emoval is not objectively unreasonable solely because the removing party's arguments lack merit."  *Lussier v. Dollar Tree Stores, Inc*., 518 F.3d 1062, 1065 (9th Cir. 2008).  Rather, removal is "objectively unreasonable" when relevant case law "clearly foreclose[s]" the removing party's asserted basis for removal.  *Id*. at 1066.

Defendants had an objectively reasonable basis for removal here.  Although Plaintiffs claim removal is improper because Defendants "attempt to bootstrap in the

. . . Plaintiffs from the class action cases already in the MDL" to establish CAFA's minimal diversity and amount in controversy requirements, no controlling authority forecloses removal here,[6] and the most analogous persuasive authority actually supports removal.  *See* Mot. at 7, 11, 14.  In removing this case, Defendants relied on the reasoning of the most closely analogous case they could locate—*Marriott*.  Plaintiffs make no attempt to distinguish *Marriott* or to explain why *Marriott* does not provide an objectively reasonable basis for removal.  Rather, Plaintiffs' only rebuttal is the suggestion (without any support) that Defendants' reliance on *Marriott* is improper because it is unpublished and not from this District.  Mot. at 2, 11.  Plaintiffs are wrong.  *See* Fed. R. App. P. 32.1 (stating that "[a] court may not prohibit or restrict the citation of federal judicial opinions, orders, judgments, or other written dispositions . . . designated as 'unpublished,'" if they were "issued on or after January 1, 2007"); *accord* 9th Cir. R. 36-3.  Although *Marriott* was unpublished, the court engaged in a thoughtful analysis of the various policy considerations at play.  Plaintiffs have put forth no legitimate reason this Court should not rely on *Marriott* as persuasive authority.

Accordingly, because there is no Ninth Circuit precedent that "clearly foreclosed" Defendants' basis for removal, and indeed, the only relevant persuasive authority supports removal, Defendants' removal of this action to federal court was not "objectively unreasonable." *Lussier*, 518 F.3d at 1065, 1067. This Court should deny Plaintiffs' request for fees and costs.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion to Remand as well as Plaintiffs' request for fees and costs.

---

[6] In addition to the Ninth Circuit cases discussed above, Plaintiffs cite *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543 (9th Cir. 2018), which concerned the standard for fraudulent joinder of a nondiverse defendant. Mot. at 4–5.  That is not the issue here.

DATED:      May 18, 2023                    JENNER & BLOCK LLP

                                By:   _____
                                        /s/ *Peter J. Brennan*
                                          Peter J. Brennan

                                Attorney for Defendants

DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

1

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 5,233 words, which complies with the word limit of L.R. 11-6.1.

DATED:      May 18, 2023              JENNER & BLOCK LLP

                                        By:   <u>/s/ *Peter J. Brennan*</u>
                                              Peter J. Brennan

                                        Attorney for Defendants