Steve W. Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain
HUMPHREY FARRINGTON &
McCLAIN, P.C.
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Plaintiffs' Consumer Class Action Leadership Committee*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.:   8:22-ml-03052-JVS-KES **CONSUMER CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| This document relates to:  ALL CONSUMER CLASS ACTION CASES | Judge: Hon. James V. Selna Date:   August 15, 2023 Time:  3:00 p.m. Courtroom:  10C |

PLEASE TAKE NOTICE that at 3:00 p.m. on August 15, 2023, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James V. Selna, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Courtroom 10C, Santa Ana, California 92701, Consumer Class Plaintiffs[1] ("Plaintiffs") will and hereby do move for an order of the Court to:

1. preliminarily approve the Hyundai and Kia Vehicle Theft Litigation Consumer Plaintiffs Settlement Agreement (the "Settlement," "Settlement Agreement," or "S.A.");

2. certify the proposed Settlement Class under Rule 23(b)(3);

3. appoint Plaintiffs as class representatives;

4. appoint Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Elizabeth A. Fegan of Fegan Scott LLC, Kenneth B. McClain of Humphrey Farrington & McClain, P.C., and Roland Tellis of Baron & Budd, P.C. as Class Counsel;

5. order dissemination of Settlement notice to the Class pursuant to the notice plan set forth in the Settlement Agreement; and

6. set a schedule for final settlement approval.

Plaintiffs' unopposed Motion is based on this Notice; the accompanying Memorandum of Law; the Joint Declaration of the Consumer Class Action Leadership Counsel ("Leadership Decl."), and all attachments thereto (including the Settlement Agreement); the Proposed Order Granting Consumer Class Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; and all other papers filed and proceedings had in this Action.

This unopposed Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on July 7, 2023.

---

[1] The eighty-five (85) Plaintiffs are identified in pages 10-194 of the Consolidated Amended Class Action Complaint ("CAC"). Dkt. 84.

1  Dated: July 20, 2023.                    Respectfully Submitted.

2                                           By:  _/s/ Steve W. Berman_____

3                                                Steve W. Berman, Esq.

4                                                **HAGENS BERMAN SOBOL SHAPIRO LLP**

5                                                1301 Second Avenue, Suite 2000

6                                                Seattle, Washington 98101
                                                 Telephone: 206-623-7292

7                                                Facsimile: 206-623-0594

8                                                Email: steve@hbsslaw.com

9                                           By:  _/s/ Elizabeth A. Fegan_____

10                                               Elizabeth A. Fegan, Esq.
                                                 **FEGAN SCOTT LLC**

11                                               150 S. Wacker Dr., 24th Floor

12                                               Chicago, Illinois 60606
                                                 Telephone:   312.741.1019

13                                               Fax:           312.264.0100

14                                               Email: beth@feganscott.com

15                                          By:  _/s/ Kenneth B. McClain_____

16                                               Kenneth B. McClain, Esq.

17                                               **HUMPHREY FARRINGTON & McCLAIN**

18                                               221 W. Lexington Ave., Suite 400
                                                 Independence, Missouri 64050

19                                               Telephone:   816.836.5050
                                                 Facsimile:   816.836.8966

20                                               Email: kbm@hfmlegal.com

21                                          By:  _/s/ Roland Tellis_____

22                                               Roland Tellis, Esq.
                                                 **BARON & BUDD, P.C.**

23                                               15910 Ventura Boulevard, Suite 1600

24                                               Encino, California 91436
                                                 Telephone: 818.839.2333

25                                               Facsimile:   214.523.5500

26                                               Email: rtellis@baronbudd.com

27                                               *Consumer Class Action Leadership Counsel*

28                                               *and Counsel for Plaintiffs*

## Table of Contents

I.   INTRODUCTION ..................................................................................... 1

II.  FACTUAL BACKGROUND ................................................................. 2

   A.   Plaintiffs' Allegations concerning the Theft Prone Defect ............... 2

   B.   History of the Litigation ................................................................... 4

   C.   Settlement Negotiations and the Proposed Settlement ..................... 6

III. THE SETTLEMENT BENEFITS FOR THE CLASS ............................ 7

   A.   Common Fund for Out-of-Pocket and Unreimbursed Losses ........... 8

      1.   Total Loss of Class Vehicle ........................................................ 9

      2.   Damage to Class Vehicle and/or Stolen or Damaged
Personal Property .................................................................................... 10

      3.   Insurance Expenses .................................................................. 10

      4.   Other Qualifying Theft or Qualifying Theft Attempt
Expenses ................................................................................................... 10

      5.   Software Upgrade Related Expenses ......................................... 11

   B.   Anti-Theft Software Upgrade and Steering Wheel Lock
Reimbursement for Eligible Class Vehicles ...................................... 11

   C.   Payments for Anti-Theft Devices for Class Vehicles Ineligible
for the Software Upgrade .................................................................. 12

IV.  ARGUMENT ........................................................................................ 13

   A.   The proposed Settlement merits preliminary approval. ................... 13

      1.   The Settlement is the product of serious, informed, arm's-
length negotiations by experienced Class Counsel. .............................. 14

      2.   The Settlement treats all Class members equitably. ................. 17

      3.   The Settlement has no obvious deficiencies. ............................ 18

      4.   The Settlement falls within the range of possible approval. ..... 18

   B.   The Settlement Class should be certified. ....................................... 24

      1.   The proposed Settlement Class meets the requirements of
Rule 23(a). ............................................................................................... 24

      2.   The proposed Settlement Class meets the requirements of
Rule 23(b)(3). .......................................................................................... 27

   C.   The Court should order dissemination of Class notice. .................. 29

      1.   The proposed Settlement provides the best method of

v

Pls.' Notice of Mot. and Mot. for Prelim. Approval of Class Action Settlement
Case No.:  8:20-cv-01584-SB-JDE

notice practicable. ................................................................................30

    2.   The proposed Notice plan informs Class members of their
rights ................................................................................32

    3.   Notice to Federal and State Officials....................................32

V.  CONCLUSION................................................................................32

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007)................................................................13, 20

*Alberto v. GMRI, Inc.*,
252 F.R.D. 652 (E.D. Cal. 2008)........................................................................13

*Altamirano v. Shaw Indus., Inc.*,
2015 WL 4512372 (N.D. Cal. July 24, 2015) ....................................................17

*Amchem Prods. v. Windsor*,
521 U.S. 591 (1997).............................................................................................29

*Banh v. Am. Honda Motor Co.*,
2021 WL 3468113 (C.D. Cal. June 3, 2021)......................................................32

*Byrne v. Santa Barbara Hosp. Servs., Inc.*,
2017 WL 5035366 (C.D. Cal. Oct. 30, 2017) ....................................................16

*Callaway v. Mercedes-Benz United States LLC*,
2017 WL 11707445 (C.D. Cal. Nov. 29, 2017) ....................................13, 14, 15

*Casey v. Doctor's Best, Inc.*,
2022 WL 1726080 (C.D. Cal. Feb. 28, 2022) ....................................................20

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ......................................................................15, 30

*Cisneros v. Airport Terminal Servs.*,
2021 WL 3812163 (C.D. Cal. Mar. 26, 2021) ....................................................17

*Clesceri v. Beach City Investigations & Protective Servs.*,
2011 WL 320998 (C.D. Cal. 2011) ....................................................................22

*Ellis v. Costco Wholesale Corp.*,
657 F.3d 970 (9th Cir. 2011) .............................................................................21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................13, 25, 26, 27, 29

iv

*Hemphill v. San Diego Ass'n of Realtors*,
   225 F.R.D. 616 (S.D. Cal. 2004) ........................................................ 16

*Herrera v. Wells Fargo Bank, N.A.*,
   2021 WL 3932257 (C.D. Cal. June 8, 2021) ...................................... 27

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) .......................................... 13, 24, 27, 29

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................. 15

*Keegan v. Am. Honda Motor Co.*,
   284 F.R.D. 504 (C.D. Cal. 2012) ................................................. 28, 29

*La Fleur v. Med. Mgmt. Int'l, Inc.*,
   2014 WL 2967475 (C.D. Cal. June 25, 2014) ................................... 15

*Linney v. Cellular Alaska P'ship*,
   151 F.3d 1234 (9th Cir. 1998) ..................................................... 19, 22

*Lymburner v. U.S. Fin. Funds, Inc.*,
   263 F.R.D. 534 (N.D. Cal. 2010) ...................................................... 26

*Lyter v. Cambridge Sierra Holdings*,
   2019 WL 13153197 (C.D. Cal. June 18, 2019) ................................. 15

*Maree v. Deutsche Lufthansa AG*,
   2023 WL 2563914 (C.D. Cal. Feb. 13, 2023) .............................. 14, 15

*Marvin v. Kia America, Inc., et al.*,
   No. 2:21-cv-01146-PP (E.D. Wis.) ................................................ 4, 15

*Mazza v. Am. Honda Motor Co.*,
   666 F.3d 581 (9th Cir. 2012) ............................................................ 21

