# Exhibit 1

# SETTLEMENT AGREEMENT

*In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liab. Litig.*, Case No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.)

This Settlement Agreement is entered into as of July 20, 2023, by and between Consumer Plaintiffs Kari Eldridge, Brittany Kingsbury, Miyoshi Morrow, Stefani Poblete Taylor, Adam Lippert, Michael Kay, Mollie McGeehon, Herbert Taylor, Arlecia Brown, Edith Bucio, Matthew Pavonetti, Jason Reyes, Ann Brady, Mark Thompson, Renee Ledet, Ian Michael Scott, Irene Beach, Leilani Cabrera, John Dylan Burton, Eric Bain, Steven Hufford, Talysia Ruff, Tyler McGill, John McGraw, Cameron Morton, Lexii Cummings, Matthew Jacobsen, Dennette Ray, Brian Helm, Adriana Pilant, Luis Enrique Vargas Rodriguez, David Lucas, Leanna Adams, Iona Barnes, Craig Granville, Jisun Kang, Michelle Pollack, Rachel Perry, Claire Roberts, Mary Kathryn Morrison, Patricia Sumpterbynum, Kristina McKnight, Trina Johnson, Marcella Blum, Matthew Butler, Kayla Collyer, David Larsen, Anthony Loburgio, Katelyn McNerney, Eryca Smith, Dave Sessions, Tajia Turner, Laura Roberts, Hubert Matthews, Rita Day, Kasey Weinfurtner, Charles Hession, Molly O'Connor, Rejene Jackson, Tiffany Devonish, Darlene Bennor, Jacquella Russell, Lauren Hernandez, John Pope, Pauline Ragsdale, Kathy Hughes, Rosemary Winner Johnson, Maggie Ketchie, Peggy Ciafullo, Amber Hall, Michael Ryle, James DePorche, Ronald DeSarro, Teresa Harris, Cameron Cunningham, Shatoya McKinney, Gerald Smith, Lauren Kawetschansky, Shana Eberhardt, Michelle Wagner, Adrian Matthews, Carolyn Catlos, Albert Lui, Nadine Quate Francis, Michael Scalise, ("Consumer Plaintiffs" or "Class Representatives"), individually and as representatives of the Class defined below, and Defendants Hyundai Motor America ("HMA"), Hyundai Motor Company ("HMC"), Hyundai American Technical Center, Inc. also doing business as Hyundai-Kia America Technical Center ("HATCI"), Kia America, Inc. ("KA"), and Kia Corporation ("KC"), (HMA, HMC, HATCI, KA, and KC are collectively the "Defendants"; Plaintiffs and Defendants are collectively the "Parties").

WHEREAS, *Marvin v. Kia America, Inc. et al.*, No. 2021CV003759 was filed on June 23, 2021, on behalf of one or more putative classes of consumers and removed to the Eastern District of Wisconsin on October 5, 2021. *Marvin v. Kia America, Inc. et al.*, No. 2:21-cv-1146-PP (E.D. Wis.). Whereas, thereafter, many similar putative consumer class actions were filed nationwide;

WHEREAS, on December 22, 2022, the Judicial Panel on Multidistrict Litigation transferred the putative consumer class action cases to the Central District of California where they are centralized as *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liab. Litig.*, Case No. 8:22-ML-3052 JVS (KESx) (C.D. Cal.) (the "Action");

WHEREAS, these cases arise from Consumer Plaintiffs' allegations that certain Hyundai and Kia vehicles that were manufactured without an engine immobilizer are unduly susceptible to theft;

WHEREAS, Defendants deny Consumer Plaintiffs' allegations, deny all liability and culpability, and maintain that they have meritorious defenses;

WHEREAS, following centralization of the cases, the Hon. James V. Selna appointed Steve W. Berman, Elizabeth A. Fegan, Kenneth McClain, and Roland Tellis as Lead Counsel for the putative consumer classes ("Class Counsel");

WHEREAS, on April 10, 2023, Consumer Plaintiffs filed their Consolidated Amended Consumer Class Action Complaint (ECF No. 84);

WHEREAS, Defendants in the Action moved to dismiss the claims of the Consumer Plaintiffs on May 1, 2023 (ECF No. 95);

WHEREAS, Class Counsel thoroughly analyzed Defendants' motion to dismiss, and continued to analyze the strength and weaknesses of their claims and the risks associated with continued litigation;

WHEREAS, following centralization of the cases, counsel for the Parties met and conferred several times regarding Consumer Plaintiffs' allegations, Defendants' defenses, and potential resolution of the litigation;

WHEREAS, as part of these settlement discussions, and in the context of a potential classwide resolution, Defendants informed Plaintiffs that they planned to make available for eligible vehicles, a software upgrade that was designed to prevent vehicles locked with the key fob from starting without the key being present by the method of theft popularized on TikTok and other social media channels;

WHEREAS, Defendants and Consumer Plaintiffs in the Action mediated several times, with the assistance of Hon. Margaret M. Morrow (Ret.) of Judicate West, and reached an agreement in principle to resolve the consumer class allegations and agreed to specify the conditions of Settlement in this Settlement Agreement, to be filed with the Court for approval;

WHEREAS, Class Counsel have investigated the facts and law relating to Consumer Plaintiffs' claims and Defendants' defenses, and have concluded that a settlement with Defendants according to the terms set forth below is in the best interests of Consumer Plaintiffs and the Class;

WHEREAS, despite their denial of any liability or culpability and their belief that they have meritorious defenses to the claims alleged, Defendants nevertheless have decided to enter into this Settlement Agreement as a benefit to their customers and to avoid further litigation;

WHEREAS, Class Counsel have and will continue to take reasonable confirmatory discovery, to the extent that additional information is reasonably required to support the terms of the Settlement Agreement. Any such discovery shall be subject to limitations as negotiated by Class Counsel and Defendants' counsel;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and intending to be legally bound, it is agreed by and among the undersigned that this Action be settled, compromised, and judgment entered on the terms and conditions set forth below:

# I.    **DEFINITIONS**

### A.    **"Action"**

"Action" refers to the consolidated litigation titled *In re: Kia Hyundai Vehicle Theft Litigation*, MDL No. 8:22-ml-03052 (C.D. Cal.), inclusive of all underlying cases that were consolidated.

### B.    **"Claim"**

A "Claim" is a request for reimbursement or payment under this Settlement Agreement.

### C.    **"Claimant"**

A "Claimant" is a Class member or other person or entity eligible to make a Claim pursuant to this Settlement Agreement.

### D.    **"Claim Form"**

"Claim Form" refers to a form used to make a Claim under this Settlement, substantially in the form attached hereto as Exhibit B.

### E.    **"Class" or "Settlement Class"**

"Class" or "Settlement Class" refers to all persons or entities who purchased or leased a Class Vehicle in the United States (including Puerto Rico, Virgin Islands, and Guam). Excluded from the Class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; any judge to whom this Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons. In addition, excluded from the Class are individuals and/or entities who validly and timely opt-out. Also excluded from the Class are consumers and businesses, including insurers, that have purchased or otherwise obtained title for Class Vehicles previously deemed a total loss (*i.e.*, salvage or junkyard vehicles) (subject to verification through Carfax or other means) and current or former owners of Class Vehicles that previously released their claims in an individual settlement with one or more Defendants with respect to the issues raised in the Action.

### F.    **"Class Counsel"**

"Class Counsel" means the Consumer Class Action Leadership Counsel in the Action—Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Elizabeth A. Fegan of Fegan Scott LLC, Kenneth B. McClain of Humphrey Farrington & McClain, P.C., and Roland Tellis of Baron & Budd, P.C., as per the February 9, 2023 Order of Judge Selna in the Action (ECF No. 50).

## G.     "Class Vehicle"

"Class Vehicle" refers to all MY2011-2022 Kia and Hyundai vehicles manufactured without an engine immobilizer that were sold in the United States (including Puerto Rico, Virgin Islands, and Guam), including:

| Hyundai | Kia |
|---|---|
| 2011-2022 Accent | 2011-2021 Forte |
| 2011-2022 Elantra | 2021-2022 K5 |
| 2013-2020 Elantra GT | 2011-2020 Optima |
| 2013-2014 Elantra Coupe | 2011-2021 Rio |
| 2011-2012 Elantra Touring | 2011-2021 Sedona |
| 2011-2014 Genesis Coupe | 2021-2022 Seltos |
| 2018-2022 Kona | 2011-2022 Soul |
| 2020-2021 Palisade | 2011-2022 Sorento |
| 2011-2022 Santa Fe | 2011-2022 Sportage |
| 2013-2018 Santa Fe Sport | |
| 2019 Santa Fe XL | |
| 2011-2019 Sonata | |
| 2011-2022 Tucson | |
| 2012-2017, 2019-2021 Veloster | |
| 2020-2021 Venue | |
| 2011-2012 Veracruz | |

## H.     "Consumer Plaintiffs' Counsel"

"Consumer Plaintiffs' Counsel" (as distinct from "Class Counsel") means Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Elizabeth A. Fegan of Fegan Scott LLC, Kenneth B. McClain of Humphrey Farrington, P.C. & McClain, Roland Tellis of Baron & Budd, P.C., Jeffrey S. Goldenberg of Goldenberg Schneider LPA, Matthew D. Schelkopf of Sauder Schelkopf LLC, Tiffany Marko Yiatras of Consumer Protection Legal LLC, Michael F. Ram of Morgan and Morgan Complex Litigation Group, Amanda K. Klevorn of Burns Charest LLP, Jason S. Rathod of Migliaccio and Rathod LLP, as per the February 9, 2023 Order of Judge Selna in the Action (ECF No. 50).

## I.     "Court"

"Court" means the United States District Court for the Central District of California.

## J.     "Defendants" or "Settling Defendants"

"Defendants" or "Settling Defendants" means HMA, HMC, HATCI, KA, and KC.

## K.     "Effective Date"

"Effective Date" means the first date after the Court's entry of the Final Approval Order and Judgment, if no appeal is timely filed or if no motion to extend the time for filing an appeal has been filed. If there is an appeal, the Effective Date of this Settlement Agreement shall be the

date on which all appellate rights with respect to the Final Approval Order and Judgement in the Action have expired or been exhausted in such a manner as to render the Final Approval Order and Judgment non-appealable.

### L. "Fairness Hearing" and/or "Final Approval Hearing"

"Fairness Hearing" and/or "Final Approval Hearing" means the final hearing to be conducted by the Court on such date as the Court may order to determine the fairness, adequacy, and reasonableness of the Settlement Agreement in accordance with applicable jurisprudence, to be held after notice has been provided to the Settlement Class in accordance with this Settlement Agreement, and where the Court will: (a) determine whether to grant final approval to the certification of the Settlement Class; (b) determine whether to designate Consumer Plaintiffs as the representatives of the Settlement Class; (c) determine whether to designate Class Counsel as counsel for the Settlement Class; (d) determine whether to grant final approval to the Settlement Agreement; (e) rule on Class Counsel's Application for a Fee and Expense Award; (f) rule on Class Representatives' Application for Class Representative Service Awards; and (g) consider whether to enter the Final Approval Order.

### M. "Final Approval Order and Judgment"

"Final Approval Order and Judgment" means the order and judgment issued by the Court granting final approval of this Settlement Agreement, confirming certification of the Classes, and making such other findings and determinations as the Court deems necessary and appropriate to approve the Settlement.

### N. "Insurance Records"

"Insurance Records" refers to documents issued by the Claimant's car insurance company reflecting either denial of coverage or a final insurance settlement that shows how much the insurance paid minus the deductible (showing the deductible amount).

### O. "Long Form Notice"

"Long Form Notice" refers to the notice to be sent to the Class as detailed below, substantially in the same form as Exhibit A.

### P. "Notice Date"

"Notice Date" refers to the date 90 days after the Court enters an order preliminarily approving this Settlement Agreement.

### Q. "Parties" or "Party"

"Parties" (or "Party" individually) means Consumer Plaintiffs and/or Defendants.

R.      **"Preliminary Approval Order"**

"Preliminary Approval Order" means the order issued by the Court granting preliminary approval of this Settlement Agreement.

S.      **"Proof of Ownership"**

"Proof of Ownership" means a copy of any document(s) issued to a Claimant by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that the Claimant currently owns or leases (or previously owned or leased) a Class Vehicle, identified by Vehicle Identification Number ("VIN"). Examples of such documents include owner registration card, vehicle title, bank note identifying the vehicle, and insurance card. Defendants and the Settlement Administrator are not responsible for returning documents (i.e., Claimants should not send in original registration cards or vehicle titles when submitting Claims).

T.      **"Proof of Payment"**

"Proof of Payment" refers to the original or copy of any document(s) generated at or around the time expenses were incurred showing that the Claimant paid for the expenses incurred (*e.g.*, a Qualifying Purchase, towing expenses, transportation expenses, etc.) for which they may be entitled to reimbursement under this Settlement Agreement. "Proof of Payment" must reflect the method of payment the Claimant used, the cost of the expense, and the name of the entity charging the Claimant for the expense. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in cash shall include a valid corresponding final invoice or repair order, proof of withdrawal of cash from a bank or credit union, along with an attestation under penalty of perjury by the Claimant that they do not have a cash payment receipt from the person or entity that the Claimant paid showing their payment and as to the specific dollar amount they paid in cash.

Defendants and the Settlement Administrator may ask Claimants for additional Proof of Payment if fraud is suspected but must contemporaneously notify Class Counsel of such request.

U.      **"Proof of Qualifying Loss"**

Class members must establish a "Qualifying Loss" via Proof of Ownership and such other comparable documentation containing information necessary for the Settlement Administrator to verify the loss, including as specified in Section II.D.3. Such documentation can include, but is not limited to, a police report, insurance records, dealership records, repair records, receipts, cleared checks, credit card statements, bank records, registration records, employment records, or such other documents with comparable evidentiary value.  For Total Loss, see "Total Loss" definition for other documentation required in addition to the Proof of Ownership required by this section.

6

### V. "Proof of Qualifying Theft" and "Proof of Qualifying Theft Attempt"

"Proof of Qualifying Theft" and "Proof of Qualifying Theft Attempt" means the original or a copy of any document(s) generated at or around the time of the Qualifying Theft or Qualifying Theft Attempt that specifies the date of the Qualifying Theft or Qualifying Theft Attempt and identifies the Class Vehicle by VIN or make and model. The documents establishing a Qualifying Theft or Qualifying Theft Attempt may include a police report and, if the Class Vehicle is insured, Insurance Records, and/or a similar third-party report with comparable trustworthiness, reliability, and probative/evidentiary value showing comparable information regarding the circumstances of the Qualifying Theft or Qualifying Theft Attempt and the resulting losses.

### W. "Qualifying Loss"

"Qualifying Loss" refers to an out-of-pocket loss or uncompensated loss resulting from a Qualifying Theft or Qualifying Theft Attempt of a Class Vehicle, provided such loss is reimbursable under Section II.D.3.

### X. "Qualifying Purchase"

"Qualifying Purchase" means:

(1) the purchase by a Class member whose Class Vehicle is not eligible for the Software Upgrade of a steering wheel lock, a glass breakage alarm or similar anti-theft system (including installation), or another aftermarket modification designed to deter or prevent theft such as the Hyundai Accessory Security Kit (including installation); and

(2) the purchase by a Class member whose Class Vehicle is eligible for the Software Upgrade of a steering wheel lock, if that purchase was made at least thirty days before the Software Upgrade was available for that Class member's Class Vehicle.

### Y. "Qualifying Theft" and "Qualifying Theft Attempt"

"Qualifying Theft" refers to the theft of a Class Vehicle through forcible entry and breach of the ignition system.  "Qualifying Theft Attempt" refers to an attempted theft of a Class Vehicle through forcible entry and either an attempted dismantling of the steering column or an attempted breach of the ignition system.

A Class Member may demonstrate a Qualifying Theft or a Qualifying Theft Attempt through objectively reliable documentation. If a Class Vehicle was stolen and a Class member demonstrates through objectively reliable documentation that the Class Vehicle was not recovered after being stolen, this circumstance will be treated as a "Qualifying Theft." Defendants may rebut this presumption with any available proof.

### Z. "Releasees"

"Releasee[s]" shall refer jointly and severally, individually and collectively to entities that marketed the Class Vehicles, entities that designed, developed, and/or disseminated

advertisements for the Class Vehicles, Defendants, Hyundai Motor Manufacturing Alabama, Kia Georgia, Inc., all affiliates of the Hyundai Motor Group, including Hyundai Capital America, and each of their respective future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, dealers, distributors, agents, principals, suppliers, vendors, issuers, licensees, and joint ventures, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by, or under common control with a Releasee.

### AA.  "Releasors"

"Releasor[s]" shall refer jointly and severally, individually and collectively to the Class Representatives, the Class members, and their future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

### BB.  "Settlement" and "Settlement Agreement"

"Settlement" means the settlement into which the Parties have entered to resolve the Action, the terms of which are as set forth in this "Settlement Agreement."

### CC.  "Settlement Administrator"

"Settlement Administrator" means the administrator selected jointly by Defendants and Class Counsel and approved by the Court to administer the Settlement.

### DD.  "Software Alternative Class Vehicles"

"Software Alternative Class Vehicles" refers to those Class Vehicles that are not Software Eligible Class Vehicles and are eligible to receive the benefits set forth in Section II.C., including as specified below. In addition, all Class Vehicles in Puerto Rico, Virgin Islands, and Guam shall be considered part of the Software Alternative Class (regardless of the model of the Class Vehicle), unless and until the Software Upgrade becomes available for a particular model within a given territory.

If a "Software Alternative Class Vehicle" becomes eligible to receive the Software Upgrade, as of thirty (30) days after the postmarked date of the mail notice notifying the Class member their Class Vehicle is eligible for the Software Upgrade, it will no longer be considered a "Software Alternative Class Vehicle" for purposes of receiving the benefit under Section II.C if the purchase of a steering wheel lock or a glass breakage alarm or similar anti-theft system

(including installation), or another aftermarket modification designed to deter or prevent theft was made after the Software Upgrade was available for that Class Vehicle.

| Company | Model | Model Years |
|---------|-------|-------------|
| Kia | Sportage | 2011-2016 |
| Kia | Soul | 2011-2022 |
| Kia | Rio | 2011-2017 |
| Kia | Forte | 2011-2016 |
| Hyundai | Accent | 2011-2017 |
| Hyundai | Veracruz | 2011-2012 |
| Hyundai | Santa Fe | 2011-2012 |
| Hyundai | Genesis Coupe | 2011-2012 |
| Hyundai | Elantra Coupe | 2013-2014 |
| Hyundai | Elantra Touring | 2011-2012 |

**EE.    "Software Eligible Class Vehicles"**

"Software Eligible Class Vehicles" refers to those Class Vehicles that are eligible for the Software Upgrade and eligible to receive the benefits under Sections II.A, II.B, and II.D including:

| Company | Model | Model Years |
|---------|-------|-------------|
| Kia | Sportage | 2011-2022 |
| Kia | Sorento | 2011-2022 |
| Kia | K5 | 2021-2022 |
| Kia | Sedona | 2011-2021 |
| Kia | Forte | 2014-2021 |
| Kia | Rio | 2012-2021 |
| Kia | Seltos | 2021-2022 |
| Kia | Optima | 2011-2020 |
| Kia | Soul | 2020-2022 |
| Hyundai | Sonata | 2011-2019 |
| Hyundai | Tucson | 2011-2022 |
| Hyundai | Santa Fe Sport | 2013-2018 |

9

| Company | Model | Model Years |
|---------|-------|-------------|
| Hyundai | Santa Fe | 2013-2022 |
| Hyundai | Santa Fe XL | 2019 |
| Hyundai | Palisade | 2020-2021 |
| Hyundai | Elantra | 2011-2022 |
| Hyundai | Kona | 2018-2022 |
| Hyundai | Veloster | 2012-2017 2019-2021 |
| Hyundai | Accent | 2018-2022 |
| Hyundai | Venue | 2020-2021 |
| Hyundai | Elantra GT | 2013-2020 |
| Hyundai | Genesis Coupe | 2013-2014 |

## FF.    "Software Upgrade"

"Software Upgrade" refers to the software made available by Defendants to effectively address the fact that Class Vehicles do not contain engine immobilizers, and which is designed to prevent the Software-Eligible Class Vehicles locked with a key fob from starting without the key being present using a method of theft popularized on TikTok and other social media channels.

## GG.    "Total Loss"

Any Claimant who suffers and can establish a "Total Loss" of a Class Vehicle that is due to a Qualifying Theft or Qualifying Theft Attempt shall be entitled to payment from the Common Fund as set forth below. A "Total Loss" refers to any of the following situations:

- The Class Vehicle has been wrecked, destroyed, or damaged so badly as a result of the Qualifying Theft or Qualifying Theft Attempt (excluding pre-existing damage) that it is objectively uneconomical to repair the Class Vehicle (*i.e.*, repair costs would be at least 70% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition), as established by objectively reliable documentation, such as an insurer notification, auto service station, a verifiable third-party estimate, repair receipts, or comparable documentation showing the condition of the Class Vehicle following the Qualifying Theft or Qualifying Theft Attempt.  For documents to be objectively reliable, they must be issued by a verified business entity with a business address, a working phone number, any required license, and online reviews (all subject to verification).

