ELLIOTT R. FELDMAN
NATHAN M. DOOLEY (SBN 224331)
KEVIN P. CARAHER
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: 215.665.2071
Fax: 215.701.2282
EFeldmanM.@cozen.com

WILLIAM HOFFMANN
ADAM ROMNEY (SBN 261974)
SUSAN BENSON (SBN 146837)
GROTEFELD HOFFMANN
5535 Balboa Blvd., Ste. 219
Encino, California 91316
Tel: 747.233.7150
Fax: 747.233.7143

TIMOTHY E. CARY (SBN 093608)
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
1260 Corona Pointe Court, Ste 306
Corona, California 92879
Tel: 951.387.4700
Fax: 951.963.1298
CaryT@Stutmanlaw.com

CRAIG S. SIMON (SBN 78158)
BERGER KAHN, A LAW CORPORATION
2 Park Plaza, Suite 650
Irvine, CA 92614
Tel: 949.474.880
Fax:  949.313.5029
csimon@bergerkahn.com

*Lead Attorneys for Subrogation Plaintiffs*

## UNITED STATES DISTRICT COURT

### FOR THE central district of CALIFORNIA

| | |
|---|---|
| In re:  KIA  HYUNDAI  VEHICLE  THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 22-ml-03052-JVS-KES |
| | The Honorable James V. Selna |
| | **MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS** |
| This document relates to: *APPLIES TO ALL SUBROGATION CLAIMS* | |

# TABLE OF CONTENTS

**Page**

NATURE OF THE ACTION ................................................................. 24

THE PARTIES (Alleged by All Plaintiffs) ........................................... 29

CLASS PLAINTIFFS (Alleged by Class Plaintiffs) .............................. 33

JURISDICTION AND VENUE (Alleged by All Plaintiffs) .................... 69

FACTS COMMON TO ALL CAUSES OF ACTION (Alleged by All Plaintiffs) .......................................................................................... 70

   A.  Hyundai and Kia Became One of The Most Popular Automakers In The United States By Promoting The Safety, Quality, and Reliability of Their Vehicles ..................................................................................... 70

   B.  For Over Fifty Years, Auto Manufacturers Have Known That Thefts Pose a Serious Safety Risk ................................................................. 73

   C.  Engine Immobilizers Are an Inexpensive and Proven Means to Dramatically Reduce Auto Theft .................................................... 80

   D.  The Vehicles Are Thief Friendly, Defective, and Do Not Comply With FMVSS No. 114 ............................................................................. 84

   E.  Defendants Knowingly Manufactured and Sold Millions of Vehicles That Are Easily Stolen In Seconds .................................................. 86

   F.  Defendants Should Have Uncovered the Thief Friendly Design Through the FMVSS self-certification process and pre-sale testing .............. 86

   G.  Defendants' Specific Knowledge Concerning the Efficacy of Engine Immobilizers and Their Use of Immobilizers in Other Vehicles Should Have Notified them of the Thief Friendly Design ........................... 90

   H.  Defendants were on notice of the Thief Friendly Design from their fforts to Monitor Vehicle Thefts, Which Have Occurred at a Shocking Rate ......... 94

   I.  Defendants Failed To Remedy The Thief Friendly Design ............. 95

   J.  Fraudulent Omission/Concealment Allegations ............................. 96

K.  Privity Exists Between Defendants and Plaintiffs' Insureds ........................... 98

CLASS ACTION ALLEGATIONS (Alleged by Class Plaintiffs) ........................ 100

TOLLING OF STATUTES OF LIMITATIONS (Alleged by All Plaintiffs) ........ 118

B.  Discovery Rule ................................................................................ 118

C.  Fraudulent Concealment ................................................................. 119

D.  Estoppel .......................................................................................... 120

NATIONWIDE  CLASSES  AND  CALIFORNIA  STATE  LAW    CLAIMS
FOR RELIEF (Alleged by Adopting Plaintiffs, Nationwide Class Members,
and California Subclass Members against All Defendants) ................................... 121

A.  Breach of Implied Warranty ........................................................... 122

B.  Breach of Express Warranty Pursuant To Cal. Comm. Code § 2313 ........... 124

C.  Breach of Express Warranty in Violation of Song-Berkeley Warranty
Act ................................................................................................. 125

D.  Violations of The California Song-Beverly Consumer Warranty Act For
Breach  of  Implied  Warranty  of  Merchantibility  (Cal.  Civ.  Code  §§
1791.1 And 1792) .......................................................................... 127

E.  Violations of Consumer Legal Remedies Act Cal. Civ. Code § 1750, *et
seq*. ................................................................................................. 128

F.  Violations of Bus. & Prof. Code § 17200, *et seq*. .......................... 133

G.  Fraud By Omission and Concealment ............................................ 138

H.  Breach of Express and Implied Warranties Under The Magnuson-Moss
Warranty Act – 15 U.S.C. § 2301, *et seq*. ..................................... 141

I.  Negligence ...................................................................................... 143

J.  Negligent Failure To Warn ............................................................ 145

K.  Negligent Misrepresentation .......................................................... 146

ALABAMA  STATE  LAW  CLAIMS  FOR  RELIEF  (Alleged  by  Adopting
Plaintiffs, and Members of Alabama Subclasses, against All Defendants) ........... 147

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

A. Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose (Ala. Code §§ 7-2-314 and 7-2a-212) ............................ 147

B. Breach of Express Warranty (Ala. Code § 7-2-13) ....................................... 150

C. Violation of the Alabama Deceptive Trade Practices Act (Ala. Code §§ 8-19-1, et seq.) ........................................................................................... 151

D. Fraud by Misstatement and Suppression of Material Facts (Ala. Code §§ 6-5-101, 6-5-102) ................................................................................ 153

E. Negligence ................................................................................................ 154

F. Gross Negligence ....................................................................................... 155

ALASKA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Alaska Subclasses, against All Defendants) ................ 156

A. Breach of Implied Warranty (Alaska Stat. Ann. §§ 45.02.314 and 45.12.212) ................................................................................................ 157

B. Breach of Express Warranty (Alaska Stat. §§ 45.02.313 and 45.12.210) ..... 159

C. Violation of the Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. Ann. § 45.50.471, et seq.) ................................................ 162

D. Fraud by Misrepresentation, Concealment and Omission ............................. 169

E. Negligence ................................................................................................ 171

F. Negligent Misrepresentation ...................................................................... 172

G. Gross Negligence ....................................................................................... 173

ARIZONA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Arizona Subclasses, against All Defendants) .............. 173

A. Breach of Implied Warranty of Merchantability (Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212) ....................................................................... 174

B. Breach of Express Warranty (Ariz. Rev. Stat. Ann. §§ 47-2313, 47-2A210) .................................................................................................. 177

C. Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, et seq.) ...................................................................................... 178

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

D.   Fraud Based On Material Omissions and Misstatements ............................. 179

E.   Negligence ................................................................................................ 182

F.   Gross Negligence ...................................................................................... 183

ARKANSAS STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Arkansas Subclasses, against All Defendants) ............ 183

A.   Breach of Implied Warranty (Ark. Code Ann. §§ 4-2-314 and 4- 2A-212) 184

B.   Breach of Express Warranty (Ark. Code Ann. §§ 4-2-313 and 4-2A-210) 187

C.   Violation of the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, et seq.) ........................................................................ 190

D.   Fraud by Omission and Concealment ........................................................ 193

E.   Negligence ................................................................................................ 196

F.   Constructive Fraud Based on Statements Recklessly Made and Negligent Misrepresentation .......................................................................... 197

G.   Gross Negligence ...................................................................................... 198

COLORADO STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Colorado Subclasses, against All Defendants) ............ 198

A.   Breach of Implied Warranty (C.R.S. § 4-2-314) ........................................ 199

B.   Breach of Express Warranty (C.R.S. §§ 4-2-714 and 4-2-715) .................... 200

C.   Violation of the Colorado Consumer Protection Act (C.R.S. § 6-1-113) ..... 201

D.   Fraud Based on Concealment or Omission ................................................. 202

E.   Negligence ................................................................................................ 204

F.   Gross Negligence ...................................................................................... 204

CONNECTICUT STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Connecticut Subclasses, against All Defendants) ....... 205

A.   Breach of Implied Warranty of Merchantability (Conn. Gen. Stat. Ann. §§ 42a-2-314 and 42a-2a-504) .................................................................. 206

B. Breach of Express Warranty (Conn. Gen. Stat. Ann. § 42a-2-313) ............. 209

C. Violation of the Connecticut Unlawful Trade Practices Act (Conn. Gen. Stat. § 42-100a, et seq.) ................................................................................. 210

D. Fraud by Misstatements and Omissions ................................................ 213

E. Negligence ............................................................................................. 216

F. Negligent Misrepresentation ................................................................. 217

DELAWARE STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Delaware Subclasses, against All Defendants) ........... 218

A. Breach of Implied Warranty (6 Del. Code §§ 2-314, 2-315, 2A-212 and 2A-213) ................................................................................................... 219

B. Breach of Express Warranty (6 Del. Code §§ 2-313 and 2A-210) ............... 222

C. Violation of the Delaware Consumer Fraud Act (6 Del. Code § 2511, et seq.) ........................................................................................................ 223

D. Violation of the Delaware Deceptive Trade Practices Act (6 Del. Code § 2531, et seq.) .......................................................................................... 226

E. Fraud by Omission and Concealment .................................................... 229

F. Negligence ............................................................................................. 232

G. Gross Negligence .................................................................................. 233

DISTRICT OF COLUMBIA CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of District of Columbia Subclasses, against All Defendants) .............................................................................................................. 233

A. Breach of Implied Warranty of Merchantability (D.C. § 28:2-314) ............ 234

B. Breach of Express Warranty (D.C. § 28:2-313) ........................................... 237

C. Violation of District of Columbia's Unlawful Trade Practices Act (D.C. § 28-3904) ............................................................................................... 238

D. Fraud by Misstatements and Omissions ................................................ 241

E. Negligence ............................................................................................. 244

F. Negligent Misrepresentation ................................................................. 245

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

G. Gross Negligence ............................................................................246

FLORIDA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Florida Subclasses, against All Defendants) ..............247

A. Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212)...........................................................................248

B. Breach of Express Warranty (Fla. Stat. §§ 672.313, 680.21)........................250

C. Violations of Florida Unfair and Deceptive Trade Practices Act (Fla. Stat. § 501 et seq.) ................................................................251

D. Fraud Based on Omissions, Concealment, and Misstatements ....................255

E. Negligence .....................................................................................257

F. Negligent Misrepresentation.............................................................258

G. Gross Negligence ............................................................................260

GEORGIA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Georgia Subclasses, against All Defendants)..............260

A. Breach of Implied Warranty of Merchantability (Ga. Code Ann. §§ 11-2-314 and 11-2A-212)..................................................................261

B. Breach of Express Warranty (Ga. Code Ann. § 11-2-313, et seq.) ..............264

C. Violation of the Georgia Uniform Deceptive Trade Practices Act (Ga. Code Ann. § 10-1-390, et seq.)..................................................266

D. Violation of the Georgia Fair Business Practices Act (Ga. Code Ann. § 10-1-390, et seq.) ........................................................................270

E. Fraud by Omission and Concealment (Alleged by Both Georgia Subclasses and Adopting Plaintiffs against All Defendants) ......................272

F. Negligence (Alleged by Both Georgia Subclasses and Adopting Plaintiffs against All Defendants).....................................................275

G. Negligent Misrepresentation (Alleged by both Georgia Subclasses and Adopting Plaintiffs against All Defendants)................................276

Case No. 8:22-ML-3052-JVS(KESx).

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

HAWAII STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Hawaii Subclasses, against All Defendants) ..............277

A.  Breach of Implied Warranty (Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212) .................................................................................................277

B.  Breach of Express Warranty (HRS §§ 409:2-313 and 409:2A-210).............280

C.  Unfair and Deceptive Acts in Violation of Hawaii Law (Haw. Rev. Stat. § 480, et seq.) ...........................................................................281

D.  Fraud by Omission, Suppression or Concealment........................................285

E.  Negligent Misrepresentation ........................................................................288

F.  Negligence ....................................................................................................290

G.  Gross Negligence ..........................................................................................290

IDAHO STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Idaho Subclasses, against All Defendants).................292

A.  Breach of Implied Warranty (Idaho Code §§ 28-2-314 and 28-12-212).......292

B.  Breach of Express Warranty (Idaho Code §§ 28-2-313 and 28-12-210) ......295

C.  Violation of the Idaho Consumer Protection Act (Idaho Code § 48-601, et seq.) ..........................................................................................297

D.  Fraud by Omission and Concealment ...........................................................300

E.  Negligence ....................................................................................................303

F.  Gross Negligence ..........................................................................................304

ILLINOIS STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Illinois Subclasses, against All Defendants) ..............306

A.  Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314 and 5/2A-212) ...............................................................307

B.  Breach of Express Warranty (810 ILCS 5/2-313 and 810 ILCS 5/2A-210) 310

C.  Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, et seq.).........................................311

D. Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/1, et seq.) ........................................................................ 315

E. Fraud by Omission or Concealment ............................................... 317

F. Negligent Misrepresentation .......................................................... 319

G. Negligence ...................................................................................... 321

H. Gross Negligence ........................................................................... 322

INDIANA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Indiana Subclasses, against All Defendants) .............. 323

A. Breach of Implied Warranty of Merchantability (Ind. Code §§ 26-1-2-314 and 26-1-2.1-212) .................................................................... 324

B. Breach of Express Warranty (Indiana Code §§ 26-1-2-313 and 26-1-2.1-210) ................................................................................................. 326

C. Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-1, et seq.) .............................................................................. 327

D. Fraud by Omission, Suppression and Concealment ....................... 331

E. Negligent Misrepresentation .......................................................... 334

F. Negligence ...................................................................................... 336

G. Gross Negligence ........................................................................... 337

IOWA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Iowa Subclasses, against All Defendants) ................................... 338

A. Breach of Implied Warranty (Iowa Code §§ 554.2314 and 554.13212) ....... 339

B. Breach of Express Warranty (Iowa Code §§ 554.2313 and 554.13210) ....... 341

C. Violation of the Private Right of Action for Consumer Frauds Act (Iowa Code § 714h.1, et seq.) ................................................................. 342

D. Fraud by Omission, Suppression or Concealment .......................... 345

E. Negligent Misrepresentation .......................................................... 348

F. Negligence ...................................................................................... 350

G. Gross Negligence ........................................................................... 351

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

KANSAS STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Kansas Subclasses, against All Defendants) ...............353

    A.  Breach of Implied Warranty (Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212) .........................................................................................................353

    B.  Breach of Express Warranty (Kan. Stat. Ann. §§ 84-2-2-313 and 84-2a-210) .........................................................................................................356

    C.  Violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. § 50-623, et seq.) ...................................................................................357

    D.  Fraud by Omission, Suppression or Concealment................................361

    E.  Negligent Misrepresentation ................................................................364

    F.  Negligence .........................................................................................366

    G.  Gross Negligence ...............................................................................366

KENTUCKY STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Kentucky Subclasses, against All Defendants) ...........368

    A.  Breach of Implied Warranty (Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212) .........................................................................................................369

    B.  Breach of Express Warranty (Ky. Rev. Stat. §§ 355.2-313 and 355.2A-210) .........................................................................................................371

    C.  Violation of the Consumer Protection Act (Kentucky Rev. Stat. § 367.110, et seq.) ...............................................................................372

    D.  Fraud by Omission, Suppression or Concealment................................375

    E.  Negligent Misrepresentation ................................................................378

    F.  Negligence .........................................................................................380

    G.  Gross Negligence ...............................................................................381

LOUISIANA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Louisiana Subclasses, against All Defendants)...........382

    A.  Breach of Implied Warranty of Merchantability/Warranty (La. Civ. Code Art. 2520, 2524) .........................................................................383

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

B. Breach of Express Warranty under La. C.C. § 2529 ....................................386

C. Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. § 51:1401, et seq.)........................................387

D. Fraud by Omission, Suppression or Concealment under La. Civ. Code § 1953 et. Seq...................................................................................391

E. Negligent Misrepresentation under La. C.C. §§ 2315 and 2316 ..................394

F. Negligence under La. C.C. § 2315.....................................................395

G. Gross Negligence La. C.C. § 2315 ..................................................396

H. Product Liability under La. R.S. § 9:2800.54 et seq......................................397

MAINE STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Maine Subclasses, against All Defendants) ................401

A. Breach of Implied Warranty (Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212) 401

B. Breach of Express Warranty (Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210) 404

C. Violation of the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 § 205-a, et seq.) ...............................................................405

D. Negligence ........................................................................408

E. Gross Negligence ................................................................409

MARYLAND STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Maryland Subclasses, against All Defendants) ..........411

A. Breach of Implied Warranty of Merchantability (Md. Code Com. Law §§ 2-314 and 2A-212)...............................................................412

B. Breach of Express Warranty (Md. Code Com. Law §§ 2-313 and 2A 210) 415

C. Violation of the Maryland Consumer Protection Act (Md. Code, Com. Law, § 13-101, et seq.)...............................................................416

D. Fraud by Omission, Suppression or Concealment.........................................419

E.  Negligent Misrepresentation .................................................... 423

F.  Negligence ............................................................................... 425

G.  Gross Negligence ..................................................................... 426

H.  Product Liability ...................................................................... 428

MASSACHUSETTS STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Massachusetts Subclasses, against All Defendants) .................................................................................... 429

A.  Breach of Implied Warranty of Merchantability under Mass. Gen. Laws Ch. 106, §§ 2-314 and 2A-212 .......................................... 429

B.  Breach of Express Warranty under Mass. Gen. Laws Ch. 106, §§ 2-313 ..... 432

C.  Violation of the Deceptive Acts or Practices Prohibited by Mass. Gen. Laws Ch. 93a §1, et seq. ............................................... 433

D.  Fraud by Omission and Concealment ....................................... 436

E.  Negligence ............................................................................... 439

MICHIGAN STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Michigan Subclasses, against All Defendants) .......... 440

A.  Breach of Implied Warranty of Merchantability under Mich. Comp. Laws §§ 440.214 and 440.2862 ............................................. 441

B.  Breach of Express Warranty under Mich. Comp. Laws §§ 440.2313 .......... 443

C.  Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901, et seq.) ................................................... 444

D.  Fraud by Omission, and Concealment ...................................... 448

E.  Negligence ............................................................................... 451

MINNESOTA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Minnesota Subclasses, against All Defendants) .......... 452

A.  Breach of Implied Warranty of Merchantability under Minn. Stat. §§ 336.2-314 and 336.2A-212 ................................................. 453

B.  Breach of Express Warranty under Minn. Stat. §§ 336.2-313 ...................... 455

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

C.  Violation of the Minnesota Prevention of Consumer Fraud Act pursuant
    to Minn. Stat. § 325F.68, et seq. and Minn. Stat. § 8.31, subd. 3a ...............456

D.  Violation of the Deceptive Trade Practices Act pursuant to Minn. Stat. §
    325D.44 ................................................................................................460

E.  Fraud by Omission, and Concealment ...........................................................463

F.  Negligence ............................................................................................466

MISSISSIPPI STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting
Plaintiffs, and Members of Mississippi Subclasses, against All Defendants) ........467

A.  Breach of Implied Warranty of Merchantability under Miss. Code §§ 75-
    2-314 and 75-2A-212 ..............................................................................467

B.  Breach of Express Warranty under Miss. Code § 75-2-313 ..........................470

C.  Violation of the Mississippi Consumer Protection Act under Miss. Code.
    Ann. § 75-24-1, et seq. ............................................................................471

D.  Fraud by Omission and Concealment .........................................................474

E.  Negligence ............................................................................................477

MISSOURI STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting
Plaintiffs, and Members of Missouri Subclasses, against All Defendants) ...........478

A.  Breach of Implied Warranty of Merchantability under Mo. Rev. Stat. §§
    400.2-314 and 400.2A-212 .......................................................................479

B.  Breach of Express Warranty under Mo. Rev. Stat. §§ 400.2-313 ................482

C.  Violation of Missouri Merchandising Practices Act under Mo. Rev. Stat.
    § 4070.010, et seq. ..................................................................................483

D.  Fraud by Omission and Concealment .........................................................486

E.  Negligence ............................................................................................489

MONTANA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting
Plaintiffs, and Members of Montana Subclasses, against All Defendants) ...........490

A.  Breach of Implied Warranty of Merchantability under Mont. Code §§ 30-
    2-314 and 30-2A-212 ...............................................................................491

Case No. 8:22-ML-3052-JVS(KESx).
CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

B. Breach of Express Warranty under Mont. Code § 30-2-313 ........................ 493

C. Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1973 (Mont. Code Ann. § 30-14-101, et seq.) ................ 494

D. Fraud by Omission, and Concealment ........................................................ 497

E. Negligence ................................................................................................. 500

NEBRASKA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Nebraska Subclasses, against All Defendants) ........... 501

A. Breach of Implied Warranty of Merchantability under Neb. Rev. St. U.C.C. §§ 2-314 and 2A-212 ..................................................................... 502

B. Breach of Express Warranty under Neb. Rev. St. U.C.C. §§ 2-313 ............. 504

C. Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601, et seq.) ....................................................................................... 505

D. Fraud by Omission, and Concealment ........................................................ 509

E. Negligence ................................................................................................. 511

NEVADA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Nevada Subclasses, against All Defendants) ............. 512

A. Breach of Implied Warranty of Merchantability under Nev. Rev. Stat. §§ 104.2314 and 104A.2212 ...................................................................... 513

B. Breach of Express Warranty under Nev. Rev. Stat. § 104.2313 ................. 516

C. Violation of the Deceptive Trade Practices Act under Nev. Rev. Stat. § 598.0903, et seq. ..................................................................................... 517

D. Fraud by Omission, and Concealment ........................................................ 519

E. Negligence ................................................................................................. 522

NEW HAMPSHIRE STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of New Hampshire Subclasses, against All Defendants) ........................................................................................................ 523

A. Breach of Implied Warranty of Merchantability under N.H. Rev. Stat. §§ 382-A:2-314 and 2A-212 ..................................................................... 523

B.   Breach of Express Warranty under N.H. Rev. Stat. §§ 382-A:2-313............526

C.   Violation of the New Hampshire Consumer Protection Act under N.H. Rev. Stat. Ann. § 358-a:1, et seq....................................................527

D.   Fraud by Omission, and Concealment ........................................530

E.   Negligence ........................................................................533

NEW JERSEY STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of New Jersey Subclasses, against All Defendants) ........534

A.   Breach of Implied Warranty of Merchantability under N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212) ..............................................534

B.   Breach of Express Warranty under N.J. Stat. Ann. § 12A:2-313.................537

C.   Violation of New Jersey Consumer Fraud Act under N.J. Stat. Ann. § 56:8-1, et seq. ........................................................................538

D.   Fraud by Omission and Concealment ..........................................542

E.   Negligence ........................................................................544

NEW MEXICO STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of New Mexico Subclasses, against All Defendants) ......545

A.   Breach of Implied Warranty (N.M. Stat. §§ 55-2-314 and 55-2A-212)........546

B.   Breach of Express Warranty N.M.S.A. §55-2-313........................549

C.   Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-1, et seq.) ................................................................550

D.   Fraud by Omission, Suppression and Concealment ......................553

E.   Negligence by Words ............................................................555

F.   Negligence ........................................................................557

NEW YORK STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of New York Subclasses, against All Defendants) ..........559

A.   Breach of Implied Warranty (N.Y. U.C.C. Law §§ § 2-314 and § 2-315)....560

B.   Breach of Express Warranty NY UCC §2-313...............................562

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

C.  Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349) ...............................................563

D.  Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350) ...............................................566

E.  Fraud by Omission and Concealment ....................................569

F.  Negligent Misrepresentation ...............................................572

G.  Negligence .......................................................................574

H.  Gross Negligence ..............................................................575

NORTH CAROLINA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of North Carolina Subclasses, against All Defendants) ...............................................576

A.  Breach of Implied Warranty (N.C.G.S. §§ 2-314 and § 2-315) ....................577

B.  Breach of Express Warranty N.C.G.S. §2-313. ...........................580

C.  Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, et seq.) .......................................581

D.  Negligence .......................................................................584

E.  Gross Negligence ..............................................................585

NORTH DAKOTA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of North Dakota Subclasses, against All Defendants) ...............................................586

A.  Breach of Implied Warranty of Merchantability under N.D. Cent. Code §§ 41-02-31 and 41-02.1-21 .............................................587

B.  Breach of Express Warranty under N.D. Cent. Code § 41-02-30 ................589

C.  Violation of North Dakota Consumer Fraud Act under N.D. Cent. Code § 51-15-02, et seq. ...........................................590

D.  Fraud by Omission and Concealment ....................................594

E.  Negligence .......................................................................596

F.  Negligent Misrepresentation ...............................................597

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

OHIO STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Ohio Subclasses, against All Defendants) ...................................598

    A.  Breach of Implied Warranty of Merchantability under Ohio Rev. Code Ann. §§ 1302.27 and 1310.19 .......................................................................599

    B.  Breach of Express Warranty under Ohio Rev. Code Ann. § 1302.26 ...........602

    C.  Violation of Ohio Consumer Sales Practices Act under Ohio Rev. Code § 1345.01. et seq. ...................................................................................603

    D.  Violation of Ohio Deceptive Trade Practices Act under Ohio Rev. Code § 4165.01 et seq. ....................................................................................606

    E.  Fraud by Misrepresentation, Omission and Concealment ............................610

    F.  Negligence ....................................................................................................612

OKLAHOMA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Oklahoma Subclasses, against All Defendants) ..........613

    A.  Breach of Implied Warranty of Merchantability under Okla. Stat. Ann. Tit. §§ 2-314 and 2A-212 ...........................................................................614

    B.  Breach of Express Warranty under Okla. Stat. Ann. tit. 12A, § 2-313 .........617

    C.  Violation of Oklahoma Consumer Protection Act under Okla. Stat. Ann. tit. 15, § 751, et seq. ...................................................................................618

    D.  Fraud by Omission and Concealment ...........................................................621

    E.  Negligence ....................................................................................................624

    F.  Negligent Misrepresentation ........................................................................625

OREGON STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Oregon Subclasses, against All Defendants) ...............626

    A.  Breach of Implied Warranty of Merchantability (ORS §72.3140) ...............627

    B.  Breach of Express Warranty (ORS § 72.3130) .............................................630

    C.  Violation of Oregon's Unlawful Trade Practices Act (ORS § 646.607) .......631

    D.  Fraud .............................................................................................................634

    E.  Negligence ....................................................................................................637

F.   Gross Negligence ............................................................................637

PENNSYLVANIA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Pennsylvania Subclasses, against All Defendants)............................................................................................638

A.   Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212)........................................................................639

B.   Breach of Express Warranty (13 Pa. Cons. Stat. §§ 2313, 2A210, et seq.) 642

C.   Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. §§ 201-1, et seq.) ...................643

D.   Fraud by Omission and Concealment ...........................................647

E.   Negligence .....................................................................................649

F.   Negligent Misrepresentation .........................................................651

PUERTO RICO LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Puerto Rico Subclasses, against All Defendants)........651

A.   Breach of Implied Warranty of Merchantability (P.R.Laws Ann. tit. 31, § 3841) ........................................................................................652

B.   Breach of Express Warranty .........................................................653

C.   Violation of the Rule 7 of Puerto Rico Rules Against Misleading Practices and Advertisements .......................................................655

D.   Fraud based on Misstatements, Omissions and Concealment .......657

E.   Negligence .....................................................................................659

RHODE ISLAND STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Rhode Island Subclasses, against All Defendants)............................................................................................660

A.   Breach of Implied Warranty of Merchantability (R.I. Gen. Laws 1956, §§ 6A-1-201, 6A-2-314, et seq.)..................................................661

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

B.   Breach of Express Warranty (R.I. Gen. Laws 1956, §§ 6A-1-201, 6A-2-313, et seq.) ................................................................................664

C.   Violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act (RI Gen L § 6-13.1-11, et seq.) ...............................665

D.   Fraud by Omission and Concealment ...........................................668

E.   Negligence .....................................................................................670

F.   Negligent Misrepresentation .........................................................672

SOUTH CAROLINA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of South Carolina Subclasses, against All Defendants) ................................................................................................673

A.   Breach of Implied Warranty of Merchantability under S.C. Code Ann. §§ 36-2-314 and 36-2A-212 ..................................................674

B.   Breach of Express Warranty under S.C. Code Ann. § 36-2-313 ...................677

C.   Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10, et seq.) .................................................678

D.   Fraud by Omission and Concealment ...........................................680

E.   Negligence .....................................................................................683

SOUTH DAKOTA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of South Dakota Subclasses, against All Defendants) ................................................................................................684

A.   Breach of Implied Warranty of Merchantability under S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212 .........................................685

B.   Breach of Express Warranty under S.D. Codified Laws § 57A-2-313 .........687

C.   Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws §§ 37-24-1, et seq.) ............................688

D.   Fraud by Omission and Concealment ...........................................691

E.   Negligence .....................................................................................694

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

TENNESSEE STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting
Plaintiffs, and Members of Tennessee Subclasses, against All Defendants) .......... 695

   A.  Breach of Implied Warranty of Merchantability under Tenn. Code Ann.
       §§ 47-2-314 and 47-2A-212 ................................................................ 696

   B.  Breach of Express Warranty under Tenn. Code Ann. § 47-2-313 .............. 698

   C.  Violation of the Tennessee Consumer Protection Act of 1977 (Tenn.
       Code Ann. §§ 47-18-101, et seq.) ................................................... 700

   D.  Fraud by Omission and Concealment ........................................... 703

   E.  Negligence ................................................................................ 705

TEXAS STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting
Plaintiffs, and Members of Texas Subclasses, against All Defendants) ................ 707

   A.  Breach of Implied Warranty of Merchantability under Tex. Bus. & Com.
       Code Ann. §§ 2.314 and 2A.212 ................................................... 708

   B.  Breach of Express Warranty under Tex. Bus. & Com. Code Ann. § 2.313
       710

   C.  Fraud by Omission and Concealment ........................................... 711

   D.  Negligence ................................................................................ 714

   E.  Negligent Misrepresentation ......................................................... 714

UTAH STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs,
and Members of Utah Subclasses, against All Defendants) .................................. 716

   A.  Breach of Implied Warranty of Merchantability under Utah Code Ann.
       §§ 70A-2-314 and 70A-2A-212 ................................................... 717

   B.  Breach of Express Warranty under Utah Code Ann. § 70A-2-313 .............. 719

   C.  Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. §§
       13-11-1, et seq.) ......................................................................... 720

   D.  Fraud by Omission and Concealment ........................................... 723

   E.  Negligence ................................................................................ 726

   F.  Negligent Misrepresentation ......................................................... 727

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

VERMONT STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Vermont Subclasses, against All Defendants) ............728

    A.  Breach of Implied Warranty of Merchantability under Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212 ...................................................................................729

    B.  Breach of Express Warranty under Vt. Stat. Ann. Tit. 9A, § 2-313..............731

    C.  Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. Tit. 9, § 2451, et seq.) .................................................................................................732

    D.  Fraud by Omission and Concealment ..........................................................735

    E.  Negligence ....................................................................................................738

    F.  Negligent Misrepresentation ........................................................................739

VIRGINIA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Virginia Subclasses, against All Defendants) .............740

    B.  Breach of Implied Warranty of Merchantability under Va. Code Ann. §§ 8.2-314 and 8.2A-212 ...................................................................................741

    C.  Breach of Express Warranty under Va. Code Ann. § 8.2-313 ......................743

    D.  Violation of the Virginia Consumer Protection Act (Va. Code Ann. §§ 59.1-196, et seq.)...........................................................................................745

    E.  Fraud by Omission and Concealment ..........................................................748

    F.  Negligence ....................................................................................................750

    G.  Constructive Fraud.......................................................................................751

WASHINGTON STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Washington Subclasses, against All Defendants) .......753

    A.  Breach of Implied Warranty of Merchantability under Wash. Rev. Code Ann. §§ 62A.2-314 and 62A.2A-212 ...........................................................754

    B.  Breach of Express Warranty under Wash. Rev. Code Ann. § 62A.2-313.....756

    C.  Violation of the Washington Consumer Protection Act (Wash. Rev. Code Ann. §§ 19.86.010, et seq.) .........................................................................757

    D.  Fraud by Omission and Concealment ..........................................................760

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

E.   Negligence ...........................................................................................763

F.   Negligent Misrepresentation .............................................................763

WEST VIRGINIA STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of West Virginia Subclasses, against All Defendants)..............................................................................................765

A.   Breach of Implied Warranty of Merchantability under W. Va. Code Ann. §§ 46-2-314 and 46-2A-212.....................................................766

B.   Breach of Express Warranty under W. Va. Code Ann. § 46-2-313 ..............768

C.   Violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code Ann. §§ 46A-1-101, et seq.) ........................................769

D.   Fraud by Omission and Concealment ...........................................773

E.   Negligence ...........................................................................................775

F.   Negligent Misrepresentation .............................................................776

WISCONSIN STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Wisconsin Subclasses, against All Defendants)..........778

A.   Breach of Implied Warranty of Merchantability under Wis. Stat. Ann. §§ 402.314 and 411.212 ........................................................778

B.   Breach of Express Warranty under Wis. Stat. Ann. § 402.313 ....................781

C.   Violation of Wisconsin Deceptive Trade Practices Act (Wis. Stat. Ann. § 100.18) ........................................................................782

D.   Fraud by Omission and Concealment ...........................................785

E.   Negligence ...........................................................................................788

F.   Negligent Misrepresentation .............................................................788

WYOMING STATE LAW CLAIMS FOR RELIEF (Alleged by Adopting Plaintiffs, and Members of Wyoming Subclasses, against All Defendants)..........790

A.   Breach of Implied Warranty of Merchantability under Wyo. Stat. Ann. §§ 34.1-2-314 and 34.1-2.A-212...............................................791

B.   Breach of Express Warranty under Wyo. Stat. Ann. § 34.1-2-313 ..............793

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

C.  Violation of Wyoming Consumer Protection Act (Wyo. Stat. Ann. §§ 40-12-101, et seq.) ............................................................................794

D.  Fraud by Omission and Concealment ...........................................797

E.  Negligence .....................................................................................800

F.  Negligent Misrepresentation .........................................................801

PRAYER FOR RELIEF .....................................................................................802

JURY TRIAL DEMANDED ...............................................................................804

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Subrogation Plaintiffs, by and through their counsel, Cozen O'Connor, Grotefeld Hoffmann, Berger Kahn, PLC, and Law Offices of Robert A. Stutman, P.C., bring this action against Hyundai Motor America, Hyundai Motor Company, Kia America, Inc., and Kia Corporation (collectively "Defendants").

## NATURE OF THE ACTION

1.     Defendants manufactured and sold approximately 14.3 million vehicles, including certain 2011-2022 Kia vehicles and 2011-2022 Hyundai vehicles, that do not contain an engine immobilizer, or any equivalent operational anti-theft equipment required by federal law and mandated by industry standards of care (hereinafter, the "Vehicles"). The Vehicles are so insecure that teenagers with no relevant prior experience can steal them in a matter of seconds. This flaw has long been known to Defendants, but Defendants kept it hidden.  This conduct breached express and implied promises that Defendants made to consumers, including Plaintiffs' policy holders, and exposed the public to a rash of thefts.  Known years, makes and models of the Vehicles are identified in Exhibit "A."

2.     The Defendants provided anti-theft protection in the form of immobilizers for more expensive automobiles.  However, for less expensive versions of their Vehicles, Defendants only provided anti-theft immobilizer technology if the purchaser paid extra for expensive and unnecessary trim packages. Moreover, Defendants did not disclose the fact that the Vehicles came without effective anti-theft protection, something that has become an industry standard component in consumer vehicles across the globe, including in vehicles sold by Defendants.

3.     The very same Vehicles that Defendants sold without the legally required anti-theft equipment in the United States were sold with engine immobilizers in Canada and various other countries in Europe and elsewhere. Defendants made immobilizers available to some purchasers of the defective Vehicles in the United States, but only on the condition that those purchasers were willing to pay for expensive upgrades and luxury trim packages.

Case No. 8:22-ML-3052-JVS(KESx).

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\65072870\2

4.     All Plaintiffs are insurance companies with policyholders who are insured under automobile policies for Vehicles that they purchased or leased (the policyholders shall hereafter be referred to as "Insureds"). All Plaintiffs incurred damages and/or losses because their Insureds' Vehicles were stolen, damaged and/or vandalized, for which insurance claims were submitted and paid.

5.     This Master Complaint consolidates statements and allegations previously contained within Complaints filed in this Court by two separate and distinct groups of subrogated insurance carriers (collectively "Plaintiffs").

6.     The first group of insurance companies, the "Class Plaintiffs," are represented by Cozen O'Connor.  The Class Plaintiffs seek certification of a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of all insurance companies that issued automobile and property insurance policies and whose Insureds purchased or leased a vehicle that is the subject of this action. The Class Plaintiffs also include the named class members of the Subclasses defined below.

7.     The second group of insurance companies, the "Independent Subrogation Plaintiffs," are represented by Grotefeld Hoffmann, Berger Kahn, and the Law Offices of Robert A. Stutman.  The Independent Subrogation Plaintiffs assert subrogated insurance claims on their own behalf, and are not seeking class certification.  Further, the Independent Subrogation Plaintiffs intend to opt-out of any subrogation class action certified by this Court pursuant to Fed. R. Civ. P. 23(c)(2).

8.     Defendants issued Technical Service Bulletins,[1] and Early Warning Reports to the National Highway Traffic Safety Administration, identifying makes and models of vehicles that Defendants admit lacked anti-theft immobilizer protection. The years, makes and models of the Vehicles identified in Defendants' Technical Service Bulletins and other communications to regulatory authorities are listed in Exhibit "B".

---

[1] These technical service bulletins include, but are not limited to, numbers SC993, P32, 23-01-014H-1, CS2301, CS2302, CS2303, CS2304, CS2305L, CS2305, CS2306L, CS2306, CS2307L, CS2307, CS2308, and CS2309.

9.     In April of 2023, Defendants issued a Technical Service Bulletin[2] applicable to approximately 12.2 million additional Vehicles manufactured and sold by Defendants without mandatory anti-theft protections.  The Technical Service Bulletin mandates that all Dealers "must" install a software update to the impacted Vehicles' Integrated Body Control Unit/Body Control Module (the "Software Update").  Defendants required dealers to install the Software Update on any vehicle that "may not be equipped with an immobilizer" either "prior to customer retail delivery" or "whenever an affected vehicle is in the shop for any maintenance or repair."  Defendants' requirement that dealers actively modify all impacted vehicles is an implicit acknowledgment that the Vehicles do not conform to federal law and industry standards.

10.    However, the Software Update does not remedy the defects the Vehicles or effectively operate as a substitute for the lack of a physical immobilizer at the time of manufacture.  Worse, the Software Update actively impairs owners' self-help attempts to prevent the theft of their vehicles.  The Defendants' Technical Service Bulletin notes that the Software Update may cause vehicles "equipped with aftermarket/add-on alarms or remote start systems" to operate abnormally.

11.    In addition to requiring dealers to install the Software Update, Defendants also require technicians to apply an "anti-theft decal" as a cosmetic fix to vehicle windows in a transparently ineffective attempt to deter thieves seeking to exploit the inherent vulnerabilities of Defendants' the Thief-Friendly design. In truth the "anti-theft decal" serves no effective purpose, and impacted vehicles have been reported stolen within days of their application.

12.    In June of 2023, Defendants issued a Technical Service Bulletin[3] applicable to over 2 million Vehicles which were manufactured and sold "without push-button ignitions and immobilizer anti-theft devices."  Each of the Vehicles

---

[2] Technical Service Bulletin Number 23-01-014H-3, attached as Exhibit "D".
[3] Technical Service Bulletin Number 23-01-055H, attached as Exhibit "E".

covered by the June Technical Service Bulletin were ineligible for Defendants' planned makeshift Software Update.  For these customers, Defendants made no attempt to bring the Vehicles into compliance with applicable mandatory safety standards.  Instead, Defendants only offered to provide steering wheel locks in lieu of mandatory anti-theft equipment.  The offered steering wheel locks are heavy, cumbersome devices that fail to serve as effective, alternative anti-theft measures and fail to comply with federal and industry standards, regulations and guidelines.

13.   Defendants' public statements and conduct function as an effective concession that the Vehicles were defective and unsafe at the time of sale. Nevertheless, Defendants have thus far failed to effectively remediate the risks posed by these Vehicles to consumers, including the Insureds, by offering only inadequate and ineffective software upgrades or after-market external steering wheel locks. Neither of these solutions bring the Vehicles into compliance with applicable safety standards.

14.   All Plaintiffs bring this action to recover damages incurred due to: a) the substandard, dangerous, and defective nature of the Vehicles manufactured, designed, assembled, marketed, supplied and sold by Defendants, and b) Defendants' subsequent misconduct in fraudulently concealing, misrepresenting and failing to warn consumers about their Vehicles' failure to conform to applicable federal and industry anti-theft standards.

15.   As detailed herein, Defendants intentionally designed, manufactured and/or sold the Vehicles without standard and mandatory anti-theft equipment or design elements that would prevent the Vehicles from being stolen in seconds. Contrary to federal and industry anti-theft standards, Defendants' Vehicles can be started in a matter of seconds, driven, steered, or otherwise operated without a key. These defects constitute a significant security vulnerability, rendering the Vehicles dangerously easy to steal and exposing members of the community to risk of serious bodily injury arising from the documented dangerous driving of car thieves.

16.     Specifically, design flaws in the Vehicles allow thieves to easily steal the Vehicles in seconds because the Vehicles do not contain engine immobilizers or any other comparable and effective anti-theft equipment.  These flaws are collectively referred to herein as the "Thief Friendly Design."

17.     Due to the Defendants' failure to include the required anti-theft system in the Vehicles, Plaintiffs paid for covered damages sustained by Plaintiffs' Insureds as a result of theft, attempted theft, vandalism or other damage to the Vehicles arising from the Thief Friendly Design, including theft of or damage to other property, in accordance with the terms and conditions of the insurance policies issued by Plaintiffs to their Insureds. As a result of such payments, Plaintiffs are legally, equitably and contractually subrogated to the rights of their Insureds to recover compensation from the Defendants who are legally liable for having caused the Plaintiffs' damages. The damages suffered by Plaintiffs, for which Defendants are legally liable, are separate and distinct from any uninsured losses, including deductibles, sustained by their Insureds, which are outside the scope of this Consolidated Complaint.

18.     Consumer plaintiffs identified in the Consolidated Consumer Class Action Complaint (*See* Dkt. No. 84), some of whom are Insureds, are asserting damages that are separate and distinct from the damages claimed by the subrogation Plaintiffs to this complaint. The damages alleged by the consumer plaintiffs are being claimed exclusively in the Consumer Class Action that was filed as part of this MDL ("Consumer Class Action"). [*Id.*] The claims of all such consumer plaintiffs therefore are not and cannot be included in this Complaint. The consumer plaintiffs in the Consumer Class Action are entitled to compensation for their losses solely and exclusively through resolution of the Consumer Class Action. Likewise, the damages incurred by the Plaintiffs in this action are excluded from the proposed settlement in the Consumer Class Action, which cannot and does not assert any subrogation interest on the part of the Plaintiffs in this action.

19.     The form for Adoption of this Master Complaint, attached as Exhibit

"C", permits each adopting Subrogation Plaintiff to identify whether they elect to join the "Class Plaintiffs" group or the "Independent Subrogation Plaintiffs" group. By their adoption of this Master Complaint, each Subrogation Plaintiff thereby adopts only the allegations assigned to their chosen group of Subrogating Carriers.

20.     The form for Adoption of this Master Complaint further allows each Plaintiff to identify whether it adopts or excludes each count asserted herein.  As such, each cause of action will be brought only by Adopting Plaintiffs against all Defendants.

## THE PARTIES

### (Alleged by All Plaintiffs)

### PLAINTIFFS

21.     Plaintiffs were and are insurance companies organized under the laws of their respective jurisdictions and licensed to conduct and transact business as insurance companies, issuing and underwriting policies of insurance on vehicles and property.

22.     As a result of Defendants' failure to provide certain Kia and Hyundai vehicles with immobilizers or equivalent equipment to prevent or deter theft, the Defendants' violation of accepted industry standards and practices, and the Defendants' noncompliance with FMVSS 114 and other Federal and State safety standards and regulations, Plaintiffs have and/or will pay policy proceeds to their respective Insureds pursuant to their policies of insurance. Such payments include, but are not limited to, damages incurred because of the theft of vehicles, attempted theft of vehicles, damage to vehicles, loss or damage to other property, and economic losses resulting from loss of use of vehicles.

23.     By virtue of their claim payments and associated adjustment expenses, collectively in an amount exceeding one billion dollars ($1,000,000,000+), Plaintiffs, and each of them, are now legally, equitably, and contractually subrogated to the rights, interests and claims of their Insureds against all responsible third parties,

including the Defendants named herein.  This action seeks recovery of all amounts paid and to be paid to Insureds, and all adjustment expenses incurred by Plaintiffs in making such payments.

## DEFENDANTS

24.     Defendant, HYUNDAI MOTOR AMERICA ("HMA") is a California corporation with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, CA 92708. HMA also maintains a 4,300-acre testing facility in Irwindale, CA.  HMA engages in substantial business throughout the United States, including in this judicial district.

25.     HMA is a subsidiary of Defendant, Hyundai Motor Company ("HMC"), and is actively engaged in manufacturing, assembling, marketing, and distributing Hyundai vehicles sold in California and the rest of the United States.

26.     HMA's C-Suite executives and employees who are responsible for the manufacture, development, distribution, marketing, sales, customer service, and warranty servicing of Hyundai vehicles, are located at the company's Fountain Valley headquarters in California.

27.     As described in greater detail below, the decisions regarding the marketing and sale of the Vehicles, the development and issuance of safety recalls and product updates, and decisions regarding the disclosure or non-disclosure of the Thief Friendly Design, were in whole or substantial part made by HMA at its California headquarters.

28.     HMA has 830 dealerships across the United States which serve as its agents to consumers, including Plaintiffs' Insureds.  For example, in HMA's announcement of its "Anti-Theft Software Upgrade," it instructs consumers to bring their Vehicles into "Hyundai dealers" for the update. Similarly, in recall notices to consumers, HMA instructs Vehicle owners and lessees to visit the "nearest Hyundai

1  dealer" for defect repairs.[4]

2      29.    Defendant HMC is a South Korean corporation with its headquarters

3  located in Seoul, South Korea.

4      30.    HMC is the parent corporation of HMA and owns a 33.88% stake in

5  Defendant, Kia Corporation ("KC").

6      31.    Defendant, HMC promotes on its own website all Hyundai models sold

7  by HMA in the United States and directs U.S. consumers to HMA's website.[5]

8      32.    HMC states in promotional materials that it "help[s] [its] overseas

9  subsidiaries, sales corporations, and newly established enterprises in particular to

10  establish the direction of their customer service strategies."[6]

11      33.    On information and belief, HMC and HMA control details regarding

12  their dealers' operations through various written agreements, such as: (i) granting

13  each dealer a license to use their respective trademarks and intellectual property; (ii)

14  furnishing each dealer with marketing materials to assist in the sale of their vehicles;

15  (iii) providing training to dealership personnel to assist in their sales activities; (iv)

16  providing guidance to dealerships, and dealership personnel as to how to handle

17  customers, including, but not limited to, handling complaints regarding the Theft

18  Protection Defect; and (v) prohibiting their dealers from engaging in certain practices

19  that otherwise detract from their respective brands or undermine the sale of their

20  respective vehicles, including the Vehicles.

21      34.    Defendant, KIA AMERICA, INC. ("KA") (formerly Kia Motors

22  America, Inc.), is a California corporation with its principal place of business located

23  at 111 Peter Canyon Rd., Irvine, CA 92606. KA is a subsidiary of Defendant KC and

24  _____

25  [4] https://static.nhtsa.gov/odi/rcl/2020/RCONL-20V543-0565.pdf (last accessed
    March 17, 2023).

26  [5] https://www.hyundai.com/worldwide/en/vehicles (last accessed March 17, 2023);
    https://www.hyundai.com/worldwide/en/onepage/country.us (last accessed March

27  17, 2023).
    [6] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainabil

28  ity/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed
    Aug. 24, 2022).

1    is actively engaged in manufacturing, assembling, marketing, and distributing Kia
2    vehicles sold in the United States.

3        35.    KA's C-Suite executives and employees who are responsible for the
4    manufacture, development, distribution, marketing, sales, customer service, and
5    warranty servicing of Kia vehicles, are located at the company's Irvine headquarters
6    in California. As described in greater detail below, the decisions regarding the
7    marketing and sale of the Vehicles, the development and issuance of safety recalls
8    and product updates, and decisions regarding the disclosure or non-disclosure of the
9    Thief Friendly Design were in whole or substantial part made by KA at its California
10   headquarters.

11       36.    Defendant KC is a South Korean corporation with its headquarters
12   located in Seoul, South Korea.  KC is the parent corporation of KA.

13       37.    KC refers to the U.S. market as "the center of the global auto industry."[7]
14   The United States is KC's most important market for the sale of its "Kia" branded
15   vehicles. For example, in 2017, 21.4% of all vehicles sold by KC were sold in the
16   United States, more than Korea (18.8%), Europe (17.1%), and China (14.3%).[8]

17       38.    KC's website promotes Kia branded vehicles sold by KA in the United
18   States.[9]

19       39.    KA has over 750 dealerships across the United States which serve as its
20   agents to customers, including Plaintiffs' Insureds.[10] For example, KA tells customers
21   that they must "bring their vehicle[s] to the nearest Kia dealership" in order to receive
22   the "enhanced security software" as a purported  remedy for the Thief Friendly
23   Design.[11]

24   _____

[7] 2011 KC Annual Report, available at
25     https://worldwide.kia.com/int/company/ir/archive/annual-report.
[8] 2017 KC Annual Report, available at
26   https://worldwide.kia.com/int/company/ir/archive/annual-report.
[9] *E.g.*, https://worldwide.kia.com/na/sportage (last accessed Aug. 24, 2022).
27 [10] https://www.prnewswire.com/news-releases/kia-america-completes-bestretail-
     sales-year-in-company-history-301713187.html (last accessed March 22, 2023).
28 [11] https://www.cbsnews.com/chicago/news/kia-software-update-auto-theft-crisis/
     (last accessed March 17, 2023).

40.     On information and belief, KA and KC control various details regarding their dealers' operations through various written agreements, such as: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; (iv) providing guidance to dealerships, and dealership personnel as to how to handle customers, including, but not limited to, handling complaints regarding the Thief Friendly Design; and (v) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Vehicles.

41.     HMA and HMC are collectively referred to in this Consolidated Complaint as "Hyundai" unless identified separately.

42.     KA and KC are collectively referred to in this Complaint as "Kia" unless identified separately.

43.     HMA, HMC, KA, and KC are collectively referred to in this Complaint as "Defendants" unless identified separately.

## CLASS PLAINTIFFS

### (Alleged by Class Plaintiffs)

44.     One or more Class Plaintiffs experienced losses due to the Thief Friendly Design in both Kia and Hyundai Vehicles in all 50 states, the District of Columbia, and Puerto Rico. Class Plaintiffs are identified as follows: Church Mutual Insurance Company, S.I.; Acuity, A Mutual Insurance Company; Adirondack Insurance Exchange; Agent Alliance Insurance Company; Allstate County Mutual Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate North American Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; Century-National Insurance Company;

Direct General Insurance Company; Direct General Insurance Company of Mississippi; Direct National Insurance Company; Encompass Floridian Indemnity Company; Encompass Floridian Insurance Company; Encompass Home & Auto Insurance Company; Encompass Indemnity Company; Encompass Independent Insurance Company; Encompass Insurance Company; Encompass Insurance Company of America; Encompass Insurance Company of Massachusetts; Encompass Insurance Company of New Jersey; Encompass Property & Casualty Insurance Company; Encompass Property & Casualty Insurance Company of New Jersey; Esurance Insurance Company; Esurance Insurance Company of New Jersey; Esurance Property & casualty Insurance Company; Imperial Fire & Casualty Insurance Company; Integon Casualty Insurance Company; Integon General Insurance Corporation; Integon Indemnity Corporation; Integon National Insurance Company; Integon Preferred Insurance Company; Mountain Valley Indemnity Company; National Farmers Union Property and Casualty Company; National General Assurance Company; National General Insurance Company; National General Insurance Online, Inc.; National General Premiere Insurance Company; New Jersey Skyland Insurance Association; New South Insurance Company; Safe Auto Insurance Company; Standard Property & Casualty Insurance Company; American Alliance Casualty Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Ohio; American Standard Insurance Company of Wisconsin; Main Street America Protection Insurance Company; NGM Insurance Company; Old Dominion Insurance Company; Permanent General Assurance Corporation; The General Automobile Insurance Company, Inc.; Citizens United Reciprocal Exchange; Erie Insurance Company; Erie Insurance Exchange; Erie Insurance Company of New York; Erie Insurance Property & Casualty Co.; Flagship City Insurance Company; GEICO Advantage Insurance Company; GEICO Casualty Company; GEICO Choice Insurance Company; GEICO County Mutual Company; GEICO General Insurance

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Company; GEICO Indemnity Company; GEICO Secure Insurance Company; GEICO Texas County Mutual Company; Government Employees Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; Alpha Property & Casualty Insurance Company; Charter Indemnity Company; Financial Indemnity Company; Home State County Mutual Insurance Company; Infinity Assurance Insurance Company; Infinity Auto Insurance Company; Infinity Casualty Insurance Company; Infinity County Mutual Insurance Company; Infinity Indemnity Company; Infinity Insurance Company; Infinity Safeguard Insurance Company; Infinity Select Insurance Company; Infinity Standard Insurance Company; Kemper Independence Insurance Company; Merastar Insurance Company; Response Insurance Company; Trinity Universal Insurance; Unitrin Auto and Home Insurance Company; Unitrin County Mutual Insurance Company; Unitrin Direct Insurance Company; Unitrin Direct Property & Casualty Insurance Company; Unitrin Preferred Insurance Company; Unitrin Safeguard Insurance Company; Valley Property & Casualty Insurance Company; Warner Insurance Company; American States Insurance Company; America First Insurance Company; American Economy Insurance Company; American States Preferred Insurance Company; Consolidated Insurance Company; Employers Insurance Company of Wausau; First National Insurance Company of America; General Insurance Company of America; Liberty County Mutual Insurance Company; Liberty Insurance Corporation; Liberty Mutual Fire Insurance Company; Liberty Mutual Insurance Company; Liberty Mutual Mid-Atlantic Insurance Company; Liberty Mutual Personal Insurance Company; Liberty Personal Insurance Company; LM General Insurance Company; LM Insurance Corporation; Montgomery Mutual Insurance Company; Peerless Indemnity Insurance Company; Safeco Insurance Company of America; Safeco Insurance Company of Illinois; Safeco Insurance Company of Indiana; Safeco Insurance Company of Oregon; Safeco National Insurance Company; The First Liberty Insurance Corporation; The

Netherlands Insurance Company; Wausau Underwriters Insurance Company; Allied Property & Casualty Insurance Company; Amco Insurance Company; Colonial County Mutual Insurance Co.; Depositors Insurance Company; Harleysville Insurance Company; Harleysville Insurance Company of New Jersey; Harleysville Insurance Company of New York; Nationwide Affinity Insurance Company of America; Nationwide Agribusiness Insurance Company; Nationwide General Insurance Company; Nationwide Insurance Company of America; Nationwide Mutual Fire Insurance Company; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company; Titan Insurance Company; Victoria Fire & Casualty Company; Victoria Select Insurance Company; New Jersey Indemnity Insurance Company; New Jersey Manufacturers Insurance Company; PEMCO Mutual Insurance Company;  Artisan and Truckers Casualty Company; ASI Select Auto Insurance Corporation; Blue Hill Specialty Insurance Company; Drive Insurance Company f/k/a Progressive West Insurance Company; Drive New Jersey Insurance Company, f/k/a Parkway Insurance Company; Mountain Laurel Assurance Company; National Continental Insurance Company; Progressive Advanced Insurance Company; Progressive American Insurance Company; Progressive Bayside Insurance Company; Progressive Casualty Insurance Company; Progressive Choice Insurance Company; Progressive Classic Insurance Company; Progressive County Mutual Insurance Company; Progressive Direct Insurance Company; Progressive Express Insurance Company; Progressive Freedom Insurance Company; Progressive Garden State Insurance Company f/k/a Salem Insurance; Progressive Gulf Insurance Company; Progressive Hawaii Insurance Corporation; Progressive Marathon Insurance Company; Progressive Max Insurance Company; Progressive Michigan Insurance Company; Progressive Mountain Insurance Company; Progressive New Jersey Insurance Company; Progressive Northern Insurance Company; Progressive Northwestern Insurance Company; Progressive Paloverde Insurance Company; Progressive Preferred Insurance Company; Progressive Premier Insurance Company

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

of Illinois; Progressive Security Insurance Company; Progressive Select Insurance Company; Progressive Southeastern Insurance Company; Progressive Specialty Insurance Company; Progressive Universal Insurance Company; United Financial Casualty Company; General Casualty Insurance Company; General Casualty Company of Wisconsin; Southern Pilot Insurance Company;  Unigard Insurance Company; Root Insurance Company; Root Property & Casualty Insurance Company; Root Lone Star Insurance Agency, Inc.; Milbank Insurance Company; State Automobile Mutual Insurance Company; State Auto Property & Casualty Insurance Company; Garrison Property & Casualty Insurance Company; United Services Automobile Association; USAA Casualty Insurance Company; USAA General Indemnity Company; First Chicago Insurance Company; Old American County Mutual Fire Insurance Company and United Security Health and Casualty Insurance Company.  Class Plaintiffs bring these claims individually and on behalf of all other similarly situated insurance companies that issue and underwrite property and automobile insurance coverage in the United States against Hyundai Motor America, Hyundai Motor Company, Kia America, Inc., and Kia Corporation.  Collectively, Class Plaintiffs have losses due to the Thief Friendly Design in every jurisdiction alleged herein for both Hyundai and Kia vehicles, and as described in greater detail below.

45.    Class Plaintiffs allege damages exceeding 1 billion dollars ($1,000,000,000+).

46.    The principal place of business and state of incorporation of the named Class Plaintiffs is alleged as follows.

47.    Plaintiff, Church Mutual Insurance Company, S.I. is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 3000 Schuster Lane, Merrill, Wisconsin 54452 which, at all times material hereto was engaged in the business of issuing policies of insurance.

48.    Plaintiff, American Alliance Casualty Company is a corporation

organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 2800 South Taylor Drive, Sheboygan, Wisconsin 53081 which, at all times material hereto was engaged in the business of issuing policies of insurance.

49.     Plaintiff, Adirondack Insurance Exchange is an unincorporated reciprocal insurance exchange organized under the law of the state of New York with a principal place of business located 5630 University Parkway, Winston-Salem, North Carolina 27105, which, at all times material hereto was engaged in the business of issuing policies of insurance.

50.     Plaintiff, Agent Alliance Insurance Company is a corporation organized and existing under the laws of the State of Alabama, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

51.     Plaintiff, Allstate County Mutual Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

52.     Plaintiff, Allstate Fire and Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

53.     Plaintiff, Allstate Indemnity Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

54.     Plaintiff, Allstate Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material

1 | hereto was engaged in the business of issuing policies of insurance.

2 |     55.    Plaintiff, Allstate New Jersey Insurance Company is a corporation
3 | organized and existing under the laws of the State of Illinois, with a principal place
4 | of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all
5 | times material hereto was engaged in the business of issuing policies of insurance.

6 |     56.    Plaintiff, Allstate New Jersey Property & Casualty Insurance Company
7 | is a corporation organized and existing under the laws of the State of New Jersey,
8 | with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois
9 | 60062 which, at all times material hereto was engaged in the business of issuing
10 | policies of insurance.

11 |     57.    Plaintiff, Allstate North American Insurance Company is a corporation
12 | organized and existing under the laws of the State of Illinois, with a principal place
13 | of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all
14 | times material hereto was engaged in the business of issuing policies of insurance.

15 |     58.    Plaintiff, Allstate Northbrook Indemnity Company is a corporation
16 | organized and existing under the laws of the State of Illinois, with a principal place
17 | of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all
18 | times material hereto was engaged in the business of issuing policies of insurance.

19 |     59.    Plaintiff, Allstate Property & Casualty Insurance Company is a
20 | corporation organized and existing under the laws of the State of Illinois, with a
21 | principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062
22 | which, at all times material hereto was engaged in the business of issuing policies of
23 | insurance.

24 |     60.    Plaintiff, Century-National Insurance Company is a corporation
25 | organized and existing under the laws of the State of California, with a principal place
26 | of business located at 5630 University Parkway, Winston-Salem, North Carolina
27 | 27105 which, at all times material hereto was engaged in the business of issuing
28 | policies of insurance.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

61.     Plaintiff, Direct General Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 1281 Murfreesboro Road, Nashville, Tennessee 37217 which, at all times material hereto was engaged in the business of issuing policies of insurance.

62.     Plaintiff, Direct General Insurance Company of Mississippi is a corporation organized and existing under the laws of the State of Mississippi, with a principal place of business located at 1281 Murfreesboro Road, Nashville, Tennessee 37217 which, at all times material hereto was engaged in the business of issuing policies of insurance.

63.     Plaintiff, Direct National Insurance Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

64.     Plaintiff, Encompass Floridian Indemnity Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

65.     Plaintiff, Encompass Floridian Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

66.     Plaintiff, Encompass Home & Auto Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

67.     Plaintiff, Encompass Indemnity Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business

located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

68.     Plaintiff, Encompass Independent Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

69.     Plaintiff, Encompass Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

70.     Plaintiff, Encompass Insurance Company of America is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

71.     Plaintiff, Encompass Insurance Company of Massachusetts is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

72.     Plaintiff, Encompass Insurance Company of New Jersey is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

73.     Plaintiff, Encompass Property & Casualty Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

74.     Plaintiff, Encompass Property & Casualty Insurance Company of New

Jersey is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

75.    Plaintiff, Esurance Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insuranc.

76.    Plaintiff, Esurance Insurance Company of New Jersey is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

77.    Plaintiff, Esurance Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance

78.    Plaintiff, Imperial Fire & Casualty Insurance Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

79.    Plaintiff, Integon Casualty Insurance Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

80.    Plaintiff, Integon General Insurance Corporation is a corporation

organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

81.    Plaintiff, Integon Indemnity Corporation is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

82.    Plaintiff, Integon National Insurance Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

83.    Plaintiff, Integon Preferred Insurance Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

84.    Plaintiff, Mountain Valley Indemnity Company is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

85.    Plaintiff, National Farmers Union Property & Casualty Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business

of issuing policies of insurance.

86.   Plaintiff, National General Assurance Company is a corporation organized and existing under the laws of the State of Missouri, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

87.   Plaintiff, National General Insurance Company is a corporation organized and existing under the laws of the State of Missouri, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

88.   Plaintiff, National General Insurance Online, Inc. is a corporation organized and existing under the laws of the State of Missouri, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

89.   Plaintiff, National General Premiere Insurance Company is a corporation organized and existing under the laws of the State of California, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

90.   Plaintiff, New Jersey Skylands Insurance Association is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

91.   Plaintiff, New South Insurance Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

92.     Plaintiff, Safe Auto Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 4 Easton Oval, Columbus, Ohio 43219 which, at all times material hereto was engaged in the business of issuing policies of insurance.

93.     Plaintiff, Standard Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

94.     Plaintiff, American Alliance Casualty Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 8725 West Higgins Road, Suite 725, Chicago, Illinois 60631 which, at all times material hereto was engaged in the business of issuing policies of insurance.

95.     Plaintiff, American Family Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873, which, at all times material hereto was engaged in the business of issuing policies of insurance.

96.     Plaintiff, American Family Mutual Insurance Company, S.I., is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873 which, at all times material hereto was engaged in the business of issuing policies of insurance.

97.     Plaintiff, American Standard Insurance Company of Ohio, is a

corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873 which, at all times material hereto was engaged in the business of issuing policies of insurance.

98.    Plaintiff, American Standard Insurance Company of Wisconsin, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873 which, at all times material hereto was engaged in the business of issuing policies of insurance.

99.    Plaintiff, Main Street America Protection Insurance Company is a corporation organized and existing under the laws of the State of Florida, with a principal place of business located at 4601 Touchton Road East, Ste. 3400, Jacksonville, Florida 32246 which, at all times material hereto was engaged in the business of issuing policies of insurance.

100.   Plaintiff, NGM Insurance Company, is a corporation organized and existing under the laws of the State of Florida, with a principal place of business located at 4601 Touchton Road East, Ste. 3400, Jacksonville, Florida 32246 which, at all times material hereto was engaged in the business of issuing policies of insurance.

101.   Plaintiff, Old Dominion Insurance Company is a corporation organized and existing under the laws of the State of Florida, with a principal place of business located at 4601 Touchton Road East, Ste. 3400, Jacksonville, Florida 32246 which, at all times material hereto was engaged in the business of issuing policies of insurance.

102.   Plaintiff, Permanent General Assurance Corporation is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 2636 Elm Hill Pike, Nashville, Tennessee 37214 which, at all times material hereto was engaged in the business of issuing policies of insurance.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

103. Plaintiff, The General Automobile Insurance Company, Inc. is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 2636 Elm Hill Pike, Nashville, Tennessee 37214 which, at all times material hereto was engaged in the business of issuing policies of insurance.

104. Plaintiff, Citizens United Reciprocal Exchange is an unincorporated reciprocal insurance exchange with a principal place of business located at 214 Carnegie Center, Suite 101, Princeton, New Jersey 08540, which, at all times material hereto was engaged in the business of issuing policies of insurance.

105. Plaintiff, Erie Insurance Company is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

106. Plaintiff, Erie Insurance Exchange is an unincorporated reciprocal exchange with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

107. Plaintiff, Erie Insurance Company of New York is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

108. Plaintiff, Erie Insurance Property & Casualty Co. is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

109. Plaintiff, Flagship City Insurance Company is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

110.   Plaintiff, GEICO Advantage Insurance Company is a corporation organized and existing under the laws of the State of Nebraska, with a principal place of business located at 5260 Western Avenue, Chevy Chase, Maryland 20815, which, at all times material hereto was engaged in the business of issuing policies of insurance.

111.   Plaintiff, GEICO Casualty Company is a corporation organized and existing under the laws of the State of Nebraska, with a principal place of business located at 5260 Western Avenue, Chevy Chase, Maryland 20815, which, at all times material hereto was engaged in the business of issuing policies of insurance.

112.   Plaintiff, GEICO Choice Insurance Company is a corporation organized and existing under the laws of the State of Nebraska, with a principal place of business located at 5260 Western Avenue, Chevy Chase, Maryland 20815, which, at all times material hereto was engaged in the business of issuing policies of insurance.

113.   Plaintiff, GEICO County Mutual Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 2280 N. Greenville Ave., Richardson, Texas 75082, which, at all times material hereto was engaged in the business of issuing policies of insurance.

114.   Plaintiff, GEICO General Insurance Company is a corporation organized and existing under the laws of the State of Nebraska, with a principal place of business located at 5260 Western Avenue, Chevy Chase, Maryland 20815, which, at all times material hereto was engaged in the business of issuing policies of insurance.

115.   Plaintiff, GEICO Indemnity Company is a corporation organized and existing under the laws of the State of Nebraska, with a principal place of business located at One GEICO Plaza, Washington, D.C., 20076, which, at all times material hereto was engaged in the business of issuing policies of insurance.

116.   Plaintiff, GEICO Secure Insurance Company is a corporation organized

and existing under the laws of the State of Nebraska, with a principal place of business located at 5260 Western Avenue, Chevy Chase, Maryland 20815, which, at all times material hereto was engaged in the business of issuing policies of insurance.

117. Plaintiff, GEICO Texas County Mutual Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 2280 N. Greenville Ave., Richardson, Texas 75082, which, at all times material hereto was engaged in the business of issuing policies of insurance.

118. Plaintiff, Government Employees Insurance Company is a corporation organized and existing under the laws of the State of Nebraska, with a principal place of business located at One GEICO Plaza, Washington, D.C., 20076, which, at all times material hereto was engaged in the business of issuing policies of insurance.

119. Plaintiff, Horace Mann Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 1 Horace Mann Plaza, Springfield, Illinois 62715 which, at all times material hereto was engaged in the business of issuing policies of insurance.

120. Plaintiff, Horace Mann Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 1 Horace Mann Plaza, Springfield, Illinois 62715 which, at all times material hereto was engaged in the business of issuing policies of insurance.

121. Plaintiff, Teachers Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 1 Horace Mann Plaza, Springfield, Illinois 62715 which, at all times material hereto was engaged in the business of issuing policies of insurance.

122. Plaintiff, Alpha Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 8360 LBJ Freeway, Suite 400, Dallas, Texas 75423, which, at all times material hereto was engaged in the business of issuing

policies of insurance.

123.   Plaintiff, American Access Casualty Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 2211 Butterfield Road, Downers Grove, Illinois 60515, which, at all times material hereto was engaged in the business of issuing policies of insurance.

124.   Plaintiff, Charter Indemnity Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 8360 LBJ Freeway, Suite 400, Dallas, Texas 75423, which, at all times material hereto was engaged in the business of issuing policies of insurance.

125.   Plaintiff, Financial Indemnity Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 8360 LBJ Freeway, Suite 400, Dallas, Texas 75423, which, at all times material hereto was engaged in the business of issuing policies of insurance.

126.   Plaintiff, Home State County Mutual Insurance Company, is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 4315 Lake Shore Drive, Suite J, Waco, Texas 76710 which, at all times material hereto was engaged in the business of issuing policies of insurance.

127.   Plaintiff, Infinity Assurance Insurance Company, is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

128.   Plaintiff, Infinity Auto Insurance Company, is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

129.   Plaintiff, Infinity Casualty Insurance Company, is a corporation

organized and existing under the laws of the State of Ohio, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

130.   Plaintiff, Infinity County Mutual Insurance Company, is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

131.  Plaintiff, Infinity Indemnity Insurance Company, is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204, which, at all times material hereto was engaged in the business of issuing policies of insurance.

132.   Plaintiff, Infinity Insurance Company, is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

133.  Plaintiff, Infinity Safeguard Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204  which, at all times material hereto was engaged in the business of issuing policies of insurance.

134.   Plaintiff, Infinity Select Insurance Company, is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

135.  Plaintiff, Infinity Standard Insurance Company, is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of

insurance.

136. Plaintiff, Kemper Independence Insurance Company, is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida which, at all times material hereto was engaged in the business of issuing policies of insurance.

137. Plaintiff, Merastar Insurance Company, is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 200 Randolph Street, Chicago, Illinois 60601 which, at all times material hereto was engaged in the business of issuing policies of insurance.

138. Plaintiff, Response Insurance Company, is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 200 Randolph Street, Chicago, Illinois 60601 which, at all times material hereto was engaged in the business of issuing policies of insurance.

139. Plaintiff, Trinity Universal Insurance, is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida 32258 which, at all times material hereto was engaged in the business of issuing policies of insurance.

140. Plaintiff, Unitrin Auto and Home Insurance Company is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida 32258 which, at all times material hereto was engaged in the business of issuing policies of insurance.

141. Plaintiff, Unitrin County Mutual Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 8360 LBJ Freeway, Suite 400, Dallas, Texas 75243 which, at all times material hereto was engaged in the business of issuing policies of insurance.

142. Plaintiff, Unitrin Direct Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business

located at 200 Randolph Street, Chicago, Illinois 60601 which, at all times material hereto was engaged in the business of issuing policies of insurance.

143.   Plaintiff, Unitrin Direct Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 200 Randolph Street, Chicago, Illinois 60601 which, at all times material hereto was engaged in the business of issuing policies of insurance.

144.   Plaintiff, Unitrin Preferred Insurance Company is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida 32258 which, at all times material hereto was engaged in the business of issuing policies of insurance.

145.   Plaintiff, Unitrin Safeguard Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida 32258 which, at all times material hereto was engaged in the business of issuing policies of insurance.

146.   Plaintiff, Valley Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida 32258 which, at all times material hereto was engaged in the business of issuing policies of insurance.

147.   Plaintiff, Warner Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 200 East Randolph Street, Chicago, Illinois 60601, which, at all times material hereto was engaged in the business of issuing policies of insurance.

148.   Plaintiff, American States Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business

located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

149.   Plaintiff, America First Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

150.   Plaintiff, American Economy Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

151.   Plaintiff, American States Preferred Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

152.   Plaintiff, Consolidated Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

153.   Plaintiff, Employers Insurance Company of Wausau is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

154.   Plaintiff, First National Insurance Company of America is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

155.   Plaintiff, General Insurance Company of America is a corporation

organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

156.   Plaintiff, Liberty County Mutual Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

157.   Plaintiff, Liberty Insurance Corporation is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

158.   Plaintiff, Liberty Mutual Fire Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

159.   Plaintiff, Liberty Mutual Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

160.   Plaintiff, Liberty Mutual Mid-Atlantic Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

161.   Plaintiff, Liberty Mutual Personal Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal

place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

162. Plaintiff, Liberty Personal Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

163. Plaintiff, LM General Insurance Company is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

164. Plaintiff, LM Insurance Corporation is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

165. Plaintiff, Montgomery Mutual Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

166. Plaintiff, Peerless Indemnity Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

167. Plaintiff, Safeco Insurance Company of America is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which,

at all times material hereto was engaged in the business of issuing policies of insurance.

168.   Plaintiff, Safeco Insurance Company of Illinois is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

169.   Plaintiff, Safeco Insurance Company of Indiana is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

170.   Plaintiff, Safeco Insurance Company of Oregon is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

171.   Plaintiff, Safeco National Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

172.   Plaintiff, The First Liberty Insurance Corporation is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

173.   Plaintiff, The Netherlands Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

174.   Plaintiff, Wausau Underwriters Insurance Company is a corporation

organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

175.   Plaintiff, Allied Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

176.   Plaintiff, Amco Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

177.   Plaintiff, Colonial County Mutual Insurance Co. is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

178.   Plaintiff, Depositors Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

179.   Plaintiff, Harleysville Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

180.   Plaintiff, Harleysville Insurance Company of New Jersey is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

policies of insurance.

181. Plaintiff, Harleysville Insurance Company of New York is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

182. Plaintiff, Nationwide Affinity Insurance Company of America is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

183. Plaintiff, Nationwide Agribusiness Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

184. Plaintiff, Nationwide General Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

185. Plaintiff, Nationwide Insurance Company of America is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

186. Plaintiff, Nationwide Mutual Fire Insurance Company was a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance. Nationwide Mutual Fire Insurance Company merged into Plaintiff Nationwide Mutual Insurance Company as of January 1, 2023.

187.   Plaintiff, Nationwide Mutual Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

188.   Plaintiff, Nationwide Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

189.   Plaintiff, Titan Insurance Company is a corporation organized and existing under the laws of the State of Michigan, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

190.   Plaintiff, Victoria Fire & Casualty Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

191.   Plaintiff, Victoria Select Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

192.   Plaintiff, New Jersey Indemnity Insurance Company is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 301 Sullivan Way, West Trenton, New Jersey 08628 which, at all times material hereto was engaged in the business of issuing policies of insurance.

193.   Plaintiff, New Jersey Manufacturers Insurance Company is a corporation organized and existing under the laws of the State of New Jersey, with a principal

place of business located at 301 Sullivan Way, West Trenton, New Jersey 08628 which, at all times material hereto was engaged in the business of issuing policies of insurance.

194. Plaintiff, PEMCO Mutual Insurance Company, is a corporation organized and existing under the laws of the State of Washington, with a principal place of business located at 1300 Dexter Avenue North, Seattle, Washington 98109 which, at all times material hereto was engaged in the business of issuing policies of insurance.

195. Plaintiff, Artisan and Truckers Casualty Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

196. Plaintiff, ASI Select Auto Insurance Corporation is a corporation organized and existing under the laws of the State of California, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

197. Plaintiff, Blue Hill Specialty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

198. Plaintiff, Drive Insurance Company f/k/a Progressive West Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

199.   Plaintiff, Drive New Jersey Insurance Company f/k/a Parkway Insurance Company is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

200.   Plaintiff, Mountain Laurel Assurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

201.   Plaintiff, National Continental Insurance Company is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

202.   Plaintiff, Progressive Advanced Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

203.   Plaintiff, Progressive American Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

204.   Plaintiff, Progressive Bayside Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

205.   Plaintiff, Progressive Casualty Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of

business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

206. Plaintiff, Progressive Choice Insuranc Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

207. Plaintiff, Progressive Classic Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

208. Plaintiff, Progressive County Mutual Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

209. Plaintiff, Progressive Direct Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

210. Plaintiff, Progressive Express Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

211. Plaintiff, Progressive Freedom Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

212.   Plaintiff, Progressive Garden State Insurance Company f/k/a Salem Insurance is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

213.   Plaintiff, Progressive Gulf Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

214.   Plaintiff, Progressive Hawaii Insurance Corp is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

215.   Plaintiff, Progressive Marathon Insurance Company is a corporation organized and existing under the laws of the State of Michigan, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

216.   Plaintiff, Progressive Max Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

217.   Plaintiff, Progressive Michigan Insurance Company is a corporation organized and existing under the laws of the State of Michigan, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

218.   Plaintiff, Progressive Mountain Insurance Company is a corporation

organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

219.   Plaintiff, Progressive New Jersey Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

220.   Plaintiff, Progressive Northern Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

221.   Plaintiff, Progressive Northwestern Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

222.   Plaintiff, Progressive Paloverde Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143. which, at all times material hereto was engaged in the business of issuing policies of insurance.

223.   Plaintiff, Progressive Preferred Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

224.   Plaintiff, Progressive Premier Insurance Company of Illinois is a corporation organized and existing under the laws of the State of Ohio, with a

principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

225. Plaintiff, Progressive Security Insurance Company is a corporation organized and existing under the laws of the State of Louisiana, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

226. Plaintiff, Progressive Select Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

227. Plaintiff, Progressive Southeastern Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

228. Plaintiff, Progressive Specialty Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

229. Plaintiff, Progressive Universal Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

230. Plaintiff, United Financial Casualty Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business

located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

231.   Plaintiff, General Casualty Insurance Company, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

232.   Plaintiff, General Casualty Company of Wisconsin, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

233.   Plaintiff, Southern Pilot Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

234.   Plaintiff, Unigard Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

235.   Plaintiff, Root Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 80 E. Rich St., Ste. 500, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

236.   Plaintiff, Root Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 80 E. Rich St., Ste. 500, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

237.   Plaintiff, Root Lone Star Insurance Agency, Inc., the Managing General Agent for Redpoint County Mutual Insurance Company, is a corporation organized

and existing under the laws of the State of Texas, with a principal place of business located at 13215 Bee Cave Parkway, Suite B150, Austin, Texas 78738 which, at all times material hereto was engaged in the business of issuing policies of insurance.

238.    Plaintiff, Milbank Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at 518 East Broad Street, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

239.    Plaintiff, State Automobile Mutual Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 518 East Broad Street, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

240.    Plaintiff, State Auto Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at 518 East Broad Street, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

241.    Plaintiff, Garrison Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288 which, at all times material hereto was engaged in the business of issuing policies of insurance.

242.    Plaintiff, United Services Automobile Association is an unincorporated reciprocal exchange organized and existing under the laws of the State of Texas, with a principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288 which, at all times material hereto was engaged in the business of issuing policies of insurance.

243.    Plaintiff, USAA Casualty Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business

located at 9800 Fredericksburg Road, San Antonio, Texas 78288 which, at all times material hereto was engaged in the business of issuing policies of insurance.

244.   Plaintiff, USAA General Indemnity Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288 which, at all times material hereto was engaged in the business of issuing policies of insurance.

245.   Plaintiff, First Chicago Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 6640 South Cicero Avenue, Bedford Park, Illinois 60638, which, at all times material hereto was engaged in the business of issuing policies of insurance.

246.   Plaintiff, Old American County Mutual Fire Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 14675 Dallas Parkway, Suite 500, Dallas, Texas 75254 which, at all times material hereto was engaged in the business of issuing policies of insurance.

247.   Plaintiff, United Security Health and Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 6640 South Cicero Avenue, Bedford Park, Illinois 60638 which, at all times material hereto was engaged in the business of issuing policies of insurance.

## JURISDICTION AND VENUE

### (Alleged by All Plaintiffs)

248.   This Court has general personal jurisdiction over Defendants because they conduct substantial business in this judicial district, and they intentionally and purposefully placed the Vehicles that are the subject of this action into the stream of commerce within California and elsewhere in the United States.

249.   The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) of the Class Action Fairness Act of 2005 as the amount in controversy

exceeds $5 million, exclusive of interest and costs, at least one member of the class is a citizen of a state different from each of the named defendants, and the number of members of the proposed class exceeds 100.  This Court has supplemental jurisdiction over the state court claims pursuant to 28 U.S.C. § 1367.

250.   This Court otherwise has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 2310(d) because: a) each of Plaintiffs' claims exceed $25 in value; b) the total amount in controversy exceeds $50,000; and c) the number of named Class Plaintiffs exceeds 100.

251.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as all Defendants do substantial business in this judicial district, including the selling of the Vehicles described in this Complaint. Further, HMA and KA are headquartered in California.

## FACTS COMMON TO ALL CAUSES OF ACTION

### (Alleged by All Plaintiffs)

**A.**   **Hyundai and Kia Became One of The Most Popular Automakers In The United States By Promoting The Safety, Quality, and Reliability of Their Vehicles**

252.   HMC was established in South Korea in 1967 and started selling vehicles in the United States in 1986 through its subsidiary HMA. Since that time, HMC has become one of the largest automakers in the United States and around the world.

253.   KC was founded in 1944 as a manufacturer of bicycles and motorcycles and is currently Korea's oldest motor vehicle manufacturer. KA was formed in 1992 when KC first imported its vehicles into the United States.

254.   In 1999, HMC announced that it acquired a controlling interest in KC, and that KC would obtain an ownership interest in approximately twenty-two (22) HMC subsidiaries. In subsequent years, HMC divested a portion of its interest and currently controls approximately 34% of KC.

255.   Through its network of more than 800 dealerships nationwide, HMA

sells and services its vehicles, including the Hyundai Elantra (Hyundai's bestselling model), Hyundai Santa Fe, Hyundai Tucson, and Hyundai Accent.

256.   KA similarly sells and services a complete line of vehicles in the U.S. through its own network of over 700 dealers.

257.   Within the United States alone, HMA sold an average of 625,264 vehicles per year since 2006, approximately 4.13% of the total U.S. market.[12]

258.   Over the same time period, KA sold an average of 500,351 vehicles per year, or approximately 3.3% of the U.S. market.[13]

259.   Today, over half the cars HMC sells in the United States are designed and manufactured domestically at HMA's facilities, including at its "design, research, and testing grounds in California" near its corporate headquarters.[14] In total, HMC and HMA employ approximately 5,000 people at these facilities, and an additional 20,000 employees at U.S. dealerships.

260.   Hyundai and Kia branded vehicles incorporate many common components and design features.  Furthermore, the same group of engineers work on Hyundai and Kia vehicles at Hyundai-KA Technical Center, Inc. ("HATCI").[15] HATCI serves as an "authorized representative" for HMC, HMA, KC, and KA when dealing with NHTSA in connection with various Safety Standards.

261.   On HMC's webpage devoted to promoting its vehicles sold around the world, including those sold by HMA, HMC touts the safety of its vehicles.[16]  HMC advertises that "[f]rom the moment you step into a Hyundai Motor's vehicle, safety surrounds you from all corners at every second, even in places you never imagined."[17]

---

[12] https://carsalesbase.com/us-hyundai/ (last accessed Aug. 24, 2022).
[13] https://carsalesbase.com/us-kia/ (last accessed Aug. 25, 2022).
[14] https://www.hyundainews.com/en-us/about-us (last accessed Aug. 26, 2022).
[15] https://www.forbes.com/sites/jimhenry/2013/05/31/balancing-act-hyundaiand-kia-share-products-under-the-skin-but-must-avoid-blurring-identities/?sh=210585421c7a (last accessed Aug. 26, 2022); https://www.hyundainews.com/enus/releases/398 (last accessed July 14, 2021).
[16] *E.g.*, https://www.hyundai.com/worldwide/en/suv/tucson-2021/safety (last accessed Aug. 24, 2022).
[17] https://www.hyundai.com/worldwide/en/company/innovation/safety/research (last accessed Aug. 24, 2022).

262.   HMC touts its continued improvement of quality and safety measures and how it conducts extensive post-sale monitoring of its vehicles, and it does so because HMC knows that safety and quality are material to consumers:[18]

> *[W]e continue upgrading overall quality and safety systems not only by promoting preemptive quality and safety measures from the vehicle development stage, but also by preventing any significant problems afterward through early detection, early improvement and early after-sales actions.*
>
> *In particular, we will establish a sustainable safety management system designed to maximize customer satisfaction and strengthen trust by developing quality and safety training programs, operating quality and safety reporting centers, analyzing safety information, and establishing safety test sites.*

263.   Likewise, KA advertises that it "believe[s] in the outstanding quality and durability of every new Kia that rolls off the assembly line" and that "[f]rom design to technology, materials to safety features, Kia continues to innovate[.]"[19]

264.   KA states on its website that it works "tirelessly to ensure [its] vehicle safety features are designed to help [its] drivers handle or avoid the unexpected."[20] KA claims that "Kia engineers are passionate about producing vehicles that are exceptionally well designed and reliable. Their dedication to quality and attention to detail give Kia the confidence to back every model with an industry leading warranty program."[21]

---

[18]https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed Aug. 24, 2022).

[19] https://www.kia.com/us/en/why-kia (last accessed Aug. 26, 2022).

[20] https://www.kia.com/us/en/why-kia (last accessed March 22, 2023).

[21] https://manualzz.com/doc/7136122/kia-2015-sorento-brochure---dealer-e (last accessed Aug. 26, 2022).

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

265.   KA's Warranty and Consumer Information Manual and promotional materials for Kia Vehicles similarly promote its purported dedication to safety.

266.   Defendants also affix to each Vehicle a VIN plate containing an express warranty that each vehicle made by the defendants "complies with all applicable motor vehicle safety standards. In addition, Defendants expressly warranted on the VIN plates affixed to each vehicle, and in other communications, that each vehicle made by the Defendants complies with all theft prevention standards that were in effect on the date of manufacture. On information and belief, the Defendants extended these express warranties for every Vehicle.  Below is a sample VIN plate with the Defendants' express warranties affixed by KC to a 2015 Kia Optima Vehicle prior to its sale in the United States, in which it represents that "this vehicle conforms to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture…":



## B.   For Over Fifty Years, Auto Manufacturers Have Known That Thefts Pose a Serious Safety Risk

267.   It is well-established that auto thefts pose a serious safety risk to vehicle owners and bystanders. In 1966, Congress enacted the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), 49 U.S.C. § 30101 *et seq.*, "to reduce traffic

accidents and deaths and injuries resulting from traffic accidents" and "to prescribe motor vehicle safety standards."

268.   In 1968, the DOT promulgated a new Safety Standard No. 114 (FMVSS No. 114) titled "Theft Protection; Passenger Cars," pursuant to the Safety Act. *See* 33 Fed. Reg. 6,471 (Apr. 27, 1968).

269.   FMVSS No. 114 was implemented after it was "demonstrated that ***stolen cars constitute a major hazard to life and limb on the highways.***" *Id.* (emphasis added). As part of its evaluation of FMVSS No. 114, the DOT found that "[t]he evidence shows that cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals." *Id.*

270.   Among the evidence used in support of this conclusion was a 1968 study conducted by the Department of Justice ("DOJ"). The DOJ found that a substantially significant number of stolen vehicles would result in personal injury accidents:

> [T]here were an estimated 94,000 stolen cars involved in accidents in 1966, and more than 18,000 of these accidents resulted in injury to one or more people. On a proportionate basis, 18.2 percent of the stolen cars became involved in accidents, and 19.6 percent of the stolen-car accidents resulted in personal injury. The same study predicted that automobile thefts in 1967 total about 650,000; about 100,000 of these stolen cars could be expected to become involved in highway accidents. ***Comparing these figures with statistics for vehicles which are not stolen, the approximate rate for stolen cars would be some 200 times the normal accident rate for other vehicles***.

*Id.* Thus it is clear that FMVSS No. 114 was promulgated for safety.

271.   The DOJ survey found that "[t]he number of car thieves who start cars

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

with so-called 'master keys' and devices which bypass the lock is … large enough to produce a significant safety hazard." *Id.* Accordingly, FMVSS No. 114 was explicitly designed to "defeat" this method for stealing a vehicle and requires "[a] large number of locking-system combinations and a steering or self-mobility lock." *Id.*

272. While promulgating FMVSS No. 114, the DOT rejected several comments in opposition to the Standard which argued that "since any locking system, no matter how it is constructed, can be defeated by persons possessing sufficient skill, equipment, and tenacity, provisions for ensuring removal of ignition keys would be futile because a thief need not make use of a key." *Id.* In particular, the DOT relied on the DOJ study which found that "the large majority of car thieves are amateurs, almost half of whom are engaged in so-called 'joy-riding'" and that "most" of the thieves are juveniles. *Id.* This finding was a prescient warning to automobile manufacturers and just as relevant fifty years later given the plague of thefts by joy-riding juveniles of Defendants' Vehicles.

273. Given the dramatic increase in the accident rate caused by stolen vehicles, the DOT determined that "***a reduction in the incidence of auto theft would make a substantial contribution to motor vehicle safety***. It would not only reduce the number of injuries and deaths among those who steal cars, it would also protect the many innocent members of the public who are killed and injured by stolen cars each year." *Id.* (emphasis added). Further, the DOT "concluded that a standard that would reduce the incidence of unauthorized use of cars meets the need for motor vehicle safety" and rejected the contention that the Theft Protection rules are "not related to improving motor vehicle safety." *Id.*

274. The first iteration of FMVSS No. 114, Theft Protection; Passenger Cars, stated in relevant part:

> S1. *Purpose and scope*. This standard specifies requirements for theft protection to reduce the incidence of accidents resulting from unauthorized use.

S2. *Application*. This standard applies to passenger cars.

S4. Requirements.

**S4.1 Each passenger car shall have a key-locking system that, whenever the key is removed, will prevent- (a) Normal activation of the car's engine or other main source of motive power; and (b) Either steering or self-mobility of the car, or both.**

S4.2 The prime means for deactivating the car's engine or other main source of motive power shall not activate the deterrent required by S4.1(b).

S4.3 The number of different combinations of the key locking systems required by S4.1 of each manufacturer shall be at least 1,000, or a number equal to the number of passenger cars manufactured by such manufacturer, whichever is less.

S4.4 A warning to the driver shall be activated when the key required by S4.1 has been left in the locking system and the driver's door is opened.

*Id.* The standard became effective on January 1, 1970. *See id.*

275.   In the half century since the DOT recognized the safety risks posed by auto thefts, the agency has continued to monitor the safety risks posed by auto thefts and modernize its rules designed to prevent auto thefts.

276.   In 1984, Congress enacted the Motor Vehicle Theft Law Enforcement Act (the "Theft Act"), 49 U.S.C. 33101, *et seq*., which directs NHTSA to establish theft prevention standards for passenger vehicles. *See* 81 Fed. Reg. 66,833, 66,834 (Sept. 29, 2016). Pursuant to the Theft Act, NHTSA implemented 49 C.F.R. Part 541, which requires manufacturers of designated high-theft passenger car lines to inscribe or affix the Vehicle Identification Number (VIN) onto the engine, the transmission,

and major body parts. Each vehicle in a high-theft line must have its major parts and major replacement parts marked unless the vehicle line is granted an exemption from the parts marking requirements ("PMR"). A manufacturer may petition for a PMR exemption when it plans to install a standard, and effective anti-theft device on the entire line. *See* 49 C.F.R. §§ 543.1, *et seq*. The agency must determine that the anti-theft device to be installed on the line is likely to be as effective in reducing and deterring motor vehicle theft as parts-marking.

277.   In 1992, Congress enacted the Anti Car Theft Act (Pub. L. No. 102- 519, codified at 49 U.S.C. chapter 331), which expanded the PMR to include multipurpose passenger vehicles and certain light duty trucks. On April 6, 2004, the Federal Motor Vehicle Theft Prevention Standard was extended to include all passenger cars, multipurpose passenger vehicles with a gross vehicle weight rating (GVWR) of 6,000 pounds or less, all light-duty trucks (LDTs) determined to be high-theft (with a gross vehicle weight rating of 6,000 pounds or less), and all low theft LDTs with major parts that are interchangeable with a majority of the covered major parts of those passenger motor vehicle lines subject to the theft prevention standard. 69 Fed. Reg. 17,960 (Apr. 6, 2004).

278.   In 2006, NHTSA stated that its "safety standard on theft protection [FMVSS No. 114] specifies vehicle performance requirements intended to reduce the incidence of crashes resulting from theft and accidental rollaway of motor vehicles." *See* 71 Fed. Reg. 17,752 (Apr. 7, 2006). NHTSA made clear that "the standard sought to ensure that the vehicle could not be easily operated without the key" and that "thieves… could [not] bypass the ignition lock." *Id*. at 17,752-53.

279.   The ignition lock (also referred to as an ignition cylinder or lock cylinder) is the portion of the ignition assembly where the key is inserted. The ignition lock prevents the ignition switch, which is located behind the ignition lock, from turning to start the vehicle without the right key.

280.   If the correct key is inserted, small actuators in the lock cylinder will

match up with the key and allow the driver to turn it; a process that, in turn, rotates the vehicle's ignition switch, thereby starting the vehicle.

281.   FMVSS No. 114 is currently codified as 49 C.F.R. 571.114, which provides:

> **S1. Scope**. This standard specifies vehicle performance requirements intended to reduce the incidence of crashes resulting from theft and accidental rollaway of motor vehicles.
>
> **S2. Purpose**. The purpose of this standard is to decrease the likelihood that a vehicle is stolen, or accidentally set in motion.
>
> **S3. Application**. This standard applies to all passenger cars, and to trucks and multipurpose passenger vehicles with a GVWR of 4,536 kilograms (10,000 pounds) or less. However, it does not apply to walk-in van-type vehicles. Additionally, paragraph S5.3 of this standard applies to all motor vehicles, except trailers and motorcycles, with a GVWR of 4,536 kilograms (10,000 pounds) or less.
>
> **S4. Definitions**.
>
> *Combination* means a variation of the key that permits the starting system of a particular vehicle to be operated.
>
> *Key* means a physical device or an electronic code which when inserted into the starting system (by physical or electronic means), enables the vehicle operator to activate the engine or motor.
>
> …
>
> *Starting system* means the vehicle system used in conjunction with the key to activate the engine or motor.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

**S5 Requirements**. Each vehicle subject to this standard must meet the requirements of S5.1, S5.2, and S5.3. Open-body type vehicles are not required to comply with S5.1.3.

**S5.1 Theft protection.**

S5.1.1 Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:

(a)    The normal activation of the vehicle's engine or motor; and

(b)    Either steering, or forward self-mobility, of the vehicle, or both.

282.    FMVSS No. 114 is a "self-certification" process.[22] In other words, "NHTSA does not issue type approval certifications and does not certify any motor vehicles or motor vehicle equipment as complying with applicable FMVSS." Instead, NHTSA relies on manufacturers, including Defendants, to accurately report that they are complying with the standard.  The Vehicles, however, clearly do not satisfy FMVSS No. 114.  Defendants, on information and belief, did not comply with their obligations to accurately self-report compliance with FMVSS No. 114.

283.    NHTSA is also required to periodically obtain and publish accurate and reliable theft data. 49 U.S.C. 33104(b)(4) (Designation of high theft vehicle lines and parts). The National Crime Information Center ("NCIC") of the Federal Bureau of Investigation provides this data to NHTSA. The NCIC is a governmental system that receives vehicle theft data from approximately 23,000 criminal justice agencies and other law enforcement authorities throughout the United States. This national data includes the reported thefts of self-insured and uninsured vehicles, not all of which are reported to other data sources.

---

[22] *See* https://www.nhtsa.gov/sites/nhtsa.gov/files/manufacturer_information_march2014.pdf (last accessed March 24, 2023).

284.   In connection with fulfilling its administrative mandate under both the Safety Act and the Theft Act, NHTSA regularly interacts with, seeks comment from, and shares information with, automotive manufacturers and their authorized representatives, including HMA and KA.

**C.   Engine Immobilizers Are an Inexpensive and Proven Means to Dramatically Reduce Auto Theft**

285.   In the fifty years following the codification of FMVSS No. 114, manufacturers have developed a bevy of safety features to comply with the standard. Many of these features would have been inconceivable to drivers in 1968.  However, other design features, including engine immobilizers, were already well-known and were directly contemplated at the time of FMVS No. 114's enactment.

286.   An immobilizer is an anti-theft device that can prevent vehicles from being started unless a verified code is received by a transponder module that controls the engine. *See* 81 Fed. Reg. 66,833 (Sept. 29, 2016). This theft-prevention device thus prevents the vehicle from being "hot-wired" or started by any means other than an authorized key. Engine immobilizers have been described as "simple and low-cost anti-theft device[s]."[23]

287.   Engine immobilizers have become an industry standard component in consumer vehicles across the globe: including in vehicles produced by Defendants.

288.   The very same Vehicles the Defendants sold without the legally required anti-theft equipment in the United States were sold with engine immobilizers in Canada and various other countries in Europe and elsewhere. Defendants made immobilizers available to some purchasers of the defective Vehicles, but only on the condition that those purchasers were willing to pay for expensive upgrades and luxury trim packages.

---

[23] van Ours, Jan C. and Vollaard, Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 14, 2013). CentER Discussion Paper Series No. 2013-004, TILEC Discussion Paper No. 2013-001, available at SSRN: https://ssrn.com/abstract=2202165.

289.    Over the last three decades, as the Defendants themselves have asserted in petitions they filed with NHTSA[24], immobilizers have been proven to be highly effective in dramatically reducing auto theft.

290.    A study conducted in Europe, after immobilizers were mandated, found that the overall rate of auto thefts fell by 46% between 1995 and 2008.[25]On information and belief, this data is known to Defendants. The same study also found that the additional manufacturing costs related to installing an engine immobilizer was as little as approximately $50 per vehicle, and the benefits in terms of prevented thefts are many times higher than the costs of installing the device. The Defendants themselves have asserted in their NHTSA filings that thefts of vehicles equipped with immobilizers decrease car thefts by up to 70%, if not more.[26]  So Defendants have long known that the installation of immobilizers is a cheap and effective means to drastically deter, and reduce thefts while complying with FMVSS No. 114.

291.    Given how effective and relatively inexpensive engine immobilizers are, most automotive regulators around the globe require the installation of the device in new vehicles sold.  This too, is known to Defendants.

292.    In November of 1995, the European Union ("EU") adopted Directive 74/61/EEC, which made installation of an electronic engine immobilizer mandatory in all new passenger cars sold within the EU as of October, 1998.[27]  Australia has required immobilizers in vehicles sold since 2001 and Canada has required immobilizers since 2007. In parts of Australia and Canada, the legislation also extended to the existing car fleet.[28]

293.    NHTSA has repeatedly demonstrated its support for the installation of

---

[24] *See* 72 Fed. Reg. 39,661 (July 19, 2007)
[25] van Ours, Jan C. and Vollaard, Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 31, 2013). CESifo Working Paper Series No. 4092, available at SSRN: https://ssrn.com/abstract=2214895.
[26] *See* 75 Fed. Reg. 1,447, 1,448 (Jan. 11, 2010)
[27] van Ours, Jan C. and Vollaard, Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 31, 2013).
[28] *Id.*

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

immobilizers and has stated that the device complies with FMVSS No. 114. In 2006, ***NHTSA noted that FMVSS No. 114 was promulgated due to the agency's "concern about car thieves who could bypass the ignition lock."*** 71 Fed. Reg. 17,752, 17,753. NHTSA went on to explain how a manufacturer's engine immobilizer satisfied FMVSS No. 114:

> We note that in promulgating FMVSS No. 114, the agency expressed concern about car thieves who could bypass the ignition lock. In response to this concern, the agency decided to require a device, which would prevent either self-mobility or steering even if the ignition lock were bypassed (see 33 FR 4471, April 27, 1968). The engine control module immobilizer described in your letter satisfies the requirements of S4.2(b) because it locks out the engine control module if an attempt is made to start the vehicle without the correct key or to bypass the electronic ignition system. When the engine control module is locked, the vehicle is not capable of forward self-mobility because it is incapable of moving forward under its own power.

*Id.*

294.   Since the introduction of engine immobilizers, the rate of auto thefts has fallen dramatically as demonstrated in the following table published by NHTSA in 2017 and detailing the theft rate in the United States from 1993 through 2014:



Figure 1: Theft Rate Data Trend (MY/CY 1993-2014)

82 Fed. Reg. 28, 246, 28247 (June 21, 2017).

295.   In a 2013 NHTSA report regarding the drop in the vehicle theft rate from 1993 through 2011, NHTSA noted that it "*believes that the theft rate reduction is a result of several factors, including* vehicle parts marking; *the increased use of standard anti-theft devices and other advances in electronic technology (i.e., immobilizers) and theft prevention methods*; increased and improved prosecution efforts by law enforcement organizations; and, increased public awareness which may have contributed to the overall reduction in vehicle thefts." 78 Fed. Reg. 41,016, 41,017 (July 9, 2013).

296.   Studies, of which the Defendants, as car manufacturers, were well aware, conducted by the Highway Loss Data Institute ("HLDI"), similarly found that "vehicle theft losses plunged after immobilizers were introduced."[29]

297.   The National Insurance Crime Bureau ("NICB"), an organization dedicated exclusively to fighting insurance fraud and crime, noted in a 2013 report

---

[29] *See* https://www.iihs.org/news/detail/hyundais-kias-are-easy-targets-amidboom-in-vehicle-thefts (last accessed March 21, 2023).

concerning auto thefts that a reduction in vehicle thefts requires an immobilizer.[30] The NICB put it simply: "[g]enerally speaking, if your vehicle can't be started, it can't be stolen."

298.   A study conducted by HLDI found that immobilizers were standard on 62% of non-Hyundai and Kia vehicles by the introduction of the 2000 model year ("MY") vehicles.[31] By the time 2015MY vehicles were sold, 96% of non-Hyundai and Kia vehicles were equipped with immobilizers. However, only 26% of Hyundai and Kia vehicles were sold with immobilizers as standard equipment. Thus, Defendants are out of step with the industry, and failed to comply with Federal Motor Vehicle Safety Standards for the vast majority of their vehicles. In order for an Insured to have her or his vehicle equipped with mandatory anti-theft protection, Defendants required the Insured to pay additional money and upgrade to a much more expensive options package. In other words, the Defendants only provided mandatory safety equipment if the Insured was forced to pay for expensive, luxury and/or non-essential items.

299.   Many of the vehicles with PMR exemptions are comparably priced to Hyundai and Kia vehicles. For instance, the MSRP for a 2021 Hyundai Elantra ranges from $19,650 to $28,100, and the MSRP for a 2021 Honda Civic, which includes an engine immobilizer, ranges from $21,050 to $28,100.[32]

## D.   The Vehicles Are Thief Friendly, Defective, and Do Not Comply With FMVSS No. 114

300.   As alleged above, the DOT and DOJ found in 1968 that amateur thieves who steal cars to go joyriding make up a significant portion of all auto thefts in America. Moreover, amateur thieves can steal Defendants' Vehicles in seconds using

---

[30] https://www.nicb.org/sites/files/2017-10/2013-Hot-Wheels-Report.pdf (last accessed March 22, 2023).
[31] Highway Loss Data Institute (HLDI) Bulletin Vol. 38, No. 28 (December 2021), available at https://www.iihs.org/news/detail/hyundais-kias-are-easy-targets-amid-boom-in-vehicle-thefts (last accessed March 22, 2023).
[32] https://www.edmunds.com/hyundai/elantra/2021/ (last accessed Aug. 26, 2022).

a USB device or screwdriver.

301.   The Defendants provided anti-theft protection in the form of immobilizers for their more expensive vehicles.  However, for their less expensive Vehicles, the Defendants decided to make and sell these cars with a Thief Friendly Design, only providing anti-theft immobilizer technology if the purchaser paid for expensive and unnecessary trim packages.  Effectively, Kia and Hyundai were telling their customers that they would only get the seatbelt if they paid for leather seats or expensive audio equipment.

302.   Predictably, this defect eventually became common knowledge.  In or around 2020, a group of teenagers in Milwaukee, who dubbed themselves the "Kia Boyz" on social media platforms began to publicize precisely how to take advantage of the Thief Friendly Design to steal the Vehicles in a matter of seconds.

303.   Contrary to Defendants' statements claiming to employ the latest technology and safety features in their Vehicles, the automotive news website *The Drive* noted that the Thief Friendly Design allows thieves to start the engines and steal the Vehicles with "the same trick [used] on a car from the 1980s."[33]

304.   The Vehicles do not comply with FMVSS No. 114 because they do not contain a meaningful anti-theft device, such as an immobilizer or any other effective anti-theft features that prevent the normal activation of the vehicle's engine without a key. Consequently, the Vehicles do not contain starting systems that prevent forward self-mobility of the Vehicles when the thief does not have a key.  Defendants violated FMVSS No. 114, while contravening industry standard practices, and flouting common sense that clearly dictates installation of an immobilizer as a low cost means of complying with FMVS No. 114 to reduce theft and provide customers with an adequate measure of security.  Failing to install an immobilizer, or any comparable method of compliance with FMVS No. 114 meant that vehicle owners could not be

---

[33]https://www.thedrive.com/news/how-thieves-are-stealing-hyundais-and-kiaswith-just-a-usb-cable (last accessed Aug. 26, 2022).

sure that their vehicles would be safe, undamaged, or available to them when required for transport.

**E.      Defendants Knowingly Manufactured and Sold Millions of Vehicles That Are Easily Stolen In Seconds**

305.    After considerable public outcry and scrutiny, in 2022, Defendants slowly began to acknowledge that their Vehicles suffer from the Thief Friendly Design, and therefore, are easily stolen.  For the reasons described below, Defendants knew or should have known of the Defect long before they sold the Vehicles.

306.    On information and belief, each Defendant was aware of the Thief Friendly Design and the safety risk it posed to Vehicle owners and lessees (as well as bystanders), through the following sources, including, but not limited to: (1) their presale testing and Safety Standards self-certification process for the Vehicles; (2) analyses and usage of engine immobilizers in non-Vehicles, their PMR petitions, and usage of engine immobilizers in vehicles sold outside the U.S. market; (3) the practices of peer auto makers; (4) monitoring of Vehicle thefts; and (5) monitoring of customer complaints, dealership records, warranty claims, and replacement parts orders.

307.    Further, on information and belief, given the corporate relationships between Defendants, each of them shared key facts and knowledge about the Thief Friendly Design with each other on an ongoing basis in real time, and that should have notified them of the Thief Friendly Design.

**F.      Defendants Should Have Uncovered the Thief Friendly Design Through the FMVSS Self-certification Process and Pre-sale Testing**

308.    Defendants are experienced in the design and manufacture of consumer vehicles. As experienced manufacturers, Defendants are aware of applicable Safety Standards, including FMVSS No. 114. Under 49 U.S.C. § 30115. Defendants are required to certify that each of their vehicles "complies with applicable motor vehicle safety standards." Defendants offered express warranties that their vehicles complied

1  with anti-theft regulations.

2      309.   On information and belief, Defendants employ consultants and engineers

3  that are knowledgeable of FMVSS No. 114 and who are involved in the design,

4  manufacturing, and testing of the Vehicles prior to sale to ensure compliance with the

5  Safety Standard.

6      310.  HMC states that it conducts "preemptive quality and safety measures

7  from the vehicle development stage."[34]

8      311.  HMC touts its robust Product Quality Management systems, "based on

9  its "quality philosophy of 'producing defect-free vehicles that will never break down'

10  backed by cutting-edge safety technologies:"[35]

11  > **Establishing Quality Management System** Hyundai

12  > seeks to create "customer safety" values by securing leading

13  > quality standards in the global market and strengthening

14  > quality management through technical preventive quality

15  > activities, among other initiatives. We have established a

16  > company-wide integrated quality management system to

17  > satisfy customers' diverse quality and safety requirements,

18  > …..

19

20  > **Quality Management Standards and Techniques**

21  > Hyundai has introduced and applied quality management

22  > techniques to strengthen its market competitiveness on the

23  > basis of "defect-free quality". Our quality management

24  > techniques, aimed at providing customers with vehicles of

25

26  [34]https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed

27  August 24, 2022).
   [35]https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed

28  Aug. 26, 2022).

the very highest quality in all fields, such as R&D, production, sales, and services, are supported by the best experts in each field (Man); optimal equipment (Machine); the best parts (Material); the best method (Method); thorough verification (Measurement); and commitment to defect free quality (Moral). ….. We also make continuous efforts to upgrade quality management standards and criteria based on the data collected and analyzed in quality risk management processes, such as quality checks, case studies, and improvements.

**Preemptive Management of Quality Risks** From the early design stage of new vehicle development, Hyundai preemptively inspects and manages parts suppliers as well as its own production process quality. Based on product drawings, we conduct a comprehensive review of parts in terms of functions, structures, reliability, and durability, while carefully analyzing our own processes and those of suppliers before issuing the final approval, thereby eliminating quality risks throughout production processes in advance. In addition to our own verification of test vehicles, Hyundai relies on the test drive opinions of customers and professional quality organizations to identify major issues and carry out improvement activities in parallel. ***Moreover, Hyundai holds quality inspection meetings on regular basis, and in particular, on the verge of new car models' mass production, reports the quality***

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

*risk assessment results and taken measures to the highest level of management.*

**Quality Risk Assessment – Identification and Improvement** Hyundai has established a control tower devoted to the management of vehicle quality risks in the production process. *Whenever a quality risk is detected from information acquired through statistical process control, periodic inspections, and shipment pass rates, the control tower takes the lead in conducting joint investigations and taking the necessary countermeasures.* Also, in order to prevent quality risks from occurring in the vehicle production process, we take thorough preventive measures, such as process management by suppliers, assessment of quality prevention activities, validation of quality inspection equipment, and reliability testing of parts.…

**Strengthening Quality Verification Capabilities** Hyundai provides annual training on the roles and major tasks involved in securing its pre-manufacturing quality, manufacturing quality, and *market quality as a way to strengthen the verification capability of its overall quality value chain*. …. In addition, we offer expert courses on quality verification in collaboration with external educational institutions to verify new technologies following the transition to electrification and to strengthen

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

the verification of quality issues from the customer's point of view.

312.   Through this testing and as part of their 49 U.S.C. § 30115 self-certification process, Defendants should have uncovered the Thief Friendly Design. Further, on information and belief, Defendants knew their vehicles did not employ any anti-theft measures which satisfied the FMVSS 114.

**G.     Defendants' Specific Knowledge Concerning the Efficacy of Engine Immobilizers and Their Use of Immobilizers in Other Vehicles Should Have Notified Them of the Thief Friendly Design**

313.   Defendants have long been aware of the efficacy of immobilizers and other anti-theft technology that Defendants employ in other vehicles that they make and distribute.

314.   In other countries, HMC and KC sell the very same, or substantially similar, Vehicles with engine immobilizers included as a standard feature. For example, in the 2020 Kia Sportage Owner's Manual for Canada, Kia notes that the "vehicle is equipped with an electronic engine immobilizer system to reduce the risk of unauthorized vehicle use."[36]

315.   Further, Defendants have long understood that immobilizers are effective anti-theft and security devices as demonstrated by Defendants' incorporation of immobilizers both as standard technology in select higher-end models, and as an optional trim-package feature on other models in the United States.

316.   On March 2, 2007, HATCI, acting on behalf of HMA, petitioned NHTSA for a PMR exemption for the Hyundai Azera vehicle line beginning with MY 2008. *See* 72 Fed. Reg. 39,661 (July 19, 2007). In that petition, Hyundai stated that it "will install its passive anti-theft device as standard equipment on the vehicle line. Features of the anti-theft device will include a passive immobilizer consisting of an

---

[36] *See, e.g.,* https://www.destinationkia.com/blogs/1016/wp-content/uploads/2019/07/2020-Kia-Sportage-Owners-Manual.pdf (last accessed Aug. 29, 2022).

EMS (engine control unit), SMARTRA (immobilizer unit), an antenna coil and transponder ignition keys." This form of immobilizer was transponder based, first introduced in 1996, and already standard in Defendants' competitors' vehicles. The petition specifically notes that Hyundai "believes that the GM Pass-Key and Ford Securilock devices contain components that are functionally and operationally similar to its device," which have been shown in theft data from the NCIC to produce "*a clear reduction in vehicle thefts* after the introduction of the GM and Ford devices." *Id.*

317.   On October 22, 2007, HATCI, on behalf of Hyundai, submitted a petition for PMR exemption for its luxury Hyundai Genesis vehicle line beginning with MY 2009. 73 Fed. Reg. 4,304, 4,305 (Jan. 24, 2008). That same day, HATCI submitted a PMR exemption petition on behalf of KC (then known as Kia Motors Corporation) for its luxury Kia Amanti vehicle line beginning with MY 2009. 75 Fed. Reg. 1,447, 1,448 (Jan. 11, 2010).

318.   Like the Azera petition, HATCI stated that Defendants would install a passive immobilizer consisting of an EMS (engine control unit), SMARTRA 3 (immobilizer unit), an antenna coil and transponder ignition keys standard in the vehicle lines. *Id.* In both petitions, HATCI again touted the success of immobilizers in GM and Ford vehicles in reducing auto thefts. *Id.* In particular, HATCI reiterated the same statistics touting immobilizers:

> *[Hyundai and HATCI] provided theft rate data for the Chevrolet Camaro and Pontiac Firebird vehicle lines showing a substantial reduction in theft rate comparing the lines between pre- and post introduction of the Pass-Key device.* [Hyundai and HATCI] also provided "percent reduction" data for theft rates between pre- and postproduction years for the Ford Taurus and Mustang, and Oldsmobile Toronado and Riviera vehicle lines normalized to the three-year average of the Camaro and Firebird pre-

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1
2
3
4
5
6
7
8
9

introduction data. ***[Hyundai and HATCI] stated that the data shows a dramatic reduction of theft rates due to the introduction of devices substantially similar to the [Hyundai and Kia] immobilizer device.*** Specifically, the Taurus, Mustang, Riviera and Toronado vehicle lines showed a ***63, 70, 80 and 58 percent theft rate reduction respectively between pre- and post introduction of immobilizer devices as standard equipment on these vehicle lines***.

10 *Id.*

11  319.   In a petition filed by Hyundai in 2009 for its VI vehicle line, beginning
12 with MY 2011, Hyundai stated it will "install its passive Smart-key Immobilizer
13 device and alarm system (audible and visual) on the VI vehicle line as standard
14 equipment." 75 Fed. Reg. 6,253 (Feb. 8. 2010). In support of its petition, Hyundai
15 relied on an "April 2006 report by JP Research, Inc., which concluded that anti-theft
16 devices were consistently much more effective in reducing thefts when compared to
17 parts marking."

18  320.   In particular, the cited JP Research report found that vehicle lines
19 containing anti-theft devices "***were 70% more effective than parts marking in***
20 ***deterring theft***." Hyundai's petition also relied on theft data from other
21 manufacturer's vehicle lines (Lincoln Town Car, Chrysler Town and Country, Mazda
22 MX–5 Miata and Mazda 3) that have been exempted from the theft prevention
23 standard. Hyundai noted that "[t]heft rates for the Lincoln Town Car, Chrysler Town
24 and Country, Mazda MX–5 Miata and Mazda 3 all are below the median theft rate of
25 3.5826." Further, Hyundai touted the success of its immobilizers in its Azera model,
26 stating:

27  Hyundai also compared the theft rates for its Azera model
28  which has been installed with an anti-theft device as

standard equipment since (MY 2006) and was granted an exemption from the theft prevention standard in MY 2008 to the overall theft rate reported by NHTSA for model years (MYs') 2006 and 2007. The theft rate for the MY 2006 Hyundai Azera was 0.7758 which was comparatively lower than the overall theft rate of 2.08 for MY 2006. The theft rate for the MY 2007 Azera was 1.8003, also comparatively lower than the overall theft rate of 1.86 for MY 2007. ***Conclusively, Hyundai stated that it believes the data indicate that installation of anti-theft devices are effective in reducing thefts***.

321.   On September 8, 2016, and January 22, 2017, HATCI, on behalf of HMA and KA, respectively, submitted PMR exemption petitions for two hybrid electric vehicle lines, the MY 2017 Hyundai Ioniq and the MY 2018 Kia Niro. *See* 82 Fed. Reg. 22,051, 22,048 (May 11, 2017) 82 Fed. Reg. 22,048 (May 11, 2017). As part of these petitions, HATCI again touted the JP Research Report's conclusion that anti-theft devices "were 70% more effective than parts marking in deterring theft."

322.   Defendants possessed, analyzed, and explicitly relied on factual data pertaining to the rate of thefts in vehicles with and without immobilizers that show the benefits of immobilizers. Defendants' PMR petitions show that they were aware immobilizers had become standard safety components in the industry and meaningfully eliminated the risk of thieves bypassing ignition locks.  Yet Defendants decided not to include these standard safety components in the Vehicles.

323.   Defendants were keenly aware of the disparate risk created by their decision not to install immobilizers in the Vehicles long before the first Vehicle was sold and years before the current theft epidemic began to plague consumers nationwide, including Plaintiffs' Insureds.

**H.     Defendants Were on Notice of the Thief Friendly Design From Their Efforts to Monitor Vehicle Thefts, which Occurred at a Shocking Rate**

324.   In addition to the research cited in Defendants' PMR petitions, publicly available information concerning vehicle thefts in the United States over the last decade notified Defendants as to the extent of the issue created by the Thief Friendly Design.

325.   For years, the Vehicles suffered disproportionally high rates of theft for Vehicles that are not typically targeted by car thieves. But the number of reported Vehicle thefts skyrocketed in 2020 when the existence of the Thief Friendly Design began to circulate on social media.

326.   While the rate of Vehicle thefts exploded in 2020, the Vehicles have always suffered from the Thief Friendly Design, and as a result, have been among the most stolen vehicles in the nation for a decade.

327.   Beginning around 2010, Hyundai and Kia started to increase the number of vehicles sold in the U.S.—built upon their marketing campaigns concerning the safety and reliability of their vehicles.

328.   Coinciding with the growth in sales of Hyundai and Kia vehicles and the prevalence of Vehicles on U.S. streets, more and more of Defendants' vehicles began to appear in crime statistics.

329.   Every year since 2007, the NICB publishes its "Hot Wheels" report that identifies the most stolen vehicles in the United States.[37] The report examines vehicle theft data submitted by law enforcement to the NCIC and determines the vehicle make, model and model year most reported stolen each year. In fact, the NCIC data relied on by the NICB was utilized by Defendants when seeking PMR exemptions. *See* 72 Fed. Reg. 39,661.

330.   Hyundai and Kia Vehicles have been listed within the top ten stolen cars

---

[37] *See* https://www.nicb.org/news/blog/hot-wheels-americas-10-most-stolenvehicles (last accessed Aug. 26, 2022).

since 2013.  This is remarkable, since the Vehicles are not the type of luxury or high-performance vehicles which typically are targeted by car thieves.  Hyundai and Kia vehicles have made it to this infamous top ten list solely and exclusively because of their violations of federal law and industry standards while selling the Vehicles without anti-theft immobilizer protective equipment.

331.  In September of 2022, the HLDI, which collects information on insurance claims, revealed that "2015-2019 Hyundai and Kia models are roughly twice as likely to be stolen as other vehicles of similar age."[38]  In reality, based upon more recent theft data, the subject Vehicles likely are being stolen at a rate of five or more times the theft rate of other vehicles.

332.  On information and belief, Defendants monitored Vehicle theft rates, including the Hot Wheels reports and the underlying NCIC data, but took no action to protect their customers.

333.  On information and belief, Defendants collected and analyzed their own data sets of theft rates for the Vehicles. For instance, Hyundai cited the theft rate for the Azera model line in its 2009 PMR petition for its VI vehicle line. *See* 75 Fed. Reg. 6,253 (Feb. 8. 2010).

334.  On information and belief, Defendants conducted investigations into the Vehicle thefts, which would have shown that the thefts were primarily conducted in a similar manner, and would have been greatly reduced by the implementation of immobilizers.

**I.     Defendants Failed To Remedy The Thief Friendly Design**

335.  Defendants failed to inform Plaintiffs' Insureds that their Vehicles employed the Thief Friendly Design and refused to reimburse Plaintiffs and Plaintiffs' Insureds for their losses incurred as a result of the Thief Friendly Design.

336.  After the Thief Friendly Design became common knowledge and an epidemic of vehicle thefts began to sweep the country, Defendants announced that

---

[38]https://www.cnn.com/2022/09/22/business/hldi-hyundai-kia-theft/index.html (last accessed April 10, 2023).

going forward, they would install immobilizers in all their vehicles. This change would affect certain 2022 model vehicles and all Hyundai and Kia vehicles from 2023 onward.

337.   Defendants' recent change in design does not provide any relief to Plaintiffs and their Insureds who have suffered harm as a result of the Thief Friendly Design.

**J.      Fraudulent Omission/Concealment Allegations**

338.   Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals employed by Defendants responsible for making false and misleading statements regarding the Vehicles. Defendants necessarily are in possession of all of this information. Plaintiffs' claims arise out of Defendants' fraudulent omission/concealment of the Thief Friendly Design, as well as their representations about the quality, reliability, and safety of the Vehicles.

339.   Plaintiffs allege that, at all relevant times, including specifically at the time that Plaintiffs' Insureds purchased their Vehicles, Defendants knew, or were reckless in not knowing, of the Thief Friendly Design; Defendants had a duty to disclose the Thief Friendly Design based upon their exclusive knowledge due to, among other things, the self-certification process, and given their repeated statements alleged herein as to compliance with relevant safety and anti-theft standards; and Defendants never disclosed the Thief Friendly Design to Plaintiffs' Insureds or the public at any time or place in any manner prior to 2022.

340.   Plaintiffs make the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendants.

341.   *Who*: each Defendant (HMA, HMC, KA, and KC) expressly promised to all customers in writing that the Vehicles conformed to all applicable theft prevention standards. Defendants also actively concealed and omitted the Thief

Friendly Design from Plaintiffs and Plaintiffs' Insureds while simultaneously touting the quality, safety, and dependability of the Vehicles, as alleged herein. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals responsible for making such statements while concealing key material information.

342. **What**: that the Vehicles contain the Thief Friendly Design, as alleged herein. Defendants concealed and omitted the Thief Friendly Design while making representations about the safety, dependability, and other attributes of the Vehicles, as alleged herein.  At the same time, Defendants promised that the Vehicles confirm with all theft prevention standards.

343. **When**: Defendants concealed and omitted material information regarding the Thief Friendly Design at all times while making representations about the quality, safety, and dependability of the Vehicles on an ongoing basis, and continuing to this day. Defendants still have not disclosed the truth about the full scope of the Thief Friendly Design in the Vehicles, and when consumers brought their vehicles to HMA and KA dealerships or called Defendants' respective customer service and warranty departments complaining of the Thief Friendly Design, Defendants denied an adequate repair for the Thief Friendly Design and warranty coverage.  On information and belief, Defendants have instead sought to use this crisis as means to drive sales of unrelated maintenance services to their customers.

344. **Where**: Defendants concealed and omitted material information regarding the true nature of the Thief Friendly Design in every communication they had with Plaintiffs and Plaintiffs' Insureds and made representations about the quality, reliability, and safety of the Vehicles. Each Vehicle contains an express promise that it conforms with all applicable theft prevention standards. On information and belief, similar promises and statements were made about the safety of the Vehicles.  Plaintiffs are aware of no document, communication, or other place or thing, in which Defendants disclosed the truth about the full scope of the Thief Friendly Design in the

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Vehicles prior to 2022. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendants' websites. There are channels through which Defendants could have disclosed the Thief Friendly Design, including, but not limited to: (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Plaintiffs' Insureds through means such as state vehicle registry lists and e-mail notifications.

345.   **How**: Defendants concealed and omitted the Thief Friendly Design from Plaintiffs and Plaintiffs' Insureds and made representations about the quality, safety, and dependability of the Vehicles. At the same time, Defendants promised in writing that each Vehicle conformed with all applicable theft prevention standards. Each Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Thief Friendly Design from Plaintiffs and Plaintiffs' Insureds at all times, even though they each knew about the Thief Friendly Design and knew that information about the Thief Friendly Design would be important to a reasonable consumer, and Defendants promised in their marketing materials, VIN plates and similar warranties that Vehicles have qualities that they do not have.

346.   **Why**: Defendants actively concealed and omitted material information about the Thief Friendly Design in the Vehicles for the purpose of inducing Plaintiffs' Insureds to purchase and/or lease Vehicles, rather than purchasing or leasing competitors' vehicles that actually complied with applicable theft prevention standards, and instead made false representations about the quality, safety, and durability of the Vehicles. Had Defendants disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiffs' Insureds (and all reasonable consumers) would have been aware of the Thief Friendly Design, and it is reasonably likely that Plaintiffs' Insureds would not have bought or leased the Vehicles or would not have paid as much for them.

**K.    Privity Exists Between Defendants and Plaintiffs' Insureds**

347.   Plaintiffs' Insureds purchased and/or leased their respective Vehicles

from Defendants, through Defendants' authorized dealerships, with the understanding that these dealerships were acting on behalf of Defendants, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party.

348.   The sole and express purpose that each authorized Kia and Hyundai dealership has when it acquires vehicles from Defendants is to immediately re–sell them to end–users like Plaintiffs' Insureds. Defendants' conduct, and the conduct of their respective dealerships, thus created a justifiable belief on the part of Plaintiffs' Insureds that the dealerships are agents of Defendants, which the Plaintiffs' Insureds relied on to their detriment. Thus, each Hyundai and Kia dealership operates as the actual and/or apparent agent of HMA and KMA respectively, which satisfies any privity requirement.

349.   Privity further exists between Defendants on the one hand, and the Plaintiffs' Insureds on the other, by virtue of the express warranties provided with the vehicles, or otherwise through their purchase and/or lease agreements.

350.   Defendants also control various details regarding their respective dealerships' operations through various written agreements, such as: (i) granting each dealership a license to use their respective trademarks and intellectual property; (ii) furnishing each dealership with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealerships from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Vehicles.

351.   Plaintiffs' Insureds were the intended and direct beneficiaries of agreements between Defendants and their dealerships regarding sales and leases of the Vehicles, because, upon information and belief, the agreements expressly were made for the direct benefit of Plaintiffs' Insureds as ultimate consumers of the Vehicles.

352.   Moreover, Defendants' false and misleading representations in

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

marketing materials and brochures for each of the Vehicles were intended for car purchasers and lessees, rather than the dealerships themselves.

## CLASS ACTION ALLEGATIONS

### (Alleged by Class Plaintiffs)

353.   Class Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) against Defendants.

354.   Class Plaintiffs seek to represent a class ("Hyundai Nationwide Class") under the laws of the State of California defined as:

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Vehicle.

355.   Class Plaintiffs seek to represent a class ("Kia Nationwide Class") under the laws of the State of California defined as:

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Vehicle.

356.   The Vehicles are defined as all 2011-2022 Kia vehicles and 2011-2022 Hyundai vehicles which do not contain an engine immobilizer.  On information and belief, this includes the models listed within Exhibits A and B.

357.   In addition, and in the alternative to the Nationwide Classes, Class Plaintiffs seek to represent the following state Subclasses:

**Hyundai Alabama Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Alabama.

**Kia Alabama Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Alabama.

**Hyundai Alaska Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Alaska.

**Kia Alaska Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Alaska.

**Hyundai Arizona Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Arizona.

**Kia Arizona Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Arizona.

**Hyundai Arkansas Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Arkansas.

**Kia Arkansas Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Arkansas.

**Hyundai California Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of California.

**Kia California Subclass:**

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of California.

**Hyundai Colorado Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Colorado.

**Kia Colorado Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Colorado.

**Hyundai Connecticut Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Connecticut.

**Kia Connecticut Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Connecticut.

**Hyundai Delaware Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Delaware.

**Kia Delaware Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Delaware.

**Hyundai Florida Subclass:**

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Florida.

**Kia Florida Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Florida.

**Hyundai Georgia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Georgia.

**Kia Georgia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Georgia.

**Hyundai Hawaii Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Hawaii.

**Kia Hawaii Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Hawaii.

**Hyundai Idaho Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Idaho.

**Kia Idaho Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Idaho.

**Hyundai Illinois Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Illinois.

**Kia Illinois Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Illinois.

**Hyundai Indiana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Indiana.

**Kia Indiana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Indiana.

**Hyundai Iowa Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Iowa.

**Kia Iowa Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia class Vehicle in the state of Iowa.

**Hyundai Kansas Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Kansas.

**Kia Kansas Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Kansas.

**Hyundai Kentucky Subclass:**

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Kentucky.

**Kia Kentucky Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Kentucky.

**Hyundai Louisiana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Louisiana.

**Kia Louisiana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Louisiana.

**Hyundai Maine Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Maine.

**Kia Maine Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Maine.

**Hyundai Maryland Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Maryland.

**Kia Maryland Subclass:**

Case No. 8:22-ML-3052-JVS(KESx).
CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia class Vehicle in the state of Maryland.

**Hyundai Massachusetts Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Massachusetts.

**Kia Massachusetts Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Massachusetts.

**Hyundai Michigan Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Michigan.

**Kia Michigan Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Michigan.

**Hyundai Minnesota Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Minnesota.

**Kia Minnesota Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Minnesota.

**Hyundai Mississippi Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Mississippi.

**Kia Mississippi Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Mississippi.

**Hyundai Missouri Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Missouri.

**Kia Missouri Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Missouri.

**Hyundai Montana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Montana.

**Kia Montana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Montana.

**Hyundai Nebraska Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Nebraska.

**Kia Nebraska Subclass:**

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Nebraska.

**Hyundai Nevada Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Nevada.

**Kia Nevada Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Nevada.

**Hyundai New Hampshire Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of New Hampshire.

**Kia New Hampshire Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of New Hampshire.

**Hyundai New Jersey Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of New Jersey.

**Kia New Jersey Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of New Jersey.

**Hyundai New Mexico Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of New Jersey.

**Kia New Mexico Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of New Mexico.

**Hyundai New York Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of New York

**Kia New York Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of New York.

**Hyundai North Carolina Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Alabama.

**Kia North Carolina Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of North Carolina.

**Hyundai North Dakota Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia class Vehicle in the state of North Dakota.

**Kia North Dakota Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of North Dakota.

**Hyundai Ohio Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Ohio.

**Kia Ohio Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Ohio.

**Hyundai Oklahoma Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Oklahoma.

**Kia Oklahoma Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Oklahoma.

**Hyundai Oregon Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Oregon.

**Kia Oregon Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Oregon.

**Hyundai Pennsylvania Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Pennsylvania.

**Kia Pennsylvania Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Pennsylvania.

**Hyundai Rhode Island Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Rhode Island.

**Kia Rhode Island Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Rhode Island.

**Hyundai South Carolina Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of South Carolina.

**Kia South Carolina Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of South Carolina.

**Hyundai South Dakota Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of South Dakota.

**Kia South Dakota Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of South Dakota.

**Hyundai Tennessee Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Tennessee.

**Kia Tennessee Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Tennessee.

**Hyundai Texas Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Texas.

**Kia Texas Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Texas.

**Hyundai Utah Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Utah.

**Kia Utah Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Utah.

**Hyundai Vermont Subclass:**

1   All insurance carriers that issued automobile and property insurance policies
2   whose Insureds purchased or leased a Kia Class Vehicle in the state of
3   Vermont.

4   **Kia Vermont Subclass:**

5   All insurance carriers that issued automobile and property insurance policies
6   whose Insureds purchased or leased a Kia Class Vehicle in the state of
7   Vermont.

8   **Hyundai Virginia Subclass:**

9   All insurance carriers that issued automobile and property insurance policies
10   whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
11   Virginia.

12   **Kia Virginia Subclass:**

13   All insurance carriers that issued automobile and property insurance policies
14   whose Insureds purchased or leased a Kia Class Vehicle in the state of Virginia.

15   **Hyundai Washington Subclass:**

16   All insurance carriers that issued automobile and property insurance policies
17   whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
18   Washington.

19   **Kia Washington Subclass:**

20   All insurance carriers that issued automobile and property insurance policies
21   whose Insureds purchased or leased a Kia Class Vehicle in the state of
22   Washington.

23   **Hyundai West Virginia Subclass:**

24   All insurance carriers that issued automobile and property insurance policies
25   whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
26   West Virginia.

27   **Kia West Virginia Subclass:**

28

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of West Virginia.

**Hyundai Wisconsin Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Wisconsin.

**Kia Wisconsin Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Wisconsin.

**Hyundai Wyoming Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Wyoming.

**Kia Wyoming Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Wyoming.

**Hyundai Puerto Rico Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in Puerto.

**Kia Puerto Rico Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in Puerto Rico.

**Hyundai District of Columbia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the District of Columbia.

**Kia District of Columbia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the District of Columbia.

358.   The Classes, and Subclasses are limited to the time period beginning on the date established by the Court's determination of any applicable statute of limitation, after consideration of any tolling and accrual issues, and ending on the date of the entry of judgment.

359.   Excluded from the Classes, and Subclasses are (1) Defendants, their officers, directors, and employees, (2) the separately identified Independent Subrogation Plaintiffs, (3) Consumer plaintiffs defined as part of the settlement class for the consumer Plaintiffs [*See* Doc. No 84] and (4) all automobile and property insurers which execute and timely file a request for exclusion from the class.

360.   **Numerosity**: While the exact number of members cannot be determined yet, the Classes, and Subclasses consist of a large number of property and casualty insurers having Insureds in the hundreds, if not thousands, who have suffered or will suffer property damage losses due to thefts, or attempted thefts of the Vehicles caused by the lack of anti-theft protection in compliance with FMVSS 114.  The number of Class Members, and Subclass Members in each Class and Subclass with Insureds who have or will suffer such losses is so numerous that joinder of all members is impracticable.

361.   **Commonality**: Common questions of law and fact exist as to all Class Members. Among the common questions of law and fact are:

          a.    whether the vehicles were sold with a defect;

          b.    whether the defect is a safety defect;

  c. whether the Defendants violated FMVSS 114 by manufacturing and selling Vehicles without sufficient anti-theft protection features or design elements;

  d. whether the Defendants intentionally placed the vehicles into the stream of commerce with actual knowledge that vehicles pose an unreasonable safety risk;

  e. whether a reasonable consumer would consider the defect or its consequences to be material;

  f. whether Defendants adequately disclosed the defect to consumers or whether Defendants' disclosures were insufficient and misleading;

  g. whether the design of the vehicles is defective and unreasonably dangerous;

  h. whether Defendants' conduct violated relevant federal and state statutes asserted herein.

362. **Typicality:** Class Plaintiffs have substantially the same interest in this matter as all other members of the Classes, or Subclasses and Class Plaintiffs' claims arise out of the same set of facts and conduct as all other members of the class or subclasses. Class Plaintiffs and all Class Members, including all Subclass members, are insurance companies who issued automobile insurance policies to policyholders who owned or leased Vehicles manufactured and sold by Defendants. The insurance claims received or yet to be made under policies issued by members of the Classes all satisfy the typicality requirement in that each of these claims have an identical cause, namely, a loss due to a vehicle theft or attempted vehicle theft. Thus, the insurance claims of the named Class Members, and named Subclass members, are typical of the claims covered and paid by all members of the classes, and subclasses.

363. **Adequacy of Representation:** Proposed Class Subrogation Plaintiffs are committed to pursuing this action and have retained competent counsel. Counsel

for Proposed Class Subrogation Plaintiffs has the largest subrogation practice in the United States, having represented thousands of insurance companies in hundreds of thousands of subrogation cases since the founding of the firm in 1970. Counsel for Proposed Class Subrogation Plaintiffs is also experienced in complex litigation, including MDL litigation and class action litigation. Accordingly, Proposed Class Subrogation Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. Plaintiffs' claims are coincident with, and not antagonistic to, those of other Class Members, and Subclass members they seek to represent. Proposed Class Subrogation Plaintiffs have no disabling conflicts with members of the classes and will fairly and adequately represent the interests of the other Class Members and Subclass members.

364. **Superiority**: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the class and a class action is the superior method for the fair and efficient adjudication of the controversy. The likelihood that all individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. While some Class Plaintiffs have sustained losses in the hundreds of millions of dollars, other members of the class, and subclasses, have sustained much smaller losses measured only in the thousands of dollars. The cost to litigate separate and individual cases against the Defendants makes it cost prohibitive for many insurers to separately litigate their claims against Defendants. Serial adjudication in numerous venues is not efficient, timely or proper. Judicial resources throughout California and the United States will be unnecessarily depleted by litigation of individual claims. Joinder on an individual basis of hundreds, if not thousands of cases that is each comprised, in turn, of hundreds or thousands of claims, would be impractical, if not impossible, and certainly inefficient and a waste of judicial resources. Individualized rulings and judgments have and will result in inconsistent relief for similarly situated plaintiffs. Proposed Class Plaintiffs' counsel,

highly experienced in class action and product liability litigation, foresees little difficulty in the management of this case as a class action. Indeed, the only way to ensure a remedy of the serious misconduct alleged herein is through a collective action on behalf of United States property insurers.

365. Class Plaintiffs' claims are materially the same under the law of California as in all states in the United States. In the event California law does not apply on a nationwide basis, Plaintiffs will seek to apply the laws of the various states, Puerto Rico and the District of Columbia as will be addressed in Plaintiffs' brief in support of class certification.

366. Notice to the proposed Classes, or if necessary, Subclasses, will be accomplished easily in that every member of both classes is a property and casualty insurance company, doing business within the United States, many of whom already are represented by Plaintiffs' counsel in other insurance litigation matters, and all of whom are readily able to be identified and notified of all matters pertaining to the proposed class.

## **TOLLING OF STATUTES OF LIMITATIONS**

### **(Alleged by All Plaintiffs)**

367. As a result of HMA's, HMC's, KA's, and KC's knowing and active concealment and denial of the facts alleged herein, Plaintiffs and Plaintiffs' Insureds could not have reasonably discovered the true nature of the Thief Friendly Design. Consequently, any applicable statute(s) of limitations have been tolled: a) pursuant to the discovery rule; b) as a result of Defendants' fraudulent concealment; and/or (c) based upon principles of estoppel.

**B.     Discovery Rule**

368. The causes of action alleged herein did not accrue until Plaintiffs' Insureds discovered that their Vehicles contained the Thief Friendly Design.

369. As alleged above, Plaintiffs' Insureds had no way of knowing about the Thief Friendly Design in their Vehicles. Defendants concealed their knowledge of the

Thief Friendly Design while KA and HMA continued to market and sell the Vehicles as safe, secure, high-quality, and reliable vehicles. As of the date of filing, Defendants have still failed to disclose the full extent of the Thief Friendly Design and the risks it poses to Vehicle owners and lessees.

370. Plaintiffs and their Insureds, through the exercise of reasonable diligence, could not have discovered that the Vehicles employed a Thief Friendly Design within the applicable statute(s) of limitations.

371. Plaintiffs and their Insureds were not in possession of sufficient information that would have caused a reasonable person to suspect that the Vehicles employed a Thief Friendly Design. Further, no ordinary person would be able to discern that the Vehicles were defective. An ordinary consumer, without sophisticated knowledge of mechanical systems and anti-theft devices, would not and could not suspect that the theft or damage to their Vehicle was, in fact, attributable to a pervasive Thief Friendly Design.

372. For ordinary consumers, the existence and partial extent of the Thief Friendly Design only came to light after media outlets began to cover the abnormal risk of theft for the Vehicles in or around 2021.  Thus, Plaintiffs and their Insureds did not discovery, and had no reason to discover, the existence of their causes of action against these Defendants.

373. For these reasons, any statute(s) of limitation applicable to Plaintiffs' claims have been tolled by operation of the discovery rule.

**C.    Fraudulent Concealment**

374. Defendants, as the manufacturers, distributors, sellers, and/or warrantors of the Vehicles, were under a continuing duty to disclose the existence of the Thief Friendly Design to Plaintiffs' Insureds.

375. Defendants were and remain under a continuing duty to disclose the true character, quality, and nature of the Vehicles, that the Thief Friendly Design found in the Vehicles will allow unsophisticated thieves—even juveniles—to steal the vehicle

in seconds, that the Insureds' vehicles require costly repairs, pose safety concerns, and may cause damage to their personal property.

376.   Instead of publicly disclosing the Thief Friendly Design, Defendants kept owners and lessees in the dark. To this day, Defendants have knowingly or recklessly failed to disclose the full extent of the Thief Friendly Design; including that the Vehicles do not comply with FMVSS No. 114.

377.   Until the Thief Friendly Design was exposed to the public through media coverage as the epidemic exploded in 2021, Plaintiffs and their Insureds had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice of such a connection. In particular, Plaintiffs and their Insureds did not possess either aggregated Vehicle theft data, or the technical data related to the design of the Vehicles.

378.   Due to each Defendant's concealment of the facts necessary for Plaintiffs and their Insureds to discover the existence of their claims, all applicable statutes of limitation have been tolled.

**D.     Estoppel**

379.   Defendants were, and are, under a continuing duty to disclose the true character, quality, and nature of the Vehicles. Although Defendants were aware of the Thief Friendly Design that failed to comply with FMVSS No. 114 since at least 2011, Defendants knowingly continued to make representations that the Vehicles complied with all federal safety and quality standards.

380.   Defendants' misrepresentations that the Vehicles complied with FMVSS No. 114 continued after and beyond the date that Defendants became aware that the Thief Friendly Design had resulted in an epidemic of theft.

381.   Plaintiffs' reasonably relied upon each Defendant's knowing and affirmative misrepresentations in the period following the theft or damage to the Vehicles.

382.   Due to each Defendant's misrepresentations regarding the true state of

the Vehicles, Defendants are estopped from asserting that any otherwise applicable statute(s) of limitations bar Plaintiffs' claims.

## NATIONWIDE CLASSES AND CALIFORNIA STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, Nationwide Class Members, and California Subclass Members against All Defendants)**

383.   Class Plaintiffs for the Hyundai and Kia Nationwide Classes, the Hyundai California Subclass and Kia California Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

384.   The Nationwide Classes, and California Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from Vehicle losses (of both Kia and Hyundai Vehicles) in the State of California due to Defendants' Thief Friendly Design including, but not limited to, the following named Class Plaintiffs: American Access Casualty Company; American Alliance Casualty Company; Church Mutual Insurance Company, SI; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Connect Property and Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, SI; Homesite Insurance Company of California; Permanent General Assurance Company; Erie Insurance Exchange; Financial Indemnity Company; Infinity Insurance Company; Kemper Independence Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; PEMCO Mutual Insurance Company; Unigard Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in California pursuant to policies of insurance.

**A.     Breach of Implied Warranty**

385.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

386.   Defendants were, at all relevant times:

      a.     the manufacturers, distributors, and warrantors of the Vehicles;

      b.     "merchants" of motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c);

      c.     "sellers" of motor vehicles under Cal. Com. Code § 2103(1)(d); and

      d.     "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

387.   Additionally, and in the alternative, Defendant sold the Vehicles to Kia and Hyundai dealers or other third-parties intending that the Vehicles would be re-sold to consumers: including Plaintiffs' Insureds.  Thus, Plaintiffs' Insureds were the intended third-party beneficiaries of Defendants' sales contracts.

388.   Plaintiffs' Insureds who purchased Vehicles are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

389.   Plaintiffs' Insureds who leased Vehicles are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

390.   The Vehicles were at all relevant times "goods" within the meaning of Cal. Com. Code §§ 2105(1) and 10103(a)(8).

391.   Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

392.   Defendants' sales contracts and lease agreements included an implied warranty that the Vehicles were merchantable and fit for the ordinary purposes for which they were sold.  *See* Cal. Com. Code §§ 2314 and 10212.

393.   This implied warranty included, among other things, a warranty that the Vehicles manufactured, supplied, distributed, and sold by Defendants were safe, reliable for providing transportation, were not abnormally vulnerable to theft, would

be available (as opposed to stolen or vandalized), and complied with all applicable federal and state law and regulations - including FMVSS 114.

394.  Defendants' warranties were designed and intended for the benefit of Plaintiffs' Insureds.

395.  The Vehicles were defective and not in merchantable condition at the time of sale because of the Thief Friendly Design.  The Vehicles lacked any anti-theft features or design elements that adequately deter theft deterrent or otherwise satisfy the requirements of FMVSS 114.  This caused the vehicles to be prime targets for theft, and to be used as dangerous instrumentalities for thieves engaged in reckless driving and other criminal activity.  As a result, at the time of sale, the Vehicles were not fit for their ordinary purpose of providing reasonably reliable and safe transportation.

396.  Plaintiffs' Insureds relied on the existence of Defendants' implied warranties while deciding whether to purchase or lease the Vehicles. However, that reliance was misplaced. The elevated risk of theft resulting from the Thief Friendly Design impacted all Vehicle owners and prevented them from using the Vehicles as intended.

397.  Defendants' actions, as complained of herein, breached the implied warranty that the Vehicles were of merchantable quality and fit for their ordinary and intended use.

398.  Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable under California law. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. Further, any attempts to foreshorten the time period of the implied warranty are also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds.

399.  These breaches of the implied warranties of merchantability have denied

Plaintiffs and Plaintiffs' Insureds the benefit of the Insureds' bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without being stolen or saddled with the ever–present risk of them being stolen.

400.   Plaintiffs and Class members provided notice of Defendants' breach of the implied warranties on March 09, 2023.  Regardless, Plaintiffs and their Insureds were excused from providing Defendants with notice and an opportunity to cure the breaches, because notice would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design. Despite that knowledge, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs and their Insureds had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to Defendants for repair, nor would any repair or proposed repair be meaningful for Vehicles that were already stolen.

401.   As a direct and proximate result of Defendants' breaches of their implied warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, for which the Defendants are liable.

**B.    Breach of Express Warranty Pursuant to Cal. Comm. Code § 2313**

402.   Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

403.   During the relevant time period described above, Plaintiffs' Insureds purchased or leased Hyundai and Kia branded Vehicles manufactured during the relevant time period.

404.   Through the attachment of VIN plates, Defendants expressly warranted that the Vehicles conformed to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.  Similar VIN plates containing similar warranties were affixed to all Kia and

1  Hyundai Vehicles.

2      405.   After the Insureds purchased or leased the Hyundai or Kia branded

3  Vehicles, they used them as designed and intended in the course of normal and

4  anticipated operations. Plaintiffs' Insureds did not misuse, mishandle, or otherwise

5  damage the Vehicles in any way that is material to the allegations set forth herein.

6      406.   The Vehicles did not conform with the terms of the Defendants' express

7  warranty as set forth on the Vehicles' VIN plates because they were capable of being

8  stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor

9  vehicle safety and theft prevention standards in effect on the date of manufacture.

10     407.   Plaintiffs provided written notice to Defendants of the Thief Friendly

11  Design on March 9, 2023. Defendants have received further notice of the Thief

12  Friendly Design in conjunction with numerous lawsuit filings cases around the

13  country.

14     408.   Although Defendants had notice of the Thief Friendly Design, neither

15  Plaintiffs nor their Insureds were required to provide notice of the Thief Friendly

16  Design prior to the vehicles being stolen and/or damaged.

17     409.   While Defendants have suggested they are attempting to remedy the

18  Thief Friendly Design, any remedy offered to date is ineffective, and fails to comply

19  with applicable anti-theft standards.

20     410.   Plaintiffs have incurred and will continue to incur damages and costs and

21  expenses, including attorney's fees, as a result of the Thief Friendly Design and

22  Defendants' breach of their express warranty.

23  **C.    Breach of Express Warranty In Violation of Song-Beverly Warranty Act**

24     411.   Plaintiffs incorporate by reference and reallege each preceding and

25  succeeding paragraph as though fully set forth at length herein.

26     412.   During the relevant time period described above, Plaintiffs' Insureds

27  purchased or leased the Vehicles from Hyundai and Kia in their capacity as retail

28  sellers during the relevant time period.

413.   Through the attachment of VIN plates, Defendants expressly warranted that the Vehicles conformed to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.  Similar VIN plates containing similar warranties were affixed to all Kia and Hyundai Vehicles.

414.   After Plaintiffs' Insureds purchased or leased the Hyundai and Kia branded Vehicles, they used them as designed and intended in the course of normal and anticipated operations. Plaintiffs' Insureds did not misuse, mishandle, or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

415.   Plaintiffs discovered the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture after their Insureds reported theft and damage to their Vehicles in alarming numbers. Plaintiffs then determined that the Vehicles failed to perform properly because the Vehicles lacked an anti-theft device that conforms with industry standards and/or federal regulations. As a result of that Thief Friendly Design, the Vehicles were easily stolen, and failed to conform to the terms of the express warranty on the Vehicles' VIN plates.

416.   Plaintiffs provided written notice to Defendants of the Thief Friendly Design on March 9, 2023. Defendants have received further notice of the Thief Friendly Design in conjunction with numerous lawsuit filings cases around the country.

417.   Defendants clearly knew compliance with federal anti-theft standards was required by law. Defendants also knew the standards easily could be met by designing the Vehicles with an engine immobilizer.  Nevertheless, Defendants willfully violated the Song-Beverly Consumer Warranty Act by failing to install any anti-theft measures which complied federal or industry standards.  Those failures

resulted in the Vehicles being stolen.  After being notified of the Thief Friendly Design, Defendants have still failed to offer an effective fix, repair or remedy for the Thief Friendly Design.  For those Insureds whose Vehicles have already been stolen, any such fix, repair, or remedy comes far too late.

418.   Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of Defendants' breach of express warranty and violation of the Song-Beverly Consumer Warranty Act.

419.   Plaintiffs are entitled to a civil penalty against Defendants of two times the amount of actual damages for its willful violation of the Song-Beverly Consumer Warranty Act.

**D.   Violations of The California Song-Beverly Consumer Warranty Act For Breach of Implied Warranty of Merchantibility (Cal. Civ. Code §§ 1791.1 and 1792)**

420.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

421.   Defendants are "manufacturer[s]" of the Vehicles within the meaning of Cal. Civ. Code § 1791(j).

422.   Defendants are and were at all relevant times "sellers" of motor vehicles under Cal. Civ. Code § 1791(l).

423.   Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Civ. Code § 1791(i).

424.   Plaintiffs' Insureds who purchased Vehicles are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

425.   Plaintiffs' Insureds who leased Vehicles are "lessees" within the meaning of Cal. Civ. Code § 1791(h).

426.   The Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

427.   Defendants impliedly warranted to Plaintiffs' Insureds that their

Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

428.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label.

429.   The Vehicles would not pass without objection in the automotive trade due to the Thief Friendly Design. Because of the Thief Friendly Design, the Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

430.   The Vehicles are not adequately labeled because the labeling fails to disclose the Thief Friendly Design.

431.   The Vehicles do not conform to the promises and affirmations made by Defendants regarding safety, security, quality, availability or reliability of the Vehicles.

432.   As a direct and proximate result of the breaches of the implied warranty of merchantability by Defendants, the Insureds' Vehicles were and are defective, vulnerable to theft in a matter of seconds from even casual car thieves, and the Thief Friendly Design in their Vehicles was not remedied. Therefore, Plaintiffs and Plaintiffs' Insureds have been damaged.

433.   Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs seek damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

**E.     Violations of Consumer Legal Remedies Act Cal. Civ. Code § 1750, *et seq.***

434.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

435.   The California Consumers Legal Remedies Act, Cal. Civil Code § 1750

*et seq.* ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

436. The CLRA applies to Defendants' actions and conduct described herein because it extends to the sale of goods or services for personal, family, or household use.

437. The Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

438. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of Cal. Civ. Code § 1761(c).

439. At all relevant times, Plaintiffs' Insureds were "consumers" as defined in Civil Code § 1761(d). Plaintiffs, upon making payments to their Insureds for damages and losses which they sustained, and which were covered under the insurance policies issued to them by the Plaintiffs, acquired the rights of their Insureds under policy provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of their Insureds and are authorized to pursue all claims and causes of action belonging to their Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by the Plaintiffs.

440. The transactions from which this action arise include transactions involving the sale or lease of goods or services for personal, family or household purposes within the meaning of Civil Code § 1761(d).

441. Defendants developed, manufactured, marketed, and sold the Vehicles containing the defects as alleged herein.

442. Defendants developed, manufactured, marketed, and sold the Vehicles to Plaintiffs' Insureds despite knowledge of the defects and the serious safety risks created by the defects.

443. Defendants made misleading representations and omissions concerning

the benefits, performance, and safety of the Vehicles.

444.   Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.   In reality, however, the Vehicles do not comply with such standards.

445.   Defendants marketed and sold the Vehicles as safe despite knowledge that the defects posed serious safety risks to consumers, as well as the general public.

446.   Defendants failed to disclose the existence of defects and safety risks that were known to Defendants but hidden from consumers.

447.   Defendants' knowing concealment of the unreasonable safety risks associated with the Vehicles constituted misrepresentations, omissions and concealments of material fact that amount to unfair and deceptive practices in violation of the CLRA.

448.   Defendants violated the CLRA when they sold the Vehicles and misrepresented that the Vehicles were safe for use and compliant with all anti-theft standards.

449.   Defendants also violated the CLRA when they failed to disclose to Plaintiffs' Insureds that the Vehicles had known defects that posed a serious safety risk to consumers and the public.

450.   Defendants' deceptive trade practices were designed to induce Plaintiffs' Insureds to purchase the Vehicles containing the defects and to avoid the cost of replacing or repairing the defective Vehicles already in use.

451.   Defendants' violations of the CLRA were designed to conceal material facts about the Vehicles' defects, including unreasonable safety risks, in order to induce the Insureds to purchase Vehicles and to avoid the enormous business cost of repairing and replacing the Vehicles.

452.   By engaging in the unfair and deceptive conduct described above, Defendants actively concealed and failed to disclose material facts about their defective vehicles.

453.   In purchasing or leasing the Vehicles, Plaintiffs' Insureds were deceived by Defendants' failure to disclose their knowledge of the defects.

454.   Defendants' omissions regarding the Vehicles are material facts that a reasonable person would have considered important when deciding to purchase the Vehicles. Indeed, no reasonable consumer would have purchased or leased a Vehicle if the defects were disclosed, as it would mean that the Vehicles were not compliant with federal or industry anti-theft and safety standards.

455.   Defendants' acts were intended to be deceptive and fraudulent in order to more effectively market, distribute, and sell their defective Vehicles.

456.   Plaintiffs' Insureds suffered an injury in-fact as a direct result of Defendants' violations of the CLRA in that they purchased or leased defective Vehicles that were vulnerable to theft in a matter of seconds by even casual car thieves, and in many instances, the Vehicles were stolen and/or damaged, and claims made by the Insureds on policies issued by Plaintiffs.

457.   Defendants' conduct as described herein was and is in violation of the CLRA. Defendants' conduct violates at least the following enumerated CLRA provisions:

    a.    Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

    b.    Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

    c.    Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

    d.    Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

458.   Defendants intentionally and knowingly misrepresented and omitted

material facts regarding the Vehicles with an intent to mislead Plaintiffs and Plaintiffs' Insureds.

459.   In purchasing or leasing the Vehicles, Plaintiffs' Insureds were deceived by Defendants' failure to disclose their knowledge of the defective nature of the Vehicles.

460.   Plaintiffs and Plaintiffs' Insureds had no way of knowing Defendants' representations were false, misleading, or incomplete.   Plaintiffs further had no alternative means to discover the Vehicles' true defective nature.

461.   As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of known defects. Plaintiffs and their Insureds did not, and could not, discover Defendants' deceptive conduct on their own.

462.   Defendants knew or should have known their conduct violated the CLRA. Defendants owed consumers a duty to disclose the truth about the defective Vehicles because Defendants, on the one hand, expressly warranted that the Vehicles complied with relevant standards, while on the other hand, the defective condition of the Vehicles created a safety hazard, and Defendants possessed exclusive knowledge of that defective condition. Defendants intentionally concealed that defective condition from consumers; and/or made incomplete representations in advertisements and on their websites while failing to warn consumers of the defect. Defendants also knew that the Vehicles were materially compromised by the defects alleged herein.

463.   Defendants had an ongoing duty to disclose that the Vehicles were fundamentally flawed because the defective Vehicles created a safety hazard, and consumers, including the Plaintiffs' Insureds, relied on Defendants' material misrepresentations and omissions regarding the features of the Vehicles.

464.   Defendants' violations caused and continue to cause damages to Plaintiffs and Plaintiffs' Insureds while adversely affecting the public interest.

465.   Pursuant to California Civil Code section 1782(a), Plaintiffs provided express notice on behalf of the entire insurance industry served Defendants via

Certified Mail, return receipt requested, on March 9, 2023. This notice alleged violations of California Civil Code section 1770 et seq. related to the Vehicles purchased by Plaintiffs' Insureds, and demanded that Defendants correct, or agree to correct, the actions described therein within thirty (30) days of such notice. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which they, Class Members, and Subclass members are entitled. Plaintiffs also seek an order enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including further concealment of the defect.  In connection with Plaintiffs' claim for injunctive relief, Plaintiffs note that Defendants failed to offer an effective remedy, repair, fix, or recall of the Vehicles.

466.   Pursuant to California Civil Code section 1780(a), Plaintiffs seek an order enjoining Defendants from engaging in the methods, acts, or practices alleged herein, including further concealment of the Thief Friendly Design. Further, Plaintiffs seek (i) actual damages, (ii) disgorgement and restitution to Plaintiffs, the Class, and general public, (iii) punitive damages, (iv) attorneys' fees and costs, and (v) and any other just and proper relief available under the CLRA.

**F.     Violations of Bus. & Prof. Code § 17200, *et seq.***

467.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

468.   Defendants have engaged in unfair competition within the meaning of the California Business & Professional Code § 17200, et seq. ("the UCL") because Defendants' conduct was unlawful, misleading and unfair, as herein alleged.

469.   The UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

470.   Defendants' business practices are unlawful because they violate at least §§ 1668, 1709, 1710, and 1750 et seq. of the Civil Code, and § 2313 of the

Commercial Code. Defendants' practices, moreover, are unlawful because they violate FMVSS 114, which states: "The purpose of this standard is to decrease the likelihood that a vehicle is stolen … This standard applies to passenger cars …" That standard requires that without a key, the vehicle must prevent "normal activation of the vehicle's engine or motor" and either "steering, or forward self-mobility." In other words, a key is required to start the engine and drive the vehicle. In the U.S. "immobilizers" are utilized to comply with FMVSS 114. The Vehicles, however, do not contain immobilizers.

471.   The Defendants violated federal law in intentionally choosing, uniquely among manufacturers selling vehicles in the United States, not to equip the Vehicles with sufficient anti-theft features or design elements to prevent the theft of Vehicles without a key. Specifically, Kia and Hyundai have been breaking federal law by continually selling Vehicles that do not comply with FMVSS 114, a federal regulation designed and written to protect life and property.

472.   In order for consumers to obtain the basic protections afforded by FMVSS 114 in certain Kia and Hyundai vehicles, Defendants force consumers to pay thousands of extra dollars for trim packages which include anti-theft protection, but which also include unnecessary features having nothing to do with anti-theft protection.

473.   The Vehicles do not contain starting systems with anti-theft features or design elements that would prevent forward self-mobility and steering when the key is removed from the starting system, as required by FMVSS 114.

474.   If the Vehicles had been manufactured in compliance with FMVSS 114, as required under federal law, they would not have been stolen because, without a key, the perpetrator would have been unable to start the engine and achieve forward self-mobility and steering.

475.   Immobilizers have been proven to deter auto theft. In fact, a 2016 study reflects that use of immobilizers lowered the rate of car thefts by 40% over a ten-year

period.   By failing to implement immobilizers when all other manufacturers do, Defendants created an extraordinary risk for their customers, including the Insureds.

476.   Selling automobiles without immobilizers or any other anti-theft feature or design element sufficient to comply with FMVSS 114 is not only illegal, but unfair to consumers because it exposes consumers to elevated risks of theft without fair warning or justification.

477.   Through their businesses, Defendants concealed and suppressed material facts concerning the Vehicles. Defendants accomplished this by manufacturing the Vehicles with inherently substandard design flaws that not only enabled theft, but, due to its ease, encouraged those who would otherwise not steal to engage in theft of the Vehicles. Defendants knew the Thief Friendly Design existed in the vehicles and nonetheless placed them on the market for purchase.

478.   Defendants failed to provide notice that the Vehicles lacked any anti-theft feature or design element sufficient to provide an adequate theft deterrent, or otherwise comply with FMVSS 114, and failed to give any notice as to the risks associated with operating or even owning a vehicle that does not comply with FMVSS 114.

479.   Defendants violated the UCL when they concealed and failed to disclose the serious safety risks to consumers that their Vehicles created; concealed and failed to disclose that their Vehicles were defective when they had a duty to disclose these safety risks; and sold the Vehicles as if they were fit for ordinary purposes and did not present unreasonable safety risks.

480.   Defendants violated the UCL when they failed to disclose that their Vehicles created serious safety risks and were defective as described herein when they had a duty to disclose the safety risks to consumers and instead falsely misrepresented that their Vehicles were safe for consumer use.

481.   Defendants elected not to include features or design elements in the Vehicles that would bring the Vehicles into compliance with the letter or intent of

FMVSS 114. Thus, Defendants developed, manufactured, marketed and sold their Vehicles in a dangerous and defective condition. This too was unfair to the Insureds, and Plaintiffs, and therefore violated the UCL.

482.   As described above, Defendants had knowledge of the serious safety risks presented by their Vehicles and had knowledge of their defects prior to their sale to Plaintiffs' Insureds. Indeed, Defendants have long had notice of the existence of, and reasons for, the federal regulation requiring anti-theft features or design elements that prevent forward self-mobility or steering without a key.

483.   The absence of anti-theft protection constitutes a safety issue that triggered Defendants' duty to disclose this safety issue to consumers.

484.   Defendants failed to disclose the material fact that their Vehicles posed serious safety risks upon sale and were defective for lacking mandatory anti-theft protection. Defendants were in exclusive possession of this knowledge.

485.   Plaintiffs and Plaintiffs' Insureds did not and could not have had knowledge of the safety risks created by the Vehicles at the time that the Insureds purchased their Vehicles.

486.   Despite their knowledge of the serious safety risks that the Vehicles presented to consumers and the public, Defendants failed to issue an appropriate warning, recall, or a campaign to replace the Vehicles for years, concealing their knowledge of the defects and safety issues presented by the Vehicles.

487.   Defendants' business acts were unfair, unlawful and fraudulent within the meaning of the UCL.

488.   As entities with exclusive knowledge regarding the safety risk and defect in the Vehicles, Defendants had a duty to disclose these defects, particularly in light of the fact that the Vehicles posed serious safety risks to Plaintiff's Insureds.

489.   Plaintiffs and their Insureds reasonably expected that Defendants would disclose the fact that their Vehicles did not comply with federal or industry safety and anti-theft standards.   Similarly, Plaintiffs and their Insureds reasonably expected

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Defendants would disclose the existence of the serious safety risks that the Vehicles presented to consumers and the public, and reasonably expected that Defendants would not sell a vehicle that was unsafe or sell a vehicle that contained defects in violation of federal regulations. This information is and was material to Plaintiffs and their Insureds, as it would be plainly relevant to any consumer.

490. Defendants, at all material times, knew or should have known that Plaintiffs and their Insureds did not know of, or could not have reasonably discovered, the safety risks or the defects in the Defendants' Vehicles.

491. By concealing the serious safety risks created by their Vehicles and the existence of these defects, Defendants engaged in actionable, unfair, and fraudulent conduct within the meaning of the UCL.

492. Had the Insureds known of the serious safety risks and the defects in the Vehicles, it is reasonably likely they would not have purchased the Vehicles, and if purchased, could have taken action to frustrate the likelihood of theft.

493. Defendants' acts and practices deceived Plaintiffs and their Insureds and are likely to deceive the public. By failing to disclose the defect and suppressing other material facts from Plaintiffs and their Insureds, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and their Insureds. The Defendants' omissions and acts of concealment pertained to information that was material to the Insureds, as it would have been to all reasonable consumers.

494. By failing to disclose and concealing the existence of a defect in the Vehicles, Defendants engaged in unfair conduct within the meaning of the UCL.

495. Defendants' misconduct is unfair within the meaning of the UCL as it offends established policy and is immoral, unethical, unscrupulous, and substantially injurious to consumers.

496. Plaintiffs, who insure property and automobiles, have suffered damages as a result of Defendants' misconduct.

497.   Defendants' unlawful, unfair and fraudulent business acts and practices continue through the date of the filing of this Complaint.

498.   Plaintiffs request that this Court enjoin Defendants from engaging in business practices that constitute a violation of the UCL. Plaintiffs further request that this Court enter such orders or judgments as may be necessary to restore by restitution any value which may have been lost, or incurred by means of such unfair practices, as provided for in Bus. & Prof. Code § 17203 and for such other relief as appropriate under the law or at equity.

## G.   Fraud By Omission and Concealment

499.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

500.   Defendants affirmatively stated that the Vehicles conform with all applicable safety and anti-theft standards, but that is not true.  In reality, the Vehicles do not comply with such standards.

501.   Upon information and belief, Defendants knew the Vehicles contained no anti-theft features or design elements that would prevent the Vehicles from achieving either forward self-mobility or steering without a key. Accordingly, Defendants were aware that the Vehicles suffered from the Thief Friendly Design that rendered the Vehicles vulnerable to an abnormally high risk of theft.  Regardless, Defendants self-certified to the NHTSA that the Vehicles complied with NHVSS 114.

502.   Despite their knowledge that the Vehicles employed a Thief Friendly Design that failed to comply with federal safety and anti-theft requirements, Defendants did provide the Insureds with mandatory anti-theft protections as a standard feature.  Instead, Defendants required that the Insureds purchase expensive and unnecessary trim packages at a substantial extra cost in order to obtain this minimum anti-theft protection.

503.   Defendants intentionally failed to disclose, and actively concealed, the existence of the Thief Friendly Design.   Further the Defendants affirmatively

concealed the fact that the Vehicles did not comply with FMVSS 114. In marketing materials, Defendants often advertised that higher-end trim packages came with a "push button start" feature rather than a traditional turn-key ignition. However, Defendants did not inform consumers that the Vehicles sold without those optional trim-packages lacked federally mandated anti-theft protection designed to safeguard life and property.  Defendants' promotional materials failed to disclose the Thief Friendly Design while simultaneously promoting and encouraging the purchase of expensive trim packages.

504.  Upon information and belief, Defendants have also known of the unusually high rate of thefts experienced by Vehicles for many years. Defendants received notification of the high rate of thefts through relevant governmental agencies and communications with their dealerships. Nevertheless, Defendants continued to manufacture and sell dangerous and defective Vehicles that did not comply with FMVSS 114 without warning consumers of the resultant severe risk of theft.

505.  Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and otherwise failed to disclose to consumers the fact that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles, including information about compliance with applicable standards, that they marketed and offered for sale and lease to consumers, HMA and KA had a duty to disclose the whole truth.

506.  Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design.  Instead, Defendants had a duty to disclose the existence of the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

507.  Defendants knew the truth regarding the Thief Friendly Design, and that truth was not known to, or reasonably discoverable by, Plaintiffs' Insureds.

508.   Plaintiffs' Insureds lacked the sophisticated expertise in vehicle design and internal components that would be necessary to discover the Thief Friendly Design's as it is concealed and technical in nature.

509.   For the reasons set forth above, the Vehicles' Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.  Any consumer would consider it important to know that the Vehicles do not conform with federal regulations and other applicable anti-theft, and safety standards.

510.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for consumers.  Defendants further understood the Thief Friendly Design would have been a material fact affecting the Plaintiffs' Insureds' decisions to buy or lease the Vehicles.

511.   Defendants intended for the Insureds to rely on their misstatements and omissions regarding the Vehicles' failure to comply with relevant and applicable safety and anti-theft standards.

512.   Plaintiffs' Insureds did in fact rely on Defendants' statements and omissions at the time they agreed to purchase and/or lease the Vehicles.  The Insureds selected vehicles while reasonably believing that Vehicles would not have a Thief Friendly Design that would affect the quality, reliability, availability, and/or safety of the Vehicles.

513.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

514.   If Defendants had fully and adequately disclosed the Thief Friendly

Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

515.   By concealing information about the Thief Friendly Design, Defendants prevented the Insureds from realizing their Vehicles were uniquely susceptible to theft in a matter of seconds. Through their omissions and concealment with respect to the Thief Friendly Design, Defendants intended to induce, and did induce the Insureds to purchase or lease a Vehicle that they otherwise would not have purchased, a Vehicle that was susceptible highly susceptible to theft, and that was stolen and/or damaged due to the Thief Friendly Design.

516.   Had the Insureds known of the Thief Friendly Design, it is reasonably likely that they would not have purchased the Vehicles, would have paid less for them, and could have taken precautions to reduce the likelihood of theft and/or damage.

517.   As a direct and proximate result of Defendants' omissions, the Insureds' Vehicles were stolen or damaged. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

518.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

## H.   Breach of Express and Implied Warranties Under The Magnuson-Moss Warranty Act – 15 U.S.C. § 2301, *et seq.*

519.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

520.   Plaintiffs stand in the shoes of their Insureds, who are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

521.   Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

522.   The Vehicles are "consumer products" within the meaning of 15 U.S.C. §2301(1).

523.   Defendants were at all relevant times the manufacturer, distributor,

1    warrantor, and seller of the Vehicles.

2        524.   In the alternative, if Defendants were not the sellers of the Vehicles to

3    Plaintiffs' Insureds, Plaintiffs' Insureds were the intended third-party beneficiaries of

4    any and all sales contracts in which one or more Defendants sold Vehicles to Kia and

5    Hyundai dealers or others with the intent that they be resold to consumers, including

6    Plaintiffs' Insureds.

7        525.   Defendants provided an express warranty to Plaintiffs' Insureds that their

8    vehicles conform to all applicable motor vehicle safety, bumper, and theft prevention

9    standards in effect on the date of manufacture.  This express warranty was set forth

10   on the VIN plate, and on information and belief, provided at the point of sale with

11   sales materials.

12       526.   Defendants also provided Plaintiffs' Insureds with an implied warranty

13   that the Vehicles and any parts thereof were merchantable and fit for the ordinary

14   purposes for which they were sold. However, the Vehicles were not fit for their

15   ordinary purpose of providing reasonably reliable or safe transportation at the time of

16   sale or thereafter because, *inter alia*, the defective Vehicles lacked any anti-theft

17   features or design elements sufficient to satisfy FMVSS 114, or otherwise provide an

18   adequate theft deterrent, resulting in a severe and highly dangerous risk of vehicle

19   theft, and in fact, the Vehicles belonging to Plaintiffs' Insureds were stolen and/or

20   damages as a result.

21       527.   Defendants impliedly warranted that the Vehicles were of merchantable

22   quality and fit for their ordinary and intended use. This implied warranty included,

23   among other things, a warranty that the Vehicles manufactured, supplied, distributed,

24   and sold by Defendants were safe and reliable for providing transportation, would not

25   be vulnerable to an abnormally high risk of theft, and complied with applicable federal

26   and state law and regulations, including FMVSS 114.

27       528.   Defendants' warranties were designed and intended for the benefit of the

28   Plaintiffs' Insureds as ultimate consumers of the Vehicles.

529.   Contrary to the applicable implied warranties, the Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs' Insureds with reliable, durable, and safe transportation. Instead, the Vehicles suffer from design defect(s) and/or manufacturing defect(s) that render them vulnerable to an abnormally high risk of theft.

530.   Defendants' actions, as complained of herein, breached the implied warranty that the Vehicles were of merchantable quality and fit for such use.

531.   Defendants' breach of the implied warranties has deprived Plaintiffs' Insureds of the benefit of their bargain.

532.   The amount in controversy of Plaintiffs' claims meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

533.   Plaintiffs provided notice of the issues raised within this count on March 09, 2023. Plaintiffs and their Insureds, however, were not required to provide Defendants with written notice of their claims and an opportunity to cure because affording Defendants a reasonable opportunity to cure their breach of written warranties would have been futile. Defendants were also on notice of the alleged defects from the complaints and service requests it received from consumers, including through NHTSA, as well as from their own warranty claims, customer complaint data, and parts sales data. This is evidenced by Defendants' own statements acknowledging the issue.

534.   As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage, loss of use damage, consequential damages, and other damages and costs, for which the Defendants are liable, together with statutory attorney's fees and such other relief which the Court deems to be just and appropriate.

## I.    Negligence

535.   Plaintiffs incorporate by reference each preceding and succeeding

paragraph as if fully set forth at length herein.

536.   Defendants manufactured, distributed and sold the Vehicles.

537.   Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

538.   Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

539.   Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.  Defendants similarly failed to exercise reasonable care in crafting communications that concealed the Thief Friendly Design from the Insureds.

540.   The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

541.   The Defendants' violation of their duties under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

542.   As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use

1 the Vehicles, together with other damages for which the Defendants are liable.

2 **J.    Negligent Failure To Warn**

3    543.   Plaintiffs incorporate by reference each preceding and succeeding

4 paragraph as if fully set forth at length herein.

5    544.   Defendants manufactured, distributed, and sold the Vehicles.

6    545.   The Vehicles sold to Plaintiffs' Insureds:

7        a.    were not merchantable;

8        b.    were not reasonably suited to the intended use for which they were

9            sold; and

10       c.    were in a defective and unreasonably dangerous condition at the

11           time of sale, by reason of the design of the Vehicles.

12   546.   Defendants made affirmative statements that the Vehicles conform with

13 all applicable safety and anti-theft standards.  In reality, however, the Vehicles do not

14 comply with such standards.

15   547.   Defendants owed Plaintiffs' Insureds a duty to warn with respect to

16 dangers and risks associated with the ordinary and foreseeable use of the Vehicles,

17 particularly when such risks arose from latent and hidden defects of design that could

18 not be detected by Plaintiffs' Insureds in the exercise of any reasonable care.

19   548.   At all relevant times, including at the time of sale, Defendants knew that

20 the Vehicles were defective because they lacked immobilizers or other anti-theft

21 features or design elements sufficient to comply with FMVSS 114, creating a

22 dangerous risk of vehicle theft, a risk to the safety of consumers and the public, and a

23 risk of property damage and loss.

24   549.   Defendants breached their duty owed to the Insureds by failing to

25 provide them with any warnings with respect to the dangers and risks of vehicle thefts

26 and harm to consumers, the public, and property directly resulting from the design of

27 the Vehicles, including the lack of anti-theft features and/or design elements that

28 complied with FMVSS 114.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

550.   The failure to warn Plaintiffs' Insureds of the dangers and risks caused by noncompliance with FMVSS 114 was unreasonable, and Defendants' failure to warn was the result of a lack of due care and ordinary diligence.

551.   Defendants' failure to warn Plaintiffs' Insureds regarding the defective and unreasonably dangerous condition of the Vehicles proximately caused damage to Plaintiffs' Insureds resulting from vehicle thefts.

552.   Defendants are liable in tort for negligent failure to warn for the damages caused by and to the Vehicles.

553.   Defendants owe a duty to consumers not to sell dangerous products that create severe risks of vehicle theft, property damage, and harm to the safety of consumers and the public, and to warn consumers of such risks. This duty arises under applicable law and is independent of any contractual obligation.

554.   As a direct and proximate result of Defendants' negligent failure to warn Plaintiffs' Insureds, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, and other damages for which Defendants are liable.

## K.   Negligent Misrepresentation

555.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

556.   Defendants made representations to Plaintiffs' Insureds concerning the safety and quality of the Vehicles that were not true, as more fully alleged in the preceding paragraphs.

557.   Defendants had no reasonable grounds for believing these representations were true when they made them, yet they intended that Plaintiffs' Insureds rely on the misrepresentations.

558.   Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, and other damages for

1  which the Defendants are liable.

2  ## **ALABAMA STATE LAW CLAIMS FOR RELIEF**

3  **(Alleged by Adopting Plaintiffs, and Members of Alabama Subclasses, against**
4  **All Defendants)**

5  559.  Class Plaintiffs, the Hyundai Alabama Subclass and Kia Alabama

6  Subclass, and Independent Subrogation Plaintiffs allege the following causes of

7  action against All Defendants.

8  560.  The Alabama Subclasses are comprised of named and unnamed

9  Members of the nationwide classes with claims stemming from vehicles losses

10 (including Kia and Hyundai Vehicles) due to Defendants' Thief Friendly Design in

11 the State of Alabama including, but not limited to, the following named Class

12 Plaintiffs: Allstate Fire and Casualty Insurance Company; Allstate Indemnity

13 Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company;

14 Allstate Property & Casualty Insurance Company; Permanent General Assurance

15 Corporation; American Family Connect Property and Casualty Company; American

16 Family Insurance Company; GEICO General Insurance Company; Government

17 Employees Insurance Company; GEICO Casualty Company; Horace Mann Property

18 & Casualty Insurance Company; Nationwide Property & Casualty Insurance

19 Company; Nationwide Affinity Insurance Company of America; Nationwide General

20 Insurance Company; Nationwide Insurance Company of American; Victoria Select

21 Insurance Company; Progressive Mountain Insurance Company;  Progressive

22 Specialty Insurance Company; and USAA Casualty Insurance Company, all of whom

23 paid policy proceeds to their respective Insureds  in Alabama pursuant to policies of

24 insurance.

25 **A.**    **Breach of Implied Warranties of Merchantability and Fitness for a**
26       **Particular Purpose (Ala. Code §§ 7-2-314 and 7-2a-212)**

27 561.  Plaintiffs reallege and incorporate by reference all preceding allegations

28 as though fully set forth herein.

562.   Named Subclass Members bring this count individually and on behalf of the other members of the Alabama Subclasses against Defendants.

563.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

564.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and "sellers" of motor vehicles under §7-2-103(1)(d).

565.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ala. Code §§ 7-2-103(1)(p), and Plaintiffs and Subclass Members who leased Vehicles in Alabama are "lessees" within the meaning of Ala. Code § 7-2A-103(1)(n).

566.   Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in Alabama and are therefore "buyers" within the meaning of Ala. Code §§ 7-2-103(1)(a).

567.   The Vehicles were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

568.   Defendants knew of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for their intended purpose, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114, and industry standards.

569.   However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary

purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

570.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

571.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Subclass Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever-present risk of them being stolen.  In fact,

572.   Plaintiffs and Subclass Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Thief Friendly

1  Design became public.

2  573.   Alternatively, Plaintiffs and the Subclass Members were excused from

3  providing Defendants with notice and an opportunity to cure the breach, because it

4  would have been futile. As alleged throughout this Consolidated Complaint,

5  Defendants have long known that the Vehicles contained the Thief Friendly Design;

6  however, to date, Defendants have not instituted an adequate and meaningful repair

7  program with respect to the Vehicles. Any remedy, fix, or repair offered by

8  Defendants to date has been ineffective. As such, Plaintiffs and Subclass Members

9  had no reason to believe that Defendants would have adequately repaired the Thief

10  Friendly Design if they presented their Vehicles to them for repair.

11  574.   As a direct and proximate result of Defendants' breach of the implied

12  warranty of merchantability, the Vehicles are defective, and the Thief Friendly Design

13  in the Vehicles has not been remedied. Therefore, Plaintiffs and Subclass Members

14  have been damaged, in an amount to be proven at trial.

15  **B.    Breach of Express Warranty (Ala. Code § 7-2-13)**

16  575.   Plaintiffs reallege and incorporate by reference all preceding allegations

17  as though fully set forth herein.

18  576.   Named Subclass Members bring this count individually and on behalf of

19  the other members of the Alabama Subclasses against Defendants.

20  577.   During all relevant periods of time, Defendants sold Hyundai and Kia

21  branded Vehicles that failed to conform to Defendants' description of the Vehicles as

22  warranted. Affixed to those Vehicles, of both Kia and Hyundai Vehcles, were VIN

23  plates stating that the Vehicles conform to all applicable vehicle safety, bumper, and

24  theft prevention standards in effect on the date of manufacture. An example of a VIN

25  plate that was affixed to a 2015 Kia Optima Vehicle is provided in a prior Paragraph

26  of this Complaint.

27  578.   The statements on the VIN plates as to the Vehicles' compliance with

28  safety and anti-theft regulations are affirmations of fact and a promise to Plaintiffs'

Insureds. Those statements amount to an express warranty under Ala. Code § 7-2-13.

579.   Defendants received ample notice about their Vehicles' failing to meet safety and theft prevention standards through Plaintiffs, Plaintiffs' Insureds, and international media attention. Plaintiffs provided express notice of this failure by letter dated March 09, 2022.  To date, Defendants have failed to remedy the problem in a meaningful way, and as a result, thefts continue to escalate.

580.   Defendants breached their express warranty by failing to timely cure the Vehicles' defects that allowed the Vehicles to be easily stolen. The failure to cure the defect resulted in monetary losses in the millions.

## C.   Violation of the Alabama Deceptive Trade Practices Act (Ala. Code §§ 8-19-1, et seq.)

581.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

582.   Named Subclass Members bring this count individually and on behalf of the other members of the Alabama Subclasses against Defendants.

583.   Defendants, Plaintiffs, all Subclass Members, and their Insureds are "persons" within the meaning of Ala. Code. §§ 8-19-3(5).

584.   Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "consumers" within the meaning of §§ 8-19-3(2)(5).

585.   The Vehicles are "goods" within the meaning of §§ 8-19-3(3).

586.   Defendants were and are engaged in "trade or commerce" within the meaning of §§ 8-19-3(8).

587.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce[.]" §§ 8-19-3(5).

588.   In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

589.   Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Alabama DTPA in the course of their business. Specifically, Defendants owed the Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

590.   Information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

591.   By misrepresenting the Vehicles as safe, reliable, and compliant with all applicable anti-theft and safety standards, and by failing to disclose, while actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the unfair or deceptive business practices prohibited by the Alabama DTPA.

592.   The reliance of Plaintiffs' Insureds was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above, Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

593.   Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles. By concealing information about the Thief Friendly Design, Defendants prevented the Insureds from realizing their Vehicles were uniquely susceptible to theft in a matter of seconds.

594.   Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information to Plaintiffs' Insureds.

595.   Defendants' violations present a continuing risk to Plaintiffs and Class

Members, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

596.   Pursuant to the Alabama DTPA, Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair and/or deceptive act and/or practices and awarding damages and any other just and proper relief available under the Alabama DTPA.

**D.     Fraud by Misstatement and Suppression of Material Facts (Ala. Code §§ 6-5-101, 6-5-102)**

597.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

598.   Named Subclass Members bring this count individually and on behalf of the other members of the Alabama Subclasses against Defendants.

599.   Defendants designed, manufactured, marketed, sold, and leased the Vehicles. In doing so, Defendants were aware of the Vehicles capabilities, and knew whether the Vehicles met applicable regulatory and industry safety and anti-theft standards, like FMVSS 114.

600.   Defendants knew that the Vehicles failed to meet all applicable safety and anti-theft standards because the Vehicles suffered from a Thief Friendly Design that rendered the Vehicles vulnerable to theft by juveniles in a matter of seconds.

601.   Despite knowing that the Vehicles were manufactured with the Thief Friendly Design, Defendants affixed VIN Plates to the Vehicles stating that the Vehicles conform to all applicable standards, including bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.  On information and belief, similar written statements were made to Plaintiffs' Insureds by Defendants prior to, or at the point of sale or lease of the Vehicles to the Insureds.

602.   Defendants suppressed material facts about the Thief Friendly Design

and were obligated to disclose the true nature of the Thief Friendly Design because those facts were known to them when the Vehicles were manufactured and sold, and particularly in view of Defendants' false statement that the Vehicles complied with all applicable safety and anti-theft standards. These actions by Defendants constitute the willful suppression and misrepresentation of material facts meant to induce the Insureds to act, and the Insureds did act upon those misrepresentations and omissions, giving rise to damages due to deceit, and suppression of material facts.

603.   For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because any reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle. Specifically, any consumer would consider as important the information that the Vehicles did not comply with federal safety and anti-theft standards. The Thief Friendly Design is also material because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds.

604.   The Insureds' reliance upon Defendants' statements and omissions was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

605.   Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information to Plaintiffs' Insureds.

**E.    Negligence**

606.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

607.   Named Subclass Members bring this count individually and on behalf of the other members of the Alabama Subclasses against Defendants.

608.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

609.   Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

610.   Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

611.   The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

612.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

613.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

614.   Defendants' conduct evinced an indifference to and a reckless disregard of the health or safety of Plaintiffs and Plaintiffs' Insureds thereby entitling them to exemplary and punitive damages.

**F.    Gross Negligence**

615.   Plaintiffs reallege and incorporate by reference each preceding and

1  succeeding paragraph as though fully set forth at length herein.

2  616.  Named Subclass Members bring this count individually and on behalf of

3  the other members of the Alabama Subclasses against Defendants.

4  617.  Defendants manufactured, distributed, sold, and/or leased the Vehicles.

5  618.  Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

6  619.  In connection with Defendants' manufacture, distribution, sale, and/or

7  leasing of the Vehicles, Defendants acted with reckless indifference to the rights

8  and/or safety of Plaintiffs and Plaintiffs' Insureds.

9  620.  Defendants' violation of their duties under applicable law and/or the

10  applicable standard of care included their failure to comply with federal regulatory

11  requirements to equip their vehicles with mandatory anti-theft protection that

12  complies with the requirements of FMVSS.

13  621.  As a result of Defendants' failure to exercise reasonable care, Plaintiffs

14  and Plaintiffs' Insureds suffered damages, including property damage and the loss of

15  use of the Vehicles, together with other damages for which Defendants are liable.

16  622.  Defendants' conduct evinced an indifference to and a reckless disregard

17  of the health or safety of Plaintiffs and Plaintiffs' Insureds thereby entitling them to

18  appropriate damages under Alabama law.

19  **ALASKA STATE LAW CLAIMS FOR RELIEF**

20  **(Alleged by Adopting Plaintiffs, and Members of Alaska Subclasses, against All**

21  **Defendants)**

22  623.  Class Plaintiffs, the Hyundai Alaska Subclass and Kia Alaska Subclass,

23  and Independent Subrogation Plaintiffs allege the following causes of action against

24  All Defendants.

25  624.  The Alaska Subclasses are comprised of nationwide Hyundai and Kia

26  Class Members with claims stemming from vehicle losses (including Kia and

27  Hyundai Vehicles) in the State of Alaska due to Defendants' Thief Friendly Design,

28  including, but not limited to, the following named Class Plaintiffs:  Allstate Fire and

Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Indemnity Company; USAA General Indemnity Company; and United Services Automobile Association, all of whom paid policy proceeds to their respective Insureds for losses in Alaska pursuant to policies of insurance.

**A.  Breach of Implied Warranty (Alaska Stat. Ann. §§ 45.02.314 and 45.12.212)**

625.  Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

626.  "Defendants were at all relevant times 'merchants' with respect to motor vehicles under Alaska Stat. Ann. §§ 45.02.104(a) and 45.12.103(c)(11), and 'sellers' of motor vehicles under § 45.02.103(a)(4).

627.  With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. Ann. § 45.12.103(a)(16).

628.  The Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. Ann. §§ 45.02.105(a) and 45.12.103(a)(8).

629.  A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Alaska Stat. §§ 45.02.314 and 45.12.212.

630.  Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied,

distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

631.   However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacked any anti-theft features or design elements to provide an adequate theft deterrent, or to otherwise satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

632.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and their Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

633.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs and may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are)

able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.   Any remedy proposed by Defendants, moreover, does nothing to address thefts that have already occurred, and upon information and belief, the proposed remedies offered to date fail to address the Thief Friendly Design.

634.   Plaintiffs provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the notice letters sent by Insureds, and Subclass Members within a reasonable amount of time after the Thief Friendly Design became public. On March 9, 2023, moreover, Plaintiffs provided actual notice to Defendants of the Thief Friendly Design, and Defendants have failed to respond with an effective remedy to the Thief Friendly Design.

635.   Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout this Consolidated Complaint, and other Complaints filed in connection with this MDL proceeding, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Insureds' Vehicles to them for repair, nor has any repair, or remedy offered to date been effective. The thefts and damages that have already occurred due to the Thief Friendly Design, moreover, cannot be remedied by repair.

636.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Vehicles were and are defective, and the Thief Friendly Design in the Vehicles has not been remedied. As a direct and proximate result, Plaintiffs and Subclass Members have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty (Alaska Stat. §§ 45.02.313 and 45.12.210)**

637.   Plaintiffs reallege and incorporate by reference all preceding allegations

1 as though fully set forth herein.

2     638.  "Defendants were at all relevant times 'merchants' with respect to motor

3 vehicles under Alaska Stat. Ann. §§ 45.02.104(a) and 45.12.103(c)(11), and 'sellers'

4 of motor vehicles under § 45.02.103(a)(4).

5     639.  With respect to leases, Defendants are and were at all relevant times

6 "lessors" of motor vehicles under Alaska Stat. Ann. § 45.12.103(a)(16).

7     640.  The Vehicles are and were at all relevant times "goods" within the

8 meaning of Alaska Stat. Ann. §§ 45.02.105(a) and 45.12.103(a)(8).

9     641.  Within the relevant time period, Plaintiffs' and Subclass members'

10 Insureds purchased or leased Hyundai and Kia branded Vehicles from Defendants.

11     642.  In connection with the purchase or lease of each one of its new vehicles,

12 Defendants, through the attachment of VIN plates, made an express warranty that the

13 Vehicles conform to all applicable U.S.A. Federal Motor Vehicle Safety Standards

14 ("FMVSS"), including bumper, and theft prevention standards in effect on the date of

15 manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

16 Vehicle is provided above. On information and belief, similar written warranties were

17 made prior to, or at the point of sale.

18     643.  At all times, 49 U.S.C. § 30115(a) required Defendants to certify that the

19 Vehicles complied with all applicable motor vehicle safety standards, including

20 FMVSS 114.

21     644.  At all times, 49 U.S.C. § 30115(b)(2) codified the Defendants'

22 requirement to assume responsibility for compliance with all applicable motor vehicle

23 safety standards, including FMVSS 114.

24     645.  FMVSS 114 (49 CFR § 571.114) requires manufacturers of motor

25 vehicles that each vehicle must have a starting system which, whenever the key is

26 removed from the starting system prevents:

27           a.    The normal activation of the vehicle's engine or motor; and

28           b.    Either steering, or forward self-mobility, of the vehicle, or both.

646.   As manufacturers of motor vehicles, Defendants were required to manufacture the Vehicles to prevent engine activation when the key is removed from the starting system.

647.   After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein. Plaintiffs discovered that the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture after their Insureds reported theft and damage to their Vehicles in alarming numbers. Plaintiffs then determined that the Vehicles failed to perform properly because the Vehicles lacked an anti-theft device that conforms with industry standards and/or federal regulations set forth above. As a result of that Thief Friendly Design, the Vehicles were easily stolen, and thus failed to conform to the terms of the express warranty described in the Vehicles' VIN plates.

648.   The Defendants' warranties formed part of the bargain that was reached when Plaintiffs' Insureds purchased or leased Vehicles equipped with the non-compliant Thief Friendly Design.

649.   Despite the existence of warranties, the Defendants failed to inform Plaintiffs or their Insureds that the Vehicles were intentionally designed and manufactured to be out of compliance with applicable state and federal theft and safety regulations, including FMVSS 114, and failed to fix the defective components free of charge.

650.   Defendants breached their express warranty that promised to comply with applicable theft and safety standards, including FMVSS 114.

651.   As alleged in more detail herein, at the time the Defendants warranted and sold or leased the Vehicles, they knew that the Vehicles were inherently defective and did not conform to their warranties.

652.   Defendants wrongfully and fraudulently concealed material facts

1  regarding the Vehicles. The Insureds were therefore induced to purchase or lease the

2  Vehicles under false and/or fraudulent pretenses.

3  653.  Many if not all of the damages flowing from the substandard Vehicles

4  cannot be resolved through the limited remedy of "replacements or adjustments," as

5  many incidental and consequential damages have already been suffered because of

6  Defendants' fraudulent conduct as alleged herein, and because of its failure and/or

7  continued failure to provide even a limited viable remedy within a reasonable time,

8  and any limitation on Plaintiffs' and the other Alaska Subclass members' remedies

9  would be insufficient to make Plaintiffs and the other Alaska Subclass members

10 whole.

11  654.  The Defendants were provided notice of these issues by numerous

12 complaints filed against them, including the instant Complaint, within a reasonable

13 amount of time. Plaintiffs and Class members provided express notice of breaches of

14 warranty caused by the Thief Friendly Design on March 09, 2023.

15  655.  As a direct and proximate result of the Defendants' breach of express

16 warranties, Plaintiffs and Subclass members have been damaged in an amount to be

17 determined at trial.

18 **C.  Violation of the Alaska Unfair Trade Practices and Consumer Protection**

19  **Act (Alaska Stat. Ann. § 45.50.471, et seq.)**

20  656.  Plaintiffs reallege and incorporate by reference all preceding allegations

21 as though fully set forth herein.

22  657.  Plaintiffs and Subclass Members stand in the shoes of their Insureds as

23 consumers (Alaska Stat. Ann. § 45.50.561) who bought or leased Vehicles from

24 Defendants.

25  658.  Defendants engaged in unfair methods of competition and unfair or

26 deceptive acts or practices in the conduct of trade or commerce, which is deemed

27 unlawful (Alaska Stat. Ann. § 45.50.471(a)).

28  659.  Defendants knowingly and intentionally misrepresented, omitted,

concealed, and/or failed to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design.

660.    The Alaska Unfair Trade Practices Act and Consumer Protection Act ("Alaska CPA") declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce . . . are unlawful." Alaska Stat. Ann. § 45.50.471(a). The Alaska CPA declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" or "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. § 45.50.471 (b) (4, 6, 8, 12).

661.    In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

662.    Through their business, Defendants concealed and suppressed material facts concerning the Vehicles. Defendants accomplished this by manufacturing the Vehicles with inherently substandard design flaws that allow not only theft, but due to its ease, encouraged those who would otherwise not steal or lack the know-how to steal the Vehicles, to engage in theft of the Vehicles. Defendants knew the Thief

Friendly Design existed in the vehicles and nonetheless placed them on the market for purchase.

663. Defendants knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design. Defendants, through the attachment of VIN plates, falsely promised and misrepresented that the Vehicles conformed to all applicable FMVSS standards, including bumper, and theft prevention standards in effect on the date of manufacture.

664. Defendants misrepresented the true quality and nature of the Vehicles, causing likelihood of confusion, falsely attributing approval and characteristics, falsely advertising the standard, quality, and grade, and employing deceptive practices (Alaska Stat. Ann. § 45.50.471(b)(3), (4), (6), (8), (11), and (12)).

665. The result was what Defendants intended—the Vehicles were sold to consumers by way of false statements, misrepresentations, and omissions of material facts. The Insureds had no way of discerning that Defendants' representations were false and misleading. Plaintiffs and/or Alaska Subclass members did not and could not unravel Defendants' deception on their own.

666. Defendants thus violated the Act by, at minimum, representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

667. The misrepresentations, concealments, omissions, and suppressions by the Defendants were material to the Insureds' decisions to purchase or lease the Vehicles because they directly impacted the availability, value, cost, and reliability of the Vehicles.

668. Plaintiffs and Class Members relied on the misrepresentations and suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material

information.

669.   The violations by the Defendants present a continuing risk to Plaintiffs, Class Members, and the general public due to the existence of the Thief Friendly Design in the Vehicles.

670.   Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Alaska CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and their Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above: a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds; b. Given the Thief Friendly Design's hidden and technical nature, the Insureds' lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own; c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and d. Defendants made false representations that the Vehicles complied with applicable anti-theft standards, and incomplete representations about the safety and reliability of the Vehicles while stating the Vehicles complied with all applicable safety and anti-theft standards and purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design, while simultaneously representing that the Vehicles complied with applicable safety and anti-theft standards.

671.   As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles. Defendants had

exclusive knowledge of the Thief Friendly Design and failed to disclose the same to Plaintiffs' Insureds and the Insureds of Subclass Members, violating their duty under the Alaska CPA (Alaska Stat. Ann. § 45.50.471(a)).

672.   By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Alaska Stat. Ann. § 45.50.471(b): a. Causing a likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; b. Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have, including that they complied with all applicable safety and anti-theft standards; c. Representing that the Vehicles are of a particular standard, quality, and grade, including that they complied with all applicable safety and anti-theft standards, when they are not; d. Advertising the Vehicles with the intent not to sell or lease them as advertised; e. Engaging in other conduct which created a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages; and f. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby. Alaska Stat. Ann. § 45.50.471(b)(3), (4), (6), (8), (11), and (12).

673.   Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

674.   Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles

were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

675. Defendants owed the Insureds a duty to disclose the safety and security risks of the Vehicles because Defendants:

   a. possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with all applicable motor vehicle safety standards; and/or

   b. intentionally concealed the foregoing from Plaintiffs' and/or Alaska Subclass members' Insureds; and/or

   c. made false and incomplete representations about the safety and security of the Vehicles generally, and the Thief Friendly Design in particular, while purposefully withholding material facts from Plaintiffs' and/or Alaska Subclass members' Insureds that contradicted these representations.

Instead, Defendants concealed the Thief Friendly Design and the true nature of the safety, and security of the Vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Vehicles has greatly diminished.

676. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

677.   The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

678.   Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

679.   Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

680.   Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

681.   On March 9, 2023, Plaintiffs and Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by various Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs and Subclass members seek all damages and relief to which they are entitled.

682.   Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

683.   Pursuant to Alaska Stat. Ann. § 45.50. 531, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each Plaintiff and each Subclass member.

684.   Pursuant to Alaska Stat. Ann. §§ 45.50.531 and 45.50.535, Plaintiffs, and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Alaska CPA.

**D.     Fraud by Misrepresentation, Concealment and Omission**

685.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

686.   Defendants are liable for negligent representation for, at minimum, representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

687.   Defendants engaged in misleading, false, unfair or deceptive acts or practices by installing substandard theft prevention equipment, failing to disclose and actively concealing the Thief Friendly Design and the true security characteristics of the Vehicles, by marketing its vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to FMVSS 114.

688.   The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards.

689.   The Defendants failed to use reasonable care or competence in obtaining or communicating the Thief Friendly Design, and went as far as to affix each Vehicle with a VIN plate that not only omitted information, but misrepresented the truth. Defendants knew that the Vehicles did not comply with all applicable motor vehicle safety standards, including but not limited to FMVSS 114.

690.   Defendants' misrepresentations listed above were fraudulent in that they:

1) knew or believed that the Vehicles did not comply with all applicable motor vehicle safety standards, including but not limited to FMVSS 114; and/or 2) did not have confidence in the accuracy of the representations affixed to the Vehicles' vin plates; and/or 3) knew they did not have the basis for the representations stated or implied.

691.   Defendants made the fraudulent misrepresentations above for the purpose of inducing Plaintiffs' and/or Alaska Subclass members' Insureds to act in reliance on them and thus purchase the Vehicles.

692.   For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle. Specifically, any consumer would consider as important the information that the Vehicles did not comply with federal safety and anti-theft standards. The Thief Friendly Design is also material because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds.

693.   Plaintiffs' and/or Alaska Subclass members' Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards.

694.   The Defendants failed to use reasonable care or competence in obtaining or communicating the Thief Friendly Design, and went as far as to affix each Vehicle with a vin plate that not only omitted information, but misrepresented the truth.

695.   As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs and/or Alaska Subclass members have suffered injury-in-fact and/or actual damage.

696.   As a direct and proximate result of the Defendants' fraudulent misrepresentations, Plaintiffs and/or Alaska Subclass members have been damaged in an amount to be determined at trial, reflecting the pecuniary loss caused to them by their Insureds' justifiable reliance on them.

**E.     Negligence**

697.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

698.   Defendants manufactured, distributed and sold the Vehicles.

699.   Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

700.   Defendants' duty of care is based upon applicable codes, industry standards and customs, and statutory and common law requirements. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

701.   The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

702.   The Defendants' violation of their duties under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

703.   The Plaintiffs and Plaintiffs Insureds suffered damages as a direct and proximate result of Defendants' breach of their duties and the applicable standard of care.

704.   As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, together with other damages for which the Defendants are liable.

**F.     Negligent Misrepresentation**

705.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

706.   Defendants are liable for negligent representation for, at minimum, representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

707.   Defendants made these representations to induce the Insureds into purchasing Vehicles.

708.   Defendants engaged in misleading, false, unfair or deceptive acts or practices by installing substandard theft prevention equipment, failing to disclose and actively concealing the Thief Friendly Designs and the true security characteristics of the Vehicles, by marketing its vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to FMVSS 114.

709.   The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards.

710.   The Defendants failed to use reasonable care or competence in obtaining or communicating the Thief Friendly Design and went as far as to affix each Vehicle with a vin plate that not only omitted information, but misrepresented the truth.

711.   As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiffs and/or Alaska Subclass members have suffered injury-in-fact and/or actual damage.

712.   As a direct and proximate result of the Defendants' negligent misrepresentations, Plaintiffs and/or Alaska Subclass members have been damaged in an amount to be determined at trial.

**G.     Gross Negligence**

713.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

714.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

715.   Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

716.   In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless disregard of possible consequences and indifference to the rights of others including Plaintiffs and Plaintiffs' Insureds.

717.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

718.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

719.   Defendants' conduct evidenced a reckless disregard of possible consequences and indifference to the rights of others including Plaintiffs and Plaintiffs' Insureds thereby entitling Plaintiffs and Plaintiffs' Insureds to exemplary and punitive damages.

## ARIZONA STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of Arizona Subclasses, against All Defendants)**

720.   Class Plaintiffs, the Hyundai Arizona Subclass and Kia Arizona Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

721.   The Arizona Subclasses are comprised of Class Members with claims stemming from vehicle losses (from Kia and Hyundai Vehicles) in the State of

Arizona due to the Defendants' Thief Friendly Design including, but not limited to, the following named Class Plaintiffs:  Acuity, A Mutual Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, SI; Main Street America Protection Insurance Company; Permanent General Assurance Company; Erie Insurance Exchange; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; American Access Casualty Company; GEICO Advantage Insurance Company; GEICO Casualty Company; GEICO Choice Insurance Company; GEICO County Mutual Insurance Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Kemper Independence Insurance Company; Financial Indemnity Company; Infinity Insurance Company; Nationwide Affinity Insurance Company; Nationwide Mutual Insurance Company;  Garrison Property & Casualty Insurance Company; USAA Casualty Indemnity Company; USAA General Indemnity Company; and United Services Automobile Association, all of whom paid policy proceeds to their respective Insureds for losses in Arizona pursuant to policies of insurance.

## A.    Breach of Implied Warranty of Merchantability (Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212)

722.   Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

723.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ariz. Rev. Stat. Ann. §§ 47-2104(A) and 47-2A103(C)(11), and "sellers" of motor vehicles under § 47-2103(A)(4).

724.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ariz. Rev. Stat. Ann. § 4-2A103(A)(16).

725.   The Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. Ann. §§ 47-2105(A) and 47-2A103(A)(8).

726.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212.

727.   Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided the Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

728.   However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacked any anti-theft features or design elements to provide an adequate theft deterrent, or otherwise failed to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders the Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

729.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants'

warranty periods were also unconscionable and inadequate to protect Plaintiffs and their Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

730.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs, Subclass Members, and their Insureds the benefit of their respective bargains, which presupposes the Insureds were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

731.   Plaintiffs provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the notice letters sent by Insureds, and Subclass Members within a reasonable amount of time after knowledge of the Thief Friendly Design became public.  Specifically, Plaintiffs and Subclass members provided notice of the Thief Friendly Design on March 09, 2023.

732.   Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout this Consolidated Complaint, and other Complaints filed in connection with this MDL proceeding, Defendants have long known that the Vehicles contained the Thief Friendly Design yet have failed to cure, remedy, or repair the breach.  The thefts and damages that have already occurred due to the Thief Friendly Design, moreover, cannot be remedied by repair.

733.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Vehicles were and are defective, and the Thief Friendly Design in the Vehicles has not been remedied. As a direct and proximate

result, Plaintiffs and Subclass Members have been damaged in an amount to be proven at trial.

**B.    Breach of Express Warranty (Ariz. Rev. Stat. Ann. §§ 47-2313, 47-2A210)**

734.    Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

735.    During the relevant time period described above, Plaintiffs' Insureds purchased or leased Hyundai and Kia branded Vehicles.

736.    Those Vehicles were manufactured by Defendants during the relevant time period described above. Through attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to or at the point of sale.

737.    After Plaintiffs' Insureds purchased or leased the Hyundai and Kia branded Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

738.    The Vehicles did not perform as promised in accordance with Defendants' express warranty as they are capable of being stole in a matter of seconds, and that fact has become common knowledge. Thus, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. As a result of that Thief Friendly Design, the Vehicles were easily stolen, and thus failed to conform to the terms of the express warranty described in the Vehicles' VIN plates.

739.    Neither Plaintiffs nor their Insureds were required to provide notice of the Thief Friendly Design prior to the vehicles being stolen and/or damaged. Nevertheless, Plaintiffs provided written notice to Defendants of the Thief Friendly

Design on March 09, 2023, and further notice of the Thief Friendly Design was provided in conjunction with numerous cases being filed regarding the same Thief Friendly Design in actions around the country. While Defendants have suggested that they are attempting to remedy the Thief Friendly Design, any remedy offered to date is ineffective, and fails to comply with anti-theft standards.

740.   Plaintiffs, Subclass Members, and their Insureds have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' express warranty.

**C.     Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, et seq.)**

741.   Plaintiffs reallege each preceding and succeeding paragraph as though fully set forth at length herein.

742.   Plaintiffs, Defendants, and Subclass Members are "persons" as defined in Ariz. Rev. Stat. Ann. § 44-1521(6).

743.   The Vehicles are "merchandise" within the definition of Ariz. Rev. Stat. Ann § 44-1521(5).

744.   Defendants engaged in unlawful business practices as prohibited under the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann § 44-1522(A)).

745.   Defendants, through their agents, employees, and/or subsidiaries, knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose material facts regarding the quality, reliability, and safety of the Vehicles.

746.   Defendants had an ongoing duty to Plaintiffs' Insureds and the Insureds of Subclass Members to refrain from unfair or deceptive practices under the Arizona CFA.

747.   Defendants had exclusive knowledge about the Thief Friendly Design in the Vehicles, which they did not disclose.

748.   The information about the Thief Friendly Design was known to

Defendants at the time of advertising and selling the Vehicles and Defendants had with the intent to induce consumers, including the Insureds, to purchase the Vehicles.

749. Defendants misrepresented the Vehicles as safe and reliable while concealing the dangers and risks posed by the Thief Friendly Design, in violation of Ariz. Rev. Stat. § 44-1522(A).

750. Defendants' deceptive practices misled and created a false impression in consumers that the Vehicles had adequate anti-theft protection and were not affected by the Thief Friendly Design.

751. Defendants' misrepresentations, omissions, and concealments of material facts to the decisions of Plaintiffs' Insureds and the Insureds of Subclass Members to purchase and lease the vehicles.

752. Plaintiffs and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

753. Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair and/or deceptive acts or practices, awarding damages, and any other just and proper relief available under the Arizona CFA.

**D.    Fraud Based On Material Omissions and Misstatements**

754. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

755. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

756. Having been aware of the Thief Friendly Design within the Vehicles while making affirmative false statements as to the Vehicles' compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone been aware of the defects concealed in Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale

of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

    b.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    c.    Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

    d.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

    e.    Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

757.   For the reasons set forth above, the Thief Friendly Design is material to

the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle. Specifically, any consumer would consider as important the information that the Vehicles did not comply with federal safety and anti-theft standards. The Thief Friendly Design is also material because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds.

758.   Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

759.   The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

760.   Plaintiffs and Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

761.   If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

762.   Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased.

763.   Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or

deter theft of the Vehicles on their own.

764.   As a direct and proximate result of Defendants' omissions, the Insureds' Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

765.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**E.    Negligence**

766.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

767.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

768.   Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

769.   Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

770.   The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of

any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

771.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS; and their failure to inform the Insureds of their non-compliance with federal anti-theft and safety standards.

772.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

**F.      Gross Negligence**

773.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

774.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

775.   Defendants owed a duty of care to Plaintiffs and their Insureds.

776.   In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and their Insureds.

777.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

778.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## <u>ARKANSAS STATE LAW CLAIMS FOR RELIEF</u>

**(Alleged by Adopting Plaintiffs, and Members of Arkansas Subclasses, against All Defendants)**

779.   Class Plaintiffs, the Hyundai Arkansas Subclass and Kia Arkansas Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

780.   The Arkansas Subclasses are comprised of Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Arkansas due to the Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; Permanent General Assurance Company; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO Casualty Company; GEICO Choice Insurance Company; GEICO County Mutual Insurance Company; GEICO Secure Insurance Company; Nationwide Property & Casualty Insurance Company; Progressive Northwestern Insurance Company; Progressive Direct Insurance Company;  Garrison Property & Casualty Insurance Company; United Services Automobile Association; USAA General Indemnity Company; and USAA Casualty Insurance Company, all of whom paid policy proceeds to their respective Insureds for losses in Arkansas pursuant to policies of insurance.

**A.     Breach of Implied Warranty (Ark. Code Ann. §§ 4-2-314 and 4- 2A-212)**

781.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

782.   Defendants were at all relevant times "merchants" with respect to motor vehicles under Ark. Code Ann. §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under Ark. Code Ann. §§ 4-2-103(1)(d) and 4-2A-103(3); and "lessors" of motor vehicles under Ark. Code Ann. § 4-2A-103(1)(p).

783.   In the alternative, if Defendants were not the sellers of the Vehicles to Plaintiffs' Insureds, then Plaintiffs' Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold

Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Plaintiffs' Insureds.

784.  Plaintiffs' Insureds who purchased Vehicles are "buyers" within the meaning of Ark. Code Ann. § 4-2-103(1)(a).

785.  Plaintiffs' Insureds who leased Vehicles are "lessees" within the meaning of Ark. Code Ann. § 4-2A-103(1)(n).

786.  Plaintiffs, upon making payments to their Insureds for damages and losses which they sustained, and which were covered under the insurance policies issued to them by the Plaintiffs, acquired the rights of their Insureds under policy provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of their Insureds and are authorized to pursue all claims and causes of action belonging to their Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by the Plaintiffs.

787.  The Vehicles are and were at all relevant times "goods" within the meaning of Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

788.  A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ark. Code Ann. §§ 4-2-314, 4-2-315, 4-2A-212, and 4-2A-213.

789.  Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

790.  Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.

791.  This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

792.   Defendants' warranties were designed and intended for the benefit of Plaintiffs' Insureds as the ultimate consumers and users of the Vehicles.

793.   It is reasonably likely that Plaintiffs' Insureds relied on the existence and length of the implied warranties in deciding whether to purchase or lease the Vehicles.

794.   However, the Vehicles were not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Vehicles were defective and not in merchantable condition, and were not reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles were plagued by the Theft Friendly Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a severe and highly dangerous risk of vehicle theft and causing the Vehicles to be prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

795.   Defendants' actions, as complained of herein, breached the implied warranty that the Vehicles were of merchantable quality and fit for their ordinary and intended use.

796.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs and Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

797.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied the Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

798.   Plaintiffs and Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. With respect to the Vehicles already stolen and/or damaged, moreover, any such repair is far too late. As such, Plaintiffs and Plaintiffs' Insureds had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Insureds' Vehicles to them for repair.

799.   As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, for which Defendants are liable.

**B.     Breach of Express Warranty (Ark. Code Ann. §§ 4-2-313 and 4-2A-210)**

800.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

801.   During the relevant time period described above, Plaintiffs' Insureds purchased or leased Hyundai and Kia branded Vehicles from Defendants.

802.   In the alternative, if Defendants were not the sellers of the Vehicles to Plaintiffs' Insureds, then Plaintiffs' Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Plaintiffs' Insureds.  Defendants are therefore liable to Plaintiffs

1  under Ark. Code Ann. § 4-86-101.

2  803.  Plaintiffs, upon making payments to their Insureds for damages and

3  losses which they sustained, and which were covered under the insurance policies

4  issued to them by the Plaintiffs, acquired the rights of their Insureds under policy

5  provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of

6  their Insureds and are authorized to pursue all claims and causes of action belonging

7  to their Insureds against third parties such as the Defendants herein who are legally

8  liable for having caused the damages paid by the Plaintiffs.

9  804.  The Vehicles were at all relevant times "goods" within the meaning of

10  Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

11  805.  The Vehicles were manufactured by Defendants during the relevant time

12  period described above. Through the attachment of VIN plates, Defendants made an

13  express warranty that the Vehicles conform to all applicable U.S.A. federal motor

14  vehicle safety, bumper, and theft prevention standards in effect on the date of

15  manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

16  Vehicle is provided above. On information and belief, similar written warranties were

17  made prior to or at the point of sale for all Vehicles.

18  806.  These statements that the Vehicles were safe, and compliant with

19  applicable anti-theft standards, create express warranties under Arkansas law.  The

20  statements on the VIN plates as to the Vehicles' compliance with safety and anti-theft

21  regulations are affirmations of fact and a promise to Plaintiffs' Insureds. Those

22  statements amount to an express warranty under Ark. Code Ann. §§ 4-2-313 and 4-

23  2A-210.

24  807.  Defendants' express warranties as to the safety of the Vehicles, and the

25  Vehicles' compliance with applicable anti-theft standards, were statements that any

26  buyer would rely upon, and the Insureds relied upon, thus forming a basis for the

27  bargain when purchasing a Vehicle.

28  808.  After Plaintiffs' Insureds purchased or leased the Hyundai and Kia

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

branded Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

809.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs Insureds' may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Plaintiffs' Insureds the benefit of Plaintiffs' Insureds' bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

810.   After Plaintiffs' Insureds purchased or leased the Hyundai and Kia branded Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

811.   Plaintiffs provided notice to Defendants of the Thief Friendly Design on March 09, 2023, and notice of the accompanying breach of Defendants warranties on the same date. Regardless, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breaches, because notice would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Theft Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs and Plaintiffs' Insureds had no reason to believe that Defendants would have adequately repaired the Theft Friendly Design if they presented their Vehicles to Defendants for repair. Any repair, moreover, would have been useless and ineffective for all Insureds who have already experienced the unfortunate misery of their cars being stolen due to the Thief Friendly Design.

812.   As a direct and proximate result of Defendants' breaches of their express warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, for which the Defendants are liable for

1   damages in an amount to be proven at trial.

2   **C.**    **Violation of the Arkansas Deceptive Trade Practices Act (Ark. Code Ann.**

3        **§ 4-88-101, et seq.)**

4      813.   Plaintiffs incorporate by reference each preceding and succeeding

5   paragraph as though fully set forth at length herein.

6      814.   Defendants and Plaintiffs are "persons" within the meaning of Ark. Code

7   Ann. § 4-88-102(5).

8      815.   The Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-

9   102(4).

10     816.   The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") makes

11   it unlawful to engage in "[d]eceptive and unconscionable trade practices." Ark. Code

12   Ann. § 4-88-107(a).

13     817.   In the course of their business, Defendants, through their agents,

14   employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and

15   intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

16   facts regarding the quality, reliability, and safety of the Vehicles and the Thief

17   Friendly Design, as detailed above.

18     818.   Defendants had an ongoing duty to the Plaintiffs and Plaintiffs' Insureds

19   to refrain from unfair or deceptive practices under the Arkansas DTPA in the course

20   of their business. Specifically, Defendants owed Plaintiffs and Plaintiffs' Insureds a

21   duty to disclose all the material facts concerning the Thief Friendly Design in the

22   Vehicles because, as detailed above:

23     819.   Defendants had exclusive access to and far superior knowledge about

24   facts regarding the Thief Friendly Design and Defendants knew these facts were not

25   known to or reasonably discoverable by Plaintiffs or Plaintiffs' Insureds;

26     820.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs

27   and Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that

28   would be necessary to discover the Thief Friendly Design on their own;

821.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles;

822.   Defendants made false and incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

823.   As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

824.   By misrepresenting the Vehicles as safe, reliable, and compliant with relevant standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ark. Code Ann. § 4-88-107(a):

    a.   Causing the likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

    b.   Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

    c.   Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

    d.   Advertising the Vehicles with the intent not to sell or lease them as advertised; and

e.    Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

*See* Ark. Code Ann. § 4-88-107(a)(1), (3), and (10).

825.   Defendants intended for Plaintiffs' and Plaintiff's Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

826.   Defendants' unfair or acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs and Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of the Vehicles, the true value of the Vehicles.

827.   Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs and Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

828.   Plaintiffs and Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs and Plaintiffs' Insureds did not, and could not, unravel Defendants" deception on their own.

829.   Had they known the truth about the Thief Friendly Design, Plaintiffs and Plaintiffs' Insureds would not have purchased or leased the Vehicles.

830.   Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual

damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

831.   Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

832.   Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the Arkansas DTPA.

**D.     Fraud by Omission and Concealment**

833.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

834.   Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs and Plaintiffs' Insureds.

835.   Having been aware of the Thief Friendly Design and having known that Plaintiffs and Plaintiffs' Insureds could not have reasonably been expected to know of that flaw, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs and their Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs and Plaintiffs' Insureds;

b.   Given the technical nature of the flaws hidden within the Thief Friendly Design, Plaintiffs and their Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover those flaws on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' and their decisions to buy or lease the Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

836.   In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs and their Insureds in connection with the sale of the Vehicles.

837.   For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle, particularly given that the Vehicles did not comply with federal and industry safety standards, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs and Plaintiffs' Insureds.

838.   Defendants intended for the Plaintiffs and Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

839.   The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and their Insureds did not, and could not, unravel Defendants' deception on their own.

840.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and their Insureds.

841.   If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs and their Insureds would have seen such a disclosure.

842.   Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Plaintiffs' Insureds to purchase a Vehicle that they otherwise would not have purchased.

843.   Had Plaintiffs and Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles, and could have taken precautions to prevent the theft of the Vehicles.

844.   By concealing information about the Thief Friendly Design, Defendants prevented the Insureds from realizing their Vehicles were uniquely susceptible to theft in a matter of seconds. Through their omissions and concealment with respect to the Thief Friendly Design, Defendants intended to induce, and did induce, Plaintiffs' Insureds to purchase a Vehicle that they otherwise would not have purchased, a Vehicle that was highly susceptible to theft, and that was stolen and damaged due to the Thief Friendly Design.

845.   Accordingly, Defendants are liable to Plaintiffs and their Insureds for their damages in an amount to be proven at trial.

846.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and their Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at

1  trial.

2  **E.      Negligence**

3      847.  Plaintiffs incorporate by reference each preceding and succeeding

4  paragraph as if fully set forth at length herein.

5      848.  Defendants manufactured, distributed and sold the Vehicles.

6      849.  Defendants owed a duty of care to the Insureds. That duty of care

7  included, at a minimum, the manufacture and sale of vehicles that fully complied with

8  all federal and industry safety and anti-theft standards; and failing that, Defendants

9  owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft

10  by casual car thieves and miscreants in a matter of seconds.

11      850.  Defendants violated applicable industry standards, and federal

12  regulations, and otherwise failed to exercise reasonable care in connection with their

13  manufacture, distribution and sale of the Vehicles.

14      851.  The National Highway Traffic Safety Administration has a self-

15  certification system of compliance where vehicle manufacturers certify that their

16  products meet applicable standards. Defendants had a duty to the general public to

17  ensure that all vehicles offered for sale were compliant to all applicable federal

18  standards. This duty precedes the offering of any vehicle for sale in the United States

19  and territories subject to the jurisdiction of federal regulations and is independent of

20  any duties arising through individual contracts for sale or lease that Defendants

21  entered into with Plaintiffs' Insureds.

22      852.  The Defendants' violation of their duties under applicable law included

23  their failure to comply with federal regulatory requirements to equip their vehicles

24  with mandatory anti-theft protection that complies with the requirements of FMVSS

25  114.

26      853.  As a result of Defendants' violations of their duties, Plaintiffs and

27  Plaintiffs' Insureds suffered damage, including property damage and the loss of use

28  of the Vehicles, together with other damages for which the Defendants are liable.

**F.      Constructive Fraud Based on Statements Recklessly Made and Negligent Misrepresentation**

854.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

855.   Defendants breached their legal duty to the Insureds by providing false information to the Insureds with the intent that the Insureds rely upon that information.

856.   Defendants are liable for constructive fraud for, at minimum, representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

857.   Defendants failed to exercise reasonable care in obtaining and communicating accurate information regarding the Vehicles, and in particular the Thief Friendly Design of the Vehicles.  Defendants knowingly installed substandard theft prevention equipment, failed to disclose that fact and actively concealed the true security characteristics of the Vehicles. Instead, Defendants knowingly marketed their vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to FMVSS 114.

858.   The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards. Compliance with federal anti-theft and safety standards are a minimum requirement that consumers, including the Insureds, would view as vital to the purchase of any vehicle.

859.   The Defendants failed to use reasonable care or competence in obtaining or communicating the Thief Friendly Design and went as far as to affix each Vehicle with a vin plate that not only omitted information but misrepresented the truth.

860. As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiffs and/or Alaska Subclass members have suffered

injury-in-fact and/or actual damage.

861.   As a direct and proximate result of the Defendants' negligent misrepresentations, Plaintiffs and/or Alaska Subclass members have been damaged in an amount to be determined at trial.

**G.    Gross Negligence**

862.   Plaintiffs and Subclass Members for each Arizona Subclass reallege and incorporate by reference all preceding allegations as though fully set forth herein.

863.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

864.   Defendants owed a duty of care to Plaintiffs and their Insureds.

865.   In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants failed to use even slight care, and instead acted with reckless indifference to the rights and/or safety of Plaintiffs' Insureds.   As detailed in the allegations above, should have known that the Vehicles were vulnerable to extraordinarily high rates of theft by even casual car thieves due to the Thief Friendly Design.  Defendants knew, moreover, that the implementation of an immobilizer was a safe, cheap and easy means to meet the applicable standards.

866.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

867.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

<u>**COLORADO STATE LAW CLAIMS FOR RELIEF**</u>

**(Alleged by Adopting Plaintiffs, and Members of Colorado Subclasses, against All Defendants)**

868.   Class Plaintiffs, the Hyundai Colorado Subclass and Kia Colorado Subclass, and Independent Subrogation Plaintiffs allege the following causes of

1  action against All Defendants.

2      869.  The Colorado Subclasses are comprised of named and unnamed Class
3  Members with claims stemming from vehicle losses (including Kia and Hyundai
4  Vehicles) in the State of Colorado due to the Defendants' Theft Friendly Design in
5  Kia and Hyundai Vehicles, including, but not limited to, the following named Class
6  Plaintiffs: Acuity, A Mutual Insurance Company; Allstate Fire and Casualty
7  Insurance Company; Allstate Indemnity Company; Allstate Insurance Company;
8  Allstate New Jersey Insurance Company; Allstate New Jersey Property & Casualty
9  Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property &
10 Casualty Insurance Company; American Family Insurance Company; American
11 Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation;
12 Erie Insurance Company; Erie Insurance Exchange; GEICO Casualty Company;
13 GEICO Indemnity Company; GEICO Secure Insurance Company; Government
14 Employees Insurance Company; Horace Mann Insurance Company; Horace Mann
15 Property & Casualty Insurance Company; Teachers Insurance Company; Nationwide
16 Property & Casualty Insurance Company; Nationwide Mutual Insurance Company;
17 New Jersey Manufacturers Insurance Company; AMCO Insurance Company;
18 Nationwide General Insurance Company; Progressive Direct Insurance Company;
19 Progressive Preferred Insurance Company; Progressive Specialty Insurance
20 Company; Root Insurance Company; State Auto Property & Casualty Insurance
21 Company; Garrison Property & Casualty Insurance Company; United Services
22 Automobile Association; USAA Casualty Insurance Company; and USAA General
23 Indemnity Company, all whom paid policy proceeds to their respective Insureds for
24 losses in Colorado pursuant to policies of insurance.

25 **A.    Breach of Implied Warranty (C.R.S. § 4-2-314)**

26     870.  Plaintiffs reallege and incorporate by reference all preceding allegations
27 as though fully set forth herein.

28     871.  Defendants sold and leased Hyundai and Kia branded Vehicles during

the relevant time period described above.  In addition, Defendants designed and built the Hyundai and Kia branded Vehicles that were later sold or leased directly to consumers or through car dealerships.

872.  Accordingly, Defendants are "merchants" under C.R.S. § 4-2-104. Section 4-2-104 requires a merchant "deal[] in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction, or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

873.  The Insureds are persons who reasonably expected to use, consume, or be affected by the Vehicles.  They either purchased or leased Defendants' Vehicles directly from Defendants or through car dealerships.

874.  The Hyundai and Kia branded Vehicles were not of merchantable quality at the time of sale.  The Vehicles possessed a design flaw that resulted in the Vehicles being theft prone.  Merchantable vehicles should have complied with all applicable safety and anti-theft standards, which the Vehicles did not resulting in the design flaw.

875.  In the manner described above, thieves took advantage of the flaw by stealing and damaging the Vehicles.  Consequently, Plaintiffs suffered significant monetary losses resulting from Insureds' Hyundai and Kia Vehicles being stolen and damaged through the exploitation of the design failure.

876.  Although the design flaw was already known to Defendants, Plaintiffs discovered it within a reasonable amount of time and notified Defendants of the flaw along with its Insureds and national media.

**B.    Breach of Express Warranty (C.R.S. §§ 4-2-714 and 4-2-715)**

877.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

878.  Defendants sold and leased Hyundai and Kia branded Vehicles during the relevant time period described above.  In addition, Defendants designed and built

1 the Hyundai and Kia branded Vehicles that were later sold or leased directly to
2 consumers or through car dealerships.

3 879. Plaintiffs' Insureds are persons who reasonably expected to use,
4 consume, or be affected by the Vehicles. They are person that either purchased or
5 leased Defendants' Vehicles directly from Defendants or through car dealerships.

6 880. The Vehicles that failed to conform to Defendants' description of the
7 Vehicles as warranted. Affixed to those Vehicles were VIN plates expressly stating
8 that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety,
9 bumper, and theft prevention standards in effect on the date of manufacture. An
10 example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided in
11 Paragraph 55 of this Complaint.

12 881. The statements on the VIN plates as to the Vehicles' compliance with
13 safety and anti-theft are affirmations of fact and a promise to Plaintiffs' Insureds.

14 882. Defendants breached their warranty by failing to satisfy applicable safety
15 and anti-theft standards. The Vehicles possessed a design flaw that resulted in them
16 being susceptible to theft.

17 883. As described above, thieves took advantage of the design flaw.
18 Defendant incurred, as result, significant monetary damages related to Insureds'
19 Hyundai and Kia branded Vehicles being stolen and damaged through exploitation of
20 the design flaw.

21 884. Although the design flaw was already known to Defendants, Plaintiffs
22 discovered it within a reasonable amount of time and notified Defendants of the flaw
23 along with its Insureds and national media.

24 **C.    Violation of the Colorado Consumer Protection Act (C.R.S. § 6-1-113)**

25 885. Plaintiffs reallege and incorporate by reference all preceding allegations
26 as though fully set forth herein.

27 886. Defendants engaged in a deceptive trade practice by marketing and
28 affirmatively stating that the Hyundai and Kia branded Vehicles conformed to all

applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. However, the Vehicles failed to conform with those standards. The Vehicles possessed a design flaw causing the Vehicles to be theft prone; a flaw that Defendants knew about.

887. Defendants made the affirmative statements in VIN plates, which were affixed the Vehicles. An example of a VIN plate that is affixed to a 2015 Kia Optima Vehicle is provided in Paragraph 55 of this Complaint.

888. Defendants' inaccurate statement about compliance with safety and anti-theft standards were made within ordinary course of Defendants' business. Indeed, Defendants design, build, distribute, market, sell, and lease the Hyundai and Kia branded Vehicles directly to the public or through car dealerships. Consequently, Defendants had completely knowledge and control over whether their Vehicles complied with safety and anti-theft standards.

889. Plaintiffs' Insureds were actual consumers of Defendants' Vehicles. The Insureds purchased or leased the Vehicles directly from Defendants or through a car dealership by Defendants' design. Accordingly, Plaintiffs are naturally and directly harmed when their Insureds' Hyundai and Kia branded Vehicles are stolen as a consequence of Defendants' deceptive trade practices.

890. Defendants' failure to conform with safety and anti-theft standards, like they stated in the VIN Plates, caused Plaintiffs significant monetary losses associated with Insureds' vehicles stolen and damaged through the exploitation of the design flaw.

891. Defendants' deceptive trade practice – stating that their Vehicles were safety and anti-theft standard compliant when Vehicles were not – significantly impacted the public as actual or potential consumers of Defendants'.

**D.    Fraud Based on Concealment or Omission**

892. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

893.  Defendants expressly represented to Plaintiffs' Insureds that the Vehicles conformed to applicable safety and anti-theft standards. Those express representations are affixed to VIN Plates, which are attached to each of the Vehicles. An example of one such VIN Plate is included in Paragraph 55. But, in reality, the Vehicles did not conform with those standards. Instead, the Vehicles contained an Theft Friendly Design that was exploited.

894.  Defendants were aware of the Theft Friendly Design when they marketed, sold, and leased the Vehicles to Plaintiffs' Insureds.  The Vehicles were designed, built, marketed, sold, and leased by Defendants directly and indirectly to consumers, including Plaintiffs' Insureds. In other words, no other parties could have had more access or information regarding the Vehicles that the consumers.

895.  Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

896.  Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

897.  Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

898.  Had Plaintiffs' Insureds known of the Theft Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

899.  As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles

at all if the Theft Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

900. Moreover, Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

901. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

902. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

903. Defendants owed a duty of care to Plaintiffs and their Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

904. In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and their Insureds.

905. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

906. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

**F.    Gross Negligence**

907. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

908. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

909.   Defendants owed a duty of care to Plaintiffs and their Insureds.

910.   In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and their Insureds.

911.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

912.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## CONNECTICUT STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of Connecticut Subclasses, against All Defendants)**

913.   Class Plaintiffs, the Hyundai Connecticut Subclass and Kia Connecticut Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

914.   The Connecticut Subclasses are comprised of named and unnamed Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Connecticut due to the Defendants' Thief Friendly Design including, but not limited to, the following named Class Plaintiffs: Allstate County Mutual Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; Old Dominion Insurance Company; Permanent General Assurance Corporation; Erie Insurance Company of New York; GEICO Indemnity Company; GEICO General Insurance Company; GEICO County Mutual Insurance Company; Horace Mann Property & Casualty Insurance Company;

Teachers Insurance Company; New Jersey Manufacturers Insurance Company; Nationwide General Insurance Company of America; Nationwide Mutual Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; Root Insurance Company; State Auto Property & Casualty Insurance Company; Garrison Property & Casualty Insurance Company; United Services Automobile Association; USAA Casualty Insurance Company; and USAA General Indemnity Company, all of whom paid policy proceeds to their respective Insureds for losses in Connecticut pursuant to policies of insurance

**A.** **Breach of Implied Warranty of Merchantability (Conn. Gen. Stat. Ann. §§ 42a-2-314 and 42a-2a-504)**

915.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

916.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Conn. Gen. Stat. Ann. §§ 42A-2-314 and 42a-2a-504.

917.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Conn. Gen. Stat. Ann. §§ 42a-2-104(1) and 42(a)-2-103(2), and a "seller" of motor vehicles under § 42a-2-103(1)(c).

918.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Conn. Gen. Stat. Ann. § 42a-2A-102(a)(23).

919.   Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in Connecticut and are therefore "buyers" within the meaning of Conn. Gen. Stat. Ann. §42a-2-103(1)(a).

920.   Plaintiffs and Subclass Members stand in the shoes of their Insureds, who leased Vehicles in Connecticut and are therefore "lessees" within the meaning of Conn. Gen. Stat. Ann. § 42a-2A-102(a)(21).

921.   The Vehicles are and were at all relevant times "goods" within the

meaning of Conn. Gen. Stat. Ann. §§ 42a-2-105(1) and 42a-2-103(2).

922. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

923. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

924. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored

Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of the sale.

925.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever-present risk of them being stolen.   Any remedy that has been proposed or offered to date has proven to be inadequate, and at a minimum, does not compensate Plaintiffs for the losses incurred due to the Thief Friendly Design.

926.   On March 9, 2023, Plaintiffs and the Subclass Members provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties.  Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public.

927.   Alternatively, Plaintiffs and the Subclass Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs or their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

928.   As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount

to be proven at trial.

**B.      Breach of Express Warranty (Conn. Gen. Stat. Ann. § 42a-2-313)**

929.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

930.    During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

931.    These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

932.    After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

933.    The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

934.    Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants'

**C.    Violation of the Connecticut Unlawful Trade Practices Act (Conn. Gen. Stat. § 42-100a, *et seq*.)**

935.    Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

936.    Defendants, Plaintiffs, Plaintiffs' Insureds, and Subclass Members are "persons" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(3).

937.    Defendants were and are engaged in the "trade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(4).

938.    The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a).

939.    In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Connecticut UPTA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

940.    Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Connecticut UTPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

   a.    Defendants expressly warranted that the Vehicles conformed with applicable anti-theft standards when that was not true due to the Thief Friendly Design of the Vehicles;

   b.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c.    Given the hidden and technical nature of the Thief Friendly Design, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

d.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the Insureds who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the Insureds that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to the Insureds, Defendants had the duty to disclose the whole truth.

941.   As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce Insureds to purchase the Vehicles.

942.   By misrepresenting the Vehicles as safe, reliable, and compliant with applicable anti-theft standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Conn. Gen. Stat. Ann. § 42-110b(a).

943.   Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

944.   Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

945.   Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those Vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles.

946.   The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

947.   Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them, and if purchased, could have taken precautions against theft.

948.   Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

949.   Defendants' violations present a continuing risk to Plaintiffs, their Insureds, as well as the general public, because the Vehicles remain unsafe due to the

Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

950.   Pursuant to Conn. Gen. Stat. Ann. § 42-110g, Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Connecticut UTPA.

**D.     Fraud by Misstatements and Omissions**

951.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

952.   Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

953.   Having been aware of the Thief Friendly within the Vehicles while making affirmative false statements as to the Vehicles compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.   Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

    b.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    c.   Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

      d.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

      e.    Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

954.   In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

955.   For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle, particularly the fact that the Vehicles did not comply with federal and industry safety standards, and because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds.

956.   Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

957.   The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

958.   Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

959.   If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

960.   Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

961.   Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or deter theft of the Vehicles on their own.

962.   As a direct and proximate result of Defendants' omissions, the Insureds Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

963.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**E.      Negligence**

964.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

965.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

966.   Defendants owed a duty of care to Plaintiffs and their Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

967.   In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and Their Insureds.

968.   The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

969.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements and relevant industry standards to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

970.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

**F.     Negligent Misrepresentation**

971.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

972.   Defendants breached their legal duty to the Insureds by providing false information to the Insureds that Defendants knew or should have known was false.

973.   Defendants are liable for, at minimum, representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

974.   Defendants knew that they were not providing accurate information, or at the very least failed to exercise reasonable care in obtaining and communicating accurate information regarding the Vehicles, and in particular the Thief Friendly Design of the Vehicles.

975.   Any consumer would consider it important to know that the Vehicle they were contemplating purchasing failed to comply with applicable safety and anti-theft standards, including federal regulations.   Yet Defendants knowingly misled consumers as to compliance with those standards as part of an effort to induce the Insureds into purchasing the Vehicles.  Thus, Defendants knew their inaccurate and incomplete representations would be relied upon by the Insureds.

976.   Defendants knowingly installed substandard theft prevention equipment, failed to disclose that fact and actively concealed the true security characteristics of the Vehicles. Instead, Defendants knowingly marketed their vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to FMVSS 114.

977.   The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards. Compliance with federal anti-theft and safety standards are a minimum requirement

that consumers, including the Insureds, would view as vital to the purchase of any vehicle.

978.   The Defendants failed to use reasonable care or competence in obtaining or communicating the Thief Friendly Design and went as far as to affix each Vehicle with a vin plate that not only omitted information but misrepresented the truth.

979.   As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiffs and/or Connecticut Subclass members have suffered injury-in-fact and/or actual damage.

980.   As a direct and proximate result of the Defendants' negligent misrepresentations, Plaintiffs and/or Connecticut Subclass members have been damaged in an amount to be determined at trial.

## DELAWARE STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of Delaware Subclasses, against All Defendants)**

981.   Class Plaintiffs, the Hyundai Delaware Subclass and Kia Delaware Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

982.   The Delaware subclasses are comprised of Members of both nationwide classes with claims stemming from vehicle losses (from Kia and Hyundai Vehicles) in Delaware due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Property & Casualty Insurance Company; Permanent General Insurance Corporation; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Nationwide Property & Casualty Insurance Company; Depositors Insurance Company;

Nationwide Mutual Insurance Company; Progressive Northern Insurance Company; Progressive Direct Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds for losses in Delaware pursuant to policies of insurance.

**A.    Breach of Implied Warranty (6 Del. Code §§ 2-314, 2-315, 2A-212 and 2A-213)**

983.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

984.   Defendants were, at all relevant times: the manufacturers, distributors, and warrantors of the Vehicles; "merchants" of motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3); "sellers" of motor vehicles under § 2-103(1)(d); and "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

985.   In the alternative, if Defendants were not the sellers of the Vehicles to Plaintiffs' Insureds, then Plaintiffs' Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Plaintiffs' Insureds.

986.   Plaintiffs' Insureds who purchased Vehicles are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

987.   Plaintiffs' Insureds who leased Vehicles are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

988.   Plaintiffs, upon making payments to their Insureds for damages and losses which they sustained, and which were covered under the insurance policies issued to them by the Plaintiffs, acquired the rights of their Insureds under policy provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of their Insureds and are authorized to pursue all claims and causes of action belonging

to their Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by the Plaintiffs.

989.   The Vehicles were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

990.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 6 Del. C. §§ 2-314, 2-315, 2A-212, and 2A-213.

991.   Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

992.   Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.

993.   This implied warranty included, among other things, a warranty that the Vehicles manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state law and regulations, including FMVSS 114.

994.   Defendants' warranties were designed and intended for the benefit of Plaintiffs' Insureds as the ultimate consumers and users of the Vehicles.

995.   It is reasonably likely that Plaintiffs' Insureds relied on the existence and length of the implied warranties in deciding whether to purchase or lease the Vehicles.

996.   However, the Vehicles were not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Vehicles were defective and not in merchantable condition, and were not reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles were plagued by the Theft Friendly Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a severe and highly dangerous risk of

vehicle theft and causing the Vehicles to be prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

997.   Defendants' actions, as complained of herein, breached the implied warranty that the Vehicles were of merchantable quality and fit for their ordinary and intended use.

998.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Theft Friendly Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Theft Friendly Defect at the time of sale.

999.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs Insureds' may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Plaintiffs' Insureds the benefit of Plaintiffs' Insureds' bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1000. Plaintiffs and Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breaches, because notice would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Theft Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

respect to the Vehicles. As such, Plaintiffs and Plaintiffs' Insureds had no reason to believe that Defendants would have adequately repaired the Theft Friendly Design if they presented their Vehicles to Defendants for repair.

1001.  As a direct and proximate result of Defendants' breaches of their implied warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, for which the Defendants are liable.

**B.      Breach of Express Warranty (6 Del. Code §§ 2-313 and 2A-210)**

1002. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1003. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1004. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1005. Defendants' statements about the Vehicles' compliance with all applicable safety and anti-theft standards were affirmative and factual by their nature. Accordingly, Defendants' statements became the basis for the bargains with the Insureds to buy or lease the Vehicles.

1006. Vehicles did not comply with all applicable safety and anti-theft standards as Defendants stated. In actuality, the Vehicles had a design defect that caused the Vehicles to be so easy to steal, that the Vehicles could be stolen in a matter of seconds by teenagers out for a joy ride.

1007. As described above, thieves took advantage of the design flaw. Plaintiffs incurred, as a result, significant monetary damages related to the Insureds' Vehicles

1  being stolen and/or damaged through exploitation of the design flaw.

2  **C.     Violation of the Delaware Consumer Fraud Act (6 Del. Code § 2511, *et***

3  ***seq.*)**

4      1008. Plaintiffs incorporate by reference and reallege each preceding and

5  succeeding paragraph as though fully set forth at length herein.

6      1009. Defendants and Plaintiffs are "persons" within the meaning of 6 Del.

7  Code § 2511(7).

8      1010. The Delaware Consumer Fraud Act ("Delaware CFA") makes unlawful

9  the "act, use or employment by any person of any deception, fraud, false pretense,

10  false promise, misrepresentation, or the concealment, suppression, or omission of any

11  material fact with intent that others rely upon such concealment, suppression or

12  omission, in connection with the sale, lease or advertisement of any merchandise,

13  whether or not any person has in fact been misled, deceived or damaged thereby." 6

14  Del. Code § 2513(a).

15      1011. In the course of their business, Defendants, through their agents,

16  employees, and/or subsidiaries, violated the Delaware CFA by knowingly and

17  intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

18  facts regarding the quality, reliability, and safety of the Vehicles and the Theft

19  Friendly Defect, as detailed above.

20      1012. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or

21  deceptive practices under the CFA in the course of their business. Specifically,

22  Defendants owed the Plaintiffs a duty to disclose all the material facts concerning the

23  Theft Friendly Defect in the Vehicles because, as detailed above:

24          a.    Defendants had exclusive access to and far superior knowledge

25               about facts regarding the Theft Friendly Defect and Defendants

26               knew these facts were not known to or reasonably discoverable by

27               Plaintiffs;

28

b.    Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Friendly Defect on their own;

c.    Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1013. As detailed above, the information concerning the Theft Friendly Defect was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1014. Defendants engaged in one or more of the following unlawful acts or practices prohibited by 6 Del. Code § 2513(a): using or employing deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

1015. Defendants intended for Plaintiffs to rely on them to provide adequately

designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1016. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft Friendly Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1017. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Friendly Defect and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1018. Plaintiffs' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Theft Friendly Defect, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1019. Had they known the truth about the Theft Friendly Defect, Plaintiffs would not have purchased or leased the Vehicles, or would have paid significantly less for them.

1020. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1021. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft Friendly

Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

1022. Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the Delaware CFA and DTPA (6 Del. Code §§ 2525).

**D.      Violation of the Delaware Deceptive Trade Practices Act (6 Del. Code § 2531, et seq.)**

1023. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1024. Defendants and Plaintiffs are "persons" within the meaning of 6 Del. Code § 2531(5).

1025. The Delaware Deceptive Trade Practices Act ("Delaware DTPA") makes it unlawful to engage in a deceptive trade practice in the course of a business. 6 Del. Code § 2532(a).

1026. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Delaware DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft Friendly Defect, as detailed above.

1027. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices under the DTPA in the course of their business. Specifically, Defendants owed the Plaintiffs a duty to disclose all the material facts concerning the Theft Friendly Defect in the Vehicles because, as detailed above:

    a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Friendly Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;

b.   Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Friendly Defect on their own;

c.   Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1028. As detailed above, the information concerning the Theft Friendly Defect was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1029. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Theft Friendly Defect, Defendants also engaged in one or more of the following deceptive trade practices enumerated by the Delaware Deceptive Trade Practices Act at 6 Del. Code § 2532:

a.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

   b.   Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

   c.   Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

   d.   Advertising the Vehicles with the intent not to sell or lease them as advertised; and/or

   e.   Engaging in any other conduct which created a likelihood of confusion or of misunderstanding.

6 Del. Code § 2532 (2), (5), (7), (9), and (12).

1030. Defendants intended for Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1031. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft Friendly Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1032. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Friendly Defect and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1033. Plaintiffs' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the

Vehicles contained the Theft Friendly Defect, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1034. Had they known the truth about the Theft Friendly Defect, Plaintiffs would not have purchased or leased the Vehicles, or would have paid significantly less for them.

1035. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1036. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft Friendly Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

1037. Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the Delaware CFA and DTPA (6 Del. Code § 2533).

**E.     Fraud by Omission and Concealment**

1038. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1039. Defendants were aware of the Theft Friendly Defect when they marketed and sold the Vehicles to Plaintiffs.

1040. Having been aware of the Theft Friendly Defect, and having known that Plaintiffs could not have reasonably been expected to know of the Theft Friendly Defect, Defendants had a duty to disclose the Theft Friendly Defect to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft Friendly Defect because:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Friendly Defect and Defendants

knew these facts were not known to or reasonably discoverable by Plaintiffs;

  b. Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Friendly Defect on their own;

  c. Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

  d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1041. In breach of their duties, Defendants failed to disclose the Theft Friendly Defect to the Insureds in connection with the sale of the Vehicles.

1042. For the reasons set forth above, the Theft Friendly Defect within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs. Any consumer would find it important that the Vehicles did not comply with applicable safety and anti-theft standards. Yet that fact was concealed from the Insureds.

1043. Defendants intended for the Plaintiffs to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft Friendly Defect that would affect the quality, reliability, and safety of the Vehicles.

1044. The Insureds' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1045. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs.

1046. If Defendants had fully and adequately disclosed the Theft Friendly Defect to consumers, Plaintiffs would have seen such a disclosure.

1047. Through their omissions and concealment with respect to the Theft Friendly Defect within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

1048. Had Plaintiffs known of the Theft Friendly Defect within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

1049. As a direct and proximate result of Defendants' omissions, Plaintiffs either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Theft Friendly Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

1050. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the

future, which amount shall be determined according to proof at trial.

**F.     Negligence**

1051. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1052. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1053. Defendants owed a duty of care to Plaintiffs and their Insureds.  That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

1054. In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and Their Insureds.

1055. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1056. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements and relevant industry standards to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1057. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other.

**G.     Gross Negligence**

1058. Plaintiffs and the Subclass Members reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1059. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1060. Defendants owed a duty of care to Plaintiffs and their Insureds.

1061. In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and their Insureds.

1062. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1063. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## DISTRICT OF COLUMBIA CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of District of Columbia Subclasses, against All Defendants)

1064. Class Plaintiffs, the Hyundai District of Columbia Subclass and Kia District of Columbia Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1065. The District of Columbia Subclasses are comprised of Members of both nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the District of Columbia due to Defendants' Thief Friendly Design including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; Permanent General Assurance Corporation; Erie

Insurance Exchange; Erie Insurance Company of New York; Government Employees Insurance Company; GEICO Advantage Insurance Company; GEICO General Insurance Company; GEICO Secure  Insurance Company; Liberty Mutual Fire Insurance Company; Progressive Advanced Insurance Company; Nationwide Affinity Insurance Company of America; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Gulf Insurance Company; Garrison Property & Casualty Insurance Company; United Services Automobile Association; USAA Casualty Insurance Company, USAA General Indemnity Company; all of whom paid policy proceeds to their respective Insureds for losses in the District of Columbia pursuant to policies of insurance

## A.      Breach of Implied Warranty of Merchantability (D.C. § 28:2-314)

1066. Plaintiffs and the Subclass Members reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1067. Pursuant to D.C. §28:2-314, a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

1068. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under D.C. § 28:2-104.

1069. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under D.C. §28:2A-103(a)(16).

1070. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in the District of Columbia and are therefore "buyers" within the meaning of D.C. §28:2A-103(a)(1).

1071. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who leased Vehicles in the District of Columbia and are therefore "lessees" within the meaning of D.C. §28:2A-103(a)(14).

1072. The Vehicles are and were at all relevant times "goods" within the

meaning of D.C. §28:2A-103(a)(8).

1073. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1074. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1075. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored

Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of the sale.

1076. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever-present risk of them being stolen. Any remedy that has been proposed or offered to date has proven to be inadequate, and at a minimum, does not compensate Plaintiffs for the losses incurred due to the Thief Friendly Design.

1077. On March 9, 2023, Plaintiffs and the Subclass Members provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1078. Alternatively, Plaintiffs and the Subclass Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs or their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1079. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount

to be proven at trial.

**B.      Breach of Express Warranty (D.C. § 28:2-313)**

1080. Plaintiffs and Subclass Members from each District of Columbia Subclass reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1081. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1082. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1083. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1084. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1085. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and

1 related breach of Defendants' conduct.

2 **C.      Violation of District of Columbia's Unlawful Trade Practices Act (D.C. §**
3 **28-3904)**

4      1086. Plaintiffs and Subclass Members for each District of Columbia subclass
5 reallege and incorporate by reference all preceding allegations as though fully set
6 forth herein.

7      1087. Defendants, Plaintiffs, Plaintiffs' Insureds, and Subclass Members are
8 "persons" within the meaning of D.C. § 28-3904.

9      1088. The D.C. Trade Practices Act § 28-3904 ("D.C. UTPA") states that "it
10 shall be a violation of this chapter for any person to engage in an unfair or deceptive
11 trade practice, whether or not any consumer is in fact misled, deceived, or damaged."

12     1089. In the course of their business, Defendants, through their agents,
13 employees, and/or subsidiaries, violated the D.C. UPTA by knowingly and
14 intentionally misrepresenting, omitting, concealing, and/or failing to disclose material
15 facts regarding the quality, reliability, and safety of the Vehicles and the Thief
16 Friendly Design, as detailed above.

17     1090. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from
18 unfair or deceptive practices under the D.C. UTPA in the course of their business.
19 Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material
20 facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

21          a.    Defendants expressly warranted that the Vehicles conformed with
22                applicable anti-theft standards when that was not true due to the
23                Thief Friendly Design of the Vehicles;

24          b.    Defendants had exclusive access to and far superior knowledge
25                about facts regarding the Thief Friendly Design and Defendants
26                knew these facts were not known to or reasonably discoverable by
27                Plaintiffs' Insureds;

28

c. Given the hidden and technical nature of the Thief Friendly Design, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

d. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the Insureds who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the Insureds that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to the Insureds, Defendants had the duty to disclose the whole truth.

1091. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce Insureds to purchase the Vehicles.

1092. By misrepresenting the Vehicles as safe, reliable, and compliant with applicable anti-theft standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by the D.C. Trade Practices Act § 28-3904.

1093. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1094. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

1095. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those Vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles.

1096. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

1097. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them, and if purchased, could have taken precautions against theft.

1098. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1099. Defendants' violations present a continuing risk to Plaintiffs, their Insureds, as well as the general public, because the Vehicles remain unsafe due to the

Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1100. Pursuant to the D.C. Trade Practices Act § 28-3904, Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the D.C. Trade Practices Act § 28-3904.

**D.    Fraud by Misstatements and Omissions**

1101. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1102. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1103. Having been aware of the Thief Friendly within the Vehicles while making affirmative false statements as to the Vehicles compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.    Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

b.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c.    Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

d.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.   Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

1104. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

1105. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds. Any consumer would find it important that the Vehicles did not comply with applicable safety and anti-theft standards. Yet that fact was concealed from the Insureds.

1106. Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the

Vehicles.

1107. The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

1108. Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1109. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

1110. Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

1111. Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or deter theft of the Vehicles on their own.

1112. As a direct and proximate result of Defendants' omissions, the Insureds Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

1113. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**E.     Negligence**

1114. The Plaintiffs and Subclass Members reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1115. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1116. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

1117. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

1118. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1119. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1120. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## F.     Negligent Misrepresentation

1121. Plaintiffs and Subclass Members for both District of Columbia subclasses reallege and incorporate by reference all allegations as if fully set forth herein.

1122. Defendants breached their duty to the Insureds by making material representations and omitting key facts that they had a duty to disclose.

1123. Defendants are liable for supplying false information to the Insureds by representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

1124. Defendants knew that they were not providing accurate information, or at the very least failed to exercise reasonable care in obtaining and communicating accurate information regarding the Vehicles, and in particular the Thief Friendly Design of the Vehicles.

1125. Any consumer would consider it important to know that the Vehicle they were contemplating purchasing failed to comply with applicable safety and anti-theft standards, including federal regulations.   Yet Defendants knowingly misled consumers as to compliance with those standards as part of an effort to induce the Insureds into purchasing the Vehicles.  Thus, Defendants knew their inaccurate and incomplete representations would be relied upon by the Insureds.

1126. Defendants knowingly installed substandard theft prevention equipment, failed to disclose that fact and actively concealed the true security characteristics of the Vehicles. Instead, Defendants knowingly marketed their vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to FMVSS 114.

1127. The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards. Compliance with federal anti-theft and safety standards are a minimum requirement

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

that consumers, including the Insureds, would view as vital to the purchase of any vehicle.

1128. The Defendants failed to use reasonable care or competence in communicating information regarding the Thief Friendly Design and went as far as to affix each Vehicle with a vin plate that not only omitted information but misrepresented the truth.

1129. As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiffs and/or District of Columbia Subclass members have suffered injury-in-fact and/or actual damage. As a direct and proximate result of the Defendants' negligent misrepresentations, Plaintiffs and/or District of Columbia Subclass members have been damaged in an amount to be determined at trial.

## G. Gross Negligence

1130. Plaintiffs and Subclass Members for both District of Columbia subclasses reallege and incorporate by reference all allegations as if fully set forth herein.

1131. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1132. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

1133. With conscious indifference to the rights and safety of others, in connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants failed to comply with applicable law and/or the applicable care would cause clear and present danger.

1134. With conscious indifference to the rights and safety of others, in connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants failed to comply with applicable law and/or the applicable care would cause clear and present danger.

1135. With conscious indifference to the rights and safety of others, in connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants failed to comply with applicable law and/or the applicable care

1    would cause clear and present danger.

2    1136. Defendants' conduct was grossly negligent entitling Plaintiffs and
3    Subclass members to appropriate damages.

4    **FLORIDA STATE LAW CLAIMS FOR RELIEF**

5    **(Alleged by Adopting Plaintiffs, and Members of Florida Subclasses, against**
6    **All Defendants)**

7    1137. Class Plaintiffs, the Hyundai Florida Subclass and Kia Florida Subclass,
8    and Independent Subrogation Plaintiffs allege the following causes of action against
9    All Defendants.

10   1138. The Florida Subclasses are comprised of Members of both nationwide
11   classes with claims stemming from vehicle losses (including Kia and Hyundai
12   Vehicles) in the State of Florida due to Defendants' Thief Friendly Design in Kia and
13   Hyundai Vehicles including, but not limited to, the following named Class Plaintiffs:
14   Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate
15   Insurance Company; Allstate New Jersey Property & Casualty Insurance Company;
16   Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance
17   Company; American Family Mutual Insurance Company, SI; Old Dominion
18   Insurance Company; Permanent General Assurance Corporation; Government
19   Employees Insurance Company; GEICO Casualty Company; Horace Mann Insurance
20   Company; Horace Mann Property & Casualty Insurance Company; Infinity Auto
21   Insurance Company; Infinity Indemnity Insurance Company; Allied Property &
22   Casualty Insurance Company; Nationwide Insurance Company of America;
23   Nationwide Affinity Insurance Company of America; New Jersey Manufacturers
24   Insurance Company; Garrison Property & Casualty Insurance Company; Progressive
25   American Insurance Company; Progressive Express Insurance Company; Progressive
26   Select Insurance Company; Mountain Laurel Assurance Company; USAA Casualty
27   Insurance Company; USAA General Indemnity Company; United Services
28   Automobile Association, all of whom paid policy proceeds to their respective

Insureds for losses in Florida pursuant to policies of insurance.

**A.    Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212)**

1139. The Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1140. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

1141. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

1142. The Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

1143. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Fla. Stat. §§ 672.314 and 680.212.

1144. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' insured with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1145. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time

of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacked any anti-theft features or design elements to provide an adequate theft deterrent, or to otherwise satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1146. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and their Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1147. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs, and Subclass Members the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1148. Plaintiffs provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the notice letters sent by Insureds, and Subclass Members within a reasonable amount of time after knowledge of the Thief Friendly Design became public.

1149. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout this Consolidated Complaint, and other Complaints filed in connection with this MDL proceeding, Defendants have long known that the Vehicles contained the Thief Friendly Design and have failed to cure, remedy, or repair the breach. The thefts and damages that have already occurred due to the Thief Friendly Design, moreover, cannot be remedied by repair.

1150. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Vehicles were and are defective, and the Thief Friendly Design in the Vehicles has not been remedied. As a direct and proximate result, Plaintiffs and Subclass Members have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty (Fla. Stat. §§ 672.313, 680.21)**

1151. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1152. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Hyundai and Kia branded Vehicles.

1153. Those Vehicles were manufactured by Defendants during the relevant time period described above. Through attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale.

1154. After Plaintiffs' Insureds purchased or leased the Hyundai and Kia branded Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1155. The Vehicles did not perform as promised in accordance with Defendants' express warranty as they are capable of being stole in a matter of seconds, and that fact has become common knowledge. Thus, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. As a result of that Thief Friendly Design, the Vehicles were easily stolen, and thus failed to conform to the terms of the express warranty described in the Vehicles' VIN plates.

1156. Neither Plaintiffs nor their Insureds were required to provide notice of the Thief Friendly Design prior to the vehicles being stolen and/or damaged. Nevertheless, Plaintiffs provided written notice to Defendants of the Thief Friendly Design, and further notice of the Thief Friendly Design was provided in conjunction with numerous cases being filed regarding the same Thief Friendly Design in actions around the country. While Defendants have suggested that they are attempting to remedy the Thief Friendly Design, any remedy offered to date is ineffective, and fails to comply with anti-theft standards.

1157. Plaintiffs, Subclass Members, and their Insureds have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' express warranty.

**C.      Violations of Florida Unfair and Deceptive Trade Practices Act (Fla. Stat. § 501 et seq.)**

1158. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1159. Defendants, Plaintiffs and Subclass Members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

1160. Defendants were and are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

1161. The Florida Unfair and Deceptive Trade Practices Act ("Florida

UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

1162. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above. Those material facts included the nature of the Thief Friendly Design as it rendered the Vehicles so available to car thieves, it was as if Defendants manufactured the vehicles with an invisible set of keys stuck in the ignition ready to be discovered by car thieves.

1163. Defendants had an ongoing duty to the Plaintiffs and Subclass Members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Subclass Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

     a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Subclass Members;

     b.    Given the hidden and technical nature of the Thief Friendly Design; the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

     c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

       d.     Defendants made false and incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1164. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1165. By misrepresenting the Vehicles as safe, reliable, and compliant with relevant standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by Fla. Stat. § 501.204(1).

1166. Defendants intended for Plaintiffs' Insureds and the Insureds of Subclass Members to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1167. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did not in fact deceive reasonable consumers, including Plaintiffs' Insureds and the Insureds of Subclass Members, about the true safety and reliability of Vehicles, the quality of the Vehicles,

the true value of the Vehicles.

1168. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds and the Insureds of Subclass Members to purchase and lease those vehicles, as Defendants intended. The Plaintiffs' Insureds and the Insureds of Subclass Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1169. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds and the Insureds of Subclass Members did not, and could not, unravel Defendants' deception on their own.

1170. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds and the Insureds of Subclass Members would not have exposed themselves to the unreasonable risk of theft, and associated dangers.

1171. Plaintiffs and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1172. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design, and that defect has not been remedied. Defendants' unlawful acts and practices complained of herein affect the public interest.

1173. Pursuant to Fla. Stat. § 501.211, Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Florida UDTPA.

**D.     Fraud Based on Omissions, Concealment, and Misstatements**

1174. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1175. Plaintiffs and Subclass Members incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1176. Having been aware of the Thief Friendly Design within the Vehicles while making affirmative false statements as to the Vehicles' compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

> a.     Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

> b.     Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

> c.     Given the hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

> d.     Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

> e.     Defendants made false statements about compliance with applicable standards, and incomplete representations about the

safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, including the false statement that the Vehicles complied with all applicable safety and anti-theft standards, Defendants had a duty to disclose the whole truth about those Vehicles.

    f.   In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

1177. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find information about it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds.

1178. Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

1179. The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

1180. Defendants actively misrepresented, concealed and suppressed these

material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1181. If Defendants had fully, fairly, and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

1182. Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

1183. As a direct and proximate result of Defendants' omissions, the Insureds Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

1184. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**E.    Negligence**

1185. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1186. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1187. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely

1 susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2     1188. Defendants failed to exercise reasonable care in connection with their

3 manufacture, distribution, sale, and/or leasing of the Vehicles.

4     1189. The National Highway Traffic Safety Administration has a self-

5 certification system of compliance where vehicle manufacturers certify that their

6 products meet applicable standards. Defendants had a duty to the general public to

7 ensure that all vehicles offered for sale were compliant to all applicable federal

8 standards. This duty precedes the offering of any vehicle for sale in the United States

9 and territories subject to the jurisdiction of federal regulations and is independent of

10 any duties arising through individual contracts for sale or lease that Defendants

11 entered into with Plaintiffs' Insureds.

12     1190. Defendants' violation of their duties under applicable law and/or the

13 applicable standard of care included their failure to comply with federal regulatory

14 requirements to equip their vehicles with mandatory anti-theft protection that

15 complies with the requirements of FMVSS and/or to follow basic industry standards

16 regarding the implementation of immobilizers to reach the same ends.

17     1191. As a result of Defendants' failure to exercise reasonable care, Plaintiffs

18 and Plaintiffs' Insureds suffered damages, including property damage and the loss of

19 use of the Vehicles, together with other damages for which Defendants are liable.

20 **F.**    **Negligent Misrepresentation**

21     1192. Plaintiffs reallege and incorporate by reference all preceding allegations

22 as though fully set forth herein.

23     1193. Named Subclass Members bring this count individually and on behalf of

24 the other members of the Florida Subclasses, against Defendants.

25     1194. Defendants breached their duty to the Insureds by providing inaccurate

26 material information to the Insureds with the intent of inducing them into purchasing

27 or leasing Vehicles. Defendants should have known their representations were untrue,

28 and likely to be relied upon by the Insureds.

1195. Defendants are liable for supplying false information to the Insureds by representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

1196. Defendants knew that they were not providing accurate information, or at the very least failed to exercise reasonable care in obtaining and communicating accurate information regarding the Vehicles, and in particular regarding the Thief Friendly Design of the Vehicles.

1197. Any consumer would consider it important to know that the Vehicle they were contemplating purchasing did not comply with applicable safety and anti-theft standards, including federal regulations.   Yet Defendants knowingly misled consumers as to compliance with those standards as part of an effort to induce the Insureds into purchasing the Vehicles. Defendants knew their inaccurate and incomplete representations would be relied upon by the Insureds.

1198. Defendants knowingly installed substandard theft prevention equipment, failed to disclose that fact and actively concealed the true security characteristics of the Vehicles. Instead, Defendants knowingly represented their vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to FMVSS 114, while concealing information regarding noncompliance with federal and industry standards to induce the Insureds into purchasing or leasing a Vehicle.

1199. The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards. Compliance with federal anti-theft and safety standards are a minimum requirement that consumers, including the Insureds, would view as vital to the purchase of any vehicle.

1200. The Defendants failed to use reasonable care or competence in communicating information regarding the Thief Friendly Design and went as far as to affix each Vehicle with a VIN plate that not only omitted information but

misrepresented the truth.

1201. As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiffs and/or Florida Subclass members have suffered injury-in-fact and/or actual damage. As a direct and proximate result of the Defendants' negligent misrepresentations, Plaintiffs and/or Florida Subclass members have been damaged in an amount to be determined at trial.

**G.    Gross Negligence**

1202. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

1203. Defendants manufactured, distributed, sold, and/or leased the Vehicles to the Insureds.

1204. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds, particularly with regard to the proper design, manufacture, installation, description, and disclosure of an appropriate anti-theft device that meets all applicable anti-theft standards.

1205. Because the anti-theft standard is a safety standard, Defendants' reckless disregard of compliance with that standard placed the Insureds in clear and present danger of damage due to the theft of the Vehicles.

1206. With conduct that smacks of willfulness, and with conscious and reckless indifference to the rights and safety of others, in connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants failed to comply with applicable law and/or the applicable standard of care, causing clear and present danger to the Insureds.

1207. Defendants' conduct was grossly negligent entitling Plaintiffs and Subclass members to appropriate damages.

## <u>GEORGIA STATE LAW CLAIMS FOR RELIEF</u>

**(Alleged by Adopting Plaintiffs, and Members of Georgia Subclasses, against All Defendants)**

1208. Class Plaintiffs, the Hyundai Georgia Subclass and Kia Georgia Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1209. The Georgia Subclasses are comprised of Members of both nationwide classes with claims stemming from vehicle losses (including both Kia and Hyundai Vehicles) in the State of Georgia due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insuranc Company, S.I.; Permanent General Assurance Corporation; Erie Insurance Company; GEICO General Insurance Company; GEICO Indemnity Company; Horace Mann Property & Casualty Insurance Company; Infinity Auto Insurance Company; Infinity Casualty Insurance Company; The First Liberty Insurance Company; Allied Property & Casualty Insurance Company; Nationwide Affinity Insurance Company of America; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Progressive Direct Insurance Company; Progressive Premier Insurance Company of Illinois; Progressive Mountain Insurance Company; Southern Pilot Insurance Company; Root Insurance Company; and Milbank Insurance Company; all of whom paid policy proceeds to their respective Insureds for losses in Georgia pursuant to policies of insurance.

## A.   Breach of Implied Warranty of Merchantability (Ga. Code Ann. §§ 11-2-314 and 11-2A-212)

1210. Plaintiffs  incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1211. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ga.

Code Ann. §§ 11-2-314 and 11-2A-212.

1212. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(a) and 11-2A-103(3), and "sellers" of motor vehicles under § 11-2-103(1)(d).

1213. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga Code Ann. § 11-2A-103(1)(p).

1214. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in Georgia and are therefore "buyers" within the meaning of Ga. Code Ann. § 11-2-103(1)(a).

1215. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who leased Vehicles in Georgia and are therefore "lessees" within the meaning of Ga. Code Ann. § 11-2A-103(1)(n).

1216. The Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

1217. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided the Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe, available and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1218. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft

deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.  This meant, among other things, that the Vehicles were not reliably available to be used for transport.

1219. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, the Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of the sale.

1220. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever-present risk of them being stolen.  Any remedy that has been proposed or offered to date has proven to be inadequate, and at a minimum, does not compensate Plaintiffs for the losses incurred due to the Thief Friendly Design.

1221. On March 9, 2023, Plaintiffs and the Subclass Members provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental

investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1222. Alternatively, Plaintiffs and the Subclass Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles included a Thief Friendly Design; however, to date, upon information and belief, Defendants have not instituted an adequate, or effective and meaningful repair program with respect to the Vehicles. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.  For the Vehicles that were stolen, moreover, any proposed cure for the Thief Friendly Design comes far too late.

1223. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty (Ga. Code Ann. § 11-2-313, *et seq.*)**

1224. Plaintiffs aincorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1225. During the relevant time period described above, the Insureds purchased or leased Vehicles.

1226. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were

made prior to, or at the point of sale for all Vehicles.

**1227.** The statements on the VIN plates describing the Vehicles' compliance with safety and anti-theft regulations are affirmations of fact and/or promises made by Defendants to Plaintiffs' Insured. Those statements amount to an express warranty under Ga. Code Ann. § 11-2-313.

1228. That warranty would be, and is material for any consumer, including all of the Insureds because any reasonable consumer would view the Vehicles' failure to comply with applicable anti-theft and safety standards as important to any decision to buy, or lease a Vehicle.

1229. After the Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1230. The Vehicles did not perform as promised in accordance with Defendants' express warranty as the Vehicles are capable of being stolen in a matter of seconds, and that fact has become common knowledge. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1231. Defendants were provided notice and ample opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Specifically, Plaintiffs and Subclass members provided Defendants notice of the Theft Friendly Design on March 09, 2029. To date, Defendants have failed to remedy the problem and, as a result, thefts

continue to escalate.  While Defendants have suggested they are attempting to remedy the Thief Friendly Design, any remedy offered to date is ineffective, and fails to comply with anti-theft standards.

1232. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, due to the Thief Friendly Design and related to Defendants' breach of their express warranty.

## C. Violation of the Georgia Uniform Deceptive Trade Practices Act (Ga. Code Ann. § 10-1-390, *et seq.*)

1233. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1234. Defendants, Plaintiffs, Plaintiffs' Insureds, and Subclass Members are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code Ann. § 10-1-371(5).

1235. The Georgia UDTPA prohibits any "deceptive trade practices", which include misrepresenting the "standard, quality, or grade" of goods and services, and engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).

1236. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1237. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Georgia UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

a.  Defendants expressly warranted that the Vehicles conformed with applicable anti-theft standards when that was not true due to the Thief Friendly Design of the Vehicles;

b.  Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c.  Given the hidden and technical nature of the Thief Friendly Design, the Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

d.  Defendants knew that the Thief Friendly Design gave rise to safety concerns for the Insureds who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.  Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the Insureds that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to the Insureds, Defendants had the duty to disclose the whole truth.

1238. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce Insureds to purchase the Vehicles.

1239. By misrepresenting the Vehicles as safe, reliable, and compliant with

applicable anti-theft standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Georgia UDTPA:

    a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

    b.    Representing that the Vehicles have approval, characteristics, uses, and benefits which they do not have;

    c.    Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

    d.    Advertising the Vehicles with the intent not to sell or lease them as advertised; and

    e.    Engaging in conduct which creates a likelihood of confusion or of misleading persons regarding the Vehicles.

Ga. Code Ann. § 10-1-372(2), (5), (7), (9), (12).

1240. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1241. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

1242. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase or lease those Vehicles, as

Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles. Such representations, namely that the Vehicles complied with applicable anti-theft and safety standards, would be, and are material for any consumer contemplating purchase of any Vehicle. Thus, the Insureds relied upon those representations, as any reasonable consumer would rely on such representations.

1243. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

1244. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them, and if purchased, could have taken precautions against theft.

1245. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1246. Defendants' conduct presents a continuing risk to Plaintiffs, their Insureds, as well as the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1247. Pursuant to Ga. Code Ann. § 10-1-373, Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair and/or deceptive acts or practices and any other just and proper relief available under the Georgia UDTPA.

**D.     Violation of the Georgia Fair Business Practices Act (Ga. Code Ann. § 10-1-390, *et seq*.)**

1248. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1249. The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful. Ga. Code Ann. § 10-1-393(a).

1250. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia FBPA.

1251. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce Insureds to purchase the Vehicles.

1252. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Georgia UTPA:

    a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

    b.    Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    c.    Representing that the Vehicles are of a particular standard, quality, and grade when they are not; and

    d.    Advertising the Vehicles with the intent not to sell or lease them as advertised.

Ga. Code Ann. § 10-1-393(b).

1253. Defendants intended for the Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety

hazards described above.

1254. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

1255. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase or lease those Vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles.

1256. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

1257. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them, and if purchased, could have taken precautions against theft.

1258. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1259. Defendants' violations present a continuing risk to Plaintiffs, their

Insureds, as well as the general public because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1260. Plaintiffs and Subclass members provided notice of the violations created by the Thief Friendly Design by letter dated March 09, 2023.  All Defendants, moreover, were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1261. Alternatively, Plaintiffs and the Subclass Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs or their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.  With respect to the Vehicles already stolen, moreover, Defendants do not appear to have offered any remedy to compensate Plaintiffs for their losses.

1262. Pursuant to Ga. Code Ann. § 10-1-399, Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Georgia FBPA.

**E.     Fraud by Omission and Concealment (Alleged by Both Georgia Subclasses and Adopting Plaintiffs against All Defendants)**

1263. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1264. Defendants were aware of the Thief Friendly Design when they

1  marketed and sold the Vehicles to Plaintiffs' Insureds.

2      1265. Having been aware of the Thief Friendly within the Vehicles while
3  making affirmative false statements as to the Vehicles' compliance with all applicable
4  anti-theft standards, and having known that Plaintiffs' Insureds could not have
5  reasonably been expected to know those statements were false, Defendants had a duty
6  to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the
7  sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly
8  Design because:

9          a.    Defendants falsely stated that the Vehicles complied with all
10              applicable anti-theft and other safety standards;

11         b.    Defendants had exclusive access to and far superior knowledge
12              about facts regarding the Thief Friendly Design and Defendants
13              knew these facts were not known to or reasonably discoverable by
14              Plaintiffs' Insureds;

15         c.    Given hidden and technical nature of the Thief Friendly Design,
16              the Insureds lacked the sophisticated expertise in vehicle
17              components that would be necessary to discover the defect on their
18              own;

19         d.    Defendants knew that the Thief Friendly Design gave rise to safety
20              concerns for the consumers who use the Vehicles, and the Thief
21              Friendly Design would have been a material fact to the Insureds'
22              decisions to buy or lease Vehicles; and

23         e.    Defendants made false statements about compliance with
24              applicable standards, and incomplete representations about the
25              safety, availability, and reliability of the Vehicles while
26              purposefully withholding material facts about a known safety
27              defect. In uniform advertising and materials provided with each
28              Vehicle, Defendants intentionally misrepresented, concealed,

suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

1266. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

1267. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the availability of the Vehicles to be driven as intended, the risk of theft, and value of the Vehicles purchased or leased by the Insureds. Any consumer would find it important that the Vehicles did not comply with applicable safety and anti-theft standards. Yet that fact was concealed from the Insureds.

1268. Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which the Insureds did by purchasing or leasing the Vehicles, believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

1269. The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

1270. Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and their Insureds.

1271. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

1272. Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased.

1273. Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or deter theft of the Vehicles on their own.

1274. As a direct and proximate result of Defendants' omissions, the Insureds' Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

1275. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## F.   Negligence (Alleged by Both Georgia Subclasses and Adopting Plaintiffs against All Defendants)

1276. Plaintiffs reallege and incorporate by reference all allegations as if fully set forth herein.

1277. Defendants manufactured, distributed and sold the Vehicles.

1278. Defendants owed a duty of care to the Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

1279. Defendants violated applicable industry standards and otherwise failed

to exercise reasonable care in connection with their manufacture, distribution, marketing, and sale of the Vehicles.

1280. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1281. The Defendants' violation of their duties under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

1282. As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

**G.     Negligent Misrepresentation (Alleged by both Georgia Subclasses and Adopting Plaintiffs against All Defendants)**

1283. Plaintiffs reallege and incorporate by reference all allegations as if fully set forth herein.

1284. Defendants made representations to Plaintiffs' Insureds concerning the safety and quality of the Vehicles that were not true, as more fully alleged in the preceding paragraphs.

1285. Defendants had no reasonable grounds for believing these representations were true when they made them, yet they intended that Plaintiffs' Insureds rely on the misrepresentations.

1286. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations

and, as a direct and proximate result thereof, and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## HAWAII STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of Hawaii Subclasses, against All Defendants)**

1287. Class Plaintiffs, the Hyundai Massachusetts Subclass and Kia Hawaii Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1288. The Hawaii Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (from Kia and Hyundai Vehicles) in the State of Hawaii due to the Thief Friendly Design in Kia and Hyundai Vehicles including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Northbrook Indemnity Company; GEICO Indemnity Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association, all of whom paid policy proceeds to their respective Insureds for losses in Hawaii pursuant to policies of insurance.

**A.     Breach of Implied Warranty (Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212)**

1289. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein. Plaintiffs and Subclass Members for each Subclass on behalf of their Insureds reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1290. Named Subclass Members bring this count individually and on behalf of the other members of the Hawaii Subclasses against Defendants.

1291. Defendants were at all relevant times "merchants" with respect to motor vehicles under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), and "sellers" of motor vehicles under § 490:2-103(1)(d).

1292. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Haw. Rev. Stat. § 490:2A-103(a)(16).

1293. The Vehicles are and were at all relevant times "goods" within the meaning of Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

1294. Plaintiffs stand in the shoes of their Insureds who purchased Vehicles in Hawaii and are therefore "buyers" within the meaning of Haw. Rev. Stat. §§ 490:9-320, and in the shoes of their Insureds who leased Vehicles in Hawaii and are therefore "lessees" within the meaning of Haw. Rev. Stat. §§ 490:2A-103, collectively "Plaintiffs' Insureds."

1295. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212 and 213.

1296. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles as manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1297. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time

of sale or thereafter because the Vehicles contained the Thief Friendly Design. The Thief Friendly Design lacks any anti-theft features or design elements that provide an adequate theft deterrent, and are not sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard making the Vehicles vulnerable to theft, and making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. In addition, the Vehicles did not conform to the promises or affirmations of fact made on the labels affixed to the Vehicles that stated the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture.

1298. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1299. Furthermore, these circumstances caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of implied warranties denied Plaintiffs' Insureds the benefit of their respective bargains, which was the possession of a vehicle for its intended uses without a risk of them being stolen that was much higher than other comparable vehicles that did comply with the Federal safety standards and were not manufactured with the Thief Friendly Design.

1300. Plaintiffs have provided Defendants with reasonable notice and

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1301. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. Therefore, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

**1302.** The Defendants breached the implied warranty of merchantability and fitness for particular purpose by manufacturing and selling defective Vehicles that contained the Thief Friendly Design and failing to remedy the defect.  As a direct and proximate result of Defendants' breach, Plaintiffs were obligated by their policies of insurance with Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, in an amount to be proven at trial.

**B.  Breach of Express Warranty (HRS §§ 409:2-313 and 409:2A-210)**

1303. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1304. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles manufactured by Defendants.

1305. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle

safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.  On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1306. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1307. The Vehicles did not perform as promised in accordance with Defendants' express warranty on the VIN plates.  In fact, the Vehicles were manufactured and sold without compliance to the applicable safety and theft prevention standards in effect on the date of manufacture and can be stolen in a matter of seconds, a fact that has become common knowledge. As a result of this Thief Friendly Design, the Vehicles were in fact easily and frequently stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates.

1308. As a direct and proximate result of Defendants' breach of their express warranty, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss to Plaintiff's Insureds' Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

## C.   Unfair and Deceptive Acts in Violation of Hawaii Law (Haw. Rev. Stat. § 480, et seq.)

1309. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1310. Plaintiffs stand in the shoes of their Insureds who are "consumers" within the meaning of Haw. Rev. Stat. § 480-1.

1311. The Vehicles are "commodities" within the meaning of Haw. Rev. Stat. § 480-1.

1312. Defendants are engaged in trade or commerce within the meaning of Haw. Rev. Stat. § 480-1.

1313. The Hawaii Unfair and Deceptive Acts and Practices Act (Hawaii UDAP") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce...." Haw. Rev. Stat. § 480-2(a).

1314. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Hawaii UDAP by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1315. Defendants had an ongoing duty under the Hawaii UDAP to refrain from unfair or deceptive practices to Plaintiffs' Insureds in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief

Friendly Design would have been a material fact to Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

d.   In the uniform advertising and materials provided to consumers with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers, including Plaintiff's Insureds, that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1316. Defendants made incomplete representations to the Plaintiffs' Insureds about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, and Defendants excluded that information from the advertising and materials provided to consumers in order to induce consumers to purchase the Vehicles.

1317. Defendants engaged in one or more unfair or deceptive business practices as defined Haw. Rev. Stat. § 480-2(a) by misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design.

1318. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1319. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and to conceal the existence of the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive

reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1320. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

1321. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1322. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1323. Under their policies of insurance with the Plaintiffs' Insureds, Plaintiffs were obligated to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information, in an amount to be proven at trial.

1324. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.  Therefore, Plaintiffs also seek an order

enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Hawaii UDAP.

**D.    Fraud by Omission, Suppression or Concealment**

1325. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1326. Defendants made incomplete representations to the Plaintiffs' Insureds about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.

1327. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1328. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1329. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1330. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by

Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

      a.    Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and the false representation of Federal compliance made in advertising and the VIN plate;

      b.    Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

      c.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

      d.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

      e.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

      f.    In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and

1  lease to consumers, Defendants had the duty to disclose the whole
2  truth.

3      1331. In breach of their duties, Defendants failed to disclose the Thief Friendly
4  Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the
5  Vehicles complied with Federal standards for safety and anti-theft would justifiably
6  induce them to purchase or lease Vehicles from Defendants that they otherwise may
7  have chosen not to acquire if they had known of the Thief Friendly Design.

8      1332. The Thief Friendly Design within the Vehicles is material to the sale of
9  the Vehicles because a reasonable person would find anti-theft protection an
10  important factor in purchasing, leasing, or retaining a new or used motor vehicle, and
11  because it directly impacts the value of the Vehicles purchased or leased by the
12  Plaintiffs' Insureds.

13      1333. Defendants intended for the Plaintiffs' Insureds to rely on their
14  omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing
15  the Vehicles at prices that they believed included anti-theft protection and not a Thief
16  Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

17      1334. Plaintiffs' Insureds' reliance was reasonable, as they had no way of
18  discerning or otherwise learning the facts that Defendants had concealed or failed to
19  disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on
20  their own.

21      1335. Defendants actively concealed and suppressed these material facts, in
22  whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid
23  costly recalls that would expose them to liability for those expenses and harm the
24  commercial reputations of Defendants and their products. They did so at the expense
25  of Plaintiffs and Plaintiffs' Insureds.

26      1336. If Defendants had fully and adequately disclosed the Thief Friendly
27  Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

28      1337. As a direct and proximate result of Defendants' omissions, Plaintiffs

were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.    Negligent Misrepresentation**

1338. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1339. Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

1340. Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether or not to purchase or lease the Vehicles, and whether to take additional anti-theft precautions after such purchase or lease.

1341. Defendants manufactured the Vehicles for sale to the public and had a pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

1342. Defendants had a duty to exercise reasonable care or competence in obtaining and communicating information for the guidance of others in these business transactions.

1343. Defendants failed that duty by providing Plaintiffs' Insureds with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards. Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1344. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction.

1345. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead had they known of the Thief Friendly Design in the Defendants' Vehicles.

1346. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold.

1347. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

1348. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**F.     Negligence**

1349. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1350. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1351. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1352. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1353. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**G.     Gross Negligence**

1354. Plaintiffs reallege and incorporate by reference all preceding allegations

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

as though fully set forth herein.

1355. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards. Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1356. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

1357. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

1358. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1359. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been

negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1360. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

### IDAHO STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of Idaho Subclasses, against All Defendants)**

1361. Class Plaintiffs, the Hyundai Idaho Subclass and Kia Idaho Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1362. The Idaho Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Idaho due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire & Property Casualty Insurance Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; Permanent General Assurance Corporation; Alpha Property & Casualty Insurance Company; Trinity Universal Insurance Company; Progressive Direct Insurance Company; Progressive Northwestern Insurance Company; United Financial Casualty Company; USAA General Indemnity Company; and United Services Automobile Association, who paid policy proceeds to their respective Insureds in Idaho pursuant to policies of insurance.

**A.     Breach of Implied Warranty (Idaho Code §§ 28-2-314 and 28-12-212)**

1363. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

1364. Defendants were at all relevant times "merchants" with respect to motor vehicles Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under § 28-2- 103(1)(d).

1365. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Idaho Code § 28-12-103(1)(p).

1366. The Vehicles are and were at all relevant times "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

1367. Plaintiffs stand in the shoes of their Insureds who purchased Vehicles in Idaho and are therefore "buyers" within the meaning of Idaho Code §28-2-103(a), and in the shoes of their Insureds who leased Vehicles in Idaho and are therefore "lessees" within the meaning of Idaho Code §28-12-103(1)(n), collectively "Plaintiffs' Insureds."

1368. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant Idaho Code §§ 28-2-314 and 28-12-212.

1369. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1370. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time

of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders the Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1371. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design, which they were aware of at the time of sale. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants because a gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds.

1372. Furthermore, these circumstances caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of implied warranties denied Plaintiffs' Insureds the benefit of their respective bargains, which was the possession of a vehicle for its intended uses without a risk of them being stolen that was much higher than other comparable vehicles that did comply with the Federal safety standards and were not manufactured with the Thief Friendly Design.

1373. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed

against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1374. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. Therefore, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1375. The Defendants breached the implied warranty of merchantability and fitness for a particular purpose by manufacturing and selling defective Vehicles and failing to remedy the defect.  As a direct and proximate result of Defendants' breach, Plaintiffs were obligated to make payments under their policies of insurance to or on behalf of their Insureds for damage to or losses of their Vehicles that occurred the course of their being stolen due to the Thief Friendly Design, and incurred damages in an amount to be proven at trial.

**B.      Breach of Express Warranty (Idaho Code §§ 28-2-313 and 28-12-210)**

1376. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1377. Plaintiffs stand in the shoes of their Insureds who purchased Vehicles in Idaho and are therefore "buyers" within the meaning of Idaho Code §28-2-103(a), and in the shoes of their Insureds who leased Vehicles in Idaho and are therefore "lessees" within the meaning of Idaho Code §28-12-103(1)(n), collectively "Plaintiffs' Insureds."

1378. Plaintiffs' Insureds purchased or leased Vehicles from Defendants.

1379. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made

an express warranty under Idaho Code § 28-2-313(a) and (b) that was an affirmation of fact or promise, and a description of the goods made by Defendants to the consumers that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles. These affirmations of fact, promises and descriptions of the Vehicles became part of the basis of the bargain and created an express warranty that the Vehicles would conform to the VIN plate.

1380. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1381. The Vehicles did not perform as promised in accordance with Defendants' express warranty on the VIN plates.   In fact, the Vehicles as manufactured and sold did not comply with the applicable safety and theft prevention standards in effect on the date of manufacture, and as a result, can be stolen in a matter of seconds, a fact that has become common knowledge. In fact, Vehicles with the Thief Friendly Design were easily and frequently stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates.

1382. As a direct and proximate result of Defendants' breach of their express warranty to Plaintiff's Insureds, Plaintiffs were obligated by their policies of insurance with their Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

**C.      Violation of the Idaho Consumer Protection Act (Idaho Code § 48-601, et seq.)**

1383. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1384. Defendants, Plaintiffs and Plaintiff's Insureds are "persons" within the meaning of Idaho Code § 48-602(1).

1385. Defendants are engaged in "trade" or "commerce" within the meaning of Idaho Code § 48-602(2).

1386. The Vehicles are "goods" within the meaning of Idaho Code § 48-602(6).

1387. The Idaho Consumer Protection Act ("Idaho CPA") makes "unfair methods of competition and unfair or deceptive acts or practices" unlawful.

1388. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles resulting from the Thief Friendly Design, as detailed above.

1389. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Idaho CPA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

1390. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

1391. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

1392. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the decisions to buy or lease Vehicles; and

1393. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1394. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1395. By misrepresenting the Vehicles as safe, reliable and protected from theft, and failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Idaho Code§ 48-603(2), (5), (7), (9), (17), and (18):

        a.    Causing likelihood of confusion or of misunderstanding as to the approval, or certification of the Vehicles;

        b.    Representing that the Vehicles had approval, characteristics, uses, or benefits that they did not have;

        c.    Representing that the Vehicles were of a particular standard, quality or grade that they did not have;

        d.    Advertising the Vehicles with the intent not to sell them as advertised;

        e.    Engaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer; and

       f.     Engaging in any unconscionable method, act or practice in the conduct of trade or commerce.

1396. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1397. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles did not have a Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1398. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1399. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1400. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1401. Under their policies of insurance with the Plaintiffs' Insureds, as a direct

and proximate result of Defendants' false and misleading conduct, Plaintiffs were obligated to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

1402. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices described in this complaint affect the public interest.  Therefore, pursuant to Idaho Code § 48-608, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Idaho CPA.

**D.     Fraud by Omission and Concealment**

1403. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1404. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1405. Because Defendants were the designers, manufacturers and sellers of the Vehicles, and their design information and marketing schemes were not ascertainable through publicly available sources, the Defendants had special knowledge and information regarding the Vehicles offered for sale to the Plaintiffs' Insureds that was not ascertainable by the Plaintiffs' Insureds. As such, the Plaintiffs' Insureds had trust and confidence that the Defendants had informed them truthfully and fully about the features and safety compliance of the Vehicles, since they were unable to verify the information for themselves.

1406. Defendants had a further duty to disclose the Thief Friendly Design to

the Plaintiffs' Insureds because they knew that the Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design and were relying on Defendants for information on the Vehicles features and compliance to applicable Federal standards for safety and anti-theft. Because Defendants made affirmative statements in advertising and on the VIN plates affixed to the Vehicles Defendants had a duty to disclose the Thief Friendly Design to prevent those affirmative statements of compliance from being misleading.

1407. Defendants further had a duty to disclose the Thief Friendly Design because:

  a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

  b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

  c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

  d. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1408. In breach of their duties, Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect when they failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.  In addition, Defendants made affirmative representations that the Vehicle complied with Federal standards to the Plaintiffs' Insureds in the VIN plate affixed to the Vehicle in a prominent place that the driver was exposed to every time they entered the Vehicle and did not disclose to Plaintiffs' Insureds that the VIN plate compliance statement was false with respect to anti-theft standards.

1409. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle that it be compliant to applicable Federal safety and anti-theft standards, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.  Other comparable vehicles for sale in the marketplace are compliant to the Federal standards, and the Thief Friendly Design that made Defendants' Vehicles inferior to other vehicles offered for sale would be a material factor in the Plaintiffs' Insureds' decision whether to buy the Defendants' Vehicle, or one from another manufacturer that did not have the same defect.

1410. Defendants intended for the Plaintiffs to rely on their omissions and concealment by intentionally manufacturing some Vehicles with the Thief Friendly Design and then falsely marking them with the VIN plate as compliant to anti-theft standards.  Defendants made the affirmative statement of compliance, and knowing it to be false, they did not disclose the omitted material facts to the Plaintiffs' Insureds knowing that Plaintiffs' Insureds would rely on their representations about the Vehicle to make their buying or leasing decisions. In fact, the Plaintiffs' Insureds did rely on the Defendants' omissions of material fact and purchased and leased the Vehicles at prices that did not reflect the vehicles' Thief Friendly Design, and in the

belief that the Vehicles did not have a defect that affected the quality, reliability, safety, and value of the Vehicles.

1411. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

1412. Plaintiffs' reliance was justifiable and reasonable, as they had no way of discerning the facts that Defendants had concealed or failed to disclose. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1413. Defendants actively and intentionally concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1414. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs would have seen such a disclosure.

1415. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with their Insureds to pay for stolen Vehicles, or Vehicles damaged in the course of being stolen, and incurred actual damages in an ascertainable amount subject to proof at trial.

**E.     Negligence**

1416. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1417. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles

they offered for sale were compliant to all applicable Federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1418. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1419. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1420. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## F.     Gross Negligence

1421. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1422. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein Plaintiffs and Subclass Members for each New York Subclass on behalf of their Insureds reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1423. Named Subclass Members bring this count individually and on behalf of the other members of the New York Subclasses against Defendants.

1424. The National Highway Traffic Safety Administration has a self-

certification system of compliance where vehicle manufacturers certify their products meet applicable standards. Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1425. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, and contained the Thief Friendly Design, where a reasonable person in a similar situation and of similar level of responsibility would inescapably be drawn to recognize that it was their duty to manufacture vehicles that were compliant to safety and anti-theft Federal standards, as they had certified to the cognizant Federal agencies, or clearly disclose to the public and consumers that their Vehicles did not so comply. Failing that duty showed a deliberate indifference by Defendants to the harmful consequences to others of their actions.

1426. Defendants' conduct was reckess, willful and wanton because they breached their duties to the general public in designing, manufacturing and selling vehicles that were not compliant to applicable Federal standards for safety and anti-theft, and then marketed and sold those vehicles to consumers, such as the Plaintiffs' Insureds, thereby creating an unreasonable risk of harm to the general public that involved a high degree of probability that the harm would result.

1427. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds

purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1428. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## ILLINOIS STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Illinois Subclasses, against All Defendants)

1429. Class Plaintiffs, the Hyundai Illinois Subclass and Kia Illinois Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1430. The Illinois Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate North American Insurance Company; Allstate Property & Casualty Insurance Company; American Alliance Casualty Company; American Family Insurance Company; American Family Connect Property & Casualty Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; Main Street America Protection Insurance Company; Midvale Indemnity Company; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; Horace Mann Insurance Company; American Access Casualty Company; GEICO General Insurance Company; GEICO Casualty Company; Alpha Property & Casualty Insurance Company; Financial Indemnity Company; Unitrin Safeguard

Insurance Company; Liberty Surplus Insurance Corporation; Nationwide General Insurance Company; New Jersey Mutual Insurance Company; Artisan and Truckers Casualty Company; Progressive Hawaii Insurance Company; Progressive Paloverde Insurance Company; Progressive Northern Insurance Company; Progressive Michigan Insurance Company; Progressive Universal Insurance Company; General Casualty Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA General Indemnity Company; USAA Casualty Insurance Company; United Services Automobile Association; First Chicago Insurance Company; and United Security Health and Casualty Insurance Company; who paid policy proceeds to their respective Insureds in Illinois pursuant to policies of insurance.

## A.      Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314 and 5/2A-212)

1431. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1432. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810 ILCS 5/2-314 and 5/2A-212.

1433. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 810 ILCS 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under 5/2-103(1)(d).

1434. Defendants are and were at all relevant times "lessors" of motor vehicles under 810 ILCS 5/2A-103(1)(p).

1435. Plaintiffs stand in the shoes of all Plaintiffs' Insureds who purchased or leased Vehicles in Illinois and are "buyers" within the meaning of 810 ILCS 5/2-103(1)(a), and "lessees" within the meaning of 810 ILCS 5/2A-103(1)(n).

1436. The Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1) and 5/2A-103(1)(h).

1437. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds  with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1438. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because they contained the Thief Friendly Design.  As a result, the Vehicles lacked any anti-theft features or design elements to provide an adequate theft deterrent to satisfy FMVSS 114, resulting in a substantial safety hazard making the Vehicles vulnerable to theft, and also making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1439. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design, which Defendants knew existed at the time of sale. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored

Defendants because of the gross disparity in bargaining power between Defendants and Plaintiffs' Insureds.

1440. Furthermore, these circumstances caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of implied warranties denied Plaintiffs' Insureds the benefit of their respective bargains, which was the possession of a vehicle for its intended uses without a risk of them being stolen that was much higher than other comparable vehicles that did comply with the Federal safety standards and were not manufactured with the Thief Friendly Design.

1441. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1442. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. Therefore, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1443. The Defendants breached the implied warranty of merchantability and fitness for a particular purpose by manufacturing and selling defective Vehicles and failing to remedy the defect.  As a direct and proximate result of Defendants' breach, Plaintiffs were obligated to make payments under their policies of insurance to or on behalf of their Insureds for loss of damage to their Insureds' Vehicles in the course of

being stolen due to the Thief Friendly Design, and incurred damages in an amount to be proven at trial.

**B.      Breach of Express Warranty (810 ILCS 5/2-313 and 810 ILCS 5/2A-210)**

1444. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1445. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1446. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1447. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1448. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1449. As a direct and proximate result of Defendants' breach, Plaintiffs were obligated to make payments under their policies of insurance to or on behalf of their

Insureds for loss of damage to their Insureds' Vehicles in the course of being stolen due to the Thief Friendly Design, and incurred damages in an amount to be proven at trial.

**C.      Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, et seq.)**

1450. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1451. Defendants, Plaintiffs and Plaintiffs' Insureds are "persons" within the meaning of 815 ILCS 505/1(c).2405. The Plaintiffs' Insureds are "consumers" within the meaning of 815 ILCS 505/1(e).

1452. The Vehicles are "merchandise" within the meaning of 815 ILCS 505/1(b).

1453. Defendants were and are engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

1454. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices[.]" 815 ILCS 505/2.

1455. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design.

1456. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because:

a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants

knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the decisions to buy or lease Vehicles; and

d. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1457. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect thereby breaching their duties to Plaintiffs' Insureds.

1458. Defendants intended to induce Plaintiffs' Insureds to purchase the Vehicles by withholding and failing to disclose the information concerning the Thief Friendly Design that was known to Defendants at the time of advertising and selling the Vehicles.

1459. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 505/2 and 510/2:

a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

b.    Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

c.    Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

d.    Advertising the Vehicles with the intent not to sell or lease them as advertised;

e.    Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

f.    Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived, or damaged thereby.

1460. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1461. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers such as Plaintiffs' Insureds about the true safety, reliability, quality, and actual value of the Vehicles.

1462. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were

material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1463. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1464. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1465. As a direct result of Defendants' fraudulent and deceptive practices, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, in an amount to be proven at trial.

1466. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices described in this complaint affect the public interest.

1467. Pursuant to 815 ILCS 505/10a, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Illinois CFA.

**D.     Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill. Comp. Stat. 510/1, et seq.)**

1468. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1469. Defendants, Plaintiffs, and Plaintiff's Insureds are "persons" within the meaning of 815 ILCS 510/1(5).

1470. The Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA") prohibits deceptive trade practices in the course of a business, vocation, or occupation. 815 ILCS 510/2(a).

1471. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1472. Specifically, by misrepresenting the Vehicles as safe and/or free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Vehicles and the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 510/2(a)(5), (7), (9), and (12):

    a.     Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b.     Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

    c.     Advertising the Vehicles with the intent not to sell or lease them as advertised; and

    d.     engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

1473. Defendants' unfair and deceptive acts or practices, including their

misrepresentations, concealments, omissions, and suppressions of material facts, were designed and intended to mislead, and had a tendency or capacity to mislead, and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by a Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, quality, and value of the Vehicles.

1474. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1475. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1476. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1477. As a direct result of Defendants' deceptive practices, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss of Vehicles that were lost or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to suffer ascertainable losses and actual damages and costs and expenses, including attorney's fees, in an amount to be proven at trial.

1478. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1479. Pursuant to 815 ILCS 510/3, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding other just and proper relief available under the Illinois UDTPA.

1480. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**E.      Fraud by Omission or Concealment**

1481. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1482. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1483. Defendants had a duty to disclose the existence of the Thief Friendly Design because it was reasonably foreseeable that withholding the information that the Vehicles were prone to theft would harm Plaintiffs' Insureds.  It was highly likely that a Vehicle with a Thief Friendly Design would be the subject of attempted theft, and since there would have been little or no burden to Defendants in making such a disclosure, it would not be unfair for them to bear the burden of making the choice to manufacture and sell Vehicles with a Thief Friendly Design.  Therefore, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds prior to them purchasing or leasing the Vehicles.

1484. Further, Defendants' superior knowledge of the Thief Friendly Design, which was not readily apparent on inspection of the Vehicle, imposed an obligation

on Defendants to fully disclose the hidden material defect that was known to them.

1485. Because Defendants made representations of safety compliance in advertisements and literature provided with the Vehicles in the course of sales and leasing transactions, and on the VIN plates affixed to the Vehicles, Defendants could not leave half-truths in those representations and had a duty to disclose the full truth that the Vehicles did not have compliant anti-theft protections.

1486. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants given the Thief Friendly Design's hidden and technical nature and Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own.

1487. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

1488. Defendants had knowledge of the material fact of the Thief Friendly Design that they had a legal duty to disclose, and Defendants failed to disclose it to Plaintiffs' Insureds, intending for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1489. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1490. As a direct and proximate result of Defendants' omissions, Plaintiffs

were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**F.    Negligent Misrepresentation**

1491. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1492. Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

1493. Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether or not to purchase or lease the Vehicles, and whether to take additional anti-theft precautions after such purchase or lease.

1494. Defendants manufactured the Vehicles for sale to the public and had a pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

1495. Defendants had a duty to exercise reasonable care or competence in obtaining and communicating information for the guidance of others in these business transactions.

1496. Defendants failed that duty by providing Plaintiffs' Insureds with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards. Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1497. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction.  Defendants' omission were not "innocent" mistakes of fact as they had actual knowledge of the Thief Friendly Design they manufactured into certain of their vehicles by design.

1498. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead had they known of the Thief Friendly Design in the Defendants' Vehicles.

1499. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold.

1500. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

1501. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being

stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**G.    Negligence**

1502. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1503. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1504. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1505. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1506. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**H.     Gross Negligence**

1507. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1508. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1509. Defendants breached that duty when they manufactured and sold vehicles to consumers, including Plaintiffs' Insureds, that did not have the anti-theft devices required by Federal standards and negligently created an extreme risk of harm to the general public, including Plaintiffs' Insureds.  Defendants knew of the high likelihood of the extreme risk that vehicles would be stolen but proceeded anyway with products intentionally designed and manufactured with a Thief Friendly Design that did not comply with reasonable standards and regulations designed to protect the health and safety of the general public, including Plaintiffs' Insureds.

1510. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1511. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been

negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1512. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## INDIANA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Indiana Subclasses, against All Defendants)

1513. Class Plaintiffs, the Hyundai Indiana Subclass and Kia Indiana Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1514. The Indiana Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Acuity, A Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; Erie Insurance Exchange; Horace Mann Property & Casualty Insurance Company; NGM Insurance Company; Permanent General Assurance Corporation; Erie Insurance Exchange; American Access Casualty Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; and First Chicago Insurance Company; all of whom paid policy proceeds to their

1 respective Insureds for losses in Indiana pursuant to policies of insurance

2 **A.** **Breach of Implied Warranty of Merchantability (Ind. Code §§ 26-1-2-314**

3 **and 26-1-2.1-212)**

4 1515. Plaintiffs reallege and incorporate by reference all preceding allegations

5 as though fully set forth herein.

6 1516. For purposes of this count, Defendants shall be referred to as

7 "Defendants."

8 1517. A warranty that the Vehicles were in merchantable condition and fit for

9 the ordinary purpose for which such goods are used is implied by law pursuant to Ind.

10 Code §§ 26-1-2-314 and 26-1-2.1-212.

11 1518. Defendants were and are at all relevant times "merchants" with respect

12 to motor vehicles under Ind. Code §§ 26-1-2.1-103(3) and 26-1-2-104(1), and

13 "sellers" of motor vehicles under § 26-1-2-103(1)(d).

14 1519. Defendants were and are at all relevant times "lessors" of motor vehicles

15 under Ind. Code § 26-1-2.1-103(1)(p).

16 1520. Plaintiffs stand in the shoes of their Insureds who purchased or leased

17 Vehicles in Indiana and are "buyers" within the meaning of Ind. Code § 26-1-2-

18 103(1)(a) and are "lessees" within the meaning of Ind. Code § 26-1-2.1-103(1)(n).

19 1521. The Vehicles are and were at all relevant times "goods" within the

20 meaning of Ind. Code §§ 26-1-2.1-103(1)(h) and 26-1-2-105(1).

21 1522. Defendants knew or had reason to know of the specific use for which the

22 Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an

23 implied warranty that the Vehicles and any parts thereof were merchantable and fit

24 for the ordinary purposes for which they were sold. This implied warranty included,

25 among other things, a warranty that the Vehicles were manufactured, supplied,

26 distributed, and sold by Defendants, were safe and reliable for providing

27 transportation, would not be vulnerable to an abnormally high risk of theft and

28 complied with applicable Federal and state laws and regulations, including FMVSS

114.

1523. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders  Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1524. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design, which Defendants knew about at the time of the sale or lease. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds.

1525. Furthermore, these circumstances caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of implied warranties denied Plaintiffs' Insureds the benefit of their respective bargains, which was the possession of a vehicle for its intended uses without a risk of them being stolen that was much higher than other comparable vehicles that did comply with the Federal safety standards and were not

manufactured with the Thief Friendly Design.

1526. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1527. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. Therefore, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1528. The Defendants breached the implied warranty of merchantability and fitness for a particular purpose by manufacturing and selling defective Vehicles and failing to remedy the defect.  As a direct and proximate result of Defendants' breach, Plaintiffs were obligated to make payments under their policies of insurance to or on behalf of their Insureds for loss of damage to their Insureds' Vehicles in the course of being stolen due to the Thief Friendly Design, and incurred damages in an amount to be proven at trial.

**B.    Breach of Express Warranty (Indiana Code §§ 26-1-2-313 and 26-1-2.1-210)**

1529. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1530. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1531. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1532. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1533. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1534. As a direct and proximate result of Defendants' breach, Plaintiffs were obligated to make payments under their policies of insurance to or on behalf of their Insureds for loss of damage to their Insureds' Vehicles in the course of being stolen due to the Thief Friendly Design, and incurred damages in an amount to be proven at trial.

**C.      Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-1, et seq.)**

1535. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1536. Defendants are "suppliers" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

1537. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of Ind. Code § 24-5-0.5-2(a)(2).

1538. Defendants were and are engaged in "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

1539. The Vehicles were the "subject of a consumer transaction" within the meaning of Ind. Code §24-5-0.5-2(a)(4).

1540. The Indiana Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a supplier from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a).

1541. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Indiana DCSA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1542. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Indiana DCSA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

  a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

  b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle

components that would be necessary to discover the Thief Friendly Design on their own;

   c.     Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the decisions to buy or lease Vehicles; and

   d.     In uniform advertising and materials Defendants voluntarily provided with each Vehicle, they purposefully withheld material facts and intentionally concealed, suppressed, and failed to disclose to consumers that the Vehicles contained the Thief Friendly Design, a known safety defect. Defendants had the duty to disclose the whole truth.

1543. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1544. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ind. Code §§ 24-5-0.5-3(b)(1), (2), and (11):

   a.     Representing that the Vehicles have approval, performance, characteristics, accessories, uses, or benefits that they do not have;

   b.     Representing that the Vehicles are of a particular standard, quality, and grade when they are not; and

   c.     Advertising the Vehicles can be purchased as advertised if the supplier does not intend to sell it as advertised.

1545. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

1546. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1547. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1548. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1549. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1550. To the extent the Thief Friendly Design was an uncured defect, the Plaintiffs' Insureds gave requisite and timely notice to the Defendants sufficient for the purposes of I.C. 24-5-0.5-5(a) through numerous complaints filed against them including individual notice letters sent by consumers including within a reasonable amount of time after the Thief Friendly Design became public.  After such notice,

there was no "offer to cure" by the Defendants to Plaintiffs' Insureds within 30 days after notice was provided.

1551. Alternatively, the conduct of the Defendants was an incurable deceptive act within the meaning of I.C. 24-5-0.5-2(a)(8) and was done by the Defendants as part of a scheme, artifice, or device with intent to defraud or mislead. Defendants intentionally deceived Plaintiffs' Insureds by concealing the existence of the Thief Friendly Design and making statements in the VIN plates and other materials provided with the Vehicles that the Vehicles conformed to the applicable Federal safety and anti-theft standards when the Defendants knew the Vehicles in fact contained the Thief Friendly Designs and did not conform to the standards as advertised. As such, Plaintiffs and Plaintiffs' Insureds did not have a requirement to provide notice to Defendants for such incurable deceptive acts under I.C. 24-5-0.5-2(7), (8); I.C. 24-5-0.5-5(a).

1552. As a direct and proximate result of Defendants' deceptive practices, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for Vehicles that were damaged or lost in the course of thefts made possible by the Thief Friendly Design and suffered ascertainable losses and actual damages in an amount to be proven at trial.

1553. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

**D.    Fraud by Omission, Suppression and Concealment**

1554. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1555. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1556. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because a vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate that they needed to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1557. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1558. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

    b.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

   c.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

   d.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

   e.   In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1559. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

1560. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

1561. Defendants intended for the Plaintiffs' Insureds to rely on their

omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1562. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1563. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1564. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1565. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.    Negligent Misrepresentation**

1566. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein. Defendants were the manufactures and sellers of the Vehicles, and did enter into a buyer-seller relationship with the Plaintiffs' Insureds, and each of them, for the purchase or lease of the Vehicles.

1567. Because Defendants designed, manufactured, and sold the Vehicles, and self-certified the Vehicles to the Federal agencies responsible for compliance with

automobile safety and anti-theft standards, Defendants had knowledge of the Thief Friendly Design that could not have been known to the Plaintiffs' Insureds and therefore were in a position of superiority to them.

1568. Defendants negligently remained silent and failed to inform Plaintiffs' Insureds of the Thief Friendly Design when they had a duty to speak due to their superior position and knowledge.

1569. The Plaintiffs' Insureds relied upon the incomplete statements made by the Defendants in not disclosing that the Vehicles did not comply with all Federal safety and anti-theft standards and in fact had a Thief Friendly Design.  Plaintiffs' Insureds' reliance was reasonable as the Thief Friendly Design was non-obvious, hidden, and could not have been detected by the Plaintiffs' Insureds with the normal inspection of a consumer upon purchase or lease of a vehicle.

1570. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt that Defendants had knowledge of the truth about the Vehicles' features when Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1571. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead if they had known of the Thief Friendly Design in the Defendants' Vehicles.

1572. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

1573. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**F.    Negligence**

1574. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1575. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.   This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1576. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1577. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1578. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make

1   payments for lost or damaged Vehicles, and incurred damages in an ascertainable
2   amount subject to proof at trial.

3   **G.      Gross Negligence**

4   1579. Plaintiffs reallege and incorporate by reference all preceding allegations
5   as though fully set forth herein.

6   1580. The National Highway Traffic Safety Administration has a self-
7   certification system of compliance where vehicle manufacturers certify their products
8   meet applicable standards.   Motor vehicles are a significant instrumentality of
9   personal injury and property damage to consumers and the general public, and as
10  designers, manufacturers and sellers of vehicles Defendants had a duty to the general
11  public to ensure that the vehicles they offered for sale were safe and did not create a
12  substantial risk to consumers.  This duty precedes the offering of any vehicle for sale
13  in the United States and territories subject to the jurisdiction of Federal Regulations
14  and is independent of any duties arising through individual contracts for sale or lease
15  that Defendants entered into with Plaintiffs' Insureds.

16  1581. Defendants breached that duty when they manufactured and sold
17  vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by
18  Federal standards, containing the Thief Friendly Design, in reckless indifference to
19  the safety of consumers and the general public, and the rights of the Plaintiffs'
20  Insureds to use a vehicle that was not unreasonably dangerous for the purposes they
21  purchased or leased it for.

22  1582. By intentionally manufacturing and selling certain vehicles with the
23  Thief Friendly Design the Defendants failed to use even slight care in the protection
24  of all their customers equally and in compliance with the Federal standards, conduct
25  that was so careless as to show reckless indifference for the rights and safety of others.

26  1583. At the time Defendants designed, manufactured, and offered for sale
27  certain vehicles with the Thief Friendly Design they made a conscious decision to
28  disregard the substantial and known risk of those vehicles being stolen in order to

1  make profit from the sale of the Vehicles.

2      1584. Defendants' grossly negligent manufacture and sale of non-compliant

3  vehicles containing the Thief Friendly Design allowed those vehicles to be targeted

4  for theft at a much higher rate than they would have if the vehicles had not been

5  negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds

6  purchased or leased from Defendants were stolen, or damaged in the course of being

7  stolen.

8      1585. As a direct and proximate result of Defendants gross negligence and

9  reckless disregard for the safety of the public in manufacturing and selling non-

10 compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their

11 policies of insurance with their Insureds to make payments for lost or damaged

12 Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

13 ## IOWA STATE LAW CLAIMS FOR RELIEF

14 **(Alleged by Adopting Plaintiffs, and Members of Iowa Subclasses, against All**

15 **Defendants)**

16     1586. Class Plaintiffs, the Hyundai Iowa Subclass and Kia Iowa Subclass, and

17 Independent Subrogation Plaintiffs allege the following causes of action against All

18 Defendants.

19     1587. The Iowa Subclasses are comprised of nationwide Hyundai and Kia

20 Class Members with claims stemming from vehicle losses (including Kia and

21 Hyundai Vehicles) in Iowa due to Defendants' Thief Friendly Design, including, but

22 not limited to, the following named Class Plaintiffs:  Allstate Fire & Property

23 Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance

24 Company; Allstate Property & Casualty Insurance Company; American Family

25 Insurance Company; American Family Mutual Insurance Company, S.I.; American

26 Standard Insurance Company of Wisconsin; Permanent General Assurance

27 Corporation; Artisan and Truckers Casualty Company; Progressive Northern

28 Insurance Company; Progressive Universal Insurance Company; Garrison Property

& Casualty Insurance Company; and USAA General Indemnity Company; who paid policy proceeds to their respective Insureds in Iowa pursuant to policies of insurance.

## A.      Breach of Implied Warranty (Iowa Code §§ 554.2314 and 554.13212)

1588. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1589. Defendants were at all relevant times "merchants" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under § 554.2103(1)(d).

1590. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

1591. The Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

1592. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Iowa Code §§ 554.2314 and 554.13212.

1593. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds    with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1594. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time

of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders  Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1595. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs and Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1596. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1597. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent

by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1598. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1599. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability and fitness for particular purpose, Plaintiffs' Vehicles were and are defective, and the Thief Friendly Design in their Vehicles has not been remedied. As a result, Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**B.      Breach of Express Warranty (Iowa Code §§ 554.2313 and 554.13210)**

1600. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1601. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1602. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1603. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1604. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1605. As a direct and proximate result of Defendants' breach of their express warranty to Plaintiffs' Insureds, the Vehicles were stolen or damaged in the course of being stolen.  As a result, Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**C.      Violation of the Private Right of Action for Consumer Frauds Act (Iowa Code § 714h.1, et seq.)**

1606. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1607. Defendants, Plaintiffs, and Plaintiff's Insureds are "persons" within the meaning of Iowa Code § 714H.2(7).

1608. Plaintiffs' Insureds are "consumers" within the meaning of Iowa Code § 714H.2(3).

1609. The Vehicles are "merchandise" and "consumer merchandise" within the meanings of Iowa Code § 714H.2(4), and (6).

1610. The Iowa Private Right of Action for Consumer Frauds Act (the "Iowa CFA") prohibits a person from engaging in any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3(1).

1611. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Iowa CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1612. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair practices, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact under the Iowa CFA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about

    b.    facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    c.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

   d. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the decisions to buy or lease Vehicles; and

   e. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1613. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1614. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risks posed by the Thief Friendly Design, Defendants engaged in deceptive acts or practices including, but not limited conduct prohibited by Iowa Code § 714H.3(1).

1615. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1616. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1617. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1618. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1619. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1620. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1621. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1622. Pursuant to Iowa Code § 714H.5, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the Iowa CFA.

**D.     Fraud by Omission, Suppression or Concealment**

1623. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1624. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1625. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1626. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1627. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

    i.    Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and the false representation of Federal compliance made in advertising and the VIN plate;

    ii.    Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact

that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

iii.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

iv.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

v.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

vi.   In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1628. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

1629. The Thief Friendly Design within the Vehicles is material to the sale of

the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

1630. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1631. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1632. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1633. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1634. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.      Negligent Misrepresentation**

1635. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

1636. Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

1637. Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether or not to purchase or lease the Vehicles, and whether to take additional anti-theft precautions after such purchase or lease.

1638. Defendants manufactured the Vehicles for sale to the public and had a pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

1639. Defendants had a duty to exercise reasonable care or competence in obtaining and communicating information for the guidance of others in these business transactions.

1640. Defendants failed that duty by providing Plaintiffs' Insureds with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards. Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1641. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction.

1642. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead had they known of the Thief Friendly Design in the Defendants' Vehicles.

1643. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold.

1644. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

1645. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**F.    Negligence**

1646. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1647. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles

they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1648. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1649. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1650. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## G.   Gross Negligence

1651. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1652. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale

in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1653. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

1654. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

1655. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1656. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1657. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## KANSAS STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Kansas Subclasses, against All Defendants)

1658. Class Plaintiffs, the Hyundai Kansas Subclass and Kia Kansas Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1659. The Kansas Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Kansas due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; Permanent General Assurance Corporation; GEICO Choice Insurance Company; GEICO Advantage Insurance Company; Teachers Insurance Company; Response Insurance Company; Unitrin Safeguard Insurance Company; Allied Property & Casualty Insurance Company; Nationwide Mutual Insurance Company; Progressive Northern Insurance Company; Progressive Direct Insurance Company; Progressive Northwestern Insurance Company; Garrison Property & Casualty Insurance Company; and USAA General Indemnity Company who paid policy proceeds to their respective Insureds in Kansas pursuant to policies of insurance.

## A.     Breach of Implied Warranty (Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212)

1660. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1661. For purposes of this count, Defendants together shall be referred to as "Defendants."

1662. Defendants were at all relevant times "merchants" with respect to motor

vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

1663. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

1664. The Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

1665. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. Ann. §§ 84- 2-314 and 84-2A-212.

1666. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1667. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders  Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1668. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1669. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1670. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1671. Alternatively, Plaintiffs  were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not

instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1672. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability and fitness for particular purpose, Plaintiffs' Vehicles were and are defective, and the Thief Friendly Design in their Vehicles has not been remedied. As a result, Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**B.      Breach of Express Warranty (Kan. Stat. Ann. §§ 84-2-2-313 and 84-2a-210)**

1673. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1674. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1675. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1676. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1677. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set

forth herein.

1678. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1679. As a direct and proximate result of Defendants' breach of their express warranty, the Vehicles were stolen, and either lost or damaged in the course of being stolen. As a result, Plaintiffs were obligated under their policies of insurance with Plaintiffs' Insureds to make payments for lost or damaged Vehicles and have incurred and will continue to incur damages in an ascertainable amount, in addition to costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants.

**C.      Violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. § 50-623, et seq.)**

1680. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1681. Defendants are "suppliers" within the meaning of Kan. Stat. Ann. § 50-624(l). The Class Members are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b).

1682. Defendants, Plaintiffs' Insureds and Plaintiffs are all "persons" within the meaning of Kan. 11 Stat. Ann. § 50-624(i).

1683. The sale or lease of the Vehicles is a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

1684. The Kansas Consumer Credit and Protection Act ("Kansas CPA") states

"[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-626(a).

1685. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Kansas CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1686. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Kansas CPA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about

    b.    facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    c.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    d.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

    e.    In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief

Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1687. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1688. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more unconscionable acts or practices prohibited by Kan. Stat. Ann. § 50-626(b)(1)(A)(D), (F), (G), (b)(3), (b)(5).

    a.    Representing that the Vehicles had approval, accessories, characteristics, uses, or benefits that they do not have;

    b.    Representing that the Vehicles are of a particular standard or quality that they do not have; and

    c.    Representing that the Vehicles have uses, benefits or characteristics that Defendants knew they did not have;

    d.    Failing to state material facts or willfully concealing, suppressing, or omitting material facts regarding the Vehicles; and

    e.    Offering the Vehicles without the intent to sell them as advertised.

1689. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1690. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations,

concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds and Class Members, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1691. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1692. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1693. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1694. As a direct and proximate result of Defendants' deceptive acts and practices, the Vehicles contained the Thief Friendly Design and were stolen or attempted to be stolen. Plaintiffs were obligated under their policies of insurance with Plaintiffs' Insureds make payments for Vehicles lost or damaged in the course of being stolen and suffered ascertainable losses and actual damages in an amount subject to proof at trial.

1695. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices

complained of herein affect the public interest.

1696. Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Kansas CPA. Kan. Stat. Rev. § 50-634.

**D.      Fraud by Omission, Suppression or Concealment**

1697. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1698. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1699. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1700. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1701. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design

because:

    a.    Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and the false representation of Federal compliance made in advertising and the VIN plate;

    b.    Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

    c.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    d.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    e.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

    f.    In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and

1   lease to consumers, Defendants had the duty to disclose the whole
2   truth.

3      1702. In breach of their duties, Defendants failed to disclose the Thief Friendly
4   Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the
5   Vehicles complied with Federal standards for safety and anti-theft would justifiably
6   induce them to purchase or lease Vehicles from Defendants that they otherwise may
7   have chosen not to acquire if they had known of the Thief Friendly Design.

8      1703. The Thief Friendly Design within the Vehicles is material to the sale of
9   the Vehicles because a reasonable person would find anti-theft protection an
10  important factor in purchasing, leasing, or retaining a new or used motor vehicle, and
11  because it directly impacts the value of the Vehicles purchased or leased by the
12  Plaintiffs' Insureds.

13     1704. Defendants intended for the Plaintiffs' Insureds to rely on their
14  omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing
15  the Vehicles at prices that they believed included anti-theft protection and not a Thief
16  Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

17     1705. Plaintiffs' Insureds' reliance was reasonable, as they had no way of
18  discerning or otherwise learning the facts that Defendants had concealed or failed to
19  disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on
20  their own.

21     1706. Defendants actively concealed and suppressed these material facts, in
22  whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid
23  costly recalls that would expose them to liability for those expenses and harm the
24  commercial reputations of Defendants and their products. They did so at the expense
25  of Plaintiffs and Plaintiffs' Insureds.

26     1707. If Defendants had fully and adequately disclosed the Thief Friendly
27  Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

28     1708. As a direct and proximate result of Defendants' omissions, Plaintiffs

were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.      Negligent Misrepresentation**

1709. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1710. Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

1711. Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether or not to purchase or lease the Vehicles, and whether to take additional anti-theft precautions after such purchase or lease.

1712. Defendants manufactured the Vehicles for sale to the public and had a pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

1713. Defendants had a duty to exercise reasonable care or competence in obtaining and communicating information for the guidance of others in these business transactions.

1714. Defendants failed that duty by providing Plaintiffs' Insureds with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards. Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1715. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction.

1716. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead had they known of the Thief Friendly Design in the Defendants' Vehicles.

1717. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold.

1718. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

1719. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**F.     Negligence**

1720. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1721. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1722. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1723. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1724. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**G.     Gross Negligence**

1725. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

1726. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1727. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

1728. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

1729. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1730. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been

negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1731. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## KENTUCKY STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of Kentucky Subclasses, against All Defendants)**

1732. Class Plaintiffs, the Hyundai Kentucky Subclass and Kia Kentucky Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1733. The Kentucky Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Kentucky due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Mutual Insurance Company, S.I.; Erie Insurance Exchange; Erie Insurance Property & Casualty Company; Unitrin Safeguard Insurance Company; Financial Indemnity Company; Unitrin Auto and Home Insurance Company; Progressive Direct Insurance Company; Progressive Casualty Insurance Company; Progressive Paloverde Insurance Company; Progressive Specialty Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity

Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Kentucky pursuant to policies of insurance.

## A.      Breach of Implied Warranty (Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212)

1734. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1735. Defendants were at all relevant times "merchants" with respect to motor vehicles under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under § 355.2-103(1)(d).

1736. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

1737. The Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

1738. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212.

1739. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1740. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time

of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders  Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1741. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds  had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1742. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever present risk of them being stolen.

1743. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent

by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1744. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1745. The Defendants breached the implied warranty of merchantability and fitness for particular purpose by manufacturing and selling defective Vehicles that contained the Thief Friendly Design and failing to remedy the defect. As a direct and proximate result of Defendants' breach, Plaintiffs were obligated by their policies of insurance with Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, in an amount to be proven at trial.

**B.    Breach of Express Warranty (Ky. Rev. Stat. §§ 355.2-313 and 355.2A-210)**

1746. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1747. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1748. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were

made prior to, or at the point of sale for all Vehicles.

1749. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1750. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1751. As a direct and proximate result of Defendants' breach of their express warranty, the Vehicles were stolen, and either lost or damaged in the course of being stolen. As a result, Plaintiffs were obligated under their policies of insurance with Plaintiffs' Insureds to make payments for lost or damaged Vehicles and have incurred and will continue to incur damages in an ascertainable amount, in addition to costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants.

## C.    Violation of the Consumer Protection Act (Kentucky Rev. Stat. § 367.110, et seq.)

1752. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1753. Defendants, Plaintiffs and Plaintiffs' Insureds are each a "person" within the meaning of Kentucky Rev. Stat. § 367.110(1).

1754. Defendants are engaged in "trade" and "commerce" within the meaning of Kentucky Rev. Stat. § 367.110(2).

1755. The Kentucky Consumer Protect Action ("Kentucky CPA") states that "[u]nfair, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Kentucky Rev. Stat. § 367.170.

1756. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1757. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair, misleading, or deceptive practices under the Kentucky CPA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

    a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the decisions to buy or lease  Vehicles; and

    d.   In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief

Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1758. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1759. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair, misleading, or deceptive acts or practices in the conduct of trade and commerce as prohibited by Kentucky Rev. Stat. § 367.170(1).

1760. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1761. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, quality,  and true value of the Vehicles.

1762. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as  Defendants  intended.  Plaintiffs'  Insureds  were  exposed  to  those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in

1  deciding to purchase and lease Vehicles.

2      1763. Plaintiffs' Insureds' reliance was reasonable, as they had no way of

3  discerning Defendants' representations were false and misleading, or otherwise

4  learning that the Vehicles contained the Thief Friendly Design, as alleged above.

5  Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their

6  own.

7      1764. Had they known the truth about the Thief Friendly Design, Plaintiffs'

8  Insureds would not have purchased or leased the Vehicles, or would have paid

9  significantly less for them.

10     1765. As a direct and proximate result of Defendants' concealment,

11  misrepresentations, and/or failure to disclose material information, the Vehicles were

12  stolen, or attempted to be stolen.  Plaintiffs were obligated under their policies of

13  insurance with their Insureds to make payments for lost or damaged vehicles, in an

14  ascertainable amount subject to proof at trial.

15     1766. Defendants' violations present a continuing risk to Plaintiffs' Insureds,

16  as well as to the general public, because the Vehicles remain unsafe due to the Thief

17  Friendly Design. Defendants' unlawful acts and practices complained of herein affect

18  the public interest.

19     1767. Pursuant to Kentucky Rev. Stat. § 367.220, Plaintiffs seek an order

20  enjoining Defendants' unfair or deceptive acts or practices and awarding damages and

21  any other just and proper relief available under the Kentucky CPA.

22  **D.    Fraud by Omission, Suppression or Concealment**

23     1768. Plaintiffs reallege and incorporate by reference all preceding allegations

24  as though fully set forth herein.

25     1769. As the manufacturers of the Vehicles, Defendants were aware of the

26  Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs'

27  Insureds.

28     1770. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs

in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1771. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1772. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and the false representation of Federal compliance made in advertising and the VIN plate;

    b.    Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

c. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

d. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

e. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

f. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1773. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

1774. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the

Plaintiffs' Insureds.

1775. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1776. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1777. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1778. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1779. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.    Negligent Misrepresentation**

1780. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1781. Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

1782. Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether or not to purchase or lease the Vehicles, and whether to take additional anti-theft precautions after such purchase or lease.

1783. Defendants manufactured the Vehicles for sale to the public and had a pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

1784. Defendants had a duty to exercise reasonable care or competence in obtaining and communicating information for the guidance of others in these business transactions.

1785. Defendants failed that duty by providing Plaintiffs' Insureds with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards. Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1786. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction.

1787. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply

with the standards as advertised and that Plaintiffs' Insureds may have chosen instead had they known of the Thief Friendly Design in the Defendants' Vehicles.

1788. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold.

1789. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

1790. Plaintiffs were obligated under their policies of insurance with their Insureds to pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

## F.    Negligence

1791. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1792. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising

through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1793. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1794. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1795. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## G.    Gross Negligence

1796. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1797. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1798. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

1799. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

1800. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1801. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1802. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## LOUISIANA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Louisiana Subclasses, against All Defendants)

1803. Class Plaintiffs, the Hyundai Louisiana Subclass and Kia Louisiana Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1804. The Louisiana Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (of Kia and Hyundai Vehicles) in the State of Louisiana due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate County Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; Erie Insurance Exchange; Horace Mann Insurance Company; American Access Casualty Company; Financial Indemnity Company; Unitrin Auto and Home Insurance Company; Peerless Insurance Company; New Jersey Manufacturers Insurance Company; Mountain Laurel Assurance Company; Progressive Paloverde Insurance Company; Progressive Security Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Louisiana pursuant to policies of insurance.

## A.    Breach of Implied Warranty of Merchantability/Warranty (La. Civ. Code Art. 2520, 2524)

1805. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1806. Defendants were at all relevant times "merchants" with respect to motor vehicles.

1807. The Vehicles had an implied warranty pursuant to The Louisiana Civil Code, La. C.C. § 2520, which provides an implied warranty, or "redhibition," for all

things sold.  Specifically, a seller impliedly warrants the buyer against all redhibitory vices and defects.

1808. Upon manufacture, and before sale or lease to the Plaintiffs' Insureds, the Defendants designed and manufactured the Vehicles with the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1809. The lack of anti-theft compliance allowed the Vehicles to be quickly and easily stolen.  This fact became quickly well known and rendered the Vehicles so useless and inconvenient through the frequent theft and attempted thefts, that the Plaintiffs' Insureds would not have purchased the Vehicles if they had known of the defect, or would have paid substantially less on their purchase or lease.

1810. Under La. C.C. § 2521 the Thief Friendly Design was a redhibitory defect in that it was not disclosed to the Plaintiffs' Insureds and could not have been discovered by any reasonably prudent buyer, including Plaintiffs' Insureds, because The Thief Friendly Design was of a technical nature and hidden within the Vehicle where it could not be observed upon a normal visual inspection, and could only have been discovered with technical expertise in vehicle components that Plaintiffs' Insured and the reasonable consumer did not have.

1811. In addition, the VIN plate affixed to the Vehicle that Plaintiffs' Insureds could easily see stated that the Vehicle complied with all applicable Federal safety and anti-theft standards.  Defendants had a duty to disclose the falsity of that statement because their concealment caused it to be misleading.

1812. Additionally, pursuant to La. C.C. § 2524 and 2529 the Defendants had a duty and implied warranty to Plaintiffs' Insureds that the Vehicles must be reasonably fit for its intended use; and it must be of the particular kind or quality if

such was specified in the sale.  The Vehicles were not fit for their intended use of safe, reliable transportation because they were easily stolen and could be lost or damaged at any time.

1813. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1814. In addition, pursuant to La. C.C. §§ 2522 and 2545 Plaintiffs and Plaintiffs' Insureds were not required to provide formal notice because the Defendants had actual notice of the defect where they were the manufacturer and it was a design feature they included in some vehicles, but intentionally omitted from the Vehicles purchased or leased by Plaintiffs' Insureds, and as such were deemed to have known of the defect.

1815. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1816. The implied warranty of redhibition was not effectively excluded or limited by any sales or lease agreement executed with the Plaintiffs' Insureds because the notice of the Thief Friendly Design was not provided in the clear and unambiguous manner required by law and was not brought to the attention of the Plaintiffs' Insureds.  In addition, because the Vehicle did not comply with the Federal Standards

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

as stated on the VIN plates, it was not of the quality declared in the sale and pursuant to La. C.C. § 2548 no exclusion may be made.

1817. As a direct and proximate result of Defendants' breach of the implied warranties against redhibitory defects and fitness for particular purpose, Plaintiffs were obligated by their policies of insurance with Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design.

1818. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, in an amount to be proven at trial, and herein demand full reimbursement of monies paid for lost or damaged Vehicles, reasonable expense, damages and attorney's fees in accordance with La. C.C. §§ 2541 – 2545.

## B.     Breach of Express Warranty under La. C.C. § 2529

1819. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1820. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1821. "Under Louisiana law, an express warranty exists where the manufacturer of a good voluntarily undertakes and extends a guarantee to customers." *Purvis v. Teva Pharm., USA, Inc.*, 901 F.Supp.2d 716 (M.D. La.2012).

1822. Additionally, Louisiana's Civil Code also states, "[w]hen the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations." La. C.C. § 2529. For example, when a defect is material to a plaintiffs' decision to purchase a product or thing, it constitutes a breach of contract pursuant to La. C.C. § 2529. *Swoboda v. SMT Properties, L.L.C.*, 42,746 (La.App. 2 Cir. 1/30/08); 975 So.2d 691, writ denied, 2008-0719 (La. 5/30/08); 983 So.2d 899.

1823. The Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1824. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1825. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1826. As a direct and proximate result of Defendants breach of their express warranty, Plaintiffs were obligated by their policies of insurance to pay for Plaintiffs' Insureds' Vehicles that were stolen or damaged in the course of being stolen and have incurred and will continue to incur damages and costs and expenses, including attorney's fees, in ascertainable amounts subject to proof at trial.

**C.    Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. § 51:1401, et seq.)**

1827. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1828. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of La. Rev. Stat. § 51:1402(8).

1829. Plaintiffs stand in the shoes of their Insureds who are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1)

1830. Defendants were and are engaged in "trade" and "commerce" within the meaning of La. Rev. Stat. § 51:1402(10)(a).

1831. The sale or lease of the Vehicles by Defendants are "consumer transactions" within the meaning of La. Rev. Stat. § 51:1402(3).

1832. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405(A).

1833. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1834. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the CPL in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because:

    a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle

1                                   components that would be necessary to discover the Thief

2                                   Friendly Design on their own;

3      c.    Defendants knew that the Thief Friendly Design gave rise to safety

4              concerns for the consumers who use the Vehicles, and the Thief

5              Friendly Design would have been a material fact to the decisions

6              to buy or lease Vehicles; and

7      d.    In uniform advertising and materials provided with each Vehicle,

8              Defendants intentionally concealed, suppressed, and failed to

9              disclose to the consumers that the Vehicles contained the Thief

10              Friendly Design. Because they volunteered to provide information

11              about the Vehicles that they marketed and offered for sale and

12              lease to consumers, Defendants had the duty to disclose the whole

13              truth.

14      1835. As detailed above, the information concerning the Thief Friendly Design

15  was known to Defendants at the time of advertising and selling the Vehicles, all of

16  which was intended to induce consumers to purchase the Vehicles.

17      1836. By misrepresenting the Vehicles as safe and reliable and by failing to

18  disclose and actively concealing the dangers and risk posed by the Thief Friendly

19  Design, Defendants engaged in unfair methods of competition and unfair or deceptive

20  acts or practices in the conduct of trade and commerce as prohibited by La. Rev. Stat.

21  § 51:1405(A).

22      1837. Defendants' unfair or deceptive acts or practices were designed to

23  mislead and had a tendency or capacity to mislead and create a false impression in

24  consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles

25  were not affected by the Thief Friendly Design. Indeed, those misrepresentations,

26  concealments, omissions, and suppressions of material facts did in fact deceive

27  reasonable consumers, including Plaintiffs' Insureds, about the true safety and

28  reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1838. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1839. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1840. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1841. As a direct and proximate result of Defendants' deceptive practices including Defendants' concealment, misrepresentations, and/or failure to disclose material information about the Thief Friendly Design, the Vehicles were stolen or damaged in the course of being stolen. Plaintiffs were obligated under their policies of insurance to make payments for Vehicles or damage to Vehicles and suffered ascertainable losses and actual damages in an amount subject to proof at trial.

1842. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1843. Pursuant to La. Rev. Stat. § 51:1409(A), Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages and other just and proper relief available under the Louisiana CPL.

**D.      Fraud by Omission, Suppression or Concealment under La. Civ. Code § 1953 et. Seq.**

1844. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1845. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1846. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1847. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1848. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

a.      Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and

the false representation of Federal compliance made in advertising and the VIN plate;

b.   Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

c.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

d.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

e.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

f.   In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1849. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the

Vehicles complied with Federal standards for safety and anti-theft would justifiably induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

1850. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

1851. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1852. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1853. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1854. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1855. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of

Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.      Negligent Misrepresentation under La. C.C. §§ 2315 and 2316**

1856. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1857. Defendants had a legal duty to supply correct information to the Plaintiffs' Insureds because Defendants were merchants and Plaintiffs' Insureds were consumers or customers.  In addition, Defendants voluntarily supplied information to the public, and to Plaintiffs' Insureds specifically, stating that the Vehicles complied with all applicable Federal standards for safety and anti-theft.

1858. Defendants breached that duty by providing affirmative statements on the VIN plates affixed to the Vehicles that falsely stated the Vehicle complied with all applicable Federal standards for safety and anti-theft.  Defendants remained silent and did not disclose the existence of the Thief Friendly Design, which made the VIN plate statements misleading.

1859. Defendants further breached their duty by omitting, concealing and failing to disclose the existence of the Thief Friendly Design, which was known to them at the time they offered the Vehicles for sale or lease to the Plaintiffs' Insureds.

1860. As a result of Defendants' breach of their duty to provide complete and truthful information to Plaintiffs' Insureds, Plaintiffs' Insureds justifiably relied on Defendants' false statements and omissions of material facts and purchased or leased the Vehicles believing that they complied with applicable Federal standards for anti-theft and did not contain the Thief Friendly Design.

1861. Plaintiffs' Insureds could not have easily verified the truth or falsity of the information given to them by the Defendants as the lack of an engine immobilizer was not apparent upon visual inspection or short test drives that a reasonable consumer can make when purchasing or leasing a vehicle.

1862. As a direct and proximate result of the Thief Friendly Design and

Defendants' negligent and misleading representations of information about the Vehicles compliance with anti-theft Federal standards, the Vehicles were frequently subjected to thefts and theft attempts. As a direct and proximate result, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for lost and damages vehicles, in addition to expenses and attorney's fees, in ascertainable amounts subject to proof at trial.

**F.     Negligence under La. C.C. § 2315**

1863. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1864. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1865. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1866. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1867. As a direct and proximate result of Defendants negligence in

manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**G.    Gross Negligence La. C.C. § 2315**

1868. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1869. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards. Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1870. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

1871. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others. Indeed, Defendants conduct lacked even slight care and diligence and lacked

the diligence that even careless persons are accustomed to exercise.

1872. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1873. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1874. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**H.     Product Liability under La. R.S. § 9:2800.54 et seq.**

1875. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1876. When the Defendants designed, manufactured, and sold the Vehicles they intentionally designed some of their vehicles with the Thief Friendly Design, lacking the anti-theft features required for compliance with the applicable Federal standards for safety and anti-theft.  The Thief Friendly Design was an integral part of the Vehicles at the time the Vehicles were sold or leased to Plaintiffs' Insureds and were not modified after they left Defendants' control in any way relevant to this action.

1877. At the time the Vehicles left the control of the Defendants they were unreasonably dangerous within the meaning of La. R.S. §2800.56 in that there existed

an alternate design for the product that was capable of preventing the damages suffered by Plaintiffs.   Other vehicles of the same model were designed and manufactured by the Defendants with integrated anti-theft immobilizers and were compliant to applicable Federal standards for safety and anti-theft.   If the Vehicles sold or leased to Plaintiffs' Insureds had been manufactured the same way, the anti-theft immobilizer would have prevented the theft or attempted theft of the Vehicles, and the Vehicles would not have become a known easy-to-steal target for thieves and joyriders.

1878. It was extremely likely that a vehicle publicly known to not comply with Federal anti-theft standards and capable of being stolen in seconds would be stolen, or attempted to be stolen, and that the type of damages suffered by Plaintiffs in the shoes of their Insureds was the inevitable result.   The risk to Plaintiffs' Insureds and the general public of serious personal injury or property damage caused by thieves and joy riders in the course of stealing vehicles, greatly outweighed the burden on the manufacturer of putting the Federally compliant anti-theft devices in all of their vehicles, including the ones sold or leased to Plaintiffs' Insureds.   Indeed, the actual cost of the immobilizers in the manufacturing process is a de minimus amount of the total cost of manufacture and would not be a significant impact to the profit earned by the Defendants on the sale of the Vehicles.   The engine immobilizers have no adverse effect on the utility of the product, rather, they allow the Vehicles to be fit for their intended purpose of personal transportation free from the danger of theft.   Not only did Defendants not take reasonable care to provide the public or Plaintiffs' Insureds with an adequate warning about the Thief Friendly Design, they failed to disclose that the VIN plate affixed to the Vehicle was misleading in that it falsely states the Vehicle complies with all applicable Federal safety and anti-theft standards.

1879. The Vehicles were also unreasonably dangerous within the meaning of La. R.S. § 2800.57 because of the lack of an adequate warning by Defendants about the Thief Friendly Design.   At the time the Vehicles left the control of Defendants

they contained the Thief Friendly Design, which was highly likely to cause thefts and attempted thefts and damage to the Vehicle with the potential for personal injury and property damage to the public. The Defendants failed to use reasonable care to provide the Plaintiffs' Insureds with a warning about the Thief Friendly Design and its danger to users of the Vehicles and did not clearly identify the Vehicles with the Thief Friendly Design as non-compliant to the Federal standards and lacking in anti-theft features provided by Defendants in other vehicles of the same model.

1880. Defendants were required to provide an adequate warning about the Vehicles because the Vehicles were dangerous to an extent beyond that contemplated by a user with the ordinary knowledge common to the public as to the Vehicle's characteristics. Because all vehicles sold in the United States and Territories are required to be compliant to the applicable Federal standards for safety and anti-theft, a user with ordinary knowledge would reasonably expect all the Defendants' vehicles to be compliant, particularly in light of the VIN plate affixed to the Vehicles that stated the Vehicle did in fact comply.

1881. The Plaintiffs' Insureds were unaware of the Thief Friendly Design and could not reasonably be expected to discover it on their own with the normal prudence of a reasonable consumer, given the technical and hidden nature of the defect. Therefore, the Plaintiffs' Insured could not reasonably have known or expected the danger of the Thief Friendly Design.

1882. The Defendants knew that the Vehicles contained the Thief Friendly Design because they designed the Vehicles without the anti-theft features that Defendants did include on other Vehicles of the same or similar model. Further, Defendants learned of the dangers inherent in their design when the Thief Friendly Design became public and the Vehicles were subject to a much higher risk of theft than other vehicles that did not contain the defect. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them,

internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1883. After learning of the dangers of the Thief Friendly Design, Defendants did not conduct themselves as a reasonably prudent manufacturer would because they failed to use reasonable care and place a recall on the Vehicles or provide an adequate warning of the Thief Friendly Design and its danger to the Vehicle users, including Plaintiffs' Insureds.

1884. Pursuant to La. R.S. § 2800.57, as a direct and proximate result of their failure to adequately and timely warn the public or Plaintiffs' Insureds of the dangers of the Thief Friendly Design, Defendants are liable for damages incurred by Plaintiffs when they were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles due to theft.

1885. The Vehicles were unreasonably dangerous within the meaning of La. R.S. § 2800.58 because they did not conform to the express warranty made by Defendants that the Vehicles complied with all applicable Federal standards for safety and anti-theft. Defendants made the express warranty in their advertising and other literature provided with the Vehicles and on the VIN plate affixed to the Vehicles in an area visible to drivers every time they entered the Vehicle.  The express warranties provided by Defendants lulled the Plaintiffs' Insureds into believing the Vehicles were safe and had anti-theft features similar to other Federally compliant vehicles and induced them to purchase or lease the Vehicles and use them without knowing of the Thief Friendly Design.

1886. The Defendants' breach of their express warranty that the Vehicles were compliant to Federal anti-theft standards, when in fact the Vehicles contained the Thief Friendly Design, directly and proximately caused the damages suffered by Plaintiffs when they were obligated under their policies of insurance with their Insureds to pay for lost and damaged Vehicles that were stolen because of the Thief

Friendly Design.

1887. As a direct and proximate result of Defendants' design, manufacturing, and sale of the Vehicles with the unreasonably dangerous Thief Friendly Design, and their breach of their express warranty that the Vehicles complied with all applicable Federal safety and anti-theft standards, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## MAINE STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Maine Subclasses, against All Defendants)

1888. Class Plaintiffs, the Hyundai Maine Subclass and Kia Maine Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1889. The Maine Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses  (including Kia and Hyundai Vehicles) in the State of Maine due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; Permanent General Assurance Corporation; Progressive Casualty Insurance Company; Progressive Northwestern Insurance Company; and United Financial Casualty Company; all of whom paid policy proceeds to their respective Insureds in Maine pursuant to policies of insurance

### A.    Breach of Implied Warranty (Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212)

1890. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1891. Defendants were at all relevant times "merchants" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1), and 2-1103(3), and is a

"seller" of motor vehicles under § 2-103(1)(d).

1892. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

1893. The Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11 §§ 2-105(1), and 2-1103(1)(h).

1894. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Me. Rev. Stat. Ann. Tit. 11 §§ 2-314, and 2-1212.

1895. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds  with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1896. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because  the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders  Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1897. Any attempt by Defendants to disclaim or limit the implied warranty of

merchantability for their respective   Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective   Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs' Insureds. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds . Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1898. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs  may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds  the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1899. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1900. Alternatively, Plaintiffs  were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1901. The Defendants breached the implied warranty of merchantability and fitness for particular purpose by manufacturing and selling defective Vehicles that contained the Thief Friendly Design and failing to remedy the defect. As a direct and proximate result of Defendants' breach, Plaintiffs were obligated by their policies of insurance with Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, in an amount to be proven at trial.

**B.     Breach of Express Warranty (Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210)**

1902. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1903. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1904. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1905. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1906. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are

capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1907. As a direct and proximate result of Defendants' breach of their express warranty, the Vehicles were stolen, and either lost or damaged in the course of being stolen. As a result, Plaintiffs were obligated under their policies of insurance with their Insureds to make payments for lost or damaged Vehicles and have incurred and will continue to incur damages in an ascertainable amount, in addition to costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants.

## C.  Violation of the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 § 205-a, et seq.)

1908. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1909. Defendants, Plaintiffs,  and Plaintiffs' Insureds are "persons" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(2).

1910. Defendants are engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(3).

1911. The Maine Unfair Trade Practices Act ("Maine UTPA") states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Me. Rev. Stat. Ann. Tit. 5, 21 § 207.

1912. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Maine UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

facts regarding the quality, reliability, and safety of the Vehicles and the existence of the Thief Friendly Design, as detailed above.

1913. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Maine UTPA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the decisions to buy or lease Vehicles; and

    d.    In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1914. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of

1  which was intended to induce consumers to purchase the Vehicles.

2       1915. By misrepresenting the Vehicles as safe and reliable and by failing to

3  disclose and actively concealing the dangers and risk posed by the Thief Friendly

4  Design, Defendants engaged in unfair methods of competition and unfair and

5  deceptive acts or practices prohibited by Me. Rev. Stat. Ann. Tit. 5, § 207.

6       1916. Defendants intended for Plaintiffs' Insureds to rely on them to provide

7  adequately designed Vehicles, and to honestly and accurately reveal the safety

8  hazards described above.

9       1917. Defendants' unfair or deceptive acts or practices were designed to

10 mislead and had a tendency or capacity to mislead and create a false impression in

11 consumers that the Vehicles adequate anti-theft protection, and that the Vehicles were

12 not affected by the Thief Friendly Design. Indeed, those misrepresentations,

13 concealments, omissions, and suppressions of material facts did in fact deceive

14 reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability,

15 quality, and value of the Vehicles.

16      1918. Defendants' misrepresentations, omissions, and concealment of material

17 facts regarding the Thief Friendly Design and true characteristics of the Vehicles were

18 material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles,

19 as   Defendants   intended.   Plaintiffs'   Insureds   were   exposed   to   those

20 misrepresentations, concealments, omissions, and suppressions of material facts, and

21 relied on Defendants' misrepresentations that the Vehicles were safe and reliable in

22 deciding to purchase and lease Vehicles.

23      1919. Plaintiffs' Insureds'   reliance was reasonable, as they had no way of

24 discerning Defendants' representations were false and misleading, or otherwise

25 learning that the Vehicles contained the Thief Friendly Design, as alleged above.

26 Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their

27 own.

28      1920. Had they known the truth about the Thief Friendly Design, Plaintiffs'

Insureds would not have purchased or leased the Vehicle or would have paid significantly less for them.

1921. As a direct and proximate result of Defendants' deceptive trade practices, including misrepresentations, omissions, and concealment of material facts, the Vehicles were stolen, and either lost or damaged in the course of being stolen. As a result, Plaintiffs were obligated under their policies of insurance with their Insureds to make payments for lost or damaged Vehicles and have incurred and will continue to incur damages in an ascertainable amount, in addition to costs and expenses, including attorney's fees, as a result of the Thief Friendly Design.

1922. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1923. Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1924. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

1925. Pursuant to Me. Rev. Stat. Tit. 5 § 213, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, restitution, and any other just and proper relief available under the Maine UTPA.

**D.  Negligence**

1926. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1927. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1928. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1929. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1930. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**E.     Gross Negligence**

1931. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1932. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products

meet applicable standards.   Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1933. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

1934. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.  Indeed, Defendants conduct lacked even slight care and diligence and lacked the diligence that even careless persons are accustomed to exercise.

1935. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1936. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds

purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1937. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## <u>MARYLAND STATE LAW CLAIMS FOR RELIEF</u>

### (Alleged by Adopting Plaintiffs, and Members of Maryland Subclasses, against All Defendants)

1938. Class Plaintiffs, the Hyundai Maryland Subclass and Kia Maryland Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1939. The Maryland Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including both Kia and Hyundai Vehicles) in the State of Maryland due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; Erie Insurance Property & Casualty Company; GEICO Casualty Insurance Company; GEICO General Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Alpha Property & Casualty Insurance Company; Unitrin Auto and Home Insurance Company; Nationwide Property & Casualty Insurance Company; New Jersey Manufacturers Insurance Company; Progressive American Insurance Company; Progressive Direct Insurance Company; Progressive Select Insurance Company; Progressive Specialty Insurance

Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Maryland pursuant to policies of insurance.

## A. Breach of Implied Warranty of Merchantability (Md. Code Com. Law §§ 2-314 and 2A-212)

1940. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein. Plaintiffs and Subclass Members for each Subclass on behalf of their Insureds reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1941. Named Subclass Members bring this count individually and on behalf of the other members of the Maryland classes against Defendants.

1942. Defendants are and were at all relevant times "merchants" with respect to motor vehicles Md. Code Com. Law §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

1943. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code. Com. Law § 2A-103(1)(p).

1944. Plaintiffs stand in the shoes of their Insureds, who purchased Vehicles in Maryland and are "buyers" within the meaning of Md. Code. Com. Law § 2-103(1)(a), and who leased  Vehicles in Maryland are "lessees" within the meaning of Md. Code. Com. Law § 2A-103(1)(n).

1945. The Vehicles are and were at all relevant times "goods" within the meaning of Md. Code. Com. Law §§ 2-105(1) and 2A-103(1)(h).

1946. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Md. Code Com. Law §§ 2-314 and 2A-212.

1947. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased by Plaintiffs' Insureds. Defendants provided

Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles that were manufactured, supplied, distributed, and sold by Defendant were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1948. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1949. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs or Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1950. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1951. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1952. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs' Insureds had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1953. The Defendants breached the implied warranty of merchantability and fitness for particular purpose by manufacturing and selling defective Vehicles that contained the Thief Friendly Design and failing to remedy the defect. As a direct and proximate result of Defendants' breach, Plaintiffs were obligated by their policies of insurance with Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and

expenses, including attorney's fees, in an amount to be proven at trial.

**B.     Breach of Express Warranty (Md. Code Com. Law §§ 2-313 and 2A 210)**

1954. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1955. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1956. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1957. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1958. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1959. As a direct and proximate result of Defendants' breach of their express warranty, the Vehicles were stolen, and either lost or damaged in the course of being stolen. As a result, Plaintiffs were obligated under their policies of insurance with

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

their Insureds to make payments for lost or damaged Vehicles and have incurred and will continue to incur damages in an ascertainable amount, in addition to costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants.

## C.   Violation of the Maryland Consumer Protection Act (Md. Code, Com. Law, § 13-101, et seq.)

1960. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1961. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of Md. Code, Com. Law, § 13-101(h).

1962. Plaintiffs stand in the shoes of their Insureds, who are "consumers" within the meaning of 19 Md. Code, Com. Law, § 13-101(c).

1963. The Vehicles and installed in them are "merchandise" within the meaning of Md. Code, Com. Law, § 13-101(f).

1964. The Maryland Consumer Protection Act ("Maryland CPA") declares that "[a] person may not engage in any unfair, abusive, or deceptive trade practice, as defined in this subtitle or as further defined by the Division." Md. Code, Com. Law, § 13-303. Section 13-301 defines "unfair, abusive or deceptive trade practices." Id. at § 13-301.

1965. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Maryland CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1966. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Maryland CPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

d. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1967. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1968. By misrepresenting the Vehicles as safe and reliable, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Md. Code, Com. Law, §§ 13-301(1), (2)(i), (2)(iv), (3), (5)(i), and (9)(i):

a. Making false or misleading oral or written statements, visual descriptions, or other representations of any kind which had the tendency or effect of deceiving or misleading consumers about the Vehicles;

b. Representing that the Vehicles have approval, accessories, characteristics, uses, and benefits that they do not have;

c. Representing that the Vehicles are of a particular standard, quality, or grade when they are not;

d. Failure to state material facts about the Vehicles that deceives or tends to deceive;

e. Advertising the Vehicles with the intent not to sell or lease them as advertised; and

f. Engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts regarding the safety of the Vehicles.

1969. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1970. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1971. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to

purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease those vehicles.

1972. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1973. Had they known the truth, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1974. As a direct and proximate result of Defendants' unfair, abusive, and deceptive trade practices in concealing the Thief Friendly Design and misrepresenting the Vehicles' compliance to applicable Federal Standards, the Vehicles were stolen or damaged in the process of being stolen.

1975. As a direct result, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost and damaged cars as a result of theft due to the Thief Friendly Design, and suffered ascertainable losses and actual damages in an amount according to proof at trial.

1976. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1977. Pursuant to Md. Code, Com. Law, § 13-408, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Maryland CPA.

**D.      Fraud by Omission, Suppression or Concealment**

1978. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

1979. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1980. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards for safety and anti-theft are vital to public safety.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1981. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1982. The Thief Friendly Design allowed the Vehicles to be quickly and easily stolen, a fact that became well known to the public.  The easily stolen vehicles were and are attractive not only to criminals but to minors and young adults looking for a thrill or joy ride.  During such thefts or joy rides there is a high risk of personal injury or death to the general public as a result of high speeds and reckless behavior encouraged by the easy access to the Vehicles due to the Thief Friendly Design.  As a result, the Thief Friendly Design was unreasonably and highly unsafe and caused a risk of personal injury and death to the general public, minors attracted to the Thief

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Friendly Design, and others put at risk by the ease of theft, in addition to property damage.  There is also a risk of personal injury for consumers who are stranded in dangerous situations because their vehicles have been stolen, or damaged beyond use in the course of an attempted theft.

1983. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and the false representation of Federal compliance made in advertising and the VIN plate;

    b.    Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

    c.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    d.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    e.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles and the general public, and the Thief Friendly Design would have been a material

fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

    f.   In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1984. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

1985. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.  In addition, the Thief Friendly Design was a material fact due to the unreasonable risk of personal injury to the general public as previously described.

1986. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1987. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1988. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1989. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1990. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.    Negligent Misrepresentation**

1991. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1992. Defendants were the manufacturers and sellers of the Vehicles, and did enter into a buyer-seller relationship with the Plaintiffs' Insureds, and each of them, for the purchase or lease of the Vehicles.

1993. Because Defendants designed, manufactured, and sold the Vehicles, and self-certified the Vehicles to the Federal agencies responsible for compliance with automobile safety and anti-theft standards, Defendants had knowledge of the Thief Friendly Design that could not have been known to the Plaintiffs' Insureds and therefore were in a position of superiority to them.

1994. Defendants negligently remained silent and failed to inform Plaintiffs' Insureds of the Thief Friendly Design when they had a duty to speak due to their superior position and knowledge.

1995. Defendants also made affirmative statements on their VIN plates that the Vehicles complied with applicable Federal Standards for safety and anti-theft, and did not disclose the falsity of that statement to Plaintiffs' Insureds, making those statements misleading. Defendants intended Plaintiffs' Insureds to accept the false statements and rely on Defendants' omissions, in full knowledge that in the absence of Defendants' disclosure of Thief Friendly Design Plaintiffs' Insureds were likely to rely on the affirmative statements of compliance, and on the confidence in Defendants as manufacturer of motor vehicles that were required to comply with Federal standards.

1996. The Plaintiffs' Insureds relied upon the incomplete statements made by the Defendants in not disclosing that the Vehicles did not comply with all Federal safety and anti-theft standards and in fact had a Thief Friendly Design.  Plaintiffs' Insureds' reliance was reasonable as the Thief Friendly Design was non-obvious, hidden, and could not have been detected by the Plaintiffs' Insureds with the normal inspection of a consumer upon purchase or lease of a vehicle.

1997. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt that Defendants had knowledge of the truth about the Vehicles' features when Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1998. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead if they had known of the Thief Friendly Design in the Defendants' Vehicles.

1999. In addition, the Thief Friendly Design allowed the Vehicles to be quickly and easily stolen, a fact that became well known to the public.  The easily stolen

vehicles were and are attractive not only to criminals but to minors and young adults looking for a thrill or joy ride.  During such thefts or joy rides there is a high risk of personal injury or death to the general public as a result of high speeds and reckless behavior encouraged by the easy access to the Vehicles due to the Thief Friendly Design.  As a result, the Thief Friendly Design was unreasonably and highly unsafe and caused a risk of personal injury and death to the general public, minors attracted to the Thief Friendly Design, and others put at risk by the ease of theft, in addition to property damage.  There is also a risk of personal injury for consumers who are stranded in dangerous situations because their vehicles have been stolen, or damaged beyond use in the course of an attempted theft.

2000. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

2001. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**F.     Negligence**

2002. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2003. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty

precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2004. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

2005. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2006. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## G. Gross Negligence

2007. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2008. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards. Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations

and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2009. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

2010. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

2011. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

2012. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2013. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## H.   Product Liability

2014. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2015. At the time the Defendants manufactured the Vehicles they contained the Thief Friendly Design, in that they did not comply with applicable Federal Standards for safety and anti-theft, and lacked those features required by the standards. Subsequent to manufacture up to the time the Vehicle left the control of Defendants there were no alterations to the Vehicles that affected the Thief Friendly Design.

2016. The Vehicles were unreasonably dangerous in that the Thief Friendly Design allowed the Vehicles to be quickly and easily stolen, a fact that became well known to the public.  The easily stolen vehicles were and are attractive not only to criminals but to minors and young adults looking for a thrill or joy ride.  During such thefts or joy rides there is a high risk of personal injury or death to the general public as a result of high speeds and reckless behavior encouraged by the easy access to the Vehicles due to the Thief Friendly Design.  As a result, the Thief Friendly Design was unreasonably and highly unsafe and caused a risk of personal injury and death to the general public, minors attracted to the Thief Friendly Design, and others put at risk by the ease of theft, in addition to property damage.  There is also a risk of personal injury for consumers who are stranded in dangerous situations because their vehicles have been stolen, or damaged beyond use in the course of an attempted theft.

2017. As a direct and proximate cause of the Thief Friendly Design, the Vehicles were stolen, or damaged in the course of being stolen after they were purchased or leased by the Plaintiffs' Insureds.

2018. As a direct and proximate result of the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## MASSACHUSETTS STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Massachusetts Subclasses, against All Defendants)

2019. Class Plaintiffs, the Hyundai Massachusetts Subclass and Kia Massachusetts Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2020. The Massachusetts Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the Commonwealth of Massachusetts due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Property & Casualty Insurance Company; Government Employees Insurance Company; Liberty Mutual Fire Insurance Company; Liberty Surplus Insurance Corporation; Progressive Direct Insurance Company; National Continental Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Massachusetts pursuant to policies of insurance

### A.    Breach of Implied Warranty of Merchantability under Mass. Gen. Laws Ch. 106, §§ 2-314 and 2A-212

2021. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2022. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mass. Gen. Laws Ch. 106 §§ 2-314 and 2A-212.

2023. Defendants are and were at all relevant times "merchants" with respect

to motor vehicles under Mass. Gen. Laws Ch. 106 §§ 2-104(a) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(a)(d).

2024. Defendants are and were at all relevant times "lessors" of motor vehicles under Mass. Gen. Laws Ch. 106 § 2A-103(a)(p).

2025. Plaintiffs' Insureds who purchased Vehicles in Massachusetts are "buyers" within the meaning of Mass. Gen. Laws Ch. 106 § 2-103(1)(a).

2026. Plaintiffs' Insureds who leased Vehicles in Massachusetts are "lessees" within the meaning of Mass. Gen. Laws Ch. 106 § 2A-103(1)(n).

2027. The Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws. Ch. 106 §§ 2-105(1) and 2A-103(1)(h).

2028. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2029. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

2030. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2031. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2032. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2033. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or

repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2034. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty under Mass. Gen. Laws Ch. 106, §§ 2-313**

2035. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2036. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2037. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2038. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2039. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily

stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2040.  Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.**   **Violation of the Deceptive Acts or Practices Prohibited by Mass. Gen. Laws Ch. 93a §1, *et seq.***

2041.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2042.  Defendants and Plaintiffs "persons" within the meaning of Mass. Gen. Laws Ch. 93A, § 1(a).

2043.  Defendants were and are engaged in "trade" or "commerce" within the meaning of Mass. Gen. Laws Ch. 93A, § 1(b).

2044.  The Massachusetts Consumer Protection Law ("Massachusetts Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mass. Gen. Laws Ch. 93A, § 2.

2045.  In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2046.  Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Massachusetts Act in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

i.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

ii.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

iii.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

iv.    Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2047. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2048. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Mass. Gen. Laws Ch. 93A, § 2.

2049. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2050. Defendants' unfair methods of competition and unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2051. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2052. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2053. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2054. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2055. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2056. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2057. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2058. Pursuant to Mass. Gen. Laws Ch. 93A, § 9, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Massachusetts Act.

**D.     Fraud by Omission and Concealment**

2059. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2060. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2061. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2062. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to

know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2063. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2064. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would

find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.  Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.  Thus, reliance may be presumed.

2065. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2066. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2067. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2068. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2069. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2070. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or taken measures to prevent them from being stolen.

2071. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles

at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2072. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

2073. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2074. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2075. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2076. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2077. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2078. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2079. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## MICHIGAN STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Michigan Subclasses, against All Defendants)

2080. Class Plaintiffs, the Hyundai Michigan Subclass and Kia Michigan Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2081. The Michigan Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Michigan due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Acuity, A Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; American Family Mutual Insurance Company, S.I.;  Permanent General Assurance Company; Citizens United Reciprocal Exchange; GEICO Advantage Insurance Company; GEICO Indemnity Company; GEICO General Insurance Company; Government Employees Insurance Company; Teachers Insurance Company; American Access Casualty Company; Ohio Security Insurance Company; Progressive Direct Insurance Company; Progressive Marathon Insurance Company; Progressive Michigan Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds for losses in Michigan pursuant to policies of insurance.

**A.** **Breach of Implied Warranty of Merchantability under Mich. Comp. Laws §§ 440.214 and 440.2862**

2082. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2083. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mich. Comp. Laws §§ 440.214 and 440.2862.

2084. Defendants are and were at all relevant times "merchants" with respect to the motor vehicles under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), and "sellers" of motor vehicles under § 440.2103(1)(c).

2085. Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

2086. Plaintiffs who purchased Vehicles in Michigan are "buyers" within the meaning of Mich. Comp. Laws § 440.2803(1)(a).

2087. Plaintiffs who leased Vehicles in Michigan are "lessees" within the meaning of Mich. Comp. Laws § 440.2803(1)(n).

2088. The Vehicles are and were at all relevant times "goods" within the meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

2089. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2090. However, the Vehicles did not comply with the implied warranty of

merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2091. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2092. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2093. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all

Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2094. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2095. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied, and Plaintiffs have been damaged in an amount to be proven at trial.

**B.**     **Breach of Express Warranty under Mich. Comp. Laws §§ 440.2313**

2096. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2097. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2098. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2099. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2100. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2101. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.**   **Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901, et seq.)**

2102. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2103. Defendants and Plaintiffs "persons" within the meaning of Mich. Comp. Laws § 445.902(1)(d).

2104. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mich. Comp. Laws § 445.902(1)(g).

2105. The Michigan Consumer Protection Act ("Michigan Act") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Mich. Comp. Laws § 445.903(1).

2106. In the course of their business, Defendants, through their agents,

employees, and/or subsidiaries, violated the Michigan Act by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2107. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Michigan Act in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they

1    marketed and offered for sale and lease to consumers, Defendants
2    had the duty to disclose the whole truth.

3    2108. As detailed above, the information concerning the Thief Friendly Design
4    was known to Defendants at the time of advertising and selling the Vehicles, all of
5    which was intended to induce consumers to purchase the Vehicles.

6    2109. By misrepresenting the Vehicles as safe and reliable and by failing to
7    disclose and actively concealing the dangers and risk posed by the Thief Friendly
8    Design, Defendants engaged in unfair methods of competition and unfair or deceptive
9    acts or practices prohibited by Mich. Comp. Laws §§ 445.903:

10    a.    Causing a probability of confusion or misleading as to the
11          approval or certification of the Vehicles;

12    b.    Representing that the Vehicles have approval, characteristics,
13          uses, or benefits which they do not have;

14    c.    Representing that the Vehicles are of a particular standard, quality,
15          and grade when they are not;

16    d.    Advertising the Vehicles with the intent not to sell or lease them
17          as advertised;

18    e.    Failing to reveal a material fact, the omission of which tends to
19          mislead or deceive the consumer, and which fact could not
20          reasonably be known by the consumer; and

21    f.    Failing to reveal facts that are material to the transaction in light
22          of representations of fact made in a positive manner. Mich. Comp.
23          Laws §§ 445.903(1)(a), (c), (e), (g), (s), and (cc).

24    2110. Defendants intended for Plaintiffs' Insureds to rely on them to provide
25    adequately designed Vehicles, and to honestly and accurately reveal the safety
26    hazards described above.

27    2111. Defendants' unfair methods of competition and unfair or deceptive acts
28    or practices were designed to mislead and create a false impression in consumers that

the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2112. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle. Thus, reliance may be presumed.

2113. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2114. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2115. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2116. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly

Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2117. All Defendants were provided notice of the issues raised in this count and this Complaint by letter dated March 09, 2023.  Notice was also provided by governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2118. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2119. Pursuant to Mich. Comp. Laws § 445.911, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Michigan Act.

**D.     Fraud by Omission, and Concealment**

2120. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2121. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2122. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2123. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief

Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2124. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2125. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and

because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

2126. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2127. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2128. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2129. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2130. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2131. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2132. As a direct and proximate result of Defendants' omissions, Plaintiffs' purchased Vehicles susceptible to a high rate of theft that they would not have purchased at all if the Thief Friendly Design had been disclosed to them; and due to the Thief Friendly Design, the Insureds' Vehicles were stolen and/or vandalized. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their

1   damages.

2        2133. Defendants' acts were done maliciously, oppressively, deliberately, with

3   intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights

4   and well-being; and to enrich themselves.

5   **E.    Negligence**

6        2134. Plaintiffs incorporate by reference each preceding and succeeding

7   paragraph as though fully set forth at length herein.

8        2135. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

9        2136. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

10  That duty of care included, at a minimum, the manufacture and sale of vehicles that

11  fully complied with all federal and industry safety and anti-theft standards; and failing

12  that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely

13  susceptible to theft by casual car thieves and miscreants in a matter of seconds.

14       2137. The National Highway Traffic Safety Administration has a self-

15  certification system of compliance where vehicle manufacturers certify that their

16  products meet applicable standards. Defendants had a duty to the general public to

17  ensure that all vehicles offered for sale were compliant to all applicable federal

18  standards. This duty precedes the offering of any vehicle for sale in the United States

19  and territories subject to the jurisdiction of federal regulations and is independent of

20  any duties arising through individual contracts for sale or lease that Defendants

21  entered into with Plaintiffs' Insureds.

22       2138. Defendants failed to exercise reasonable care in connection with their

23  manufacture, distribution, sale, and/or leasing of the Vehicles.

24       2139. Defendants' violation of their duties under applicable law and/or the

25  applicable standard of care included their failure to comply with federal regulatory

26  requirements to equip their vehicles with mandatory anti-theft protection that

27  complies with the requirements of FMVSS.

28       2140. As a result of Defendants' failure to exercise reasonable care, Plaintiffs

and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## MINNESOTA STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of Minnesota Subclasses, against All Defendants)**

2141. Class Plaintiffs, the Hyundai Minnesota Subclass and Kia Minnesota Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2142. The Minnesota Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Minnesota due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Acuity, A Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.;  American Standard Insurance Company of Wisconsin; Main Street America Protection Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; GEICO Advantage Insurance Company; GEICO Casualty Company; GEICO Indemnity Company; GEICO General Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Infinity Insurance Company; Merastar Insurance Company; Unitrin Auto and Home Insurance Company; Liberty Insurance Corporation; Ohio Security Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; Progressive Preferred Insurance Company; Progressive Universal Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA

General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds for losses in Minnesota pursuant to policies of insurance.

**A.      Breach of Implied Warranty of Merchantability under Minn. Stat. §§ 336.2-314 and 336.2A-212**

2143. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2144. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

2145. Defendants are and were at all relevant times "merchants" with respect to the motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3), and "sellers" of motor vehicles under § 336.2-103(1)(d).

2146. Defendants are and were at all relevant times "lessors" of motor vehicles under Minn. Stat. § 336.2A-103(1)(p).

2147. Plaintiffs who purchased Vehicles in Minnesota are "buyers" within the meaning of Minn. Stat. § 336.2-103(1)(a).

2148. Plaintiffs who leased Vehicles in Minnesota are "lessees" within the meaning of Minn. Stat. § 336.2A-103(1)(n)

2149. The Vehicles are and were at all relevant times "goods" within the meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

2150. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and

complied with applicable federal and state laws and regulations, including FMVSS 114.

2151. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2152. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2153. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner

without the ever–present risk of them being stolen.

2154. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. On March 09, 2023, Plaintiffs provided notice to Defendants that the Thief Friendly Design breached Defendants' implied warranties and violated consumer protection statutes. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2155. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2156. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Minn. Stat. §§ 336.2-313**

2157. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2158. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2159. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made

an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2160. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2161. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2162. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

C.   **Violation of the Minnesota Prevention of Consumer Fraud Act pursuant to Minn. Stat. § 325F.68, et seq. and Minn. Stat. § 8.31, subd. 3a**

2163. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2164. Defendants and Plaintiffs "persons" within the meaning of Minn. Stat. § 325F.68(3).

2165. The Vehicles are "merchandise" within the meaning of Minn. Stat. §

325F.68(2).

2166. The Minnesota Prevention Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with he intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged[.]" Minn. Stat. § 325F.69(1).

2167. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2168. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Minnesota CFA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2169. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2170. By misrepresenting the Vehicles as safe and reliable, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design to both consumers and NHTSA, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Minn. Stat. § 325F.69, including use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise.:

2171. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2172. Defendants' unfair methods of competition and unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and

reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2173. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2174. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2175. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2176. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2177. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2178. Pursuant to Minn. Stat. §§ 8.31(3a) and 549.20(1)(a), the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any

1   other just and proper relief available under the Minnesota CFA.

2   **D.    Violation of the Deceptive Trade Practices Act pursuant to Minn. Stat. §**
3   **325D.44**

4   2179. Plaintiffs reallege and incorporate by reference all preceding allegations
5   as though fully set forth herein.

6   2180. Defendants and Plaintiffs "persons" within the meaning of Mass. Gen.
7   Laws Ch. 93A, § 1(a).

8   2181. The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA")
9   prohibits deceptive trade practices in the course of a business, vocation, or occupation.
10  Minn. Stat. § 325D.44, Subd. 1.

11  2182. In the course of their business, Defendants, through their agents,
12  employees, and/or subsidiaries, violated the Minnesota DTPA by knowingly and
13  intentionally misrepresenting, omitting, concealing, and/or failing to disclose material
14  facts regarding the quality, reliability, and safety of the Vehicles and the Thief
15  Friendly Design, as detailed above.

16  2183. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from
17  unfair or deceptive practices under the Minnesota DTPA in the course of their
18  business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the
19  material facts concerning the Thief Friendly Design of the Vehicles because, as
20  detailed above:

21          a.    Defendants had exclusive access to and far superior knowledge
22                about facts regarding the Thief Friendly Design and Defendants
23                knew these facts were not known to or reasonably discoverable by
24                Plaintiffs' Insureds;

25          b.    Given the Thief Friendly Design's hidden and technical nature,
26                Plaintiffs' Insureds lack the sophisticated expertise in vehicle
27                components that would be necessary to discover the Thief
28                Friendly Design on their own;

  c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

  d. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2184. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2185. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair or deceptive acts or practices prohibited by Minn. Stat. § 325D.44, Subd. 1:

  a. Causing likelihood of confusion or misunderstanding as the approval or certification of the Vehicles;

  b. Representing that the Vehicles have characteristics, uses, and benefits which they do not have;

  c. Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

  d. Advertising the Vehicles with the intent not to sell or lease them as advertised; and e. Engaging in any other conduct which

similarly creates a likelihood of confusion or of misunderstanding.

Minn. Stat. §§ 325D.44, Subd. 1(1) (5), (7), (9), and (13)

2186. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2187. Defendants' unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2188. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2189. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2190. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased Vehicles susceptible to such high rates of theft, and that were stolen and vandalized due to the Thief Friendly Design.

2191. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual

damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2192. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2193. Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Minnesota CFA.

**E.      Fraud by Omission, and Concealment**

2194. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2195. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2196. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2197. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

      b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

      c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

      d.   Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2198. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2199. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2200. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles

at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2201. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2202. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2203. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2204. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2205. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2206. As a direct and proximate result of Defendants' omissions, the Insureds purchased Vehicles that were susceptible to high rates of theft, that were stolen or vandalized, and that they would not have purchased the Vehicles if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2207. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**F.      Negligence**

2208. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2209. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2210. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2211. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2212. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2213. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2214. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## MISSISSIPPI STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Mississippi Subclasses, against All Defendants)

2215. Class Plaintiffs, the Hyundai Mississippi Subclass and Kia Mississippi Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2216. The Mississippi Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Mississippi due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire &  Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; Permanent General Assurance Company;  GEICO Advantage Insurance Company; GEICO Indemnity Company; GEICO General Insurance Company; Government Employees Insurance Company; Alliance United Insurance Company; Mountain Laurel Assurance Company; Progressive Gulf Insurance Company; Progressive Paloverde Insurance Company; Progressive Specialty Insurance Company; Root Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Mississippi pursuant to policies of insurance.

**A.     Breach of Implied Warranty of Merchantability under Miss. Code §§ 75-2-314 and 75-2A-212**

2217. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2218. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to

Miss. Code §§ 75-2-314 and 75-2A-212.

2219. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

2220. Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

2221. The Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

2222. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2223. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2224. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable

and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2225. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2226. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2227. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if

1 they presented their Vehicles to them for repair.

2     2228. As a direct and proximate result of Defendants' breach of the implied

3 warranties, the Insureds' vehicles were and are defective, and the Thief Friendly

4 Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount

5 to be proven at trial.

6 **B.   Breach of Express Warranty under Miss. Code § 75-2-313**

7     2229. Plaintiffs reallege and incorporate by reference all preceding allegations

8 as though fully set forth herein.

9     2230. During the relevant time period described above, Plaintiffs' Insureds

10 purchased or leased Vehicles.

11     2231. These Vehicles were manufactured by Defendants during the relevant

12 time period described above. Through the attachment of VIN plates, Defendants made

13 an express warranty that the Vehicles conform to all applicable U.S.A. federal motor

14 vehicle safety, bumper, and theft prevention standards in effect on the date of

15 manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

16 Vehicle is provided above. On information and belief, similar written warranties were

17 made prior to, or at the point of sale for all Vehicles.

18     2232. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

19 them in accordance with the normal operation of the Vehicles and did not mishandle

20 or otherwise damage the Vehicles in any way that is material to the allegations set

21 forth herein.

22     2233. The Vehicles did not perform as promised in accordance with

23 Defendants' express warranty, as it has become common knowledge that they are

24 capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

25 applicable motor vehicle safety, and theft prevention standards in effect on the date

26 of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily

27 stolen, and thus failed to perform to the terms of the express warranty described in the

28 Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable

anti-theft standards.

2234. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C.      Violation of the Mississippi Consumer Protection Act under Miss. Code. Ann. § 75-24-1, et seq.

2235. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2236. Defendants and Plaintiffs "persons" within the meaning of Miss. Code Ann. § 75-24-3(a).

2237. Defendants were and are engaged in "trade" or "commerce" within the meaning of Miss. Code Ann. § 75-24-3(b).

2238. The Mississippi Consumer Protection Act ("Mississippi CPA") states that "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited." Miss. Code Ann. § 75-24-5(1).

2239. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Mississippi CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2240. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Mississippi CPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2241. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2242. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Miss. Code Ann. § 75-24-5:

a.  Misrepresenting the approval or certification of the Vehicles;

b.  Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

c.  Representing that the Vehicles are of a particular standard, quality, and grade when they are not; and

d.  Advertising the Vehicles with the intent not to sell or lease them as advertised. Miss. Code Ann. § 75-24-5(2)(b), (e), (g), and (i).

2243. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2244. Defendants' unfair methods of competition and unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2245. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2246. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their

own.

2247. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2248. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2249. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2250. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2251. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2252. Pursuant to Miss Code Ann. §§ 75-24-9, -11, and -15, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Mississippi CPA, including but not limited to, restitution under Miss. Code Ann. § 75-24-11.

**D.      Fraud by Omission and Concealment**

2253. Plaintiffs incorporate by reference each preceding and succeeding

1   paragraph as though fully set forth at length herein.

2          2254. Defendants' misleading representations include affirmative statements

3   that the Vehicles conform with all applicable safety and anti-theft standards. In reality,

4   however, the Vehicles do not comply with such standards.

5          2255. Defendants were aware of the Thief Friendly Design when they

6   marketed and sold the Vehicles to Plaintiffs' Insureds.

7          2256. Having been aware of the Thief Friendly Design within the Vehicles and

8   having known that Plaintiffs' Insureds could not have reasonably been expected to

9   know of the Thief Friendly Design, Defendants had a duty to disclose the Thief

10  Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

11  Defendants further had a duty to disclose the Thief Friendly Design because:

12          a.   Defendants had exclusive access to and far superior knowledge

13               about facts regarding the Thief Friendly Design and Defendants

14               knew these facts were not known to or reasonably discoverable by

15               Plaintiffs' Insureds;

16          b.   Given the Thief Friendly Design's hidden and technical nature,

17               Plaintiffs' Insureds lack the sophisticated expertise in vehicle

18               components that would be necessary to discover the Thief

19               Friendly Design on their own;

20          c.   Defendants knew that the Thief Friendly Design gave rise to safety

21               concerns for the consumers who use the Vehicles, and the Thief

22               Friendly Design would have been a material fact to the Plaintiffs'

23               Insureds' decisions to buy or lease the Vehicles; and

24          d.   Defendants made incomplete representations about the safety and

25               reliability of the Vehicles while purposefully withholding material

26               facts about a known safety defect. In uniform advertising and

27               materials provided with each Vehicle, Defendants intentionally

28               concealed, suppressed, and failed to disclose to the consumers that

the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2257. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2258. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

2259. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2260. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2261. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2262. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2263. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have

purchased, or pay more for a Vehicle than they otherwise would have paid.

2264. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2265. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds purchased Vehicles that were stolen, or damaged, and they would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages in an amount to be proven at trial.

2266. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

2267. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2268. Named Subclass Members bring this count individually and on behalf of the other members of the Mississippi Subclasses against Defendants.

2269. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2270. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2271. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2272. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to

ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2273. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2274. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## MISSOURI STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Missouri Subclasses, against All Defendants)

2275. Class Plaintiffs, the Hyundai Missouri Subclass and Kia Missouri Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2276. The Missouri Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Missouri due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Acuity, A Mutual Insurance Company; Allstate County Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company;  Allstate  Insurance  Company;  Allstate  North  American  Insurance Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.;  Permanent General Assurance Company; Erie Insurance Exchange; GEICO Casualty Company;

GEICO General Insurance Company; Government Employees Insurance Company; Horace Mann Insurance Company; Teachers Insurance Company; American Access Casualty Company; Alpha Property & Casualty Insurance Company; Response Insurance Company; Warner Insurance Company; Employers Insurance Company of Wausau; Ohio Security Insurance Company; Allied Property & Casualty Insurance Company; Nationwide Insurance Company of America; Nationwide General Insurance Company; Progressive Advanced Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Northwestern Insurance Company; Progressive Universal Insurance Company; Root Insurance Company; State Automobile Mutual Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Missouri pursuant to policies of insurance.

A.     **Breach of Implied Warranty of Merchantability under Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212**

2277. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2278. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212.

2279. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104(1) and 400.2A-103(3), and "sellers" of motor vehicles under § 400.2-103(1)(d).

2280. Defendants are and were at all relevant times "lessors" of motor vehicles under Mo. Rev. Stat. § 400.2A-103(1)(p).

2281. Plaintiffs' Insureds who purchased Vehicles in Missouri are "buyers" within the meaning of Mo. Rev. Stat. § 400.2-103(1)(a).

2282. Plaintiffs' Insureds who leased Vehicles in Missouri are "lessees" within the meaning of Mo. Rev. Stat. § 400.2A-103(1)(n).

2283. The Vehicles are and were at all relevant times "goods" within the meaning of Mo. Rev. Stat. §§ 400.2-105(1) and 400.2A-103(1)(h).

2284. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2285. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2286. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and

Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful
choice in determining these time limitations, the terms of which unreasonably favored
Defendants. A gross disparity in bargaining power existed between Defendants and
Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at
the time of sale.

2287. Furthermore, the circumstances described herein caused Defendants'
exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and
Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of
warranties have denied Plaintiffs' Insureds the benefit of their respective bargains,
which presupposes they were (or are) able to use the Vehicles in a meaningful manner
without the ever–present risk of them being stolen.

2288. Plaintiffs have provided Defendants with reasonable notice and
opportunity to cure the breaches of their implied warranties. Additionally, all
Defendants were provided notice and opportunity to cure the issues raised in this
count and this Complaint by governmental investigations, numerous complaints filed
against them, internet videos, news reports, and the many individual notice letters sent
by Plaintiffs within a reasonable amount of time after the allegations of Vehicle
defects became public.

2289. Alternatively, Plaintiffs were excused from providing Defendants with
notice and an opportunity to cure the breach, because it would have been futile. As
alleged throughout Plaintiffs' Complaint, Defendants have long known that the
Vehicles contained the Thief Friendly Design yet have failed to cure, remedy, or
repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to
believe that Defendants would have adequately repaired the Thief Friendly Design if
they presented their Vehicles to them for repair.

2290. As a direct and proximate result of Defendants' breach of the implied
warranties, the Insureds' vehicles were and are defective, and the Thief Friendly
Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount

1 to be proven at trial.

2 **B.      Breach of Express Warranty under Mo. Rev. Stat. §§ 400.2-313**

3      2291. Plaintiffs reallege and incorporate by reference all preceding allegations

4 as though fully set forth herein.

5      2292. During the relevant time period described above, Plaintiffs' Insureds

6 purchased or leased Vehicles.

7      2293. These Vehicles were manufactured by Defendants during the relevant

8 time period described above. Through the attachment of VIN plates, Defendants made

9 an express warranty that the Vehicles conform to all applicable U.S.A. federal motor

10 vehicle safety, bumper, and theft prevention standards in effect on the date of

11 manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

12 Vehicle is provided above. On information and belief, similar written warranties were

13 made prior to, or at the point of sale for all Vehicles.

14      2294. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

15 them in accordance with the normal operation of the Vehicles and did not mishandle

16 or otherwise damage the Vehicles in any way that is material to the allegations set

17 forth herein.

18      2295. The Vehicles did not perform as promised in accordance with

19 Defendants' express warranty, as it has become common knowledge that they are

20 capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

21 applicable motor vehicle safety, and theft prevention standards in effect on the date

22 of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily

23 stolen, and thus failed to perform to the terms of the express warranty described in the

24 Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable

25 anti-theft standards.

26      2296. Plaintiffs have incurred and will continue to incur damages and costs and

27 expenses, including attorney's fees, as a result of the Thief Friendly Design and

28 related breach of Defendants' breach of express warranty that the Vehicles conform

to theft prevention standards.

**C.     Violation of Missouri Merchandising Practices Act under Mo. Rev. Stat. § 4070.010, *et seq.***

2297. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2298. Defendants and Plaintiffs' Insureds are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

2299. Defendants were and are engaged in "trade or commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

2300. Vehicles are "merchandise" within the meaning of Mo. Rev. Stat. § 407.010(4).

2301. The sale or lease of the Vehicles is a "sale" within the meaning of Mo. Rev. Stat. § 407.010(6).

2302. The Missouri Merchandising Practices Act ("Missouri MPA") states that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020(1).

2303. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2304. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Missouri MPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2305. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2306. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Mo. Rev. Stat. § 407.020(1): using or employing

deception, fraud, false pretense, false promise or misrepresentation, unfair practice or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of the Vehicles in trade or commerce.

2307. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2308. Defendants' unfair methods of competition and unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2309. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2310. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2311. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2312. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2313. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2314. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2315. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2316. Pursuant to Mo. Rev. Stat. § 407.025, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Missouri MPA.

**D.      Fraud by Omission and Concealment**

2317. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2318. Defendants' misleading representations include affirmative statements

that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2319. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2320. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

   a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

   b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

   c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

   d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they

1          marketed and offered for sale and lease to consumers, Defendants

2          had the duty to disclose the whole truth.

3      2321. In breach of their duties, Defendants failed to disclose the Thief Friendly

4  Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

5      2322. For the reasons set forth above, the Thief Friendly Design within the

6  Vehicles is material to the sale of the Vehicles because a reasonable person would

7  find it important in purchasing, leasing, or retaining a new or used motor vehicle and

8  because it directly impacts the value of the Vehicles purchased or leased by the

9  Plaintiffs' Insureds. Any consumer would view the Vehicles' non-compliance with

10 basic anti-theft and safety standards as a material fact that would influence their

11 decision to purchase a Vehicle.

12     2323. Defendants intended for the Plaintiffs' Insureds to rely on their

13 Plaintiffs' Insureds omissions and concealment—which they did by purchasing and

14 leasing the Vehicles at the prices they paid believing that their vehicles would not

15 have a Thief Friendly Design that would affect the quality, reliability, and safety of

16 the Vehicles.

17     2324. Plaintiffs' Insureds' reliance was reasonable, as they had no way of

18 learning the facts that Defendants had concealed or failed to disclose. Plaintiffs'

19 Insureds did not, and could not, unravel Defendants' deception on their own.

20     2325. Defendants actively concealed and suppressed these material facts, in

21 whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid

22 costly recalls that would expose them to liability for those expenses and harm the

23 commercial reputations of Defendants and their products. They did so at the expense

24 of Plaintiffs and Plaintiffs' Insureds.

25     2326. If Defendants had fully and adequately disclosed the Thief Friendly

26 Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

27     2327. Through their omissions and concealment with respect to the Thief

28 Friendly Design within the Vehicles, Defendants intended to induce, and did induce,

Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2328. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2329. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2330. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

2331. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2332. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2333. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2334. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2335. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States

and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2336. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2337. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## MONTANA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Montana Subclasses, against All Defendants)

2338. Class Plaintiffs, the Hyundai Montana Subclass and Kia Montana Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2339. The Montana Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Montana due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Permanent General Assurance Company; GEICO Advantage Insurance Company; GEICO General Insurance Company; Teachers Insurance Company; Progressive Direct Insurance Company; Progressive Northwestern Insurance Company; Progressive Specialty Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Montana pursuant to policies of insurance.

**A.      Breach of Implied Warranty of Merchantability under Mont. Code §§ 30-2-314 and 30-2A-212**

2340. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2341. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mont. Code §§ 30-2- 314 and 30-2A-212.

2342. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mont. Code § 30-2-104(1) and "sellers" of motor vehicles under § 30-2-103(1)(d).

2343. Defendants are and were at all relevant times "lessors" of motor vehicles under Mont. Code § 30-2A-103(1)(p).

2344. The Vehicles are and were at all relevant times "goods" within the meaning of Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).5. 904.

2345. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2346. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft

deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2347. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2348. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2349. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2350. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2351. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty under Mont. Code § 30-2-313**

2352. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2353. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2354. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2355. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2356. The Vehicles did not perform as promised in accordance with

Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2357. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.     Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1973 (Mont. Code Ann. § 30-14-101, et seq.)**

2358. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2359. Defendants and Plaintiffs are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

2360. Plaintiffs' Insureds are "consumers" within the meaning of Mont. Code Ann. § 30-14-102(1).

2361. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mont. Code Ann. § 30-14-102(8).

2362. The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code Ann. § 30-14-103.

2363. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Montana CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2364. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Montana CPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2365. As detailed above, the information concerning the Thief Friendly Design

1    was known to Defendants at the time of advertising and selling the Vehicles, all of

2    which was intended to induce consumers to purchase the Vehicles.

3       2366. By misrepresenting the Vehicles as safe and reliable and by failing to

4    disclose and actively concealing the dangers and risk posed by the Thief Friendly

5    Design, Defendants engaged in unfair methods of competition and unfair or deceptive

6    acts or practices prohibited by Mont. Code Ann. § 30-14-103.

7       2367. Defendants intended for Plaintiffs' Insureds to rely on them to provide

8    adequately designed Vehicles, and to honestly and accurately reveal the safety

9    hazards described above.

10      2368. Defendants' unfair and deceptive acts or practices were designed to

11   mislead and create a false impression in consumers that the Vehicles had adequate

12   anti-theft protection, and that the Vehicles were not affected by the Thief Friendly

13   Design. Indeed, those misrepresentations, concealments, omissions, and suppressions

14   of material facts did in fact deceive reasonable consumers, including the Plaintiffs'

15   Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and

16   the true value of Vehicles.

17      2369. Defendants' misrepresentations, concealments, omissions, and

18   suppressions of material facts regarding the Thief Friendly Design and true

19   characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to

20   purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were

21   exposed to those misrepresentations, concealments, omissions, and suppressions of

22   material facts, and relied on Defendants' misrepresentations that the Vehicles were

23   safe and reliable in deciding to purchase and lease the Vehicles.

24      2370. Plaintiffs' Insureds' reliance was reasonable, as they had no way of

25   discerning that Defendants' representations were false and misleading and/or

26   otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above.

27   Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their

28   own.

2371. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2372. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2373. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2374. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2375. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2376. Pursuant to Mont. Code Ann. §30-14-133, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Montana CPA.

**D.     Fraud by Omission, and Concealment**

2377. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2378. Defendants' misleading representations include affirmative statements

that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2379. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2380. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they

marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2381. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2382. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

2383. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2384. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2385. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2386. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2387. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2388. Had Plaintiffs' Insureds known of the Thief Friendly Design within the

Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2389. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2390. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.  Negligence**

2391. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2392. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2393. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2394. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2395. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2396. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2397. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## NEBRASKA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Nebraska Subclasses, against All Defendants)

2398. Class Plaintiffs, the Hyundai Nebraska Subclass and Kia Nebraska Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2399. The Nebraska Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Nebraska due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Northbrook Insurance Company; American Family Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; Permanent General Assurance Company; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO Casualty Company; GEICO General Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; GEICO Secure Insurance Company; Financial Indemnity Company; Ohio Security Insurance Company; Progressive County Mutual Insurance Company; Progressive Northern Insurance Company; Progressive Universal Insurance Company; Garrison Property & Casualty

Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in  Nebraska pursuant to policies of insurance.

## A.   Breach of Implied Warranty of Merchantability under Neb. Rev. St. U.C.C. §§ 2-314 and 2A-212

2400. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2401. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Neb. Rev. St. U.C.C.§§ 2-314 and 2A-212.

2402. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Neb. Rev. St. U.C.C. § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

2403. Defendants are and were at all relevant times "lessors" of motor vehicles under Neb. Rev. St. U.C.C. § 2A-103(1)(p).

2404. The Vehicles are and were at all relevant times "goods" within the meaning of Neb. Rev. St. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

2405. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2406. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition,

would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2407. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2408. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2409. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this

count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2410. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, upon information and belief, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2411. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Neb. Rev. St. U.C.C. §§ 2-313**

2412. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2413. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2414. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2415. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2416. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2417. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C. Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601, *et seq.*)

2418. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2419. The Vehicles are "assets" within the meaning of Neb. Rev. Stat. § 59-1601(1).

2420. Defendants and Plaintiffs are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

2421. Plaintiffs' Insureds are "consumers" within the meaning of Neb. Rev. Stat. § 59-1601(1).

2422. Defendants were and are engaged in "trade" or "commerce" within the meaning of Neb. Rev. Stat. § 59-1501(2).

2423. The Nebraska Consumer Protection Act ("Nebraska CPA") declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Neb Rev. Stat. § 59-1602.

2424. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2425. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Nebraska CPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally

concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2426. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2427. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Neb. Rev. Stat. § 59-1602.

2428. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2429. Defendants' unfair and deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2430. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were

safe and reliable in deciding to purchase and lease the Vehicles.

2431. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2432. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2433. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2434. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2435. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2436. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2437. Pursuant to Neb. Rev. Stat. § 59-1609, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and

1  unfair or deceptive acts or practices and awarding damages and any other just and

2  proper relief available under the Nebraska CPA.

3  **D.    Fraud by Omission, and Concealment**

4  2438. Plaintiffs incorporate by reference each preceding and succeeding

5  paragraph as though fully set forth at length herein.

6  2439. Defendants' misleading representations include affirmative statements

7  that the Vehicles conform with all applicable safety and anti-theft standards. In reality,

8  however, the Vehicles do not comply with such standards.

9  2440. Defendants were aware of the Thief Friendly Design when they

10  marketed and sold the Vehicles to Plaintiffs' Insureds.

11  2441. Having been aware of the Thief Friendly Design within the Vehicles and

12  having known that Plaintiffs' Insureds could not have reasonably been expected to

13  know of the Thief Friendly Design, Defendants had a duty to disclose the Thief

14  Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

15  Defendants further had a duty to disclose the Thief Friendly Design because:

16          a.     Defendants had exclusive access to and far superior knowledge

17                 about facts regarding the Thief Friendly Design and Defendants

18                 knew these facts were not known to or reasonably discoverable by

19                 Plaintiffs' Insureds;

20          b.     Given the Thief Friendly Design's hidden and technical nature,

21                 Plaintiffs' Insureds lack the sophisticated expertise in vehicle

22                 components that would be necessary to discover the Thief

23                 Friendly Design on their own;

24          c.     Defendants knew that the Thief Friendly Design gave rise to safety

25                 concerns for the consumers who use the Vehicles, and the Thief

26                 Friendly Design would have been a material fact to the Plaintiffs'

27                 Insureds' decisions to buy or lease the Vehicles; and

28

        d.     Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2442. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2443. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.  Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2444. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2445. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2446. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the

commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2447. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2448. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2449. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2450. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2451. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

2452. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2453. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2454. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2455. Defendants failed to exercise reasonable care in connection with their

manufacture, distribution, sale, and/or leasing of the Vehicles.

2456. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2457. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2458. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## NEVADA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Nevada Subclasses, against All Defendants)

2459. Class Plaintiffs, the Hyundai Nevada Subclass and Kia Nevada Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2460. The Nevada Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Nevada due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate County Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Northbrook Indemnity Company;

American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO Secure Insurance Company; GEICO Casualty Company; GEICO Secure Insurance Company; Government Employees Insurance Company; Horace Mann Insurance Company; Teachers Insurance Company; Alliance United Insurance Company; American Access Casualty Company; Infinity Insurance Company; Financial Indemnity Company; Liberty Mutual Fire Insurance Company; Root Insurance Company; Progressive Direct Insurance Company; Progressive Garden State Insurance Company; Progressive Select Insurance Company; Progressive West Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Nevada pursuant to policies of insurance.

## A. Breach of Implied Warranty of Merchantability under Nev. Rev. Stat. §§ 104.2314 and 104A.2212

2461. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2462. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Nev. Rev. Stat. §§ 104.2314 and 104A.2212.

2463. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Nev. Rev. Stat. §§ 104.2104(1) and 104A.2103(3), and "sellers" of motor vehicles under § 104.2103(1)(c).

2464. Defendants are and were at all relevant times "lessors" of motor vehicles under Nev. Rev. Stat. § 104A.2103(1)(p).

2465. Plaintiffs' Insureds who purchased Vehicles in Nevada are "buyers" within the meaning of Nev. Rev. Stat. § 104.2103(1)(a).

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

2466. Plaintiffs' Insureds who leased Vehicles in Nevada are "lessees" within the meaning of Nev. Rev. Stat. § 104.2103(1)(a).

2467. The Vehicles are and were at all relevant times "goods" within the meaning of Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

2468. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2469. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2470. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and

Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2471. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2472. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2473. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2474. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount

to be proven at trial.

**B.** **Breach of Express Warranty under Nev. Rev. Stat. § 104.2313**

2475. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2476. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2477. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2478. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2479. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2480. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1 to theft prevention standards.

2 **C.**   **Violation of the Deceptive Trade Practices Act under Nev. Rev. Stat. §**
3 **598.0903, et seq.**

4 2481. Plaintiffs reallege and incorporate by reference all preceding allegations
5 as though fully set forth herein.

6 2482. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev.
7 Rev. Stat. § 598.0903, et seq. prohibits the use of deceptive trade practices in the
8 course of business and occupation.

9 2483. In the course of their business, Defendants, through their agents,
10 employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and
11 intentionally misrepresenting, omitting, concealing, and/or failing to disclose material
12 facts regarding the quality, reliability, and safety of the Vehicles and the Thief
13 Friendly Design, as detailed above.

14 2484. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from
15 unfair or deceptive practices under the Nevada DTPA in the course of their business.
16 Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material
17 facts concerning the Thief Friendly Design of the Vehicles because they possessed
18 exclusive knowledge; they intentionally concealed the Thief Friendly Design from
19 Plaintiffs' Insureds; and/or they made misrepresentations that were rendered
20 misleading because they were contradicted by withheld facts.

21 2485. By misrepresenting the Vehicles as safe and reliable and by failing to
22 disclose and actively concealing the dangers and risk posed by the Thief Friendly
23 Design, Defendants engaged in unfair methods of competition and unfair or deceptive
24 acts or practices prohibited by Nev. Rev. Stat. §§ 598.0915, 598.0923, and 598.0925:

25     a.   Representing that the Vehicles have characteristics, uses, benefits,
26          and qualities which they do not have;

27     b.   Representing that the Vehicles are of a particular standard, quality
28          and grade when they are not;

c.   Advertising the Vehicles with the intent not to sell or lease them as advertised;

d.   Failing to disclose the Thief Friendly Design in connection with the sale of the Vehicles; and

e.   Making an assertion of a scientific fact in an advertisement which would cause a reasonable person to believe that the assertion is true. Nev. Rev. Stat. §§ 598.0915(5), (7), (9), (15), 598.0923(2), and 598.0925.

2486. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2487. Defendants' unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2488. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2489. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above.

Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2490. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2491. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2492. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2493. Pursuant to Nev. Rev. Stat. §§ 41.600, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Nevada DPA.

**D.    Fraud by Omission, and Concealment**

2494. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2495. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.  In reality, however, the Vehicles do not comply with such standards.

2496. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2497. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2498. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2499. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the

1  Plaintiffs' Insureds.

2      2500. Defendants intended for the Plaintiffs' Insureds to rely on their

3  omissions and concealment—which they did by purchasing and leasing the Vehicles

4  at the prices they paid believing that their vehicles would not have a Thief Friendly

5  Design that would affect the quality, reliability, and safety of the Vehicles.

6      2501. Plaintiffs' Insureds' reliance was reasonable, as they had no way of

7  learning the facts that Defendants had concealed or failed to disclose. Plaintiffs'

8  Insureds did not, and could not, unravel Defendants' deception on their own.

9      2502. Defendants actively concealed and suppressed these material facts, in

10 whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid

11 costly recalls that would expose them to liability for those expenses and harm the

12 commercial reputations of Defendants and their products. They did so at the expense

13 of Plaintiffs and Plaintiffs' Insureds.

14     2503. If Defendants had fully and adequately disclosed the Thief Friendly

15 Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

16     2504. Through their omissions and concealment with respect to the Thief

17 Friendly Design within the Vehicles, Defendants intended to induce, and did induce,

18 Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have

19 purchased, or pay more for a Vehicle than they otherwise would have paid.

20     2505. Had Plaintiffs' Insureds known of the Thief Friendly Design within the

21 Vehicles, it is reasonably likely they would not have purchased the Vehicles, would

22 have paid less for them, and could have taken measures to better secure them from

23 theft.

24     2506. As a direct and proximate result of Defendants' omissions, Plaintiffs'

25 Insureds either overpaid for the Vehicles or would not have purchased the Vehicles

26 at all if the Thief Friendly Design had been disclosed to them. Accordingly,

27 Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

28     2507. Defendants' acts were done maliciously, oppressively, deliberately, with

intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.      Negligence**

2508. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2509. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2510. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2511. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2512. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2513. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2514. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## NEW HAMPSHIRE STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of New Hampshire Subclasses, against All Defendants)**

2515. Class Plaintiffs, the Hyundai New Hampshire Subclass and Kia New Hampshire Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2516. The New Hampshire Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of New Hampshire due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; GEICO Advantage Insurance Company; GEICO Secure Insurance Company; Government Employees Insurance Company; Progressive Northern Insurance Company; Progressive Universal Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; and USAA General Indemnity Company; all of whom paid policy proceeds to their respective Insureds in New Hampshire pursuant to policies of insurance.

**A.** **Breach of Implied Warranty of Merchantability under N.H. Rev. Stat. §§ 382-A:2-314 and 2A-212**

2517. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2518. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212.

2519. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2- 103(1)(d).

2520. Defendants are and were at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

2521. The Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

2522. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2523. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2524. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and

Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2525. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2526. Plaintiffs provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by letter dated March 09, 2023. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2527. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2528. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount

1   to be proven at trial.

2   **B.      Breach of Express Warranty under N.H. Rev. Stat. §§ 382-A:2-313**

3   2529. Plaintiffs reallege and incorporate by reference all preceding allegations

4   as though fully set forth herein.

5   2530. During the relevant time period described above, Plaintiffs' Insureds

6   purchased or leased Vehicles.

7   2531. These Vehicles were manufactured by Defendants during the relevant

8   time period described above. Through the attachment of VIN plates, Defendants made

9   an express warranty that the Vehicles conform to all applicable U.S.A. federal motor

10  vehicle safety, bumper, and theft prevention standards in effect on the date of

11  manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

12  Vehicle is provided above. On information and belief, similar written warranties were

13  made prior to, or at the point of sale for all Vehicles.

14  2532. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

15  them in accordance with the normal operation of the Vehicles and did not mishandle

16  or otherwise damage the Vehicles in any way that is material to the allegations set

17  forth herein.

18  2533. The Vehicles did not perform as promised in accordance with

19  Defendants' express warranty, as it has become common knowledge that they are

20  capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

21  applicable motor vehicle safety, and theft prevention standards in effect on the date

22  of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily

23  stolen, and thus failed to perform to the terms of the express warranty described in the

24  Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable

25  anti-theft standards.

26  2534. Plaintiffs have incurred and will continue to incur damages and costs and

27  expenses, including attorney's fees, as a result of the Thief Friendly Design and

28  related breach of Defendants' breach of express warranty that the Vehicles conform

1  to theft prevention standards.

2  **C.     Violation of the New Hampshire Consumer Protection Act under N.H.**
3  **Rev. Stat. Ann. § 358-a:1, et seq.**

4  2535. Plaintiffs reallege and incorporate by reference all preceding allegations
5  as though fully set forth herein.

6  2536. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the
7  meaning of N.H. Rev. Stat.§ 358-A:1.

8  2537. Defendants engaged in "trade" and "commerce" within the meaning of
9  N.H. Rev. Stat.§ 358-A:1.

10  2538.  The New Hampshire Consumer Protection Act ("New Hampshire CPA")
11  declares it unlawful "for any person to use any unfair method of competition or any
12  unfair or deceptive act or practice in the conduct of any trade or commerce within this
13  state." N.H. Rev. Stat.§ 358-A:2.

14  2539. In the course of their business, Defendants, through their agents,
15  employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and
16  intentionally misrepresenting, omitting, concealing, and/or failing to disclose material
17  facts regarding the quality, reliability, and safety of the Vehicles and the Thief
18  Friendly Design, as detailed above.

19  2540. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from
20  unfair or deceptive practices under the New Hampshire CPA in the course of their
21  business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the
22  material facts concerning the Thief Friendly Design of the Vehicles because, as
23  detailed above:

24          a.      Defendants had exclusive access to and far superior knowledge
25                  about facts regarding the Thief Friendly Design and Defendants
26                  knew these facts were not known to or reasonably discoverable by
27                  Plaintiffs' Insureds;

28

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to Plaintiffs' Insureds, Defendants had the duty to disclose the whole truth.

2541. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by N.H. Rev. Stat. 358-A:2:

    a.    Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b.    Representing that the Vehicles are of a particular standard, quality and grade when they are not;

    c.    Advertising the Vehicles with the intent not to sell or lease them as advertised;

d. Failing to disclose the Thief Friendly Design in connection with the sale of the Vehicles; and

e. Making an assertion of a scientific fact in an advertisement which would cause a reasonable person to believe that the assertion is true. N.H. Rev. Stat. § 358-A:2(III), (VII), (IX)

2542. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2543. Defendants' unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2544. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2545. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their

own.

2546. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2547. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2548. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2549. Pursuant to N.H. Rev. Stat.§ 358-A:10, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New Hampshire CPA.

**D.    Fraud by Omission, and Concealment**

2550. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2551. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.  In reality, however, the Vehicles do not comply with such standards.

2552. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2553. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2554. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2555. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds. Any consumer would view the Vehicles' non-compliance with

basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2556. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2557. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2558. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2559. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2560. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2561. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2562. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2563. Defendants' acts were done maliciously, oppressively, deliberately, with

intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

2564. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2565. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2566. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2567. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2568. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2569. Defendants breached their duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

2570. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2571. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

### NEW JERSEY STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of New Jersey Subclasses, against All Defendants)**

2572. Class Plaintiffs, the Hyundai New Jersey Subclass and Kia New Jersey Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2573. The New Jersey Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of New Jersey due to the Defendants Thief Friendly Design; including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate New Jersey Insurance Company; Citizen's United Reciprocal Exchange; Erie Insurance Exchange; Kemper Independence Insurance Company; Liberty Mutual Fire Insurance Company; Peerless Indemnity Insurance Company; New Jersey Indemnity Insurance Company; New Jersey Manufacturers Insurance Company; Drive New Jersey Insurance Company; Progressive Garden State Insurance Company; Progressive Southeastern Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in New Jersey pursuant to policies of Insurance.

**A.** **Breach of Implied Warranty of Merchantability under N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212)**

2574. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

2575. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212.

2576. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J. Stat. Ann. §§ 12A:2-104(1) and 12A:2A-103(3), and "sellers" of motor vehicles under § 12A:2-103(1)(d).

2577. Defendants are and were at all relevant times "lessors" of motor vehicles under N.J. Stat. Ann. § 12A:2A-103(1)(n).

2578. Plaintiffs' Insureds who purchased Vehicles in New Jersey are "buyers" within the meaning of N.J. Stat. Ann. § 12A:2-103(1)(a).

2579. Plaintiffs' Insureds who leased Vehicles in New Jersey are "lessees" within the meaning of N.J. Stat. Ann. § 12A:2A-103(1)(n).

2580. The Vehicles are and were at all relevant times "goods" within the meaning of N.J. Stat. Ann. §§ 12A:2-105(1) and 2A-103(1)(h).

2581. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2582. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly

Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2583. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2584. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2585. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle

1  defects became public.

2   2586. Alternatively, Plaintiffs were excused from providing Defendants with
3  notice and an opportunity to cure the breach, because it would have been futile. As
4  alleged throughout Plaintiffs' Complaint, Defendants have long known that the
5  Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or
6  repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to
7  believe that Defendants would have adequately repaired the Thief Friendly Design if
8  they presented their Vehicles to them for repair.

9   2587. As a direct and proximate result of Defendants' breach of the implied
10  warranties, the Insureds' vehicles were and are defective, and the Thief Friendly
11  Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount
12  to be proven at trial.

13  **B. Breach of Express Warranty under N.J. Stat. Ann. § 12A:2-313**

14   2588. Plaintiffs reallege and incorporate by reference all preceding allegations
15  as though fully set forth herein.

16   2589. During the relevant time period described above, Plaintiffs' Insureds
17  purchased or leased Vehicles.

18   2590. These Vehicles were manufactured by Defendants during the relevant
19  time period described above. Through the attachment of VIN plates, Defendants made
20  an express warranty that the Vehicles conform to all applicable U.S.A. federal motor
21  vehicle safety, bumper, and theft prevention standards in effect on the date of
22  manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima
23  Vehicle is provided above. On information and belief, similar written warranties were
24  made prior to, or at the point of sale for all Vehicles.

25   2591. After Plaintiffs' Insureds purchased or leased the Vehicles, they used
26  them in accordance with the normal operation of the Vehicles and did not mishandle
27  or otherwise damage the Vehicles in any way that is material to the allegations set
28  forth herein.

2592. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2593. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C. Violation of New Jersey Consumer Fraud Act under N.J. Stat. Ann. § 56:8-1, et seq.

2594. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2595. Defendants, Plaintiffs and Plaintiffs' Insureds are "persons" within the meaning of N.J. Stat. Ann. § 56:8-1(d).

2596. Vehicles are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-1(c).

2597. The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits unlawful practices, such as misrepresentation, or the knowing, concealment, suppression, or omission of any material fact. N.J. Stat. Ann. § 56:8-2.

2598. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2599. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the New Jersey CFA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

      a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

      b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

      c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

      d.   Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2600. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of

1 which was intended to induce consumers to purchase the Vehicles.

2    2601. By misrepresenting the Vehicles as safe and reliable and by failing to

3 disclose and actively concealing the dangers and risk posed by the Thief Friendly

4 Design, Defendants engaged in unfair methods of competition and unfair or deceptive

5 acts or practices prohibited by N.J. Stat. Ann. § 56:8-2: using or employing deception,

6 fraud, false pretense, false promise or misrepresentation, or the concealment,

7 suppression or omission of a material fact with intent that others rely upon such

8 concealment, suppression or omission, in connection with the advertisement and

9 sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived

10 or damaged thereby.

11    2602. Defendants intended for Plaintiffs' Insureds to rely on them to provide

12 adequately designed Vehicles, and to honestly and accurately reveal the safety

13 hazards described above.

14    2603. Defendants' unlawful acts or practices, including their

15 misrepresentations, concealments, omissions, and suppressions of material facts, were

16 designed to mislead and had a tendency or capacity to mislead and create a false

17 impression in consumers that the Vehicles had adequate anti-theft protection, and that

18 the Vehicles were not affected by the Thief Friendly Design. Indeed, those

19 misrepresentations, concealments, omissions, and suppressions of material facts did

20 in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true

21 safety and reliability of Vehicles, the quality of Vehicles, and the true value of

22 Vehicles.

23    2604. Defendants' misrepresentations, concealments, omissions, and

24 suppressions of material facts regarding the Thief Friendly Design and true

25 characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to

26 purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were

27 exposed to those misrepresentations, concealments, omissions, and suppressions of

28 material facts, and relied on Defendants' misrepresentations that the Vehicles were

safe and reliable in deciding to purchase and lease the Vehicles.

2605. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2606. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2607. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2608. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2609. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2610. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2611. Pursuant to Pursuant to N.J. Stat. Ann. § 56:8-19, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of

competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New Jersey CFA.

## D.      Fraud by Omission and Concealment

2612. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2613. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.   In reality, however, the Vehicles do not comply with such standards.

2614. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2615. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

      a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

      b.      Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

      c.      Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2616. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2617. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2618. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2619. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2620. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the

commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2621. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2622. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2623. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2624. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2625. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

2626. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2627. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2628. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2629. Defendants failed to exercise reasonable care in connection with their

manufacture, distribution, sale, and/or leasing of the Vehicles.

2630. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2631. Defendants breached their duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

2632. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2633. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## NEW MEXICO STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of New Mexico Subclasses, against All Defendants)

2634. Class Plaintiffs, the Hyundai New Mexico Subclass and Kia New Mexico Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2635. The New Mexico Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of New Mexico due to Defendants' Thief Friendly

Design, including, but not limited to, the following named Class Plaintiffs: Church Mutual Insurance Company, SI; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO General Insurance Company; Government Employees Insurance Company; Financial Indemnity Company; Unitrin Safeguard Insurance Company; Unitrin Auto and Home Insurance Company; American States Insurance Company; Progressive Direct Insurance Company; Progressive Preferred Insurance Company; Progressive Northern Insurance Company; General Casualty Company of Wisconsin; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in New Mexico pursuant to policies of insurance.

## A.     Breach of Implied Warranty (N.M. Stat. §§ 55-2-314 and 55-2A-212)

2636. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2637. Defendants were at all relevant times "merchants" with respect to motor vehicles under N.M. Stat. § 55-2-104(1) and "sellers" of motor vehicles under § 55-2-103(1)(d).

2638. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.M. Stat. § 55-2A-103(1)(p).

2639. The Vehicles are and were at all relevant times "goods" within the meaning of N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

2640. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.M.

Stat. §§ 55-2- 314 and 55-2A-212.

2641. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs and the Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2642. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2643. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in

bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2644. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2645. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2646. Alternatively, Plaintiffs and the Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles; nor does any such program address the vehicles already stolen or damaged due to the Thief Friendly Design. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2647. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Plaintiffs' Insureds' Vehicles were and are defective, and the Thief Friendly Design in their Vehicles has not been remedied.

Therefore, Plaintiffs have been damaged, in an amount to be proven at trial.

**B.     Breach of Express Warranty N.M.S.A. §55-2-313**

2648. Plaintiffs  reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2649. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles manufactured by Defendants.

2650. Through the attachment of VIN plates in an open and obvious position visible upon entry to the Vehicles, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.   On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2651. The written statement that the Vehicles conform to all applicable Federal standards, including those for anti-theft, was an affirmation of fact and a promise of a kind that naturally would induce a buyer to purchase the Vehicles, which they might not have done had they known the Vehicles did not meet the standards as warranted.

2652. Plaintiffs' Insureds purchased or leased the Vehicles and used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2653. The Vehicles did not perform as promised in accordance with Defendants' express warranty on the VIN plates.   In fact, the Vehicles were manufactured and sold without compliance to the applicable safety and theft prevention standards in effect on the date of manufacture and can be stolen in a matter of seconds, a fact that has become common knowledge. As a result of this Thief Friendly Design, the Vehicles were in fact easily and frequently stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates.

2654. As a direct and proximate result of Defendants' breach of their express warranty, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss to Plaintiff's Insureds' Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

## C.   Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-1, et seq.)

2655. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2656. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of N.M. Stat. Ann. § 57-12-2.

2657. Defendants are engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. § 57-12-2.

2658. The New Mexico Unfair Trade Practices Act ("NM UTPA") makes unlawful any [u]nfair methods or deceptive trade practices and unconscionable trade practices [.]" N.M. Stat. Ann. § 57-12-3.

2659. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the NM UPTA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2660. Defendants had an ongoing duty to the Plaintiffs to refrain from unfair or deceptive practices under the NM UTPA in the course of their business. Specifically, Defendants owed the Plaintiffs a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

2661. Defendants had exclusive access to and far superior knowledge about

facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

2662. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2663. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

2664. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2665. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2666. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices or unconscionable trade practices prohibited by N.M. Stat. Ann. § 57-12-2(D)(2), (5), (7); N.M. Stat. Ann. § 570-12-2(E)(1)-(2):

    a.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

    b.   Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

   c. Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

   d. Taking advantage of the lack of knowledge, ability, experience, or capacity of a person to grossly unfair degree; and

   e. Resulting in a gross disparity between the value received by a person and the price paid.

2667. Defendants intended for Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2668. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2669. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

2670. Plaintiffs' and Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2671. Had they known the truth about the Thief Friendly Design, Plaintiffs and

1    Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have

2    paid significantly less for them.

3         2672. Plaintiffs suffered ascertainable losses and actual damages as a direct and

4    proximate result of Defendants' concealment, misrepresentations, and/or failure to

5    disclose material information.

6         2673. Defendants' violations present a continuing risk to Plaintiffs and Class

7    Members, as well as to the general public, because the Vehicles remain unsafe due to

8    the Thief Friendly Design. Defendants' unlawful acts and practices complained of

9    herein affect the public interest.

10        2674. Pursuant to N.M. Stat. Ann. § 57-12-10, Plaintiffs seek an order

11   enjoining Defendants' unfair or deceptive acts or practices and awarding damages and

12   any other just and proper relief available under the NM UTPA.

13   **D.    Fraud by Omission, Suppression and Concealment**

14        2675. Plaintiffs reallege and incorporate by reference all preceding allegations

15   as though fully set forth herein.

16        2676. Defendants were aware of the Thief Friendly Design when they

17   marketed and sold the Vehicles to Plaintiffs.

18        2677. Having been aware of the Thief Friendly Design within the Vehicles, and

19   having known that Plaintiffs could not have reasonably been expected to know of the

20   Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design

21   to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty

22   to disclose the Thief Friendly Design because:

23            a.    Defendants had exclusive access to and far superior knowledge

24                  about facts regarding the Thief Friendly Design and Defendants

25                  knew these facts were not known to or reasonably discoverable by

26                  Plaintiffs' Insureds;

27            b.    Given the Thief Friendly Design's hidden and technical nature,

28                  Plaintiffs' Insureds lack the sophisticated expertise in vehicle

1                components that would be necessary to discover the Thief
2                Friendly Design on their own;

3      c.     Defendants knew that the Thief Friendly Design gave rise to safety
4                concerns for the consumers who use the Vehicles, and the Thief
5                Friendly Design would have been a material fact to the Plaintiffs'
6                Insureds' decisions to buy or lease Vehicles; and

7      d.     In uniform advertising and materials provided with each Vehicle,
8                Defendants intentionally concealed, suppressed, and failed to
9                disclose to the consumers that the Vehicles contained the Thief
10               Friendly Design. Because they volunteered to provide information
11               about the Vehicles that they marketed and offered for sale and
12               lease to consumers, Defendants had the duty to disclose the whole
13               truth.

14     2678. In breach of their duties, Defendants failed to disclose the Thief Friendly
15 Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Instead,
16 Defendants made incomplete representations about the safety and reliability of the
17 Vehicles while purposefully withholding material facts about a known safety defect.

18     2679. For the reasons set forth above, the Thief Friendly Design within the
19 Vehicles is material to the sale of the Vehicles because a reasonable person would
20 find it important in purchasing, leasing, or retaining a new or used motor vehicle and
21 because it directly impacts the value of the Vehicles purchased or leased by the
22 Plaintiffs.

23     2680. Defendants intended for the Plaintiffs to rely on their omissions and
24 concealment, which they did by purchasing and leasing the Vehicles at the prices they
25 paid believing that their vehicles would not have a Thief Friendly Design that would
26 affect the quality, reliability, and safety of the Vehicles.

27     2681. Plaintiffs' reliance was reasonable, as they had no way of discerning that
28 learning the facts that Defendants had concealed or failed to disclose. Plaintiffs did

not, and could not, unravel Defendants' deception on their own.

2682. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs'' Insureds.

2683. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs would have seen such a disclosure.

2684. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2685. Had Plaintiffs known of the Thief Friendly Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

2686. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

**E.  Negligence by Words**

2687. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2688. Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

2689. Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether

or not to purchase or lease the Vehicles, and whether to take additional anti-theft precautions after such purchase or lease.

2690. Defendants manufactured the Vehicles for sale to the public and had a pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

2691. Defendants had a duty to exercise reasonable care or competence in obtaining and communicating information for the guidance of others in these business transactions.

2692. Defendants failed that duty by providing Plaintiffs' Insureds with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards. Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

2693. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction.

2694. Defendants were in a superior position to Plaintiffs' Insureds because they had knowledge about the compliance of the Vehicles to Federal standards, and about anti-theft features in each vehicle, that Plaintiffs' Insureds did not have the technical expertise or access to Defendants' manufacturing and compliance information to ascertain on their own, resulting in a great disparity of bargaining power between Defendants and Plaintiffs' Insureds.

2695. In addition, Defendants made affirmative statements on the VIN plates

that were in an open and obvious position where Plaintiffs' Insureds could see them every time they entered the driver's side of the Vehicles.

2696. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead had they known of the Thief Friendly Design in the Defendants' Vehicles.

2697. Plaintiffs' Insureds were justified in relying on the misrepresentations, omissions, and false statements of material fact made by Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold.

2698. Plaintiffs' Insureds relied on the negligent words of Defendants they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

2699. As a direct and proximate result of Defendants' negligence by words, both in concealment and failure to disclose material facts, and written statements that were not true, Plaintiffs' were obligated under policies of insurance with their Insureds to pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

## F.    Negligence

2700. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2701. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

2702. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.   This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2703. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

2704. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2705. Defendants' acted with reckless disregard for the safety of the Plaintiffs' Insureds and their property when they manufactured and sold Vehicles that they knew did not comply with the applicable Federal standards, while omitting to disclose that fact to consumers and making affirmative statements that the Vehicles did comply.

2706. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## NEW YORK STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of New York Subclasses, against All Defendants)**

2707. Class Plaintiffs, the Hyundai New York Subclass and Kia New York Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2708. The New York Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including both Kia and Hyundai Vehicles) in the State of New York due to the Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate County Mutual Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Insurance Company; Main Street America Protection Insurance Company; Old Dominion Insurance Company;  Erie Insurance Company; Erie Insurance Company of New York; Erie Insurance Exchange; Erie Insurance Property & Casualty Company; GEICO General Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Kemper Independence Insurance Company; Unitrin Direct Insurance Company; Unitrin Safeguard Insurance Company; Warner Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company; New Jersey Manufacturers Insurance Company; Progressive Max Insurance Company; Progressive Advanced Insurance Company; Progressive Casualty Insurance Company; Progressive Garden State Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in New York pursuant to policies of Insurance.

## A.    Breach of Implied Warranty (N.Y. U.C.C. Law §§ § 2-314 and § 2-315)

2709. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2710. Defendants were at all relevant times "sellers" and "merchants" with respect to motor vehicles under NY UCC §§ 2-103 and 2–104, and "Lessors  NY UCC § 2-A-103(p).

2711. Plaintiffs stand in the shoes of their Insureds, who were at all relevant times "Buyers" under NY UCC §§ 2-103(1)(a) and "Lessees" under NY UCC § 2-A-103(1)(n).

2712. The Vehicles are and were at all relevant times "goods" within the meaning of NY UCC § 2–105.

2713. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to NY UCC § 2-314, and a warranty that the Vehicles were fit for the particular purpose for which they were sold to Plaintiffs' Insureds is implied by law pursuant to NY UCC § 2-315.

2714. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs and the Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2715. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary

purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2716. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2717. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2718. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed

against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2719. Alternatively, Plaintiffs and the Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2720. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Plaintiffs' Insureds' Vehicles were and are defective, and the Thief Friendly Design in their Vehicles has not been remedied. Therefore, Plaintiffs have been damaged, in an amount to be proven at trial.

**B.    Breach of Express Warranty NY UCC §2-313**

2721. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2722. Named Subclass Members bring this count individually and on behalf of the other members of the New York Subclasses against Defendants.

2723. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles manufactured by Defendants.

2724. Through the attachment of VIN plates in an open and obvious position visible upon entry to the Vehicles, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.   On information and belief, similar written warranties were made prior to, or at the point

of sale for all Vehicles.

2725. The written statement that the Vehicles conform to all applicable Federal standards, including those for anti-theft, was an affirmation of fact and a promise of a kind that naturally would induce a buyer to purchase the Vehicles, which they might not have done had they known the Vehicles did not meet the standards as warranted.

2726. Plaintiffs' Insureds purchased or leased the Vehicles and used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2727. The Vehicles did not perform as promised in accordance with Defendants' express warranty on the VIN plates.   In fact, the Vehicles were manufactured and sold without compliance to the applicable safety and theft prevention standards in effect on the date of manufacture and can be stolen in a matter of seconds, a fact that has become common knowledge. As a result of this Thief Friendly Design, the Vehicles were in fact easily and frequently stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates.

2728. As a direct and proximate result of Defendants' breach of their express warranty, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss to Plaintiff's Insureds' Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

## C.    Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349)

2729. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2730. Plaintiffs and Plaintiffs' Insureds who are "persons" within the meaning

of N.Y. Gen. Bus. Law § 349(h).

2731. Defendants are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

2732. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law. § 349.

2733. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2734. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices under the New York DAPA in the course of their business. Specifically, Defendants owed the Plaintiffs a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

2735. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;

2736. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2737. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles;

2738. Defendants made general affirmative representations about the technological and safety innovations included with the Vehicles without telling consumers that the Vehicles had the Thief Friendly Design that would affect the

safety, quality, and performance of the Vehicles; and

2739. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2740. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design to both consumers and NHTSA, Defendants engaged in deceptive acts or practices in the conduct of business, trade or commerce, and/or in the furnishing of any service, as prohibited by N.Y. Gen. Bus. Law § 349.

2741. Defendants intended for Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2742. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, reliability, quality, and true value of the Vehicles.

2743. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on

Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

2744. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2745. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

2746. As a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information, Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

2747. Defendants' violations present a continuing risk to Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2748. Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New York DAPA.

**D.    Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350)**

2749. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein..

2750. Defendants were and are engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

2751. The New York False Advertising Act ("New York FAA") prohibits

"[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.

2752. Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known by them to be untrue and misleading to consumers, including Plaintiffs' Insureds. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

2753. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2754. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices under the New York FAA in the course of their business. Specifically, they owed Plaintiffs a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief

Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles;

d.   In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2755. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design to both consumers and NHTSA, Defendants engaged in the false and misleading advertising practices prohibited by N.Y. Gen. Bus. Law § 350.

2756. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2757. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on

Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

2758. Plaintiffs' and Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2759. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

2760. As a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information, Plaintiffs were obligated by the policies of insurance with their Insureds to pay for stolen Vehicles, or Vehicles that were damaged in the course of being stolen and suffered ascertainable losses and actual damages in amounts subject to proof at trial.

2761. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2762. Pursuant to New York FAA, Plaintiffs seek an order enjoining Defendants' false advertising practices and awarding damages and any other just and proper relief available under the New York FAA.

**E.     Fraud by Omission and Concealment**

2763. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2764. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs.

2765. Because Defendants were the designers, manufacturers and sellers of the Vehicles, and their design information and marketing schemes were not ascertainable

through publicly available sources, the Defendants had special knowledge and information regarding the Vehicles offered for sale to the Plaintiffs' Insureds that was not ascertainable by the Plaintiffs' Insureds.

2766. Defendants had a duty to disclose the Thief Friendly Design to the Plaintiffs' Insureds before the Vehicles were sold because they knew that the Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design and were relying on Defendants for information on the Vehicles features and compliance to applicable Federal standards for safety and anti-theft. Defendants further had a duty to disclose the Thief Friendly Design because:

        a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

        b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

        c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

        d.    In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

2767. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.  In addition, Defendants made affirmative representations that the Vehicle complied with Federal standards to the Plaintiffs' Insureds in the VIN plate affixed to the Vehicle in a prominent place that the driver was exposed to every time they entered the Vehicle and did not disclose to Plaintiffs' Insureds that the VIN plate compliance statement was false with respect to anti-theft standards.

2768. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle that it be compliant to applicable Federal safety and anti-theft standards, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.  Other comparable vehicles for sale in the marketplace are compliant to the Federal standards, and the Thief Friendly Design that made Defendants' Vehicles inferior to other vehicles offered for sale would be a material factor in the Plaintiffs' Insureds' decision whether to buy the Defendants' Vehicle, or one from another manufacturer that did not have the same defect.

2769. Defendants intended for the Plaintiffs to rely on their omissions and concealment by intentionally manufacturing some Vehicles with the Thief Friendly Design and then falsely marking them with the VIN plate as compliant to anti-theft standards, and then intentionally failing to disclose that information to prospective purchasers of the Vehicles.  Defendants made the affirmative statement of compliance, and knowing it to be false, they did not disclose the omitted material facts to the Plaintiffs' Insureds knowing that Plaintiffs' Insureds would rely on their representations about the Vehicle to make their buying or leasing decisions. In fact, the Plaintiffs' Insureds did rely on the Defendants' omissions of material fact and

purchased and leased the Vehicles at prices that did not reflect the vehicles' Thief Friendly Design, and in the belief that the Vehicles did not have a defect that affected the quality, reliability, safety, and value of the Vehicles.

2770. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2771. Plaintiffs' reliance was justifiable and reasonable, as they had no way of discerning the facts that Defendants had concealed or failed to disclose. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2772. Defendants actively and intentionally concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2773. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs would have seen such a disclosure.

2774. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with their Insureds to pay for stolen Vehicles, or Vehicles damaged in the course of being stolen, and incurred actual damages in an ascertainable amount subject to proof at trial.

**F.     Negligent Misrepresentation**

2775. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2776. Defendants possessed unique and specialized expertise in the features and compliance of the Vehicles because they designed and manufactured the Vehicles and were responsible for the certifications to the cognizant Federal agencies of the Vehicles' compliance to Federal standards.  As such, this placed Defendants in a

special position of confidence and trust with the Plaintiffs' Insureds and had a duty to disclose the Thief Friendly Design.

2777. In addition, Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  Having made an affirmative statement that was false, the Defendants had a duty to disclose the truth.

2778. At the time the Defendants made these statements they were aware that the Plaintiffs' Insureds would rely on Defendants' statements and proceed with their vehicle purchasing or leasing decision.  The compliance of the Vehicles to Federal standards for safety and anti-theft were material facts because the Plaintiffs' Insureds may have chosen vehicles from other manufacturers that were compliant if they had known Defendants' vehicles did mot meet the Federal standards,  or would have paid less for Defendants' vehicles and been forewarned to take additional anti-theft precautions.

2779. Defendants failed their duties to Plaintiffs' Insureds by providing them with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards.  Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

2780. Plaintiffs' Insureds had no way to obtain the information that the Vehicles were not compliant to the Federal standards for anti-theft as the information was not publicly available and could not be discerned without technical expertise and know-how they did not possess. Further, Plaintiffs' Insureds had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold. Therefore, Plaintiffs' Insureds were justified in relying on the negligent

1  misrepresentations by the Defendants when they purchased or leased their Vehicles.

2  2781. Plaintiffs' Insureds relied on the negligent words of Defendants they
3  purchased or leased Vehicles they believed were adequately protected from theft in
4  accordance with Federal standards, when in fact the Vehicles were easy to steal and
5  were stolen at a much higher incidence than other vehicles that did comply with the
6  Federal standards.

7  2782. As a direct and proximate result of Defendants' negligence by words,
8  both in concealment and failure to disclose material facts, and written statements that
9  were not true, Plaintiffs' were obligated under policies of insurance with their
10  Insureds to pay for the stolen Vehicles, or for Vehicles damaged in the course of being
11  stolen, and incurred damages of ascertainable value in an amount according to proof
12  at trial.

13  **G.  Negligence**

14  2783. Plaintiffs reallege and incorporate by reference all preceding allegations
15  as though fully set forth herein.

16  2784. The National Highway Traffic Safety Administration has a self-
17  certification system of compliance where vehicle manufacturers certify their products
18  meet applicable standards.  Defendants had a duty to the general public as
19  manufacturers and sellers of automobiles, operating in a sector subject to Federal
20  regulation for the benefit and safety of the general public, to ensure that the vehicles
21  they offered for sale were compliant to all applicable Federal standards.  This duty
22  precedes the offering of any vehicle for sale in the United States and territories subject
23  to the jurisdiction of Federal Regulations and is independent of any duties arising
24  through individual contracts for sale or lease that Defendants entered into with
25  Plaintiffs' Insureds.

26  2785. Defendants breached that duty when they negligently manufactured and
27  sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required
28  by Federal standards, containing the Thief Friendly Design.

2786. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2787. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**H.    Gross Negligence**

2788. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2789. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2790. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they

purchased or leased it for.

2791. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

2792. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

2793. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2794. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## NORTH CAROLINA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of North Carolina Subclasses, against All Defendants)

2795. Class Plaintiffs, the Hyundai North Carolina Subclass and Kia North Carolina Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2796. The North Carolina Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and

Hyundai Vehicles) in the State of North Carolina due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate County Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company; Erie Insurance Company; Erie Insurance Exchange; Government Employees Insurance Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; Infinity Insurance Company; Kemper Independence Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Nationwide Insurance Company of America; Titan Insurance Company;    Progressive American Insurance Company; Progressive Premier Insurance Company of Illinois; Progressive Southeastern Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid their respective Insureds in North Carolina pursuant to policies of Insurance.

## A.    Breach of Implied Warranty (N.C.G.S. §§ 2-314 and § 2-315)

2797. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2798. Defendants were at all relevant times "sellers" and "merchants" with respect to Vehicles under N.C.G.S. §§ 2-103 and 2–104, and "Lessors  N.C.G.S. § 2-A-103(p).

2799. Plaintiffs stand in the shoes of their Insureds, who were at all relevant times "Buyers" under N.C.G.S. §§ 2-103(1)(a) and "Lessees" under  N.C.G.S.  § 2-A-103(1)(n).

2800. The Vehicles are and were at all relevant times "goods" within the meaning of N.C.G.S. § 2–105.

2801. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.C.G.S. § 2-314, and a warranty that the Vehicles were fit for the particular purpose for which they were sold to Plaintiffs' Insureds is implied by law pursuant to N.C.G.S. § 2-315.

2802. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs and the Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2803. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2804. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles

without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2805. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2806. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2807. Alternatively, Plaintiffs and the Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2808. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Plaintiffs' Insureds' Vehicles were and are defective, and the Thief Friendly Design in their Vehicles has not been remedied. Therefore, Plaintiffs have been damaged, in an amount to be proven at trial.

**B.     Breach of Express Warranty N.C.G.S. §2-313.**

2809. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2810. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles manufactured by Defendants.

2811. Through the attachment of VIN plates in an open and obvious position visible upon entry to the Vehicles, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.   On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2812. The written statement that the Vehicles conform to all applicable Federal standards, including those for anti-theft, was an affirmation of fact and a promise of a kind that naturally would induce a buyer to purchase the Vehicles, which they might not have done had they known the Vehicles did not meet the standards as warranted.

2813. Plaintiffs' Insureds purchased or leased the Vehicles and used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2814. The Vehicles did not perform as promised in accordance with Defendants' express warranty on the VIN plates.   In fact, the Vehicles were manufactured and sold without compliance to the applicable safety and theft prevention standards in effect on the date of manufacture and can be stolen in a matter

of seconds, a fact that has become common knowledge. As a result of this Thief Friendly Design, the Vehicles were in fact easily and frequently stolen, and thus failed to perform pursuant to the terms of the express warranty described in the Vehicles' VIN plates.

2815. As a direct and proximate result of Defendants' breach of their express warranty, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss to Plaintiff's Insureds' Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

## C.   Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, et seq.)

2816. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2817. Defendants were and are engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

2818. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2819. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices under the North Carolina UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds' a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

2820. Defendants had exclusive access to and far superior knowledge about

facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds.

2821. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2822. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

2823. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design.

2824. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2825. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2826. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.C. Gen. Stat. § 75-16.

2827. Defendants intended for Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2828. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2829. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the        Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

2830. Plaintiffs' and Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiff and Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2831. Had Plaintiffs known the truth about the Thief Friendly Design, Plaintiffs would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2832. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2833. Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Vehicles remain unsafe due to the .Thief Friendly Design. Defendants' unlawful acts and practices complained of

1  herein affect the public interest.

2  2834. Pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs seek an order enjoining

3  Defendants' unfair or deceptive acts or practices and awarding damages and any other

4  just and proper relief available under the North Carolina UDTPA.

5  **D.    Negligence**

6  2835. Plaintiffs reallege and incorporate by reference all preceding allegations

7  as though fully set forth herein.

8  2836. The National Highway Traffic Safety Administration has a self-

9  certification system of compliance where vehicle manufacturers certify their products

10  meet applicable standards. Defendants had a duty to the general public as

11  manufacturers and sellers of automobiles, operating in a sector subject to Federal

12  regulation for the benefit and safety of the general public, to ensure that the vehicles

13  they offered for sale were compliant to all applicable Federal standards. This duty

14  precedes the offering of any vehicle for sale in the United States and territories subject

15  to the jurisdiction of Federal Regulations and is independent of any duties arising

16  through individual contracts for sale or lease that Defendants entered into with

17  Plaintiffs' Insureds.

18  2837. Defendants breached that duty when they negligently manufactured and

19  sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required

20  by Federal standards, containing the Thief Friendly Design.

21  2838. Defendants' negligent manufacture and sale of non-compliant vehicles

22  containing the Thief Friendly Design allowed those vehicles to be targeted for theft

23  at a much higher rate than they would have if the vehicles had not been negligently

24  manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or

25  leased from Defendants were stolen, or damaged in the course of being stolen.

26  2839. As a direct and proximate result of Defendants negligence in

27  manufacturing and selling non-compliant vehicles with the Thief Friendly Design,

28  Plaintiffs were obligated by their policies of insurance with their Insureds to make

1 payments for lost or damaged Vehicles, and incurred damages in an ascertainable
2 amount subject to proof at trial.

3 **E.     Gross Negligence**

4     2840. Plaintiffs reallege and incorporate by reference all preceding allegations
5 as though fully set forth herein.

6     2841. The National Highway Traffic Safety Administration has a self-
7 certification system of compliance where vehicle manufacturers certify their products
8 meet applicable standards.   Motor vehicles are a significant instrumentality of
9 personal injury and property damage to consumers and the general public, and as
10 designers, manufacturers and sellers of vehicles Defendants had a duty to the general
11 public to ensure that the vehicles they offered for sale were safe and did not create a
12 substantial risk to consumers.  This duty precedes the offering of any vehicle for sale
13 in the United States and territories subject to the jurisdiction of Federal Regulations
14 and is independent of any duties arising through individual contracts for sale or lease
15 that Defendants entered into with Plaintiffs' Insureds.

16     2842. Defendants breached that duty when they manufactured and sold
17 vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by
18 Federal standards, containing the Thief Friendly Design, in reckless indifference to
19 the safety of consumers and the general public, and the rights of the Plaintiffs'
20 Insureds to use a vehicle that was not unreasonably dangerous for the purposes they
21 purchased or leased it for.

22     2843. By intentionally manufacturing and selling certain vehicles with the
23 Thief Friendly Design the Defendants failed to use even slight care in the protection
24 of all their customers equally and in compliance with the Federal standards, conduct
25 that was so careless as to show reckless indifference for the rights and safety of others.

26     2844. At the time Defendants designed, manufactured, and offered for sale
27 certain vehicles with the Thief Friendly Design they made a conscious decision to
28 disregard the substantial and known risk of those vehicles being stolen in order to

make profit from the sale of the Vehicles.

2845. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2846. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## NORTH DAKOTA STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of North Dakota Subclasses, against All Defendants)**

2847. Class Plaintiffs, the Hyundai North Dakota Subclass and Kia North Dakota Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2848. The North Dakota Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of North Dakota due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; American Family Insurance Company; American Family Mutual Insurance Company, SI; Permanent General Assurance Company; GEICO General Insurance Company; GEICO Indemnity Company; Horace Mann Insurance Company; Allied Property & Casualty Insurance Company; Progressive Direct Insurance Company; Progressive

Northwestern Insurance Company; USAA Casualty Insurance Company; USAA General Insurance Company; all of whom paid policy proceeds to their respective Insureds in North Dakota pursuant to policies of Insurance.

A.    **Breach of Implied Warranty of Merchantability under N.D. Cent. Code §§ 41-02-31 and 41-02.1-21**

2849. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2850. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.D. Cent. Code §§ 41-02-31 and 41-02.1-21.

2851. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.D. Cent. Code § 41-02.04(3) and "sellers" of motor vehicles under § 41-02-03(1)(d).

2852. Defendants are and were at all relevant times "lessors" of motor vehicles under N.D. Cent. Code § 41-02.1-03(1)(q).

2853. Plaintiffs' Insureds who purchased Vehicles in North Dakota are "buyers" within the meaning of N.D. Cent. Code § 41-02-03(1)(a).

2854. Plaintiffs' Insureds who leased Vehicles in North Dakota are "lessees" within the meaning of N.D. Cent. Code § 41-02.1-03(1)(o).

2855. The Vehicles are and were at all relevant times "goods" within the meaning of N.D. Cent. Code §§ 41-02-05(2) and 41-02.1-03(1)(h).5.

2856. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable

1 federal and state laws and regulations, including FMVSS 114.

2    2857. However, the Vehicles did not comply with the implied warranty of

3 merchantability because they were defective and not in merchantable condition,

4 would not pass without objection in the trade, and were not fit for their ordinary

5 purpose of providing reasonably reliable, safe, and secure transportation at the time

6 of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly

7 Design, lacking any anti-theft features or design elements to provide an adequate theft

8 deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard

9 because the Thief Friendly Design renders Vehicles vulnerable to theft, making them

10 prime targets to be used as instrumentalities through which thieves engage in reckless

11 driving or other criminal activity.

12    2858. Any attempt by Defendants to disclaim or limit the implied warranty of

13 merchantability for their respective Vehicles vis-à-vis consumers is unconscionable

14 and unenforceable. Specifically, Defendants' warranty limitations are unenforceable

15 because Defendants knowingly sold or leased defective Vehicles without informing

16 consumers about the Thief Friendly Design. The time limits contained in Defendants'

17 warranty periods were also unconscionable and inadequate to protect Plaintiffs and

18 Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful

19 choice in determining these time limitations, the terms of which unreasonably favored

20 Defendants. A gross disparity in bargaining power existed between Defendants and

21 Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at

22 the time of sale.

23    2859. Furthermore, the circumstances described herein caused Defendants'

24 exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

25 Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of

26 warranties have denied Plaintiffs' Insureds the benefit of their respective bargains,

27 which presupposes they were (or are) able to use the Vehicles in a meaningful manner

28 without the ever–present risk of them being stolen.

2860. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2861. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2862. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

## B.  Breach of Express Warranty under N.D. Cent. Code § 41-02-30

2863. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2864. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2865. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2866. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2867. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2868. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.    Violation of North Dakota Consumer Fraud Act under N.D. Cent. Code § 51-15-02, et seq.**

2869. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2870. Defendants,  Plaintiffs and Plaintiffs' Insureds are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

2871. Defendants were and are engaged in "sale" of "merchandise" within the meaning of N.D. Cent. Code § 51-15-02(3), (5).

2872. The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use or employment by any person of any deceptive act or practice,

fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise…" N.D. Cent. Code § 51-15-02.

2873. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the North Dakota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2874. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the North Dakota CFA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

2875. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

2876. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2877. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

2878. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide

information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2879. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2880. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by N.D. Cent. Code § 51-15-02: using or employing deception, fraud, false pretense, false promise or misrepresentation, with intent that others rely thereon, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2881. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2882. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2883. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of

material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2884. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2885. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2886. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2887. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2888. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2889. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2890. Pursuant to N.D. Cent. Code Ann. §§ 51-15-07 and 51-15-09, the

Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the North Dakota CFA.

## D.     Fraud by Omission and Concealment

2891. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2892. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2893. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2894. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

2895. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

2896. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2897. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

2898. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a

known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2899. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2900. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

2901. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2902. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2903. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2904. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2905. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce,

Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2906. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2907. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2908. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

2909. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2910. Plaintiffs had a duty to the Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2911. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2912. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

2913. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

2914. As a direct and approximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**F.     Negligent Misrepresentation**

2915. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2916. In North Dakota, a claim for relief based on negligent misrepresentation arises under statute, N.D. Cent. § 9-03-08(2), as opposed to the general law of negligence. See *Bourgois v. Montana-Dakota Utilities, Co*., 466 N.W.2d 813, 818 (N.D. 1991). However, unliked actual fraud, N.D. Cent. § 9-03-08(2) states: "[t]he positive assertion, in a manner not warranted by the information of the person making it, of that which is not true through he believes it to be true," which requires no knowledge or belief in falsity, but instead only requires a statement based on insufficient evidence.

2917. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2918. Defendants were aware of the Thief Friendly Design when they

marketed and sold the Vehicles to Plaintiffs' Insureds.

2919. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

2920. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

2921. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## OHIO STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Ohio Subclasses, against All Defendants)

2922. Class Plaintiffs, the Hyundai Ohio Subclass and Kia Ohio Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2923. The Ohio Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Ohio due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, SI; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; Erie Insurance Property & Casualty Company; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO Secure Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Alpha Property & Casualty Insurance Company; American Access Casualty Company; Infinity Auto Insurance Company; Response Insurance Company; Liberty Mutual Fire Insurance Company; The Netherlands Insurance Company; Ohio Security Insurance Company; Allied Property & Casualty Insurance Company; Nationwide Mutual Fire Insurance Company; Nationwide General Insurance Company; New Jersey Manufacturers Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Specialty Insurance Company; Progressive Preferred Insurance Company; Root Insurance Company; Milbank Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Ohio pursuant to policies of insurance.

## A. Breach of Implied Warranty of Merchantability under Ohio Rev. Code Ann. §§ 1302.27 and 1310.19

2924. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2925. A warranty that the Vehicles were in merchantable condition and fit for

the ordinary purpose for which such goods are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

2926. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

2927. Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(16).

2928. Plaintiffs' Insureds who purchased Vehicles in Ohio are "buyers" within the meaning of Ohio Rev. Code §§ 1302.01(A)(1).

2929. Plaintiffs' Insureds who leased Vehicles in Ohio are "lessees" within the meaning of Ohio Rev. Code § 1310.01(A)(14).

2930. The Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

2931. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2932. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard

because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2933. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2934. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2935. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2936. Alternatively, Plaintiffs were excused from providing Defendants with

notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2937. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Ohio Rev. Code Ann. § 1302.26**

2938. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2939. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2940. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2941. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2942. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are

capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2943. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.    Violation of Ohio Consumer Sales Practices Act under Ohio Rev. Code § 1345.01. et seq.**

2944. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2945. Defendants,  Plaintiffs and Plaintiffs' Insureds are "persons" within the meaning of Ohio Rev. Code § 1345.01(B).

2946. Defendants are "supplier[s]" as defined by Ohio Rev. Code § 1345.01(C).

2947. Plaintiffs' Insureds are "consumers" within the meaning of Ohio Rev. Code § 1345.01(D), and their purchase and leases of the Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

2948. The Ohio Consumer Sales Practices Act ("Ohio CSPA") prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Ohio Rev. Code § 1345.02.

2949. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Ohio CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief

Friendly Design, as detailed above.

2950. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Ohio CSPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

2951. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

2952. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2953. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

2954. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2955. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2956. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive

business practices prohibited by Ohio CSPA:

2957. Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; and

2958. Representing that the Vehicles are of a particular standard, quality, and grade when they are not. Ohio Rev. Code § 1345.02.

2959. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2960. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2961. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2962. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2963. Had they known the truth about the Thief Friendly Design, Plaintiffs'

Insureds would not have purchased or leased the Vehicles.

2964. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2965. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2966. Plaintiffs provided notice of the issues raised in this count by letter dated March 09, 2023. Alternatively, Defendants had ample notice provided by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2967. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2968. Pursuant to Ohio Rev. Code § 1345.09, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Ohio CSPA.

**D.     Violation of Ohio Deceptive Trade Practices Act under Ohio Rev. Code § 4165.01 et seq.**

2969. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2970. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the

meaning of Ohio Rev. Code § 4165.01(D).

2971. Defendants are engaged in "the course of [their] business" within the meaning of Ohio Rev. Code § 4165.02(A).

2972. The Ohio Deceptive Trade Practices Act ("Ohio DTPA") makes unlawful deceptive trade practices. Ohio Rev. Code § 4165.02(A).

2973. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Ohio DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2974. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Ohio DTPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

2975. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

2976. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2977. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

2978. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the

Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2979. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2980. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ohio DTPA:

2981. Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

2982. Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

2983. Representing that the Vehicles are of a particular standard, quality and grade when they are not; and

2984. Advertising the Vehicles with the intent not to sell or lease them as advertised. Ohio Rev. Code § 4165.02(A).

2985. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2986. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2987. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2988. The Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2989. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

2990. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2991. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2992. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct,

Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2993. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2994. Pursuant to Ohio Rev. Code §§ 2727.02 and 4165.03, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Ohio DTPA.

**E.      Fraud by Misrepresentation, Omission and Concealment**

2995. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2996. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2997. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2998. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

2999. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

3000. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

3001. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

3002. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3003. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3004. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

3005. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3006. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3007. Defendants actively concealed and suppressed these material facts, in

whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3008. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3009. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased.

3010. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles, would have paid less for them, or taken measures to secure the vehicles from theft.

3011. As a direct and proximate result of Defendants' omissions, the Insureds purchased Vehicles highly susceptible to theft that they would not have purchased at all if the Thief Friendly Design had been disclosed to them, and those Vehicles were stolen and damaged as a result. The Insureds were also prevented, due to concealment truth, from taking measures to prevent their Vehicles from being stolen or damaged. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3012. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**F.     Negligence**

3013. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3014. Defendants owed a duty to the Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal

and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3015. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3016. Defendants breached their duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3017. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3018. As a direct and approximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## OKLAHOMA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Oklahoma Subclasses, against All Defendants)

3019. Class Plaintiffs, the Hyundai Oklahoma Subclass and Kia Oklahoma

Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3020. The Oklahoma Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Oklahoma due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Permanent General Assurance Corporation; GEICO Casualty Company; GEICO Choice Insurance Company; GEICO County Mutual Insurance Company; Government Employees Insurance Company; Horace Mann Property & Casualty Insurance Company; Charter Indemnity Company; Unitrin County Mutual Insurance Company; Infinity Insurance Company; Progressive Direct Insurance Company; Nationwide Mutual Insurance Company; Progressive Northern Insurance Company; Progressive County Mutual Insurance Company; Progressive Northwestern Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Oklahoma pursuant to policies of insurance.

## A. Breach of Implied Warranty of Merchantability under Okla. Stat. Ann. Tit. §§ 2-314 and 2A-212

3021. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3022. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Okla. Stat. Ann. Tit. §§ 2-314 and 2A-212.

3023. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Okla. Stat. Ann. tit. 12A, §§ 2-104(1) and 2-A-103(3), and

"sellers" of motor vehicles under § 2-103(1)(c).

3024. Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Ann. tit. 12A, § 2A-103(1)(p).

3025. Plaintiffs' Insureds who purchased Vehicles in Oklahoma are "buyers" within the meaning of Okla. Stat. Ann. tit. 12A, § 2-103(1)(a).

3026. Plaintiffs' Insureds who leased Vehicles in Oklahoma are "lessees" within the meaning of Okla. Stat. Ann. tit. 12A, § 2A-103(1)(n).

3027. The Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Ann. tit. 12A, §§ 2-105(1) and 2A-103(1)(h).

3028. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3029. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3030. Any attempt by Defendants to disclaim or limit the implied warranty of

merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3031. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3032. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3033. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to

believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3034. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty under Okla. Stat. Ann. tit. 12A, § 2-313**

3035. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3036. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3037. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3038. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3039. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the

1  Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable
2  anti-theft standards.

3      3040. Plaintiffs have incurred and will continue to incur damages and costs and
4  expenses, including attorney's fees, as a result of the Thief Friendly Design and
5  related breach of Defendants' breach of express warranty that the Vehicles conform
6  to theft prevention standards.

7  **C.     Violation of Oklahoma Consumer Protection Act under Okla. Stat. Ann.**
8  **tit. 15, § 751, et seq.**

9      3041. Plaintiffs reallege and incorporate by reference all preceding allegations
10  as though fully set forth herein.

11     3042. Defendants,  Plaintiffs and Plaintiffs' Insureds are "persons" within the
12  meaning of Okla. Stat. tit. 15, § 752(1).

13     3043. Defendants were and are engaged in "consumer transactions" within the
14  meaning of Okla. Stat. tit. 15, § 752(2).

15     3044. The Vehicles are "merchandise" within the meaning of Okla. Stat. tit.
16  15, § 752(7).

17     3045. The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits
18  deceptive and unfair trade practices.

19     3046. In the course of their business, Defendants, through their agents,
20  employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and
21  intentionally misrepresenting, omitting, concealing, and/or failing to disclose material
22  facts regarding the quality, reliability, and safety of the Vehicles and the Thief
23  Friendly Design, as detailed above.

24     3047. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from
25  unfair or deceptive practices under the Oklahoma CPA in the course of their business.
26  Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material
27  facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

28     3048. Defendants had exclusive access to and far superior knowledge about

facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

3049. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

3050. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

3051. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3052. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3053. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Okla. Stat. tit. 15, § 753:

3054. Representing that the Vehicles are approved and certified as safe and reliable;

3055. Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

3056. Advertising the Vehicles are safe and free from defects, with the intent

1  not to sell or lease them as advertised; and

2  3057. Engaging in the immoral, unethical, oppressive, unscrupulous, or
3  substantially injurious behavior to consumers described above, which offends
4  established public policy. Okla. Stat. tit. 15, §§ 753(5), (7), (8), and (20).

5  3058. Defendants intended for Plaintiffs' Insureds to rely on them to provide
6  adequately designed Vehicles, and to honestly and accurately reveal the safety
7  hazards described above.

8  3059. Defendants' unfair and deceptive acts or practices were designed to
9  mislead and had a tendency or capacity to mislead and create a false impression in
10  consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles
11  were not affected by the Thief Friendly Design. Indeed, those misrepresentations,
12  concealments, omissions, and suppressions of material facts did in fact deceive
13  reasonable consumers, including the Plaintiffs' Insureds, about the true safety and
14  reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

15  3060. Defendants' misrepresentations, concealments, omissions, and
16  suppressions of material facts regarding the Thief Friendly Design and true
17  characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to
18  purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were
19  exposed to those misrepresentations, concealments, omissions, and suppressions of
20  material facts, and relied on Defendants' misrepresentations that the Vehicles were
21  safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would
22  view the Vehicles' non-compliance with basic anti-theft and safety standards as a
23  material fact that would influence their decision to purchase a Vehicle.

24  3061. Plaintiffs' Insureds' reliance was reasonable, as they had no way of
25  discerning that Defendants' representations were false and misleading and/or
26  otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above.
27  Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their
28  own.

3062. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles.

3063. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3064. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3065. Plaintiffs provided notice to Defendants of all issues raised in this count and this Complaint on March 09, 2023.  Notice was also provided by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

3066. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3067. Pursuant to Okla. Stat. tit. 15, § 761.1, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Oklahoma CPA.

**D.    Fraud by Omission and Concealment**

3068. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3069. Defendants' misleading representations include affirmative statements

that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3070. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3071. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

3072. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

3073. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

3074. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

3075. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3076. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3077. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3078. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3079. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3080. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3081. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3082. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, and that was highly likely to be stolen, unbeknownst to the Insureds.

3083. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles, would have paid less for them, or could have taken measures to counter the Thief Friendly Design.

3084. As a direct and proximate result of Defendants' omissions, the Insureds

purchased Vehicles that they would not have purchased if the Thief Friendly Design had been disclosed to them, and their Vehicles were stolen and damaged due to the Thief Friendly Design. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3085. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

3086. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3087. Plaintiffs owed a duty to the Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3088. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3089. Defendants breached those duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3090. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for

theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3091. As a direct and approximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## F.   Negligent Misrepresentation

3092. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3093. In Oklahoma, a claim for relief based on negligent misrepresentation arises under statute, Okla. Stat. Tit. 15 § 58, as opposed to the general law of negligence. See Farrar v. Chitwood, 282 P. 2d 729 (Sup. Ct. Okla. 1955). However, unlike actual fraud, Okla. Stat. Tit. 15 § 58(2) states: "[t]he positive assertion in a manner not warranted by the information of the person making it, of that which is not true through he believes it to be true," which requires no knowledge or belief in falsity, but instead only requires a statement based on insufficient evidence. No intent is required.

3094. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3095. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3096. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time

they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3097. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3098. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## OREGON STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of Oregon Subclasses, against All Defendants)**

3099. Class Plaintiffs, the Hyundai Oregon Subclass and Kia Oregon Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3100. The Oregon Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Oregon due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance

Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; GEICO Casualty Company; GEICO Choice Insurance Company; GEICO Secure Insurance Company; Government Employees Insurance Company; Alpha Property & Casualty Insurance Company; Unitrin Safeguard Insurance Company; Valley Property & Casualty Insurance Company; Allied Property & Casualty Insurance Company; Nationwide Affinity Insurance Company of America; Nationwide Mutual Insurance Company; New Jersey Manufacturers Insurance Company; PEMCO Mutual Insurance Company; Artisan and Truckers Casualty Company; Progressive Classic Insurance Company; Progressive Direct Insurance Company; Progressive Universal Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Oregon pursuant to policies of insurance.

**A.      Breach of Implied Warranty of Merchantability (ORS §72.3140)**

3101. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3102. Pursuant to ORS §72.3140, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

3103. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under ORS § 72.1040

3104. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under ORS §72A.1030(1)(p).

3105. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in Oregon and are therefore "buyers" within the meaning of ORS § 72.1030(1)(a).

3106. Plaintiffs and Subclass Members stand in the shoes of their Insureds,

who leased Vehicles in Oregon and are therefore "lessees" within the meaning of ORS §72A.1030(1)(n).

3107. The Vehicles are and were at all relevant times "goods" within the meaning of ORS § 72.1050(1).

3108. Defendants knew or had reason to know the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3109. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, available, and/or secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles contained the Thief Friendly Design, lacked any anti-theft features or design elements to provide an adequate theft deterrent, or other means sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3110. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants'

warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of the sale.

3111. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner prior to being stolen, or without the ever-present risk of them being stolen. Any remedy that has been proposed or offered to date has proven to be inadequate, and at a minimum, does not compensate Plaintiffs for the losses incurred due to the Thief Friendly Design.

3112. On March 9, 2023, Plaintiffs and the Subclass Members provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public.

3113. Alternatively, Plaintiffs and the Subclass Members were excused from providing Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged throughout this Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly

Design if they presented their Vehicles to them for repair. Nor is any such repair possible or effective for Vehicles already stolen.

3114. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.    Breach of Express Warranty (ORS § 72.3130)**

3115. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3116. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3117. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3118. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3119. The Vehicles did not perform as promised in accordance with Defendants' express warranty as they are capable of being stolen in a matter of seconds, and that fact has become common knowledge. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described

in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3120. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' conduct.

## C.     Violation of Oregon's Unlawful Trade Practices Act (ORS § 646.607)

3121. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3122. Defendants, Plaintiffs, Plaintiffs' Insureds, and Subclass Members are "persons" within the meaning of ORS § 646.605(4).

3123. The Oregon Trade Practices Act ORS § 646.607 ("Oregon UTPA") states that it is unlawful trade practice to employ unconscionable tactics in connection with selling goods.

3124. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Oregon UPTA by unconscionably misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3125. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Oregon UTPA in the course of their business. Specifically Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

> a.     Defendants expressly warranted that the Vehicles conformed with applicable anti-theft standards when that was not true due to the Thief Friendly Design of the Vehicles;
>
> b.     Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants

knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c. Given the hidden and technical nature of the Thief Friendly Design, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

d. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the Insureds who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles, as any consumer would hesitate to purchase a vehicle so easy to steal that it did not meet federal or industry standards for anti-theft protection; and

e. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the Insureds that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to the Insureds, Defendants had the duty to disclose the whole truth.

3126. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce Insureds to purchase the Vehicles.

3127. By misrepresenting the Vehicles as safe, reliable, and compliant with applicable anti-theft standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of

trade or commerce, as prohibited by the Oregon UTPA.

3128. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3129. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

3130. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those Vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles.

3131. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

3132. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them, and if purchased, could have taken precautions against theft.

3133. Plaintiffs suffered ascertainable losses and actual damages as a direct and

proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3134. Defendants' violations present a continuing risk to Plaintiffs, their Insureds, as well as the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3135. Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Oregon UTPA

**D.    Fraud**

3136. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3137. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3138. Having been aware of the Thief Friendly within the Vehicles while making affirmative false statements as to the Vehicles compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

      a.    Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

      b.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c.   Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

d.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.   Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

3139. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3140. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds.

3141. Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles

at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

3142. The Insureds' reliance was reasonable and justified, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

3143. Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3144. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

3145. Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3146. Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or deter theft of the Vehicles on their own.

3147. As a direct and proximate result of Defendants' omissions, the Insureds Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

3148. Defendants' acts were done with a conscious disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an

amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**E.    Negligence**

3149. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3150. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3151. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

3152. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3153. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

3154. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

**F.    Gross Negligence**

3155. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3156. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3157. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

3158. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3159. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

3160. As a result of Defendants' failure to exercise reasonable care, Plaintiffs

and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

3161. Defendants' acted with reckless disregard of safety and indifference to the probable consequences of Defendants' acts. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## PENNSYLVANIA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Pennsylvania Subclasses, against All Defendants)

3162. Class Plaintiffs, the Hyundai Pennsylvania Subclass and Kia Pennsylvania Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against all Defendants.

3163. The Pennsylvania Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Hyundai and Kia Vehicles) in the Commonwealth of Pennsylvania due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Insurance Company; Main Street American Protection Insurance Company; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; First Chicago Insurance Company; GEICO Advantage Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Horace Mann Property & Casualty Insurance Company; Infinity Auto Insurance Company; Unitrin Safeguard Insurance Company; Ohio Security Insurance Company; Peerless Indemnity Insurance Company; Nationwide Affinity Insurance Company of America; Nationwide Property & Casualty Insurance Company; Victoria Fire & Casualty Company; New Jersey Manufacturers Insurance Company; Progressive Advanced Insurance Company;

Progressive Preferred Insurance Company; Progressive Specialty Insurance Company; Progressive Garden State Insurance Company; General Casualty Company of Wisconsin; Root  Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Pennsylvania pursuant to policies of insurance.

## A.    Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212)

3164. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3165. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

3166. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(c), and "sellers" of motor vehicles under § 2103(a).

3167. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

3168. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in Pennsylvania and are therefore "buyers" within the meaning of 13 Pa. Cons. Stat. § 2103(a).

3169. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who leased Vehicles in Pennsylvania and are therefore "lessees" within the meaning of 13 Pa. Cons. Stat. § 2A103(a).

3170. The Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

3171. Defendants knew or had reason to know of the specific use for which the

Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3172. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3173. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1 the time of the sale.

2     3174. Furthermore, the circumstances described herein caused Defendants'
3 exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and
4 Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of
5 warranties have denied Plaintiffs' Insureds the benefit of their respective bargains,
6 which presupposes they were (or are) able to use the Vehicles in a meaningful manner
7 without the ever-present risk of them being stolen.  Any remedy that has been
8 proposed or offered to date has proven to be inadequate, and at a minimum, does not
9 compensate Plaintiffs for the losses incurred due to the Thief Friendly Design.

10     3175. On March 9, 2023, Plaintiffs and the Subclass Members provided
11 Defendants with reasonable notice and opportunity to cure the breaches of their
12 implied warranties. Additionally, all Defendants were provided notice and
13 opportunity to cure the issues raised in this count and this Complaint by governmental
14 investigations, numerous complaints filed against them, internet videos, news reports,
15 and the many individual notice letters sent by Plaintiffs within a reasonable amount
16 of time after the allegations of Vehicle defects became public.

17     3176. Alternatively, Plaintiffs and the Subclass Members were excused from
18 providing Defendants with notice and an opportunity to cure the breach, because it
19 would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have
20 long known that the Vehicles contained the Thief Friendly Design; yet have failed to
21 cure, remedy, or repair the breach. As such, neither Plaintiffs or their Insureds had
22 any reason to believe that Defendants would have adequately repaired the Thief
23 Friendly Design if they presented their Vehicles to them for repair.

24     3177. As a direct and proximate result of Defendants' breach of the implied
25 warranties, the Insureds' vehicles were and are defective, and the Thief Friendly
26 Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount
27 to be proven at trial.

28

**B.      Breach of Express Warranty (13 Pa. Cons. Stat. §§ 2313, 2A210, *et seq.*)**

3178. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3179. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3180. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3181. The statements on the VIN plates as to the Vehicles' compliance with safety and anti-theft regulations are affirmations of fact and/or promises made by Defendants to Plaintiffs' Insured.  Those statements amounts to an express warranty under 13 Pa. Cons. Stat. § 2313(a)(1) and § 2A210.

3182. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3183. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3184. All Defendants were provided notice and ample opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. To date, Defendants have failed to remedy the problem and, as a result, thefts continue to escalate.  While Defendants have suggested they are attempting to remedy the Thief Friendly Design, any remedy offered to date is ineffective, and fails to comply with anti-theft standards.

3185. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related to Defendants' breach of their express warranty.

**C.   Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. §§ 201-1, *et seq.*)**

3186. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3187. Defendants, Plaintiffs, Plaintiffs' Insureds, and Subclass Members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

3188. Plaintiffs' Insureds purchased their Vehicles primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

3189. Defendants were and are engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

3190. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

3191. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief

Friendly Design, as detailed above.

3192. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Pennsylvania CPL in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

    a.    Defendants expressly warranted that the Vehicles conformed with applicable anti-theft standards when that was not true due to the Thief Friendly Design of the Vehicles;

    b.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    c.    Given the hidden and technical nature of the Thief Friendly Design, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    d.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the Insureds who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

    e.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the Insureds that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about

1   the Vehicles that they marketed and offered for sale and lease to
2   the Insureds, Defendants had the duty to disclose the whole truth.

3   3193. As detailed above, the information concerning the Thief Friendly Design
4   was known to Defendants at the time of advertising and selling the Vehicles, all of
5   which was intended to induce Insureds to purchase the Vehicles.

6   3194. By misrepresenting the Vehicles as safe, reliable, and compliant with
7   applicable anti-theft standards, and by failing to disclose and actively concealing the
8   dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or
9   more of the following unfair or deceptive business practices prohibited by 73 Pa.
10  Cons. Stat. § 201-2(3):

11          a.   Representing that the Vehicles have characteristics, uses, benefits,
12               and qualities which they do not have;

13          b.   Representing that the Vehicles are of a particular standard, quality,
14               and grade when they are not;

15          c.   Advertising the Vehicles with the intent not to sell or lease them
16               as advertised; and

17          d.   Engaging in any other fraudulent or deceptive conduct which
18               creates a likelihood of confusion or of misunderstanding regarding
19               the Vehicles.

20  73 Pa. Cons. Stat. § 201-1(4)(v), (vii), (ix) and (xxi).

21  3195. Defendants intended for Plaintiffs' Insureds to rely on them to provide
22  adequately designed Vehicles, and to honestly and accurately reveal the safety
23  hazards described above.

24  3196. Defendants' unfair or deceptive acts or practices were designed to
25  mislead and had a tendency or capacity to mislead and create a false impression in
26  consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles
27  were not affected by the Thief Friendly Design. Indeed, those misrepresentations,
28  concealments, omissions, and suppressions of material fact did in fact deceive

reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

3197. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those Vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles.

3198. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

3199. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them, and if purchased, could have taken precautions against theft.

3200. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3201. Defendants' violations present a continuing risk to Plaintiffs, their Insureds, as well as the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3202. Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair and/or deceptive acts or practices and any other just and proper relief available under the

Pennsylvania CPL.

## D. Fraud by Omission and Concealment

3203. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3204. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3205. Having been aware of the Thief Friendly within the Vehicles while making affirmative false statements as to the Vehicles compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

    b.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    c.    Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

    d.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.  Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

3206. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3207. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

3208. Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

3209. The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

3210. Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3211. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

3212. Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3213. Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or deter theft of the Vehicles on their own.

3214. As a direct and proximate result of Defendants' omissions, the Insureds Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

3215. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**E.     Negligence**

3216. Plaintiffs reallege and incorporate by reference all allegations as if fully set forth herein.

3217. Defendants manufactured, distributed and sold the Vehicles to Plaintiffs'

Insureds.

3218. Defendants owed the Insureds a duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3219. Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

3220. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3221. Defendants breached that duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3222. The Defendants' violation of their duties owed to Plaintiffs' Insureds under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

3223. As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

**F.     Negligent Misrepresentation**

3224. Plaintiffs reallege and incorporate by reference all allegations as if fully set forth herein.

3225. Defendants made representations to Plaintiffs' Insureds concerning the safety and quality of the Vehicles that were not true, as more fully alleged in the preceding paragraphs.

3226. Those misrepresentations were made with the intent of inducing the Insureds into purchasing Vehicles.

3227. Defendants had no reasonable grounds for believing these representations were true when they made them, yet they intended that Plaintiffs' Insureds rely on the misrepresentations.

3228. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants.

## PUERTO RICO LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Puerto Rico Subclasses, against All Defendants)

3229. Class Plaintiffs, the Hyundai Puerto Rico Subclass and Kia Puerto Rico Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3230. The Puerto Rico Subclasses are comprised of Members of both nationwide classes with claims (including Kia and Hyundai Vehicles) arising in Puerto Rico including, but not limited to, the following named Class Plaintiffs:  Erie Insurance Company; Erie Insurance Exchange; GEICO Casualty Company; GEICO General Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Liberty Mutual Fire Insurance Company; New Jersey Manufacturers Insurance Company; Progressive Specialty Insurance Company;

Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Puerto Rico pursuant to policies of Insurance.

## A.    Breach of Implied Warranty of Merchantability (P.R.Laws Ann. tit. 31, § 3841)

3231. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3232. Defendants designed, built, advertised, sold and/or leased the Vehicles, which were bought or leased by Plaintiffs' Insureds. Defendants are accordingly "vendors" within the meaning of P.R.Laws Ann. tit. 31, § 3841.

3233. In the alternative, if Defendants were not the sellers of the Vehicles to Plaintiffs' Insureds, then Plaintiffs' Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Plaintiffs' Insureds.

3234. Plaintiffs' Insureds are "vendees" within the meaning of P.R.Laws Ann. tit. 31, § 3841 because they purchased or leased the Vehicles from Defendants.

3235. Plaintiffs, upon making payments to their Insureds for damages and losses which they sustained, and which were covered under the insurance policies issued to them by the Plaintiffs, acquired the rights of their Insureds under policy provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of their Insureds and are authorized to pursue all claims and causes of action belonging to their Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by the Plaintiffs.

3236. Defendants warranted that the Vehicles were free of any hidden defects that would have caused Plaintiffs' Insureds not to have purchased or leased the Vehicles, or purchased or leased the Vehicles at a lower price pursuant to P.R.Laws

Ann. tit. 31, § 3841.

3237. This implied warranty included, among other things, a warranty that the Vehicles manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state law and regulations, including FMVSS 114.

3238. It is reasonably likely that Plaintiffs' Insureds relied on the existence and length of the implied warranties in deciding whether to purchase or lease the Vehicles, or have done so at a lower price.

3239. However, the Vehicles were not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Vehicles were defective and not in merchantable condition, and were not reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles were plagued by the Theft Friendly Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a severe and highly dangerous risk of vehicle theft and causing the Vehicles to be prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3240. Due to the highly technical and invisible nature of the Vehicles' designs, Plaintiffs' Insureds were reasonably unaware of the Easy-to-Steal defect.

3241. As a direct and proximate result of Defendants' breaches of their implied warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, for which the Defendants are liable.

**B.     Breach of Express Warranty**

3242. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3243. These Vehicles were manufactured by Defendants during the relevant

time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3244. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3245. After the Insureds purchased or leased the Hyundai and Kia branded Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3246. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds.  Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture.  As a result of that Thief Friendly Design, the Vehicles were easily stolen, and thus failed to conform to the terms of the express warranty described in the Vehicles' VIN plates.

3247. Plaintiffs were not required to provide notice of the Thief Friendly Design prior to the vehicles being stolen and/or damaged. Nevertheless, Plaintiffs provided written notice to Defendants of the Thief Friendly Design, and further notice of the Thief Friendly Design was provided in conjunction with numerous cases being filed regarding the same Thief Friendly Design in actions around the county.  While Defendants have suggested that they are attempting to remedy the Thief Friendly

Design, any remedy offered to date is ineffective, and fails to comply with anti-theft standards.

3248. Plaintiffs and their Insureds have incurred and will continue to incur damages and costs and expenses as a result of the Thief Friendly Design and related breach of Defendants' express warranty.

**C.    Violation of the Rule 7 of Puerto Rico Rules Against Misleading Practices and Advertisements**

3249. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3250. Defendants engaged in and caused others to engage in deceptive trade practices in Puerto Rico.

3251. Puerto Rico law prohibits false or misleading ads or practices under Rule 7 (A) and (B) which provide that (A) false or misleading ads or practices are banned; and (B) the term misleading practices includes, among other things, the following: representing or expressing an act or an offer if such declaration is misleading or false, or has the tendency or capacity of creating confusion, or does not have the sufficient information to support itself or hides a relevant fact.

3252. Defendants' deceptive trade practices included but were not limited to knowingly making false representations as to the Vehicles' compliance with all applicable safety and anti-theft standards; and failing to disclose material information concerning the Vehicles. The material information Defendants failed to disclose includes the fact that the Vehicles contained no anti-theft features or design elements that would prevent the Vehicles from achieving either forward self-mobility or steering without a key, and the fact that the Vehicles suffer from defective design(s) and/or manufacturing defect(s) that render them vulnerable to an abnormally high risk of theft.

3253. Defendants also fraudulently concealed the non-compliant nature of their vehicles, which were made in violation of federal safety and anti-theft requirements.

3254. Defendants' failure to disclose such information was intended to induce the Plaintiffs to enter into transactions for the sale of dangerous and defective vehicles that do not have adequate theft protection or comply with FMVSS 114 and failed to warn consumers of the consequent severe risk of theft.

3255. Defendants' misrepresentations, false representations, fraudulent concealment, and omissions concerning the Vehicles were materially false statements that induced the Insureds into purchasing Vehicles, and failing to take appropriate precautions to prevent the Vehicles from being stolen.

3256. Defendants intentionally failed to disclose and actively concealed the fact that the Vehicles were defective and also did not comply with FMVSS 114. In marketing materials, Defendants often advertised that higher-end trim packages came with a "push button start" feature rather than a traditional turn-key ignition. However, Defendants did not inform consumers that the Vehicles were being sold without adequate anti-theft protection to safeguard life and property, or that such protection was required by the federal government. Defendants long have provided immobilizers as standard technology in select higher-end models and as a feature in higher-end trim packages on other models. Meanwhile, the lower-end trim packages of those same models were manufactured and sold without an immobilizer or any other anti-theft feature or design element that would prevent theft and satisfy FMVSS 114.

3257. The material information Defendants failed to disclose was information Defendants knew at the time of their advertisement or sale of the Vehicles.

3258. Defendants' deceptive trade practices significantly impacted the Municipalities of Puerto Rico and their citizens, including the Insureds in Puerto Rico, and they continue to be directly affected by Defendants' deceptive trade practices.

3259. Defendants engaged in bad faith conduct in their deceptive trade practices meaning they acted fraudulently, willfully, knowingly, and/or intentionally, causing damages and losses to the Plaintiffs.

3260. Defendants intended to deceive consumers with their promotional

materials, sales, and other conduct used to sell the Vehicles. This intent is clear based on, among other things, the fact that Defendants were well aware of the need for anti-theft protection, and crafted promotional materials that failed to disclose this need, and requirement, while promoting expensive trim packages.

3261. Had the omitted information been disclosed, Plaintiffs would have behaved differently by avoiding injury caused by the defective Vehicles.

3262. As a direct and proximate result of Defendants' aforesaid fraud, PLAINTIFFS suffered property damage, including the loss of use thereof, and other damages for which the Defendants, and each of them, are liable.

**D.     Fraud based on Misstatements, Omissions and Concealment**

3263. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3264. Defendants engaged in and caused others to engage in consumer fraud and deceptive trade practices in violation of common law rules against fraud.

3265. During the relevant period as set forth above, the Defendants, individually and through both legitimate and illegitimate means, marketed vehicles with the purpose and intent of representations, omissions, and/or practices to deceive and mislead consumers regarding the Thief Friendly Design.

3266. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.  In reality, however, the Vehicles do not comply with such standards.

3267. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3268. Having been aware of the Thief Friendly Design while claiming the Vehicles complied with all applicable anti-theft or safety standards, and having known that the Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Easy-to-Steal Defect to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty

to disclose the Easy-to-Steal Defect because:

        a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Easy-to-Steal Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

        b.    Given the Easy-to-Steal Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Easy-to-Steal Defect on their own;

        c.    Defendants knew that the Easy-to-Steal Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Easy-to-Steal Defect would have been a material fact to the Plaintiffs' decisions to buy or lease the Vehicles; and

        d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Easy-to-Steal Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3269. In breach of their duties, Defendants failed to disclose the Thief Friendly Design in connection with the sale of the Vehicles.

3270. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important to know that the Vehicles did not comply with applicable safety and anti-theft standards in purchasing, leasing, or retaining a new or used motor vehicle,  and because it directly

1 impacts the value of the Vehicles purchased or leased by the Plaintiffs.

2 3271. As a direct and proximate result of the Insureds' reliance upon
3 Defendants' misrepresentations and omissions, they overpaid for the Vehicles, would
4 not have purchased the Vehicles at all had they known of the defects, and were
5 prevented from taking any action to prevent the Vehicles from being stolen.
6 Accordingly, Defendants are liable to Plaintiffs for their damages.

7 3272. Defendants actively concealed and suppressed these material facts, in
8 whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid
9 costly recalls that would expose them to liability for those expenses and harm the
10 commercial reputations of Defendants and their products. They did so at the expense
11 of Plaintiffs and Plaintiffs.

12 3273. Defendants' acts were done maliciously, oppressively, deliberately, with
13 intent to defraud; in reckless disregard of the Plaintiffs' and their Insureds' rights
14 including under Rule 7 of Puerto Rico Rules Against Misleading Practices and
15 Advertisements

16 **E.    Negligence**

17 3274. Plaintiffs reallege and incorporate by reference all preceding allegations
18 as though fully set forth herein.

19 3275. Defendants manufactured, distributed and sold the Vehicles to Plaintiffs'
20 Insureds.

21 3276. Defendants owed the Insureds a duty of care included, at a minimum, the
22 manufacture and sale of vehicles that fully complied with all federal and industry
23 safety and anti-theft standards; and failing that, Defendants owed a duty to disclose
24 the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and
25 miscreants in a matter of seconds.

26 3277. Defendants violated applicable industry standards and otherwise failed
27 to exercise reasonable care in connection with their manufacture, distribution and sale
28 of the Vehicles.

3278. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3279. Defendants breached that duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3280. The Defendants' violation of their duties owed to Plaintiffs' Insureds under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

3281. As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

## RHODE ISLAND STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Rhode Island Subclasses, against All Defendants)

3282. Class Plaintiffs, the Hyundai Rhode Island Subclass and Kia Rhode Island Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3283. The Rhode Island Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Rhode Island due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate

Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; GEICO Advantage Insurance Company; GEICO General Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Horace Mann Property & Casualty Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Progressive Advanced Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; who paid policy proceeds to their respective Insureds in Rhode Island pursuant to policies of insurance.

**A.      Breach of Implied Warranty of Merchantability (R.I. Gen. Laws 1956, §§ 6A-1-201, 6A-2-314, *et seq.*)**

3284. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3285. Defendants were, at all relevant times: the manufacturers, distributors, and warrantors of the Vehicles; "merchants" of motor vehicles under R.I. Gen. Laws § 6A-2-104; and "seller" of motor vehicles under R.I. Gen. Laws § 6A-2-103(a)(4).

3286. In the alternative, if Defendants were not the sellers of the Vehicles to Plaintiffs' Insureds, then Plaintiffs' Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Plaintiffs' Insureds.

3287. Plaintiffs' Insureds who purchased Vehicles are "buyers" within the meaning of R.I. Gen. Laws § 6A-2-103(a)(1).

3288. Plaintiffs' Insureds who leased Vehicles are "lessees" within the meaning of R.I. Gen. Laws § 6A-2-103(n).

3289. Plaintiffs, upon making payments to their Insureds for damages and

losses which they sustained, and which were covered under the insurance policies issued to them by the Plaintiffs, acquired the rights of their Insureds under policy provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of their Insureds and are authorized to pursue all claims and causes of action belonging to their Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by the Plaintiffs.

3290. The Vehicles were at all relevant times "goods" within the meaning of R.I. Gen. Laws § 6A-2-103(g).

3291. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to R.I. Gen. Laws § 6A-2-314.

3292. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

3293. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.

3294. This implied warranty included, among other things, a warranty that the Vehicles manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state law and regulations, including FMVSS 114.

3295. Defendants' warranties were designed and intended for the benefit of Plaintiffs' Insureds as the ultimate consumers and users of the Vehicles.

3296. It is reasonably likely that Plaintiffs' Insureds relied on the existence and length of the implied warranties in deciding whether to purchase or lease the Vehicles.

3297. However, the Vehicles were not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Vehicles were defective and not in merchantable condition, and were not

reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles were plagued by the Theft Friendly Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a severe and highly dangerous risk of vehicle theft and causing the Vehicles to be prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3298. Defendants' actions, as complained of herein, breached the implied warranty that the Vehicles were of merchantable quality and fit for their ordinary and intended use.

3299. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Theft Friendly Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Theft Friendly Defect at the time of sale.

3300. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs Insureds' may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Plaintiffs' Insureds the benefit of Plaintiffs' Insureds' bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3301. Plaintiffs and Plaintiffs' Insureds were excused from providing

Defendants with notice and an opportunity to cure the breaches, because notice would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Easy-to-Steal Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs and Plaintiffs' Insureds had no reason to believe that Defendants would have adequately repaired the Easy-to-Steal Defect if they presented their Vehicles to Defendants for repair.

3302. As a direct and proximate result of Defendants' breaches of their implied warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, for which the Defendants are liable.

**B.     Breach of Express Warranty (R.I. Gen. Laws 1956, §§ 6A-1-201, 6A-2-313, et seq.)**

3303. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

3304. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3305. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3306. Defendants' statements about the Vehicles' compliance with all applicable safety and anti-theft standards were affirmative and factual by their nature. Accordingly, Defendants became the basis for the bargains with Plaintiffs' Insureds to buy or lease the Vehicles.

3307. The Vehicles did not comply with all applicable safety and anti-theft

standards as Defendants' stated. In actuality, the Vehicles had a design defect resulting in the Vehicles being easy to steal.

3308. As described above, thieves took advantage of the design flaw. Defendant incurred, as result, significant monetary damages related to Insureds' Hyundai and Kia branded Vehicles being stolen and damaged through exploitation of the design flaw.

**C.     Violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act (RI Gen L § 6-13.1-11, *et seq.*)**

3309. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

3310. Defendants and Plaintiffs are "persons" within the meaning of RI Gen. L § 6-13.1-11(3).

3311. The Rhode Island Unfair Trade Practice and Consumer Protection Act ("RI CPA") makes unlawful the "any act or practice that is unfair or deceptive to the consumer." RI Gen. L § 6-13.1-11(6)(xiii).

3312. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the RI CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft Friendly Defect, as detailed above.

3313. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices under the RI CPA in the course of their business. Specifically, Defendants owed the Plaintiffs a duty to disclose all the material facts concerning the Theft Friendly Defect in the Vehicles because, as detailed above:

> a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Friendly Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;

b. Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Friendly Defect on their own;

c. Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3314. As detailed above, the information concerning the Theft Friendly Defect was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3315. Defendants engaged in one or more of the following unlawful acts or practices prohibited by RI Gen. L § 6-13.1-11: using or employing deception, fraud, false pretense, false promise, misrepresentation, unfair practice, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

3316. Defendants intended for Plaintiffs to rely on them to provide adequately

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3317. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft Friendly Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3318. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Friendly Defect and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

3319. Plaintiffs' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Theft Friendly Defect, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3320. Had they known the truth about the Theft Friendly Defect, Plaintiffs would not have purchased or leased the Vehicles, or would have paid significantly less for them.

3321. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3322. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft Friendly

Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3323. Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the RI CPA.

**D.      Fraud by Omission and Concealment**

3324. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3325. Defendants were aware of the Theft Friendly Defect when they marketed and sold the Vehicles to Plaintiffs.

3326. Having been aware of the Theft Friendly Defect within the Vehicles, and having known that Plaintiffs could not have reasonably been expected to know of the Theft Friendly Defect, Defendants had a duty to disclose the Theft Friendly Defect to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft Friendly Defect because:

> a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Friendly Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;
>
> b.      Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Friendly Defect on their own;
>
> c.      Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

      d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3327. In breach of their duties, Defendants failed to disclose the Theft Friendly Defect to Plaintiffs in connection with the sale of the Vehicles.

3328. For the reasons set forth above, the Theft Friendly Defect within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs.

3329. Defendants intended for the Plaintiffs to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft Friendly Defect that would affect the quality, reliability, and safety of the Vehicles.

3330. Plaintiffs reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3331. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs.

3332. If Defendants had fully and adequately disclosed the Theft Friendly Defect to consumers, Plaintiffs would have seen such a disclosure.

3333. Through their omissions and concealment with respect to the Theft Friendly Defect within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3334. Had Plaintiffs known of the Theft Friendly Defect within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

3335. As a direct and proximate result of Defendants' omissions, Plaintiffs either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Theft Friendly Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

3336. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**E.     Negligence**

3337. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3338. Defendants manufactured, advertised, distributed, sold, and/or leased the Vehicles. Plaintiffs' Insureds purchased and leased the Vehicles.

3339. Accordingly, Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.  In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and their Insureds.

3340. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that

fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3341. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3342. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3343. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

3344. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

3345. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

3346. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

**F.      Negligent Misrepresentation**

3347. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3348. Defendants were aware of the Theft Friendly Defect when they marketed and sold the Vehicles to Plaintiffs.

3349. Having been aware of the Theft Friendly Defect within the Vehicles, and having known that Plaintiffs could not have reasonably been expected to know of the Theft Friendly Defect, Defendants had a duty to disclose the Theft Friendly Defect to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft Friendly Defect because:

      a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Friendly Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;

      b.    Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Friendly Defect on their own;

      c.    Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

      d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they

1  volunteered to provide information about the Vehicles that they

2  marketed and offered for sale and lease to consumers, HMA and

3  KA had the duty to disclose the whole truth.

4  3350. In breach of their duties, Defendants failed to disclose the Theft Friendly

5  Defect to Plaintiffs in connection with the sale of the Vehicles.

6  3351. For the reasons set forth above, the Theft Friendly Defect within the

7  Vehicles is material to the sale of the Vehicles because a reasonable person would

8  find it important in purchasing, leasing, or retaining a new or used motor vehicle and

9  because it directly impacts the value of the Vehicles purchased or leased by the

10  Plaintiffs.

11  3352. Had Plaintiffs and their Insureds known of the Theft Friendly Defect

12  within the Vehicles, they would not have purchased the Vehicles or would have paid

13  less for them.

14  3353. As a direct and proximate result of Defendants' omissions, Plaintiffs

15  either overpaid for the Vehicles or would not have purchased the Vehicles at all if the

16  Theft Friendly Defect had been disclosed to them. Accordingly, Defendants are liable

17  to Plaintiffs for their damages in an amount to be proven at trial.

18  **SOUTH CAROLINA STATE LAW CLAIMS FOR RELIEF**

19  **(Alleged by Adopting Plaintiffs, and Members of South Carolina Subclasses,**

20  **against All Defendants)**

21  3354. Class Plaintiffs, the Hyundai South Carolina Subclass and Kia South

22  Carolina Subclass, and Independent Subrogation Plaintiffs allege the following causes

23  of action against All Defendants.

24  3355. The South Carolina Subclasses are comprised of Members of both

25  nationwide classes with claims (including Kia and Hyundai Vehicles) arising in South

26  Carolina including, but not limited to, the following named Class Plaintiffs: Allstate

27  Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate

28  Insurance Company; Permanent General Assurance Corporation; Erie Insurance

Exchange; GEICO General Insurance Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Government Employees Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; Unitrin Auto and Home Insurance Company; Liberty Surplus Insurance Corporation; AMCO Insurance Company; Nationwide Affinity Insurance Company of America;  Nationwide Insurance Company of America; Victoria Fire & Casualty Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; Progressive Specialty Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective insureds in South Carolina pursuant to policies of Insurance.

## A.     Breach of Implied Warranty of Merchantability under S.C. Code Ann. §§ 36-2-314 and 36-2A-212

3356. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3357. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to S.C. Code Ann. §§ 36- 2-314 and 36-2A-212.

3358. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.C. Code Ann. §§ 36-2-104(1) and 36-2A-103(3), and "sellers" of motor vehicles under § 36-2-103(1)(d).

3359. Defendants are and were at all relevant times "lessors" of motor vehicles under S.C. Code Ann. § 36-2A-103(1)(p).

3360. Plaintiffs' Insureds who purchased Vehicles in South Carolina are "buyers" within the meaning of S.C. Code Ann. § 36-2-103(1)(a).

3361. Plaintiffs' Insureds who leased Vehicles in South Carolina are "lessees"

within the meaning of S.C. Code Ann. § 36-2A-103(1)(n).

3362. The Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code Ann. §§ 36-2-105(1) and 36-2A-103(1)(h).

3363. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3364. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3365. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful

choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3366. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3367. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3368. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3369. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

3370. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

**B.      Breach of Express Warranty under S.C. Code Ann. § 36-2-313**

3371. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3372. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3373. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3374. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3375. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform

1  to theft prevention standards.

2  **C.    Violation of the South Carolina Unfair Trade Practices Act (S.C. Code**
3  **Ann. §§ 39-5-10, et seq.)**

4  3376. Plaintiffs reallege and incorporate by reference all preceding allegations
5  as though fully set forth herein.

6  3377. Plaintiffs and Subclass Members bring this count individually and/or on
7  behalf of the other members of the Subclass, against Defendants.

8  3378. Plaintiffs and Subclass Members stand in the shoes of their Insureds,
9  who are "persons" within the meaning of S.C. Code. Ann. § 39-5-10(a).

10  3379. Defendants were and are engaged in "trade and commerce" within the
11  meaning of S.C. Code. Ann. § 39-5-10(b).

12  3380. The South Carolina Unfair Trade Practices Act ("South Carolina
13  UTPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive
14  acts or practices in the conduct of any trade or commerce." S.C. Code. Ann. § 39-5-
15  20(a).

16  3381. In the course of their business, Defendants, through their agents,
17  employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and
18  intentionally misrepresenting, omitting, concealing, and/or failing to disclose material
19  facts regarding the quality, reliability, and safety of the Vehicles and the Thief
20  Friendly Design, as detailed above.

21  3382. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from
22  unfair or deceptive practices under the South Carolina UTPA in the course of their
23  business. Specifically, Defendants owed the Insureds a duty to disclose all the
24  material facts concerning the Thief Friendly Design in the Vehicles.

25  3383. As detailed above, the information concerning the Thief Friendly Design
26  was known to Defendants at the time of advertising and selling the Vehicles, all of
27  which was intended to induce consumers to purchase the Vehicles.

28  3384. By misrepresenting the Vehicles as safe, reliable, and compliant with all

applicable standards, and by failing to disclose while actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce prohibited by S.C. Code Ann. § 39-5-20(a).

3385. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3386. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3387. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3388. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3389. Had they known the truth about the Thief Friendly Design, the Insureds

would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3390. Plaintiffs and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3391. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3392. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3393. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3394. Pursuant to S.C. Code. Ann. § 39-5-140, Plaintiffs and Subclass Members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the South Carolina UTPA.

**D.     Fraud by Omission and Concealment**

3395. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

3396. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3397. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3398. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.  Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.  Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

    d.  Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that

the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3399. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3400. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3401. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3402. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3403. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3404. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3405. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have

purchased, or pay more for a Vehicle than they otherwise would have paid.

3406. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3407. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3408. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.      Negligence**

3409. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3410. Defendants manufactured, distributed and sold the Vehicles to Plaintiffs' Insureds.

3411. Defendants owed the Insureds a duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3412. Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

3413. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal

standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3414. Defendants breached that duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3415. The Defendants' violation of their duties owed to Plaintiffs' Insureds under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

3416. As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

## SOUTH DAKOTA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of South Dakota Subclasses, against All Defendants)

3417. Class Plaintiffs, the Hyundai South Dakota Subclass and Kia South Dakota Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3418. The South Dakota Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses in the State of South Dakota due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company; Permanent General Assurance Corporation; GEICO Casualty Company; GEICO Indemnity Company; GEICO General Insurance Company; Government Employees Insurance Company;

Depositors Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; and USAA General Indemnity Company; all of whom paid policy proceeds to their respective Insureds in South Dakota pursuant to policies of insurance.

**A.      Breach of Implied Warranty of Merchantability under S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212**

3419. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3420. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212.

3421. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.D. Codified Laws §§ 57A-2-104(1) and 57A-2A-103(3), and "sellers" of motor vehicles under §§ 57A-2-103(1)(d).

3422. Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

3423. Plaintiffs' Insureds who purchased Vehicles in South Dakota are "buyers" within the meaning of S.D. Codified Laws § 57A-2-103(1)(a)

3424. Plaintiffs' Insureds who leased Vehicles in South Dakota are "lessees" within the meaning of S.D. Codified Laws § 57A-2A-103(1)(n).

3425. The Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57-2-105(1) and 57-2A-103(1)(h).

3426. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among

other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3427. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3428. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3429. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of

warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3430. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3431. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3432. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under S.D. Codified Laws § 57A-2-313**

3433. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3434. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3435. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3436. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3437. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3438. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3439. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C. Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws §§ 37-24-1, et seq.)

3440. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3441. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning of S.D. Codified Laws § 37-24-1.

3442. The Vehicles are "merchandise" within the meaning of S.D. Codified Laws § 37-24-1.

3443. Under the South Dakota Deceptive Trade Practices and Consumer Protection Law, ("South Dakota CPL") "[i]t is a deceptive act or practice for any person to: Knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby . . . ." S.D. Codified Laws § 37-24-6.

3444. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the South Dakota CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft Prevention Defect, as detailed above.

3445. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the South Dakota CPL in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Theft Prevention Defect in the Vehicles.

3446. As detailed above, the information concerning the Theft Prevention Defect was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3447. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Theft Prevention Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by S.D.

Codified Laws § 37-24-6(1): use of fraud, false pretense, false promises, or misrepresentation or concealment, suppression, or omission of material facts in connection with the sale or advertisement of the Vehicles.

3448. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3449. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft Prevention Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3450. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3451. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Theft Prevention Defect, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3452. Had they known the truth about the Theft Prevention Defect, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused

by the concealment of the Theft Prevention Defect.

3453. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3454. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Theft Prevention Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3455. On March 9, 2023, Class Members sent Defendants notice of the Theft Prevention Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3456. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Theft Prevention Defect, however, did nothing to remedy the Theft Prevention Defect.

3457. Pursuant to S.D. Codified Laws § 37-24-31, Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the South Dakota CPL

**D.     Fraud by Omission and Concealment**

3458. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3459. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3460. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3461. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they

volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3462. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3463. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3464. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3465. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3466. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3467. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3468. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3469. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3470. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3471. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

3472. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3473. Defendants manufactured, distributed and sold the Vehicles to Plaintiffs' Insureds.

3474. Defendants owed the Insureds a duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3475. Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

3476. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States

and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3477. Defendants breached that duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3478. The Defendants' violation of their duties owed to Plaintiffs' Insureds under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

3479. As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

## TENNESSEE STATE LAW CLAIMS FOR RELIEF

**(Alleged by Adopting Plaintiffs, and Members of Tennessee Subclasses, against All Defendants)**

3480. Class Plaintiffs, the Hyundai Tennessee Subclass and Kia Tennessee Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.  The claims under the Tennessee Consumer Protection Act of 1977, however, are brought on an individual, rather than on a class basis.

3481. The Tennessee Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Tennessee due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate County Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; GEICO

Advantage Insurance Company; GEICO Casualty Insurance Company; GEICO Choice Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; American Access Casualty Company; Infinity Automobile Insurance Company; Response Insurance Company; AMCO Insurance Company; Nationwide General Insurance Company; Nationwide Property & Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Hawaii Insurance Corporation; Mountain Laurel Assurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Tennessee pursuant to policies of insurance.

**A.      Breach of Implied Warranty of Merchantability under Tenn. Code Ann. §§ 47-2-314 and 47-2A-212**

3482. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3483. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Tenn. Code Ann. §§ 47-2-314 and 47-2A-212.

3484. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tenn. Code Ann. §§ 47-2-104(1) and 47-2A-103(3), and "sellers" of motor vehicles under § 47-2-103(1)(d).

3485. Defendants are and were at all relevant times "lessors" of motor vehicles under Tenn. Code Ann. § 47-2A-103(1)(p).

3486. Plaintiffs' Insureds who purchased Vehicles in Tennessee are "buyers" within the meaning of Tenn. Code Ann. § 47-2-103(1)(a).

3487. Plaintiffs' Insureds who leased Vehicles in Tennessee are "lessees" within the meaning of Tenn. Code Ann. § 47-2A-103(1)(n).

3488. The Vehicles are and were at all relevant times "goods" within the

meaning of Tenn. Code Ann. §§ 47-2-105(1) and 47-2A-103(1)(h).

3489. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3490. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3491. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and

Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3492. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3493. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3494. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3495. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty under Tenn.  Code Ann. § 47-2-313**

3496. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

3497. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3498. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3499. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3500. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3501. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.      Violation of the Tennessee Consumer Protection Act of 1977 (Tenn. Code
Ann. §§ 47-18-101, et seq.)**

3502. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3503. Plaintiffs stand in the shoes of their Insureds, who are "persons" within the meaning of Tennessee Code Ann. § 47-18-103(18).

3504. The Class Vehicles are "goods" within the meaning of § 47-18-103(12).

3505. Defendants were and are engaged in "trade" or "commerce" within the meaning of § 47-18-103(24).

3506. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") declares that "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices . . . ." Tennessee Code Ann. § 47-18-104(a).

3507. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3508. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Tennessee CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and their Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3509. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3510. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or

more of the following unfair or deceptive business practices prohibited Tennessee
Code Ann. § 47-18-104(b):

a.   Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of the Vehicles;

b.   Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have, including that they complied with all applicable safety and anti-theft standards;

c.   Representing that the Vehicles are of a particular standard, quality or grade, including that they complied with all applicable safety and anti-theft standards, when they are not;

d.   Advertising the Vehicles with intent not to sell them as advertised; and

e.   Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the Vehicles, or which may otherwise misrepresent the Vehicles in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised Vehicles to other goods or services. Tennessee Code Ann. § 47-18-104(b)(2), (5), (7), (9), and (21).

3511. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3512. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive

reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3513. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3514. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3515. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3516. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3517. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3518. On March 9, 2023, Plaintiffs sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed

against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which they are entitled.

3519. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3520. Pursuant to Tennessee Code Ann. § 47-18-109, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Tennessee CPA.

**D.      Fraud by Omission and Concealment**

3521. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3522. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3523. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3524. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

> a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants

1        knew these facts were not known to or reasonably discoverable by

2        Plaintiffs' Insureds;

3    b.   Given the Thief Friendly Design's hidden and technical nature,

4        Plaintiffs' Insureds lack the sophisticated expertise in vehicle

5        components that would be necessary to discover the Thief

6        Friendly Design on their own;

7    c.   Defendants knew that the Thief Friendly Design gave rise to safety

8        concerns for the consumers who use the Vehicles, and the Thief

9        Friendly Design would have been a material fact to the Plaintiffs'

10       Insureds' decisions to buy or lease the Vehicles; and

11   d.   Defendants made incomplete representations about the safety and

12       reliability of the Vehicles while purposefully withholding material

13       facts about a known safety defect. In uniform advertising and

14       materials provided with each Vehicle, Defendants intentionally

15       concealed, suppressed, and failed to disclose to the consumers that

16       the Vehicles contained the Thief Friendly Design. Because they

17       volunteered to provide information about the Vehicles that they

18       marketed and offered for sale and lease to consumers, Defendants

19       had the duty to disclose the whole truth.

20   3525. In breach of their duties, Defendants failed to disclose the Thief Friendly

21   Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

22   3526. For the reasons set forth above, the Thief Friendly Design within the

23   Vehicles is material to the sale of the Vehicles because a reasonable person would

24   find it important in purchasing, leasing, or retaining a new or used motor vehicle and

25   because it directly impacts the value of the Vehicles purchased or leased by the

26   Plaintiffs' Insureds.

27   3527. Defendants intended for the Plaintiffs' Insureds to rely on their

28   omissions and concealment—which they did by purchasing and leasing the Vehicles

at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3528. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3529. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3530. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3531. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3532. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3533. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3534. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

3535. Plaintiffs reallege and incorporate by reference all preceding allegations

1  as though fully set forth herein.

2      3536. Defendants manufactured, distributed and sold the Vehicles to Plaintiffs'

3  Insureds.

4      3537. Defendants owed the Insureds a duty of care included, at a minimum, the

5  manufacture and sale of vehicles that fully complied with all federal and industry

6  safety and anti-theft standards; and failing that, Defendants owed a duty to disclose

7  the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and

8  miscreants in a matter of seconds.

9      3538. Defendants violated applicable industry standards and otherwise failed

10 to exercise reasonable care in connection with their manufacture, distribution and sale

11 of the Vehicles.

12     3539. The National Highway Traffic Safety Administration has a self-

13 certification system of compliance where vehicle manufacturers certify that their

14 products meet applicable standards. Defendants had a duty to the general public to

15 ensure that all vehicles offered for sale were compliant to all applicable federal

16 standards. This duty precedes the offering of any vehicle for sale in the United States

17 and territories subject to the jurisdiction of federal regulations and is independent of

18 any duties arising through individual contracts for sale or lease that Defendants

19 entered into with Plaintiffs' Insureds.

20     3540. Defendants breached that duties when they negligently manufactured

21 and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices

22 required by federal standards, this faulty design known as the Thief Friendly Design.

23     3541. The Defendants' violation of their duties owed to Plaintiffs' Insureds

24 under applicable law included their failure to comply with federal regulatory

25 requirements to equip their vehicles with mandatory anti-theft protection that

26 complies with the requirements of FMVSS 114.

27     3542. As a result of Defendants' violation of their duties, Plaintiffs and

28 Plaintiffs' Insureds suffered damage, including property damage and the loss of use

the Vehicles, together with other damages for which the Defendants are liable.

## **TEXAS STATE LAW CLAIMS FOR RELIEF**

**(Alleged by Adopting Plaintiffs, and Members of Texas Subclasses, against All Defendants)**

3543. Class Plaintiffs, the Hyundai Texas Subclass and Kia Texas Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3544. The Texas Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Texas due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate County Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; Permanent General Assurance Corporation; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO County Mutual Insurance Company; GEICO General Insurance Company; Government Employees Insurance Company; Teachers Insurance Company; American Access Casualty Company; Home State County Mutual Insurance Company; Infinity County Mutual Insurance Company; Unitrin County Mutual Insurance Company; America First Insurance Company; Liberty Mutual Fire Insurance Company; Allied Property & Casualty Insurance Company; Colonial County Mutual Insurance Company; Nationwide Agribusiness Insurance Company; Nationwide Mutual Insurance Company; Artisan and Truckers Casualty Company; Progressive County Mutual Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; First Chicago Insurance Company and Old American County Mutual Fire Insurance Company; all of whom paid policy proceeds to their respective Insureds in Oklahoma pursuant to policies of insurance.

**A.**  **Breach of Implied Warranty of Merchantability under Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212**

3545. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3546. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212.

3547. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tex. Bus. & Com. Code Ann. §§ 2.104(a) and 2A.103(c), and "sellers" of motor vehicles under § 2.103(a)(4).

3548. Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code Ann. § 2A.103(a)(16).

3549. Plaintiffs' Insureds who purchased Vehicles in Texas are "buyers" within the meaning of Tex. Bus. & Com. Code Ann. § 2.103(a)(1).

3550. Plaintiffs' Insureds who leased Vehicles in Texas are "lessees" within the meaning of Tex. Bus. & Com. Code Ann. § 2A.103(a)(14).

3551. The Vehicles are and were at all relevant times "goods" within the meaning of Tex. Bus. & Com. Code Ann. §§ 2.105(a) and 2A.103(a)(8).

3552. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3553. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition,

would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3554. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3555. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3556. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this

count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3557. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3558. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty under Tex. Bus. & Com. Code Ann. § 2.313**

3559. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3560. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3561. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3562. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3563. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3564. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C. Fraud by Omission and Concealment

3565. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3566. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3567. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3568. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3569. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3570. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the

Plaintiffs' Insureds.

3571. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3572. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3573. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3574. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3575. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3576. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3577. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3578. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights

1 and well-being; and to enrich themselves.

2 **D.     Negligence**

3      3579. Plaintiffs reallege and incorporate by reference all preceding allegations
4 as though fully set forth herein.

5      3580. The National Highway Traffic Safety Administration has a self-
6 certification system of compliance where vehicle manufacturers certify that their
7 products meet applicable standards. Defendants had a duty to the general public to
8 ensure that all vehicles offered for sale were compliant to all applicable federal
9 standards. This duty precedes the offering of any vehicle for sale in the United States
10 and territories subject to the jurisdiction of federal regulations and is independent of
11 any duties arising through individual contracts for sale or lease that Defendants
12 entered into with Plaintiffs' Insureds.

13      3581. Defendants breached that duty when they negligently manufactured and
14 sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required
15 by federal standards, this faulty design known as the Thief Friendly Design.

16      3582. Defendants' negligent manufacture, sale and lease of non-compliant
17 vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for
18 theft at a much higher rate than had the Vehicles had not been negligently
19 manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and
20 leased from Defendants were stolen, or damaged in the course of being stolen.

21      3583. As a direct and proximate result of Defendants' negligence in
22 manufacturing and selling non-complaint Vehicles with the Thief Friendly Design,
23 Plaintiffs were obligated by their policies of insurances with their Insureds to make
24 payments for lost or damaged Vehicles, and incurred damages in an ascertainable
25 amount subject to proof at trial.

26 **E.     Negligent Misrepresentation**

27      3584. Plaintiffs reallege and incorporate by reference all preceding allegations
28 as though fully set forth herein.

3585. Defendants owed a duty to the general public and to Plaintiffs' Insureds to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3586. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3587. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3588. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3589. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3590. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3591. Defendants had a duty to disclose the Thief Friendly Design because they

consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3592. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## UTAH STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Utah Subclasses, against All Defendants)

3593. Class Plaintiffs, the Hyundai Utah Subclass and Kia Utah Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3594. The Utah Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses in the State of Utah due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; GEICO Casualty Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Horace Mann Property & Casualty Insurance Company; Alpha Property & Casualty

Insurance    Company;    Trinity    Universal    Insurance    Company;    Nationwide
Agribusiness Insurance Company; Nationwide Affinity Insurance Company of
America; Nationwide General Insurance Company; Progressive Direct Insurance
Company; Progressive Classic Insurance Company; United Financial Casualty
Company; Root Insurance Company; Garrison Property & Casualty Insurance
Company; USAA Casualty Insurance Company; USAA General Indemnity
Company; and United Services Automobile Association; who paid policy proceeds to
their respective Insureds in Utah pursuant to policies of insurance.

**A.      Breach of Implied Warranty of Merchantability under Utah Code Ann. §§
70A-2-314 and 70A-2A-212**

3595. A warranty that the Vehicles (identified in Exhibit "A") were in
merchantable condition and fit for the ordinary purpose for which such goods are used
is implied by law pursuant to Utah Code Ann. §§ 70A-2-314 and 70A-2A-212.

3596. Defendants are and were at all relevant times "merchants" with respect
to motor vehicles under Utah Code Ann. §§ 70A-2-104(1) and 70A-2A-103(3)(k),
and "sellers" of motor vehicles under § 70A-2-103(1)(d).

3597. Defendants are and were at all relevant times "lessors" of motor vehicles
under Utah Code Ann. § 70A-2A-103(1)(p).

3598. Plaintiffs' Insureds who purchased Vehicles in Utah are "buyers" within
the meaning of Utah Code Ann. § 70A-2-103(1)(a).

3599. Plaintiffs' Insureds who leased Vehicles in Utah are "lessees" within the
meaning of Utah Code Ann. § 70A-2A-103(1)(n).

3600. The Vehicles are and were at all relevant times "goods" within the
meaning of Utah Code Ann. §§ 70A-2-105(1) and 70A-2A-103(1)(h).

3601. Defendants knew or had reason to know of the specific use for which the
Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied
warranty that the Vehicles and any parts thereof were merchantable and fit for the
ordinary purposes for which they were sold. This implied warranty included, among

other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3602. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3603. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3604. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of

warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3605. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3606. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3607. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Utah Code Ann. § 70A-2-313**

3608. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3609. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3610. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made

an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3611. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3612. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3613. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.**     **Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. §§ 13-11-1, et seq.)**

3614. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3615. Plaintiffs and Subclass Members stand in the shoes of their Insureds.

3616. The sale and/or lease of the Vehicles from Defendants to Plaintiffs are

"consumer transactions" within the meaning of Utah Code Ann. § 13-11-3(2).

3617. Defendants are "suppliers" within the meaning of Utah Code Ann. § 13-11-3(6).

3618. The Utah Consumer Sales Practices Act ("Utah CPA") mandates that "[a] deceptive act or practice by a supplier in connection with a consumer transaction violates this chapter whether it occurs before, during, or after the transaction." Utah Code Ann. § 13-11-4(1).

3619. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Utah CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3620. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Utah CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3621. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3622. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following deceptive acts or practices prohibited by Utah Code Ann. § 13-11-4(2): a. Indicating that the Vehicles, as subjects of a consumer transaction, have sponsorship, approval, performance characteristics, accessories, uses, or benefits, they do not, including that they complied with all applicable safety and anti-theft standards; and b. Representing that the Vehicles are of a particular standard, quality,

and grade, including that they complied with all applicable safety and anti-theft standards, when they are not. Utah Code Ann. § 13-11-4(2)(a) and (b).

3623. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3624. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3625. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3626. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3627. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3628. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3629. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3630. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3631. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3632. Pursuant to Utah Code Ann. § 13-11-19(4)(a), Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Utah CPA.

**D.    Fraud by Omission and Concealment**

3633. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3634. Defendants' misleading representations include affirmative statements

that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3635. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3636. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they

marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3637. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3638. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3639. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3640. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3641. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3642. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3643. Had Plaintiffs' Insureds known of the Thief Friendly Design within the

Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3644. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3645. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

3646. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3647. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3648. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3649. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3650. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## F.    Negligent Misrepresentation

3651. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3652. Defendants owed a duty to the general public and to Plaintiffs' Insureds to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3653. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3654. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3655. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3656. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3657. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or

competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3658. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3659. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## <u>VERMONT STATE LAW CLAIMS FOR RELIEF</u>

### (Alleged by Adopting Plaintiffs, and Members of Vermont Subclasses, against All Defendants)

3660. Class Plaintiffs, the Hyundai Vermont Subclass and Kia Vermont Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3661. The Vermont Subclasses are comprised of nationwide Hyundai and Kia

Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Vermont due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; GEICO General Insurance Company; GEICO Indemnity Company; Unitrin Safeguard Insurance Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; and USAA Casualty Insurance Company; all of whom paid policy proceeds to their respective Insureds in Vermont pursuant to policies of insurance.

## A.     Breach of Implied Warranty of Merchantability under Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212

3662. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3663. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212.

3664. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Vt. Stat. Ann. Tit. 9A, §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

3665. Defendants are and were at all relevant times "lessors" of motor vehicles under Vt. Stat. Ann. Tit. 9A, § 2A-103(1)(p).

3666. Plaintiffs' Insureds who purchased Vehicles in Vermont are "buyers" within the meaning of Vt. Stat. Ann. Tit. 9A, § 2-103(1)(a).

3667. Plaintiffs' Insureds who leased Vehicles in Vermont are "lessees" within the meaning of Vt. Stat. Ann. Tit. 9A, § 2A-103(1)(n).

3668. The Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Ann. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

3669. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3670. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3671. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3672. Furthermore, the circumstances described herein caused Defendants'

exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3673. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3674. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3675. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Vt. Stat. Ann. Tit. 9A, § 2-313**

3676. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3677. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3678. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3679. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3680. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3681. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C.     Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. Tit. 9, § 2451, et seq.)

3682. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3683. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "consumers" within the meaning of 9 V.S.A. § 2451a(1).

3684. The Vehicles are "goods" within the meaning of § 9 V.S.A. 2451a(2).

3685. Defendants are "sellers" within the meaning of 9 V.S.A. 2451a(3).

3686. The Vermont Consumer Protection Act ("Vermont CPA") declares unlawful "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce . . . ." 9 V.S.A. § 2453(a).

3687. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Vermont CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3688. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Vermont CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3689. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3690. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in representations, omissions, and other practices likely to mislead consumers in violation of the Vermont CPA.

3691. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3692. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3693. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3694. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3695. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3696. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3697. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles

remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3698. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3699. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3700. Pursuant to 9 V.S.A. § 2461(b),  Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Vermont CPA.

**D.     Fraud by Omission and Concealment**

3701. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3702. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3703. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3704. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to

know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.  Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.  Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3705. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3706. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would

find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3707. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3708. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3709. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3710. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3711. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3712. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3713. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3714. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

3715. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3716. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3717. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3718. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3719. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**F.     Negligent Misrepresentation**

3720. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3721. Defendants owed a duty to the general public and to Plaintiffs' Insureds, as part of the general group of persons for whose benefit and guidance the representations were made, to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3722. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3723. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3724. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3725. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3726. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements

they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3727. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3728. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## VIRGINIA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Virginia Subclasses, against All Defendants)

3729. Class Plaintiffs, the Hyundai Virginia Subclass and Kia Virginia Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3730. The Virginia Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Virginia due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance

Company; Old Dominion Insurance Company; Erie Insurance Exchange; Erie Insurance Property & Casualty Company; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Horace Mann Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company; Progressive Advance Insurance Company; Progressive Gulf Insurance Company; Progressive Select Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Virginia pursuant to policies of insurance.

**B.      Breach of Implied Warranty of Merchantability under Va. Code Ann. §§ 8.2-314 and 8.2A-212**

3731. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3732. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Va. Code Ann. §§ 8.2-314 and 8.2A-212.

3733. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Va. Code Ann. §§ 8.2-104(1) and 8.2A-103(3), and "sellers" of motor vehicles under § 8.2-103(1)(d).

3734. Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code Ann. § 8.2A-103(1)(p).

3735. Plaintiffs' Insureds who purchased Vehicles in Virginia are "buyers" within the meaning of Va. Code Ann. § 8.2-103(1)(a).

3736. Plaintiffs' Insureds who leased Vehicles in Virginia are "lessees" within the meaning of Va. Code Ann. § 8.2A-103(1)(n).

3737. The Vehicles are and were at all relevant times "goods" within the

1   meaning of Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

2       3738. Defendants knew or had reason to know of the specific use for which the

3   Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied

4   warranty that the Vehicles and any parts thereof were merchantable and fit for the

5   ordinary purposes for which they were sold. This implied warranty included, among

6   other things, a warranty that the Vehicles were manufactured, supplied, distributed,

7   and sold by Defendants, were safe and reliable for providing transportation, would

8   not be vulnerable to an abnormally high risk of theft, and complied with applicable

9   federal and state laws and regulations, including FMVSS 114.

10       3739. However, the Vehicles did not comply with the implied warranty of

11   merchantability because they were defective and not in merchantable condition,

12   would not pass without objection in the trade, and were not fit for their ordinary

13   purpose of providing reasonably reliable, safe, and secure transportation at the time

14   of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly

15   Design, lacking any anti-theft features or design elements to provide an adequate theft

16   deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard

17   because the Thief Friendly Design renders Vehicles vulnerable to theft, making them

18   prime targets to be used as instrumentalities through which thieves engage in reckless

19   driving or other criminal activity.

20       3740. Any attempt by Defendants to disclaim or limit the implied warranty of

21   merchantability for their respective Vehicles vis-à-vis consumers is unconscionable

22   and unenforceable. Specifically, Defendants' warranty limitations are unenforceable

23   because Defendants knowingly sold or leased defective Vehicles without informing

24   consumers about the Thief Friendly Design. The time limits contained in Defendants'

25   warranty periods were also unconscionable and inadequate to protect Plaintiffs and

26   Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful

27   choice in determining these time limitations, the terms of which unreasonably favored

28   Defendants. A gross disparity in bargaining power existed between Defendants and

Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3741. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3742. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3743. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3744. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

## C.     Breach of Express Warranty under Va. Code Ann. § 8.2-313

3745. Plaintiffs reallege and incorporate by reference all preceding allegations

1 as though fully set forth herein.

2 3746. During the relevant time period described above, Plaintiffs' Insureds

3 purchased or leased Vehicles.

4 3747. These Vehicles were manufactured by Defendants during the relevant

5 time period described above. Through the attachment of VIN plates, Defendants made

6 an express warranty that the Vehicles conform to all applicable U.S.A. federal motor

7 vehicle safety, bumper, and theft prevention standards in effect on the date of

8 manufacture, which directly related to condition of the Vehicles and became a basis

9 of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima

10 Vehicle is provided above. On information and belief, similar written warranties were

11 made prior to, or at the point of sale for all Vehicles.

12 3748. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

13 them in accordance with the normal operation of the Vehicles and did not mishandle

14 or otherwise damage the Vehicles in any way that is material to the allegations set

15 forth herein.

16 3749. The Vehicles did not perform as promised in accordance with

17 Defendants' express warranty, as it has become common knowledge that they are

18 capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

19 applicable motor vehicle safety, and theft prevention standards in effect on the date

20 of manufacture. As a direct and proximate result of the Thief Friendly Design, the

21 Vehicles were easily stolen, and thus failed to perform to the terms of the express

22 warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact,

23 conform to the applicable anti-theft standards.

24 3750. Plaintiffs have incurred and will continue to incur damages and costs and

25 expenses, including attorney's fees, as a result of the Thief Friendly Design and

26 related breach of Defendants' breach of express warranty that the Vehicles conform

27 to theft prevention standards.

28

**D.     Violation of the Virginia Consumer Protection Act (Va. Code Ann. §§ 59.1-196, et seq.)**

3751. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3752. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning of Va. Code Ann. § 59.1-198.

3753. The Vehicles are "goods" within the meaning Va. Code Ann. § 59.1-198.

3754. The sale and/or lease of the Vehicles from Defendants to Plaintiffs are "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198.

3755. Defendants are "suppliers" within the meaning of Va. Code Ann. § 59.1-198.

3756. The Virginia Consumer Protection Act ("Virginia CPA") declares unlawful certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction. . . ." Va. Code Ann. § 59.1-200(A).

3757. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3758. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Virginia CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3759. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3760. By misrepresenting the Vehicles as safe, reliable and compliant with

applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following fraudulent acts or practices prohibited by Va. Code Ann. § 59.1-200(A): a. Misrepresenting the approval or certification of the Vehicles, including that they complied with all applicable safety and anti-theft standards; b. Misrepresenting the characteristics, uses, or benefits of the Vehicles; c. Misrepresenting the standard, quality, and grade, of the Vehicles, including that they complied with all applicable safety and anti-theft standards when they did not; d. Advertising or offering for sale the Vehicles in a defective and blemished condition without clearly and unequivocally indicating such condition in the advertisement or offer for sale; e. Advertising the Vehicles with the intent not to sell or lease them as advertised; and f. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with the advertisement and sale/lease of the Vehicles. Va. Code Ann. § 59.1-200(A)(2), (5), (6), (7), (8), and (14).

3761. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3762. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3763. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants

intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3764. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3765. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3766. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3767. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3768. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3769. Alternatively, providing notice to Defendants and an opportunity to cure

the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3770. Pursuant to Va. Code Ann. § 59.1-204(A), Plaintiffs and Subclass Members seek an order enjoining Defendants' fraudulent acts or practices and awarding damages and any other just and proper relief available under the Virginia CPA.

**E.     Fraud by Omission and Concealment**

3771. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3772. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3773. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3774. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.     Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle

1         components that would be necessary to discover the Thief

2         Friendly Design on their own;

3    c.   Defendants knew that the Thief Friendly Design gave rise to safety

4         concerns for the consumers who use the Vehicles, and the Thief

5         Friendly Design would have been a material fact to the Plaintiffs'

6         Insureds' decisions to buy or lease the Vehicles; and

7    d.   Defendants made incomplete representations about the safety and

8         reliability of the Vehicles while purposefully withholding material

9         facts about a known safety defect. In uniform advertising and

10        materials provided with each Vehicle, Defendants intentionally

11        concealed, suppressed, and failed to disclose to the consumers that

12        the Vehicles contained the Thief Friendly Design. Because they

13        volunteered to provide information about the Vehicles that they

14        marketed and offered for sale and lease to consumers, Defendants

15        had the duty to disclose the whole truth.

16   3775. In breach of their duties, Defendants failed to disclose the Thief Friendly

17 Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

18   3776. For the reasons set forth above, the Thief Friendly Design within the

19 Vehicles is material to the sale of the Vehicles because a reasonable person would

20 find it important in purchasing, leasing, or retaining a new or used motor vehicle and

21 because it directly impacts the value of the Vehicles purchased or leased by the

22 Plaintiffs' Insureds.

23   3777. Defendants intended for the Plaintiffs' Insureds to rely on their

24 omissions and concealment—which they did by purchasing and leasing the Vehicles

25 at the prices they paid believing that their vehicles would not have a Thief Friendly

26 Design that would affect the quality, reliability, and safety of the Vehicles.

27   3778. Plaintiffs' Insureds' reliance was reasonable, as they had no way of

28 learning the facts that Defendants had concealed or failed to disclose. Plaintiffs'

Insureds did not, and could not, unravel Defendants' deception on their own.

3779. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3780. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3781. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3782. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3783. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3784. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

F.    Negligence

3785. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3786. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to

ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3787. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3788. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3789. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## G.   Constructive Fraud

3790. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3791. Defendants owed a duty to the general public and to Plaintiffs' Insureds to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3792. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have

characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3793. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3794. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3795. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3796. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3797. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not

conceal any facts which materially qualify the representations made.

3798. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## WASHINGTON STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Washington Subclasses, against All Defendants)

3799. Class Plaintiffs, the Hyundai Washington Subclass and Kia Washington Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3800. The Washington Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Washington due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Church Mutual Insurance Company SI; Acuity, A Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Main Street America Protection Insurance Company; Permanent General Assurance Corporation; Erie Insurance Exchange; GEICO Choice Insurance Company; GEICO Secure Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Alliance United Insurance Company; Charter Indemnity Company; Nationwide Affinity Insurance Company of America; Nationwide Agribusiness Insurance Company; Nationwide Mutual Insurance Company; PEMCO Mutual Insurance Company; Progressive Casualty Insurance Company; Progressive County Mutual Insurance Company; Progressive Direct Insurance Company;  General Casualty Company of Wisconsin;

Unigard Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Washington pursuant to policies of insurance.

## A.   Breach of Implied Warranty of Merchantability under Wash. Rev. Code Ann. §§ 62A.2-314 and 62A.2A-212

3801. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3802. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Wash. Rev. Code Ann. §§ 62A.2-314 and 62A.2A-212.

3803. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code Ann. §§ 62A.2-104(1) and 62A.2A-103(3), and "sellers" of motor vehicles under § 62A.2-103(1)(d).

3804. Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code Ann. § 62A.2A-103(1)(p).

3805. Plaintiffs' Insureds who purchased Vehicles in Washington are "buyers" within the meaning of Wash. Rev. Code Ann. § 62A.2-103(1)(a).

3806. Plaintiffs' Insureds who leased Vehicles in Washington are "lessees" within the meaning of Wash. Rev. Code Ann. § 62A.2A-103(1)(n).

3807. The Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code Ann. §§ 62A.2-105(1) and 62A.2A-103(1)(h).

3808. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would

1   not be vulnerable to an abnormally high risk of theft, and complied with applicable
2   federal and state laws and regulations, including FMVSS 114.

3   3809. However, the Vehicles did not comply with the implied warranty of
4   merchantability because they were defective and not in merchantable condition,
5   would not pass without objection in the trade, and were not fit for their ordinary
6   purpose of providing reasonably reliable, safe, and secure transportation at the time
7   of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly
8   Design, lacking any anti-theft features or design elements to provide an adequate theft
9   deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard
10  because the Thief Friendly Design renders Vehicles vulnerable to theft, making them
11  prime targets to be used as instrumentalities through which thieves engage in reckless
12  driving or other criminal activity.

13  3810. Any attempt by Defendants to disclaim or limit the implied warranty of
14  merchantability for their respective Vehicles vis-à-vis consumers is unconscionable
15  and unenforceable. Specifically, Defendants' warranty limitations are unenforceable
16  because Defendants knowingly sold or leased defective Vehicles without informing
17  consumers about the Thief Friendly Design. The time limits contained in Defendants'
18  warranty periods were also unconscionable and inadequate to protect Plaintiffs and
19  Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful
20  choice in determining these time limitations, the terms of which unreasonably favored
21  Defendants. A gross disparity in bargaining power existed between Defendants and
22  Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at
23  the time of sale.

24  3811. Furthermore, the circumstances described herein caused Defendants'
25  exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and
26  Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of
27  warranties have denied Plaintiffs' Insureds the benefit of their respective bargains,
28  which presupposes they were (or are) able to use the Vehicles in a meaningful manner

1 without the ever–present risk of them being stolen.

2     3812. Plaintiffs have provided Defendants with reasonable notice and
3 opportunity to cure the breaches of their implied warranties. Additionally, all
4 Defendants were provided notice and opportunity to cure the issues raised in this
5 count and this Complaint by governmental investigations, numerous complaints filed
6 against them, internet videos, news reports, and the many individual notice letters sent
7 by Plaintiffs within a reasonable amount of time after the allegations of Vehicle
8 defects became public.

9     3813. Alternatively, Plaintiffs were excused from providing Defendants with
10 notice and an opportunity to cure the breach, because it would have been futile. As
11 alleged throughout Plaintiffs' Complaint, Defendants have long known that the
12 Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or
13 repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to
14 believe that Defendants would have adequately repaired the Thief Friendly Design if
15 they presented their Vehicles to them for repair.

16     3814. As a direct and proximate result of Defendants' breach of the implied
17 warranties, the Insureds' vehicles were and are defective, and the Thief Friendly
18 Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount
19 to be proven at trial.

20 **B.**     **Breach of Express Warranty under Wash. Rev. Code Ann. § 62A.2-313**

21     3815. Plaintiffs reallege and incorporate by reference all preceding allegations
22 as though fully set forth herein.

23     3816. During the relevant time period described above, Plaintiffs' Insureds
24 purchased or leased Vehicles.

25     3817. These Vehicles were manufactured by Defendants during the relevant
26 time period described above. Through the attachment of VIN plates, Defendants made
27 an express warranty that the Vehicles conform to all applicable U.S.A. federal motor
28 vehicle safety, bumper, and theft prevention standards in effect on the date of

manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3818. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3819. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3820. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

C.      **Violation of the Washington Consumer Protection Act (Wash. Rev. Code Ann. §§ 19.86.010, et seq.)**

3821. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3822. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning of Wash. Rev. Code Ann. § 19.86.010(1).

3823. The Vehicles are "assets" within the meaning of Wash. Rev. Code Ann. § 19.86.010(3).

3824. Defendants were and are engaged in "trade and commerce" within the meaning of Wash. Rev. Code Ann. § 19.86.010(2).

3825. The Washington Consumer Protection Act ("Washington CPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." Wash. Rev. Code Ann. § 19.86.020.

3826. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3827. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Washington CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3828. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3829. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair or deceptive business practices in the conduct of trade or commerce prohibited by Wash. Rev. Code Ann. § 19.86.020.

3830. These unfair or deceptive business practices are injurious to the public interest because they have injured and continue to have the capacity to injure other persons because the Vehicles remain unsafe due to the Thief Friendly Design. Wash. Rev. Code Ann. § 19.86.093.

3831. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3832. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3833. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3834. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3835. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3836. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment,

misrepresentations, and/or failure to disclose material information.

3837. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3838. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3839. Pursuant to Wash. Rev. Code Ann. § 19.86.090, Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Washington CPA.

**D.     Fraud by Omission and Concealment**

3840. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3841. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3842. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3843. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to

know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3844. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3845. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would

find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3846. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3847. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3848. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3849. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3850. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3851. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3852. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3853. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

3854. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3855. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3856. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3857. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**F.     Negligent Misrepresentation**

3858. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

3859. Defendants owed a duty to the general public and to Plaintiffs' Insureds, as part of the general group of persons for whose benefit and guidance the representations were made, to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3860. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3861. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3862. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3863. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3864. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3865.  Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3866.  Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## WEST VIRGINIA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of West Virginia Subclasses, against All Defendants)

3867.  Class Plaintiffs, the Hyundai West Virginia Subclass and Kia West Virginia Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3868.  The West Virginia Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the Commonwealth of West Virginia due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Erie Insurance Property & Casualty Company; Horace Man Insurance Company; Nationwide Insurance Company of American; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company;

Progressive Classic Insurance Company; Progressive Direct Insurance Company; Progressive Max Insurance Company; and Milbank Insurance Company who paid policy proceeds to their respective Insureds in West Virginia pursuant to policies of insurance.

**A.    Breach of Implied Warranty of Merchantability under W. Va. Code Ann. §§ 46-2-314 and 46-2A-212**

3869. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3870. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to W. Va. Code Ann. §§ 46-2-314 and 46-2A-212.

3871. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under W. Va. Code Ann. §§ 46-2-104(1) and 46-2A-103(3), and "sellers" of motor vehicles under § 46-2-103(1)(d).

3872. Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code Ann. § 46-2A-103(1)(p).

3873. Plaintiffs' Insureds who purchased Vehicles in West Virginia are "buyers" within the meaning of W. Va. Code Ann. § 46-2-103(1)(a).

3874. Plaintiffs' Insureds who leased Vehicles in West Virginia are "lessees" within the meaning of W. Va. Code Ann. § 46-2A-103(1)(n).

3875. The Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code Ann. §§ 46-2-105(1) and 46-2A-103(1)(h).

3876. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would

not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3877. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3878. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3879. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner

without the ever–present risk of them being stolen.

3880. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3881. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3882. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty under W. Va. Code Ann. § 46-2-313**

3883. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3884. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3885. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of

manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3886. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3887. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3888. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.      Violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code Ann. §§ 46A-1-101, et seq.)**

3889. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3890. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "consumers" within the meaning of W. Va. Code Ann. § 46A-6-102(2).

3891. The Vehicles are "goods" within the meaning of W. Va. Code Ann. § 46A-1-102(21).

3892. Defendants were and are engaged in "trade or commerce" within the meaning of W. Va. Code Ann. § 46A-6-102(6).

3893. The West Virginia Consumer Credit and Protection Act ("West Virginia CPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." W. Va. Code Ann. § 46A-6-104.

3894. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the West Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3895. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the West Virginia CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3896. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3897. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by W. Va. Code Ann. § 46A-6-102(7): a. Causing a likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; b. Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have, including that they complied with all applicable safety and anti-theft standards; c. Representing that the Vehicles are of a particular standard, quality, and grade,

including that they complied with all applicable safety and anti-theft standards, when they are not; d. Advertising the Vehicles with the intent not to sell or lease them as advertised; e. Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and f. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby. W. Va. Code Ann. § 46A-6-102(7)(B), (E), (G), (I), (L), and (M).

3898. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3899. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3900. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3901. The Insureds' reliance was reasonable, as they had no way of discerning

Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3902. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3903. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3904. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3905. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design in compliance with W. Va. Code Ann. § 46A-5-108(a).  Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3906. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3907. Pursuant to  W. Va. Code Ann. § 46A-6-106(a), Plaintiffs and Subclass

Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the West Virginia CPA.

**D.    Fraud by Omission and Concealment**

3908. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3909. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3910. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3911. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

   a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

   b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

   c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3912. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3913. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3914. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3915. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3916. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3917. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3918. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3919. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3920. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3921. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

3922. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3923. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3924. Defendants breached that duty when they negligently manufactured and

sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3925. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3926. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## F.    Negligent Misrepresentation

3927. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3928. Defendants owed a duty to the general public and to Plaintiffs' Insureds, as part of the general group of persons for whose benefit and guidance the representations were made, to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3929. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3930. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into

purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3931. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3932. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3933. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3934. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3935. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for

1  which the Defendants are liable.

2  ## <u>WISCONSIN STATE LAW CLAIMS FOR RELIEF</u>

3  **(Alleged by Adopting Plaintiffs, and Members of Wisconsin Subclasses, against**

4  **All Defendants)**

5  3936. Class Plaintiffs, the Hyundai Wisconsin Subclass and Kia Wisconsin

6  Subclass, and Independent Subrogation Plaintiffs allege the following causes of

7  action against All Defendants.

8  3937. The Wisconsin Subclasses are comprised of nationwide Hyundai and Kia

9  Class Members with claims stemming from vehicle losses (including Kia and

10  Hyundai Vehicles) in the State of Wisconsin due to Defendants' Thief Friendly

11  Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A

12  Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate

13  Indemnity Company; Allstate Insurance Company; American Family Insurance

14  Company; American Family Mutual Insurance Company; The General Automobile

15  Insurance Company, Inc.; Erie Insurance Company; Erie Insurance Exchange; Horace

16  Mann Insurance Company; Teachers Insurance Company; Root Insurance Company;

17  Root Property & Casualty Insurance Company; State Auto Property & Casualty

18  Insurance Company; Garrison Property & Casualty Insurance Company; and United

19  Services Automobile Association;   all of whom paid policy proceeds to their

20  respective Insureds in Wisconsin pursuant to policies of insurance.

21  **A.**  **Breach of Implied Warranty of Merchantability under Wis. Stat. Ann. §§**

22  **402.314 and 411.212**

23  3938. Plaintiffs reallege and incorporate by reference all preceding allegations

24  as though fully set forth herein.

25  3939. A warranty that the Vehicles (identified in Exhibit "A") were in

26  merchantable condition and fit for the ordinary purpose for which such goods are used

27  is implied by law pursuant to Wis. Stat. Ann. §§ 402.314 and 411.212.

28  3940. Defendants are and were at all relevant times "merchants" with respect

to motor vehicles under Wis. Stat. Ann. §§ 402.104(3) and 411.103(3)(k), and "sellers" of motor vehicles under § 402.103(1)(d).

3941. Defendants are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. Ann. § 411.103(1)(p).

3942. Plaintiffs' Insureds who purchased Vehicles in Wisconsin are "buyers" within the meaning of Wis. Stat. Ann. § 402.103(1)(a).

3943. Plaintiffs' Insureds who leased Vehicles in Wisconsin are "lessees" within the meaning of Wis. Stat. Ann. § 411.103(1)(n).

3944. The Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. Ann. §§ 402.105(1)(c) and 411.103(1)(h).

3945. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3946. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3947. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3948. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3949. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3950. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or

repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3951. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty under Wis. Stat. Ann. § 402.313**

3952. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3953. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3954. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3955. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3956. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date

of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3957. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.     Violation of Wisconsin Deceptive Trade Practices Act (Wis. Stat. Ann. § 100.18)**

3958. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3959. Plaintiffs and Subclass Members bring this count individually and/or on behalf of the other members of the Subclass, against Defendants.

3960. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning intended by Wis. Stat. Ann. § 100.18(1).

3961. The Vehicles are "merchandise" within the meaning intended by Wis. Stat. Ann. § 100.18(1).

3962. Defendants are "persons" and had and have an intent to sell and distribute merchandise within the meaning intended by Wis. Stat. Ann. § 100.18(1).

3963. The Wisconsin Deceptive Trade Practices Act ("Wisconsin CPA") states that "[n]o person . . . with intent to sell, distribute. . . merchandise, service, or anything offered by such person . . . directly or indirectly, to the public for sale. . . or with intent to induce the public in any manner to enter into a contract or obligation relating to the purchase, sale, hire, use or lease of any . . . merchandise . . . shall make . . . an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such . . . merchandise . . . which advertisement, announcement, statement or representation contains any assertion,

representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. Ann. § 100.18(1).

3964. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Wisconsin CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3965. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Wisconsin CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3966. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3967. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants' statements and representations contained assertions, representations and statements of fact which were untrue, deceptive, and misleading in violation of Wis. Stat. Ann. § 100.18(1).

3968. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3969. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive

reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3970. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3971. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3972. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3973. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3974. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3975. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design, including the issues raised within this count. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint

by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3976. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3977. Pursuant to Wis. Stat. Ann. § 100.18(11)(b)(2), Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Wisconsin CPA.

## D.    Fraud by Omission and Concealment

3978. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3979. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3980. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3981. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3982. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3983. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3984. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3985. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3986. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3987. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3988. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3989. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3990. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3991. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

3992. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3993. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3994. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3995. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3996. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**F.     Negligent Misrepresentation**

3997. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3998. Defendants owed a duty to the general public and to Plaintiffs' Insureds,

as part of the general group of persons for whose benefit and guidance the representations were made, to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3999. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

4000. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

4001. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4002. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

4003. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

4004. Defendants had a duty to disclose the Thief Friendly Design because they

consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

4005. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## WYOMING STATE LAW CLAIMS FOR RELIEF

### (Alleged by Adopting Plaintiffs, and Members of Wyoming Subclasses, against All Defendants)

4006. Class Plaintiffs, the Hyundai Wyoming Subclass and Kia Wyoming Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

4007. The Wyoming Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses in the State of Wyoming due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Progressive Northern Insurance Company; and Progressive Universal Insurance Company; all of whom paid policy proceeds to their respective Insureds in Wyoming pursuant to policies of insurance.

**A.     Breach of Implied Warranty of Merchantability under Wyo. Stat. Ann. §§ 34.1-2-314 and 34.1-2.A-212**

4008. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4009. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Wyo. Stat. Ann. §§ 34.1-2-314 and 34.1-2.A-212.

4010. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wyo. Stat. Ann. §§ 34.1-2-104(a) and 34.1-2.A-103(c), and "sellers" of motor vehicles under § 34.1-2-103(a)(iv).

4011. Defendants are and were at all relevant times "lessors" of motor vehicles under Wyo. Stat. Ann. § 34.1-2.A-103(a)(xvi).

4012. Plaintiffs' Insureds who purchased Vehicles in Wyoming are "buyers" within the meaning of Wyo. Stat. Ann. § 34.1-2-103(a)(i).

4013. Plaintiffs' Insureds who leased Vehicles in Wyoming are "lessees" within the meaning of Wyo. Stat. Ann. § 34.1-2.A-103(a)(xiv).

4014. The Vehicles are and were at all relevant times "goods" within the meaning of Wyo. Stat. Ann. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

4015. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4016. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition,

would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4017. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

4018. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4019. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this

count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

4020. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

4021. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.    Breach of Express Warranty under Wyo. Stat. Ann. § 34.1-2-313**

4022. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4023. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

4024. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were

made prior to, or at the point of sale for all Vehicles.

4025. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

4026. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

4027. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.    Violation of Wyoming Consumer Protection Act (Wyo. Stat. Ann. §§ 40-12-101, et seq.)**

4028. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4029. Plaintiffs and Subclass Members bring this count individually and/or on behalf of the other members of the Subclass, against Defendants.

4030. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning of Wyo. Stat. Ann. § 40-12-102(a)(i).

4031. The Vehicles are "merchandise" within the meaning of Wyo. Stat. Ann. § 40-12-102(a)(vi).

4032. The sale and/or lease of the Vehicles from Defendants to Plaintiffs are

1  "consumer transactions" within the meaning of Wyo. Stat. Ann. § 40-12-102(a)(ii).

2  4033. Under the Wyoming Consumer Protection Act ("Wyoming CPA"), "[a]

3  person engages in a deceptive trade practice unlawful under this act when, in the

4  course of his business and in connection with a consumer transaction," he knowingly

5  commits certain acts or practices. Wyo. Stat. Ann. § 40-12-105(a).

6  4034. In the course of their business, Defendants through their agents,

7  employees, and/or subsidiaries, violated the Wyoming CPA by knowingly and

8  intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

9  facts regarding the quality, reliability, and safety of the Vehicles and the Thief

10 Friendly Design, as detailed above.

11 4035. Defendants had an ongoing duty to the Plaintiffs and their Insureds to

12 refrain from unfair or deceptive practices under the Wyoming CPA in the course of

13 their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and

14 Class Members a duty to disclose all the material facts concerning the Thief Friendly

15 Design in the Vehicles.

16 4036. As detailed above, the information concerning the Thief Friendly Design

17 was known to Defendants at the time of advertising and selling the Vehicles, all of

18 which was intended to induce consumers to purchase the Vehicles.

19 4037. By misrepresenting the Vehicles as safe, reliable and compliant with

20 applicable standards, and by failing to disclose and actively concealing the real

21 dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or

22 more of the following unfair or deceptive business practices prohibited by Wyo. Stat.

23 Ann. § 40-12-105(a): a. Representing that the Vehicles are of a particular standard or

24 grade, including that they complied with all applicable safety and anti-theft standards,

25 when they are not; b. Advertising the Vehicles with the intent not to sell or lease them

26 as advertised; and c. Engaging in unfair or deceptive acts or practices. Wyo. Stat. Ann.

27 § 40-12-105(a)(iii), (x), and (xv).

28 4038. Defendants intended for Plaintiffs and their Insureds to rely on them to

provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

4039. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

4040. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

4041. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

4042. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

4043. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

4044. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4045. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design in compliance with Wyo. Stat. Ann. § 40-12-109. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

4046. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

4047. Pursuant to Wyo. Stat. Ann. § 40-12-108, Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Wyoming CPA.

**D.     Fraud by Omission and Concealment**

4048. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4049. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4050. Defendants were aware of the Thief Friendly Design when they

marketed and sold the Vehicles to Plaintiffs' Insureds.

4051. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4052. In breach of their duties, Defendants failed to disclose the Thief Friendly

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

4053. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

4054. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

4055. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

4056. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

4057. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

4058. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

4059. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

4060. As a direct and proximate result of Defendants' omissions, Plaintiffs'

Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

4061. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

4062. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4063. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

4064. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

4065. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

4066. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make

payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**F.      Negligent Misrepresentation**

4067. Defendants owed a duty to the general public and to Plaintiffs' Insureds, as part of the general group of persons for whose benefit and guidance the representations were made, to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

4068. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

4069. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

4070. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4071. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

4072. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements

they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

4073.   Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

4074. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as to each cause of action as follows:

a.   Payment to the Plaintiffs for all damages resulting from the replacement or repair of the defective Vehicles, in an amount to be proven at trial;

b.   Payment to the Plaintiffs for all damages allowed by law resulting from theft or attempted theft of Defendants' defective Vehicle;

c.   Restitution as authorized by law;

d.   An award of reasonable attorneys' fees and costs, as provided and permitted by law;

e.     Interest as provided by law, including but not limited to pre-judgment and post-judgment interest; and

f.     Such other and further relief as this Court may deem just, equitable, or proper.

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

## JURY TRIAL DEMANDED

Plaintiffs, by their counsel, request a trial by jury on those causes of actions set forth herein.

Respectfully submitted,

COZEN O'CONNOR

By: *s/Elliott R. Feldman*

GROTEFELD HOFFMANN

By: *s/William Hoffmann*

LAW OFFICES OF ROBERT A. STUTMAN, P.C.

By: *s/Timothy E. Cary*

BERGER KAHN, A LAW CORPORATION

By: *s/Craig S. Simon*

*Attorneys for Subrogation Plaintiffs*

CONSOLIDATED COMPLAINT FOR ALL SUBROGATION PLAINTIFFS