ELLIOTT R. FELDMAN
NATHAN DOOLEY (SBN 224331)
KEVIN CARAHER
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-2071
Facsimile: (215) 701-2282
EFeldman@cozen.com

WILLIAM J. HOFFMANN
ADAM M. ROMNEY (SBN 261974)
SUSAN M. BENSON (SBN 146837)
GROTEFELD HOFFMANN LLP
5535 Balboa Blvd., Ste. 219
Encino, California 91316
Telephone: (747) 233-7150
Facsimile: (747) 233-7143

TIMOTHY E. CARY (SBN 093608)
DANIEL HOGAN
THOMAS PAOLINI
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
1260 Corona Pointe Court, Suite 306
Corona, California 92879
Telephone: (951) 387-4700
Facsimile: (951) 963-1298
CaryT@Stutmanlaw.com

CRAIG S. SIMON (SBN 78158)
STEPHANIE H. NG (SBN 309389)
BERGER KAHN, A Law Corporation
1 Park Plaza, Suite 340
Irvine, California 92614
Telephone: (949) 474-1880
Facsimile: (949) 313-5029
csimon@bergerkahn.com

Attorneys for Subrogation Insurance Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION,<br><br>This document relates to:<br><br>Insurance Subrogation Cases | CASE NO. 8:22-ML-3052-JVS(KESx)<br><br>**INSURANCE SUBROGATION PLAINTIFFS' STATEMENT REGARDING PROPOSED CONSUMER CLASS SETTLEMENT**<br><br>The Honorable James V. Selna |

Pursuant to the Court's Order for Supplemental Declarations (Dkt. No. 178), the Insurance Subrogation Plaintiffs, through the Executive and Subrogation

Committees for the Insurance Subrogation action (collectively, the "Subrogation Plaintiffs"), hereby provide their Statement regarding the fairness of the Preliminary Settlement ("Settlement Agreement") (Dkt. No. 166) between the Consumer Class Action Plaintiffs ("Settling Plaintiffs") and Defendants Hyundai Motor America, Kia America, Inc., Hyundai Motor Company, and Kia Corporation (collectively, "Defendants").

## I.   STATEMENT SUMMARY

The proposed Settlement Agreement clearly contemplates that the Settling Plaintiffs and Defendants intend only to settle the claims between and amongst themselves. By its express terms, "[t]he Settlement Agreement and release do not release claims for… subrogation claims by licensed insurers." (Dkt. No. 166-2, at 25). Further, the Notice of Proposed Class Settlement (the "Notice") explicitly states that subrogation claims are outside the scope of the Settlement Agreement:

> the Class claims exclude all claims for… subrogation and such claims are not released by the Settlement. (Dkt. No. 166-2, at 46.);

> nothing in this settlement will preclude you from pursuing claims for… subrogation if you are a licensed insurer." (Dkt. No. 166-2, at 50)

Consistent with the foregoing, the associated Notice and Claim Form includes terms intended to prevent class members from recovering twice: once from their insurer and then again from the Common fund. Specifically, the Notice and Claim Form requires that settlement class members disclose the receipt of any insurance proceeds associated with a loss. (Dkt. No. 166-2, at 50, 54, 63, 64-65). Collectively, these terms demonstrate the Settlement Agreement is intended to exclude subrogation claims. Because the Settlement Agreement does not include, affect or release any past, present, or future subrogation claims, Subrogation Plaintiffs do not oppose the

substance of the Settlement Agreement.

However, certain provisions of the Settlement Agreement referencing subrogation claims include imprecise or unclear language that is arguably counter to the demonstrated intent of the Settlement Agreement. Therefore, for the avoidance of doubt, Subrogation Plaintiffs request that certain provisions of the Settlement Agreement be modified to ensure internal consistency and protect the interests of all parties.[1] The proposed modifications to the Settlement Agreement, and an accompanying explanation for each, are set forth below.

## II. DEFINITION OF "CLASS" OR "SETTLEMENT CLASS"

The terms "Class or Settlement Class" are defined in the Settlement Agreement, in pertinent part, as follows:

> "Class" or "Settlement Class" refers to all persons or entities who purchased or leased a Class Vehicle in the United States (including Puerto Rico, Virgin Islands, and Guam) … Also excluded from the Class are consumers and businesses, including insurers, that have purchased or otherwise obtained title for Class Vehicles previously deemed a total loss (*i.e.*, salvage or junkyard vehicles) (subject to verification through Carfax or other means)[.]

(Dkt. No. 166-2, at 4).

