Gretchen Freeman Cappio (*pro hac vice*)
gcappio@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

*Chair of the Governmental Entities
Committee*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION <br><br> *This document relates to:* <br><br> GOVERNMENTAL ENTITIES TRACK | No. 8:22-ML-03052-JVS-KES <br><br> The Honorable James V. Selna <br><br> **GOVERNMENTAL ENTITIES' STATEMENT REGARDING PROPOSED CONSUMER SETTLEMENT AGREEMENT** <br><br> Date: August 15, 2023 <br> Time: 3:00 P.M. <br> Courtroom: 10C |

# TABLE OF CONTENTS

I.      INTRODUCTION ......................................................................................1

II.     ANALYSIS .............................................................................................2

        A.      The Governmental Entity Plaintiffs Take No Position on the
                Adequacy of the Monetary Relief Provided. .....................................2

        B.      Defendants' Software Update Has Not Abated the Nuisance. ...........5

        C.      The Consumer Settlement Agreement Does Not Address the
                Losses of the Governmental Entity Plaintiffs Due to the
                Nuisance. ...........................................................................9

III.    CONCLUSION .......................................................................................9

# I.   INTRODUCTION

The Governmental Entity Plaintiffs ("GE Plaintiffs") submit this statement in response to the Court's request in its order dated August 3, 2023, ECF No. 178, to address the proposed settlement between the Consumer Class Plaintiffs ("Consumer Plaintiffs") and Defendants Hyundai Motor Company ("HMC"); Hyundai Motor America ("HMA" and, with HMC, collectively "Hyundai"); Kia Corporation ("KC"); and Kia America, Inc. ("KA" and, with KC, collectively "Kia") (collectively, "Defendants"). *See generally* ECF Nos. 166, 166-2, 177.[1]

Although the GE Plaintiffs are pleased to see that Hyundai and Kia are taking initial steps to address the problems caused by Defendants' decisions to forgo the installation of engine immobilizers in many of their 2011–2022 model year vehicles ("Susceptible Vehicles"),[2] and take no position on the sufficiency of the monetary relief provided or whether the proposed consumer settlement should be approved, the GE Plaintiffs believe the proposed settlement is unlikely to stop the nuisance. Whether or not the Court preliminarily approves the proposed settlement ("Consumer Settlement") (ECF No. 166-2), the public nuisance that Defendants' decisions created—and the downstream consequences of those decisions on the GE Plaintiffs—persist.

---

[1] In addition to the Governmental Entities present in this litigation, the Governmental Entities Committee has been in communication with the Minnesota Attorney General's Office. This submission provides the position of the Governmental Entities in this MDL.

[2] The Susceptible Vehicles include the following vehicles between model years 2011 and 2022: Hyundai Accent, Elantra, Elantra GT, Elantra Coupe, Elantra Touring, Genesis Coupe, Kona, Palisade, Santa Fe, Santa Fe Sport, Santa Fe XL, Sonata, Tucson, Veloster, Venue, and Veracruz; and the Kia Forte, K5, Optima, Rio, Sedona, Seltos, Sorento, Soul, and Sportage.

## II.    ANALYSIS

The Consumer Settlement is a welcome start toward providing consumers with a remedy for the rash of Hyundai and Kia vehicle thefts nationwide. The GE Plaintiffs defer to the Court's sound judgment and that of the Consumer Class Action Leadership Committee ("Consumer Committee") as to the value to consumers of the Consumer Settlement's monetary relief. As to the software update, the posture of the preliminary approval hearing is unusual in that there has already been a "test drive" of Defendants' proposed fix, as Defendants initially rolled out the voluntary software update in February 2023. *See Hyundai and Kia Launch Service Campaign to Prevent Theft of Millions of Vehicles Targeted by Social Media Challenge*, NHTSA (Feb. 14, 2023), https://www.nhtsa.gov/press-releases/hyundai-kia-campaign-prevent-vehicle-theft.   The GE Plaintiffs have therefore had a chance to assess the effectiveness so far of the software update. To date, the software update has failed the ultimate test as it pertains to the nuisance faced by the GE Plaintiffs, as theft rates remain markedly elevated in the communities represented.

