Case 8:22-ml-03052-JVS-KES   Document 186   Filed 08/11/23   Page 1 of 5   Page ID #:4811

FILED
CLERK, U.S. DISTRICT COURT
8/11/23
CENTRAL DISTRICT OF CALIFORNIA
BY: ___eva___ DEPUTY

**The Office of Minnesota Attorney General Keith Ellison**

helping people afford their lives and live with dignity, safety, and respect • www.ag.state.mn.us

August 11, 2023

<u>Via Email</u>

Honorable James V. Selna
District Judge
Ronald Reagan Federal Building and United States Courthouse
411 West 4th Street, Room 1053
Santa Ana, CA 92701-4516

> Re: **Proposed Class Action Settlement**
> *In Re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation, Case No. 8:22-ml-03052-JVS-KES*

Dear Judge Selna:

We, the undersigned state Attorneys General, respectfully submit this letter to support the Governmental Entities' submission in the above-entitled litigation addressing the proposed Settlement Agreement in the private consumer class action and to alert the Court to the perspective of the undersigned Attorneys General on the proposed Settlement Agreement.[1]

The proposed Settlement Agreement's failure to adequately respond to the ongoing public safety crisis being caused by Hyundai and Kia's theft-prone vehicles is particularly concerning to us. The unique vulnerability of Hyundai and Kia vehicles to theft continues to harm consumers and threaten public safety in our states. We have been and will continue to be actively involved in efforts to address the harms to consumers and risks to public safety caused by Hyundai and Kia's theft-prone vehicles. We hope that alerting the Court to certain concerns we have regarding the proposed Settlement Agreement will lead to meaningful improvements that benefit class members, prevent additional traffic collisions, injuries, and fatalities, and abate the risk to public safety caused by Hyundai and Kia's theft-prone vehicles.

As this Court is aware, criminals and car thieves have learned about the lack of industry standard, engine-immobilizer technology in many Hyundai and Kia vehicles, along with the quick

---

[1] The Attorneys General submit this letter only to alert the Court to their impressions on the proposed Settlement Agreement and do not submit to this Court's jurisdiction. The Attorneys General reserve all rights to conduct civil investigations and bring litigation in their respective states in accordance with their sovereign authority.

Honorable James V. Selna
District Judge
August 11, 2023
Page 2

and simple way the vehicles' ignition cylinder can be exploited to start the engine. This has led to a drastic increase in thefts of Hyundai and Kia vehicles in communities across the country. As examples, thefts of Hyundai and Kia vehicles increased by 2,500 percent in Milwaukee, 836 percent in Minneapolis, 611 percent in St. Paul, and 400 percent in Columbus.

The problem does not stop there. These stolen vehicles have been used in furtherance of violent crimes and are frequently involved in traffic collisions. For example, in Minneapolis alone in 2022, thefts of Hyundai and Kia vehicles were tied to at least 5 homicides, 13 shootings, 36 robberies, and 265 motor vehicle collisions. Thieves recklessly driving these stolen vehicles have caused significant injuries and at least nine deaths. These are not just statistics; they are public safety incidents that have consumed law enforcement and emergency responder resources and have caused substantial and serious harm to our constituents and communities.

To address this public safety crisis, Hyundai and Kia have taken three meager and insufficient steps. None are anywhere close to what is needed to solve this problem. For example, the companies have attempted to profit from the theft epidemic by selling a "glass break sensor security kit" that consumers had to pay for out-of-pocket to purchase and install at a cost of at least $170. In addition, the companies have provided a limited number of steering wheel locks to certain law enforcement agencies to be distributed to owners of their theft-prone vehicles. Neither a "glass break sensor security kit" nor a wheel lock are sufficient to prevent thieves from stealing vehicles that are so vulnerable to theft that they can be stolen by a child within minutes.

Most recently, in February 2023, Hyundai and Kia launched service campaigns to update the software on some theft-prone vehicles. The update extends the length of the vehicles' alarm sound from 30 seconds to 1 minute and requires the key to be in the ignition to start the vehicle. Hyundai is also offering owners of its vehicles a window sticker that alerts would-be thieves the vehicle is equipped with anti-theft protection. This supposed "fix" is inadequate for at least four reasons. First, the software update is being rolled out in phases and will take months or years to complete. As of May 2023, Hyundai stated that it reached 6,000 installations per day.[2] If that rate was matched and maintained by Kia, it would still take nearly two years to install the update on the initially projected 8.3 million vehicles eligible for the software update. In the meantime, those vehicles that do not have the update installed will remain highly vulnerable to theft and a risk to public safety. Second, the service campaigns require consumers to proactively seek out the software update, and those who do not will continue to own a vehicle that is highly vulnerable to theft and poses a risk to public safety. Third, the software update is not even feasible for a significant number of the affected vehicles. Hyundai and Kia now estimate that 6.9 million

---

[2] *See* Tom Krisher and The Associated Press, *Hyundai and Kia's software patch is not match for TikTok, a screwdriver and a USB cable as auto theft soars nationwide*, Fortune (May 9, 2023), available at: https://fortune.com/2023/05/09/how-to-steal-hyundai-kia-tiktok-screwdriver-usb-cable-theft/.

