UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   August 16, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

---

Present: The
Honorable         **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**   **[IN CHAMBERS] <u>Order Regarding Motion for Preliminary Settlement Approval and Class Certification [166]</u>**

Consumer Class Plaintiffs[1] ("Plaintiffs") move for preliminary approval of their class action settlement and class certification with Defendants Hyundai Motor Company ("HMC"), Hyundai Motor America ("HMA"), KIA Corporation ("KC"), and KIA America, Inc. ("KA") (collectively "Defendants"). (Mtn., Dkt. No. 166.) Defendants do not oppose the motion. (Dkt. No. 177.) In accordance with the Court's order (Dkt. No. 178), Class Counsel submitted a supplemental declaration (Leadership Supp. Decl., Dkt. No. 180), and the Governmental and Insurance Entities submitted their positions on the Settlement (Gov't Supp. Decl., Dkt. No. 183; Ins. Supp. Decl., Dkt. No. 181). The Court heard oral argument on August 15, 2023.

For the following reasons, the Court **GRANTS** the motion for class certification and **DENIES** the motion for preliminary settlement approval. Plaintiffs may file an amended motion for preliminary settlement approval within 21 days of this order.

## I. BACKGROUND

### A.    Allegations

This multi-district litigation concerns Plaintiffs' allegations that Defendants

---

[1] The eighty-five named plaintiffs identified in pages 10–194 of the consolidated Amended Class Action Complaint. (<u>See</u> Dkt. No. 84 at 10–194.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

knowingly sold more than nine million Hyundai and Kia Class Vehicles[2] that do not contain vital safety components that, in connection with other design flaws, fail to implement Federal Motor Vehicle Safety Standards ("FMVSS" or "Safety Standards") promulgated by the National Highway Traffic Safety Administration ("NHTSA"). (Consolidated Amended Class Action Complaint ("CAC"), Dkt. No. 84 ¶¶ 7–8.) Specifically, each Class Vehicle suffers from a series of design flaws that allow thieves to steal it in less than ninety seconds, including: (i) the steering columns do not contain adequately secured collars or casings, allowing easy access to the ignition assembly; (ii) the ignition lock cylinders do not have a locking mechanism and can therefore be easily removed with minimal force, and in so doing, leaves the ignition switch intact; (iii) the exposed ignition switch can be started with any set of pliers or a USB connector; and (iv) the Class Vehicles do not contain engine immobilizers (collectively, the "Theft Prone Defect" or the "Defect"). (Id. ¶¶ 8, 1291–95, 1304–05, 1307–11, 1314–19.)

An engine immobilizer is an anti-theft device that can prevent vehicles from starting unless a verified code is received by a transponder module that controls the engine. (Id. ¶ 4.) This anti-theft device prevents the vehicle from being "hotwired" or started by any means other than an authorized key. (Id.)

Class Vehicles were sold with traditional "insert-and-turn" key ignition systems, as opposed to "push-to-start" ignitions, and do not contain engine immobilizers. (Id. ¶ 1291.) Thieves can quickly identify Hyundai and Kia vehicles that lack engine immobilizers by peering through vehicle windows and spotting traditional ignitions. (Id.) Because there are no alarms on the back windows, thieves can enter the vehicles without setting off alarms and easily pull off steering wheel casings. (Id. ¶¶ 1292–93.) Finally, thieves can expose the ignition switch with minimal force using a screwdriver and can start the car by using a set of pliers or a USB cable. (Id. ¶¶ 1294–95.)

---

[2] The Class Vehicles include certain model year 2011-2022 Hyundai and Kia vehicles manufactured without an engine immobilizer that were sold in the United States (including Puerto Rico, Virgin Islands, and Guam): 2011-2022 Accent; 2011-2022 Elantra; 2013-2020 Elantra GT; 2013-2014 Elantra Coupe; 2011-2012 Elantra Touring; 2011-2014 Genesis Coupe; 2018-2022 Kona; 2020-2021 Palisade; 2011-2022 Santa Fe; 2013-2018 Santa Fe Sport; 2019 Santa Fe XL; 2011-2019 Sonata; 2011-2022 Tucson; 2012-2017, 2019-2021 Veloster; 2020-2021 Venue; 2011-2012 Veracruz; 2011-2021 Forte; 2021-2022 K5; 2011-2020 Optima; 2011-2021 Rio; 2011-2021 Sedona; 2021-2022 Seltos; 2011-2022 Soul; 2011-2022 Sorento; and 2011-2022 Sportage. (See Dkt. No. 166-2 § I.G.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|----------|--------------------------|------|-----------------|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|-------|---------------------------------------------|

Plaintiffs allege that, because of the Theft Prone Defect, Class Vehicles are at increased risk of theft or forced entry. (Id. ¶¶ 1, 7, 1401.) The alleged Theft Prone Defect has existed since the first Class Vehicles were sold. (Id. ¶ 9.) Beginning in 2020, a group of teenagers in Milwaukee, who dubbed themselves the "Kia Boyz," discovered the alleged Defect and began to post videos showing how to steal Class Vehicles in a matter of seconds. (Id.) Shortly thereafter, thefts and attempted thefts of Class Vehicles increased dramatically. (Id. ¶¶ 1354–84.) Class Vehicles have been frequently stolen and used to commit crimes or taken for high speed "joy rides," causing injury to both people and property, sometimes resulting in death. (Id. ¶¶ 1357, 1370, 1401, 1403.)

    B.    *Procedural History*

The first case related to the Theft Prone Defect was filed in Milwaukee, Wisconsin, where the "Kia Boyz" were located. See Marvin v. Kia Am., Inc., et al., No. 2:21-cv-01146-PP (E.D. Wis.). As the incidence of thefts quickly spread throughout the country, beginning in July 2022, dozens of class actions were filed nationwide based on Defendants' omission of antitheft devices in Class Vehicles. (Leadership Decl., Dkt. No. 166-1 ¶ 6.) On August 31, 2022, a group of plaintiffs moved for consolidation pursuant to 28 U.S.C. § 1407. (See MDL No. 3052, Dkt. No. 1; Leadership Decl. ¶ 12.)

On December 13, 2022, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order transferring related actions from fourteen District Courts to this Court for consolidation and pretrial coordination. (Leadership Decl. ¶ 15.) To date, seventy-nine cases from more than two-dozen district courts are currently pending in this MDL. Shortly after the MDL was established, the JPML conditionally transferred related cases filed by the cities of Seattle, Washington and Columbus, Ohio alleging public nuisance caused by the Theft Prone Defect. Additional actions on behalf of the cities of Cincinnati, Ohio, Cleveland, Ohio, Buffalo, New York, and Madison, Wisconsin, among others, have also been filed. (See JPML Dkts. 142, 154, 159.) Additionally, on March 10, 2023, a group of insurance plaintiffs (the "Insurer Class Plaintiffs") filed a class action complaint on behalf of similarly situated insurance companies, and on March 21, 2023, the case was transferred to the MDL proceeding. See State Auto. Mut. Ins. Co. et al. v. Hyundai Motor Am. et al., No. 8:23-cv-00443 (C.D. Cal. Mar. 10, 2023) (Dkt. Nos. 1, 16).

On December 22, 2022, the Court appointed Mr. Berman, Ms. Fegan, and Mr. McClain as Initial Conference Counsel and tasked with conferring and obtaining

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

consensus on the most pressing issues affecting the case.  (Dkt. No. 2 at 2.)  On January 30, 2023, Initial Conference Counsel and Defendants submitted their Joint Preliminary Report outlining their respective positions regarding an appropriate leadership structure for plaintiffs' counsel, plans for discovery, and various anticipated issues in the litigation. (Dkt. No. 40.)  On February 9, 2023, the Court appointed Mr. Berman, Ms. Fegan, Mr. McClain, and Mr. Tellis to the Plaintiffs' Consumer Class Action Leadership Committee (collectively "Class Counsel").[3]  (Dkt. No. 50 at 3.)

