Steve W. Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain
HUMPHREY FARRINGTON &
McCLAIN, P.C.
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Plaintiffs' Consumer Class Action Leadership Committee*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.:   8:22-ml-03052-JVS-KES **CONSUMER CLASS PLAINTIFFS' AMENDED NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| This document relates to: ALL CONSUMER CLASS ACTION CASES | Judge: Hon. James V. Selna Date:   October 30, 2023 Time:  1:30 p.m. Courtroom:  10C |

PLEASE TAKE NOTICE that at 1:30 p.m. on October 30, 2023, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James V. Selna, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Courtroom 10C, Santa Ana, California 92701, Consumer Class Plaintiffs[1] ("Plaintiffs") will and hereby do move for an order of the Court to:

1. preliminarily approve the Hyundai and Kia Vehicle Theft Litigation Consumer Plaintiffs Amended Settlement Agreement (the "Settlement," "Settlement Agreement," or "ASA");

2. certify the proposed Settlement Class under Rule 23(b)(3);

3. appoint Plaintiffs as class representatives;

4. appoint Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Elizabeth A. Fegan of Fegan Scott LLC, Kenneth B. McClain of Humphrey Farrington & McClain, P.C., and Roland Tellis of Baron & Budd, P.C. as Class Counsel;

5. order dissemination of Settlement notice to the Class pursuant to the notice plan set forth in the Amended Settlement Agreement; and

6. set a schedule for final settlement approval.

Plaintiffs' unopposed Motion is based on this Notice; the accompanying Memorandum of Law; the Joint Declaration of the Consumer Class Action Leadership Counsel ("Leadership Decl."), and all attachments thereto (including the Amended Settlement Agreement); the Proposed Order Granting Consumer Class Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; and all other papers filed and proceedings had in this Action.

This unopposed Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on September 26, 2023.

---

[1] The eighty-five (85) Plaintiffs are identified in pages 10-194 of the Consolidated Amended Class Action Complaint ("CAC"). Dkt. 84.

1  Dated: September 27, 2023.          Respectfully Submitted.

2                                      By:  */s/ Steve W. Berman*

3                                          Steve W. Berman, Esq.
                                           **HAGENS BERMAN SOBOL SHAPIRO**
4                                          **LLP**
                                           1301 Second Avenue, Suite 2000
5                                          Seattle, Washington 98101
                                           Telephone: 206-623-7292
6                                          Facsimile: 206-623-0594
7                                          Email: steve@hbsslaw.com

8

9                                      By:  */s/ Elizabeth A. Fegan*
                                           Elizabeth A. Fegan, Esq.
10                                         **FEGAN SCOTT LLC**
11                                         150 S. Wacker Dr., 24th Floor
                                           Chicago, Illinois 60606
12                                         Telephone:   312.741.1019
13                                         Fax:         312.264.0100
                                           Email: beth@feganscott.com
14

15                                     By:  */s/ Kenneth B. McClain*
                                           Kenneth B. McClain, Esq.
16                                         **HUMPHREY FARRINGTON & McCLAIN**
17                                         221 W. Lexington Ave., Suite 400
                                           Independence, Missouri 64050
18                                         Telephone:   816.836.5050
19                                         Facsimile:   816.836.8966
                                           Email: kbm@hfmlegal.com
20

21                                     By:  */s/ Roland Tellis*
                                           Roland Tellis, Esq.
22                                         **BARON & BUDD, P.C.**
23                                         15910 Ventura Boulevard, Suite 1600
                                           Encino, California 91436
24                                         Telephone: 818.839.2333
25                                         Facsimile:   214.523.5500
                                           Email: rtellis@baronbudd.com
26
27                                         *Consumer Class Action Leadership Counsel*
                                           *and Counsel for Plaintiffs*
28

iv

1

**TABLE OF CONTENTS**

2

<u>Page</u>

3

4

I.    INTRODUCTION ............................................................................. 1

5

II.   FACTUAL BACKGROUND ............................................................. 6

6

    A.    Plaintiffs' Allegations concerning the Theft Prone Defect ..................... 6

7

    B.    History of the Litigation .......................................................... 7

8

    C.    Settlement Negotiations and the Proposed Settlement ........................ 10

9

III.   THE SETTLEMENT BENEFITS FOR THE CLASS .................................... 11

10

    A.    Common Fund for Out-of-Pocket and Unreimbursed Losses ............... 12

11

12

        1.    Total Loss of Class Vehicle ................................................ 13

13

        2.    Damage to Class Vehicle and/or Stolen or Damaged
             Personal Property ........................................................... 14

14

        3.    Insurance Expenses ......................................................... 14

15

16

        4.    Other Qualifying Theft or Qualifying Theft Attempt
             Expenses ..................................................................... 14

17

18

        5.    Software Upgrade Related Expenses ...................................... 15

19

    B.    Anti-Theft Software Upgrade and Steering Wheel Lock
        Reimbursement for Eligible Class Vehicles ................................... 15

20

21

    C.    Payments for Anti-Theft Devices for Class Vehicles
        Ineligible for the Software Upgrade ............................................ 16

22

23

IV.   ARGUMENT ............................................................................... 17

24

    A.    The proposed Settlement merits preliminary approval. ....................... 17

25

        1.    The Settlement is the product of serious, informed,
             arm's-length negotiations by experienced Class

26

             Counsel. ..................................................................... 18

27

        2.    The Settlement treats all Class members equitably. ..................... 21

28

v

3.   The Settlement has no obvious deficiencies. ...............................22

4.   The Settlement falls within the range of possible approval........................................................................................22

a.   The strength of Plaintiffs' case and risk, expense, complexity, and likely duration of further litigation ...................................................23

b.   The risk of maintaining class action status through trial ............................................................25

c.   The amount and type of relief offered in settlement......................................................................25

d.   The extent of discovery completed and the stage of the proceedings ......................................26

e.   The experience and views of counsel.................................27

f.   The presence of a governmental participant .....................28

g.   The reaction of class members ...........................................28

B.   The Settlement Class should be certified. .............................................28

C.   The Court should order dissemination of Class notice. ..........................29

1.   The proposed Settlement provides the best method of notice practicable. ..................................................................30

2.   The proposed Notice plan informs Class members of their rights. ..................................................................................31

3.   Notice to Federal and State Officials.............................................32

V.   CONCLUSION ...........................................................................................32

011112-11/2338238 V1

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Acosta v. Trans Union, LLC*,
   243 F.R.D. 377 (C.D. Cal. 2007)...................................................................17, 25

*Alberto v. GMRI, Inc.*,
   252 F.R.D. 652 (E.D. Cal. 2008) .........................................................................17

*Altamirano v. Shaw Indus., Inc.*,
   2015 WL 4512372 (N.D. Cal. July 24, 2015) .....................................................21

*Banh v. Am. Honda Motor Co.*,
   2021 WL 3468113 (C.D. Cal. June 3, 2021).......................................................32

*Byrne v. Santa Barbara Hosp. Servs., Inc.*,
   2017 WL 5035366 (C.D. Cal. Oct. 30, 2017) .....................................................20

*Callaway v. Mercedes-Benz United States LLC*,
   2017 WL 11707445 (C.D. Cal. Nov. 29, 2017) .......................................17, 18, 19

*Casey v. Doctor's Best, Inc.*,
   2022 WL 1726080 (C.D. Cal. Feb. 28, 2022) .....................................................24

*Churchill Vill., L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .......................................................................18, 29

*Cisneros v. Airport Terminal Servs.*,
   2021 WL 3812163 (C.D. Cal. Mar. 26, 2021) ....................................................22

*Clesceri v. Beach City Investigations &
   Protective Servs.*,
   2011 WL 320998 (C.D. Cal. Jan. 27, 2011)........................................................26

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) ...............................................................................25

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .............................................................................17

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

011112-11/2338238 V1

*Hemphill v. San Diego Ass'n of Realtors*,
225 F.R.D. 616 (S.D. Cal. 2004) ....................................................... 20

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) ............................................................ 17

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) ............................................ 19

*La Fleur v. Med. Mgmt. Int'l, Inc.*,
2014 WL 2967475 (C.D. Cal. June 25, 2014).................................... 19

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998) .................................................... 24, 26

*Lyter v. Cambridge Sierra Holdings*,
2019 WL 13153197 (C.D. Cal. June 18, 2019).................................. 19

*Maree v. Deutsche Lufthansa AG*,
2023 WL 2563914 (C.D. Cal. Feb. 13, 2023) .............................. 18, 19

*Marvin v. Kia America, Inc., et al.*,
No. 2:21-cv-01146-PP (E.D. Wis.) .............................................. 7, 19

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) ............................................................ 25

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ....................................................... 20, 27

*Moreno v. Pretium Packaging, L.L.C.*,
2021 WL 3673845 (C.D. Cal. Aug. 6, 2021) .................................... 23

*Navarrete v. Sprint United Mgmt. Co.*,
2021 WL 4352903 (C.D. Cal. Mar. 2, 2021) .................................... 28

*Officers for Just. v. Civ. Serv. Comm'n of*
*City & Cty. of S.F.*,
688 F.2d 615 (9th Cir. 1982) ....................................................... 23, 26

*In re Omnivision Techs.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007)...................................... 25, 28

*In re Pac. Enterprises Sec. Litig.,*
   47 F.3d 373 (9th Cir. 1995) ................................................................................27

*Rannis v. Recchi,*
   380 F. App'x 646 (9th Cir. 2010) ......................................................................31

*Scolaro v. RightSourcing, Inc.,*
   2017 WL 11630969 (C.D. Cal. Mar. 20, 2017) .................................................20

*Shahbazian v. Fast Auto Loans, Inc.,*
   2019 WL 8955420 (C.D. Cal. June 20, 2019)....................................................23

*State Automobile Mutual Insurance Company et al.*
   *v. Hyundai Motor America et al.,*
   No. 8:23-cv-00443 (C.D. Cal. Mar. 10, 2023) ...................................................8

*Staton v. Boeing Co.,*
   327 F.3d 938 (9th Cir. 2003) .......................................................................17, 23

*Sullivan v. Am. Express Publ'g Corp.,*
   2011 WL 2600702 (C.D. Cal. June 30, 2011).....................................................30

*In re Toyota Motor Corp.,*
   Case No. 8:10-ml-02151, Dkt. No. 3556.............................................................3

*In re Toyota Motor Corp. Unintended Acceleration*
   *Mktg., Sales Pracs., & Prod. Liab. Litig.,*
   2012 WL 7802852 (C.D. Cal. Dec. 28, 2012)..............................................17, 18

*In re Toyota Motor Corp. Unintended Acceleration*
   *Mktg., Sales Practices, & Prods. Liab. Litig.,*
   2013 WL 12327929 (C.D. Cal. July 24, 2013) ...................................................28

*True v. Am. Honda Motor Co.,*
   749 F. Supp. 2d 1052 (C.D. Cal. 2010)..............................................................28

*West v. Circle K Stores, Inc.,*
   2006 WL 1652598 (E.D. Cal. June 13, 2006).....................................................22

*Zakikhani v. Hyundai Motor Co.,*
   2022 WL 17224701 (C.D. Cal. Oct. 20, 2022) ..................................................17

*Zakikhani v. Hyundai Motor Co.,*
   2023 WL 4544774 (C.D. Cal. May 5, 2023)......................................................22

**Statutes & Rules**

28 U.S.C. § 1407 ..................................................................................... 7

28 U.S.C. § 1715 .................................................................................... 32

Fed. R. Civ. P. 23 ............................................................ 17, 23, 28, 29, 31, 32

**Other Authorities**

A. Conte & H.B. Newberg, Newberg On Class Actions ...................... 18, 19, 20, 24

011112-11/2338238 V1

# I.    INTRODUCTION

This multi-district litigation concerns Plaintiffs' allegations that Defendants Hyundai Motor Company ("HMC"), Hyundai Motor America ("HMA"), KIA Corporation ("KC"), and KIA America, Inc. ("KA") (collectively "Defendants")[2] produced and sold more than nine million vehicles, which they marketed as safe and reliable, while knowing the vehicles contained a safety defect that makes them highly prone to theft. Over the course of eight months, under the guidance of renowned mediator the Honorable Margaret M. Morrow (Ret.), the Parties reached a proposed settlement, and Plaintiffs moved for preliminary approval of that settlement and for class certification. In its August 16, 2023, Order Regarding Motion for Preliminary Approval and Class Certification (Dkt. No. 200, the "Order"), the Court granted the motion for class certification and denied the motion for preliminary settlement approval. The Order suggested that certain changes be made to the settlement, and for weeks following the issuance of the Order, the Parties have been negotiating amendments and have reached agreement on a proposed Settlement[3] that addresses all the Court's concerns and, as before, offers significant relief to millions of current and former owners and lessees of Class Vehicles[4] presently amid a nationwide crime epidemic relating to their vehicles.

---

[2] Plaintiffs and Defendants are collectively referred to as the "Parties."

[3] All capitalized terms herein have the same meaning as in the Amended Settlement Agreement ("ASA"), attached to the Amended Leadership Decl. as Ex. 1.

[4] The Class Vehicles include certain model year 2011-2022 Hyundai and Kia vehicles manufactured without an engine immobilizer that were sold in the United States (including Puerto Rico, Virgin Islands, and Guam): 2011-2022 Accent; 2011-2022 Elantra; 2013-2020 Elantra GT; 2013-2014 Elantra Coupe; 2011-2012 Elantra Touring; 2011-2014 Genesis Coupe; 2018-2022 Kona; 2020-2021 Palisade; 2011-2022 Santa Fe; 2013-2018 Santa Fe Sport; 2019 Santa Fe XL; 2011-2019 Sonata; 2011-2022 Tucson; 2012-2017, 2019-2021 Veloster; 2020-2021 Venue; 2011-2012 Veracruz; 2011-2021 Forte; 2021-2022 K5; 2011-2020 Optima; 2011-2021 Rio;

The key amendments contained in the Amended Settlement Agreement are identified below. For the Court's convenience, attached as Exhibit A is a redlined version of the Amended Settlement Agreement identifying all edits made to the original Settlement Agreement.

1. <u>No Common Fund credit</u>. The Amended Settlement Agreement eliminates the potential $10,000,000 credit to the Defendants if claims do not reach $50 million.  ASA §§ II.D.6-7, III.C.4-5; *see also* Order at 30 (asking for potential credit to be removed).

2. <u>Reimbursement that aligns estimated vehicle value with Total Loss and Partial Loss recoveries</u>. The prior Total Loss and Partial Loss[5] reimbursement caps, which were based on the average value of a class vehicle, have been eliminated and replaced with the following: (a) for Total Loss, 60% of the Black Book value of the vehicle; and (b) for Partial Loss, $3,375 or 33% of the Black Book value of the vehicle, whichever is greater. ASA § II.D.3. This sliding scale eligible claim schedule satisfies the Court's directive that reimbursement amounts align with each Class Vehicle's estimated value, rather than taking an average class vehicle value and reducing it by 40% based on litigation risk. *See* Order at 24; *see also* Order at 29 (noting concern with maximum recoveries being the same, "even though some Class Members' vehicles could be worth substantially more than others, therefore suffering a greater monetary loss."). This amendment is equitable in that it treats all claimants equally within a claims bucket,

---

2011-2021 Sedona; 2021-2022 Seltos; 2011-2022 Soul; 2011-2022 Sorento; and 2011-2022 Sportage. ASA § I.G.

[5] Herein, "Partial Loss" is shorthand for damage to a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt (that does not result in Total Loss) and for the value of personal property stolen or damaged as a result of a Qualifying Theft or Qualifying Theft Attempt.

while maintaining the proportional difference between a Total Loss and Partial Loss claim.[6]

3. <u>Reimbursement for licensing fees, etc</u>. Reimbursement for "[l]icensing fees, sales tax paid, registration fees and other expenses directly associated with the purchase of new/replacement vehicle if there was a Total Loss due to a Qualifying Theft or Qualifying Theft Attempt" has been moved from the "other related expense" bucket of § II.D.3.d (which is subject to a $250 cap) to the Total Loss bucket in §II.D.3.a. In other words, an eligible class member's licensing fees, sales tax, and registration fees are now added to the "value" of a Total Loss vehicle reimbursed at 60%. The effect of this amendment is to increase the eligible reimbursement amount for this category of other expense.

4. <u>Supporting expert declaration</u>. The Court directed the Parties to "submit a declaration from a qualified expert attesting to the methods of calculating each subcategory or damages" and "whether the amount of damages will make each Class Member whole." With this Motion, Class Counsel submit the Declaration of Edward M. Stockton in Support of Plaintiffs' Motion for Class Action Settlement Approval. Mr. Stockton is an economist who has extensive experience evaluating economic harm in the retail automotive context. Among many other things, Mr. Stockton opines on the impact of the foregoing amendments; that the amendments directly respond to the Court's directive to tie compensation amounts to vehicle value; and likely Class Member recoveries.

---

[6] The Order directed the Parties to also fashion a matrix, citing *In re Toyota Motor Corp.*, Case No. 8:10-ml-02151, Dkt. No. 3556 at 15-18. Order at 24. The parties have agreed that the Settlement Administrator "shall use a table of Black Book values that estimates the value of the subject Class Vehicle based on model and model year." *See* ASA § III.C.3.

011112-11/2338238 V1

5. <u>More limited release</u>. Responding to the Court's directive that releases "should be limited to the facts of this case and should not encompass circumstances that are not addressed by the Settlement" (Order at 25), the Parties have further limited the release to claims "relating to Class Vehicles and the method of theft popularized on TikTok and other social media channels relating to the lack of engine immobilizers as alleged in this Action . . . ." ASA § VI.1.

6. <u>Governmental Entity and Insurance Entity claims are not released</u>. By adding definitions for "Government Entities" and "Insurance Entities" (*see* ASA §§ I.N.-O.), the Amended Settlement Agreement clarifies that these entities are not subject to the release (*id.* §§ I.CC., VI.2.) and are not part of the Settlement Class (*id.* §§ I.E., VIII.3.). *See* Order at 25.

7. <u>Expanded methods of payment</u>. In response to the Court's suggestion that the Parties "consider whether the methods of disbursement should be expanded to allow for direct deposits or electronic payment" (Order at 28), payment options have expanded to include digital payment via ACH, PayPal, Venmo, Zelle or prepaid Mastercard (with the balance on the Mastercard transferable to the card holder's bank with no fee), in addition to by check. *See* ASA § III.F.

