# Exhibit 2

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

IN RE: HYUNDAI KIA THEFT MARKETING, SALES PRACTICES AND PRODUCTS LIABILITY LITIGATION

**Consolidated Case No.** 8:22-ML-3052 JVS(KESx):

## DECLARATION OF EDWARD M. STOCKTON IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS ACTION SETTLEMENT APPROVAL

## TABLE OF CONTENTS

1. Introduction and Summary of Findings .......................................................................... 2

2. Qualifications .................................................................................................................. 9

3. Structure Of Declaration ................................................................................................ 10

4. Nature of Case and Types of Potential Harm Considered .............................................. 12

5. Harm/Compensation Scenarios ...................................................................................... 14

6. Economic Harm Concepts .............................................................................................. 17

7. Quantification of Economic Harm/Consequential Costs ................................................ 18

8. Summary of Empirical Findings ..................................................................................... 23

9. Reliance Materials ........................................................................................................... 25

10. Compensation/Limitations ............................................................................................. 25

## 1.  INTRODUCTION AND SUMMARY OF FINDINGS

1.      I am the Vice President and Director of Economics Services of The Fontana Group, Inc. ("Fontana"), a consulting firm located at 3509 North Campbell Avenue, Tucson, Arizona 85719. I serve on the Board of Directors of Fontana and its parent company, Mathtech, Inc. Fontana provides economic consulting services and expert testimony throughout the United States, Canada, and other countries. Fontana has extensive experience assessing economic harm to consumers from alleged product defects and misconduct.

2.      This matter concerns the evaluation of the Proposed Settlement between the Consumer Class in the above-referenced litigation and "Defendants," Hyundai/Kia, et al.

3.      Class Counsel requested that I review the Settlement Agreement dated July 20, 2023, and apply my expertise in economics and subject matter expertise in the retail automotive industry to evaluate the both the original Proposed Settlement and the Amended Proposed Settlement, independently and in consideration of the Court's August 16, 2023, Order Regarding Motion for Preliminary Settlement Approval and Class Certification (the "Court's Order," Dkt. No. 200), and the manner in which changes to the original Proposed Settlement terms would affect Class Members' eligible claim amounts and the sufficiency of their outcomes.

4.      Regarding the second task, two proposed changes to the Proposed Settlement terms are relevant to my analysis. The first change modifies the cap on Total Loss claims from $6,125 to a factor equal to 60% of the Class Vehicle's Black Book value.[1] The second change is to replace $3,375 the cap on Partial Loss claims with a cap equal to the greater of $3,375 *or* 33% of the Class Vehicle's Black Book value.

---

[1] As discussed in more detail in the Body of this Declaration, I evaluate the settlement using JD Power data, which, like Black Book, is a recognized and reliable source of used vehicle market values.

5.      Because the proposed changes discussed immediately above are not particularly complicated, I describe briefly the potential effects of the changes. First, both changes (to Total Loss and Partial Loss caps) are responsive to the Court's order to tie available compensation amounts to vehicle value—they do so directly. With respect to the change to the Total Loss compensation cap, a variable cap tied to vehicle value sets maximum eligible compensation to $5,625 (or actual costs if less than $5,625)for vehicles with values equal to or less than $9,375 ($5,625 is 60% of $9,375), which is lower than the original Proposed Settlement, and to $5,625 or higher for vehicles with values equal to or greater than $9,375. The modification to the Partial Loss cap can only result in payments as high or higher than those that would have existed under the original Proposed Settlement, with higher eligible payments available to claimants with higher-value vehicles.

6.      Recognizing that Class Vehicles differ in value, the Court's Order directed the Parties to consider the vehicle's value in fashioning a reimbursement program under the Proposed Settlement so that those suffering a greater monetary loss recover more.  *See* Court's Order at 29 ("[S]ome Class Members' vehicles could be worth substantially more than others, therefore suffering a greater monetary loss."). In consideration of the Court's Order, I identify the manner in which reasonably anticipated losses by Class Members relate to vehicle value, as well as elements of loss that tend to be less sensitive to vehicle value. Additionally, I consider whether a significant majority of claimants would be likely to receive settlement compensation in amounts that are at least 60% of their monetary losses under the original and proposed payment caps (understanding that Class Counsel targeted a 60% risk-adjusted recovery).

7.      As set forth in the body of this Declaration, I find that the original terms of the Proposed Settlement would be responsive to both monetary losses generally, i.e., Class Members with larger

losses would receive more compensation than those with lower losses, and monetary losses that relate to vehicle value. Furthermore, it is reasonable to expect that the large majority of claimants would receive compensation in line with or exceeding the benchmark of 60% of their monetary losses, which is the amount that follows from the 40% litigation risk discount that drove Class Counsel's decision-making.

8.      Under the proposed Amended Settlement Total Loss and Partial loss payment caps, available compensation to Class Members would depend directly upon vehicle value.  I expect the large majority of claimants, under the revised payment caps, to receive compensation in line with or exceeding the benchmark of 60% of their monetary losses, with some exceptions.

9.      The Court's Order at page 24 directed the parties to "fashion a matrix for reimbursement that aligns with each Class Member's vehicle's estimated value, rather than taking an average of all vehicles and reducing it by 40%." This approach is similar to what was employed in the settlement in *In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation*, C.D. Cal. Case No. 8:10-ml-02151, Dkt. No. 3556 at 15-18.  The matrix in *Toyota* was developed by Fontana, whom (like here) Class Counsel retained in that case. I understand that the *Toyota* matrix was used to estimate grouped diminished value base amounts for calculating payments by model, model year, and month of sale. Based on those factors (model, model year, month of sale), claimants were eligible to receive the corresponding diminished value amount that applied to their vehicle and sale month characteristics. It is my understanding that (unlike here) the *Toyota* payment matrix served to establish compensation levels and that the settlement did not require claimants to establish individualized actual economic losses during the claims process.  Here, while a matrix is useful a) to demonstrate how proposed settlement payments relate to vehicle value, and b) to assist the court in evaluating likely loss levels and

payment amounts, a matrix like that in Toyota would not be needed here to determine settlement payments for damage to a Class Vehicle or damaged or lost personal property due to a qualifying event when the vehicle is not a Total Loss. This is because the Class Member is required to submit evidence of the actual out-of-pocket losses incurred.  However, in the instance of a Total Loss, a table may be useful for the settlement administrator to reference in estimating clean retail values on replacement vehicle purchases of the Class Vehicle models identified in the claim form, as discussed further below, and I understand that the parties have agreed to utilize such a table.

10.    The original Proposed Settlement provided up to $6,125 for consumers who suffered qualified events resulting in an unremedied theft or total losses of their Class Vehicles, and $3,375 for consumers who suffered qualified events but whose Class Vehicles were recovered and/or not declared total losses. Additional compensation is available for other incidental expenses incurred in connection with qualified events. I understand that the figures cited above account for a 40% discount for litigation risk and, therefore, imply gross (pre-litigation risk) loss of $10,208 and $5,625, respectively.

11.    While Class Vehicles vary in age, current value, or original value, the $6,125 loss figure would fully compensate substantially all prospective insured claimants for lost value and reasonably anticipated associated costs in the event of a total loss, including ancillary economic costs associated with replacing the vehicle. Additionally, claims related to over 90% of Class Vehicle trim levels (make, model, model year, vehicle feature packages, etc.), would likely be eligible for full compensation for the costs identified. Under the revised payment caps, I would expect similar outcomes, with a few possible exceptions. For the very uncommon lowest-value vehicles, e.g., $2,500, a payment based on vehicle value may not provide full compensation for monetary losses for insured Class Members, but this is extremely unlikely to occur given that Class

Members with cars valued at $2,500 very likely do not have collision or theft insurance. For insured claimants with Total Loss events, full compensation would be likely because of the effect of the higher vehicle values (e.g., $30,000+) on eligible payment amounts.

12.     Under both the original Settlement Agreement terms and the proposed modified payment caps in the Amended Settlement, the relationship between available compensation and potential harm suffered by uninsured claimants following Total Loss events is more complicated and sensitive to variation in vehicle values. Whereas insured claimants who experience total loss events pay deductibles and face real consequential economic costs associated with vehicle replacement, including additional transaction costs in some cases, uninsured claimants—because they do not have insurance (or theft and collision coverage)—tend to suffer systematically more unmitigated losses in relation to loss of stolen vehicles, or deterioration of a drivable vehicle to salvage status from a collision or other significant vehicle damage. Under the original payment caps, uninsured class members owning Class Vehicles other than the least expensive trim levels who experience Total Losses (with or without vehicle recovery), have exposure that generally exceeds the compensation caps available under the original settlement agreement.

13.     Under the revised payment caps, value-based payment eligibility changes that exposure somewhat. Uninsured Class Members with lower value vehicles are more likely to fall below the 60% benchmark compensation level, while uninsured Class members with higher value vehicles have significantly reduced exposure to uncompensated losses, because payments can exceed $5,625 for Total Loss events when vehicles exceed $9,375 in value.

14.     The same relative dynamics (compensation versus losses), although to a lesser extent, are also true for Class Member claims for partial loss vehicles under the original settlement terms. Based on average insurance claim amounts for vehicle damage of approximately $5,010, a typical

insured claimant would experience approximately $1,000 in losses, including the cost of the deductible. The original risk-adjusted $3,375 cap would cover these losses and likely would cover much larger losses from much larger collision repairs (e.g., repair cost of $15,000). For uninsured Class Members, the $5,625 pre-risk estimated loss is larger than the average collision damage payment, so a payment of $3,375 may not fully compensate all incidental costs or larger damage repair costs.

15.     The revised compensation caps can only improve (or have neutral effect on) outcomes for Class Members who experience Partial Loss events. The most likely beneficiaries of the *higher of* compensation caps for Partial Loss events are uninsured Class members who own relatively higher-value vehicles. By way of example, an owner of a vehicle worth $12,000 would be eligible for up to $3,960 in compensation, rather than $3,375, providing at least 60% compensation for losses up to $6,667.

16.     Noting differences between settlement outcomes for insured and uninsured Class Members, it is helpful to consider an initial concept. The propensity of Class Members to experience large monetary losses *and* not have insurance to mitigate those losses is a function of the general tendency of drivers to carry collision/comprehensive insurance. While uninsured Class Members can be exposed to substantial economic losses simply because they do not have insurance that offsets costs, it is reasonable to expect that, in practice, this additional exposure of uninsureds to higher costs is *infrequent*. There are several reasons why this is the case. First, I estimate that fewer than 25% of the Class Members were either not insured or had insurance without theft and collision coverage.[2] Second, and as discussed further below, Class Members who were uninsured

---

[2] According to Forbes, 79% of insurance policies have liability insurance and 75% of policies have collision insurance. [https://www.forbes.com/advisor/car-insurance/car-insurance-facts-and-statistics/]. The tendency of vehicle owners to carry collision and comprehensive insurance coverage is rationally a function of vehicle age and value. Not only do risk averse consumers tend to place higher value on avoiding the possibility of sudden loss of

at the time of their qualifying events are unlikely to have losses from a qualifying event exceeding $10,000, because those who are uninsured generally have relatively low-value vehicles.

17.     Based on the findings summarized above, it is my expectation that few claims by insured class members will reach the caps set forth in the original Proposed Settlement. While I would expect many claims filed by uninsured class members would be eligible for less compensation than the corresponding harm from the qualifying event, it is likely that the relative number of claims by uninsured class members will be lower. Relatedly, while claims by uninsured class members are likely to be larger than otherwise similar (Total Loss/Partial Loss) claims filed by insured class members, the frequency of relatively large claims by uninsured Class Members is likely to have small to moderate impact upon the aggregate settlement pool, given the likelihood that Class Members with higher-value vehicles (those with the highest potential claims) are more likely to have collision/comprehensive insurance.[3] In any case, the proposed value-based payment caps provide additional protection and compensation for uninsured Class Members, who by virtue of owning higher-value vehicles, have exposure to the largest magnitude losses.

---

vehicle value through an accident or theft, lending institutions require that borrowers with active loans carry collision and comprehensive coverage. Consumer Reports recommends that drivers *consider* dropping collisions and comprehensive coverage when premium costs exceed 10% of vehicle value [https://www.consumerreports.org/cro/2013/05/4-big-insurance-mistakes-to-avoid/index.htm], this consideration does not become relevant unless no financial institution has a lien on the vehicle. Further, while Class Vehicles range in age from nearly new in 2022 to approximately 11 years old (2011 model year vehicles), the average vehicle on the road is approximately 11 years old. [https://www.experian.com/blogs/insights/2021/06/average-vehicle-age-myth/]] (reporting that the average vehicle of the 25 most recent model years is 10.7 years old). This means that the oldest Class Vehicles are approximately the same age as the average vehicle, i.e., half of vehicles on the road are older than the oldest Class Vehicle. This makes it reasonable to assume that Class Vehicles are more likely to carry these insurance coverages than the fleet of all active U.S. vehicles as a whole.

[3] I do not see an efficient method for a class-wide settlement to address outlier behavioral claims, such as a claim by an owner of a very expensive vehicle who inadvertently allowed insurance coverage to lapse just before the occurrence of a qualifying event.

## 2.  QUALIFICATIONS

18.     My curriculum vitae, which describes my education, experience, relevant assignments, and publications within the last ten years, is attached as **Tab 1** to this Declaration. I have a bachelor's degree in economics from Western Michigan University. I have a master's degree from the Department of Agricultural and Resource Economics at the University of Arizona. The concentration of this program was applied econometrics. I began my employment at Fontana in the Fall of 1998. My first position was as an analyst. Subsequent positions included Senior Analyst, Senior Financial Analyst, Case Manager, Director of Economics Services, and Vice President. I serve on the Board of Directors for both Fontana and Mathtech, Inc., which is a Washington, DC and Princeton, NJ-area consulting company and Fontana's parent company.

19.     My experience, and that of Fontana, are suited to the subject matter of this action. I have consulted on economic questions across many industries, conducted rigorous data review, and managed and analyzed broad data sets on a variety of complex matters. These engagements include many dozen matters related to the evaluation of economic harm in the retail automotive industry, retail automotive and insurance matters in which I assess costs to consumers of the replacement of incumbent vehicles, and broad and complex evaluation and application of settlement proceeds in large class-action matters. Specific examples include serving as the expert for seven classes of consumers in the Volkswagen Diesel Emissions matters in the United States and Canada, where several courts cited to my analysis of vehicle replacement costs in decisions supporting approval of class-wide settlements, development of economic loss models and the distribution of settlement proceeds in the Toyota Unintended Acceleration matters, and engagement in the insurance industry relating to total loss coverage, and specifically, costs of vehicle replacement.[4] Additionally, I

---

[4] *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, MDL No. 2672 CRB (JSC). *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation*, Case

served as the expert for the class of consumers who potentially suffered credit injury in connection with the Wells Fargo unauthorized accounts litigation. In that matter, my colleagues and I developed a model of damage payments based upon a matrix of historical borrowing tiers, impact on FICO scores, loan amount and type, and other consumer-specific characteristics. The court cited to this model in approving the class action settlement.[5] Following the court's approval of the damage model, I gathered and managed extensive and diverse data in order to execute the damage calculations.

