UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS (KESx)　　　　　Date  November 3, 2023

Title  In Re: Kia Hyundai Vehicle Theft Litigation

---

Present: The Honorable   **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

Attorneys Present for Plaintiffs:　　　　　Attorneys Present for Defendants:

Not Present　　　　　　　　　　　　　　Not Present

**Proceedings:**　　**[IN CHAMBERS] Order Regarding Motion for Preliminary Settlement Approval [228]**

　　Consumer Class Plaintiffs[1] ("Plaintiffs") move for an order (1) preliminarily approving their class action settlement with Defendants Hyundai Motor Company ("HMC"), Hyundai Motor America ("HMA"), KIA Corporation ("KC"), and KIA America, Inc. ("KA") (collectively, "Defendants"); (2) certifying the proposed class for settlement purposes; (3) appointing Plaintiffs as the Class Representatives; (4) appointing Steve W. Berman of Hagens Berman Sobol Shapiro LLP ("Berman"), Elizabeth A. Fegan of Fegan Scott LLC ("Fegan"), Kenneth B. McClain of Humphrey Farrington & McClain, P.C. ("McClain"), and Roland Tellis of Baron & Budd, P.C. ("Tellis") as Class Counsel; (5) ordering dissemination of Settlement Notice to the Class; and (6) setting the schedule for final settlement approval.  (Mot., Dkt. No. 228.)  Defendants do not oppose the motion.  (Dkt. No. 233.)

　　For the following reasons, the Court **GRANTS** the motion for preliminary settlement approval; **CERTIFIES** the proposed Settlement Class; **APPOINTS** Plaintiffs as Class Representatives; **APPOINTS** Berman, Fegan, McClain, and Tellis as Class Counsel; and **ORDERS** dissemination of notice to the Class pursuant to the proposed notice plan.

**I. BACKGROUND**

　　The parties are familiar with the facts of this multi-district litigation, so the Court

---

[1] The eighty-five named plaintiffs identified in pages 10–194 of the consolidated Amended Class Action Complaint.  (See Dkt. No. 84 at 10–194.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 3, 2023 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

recites them here only as necessary to resolve this motion. (See Order, Dkt. No. 200.)

In its prior Order, the Court granted Plaintiffs motion for class certification and denied the motion for preliminary settlement approval. (See id.) The Court denied the motion for preliminary settlement approval for the following reasons: (1) the maximum amount a consumer could receive for a Total Loss of their vehicle was capped at $6,125 regardless of how new or old their vehicle was; (2) there was no expert testimony about the adequacy or calculation of these damages; (3) the Government Entities and Insurance Entities raised concerns about the efficacy of the Software Upgrade that is meant to prevent car thefts; (4) the settlement gave the Defendants a credit if not enough claims were filed; (5) the opt-out and objection processes were too onerous; and (6) the Release section was too broad. (Id. at 21–30.) However, the Court did find that the proposed settlement met the notice requirements under Federal Rule of Civil Procedure 23(c)(2)(B). (Id. at 30–32.)

## II. Legal Standard

Under Rule 23(e)(2) if the proposed settlement would bind class members, the Court may approve it only after a hearing and only on finding that it is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Courts reviewing class action settlements must 'ensure[] that unnamed class members are protected from unjust or unfair settlements affecting their rights,' while also accounting for 'the strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" Campbell v. Facebook, Inc., 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting In re Hyundai & Kia Fuel Econ. Litig., 926 F.3d 539, 556 (9th Cir. 2019) (en banc) (internal quotation marks omitted)).

