UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS (KESx)                           Date    November 15, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

Present: The
Honorable              **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**      **[IN CHAMBERS] <u>Order Regarding Motion to Dismiss [217]</u>**

Defendants Hyundai Motor Company ("HMC"), Hyundai Motor America ("HMA"), KIA Corporation ("KC"), and KIA America, Inc. ("KA") (collectively, "Defendants") move to dismiss the Subrogation Plaintiffs[1] Consolidated Complaint.[2] (Mot., Dkt. No. 217.)  The Subrogation Plaintiffs opposed the motion.  (Opp'n, Dkt. No. 234.)  Defendants replied.  (Reply, Dkt. No. 250.)

For the following reasons, the Court **DENIES in part** and **GRANTS in part** the motion to dismiss with leave to amend.  Subrogation Plaintiffs shall have ten (10) days' leave to amend the Consolidated Complaint.

## I. BACKGROUND

The following allegations are taken from the Subrogation Plaintiffs' Consolidated Complaint.  (Consolidated Complaint ("Consol. Compl."), Dkt. No. 176.)  This multi-district litigation concerns Subrogation Plaintiffs' allegations that Defendants knowingly manufactured and sold more than fourteen million Hyundai and Kia Vehicles

---

[1]  "Subrogation Plaintiffs" are defined as "insurance companies with policyholders who are insured under automobile policies for Vehicles that they purchased or leased."  (Consol. Compl., Dkt. No. 176 ¶ 4.)

[2]  This Consolidated Complaint "consolidates statements and allegations previously contained within Complaints filed in this Court by two separate and distinct groups of subrogated insurance carriers."  (Consol. Compl. ¶ 5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |

| | |
|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

("the Vehicles")[3] that do not contain an engine immobilizer or any equivalent operational anti-theft equipment as required to comply with Motor Vehicle Safety Standards ("FMVSS") promulgated by the National Highway Traffic Safety Administration ("NHTSA").  (Id. ¶¶ 1, 22.)  "Specifically, design flaws in the Vehicles allow thieves to easily steal the Vehicles in seconds because the Vehicles do not contain engine immobilizers or any other comparable and effective anti-theft equipment ("Thief Friendly Design")."  (Id. ¶ 16.)  Because of Defendants failure to include an anti-theft system in the Vehicles, Subrogation Plaintiffs paid for covered damages sustained by their Insureds "as a result of theft, attempted theft, vandalism or other damage to the Vehicles arising from the Thief Friendly Design, including theft of or damage to other property, in accordance with the terms and conditions of the insurance policies."  (Id. ¶ 17.) Subrogation Plaintiffs allege that claim payments and associated adjustment expenses exceed one billion dollars.  (Id. ¶ 23.)  As a result, Subrogation Plaintiffs seek recovery of all amounts paid and to be paid to insureds and all adjustment expenses incurred in making such payments.  (Id.)

Defendants promote the safety of their vehicles on their websites.  (Id. ¶¶ 261–264.)  On each Vehicle, Defendants affixed a VIN plate containing an express warranty that each Vehicle "complies with all applicable motor vehicle safety standards." (Id. ¶ 266.)  Defendants also expressly warranted on the VIN plates "that each vehicle made by the Defendants complies with all theft prevention standards that were in effect on the date of manufacture."  (Id.)  However, Subrogation Plaintiffs allege that the "Vehicles do not contain starting systems with anti-theft features or design elements that would prevent forward self-mobility and steering when the key is removed from the starting system, as required by FMVSS 114."  (Id. ¶ 473.)

Specifically, the Vehicles did not contain an engine immobilizer.  (Id. ¶ 356.)  An engine immobilizer is an anti-theft device that can prevent vehicles from starting unless a verified code is received by a transponder module that controls the engine.  (Id. ¶ 286.) This anti-theft device prevents the vehicle from being "hotwired" or started by any means other than an authorized key.  (Id.)  Engine immobilizers are "simple and low-cost anti-theft devices" that have become an industry standard.  (Id. ¶¶ 286–287.)  For more expensive automobiles, Defendants provided anti-theft protection in the form of engine

---

[3]  The Vehicles include all 2011-2022 Hyundai and Kia vehicles manufactured without an engine immobilizer that were sold in the United States (including Puerto Rico).  (Consol. Compl. ¶ 356.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |

| | |
|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

immobilizers. (<u>Id.</u> ¶¶ 2, 301.)  For less expensive models of the Vehicles, Defendants only provided anti-theft immobilizers if the purchaser paid extra for unnecessary trim packages. (<u>Id.</u>)  Defendants did not disclose that the less expensive Vehicles "came without effective anti-theft protection." (<u>Id.</u> ¶ 2.)

Plaintiffs allege that, because of the Thief Friendly Design, there is no anti-theft feature that prevents the normal activation of the Vehicles' engine without a key. (<u>Id.</u> ¶ 304.)  Thus, the Vehicles do not comply with FMVSS No. 114. (<u>Id.</u>)  Thus, "the Vehicles do not contain starting systems that prevent forward self-mobility of the Vehicles when the thief does not have a key." (<u>Id.</u>)  The Vehicles "have always suffered from the Thief Friendly Design." (<u>Id.</u> ¶ 326.)  Beginning in 2020, a group of teenagers in Milwaukee, who dubbed themselves the "Kia Boyz," discovered the alleged Thief Friendly Design and began to post videos showing how to steal the Vehicles in a matter of seconds. (<u>Id.</u> ¶ 302.)   Shortly thereafter, thefts and attempted thefts of the Vehicles increased dramatically. (<u>Id.</u> ¶ 325.)  The Vehicles have been frequently stolen and used to commit crimes or taken for high speed "joy rides," causing injury to both people and property, sometimes resulting in death. (<u>Id.</u> ¶¶ 1006, 1878, 1982, 1999, 2016.)

Subrogation Plaintiffs assert claims under the laws of all 50 states, the District of Columbia, and Puerto Rico. (<u>Id.</u> ¶¶ 44, 121–802.)  In general, Subrogation Plaintiffs assert claims for (1) violation of state consumer protection statutes, (2) breach of implied and express warranties, (3) fraud by omission and concealment, and (4) negligence. (<u>Id.</u> ¶¶ 122–802.)

## II. LEGAL STANDARD

### A.    *Motion to Dismiss Pursuant to Rule 9(b)*

Under Federal Rule Civil Procedure 9(b), a plaintiff must plead each element of a fraud claim with particularity, <u>i.e.</u>, the plaintiff "must set forth <u>more</u> than the neutral facts necessary to identify the transaction." <u>Cooper v. Pickett</u>, 137 F.3d 616, 625 (9th Cir. 1997) (emphasis in original) (quoting <u>Decker v. GlenFed, Inc. (In re GlenFed, Inc. Sec. Litig.)</u>, 42 F.3d 1541, 1548 (9th Cir. 1994)).  A fraud claim must be accompanied by "the who, what, when, where, and how" of the fraudulent conduct charged. <u>Vess v. Ciba-Geigy Corp. USA</u>, 317 F.3d 1097, 1106 (9th Cir. 2003) (quoting <u>Cooper</u>, 137 F.3d at 627).  "A pleading is sufficient under rule 9(b) if it identifies the circumstances

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                     Date   November 15, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

constituting fraud so that a defendant can prepare an adequate answer from the allegations." Moore v. Kayport Package Express, Inc., 885 F.2d 531, 540 (9th Cir. 1989). Statements of the time, place, and nature of the alleged fraudulent activities are sufficient, but mere conclusory allegations of fraud are not. Id. Furthermore, though allegations based on information and belief are usually insufficient, in circumstances of corporate fraud, this rule may be relaxed as to matters within the opposing party's knowledge. Id.

