UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS(KESx)                    Date   November 17, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

Present: The Honorable        **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**      **[IN CHAMBERS] Order Regarding Motion to Dismiss [222]**

Before the Court is Defendants Hyundai Motor America ("HMA") and Kia America, Inc.'s ("KA") (collectively, "Defendants") motion to dismiss. (Mot., Dkt. No. 222.) Governmental Entity Plaintiffs ("GE Plaintiffs") oppose. (Opp'n, Dkt. No. 241.) Defendants replied. (Reply, Dkt. No. 252.)

For the following reasons, the Court **GRANTS in part** the motion with respect to the Kansas City Article IX Ordinance claim with leave to amend **and DENIES in part** the motion with respect to all other claims.

## I. BACKGROUND

### A.    Allegations

This multi-district litigation concerns Consumer Plaintiffs' allegations that Defendants knowingly sold more than nine million Hyundai and Kia Class Vehicles[1] that do not contain vital safety components that, in connection with other design flaws, fail to

---

[1] The Class Vehicles include certain model year 2011-2022 Hyundai and Kia vehicles manufactured without an engine immobilizer that were sold in the United States (including Puerto Rico, Virgin Islands, and Guam): 2011-2022 Accent; 2011-2022 Elantra; 2013-2020 Elantra GT; 2013-2014 Elantra Coupe; 2011-2012 Elantra Touring; 2011-2014 Genesis Coupe; 2018-2022 Kona; 2020-2021 Palisade; 2011-2022 Santa Fe; 2013-2018 Santa Fe Sport; 2019 Santa Fe XL; 2011-2019 Sonata; 2011-2022 Tucson; 2012-2017, 2019-2021 Veloster; 2020-2021 Venue; 2011-2012 Veracruz; 2011-2021 Forte; 2021-2022 K5; 2011-2020 Optima; 2011-2021 Rio; 2011-2021 Sedona; 2021-2022 Seltos; 2011-2022 Soul; 2011-2022 Sorento; and 2011-2022 Sportage. (See Dkt. No. 166-2 § I.G.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS(KESx)                    Date   November 17, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

implement Federal Motor Vehicle Safety Standards ("FMVSS" or "Safety Standards")
promulgated by the National Highway Traffic Safety Administration ("NHTSA").
(Consolidated Amended Class Action Complaint ("CAC"), Dkt. No. 84 ¶¶ 7–8.)
Specifically, each Class Vehicle suffers from a series of design flaws that allow thieves to
steal it in less than ninety seconds, including: (i) the steering columns do not contain
adequately secured collars or casings, allowing easy access to the ignition assembly; (ii)
the ignition lock cylinders do not have a locking mechanism and can therefore be easily
removed with minimal force, and in so doing, leaves the ignition switch intact; (iii) the
exposed ignition switch can be started with any set of pliers or a USB connector; and (iv)
the Class Vehicles do not contain engine immobilizers (collectively, the "Theft Prone
Defect" or the "Defect").  (Id. ¶¶ 8, 1291–95, 1304–05, 1307–11, 1314–19.)

An engine immobilizer is an anti-theft device that can prevent vehicles from
starting unless a verified code is received by a transponder module that controls the
engine.  (Id. ¶ 4.)  This anti-theft device prevents the vehicle from being "hotwired" or
started by any means other than an authorized key.  (Id.)

Class Vehicles were sold with traditional "insert-and-turn" key ignition systems, as
opposed to "push-to-start" ignitions, and do not contain engine immobilizers.  (Id. ¶
1291.)  Thieves can quickly identify Hyundai and Kia vehicles that lack engine
immobilizers by peering through vehicle windows and spotting traditional ignitions.  (Id.)
Because there are no alarms on the back windows, thieves can enter the vehicles without
setting off alarms and easily pull off steering wheel casings.  (Id. ¶¶ 1292–93.)  Finally,
thieves can expose the ignition switch with minimal force using a screwdriver and can
start the car by using a set of pliers or a USB cable.  (Id. ¶¶ 1294–95.)

Consumer Plaintiffs allege that, because of the Theft Prone Defect, Class Vehicles
are at increased risk of theft or forced entry.  (Id. ¶¶ 1, 7, 1401.)  The alleged Theft Prone
Defect has existed since the first Class Vehicles were sold.  (Id. ¶ 9.)  Beginning in 2020,
a group of teenagers in Milwaukee, who dubbed themselves the "Kia Boyz," discovered
the alleged Defect and began to post videos showing how to steal Class Vehicles in a
matter of seconds.  (Id.)  Shortly thereafter, thefts and attempted thefts of Class Vehicles
increased dramatically.  (Id. ¶¶ 1354–84.)  Class Vehicles have been frequently stolen
and used to commit crimes or taken for high speed "joy rides," causing injury to both
people and property, sometimes resulting in death.  (Id. ¶¶ 1357, 1370, 1401, 1403.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS(KESx)                    Date   November 17, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

*B.   Procedural History*

The first case related to the Theft Prone Defect was filed in Milwaukee, Wisconsin, where the "Kia Boyz" were located.  See Marvin v. Kia Am., Inc., et al., No. 2:21-cv-01146-pp (E.D. Wis.).  As the incidence of thefts quickly spread throughout the country, beginning in July 2022, dozens of class actions were filed nationwide based on Defendants' omission of anti-theft devices in Class Vehicles. (Leadership Decl., Dkt. No. 166-1 ¶ 6.)  On August 31, 2022, a group of plaintiffs moved for consolidation pursuant to 28 U.S.C. § 1407.  (See MDL No. 3052, Dkt. No. 1; Leadership Decl. ¶ 12.)

On December 13, 2022, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order transferring related actions from fourteen District Courts to this Court for consolidation and pretrial coordination.  (Leadership Decl. ¶ 15.)  To date, seventy-nine cases from more than two-dozen district courts are currently pending in this MDL. Shortly after the MDL was established, the JPML conditionally transferred related cases filed by the cities of Seattle, Washington, and Columbus, Ohio, alleging public nuisance caused by the Theft Prone Defect. Additional actions on behalf of the cities of Cincinnati, Ohio, Cleveland, Ohio, Buffalo, New York, and Madison, Wisconsin, among others, have also been filed.  (See JPML Dkts. 142, 154, 159.)  Additionally, on March 10, 2023, a group of insurance plaintiffs (the "Insurer Class Plaintiffs") filed a class action complaint on behalf of similarly situated insurance companies, and on March 21, 2023, the case was transferred to the MDL proceeding.  See State Auto. Mut. Ins. Co. et al. v. Hyundai Motor Am. et al., No. 8:23-cv-00443 (C.D. Cal. Mar. 10, 2023) (Dkt. Nos. 1, 16).