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ...................................................... 16, 23

*Moreno v. Pretium Packaging, L.L.C.*,
   2021 WL 3673845 (C.D. Cal. Aug. 6, 2021) .................................... 19

*Navarrete v. Sprint United Mgmt. Co.*,
   2021 WL 4352903 (C.D. Cal. Mar. 2, 2021) .................................... 24

*Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F.*,
    688 F.2d 615 (9th Cir. 1982) ........................................................... 19, 21

*In re Omnivision Techs.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2007) .......................................... 21, 23

*In re Pac. Enterprises Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995) .................................................................. 23

*Patrick v. Volkswagen Grp. of Am.*,
    2021 WL 3616105 (C.D. Cal. Mar. 10, 2021) ...................................... 25

*Rannis v. Recchia*,
    380 F. App'x 646 (9th Cir. 2010) .................................................... 25, 31

*Rodriguez v. Hayes*,
    591 F.3d 1105 (9th Cir. 2010) .............................................................. 26

*Scolaro v. RightSourcing, Inc.*,
    2017 WL 11630969 (C.D. Cal. Mar. 20, 2017) .................................... 16

*Shahbazian v. Fast Auto Loans*, *Inc.*,
    2019 WL 8955420 (C.D. Cal. June 20, 2019) ...................................... 19

*State Automobile Mutual Insurance Company et al. v.*
    *Hyundai Motor America et al.*,
    No. 8:23-cv-00443 (C.D. Cal. Mar. 10, 2023) ...................................... 4

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) .......................................................... 13, 18

*Sullivan v. Am. Express Publ'g Corp.*,
    2011 WL 2600702 (C.D. Cal. June 30, 2011) ...................................... 30

*In re Toyota Motor Corp. Unintended Acceleration*
    *Mktg., Sales Pracs., & Prod. Liab. Litig.*,
    2012 WL 7802852 (C.D. Cal. Dec. 28, 2012) ................................. 14, 28

*In re Toyota Motor Corp. Unintended Acceleration*
    *Mktg., Sales Practices, & Prods. Liab. Litig.*,
    2013 WL 12327929 (C.D. Cal. July 24, 2013) ...................................... 24

*True v. Am. Honda Motor Co.*,
    749 F. Supp. 2d 1052 (C.D. Cal. 2010) ................................................ 23

vi

Pls.' Notice of Mot. and Mot. for Prelim. Approval of Class Action Settlement
Case No.:   8:20-cv-01584-SB-JDE

*Tyson Foods, Inc. v. Bouaphakeo*,
    577 U.S. 442 (2016)..................................................................................28

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011)..................................................................................25

*West v. Circle K Stores, Inc.*,
    2006 WL 1652598 (E.D. Cal. June 13, 2006) ......................................18

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ...........................................................26, 28

*Zakikhani v. Hyundai Motor Co.*,
    2022 WL 17224701 (C.D. Cal. Oct. 20, 2022) ....................................13

*Zakikhani v. Hyundai Motor Co.*,
    2023 WL 4544774 (C.D. Cal. May 5, 2023)........................................18

**Statutes & Rules**

28 U.S.C. § 1407.........................................................................................4

28 U.S.C. § 1715.......................................................................................32

Fed. R. Civ. P. 23.............................................13, 18, 24, 25, 26, 27, 29, 30, 32

**Other Authorities**

A. Conte & H.B. Newberg, Newberg On Class Actions §11.41......................14, 15

A. Conte & H.B. Newberg, Newberg On Class Actions §11:50...........................20

A. Conte & H.B. Newberg, Newberg On Class Actions §11.51............................16

## I.   INTRODUCTION

This multi-district litigation concerns Plaintiffs' allegations that Defendants Hyundai Motor Company ("HMC"), Hyundai Motor America ("HMA"), KIA Corporation ("KC"), and KIA America, Inc. ("KA") (collectively "Defendants")[2] produced and sold more than nine million vehicles, which they marketed as safe and reliable, while knowing the vehicles contained a safety defect that makes them highly prone to theft. Over the course of eight months, under the guidance of renowned mediator the Honorable Margaret M. Morrow (Ret.), the Parties reached this proposed Settlement[3] which offers significant relief to millions of current and former owners and lessees of Class Vehicles[4] presently amid a nationwide crime epidemic relating to their vehicles.

As detailed more fully herein, the proposed Settlement creates a non-reversionary common fund of $80,000,000, which may be increased up to $145,000,000 based on approved claims, to compensate Class members for losses arising from the thefts and attempted thefts of their Class Vehicles and certain other expenses related to obtaining the free anti-theft Software Upgrade. For eligible Class Vehicles, the proposed Settlement also provides a free anti-theft Software Upgrade that remedies the alleged defect and reimbursement (paid separately from the

---

[2] Plaintiffs and Defendants are collectively referred to as the "Parties."

[3] All capitalized terms herein have the same meaning as in the Settlement Agreement, attached to the Leadership Decl. as Ex. 1.

[4] The Class Vehicles include certain model year 2011-2022 Hyundai and Kia vehicles manufactured without an engine immobilizer that were sold in the United States (including Puerto Rico, Virgin Islands, and Guam): 2011-2022 Accent; 2011-2022 Elantra; 2013-2020 Elantra GT; 2013-2014 Elantra Coupe; 2011-2012 Elantra Touring; 2011-2014 Genesis Coupe; 2018-2022 Kona; 2020-2021 Palisade; 2011-2022 Santa Fe; 2013-2018 Santa Fe Sport; 2019 Santa Fe XL; 2011-2019 Sonata; 2011-2022 Tucson; 2012-2017, 2019-2021 Veloster; 2020-2021 Venue; 2011-2012 Veracruz; 2011-2021 Forte; 2021-2022 K5; 2011-2020 Optima; 2011-2021 Rio; 2011-2021 Sedona; 2021-2022 Seltos; 2011-2022 Soul; 2011-2022 Sorento; and 2011-2022 Sportage. S.A., § I.G.

1

Pls.' Notice of Mot. and Mot. for Prelim. Approval of Class Action Settlement
Case No.:  8:22-ml-03052-JVS-KES

common fund) for the purchase of a steering wheel lock. For Class Vehicles ineligible for the Software Upgrade, the proposed Settlement provides tens of millions or more in cash payments to Class members for their purchase of equivalent anti-theft systems (also paid separately from the common fund).

The proposed Settlement provides substantial benefits to Class members, while avoiding the considerable risks and costs of protracted litigation. Class members have suffered actual damages because of Defendants' failure to design the Class Vehicles with engine immobilizers and, absent a remedy for the alleged defect, their vehicles remain at risk of further damage. This proposed Settlement secures an *immediate* solution to a real-word problem when success at trial would otherwise be years away. Based on their extensive investigatory efforts, Class Counsel are well informed as to the strength and weakness of Plaintiffs' claims and, given their significant experience litigating automobile class actions, believe the proposed Settlement is in the Class's best interests. The proposed Settlement falls well within the range of being fair, reasonable, and adequate to support provisional certification of the Class and notice to Class members. Accordingly, Plaintiffs respectfully request that this Court grant the Settlement preliminary approval.

## II.    FACTUAL BACKGROUND

### A.    <u>Plaintiffs' Allegations concerning the Theft Prone Defect</u>

Plaintiffs allege Defendants knowingly sold more than nine million Hyundai and Kia Class Vehicles that do not contain vital safety components that, in connection with other design flaws, eschew Federal Motor Vehicle Safety Standards ("FMVSS" or "Safety Standards") promulgated by the National Highway Traffic Safety Administration ("NHTSA"). Dkt. 84, CAC ¶¶ 7-8. Specifically, that each Class Vehicle suffers from a series of design flaws that allow thieves to steal it in less than ninety seconds, including: (i) the steering columns do not contain adequately secure collars or casings, allowing easy access to the ignition assembly; (ii) the ignition lock

cylinders do not have a locking mechanism and can be easily removed with minimal force, and in so doing, leaves the ignition switch intact; (iii) the exposed ignition switch can be started with any set of pliers, or the current generation of thieves' tool of choice, a USB connector; and (iv) the Class Vehicles do not contain engine immobilizers (collectively, the "Theft Prone Defect" or the "Defect"). *Id.* ¶¶ 8, 1291-95, 1304-05, 1307-11, 1314-19. An engine immobilizer is an anti-theft device that can prevent vehicles from starting unless a verified code is received by a transponder module that controls the engine. *Id.* ¶ 4. This anti-theft device prevents the vehicle from being "hotwired" or started by any means other than an authorized key. *Id.*

Class Vehicles were sold with traditional "insert-and-turn" key ignition systems, as opposed to "push-to-start" ignitions, and do not contain engine immobilizers. *Id.* ¶ 1291. Thieves can quickly identify Hyundai and Kia vehicles that lack engine immobilizers by peering through vehicle windows and spotting traditional ignitions. *Id.* Because there are no alarms on the back windows, thieves can enter the vehicles without setting off alarms and easily pull off steering wheel casings. *Id.* ¶¶ 1292-1293. Finally, thieves can expose the ignition switch with minimal force, using a screwdriver or USB cable to start the car with a turn. *Id.* ¶¶ 1294-1295.