- The Class member's disposal (through sale or donation) of the Class Vehicle for less than 30% of the fair market value of the Class Vehicle, as measured by the

10

Black Book value for a comparable private party vehicle in average condition. In the event of a sale, the Class member must submit proof of the amount received via the sale.  If the Class Vehicle was donated or sold, the tax-deductible donation value or sale amount will be discounted from the claimed loss. For example, if the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition is $5,500 and the tax-deductible receipt or sales documentation shows a donated value or paid amount of $500, the claimed loss for the value of the vehicle can be a maximum of $5,000. A copy of a tax-deductible receipt is required if the Class Vehicle was donated as is proof of sale and payment received (such as DMV vehicle transfer form).

- The Class Vehicle subject to a Qualifying Theft or Qualifying Theft Attempt was declared a Total Loss by an insurer, but the Class member was still not made whole by the insurance payments, as measured by the Black Book value (private party/average condition) minus total insurance settlement/payment received. Insurance documentation showing the amount claimed and recovered from an insurer is required.

- It has been at least three months since the Qualifying Theft and the Class Vehicle has not been recovered.  In the event a Class Vehicle is recovered following the submission of a claim but before payment is issued from the Common Fund, the Class member must notify the Settlement Administrator of the recovery. The Settlement Administrator may re-evaluate the amount due to the Class member under the Settlement Agreement given the recovery of the Class Vehicle.

- For each of the above, a Claimant's loss will be measured in relation to the Black Book value of a comparable private party vehicle in very average condition. To determine the Black Book value, Claimants must submit the last known (or estimated) mileage of the Class Vehicle and identify any options that were installed on the Class Vehicle.  The Settlement Administrator, on behalf of HMA (for Hyundai Class Vehicles) and KA (for Kia Class Vehicles), shall take all reasonably available steps to acquire all information necessary to determine the Black Book value, including, but not limited to, contacting dealerships for last known (or estimated) mileage of the Class Vehicle and any options that were installed on the Class Vehicle.

## II.    SETTLEMENT CONSIDERATION

In consideration for the Settlement Agreement, entry of judgment, and dismissal, and for the mutual release provided herein, Defendants agree to provide the following consideration to the Class:

### A.    Software Upgrade for Software Eligible Class Vehicles

1.    Defendants shall make available in the United States (the fifty states and the District of Columbia) at no cost to Class members a Software Upgrade for Software Eligible Class Vehicles to effectively address the fact that the Class Vehicles do not contain immobilizers.

2.     The Software Upgrade is designed to prevent Software Eligible Class Vehicles that were locked using a key fob from starting without the key being present by the method of theft popularized on TikTok and other social media channels. The Software Upgrade does not guarantee any vehicle will not be subject to theft or attempted theft. Defendants shall warrant that the Software Upgrade will work as designed for the life of the vehicle. Provision of this benefit shall not expand the scope or duration of Hyundai's and Kia's respective applicable limited warranties. Remedies related to the Software Upgrade warranty will be strictly limited to repair or re-performance of the Software Upgrade.

3.     The Software Upgrade shall be implemented on Software Eligible Class Vehicles and without the need for a request by the Class member. Specifically, if a Class member brings a Software Eligible Class Vehicle to a Hyundai or Kia dealership for an unrelated service or repair the Hyundai or Kia dealerships will implement the Software Upgrade as part of that service or repair.  The Software Upgrade will be implemented at no cost to the Class member. Absent good cause, Hyundai or Kia dealerships will implement the Software Upgrade at the time a Class member brings a Software Eligible Class Vehicle to a Hyundai or Kia dealership for an unrelated service or repair.

4.     Upon installing the Software Upgrade, the dealer will affix decals to the Software Eligible Class Vehicles indicating they have additional anti-theft protection.

5.     Defendants shall make the Software Upgrade available until the later of (a) 360 days after Defendants provide notice of availability for each model of Software Eligible Class Vehicles, or (b) 360 days after final approval of the Settlement, or (c) actual installation of the Software Upgrade pursuant to appointments with authorized installers of the Software Upgrade made during the respective 360 day periods referenced in either (a) or (b) above.

6.     Defendants shall issue a nationwide press campaign promoting the Software Upgrade and discussing its availability and effectiveness at preventing vehicle thefts, which shall include publication on social media platforms (including, TikTok and Instagram). Defendants shall implement a driver awareness and instructional campaign regarding the Software Upgrade, beyond the press campaign, promoting its availability and effectiveness. Class Counsel can raise with Defendants any issues they have with the form and content of the awareness and instructional campaign, and Defendants shall confer with Class Counsel in good faith regarding those issues.

**B.     Qualifying Purchase Reimbursements for Software Eligible Class Vehicles**

1.     Class members with Software Eligible Vehicles who purchased a steering wheel lock for their Class Vehicle at least thirty days before the Software Upgrade for their Class Vehicle was made available, may make a Claim for reimbursement for that purchase up to $50.

2.     For avoidance of doubt, and because some Class members may own more than one Class Vehicle, these benefits are per Class Vehicle. The benefits identified in this Section II.B are to be paid by Defendants separate from the Common Fund in Section II.D and are not subject to an aggregate cap.

**C.    Reimbursement for a Qualifying Purchase for Software Alternative Class Vehicles**

1.      Class members who own a Software Alternative Class Vehicle shall be eligible for reimbursement for a Qualifying Purchase (*i.e.*, the purchase of a steering wheel lock, or purchase and installation of a glass breakage alarm or similar anti-theft system, or another aftermarket modification designed to deter or prevent theft such as the Hyundai Accessory Security Kit, which is available for Hyundai vehicles for purchase and installation at Hyundai dealers), up to a per claim cap of $300, as long as the Qualifying Purchase was made when the Class Vehicle was not eligible for the Software Upgrade. If a "Software Alternative Class Vehicle" becomes eligible to receive the Software Upgrade, as of thirty (30) days after the postmarked date of the mail notice notifying the Class member of such eligibility, no purchase made after that date of a steering wheel lock, or purchase and installation of a glass breakage alarm or similar anti-theft system, or another aftermarket modification designed to deter or prevent theft will be reimbursable under this Settlement Agreement.

2.      Any Claimant who received a steering wheel lock provided by Defendants (either from HMA or KA (for example, shipped directly or through a dealer) or through a law enforcement department), shall be eligible for reimbursement for purchase and installation of a Qualifying Purchase (*i.e.*, for purchase and installation of a glass breakage alarm or similar anti-theft system, or another aftermarket modification designed to deter or prevent theft such as the Hyundai Accessory Security Kit which is available for Hyundai vehicles purchase and installation at Hyundai dealers), up to a per claim cap of $250.

3.      Provision of this benefit shall not expand the scope or duration of Defendants' respective applicable limited warranties to cover a system or modification not otherwise covered by such warranty.

4.      Claims made pursuant to Sections II.B and II.C must:

a.    Be submitted no later than 180 days after the Final Approval Order and Judgment;

b.    Contain a completed Claim Form;

c.    Contain Proof of Ownership;

d.    Contain Proof of Payment for the Qualifying Purchase; and

e.    Contain proof of installation of the Qualifying Purchase into a Class Vehicle.  Proof of installation is not required for a steering wheel lock.

5.      For avoidance of doubt, and because some Class members may own more than one Class Vehicle, these benefits are per Class Vehicle. The benefits identified in Sections II.B and II.C are to be paid by Defendants separate from the Common Fund in Section II.D and are not subject to an aggregate cap.

### D.      Common Fund

1.      Defendants shall make a payment to a Common Fund that will be established to make payments to Class members who submit approved claims as detailed in Section II.D. The total size of the Common Fund will depend on the number of approved claims but will be a minimum of $80,000,000 and a maximum of $145,000,000 established for all Defendants combined.

2.      Each Class member who submits a Claim within 180 Days of Final Approval and Judgment and can establish a Qualifying Loss with Proof of a Qualifying Loss, or a Software Upgrade Related Expense, shall be eligible for reimbursement as specified in Section II.D.3 & 5.

3.      **Reimbursement for Qualifying Losses**.  The following Qualifying Losses may be entitled to reimbursement payments from the Common Fund:

a.      Reimbursement for a Total Loss of a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt, subject to a per vehicle cap of $6,125. However, if prior to entry of the Final Approval Order and Judgment, Defendants resolve the insurance subrogation claims asserted in the Action, Class Counsel and Defendants will convene to discuss whether and by how much the Claim cap for a Total Loss of a Class Vehicle should be increased. There shall be only one Total Loss recovery per vehicle.

b.      Reimbursement for damage to a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt (that does not result in Total Loss) and for the value of personal property stolen or damaged as a result of a Qualifying Theft or Qualifying Theft Attempt, subject to a per incident cap of $3,375. However, if prior to entry of the Final Approval Order and Judgment, Defendants resolve the insurance subrogation claims asserted in the Action, Class Counsel and Defendants will convene to discuss whether and by how much the Claim cap for damage to a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt (that does not result in Total Loss) and for the value of personal property stolen or damaged as a result of a Qualifying Theft or Qualifying Theft Attempt should be increased.

c.      Reimbursement of any insurance deductibles paid and increased insurance premiums for insurance policies that includes theft coverage, resulting from the Qualifying Theft or Qualifying Theft Attempt, subject to a per incident cap of $375. To establish an increased insurance premium for comprehensive coverage resulting from a Qualifying Theft or Qualifying Theft Attempt, Claimants must submit insurance documentation showing the increased comprehensive coverage premium.

d.      Reimbursement of other related expenses as follows, subject to a per incident cap of $250 total:

     i.     Car rental, taxi, ride share, or public transportation expenses that were incurred as a result of a Qualifying Theft or Qualifying Theft Attempt and were not otherwise covered by insurance;

     ii.     Towing costs that were incurred as a result of a Qualifying Theft or Qualifying Theft Attempt because it was necessary to transport the stolen Class Vehicle to or from a police or city storage facility, repair facility or other location necessary to inspect, repair, sell, or dispose of a stolen Class Vehicle, including a junkyard or storage facility;

     iii.     Licensing fees, sales tax paid, registration fees and other expenses directly associated with the purchase of new/replacement vehicle if there was a Total Loss due to a Qualifying Theft or Qualifying Theft Attempt; and

     iv.     Costs associated with speeding tickets, red light tickets, or other penalties or fines incurred arising from a stolen Class Vehicle which was subjected to a Qualifying Theft or Qualifying Theft Attempt.

4.     If a Class Vehicle is subject to multiple Qualifying Thefts and/or Qualifying Theft Attempts, the Class member shall be eligible for each of the benefits under this Section II.D.3, per each Qualifying Theft or Qualifying Theft Attempt.

5.     **Reimbursement for Software Upgrade Related Expenses**.    The following expenses incurred relating to the implementation of the Software Upgrade may be entitled to payments from the Common Fund:

     a.     Reimbursement of OEM-issued fobs purchased at the direction of a Hyundai/Kia dealership because these were necessary to implement the Software Upgrade, subject to a cap of $350 per fob, with a limit of up to two fobs per Class Vehicle.  To establish that the purchase of OEM-issued fobs was made at the direction of a Hyundai/Kia dealership, the Claimant must submit the relevant dealership invoice or similar documentation. The Settlement Administrator, on behalf of HMA (for Hyundai Class Vehicles) and KA (for Kia Class Vehicles), shall take all reasonably available steps to acquire all information necessary to validate a Claim for reimbursement under this section.

     b.     Reimbursement of other Software Upgrade related expenses as follows, subject to a per Class Vehicle cap of $250 total:

     i.     Lost income resulting from implementation of the Software Upgrade; and

     ii.     Childcare costs resulting from implementation of the Software Upgrade.

6.      Payments from the Common Fund to satisfy approved claims are subject to a pro-rata decrease based on the amount of approved claims if the Common Fund is insufficient to pay all approved claims. If the aggregate amount of approved claims does not equal or exceed $80,000,000, the caps in this Section II.D shall not apply and approved claims shall be increased proportionately until the $80,000,000 minimum Common Fund is met, provided however, if such approved Claims do not equal or exceed $50,000,000 then the Settling Defendants shall receive a credit of $10,000,000 for providing the benefits in this Section II.D before the approved claims are increased proportionately.

7.      In no circumstances will a paid claim exceed the amount of the submitted and accepted claim. However, any "minimum" balance remaining from the Common Fund *i.e.*, the $80 million floor of the Common Fund (inclusive of a $10 million credit to Defendants if approved Claims do not equal or exceed $50 million), after the claims period has expired shall be redistributed to claimants on a pro-rata basis, unless administratively infeasible, in which case they shall be distributed to a Court-approved *cy pres* recipient, until such minimum balance is depleted.

## E.      Cost of Administration and Notice

Defendants shall be responsible for all costs of Class notice and Settlement administration. In no event shall Class Counsel, Consumer Plaintiffs' Counsel, or the Class be responsible for any cost associated with Class notice or Settlement administration.

## F.      Cost of Class Counsel's Review of Appeals

Class Counsel shall be able to spend reasonable time evaluating appeals and can be reimbursed for actual time spent reviewing those appeals, up to a total cap of $600,000, so long as Class Counsel submit documentation to Hyundai and/or Kia that shows the time spent and identifies the appeals reviewed.  These costs shall not be paid from the Common Fund.  Instead, Defendants shall be responsible for paying these costs separately and in addition to any fees and costs awarded to Class Counsel.

## III.   CLAIMS ADMINISTRATION

### A.      Settlement Administrator

Defendants and Class Counsel shall work jointly in good faith to select a Settlement Administrator.

### B.      Claims Submissions

1.      All Claims must be submitted within 180 days of Final Approval Order and Judgment.

2.      Claims submitted pursuant to this Settlement Agreement may be submitted, at the election of the Claimant, by U.S. mail, email, or through the dedicated Settlement website discussed below. The mailing address and email address to which Claimants may submit Claims, as well as Claimants' right to submit their Claims through the Settlement website, shall be posted

prominently in each of the following locations: the Long Form Notice, the Claim Form, and the dedicated Settlement website. The ▀▀▀▀▀▀▀ website shall be the dedicated Settlement website for all Class Vehicles, which will also be accessible from both the U.S. Hyundai and Kia websites' homepages.

3.    The Claim Form shall provide an option for Claimants to indicate a preference for communication via regular U.S. mail instead of email.

### C.    Claims Processing

1.    Upon receipt of a Claim, the Settlement Administrator shall review the Claim to determine whether the Claim meets all qualifications for payment set forth in this Settlement Agreement and shall notify Claimants who do not meet all qualifications. Within 60 days of receiving the Claim, the Settlement administrator shall notify the Claimant of:

a.   Any deficiency in required documentation and shall reasonably specify what documents and/or information, if any, are still needed for claims determination;

b.   The basis for the Settlement Administrator's decision to deny a Claim, including the specific deficiencies in the Claim's supporting documentation, if any;

c.   The Claimant's right to attempt to cure any deficiency, including any deficiency that led to the Settlement Administrator's denial of a Claim; and

d.   The initial determination of the amount owed for a Claim and/or notice that any determination as to Claims for payments from the Common Fund are going to be processed at the end of the claims period.

2.    In response to receiving the written notice under section III.C.1, Claimants may:

a.   Attempt to cure the deficiency stated as justification for denying a Claim, by submitting the information and/or documentation identified by the Settlement Administrator as lacking in the Claim, within 45 days of receipt of the written notice. The Settlement Administrators shall have 45 days from the date of receiving the cure attempt to provide written notice to the Claimant stating its final determination as to the approval or denial of the Claim, and shall notify the Claimant that they are entitled to appeal the determination to the Settlement Administrator at no additional cost; or

b.   Accept the initial determination by the Settlement Administrator, which acceptance will be presumed if no cure attempt is received by the Settlement Administrators within 45 days of the date of the initial determination, at which point the Settlement Administrator will provide Claimants with their final determination as to the approval or denial of the Claim. The final determination letters shall notify Claimants that they are entitled to appeal

17

the determination at no additional cost. Claimants who accept an initial determination, i.e., by communicating acceptance or not making a cure attempt, shall not be eligible to appeal the final determination.

3. For Claims that meet all requirements, the Settlement Administrator shall also determine the maximum amount of the reimbursement under the Common Fund. Following 90 days after the end of the claims period (and subject to reasonable extensions agreed to by Class Counsel depending on Claims volume), the Settlement Administrator shall report to Defendants and Class Counsel the total amount and number of approved Claims. If the total Claims fall below the $80 million Common Fund floor (inclusive of Class Counsel's attorneys' fees, costs, and expenses and the $10 million credit to Defendants if the total Claims equal or do not exceed $50 million), Class Counsel shall confer with Defendants to provide guidance to the Settlement Administrator as to the pro rata increase in payments to be made to the Claimants.

4. Within 120 days after the end of the claims period (or, if the total Claims fall below the $80 million Common Fund floor (inclusive of Class Counsel's attorneys' fees, costs, and expenses and the $10 million credit to Defendants if the total Claims equal or do not exceed $50 million)), and within 60 days of receipt of guidance from Class Counsel as to the pro rata increase in payments to be made to the Claimants), the Settlement Administrator shall notify the Claimant of its final determination as to the payment owed under the Common Fund.

5. Defendants and Class Counsel shall have the right, but no obligation, to review and comment on all claims submissions, determinations, and appeals, obtain information and documents necessary to the administration of Claims and appeals, and confer with the Settlement Administrator regarding determinations of claims and appeals. To ensure no Class member is paid twice for the same Claim, Defendants shall have the right to receive and review the list of approved Claims and corresponding VIN and Claimant information before the Settlement Administrator gives notice of its initial determination. Defendants shall also have the right to submit any documentation, such as any prior releases, payments, steering wheel lock records, etc., to the Settlement Administrator for review in connection with processing a Claim to ensure that no Class member is paid twice for the same Claim.

D.     **Appealing Final Determinations**

1. The Settlement Administrator must issue a final determination communication to the Claimant within six months of receipt of the Qualifying Purchase Claim and for Claims for the Common Fund, within six months of the end of the claims period. Defendants will provide the mailing and email addresses for sending appeals in the Long Form Notice, on the dedicated Settlement websites, and in the final determination communications to Claimants if they made a cure attempt after initial determination. When issuing a final determination communication to a Claimant, the Settlement Administrator shall concurrently inform the Claimant of (1) the right to appeal to the Settlement Administrator any decision; (2) that such appeal must be made in writing (by mail or email) to the Settlement Administrator, detailing which denied claims they are disputing and what amount they are seeking; (3) the mailing or email address for submitting that appeal; and (4) that such appeal must be postmarked or sent via email no later than 45 days from the postmark date on the final determination communication.

18

2.     Within 45 days of receipt of the Settlement Administrator's final determination, any Claimant dissatisfied with the final determination must notify the Settlement Administrator by mail or email that the Claimant requests appellate review by the Settlement Administrator. Claimants should retain records of their timely mailing or emailing of their written appeal and may be requested to provide such records in the event the Settlement Administrator does not actually receive the written appeal at the mailing address or email address provided.

3.     Denials based on exclusions from the Class, *e.g.*, claims for a non-Class Vehicle, etc. are not appealable, unless the contested issue is whether the vehicle is a Class Vehicle. Any final determination approving a Claim in full pursuant to the terms set forth in Settlement Agreement is not appealable, *e.g.*, Claimants cannot appeal if they believe they should have gotten more but they were approved for the maximum reimbursements (or *pro rata* adjusted maximum).

4.     The appeal shall take place by written submission with a telephonic hearing to occur if the Settlement Administrator determines it is needed. The Settlement Administrator shall have the ability to make the final determination regarding the amount to be paid to any Claimant who elects this process. The Settlement Administrator, however, will be limited to deciding disputes over the actual Claims submitted by the Claimant that were denied, i.e., the Settlement Administrator may not determine the Claimant may qualify for a Settlement benefit the Claimant did not previously apply for. The Settlement Administrator may not consider documents that were not submitted previously, either by the Claimant or Defendants, prior to initiating the appeal.

**5.**     Defendants and Class Counsel shall have the right, but no obligation, to review and comment on all appeals, obtain information and documents necessary to the appeals, and confer with the Settlement Administrator regarding determinations of appeals. The expense for each appeal to the Settlement Administrator shall be borne by Defendants. Class Counsel shall be able to spend reasonable time evaluating appeals and can be reimbursed for actual time spent reviewing those appeals, up to a cap of $600,000, so long as Class Counsel submit documentation to Hyundai and/or Kia that shows the time spent and identifies the appeals reviewed. These costs shall not be paid from the Common Fund. Instead, Defendants shall be responsible for paying these costs separately and in addition to any fees and costs awarded to Class Counsel.