Consistent with the intent of all parties, the Settlement Agreement's definition of the Class or Settlement Class seeks to exclude subrogated insurers. However, as written, the Settlement Agreement's proposed definition excludes *only* insurers that have purchased or otherwise obtained title for Class Vehicles previously deemed a total loss.

---

[1] Subrogation Plaintiffs note that the proposed modifications to the Settlement Agreement may also necessitate additional modifications to the Notice, Claim Form, and any other related Court Orders for consistency. Subrogation Plaintiffs are willing to participate in any such process at the discretion of the Court.

Subrogation Plaintiffs have made, and will make payments in the future, for damages to Class Vehicles other than those deemed a total loss and/or resulted in the insurer obtaining title to the Class Vehicle. Therefore, the Subrogation Plaintiffs request that the definition of the "Class or Settlement Class be modified as follows:

> "Class" or "Settlement Class" refers to all persons or entities who purchased or leased a Class Vehicle in the United States (including Puerto Rico, Virgin Islands, and Guam)… In addition, excluded from the Class are subrogated insurers. Also excluded from the Class are consumers and businesses, that have purchased or otherwise obtained title for Class Vehicles previously deemed a total loss (*i.e.*, salvage or junkyard vehicles) (subject to verification through Carfax or other means)[.]

The requested modification is minimal in scope and simply conforms the proposed definition of the "Class or Settlement Class" to the terms of the Class Notice and the parallel Notice and Claim Form by categorically excluding Subrogated Plaintiffs from the Class. The modification also retains the Settling Parties intended limitations for other consumers and businesses.

### III.   DEFINITION OF "RELEASORS"

The proposed Settlement Agreement defines "Releasors" broadly and without limitation:

> "Releasor[s]" shall refer jointly and severally, individually and collectively to the Class Representatives, the Class members, and their future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor.

(Dkt. No. 166-2, at 9).

As presently written, Subrogated Insurers are not expressly excluded from the definition of "Releasors." Therefore, for clarity, Subrogation Plaintiffs request that the following sentence be added to the definition of Releasors:

> Excluded from Releasors are subrogated insurers.

The addition of this sentence will simply make clear that Subrogation Plaintiffs are not releasing any pending or prospective claims against Defendants as a result of the execution the Settlement Agreement.

### IV. SCOPE OF THE RELEASE

The Settlement Agreement's Release is phrased in a manner that can be interpreted to release claims outside the scope of the Consolidated Consumer Class Action Complaint, Dkt. No. 84. The Settlement Agreement defines "Action" to mean "the consolidated litigation titled In re: Kia Hyundai Vehicle Theft Litigation, MDL No. 8:22-ml-03052 (C.D. Cal.), inclusive of all underlying cases that were consolidated." Dkt. No. 162-2 at 4. This definition of "Action" arguably includes the complaints filed by other Plaintiff groups; including the Subrogation Plaintiffs and governmental entities.

This definition of the "Action" is then incorporated into the terms of the Release, extending the scope of the Settlement Agreement:

> any and all past, present, and future liabilities, claims, causes of action, legal claims, damages . . . losses, or demands that have been brought or could have been brought, whether known or unknown, existing or potential, or suspected or unsuspected relating to Class Vehicles against Releases, whether or not specifically named herein . . . based on (i) the facts alleged in any complaint filed in the Action and all legal claims of

> whatever type or description arising out of, that may have arisen as a result of, or which could have been brought based on, any of the facts, acts, events, transactions, occurrences, courses of conduct . . . or other matters pleaded in complaints filed in the Action, and (ii) claims related to theft of a Class Vehicle.

(Dkt. No. 166-2, at 24). Thus, on its face, the scope of the Release, particularly when read in conjunction with the definition of the term "Action," appears to release all claims: including those brought by the government entities and insurance companies and any claims related to theft of a Class Vehicle.

This is inconsistent with the other provisions of the Settlement Agreement, which exclude "subrogation claims by licensed insurers." *Id.* The Subrogation Plaintiffs read these terms together to mean that none of the subrogation claims – past, present, or future – are released by the Settlement Agreement. To the extent that any party in the future may argue that subrogation claims are released, however, the release would be void for being overbroad.