### A.    The Governmental Entity Plaintiffs Take No Position on the Adequacy of the Monetary Relief Provided.

The GE Plaintiffs take no position on the strength of Consumer Plaintiffs' claims or the adequacy of the monetary relief provided in the Consumer Settlement. Our colleagues in the Consumer Committee are in that position, and they deem this to be an adequate settlement for consumers. The GE Plaintiffs support the settlement's provision for prompt relief to consumers, especially given that at least three major insurance companies are declining to cover certain Hyundai and Kia vehicles in various states due to the vehicles' susceptibility to theft. *See* Daniel Robinson, *The Challenges of Insuring*

*a Kia or Hyundai in 2023*, Market Watch (July 19, 2023), https://www.marketwatch.com/guides/insurance-services/insuring-your-kia-or-hyundai/ ("Allstate, Progressive and State Farm are among the car insurance providers that have announced they won't issue new policies in some states for certain Hyundai and Kia models.").

In seeking approval of the Consumer Settlement, counsel for Consumer Plaintiffs point to the benefit of avoiding "considerable risks inherent in litigation and unique difficulties presented by the facts at issue here." *See* ECF No. 166 at 19. Specifically, Consumer Plaintiffs acknowledge that their "claims are based in part on the interpretation and application of [Federal Motor Vehicle Safety Standard ("FMVSS")] No. 114, which has never been tested in a courtroom or applied by NHTSA in the manner alleged by [Consumer] Plaintiffs." *Id.* Unlike Consumer Plaintiffs' consumer protection claims, the public nuisance claims brought by the GE Plaintiffs pertain to broad harms to the public and Defendants' unreasonable interference with the right to public safety. The GE Plaintiffs need not prove that Defendants violated FMVSS No. 114. *See, e.g.*, *City of Gary ex rel. King v. Smith & Wesson Corp.*, 801 N.E.2d 1222, 1231 (Ind. 2003) ("Whether [a nuisance] is unreasonable turns on whether the activity, even if lawful, can be expected to impose such costs or inconvenience on others that those costs should be borne by the generator of the activity, or the activity must be stopped or modified.") (citing W. Page Keeton, *Prosser and Keeton on The Law of Torts* § 88 at 629–30 (5th ed. 1984)); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F. Supp. 2d 298, 309 (S.D.N.Y. 2006) ("Where the circumstances of a particular locality or the manner in which the activities are carried out creates a public nuisance, no statute criminalizing the activity is necessary for plaintiffs to proceed with their claim"); *Armory Park*

*Neighborhood Ass'n v. Episcopal Cmty. Servs. In Ariz.*, 712 P.2d 914, 922 (Ariz. 1985) ("[T]he inquiry in a nuisance claim is not whether the activity allegedly constituting the nuisance is lawful but whether it is reasonable under the circumstances."); *532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc.*, 750 N.E.2d 1097, 1104 (N.Y. 2001) ("A public nuisance exists for conduct that amounts to a substantial interference with the exercise of a common right of the public, thereby offending public morals, interfering with the use by the public of a public place or endangering or injuring the property, health, safety or comfort of a considerable number of persons."); *City of Greenwood v. Martin Marietta Materials, Inc.*, 299 S.W.3d 606, 616–17 (Mo. Ct. App. 2009) (similar); *see also MJD Props., LLC v. Haley*, 358 P.3d 476, 480 (Wash. Ct. App. 2015) (stating, in a private nuisance case, that "where nuisance exists, it is not excused by the otherwise lawful quality of the business or structure causing nuisance"); Restatement (Second) of Torts § 821B (Am. L. Inst. 1979) (defining public nuisance as "an unreasonable interference with a right common to the general public" and determining unreasonableness based on, among other factors "whether the conduct involves a significant interference with . . . the public safety"). Given the legal distinctions between the claims of the Consumer Plaintiffs and the GE Plaintiffs, the monetary relief and risk assessment applicable to the Consumer Plaintiffs' claims are inapplicable to the GE Plaintiffs.

The GE Plaintiffs therefore defer to the Consumer Committee and the Court's judgment as to the adequacy of the proposed monetary relief.

## B.    Defendants' Software Update Has Not Abated the Nuisance.

Separate from the monetary relief, the Consumer Settlement references a software update, available since February, that purportedly remedies the defect that makes millions of Hyundai and Kia vehicles so easy to steal. ECF No. 166 at 1. The GE Plaintiffs have grave concerns about at least three key aspects of the software update: 1) the efficacy of the software update, 2) the number of consumers that may not obtain the update, and 3) the number of Susceptible Vehicles that are not eligible for the update at all and therefore remain sitting ducks. These three flaws have contributed to the continued, elevated thefts experienced by the GE Plaintiffs. If Defendants' approach continues to fail to reduce the rate of thefts and associated crimes, the GE Plaintiffs will continue to demand that Defendants take the necessary steps to abate the public nuisance they have created by implementing a mandatory or voluntary recall to install engine immobilizers or some other equally effective anti-theft protection.