Honorable James V. Selna
District Judge
August 11, 2023
Page 3

theft-prone vehicles are eligible for the software update.[3] This means that at least 2.3 million theft-prone Hyundai and Kia vehicles will remain on the roads under the proposed Settlement Agreement. Criminals and car thieves will continue to see theft-prone vehicles as easy pickings. Finally, the effectiveness of the software update is a serious question. Not only have we received reports from consumers who had their vehicles stolen in the manner popularized on social media *after* the software update was installed on their vehicle, but Hyundai and Kia have also informed dealers that there are compatibility problems with the software update for some theft-prone vehicles.[4]

None of the steps taken by Hyundai and Kia to date correct the underlying problem that their vehicles lack engine-immobilizer technology. Yet, the proposed Settlement Agreement doubles down on these inadequate half-measures.[5] For instance, the proposed Settlement Agreement requires Hyundai and Kia to provide a "software upgrade" for "Software Eligible Cass Vehicles."[6] As illustrated above, Hyundai and Kia's attempt to address their vehicles' lack of engine-immobilizer technology with software updates is an insufficient response to the problem at hand and does not adequately address the public safety crisis created by their theft-prone vehicles. Moreover, the proposed Settlement Agreement requires that Hyundai and Kia only make the software upgrade available for 360 days after they provide notice of availability for each eligible model or 360 days after final settlement approval, whichever is later. However, at the rate the companies were installing the software update as of May 2023, it would take 575 days to install the software upgrade on all 6.9 million eligible vehicles, potentially well-past the deadline in the proposed Settlement Agreement. The proposed Settlement Agreement also does not require Hyundai and Kia to adequately notify owners of Software Eligible Class Vehicles that they are eligible for the software upgrade, requiring only that they issue nationwide press campaigns and implement an awareness and instructional campaign. A notice requirement that does not require a written notice mailed to each eligible vehicle owner is insufficient to adequately inform consumers.

For consumers who own theft-prone vehicles that cannot receive a software upgrade, the proposed Settlement Agreement requires Hyundai and Kia to reimburse the consumer up to $300 per claim for the purchase of a wheel lock or purchase and installation of an anti-theft system,

---

[3] Consumer Class Pls.' Notice Mot. & Mot. Prelim. Approval Class Action Settlement at p. 12, *In Re: Kia Hyundai Vehicle Theft, Marketing, Sales Practices, and Products Liability Litigation*, 8:22-ml-03052-JVS-KES (C.D. Cal. July 20, 2023) ECF No. 166.

[4] Carly Schaffner, *Kia, Hyundai anti-theft software fixes a work in progress*, Automotive News (June 2, 2023), available at: *https://www.autonews.com/regulation-safety/kia-hyundai-antitheft-software-fix-needs-fixes*.

[5] Proposed Settlement Agreement at pp. 11-13, *In Re: Kia Hyundai Vehicle Theft, Marketing, Sales Practices, and Products Liability Litigation*, 8:22-ml-03052-JVS-KES (C.D. Cal. July 20, 2023) ECF No. 166-2.

[6] *Id.*, p. 11.

Honorable James V. Selna
District Judge
August 11, 2023
Page 4

including those available for purchase and installation at Hyundai dealers.[7] This remedy shifts the burden of addressing the problem from Hyundai and Kia to consumers, and is inadequate to protect consumers and public safety from criminals and car thieves who continue to target Hyundai and Kia's theft-prone vehicles.[8]

As noted by the Governmental Entity Plaintiffs, these measures have already been given a test drive of six months or more in the real world, which has shown that they do not and will not adequately protect consumers and abate the public safety crisis caused by Hyundai and Kia's theft-prone vehicles. In fact, Hyundai and Kia vehicles continue to be stolen at drastically higher rates than before thefts surged. In July 2023, for example, the number of Hyundai and Kia vehicles stolen in Minneapolis was 15 times the monthly average in 2021 (313 vs. 20). In St. Paul, roughly six times more Hyundai and Kia vehicles were stolen in July 2023 than the monthly average for 2021 (70 vs. 11). The service campaign's failure to stem the tide of vehicle thefts demonstrates that alternative remedies are necessary to prevent additional harm to consumers and the public.

We believe a voluntary recall to install engine-immobilizer technology in all theft-prone Hyundai and Kia vehicles—used alone or in tandem with a vehicle buyback program to repurchase theft-prone Hyundai and Kia vehicles from consumers—would be meaningfully better for class members and public safety than the software upgrade and anti-theft reimbursement provisions of the proposed Settlement Agreement. Specifically, it would remove burdens imposed on class members in the proposed Settlement Agreement and more quickly and effectively remediate the harms to consumers and risks to public safety caused by Hyundai and Kia's theft-prone vehicles. Moreover, recalls and buyback programs have been used in prior settlements involving vehicle manufacturers. Requiring Hyundai and Kia to quickly remove all theft-prone vehicles from the roads is necessary to protect public safety in our states, prevent additional traffic collisions, injuries, and fatalities, and adequately abate the risk to public safety caused by Hyundai and Kia's theft-prone vehicles.

---

[7] *Id.*, p. 13.

[8] Just as the Governmental Entity Plaintiffs, we take no position on the adequacy of the monetary relief provided in the Settlement Agreement. We do wish to emphasize, however, that the Settlement Agreement in no way impacts state Attorneys General sovereign authority to protect the public by enforcing its consumer protection and public nuisance laws and obtaining fulsome remedial relief to vindicate its quasi-sovereign interests of protecting the physical and economic health and well-being of our residents. *See, e.g., Curtis v. Altria Grp., Inc.*, 813 N.W.2d 891, 898, 901 (Minn. 2012) (recognizing private class settlement and release "are not binding on the State without express written consent of the State AG, approved by the court.").

Honorable James V. Selna
District Judge
August 11, 2023
Page 5

    We thank you for your consideration.

Respectfully submitted,

*[signature]*

**KEITH ELLISON**
Minnesota Attorney General

*[signature]*

**BRIAN SCHWALB**
District of Columbia Attorney General

*[signature]*

**KWAME RAOUL**
Illinois Attorney General

*[signature]*

**LETITIA JAMES**
New York Attorney General

*[signature]*

**MICHELLE HENRY**
Pennsylvania Attorney General

*[signature]*

**BOB FERGUSON**
Washington Attorney General