Upon their appointment to the Plaintiffs' Consumer Class Action Leadership Committee, Class Counsel began a comprehensive effort to draft a consolidated complaint that details the factual, regulatory, and legal issues relating to the alleged Theft Prone Defect.  (Leadership Decl. ¶ 21.)  Counsel conducted an extensive investigation concerning the underlying Defect and spoke with hundreds of putative Class members and potential class representatives.  (Id.)

On April 10, 2023, Plaintiffs filed their Consolidated Amended Consumer Class Action Complaint ("CAC").  (Dkt. No. 84.)  The CAC includes eighty-five named Plaintiffs who purchased or leased vehicles across the United States and asserts claims under the laws of all 50 states.  (CAC ¶¶ 37-1206, 1536-4817.)  In general, Plaintiffs assert claims for (1) violation of state consumer protection statutes, (2) breach of implied warranty, (3) fraud by omission and concealment, and (4) unjust enrichment.  (Id. ¶¶ 1536–4817.)

The Parties submitted an agreed Protocol for the Production of Documents and Electronically Stored Information ("ESI") and Privilege Logs, a Proposed Stipulated Protective Order, and a Joint Stipulation Regarding Foreign Discovery on April 5, 2023. (Dkt. No. 79.)  The Parties exchanged initial disclosures on April 14, 2023.  (Leadership Decl. ¶ 24.)  On April 19, 2023, Plaintiffs served Defendants with their First Set of Requests for Production of Documents.  (Id.)

On May 1, 2023, Defendants moved to dismiss the CAC.  (Dkt. No. 95.)  In accordance with the Court's March 13, 2023 Order (Dkt. No. 70), this motion addressed

---

[3] The Court also appointed Jeffrey Goldenberg, Amanda K. Klevorn, and Tiffany Marko Yiatras to the Fact Discovery Committee, and Jason S. Rathod, Michael F. Ram, and Matthew D. Schelkopf to the Expert Discovery Committee. (Dkt. No. 50 at 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |

| | |
|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

the laws of California, Florida, Missouri, Pennsylvania, Texas, and New York. Plaintiffs analyzed the motion and began working on their opposition. (Leadership Decl. ¶ 25.) Class Counsel continued to litigate the case to learn of the strength and weakness of their positions and the risks they faced at class certification and trial, even while settlement negotiations continued. (Id.) On May 18, 2023, the Parties notified the Court that they reached a settlement in principle resulting in a fully executed Memorandum of Understanding. (See Dkt. No. 107.) On May 19, 2023, the Court stayed all deadlines in the Consumer Plaintiffs' cases that are unrelated to settlement approval. (Dkt. No. 111.)

C.    *Terms of the Proposed Settlement*

1.    The Proposed Settlement Class

The proposed settlement defines the class "Class" or "Settlement Class" as all persons or entities who purchased or leased a Class Vehicle in the United States (including Puerto Rico, Virgin Islands, and Guam). (Settlement, Dkt. No. 116-2 § I.E.) The settlement defines "Class Vehicle" as all MY211-2022 Kia and Hyundai vehicles manufacutred without an engine immobilizer that were sold in the United States (including Puerto Rico, Virgin Islands, and Guam), including: 2011-2022 Accent; 2011-2022 Elantra; 2013-2020 Elantra GT; 2013-2014 Elantra Coupe; 2011-2012 Elantra Touring; 2011-2014 Genesis Coupe; 2018-2022 Kona; 2020-2021 Palisade; 2011-2022 Santa Fe; 2013-2018 Santa Fe Sport; 2019 Santa Fe XL; 2011-2019 Sonata; 2011-2022 Tucson; 2012-2017, 2019-2021 Veloster; 2020-2021 Venue; 2011-2012 Veracruz; 2011-2021 Forte; 2021-2022 K5; 2011-2020 Optima; 2011-2021 Rio; 2011-2021 Sedona; 2021-2022 Seltos; 2011-2022 Soul; 2011-2022 Sorento; and 2011-2022 Sportage. (Id. § I.G.)

2.    Settlement Amount

The proposed Settlement creates a common fund of up to $145 million for certain out-of-pocket losses arising from the theft or attempted theft of a Class Vehicle and other expenses arising from obtaining the Software Upgrade, antitheft Software Upgrades for eligible Class Vehicles, reimbursement for the purchase of steering wheel locks made before the Software Upgrade was available, and cash payments to Class members whose Class Vehicles are ineligible for the Software Upgrade for their purchase of steering wheel locks and other anti-theft systems for their Class Vehicles. (Id. § II.A-D.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   August 16, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

 

**a.      Common Fund for Out-of-Pocket and Unreimbursed Losses**

The Settlement provides that Defendants will establish a non-reversionary common fund of at least $80 million and up to $145 million to pay Class members for certain out-of-pocket losses related to the alleged Theft Prone Defect, including those arising from the Qualifying Theft or Qualifying Theft Attempt of Class Vehicles.  (Id. § II.D.) "Qualifying Theft" is defined in the Settlement as the theft of a Class Vehicle through forcible entry and breach of the ignition system."  (Id. § I.Y.)  "Qualifying Theft Attempt" refers to an attempted theft of a Class Vehicle through forcible entry and either an attempted dismantling of the steering column or an attempted breach of the ignition system.  (Id.)

If all approved claims total less than $80 million these claims will receive a *pro rata* increase.  (Id. § II.D.6.)  The Settlement further states that, if approved claims do not equal or exceed $50 million, Defendants will receive a credit of $10 million for providing the common fund benefits before the approved claims are increased proportionately.  (Id.) If all approved claims exceed the maximum of $145 million, payments will decrease *pro rata*.  (Id.)

The Settlement Agreement provides relief for several categories of Class Members and losses suffered.  Class members may seek payment for certain losses related to Qualifying Thefts or Qualifying Theft Attempts, including total loss of Class Vehicles up to $6,125, damage to Class Vehicles and personal property up to $3,375, insurance expenses up to $375, and other related expenses up to $250 per incident. (Id. § II.D.3.) These benefits are available to Class members for each qualifying theft or attempted theft occurrence they experienced.  (Id. § II.D.4.)  Class members with Class Vehicles eligible for the Software Upgrade may also seek reimbursement from the common fund for lost income and childcare expenses up to $250 to obtain the Software Upgrade and for the purchase of new key fobs up to $350 per fob (limited to two fobs per Class Vehicle) where necessary to implement the Software Upgrade.  (Id. § II.D.5.)

*i.      Total Loss of Class Vehicle*

Class members may collect up to $6,125 per vehicle for the Total Loss of a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt.  (Id. § II.D.3.a.)  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

settlement defines "Total Loss" as one of any of the following: (a) the Class Vehicle was wrecked, destroyed, or damaged so badly (excluding pre-existing damage) that it is objectively uneconomical to repair it (i.e., repair costs would be at least 70% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition); (b) the Class member's disposal (through sale or donation) of the Class Vehicle for less than 30% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition; (c) the Class Vehicle was declared a Total Loss by an insurer, but the Class member was still not made whole by the insurance payments, as measured by the Black Book value (private party/average condition) minus total insurance settlement or payment received; or (d) it has been at least three months since the Qualifying Theft and the Class Vehicle has not been recovered.  (Id. § I.GG.)

A Class member may demonstrate through objectively reliable documentation that the Class Vehicle was not recovered after being stolen, which unless rebutted by Defendants, will be treated as a "Qualifying Theft."  (Id. § I.Y.)  If, before entry of a final approval order, Defendants resolve the Insurer Class Plaintiffs' subrogation claims, the Parties will convene to discuss whether and by how much the Total Loss cap should be increased.  (Id. § II.D.3.a.)