8. <u>Class representative service payments</u>. As requested by the Court, any approved Class Representative service payments will be limited to $1,000. *See* ASA § V.1; Order at 10.

9. <u>Opt-outs and objectors</u>. The Court requested that the opt-out process described in the long-form notice be included in the Amended Settlement Agreement (Order at 12), that opt-outs need only provide "their identity and ownership of the Class Vehicle" (*id.* at 30), and that objectors need not

1   provide prior litigation history (*id.*). The Parties have made these

2   amendments. *See* ASA § VIII.2., 5.; § IX.2.

3                          *        *        *

4   In sum, the proposed Settlement provides substantial benefits to Class

5   members in the form of a non-reversionary common fund of $80,000,000, which may

6   be increased up to $145,000,000 based on approved claims, to compensate Class

7   members for losses arising from the thefts and attempted thefts of their Class

8   Vehicles and certain other expenses related to obtaining the free anti-theft Software

9   Upgrade.

10   For eligible Class Vehicles, the proposed Settlement also provides a free anti-

11   theft Software Upgrade that remedies the alleged defect and reimbursement (paid

12   separately from the Common Fund). For Class Vehicles ineligible for the Software

13   Upgrade, the proposed Settlement provides tens of millions or more in cash payments

14   to Class members for their purchase of equivalent anti-theft systems (also paid

15   separately from the Common Fund).

16   This proposed Settlement secures an *immediate* solution to a real-word

17   problem when success at trial would otherwise be years away. Based on their

18   extensive investigatory efforts, Class Counsel are well informed as to the strength and

19   weakness of Plaintiffs' claims and, given their significant experience litigating

20   automobile class actions, believe the proposed Settlement is in the Class's best

21   interests. The proposed Settlement falls well within the range of being fair,

22   reasonable, and adequate to support provisional certification of the Class and notice

23   to Class members. Accordingly, Plaintiffs respectfully request that this Court grant

24   the Settlement preliminary approval.

25

26

27

28

## II.    FACTUAL BACKGROUND

## A.    Plaintiffs' Allegations concerning the Theft Prone Defect

Plaintiffs allege Defendants knowingly sold more than nine million Hyundai and Kia Class Vehicles that do not contain vital safety components that, in connection with other design flaws, eschew Federal Motor Vehicle Safety Standards ("FMVSS" or "Safety Standards") promulgated by the National Highway Traffic Safety Administration ("NHTSA"). Dkt. 84, CAC ¶¶ 7-8. Specifically, that each Class Vehicle suffers from a series of design flaws that allow thieves to steal it in less than ninety seconds, including: (i) the steering columns do not contain adequately secure collars or casings, allowing easy access to the ignition assembly; (ii) the ignition lock cylinders do not have a locking mechanism and can be easily removed with minimal force, and in so doing, leaves the ignition switch intact; (iii) the exposed ignition switch can be started with any set of pliers, or the current generation of thieves' tool of choice, a USB connector; and (iv) the Class Vehicles do not contain engine immobilizers (collectively, the "Theft Prone Defect" or the "Defect"). *Id*. ¶¶ 8, 1291-95, 1304-05, 1307-11, 1314-19. An engine immobilizer is an anti-theft device that can prevent vehicles from starting unless a verified code is received by a transponder module that controls the engine. *Id*. ¶ 4. This anti-theft device prevents the vehicle from being "hotwired" or started by any means other than an authorized key. *Id*.

Class Vehicles were sold with traditional "insert-and-turn" key ignition systems, as opposed to "push-to-start" ignitions, and do not contain engine immobilizers. *Id*. ¶ 1291. Thieves can quickly identify Hyundai and Kia vehicles that lack engine immobilizers by peering through vehicle windows and spotting traditional ignitions. *Id*. Because there are no alarms on the back windows, thieves can enter the vehicles without setting off alarms and easily pull off steering wheel casings. *Id*. ¶¶ 1292-1293. Finally, thieves can expose the ignition switch with

1  minimal force, using a screwdriver or USB cable to start the car with a turn. *Id*. ¶¶
2  1294-1295.

3       Plaintiffs allege that, because of the Theft Prone Defect, Class Vehicles are at
4  increased risk of theft or forced entry. *Id*. ¶¶ 1, 7, 1401. While the alleged Theft Prone
5  Defect existed and has plagued Class members since the first Class Vehicles were
6  sold, beginning in 2020, a group of teenagers in Milwaukee, who dubbed themselves
7  the "Kia Boyz," discovered the alleged Defect and began to post videos showing how
8  to steal Class Vehicles in a matter of seconds. *Id*. ¶ 9. Shortly thereafter, thefts and
9  attempted thefts of Class Vehicles skyrocketed. *Id*. ¶¶ 1354-1384. Class Vehicles
10  have been frequently stolen and used to commit crimes or taken for high speed "joy
11  rides," causing injury to people and property alike. *Id*. ¶¶ 1357, 1370, 1401, 1403.

12  **B.    History of the Litigation**

13       Milwaukee, Wisconsin was among the first cities impacted by the epidemic of
14  Class Vehicle thefts, and there the first case related to the alleged Theft Prone Defect
15  was filed, *Marvin v. Kia America, Inc., et al.*, No. 2:21-cv-01146-PP (E.D. Wis.). As
16  the incidence of thefts quickly spread throughout the country, beginning in July 2022,
17  dozens of class actions were filed nationwide based on Defendants' omission of
18  antitheft devices in Class Vehicles. Amended Leadership Decl. ¶ 6. On August 31,
19  2022, a group of plaintiffs moved for consolidation pursuant to 28 U.S.C. § 1407.
20  MDL No. 3052 ("JPML Dkt."), Dkt. 1; Amended Leadership Decl. ¶ 12. On
21  December 13, 2022, the Judicial Panel on Multidistrict Litigation ("JPML") issued an
22  order transferring related actions from fourteen District Courts to this Court for
23  consolidation and pre-trial coordination. Amended Leadership Decl. ¶ 15. To date,
24  seventy-nine cases from more than two-dozen District Courts are currently pending in
25  this MDL.

26       Shortly after the MDL was established, the JPML conditionally transferred
27  related cases filed by the cities of Seattle, Washington and Columbus, Ohio alleging

28

---

7

011112-11/2338238 V1

public nuisance caused by the Theft Prone Defect. Additional actions on behalf of the cities of Cincinnati, Ohio, Cleveland, Ohio, Buffalo, New York, and Madison, Wisconsin, among others, have also been filed. *See* JPML Dkts. 142, 154, 159. Additionally, on March 10, 2023, a group of insurance plaintiffs (the "Insurer Class Plaintiffs") filed a class action complaint on behalf of similarly situated insurance companies, and on March 21, 2023, the case was transferred to the MDL proceeding. *See State Automobile Mutual Insurance Company et al. v. Hyundai Motor America et al.*, No. 8:23-cv-00443 (C.D. Cal. Mar. 10, 2023) (Dkt. 1, 16).

On December 22, 2022, the Court appointed Mr. Berman, Ms. Fegan, and Mr. McClain as Initial Conference Counsel, tasked with conferring and obtaining consensus regarding the most pressing issues affecting the case. Dkt. 2 at 2. On January 30, 2023, Initial Conference Counsel and Defendants submitted their Joint Preliminary Report outlining their respective positions regarding, *inter alia*, an appropriate leadership structure for plaintiffs' counsel, plans for discovery, and various anticipated issues in the litigation. Dkt. 40. On February 9, 2023, the Court appointed Mr. Berman, Ms. Fegan, Mr. McClain, and Mr. Tellis to the Plaintiffs' Consumer Class Action Leadership Committee. Dkt. 50 at 3. The Court also appointed Jeffrey Goldenberg, Amanda K. Klevorn, and Tiffany Marko Yiatras to the Fact Discovery Committee, and Jason S. Rathod, Michael F. Ram, and Matthew D. Schelkopf to the Expert Discovery Committee. *Id.*

Immediately upon their appointment to the Plaintiffs' Consumer Class Action Leadership Committee, Class Counsel began a comprehensive effort to draft a consolidated complaint that details the factual, regulatory, and legal issues relating to the alleged Theft Prone Defect. Amended Leadership Decl. ¶ 21. Counsel conducted an extensive investigation concerning the underlying Defect and spoke with hundreds of putative Class members and potential class representatives. *Id.*

8

PLS.' AMENDED NOTICE OF MOT. AND MOT. FOR PRELIM. APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO.: 8:22-ML-03052-JVS-KES
011112-11/2338238 V1

On April 10, 2023, Plaintiffs filed their Consolidated Amended Consumer Class Action Complaint ("CAC"). Dkt. 84. The CAC includes eighty-five Plaintiffs who purchased or leased vehicles across the United States and asserts claims under the laws of all 50 states. CAC ¶¶ 37-1206, 1536-4817. In general, Plaintiffs assert claims for (1) violation of state consumer protection statutes, (2) breach of implied warranty, (3) fraud by omission and concealment, and (4) unjust enrichment. *Id*. ¶¶ 1536-4817.

The Parties submitted an agreed Protocol for the Production of Documents and Electronically Stored Information ("ESI") and Privilege Logs, a Proposed Stipulated Protective Order, and a Joint Stipulation Regarding Foreign Discovery on April 5, 2023. Dkt. 79. The Parties exchanged initial disclosures on April 14, 2023. Amended Leadership Decl. ¶ 24. On April 19, 2023, Plaintiffs served HMA and KA with their First Set of Requests for Production of Documents. *Id*.

On May 1, 2023, Defendants moved to dismiss the CAC. Dkt. 95. In accordance with the Court's March 13, 2023 Order (Dkt. 70), this motion addressed the laws of California, Florida, Missouri, Pennsylvania, Texas, and New York. Plaintiffs immediately analyzed the motion and began working on their opposition. Amended Leadership Decl. ¶ 25. Class Counsel continued to litigate the case to be sure they were fully informed of the strength and weakness of their positions and the risks they faced at class certification and trial, even while settlement negotiations continued.

On May 18, 2023, the Parties notified the Court that they reached a settlement in principle resulting in a fully executed Memorandum of Understanding. *See* Dkt. 107. On May 19, 2023, the Court stayed all deadlines in the Consumer Plaintiffs' cases that are unrelated to settlement approval. Dkt. 111.

## C. Settlement Negotiations and the Proposed Settlement

Throughout the litigation, the Parties have engaged in simultaneous, dual tracks. As Plaintiffs litigated the merits of their claims, they also negotiated a potential settlement with Defendants to bring expedited relief to millions of vulnerable Class members. In late 2022, while consolidation was pending before the JPML, the Parties began these settlement discussions. Amended Leadership Decl. ¶ 13. On November 15, 2022, a mediation session was conducted before the Honorable Margaret M. Morrow (Ret.). *Id.* ¶ 14. Although the mediation was productive, the Parties did not reach a resolution.

After the Court appointed Mr. Berman, Ms. Fegan, and Mr. McClain as Initial Conference Counsel on December 22, 2022 (Dkt. 2), the Parties reinitiated settlement discussions. *Id.* ¶ 17. These negotiations continued over the next month, and the Parties exchanged multiple drafts of a memorandum of understanding. *Id.* ¶¶ 19, 22-23. Under the guidance of Judge Morrow, the Parties participated in additional mediation sessions on April 4 and 5, 2023. *Id.* ¶¶ 22-23. The Parties did not leave the mediation sessions with an agreement, but they continued working toward that goal, while actively litigating. *Id.* ¶ 23.

On May 18, 2023, the Parties notified the Court they had reached a settlement in principle and executed a Memorandum of Understanding ("MOU"). *See* Dkt. 107. The general terms of the MOU, which are memorialized in the Settlement Agreement, were publicly disseminated by the Parties in press releases and widely covered in the media. Leadership Decl. ¶¶ 27-28. In addition to the benefits for Class members, the MOU entitles Plaintiffs to confirmatory discovery to obtain information necessary to support the Settlement terms, including the nature and scope of the Software Upgrade, and provides that Defendants will pay all costs and expenses for class notice and claims administration. *Id.* ¶ 29.

011112-11/2338238 V1

Shortly after the Parties executed the MOU, they began negotiating and drafting the Settlement Agreement and Plaintiffs went to work on confirmatory discovery. *Id.* ¶¶ 30. On May 18, 2023, Plaintiffs served Defendants with their first set of Requests for Production of Documents (the "Confirmatory RFPs"). *Id.* ¶ 31. The Confirmatory RFPs sought documents relating to, *inter alia*: (1) Defendants' investigation about the theft risk in Class Vehicles; (2) Defendants' interactions with NHTSA concerning the alleged Defect; (3) the development, efficacy, and roll-out of the Software Upgrade remedy; (4) insurance coverage for Class Vehicles; and (5) Defendants' efforts to mitigate the risk of theft in Class Vehicles. Plaintiffs have been reviewing responsive documents produced by Defendants. *Id.*

After the Court issued its Order, the Parties began additional negotiations aimed at satisfying the directives of the Order. These talks took approximately six weeks and ultimately concluded with executing an Amended Settlement Agreement. Amended Leadership Decl. ¶ 33.  The Parties will also be prepared should the Court hold an evidentiary hearing regarding the function and performance of the Software Upgrade.

## III. THE SETTLEMENT BENEFITS FOR THE CLASS

If approved, the proposed Settlement will provide substantial benefits to the following Settlement Class:[7] All persons or entities who purchased or leased a Class

---

[7] Excluded from the Class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; any judge to whom this Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons. In addition, excluded from the Class are individuals and/or entities who validly and timely opt-out. Also excluded from the Class are subrogated Insurance Entities, Government Entities with claims in MDL No. 8:22-ml-03052, and consumers and businesses, including insurers, that have purchased or otherwise obtained title for Class Vehicles previously deemed a total loss (i.e., salvage or junkyard vehicles) (subject to verification through Carfax or other means) and current or former owners

Vehicle in the United States (including Puerto Rico, Virgin Islands, and Guam). ASA § I.E. The proposed Settlement creates a common fund of up to $145 million for certain out-of-pocket losses arising from the theft or attempted theft of a Class Vehicle and other expenses arising from obtaining the Software Upgrade, a free anti-theft Software Upgrade for eligible Class Vehicles and reimbursement for the purchase of steering wheel locks made before the Software Upgrade was available, and tens of millions or more in cash payments to Class members whose Class Vehicles are ineligible for the Software Upgrade for their purchase of steering wheel locks and other anti-theft systems for their Class Vehicles. *Id.* § II.A-D.

Any disputes that arise from a Settlement claim determination will be resolved by the Settlement Administrator,[8] and for added oversight, Class Counsel have the right to participate in these appeals, review, and comment on all appeals, obtain information and documents necessary to the appeals, and confer with the Settlement Administrator regarding appeal determinations. *Id.* §§ II.F., III.C.6, III.D.5, III.E.2. The cost of appeals will be borne by Defendants. *Id.* § III.D.5.

## A.     Common Fund for Out-of-Pocket and Unreimbursed Losses

Defendants will establish a non-reversionary common fund of $80 million to $145 million to pay Class members for certain out-of-pocket losses related to the alleged Theft Prone Defect, including those arising from the Qualifying Theft or Qualifying Theft Attempt[9] of Class Vehicles. *Id.* § II.D. If all approved claims total

---

of Class Vehicles that previously released their claims in an individual settlement with one or more Defendants with respect to the issues raised in the Action. ASA § I.E.

[8] The Parties agreed to jointly propose a Settlement Administrator for the Court's approval. After evaluating proposals from various candidates, the Parties selected Angeion Group, LLC as the Settlement Administrator, subject to Court approval. ASA § III.A.

[9] "Qualifying Theft" means the theft of a Class Vehicle through forcible entry and breach of the ignition system, and "Qualifying Theft Attempt" means an attempted

12

less than $80,000,000, these claims will receive a *pro rata* increase. *Id.* § II.D.6. If all approved claims exceed the "maximum" of $145,000,000, payments will decrease *pro rata*. *Id.*

Class members may seek payment for certain losses related to Qualifying Thefts or Qualifying Theft Attempts, including total loss of Class Vehicles up to 60% of the Black Book value of the vehicle, damage to Class Vehicles and personal property up to the greater of $3,375 or 33% of the Black Book value of the vehicle, insurance expenses up to $375, and other related expenses up to $250 per incident. *Id.* § II.D.3. These benefits are available to Class members for <u>each</u> qualifying theft or attempted theft occurrence they experienced. *Id.* § II.D.4. Class members with Class Vehicles eligible for the Software Upgrade may also seek reimbursement from the common fund for lost income and childcare expenses up to $250 to obtain the Software Upgrade and for the purchase of new key fobs up to $350 per fob (limited to two fobs per Class Vehicle) where necessary to implement the Software Upgrade. *Id.* § II.D.5.

### 1.    Total Loss of Class Vehicle

Class members may be paid up to 60% of the Black Book value of the vehicle plus licensing fees, sales tax paid, registration fees, and other expenses directly associated with the purchase of a new or replacement vehicle for each Total Loss of a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt. *Id.* § II.D.3.a. A "Total Loss" means any of the following: (a) the Class Vehicle was wrecked, destroyed, or damaged so badly (excluding pre-existing damage) that it is objectively uneconomical to repair it (*i.e.*, repair costs would be at least 70% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition); (b) the Class member's disposal (through

---

theft of a Class Vehicle through forcible entry and either an attempted dismantling of the steering column or an attempted breach of the ignition system. ASA § I.AA.

sale or donation) of the Class Vehicle for less than 30% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition; (c) the Class Vehicle was declared a Total Loss by an insurer, but the Class member was still not made whole by the insurance payments, as measured by the Black Book value (private party/average condition) minus total insurance settlement or payment received; or (d) it has been at least three months since the Qualifying Theft and the Class Vehicle has not been recovered. *Id.* § I.II. A Class member may demonstrate through objectively reliable documentation that the Class Vehicle was not recovered after being stolen, which unless rebutted by Defendants, will be treated as a "Qualifying Theft." *Id.* § I.AA. If before entry of a final approval order, Defendants resolve the Insurer Class Plaintiffs' subrogation claims, the Parties will convene to discuss whether and by how much the Total Loss cap should be increased. *Id.* § II.D.3.a.