## 3.   STRUCTURE OF DECLARATION

20.      Herein, I describe the type of harm experienced by affected class members, outline the categories of compensation set forth by Plaintiffs and summarized in Class Counsel's Joint Declaration in Support of the Class Action Settlement, and then assess the alignment of the proposed settlement categories with the types of harm experienced by various class members.

21.      Through this structure, I endeavor to develop this Declaration in a manner that is responsive to the Court's Order. Inherently, the process of evaluating prospective out-of-pocket harm experienced by class members requires that I develop a schedule that compares the amount of compensation to the amount of harm. The nature of the Settlement Agreement, in practice, also contributes to the development of this schedule. Specifically, the Settlement Agreement requires that claimants provide some level of documentation to substantiate their claims, meaning that at the time of claims filing, Class Members will seek specific levels of compensation. If claims

---

No. 3:15-md-02672-CRB (N.D. Cal.), Dkt. 2101. O*ption Consommateurs et Francois Grondin c. Volkswagen Group Canada Inc et al*., Province De Québec District De Montréal Cour Supérieure No: 500-06-000761-151. *Matthew Robert Quenneville, et al. v. Volkswagen Group Canada, Inc.*, et al., Ontario Superior Court of Justice Court File No.: CV-15-537029-00CP *Judith Anne Beckett v. Porsche Cars Canada Ltd.*, et al. Ontario Superior Court of Justice Court File No.: CV-15-543402-00CP.
[5] *Shahriar Jabbari and Kaylee Heffelfinger, on Behalf of Themselves and All Others Similarly Situated V. Wells Fargo & Company and Wells Fargo Bank, N.A.*, Case No. 15-cv-02159-vc p. 7.

amounts fall within established caps, compensation amounts will equal out-of-pocket costs. As set forth in the exhibits to this declaration, I organize estimates of prospective harm amounts by vehicle value, which I define as a vehicle's average resale value during 2021 and 2022 tailored to make, model, model year, trim level.

22.     I note three relevant analytical parameters and/or assumptions prior to describing my findings.

23.     First, while Class Counsel sets forth specific pairings of types of harm and eligible compensation, my analysis of economic harm is largely independent. In other words, I describe economic harm, unless specifically noted otherwise, in the manner that I would have assessed it if unaware of the compensation elements of the Proposed Settlement Agreement.

24.     Second, I understand the type of harm at issue here to be consequential, that is, harm experienced because of qualifying events related to the alleged Defect. This type of experiential harm is not generally the same as that which might be considered within a diminished value or benefit of the bargain framework, or other *ex ante* overpayment analysis, or with respect to some violation of statutory or contractual provisions between an insurance carrier and insureds.

25.     Third, my analysis emphasizes consideration of the relative amounts of harm and available compensation across the varying constituents covered by the settlement. As set forth in the body of this declaration, the balance between potential harm and compensation varies in relation to the value of the vehicle at the time of the event. Even more so, potential consequential harm to given Class Members also is dependent upon whether the Class Member is insured at the time of the event.

- **§4** describes the nature of the case and the type of harm I consider to be relevant.

- **§5** discusses the scenarios under which I estimate potential economic harm.

- **§6** includes qualitative analysis of economic concepts relevant to the quantum of harm experienced by any given Class Member.

- **§7** quantifies economic harm/consequential costs under various scenarios.

- **§8** summarizes empirical findings and recommendations.

- **§9** describes the data and documents that underlie my opinions.

- **§10** describes the limitations on use of this Declaration.

## 4.  NATURE OF CASE AND TYPES OF POTENTIAL HARM CONSIDERED

26.     I consider several categories of potential harm suffered by Class Members who have experienced qualifying events. Each category of harm discussed below represents a tangible, out-of-pocket cost. Furthermore, out-of-pocket costs are those that flow from qualifying events, including theft and/or vehicle loss/damage.

A)  Direct Vehicle Replacement Costs are acquisition prices for replacement vehicles. I estimate replacement costs for a given Class Vehicle based upon the contemporaneous retail price of a vehicle of the same make, model, model year, and trim level. Because I do not know the dates of qualifying events, I reasonably assume that these costs are based upon the average costs that prevailed during 2021 and 2022.

B)  Ancillary Vehicle Replacement Costs are typical costs associated with retail vehicle purchases. These costs include sales tax, documentary fees, and other local taxes.

C)  Probability-Adjusted Ancillary Vehicle Replacement Costs are the typical costs described immediately above, adjusted for the probability that a buyer acquiring a vehicle of a given age would incur them. The relevant difference versus the prior category is the adjustment to consider the probabilities that (a) a purchaser of a given Class Vehicle purchased from a dealership and (b) purchases from dealerships are subject to documentary fee charges

(whereas purchases from other sellers are not). Under a settlement framework that reimburses class members for incurred costs, this additional level of detail considers that consumers likely incur differences in Ancillary Vehicle Replacement Costs based upon the age of the vehicle being replaced/acquired. While consideration of Probability-Adjusted Ancillary Vehicle Replacement costs is relevant in an analytical sense, I note that at the time of claim, a Class Member will have either incurred ancillary costs or not.

D)   Insurance Deductible Costs are simply the co-payment obligations of insureds who file comprehensive and/or collision damage claims. Multiple public sources confirm that $500 is the median and modal (most common) deductible amount.[6]

E)   Repair Costs are the estimated cost to repair a vehicle, following vehicle damage from a qualifying event. Generally, I would expect these costs to arise when a Class Member is able to recover a stolen vehicle, but the stolen vehicle has damage. Statista reports that the average cost (insurance-paid) to repair a damaged vehicle was $5,010 in 2021.[7] Although I apply this cost estimate in my calculations, the ultimate claim amounts for damage to recovered theft vehicles may be lower. For example, ValuePenguin, an analytics firm that is a subsidiary of LendingTree.com estimates that about one-third of recovered theft vehicles are damaged and have an average of $1,490 in damage upon return.[8] However, I consider the higher ($5,010) figure to be more reliable to apply in my calculations for two reasons. First, it is conservative to do so in the assessment of the adequacy of a settlement. Second, I understand that the nature of the subject thefts here is likely to be different from

---

[6] See, e.g., https://www.marketwatch.com/guides/insurance-services/what-is-a-car-insurance-deductible/ and https://www.caranddriver.com/car-insurance/a35824412/average-car-insurance-deductible.
[7] https://www.statista.com/statistics/830170/collision-claim-size-for-physical-damage.
[8] ValuePenguin, *One if Five Stolen Vehicles is Recovered, but 30% Are Damaged,"* February 26, 2020. ValuePenguin conducted independent analysis of external data sources, such as the Uniform Crime Reporting Program, to develop its findings.

the average pool of vehicle thefts nationally because some minimum level of damage is likely to occur in order to steal the Class Vehicles and because many perpetrators may be young, unlicensed drivers that take the stolen vehicles on "joy rides" that lead to physical damage to the vehicle and/or vandalize the vehicle.

F) Reclassification to Salvage Vehicle Status occurs when damage to a vehicle is not feasibly reparable. This is relevant to claims by uninsured class members. For purposes of this declaration, I reasonably assume that a damaged vehicle reclassified to Salvage Vehicle Status retains 25% of its prior resale value.[9]

G) Increased Insurance Premiums are the higher costs that claimants might pay following filing a claim on a Class Vehicle.

## 5. HARM/COMPENSATION SCENARIOS

27. I consider potential economic harm and eligible compensation under six scenarios, which I summarize in Table 1 below. Each coordinate in the table identifies the types of losses to which the claimant is exposed under the given scenario.

**Table 1: Loss Scenarios and Relevant Harm Categories**

|  | Insured Claimant | Uninsured Claimant |
|---|---|---|
| Total Loss | C,  D, G | A, C, F |
| Unrecovered Theft Vehicle | C, D, G | A, C |
| Partial Loss | D, G | E |

---

[9] As a general matter, the value of a salvaged vehicle depends upon the location of damage, the vehicle's condition, the vehicle's age, make, and model, and the degree to which undamaged parts remain saleable. Damagedcars.com and Carbrain.com both cite a range of 10-50% of vehicles' pre-wreck resale values, which aligns with my experience in consulting on matters relating to salvage vehicle prices. From my own experience, review of various materials from junk vehicle buyers, and my conversations with a noted vehicle auction professional, I understand that the baseline value of a salvage vehicle is 25% of its pre-wreck resale value.

Note: Total Loss Vehicle Models and Unrecovered Theft Vehicle Models use Probability-Adjusted Ancillary Vehicle Replacement Costs.

28.     In the construction of these scenarios, I adopt the guiding and reasonable assumption that Class Members possessing operational vehicles prior to a qualifying event will seek to regain that status following the qualifying event either by repairing the car (when not incurring a Total Loss) or acquiring a new car in the event of a Total Loss.[10] Applying this assumption groups assumed costs of mitigating the theft/damage event, such as paying retail prices for vehicles or incurring acquisition costs, with direct costs from the event itself, such as the cost to repair a vehicle. I offer no opinion as to whether the narrower or broader categories of harm are more appropriate in a legal sense.

**Total Loss (Damage) Scenarios:**

29.     In a Total Loss scenario, I evaluate potential harm based upon a benchmark in which the Class Member recovers the pre-loss position of owning a vehicle of the same make, model, trim level, mileage, and age, and insuring that vehicle with approximately equivalent coverage levels. (To the extent that a given Class Member may choose to acquire a newer vehicle or older vehicle, this would be a secondary preference outside of the consideration of this declaration.)

30.     The mechanics of determining vehicle replacement costs under this scenario are the same as the mechanics of determining the costs of purchasing a vehicle generally. Consumers buy vehicles in the retail market, but when selling vehicles, do so in the resale market, often in the trade-in market (selling to a dealership). At a high level, the net costs of acquiring a vehicle equal the price paid for the vehicle, plus other costs generally incurred while purchasing a vehicle, less any offsets to those costs.

---

[10] For insured claimants, likely costs are equivalent for Total Loss (physical damage) events and Total Loss (unrecovered theft events).

31.     Collision/comprehensive policies generally provide coverage that pays the insured the cost of replacing the insured vehicle itself (less the deductible) in the event of a total loss or unrecovered theft.[11] Here, the offset is substantial—the price of the replacement vehicle itself. Thus, insured class members face exposure to Ancillary Vehicle Replacement Costs and insurance-related costs.

32.     Uninsured class members face much higher exposure. For an uninsured class member whose Class Vehicle is deemed a total loss, the value of the salvage vehicle is the only significant offset to the overall acquisition cost. A second, relatively small offset comes from the use of the salvage vehicle as a trade-in, which reduces the taxable basis of the transaction to the difference in value between the vehicle acquired and the trade-in vehicle. Overall exposure of the uninsured class member in a total loss scenario includes Direct Vehicle Replacement Costs Less Salvage Value, and Ancillary Vehicle Replacement Costs Less Tax Offset.

33.     A closely related scenario occurs with an uninsured class member whose stolen vehicle is unrecovered. Here, the calculation tracks the immediately prior calculations, but the class member has no vehicle with which to offset acquisition costs (that is, no salvage value). Overall exposure of the uninsured class member in a total loss scenario includes Direct Vehicle Replacement Costs, Ancillary Vehicle Replacement Costs, and Economic Costs.

34.     For anticipated cost amounts in Total Loss scenarios, including Unrecovered Theft Vehicle scenarios, I apply calculations that consider Probability-Adjusted ancillary costs. Although the name I apply to these costs is somewhat technical, the underlying concepts and calculations are not. These cost estimates simply account for the probability that a consumer replacing a given Class Vehicle would purchase from a dealership, versus from a private party. Since private party

---

[11] I have consulted on many disputes concerning the derivation of the amount payable to total loss insureds. These disputes include a failure to pay reasonably anticipated other acquisition costs, such as sales taxes, license fees, and documentary fees. In many states, insureds are not reimbursed for sales taxes, license fees, and documentary fees.

transactions do not include documentary fees, some net cost offset may occur in practice, even if it is reasonably anticipated that most consumers would purchase from dealerships.[12] In a very simple example, if a consumer buying a vehicle of a certain age is 90% likely to purchase from a dealership and pay a documentary fee, I estimate the net cost of vehicle replacement to include 90% of a documentary fee, not 100%.

**Partial Loss Scenarios**

35.     Under a partial loss scenario, the class member's vehicle suffers damage but is not determined to be a total loss. Here, the insured class members' policies cover repair costs but do require deductible payments. Insurance premiums may also increase.

36.     For the uninsured class member, the scenario again includes higher cost exposure. The class member is responsible for repair of the damage.

## 6.  ECONOMIC HARM CONCEPTS

37.     The models presented above likely tend to produce estimates of exposure to economic harm that are higher than actual economic harm that many class members incur. As a general rule, I consider a vehicle replacement cost benchmark in which a class member acquires necessary funds to acquire a comparable vehicle at retail, where the replacement vehicle will *step into the shoes*, of the Class Vehicle that was subject to total loss and/or theft.[13] Under some circumstances, real economic harm to consumers may be different and will often be lower.

38.     Class members filing insurance claims in relation to qualified events typically face some exposure to increased insurance costs.

---

[12] This differs from a benefit of the bargain framework that would likely apply to vehicle replacement scenarios stemming from irremediable product defects and likely differs as well from analytical frameworks that determine the costs that a typical buyer or the majority of buyers would incur in the course of vehicle replacement.
[13] This benchmark is consistent with some benefit of the bargain concepts.

## 7.  QUANTIFICATION OF ECONOMIC HARM/CONSEQUENTIAL COSTS

39.     **Tabs 2-6** set forth summaries of exposure to economic harm in each of the scenarios set forth in **Table 1**.[14] Since there are many different Class Vehicles, and any given Class Vehicles could conceivably be subject to a claim under each of the various harm scenarios, I consolidate my calculations at the percentile level, showing the expected costs that a claimant might incur given the estimated resale value at the time of the qualifying event. Using Tab 2 as an example, the row corresponding to the 20th percentile summarizes the expected costs that an insured claimant who owned a 2013 Kia Sorrento 4D EX (the vehicle with a resale value ranked in the 20th percentile among all Class Vehicles) would incur in a total loss event. While the number of Class Vehicles is too large to present efficiently in matrix form like the percentile summaries, the percentile summaries are useful for evaluating estimated replacement cost levels for other vehicles. Since vehicle replacement costs relate to the retail value of the vehicle (which relates closely to a vehicle's resale value), expected replacement costs for the many individual vehicles that would rank between the 20th and 25th percentiles in terms of value would generally be higher than the expected replacement costs for the vehicle in the 20th percentile ($1,726) but lower than the expected replacement costs for the vehicle in the 25th percentile ($1,807).