When evaluating the fairness of a class action settlement, the Court must consider the following factors:

(A) the class representatives and class counsel have adequately represented the class;
(B) the proposal was negotiated at arm's length;
(C) the relief provided for the class is adequate, taking into account:
    (i) the costs, risks, and delay of trial and appeal;
    (ii) the effectiveness of any proposed method of distributing relief to the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 3, 2023 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

        class, including the method of processing class-member claims;
        (iii) the terms of any proposed award of attorneys' fees, including timing of payment; and
        (iv) any agreement required to be identified under Rule 23(e)(3); and
    (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

      Before the revisions to the Federal Rule of Civil Procedure 23(e), the Ninth Circuit had developed its own list of factors to be considered. See e.g., In re Bluetooth Headset Products Liab. Litig., 654 F.3d 935, 964 (9th Cir. 2011) (citing Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004)). The revised Rule 23 "directs the parties to present [their] settlement to the court in terms of [this new] shorter list of core concerns[.]" Fed. R. Civ. P. 23(e)(2), 2018 Advisory Committee Notes. "The goal of [amended Rule 23(e)] is . . . to focus the [district] court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Id.

      A "higher standard of fairness" applies when, like here, parties settle a case before the district court has formally certified a litigation class. See Campbell v. Facebook, Inc., 951 F.3d at 1121 (citing Hanlon, 150 F.3d at 1026). In such cases, "[t]he dangers of collusion between class counsel and the defendant, as well as the need for additional protections when the settlement is not negotiated by a court-designated class representative, weigh in favor of a more probing inquiry than may normally be required under Rule 23(e)." Id. (quoting Hanlon, 150 F.3d at 1026).

### III. DISCUSSION

      The Court discusses how the Amended Settlement Agreement and declarations address the Court's concerns with the prior Settlement Agreement. (See Amended Settlement Agreement ("ASA"), Dkt. No. 228, Ex. 1.)

    A.    *Absence of Class Counsel Conflicts*

      In its prior Order, the Court held that "[p]rovided Class Counsel can attest that they have no conflicts with the Class Members or Class Representatives, the Court will find

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 3, 2023 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

that no collusion occurred" under the first Rule 23(e)(2) factor. (Order at 21.) In their amended joint declaration, Class Counsel attested that they "inquired and determined that there are no known conflicts between Class Counsel and Class Members or the Class Representatives." (Amended Joint Declaration of Consumer Class Action Leadership Counsel ("Leadership Counsel Amended Decl."), Dkt. No. 228–1 ¶ 40.) Thus, the Court finds that no collusion occurred, and the first Rule 23(e)(2) factor is satisfied.

      *B.     Adjustment of Vehicle Loss Calculation*

With respect to the third Rule 23(e)(2) factor, the Court could not "conclude that the Settlement is fair and adequate based on the current arrangement." (Order at 24.) The Court took issue with the fact that the maximum reimbursement amounts for a Total Loss and a Partial Loss were capped at $6,125 and $3,375, respectively, regardless of when the Class Vehicle was manufactured between 2011 and 2022. (Id.) Thus, the Court "direct[ed] the parties to fashion a matrix for reimbursement that aligns with each Class Member's vehicle's estimated value, rather than taking an average of all vehicles and reducing it by 40%." (Id.) The Amended Settlement Agreement replaced the prior Total Loss and Partial Loss reimbursement caps. (See ASA § II.D.3.) For Total Loss, the reimbursement cap is "60% of the Black Book value of the vehicle." (ASA § II.D.3.a.) For Partial Loss, the reimbursement cap is "$3,375 or 33% of the Black Book value of the vehicle, whichever is greater." (Id. § II.D.3.b.) In response to the Court's directive to fashion a matrix, the parties agreed that "the Settlement Administrator shall use a table of Black Book values that estimates the value of the subject Class Vehicle based on model and model year" in processing claims for Total Loss. (Id. § III.C.3.) Moreover, the reimbursement for "[l]icensing fees, sales tax paid, registration fees and other expenses directly associated with the purchase of new/replacement vehicle if there was a Total Loss due to a Qualifying Theft or Qualifying Theft Attempt" was moved from "other related expenses" in § II.D.3.d to "Total Loss" in § II.D.3.a. Now, the "Black Book vehicle values in [the Total Loss] category shall include licensing fees, sales tax paid, registration fees and other expenses directly associated with the purchase of new/replacement vehicle," which increases the eligible reimbursement amount for "other related expenses." (Id. § II.D.3.a.)