B.     *Motion to Dismiss Pursuant to Rule 12(b)(2)*

Personal jurisdiction refers to a court's power to render a valid and enforceable judgment against a particular defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); Pennoyer v. Neff, 95 U.S. 714, 720 (1877), overruled in part by Shaffer v. Heitner, 433 U.S. 186, 206 (1977). The contours of that power are shaped, in large part, by the Due Process Clause of the Fourteenth Amendment, which requires sufficient "contacts, ties, or relations" between the defendant and the forum state before "mak[ing] binding a judgment *in personam* against an individual or corporate defendant." Int'l Shoe Co. v. Washington, 326 U.S. 310, 319 (1945). Due Process requires that "there exist 'minimum contacts' between the defendant and the forum" in order to protect the defendant "against the burdens of litigating in a distant or inconvenient" court and lend "a degree of predictability to the legal system." World-Wide Volkswagen, 444 U.S. at 291, 292, 297.

Jurisdiction must also comport with law of the forum state. See Fed. R. Civ. P. 4(k)(1)(A); Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc). Because California's long-arm statute allows the exercise of jurisdiction on any basis consistent with the state and federal constitutions, the jurisdictional analyses of state law and federal due process are the same. Cal. Code. Civ. Proc. § 410.10; see also Yahoo!, 433 F.3d at 1205.

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal based on a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015). "In the absence of an evidentiary hearing, [h]owever, this demonstration requires that the plaintiff make only a prima facie showing of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

jurisdictional facts to withstand the motion to dismiss." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001).

A plaintiff may not simply rest on the "bare allegations of [the] complaint." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.2004) (quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977)). Courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). "[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1207 (9th Cir. 2020). "But uncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" Ranza, 793 F.3d at 1068 (quoting Schwarzenegger, 374 F.3d at 800).

Personal jurisdiction may be premised on general personal jurisdiction (based on a defendant's continuous presence in a state) or specific personal jurisdiction (based on specific contacts with the state specifically related to the claims at issue).

C.    *Motion to Dismiss Pursuant to Rule 12(b)(6)*

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted. A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach. First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678-80 (quoting Twombly, 550 U.S. at 555). Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   November 15, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

entitlement to relief." Id. at 679.  This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## III. DISCUSSION

### A.   Request for Judicial Notice

Defendants filed a request for judicial notice ("RJN") in support of their motion. (RJN, Dkt. No. 218.)  Subrogation Plaintiffs opposed the RJN.  (Opp'n to RJN, Dkt. No. 236.)  Defendants replied.  (Reply to RJN, Dkt. No. 251.) Specifically, Defendants seeks judicial notice of the following:

1.   April 20, 2023 Letter from 18 Attorneys General, led by California Attorney General Rob Bonta, to Ann Carlson, the Acting Administrator of the NHTSA
2.   June 5, 2023 Letter from Cem Hatipoglu, NHTSA Acting Associate Administrator for Enforcement, to Attorney General Bonta
3.   NHTSA document titled "Laboratory Test Procedure for FMVSS 114: Theft Protection and Rollway Prevention"

Because factual challenges have no bearing under Rule 12(b)(6), generally, the Court may not consider material beyond the pleadings in ruling on a motion to dismiss. Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001), overruled on other grounds Galbraith v. Cnty. of Santa Clara, 307 F. 3d 1119, 1125 (9th Cir. 2002). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of matters of public record, but it "cannot take judicial notice of disputed facts contained in such public records." Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018), cert. denied sub nom. Hagan v. Khoja, 139 S. Ct. 2615, 204 L. Ed. 2d 264 (2019) (citing Lee, 250 F.3d at 689); see Fed. R. Evid. 201(b).  Courts frequently take judicial notice of government records and documents, including NHTSA documents.  See, e.g., Smith v. L.A. Unified Sch. Dist., 830 F.3d 843, 851 n.10 (9th Cir. 2016) ("[C]ourts routinely take judicial notice of letters published by the government . . . as well as records and reports of administrative bodies." (internal quotation marks and citation omitted)); In re ZF-TRW Airbag Control Units Prod. Liab. Litig., 601 F. Supp. 3d 625, 689 (C.D. Cal.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

2022) (taking judicial notice of NHTSA document); In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Pracs. & Prod. Liab. Litig., 890 F. Supp. 2d 1210, 1216 n.5 (C.D. Cal. 2011) (taking judicial notice of quarterly reports to NHTSA).  The Court **GRANTS** Defendants' request to take judicial notice of all three exhibits.  However, Subrogation Plaintiffs dispute the facts contained in exhibits 1 and 2.  (Opp'n to RJN, at 3–6.)  Thus, the Court's judicial notice of exhibits 1 and 2 only extends to the existence of the documents, and not the truth of the matters asserted therein.  See Lee, 250 F.3d at 689–90; Khoja., 899 F.3d at 999 ("Just because [a] document itself is susceptible to judicial notice does not mean that every assertion of fact within that document is judicially noticeable for its truth.").

B.    *Preemption*

Defendants argue that Subrogation Plaintiffs' claims are preempted because their "claims all seek to impose a duty on Defendants to protect against car theft using one specific technology–engine immobilizers."  (Mot. at 33.)  Defendants argue that such a "narrow mandate would undercut the flexibility provided by the federal theft-prevention standard, FMVSS 114, which gives manufacturers the option to select any anti-theft technology meeting certain criteria."  (Id.)  As Defendants assert, Subrogation Plaintiffs acknowledge that "[i]n the fifty years following the codification of FMVSS No. 114, manufacturers have developed a bevy of safety features to comply with the standard." (Id.; Consol. Compl. ¶ 285.)  Moreover, Defendants argue that the "NHTSA has made clear that an immobilizer is only one possible method of compliance with FMVSS 114." (Mot. at 33; see also Consol. Compl. ¶ 293 ("[I]n promulgating FMVSS No. 114, the agency expressed concern about car thieves who could bypass the ignition lock.  In response to this concern, the agency decided to require a device, which would prevent either self-mobility or steering even if the ignition lock were bypassed."  (quoting 71 Fed. Reg. 17,752, 17,753)).)  Thus, Defendants argue that federal law impliedly preempts Subrogation Plaintiffs' attempt to impose a narrower engine-immobilizer requirement that would interfere with the NHTSA's goal to encourage innovation and flexibility. (Mot. at 34.)