On December 22, 2022, the Court appointed Mr. Berman, Ms. Fegan, and Mr. McClain as Initial Conference Counsel and tasked with conferring and obtaining consensus on the most pressing issues affecting the case.  (Dkt. No. 2 at 2.)  On January 30, 2023, Initial Conference Counsel and Defendants submitted their Joint Preliminary Report outlining their respective positions regarding an appropriate leadership structure for plaintiffs' counsel, plans for discovery, and various anticipated issues in the litigation. (Dkt. No. 40.)  On February 9, 2023, the Court appointed Mr. Berman, Ms. Fegan, Mr. McClain, and Mr. Tellis to the Plaintiffs' Consumer Class Action Leadership Committee

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS(KESx)                                    Date   November 17, 2023

Title       In Re: Kia Hyundai Vehicle Theft Litigation

(collectively "Class Counsel").[2]  (Dkt. No. 50 at 3.)

Upon their appointment to the Plaintiffs' Consumer Class Action Leadership Committee, Class Counsel began a comprehensive effort to draft a consolidated complaint that details the factual, regulatory, and legal issues relating to the alleged Theft Prone Defect.  (Leadership Decl. ¶ 21.)  Counsel conducted an extensive investigation concerning the underlying Defect and spoke with hundreds of putative Class members and potential class representatives.  (Id.)

On April 10, 2023, Consumer Plaintiffs filed their Consolidated Amended Consumer Class Action Complaint ("CAC").  (Dkt. No. 84.)  The CAC includes eighty-five named Consumer Plaintiffs who purchased or leased vehicles across the United States and asserts claims under the laws of all 50 states.  (CAC ¶¶ 37-1206, 1536-4817.)  In general, Consumer Plaintiffs assert claims for (1) violation of state consumer protection statutes, (2) breach of implied warranty, (3) fraud by omission and concealment, and (4) unjust enrichment.  (Id. ¶¶ 1536–4817.)

The Parties submitted an agreed Protocol for the Production of Documents and Electronically Stored Information ("ESI") and Privilege Logs, a Proposed Stipulated Protective Order, and a Joint Stipulation Regarding Foreign Discovery on April 5, 2023. (Dkt. No. 79.)  The Parties exchanged initial disclosures on April 14, 2023.  (Leadership Decl. ¶ 24.)  On April 19, 2023, Consumer Plaintiffs served Defendants with their First Set of Requests for Production of Documents.  (Id.)

On May 1, 2023, Defendants moved to dismiss the CAC.  (Dkt. No. 95.)  In accordance with the Court's March 13, 2023 Order (Dkt. No. 70), this motion addressed the laws of California, Florida, Missouri, Pennsylvania, Texas, and New York. Consumer Plaintiffs analyzed the motion and began working on their opposition. (Leadership Decl. ¶ 25.)  Class Counsel continued to litigate the case to learn of the strength and weakness of their positions and the risks they faced at class certification and trial, even while settlement negotiations continued.  (Id.)  On May 18, 2023, the Parties notified the Court that they reached a settlement in principle resulting in a fully executed

---

[2] The Court also appointed Jeffrey Goldenberg, Amanda K. Klevorn, and Tiffany Marko Yiatras to the Fact Discovery Committee, and Jason S. Rathod, Michael F. Ram, and Matthew D. Schelkopf to the Expert Discovery Committee. (Dkt. No. 50 at 3.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS(KESx)                     Date    November 17, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

Memorandum of Understanding.  (See Dkt. No. 107.)  On May 19, 2023, the Court stayed all deadlines in the Consumer Plaintiffs' cases that are unrelated to settlement approval.  (Dkt. No. 111.)  On October 31, 2023, the Court granted Consumer Plaintiffs' motion for preliminary approval of the class action settlement.  (Dkt. No. 256.)

On July 28, 2023, the GE Plaintiffs filed their Consolidated Governmental Entities Complaint ("Complaint").  (Compl., Dkt. No. 175.)  The Complaint alleges seventeen causes of action: public nuisance and negligence under Wisconsin law (Counts One and Two); common law absolute public nuisance, common law qualified public nuisance, negligence, statutory public nuisance, and civil liability under Ohio law (Counts Three through Seven); public nuisance under Maryland law (Count Eight); statutory public nuisance under Washington law (Count Nine); public nuisance, negligence, and unjust enrichment under Missouri law (Counts Ten through Twelve); violation of Kansas City consumer protection ordinance Article IX (Count Thirteen); public nuisance and negligence under New York law (Counts Fourteen and Fifteen); and public nuisance and negligence under Indiana law (Counts Sixteen and Seventeen).  (Id.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach.  First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Iqbal, 556 U.S. at 678.  Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'"  Id. at 678–80 (quoting Twombly, 550 U.S. at 555).  Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief."  Id. at 679.  This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS(KESx)                     Date    November 17, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

misconduct." Id.

### III. DISCUSSION

#### A.    Preemption

Defendants' first argument concerns federal preemption of a duty allegedly imposed by GE Plaintiffs' claims. Defendants contend that GE Plaintiffs' state law claims rely on a theory that mandates Defendants' use of engine immobilizers, which runs afoul of FMVSS 114. (Mot. at 17.) That standard, according to Defendants, does not require motor vehicle manufacturers to adopt a specific anti-theft technology, such as engine immobilizers, as long as the chosen device prevents "normal activation" of the engine and "steering or forward self-mobility" in the absence of a key. 49 C.F.R. § 571.114 S5.1.1 (2021). GE Plaintiffs argue that neither express nor implied preemption applies because their claims do not seek to require engine immobilizers specifically. (Opp'n at 8.) Instead, GE Plaintiffs assert, the Complaint alleges that Defendants violated their duties by not installing "reasonable anti-theft technology (which they could have satisfied by installing engine immobilizers)." (Id.)