Plaintiffs allege that, because of the Theft Prone Defect, Class Vehicles are at increased risk of theft or forced entry. *Id.* ¶¶ 1, 7, 1401. While the alleged Theft Prone Defect existed and has plagued Class members since the first Class Vehicles were sold, beginning in 2020, a group of teenagers in Milwaukee, who dubbed themselves the "Kia Boyz," discovered the alleged Defect and began to post videos showing how to steal Class Vehicles in a matter of seconds. *Id.* ¶ 9. Shortly thereafter, thefts and attempted thefts of Class Vehicles skyrocketed. *Id.* ¶¶ 1354-1384. Class Vehicles have been frequently stolen and used to commit crimes or taken for high speed "joy rides," causing injury to people and property alike. *Id.* ¶¶ 1357, 1370, 1401, 1403.

**B.**     <u>**History of the Litigation**</u>

Milwaukee, Wisconsin was among the first cities impacted by the epidemic of Class Vehicle thefts, and there the first case related to the alleged Theft Prone Defect was filed, *Marvin v. Kia America, Inc., et al.*, No. 2:21-cv-01146-PP (E.D. Wis.). As the incidence of thefts quickly spread throughout the country, beginning in July 2022, dozens of class actions were filed nationwide based on Defendants' omission of antitheft devices in Class Vehicles. Leadership Decl. ¶ 6. On August 31, 2022, a group of plaintiffs moved for consolidation pursuant to 28 U.S.C. § 1407. MDL No. 3052 ("JPML Dkt."), Dkt. 1; Leadership Decl. ¶ 12. On December 13, 2022, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order transferring related actions from fourteen District Courts to this Court for consolidation and pre-trial coordination. Leadership Decl. ¶ 15. To date, seventy-nine cases from more than two-dozen District Courts are currently pending in this MDL.

Shortly after the MDL was established, the JPML conditionally transferred related cases filed by the cities of Seattle, Washington and Columbus, Ohio alleging public nuisance caused by the Theft Prone Defect. Additional actions on behalf of the cities of Cincinnati, Ohio, Cleveland, Ohio, Buffalo, New York, and Madison, Wisconsin, among others, have also been filed. *See* JPML Dkts. 142, 154, 159. Additionally, on March 10, 2023, a group of insurance plaintiffs (the "Insurer Class Plaintiffs") filed a class action complaint on behalf of similarly situated insurance companies, and on March 21, 2023, the case was transferred to the MDL proceeding. *See State Automobile Mutual Insurance Company et al. v. Hyundai Motor America et al.*, No. 8:23-cv-00443 (C.D. Cal. Mar. 10, 2023) (Dkt. 1, 16).

On December 22, 2022, the Court appointed Mr. Berman, Ms. Fegan, and Mr. McClain as Initial Conference Counsel, tasked with conferring and obtaining consensus regarding the most pressing issues affecting the case. Dkt. 2 at 2. On January 30, 2023, Initial Conference Counsel and Defendants submitted their Joint

Preliminary Report outlining their respective positions regarding, *inter alia*, an appropriate leadership structure for plaintiffs' counsel, plans for discovery, and various anticipated issues in the litigation. Dkt. 40. On February 9, 2023, the Court appointed Mr. Berman, Ms. Fegan, Mr. McClain, and Mr. Tellis to the Plaintiffs' Consumer Class Action Leadership Committee. Dkt. 50 at 3. The Court also appointed Jeffrey Goldenberg, Amanda K. Klevorn, and Tiffany Marko Yiatras to the Fact Discovery Committee, and Jason S. Rathod, Michael F. Ram, and Matthew D. Schelkopf to the Expert Discovery Committee. *Id.*

Immediately upon their appointment to the Plaintiffs' Consumer Class Action Leadership Committee, Class Counsel began a comprehensive effort to draft a consolidated complaint that details the factual, regulatory, and legal issues relating to the alleged Theft Prone Defect. Leadership Decl. ¶ 21. Counsel conducted an extensive investigation concerning the underlying Defect and spoke with hundreds of putative Class members and potential class representatives. *Id.*

On April 10, 2023, Plaintiffs filed their Consolidated Amended Consumer Class Action Complaint ("CAC"). Dkt. 84. The CAC includes eighty-five Plaintiffs who purchased or leased vehicles across the United States and asserts claims under the laws of all 50 states. CAC ¶¶ 37-1206, 1536-4817. In general, Plaintiffs assert claims for (1) violation of state consumer protection statutes, (2) breach of implied warranty, (3) fraud by omission and concealment, and (4) unjust enrichment. *Id.* ¶¶ 1536-4817.

The Parties submitted an agreed Protocol for the Production of Documents and Electronically Stored Information ("ESI") and Privilege Logs, a Proposed Stipulated Protective Order, and a Joint Stipulation Regarding Foreign Discovery on April 5, 2023. Dkt. 79. The Parties exchanged initial disclosures on April 14, 2023. Leadership Decl. ¶ 24. On April 19, 2023, Plaintiffs served HMA and KA with their First Set of Requests for Production of Documents. *Id.*

On May 1, 2023, Defendants moved to dismiss the CAC. Dkt. 95. In accordance with the Court's March 13, 2023 Order (Dkt. 70), this motion addressed the laws of California, Florida, Missouri, Pennsylvania, Texas, and New York. Plaintiffs immediately analyzed the motion and began working on their opposition. Leadership Decl. ¶ 25. Class Counsel continued to litigate the case to be sure they were fully informed of the strength and weakness of their positions and the risks they faced at class certification and trial, even while settlement negotiations continued.

On May 18, 2023, the Parties notified the Court that they reached a settlement in principle resulting in a fully executed Memorandum of Understanding. *See* Dkt. 107. On May 19, 2023, the Court stayed all deadlines in the Consumer Plaintiffs' cases that are unrelated to settlement approval. Dkt. 111.

## C.   Settlement Negotiations and the Proposed Settlement

Throughout the litigation, the Parties have engaged in simultaneous, dual tracks. As Plaintiffs litigated the merits of their claims, they also negotiated a potential settlement with Defendants to bring expedited relief to millions of vulnerable Class members. In late 2022, while consolidation was pending before the JPML, the Parties began these settlement discussions. Leadership Decl. ¶ 13. On November 15, 2022, a mediation session was conducted before the Honorable Margaret M. Morrow (Ret.). *Id.* ¶ 14. Although the mediation was productive, the Parties did not reach a resolution.

After the Court appointed Mr. Berman, Ms. Fegan, and Mr. McClain as Initial Conference Counsel on December 22, 2022 (Dkt. 2), the Parties reinitiated settlement discussions. *Id.* ¶ 17. These negotiations continued over the next month, and the Parties exchanged multiple drafts of a memorandum of understanding. *Id.* ¶¶ 19, 22-23. Under the guidance of Judge Morrow, the Parties participated in additional mediation sessions on April 4 and 5, 2023. *Id.* ¶¶ 22-23. The Parties did not leave the

mediation sessions with an agreement, but they continued working toward that goal, while actively litigating. *Id.* ¶ 23.

On May 18, 2023, the Parties notified the Court they had reached a settlement in principle and executed a Memorandum of Understanding ("MOU"). *See* Dkt. 107. The general terms of the MOU, which are memorialized in the Settlement Agreement, were publicly disseminated by the Parties in press releases and widely covered in the media. Leadership Decl. ¶¶ 27-28. In addition to the benefits for Class members, the MOU entitles Plaintiffs to confirmatory discovery to obtain information necessary to support the Settlement terms, including the nature and scope of the Software Upgrade, and provides that Defendants will pay all costs and expenses for class notice and claims administration. *Id.* ¶ 29.

Shortly after the Parties executed the MOU, they began negotiating and drafting the Settlement Agreement and Plaintiffs went to work on confirmatory discovery. *Id.* ¶¶ 30, 32. On May 18, 2023, Plaintiffs served Defendants with their first set of Requests for Production of Documents (the "Confirmatory RFPs"). *Id.* ¶ 31. The Confirmatory RFPs sought documents relating to, *inter alia*: (1) Defendants' investigation about the theft risk in Class Vehicles; (2) Defendants' interactions with NHTSA concerning the alleged Defect; (3) the development, efficacy, and roll-out of the Software Upgrade remedy; (4) insurance coverage for Class Vehicles; and (5) Defendants' efforts to mitigate the risk of theft in Class Vehicles. Plaintiffs intend to review responsive documents produced by Defendants and thereafter take one or more confirmatory depositions, as necessary. *Id.*

## III.   THE SETTLEMENT BENEFITS FOR THE CLASS

If approved, the proposed Settlement will provide substantial benefits to the following Settlement Class:[5] All persons or entities who purchased or leased a Class

---

[5] Excluded from the Class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; any

Vehicle in the United States (including Puerto Rico, Virgin Islands, and Guam). S.A.
§ I.E. The proposed Settlement creates a common fund of up to $145 million for
certain out-of-pocket losses arising from the theft or attempted theft of a Class
Vehicle and other expenses arising from obtaining the Software Upgrade, a free anti-
theft Software Upgrade for eligible Class Vehicles and reimbursement for the
purchase of steering wheel locks made before the Software Upgrade was available,
and tens of millions or more in cash payments to Class members whose Class
Vehicles are ineligible for the Software Upgrade for their purchase of steering wheel
locks and other anti-theft systems for their Class Vehicles. *Id.* § II.A-D.