### E.     Claims Reporting to Class Counsel

1.     On a monthly basis beginning 30 days after the Notice Date, the Settlement Administrator shall provide Class Counsel and Defendants with a report regarding Claims received, each Claim's status, and any final determinations made. Upon request, the Settlement Administrator shall provide Class Counsel and Defendants with a copy of any final determination notice sent, along with the Claim Form, and all other documentation associated with the Claim.

2.     On a monthly basis beginning 120 days after the Notice Date, the Settlement Administrator shall provide monthly reports regarding all written requests for appellate review of any Claims. Upon request, the Settlement Administrator shall provide copies of written appeal requests to Class Counsel and copies of any communications concerning such appellate review by the Settlement Administrator. Class Counsel shall have the right to participate in the appeal process, including the right to participate in any written submission or telephonic hearing, but shall not be obligated to participate.

3.      Ninety days after the expiration of the claims period, the Settlement Administrator shall provide to both Defendants and Class Counsel a report of the number and amount of approved claims. If the Claims fall below the $80 million Common Fund floor (inclusive of Class Counsel's attorneys' fees, costs, and expenses and the $10 million credit to Defendants if the total Claims equal or do not exceed $50 million), Class Counsel shall confer with Defendants to provide guidance to the Settlement Administrator as to the pro rata increase in payments to be made to the Claimants.

## F.      Payment-Related

1.      For each Claim qualifying for a reimbursement payment under this Settlement Agreement, and only following determination whether Claims are subject to a pro rata increase or decrease, the Settlement Administrator shall promptly mail to the Claimant, at the address on the Claim Form, a check or a reimbursement debit card, at the Class member's request.

2.      Within 90 days of the Settlement Administrator providing notice to the Parties of the aggregate amount of all approved claims, Defendants shall provide funding to satisfy such claims, in an amount no less than the amount necessary to reach the $80 million Common Fund floor or an amount that will not to exceed the $145 million Common Fund ceiling, consistent with the provisions of section II.D.

3.      For each Claim qualifying for a reimbursement payment under Section II, the Settlement Administrator shall mail to the Claimant, at the address on the Claim Form, a check or a reimbursement debit card, at the Class member's request.

4.      For checks that are not cashed within 120 days after issuance, the Settlement Administrator will reissue the check. If the reissued check remains uncashed for 120 days as well, Claimants must request the Settlement Administrator reissue the check again within 120 days.

5.      The debit cards provided under this Settlement shall be redeemable for at least one year, without any fees charged by Defendants, or the debit card issuer, at ATMs and merchants that accept Visa cards. The debit cards shall indicate their "use by" dates on their face. Upon the expiration of the debit cards issued from the Common Fund, the amount not expended shall be placed in escrow. Class Counsel shall confer with Defendants' counsel concerning additional *pro rata* payments to Class Members who expended their debit cards, or *cy pres* in the event that such payments are administratively infeasible.

6.      The Parties acknowledge and agree that any and all provisions, rights, or benefits conferred by any law of any state or territory of the U.S., or any principle of common law, that provides for how residual amounts in a Settlement fund should be distributed, including, but not limited to, California Code of Civil Procedure section 384(b), are not applicable to this Settlement Agreement. Although the Parties expressly agree that this Settlement is not governed by California Code of Civil Procedure section 384(b) or other similar laws and does not create as settlement fund nor any "unpaid residue," the Class Representatives on behalf of themselves and the Class members nonetheless expressly acknowledge and agree that, to the extent permitted by

law, they are waiving any protections of California Code of Civil Procedure section 384(b) and of any comparable statutory or common law provision of any other jurisdiction.

7.      The Parties acknowledge and agree that the forms of compensation set forth in Section II do not constitute gift cards, gift certificates, or member rewards cards under any federal and/or state laws.

8.      Nothing in this Settlement Agreement shall be read to prevent Defendants from electing, at its sole discretion and on a case-by-case basis, to implement or to continue to implement any customer satisfaction or goodwill policy, program, or procedure at its discretion, that provides consideration to Class members without regard to the Class members' entitlement to relief under the Settlement Agreement.

9.      No Class member shall recover twice for the same Qualifying Loss. To ensure no Class member recovers twice, Claimants shall submit documentation reflecting any payments or reimbursements previously received for that Claim.

10.     The Parties recognize that certain Class member circumstances might warrant Defendants providing Settlement benefits to a Class member in advance of formal approval and implementation of the Settlement. Defendants can submit to Class Counsel and the Settlement Administrator information concerning such advanced benefits, and if the Settlement Administrator determines the claims otherwise meet the conditions of the Settlement, the Settlement Administrator shall consider such claims and payments as applying in full, irrespective of any applicable per claim caps, towards the Common Fund and not subject to any pro rata reduction.  Such approved payments towards the Common Fund shall be cumulatively capped at $1 million for each of Hyundai and Kia.

## IV.     NOTICE TO THE CLASS

### A.      CAFA Notice

In compliance with the attorney general notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants shall provide notice of this Settlement Agreement to the Attorney General of the United States, and the attorneys general of each state or territory in which a Class member resides.

### B.      Notice Deadline

No later than the Notice Date, Defendants shall cause notice to the Class to be disseminated by U.S. mail (for current Class Vehicle owners and lessees as reflected in DMV databases), email (for Class members whose information Defendants have), and the dedicated Settlement website (with a link to the dedicated Settlement website from both the Hyundai and Kia main U.S. webpages). The form and substance of all notices provided by Defendants to Class members shall be subject to prior input and approval from Class Counsel.

### C.    Individual Class Notice Methods

1.    Following the Court granting preliminary approval of this Settlement, Defendants or their Settlement Administrators shall provide by direct U.S. mail, to all reasonably identifiable Class Members, each of the following: (i) the Long Form Notice and (ii) a Claim Form. For purposes of identifying the requisite names and addresses, Defendants or their Settlement Administrator agree to provide, to the extent they have not already done so, all names and addresses of Class Vehicle owners, along with Class Vehicle VINs, to _____, or a similar third-party entity, who shall be authorized to use that information to obtain the names and most current addresses of Class Vehicle owners through state agencies. Because some states require a prior court order before vehicle owner and lessee information can be released, such information may not be available until after the preliminary approval order is entered.

2.    Additionally, Defendants or their Settlement Administrator shall provide by email, to all Class Members for which Defendants maintain email addresses, a hyperlink to the dedicated Settlement website discussed below and electronic versions of the Long Form Notice and Claim Form following the Court granting preliminary approval of this Settlement.

3.    The Settlement Administrator shall maintain a dedicated Settlement website—the content and domain name of such are subject to prior Class Counsel approval—which will contain: (i) instructions on how to obtain reimbursements; (ii) a mechanism by which Claimants can submit Claims electronically; (iii) instructions on how to contact the Settlement Administrator for assistance with their Claims; (iv) the Long Form Notice; (v) the Claim Form; (vi) this Settlement Agreement; (vii) any orders issued in this Action approving or disapproving of the proposed Settlement; and (viii) any other information the Parties determine is relevant to the Settlement. Defendants shall make the same information available to Class members through _____ and _____ via links to the dedicated Settlement website. The dedicated Settlement website shall also offer the ability for visitors to enter their VINs without completing a Claim Form to determine if their vehicles are indeed Class Vehicles and whether a Class Vehicle is a Software Alternative Vehicle or a Software Eligible Vehicle.

4.    Following the Notice Date, the Settlement Administrator shall issue monthly press releases notifying the public of the existence of the Settlement, the Settlement website, and all opt-out and objection deadlines.

5.    The Settlement Administrator shall be prepared to respond to questions regarding the status of submitted Claims, how to submit a Claim, and other aspects of this Settlement. The Settlement Administrator shall maintain a dedicated toll-free telephone number for Class members to call. The telephone numbers shall be listed on the Long Form Notice, Claim Form, and the dedicated Settlement website.

### D.    Notice Reporting to Class Counsel

For a period ending 90 days after the Notice Date, Defendants or their Settlement Administrator shall provide Class Counsel with reasonable periodic reports of the total number of notices sent to Class members by U.S. mail and email, along with the numbers of notices returned as undeliverable. The first report, which shall be provided to Class Counsel no more than 15

business days after notices are first sent to Class members, and final report shall also include each U.S. address and email address to which notice was sent and when the notices were each sent. Defendants or their Settlement Administrator shall communicate with Class Counsel regarding delivery of notice and the number of Class members who have responded to the notice.

## V.    ATTORNEYS' FEES AND SERVICE PAYMENTS

1.    Consumer Plaintiffs, through Class Counsel, will petition the Court for an attorneys' fee award, cost award, and for Class Representative service payments to be paid from the Common Fund. The attorneys' fee request shall be for no more than 25 percent of the  Common Fund plus actual out of pocket expenses.

2.    Within 60 days following (i) the Effective Date or (ii) the first date after the Court enters Final Approval Order and Judgment, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order, Defendants shall put into escrow at least $60 million for the Common Fund.

3.    Within 60 days following (i) the Effective Date or (ii) the first date after the Court enters Final Approval Order and Judgment, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order, Defendants shall put into a separate escrow account, at least $500,000 to satisfy Claims for a Qualifying Purchase.  Should more funds be necessary to pay the Qualifying Purchase Claims, the Settlement Administrator shall inform Defendants who will deposit into that same escrow account additional funds to satisfy the Qualifying Purchase Claims.  After all timely claims are processed and appealed, any funds remaining in the escrow account for Qualifying Purchases, as distinct from the escrow account for Common Fund Claims, shall revert back to Defendants.

4.    Class Counsel shall be paid their fees, expenses, and service payments awarded by the Court from the Common Fund within the later of 60 days following (i) the Effective Date or (ii) the first date after the Court enters an order awarding fees, expenses, and service payments, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order.

5.    Within 30 days following (i) the Effective Date or (ii) the first date after the Court enters an order awarding fees, expenses, and service payments, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order, Class Counsel shall provide Defendants, for each payee, a W-9 and wire instructions on their firm letterhead for the payment to Class Counsel of fees, expenses, and service payments awarded by the Court.

## VI.    MUTUAL RELEASE

1.    Upon entry of a Court order granting final approval of the Settlement Agreement and entering judgment pursuant to section VII.C below, Releasors irrevocably release, waive, and discharge any and all past, present, and future liabilities, claims, causes of action, legal claims, damages, costs, attorneys' fees, losses, or demands that have been brought or could have been brought, whether known or unknown, existing or potential, or suspected or unsuspected relating to Class Vehicles against Releasees, whether or not specifically named herein, asserted or unasserted, under or pursuant to any statute, regulation, common law, or equitable principle, based

on (i) the facts alleged in any complaint filed in the Action and all legal claims of whatever type or description arising out of, that may have arisen as a result of, or which could have been brought based on, any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters pleaded in complaints filed in the Action, and (ii) claims related to theft of a Class Vehicle (subject to section VI.2 below).

2.     The Settlement Agreement and release do not release claims for (i) death, (ii) personal injury, or (iii) subrogation claims by licensed insurers.

3.     The release effected by this Settlement Agreement is intended to be a specific release and not a general release. If, despite, and contrary to the Parties' intention, a court construes the release as a general release under California law and determines that Section 1542 of the California Civil Code is applicable to the release, the Class Representatives, on behalf of themselves and all Class members, hereby expressly waive and relinquish to the fullest extent permitted by law, the rights provided by Section 1542 of the California Civil Code, which provides:

> *Certain Claims Not Affected By General Release:* *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

Each of the Class Representatives expressly acknowledges that the Class Representative has been advised by Class Counsel of the contents and effects of Section 1542, and with knowledge, each of the Class Representatives hereby expressly waives, on behalf of the Class Representative and all Class members, whatever benefits the Class Representatives and the Class members may have had pursuant to such section. Each of the Class Representatives hereby expressly waives, on behalf of the Class Representative and all Class members, the benefit of any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

4.     By this Settlement Agreement, Consumer Plaintiffs and their attorneys release Releasees and their counsel from any and all claims or causes of action that were, or could have been, asserted by Consumer Plaintiffs or their attorneys, pertaining to this Action or Settlement Agreement. Consumer Plaintiffs and the Class members recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Approval Order and Judgment, Releasors fully, finally, and forever settle and release any and all legal claims against Releasees. The Parties acknowledge that this waiver and release were bargained for, and are material elements of the Settlement Agreement.

5.     In addition, by this Settlement Agreement, Defendants release the Consumer Plaintiffs and their attorneys from any and all claims or causes of action that were, or could have been, asserted by Defendants, pertaining to this Action or Settlement Agreement. Defendants recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of an order granting final

24

approval to this Settlement Agreement and entering judgment, Defendants fully, finally, and forever settle and release any and all such claims. The Parties acknowledge that this waiver and release were bargained for, and are material elements of the Settlement Agreement.

6.      This Settlement Agreement, including the release in the preceding paragraphs does not affect the rights of Class members who timely and properly request exclusion from the Class. The Parties do not intend this Settlement Agreement, including its release, to affect any legal claims that arise out of a consumer's purchase or use of any vehicle other than a Class Vehicle.

7.      The administration and consummation of the  Settlement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement. The Court retains jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement, including, but not limited to, orders enjoining Class members from prosecuting claims that are released pursuant to the Settlement Agreement and allowing for discovery related to objectors.

8.      Upon issuance of the Final Approval Order and Judgment: (i) the Settlement Agreement shall be the exclusive remedy for Class members; (ii) Releasees shall not be subject to liability or expense of any kind to any Class members for reasons related to the Action except as set forth herein; and (iii) Class members shall be permanently barred from initiating, asserting, or prosecuting any and all released claims against the Releasees.

## VII.   SETTLEMENT APPROVAL PROCESS

### A.      Intention to Complete Settlement

1.      The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement Agreement, shall promptly perform their respective obligations hereunder, and shall promptly take any and all actions and execute and deliver any and all additional documents and all other materials and/or information reasonably necessary or appropriate to carry out the terms of this Settlement Agreement and the transactions contemplated hereby. Consumer Plaintiffs shall prepare all preliminary approval and final approval papers.

2.      If the Preliminary Approval Order or the Final Approval Order and Judgment are not obtained from the Court in the form contemplated by this Settlement Agreement, or, if the Final Approval Order and Judgment is reversed or materially modified on appeal, this Settlement Agreement should be null and void *ab initio* upon election of any of the Parties and have no further force and effect with respect to any of the Parties in this Action. Nothing in this provision shall affect Defendants' obligation to pay all costs reasonably incurred by the Settlement administration process.

### B.      Preliminary Court Approval

1.      Promptly after execution of this Settlement Agreement by the Parties, counsel for the Parties shall present this Settlement Agreement to the Court for review and jointly seek entry of an order that certifies the Class as a Settlement Class, grants preliminary approval of this

Settlement Agreement, and directs Defendants to provide notice of the Settlement in the manners listed herein.

2.      No later than 20 days before the Fairness Hearing, Defendants shall provide affidavits for the Court, with a copy to Class Counsel, attesting that notice was disseminated in a manner consistent with the terms of this Settlement Agreement, or as otherwise required by the Court.

### C.    Final Court Approval

1.      Once the Court enters a Preliminary Approval Order, counsel for the Parties shall use their best efforts to promptly obtain entry of a Final Approval Order and Judgment that:

> **(a)**    Finds the Settlement Agreement to be fair, reasonable, and adequate;
>
> **(b)**    Finds that the Class notice given constitutes the best notice practicable;
>
> **(c)**    Approves the release specified above as binding and effective as to all Class members who have not properly excluded themselves from the Class;
>
> **(d)**    Directs that judgment be entered on the terms stated herein; and
>
> **(e)**    Provides that the Court will retain jurisdiction over the Parties and Class members to enforce the terms of the final order and judgment.

2.      Upon entry of the Final Approval Order and Judgment, this Action shall be dismissed, on its merits and with prejudice, with respect to all Consumer Plaintiffs and all Class members who have not properly excluded themselves from the Class, and without prejudice as to anyone else, subject to the continuing jurisdiction of the Court, including but not limited to the claims of the named Consumer Plaintiffs and putative Class members who are not expressly named, identified, or encompassed in this Settlement Agreement.

## VIII.   REQUESTS FOR EXCLUSION

1.      The provisions of this section shall apply to any request by a Class member for exclusion from the Class.

2.      Any Class member may make a request for exclusion by submitting such request in writing (mail or through the Settlement website) as set forth in the Class notice.

3.      Any request for exclusion must be submitted not later than the date specified in the Court's Preliminary Approval Order. Insurance companies that come into possession of a Class Vehicle through the salvage process do not need to request exclusion as they are excluded from the Class.

4.      Any request for exclusion shall (i) state the Class member's full name and current address, (ii) provide the model year and VIN of his, her, or their Class Vehicle(s) and the

approximate date(s) of purchase or lease, and (iii) specifically and clearly state his, her, or their desire to be excluded from the Settlement Agreement and from the Class.

5.      Failure to comply with these requirements and to timely submit the request for exclusion will result in the Class member being bound by the terms of the Settlement Agreement.

6.      Any Class member who submits a timely request for exclusion may not file an objection to the Settlement Agreement and shall be deemed to have waived any rights or benefits under this Settlement Agreement.

7.      Beginning 30 days after the Notice Date, Defendants shall report to Class Counsel on a weekly basis the names of all Class members who have submitted a request for exclusion.

8.      Plaintiffs, through Class Counsel, and Defendants shall have the right, but not the obligation, to terminate this Agreement if: (1) the total number of timely and valid requests for exclusion exceeds 12,000 Class Members (exclusive of any opt-out request from any person or business who are not eligible to submit an opt-out request because they are already excluded from the Class, such as insurance companies that come into possession of a Class Vehicle through the salvage process); (2) the Court rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that results in a substantial modification to a material term of the proposed Settlement Agreement; or (3) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Approval Order and Judgment, that results in a substantial modification to a material term of the proposed Settlement or Settlement Agreement. However, the Parties agree to act in good faith to secure Final Approval of this Settlement Agreement and to attempt to address in good faith concerns regarding the Settlement identified by the Court and any appellate court.

9.      Class Counsel represent and warrant that they have no other agreements with other counsel regarding Class members, including any agreements with respect to referring, soliciting, or encouraging any Class members to request to be excluded (or "opt out") from this Settlement Agreement.

10.     Upon certification of the Class in connection with the Preliminary Approval of this Settlement Agreement, Class Counsel agree to seek in the Preliminary Approval Order from the Court a provision encouraging all written communications to multiple Class members with respect to this Settlement Agreement to be reviewed and approved by Class Counsel and the Court, and Class Counsel agree to abide by that provision as may be required by the Court.

## IX.    OBJECTIONS

1.      The Parties will request that the Court enter an order requiring any Class member who wishes to enter an objection to be considered to submit a written notice of objection to Class Counsel and Defendants by the deadline set in the Court's Preliminary Approval Order.

2.      To state a valid objection to the Settlement Agreement, an objecting Class member must provide the following information in his, her, or their written objection: (i) the case name and number, *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liab. Litig.*, Case No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.); (ii) his, her, or their full name, current address,

27

and current telephone number; (iii) the model year and VIN(s) of his, her, or their Class Vehicle(s); (iv) a statement of the objection(s), including all factual and legal grounds for the position; (v) copies of any documents the objector wishes to submit in support; (vi) the name and address of any lawyer(s) representing the objecting Class member in making the objection or who may be entitled to compensation in connection with the objection; (vii) a statement of whether the Class member objecting intends to appear at the Final Approval Hearing, either with or without counsel; (viii) the identity of all counsel (if any) who will appear on behalf of the Class member objecting at the Final Approval Hearing and all persons (if any) who will be called to testify in support of the objection; and (ix) the signature of the Class member objecting, in addition to the signature of any attorney representing the Class member objecting in connection with the objection, and date of the objection. In addition, any Class member objecting to the Settlement Agreement shall provide a list of any other objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any court in the United States in the previous five years. If the Class member or his, her, or their counsel has not made any such prior objection, the Class member shall affirmatively so state in the written materials provided with the objection.

3.      If the objecting Class member intends to appear, in person or by counsel, at the final approval hearing, the objecting Class member must so state in the objection. Any Class member who does not state his, her, or their intention to appear in accordance with the applicable deadlines and other specifications, or who has not filed an objection in accordance with the applicable deadlines and other specifications, will be deemed to have waived any objections to the Settlement Agreement and can be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

4.      The Parties will request that the Court enter an order providing that the filing of an objection allows Class Counsel or counsel for Defendants to notice such objecting person for and take his, her, or their deposition consistent with the Federal Rules of Civil Procedure at an agreed-upon location, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an objector to make himself, herself, or themselves available for a deposition or comply with expedited discovery requests may result in the Court striking the objection and otherwise denying that person the opportunity to be heard. The Court may tax the costs of any such discovery to the objector or the objector's counsel should the Court determine that the objection is frivolous or made for improper purpose.