A release may only release claims based on an identical factual predicate. *See, e.g., Hesse v. Sprint Corp.*, 598 F.3d 581, 590-591 (9th Cir. 2010); 6 Newberg on Class Actions (5th ed. 2021) § 18:19*; Williams v. Boeing Co.*, 517 F.3d 1120, 1133 (9th Cir. 2008); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992).) "Put another way, a release of claims that 'go beyond the scope of the allegations in the operative complaint' is impermissible.'" *Marshall v. Northrop Grumman Corp.*, 469 F.Supp.3d 942, 948-949 (C.D. Cal. 2020) (quoting *Lovig v. Sears, Roebuck & Co.*, No. EDCV 11-00756-CJC, 2014 WL 8252583, at *2 (C.D. Cal. Dec. 9, 2014). Thus, to the extent any party intends to argue that the Release extends to claims or damages outside the scope of the Consolidated Consumer Complaint, the release as written would be impermissibly overbroad. *See e.g. Marshall,* 469 F.Supp.3d at 950. Accordingly, the definition of the "Action" should be revised to exclude all past, present and future subrogation claims.

## V. SPECIFIC TERMS OF THE RELEASE

The Mutual Release provision of the Settlement Agreement also contains language indicating that Class Members are releasing all past, present, and future claims against Defendants related to Class Vehicles:

> Upon entry of a Court order granting final approval of the Settlement Agreement and entering judgment pursuant to section VII.C below, Releasors irrevocably release, waive, and discharge any and all past, present, and future liabilities, claims, causes of action, legal claims … relating to Class Vehicles[.]

(Dkt. No. 166-2, at 24). Separately, however, the Settlement Agreement's exclusion of subrogation claims does not contain parallel language preserving subrogation claims without temporal limitation.

> The Settlement Agreement and release do not release claims for (i) death, (ii) personal injury, or (iii) subrogation claims by licensed insurers.

(Dkt. No. 166-2, at 25).

To harmonize the Settlement Agreement so that it is consistent throughout, Subrogation Plaintiffs therefore request that the exclusion of subrogation claims provision be modified as follows:

> The Settlement Agreement and release do not release past, present, or future claims for (i) death, (ii) personal injury, or (iii) subrogation claims by licensed insurers.

Beyond the need for consistency, this clarification is substantively important because the Settlement Agreement only permits Class Members, who seek payment for physical damage or loss of a vehicle, to submit their claim within 180 days from the Final Approval Order and Judgment. (Dkt. No. 166-2, at 14, 15, 16). After the 180 day claim period, the Settlement Class's claims against Defendants related to Class Vehicles are forever barred. Subrogation Plaintiffs claims should not be subject to this same temporal limitation, particularly as applied to the pursuit of future

subrogation claims.

Furthermore, the language of the Release does not make clear that the release of claims in exchange for compensation constitutes the sole and final remedy for all consumer class claims that could have been asserted against Defendants. This is relevant to the proposed reimbursement benefit of up to $375 for insurance deductibles. (Dkt. No. 166-2, at 40). As currently drafted, the Release does not make it clear that the Settlement Agreement's reimbursement benefit shall constitute a full satisfaction of the Class Members' potential claims for deductible reimbursement. To that end, Subrogation Plaintiffs request a clarification that the scope of the release includes the full amount of all potential claims for deductible reimbursement; rather than a partial satisfaction of such claims.

## VI.  CONCLUSION

The Settlement Agreement and Notice of Proposed Class Settlement expressly exclude subrogated insurers from the Class and related Class settlement. For this reason, Subrogation Plaintiffs do not oppose the substance of the Settlement Agreement and merely request the foregoing modifications of certain language in the Settlement Agreement, Notice, Claim Forms, and any Orders regarding the approval of the Settlement Agreement, so that the language remains consistent throughout. The proposed modifications will simply clarify that the Proposed Class Settlement excludes all pending and prospective subrogation claims from the Consumer Class and Settlement Agreement and effect the intent of the Settling Parties.

DATED:  August 10, 2023          COZEN O'CONNOR

                                 By: *s/Nathan Dooley*
                                     Elliott R. Feldman
                                     Nathan Dooley
                                     Kevin Caraher

| | | |
|---|---|---|
| 1 | DATED:  August 10, 2023 | GROTEFELD HOFFMANNN LLP |
| 2 | | |
| 3 | | By: *s/Adam Romney*<br>William J. Hoffmann<br>Adam M. Romney<br>Susan M. Benson |

DATED: August 10, 2023          LAW OFFICES OF ROBERT A. STUTMAN, P.C.

By: *s/Daniel Hogan*
Timothy E. Cary
Daniel Hogan
Thomas Paolini

DATED:  August 10, 2023          BERGER KAHN, A Law Corporation

By: *s/Craig Simon*
Craig S. Simon
Stephanie H. Ng


*Attorneys for Subrogation Insurance Plaintiffs*

Case No. 8:22-ML-3052-JVS(KESx)