To date, Defendants' software update has not abated the nuisance, and the rate of thefts and associated crimes remains elevated. In fact, in the three months following the announcement and rollout of the software update, data gathered from the Associated Press showed "that the number of Hyundai and Kia thefts is still growing[.]" *See* Tom Krisher, *Hyundai and Kia thefts keep rising despite security fix*, AP News (May 9, 2023, 7:40 AM), https://apnews.com/article/hyundai-kia-tiktok-theft-stolen-8e0a353d24be0e7bce36e34c5e4dac51.

The threat posed by the thefts of these vehicles is compounded by the crimes committed with them. Even in the short time elapsed since the filing of the Consolidated Governmental Entities Complaint (ECF No. 175), there have been numerous tragic

incidents involving stolen Susceptible Vehicles. In Cleveland, a stolen Kia crashed into another vehicle, killing the 21-year-old driver of the other vehicle and critically injuring her passenger. *See* Exhibit A (Vince Grzegorek, *21-Year-Old Dead, Passenger in Critical Condition After Being Hit By Teens Driving Stolen Kia in Old Brooklyn*, Scene (Aug. 4, 2023, 9:15 AM), https://www.clevescene.com/news/21-year-old-dead-passenger-in-critical-condition-after-being-hit-by-stolen-kia-driven-by-teens-in-old-brooklyn-42491913). The individuals in the stolen Kia were between the ages of 12 and 17. *Id.*

In New York City, a stolen Hyundai Tucson struck a bicyclist and a taxi "before jumping the curb and hitting pedestrians." *See* Exhibit B (Eyewitness News, *Driver who allegedly hit 10 people in Midtown appears in court*, ABC 7 NY (Aug. 3, 2023, 12:59 PM), https://abc7ny.com/nyc-accident-car-strikes-pedestrians-42nd-and-lexington-breaking-news/13591512/). Ten people were taken to the hospital and three vehicles were damaged as a result of the incident. *Id.* And in Baltimore, "[e]ight teenagers . . . were apprehended for two incidents in Anne Arundel County involving stolen Hyundais and Kias." Mike Hellgren, *Eight Baltimore teens apprehended for Kia, Hyundai thefts in Anne Arundel County*, CBS News Baltimore (Aug. 2, 2023, 6:53 PM), https://www.cbsnews.com/baltimore/news/teenagers-charged-in-separate-carjacking-car-theft-incidents-in-brooklyn/. In one of those incidents, "five juveniles—a 14-year old, two 13-year olds and two more children younger than 13—stole a Hyundai Sonata[,] . . . ditched it[,]" and then stole a Kia SUV that smashed into a resident's fence. *Id.*

The threat to public safety is particularly impacting the nation's youth, as demonstrated by an incident in Milwaukee, Wisconsin in May of 2023, when a stolen Kia struck a school bus, injuring an 11-year-old boy stepping off the bus at the moment of the collision. *See* Exhibit C (Stephen Rivers, *Two Minors Injured After Stolen Kia Recklessly*

6

*Smashes   Into   School   Bus*, Carscoops (May 3, 2023, 1:29 PM), https://www.carscoops.com/2023/05/two-minors-injured-after-stolen-kia-recklessly-smashes-into-school-bus/). One of the individuals in the stolen Kia, also a minor, was "in critical condition and required brain surgery as a result of the accident." *Id.* The owner of the stolen Kia reports that it was the "fourth time someone had tried to steal the car"—even though "[s]he had a club steering wheel locking device on her vehicle." *Id.*

That the software update has not abated the nuisance comes as no surprise—the GE Plaintiffs are aware of numerous reports of Kia and Hyundai vehicles being stolen after receiving the software update. *See, e.g.*, Brianne Roesser, *Hyundai owner in N.Y. questions software updates after her car was stolen*, Spectrum News 1 (July 28, 2023, 5:00 PM), https://spectrumlocalnews.com/nys/central-ny/news/2023/07/28/kia-and-hyundai-software-updates-not-deterring-thefts (Buffalo resident's 2018 Hyundai Sonata was stolen out of her driveway after getting the anti-theft software update); *see also* Susan Hogan et al., *Some Kia owners question anti-theft software fix after cars were stolen following upgrade*, NBC Wash. (July 24, 2003, 8:19 PM), https://www.nbcwashington.com/investigations/some-kia-owners-question-anti-theft-software-fix-after-cars-were-stolen-following-upgrade/3390525/.