> b.    *Partial Loss: Damage to Class Vehicle and/or Stolen or Damaged Personal Property*

Class members may be paid up to $3,375 per incident for damage to a Class Vehicle and/or the value of personal property stolen or damaged due to a Qualifying Theft or Qualifying Theft Attempt.  (Id. §  II.D.3.b.)  As with the Total Loss Claims, if Defendants resolve the Insurer Class Plaintiffs' subrogation claims, the Parties will convene to discuss increasing the $3,375 cap.  (Id.)

> c.    *Insurance Expenses*

Class members may be paid up to $375 for paid insurance deductibles and increased insurance premiums for policies that include theft coverage resulting from a Qualifying Theft or Qualifying Theft Attempt.  (Id. § II.D.3.c.)

> d.    *Other Qualifying Theft or Qualifying Theft Attempt*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

*Expenses*

Class members may be paid up to $250 total per incident for the following out-of-pocket expenses related to a Qualifying Theft or Qualifying Theft Attempt: (i) car rental, taxi, ride share, or public transportation expenses not otherwise covered by insurance; (ii) towing costs necessary to transport the stolen Class Vehicle to or from a police or city storage facility, repair facility or other location necessary to inspect, repair, sell, or dispose of a stolen Class Vehicle, including a junkyard or storage facility; (iii) licensing fees, sales tax paid, registration fees, and other expenses directly associated with the purchase of new or replacement vehicle if there was a Total Loss; and (iv) costs associated with speeding tickets, red light tickets, or other penalties or fines incurred arising from a stolen Class Vehicle.  (Id. § II.D.3.d.)

> e.    *Software Upgrade Related Expenses*

Class members with Class Vehicles eligible for the Software Upgrade may be paid up to $250 total for lost income and childcare costs resulting from implementation of the Software Upgrade.  (Id. § III.D.5.b.)  They may also be reimbursed for the purchase of OEM-issued key fobs (up to $350 per fob; limited to two key fobs per Class Vehicle) necessary for implementation the Software Upgrade.  (Id. § III.D.5.a.)

> **b.    Anti-Theft Software Upgrade and Steering Wheel Lock Reimbursement for Eligible Class Vehicles**

Class members with eligible Class Vehicles may obtain a free Software Upgrade to address the lack of an engine immobilizer.  (Id. § II.A.1.)  The Software Upgrade is designed to prevent Class Vehicles that are locked using a key fob from starting without the key being present by the method of theft popularized on TikTok and other social media channels.  (Id. § II.A.2.)  The Software Upgrade will be implemented on eligible Class Vehicles presented to an authorized Hyundai or Kia dealership.  (Id. § II.A.3.)  Following installation, the dealer will affix decals to the Class Vehicle indicating it has additional anti-theft protection.  (Id. § II.A.4.)  As of the date of the motion, approximately seventy-five percent of Class Vehicles (6.9 million), are eligible for the Software Upgrade.  Defendants warrant the Software Upgrade will work as designed for the life of the Class Vehicle.  (Id. § II.A.2.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

Further, Defendants will issue a nationwide press campaign promoting the Software Upgrade and discussing its availability and effectiveness at preventing vehicle thefts, to include publication on social media platforms. They will also implement a driver awareness and instructional campaign regarding the Software Upgrade, and Class Counsel may confer with Defendants about the campaign's form and content. (Id. § II.A.6.)

Lastly, Class members with Class Vehicles eligible for the Software Upgrade may seek reimbursement up to $50 per Class Vehicle for the purchase of a steering wheel lock made at least thirty days before the Software Upgrade became available for their Class Vehicle. (Id. § II.B.1.) This Settlement benefit will be paid by Defendants separate from the common fund and it has no aggregate cap. (Id. § II.B.2.)

    **c.**    **Payments for Anti-Theft Devices for Class Vehicles Ineligible for the Software Upgrade**

Class members with Class Vehicles that are ineligible to receive the Software Upgrade may seek reimbursement of up to $300 per Class Vehicle for the purchase of a steering wheel lock, a glass breakage alarm or similar anti-theft system (including installation), or another aftermarket modification designed to deter or prevent theft so long as that purchase was made when the Class Vehicle was ineligible for the Software Upgrade. (Id. §§ I.X., II.C.1.) If the Class Vehicle becomes eligible to receive the Software Upgrade as of thirty days after the postmarked date of the mail notice notifying the Class member of such eligibility, no Qualifying Purchase made after that date will be reimbursable under the settlement. (Id. § II.C.1.)

Any Class member who received a steering wheel lock provided by Defendants, either from Defendants (for example, shipped directly or through a dealer) or through a law enforcement department) may submit a reimbursement claim up to $250 for the purchase and installation of a glass breakage alarm or similar anti-theft system (including installation), or another aftermarket modification designed to deter or prevent theft. (Id. § II.C.2.) There is no cap on the amount of reimbursement claims that Defendants are obligated to pay under this provision of the proposed Settlement, and these payments will not be made from the common fund.

    **3.**    Administrative Expenses, Fees, and Costs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   August 16, 2023

Title      In Re: Kia Hyundai Vehicle Theft Litigation

The Parties have jointly agreed to select Angeion Group, LLC to serve as the Settlement Administrator.  (Dkt. Nos. 182, 185.)   Any disputes that arise from a Settlement claim determination will be resolved by the Settlement Administrator, and for added oversight, Class Counsel have the right to participate in these appeals, review and comment on all appeals, obtain information and documents necessary to the appeals, and confer with the Settlement Administrator regarding appeal determinations.  (Settlement §§ II.F, III.C.5, III.D.5, III.E.2.)  The cost of appeals will be borne by Defendants and shall not come from the Common Fund.  (Id. § III.D.5.)  Finally, the Settlement provides that Defendants shall reimburse Class Counsel for reasonable time spent reviewing and evaluating appeals up to $600,000, provided that Class Counsel submit supporting documentation to Defendants.  (Id. § II.F.)  Such reimbursement shall be paid directly by Defendants, and not from the Common Fund.  (Id.)

The Settlement does not specify the estimated administrative costs, although it does state that such costs shall be paid by Defendants out of the Common Fund.  (Id. § II.E; III.C.)  The Settlement also does not specify the amount each Class Representative will receive, although the Long Form Notice appears to notify Class Members that each Representative will be paid $1,000 to be paid out of the Common Fund.  (Id., Ex. A at Section 19.)  The Court directs the parties to include these items in the Final Settlement Agreement.  Finally, the Settlement states that Class Counsel will seek attorneys' fees in an amount of no more than 25 percent of the Common Fund plus actual out of pocket expenses.  (Id. ¶ V.1.)

     4.    Release

The Settlement stipulates that all Class Members who do not opt out of the Settlement will release Defendants from liability for losses based on the facts alleged in any complaint filed in the MDL and claims related to theft of a Class Vehicle.  (Id. § VI.1.)  The Settlement does not release claims for death, personal injury, or subrogation claims by licensed insurers.  (Id. § VI.2.)

     5.    Notice

The Settlement provides for several methods of notice, including a dedicated settlement website and Long Form Notice, which will also be available on the website. (Id. § IV.C.3.)  The Long Form Notice and Claim Form will be sent via U.S. mail to all

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

reasonably identifiable Class members.  (Id. § IV.C.1.)  Class members for which
Defendants maintain email addresses will also receive emails containing a hyperlink to
the settlement website and electronic copies of the Long Form Notice and Claim Form.
(Id. § IV.C.2.)  Claims can be submitted by U.S. mail, email, and through the settlement
website.  (Id. §§ III.B.2, IV.C.3.)  Consumers will be able to enter their Vehicle
Identification Numbers ("VIN") on the settlement website, without completing a claim
form, to easily determine if their vehicles are Class Vehicles and whether it is eligible for
the Software Upgrade.  (Id. § IV.C.3.)  Hyperlinks to the settlement website will be
posted on Hyundai and Kia's respective websites.  (Id. § IV.B.)  Publication notice will
also be issued monthly.  (Id. § IV.C.4.)  Defendants will pay all Class notice and
settlement administration costs.  (Id. § II.E.)