### 2. Damage to Class Vehicle and/or Stolen or Damaged Personal Property

Class members may be paid up to $3,375 or 33% of the Black Book value of the vehicle, whichever is greater, per incident for damage to a Class Vehicle and/or the value of personal property stolen or damaged due to a Qualifying Theft or Qualifying Theft Attempt. *Id.* § II.D.3.b. As with the Total Loss Claims, if Defendants resolve the Insurer Class Plaintiffs' subrogation claims, the Parties will convene to discuss increasing this cap. *Id.*

### 3. Insurance Expenses

Class members may be paid up to $375 for paid insurance deductibles and increased insurance premiums for policies that include theft coverage resulting from a Qualifying Theft or Qualifying Theft Attempt. *Id*. § II.D.3.c.

### 4. Other Qualifying Theft or Qualifying Theft Attempt Expenses

Class members may be paid up to $250 total per incident for the following out-

of-pocket expenses related to a Qualifying Theft or Qualifying Theft Attempt: (i) car rental, taxi, ride share, or public transportation expenses not otherwise covered by insurance; (ii) towing costs necessary to transport the stolen Class Vehicle to or from a police or city storage facility, repair facility or other location necessary to inspect, repair, sell, or dispose of a stolen Class Vehicle, including a junkyard or storage facility; and (iii) costs associated with speeding tickets, red light tickets, or other penalties or fines incurred arising from a stolen Class Vehicle. *Id.* § II.D.3.d.

### 5. Software Upgrade Related Expenses

Class members with Class Vehicles eligible for the Software Upgrade may be paid up to $250 total for lost income and childcare costs resulting from implementation of the Software Upgrade. *Id.* § III.D.5.b. They may also be reimbursed for the purchase of OEM-issued key fobs (up to $350 per fob; limited to two key fobs per Class Vehicle) necessary for implementation the Software Upgrade. *Id.* § III.D.5.a.

### B. Anti-Theft Software Upgrade and Steering Wheel Lock Reimbursement for Eligible Class Vehicles

Class members with eligible Class Vehicles may obtain a free Software Upgrade to address the lack of an engine immobilizer. *Id.* § II.A.1. The Software Upgrade is designed to prevent Class Vehicles that are locked using a key fob from starting without the key being present by the method of theft popularized on TikTok and other social media channels. *Id.* § II.A.2. The Software Upgrade will be implemented on eligible Class Vehicles presented to an authorized Hyundai or Kia dealership. *Id.* § II.A.3. Following installation, the dealer will affix decals to the Class Vehicle indicating it has additional anti-theft protection. *Id.* § II.A.4. To date, more than 6.9 million Class Vehicles, or approximately seventy-five percent, are eligible for the Software Upgrade. Defendants warrant the Software Upgrade will work as designed for the life of the Class Vehicle. ASA § II.A.2.

Further, Defendants will issue a nationwide press campaign promoting the Software Upgrade and discussing its availability and effectiveness at preventing vehicle thefts, to include publication on social media platforms. They will also implement a driver awareness and instructional campaign regarding the Software Upgrade, and Class Counsel may confer with Defendants about the campaign's form and content. *Id*. § II.A.6.

Class members with Class Vehicles eligible for the Software Upgrade may seek reimbursement up to $50 per Class Vehicle for the purchase of a steering wheel lock made at least thirty days before the Software Upgrade became available for their Class Vehicle. *Id*. § II.B.1. This Settlement benefit will be paid by Defendants separate from the common fund and it has no aggregate cap. *Id*. § II.B.2.

## C. Payments for Anti-Theft Devices for Class Vehicles Ineligible for the Software Upgrade

Class members with Class Vehicles that are ineligible to receive the Software Upgrade may seek reimbursement of up to $300 per Class Vehicle for the purchase of a steering wheel lock, a glass breakage alarm or similar anti-theft system (including installation), or another aftermarket modification designed to deter or prevent theft so long as that purchase was made when the Class Vehicle was ineligible for the Software Upgrade.[10] *Id*. §§ I.Z., II.C.1. Any Class member who received a steering wheel lock provided by Defendants (either from HMA or KA (for example, shipped directly or through a dealer) or through a law enforcement department) may submit a reimbursement claim up to $250 for the purchase and installation of a glass breakage alarm or similar anti-theft system (including installation), or another aftermarket modification designed to deter or prevent theft. *Id*. § II.C.2. Critically, there is no cap

---

[10] If the Class Vehicle becomes eligible to receive the Software Upgrade, as of thirty (30) days after the postmarked date of the mail notice notifying the Class member of such eligibility, no Qualifying Purchase made after that date will be reimbursable under the Settlement. ASA § II.C.1.

16

on the amount of reimbursement claims that Defendants are obligated to pay under this provision of the proposed Settlement, and these payments will not be made from the Common Fund. Based on the total number of eligible Class Vehicles, this benefit may provide up to tens of millions or more in additional cash payments to Class Members.

## IV.     ARGUMENT

### A.     The proposed Settlement merits preliminary approval.

As the Ninth Circuit recognizes, there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019)[11]; *Zakikhani v. Hyundai Motor Co.*, 2022 WL 17224701, at *3 (C.D. Cal. Oct. 20, 2022). Under Rule 23(e), the Court must determine "'whether a proposed settlement is fundamentally fair, adequate, and reasonable,' recognizing that '[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness.'" *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) (overruled on other grounds)).

"At the preliminary approval stage, a court cannot fully assess some of these factors, so a full fairness analysis is unnecessary." *Callaway v. Mercedes-Benz United States LLC*, 2017 WL 11707445, at *5 (C.D. Cal. Nov. 29, 2017) (Selna, J.) (citing *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008)). "Instead, a court simply needs to ensure that the settlement is ***potentially*** fair because a court will make a final determination regarding its adequacy at a hearing on final approval, which occurs after any class member has had an opportunity to object or opt-out." *Id.* (citing *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007)); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prod.*

---

[11] Cleaned up to omit internal citations and quotations and emphasis added throughout, unless otherwise indicated.

*Liab. Litig.*, 2012 WL 7802852, at *6 (C.D. Cal. Dec. 28, 2012) (Selna, J.) ("the Court initially determines whether the proposed settlement seems fair on its face and is worth submitting to the class members").

Accordingly, when considering preliminary approval the Court must assess whether "(1) the proposed settlement appears to be the product of serious, informed, noncollusive negotiations, (2) has no obvious deficiencies, (3) does not improperly grant preferential treatment to class representatives or segments of the class, and (4) falls within the range of possible approval." *Callaway*, 2017 WL 11707445, at *5; *see In re Toyota Motor Corp. Unintended Acceleration*, 2012 WL 7802852, at *6 (court's role in preliminary approval is "'limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.'").

### 1. The Settlement is the product of serious, informed, arm's-length negotiations by experienced Class Counsel.

This first factor asks the Court to "consider whether the settlement is a product of collusion and whether sufficient discovery has been taken or investigation completed to enable counsel and the court to act intelligently." *Maree v. Deutsche Lufthansa AG*, 2023 WL 2563914, at *7 (C.D. Cal. Feb. 13, 2023)).

Neither the litigation and settlement process nor the substance of the proposed Settlement here indicate any collusion. The proposed Settlement was achieved through arm's-length negotiations conducted by counsel experienced in complex automobile class actions over the course of nearly eight months, under the guidance of an experienced mediator. *See* A. Conte & H.B. Newberg, Newberg On Class Actions § 11:41 ("NEWBERG") (A proposed settlement is entitled to "an initial presumption of fairness" when the settlement has been "negotiated at arm's length by counsel for the class."); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th

Cir. 2004) (rejecting objectors' argument that settlement was the product of collusion where allegations in the complaint preceded settlement by one year and there was no other evidence of collusion); *La Fleur v. Med. Mgmt. Int'l, Inc.*, 2014 WL 2967475, at *4 (C.D. Cal. June 25, 2014) ("Settlements reached with the help of a mediator are likely noncollusive."); *Callaway*, 2017 WL 11707445, at *6 ("The extensive mediation process demonstrates to the Court that the proposed settlement is the product of serious, informed, noncollusive negotiations.").

Before agreeing to the proposed Settlement, Plaintiffs were well-informed as to the underlying facts and the strength of their case, which allowed for meaningful negotiations. Plaintiffs conducted substantial pre- and post-filing investigations, which are evinced by the comprehensive CAC. *See* Amended Leadership Decl. ¶¶ 11, 21, 354. *See Maree*, 2023 WL 2563914, at *9 ("[W]hile formal discovery is an important factor, it is not necessary to properly grant preliminary approval. What is required at this stage is that 'sufficient discovery has been taken or investigation completed to enable counsel and the Court to act intelligently.'" (quoting NEWBERG § 11.41)). Plaintiffs also understood the strengths and weaknesses of their claims, which were a topic of discussion throughout the mediations and briefed in Defendants' motion to dismiss the CAC, as well as the motions filed in the *Marvin* action. *See Lyter v. Cambridge Sierra Holdings*, 2019 WL 13153197, at *5 (C.D. Cal. June 18, 2019) (finding the parties sufficiently informed where they engaged in significant informal discovery and adversarial motion practice, including motion to dismiss); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (finding parties had "clear view of the strengths and weaknesses of their cases" even though settlement reached before discovery stay was lifted). Further, after executing the MOU, Plaintiffs continued their investigations into the alleged Defect and began confirmatory discovery. *See* Amended Leadership Decl. ¶¶ 30-31, 35-36. The foregoing work provided Class Counsel sufficient information to negotiate a

highly favorable settlement on behalf of the Class. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("significant investigation, discovery and research" provides parties with sufficient information to make informed settlement decisions); *Byrne v. Santa Barbara Hosp. Servs., Inc.*, 2017 WL 5035366, at *8 (C.D. Cal. Oct. 30, 2017) ("[t]he parties must…have engaged in sufficient investigation of the facts to enable the court to intelligently make an appraisal of the settlement") (citation omitted).

Additionally, Class Counsel have represented consumers in many significant class actions, including actions against Hyundai and Kia. Amended Leadership Decl. ¶ 38. *See Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("As a general principle, 'the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" (quoting NEWBERG § 11.51)). The proposed Settlement's terms are favorable to the Class and on par with the relief Plaintiffs demanded. *See* CAC ¶ 13 ("Plaintiffs seek equitable relief in the form of an adequate remedy for the Theft Prone Defect, an appropriate curative notice regarding the existence the Theft Prone Defect, recovery of damages, a repair under state consumer-protection statutes and implied warranties, and reimbursement of all expenses associated with the repair or replacement of the Class Vehicle and damage caused by the Theft Prone Defect").

Finally, there is no clear sailing provision in the Settlement Agreement. *See* ASA § V. Plaintiffs will move for an award of attorneys' fees totaling up to 25% of the common fund's value, plus actual out-of-pocket litigation expenses, and $1,000 service awards for each Class Representative, which Defendants may oppose at any level. *See id.* § V.1 and 4. This eliminates any actual or perceived conflict of interest with Class members regarding the fee award, which will be decided by the Court. *See Scolaro v. RightSourcing, Inc.*, 2017 WL 11630969, at *7 (C.D. Cal. Mar. 20, 2017)

---

(Selna, J.) (finding no signs of collusion or self-interest where attorneys' fees capped at 25% and settlement did not include a clear sailing agreement). The proposed Settlement was thoroughly negotiated by experienced counsel and results in a fair outcome for Class members. The Court should preliminarily approve it.

### 2.    The Settlement treats all Class members equitably.

Whether a settlement provides preferential treatment to any class member turns on whether there is any disparity among what class members are poised to receive and, if so, whether the settlement "compensates class members in a manner generally proportionate to the harm they suffered on account of [the] alleged misconduct." *Altamirano v. Shaw Indus., Inc.*, 2015 WL 4512372, at *8 (N.D. Cal. July 24, 2015) (finding no preferential treatment). Here, all Class members that incurred losses arising from the theft or attempted theft of their Class Vehicle may seek reimbursement for these losses, and all Class members are afforded a remedy for the alleged Theft Prone Defect (for some that will be the Software Upgrade, for others it will be cash payments for the cost of similar anti-theft systems). Eligible Class members are also reimbursed for various other out-of-pocket costs, like the purchase of a steering wheel lock before the Software Upgrade became available. Thus, the benefits are proportionate to the harm each Class member suffered because of the alleged Defect.

In the Order, the Court raised concerns with the potential inequity of Total Loss and Partial Loss claims capped at an absolute amount that does not consider the disparate values of each Class Vehicle. Order at 24, 29-30. The Amended Settlement Agreement fully addresses this concern by amending the claim caps so that each Class member will receive the same proportional recovery for the same types of damages incurred.

Likewise, the Class Representatives will not receive preferential treatment or compensation disproportionate to their respective harm and contribution to the case.

1   They can make claims under the proposed Settlement like any other Class member
2   for their eligible losses. Plaintiffs will seek $1,000 service awards for each Class
3   Representative in recognition of their dedication to the prosecution of the case, which
4   included consulting with counsel and providing documents and other information
5   about the case, reviewing the complaint, communicating with counsel about case
6   developments, and reviewing and discussing the proposed Settlement with counsel.
7   *See Cisneros v. Airport Terminal Servs.*, 2021 WL 3812163, at *9 (C.D. Cal. Mar.
8   26, 2021) ("'Courts have generally found that $5,000 incentive payments are
9   reasonable.'"); *Zakikhani v. Hyundai Motor Co.*, 2023 WL 4544774, at *9-10 (C.D.
10  Cal. May 5, 2023) (awarding $2,500 to plaintiffs not involved in dispositive motion
11  practice or formal discovery). In support of final approval, Plaintiffs will detail their
12  efforts to assist in the litigation.

13      **3.      The Settlement has no obvious deficiencies.**

14      Unless the Court's initial examination "discloses grounds to doubt [the
15  proposed Settlement's] fairness or other obvious deficiencies," the proposed
16  Settlement should be preliminarily approved. *West v. Circle K Stores, Inc.*, 2006 WL
17  1652598, at *11 (E.D. Cal. June 13, 2006) (noting examples of obvious deficiencies,
18  like "unduly preferential treatment of class representatives or segments of the class,
19  or excessive compensation of attorneys"). As discussed *supra*, the proposed
20  Settlement offers Class members fair and proportionate relief, and attorneys' fees will
21  be considered and awarded by the Court. Because the proposed Settlement has no
22  obvious deficiencies, preliminary approval is warranted.

23      **4.      The Settlement falls within the range of possible approval.**

24      In determining whether to grant preliminary approval, district courts must
25  consider several factors, including: "the strength of plaintiffs' case; the risk, expense,
26  complexity, and likely duration of further litigation; the risk of maintaining class
27  action status throughout the trial; the amount offered in settlement; the extent of

28

discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton*, 327 F.3d at 959; *see also* Fed. R. Civ. P. 23(e). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Just. v. Civ. Serv. Comm'n of City & Cty. of S.F.*, 688 F.2d 615, 625 (9th Cir. 1982); *see also Moreno v. Pretium Packaging, L.L.C.*, 2021 WL 3673845, at *1 (C.D. Cal. Aug. 6, 2021) ("Each factor does not necessarily apply to every class action settlement, and others may also be considered.").

### a.   The strength of Plaintiffs' case and risk, expense, complexity, and likely duration of further litigation

While Plaintiffs believe their case and claims are strong, they recognize the considerable risks inherent in litigation and unique difficulties presented by the facts at issue here. *See Shahbazian v. Fast Auto Loans, Inc.*, 2019 WL 8955420, at *6 (C.D. Cal. June 20, 2019) (recognizing "the uncertainty and risks inherent in litigation and potential appeals"). Among other challenges, this litigation concerns dozens of vehicle models, some of which were designed and sold over a decade ago, and establishing Defendants' knowledge of the alleged Theft Prone Defect at the time of sale through records that old presents considerable difficulties. The case also presents novel and untested theories of liability that may not withstand dispositive motions or challenges on appeal. For instance, Plaintiffs' claims are based in part on the interpretation and application of FMVSS No. 114, which has never been tested in a courtroom or applied by NHTSA in the manner alleged by Plaintiffs. Further, the involvement of criminal third-party acts raises novel questions regarding causation and the specter of unique fact questions that would be difficult to overcome at class certification.

Class actions typically entail a high level of risk, expense, and complexity, which is one reason that judicial policy so strongly favors their resolution through settlement. *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998) (affirming district court's approval of settlement and class certification). Class Counsel are all well experienced in complex class actions, including automotive defect actions, which take many years to resolve and are highly unpredictable. Nearly all the consumer cases in this MDL were filed within the last twelve months and are nowhere near trial. While Class Counsel have engaged in informal discovery and started confirmatory discovery, the amount of discovery necessary for class certification and trial (in the absence of the proposed Settlement) would be substantial. In addition to discovery expenses, the Parties would incur significant expenses and attorney time relating to experts, class certification, dispositive motions, and pre-trial preparations. By the time Plaintiffs' claims are presented to a jury, which likely would not occur until mid-2025 at the earliest, many more Class members will have suffered vehicle thefts and damages, sold their vehicles, and otherwise lost the benefits offered under the proposed Settlement. Even if Plaintiffs are successful at trial, there are likely to be appeals, further delaying relief to Class members. *See Casey v. Doctor's Best, Inc.*, 2022 WL 1726080, at *8 (C.D. Cal. Feb. 28, 2022) (observing that even if plaintiff prevailed at every stage, the possibility of lengthy appeals evidenced substantial risk of further litigation). Delayed relief would also increase difficulties with claims administration as Class members may be harder to identify and required claim documentation harder to locate.

This Settlement balances these costs, risks, and potential for delay with its benefits, achieving relief that is desirable to the Class. *See* NEWBERG § 11:50 ("In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

1

**b.      The risk of maintaining class action status through trial**

2       A litigation class has not been certified here. If this litigation continued without

3  settlement, Plaintiffs face risk at the class certification stage. *See Acosta*, 243 F.R.D.

4  at 392 ("The value of a class action 'depends largely on the certification of the class,'

5  and [] class certification undeniably represents a serious risk for plaintiffs in any class

6  action lawsuit."). Plaintiffs believe this case warrants class certification and they

7  would marshal evidence in support of such a motion. Class certification proceedings,

8  however, are highly discretionary. *See Ellis v. Costco Wholesale Corp.*, 657 F.3d 970,

9  987 (9th Cir. 2011). Proceeding with a class certification motion here also risks the

10  Court rejecting nationwide relief. *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581,

11  594 (9th Cir. 2012), *overruled on other grounds* (finding California's choice-of-law

12  rules precluded nationwide consumer class).