40.     **Tabs 3 and 4**, which summarize expected costs for uninsured Claimants who have experienced Total Loss events (with and without vehicle recovery), display estimated costs for claims of Class Members whose vehicles had trade-in values of $10,000 or less. While, as explained above, harm from Total Loss events increases for uninsured claimants with higher-value vehicles, I expect that a very small percentage of Class Members who owned vehicles worth at

---

[14] Since Total Loss scenarios for insured claimants are the same in damage or theft scenarios, a single page sets forth estimates for both scenarios.

least $10,000 were uninsured. Of note, a trade-in value of $10,000 generally corresponds to the 25th percentile of Class Vehicle values.[15]

41.     Dropping collision/comprehensive coverage requires not just the choice to discard that coverage, it also requires the discretion to do so. For a consumer to hold the discretion to drop collision/comprehensive coverage, finance liens must be satisfied. In other words, it is not enough that a consumer has equity in a vehicle, the vehicle must not secure a loan balance. For vehicles worth more than $10,000, a consumer must have accumulated unencumbered equity of at least $10,000. Considering that the National Auto Dealers Association reports that over 80% of new vehicle purchases are financed,[16] and that LendingTree.com reports average loan lengths of over 67 months for both used and new vehicles,[17] consumers would not just need to satisfy loan obligations but to do so at a rate at which the vehicle value exceeds $10,000 (and continues to do so) after the loan term expires. Lastly, assuming an annual premium of approximately $1,000 for collision/comprehensive coverage, $10,000 is the point at which these premiums are approximately equal to 10% of the vehicle's value [see Consumer Reports recommendation in F/N 2].

42.     Following the percentile summaries, the exhibits in **Tab 7** describe detailed pre-cap hypothetical claim examples under various scenarios in which vehicle replacement is necessary,[18] and for vehicles with diverse resale values. The exhibits demonstrate how claims might differ across Class Members based upon several variables. For example, a major variable is whether the

---

[15] Grouped by make/model/model year/trim.
[16] https://www.nada.org/nada/issues/issues/vehicle-financing#:~:text=Every%20year%2C%20consumers%20purchase%2015,financed%2C%20often%20at%20the%20dealership.
[17] https://www.lendingtree.com/auto/debt-statistics/.
[18] For partial-loss vehicle scenarios, costs elements are limited (insurance premiums or cost to repair with potential increased insurance costs) and do not require significant mathematical calculations.

Class Member's vehicle is insured at the time of the qualifying event. Other variables include whether a Class Member paid a documentary fee in connection with a replacement vehicle purchase,[19] the amount of sales tax paid, and whether a class member experienced increased insurance premiums. The nature of the proposed settlement, in which Class Members are required to establish loss with documentary proof during the claims process, aligns settlement benefits with the amount of costs incurred. That is, for total loss scenarios those with higher value vehicles obtain greater recovery than those with lower value vehicles, or, in other words, *Class Members with the most harm receive the greatest benefits*.

**Bases for Cost Estimates:**

43.     Below, I briefly summarize the bases for my empirical findings and/or assumptions employed in forming these estimates.

A)     **Direct Vehicle Replacement Costs:** Staff under my direction queried vehicle values for approximately 4,000 make/model/model year/trim level/date combinations from noted automotive information source JD Power.[20] For each of these combinations, researchers gathered Retail and Average Trade-in values. Retail Values reflect the expected price that a buyer would pay in a typical transaction at a dealership for that vehicle. Average Trade-in reflects the average price that a consumer selling a vehicle to a dealership would expect to receive for that vehicle without additional selling effort or vehicle improvement. JD Power is a noted source of automotive information, particularly regarding market prices. Decision-makers, analysts, manufacturers, dealerships, financial institutions, government entities, and others rely upon JD Power values in

---

[19] While on an overall basis, I consider the propensity of all potential claimants to pay documentary fees, individual claimants will have paid documentary fees or no documentary fees. Therefore, the detailed illustrative calculations are not probability-adjusted.

[20] https://www.jdpower.com/jd-power-pricing-and-values

the ordinary course of business. Parties relied upon JD Power (NADA) values in determining the distribution of billions of dollars of settlement distributions in the Volkswagen Diesel Emissions matters. Given the reliability and accessibility of its products, JD Power is a reasonable and suitable proxy for Black Book values, which I understand the claims administrator will apply at the administration phase of the settlement.

**C)   Ancillary Vehicle Replacement Costs:** For tax amounts and documentary fee amounts, I rely upon noted automotive information provider Edmunds.[21] Like JD Power, Edmunds is recognized as reliable by many parties in the retail automotive industry. I am familiar with Edmunds' data resources and their evaluation methods. I have also confirmed through independent research the reliability of Edmunds' estimates of typical documentary fees and tax rates.

I estimate average documentary fees, and sales tax rates by aggregating from state level data and averaging state-level rates based on each state's weighted share of currently active Class Vehicles in Operation, drawn from S&P Global (formerly IHS Automotive), a data firm considered reliable by virtually all major parties in the retail automotive industry.[22]

**D)   Probability-Adjusted Ancillary Vehicle Replacement Costs:** As mentioned earlier, I apply probability adjustments as an enhancement to Ancillary Vehicle Replacement Costs. Here, I evaluate consumer's tendency to incur common ancillary vehicle costs, such as documentary fees. I rely upon two sources for my findings. The first is extensive independent research conducted by Fontana over the last several years. This research used publicly available information and

---

[21] https://www.edmunds.com/car-buying/what-fees-should-you-pay.html#step6, includes one example of Edmunds consumer information publications. I understand that Edmunds participates in many data-sharing arrangements with dealerships, manufacturers and other market research/information firms. I have relied on Edmunds in consultation and litigation, including for purposes of estimating vehicle replacement cost.

[22] See: https://www.spglobal.com/mobility/en/index.html. I have relied upon S&P Global and its predecessors on dozens, if not hundreds of occasions, without challenge. Furthermore, virtually all U.S. manufacturers/distributors rely on Edmunds both in litigation and in the ordinary course of business.

surveys of dealerships to determine the likelihood that customers purchasing vehicles from various dealerships will pay documentary fees at those dealerships. The propensity for consumers to pay documentary fees are a function of the probability that consumers will a) purchase from dealerships and b) purchase from dealerships that charge documentary fees. Our prior research combined data concerning the propensities of consumers to purchase from dealerships with given dealerships' practices regarding documentary fees. In this matter, I relied upon data from S&P Global to determine the propensity of actual purchasers of Class Vehicles during 2021 and 2022 to buy from dealerships versus from private parties or other sellers. I estimate national average costs based on state level data weighted on each state's share of Class Vehicles in operation.

**E) Insurance Deductible Costs:** Multiple sources confirm that a $500 deductible amount is the median and modal deductible amount.[23] I have also consulted on many insurance-related matters and have observed that average deductible amounts tend to be close to $500.

**F) Repair Costs:** Statista reports that average claim amounts for damage repair were $5,010 in 2021.[24] Notably, this cost level was much higher than costs in prior years. I did not locate a corresponding figure for 2022 in the public realm.

**G) Reclassification to Salvage Vehicle:** Many sources, as confirmed by prior research, report that vehicles deemed "totaled" or salvage vehicles have values of 10-50% of their pre-incident resale values.[25] 25% is an average rule of thumb that is likely conservative as applied to calendar years 2021 and likely 2022. Auction prices generally accelerated at an unprecedented rate in 2021 and remained high in 2022 despite falling from the earlier peak. Additionally, supply chain disruptions and decreased vehicle supply increased values of spare parts and replacement parts.[26]

---

[23] See F/N 6.
[24] See F/N 7.
[25] See F/N 8.
[26] See, e.g., https://cbsaustin.com/news/nation-world/wrecked-cars-and-scrap-parts-rising-in-value.

**H) Other Incidental Costs:** I understand that parties also consider that Class Members may consider other incidental costs incurred in connection with Total Loss and Partial Loss events. Examples of these costs include towing, rental car expenses, childcare expenses, or storage expenses. I have not attempted to quantify these costs for the purpose of this Declaration. However, in reviewing claims files in other matters, it is my experience that these costs tend to be modest. For example, many drivers carry independent towing coverage. Additionally, amounts paid for salvage vehicles are generally net of towing and storage costs. Likewise, many insurance policies cover many incidental costs like towing and rental car expense. Therefore, a risk adjusted cap of $250 for these incidental costs appears reasonable.

## 8.  SUMMARY OF EMPIRICAL FINDINGS

44.     As set forth in the body of this declaration, most insured class members are likely to receive near full compensation for their qualifying events, even based upon risk-adjusted payment amounts.

45.     While I do not have direct information regarding the percentage of class members who carried comprehensive/collision coverage at the time of their qualifying events, under typical behaviors, it is likely that the frequency of uninsured class members was relatively low.[27] Accordingly, the presence of insurance coverage will likely reduce the number of claims relating to high value vehicles owned by uninsured individuals—the individuals with the largest

---

[27] For reference, see prior discussion regarding the portion of all vehicles that are subject to collision/comprehensive coverage, the newer mix of Class Vehicles versus the overall U.S. fleet of passenger vehicles, the high proportion of Class Vehicles with values greater than levels at which consumer and insurance industry sources recommend dropping collision/comprehensive coverage, and the mandate that vehicles subject to finance liens must carry collision/comprehensive insurance.

conceptually possible claims.  In other words, if a vehicle is on the more expensive end of the spectrum, it is highly likely that the vehicle is insured.

46.      I reasonably estimate, based on prior experience with class settlements, that the claims rate will average approximately 15 percent.[28] If we conservatively assume a 20% claims rate, an average claim of $5,500, and that approximately 225,000 Class Vehicles have been stolen, the fund needed to pay all these claims would be approximately $247,500,000. Applying Class Counsel's 40% risk discount, this results in $148,200,000, which approximates the $145,000,000 Common Fund ceiling. Again, these figures are likely conservative, as it is reasonable to assume that many recovered theft vehicles suffered little physical damage beyond damage to the steering column.

Claim Examples

47.      As shown in detail in Tab 7 and summarized in Table 2 below, Class Members with the most damage are eligible to receive the highest recovery, thereby tailoring recovery amounts to the specific amount of damage sustained.

**Table 2: Hypothetical Total Loss Claim Examples**

| Vehicle | Scenario | Retail Value | Total Costs | Payment | % Recovery |
|---------|----------|--------------|-------------|---------|------------|
| 2019 Kia Optima 4d SX Turbo | Insured T/L | $29,063 | $4,378 | $4,378 | 100% |

---

[28] My CV, attached as Tab 1, identifies prior engagements. I have consulted in relatively large matters involving fuel economy settlements, the Toyota Unintended Acceleration matter, the Wells Fargo Unauthorized Accounts matter, cases related to the Ford DPS6 (PowerShift Transmission), and other matters.

| 2013 Hyundai Elantra Coupe 2D | Uninsured Recovered Theft | $8,625 Trade-in =$5,763 | $8,132 | $3,458 [$5,763 * 60%] | 42.5% |
| 2015 Kia Forte Coupe 2D | Uninsured Recovered Theft | $13,050 Trade-in =$9,838 | $11,379 | $5,903 [$9,838 * 60%] | 51.9% |

## 9.  RELIANCE MATERIALS

48.     My methods and analyses contained herein are of a type reasonably relied upon by experts in the field in forming opinions or inferences on these subjects.

49.     I rely upon the sources specifically cited in this report, including those noted on exhibits to this report. I also rely upon my experience in other consultations in the retail automotive industry and matters relating to vehicle values, vehicle replacement cost, salvage vehicles, and various aspects of insurance coverage.

## 10. COMPENSATION/LIMITATIONS

50.     For time spent working on this matter, Plaintiffs compensate my employer at the rate of $550 per hour. Plaintiffs compensate my employer at scheduled rates between $65 and $185 per hour for work performed by staff members. This declaration is prepared only for the express purpose set forth here and for no other purposes.

I hereby declare under penalty of perjury that the foregoing is true and correct.

Dated: September 27, 2023

_Edward M. Stockton_

Edward M. Stockton

# EDWARD M. STOCKTON

EDUCATION

University of Arizona, Tucson, AZ
M.S., Agriculture and Resource Economics (Applied Econometrics), 2010.
Western Michigan University, Kalamazoo, MI
B.A., Economics, 1998

POSITIONS

The Fontana Group, Inc., Tucson, Arizona
*Vice President Economics Services: 2012 - present*
*Director of Economics Services: 2011 - 2012*
*Case Manager: 2005 - 2011*
*Senior Analyst: 2000 - 2005*
*Analyst: 1998 - 1999*
Old Ina Corporation Tucson, AZ
*Supervisor, Analyst, Manager: 1995 - 1998*

RESEARCH AND CONSULTING EXPERIENCE

Mr. Stockton studies complex economic problems across multiple industries, including the retail automobile and other complex markets for durable goods. Additionally, he consults on matters involving conceptual foundations and calculation of economic harm. He has provided consultation for clients in numerous areas including:

• Retail automobile franchising, economics and marketing
• Economic impact of market malfunctions
• Allocation of new vehicles during shortages
• Franchise terminations and establishments
• Principles of customer satisfaction measurement
• Principles of sales performance measurement
• Financial forecasts and other analysis
• Applied econometrics
• Consumer credit markets
• Economic theory of competition and investment
• Competition in markets for durable, differentiated goods

Tab 1  Page 1

REPRESENTATIVE CLIENT ASSIGNMENTS

*Lucid Group USA, Inc., v. Monique Johnston, in Her Official Capacity as Director of the Motor Vehicle Division of the Texas Department of Motor Vehicle; Daniel Avitia, in His Official Capacity as Executive Director of the Texas Department of Motor Vehicles; and Corrie Thompson, in Her Official Capacity as Director of the Enforcement Division of the Texas Department of Motor Vehicles*, Austin, TX, 2023.

*Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation,* Encino, CA, 2023.

*Volkswagen Group Diesel Efficiency Foundation v. Volkswagen Aktiengesellschaft,* Utrecht, NL, 2023.

*Volkswagen Group Diesel Efficiency Stichting v. Volkswagen Aktiengesellschaft,* Groningen, NL, 2023.

*Aaron Gant, et al. v. Ford Motor Company,* Orlando, FL, 2023.
Provided deposition testimony.

*Juliet Murphy, et al., v. Toyota Motor Corporation, et al.,* Sherman, TX, 2023.

*Cowin Equipment Company, Inc., v. CNH Industrial America LLC and Scott Moore,* Birmingham, AL, 2023.
Provided deposition testimony.

*Hyundai Subaru of Nashville, Inc. d/b/a Downtown Hyundai v. Hyundai Motor America, Inc.,* Nashville, TN, 2023.
Provided hearing testimony.

*Rusnak/Pasadena, a California Corporation v. Jaguar Land Rover North America, LLC,* Las Angeles, CA, 2023.
Provided deposition testimony.

*Shakopee Chevrolet, Inc., v. General Motors, LLC,* Shakopee, MN, 2023.

*CJ's Road to Lemans Corp dba Audi Fresno, a California Corporation, v. Volkswagen Group of America, Inc., a New Jersey Corporation, dba Audi of America, Inc.,* Fresno, CA, 2023.