      *C.     Expert Loss Calculation*

Relatedly, this Court also found that "Class Counsel are not qualified to opine on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 3, 2023 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

the amount of damages incurred by each Class Member. Such assertions require evidentiary support, which can be supplied with a supplement declaration from a competent expert." (Order at 24.) The Court thus "direct[ed] the parties to submit a declaration from a qualified expert attesting to the methods of calculating each subcategory of monetary damages in Section II.D.3" of the Settlement. (Id.) The Court also noted that "the expert should be prepared to opine on whether the amount of damages will make each Class Member whole." (Id.) In response to this Court's Order, Class Counsel submitted the declaration of Edward M. Stockton ("Stockton"). (Declaration of Edward M. Stockton ("Stockton Decl."), Dkt. No. 228, Ex. 2.) To qualify as an expert, a witness must have "knowledge, skill, experience, training, or education" relevant to such evidence or fact in issue. Fed. R. Evid. 702. It is within the trial judge's discretion to decide the qualifications of the expert on a given subject and the extent to which his opinions may be required. Fineberg v. United States, 393 F.2d 417, 421 (9th Cir. 1968). Stockton received a bachelor's degree in economics from Western Michigan University and a master's degree with a concentration in applied econometrics from the University of Arizona. (Stockton Decl. ¶ 18.) Stockton began working at The Fontana Group, Inc. in 1998. (Id.) Stockton is currently the Vice President and Director of Economics Services of Fontana, which "has extensive experience assessing economic harm to consumers from alleged product defects and misconduct." (Id. ¶ 1; see also id. ¶ 19.) Stockton also has experience working in another vehicle-related multi-district litigation, such as In Re: Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litigation, No. 8:10-ml-2151 (C.D. Cal.). (Id., Tab 1, at 14.) In preparing his declaration, Stockton reviewed the original Settlement Agreement dated July 20, 2023, the Amended Settlement Agreement, and this Court's prior Order. (Id. ¶ 3.) Specifically, Stockton reviewed the changes to the reimbursement caps for a Total Loss and a Partial Loss. (Id. ¶ 4.) Moreover, Stockton attests that his methods and analyses "are of a type reasonably relied upon by experts in the field in forming opinions or inferences on these subjects." (Id. ¶ 48.) Stockton also relied upon his "experience in other consultations in the retail automotive industry and matters relating to vehicle values, vehicle replacement cost, salvage vehicles, and various aspects of insurance coverage." (Id. ¶ 49.) Thus, the Court finds that Stockton qualifies as an expert to discuss the amount of damages incurred by Class Members under Federal Rule of Evidence 702.

According to Stockton, the changes to the Total Loss and Partial Loss reimbursement caps "are responsive to the Court's order to tie available compensation

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 3, 2023 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

amounts to vehicle value." (Id. ¶ 5.) "With respect to the change to the Total Loss compensation cap, a variable cap tied to vehicle value sets maximum eligible compensation to $5,625 (or actual costs if less than $5,625) for vehicles with values equal to or less than $9,375 ($5,625 is 60% of $9,375), which is lower than the original Proposed Settlement, and to $5,625 or higher for vehicles with values equal to or greater than $9,375." (Id.) "The modification to the Partial Loss cap can only result in payments as high or higher than those that would have existed under the original Proposed Settlement, with higher eligible payments available to claimants with higher-value vehicles." (Id.) Thus, under the Amended Settlement Agreement's Total Loss and Partial Loss payment caps, "available compensation to Class Members would depend directly upon vehicle value." (Id. ¶ 8.) Stockton "expect[s] the large majority of claimants, under the revised payment caps, to receive compensation in line with or exceeding the benchmark of 60% of their monetary losses, with some exceptions." (Id.)