However, as Subrogation Plaintiffs point out, "Defendants ignore Plaintiffs' allegations throughout the Complaint that 'the Defective Vehicles lacked any anti-theft features or design elements to satisfy FMVSS 114, or otherwise provide an adequate theft deterrent.'"  (Opp'n at 33; Consol. Compl. ¶ 526.)  While Subrogation Plaintiffs allege

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     8:22-ml-03052-JVS (KESx)                Date    November 15, 2023

Title        In Re: Kia Hyundai Vehicle Theft Litigation

that engine immobilizers have become the most common form of compliance with FMVSS No. 114, they adequately allege that Defendants had the option under FMVSS No. 114 to use other equally effective anti-theft equipment but failed to do so. (See, e.g., Consol. Compl. ¶ 304 ("The Vehicles do not comply with FMVSS No. 114 because they do not contain a meaningful anti-theft device, such as an immobilizer or any other effective anti-theft features that prevent the normal activation of the vehicle's engine without a key. Consequently, the Vehicles do not contain starting systems that prevent forward self-mobility of the Vehicles when the thief does not have a key. . . . Failing to install an immobilizer, or any comparable method of compliance with FMVSS No. 114, meant that vehicle owners could not be sure that their vehicles would be safe, undamaged or available to them when required for transport."); see also id. ¶ 1 ("Defendants manufactured and sold approximately 14.3 million vehicles, including certain 2011-2022 Kia vehicles and 2011-2022 Hyundai vehicles, that do not contain an engine immobilizer, or any equivalent operational anti-theft equipment required by federal law and mandated by industry standards of care."); id. ¶ 16 ("Specifically, design flaws in the Vehicles allow thieves to easily steal the Vehicles in seconds because the Vehicles do not contain engine immobilizers or any other comparable and effective anti-theft equipment. These flaws are collectively referred to herein as the 'Thief Friendly Design.'"); id. ¶¶ 569, 728 ("[T]he Vehicles contained the Thief Friendly Design, lacked any anti-theft features or design elements to provide an adequate theft deterrent, or otherwise failed to satisfy FMVSS 114, resulting in a substantial safety hazard . . . ."); id. ¶¶ 794, 923 ("[T]he Vehicles were plagued by the Theft Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114 . . . .").)

Subrogation Plaintiffs claim that Defendants had provided anti-theft protection and thus complied with FMVSS No. 114 "in the form of [engine] immobilizers for more expensive automobiles." (Id. ¶ 2.) But for less expensive models, Defendants did not provide an engine immobilizer, which was how they complied with FMVSS No. 114. (Id.) Thus, Subrogation Plaintiffs argue that by failing to provide certain Vehicles with an engine immobilizer or any other anti-theft device, Defendants violated federal regulations. (Opp'n at 35.) Nor do Defendants argue that they complied with FMVSS No. 114 by equipping the Vehicles with any other anti-theft device. (See generally Mot.; Reply.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

Defendants cite <u>Geier v. American Honda Motor Co.</u>, 529 U.S. 861 (2000) and <u>Williamson v. Mazda Motor Co. of America</u>, 562 U.S. 323 (2011) to support of their position. However, both cases are inapposite. As Defendants state, in <u>Geier</u>, the Supreme Court held that "[i]n effect, petitioners' tort action depends upon its claim that manufacturers had a duty to install an airbag when they manufactured the 1987 Honda Accord. Such a state law–<u>i.e.</u>, a rule of state tort law imposing such a duty–by its terms would have required manufacturers of all similar cars to install airbags rather than other passive restraint systems, such as automatic belts or passive interiors. It thereby would have presented an obstacle to the variety and mix of devices that the federal regulation sought." 529 U.S. at 881. Similarly, in <u>Williamson</u>, the Supreme Court held that the regulation left manufacturers a choice, and the tort suit would restrict that choice. 562 U.S. at 332. Unlike <u>Geier</u> and <u>Williamson</u>, Subrogation Plaintiffs allege that there is no compliance at all with FMVSS No. 114. (<u>See, e.g.</u>, Consol. Compl. ¶¶ 1, 16, 304, 564, 794.) The other cases that Defendants cite in their Motion are inapposite for similar reasons. <u>See, e.g.</u>, <u>Priester v. Cromer</u>, 401 S.C. 38 (2012) (alleging that a state tort rule required automobile manufacturers to use only laminated glass); <u>Soliman v. Daimler AG</u>, No. 10-408, 2011 U.S. Dist. LEXIS 112599 (E.D.N.Y. Sept. 29, 2011) (alleging a state tort duty to anchor seatbelts to automobile frames); <u>Morris v. Mitsubishi Motors N. Am., Inc.</u>, 782 F. Supp. 2d 1149 (E.D. Wash. 2011) (alleging a state tort claim requiring airbag warnings beyond those required by FMVSS 208).

Accordingly, Subrogation Plaintiffs' claims are not preempted.

C. *Motion to Dismiss Pursuant to Rule 12(b)(6)*

1. <u>Whether Subrogation Plaintiffs Sufficiently Plead a Subrogation Claim</u>

Defendants argue that "Subrogation Plaintiffs have failed to (1) identify the insureds on whose behalf they are seeking to recover; (2) allege facts supporting the claims of each of those insureds; and (3) allege facts supporting their basis to recover for each insured in subrogation." (Mot. at 16.)

An insurer bringing an action based upon a claim of equitable subrogation must establish the following elements: (1) The insured has suffered a loss for which the party to be charged is liable, either

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS (KESx)                    Date    November 15, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

> because the latter is a wrongdoer whose act or omission caused the loss or because he is legally responsible to the insured for the loss caused by the wrongdoer; (2) the insurer, in whole or in part, has compensated the insured for the same loss for which the party to be charged is liable; (3) the insured has an existing, assignable cause of action against the party to be charged, which action the insured could have asserted for his own benefit had he not been compensated for his loss by the insurer; (4) the insurer has suffered damages caused by the act or omission upon which the liability of the party to be charged depends; (5) justice requires that the loss should be entirely shifted from the insurer to the party to be charged, whose equitable position is inferior to that of the insurer; and (6) the insurer's damages are in a stated sum, usually the amount it has paid to its insured, assuming the payment was not voluntary and was reasonable.

Dobbas v. Vitas, 191 Cal. App. 4th 1442, 1449-50 (2011) (internal quotation marks and citation omitted).[4] Because "[t]he right of subrogation is purely derivative," "[a]n insurer entitled to subrogation is in the same position as an assignee of the insured's claim, and succeeds only to the rights of the insured." Fireman's Fund Ins. Co. v. Maryland Casualty Co., 65 Cal. App. 4th 1279, 1292 (1998); see also Western Heritage Ins. Co. v. Frances Todd, Inc., 33 Cal. App. 5th 976, 984 (2019). Thus, "[s]ubrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's right against a third party." US Airways, Inc v. McCutchen, 569 U.S. 88, 97 n.5 (2013) (citation omitted); see also Fireman's Fund Ins. Co., 65 Cal. 4th at 1292. Thus, the subrogated insurer "has no greater rights than the insured and is subject to the same defenses assertable against the insured. Thus, an insurer cannot acquire by subrogation anything to which the insured has no rights, and may claim no rights which the insured does not have." Fireman's Fund Ins. Co., 65 Cal. App. 4th at 1292. Subrogation Plaintiffs claim that they "equitably and contractually subrogated to the rights of their Insureds to recover compensation from the Defendants who are legally liable for having caused the Plaintiffs' damages." (Consol. Compl. ¶¶ 17,

---

[4] "Equitable subrogation is a doctrine governed by state law." In re Hamada, 291 F.3d 645, 651 (9th Cir. 2002). Because Subrogation Plaintiffs do not contest the application of California law, (see generally Opp'n), the Court applies California law for the purposes of this Motion.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

23.) Thus, Subrogation Plaintiffs stand in the shoes of the insureds and, therefore, bring the insureds' claims for all amounts paid to insureds based on Defendants' Thief Friendly Design.