Defendants mischaracterize the scope of the claims. Throughout the Complaint, GE Plaintiffs use broad language to describe what would have been permissible conduct by Defendants, such as "standard anti-theft technology," "common anti-theft technology," and "industry-standard anti-theft measures." (Compl. ¶¶ 1, 4, 333.) Even when the complaint discusses engine immobilizers, it often couches the reference as one permissible option available to Defendants: "had [Defendants] followed industry-wide standards and installed immobilizer devices, or an equivalent anti-theft device, in all their vehicles." (Id. ¶ 13.)

The claims do not impose a narrow engine-immobilizer requirement as alleged by Defendants. The Complaint's references to "anti-theft technology" is consistent with the broad standard for required devices under FMVSS 114. Therefore, the Complaint does not even raise a question of preemption, and the Court need not reach the full preemption analysis. The Court finds that GE Plaintiffs' claims are not preempted by federal law.

#### B.    Duty to Local Governments

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.     8:22-ml-03052-JVS(KESx)                    Date    November 17, 2023

Title     In Re: Kia Hyundai Vehicle Theft Litigation

Defendants argue that they owe no duty to local governments to protect from "fiscal injuries caused by criminal third-party conduct." (Mot. at 27.)  Defendants contend that no duty arises, either due to the existence of a special relationship, foreseeable category of injury, or a public policy basis. (Id. at 28.)  Defendants assert that the Complaint's bare mention of "secondary markets" is insufficient to allege a basis of affirmative malfeasance. (Id. at 30.)  Defendants argue that "fiscal injuries to local governments" are not foreseeable categories of harm for the purported design defect alleged here. (Id. at 32.)  Specifically, Defendants assert that any increase in municipal spending is due to "an unprecedented social-media campaign soliciting car theft at a multi-state scale." (Id.)

GE Plaintiffs argue that Defendants have a duty to "carry out the services they have undertaken—manufacturing and distributing automobiles—with reasonable care." (Opp'n at 36.)  Moreover, GE Plaintiffs argue that Defendants have a duty because their "knowing and intentional choice to sell cars that are much more likely to be stolen specifically due to the lack of industry-standard anti-theft technology foreseeably led to harm to GE Plaintiffs." (Id. at 40.)  Absent a special arrangement, GE Plaintiffs contend that a duty to third-parties otherwise exists under the Restatement (Second) of Torts § 324A:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm[.]

Restatement (Second) of Torts § 324A (Am. L. Inst. 1965).

GE Plaintiffs do not attempt to argue that a special relationship exists to support a duty to third parties, and Defendants make a compelling argument that there is none here.  The Court's analysis then rests on whether foreseeability supports the finding of a duty.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS(KESx)                    Date    November 17, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

It is difficult to envision a product more "public" than the automobile. Consumers do not regularly store their other valuable possessions in public places, but cars line city streets, parking lots, and driveways across America.  Whether it is through the theft of a car, the fleeing of suspects, or the collision with other vehicles, property, or persons, perhaps no other product impacts public safety or engages law enforcement and municipal governments to a greater extent than automobiles.  It is foreseeable, then, that the lengths a manufacturer will go—or not go—to design their cars with protections against theft will determine the burden others will bear to respond to such theft.  Given the public nature of automobiles, the burden of theft does not fall on vehicle owners alone, but their municipalities as well.

Defendants discuss Goodwin v. Yeakle's Sports Bar & Grill, Inc., 62 N.E.3d 384 (Ind. 2016) as an analogous illustration of "a lack of foreseeability prelud[ing] duty," but it provides more useful guidance as a distinction.  In that case, the Indiana Supreme Court found that there was no duty of a neighborhood bar owner to search customers for weapons because "a shooting inside a bar" was not foreseeable.  Goodwin, 62 N.E.3d at 393.  Defendants argue that "[j]ust as bar owners do not 'routinely contemplate that one bar patron might suddenly shoot another,' no car company would contemplate that the sale of federally compliant vehicles would result in unanticipated fiscal harm to local governments."  (Opp'n at 32 (quoting Goodwin, 62 N.E.3d at 394).)  But they most certainly would.  To state otherwise is to feign unfamiliarity with one of the basic duties of local law enforcement and highway patrol.  When a car is stolen, and especially when cars are driven recklessly, victims call on law enforcement.  While "a shooting inside a neighborhood bar is not foreseeable as a matter of law," id. at 393–94, the theft of an unprotected vehicle in a public place is entirely foreseeable, as is the subsequent reliance on municipal services to respond to the theft.

As noted above, the federal regulation regarding anti-theft technology is broad and permissive of innovation.  The regulation implicitly acknowledges that no two anti-theft devices are alike and allows manufacturers to install different devices of ostensibly different efficacy in preventing theft.  49  C.F.R. § 571.114 S5.1.1.  The Complaint alleges that Defendants knew of and installed effective engine immobilizers in some of their vehicles, but decided to not use this technology in the Susceptible Vehicles.  (Compl. ¶ 79–80, 82.)  The foreseeability

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS(KESx)                    Date   November 17, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

of the harm to local governments as a result of this decision is repeatedly stated in the Complaint.  (See, e.g., id. ¶¶ 92–98, 212, 278, 286, 336, 354, 433.)

Were the Court to endorse GE Plaintiffs' theory of negligence, Defendants warn of "'unlimited liability to an indeterminate class of persons,' requiring product manufacturers to insure any amounts spent by any government in the country to provide public services allegedly necessitated by some product defect." (Mot. at 33 (quoting Hamilton v. Beretta U.S.A. Corp., 750 N.E.2d 1055, 1101 (N.Y. 2001)).)  But this warning is misplaced.  As Defendants reiterate throughout their motion, the claims here are novel.  (See Mot. at 28, 31, 33.)  Novelty does not impair or preclude that advancement of the law.  The facts alleged in the Complaint concern a very particular set of circumstances—vehicle manufacturers' decision not to install anti-theft technology and the harms to municipalities caused by the vehicles' vulnerability to theft—that are unlikely to result in a slippery slope of product manufacturers' "unlimited liability" to governments.  GE Plaintiffs' public policy argument in favor of a duty is more availing.  GE Plaintiffs argue that Defendants' past conduct of installing engine immobilizers in all vehicles sold in Europe and Canada, the gravity of the harm of "rampant vehicle thefts," the imposition on GE Plaintiffs to pay "the ultimate price" of "countless hours" responding to thefts and distributing wheel locks, and the "relatively slight" burden on Defendants to install reasonable anti-theft measures all counsel in favor of a duty. (Mot. at 41.)  That duty, according to GE Plaintiffs, is to "(1) exercise reasonable care in the design and manufacture of Defendants' vehicles and (2) guard against the intentional and/or criminal conduct of third parties." (Id.) Accordingly, the Court finds that the Complaint sufficiently states a duty to sustain the negligence claims.[3]