Any disputes that arise from a Settlement claim determination will be resolved
by the Settlement Administrator,[6] and for added oversight, Class Counsel have the
right to participate in these appeals, review and comment on all appeals, obtain
information and documents necessary to the appeals, and confer with the Settlement
Administrator regarding appeal determinations. *Id.* §§ II.F., III.C.5, III.D.5, III.E.2.
The cost of appeals will be borne by Defendants. *Id.* § III.D.5.

A.   **Common Fund for Out-of-Pocket and Unreimbursed Losses**

---

judge to whom this Action is assigned, his or her spouse, and all persons within the
third degree of relationship to either of them, as well as the spouses of such persons.
In addition, excluded from the Class are individuals and/or entities who validly and
timely opt-out. Also excluded from the Class are consumers and businesses,
including insurers, that have purchased or otherwise obtained title for Class Vehicles
previously deemed a total loss (i.e., salvage or junkyard vehicles) (subject to
verification through Carfax or other means) and current or former owners of Class
Vehicles that previously released their claims in an individual settlement with one or
more Defendants with respect to the issues raised in the Action. S.A. § I.E.

[6] The Parties have agreed to jointly propose a Settlement Administrator for the
Court's approval. They are evaluating proposals from various candidates and will
supplement our preliminary approval papers detailing the nominee's qualifications,
before the August 15, 2023 preliminary approval hearing.

1    Defendants will establish a non-reversionary common fund of $80 million to
2  $145 million to pay Class members for certain out-of-pocket losses related to the
3  alleged Theft Prone Defect, including those arising from the Qualifying Theft or
4  Qualifying Theft Attempt[7] of Class Vehicles. *Id*. § II.D. If all approved claims total
5  less than $80,000,000, these claims will receive a *pro rata* increase.[8] *Id*. § II.D.6. If
6  all approved claims exceed the "maximum" of $145,000,000, payments will decrease
7  *pro rata*. *Id*.

8    Class members may seek payment for certain losses related to Qualifying
9  Thefts or Qualifying Theft Attempts, including total loss of Class Vehicles up to
10  $6,125, damage to Class Vehicles and personal property up to $3,375, insurance
11  expenses up to $375, and other related expenses up to $250 per incident. *Id*. § II.D.3.
12  These benefits are available to Class members for <u>each</u> qualifying theft or attempted
13  theft occurrence they experienced. *Id*. § II.D.4. Class members with Class Vehicles
14  eligible for the Software Upgrade may also seek reimbursement from the common
15  fund for lost income and childcare expenses up to $250 to obtain the Software
16  Upgrade and for the purchase of new key fobs up to $350 per fob (limited to two fobs
17  per Class Vehicle) where necessary to implement the Software Upgrade. *Id*. § II.D.5.

18  **1. Total Loss of Class Vehicle**

19    Class members may be paid up to $6,125 per vehicle for the Total Loss of a
20  Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt. *Id*. § II.D.3.a. A
21  "Total Loss" means any of the following: (a) the Class Vehicle was wrecked,
22  destroyed, or damaged so badly (excluding pre-existing damage) that it is objectively

[7] "Qualifying Theft" means the theft of a Class Vehicle through forcible entry and breach of the ignition system, and "Qualifying Theft Attempt" means an attempted theft of a Class Vehicle through forcible entry and either an attempted dismantling of the steering column or an attempted breach of the ignition system. S.A. § I.Y.

[8] However, if approved claims do not equal or exceed $50,000,000, Defendants will receive a credit of $10,000,000 for providing the common fund benefits before the approved claims are increased proportionately. S.A. § II.D.6.

uneconomical to repair it (*i.e.*, repair costs would be at least 70% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition);  (b) the Class member's disposal (through sale or donation) of the Class Vehicle for less than 30% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition; (c) the Class Vehicle was declared a Total Loss by an insurer, but the Class member was still not made whole by the insurance payments, as measured by the Black Book value (private party/average condition) minus total insurance settlement or payment received; or (d) it has been at least three months since the Qualifying Theft and the Class Vehicle has not been recovered.  *Id.* § I.GG.  A Class member may demonstrate through objectively reliable documentation that the Class Vehicle was not recovered after being stolen, which unless rebutted by Defendants, will be treated as a "Qualifying Theft." *Id.* § I.Y. If before entry of a final approval order, Defendants resolve the Insurer Class Plaintiffs' subrogation claims, the Parties will convene to discuss whether and by how much the Total Loss cap should be increased. *Id.* § II.D.3.a.

### 2. Damage to Class Vehicle and/or Stolen or Damaged Personal Property

Class members may be paid up to $3,375 per incident for damage to a Class Vehicle and/or the value of personal property stolen or damaged due to a Qualifying Theft or Qualifying Theft Attempt. *Id.* § II.D.3.b. As with the Total Loss Claims, if Defendants resolve the Insurer Class Plaintiffs' subrogation claims, the Parties will convene to discuss increasing the $3,375 cap here. *Id.*

### 3. Insurance Expenses

Class members may be paid up to $375 for paid insurance deductibles and increased insurance premiums for policies that include theft coverage resulting from a Qualifying Theft or Qualifying Theft Attempt. *Id.* § II.D.3.c.

### 4. Other Qualifying Theft or Qualifying Theft Attempt Expenses

10

Pls.' Notice of Mot. and Mot. for Prelim. Approval of Class Action Settlement
Case No.:  8:22-ml-03052-JVS-KES

Class members may be paid up to $250 total per incident for the following out-of-pocket expenses related to a Qualifying Theft or Qualifying Theft Attempt: (i) car rental, taxi, ride share, or public transportation expenses not otherwise covered by insurance; (ii) towing costs necessary to transport the stolen Class Vehicle to or from a police or city storage facility, repair facility or other location necessary to inspect, repair, sell, or dispose of a stolen Class Vehicle, including a junkyard or storage facility; (iii) licensing fees, sales tax paid, registration fees, and other expenses directly associated with the purchase of new or replacement vehicle if there was a Total Loss; and (iv) costs associated with speeding tickets, red light tickets, or other penalties or fines incurred arising from a stolen Class Vehicle. *Id.* § II.D.3.d.

### 5. Software Upgrade Related Expenses

Class members with Class Vehicles eligible for the Software Upgrade may be paid up to $250 total for lost income and childcare costs resulting from implementation of the Software Upgrade. *Id.* § III.D.5.b. They may also be reimbursed for the purchase of OEM-issued key fobs (up to $350 per fob; limited to two key fobs per Class Vehicle) necessary for implementation the Software Upgrade. *Id.* § III.D.5.a.

### B. Anti-Theft Software Upgrade and Steering Wheel Lock Reimbursement for Eligible Class Vehicles

Class members with eligible Class Vehicles may obtain a free Software Upgrade to address the lack of an engine immobilizer. *Id.* § II.A.1. The Software Upgrade is designed to prevent Class Vehicles that are locked using a key fob from starting without the key being present by the method of theft popularized on TikTok and other social media channels. *Id.* § II.A.2. The Software Upgrade will be implemented on eligible Class Vehicles presented to an authorized Hyundai or Kia dealership. *Id.* § II.A.3. Following installation, the dealer will affix decals to the Class Vehicle indicating it has additional anti-theft protection. *Id.* § II.A.4. To date, more

than 6.9 million Class Vehicles, or approximately seventy-five percent, are eligible for the Software Upgrade. Defendants warrant the Software Upgrade will work as designed for the life of the Class Vehicle. S.A. § II.A.2.

Further, Defendants will issue a nationwide press campaign promoting the Software Upgrade and discussing its availability and effectiveness at preventing vehicle thefts, to include publication on social media platforms. They will also implement a driver awareness and instructional campaign regarding the Software Upgrade, and Class Counsel may confer with Defendants about the campaign's form and content. *Id*. § II.A.6.

Last, Class members with Class Vehicles eligible for the Software Upgrade may seek reimbursement up to $50 per Class Vehicle for the purchase of a steering wheel lock made at least thirty days before the Software Upgrade became available for their Class Vehicle. *Id*. § II.B.1. This Settlement benefit will be paid by Defendants separate from the common fund and it has no aggregate cap. *Id*. § II.B.2.