5.      Any objector who seeks a fee for their objection shall do so as prescribed under Federal Rule of Civil Procedure 23(e)(5)(B).

6.      These procedures and requirements for objecting are intended to ensure the efficient administration of justice and the orderly presentation of any Class member's objection to the Settlement Agreement, in accordance with the due process rights of all Class members.

7.      Any Class member who fails to file and serve timely a written objection containing all of the information listed in paragraphs 2 and 3 above, including notice of his, her, or their intent to appear at the Final Approval Hearing, shall not be permitted to object to the Settlement Agreement and shall be foreclosed from seeking any review of the Settlement Agreement and any of its terms by any means, including but not limited to an appeal.

8.    The Parties shall promptly inform the Court of any consideration sought by an objector and the circumstances of such a request.

## X.    MISCELLANEOUS

### A.    Choice of Law

This Settlement Agreement shall be governed by and construed in accordance with the substantive laws of the State of California without giving effect to any choice or conflict of law provision, or rule that would cause the application of the laws of any other jurisdiction.

### B.    Not Evidence

1.    The Parties understand and acknowledge that this Settlement Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability or wrongdoing of any kind whatsoever to any other Party.

2.    Neither this Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of it: (a) is, or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any legal claim made by Consumer Plaintiffs or Class members, or of any wrongdoing or liability of Defendants, or (b) is, or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of Releasees in any proceeding in any court, administrative agency, or other tribunal.

3.    This provision shall survive the expiration or voiding of the Settlement Agreement.

### C.    Headings

The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction.

### D.    Effect of Exhibits

The exhibits to this Settlement Agreement are an integral part of the Settlement Agreement and are expressly incorporated and made a part of this Settlement Agreement.

### E.    Entire Agreement

This Settlement Agreement represents the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this agreement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of this agreement has been made or relied on except as expressly set forth in this Settlement Agreement. No modification or waiver of

any provisions of this Settlement Agreement shall in any event be effective unless the same shall
be in writing and signed by the person or Party against whom enforcement of the Settlement
Agreement is sought.

### F.     Counterparts

This Settlement Agreement may be executed in one or more counterparts, each of which
shall be deemed an original as against any Party who has signed it, and all of which shall be deemed
a single agreement.

This Agreement shall be effective upon its execution by Class Counsel, Defendants, and
Defendants' Counsel, except for those provisions that require Court-approval to be effective, and
those provisions shall become effective upon their approval by the Court.

### G.     Arm's-Length Negotiations

1.     The Parties have negotiated all of the terms and conditions of this Settlement
Agreement at arm's length. The provisions for attorneys' fees and costs and service awards are
being negotiated separately from and after the agreement on the provisions for relief to Consumer
Plaintiffs and the Class.

2.     All terms, conditions, and exhibits in their exact form are material and necessary to
this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement
Agreement.

3.     The determination of the terms of, and the drafting of, this Settlement Agreement
has been by mutual agreement after negotiation, with consideration by and participation of all
Parties and their counsel. Since this Settlement Agreement was drafted with the participation of
all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter
does not apply. The Parties were represented by competent and effective counsel throughout the
course of settlement negotiations and in the drafting and execution of this Settlement Agreement,
and there was no disparity in bargaining power among the Parties to this Settlement Agreement.

### H.     Public Statements

1.     The Parties and their Counsel agree to keep the substance of this Settlement
Agreement confidential until the date on which the Settlement Agreement is filed with the Court,
provided that this section shall not prevent Defendants from disclosing such information, prior to
the date on which the Agreement is filed, to state and federal agencies, independent accountants,
actuaries, advisors, financial analysts, insurers, or attorneys, nor shall it prevent the Parties and
their Counsel from disclosing such information to persons or entities (such as experts, courts, co-
counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to
effectuate the terms and conditions of the Settlement Agreement; provided further that Defendants
may disclose publicly the terms of the Settlement Agreement that it deems necessary to meet its
regulatory obligations or fiduciary duties; and provided further that Consumer Plaintiffs may
disclose the terms to their expert(s).

2.      Neither the Parties nor their Counsel shall issue (or cause any other Person to issue) any further press release concerning the existence or substance of this agreement, excepting the jointly-created press release described as follows. The Parties may publicly release and announce the fact and terms of the Settlement Agreement, subject to the Parties reaching mutual written consent on the contents of the press release prior to filing for preliminary approval. Excepting such announcement and the exhibits to this Settlement Agreement, neither the Parties nor their Counsel shall issue (or cause any other Person to issue) any other press release concerning this Settlement Agreement or the Settlement set forth herein, unless otherwise agreed to in writing and neither the Parties nor their Counsel shall make (or cause any other Person to make) any statements of any kind to the press concerning this Settlement Agreement or the Settlement set forth herein, except that a Party or Party's counsel may respond to an inquiry from a member of the press by (a) directing the member of the press to a public resource to review or obtain a copy of this Settlement Agreement or the Class Notice or (b) by supplying additional information to the member of the press, provided that the responding Party will provide such additional information to the other Parties as promptly as practicable. A Party or Party's counsel shall provide notice to the other Parties before responding to a press inquiry whenever reasonably possible. If such notice cannot reasonably be provided before responding to a press inquiry, the responding Party or Party's Counsel shall notify the other Parties promptly after responding to the press inquiry. This paragraph does not prevent Class Counsel from communicating with individual Class members about the Settlement Agreement.

### I.      Good Faith

The Parties acknowledge that prompt approval, consummation, and implementation of this Settlement Agreement is essential. The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement Agreement, shall promptly perform their respective obligations hereunder, and shall attempt to resolve any dispute that may arise under this Settlement Agreement in a good faith and expeditious manner.

### J.      Continuing Jurisdiction

The Parties agree the Court may retain continuing and exclusive jurisdiction over them, and all Class members, for the purpose of the administration and enforcement of this Settlement Agreement.

### K.      Extensions of Time

The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement without further notice (subject to Court approval as to court dates).

### L.      Service of Notice

Whenever, under the terms of this Settlement Agreement, written notice is required to be given to Defendants or Class Counsel, such service or notice shall be directed to the individuals and addresses specified below, unless those individuals or their successors give notice to the other parties in writing:

As to Consumer Plaintiffs:

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
Email: steve@hbsslaw.com

Elizabeth A. Fegan, Esq.
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Email: beth@feganscott.com

Kenneth B. McClain, Esq.
HUMPHREY FARRINGTON & McCLAIN
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis, Esq.
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

As to Defendants:

Shon Morgan
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

Peter J. Brennan
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456

IN WITNESS HEREOF, each of the Parties hereto has caused this agreement to be executed, as of the day(s) set forth below.

Dated:  July 20, 2023                    By: _____

                                         Steve W. Berman
                                         HAGENS BERMAN SOBOL SHAPIRO LLP
                                         1301 Second Avenue, Suite 2000
                                         Seattle, WA 98101
                                         Telephone: (206) 623-7292
                                         Fax: (206) 623-0594
                                         Email: steve@hbsslaw.com

Elizabeth A. Fegan, Esq.
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain, Esq.
HUMPHREY FARRINGTON & McCLAIN
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis, Esq.
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Consumer Class Action Leadership Counsel and Counsel for Consumer Plaintiffs*

Dated:  July 20, 2023                    By: _____

                                         Shon Morgan
                                         QUINN EMANUEL URQUHART
                                         & SULLIVAN, LLP
                                         865 S. Figueroa St., 10th Floor
                                         Los Angeles, CA 90017

Peter J. Brennan
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456

*Counsel for Defendants*

Dated:  July 20, 2023          By: _____

                                Jason Erb
                                Chief Legal Officer, Hyundai Motor North America
                                For Hyundai Motor America and Hyundai Motor
                                Company


Dated:  July 20, 2023          By: _____

                                John Yoon
                                Executive Vice President and General Counsel, Kia
                                America, Inc.
                                For Kia America, Inc. and Kia Corporation

34

Dated:  July 20, 2023        By: _____

                                    Jason Erb
                                    Chief Legal Officer, Hyundai Motor North America
                                    For Hyundai Motor America and Hyundai Motor
                                    Company

Dated:  July 20, 2023        By: _____

                                    John Yoon
                                    Executive Vice President and General Counsel, Kia
                                    America, Inc.
                                    For Kia America, Inc. and Kia Corporation

# Exhibit A

# NOTICE OF PROPOSED CLASS SETTLEMENT

**If you purchased or leased one of the Hyundai or Kia vehicles below that was manufactured without an engine immobilizer, you might benefit from a class action settlement:**

| Make | Model | Model Year |
|---|---|---|
| Hyundai | Accent | 2011 – 2022 |
| Hyundai | Elantra | 2011 – 2022 |
| Hyundai | Elantra GT | 2013 – 2020 |
| Hyundai | Elantra Coupe | 2013 – 2014 |
| Hyundai | Elantra Touring | 2011 – 2012 |
| Hyundai | Genesis Coupe | 2011-2014 |
| Hyundai | Kona | 2018 – 2022 |
| Hyundai | Palisade | 2020 – 2021 |
| Hyundai | Santa Fe | 2011 – 2022 |
| Hyundai | Santa Fe Sport | 2013 – 2018 |
| Hyundai | Santa Fe XL | 2019 |
| Hyundai | Sonata | 2011 – 2019 |
| Hyundai | Tucson | 2011 – 2022 |
| Hyundai | Veloster | 2012 – 2017, 2019 – 2021 |
| Hyundai | Venue | 2020 – 2021 |
| Hyundai | Veracruz | 2011 – 2012 |
| Kia | Forte | 2011 – 2021 |
| Kia | K5 | 2021 – 2022 |
| Kia | Optima | 2011 – 2020 |
| Kia | Rio | 2011 – 2021 |
| Kia | Sedona | 2011 – 2021 |
| Kia | Seltos | 2021 – 2022 |
| Kia | Sorento | 2011 – 2022 |
| Kia | Soul | 2011 – 2022 |
| Kia | Sportage | 2011 – 2022 |

*A federal court authorized this notice. This is not a solicitation from a lawyer.*
*Your rights are affected regardless of whether or not you act. Read this notice carefully.*
**Please visit <mark>XXXX</mark> for a copy of this notice in Spanish. Visite <mark>XXXX</mark> para obtener una copia de este aviso en español.**

The purpose of this Notice is to inform you of a proposed Settlement of a class action lawsuit in California federal court called *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation,* No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.). You are receiving this Notice because records indicate that you may be entitled to claim certain financial benefits offered by this Settlement.

The lawsuit alleges that certain of the above-listed 2011-2022 model year Hyundai and Kia vehicles, *i.e.*, those that were manufactured without an engine immobilizer (called the "Class Vehicles") contain design flaws, including the failure to

manufacture the Class Vehicles with an anti-theft device called an engine immobilizer, that make them susceptible to theft and damage. Class Vehicles manufactured without an engine immobilizer have a traditional "turn-key-to-start" ignition systems.

No party has been found liable for any claims alleged in the lawsuit. The Plaintiffs and Defendants (Hyundai Motor America, Hyundai Motor Company, Hyundai American Technical Center, Inc. also doing business as Hyundai-Kia America Technical Center (together "Hyundai"), Kia America, Inc., and Kia Corporation ("KC") (together, "Kia")), have instead reached a voluntary settlement (referred as "the Settlement" or "the proposed Settlement") to avoid lengthy litigation and provide relief to people who owned or leased Class Vehicles, referred to as "Class Members." Class Members may be entitled to compensation if they submit valid and timely Claims.

Under the proposed Settlement, and subject to satisfying certain proof requirements, Defendants will provide financial and other benefits to Class Members, including compensation for damages arising from the theft or attempted theft of a Class Vehicle.

To qualify for benefits under the Settlement you must have purchased or leased a Class Vehicle in the United States (including Puerto Rico, Virgin Islands, and Guam).

To check whether your vehicle is a Class Vehicle and whether it is eligible for the Software Upgrade, you can visit the Settlement website at XXXX or call (XXX) XXX-XXXX and ask whether your vehicle is included in the Settlement and/or whether it is eligible for the Software Upgrade. Whether you visit the website or call the toll-free number, you will need to have your Vehicle Identification Number ("VIN") ready.

The benefits under the Settlement are:

- A free Software Upgrade for certain eligible Class Vehicles that will prevent the vehicles locked with a key or key fob from starting without the key being present using a method of theft popularized on TikTok and other social media channels. Class Members who purchased or leased these Class Vehicles are also eligible for reimbursement up to $50 per Class Vehicle for the purchase of a steering wheel lock or equivalent device if the purchase was made at least thirty days before the Software Upgrade was made available for the Class Vehicle (also referred to as a "Qualifying Purchase"). All Class Vehicles in Puerto Rico, Virgin Islands, and Guam **are not** eligible to receive the Software Upgrade. Within the fifty states and the District of Columbia, the following Class Vehicles **are eligible** to receive the Software Upgrade.

| Make | Model | Model Year |
|------|-------|------------|
| Hyundai | Accent | 2018 – 2022 |
| Hyundai | Elantra | 2011 – 2022 |
| Hyundai | Elantra GT | 2013 – 2020 |
| Hyundai | Genesis Coupe | 2013 – 2014 |
| Hyundai | Kona | 2018 – 2022 |
| Hyundai | Palisade | 2020 – 2021 |
| Hyundai | Santa Fe | 2013 – 2022 |
| Hyundai | Santa Fe Sport | 2013 – 2018 |
| Hyundai | Santa Fe XL | 2019 |
| Hyundai | Sonata | 2011 – 2019 |
| Hyundai | Tucson | 2011 – 2022 |
| Hyundai | Veloster | 2012 – 2017 |
|         |         | 2019 – 2021 |
| Hyundai | Venue | 2020 – 2021 |
| Kia | Forte | 2014 – 2021 |
| Kia | K5 | 2021 – 2022 |
| Kia | Optima | 2011 – 2020 |
| Kia | Rio | 2012 – 2021 |
| Kia | Sedona | 2011 – 2021 |

| Make | Model | Model Year |
|------|-------|------------|
| Kia | Seltos | 2021 – 2022 |
| Kia | Sorento | 2011 – 2022 |
| Kia | Soul | 2020 – 2022 |
| Kia | Sportage | 2011 – 2022 |

- For Class Members who purchased or leased Class Vehicles that are not eligible for the Software Upgrade, reimbursement up to $300 per Class Vehicle for purchase and/or installation of a steering wheel lock, glass breakage alarm or similar anti-theft system, or another aftermarket modification designed to deter or prevent theft. Class Members that already received a steering wheel lock from Hyundai or Kia (for example, shipped directly or through a dealer or through a law enforcement department) are eligible for reimbursement up to $250 per Class Vehicle for purchase and installation of a glass breakage alarm or similar anti-theft system, or another aftermarket modification designed to deter or prevent theft. All Class Vehicles in Puerto Rico, Virgin Islands, and Guam **are not** eligible to receive the Software Upgrade. Within the fifty states and the District of Columbia, the below-listed Class Vehicles **are not** **eligible** to receive the Software Upgrade. If a Class Vehicle that was originally ineligible for the Software Upgrade later becomes eligible to receive the Software Upgrade, the purchase of a steering wheel lock, or purchase and installation of a glass breakage alarm or similar anti-theft system, or another aftermarket modification designed to deter or prevent theft will not be eligible for reimbursement as of thirty days after the postmarked date of the mail notice notifying the Class member of such eligibility.

| Make | Model | Model Year |
|------|-------|------------|
| Hyundai | Accent | 2011 – 2017 |
| Hyundai | Elantra Coupe | 2013 – 2014 |
| Hyundai | Elantra Touring | 2011 – 2012 |
| Hyundai | Genesis Coupe | 2011 – 2012 |
| Hyundai | Santa Fe | 2011 – 2012 |
| Hyundai | Veracruz | 2011 – 2012 |
| Kia | Forte | 2011 – 2016 |
| Kia | Rio | 2011 – 2017 |
| Kia | Soul | 2011 – 2022 |
| Kia | Sportage | 2011 – 2016 |

- For all Class Members, establishment of a Common Fund of at least $80,000,000 and up to $145,000,000 for the payment of approved Class Member Claims. From this Common Fund, Class Members may make Claims for certain out-of-pocket and uncompensated losses resulting from a Class Vehicle that received the Software Upgrade and/or experienced a Qualifying Theft or Qualifying Theft Attempt. "Qualifying Theft" refers to the theft of a Class Vehicle through forcible entry and breach of the ignition system.  "Qualifying Theft Attempt" refers to an attempted theft of a Class Vehicle through forcible entry and either an attempted dismantling of the steering column or an attempted breach of the ignition system. Such eligible losses include:

  o   Reimbursement up to $6,125 for the **total loss** (defined below) of a Class Vehicle resulting from a Qualifying Theft or Qualifying Theft Attempt;

  o   Reimbursement up to $3,375 for **damage** to a Class Vehicle resulting from a Qualifying Theft or Qualifying Theft Attempt and/or **for the value of personal property** stolen or damaged during a Qualifying Theft or Qualifying Theft Attempt;

  o   Reimbursement up to $375 for **insurance deductibles paid and increased insurance premiums** for insurance policies that include theft coverage resulting from a Qualifying Theft or Qualifying Theft Attempt;

- o Reimbursement up to $250 for **other expenses** resulting from a Qualifying Theft or Qualifying Theft Attempt, including: transportation expenses; towing expenses; licensing and registration fees, sales tax paid, and other expenses directly associated with the purchase of a new or replacement vehicle if the Class Vehicle was declared a total loss; expenses associated with speeding tickets, red light tickets, or other penalties or fines incurred from the Qualifying Theft or Qualifying Theft Attempt;

- o Reimbursement up to $250 for lost income and childcare expenses resulting from the time spent obtaining the Software Upgrade.

- o Reimbursement of OEM-issued key fobs purchased at the direction of a Hyundai/Kia dealership because these were necessary to implement the Software Upgrade, subject to a cap of $350 per key fob, with a limit of up to two key fobs per Class Vehicle.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT: | |
|---|---|
| **SUBMIT A CLAIM FORM FOR REIMBURSEMENT FROM THE COMMON FUND** | The only way to get reimbursement or compensation for losses arising from the theft or attempted theft of a Class Vehicle or certain out-of-pocket costs incurred when obtaining the free Software Upgrade. However, it is not necessary to submit a Claim Form to obtain the free Software Upgrade, if applicable to your Class Vehicle. The deadline to submit a Claim for these benefits is XXXX. Any extension of this date will be posted on the Settlement website. |
| **SUBMIT A CLAIM FORM FOR REIMBURSEMENT FOR PURCHASE OF A STEERING WHEEL LOCK OR OTHER ANTITHEFT DEVICE** | The only way to get reimbursement for the purchase of a steering wheel lock or other antitheft device. However, it is not necessary to submit a Claim Form to obtain the free Software Upgrade, if applicable to your Class Vehicle. The deadline to submit a Claim for these benefits is XXXX. Any extension of this date will be posted on the Settlement website. |
| **EXCLUDE YOURSELF** | Get no payment. This is the only option that allows you to file or be part of any pending or future lawsuit against Defendants about the legal claims in this case. The deadline to submit a request for exclusion is XXXX. |
| **OBJECT** | In order to object to the Settlement, you must remain a member of the lawsuit — you cannot ask to be excluded. You may object to the Settlement by writing to Class Counsel (identified on page XX) and indicating why you do not like the Settlement. The deadline to object is XXXX. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement. The deadline to challenge the fairness of the Settlement is XXXX. |
| **DO NOTHING** | Get no reimbursement or compensation. **However, you will receive the Software Upgrade, if applicable to your Class Vehicle, if you bring it into an authorized Hyundai or Kia dealer.** |

- • These rights and options — **and the deadlines to exercise them** — are explained in this notice.

- The Court overseeing this case still must decide whether to approve the Settlement. Payments will be made if the Court approves the Settlement and after any appeals are resolved. The Court approval process will take time, so please be patient.