Moreover, Defendants have identified scenarios where the software logic is incompatible with vehicles equipped with remote start accessories. *See* Carly Shaffner, *Kia, Hyundai anti-theft software fixes a work in progress*, Auto News (June 2, 2023, 8:00 AM), https://www.autonews.com/regulation-safety/kia-hyundai-antitheft-software-fix-needs-fixes [https://perma.cc/HGH7-ZHZF]. Given these problems, it is unsurprising that consumers have not rushed out to have the software update installed.

GE STATEMENT RE PROPOSED CONSUMER SETTLEMENT AGREEMENT

In addition to these technical issues, the software update is being implemented as a voluntary service campaign, rather than a mandatory recall. Upon information and belief, nearly five million of the nine million Susceptible Vehicles have not yet received it or are ineligible, and thus remain susceptible to theft. *See* Patrick Olsen, *Nearly 5 Million Hyundai And Kia Models Need Anti-Theft Repairs*, CARFAX Blog (July 19, 2023), https://www.carfax.com/blog/kia-hyundai-theft-repairs (estimating that "more than 4.9 million [Hyundai and Kia] vehicles across the U.S. still need a fix").

Upon information and belief, two million of these vehicles cannot receive the software update at all. *See* ECF No. 166 at 12. Under the proposed Consumer Settlement, class members with these vehicles would receive "cash payments . . . for their purchase of equivalent anti-theft systems" such as steering wheel locks. *Id.* at 2. Unfortunately, the wheel locks are not entirely effective; Susceptible Vehicles equipped with steering wheel locks have still been stolen and, in some instances, used in connection with other crimes, including shootings. *See* ECF No. 175 ¶ 101. Defendants have thus far imposed much of the burden of distributing steering wheel locks to consumers on the GE Plaintiffs. *Id.* But municipalities and their police departments should not be forced to divert resources to address the public nuisance that Defendants created.

The efficacy of the software update will ultimately be determined by whether rates of Hyundai and Kia thefts normalize. Meanwhile, the GE Plaintiffs are faced with the ongoing serious interference with the right to public safety caused by the elevated rates of Hyundai and Kia thefts, and they will continue to incur associated costs. In light of the numerous media reports suggesting that Defendants' software update is ineffective, the GE Plaintiffs cannot in good faith evaluate the fairness of the Consumer Settlement in terms of the value added by the software update's purported fix. If preliminary approval

8

is granted, the GE Plaintiffs respectfully request prompt access to any confirmatory discovery related to the injunctive component of the Consumer Settlement before the final fairness hearing. *See* ECF No. 166 at 7.

### C. The Consumer Settlement Agreement Does Not Address the Losses of the Governmental Entity Plaintiffs Due to the Nuisance.

Although the Consumer Settlement provides various forms of reimbursement for consumers based on the extent of their loss and whether their vehicle is eligible for the software update, *see* ECF No. 166-2 at 12–16, it does not provide any remedy for the public nuisance costs and damages suffered by the GE Plaintiffs. Accordingly, if the Court grants preliminary approval of the Consumer Settlement, the GE Plaintiffs request that the Court's order make clear that the Consumer Settlement in no way releases the public nuisance or other claims asserted by the GE Plaintiffs in their track of the litigation.

### III.   CONCLUSION

The GE Plaintiffs appreciate the opportunity to comment on the proposed settlement. Should the Court have any questions, the Chair of the Governmental Entities Committee will be present at the August 15, 2023 Hearing on Preliminary Approval of the Consumer Settlement Agreement.

Dated this 10TH  day of August, 2023.          Respectfully submitted,

By */s/ Gretchen Freeman Cappio*
    Gretchen Freeman Cappio - *pro hac vice*
    KELLER ROHRBACK L.L.P.
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    Phone: (206) 623-1900
    Fax: (206) 623-3384
    gcappio@kellerrohrback.com

    *Chair of the Governmental Entities Committee*

# CERTIFICATE OF SERVICE

I certify that on August 10, 2023, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Gretchen Freeman Cappio*
GRETCHEN FREEMAN CAPPIO

GE STATEMENT RE PROPOSED CONSUMER SETTLEMENT AGREEMENT