      6.    Opt-Out and Objection Process

Any Class Member may object to the Settlement.  To state a valid objection to the
Settlement Agreement, an objecting Class member must provide a written objection with
the following information:

      (i) the case name and number, In re: Kia Hyundai Vehicle Theft
Marketing, Sales Practices, and Products Liab. Litig., Case No.
8:22-ML-3052 JVS(KESx) (C.D. Cal.);
      (ii) his, her, or their full name, current address, and current
telephone number;
      (iii) the model year and VIN(s) of his, her, or their Class
Vehicle(s);
      (iv) a statement of the objection(s), including all factual and
legal grounds for the position;
      (v) copies of any documents the objector wishes to submit in
support;
      (vi) the name and address of any lawyer(s) representing the
objecting Class member in making the objection or who may be
entitled to compensation in connection with the objection;
      (vii) a statement of whether the Class member objecting intends
to appear at the Final Approval Hearing, either with or without
counsel;
      (viii) the identity of all counsel (if any) who will appear on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

behalf of the Class member objecting at the Final Approval Hearing and all persons (if any) who will be called to testify in support of the objection; and

(ix) the signature of the Class member objecting, in addition to the signature of any attorney representing the Class member objecting in connection with the objection, and date of the objection.

(Id. § IX.2.)

In addition, any Class member objecting to the Settlement Agreement shall provide a list of any other objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any court in the United States in the previous five years. If the Class member or his, her, or their counsel has not made any such prior objection, the Class member shall affirmatively so state in the written materials provided with the objection. (Id.)

The Settlement does not state what the procedure for exclusion requests is. However, the Long Notice states that, in order to opt-out, prospective Class Members must submit an opt-out form online or by mail which includes the member's vehicle information and a clear statement reflecting their desire to be excluded from the Settlement. (Id., Ex. A at Section 15.) The Court directs the parties to include the opt-out process in the Final Settlement Agreement.

7.    Governmental Entities' Perspective

The Court requested that the Governmental Entities provide their perspective on the proposed settlement. (See Gov't Supp. Decl.) The Governmental Entities do not oppose the monetary portion of the Settlement. (Id. at 2.) They do, however, express concern regarding the adequacy of the software update portion of the Settlement, noting that the update has not markedly reduced theft rates in the communities represented. (Id.) Specifically, the Governmental Entities are concerned about "at least three key aspects of the software update: 1) the efficacy of the software update, 2) the number of consumers that may not obtain the update [because it is a voluntary service campaign, rather than a mandatory recall], and 3) the number of [Class] Vehicles that are not eligible for the update at all and therefore remain sitting ducks." (Id. at 5.) These deficiencies do not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |

| | |
|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

solve the ultimate problem of Class Members experiencing thefts or attempted thefts, and do not reduce the public nuisance experienced by the Governmental Entities.  (Id. at 5–7.)

> 8.    Insurers' Perspective

The Court requested that the insurers provide their perspective on the proposed settlement.  (See Ins. Supp. Decl.)  The insurers do not oppose the Settlement, although they request alterations to the Settlement's language to clarify that the Settlement does not apply to the insurers, the insurers do not waive any claims as a result of the Settlement.  (Id. at 3–7.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure Rule 23(e) states that "[t]he claims . . . of a certified class—or a class proposed to be certified for purposes of settlement—may be settled . . . or compromised only with the court's approval." "The parties must provide the court with information sufficient to enable it to determine whether to give notice of the propos[ed] [settlement] to the class." Fed. R. Civ. P. 23(e)(1)(A).  "The court must direct notice in a reasonable manner to all class members who would be bound by the proposal if giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the propos[ed] [settlement] under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1)(B)(i)(ii).

## III. DISCUSSION

### A.    Class Certification

The Court must determine whether it is "likely" that it will be able to "certify the class for purposes of judgment on the proposal."  Fed. R. Civ. P. 23(e)(1).  Accordingly, the Court must consider the class certification standards under Rule 23, and based on those standards must "reach a tentative conclusion that it will be able to certify the class in conjunction with final approval of the settlement."  Lusk v. Five Guys Enterprises LLC, 2019 WL 7048791, at *5 (E.D. Cal. Dec. 23, 2019) (quoting Newberg on Class Actions § 13:18 (5th ed)).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                Date   August 16, 2023

Title      In Re: Kia Hyundai Vehicle Theft Litigation

---

A motion for class certification involves a two-part analysis.  First, the plaintiffs
must demonstrate that the proposed class satisfies the requirements of Rule 23(a): (1) the
members of the proposed class must be so numerous that joinder of all claims would be
impracticable; (2) there must be questions of law and fact common to the class; (3) the
claims or defenses of the representative parties must be typical of the claims or defenses
of absent class members; and (4) the representative parties must fairly and adequately
protect the interests of the class. Fed. R. Civ. P. 23(a).

Second, the plaintiffs must meet the requirements for at least one of the three
subsections of Rule 23(b).  Under Rule 23(b)(1), a class may be maintained if there is
either a risk of prejudice from separate actions establishing incompatible standards of
conduct or judgments in individual lawsuits would adversely affect the rights of other
members of the class.  Under Rule 23(b)(2), a plaintiff may maintain a class where the
defendant has acted in a manner applicable to the entire class, making injunctive or
declaratory relief appropriate.  Finally, under Rule 23(b)(3), a class may be maintained if
"questions of law or fact common to class members *predominate* over any questions
affecting only individual members," and if "a class action is *superior* to other available
methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3)
(emphasis added).

The Plaintiffs bear the burden of demonstrating that Rule 23 is satisfied.  See
Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001), amended by
273 F.3d 1266 (2001).  The district court must rigorously analyze whether the plaintiffs
have met the prerequisites of Rule 23.  Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350
(2011) (quoting Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161 (1982)).  Rule 23 confers
"broad discretion to determine whether a class should be certified, and to revisit that
certification throughout the legal proceedings before the court." Armstrong v. Davis, 275
F.3d 849, 872 n.28 (9th Cir. 2001), abrogated on other grounds by Johnson v. California,
543 U.S. 499, 504–05 (2005).  The district court need only form a "reasonable judgment"
on each certification requirement "[b]ecause the early resolution of the class certification
question requires some degree of speculation." Gable v. Land Rover N. Am., Inc., No.
SACV 07-0376 AG (RNBx), 2011 U.S. Dist. LEXIS 90774, at *8 (C.D. Cal. July 25,
2011) (internal quotation marks omitted); see also Blackie v. Barrack, 524 F.2d 891, 901
n.17 (9th Cir. 1975).  This may require the court to "'probe behind the pleadings before
coming to rest on the certification question,'" and the court "'*must* consider the merits' if
they overlap with Rule 23(a)'s requirements." Wang v. Chinese Daily News, 709 F.3d

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

829, 834 (9th Cir. 2013) (quoting <u>Dukes</u>, 564 U.S. at 351; <u>Ellis v. Costco Wholesale
Corp.</u>, 657 F.3d 970, 983 (9th Cir. 2011)).

       1.    <u>Rule 23(a) Prerequisites</u>

       **a.**    **Numerosity**

Rule 23(a)(1) requires that a class be sufficiently numerous such that it would be
impracticable to join all members individually. In determining whether a proposed class
is sufficiently numerous to sustain a class action, the court must examine the specific
facts because the numerosity requirement "imposes no absolute limitations." <u>Gen. Tel.
Co. of the Nw. v. EEOC</u>, 446 U.S. 318, 330 (1980). While there is no exact cut-off,
courts generally find that the numerosity requirement is satisfied when a class includes at
least 40 members. <u>Rannis v. Recchia</u>, 380 Fed. App'x 646, 651 (9th Cir. 2010); <u>Mild v.
PPG Indus.</u>, 2019 U.S. Dist. LEXIS 1244352, at *4 (C.D. Cal. Jul. 25, 2019) (citing
<u>Consol. Rail Corp. v. Town of Hyde Park</u>, 47 F.3d 473, 483 (2d Cir. 1995)). "[A]
reasonable estimate of the number of purported class members satisfies the numerosity
requirement." <u>In re Badger Mountain Irrigation Dist. Sec. Litig.</u>, 143 F.R.D. 693, 696
(W.D. Wash. 1992).