13       Litigation following successful class certification is equally plagued by risks.

14  *See In re Omnivision Techs.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2007)

15  (discussing risk of continued litigation following class certification). It is highly

16  uncertain whether the Class would obtain a better outcome through continued

17  litigation and trial. In fact, there is a risk that the Class would receive less or even

18  nothing at trial, and even if Plaintiffs prevailed at trial, the recovery could take years

19  to reach Class members. Much of the prospective anti-theft benefits for the Class

20  Vehicles (*e.g.*, the Software Upgrade and reimbursements for anti-theft devices)

21  would be diminished by delay. Put simply, should Plaintiffs succeed at trial, it is

22  unlikely that Class members would receive relief superior to the proposed Settlement.

23       **c.      The amount and type of relief offered in settlement**

24       The proposed Settlement creates a common fund of $80 million to $145

25  million from which Class members can recover cash payments for out-of-pocket

26  losses arising from theft incidents. It also provides remedies for the alleged Theft

27  Prone Defect, including a Software Upgrade and tens of millions or more in cash

28

payments for the installation of anti-theft devices in Class Vehicles, to prevent future injuries due to the Defect. Class members will therefore receive practically all the relief Plaintiffs sought in their complaints, while avoiding the risks of continued litigation. This factor weighs in favor of preliminary approval. *See Officers for Just.*, 688 F.2d at 628 ("It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair.").

One additional beneficial outcome offered by the proposed Settlement is the extent to which it incentivizes and promotes installation of the Software Upgrade and other anti-theft systems in the Class Vehicles, which is key to slowing the theft incidents. The proposed Settlement offers cash reimbursements for expenses incurred in obtaining the Software Upgrade, and it requires the Software Upgrade automatically be installed in Class Vehicles brought to dealerships, even where the Class member is unaware of it and otherwise brings in their Class Vehicle for other repairs and routine maintenance. Likewise, the proposed Settlement incentivizes and assists Class members with Class Vehicles ineligible for the Software Upgrade to purchase other anti-theft products by making them reimbursable, thereby further discouraging thieves from targeting all Class Vehicles.

### d. The extent of discovery completed and the stage of the proceedings

This factor contemplates whether "the parties have sufficient information to make an informed decision about settlement." *Linney*, 151 F.3d at 1239. In class actions, the parties may obtain sufficient information through formal or informal discovery. *See Clesceri v. Beach City Investigations & Protective Servs.*, 2011 WL 320998, at *9 (C.D. Cal. Jan. 27, 2011) (citing *Linney*, 151 F.3d at 1239).

Before filing complaints and the creation of this MDL, and continuing through settlement negotiations, Class Counsel devoted substantial time to investigating the

underlying facts and developing the factual and legal allegations. This included a review of publicly available sources of technical information, hundreds of interviews with putative Class members, technical analyses relating to the design of the steering wheel columns and ignition assemblies in the Class Vehicles, and consultation with automotive experts. Amended Leadership Decl. ¶¶ 11, 21, 35. Further, Plaintiffs began confirmatory discovery, which will allow them to verify the fairness of the Settlement benefits and obtain information and testimony from Defendants with knowledge of the alleged Defect and proposed remedies, including the Software Upgrade, before final approval. ASA at 2; Amended Leadership Decl. ¶ 36.

Based on Class Counsel's substantial experience litigating automotive defect cases, the information received was sufficient to evaluate the fairness of the proposed Settlement. Amended Leadership Decl. ¶ 37. While resolving this litigation, Plaintiffs had a strong understanding of the strength and weakness of their case and were well-situated to make an informed decision regarding settlement. *Id. See In re Mego Fin. Corp.*, 213 F.3d at 459 (finding plaintiffs had "sufficient information to make an informed decision about [the] settlement" where formal discovery had not been completed but Class Counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services").

### e.     The experience and views of counsel

While the Court should not blindly accept the views of counsel, "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). Class Counsel believes the proposed Settlement is fair, reasonable, and adequate based on their extensive experience litigating class actions, and specifically automotive defect class actions. *See* Amended Leadership Decl. ¶¶ 4, 38-39. At the preliminary approval stage, "[t]he

recommendations of plaintiffs' counsel should be given a presumption of reasonableness." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1043.

### f.     The presence of a governmental participant

This factor looks to "the views of [] governmental participants" regarding the proposed Settlement. *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1082 (C.D. Cal. 2010). While several municipalities have filed suit in this MDL for damages they allegedly sustained, to Class Counsel's knowledge, none seek economic losses by consumers, rather they purport to seek damages incurred by public entities. Moreover, while these governmental participants are aware of the proposed Settlement, which was disclosed in May 2023, none have objected to it. Accordingly, this factor favors approval. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 WL 12327929, at *18 (C.D. Cal. July 24, 2013) (finding settlement "bears the silent imprimatur of government approval because despite receiving notice, no state or federal official has filed an objection to the proposed settlement.").

### g.     The reaction of class members

Notice has not yet gone out to the Class, nor have Class members had the opportunity to object, so it is premature to assess this factor. *See Navarrete v. Sprint United Mgmt. Co.*, 2021 WL 4352903, at *11 (C.D. Cal. Mar. 2, 2021) (noting lack of evidence concerning this factor "is not uncommon at the preliminary approval stage"). Before the final approval hearing, the Parties will submit declarations addressing any objections received after Settlement notice is disseminated. *See id.*

## B.     The Settlement Class should be certified.

In its Order granting the motion for class certification, the Court found all prerequisites of Fed. R. Civ. P. 23(a) and (b)(3) to be satisfied.  Order at 13-19. Consequently, Plaintiffs will not repeat their arguments supporting certification

1  herein and simply incorporate by reference pages 24-29 of their initial motion (Dkt.

2  No. 166).[12]

3  **C.      The Court should order dissemination of Class notice.**

4         Whether to order dissemination of proposed settlement notice "is an important

5  event" and "should be based on a solid record supporting the conclusion that the

6  proposed settlement will likely earn final approval after notice and an opportunity to

7  object." Fed. R. Civ. P. 23(e)(1) advisory committee's note to 2018 amendment.

8  Before finally approving a class settlement, "[t]he court must direct notice in a

9  reasonable manner to all class members who would be bound by the proposal." Fed.

10  R. Civ. P. 23(e)(1)(B). Where the settlement class is certified under Rule 23(b)(3), the

11  notice must also be the "best notice that is practicable under the circumstances,

12  including individual notice to all members who can be identified through reasonable

13  effort." Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the

14  terms of the settlement in sufficient detail to alert those with adverse viewpoints to

15  investigate and to come forward and be heard." *Churchill Vill., L.L.C.*, 361 F.3d at

16  575. The notice program provided in the Settlement Agreement satisfies these

17  standards.

18         The notice program here includes a dedicated settlement website and thorough

19  Long Form Notice (also available on the website). ASA § IV.C.3. The Long Form

20  Notice and Claim Form will be sent via U.S. mail to all reasonably identifiable Class

21  members. *Id.* § IV.C.1. Class members for which Defendants maintain email

22  addresses will also receive emails containing a hyperlink to the settlement website

23  and electronic copies of the Long Form Notice and Claim Form. *Id.* § IV.C.2. Claims

24

25  _____

26  [12] The Order directed Class Counsel to "properly inquire into potential conflicts"
    between Class Counsel and Class Members or the Class Representatives "and inform

27  the Court accordingly." Order at 17.  Class Counsel have done so, found no such
    conflicts, and report on such in the Amended Leadership Declaration at 40.

28

can be submitted by U.S. mail, email, and through the settlement website. *Id*. §§ III.B.2, IV.C.3. Consumers will be able to enter their Vehicle Identification Numbers ("VIN") on the settlement website, without completing a claim form, to easily determine if their vehicles are Class Vehicles and whether it is eligible for the Software Upgrade. *Id*. § IV.C.3. Hyperlinks to the settlement website will be posted on Hyundai and Kia's respective websites. *Id*. § IV.B. Publication notice will also be issued monthly. *Id*. § IV.C.4. Defendants will pay all Class notice and settlement administration costs. *Id*. § II.E.

### 1. The proposed Settlement provides the best method of notice practicable.

The Settlement provides that all reasonably identifiable Class members will receive a copy of the Long Form Notice and a Claim Form via direct U.S. mail, which satisfies the requirements of due process. ASA § IV.C.1. *See Sullivan v. Am. Express Publ'g Corp.*, 2011 WL 2600702, at *8 (C.D. Cal. June 30, 2011) ("Notice by mail has been found by the Supreme Court to be sufficient..."). To identify Class members for notice, Defendants will provide all names and addresses of Class Vehicle owners, along with Class Vehicle VINs, to a third-party entity authorized to use that information to obtain the names and most current addresses of Class members through state agencies. ASA § IV.C.1.

In addition to notice through U.S. mail, the Settlement Administrator will email a hyperlink to the dedicated settlement website and an electronic version of the Long Form Notice and Claim Form to Class members for which Defendants maintain an email address. *Id*. § IV.C.2. The dedicated settlement website will contain: (i) instructions on how to obtain reimbursements; (ii) a mechanism for Class members to submit claims electronically; (iii) instructions for contacting the Settlement Administrator for assistance with claims; (iv) the Long Form Notice; (v) the Claim Form; (vi) the Settlement Agreement; (vii) any orders issued in this

litigation approving or disapproving of the proposed Settlement; and (viii) any other information the Parties determine is relevant to the Settlement. *Id.* § IV.C.3. Defendants will make the same information available to Class members through their websites via links to the dedicated settlement website. *Id.* § IV.B. Further, the Settlement Administrator will issue monthly press releases notifying the public of the existence of the Settlement, the Settlement website, and all opt-out and objection deadlines. *Id.* § IV.C.4. The Settlement Administrator will be available to respond to questions regarding the status of submitted claims, how to submit a claim, and other aspects of the settlement via a dedicated, toll-free telephone number and email. *Id.* §§ III.B.2-3, IV.C.5. Finally, the Settlement Administrator will report to Class Counsel the total number of notices sent to Class members by U.S. mail and email, along with the numbers of notices returned as undeliverable, so that counsel may ensure notice is appropriately disseminated. *Id.* § IV.D.

Accordingly, Plaintiffs request the Court approve this notice method as the best practicable method under the circumstances. *See, e.g.*, *Rannis v. Recchi*, 380 F. App'x 646, 650 (9th Cir. 2010) (finding mailed notice the best notice practicable where reasonable efforts were taken to ascertain class members' addresses).

### 2. The proposed Notice plan informs Class members of their rights.

The notice provided to Class members should "clearly and concisely state in plain, easily understood language" the nature of the action; the class definition; the class claims, issues, or defenses; that the class member may appear through counsel; that the court will exclude from the class any member who requests exclusion; the time and manner for requesting exclusion; and the binding effect of a class judgment on class members. Fed. R. Civ. P. 23(c)(2)(B). The form of notice proposed by the Parties complies with those requirements. ASA, Exs. A-B. The Long Form Notice to be sent to Class members through U.S. Mail and email will explain the terms of the proposed Settlement, the Class definition, the underlying litigation, and that Class

members may appear through counsel; detail the process for requesting exclusion from or objecting to the proposed Settlement; and disclose the binding effect of the proposed Settlement on Class members if they do not request exclusion. *Id.* Plaintiffs believe this is the most effective way to alert Class members to the existence of the proposed Settlement and convey detailed information about the settlement approval process, and accordingly ask the Court to approve the proposed forms of Notice. *See Banh v. Am. Honda Motor Co.*, 2021 WL 3468113, at *9 (C.D. Cal. June 3, 2021) (approving notice plan comprised of mailing and email to class members and creation of settlement website).

### 3. Notice to Federal and State Officials

Defendants will provide notice of the Settlement to the U.S. Attorney General and appropriate regulatory officials, as required by 28 U.S.C. § 1715. ASA § IV.A.

## V. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request the Court grant their Motion and enter the accompanying proposed Preliminary Approval Order. Plaintiffs further request the Court set a schedule for key dates including a Fairness Hearing date, and they propose the following:

| EVENT | DATE |
|---|---|
| Preliminary Approval Hearing | October 30, 2023 |
| Class Notice Disseminated ("Notice Date") | No later than 120 days after entry of Preliminary Approval Order |
| Motion for an Award of Attorneys' Fees, Expenses, and Service Awards Filed | 45 days after Notice Date |
| Motion for Final Approval Filed | 45 days after Notice Date |
| Objection and Opt-Out Deadline | 60 days after Notice Date |
| Supplemental Response to any Objections Filed | 30 days after Objection Deadline |
| Settlement Fairness and Evidentiary Hearing | No earlier than 120 days after Notice Date |

1
2   Dated: September 27, 2023.          Respectfully Submitted.

3                                       By:  /s/ Steve W. Berman
4                                            Steve W. Berman, Esq.
                                             **HAGENS BERMAN SOBOL SHAPIRO**
5                                            **LLP**
6                                            1301 Second Avenue, Suite 2000
                                             Seattle, Washington 98101
7                                            Telephone: 206-623-7292
                                             Facsimile: 206-623-0594
8                                            Email: steve@hbsslaw.com
9
                                        By:  /s/ Elizabeth A. Fegan
10                                           Elizabeth A. Fegan, Esq.
11                                           **FEGAN SCOTT LLC**
                                             150 S. Wacker Dr., 24th Floor
12                                           Chicago, Illinois 60606
13                                           Telephone:   312.741.1019
                                             Fax:         312.264.0100
14                                           Email: beth@feganscott.com
15
                                        By:  /s/ Kenneth B. McClain
16                                           Kenneth B. McClain, Esq.
17                                           **HUMPHREY FARRINGTON & McCLAIN**
18                                           221 W. Lexington Ave., Suite 400
                                             Independence, Missouri 64050
19                                           Telephone:   816.836.5050
                                             Facsimile:   816.836.8966
20                                           Email: kbm@hfmlegal.com
21
22
23
24
25
26
27
28
                                             33

011112-11/2338238 V1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

By:  */s/ Roland Tellis*
Roland Tellis, Esq.
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: 818.839.2333
Facsimile:   214.523.5500
Email: rtellis@baronbudd.com

*Consumer Class Action Leadership Counsel
and Counsel for Plaintiffs*

34

011112-11/2338238 V1

# EXHIBIT  A

## AMENDED SETTLEMENT AGREEMENT

*In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liab. Litig.*, Case No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.)

This Settlement Agreement is entered into as of July 20, 2023, by and between Consumer Plaintiffs Kari Eldridge, Brittany Kingsbury, Miyoshi Morrow, Stefani Poblete Taylor, Adam Lippert, Michael Kay, Mollie McGeehon, Herbert Taylor, Arlecia Brown, Edith Bucio, Matthew Pavonetti, Jason Reyes, Ann Brady, Mark Thompson, Renee Ledet, Ian Michael Scott, Irene Beach,  Leilani Cabrera, John Dylan Burton, Eric Bain, Steven Hufford, Talysia Ruff, Tyler McGill, John McGraw, Cameron Morton, Lexii Cummings, Matthew Jacobsen, Dennette Dye, Brian Helm, Adriana Pilant, Luis Enrique Vargas Rodriguez, David Lucas, Leanna Adams, Iona Barnes, Craig Granville, Jisun Kang, Michelle Pollack, Rachel Perry, Claire Roberts, Mary Kathryn Morrison, Patricia Sumpterbynum, Kristina McKnight, Trina Johnson, Marcella Blum, Matthew Butler, Kayla Collyer, David Larsen, Anthony Loburgio, Katelyn McNerney, Eryca Smith, Dave Sessions, Tajia Turner, Laura Roberts, Hubert Matthews, Rita Day, Kasey Weinfurtner, Charles Hession, Molly O'Connor, Rejene Jackson, Tiffany Devonish, Darlene Bennor, Jacquella Russell, Lauren Hernandez, John Pope, Pauline Ragsdale, Kathy Hughes, Rosemary Winner Johnson, Maggie Ketchie, Peggy Ciafullo, Amber Hall, Michael Ryle, James DePorche, Ronald DeSarro, Teresa Harris, Cameron Cunningham, Shatoya McKinney, Gerald Smith, Lauren Kawetschansky, Shana Eberhardt, Michelle Wagner, Adrian Matthews, Carolyn Catlos, Albert Lui, Nadine Quate Francis, Michael Scalise, ("Consumer Plaintiffs" or "Class Representatives"), individually and as representatives of the Class defined below, and Defendants Hyundai Motor America ("HMA"), Hyundai Motor Company ("HMC"), Hyundai American Technical Center, Inc. also doing business as Hyundai-Kia America Technical Center ("HATCI"), Kia America, Inc. ("KA"), and Kia Corporation ("KC"), (HMA, HMC, HATCI, KA, and KC are collectively the "Defendants"; Plaintiffs and Defendants are collectively the "Parties").