Tab 1  Page 2

*Ranbir Gujral and Danielle Emerson, on behalf of themselves and the Putative Class, v. BMW Of North America, LLC, and Bayerische Motoren Werke Aktiengesellschaft,* Cherry Hill, NJ, 2023.
Provided deposition testimony.

*Action Nissan, Inc. D/b/a Universal Hyundai for Itself and in the Name of the Department of Highway Safety and Motor Vehicle of the State of Florida, for its Use and Benefit v. Hyundai Motor America and Genesis Motor America, LLC,* Orlando, FL, 2023.
Provided deposition testimony.

*Al Piemonte Ford, Inc., at al v. Ford Motor Company,* Chicago, IL, 2023.
Provided deposition testimony and hearing testimony.

*Wasko Automotive, Inc. D/b/a St. Marys Chrysler Dodge Jeep Ram Fiat, Spitzer, v. FCA US LLC,* St. Marys, PA, 2023.

*Yandery Sanchez, Louise Knudson, Andrea Reiher-Odom, Derrick Smith, Amber Witt, and Mark Treston, on behalf of themselves and all others similarly situated, v. Kia Motors America, Inc.,* Central District of CA, 2023.
Provided deposition testimony.

*Larson Motors, Inc. v. General Motors LLC, et al.* Seattle, WA, 2023.
Provided deposition testimony.

*Kpauto, LLC, dba Putnam Ford of San Mateo v. Ford Motor Company,* Los Angelas, CA, 2023.
Provided hearing testimony.

*Durwin Hampton, individually and on behalf of all others similarly situated v. General Motors LLC,* Poteau, OK, 2023.

*Estate of William D. Pilgrim, et al., on behalf of themselves and all others similarly situated v. General Motors, LLC,* Detroit, MI, 2023.
Provided deposition testimony.

*Hyundai Motor America Corporation v. EFN West Palm Motor Sales, LLC (Defendant/Counterclaim Plaintiff/Third-Party Plaintiff ) Gene Khaytin; Ernesto Revuelta; Edward W. Napleton; Geovanny Pelayo, Jorge Ruiz (Defendants), EFN West Palm Motor Sales, LLC; For Itself and in the Name of the Department of Highway Safety and Motor Vehicles of the State of Florida, for its Use and Benefit (Counterclaim-Plaintiff/Third-Party Plaintiff) v. Hyundai Motor America Corporation (Counterclaim-defendant) And Hyundai Motor Company (Third-party Defendant),* West Palm Beach, FL, 2021-.
Provided deposition and trial testimony.

3

*Sloan/Siqueiros, et al. v. General Motors LLC,* San Francisco, CA, 2019-
Provided deposition and trial testimony.

*Spitzer Autoworld Akron, LLC, v. Fred Martin Motor Company,* Akron, OH, 2022-.
Provided deposition and trial testimony.

*Hyundai Motor American Corporation v. North American Automotive Services, Inc. Et al,* West Palm Beach, FL, 2021-

*Jason Nuwer, Mark Minkowitz, Amarillis Gineris, Christina Vigoa, and Kevin Van Allen v. FCA US LLC f/k/a Chrysler Group LLC*, Miami, FL, 2021-
Provided deposition testimony.

*Chapman, et al, v. General Motors, LLC.*, Detroit, MI, 2021-.
Provided deposition testimony.

*James Bledsoe, et al, v. FCA US LLC, and Cummins Inc.*, Detroit, MI, 2021-.
Provided deposition testimony.

*In Re: Duramax Diesel Litigation, Relating to: Nancy Anderton, et al., v. General Motors LLC, et al.*, Detroit, MI, 2020-.
Provided deposition testimony.

*Fox Hills Auto, Inc. D/b/a Airport Marina Ford v. Ford Motor Company, Central Ford Automotive, Inc., dba Central Ford v. Ford Motor Company and Los Feliz Ford, Inc., dba Star Ford Lincoln v. Ford Motor Company*, Los Angeles, CA, 2021-.
Provided deposition testimony.

*West Palm Beach Acquisitions, Inc. d/b/a Greenway Kia West Palm Beach and Florida Department of Highway Safety & Motor Vehicles, v. Kia Motors America, Inc.*, West Palm Beach, FL, 2020-.
Provided deposition testimony.

*Kenneth John Williams and Another Applicants v. Toyota Motor Corporation Australia Limited*, New South Wales, Australia, 2020-.
Provided trial testimony.

*Gabriel Patlan, Ryan Cornell, and La Della Levy, on behalf of themselves and all others similarly situated v. BMW of North America LLC; Wendy Vazquez, on behalf of herself and all individuals similarly situated v. BMW of North America, LLC; Vikkie Wilkinson, on Behalf of Herself and the Putative Class, v. BMW of North America, LLC and Bayersiche Motoren Werke Aktiengesellschaft*, Trenton, NJ. 2020-.
Provided deposition testimony.

4

*Peterson Motorcars, LLC et al v. BMW of North America, LLC*, Louisville, KY, 2019-.
Provided deposition testimony.

*James Bledsoe, Paul Chouffet, Martin Rivas, Jeremy Perdue, Michael Erben, Martin Witberg, Marty Ward, Alan Strange, James Forshaw, Matt Langworthy, Natalie Beight, Jordan Hougo, Dawn Roberts, and Marc Ganz, on Behalf of Themselves and All Others Similarly Situated, v FCA US LLC, a Delaware Corporation, and Cummins Inc., an Indiana Corporation*, Detroit, MI, 2021-
Provided deposition testimony.

*Ricardo R. Garcia, et al. v. Volkswagen Group of America, Inc., et al.*, Alexandria, VA, 2020-.
Provided deposition testimony.

*Paul Weidman, et al., v Ford Motor Company*, Detroit, MI, 2020-.
Provided deposition testimony.

*Milind Desai v. Geico Casualty Company*, Cleveland, OH, 2020-.
Provided deposition testimony.

*Eric Stevens, Christopher L. Rodriguez, Michael S. Frakes, Terry Pennell, Ray Moore, Kent Larry Bakken, Lynn E. Kirkpatrick, and Michael E. Stone v. Ford Motor Company.* Corpus Christi, TX, 2021-.
Provided deposition testimony.

*In the matter of  Luxury Cars of Bayside, Inc., v. BMW of North America, LLC,*  Long Island, NY, 2019-.
Provided hearing testimony.

*Clarence Simmons, Franklin Navas, Jorge Arroyave, Joseph Dabbs, Jennifer DeWitt, Anne Erdman, Mark James, Shand Jackson, Mike Tierney, Mark Van Bus Kirk, John Buczynski, Ilja Lopatik, Brian Yarborough, William MacSaveny, Ryan Marshall, Allyson Rogers, Peter Tulenko, and Greg Licktenberg, on behalf of themselves and all others similarly situated v. Ford Motor Company*, Miami, FL, 2021-.
Provided deposition testimony.

*Kimberley Carter and Keith Halliday v. Ford Motor Company of Canada, Ltd., Ford Credit Canada Limited and Ford Motor Company,* Toronto, Canada, 2020-.
Provided cross-examination testimony.

*Braman Motors, Inc., d/b/a Braman BMW, for Itself and in the Name of the Department of
Highway Safety and Motor Vehicles of the State of Florida, for its Use and Benefit, and
Palm Beach Imports, Inc., d/b/a Braman Motorcars, for Itself and in the Name of the Department
of Highway Safety and Motor Vehicles of The State of Florida, for its Use and Benefit, and The
Department of Highway Safety and Motor Vehicles of the State of Florida, for the Use and
Benefit of Braman Motors, Inc. and Palm Beach Imports, Inc. v. BMW of North America, LLC.*
Miami, FL.
Provided deposition testimony 2/2021.

*Gina Signor, Individually and on Behalf of All Those Similarly Situated v. Safeco Insurance
Company of Illinois*, Ft. Lauderdale, FL, 2020-.
Provided deposition testimony.

*Between Barry Rebuck and Ford Motor Company and Ford Motor Company of Canada, Limited
and Yonge-Steeles Ford Lincoln Sales Limited Proceeding under the Class Proceedings Act,
1992*, Toronto, Ontario, Canada, 2018-.
Provided cross-examination testimony.

*In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation
Nemet v. Volkswagen Group of America, Inc.*, San Francisco, CA, 2019-.
Provided deposition testimony.

*William South, Individually and on Behalf of All Those Similarly Situated v. Progressive Select
Insurance Company,* Tampa, FL, 2020-.
Provided deposition testimony.

*Biljana Capic v. Ford Motor Company of Australia Limited*, New South Wales, Australia, 2019-.
Provided trial testimony.

*Jason Counts, Donald Klein, Oscar Zamora, Derek Long, Bassam Hirmiz, Jason Silveus, John
Miskelly, Thomas Hayduk, Christopher Hemberger, Individually and on Behalf of All Others
Similarly Situated, v. General Motors, LLC, Robert Bosch GMBH, and Robert Bosch, LLC,*
Detroit, MI, 2019-.
Provided deposition testimony.

*Alfredo's Foreign Cars, Inc., d/b/a Larchmont Chrysler Jeep Dodge v. FCA US LLC*, NY, NY
2019-
Provided hearing testimony.

*George Tershakovec, et al. v. Ford Motor Company,* Miami, FL, 2019-
Provided deposition testimony.

Revised 9/27/2023

Tab 1  Page 6

*Continental Imports Inc.  d/b/a Mercedes Benz of Austin v Swickard Austin, LLC d/b/a Mercedes Benz of South Austin,* Austin, TX, 2019-
Provided deposition and hearing testimony.

*Vista Ford Oxnard, LLC., d/b/a Vista Ford Lincoln of Oxnard v. Ford Motor Company and Ford of Ventura, Inc., d/b/a Ford of Ventura, Intervenor,* Oxnard, CA, 2019-.
Provided deposition and hearing testimony.

*Colonial Chevrolet Co., Inc., et al.; Alley's of Kingsport, Inc., et al.; and Union Dodge, Inc., et al. v. The United States*, Washington, DC, 2011-.
Provided deposition and trial testimony.

*Barber Group, Inc., d/b/a Barber Honda v. American Honda Motor Co., Inc., Galpinsfield Automotive, LLC, Intervenor.* Bakersfield, CA, 2018-.
Provided deposition and hearing testimony.

*Association of Equipment Manufacturers, AGCO Corporation, CNH Industrial America LLC, Deere & Company, and Kubota Tractor Corporation, v. the Hon. Doug Burgum, Governor of the State of North Dakota, in His Official Capacity, and the Hon. Wayne Stenehjem, Attorney General of the State of North Dakota, in His Official Capacity, and North Dakota Implement Dealers Association, Intervenor-Defendant,* Bismarck, ND, 2018-.
Provided deposition testimony.

*Napleton's Arlington Heights Motors, Inc. f/k/a Napleton's Palatine Motors, Inc. d/b/a Napleton's Arlington Heights Chrysler Dodge Jeep RAM, an Illinois Corporation; et. al, v FCA US LLC*, Chicago, IL, 2017-.
Provided deposition and hearing testimony.

*Star Houston, Inc. d/b/a Star Motor Cars v. Volvo Cars of North America, LLC,* Houston, TX, 2017-.
Provided deposition and hearing testimony.

*Sioux City Truck Sales, Inc. v. Peterbilt Motors Company*, Sioux City, IA, 2017-.
Provided deposition and hearing testimony.

*Capitol Buick GMC, LLC v. General Motors LLC, Baltimore, MD,* 2017-.
Provided deposition and hearing testimony.

*Crown Chrysler Jeep, Inc. d/b/a Crown Kia v. Kia Motors America*, Columbus, OH, 2017-
Provided deposition and hearing testimony.

*Folsom Chevrolet, Inc. dba Folsom Chevrolet v. General Motors, LLC*, Folsom, CA, 2017-.
Provided deposition and hearing testimony.

*Sunnyvale Automotive Inc., dba Sunnyvale Ford Lincoln v. Ford Motor Company*, Sunnyvale, CA, 2017-.
Provided deposition testimony.

*Omar Vargas, Robert Bertone, Michelle Harris, and Sharon Heberling, individually and on behalf of a class of similarly situated individuals v. Ford Motor Company*, Los Angeles, CA, 2017-.

*Charles Johnson, et al. individually and on behalf of all others similarly situated v. Ford Motor Company,* Huntington, WV, 2017-.
Provided deposition testimony.

*Shawn Panacci v. Volkswagen Aktiengesellschaft, Volkswagen Group Canada, Inc., Audi Aktiengesellschaft, VW Credit Canada, Inc. and Audi Canada,* Toronto, Ontario, Canada, 2017-.

*Rebecca Romeo and Joe Romeo v. Ford Motor Company and Ford Motor Company Canada, Limited,* Toronto, Ontario, Canada, 2017-.
Provided cross-examination testimony.

*Duncan McDonald v. Samsung Electronics Canada, Inc.* Toronto, Ontario, Canada, 2017-.
Provided cross-examination testimony.

*The Estate of Richard C. Poe, Richard C. Poe II v. Paul O Sergent, Jr., et al.,* El Paso, TX, 2017-
Provided deposition testimony.

*Star Houston, Inc. d/b/a Star Motor Cars v. VCWH. LLC d/b/a Volvo Cars West Houston and Volvo Cars of North America, LLC,* Houston, TX, 2017-.
Provided deposition testimony.

*Option Consommateurs et Francois GrondinPersonne Désignée C. Volkswagen Group Canada Inc. et al.(2L),* Montreal, Quebec, 2017-.

*Option Consommateurs et Francois GrondinPersonne Désignée C. Volkswagen Group Canada Inc. et al. (3L),* Montreal, Quebec, 2017-.

*John M. McIntosh v. Takata Corporation, TK Holdings, Toyota Motor Corporation, Toyota Motor Manufacturing, Canada Inc., and Toyota Motor Manufacturing Indiana, Inc.,* Toronto, Ontario Canada, 2017-

*Rick A. Des-Rosiers and Stephen Kominar v. Takata Corporation, TK Holdings, Honda Motor Co., LTD, Honda of America Manufacturing, Inc., and Honda Canada, Toronto,* Ontario, Canada 2017-.

Revised 9/27/2023

Tab 1  Page 8

*Yogesh Kalra v. Mercedes-Benz Canada Inc., Daimler AG, Mercedes-Benz USA LLC and Mercedes-Benz Financial Services Canada Corporation,* Toronto, ON, Canada, 2017-.
Provided cross-examination (deposition) testimony.

*Lake Forest Sports Cars, LTD v. Aston Martin Lagonda of North America, Inc.,* Chicago, IL, 2017.
Provided deposition testimony.

*Shahriar Jabbari and Kaylee Heffelfinger on behalf of themselves and all others similarly situated v. Fargo Company and Wells Fargo Bank, N.A.* San Francisco, CA, 2016-.