With respect to the Court's directive of fashioning a matrix for reimbursement, Stockton opines that "while a matrix is useful a) to demonstrate how proposed settlement payments relate to vehicle value, and b) to assist the court in evaluating likely loss levels and payment amounts, a matrix like that in Toyota would not be needed here to determine settlement payments for damage to a Class Vehicle or damaged or lost personal property due to a qualifying event when the vehicle is not a Total Loss." (Id. ¶ 9.) However, for a Total Loss, "a table may be useful for the settlement administrator to reference in estimating clean retail values on replacement vehicle purchases of the Class Vehicle models identified in the claim form . . . ." (Id.)

In his analysis, Stockton identified several categories of potential harm suffered by Class Members who experienced qualifying events. (Id. ¶ 26.) The types of potential harm include direct vehicle replacement costs, ancillary vehicle replacement costs, probability-adjusted ancillary vehicle replacement costs, insurance deductible costs, repair costs, reclassification to salvage vehicle status, and increased insurance premiums. (Id.) Stockton also briefly summarizes the bases for cost estimates of the aforementioned types of potential harm. (Id. ¶ 43.) Stockton considered potential economic harm and eligible compensation under six scenarios. (Id. ¶ 27.) Specifically, Stockton examined Total Loss, Partial Loss, and unrecovered theft vehicle scenarios. (Id.) For each loss scenario, Stockton identified the eligible compensation for an insured and uninsured claimant. (Id.) Stockton then created summaries of exposure to economic harm in each loss scenario. (Id. ¶ 39.) Because of the many different Class Vehicles and the fact that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 3, 2023 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

any given Class Vehicle could be subject to a claim under each loss scenario, Stockton consolidated his calculations at the percentile level, "showing the expected costs that a claimant might incur given the estimated resale value at the time of the qualifying event." (Id.) As a result, Stockton found that "most insured class members are likely to receive near full compensation for their qualifying events, even based upon risk-adjusted payment amounts." (Id. ¶ 44.) Stockton opined that "[w]hile [he] do[es] not have direct information regarding the percentage of class members who carried comprehensive/collision coverage at the time of their qualifying events, under typical behaviors, it is likely that the frequency of uninsured class members was relatively low." (Id.) Thus, "if a vehicle is on the more expensive end of the spectrum, it is highly likely that the vehicle is insured." (Id.) Based on his analyses, Stockton opines that "Class Members with the most damage are eligible to receive the highest recovery, thereby tailoring recovery amounts to the specific amount of damage sustained." (Id. ¶ 47.)

        D.     *Showing Regarding Efficacy of Software Upgrade*

Following concerns raised by the Governmental Entities and comments made at the preliminary settlement approval hearing regarding the efficacy of the Software Upgrade, the Court held that the "parties should be prepared to demonstrate the technology used in the Software Upgrade through a competent expert who will explain how it works, its shortcomings, and potential solutions." (Order at 25.) In response, Defendants submitted a supplement to the preliminary settlement approval motion "to address the operation, implementation, and efficacy of the anti-theft software upgrade designed to prevent the method of theft popularized in social media channels." (Supplement, Dkt. No. 230, at 2.) Defendants also submitted the declaration of James Smith. (Declaration of James Smith ("Smith Decl."), Dkt. No. 230–1.) As previously mentioned, to qualify as an expert, a witness must have "knowledge, skill, experience, training, or education" relevant to such evidence or fact in issue. Fed. R. Evid. 702. Smith is a licensed Professional Mechanical Engineer registered in Arizona and has worked for Exponent at the Test and Engineering Center in Phoenix, Arizona since 1994. (Id. at 1.) He has conducted hundreds of full-scale automotive tests and vehicle investigations, which include determining the processes used by thieves to break into and steal vehicles. (Id.) Through his experience and training, Smith has "become very familiar with vehicle theft deterrent systems and the methods used by thieves to steal vehicles." (Id. at 1–2.) In order to conduct his review of the Software Upgrade, Smith familiarized himself "with the Hyundai/Kia ignition and theft deterrent systems and the software upgrade developed by Hyundai/Kia

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 3, 2023 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

to address the theft method." (Id. at 1.) Among other things, Smith also installed the Software Upgrade himself and performed an in-depth review of the alarm system's functionality after the Upgrade. (Id. at 7.) Thus, under Federal Rule of Evidence 702, the Court finds that Smith qualifies as an expert to attest to the Software Upgrade's efficacy.