Defendants argue that Subrogation Plaintiffs' claims should be dismissed because they fail to properly plead a claim for subrogation. Subrogation Plaintiffs contend that their Consolidated Complaint pleads each of the six elements identified by Defendants as necessary to state a subrogation claim.[5] (Opp'n at 13.) Specifically, Subrogation Plaintiffs allege that "[t]heir insureds suffered losses as a result of Defendants' acts and omissions;" "[t]hey compensated their insureds for the damages suffered as a result of Defendants' conduct"; "[t]heir insureds could have pursued a cause of action against Defendants in the absence of Plaintiffs' insurance payments;" "Plaintiffs have suffered damages as a result of Defendant's acts and omissions;" "Defendants are responsible for the insureds' losses placing them in an inferior equitable position;" and Subrogation Plaintiffs "have paid, and continue to pay, actual sums to their insureds on a non-voluntary basis consistent with the terms [and] conditions of their insurance policies." (Id. at 13–14.) The Court finds that Subrogation Plaintiffs have sufficiently pled all elements of a subrogation claim. (See Consol. Compl. ¶¶ 4, 17, 22, 23, 439, 786, 988.) In the Consolidated Complaint, Subrogation Plaintiffs allege that the Vehicles did not have any anti-theft device, which resulted in "the theft of vehicles, attempted theft of vehicles, damages to vehicles, [and] loss or damage to other property" from the loss of use of their Vehicles. (Id. ¶ 22.) The 841-page Consolidated Complaint sufficiently discusses general anti-theft equipment, engine immobilizers, and Defendants' knowledge and misrepresentations concerning anti-theft equipment in their Vehicles. (See generally Consol. Compl.) Additionally, Subrogation Plaintiffs allege that the insureds would not have bought or leased the Vehicles if they knew of the Thief Friendly Design. (Id. ¶ 346.) Subrogation Plaintiffs "have and/or will pay policy proceeds to their respective Insureds pursuant to their policies of insurance. Such payments include, but are not limited to, damages incurred because of the theft of vehicles, attempted theft of vehicles, damage to vehicles, loss or damage to other property, and economic losses from loss of

---

[5] Subrogation Plaintiffs admit that they "stand in the shoes of their insureds, as alleged." (Opp'n at 30.) Subrogation Plaintiffs, "suing in their own names, are pursuing the claims which Plaintiffs have acquired from their respective insureds, both as alleged and allowed by law." (Id. (citing Fireman's Fund Ins. Co., 65 Cal. App. 4th 1279).) Subrogation Plaintiffs further admit that they "are not asserting any claims on their own behalf in parallel to this subrogation action." (Id. at 17.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS (KESx)                    Date    November 15, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

use of vehicles."  (Id. ¶ 22.)  Specifically, Subrogation Plaintiffs allege that they made
claim payments and associated adjustment expenses "in an amount exceeding one billion
dollars ($1,000,000,000+)."  (Id. ¶ 23.)

    Moreover, the Court disagrees with Defendants that Subrogation Plaintiffs must
identify *every* insured on whose behalf they are seeking to recover or allege facts
supporting the claims of *each* of those insureds at this stage of the litigation.  All that
information is appropriately suited for discovery.  The out-of-circuit cases that
Defendants cite to support their position are unavailing.  In Blue Cross & Blue Shield of
New Jersey Inc. v. Philip Morris USA Inc., the case proceeded to a jury trial, but the
plaintiff "never identified the actual number of subrogors or their names, much less
provided any individualized information about the claims to which [plaintiff] alleged it
was subrogated.  In addition, defendants were not permitted to obtain individual
discovery about any such claims."  344 F.3d 211, 217–18 (2d Cir. 2003).  That is not the
case here.  This multi-district litigation is still in its initial phase of litigation, and
discovery has yet to begin.  The two state trial-court decisions that Defendants also cite
are factually distinguishable.  Both cases dealt with the fact that information about
nicotine was widespread for decades, so the facts of the case depended on the
individualized inquiry into whether each participant was nicotine dependent and relied on
defendants' misrepresentations.  See E. States Health & Welfare Fund v. Philip Morris,
Inc., 188 Misc. 2d 638, 653 (N.Y. Sup. Ct. 2000); A.O. Fox Mem'l Hosp. v. Am.
Tobacco Co., 302 A.D.2d 413, 414 (N.Y. App. Div. 2003).  That is not an issue here.
The harm resulting from the Thief Friendly Design is not too remote to permit recovery.
As the 841-page Consolidated Complaint alleges, failure to include any federally required
anti-theft device in the Vehicles caused theft or damage to the Vehicles.  (See generally
Consol. Compl.)  No individualized inquiry into each insured is necessary to determine
reliance at this point in the litigation.  Thus, the Court finds that the Subrogation
Plaintiffs do not need to plead individual facts for each insured to survive a motion to
dismiss.

    Accordingly, the Court finds that Subrogation Plaintiffs have sufficiently pled a
subrogation claim.

        2.    Whether Subrogation Plaintiffs Sufficiently Plead Reliance

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   November 15, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

Defendants argue that Subrogation Plaintiffs cannot state their fraud, negligent
misrepresentation, and consumer protection claims because those claims require
allegations of reliance.[6] (Mot. at 19.)  Because the "Subrogation Plaintiffs do not plead
that any individual insured relied on any particular representations," Defendants contend
that Subrogation Plaintiffs do not sufficiently plead those claims.  (Id. at 20.)
Subrogation Plaintiffs argue that they have sufficiently pled reliance.  (Opp'n at 24.)  The
Court agrees.  Throughout their 841-page Consolidated Complaint, Subrogation Plaintiffs
plead how the insureds relied on Defendants' omissions regarding an anti-theft device in
the Vehicles.  (Consol. Compl. ¶¶ 261–264, 462 (alleging that Defendants state on their
websites that they work to ensure that their Vehicles are safe); id. ¶¶ 32, 265 (stating that
warranty and consumer information manuals and other promotional materials promote
Defendants' Vehicles safety); id. ¶ 266 ("Defendants also affix to each Vehicle a VIN
plate containing an express warranty that each vehicle made by the defendants 'complies
with all applicable motor vehicle safety standards.'  In addition, Defendants expressly
warranted on the VIN plates affixed to each vehicle, and in other communications, that
each vehicle made by the Defendants complies with all theft prevention standards that
were in effect on the date of manufacture.  On information and belief, the Defendants
extended these express warranties for every Vehicle."); id. ¶ 511 ("Defendants intended
for the Insureds to rely on their misstatements and omissions regarding the Vehicles'
failure to comply with relevant and applicable safety and anti-theft standards."); id. ¶ 396
("Plaintiffs' Insureds relied on the existence of Defendants' implied warranties while
deciding whether to purchase or lease the Vehicles."); id. ¶ 463 ("Plaintiffs' Insureds,
relied on Defendants' material misrepresentations and omissions regarding the features of
the Vehicles.") id. ¶¶ 492, 516 ("Had the Insureds known of the serious safety risks and
the defects in the Vehicles, it is reasonably likely they would not have purchased the
Vehicles, and if purchased, could have taken action to frustrate the likelihood of theft.")
id. ¶ 512 ("Plaintiffs' Insureds did in fact rely on Defendants' statements and omissions
at the time they agreed to purchase and/or lease the Vehicles.").)  Thus, taking the