### C.    Causation

Defendants argue that with respect to the negligence and public nuisance, there is no proximate cause alleged to sustain GE Plaintiffs' claims.  (Opp'n at 24.)  Defendants contend that car thieves' criminal conduct is an unforeseeable superseding cause by a

---

[3] To the extent that Defendants' argument for the application of the New York economic loss rule depends on a lack of duty, the Court finds the argument unavailing upon the finding of a duty. (Mot. at 58.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS(KESx)                    Date    November 17, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

third party.  (Id.)  Defendants also argue that the "unprecedented social-media campaign targeting vehicles that fully comply with federal anti-theft regulations" is an "extraordinary intervening act" that, despite the marketing of the affected cars in 2011, did not result in the alleged harm until 2020.  (Id. at 26.)  GE Plaintiffs argue that under the law of the seven states bringing causes of action, acts by a third party are not a superseding cause when they are foreseeable.  (Opp'n at 13 (citing Schooley v. Ingersoll Rand, Inc., 631 N.E.2d 932, 937 (Ind. Ct. App. 1994); Kiriakos v. Phillips, 139 A.3d 1006, 1026 (Md. 2016); Christiansen v. St. Louis Pub. Serv. Co., 62 S.W.2d 828, 831 (Mo. 1933); Bell v. Bd. of Educ. of N.Y., 687 N.E.2d 1325, 1326 (N.Y. 1997); Fed. Steel & Wire Corp. v. Ruhlin Constr. Co., 543 N.E.2d 769, 776 (Ohio 1989); City of Seattle v. Monsanto Co., 237 F. Supp. 3d 1096, 1107 (W.D. Wash. 2017); Stewart v. Wulf, 271 N.W.2d 79, 88 (Wis. 1978)).)  GE Plaintiffs assert that the Complaint "adequately alleges that the wave of thefts was reasonably foreseeable to Defendants."  (Opp'n at 13.)

The parties both cite the same quote from Schooley in support of their arguments for and against proximate cause: "The intervening act or omission of a third party will not operate to defeat recovery from the defendant if the act or omission would necessarily, or might reasonably, have been foreseen by the defendant."  631 N.E.2d at 937.  GE Plaintiff's cited cases reinforce the role that foreseeability plays in the proximate cause standard in each of the seven states.  Causation here, like the preceding duty analysis, thus rests on foreseeability.

Theft is the very foreseeable conduct that *anti-theft devices* specifically protect against.  The cases that Defendants cite to support the proposition that the acts of car thieves are an unforeseeable severance of the causal chain do not directly implicate the prevention of theft the way it is here.  Defendants' cases involve a car thief's breaking of the causal chain between a *vehicle owner* and a third party's injury.  See, e.g., Dix v. Motor Mkt., Inc., 540 S.W.2d 927, 932 (Mo. Ct. App. 1976) ("[O]ne who leaves a vehicle unlocked with keys in the ignition does not owe a duty to a [sic] third parties arising from accidents involving negligent thieves"); Howard v. Kiskiel, 544 N.Y.S.2d 91, 92 (N.Y. App. Div. 1989) ("[T]he owner of an automobile who leaves his keys in his car is not liable for the negligence of a thief who steals his automobile."); Meihost v. Meihost, 139 N.W.2d 116, 121 (Wis. 1966) (holding that a car owner who left his keys in the glove compartment of his car "could not reasonably anticipate the theft").  As Plaintiffs assert, the considerations "are markedly different when the defendants are manufacturers selling millions of cars without anti-theft technology, rather than

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS(KESx) | Date | November 17, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

individual car owners inadvertently leaving their keys in their vehicles." (Opp'n at 15–16.)

The fact that the theft exploitation and the thefts themselves are broadcast on a relatively new social media platform does not foreclose proximate causation. The JUUL case cited by Plaintiffs illustrates this well. In re JUUL Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig., 497 F. Supp. 3d 552, 664 (N.D. Cal. 2020). In government entities' case against the vape manufacturer, the viral proliferation of teen vaping on Instagram, TikTok, and Facebook did not change the foreseeability of government entities' nuisance and negligence injuries from students using vape products at schools. Id. at 665–66.

Accordingly, the Court finds the Complaint sufficiently alleges causation to state negligence and public nuisance claims.

        D.    *Public Nuisance*

Defendants argue that GE Plaintiffs "repackage a design-defect theory as a public nuisance claim" and that no state supreme court would recognize such a theory. (Mot. at 34.) Defendants contend that state high courts would not recognize the theory because it "would vitiate the longstanding policies and protections of product-liability law as applied to design defects" and "harms from products (including stolen cars) do not implicate the collective rights that public nuisance law protects." (Id. at 35.) Defendants argue that a public right is not implicated by the theft of a product, only a private right to property. (Id. at 45.) Likewise, Defendants argue that the physical injuries or property damage suffered by individuals dose not implicate a public right. (Id.) Defendants assert that the high courts of the seven states alleging public nuisance have not "endorsed such a sweeping role for nuisance under existing law." (Id. at 36.)

GE Plaintiffs respond that their public nuisance theory is instead articulated as follows: "an unreasonable interference (rampant vehicle thefts, associated crimes, and the corresponding diversion of city resources) with a common right (public safety) exists." (Opp'n at 17–18.) GE Plaintiffs contend that this theory sufficiently states a claim, along with the allegation that Defendants "substantially contributed to creating and maintaining this interference with public safety, by selling the Susceptible Vehicles without adequate anti-theft measures despite being substantially certain of the consequences, and by failing to take meaningful steps to address the ongoing threat to public safety in the GE

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS(KESx)                    Date   November 17, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

Plaintiffs' jurisdictions." (Id. at 18.)  GE Plaintiffs argue that injuries to individuals do not diminish the "broader public right at issue," and the requirement that the interference is "unreasonable" prevents all vehicle defects from supporting a public nuisance claim. (Id. at 20–21.)  GE Plaintiffs also argue that public nuisance law is broad enough to include interferences that involve a product's design and point to a comment in the restatement embracing "all acts that are a cause of harm" as potential nuisance-causing activity.  (Opp'n at 22 (quoting Restatement § 834 cmt. b).)