## C. Payments for Anti-Theft Devices for Class Vehicles Ineligible for the Software Upgrade

Class members with Class Vehicles that are ineligible to receive the Software Upgrade may seek reimbursement of up to $300 per Class Vehicle for the purchase of a steering wheel lock, a glass breakage alarm or similar anti-theft system (including installation), or another aftermarket modification designed to deter or prevent theft so long as that purchase was made when the Class Vehicle was ineligible for the Software Upgrade.[9] *Id*. §§ I.X., II.C.1. Any Class member who received a steering wheel lock provided by Defendants (either from HMA or KA (for example, shipped directly or through a dealer) or through a law enforcement department) may submit a reimbursement claim up to $250 for the purchase and installation of a glass breakage

---

[9] If the Class Vehicle becomes eligible to receive the Software Upgrade, as of thirty (30) days after the postmarked date of the mail notice notifying the Class member of such eligibility, no Qualifying Purchase made after that date will be reimbursable under the Settlement. S.A. § II.C.1.

1 alarm or similar anti-theft system (including installation), or another aftermarket
2 modification designed to deter or prevent theft. *Id*. § II.C.2. Critically, there is no cap
3 on the amount of reimbursement claims that Defendants are obligated to pay under
4 this provision of the proposed Settlement, and these payments will not be made from
5 the common fund. Based on the total number of eligible Class Vehicles, this benefit
6 may provide up to tens of millions or more in additional cash payments to Class
7 Members.

8 **IV.   ARGUMENT**

9     **A.    <u>The proposed Settlement merits preliminary approval.</u>**

10     As the Ninth Circuit recognizes, there is a "strong judicial policy that favors
11 settlements, particularly where complex class action litigation is concerned." *In re*
12 *Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations
13 omitted); *Zakikhani v. Hyundai Motor Co.*, 2022 WL 17224701, at *3 (C.D. Cal. Oct.
14 20, 2022). Under Rule 23(e), the Court must determine "'whether a proposed
15 settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is
16 the settlement taken as a whole, rather than the individual component parts, that must
17 be examined for overall fairness.'" *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir.
18 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)
19 (overruled on other grounds)).

20     "At the preliminary approval stage, a court cannot fully assess some of these
21 factors, so a full fairness analysis is unnecessary." *Callaway v. Mercedes-Benz United*
22 *States LLC*, 2017 WL 11707445, at *5 (C.D. Cal. Nov. 29, 2017) (Selna, J.) (citing
23 *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)). "Instead, a court
24 simply needs to ensure that the settlement is *potentially* fair because a court will
25 make a final determination regarding its adequacy at a hearing on final approval,
26 which occurs after any class member has had an opportunity to object or opt-out." *Id.*
27 (citing *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) (emphasis

28

added)); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2012 WL 7802852, at *6 (C.D. Cal. Dec. 28, 2012) (Selna, J.) ("the Court initially determines whether the proposed settlement seems fair on its face and is worth submitting to the class members").

Accordingly, when considering preliminary approval the Court must assess whether "(1) the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval." *Callaway*, 2017 WL 11707445, at *5 (citation omitted); *see In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2012 WL 7802852, at *6 (court's role in preliminary approval is "'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'" (citation omitted)).

### 1. The Settlement is the product of serious, informed, arm's-length negotiations by experienced Class Counsel.

This first factor asks the Court to "consider whether the settlement is a product of collusion and whether sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Maree v. Deutsche Lufthansa AG*, 2023 WL 2563914, at *7 (C.D. Cal. Feb. 13, 2023) (citation and quotation mark omitted)).

Neither the litigation and settlement process nor the substance of the proposed Settlement here indicate any collusion. The proposed Settlement was achieved through arm's-length negotiations conducted by counsel experienced in complex automobile class actions over the course of nearly eight months, under the guidance of an experienced mediator. *See* A. Conte & H.B. Newberg, Newberg On Class Actions § 11:41 ("NEWBERG") (A proposed settlement is entitled to "an initial

14

presumption of fairness" when the settlement has been "negotiated at arm's length by counsel for the class."); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (rejecting objectors' argument that settlement was the product of collusion where allegations in the complaint preceded settlement by one year and there was no other evidence of collusion); *La Fleur v. Med. Mgmt. Int'l, Inc.*, 2014 WL 2967475, at *4 (C.D. Cal. June 25, 2014) ("Settlements reached with the help of a mediator are likely noncollusive."); *Callaway*, 2017 WL 11707445, at *6 ("The extensive mediation process demonstrates to the Court that the proposed settlement is the product of serious, informed, noncollusive negotiations.").

Before agreeing to the proposed Settlement, Plaintiffs were well-informed as to the underlying facts and the strength of their case, which allowed for meaningful negotiations. Plaintiffs conducted substantial pre- and post-filing investigations, which are evinced by the comprehensive CAC. *See* Leadership Decl. ¶¶ 11, 21, 34. *See Maree*, 2023 WL 2563914, at *9 ("[W]hile formal discovery is an important factor, it is not necessary to properly grant preliminary approval. What is required at this stage is that 'sufficient discovery has been taken or investigation completed to enable counsel and the Court to act intelligently.'" (quoting NEWBERG § 11.41)). Plaintiffs also understood the strengths and weaknesses of their claims, which were a topic of discussion throughout the mediations and briefed in Defendants' motion to dismiss the CAC, as well as the motions filed in the *Marvin* action. *See Lyter v. Cambridge Sierra Holdings*, 2019 WL 13153197, at *5 (C.D. Cal. June 18, 2019) (finding the parties sufficiently informed where they engaged in significant informal discovery and adversarial motion practice, including motion to dismiss); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (finding parties had "clear view of the strengths and weaknesses of their cases" even though settlement reached before discovery stay was lifted). Further, after executing the MOU, Plaintiffs continued their investigations into the alleged Defect and began

confirmatory discovery. *See* Leadership Decl. ¶¶ 30-31, 34-35. The foregoing work provided Class Counsel sufficient information to negotiate a highly favorable settlement on behalf of the Class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("significant investigation, discovery and research" provides parties with sufficient information to make informed settlement decisions); *Byrne v. Santa Barbara Hosp. Servs., Inc.*, 2017 WL 5035366, at *8 (C.D. Cal. Oct. 30, 2017) ("[t]he parties must…have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement") (citation omitted).

Additionally, Class Counsel has represented consumers in many significant class actions, including actions against Hyundai and Kia. Leadership Decl. ¶ 37. *See Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("As a general principle, 'the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" (quoting NEWBERG § 11.51)). The proposed Settlement's terms are favorable to the Class and on par with the relief Plaintiffs demanded. *See* CAC ¶ 13 ("Plaintiffs seek equitable relief in the form of an adequate remedy for the Theft Prone Defect, an appropriate curative notice regarding the existence the Theft Prone Defect, recovery of damages, a repair under state consumer-protection statutes and implied warranties, and reimbursement of all expenses associated with the repair or replacement of the Class Vehicle and damage caused by the Theft Prone Defect").

Finally, there is no clear sailing provision in the Settlement Agreement. *See* S.A. § V. Plaintiffs will move for an award of attorneys' fees totaling up to 25% of the common fund's value, plus actual out-of-pocket litigation expenses, and $1,000 service awards for each Class Representative, which Defendants may oppose at any level. *See id.* § V.1 and 4. This eliminates any actual or perceived conflict of interest with Class members regarding the fee award, which will be decided by the Court. *See Scolaro v. RightSourcing, Inc.*, 2017 WL 11630969, at *7 (C.D. Cal. Mar. 20, 2017)

(Selna, J.) (finding no signs of collusion or self-interest where attorneys' fees capped at 25% and settlement did not include a clear sailing agreement). The proposed Settlement was thoroughly negotiated by experienced counsel and results in a fair outcome for Class members. The Court should preliminarily approve it.

### 2. The Settlement treats all Class members equitably.

Whether a settlement provides preferential treatment to any class member turns on whether there is any disparity among what class members are poised to receive and, if so, whether the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment). Here, all Class members that incurred losses arising from the theft or attempted theft of their Class Vehicle may seek reimbursement for these losses, and all Class members are afforded a remedy for the alleged Theft Prone Defect (for some that will be the Software Upgrade, for others it will be cash payments for the cost of similar anti-theft systems). Eligible Class members are also reimbursed for various other out-of-pocket costs, like the purchase of a steering wheel lock before the Software Upgrade became available. Thus, the benefits are proportionate to the harm each Class member suffered because of the alleged Defect.

Likewise, the Class Representatives will not receive preferential treatment or compensation disproportionate to their respective harm and contribution to the case. They can make claims under the proposed Settlement like any other Class member for their eligible losses. Plaintiffs will seek $1,000 service awards for each Class Representative in recognition of their dedication to the prosecution of the case, which included consulting with counsel and providing documents and other information about the case, reviewing the complaint, communicating with counsel about case developments, and reviewing and discussing the proposed Settlement with counsel.