**BASIC INFORMATION** .................................................................................................. 1

    1.    Why did I get this notice package? .......................................................... 1

    2.    What is this lawsuit about? ....................................................................... 1

    3.    Why is this a class action? ....................................................................... 1

    4.    Why is there a settlement? ....................................................................... 1

**WHO IS IN THE SETTLEMENT?** ................................................................................. 2

    5.    How do I know if I am part of the Settlement? .................................. 2

    6.    Which vehicles are included? .................................................................. 2

    7.    If I purchased or leased a Class Vehicle that has not been stolen or damaged, am I included? ......................................................... 3

    8.    I am still not sure if I am included. ....................................................... 3

**SETTLEMENT BENEFITS – WHAT YOU GET** ...................................................... 3

    9.    What does the Settlement provide? ....................................................... 3

        a)    Software Upgrade and Other Benefits for Eligible Class Vehicles ................................................................................... 3

            (1)    Reimbursement for Purchase of a Steering Wheel Lock or Equivalent Device ................................................................. 4

        b)    Benefits for Class Vehicles Not Eligible for Software Upgrade ................................................................................. 4

        c)    Common Fund Benefits Available for All Class Members ................................................................................................. 5

            (1)    Total Loss of Class Vehicle .......................................... 6

            (2)    Damage to Class Vehicle and Personal Property ...................... 7

            (3)    Insurance-Related Expenses .......................................... 7

            (4)    Other Related Expenses ................................................ 7

            (5)    Other terms and conditions For the Common Fund ................... 8

**HOW YOU GET A REIMBURSEMENT – SUBMITTING A CLAIM FORM** .......... 8

    10.    How do I make a Claim? ........................................................................ 8

11.     What kind of documentation do I need to include when submitting my Claim Form? .......................................................9

12.     When would I get my reimbursement? ...........................................10

13.     What if my Claim is found to be deficient? ....................................10

14.     What am I giving up to stay in the Settlement Class? .....................10

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ...............................**11**

15.     How do I get out of the Settlement? ...............................................11

16.     If I do not exclude myself, can I sue for the same thing later? ......................................................................................12

17.     If I exclude myself, can I get the benefits of this Settlement? ................................................................................12

**THE LAWYERS REPRESENTING YOU** .................................................**12**

18.     Do I have a lawyer in this case? .....................................................12

19.     How will the lawyers be paid, and will the Class Representatives receive service payments? ..........................12

**OBJECTING TO THE SETTLEMENT** ....................................................**13**

20.     How do I tell the Court if I do not like the Settlement? ..................13

21.     What is the difference between objecting and excluding? ...............14

**THE COURT'S FINAL APPROVAL HEARING** .....................................**14**

22.     When and where will the Court decide whether to approve the Settlement? ........................................................................14

23.     Do I have to come to the Final Approval Hearing? ........................14

24.     May I speak at the Final Approval Hearing? .................................14

**IF YOU DO NOTHING** .........................................................................**15**

25.     What happens if I do nothing at all? ...............................................15

**GETTING MORE INFORMATION** ........................................................**15**

26.     Are there more details about the Settlement? .................................15

27.     How do I get more information? .....................................................15

## BASIC INFORMATION

### 1.     Why did I get this notice package?

According to records, you may have purchased or leased a Class Vehicle in the United States (including Puerto Rico, Virgin Islands, and Guam) that was manufactured without an engine immobilizer.

The Court has ordered this notice be sent to you because you have a right to know about the proposed Settlement of this class action lawsuit and about your options in this lawsuit before the Court decides whether to approve the Settlement. If the Court approves the Settlement, and after any objections and appeals are resolved, Defendants will provide payments and other benefits agreed to in the Settlement to Class Members. This notice explains the lawsuit, the Settlement, your legal rights, what benefits are available, who is eligible for them, and how to get them.

**You should read this entire notice.**

### 2.     What is this lawsuit about?

The people who filed these lawsuits are called Plaintiffs, and the companies they sued, including Hyundai and Kia, are called Defendants. The Plaintiffs allege the Class Vehicles were improperly manufactured with a series of design flaws that make them susceptible to theft and damage, which can be dangerous if experienced and subjected Class Members to financial and other losses.

### 3.     Why is this a class action?

In a class action lawsuit, one or more persons called "Plaintiffs" or "Class Representatives" (in this case Kari Eldridge, Brittany Kingsbury, Miyoshi Morrow, Stefani Poblete Taylor, Adam Lippert, Michael Kay, Mollie McGeehon, Herbert Taylor, Arlecia Brown, Edith Bucio, Matthew Pavonetti, Jason Reyes, Ann Brady, Mark Thompson, Renee Ledet, Ian Michael Scott, Irene Beach, Leilani Cabrera, John Dylan Burton, Eric Bain, Steven Hufford, Talysia Ruff, Tyler McGill, John McGraw, Cameron Morton, Lexii Cummings, Matthew Jacobsen, Dennette Ray, Brian Helm, Adriana Pilant, Luis Enrique Vargas Rodriguez, David Lucas, Leanna Adams, Iona Barnes, Craig Granville, Jisun Kang, Michelle Pollack, Rachel Perry, Claire Roberts, Mary Kathryn Morrison, Patricia Sumpterbynum, Kristina McKnight, Trina Johnson, Marcella Blum, Matthew Butler, Kayla Collyer, David Larsen, Anthony Loburgio, Katelyn McNerney, Eryca Smith, Dave Sessions, Tajia Turner, Laura Roberts, Hubert Matthews, Rita Day, Kasey Weinfurtner, Charles Hession, Molly O'Connor, Rejene Jackson, Tiffany Devonish, Darlene Bennor, Jacquella Russell, Lauren Hernandez, John Pope, Pauline Ragsdale, Kathy Hughes, Rosemary Winner Johnson, Maggie Ketchie, Peggy Ciafullo, Amber Hall, Michael Ryle, James DePorche, Ronald DeSarro, Teresa Harris, Cameron Cunningham, Shatoya McKinney, Gerald Smith, Lauren Kawetschansky, Shana Eberhardt, Michelle Wagner, Adrian Matthews, Carolyn Catlos, Albert Lui, Nadine Quate Francis, and Michael Scalise), sue on behalf of people who have similar claims. All these people and those similarly situated are a "Settlement Class" or "Class Members." One court resolves the issues for all Class Members, except those who exclude themselves from the Settlement Class. The court overseeing the case is the United States District Court for the Central District of California, and the case is known as *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation,* No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.). United States District Judge James V. Selna is presiding over this class action.

### 4.     Why is there a settlement?

The Plaintiffs and Defendants agreed to the Settlement to avoid the cost and risk of further litigation, including a potential trial, and so that the Class Members can get payments and other benefits sooner in exchange for releasing Defendants from liability. Absent the Settlement, even if Plaintiffs are successful at trial, it could be years before Class Members would receive any relief. The Settlement does not mean Defendants broke any laws or did anything wrong, and the Court did not decide which side was right.

The Class Representatives and Defendants entered into a Settlement Agreement that was preliminarily approved by the Court. The Court authorized the issuance of this notice. The Class Representatives and the lawyers representing them (called "Class Counsel") believe that the Settlement is in the best interest of the Class Members.

This notice summarizes the essential terms of the Settlement. The Settlement Agreement, along with all exhibits and addenda, sets forth in greater detail the rights and obligations of all the Parties and is available at XXXX. If there is any conflict between this notice and the Settlement Agreement, the Settlement Agreement governs.

## WHO IS IN THE SETTLEMENT?

**5.      How do I know if I am part of the Settlement?**

Judge Selna decided that, for the purposes of this proposed Settlement, everyone who fits this description is covered by the Settlement: All persons or entities who purchased or leased a Class Vehicle in the United States (including Puerto Rico, Virgin Islands, and Guam).

However, the Class claims exclude all claims for personal injury, death, and subrogation and such claims are not released by the Settlement.

The Class also excludes Hyundai Motor America, Inc. ("HMA"), Hyundai Motor Company ("HMC"); Hyundai American Technical Center, Inc. also doing business as Hyundai-Kia America Technical Center ("HATCI"), Kia America, Inc. ("KA") and Kia Corporation ("KC"); any affiliate, parent, or subsidiary of Hyundai or Kia; any entity in which Hyundai or Kia has a controlling interest; any officer, director, or employee of Hyundai or Kia; any successor or assign of Hyundai or Kia; any judge to whom this Action is assigned, their spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons; individuals and/or entities who validly and timely opt-out of the Settlement; consumers or businesses, including insurers, that have purchased or otherwise obtained title for Class Vehicles previously deemed a total loss (*i.e.*, salvage or junkyard vehicles) (subject to verification through Carfax or other means); and current or former owners of Class Vehicles that previously released their claims in an individual settlement with Hyundai or Kia with respect to the issues raised in the Actions so long as the consideration offered to them.

**6.      Which vehicles are included?**

The Class Vehicles, for the purpose of the description in the response to Question 5 above, include the following Hyundai and Kia vehicle models:

| Make | Model | Model Year |
|------|-------|------------|
| Hyundai | Accent | 2011 – 2022 |
| Hyundai | Elantra | 2011 – 2022 |
| Hyundai | Elantra GT | 2013 – 2020 |
| Hyundai | Elantra Coupe | 2013 – 2014 |
| Hyundai | Elantra Touring | 2011 – 2012 |
| Hyundai | Genesis Coupe | 2011 – 2014 |
| Hyundai | Kona | 2018 – 2022 |
| Hyundai | Palisade | 2020 – 2021 |
| Hyundai | Santa Fe | 2011 – 2022 |
| Hyundai | Santa Fe Sport | 2013 – 2018 |
| Hyundai | Santa Fe XL | 2019 |
| Hyundai | Sonata | 2011 – 2019 |
| Hyundai | Tucson | 2011 – 2022 |
| Hyundai | Veloster | 2012 – 2017, 2019 – 2021 |
| Hyundai | Venue | 2020 – 2021 |
| Hyundai | Veracruz | 2011 – 2012 |
| Kia | Forte | 2011 – 2021 |
| Kia | K5 | 2021 – 2022 |
| Kia | Optima | 2011 – 2020 |
| Kia | Rio | 2011 – 2021 |
| Kia | Sedona | 2011 – 2021 |
| Kia | Seltos | 2021 – 2022 |

| Make | Model | Model Year |
|------|-------|------------|
| Kia | Sorento | 2011 – 2022 |
| Kia | Soul | 2011 – 2022 |
| Kia | Sportage | 2011 – 2022 |

**7.** **If I purchased or leased a Class Vehicle that has not been stolen or damaged, am I included?**

Yes, you did **not** have to experience a theft or attempted theft to be included in this Settlement. If you purchased or leased certain Class Vehicles, you are eligible to take advantage of the free Software Upgrade. You may also file a Claim for reimbursement up to $250 for lost income or childcare expenses for the time spent getting the Software Upgrade, as well as reimbursement for the purchase of key fobs (up to $350 per key fob with a limit of two per Class Vehicle), if key fobs were purchased at the direction of Hyundai/Kia dealers as required for the implementation of the Software Upgrade. You may also file a Claim for reimbursement up to $50 per Class Vehicle for the purchase of a steering wheel lock or equivalent device if that purchase was made at least thirty days before the Software Upgrade was available for your Class Vehicle.

If you owned or leased a Class Vehicle that is not eligible for the Software Upgrade, you may file a Claim for reimbursement up to $300 per Class Vehicle for purchase and/or installation of a steering wheel lock, glass breakage alarm or similar anti-theft system, or another aftermarket modification designed to deter or prevent theft. Class Members that owned or leased a Class Vehicle that is not eligible for the Software Upgrade that already received a steering wheel lock from Hyundai or Kia (for example, shipped directly, from a dealership, or through law enforcement) are eligible for reimbursement up to $250 per Class Vehicle for purchase and installation of a glass breakage alarm or similar anti-theft system, or another aftermarket modification designed to deter or prevent theft.

**8.** **I am still not sure if I am included.**

If you are still not sure whether you are included, you can ask for help at no cost to you. You can visit XXXX or call (XXX) XXX-XXXX and ask whether your vehicle is included in the Settlement. Whether you visit the website or call the toll-free number, you will need to have your VIN ready. The VIN is located on a small placard on the top of the dashboard and is visible through the driver's side corner of the windshield or on the driver side door frame. It also appears on your vehicle registration card and probably appears on your vehicle insurance card. Your VIN should have 17 characters, a combination of both letters and numbers.

## SETTLEMENT BENEFITS – WHAT YOU GET

**9.** **What does the Settlement provide?**

The Settlement provides the following benefits for which you can submit a Claim (see the response to Question 10 for how to make a timely Claim using the Claim Form):

    a)   Software Upgrade and Other Benefits for Eligible Class Vehicles

As part of the Settlement, Defendants are offering a free Software Upgrade for certain eligible Class Vehicles that is designed to prevent vehicles locked with a key or key fob from starting without the key being present by the method of theft popularized on TikTok and other social media channels. The Software Upgrade will be installed on all eligible Class Vehicles and can be scheduled through an authorized Hyundai or Kia dealership. The Software Upgrade will be performed at no cost on all eligible Class Vehicles brought to an authorized Hyundai or Kia dealership without need for request by the Class Member. Upon installing the Software Upgrade, the dealer will affix a sticker to the Class Vehicle indicating it has additional anti-theft protection. The Software Upgrade will be available for all eligible Class Vehicles until the later of: (a) 360 days after Hyundai or Kia provides notice of availability for each Class Vehicle model; (b) 360 days after final approval of the Settlement; or (c) actual installation of the Software Upgrade pursuant to appointments with authorized installers of the Software Upgrade made during the respective 360-day periods referenced in either (a) or (b) above. Hyundai and Kia warrant that the Software Upgrade will work as designed for the life of the Class Vehicle. Provision of this benefit shall not expand the scope or duration of Hyundai's and Kia's respective applicable limited warranties. Remedies related to the

- 3 -

Software Upgrade warranty will be strictly limited to repair or re-performance of the Software Upgrade. The Software Upgrade does not guarantee any vehicle will not be subject to theft or attempted theft.

All Class Vehicles in Puerto Rico, Virgin Islands, and Guam **are not** eligible to receive the Software Upgrade. Within the fifty states and the District of Columbia, **the following Class Vehicles are eligible to receive the Software Upgrade:**

| Make | Model | Model Year |
|------|-------|-----------|
| Hyundai | Accent | 2018 – 2022 |
| Hyundai | Elantra | 2011 – 2022 |
| Hyundai | Elantra GT | 2013 – 2020 |
| Hyundai | Genesis Coupe | 2013 – 2014 |
| Hyundai | Kona | 2018 – 2022 |
| Hyundai | Palisade | 2020 – 2021 |
| Hyundai | Santa Fe | 2013 – 2022 |
| Hyundai | Santa Fe Sport | 2013 – 2018 |
| Hyundai | Santa Fe XL | 2019 |
| Hyundai | Sonata | 2011 – 2019 |
| Hyundai | Tucson | 2011 – 2022 |
| Hyundai | Veloster | 2012 – 2017 2019 – 2021 |
| Hyundai | Venue | 2020 – 2021 |
| Kia | Forte | 2014 – 2021 |
| Kia | K5 | 2021 – 2022 |
| Kia | Optima | 2011 – 2020 |
| Kia | Rio | 2012 – 2021 |
| Kia | Sedona | 2011 – 2021 |
| Kia | Seltos | 2021 – 2022 |
| Kia | Sorento | 2011 – 2022 |
| Kia | Soul | 2020 – 2022 |
| Kia | Sportage | 2011 – 2022 |

Defendants will issue a nationwide press campaign promoting the Software Upgrade and discussing its availability and effectiveness at preventing vehicle thefts, which will include publication on social media platforms (including TikTok and Instagram). Defendants will also implement a driver awareness and instructional campaign regarding the Software Upgrade.

(1)     Reimbursement for Purchase of a Steering Wheel Lock or Key Fob

Class Members whose Class Vehicles are eligible to receive the Software Upgrade are also eligible for reimbursement up to $50 per Class Vehicle for the purchase of a steering wheel lock or equivalent device made at least thirty days before the Software Upgrade was made available for their Class Vehicle, as well as reimbursement of key fob expenses (up to $350 per fob, with a limit of 2 fobs per Class Vehicle) where required for the Software Upgrade.

b)     Benefits for Class Vehicles Not Eligible for Software Upgrade

For Class Vehicles **not eligible** for the Software Upgrade, the Settlement offers reimbursement up to $300 for Class Members' purchase and/or installation of a steering wheel lock, glass breakage alarm or similar anti-theft system, or another aftermarket modification designed to deter or prevent theft (a "Qualifying Purchase"). Any claimant who already received a steering wheel lock from Defendants (for example, shipped directly or through a dealer) or through a law enforcement department) for their Class Vehicle is eligible for reimbursement up to $250 for a Qualifying Purchase. These benefits apply per Class Vehicle. These Settlement benefits are not capped overall to the Class and will be paid by Defendants separately

from the Common Fund identified below. The provision of this benefit shall not expand the scope or duration of Hyundai and Kia's applicable limited warranties to cover a system or modification not otherwise covered by such warranty. These payments shall remain available for a period of 180 days after final approval of the Settlement.

All Class Vehicles in Puerto Rico, Virgin Islands, and Guam are **not eligible** to receive the Software Upgrade. Within the fifty states and the District of Columbia, **the following Class Vehicles are <u>not eligible</u> to receive the Software Upgrade, and thus eligible for the benefits outlined in this section:**

| Make | Model | Model Year |
|------|-------|------------|
| Hyundai | Accent | 2011 – 2017 |
| Hyundai | Elantra Coupe | 2013 – 2014 |
| Hyundai | Elantra Touring | 2011 – 2012 |
| Hyundai | Genesis Coupe | 2011 – 2012 |
| Hyundai | Santa Fe | 2011 – 2012 |
| Hyundai | Veracruz | 2011 – 2012 |
| Kia | Forte | 2011 – 2016 |
| Kia | Rio | 2011 – 2017 |
| Kia | Soul | 2011 – 2022 |
| Kia | Sportage | 2011 – 2016 |

c) <u>Common Fund Benefits Available for All Class Members</u>

Under the Settlement, Defendants combined will pay at least $80,000,000 and up to $145,000,000 into a Common Fund established for the payment of approved Class Member Claims. From this Common Fund, Class Members may make reimbursement Claims for certain out-of-pocket and uncompensated losses resulting from the theft or attempted theft of a Class Vehicle through forcible entry or breach of the ignition system (referred to as a "Qualifying Theft" or "Qualifying Theft Attempt").

To be eligible for reimbursement under the Common Fund, Class Members must establish a Qualifying Loss with Proof of a Qualifying Loss. "Qualifying Loss" means an out-of-pocket loss or uncompensated loss resulting from a Qualifying Theft or Qualifying Theft Attempt, provided such loss is reimbursable under the Common Fund. "Proof of a Qualifying Loss" refers to **<u>Proof of Ownership</u>** and documentation containing information necessary for the Settlement Administrator to verify the loss. Such documentation can include, but is not limited to a police report, insurance records, dealership records, repair records, receipts, cleared checks, credit card statements, bank records, registration records, employment records, or such other documents with comparable evidentiary value. For Total Loss, see "Total Loss" definition for other documentation required in addition to the Proof of Ownership required. "Proof of Ownership" means a copy of any document(s) issued to a Claimant by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that the Claimant currently owns or leases (or previously owned or leased) a Class Vehicle, identified by Vehicle Identification Number ("VIN"). Examples of such documents include owner registration card, vehicle title, bank note identifying the vehicle, and insurance card. Defendants and their Settlement Administrator are not responsible for returning documents (i.e., Claimants should not send in original registration cards or vehicle titles when submitting Claims). And for expenses reimbursable from the Common Fund, "Proof of Payment" is also required. "Proof of Payment" refers to the original or copy of any document(s) generated at or around the time expenses were incurred showing that the Claimant paid for the expenses incurred (e.g., a Qualifying Purchase, towing expenses, transportation expenses, etc.) for which they may be entitled to reimbursement under the Settlement. "Proof of Payment" must reflect the method of payment the Claimant used, the cost of the expense, and the name of the entity charging the Claimant for the expense. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card

statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in in cash shall include a valid corresponding final invoice or repair order, proof of withdrawal of cash from a bank or credit union, along with an attestation under penalty of perjury by the Claimant that they do not have a cash payment receipt from the person or entity that the Claimant paid showing their payment and as to the specific dollar amount they paid in cash.

The Qualifying Losses compensable from the Common Fund include:

        (1)        Total Loss of Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt

Reimbursement up to $6,125 for the total loss of a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt. "Total Loss" refers to any of the following situations:

- The Class Vehicle has been wrecked, destroyed, or damaged so badly as a result of the Qualifying Theft or Qualifying Theft Attempt (excluding pre-existing damage) that it is objectively uneconomical to repair the Class Vehicle (i.e., repair costs would be at least 70% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition), as established by objectively reliable documentation, such as an insurer notification, auto service station, a verifiable third-party estimate, repair receipts, or comparable documentation showing the condition of the Class Vehicle following the Qualifying Theft or Qualifying Theft Attempt. For documents to be objectively reliable, they must be issued by a verified business entity with a business address, a working phone number, any required license, and online reviews (all subject to verification).

- The Class Member's disposal (through sale or donation) of the Class Vehicle for less than 30% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition. In the event of a sale, the Class Member must submit proof of the amount received via the sale. If the Class Vehicle was donated or sold, the tax-deductible donation value or sale amount will be discounted from the claimed loss. For example, if the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition is $5,500 and the tax-deductible receipt or sales documentation shows a donated value or paid amount of $500, the claimed loss for the value of the vehicle can be a maximum of $5,000. A copy of a tax-deductible receipt is required if the Class Vehicle was donated as is proof of sale and payment received (such as DMV vehicle transfer form).