In this case, the Class is estimated to be comprised of nine million individuals.
(Leadership Decl. ¶ 5.) This is sufficiently numerous as to render joinder impracticable.
<u>See</u> <u>Patrick v. Volkswagon Grp. of Am.</u>, No. 19-1908, 2021 WL 3616105, at *1 (C.D.
Cal. Mar. 10, 2021) (finding the numerosity requirement satisfied where class size
consisted of 14,847 members).

       **b.**    **Commonality**

Rule 23(a)(2) requires that questions of law or fact be common to the class. "The
existence of shared legal issues with divergent factual predicates is sufficient, as is a
common core of salient facts coupled with disparate legal remedies within the class."
<u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998). A common question
"must be of such a nature that it is capable of classwide resolution—means that the
determination of its truth or falsity will resolve an issue that is central to the validity of
each of the claims in one stroke." <u>Dukes</u>, 564 U.S. at 350. As the Ninth Circuit
explained in <u>Wang</u>, 709 F.3d at 834, there must be at least "a single common question" to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

satisfy the commonality requirement of Rule 23(a)(2)."

In this action, all Class Members' claims depend on answering many of the same issues, including (1) whether the Class Vehicles contain a safety defect; (2) whether Defendants had knowledge of the alleged Theft Prone Defect at the time of sale; (3) whether Defendants concealed the alleged Theft Prone Defect; and 94) whether Defendants' conduct violates the consumer protection statutes asserted, and the implied warranty of merchantability. Because these questions "drive the resolution of the litigation," the Court concludes that the commonality prong is met. See Dukes, 564 U.S. at 350.

### c.     Typicality

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." To meet the typicality requirement, the plaintiffs must show that: (1) "other members have the same or similar injury"; (2) "the action is based on conduct which is not unique to the named plaintiffs"; and (3) "other class members have been injured by the same course of conduct." Ellis v. Costco Wholesale Corp., 657 F.3d 970, 984 (9th Cir. 2011). "Under the rule's permissive standards, "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon, 150 F.3d at 1020. Plaintiffs can satisfy their burden through pleadings, affidavits, or other evidence. See Lewis v. First Am. Title Ins. Co., 265 F.R.D. 536, 556 (D. Idaho 2010).

Here, each putative Class Member purchased or leased a Class Vehicle, the design flaws of which make it highly susceptible to theft. Although there will inevitably be factual differences in each Class Members' case due to the nature of a car theft or attempt thereof, the Named Plaintiffs and the putative Class Members have ultimately suffered the same injury. They purchased or leased a Class Vehicle that has required or will require a repair to make the vehicle safe. (Leadership Decl. ¶ 6.) The Court therefore finds the typicality prong met.

### d.     Fair and Adequate Representation

Rule 23(a)(4) requires that the representative party "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This requirement is grounded in

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                     Date   August 16, 2023

Title      In Re: Kia Hyundai Vehicle Theft Litigation

constitutional due process concerns: 'absent class members must be afforded adequate representation before entry of a judgment which binds them.'" Evans v. IAC/Interactive Corp., 244 F.R.D. 568, 577 (C.D. Cal. 2007) (quoting Hanlon, 150 F.3d at 1020). Representation is adequate if (1) the named plaintiffs and their counsel are able to prosecute the action vigorously and (2) the named plaintiffs do not have conflicting interests with the unnamed class members; and (3) the attorney representing the class is qualified and competent. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 507, 512 (9th Cir. 1978).

The Court is not aware of any conflict in this case that would prevent Class Counsel or the named Plaintiffs to fairly and adequately represent the Class's interests. The Leadership Declaration does not state whether there are any known conflicts between Class Counsel and Class Members or the Class Representatives. The Court directs Class Counsel to properly inquire into potential conflicts and inform the Court accordingly. There are no known conflicts of interest between the named Plaintiffs and other class members. (Leadership Decl. ¶ 39.) Class Counsel conducted extensive investigations into the factual and legal issues affecting all Class members' claims, negotiated the Settlement with the assistance of a mediator, and are conducting confirmatory discovery to ensure the proposed Settlement is in the best interest of all Class members. (Id. ¶ 34.) The named Plaintiffs understand their duties as class representatives, have agreed to act in the best interest of the Class, and have actively participated in the litigation, and will continue to do so through final approval. (Id. ¶ 39.) Furthermore, there is no clear sailing provision, and Defendants may therefore oppose Class Counsel's motion for attorneys' fees when the time comes. See Scolaro v. RightSourcing, Inc., No. 16-1083, 2017 WL 11630969, at *7 (C.D. Cal. Mar. 20, 2017) (finding no signs of collusion or self-interest where attorneys' fees capped at 25% and settlement did not include a clear sailing agreement). The Court therefore finds that Class Counsel and named Plaintiffs will fairly and adequately protect the Class's interests.

> 2.    Rule 23(b)(3)

"Subdivision (b)(3) encompasses those cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Kamm v. Cal. City Dev. Co., 509 F.2d 205, 211 (9th Cir. 1975). A class may be certified under this subdivision where common questions of law and fact

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

predominate over questions affecting individual members, and where a class action is
superior to other means to adjudicate the controversy. Fed. R. Civ. Proc. 23(b)(3).

### a.    Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are
sufficiently cohesive to warrant adjudication by representation." Amchem Prods., Inc. v.
Windsor, 521 U.S. 591, 623 (1997) (citation omitted). "[I]n deciding whether to certify a
settlement-only class, 'a district court need not inquire whether the case, if tried, would
present intractable management problems.'" In re Hyundai and Kia Fuel Economy
Litigation, 926 F.3d 539, 558 (9th Cir. 2019) (citing Amchem, 521 U.S. at 620). Because
there is a heightened risk of collusion during settlement, "the aspects of Rule 23(a) and
(b) that are important to certifying a settlement class are 'those designed to protect
absentees by blocking unwarranted or overbroad class definitions.'" Id. (citing Amchem,
521 U.S. at 620). "A class that is certifiable for settlement may not be certifiable for
litigation if the settlement obviates the need to litigate individualized issues that would
make a trial unmanageable." Id.

As noted above, multiple common issues exist in this case. For example, whether
the Class Vehicles are similarly defective, whether Defendants knew of and had a duty to
disclose the defects, and whether Class members suffered an economic loss because of
the alleged misrepresentations and omissions. Each of these issues relies on evidence
common to all Class members, such as evidence of Defendants' state of mind. Although
there will be issues that must be determined for each individual, the common questions in
this case "are more prevalent or important than the non-common, aggregation-defeating,
individual issues." Tyson Foods, Inc. v. Bouaphakeo, 577 U.S. 442, 453 (2016); see In re
Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod. Liab. Litig.,
2012 WL 7802852, at *4 ("the common issue that predominates is whether the Subject
Vehicles have a common defect or defects. The same evidence is relevant to all class
members claims. Another common issue that predominates involves Toyota's
representations regarding their vehicles, upon which many class claims are based.").

### b.    Superiority

Finally, the Court considers whether a class action would be superior to individual
suits. Amchem, 521 U.S. at 615. Plaintiff must demonstrate superiority under Rule

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)          Date   August 16, 2023

Title       In Re: Kia Hyundai Vehicle Theft Litigation

23(b0(3) by a preponderance of the evidence.  See Zinser, 253 F.3d at 1186.  "A class action is the superior method for managing litigation if no realistic alternative exists." Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234–35 (9th Cir. 1996).  This superiority inquiry requires consideration of the following factors: "(a) the class members' interests in individually controlling the prosecution or defense of separate actions; (b) the extent and nature of any litigation concerning the controversy already begun by or against class members; (c) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (d) the likely difficulties in managing a class action."  See Zinser v. Accufix Research Institute, Inc., 253 F.3d 1180, 1190 (9th Cir. 2001); Fed. R. Civ. P. 23(b)(3)(A)–(D).