WHEREAS, *Marvin v. Kia America, Inc. et al.*, No. 2021CV003759 was filed on June 23, 2021, on behalf of one or more putative classes of consumers and removed to the Eastern District of Wisconsin on October 5, 2021. *Marvin v. Kia America, Inc. et al.*, No. 2:21-cv-1146-PP (E.D. Wis.). Whereas, thereafter, many similar putative consumer class actions were filed nationwide;

WHEREAS, on December 22, 2022, the Judicial Panel on Multidistrict Litigation transferred the putative consumer class action cases to the Central District of California where they are centralized as *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liab. Litig.*, Case No. 8:22-ML-3052 JVS (KESx) (C.D. Cal.);

WHEREAS, these cases arise from Consumer Plaintiffs' allegations that certain Hyundai and Kia vehicles that were manufactured without an engine immobilizer are unduly susceptible to theft;

WHEREAS, Defendants deny Consumer Plaintiffs' allegations, deny all liability and culpability, and maintain that they have meritorious defenses;

**Deleted:** (the "Action")

1

WHEREAS, following centralization of the cases, the Hon. James V. Selna appointed Steve W. Berman, Elizabeth A. Fegan, Kenneth McClain, and Roland Tellis as Lead Counsel for the putative consumer classes ("Class Counsel");

WHEREAS, on April 10, 2023, Consumer Plaintiffs filed their Consolidated Amended Consumer Class Action Complaint (ECF No. 84);

WHEREAS, Defendants in the Action moved to dismiss the claims of the Consumer Plaintiffs on May 1, 2023 (ECF No. 95);

WHEREAS, Class Counsel thoroughly analyzed Defendants' motion to dismiss, and continued to analyze the strength and weaknesses of their claims and the risks associated with continued litigation;

WHEREAS, following centralization of the cases, counsel for the Parties met and conferred several times regarding Consumer Plaintiffs' allegations, Defendants' defenses, and potential resolution of the litigation;

WHEREAS, as part of these settlement discussions, and in the context of a potential classwide resolution, Defendants informed Plaintiffs that they planned to make available for eligible vehicles, a software upgrade that was designed to prevent vehicles locked with the key fob from starting without the key being present by the method of theft popularized on TikTok and other social media channels;

WHEREAS, Defendants and Consumer Plaintiffs in the Action mediated several times, with the assistance of Hon. Margaret M. Morrow (Ret.) of Judicate West, and reached an agreement in principle to resolve the consumer class allegations and agreed to specify the conditions of Settlement in this Settlement Agreement, to be filed with the Court for approval;

WHEREAS, Class Counsel have investigated the facts and law relating to Consumer Plaintiffs' claims and Defendants' defenses, and have concluded that a settlement with Defendants according to the terms set forth below is in the best interests of Consumer Plaintiffs and the Class;

WHEREAS, despite their denial of any liability or culpability and their belief that they have meritorious defenses to the claims alleged, Defendants nevertheless have decided to enter into this Settlement Agreement as a benefit to their customers and to avoid further litigation;

WHEREAS, Class Counsel have and will continue to take reasonable confirmatory discovery, to the extent that additional information is reasonably required to support the terms of the Settlement Agreement. Any such discovery shall be subject to limitations as negotiated by Class Counsel and Defendants' counsel;

NOW, THEREFORE, in consideration of the covenants, agreements, and releases set forth herein, and intending to be legally bound, it is agreed by and among the undersigned that this Action be settled, compromised, and judgment entered on the terms and conditions set forth below:

2

# I.    **DEFINITIONS**

## A.    **"Action"**

"Action" refers to the consolidated consumer litigation titled *In re: Kia Hyundai Vehicle Theft Litigation*, MDL No. 8:22-ml-03052 (C.D. Cal.), including and limited to all underlying consumer cases that were consolidated. For avoidance of doubt, "Action" excludes all past, present and future subrogation claims by Insurance Entities as well as claims by the Government Entities that are pending in MDL No. 8:22-ml-03052.

**Deleted:** inclusive of

## B.    **"Claim"**

A "Claim" is a request for reimbursement or payment under this Settlement Agreement.

## C.    **"Claimant"**

A "Claimant" is a Class member or other person or entity eligible to make a Claim pursuant to this Settlement Agreement.

## D.    **"Claim Form"**

"Claim Form" refers to a form used to make a Claim under this Settlement, substantially in the form attached hereto as Exhibit B.

## E.    **"Class" or "Settlement Class"**

"Class" or "Settlement Class" refers to all persons or entities who purchased or leased a Class Vehicle in the United States (including Puerto Rico, Virgin Islands, and Guam). Excluded from the Class are Defendants; any affiliate, parent, or subsidiary of Defendants; any entity in which Defendants has a controlling interest; any officer, director, or employee of Defendants; any successor or assign of Defendants; any judge to whom this Action is assigned, his or her spouse, and all persons within the third degree of relationship to either of them, as well as the spouses of such persons. In addition, excluded from the Class are individuals and/or entities who validly and timely opt-out. Also excluded from the Class are subrogated Insurance Entities, Government Entities with claims in MDL No. 8:22-ml-03052, and consumers and businesses, including insurers, that have purchased or otherwise obtained title for Class Vehicles previously deemed a total loss (*i.e.*, salvage or junkyard vehicles) (subject to verification through Carfax or other means) and current or former owners of Class Vehicles that previously released their claims in an individual settlement with one or more Defendants with respect to the issues raised in the Action.

## F.    **"Class Counsel"**

"Class Counsel" means the Consumer Class Action Leadership Counsel in the Action— Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Elizabeth A. Fegan of Fegan Scott LLC, Kenneth B. McClain of Humphrey Farrington & McClain, P.C., and Roland Tellis of Baron & Budd, P.C., as per the February 9, 2023, Order of Judge Selna in the Action (ECF No. 50).

3

G.     **"Class Vehicle"**

"Class Vehicle" refers to all MY2011-2022 Kia and Hyundai vehicles manufactured without an engine immobilizer that were sold in the United States (including Puerto Rico, Virgin Islands, and Guam), including:

| Hyundai | Kia |
|---|---|
| 2011-2022 Accent | 2011-2021 Forte |
| 2011-2022 Elantra | 2021-2022 K5 |
| 2013-2020 Elantra GT | 2011-2020 Optima |
| 2013-2014 Elantra Coupe | 2011-2021 Rio |
| 2011-2012 Elantra Touring | 2011-2021 Sedona |
| 2011-2014 Genesis Coupe | 2021-2022 Seltos |
| 2018-2022 Kona | 2011-2022 Soul |
| 2020-2021 Palisade | 2011-2022 Sorento |
| 2011-2022 Santa Fe | 2011-2022 Sportage |
| 2013-2018 Santa Fe Sport | |
| 2019 Santa Fe XL | |
| 2011-2019 Sonata | |
| 2011-2022 Tucson | |
| 2012-2017, 2019-2021 Veloster | |
| 2020-2021 Venue | |
| 2011-2012 Veracruz | |

H.     **"Consumer Plaintiffs' Counsel"**

"Consumer Plaintiffs' Counsel" (as distinct from "Class Counsel") means Steve W. Berman of Hagens Berman Sobol Shapiro LLP, Elizabeth A. Fegan of Fegan Scott LLC, Kenneth B. McClain of Humphrey Farrington, P.C. & McClain, Roland Tellis of Baron & Budd, P.C., Jeffrey S. Goldenberg of Goldenberg Schneider LPA, Matthew D. Schelkopf of Sauder Schelkopf LLC, Tiffany Marko Yiatras of Consumer Protection Legal LLC, Michael F. Ram of Morgan and Morgan Complex Litigation Group, Amanda K. Klevorn of Burns Charest LLP, Jason S. Rathod of Migliaccio and Rathod LLP, as per the February 9, 2023 Order of Judge Selna in the Action (ECF No. 50).

I.     **"Court"**

"Court" means the United States District Court for the Central District of California.

J.     **"Defendants" or "Settling Defendants"**

"Defendants" or "Settling Defendants" means HMA, HMC, HATCI, KA, and KC.

K.     **"Effective Date"**

4

"Effective Date" means the first date after the Court's entry of the Final Approval Order and Judgment, if no appeal is timely filed or if no motion to extend the time for filing an appeal has been filed. If there is an appeal, the Effective Date of this Settlement Agreement shall be the date on which all appellate rights with respect to the Final Approval Order and Judgement in the Action have expired or been exhausted in such a manner as to render the Final Approval Order and Judgment non-appealable.

**L.**     **"Fairness Hearing" and/or "Final Approval Hearing"**

"Fairness Hearing" and/or "Final Approval Hearing" means the final hearing to be conducted by the Court on such date as the Court may order to determine the fairness, adequacy, and reasonableness of the Settlement Agreement in accordance with applicable jurisprudence, to be held after notice has been provided to the Settlement Class in accordance with this Settlement Agreement, and where the Court will: (a) determine whether to grant final approval to the certification of the Settlement Class; (b) determine whether to designate Consumer Plaintiffs as the representatives of the Settlement Class; (c) determine whether to designate Class Counsel as counsel for the Settlement Class; (d) determine whether to grant final approval to the Settlement Agreement; (e) rule on Class Counsel's Application for a Fee and Expense Award; (f) rule on Class Representatives' Application for Class Representative Service Awards; and (g) consider whether to enter the Final Approval Order.

**M.**     **"Final Approval Order and Judgment"**

"Final Approval Order and Judgment" means the order and judgment issued by the Court granting final approval of this Settlement Agreement, confirming certification of the Classes, and making such other findings and determinations as the Court deems necessary and appropriate to approve the Settlement.

**N.**     **"Government Entities"**

"Government Entities" refers to plaintiffs in MDL No. 8:22-ml-03052-JVS (KESx) (C.D. Cal.) who are government entities.

**O.**     **"Insurance Entities"**

"Insurance Entities" refers to plaintiffs in MDL No. 8:22-ml-03052-JVS (KESx) (C.D. Cal.) who are insurance companies and includes the members of the putative class that the insurance company plaintiffs seek to represent.

**P.**     **"Insurance Records"**

"Insurance Records" refers to documents issued by the Claimant's car insurance company reflecting either denial of coverage or a final insurance settlement that shows how much the insurance paid minus the deductible (showing the deductible amount).

**Q.**     **"Long Form Notice"**

5

"Long Form Notice" refers to the notice to be sent to the Class as detailed below, substantially in the same form as Exhibit A.

**R.**      **"Notice Date"**

"Notice Date" refers to the date 90 days after the Court enters an order preliminarily approving this Settlement Agreement.

**S.**      **"Parties" or "Party"**

Deleted: ¶

"Parties" (or "Party" individually) means Consumer Plaintiffs and/or Defendants.

**T.**      **"Preliminary Approval Order"**

"Preliminary Approval Order" means the order issued by the Court granting preliminary approval of this Settlement Agreement.

**U.**      **"Proof of Ownership"**

"Proof of Ownership" means a copy of any document(s) issued to a Claimant by a state department of motor vehicles, insurance company, bank or other financing company, or any combination thereof, reflecting that the Claimant currently owns or leases (or previously owned or leased) a Class Vehicle, identified by Vehicle Identification Number ("VIN"). Examples of such documents include owner registration card, vehicle title, bank note identifying the vehicle, and insurance card. Defendants and the Settlement Administrator are not responsible for returning documents (i.e., Claimants should not send in original registration cards or vehicle titles when submitting Claims).

**V.**      **"Proof of Payment"**

"Proof of Payment" refers to the original or copy of any document(s) generated at or around the time expenses were incurred showing that the Claimant paid for the expenses incurred (*e.g.*, a Qualifying Purchase, towing expenses, transportation expenses, etc.) for which they may be entitled to reimbursement under this Settlement Agreement. "Proof of Payment" must reflect the method of payment the Claimant used, the cost of the expense, and the name of the entity charging the Claimant for the expense. "Proof of Payment" for an expense paid by credit card are final repair invoices or similar records that show a duty to pay for a related expense plus credit card receipts, or credit card statements reflecting actual amounts paid. "Proof of Payment" for an expense paid by debit card or check are final repair invoices plus debit card receipts, cleared checks, or bank account statements reflecting actual amounts paid. "Proof of Payment" for an expense paid in cash shall include a valid corresponding final invoice or repair order, proof of withdrawal of cash from a bank or credit union, along with an attestation under penalty of perjury by the Claimant that they do not have a cash payment receipt from the person or entity that the Claimant paid showing their payment and as to the specific dollar amount they paid in cash.

Defendants and the Settlement Administrator may ask Claimants for additional Proof of Payment if fraud is suspected but must contemporaneously notify Class Counsel of such request.

6

W.    **"Proof of Qualifying Loss"**

Class members must establish a "Qualifying Loss" via Proof of Ownership and such other comparable documentation containing information necessary for the Settlement Administrator to verify the loss, including as specified in Section II.D.3. Such documentation can include, but is not limited to, a police report, insurance records, dealership records, repair records, receipts, cleared checks, credit card statements, bank records, registration records, employment records, or such other documents with comparable evidentiary value.  For Total Loss, see "Total Loss" definition for other documentation required in addition to the Proof of Ownership required by this section.

X.    **"Proof of Qualifying Theft" and "Proof of Qualifying Theft Attempt"**

"Proof of Qualifying Theft" and "Proof of Qualifying Theft Attempt" means the original or a copy of any document(s) generated at or around the time of the Qualifying Theft or Qualifying Theft Attempt that specifies the date of the Qualifying Theft or Qualifying Theft Attempt and identifies the Class Vehicle by VIN or make and model. The documents establishing a Qualifying Theft or Qualifying Theft Attempt may include a police report and, if the Class Vehicle is insured, Insurance Records, and/or a similar third-party report with comparable trustworthiness, reliability, and probative/evidentiary value showing comparable information regarding the circumstances of the Qualifying Theft or Qualifying Theft Attempt and the resulting losses.

Y.    **"Qualifying Loss"**

"Qualifying Loss" refers to an out-of-pocket loss or uncompensated loss resulting from a Qualifying Theft or Qualifying Theft Attempt of a Class Vehicle, provided such loss is reimbursable under Section II.D.3.

Z.    **"Qualifying Purchase"**

"Qualifying Purchase" means:

(1) the purchase by a Class member whose Class Vehicle is not eligible for the Software Upgrade of a steering wheel lock, a glass breakage alarm or similar anti-theft system (including installation), or another aftermarket modification designed to deter or prevent theft such as the Hyundai Accessory Security Kit (including installation); and

(2) the purchase by a Class member whose Class Vehicle is eligible for the Software Upgrade of a steering wheel lock, if that purchase was made at least thirty days before the Software Upgrade was available for that Class member's Class Vehicle.

AA.    **"Qualifying Theft" and "Qualifying Theft Attempt"**

"Qualifying Theft" refers to the theft of a Class Vehicle through forcible entry and breach of the ignition system.  "Qualifying Theft Attempt" refers to an attempted theft of a Class Vehicle through forcible entry and either an attempted dismantling of the steering column or an attempted breach of the ignition system.

7

A Class Member may demonstrate a Qualifying Theft or a Qualifying Theft Attempt through objectively reliable documentation. If a Class Vehicle was stolen and a Class member demonstrates through objectively reliable documentation that the Class Vehicle was not recovered after being stolen, this circumstance will be treated as a "Qualifying Theft." Defendants may rebut this presumption with any available proof.

**BB.**   **"Releasees"**

"Release[s]" shall refer jointly and severally, individually and collectively to entities that marketed the Class Vehicles, entities that designed, developed, and/or disseminated advertisements for the Class Vehicles, Defendants, Hyundai Motor Manufacturing Alabama, Kia Georgia, Inc., all affiliates of the Hyundai Motor Group, including Hyundai Capital America, and each of their respective future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, assigns, dealers, distributors, agents, principals, suppliers, vendors, issuers, licensees, and joint ventures, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by, or under common control with a Releasee.

**CC.**   **"Releasors"**

"Releasor[s]" shall refer jointly and severally, individually and collectively to the Consumer Class Representatives, the Consumer Class members, and their future, present, and former direct and indirect parents, subsidiaries, affiliates, divisions, predecessors, successors, and assigns, and their respective future, present, and former officers, directors, employees, partners, general partners, limited partners, members, managers, agents, shareholders (in their capacity as shareholders) and legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this paragraph, "affiliates" means entities controlling, controlled by or under common control with a Releasor. "Releasors" does not include Government Entities and Insurance Entities.

> **Deleted:** Excluded from Releasors are subrogated insurers and government plaintiffs in MDL No. 8:22-ml-03052.

**DD.**   **"Settlement" and "Settlement Agreement"**

"Settlement" means the settlement into which the Parties have entered to resolve the Action, the terms of which are as set forth in this "Settlement Agreement."

**EE.**   **"Settlement Administrator"**

"Settlement Administrator" means the administrator selected jointly by Defendants and Class Counsel and approved by the Court to administer the Settlement.

**FF.**   **"Software Alternative Class Vehicles"**

"Software Alternative Class Vehicles" refers to those Class Vehicles that are not Software Eligible Class Vehicles and are eligible to receive the benefits set forth in Section II.C., including

as specified below. In addition, all Class Vehicles in Puerto Rico, Virgin Islands, and Guam shall be considered part of the Software Alternative Class (regardless of the model of the Class Vehicle), unless and until the Software Upgrade becomes available for a particular model within a given territory.

If a "Software Alternative Class Vehicle" becomes eligible to receive the Software Upgrade, as of thirty (30) days after the postmarked date of the mail notice notifying the Class member their Class Vehicle is eligible for the Software Upgrade, it will no longer be considered a "Software Alternative Class Vehicle" for purposes of receiving the benefit under Section II.C if the purchase of a steering wheel lock or a glass breakage alarm or similar anti-theft system (including installation), or another aftermarket modification designed to deter or prevent theft was made after the Software Upgrade was available for that Class Vehicle.

| Company | Model | Model Years |
|---------|-------|-------------|
| Kia | Sportage | 2011-2016 |
| Kia | Soul | 2011-2022 |
| Kia | Rio | 2011-2017 |
| Kia | Forte | 2011-2016 |
| Hyundai | Accent | 2011-2017 |
| Hyundai | Veracruz | 2011-2012 |
| Hyundai | Santa Fe | 2011-2012 |
| Hyundai | Genesis Coupe | 2011-2012 |
| Hyundai | Elantra Coupe | 2013-2014 |
| Hyundai | Elantra Touring | 2011-2012 |

**GG.    "Software Eligible Class Vehicles"**

"Software Eligible Class Vehicles" refers to those Class Vehicles that are eligible for the Software Upgrade and eligible to receive the benefits under Sections II.A, II.B, and II.D including:

| Company | Model | Model Years |
|---------|-------|-------------|
| Kia | Sportage | 2011-2022 |
| Kia | Sorento | 2011-2022 |
| Kia | K5 | 2021-2022 |
| Kia | Sedona | 2011-2021 |
| Kia | Forte | 2014-2021 |
| Kia | Rio | 2012-2021 |

9

| Company | Model | Model Years |
|---------|-------|-------------|
| Kia | Seltos | 2021-2022 |
| Kia | Optima | 2011-2020 |
| Kia | Soul | 2020-2022 |
| Hyundai | Sonata | 2011-2019 |
| Hyundai | Tucson | 2011-2022 |
| Hyundai | Santa Fe Sport | 2013-2018 |
| Hyundai | Santa Fe | 2013-2022 |
| Hyundai | Santa Fe XL | 2019 |
| Hyundai | Palisade | 2020-2021 |
| Hyundai | Elantra | 2011-2022 |
| Hyundai | Kona | 2018-2022 |
| Hyundai | Veloster | 2012-2017 2019-2021 |
| Hyundai | Accent | 2018-2022 |
| Hyundai | Venue | 2020-2021 |
| Hyundai | Elantra GT | 2013-2020 |
| Hyundai | Genesis Coupe | 2013-2014 |

**HH.**   **"Software Upgrade"**

"Software Upgrade" refers to the software made available by Defendants to effectively address the fact that Class Vehicles do not contain engine immobilizers, and which is designed to prevent the Software-Eligible Class Vehicles locked with a key fob from starting without the key being present using a method of theft popularized on TikTok and other social media channels.