*Matthew Robert Quenneville et al. v. Volkswagen Group Canada, Inc.,Volkswagen Aktiengesellschaft, Volkswagen Group of America, Inc., Audi Canada, Audi Aktiengesellschaft, Audi of America, Inc., Inc., and VW Credit Canada, Inc. (2L),* Ontario, Canada, 2016-.

*Matthew Robert Quenneville et al. v. Volkswagen Group Canada, Inc.,Volkswagen Aktiengesellschaft, Volkswagen Group of America, Inc., Audi Canada, Audi Aktiengesellschaft, Audi of America, Inc., Inc., and VW Credit Canada, Inc. (3L),* Ontario, Canada, 2016-.

*Fort Collins Nissan, Inc. d/b/a Tynan's Kia, v. Kia Motors America, Inc.*, Ft. Collins, CO, 2015-.
Provided deposition testimony.

*In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation, Napleton et al v. Volkswagen Group of America et al., No. 16-02086*, 2015-.

Above including *J. Bertolet, Inc. et al v. Robert Bosch, LLC and Robert Bosch GmbH.*, MDL No. 02672-CRB (JSC), 2016-.
Provided deposition testimony 8/2019.

*Northwest Hills Chrysler Jeep, LLC; Gengras Chrysler Dodge Jeep, LLC; Crowley Jeep Dodge, Inc.; Papa's Dodge, Inc. v. FCA US, LLC and Mitchell Dodge, Inc.,* Canton, CT, 2015-2017.
Provided deposition and hearing testimony.

*VMDT Partnership, LP, v. Thornbury Township,* Delaware County, Pennsylvania, 2015-.
Provided hearing testimony.

*John Deere Construction & Forestry Company v. Rudd Equipment Company, Inc.*, Houston, TX, 2015-2017.
Provided hearing testimony.

*Ball Automotive Group d/b/a Ball Kia, v. Kia Motors America, Inc.*, San Diego, CA, 2015-2017.
Provided deposition testimony.

Revised 9/27/2023

Tab 1  Page 9

*GB Auto Corporation d/b/a Frisco Kia, v. Corinth Automotive Plano, d/b/a Central Kia of Plano, Kia Motors America, Inc. Intervenor*, Dallas, TX, 2015-2017.
Provided deposition testimony.

*Walter  Enterprises, Inc., d/b/a Timmons Subaru v. Subaru of America, Inc.*, Long Beach, CA, 2016-2017.
Provided deposition testimony.

*Motor Werks Partners, LP, v. General Motors, LLC*, Chicago, IL, 2015-2017.
Provided deposition testimony.

*Jeff Looper et al., v. FCA US LLC, f/k/a Chrysler Group, LLC, et al.,* California and Texas, 2015-2016.
Provided deposition testimony.

*In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Products Liability Litigation,* San Francisco, CA*, 2015-2017.*

*Dependable Dodge, Inc. v. Fiat Chrysler Automobiles, Inc.*, Canoga Park, CA, 2015-2017.
Provided deposition and hearing testimony.

*Wayzata Nissan, LLC v. Nissan North America, Inc., et al.,* Wayzata, MN, 2015-2017.
Provided pre-filed trial testimony.

*Glick Nissan, Inc. v. Nissan North America, Inc.,* Westborough, MA, 2015-2016.

*Volvo Construction Equipment North America, LLC v. Clyde/West, Inc.,* Spokane, WA, 2015.

*General Motors, LLC v. Hall Chevrolet LLC dba Hall Chevrolet,* Virginia Beach, VA, 2015-2016.

*Long Beach Motors, Inc. dba Long Beach Honda v American Honda Motor Co., Inc.,* Long Beach, CA, 2015.

*Tom Matson Dodge Inc. v. FCA US LLC.,* Seattle, WA, 2015.

*Ferrari of Atlanta*, Atlanta, GA 2015.

*Grossinger Autoplex, Inc. v. General Motors, LLC*, Chicago, IL, 2015-2016.
Provided deposition and hearing testimony.

*Mathew Enterprise, Inc. v. Chrysler Group LLC*, San Jose, CA, 2015-2016.
Provided deposition and trial testimony.

Revised 9/27/2023

Tab 1  Page 10

*Navistar v. New Baltimore Garage*, Warrenton, VA, 2015-2016.
Provided hearing testimony.

*Mathew Enterprise, Inc., a California Corporation, and Mathew Zaheri, an individual v. Chrysler Group, LLC, a Delaware Liability Company; Chrysler Group Realty Company, LLC, a Delaware Limited Liability Company, and DOES 1-40*, San Jose, CA 2014-2015.
Provided trial and deposition testimony.

*CNH America, LLC n/k/a CNH Industrial America, LLC v. Quinlan's Equipment, Inc.,* Racine, WI, 2014-2015.
Provided deposition testimony.

*Grayson Hyundai, LLC and Twin City Hyundai, Inc., v. Hyundai Motor America*, Knoxville, TN, 2014-2015.
Provided deposition testimony.

*TrueCar, Inc. v. Sonic Automotive, Inc., and Sonic Divisional Operations, LLC, Los Angeles, CA*, 2015-2016.
Provided deposition testimony.

*TECC, Complainant v. GM Respondent before the California New Motor Vehicle Board,* Oakland, CA, 2014-15.

*US District Court Southern District of NY in re General Motors LLC Ignition Switch Litigation,* NY, NY, 2014-.

*Feldten, LLC, d/b/a Tennyson Chevrolet v. Keith Lang, Lang Auto Sales, Inc.,Gordon Chevrolet, Inc.,Stewart Management Group, Inc., Scott Rama, Susan Ianni, and Mike Meszaros, and Gordon Chevrolet, Inc.& Stewart Management Group, Inc.* Detroit, MI, 2014-2016.

*Canadian Toyota Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation,* 2014-.

*Jim Hardman, Buick GMC*, Gainesville, GA, 2014-2016.

*Bates Nissan, Inc., v. Nissan North America Inc.,* Killeen, TX, October 2014-2017.
Provided deposition and hearing testimony.

*Recovery Racing, LLC d/b/a Maserati of Fort Lauderdale v. Maserati North America, Inc., and Rick Case Weston, LLC, d/b/a Rick Case Maserati*, Ft. Lauderdale, FL, 2014-.
Provided hearing testimony.

Tab 1  Page 11

*Sweeten Truck Center, L.C. v. Volvo Trucks North America, a Division of Volvo Group North America, LLC*, Before the Texas Department of Motor Vehicles Motor Vehicle Division, Austin, TX, 2014-.
Provided deposition and hearing testimony.

Beck Chevrolet Co, Inc. v. General Motors LLC, New York, NY 2014-2016.
Provided trial testimony.

*BSAG Inc., and Bob Stallings Nissan of Baytown, Inc. v. Baytown Nissan, Inc., Burklein Family Limited Partnership, Nissan North America, Inc., and Frederick W. Burklein*, Harris County, TX 2014-.
Provided deposition testimony.

*Richard C.B. Juca v. Larry H. Miller Corporation*, Peoria, AZ, 2014.

*General Motors, LLC v. Leep Chev, LLC, d/b/a Lujack's Chevrolet,* Scott County, IA. 2014-2015
Provided deposition testimony.

*Century Motors Corporation v. Chrysler Group, LLC et al.*, Wentzville, MO 2014-2015.
Provided deposition and trial testimony.

*Keyes European, LLC v. Encino Mercedes, LLC, Steve Zubieta, David Floodquist, Shimon Broshinsky and Does 1-20*, Los Angeles, CA, 2014.

*Ohio Auto Dealers Association*, 2014.

*Transteck, Inc. d/b/a Freightliner of Harrisburg v. Daimler Trucks North America, LLC (Freightliner Trucks Division)*, Harrisburg, PA, 2014-2015.

*Butler Toyota et al v. Toyota Motor Sales*, Indianapolis, IN, 2014.

*Wayzata Nissan, LLC v. Nissan North America, Inc., et al.,* Wayzata, MN, 2013-2017.

*Santa Cruz Nissan, Inc., dba Santa Cruz Nissan v. Nissan North America, Inc.*, Santa Cruz, CA 2013-2015.
Provided deposition and hearing testimony.

*Majid Salim v. Henry Khachaturian aka Hank Torian, Torian Holdings, Fremont Automobile Dealership, LLC., and Does 1-20,* Alameda County, CA, 2013-2014.
Provided deposition and trial testimony.

*GMAC v. Lloyd Belt, Lloyd Belt GM Center, Inc., and Lloyd Belt Chrysler, Inc.,* Eldon, MO 2013-2014.
Provided deposition testimony.

Revised 9/27/2023

Tab 1  Page 12

*General Motors v. Englewood Auto Group, LLC,* Englewood, NJ, 2012-2014.

*Bob Wade Autoworld v. Ford Motor Company*, Harrisonburg, VA, 2011-2012.
Provided hearing testimony.

*Van Wie Chevrolet, Inc. d/b/a Evans Chevrolet v. General Motors LLC and Sharon Chevrolet, Inc.,* Baldwinsville, NY, 2012-2017.
Provided deposition testimony.

*Midcon Compression L.L.C. v. Loving County Appraisal District,* Loving County, TX, 2013.
Provided deposition testimony.

*Texas Automobile Dealers Association,* Austin, TX, 2013.
Provided hearing testimony before Business and Industry Committee in Texas H.O.R.

*Tyler Automotive,* Niles, MI, 2013.

*Sutton Suzuki,* Matteson, IL 2013.

*Carson Toyota/Scion, Cabe Toyota/Scion, Norwalk Toyota/Scion and South Bay Toyota/Scion v. Toyota Motor Sales, U.S.A., Inc.,* Long Beach, CA, 2012-2013.
Provided deposition and hearing testimony.

*James T. Stone, individually, and on Behalf of JDJS Auto Center, Inc. v. Jacob A. DeKoker, Pro Financial, Inc., and JDJS Auto Center, Inc.,* Tyler, TX, 2012.

*New Country Automotive Group,* Saratoga Springs, NY, 2013-.

*Goold Patterson*, Las Vegas, NV, 2012.

*James Rist v. Denise Mueting and the Dominican Sisters of Peace*, Littleton, CO, 2012-2013.
*Law Office of Gary E. Veazey*, Memphis, TN, 2012.

*Randy Reed Nissan,* 2012.

*Arent Fox, LLP,* 2012.

*Chrysler Group, LLC v. Sowell Automotive, Inc. et al.*, 2012-2013.

*Morrie's European Car Sales, Inc. dba Morrie's Cadillac-Saab v. General Motors, LLC*, Minneapolis, MN, 2012-.
Provided deposition testimony.

Revised 9/27/2023

Tab 1  Page 13

*Dulles Motorcars, Inc. d/b/a Dulles Subaru v. Subaru of America,* Leesburg, VA, 2012-. Provided hearing testimony.

*Bowser Cadillac, LLC v. General Motors, LLC v. Rohrich Cadillac, Inc.,* McMurray, PA, 2012-. Provided hearing testimony.

*In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Expert Report of Products Liability Litigation,* Santa Ana, CA, 2010-.

*Bob Wade Autoworld*, 2012.

*Planet Subaru, John P Morrill, and Jeffrey R. Morrill v. Subaru of New England,* Hanover, MA, 2011-2012.

*Hill Nissan v. Jenkins Nissan*, Winterhaven, FL, 2011-2012.

*Burns & Levinson,* Boston, MA 2011-.

*Brydon, Sweringen & England*, 2011.

*Napleton Automotive Group,* Chicago, IL, 2011.

*Orloff Imports,* Chicago, IL, 2011.

*Boas International Motors, dba San Francisco Honda,* San Francisco, CA, 2011-.

*Carson CJ, LLC and Kenneth Phillips v. Sonic Automotive, Inc., Sonic-Carson F, Inc, Avalon Ford, Inc. dba Don Kott Chrysler Jeep, and Does 1 - 100,* Los Angeles, CA, 2010-2012. Provided deposition and hearing testimony.

*First United, Inc. A California Corporation dba De La Fuente Cadillac v. General Motors, Greiner Poway, Inc. and Does 1-50,* San Diego, CA, 2012.

*Ionia Automotive Management, LLC and Beverly Kelly v. Berger Motor Sales, Ned Berger, Jr, LC and Ned Berger Jr.*, Mason, MI, 2012-2013.

*Riverside Motorcycle, Inc. dba Skip Fordyce Harley-Davidson v. Harley-Davidson Motor Company,* Riverside, CA, 2011- 2012. Provided deposition and hearing testimony.

*Leep Hyu, LLC, an Iowa Corporation also known as Lujack Hyundai v. Hyundai Motors America, Green Family Hyundai Inc., and Green Family Holdings LLC*, Davenport, Iowa, 2011. Provided trial testimony.

*Royal Motor Sales,* San Francisco, CA, 2011-2012.

*Miller Barondess,* Los Angeles, CA, 2011.

*Brotherhood of Maintenance of Way Employee Division/IBT*, Washington, DC, 2011-.

*Star Houston, Inc., d/b/a Star Motor Cars v. Mercedes-Benz USA, LLC*, Houston, TX, 2010-2013.
Provided deposition testimony and hearing testimony.

*Chapman's Las Vegas Dodge, LLC and Prestige Chrysler Jeep Dodge, LLC v. Chrysler Group LLC,* Las Vegas, NV, 2011- 2012.
Provided deposition and hearing testimony.

*Laidlaw's Harley-Davidson Sales, Inc. dba Laidlaw's Harley-Davidson v. Harley-Davidson Motor Company,* Sacramento, CA, 2011- 2012.
Provided deposition and hearing testimony.

*Agrillo v. Martinez,* Tucson, AZ, 2011.

*Hyundai of Milford, LLC, d/b/a Key Hyundai v. Hyundai Motor America*, Milford, CT, 2011.

*Houston Mack Sales & Service d/b/a Houston Isuzu Truck, Inc. v. Hayes Leasing Company, Inc. d/b/a Hayes UD Trucks-Houston*, Houston, TX, 2011-2012.

*Bo Beuckmann Ford*, Ellisville, MO, 2011-.

*Boas International Motors dba San Francisco Honda v. American Honda Motor Co.*, San Francisco, CA, 2011.
*Life Quality BMW*, Brooklyn, NY, 2011-2012.

*Forrester Lincoln Mercury v. Ford Motor Company*, Chambersburg, PA, 2011-.
Provided hearing testimony.

*North Palm Motors, LLC d/b/a Napleton's North Palm Lincoln Mercury v. Ford Motor Company*, West Palm Beach, FL, 2011.

*Mega RV Corp. v. Mike Thompson Recreational Vehicles*, Irvine, CA, 2010-.
Provided deposition testimony.

*Harry W. Zanville, Esq.,* San Diego, CA, 2010-.

*Pond, Athey, Athey & Pond,* Front Royal, VA, 2010-2013.

Revised 9/27/2023

Tab 1  Page 15

*Daphne Automotive, LLC dba Eastern Shore Toyota and Shawn Esfahani v. Pensacola Motor Sales d/b/a Bob Tyler Toyota and Fred Keener,* Mobile, AL, 2010-2011.

*Gebhardt v. PCNA*, Boulder, CO, 2011.