After reviewing the social media theft method, Exponent "confirmed that under certain conditions, for Hyundai and Kia vehicles with insert-and-turn key systems, a locked vehicle could be broken into, started, and driven away." (Id. at 4.) According to Smith, the Software Upgrade fixes the problem by activating an ignition kill system when the alarm is triggered and when the alarm is armed. (Id. at 6.) Now, the burglar alarm can be armed by locking the car doors. (Id.) "With the alarm set, the vehicle cannot be started by forcibly removing the ignition lock and turning the ignition switch. Instead, the alarm will trigger, the horn will sound, and the engine will not start." (Id.) Thus, "[t]hese changes prevent a vehicle from being started when subjected to the social media theft method." (Id.)

Exponent performed about 100 tests on a 2017 Hyundai Sonata with the Software Upgrade to analyze the alarm system's functionality. (Id. at 7.) Based on the test results, "[t]he alarm system performed as expected, and the vehicle count not be started using the social media theft method when the alarm was armed." (Id.) Exponent also performed functional testing on the Software Upgrade installation of additional vehicles. (Id.) The installation was performed without any difficulties in all cases. (Id.) However, Exponent found that the Software Upgrade did not function as expected on a 2019 Kia Rio. (Id.) Upon further investigation, Exponent discovered that the Software Upgrade was properly programmed, but a single feature of the software was not turned on. (Id.) This issue has since been resolved. (Id.)

Exponent also reviewed the manufacturers' validation testing process, which required that the Software Upgrade was compatible with other vehicle functions and did not impair vehicle performance. (Id. at 8.) This validation testing "provides reasonable confidence that the software upgrade performs as intended and operates compatibly with other vehicle functions." (Id.) Exponent also performed functional testing on 19 vehicles that were used for the validation testing. (Id.) In its review, "the software upgrade was installed correctly and functioned as expected in all 19 cases." (Id.) "In all 19 cases the vehicles could not be started using the social media theft method when the alarm was armed." (Id.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS (KESx)   Date  November 3, 2023

Title  In Re: Kia Hyundai Vehicle Theft Litigation

As part of its review of the Software Upgrade's efficacy, Exponent also inspected documentation for four stolen vehicles that had the Software Upgrade installed. (Id. at 9.) Exponent determined that one vehicle had the doors unlocked, so the alarm was not armed at the time of the theft. (Id. at 11.) The two other vehicles were Kia Rios that did not have a feature of the Software Upgrade turned on by mistake. (Id. at 12–13.) According to Exponent, the last vehicle was likely "either started with a key, or not started at all and instead towed away." (Id. at 14.)

In conclusion, Exponent found that "[t]he Hyundai/Kia software upgrade is effective in preventing the social media theft method" as long as the alarm is armed. (Id. at 9.) In terms of limitations, the "software upgrade provides no additional theft deterrent if the alarm system is not armed by locking the vehicle." (Id.) Furthermore, Smith noted that the Software Upgrade is not available for the minority of Hyundai and Kia vehicles manufactured without the burglar alarm systems. (Id. at 6.)

For present purposes, the Court is satisfied with Defendants' showing regarding the efficacy of the Software Upgrade, and will not require an evidentiary hearing at this time.

E.   *Clarification of Exclusion of Governmental and Insurance Entities*

In its prior Order, the Court also "direct[ed] the parties to meet and confer regarding edits to the Settlement's phrasing such that Governmental Entities and Insurance Entities are properly excluded." (Order at 25.) The Amended Settlement Agreement added definitions for "Government Entities" and "Insurance Entities," (ASA §§ I.N.–O), which clarifies that these entities are not subject to release (Id. §§ I.CC., VI.2) and are "excluded from the Class" (Id. §§ I.E., VIII.4).