---

[6] Defendants also argue that Subrogation Plaintiffs are unable to plead their consumer fraud
claims because they "have already alleged that their insureds had the option of purchasing or leasing Kia
and Hyundai vehicles with immobilizers."  (Mot. at 23.)  Thus, Defendants contend that Subrogation
Plaintiffs "cannot claim that the Vehicles are defective because they lack a feature the insureds did not
choose."  (Id.)  But Defendants' argument is unavailing.  Subrogation Plaintiffs do not allege that they
wanted a safer design in the abstract.  Rather, Subrogation Plaintiffs allege that the Vehicles failed to
have any anti-theft device in violation of federal regulations.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS (KESx)          Date   November 15, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

allegations as true, the Consolidated Complaint sufficiently alleges that Defendants omitted or misrepresented the safety of the Vehicles and compliance with theft prevention standards, and insureds reasonably relied on such omissions or misrepresentations when purchasing the Vehicles. Moreover, as previously mentioned above, Subrogation Plaintiffs do not need to plead *each* individual insured's specific reliance on Defendants' misrepresentations at this stage of the litigation.[7]

Accordingly, the Court finds that Subrogation Plaintiffs have sufficiently pled reliance.

### 3.    Whether Subrogation Plaintiffs Sufficiently Plead Causation

Defendants argue that "[w]ithout alleging any facts regarding the circumstances of the alleged theft of each insured's Vehicle, the Subrogation Plaintiffs do not sufficiently plead any causal relationship between the thefts and the alleged defect in the insureds' Vehicles." (Mot. at 20–21.) But throughout their Consolidated Complaint, Subrogation Plaintiffs plead that the Vehicles, which were not equipped with any theft-prevention device, were stolen, vandalized, or damaged because the Vehicles could be started without a key. (See Consol. Compl. ¶¶ 4, 14, 17, 22, 302–304, 401, 410, 415, 418, 432.) The Court thus finds that Subrogation Plaintiffs have sufficiently pled that the lack of any anti-theft device in the Vehicles caused the insureds' Vehicles to be stolen or damaged.

However, Defendants also assert that because vehicles can be stolen in many ways, the fact that insureds' Vehicles were stolen, vandalized, or damaged does not

---

[7] Defendants also argue that "[b]ecause the Subrogation Plaintiffs do not allege that they compensated their insureds for losses caused by alleged misrepresentations/omissions, they cannot bring misrepresentation- and omission-based claims in subrogation." (Mot. at 29.) But Defendants misunderstand the principles of a subrogation claim. As stated above, "[s]ubrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's right against a third party." US Airways, Inc., 569 U.S. at 97 n.5 (citation omitted); see also Fireman's Fund Ins. Co., 65 Cal. App. 4th at 1292. Thus, because Subrogation Plaintiffs "stand in the shoes" of the insureds, they can bring the same claims that the insureds would be able to bring, which includes misrepresentation- and omission-based claims. The California cases that Defendants rely on to support their assertion concern antitrust claims, and Patent Scaffolding Co. v. William Simpson Constr. Co., 256 Cal. App. 2d 506, 512 (1967) dealt with a breach of contract claim. This case does not involve any such claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |

| | |
|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

"automatically mean that the vehicle was stolen in the particular theft method alleged here, which references the 'Kia Boyz' social media challenge." (Mot. at 21.) Specifically, Defendants contend that "[c]riminals can steal vehicles, including vehicles with immobilizers, by different methods such as towing the vehicles away, taking the vehicles away by flatbed truck, using keys left in or near the vehicles, and so on." (Id. at 21.) But "where an intervening act by a third party was foreseeable, it does not amount to a superseding cause relieving the negligent defendant of liability." Ileto v. Glock Inc., 349 F.3d 1191, 1208 (9th Cir. 2003). Subrogation Plaintiffs argue that it was reasonably foreseeable that the insureds' Vehicles would be stolen because there was no theft-prevention device. (Opp'n at 32.) Subrogation Plaintiffs contend that the "thefts were a predictable consequence of Defendants' actions and omissions." (Id.) The Consolidated Complaint supports their position. In the Consolidated Complaint, Subrogation Plaintiffs allege that the "Vehicles do not contain starting systems with anti-theft features or design elements that would prevent forward self-mobility and steering when the key is removed from the starting system, as required by FMVSS 114." (Consol. Compl. ¶ 473.) Subrogation Plaintiffs also allege that FMVSS No. 114 was specifically promulgated due to NHTSA's "concern about car thieves who could bypass the ignition lock." (Id. ¶ 293.) Without the anti-theft device, the Vehicles could start without an authorized key. Thus, it was reasonably foreseeable that if Defendants did not comply with FMVSS No. 114 by having a theft-protective device in their Vehicles, people would steal the cars because a key was not needed. As the California Supreme Court has stated, "under section 449 of the Restatement Second of Torts . . . foreseeability may arise directly from the risk created by the original act of negligence." Ileto, 349 F.3d at 1209 (quoting Landeros v. Flood, 17 Cal. 3d 399, 411 (1976)); see also Ileto, 349 F.3d at 1208 ("[T]he fact that there was an intervening act by [thieves] is not fatal to the plaintiffs' claim on a Rule 12(b)(6) motion.").