 Four of the seven states—Maryland, Missouri, Ohio, and Wisconsin— adopt the Restatement (Second) of Torts definition of public nuisance and have recognized claims based on an "unreasonable interference with a right common to the general public." Restatement (Second) of Torts § 821B (Am. L. Inst. 1977).  Indiana defines public nuisance as "[w]hatever is: (1) injurious to health; (2) indecent; (3) offensive to the senses; or (4) an obstruction to the free use of property; so as essentially to interfere with the comfortable enjoyment of life or property."  Ind. Code § 32-30-6-6.  Despite its statutory definition, the Indiana Supreme Court has held that it is "predicated" on the common law "unreasonable interference with a public right" as stated in the Restatement. City of Gary ex rel. King, 801 N.E.2d 1222, 1230–31 (Ind. 2003).  Public Nuisance in New York is defined as a "substantial interference with the exercise of a common right of the public."  532 Madison Ave. Gourmet Foods, Inc. v. Finlandia Ctr., Inc., 750 N.E.2d 1097, 1104 (N.Y. 2001).  Washington's nuisance statute provides a lengthy and multifaceted definition,[4] but "[d]espite the expansive definition . . . generally, an activity is a nuisance only when it interferes unreasonably with other persons' use and enjoyment of their property."  Moore v. Steve's Outboard Serv., 182 Wash. 2d 151, 155 (2014). Although it deviates semantically from the six other states claiming public nuisance here, Washington too shares a version of the "public right" requirement: "[a] public nuisance *is*

---

 [4] Under Washington law, a nuisance is "[t]he  obstruction of any highway or the closing of the channel of any stream used for boating or rafting logs, lumber or timber, or whatever is injurious to health or indecent or offensive to the senses, or an obstruction to the free use of property, so as to essentially interfere with the comfortable enjoyment of the life and property."  Wash. Rev. Code § 7.48.010 (2023).  Washington Revised Code includes a second definition of nuisance: "Nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either annoys, injures or endangers the comfort, repose, health or safety of others, offends decency, or unlawfully interferes with, obstructs or tends to obstruct, or render dangerous for passage, any lake or navigable river, bay, stream, canal or basin, or any public park, square, street or highway; or in any way renders other persons insecure in life, or in the use of property."  Id. § 7.48.120.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS(KESx)                    Date  November 17, 2023

Title  In Re: Kia Hyundai Vehicle Theft Litigation

*one which affects equally the rights of an entire community or neighborhood*, although the extent of the damage may be unequal." Wash. Rev. Code § 7.48.130 (2023) (emphasis added).

Defendants take particular issue with applying a theory that resembles product design defect as an interference with a "right common to the general public" (or the states' varying articulations of a public right requirement). What Defendants fail to cite, and that GE Plaintiffs correctly point out, is that courts have not rejected the novel theory presented here. The Court has previously acknowledged the novelty of the GE Plaintiffs' theories, and the fact that the state high courts have not yet ruled on such theories does not foreclose them. But without the guidance of their precedent, the Court ventures to analyze the claims as the high courts otherwise would.

Regarding the implication of a collective, public right, Defendants unduly narrow the alleged harm by focusing solely on design defects. GE Plaintiffs describe their public nuisance claims in a much broader fashion: "the public has a right to safely use their streets, sidewalks, and businesses, and when that right is invaded because of a cost-cutting business decision, it is an unreasonable interference." (Opp'n at 18.) It is the interference with the use of public roads that invokes the public right necessary to state a public nuisance claim in each of the seven states. See, e.g., City of Kansas City v. N.Y.-Kan. Bldg. Assocs., L.P., 96 S.W.3d 846, 857 (Mo. Ct. App. 2002) (considering factors such as "whether the alleged nuisance is located in a public place, a place where the public is likely to congregate, a place where the public has a right to go, or a place where the public is likely to come into contact with the nuisance").

1.    Abrogation

Defendants also argue the Ohio Product Liability Act ("OPLA") and the Washington Product Liability Act ("WPLA") preempts public nuisance claims based on products liability. (Id. at 40.) GE Plaintiffs contend that Ohio and Washington law do not abrogate the public nuisance claims.

Defendants assert that the OPLA abrogates GE Plaintiffs' claims because the statute "abrogate[s] all common law product liability claims or causes of action." Ohio Rev. Code § 2307.71(B). The statute further states, "'Product liability claim' also includes any public nuisance claim or cause of action at common law in which it is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS(KESx)                    Date    November 17, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

alleged that the design, manufacture, supply, marketing, distribution, promotion, advertising, labeling, or sale of a product unreasonably interferes with a right common to the general public." Id. § 2307.71(A)(13).

The Ohio statute's abrogation of GE Plaintiffs' claims is not as straightforward as Defendants make it out to be. The Sixth Circuit has certified a question to the Ohio Supreme Court that is directly on point: "Whether the Ohio Product Liability Act, Ohio Revised Code § 2307.71 et seq., as amended in 2005 and 2007, abrogates a common law claim of absolute public nuisance resulting from the sale of a product in commerce in which the plaintiffs seek equitable abatement, including both monetary and injunctive remedies?" In re Opiate Litig., Nos. 22-3750/3751/3753/3841/3843/3844, 2023 WL 5844325 (6th Cir. Sept. 11, 2023). The Ohio Supreme Court has not yet answered. Abrogation is not immediately clear to the Court, and dismissal as the Ohio Supreme Court weighs this very question would be premature.

Defendants make a similar argument concerning the Washington Product Liability Act ("WPLA"), which they assert preempts "'any claim or action brought for harm caused by the . . . design' of a product based on 'any . . . substantive legal theory except fraud, intentionally caused harm or a claim or action under the consumer protection act.'" (Mot. at 40 (quoting Wash. Rev. Code § 7.48.010).) Plaintiffs argue that the statute does not apply because their claim is brought under a statutory cause of action. (Opp'n at 29 (citing City of Seattle v. Monsanto Co., 237 F. Supp. 3d 1096 (W.D. Wash. 2017)).)

GE Plaintiffs cite City of Seattle as support that the WPLA does not preempt statutory public nuisance claims. City of Seattle, 237 F. Supp. 3d at 1107. In that case, the District Court for the Western District of Washington cited the Washington Supreme Court's decision in Washington Water Power Co. v. Graybar Electric Co., 112 Wash. 2d 847, 854 (1989), for the proposition that the WPLA preempts only common-law product liability claims, not statutory causes of action. Id. at 1102. But the Washington Supreme Court held that the WPLA preempts common law nuisance claims, but it did not also hold that the WPLA does not preempt statutory nuisance claims. Graybar, 112 Wash. 2d at 853.