*See Cisneros v. Airport Terminal Servs.*, 2021 WL 3812163, at *9 (C.D. Cal. Mar. 26, 2021) ("'Courts have generally found that $5,000 incentive payments are reasonable.'" (citation omitted)); *Zakikhani v. Hyundai Motor Co.*, 2023 WL 4544774, at *9-10 (C.D. Cal. May 5, 2023) (awarding $2,500 to plaintiffs not involved in dispositive motion practice or formal discovery). In support of final approval, Plaintiffs will detail their efforts to assist in the litigation.

### 3.  The Settlement has no obvious deficiencies.

Unless the Court's initial examination "disclose[s] grounds to doubt [the proposed Settlement's] fairness or other obvious deficiencies," the proposed Settlement should be preliminarily approved. *West v. Circle K Stores, Inc.*, 2006 WL 1652598, at *11 (E.D. Cal. June 13, 2006) (noting examples of obvious deficiencies, like "unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys") (citation omitted). As discussed *supra*, the proposed Settlement offers Class members fair and proportionate relief, and attorneys' fees will be considered and awarded by the Court. Because the proposed Settlement has no obvious deficiencies, preliminary approval is warranted.

### 4.  The Settlement falls within the range of possible approval.

In determining whether to grant preliminary approval, district courts must consider several factors, including: "the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959 (internal citation and quotation marks omitted); *see also* Fed. R. Civ. P. 23(e). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts

and circumstances presented by each individual case." *Officers for Just. v. Civ. Serv.*
*Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Moreno v.*
*Pretium Packaging, L.L.C.*, 2021 WL 3673845, at *1 (C.D. Cal. Aug. 6, 2021)
("Each factor does not necessarily apply to every class action settlement, and others
may also be considered." (citation omitted)).

### i. The strength of Plaintiffs' case and risk, expense, complexity, and likely duration of further litigation

While Plaintiffs believe their case and claims are strong, they recognize the
considerable risks inherent in litigation and unique difficulties presented by the facts
at issue here. *See Shahbazian v. Fast Auto Loans*, *Inc.*, 2019 WL 8955420, at *6
(C.D. Cal. June 20, 2019) (recognizing "the uncertainty and risks inherent in
litigation and potential appeals"). Among other challenges, this litigation concerns
dozens of vehicle models, some of which were designed and sold over a decade ago,
and establishing Defendants' knowledge of the alleged Theft Prone Defect at the time
of sale through records that old presents considerable difficulties. The case also
presents novel and untested theories of liability that may not withstand dispositive
motions or challenges on appeal. For instance, Plaintiffs' claims are based in part on
the interpretation and application of FMVSS No. 114, which has never been tested in
a courtroom or applied by NHTSA in the manner alleged by Plaintiffs. Further, the
involvement of criminal third-party acts raises novel questions regarding causation
and the specter of unique fact questions that would be difficult to overcome at class
certification.

Class actions typically entail a high level of risk, expense, and complexity,
which is one reason that judicial policy so strongly favors their resolution through
settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998)
(affirming district court's approval of settlement and class certification). Class
Counsel are all well experienced in complex class actions, including automotive

defect actions, which take many years to resolve and are highly unpredictable. Nearly all the consumer cases in this MDL were filed within the last twelve months and are nowhere near trial. While Class Counsel have engaged in informal discovery and started confirmatory discovery, the amount of discovery necessary for class certification and trial (in the absence of the proposed Settlement) would be substantial. In addition to discovery expenses, the Parties would incur significant expenses and attorney time relating to experts, class certification, dispositive motions, and pre-trial preparations. By the time Plaintiffs' claims are presented to a jury, which likely would not occur until mid-2025 at the earliest, many more Class members will have suffered vehicle thefts and damages, sold their vehicles, and otherwise lost the benefits offered under the proposed Settlement. Even if Plaintiffs are successful at trial, there are likely to be appeals, further delaying relief to Class members. *See Casey v. Doctor's Best, Inc.*, 2022 WL 1726080, at *8 (C.D. Cal. Feb. 28, 2022) (observing that even if plaintiff prevailed at every stage, the possibility of lengthy appeals evidenced substantial risk of further litigation). Delayed relief would also increase difficulties with claims administration as Class members may be harder to identify and required claim documentation harder to locate.

This Settlement balances these costs, risks, and potential for delay with its benefits, achieving relief that is desirable to the Class. *See* NEWBERG § 11:50 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

### ii.   The risk of maintaining class action status through trial

A litigation class has not been certified here. If this litigation continued without settlement, Plaintiffs face risk at the class certification stage. *See Acosta*, 243 F.R.D. at 392 ("The value of a class action 'depends largely on the certification of the class,' and [] class certification undeniably represents a serious risk for plaintiffs in any class action lawsuit." (citation omitted)). Plaintiffs believe this case warrants class

certification and they would marshal evidence in support of such a motion. Class certification proceedings, however, are highly discretionary. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 987 (9th Cir. 2011). Proceeding with a class certification motion here also risks the Court rejecting nationwide relief. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012), *overruled on other grounds* (finding California's choice-of-law rules precluded nationwide consumer class).

Litigation following successful class certification is equally plagued by risks. *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007) (discussing risk of continued litigation following class certification). It is highly uncertain whether the Class would obtain a better outcome through continued litigation and trial. In fact, there is a risk that the Class would receive less or even nothing at trial, and even if Plaintiffs prevailed at trial, the recovery could take years to reach Class members. Much of the prospective anti-theft benefits for the Class Vehicles (*e.g.*, the Software Upgrade and reimbursements for anti-theft devices) would be diminished by delay. Put simply, should Plaintiffs succeed at trial, it is unlikely that Class members would receive relief superior to the proposed Settlement.

### iii.      The amount and type of relief offered in settlement

The proposed Settlement creates a common fund of $80 million to $145 million from which Class members can recover cash payments for out-of-pocket losses arising from theft incidents. It also provides remedies for the alleged Theft Prone Defect, including a Software Upgrade and tens of millions or more in cash payments for the installation of anti-theft devices in Class Vehicles, to prevent future injuries due to the Defect. Class members will therefore receive practically all the relief Plaintiffs sought in their complaints, while avoiding the risks of continued litigation. This factor weighs in favor of preliminary approval. *See Officers for Just.*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a

21

Pls.' Notice of Mot. and Mot. for Prelim. Approval of Class Action Settlement
Case No.:  8:22-ml-03052-JVS-KES

fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." (citation omitted)).

One additional beneficial outcome offered by the proposed Settlement is the extent to which it incentivizes and promotes installation of the Software Upgrade and other anti-theft systems in the Class Vehicles, which is key to slowing the theft incidents. The proposed Settlement offers cash reimbursements for expenses incurred in obtaining the Software Upgrade, and it requires the Software Upgrade automatically be installed in Class Vehicles brought to dealerships, even where the Class member is unaware of it and otherwise brings in their Class Vehicle for other repairs and routine maintenance. Likewise, the proposed Settlement incentivizes and assists Class members with Class Vehicles ineligible for the Software Upgrade to purchase other anti-theft products by making them reimbursable, thereby further discouraging thieves from targeting all Class Vehicles.

### iv. The extent of discovery completed and the stage of the proceedings

This factor contemplates whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. In class actions, the parties may obtain sufficient information through formal or informal discovery. *See Clesceri v. Beach City Investigations & Protective Servs.*, 2011 WL 320998, at *9 (C.D. Cal. 2011) (citing *Linney*, 151 F.3d at 1239).

Before filing complaints and the creation of this MDL, and continuing through settlement negotiations, Class Counsel devoted substantial time to investigating the underlying facts and developing the factual and legal allegations. This included a review of publicly available sources of technical information, hundreds of interviews with putative Class members, technical analyses relating to the design of the steering wheel columns and ignition assemblies in the Class Vehicles, and consultation with automotive experts. Leadership Decl. ¶¶ 11, 21, 34. Further, Plaintiffs began

confirmatory discovery, which will allow them to verify the fairness of the Settlement benefits and obtain information and testimony from Defendants with knowledge of the alleged Defect and proposed remedies, including the Software Upgrade, before final approval. S.A. at 2; Leadership Decl. ¶ 35.

Based on Class Counsel's substantial experience litigating automotive defect cases, the information received was sufficient to evaluate the fairness of the proposed Settlement. Leadership Decl. ¶ 36. While resolving this litigation, Plaintiffs had a strong understanding of the strength and weakness of their case and were well-situated to make an informed decision regarding settlement. *Id. See In re Mego Fin. Corp.*, 213 F.3d at 459 (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" where formal discovery had not been completed but Class Counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services").

### v.    The experience and views of counsel

While the Court should not blindly accept the views of counsel, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Class Counsel believes the proposed Settlement is fair, reasonable, and adequate based on their extensive experience litigating class actions, and specifically automotive defect class actions. *See* Leadership Decl. ¶¶ 4, 37-38. At the preliminary approval stage, "[t]he recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs.*, 559 F. Supp. at 1043.