- The Class Vehicle subject to a Qualifying Theft or Qualifying Theft Attempt was declared a Total Loss by an insurer, but the Class Member was still not made whole by the insurance payments, as measured by the Black Book value (private party/average condition) minus total insurance settlement/payment received. Insurance documentation showing the amount claimed and recovered from an insurer is required.

- It has been at least three months since the Qualifying Theft and the Class Vehicle has not been recovered. In the event a Class Vehicle is recovered following the submission of a claim but before payment is issued from the Common Fund, the Class Member must notify the Settlement Administrator of the recovery. The Settlement Administrator may re-evaluate the amount due to the Class Member under the Settlement Agreement given the recovery of the Class Vehicle.

- For each of the above, a Claimant's loss will be measured in relation to the Black Book value of a comparable private party vehicle in very average condition. To determine the Black Book value, Claimants must submit the last known (or estimated) mileage of the Class Vehicle and identify any options that were installed on the Class Vehicle. The Settlement Administrator, on behalf of Hyundai and Kia, shall take all reasonably available steps to acquire all information necessary to determine the Black Book value,

including, but not limited to, contacting dealerships for last known (or estimated) mileage of the Class Vehicle and any options that were installed on the Class Vehicle.

(2)     Damage to Class Vehicle and Personal Property due to a Qualifying Theft or Qualifying Theft Attempt

Reimbursement up to $3,375 for damage to a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt (that does not result in Total Loss) and/or for the value of personal property stolen or damaged as a result of the Qualifying Theft or Qualifying Theft Attempt.

(3)     Insurance-Related Expenses due to a Qualifying Theft or Qualifying Theft Attempt

Reimbursement up to $375 for insurance deductibles paid and/or increased insurance premiums for insurance policies that include theft coverage, as a result of the Qualifying Theft or Qualifying Theft Attempt. To establish an increased insurance premium for comprehensive coverage resulting from a Qualifying Theft or Qualifying Theft Attempt, Claimants must submit insurance documentation showing the increased comprehensive coverage premium.

(4)     Other Related Expenses

Reimbursement up to $250 total for other expenses resulting from a Qualifying Theft or Qualifying Theft Attempt, including:

(a) Car rental, taxi, ride share, or public transportation expenses that were incurred as a result of a Qualifying Theft or Qualifying Theft Attempt and were not otherwise covered by insurance;

(b) Towing costs that were incurred as a result of a Qualifying Theft or Qualifying Theft Attempt because it was necessary to transport the stolen Class Vehicle to or from a police or city storage facility, repair facility or other location necessary to inspect, repair, sell, or dispose of a stolen Class Vehicle, including a junkyard or storage facility;

(c) Licensing fees, sales tax paid, registration fees and other expenses directly associated with the purchase of new/replacement vehicle if there was a Total Loss due to a Qualifying Theft or Qualifying Theft Attempt; and

(d) Costs associated with speeding tickets, red light tickets, or other penalties or fines incurred arising from a stolen Class Vehicle which was subjected to a Qualifying Theft or Qualifying Theft Attempt.

(5)      Reimbursement for Software Upgrade Related Expenses

The following expenses incurred relating to the implementation of the Software Upgrade (for eligible Class Vehicles) may be entitled to payments from the Common Fund:

(a) Reimbursement of OEM-issued key fobs purchased at the direction of a Hyundai/Kia dealership to implement the Software Upgrade, subject to a cap of $350 per key fob, with a limit of up to two key fobs per Class Vehicle.  To establish the purchase of OEM-issued fobs was made at the direction of a Hyundai/Kia dealership, the Claimant must submit the relevant dealership invoice.

(b) Reimbursement of other Software Upgrade related expenses as follows, subject to a per Class Vehicle cap of $250 total:

(i) Lost income resulting from implementation of the Software Upgrade; and

(ii) Childcare costs resulting from implementation of the Software Upgrade.

**If a Class Vehicle is subject to multiple Qualifying Thefts and/or Qualifying Theft Attempts, the Class Member is eligible for each of the benefits under the Common Fund (other than Total Loss), per each Qualifying Theft or Qualifying Theft Attempt.  Reimbursement for a Total Loss is available only once for each Class Vehicle, regardless of the number of Qualifying Thefts and/or Qualifying Theft Attempts.**

Payments from the Common Fund to satisfy approved Claims are subject to a pro-rata decrease based on the number of approved Claims if the Common Fund is insufficient to pay all approved Claims. If the aggregate amount of approved Claims does not equal or exceed $80,000,000, the caps for these benefits payable from the Common Fund will not apply and approved Claims will be increased proportionately until the $80,000,000 minimum Common Fund is met. If the total approved Claims do not equal or exceed $50,000,000 then Defendants will receive a credit of $10,000,000 for providing the Common Fund benefits (discussed above in section 9(c)) before the approved Claims are increased proportionately.

In no circumstances will a paid Claim exceed the amount of the submitted and approved Claim. Any "minimum" balance remaining from the Common Fund after the claims period has expired will be redistributed to claimants as a separate payment on a pro-rata basis, unless administratively infeasible, in which case they will be distributed to a Court-approved *cy pres* recipient, until such minimum balance is depleted.

## HOW YOU GET A REIMBURSEMENT – SUBMITTING A CLAIM FORM

**10.    How do I make a Claim?**

■  Fill out the Claim Form (paper or online), <u>and</u>

■  Include the documentation specified on the Claim Form, <u>and</u>

■  Submit the Claim Form online, by mail, or email to the address listed on the Claim Form, <u>and</u>

■  For Common Fund Claims, do so by <mark>XXXX</mark> (any extension of that date will be posted on the Settlement website). For reimbursement for purchase of a steering wheel lock or other antitheft device, do so by <mark>XXX</mark> (any extension of that date will be posted on the Settlement website).

You are encouraged to submit your Claim Form online, but you may download and print a Claim Form by visiting <mark>XXXX</mark> or you may request a Claim Form by calling <mark>(XXX) XXX-XXXX</mark>. Please keep a copy of your completed Claim Form and all documentation you submit for your own records.

If you fail to submit a Claim Form and supporting documents by the required deadline, you will not receive compensation for prior expenses. Sending in a Claim Form late will be the same as doing nothing. Please **DO NOT** send Claim Forms to Class Counsel or the Court as such submissions may not be processed.

**11.     What kind of documentation do I need to include when submitting my Claim Form?**

In addition to a completed Claim Form, you will need to submit supporting documentation. **For benefits relating to reimbursement for a Qualifying Purchase this includes:** (i) "Proof of Ownership," which means a copy of any document(s) issued by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that you currently own or lease (or previously owned or leased) a Class Vehicle, identified by Vehicle Identification Number ("VIN"). Examples of such documents include owner registration card, vehicle title, bank note identifying the vehicle, and insurance card; and (ii) "Proof of Payment," which means the original or copy of any document(s) generated at or around the time expenses were incurred showing that you paid for the expenses incurred (*e.g.*, a Qualifying Purchase, towing expenses, transportation expenses, etc.). "Proof of Payment" for the Qualifying Purchase must show the method of payment used, the cost of the Qualifying Purchase, and the name of the entity charging you for the expense. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in cash includes a valid corresponding final invoice or repair order, proof of withdrawal of cash from a bank or credit union, along with an attestation under penalty of perjury by you that you do not have a cash payment receipt from the person or entity that you paid for the Qualifying Purchase showing your payment and as to the specific dollar amount you paid in cash.

**For benefits payable from the Common Fund, this generally includes at least:** (i) "Proof of Ownership," which means a copy of any document(s) issued by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that you currently own or lease (or previously owned or leased) a Class Vehicle, identified by Vehicle Identification Number ("VIN"). Examples of such documents include owner registration card, vehicle title, bank note identifying the vehicle, and insurance card; (ii) "Proof of Qualifying Theft" and "Proof of Qualifying Theft Attempt," which means the original or a copy of any document(s) generated at or around the time of the Qualifying Theft or Qualifying Theft Attempt that specifies the date of the Qualifying Theft or Qualifying Theft Attempt and identifies the Class Vehicle by VIN or make and model, which may include a police report (which can be filed at any time prior to submitting a claim) and, if the Class Vehicle is insured, Insurance Records, and/or a similar third-party report with comparable trustworthiness, reliability, and probative/evidentiary value showing comparable information regarding the circumstances of the Qualifying Theft or Qualifying Theft Attempt and the resulting losses; (iii) documentation of any prior reimbursement you received that relates to your Claim (for example, insurance documentation or prior payment from Hyundai or Kia); and (iv) "Proof of Payment" if you are seeking reimbursement for an expense reimbursable under the Common Fund. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in cash includes a valid corresponding final invoice or repair order, proof of withdrawal of cash from a bank or credit union, along with an attestation under penalty of perjury by you that you do not have a cash payment receipt from the person or entity that you paid for the Qualifying Purchase showing your payment and as to the specific dollar amount you paid in cash. For any repairs performed at authorized Hyundai or Kia dealerships and paid in cash with a valid corresponding final repair order, you can attest under penalty of perjury that you do not have a cash payment receipt from the dealership showing your payment and as to the specific dollar amount you paid in cash to the dealership to suffice as "Proof of Payment." And if your Claim is for a Total Loss, you will need documentation establishing: (a) the Class Vehicle has been wrecked, destroyed, or damaged so badly as a result of the Qualifying Theft or Qualifying Theft Attempt (excluding pre-existing damage) that it is objectively uneconomical to repair the Class Vehicle (i.e., repair costs would be at least 70% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition), as established by objectively reliable documentation, such as an insurer notification, auto service station, a verifiable third-party estimate, repair receipts, or comparable documentation showing the condition of the Class Vehicle following the Qualifying Theft or Qualifying Theft Attempt. For documents to be objectively reliable, they must be issued by a verified business entity with a business address, a working phone number, any required license, and online reviews (all subject to verification); (b) your disposal (through sale or donation) of the Class Vehicle for less than 30% of the fair market value of the Class Vehicle, as

- 9 -

measured by the Black Book value for a comparable private party vehicle in average condition. In the event of a sale, you must submit proof of the amount received via the sale. If the Class Vehicle was donated or sold, the tax-deductible donation value or sale amount will be discounted from the claimed loss. A copy of a tax-deductible receipt is required if the Class Vehicle was donated as is proof of sale and payment received (such as DMV vehicle transfer form); (c) the Class Vehicle was declared a Total Loss by an insurer, but you were still not made whole by the insurance payments, as measured by the Black Book value (private party/average condition) minus total insurance settlement/payment received. Insurance documentation showing the amount claimed and recovered from an insurer is required; or (d) it has been at least three months since the Qualifying Theft and the Class Vehicle has not been recovered. If your Class Vehicle is recovered following the submission of a Claim but before payment is issued from the Common Fund, you must notify the Settlement Administrator of the recovery and the condition of the recovered Class Vehicle.

Please keep a copy of your completed Claim Form and all documentation you submit for your own records.

### 12.     When would I get my reimbursement?

In general, valid Qualifying Purchase Claims will be paid as they are approved, **after** the Effective Date. If there are no appeals, the Effective Date for the Settlement will be the first date after entry of the Court's order and judgment giving final approval to the Settlement. Common Fund Claims will be paid after all timely Common Fund Claims are received, processed, and, if applicable, appealed. **Payments under the Settlement will begin once the Settlement has been finally approved by the Court and any appeals from that decision are completed.** If there are objections or appeals, the date will be later. When the date becomes known it will be posted at XXXX.

The Hon. James V. Selna, U.S. District Court Judge, will hold a Final Approval Hearing at XXX a.m. on XXXX, in Courtroom 10C at the U.S. District Court for the Central District of California, 411 West 4th Street, Room 1053 Santa Ana, CA 92701-4516, to decide whether to approve the Settlement. The hearing may be rescheduled without further notice to you, so it is recommended you periodically check XXXX for updated information. If the Court approves the Settlement, there may be appeals afterwards. It is always uncertain whether these appeals can be resolved, and resolving them will take time, perhaps more than a year. Please be patient.

You may continue to check on the progress of the Settlement by visiting XXXX or calling XXXX.

### 13.     What if my Claim is found to be deficient?

If your Claim is found to be deficient and is rejected during the review process by the Settlement Administrator, you will be notified of the deficiency in writing. You will then have an opportunity to remedy the deficiency within 45 days of the written notice.

### 14.     The Settlement Administrator will then send you a final determination of how much Defendants will reimburse you for your Claim. If you believe the final determination for your Claim is incorrect, you must write to the Settlement Administrator by mail or email at XXXXX within 45 days from the date of your final determination email (or postmark date if it was mailed instead), stating that you request an appeal to the Settlement Administrator and providing your reasoning and supporting documentation. Class Counsel shall be able to spend reasonable time evaluating appeals and can be reimbursed for actual time spent reviewing those appeals, up to a total cap of $600,000, so long as Class Counsel submit documentation to Hyundai and/or Kia that shows the time spent and identifies the appeals reviewed. These fees shall not be paid from the Common Fund. Instead, Defendants shall be responsible for paying these fees separately and in addition to any fees and costs awarded to Class Counsel. What am I giving up to stay in the Settlement Class?

Unless you exclude yourself in writing as described in the answer to Question 15, you will be treated as part of the Settlement Class, and that means that if the Settlement is approved, **you cannot sue, continue to sue, or be part of any other lawsuit against Defendants,** or other related entities or individuals (listed in the Settlement Agreement, which you can view at XXXX) **about the legal issues in *this* case**, including but not limited to claims of false advertising, deceptive practices, fraud, breach of implied or express warranties, lemon laws, unjust enrichment, strict product liability, and negligence arising

from the theft prone related defects alleged in this case. You will not be able to sue even on existing claims that you may already hold against Defendants, or other related entities or individuals listed in the Settlement Agreement. It also means that all the Court's orders will apply to you and legally bind you.

However, nothing in this Settlement will prohibit you from pursuing claims for: (i) death; (ii) personal injury; (iii) any and all claims that relate to something other than a Class Vehicle and the alleged defect here, or (iv) subrogation, if you are a licensed insurer.

If you have any questions about the scope of the legal claims you give up by staying in the Settlement Class, you may view Section VI of the Settlement Agreement (available at XXXX) or you can contact the lawyers representing the Settlement Class (listed below) for free or speak with your own lawyer at your own expense.

| Class Counsel | | | |
|---|---|---|---|
| Steve W. Berman<br>Hagens Berman Sobol Shapiro LLP<br>1301 Second Avenue<br>Suite 2000<br>Seattle, WA 98101<br>steve@hbsslaw.com | Elizabeth A. Fegan<br>Fegan Scott LLC<br>150 S. Wacker Dr.<br>24th Floor<br>Chicago, IL 60606<br>beth@feganscott.com | Kenneth B. McClain<br>Humphrey Farrington McClain<br>221 W. Lexington Ave.<br>Suite 400<br>Independence, MO 64050<br>kbm@hfmlegal.com | Roland Tellis<br>Baron & Budd, P.C.<br>15910 Ventura Blvd.<br>Suite 1600<br>Encino, CA 91436<br>rtellis@baronbudd.com |

## EXCLUDING YOURSELF FROM THE SETTLEMENT

If you do not want the benefits or reimbursements provided in this Settlement, and you want to keep the right to sue or continue to sue Defendants or other related entities or individuals, on your own and at your own expense, about the legal issues in this case, including for any existing claims you may currently have, then you must take steps to get out of the Settlement Class. This is called excluding yourself—or is sometimes referred to as opting out of the Settlement Class.

### 15.    How do I get out of the Settlement?

To exclude yourself from the Settlement, you must submit an opt-out form online at XXXX, or by letter via U.S. mail (or an express mail carrier) saying that you want to "opt-out of" or "be excluded from" the Class Settlement in *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation,* No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.). Be sure to include: (i) your full name and current address; (ii) the model and model year, Vehicle Identification Number ("VIN") (located on a placard on the top of the dashboard visible through the driver's side corner of the windshield or in the driver's side door frame), date(s) of purchase or lease; and (iii) a clear statement saying you wish to be excluded from the Settlement and the Class. You must submit your exclusion request no later than XXXX. Failure to provide each required element may result in the rejection of your request for exclusion.

If you want to mail your exclusion request, you must send it to:

| Defense Counsel | |
|---|---|
| Shon Morgan<br>Quinn Emanuel Urquhart & Sullivan, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017 | Peter Brennan<br>Jenner & Block<br>353 N. Clark St.<br>Chicago, Illinois 60654-3456 |

*You cannot exclude yourself on the phone or by e-mail.* Please keep a copy or screenshot of any exclusion (or opting out) request for your records.

If you ask to be excluded, you cannot receive any benefits under this Settlement, and you cannot object to the Settlement. If you choose to be excluded or opt out, you will be excluded for all claims you have that are included in the Settlement. You will not be legally bound by anything that happens in this lawsuit. Depending on the laws in your state, you may be able to sue (or continue to sue) Defendants, or other related entities or individuals in the future about the legal issues in this case.

### 16.     If I do not exclude myself, can I sue for the same thing later?

No. Unless you exclude yourself (opting out), you give up the right to sue Defendants and other related entities or individuals for the claims that this Settlement resolves.

If you have a pending lawsuit against Defendants, or related entities, speak to your lawyer in that lawsuit immediately. You must exclude yourself from *this* Settlement Class if you want to continue your own lawsuit if that lawsuit concerns the same legal issues related to the Class Vehicles and the alleged defect in this case, even if it involves other causes of action, including but not limited to, false advertising, deceptive practices, fraud, breach of implied or express warranties, lemon laws, unjust enrichment, strict product liability, and negligence. Remember, the exclusion deadline is <mark>XXXX</mark>.

If you are a Class Member and you do nothing, you will remain a Class Member and all the Court's orders will apply to you. If you remain a Class Member, you will be eligible for the Settlement benefits described above as long as you timely submit a Claim and satisfy the conditions for receiving each benefit. If you remain a Class Member, you will not be able to sue Defendants over the issues in this lawsuit.

### 17.     If I exclude myself, can I get the benefits of this Settlement?

No. If you exclude yourself, do not send in a Claim Form to ask for any reimbursement. However, you may sue, continue to sue, or be part of a different lawsuit against Defendants and other related entities or individuals for the claims that this Settlement resolves.

## THE LAWYERS REPRESENTING YOU

### 18.     Do I have a lawyer in this case?

The Court has appointed Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Elizabeth A. Fegan of Fegan Scott LLC, Kenneth B. McClain of Humphrey Farrington McClain, and Roland Tellis of Baron & Budd, P.C. to represent you and other Class Members. Together, these lawyers are called "Class Counsel." You will not be charged for these lawyers. If you want to be represented by your own lawyer, you may hire one at your own cost. Please **DO NOT** send Claim Forms to Class Counsel or the Court. Claim Forms sent to Class Counsel or the Court will not be deemed valid submissions.

### 19.     How will the lawyers be paid, and will the Class Representatives receive service payments?

At a later date, Class Counsel will ask the Court to award attorneys' fees, expenses, and service payments to each of the named Class Representatives: Kari Eldridge, Brittany Kingsbury, Miyoshi Morrow, Stefani Poblete Taylor, Adam Lippert, Michael Kay, Mollie McGeehon, Herbert Taylor, Arlecia Brown, Edith Bucio, Matthew Pavonetti, Jason Reyes, Ann Brady, Mark Thompson, Renee Ledet, Ian Michael Scott, Irene Beach, Leilani Cabrera, John Dylan Burton, Eric Bain, Steven Hufford, Talysia Ruff, Tyler McGill, John McGraw, Cameron Morton, Lexii Cummings, Matthew Jacobsen, Dennette Ray, Brian Helm, Adriana Pilant, Luis Enrique Vargas Rodriguez, David Lucas, Leanna Adams, Iona Barnes, Craig Granville, Jisun Kang, Michelle Pollack, Rachel Perry, Claire Roberts, Mary Kathryn Morrison, Patricia Sumpterbynum, Kristina McKnight, Trina Johnson, Marcella Blum, Matthew Butler, Kayla Collyer, David Larsen, Anthony Loburgio, Katelyn McNerney, Eryca Smith, Dave Sessions, Tajia Turner, Laura Roberts, Hubert Matthews, Rita Day, Kasey Weinfurtner, Charles Hession, Molly O'Connor, Rejene Jackson, Tiffany Devonish, Darlene Bennor, Jacquella Russell, Lauren Hernandez, John Pope, Pauline Ragsdale, Kathy Hughes, Rosemary Winner Johnson, Maggie Ketchie, Peggy Ciafullo, Amber Hall, Michael Ryle, James DePorche, Ronald DeSarro, Teresa Harris, Cameron Cunningham, Shatoya McKinney, Gerald Smith, Lauren Kawetschansky, Shana Eberhardt, Michelle Wagner, Adrian Matthews, Carolyn Catlos, Albert Lui, Nadine Quate Francis, and Michael Scalise. It will be up to the Court to decide whether Defendants will be ordered to pay any of those fees, expenses, and service payments. The Court may award less than the amounts requested by Class Counsel. Any attorneys' fees, costs, and Class Representative service payments awarded by the Court will be paid from the Common Fund. Class Counsel will not seek more than 25 percent of the Common Fund in fees plus their actual out-of-pocket expenses and will not seek a service award exceeding $1,000 to each Class Representative. Plaintiffs will file their motion for attorneys' fees, expenses, and service awards by <mark>XXXX</mark>. You may continue to check on the progress of Plaintiffs' request for attorneys' fees, expenses, and service awards by visiting <mark>XXXX</mark>.