These factors favor adjudicating this case as a class action rather than individual suits.  Given the relatively small sums involved for each individual in  most cases compared to the cost of litigating a case, Class Members likely do not have an interest in individually controlling the prosecution of separate actions.  See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1023 (9th Cir. 1998) (overruled on other grounds) ("From either a judicial or litigant viewpoint, there is no advantage in individual members controlling the prosecution of separate actions.  there would be less litigation or settlement leverage, significantly reduced resources, and no greater prospect for recovery.").  Further, any individual Class Member who would like to pursue a separate action may opt out of the Settlement.  Finally, the Settlement provides a simple way for Class Members to meaningful resolve their claims quickly and efficiently.  Where a settlement "proposal is that there be no trial," manageability considerations weigh in favor of certifying the class for purposes of settlement approval.  See Amchem Prods. v. Windsor, 521 U.S. 591, 620 (1997); see also In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d at 556-57 ("manageability is not a concern in certifying a settlement class where, by definition, there will be no trial.").  Accordingly, a class action is superior to individual suits in this case.

The Court is prepared to give preliminary certification of the proposed class.

    B.    *Proposed Settlement*

Under Rule 23(e)(2) if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is "fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  "Courts reviewing class action settlements must

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |

| | |
|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (internal quotation marks omitted)).

When evaluating the fairness of a class action settlement, the Court must consider the following factors:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit had developed its own list of factors to be considered. See, e.g., In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 964 (9th Cir. 2011) (citing Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)). The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "The goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id.

A "higher standard of fairness" applies when, like here, parties settle a case before the district court has formally certified a litigation class. See Campbell v. Facebook, Inc.,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

951 F.3d at 1121 (citing Hanlon, 150 F.3d at 1026).  In such cases, "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." Id. (quoting Hanlon, 150 F.3d at 1026).

      1.     Adequacy of Representation by Class Representatives and Class Counsel

     Under Rule 23(e)(2)(A), the first factor to be considered is whether the class representatives and class counsel have adequately represented the class. This analysis includes "the nature and amount of discovery" undertaken in the litigation.  Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.  For a court to approve a proposed settlement, "[t]he parties must . . . have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement."  Acosta, 243 F.R.D. at 396 (internal quotation marks omitted).

     Here, there is no indication the Parties colluded to reach the proposed settlement. First, Class Counsel is experienced in consumer class actions, including having previously represented consumers in litigation against Hyundai and Kia.  (Leadership Decl. ¶ 37.)  Additionally, the named Plaintiffs understand their duties as class representatives, have agreed to act in the best interest of the Class, and have actively participated in the litigation, and will continue to do so through final approval.  (Id. ¶ 39.) Furthermore, there is no clear sailing provision, and Defendants may therefore oppose Class Counsel's motion for attorneys' fees when the time comes.  See Scolaro v. RightSourcing, Inc., No. 16-1083, 2017 WL 11630969, at *7 (C.D. Cal. Mar. 20, 2017) (finding no signs of collusion or self-interest where attorneys' fees capped at 25% and settlement did not include a clear sailing agreement).  Provided Class Counsel can attest that they have no conflicts with the Class Members or Class Representatives, the Court will find that no collusion occurred.

     Second, the parties have conducted sufficient discovery and investigation of the facts and law during the prosecution of this case prior to reaching a settlement. (Leadership Decl. ¶ 11, 21, 34.)  Prior to filing the CAC, Class Counsel reviewed publicly available sources of technical information, conducted hundreds of interviews with putative Class members and potential class representatives, reviewed technical

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

analyses relating to the design of the steering wheel columns and ignition assemblies in the Class Vehicles, and consulted with automotive experts.  (Id. ¶¶ 11, 21.)  After filing the CAC, the Parties exchanged initial disclosures and Plaintiffs served Defendants with their first set of requests for production of documents on April 19, 2023.  (Id. ¶ 23.)  The parties additionally researched the law as applied to the claims of Plaintiffs as well as potential defenses and damages.  (Id.)  The Parties have also started confirmatory discovery which will allow the Parties to verify the fairness of the proposed Settlement and obtain testimony from Defendants' employees with knowledge of the Defect and proposed remedies, including the Software Upgrade, prior to final approval.[4]  (Id. ¶ 35.)  The Court finds this investigation sufficient to meet Rule 23(e)(1)'s requirement.

2.    Negotiated at Arm's Length

The second Rule 23(e)(2) factor asks the Court to confirm that the proposed settlement was negotiated at arm's length.  Fed. R. Civ. P. 23(e)(2)(B).  As with the preceding factor, this can be "described as [a] 'procedural' concern[], looking to the conduct of the litigation and of the negotiations leading up to the proposed settlement."  Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes.  "[T]he involvement of a neutral or court-affiliated mediator or facilitator in [settlement] negotiations may bear on whether th[ose] [negotiations] were conducted in a manner that would protect and further the class interests."  Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes; accord Pederson v. Airport Terminal Servs., 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018) (the oversight "of an experienced mediator" reflected noncollusive negotiations).

The Court finds that the Settlement has been negotiated at arm's length.  The Parties engaged in substantial discovery prior to beginning mediation.  (See Leadership Decl. ¶¶ 11, 21.)  After Class Counsel's initial assessment of the case's strengths and weaknesses, the Parties engaged in multiple settlement discussions over the course of approximately eight months with the assistance of the Hon. Margaret M. Morrow (Ret.).  The first settlement meeting in October 2022 did not result in a resolution, but was productive and the Parties continued communicating with each other and Judge Morrow.  (Id. ¶ 14.)  After the Joint Panel for Multidistrict Litigation issued an order transferring related actions to the Central District of California for consolidation, the Parties resumed

---

[4] Plaintiffs in other tracks may have access to such confirmatory discovery to aid in the development of their respective cases.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

their settlement efforts.  (Id. ¶ 15.)

While the Parties continued to negotiate directly with each other, they were unable to reach a settlement agreement and once again enlisted the assistance of Judge Morrow on April 4 and 5, 2023.  (Id. ¶¶ 22–23.)  During these negotiations, the Parties continued actively litigating the case, including serving discovery requests filing a motion to dismiss.  (Id. ¶¶ 24–25.)  On May 18, 2023, the Parties reached a settlement in principle, resulting in a Memorandum of Understanding.  (Id. ¶ 26.)  After executing the Memorandum of Understanding, Plaintiffs continued their investigation into the Defect and began confirmatory discovery.  (Id. ¶¶ 29, 31.)  Over the following months, the Parties continued negotiations on the terms of the Settlement Agreement, including holding several telephonic and videoconference meetings in which they discussed key issues affecting the Class benefits.  (Id. ¶ 32.)

The Court finds that the Settlement was obtained at an arm's length.  The parties engaged in the numerous settlement negotiations, many of which were aided by a neutral third party.  See La Fleur v. Med. Mgmt. Int'l, Inc., Nos. 13-398, 13-1960, 2014 WL 2967475, at *4 (C.D. Cal. June 25, 2014) ("Settlements reached with the help of a mediator are likely noncollusive."); Callaway v. Mercedes-Benz United States LLC, No. 14-2011, 2017 WL 11707445, at *6 (C.D. Cal. Nov. 29, 2017) ("The extensive mediation process demonstrates to the Court that the proposed settlement is the product of serious, informed, noncollusive negotiations.").  The Parties additionally conducted substantial pre- and post-filing investigations, including both formal and informal discovery, all while actively litigating the case.  See Lyter v.Cambridge Sierra Holdings, No. 17-3435, 2019 WL 13153197, at *5 (C.D. Cal. June 18, 2019) (finding the parties sufficiently informed where they engaged in significant informal discovery and adversarial motion practice, including motion to dismiss).  Accordingly, the Court concludes that the Settlement satisfies Rule 23(e)(2).