**II.**   **"Total Loss"**

Any Claimant who suffers and can establish a "Total Loss" of a Class Vehicle that is due to a Qualifying Theft or Qualifying Theft Attempt shall be entitled to payment from the Common Fund as set forth below. A "Total Loss" refers to any of the following situations:

- The Class Vehicle has been wrecked, destroyed, or damaged so badly as a result of the Qualifying Theft or Qualifying Theft Attempt (excluding pre-existing damage) that it is objectively uneconomical to repair the Class Vehicle (*i.e.*, repair costs would be at least 70% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average

10

condition), as established by objectively reliable documentation, such as an insurer notification, auto service station, a verifiable third-party estimate, repair receipts, or comparable documentation showing the condition of the Class Vehicle following the Qualifying Theft or Qualifying Theft Attempt.  For documents to be objectively reliable, they must be issued by a verified business entity with a business address, a working phone number, any required license, and online reviews (all subject to verification).

- The Class member's disposal (through sale or donation) of the Class Vehicle for less than 30% of the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition. In the event of a sale, the Class member must submit proof of the amount received via the sale.  If the Class Vehicle was donated or sold, the tax-deductible donation value or sale amount will be discounted from the claimed loss. For example, if the fair market value of the Class Vehicle, as measured by the Black Book value for a comparable private party vehicle in average condition is $5,500 and the tax-deductible receipt or sales documentation shows a donated value or paid amount of $500, the claimed loss for the value of the vehicle can be a maximum of $5,000. A copy of a tax-deductible receipt is required if the Class Vehicle was donated as is proof of sale and payment received (such as DMV vehicle transfer form).

- The Class Vehicle subject to a Qualifying Theft or Qualifying Theft Attempt was declared a Total Loss by an insurer, but the Class member was still not made whole by the insurance payments, as measured by the Black Book value (private party/average condition) minus total insurance settlement/payment received. Insurance documentation showing the amount claimed and recovered from an insurer is required.

- It has been at least three months since the Qualifying Theft and the Class Vehicle has not been recovered.  In the event a Class Vehicle is recovered following the submission of a claim but before payment is issued from the Common Fund, the Class member must notify the Settlement Administrator of the recovery. The Settlement Administrator may re-evaluate the amount due to the Class member under the Settlement Agreement given the recovery of the Class Vehicle.

- For each of the above, a Claimant's loss will be measured in relation to the Black Book value of a comparable private party vehicle in very average condition. To determine the Black Book value, Claimants must submit the last known (or estimated) mileage of the Class Vehicle and identify any options that were installed on the Class Vehicle.  The Settlement Administrator, on behalf of HMA (for Hyundai Class Vehicles) and KA (for Kia Class Vehicles), shall take all reasonably available steps to acquire all information necessary to determine the Black Book value, including, but not limited to, contacting dealerships for last known (or estimated) mileage of the Class Vehicle and any options that were installed on the Class Vehicle.

## II.   **SETTLEMENT CONSIDERATION**

In consideration for the Settlement Agreement, entry of judgment, and dismissal, and for the mutual release provided herein, Defendants agree to provide the following consideration to the Class:

**A.      Software Upgrade for Software Eligible Class Vehicles**

1.      Defendants shall make available in the United States (the fifty states and the District of Columbia) at no cost to Class members a Software Upgrade for Software Eligible Class Vehicles to effectively address the fact that the Class Vehicles do not contain immobilizers.

2.      The Software Upgrade is designed to prevent Software Eligible Class Vehicles that were locked using a key fob from starting without the key being present by the method of theft popularized on TikTok and other social media channels. The Software Upgrade does not guarantee any vehicle will not be subject to theft or attempted theft. Defendants shall warrant that the Software Upgrade will work as designed for the life of the vehicle. Provision of this benefit shall not expand the scope or duration of Hyundai's and Kia's respective applicable limited warranties. Remedies related to the Software Upgrade warranty will be strictly limited to repair or re-performance of the Software Upgrade.

3.      The Software Upgrade shall be implemented on Software Eligible Class Vehicles and without the need for a request by the Class member. Specifically, if a Class member brings a Software Eligible Class Vehicle to a Hyundai or Kia dealership for an unrelated service or repair the Hyundai or Kia dealerships will implement the Software Upgrade as part of that service or repair.  The Software Upgrade will be implemented at no cost to the Class member. Absent good cause, Hyundai or Kia dealerships will implement the Software Upgrade at the time a Class member brings a Software Eligible Class Vehicle to a Hyundai or Kia dealership for an unrelated service or repair.

4.      Upon installing the Software Upgrade, the dealer will affix decals to the Software Eligible Class Vehicles indicating they have additional anti-theft protection.

5.      Defendants shall make the Software Upgrade available until the later of (a) 360 days after Defendants provide notice of availability for each model of Software Eligible Class Vehicles, or (b) 360 days after final approval of the Settlement, or (c) actual installation of the Software Upgrade pursuant to appointments with authorized installers of the Software Upgrade made during the respective 360-day periods referenced in either (a) or (b) above.

| Deleted: |
| --- |

6.      Defendants shall issue a nationwide press campaign promoting the Software Upgrade and discussing its availability and effectiveness at preventing vehicle thefts, which shall include publication on social media platforms (including, TikTok and Instagram). Defendants shall implement a driver awareness and instructional campaign regarding the Software Upgrade, beyond the press campaign, promoting its availability and effectiveness. Class Counsel can raise with Defendants any issues they have with the form and content of the awareness and instructional campaign, and Defendants shall confer with Class Counsel in good faith regarding those issues.

**B.      Qualifying Purchase Reimbursements for Software Eligible Class Vehicles**

1.      Class members with Software Eligible Vehicles who purchased a steering
wheel lock for their Class Vehicle at least thirty days before the Software Upgrade for their Class
Vehicle was made available, may make a Claim for reimbursement for that purchase up to $50.

2.      For avoidance of doubt, and because some Class members may own more
than one Class Vehicle, these benefits are per Class Vehicle. The benefits identified in this Section
II.B are to be paid by Defendants separate from the Common Fund in Section II.D and are not
subject to an aggregate cap.

**C.      Reimbursement for a Qualifying Purchase for Software Alternative Class
Vehicles**

1.      Class members who own a Software Alternative Class Vehicle shall be
eligible for reimbursement for a Qualifying Purchase (*i.e.*, the purchase of a steering wheel lock,
or purchase and installation of a glass breakage alarm or similar anti-theft system, or another
aftermarket modification designed to deter or prevent theft such as the Hyundai Accessory Security
Kit, which is available for Hyundai vehicles for purchase and installation at Hyundai dealers), up
to a per claim cap of $300, as long as the Qualifying Purchase was made when the Class Vehicle
was not eligible for the Software Upgrade. If a "Software Alternative Class Vehicle" becomes
eligible to receive the Software Upgrade, as of thirty (30) days after the postmarked date of the
mail notice notifying the Class member of such eligibility, no purchase made after that date of a
steering wheel lock, or purchase and installation of a glass breakage alarm or similar anti-theft
system, or another aftermarket modification designed to deter or prevent theft will be reimbursable
under this Settlement Agreement.

2.      Any Claimant who received a steering wheel lock provided by Defendants
(either from HMA or KA (for example, shipped directly or through a dealer) or through a law
enforcement department), shall be eligible for reimbursement for purchase and installation of a
Qualifying Purchase (*i.e.*, for purchase and installation of a glass breakage alarm or similar anti-
theft system, or another aftermarket modification designed to deter or prevent theft such as the
Hyundai Accessory Security Kit which is available for Hyundai vehicles purchase and installation
at Hyundai dealers), up to a per claim cap of $250.

3.      Provision of this benefit shall not expand the scope or duration of
Defendants' respective applicable limited warranties to cover a system or modification not
otherwise covered by such warranty.

4.      Claims made pursuant to Sections II.B and II.C must:

a.  Be submitted no later than 180 days after the Final Approval Order and
Judgment;

b.  Contain a completed Claim Form;

c.  Contain Proof of Ownership;

d.  Contain Proof of Payment for the Qualifying Purchase; and

13

e.  Contain proof of installation of the Qualifying Purchase into a Class Vehicle.  Proof of installation is not required for a steering wheel lock.

5.  For avoidance of doubt, and because some Class members may own more than one Class Vehicle, these benefits are per Class Vehicle.  The benefits identified in Sections II.B and II.C are to be paid by Defendants separate from the Common Fund in Section II.D and are not subject to an aggregate cap.

**D.  Common Fund**

1.  Defendants shall make a payment to a Common Fund that will be established to make payments to Class members who submit approved claims as detailed in Section II.D. The total size of the Common Fund will depend on the number of approved claims but will be a minimum of $80,000,000 and a maximum of $145,000,000 established for all Defendants combined.

2.  Each Class member who submits a Claim within 180 Days of Final Approval and Judgment and can establish a Qualifying Loss with Proof of a Qualifying Loss, or a Software Upgrade Related Expense, shall be eligible for reimbursement as specified in Section II.D.3 & 5.

3.  **Reimbursement for Qualifying Losses**.  The following Qualifying Losses may be entitled to reimbursement payments from the Common Fund:

a.  Reimbursement for a Total Loss of a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt, subject to a per vehicle cap of 60% of the Black Book value of the vehicle. However, if prior to entry of the Final Approval Order and Judgment, Defendants resolve the insurance subrogation claims asserted in the Action, Class Counsel and Defendants will convene to discuss whether and by how much the Claim cap for a Total Loss of a Class Vehicle should be increased. There shall be only one Total Loss recovery per vehicle. Black Book vehicle values in this category shall include licensing fees, sales tax paid, registration fees and other expenses directly associated with the purchase of new/replacement vehicle.

b.  Reimbursement for damage to a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt (that does not result in Total Loss) and for the value of personal property stolen or damaged as a result of a Qualifying Theft or Qualifying Theft Attempt, subject to a per incident cap of $3,375 or 33% of the Black Book value of the vehicle, whichever is greater. However, if prior to entry of the Final Approval Order and Judgment, Defendants resolve the insurance subrogation claims asserted in the Action, Class Counsel and Defendants will convene to discuss whether and by how much the Claim cap for damage to a Class Vehicle due to a Qualifying Theft or Qualifying Theft Attempt (that does not result in Total Loss) and for the value of personal property stolen or damaged as a result of a Qualifying Theft or Qualifying Theft Attempt should be increased.

14

**Deleted:** $6,125

**Deleted:** Qualifying claims

c. Reimbursement of any insurance deductibles paid and increased insurance premiums for insurance policies that includes theft coverage, resulting from the Qualifying Theft or Qualifying Theft Attempt, subject to a per incident cap of $375. To establish an increased insurance premium for comprehensive coverage resulting from a Qualifying Theft or Qualifying Theft Attempt, Claimants must submit insurance documentation showing the increased comprehensive coverage premium.

d. Reimbursement of other related expenses as follows, subject to a per incident cap of $250 total:

    i. Car rental, taxi, ride share, or public transportation expenses that were incurred as a result of a Qualifying Theft or Qualifying Theft Attempt and were not otherwise covered by insurance;

    ii. Towing costs that were incurred as a result of a Qualifying Theft or Qualifying Theft Attempt because it was necessary to transport the stolen Class Vehicle to or from a police or city storage facility, repair facility or other location necessary to inspect, repair, sell, or dispose of a stolen Class Vehicle, including a junkyard or storage facility; and

    iii. Costs associated with speeding tickets, red light tickets, or other penalties or fines incurred arising from a stolen Class Vehicle which was subjected to a Qualifying Theft or Qualifying Theft Attempt.

4. If a Class Vehicle is subject to multiple Qualifying Thefts and/or Qualifying Theft Attempts, the Class member shall be eligible for each of the benefits under this Section II.D.3, per each Qualifying Theft or Qualifying Theft Attempt.

5. **Reimbursement for Software Upgrade Related Expenses.** The following expenses incurred relating to the implementation of the Software Upgrade may be entitled to payments from the Common Fund.

a. Reimbursement of OEM-issued fobs purchased at the direction of a Hyundai/Kia dealership because these were necessary to implement the Software Upgrade, subject to a cap of $350 per fob, with a limit of up to two fobs per Class Vehicle. To establish that the purchase of OEM-issued fobs was made at the direction of a Hyundai/Kia dealership, the Claimant must submit the relevant dealership invoice or similar documentation. The Settlement Administrator, on behalf of HMA (for Hyundai Class Vehicles) and KA (for Kia Class Vehicles), shall take all reasonably available steps to acquire all information necessary to validate a Claim for reimbursement under this section.

b. Reimbursement of other Software Upgrade related expenses as follows, subject to a per Class Vehicle cap of $250 total:

15

---

Deleted: ¶

Deleted: ¶
Licensing fees, sales tax paid, registration fees and other expenses directly associated with the purchase of new/replacement vehicle if there was a Total Loss due to a Qualifying Theft or Qualifying Theft Attempt; and¶

Deleted: ¶

      i. Lost income resulting from implementation of the Software Upgrade; and

      ii. Childcare costs resulting from implementation of the Software Upgrade.

6.     Payments from the Common Fund to satisfy approved claims are subject to a pro-rata decrease based on the amount of approved claims if the Common Fund is insufficient to pay all approved claims. If the aggregate amount of approved claims does not equal or exceed $80,000,000, the caps in this Section II.D.5 shall not apply and approved claims shall be increased proportionally until the $80,000,000 minimum Common Fund is met.

7.     In no circumstances will a paid claim exceed the amount of the submitted and accepted claim. However, any "minimum" balance remaining from the Common Fund *i.e.*, the $80 million floor of the Common Fund, after the claims period has expired shall be redistributed to claimants on a pro-rata basis based on each claimant's eligible claim amount, unless administratively infeasible, in which case they shall be distributed to a Court-approved *cy pres* recipient, until such minimum balance is depleted.

**E.    Cost of Administration and Notice**

Defendants shall be responsible for all costs of Class notice and Settlement administration, which are currently estimated to total approximately $26,000,000. In no event shall Class Counsel, Consumer Plaintiffs' Counsel, or the Class be responsible for any cost associated with Class notice or Settlement administration.

**F.    Cost of Class Counsel's Review of Appeals**

Class Counsel shall be able to spend reasonable time evaluating appeals and can be reimbursed for actual time spent reviewing those appeals, up to a total cap of $600,000, so long as Class Counsel submit documentation to Hyundai and/or Kia that shows the time spent and identifies the appeals reviewed. These costs shall not be paid from the Common Fund. Instead, Defendants shall be responsible for paying these costs separately and in addition to any fees and costs awarded to Class Counsel.

**III.    CLAIMS ADMINISTRATION**

**A.    Settlement Administrator**

Defendants and Class Counsel , worked jointly to select Angeion Group, LLC as the Settlement Administrator, subject to Court approval.

**B.    Claims Submissions**

1.     All Claims must be submitted within 180 days of Final Approval Order and Judgment.

16

**Deleted:** , provided however, if such approved Claims do not equal or exceed $50,000,000 then the Settling Defendants shall receive a credit of $10,000,000 for providing the benefits in this Section II.D before the approved claims are increased proportionately.

**Deleted:** (inclusive of a $10 million credit to Defendants if approved Claims do not equal or exceed $50 million)

**Deleted:** shall work

**Deleted:** in good faith

**Deleted:** a

2.      Claims submitted pursuant to this Settlement Agreement may be submitted, at the election of the Claimant, by U.S. mail, email, or through the dedicated Settlement website discussed below. The mailing address and email address to which Claimants may submit Claims, as well as Claimants' right to submit their Claims through the Settlement website, shall be posted prominently in each of the following locations: the Long Form Notice, the Claim Form, and the dedicated Settlement website. The _____ website shall be the dedicated Settlement website for all Class Vehicles, which will also be accessible from both the U.S. Hyundai and Kia websites' homepages.

3.      The Claim Form shall provide an option for Claimants to indicate a preference for communication via regular U.S. mail instead of email.

**C.      Claims Processing**

1.      Upon receipt of a Claim, the Settlement Administrator shall review the Claim to determine whether the Claim meets all qualifications for payment set forth in this Settlement Agreement and shall notify Claimants who do not meet all qualifications. Within 60 days of receiving the Claim, the Settlement administrator shall notify the Claimant of:

a.  Any deficiency in required documentation and shall reasonably specify what documents and/or information, if any, are still needed for claims determination;

b.  The basis for the Settlement Administrator's decision to deny a Claim, including the specific deficiencies in the Claim's supporting documentation, if any;

c.  The Claimant's right to attempt to cure any deficiency, including any deficiency that led to the Settlement Administrator's denial of a Claim; and

d.  The initial determination of the amount owed for a Claim and/or notice that any determination as to Claims for payments from the Common Fund are going to be processed at the end of the claims period.

2.      In response to receiving the written notice under section III.C.1, Claimants may:

a.  Attempt to cure the deficiency stated as justification for denying a Claim, by submitting the information and/or documentation identified by the Settlement Administrator as lacking in the Claim, within 45 days of receipt of the written notice. The Settlement Administrators shall have 45 days from the date of receiving the cure attempt to provide written notice to the Claimant stating its final determination as to the approval or denial of the Claim, and shall notify the Claimant that they are entitled to appeal the determination to the Settlement Administrator at no additional cost; or

b.  Accept the initial determination by the Settlement Administrator, which acceptance will be presumed if no cure attempt is received by the Settlement

17

Administrators within 45 days of the date of the initial determination, at which point the Settlement Administrator will provide Claimants with their final determination as to the approval or denial of the Claim. The final determination letters shall notify Claimants that they are entitled to appeal the determination at no additional cost. Claimants who accept an initial determination, i.e., by communicating acceptance or not making a cure attempt, shall not be eligible to appeal the final determination.

3.      In processing claims made by Claimants for Total Loss, the Settlement Administrator shall use a table of Black Book values that estimates the value of the subject Class Vehicle based on model and model year.

4.      For Claims that meet all requirements, the Settlement Administrator shall also determine the maximum amount of the reimbursement under the Common Fund. Following 90 days after the end of the claims period (and subject to reasonable extensions agreed to by Class Counsel depending on Claims volume), the Settlement Administrator shall report to Defendants and Class Counsel the total amount and number of approved Claims. If the total Claims fall below the $80 million Common Fund floor (inclusive of Class Counsel's attorneys' fees, costs, and expenses), Class Counsel shall confer with Defendants to provide guidance to the Settlement Administrator as to the pro rata increase in payments to be made to the Claimants.