*Fields Automotive Group,* Glencoe, IL, 2011.

*Laura Buick-GMC*, Collinsville, IL, 2011.

*Bredemann Family of Dealerships*, Park Ridge, IL, 2011.

*Transteck, Inc. d/b/a Freightliner of Harrisburg,* 2004-

*Bass Sox Mercer,* Tallahassee, FL, 2011-.

*The Collection*, Coral Gables, FL, 2011-2012.

*Manning, Leaver, Bruder & Berberich,* Los Angeles, CA, 2010-2012.

*Magic City Ford v. Ford Motor Company*, Roanoke, VA, 2010-2011.

*Bob Wade AutoWorld v. Ford Motor Company*, Harrisonburg, VA, 2010-2011.

*East West Lincoln Mercury*, Landover Hills, MD, 2010-2011.

*Stevens Love,* Longview, TX, 2010-2014.

*JP Chevrolet*, Peru, IL, 2010-2011.

*Bellavia & Gentile*, Mineola, NY, 2010-2011.

*Hayes Leasing v. Wiesner Commercial Truck Center*, Houston, TX, 2010.
*Link-Belt Construction Equipment Company v. Road Machinery & Supplies Co.*, Minneapolis, MN, 2010-2011.
Provided deposition testimony.

*Elliott Equipment Co., Inc. v. Navistar, Inc.*, Easton, Maryland, 2010.
Provided deposition testimony.

*Rally Auto Group, Inc. v. General Motors, LLC,* Palmdale, CA, 2010.
Provided hearing testimony.

*Ron Westphal Chevrolet v. General Motors, LLC,* Aurora, CO, 2010.

Revised 9/27/2023

Tab 1  Page 16

*Edmark Auto, Inc., v. General Motors, LLC,* Nampa, ID, 2010.

*Gurley-Leep Dodge, Inc. n/k/a Gurley Leep Dodge, LLC v. Chrysler Group, LLC,* Mishawaka, IN, 2010.

*Gurley-Leep Buick v. General Motors, LLC,* Mishawaka, IN, 2010.

*Leep Chev, LLC, v. General Motors, LLC,* South Bend, IN, 2010.

*Mike Finnin Motors, Inc., v. Chrysler Group LLC*, Dubuque, IA, 2010.
Provided hearing testimony.

*Sedars Motor Co., Inc. and Community Motors of Mason City, Inc. v. General Motors LLC,* Cedar Falls, IA, 2010.

*Burke, Warren, MacKay & Serritella, P.C.,* Chicago, IL, 2010-.

*First Family, Inc. d/b/a Bredemann Chevrolet v. General Motors, LLC,* Park Ridge, IL, 2010.

*Lou Bachrodt Chevrolet Co. d/b/a Lou Bachrodt Jeep v. Chrysler Group, LLC,* Rockford, IL, 2010.
Provided hearing testimony.

*Cape County Auto Park I, Inc. v. Chrysler Group, LLC,* Cape Girardeau, MO, 2010.
Provided hearing testimony.

*Fury Dodge, LLC v. Chrysler Group, LLC,* Lake Elmo, MN, 2010.
Provided hearing testimony.

*Midtown Motors, Inc., d/b/a John Howard Motors v. Chrysler Group LLC,* Morgantown, WV, 2010.
Provided hearing testimony.

*Deur Speet Motors, Inc. v. General Motors, LLC,* Fremont, MI, 2010.

*Village Chevrolet-Buick-Oldsmobile, Inc. v. General Motors LLC,* Carthage, MO, 2010.

*Arenson & Maas,* Cedar Rapids, IA, 2010-.

*Nyemaster, Goode, West, Hansell & O'Brien, PC,* Des Moines, IA, 2010

*C. Basil Ford, Inc. v. Ford Motor Company*, Buffalo, NY, 2010.

*Leonard, Street & Deinard,* Minneapolis, MN, 2010-2015.

Revised 9/27/2023

Tab 1  Page 17

*Dady & Gardner,* Minneapolis, MN, 2010.

*Star Houston, Inc., d/b/a Star Motor Cars v. Mercedes-Benz USA, LLC*, Houston, TX, 2009 -
2015.

*Mente Chevrolet Oldsmobile, Inc., F/K/A Mente Chevrolet, Inc. T/A Mente Chevrolet and
Mente Chrysler Dodge, Inc. and Donald M. Mente v. GMAC,* Kutztown, PA, 2009-2011.

*Long-Lewis, Inc. v. Sterling Truck Corporation*, Besemer, AL, 2009-2011.

*Gossett Motor Cars, LLC v. Hyundai Motor America and Homer Skelton Auto Sales, LLC,*
Memphis, TN, 2009-2010.

*Star Houston, Inc., d/b/a Star Motor Cars v. Mercedes-Benz USA, LLC*, Houston, TX, 2009-.
*In re: CHRYSLER LLC, et al. v. Debtors, Chapter 11,* New York, NY, 2009.

*Cooper and Walinski, LPA,* 2009.

*Jennings Motor Company, Inc., d/b/a Springfield Toyota v. Toyota Motor Sales USA, Inc.,*
Springfield, VA, 2008-2010.

*General Motors v. Harry Brown's and (counterclaim) Harry Brown's and Faribault v. General
Motors*, Faribault, MN, 2008.
Provided declaration.

*Nick Alexander Imports v. BMW of North America*, Beverly Hills, CA, 2008.

*Monroeville Chrysler v. DaimlerChrysler Motors Company*, Pittsburgh, PA, 2008.

*Bowser Cadillac, LLC v. General Motors Corporation and Saab Cars USA, Inc.,* Pittsburgh, PA,
2008-2009.

*Carlsen Subaru v. Subaru of America, Inc.,* San Francisco, CA, 2008.
Provided deposition and hearing testimony.

*Suburban Dodge of Berwyn, Inc., and Lepetomane XXII, Inc., v. DaimlerChrysler Motors
Company, LLC and DaimlerChrysler Financial Services Americas LLC,* Chicago, IL, 2007-
2008.
Provided deposition testimony.

*Wiggin & Nourie, P.A.,* Manchester, NH, 2007-2008.

Revised 9/27/2023

Tab 1  Page 18

*McCall-T LTD., a Texas limited partnership d/b/a Sterling McCall Toyota & Sterling McCall Scion, et al. v. Gulf States Toyota, Inc., McCall- T LTD., et al. v. Madison Lee Oden et al.,* Houston, TX, 2007-2009.

*Volkswagen of America, Inc., and Aristocrat Volkswagen East, Inc. v. Royal Automotive, Inc., d/b/a Royal Volkswagen,* Orlando, FL, 2007-.

*Myers & Fuller, P.A.,* Tallahassee, FL, 2007-2009.

*Ed Schmidt Pontiac-GMC Truck, Inc. v. DaimlerChrysler Motors Company, LLC*, Perrysburg, OH, 2006-2009.

*Fowler Motors, Inc. v. BMW of North America, LLC,* Conway, SC, 2006-2008.

*Serpa Automotive Group, Inc. v. Volkswagen of America, Inc.,* Visalia, CA, 2006. Provided deposition and hearing testimony.

*Serra Chevrolet, Inc. d/b/a Serra Kia v. Kia Motors America, Inc., et al.,* Birmingham, AL, 2006-2009.

*Cardenas Enterprises, Inc., d/b/a Cardenas Toyota BMW v. Gulf States Toyota, Inc. and Toyota Motor Sales, USA, Inc.*, Harlingen, TX, 2006.

*North Avenue Auto, Inc., d/b/a Grand Honda v. American Honda Motor Co., Inc. a California Corporation,* Chicago, IL, 2006-2009.

*Saleen, Inc.,* Irvine, CA, 2006-2009.

*Golden Ears Chrysler Dodge Jeep,* Maple Ridge, BC, 2006-2007.

*Action Nissan, Inc. v. Nissan North America, Inc.,* Nyack, NY, 2005-2007.

*Harbor Truck Sales and Services, Inc. d/b/a Baltimore Freightliner v. DaimlerChrysler Motors Company, LLC,* Baltimore, MD, 2005-2007.
*PH Automotive Holding Corporation, d/b/a Pacific Honda, Cush Automotive Group, d/b/a Cush Honda San Diego, Tipton Enterprises, Inc., d/b/a Tipton Honda, Ball Automotive Group, d/b/a Ball Honda v. American Honda Motor Co., Inc.,* San Diego, CA, 2005-2007.
*Rusing & Lopez,* Tucson, AZ, 2005.

*Sonic Automotive, Inc. v. Rene R. Isip, Jr.; RRIJR Auto Group, Ltd., d/b/a Rene Isip Toyota of Lewisville, and John Eagle,* Lewisville, TX, 2005.

*Competitive Engineering, Inc. v. Honeywell International, Inc.,* Tucson, AZ, 2005.

19

*Century Motors Corporation v. DaimlerChrysler Motors Company, LLC.,* St. Louis, MO, 2005.

*Lone Star Truck Group,* Albuquerque, NM, 2005-2006.

*Thomas Bus Gulf Coast, Inc.*, Houston, TX, 2005.

*Stoops Freightliner*, Indianapolis, IN, 2005-2006.

*Cameron, Worley, Forham, P.C.,* Nashville, TN, 2004-2005.

*Transteck, Inc. d/b/a Freightliner of Harrisburg v. DaimlerChrysler Vans, LLC,* Harrisburg, PA, 2004.

*Around The Clock Freightliner Group, Inc.,* Oklahoma City, OK, 2004-2006.

*Alamo Freightliner,* San Antonio, TX, 2004-2005.

*GKG Motors, Inc. d/b/a Suzuki of San Antonio v. Cantwell Fielder, Ltd. d/b/a Quality Suzuki and American Suzuki Motor Corporation,* San Antonio, TX, 2004-2007.

*Maple Shade Motor Corporation v. Kia Motors America, Inc.,* Turnersville, NJ, 2004-2006.

*Star Houston, Inc. d/b/a Star Motor Cars, Inc. v. Mercedes-Benz-USA, LLC*, Austin, TX, 2004-2006.

*Perez Investments, Inc. d/b/a Rick Perez Autonet v. DaimlerChrysler Financial, L.L.C. d/b/a Chrysler Financial, L.L.C.; DaimlerChrysler Motors Corporation*, Austin, TX, 2004.

*Mazda Motors of America v. Maple Shade Motor Corporation, d/b/a Maple Shade Mazda et al.,* Maple Shade, NJ, 2004.

*Wickstrom Chevrolet-Pontiac-Buick-GMC. v. General Motors Corporation, Chevrolet Division*, Austin, TX, 2004.

*Sea Coast Chevrolet - Oldsmobile, Inc*. Belmar, NJ, 2004.

*Steve Taub, Inc. d/b/a Taub Audi v. Audi Of America, Inc.,* Santa Monica, CA, 2003.
*Toledo Mack Sales and Service, Inc. v. Mack Truck, Inc.,* Columbus, OH, 2003.

*Cooper & Elliot,* Columbus, OH, 2003.

*Bayshore Ford Truck Sales, Inc., et al. v. Ford Motor Company,* New Castle, DE, 2003-2013.

Revised 9/27/2023

Tab 1  Page 20

*Maritime Ventures, LLC; Maritime Motors, Inc. v. City of Norwalk; Norwalk Redevelopment Agency*, Norwalk, CT, 2003.

*Cox Nuclear Pharmacy, Inc. and Accuscan, LLC v. CTI Molecular Imaging, Inc.*, Mobile, AL, 2002-.

*Mazda Motor of America, Inc. v. David J. Phillips Buick-Pontiac, Inc.,* Orange County, CA, 2002- 2003.

*Kimnach Ford*, Norfolk, VA, 2002-.

*Brown & Brown Chevrolet v. General Motors,* Phoenix, AZ, 2002.

*New Country Toyota,* Durango, CO, 2002-2003.

*ALCO Cadillac-Pontiac Sales, Inc. v. General Motors Corp. et al,* Englewood Cliffs, NJ, 2001-2003.

*Al Serra Chevrolet, Inc. v. General Motors Corp.,* Flint, MI, 2001.

*Bayou Ford Truck Sales, Inc. d/b/a Bayou City Ford-Sterling v. Sterling Truck Corp.,* Houston, TX, 2001-2002.

*Fred Lavery Company et al. v. Nissan North America, Inc., et al.,* Birmingham, MI, 2000-2002.

*Tamaroff Buick and Sunshine Automotive, Inc. v. American Honda,* Detroit, MI, 2000-2006.

*Applegate Chevrolet, Inc. v. General Motors Corporation* Flint, MI, 2000-2001.

*Anchorage Chrysler Center, Inc. v. DaimlerChrysler Motors Corporation,* Anchorage, AK, 2000-2003.

*Ford Motor Company v. Pollock Motor Co., Inc. f/k/a Pollock Ford Co., Inc., v. Ford Motor Credit,* Gadsden, AL, 1999-2001.

*Suzuki Motor Corporation Japan v. Consumers Union of United States, Inc.,* Orange County, CA, 1999.

*Arata Motor Sales v. American Honda Motor Co., et al.,* Burlingame, CA, 1999.

*Star Motor Cars v. Mercedes-Benz of North America, Inc.,* Houston, TX, 1999.

*Dispatch Management Services Corp., in Aero Special Delivery, Inc. v. United States of America,* San Francisco, CA, 1999-2003 (est).

21

*Arnold Lincoln Mercury v. Ford Motor Co.,* Detroit, MI, 1999-2000.

*Landmark Chevrolet Corporation v. General Motors Corporation et al,* Houston, TX, 1998-2002.

*Ford Dealers of Greater Toronto,* Toronto, ONT, Canada 1998-2003.

*Volkswagen of America, Inc., et al. v. Pompano Imports, Inc., d.b.a. Vista Motor Company,* Pompano Beach, FL, 1998-1999.

PUBLICATIONS

Mark M. Leitner, Joseph S. Goode, and Ted Stockton, "Franchise and Dealership Litigation Damages" in *The Comprehensive Guide to Economic Damages*, ed. Nancy Fannon and Jonathan Dunnitz, 6th Edition, Business Valuation Resources, 2020.

Joseph S. Goode, Mark M. Leitner, and Ted Stockton, "Franchise and Dealership Litigation Damages" in *The Comprehensive Guide to Economic Damages*, ed. Jonathan Dunnitz and Nancy Fannon, 5th Edition, Business Valuation Resources, 2018.

"Understanding Sales Performance Measurements: How Average Became the New Minimum," *Dealer Law Review*, Issue 14.3, Winter 2014, pp. 1-2.

*White Paper: Customer Satisfaction Measurement,* co-authored with Dr. Ernest H. Manuel, Jr., 2012.

*White Paper: Generalized Retail Sales Effectiveness* [restricted distribution]*,* co-authored with Dr. Ernest H. Manuel, Jr., 2012.

*Time Inspection Study Report of the Brotherhood of Maintenance of Way Employee Division/IBT (BMWED)*, Submitted to The Committee on Transportation and Infrastructure of the House of Representatives and The Committee on Commerce, Science, and Transportation of the Senate, 2011.