F.   *Clarification of Claim Releases*

The Court also found that "the Settlement's phrasing is ambiguous and overbroad as to which claims putative Class Members are waiving against Defendants by participating in the Settlement." (Order at 25.) Because "the Court is not prepared to require Class Members to waive all claims against Defendants that are 'related to theft of a Class Vehicle,'" the Court held that "[r]eleases should be limited to the facts of this case and should not encompass circumstances that are not addressed by the Settlement."

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 3, 2023 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

(Id.)  The Amended Settlement Agreement limits the release to claims "relating to Class Vehicles and the method of theft popularized on TikTok and other social media channels relating to the lack of engine immobilizers as alleged in this Action . . . ."  (ASA § VI.1.)

### G.   Reimbursement Methods

With respect to reimbursements, the Court "ask[ed] the parties to consider whether the methods of disbursement should be expanded to allow for direct deposits or electronic payment."  (Order at 28.)  In particular, the Court was "concerned about the possibility of checks being lost in the mail as well as the one year time limitation on the debit card option."  (Id.)  The Amended Settlement Agreement expands payment options to include digital payment via ACH, PayPal, Venmo, and Zelle, or prepaid Mastercard in addition to checks.  (ASA § III.F.)  Moreover, the Amended Settlement Agreement provides that "[a]ny balance on the prepaid Mastercard can be transferred by the card holder to their bank account at no fee."  (Id. § III.F.6.)

Having found that the parties addressed the Court's concerns with the prior settlement by submitting an Amended Settlement Agreement and expert declarations, the Court concludes that the Amended Settlement is fair and adequate under the third Rule 23(e)(2) factor.

### H.   Elimination of $10,000,000 Reversion

Under the final Rule 23(e)(2) factor, the Court was "concerned about the potential $10,000,000 reversion to the Defendants if claims do not reach $50 million."  (Order at 30.)  The Court "believes it would be fairer to Class members to provide increased payouts if this eventuality occurs without any reversion."  (Id.)  Thus, the Court held that it would not approve that provision.  (Id.)  The Amended Settlement Agreement eliminates the potential $10,000,000 reversion to Defendants.  (ASA §§ II.D.6–7, III.C.4–5, III.E.3.)  Additionally, the Court saw "no basis to require Class members seeking to opt-out of the Settlement to provide data beyond their identity and ownership of the Class Vehicle."  (Order at 30.)  The Court held that it would not approve any further requirement.  (Id.)  The Amended Settlement Agreement only requires Class members seeking to opt-out to provide their identity and ownership of the Class Vehicle. (See ASA § VIII.2–5.)  Similarly, the Court saw "no basis to require objectors to provide prior litigation history."  (Order at 30.)  The Court also held that it would not require

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 3, 2023 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

prior litigation history. (Id.) The Amended Settlement Agreement no longer requires objectors to provide prior litigation history. (See ASA § IX.2.) The Court also directed the parties to include the opt-out process in the Final Settlement Agreement. (Order at 12.) The Amended Settlement Agreement includes the opt-out process described in the Long Notice. (ASA § VIII.2–3.) Thus, the Court concludes that the Amended Settlement meets the final Rule 23(e)(2) factor.

### I. *Administrative and Other Payments*

Lastly, in its prior Order, the Court directed the parties to specify the estimated administrative costs and the amount each Class Representative would receive as a service award in the Final Settlement Agreement. (Order at 10.) The Amended Settlement Agreement specifies that any approved Class Representative will be limited to a service payment of $1,000. (ASA § V.1.) The Amended Settlement Agreement also specifies that the estimated administrative costs total $26,000,000. (Id. § II.E.)

Accordingly, the Court **GRANTS** preliminary approval of the Amended Settlement.

### IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion for preliminary settlement approval; **CERTIFIES** the proposed Settlement Class; **APPOINTS** Plaintiffs as Class Representatives; **APPOINTS** Berman, Fegan, McClain, and Tellis as Class Counsel; and **ORDERS** dissemination of notice to the Class pursuant to the proposed notice plan.

**IT IS SO ORDERED.**