The Court acknowledges that actual causation in this case is a close question. For pleading purposes, the Court finds that Subrogation Plaintiffs have alleged sufficient facts to establish causation. In an effort to advance the disposition of the case, the Court orders the Subrogation Plaintiffs to attach to their amended complaint the current spreadsheets containing claims data for thefts and attempted thefts of the Vehicles to Defendants.[8]

---

[8] The spreadsheets may be filed under seal without further order of the Court.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)               Date   November 15, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

    4.    Whether the Economic Loss Doctrine Bars Subrogation Plaintiffs'
          Tort Claims

         Defendants argue that the economic loss rule bars Subrogation Plaintiffs' tort claims. (Mot. at 22.) "[T]he economic loss rule allows a plaintiff to recover in strict products liability in tort when a product defect causes damage to other property, that is, property *other than the product itself*." Jimenez v. Superior Court, 29 Cal. 4th 473, 483 (2002) (emphasis in original) (internal quotation marks omitted).  To support their argument, Defendants rely on one out-of-circuit, unpublished district court case.  See Feliciano v. Gen. Motors LLC, No. 14-civ-6374, 2016 U.S. Dist. LEXIS 194728 (S.D.N.Y. Mar. 31, 2016).  In Feliciano, "Plaintiffs seek recovery for economic loss related to the value of their vehicle and breach of contract, but do not claim entitlement to damages for personal injury related to the defect."  2016 U.S. Dist. LEXIS 194728, at *17.  But in this case, Subrogation Plaintiffs do allege that Defendants' Vehicles caused damage to property other than the Vehicles themselves. (Consol. Compl. ¶ 17 ("Due to the Defendants' failure to include the required anti-theft system in the Vehicles, Plaintiffs paid for covered damages sustained by Plaintiffs' Insureds as a result of theft, attempted theft, vandalism or other damage to the Vehicles arising from the Thief Friendly Design, including theft of or damage to other property . . . ."); id. ¶ 22 ("[P]ayments include, but are not limited to, damages incurred because of the theft of vehicles, attempted theft of vehicles, damage to vehicles, loss or damage to other property . . . .").)  Defendants maintain that "Subrogation Plaintiffs' allegation that their 'payments include 'loss or damage to other property' is a conclusory allegation without any facts supporting its plausibility." (Reply at 13.)  But Defendants ignore the other allegations that Subrogation Plaintiffs make in their 841-page Consolidated Complaint showing how Defendants failure to include an anti-theft device can cause personal injury and damage to other property.  (See Consol. Compl. ¶¶ 12–16, 268–273, 300–304, 313–314.)  Thus, contrary to Defendants' argument, Subrogation Plaintiffs do allege that the Thief Friendly Design has caused the loss or damage of insureds' other property.

         Accordingly, Subrogation Plaintiffs' tort claims are not barred by the economic loss rule.

    5.    Whether the Equities Weigh Against Subrogation Plaintiffs

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

Defendants argue that Subrogation Plaintiffs' claims are barred by the superior equities doctrine.  (Mot. at 25.)  "While the insurer by subrogation steps into the shoes of the insured, that substitute position is qualified by a number of equitable principles. . . . The most restrictive principle is the doctrine of superior equities, which prevents an insurer from recovering against a party whose equities are equal or superior to those of the insurer.  The requirement that an insurer demonstrate superior equities to those of any third party from whom it seeks recovery in a subrogation action derives in part from the fact that the insurer has been paid a premium to assume the risk of loss."  Sompo Japan Ins. Co. of Am. v. Action Express, LLC, 19 F. Supp. 3d 954, 958 (C.D. Cal. May 14, 2014) (internal citation omitted).

Defendants claim that "[b]ecause 'insurers, being in the insurance business, are in a position effectively to spread the risk and to gauge their premiums upon their loss experience' to bring a subrogation claim, their equities must be superior to those of the third-party defendant."  (Mot. at 25 (quoting Patent Scaffolding Co. v. William Simpson Constr. Co., 256 Cal. App. 2d 506, 516 (1967)).)  However, in Patent Scaffolding Co., the court reasoned that "[u]pon the facts in this case no public policy is perceivably served by shifting the entire loss from the insurers to [defendant].  The shifting of loss is not a deterrent to wrongdoing, as it may be in cases permitting subrogation against a tortfeasor."  256 Cal. App. 2d at 515.  Unlike in Patent Scaffolding Co., the shifting of loss in this case would serve as a deterrent to wrongdoing by failing to provide any anti-theft device in Vehicles.  Moreover, Patent Scaffolding Co. concerned only a contract. This case asserts claims for violation of state consumer protection statutes, breach of implied and express warranties, fraud by omission and concealment, and negligence. Defendants rely on two other distinguishable cases.  See Meyers v. Bank of America Nat'l Trust & Sav. Ass'n, 11 Cal. 2d 92 (1938); Fireman's Fund Ins. Co. v. Morse Signal Devices, 151 Cal. App. 3d 681 (1984).[9]  In State Farm General Ins. Co. v. Wells Fargo Bank, N.A., the court distinguished both of those cases because "the defendants' duty to

---

[9] These cases are also distinguishable for other reasons.  In Patent Scaffolding Co., the defendant's "failure to perform its contractual duty had nothing to do with the fire."  256 Cal. App. 2d at 512.  In Meyers, the defendant bank was not a wrongdoer and "received no benefits."  11 Cal. 2d at 102–03.  In Fireman's Fund Ins. Co., the insured and defendant contractually waived the defendant's liability and specifically contracted that "[i]nsurance, if any, will be obtained by the Subscriber."  151 Cal. App. 3d at 685.  Here, Subrogation Plaintiffs allege that Defendants' conduct caused their losses, they paid insureds for damages resulting from the theft, and they did not waive Defendants' liability. (Consol. Compl. ¶¶ 17, 22, 23.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |
|----------|--------------------------|------|-------------------|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|-------|---------------------------------------------|

the insureds [in those cases] was contractual in nature, and as such the tort theory of negligence was implicitly not at issue." 143 Cal. App. 4th 1098, 1116 (2006). Moreover, the court in State Farm General Ins. Co. noted that "the fact that an insurer has been compensated for its risk does not, in and of itself, swing the balance in favor of a third party." Id. at 1110. Instead, "compensation is a fact to be considered, it is no more than that." Id. (internal quotation marks omitted). "The extent to which compensation is considered depends on the level of fault of the third party. In other words, where the third party is clearly at fault, the fact that the insurer has been compensated is of little consequence." Id. at 1111. Even though Subrogation Plaintiffs have received premiums, Defendants allegedly failed to include any anti-theft device as required under federal regulations. Thus, the level of fault is almost entirely on the Defendants, as they decided whether the Vehicles included an anti-theft device. See Valley Crest Landscape Dev., Inc. v. Mission Pools of Escondido, Inc., 238 Cal. App. 4th 468, 491 (2015) ("Age and subsequent appellate court opinions have not been kind to Patent Scaffolding. The better policy . . . is to permit subrogation for an insurer that fulfilled its contractual obligations, even if the result was a windfall for the insurer. To whatever extent Patent Scaffolding might be relevant here, we decline to follow it." (internal citation omitted)).

Accordingly, the Court finds that the doctrine of superior equities does not apply.