It is on the plain text of the statute that GE Plaintiff's statutory public nuisance claim under Washington law sits on thin ice. Although they go to great pains to articulate that their claims are not brought under products liability law, they certainly involve their

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS(KESx) | Date | November 17, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

choice of design of their products and harm caused by it. But GE Plaintiffs also allege, throughout their Complaint, Defendants' intent to forgo installation of the anti-theft technology and simultaneous knowledge of its consequences on the public. (See, e.g., Compl. ¶ 416 ("By intentionally forgoing the installation of engine immobilizers in the Susceptible Vehicles, Defendants directly facilitated the rapid increase in vehicle theft and, with it, the public nuisance affecting Seattle.").) It is on this basis that the Washington statutory public nuisance claim escapes abrogation.

### 2. Ohio Defenses

Defendants assert three additional bases to dismiss the Ohio claims. First, Defendants argue that the "Ohio Plaintiffs' common-law public nuisance claims fail as a matter of law because the challenged conduct—Defendants' choice of anti-theft technology—is directly regulated by federal law" and their compliance was not challenged. (Mot. at 48.) Second, Defendants contend that the claims should be dismissed because they do not plausibly allege intent or inherently dangerous activity. (Id. at 50.) The Court's prior discussion of the Complaint's sufficient allegation of intent disposes of this argument. Third, Defendants argue that Columbus's public nuisance claim under Title 7 of the Columbus City Code fails because the Complaint does not allege that the Defendants' vehicles are in a "dilapidated, decayed, unsafe or unsanitary condition" and does not allege that they created a "secondary market." (Mot. at 52–53 (citing Columbus City Code 703.17).) Despite the use of the word "unsafe," Defendants assert that the Complaint does not state that the vehicles are themselves unsafe, just that the vehicles have been stolen by third-party criminals and that the criminals "*operate* the vehicles in an unsafe manner." (Id. at 53.)

GE Plaintiffs argue that FMVSS 114 does not preempt the Ohio claims and the Safety Act "preserves state tort claims that demand a higher level of safety than required by FMVSS regulations." (Opp'n at 30.) GE Plaintiffs contend that the intentional creation of conditions for a public nuisance is sufficient to meet the intent requirement of an Ohio absolute public nuisance claim. (Id. at 33–34.) GE Plaintiffs also argue that the Complaint alleges that Defendants' vehicles "are in an unsafe condition because they can be easily stolen" sufficient to state a statutory public nuisance claim under Columbus City Code. (Id. at 34.) .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS(KESx)                 Date   November 17, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

Defendants claim that Ohio law grants them carte blanche for the harms they cause because they comply with a federal statute. But as Defendants so state in their arguments for federal preemption, *supra*, federal law is the "supreme Law of the Land." (Mot. at 17 (quoting U.S. Const. art. VI).) Here, it states in no uncertain terms, "[c]ompliance with a motor vehicle safety standard prescribed under this chapter does not exempt a person from liability at common law." 49 U.S.C. § 30103(e). Defendants present contrary law: "'long-established Ohio law' holds that 'compliance with a regulatory scheme exempts the regulatory conduct from constituting a public nuisance.'" (Mot. at 48 (quoting City of Cleveland v. Ameriquest Mort. Sec., Inc., 621 F. Supp. 2d 513, 531 (N.D. Ohio 2009)).) But Ohio cannot direct federal law to preempt that which the federal law explicitly deems not preemptive. In other words, Ohio law cannot preempt federal law to preempt Ohio law. Defendants' reliance on Ameriquest provides no assistance. That case implicates a very different set of facts—banks making subprime loans in the lead-up to the wave of foreclosures in the late-2000s. Id. at 516. The Ameriquest court held that the City of Cleveland's common law public nuisance claim was "preempted by Ohio Revised Code § 1.63" because the defendant banks were subject to other regulations. Id. at 519. Importantly, the regulations at issue in Ameriquest did not so clearly waive any preemptive effect the way the Safety Act does here. See 49 U.S.C. § 30103(e). Plaintiffs' citation to Geier v. American Honda Motor Co., 529 U.S. 861 (2000), is helpful, but not for the proposition they cite it for. Geier involves an analysis of a previous version of the Safety Act that, although it uses slightly modified language, is

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS(KESx)                     Date    November 17, 2023

Title    In Re: Kia Hyundai Vehicle Theft Litigation

identical in its effect.[5]  The court concluded that "[t]he language of the pre-emption provision permits a narrow reading that excludes common-law actions."  Id. at 868.

   GE Plaintiffs' argument in support of the public nuisance claim under Title 7 of the Columbus City Code is availing.  GE Plaintiffs look to an Ohio appellate court's definition of "unsafe" as "[d]angerous; not secure" for support that the vehicles' susceptibility to theft make them not secure.  (Id. (citing Ohio v. Miner, No. E-11-052, 2012 WL 236696, at *2 (Ohio Ct. App. June 22, 2012) (quoting Black's Law Dictionary 1539 (6th ed. 1990)).)  GE Plaintiffs argue that because "juveniles use [Defendants'] vehicles to drive recklessly and commit other crimes, the very presence of Defendants' vehicles in a neighborhood can make the neighborhood more dangerous."  (Id.)  This is sufficient to state a claim under Title 7, as is the Complaint's allegations that "the natural and probable consequence" of the Susceptible Vehicles' vulnerability to theft "would be increased thefts (including formerly unsuccessful attempts that would now become successful), and that a secondary market would exist, and now does exist, for unsafe and stolen vehicles."  (Compl. ¶ 353.)

---

[5] Geier discusses the 1988 version of the Safety Act:

  Whenever a Federal motor vehicle safety standard established under this subchapter is in effect, no State or political subdivision of a state shall have any authority either to establish, or to continue in effect, with respect ot any motor vehicle or item of motor vehicle equipment[,] any safety standard applicable to the same aspect of performance of such vehicle or item of equipment which is not identical to the Federal standard.