### vi.    The presence of a governmental participant

This factor looks to "the views of governmental participants" regarding the proposed Settlement. *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1082 (C.D. Cal. 2010). While several municipalities have filed suit in this MDL for

damages they allegedly sustained, to Class Counsel's knowledge, none seek economic losses by consumers, rather they purport to seek damages incurred by public entities. Moreover, while these governmental participants are aware of the proposed Settlement, which was disclosed in May 2023, none have objected to it. Accordingly, this factor favors approval. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 WL 12327929, at *18 (C.D. Cal. July 24, 2013) (finding settlement "bears the silent imprimatur of government approval because despite receiving notice, no state or federal official has filed an objection to the proposed settlement.").

### vii.  The reaction of class members

Notice has not yet gone out to the Class, nor have Class members had the opportunity to object, so it is premature to assess this factor. *See Navarrete v. Sprint United Mgmt. Co.*, 2021 WL 4352903, at *11 (C.D. Cal. Mar. 2, 2021) (noting lack of evidence concerning this factor "is not uncommon at the preliminary approval stage"). Before the final approval hearing, the Parties will submit declarations addressing any objections received after Settlement notice is disseminated. *See id.*

### B.  <u>The Settlement Class should be certified.</u>

To be certified, a class action must satisfy the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a) and must also meet the requirements for one of the three types of class actions specified in Rule 23(b). *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 556. "The criteria for class certification are applied differently in litigation classes and settlement classes." *Id.*

### 1.  The proposed Settlement Class meets the requirements of Rule 23(a).

The Settlement Class satisfies all four requirements under Rule 23(a). First, Rule 23(a)(1) requires the classes be "so numerous that joinder of all members is impracticable." Classes comprised of at least forty members are generally sufficient.

1    *Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010). Here, the proposed

2    Settlement Class encompasses more than nine million Class Vehicles, satisfying

3    numerosity. *See Patrick v. Volkswagen Grp. of Am.*, 2021 WL 3616105, at *1 (C.D.

4    Cal. Mar. 10, 2021) (finding numerosity satisfied where class size consisted of 14,847

5    settlement class vehicles sold in United States).

6          Second, Rule 23(a)(2) requires that "there are questions of law or fact common

7    to the class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to

8    demonstrate that the class members have suffered the same injury." *Wal-Mart Stores,*

9    *Inc. v. Dukes*, 564 U.S. 338, 349-50 (2011) (citation and quotation marks omitted).

10   Commonality is "construed permissively" in the Ninth Circuit and a single question

11   of law or fact common to the class may suffice. *Hanlon*, 150 F.3d at 1019. "All

12   questions of fact and law need not be common to satisfy the rule" and "[t]he

13   existence of shared legal issues with divergent factual predicates is sufficient, as is a

14   common core of salient facts coupled with disparate legal remedies within the class."

15   *Id.* ("minimal requirements" of commonality satisfied where class members' "claims

16   stem from the same source: the allegedly defective designed rear liftgate latch

17   installed in minivans manufactured by Chrysler between 1984 and 1995."). Here,

18   each Class member's claims stem from common questions, including: (1) whether the

19   Class Vehicles contain a safety defect; (2) whether Defendants had knowledge of the

20   alleged Theft Prone Defect at the time of sale; (3) whether Defendants concealed the

21   alleged Theft Prone Defect; and (4) whether Defendants' conduct violates the

22   consumer protection statutes alleged, and the implied warranty of merchantability.

23   Each of these questions gives rise to common answers, which would "drive the

24   resolution of the litigation" for the Class. *See Dukes*, 564 U.S. at 350. Thus,

25   commonality is satisfied.

26         Third, Rule 23(a)(3) requires "the claims or defenses of the representative

27   parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

28

"The purpose of the typicality requirement is to assure that the interest of the named representative aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (citation omitted). In light of its purpose, typicality is interpreted "permissive[ly,]" like commonality, "and requires only that the representative's claims are 'reasonably co-extensive with those of absent class members; they need not be substantially identical.'" *Rodriguez v. Hayes*, 591 F.3d 1105, 1124 (9th Cir. 2010) (quoting *Hanlon*, 150 F.3d at 1020); *Wolin*, 617 F.3d at 1175 ("The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." (citation omitted)). Here, Plaintiffs' claims arise out of the same facts and circumstances as those of the Class because they each purchased or leased a Class Vehicle that suffers from design flaws which renders the vehicle highly susceptible to theft. Plaintiffs and the Class thus suffered the same injury: namely, they were sold or leased a defective vehicle that has required or will require a repair to make the vehicle safe. *See Wolin*, 617 F.3d at 1175 ("Typicality can be satisfied despite different factual circumstances...."); *Lymburner v. U.S. Fin. Funds, Inc.*, 263 F.R.D. 534, 540 (N.D. Cal. 2010) (finding "no authority for the argument that typicality is defeated because the remedies may be different for class members") (quoted in *Wolin*, 617 F.3d at 1175).

Fourth, Rule 23(a)(4) requires "the representative parties fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). There are two components to adequacy: (1) the absence of any conflicts of interest between plaintiffs and their counsel and other class members; and (2) plaintiffs and their counsel's vigorous prosecution of the claims on behalf of absent class members. *See Hanlon*, 150 F.3d at 1020. Here, Plaintiffs and Class Counsel do not have any conflicts of interest with other Class members. Class Counsel conducted extensive investigations into the

factual and legal issues affecting all Class members' claims, negotiated the
Settlement Agreement with the assistance of a respected mediator, and are conducting
sufficient confirmatory discovery to ensure the proposed Settlement is in the best
interests of all Class members. Counsel devoted significant time to prosecuting these
claims and pursuing relief on behalf of all Class members. Leadership Decl. ¶ 34. The
result is a proposed Settlement that fairly and proportionately compensates Class
members for their respective harm due to the alleged Defect. Plaintiffs too have
devoted themselves to the litigation for the benefit of the Class. Plaintiffs understand
their duties as class representatives, have agreed to act in the best interest of the
Class, and have actively participated in the litigation and will continue to do so
through final approval. *See In re Hyundai & Kia Fuel Econ. Litig.,* 926 F.3d at 566
(due process requires class representatives adequately represent interests of absent
class members at all times). Indeed, the Settlement's significant benefits for the Class
only came about because of Plaintiffs' and Class Counsel's dedication to the Class's
best interests.

Plaintiffs and Class Counsel satisfy the adequacy requirement and Rule 23(a).

### 2. The proposed Settlement Class meets the requirements of Rule 23(b)(3).

Rule 23(b)(3) requires the Court find "the questions of law or fact common to
class members predominate over any questions affecting only individual members,
and that a class action is superior to other available methods for fairly and efficiently
adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). First, the "predominance
inquiry tests whether proposed classes are sufficiently cohesive to warrant
adjudication by representation…[and] focuses on the relationship between the
common and individual issues." *Hanlon*, 150 F.3d at 1022. "There is no definitive
test for determining whether common issues predominate, however, in general,
predominance is met when there exists generalized evidence which proves or
disproves an [issue or] element on a simultaneous, class-wide basis…." *Herrera v.*

1  *Wells Fargo Bank, N.A.*, 2021 WL 3932257, at *6 (C.D. Cal. June 8, 2021) (citation

2  omitted). The presence of certain issues not suitable for class-wide adjudication, such

3  as affirmative defenses peculiar to some individuals, do not defeat predominance.

4  *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016).

5       Here, the questions at the core of Plaintiffs' claims are whether the Class

6  Vehicles are similarly defective (namely, whether the vehicles comply with FMVSS

7  No. 114), whether Defendants had a duty to disclose the alleged Theft Prone Defect

8  at the time of sale, whether Defendants knowingly concealed the Defect, and whether

9  Class members suffered an economic loss because of the misrepresentations and

10  omissions. Each of these questions is answered based on evidence common to all

11  Class members. For example, the evidence necessary to show Defendants' knowledge

12  of the alleged Defect will include, among other things, Defendants' design and

13  FMVSS No. 114 self-certification records, neither of which would change from one

14  Class member to the next. These common issues "are more prevalent or important

15  than the non-common, aggregation-defeating, individual issues." *Tyson Foods*, 577

16  U.S. at 453; *see Wolin*, 617 F.3d at 1173 ("Common issues predominate such as

17  whether Land Rover was aware of the existence of the alleged defect, whether Land

18  Rover had a duty to disclose its knowledge and whether it violated consumer

19  protection laws when it failed to do so."); *In re Toyota Motor Corp. Unintended*

20  *Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.*, 2012 WL 7802852, at *4 ("the

21  common issue that predominates is whether the Subject Vehicles have a common

22  defect or defects. The same evidence is relevant to all class members claims. Another

23  common issue that predominates involves Toyota's representations regarding their

24  vehicles, upon which many class claims are based.").