Defendants will pay the costs to administer the Settlement. The payment of Settlement administration costs will not come out of the Common Fund for payments to Class Members.

# OBJECTING TO THE SETTLEMENT

You can tell the Court that you do not agree with all or part of the Settlement.

### 20.    How do I tell the Court if I do not like the Settlement?

If you are a member of the Settlement Class and do not like the Settlement, you can object to all or part of the Settlement. You can give reasons you think the Court should not approve it. The Court will consider your views.

To object, you must mail a letter saying that you object to each of the addresses below:

| Class Counsel | | | |
|---|---|---|---|
| Steve W. Berman Hagens Berman Sobol Shapiro LLP 1301 Second Ave. Suite 2000 Seattle, WA 98101 steve@hbsslaw.com | Elizabeth A. Fegan Fegan Scott LLC 150 S. Wacker Dr. 24th Floor Chicago, IL 60606 beth@feganscott.com | Kenneth B. McClain Humphrey Farrington McClain 221 W. Lexington Ave. Suite 400 Independence, MO 64050 kbm@hfmlegal.com | Roland Tellis Baron & Budd, P.C. 15910 Ventura Blvd. Suite 1600 Encino, CA 91436 rtellis@baronbudd.com |
| Defense Counsel | | | |
| Shon Morgan Quinn Emanuel Urquhart & Sullivan, LLP 865 S. Figueroa St., 10th Floor Los Angeles, California 90017 | | Peter Brennan Jenner & Block 353 N. Clark St. Chicago, Illinois 60654-3456 | |

Your objection letter must include:

1)    The case name and number, *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation,* No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.);

2)    Your full name, current address, and current telephone number;

3)    The model year and VIN of your Class Vehicle(s);

4)    A statement of your objection(s), including all factual and legal grounds for the position;

5)    Copies of any documents you wish to submit in support of your objection(s);

6)    The name and address of any lawyer(s) representing you in making the objection or who may be entitled to compensation in connection with the objection;

7)    A statement of whether you intend to appear at the Final Approval Hearing, either with or without counsel;

8)    The identity of all counsel (if any) who will appear on your behalf objecting at the Final Approval Hearing and all persons (if any) who will be called to testify in support of your objection;

9)    A list of any other objections submitted by you, or your counsel, to any class action settlements submitted in any court in the United States in the previous five years, but if you or your counsel have not made any such prior objection, you must affirmatively state this; and

10)    Your signature and the signature of any attorney representing you in connection with the objection, and the date of the objection.

Submitting an objection allows Class Counsel or counsel for Defendants to notice your deposition and to seek any documentary evidence or other tangible things that are relevant to your objection. Failure to make yourself available for such a deposition or comply with expedited discovery requests may result in the Court striking your objection or denying you the opportunity to be heard. The Court may require you or your counsel to pay the costs of any such discovery should the Court determine the objection is frivolous or made for improper purpose.

Objections must be sent by first-class mail to each of the above addresses and postmarked no later than **XXXX.** Objections submitted after this date will not be considered.

If you do not state your intention to appear in accordance with the applicable deadlines and specifications, or you do not submit an objection in accordance with the applicable deadlines and specifications, you will waive all objections, you may be barred from speaking or otherwise presenting any views at the Final Approval Hearing, and you will be foreclosed from seeking any review of the Settlement or the terms of the Settlement Agreement by any means, including but not limited to an appeal.

### 21.    What is the difference between objecting and excluding?

Objecting is simply telling the Court that you do not like something about the Settlement. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you do not want to be part of the Settlement Class and the Settlement. If you exclude yourself, you have no basis to object because the Settlement no longer affects you.

## THE COURT'S FINAL APPROVAL HEARING

The Court will hold a hearing to decide whether to approve the Settlement. You may attend and you may ask to speak, subject to the requirements above, but you do not have to.

### 22.    When and where will the Court decide whether to approve the Settlement?

The Court will hold a Final Approval Hearing at **XXX a.m.** on **XXXX**, in Courtroom 10C at the U.S. District Court for the Central District of California, 411 West 4th Street, Room 1053 Santa Ana, CA 92701-4516, to decide whether to approve the Settlement. At this hearing the Court will consider whether the Settlement is fair, reasonable, and adequate. If there are objections, the Court will consider them. The Court will listen to people who have asked to speak at the hearing. The Court may also decide how much to pay Class Counsel and whether to approve the Class Representatives' service awards. After the hearing, the Court will decide whether to finally approve the Settlement. We do not know how long these decisions will take.

The hearing may be rescheduled without further notice to you, so it is recommended you periodically check visiting **XXXX** for updated information.

### 23.    Do I have to come to the Final Approval Hearing?

No. Class Counsel will answer any questions Judge Selna may have. However, you are welcome to attend the hearing at your own expense. If you send an objection, you do not have to come to Court to talk about it. So long as you mailed your written objection on time, the Court will consider it. You may also attend or pay your own lawyer to attend, but it is not necessary. Class Members do not need to appear at the hearing or take any other action to indicate their approval.

### 24.    May I speak at the Final Approval Hearing?

You may ask the Court's permission to speak at the Final Approval Hearing. To do so, you must send a letter saying that it is your "Notice of Intention to Appear in *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation,* No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.)" or state in your objections that you intend to appear at the hearing. Be sure to include your name, address, telephone number, the model year and VIN for your Class Vehicle(s), and signature, as well as the identities of any attorneys who will represent you. Your Notice of Intention to Appear must be postmarked no later than **XXXX**, and be sent to each Defense Counsel and Class Counsel, at the following addresses:

| Defense Counsel | |
|---|---|
| Shon Morgan | Peter Brennan |
| Quinn Emanuel Urquhart & Sullivan, LLP | Jenner & Block |
| 865 S. Figueroa St., 10th Floor | 353 N. Clark St. |
| Los Angeles, California 90017 | Chicago, Illinois 60654-3456 |

| Class Counsel | | | |
|---|---|---|---|
| Steve W. Berman<br>Hagens Berman Sobol<br>Shapiro LLP<br>1301 Second Ave.<br>Suite 2000<br>Seattle, WA 98101<br>steve@hbsslaw.com | Elizabeth A. Fegan<br>Fegan Scott LLC<br>150 S. Wacker Dr.<br>24th Floor<br>Chicago, IL 60606<br>beth@feganscott.com | Kenneth B. McClain<br>Humphrey Farrington<br>McClain<br>221 W. Lexington Ave.<br>Suite 400<br>Independence, MO 64050<br>kbm@hfmlegal.com | Roland Tellis<br>Baron & Budd, P.C.<br>15910 Ventura Blvd.<br>Suite 1600<br>Encino, CA 91436<br>rtellis@baronbudd.com |

## IF YOU DO NOTHING

### 25.     What happens if I do nothing at all?

If you do nothing, you will not receive any reimbursements or compensation from this Settlement. However, if your Class Vehicle is eligible, you will receive the Software Upgrade if you bring your Class Vehicle into an authorized Hyundai or Kia dealership (if you still own or lease your Class Vehicle). But unless you exclude yourself, you will not be able to start a lawsuit, continue a lawsuit, or be part of any other lawsuit against Defendants or other related entities or individuals about the legal issues in this case, ever again.

This Settlement will not affect your right to sue Defendants for any claims not resolved by the Settlement, regardless of whether you exclude yourself from the Settlement.

## GETTING MORE INFORMATION

### 26.     Are there more details about the Settlement?

This notice summarizes the proposed Settlement. More details are in the Settlement Agreement, which you can view at XXXX.

Neither Defendants nor Class Counsel make any representation regarding the tax effects, if any, of receiving any benefits under this Settlement. Consult your tax adviser for any tax questions you may have.

### 27.     How do I get more information?

You can call XXXX toll free or visit XXXX, where you will find information and documents about the Settlement, a Claim Form, plus other information. You may also contact Class Counsel listed in response to Question 14.

All papers filed in this Action are also available for review via the Public Access to Court Electronic Resources System (PACER), available online at http://www.pacer.gov.

**Other than a request to review the Court's files at the Clerk of the Court's Office, please do not contact the Clerk of the Court or the Judge with questions.**

# Exhibit B

Claims can be submitted electronically at XXXXX

**Hyundai/Kia Theft Settlement Administrator**
[Settlement Administrator's address]

# HYUNDAI/KIA CLAIM FORM

### Five Steps to Make a Claim

*In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation,*
*No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.)*

For each Class Vehicle, you can submit more than one claim using one or more claim forms. **THE DEADLINE TO SUBMIT A CLAIM DEPENDS ON THE TYPE OF CLAIM (as specified below).**

**[1] CONTACT INFORMATION: Please provide the information in the spaces below:**

First Name:               MI:    Last Name:

Business Name (if applicable):

Address 1:

Address 2:

City:                           State:

Zip Code:

**ADDITIONAL CONTACT INFORMATION** *(Optional):* **Please provide your email address and phone number:**

Email:

Phone:

**If you choose to provide your email address, the Settlement Administrator may contact you about the Settlement by email. If not, the Settlement Administrator will contact you about the Settlement at the postal address above.**

**[2] VEHICLE INFORMATION: Provide your Vehicle Identification Number ("VIN") below.**

The VIN is located on a small placard on the top of the dashboard and is visible through the driver's side corner of the windshield or on a decal inside the driver side door jamb. It also appears on your vehicle title, registration card, and probably appears on your vehicle insurance card. Your VIN should have 17 characters, a combination of both letters and numbers.

VIN:

*For more information, please view the Class Notice, visit XXXX,*
*or call the Settlement Administrator's toll-free number at XXXX.*
Page 1 of 10

In the boxes below, indicate whether your vehicle had Qualifying Theft or a Qualifying Theft Attempt and the date of this incident. To obtain certain Settlement benefits, you must have experienced either a <u>Qualifying Theft</u> or a <u>Qualifying Theft Attempt</u>. A "Qualifying Theft" means the theft of a Class Vehicle through forcible entry and breach of the ignition system. A "Qualifying Theft Attempt" means the attempted theft of a Class Vehicle through forcible entry and either an attempted dismantling of the steering column or an attempted breach of the ignition system. **If you experienced more than one Qualifying Theft or Qualifying Theft Attempt, you must complete one Claim Form per incident.** Even if you did not experience a Qualifying Theft or a Qualifying Theft Attempt, you may still be eligible for some Settlement benefits, so please review all Reimbursement Types below. *You can also visit XXX to learn more.*

Check if you experienced a:        ☐ Qualifying Theft        OR        ☐ Qualifying Theft Attempt

Check if you did <u>NOT</u> experience a Qualifying Theft or Qualifying Theft Attempt:        ☐ NONE

Date the Qualifying Theft or Qualifying Theft Attempt Occurred:

| | - | | - | |
|---|---|---|---|---|
| MM | | DD | | YYYY |

Last known mileage on Class Vehicle odometer before the Qualifying Theft or Theft Attempt: _____ miles

Options, if any, installed on Class Vehicle after it was manufactured: _____

**[3]  <u>REIMBURSEMENT TYPES</u>: Indicate the nature of the reimbursement(s) you are claiming, the total amount of reimbursement you are requesting, and enclose all required documentation.** *NOTE: More than one type of reimbursement may apply to you.*

☐        **I AM REQUESTING REIMBURSEMENT FOR THE <u>TOTAL LOSS OF MY CLASS VEHICLE</u> DUE TO A QUALIFYING THEFT OR QUALIFYING THEFT ATTEMPT.** "Total Loss" means any one of the following situations resulting from the Qualifying Theft or Qualifying Theft Attempt: (i) the Class Vehicle has been wrecked, destroyed, or damaged so badly as a result of the Qualifying Theft or Qualifying Theft Attempt (excluding pre-existing damage) that it is objectively uneconomical to repair the Class Vehicle (i.e., repair costs would be at least 70% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition), as established by objectively reliable documentation, such as an insurer notification, auto service station, a verifiable third-party estimate, repair receipts, or comparable documentation showing the condition of the Class Vehicle following the Qualifying Theft or Qualifying Theft Attempt.  For documents to be objectively reliable, they must be issued by a verified business entity with a business address, a working phone number, any required license, and online reviews (all subject to verification); (ii) your sale or donation of the Class Vehicle for less than 30% of its fair market value as measured by the Black Book value for a comparable private party vehicle in average condition; (iii) the Class Vehicle was declared a Total Loss by an insurer, but you still were not made whole by the insurance payments, as measured by the Black Book value (private party/average condition) minus total insurance settlement/payment received; or (iv) it has been at least three months following the Qualifying Theft and the Class Vehicle has not been recovered. In the event a Class Vehicle is recovered following the submission of this claim form but before payment is issued, you must notify the Settlement Administrator of the recovery of the Class Vehicle and the Class Vehicle's condition at the time of recovery. *Note: Reimbursement under this category is capped at $6,125 per Class Vehicle, regardless of whether your out-of-pocket losses exceed this.*

*Claims for this benefit must be submitted no later than XXXX.*

**[A]** Provide the total amount for which you are requesting reimbursement:

$ | | | | | | . | | |

**[B]  Required Documentation:**

1.  **<u>Proof of Ownership</u>**: A copy of any document(s) issued by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that you owned or leased a Class Vehicle, identified by VIN (such as owner registration cards, vehicle titles, bank notes identifying the vehicle, and insurance cards).

2.  **<u>Proof of Qualifying Theft or Qualifying Theft Attempt</u>:** A copy of any original document(s) generated at or around the time of the Qualifying Theft or Qualifying Theft Attempt that specifies the date of the Qualifying Theft or Qualifying Theft Attempt and identifies the Class Vehicle by VIN or make and model. The documents establishing

*For more information, please view the Class Notice, visit XXXX,*
*or call the Settlement Administrator's toll-free number at XXXX.*
Page 2 of 10

a Qualifying Theft or Qualifying Theft Attempt may include a police report (which can be filed at any time prior to submitting a claim) and, if the Class Vehicle is insured, Insurance Records, and/or similar third-party report with comparable trustworthiness, reliability and probative/evidentiary value showing comparable information regarding the circumstances of the Qualifying Theft or Qualifying Theft Attempt and the resulting losses.

3. **Proof of Total Loss:** Proof of "Total Loss" varies depending on the loss identified above, as follows: (a) objectively reliable documentation, such as an insurer notification, auto service station, a verifiable third-party estimate, repair receipts, or comparable documentation showing the condition of the Class Vehicle following the Qualifying Theft or Qualifying Theft Attempt. For documents to be objectively reliable, they must be issued by a verified business entity with a business address, a working phone number, and online reviews (all subject to verification); (b) a tax-deductible receipt is required if the Class Vehicle was donated as is proof of sale and payment received (such as DMV vehicle transfer form) if the Class Vehicle was sold; (c) insurance documentation showing the amount claimed and recovered from an insurer; or (d) objectively reliable documentation that demonstrates a Qualifying Theft and a sworn statement establishing the Class Vehicle has not been recovered. In the event a Class Vehicle is recovered following the submission of a claim but before payment is issued from the Common Fund, you must notify the Settlement Administrator of the recovery and the condition of the recovered Class Vehicle.

4. **Prior Reimbursement:** If you previously received **any** payment or reimbursement in connection with the Qualifying Theft or Qualifying Theft Attempt, you must provide documentation of this with your Claim Form (for example, Insurance Records or prior campaign reimbursement and/or customer satisfaction payments). "Insurance Records" refers to documents issued by the car insurance company reflecting that coverage was denied or a final insurance settlement that shows how much the insurance paid minus the deductible.

***If you are requesting reimbursement for more than one Qualifying Theft or Qualifying Theft Attempt, you must complete a separate claim form for each incident and provide the information requested.***

☐   **I AM REQUESTING REIMBURSEMENT FOR <u>DAMAGE TO MY CLASS VEHICLE</u> AND/OR <u>DAMAGED OR LOST PERSONAL PROPERTY</u> DUE TO A QUALIFYING THEFT OR QUALIFYING THEFT ATTEMPT.** *Note: Reimbursement under this category is capped at $3,375 per occurrence, regardless of whether your out-of-pocket losses exceed this.*

*Claims for this benefit must be submitted no later than **XXXX**.*

**[A]** Provide the total amount for which you are requesting reimbursement:

$ ☐☐☐☐☐ . ☐☐

**[B] Required Documentation:**

1. **Proof of Ownership:** A copy of any document(s) issued by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that you owned or leased a Class Vehicle, identified by VIN (such as owner registration cards, vehicle titles, bank notes identifying the vehicle, and insurance cards).

2. **Proof of Qualifying Theft or Qualifying Theft Attempt:** A copy of any original document(s) generated at or around the time of the Qualifying Theft or Qualifying Theft Attempt that specifies the date of the Qualifying Theft or Qualifying Theft Attempt and identifies the Class Vehicle by VIN or make and model. The documents establishing a Qualifying Theft or Qualifying Theft Attempt may include a police report and, if the Class Vehicle is insured, Insurance Records, and/or similar third-party report with comparable trustworthiness, reliability and probative/evidentiary value showing comparable information regarding the circumstances of the Qualifying Theft or Qualifying Theft Attempt and the resulting losses.

3. **Proof of Qualifying Loss:** "Qualifying Loss" refers to an out-of-pocket loss or uncompensated loss resulting from the Qualifying Theft or Qualifying Theft Attempt of a Class Vehicle, provided such loss is reimbursable under the Common Fund offered by this Settlement. In addition to Proof of Ownership, "Proof of a Qualifying Loss" requires documentation containing information necessary for the Claims Administrator to verify the loss. Such documentation can include, but is not limited to, a police report, insurance records, dealership records, repair records, receipts, cleared checks, credit card statements, bank records, registration records, employment records, or such other documents with comparable evidentiary value.

*For more information, please view the Class Notice, visit **XXXX**,*
*or call the Settlement Administrator's toll-free number at **XXXX**.*
Page 3 of 10

4. **Prior Reimbursement:** If you previously received **any** payment or reimbursement in connection with the Qualifying Theft or Qualifying Theft Attempt, you must provide documentation of this with your Claim Form (for example, Insurance Records or prior campaign reimbursement and/or customer satisfaction payments). "Insurance Records" refers to documents issued by the car insurance company reflecting that coverage was denied or a final insurance settlement that shows how much the insurance paid minus the deductible.

*If you are requesting reimbursement for more than one Qualifying Theft or Qualifying Theft Attempt, you must complete a separate claim form for each incident and provide the information requested above.*

☐ **I AM REQUESTING REIMBURSEMENT FOR AN <u>INSURANCE DEDUCTIBLE PAID</u> AND/OR AN <u>INCREASED INSURANCE PREMIUM</u> DUE TO A QUALIFYING THEFT OR QUALIFYING THEFT ATTEMPT.** *Note: Reimbursement under this category is capped at $375 per theft or attempted theft occurrence, regardless of whether your out-of-pocket losses exceed this.*

Claims for this benefit must be submitted no later than XXXX.

[A] Provide the total amount for which you are requesting reimbursement:

$ ☐☐☐☐☐ . ☐☐

[B] **Required Documentation:**

1. **Proof of Ownership**: A copy of any document(s) issued by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that you owned or leased a Class Vehicle, identified by VIN (such as owner registration cards, vehicle titles, bank notes identifying the vehicle, and insurance cards).

2. **Proof of Qualifying Theft or Qualifying Theft Attempt:** A copy of any original document(s) generated at or around the time of the Qualifying Theft or Qualifying Theft Attempt that specifies the date of the Qualifying Theft or Qualifying Theft Attempt and identifies the Class Vehicle by VIN or make and model. The documents establishing a Qualifying Theft or Qualifying Theft Attempt may include a police report and, if the Class Vehicle is insured, Insurance Records, and/or similar third-party report with comparable trustworthiness, reliability and probative/evidentiary value showing comparable information regarding the circumstances of the Qualifying Theft or Qualifying Theft Attempt and the resulting losses.

3. **Proof of Qualifying Loss:** "Qualifying Loss" refers to an out-of-pocket loss or uncompensated loss resulting from the Qualifying Theft or Qualifying Theft Attempt of a Class Vehicle, provided such loss is reimbursable under the Common Fund offered by this Settlement. In addition to Proof of Ownership, "Proof of a Qualifying Loss" requires documentation containing information necessary for the Claims Administrator to verify the loss. Such documentation can include, but is not limited to, a police report, insurance records, dealership records, repair records, receipts, cleared checks, credit card statements, bank records, registration records, employment records, or such other documents with comparable evidentiary value.