### 3.    Adequacy of Relief Provided for the Class

The third factor the Court considers is whether "the relief provided for the class is adequate, taking in to account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and (iv) any agreement required to be

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C). Under this factor, the relief "to class members is a central concern." Fed. R. Civ. P. 23(e)(2)(C), Advisory Committee Notes.

### a.    Value of the Settlement Offer

First and foremost, the Court addresses the adequacy of the settlement offer. "To evaluate the adequacy of the settlement amount, 'courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer.'" Hefler v. Wells Fargo & Co., 2018 WL 6619983, at *8 (N.D. Cal. Dec. 18, 2018). The Court cannot conclude that the Settlement is fair and adequate based on the current arrangement.

Although the Class Vehicles encompass vehicles manufactured from 2011 to 2022, the maximum reimbursement amounts for a Total Loss and a Partial Loss are capped at $6,125 and $3,375, respectively, without accounting for the fact that a car manufactured in 2022 will be worth far more than one manufactured in 2011. (See Settlement §§ I.G, II.D.3.) This is in contrast to the Settlement accounting for the higher value of later model vehicles in determining whether a Class Member suffered a Partial or Total Loss. (See, e.g., id. § I.GG.) Accordingly, the Court directs the parties to fashion a matrix for reimbursement that aligns with each Class Member's vehicle's estimated value, rather than taking an average of all vehicles and reducing it by 40%. See, e.g., In re Toyota Motor Corp., Case No. 8:10-ml-02151, Dkt. No. 3556 at 15–18.

Additionally, while the Court accepts Class Counsel's estimation of the risk of going to trial due to their expertise in this area, discussed below, Class Counsel are not qualified to opine on the amount of damages incurred by each Class Member. Such assertions require evidentiary support, which can be supplied with a supplement declaration from a competent expert. The Court therefore directs the parties to submit a declaration from a qualified expert attesting to the methods of calculating each subcategory of monetary damages in Section II.D.3. Similarly, the expert should be prepared to opine on whether the amount of damages will make each Class Member whole.

Furthermore, the Governmental Entities have raised concerns regarding the efficacy of the Software Upgrade portion of the Settlement. First, the Governmental Entities contend that, because the Software Update is implemented on a voluntary basis,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   August 16, 2023

Title      In Re: Kia Hyundai Vehicle Theft Litigation

rather than a mandatory recall, less than half of the Class Vehicles have received the update. (See Gov't Supp. Decl. at 6–7.)  The Governmental Entities additionally assert that the Software Update is not achieving its intended result, and even those vehicles which have the update are still susceptible to theft. (Id. (citing to news reports of Class Vehicles being stolen after software update was implemented).)  Additionally, there are instances in which the software logic is incompatible with vehicles equipped with remote start accessories. (Id.)  At the hearing, the parties discussed their respective positions concerning the software's efficacy.  While the Court recognizes that this Settlement does not bind the Governmental Entities or the Insurers, who may pursue a different remedy better suited to solve the public nuisance problem, the Court nonetheless welcomes input concerning whether and how the software will work.  Based on the comments made at the preliminary settlement approval hearing, the Court is likely to require an evidentiary hearing on this topic.  The parties should be prepared to demonstrate the technology used in the Software Upgrade through a competent expert who will explain how it works, its shortcomings, and potential solutions.  Other parties will then have the opportunity to cross-examine the expert to complete the record.  This hearing need not take place prior to moving for preliminary approval again.

Both the Governmental Entities and the Insurance Entities have also noted that the Settlement's current language either does not expressly exclude them from the Settlement or is otherwise ambiguously worded such that whether they are excluded is unclear.  (See Gov't Supp. Decl. at 9; Ins. Supp. Br. at 2–7.)  The Court therefore directs the parties to meet and confer regarding edits to the Settlement's phrasing such that Governmental Entities and Insurance Entities are properly excluded.  Similarly, the Settlement's phrasing is ambiguous and overbroad as to which claims putative Class Members are waiving against Defendants by participating in the Settlement.  Specifically, the Court is not prepared to require Class Members to waive all claims against Defendants that are "related to theft of a Class Vehicle." (Settlement § VI.1.)  Releases should be limited to the facts of this case and should not encompass circumstances that are not addressed by the Settlement.

For these reasons, this factor weighs against a finding that the Settlement is fair and adequate at this time.

**b.      Costs, Risks, and Delay of Trial and Appeal**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

"A[] central concern [when evaluating a proposed class action settlement] . . . relate[s] to the cost and risk involved in pursuing a litigated outcome." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "Proceeding in this litigation in the absence of settlement poses various risks such as . . . having summary judgment granted against Plaintiffs[] or losing at trial. Such considerations have been found to weigh heavily in favor of settlement." Graves v. United Industries Corporation, 2020 WL 953210, at *7 (C.D. Cal. Feb. 24, 2020) (citing Rodriguez v. West Publishing Corp., 563 F.3d 948, 966 (9th Cir. 2009); Curtis-Bauer v. Morgan Stanley & Co., Inc., 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008)).

Here, there are substantial risks for the Class should the case proceed to trial. In addition to the level of risk, expense, and complexity typically present in class actions, see Linney v. Cellular Alaska P'ship, 151 F.3d 1234, 1238 (9th Cir. 1998), there are several other risk factors present in this case. Class Counsel note that, throughout settlement discussions, Defendants consistently maintained that all Class Vehicles met the required Federal Motor Vehicle Safety Standards ("FMVSS"). (Leadership Supp. Decl. ¶ 5.) In particular, defendants pointed to a letter from the National Highway Traffic Safety Administration to the California Attorney General concerning the Class Vehicle Thefts which stated that the FMVSS "does not require an engine immobilizer." (Id.) Class Counsel assert that this finding would be used to undermine Consumer Plaintiffs' claims based on a failure to disclose the lack of an immobilizer in the Class Vehicles. (Id.) Class Counsel further point to Defendants' recently-motion to dismiss in which they raise, among other things, the defense of causation, arguing that the injuries were caused by intervening criminal acts of third parties. (Id. ¶ 6; Mot. at 19.) Accordingly, the Settlement decreases Class Members' actual estimated damages by 40% to account for the aforementioned risks. (Leadership Supp. Decl. ¶ 8.)

Based on these risks and Class Counsel's attestation that the discount represents a fair amount, (id.) the Court finds that a 40% decrease is reasonable.

### c.   Effectiveness of Proposed Method of Relief Distribution

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C). "Often it will be important for the court to scrutinize the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)          Date   August 16, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

method of claims processing to ensure that it facilitates filing legitimate claims." Fed. R. Civ. P. 23(e), 2018 Advisory Committee Notes. "A claims processing method should deter or defeat unjustified claims, but the court should be alert to whether the claims process is unduly demanding." Id.

Claims can be submitted by U.S. mail, email, and through the settlement website. (Id. §§ III.B.2, IV.C.3.) Consumers will be able to enter their Vehicle Identification Numbers on the settlement website, without completing a claim form, to easily determine if their vehicles are Class Vehicles and whether it is eligible for the Software Upgrade. (Id. § IV.C.3.) Class Members seeking reimbursement for a Qualifying Purchase must submit the following documentation:

> (i) Proof of Ownership (official government, insurance, or bank document showing ownership of the Class Vehicle, including the Vehicle Identification Number);
> (ii) Proof of Payment (original or copy of documents showing the expenses incurred)

(Settlement, Ex. A. Section 11.)

Class Members seeking payment from the Common Fund must submit the following documentation:

> (i) Proof of Ownership (official government, insurance, or bank document showing ownership of the Class Vehicle, including the Vehicle Identification Number);
> (ii) Third-party Proof of Qualifying Theft or Proof of Qualifying Theft Attempt (e.g., a police report, insurance record, etc.);
> (iii) Documentation of prior reimbursements received; and
> (iv) Proof of payment if seeking reimbursement (e.g., credit card statement, receipt, etc.).