5.      Within 120 days after the end of the claims period (or, if the total Claims fall below the $80 million Common Fund floor (inclusive of Class Counsel's attorneys' fees, costs, and expenses)), and within 60 days of receipt of guidance from Class Counsel as to the pro rata increase in payments to be made to the Claimants), the Settlement Administrator shall notify the Claimant of its final determination as to the payment owed under the Common Fund.

6.      Defendants and Class Counsel shall have the right, but no obligation, to review and comment on all claims submissions, determinations, and appeals, obtain information and documents necessary to the administration of Claims and appeals, and confer with the Settlement Administrator regarding determinations of claims and appeals. To ensure no Class member is paid twice for the same Claim, Defendants shall have the right to receive and review the list of approved Claims and corresponding VIN and Claimant information before the Settlement Administrator gives notice of its initial determination. Defendants shall also have the right to submit any documentation, such as any prior releases, payments, steering wheel lock records, etc., to the Settlement Administrator for review in connection with processing a Claim to ensure that no Class member is paid twice for the same Claim.

D.      **Appealing Final Determinations**

1.      The Settlement Administrator must issue a final determination communication to the Claimant within six months of receipt of the Qualifying Purchase Claim and for Claims for the Common Fund, within six months of the end of the claims period. Defendants will provide the mailing and email addresses for sending appeals in the Long Form Notice, on the dedicated Settlement websites, and in the final determination communications to Claimants if they made a cure attempt after initial determination. When issuing a final determination communication to a Claimant, the Settlement Administrator shall concurrently inform the Claimant of (1) the right

18

---

**Deleted:** and the $10 million credit to Defendants if the total Claims equal or do not exceed $50 million

**Deleted:** 4

**Deleted:** and the $10 million credit to Defendants if the total Claims equal or do not exceed $50 million

**Deleted:** 5

to appeal to the Settlement Administrator any decision; (2) that such appeal must be made in writing (by mail or email) to the Settlement Administrator, detailing which denied claims they are disputing and what amount they are seeking; (3) the mailing or email address for submitting that appeal; and (4) that such appeal must be postmarked or sent via email no later than 45 days from the postmark date on the final determination communication.

2.      Within 45 days of receipt of the Settlement Administrator's final determination, any Claimant dissatisfied with the final determination must notify the Settlement Administrator by mail or email that the Claimant requests appellate review by the Settlement Administrator. Claimants should retain records of their timely mailing or emailing of their written appeal and may be requested to provide such records in the event the Settlement Administrator does not actually receive the written appeal at the mailing address or email address provided.

3.      Denials based on exclusions from the Class, *e.g.*, claims for a non-Class Vehicle, etc. are not appealable, unless the contested issue is whether the vehicle is a Class Vehicle. Any final determination approving a Claim in full pursuant to the terms set forth in Settlement Agreement is not appealable, *e.g.*, Claimants cannot appeal if they believe they should have gotten more but they were approved for the maximum reimbursements (or *pro rata* adjusted maximum).

4.      The appeal shall take place by written submission with a telephonic hearing to occur if the Settlement Administrator determines it is needed. The Settlement Administrator shall have the ability to make the final determination regarding the amount to be paid to any Claimant who elects this process. The Settlement Administrator, however, will be limited to deciding disputes over the actual Claims submitted by the Claimant that were denied, i.e., the Settlement Administrator may not determine the Claimant may qualify for a Settlement benefit the Claimant did not previously apply for. The Settlement Administrator may not consider documents that were not submitted previously, either by the Claimant or Defendants, prior to initiating the appeal.

**5.**      Defendants and Class Counsel shall have the right, but no obligation, to review and comment on all appeals, obtain information and documents necessary to the appeals, and confer with the Settlement Administrator regarding determinations of appeals. The expense for each appeal to the Settlement Administrator shall be borne by Defendants. Class Counsel shall be able to spend reasonable time evaluating appeals and can be reimbursed for actual time spent reviewing those appeals, up to a cap of $600,000, so long as Class Counsel submit documentation to Hyundai and/or Kia that shows the time spent and identifies the appeals reviewed. These costs shall not be paid from the Common Fund. Instead, Defendants shall be responsible for paying these costs separately and in addition to any fees and costs awarded to Class Counsel.

**E.      Claims Reporting to Class Counsel**

1.      On a monthly basis beginning 30 days after the Notice Date, the Settlement Administrator shall provide Class Counsel and Defendants with a report regarding Claims received, each Claim's status, and any final determinations made. Upon request, the Settlement Administrator shall provide Class Counsel and Defendants with a copy of any final determination notice sent, along with the Claim Form, and all other documentation associated with the Claim.

19

2.      On a monthly basis beginning 120 days after the Notice Date, the Settlement Administrator shall provide monthly reports regarding all written requests for appellate review of any Claims. Upon request, the Settlement Administrator shall provide copies of written appeal requests to Class Counsel and copies of any communications concerning such appellate review by the Settlement Administrator. Class Counsel shall have the right to participate in the appeal process, including the right to participate in any written submission or telephonic hearing, but shall not be obligated to participate.

3.      Ninety days after the expiration of the claims period, the Settlement Administrator shall provide to both Defendants and Class Counsel a report of the number and amount of approved claims. If the Claims fall below the $80 million Common Fund floor (inclusive of Class Counsel's attorneys' fees, costs, and expenses), Class Counsel shall confer with Defendants to provide guidance to the Settlement Administrator as to the pro rata increase in payments to be made to the Claimants.

**F.      Payment-Related**

1.      For each Claim qualifying for a reimbursement payment under this Settlement Agreement, and only following determination whether Claims are subject to a pro rata increase or decrease, the Settlement Administrator shall promptly send to the Claimant, as provided for on the Claim Form, a check, digital payment (ACH, PayPal, Venmo, Zelle), or prepaid Mastercard, at the Class member's request.

2.      Within 90 days of the Settlement Administrator providing notice to the Parties of the aggregate amount of all approved claims, Defendants shall provide funding to satisfy such claims, in an amount no less than the amount necessary to reach the $80 million Common Fund floor or an amount that will not to exceed the $145 million Common Fund ceiling, consistent with the provisions of section II.D.

3.      For each Claim qualifying for a reimbursement payment under Section II, the Settlement Administrator shall send to the Claimant, as provided on the Claim Form, a check, digital payment (ACH, PayPal, Venmo, Zelle), or prepaid Mastercard, at the Class member's request.

4.      For prepaid Mastercards that are not activated within 60 days after issuance, the Settlement Administrator will remind the Class Member of the prepaid Mastercard.  If the prepaid Mastercard is not activated within 30 days of the reminder, the Settlement Administrator will issue a check.

5.      For checks that are not cashed within 120 days after issuance, the Settlement Administrator will remind the Class Member of the check. If a reissued check is necessary, Claimants must request the Settlement Administrator reissue the check within 30 days of receiving the notice.

6.      The prepaid Mastercards provided under this Settlement shall be redeemable for at least one year, without any fees charged by Defendants, the Settlement Administrator, or the card issuer. Any balance on the prepaid Mastercard can be transferred by the

20

**Deleted:** and the $10 million credit to Defendants if the total Claims equal or do not exceed $50 million

**Deleted:** mail

**Deleted:** at the address

**Deleted:** or a reimbursement debit card

**Deleted:** mail

**Deleted:** at the address

**Deleted:** or a reimbursement debit card

**Deleted:**

**Deleted:** reissue

**Deleted:** the

**Deleted:** remains uncashed for 120 days as well

**Deleted:** again

**Deleted:** 120

**Deleted:** debit cards

**Deleted:** debit

**Deleted:** , at ATMs and merchants that accept Visa cards. The debit cards

card holder to their bank account at no fee.  The prepaid Mastercards shall indicate their "use by" dates on their face.

7.      Class Counsel shall confer with Defendants' counsel concerning additional *pro rata* payments to Class Members who activated their prepaid Mastercards, cashed their checks, and/or received digital payment, or *cy pres*, in the event that such payments are administratively infeasible.

**Deleted:** Upon the expiration of the debit cards issued from the Common Fund, the amount not expended shall be placed in escrow

**Deleted:** .

**Deleted:** expended their debit cards

8.      The Parties acknowledge and agree that any and all provisions, rights, or benefits conferred by any law of any state or territory of the U.S., or any principle of common law, that provides for how residual amounts in a Settlement fund should be distributed, including, but not limited to, California Code of Civil Procedure section 384(b), are not applicable to this Settlement Agreement. Although the Parties expressly agree that this Settlement is not governed by California Code of Civil Procedure section 384(b) or other similar laws and does not create as settlement fund nor any "unpaid residue," the Class Representatives on behalf of themselves and the Class members nonetheless expressly acknowledge and agree that, to the extent permitted by law, they are waiving any protections of California Code of Civil Procedure section 384(b) and of any comparable statutory or common law provision of any other jurisdiction.

9.      The Parties acknowledge and agree that the forms of compensation set forth in Section II do not constitute gift cards, gift certificates, or member rewards cards under any federal and/or state laws.

10.     Nothing in this Settlement Agreement shall be read to prevent Defendants from electing, at its sole discretion and on a case-by-case basis, to implement or to continue to implement any customer satisfaction or goodwill policy, program, or procedure at its discretion, that provides consideration to Class members without regard to the Class members' entitlement to relief under the Settlement Agreement.

11.     No Class member shall recover twice for the same Qualifying Loss. To ensure no Class member recovers twice, Claimants shall submit documentation reflecting any payments or reimbursements previously received for that Claim.

12.     The Parties recognize that certain Class member circumstances might warrant Defendants providing Settlement benefits to a Class member in advance of formal approval and implementation of the Settlement. Defendants can submit to Class Counsel and the Settlement Administrator information concerning such advanced benefits, and if the Settlement Administrator determines the claims otherwise meet the conditions of the Settlement, the Settlement Administrator shall consider such claims and payments as applying in full, irrespective of any applicable per claim caps, towards the Common Fund and not subject to any pro rata reduction.  Such approved payments towards the Common Fund shall be cumulatively capped at $1 million for each of Hyundai and Kia.

21

## IV.    NOTICE TO THE CLASS

### A.    CAFA Notice

In compliance with the attorney general notification provision of the Class Action Fairness Act, 28 U.S.C. § 1715, Defendants shall provide notice of this Settlement Agreement to the Attorney General of the United States, and the attorneys general of each state or territory in which a Class member resides.

### B.    Notice Deadline

No later than the Notice Date, Defendants shall cause notice to the Class to be disseminated by U.S. mail (for current Class Vehicle owners and lessees as reflected in DMV databases), email (for Class members whose information Defendants have), and the dedicated Settlement website (with a link to the dedicated Settlement website from both the Hyundai and Kia main U.S. webpages). The form and substance of all notices provided by Defendants to Class members shall be subject to prior input and approval from Class Counsel.

### C.    Individual Class Notice Methods

1.      Following the Court granting preliminary approval of this Settlement, Defendants or their Settlement Administrators shall provide by direct U.S. mail, to all reasonably identifiable Class Members, each of the following: (i) the Long Form Notice and (ii) a Claim Form. For purposes of identifying the requisite names and addresses, Defendants or their Settlement Administrator agree to provide, to the extent they have not already done so, all names and addresses of Class Vehicle owners, along with Class Vehicle VINs, to _____, or a similar third-party entity, who shall be authorized to use that information to obtain the names and most current addresses of Class Vehicle owners through state agencies. Because some states require a prior court order before vehicle owner and lessee information can be released, such information may not be available until after the preliminary approval order is entered.

2.      Additionally, Defendants or their Settlement Administrator shall provide by email, to all Class Members for which Defendants maintain email addresses, a hyperlink to the dedicated Settlement website discussed below and electronic versions of the Long Form Notice and Claim Form following the Court granting preliminary approval of this Settlement.

3.      The Settlement Administrator shall maintain a dedicated Settlement website—the content and domain name of such are subject to prior Class Counsel approval—which will contain: (i) instructions on how to obtain reimbursements; (ii) a mechanism by which Claimants can submit Claims electronically; (iii) instructions on how to contact the Settlement Administrator for assistance with their Claims; (iv) the Long Form Notice; (v) the Claim Form; (vi) this Settlement Agreement; (vii) any orders issued in this Action approving or disapproving of the proposed Settlement; and (viii) any other information the Parties determine is relevant to the Settlement. Defendants shall make the same information available to Class members through _____ and _____ via links to the dedicated Settlement website. The dedicated Settlement website shall also offer the ability for visitors to enter their VINs without completing a Claim Form to determine if their vehicles are indeed Class Vehicles and whether a Class Vehicle is a Software Alternative Vehicle or a Software Eligible Vehicle.

4. Following the Notice Date, the Settlement Administrator shall issue monthly press releases for a period of six months, notifying the public of the existence of the Settlement, the Settlement website, and all opt-out and objection deadlines.

5. The Settlement Administrator shall be prepared to respond to questions regarding the status of submitted Claims, how to submit a Claim, and other aspects of this Settlement. The Settlement Administrator shall maintain a dedicated toll-free telephone number for Class members to call. The telephone numbers shall be listed on the Long Form Notice, Claim Form, and the dedicated Settlement website.

**D.     Notice Reporting to Class Counsel**

For a period ending 90 days after the Notice Date, Defendants or their Settlement Administrator shall provide Class Counsel with reasonable periodic reports of the total number of notices sent to Class members by U.S. mail and email, along with the numbers of notices returned as undeliverable. The first report, which shall be provided to Class Counsel no more than 15 business days after notices are first sent to Class members, and final report shall also include each U.S. address and email address to which notice was sent and when the notices were each sent. Defendants or their Settlement Administrator shall communicate with Class Counsel regarding delivery of notice and the number of Class members who have responded to the notice.

**V.     ATTORNEYS' FEES AND SERVICE PAYMENTS**

1. Consumer Plaintiffs, through Class Counsel, will petition the Court for an attorneys' fee award, cost award, and for Class Representative service payments of $1,000 per Class Representative to be paid from the Common Fund. The attorneys' fee request shall be for no more than 25 percent of the Common Fund plus actual out of pocket expenses.

2. Within 60 days following (i) the Effective Date or (ii) the first date after the Court enters Final Approval Order and Judgment, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order, Defendants shall put into escrow at least $60 million for the Common Fund.

3. Within 60 days following (i) the Effective Date or (ii) the first date after the Court enters Final Approval Order and Judgment, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order, Defendants shall put into a separate escrow account, at least $500,000 to satisfy Claims for a Qualifying Purchase. Should more funds be necessary to pay the Qualifying Purchase Claims, the Settlement Administrator shall inform Defendants who will deposit into that same escrow account additional funds to satisfy the Qualifying Purchase Claims. After all timely claims are processed and appealed, any funds remaining in the escrow account for Qualifying Purchases, as distinct from the escrow account for Common Fund Claims, shall revert back to Defendants.

4. Class Counsel shall be paid their fees, expenses, and service payments awarded by the Court from the Common Fund within the later of 60 days following (i) the Effective Date or (ii) the first date after the Court enters an order awarding fees, expenses, and service payments, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order.

23

5.      Within 30 days following (i) the Effective Date or (ii) the first date after the Court enters an order awarding fees, expenses, and service payments, and all appellate rights with respect to said order have expired or been exhausted in such a manner as to affirm the order, Class Counsel shall provide Defendants, for each payee, a W-9 and wire instructions on their firm letterhead for the payment to Class Counsel of fees, expenses, and service payments awarded by the Court.

**VI.    MUTUAL RELEASE**

1.      Upon entry of a Court order granting final approval of the Settlement Agreement and entering judgment pursuant to section VII.C below, Releasors irrevocably release, waive, and discharge any and all past, present, and future liabilities, claims, causes of action, legal claims, damages, costs, attorneys' fees, losses, or demands that have been brought or could have been brought, whether known or unknown, existing or potential, or suspected or unsuspected relating to Class Vehicles and the method of theft popularized on TikTok and other social media channels relating to the lack of engine immobilizers as alleged in this Action against Releasees whether or not specifically named herein, asserted or unasserted, under or pursuant to any statute, regulation, common law, or equitable principle, based on the facts alleged in any consumer complaint filed in the Action and all legal claims of whatever type or description arising out of, that may have arisen as a result of, or which could have been brought by consumers based on, any of the facts, acts, events, transactions, occurrences, courses of conduct, representations, omissions, circumstances or other matters pleaded in consumer complaints filed in the Action. The relief offered by this Settlement Agreement is the sole and final remedy for all claims that could have been asserted against Defendants by the Class, including as to the full amount of all potential claims for theft insurance deductible reimbursements.

2.      The Settlement Agreement and release do not release past, present, or future claims for (i) death, (ii) personal injury, (iii) subrogation claims by licensed insurers; (iv) or claims brought or awards sought by the Government Entities or Insurance Entities.

3.      The release effected by this Settlement Agreement is intended to be a specific release and not a general release. If, despite, and contrary to the Parties' intention, a court construes the release as a general release under California law and determines that Section 1542 of the California Civil Code is applicable to the release, the Class Representatives, on behalf of themselves and all Class members, hereby expressly waive and relinquish to the fullest extent permitted by law, the rights provided by Section 1542 of the California Civil Code, which provides:

> _Certain Claims Not Affected By General Release:_  _A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party._

Each of the Class Representatives expressly acknowledges that the Class Representative has been advised by Class Counsel of the contents and effects of Section 1542, and with knowledge, each of the Class Representatives hereby expressly waives, on behalf of the Class Representative and all Class members, whatever benefits the Class Representatives and the Class members may have

24

**Deleted:** (i)

**Deleted:** , and (ii) claims related to theft of a Class Vehicle (subject to section VI.2 below).

**Deleted:** or

had pursuant to such section. Each of the Class Representatives hereby expressly waives, on behalf of the Class Representative and all Class members, the benefit of any law of any state or territory of the United States, federal law or principle of common law, or of international or foreign law, which is similar, comparable, or equivalent to Section 1542 of the California Civil Code.

4.      By this Settlement Agreement, Consumer Plaintiffs and their attorneys release Releasees and their counsel from any and all claims or causes of action that were, or could have been, asserted by Consumer Plaintiffs or their attorneys, pertaining to this Action or Settlement Agreement. Consumer Plaintiffs and the Class members recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of the Final Approval Order and Judgment, Releasors fully, finally, and forever settle and release any and all legal claims against Releasees. The Parties acknowledge that this waiver and release were bargained for, and are material elements of the Settlement Agreement.