*White Paper: Customer Satisfaction,* co-authored with Dr. Ernest H. Manuel, Jr., 2010.

*White Paper: Sales Effectiveness (RSI and MSR): Flaws in Manufacturers' Measurement of Dealers' Sales Performance,* co-authored with Dr. Ernest H. Manuel, Jr., 2010.

Tab 1  Page 22

OTHER

*Developments in Sales Metrics*, presentation to AutoCPA Group, Sun Valley, Idaho, October 1, 2018.

*Conditional Margin, Tiered Margins, Market Stratification, and Project Pinnacle*, presentation to National Association of Dealer Counsel, with Harry Zanville, April 25, 2017.

*Business Cycles and Fraud,* presentation to AutoCPA Group, September 23, 2016.

*Trends in Franchise Economics and a Theory of Dealer Investment,* presented to CPA group, Oklahoma City, OK, 2014.

"sales expectations vs Sales Expectations," presentation to AutoCPA Group, 2013.

Testimony before the Texas House of Representatives on behalf of the Texas Automobile Dealers Association regarding public policy issue related to franchise law, April 9, 2013.

"Navigating the Post-Slump Environment," presentation to Chief Financial Officers Group, Palm Springs, CA, April 2012.

"How Dealers Can Protect Themselves" presentation to AutoCPA Group, 2011.

Minnesota Auto Dealers, issues related to General Motors and Chrysler bankruptcies and dealer arbitrations, 2010.

Arizona Electric Power Cooperative, hourly load forecasting using econometric estimation, 2006.

Revised 9/27/2023

Tab 1  Page 23

**Cases in which Mr. Stockton gave deposition, hearing or trial testimony during the past four years**

*Kpauto, LLC, dba Putnam Ford of San Mateo v. Ford Motor Company,* (The State of California New Motor vehicle Board)
Provided hearing testimony 9/2023.

*Aaron Gant, et al. v. Ford Motor Company,* (United States District Court Eastern District of Michigan Southern Division)
Provided deposition testimony 8/2023.

*Ranbir Gujral and Danielle Emerson, on behalf of themselves and the Putative Class, v. BMW Of North America, LLC, and Bayerische Motoren Werke Aktiengesellschaft,* (United States District Court For The District of New Jersey)
Provided deposition testimony 8/2023.

*Cowin Equipment Company, Inc., v. CNH Industrial America LLC and Scott Moore,* (In the Circuit Court For Jefferson County, Alabama)
Provided deposition testimony 7/2023.

*Hyundai Subaru of Nashville, Inc. d/b/a Downtown Hyundai v. Hyundai Motor America, Inc.,* (Before the Tennessee Motor Vehicle Commission)
Provided hearing testimony 7/2023.

*Rusnak/Pasadena, a California Corporation v. Jaguar Land Rover North America, LLC,* (United States District Court Central District of California)
Provided deposition testimony 5/2023.

*Action Nissan, Inc. d/b/a Universal Hyundai for Itself and in the Name of the Department of Highway Safety and Motor Vehicle of the State of Florida, for its Use and Benefit v. Hyundai Motor America and Genesis Motor America, LLC,* (United States District Court Middle District of Florida Orlando Division)
Provided deposition testimony 4/2023.

*Al Piemonte Ford, Inc., et al. v. Ford Motor Company,* (State of Illinois Motor Vehicle Review Board)
Provided deposition testimony 4/2023 and hearing testimony 7/2023.

*Yandery Sanchez, Louise Knudson, Andrea Reiher-Odom, Derrick Smith, Amber Witt, and Mark Treston, on behalf of themselves and all others similarly situated, v. Kia Motors America, Inc.,* (United States District Court Central District of California)
Provided deposition testimony 3/2023.

Tab 1  Page 24

*Larson Motors, Inc v. General Motors LLC, et al.* (United States District Court Western District of Washington at Seattle)
Provided deposition testimony 2/2023.

*Estate of William D. Pilgrim, et al., on behalf of themselves and all others similarly situated v. General Motors, LLC,* (United States District Court Eastern District of Michigan)
Provided deposition testimony 2/2023.

*Hyundai Motor America Corporation v. EFN West Palm Motor Sales, LLC (Defendant/Counterclaim Plaintiff/Third-Party Plaintiff ) Gene Khaytin; Ernesto Revuelta; Edward W. Napleton; Geovanny Pelayo, Jorge Ruiz (Defendants), EFN West Palm Motor Sales, LLC; For Itself and in the Name of the Department of Highway Safety and Motor Vehicles of the State of Florida, for its Use and Benefit (Counterclaim-Plaintiff/Third-Party Plaintiff) v. Hyundai Motor America Corporation (Counterclaim-defendant) And Hyundai Motor Company (Third-party Defendant)* (United States District Court for the Southern District of Florida West Palm Beach Division)
Provided deposition testimony 10/2022 and trial testimony 1/2023.

*Sloan/Siqueiros, et al. v. General Motors LLC,* (United States District Court Northern District of California San Francisco Division)
Provided deposition testimony 10/2019 and trial testimony 9/2022.

*EFN West Palm Motor Sales, LLC d/b/a Napleton's West Palm Beach Hyundai, North Palm Hyundai, LLC d/b/a Napleton's North Palm Hyundai, and the Florida Department of Highway Safety and Motor Vehicles v. Hyundai Motor America Corporation,* (United States District Court for the Southern District of Florida West Palm Beach Division)
Provided deposition testimony 8/2022.

*Spitzer Autoworld Akron, LLC, v. Fred Martin Motor Company,* (Court of Common Pleas, Summit County, OH)
Provided deposition testimony 7/2022 and trial testimony 8/2022.

*Vivian Arevalo and Micah Simon v. USAA Casualty Insurance Company and Garrison Property & Casualty Insurance Company,* (District Court of Bexar County, TX)
Provided deposition testimony 6/2022.

*Jason Nuwer, Mark Minkowitz, Amarillis Gineris, Christina Vigoa, and Kevin Van Allen v. FCA US LLC f/k/a Chrysler Group LLC,* (United States District Court, Southern District of Florida)
Provided deposition testimony 5/2022.

*Chapman, et al, v. General Motors, LLC.,* (United States District Court for the Eastern District of Michigan)
Provided deposition testimony. 4/2022.

Revised 9/27/2023

Tab 1  Page 25

*James Bledsoe, et al, v. FCA US LLC, and Cummins Inc.*, (United States District Court for the Eastern District of Michigan)
Provided deposition testimony 1/2022.

*In Re: Duramax Diesel Litigation, Relating to: Nancy Anderton, et al., v. General Motors LLC, et al.*, (United States District Court for the Eastern District of Michigan)
Provided deposition testimony 1/2022.

*Fox Hills Auto, Inc. D/b/a Airport Marina Ford v. Ford Motor Company, Central Ford Automotive, Inc., dba Central Ford v. Ford Motor Company and Los Feliz Ford, Inc., dba Star Ford Lincoln  v. Ford Motor Company*, (State of California New Motor Vehicle Board)
Provided deposition testimony 12/2021.

*West Palm Beach Acquisitions, Inc. d/b/a Greenway Kia West Palm Beach and Florida Department of Highway Safety & Motor Vehicles, v. Kia Motors America, Inc.*, (United States District Court Southern District of Florida West Palm Beach Division)
Provided deposition testimony 12/2021.

*Kenneth John Williams and Another Applicants v. Toyota Motor Corporation Australia Limited*, (Federal Court of Australia District Registry: New South Wales Division: General)
Provided trial testimony 12/2021.

*Gabriel Patlan, Ryan Cornell, and La Della Levy, on behalf of themselves and all others similarly situated v. BMW of North America LLC; Wendy Vazquez, on behalf of herself and all individuals similarly situated v. BMW of North America, LLC; Vikkie Wilkinson, on Behalf of Herself and the Putative Class, v. BMW of North America, LLC and Bayersiche Motoren Werke Aktiengesellschaft*, (United States District Court for the District of New Jersey)
Provided deposition testimony 11/2021.

*Peterson Motorcars, LLC et al v. BMW of North America, LLC*, (United States District Court Western District of Kentucky Louisville Division)
Provided deposition testimony 9/2021.

*James Bledsoe, Paul Chouffet, Martin Rivas, Jeremy Perdue, Michael Erben, Martin Witberg, Marty Ward, Alan Strange, James Forshaw, Matt Langworthy, Natalie Beight, Jordan Hougo, Dawn Roberts, and Marc Ganz, on Behalf of Themselves and All Others Similarly Situated, v FCA US LLC, a Delaware Corporation, and Cummins Inc., an Indiana Corporation*, (U.S. District Court for the Eastern District of Michigan )
Provided deposition testimony 9/2021.

*Ricardo R. Garcia, et al. v. Volkswagen Group of America, Inc., et al.*, (United States District Court for the Eastern District of Virginia Alexandria Division)
Provided deposition testimony 9/2021.

Revised 9/27/2023

Tab 1  Page 26

*Paul Weidman, et al., v Ford Motor Company*, (U. S. District Court Eastern District of Michigan
Southern Division)
Provided deposition testimony 5/2021.

*Milind Desai v. Geico Casualty Company*, (U.S. District Court Northern District of Ohio Eastern
Division)
Provided deposition testimony 5/2021.

*Eric Stevens, Christopher L. Rodriguez, Michael S. Frakes, Terry Pennell, Ray Moore, Kent
Larry Bakken, Lynn E. Kirkpatrick, and Michael E. Stone v. Ford Motor Company.* (United
States District Court Southern District of Texas, Corpus Christi Division)
Provided deposition testimony 4/2021.

*In the matter of  Luxury Cars of Bayside, Inc., v. BMW of North America, LLC*  (State of New
York Department of Motor Vehicles Safety and Business Hearing Bureau)
Provided hearing testimony 4/2021.

*Clarence Simmons, Franklin Navas, Jorge Arroyave, Joseph Dabbs, Jennifer DeWitt, Anne
Erdman, Mark James, Shand Jackson, Mike Tierney, Mark Van Bus Kirk, John Buczynski, Ilja
Lopatik, Brian Yarborough, William MacSaveny, Ryan Marshall, Allyson Rogers, Peter Tulenko,
and Greg Licktenberg, on behalf of themselves and all others similarly situated v. Ford Motor
Company* (United States District Court Southern District of Florida)
Provided deposition testimony 3/2021.

*Kimberley Carter and Keith Halliday v. Ford Motor Company of Canada, Ltd., Ford Credit
Canada Limited and Ford Motor Company* (Ontario Superior Court Justice)
Provided cross-examination testimony 3/2021.

*Braman Motors, Inc., d/b/a Braman BMW, for Itself and in the Name of the Department of
Highway Safety and Motor Vehicles of the State of Florida, for its Use and Benefit, and
Palm Beach Imports, Inc., d/b/a Braman Motorcars, for Itself and in the Name of the Department
of Highway Safety and Motor Vehicles of The State of Florida, for its Use and Benefit, and The
Department of Highway Safety and Motor Vehicles of the State of Florida, for the Use and
Benefit of Braman Motors, Inc. and Palm Beach Imports, Inc. v. BMW of North America, LLC.*
(United States District Court Southern District of Florida Miami Division)
Provided deposition testimony 2/2021.

*Gina Signor, Individually and on Behalf of All Those Similarly Situated v. Safeco Insurance
Company of Illinois*, (U.S. District Court, Southern District of Florida, Fort Lauderdale Division)
Provided deposition testimony 11/2020 and 1/2021.

Revised 9/27/2023

Tab 1  Page 27

*Between Barry Rebuck and Ford Motor Company and Ford Motor Company of Canada, Limited and Yonge-Steeles Ford Lincoln Sales Limited Proceeding under the Class Proceedings Act, 1992,* (Ontario Superior Court of Justice)
Provided cross-examination testimony 10/2020.

*In Re: Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litigation Nemet v. Volkswagen Group of America, Inc.*, (U.S. District Court, Northern District of California)
Provided deposition testimony 8/2020.

*William South, Individually and on Behalf of All Those Similarly Situated v. Progressive Select Insurance Company,* (United States District Court Southern District of Florida Tampa Division)
Provided deposition testimony 7/2020.

*Biljana Capic v. Ford Motor Company of Australia Limited* (Federal Court of Australia, New South Wales)
Provided trial testimony 7/2020.

*Jason Counts, Donald Klein, Oscar Zamora, Derek Long, Bassam Hirmiz, Jason Silveus, John Miskelly, Thomas Hayduk, Christopher Hemberger, Individually And on Behalf of All Others Similarly Situated, v. General Motors, LLC, Robert Bosch GMBH, and Robert Bosch, LLC,* (United States District Court Eastern District of Michigan)
Provided deposition testimony 2/2020

*Barber Group, Inc., d/b/a Barber Honda v. American Honda Motor Co., Inc., Galpinsfield Automotive, LLC, Intervenor.* (State of California New Motor Vehicle Board)
Provided deposition testimony 1/2019.  Provided  hearing testimony 12/2019 and 1/2020.

*Continental Imports Inc.  d/b/a Mercedes Benz of Austin v Swickard Austin, LLC d/b/a Mercedes Benz of South Austin* (Before the Texas State Office of Administrative Hearings)
Provided deposition testimony 9/2019 and hearing testimony 11/2019

*Alfredo's Foreign Cars, Inc., d/b/a Larchmont Chrysler Jeep Dodge v. FCA US LLC*, (State of New York Department of Motor Vehicles Safety and Business Hearing Bureau)
Provided hearing testimony 10/2019.

*George Tershakovec, et al. v Ford Motor Company,* (United States District Court Southern District of Florida)
Provided deposition testimony 9/2019.

*Vista Ford Oxnard, LLC., d/b/a Vista Ford Lincoln of Oxnard v. Ford Motor Company and Ford of Ventura, Inc., d/b/a Ford of Ventura, Intervenor*, (State of California New Motor Vehicle Board)
Provided deposition testimony 8/2019 and hearing testimony 9/2019.