Defendants further argue that Subrogation Plaintiffs' claims fail under other equitable doctrines. (Mot. at 28.) First, Defendants claim that laches is applicable in this case. (Id.) To prevail on a laches defense, "the defendant must show (1) unreasonable delay; and (2) either acquiescence in the act about which plaintiff complains or prejudice to the defendant resulting from the delay." Julian Volunteer Fire Co. Ass'n v. Julian-Cuyamaca Fire Prot. Dist., 62 Cal. App. 5th 583, 602 (2021) (internal quotation marks and citation omitted). "The defendant has the burden to prove both elements of the laches defense." Id. Defendants argue that because of the "publicly available information" of the high theft rates for the Vehicles, "it is implausible for [Subrogation Plaintiffs] to allege they could not determine the Vehicles lacked immobilizers." (Mot. at 28.) Since Subrogation Plaintiffs continued to insure the Vehicles, Defendants argue that Subrogation Plaintiffs unreasonably delayed in bringing the action and acquiesced in the decision. (Id.) Subrogation Plaintiffs contend that their "actions or knowledge are not relevant in the context of a subrogation claim." (Opp'n at 31.) The Court agrees. As explained above, Subrogation Plaintiffs "stand in the shoes of their insureds," so only the insureds' actions or knowledge are relevant. None of the facts alleged in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

Consolidated Complaint show that there was unreasonable delay or acquiescence in the act by the insureds.  (See generally Consol. Compl.)  In fact, the Consolidated Complaint alleges that "[t]he Plaintiffs' Insureds were unaware of the Thief Friendly Design and could not reasonably be expected to discover it on their own with the normal prudence of a reasonable consumer, given the technical and hidden nature of the defect."  (Id. ¶ 1881.) Thus, taking the allegations in the Consolidated Complaint as true, the insureds did not know of the Thief Friendly Design.  Moreover, because "a claim of laches depends on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution on a motion to dismiss."  McCarthy v. Johannesson, No. 12-2099, 2012 U.S. Dist. LEXIS 196942, at *11 (C.D. Cal. Dec. 11, 2012) (internal quotation marks omitted).  Therefore, the Court finds that Subrogation Plaintiffs' claims are not barred by laches.  Defendants raise a similar argument under the doctrine of waiver.  (Mot. at 28–29.)  But Defendants' waiver argument fails for the same reasons their laches argument fails. Thus, Subrogation Plaintiffs have a superior equitable position than Defendants.

Accordingly, the Court **DENIES** Defendants' motion to dismiss pursuant to Rule 12(b)(6).

D.    *Motion to Dismiss Pursuant to Rule 12(b)(2)*

1.    General Personal Jurisdiction

General jurisdiction exists when a nonresident defendant's contacts "are so continuous and systematic as to render [it] essentially at home in the forum State." Daimler AG v. Bauman, 571 U.S. 117, 139 (2014) (internal quotations omitted).  A nonresident defendant's "continuous activity of some sorts within a state," however, is not enough by itself to support exercise of general jurisdiction.  Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 927 (2011). "Unless a defendant's contacts with a forum are so substantial, continuous, and systematic that the defendant can be deemed to be 'present' in that forum for all purposes," a forum may not exercise general jurisdiction.  Yahoo!, 433 F.3d at 1205.  Where general jurisdiction exists, the Court has jurisdiction over the defendant for all purposes, even in cases where the claims arise from dealings unrelated to those that establish jurisdiction.  Daimler, 571 U.S. at 127.

Defendants argue that the Consolidated Complaint "only broadly alleges that this Court has 'general personal jurisdiction' over all four Defendants."  (Mot. at 38.)  The

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS (KESx)                    Date    November 15, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

Consolidated Complaint alleges that Defendants "conduct substantial business in this judicial district, and they intentionally and purposefully placed the Vehicles that are the subject of this action into the stream of commerce within California and elsewhere in the United States." (Consol. Compl. ¶ 248.)  As Defendants argue, the Consolidated Complaint does not allege that KC or HMC is incorporated in California or has its principal place of business in California.  (Mot. at 38.)  The Consolidated Complaint alleges that HMC and KC are South Korean corporations with their headquarters located in Seoul, South Korea.  (Consol. Compl. ¶¶ 29, 36.)  Moreover, Subrogation Plaintiffs allege that both HMC and KC promote Hyundai and Kia Vehicles on their websites.  (Id. ¶¶ 31, 38.)

In Daimler AG, the Supreme Court noted that "[w]ith respect to a corporation, the place of incorporation and principal place of business are paradigm bases for general jurisdiction."  571 U.S. at 137 (internal quotation marks omitted).  The Supreme Court went on to state that "Goodyear did not hold that a corporation may be subject to general jurisdiction *only* in a forum where it is incorporated or has its principal place of business; it simply typed those places paradigm all-purpose forums."  Id. (emphasis in original). However, the Supreme Court further stated that "Plaintiffs would have us look beyond the exemplar bases Goodyear identified, and approve the exercise of general jurisdiction in every State in which a corporation 'engages in a substantial, continuous, and systematic course of business.'"  Id. at 137–38 (citation omitted).  The Court stated "that formulation . . . is unacceptably grasping."  Id. at 138.  The Court thus held that the "inquiry under Goodyear is  not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State."  Id. at 138–39.

As in Daimler AG, HMC and KC are not incorporated in California, nor does either entity have its principal place of business there.  Moreover, Defendants argue that the broad allegations that Defendants "conduct substantial business in this judicial district, and they intentionally and purposefully placed the Vehicles that are the subject of this action into the stream of commerce within California" are insufficient to establish general personal jurisdiction.  (Mot. at 39 (quoting Consol. Compl. ¶ 248).); see Daimler AG, 571 U.S. at 139 n.20 ("[T]he general jurisdiction inquiry does not focu[s] solely on the magnitude of the defendant's in-state contacts.  General jurisdiction instead calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide.  A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                   Date   November 15, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States."). Defendants also argue that Subrogation Plaintiffs' allegations "that HMC and KC use websites to promote vehicles distributed by their U.S. subsidiaries similarly fall short." (Mot. at 39; Consol. Compl. ¶¶ 31, 38.); see Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1226–27 (9th Cir. 2011) (holding that defendant's "operation of an interactive website–even a 'highly interactive' website–does not confer general jurisdiction. . . . The level of interactivity of a nonresident defendant's website provides limited help in answering the distinct question whether the defendant's forum contacts are sufficiently substantial, continuous, and systematic to justify general jurisdiction. . . . To permit the exercise of general jurisdiction based on the accessibility in the forum of a non-resident interactive website would expose most large media entities to nationwide general jurisdiction. That result would be inconsistent with the constitutional requirement that the continuous corporate operations within a state be so substantial and of such a nature as to justify suit against [the nonresident defendant] on causes of action arising from dealings entirely distinct from those activities." (internal quotation marks omitted)). In their Opposition, Subrogation Plaintiffs do not argue that this Court has general personal jurisdiction. (See generally Opp'n.) See, e.g., Cherry v. Strategic Props. of N. Am., LLC, No. 2:22-cv-999, 2023 U.S. Dist. LEXIS 24865, at *9 (E.D. Cal. Feb. 13, 2023) ("[I]n their opposition to the pending motion, plaintiffs advance arguments only with respect to specific personal jurisdiction, apparently conceding that this court lacks general personal jurisdiction over defendants."); Lopez v. County of Los Angeles, No. 15-cv-3804, 2016 U.S. Dist. LEXIS 1339, at *5 (N.D. Cal. Jan. 5, 2016) ("[B]ecause Plaintiff failed to oppose many arguments in the instant motion to dismiss, the Court may treat such non-opposition as implicit consent to the merits of the arguments asserted . . . .").