Geier, 529 U.S. at 867 (quoting 15 U.S.C. § 1392(d) (1988)).  The current version of the statute reads as follows:

  When a motor vehicle safety standard is in effect under this chapter, a State or a political subdivision of a State may prescribe or continue in effect a standard applicable to the same aspect of performance of a motor vehicle or motor vehicle equipment only if the standard is identical to the standard prescribed under this chapter.  However, the United States Government, a State, or a political subdivision of a State may prescribe a standard for a motor vehicle or motor vehicle equipment obtained for its own use that imposes a higher performance requirement than that required by the otherwise applicable standard under this chapter.

49 U.S.C. § 30103(b).  Given the same effect of the two versions of the statute, Geier is still informative here.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS(KESx) | Date | November 17, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

Accordingly, the Court finds that the Complaint sufficiently states the public nuisance claims.

> **E.**    *Kansas City Consumer-Protection Claim*

Defendants argue that GE Plaintiffs have not pleaded "a false representation" sufficient to state a claim for violating Kansas City Article IX. (Mot. at 53.) Although the Complaint alleges that Defendants "marketed and represented their vehicles as being safe, even though the vehicles lack basic, rudimentary safety equipment such as immobilizer technology," Defendants argue that the Complaint does not make the allegation with the specificity required by Federal Rule of Civil Procedure 9(b). (Id. at 53–54.) Defendants also contend that since Defendants' vehicles comply with federal regulations, and NHTSA did not find a safety defect, the claim fails. (Id. at 53.)

GE Plaintiffs argue that the Complaint states a claim because Rule 9(b)'s particularity standard does not apply to nuisance claims based on deceptive trade practices or claims by municipal entities to protect the public interest. (Opp'n at 49–50.) GE Plaintiffs also contend that it is irrelevant that NHTSA declined to find a safety defect "as to whether Defendants represented their merchandise was 'of a particular standard,' when it was not." (Id. at 49 (quoting Kansas City, Mo. Ordinances art. IX § 50-292(7)).)

Defendants' case Kearns v. Ford Motor Co., 567 F.3d 1120 (9th Cir. 2009) is instructive. The Kansas City Article IX claim requires a "false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of merchandise." Kansas City, Mo. Ordinances art. IX § 50-292. The statute appears "grounded in fraud" in much the way the Ninth Circuit in Kearns drew the scope of Rule 9(b)'s heightened pleading requirements. Kearns, 567 F.3d at 1127. "It is well-settled that the Federal Rules of Civil Procedure apply in federal court, 'irrespective of the source of the subject matter jurisdiction, and irrespective of whether the substantive law at issue is state or federal." Id. at 1125. The rule "demands" that the allegations "be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" Id. at 1124 (quoting Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal citations omitted)). With this particularity requirement in place, GE Plaintiffs' bare and conclusory claim falls short. The Complaint states "Defendants have marketed and represented their vehicles as being safe, even though the vehicles

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS(KESx)                    Date   November 17, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

lack basic, rudimentary safety equipment such as immobilizer technology." (Compl. ¶ 455.) The allegations are not made with sufficient particularity to survive the motion to dismiss.[6] Accordingly, the Court dismisses the Kansas City Article IX Ordinance claim.[7]

       *F.*    *Columbus Civil Liability Claim*

Defendants argue that the criminal act alleged by GE Plaintiffs for the purposes of seeking recovery under Ohio Revised Code § 2307.60(A)(1) is an impermissible manipulation of a civil violation (a statutory public nuisance claim) into a criminal misdemeanor. (Mot. at 54.) Defendants contend that GE Plaintiffs use this statute to seek damages when Columbus City Code excludes damages as a remedy for statutory public nuisance. (Id. at 55.) GE Plaintiffs argue that because "[a] person who violates Columbus City Code § 703.17 commits a criminal act" and it follows that "a person injured by a violation of Columbus City Code 703.17 is entitled to recover damages in a civil action unless this remedy is otherwise prohibited by law." (Id.) GE Plaintiffs assert that Defendants have not identified a prohibition.

Columbus City Code § 701.99(A) states, in relevant part, "Whoever violates the Health, Sanitation and Safety Code, unless specified elsewhere in this code, is guilty of a misdemeanor of the first degree and fined not more than one thousand dollars ($1,000.00) or imprisoned not more than one hundred eighty (180) days or both." Columbus City Code § 701.99(A). GE Plaintiffs allege that Defendants violated § 703.17 of the Health, Sanitation and Safety Code: "'Public nuisance' means any structure or vehicle, which is permitted to be or remain in any of the following conditions: (A) In a dilapidated, decayed, unsafe or unsanitary condition detrimental to the public health, safety, and welfare, or well-being of the surrounding area." Columbus City Code § 703.17. GE Plaintiffs seek damages under Ohio Revised Code § 2307.60(A)(1): "Anyone injured in person or property by a criminal act has, and may

---

    [6] This is in contrast with the Subrogation Plaintiffs' Consolidated Complaint, which satisfies Rule 9(b) particularity standards in detailing the "who, what, when, where, how, and why" of the fraudulent activity alleged there. (Consol. Compl. ¶¶ 341–46, Dkt. No. 176.)

    [7] At oral argument, the GE Plaintiffs indicated that they did not intend to replead this claim. Thus, the question of granting relief is moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS(KESx)                    Date   November 17, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

recover full damages in, a civil action unless specifically excepted by law."  Ohio Rev. Code § 2307.60(A)(1).

While Defendants object to the GE Plaintiffs' Russian Doll-like nesting of three statutes to seek damages here, that is not a sufficient basis to dismiss the claim in question.  Indeed, § 701.99 and § 2307.60 could not operate without reference to other laws defining a violation of the Health, Sanitation and Safety code and a "criminal act," respectively.  The key consideration for the Court is whether any law excepts such recovery.  See Columbus City Code § 701.99 ("unless specified elsewhere in this code"); Ohio Rev. Code § 2307.60 ("unless specifically excepted by law").  Defendants, however, cite no such law.  Accordingly, the Court finds that the Complaint sufficiently states a claim for Columbus civil liability.

### G.    Missouri Unjust Enrichment Claim

Defendants argue that GE Plaintiffs do not state an unjust enrichment claim because they fail to allege that they "conferred a cognizable benefit upon Defendants which Defendants retained."  (Mot. at 55.)  GE Plaintiffs contend that Missouri courts do not require that a benefit must be "directly conferred" and that unjust enrichment may occur "where one party pays for damages for which another should be liable." (Opp'n at 54.)  GE Plaintiffs argue that as a "direct result of Defendants' failure to include reasonable, industry-standard anti-theft technology in their products " forced GE Plaintiffs to expend resources to "remedy the negative externalities" and benefitted Defendants.  (Id. at 57.)