25       Second, car defect cases that affect millions of vehicles and consumers are the

26  ideal candidates for class treatment. *See*, *e.g.*, *Keegan v. Am. Honda Motor Co.*, 284

27  F.R.D. 504, 549-50 (C.D. Cal. 2012) (finding class action superior to individual

28

1  actions where expected return is small compared to cost to pursue claims). "From

2  either a judicial or litigant viewpoint, there is no advantage in individual members

3  controlling the prosecution of separate actions. There would be less litigation or

4  settlement leverage, significantly reduced resources and no greater prospect for

5  recovery." *Hanlon*, 150 F.3d at 1023. The meaningful benefits achieved in this

6  proposed Settlement were obtained because of the strength of the Class's claims in

7  the aggregate. The cost to prosecute an automotive defect case is exorbitant and far

8  exceeds the amount of damages suffered by any individual class member. Individual

9  litigation is simply an inferior method of adjudication and not a viable alternative for

10  most consumers. *See Keegan*, 284 F.R.D. at 549-50. Finally, in a settlement, "the

11  proposal is that there be no trial," and so manageability considerations do not affect

12  whether the proposed settlement class should be certified. *Amchem Prods. v.*

13  *Windsor*, 521 U.S. 591, 620 (1997); *see also In re Hyundai & Kia Fuel Econ. Litig.*,

14  926 F.3d at 556-57 ("manageability is not a concern in certifying a settlement class

15  where, by definition, there will be no trial.").

16      The Class meets the predominance and superiority requirements of Rule

17  23(b)(3) and should be certified for settlement purposes.

18  **C.**   **The Court should order dissemination of Class notice.**

19      Whether to order dissemination of proposed settlement notice "is an important

20  event" and "should be based on a solid record supporting the conclusion that the

21  proposed settlement will likely earn final approval after notice and an opportunity to

22  object." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

23  Before finally approving a class settlement, "[t]he court must direct notice in a

24  reasonable manner to all class members who would be bound by the proposal." Fed.

25  R. Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the

26  notice must also be the "best notice that is practicable under the circumstances,

27  including individual notice to all members who can be identified through reasonable

28

29

Pls.' Notice of Mot. and Mot. for Prelim. Approval of Class Action Settlement
Case No.:  8:22-ml-03052-JVS-KES

effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C.*, 361 F.3d at 575 (citation and quotation marks omitted). The notice program provided in the Settlement Agreement satisfies these standards.

The notice program here includes a dedicated settlement website and thorough Long Form Notice (also available on the website). S.A. § IV.C.3. The Long Form Notice and Claim Form will be sent via U.S. mail to all reasonably identifiable Class members. *Id.* § IV.C.1. Class members for which Defendants maintain email addresses will also receive emails containing a hyperlink to the settlement website and electronic copies of the Long Form Notice and Claim Form. *Id.* § IV.C.2. Claims can be submitted by U.S. mail, email, and through the settlement website. *Id.* §§ III.B.2, IV.C.3. Consumers will be able to enter their Vehicle Identification Numbers ("VIN") on the settlement website, without completing a claim form, to easily determine if their vehicles are Class Vehicles and whether it is eligible for the Software Upgrade. *Id.* § IV.C.3. Hyperlinks to the settlement website will be posted on Hyundai and Kia's respective websites. *Id.* § IV.B. Publication notice will also be issued monthly. *Id.* § IV.C.4. Defendants will pay all Class notice and settlement administration costs. *Id.* § II.E.

### 1. The proposed Settlement provides the best method of notice practicable.

The Settlement provides that all reasonably identifiable Class members will receive a copy of the Long Form Notice and a Claim Form via direct U.S. mail, which satisfies the requirements of due process. S.A. § IV.C.1. *See Sullivan v. Am. Express Publ'g Corp.*, 2011 WL 2600702, at *8 (C.D. Cal. June 30, 2011) ("Notice by mail has been found by the Supreme Court to be sufficient..." (citation omitted)). To identify Class members for notice, Defendants will provide all names and addresses of Class Vehicle owners, along with Class Vehicle VINs, to a third-party

entity authorized to use that information to obtain the names and most current addresses of Class members through state agencies. S.A. § IV.C.1.

In addition to notice through U.S. mail, the Settlement Administrator will email a hyperlink to the dedicated settlement website and an electronic version of the Long Form Notice and Claim Form to Class members for which Defendants maintain an email address. *Id.* § IV.C.2. The dedicated settlement website will contain: (i) instructions on how to obtain reimbursements; (ii) a mechanism for Class members to submit claims electronically; (iii) instructions for contacting the Settlement Administrator for assistance with claims; (iv) the Long Form Notice; (v) the Claim Form; (vi) the Settlement Agreement; (vii) any orders issued in this litigation approving or disapproving of the proposed Settlement; and (viii) any other information the Parties determine is relevant to the Settlement. *Id.* § IV.C.3. Defendants will make the same information available to Class members through their websites via links to the dedicated settlement website. *Id.* § IV.B. Further, the Settlement Administrator will issue monthly press releases notifying the public of the existence of the Settlement, the Settlement website, and all opt-out and objection deadlines. *Id.* § IV.C.4. The Settlement Administrator will be available to respond to questions regarding the status of submitted claims, how to submit a claim, and other aspects of the settlement via a dedicated, toll-free telephone number and email. *Id.* §§ III.B.2-3, IV.C.5. Finally, the Settlement Administrator will report to Class Counsel the total number of notices sent to Class members by U.S. mail and email, along with the numbers of notices returned as undeliverable, so that counsel may ensure notice is appropriately disseminated. *Id.* § IV.D.

Accordingly, Plaintiffs request the Court approve this notice method as the best practicable method under the circumstances. *See, e.g.*, *Rannis*, 380 F. App'x at 650 (finding mailed notice the best notice practicable where reasonable efforts were taken to ascertain class members' addresses).

### 2.  The proposed Notice plan informs Class members of their rights.

The notice provided to Class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). The form of notice proposed by the Parties complies with those requirements. S.A., Exs. A-B. The Long Form Notice to be sent to Class members through U.S. Mail and email will explain the terms of the proposed Settlement, the Class definition, the underlying litigation, and that Class members may appear through counsel; detail the process for requesting exclusion from or objecting to the proposed Settlement; and disclose the binding effect of the proposed Settlement on Class members if they do not request exclusion. *Id.* Plaintiffs believe this is the most effective way to alert Class members to the existence of the proposed Settlement and convey detailed information about the settlement approval process, and accordingly ask the Court to approve the proposed forms of Notice. *See Banh v. Am. Honda Motor Co.*, 2021 WL 3468113, at *9 (C.D. Cal. June 3, 2021) (approving notice plan comprised of mailing and email to class members and creation of settlement website).

### 3.  Notice to Federal and State Officials

Defendants will provide notice of the Settlement to the U.S. Attorney General and appropriate regulatory officials, as required by 28 U.S.C. § 1715. S.A. § IV.A.

## V.    CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court grant their Motion and enter the accompanying proposed Preliminary Approval Order. Plaintiffs further request the Court set a schedule for key dates including a Fairness Hearing date, and they propose the following:

| EVENT | DATE |
|---|---|
| Preliminary Approval Hearing | August 15, 2023 |
| Class Notice Disseminated ("Notice Date") | No later than 120 days after entry of Preliminary Approval Order |
| Motion for an Award of Attorneys' Fees, Expenses, and Service Awards Filed | 45 days after Notice Date |
| Motion for Final Approval Filed | 45 days after Notice Date |
| Objection and Opt-Out Deadline | 60 days after Notice Date |
| Supplemental Response to any Objections Filed | 30 days after Objection Deadline |
| Settlement Fairness Hearing | No earlier than 120 days after Notice Date |

Dated: July 20, 2023.                    Respectfully Submitted.

By:  /s/ Steve W. Berman
　　Steve W. Berman, Esq.
　　**HAGENS BERMAN SOBOL SHAPIRO LLP**
　　1301 Second Avenue, Suite 2000
　　Seattle, Washington 98101
　　Telephone: 206-623-7292
　　Facsimile: 206-623-0594
　　Email: steve@hbsslaw.com

By:  /s/ Elizabeth A. Fegan
　　Elizabeth A. Fegan, Esq.
　　**FEGAN SCOTT LLC**
　　150 S. Wacker Dr., 24th Floor
　　Chicago, Illinois 60606
　　Telephone:　312.741.1019
　　Fax:　　　　312.264.0100
　　Email: beth@feganscott.com

By:  /s/ Kenneth B. McClain
　　Kenneth B. McClain, Esq.
　　**HUMPHREY FARRINGTON & McCLAIN**
　　221 W. Lexington Ave., Suite 400
　　Independence, Missouri 64050

33

Telephone:    816.836.5050
Facsimile:    816.836.8966
Email: kbm@hfmlegal.com

By:  */s/ Roland Tellis*
Roland Tellis, Esq.
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: 818.839.2333
Facsimile:    214.523.5500
Email: rtellis@baronbudd.com

*Consumer Class Action Leadership Counsel and Counsel for Plaintiffs*