4. **Proof of Payment:** "Proof of Payment" refers to the original or copy of any document(s) generated at or around the time expenses were incurred showing that the Claimant paid for the expenses incurred (e.g., a Qualifying Purchase, towing expenses, transportation expenses, etc.) for which they may be entitled to reimbursement under this Settlement Agreement. "Proof of Payment" must reflect the method of payment the Claimant used, the cost of the expense, and the name of the entity charging the Claimant for the expense. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in cash shall include a valid corresponding final invoice or repair order, proof of withdrawal of cash from a bank or credit union, along with an attestation under penalty of perjury by the Claimant that they do not have a cash payment receipt from the person or entity that the Claimant paid showing their payment and as to the specific dollar amount they paid in cash.

5. **Prior Reimbursement:** If you previously received **any** payment or reimbursement in connection with the Qualifying Theft or Qualifying Theft Attempt, you must provide documentation of this with your Claim Form (for example, Insurance Records or prior campaign reimbursement and/or customer satisfaction payments).

*For more information, please view the Class Notice, visit XXXX,
or call the Settlement Administrator's toll-free number at XXXX.*
Page 4 of 10

Claims can be submitted electronically at ==XXXXX==

"Insurance Records" refers to documents issued by the car insurance company reflecting that coverage was denied or a final insurance settlement that shows how much the insurance paid minus the deductible.

*If you are requesting reimbursement for more than one paid insurance deductible or increased insurance premium due to Qualifying Theft or Qualifying Theft Attempt, you must complete a separate claim form for each incident and provide the information requested above.*

☐   **I AM REQUESTING REIMBURSEMENT FOR <u>OTHER OUT-OF-POCKET EXPENSES</u> DUE TO A QUALIFYING THEFT OR QUALIFYING THEFT ATTEMPT. This category includes the following losses:**

- Car rental, taxi, ride share, or public transportation expenses not otherwise covered by insurance due to a Qualifying Theft or Qualifying Theft Attempt;

- Towing costs needed to transport the stolen vehicle to or from a police or city storage facility, repair facility or other location necessary to inspect, repair, sell, or dispose of a stolen vehicle, including a junkyard or storage facility due to a Qualifying Theft or Qualifying Theft Attempt;

- Licensing fees, sales tax paid, registration fees and other expenses directly associated with the purchase of new/replacement vehicle if the stolen vehicle was declared a total loss due to a Qualifying Theft or Qualifying Theft Attempt; and

- Costs associated with speeding tickets, red light tickets, or other penalties or fines incurred arising from a stolen vehicle due to a Qualifying Theft or Qualifying Theft Attempt.

*Note: Reimbursement under this category is capped at $250 total per theft or attempted theft occurrence, regardless of whether your out-of-pocket losses exceed this.*

*Claims for this benefit must be submitted no later than ==XXXX==.*

**[A]**  Provide the total amount for which you are requesting reimbursement:

$ [ ][ ][ ][ ][ ] . [ ][ ]

**[B]  Required Documentation:**

1. **<u>Proof of Ownership</u>**: A copy of any document(s) issued by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that you owned or a Class Vehicle, identified by VIN (such as owner registration cards, vehicle titles, bank notes identifying the vehicle, and insurance cards).

2. **<u>Proof of Qualifying Theft or Qualifying Theft Attempt</u>:** A copy of any original document(s) generated at or around the time of the Qualifying Theft or Qualifying Theft Attempt that specifies the date of the Qualifying Theft or Qualifying Theft Attempt and identifies the Class Vehicle by VIN or make and model. The documents establishing a Qualifying Theft or Qualifying Theft Attempt may include a police report and, if the Class Vehicle is insured, Insurance Records, and/or similar third-party report with comparable trustworthiness, reliability and probative/evidentiary value showing comparable information regarding the circumstances of the Qualifying Theft or Qualifying Theft Attempt and the resulting losses.

3. **<u>Proof of Qualifying Loss</u>**: "Qualifying Loss" refers to an out-of-pocket loss or uncompensated loss resulting from the Qualifying Theft or Qualifying Theft Attempt of a Class Vehicle, provided such loss is reimbursable under the Common Fund offered by this Settlement. In addition to Proof of Ownership, "Proof of a Qualifying Loss" requires documentation containing information necessary to verify the loss for the Claims Administrator to verify the loss. Such documentation can include, but is not limited to, a police report, insurance records, dealership records, repair records, receipts, cleared checks, credit card statements, bank records, registration records, employment records, or such other documents with comparable evidentiary value.

4. **<u>Proof of Payment</u>:** "Proof of Payment" refers to the original or copy of any document(s) generated at or around the time expenses were incurred showing that the Claimant paid for the expenses incurred (e.g., a Qualifying Purchase, towing expenses, transportation expenses, etc.) for which they may be entitled to reimbursement under this Settlement Agreement. "Proof of Payment" must reflect the method of payment the Claimant used, the cost of the expense, and the name of the entity charging the Claimant for the expense. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related

*For more information, please view the Class Notice, visit ==XXXX==,*
*or call the Settlement Administrator's toll-free number at ==XXXX==.*
Page 5 of 10

Claims can be submitted electronically at ==XXXXX==

expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in cash shall include a valid corresponding final invoice or repair order, proof of withdrawal of cash from a bank or credit union, along with an attestation under penalty of perjury by the Claimant that they do not have a cash payment receipt from the person or entity that the Claimant paid showing their payment and as to the specific dollar amount they paid in cash.

5. **Prior Reimbursement:** If you previously received **any** payment or reimbursement in connection with the Qualifying Theft or Qualifying Theft Attempt, you must provide documentation of this with your Claim Form (for example, Insurance Records or prior campaign reimbursement and/or customer satisfaction payments). "Insurance Records" refers to documents issued by the car insurance company reflecting that coverage was denied or a final insurance settlement that shows how much the insurance paid minus the deductible.

6. **Proof of Total Loss (only applicable if you are making a claim for licensing fees, sales tax paid, registration fees and other expenses directly associated with the purchase of new/replacement vehicle if the stolen vehicle was declared a total loss due to a Qualifying Theft or Qualifying Theft Attempt):** Proof of "Total Loss" varies depending on the loss identified above, as follows: (a) objectively reliable documentation, such as an insurer notification, auto service station, a verifiable third-party estimate, repair receipts, or comparable documentation showing the condition of the Class Vehicle following the Qualifying Theft or Qualifying Theft Attempt. For documents to be objectively reliable, they must be issued by a verified business entity with a business address, a working phone number, and online reviews (all subject to verification); (b) a tax-deductible receipt is required if the Class Vehicle was donated as is proof of sale and payment received (such as DMV vehicle transfer form) if the Class Vehicle was sold; (c) insurance documentation showing the amount claimed and recovered from an insurer; or (d) objectively reliable documentation that demonstrates a Qualifying Theft and a sworn statement establishing the Class Vehicle has not been recovered. In the event a Class Vehicle is recovered following the submission of a claim but before payment is issued from the Common Fund, you must notify the Settlement Administrator of the recovery and the condition of the recovered Class Vehicle.

*If you are requesting reimbursement for expenses that relate to more than one Qualifying Theft or Qualifying Theft Attempt, you must complete a separate claim form for each incident and provide the information requested above.*

☐   **I OWN A CLASS VEHICLE ELIGIBLE FOR A SOFTWARE UPGRADE AND I AM REQUESTING REIMBURSEMENT FOR <u>LOST INCOME AND/OR CHILDCARE COSTS IN OBTAINING THE SOFTWARE UPGRADE</u> FOR MY CLASS VEHICLE.** *Note: This Settlement benefit is only available if your Class Vehicle is **eligible** for the Software Upgrade. Reimbursement under this category is capped at $250 per Class Vehicle, regardless of whether your out-of-pocket losses exceed this.*

Claims for this benefit must be submitted no later than ==XXXX.==

**[A]** Provide the total amount for which you are requesting reimbursement:

$ ⬚⬚⬚⬚⬚ . ⬚⬚

Date of Software Upgrade
Installation:  ⬚⬚ - ⬚⬚ - ⬚⬚⬚⬚

**[B]  Required Documentation:**

1. **Proof of Ownership**: A copy of any document(s) issued by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that you owned or leased a Class Vehicle, identified by VIN (such as owner registration cards, vehicle titles, bank notes identifying the vehicle, and insurance cards).

2. **Proof of Qualifying Loss:** "Qualifying Loss" refers to an out-of-pocket loss or uncompensated loss resulting from the Qualifying Theft or Qualifying Theft Attempt of a Class Vehicle, provided such loss is reimbursable under the Common Fund offered by this Settlement. In addition to Proof of Ownership, "Proof of a Qualifying Loss" requires documentation containing information necessary for the Claims Administrator to verify the loss.   Such

*For more information, please view the Class Notice, visit ==XXXX,==*
*or call the Settlement Administrator's toll-free number at ==XXXX.==*

documentation can include, but is not limited to, a police report, insurance records, dealership records, repair records, receipts, cleared checks, credit card statements, bank records, registration records, employment records, or such other documents with comparable evidentiary value.

3. **Prior Reimbursement**: If you previously received any payment or reimbursement in connection with the Qualifying Theft or Qualifying Theft Attempt, you must provide documentation of this with your Claim Form (for example, Insurance Records or prior campaign reimbursement and/or customer satisfaction payments). "Insurance Records" refers to documents issued by the car insurance company reflecting that coverage was denied or a final insurance settlement that shows how much the insurance paid minus the deductible.

4. **Proof of Payment (only applicable if you are making a claim for childcare costs in obtaining the Software Upgrade)**: "Proof of Payment" refers to the original or copy of any document(s) generated at or around the time expenses were incurred showing that the Claimant paid for the expenses incurred (e.g., daycare expenses) for which they may be entitled to reimbursement under this Settlement Agreement. "Proof of Payment" must reflect the method of payment the Claimant used, the cost of the expense, and the name of the entity charging the Claimant for the expense. "Proof of Payment" for an expense paid by credit card are final invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in cash shall include a valid corresponding final invoice or order, proof of withdrawal of cash from a bank or credit union, along with an attestation under penalty of perjury by the Claimant that they do not have a cash payment receipt from the person or entity that the Claimant paid showing their payment and as to the specific dollar amount they paid in cash.

☐ **I OWN A CLASS VEHICLE ELIGIBLE FOR A SOFTWARE UPGRADE AND I AM REQUESTING REIMBURSEMENT FOR A KEY FOB PURCHASE I MADE TO RECEIVE THE SOFTWARE UPGRADE.** *Note: Reimbursement under this category is capped at $350 per fob, with a limit of two per Class Vehicle, regardless of whether your out-of-pocket losses exceed this.*

*Claims for this benefit must be submitted no later than XXXX.*

**[A]** Provide the total amount for which you are requesting reimbursement:

$ ☐☐☐☐☐ . ☐☐

Date of purchase of key fob: ☐☐ - ☐☐ - ☐☐☐☐
MM          DD          YYYY

**[B] Required Documentation:**

1. **Proof of Ownership**: A copy of any document(s) issued by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that you owned or leased a Class Vehicle, identified by VIN (such as owner registration cards, vehicle titles, bank notes identifying the vehicle, and insurance cards).

2. **Proof of Payment for Key Fob**: "Proof of Payment" refers to the original or copy of any document(s) generated at or around the time expenses were incurred showing that the Claimant paid for the expenses incurred for which they may be entitled to reimbursement under this Settlement Agreement. "Proof of Payment" must reflect the method of payment the Claimant used, the cost of the expense, and the name of the Hyundai or Kia dealership charging the Claimant for the expense. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in cash shall include a valid corresponding final invoice or repair order, proof of withdrawal of cash from a bank or a credit union, along with an attestation under penalty of perjury by the Claimant that they do not have a cash payment receipt from the person or entity that the Claimant paid showing their payment and as to the specific dollar amount they paid in cash.

*For more information, please view the Class Notice, visit XXXX, or call the Settlement Administrator's toll-free number at XXXX.*

3. **Prior Reimbursement:** If you previously received **any** payment or reimbursement in connection with the Qualifying Theft or Qualifying Theft Attempt, you must provide documentation of this with your Claim Form (for example, Insurance Records or prior campaign reimbursement and/or customer satisfaction payments). "Insurance Records" refers to documents issued by the car insurance company reflecting that coverage was denied or a final insurance settlement that shows how much the insurance paid minus the deductible.

☐ **I OWN A CLASS VEHICLE ELIGIBLE FOR THE SOFTWARE UPGRADE AND I AM REQUESTING REIMBURSEMENT FOR THE <u>QUALIFYING PURCHASE OF A STEERING WHEEL LOCK</u> FOR MY CLASS VEHICLE, WHICH I MADE AT LEAST THIRTY DAYS BEFORE THE SOFTWARE UPGRADE WAS AVAILABLE FOR MY CLASS VEHICLE.** *Note: Reimbursement under this category is capped at $50 per Class Vehicle, regardless of whether your out-of-pocket losses exceed this.*

*Claims for this benefit must be submitted no later than XXXX.*

[A] Provide the total amount for which you are requesting reimbursement:

$ ☐☐☐☐☐ . ☐☐

Date of purchase of steering wheel lock:

☐☐ - ☐☐ - ☐☐☐☐
MM       DD       YYYY

[B] Had you already received a steering wheel lock provided by Hyundai or Kia (for example, shipped directly from Hyundai or Kia, from a dealership, or through a law enforcement department) when you made the purchase? Check the appropriate box below:

☐ Yes    OR    ☐ No

If you answered "yes" above, list the name of the dealership or law enforcement department that provided the

steering wheel lock: _____

[C] **Required Documentation:**

1. **Proof of Ownership:** A copy of any document(s) issued by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that you owned or leased a Class Vehicle, identified by VIN (such as owner registration cards, vehicle titles, bank notes identifying the vehicle, and insurance cards).

2. **Proof of Payment for Qualifying Purchase**: "Proof of Payment" refers to the original or copy of any document(s) generated at or around the time expenses were incurred showing that the Claimant paid for the expenses incurred (e.g., a Qualifying Purchase, towing expenses, transportation expenses, etc.) for which they may be entitled to reimbursement under this Settlement Agreement. "Proof of Payment" must reflect the method of payment the Claimant used, the cost of the expense, and the name of the entity charging the Claimant for the expense. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in cash shall include a valid corresponding final invoice or repair order, proof of withdrawal of cash from a bank or credit union, along with an attestation under penalty of perjury by the Claimant that they do not have a cash payment receipt from the person or entity that the Claimant paid showing their payment and as to the specific dollar amount they paid in cash.

3. **Prior Reimbursement:** If you previously received **any** payment or reimbursement in connection with the Qualifying Theft or Qualifying Theft Attempt, you must provide documentation of this with your Claim Form (for example, Insurance Records or prior campaign reimbursement and/or customer satisfaction payments).

*For more information, please view the Class Notice, visit XXXX,*
*or call the Settlement Administrator's toll-free number at XXXX.*
Page 8 of 10

Claims can be submitted electronically at XXXXX

"Insurance Records" refers to documents issued by the car insurance company reflecting that coverage was denied or a final insurance settlement that shows how much the insurance paid minus the deductible.

☐ **I OWN A CLASS VEHICLE NOT ELIGIBLE FOR THE SOFTWARE UPGRADE AND I AM REQUESTING REIMBURSEMENT FOR THE <u>QUALIFYING PURCHASE OF A STEERING WHEEL LOCK AND/OR A GLASS BREAKAGE ALARM OR SIMILAR ANTI-THEFT SYSTEM, OR ANOTHER AFTERMARKET MODIFICATION DESIGNED TO DETER OR PREVENT THEFT</u> FOR MY CLASS VEHICLE.** *Note: This Settlement benefit is only available if your Class Vehicle is **ineligible** for the Software Upgrade.  Reimbursement under this category is capped at $300 per Class Vehicle if you are **not** reimbursed for the purchase of a steering wheel lock and capped at $250 if you **are** reimbursed for the purchase of a steering wheel lock, regardless of whether your out-of-pocket losses exceed these cap amounts.*

*Claims for this benefit must be submitted no later than XXXX.*

**[A]** Provide the total amount for which you are requesting reimbursement:

$ ☐☐☐☐☐ . ☐☐

**[B]** Provide the following to assist with processing your claim:

ANTI-THEFT SYSTEM DESCRIPTION(S) (STEERING WHEEL LOCK, ALARM KIT, ETC. (List all that apply))

Date of purchase of steering wheel lock:   ☐☐  -  ☐☐  -  ☐☐☐☐
                                           MM        DD        YYYY

Cost of Steering Wheel Lock: _____

Date of purchase of anti-theft system:   ☐☐  -  ☐☐  -  ☐☐☐☐
                                         MM        DD        YYYY

Cost of purchase of anti-theft system: _____

Date of installation of anti-theft system:   ☐☐  -  ☐☐  -  ☐☐☐☐
                                             MM        DD        YYYY

Cost of installation of anti-theft system: _____

**[C]** Did you already receive a steering wheel lock provided by Hyundai or Kia (for example, shipped directly from Hyundai or Kia, from a dealership, or through a law enforcement department) when you purchased a steering wheel lock (if applicable)?  Check the appropriate box below:

☐ Yes   OR   ☐ No

**[B]** **Required Documentation:**

1. **Proof of Ownership:** A copy of any document(s) issued by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that you own or lease a Class Vehicle, identified by VIN (such as owner registration card, vehicle title, bank note identifying the vehicle, and insurance card).

*For more information, please view the Class Notice, visit XXXX,
or call the Settlement Administrator's toll-free number at XXXX.*

Claims can be submitted electronically at XXXXX

2. **Proof of Payment for Qualifying Purchase:** "Proof of Payment" refers to the original or copy of any document(s) generated at or around the time expenses were incurred showing that the Claimant paid for the expenses incurred (e.g., a Qualifying Purchase, towing expenses, transportation expenses, etc.) for which they may be entitled to reimbursement under this Settlement Agreement. "Proof of Payment" must reflect the method of payment the Claimant used, the cost of the expense, and the name of the entity charging the Claimant for the expense. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in cash shall include a valid corresponding final invoice or repair order, proof of withdrawal of cash from a bank or credit union, along with an attestation under penalty of perjury by the Claimant that they do not have a cash payment receipt from the person or entity that the Claimant paid showing their payment and as to the specific dollar amount they paid in cash.

3. **Proof of Installation for Anti-Theft System (not applicable for Qualifying Purchase of steering wheel lock alone):** Document(s) generated at or around the time the anti-theft system was installed on a Class Vehicle showing that you had the anti-theft device installed on the Class Vehicle.

4. **Prior Reimbursement:** If you previously received **any** payment or reimbursement in connection with the Qualifying Theft or Qualifying Theft Attempt, you must provide documentation of this with your Claim Form (for example, Insurance Records or prior campaign reimbursement and/or customer satisfaction payments). "Insurance Records" refers to documents issued by the car insurance company reflecting that coverage was denied or a final insurance settlement that shows how much the insurance paid minus the deductible.

## [4] SIGN AND DATE

The information on this form is true and correct to the best of my knowledge. I agree to participate in the Settlement. I authorize any dealership that serviced my vehicle to release records to the Settlement Administrator as needed to assist in the payment of my Claim. To the extent I am seeking reimbursement for a Qualifying Loss for which I do not have documentation, I attest as follows:

☐ **Cash Payment for Repairs Performed at Hyundai or Kia Dealership:** I hereby swear under penalty of perjury under the laws of the United States that I had repairs performed at an authorized Hyundai or Kia dealership _____ (name of dealership) and paid $_____ in cash but I do not have a cash payment receipt from the dealership showing payment.

☐ **Cash Payment in General:** I hereby swear under penalty of perjury under the laws of the United States that I paid for _____ (description of reason for payment) and paid $_____ in cash but I do not have a cash payment receipt showing payment. Along with this attestation, I am submitting a valid corresponding final invoice or repair order and proof of withdrawal of cash from a bank or credit union.

☐ **Unrecovered Class Vehicle:** I hereby swear under penalty of perjury under the laws of the United States that I experienced a Qualifying Theft of my Class Vehicle on _____ (Date) and as of today, I still have not recovered my Class Vehicle. (*Note: In the event a Class Vehicle is recovered following the submission of this Claim, but before payment is issued from the Common Fund, you must notify the Settlement Administrator of the recovery and the condition of the recovered Class Vehicle.*)

Signature: _____        Date: ☐☐ - ☐☐ - ☐☐☐☐
                                                                                              MM        DD        YYYY

## [5] HOW TO SUBMIT:

You must submit the completed form AND the required documentation in one of the following ways: (a) by emailing them to [EMAIL]; (b) mailing them to the Settlement Administrator at [ADDRESS]; or submitting them online at [LINK]. It is highly recommended that you maintain a copy of the completed Claim Form and a copy of any supporting documentation for your own records.

Please **DO NOT** send Claim Forms to Class Counsel or the Court.

*For more information, please view the Class Notice, visit XXXX,*
*or call the Settlement Administrator's toll-free number at XXXX.*
Page 10 of 10