(Id.) Finally, Class Members submitting a claim for a Total Loss, the Class Member must submit documentation sufficient to show that their vehicle was damaged so badly that it was objectively uneconomical to repair the vehicle (i.e., the repair costs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

would be at least 70% of the vehicle's fair market value), that the vehicle was sold or donated for less than 30% of vehicle's fair market value, that the insurer declared the vehicle a total loss but the Class Member was still not made whole by insurance payments, or that at least three months have passed since the Qualifying Theft and the vehicle has not yet been recovered.  (Id.)

The Settlement provides that Class Members may request payment by either a check or a reimbursement debit card, either of which will be mailed to the address on the Claim form.  (Settlement § III.F.1, 3.)  If Class Members opt into the debit card payment option, they will have one year to redeem use their settlement amount, after which any remaining amount will be placed in escrow.  (Id. § III.F.5.)  Because each Class Member will self-report their contact information, including their mailing address, on their claim form, such information should be accurate.  The Court asks the parties to consider whether the methods of disbursement should be expanded to allow for direct deposits or electronic payment.  The Court is concerned about the possibility of checks being lost in the mail as well as the one year time limitation on the debit card option.

### d.    Terms of Proposed Award of Attorneys' Fees

Third, the Court must consider "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(c). In considering the proposed award of attorney's fees, the Court must scrutinize the Settlement for three factors that tend to show collusion: "(1) when counsel receives a disproportionate distribution of the settlement; (2) when the parties negotiate a "clear sailing arrangement," under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a "kicker" or "reverter" clause that returns unawarded fees to the defendant, rather than the class." Briseno v. ConAgra Foods, Inc., 998 F.3d 1014, 1023 (9th Cir. 2021) (internal quotation marks omitted) (citing In re Bluetooth Headset Products Liability Litigation, 654 F.3d 935, 947 (9th Cir. 2011)).  The Court must consider whether these factors exist in both pre- and post-class certification settlements. Id. at 1024.

The Ninth Circuit "has established 25% of the common fund as a benchmark award for attorney fees." Hanlon, 150 F.3d at 1029.  That benchmark is not rigid, and leaves room for the consideration of the circumstances of the case, including the results achieved, the risk of the litigation, the skill required, and the contingent nature of the fee.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|----------|--------------------------|------|-----------------|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|-------|---------------------------------------------|

Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1047–50 (9th Cir. 2002). Courts in this district typically adhere to this benchmark in cases in which there is little active litigation pre-settlement. See, e.g., Ramirez v. Rite Aid Corp., 2022 U.S. Dist. LEXIS 109069, at *23 (C.D. Cal. May 3, 2022) (25% "is a benchmark that this Court . . . almost always adheres to in cases where there is little active litigation pre-settlement"). The Court may exercise discretion to award attorneys' fees in a class action settlement by applying either the lodestar method or the percentage-of-the-fund method. Fischel v. Equitable Life Assurance Soc'y of U.S., 307 F.3d 997, 1006 (9th Cir. 2002).

Here, Class Counsel has indicated they will move for an award of attorneys' fees in an amount up to 25% of the common fund's value, in addition to out-of-pocket litigation expenses and $1,000 service awards for each Class Representative. (Settlement § V.1, 4.) The Court will assess the reasonableness of the actual request for attorneys' fees during the final approval stage. For purposes of preliminary settlement approval, an anticipated 25% attorneys' fee award request is not unreasonable, and weighs in favor of granting the motion.

4.      Equitable Treatment of Class Members

The final Rule 23(e)(2) factor turns on whether the proposed settlement "treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D). "Matters of concern could include whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Fed. R. Civ. P. 23(e)(2)(D), 2018 Advisory Committee Notes.

Some of the Settlement meet the Rule 23(e)(2) factor, while others do not. the Settlement provides differing types of relief to groups of Class Members who have suffered different types of harms. (Compare, e.g., Settlement § II.D.3.c (reimbursement for insurance deductibles capped at $375) with § II.D.3.a (reimbursement for Total Loss capped at $6,125).) This type of differentiation is permissible. However, the Settlement improperly treats all Class Members who suffered a Total Loss and a Partial Loss the same. As discussed above, the maximum monetary recovery for all Class Members who suffered a Total or Partial Loss is the same, even though some Class Members' vehicles could be worth substantially more than others, therefore suffering a greater monetary loss. The Court therefore weighs this factor against granting preliminary approval of the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

Settlement.

The Court is concerned about the potential $10,000,000 reversion to the Defendants if claims do not reach $50 million.  Given that most class members are not likely to be made whole, the Court believes it would be fairer to Class members to provide increased payouts if this eventuality occurs without any reversion.  The Court will not approve this provision.

Finally, the Court sees no basis to require Class members seeking to opt-out of the Settlement to provide data beyond their identity and ownership of the Class Vehicle.  The Court will not approve any further requirement.  Similarly, with respect to objectors, the Court sees no basis to require objectors to provide prior litigation history.  Objections should be assessed on their individual merit or lack thereof.  The Court will not require prior litigation history.

5.    Conclusion as to the Fairness of the Proposed Settlement

Because several of the Rule 23 factors weigh against a finding that the Settlement is fair and adequate, the Court declines to preliminarily approve the Settlement at this time.

*C.    The Proposed Settlement Meets the Notice Requirements Under Fed. R. Civ. P. 23(c)(2)(B).*

Under Rule 23(c)(2)(B), "for any class certified under Rule 23(b)(3)—or upon ordering notice under Rule 23(e)(1) to a class proposed to be certified for purposes of settlement under Rule 23(b)(3)—the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Rule 23(c)(2)(B) further states that the notice may be made by one of the following: United States mail, electronic means, or another type of appropriate means. Id. "The notice must clearly and concisely state in plain, easily understood language: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS (KESx)          Date   August 16, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

of a class judgment on members under Rule 23(c)(3)." Id.

Here, potential Class Members will be notified via the settlement website and a mailed long form notice and claim form sent to all reasonably identifiable class members. (Settlement § IV.C.1, 3.) Class members for which Defendants maintain email addresses will also receive emails containing a hyperlink to the settlement website and electronic copies of the long form notice and claim form. (Id. § IV.C.2.)

The dedicated settlement website will contain:

(i) instructions on how to obtain reimbursements;
(ii) a mechanism for Class members to submit claims electronically;
(iii) instructions for contacting the Settlement Administrator for assistance with claims;
(iv) the Long Form Notice;
(v) the Claim Form;
(vi) the Settlement Agreement;
(vii) any orders issued in this litigation approving or disapproving of the proposed Settlement; and
(viii) any other information the Parties determine is relevant to the Settlement.

(Id. § IV.C.3.)

Hyperlinks to the settlement website will be posted on Hyundai and Kia's respective websites. (Id. § IV.B.) Further, the Settlement Administrator will issue monthly press releases notifying the public of the existence of the Settlement, the Settlement website, and all opt-out and objection deadlines. (Id. § IV.C.4.) The Settlement Administrator will be available to respond to questions regarding the status of submitted claims, how to submit a claim, and other aspects of the settlement via a dedicated, toll-free telephone number and email. (Id. §§ III.B.2-3, IV.C.5.) Finally, the Settlement Administrator will report to Class Counsel the total number of notices sent to Class members by U.S. mail and email, along with the numbers of notices returned as undeliverable, so that counsel may ensure notice is appropriately disseminated. (Id. § IV.D.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | August 16, 2023 |
|---|---|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

The Court finds that the proposed notice meets the requirements of Rule
23(c)(2)(B).

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for class certification
and **DENIES** the motion for preliminary settlement approval.  Plaintiffs may file an
amended motion for preliminary settlement approval within 21 days of this order.

**IT IS SO ORDERED.**