5.      In addition, by this Settlement Agreement, Defendants release the Consumer Plaintiffs and their attorneys from any and all claims or causes of action that were, or could have been, asserted by Defendants, pertaining to this Action or Settlement Agreement. Defendants recognize that, even if they later discover facts in addition to or different from those which they now know or believe to be true, they nevertheless agree that, upon entry of an order granting final approval to this Settlement Agreement and entering judgment, Defendants fully, finally, and forever settle and release any and all such claims. The Parties acknowledge that this waiver and release were bargained for, and are material elements of the Settlement Agreement.

6.      This Settlement Agreement, including the release in the preceding paragraphs does not affect the rights of Class members who timely and properly request exclusion from the Class. The Parties do not intend this Settlement Agreement, including its release, to affect any legal claims that arise out of a consumer's purchase or use of any vehicle other than a Class Vehicle.

7.      The administration and consummation of the  Settlement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement. The Court retains jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement, including, but not limited to, orders enjoining Class members from prosecuting claims that are released pursuant to the Settlement Agreement and allowing for discovery related to objectors.

8.      Upon issuance of the Final Approval Order and Judgment: (i) the Settlement Agreement shall be the exclusive remedy for Class members; (ii) Releasees shall not be subject to liability or expense of any kind to any Class members for reasons related to the Action except as set forth herein; and (iii) Class members shall be permanently barred from initiating, asserting, or prosecuting any and all released claims against the Releasees.

## VII.  SETTLEMENT APPROVAL PROCESS

### A.  Intention to Complete Settlement

1. The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement Agreement, shall promptly perform their respective obligations hereunder, and shall promptly take any and all actions and execute and deliver any and all additional documents and all other materials and/or information reasonably necessary or appropriate to carry out the terms of this Settlement Agreement and the transactions contemplated hereby. Consumer Plaintiffs shall prepare all preliminary approval and final approval papers.

2. If the Preliminary Approval Order or the Final Approval Order and Judgment are not obtained from the Court in the form contemplated by this Settlement Agreement, or, if the Final Approval Order and Judgment is reversed or materially modified on appeal, this Settlement Agreement should be null and void *ab initio* upon election of any of the Parties and have no further force and effect with respect to any of the Parties in this Action. Nothing in this provision shall affect Defendants' obligation to pay all costs reasonably incurred by the Settlement administration process.

### B.  Preliminary Court Approval

1. Promptly after execution of this Settlement Agreement by the Parties, counsel for the Parties shall present this Settlement Agreement to the Court for review and jointly seek entry of an order that certifies the Class as a Settlement Class, grants preliminary approval of this Settlement Agreement, and directs Defendants to provide notice of the Settlement in the manners listed herein.

2. No later than 20 days before the Fairness Hearing, Defendants shall provide affidavits for the Court, with a copy to Class Counsel, attesting that notice was disseminated in a manner consistent with the terms of this Settlement Agreement, or as otherwise required by the Court.

### C.  Final Court Approval

1. Once the Court enters a Preliminary Approval Order, counsel for the Parties shall use their best efforts to promptly obtain entry of a Final Approval Order and Judgment that:

    **(a)** Finds the Settlement Agreement to be fair, reasonable, and adequate;

    **(b)** Finds that the Class notice given constitutes the best notice practicable;

    **(c)** Approves the release specified above as binding and effective as to all Class members who have not properly excluded themselves from the Class;

    **(d)** Directs that judgment be entered on the terms stated herein; and

    **(e)** Provides that the Court will retain jurisdiction over the Parties and Class members to enforce the terms of the final order and judgment.

2.      Upon entry of the Final Approval Order and Judgment, this Action shall be dismissed, on its merits and with prejudice, with respect to all Consumer Plaintiffs and all Class members who have not properly excluded themselves from the Class, and without prejudice as to anyone else, subject to the continuing jurisdiction of the Court, including but not limited to the claims of the named Consumer Plaintiffs and putative Class members who are not expressly named, identified, or encompassed in this Settlement Agreement.

## VIII.   REQUESTS FOR EXCLUSION

1.      The provisions of this section shall apply to any request by a Class member for exclusion from the Class.

2.      Any Class member may make a request for exclusion by submitting such request in writing (mail or through the Settlement website) as set forth in the Class notice. Specifically, Class members can submit an opt-out form online at XXXX, or send a letter via U.S. mail (or an express mail carrier) saying that they want to "opt-out" or "be excluded from" the Class Settlement in *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation*, No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.) and identifying the following information: (i) the Class member's full name; and (ii) the model and model year, and Vehicle Identification Number ("VIN") (located on a placard on the top of the dashboard visible through the driver's side corner of the windshield or in the driver's side door frame).  Failure to provide each required element may result in  rejection of a request for exclusion.  Exclusion requests cannot be made via phone or email.  All exclusion requests must be submitted no later than XXXX.

3.      Exclusion requests made by mail should be sent to:

| Defense Counsel |
|---|
| Shon Morgan |
| Quinn Emanuel Urquhart & Sullivan, LLP |
| 865 S. Figueroa St., 10th Floor |
| Los Angeles, California 90017 |

4.      Any request for exclusion must be submitted not later than the date specified in the Court's Preliminary Approval Order. Insurance companies that come into possession of a Class Vehicle through the salvage process, Government Entities and Insurance Entities do not need to request exclusion as they are already excluded from the Class.

5.      Any request for exclusion shall (i) state the Class member's full name and current address, (ii) provide the model year and VIN of his, her, or their Class Vehicle(s), and (iii) specifically and clearly state his, her, or their desire to be excluded from the Settlement Agreement and from the Class.

6.      Failure to comply with these requirements and to timely submit the request for exclusion will result in the Class member being bound by the terms of the Settlement Agreement.

7.      Any Class member who submits a timely request for exclusion may not file an objection to the Settlement Agreement and shall be deemed to have waived any rights or benefits under this Settlement Agreement.

**Deleted:**  and the approximate date(s) of purchase or lease

8.      Beginning 30 days after the Notice Date, Defendants shall report to Class Counsel on a weekly basis the names of all Class members who have submitted a request for exclusion.

9.      Plaintiffs, through Class Counsel, and Defendants shall have the right, but not the obligation, to terminate this Agreement if: (1) the total number of timely and valid requests for exclusion exceeds 12,000 Class Members (exclusive of any opt-out request from any person or business who are not eligible to submit an opt-out request because they are already excluded from the Class, such as insurance companies that come into possession of a Class Vehicle through the salvage process); (2) the Court rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that results in a substantial modification to a material term of the proposed Settlement Agreement; or (3) the Court, or any appellate court(s), does not enter or completely affirm, or alters, narrows or expands, any portion of the Final Approval Order and Judgment, that results in a substantial modification to a material term of the proposed Settlement or Settlement Agreement. However, the Parties agree to act in good faith to secure Final Approval of this Settlement Agreement and to attempt to address in good faith concerns regarding the Settlement identified by the Court and any appellate court.

10.     Class Counsel represent and warrant that they have no other agreements with other counsel regarding Class members, including any agreements with respect to referring, soliciting, or encouraging any Class members to request to be excluded (or "opt out") from this Settlement Agreement.

11.     Upon certification of the Class in connection with the Preliminary Approval of this Settlement Agreement, Class Counsel agree to seek in the Preliminary Approval Order from the Court a provision encouraging all written communications to multiple Class members with respect to this Settlement Agreement to be reviewed and approved by Class Counsel and the Court, and Class Counsel agree to abide by that provision as may be required by the Court.

## IX.     OBJECTIONS

1.      The Parties will request that the Court enter an order requiring any Class member who wishes to enter an objection to be considered to submit a written notice of objection to Class Counsel and Defendants by the deadline set in the Court's Preliminary Approval Order.

2.      To state a valid objection to the Settlement Agreement, an objecting Class member must provide the following information in his, her, or their written objection: (i) the case name and number, *In re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liab. Litig.*, Case No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.); (ii) his, her, or their full name, current address, and current telephone number; (iii) the model year and VIN(s) of his, her, or their Class Vehicle(s); (iv) a statement of the objection(s), including all factual and legal grounds for the position; (v) copies of any documents the objector wishes to submit in support; (vi) the name and address of any lawyer(s) representing the objecting Class member in making the objection or who may be entitled to compensation in connection with the objection; (vii) a statement of whether the Class member objecting intends to appear at the Final Approval Hearing, either with or without counsel; (viii) the identity of all counsel (if any) who will appear on behalf of the Class member objecting

28

at the Final Approval Hearing and all persons (if any) who will be called to testify in support of the objection; and (ix) the signature of the Class member objecting, in addition to the signature of any attorney representing the Class member objecting in connection with the objection, and date of the objection.

3.      If the objecting Class member intends to appear, in person or by counsel, at the final approval hearing, the objecting Class member must so state in the objection. Any Class member who does not state his, her, or their intention to appear in accordance with the applicable deadlines and other specifications, or who has not filed an objection in accordance with the applicable deadlines and other specifications, will be deemed to have waived any objections to the Settlement Agreement and can be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

4.      The Parties will request that the Court enter an order providing that the filing of an objection allows Class Counsel or counsel for Defendants to notice such objecting person for and take his, her, or their deposition consistent with the Federal Rules of Civil Procedure at an agreed-upon location, and to seek any documentary evidence or other tangible things that are relevant to the objection. Failure by an objector to make himself, herself, or themselves available for a deposition or comply with expedited discovery requests may result in the Court striking the objection and otherwise denying that person the opportunity to be heard. The Court may tax the costs of any such discovery to the objector or the objector's counsel should the Court determine that the objection is frivolous or made for improper purpose.

5.      Any objector who seeks a fee for their objection shall do so as prescribed under Federal Rule of Civil Procedure 23(e)(5)(B).

6.      These procedures and requirements for objecting are intended to ensure the efficient administration of justice and the orderly presentation of any Class member's objection to the Settlement Agreement, in accordance with the due process rights of all Class members.

7.      Any Class member who fails to file and serve timely a written objection containing all of the information listed in paragraphs 2 and 3 above, including notice of his, her, or their intent to appear at the Final Approval Hearing, shall not be permitted to object to the Settlement Agreement and shall be foreclosed from seeking any review of the Settlement Agreement and any of its terms by any means, including but not limited to an appeal.

8.      The Parties shall promptly inform the Court of any consideration sought by an objector and the circumstances of such a request.

X.      **MISCELLANEOUS**

A.      **Choice of Law**

This Settlement Agreement shall be governed by and construed in accordance with the substantive laws of the State of California without giving effect to any choice or conflict of law provision, or rule that would cause the application of the laws of any other jurisdiction.

29

**Deleted:** In addition, any Class member objecting to the Settlement Agreement shall provide a list of any other objections submitted by the objector, or the objector's counsel, to any class action settlements submitted in any court in the United States in the previous five years. If the Class member or his, her, or their counsel has not made any such prior objection, the Class member shall affirmatively so state in the written materials provided with the objection.

**B.      Not Evidence**

1.      The Parties understand and acknowledge that this Settlement Agreement constitutes a compromise and settlement of disputed claims. No action taken by the Parties, either previously or in connection with the negotiations or proceedings connected with this Settlement Agreement, shall be deemed or construed to be an admission of the truth or falsity of any claims or defenses heretofore made or an acknowledgment or admission by any Party of any fault, liability or wrongdoing of any kind whatsoever to any other Party.

2.      Neither this Settlement Agreement nor any act performed or document executed pursuant to or in furtherance of it: (a) is, or may be deemed to be, or may be used as, an admission of, or evidence of, the validity of any legal claim made by Consumer Plaintiffs or Class members, or of any wrongdoing or liability of Defendants, or (b) is, or may be deemed to be, or may be used as, an admission of, or evidence of, any fault or omission of Releasees in any proceeding in any court, administrative agency, or other tribunal.

3.      This provision shall survive the expiration or voiding of the Settlement Agreement.

**C.      Headings**

The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and shall not be deemed to constitute part of this Settlement Agreement or to affect its construction.

**D.      Effect of Exhibits**

The exhibits to this Settlement Agreement are an integral part of the Settlement Agreement and are expressly incorporated and made a part of this Settlement Agreement.

**E.      Entire Agreement**

This Settlement Agreement represents the entire agreement and understanding among the Parties and supersedes all prior proposals, negotiations, agreements, and understandings relating to the subject matter of this agreement. The Parties acknowledge, stipulate, and agree that no covenant, obligation, condition, representation, warranty, inducement, negotiation, or understanding concerning any part or all of the subject matter of this agreement has been made or relied on except as expressly set forth in this Settlement Agreement. No modification or waiver of any provisions of this Settlement Agreement shall in any event be effective unless the same shall be in writing and signed by the person or Party against whom enforcement of the Settlement Agreement is sought.

**F.      Counterparts**

This Settlement Agreement may be executed in one or more counterparts, each of which shall be deemed an original as against any Party who has signed it, and all of which shall be deemed a single agreement.

This Agreement shall be effective upon its execution by Class Counsel, Defendants, and Defendants' Counsel, except for those provisions that require Court-approval to be effective, and those provisions shall become effective upon their approval by the Court.

**G.    Arm's-Length Negotiations**

1.    The Parties have negotiated all of the terms and conditions of this Settlement Agreement at arm's length. The provisions for attorneys' fees and costs and service awards are being negotiated separately from and after the agreement on the provisions for relief to Consumer Plaintiffs and the Class.

2.    All terms, conditions, and exhibits in their exact form are material and necessary to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

3.    The determination of the terms of, and the drafting of, this Settlement Agreement has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel. Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities shall be construed against the drafter does not apply. The Parties were represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Settlement Agreement, and there was no disparity in bargaining power among the Parties to this Settlement Agreement.

**H.    Public Statements**

1.    The Parties and their Counsel agree to keep the substance of this Settlement Agreement confidential until the date on which the Settlement Agreement is filed with the Court, provided that this section shall not prevent Defendants from disclosing such information, prior to the date on which the Agreement is filed, to state and federal agencies, independent accountants, actuaries, advisors, financial analysts, insurers, or attorneys, nor shall it prevent the Parties and their Counsel from disclosing such information to persons or entities (such as experts, courts, co-counsel, and/or administrators) to whom the Parties agree disclosure must be made in order to effectuate the terms and conditions of the Settlement Agreement; provided further that Defendants may disclose publicly the terms of the Settlement Agreement that it deems necessary to meet its regulatory obligations or fiduciary duties; and provided further that Consumer Plaintiffs may disclose the terms to their expert(s).

2.    Neither the Parties nor their Counsel shall issue (or cause any other Person to issue) any further press release concerning the existence or substance of this agreement, excepting the jointly-created press release described as follows. The Parties may publicly release and announce the fact and terms of the Settlement Agreement, subject to the Parties reaching mutual written consent on the contents of the press release prior to filing for preliminary approval. Excepting such announcement and the exhibits to this Settlement Agreement, neither the Parties nor their Counsel shall issue (or cause any other Person to issue) any other press release concerning this Settlement Agreement or the Settlement set forth herein, unless otherwise agreed to in writing and neither the Parties nor their Counsel shall make (or cause any other Person to make) any statements of any kind to the press concerning this Settlement Agreement or the Settlement set forth herein, except

31

that a Party or Party's counsel may respond to an inquiry from a member of the press by (a) directing the member of the press to a public resource to review or obtain a copy of this Settlement Agreement or the Class Notice or (b) by supplying additional information to the member of the press, provided that the responding Party will provide such additional information to the other Parties as promptly as practicable. A Party or Party's counsel shall provide notice to the other Parties before responding to a press inquiry whenever reasonably possible. If such notice cannot reasonably be provided before responding to a press inquiry, the responding Party or Party's Counsel shall notify the other Parties promptly after responding to the press inquiry. This paragraph does not prevent Class Counsel from communicating with individual Class members about the Settlement Agreement.

    **I.**       **Good Faith**

The Parties acknowledge that prompt approval, consummation, and implementation of this Settlement Agreement is essential. The Parties shall cooperate with each other in good faith to carry out the purposes of and effectuate this Settlement Agreement, shall promptly perform their respective obligations hereunder, and shall attempt to resolve any dispute that may arise under this Settlement Agreement in a good faith and expeditious manner.

    **J.**       **Continuing Jurisdiction**

The Parties agree the Court may retain continuing and exclusive jurisdiction over them, and all Class members, for the purpose of the administration and enforcement of this Settlement Agreement.

    **K.**       **Extensions of Time**

The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement without further notice (subject to Court approval as to court dates).

    **L.**       **Service of Notice**

Whenever, under the terms of this Settlement Agreement, written notice is required to be given to Defendants or Class Counsel, such service or notice shall be directed to the individuals and addresses specified below, unless those individuals or their successors give notice to the other parties in writing:

As to Consumer Plaintiffs:    Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
Email: steve@hbsslaw.com

Elizabeth A. Fegan, Esq.
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606
Email: beth@feganscott.com

Kenneth B. McClain, Esq.
HUMPHREY FARRINGTON & McCLAIN
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis, Esq.
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

<u>As to Defendants</u>:

Shon Morgan
QUINN EMANUEL URQUHART & SULLIVAN,
LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

Peter J. Brennan
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456

33

IN WITNESS HEREOF, each of the Parties hereto has caused this agreement to be executed, as of the day(s) set forth below.

Dated: September___ 2023                By: _____        Deleted: July 20

Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
Fax: (206) 623-0594
Email: steve@hbsslaw.com

Elizabeth A. Fegan, Esq.
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain, Esq.
HUMPHREY FARRINGTON & McCLAIN
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis, Esq.
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Consumer Class Action Leadership Counsel and Counsel for Consumer Plaintiffs*

Dated: September___ 2023                By: _____        Deleted: July 20

Shon Morgan
QUINN EMANUEL URQUHART
& SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, CA 90017

Peter J. Brennan
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456

*Counsel for Defendants*

34

Dated: September ___ 2023          By: _____

Deleted: July 20

Jason Erb
Chief Legal Officer, Hyundai Motor North America
For Hyundai Motor America and Hyundai Motor Company

Dated: September ___ 2023          By: _____

Deleted: July 20

John Yoon
Executive Vice President and General Counsel, Kia America, Inc.
For Kia America, Inc. and Kia Corporation

35