Revised 9/27/2023

Tab 1  Page 28

## Probability-Adjusted Retail Replacement Costs for Insured Assuming Total Loss
## Select Class Vehicles

| Percentile* | Model Year | Make | Model | Body | Replacement Costs | Amount Received if Cap = 60% of ATI |
|---|---|---|---|---|---|---|
| | | | | **Vehicle at Given Percentile*** | | |
| 10 | 2012 | Hyundai | Sonata | Sedan 4D Limited 2.4L I4 | $1,430 | $1,430 |
| 20 | 2013 | Kia | Sorento | Utility 4D EX AWD 2.4L I4 | $1,726 | $1,726 |
| 25 | 2013 | Kia | Sportage | Utility 4D SX AWD 2.0L I4 Turbo | $1,807 | $1,807 |
| 30 | 2015 | Hyundai | Tucson | Utility 4D GLS AWD 2.0L I4 | $1,981 | $1,981 |
| 33 & 1/3 | 2015 | Kia | Sedona | Extended Passenger Van SX 3.3L V6 | $2,059 | $2,059 |
| 40 | 2015 | Hyundai | Santa Fe | Utility 4D Sport 2.0L I4 Turbo | $2,146 | $2,146 |
| 50 | 2019 | Kia | Forte | Sedan 4D EX 2.0L I4 | $2,435 | $2,435 |
| 60 | 2018 | Kia | Sedona | Extended Passenger Van L 3.3L V6 | $2,620 | $2,620 |
| 70 | 2020 | Hyundai | Kona | Utility 4D SEL Plus 2.0L I4 | $2,785 | $2,785 |
| 80 | 2019 | Kia | Sedona | Extended Passenger Van LX 3.3L V6 | $3,151 | $3,151 |
| 90 | 2022 | Hyundai | Kona | Utility 4D N 2.0L I4 Turbo | $3,473 | $3,473 |
| 100 | 2021 | Hyundai | Palisade | Utility 4D Calligraphy AWD 3.8L V6 | $4,913 | $4,913 |

\* Percentiles using Average Trade-In values.

SOURCE: The Fontana Group, Inc.
DATA: JD Power Internet Site, 8/2023.
Tentative Order Regarding Motion for Preliminary Settlement Approval and Class Certification.
Tax Foundation Facts & Figures Data Files, 2023.
Edmunds Internet Site, 5/30/2023.
S&P Global Mobility Vehicles in Operation Data File, 7/1/2023.
S&P Global Mobility Used Statewide Dealer Registration Data File, 2021 - 2022 (6/2023 Update).
F:\HKTC: REPCOSTSTLU.XLSX:SDM2:21:TLIDIN

Tab 2  Page 1

**Probability-Adjusted Retail Replacement Costs for Uninsured
Assuming Total Loss and Assuming Owner Got the Vehicle Back
Select Class Vehicles with Average Trade-In < $10,000**

| Percentile* | Model Year | Make | Model | Body | Replacement Costs | Amount Received if Cap = 60% of ATI |
|---|---|---|---|---|---|---|
| | | Vehicle at Given Percentile* | | | | |
| 10 | 2012 | Hyundai | Sonata | Sedan 4D Limited 2.4L I4 | $8,419 | $3,653 |
| 20 | 2013 | Kia | Sorento | Utility 4D EX AWD 2.4L I4 | $11,446 | $5,205 |
| 24.37 | 2014 | Kia | Sorento | Utility 4D LX AWD 3.3L V6 | $12,436 | $5,993 |

\* Percentiles using Average Trade-In values.
Note: The 2014 Kia Sorento has an Average Trade-In value of $9,988.

SOURCE: The Fontana Group, Inc.
DATA: JD Power Internet Site, 8/2023.
Tentative Order Regarding Motion for Preliminary Settlement Approval and Class Certification.
Tax Foundation Facts & Figures Data Files, 2023.
Edmunds Internet Site, 5/30/2023.
S&P Global Mobility Vehicles in Operation Data File, 7/1/2023.
S&P Global Mobility Used Statewide Dealer Registration Data File, 2021 - 2022 (6/2023 Update).
F:\HKTC: REPCOSTSTLU.XLSX:SDM4:21:TLIDIN

Tab 3  Page 1

**Probability-Adjusted Retail Replacement Costs for Uninsured
Assuming Total Loss and Assuming Owner Did Not Get the Vehicle Back
Select Class Vehicles with Average Trade-In < $10,000**

| Percentile* | Model Year | Make | Model | Body | Replacement Costs | Amount Received if Cap = 60% of ATI |
|---|---|---|---|---|---|---|
| | | | | Vehicle at Given Percentile* | | |
| 10 | 2012 | Hyundai | Sonata | Sedan 4D Limited 2.4L I4 | $10,055 | $3,653 |
| 20 | 2013 | Kia | Sorento | Utility 4D EX AWD 2.4L I4 | $13,776 | $5,205 |
| 24.37 | 2014 | Kia | Sorento | Utility 4D LX AWD 3.3L V6 | $15,119 | $5,993 |

* Percentiles using Average Trade-In values.
Note: The 2014 Kia Sorento has an Average Trade-In value of $9,988.

SOURCE: The Fontana Group, Inc.
DATA: JD Power Internet Site, 8/2023.
Tentative Order Regarding Motion for Preliminary Settlement Approval and Class Certification.
Tax Foundation Facts & Figures Data Files, 2023.
Edmunds Internet Site, 5/30/2023.
S&P Global Mobility Vehicles in Operation Data File, 7/1/2023.
S&P Global Mobility Used Statewide Dealer Registration Data File, 2021 - 2022 (6/2023 Update).
F:\HKTC: REPCOSTSTLU.XLSX:SDM6:21:TLIDIN

Tab 4  Page 1

# Out-of-Pocket Costs for Insured Assuming Partial Loss
## Select Class Vehicles

| Percentile* | Model Year | Make | Model | Body | Out-of-Pocket Costs | Amount Received if Cap = Max of 33% of ATI and $3,375 |
|---|---|---|---|---|---|---|
| | | | Vehicle at Given Percentile* | | | |
| 10 | 2012 | Hyundai | Sonata | Sedan 4D Limited 2.4L I4 | $500 | $500 |
| 20 | 2013 | Kia | Sorento | Utility 4D EX AWD 2.4L I4 | $500 | $500 |
| 25 | 2013 | Kia | Sportage | Utility 4D SX AWD 2.0L I4 Turbo | $500 | $500 |
| 30 | 2015 | Hyundai | Tucson | Utility 4D GLS AWD 2.0L I4 | $500 | $500 |
| 33 & 1/3 | 2015 | Kia | Sedona | Extended Passenger Van SX 3.3L V6 | $500 | $500 |
| 40 | 2015 | Hyundai | Santa Fe | Utility 4D Sport 2.0L I4 Turbo | $500 | $500 |
| 50 | 2019 | Kia | Forte | Sedan 4D EX 2.0L I4 | $500 | $500 |
| 60 | 2018 | Kia | Sedona | Extended Passenger Van L 3.3L V6 | $500 | $500 |
| 70 | 2020 | Hyundai | Kona | Utility 4D SEL Plus 2.0L I4 | $500 | $500 |
| 80 | 2019 | Kia | Sedona | Extended Passenger Van LX 3.3L V6 | $500 | $500 |
| 90 | 2022 | Hyundai | Kona | Utility 4D N 2.0L I4 Turbo | $500 | $500 |
| 100 | 2021 | Hyundai | Palisade | Utility 4D Calligraphy AWD 3.8L V6 | $500 | $500 |

* Percentiles using Average Trade-In values.

SOURCE: The Fontana Group, Inc.
DATA: JD Power Internet Site, 8/2023.
Tentative Order Regarding Motion for Preliminary Settlement Approval and Class Certification.
F:\HKTC: REPCOSTSTLU.XLSX:SDM7:21:TLIDIN

Tab 5  Page 1

## Out-of-Pocket Repair Costs for Uninsured Assuming Partial Loss
## Select Class Vehicles

| Percentile* | Model Year | Make | Model | Body | Repair Costs | Amount Received if Cap = Max of 33% of ATI and $3,375 |
|---|---|---|---|---|---|---|
| | | | **Vehicle at Given Percentile*** | | | |
| 10 | 2012 | Hyundai | Sonata | Sedan 4D Limited 2.4L I4 | $5,010 | $3,375 |
| 20 | 2013 | Kia | Sorento | Utility 4D EX AWD 2.4L I4 | $5,010 | $3,375 |
| 25 | 2013 | Kia | Sportage | Utility 4D SX AWD 2.0L I4 Turbo | $5,010 | $3,375 |
| 30 | 2015 | Hyundai | Tucson | Utility 4D GLS AWD 2.0L I4 | $5,010 | $3,861 |
| 33 & 1/3 | 2015 | Kia | Sedona | Extended Passenger Van SX 3.3L V6 | $5,010 | $4,142 |
| 40 | 2015 | Hyundai | Santa Fe | Utility 4D Sport 2.0L I4 Turbo | $5,010 | $4,736 |
| 50 | 2019 | Kia | Forte | Sedan 4D EX 2.0L I4 | $5,010 | $5,010 |
| 60 | 2018 | Kia | Sedona | Extended Passenger Van L 3.3L V6 | $5,010 | $5,010 |
| 70 | 2020 | Hyundai | Kona | Utility 4D SEL Plus 2.0L I4 | $5,010 | $5,010 |
| 80 | 2019 | Kia | Sedona | Extended Passenger Van LX 3.3L V6 | $5,010 | $5,010 |
| 90 | 2022 | Hyundai | Kona | Utility 4D N 2.0L I4 Turbo | $5,010 | $5,010 |
| 100 | 2021 | Hyundai | Palisade | Utility 4D Calligraphy AWD 3.8L V6 | $5,010 | $5,010 |

\* Percentiles using Average Trade-In values.

SOURCE: The Fontana Group, Inc.
DATA: JD Power Internet Site, 8/2023.
Tentative Order Regarding Motion for Preliminary Settlement Approval and Class Certification.
Average Value of Private Passenger Auto Collision Claims, Statista, 2021.
F:\HKTC: REPCOSTSTLU.XLSX:SDM8:21:TLIDIN

Tab 6  Page 1

# Hypothetical Eligible Claims for Insured Assuming Total Loss

Vehicle:  2019 Kia Optima Sedan 4D SX 2.0L I4 Turbo
(Assuming Doc Fees are paid)



Vehicle:  2017 Hyundai Santa Fe Utility 4D Sport Ultimate 2.0L I4 Turbo
(Assuming no Doc Fees)



SOURCE:  The Fontana Group, Inc.
    DATA:  JD Power Internet Site, 8/2023.
           Tentative Order Regarding Motion for Preliminary Settlement Approval and Class Certification.
           Tax Foundation Facts & Figures Data Files, 2023.
           Edmunds Internet Site, 5/30/2023.
           S&P Global Mobility Vehicles in Operation Data File, 7/1/2023.
F:\HKTC:  MOD2.DOCX:21:TLHIIN

Tab 7  Page 1

# Hypothetical Eligible Claims for Insured Assuming Total Loss



Vehicle:  2019 Kia Optima Sedan 4D SX 2.0L I4 Turbo
(Assuming Doc Fees are paid and Insurance Premium Increase)



Vehicle:  2017 Hyundai Santa Fe Utility 4D Sport Ultimate 2.0L I4 Turbo
(Assuming no Doc Fees and no Insurance Premium Increase)



SOURCE: The Fontana Group, Inc.
DATA: JD Power Internet Site, 8/2023.
        Tentative Order Regarding Motion for Preliminary Settlement Approval and Class Certification.
        Tax Foundation Facts & Figures Data Files, 2023.
        Edmunds Internet Site, 5/30/2023.
        S&P Global Mobility Vehicles in Operation Data File, 7/1/2023.
F:\HKTC:  MOD3.DOCX:21:TLHIIN

Tab 7  Page 2

# Hypothetical Eligible Claims for Uninsured Assuming Total Loss and Assuming Owner Got the Vehicle Back

### Vehicle: 2013 Hyundai Elantra Coupe 2D GS 1.8L I4
(Assuming Doc Fees are Paid)



### Vehicle: 2015 Kia Forte Coupe 2D SX 1.6L I4 Turbo
(Assuming no Doc Fees)



SOURCE: The Fontana Group, Inc.
DATA:   JD Power Internet Site, 8/2023.
        Tentative Order Regarding Motion for Preliminary Settlement Approval and Class Certification.
        Tax Foundation Facts & Figures Data Files, 2023.
        Edmunds Internet Site, 5/30/2023.
        S&P Global Mobility Vehicles in Operation Data File, 7/1/2023.
F:\HKTC:  MOD4.DOCX:21:TLHIIN

Tab 7  Page 3

# Data/Documents Relied Upon

Tentative Order re Class Certification and Preliminary Settlement.

Consumer Class Plaintiffs Motion for Preliminary Approval of Class Settlement, 7/20/2023.

Declaration of Lead Counsel ISO Preliminary Approval, 7/20/2023.

Consumer Settlement Agreement, 7/20/2023.

Minute Order re Supplemental Declarations, 8/3/2023.

Joint Supplemental Declaration of Consumer Counsel ISO Preliminary Approval, 8/10/2023.

Insurer Plaintiffs' Statement re Proposed Settlement, 8/10/2023.

Government Entities Statement re Proposed Consumer Settlement Agreement, 8/10/2023.

Government Entities Statement re Proposed Consumer Settlement Agreement Cappio Declaration, 8/10/2023.

Declaration of Steven Weisbrot re Qualifications and Proposed Notice Plan, 8/11/2023.

Consumer Class Plaintiffs Response to Government Entities Statement, 8/11/2023.

Defendants' Response to Government Entities Statement and Letter from Six State Attorneys General re Proposed Consumer Settlement, 8/13/2023.

Updated Correspondence from Attorneys General, 8/14/2023.

Order re Motion for Preliminary Settlement Approval and Class Certification, 8/16/2023.

https://www.forbes.com/advisor/car-insurance/car-insurance-facts-and-statistics/

https://www.consumerreports.org/cro/2013/05/4-big-insurance-mistakes-to-avoid/index.htm

https://www.experian.com/blogs/insights/2021/06/average-vehicle-age-myth/

https://www.marketwatch.com/guides/insurance-services/what-is-a-car-insurance-deductible/

https://www.caranddriver.com/car-insurance/a35824412/average-car-insurance-deductible

https://www.statista.com/statistics/830170/collision-claim-size-for-physical-damage

https://www.forbes.com/advisor/car-insurance/comprehensive-vs-collision-auto-insurance, 8/17/2023.

https://www.nada.org/nada/issues/issues/vehicle-financing#:~:text=Every%20year%2C%20consumers%20purchase%2015,financed%2C%20often%20at%20the%20dealership

https://www.lendingtree.com/auto/debt-statistics/

https://www.jdpower.com/jd-power-pricing-and-values

https://www.edmunds.com/car-buying/what-fees-should-you-pay.html#step6

https://www.spglobal.com/mobility/en/index.html

https://cbsaustin.com/news/nation-world/wrecked-cars-and-scrap-parts-rising-in-value

Damagedcars.com

Carbrain.com

ValuePenguin.com

Tab 8  Page 1

# Data/Documents Relied Upon

S&P Global

Experian

JD Power

Insurance Industry Institute (iii)

Edmunds

Bureau of Labor Statistics

JD Power Internet Site, 8/2023.

Tentative Order Regarding Motion for Preliminary Settlement Approval and Class Certification.

Tax Foundation Facts & Figures Data Files, 2023.

Edmunds Internet Site, 5/30/2023.

S&P Global Mobility Vehicles in Operation Data File, 7/1/2023.

S&P Global Mobility Used Statewide Dealer Registration Data File, 2021 - 2022 (6/2023 Update).

Average Value of Private Passenger Auto Collision Claims, Statista, 2021.

F:\HKTC: DOCSREL.DOCX:21:TLTOIN:RTLHNIN:21

Tab 8  Page 2