Instead, Subrogation Plaintiffs argue that HMC and KC waived all objections to personal jurisdiction by making a general appearance in this litigation without disputing personal jurisdiction. (Opp'n at 6.) "As a general rule, if a party files a responsive pleading or makes a Rule 12 motion but does not raise personal jurisdiction as a defense, the party waives the right to raise personal jurisdiction." Rose ML, Inc. v. LIT Distrib., No. 8:19-cv-1893, 2020 U.S. Dist. LEXIS 261449, at *7 (C.D. Cal. Nov. 16, 2020) (quoting In re Cathode Ray Tube (CRT) Antitrust Litig., 27 F. Supp. 3d 1002, 1008 (N.D. Cal. 2014)). Subrogation Plaintiffs argue that "on May 18, 2023, HMC and KC made a general appearance to provide comments through their counsel on the Application to file

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   November 15, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

a Consolidated Insurance Class Action Complaint." (Opp'n at 7 (citing Dkt. No. 108).)
However, Defendants argue that the May 18, 2023 document they filed was in response
to the Court's May 8, 2023 request for Defendants' comments on the Subrogation
Plaintiffs' proposal for a modified leadership structure and a Subrogation Consolidated
Complaint. (Reply at 23 (citing Dkt No. 99).) This document is not a responsive
pleading or a Rule 12 motion. Rather than being an affirmative submission to the Court's
jurisdiction, it was a response to a Court order. Subrogation Plaintiffs fail to cite any
relevant authority that a response to a Court order constitutes a general appearance that
waives personal jurisdiction. Subrogation Plaintiffs cite Wilson v. Moore & Assocs., 564
F.2d 366 (9th Cir. 1977), to support their argument. But Wilson does not deal with
personal jurisdiction. Wilson concerned appearances with respect to Federal Rule of
Civil Procedure 55(b)(2), which is not applicable to this case. 564 F.2d at 368; see also
id. at 369 ("In limited situations, informal contacts between the parties have sufficed
when the party in default has thereby demonstrated a clear purpose to defend the suit.").
Next, Subrogation Plaintiffs argue that HMC and KC made a general appearance on
August 10, 2023 when they notified the Court of their intent to raise an issue concerning
the Subrogation Plaintiffs Consolidated Complaint. (Opp'n at 7 (citing Dkt. No. 179).)
Defendants argue that "Subrogation Plaintiffs ignore that, prior to that filing, KC and
HMC had agreed to accept service of the Consolidated Complaint and expressly reserved
their right to challenge personal jurisdiction." (Mot at 23.) The Court agrees. (See Joint
Stipulation Re Service and Discovery, Dkt. No. 170 ¶ 11 ("Defendants do not waive any
other defenses, including the right to challenge personal or subject matter jurisdiction and
venue. The Insurance Subrogation Plaintiffs agree that they will not argue that waiver or
acceptance of service or negotiation of this Joint Stipulation re Service and Discovery
supports personal jurisdiction over any Defendant.").) This Court granted that stipulation
on July 28, 2023. (See Order re Joint Stipulation Re Service and Discovery, Dkt. No.
174 ¶ 11.) Lastly, Subrogation Plaintiffs argue that HMC and KC specifically accepted
this Court's jurisdiction by asking for preliminary approval of the consumer class action
settlement. (Opp'n at 7 (citing Dkt. No. 166).) Defendants contend that appearing in one
track in a multi-district litigation and participating in the proposed consumer settlement
does not equate to participating in another track of the litigation. (Reply at 24.)
"Participation in settlement and stipulation discussions are a far cry from filing a
responsive pleading or a Rule 12 motion, and defendants have not waived their objections
to personal jurisdiction through any such discussions." Cherry v. Strategic Props. of N.
Am., LLC, No. 2:22-cv-999, 2023 U.S. Dist. LEXIS 24865, at *8 (E.D. Cal. Feb. 13,
2023); see also Fed. R. Civ. P. 12(h)(1); In re Optical Disk Drive Antitrust Litig., No. 10-

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

md-2143, 2015 U.S. Dist. LEXIS 57035, at *46 (N.D. Cal. Apr. 28, 2015) ("[P]rior participation as a defendant in the class action cases within this MDL proceeding is not tantamount to consent to jurisdiction in the [Direct Action Plaintiff] cases, nor a waiver of its right to challenge personal jurisdiction.")  Therefore, the court finds that Defendants have not waived their personal jurisdiction objections and timely raised them in their pending Motion.

Moreover, Defendants argue that the "Consolidated Complaint makes no attempt to allege that this Court has *specific* personal jurisdiction over Defendants" because the Consolidated Complaint only refers to "general personal jurisdiction."  (Mot. at 38.) Because Subrogation Plaintiffs failed to allege specific personal jurisdiction in their Consolidated Complaint, they cannot expand their position now and argue specific personal jurisdiction in their Opposition.  See Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1990) (finding that the court cannot consider new arguments made beyond the pleadings when ruling on a motion to dismiss).  At oral argument, Subrogation Plaintiffs asserted that they can incorporate additional facts to cure the Consolidated Complaint's deficiencies with respect to specific personal jurisdiction over HMC and KC.

Accordingly, the Court finds that HMC's and KC's contacts with California, even considered collectively, do not justify exercise of general personal jurisdiction.  Thus, the Court **GRANTS** Defendants' motion to dismiss HMC and KC for lack of personal jurisdiction with leave to amend.

E.     *Motion to Dismiss Pursuant to Rule 9(b)*

Subrogation Plaintiffs plead several causes of action that are subject to the heightened pleading standard under Federal Rule of Civil Procedure 9(b).  (See Consol. Compl. ¶¶ 434–466, 467–498, 499–518, 555-558.)  Defendants argue that Subrogation Plaintiffs "cannot state any of their claims sounding in fraud and therefore subject to Rule 9(b)'s heightened pleading standard."  (Mot. at 19.)  To support their argument, Defendants merely string cite six cases and argue that "Subrogation Plaintiffs do not plead that any individual insured relied on any particular representations."  (Id. at 18–19.) However, as explained above, Subrogation Plaintiffs have sufficiently alleged reliance in their Consolidated Complaint.  As previously mentioned, a fraud claim must be accompanied by "the who, what, when, where, and how" of the fraudulent conduct

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | November 15, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

charged.  Vess, 317 F.3d at 1106 (quoting Cooper, 137 F.3d at 627).  "A pleading is sufficient under rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer from the allegations."  Moore, 885 F.2d at 540.  In their Consolidated Complaint, Subrogation Plaintiffs exhaustively plead Defendants' fraudulent conduct, including "the who, what, when, where, and how" of their causes of action.  (Consol. Compl. ¶¶ 341-346.)  The Court finds that such allegations provided Defendants notice of their claims.  Thus, Subrogation Plaintiffs' fraud-based claims satisfy Rule 9(b)'s heightened pleading standard.

Accordingly, the Court **DENIES** Defendants' motion to dismiss pursuant to Rule 9(b).

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES in part** and **GRANTS in part** the motion to dismiss with leave to amend.  Subrogation Plaintiffs shall have ten (10) days' leave to amend the Consolidated Complaint.

**IT IS SO ORDERED.**