The benefit conferred to Defendants, it so appears from the Complaint, is the expenditures by GE Plaintiffs to respond to the externalities of vehicle theft that would otherwise be spent by Defendants when installing anti-theft technology.  (Compl. ¶¶ 439–46.)  This "passing the buck" argument, while not the result of a direct agreement between GE Plaintiffs and Defendants, still operates as the conferral of a benefit under Missouri's more permissive case law.  See Cromeans v. Morgan Keegan & Co., No. 2:12-CV-04269-NKL, 2013 WL 12129609, at *5-7 (W.D. Mo. Nov. 5, 2013) ("[T]he Court has rejected [defendant's] claim that Missouri law limits unjust enrichment claims to circumstances where the plaintiff directly conferred a benefit upon the defendant . . . ."); Webb v. Dr. Pepper Snapple Grp., Inc., No. 4:17-00624-CV-RK, 2018 WL 1955422, at *6 (W.D. Mo. Apr. 25, 2018) ("[T]his Court is persuaded that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS(KESx) | Date | November 17, 2023 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

'there does not appear to be any bright line rule regarding how directly the defendant must have received a benefit at the plaintiff's expense.'") As such, the Court finds that the Complaint sufficiently states an unjust enrichment claim.

### H.    Municipal Cost Recovery Application to New York Damages

Defendants argue that the municipal cost recovery rule precludes recovery of economic losses for services provided by municipal governments. (Mot. at 56.) Defendants assert that statutory exceptions may be made to permit "reimbursement for services expended in abating a nuisance in specific circumstances where a statute or ordinance expressly permits it to do so," but no such exception permits recovery for the public nuisance alleged here. (Id. at 56–57.) GE Plaintiffs distinguish the case law cited by Defendants, noting that the rule is not applied when recovery results from "a defendant's ongoing and persistent misconduct or the creation of a public nuisance." (Opp'n at 44 (citing City of Flagstaff v. Atchison, Topeka & Santa Fe Ry. Co., 719 F.2d 322, 324 (9th Cir. 1983); In re JUUL, 497 F. Supp. 3d 552, 644 (N.D. Cal. 2020)).)

"The general rule is that public expenditures made in the performance of governmental functions are not recoverable." Koch v. Consol. Edison Co. of N.Y., 468 N.E.2d 1, 8 (N.Y. 1984). But "certain exceptions to the general rule have been created by statutory enactment to give a municipality a claim for expenditures for fire fighting and other police power services." Id. GE Plaintiffs distinguish between cases involving "discrete emergency incidents requiring municipal services in response," for which Defendants cite New York cases in which the municipal cost recovery rule barred recovery, and cases with "an alleged pattern of repeated or ongoing misconduct resulting in harm to the public." (Opp'n at 44–45.) Several of GE Plaintiffs' cases come from beyond New York, but the court's carving of an exception for "public harm caused by an intentional, persistent course of deceptive conduct" in the opioid litigation is persuasive. In re Opioid Litigation, 2018 WL 3115102, at *10 (N.Y. Sup. Ct. June 18, 2018). There, "multiple counties alleged that defendants' deceptive marketing campaign fueled an opioid crisis, 'causing them to spend millions of dollars in payments for opioid prescriptions for employees and Medicaid beneficiaries,' and 'forced them to pay the costs of implementing opioid treatment programs for residents," purchasing overdose treatments, "combating opioid-related criminal activities," and other expenses. Id. at *2. Here, as established prior, the Complaint

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS(KESx)          Date  November 17, 2023

Title  In Re: Kia Hyundai Vehicle Theft Litigation

alleges "an intentional, persistent course of deceptive conduct" when it comes to Defendants' failure to install anti-theft technology that would combat the alleged harm to GE Plaintiffs.  (See, e.g., Compl. ¶ 416.)  The ongoing and extensive nature of the alleged harm to the GE Plaintiffs here resembles that of In re Opioid Litigation such that the Court accepts GE Plaintiffs' argument that an exception to the municipal cost recovery rule applies here.

*I.      Economic Loss Rule Application to Ohio and New York Damages*

Defendants argue that the economic loss rule bars damages recovery for Ohio's qualified public nuisance and negligence claims stemming from providing public services.  (Id. at 57 (citing City of Cincinnati v. Deutsche Bank Nat'l Tr. Co., 863 F.3d 474, 477 (6th Cir. 2017)).)  Defendants contend that recovery for "purely economic losses that do not arise from tangible physical injury" are unavailable to plaintiffs asserting tort claims.  (Id.)  GE Plaintiffs argue that the complexity of the parties and the type of tort claim determines whether the economic loss rule applies.  (Opp'n at 46 (citing In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 684 F. Supp. 2d 942, 949 (N.D. Ohio 2009)).)  Specifically, GE Plaintiffs point out that the cases cited by Defendants involve contract privity between the parties that does not exist here: "Ohio GE Plaintiffs' economic losses stem not from a contractual duty but from their status as an arm of the state's plenary police power."  (Id. at 47.)

"Although Ohio courts do distinguish between commercial entities and individual consumers, the foundational doctrinal distinction in the economic loss rule jurisprudence is whether the parties are in privity of contract."  In re Whirlpool, 684 F. Supp. 2d at 949.  The considerations that counseled the court in In re Whirlpool to not apply the economic loss rule counsel the same conclusion here—"the injured party could not have allocated the risk of loss as part of a contract."  (Opp'n at 48.)  GE Plaintiffs and Defendants are not in privity of contract, and qualified public nuisance and negligence are the types of claims courts find are the economic loss rule.  See In re Opiate Litigation,  No. 1:18-cv-02804, 2018 WL 4895856, at *40 (N.D. Ohio Oct. 5, 2018), report and recommendation adopted in part, rejected in part, No. 1:17-md-2804, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018).  Accordingly, the Court finds that the economic loss rule does not apply to the Ohio qualified public nuisance and negligence claims.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS(KESx)                    Date   November 17, 2023

Title   In Re: Kia Hyundai Vehicle Theft Litigation

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS in part** the motion with respect to the Kansas City Article IX Ordinance claim with leave to amend **and DENIES in part** the motion with respect to all other claims.

## IT IS SO ORDERED.