ELLIOTT R. FELDMAN
NATHAN M. DOOLEY (SBN 224331)
KEVIN P. CARAHER
MEGAN R. PEITZKE (SBN 230375)
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: 215.665.2071
Fax: 215.701.2282
EFeldman@cozen.com

TIMOTHY E. CARY (SBN 093608)
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
1260 Corona Pointe Court, Ste 306
Corona, California 92879
Tel: 951.387.4700
Fax: 951.963.1298
CaryT@Stutmanlaw.com

WILLIAM HOFFMANN
ADAM ROMNEY (SBN 261974)
SUSAN BENSON (SBN 146837)
GROTEFELD HOFFMANN
5535 Balboa Blvd., Ste. 219
Encino, California 91316
Tel: 747.233.7150
Fax: 747.233.7143

CRAIG S. SIMON (SBN 78158)
BERGER KAHN, A LAW CORPORATION
2 Park Plaza, Suite 650
Irvine, CA 92614
Tel: 949.474.880
Fax:  949.313.5029
csimon@bergerkahn.com

*Lead Attorneys for Subrogation Plaintiffs*

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 22-ml-03052-JVS-KES |
| | The Honorable James V. Selna |
| | **FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS** |
| This document relates to:<br>*APPLIES TO ALL SUBROGATION CLAIMS* | |

# **TABLE OF CONTENTS**

**Page**

NATURE OF THE ACTION ...................................................................24

THE PARTIES (Alleged by All Plaintiffs) ...........................................29

CLASS PLAINTIFFS (Alleged by Class Plaintiffs).............................34

JURISDICTION AND VENUE (Alleged by All Plaintiffs)....................70

FACTS COMMON TO ALL CAUSES OF ACTION (Alleged by All Plaintiffs) ...............................................................................................72

   A. Hyundai and Kia Became One of The Most Popular Automakers In The United States By Promoting The Safety, Quality, and Reliability of Their Vehicles....................................................................................72

   B. For Over Fifty Years, Auto Manufacturers Have Known That Thefts Pose a Serious Safety Risk .................................................................75

   C. Engine Immobilizers Are an Inexpensive and Proven Means to Dramatically Reduce Auto Theft ....................................................82

   D. The Vehicles Are Thief Friendly, Defective, and Do Not Comply With FMVSS No. 114................................................................................86

   E. Defendants Knowingly Manufactured and Sold Millions of Vehicles That Are Easily Stolen In Seconds .................................................87

   F. Defendants Should Have Uncovered the Thief Friendly Design Through the FMVSS Self-certification Process and Pre-sale Testing ...........88

   G. Defendants' Specific Knowledge Concerning the Efficacy of Engine Immobilizers and Their Use of Immobilizers in Other Vehicles Should Have Notified Them of the Thief Friendly Design .........................91

   H. Defendants Were on Notice of the Thief Friendly Design From Their Efforts to Monitor Vehicle Thefts, which Occurred at a Shocking Rate ........95

   I. Defendants Failed To Remedy The Thief Friendly Design..............97

   J. Fraudulent Omission/Concealment Allegations .............................97

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

K.  Privity Exists Between Defendants and Plaintiffs' Insureds ........................ 100

CLASS ACTION ALLEGATIONS (Alleged by Class Plaintiffs) ........................ 101

TOLLING OF STATUTES OF LIMITATIONS (Alleged by All Plaintiffs) ........ 120

A.  Discovery Rule .................................................................................. 120

B.  Fraudulent Concealment .................................................................. 121

C.  Estoppel ............................................................................................ 122

NATIONWIDE CLASSES AND CALIFORNIA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, Nationwide Class Members, and California Subclass Members against All Defendants) ........................................ 122

A.  Breach of Implied Warranty .............................................................. 123

B.  Breach of Express Warranty Pursuant to Cal. Comm. Code § 2313 ............ 126

C.  Breach of Express Warranty In Violation of Song-Berry Warranty Act .................................................................................. 127

D.  Violations of The California Song-Berry Consumer Warranty Act For Breach of Implied Warranty of Merchantibility (Cal. Civ. Code §§ 1791.1 and 1792) .................................................................................. 128

E.  Violations of Consumer Legal Remedies Act Cal. Civ. Code § 1750, et seq. .................................................................................. 130

F.  Violations of Bus. & Prof. Code § 17200, et seq. ............................ 135

G.  Fraud By Omission and Concealment .............................................. 139

H.  Breach of Express and Implied Warranties Under The Magnuson-Moss Warranty Act – 15 U.S.C. § 2301, et seq. .................................... 143

I.  Negligence ........................................................................................ 145

J.  Negligent Failure To Warn ............................................................... 146

K.  Negligent Misrepresentation ............................................................ 148

ALABAMA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Alabama Subclasses, against All Defendants) .................................... 148

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

A.  Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose (Ala. Code §§ 7-2-314 and 7-2a-212) ............................ 149

B.  Breach of Express Warranty (Ala. Code § 7-2-13) ....................................... 152

C.  Violation of the Alabama Deceptive Trade Practices Act (Ala. Code §§ 8-19-1, et seq.) ............................................................................... 152

D.  Fraud by Misstatement and Suppression of Material Facts (Ala. Code §§ 6-5-101, 6-5-102) ................................................................................ 154

E.  Negligence.................................................................................................. 156

F.  Gross Negligence ....................................................................................... 157

ALASKA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Alaska Subclasses, against All Defendants) ....................................... 158

A.  Breach of Implied Warranty (Alaska Stat. Ann. §§ 45.02.314 and 45.12.212) ................................................................................................. 158

B.  Breach of Express Warranty (Alaska Stat. §§ 45.02.313 and 45.12.210) ..... 161

C.  Violation of the Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. Ann. § 45.50.471, et seq.)................................................. 164

D.  Fraud by Misrepresentation, Concealment and Omission ............................ 170

E.  Negligence.................................................................................................. 172

F.  Negligent Misrepresentation ....................................................................... 173

G.  Gross Negligence ....................................................................................... 174

ARIZONA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Arizona Subclasses, against All Defendants) ...................................... 175

A.  Breach of Implied Warranty of Merchantability (Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212)................................................................................ 176

B.  Breach of Express Warranty (Ariz. Rev. Stat. Ann. §§ 47-2313, 47-2A210)..................................................................................................... 178

C.  Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, et seq.) .......................................................................................... 179

D. Fraud Based On Material Omissions and Misstatements ............................ 181

E. Negligence .................................................................................................. 183

F. Gross Negligence ........................................................................................ 184

ARKANSAS STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs,
and Members of Arkansas Subclasses, against All Defendants) ............................ 185

A. Breach of Implied Warranty (Ark. Code Ann. §§ 4-2-314 and 4- 2A-212)
        186

B. Breach of Express Warranty (Ark. Code Ann. §§ 4-2-313 and 4-2A-210)
        189

C. Violation of the Arkansas Deceptive Trade Practices Act (Ark. Code
        Ann. § 4-88-101, et seq.) ...................................................................... 191

D. Fraud by Omission and Concealment ......................................................... 194

E. Negligence .................................................................................................. 197

F. Constructive Fraud Based on Statements Recklessly Made and Negligent
        Misrepresentation .................................................................................. 198

G. Gross Negligence ........................................................................................ 199

COLORADO STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs,
and Members of Colorado Subclasses, against All Defendants) ........................... 200

A. Breach of Implied Warranty (C.R.S. § 4-2-314) ......................................... 201

B. Breach of Express Warranty (C.R.S. §§ 4-2-714 and 4-2-715) .................... 202

C. Violation of the Colorado Consumer Protection Act (C.R.S. § 6-1-113) ..... 203

D. Fraud Based on Concealment or Omission .................................................. 204

E. Negligence .................................................................................................. 205

F. Gross Negligence ........................................................................................ 206

CONNECTICUT STATE LAW CLAIMS FOR RELIEF (Alleged by
Plaintiffs, and Members of Connecticut Subclasses, against All Defendants) ....... 206

A. Breach of Implied Warranty of Merchantability (Conn. Gen. Stat. Ann.
        §§ 42a-2-314 and 42a-2a-504) ............................................................. 207

Case No. 8:22-ML-3052-JVS(KESx).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

B. Breach of Express Warranty (Conn. Gen. Stat. Ann. § 42a-2-313) ..............210

C. Violation of the Connecticut Unlawful Trade Practices Act (Conn. Gen. Stat. § 42-100a, et seq.)...................................................211

D. Fraud by Misstatements and Omissions ........................214

E. Negligence........................................................217

F. Negligent Misrepresentation .....................................218

DELAWARE STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Delaware Subclasses, against All Defendants) ............................219

A. Breach of Implied Warranty (6 Del. Code §§ 2-314, 2-315, 2A-212 and 2A-213) ..........................................................220

B. Breach of Express Warranty (6 Del. Code §§ 2-313 and 2A-210)................223

C. Violation of the Delaware Consumer Fraud Act (6 Del. Code § 2511, et seq.) ..............................................................224

D. Violation of the Delaware Deceptive Trade Practices Act (6 Del. Code § 2531, et seq.)......................................................227

E. Fraud by Omission and Concealment ............................230

F. Negligence........................................................233

G. Gross Negligence .................................................234

DISTRICT OF COLUMBIA CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of District of Columbia Subclasses, against All Defendants) ..........234

A. Breach of Implied Warranty of Merchantability (D.C. § 28:2-314) .............235

B. Breach of Express Warranty (D.C. § 28:2-313) ........................238

C. Violation of District of Columbia's Unlawful Trade Practices Act (D.C. § 28-3904)........................................................239

D. Fraud by Misstatements and Omissions ........................242

E. Negligence........................................................245

F. Negligent Misrepresentation .....................................246

G. Gross Negligence .................................................247

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

FLORIDA STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of Florida Subclasses, against All Defendants)......................................248

    A. Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212).............................................................................................249

    B. Breach of Express Warranty (Fla. Stat. §§ 672.313, 680.21).......................251

    C. Violations of Florida Unfair and Deceptive Trade Practices Act (Fla. Stat. § 501 et seq.)....................................................................................253

    D. Fraud Based on Omissions, Concealment, and Misstatements ....................256

    E. Negligence.....................................................................................................259

    F. Negligent Misrepresentation .........................................................................260

    G. Gross Negligence ..........................................................................................261

GEORGIA STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of Georgia Subclasses, against All Defendants) .................................262

    A. Breach of Implied Warranty of Merchantability (Ga. Code Ann. §§ 11-2-314 and 11-2A-212)................................................................................263

    B. Breach of Express Warranty (Ga. Code Ann. § 11-2-313, et seq.) ..............266

    C. Violation of the Georgia Uniform Deceptive Trade Practices Act (Ga. Code Ann. § 10-1-390, et seq.).....................................................................267

    D. Violation of the Georgia Fair Business Practices Act (Ga. Code Ann. § 10-1-390, et seq.) .........................................................................................271

    E. Fraud by Omission and Concealment (Alleged by Both Georgia Subclasses and Plaintiffs against All Defendants)........................................274

    F. Negligence (Alleged by Both Georgia Subclasses and Plaintiffs against All Defendants) .............................................................................................277

    G. Negligent Misrepresentation (Alleged by both Georgia Subclasses and Plaintiffs against All Defendants)..................................................................278

HAWAII STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of Hawaii Subclasses, against All Defendants)....................................278

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1   A.  Breach of Implied Warranty (Haw. Rev. Stat. §§ 490:2-314 and 490:2A-
2       212) ................................................................................................... 279
3   B.  Breach of Express Warranty (HRS §§ 409:2-313 and 409:2A-210) ............. 282
4   C.  Unfair and Deceptive Acts in Violation of Hawaii Law (Haw. Rev. Stat.
5       § 480, et seq.) ................................................................................... 283
6   D.  Fraud by Omission, Suppression or Concealment ....................................... 286
7   E.  Negligent Misrepresentation ...................................................................... 289
8   F.  Negligence ................................................................................................. 291
9   G.  Gross Negligence ....................................................................................... 292
10  IDAHO STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and
11  Members of Idaho Subclasses, against All Defendants) ......................................... 293
12  A.  Breach of Implied Warranty (Idaho Code §§ 28-2-314 and 28-12-212) ....... 294
13  B.  Breach of Express Warranty (Idaho Code §§ 28-2-313 and 28-12-210) ...... 297
14  C.  Violation of the Idaho Consumer Protection Act (Idaho Code § 48-601,
15      et seq.) ...................................................................................................... 298
16  D.  Fraud by Omission and Concealment .......................................................... 301
17  E.  Negligence ................................................................................................. 305
18  F.  Gross Negligence ....................................................................................... 306
19  ILLINOIS STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and
20  Members of Illinois Subclasses, against All Defendants) ....................................... 307
21  A.  Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-
22      314 and 5/2A-212) ..................................................................................... 308
23  B.  Breach of Express Warranty (810 ILCS 5/2-313 and 810 ILCS 5/2A-210)
24          311
25  C.  Violation  of  the  Illinois  Consumer  Fraud  and  Deceptive  Business
26      Practices Act (815 Ill. Comp. Stat. 505/1, et seq.) ...................................... 312
27  D.  Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill.
28      Comp. Stat. 510/1, et seq.) ......................................................................... 316

E.  Fraud by Omission or Concealment ............................................................ 318

F.  Negligent Misrepresentation .................................................................... 320

G.  Negligence ................................................................................................ 322

H.  Gross Negligence ...................................................................................... 323

INDIANA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Indiana Subclasses, against All Defendants) ...................................... 324

A.  Breach of Implied Warranty of Merchantability (Ind. Code §§ 26-1-2-314 and 26-1-2.1-212) .................................................................................. 325

B.  Breach of Express Warranty (Indiana Code §§ 26-1-2-313 and 26-1-2.1-210) .......................................................................................................... 328

C.  Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-1, et seq.) .................................................................................... 329

D.  Fraud by Omission, Suppression and Concealment ................................. 333

E.  Negligent Misrepresentation .................................................................... 336

F.  Negligence ................................................................................................ 337

G.  Gross Negligence ...................................................................................... 338

IOWA  STATE  LAW  CLAIMS  FOR  RELIEF (Alleged  by  Plaintiffs, and Members of Iowa Subclasses, against All Defendants) .......................................... 339

A.  Breach of Implied Warranty (Iowa Code §§ 554.2314 and 554.13212) ....... 340

B.  Breach of Express Warranty (Iowa Code §§ 554.2313 and 554.13210) ....... 342

C.  Violation of the Private Right of Action for Consumer Frauds Act (Iowa Code § 714h.1, et seq.) ............................................................................ 344

D.  Fraud by Omission, Suppression or Concealment .................................... 347

E.  Negligent Misrepresentation .................................................................... 350

F.  Negligence ................................................................................................ 352

G.  Gross Negligence ...................................................................................... 353

KANSAS STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Kansas Subclasses, against All Defendants) ...................................... 354

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

A.  Breach of Implied Warranty (Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212) ................................................................................................... 355

B.  Breach of Express Warranty (Kan. Stat. Ann. §§ 84-2-2-313 and 84-2a-210) ................................................................................................... 357

C.  Violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. § 50-623, et seq.) ........................................................................................ 359

D.  Fraud by Omission, Suppression or Concealment ................................ 362

E.  Negligent Misrepresentation ................................................................. 365

F.  Negligence ............................................................................................. 367

G.  Gross Negligence .................................................................................. 368

KENTUCKY STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Kentucky Subclasses, against All Defendants) ........................... 369

A.  Breach of Implied Warranty (Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212) ................................................................................................... 370

B.  Breach of Express Warranty (Ky. Rev. Stat. §§ 355.2-313 and 355.2A-210) ................................................................................................... 373

C.  Violation of the Consumer Protection Act (Kentucky Rev. Stat. § 367.110, et seq.) .............................................................................. 374

D.  Fraud by Omission, Suppression or Concealment ................................ 377

E.  Negligent Misrepresentation ................................................................. 380

F.  Negligence ............................................................................................. 382

G.  Gross Negligence .................................................................................. 383

LOUISIANA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Louisiana Subclasses, against All Defendants) ........................ 384

A.  Breach of Implied Warranty of Merchantability/Warranty (La. Civ. Code Art. 2520, 2524) ....................................................................... 385

B.  Breach of Express Warranty under La. C.C. § 2529 ............................. 387

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

C.  Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. § 51:1401, et seq.) .........................................389

D.  Fraud by Omission, Suppression or Concealment under La. Civ. Code § 1953 et. Seq. ..................................................................................................392

E.  Negligent Misrepresentation under La. C.C. §§ 2315 and 2316 ..................395

F.  Negligence under La. C.C. § 2315 ................................................................396

G.  Gross Negligence La. C.C. § 2315 ...............................................................397

H.  Product Liability under La. R.S. § 9:2800.54 et seq. ....................................399

MAINE STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Maine Subclasses, against All Defendants) ........................................402

A.  Breach of Implied Warranty (Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212) 403

B.  Breach of Express Warranty (Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210) 405

C.  Violation of the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 § 205-a, et seq.) ...................................................................................407

D.  Negligence .....................................................................................................410

E.  Gross Negligence ...........................................................................................411

MARYLAND STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Maryland Subclasses, against All Defendants) ...........................412

A.  Breach of Implied Warranty of Merchantability (Md. Code Com. Law §§ 2-314 and 2A-212) ......................................................................................413

B.  Breach of Express Warranty (Md. Code Com. Law §§ 2-313 and 2A 210) 416

C.  Violation of the Maryland Consumer Protection Act (Md. Code, Com. Law, § 13-101, et seq.) ..................................................................................417

D.  Fraud by Omission, Suppression or Concealment .........................................421

E.  Negligent Misrepresentation ..........................................................................425

Case No. 8:22-ML-3052-JVS(KESx).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

F.   Negligence.................................................................................427

G.   Gross Negligence .......................................................................428

H.   Product Liability ........................................................................429

MASSACHUSETTS STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of Massachusetts Subclasses, against All Defendants)....430

A.   Breach of Implied Warranty of Merchantability under Mass. Gen. Laws Ch. 106, §§ 2-314 and 2A-212.................................................431

B.   Breach of Express Warranty under Mass. Gen. Laws Ch. 106, §§ 2-313.....433

C.   Violation of the Deceptive Acts or Practices Prohibited by Mass. Gen. Laws Ch. 93a §1, et seq. ...........................................................434

D.   Fraud by Omission and Concealment...........................................438

E.   Negligence.................................................................................440

MICHIGAN STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of Michigan Subclasses, against All Defendants)...................................441

A.   Breach of Implied Warranty of Merchantability under Mich. Comp. Laws §§ 440.214 and 440.2862................................................442

B.   Breach of Express Warranty under Mich. Comp. Laws §§ 440.2313...........445

C.   Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws § 445.901, et seq.)................................................................446

D.   Fraud by Omission, and Concealment...........................................450

E.   Negligence.................................................................................452

MINNESOTA STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of Minnesota Subclasses, against All Defendants).........................453

A.   Breach of Implied Warranty of Merchantability under Minn. Stat. §§ 336.2-314 and 336.2A-212 ................................................454

B.   Breach of Express Warranty under Minn. Stat. §§ 336.2-313 ......................457

C.   Violation of the Minnesota Prevention of Consumer Fraud Act pursuant to Minn. Stat. § 325F.68, et seq. and Minn. Stat. § 8.31, subd. 3a...............458

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

D.   Violation of the Deceptive Trade Practices Act pursuant to Minn. Stat. §
     325D.44 .................................................................................................461

E.   Fraud by Omission, and Concealment .............................................464

F.   Negligence ............................................................................................467

MISSISSIPPI STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs,
and Members of Mississippi Subclasses, against All Defendants) .........................468

A.   Breach of Implied Warranty of Merchantability under Miss. Code §§ 75-
     2-314 and 75-2A-212 ..........................................................................469

B.   Breach of Express Warranty under Miss. Code § 75-2-313 ..........................471

C.   Violation of the Mississippi Consumer Protection Act under Miss. Code.
     Ann. § 75-24-1, et seq. .......................................................................472

D.   Fraud by Omission and Concealment ............................................476

E.   Negligence ............................................................................................478

MISSOURI STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and
Members of Missouri Subclasses, against All Defendants) ....................................479

A.   Breach of Implied Warranty of Merchantability under Mo. Rev. Stat. §§
     400.2-314 and 400.2A-212 ..................................................................480

B.   Breach of Express Warranty under Mo. Rev. Stat. §§ 400.2-313 ...............483

C.   Violation of Missouri Merchandising Practices Act under Mo. Rev. Stat.
     § 4070.010, et seq. .............................................................................484

D.   Fraud by Omission and Concealment ............................................488

E.   Negligence ............................................................................................490

MONTANA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and
Members of Montana Subclasses, against All Defendants) ....................................491

A.   Breach of Implied Warranty of Merchantability under Mont. Code §§ 30-
     2-314 and 30-2A-212 ..........................................................................492

B.   Breach of Express Warranty under Mont. Code § 30-2-313 .........................494

Case No. 8:22-ML-3052-JVS(KESx).
FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

C.  Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1973 (Mont. Code Ann. § 30-14-101, et seq.) .................495

D.  Fraud by Omission, and Concealment ..........................................499

E.  Negligence...................................................................................501

NEBRASKA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Nebraska Subclasses, against All Defendants) ...........................502

A.  Breach of Implied Warranty of Merchantability under Neb. Rev. St. U.C.C. §§ 2-314 and 2A-212 ........................................................503

B.  Breach of Express Warranty under Neb. Rev. St. U.C.C. §§ 2-313.............506

C.  Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601, et seq.)......................................................................507

D.  Fraud by Omission, and Concealment ..........................................510

E.  Negligence...................................................................................513

NEVADA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Nevada Subclasses, against All Defendants)....................................514

A.  Breach of Implied Warranty of Merchantability under Nev. Rev. Stat. §§ 104.2314 and 104A.2212 ................................................................515

B.  Breach of Express Warranty under Nev. Rev. Stat. § 104.2313 ..................517

C.  Violation of the Deceptive Trade Practices Act under Nev. Rev. Stat. § 598.0903, et seq. ........................................................................518

D.  Fraud by Omission, and Concealment ..........................................521

E.  Negligence...................................................................................523

NEW HAMPSHIRE STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of New Hampshire Subclasses, against All Defendants)......................................................................524

A.  Breach of Implied Warranty of Merchantability under N.H. Rev. Stat. §§ 382-A:2-314 and 2A-212 ..............................................................525

B.  Breach of Express Warranty under N.H. Rev. Stat. §§ 382-A:2-313.............527

C.  Violation of the New Hampshire Consumer Protection Act under N.H. Rev. Stat. Ann. § 358-a:1, et seq....................................................................528

D.  Fraud by Omission, and Concealment............................................................532

E.  Negligence.......................................................................................................534

NEW JERSEY STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of New Jersey Subclasses, against All Defendants)..........................535

A.  Breach of Implied Warranty of Merchantability under N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212)........................................................................536

B.  Breach of Express Warranty under N.J. Stat. Ann. § 12A:2-313.................538

C.  Violation of New Jersey Consumer Fraud Act under N.J. Stat. Ann. § 56:8-1, et seq. ...........................................................................................539

D.  Fraud by Omission and Concealment.............................................................543

E.  Negligence.......................................................................................................546

NEW MEXICO STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of New Mexico Subclasses, against All Defendants).......................547

A.  Breach of Implied Warranty (N.M. Stat. §§ 55-2-314 and 55-2A-212)........548

B.  Breach of Express Warranty N.M.S.A. §55-2-313.......................................550

C.  Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-1, et seq.) ...........................................................................................551

D.  Fraud by Omission, Suppression and Concealment ......................................554

E.  Negligence by Words......................................................................................557

F.  Negligence.......................................................................................................559

NEW YORK STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of New York Subclasses, against All Defendants)..........................560

A.  Breach of Implied Warranty (N.Y. U.C.C. Law §§ § 2-314 and § 2-315)....561

B.  Breach of Express Warranty NY UCC §2-313...............................................564

C.  Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349) ...........................................................................................................565

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

D. Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350) ............................................................................ 568

E. Fraud by Omission and Concealment ........................................... 571

F. Negligent Misrepresentation ........................................................ 574

G. Negligence .................................................................................... 575

H. Gross Negligence ......................................................................... 576

NORTH CAROLINA STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of North Carolina Subclasses, against All Defendants) ............................................................................................................... 578

A. Breach of Implied Warranty (N.C.G.S. §§ 2-314 and § 2-315) ................... 579

B. Breach of Express Warranty N.C.G.S. §2-313. ........................... 581

C. Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, et seq.) ................................ 582

D. Negligence .................................................................................... 585

E. Gross Negligence ......................................................................... 586

NORTH DAKOTA STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of North Dakota Subclasses, against All Defendants)..... 587

A. Breach of Implied Warranty of Merchantability under N.D. Cent. Code §§ 41-02-31 and 41-02.1-21 ................................................... 588

B. Breach of Express Warranty under N.D. Cent. Code § 41-02-30 ................. 591

C. Violation of North Dakota Consumer Fraud Act under N.D. Cent. Code § 51-15-02, et seq. ........................................................... 592

D. Fraud by Omission and Concealment ........................................... 595

E. Negligence .................................................................................... 597

F. Negligent Misrepresentation ........................................................ 598

OHIO STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Ohio Subclasses, against All Defendants) .......................................... 600

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

A. Breach of Implied Warranty of Merchantability under Ohio Rev. Code Ann. §§ 1302.27 and 1310.19 ........................................................................601

B. Breach of Express Warranty under Ohio Rev. Code Ann. § 1302.26 ...........603

C. Violation of Ohio Consumer Sales Practices Act under Ohio Rev. Code § 1345.01. et seq. ........................................................................604

D. Violation of Ohio Deceptive Trade Practices Act under Ohio Rev. Code § 4165.01 et seq. ........................................................................608

E. Fraud by Misrepresentation, Omission and Concealment ..............................611

F. Negligence ........................................................................614

OKLAHOMA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Oklahoma Subclasses, against All Defendants) ..........................615

A. Breach of Implied Warranty of Merchantability under Okla. Stat. Ann. Tit. §§ 2-314 and 2A-212 ........................................................................616

B. Breach of Express Warranty under Okla. Stat. Ann. tit. 12A, § 2-313 .........618

C. Violation of Oklahoma Consumer Protection Act under Okla. Stat. Ann. tit. 15, § 751, et seq. ........................................................................619

D. Fraud by Omission and Concealment ............................................................623

E. Negligence ........................................................................625

F. Negligent Misrepresentation ........................................................................626

OREGON STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Oregon Subclasses, against All Defendants) ....................................628

A. Breach of Implied Warranty of Merchantability (ORS §72.3140) ...............629

B. Breach of Express Warranty (ORS § 72.3130) .............................................631

C. Violation of Oregon's Unlawful Trade Practices Act (ORS § 646.607) .......632

D. Fraud ........................................................................635

E. Negligence ........................................................................638

F. Gross Negligence ........................................................................639

Case No. 8:22-ML-3052-JVS(KESx).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

PENNSYLVANIA STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of Pennsylvania Subclasses, against All Defendants) ..... 639

    A. Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212) ........................................................................................ 640

    B. Breach of Express Warranty (13 Pa. Cons. Stat. §§ 2313, 2A210, et seq.) 643

    C. Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (73 Pa. Cons. Stat. §§ 201-1, et seq.) ................................. 644

    D. Fraud by Omission and Concealment ............................................ 648

    E. Negligence ....................................................................................... 651

    F. Negligent Misrepresentation ......................................................... 652

PUERTO RICO LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of Puerto Rico Subclasses, against All Defendants) .............................. 653

    A. Breach of Implied Warranty of Merchantability (P.R.Laws Ann. tit. 31, § 3841) ............................................................................................ 653

    B. Breach of Express Warranty ......................................................... 655

    C. Violation of the Rule 7 of Puerto Rico Rules Against Misleading Practices and Advertisements ......................................................... 656

    D. Fraud based on Misstatements, Omissions and Concealment ...................... 658

    E. Negligence ....................................................................................... 661

RHODE ISLAND STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of Rhode Island Subclasses, against All Defendants) ..... 662

    A. Breach of Implied Warranty of Merchantability (R.I. Gen. Laws 1956, §§ 6A-1-201, 6A-2-314, et seq.) ...................................................... 662

    B. Breach of Express Warranty (R.I. Gen. Laws 1956, §§ 6A-1-201, 6A-2-313, et seq.) ............................................................................... 665

    C. Violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act (RI Gen L § 6-13.1-11, et seq.) ............................... 666

D. Fraud by Omission and Concealment ...........................................................669

E. Negligence....................................................................................................672

F. Negligent Misrepresentation .......................................................................673

SOUTH CAROLINA STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of South Carolina Subclasses, against All Defendants) ............................................................................................................................675

A. Breach of Implied Warranty of Merchantability under S.C. Code Ann. §§ 36-2-314 and 36-2A-212...................................................................................675

B. Breach of Express Warranty under S.C. Code Ann. § 36-2-313...................678

C. Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10, et seq.) .............................................................................679

D. Fraud by Omission and Concealment ...........................................................682

E. Negligence....................................................................................................684

SOUTH DAKOTA STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of South Dakota Subclasses, against All Defendants).....686

A. Breach of Implied Warranty of Merchantability under S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212 .........................................................686

B. Breach of Express Warranty under S.D. Codified Laws § 57A-2-313 .........689

C. Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws §§ 37-24-1, et seq.) ...........................690

D. Fraud by Omission and Concealment ...........................................................693

E. Negligence....................................................................................................695

TENNESSEE STATE LAW CLAIMS FOR RELIEF (Alleged by Plaintiffs, and Members of Tennessee Subclasses, against All Defendants)..........................697

A. Breach of Implied Warranty of Merchantability under Tenn. Code Ann. §§ 47-2-314 and 47-2A-212.........................................................................698

B. Breach of Express Warranty under Tenn. Code Ann. § 47-2-313 ..............700

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

C.  Violation of the Tennessee Consumer Protection Act of 1977 (Tenn. Code Ann. §§ 47-18-101, et seq.) .................................................................. 701

D.  Fraud by Omission and Concealment .......................................................... 705

E.  Negligence .................................................................................................... 707

TEXAS STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Texas Subclasses, against All Defendants) ........................................ 708

A.  Breach of Implied Warranty of Merchantability under Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212 ................................................................... 709

B.  Breach of Express Warranty under Tex. Bus. & Com. Code Ann. § 2.313 .................................................................................................................. 712

C.  Fraud by Omission and Concealment .......................................................... 713

D.  Negligence .................................................................................................... 715

E.  Negligent Misrepresentation ....................................................................... 716

UTAH STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Utah Subclasses, against All Defendants) ......................................... 718

A.  Breach of Implied Warranty of Merchantability under Utah Code Ann. §§ 70A-2-314 and 70A-2A-212 .................................................................. 718

B.  Breach of Express Warranty under Utah Code Ann. § 70A-2-313 ............... 721

C.  Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. §§ 13-11-1, et seq.) ........................................................................................... 722

D.  Fraud by Omission and Concealment .......................................................... 725

E.  Negligence .................................................................................................... 727

F.  Negligent Misrepresentation ....................................................................... 728

VERMONT STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Vermont Subclasses, against All Defendants) ................................... 730

A.  Breach of Implied Warranty of Merchantability under Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212 ............................................................................ 730

B.  Breach of Express Warranty under Vt. Stat. Ann. Tit. 9A, § 2-313 ............. 733

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

C.  Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. Tit.
9, § 2451, et seq.) ........................................................................734

D.  Fraud by Omission and Concealment ............................................737

E.  Negligence......................................................................................739

F.  Negligent Misrepresentation ..........................................................740

VIRGINIA STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and
Members of Virginia Subclasses, against All Defendants) ....................................742

B.  Breach of Implied Warranty of Merchantability under Va. Code Ann. §§
8.2-314 and 8.2A-212 ....................................................742

C.  Breach of Express Warranty under Va. Code Ann. § 8.2-313 .....................745

D.  Violation of the Virginia Consumer Protection Act (Va. Code Ann. §§
59.1-196, et seq.)............................................................................746

E.  Fraud by Omission and Concealment ............................................749

F.  Negligence......................................................................................752

G.  Constructive Fraud .........................................................................753

WASHINGTON   STATE   LAW   CLAIMS   FOR   RELIEF  (Alleged  by
Plaintiffs, and Members of Washington Subclasses, against All Defendants) .......754

A.  Breach of Implied Warranty of Merchantability under Wash. Rev. Code
Ann. §§ 62A.2-314 and 62A.2A-212.............................................755

B.  Breach of Express Warranty under Wash. Rev. Code Ann. § 62A.2-313.....758

C.  Violation of the Washington Consumer Protection Act (Wash. Rev. Code
Ann. §§ 19.86.010, et seq.) ............................................................759

D.  Fraud by Omission and Concealment ............................................762

E.  Negligence......................................................................................764

F.  Negligent Misrepresentation ..........................................................765

WEST  VIRGINIA  STATE  LAW  CLAIMS  FOR  RELIEF  (Alleged  by
Plaintiffs, and Members of West Virginia Subclasses, against All Defendants) ....767

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

A.  Breach of Implied Warranty of Merchantability under W. Va. Code Ann. §§ 46-2-314 and 46-2A-212 .......................................................................767

B.  Breach of Express Warranty under W. Va. Code Ann. § 46-2-313 ..............770

C.  Violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code Ann. §§ 46A-1-101, et seq.) .......................................................771

D.  Fraud by Omission and Concealment ...........................................................774

E.  Negligence......................................................................................................777

F.  Negligent Misrepresentation ..........................................................................777

WISCONSIN STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Wisconsin Subclasses, against All Defendants)...........................779

A.  Breach of Implied Warranty of Merchantability under Wis. Stat. Ann. §§ 402.314 and 411.212 ......................................................................................780

B.  Breach of Express Warranty under Wis. Stat. Ann. § 402.313 ....................782

C.  Violation of Wisconsin Deceptive Trade Practices Act (Wis. Stat. Ann. § 100.18) ...........................................................................................................783

D.  Fraud by Omission and Concealment ...........................................................787

E.  Negligence......................................................................................................789

F.  Negligent Misrepresentation ..........................................................................790

WYOMING STATE LAW CLAIMS FOR RELIEF (Alleged by  Plaintiffs, and Members of Wyoming Subclasses, against All Defendants) ..................................792

A.  Breach of Implied Warranty of Merchantability under Wyo. Stat. Ann. §§ 34.1-2-314 and 34.1-2.A-212 ..........................................................................792

B.  Breach of Express Warranty under Wyo. Stat. Ann. § 34.1-2-313 ..............795

C.  Violation of Wyoming Consumer Protection Act (Wyo. Stat. Ann. §§ 40-12-101, et seq.)................................................................................................796

D.  Fraud by Omission and Concealment ...........................................................799

E.  Negligence......................................................................................................801

F.  Negligent Misrepresentation ..........................................................................802

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

PRAYER FOR RELIEF .......................................................................... 804

JURY TRIAL DEMANDED .................................................................. 805

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

Subrogation Plaintiffs, by and through their counsel, Cozen O'Connor, Grotefeld Hoffmann, Berger Kahn, PLC, and Law Offices of Robert A. Stutman, P.C., bring this action against Hyundai Motor America, Hyundai Motor Company, Kia America, Inc., and Kia Corporation (collectively "Defendants").

## **NATURE OF THE ACTION**

1.     Defendants manufactured and sold approximately 14.3 million vehicles, including certain 2011-2022 Kia vehicles and 2011-2022 Hyundai vehicles, that do not contain an engine immobilizer, or any equivalent operational anti-theft equipment required by federal law and mandated by industry standards of care (hereinafter, the "Vehicles"). The Vehicles are so insecure that teenagers with no relevant prior experience can steal them in a matter of seconds. This flaw has long been known to Defendants, but Defendants kept it hidden.  This conduct breached express and implied promises that Defendants made to consumers, including Plaintiffs' policy holders, and exposed the public to a rash of thefts.  Known years, makes and models of the Vehicles are identified in Exhibit "A."

2.     The Defendants provided anti-theft protection in the form of immobilizers for more expensive automobiles.  However, for less expensive versions of their Vehicles, Defendants only provided anti-theft immobilizer technology if the purchaser paid extra for expensive and unnecessary trim packages. Moreover, Defendants did not disclose the fact that the Vehicles came without effective anti-theft protection, something that has become an industry standard component in consumer vehicles across the globe, including in vehicles sold by Defendants.

3.     The very same Vehicles that Defendants sold without the legally required anti-theft equipment in the United States were sold with engine immobilizers in Canada and various other countries in Europe and elsewhere. Defendants made immobilizers available to some purchasers of the defective Vehicles in the United States, but only on the condition that those purchasers were willing to pay for expensive upgrades and luxury trim packages.

4.     All Plaintiffs are insurance companies with policyholders who are insured under automobile policies for Vehicles that they purchased or leased (the policyholders shall hereafter be referred to as "Insureds"). All Plaintiffs incurred damages and/or losses because their Insureds' Vehicles were stolen, damaged and/or vandalized, for which insurance claims were submitted and paid.

5.     This Master Complaint consolidates statements and allegations previously contained within Complaints filed in this Court by two separate and distinct groups of subrogated insurance carriers (collectively "Plaintiffs").

6.     The first group of insurance companies, the "Class Plaintiffs," are represented by Cozen O'Connor.  The Class Plaintiffs seek certification of a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) of all insurance companies that issued automobile and property insurance policies and whose Insureds purchased or leased a vehicle that is the subject of this action. The Class Plaintiffs also include the named class members of the Subclasses defined below.

7.     The second group of insurance companies, the "Independent Subrogation Plaintiffs," are represented by Grotefeld Hoffmann, Berger Kahn, the Law Offices of Robert A. Stutman, and various other interested law firms.  The Independent Subrogation Plaintiffs assert subrogated insurance claims on their own behalf, and are not seeking class certification.  Further, the Independent Subrogation Plaintiffs intend to opt-out of any subrogation class action certified by this Court pursuant to Fed. R. Civ. P. 23(c)(2).

8.     Pursuant to this Court's prior orders and proceedings, all insurance subrogation claims filed directly to this Multidistrict Litigation forum, or transferred to this forum from another court of competent jurisdiction, shall be bound by this Court's rulings with respect to the causes of action alleged herein.  All insurance subrogation claimants shall be deemed part of the "Independent Subrogation Plaintiffs" group unless their respective complaint specifically designates they wish to be included as a "Class Plaintiff."

9.     Defendants issued Technical Service Bulletins,[1] and Early Warning Reports to the National Highway Traffic Safety Administration, identifying makes and models of vehicles that Defendants admit lacked anti-theft immobilizer protection. The years, makes and models of the Vehicles identified in Defendants' Technical Service Bulletins and other communications to regulatory authorities are listed in Exhibit "B".

10.     In April of 2023, Defendants issued a Technical Service Bulletin[2] applicable to approximately 12.2 million additional Vehicles manufactured and sold by Defendants without mandatory anti-theft protections. The Technical Service Bulletin mandates that all Dealers "must" install a software update to the impacted Vehicles' Integrated Body Control Unit/Body Control Module (the "Software Update"). Defendants required dealers to install the Software Update on any vehicle that "may not be equipped with an immobilizer" either "prior to customer retail delivery" or "whenever an affected vehicle is in the shop for any maintenance or repair." Defendants' requirement that dealers actively modify all impacted vehicles is an implicit acknowledgment that the Vehicles do not conform to federal law and industry standards.

11.     However, the Software Update does not remedy the defects the Vehicles or effectively operate as a substitute for the lack of a physical immobilizer at the time of manufacture. Worse, the Software Update actively impairs owners' self-help attempts to prevent the theft of their vehicles. The Defendants' Technical Service Bulletin notes that the Software Update may cause vehicles "equipped with aftermarket/add-on alarms or remote start systems" to operate abnormally.

12.     In addition to requiring dealers to install the Software Update, Defendants also require technicians to apply an "anti-theft decal" as a cosmetic fix to

---

[1] These technical service bulletins include, but are not limited to, numbers SC993, P32, 23-01-014H-1, CS2301, CS2302, CS2303, CS2304, CS2305L, CS2305, CS2306L, CS2306, CS2307L, CS2307, CS2308, and CS2309.
[2] Technical Service Bulletin Number 23-01-014H-3, attached as Exhibit "D".

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

vehicle windows in a transparently ineffective attempt to deter thieves seeking to exploit the inherent vulnerabilities of Defendants' the Thief-Friendly design. In truth the "anti-theft decal" serves no effective purpose, and impacted vehicles have been reported stolen within days of their application.

13.    In June of 2023, Defendants issued a Technical Service Bulletin[3] applicable to over 2 million Vehicles which were manufactured and sold "without push-button ignitions and immobilizer anti-theft devices."   Each of the Vehicles covered by the June Technical Service Bulletin were ineligible for Defendants' planned makeshift Software Update.   For these customers, Defendants made no attempt to bring the Vehicles into compliance with applicable mandatory safety standards.   Instead, Defendants only offered to provide steering wheel locks in lieu of mandatory anti-theft equipment.   The offered steering wheel locks are heavy, cumbersome devices that fail to serve as effective, alternative anti-theft measures and fail to comply with federal and industry standards, regulations and guidelines.

14.    Defendants' public statements and conduct function as an effective concession that the Vehicles were defective and unsafe at the time of sale. Nevertheless, Defendants have thus far failed to effectively remediate the risks posed by these Vehicles to consumers, including the Insureds, by offering only inadequate and ineffective software upgrades or after-market external steering wheel locks. Neither of these solutions bring the Vehicles into compliance with applicable safety standards.

15.    All Plaintiffs bring this action to recover damages incurred due to: a) the substandard, dangerous, and defective nature of the Vehicles manufactured, designed, assembled, marketed, supplied and sold by Defendants, and b) Defendants' subsequent misconduct in fraudulently concealing, misrepresenting and failing to warn consumers about their Vehicles' failure to conform to applicable federal and industry anti-theft standards.

---

[3] Technical Service Bulletin Number 23-01-055H, attached as Exhibit "E".

16.    As detailed herein, Defendants intentionally designed, manufactured and/or sold the Vehicles without standard and mandatory anti-theft equipment or design elements that would prevent the Vehicles from being stolen in seconds. Contrary to federal and industry anti-theft standards, Defendants' Vehicles can be started in a matter of seconds, driven, steered, or otherwise operated without a key. These defects constitute a significant security vulnerability, rendering the Vehicles dangerously easy to steal and exposing members of the community to risk of serious bodily injury arising from the documented dangerous driving of car thieves.

17.    Specifically, design flaws in the Vehicles allow thieves to easily steal the Vehicles in seconds because the Vehicles do not contain engine immobilizers or any other comparable and effective anti-theft equipment.  These flaws are collectively referred to herein as the "Thief Friendly Design."

18.    Due to the Defendants' failure to include the required anti-theft system in the Vehicles, Plaintiffs paid for covered damages sustained by Plaintiffs' Insureds as a result of theft, attempted theft, vandalism or other damage to the Vehicles arising from the Thief Friendly Design, including theft of or damage to other property, in accordance with the terms and conditions of the insurance policies issued by Plaintiffs to their Insureds. As a result of such payments, Plaintiffs are legally, equitably and contractually subrogated to the rights of their Insureds to recover compensation from the Defendants who are legally liable for having caused the Plaintiffs' damages. The damages suffered by Plaintiffs, for which Defendants are legally liable, are separate and distinct from any uninsured losses, including deductibles, sustained by their Insureds, which are outside the scope of this Consolidated Complaint.

19.    Consumer plaintiffs identified in the Consolidated Consumer Class Action Complaint (*See* Dkt. No. 84), some of whom are Insureds, are asserting damages that are separate and distinct from the damages claimed by the subrogation Plaintiffs to this complaint. The damages alleged by the consumer plaintiffs are being claimed exclusively in the Consumer Class Action that was filed as part of this MDL

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

("Consumer Class Action"). [*Id*.] The claims of all such consumer plaintiffs therefore
are not and cannot be included in this Complaint. The consumer plaintiffs in the
Consumer Class Action are entitled to compensation for their losses solely and
exclusively through resolution of the Consumer Class Action. Likewise, the damages
incurred by the Plaintiffs in this action are excluded from the proposed settlement in
the Consumer Class Action, which cannot and does not assert any subrogation interest
on the part of the Plaintiffs in this action.

## THE PARTIES

### (Alleged by All Plaintiffs)

### PLAINTIFFS

20.    Plaintiffs were and are insurance companies organized under the laws of
their respective jurisdictions and licensed to conduct and transact business as
insurance companies, issuing and underwriting policies of insurance on vehicles and
property.

21.    As a result of Defendants' failure to provide certain Kia and Hyundai
vehicles with immobilizers or equivalent equipment to prevent or deter theft, the
Defendants' violation of accepted industry standards and practices, and the
Defendants' noncompliance with FMVSS 114 and other Federal and State safety
standards and regulations, Plaintiffs have and/or will pay policy proceeds to their
respective Insureds pursuant to their policies of insurance. Such payments include,
but are not limited to, damages incurred because of the theft of vehicles, attempted
theft of vehicles, damage to vehicles, loss or damage to other property, and economic
losses resulting from loss of use of vehicles.

22.    By virtue of their claim payments and associated adjustment expenses,
collectively in an amount exceeding one billion dollars ($1,000,000,000+), Plaintiffs,
and each of them, are now legally, equitably, and contractually subrogated to the
rights, interests and claims of their Insureds against all responsible third parties,
including the Defendants named herein. Pursuant to this Court's order and with this

Court's consent, a digital summary exhibit consisting of claim spreadsheets, containing claim data for thefts and attempted thefts of the Vehicles reported and paid to date, for the Subrogation Plaintiffs represented by below-signed counsel, has been lodged under seal and served on opposing counsel pursuant to Local Rule 11-5.1 (regarding Non-Paper Physical Exhibits) (Exhibit C). This action seeks recovery of all amounts paid and to be paid to Insureds, and all adjustment expenses incurred by Plaintiffs in making such payments.

## DEFENDANTS

23.   Defendant, HYUNDAI MOTOR AMERICA ("HMA") is a California corporation with its principal place of business located at 10550 Talbert Avenue, Fountain Valley, CA 92708. HMA also maintains a 4,300-acre testing facility in Irwindale, CA.  HMA engages in substantial business throughout the United States, including in this judicial district.

24.   HMA is a subsidiary of Defendant, Hyundai Motor Company ("HMC"), and is actively engaged in manufacturing, assembling, marketing, and distributing Hyundai vehicles sold in California and the rest of the United States.

25.   HMA's C-Suite executives and employees who are responsible for the manufacture, development, distribution, marketing, sales, customer service, and warranty servicing of Hyundai vehicles, are located at the company's Fountain Valley headquarters in California.

26.   As described in greater detail below, the decisions regarding the marketing and sale of the Vehicles, the development and issuance of safety recalls and product updates, and decisions regarding the disclosure or non-disclosure of the Thief Friendly Design, were in whole or substantial part made by HMA at its California headquarters.

27.   HMA has 830 dealerships across the United States which serve as its agents to consumers, including Plaintiffs' Insureds.  For example, in HMA's announcement of its "Anti-Theft Software Upgrade," it instructs consumers to bring

their Vehicles into "Hyundai dealers" for the update. Similarly, in recall notices to consumers, HMA instructs Vehicle owners and lessees to visit the "nearest Hyundai dealer" for defect repairs.[4]

28.    Defendant HMC is a South Korean corporation with its headquarters located in Seoul, South Korea.

29.    HMC is the parent corporation of HMA and owns a 33.88% stake in Defendant, Kia Corporation ("KC").

30.    Defendant, HMC promotes on its own website all Hyundai models sold by HMA in the United States and directs U.S. consumers to HMA's website.[5]

31.    HMC states in promotional materials that it "help[s] [its] overseas subsidiaries, sales corporations, and newly established enterprises in particular to establish the direction of their customer service strategies."[6]

32.    HMC conducts substantial business in the State of California, actively seeks to serve the market for automobiles and related products in the State, and purposefully placed the Vehicles that are the subject of this action into the stream of commerce for sale in the United States generally and California specifically.  Over the past 17 years, empirical data shows that HMC shipped over 7,500 shipments of vehicles and parts through California's ports for delivery and sale to California facilities.

33.    HMC further maintains a research and design  facility in California and employs  thousands of people within the State.

34.    On information and belief, HMC and HMA control details regarding their dealers' operations through various written agreements, such as: (i) granting

---

[4] https://static.nhtsa.gov/odi/rcl/2020/RCONL-20V543-0565.pdf (last accessed March 17, 2023).

[5] https://www.hyundai.com/worldwide/en/vehicles (last accessed March 17, 2023); https://www.hyundai.com/worldwide/en/onepage/country.us (last accessed March 17, 2023).

[6] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed Aug. 24, 2022).

each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; (iv) providing guidance to dealerships, and dealership personnel as to how to handle customers, including, but not limited to, handling complaints regarding the Theft Protection Defect; and (v) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Vehicles.

35.     Defendant, KIA AMERICA, INC. ("KA") (formerly Kia Motors America, Inc.), is a California corporation with its principal place of business located at 111 Peter Canyon Rd., Irvine, CA 92606. KA is a subsidiary of Defendant KC and is actively engaged in manufacturing, assembling, marketing, and distributing Kia vehicles sold in the United States.

36.     KA's C-Suite executives and employees who are responsible for the manufacture, development, distribution, marketing, sales, customer service, and warranty servicing of Kia vehicles, are located at the company's Irvine headquarters in California. As described in greater detail below, the decisions regarding the marketing and sale of the Vehicles, the development and issuance of safety recalls and product updates, and decisions regarding the disclosure or non-disclosure of the Thief Friendly Design were in whole or substantial part made by KA at its California headquarters.

37.     Defendant KC is a South Korean corporation with its headquarters located in Seoul, South Korea.  KC is the parent corporation of KA.

38.     KC refers to the U.S. market as "the center of the global auto industry."[7] KC conducts substantial business in the State of California, actively seeks to serve the market for automobiles and related products in the State, and purposefully placed the

---

[7] 2011 KC Annual Report, available at
https://worldwide.kia.com/int/company/ir/archive/annual-report.

Vehicles that are the subject of this action into the stream of commerce for sale in the United States generally and California specifically,  The United States is KC's most important market for the sale of its "Kia" branded vehicles. For example, in 2017, 21.4% of all vehicles sold by KC were sold in the United States, more than Korea (18.8%), Europe (17.1%), and China (14.3%).[8] Over the past 17 years, empirical data shows that KC initiated over 5,000 shipments of vehicles and parts through California's ports for delivery and sale to California facilities.

39.     KC's website promotes Kia branded vehicles sold by KA in the United States.[9]

40.     KA has over 750 dealerships across the United States which serve as its agents to customers, including Plaintiffs' Insureds.[10] For example, KA tells customers that they must "bring their vehicle[s] to the nearest Kia dealership" in order to receive the "enhanced security software" as a purported  remedy for the Thief Friendly Design.[11]

41.     On information and belief, KA and KC control various details regarding their dealers' operations through various written agreements, such as: (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; (iv) providing guidance to dealerships, and dealership personnel as to how to handle customers, including, but not limited to, handling complaints regarding the Thief Friendly Design; and (v) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Vehicles.

---

[8] 2017 KC Annual Report, available at https://worldwide.kia.com/int/company/ir/archive/annual-report.
[9] *E.g.*, https://worldwide.kia.com/na/sportage (last accessed Aug. 24, 2022).
[10] https://www.prnewswire.com/news-releases/kia-america-completes-bestretail-sales-year-in-company-history-301713187.html (last accessed March 22, 2023).
[11] https://www.cbsnews.com/chicago/news/kia-software-update-auto-theft-crisis/ (last accessed March 17, 2023).

42.     HMA and HMC are collectively referred to in this Consolidated Complaint as "Hyundai" unless identified separately.

43.     KA and KC are collectively referred to in this Complaint as "Kia" unless identified separately.

44.     HMA, HMC, KA, and KC are collectively referred to in this Complaint as "Defendants" unless identified separately.

## **CLASS PLAINTIFFS**

### **(Alleged by Class Plaintiffs)**

45.     One or more Class Plaintiffs experienced losses due to the Thief Friendly Design in both Kia and Hyundai Vehicles in all 50 states, the District of Columbia, and Puerto Rico. Class Plaintiffs are identified as follows: Church Mutual Insurance Company, S.I.; Acuity, A Mutual Insurance Company; Adirondack Insurance Exchange; Agent Alliance Insurance Company; Allstate County Mutual Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate North American Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; Century-National Insurance Company; Direct General Insurance Company; Direct General Insurance Company of Mississippi; Direct National Insurance Company; Encompass Floridian Indemnity Company; Encompass Floridian Insurance Company; Encompass Home & Auto Insurance Company; Encompass Indemnity Company; Encompass Independent Insurance Company; Encompass Insurance Company; Encompass Insurance Company of America; Encompass Insurance Company of Massachusetts; Encompass Insurance Company of New Jersey; Encompass Property & Casualty Insurance Company; Encompass Property & Casualty Insurance Company of New Jersey; Esurance Insurance Company; Esurance Insurance Company of New Jersey; Esurance Property & casualty Insurance Company; Imperial Fire & Casualty

34                          Case No. 8:22-ML-3052-JVS(KESx).

Insurance Company; Integon Casualty Insurance Company; Integon General Insurance Corporation; Integon Indemnity Corporation; Integon National Insurance Company; Integon Preferred Insurance Company; Mountain Valley Indemnity Company; National Farmers Union Property and Casualty Company; National General Assurance Company; National General Insurance Company; National General Insurance Online, Inc.; National General Premiere Insurance Company; New Jersey Skyland Insurance Association; New South Insurance Company; Safe Auto Insurance Company; Standard Property & Casualty Insurance Company; American Alliance Casualty Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Ohio; American Standard Insurance Company of Wisconsin; Main Street America Protection Insurance Company; NGM Insurance Company; Old Dominion Insurance Company; Permanent General Assurance Corporation; The General Automobile Insurance Company, Inc.; Citizens United Reciprocal Exchange; Erie Insurance Company; Erie Insurance Exchange; Erie Insurance Company of New York; Erie Insurance Property & Casualty Co.; Flagship City Insurance Company; GEICO Advantage Insurance Company; GEICO Casualty Company; GEICO Choice Insurance Company; GEICO County Mutual Company; GEICO General Insurance Company; GEICO Indemnity Company; GEICO Secure Insurance Company; GEICO Texas County Mutual Company; Government Employees Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; Alpha Property & Casualty Insurance Company; Charter Indemnity Company; Financial Indemnity Company; Home State County Mutual Insurance Company; Infinity Assurance Insurance Company; Infinity Auto Insurance Company; Infinity Casualty Insurance Company; Infinity County Mutual Insurance Company; Infinity Indemnity Company; Infinity Insurance Company; Infinity Safeguard Insurance Company; Infinity Select Insurance Company; Infinity Standard Insurance Company; Kemper Independence Insurance

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Company; Merastar Insurance Company; Response Insurance Company; Trinity Universal Insurance; Unitrin Auto and Home Insurance Company; Unitrin County Mutual Insurance Company; Unitrin Direct Insurance Company; Unitrin Direct Property & Casualty Insurance Company; Unitrin Preferred Insurance Company; Unitrin Safeguard Insurance Company; Valley Property & Casualty Insurance Company; Warner Insurance Company; American States Insurance Company; America First Insurance Company; American Economy Insurance Company; American States Preferred Insurance Company; Consolidated Insurance Company; Employers Insurance Company of Wausau; First National Insurance Company of America; General Insurance Company of America; Liberty County Mutual Insurance Company; Liberty Insurance Corporation; Liberty Mutual Fire Insurance Company; Liberty Mutual Insurance Company; Liberty Mutual Mid-Atlantic Insurance Company; Liberty Mutual Personal Insurance Company; Liberty Personal Insurance Company; LM General Insurance Company; LM Insurance Corporation; Montgomery Mutual Insurance Company; Peerless Indemnity Insurance Company; Safeco Insurance Company of America; Safeco Insurance Company of Illinois; Safeco Insurance Company of Indiana; Safeco Insurance Company of Oregon; Safeco National Insurance Company; The First Liberty Insurance Corporation; The Netherlands Insurance Company; Wausau Underwriters Insurance Company; Allied Property & Casualty Insurance Company; Amco Insurance Company; Colonial County Mutual Insurance Co.; Depositors Insurance Company; Harleysville Insurance Company; Harleysville Insurance Company of New Jersey; Harleysville Insurance Company of New York; Nationwide Affinity Insurance Company of America; Nationwide Agribusiness Insurance Company; Nationwide General Insurance Company; Nationwide Insurance Company of America; Nationwide Mutual Fire Insurance Company; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company; Titan Insurance Company; Victoria Fire & Casualty Company; Victoria Select Insurance Company; New Jersey

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

Indemnity Insurance Company; New Jersey Manufacturers Insurance Company; PEMCO Mutual Insurance Company;  Artisan and Truckers Casualty Company; ASI Select Auto Insurance Corporation; Blue Hill Specialty Insurance Company; Drive Insurance Company f/k/a Progressive West Insurance Company; Drive New Jersey Insurance Company, f/k/a Parkway Insurance Company; Mountain Laurel Assurance Company; National Continental Insurance Company; Progressive Advanced Insurance Company; Progressive American Insurance Company; Progressive Bayside Insurance Company; Progressive Casualty Insurance Company; Progressive Choice Insurance Company; Progressive Classic Insurance Company; Progressive County Mutual Insurance Company; Progressive Direct Insurance Company; Progressive Express Insurance Company; Progressive Freedom Insurance Company; Progressive Garden State Insurance Company f/k/a Salem Insurance; Progressive Gulf Insurance Company; Progressive Hawaii Insurance Corporation; Progressive Marathon Insurance Company; Progressive Max Insurance Company; Progressive Michigan Insurance Company; Progressive Mountain Insurance Company; Progressive New Jersey Insurance Company; Progressive Northern Insurance Company; Progressive Northwestern Insurance Company; Progressive Paloverde Insurance Company; Progressive Preferred Insurance Company; Progressive Premier Insurance Company of Illinois; Progressive Security Insurance Company; Progressive Select Insurance Company; Progressive Southeastern Insurance Company; Progressive Specialty Insurance Company; Progressive Universal Insurance Company; United Financial Casualty Company; General Casualty Insurance Company; General Casualty Company of Wisconsin; Southern Pilot Insurance Company;  Unigard Insurance Company; Root Insurance Company; Root Property & Casualty Insurance Company; Root Lone Star Insurance Agency, Inc.; Milbank Insurance Company; State Automobile Mutual Insurance Company; State Auto Property & Casualty Insurance Company; Garrison Property & Casualty Insurance Company; United Services Automobile Association; USAA Casualty Insurance Company; USAA General

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Indemnity Company; First Chicago Insurance Company; Old American County Mutual Fire Insurance Company and United Security Health and Casualty Insurance Company. Class Plaintiffs bring these claims individually and on behalf of all other similarly situated insurance companies that issue and underwrite property and automobile insurance coverage in the United States against Hyundai Motor America, Hyundai Motor Company, Kia America, Inc., and Kia Corporation. Collectively, Class Plaintiffs have losses due to the Thief Friendly Design in every jurisdiction alleged herein for both Hyundai and Kia vehicles, and as described in greater detail below.

46. Class Plaintiffs allege damages exceeding 1 billion dollars ($1,000,000,000+).

47. The principal place of business and state of incorporation of the named Class Plaintiffs is alleged as follows.

48. Plaintiff, Church Mutual Insurance Company, S.I. is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 3000 Schuster Lane, Merrill, Wisconsin 54452 which, at all times material hereto was engaged in the business of issuing policies of insurance.

49. Plaintiff, American Alliance Casualty Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 2800 South Taylor Drive, Sheboygan, Wisconsin 53081 which, at all times material hereto was engaged in the business of issuing policies of insurance.

50. Plaintiff, Adirondack Insurance Exchange is an unincorporated reciprocal insurance exchange organized under the law of the state of New York with a principal place of business located 5630 University Parkway, Winston-Salem, North Carolina 27105, which, at all times material hereto was engaged in the business of issuing policies of insurance.

51. Plaintiff, Agent Alliance Insurance Company is a corporation organized

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

and existing under the laws of the State of Alabama, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

52.     Plaintiff, Allstate County Mutual Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

53.     Plaintiff, Allstate Fire and Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

54.     Plaintiff, Allstate Indemnity Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

55.     Plaintiff, Allstate Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

56.     Plaintiff, Allstate New Jersey Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

57.     Plaintiff, Allstate New Jersey Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

58.     Plaintiff, Allstate North American Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

59.     Plaintiff, Allstate Northbrook Indemnity Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

60.     Plaintiff, Allstate Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

61.     Plaintiff, Century-National Insurance Company is a corporation organized and existing under the laws of the State of California, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

62.     Plaintiff, Direct General Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 1281 Murfreesboro Road, Nashville, Tennessee 37217 which, at all times material hereto was engaged in the business of issuing policies of insurance.

63.     Plaintiff, Direct General Insurance Company of Mississippi is a corporation organized and existing under the laws of the State of Mississippi, with a principal place of business located at 1281 Murfreesboro Road, Nashville, Tennessee 37217 which, at all times material hereto was engaged in the business of issuing policies of insurance.

64.     Plaintiff, Direct National Insurance Company is a corporation organized

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

65. Plaintiff, Encompass Floridian Indemnity Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

66. Plaintiff, Encompass Floridian Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

67. Plaintiff, Encompass Home & Auto Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

68. Plaintiff, Encompass Indemnity Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

69. Plaintiff, Encompass Independent Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

70. Plaintiff, Encompass Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

71.    Plaintiff, Encompass Insurance Company of America is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

72.    Plaintiff, Encompass Insurance Company of Massachusetts is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

73.    Plaintiff, Encompass Insurance Company of New Jersey is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

74.    Plaintiff, Encompass Property & Casualty Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

75.    Plaintiff, Encompass Property & Casualty Insurance Company of New Jersey is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

76.    Plaintiff, Esurance Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insuranc.

77.    Plaintiff, Esurance Insurance Company of New Jersey is a corporation organized and existing under the laws of the State of Illinois, with a principal place

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance.

78.     Plaintiff, Esurance Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 3075 Sanders Road, Northbrook, Illinois 60062 which, at all times material hereto was engaged in the business of issuing policies of insurance

79.     Plaintiff, Imperial Fire & Casualty Insurance Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

80.     Plaintiff, Integon Casualty Insurance Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

81.     Plaintiff, Integon General Insurance Corporation is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

82.     Plaintiff, Integon Indemnity Corporation is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

83.     Plaintiff, Integon National Insurance Company is a corporation

organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

84.    Plaintiff, Integon Preferred Insurance Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

85.    Plaintiff, Mountain Valley Indemnity Company is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

86.    Plaintiff, National Farmers Union Property & Casualty Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

87.    Plaintiff, National General Assurance Company is a corporation organized and existing under the laws of the State of Missouri, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

88.    Plaintiff, National General Insurance Company is a corporation organized and existing under the laws of the State of Missouri, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

policies of insurance.

89.    Plaintiff, National General Insurance Online, Inc. is a corporation organized and existing under the laws of the State of Missouri, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

90.    Plaintiff, National General Premiere Insurance Company is a corporation organized and existing under the laws of the State of California, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

91.    Plaintiff, New Jersey Skylands Insurance Association is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

92.    Plaintiff, New South Insurance Company is a corporation organized and existing under the laws of the State of North Carolina, with a principal place of business located at 5630 University Parkway, Winston-Salem, North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

93.    Plaintiff, Safe Auto Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 4 Easton Oval, Columbus, Ohio 43219 which, at all times material hereto was engaged in the business of issuing policies of insurance.

94.    Plaintiff, Standard Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 5630 University Parkway, Winston-Salem,

North Carolina, 27105 which, at all times material hereto was engaged in the business of issuing policies of insurance.

95. Plaintiff, American Alliance Casualty Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 8725 West Higgins Road, Suite 725, Chicago, Illinois 60631 which, at all times material hereto was engaged in the business of issuing policies of insurance.

96. Plaintiff, American Family Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873, which, at all times material hereto was engaged in the business of issuing policies of insurance.

97. Plaintiff, American Family Mutual Insurance Company, S.I., is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873 which, at all times material hereto was engaged in the business of issuing policies of insurance.

98. Plaintiff, American Standard Insurance Company of Ohio, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873 which, at all times material hereto was engaged in the business of issuing policies of insurance.

99. Plaintiff, American Standard Insurance Company of Wisconsin, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6000 American Parkway, Madison, Wisconsin 53873 which, at all times material hereto was engaged in the business of issuing policies of insurance.

100. Plaintiff, Main Street America Protection Insurance Company is a

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

corporation organized and existing under the laws of the State of Florida, with a principal place of business located at 4601 Touchton Road East, Ste. 3400, Jacksonville, Florida 32246 which, at all times material hereto was engaged in the business of issuing policies of insurance.

101.   Plaintiff, NGM Insurance Company, is a corporation organized and existing under the laws of the State of Florida, with a principal place of business located at 4601 Touchton Road East, Ste. 3400, Jacksonville, Florida 32246 which, at all times material hereto was engaged in the business of issuing policies of insurance.

102.   Plaintiff, Old Dominion Insurance Company is a corporation organized and existing under the laws of the State of Florida, with a principal place of business located at 4601 Touchton Road East, Ste. 3400, Jacksonville, Florida 32246 which, at all times material hereto was engaged in the business of issuing policies of insurance.

103.   Plaintiff, Permanent General Assurance Corporation is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 2636 Elm Hill Pike, Nashville, Tennessee 37214 which, at all times material hereto was engaged in the business of issuing policies of insurance.

104.   Plaintiff, The General Automobile Insurance Company, Inc. is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 2636 Elm Hill Pike, Nashville, Tennessee 37214 which, at all times material hereto was engaged in the business of issuing policies of insurance.

105.   Plaintiff, Citizens United Reciprocal Exchange is an unincorporated reciprocal insurance exchange with a principal place of business located at 214 Carnegie Center, Suite 101, Princeton, New Jersey 08540, which, at all times material hereto was engaged in the business of issuing policies of insurance.

106.   Plaintiff, Erie Insurance Company is a corporation organized and

existing under the laws of the State of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

107. Plaintiff, Erie Insurance Exchange is an unincorporated reciprocal exchange with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

108. Plaintiff, Erie Insurance Company of New York is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

109. Plaintiff, Erie Insurance Property & Casualty Co. is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

110. Plaintiff, Flagship City Insurance Company is a corporation organized and existing under the laws of the State of Pennsylvania, with a principal place of business located at 100 Erie Insurance Place, Erie, Pennsylvania 16530 which, at all times material hereto was engaged in the business of issuing policies of insurance.

111. Plaintiff, GEICO Advantage Insurance Company is a corporation organized and existing under the laws of the State of Nebraska, with a principal place of business located at 5260 Western Avenue, Chevy Chase, Maryland 20815, which, at all times material hereto was engaged in the business of issuing policies of insurance.

112. Plaintiff, GEICO Casualty Company is a corporation organized and existing under the laws of the State of Nebraska, with a principal place of business located at 5260 Western Avenue, Chevy Chase, Maryland 20815, which, at all times

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1 || material hereto was engaged in the business of issuing policies of insurance.

2 || 113. Plaintiff, GEICO Choice Insurance Company is a corporation organized
3 || and existing under the laws of the State of Nebraska, with a principal place of business
4 || located at 5260 Western Avenue, Chevy Chase, Maryland 20815, which, at all times
5 || material hereto was engaged in the business of issuing policies of insurance.

6 || 114. Plaintiff, GEICO County Mutual Insurance Company is a corporation
7 || organized and existing under the laws of the State of Texas, with a principal place of
8 || business located at 2280 N. Greenville Ave., Richardson, Texas 75082, which, at all
9 || times material hereto was engaged in the business of issuing policies of insurance.

10 || 115. Plaintiff, GEICO General Insurance Company is a corporation organized
11 || and existing under the laws of the State of Nebraska, with a principal place of business
12 || located at 5260 Western Avenue, Chevy Chase, Maryland 20815, which, at all times
13 || material hereto was engaged in the business of issuing policies of insurance.

14 || 116. Plaintiff, GEICO Indemnity Company is a corporation organized and
15 || existing under the laws of the State of Nebraska, with a principal place of business
16 || located at One GEICO Plaza, Washington, D.C., 20076, which, at all times material
17 || hereto was engaged in the business of issuing policies of insurance.

18 || 117. Plaintiff, GEICO Secure Insurance Company is a corporation organized
19 || and existing under the laws of the State of Nebraska, with a principal place of business
20 || located at 5260 Western Avenue, Chevy Chase, Maryland 20815, which, at all times
21 || material hereto was engaged in the business of issuing policies of insurance.

22 || 118. Plaintiff, GEICO Texas County Mutual Company is a corporation
23 || organized and existing under the laws of the State of Texas, with a principal place of
24 || business located at 2280 N. Greenville Ave., Richardson, Texas 75082, which, at all
25 || times material hereto was engaged in the business of issuing policies of insurance.

26 || 119. Plaintiff, Government Employees Insurance Company is a corporation
27 || organized and existing under the laws of the State of Nebraska, with a principal place
28 || of business located at One GEICO Plaza, Washington, D.C., 20076, which, at all

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

times material hereto was engaged in the business of issuing policies of insurance.

120.   Plaintiff, Horace Mann Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 1 Horace Mann Plaza, Springfield, Illinois 62715 which, at all times material hereto was engaged in the business of issuing policies of insurance.

121.   Plaintiff, Horace Mann Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 1 Horace Mann Plaza, Springfield, Illinois 62715 which, at all times material hereto was engaged in the business of issuing policies of insurance.

122.   Plaintiff, Teachers Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 1 Horace Mann Plaza, Springfield, Illinois 62715 which, at all times material hereto was engaged in the business of issuing policies of insurance.

123.   Plaintiff, Alpha Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 8360 LBJ Freeway, Suite 400, Dallas, Texas 75423, which, at all times material hereto was engaged in the business of issuing policies of insurance.

124.   Plaintiff, American Access Casualty Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 2211 Butterfield Road, Downers Grove, Illinois 60515, which, at all times material hereto was engaged in the business of issuing policies of insurance.

125.   Plaintiff, Charter Indemnity Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 8360 LBJ Freeway, Suite 400, Dallas, Texas 75423, which, at all times material hereto was engaged in the business of issuing policies of insurance.

126.   Plaintiff, Financial Indemnity Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 8360 LBJ Freeway, Suite 400, Dallas, Texas 75423, which, at all times material hereto was engaged in the business of issuing policies of insurance.

127.   Plaintiff, Home State County Mutual Insurance Company, is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 4315 Lake Shore Drive, Suite J, Waco, Texas 76710 which, at all times material hereto was engaged in the business of issuing policies of insurance.

128.   Plaintiff, Infinity Assurance Insurance Company, is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

129.   Plaintiff, Infinity Auto Insurance Company, is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

130.   Plaintiff, Infinity Casualty Insurance Company, is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

131.   Plaintiff, Infinity County Mutual Insurance Company, is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

132.   Plaintiff, Infinity Indemnity Insurance Company, is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204, which,

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

at all times material hereto was engaged in the business of issuing policies of insurance.

133.   Plaintiff, Infinity Insurance Company, is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

134.   Plaintiff, Infinity Safeguard Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204  which, at all times material hereto was engaged in the business of issuing policies of insurance.

135.   Plaintiff, Infinity Select Insurance Company, is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

136.   Plaintiff, Infinity Standard Insurance Company, is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 2201 4th Avenue North, Birmingham, Alabama 35204 which, at all times material hereto was engaged in the business of issuing policies of insurance.

137.   Plaintiff, Kemper Independence Insurance Company, is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida which, at all times material hereto was engaged in the business of issuing policies of insurance.

138.   Plaintiff, Merastar Insurance Company, is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 200 Randolph Street, Chicago, Illinois 60601 which, at all times material hereto was engaged in the business of issuing policies of insurance.

139.   Plaintiff, Response Insurance Company, is a corporation organized and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

existing under the laws of the State of Illinois, with a principal place of business located at 200 Randolph Street, Chicago, Illinois 60601 which, at all times material hereto was engaged in the business of issuing policies of insurance.

140.   Plaintiff, Trinity Universal Insurance, is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida 32258 which, at all times material hereto was engaged in the business of issuing policies of insurance.

141.   Plaintiff, Unitrin Auto and Home Insurance Company is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida 32258 which, at all times material hereto was engaged in the business of issuing policies of insurance.

142.   Plaintiff, Unitrin County Mutual Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 8360 LBJ Freeway, Suite 400, Dallas, Texas 75243 which, at all times material hereto was engaged in the business of issuing policies of insurance.

143.   Plaintiff, Unitrin Direct Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 200 Randolph Street, Chicago, Illinois 60601 which, at all times material hereto was engaged in the business of issuing policies of insurance.

144.   Plaintiff, Unitrin Direct Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 200 Randolph Street, Chicago, Illinois 60601 which, at all times material hereto was engaged in the business of issuing policies of insurance.

145.   Plaintiff, Unitrin Preferred Insurance Company is a corporation organized and existing under the laws of the State of New York, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida 32258

which, at all times material hereto was engaged in the business of issuing policies of insurance.

146. Plaintiff, Unitrin Safeguard Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida 32258 which, at all times material hereto was engaged in the business of issuing policies of insurance.

147. Plaintiff, Valley Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business located at 12926 Gran Bay Parkway West, Jacksonville, Florida 32258 which, at all times material hereto was engaged in the business of issuing policies of insurance.

148. Plaintiff, Warner Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 200 East Randolph Street, Chicago, Illinois 60601, which, at all times material hereto was engaged in the business of issuing policies of insurance.

149. Plaintiff, American States Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

150. Plaintiff, America First Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

151. Plaintiff, American Economy Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

152.   Plaintiff, American States Preferred Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

153.   Plaintiff, Consolidated Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

154.   Plaintiff, Employers Insurance Company of Wausau is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

155.   Plaintiff, First National Insurance Company of America is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

156.   Plaintiff, General Insurance Company of America is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

157.   Plaintiff, Liberty County Mutual Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

158.   Plaintiff, Liberty Insurance Corporation is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

159.   Plaintiff, Liberty Mutual Fire Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

160.   Plaintiff, Liberty Mutual Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

161.   Plaintiff, Liberty Mutual Mid-Atlantic Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

162.   Plaintiff, Liberty Mutual Personal Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

163.   Plaintiff, Liberty Personal Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

164.   Plaintiff, LM General Insurance Company is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business

located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

165.   Plaintiff, LM Insurance Corporation is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

166.   Plaintiff, Montgomery Mutual Insurance Company is a corporation organized and existing under the laws of the State of Massachusetts, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

167.   Plaintiff, Peerless Indemnity Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

168.   Plaintiff, Safeco Insurance Company of America is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

169.   Plaintiff, Safeco Insurance Company of Illinois is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

170.   Plaintiff, Safeco Insurance Company of Indiana is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

171.   Plaintiff, Safeco Insurance Company of Oregon is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

172.   Plaintiff, Safeco National Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

173.   Plaintiff, The First Liberty Insurance Corporation is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

174.   Plaintiff, The Netherlands Insurance Company is a corporation organized and existing under the laws of the State of New Hampshire, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

175.   Plaintiff, Wausau Underwriters Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 175 Berkley Street, Boston, Massachusetts 02116 which, at all times material hereto was engaged in the business of issuing policies of insurance.

176.   Plaintiff, Allied Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

177.   Plaintiff, Amco Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material
hereto was engaged in the business of issuing policies of insurance.

178.   Plaintiff, Colonial County Mutual Insurance Co. is a corporation
organized and existing under the laws of the State of Texas, with a principal place of
business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all
times material hereto was engaged in the business of issuing policies of insurance.

179.   Plaintiff, Depositors Insurance Company is a corporation organized and
existing under the laws of the State of Iowa, with a principal place of business located
at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material
hereto was engaged in the business of issuing policies of insurance.

180.   Plaintiff, Harleysville Insurance Company is a corporation organized and
existing under the laws of the State of Ohio, with a principal place of business located
at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material
hereto was engaged in the business of issuing policies of insurance.

181.   Plaintiff, Harleysville Insurance Company of New Jersey is a
corporation organized and existing under the laws of the State of New Jersey, with a
principal place of business located at One West Nationwide Blvd., Columbus, Ohio
43215 which, at all times material hereto was engaged in the business of issuing
policies of insurance.

182.   Plaintiff, Harleysville Insurance Company of New York is a corporation
organized and existing under the laws of the State of Ohio, with a principal place of
business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all
times material hereto was engaged in the business of issuing policies of insurance.

183.   Plaintiff, Nationwide Affinity Insurance Company of America is a
corporation organized and existing under the laws of the State of Ohio, with a
principal place of business located at One West Nationwide Blvd., Columbus, Ohio
43215 which, at all times material hereto was engaged in the business of issuing
policies of insurance.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

184.   Plaintiff, Nationwide Agribusiness Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

185.   Plaintiff, Nationwide General Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

186.   Plaintiff, Nationwide Insurance Company of America is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

187.   Plaintiff, Nationwide Mutual Fire Insurance Company was a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance. Nationwide Mutual Fire Insurance Company merged into Plaintiff Nationwide Mutual Insurance Company as of January 1, 2023.

188.   Plaintiff, Nationwide Mutual Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

189.   Plaintiff, Nationwide Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

190.   Plaintiff, Titan Insurance Company is a corporation organized and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

existing under the laws of the State of Michigan, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

191.   Plaintiff, Victoria Fire & Casualty Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

192.   Plaintiff, Victoria Select Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at One West Nationwide Blvd., Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

193.   Plaintiff, New Jersey Indemnity Insurance Company is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 301 Sullivan Way, West Trenton, New Jersey 08628 which, at all times material hereto was engaged in the business of issuing policies of insurance.

194.   Plaintiff, New Jersey Manufacturers Insurance Company is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 301 Sullivan Way, West Trenton, New Jersey 08628 which, at all times material hereto was engaged in the business of issuing policies of insurance.

195.   Plaintiff, PEMCO Mutual Insurance Company, is a corporation organized and existing under the laws of the State of Washington, with a principal place of business located at 1300 Dexter Avenue North, Seattle, Washington 98109 which, at all times material hereto was engaged in the business of issuing policies of insurance.

196.   Plaintiff, Artisan and Truckers Casualty Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place

of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

197.   Plaintiff, ASI Select Auto Insurance Corporation is a corporation organized and existing under the laws of the State of California, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

198.   Plaintiff, Blue Hill Specialty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

199.   Plaintiff, Drive Insurance Company f/k/a Progressive West Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

200.   Plaintiff, Drive New Jersey Insurance Company f/k/a Parkway Insurance Company is a corporation organized and existing under the laws of the State of New Jersey, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

201.   Plaintiff, Mountain Laurel Assurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

202.   Plaintiff, National Continental Insurance Company is a corporation

organized and existing under the laws of the State of New York, with a principal place
of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which,
at all times material hereto was engaged in the business of issuing policies of
insurance.

203.   Plaintiff, Progressive Advanced Insurance Company is a corporation
organized and existing under the laws of the State of Ohio, with a principal place of
business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at
all times material hereto was engaged in the business of issuing policies of insurance.

204.   Plaintiff, Progressive American Insurance Company is a corporation
organized and existing under the laws of the State of Ohio, with a principal place of
business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at
all times material hereto was engaged in the business of issuing policies of insurance.

205.   Plaintiff, Progressive Bayside Insurance Company is a corporation
organized and existing under the laws of the State of Ohio, with a principal place of
business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at
all times material hereto was engaged in the business of issuing policies of insurance.

206.   Plaintiff, Progressive Casualty Insurance Company is a corporation
organized and existing under the laws of the State of Ohio, with a principal place of
business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at
all times material hereto was engaged in the business of issuing policies of insurance.

207.   Plaintiff, Progressive Choice Insurance Company is a corporation
organized and existing under the laws of the State of Ohio, with a principal place of
business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at
all times material hereto was engaged in the business of issuing policies of insurance.

208.   Plaintiff, Progressive Classic Insurance Company is a corporation
organized and existing under the laws of the State of Wisconsin, with a principal place
of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which,
at all times material hereto was engaged in the business of issuing policies of

1 insurance.

2    209.  Plaintiff, Progressive County Mutual Insurance Company is a
3 corporation organized and existing under the laws of the State of Texas, with a
4 principal place of business located at 6300 Wilson Mills Road, Mayfield Village,
5 Ohio 44143 which, at all times material hereto was engaged in the business of issuing
6 policies of insurance.

7    210.  Plaintiff, Progressive Direct Insurance Company is a corporation
8 organized and existing under the laws of the State of Ohio, with a principal place of
9 business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at
10 all times material hereto was engaged in the business of issuing policies of insurance.

11    211.  Plaintiff, Progressive Express Insurance Company is a corporation
12 organized and existing under the laws of the State of Ohio, with a principal place of
13 business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at
14 all times material hereto was engaged in the business of issuing policies of insurance.

15    212.  Plaintiff, Progressive Freedom Insurance Company is a corporation
16 organized and existing under the laws of the State of Ohio, with a principal place of
17 business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at
18 all times material hereto was engaged in the business of issuing policies of insurance.

19    213.  Plaintiff, Progressive Garden State Insurance Company f/k/a Salem
20 Insurance is a corporation organized and existing under the laws of the State of New
21 Jersey, with a principal place of business located at 6300 Wilson Mills Road, Mayfield
22 Village, Ohio 44143 which, at all times material hereto was engaged in the business
23 of issuing policies of insurance.

24    214.  Plaintiff, Progressive Gulf Insurance Company is a corporation
25 organized and existing under the laws of the State of Ohio, with a principal place of
26 business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at
27 all times material hereto was engaged in the business of issuing policies of insurance.

28    215.  Plaintiff, Progressive Hawaii Insurance Corp is a corporation organized

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

216. Plaintiff, Progressive Marathon Insurance Company is a corporation organized and existing under the laws of the State of Michigan, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

217. Plaintiff, Progressive Max Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

218. Plaintiff, Progressive Michigan Insurance Company is a corporation organized and existing under the laws of the State of Michigan, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

219. Plaintiff, Progressive Mountain Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

220. Plaintiff, Progressive New Jersey Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

221. Plaintiff, Progressive Northern Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

222.   Plaintiff, Progressive Northwestern Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

223.   Plaintiff, Progressive Paloverde Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143. which, at all times material hereto was engaged in the business of issuing policies of insurance.

224.   Plaintiff, Progressive Preferred Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

225.   Plaintiff, Progressive Premier Insurance Company of Illinois is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

226.   Plaintiff, Progressive Security Insurance Company is a corporation organized and existing under the laws of the State of Louisiana, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

227.   Plaintiff, Progressive Select Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

228.   Plaintiff, Progressive Southeastern Insurance Company is a corporation organized and existing under the laws of the State of Indiana, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

229.   Plaintiff, Progressive Specialty Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

230.   Plaintiff, Progressive Universal Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

231.   Plaintiff, United Financial Casualty Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 6300 Wilson Mills Road, Mayfield Village, Ohio 44143 which, at all times material hereto was engaged in the business of issuing policies of insurance.

232.   Plaintiff, General Casualty Insurance Company, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

233.   Plaintiff, General Casualty Company of Wisconsin, is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

234.   Plaintiff, Southern Pilot Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

235.   Plaintiff, Unigard Insurance Company is a corporation organized and existing under the laws of the State of Wisconsin, with a principal place of business located at One QBE Way, Sun Prairie, Wisconsin 53956 which, at all times material hereto was engaged in the business of issuing policies of insurance.

236.   Plaintiff, Root Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 80 E. Rich St., Ste. 500, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

237.   Plaintiff, Root Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located at 80 E. Rich St., Ste. 500, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

238.   Plaintiff, Root Lone Star Insurance Agency, Inc., the Managing General Agent for Redpoint County Mutual Insurance Company, is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 13215 Bee Cave Parkway, Suite B150, Austin, Texas 78738 which, at all times material hereto was engaged in the business of issuing policies of insurance.

239.   Plaintiff, Milbank Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at 518 East Broad Street, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

240.   Plaintiff, State Automobile Mutual Insurance Company is a corporation organized and existing under the laws of the State of Ohio, with a principal place of business located at 518 East Broad Street, Columbus, Ohio 43215 which, at all times

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

material hereto was engaged in the business of issuing policies of insurance.

241. Plaintiff, State Auto Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Iowa, with a principal place of business located at 518 East Broad Street, Columbus, Ohio 43215 which, at all times material hereto was engaged in the business of issuing policies of insurance.

242. Plaintiff, Garrison Property & Casualty Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288 which, at all times material hereto was engaged in the business of issuing policies of insurance.

243. Plaintiff, United Services Automobile Association is an unincorporated reciprocal exchange organized and existing under the laws of the State of Texas, with a principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288 which, at all times material hereto was engaged in the business of issuing policies of insurance.

244. Plaintiff, USAA Casualty Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288 which, at all times material hereto was engaged in the business of issuing policies of insurance.

245. Plaintiff, USAA General Indemnity Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 9800 Fredericksburg Road, San Antonio, Texas 78288 which, at all times material hereto was engaged in the business of issuing policies of insurance.

246. Plaintiff, First Chicago Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 6640 South Cicero Avenue, Bedford Park, Illinois 60638, which, at all times material hereto was engaged in the business of issuing policies of insurance.

247.   Plaintiff, Old American County Mutual Fire Insurance Company is a corporation organized and existing under the laws of the State of Texas, with a principal place of business located at 14675 Dallas Parkway, Suite 500, Dallas, Texas 75254 which, at all times material hereto was engaged in the business of issuing policies of insurance.

248.   Plaintiff, United Security Health and Casualty Insurance Company is a corporation organized and existing under the laws of the State of Illinois, with a principal place of business located at 6640 South Cicero Avenue, Bedford Park, Illinois 60638 which, at all times material hereto was engaged in the business of issuing policies of insurance.

## JURISDICTION AND VENUE

### (Alleged by All Plaintiffs)

249.   Pursuant to Federal Rule of Civil Procedure 4(k)(1)(A), California law regarding personal jurisdiction, and The Fourteenth Amendment of The United States Constitution, this Court has personal jurisdiction over all Defendants. In particular, this Court has general personal jurisdiction over Defendants KA and HMA as both companies are incorporated in California and maintain their corporate headquarters and/or principal places of business in California.

250.   This Court has also has specific personal jurisdiction over Defendants HMC and KC as both are global automobile manufacturers who purposely availed themselves of the automobile and automobile-related products' markets in California by extensively promoting, warranting, selling, leasing and servicing, directly and indirectly, vehicles (including the Class Vehicles) and related automobile products in California. Those Class Vehicles were defective and otherwise violated federal and California laws (as set forth in detail in this Amended Complaint) resulting in significant damages to the insureds of the Class Plaintiffs in California.

251.   In 2015, Defendant HMC purposefully availed itself of the protections of various statutes of the United States and California common law by filing, in this

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

very District, an action whereby it averred that, "HMC, one of the leading automobile manufacturers in the world, manufactures Hyundai-branded parts for sale in the United States and abroad."  While the matter is no longer pending, it demonstrates conclusively that it is reasonable to hale HMC into this judicial district consistent with the Federal Rules, California law, and the applicable principles of Constitutional Due Process.

252.   In 2021, Defendant KC purposefully availed itself of the protections of various statutes of the United States and California common law by filing, in this very District, an action whereby it averred that, "KIA is an innovative, world-renowned company that manufactures, sells and distributes KIA branded automobiles and parts throughout the United States and around the world. KIA is a Korean company, located in Seoul, Republic of Korea.  KIA manufactures and sells automobiles and automobile parts under the KIA brand." The action is presently stayed, but demonstrates conclusively that it is reasonable to hale KC into this judicial district consistent with the Federal Rules, California law, and the applicable principles of Constitutional Due Process.  .

253.   This Court further has specific personal jurisdiction over all Defendants as they purposely served the California market for automobiles, and in excess of 20,000 insurance claims have been made within California due to the failures of Defendants' Vehicles in the State.  *See Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 141 S. Ct. 1017, 1026 (2021).

254.   The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2) of the Class Action Fairness Act of 2005 as the amount in controversy exceeds $5 million, exclusive of interest and costs, at least one member of the class is a citizen of a state different from each of the named defendants, and the number of members of the proposed class exceeds 100.  This Court has supplemental jurisdiction over the state court claims pursuant to 28 U.S.C. § 1367.

255.   This Court otherwise has subject matter jurisdiction over this matter

pursuant to 15 U.S.C. § 2310(d) because: a) each of Plaintiffs' claims exceed $25 in value; b) the total amount in controversy exceeds $50,000; and c) the number of named Class Plaintiffs exceeds 100.

256.   Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as all Defendants do substantial business in this judicial district, including the selling of the Vehicles described in this Complaint. Further, HMA and KA are headquartered in California.

## FACTS COMMON TO ALL CAUSES OF ACTION

### (Alleged by All Plaintiffs)

**A.     Hyundai and Kia Became One of The Most Popular Automakers In The United States By Promoting The Safety, Quality, and Reliability of Their Vehicles**

257.   HMC was established in South Korea in 1967 and started selling vehicles in the United States in 1986 through its subsidiary HMA. Since that time, HMC has become one of the largest automakers in the United States and around the world.

258.   KC was founded in 1944 as a manufacturer of bicycles and motorcycles and is currently Korea's oldest motor vehicle manufacturer. KA was formed in 1992 when KC first imported its vehicles into the United States.

259.   In 1999, HMC announced that it acquired a controlling interest in KC, and that KC would obtain an ownership interest in approximately twenty-two (22) HMC subsidiaries. In subsequent years, HMC divested a portion of its interest and currently controls approximately 34% of KC.

260.   Through its network of more than 800 dealerships nationwide, HMA sells and services its vehicles, including the Hyundai Elantra (Hyundai's bestselling model), Hyundai Santa Fe, Hyundai Tucson, and Hyundai Accent.

261.   KA similarly sells and services a complete line of vehicles in the U.S. through its own network of over 700 dealers.

262.   Within the United States alone, HMA sold an average of 625,264

vehicles per year since 2006, approximately 4.13% of the total U.S. market.[12]

263.   Over the same time period, KA sold an average of 500,351 vehicles per year, or approximately 3.3% of the U.S. market.[13]

264.   Today, over half the cars HMC sells in the United States are designed and manufactured domestically at HMA's facilities, including at its "design, research, and testing grounds in California" near its corporate headquarters.[14] In total, HMC and HMA employ approximately 5,000 people at these facilities, and an additional 20,000 employees at U.S. dealerships.

265.   Hyundai and Kia branded vehicles incorporate many common components and design features.  Furthermore, the same group of engineers work on Hyundai and Kia vehicles at Hyundai-KA Technical Center, Inc. ("HATCI").[15] HATCI serves as an "authorized representative" for HMC, HMA, KC, and KA when dealing with NHTSA in connection with various Safety Standards.

266.   On HMC's webpage devoted to promoting its vehicles sold around the world, including those sold by HMA, HMC touts the safety of its vehicles.[16]  HMC advertises that "[f]rom the moment you step into a Hyundai Motor's vehicle, safety surrounds you from all corners at every second, even in places you never imagined."[17]

267.   HMC touts its continued improvement of quality and safety measures and how it conducts extensive post-sale monitoring of its vehicles, and it does so because HMC knows that safety and quality are material to consumers:[18]

---

[12] https://carsalesbase.com/us-hyundai/ (last accessed Aug. 24, 2022).
[13] https://carsalesbase.com/us-kia/ (last accessed Aug. 25, 2022).
[14] https://www.hyundainews.com/en-us/about-us (last accessed Aug. 26, 2022).
[15] https://www.forbes.com/sites/jimhenry/2013/05/31/balancing-act-hyundaiand-kia-share-products-under-the-skin-but-must-avoid-blurring-identities/?sh=210585421c7a (last accessed Aug. 26, 2022); https://www.hyundainews.com/enus/releases/398 (last accessed July 14, 2021).
[16] *E.g.*, https://www.hyundai.com/worldwide/en/suv/tucson-2021/safety (last accessed Aug. 24, 2022).
[17] https://www.hyundai.com/worldwide/en/company/innovation/safety/research (last accessed Aug. 24, 2022).
[18] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed Aug. 24, 2022).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

*[W]e continue upgrading overall quality and safety systems not only by promoting preemptive quality and safety measures from the vehicle development stage, but also by preventing any significant problems afterward through early detection, early improvement and early after-sales actions.*

*In particular, we will establish a sustainable safety management system designed to maximize customer satisfaction and strengthen trust by developing quality and safety training programs, operating quality and safety reporting centers, analyzing safety information, and establishing safety test sites.*

268.    Likewise, KA advertises that it "believe[s] in the outstanding quality and durability of every new Kia that rolls off the assembly line" and that "[f]rom design to technology, materials to safety features, Kia continues to innovate[.]"[19]

269.    KA states on its website that it works "tirelessly to ensure [its] vehicle safety features are designed to help [its] drivers handle or avoid the unexpected."[20] KA claims that "Kia engineers are passionate about producing vehicles that are exceptionally well designed and reliable. Their dedication to quality and attention to detail give Kia the confidence to back every model with an industry leading warranty program."[21]

270.    KA's Warranty and Consumer Information Manual and promotional materials for Kia Vehicles similarly promote its purported dedication to safety.

271.    Defendants also affix to each Vehicle a VIN plate containing an express warranty that each vehicle made by the defendants "complies with all applicable

---

[19] https://www.kia.com/us/en/why-kia (last accessed Aug. 26, 2022).
[20] https://www.kia.com/us/en/why-kia (last accessed March 22, 2023).
[21] https://manualzz.com/doc/7136122/kia-2015-sorento-brochure---dealer-e (last accessed Aug. 26, 2022).

motor vehicle safety standards. In addition, Defendants expressly warranted on the VIN plates affixed to each vehicle, and in other communications, that each vehicle made by the Defendants complies with all theft prevention standards that were in effect on the date of manufacture. On information and belief, the Defendants extended these express warranties for every Vehicle.  Below is a sample VIN plate with the Defendants' express warranties affixed by KC to a 2015 Kia Optima Vehicle prior to its sale in the United States, in which it represents that "this vehicle conforms to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture…":



## B.     For Over Fifty Years, Auto Manufacturers Have Known That Thefts Pose a Serious Safety Risk

272.   It is well-established that auto thefts pose a serious safety risk to vehicle owners and bystanders. In 1966, Congress enacted the National Traffic and Motor Vehicle Safety Act (the "Safety Act"), 49 U.S.C. § 30101 *et seq*., "to reduce traffic accidents and deaths and injuries resulting from traffic accidents" and "to prescribe motor vehicle safety standards."

273.   In 1968, the DOT promulgated a new Safety Standard No. 114 (FMVSS No. 114) titled "Theft Protection; Passenger Cars," pursuant to the Safety Act. *See* 33

Fed. Reg. 6,471 (Apr. 27, 1968).

274.    FMVSS No. 114 was implemented after it was "demonstrated that **stolen cars constitute a major hazard to life and limb on the highways.**" *Id.* (emphasis added). As part of its evaluation of FMVSS No. 114, the DOT found that "[t]he evidence shows that cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals." *Id.*

275.    Among the evidence used in support of this conclusion was a 1968 study conducted by the Department of Justice ("DOJ"). The DOJ found that a substantially significant number of stolen vehicles would result in personal injury accidents:

> [T]here were an estimated 94,000 stolen cars involved in accidents in 1966, and more than 18,000 of these accidents resulted in injury to one or more people. On a proportionate basis, 18.2 percent of the stolen cars became involved in accidents, and 19.6 percent of the stolen-car accidents resulted in personal injury. The same study predicted that automobile thefts in 1967 total about 650,000; about 100,000 of these stolen cars could be expected to become involved in highway accidents. ***Comparing these figures with statistics for vehicles which are not stolen, the approximate rate for stolen cars would be some 200 times the normal accident rate for other vehicles***.

*Id.* Thus it is clear that FMVSS No. 114 was promulgated for safety.

276.    The DOJ survey found that "[t]he number of car thieves who start cars with so-called 'master keys' and devices which bypass the lock is … large enough to produce a significant safety hazard." *Id.* Accordingly, FMVSS No. 114 was explicitly designed to "defeat" this method for stealing a vehicle and requires "[a] large number of locking-system combinations and a steering or self-mobility lock." *Id.*

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

277.   While promulgating FMVSS No. 114, the DOT rejected several comments in opposition to the Standard which argued that "since any locking system, no matter how it is constructed, can be defeated by persons possessing sufficient skill, equipment, and tenacity, provisions for ensuring removal of ignition keys would be futile because a thief need not make use of a key." *Id.* In particular, the DOT relied on the DOJ study which found that "the large majority of car thieves are amateurs, almost half of whom are engaged in so-called 'joy-riding'" and that "most" of the thieves are juveniles. *Id*. This finding was a prescient warning to automobile manufacturers and just as relevant fifty years later given the plague of thefts by joy-riding juveniles of Defendants' Vehicles.

278.   Given the dramatic increase in the accident rate caused by stolen vehicles, the DOT determined that "***a reduction in the incidence of auto theft would make a substantial contribution to motor vehicle safety***. It would not only reduce the number of injuries and deaths among those who steal cars, it would also protect the many innocent members of the public who are killed and injured by stolen cars each year." *Id.* (emphasis added). Further, the DOT "concluded that a standard that would reduce the incidence of unauthorized use of cars meets the need for motor vehicle safety" and rejected the contention that the Theft Protection rules are "not related to improving motor vehicle safety." *Id*.

279.   The first iteration of FMVSS No. 114, Theft Protection; Passenger Cars, stated in relevant part:

> S1.   *Purpose and scope*. This standard specifies requirements for theft protection to reduce the incidence of accidents resulting from unauthorized use.
>
> S2. *Application*. This standard applies to passenger cars.
>
> S4. Requirements.
>
> ***S4.1 Each passenger car shall have a key-locking system that, whenever the key is removed, will prevent- (a)***

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

*Normal activation of the car's engine or other main source of motive power; and (b) Either steering or self-mobility of the car, or both.*

S4.2 The prime means for deactivating the car's engine or other main source of motive power shall not activate the deterrent required by S4.1(b).

S4.3 The number of different combinations of the key locking systems required by S4.1 of each manufacturer shall be at least 1,000, or a number equal to the number of passenger cars manufactured by such manufacturer, whichever is less.

S4.4 A warning to the driver shall be activated when the key required by S4.1 has been left in the locking system and the driver's door is opened.

*Id.* The standard became effective on January 1, 1970. *See id.*

280.   In the half century since the DOT recognized the safety risks posed by auto thefts, the agency has continued to monitor the safety risks posed by auto thefts and modernize its rules designed to prevent auto thefts.

281.   In 1984, Congress enacted the Motor Vehicle Theft Law Enforcement Act (the "Theft Act"), 49 U.S.C. 33101, *et seq.*, which directs NHTSA to establish theft prevention standards for passenger vehicles. *See* 81 Fed. Reg. 66,833, 66,834 (Sept. 29, 2016). Pursuant to the Theft Act, NHTSA implemented 49 C.F.R. Part 541, which requires manufacturers of designated high-theft passenger car lines to inscribe or affix the Vehicle Identification Number (VIN) onto the engine, the transmission, and major body parts. Each vehicle in a high-theft line must have its major parts and major replacement parts marked unless the vehicle line is granted an exemption from the parts marking requirements ("PMR"). A manufacturer may petition for a PMR exemption when it plans to install a standard, and effective anti-theft device on the

entire line. *See* 49 C.F.R. §§ 543.1, *et seq.* The agency must determine that the anti-theft device to be installed on the line is likely to be as effective in reducing and deterring motor vehicle theft as parts-marking.

282.   In 1992, Congress enacted the Anti Car Theft Act (Pub. L. No. 102- 519, codified at 49 U.S.C. chapter 331), which expanded the PMR to include multipurpose passenger vehicles and certain light duty trucks. On April 6, 2004, the Federal Motor Vehicle Theft Prevention Standard was extended to include all passenger cars, multipurpose passenger vehicles with a gross vehicle weight rating (GVWR) of 6,000 pounds or less, all light-duty trucks (LDTs) determined to be high-theft (with a gross vehicle weight rating of 6,000 pounds or less), and all low theft LDTs with major parts that are interchangeable with a majority of the covered major parts of those passenger motor vehicle lines subject to the theft prevention standard. 69 Fed. Reg. 17,960 (Apr. 6, 2004).

283.   In 2006, NHTSA stated that its "safety standard on theft protection [FMVSS No. 114] specifies vehicle performance requirements intended to reduce the incidence of crashes resulting from theft and accidental rollaway of motor vehicles." *See* 71 Fed. Reg. 17,752 (Apr. 7, 2006). NHTSA made clear that "the standard sought to ensure that the vehicle could not be easily operated without the key" and that "thieves… could [not] bypass the ignition lock." *Id.* at 17,752-53.

284.   The ignition lock (also referred to as an ignition cylinder or lock cylinder) is the portion of the ignition assembly where the key is inserted. The ignition lock prevents the ignition switch, which is located behind the ignition lock, from turning to start the vehicle without the right key.

285.   If the correct key is inserted, small actuators in the lock cylinder will match up with the key and allow the driver to turn it; a process that, in turn, rotates the vehicle's ignition switch, thereby starting the vehicle.

286.   FMVSS No. 114 is currently codified as 49 C.F.R. 571.114, which provides:

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

**S1. Scope**. This standard specifies vehicle performance requirements intended to reduce the incidence of crashes resulting from theft and accidental rollaway of motor vehicles.

**S2. Purpose**. The purpose of this standard is to decrease the likelihood that a vehicle is stolen, or accidentally set in motion.

**S3. Application**. This standard applies to all passenger cars, and to trucks and multipurpose passenger vehicles with a GVWR of 4,536 kilograms (10,000 pounds) or less. However, it does not apply to walk-in van-type vehicles. Additionally, paragraph S5.3 of this standard applies to all motor vehicles, except trailers and motorcycles, with a GVWR of 4,536 kilograms (10,000 pounds) or less.

**S4. Definitions**.

*Combination* means a variation of the key that permits the starting system of a particular vehicle to be operated.

*Key* means a physical device or an electronic code which when inserted into the starting system (by physical or electronic means), enables the vehicle operator to activate the engine or motor.

…

*Starting system* means the vehicle system used in conjunction with the key to activate the engine or motor.

**S5 Requirements**. Each vehicle subject to this standard must meet the requirements of S5.1, S5.2, and S5.3. Open-body type vehicles are not required to comply with S5.1.3.

**S5.1 Theft protection.**

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

S5.1.1 Each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:

(a)    The normal activation of the vehicle's engine or motor; and

(b)    Either steering, or forward self-mobility, of the vehicle, or both.

287.    FMVSS No. 114 is a "self-certification" process.[22] In other words, "NHTSA does not issue type approval certifications and does not certify any motor vehicles or motor vehicle equipment as complying with applicable FMVSS." Instead, NHTSA relies on manufacturers, including Defendants, to accurately report that they are complying with the standard. The Vehicles, however, clearly do not satisfy FMVSS No. 114. Defendants, on information and belief, did not comply with their obligations to accurately self-report compliance with FMVSS No. 114.

288.    NHTSA is also required to periodically obtain and publish accurate and reliable theft data. 49 U.S.C. 33104(b)(4) (Designation of high theft vehicle lines and parts). The National Crime Information Center ("NCIC") of the Federal Bureau of Investigation provides this data to NHTSA. The NCIC is a governmental system that receives vehicle theft data from approximately 23,000 criminal justice agencies and other law enforcement authorities throughout the United States. This national data includes the reported thefts of self-insured and uninsured vehicles, not all of which are reported to other data sources.

289.    In connection with fulfilling its administrative mandate under both the Safety Act and the Theft Act, NHTSA regularly interacts with, seeks comment from, and shares information with, automotive manufacturers and their authorized representatives, including HMA and KA.

---

[22] *See* https://www.nhtsa.gov/sites/nhtsa.gov/files/manufacturer_information_march2014.pdf (last accessed March 24, 2023).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

## C.     Engine Immobilizers Are an Inexpensive and Proven Means to Dramatically Reduce Auto Theft

290.   In the fifty years following the codification of FMVSS No. 114, manufacturers have developed a bevy of safety features to comply with the standard. Many of these features would have been inconceivable to drivers in 1968.  However, other design features, including engine immobilizers, were already well-known and were directly contemplated at the time of FMVS No. 114's enactment.

291.   An immobilizer is an anti-theft device that can prevent vehicles from being started unless a verified code is received by a transponder module that controls the engine. *See* 81 Fed. Reg. 66,833 (Sept. 29, 2016). This theft-prevention device thus prevents the vehicle from being "hot-wired" or started by any means other than an authorized key. Engine immobilizers have been described as "simple and low-cost anti-theft device[s]."[23]

292.   Engine immobilizers have become an industry standard component in consumer vehicles across the globe: including in vehicles produced by Defendants.

293.   The very same Vehicles the Defendants sold without the legally required anti-theft equipment in the United States were sold with engine immobilizers in Canada and various other countries in Europe and elsewhere. Defendants made immobilizers available to some purchasers of the defective Vehicles, but only on the condition that those purchasers were willing to pay for expensive upgrades and luxury trim packages.

294.   Over the last three decades, as the Defendants themselves have asserted in petitions they filed with NHTSA[24], immobilizers have been proven to be highly effective in dramatically reducing auto theft.

295.   A study conducted in Europe, after immobilizers were mandated, found

---

[23] van Ours, Jan C. and Vollaard, Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 14, 2013). CentER Discussion Paper Series No. 2013-004, TILEC Discussion Paper No. 2013-001, available at SSRN: https://ssrn.com/abstract=2202165.
[24] *See* 72 Fed. Reg. 39,661 (July 19, 2007)

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

that the overall rate of auto thefts fell by 46% between 1995 and 2008.[25]On information and belief, this data is known to Defendants. The same study also found that the additional manufacturing costs related to installing an engine immobilizer was as little as approximately $50 per vehicle, and the benefits in terms of prevented thefts are many times higher than the costs of installing the device. The Defendants themselves have asserted in their NHTSA filings that thefts of vehicles equipped with immobilizers decrease car thefts by up to 70%, if not more.[26]  So Defendants have long known that the installation of immobilizers is a cheap and effective means to drastically deter, and reduce thefts while complying with FMVSS No. 114.

296.   Given how effective and relatively inexpensive engine immobilizers are, most automotive regulators around the globe require the installation of the device in new vehicles sold.  This too, is known to Defendants.

297.   In November of 1995, the European Union ("EU") adopted Directive 74/61/EEC, which made installation of an electronic engine immobilizer mandatory in all new passenger cars sold within the EU as of October, 1998.[27]  Australia has required immobilizers in vehicles sold since 2001 and Canada has required immobilizers since 2007. In parts of Australia and Canada, the legislation also extended to the existing car fleet.[28]

298.   NHTSA has repeatedly demonstrated its support for the installation of immobilizers and has stated that the device complies with FMVSS No. 114. In 2006, ***NHTSA noted that FMVSS No. 114 was promulgated due to the agency's "concern about car thieves who could bypass the ignition lock."*** 71 Fed. Reg. 17,752, 17,753. NHTSA went on to explain how a manufacturer's engine immobilizer satisfied FMVSS No. 114:

---

[25] van Ours, Jan C. and Vollaard, Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 31, 2013). CESifo Working Paper Series No. 4092, available at SSRN: https://ssrn.com/abstract=2214895.
[26] *See* 75 Fed. Reg. 1,447, 1,448 (Jan. 11, 2010)
[27] van Ours, Jan C. and Vollaard, Ben, The Engine Immobilizer: A Non-Starter for Car Thieves (January 31, 2013).
[28] *Id.*

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

We note that in promulgating FMVSS No. 114, the agency expressed concern about car thieves who could bypass the ignition lock. In response to this concern, the agency decided to require a device, which would prevent either self-mobility or steering even if the ignition lock were bypassed (see 33 FR 4471, April 27, 1968). The engine control module immobilizer described in your letter satisfies the requirements of S4.2(b) because it locks out the engine control module if an attempt is made to start the vehicle without the correct key or to bypass the electronic ignition system. When the engine control module is locked, the vehicle is not capable of forward self-mobility because it is incapable of moving forward under its own power.

*Id*.

299.   Since the introduction of engine immobilizers, the rate of auto thefts has fallen dramatically as demonstrated in the following table published by NHTSA in 2017 and detailing the theft rate in the United States from 1993 through 2014:



FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

82 Fed. Reg. 28, 246, 28247 (June 21, 2017).

300.   In a 2013 NHTSA report regarding the drop in the vehicle theft rate from 1993 through 2011, NHTSA noted that it "*believes that the theft rate reduction is a result of several factors, including* vehicle parts marking; *the increased use of standard anti-theft devices and other advances in electronic technology (i.e., immobilizers) and theft prevention methods*; increased and improved prosecution efforts by law enforcement organizations; and, increased public awareness which may have contributed to the overall reduction in vehicle thefts." 78 Fed. Reg. 41,016, 41,017 (July 9, 2013).

301.   Studies, of which the Defendants, as car manufacturers, were well aware, conducted by the Highway Loss Data Institute ("HLDI"), similarly found that "vehicle theft losses plunged after immobilizers were introduced."[29]

302.   The National Insurance Crime Bureau ("NICB"), an organization dedicated exclusively to fighting insurance fraud and crime, noted in a 2013 report concerning auto thefts that a reduction in vehicle thefts requires an immobilizer.[30] The NICB put it simply: "[g]enerally speaking, if your vehicle can't be started, it can't be stolen."

303.   A study conducted by HLDI found that immobilizers were standard on 62% of non-Hyundai and Kia vehicles by the introduction of the 2000 model year ("MY") vehicles.[31] By the time 2015MY vehicles were sold, 96% of non-Hyundai and Kia vehicles were equipped with immobilizers. However, only 26% of Hyundai and Kia vehicles were sold with immobilizers as standard equipment. Thus, Defendants are out of step with the industry, and failed to comply with Federal Motor Vehicle Safety Standards for the vast majority of their vehicles. In order for an Insured

---

[29] *See* https://www.iihs.org/news/detail/hyundais-kias-are-easy-targets-amidboom-in-vehicle-thefts (last accessed March 21, 2023).
[30] https://www.nicb.org/sites/files/2017-10/2013-Hot-Wheels-Report.pdf (last accessed March 22, 2023).
[31] Highway Loss Data Institute (HLDI) Bulletin Vol. 38, No. 28 (December 2021), available at https://www.iihs.org/news/detail/hyundais-kias-are-easy-targetsamid-boom-in-vehicle-thefts (last accessed March 22, 2023).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

to have her or his vehicle equipped with mandatory anti-theft protection, Defendants required the Insured to pay additional money and upgrade to a much more expensive options package. In other words, the Defendants only provided mandatory safety equipment if the Insured was forced to pay for expensive, luxury and/or non-essential items.

304.   Many of the vehicles with PMR exemptions are comparably priced to Hyundai and Kia vehicles. For instance, the MSRP for a 2021 Hyundai Elantra ranges from $19,650 to $28,100, and the MSRP for a 2021 Honda Civic, which includes an engine immobilizer, ranges from $21,050 to $28,100.[32]

## D.   The Vehicles Are Thief Friendly, Defective, and Do Not Comply With FMVSS No. 114

305.   As alleged above, the DOT and DOJ found in 1968 that amateur thieves who steal cars to go joyriding make up a significant portion of all auto thefts in America. Moreover, amateur thieves can steal Defendants' Vehicles in seconds using a USB device or screwdriver.

306.   The Defendants provided anti-theft protection in the form of immobilizers for their more expensive vehicles.  However, for their less expensive Vehicles, the Defendants decided to make and sell these cars with a Thief Friendly Design, only providing anti-theft immobilizer technology if the purchaser paid for expensive and unnecessary trim packages.  Effectively, Kia and Hyundai were telling their customers that they would only get the seatbelt if they paid for leather seats or expensive audio equipment.

307.   Predictably, this defect eventually became common knowledge.  In or around 2020, a group of teenagers in Milwaukee, who dubbed themselves the "Kia Boyz" on social media platforms began to publicize precisely how to take advantage of the Thief Friendly Design to steal the Vehicles in a matter of seconds.

308.   Contrary to Defendants' statements claiming to employ the latest

---

[32] https://www.edmunds.com/hyundai/elantra/2021/ (last accessed Aug. 26, 2022).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

technology and safety features in their Vehicles, the automotive news website *The Drive* noted that the Thief Friendly Design allows thieves to start the engines and steal the Vehicles with "the same trick [used] on a car from the 1980s."[33]

309.   The Vehicles do not comply with FMVSS No. 114 because they do not contain a meaningful anti-theft device, such as an immobilizer or any other effective anti-theft features that prevent the normal activation of the vehicle's engine without a key. Consequently, the Vehicles do not contain starting systems that prevent forward self-mobility of the Vehicles when the thief does not have a key.  Defendants violated FMVSS No. 114, while contravening industry standard practices, and flouting common sense that clearly dictates installation of an immobilizer as a low cost means of complying with FMVS No. 114 to reduce theft and provide customers with an adequate measure of security.  Failing to install an immobilizer, or any comparable method of compliance with FMVS No. 114 meant that vehicle owners could not be sure that their vehicles would be safe, undamaged, or available to them when required for transport.

**E.**   **Defendants Knowingly Manufactured and Sold Millions of Vehicles That Are Easily Stolen In Seconds**

310.   After considerable public outcry and scrutiny, in 2022, Defendants slowly began to acknowledge that their Vehicles suffer from the Thief Friendly Design, and therefore, are easily stolen.  For the reasons described below, Defendants knew or should have known of the Defect long before they sold the Vehicles.

311.   On information and belief, each Defendant was aware of the Thief Friendly Design and the safety risk it posed to Vehicle owners and lessees (as well as bystanders), through the following sources, including, but not limited to: (1) their presale testing and Safety Standards self-certification process for the Vehicles; (2) analyses and usage of engine immobilizers in non-Vehicles, their PMR petitions, and

---

[33]https://www.thedrive.com/news/how-thieves-are-stealing-hyundais-and-kiaswith-just-a-usb-cable (last accessed Aug. 26, 2022).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1 usage of engine immobilizers in vehicles sold outside the U.S. market; (3) the

2 practices of peer auto makers; (4) monitoring of Vehicle thefts; and (5) monitoring of

3 customer complaints, dealership records, warranty claims, and replacement parts

4 orders.

5     312.  Further, on information and belief, given the corporate relationships

6 between Defendants, each of them shared key facts and knowledge about the Thief

7 Friendly Design with each other on an ongoing basis in real time, and that should have

8 notified them of the Thief Friendly Design.

9 **F.**  **Defendants Should Have Uncovered the Thief Friendly Design Through**

10       **the FMVSS Self-certification Process and Pre-sale Testing**

11     313.  Defendants are experienced in the design and manufacture of consumer

12 vehicles. As experienced manufacturers, Defendants are aware of applicable Safety

13 Standards, including FMVSS No. 114. Under 49 U.S.C. § 30115. Defendants are

14 required to certify that each of their vehicles "complies with applicable motor vehicle

15 safety standards."  Defendants offered express warranties that their vehicles complied

16 with anti-theft regulations.

17     314.  On information and belief, Defendants employ consultants and engineers

18 that are knowledgeable of FMVSS No. 114 and who are involved in the design,

19 manufacturing, and testing of the Vehicles prior to sale to ensure compliance with the

20 Safety Standard.

21     315.  HMC states that it conducts "preemptive quality and safety measures

22 from the vehicle development stage."[34]

23     316.  HMC touts its robust Product Quality Management systems, "based on

24 its "quality philosophy of 'producing defect-free vehicles that will never break down'

25

26

27     [34]https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainabi

28 lity/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed August 24, 2022).

backed by cutting-edge safety technologies:"[35]

> **Establishing Quality Management System** Hyundai seeks to create "customer safety" values by securing leading quality standards in the global market and strengthening quality management through technical preventive quality activities, among other initiatives. We have established a company-wide integrated quality management system to satisfy customers' diverse quality and safety requirements, …..

> **Quality Management Standards and Techniques**

> Hyundai has introduced and applied quality management techniques to strengthen its market competitiveness on the basis of "defect-free quality". Our quality management techniques, aimed at providing customers with vehicles of the very highest quality in all fields, such as R&D, production, sales, and services, are supported by the best experts in each field (Man); optimal equipment (Machine); the best parts (Material); the best method (Method); thorough verification (Measurement); and commitment to defect free quality (Moral). ….. We also make continuous efforts to upgrade quality management standards and criteria based on the data collected and analyzed in quality risk management processes, such as quality checks, case studies, and improvements.

---

[35] https://www.hyundai.com/content/dam/hyundai/ww/en/images/company/sustainability/about-sustainability/hmc-2022-sustainability-report-social-en.pdf (last accessed Aug. 26, 2022).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

**Preemptive Management of Quality Risks** From the early design stage of new vehicle development, Hyundai preemptively inspects and manages parts suppliers as well as its own production process quality. Based on product drawings, we conduct a comprehensive review of parts in terms of functions, structures, reliability, and durability, while carefully analyzing our own processes and those of suppliers before issuing the final approval, thereby eliminating quality risks throughout production processes in advance. In addition to our own verification of test vehicles, Hyundai relies on the test drive opinions of customers and professional quality organizations to identify major issues and carry out improvement activities in parallel. *Moreover, Hyundai holds quality inspection meetings on regular basis, and in particular, on the verge of new car models' mass production, reports the quality risk assessment results and taken measures to the highest level of management.*

**Quality Risk Assessment – Identification and Improvement** Hyundai has established a control tower devoted to the management of vehicle quality risks in the production process. *Whenever a quality risk is detected from information acquired through statistical process control, periodic inspections, and shipment pass rates, the control tower takes the lead in conducting joint investigations and taking the necessary countermeasures.* Also, in order to prevent quality risks from occurring in the

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

vehicle production process, we take thorough preventive measures, such as process management by suppliers, assessment of quality prevention activities, validation of quality inspection equipment, and reliability testing of parts.…

**Strengthening     Quality     Verification     Capabilities** Hyundai provides annual training on the roles and major tasks involved in securing its pre-manufacturing quality, manufacturing quality, and ***market quality as a way to strengthen the verification capability of its overall quality value chain***. …. In addition, we offer expert courses on quality verification in collaboration with external educational institutions to verify new technologies following the transition to electrification and to strengthen the verification of quality issues from the customer's point of view.

317.  Through this testing and as part of their 49 U.S.C. § 30115 self-certification process, Defendants should have uncovered the Thief Friendly Design. Further, on information and belief, Defendants knew their vehicles did not employ any anti-theft measures which satisfied the FMVSS 114.

**G.    Defendants' Specific Knowledge Concerning the Efficacy of Engine Immobilizers and Their Use of Immobilizers in Other Vehicles Should Have Notified Them of the Thief Friendly Design**

318.  Defendants have long been aware of the efficacy of immobilizers and other anti-theft technology that Defendants employ in other vehicles that they make and distribute.

319.  In other countries, HMC and KC sell the very same, or substantially

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

similar, Vehicles with engine immobilizers included as a standard feature. For example, in the 2020 Kia Sportage Owner's Manual for Canada, Kia notes that the "vehicle is equipped with an electronic engine immobilizer system to reduce the risk of unauthorized vehicle use."[36]

320.   Further, Defendants have long understood that immobilizers are effective anti-theft and security devices as demonstrated by Defendants' incorporation of immobilizers both as standard technology in select higher-end models, and as an optional trim-package feature on other models in the United States.

321.   On March 2, 2007, HATCI, acting on behalf of HMA, petitioned NHTSA for a PMR exemption for the Hyundai Azera vehicle line beginning with MY 2008. *See* 72 Fed. Reg. 39,661 (July 19, 2007). In that petition, Hyundai stated that it "will install its passive anti-theft device as standard equipment on the vehicle line. Features of the anti-theft device will include a passive immobilizer consisting of an EMS (engine control unit), SMARTRA (immobilizer unit), an antenna coil and transponder ignition keys." This form of immobilizer was transponder based, first introduced in 1996, and already standard in Defendants' competitors' vehicles. The petition specifically notes that Hyundai "believes that the GM Pass-Key and Ford Securilock devices contain components that are functionally and operationally similar to its device," which have been shown in theft data from the NCIC to produce "***a clear reduction in vehicle thefts*** after the introduction of the GM and Ford devices." *Id.*

322.   On October 22, 2007, HATCI, on behalf of Hyundai, submitted a petition for PMR exemption for its luxury Hyundai Genesis vehicle line beginning with MY 2009. 73 Fed. Reg. 4,304, 4,305 (Jan. 24, 2008). That same day, HATCI submitted a PMR exemption petition on behalf of KC (then known as Kia Motors Corporation) for its luxury Kia Amanti vehicle line beginning with MY 2009. 75 Fed. Reg. 1,447, 1,448 (Jan. 11, 2010).

---

[36] *See, e.g.,* https://www.destinationkia.com/blogs/1016/wp-content/uploads/2019/07/2020-Kia-Sportage-Owners-Manual.pdf (last accessed Aug. 29, 2022).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

323.   Like the Azera petition, HATCI stated that Defendants would install a passive immobilizer consisting of an EMS (engine control unit), SMARTRA 3 (immobilizer unit), an antenna coil and transponder ignition keys standard in the vehicle lines. *Id*. In both petitions, HATCI again touted the success of immobilizers in GM and Ford vehicles in reducing auto thefts. *Id*. In particular, HATCI reiterated the same statistics touting immobilizers:

> ***[Hyundai and HATCI] provided theft rate data for the Chevrolet Camaro and Pontiac Firebird vehicle lines showing a substantial reduction in theft rate comparing the lines between pre- and post introduction of the Pass-Key device.*** [Hyundai and HATCI] also provided "percent reduction" data for theft rates between pre- and postproduction years for the Ford Taurus and Mustang, and Oldsmobile Toronado and Riviera vehicle lines normalized to the three-year average of the Camaro and Firebird pre-introduction data. ***[Hyundai and HATCI] stated that the data shows a dramatic reduction of theft rates due to the introduction of devices substantially similar to the [Hyundai and Kia] immobilizer device.*** Specifically, the Taurus, Mustang, Riviera and Toronado vehicle lines showed a ***63, 70, 80 and 58 percent theft rate reduction respectively between pre- and post introduction of immobilizer devices as standard equipment on these vehicle lines***.

*Id*.

324.   In a petition filed by Hyundai in 2009 for its VI vehicle line, beginning with MY 2011, Hyundai stated it will "install its passive Smart-key Immobilizer device and alarm system (audible and visual) on the VI vehicle line as standard

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

equipment." 75 Fed. Reg. 6,253 (Feb. 8. 2010). In support of its petition, Hyundai relied on an "April 2006 report by JP Research, Inc., which concluded that anti-theft devices were consistently much more effective in reducing thefts when compared to parts marking."

325. In particular, the cited JP Research report found that vehicle lines containing anti-theft devices "*were 70% more effective than parts marking in deterring theft*." Hyundai's petition also relied on theft data from other manufacturer's vehicle lines (Lincoln Town Car, Chrysler Town and Country, Mazda MX–5 Miata and Mazda 3) that have been exempted from the theft prevention standard. Hyundai noted that "[t]heft rates for the Lincoln Town Car, Chrysler Town and Country, Mazda MX–5 Miata and Mazda 3 all are below the median theft rate of 3.5826." Further, Hyundai touted the success of its immobilizers in its Azera model, stating:

> Hyundai also compared the theft rates for its Azera model which has been installed with an anti-theft device as standard equipment since (MY 2006) and was granted an exemption from the theft prevention standard in MY 2008 to the overall theft rate reported by NHTSA for model years (MYs') 2006 and 2007. The theft rate for the MY 2006 Hyundai Azera was 0.7758 which was comparatively lower than the overall theft rate of 2.08 for MY 2006. The theft rate for the MY 2007 Azera was 1.8003, also comparatively lower than the overall theft rate of 1.86 for MY 2007. ***Conclusively, Hyundai stated that it believes the data indicate that installation of anti-theft devices are effective in reducing thefts***.

326. On September 8, 2016, and January 22, 2017, HATCI, on behalf of HMA and KA, respectively, submitted PMR exemption petitions for two hybrid electric

vehicle lines, the MY 2017 Hyundai Ioniq and the MY 2018 Kia Niro. *See* 82 Fed. Reg. 22,051, 22,048 (May 11, 2017) 82 Fed. Reg. 22,048 (May 11, 2017). As part of these petitions, HATCI again touted the JP Research Report's conclusion that anti-theft devices "were 70% more effective than parts marking in deterring theft."

327.   Defendants possessed, analyzed, and explicitly relied on factual data pertaining to the rate of thefts in vehicles with and without immobilizers that show the benefits of immobilizers. Defendants' PMR petitions show that they were aware immobilizers had become standard safety components in the industry and meaningfully eliminated the risk of thieves bypassing ignition locks.  Yet Defendants decided not to include these standard safety components in the Vehicles.

328.   Defendants were keenly aware of the disparate risk created by their decision not to install immobilizers in the Vehicles long before the first Vehicle was sold and years before the current theft epidemic began to plague consumers nationwide, including Plaintiffs' Insureds.

**H.    Defendants Were on Notice of the Thief Friendly Design From Their Efforts to Monitor Vehicle Thefts, which Occurred at a Shocking Rate**

329.   In addition to the research cited in Defendants' PMR petitions, publicly available information concerning vehicle thefts in the United States over the last decade notified Defendants as to the extent of the issue created by the Thief Friendly Design.

330.   For years, the Vehicles suffered disproportionally high rates of theft for Vehicles that are not typically targeted by car thieves. But the number of reported Vehicle thefts skyrocketed in 2020 when the existence of the Thief Friendly Design began to circulate on social media.

331.   While the rate of Vehicle thefts exploded in 2020, the Vehicles have always suffered from the Thief Friendly Design, and as a result, have been among the most stolen vehicles in the nation for a decade.

332.   Beginning around 2010, Hyundai and Kia started to increase the number

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

of vehicles sold in the U.S.—built upon their marketing campaigns concerning the safety and reliability of their vehicles.

333.   Coinciding with the growth in sales of Hyundai and Kia vehicles and the prevalence of Vehicles on U.S. streets, more and more of Defendants' vehicles began to appear in crime statistics.

334.   Every year since 2007, the NICB publishes its "Hot Wheels" report that identifies the most stolen vehicles in the United States.[37] The report examines vehicle theft data submitted by law enforcement to the NCIC and determines the vehicle make, model and model year most reported stolen each year. In fact, the NCIC data relied on by the NICB was utilized by Defendants when seeking PMR exemptions. *See* 72 Fed. Reg. 39,661.

335.   Hyundai and Kia Vehicles have been listed within the top ten stolen cars since 2013.  This is remarkable, since the Vehicles are not the type of luxury or high-performance vehicles which typically are targeted by car thieves.  Hyundai and Kia vehicles have made it to this infamous top ten list solely and exclusively because of their violations of federal law and industry standards while selling the Vehicles without anti-theft immobilizer protective equipment.

336.   In September of 2022, the HLDI, which collects information on insurance claims, revealed that "2015-2019 Hyundai and Kia models are roughly twice as likely to be stolen as other vehicles of similar age."[38]  In reality, based upon more recent theft data, the subject Vehicles likely are being stolen at a rate of five or more times the theft rate of other vehicles.

337.   On information and belief, Defendants monitored Vehicle theft rates, including the Hot Wheels reports and the underlying NCIC data, but took no action to protect their customers.

338.   On information and belief, Defendants collected and analyzed their own

---

[37] *See* https://www.nicb.org/news/blog/hot-wheels-americas-10-most-stolenvehicles (last accessed Aug. 26, 2022).

[38] https://www.cnn.com/2022/09/22/business/hldi-hyundai-kia-theft/index.html (last accessed April 10, 2023).

data sets of theft rates for the Vehicles. For instance, Hyundai cited the theft rate for the Azera model line in its 2009 PMR petition for its VI vehicle line. *See* 75 Fed. Reg. 6,253 (Feb. 8. 2010).

339.   On information and belief, Defendants conducted investigations into the Vehicle thefts, which would have shown that the thefts were primarily conducted in a similar manner, and would have been greatly reduced by the implementation of immobilizers.

### I.   Defendants Failed To Remedy The Thief Friendly Design

340.   Defendants failed to inform Plaintiffs' Insureds that their Vehicles employed the Thief Friendly Design and refused to reimburse Plaintiffs and Plaintiffs' Insureds for their losses incurred as a result of the Thief Friendly Design.

341.   After the Thief Friendly Design became common knowledge and an epidemic of vehicle thefts began to sweep the country, Defendants announced that going forward, they would install immobilizers in all their vehicles. This change would affect certain 2022 model vehicles and all Hyundai and Kia vehicles from 2023 onward.

342.   Defendants' recent change in design does not provide any relief to Plaintiffs and their Insureds who have suffered harm as a result of the Thief Friendly Design.

### J.   Fraudulent Omission/Concealment Allegations

343.   Absent discovery, Plaintiffs are unaware of, and unable through reasonable investigation to obtain, the true names and identities of those individuals employed by Defendants responsible for making false and misleading statements regarding the Vehicles. Defendants necessarily are in possession of all of this information. Plaintiffs' claims arise out of Defendants' fraudulent omission/concealment of the Thief Friendly Design, as well as their representations about the quality, reliability, and safety of the Vehicles.

344.   Plaintiffs allege that, at all relevant times, including specifically at the

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

time that Plaintiffs' Insureds purchased their Vehicles, Defendants knew, or were reckless in not knowing, of the Thief Friendly Design; Defendants had a duty to disclose the Thief Friendly Design based upon their exclusive knowledge due to, among other things, the self-certification process, and given their repeated statements alleged herein as to compliance with relevant safety and anti-theft standards; and Defendants never disclosed the Thief Friendly Design to Plaintiffs' Insureds or the public at any time or place in any manner prior to 2022.

345. Plaintiffs make the following specific concealment/omission-based allegations with as much specificity as possible absent access to the information necessarily available only to Defendants.

346. **Who**: each Defendant (HMA, HMC, KA, and KC) expressly promised to all customers in writing that the Vehicles conformed to all applicable theft prevention standards. Defendants also actively concealed and omitted the Thief Friendly Design from Plaintiffs and Plaintiffs' Insureds while simultaneously touting the quality, safety, and dependability of the Vehicles, as alleged herein. Plaintiffs are unaware of, and therefore unable to identify, the true names and identities of those specific individuals responsible for making such statements while concealing key material information.

347. **What**: that the Vehicles contain the Thief Friendly Design, as alleged herein. Defendants concealed and omitted the Thief Friendly Design while making representations about the safety, dependability, and other attributes of the Vehicles, as alleged herein.  At the same time, Defendants promised that the Vehicles confirm with all theft prevention standards.

348. **When**: Defendants concealed and omitted material information regarding the Thief Friendly Design at all times while making representations about the quality, safety, and dependability of the Vehicles on an ongoing basis, and continuing to this day. Defendants still have not disclosed the truth about the full scope of the Thief Friendly Design in the Vehicles, and when consumers brought their

vehicles to HMA and KA dealerships or called Defendants' respective customer service and warranty departments complaining of the Thief Friendly Design, Defendants denied an adequate repair for the Thief Friendly Design and warranty coverage.  On information and belief, Defendants have instead sought to use this crisis as means to drive sales of unrelated maintenance services to their customers.

349.  ***Where***:  Defendants concealed and omitted material information regarding the true nature of the Thief Friendly Design in every communication they had with Plaintiffs and Plaintiffs' Insureds and made representations about the quality, reliability, and safety of the Vehicles. Each Vehicle contains an express promise that it conforms with all applicable theft prevention standards. On information and belief, similar promises and statements were made about the safety of the Vehicles.  Plaintiffs are aware of no document, communication, or other place or thing, in which Defendants disclosed the truth about the full scope of the Thief Friendly Design in the Vehicles prior to 2022. Such information is not adequately disclosed in any sales documents, displays, advertisements, warranties, owner's manuals, or on Defendants' websites. There are channels through which Defendants could have disclosed the Thief Friendly Design, including, but not limited to: (1) point of sale communications; (2) the owner's manual; and/or (3) direct communication to Plaintiffs' Insureds through means such as state vehicle registry lists and e-mail notifications.

350.  ***How***: Defendants concealed and omitted the Thief Friendly Design from Plaintiffs and Plaintiffs' Insureds and made representations about the quality, safety, and dependability of the Vehicles. At the same time, Defendants promised in writing that each Vehicle conformed with all applicable theft prevention standards. Each Defendant actively concealed and omitted the truth about the existence, scope, and nature of the Thief Friendly Design from Plaintiffs and Plaintiffs' Insureds at all times, even though they each knew about the Thief Friendly Design and knew that information about the Thief Friendly Design would be important to a reasonable consumer, and Defendants promised in their marketing materials, VIN plates and

similar warranties that Vehicles have qualities that they do not have.

351.   *Why*: Defendants actively concealed and omitted material information about the Thief Friendly Design in the Vehicles for the purpose of inducing Plaintiffs' Insureds to purchase and/or lease Vehicles, rather than purchasing or leasing competitors' vehicles that actually complied with applicable theft prevention standards, and instead made false representations about the quality, safety, and durability of the Vehicles. Had Defendants disclosed the truth, for example, in their advertisements or other materials or communications, Plaintiffs' Insureds (and all reasonable consumers) would have been aware of the Thief Friendly Design, and it is reasonably likely that Plaintiffs' Insureds would not have bought or leased the Vehicles or would not have paid as much for them.

## K.    Privity Exists Between Defendants and Plaintiffs' Insureds

352.   Plaintiffs' Insureds purchased and/or leased their respective Vehicles from Defendants, through Defendants' authorized dealerships, with the understanding that these dealerships were acting on behalf of Defendants, or were otherwise expected to be the eventual purchasers of the Vehicles when bought from a third party.

353.   The sole and express purpose that each authorized Kia and Hyundai dealership has when it acquires vehicles from Defendants is to immediately re–sell them to end–users like Plaintiffs' Insureds. Defendants' conduct, and the conduct of their respective dealerships, thus created a justifiable belief on the part of Plaintiffs' Insureds that the dealerships are agents of Defendants, which the Plaintiffs' Insureds relied on to their detriment. Thus, each Hyundai and Kia dealership operates as the actual and/or apparent agent of HMA and KMA respectively, which satisfies any privity requirement.

354.   Privity further exists between Defendants on the one hand, and the Plaintiffs' Insureds on the other, by virtue of the express warranties provided with the vehicles, or otherwise through their purchase and/or lease agreements.

355.   Defendants also control various details regarding their respective

dealerships' operations through various written agreements, such as: (i) granting each dealership a license to use their respective trademarks and intellectual property; (ii) furnishing each dealership with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; and (iv) prohibiting their dealerships from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Vehicles.

356. Plaintiffs' Insureds were the intended and direct beneficiaries of agreements between Defendants and their dealerships regarding sales and leases of the Vehicles, because, upon information and belief, the agreements expressly were made for the direct benefit of Plaintiffs' Insureds as ultimate consumers of the Vehicles.

357. Moreover, Defendants' false and misleading representations in marketing materials and brochures for each of the Vehicles were intended for car purchasers and lessees, rather than the dealerships themselves.

## **CLASS ACTION ALLEGATIONS**

### **(Alleged by Class Plaintiffs)**

358. Class Plaintiffs bring this action both individually and as a class action pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3) against Defendants.

359. Class Plaintiffs seek to represent a class ("Hyundai Nationwide Class") under the laws of the State of California defined as:

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Vehicle.

360. Class Plaintiffs seek to represent a class ("Kia Nationwide Class") under the laws of the State of California defined as:

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Vehicle.

361. The Vehicles are defined as all 2011-2022 Kia vehicles and 2011-2022

Hyundai vehicles which do not contain an engine immobilizer.  On information and belief, this includes the models listed within Exhibits A and B.

362.   In addition, and in the alternative to the Nationwide Classes, Class Plaintiffs seek to represent the following state Subclasses:

**Hyundai Alabama Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Alabama.

**Kia Alabama Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Alabama.

**Hyundai Alaska Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Alaska.

**Kia Alaska Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Alaska.

**Hyundai Arizona Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Arizona.

**Kia Arizona Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Arizona.

**Hyundai Arkansas Subclass:**

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Arkansas.

**Kia Arkansas Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Arkansas.

**Hyundai California Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of California.

**Kia California Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of California.

**Hyundai Colorado Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Colorado.

**Kia Colorado Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Colorado.

**Hyundai Connecticut Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Connecticut.

**Kia Connecticut Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Connecticut.

**Hyundai Delaware Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Delaware.

**Kia Delaware Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Delaware.

**Hyundai Florida Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Florida.

**Kia Florida Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Florida.

**Hyundai Georgia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Georgia.

**Kia Georgia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Georgia.

**Hyundai Hawaii Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Hawaii.

**Kia Hawaii Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Hawaii.

**Hyundai Idaho Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Idaho.

**Kia Idaho Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Idaho.

**Hyundai Illinois Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Illinois.

**Kia Illinois Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Illinois.

**Hyundai Indiana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Indiana.

**Kia Indiana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Indiana.

**Hyundai Iowa Subclass:**

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Iowa.

**Kia Iowa Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia class Vehicle in the state of Iowa.

**Hyundai Kansas Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Kansas.

**Kia Kansas Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Kansas.

**Hyundai Kentucky Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Kentucky.

**Kia Kentucky Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Kentucky.

**Hyundai Louisiana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Louisiana.

**Kia Louisiana Subclass:**

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Louisiana.

**Hyundai Maine Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Maine.

**Kia Maine Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Maine.

**Hyundai Maryland Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Maryland.

**Kia Maryland Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia class Vehicle in the state of Maryland.

**Hyundai Massachusetts Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Massachusetts.

**Kia Massachusetts Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Massachusetts.

**Hyundai Michigan Subclass:**

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1   All insurance carriers that issued automobile and property insurance policies
2   whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
3   Michigan.

4   **Kia Michigan Subclass:**

5   All insurance carriers that issued automobile and property insurance policies
6   whose Insureds purchased or leased a Kia Class Vehicle in the state of
7   Michigan.

8   **Hyundai Minnesota Subclass:**

9   All insurance carriers that issued automobile and property insurance policies
10  whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
11  Minnesota.

12  **Kia Minnesota Subclass:**

13  All insurance carriers that issued automobile and property insurance policies
14  whose Insureds purchased or leased a Kia Class Vehicle in the state of
15  Minnesota.

16  **Hyundai Mississippi Subclass:**

17  All insurance carriers that issued automobile and property insurance policies
18  whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
19  Mississippi.

20  **Kia Mississippi Subclass:**

21  All insurance carriers that issued automobile and property insurance policies
22  whose Insureds purchased or leased a Kia Class Vehicle in the state of
23  Mississippi.

24  **Hyundai Missouri Subclass:**

25  All insurance carriers that issued automobile and property insurance policies
26  whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
27  Missouri.

28  **Kia Missouri Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Missouri.

**Hyundai Montana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Montana.

**Kia Montana Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Montana.

**Hyundai Nebraska Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Nebraska.

**Kia Nebraska Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Nebraska.

**Hyundai Nevada Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Nevada.

**Kia Nevada Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Nevada.

**Hyundai New Hampshire Subclass:**

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of New Hampshire.

**Kia New Hampshire Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of New Hampshire.

**Hyundai New Jersey Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of New Jersey.

**Kia New Jersey Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of New Jersey.

**Hyundai New Mexico Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of New Jersey.

**Kia New Mexico Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of New Mexico.

**Hyundai New York Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of New York

**Kia New York Subclass:**

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of New York.

**Hyundai North Carolina Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Alabama.

**Kia North Carolina Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of North Carolina.

**Hyundai North Dakota Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia class Vehicle in the state of North Dakota.

**Kia North Dakota Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of North Dakota.

**Hyundai Ohio Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Ohio.

**Kia Ohio Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Ohio.

**Hyundai Oklahoma Subclass:**

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1   All insurance carriers that issued automobile and property insurance policies
2   whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
3   Oklahoma.

4   **Kia Oklahoma Subclass:**

5   All insurance carriers that issued automobile and property insurance policies
6   whose Insureds purchased or leased a Kia Class Vehicle in the state of
7   Oklahoma.

8   **Hyundai Oregon Subclass:**

9   All insurance carriers that issued automobile and property insurance policies
10   whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
11   Oregon.

12   **Kia Oregon Subclass:**

13   All insurance carriers that issued automobile and property insurance policies
14   whose Insureds purchased or leased a Kia Class Vehicle in the state of Oregon.

15   **Hyundai Pennsylvania Subclass:**

16   All insurance carriers that issued automobile and property insurance policies
17   whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
18   Pennsylvania.

19   **Kia Pennsylvania Subclass:**

20   All insurance carriers that issued automobile and property insurance policies
21   whose Insureds purchased or leased a Kia Class Vehicle in the state of
22   Pennsylvania.

23   **Hyundai Rhode Island Subclass:**

24   All insurance carriers that issued automobile and property insurance policies
25   whose Insureds purchased or leased a Hyundai Class Vehicle in the state of
26   Rhode Island.

27   **Kia Rhode Island Subclass:**

28

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Rhode Island.

**Hyundai South Carolina Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of South Carolina.

**Kia South Carolina Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of South Carolina.

**Hyundai South Dakota Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of South Dakota.

**Kia South Dakota Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of South Dakota.

**Hyundai Tennessee Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Tennessee.

**Kia Tennessee Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Tennessee.

**Hyundai Texas Subclass:**

LEGAL\67600038\1

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Texas.

**Kia Texas Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Texas.

**Hyundai Utah Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Utah.

**Kia Utah Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Utah.

**Hyundai Vermont Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Vermont.

**Kia Vermont Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Vermont.

**Hyundai Virginia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Virginia.

**Kia Virginia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Virginia.

LEGAL\67600038\1

**Hyundai Washington Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Washington.

**Kia Washington Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Washington.

**Hyundai West Virginia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of West Virginia.

**Kia West Virginia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of West Virginia.

**Hyundai Wisconsin Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Wisconsin.

**Kia Wisconsin Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Wisconsin.

**Hyundai Wyoming Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the state of Wyoming.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

**Kia Wyoming Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the state of Wyoming.

**Hyundai Puerto Rico Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in Puerto.

**Kia Puerto Rico Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in Puerto Rico.

**Hyundai District of Columbia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Hyundai Class Vehicle in the District of Columbia.

**Kia District of Columbia Subclass:**

All insurance carriers that issued automobile and property insurance policies whose Insureds purchased or leased a Kia Class Vehicle in the District of Columbia.

363.   The Classes, and Subclasses are limited to the time period beginning on the date established by the Court's determination of any applicable statute of limitation, after consideration of any tolling and accrual issues, and ending on the date of the entry of judgment.

364.   Excluded from the Classes, and Subclasses are (1) Defendants, their officers, directors, and employees, (2) the separately identified Independent Subrogation Plaintiffs, (3) Consumer plaintiffs defined as part of the settlement class for the consumer Plaintiffs [*See* Doc. No 84] and (4) all automobile and property insurers which execute and timely file a request for exclusion from the class.

365.   **Numerosity**: While the exact number of members cannot be determined

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

yet, the Classes, and Subclasses consist of a large number of property and casualty insurers having Insureds in the hundreds, if not thousands, who have suffered or will suffer property damage losses due to thefts, or attempted thefts of the Vehicles caused by the lack of anti-theft protection in compliance with FMVSS 114.  The number of Class Members, and Subclass Members in each Class and Subclass with Insureds who have or will suffer such losses is so numerous that joinder of all members is impracticable.

366.  **Commonality**: Common questions of law and fact exist as to all Class Members. Among the common questions of law and fact are:

    a.    whether the vehicles were sold with a defect;

    b.    whether the defect is a safety defect;

    c.    whether the Defendants violated FMVSS 114 by manufacturing and selling Vehicles without sufficient anti-theft protection features or design elements;

    d.    whether the Defendants intentionally placed the vehicles into the stream of commerce with actual knowledge that vehicles pose an unreasonable safety risk;

    e.    whether a reasonable consumer would consider the defect or its consequences to be material;

    f.    whether Defendants adequately disclosed the defect to consumers or whether Defendants' disclosures were insufficient and misleading;

    g.    whether the design of the vehicles is defective and unreasonably dangerous;

    h.    whether Defendants' conduct violated relevant federal and state statutes asserted herein.

367.  **Typicality:** Class Plaintiffs have substantially the same interest in this matter as all other members of the Classes, or Subclasses and Class Plaintiffs' claims

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

arise out of the same set of facts and conduct as all other members of the class or subclasses. Class Plaintiffs and all Class Members, including all Subclass members, are insurance companies who issued automobile insurance policies to policyholders who owned or leased Vehicles manufactured and sold by Defendants. The insurance claims received or yet to be made under policies issued by members of the Classes all satisfy the typicality requirement in that each of these claims have an identical cause, namely, a loss due to a vehicle theft or attempted vehicle theft. Thus, the insurance claims of the named Class Members, and named Subclass members, are typical of the claims covered and paid by all members of the classes, and subclasses.

368.   **Adequacy of Representation:** Proposed Class Subrogation Plaintiffs are committed to pursuing this action and have retained competent counsel. Counsel for Proposed Class Subrogation Plaintiffs has the largest subrogation practice in the United States, having represented thousands of insurance companies in hundreds of thousands of subrogation cases since the founding of the firm in 1970. Counsel for Proposed Class Subrogation Plaintiffs is also experienced in complex litigation, including MDL litigation and class action litigation. Accordingly, Proposed Class Subrogation Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the class. Plaintiffs' claims are coincident with, and not antagonistic to, those of other Class Members, and Subclass members they seek to represent. Proposed Class Subrogation Plaintiffs have no disabling conflicts with members of the classes and will fairly and adequately represent the interests of the other Class Members and Subclass members.

369.   **Superiority**: The elements of Rule 23(b)(3) are met. The common questions of law and fact enumerated above predominate over the questions affecting only individual members of the class and a class action is the superior method for the fair and efficient adjudication of the controversy. The likelihood that all individual Class Members will prosecute separate actions is remote due to the time and expense necessary to conduct such litigation. While some Class Plaintiffs have sustained

losses in the hundreds of millions of dollars, other members of the class, and subclasses, have sustained much smaller losses measured only in the thousands of dollars. The cost to litigate separate and individual cases against the Defendants makes it cost prohibitive for many insurers to separately litigate their claims against Defendants. Serial adjudication in numerous venues is not efficient, timely or proper. Judicial resources throughout California and the United States will be unnecessarily depleted by litigation of individual claims. Joinder on an individual basis of hundreds, if not thousands of cases that is each comprised, in turn, of hundreds or thousands of claims, would be impractical, if not impossible, and certainly inefficient and a waste of judicial resources. Individualized rulings and judgments have and will result in inconsistent relief for similarly situated plaintiffs. Proposed Class Plaintiffs' counsel, highly experienced in class action and product liability litigation, foresees little difficulty in the management of this case as a class action. Indeed, the only way to ensure a remedy of the serious misconduct alleged herein is through a collective action on behalf of United States property insurers.

370. Class Plaintiffs' claims are materially the same under the law of California as in all states in the United States. In the event California law does not apply on a nationwide basis, Plaintiffs will seek to apply the laws of the various states, Puerto Rico and the District of Columbia as will be addressed in Plaintiffs' brief in support of class certification.

371. Notice to the proposed Classes, or if necessary, Subclasses, will be accomplished easily in that every member of both classes is a property and casualty insurance company, doing business within the United States, many of whom already are represented by Plaintiffs' counsel in other insurance litigation matters, and all of whom are readily able to be identified and notified of all matters pertaining to the proposed class.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

## **TOLLING OF STATUTES OF LIMITATIONS**

### **(Alleged by All Plaintiffs)**

372.   As a result of HMA's, HMC's, KA's, and KC's knowing and active concealment and denial of the facts alleged herein, Plaintiffs and Plaintiffs' Insureds could not have reasonably discovered the true nature of the Thief Friendly Design. Consequently, any applicable statute(s) of limitations have been tolled: a) pursuant to the discovery rule; b) as a result of Defendants' fraudulent concealment; and/or (c) based upon principles of estoppel.

**A.     Discovery Rule**

373.   The causes of action alleged herein did not accrue until Plaintiffs' Insureds discovered that their Vehicles contained the Thief Friendly Design.

374.   As alleged above, Plaintiffs' Insureds had no way of knowing about the Thief Friendly Design in their Vehicles. Defendants concealed their knowledge of the Thief Friendly Design while KA and HMA continued to market and sell the Vehicles as safe, secure, high-quality, and reliable vehicles. As of the date of filing, Defendants have still failed to disclose the full extent of the Thief Friendly Design and the risks it poses to Vehicle owners and lessees.

375.   Plaintiffs and their Insureds, through the exercise of reasonable diligence, could not have discovered that the Vehicles employed a Thief Friendly Design within the applicable statute(s) of limitations.

376.   Plaintiffs and their Insureds were not in possession of sufficient information that would have caused a reasonable person to suspect that the Vehicles employed a Thief Friendly Design. Further, no ordinary person would be able to discern that the Vehicles were defective. An ordinary consumer, without sophisticated knowledge of mechanical systems and anti-theft devices, would not and could not suspect that the theft or damage to their Vehicle was, in fact, attributable to a pervasive Thief Friendly Design.

377.   For ordinary consumers, the existence and partial extent of the Thief

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Friendly Design only came to light after media outlets began to cover the abnormal risk of theft for the Vehicles in or around 2021.  Thus, Plaintiffs and their Insureds did not discovery, and had no reason to discover, the existence of their causes of action against these Defendants.

378.   For these reasons, any statute(s) of limitation applicable to Plaintiffs' claims have been tolled by operation of the discovery rule.

**B.     Fraudulent Concealment**

379.   Defendants, as the manufacturers, distributors, sellers, and/or warrantors of the Vehicles, were under a continuing duty to disclose the existence of the Thief Friendly Design to Plaintiffs' Insureds.

380.   Defendants were and remain under a continuing duty to disclose the true character, quality, and nature of the Vehicles, that the Thief Friendly Design found in the Vehicles will allow unsophisticated thieves—even juveniles—to steal the vehicle in seconds, that the Insureds' vehicles require costly repairs, pose safety concerns, and may cause damage to their personal property.

381.   Instead of publicly disclosing the Thief Friendly Design, Defendants kept owners and lessees in the dark. To this day, Defendants have knowingly or recklessly failed to disclose the full extent of the Thief Friendly Design; including that the Vehicles do not comply with FMVSS No. 114.

382.   Until the Thief Friendly Design was exposed to the public through media coverage as the epidemic exploded in 2021, Plaintiffs and their Insureds had no actual or presumptive knowledge of facts sufficient to put them on inquiry notice of such a connection. In particular, Plaintiffs and their Insureds did not possess either aggregated Vehicle theft data, or the technical data related to the design of the Vehicles.

383.   Due to each Defendant's concealment of the facts necessary for Plaintiffs and their Insureds to discover the existence of their claims, all applicable statutes of limitation have been tolled.

## C.      Estoppel

384.   Defendants were, and are, under a continuing duty to disclose the true character, quality, and nature of the Vehicles. Although Defendants were aware of the Thief Friendly Design that failed to comply with FMVSS No. 114 since at least 2011, Defendants knowingly continued to make representations that the Vehicles complied with all federal safety and quality standards.

385.   Defendants' misrepresentations that the Vehicles complied with FMVSS No. 114 continued after and beyond the date that Defendants became aware that the Thief Friendly Design had resulted in an epidemic of theft.

386.   Plaintiffs' reasonably relied upon each Defendant's knowing and affirmative misrepresentations in the period following the theft or damage to the Vehicles.

387.   Due to each Defendant's misrepresentations regarding the true state of the Vehicles, Defendants are estopped from asserting that any otherwise applicable statute(s) of limitations bar Plaintiffs' claims.

## NATIONWIDE CLASSES AND CALIFORNIA STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, Nationwide Class Members, and California Subclass Members against All Defendants)

388.   Class Plaintiffs for the Hyundai and Kia Nationwide Classes, the Hyundai California Subclass and Kia California Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

389.   The Nationwide Classes, and California Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from Vehicle losses (of both Kia and Hyundai Vehicles) in the State of California due to Defendants' Thief Friendly Design including, but not limited to, the following named Class Plaintiffs: American Access Casualty Company; American Alliance Casualty Company; Church Mutual Insurance Company, SI; Allstate Fire and Casualty

Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Connect Property and Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, SI; Homesite Insurance Company of California; Permanent General Assurance Company; Erie Insurance Exchange; Financial Indemnity Company; Infinity Insurance Company; Kemper Independence Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; PEMCO Mutual Insurance Company; Unigard Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in California pursuant to policies of insurance.

**A.      Breach of Implied Warranty**

390.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

391.   Defendants were, at all relevant times:

        a.      the manufacturers, distributors, and warrantors of the Vehicles;

        b.      "merchants" of motor vehicles under Cal. Com. Code §§ 2104(1) and 10103(c);

        c.      "sellers" of motor vehicles under Cal. Com. Code § 2103(1)(d); and

        d.      "lessors" of motor vehicles under Cal. Com. Code § 10103(a)(16).

392.   Additionally, and in the alternative, Defendant sold the Vehicles to Kia and Hyundai dealers or other third-parties intending that the Vehicles would be re-sold to consumers: including Plaintiffs' Insureds. Thus, Plaintiffs' Insureds were the intended third-party beneficiaries of Defendants' sales contracts.

393.   Plaintiffs' Insureds who purchased Vehicles are "buyers" within the

1  meaning of Cal. Com. Code § 2103(1)(a).

2  394.  Plaintiffs' Insureds who leased Vehicles are "lessees" within the
3  meaning of Cal. Com. Code § 10103(a)(14).

4  395.  The Vehicles were at all relevant times "goods" within the meaning of
5  Cal. Com. Code §§ 2105(1) and 10103(a)(8).

6  396.  Defendants knew or had reason to know of the specific use for which the
7  Vehicles were purchased or leased.

8  397.  Defendants' sales contracts and lease agreements included an implied
9  warranty that the Vehicles were merchantable and fit for the ordinary purposes for
10  which they were sold.  *See* Cal. Com. Code §§ 2314 and 10212.

11  398.  This implied warranty included, among other things, a warranty that the
12  Vehicles manufactured, supplied, distributed, and sold by Defendants were safe,
13  reliable for providing transportation, were not abnormally vulnerable to theft, would
14  be available (as opposed to stolen or vandalized), and complied with all applicable
15  federal and state law and regulations - including FMVSS 114.

16  399.  Defendants' warranties were designed and intended for the benefit of
17  Plaintiffs' Insureds.

18  400.  The Vehicles were defective and not in merchantable condition at the
19  time of sale because of the Thief Friendly Design.  The Vehicles lacked any anti-theft
20  features or design elements that adequately deter theft deterrent or otherwise satisfy
21  the requirements of FMVSS 114.  This caused the vehicles to be prime targets for
22  theft, and to be used as dangerous instrumentalities for thieves engaged in reckless
23  driving and other criminal activity.  As a result, at the time of sale, the Vehicles were
24  not fit for their ordinary purpose of providing reasonably reliable and safe
25  transportation.

26  401.  Plaintiffs' Insureds relied on the existence of Defendants' implied
27  warranties while deciding whether to purchase or lease the Vehicles. However, that
28  reliance was misplaced. The elevated risk of theft resulting from the Thief Friendly

Design impacted all Vehicle owners and prevented them from using the Vehicles as intended.

402.   Defendants' actions, as complained of herein, breached the implied warranty that the Vehicles were of merchantable quality and fit for their ordinary and intended use.

403.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable under California law. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. Further, any attempts to foreshorten the time period of the implied warranty are also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds.

404.   These breaches of the implied warranties of merchantability have denied Plaintiffs and Plaintiffs' Insureds the benefit of the Insureds' bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without being stolen or saddled with the ever–present risk of them being stolen.

405.   Plaintiffs and Class members provided notice of Defendants' breach of the implied warranties on March 09, 2023.  Regardless, Plaintiffs and their Insureds were excused from providing Defendants with notice and an opportunity to cure the breaches, because notice would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design. Despite that knowledge, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs and their Insureds had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to Defendants for repair, nor would any repair or proposed repair be meaningful for Vehicles that were already stolen.

406.   As a direct and proximate result of Defendants' breaches of their implied

warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, for which the Defendants are liable.

**B.      Breach of Express Warranty Pursuant to Cal. Comm. Code § 2313**

407.   Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

408.   During the relevant time period described above, Plaintiffs' Insureds purchased or leased Hyundai and Kia branded Vehicles manufactured during the relevant time period.

409.   Through the attachment of VIN plates, Defendants expressly warranted that the Vehicles conformed to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.  Similar VIN plates containing similar warranties were affixed to all Kia and Hyundai Vehicles.

410.   After the Insureds purchased or leased the Hyundai or Kia branded Vehicles, they used them as designed and intended in the course of normal and anticipated operations. Plaintiffs' Insureds did not misuse, mishandle, or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

411.   The Vehicles did not conform with the terms of the Defendants' express warranty as set forth on the Vehicles' VIN plates because they were capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture.

412.   Plaintiffs provided written notice to Defendants of the Thief Friendly Design on March 9, 2023. Defendants have received further notice of the Thief Friendly Design in conjunction with numerous lawsuit filings cases around the country.

413.   Although Defendants had notice of the Thief Friendly Design, neither Plaintiffs nor their Insureds were required to provide notice of the Thief Friendly

1    Design prior to the vehicles being stolen and/or damaged.

2    414.   While Defendants have suggested they are attempting to remedy the
3    Thief Friendly Design, any remedy offered to date is ineffective, and fails to comply
4    with applicable anti-theft standards.

5    415.   Plaintiffs have incurred and will continue to incur damages and costs and
6    expenses, including attorney's fees, as a result of the Thief Friendly Design and
7    Defendants' breach of their express warranty.

8    **C.    Breach of Express Warranty In Violation of Song-Beverly Warranty Act**

9    416.   Plaintiffs incorporate by reference and reallege each preceding and
10   succeeding paragraph as though fully set forth at length herein.

11   417.   During the relevant time period described above, Plaintiffs' Insureds
12   purchased or leased the Vehicles from Hyundai and Kia in their capacity as retail
13   sellers during the relevant time period.

14   418.   Through the attachment of VIN plates, Defendants expressly warranted
15   that the Vehicles conformed to all applicable U.S.A. federal motor vehicle safety,
16   bumper, and theft prevention standards in effect on the date of manufacture. An
17   example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided
18   above.  Similar VIN plates containing similar warranties were affixed to all Kia and
19   Hyundai Vehicles.

20   419.   After Plaintiffs' Insureds purchased or leased the Hyundai and Kia
21   branded Vehicles, they used them as designed and intended in the course of normal
22   and anticipated operations. Plaintiffs' Insureds did not misuse, mishandle, or
23   otherwise damage the Vehicles in any way that is material to the allegations set forth
24   herein.

25   420.   Plaintiffs discovered the Vehicles did not meet all applicable motor
26   vehicle safety and theft prevention standards in effect on the date of manufacture after
27   their Insureds reported theft and damage to their Vehicles in alarming numbers.
28   Plaintiffs then determined that the Vehicles failed to perform properly because the

Vehicles lacked an anti-theft device that conforms with industry standards and/or federal regulations. As a result of that Thief Friendly Design, the Vehicles were easily stolen, and failed to conform to the terms of the express warranty on the Vehicles' VIN plates.

421.   Plaintiffs provided written notice to Defendants of the Thief Friendly Design on March 9, 2023. Defendants have received further notice of the Thief Friendly Design in conjunction with numerous lawsuit filings cases around the country.

422.   Defendants clearly knew compliance with federal anti-theft standards was required by law. Defendants also knew the standards easily could be met by designing the Vehicles with an engine immobilizer.   Nevertheless, Defendants willfully violated the Song-Beverly Consumer Warranty Act by failing to install any anti-theft measures which complied federal or industry standards.   Those failures resulted in the Vehicles being stolen.   After being notified of the Thief Friendly Design, Defendants have still failed to offer an effective fix, repair or remedy for the Thief Friendly Design.   For those Insureds whose Vehicles have already been stolen, any such fix, repair, or remedy comes far too late.

423.   Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of Defendants' breach of express warranty and violation of the Song-Beverly Consumer Warranty Act.

424.   Plaintiffs are entitled to a civil penalty against Defendants of two times the amount of actual damages for its willful violation of the Song-Beverly Consumer Warranty Act.

**D.     Violations of The California Song-Beverly Consumer Warranty Act For Breach of Implied Warranty of Merchantibility (Cal. Civ. Code §§ 1791.1 and 1792)**

425.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

426.   Defendants are "manufacturer[s]" of the Vehicles within the meaning of Cal. Civ. Code § 1791(j).

427.   Defendants are and were at all relevant times "sellers" of motor vehicles under Cal. Civ. Code § 1791(l).

428.   Defendants are and were at all relevant times "lessors" of motor vehicles under Cal. Civ. Code § 1791(i).

429.   Plaintiffs' Insureds who purchased Vehicles are "buyers" within the meaning of Cal. Civ. Code § 1791(b).

430.   Plaintiffs' Insureds who leased Vehicles are "lessees" within the meaning of Cal. Civ. Code § 1791(h).

431.   The Vehicles are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

432.   Defendants impliedly warranted to Plaintiffs' Insureds that their Vehicles were "merchantable" within the meaning of Cal. Civ. Code §§ 1791.1(a) and 1792.

433.   Cal. Civ. Code § 1791.1(a) states: "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following: (1) pass without objection in the trade under the contract description; (2) are fit for the ordinary purposes for which such goods are used; (3) are adequately contained, packaged, and labeled; and (4) conform to the promises or affirmations of fact made on the container or label.

434.   The Vehicles would not pass without objection in the automotive trade due to the Thief Friendly Design. Because of the Thief Friendly Design, the Vehicles are not in merchantable condition and thus not fit for ordinary purposes.

435.   The Vehicles are not adequately labeled because the labeling fails to disclose the Thief Friendly Design.

436.   The Vehicles do not conform to the promises and affirmations made by Defendants regarding safety, security, quality, availability or reliability of the

Vehicles.

437.   As a direct and proximate result of the breaches of the implied warranty of merchantability by Defendants, the Insureds' Vehicles were and are defective, vulnerable to theft in a matter of seconds from even casual car thieves, and the Thief Friendly Design in their Vehicles was not remedied. Therefore, Plaintiffs and Plaintiffs' Insureds have been damaged.

438.   Pursuant to Cal. Civ. Code §§ 1791.1(d) and 1794, Plaintiffs seek damages, and any other just and proper relief available under the Song-Beverly Consumer Warranty Act.

**E.     Violations of Consumer Legal Remedies Act Cal. Civ. Code § 1750, *et seq.***

439.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

440.   The California Consumers Legal Remedies Act, Cal. Civil Code § 1750 *et seq.* ("CLRA") prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or services to any consumer[.]" Cal. Civ. Code § 1770.

441.   The CLRA applies to Defendants' actions and conduct described herein because it extends to the sale of goods or services for personal, family, or household use.

442.   The Vehicles are "goods" within the meaning of Cal. Civ. Code § 1761(a).

443.   Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of Cal. Civ. Code § 1761(c).

444.   At all relevant times, Plaintiffs' Insureds were "consumers" as defined in Civil Code § 1761(d). Plaintiffs, upon making payments to their Insureds for damages and losses which they sustained, and which were covered under the insurance policies issued to them by the Plaintiffs, acquired the rights of their Insureds

under policy provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of their Insureds and are authorized to pursue all claims and causes of action belonging to their Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by the Plaintiffs.

445.   The transactions from which this action arise include transactions involving the sale or lease of goods or services for personal, family or household purposes within the meaning of Civil Code § 1761(d).

446.   Defendants developed, manufactured, marketed, and sold the Vehicles containing the defects as alleged herein.

447.   Defendants developed, manufactured, marketed, and sold the Vehicles to Plaintiffs' Insureds despite knowledge of the defects and the serious safety risks created by the defects.

448.   Defendants made misleading representations and omissions concerning the benefits, performance, and safety of the Vehicles.

449.   Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.   In reality, however, the Vehicles do not comply with such standards.

450.   Defendants marketed and sold the Vehicles as safe despite knowledge that the defects posed serious safety risks to consumers, as well as the general public.

451.   Defendants failed to disclose the existence of defects and safety risks that were known to Defendants but hidden from consumers.

452.   Defendants' knowing concealment of the unreasonable safety risks associated with the Vehicles constituted misrepresentations, omissions and concealments of material fact that amount to unfair and deceptive practices in violation of the CLRA.

453.   Defendants violated the CLRA when they sold the Vehicles and misrepresented that the Vehicles were safe for use and compliant with all anti-theft standards.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

454.  Defendants also violated the CLRA when they failed to disclose to Plaintiffs' Insureds that the Vehicles had known defects that posed a serious safety risk to consumers and the public.

455.  Defendants' deceptive trade practices were designed to induce Plaintiffs' Insureds to purchase the Vehicles containing the defects and to avoid the cost of replacing or repairing the defective Vehicles already in use.

456.  Defendants' violations of the CLRA were designed to conceal material facts about the Vehicles' defects, including unreasonable safety risks, in order to induce the Insureds to purchase Vehicles and to avoid the enormous business cost of repairing and replacing the Vehicles.

457.  By engaging in the unfair and deceptive conduct described above, Defendants actively concealed and failed to disclose material facts about their defective vehicles.

458.  In purchasing or leasing the Vehicles, Plaintiffs' Insureds were deceived by Defendants' failure to disclose their knowledge of the defects.

459.  Defendants' omissions regarding the Vehicles are material facts that a reasonable person would have considered important when deciding to purchase the Vehicles. Indeed, no reasonable consumer would have purchased or leased a Vehicle if the defects were disclosed, as it would mean that the Vehicles were not compliant with federal or industry anti-theft and safety standards.

460.  Defendants' acts were intended to be deceptive and fraudulent in order to more effectively market, distribute, and sell their defective Vehicles.

461.  Plaintiffs' Insureds suffered an injury in-fact as a direct result of Defendants' violations of the CLRA in that they purchased or leased defective Vehicles that were vulnerable to theft in a matter of seconds by even casual car thieves, and in many instances, the Vehicles were stolen and/or damaged, and claims made by the Insureds on policies issued by Plaintiffs.

462.  Defendants' conduct as described herein was and is in violation of the

CLRA. Defendants' conduct violates at least the following enumerated CLRA provisions:

a.  Cal. Civ. Code § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities that they do not have.

b.  Cal. Civ. Code § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade if they are of another.

c.  Cal. Civ. Code § 1770(a)(9): Advertising goods with intent not to sell them as advertised.

d.  Cal. Civ. Code § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

463.  Defendants intentionally and knowingly misrepresented and omitted material facts regarding the Vehicles with an intent to mislead Plaintiffs and Plaintiffs' Insureds.

464.  In purchasing or leasing the Vehicles, Plaintiffs' Insureds were deceived by Defendants' failure to disclose their knowledge of the defective nature of the Vehicles.

465.  Plaintiffs and Plaintiffs' Insureds had no way of knowing Defendants' representations were false, misleading, or incomplete.  Plaintiffs further had no alternative means to discover the Vehicles' true defective nature.

466.  As alleged herein, Defendants engaged in a pattern of deception and public silence in the face of known defects. Plaintiffs and their Insureds did not, and could not, discover Defendants' deceptive conduct on their own.

467.  Defendants knew or should have known their conduct violated the CLRA. Defendants owed consumers a duty to disclose the truth about the defective Vehicles because Defendants, on the one hand, expressly warranted that the Vehicles complied with relevant standards, while on the other hand, the defective condition of

the Vehicles created a safety hazard, and Defendants possessed exclusive knowledge of that defective condition. Defendants intentionally concealed that defective condition from consumers; and/or made incomplete representations in advertisements and on their websites while failing to warn consumers of the defect. Defendants also knew that the Vehicles were materially compromised by the defects alleged herein.

468.   Defendants had an ongoing duty to disclose that the Vehicles were fundamentally flawed because the defective Vehicles created a safety hazard, and consumers, including the Plaintiffs' Insureds, relied on Defendants' material misrepresentations and omissions regarding the features of the Vehicles.

469.   Defendants' violations caused and continue to cause damages to Plaintiffs and Plaintiffs' Insureds while adversely affecting the public interest.

470.   Pursuant to California Civil Code section 1782(a), Plaintiffs provided express notice on behalf of the entire insurance industry served Defendants via Certified Mail, return receipt requested, on March 9, 2023. This notice alleged violations of California Civil Code section 1770 et seq. related to the Vehicles purchased by Plaintiffs' Insureds, and demanded that Defendants correct, or agree to correct, the actions described therein within thirty (30) days of such notice. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which they, Class Members, and Subclass members are entitled. Plaintiffs also seek an order enjoining Defendants from continuing to engage in unlawful, unfair, or deceptive business practices and any other act prohibited by law, including further concealment of the defect.  In connection with Plaintiffs' claim for injunctive relief, Plaintiffs note that Defendants failed to offer an effective remedy, repair, fix, or recall of the Vehicles.

471.   Pursuant to California Civil Code section 1780(a), Plaintiffs seek an order enjoining Defendants from engaging in the methods, acts, or practices alleged herein, including further concealment of the Thief Friendly Design. Further, Plaintiffs seek (i) actual damages, (ii) disgorgement and restitution to Plaintiffs, the Class, and

general public, (iii) punitive damages, (iv) attorneys' fees and costs, and (v) and any other just and proper relief available under the CLRA.

**F.      Violations of Bus. & Prof. Code § 17200,** *et seq.*

472.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

473.    Defendants have engaged in unfair competition within the meaning of the California Business & Professional Code § 17200, et seq. ("the UCL") because Defendants' conduct was unlawful, misleading and unfair, as herein alleged.

474.    The UCL prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200.

475.    Defendants' business practices are unlawful because they violate at least §§ 1668, 1709, 1710, and 1750 et seq. of the Civil Code, and § 2313 of the Commercial Code. Defendants' practices, moreover, are unlawful because they violate FMVSS 114, which states: "The purpose of this standard is to decrease the likelihood that a vehicle is stolen … This standard applies to passenger cars …" That standard requires that without a key, the vehicle must prevent "normal activation of the vehicle's engine or motor" and either "steering, or forward self-mobility." In other words, a key is required to start the engine and drive the vehicle. In the U.S. "immobilizers" are utilized to comply with FMVSS 114.  The Vehicles, however, do not contain immobilizers.

476.    The Defendants violated federal law in intentionally choosing, uniquely among manufacturers selling vehicles in the United States, not to equip the Vehicles with sufficient anti-theft features or design elements to prevent the theft of Vehicles without a key. Specifically, Kia and Hyundai have been breaking federal law by continually selling Vehicles that do not comply with FMVSS 114, a federal regulation designed and written to protect life and property.

477.    In order for consumers to obtain the basic protections afforded by

FMVSS 114 in certain Kia and Hyundai vehicles, Defendants force consumers to pay thousands of extra dollars for trim packages which include anti-theft protection, but which also include unnecessary features having nothing to do with anti-theft protection.

478. The Vehicles do not contain starting systems with anti-theft features or design elements that would prevent forward self-mobility and steering when the key is removed from the starting system, as required by FMVSS 114.

479. If the Vehicles had been manufactured in compliance with FMVSS 114, as required under federal law, they would not have been stolen because, without a key, the perpetrator would have been unable to start the engine and achieve forward self-mobility and steering.

480. Immobilizers have been proven to deter auto theft. In fact, a 2016 study reflects that use of immobilizers lowered the rate of car thefts by 40% over a ten-year period. By failing to implement immobilizers when all other manufacturers do, Defendants created an extraordinary risk for their customers, including the Insureds.

481. Selling automobiles without immobilizers or any other anti-theft feature or design element sufficient to comply with FMVSS 114 is not only illegal, but unfair to consumers because it exposes consumers to elevated risks of theft without fair warning or justification.

482. Through their businesses, Defendants concealed and suppressed material facts concerning the Vehicles. Defendants accomplished this by manufacturing the Vehicles with inherently substandard design flaws that not only enabled theft, but, due to its ease, encouraged those who would otherwise not steal to engage in theft of the Vehicles. Defendants knew the Thief Friendly Design existed in the vehicles and nonetheless placed them on the market for purchase.

483. Defendants failed to provide notice that the Vehicles lacked any anti-theft feature or design element sufficient to provide an adequate theft deterrent, or otherwise comply with FMVSS 114, and failed to give any notice as to the risks

1  associated with operating or even owning a vehicle that does not comply with FMVSS
2  114.

3     484.   Defendants violated the UCL when they concealed and failed to disclose
4  the serious safety risks to consumers that their Vehicles created; concealed and failed
5  to disclose that their Vehicles were defective when they had a duty to disclose these
6  safety risks; and sold the Vehicles as if they were fit for ordinary purposes and did
7  not present unreasonable safety risks.

8     485.   Defendants violated the UCL when they failed to disclose that their
9  Vehicles created serious safety risks and were defective as described herein when they
10  had a duty to disclose the safety risks to consumers and instead falsely misrepresented
11  that their Vehicles were safe for consumer use.

12     486.   Defendants elected not to include features or design elements in the
13  Vehicles that would bring the Vehicles into compliance with the letter or intent of
14  FMVSS 114. Thus, Defendants developed, manufactured, marketed and sold their
15  Vehicles in a dangerous and defective condition. This too was unfair to the Insureds,
16  and Plaintiffs, and therefore violated the UCL.

17     487.   As described above, Defendants had knowledge of the serious safety
18  risks presented by their Vehicles and had knowledge of their defects prior to their sale
19  to Plaintiffs' Insureds. Indeed, Defendants have long had notice of the existence of,
20  and reasons for, the federal regulation requiring anti-theft features or design elements
21  that prevent forward self-mobility or steering without a key.

22     488.   The absence of anti-theft protection constitutes a safety issue that
23  triggered Defendants' duty to disclose this safety issue to consumers.

24     489.   Defendants failed to disclose the material fact that their Vehicles posed
25  serious safety risks upon sale and were defective for lacking mandatory anti-theft
26  protection. Defendants were in exclusive possession of this knowledge.

27     490.   Plaintiffs and Plaintiffs' Insureds did not and could not have had
28  knowledge of the safety risks created by the Vehicles at the time that the Insureds

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

purchased their Vehicles.

491.   Despite their knowledge of the serious safety risks that the Vehicles presented to consumers and the public, Defendants failed to issue an appropriate warning, recall, or a campaign to replace the Vehicles for years, concealing their knowledge of the defects and safety issues presented by the Vehicles.

492.   Defendants' business acts were unfair, unlawful and fraudulent within the meaning of the UCL.

493.   As entities with exclusive knowledge regarding the safety risk and defect in the Vehicles, Defendants had a duty to disclose these defects, particularly in light of the fact that the Vehicles posed serious safety risks to Plaintiff's Insureds.

494.   Plaintiffs and their Insureds reasonably expected that Defendants would disclose the fact that their Vehicles did not comply with federal or industry safety and anti-theft standards.   Similarly, Plaintiffs and their Insureds reasonably expected Defendants would disclose the existence of the serious safety risks that the Vehicles presented to consumers and the public, and reasonably expected that Defendants would not sell a vehicle that was unsafe or sell a vehicle that contained defects in violation of federal regulations. This information is and was material to Plaintiffs and their Insureds, as it would be plainly relevant to any consumer.

495.   Defendants, at all material times, knew or should have known that Plaintiffs and their Insureds did not know of, or could not have reasonably discovered, the safety risks or the defects in the Defendants' Vehicles.

496.   By concealing the serious safety risks created by their Vehicles and the existence of these defects, Defendants engaged in actionable, unfair, and fraudulent conduct within the meaning of the UCL.

497.   Had the Insureds known of the serious safety risks and the defects in the Vehicles, it is reasonably likely they would not have purchased the Vehicles, and if purchased, could have taken action to frustrate the likelihood of theft.

498.   Defendants' acts and practices deceived Plaintiffs and their Insureds and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

are likely to deceive the public. By failing to disclose the defect and suppressing other material facts from Plaintiffs and their Insureds, Defendants breached their duties to disclose these facts, violated the UCL, and caused injuries to Plaintiffs and their Insureds. The Defendants' omissions and acts of concealment pertained to information that was material to the Insureds, as it would have been to all reasonable consumers.

499. By failing to disclose and concealing the existence of a defect in the Vehicles, Defendants engaged in unfair conduct within the meaning of the UCL.

500. Defendants' misconduct is unfair within the meaning of the UCL as it offends established policy and is immoral, unethical, unscrupulous, and substantially injurious to consumers.

501. Plaintiffs, who insure property and automobiles, have suffered damages as a result of Defendants' misconduct.

502. Defendants' unlawful, unfair and fraudulent business acts and practices continue through the date of the filing of this Complaint.

503. Plaintiffs request that this Court enjoin Defendants from engaging in business practices that constitute a violation of the UCL. Plaintiffs further request that this Court enter such orders or judgments as may be necessary to restore by restitution any value which may have been lost, or incurred by means of such unfair practices, as provided for in Bus. & Prof. Code § 17203 and for such other relief as appropriate under the law or at equity.

## G.   Fraud By Omission and Concealment

504. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

505. Defendants affirmatively stated that the Vehicles conform with all applicable safety and anti-theft standards, but that is not true.  In reality, the Vehicles do not comply with such standards.

506. Upon information and belief, Defendants knew the Vehicles contained

no anti-theft features or design elements that would prevent the Vehicles from achieving either forward self-mobility or steering without a key. Accordingly, Defendants were aware that the Vehicles suffered from the Thief Friendly Design that rendered the Vehicles vulnerable to an abnormally high risk of theft. Regardless, Defendants self-certified to the NHTSA that the Vehicles complied with NHVSS 114.

507. Despite their knowledge that the Vehicles employed a Thief Friendly Design that failed to comply with federal safety and anti-theft requirements, Defendants did provide the Insureds with mandatory anti-theft protections as a standard feature. Instead, Defendants required that the Insureds purchase expensive and unnecessary trim packages at a substantial extra cost in order to obtain this minimum anti-theft protection.

508. Defendants intentionally failed to disclose, and actively concealed, the existence of the Thief Friendly Design. Further the Defendants affirmatively concealed the fact that the Vehicles did not comply with FMVSS 114. In marketing materials, Defendants often advertised that higher-end trim packages came with a "push button start" feature rather than a traditional turn-key ignition. However, Defendants did not inform consumers that the Vehicles sold without those optional trim-packages lacked federally mandated anti-theft protection designed to safeguard life and property. Defendants' promotional materials failed to disclose the Thief Friendly Design while simultaneously promoting and encouraging the purchase of expensive trim packages.

509. Upon information and belief, Defendants have also known of the unusually high rate of thefts experienced by Vehicles for many years. Defendants received notification of the high rate of thefts through relevant governmental agencies and communications with their dealerships. Nevertheless, Defendants continued to manufacture and sell dangerous and defective Vehicles that did not comply with FMVSS 114 without warning consumers of the resultant severe risk of theft.

510. Defendants made incomplete representations about the safety and

reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and otherwise failed to disclose to consumers the fact that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles, including information about compliance with applicable standards, that they marketed and offered for sale and lease to consumers, HMA and KA had a duty to disclose the whole truth.

511.   Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design.  Instead, Defendants had a duty to disclose the existence of the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

512.   Defendants knew the truth regarding the Thief Friendly Design, and that truth was not known to, or reasonably discoverable by, Plaintiffs' Insureds.

513.   Plaintiffs' Insureds lacked the sophisticated expertise in vehicle design and internal components that would be necessary to discover the Thief Friendly Design's as it is concealed and technical in nature.

514.   For the reasons set forth above, the Vehicles' Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.  Any consumer would consider it important to know that the Vehicles do not conform with federal regulations and other applicable anti-theft, and safety standards.

515.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for consumers.  Defendants further understood the Thief Friendly Design would have been a material fact affecting the Plaintiffs' Insureds' decisions to buy or lease the Vehicles.

516.   Defendants intended for the Insureds to rely on their misstatements and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

omissions regarding the Vehicles' failure to comply with relevant and applicable safety and anti-theft standards.

517. Plaintiffs' Insureds did in fact rely on Defendants' statements and omissions at the time they agreed to purchase and/or lease the Vehicles. The Insureds selected vehicles while reasonably believing that Vehicles would not have a Thief Friendly Design that would affect the quality, reliability, availability, and/or safety of the Vehicles.

518. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

519. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

520. By concealing information about the Thief Friendly Design, Defendants prevented the Insureds from realizing their Vehicles were uniquely susceptible to theft in a matter of seconds. Through their omissions and concealment with respect to the Thief Friendly Design, Defendants intended to induce, and did induce the Insureds to purchase or lease a Vehicle that they otherwise would not have purchased, a Vehicle that was susceptible highly susceptible to theft, and that was stolen and/or damaged due to the Thief Friendly Design.

521. Had the Insureds known of the Thief Friendly Design, it is reasonably likely that they would not have purchased the Vehicles, would have paid less for them, and could have taken precautions to reduce the likelihood of theft and/or damage.

522. As a direct and proximate result of Defendants' omissions, the Insureds' Vehicles were stolen or damaged. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

523. Defendants' acts were done maliciously, oppressively, deliberately, with

intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**H.      Breach of Express and Implied Warranties Under The Magnuson-Moss Warranty Act – 15 U.S.C. § 2301,** *et seq.*

524.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

525.    Plaintiffs stand in the shoes of their Insureds, who are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

526.    Defendants are suppliers and warrantors within the meaning of 15 U.S.C. §§ 2301(4)-(5).

527.    The Vehicles are "consumer products" within the meaning of 15 U.S.C. §2301(1).

528.    Defendants were at all relevant times the manufacturer, distributor, warrantor, and seller of the Vehicles.

529.    In the alternative, if Defendants were not the sellers of the Vehicles to Plaintiffs' Insureds, Plaintiffs' Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendants sold Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Plaintiffs' Insureds.

530.    Defendants provided an express warranty to Plaintiffs' Insureds that their vehicles conform to all applicable motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture.  This express warranty was set forth on the VIN plate, and on information and belief, provided at the point of sale with sales materials.

531.    Defendants also provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. However, the Vehicles were not fit for their ordinary purpose of providing reasonably reliable or safe transportation at the time of

sale or thereafter because, *inter alia*, the defective Vehicles lacked any anti-theft features or design elements sufficient to satisfy FMVSS 114, or otherwise provide an adequate theft deterrent, resulting in a severe and highly dangerous risk of vehicle theft, and in fact, the Vehicles belonging to Plaintiffs' Insureds were stolen and/or damages as a result.

532.   Defendants impliedly warranted that the Vehicles were of merchantable quality and fit for their ordinary and intended use. This implied warranty included, among other things, a warranty that the Vehicles manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state law and regulations, including FMVSS 114.

533.   Defendants' warranties were designed and intended for the benefit of the Plaintiffs' Insureds as ultimate consumers of the Vehicles.

534.   Contrary to the applicable implied warranties, the Vehicles at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiffs' Insureds with reliable, durable, and safe transportation. Instead, the Vehicles suffer from design defect(s) and/or manufacturing defect(s) that render them vulnerable to an abnormally high risk of theft.

535.   Defendants' actions, as complained of herein, breached the implied warranty that the Vehicles were of merchantable quality and fit for such use.

536.   Defendants' breach of the implied warranties has deprived Plaintiffs' Insureds of the benefit of their bargain.

537.   The amount in controversy of Plaintiffs' claims meets or exceeds the sum or value of $50,000 (exclusive of interests and costs) computed on the basis of all claims to be determined in this suit.

538.   Plaintiffs provided notice of the issues raised within this count on March 09, 2023. Plaintiffs and their Insureds, however, were not required to provide Defendants with written notice of their claims and an opportunity to cure because

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

affording Defendants a reasonable opportunity to cure their breach of written warranties would have been futile. Defendants were also on notice of the alleged defects from the complaints and service requests it received from consumers, including through NHTSA, as well as from their own warranty claims, customer complaint data, and parts sales data. This is evidenced by Defendants' own statements acknowledging the issue.

539.    As a direct and proximate result of Defendants' breach of their implied warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage, loss of use damage, consequential damages, and other damages and costs, for which the Defendants are liable, together with statutory attorney's fees and such other relief which the Court deems to be just and appropriate.

## I.    Negligence

540.    Plaintiffs incorporate by reference each preceding and succeeding paragraph as if fully set forth at length herein.

541.    Defendants manufactured, distributed and sold the Vehicles.

542.    Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

543.    Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

544.    Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.  Defendants similarly failed to exercise reasonable care in crafting communications that concealed the Thief Friendly Design from the Insureds.

545.    The National Highway Traffic Safety Administration has a self-

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

546.   The Defendants' violation of their duties under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

547.   As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

## J.   Negligent Failure To Warn

548.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as if fully set forth at length herein.

549.   Defendants manufactured, distributed, and sold the Vehicles.

550.   The Vehicles sold to Plaintiffs' Insureds:

    a.    were not merchantable;

    b.    were not reasonably suited to the intended use for which they were sold; and

    c.    were in a defective and unreasonably dangerous condition at the time of sale, by reason of the design of the Vehicles.

551.   Defendants made affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.  In reality, however, the Vehicles do not comply with such standards.

552.   Defendants owed Plaintiffs' Insureds a duty to warn with respect to

dangers and risks associated with the ordinary and foreseeable use of the Vehicles, particularly when such risks arose from latent and hidden defects of design that could not be detected by Plaintiffs' Insureds in the exercise of any reasonable care.

553.   At all relevant times, including at the time of sale, Defendants knew that the Vehicles were defective because they lacked immobilizers or other anti-theft features or design elements sufficient to comply with FMVSS 114, creating a dangerous risk of vehicle theft, a risk to the safety of consumers and the public, and a risk of property damage and loss.

554.   Defendants breached their duty owed to the Insureds by failing to provide them with any warnings with respect to the dangers and risks of vehicle thefts and harm to consumers, the public, and property directly resulting from the design of the Vehicles, including the lack of anti-theft features and/or design elements that complied with FMVSS 114.

555.   The failure to warn Plaintiffs' Insureds of the dangers and risks caused by noncompliance with FMVSS 114 was unreasonable, and Defendants' failure to warn was the result of a lack of due care and ordinary diligence.

556.   Defendants' failure to warn Plaintiffs' Insureds regarding the defective and unreasonably dangerous condition of the Vehicles proximately caused damage to Plaintiffs' Insureds resulting from vehicle thefts.

557.   Defendants are liable in tort for negligent failure to warn for the damages caused by and to the Vehicles.

558.   Defendants owe a duty to consumers not to sell dangerous products that create severe risks of vehicle theft, property damage, and harm to the safety of consumers and the public, and to warn consumers of such risks. This duty arises under applicable law and is independent of any contractual obligation.

559.   As a direct and proximate result of Defendants' negligent failure to warn Plaintiffs' Insureds, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, and other damages for which

1  Defendants are liable.

2  **K.      Negligent Misrepresentation**

3      560.   Plaintiffs  incorporate  by  reference  each  preceding  and  succeeding

4  paragraph as though fully set forth at length herein.

5      561.   Defendants made representations to Plaintiffs' Insureds concerning the

6  safety and quality of the Vehicles that were not true, as more fully alleged in the

7  preceding paragraphs.

8      562.   Defendants   had   no   reasonable   grounds   for   believing   these

9  representations were true when they made them, yet they intended that Plaintiffs'

10  Insureds rely on the misrepresentations.

11      563.   Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations

12  and, as a direct and proximate result thereof, and Plaintiffs' Insureds suffered damage,

13  including property damage and the loss of use of the Vehicles, and other damages for

14  which the Defendants are liable.

15              <u>**ALABAMA STATE LAW CLAIMS FOR RELIEF**</u>

16      **(Alleged by  Plaintiffs, and Members of Alabama Subclasses, against All**

17                              **Defendants)**

18      564.   Class Plaintiffs, the Hyundai Alabama Subclass and Kia Alabama

19  Subclass, and Independent Subrogation Plaintiffs allege the following causes of

20  action against All Defendants.

21      565.   The  Alabama  Subclasses  are  comprised  of  named  and  unnamed

22  Members of the nationwide classes with claims stemming from vehicles losses

23  (including Kia and Hyundai Vehicles) due to Defendants' Thief Friendly Design in

24  the State of Alabama including, but not limited to, the following named Class

25  Plaintiffs: Allstate Fire and Casualty Insurance Company; Allstate Indemnity

26  Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company;

27  Allstate Property & Casualty Insurance Company; Permanent General Assurance

28  Corporation; American Family Connect Property and Casualty Company; American

Family Insurance Company; GEICO General Insurance Company; Government Employees Insurance Company; GEICO Casualty Company; Horace Mann Property & Casualty Insurance Company; Nationwide Property & Casualty Insurance Company; Nationwide Affinity Insurance Company of America; Nationwide General Insurance Company; Nationwide Insurance Company of American; Victoria Select Insurance Company; Progressive Mountain Insurance Company;  Progressive Specialty Insurance Company; and USAA Casualty Insurance Company, all of whom paid policy proceeds to their respective Insureds  in Alabama pursuant to policies of insurance.

**A.    Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose (Ala. Code §§ 7-2-314 and 7-2a-212)**

566.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

567.   Named Subclass Members bring this count individually and on behalf of the other members of the Alabama Subclasses against Defendants.

568.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ala. Code §§ 7-2-314 and 7-2A-212.

569.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles Ala. Code §§ 7-2-104(1) and 7-2A-103(3), and "sellers" of motor vehicles under §7-2-103(1)(d).

570.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ala. Code §§ 7-2-103(1)(p), and Plaintiffs and Subclass Members who leased Vehicles in Alabama are "lessees" within the meaning of Ala. Code § 7-2A-103(1)(n).

571.   Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in Alabama and are therefore "buyers" within the meaning of Ala. Code §§ 7-2-103(1)(a).

572.   The Vehicles were at all relevant times "goods" within the meaning of Ala. Code §§ 7-2-105(1) and 7-2A-103(1)(h).

573.   Defendants knew of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for their intended purpose, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114, and industry standards.

574.   However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

575.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Class Members. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

576.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Subclass Members may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever-present risk of them being stolen.  In fact,

577.   Plaintiffs and Subclass Members have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the individual notice letters sent by Class Members within a reasonable amount of time after the Thief Friendly Design became public.

578.   Alternatively, Plaintiffs and the Subclass Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout this Consolidated Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. Any remedy, fix, or repair offered by Defendants to date has been ineffective. As such, Plaintiffs and Subclass Members had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

579.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Vehicles are defective, and the Thief Friendly Design in the Vehicles has not been remedied. Therefore, Plaintiffs and Subclass Members have been damaged, in an amount to be proven at trial.

**B.      Breach of Express Warranty (Ala. Code § 7-2-13)**

580.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

581.   Named Subclass Members bring this count individually and on behalf of the other members of the Alabama Subclasses against Defendants.

582.   During all relevant periods of time, Defendants sold Hyundai and Kia branded Vehicles that failed to conform to Defendants' description of the Vehicles as warranted. Affixed to those Vehicles, of both Kia and Hyundai Vehcles, were VIN plates stating that the Vehicles conform to all applicable vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided in a prior Paragraph of this Complaint.

583.   The statements on the VIN plates as to the Vehicles' compliance with safety and anti-theft regulations are affirmations of fact and a promise to Plaintiffs' Insureds. Those statements amount to an express warranty under Ala. Code § 7-2-13.

584.   Defendants received ample notice about their Vehicles' failing to meet safety and theft prevention standards through Plaintiffs, Plaintiffs' Insureds, and international media attention. Plaintiffs provided express notice of this failure by letter dated March 09, 2022.  To date, Defendants have failed to remedy the problem in a meaningful way, and as a result, thefts continue to escalate.

585.   Defendants breached their express warranty by failing to timely cure the Vehicles' defects that allowed the Vehicles to be easily stolen. The failure to cure the defect resulted in monetary losses in the millions.

**C.      Violation of the Alabama Deceptive Trade Practices Act (Ala. Code §§ 8-19-1, et seq.)**

586.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

587.   Named Subclass Members bring this count individually and on behalf of

the other members of the Alabama Subclasses against Defendants.

588.   Defendants, Plaintiffs, all Subclass Members, and their Insureds are "persons" within the meaning of Ala. Code. §§ 8-19-3(5).

589.   Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "consumers" within the meaning of §§ 8-19-3(2)(5).

590.   The Vehicles are "goods" within the meaning of §§ 8-19-3(3).

591.   Defendants were and are engaged in "trade or commerce" within the meaning of §§ 8-19-3(8).

592.   The Alabama Deceptive Trade Practices Act ("Alabama DTPA") prohibits "deceptive acts or practices in the conduct of any trade or commerce[.]" §§ 8-19-3(5).

593.   In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Alabama DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

594.   Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Alabama DTPA in the course of their business. Specifically, Defendants owed the Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

595.   Information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

596.   By misrepresenting the Vehicles as safe, reliable, and compliant with all applicable anti-theft and safety standards, and by failing to disclose, while actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the unfair or deceptive business practices prohibited by the Alabama DTPA.

597.   The reliance of Plaintiffs' Insureds was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above, Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

598.   Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles. By concealing information about the Thief Friendly Design, Defendants prevented the Insureds from realizing their Vehicles were uniquely susceptible to theft in a matter of seconds.

599.   Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information to Plaintiffs' Insureds.

600.   Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

601.   Pursuant to the Alabama DTPA, Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair and/or deceptive act and/or practices and awarding damages and any other just and proper relief available under the Alabama DTPA.

**D.     Fraud by Misstatement and Suppression of Material Facts (Ala. Code §§ 6-5-101, 6-5-102)**

602.   Plaintiffs re-allege and incorporate by reference all preceding allegations as though fully set forth herein.

603.   Named Subclass Members bring this count individually and on behalf of the other members of the Alabama Subclasses against Defendants.

604.   Defendants designed, manufactured, marketed, sold, and leased the

Vehicles. In doing so, Defendants were aware of the Vehicles capabilities, and knew whether the Vehicles met applicable regulatory and industry safety and anti-theft standards, like FMVSS 114.

605.   Defendants knew that the Vehicles failed to meet all applicable safety and anti-theft standards because the Vehicles suffered from a Thief Friendly Design that rendered the Vehicles vulnerable to theft by juveniles in a matter of seconds.

606.   Despite knowing that the Vehicles were manufactured with the Thief Friendly Design, Defendants affixed VIN Plates to the Vehicles stating that the Vehicles conform to all applicable standards, including bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.  On information and belief, similar written statements were made to Plaintiffs' Insureds by Defendants prior to, or at the point of sale or lease of the Vehicles to the Insureds.

607.   Defendants suppressed material facts about the Thief Friendly Design and were obligated to disclose the true nature of the Thief Friendly Design because those facts were known to them when the Vehicles were manufactured and sold, and particularly in view of Defendants' false statement that the Vehicles complied with all applicable safety and anti-theft standards. These actions by Defendants constitute the willful suppression and misrepresentation of material facts meant to induce the Insureds to act, and the Insureds did act upon those misrepresentations and omissions, giving rise to damages due to deceit, and suppression of material facts.

608.   For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because any reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle. Specifically, any consumer would consider as important the information that the Vehicles did not comply with federal safety and anti-theft standards. The Thief Friendly Design is also material because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds.

609.   The Insureds' reliance upon Defendants' statements and omissions was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

610.   Plaintiffs and Class Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information to Plaintiffs' Insureds.

**E.   Negligence**

611.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

612.   Named Subclass Members bring this count individually and on behalf of the other members of the Alabama Subclasses against Defendants.

613.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

614.   Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

615.   Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

616.   The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of

any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

617. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

618. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

619. Defendants' conduct evinced an indifference to and a reckless disregard of the health or safety of Plaintiffs and Plaintiffs' Insureds thereby entitling them to exemplary and punitive damages.

**F.      Gross Negligence**

620. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

621. Named Subclass Members bring this count individually and on behalf of the other members of the Alabama Subclasses against Defendants.

622. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

623. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

624. In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and Plaintiffs' Insureds.

625. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

626. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1   use of the Vehicles, together with other damages for which Defendants are liable.

2       627.   Defendants' conduct evinced an indifference to and a reckless disregard

3   of the health or safety of Plaintiffs and Plaintiffs' Insureds thereby entitling them to

4   appropriate damages under Alabama law.

5   ## ALASKA STATE LAW CLAIMS FOR RELIEF

6   **(Alleged by  Plaintiffs, and Members of Alaska Subclasses, against All**

7   **Defendants)**

8       628.   Class Plaintiffs, the Hyundai Alaska Subclass and Kia Alaska Subclass,

9   and Independent Subrogation Plaintiffs allege the following causes of action against

10   All Defendants.

11       629.   The Alaska Subclasses are comprised of nationwide Hyundai and Kia

12   Class Members with claims stemming from vehicle losses (including Kia and

13   Hyundai Vehicles) in the State of Alaska due to Defendants' Thief Friendly Design,

14   including, but not limited to, the following named Class Plaintiffs:  Allstate Fire and

15   Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance

16   Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty

17   Insurance Company; GEICO Advantage Insurance Company; GEICO Choice

18   Insurance Company; GEICO Indemnity Company; GEICO Secure Insurance

19   Company; Horace Mann Insurance Company; Horace Mann Property & Casualty

20   Insurance Company; Garrison Property & Casualty Insurance Company; USAA

21   Casualty Indemnity Company; USAA General Indemnity Company; and United

22   Services Automobile Association, all of whom paid policy proceeds to their

23   respective Insureds for losses in Alaska pursuant to policies of insurance.

24   **A.**   **Breach of Implied Warranty (Alaska Stat. Ann. §§ 45.02.314 and**

25   **45.12.212)**

26       630.   Plaintiffs reallege and incorporate by reference each preceding and

27   succeeding paragraph as though fully set forth at length herein.

28       631.   "Defendants were at all relevant times 'merchants' with respect to motor

vehicles under Alaska Stat. Ann. §§ 45.02.104(a) and 45.12.103(c)(11), and 'sellers' of motor vehicles under § 45.02.103(a)(4).

632.  With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. Ann. § 45.12.103(a)(16).

633.  The Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. Ann. §§ 45.02.105(a) and 45.12.103(a)(8).

634.  A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Alaska Stat. §§ 45.02.314 and 45.12.212.

635.  Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

636.  However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacked any anti-theft features or design elements to provide an adequate theft deterrent, or to otherwise satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

637.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and their Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

638.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs and may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.   Any remedy proposed by Defendants, moreover, does nothing to address thefts that have already occurred, and upon information and belief, the proposed remedies offered to date fail to address the Thief Friendly Design.

639.   Plaintiffs provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the notice letters sent by Insureds, and Subclass Members within a reasonable amount of time after the Thief Friendly Design became public. On March 9, 2023, moreover, Plaintiffs provided actual notice to Defendants of the Thief Friendly Design, and Defendants have failed to respond with an effective remedy to the Thief Friendly Design.

640.   Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout this Consolidated Complaint, and other Complaints filed in

connection with this MDL proceeding, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Insureds' Vehicles to them for repair, nor has any repair, or remedy offered to date been effective. The thefts and damages that have already occurred due to the Thief Friendly Design, moreover, cannot be remedied by repair.

641.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, the Vehicles were and are defective, and the Thief Friendly Design in the Vehicles has not been remedied. As a direct and proximate result, Plaintiffs and Subclass Members have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty (Alaska Stat. §§ 45.02.313 and 45.12.210)**

642.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

643.   "Defendants were at all relevant times 'merchants' with respect to motor vehicles under Alaska Stat. Ann. §§ 45.02.104(a) and 45.12.103(c)(11), and 'sellers' of motor vehicles under § 45.02.103(a)(4).

644.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Alaska Stat. Ann. § 45.12.103(a)(16).

645.   The Vehicles are and were at all relevant times "goods" within the meaning of Alaska Stat. Ann. §§ 45.02.105(a) and 45.12.103(a)(8).

646.   Within the relevant time period, Plaintiffs' and Subclass members' Insureds purchased or leased Hyundai and Kia branded Vehicles from Defendants.

647.   In connection with the purchase or lease of each one of its new vehicles, Defendants, through the attachment of VIN plates, made an express warranty that the Vehicles conform to all applicable U.S.A. Federal Motor Vehicle Safety Standards ("FMVSS"), including bumper, and theft prevention standards in effect on the date of

manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.  On information and belief, similar written warranties were made prior to, or at the point of sale.

648.   At all times, 49 U.S.C. § 30115(a) required Defendants to certify that the Vehicles complied with all applicable motor vehicle safety standards, including FMVSS 114.

649.   At all times, 49 U.S.C. § 30115(b)(2) codified the Defendants' requirement to assume responsibility for compliance with all applicable motor vehicle safety standards, including FMVSS 114.

650.   FMVSS 114 (49 CFR § 571.114) requires manufacturers of motor vehicles that each vehicle must have a starting system which, whenever the key is removed from the starting system prevents:

      a.     The normal activation of the vehicle's engine or motor; and

      b.     Either steering, or forward self-mobility, of the vehicle, or both.

651.   As manufacturers of motor vehicles, Defendants were required to manufacture the Vehicles to prevent engine activation when the key is removed from the starting system.

652.   After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein. Plaintiffs discovered that the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture after their Insureds reported theft and damage to their Vehicles in alarming numbers. Plaintiffs then determined that the Vehicles failed to perform properly because the Vehicles lacked an anti-theft device that conforms with industry standards and/or federal regulations set forth above. As a result of that Thief Friendly Design, the Vehicles were easily stolen, and thus failed to conform to the terms of the express warranty described in the Vehicles' VIN plates.

653.   The Defendants' warranties formed part of the bargain that was reached when Plaintiffs' Insureds purchased or leased Vehicles equipped with the non-compliant Thief Friendly Design.

654.   Despite the existence of warranties, the Defendants failed to inform Plaintiffs or their Insureds that the Vehicles were intentionally designed and manufactured to be out of compliance with applicable state and federal theft and safety regulations, including FMVSS 114, and failed to fix the defective components free of charge.

655.   Defendants breached their express warranty that promised to comply with applicable theft and safety standards, including FMVSS 114.

656.   As alleged in more detail herein, at the time the Defendants warranted and sold or leased the Vehicles, they knew that the Vehicles were inherently defective and did not conform to their warranties.

657.   Defendants wrongfully and fraudulently concealed material facts regarding the Vehicles. The Insureds were therefore induced to purchase or lease the Vehicles under false and/or fraudulent pretenses.

658.   Many if not all of the damages flowing from the substandard Vehicles cannot be resolved through the limited remedy of "replacements or adjustments," as many incidental and consequential damages have already been suffered because of Defendants' fraudulent conduct as alleged herein, and because of its failure and/or continued failure to provide even a limited viable remedy within a reasonable time, and any limitation on Plaintiffs' and the other Alaska Subclass members' remedies would be insufficient to make Plaintiffs and the other Alaska Subclass members whole.

659.   The Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, within a reasonable amount of time. Plaintiffs and Class members provided express notice of breaches of warranty caused by the Thief Friendly Design on March 09, 2023.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

660.   As a direct and proximate result of the Defendants' breach of express warranties, Plaintiffs and Subclass members have been damaged in an amount to be determined at trial.

**C.     Violation of the Alaska Unfair Trade Practices and Consumer Protection Act (Alaska Stat. Ann. § 45.50.471, et seq.)**

661.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

662.   Plaintiffs and Subclass Members stand in the shoes of their Insureds as consumers (Alaska Stat. Ann. § 45.50.561) who bought or leased Vehicles from Defendants.

663.   Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, which is deemed unlawful (Alaska Stat. Ann. § 45.50.471(a)).

664.   Defendants knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design.

665.   The Alaska Unfair Trade Practices Act and Consumer Protection Act ("Alaska CPA") declares that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce . . . are unlawful." Alaska Stat. Ann. § 45.50.471(a). The Alaska CPA declares unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce unlawful, including: "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;" representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;" or "using or employing deception, fraud, false pretense, false promise, misrepresentation, or knowingly concealing, suppressing, or omitting a

material fact with intent that others rely upon the concealment, suppression or omission in connection with the sale or advertisement of goods or services whether or not a person has in fact been misled, deceived or damaged." Alaska Stat. § 45.50.471 (b) (4, 6, 8, 12).

666.   In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Alaska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

667.   Through their business, Defendants concealed and suppressed material facts concerning the Vehicles. Defendants accomplished this by manufacturing the Vehicles with inherently substandard design flaws that allow not only theft, but due to its ease, encouraged those who would otherwise not steal or lack the know-how to steal the Vehicles, to engage in theft of the Vehicles. Defendants knew the Thief Friendly Design existed in the vehicles and nonetheless placed them on the market for purchase.

668.   Defendants knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design. Defendants, through the attachment of VIN plates, falsely promised and misrepresented that the Vehicles conformed to all applicable FMVSS standards, including bumper, and theft prevention standards in effect on the date of manufacture.

669.   Defendants misrepresented the true quality and nature of the Vehicles, causing likelihood of confusion, falsely attributing approval and characteristics, falsely advertising the standard, quality, and grade, and employing deceptive practices (Alaska Stat. Ann. § 45.50.471(b)(3), (4), (6), (8), (11), and (12)).

670.   The result was what Defendants intended—the Vehicles were sold to consumers by way of false statements, misrepresentations, and omissions of material

facts. The Insureds had no way of discerning that Defendants' representations were false and misleading. Plaintiffs and/or Alaska Subclass members did not and could not unravel Defendants' deception on their own.

671.   Defendants thus violated the Act by, at minimum, representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

672.   The misrepresentations, concealments, omissions, and suppressions by the Defendants were material to the Insureds' decisions to purchase or lease the Vehicles because they directly impacted the availability, value, cost, and reliability of the Vehicles.

673.   Plaintiffs and Class Members relied on the misrepresentations and suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

674.   The violations by the Defendants present a continuing risk to Plaintiffs, Class Members, and the general public due to the existence of the Thief Friendly Design in the Vehicles.

675.   Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Alaska CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and their Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above: a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds; b. Given the Thief Friendly Design's hidden and technical nature, the Insureds' lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own; c. Defendants knew

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and d. Defendants made false representations that the Vehicles complied with applicable anti-theft standards, and incomplete representations about the safety and reliability of the Vehicles while stating the Vehicles complied with all applicable safety and anti-theft standards and purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design, while simultaneously representing that the Vehicles complied with applicable safety and anti-theft standards.

676.   As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles. Defendants had exclusive knowledge of the Thief Friendly Design and failed to disclose the same to Plaintiffs' Insureds and the Insureds of Subclass Members, violating their duty under the Alaska CPA (Alaska Stat. Ann. § 45.50.471(a)).

677.   By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Alaska Stat. Ann. § 45.50.471(b): a. Causing a likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; b. Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have, including that they complied with all applicable safety and anti-theft standards; c. Representing that the Vehicles are of a particular standard, quality, and grade, including that they complied with all applicable safety and anti-theft standards, when they are not; d. Advertising the Vehicles with the intent not to sell or lease them as

advertised; e. Engaging in other conduct which created a likelihood of confusion or of misunderstanding and that misleads, deceives, or damages; and f. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby. Alaska Stat. Ann. § 45.50.471(b)(3), (4), (6), (8), (11), and (12).

678. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

679. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

680. Defendants owed the Insureds a duty to disclose the safety and security risks of the Vehicles because Defendants:

      a.    possessed exclusive knowledge that they were manufacturing, selling, and distributing vehicles throughout the United States that did not comply with all applicable motor vehicle safety standards; and/or

      b.    intentionally concealed the foregoing from Plaintiffs' and/or Alaska Subclass members' Insureds; and/or

      c.    made false and incomplete representations about the safety and security of the Vehicles generally, and the Thief Friendly Design

in particular, while purposefully withholding material facts from Plaintiffs' and/or Alaska Subclass members' Insureds that contradicted these representations.

Instead, Defendants concealed the Thief Friendly Design and the true nature of the safety, and security of the Vehicles, resulting in a raft of negative publicity once the defects finally began to be disclosed, the value of the Vehicles has greatly diminished.

681.   Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

682.   The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

683.   Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

684.   Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

685.   Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and

practices complained of herein affect the public interest.

686.   On March 9, 2023, Plaintiffs and Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by various Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs and Subclass members seek all damages and relief to which they are entitled.

687.   Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

688.   Pursuant to Alaska Stat. Ann. § 45.50. 531, Plaintiffs seek monetary relief against Defendants measured as the greater of (a) three times the actual damages in an amount to be determined at trial or (b) $500 for each Plaintiff and each Subclass member.

689.   Pursuant to Alaska Stat. Ann. §§ 45.50.531 and 45.50.535, Plaintiffs, and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Alaska CPA.

**D.     Fraud by Misrepresentation, Concealment and Omission**

690.   Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

691.   Defendants are liable for negligent representation for, at minimum, representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality

1   when they are not; and omitting material facts in describing the Vehicles.

2   692.   Defendants engaged in misleading, false, unfair or deceptive acts or

3   practices by installing substandard theft prevention equipment, failing to disclose and

4   actively concealing the Thief Friendly Design and the true security characteristics of

5   the Vehicles, by marketing its vehicles as compliant with all applicable motor vehicle

6   safety standards, including but not limited to FMVSS 114.

7   693.   The Insureds justifiably relied on the Defendants' misrepresentations

8   that the Vehicles complied with all applicable motor vehicle safety standards.

9   694.   The Defendants failed to use reasonable care or competence in obtaining

10  or communicating the Thief Friendly Design, and went as far as to affix each Vehicle

11  with a VIN plate that not only omitted information, but misrepresented the truth.

12  Defendants knew that the Vehicles did not comply with all applicable motor vehicle

13  safety standards, including but not limited to FMVSS 114.

14  695.   Defendants' misrepresentations listed above were fraudulent in that they:

15  1) knew or believed that the Vehicles did not comply with all applicable motor vehicle

16  safety standards, including but not limited to FMVSS 114; and/or 2) did not have

17  confidence in the accuracy of the representations affixed to the Vehicles' vin plates;

18  and/or 3) knew they did not have the basis for the representations stated or implied.

19  696.   Defendants made the fraudulent misrepresentations above for the

20  purpose of inducing Plaintiffs' and/or Alaska Subclass members' Insureds to act in

21  reliance on them and thus purchase the Vehicles.

22  697.   For the reasons set forth above, the Thief Friendly Design is material to

23  the sale of the Vehicles because a reasonable person would find it important in

24  purchasing, leasing, or retaining a new or used motor vehicle. Specifically, any

25  consumer would consider as important the information that the Vehicles did not

26  comply with federal safety and anti-theft standards. The Thief Friendly Design is also

27  material because it directly impacts the availability of the Vehicles, the risk of theft,

28  and value of the Vehicles purchased or leased by the Insureds.

698.   Plaintiffs' and/or Alaska Subclass members' Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards.

699.   The Defendants failed to use reasonable care or competence in obtaining or communicating the Thief Friendly Design, and went as far as to affix each Vehicle with a vin plate that not only omitted information, but misrepresented the truth.

700.   As a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs and/or Alaska Subclass members have suffered injury-in-fact and/or actual damage.

701.   As a direct and proximate result of the Defendants' fraudulent misrepresentations, Plaintiffs and/or Alaska Subclass members have been damaged in an amount to be determined at trial, reflecting the pecuniary loss caused to them by their Insureds' justifiable reliance on them.

**E.     Negligence**

702.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

703.   Defendants manufactured, distributed and sold the Vehicles.

704.   Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

705.   Defendants' duty of care is based upon applicable codes, industry standards and customs, and statutory and common law requirements. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

706.   The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

707.   The Defendants' violation of their duties under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

708.   The Plaintiffs and Plaintiffs Insureds suffered damages as a direct and proximate result of Defendants' breach of their duties and the applicable standard of care.

709.   As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, together with other damages for which the Defendants are liable.

**F.    Negligent Misrepresentation**

710.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

711.   Defendants are liable for negligent representation for, at minimum, representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

712.   Defendants made these representations to induce the Insureds into purchasing Vehicles.

713.   Defendants engaged in misleading, false, unfair or deceptive acts or practices by installing substandard theft prevention equipment, failing to disclose and actively concealing the Thief Friendly Designs and the true security characteristics of

the Vehicles, by marketing its vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to FMVSS 114.

714.   The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards.

715.   The Defendants failed to use reasonable care or competence in obtaining or communicating the Thief Friendly Design and went as far as to affix each Vehicle with a vin plate that not only omitted information, but misrepresented the truth.

716.   As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiffs and/or Alaska Subclass members have suffered injury-in-fact and/or actual damage.

717.   As a direct and proximate result of the Defendants' negligent misrepresentations, Plaintiffs and/or Alaska Subclass members have been damaged in an amount to be determined at trial.

**G.      Gross Negligence**

718.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

719.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

720.   Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

721.   In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless disregard of possible consequences and indifference to the rights of others including Plaintiffs and Plaintiffs' Insureds.

722.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

723.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of

1    use of the Vehicles, together with other damages for which Defendants are liable.

2        724.   Defendants' conduct evidenced a reckless disregard of possible

3    consequences and indifference to the rights of others including Plaintiffs and

4    Plaintiffs' Insureds thereby entitling Plaintiffs and Plaintiffs' Insureds to exemplary

5    and punitive damages.

6                    **ARIZONA STATE LAW CLAIMS FOR RELIEF**

7        **(Alleged by  Plaintiffs, and Members of Arizona Subclasses, against All**

8                                    **Defendants)**

9        725.   Class Plaintiffs, the Hyundai Arizona Subclass and Kia Arizona

10   Subclass, and Independent Subrogation Plaintiffs allege the following causes of

11   action against All Defendants.

12       726.   The Arizona Subclasses are comprised of Class Members with claims

13   stemming from vehicle losses (from Kia and Hyundai Vehicles) in the State of

14   Arizona due to the Defendants' Thief Friendly Design including, but not limited to,

15   the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate

16   Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate

17   Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property &

18   Casualty Insurance Company; American Family Insurance Company; American

19   Family Mutual Insurance Company, SI; Main Street America Protection Insurance

20   Company; Permanent General Assurance Company; Erie Insurance Exchange;

21   Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance

22   Company; American Access Casualty Company; GEICO Advantage Insurance

23   Company; GEICO Casualty Company; GEICO Choice Insurance Company; GEICO

24   County Mutual Insurance Company; GEICO Indemnity Company; GEICO Secure

25   Insurance Company; Horace Mann Insurance Company; Horace Mann Property &

26   Casualty Insurance Company; Kemper Independence Insurance Company; Financial

27   Indemnity Company; Infinity Insurance Company; Nationwide Affinity Insurance

28   Company; Nationwide Mutual Insurance Company;  Garrison Property & Casualty

Insurance Company; USAA Casualty Indemnity Company; USAA General Indemnity Company; and United Services Automobile Association, all of whom paid policy proceeds to their respective Insureds for losses in Arizona pursuant to policies of insurance.

## A.   Breach of Implied Warranty of Merchantability (Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212)

727.   Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

728.   Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ariz. Rev. Stat. Ann. §§ 47-2104(A) and 47-2A103(C)(11), and "sellers" of motor vehicles under § 47-2103(A)(4).

729.   With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ariz. Rev. Stat. Ann. § 4-2A103(A)(16).

730.   The Vehicles are and were at all relevant times "goods" within the meaning of Ariz. Rev. Stat. Ann. §§ 47-2105(A) and 47-2A103(A)(8).

731.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ariz. Rev. Stat. Ann. §§ 47-2314 and 47-2A212.

732.   Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided the Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

733.   However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition,

would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacked any anti-theft features or design elements to provide an adequate theft deterrent, or otherwise failed to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders the Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

734.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and their Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

735.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs, Subclass Members, and their Insureds the benefit of their respective bargains, which presupposes the Insureds were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

736.   Plaintiffs provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by way of the numerous complaints filed against them and the notice letters sent by Insureds, and Subclass Members within a

1  reasonable amount of time after knowledge of the Thief Friendly Design became
2  public.  Specifically, Plaintiffs and Subclass members provided notice of the Thief
3  Friendly Design on March 09, 2023.

4       737.  Alternatively, Plaintiffs were excused from providing Defendants with
5  notice and an opportunity to cure the breach, because it would have been futile. As
6  alleged throughout this Consolidated Complaint, and other Complaints filed in
7  connection with this MDL proceeding, Defendants have long known that the Vehicles
8  contained the Thief Friendly Design yet have failed to cure, remedy, or repair the
9  breach.  The thefts and damages that have already occurred due to the Thief Friendly
10 Design, moreover, cannot be remedied by repair.

11      738.  As a direct and proximate result of Defendants' breach of the implied
12 warranty of merchantability, the Vehicles were and are defective, and the Thief
13 Friendly Design in the Vehicles has not been remedied. As a direct and proximate
14 result, Plaintiffs and Subclass Members have been damaged in an amount to be proven
15 at trial.

16 **B.    Breach of Express Warranty (Ariz. Rev. Stat. Ann. §§ 47-2313, 47-2A210)**

17      739.  Plaintiffs incorporate by reference and reallege each preceding and
18 succeeding paragraph as though fully set forth at length herein.

19      740.  During the relevant time period described above, Plaintiffs' Insureds
20 purchased or leased Hyundai and Kia branded Vehicles.

21      741.  Those Vehicles were manufactured by Defendants during the relevant
22 time period described above. Through attachment of VIN plates, Defendants made an
23 express warranty that the Vehicles conform to all applicable U.S.A. federal motor
24 safety, bumper, and theft prevention standards in effect on the date of manufacture.
25 An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided
26 above. On information and belief, similar written warranties were made prior to or at
27 the point of sale.

28      742.  After Plaintiffs' Insureds purchased or leased the Hyundai and Kia

branded Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

743. The Vehicles did not perform as promised in accordance with Defendants' express warranty as they are capable of being stole in a matter of seconds, and that fact has become common knowledge. Thus, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. As a result of that Thief Friendly Design, the Vehicles were easily stolen, and thus failed to conform to the terms of the express warranty described in the Vehicles' VIN plates.

744. Neither Plaintiffs nor their Insureds were required to provide notice of the Thief Friendly Design prior to the vehicles being stolen and/or damaged. Nevertheless, Plaintiffs provided written notice to Defendants of the Thief Friendly Design on March 09, 2023, and further notice of the Thief Friendly Design was provided in conjunction with numerous cases being filed regarding the same Thief Friendly Design in actions around the country. While Defendants have suggested that they are attempting to remedy the Thief Friendly Design, any remedy offered to date is ineffective, and fails to comply with anti-theft standards.

745. Plaintiffs, Subclass Members, and their Insureds have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' express warranty.

**C.   Violation of the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann. § 44-1521, et seq.)**

746. Plaintiffs reallege each preceding and succeeding paragraph as though fully set forth at length herein.

747. Plaintiffs, Defendants, and Subclass Members are "persons" as defined in Ariz. Rev. Stat. Ann. § 44-1521(6).

748.   The Vehicles are "merchandise" within the definition of Ariz. Rev. Stat. Ann § 44-1521(5).

749.   Defendants engaged in unlawful business practices as prohibited under the Arizona Consumer Fraud Act (Ariz. Rev. Stat. Ann § 44-1522(A)).

750.   Defendants, through their agents, employees, and/or subsidiaries, knowingly and intentionally misrepresented, omitted, concealed, and/or failed to disclose material facts regarding the quality, reliability, and safety of the Vehicles.

751.   Defendants had an ongoing duty to Plaintiffs' Insureds and the Insureds of Subclass Members to refrain from unfair or deceptive practices under the Arizona CFA.

752.   Defendants had exclusive knowledge about the Thief Friendly Design in the Vehicles, which they did not disclose.

753.   The information about the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles and Defendants had with the intent to induce consumers, including the Insureds, to purchase the Vehicles.

754.   Defendants misrepresented the Vehicles as safe and reliable while concealing the dangers and risks posed by the Thief Friendly Design, in violation of Ariz. Rev. Stat. § 44-1522(A).

755.   Defendants' deceptive practices misled and created a false impression in consumers that the Vehicles had adequate anti-theft protection and were not affected by the Thief Friendly Design.

756.   Defendants' misrepresentations, omissions, and concealments of material facts to the decisions of Plaintiffs' Insureds and the Insureds of Subclass Members to purchase and lease the vehicles.

757.   Plaintiffs and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

758.   Plaintiffs and Subclass Members seek an order enjoining Defendants'

unfair and/or deceptive acts or practices, awarding damages, and any other just and proper relief available under the Arizona CFA.

**D.     Fraud Based On Material Omissions and Misstatements**

759.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

760.   Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

761.   Having been aware of the Thief Friendly Design within the Vehicles while making affirmative false statements as to the Vehicles' compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone been aware of the defects concealed in Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.   Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

b.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c.   Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

d.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief

Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.  Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

762.   For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle. Specifically, any consumer would consider as important the information that the Vehicles did not comply with federal safety and anti-theft standards. The Thief Friendly Design is also material because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds.

763.   Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

764.   The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

765.   Plaintiffs and Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

766.   If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

767.   Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased.

768.   Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or deter theft of the Vehicles on their own.

769.   As a direct and proximate result of Defendants' omissions, the Insureds' Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

770.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**E.    Negligence**

771.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

772.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

773.   Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

774.   Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

775.   The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

776.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS; and their failure to inform the Insureds of their non-compliance with federal anti-theft and safety standards.

777.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

**F.   Gross Negligence**

778.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

779.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

780.   Defendants owed a duty of care to Plaintiffs and their Insureds.

781.   In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and their Insureds.

782.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

783.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## ARKANSAS STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Arkansas Subclasses, against All Defendants)

784.   Class Plaintiffs, the Hyundai Arkansas Subclass and Kia Arkansas Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

785.   The Arkansas Subclasses are comprised of Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Arkansas due to the Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; Permanent General Assurance Company; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO Casualty Company; GEICO Choice Insurance Company; GEICO County Mutual Insurance Company; GEICO Secure Insurance Company; Nationwide Property & Casualty Insurance Company; Progressive Northwestern Insurance Company; Progressive Direct Insurance Company;  Garrison

Property & Casualty Insurance Company; United Services Automobile Association; USAA General Indemnity Company; and USAA Casualty Insurance Company, all of whom paid policy proceeds to their respective Insureds for losses in Arkansas pursuant to policies of insurance.

**A.      Breach of Implied Warranty (Ark. Code Ann. §§ 4-2-314 and 4- 2A-212)**

786.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

787.   Defendants were at all relevant times "merchants" with respect to motor vehicles under Ark. Code Ann. §§ 4-2-104(1) and 4-2A-103(3), and "seller[s]" of motor vehicles under Ark. Code Ann. §§ 4-2-103(1)(d) and 4-2A-103(3); and "lessors" of motor vehicles under Ark. Code Ann. § 4-2A-103(1)(p).

788.   In the alternative, if Defendants were not the sellers of the Vehicles to Plaintiffs' Insureds, then Plaintiffs' Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Plaintiffs' Insureds.

789.   Plaintiffs' Insureds who purchased Vehicles are "buyers" within the meaning of Ark. Code Ann. § 4-2-103(1)(a).

790.   Plaintiffs' Insureds who leased Vehicles are "lessees" within the meaning of Ark. Code Ann. § 4-2A-103(1)(n).

791.   Plaintiffs, upon making payments to their Insureds for damages and losses which they sustained, and which were covered under the insurance policies issued to them by the Plaintiffs, acquired the rights of their Insureds under policy provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of their Insureds and are authorized to pursue all claims and causes of action belonging to their Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by the Plaintiffs.

792.   The Vehicles are and were at all relevant times "goods" within the

1   meaning of Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

2        793.   A warranty that the Vehicles were in merchantable condition and fit for

3   the ordinary purpose for which vehicles are used is implied by law pursuant to Ark.

4   Code Ann. §§ 4-2-314, 4-2-315, 4-2A-212, and 4-2A-213.

5        794.   Defendants knew or had reason to know of the specific use for which the

6   Vehicles were purchased or leased.

7        795.   Defendants provided Plaintiffs' Insureds with an implied warranty that

8   the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes

9   for which they were sold.

10       796.   This implied warranty included, among other things, a warranty that the

11  Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe

12  and reliable for providing transportation, would not be vulnerable to an abnormally

13  high risk of theft, and complied with applicable federal and state laws and regulations,

14  including FMVSS 114.

15       797.   Defendants' warranties were designed and intended for the benefit of

16  Plaintiffs' Insureds as the ultimate consumers and users of the Vehicles.

17       798.   It is reasonably likely that Plaintiffs' Insureds relied on the existence and

18  length of the implied warranties in deciding whether to purchase or lease the Vehicles.

19       799.   However, the Vehicles were not fit for their ordinary purpose of

20  providing reasonably reliable and safe transportation at the time of sale or thereafter

21  because the Vehicles were defective and not in merchantable condition, and were not

22  reasonably reliable, safe, and secure transportation at the time of sale or thereafter

23  because, *inter alia*, the Vehicles were plagued by the Theft Friendly Defect, lacking

24  any anti-theft features or design elements to provide an adequate theft deterrent, or

25  sufficient to satisfy FMVSS 114, resulting in a severe and highly dangerous risk of

26  vehicle theft and causing the Vehicles to be prime targets to be used as

27  instrumentalities through which thieves engage in reckless driving or other criminal

28  activity.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

800.   Defendants' actions, as complained of herein, breached the implied warranty that the Vehicles were of merchantable quality and fit for their ordinary and intended use.

801.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs and Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

802.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Class Members may seek alternative remedies. Indeed, these breaches of warranties have denied the Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

803.   Plaintiffs and Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. With respect to the Vehicles already stolen and/or damaged, moreover, any such repair is far too late. As such, Plaintiffs and Plaintiffs' Insureds had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if

1 they presented their Insureds' Vehicles to them for repair.

2      804.   As a direct and proximate result of Defendants' breach of their implied
3 warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property
4 damage and the loss of use of the Vehicles, for which Defendants are liable.

5 **B.      Breach of Express Warranty (Ark. Code Ann. §§ 4-2-313 and 4-2A-210)**

6      805.   Plaintiffs incorporate by reference each preceding and succeeding
7 paragraph as though fully set forth at length herein.

8      806.   During the relevant time period described above, Plaintiffs' Insureds
9 purchased or leased Hyundai and Kia branded Vehicles from Defendants.

10      807.   In the alternative, if Defendants were not the sellers of the Vehicles to
11 Plaintiffs' Insureds, then Plaintiffs' Insureds were the intended third-party
12 beneficiaries of any and all sales contracts in which one or more Defendant sold
13 Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to
14 consumers, including Plaintiffs' Insureds. Defendants are therefore liable to Plaintiffs
15 under Ark. Code Ann. § 4-86-101.

16      808.   Plaintiffs, upon making payments to their Insureds for damages and
17 losses which they sustained, and which were covered under the insurance policies
18 issued to them by the Plaintiffs, acquired the rights of their Insureds under policy
19 provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of
20 their Insureds and are authorized to pursue all claims and causes of action belonging
21 to their Insureds against third parties such as the Defendants herein who are legally
22 liable for having caused the damages paid by the Plaintiffs.

23      809.   The Vehicles were at all relevant times "goods" within the meaning of
24 Ark. Code Ann. §§ 4-2-105(1) and 4-2A-103(1)(h).

25      810.   The Vehicles were manufactured by Defendants during the relevant time
26 period described above. Through the attachment of VIN plates, Defendants made an
27 express warranty that the Vehicles conform to all applicable U.S.A. federal motor
28 vehicle safety, bumper, and theft prevention standards in effect on the date of

manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to or at the point of sale for all Vehicles.

811. These statements that the Vehicles were safe, and compliant with applicable anti-theft standards, create express warranties under Arkansas law. The statements on the VIN plates as to the Vehicles' compliance with safety and anti-theft regulations are affirmations of fact and a promise to Plaintiffs' Insureds. Those statements amount to an express warranty under Ark. Code Ann. §§ 4-2-313 and 4-2A-210.

812. Defendants' express warranties as to the safety of the Vehicles, and the Vehicles' compliance with applicable anti-theft standards, were statements that any buyer would rely upon, and the Insureds relied upon, thus forming a basis for the bargain when purchasing a Vehicle.

813. After Plaintiffs' Insureds purchased or leased the Hyundai and Kia branded Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

814. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs Insureds' may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Plaintiffs' Insureds the benefit of Plaintiffs' Insureds' bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

815. After Plaintiffs' Insureds purchased or leased the Hyundai and Kia branded Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

816. Plaintiffs provided notice to Defendants of the Thief Friendly Design on

March 09, 2023, and notice of the accompanying breach of Defendants warranties on the same date. Regardless, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breaches, because notice would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Theft Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs and Plaintiffs' Insureds had no reason to believe that Defendants would have adequately repaired the Theft Friendly Design if they presented their Vehicles to Defendants for repair. Any repair, moreover, would have been useless and ineffective for all Insureds who have already experienced the unfortunate misery of their cars being stolen due to the Thief Friendly Design.

817. As a direct and proximate result of Defendants' breaches of their express warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, for which the Defendants are liable for damages in an amount to be proven at trial.

**C.     Violation of the Arkansas Deceptive Trade Practices Act (Ark. Code Ann. § 4-88-101, et seq.)**

818. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

819. Defendants and Plaintiffs are "persons" within the meaning of Ark. Code Ann. § 4-88-102(5).

820. The Vehicles are "goods" within the meaning of Ark. Code Ann. § 4-88-102(4).

821. The Arkansas Deceptive Trade Practices Act ("Arkansas DTPA") makes it unlawful to engage in "[d]eceptive and unconscionable trade practices." Ark. Code Ann. § 4-88-107(a).

822. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Arkansas DTPA by knowingly and

intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

823. Defendants had an ongoing duty to the Plaintiffs and Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Arkansas DTPA in the course of their business. Specifically, Defendants owed Plaintiffs and Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

824. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs or Plaintiffs' Insureds;

825. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs and Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

826. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles;

827. Defendants made false and incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Class Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

828. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of

which was intended to induce consumers to purchase the Vehicles.

829.   By misrepresenting the Vehicles as safe, reliable, and compliant with relevant standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ark. Code Ann. § 4-88-107(a):

      a.   Causing the likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

      b.   Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

      c.   Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

      d.   Advertising the Vehicles with the intent not to sell or lease them as advertised; and

      e.   Engaging in any other unconscionable, false, or deceptive act or practice in business, commerce, or trade.

*See* Ark. Code Ann. § 4-88-107(a)(1), (3), and (10).

830.   Defendants intended for Plaintiffs' and Plaintiff's Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

831.   Defendants' unfair or acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs and Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of the Vehicles, the true value of the Vehicles.

832.   Defendants' misrepresentations, omissions, and concealment of material

facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs and Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs and Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

833.   Plaintiffs and Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs and Plaintiffs' Insureds did not, and could not, unravel Defendants'' deception on their own.

834.   Had they known the truth about the Thief Friendly Design, Plaintiffs and Plaintiffs' Insureds would not have purchased or leased the Vehicles.

835.   Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

836.   Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

837.   Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the Arkansas DTPA.

**D.     Fraud by Omission and Concealment**

838.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

839.   Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs and Plaintiffs' Insureds.

840.   Having been aware of the Thief Friendly Design and having known that Plaintiffs and Plaintiffs' Insureds could not have reasonably been expected to know of that flaw, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs and their Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs and Plaintiffs' Insureds;

b.   Given the technical nature of the flaws hidden within the Thief Friendly Design, Plaintiffs and their Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover those flaws on their own;

c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' and their decisions to buy or lease the Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

841.   In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs and their Insureds in connection with the sale of the Vehicles.

842.   For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle, particularly given that the Vehicles did not comply with federal and industry safety standards, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs and Plaintiffs' Insureds.

843.   Defendants intended for the Plaintiffs and Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

844.   The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts that Defendants had concealed or failed to disclose. Plaintiffs and their Insureds did not, and could not, unravel Defendants' deception on their own.

845.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and their Insureds.

846.   If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs and their Insureds would have seen such a disclosure.

847.   Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs and Plaintiffs' Insureds to purchase a Vehicle that they otherwise would not have purchased.

848.   Had Plaintiffs and Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles, and could have taken precautions to prevent the theft of the Vehicles.

849.   By concealing information about the Thief Friendly Design, Defendants

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

prevented the Insureds from realizing their Vehicles were uniquely susceptible to theft in a matter of seconds. Through their omissions and concealment with respect to the Thief Friendly Design, Defendants intended to induce, and did induce, Plaintiffs' Insureds to purchase a Vehicle that they otherwise would not have purchased, a Vehicle that was highly susceptible to theft, and that was stolen and damaged due to the Thief Friendly Design.

850. Accordingly, Defendants are liable to Plaintiffs and their Insureds for their damages in an amount to be proven at trial.

851. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and their Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**E.    Negligence**

852. Plaintiffs incorporate by reference each preceding and succeeding paragraph as if fully set forth at length herein.

853. Defendants manufactured, distributed and sold the Vehicles.

854. Defendants owed a duty of care to the Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

855. Defendants violated applicable industry standards, and federal regulations, and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

856. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their

products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

857.   The Defendants' violation of their duties under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

858.   As a result of Defendants' violations of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, together with other damages for which the Defendants are liable.

## F.   Constructive Fraud Based on Statements Recklessly Made and Negligent Misrepresentation

859.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

860.   Defendants breached their legal duty to the Insureds by providing false information to the Insureds with the intent that the Insureds rely upon that information.

861.   Defendants are liable for constructive fraud for, at minimum, representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

862.   Defendants failed to exercise reasonable care in obtaining and communicating accurate information regarding the Vehicles, and in particular the Thief Friendly Design of the Vehicles.  Defendants knowingly installed substandard theft prevention equipment, failed to disclose that fact and actively concealed the true

security characteristics of the Vehicles. Instead, Defendants knowingly marketed their vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to FMVSS 114.

863. The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards. Compliance with federal anti-theft and safety standards are a minimum requirement that consumers, including the Insureds, would view as vital to the purchase of any vehicle.

864. The Defendants failed to use reasonable care or competence in obtaining or communicating the Thief Friendly Design and went as far as to affix each Vehicle with a vin plate that not only omitted information but misrepresented the truth.

865. As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiffs and/or Alaska Subclass members have suffered injury-in-fact and/or actual damage.

866. As a direct and proximate result of the Defendants' negligent misrepresentations, Plaintiffs and/or Alaska Subclass members have been damaged in an amount to be determined at trial.

## G.    Gross Negligence

867. Plaintiffs and Subclass Members for each Arizona Subclass reallege and incorporate by reference all preceding allegations as though fully set forth herein.

868. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

869. Defendants owed a duty of care to Plaintiffs and their Insureds.

870. In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants failed to use even slight care, and instead acted with reckless indifference to the rights and/or safety of Plaintiffs' Insureds. As detailed in the allegations above, should have known that the Vehicles were vulnerable to extraordinarily high rates of theft by even casual car thieves due to the Thief Friendly Design. Defendants knew, moreover, that the implementation of an

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

immobilizer was a safe, cheap and easy means to meet the applicable standards.

871.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

872.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## COLORADO STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Colorado Subclasses, against All Defendants)

873.   Class Plaintiffs, the Hyundai Colorado Subclass and Kia Colorado Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

874.   The Colorado Subclasses are comprised of named and unnamed Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Colorado due to the Defendants' Theft Friendly Design in Kia and Hyundai Vehicles, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; GEICO Casualty Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Government Employees Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; Nationwide

Property & Casualty Insurance Company; Nationwide Mutual Insurance Company; New Jersey Manufacturers Insurance Company; AMCO Insurance Company; Nationwide General Insurance Company; Progressive Direct Insurance Company; Progressive Preferred Insurance Company; Progressive Specialty Insurance Company; Root Insurance Company; State Auto Property & Casualty Insurance Company; Garrison Property & Casualty Insurance Company; United Services Automobile Association; USAA Casualty Insurance Company; and USAA General Indemnity Company, all whom paid policy proceeds to their respective Insureds for losses in Colorado pursuant to policies of insurance.

## A.      Breach of Implied Warranty (C.R.S. § 4-2-314)

875.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

876.   Defendants sold and leased Hyundai and Kia branded Vehicles during the relevant time period described above.  In addition, Defendants designed and built the Hyundai and Kia branded Vehicles that were later sold or leased directly to consumers or through car dealerships.

877.   Accordingly, Defendants are "merchants" under C.R.S. § 4-2-104.  Section 4-2-104 requires a merchant "deal[] in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction, or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill."

878.   The Insureds are persons who reasonably expected to use, consume, or be affected by the Vehicles.  They either purchased or leased Defendants' Vehicles directly from Defendants or through car dealerships.

879.   The Hyundai and Kia branded Vehicles were not of merchantable quality at the time of sale.  The Vehicles possessed a design flaw that resulted in the Vehicles being theft prone.  Merchantable vehicles should have complied with all applicable

safety and anti-theft standards, which the Vehicles did not resulting in the design flaw.

880.   In the manner described above, thieves took advantage of the flaw by stealing and damaging the Vehicles.  Consequently, Plaintiffs suffered significant monetary losses resulting from Insureds' Hyundai and Kia Vehicles being stolen and damaged through the exploitation of the design failure.

881.   Although the design flaw was already known to Defendants, Plaintiffs discovered it within a reasonable amount of time and notified Defendants of the flaw along with its Insureds and national media.

**B.     Breach of Express Warranty (C.R.S. §§ 4-2-714 and 4-2-715)**

882.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

883.   Defendants sold and leased Hyundai and Kia branded Vehicles during the relevant time period described above.  In addition, Defendants designed and built the Hyundai and Kia branded Vehicles that were later sold or leased directly to consumers or through car dealerships.

884.   Plaintiffs' Insureds are persons who reasonably expected to use, consume, or be affected by the Vehicles.  They are person that either purchased or leased Defendants' Vehicles directly from Defendants or through car dealerships.

885.   The Vehicles that failed to conform to Defendants' description of the Vehicles as warranted. Affixed to those Vehicles were VIN plates expressly stating that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided in Paragraph 55 of this Complaint.

886.   The statements on the VIN plates as to the Vehicles' compliance with safety and anti-theft are affirmations of fact and a promise to Plaintiffs' Insureds.

887.   Defendants breached their warranty by failing to satisfy applicable safety and anti-theft standards.  The Vehicles possessed a design flaw that resulted in them

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1   being susceptible to theft.

2      888.   As described above, thieves took advantage of the design flaw.

3   Defendant incurred, as result, significant monetary damages related to Insureds'

4   Hyundai and Kia branded Vehicles being stolen and damaged through exploitation of

5   the design flaw.

6      889.   Although the design flaw was already known to Defendants, Plaintiffs

7   discovered it within a reasonable amount of time and notified Defendants of the flaw

8   along with its Insureds and national media.

9   **C.   Violation of the Colorado Consumer Protection Act (C.R.S. § 6-1-113)**

10     890.   Plaintiffs reallege and incorporate by reference all preceding allegations

11  as though fully set forth herein.

12     891.   Defendants engaged in a deceptive trade practice by marketing and

13  affirmatively stating that the Hyundai and Kia branded Vehicles conformed to all

14  applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention

15  standards in effect on the date of manufacture.  However, the Vehicles failed to

16  conform with those standards.  The Vehicles possessed a design flaw causing the

17  Vehicles to be theft prone; a flaw that Defendants knew about.

18     892.   Defendants made the affirmative statements in VIN plates, which were

19  affixed the Vehicles. An example of a VIN plate that is affixed to a 2015 Kia Optima

20  Vehicle is provided in Paragraph 55 of this Complaint.

21     893.   Defendants' inaccurate statement about compliance with safety and anti-

22  theft standards were made within ordinary course of Defendants' business. Indeed,

23  Defendants design, build, distribute, market, sell, and lease the Hyundai and Kia

24  branded Vehicles directly to the public or through car dealerships. Consequently,

25  Defendants had completely knowledge and control over whether their Vehicles

26  complied with safety and anti-theft standards.

27     894.   Plaintiffs' Insureds were actual consumers of Defendants' Vehicles. The

28  Insureds purchased or leased the Vehicles directly from Defendants or through a car

dealership by Defendants' design. Accordingly, Plaintiffs are naturally and directly harmed when their Insureds' Hyundai and Kia branded Vehicles are stolen as a consequence of Defendants' deceptive trade practices.

895.   Defendants' failure to conform with safety and anti-theft standards, like they stated in the VIN Plates, caused Plaintiffs significant monetary losses associated with Insureds' vehicles stolen and damaged through the exploitation of the design flaw.

896.   Defendants' deceptive trade practice – stating that their Vehicles were safety and anti-theft standard compliant when Vehicles were not – significantly impacted the public as actual or potential consumers of Defendants'.

**D.     Fraud Based on Concealment or Omission**

897.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

898.   Defendants expressly represented to Plaintiffs' Insureds that the Vehicles conformed to applicable safety and anti-theft standards. Those express representations are affixed to VIN Plates, which are attached to each of the Vehicles. An example of one such VIN Plate is included in Paragraph 55. But, in reality, the Vehicles did not conform with those standards. Instead, the Vehicles contained an Theft Friendly Design that was exploited.

899.   Defendants were aware of the Theft Friendly Design when they marketed, sold, and leased the Vehicles to Plaintiffs' Insureds.  The Vehicles were designed, built, marketed, sold, and leased by Defendants directly and indirectly to consumers, including Plaintiffs' Insureds. In other words, no other parties could have had more access or information regarding the Vehicles that the consumers.

900.   Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

901.   Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

902.   Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

903.   Had Plaintiffs' Insureds known of the Theft Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

904.   As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Theft Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

905.   Moreover, Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

906.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

907.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

908.   Defendants owed a duty of care to Plaintiffs and their Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

909.   In connection with Defendants' manufacture, distribution, sale, and/or

leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and their Insureds.

910.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

911.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## F.     Gross Negligence

912.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

913.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

914.   Defendants owed a duty of care to Plaintiffs and their Insureds.

915.   In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and their Insureds.

916.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

917.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## CONNECTICUT STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Connecticut Subclasses, against All Defendants)

918.   Class Plaintiffs, the Hyundai Connecticut Subclass and Kia Connecticut

Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

919.   The Connecticut Subclasses are comprised of named and unnamed Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Connecticut due to the Defendants' Thief Friendly Design including, but not limited to, the following named Class Plaintiffs: Allstate County Mutual Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; Old Dominion Insurance Company; Permanent General Assurance Corporation; Erie Insurance Company of New York; GEICO Indemnity Company; GEICO General Insurance Company; GEICO County Mutual Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; New Jersey Manufacturers Insurance Company; Nationwide General Insurance Company of America; Nationwide Mutual Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; Root Insurance Company; State Auto Property & Casualty Insurance Company; Garrison Property & Casualty Insurance Company; United Services Automobile Association; USAA Casualty Insurance Company; and USAA General Indemnity Company, all of whom paid policy proceeds to their respective Insureds for losses in Connecticut pursuant to policies of insurance

## A.   Breach of Implied Warranty of Merchantability (Conn. Gen. Stat. Ann. §§ 42a-2-314 and 42a-2a-504)

920.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

921.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to

Conn. Gen. Stat. Ann. §§ 42A-2-314 and 42a-2a-504.

922.  Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Conn. Gen. Stat. Ann. §§ 42a-2-104(1) and 42(a)-2-103(2), and a "seller" of motor vehicles under § 42a-2-103(1)(c).

923.  With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Conn. Gen. Stat. Ann. § 42a-2A-102(a)(23).

924.  Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in Connecticut and are therefore "buyers" within the meaning of Conn. Gen. Stat. Ann. §42a-2-103(1)(a).

925.  Plaintiffs and Subclass Members stand in the shoes of their Insureds, who leased Vehicles in Connecticut and are therefore "lessees" within the meaning of Conn. Gen. Stat. Ann. § 42a-2A-102(a)(21).

926.  The Vehicles are and were at all relevant times "goods" within the meaning of Conn. Gen. Stat. Ann. §§ 42a-2-105(1) and 42a-2-103(2).

927.  Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

928.  However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles contained the Thief Friendly

Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

929.   Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of the sale.

930.   Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever-present risk of them being stolen.  Any remedy that has been proposed or offered to date has proven to be inadequate, and at a minimum, does not compensate Plaintiffs for the losses incurred due to the Thief Friendly Design.

931.   On March 9, 2023, Plaintiffs and the Subclass Members provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental

1  investigations, numerous complaints filed against them, internet videos, news reports,
2  and the many individual notice letters sent by Plaintiffs within a reasonable amount
3  of time after the allegations of Class Vehicle defects became public.

4  932.   Alternatively, Plaintiffs and the Subclass Members were excused from
5  providing Defendants with notice and an opportunity to cure the breach, because it
6  would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have
7  long known that the Vehicles contained the Thief Friendly Design; yet have failed to
8  cure, remedy, or repair the breach. As such, neither Plaintiffs or their Insureds had
9  any reason to believe that Defendants would have adequately repaired the Thief
10 Friendly Design if they presented their Vehicles to them for repair.

11 933.   As a direct and proximate result of Defendants' breach of the implied
12 warranties, the Insureds' vehicles were and are defective, and the Thief Friendly
13 Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount
14 to be proven at trial.

15 **B.     Breach of Express Warranty (Conn. Gen. Stat. Ann. § 42a-2-313)**

16 934.   Plaintiffs reallege and incorporate by reference all preceding allegations
17 as though fully set forth herein.

18 935.   During the relevant time period described above, Plaintiffs' Insureds
19 purchased or leased Vehicles.

20 936.   These Vehicles were manufactured by Defendants during the relevant
21 time period described above. Through the attachment of VIN plates, Defendants made
22 an express warranty that the Vehicles conform to all applicable U.S.A. federal motor
23 vehicle safety, bumper, and theft prevention standards in effect on the date of
24 manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima
25 Vehicle is provided above. On information and belief, similar written warranties were
26 made prior to, or at the point of sale for all Vehicles.

27 937.   After Plaintiffs' Insureds purchased or leased the Vehicles, they used
28 them in accordance with the normal operation of the Vehicles and did not mishandle

or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

938.   The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

939.   Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants'

## C.   Violation of the Connecticut Unlawful Trade Practices Act (Conn. Gen. Stat. § 42-100a, *et seq.*)

940.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

941.   Defendants, Plaintiffs, Plaintiffs' Insureds, and Subclass Members are "persons" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(3).

942.   Defendants were and are engaged in the "trade" or "commerce" within the meaning of Conn. Gen. Stat. Ann. § 42-110a(4).

943.   The Connecticut Unfair Trade Practices Act ("Connecticut UTPA") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." Conn. Gen. Stat. Ann. § 42-110b(a).

944.   In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Connecticut UPTA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief

1  Friendly Design, as detailed above.

2      945.   Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from

3  unfair or deceptive practices under the Connecticut UTPA in the course of their

4  business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the

5  material facts concerning the Thief Friendly Design in the Vehicles because, as

6  detailed above:

7              a.   Defendants expressly warranted that the Vehicles conformed with

8                  applicable anti-theft standards when that was not true due to the

9                  Thief Friendly Design of the Vehicles;

10             b.   Defendants had exclusive access to and far superior knowledge

11                 about facts regarding the Thief Friendly Design and Defendants

12                 knew these facts were not known to or reasonably discoverable by

13                 Plaintiffs' Insureds;

14             c.   Given the hidden and technical nature of the Thief Friendly

15                 Design, Plaintiffs' Insureds lack the sophisticated expertise in

16                 vehicle components that would be necessary to discover the Thief

17                 Friendly Design on their own;

18             d.   Defendants knew that the Thief Friendly Design gave rise to safety

19                 concerns for the Insureds who use the Vehicles, and the Thief

20                 Friendly Design would have been a material fact to the Insureds'

21                 decisions to buy or lease Vehicles; and

22             e.   Defendants made incomplete representations about the safety and

23                 reliability of the Vehicles while purposefully withholding material

24                 facts about a known safety defect. In uniform advertising and

25                 materials provided with each Vehicle, Defendants intentionally

26                 misrepresented, concealed, suppressed, and failed to disclose to

27                 the Insureds that the Vehicles contained the Thief Friendly

28                 Design. Because they volunteered to provide information about

1          the Vehicles that they marketed and offered for sale and lease to

2          the Insureds, Defendants had the duty to disclose the whole truth.

3      946.   As detailed above, the information concerning the Thief Friendly Design

4   was known to Defendants at the time of advertising and selling the Vehicles, all of

5   which was intended to induce Insureds to purchase the Vehicles.

6      947.   By misrepresenting the Vehicles as safe, reliable, and compliant with

7   applicable anti-theft standards, and by failing to disclose and actively concealing the

8   dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair

9   methods of competition and unfair or deceptive acts or practices in the conduct of

10  trade or commerce, as prohibited by Conn. Gen. Stat. Ann. § 42-110b(a).

11     948.   Defendants intended for Plaintiffs' Insureds to rely on them to provide

12  adequately designed Vehicles, and to honestly and accurately reveal the safety

13  hazards described above.

14     949.   Defendants' unfair or deceptive acts or practices were designed to

15  mislead and had a tendency or capacity to mislead and create a false impression in

16  consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles

17  were not affected by the Thief Friendly Design. Indeed, those misrepresentations,

18  concealments, omissions, and suppressions of material fact did in fact deceive

19  reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability,

20  and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

21     950.   Defendants' misrepresentations, omissions, and concealment of material

22  facts regarding the Thief Friendly Design and true characteristics of the Vehicles were

23  material to the decisions of Plaintiffs' Insureds to purchase and lease those Vehicles,

24  as    Defendants    intended.    Plaintiffs'    Insureds    were    exposed    to    those

25  misrepresentations, concealments, omissions, and suppressions of material facts, and

26  relied on Defendants' misrepresentations that the Vehicles were safe, compliant with

27  applicable anti-theft standards, and reliable in deciding to purchase, insure, and

28  operate the Vehicles.

951.   The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

952.   Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them, and if purchased, could have taken precautions against theft.

953.   Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

954.   Defendants' violations present a continuing risk to Plaintiffs, their Insureds, as well as the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

955.   Pursuant to Conn. Gen. Stat. Ann. § 42-110g, Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Connecticut UTPA.

**D.     Fraud by Misstatements and Omissions**

956.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

957.   Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

958.   Having been aware of the Thief Friendly within the Vehicles while making affirmative false statements as to the Vehicles compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone of the Thief

Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.   Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

b.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c.   Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

d.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.   Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

959.   In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

960.   For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle, particularly the fact that the Vehicles did not comply with federal and industry safety standards, and because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds.

961.   Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

962.   The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

963.   Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

964.   If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

965.   Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

966.   Had Plaintiffs' Insureds known of the Thief Friendly Design, they would

1   not have purchased the Vehicles or would have been able to take steps to prevent or

2   deter theft of the Vehicles on their own.

3        967.   As a direct and proximate result of Defendants' omissions, the Insureds

4   Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the

5   theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs

6   for their damages in an amount to be proven at trial.

7        968.   Defendants' acts were done maliciously, oppressively, deliberately, with

8   intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights

9   and well-being; and to enrich themselves. Defendants' misconduct warrants an

10  assessment of punitive damages, as permitted by law, in an amount sufficient to deter

11  such conduct in the future, which amount shall be determined according to proof at

12  trial.

13  **E.   Negligence**

14       969.   Plaintiffs incorporate by reference each preceding and succeeding

15  paragraph as though fully set forth at length herein.

16       970.   Defendants manufactured, distributed, sold, and/or leased the Vehicles.

17       971.   Defendants owed a duty of care to Plaintiffs and their Insureds. That duty

18  of care included, at a minimum, the manufacture and sale of vehicles that fully

19  complied with all federal and industry safety and anti-theft standards; and failing that,

20  Defendants owed a duty to disclose the fact that the Vehicles were uniquely

21  susceptible to theft by casual car thieves and miscreants in a matter of seconds.

22       972.   In connection with Defendants' manufacture, distribution, sale, and/or

23  leasing of the Vehicles, Defendants acted with reckless indifference to the rights

24  and/or safety of Plaintiffs and Their Insureds.

25       973.   The National Highway Traffic Safety Administration has a self-

26  certification system of compliance where vehicle manufacturers certify that their

27  products meet applicable standards. Defendants had a duty to the general public to

28  ensure that all vehicles offered for sale were compliant to all applicable federal

standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

974.   Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements and relevant industry standards to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

975.   As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

**F.    Negligent Misrepresentation**

976.   Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

977.   Defendants breached their legal duty to the Insureds by providing false information to the Insureds that Defendants knew or should have known was false.

978.   Defendants are liable for, at minimum, representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

979.   Defendants knew that they were not providing accurate information, or at the very least failed to exercise reasonable care in obtaining and communicating accurate information regarding the Vehicles, and in particular the Thief Friendly Design of the Vehicles.

980.   Any consumer would consider it important to know that the Vehicle they were contemplating purchasing failed to comply with applicable safety and anti-theft standards, including federal regulations.   Yet Defendants knowingly misled

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

consumers as to compliance with those standards as part of an effort to induce the Insureds into purchasing the Vehicles.  Thus, Defendants knew their inaccurate and incomplete representations would be relied upon by the Insureds.

981.   Defendants knowingly installed substandard theft prevention equipment, failed to disclose that fact and actively concealed the true security characteristics of the Vehicles. Instead, Defendants knowingly marketed their vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to FMVSS 114.

982.   The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards. Compliance with federal anti-theft and safety standards are a minimum requirement that consumers, including the Insureds, would view as vital to the purchase of any vehicle.

983.   The Defendants failed to use reasonable care or competence in obtaining or communicating the Thief Friendly Design and went as far as to affix each Vehicle with a vin plate that not only omitted information but misrepresented the truth.

984.   As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiffs and/or Connecticut Subclass members have suffered injury-in-fact and/or actual damage.

985.   As a direct and proximate result of the Defendants' negligent misrepresentations, Plaintiffs and/or Connecticut Subclass members have been damaged in an amount to be determined at trial.

## <u>DELAWARE STATE LAW CLAIMS FOR RELIEF</u>

### (Alleged by  Plaintiffs, and Members of Delaware Subclasses, against All Defendants)

986.   Class Plaintiffs, the Hyundai Delaware Subclass and Kia Delaware Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

987.   The Delaware subclasses are comprised of Members of both nationwide classes with claims stemming from vehicle losses (from Kia and Hyundai Vehicles) in Delaware due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Property & Casualty Insurance Company; Permanent General Insurance Corporation; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Nationwide Property & Casualty Insurance Company; Depositors Insurance Company; Nationwide Mutual Insurance Company; Progressive Northern Insurance Company; Progressive Direct Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds for losses in Delaware pursuant to policies of insurance.

**A.**     **Breach of Implied Warranty (6 Del. Code §§ 2-314, 2-315, 2A-212 and 2A-213)**

988.   Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

989.   Defendants were, at all relevant times: the manufacturers, distributors, and warrantors of the Vehicles; "merchants" of motor vehicles under 6 Del. C. §§ 2-104(1) and 2A-103(3); "sellers" of motor vehicles under § 2-103(1)(d); and "lessors" of motor vehicles under 6 Del. C. § 2A-103(1)(p).

990.   In the alternative, if Defendants were not the sellers of the Vehicles to Plaintiffs' Insureds, then Plaintiffs' Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold

Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Plaintiffs' Insureds.

991.   Plaintiffs' Insureds who purchased Vehicles are "buyers" within the meaning of Cal. Com. Code § 2103(1)(a).

992.   Plaintiffs' Insureds who leased Vehicles are "lessees" within the meaning of Cal. Com. Code § 10103(a)(14).

993.   Plaintiffs, upon making payments to their Insureds for damages and losses which they sustained, and which were covered under the insurance policies issued to them by the Plaintiffs, acquired the rights of their Insureds under policy provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of their Insureds and are authorized to pursue all claims and causes of action belonging to their Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by the Plaintiffs.

994.   The Vehicles were at all relevant times "goods" within the meaning of 6 Del. C. §§ 2-105(1) and 2A-103(1)(h).

995.   A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to 6 Del. C. §§ 2-314, 2-315, 2A-212, and 2A-213.

996.   Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

997.   Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold.

998.   This implied warranty included, among other things, a warranty that the Vehicles manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state law and regulations, including FMVSS 114.

999.   Defendants' warranties were designed and intended for the benefit of Plaintiffs' Insureds as the ultimate consumers and users of the Vehicles.

1000. It is reasonably likely that Plaintiffs' Insureds relied on the existence and length of the implied warranties in deciding whether to purchase or lease the Vehicles.

1001. However, the Vehicles were not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Vehicles were defective and not in merchantable condition, and were not reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles were plagued by the Theft Friendly Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a severe and highly dangerous risk of vehicle theft and causing the Vehicles to be prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1002. Defendants' actions, as complained of herein, breached the implied warranty that the Vehicles were of merchantable quality and fit for their ordinary and intended use.

1003. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Theft Friendly Defect. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Theft Friendly Defect at the time of sale.

1004. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs Insureds' may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Plaintiffs' Insureds the benefit of Plaintiffs' Insureds' bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1005. Plaintiffs and Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breaches, because notice would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Theft Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs and Plaintiffs' Insureds had no reason to believe that Defendants would have adequately repaired the Theft Friendly Design if they presented their Vehicles to Defendants for repair.

1006. As a direct and proximate result of Defendants' breaches of their implied warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, for which the Defendants are liable.

**B.     Breach of Express Warranty (6 Del. Code §§ 2-313 and 2A-210)**

1007. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1008. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1009. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were

1   made prior to, or at the point of sale for all Vehicles.

2   1010. Defendants' statements about the Vehicles' compliance with all

3   applicable safety and anti-theft standards were affirmative and factual by their nature.

4   Accordingly, Defendants' statements became the basis for the bargains with the

5   Insureds to buy or lease the Vehicles.

6   1011. Vehicles did not comply with all applicable safety and anti-theft

7   standards as Defendants stated. In actuality, the Vehicles had a design defect that

8   caused the Vehicles to be so easy to steal, that the Vehicles could be stolen in a matter

9   of seconds by teenagers out for a joy ride.

10   1012. As described above, thieves took advantage of the design flaw. Plaintiffs

11   incurred, as a result, significant monetary damages related to the Insureds' Vehicles

12   being stolen and/or damaged through exploitation of the design flaw.

13   **C.**    **Violation of the Delaware Consumer Fraud Act (6 Del. Code § 2511, *et***

14   ***seq.*)**

15   1013. Plaintiffs incorporate by reference and reallege each preceding and

16   succeeding paragraph as though fully set forth at length herein.

17   1014. Defendants and Plaintiffs are "persons" within the meaning of 6 Del.

18   Code § 2511(7).

19   1015. The Delaware Consumer Fraud Act ("Delaware CFA") makes unlawful

20   the "act, use or employment by any person of any deception, fraud, false pretense,

21   false promise, misrepresentation, or the concealment, suppression, or omission of any

22   material fact with intent that others rely upon such concealment, suppression or

23   omission, in connection with the sale, lease or advertisement of any merchandise,

24   whether or not any person has in fact been misled, deceived or damaged thereby." 6

25   Del. Code § 2513(a).

26   1016. In the course of their business, Defendants, through their agents,

27   employees, and/or subsidiaries, violated the Delaware CFA by knowingly and

28   intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

facts regarding the quality, reliability, and safety of the Vehicles and the Theft
Friendly Defect, as detailed above.

1017. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or
deceptive practices under the CFA in the course of their business. Specifically,
Defendants owed the Plaintiffs a duty to disclose all the material facts concerning the
Theft Friendly Defect in the Vehicles because, as detailed above:

        a.     Defendants had exclusive access to and far superior knowledge
about facts regarding the Theft Friendly Defect and Defendants
knew these facts were not known to or reasonably discoverable by
Plaintiffs;

        b.     Given the Theft Friendly Defect's hidden and technical nature,
Plaintiffs lack the sophisticated expertise in vehicle components
that would be necessary to discover the Theft Friendly Defect on
their own;

        c.     Defendants knew that the Theft Friendly Defect gave rise to safety
concerns for the consumers who use the Vehicles, and the Theft
Friendly Defect would have been a material fact to the Plaintiffs'
decisions to buy or lease Vehicles; and

        d.     Defendants made incomplete representations about the safety and
reliability of the Vehicles while purposefully withholding material
facts about a known safety defect. In uniform advertising and
materials provided with each Vehicle, HMA, and KA intentionally
concealed, suppressed, and failed to disclose to the consumers that
the Vehicles contained the Theft Friendly Defect. Because they
volunteered to provide information about the Vehicles that they
marketed and offered for sale and lease to consumers, HMA and
KA had the duty to disclose the whole truth.

1018. As detailed above, the information concerning the Theft Friendly Defect

1    was known to Defendants at the time of advertising and selling the Vehicles, all of

2    which was intended to induce consumers to purchase the Vehicles.

3        1019. Defendants engaged in one or more of the following unlawful acts or

4    practices prohibited by 6 Del. Code § 2513(a): using or employing deception, fraud,

5    false pretense, false promise, misrepresentation, unfair practice, or the concealment,

6    suppression, or omission of a material fact with intent that others rely upon such

7    concealment, suppression or omission, in connection with the advertisement and

8    sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived

9    or damaged thereby.

10       1020. Defendants intended for Plaintiffs to rely on them to provide adequately

11   designed Vehicles, and to honestly and accurately reveal the safety hazards described

12   above.

13       1021. Defendants' unfair or deceptive acts or practices were designed to

14   mislead and had a tendency or capacity to mislead and create a false impression in

15   consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles

16   were not affected by the Theft Friendly Defect. Indeed, those misrepresentations,

17   concealments, omissions, and suppressions of material facts did in fact deceive

18   reasonable consumers, including Plaintiffs, about the true safety and reliability of

19   Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

20       1022. Defendants' misrepresentations, omissions, and concealment of material

21   facts regarding the Theft Friendly Defect and true characteristics of the Vehicles were

22   material to the decisions of Plaintiffs to purchase and lease those vehicles, as

23   Defendants intended. Plaintiffs were exposed to those misrepresentations,

24   concealments, omissions, and suppressions of material facts, and relied on

25   Defendants' misrepresentations that the Vehicles were safe and reliable in deciding

26   to purchase and lease Vehicles.

27       1023. Plaintiffs' reliance was reasonable, as they had no way of discerning

28   Defendants' representations were false and misleading, or otherwise learning that the

Vehicles contained the Theft Friendly Defect, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1024. Had they known the truth about the Theft Friendly Defect, Plaintiffs would not have purchased or leased the Vehicles, or would have paid significantly less for them.

1025. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1026. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft Friendly Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

1027. Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the Delaware CFA and DTPA (6 Del. Code §§ 2525).

**D.     Violation of the Delaware Deceptive Trade Practices Act (6 Del. Code § 2531, et seq.)**

1028. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1029. Defendants and Plaintiffs are "persons" within the meaning of 6 Del. Code § 2531(5).

1030. The Delaware Deceptive Trade Practices Act ("Delaware DTPA") makes it unlawful to engage in a deceptive trade practice in the course of a business. 6 Del. Code § 2532(a).

1031. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Delaware DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

facts regarding the quality, reliability, and safety of the Vehicles and the Theft Friendly Defect, as detailed above.

1032. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices under the DTPA in the course of their business. Specifically, Defendants owed the Plaintiffs a duty to disclose all the material facts concerning the Theft Friendly Defect in the Vehicles because, as detailed above:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Friendly Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;

b.  Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Friendly Defect on their own;

c.  Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1033. As detailed above, the information concerning the Theft Friendly Defect

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1    was known to Defendants at the time of advertising and selling the Vehicles, all of

2    which was intended to induce consumers to purchase the Vehicles.

3        1034. By misrepresenting the Vehicles as safe and reliable and free from

4    defects, and by failing to disclose and actively concealing the dangers and risk posed

5    by the Theft Friendly Defect, Defendants also engaged in one or more of the following

6    deceptive trade practices enumerated by the Delaware Deceptive Trade Practices Act

7    at 6 Del. Code § 2532:

8            a.    Causing likelihood of confusion or of misunderstanding as to the

9                  approval or certification of the Vehicles;

10           b.    Representing that the Vehicles have approval, characteristics,

11                 uses, or benefits that they do not have;

12           c.    Representing that the Vehicles are of a particular standard, quality,

13                 and grade when they are not;

14           d.    Advertising the Vehicles with the intent not to sell or lease them

15                 as advertised; and/or

16           e.    Engaging in any other conduct which created a likelihood of

17                 confusion or of misunderstanding.

18   6 Del. Code § 2532 (2), (5), (7), (9), and (12).

19       1035. Defendants intended for Plaintiffs to rely on them to provide adequately

20   designed Vehicles, and to honestly and accurately reveal the safety hazards described

21   above.

22       1036. Defendants' unfair or deceptive acts or practices were designed to

23   mislead and had a tendency or capacity to mislead and create a false impression in

24   consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles

25   were not affected by the Theft Friendly Defect. Indeed, those misrepresentations,

26   concealments, omissions, and suppressions of material facts did in fact deceive

27   reasonable consumers, including Plaintiffs, about the true safety and reliability of

28   Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1037. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Theft Friendly Defect and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1038. Plaintiffs' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Theft Friendly Defect, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1039. Had they known the truth about the Theft Friendly Defect, Plaintiffs would not have purchased or leased the Vehicles, or would have paid significantly less for them.

1040. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1041. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft Friendly Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

1042. Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the Delaware CFA and DTPA (6 Del. Code § 2533).

**E.     Fraud by Omission and Concealment**

1043. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1044. Defendants were aware of the Theft Friendly Defect when they marketed and sold the Vehicles to Plaintiffs.

1045. Having been aware of the Theft Friendly Defect, and having known that Plaintiffs could not have reasonably been expected to know of the Theft Friendly Defect, Defendants had a duty to disclose the Theft Friendly Defect to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft Friendly Defect because:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Friendly Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;

b. Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Friendly Defect on their own;

c. Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

1046. In breach of their duties, Defendants failed to disclose the Theft Friendly Defect to the Insureds in connection with the sale of the Vehicles.

1047. For the reasons set forth above, the Theft Friendly Defect within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs. Any consumer would find it important that the Vehicles did not comply with applicable safety and anti-theft standards. Yet that fact was concealed from the Insureds.

1048. Defendants intended for the Plaintiffs to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft Friendly Defect that would affect the quality, reliability, and safety of the Vehicles.

1049. The Insureds' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

1050. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs.

1051. If Defendants had fully and adequately disclosed the Theft Friendly Defect to consumers, Plaintiffs would have seen such a disclosure.

1052. Through their omissions and concealment with respect to the Theft Friendly Defect within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

1053. Had Plaintiffs known of the Theft Friendly Defect within the Vehicles,

they would not have purchased the Vehicles or would have paid less for them.

1054. As a direct and proximate result of Defendants' omissions, Plaintiffs either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Theft Friendly Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

1055. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**F.    Negligence**

1056. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1057. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1058. Defendants owed a duty of care to Plaintiffs and their Insureds.  That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

1059. In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and Their Insureds.

1060. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of

any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1061. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements and relevant industry standards to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1062. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other.

**G.    Gross Negligence**

1063. Plaintiffs and the Subclass Members reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1064. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1065. Defendants owed a duty of care to Plaintiffs and their Insureds.

1066. In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and their Insureds.

1067. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1068. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

<u>**DISTRICT OF COLUMBIA CLAIMS FOR RELIEF**</u>

**(Alleged by  Plaintiffs, and Members of District of Columbia Subclasses, against All Defendants)**

1069. Class Plaintiffs, the Hyundai District of Columbia Subclass and Kia

District of Columbia Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1070. The District of Columbia Subclasses are comprised of Members of both nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the District of Columbia due to Defendants' Thief Friendly Design including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; Permanent General Assurance Corporation; Erie Insurance Exchange; Erie Insurance Company of New York; Government Employees Insurance Company; GEICO Advantage Insurance Company; GEICO General Insurance Company; GEICO Secure  Insurance Company; Liberty Mutual Fire Insurance Company; Progressive Advanced Insurance Company; Nationwide Affinity Insurance Company of America; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Gulf Insurance Company; Garrison Property & Casualty Insurance Company; United Services Automobile Association; USAA Casualty Insurance Company, USAA General Indemnity Company; all of whom paid policy proceeds to their respective Insureds for losses in the District of Columbia pursuant to policies of insurance

## A.      Breach of Implied Warranty of Merchantability (D.C. § 28:2-314)

1071. Plaintiffs and the Subclass Members reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1072. Pursuant to D.C. §28:2-314, a warranty that goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

1073. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under D.C. § 28:2-104.

1074. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under D.C. §28:2A-103(a)(16).

1075. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in the District of Columbia and are therefore "buyers" within the meaning of D.C. §28:2A-103(a)(1).

1076. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who leased Vehicles in the District of Columbia and are therefore "lessees" within the meaning of D.C. §28:2A-103(a)(14).

1077. The Vehicles are and were at all relevant times "goods" within the meaning of D.C. §28:2A-103(a)(8).

1078. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1079. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless

driving or other criminal activity.

1080. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of the sale.

1081. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever-present risk of them being stolen. Any remedy that has been proposed or offered to date has proven to be inadequate, and at a minimum, does not compensate Plaintiffs for the losses incurred due to the Thief Friendly Design.

1082. On March 9, 2023, Plaintiffs and the Subclass Members provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public.

1083. Alternatively, Plaintiffs and the Subclass Members were excused from

providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs or their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1084. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty (D.C. § 28:2-313)**

1085. Plaintiffs and Subclass Members from each District of Columbia Subclass reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1086. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1087. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1088. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1089. The Vehicles did not perform as promised in accordance with

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1090. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' conduct.

**C.     Violation of District of Columbia's Unlawful Trade Practices Act (D.C. § 28-3904)**

1091. Plaintiffs and Subclass Members for each District of Columbia subclass reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1092. Defendants, Plaintiffs, Plaintiffs' Insureds, and Subclass Members are "persons" within the meaning of D.C. § 28-3904.

1093. The D.C. Trade Practices Act § 28-3904 ("D.C. UTPA") states that "it shall be a violation of this chapter for any person to engage in an unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged."

1094. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the D.C. UPTA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1095. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the D.C. UTPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material

facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

a. Defendants expressly warranted that the Vehicles conformed with applicable anti-theft standards when that was not true due to the Thief Friendly Design of the Vehicles;

b. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c. Given the hidden and technical nature of the Thief Friendly Design, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

d. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the Insureds who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the Insureds that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to the Insureds, Defendants had the duty to disclose the whole truth.

1096. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce Insureds to purchase the Vehicles.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1097. By misrepresenting the Vehicles as safe, reliable, and compliant with applicable anti-theft standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by the D.C. Trade Practices Act § 28-3904.

1098. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1099. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

1100. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those Vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles.

1101. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

1102. Had they known the truth about the Thief Friendly Design, Plaintiffs'

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them, and if purchased, could have taken precautions against theft.

1103. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1104. Defendants' violations present a continuing risk to Plaintiffs, their Insureds, as well as the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1105. Pursuant to the D.C. Trade Practices Act § 28-3904, Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the D.C. Trade Practices Act § 28-3904.

**D.     Fraud by Misstatements and Omissions**

1106. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1107. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1108. Having been aware of the Thief Friendly within the Vehicles while making affirmative false statements as to the Vehicles compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

> a.     Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

b.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c.    Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

d.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.    Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

1109. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

1110. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly

impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds. Any consumer would find it important that the Vehicles did not comply with applicable safety and anti-theft standards. Yet that fact was concealed from the Insureds.

1111. Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

1112. The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

1113. Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1114. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

1115. Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

1116. Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or deter theft of the Vehicles on their own.

1117. As a direct and proximate result of Defendants' omissions, the Insureds Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the

theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

1118. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## E.    Negligence

1119. The Plaintiffs and Subclass Members reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1120. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1121. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

1122. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

1123. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1124. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

1125. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

**F.    Negligent Misrepresentation**

1126. Plaintiffs and Subclass Members for both District of Columbia subclasses reallege and incorporate by reference all allegations as if fully set forth herein.

1127. Defendants breached their duty to the Insureds by making material representations and omitting key facts that they had a duty to disclose.

1128. Defendants are liable for supplying false information to the Insureds by representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

1129. Defendants knew that they were not providing accurate information, or at the very least failed to exercise reasonable care in obtaining and communicating accurate information regarding the Vehicles, and in particular the Thief Friendly Design of the Vehicles.

1130. Any consumer would consider it important to know that the Vehicle they were contemplating purchasing failed to comply with applicable safety and anti-theft standards, including federal regulations.   Yet Defendants knowingly misled consumers as to compliance with those standards as part of an effort to induce the Insureds into purchasing the Vehicles.   Thus, Defendants knew their inaccurate and incomplete representations would be relied upon by the Insureds.

1131. Defendants knowingly installed substandard theft prevention equipment,

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

failed to disclose that fact and actively concealed the true security characteristics of the Vehicles. Instead, Defendants knowingly marketed their vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to FMVSS 114.

1132. The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards. Compliance with federal anti-theft and safety standards are a minimum requirement that consumers, including the Insureds, would view as vital to the purchase of any vehicle.

1133. The Defendants failed to use reasonable care or competence in communicating information regarding the Thief Friendly Design and went as far as to affix each Vehicle with a vin plate that not only omitted information but misrepresented the truth.

1134. As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiffs and/or District of Columbia Subclass members have suffered injury-in-fact and/or actual damage. As a direct and proximate result of the Defendants' negligent misrepresentations, Plaintiffs and/or District of Columbia Subclass members have been damaged in an amount to be determined at trial.

**G.     Gross Negligence**

1135. Plaintiffs and Subclass Members for both District of Columbia subclasses reallege and incorporate by reference all allegations as if fully set forth herein.

1136. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1137. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

1138. With conscious indifference to the rights and safety of others, in connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants failed to comply with applicable law and/or the applicable care would cause clear and present danger.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1139. With conscious indifference to the rights and safety of others, in connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants failed to comply with applicable law and/or the applicable care would cause clear and present danger.

1140. With conscious indifference to the rights and safety of others, in connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants failed to comply with applicable law and/or the applicable care would cause clear and present danger.

1141. Defendants' conduct was grossly negligent entitling Plaintiffs and Subclass members to appropriate damages.

## **FLORIDA STATE LAW CLAIMS FOR RELIEF**

### **(Alleged by  Plaintiffs, and Members of Florida Subclasses, against All Defendants)**

1142. Class Plaintiffs, the Hyundai Florida Subclass and Kia Florida Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1143. The Florida Subclasses are comprised of Members of both nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Florida due to Defendants' Thief Friendly Design in Kia and Hyundai Vehicles including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Mutual Insurance Company, SI; Old Dominion Insurance Company; Permanent General Assurance Corporation; Government Employees Insurance Company; GEICO Casualty Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Infinity Auto Insurance Company; Infinity Indemnity Insurance Company; Allied Property &

Casualty Insurance Company; Nationwide Insurance Company of America; Nationwide Affinity Insurance Company of America; New Jersey Manufacturers Insurance Company; Garrison Property & Casualty Insurance Company; Progressive American Insurance Company; Progressive Express Insurance Company; Progressive Select Insurance Company; Mountain Laurel Assurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association, all of whom paid policy proceeds to their respective Insureds for losses in Florida pursuant to policies of insurance.

## A. Breach of Implied Warranty of Merchantability (Fla. Stat. §§ 672.314 and 680.212)

1144. The Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1145. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Fla. Stat. §§ 672.104(1) and 680.1031(3)(k), and "sellers" of motor vehicles under § 672.103(1)(d).

1146. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Fla. Stat. § 680.1031(1)(p).

1147. The Vehicles are and were at all relevant times "goods" within the meaning of Fla. Stat. §§ 672.105(1) and 680.1031(1)(h).

1148. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Fla. Stat. §§ 672.314 and 680.212.

1149. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' insured with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing

transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1150. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacked any anti-theft features or design elements to provide an adequate theft deterrent, or to otherwise satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1151. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and their Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1152. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs, and Subclass Members the benefit of their

1    respective bargains, which presupposes they were (or are) able to use the Vehicles in
2    a meaningful manner without the ever–present risk of them being stolen.

3        1153. Plaintiffs provided Defendants with reasonable notice and opportunity to
4    cure the breaches of their implied warranties by way of the numerous complaints filed
5    against them and the notice letters sent by Insureds, and Subclass Members within a
6    reasonable amount of time after knowledge of the Thief Friendly Design became
7    public.

8        1154. Alternatively, Plaintiffs were excused from providing Defendants with
9    notice and an opportunity to cure the breach, because it would have been futile. As
10   alleged throughout this Consolidated Complaint, and other Complaints filed in
11   connection with this MDL proceeding, Defendants have long known that the Vehicles
12   contained the Thief Friendly Design and have failed to cure, remedy, or repair the
13   breach. The thefts and damages that have already occurred due to the Thief Friendly
14   Design, moreover, cannot be remedied by repair.

15       1155. As a direct and proximate result of Defendants' breach of the implied
16   warranty of merchantability, the Vehicles were and are defective, and the Thief
17   Friendly Design in the Vehicles has not been remedied. As a direct and proximate
18   result, Plaintiffs and Subclass Members have been damaged in an amount to be proven
19   at trial.

20   **B.    Breach of Express Warranty (Fla. Stat. §§ 672.313, 680.21)**

21       1156. Plaintiffs incorporate by reference and reallege each preceding and
22   succeeding paragraph as though fully set forth at length herein.

23       1157. During the relevant time period described above, Plaintiffs' Insureds
24   purchased or leased Hyundai and Kia branded Vehicles.

25       1158. Those Vehicles were manufactured by Defendants during the relevant
26   time period described above. Through attachment of VIN plates, Defendants made an
27   express warranty that the Vehicles conform to all applicable U.S.A. federal motor
28   safety, bumper, and theft prevention standards in effect on the date of manufacture.

An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale.

1159. After Plaintiffs' Insureds purchased or leased the Hyundai and Kia branded Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1160. The Vehicles did not perform as promised in accordance with Defendants' express warranty as they are capable of being stole in a matter of seconds, and that fact has become common knowledge. Thus, the Vehicles did not meet all applicable motor vehicle safety and theft prevention standards in effect on the date of manufacture. As a result of that Thief Friendly Design, the Vehicles were easily stolen, and thus failed to conform to the terms of the express warranty described in the Vehicles' VIN plates.

1161. Neither Plaintiffs nor their Insureds were required to provide notice of the Thief Friendly Design prior to the vehicles being stolen and/or damaged. Nevertheless, Plaintiffs provided written notice to Defendants of the Thief Friendly Design, and further notice of the Thief Friendly Design was provided in conjunction with numerous cases being filed regarding the same Thief Friendly Design in actions around the country. While Defendants have suggested that they are attempting to remedy the Thief Friendly Design, any remedy offered to date is ineffective, and fails to comply with anti-theft standards.

1162. Plaintiffs, Subclass Members, and their Insureds have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' express warranty.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

**C.** **Violations of Florida Unfair and Deceptive Trade Practices Act (Fla. Stat. § 501 et seq.)**

1163. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1164. Defendants, Plaintiffs and Subclass Members are "consumers" within the meaning of Fla. Stat. § 501.203(7).

1165. Defendants were and are engaged in "trade or commerce" within the meaning of Fla. Stat. § 501.203(8).

1166. The Florida Unfair and Deceptive Trade Practices Act ("Florida UDTPA") prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1).

1167. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Florida UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above. Those material facts included the nature of the Thief Friendly Design as it rendered the Vehicles so available to car thieves, it was as if Defendants manufactured the vehicles with an invisible set of keys stuck in the ignition ready to be discovered by car thieves.

1168. Defendants had an ongoing duty to the Plaintiffs and Subclass Members to refrain from unfair or deceptive practices under the Florida UDTPA in the course of their business. Specifically, Defendants owed the Plaintiffs and Subclass Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

        a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1          knew these facts were not known to or reasonably discoverable by

2          Plaintiffs or Subclass Members;

3      b.   Given the hidden and technical nature of the Thief Friendly

4          Design; the Insureds lacked the sophisticated expertise in vehicle

5          components that would be necessary to discover the Thief

6          Friendly Design on their own;

7      c.   Defendants knew that the Thief Friendly Design gave rise to safety

8          concerns for the consumers who use the Vehicles, and the Thief

9          Friendly Design would have been a material fact to the Insureds'

10         decisions to buy or lease Vehicles; and

11     d.   Defendants made false and incomplete representations about the

12         safety and reliability of the Vehicles while purposefully

13         withholding material facts about a known safety defect. In uniform

14         advertising and materials provided with each Class Vehicle,

15         HMA, and KA intentionally concealed, suppressed, and failed to

16         disclose to the consumers that the Vehicles contained the Thief

17         Friendly Design. Because they volunteered to provide information

18         about the Vehicles that they marketed and offered for sale and

19         lease to consumers, HMA and KA had the duty to disclose the

20         whole truth.

21    1169. As detailed above, the information concerning the Thief Friendly Design

22 was known to Defendants at the time of advertising and selling the Vehicles, all of

23 which was intended to induce consumers to purchase the Vehicles.

24    1170. By misrepresenting the Vehicles as safe, reliable, and compliant with

25 relevant standards, and by failing to disclose and actively concealing the dangers and

26 risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of

27 competition and unfair or deceptive acts or practices in the conduct of trade or

28 commerce, as prohibited by Fla. Stat. § 501.204(1).

1171. Defendants intended for Plaintiffs' Insureds and the Insureds of Subclass Members to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1172. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did not in fact deceive reasonable consumers, including Plaintiffs' Insureds and the Insureds of Subclass Members, about the true safety and reliability of Vehicles, the quality of the Vehicles, the true value of the Vehicles.

1173. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds and the Insureds of Subclass Members to purchase and lease those vehicles, as Defendants intended. The Plaintiffs' Insureds and the Insureds of Subclass Members were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1174. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds and the Insureds of Subclass Members did not, and could not, unravel Defendants' deception on their own.

1175. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds and the Insureds of Subclass Members would not have exposed themselves to the unreasonable risk of theft, and associated dangers.

1176. Plaintiffs and Subclass Members suffered ascertainable losses and actual

damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1177. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design, and that defect has not been remedied. Defendants' unlawful acts and practices complained of herein affect the public interest.

1178. Pursuant to Fla. Stat. § 501.211, Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Florida UDTPA.

**D.      Fraud Based on Omissions, Concealment, and Misstatements**

1179. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1180. Plaintiffs and Subclass Members incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1181. Having been aware of the Thief Friendly Design within the Vehicles while making affirmative false statements as to the Vehicles' compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

      a.     Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

      b.     Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

c.    Given the hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

d.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.    Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, including the false statement that the Vehicles complied with all applicable safety and anti-theft standards, Defendants had a duty to disclose the whole truth about those Vehicles.

f.    In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

1182. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find information about it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the availability of the Vehicles, the risk of theft, and value of the

Vehicles purchased or leased by the Insureds.

1183. Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

1184. The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

1185. Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1186. If Defendants had fully, fairly, and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

1187. Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Class Vehicle than they otherwise would have paid.

1188. As a direct and proximate result of Defendants' omissions, the Insureds Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

1189. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter

such conduct in the future, which amount shall be determined according to proof at trial.

**E.     Negligence**

1190. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1191. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

1192. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

1193. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

1194. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1195. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS and/or to follow basic industry standards regarding the implementation of immobilizers to reach the same ends.

1196. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of

use of the Vehicles, together with other damages for which Defendants are liable.

**F.    Negligent Misrepresentation**

1197. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1198. Named Subclass Members bring this count individually and on behalf of the other members of the Florida Subclasses, against Defendants.

1199. Defendants breached their duty to the Insureds by providing inaccurate material information to the Insureds with the intent of inducing them into purchasing or leasing Vehicles. Defendants should have known their representations were untrue, and likely to be relied upon by the Insureds.

1200. Defendants are liable for supplying false information to the Insureds by representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard and quality when they are not; and omitting material facts in describing the Vehicles.

1201. Defendants knew that they were not providing accurate information, or at the very least failed to exercise reasonable care in obtaining and communicating accurate information regarding the Vehicles, and in particular regarding the Thief Friendly Design of the Vehicles.

1202. Any consumer would consider it important to know that the Vehicle they were contemplating purchasing did not comply with applicable safety and anti-theft standards, including federal regulations. Yet Defendants knowingly misled consumers as to compliance with those standards as part of an effort to induce the Insureds into purchasing the Vehicles. Defendants knew their inaccurate and incomplete representations would be relied upon by the Insureds.

1203. Defendants knowingly installed substandard theft prevention equipment, failed to disclose that fact and actively concealed the true security characteristics of the Vehicles. Instead, Defendants knowingly represented their vehicles as compliant with all applicable motor vehicle safety standards, including but not limited to

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

FMVSS 114, while concealing information regarding noncompliance with federal and industry standards to induce the Insureds into purchasing or leasing a Vehicle.

1204. The Insureds justifiably relied on the Defendants' misrepresentations that the Vehicles complied with all applicable motor vehicle safety standards. Compliance with federal anti-theft and safety standards are a minimum requirement that consumers, including the Insureds, would view as vital to the purchase of any vehicle.

1205. The Defendants failed to use reasonable care or competence in communicating information regarding the Thief Friendly Design and went as far as to affix each Vehicle with a VIN plate that not only omitted information but misrepresented the truth.

1206. As a direct and proximate result of Defendants' negligent misrepresentation(s), Plaintiffs and/or Florida Subclass members have suffered injury-in-fact and/or actual damage. As a direct and proximate result of the Defendants' negligent misrepresentations, Plaintiffs and/or Florida Subclass members have been damaged in an amount to be determined at trial.

**G.    Gross Negligence**

1207. Plaintiffs reallege and incorporate by reference all prior allegations as if fully set forth herein.

1208. Defendants manufactured, distributed, sold, and/or leased the Vehicles to the Insureds.

1209. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds, particularly with regard to the proper design, manufacture, installation, description, and disclosure of an appropriate anti-theft device that meets all applicable anti-theft standards.

1210. Because the anti-theft standard is a safety standard, Defendants' reckless disregard of compliance with that standard placed the Insureds in clear and present danger of damage due to the theft of the Vehicles.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1211. With conduct that smacks of willfulness, and with conscious and reckless indifference to the rights and safety of others, in connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants failed to comply with applicable law and/or the applicable standard of care, causing clear and present danger to the Insureds.

1212. Defendants' conduct was grossly negligent entitling Plaintiffs and Subclass members to appropriate damages.

## GEORGIA STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Georgia Subclasses, against All Defendants)

1213. Class Plaintiffs, the Hyundai Georgia Subclass and Kia Georgia Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1214. The Georgia Subclasses are comprised of Members of both nationwide classes with claims stemming from vehicle losses (including both Kia and Hyundai Vehicles) in the State of Georgia due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insuranc Company, S.I.; Permanent General Assurance Corporation; Erie Insurance Company; GEICO General Insurance Company; GEICO Indemnity Company; Horace Mann Property & Casualty Insurance Company; Infinity Auto Insurance Company; Infinity Casualty Insurance Company; The First Liberty Insurance Company; Allied Property & Casualty Insurance Company; Nationwide Affinity Insurance Company of America; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Progressive Direct Insurance Company; Progressive Premier Insurance Company of

Illinois; Progressive Mountain Insurance Company; Southern Pilot Insurance Company; Root Insurance Company; and Milbank Insurance Company; all of whom paid policy proceeds to their respective Insureds for losses in Georgia pursuant to policies of insurance.

## A.    Breach of Implied Warranty of Merchantability (Ga. Code Ann. §§ 11-2-314 and 11-2A-212)

1215. Plaintiffs  incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1216. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ga. Code Ann. §§ 11-2-314 and 11-2A-212.

1217. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ga. Code Ann. §§ 11-2-104(a) and 11-2A-103(3), and "sellers" of motor vehicles under § 11-2-103(1)(d).

1218. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ga Code Ann. § 11-2A-103(1)(p).

1219. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in Georgia and are therefore "buyers" within the meaning of Ga. Code Ann. § 11-2-103(1)(a).

1220. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who leased Vehicles in Georgia and are therefore "lessees" within the meaning of Ga. Code Ann. § 11-2A-103(1)(n).

1221. The Vehicles are and were at all relevant times "goods" within the meaning of Ga. Code Ann. §§ 11-2-105(1) and 11-2A-103(1)(h).

1222. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided the Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among

other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe, available and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

1223. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.  This meant, among other things, that the Vehicles were not reliably available to be used for transport.

1224. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, the Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and the Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of the sale.

1225. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever-present risk of them being stolen. Any remedy that has been proposed or offered to date has proven to be inadequate, and at a minimum, does not compensate Plaintiffs for the losses incurred due to the Thief Friendly Design.

1226. On March 9, 2023, Plaintiffs and the Subclass Members provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1227. Alternatively, Plaintiffs and the Subclass Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles included a Thief Friendly Design; however, to date, upon information and belief, Defendants have not instituted an adequate, or effective and meaningful repair program with respect to the Vehicles. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair. For the Vehicles that were stolen, moreover, any proposed cure for the Thief Friendly Design comes far too late.

1228. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty (Ga. Code Ann. § 11-2-313, *et seq.*)**

1229. Plaintiffs aincorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1230. During the relevant time period described above, the Insureds purchased or leased Vehicles.

1231. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

**1232.** The statements on the VIN plates describing the Vehicles' compliance with safety and anti-theft regulations are affirmations of fact and/or promises made by Defendants to Plaintiffs' Insured.  Those statements amount to an express warranty under Ga. Code Ann. § 11-2-313.

1233. That warranty would be, and is material for any consumer, including all of the Insureds because any reasonable consumer would view the Vehicles' failure to comply with applicable anti-theft and safety standards as important to any decision to buy, or lease a Vehicle.

1234. After the Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1235. The Vehicles did not perform as promised in accordance with Defendants' express warranty as the Vehicles are capable of being stolen in a matter of seconds, and that fact has become common knowledge. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on

the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1236. Defendants were provided notice and ample opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Specifically, Plaintiffs and Subclass members provided Defendants notice of the Theft Friendly Design on March 09, 2029.  To date, Defendants have failed to remedy the problem and, as a result, thefts continue to escalate.  While Defendants have suggested they are attempting to remedy the Thief Friendly Design, any remedy offered to date is ineffective, and fails to comply with anti-theft standards.

1237. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, due to the Thief Friendly Design and related to Defendants' breach of their express warranty.

**C.    Violation of the Georgia Uniform Deceptive Trade Practices Act (Ga. Code Ann. § 10-1-390, *et seq*.)**

1238. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

1239. Defendants, Plaintiffs, Plaintiffs' Insureds, and Subclass Members are "persons" within the meaning of Georgia Uniform Deceptive Trade Practices Act ("Georgia UDTPA"), Ga. Code Ann. § 10-1-371(5).

1240. The Georgia UDTPA prohibits any "deceptive trade practices", which include misrepresenting the "standard, quality, or grade" of goods and services, and engaging "in any other conduct which similarly creates a likelihood of confusion or of misunderstanding." Ga. Code Ann. § 10-1-372(a).

1241. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia UDTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1242. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Georgia UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

 a.   Defendants expressly warranted that the Vehicles conformed with applicable anti-theft standards when that was not true due to the Thief Friendly Design of the Vehicles;

 b.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

 c.   Given the hidden and technical nature of the Thief Friendly Design, the Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

 d.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the Insureds who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

 e.   Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and

materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the Insureds that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to the Insureds, Defendants had the duty to disclose the whole truth.

1243. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce Insureds to purchase the Vehicles.

1244. By misrepresenting the Vehicles as safe, reliable, and compliant with applicable anti-theft standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Georgia UDTPA:

    a. Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

    b. Representing that the Vehicles have approval, characteristics, uses, and benefits which they do not have;

    c. Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

    d. Advertising the Vehicles with the intent not to sell or lease them as advertised; and

    e. Engaging in conduct which creates a likelihood of confusion or of misleading persons regarding the Vehicles.

Ga. Code Ann. § 10-1-372(2), (5), (7), (9), (12).

1245. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1246. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

1247. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase or lease those Vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles.  Such representations, namely that the Vehicles complied with applicable anti-theft and safety standards, would be, and are material for any consumer contemplating purchase of any Vehicle.  Thus, the Insureds relied upon those representations, as any reasonable consumer would rely on such representations.

1248. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

1249. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them, and if purchased, could have taken precautions against theft.

1250. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to

disclose material information.

1251. Defendants' conduct presents a continuing risk to Plaintiffs, their Insureds, as well as the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1252. Pursuant to Ga. Code Ann. § 10-1-373, Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair and/or deceptive acts or practices and any other just and proper relief available under the Georgia UDTPA.

**D.    Violation of the Georgia Fair Business Practices Act (Ga. Code Ann. § 10-1-390, *et seq.*)**

1253. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1254. The Georgia Fair Business Practices Act ("Georgia FBPA") declares "[u]nfair or deceptive acts or practices in the conduct of consumer transactions and consumer acts or practices in trade or commerce" to be unlawful. Ga. Code Ann. § 10-1-393(a).

1255. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Georgia FBPA.

1256. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce Insureds to purchase the Vehicles.

1257. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices in violation of the Georgia UTPA:

        a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

<div style="margin-left:2em">

b.   Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

c.   Representing that the Vehicles are of a particular standard, quality, and grade when they are not; and

d.   Advertising the Vehicles with the intent not to sell or lease them as advertised.

</div>

Ga. Code Ann. § 10-1-393(b).

1258. Defendants intended for the Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1259. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

1260. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase or lease those Vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles.

1261. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not,

1  unravel Defendants' deception on their own.

2      1262. Had they known the truth about the Thief Friendly Design, Plaintiffs'

3  Insureds would not have purchased or leased the Vehicles, or would have paid

4  significantly less for them, and if purchased, could have taken precautions against

5  theft.

6      1263. Plaintiffs suffered ascertainable losses and actual damages as a direct and

7  proximate result of Defendants' concealment, misrepresentations, and/or failure to

8  disclose material information.

9      1264. Defendants' violations present a continuing risk to Plaintiffs, their

10 Insureds, as well as the general public because the Vehicles remain unsafe due to the

11 Thief Friendly Design. Defendants' unlawful acts and practices complained of herein

12 affect the public interest.

13     1265. Plaintiffs and Subclass members provided notice of the violations

14 created by the Thief Friendly Design by letter dated March 09, 2023.  All Defendants,

15 moreover, were provided notice and opportunity to cure the issues raised in this count

16 and this Complaint by governmental investigations, numerous complaints filed

17 against them, internet videos, news reports, and the many individual notice letters sent

18 by Plaintiffs within a reasonable amount of time after the allegations of Vehicle

19 defects became public.

20     1266. Alternatively, Plaintiffs and the Subclass Members were excused from

21 providing Defendants with notice and an opportunity to cure the breach, because it

22 would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have

23 long known that the Vehicles contained the Thief Friendly Design; yet have failed to

24 cure, remedy, or repair the breach. As such, neither Plaintiffs or their Insureds had

25 any reason to believe that Defendants would have adequately repaired the Thief

26 Friendly Design if they presented their Vehicles to them for repair.  With respect to

27 the Vehicles already stolen, moreover, Defendants do not appear to have offered any

28 remedy to compensate Plaintiffs for their losses.

1267. Pursuant to Ga. Code Ann. § 10-1-399, Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Georgia FBPA.

**E.      Fraud by Omission and Concealment (Alleged by Both Georgia Subclasses and  Plaintiffs against All Defendants)**

1268. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1269. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1270. Having been aware of the Thief Friendly within the Vehicles while making affirmative false statements as to the Vehicles' compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.      Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

b.      Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c.      Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

      d.     Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

      e.     Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

1271. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

1272. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the availability of the Vehicles to be driven as intended, the risk of theft, and value of the Vehicles purchased or leased by the Insureds. Any consumer would find it important that the Vehicles did not comply with applicable safety and anti-theft standards. Yet that fact was concealed from the Insureds.

1273. Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which the Insureds did by purchasing or leasing the Vehicles, believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

1274. The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

1275. Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and their Insureds.

1276. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

1277. Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased.

1278. Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or deter theft of the Vehicles on their own.

1279. As a direct and proximate result of Defendants' omissions, the Insureds' Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

1280. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## F.      Negligence (Alleged by Both Georgia Subclasses and  Plaintiffs against All Defendants)

1281. Plaintiffs reallege and incorporate by reference all allegations as if fully set forth herein.

1282. Defendants manufactured, distributed and sold the Vehicles.

1283. Defendants owed a duty of care to the Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

1284. Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution, marketing, and sale of the Vehicles.

1285. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1286. The Defendants' violation of their duties under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

1287. As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

**G.     Negligent Misrepresentation (Alleged by both Georgia Subclasses and Plaintiffs against All Defendants)**

1288. Plaintiffs reallege and incorporate by reference all allegations as if fully set forth herein.

1289. Defendants made representations to Plaintiffs' Insureds concerning the safety and quality of the Vehicles that were not true, as more fully alleged in the preceding paragraphs.

1290. Defendants had no reasonable grounds for believing these representations were true when they made them, yet they intended that Plaintiffs' Insureds rely on the misrepresentations.

1291. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## HAWAII STATE LAW CLAIMS FOR RELIEF

**(Alleged by  Plaintiffs, and Members of Hawaii Subclasses, against All Defendants)**

1292. Class Plaintiffs, the Hyundai Massachusetts Subclass and Kia Hawaii Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1293. The Hawaii Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (from Kia and Hyundai Vehicles) in the State of Hawaii due to the Thief Friendly Design in Kia and Hyundai Vehicles including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Northbrook Indemnity Company; GEICO Indemnity Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company;

USAA General Indemnity Company; and United Services Automobile Association, all of whom paid policy proceeds to their respective Insureds for losses in Hawaii pursuant to policies of insurance.

**A.      Breach of Implied Warranty (Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212)**

1294. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein. Plaintiffs and Subclass Members for each Subclass on behalf of their Insureds reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1295. Named Subclass Members bring this count individually and on behalf of the other members of the Hawaii Subclasses against Defendants.

1296. Defendants were at all relevant times "merchants" with respect to motor vehicles under Haw. Rev. Stat. §§ 490:2-104(1) and 490:2A-103(b), and "sellers" of motor vehicles under § 490:2-103(1)(d).

1297. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Haw. Rev. Stat. § 490:2A-103(a)(16).

1298. The Vehicles are and were at all relevant times "goods" within the meaning of Haw. Rev. Stat. §§ 490:2-105(1) and 490:2A-103(a)(8).

1299. Plaintiffs stand in the shoes of their Insureds who purchased Vehicles in Hawaii and are therefore "buyers" within the meaning of Haw. Rev. Stat. §§ 490:9-320, and in the shoes of their Insureds who leased Vehicles in Hawaii and are therefore "lessees" within the meaning of Haw. Rev. Stat. §§ 490:2A-103, collectively "Plaintiffs' Insureds."

1300. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Haw. Rev. Stat. §§ 490:2-314 and 490:2A-212 and 213.

1301. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**
LEGAL\67600038\1

implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles as manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1302. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because the Vehicles contained the Thief Friendly Design.  The Thief Friendly Design lacks any anti-theft features or design elements that provide an adequate theft deterrent, and are not sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard making the Vehicles vulnerable to theft, and making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity. In addition, the Vehicles did not conform to the promises or affirmations of fact made on the labels affixed to the Vehicles that stated the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture.

1303. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which

unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1304. Furthermore, these circumstances caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of implied warranties denied Plaintiffs' Insureds the benefit of their respective bargains, which was the possession of a vehicle for its intended uses without a risk of them being stolen that was much higher than other comparable vehicles that did comply with the Federal safety standards and were not manufactured with the Thief Friendly Design.

1305. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1306. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. Therefore, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

**1307.** The Defendants breached the implied warranty of merchantability and fitness for particular purpose by manufacturing and selling defective Vehicles that contained the Thief Friendly Design and failing to remedy the defect.  As a direct and proximate result of Defendants' breach, Plaintiffs were obligated by their policies of

1  insurance with Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were

2  stolen or damaged in the course of being stolen because of the Thief Friendly Design.

3  As a result, Plaintiffs have incurred and will continue to incur damages and costs and

4  expenses, including attorney's fees, in an amount to be proven at trial.

5  **B.      Breach of Express Warranty (HRS §§ 409:2-313 and 409:2A-210)**

6        1308. Plaintiffs reallege and incorporate by reference all preceding allegations

7  as though fully set forth herein.

8        1309. During the relevant time period described above, Plaintiffs' Insureds

9  purchased or leased Vehicles manufactured by Defendants.

10        1310. Through the attachment of VIN plates, Defendants made an express

11  warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle

12  safety, bumper, and theft prevention standards in effect on the date of manufacture.

13  An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided

14  above.  On information and belief, similar written warranties were made prior to, or

15  at the point of sale for all Vehicles.

16        1311. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

17  them in accordance with the normal operation of the Vehicles and did not mishandle

18  or otherwise damage the Vehicles in any way that is material to the allegations set

19  forth herein.

20        1312. The Vehicles did not perform as promised in accordance with

21  Defendants' express warranty on the VIN plates.  In fact, the Vehicles were

22  manufactured and sold without compliance to the applicable safety and theft

23  prevention standards in effect on the date of manufacture and can be stolen in a matter

24  of seconds, a fact that has become common knowledge. As a result of this Thief

25  Friendly Design, the Vehicles were in fact easily and frequently stolen, and thus failed

26  to perform to the terms of the express warranty described in the Vehicles' VIN plates.

27        1313. As a direct and proximate result of Defendants' breach of their express

28  warranty, Plaintiffs were obligated under their policies of insurance with their

Insureds to pay for damage to or loss to Plaintiff's Insureds' Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

**C.     Unfair and Deceptive Acts in Violation of Hawaii Law (Haw. Rev. Stat. § 480, et seq.)**

1314. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1315. Plaintiffs stand in the shoes of their Insureds who are "consumers" within the meaning of Haw. Rev. Stat. § 480-1.

1316. The Vehicles are "commodities" within the meaning of Haw. Rev. Stat. § 480-1.

1317. Defendants are engaged in trade or commerce within the meaning of Haw. Rev. Stat. § 480-1.

1318. The Hawaii Unfair and Deceptive Acts and Practices Act (Hawaii UDAP") prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.…" Haw. Rev. Stat. § 480-2(a).

1319. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Hawaii UDAP by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1320. Defendants had an ongoing duty under the Hawaii UDAP to refrain from unfair or deceptive practices to Plaintiffs' Insureds in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

d.   In the uniform advertising and materials provided to consumers with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers, including Plaintiff's Insureds, that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1321. Defendants made incomplete representations to the Plaintiffs' Insureds about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, and Defendants excluded that information from the advertising and materials provided to consumers in order to induce consumers to purchase the Vehicles.

1322. Defendants engaged in one or more unfair or deceptive business practices as defined Haw. Rev. Stat. § 480-2(a) by misrepresenting the Vehicles as

safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design.

1323. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1324. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and to conceal the existence of the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1325. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

1326. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1327. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1328. Under their policies of insurance with the Plaintiffs' Insureds, Plaintiffs were obligated to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information, in an amount to be proven at trial.

1329. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.  Therefore, Plaintiffs also seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages and any other just and proper relief available under the Hawaii UDAP.

**D.     Fraud by Omission, Suppression or Concealment**

1330. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1331. Defendants made incomplete representations to the Plaintiffs' Insureds about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect.

1332. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1333. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1334. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1335. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

a.   Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and the false representation of Federal compliance made in advertising and the VIN plate;

b.   Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

c.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

d.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle

1     components that would be necessary to discover the Thief

2     Friendly Design on their own;

3    e.   Defendants knew that the Thief Friendly Design gave rise to safety

4     concerns for the consumers who use the Vehicles, and the Thief

5     Friendly Design would have been a material fact to the Plaintiffs'

6     Insureds decisions to buy or lease Vehicles; and

7    f.   In uniform advertising and materials provided with each Vehicle,

8     Defendants intentionally concealed, suppressed, and failed to

9     disclose to the consumers that the Vehicles contained the Thief

10     Friendly Design. Because they volunteered to provide information

11     about the Vehicles that they marketed and offered for sale and

12     lease to consumers, Defendants had the duty to disclose the whole

13     truth.

14    1336. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

19    1337. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

24    1338. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

28    1339. Plaintiffs' Insureds' reliance was reasonable, as they had no way of

discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1340. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1341. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1342. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.      Negligent Misrepresentation**

1343. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1344. Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

1345. Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft. This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether or not to purchase or lease the Vehicles, and whether to take additional anti-theft precautions after such purchase or lease.

1346. Defendants manufactured the Vehicles for sale to the public and had a pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

1347. Defendants had a duty to exercise reasonable care or competence in obtaining and communicating information for the guidance of others in these business transactions.

1348. Defendants failed that duty by providing Plaintiffs' Insureds with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards. Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1349. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction.

1350. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead had they known of the Thief Friendly Design in the Defendants' Vehicles.

1351. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good

1 reason to presume were knowledgeable about the vehicles they manufactured and

2 sold.

3       1352. Plaintiffs' Insureds relied on the negligent misrepresentations of

4 Defendants when they purchased or leased Vehicles they believed were adequately

5 protected from theft in accordance with Federal standards, when in fact the Vehicles

6 were easy to steal and were stolen at a much higher incidence than other vehicles that

7 did comply with the Federal standards.

8       1353. Plaintiffs were obligated under their policies of insurance with their

9 Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being

10 stolen, and incurred damages of ascertainable value in an amount according to proof

11 at trial.

12 **F.     Negligence**

13       1354. Plaintiffs reallege and incorporate by reference all preceding allegations

14 as though fully set forth herein.

15       1355. The National Highway Traffic Safety Administration has a self-

16 certification system of compliance where vehicle manufacturers certify their products

17 meet applicable standards.   Defendants had a duty to the general public as

18 manufacturers and sellers of automobiles, operating in a sector subject to Federal

19 regulation for the benefit and safety of the general public, to ensure that the vehicles

20 they offered for sale were compliant to all applicable Federal standards.  This duty

21 precedes the offering of any vehicle for sale in the United States and territories subject

22 to the jurisdiction of Federal Regulations and is independent of any duties arising

23 through individual contracts for sale or lease that Defendants entered into with

24 Plaintiffs' Insureds.

25       1356. Defendants breached that duty when they negligently manufactured and

26 sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required

27 by Federal standards, containing the Thief Friendly Design.

28       1357. Defendants' negligent manufacture and sale of non-compliant vehicles

containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1358. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**G.   Gross Negligence**

1359. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1360. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1361. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

1362. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

1363. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1364. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1365. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## IDAHO STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Idaho Subclasses, against All Defendants)

1366. Class Plaintiffs, the Hyundai Idaho Subclass and Kia Idaho Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1367. The Idaho Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Idaho due to Defendants' Thief Friendly Design,

including, but not limited to, the following named Class Plaintiffs:  Allstate Fire & Property Casualty Insurance Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; Permanent General Assurance Corporation; Alpha Property & Casualty Insurance Company; Trinity Universal Insurance Company; Progressive Direct Insurance Company; Progressive Northwestern Insurance Company; United Financial Casualty Company; USAA General Indemnity Company; and United Services Automobile Association, who paid policy proceeds to their respective Insureds in Idaho pursuant to policies of insurance.

## A.    Breach of Implied Warranty (Idaho Code §§ 28-2-314 and 28-12-212)

1368. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1369. Defendants were at all relevant times "merchants" with respect to motor vehicles Idaho Code §§ 28-2-104(1) and 28-12-103(3), and "sellers" of motor vehicles under § 28-2- 103(1)(d).

1370. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Idaho Code § 28-12-103(1)(p).

1371. The Vehicles are and were at all relevant times "goods" within the meaning of Idaho Code §§ 28-2-105(1) and 28-12-103(1)(h).

1372. Plaintiffs stand in the shoes of their Insureds who purchased Vehicles in Idaho and are therefore "buyers" within the meaning of Idaho Code §28-2-103(a), and in the shoes of their Insureds who leased Vehicles in Idaho and are therefore "lessees" within the meaning of Idaho Code §28-12-103(1)(n), collectively "Plaintiffs' Insureds."

1373. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant Idaho Code §§ 28-2-314 and 28-12-212.

1374. Defendants knew or had reason to know of the specific use for which the

Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1375. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders the Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1376. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design, which they were aware of at the time of sale. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants because a gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds.

1377. Furthermore, these circumstances caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of implied warranties denied Plaintiffs' Insureds the benefit of their respective bargains, which was the possession of a vehicle for its intended uses without a risk of them being stolen that was much higher than other comparable vehicles that did comply with the Federal safety standards and were not manufactured with the Thief Friendly Design.

1378. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1379. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. Therefore, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1380. The Defendants breached the implied warranty of merchantability and fitness for a particular purpose by manufacturing and selling defective Vehicles and failing to remedy the defect.  As a direct and proximate result of Defendants' breach, Plaintiffs were obligated to make payments under their policies of insurance to or on behalf of their Insureds for damage to or losses of their Vehicles that occurred the course of their being stolen due to the Thief Friendly Design, and incurred damages in an amount to be proven at trial.

**B.      Breach of Express Warranty (Idaho Code §§ 28-2-313 and 28-12-210)**

1381. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1382. Plaintiffs stand in the shoes of their Insureds who purchased Vehicles in Idaho and are therefore "buyers" within the meaning of Idaho Code §28-2-103(a), and in the shoes of their Insureds who leased Vehicles in Idaho and are therefore "lessees" within the meaning of Idaho Code §28-12-103(1)(n), collectively "Plaintiffs' Insureds."

1383. Plaintiffs' Insureds purchased or leased Vehicles from Defendants.

1384. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty under Idaho Code § 28-2-313(a) and (b) that was an affirmation of fact or promise, and a description of the goods made by Defendants to the consumers that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles. These affirmations of fact, promises and descriptions of the Vehicles became part of the basis of the bargain and created an express warranty that the Vehicles would conform to the VIN plate.

1385. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1386. The Vehicles did not perform as promised in accordance with Defendants' express warranty on the VIN plates.  In fact, the Vehicles as manufactured and sold did not comply with the applicable safety and theft prevention standards in effect on the date of manufacture, and as a result, can be stolen in a matter

of seconds, a fact that has become common knowledge. In fact, Vehicles with the Thief Friendly Design were easily and frequently stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates.

1387. As a direct and proximate result of Defendants' breach of their express warranty to Plaintiff's Insureds, Plaintiffs were obligated by their policies of insurance with their Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

**C.      Violation of the Idaho Consumer Protection Act (Idaho Code § 48-601, et seq.)**

1388. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1389. Defendants, Plaintiffs and Plaintiff's Insureds are "persons" within the meaning of Idaho Code § 48-602(1).

1390. Defendants are engaged in "trade" or "commerce" within the meaning of Idaho Code § 48-602(2).

1391. The Vehicles are "goods" within the meaning of Idaho Code § 48-602(6).

1392. The Idaho Consumer Protection Act ("Idaho CPA") makes "unfair methods of competition and unfair or deceptive acts or practices" unlawful.

1393. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Idaho CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles resulting from the Thief Friendly Design, as detailed above.

1394. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain

from unfair or deceptive practices under the Idaho CPA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

1395. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

1396. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

1397. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the  decisions to buy or lease Vehicles; and

1398. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1399. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1400. By misrepresenting the Vehicles as safe, reliable and protected from theft, and failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive acts or practices as defined in Idaho Code§ 48-603(2), (5), (7), (9), (17), and (18):

a. Causing likelihood of confusion or of misunderstanding as to the approval, or certification of the Vehicles;

b. Representing that the Vehicles had approval, characteristics, uses, or benefits that they did not have;

c. Representing that the Vehicles were of a particular standard, quality or grade that they did not have;

d. Advertising the Vehicles with the intent not to sell them as advertised;

e. Engaging in any act or practice that is otherwise misleading, false, or deceptive to the consumer; and

f. Engaging in any unconscionable method, act or practice in the conduct of trade or commerce.

1401. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1402. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles did not have a Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1403. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

deciding to purchase and lease Vehicles.

1404. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1405. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1406. Under their policies of insurance with the Plaintiffs' Insureds, as a direct and proximate result of Defendants' false and misleading conduct, Plaintiffs were obligated to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

1407. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices described in this complaint affect the public interest.  Therefore, pursuant to Idaho Code § 48-608, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Idaho CPA.

## D.      Fraud by Omission and Concealment

1408. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1409. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs'

1  Insureds.

2  1410. Because Defendants were the designers, manufacturers and sellers of the

3  Vehicles, and their design information and marketing schemes were not ascertainable

4  through publicly available sources, the Defendants had special knowledge and

5  information regarding the Vehicles offered for sale to the Plaintiffs' Insureds that was

6  not ascertainable by the Plaintiffs' Insureds. As such, the Plaintiffs' Insureds had trust

7  and confidence that the Defendants had informed them truthfully and fully about the

8  features and safety compliance of the Vehicles, since they were unable to verify the

9  information for themselves.

10  1411. Defendants had a further duty to disclose the Thief Friendly Design to

11  the Plaintiffs' Insureds because they knew that the Plaintiffs' Insureds could not have

12  reasonably been expected to know of the Thief Friendly Design and were relying on

13  Defendants for information on the Vehicles features and compliance to applicable

14  Federal standards for safety and anti-theft. Because Defendants made affirmative

15  statements in advertising and on the VIN plates affixed to the Vehicles Defendants

16  had a duty to disclose the Thief Friendly Design to prevent those affirmative

17  statements of compliance from being misleading.

18  1412. Defendants further had a duty to disclose the Thief Friendly Design

19  because:

20        a.   Defendants had exclusive access to and far superior knowledge

21              about facts regarding the Thief Friendly Design and Defendants

22              knew these facts were not known to or reasonably discoverable by

23              Plaintiffs' Insureds;

24        b.   Given the Thief Friendly Design's hidden and technical nature,

25              Plaintiffs' Insureds lack the sophisticated expertise in vehicle

26              components that would be necessary to discover the Thief

27              Friendly Design on their own;

28

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

d. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1413. In breach of their duties, Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect when they failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. In addition, Defendants made affirmative representations that the Vehicle complied with Federal standards to the Plaintiffs' Insureds in the VIN plate affixed to the Vehicle in a prominent place that the driver was exposed to every time they entered the Vehicle and did not disclose to Plaintiffs' Insureds that the VIN plate compliance statement was false with respect to anti-theft standards.

1414. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle that it be compliant to applicable Federal safety and anti-theft standards, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds. Other comparable vehicles for sale in the marketplace are compliant to the Federal standards, and the Thief Friendly Design that made Defendants' Vehicles inferior to other vehicles offered for sale would be a material factor in the Plaintiffs' Insureds' decision whether

1  to buy the Defendants' Vehicle, or one from another manufacturer that did not have

2  the same defect.

3      1415. Defendants intended for the Plaintiffs to rely on their omissions and

4  concealment by intentionally manufacturing some Vehicles with the Thief Friendly

5  Design and then falsely marking them with the VIN plate as compliant to anti-theft

6  standards.  Defendants made the affirmative statement of compliance, and knowing it

7  to be false, they did not disclose the omitted material facts to the Plaintiffs' Insureds

8  knowing that Plaintiffs' Insureds would rely on their representations about the

9  Vehicle to make their buying or leasing decisions. In fact, the Plaintiffs' Insureds did

10 rely on the Defendants' omissions of material fact and purchased and leased the

11 Vehicles at prices that did not reflect the vehicles' Thief Friendly Design, and in the

12 belief that the Vehicles did not have a defect that affected the quality, reliability,

13 safety, and value of the Vehicles.

14     1416. Through their omissions and concealment with respect to the Thief

15 Friendly Design within the Vehicles, Defendants intended to induce, and did induce,

16 Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have

17 purchased or pay more for a Vehicle than they otherwise would have paid.

18     1417. Plaintiffs' reliance was justifiable and reasonable, as they had no way of

19 discerning the facts that Defendants had concealed or failed to disclose. Plaintiffs did

20 not, and could not, unravel Defendants' deception on their own.

21     1418. Defendants actively and intentionally concealed and suppressed these

22 material facts, in whole or in part, to maintain a market for the Vehicles, to protect

23 profits, and to avoid costly recalls that would expose them to liability for those

24 expenses and harm the commercial reputations of Defendants and their products.

25 They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

26     1419. If Defendants had fully and adequately disclosed the Thief Friendly

27 Design to consumers, Plaintiffs would have seen such a disclosure.

28     1420. As a direct and proximate result of Defendants' omissions, Plaintiffs

1   were obligated by their policies of insurance with their Insureds to pay for stolen

2   Vehicles, or Vehicles damaged in the course of being stolen, and incurred actual

3   damages in an ascertainable amount subject to proof at trial.

4   **E.      Negligence**

5          1421. Plaintiffs reallege and incorporate by reference all preceding allegations

6   as though fully set forth herein.

7          1422. The National Highway Traffic Safety Administration has a self-

8   certification system of compliance where vehicle manufacturers certify their products

9   meet applicable standards.  Defendants had a duty to the general public as

10  manufacturers and sellers of automobiles, operating in a sector subject to Federal

11  regulation for the benefit and safety of the general public, to ensure that the vehicles

12  they offered for sale were compliant to all applicable Federal standards.  This duty

13  precedes the offering of any vehicle for sale in the United States and territories subject

14  to the jurisdiction of Federal Regulations and is independent of any duties arising

15  through individual contracts for sale or lease that Defendants entered into with

16  Plaintiffs' Insureds.

17         1423. Defendants breached that duty when they negligently manufactured and

18  sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required

19  by Federal standards, containing the Thief Friendly Design.

20         1424. Defendants' negligent manufacture and sale of non-compliant vehicles

21  containing the Thief Friendly Design allowed those vehicles to be targeted for theft

22  at a much higher rate than they would have if the vehicles had not been negligently

23  manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or

24  leased from Defendants were stolen, or damaged in the course of being stolen.

25         1425. As a direct and proximate result of Defendants negligence in

26  manufacturing and selling non-compliant vehicles with the Thief Friendly Design,

27  Plaintiffs were obligated by their policies of insurance with their Insureds to make

28  payments for lost or damaged Vehicles, and incurred damages in an ascertainable

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

1  amount subject to proof at trial.

2  **F.     Gross Negligence**

3      1426. Plaintiffs reallege and incorporate by reference all preceding allegations

4  as though fully set forth herein.

5      1427. Plaintiffs reallege and incorporate by reference all preceding allegations

6  as though fully set forth herein Plaintiffs and Subclass Members for each New York

7  Subclass on behalf of their Insureds reallege and incorporate by reference each

8  preceding and succeeding paragraph as though fully set forth at length herein.

9      1428. Named Subclass Members bring this count individually and on behalf of

10 the other members of the New York Subclasses against Defendants.

11     1429. The National Highway Traffic Safety Administration has a self-

12 certification system of compliance where vehicle manufacturers certify their products

13 meet applicable standards.  Motor vehicles are a significant instrumentality of

14 personal injury and property damage to consumers and the general public, and as

15 designers, manufacturers and sellers of vehicles Defendants had a duty to the general

16 public to ensure that the vehicles they offered for sale were safe and did not create a

17 substantial risk to consumers.  This duty precedes the offering of any vehicle for sale

18 in the United States and territories subject to the jurisdiction of Federal Regulations

19 and is independent of any duties arising through individual contracts for sale or lease

20 that Defendants entered into with Plaintiffs' Insureds.

21     1430. Defendants breached that duty when they manufactured and sold

22 vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by

23 Federal standards, and contained the Thief Friendly Design, where a reasonable

24 person in a similar situation and of similar level of responsibility would inescapably

25 be drawn to recognize that it was their duty to manufacture vehicles that were

26 compliant to safety and anti-theft Federal standards, as they had certified to the

27 cognizant Federal agencies, or clearly disclose to the public and consumers that their

28 Vehicles did not so comply.  Failing that duty showed a deliberate indifference by

1  Defendants to the harmful consequences to others of their actions.

2       1431. Defendants' conduct was reckess, willful and wanton because they
3  breached their duties to the general public in designing, manufacturing and selling
4  vehicles that were not compliant to applicable Federal standards for safety and anti-
5  theft, and then marketed and sold those vehicles to consumers, such as the Plaintiffs'
6  Insureds, thereby creating an unreasonable risk of harm to the general public that
7  involved a high degree of probability that the harm would result.

8       1432. Defendants' grossly negligent manufacture and sale of non-compliant
9  vehicles containing the Thief Friendly Design allowed those vehicles to be targeted
10  for theft at a much higher rate than they would have if the vehicles had not been
11  negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds
12  purchased or leased from Defendants were stolen, or damaged in the course of being
13  stolen.

14       1433. As a direct and proximate result of Defendants gross negligence and
15  reckless disregard for the safety of the public in manufacturing and selling non-
16  compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their
17  policies of insurance with their Insureds to make payments for lost or damaged
18  Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

19                    **ILLINOIS STATE LAW CLAIMS FOR RELIEF**

20       **(Alleged by  Plaintiffs, and Members of Illinois Subclasses, against All**
21                                      **Defendants)**

22       1434. Class Plaintiffs, the Hyundai Illinois Subclass and Kia Illinois Subclass,
23  and Independent Subrogation Plaintiffs allege the following causes of action against
24  All Defendants.

25       1435. The Illinois Subclasses are comprised of nationwide Hyundai and Kia
26  Class Members with claims stemming from vehicle losses (including Kia and
27  Hyundai Vehicles) due to Defendants' Thief Friendly Design, including, but not
28  limited to, the following named Class Plaintiffs:  Acuity, A Mutual Insurance

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate North American Insurance Company; Allstate Property & Casualty Insurance Company; American Alliance Casualty Company; American Family Insurance Company; American Family Connect Property & Casualty Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; Main Street America Protection Insurance Company; Midvale Indemnity Company; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; Horace Mann Insurance Company; American Access Casualty Company; GEICO General Insurance Company; GEICO Casualty Company; Alpha Property & Casualty Insurance Company; Financial Indemnity Company; Unitrin Safeguard Insurance Company; Liberty Surplus Insurance Corporation; Nationwide General Insurance Company; New Jersey Mutual Insurance Company; Artisan and Truckers Casualty Company; Progressive Hawaii Insurance Company; Progressive Paloverde Insurance Company; Progressive Northern Insurance Company; Progressive Michigan Insurance Company; Progressive Universal Insurance Company; General Casualty Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA General Indemnity Company; USAA Casualty Insurance Company; United Services Automobile Association; First Chicago Insurance Company; and United Security Health and Casualty Insurance Company; who paid policy proceeds to their respective Insureds in Illinois pursuant to policies of insurance.

## A.     Breach of Implied Warranty of Merchantability (810 Ill. Comp. Stat. 5/2-314 and 5/2A-212)

1436. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1437. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 810

ILCS 5/2-314 and 5/2A-212.

1438. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 810 ILCS 5/2-104(1) and 5/2A-103(3), and a "seller" of motor vehicles under 5/2-103(1)(d).

1439. Defendants are and were at all relevant times "lessors" of motor vehicles under 810 ILCS 5/2A-103(1)(p).

1440. Plaintiffs stand in the shoes of all Plaintiffs' Insureds who purchased or leased Vehicles in Illinois and are "buyers" within the meaning of 810 ILCS 5/2-103(1)(a), and "lessees" within the meaning of 810 ILCS 5/2A-103(1)(n).

1441. The Vehicles are and were at all relevant times "goods" within the meaning of 810 ILCS 5/2-105(1) and 5/2A-103(1)(h).

1442. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds  with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1443. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because they contained the Thief Friendly Design.  As a result, the Vehicles lacked any anti-theft features or design elements to provide an adequate theft deterrent to satisfy FMVSS 114, resulting in a substantial safety hazard making the Vehicles vulnerable to theft, and also making them prime targets to be used as

1  instrumentalities through which thieves engage in reckless driving or other criminal

2  activity.

3      1444. Any attempt by Defendants to disclaim or limit the implied warranty of

4  merchantability for their respective Vehicles with respect to consumers is

5  unconscionable and unenforceable. Specifically, Defendants' warranty limitations are

6  unenforceable because Defendants knowingly sold or leased defective Vehicles

7  without informing consumers about the Thief Friendly Design, which Defendants

8  knew existed at the time of sale. The time limits contained in Defendants' warranty

9  periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs'

10 Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in

11 determining these time limitations, the terms of which unreasonably favored

12 Defendants because of the gross disparity in bargaining power between Defendants

13 and Plaintiffs' Insureds.

14     1445. Furthermore, these circumstances caused Defendants' exclusive or

15 limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative

16 remedies. Indeed, these breaches of implied warranties denied Plaintiffs' Insureds the

17 benefit of their respective bargains, which was the possession of a vehicle for its

18 intended uses without a risk of them being stolen that was much higher than other

19 comparable vehicles that did comply with the Federal safety standards and were not

20 manufactured with the Thief Friendly Design.

21     1446. Plaintiffs have provided Defendants with reasonable notice and

22 opportunity to cure the breaches of their implied warranties. Additionally, all

23 Defendants were provided notice and opportunity to cure the issues raised in this

24 count and this Complaint by governmental investigations, numerous complaints filed

25 against them, internet videos, news reports, and the many individual notice letters sent

26 by Plaintiffs within a reasonable amount of time after the allegations of Vehicle

27 defects became public.

28     1447. Alternatively, Plaintiffs were excused from providing Defendants with

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. Therefore, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1448. The Defendants breached the implied warranty of merchantability and fitness for a particular purpose by manufacturing and selling defective Vehicles and failing to remedy the defect. As a direct and proximate result of Defendants' breach, Plaintiffs were obligated to make payments under their policies of insurance to or on behalf of their Insureds for loss of damage to their Insureds' Vehicles in the course of being stolen due to the Thief Friendly Design, and incurred damages in an amount to be proven at trial.

**B.      Breach of Express Warranty (810 ILCS 5/2-313 and 810 ILCS 5/2A-210)**

1449. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1450. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1451. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1452. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set

forth herein.

1453. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1454. As a direct and proximate result of Defendants' breach, Plaintiffs were obligated to make payments under their policies of insurance to or on behalf of their Insureds for loss of damage to their Insureds' Vehicles in the course of being stolen due to the Thief Friendly Design, and incurred damages in an amount to be proven at trial.

## C.     Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 Ill. Comp. Stat. 505/1, et seq.)

1455. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1456. Defendants, Plaintiffs and Plaintiffs' Insureds are "persons" within the meaning of 815 ILCS 505/1(c).2405. The Plaintiffs' Insureds are "consumers" within the meaning of 815 ILCS 505/1(e).

1457. The Vehicles are "merchandise" within the meaning of 815 ILCS 505/1(b).

1458. Defendants were and are engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

1459. The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices[.]" 815 ILCS 505/2.

1460. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Illinois CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design.

1461. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Illinois CFA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the decisions to buy or lease Vehicles; and

    d.    In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1462. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect thereby breaching their duties to Plaintiffs' Insureds.

1463. Defendants intended to induce Plaintiffs' Insureds to purchase the Vehicles by withholding and failing to disclose the information concerning the Thief Friendly Design that was known to Defendants at the time of advertising and selling the Vehicles.

1464. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 505/2 and 510/2:

    a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

    b.    Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

    c.    Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

    d.    Advertising the Vehicles with the intent not to sell or lease them as advertised;

    e.    Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and/or

    f.    Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived, or damaged thereby.

1465. Defendants intended for Plaintiffs' Insureds to rely on them to provide

adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1466. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers such as Plaintiffs' Insureds about the true safety, reliability, quality, and actual value of the Vehicles.

1467. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1468. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1469. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1470. As a direct result of Defendants' fraudulent and deceptive practices, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and

1 will continue to incur damages and costs and expenses, including attorney's fees, in
2 an amount to be proven at trial.

3       1471. Defendants' violations present a continuing risk to Plaintiffs and
4 Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain
5 unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices
6 described in this complaint affect the public interest.

7       1472. Pursuant to 815 ILCS 505/10a, Plaintiffs seek an order enjoining
8 Defendants' unfair or deceptive acts or practices and awarding damages and any other
9 just and proper relief available under the Illinois CFA.

10 **D.**     **Violation of the Illinois Uniform Deceptive Trade Practices Act (815 Ill.**
11          **Comp. Stat. 510/1, et seq.)**

12       1473. Plaintiffs reallege and incorporate by reference all preceding allegations
13 as though fully set forth herein.

14       1474. Defendants, Plaintiffs, and Plaintiff's Insureds are "persons" within the
15 meaning of 815 ILCS 510/1(5).

16       1475. The Illinois Uniform Deceptive Trade Practices Act ("Illinois UDTPA")
17 prohibits deceptive trade practices in the course of a business, vocation, or occupation.
18 815 ILCS 510/2(a).

19       1476. In the course of their business, Defendants, through their agents,
20 employees, and/or subsidiaries, violated the UDTPA by knowingly and intentionally
21 misrepresenting, omitting, concealing, and/or failing to disclose material facts
22 regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly
23 Design, as detailed above.

24       1477. Specifically, by misrepresenting the Vehicles as safe and/or free from
25 defects, and by failing to disclose and actively concealing the dangers and risk posed
26 by the Vehicles and the Thief Friendly Design, Defendants engaged in one or more
27 of the following unfair or deceptive business practices prohibited by 815 ILCS
28 510/2(a)(5), (7), (9), and (12):

a.   Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

b.   Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

c.   Advertising the Vehicles with the intent not to sell or lease them as advertised; and

d.   engaging in other conduct which similarly creates a likelihood of confusion or misunderstanding.

1478. Defendants' unfair and deceptive acts or practices, including their misrepresentations, concealments, omissions, and suppressions of material facts, were designed and intended to mislead, and had a tendency or capacity to mislead, and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by a Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, quality, and value of the Vehicles.

1479. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1480. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1481. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1482. As a direct result of Defendants' deceptive practices, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss of Vehicles that were lost or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to suffer ascertainable losses and actual damages and costs and expenses, including attorney's fees, in an amount to be proven at trial.

1483. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1484. Pursuant to 815 ILCS 510/3, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding other just and proper relief available under the Illinois UDTPA.

1485. Plaintiffs plead this claim separately as well as in the alternative to their claims for damages under Fed. R. Civ. P. 8(a)(3), because if Plaintiffs' claims for damages are dismissed or judgment is entered in favor of Defendants, Plaintiffs will have no adequate legal remedy.

**E.     Fraud by Omission or Concealment**

1486. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1487. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1488. Defendants had a duty to disclose the existence of the Thief Friendly Design because it was reasonably foreseeable that withholding the information that

the Vehicles were prone to theft would harm Plaintiffs' Insureds.  It was highly likely that a Vehicle with a Thief Friendly Design would be the subject of attempted theft, and since there would have been little or no burden to Defendants in making such a disclosure, it would not be unfair for them to bear the burden of making the choice to manufacture and sell Vehicles with a Thief Friendly Design.  Therefore, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds prior to them purchasing or leasing the Vehicles.

1489. Further, Defendants' superior knowledge of the Thief Friendly Design, which was not readily apparent on inspection of the Vehicle, imposed an obligation on Defendants to fully disclose the hidden material defect that was known to them.

1490. Because Defendants made representations of safety compliance in advertisements and literature provided with the Vehicles in the course of sales and leasing transactions, and on the VIN plates affixed to the Vehicles, Defendants could not leave half-truths in those representations and had a duty to disclose the full truth that the Vehicles did not have compliant anti-theft protections.

1491. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants given the Thief Friendly Design's hidden and technical nature and Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own.

1492. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

1493. Defendants had knowledge of the material fact of the Thief Friendly Design that they had a legal duty to disclose, and Defendants failed to disclose it to Plaintiffs' Insureds, intending for the Plaintiffs' Insureds to rely on their omissions

and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1494. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1495. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**F.   Negligent Misrepresentation**

1496. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1497. Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

1498. Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether or not to purchase or lease the Vehicles, and whether to take additional anti-theft precautions after such purchase or lease.

1499. Defendants manufactured the Vehicles for sale to the public and had a pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

1500. Defendants had a duty to exercise reasonable care or competence in obtaining and communicating information for the guidance of others in these business transactions.

1501. Defendants failed that duty by providing Plaintiffs' Insureds with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards. Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1502. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction.  Defendants' omission were not "innocent" mistakes of fact as they had actual knowledge of the Thief Friendly Design they manufactured into certain of their vehicles by design.

1503. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead had they known of the Thief Friendly Design in the Defendants' Vehicles.

1504. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good

reason to presume were knowledgeable about the vehicles they manufactured and sold.

1505. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

1506. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**G.      Negligence**

1507. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1508. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1509. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1510. Defendants' negligent manufacture and sale of non-compliant vehicles

containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1511. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**H.     Gross Negligence**

1512. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1513. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1514. Defendants breached that duty when they manufactured and sold vehicles to consumers, including Plaintiffs' Insureds, that did not have the anti-theft devices required by Federal standards and negligently created an extreme risk of harm to the general public, including Plaintiffs' Insureds.  Defendants knew of the high likelihood of the extreme risk that vehicles would be stolen but proceeded anyway with products intentionally designed and manufactured with a Thief Friendly Design

1    that did not comply with reasonable standards and regulations designed to protect the

2    health and safety of the general public, including Plaintiffs' Insureds.

3         1515. At the time Defendants designed, manufactured, and offered for sale

4    certain vehicles with the Thief Friendly Design they made a conscious decision to

5    disregard the substantial and known risk of those vehicles being stolen in order to

6    make profit from the sale of the Vehicles.

7         1516. Defendants' grossly negligent manufacture and sale of non-compliant

8    vehicles containing the Thief Friendly Design allowed those vehicles to be targeted

9    for theft at a much higher rate than they would have if the vehicles had not been

10   negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds

11   purchased or leased from Defendants were stolen, or damaged in the course of being

12   stolen.

13        1517. As a direct and proximate result of Defendants gross negligence and

14   reckless disregard for the safety of the public in manufacturing and selling non-

15   compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their

16   policies of insurance with their Insureds to make payments for lost or damaged

17   Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

18   ## INDIANA STATE LAW CLAIMS FOR RELIEF

19   **(Alleged by  Plaintiffs, and Members of Indiana Subclasses, against All**

20   **Defendants)**

21        1518. Class Plaintiffs, the Hyundai Indiana Subclass and Kia Indiana Subclass,

22   and Independent Subrogation Plaintiffs allege the following causes of action against

23   All Defendants.

24        1519. The Indiana Subclasses are comprised of nationwide Hyundai and Kia

25   Class Members with claims stemming from vehicle losses (including Kia and

26   Hyundai Vehicles) due to Defendants' Thief Friendly Design, including, but not

27   limited to, the following named Class Plaintiffs:  Acuity, A Mutual Insurance

28   Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity

LEGAL\67600038\1

Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; Erie Insurance Exchange; Horace Mann Property & Casualty Insurance Company; NGM Insurance Company; Permanent General Assurance Corporation; Erie Insurance Exchange; American Access Casualty Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; and First Chicago Insurance Company; all of whom paid policy proceeds to their respective Insureds for losses in Indiana pursuant to policies of insurance

**A.    Breach of Implied Warranty of Merchantability (Ind. Code §§ 26-1-2-314 and 26-1-2.1-212)**

1520. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1521. For purposes of this count, Defendants shall be referred to as "Defendants."

1522. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ind. Code §§ 26-1-2-314 and 26-1-2.1-212.

1523. Defendants were and are at all relevant times "merchants" with respect to motor vehicles under Ind. Code §§ 26-1-2.1-103(3) and 26-1-2-104(1), and "sellers" of motor vehicles under § 26-1-2-103(1)(d).

1524. Defendants were and are at all relevant times "lessors" of motor vehicles under Ind. Code § 26-1-2.1-103(1)(p).

1525. Plaintiffs stand in the shoes of their Insureds who purchased or leased Vehicles in Indiana and are "buyers" within the meaning of Ind. Code § 26-1-2-103(1)(a) and are "lessees" within the meaning of Ind. Code § 26-1-2.1-103(1)(n).

1526. The Vehicles are and were at all relevant times "goods" within the

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1   meaning of Ind. Code §§ 26-1-2.1-103(1)(h) and 26-1-2-105(1).

2      1527. Defendants knew or had reason to know of the specific use for which the

3   Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an

4   implied warranty that the Vehicles and any parts thereof were merchantable and fit

5   for the ordinary purposes for which they were sold. This implied warranty included,

6   among other things, a warranty that the Vehicles were manufactured, supplied,

7   distributed, and sold by Defendants, were safe and reliable for providing

8   transportation, would not be vulnerable to an abnormally high risk of theft and

9   complied with applicable Federal and state laws and regulations, including FMVSS

10  114.

11     1528. However, the Vehicles did not comply with the implied warranty of

12  merchantability because they were defective and not in merchantable condition,

13  would not pass without objection in the trade, and were not fit for their ordinary

14  purpose of providing reasonably reliable, safe, and secure transportation at the time

15  of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking

16  any anti-theft features or design elements to provide an adequate theft deterrent, or

17  sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the

18  Thief Friendly Design renders  Vehicles vulnerable to theft, making them prime

19  targets to be used as instrumentalities through which thieves engage in reckless

20  driving or other criminal activity.

21     1529. Any attempt by Defendants to disclaim or limit the implied warranty of

22  merchantability for their respective Vehicles with respect to consumers is

23  unconscionable and unenforceable. Specifically, Defendants' warranty limitations are

24  unenforceable because Defendants knowingly sold or leased defective Vehicles

25  without informing consumers about the Thief Friendly Design, which Defendants

26  knew about at the time of the sale or lease. The time limits contained in Defendants'

27  warranty periods were also unconscionable and inadequate to protect Plaintiffs and

28  Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful

choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds.

1530. Furthermore, these circumstances caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of implied warranties denied Plaintiffs' Insureds the benefit of their respective bargains, which was the possession of a vehicle for its intended uses without a risk of them being stolen that was much higher than other comparable vehicles that did comply with the Federal safety standards and were not manufactured with the Thief Friendly Design.

1531. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1532. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. Therefore, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1533. The Defendants breached the implied warranty of merchantability and fitness for a particular purpose by manufacturing and selling defective Vehicles and failing to remedy the defect.  As a direct and proximate result of Defendants' breach, Plaintiffs were obligated to make payments under their policies of insurance to or on

behalf of their Insureds for loss of damage to their Insureds' Vehicles in the course of being stolen due to the Thief Friendly Design, and incurred damages in an amount to be proven at trial.

**B.      Breach of Express Warranty (Indiana Code §§ 26-1-2-313 and 26-1-2.1-210)**

1534. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1535. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1536. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1537. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1538. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1539. As a direct and proximate result of Defendants' breach, Plaintiffs were obligated to make payments under their policies of insurance to or on behalf of their Insureds for loss of damage to their Insureds' Vehicles in the course of being stolen due to the Thief Friendly Design, and incurred damages in an amount to be proven at trial.

**C.      Violation of the Indiana Deceptive Consumer Sales Act (Ind. Code § 24-5-0.5-1, et seq.)**

1540. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1541. Defendants are "suppliers" within the meaning of Ind. Code § 24-5-0.5-2(a)(3).

1542. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of Ind. Code § 24-5-0.5-2(a)(2).

1543. Defendants were and are engaged in "consumer transactions" within the meaning of Ind. Code § 24-5-0.5-2(a)(1).

1544. The Vehicles were the "subject of a consumer transaction" within the meaning of Ind. Code §24-5-0.5-2(a)(4).

1545. The Indiana Deceptive Consumer Sales Act ("Indiana DCSA") prohibits a supplier from committing an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction." Ind. Code § 24-5-0.5-3(a).

1546. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Indiana DCSA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1547. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Indiana DCSA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the

material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

      a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

      b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

      c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the decisions to buy or lease Vehicles; and

      d.    In uniform advertising and materials Defendants voluntarily provided with each Vehicle, they purposefully withheld material facts and intentionally concealed, suppressed, and failed to disclose to consumers that the Vehicles contained the Thief Friendly Design, a known safety defect. Defendants had the duty to disclose the whole truth.

1548. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1549. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ind. Code §§ 24-5-0.5-3(b)(1), (2), and (11):

      a.    Representing that the Vehicles have approval, performance, characteristics, accessories, uses, or benefits that they do not have;

      b.    Representing that the Vehicles are of a particular standard, quality, and grade when they are not; and

      c.    Advertising the Vehicles can be purchased as advertised if the supplier does not intend to sell it as advertised.

1550. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles and to honestly and accurately reveal the safety hazards described above.

1551. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of the Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1552. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1553. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

1  own.

2      1554. Had they known the truth about the Thief Friendly Design, Plaintiffs'

3  Insureds would not have purchased or leased the Vehicles or would have paid

4  significantly less for them.

5      1555. To the extent the Thief Friendly Design was an uncured defect, the

6  Plaintiffs' Insureds gave requisite and timely notice to the Defendants sufficient for

7  the purposes of I.C. 24-5-0.5-5(a) through numerous complaints filed against them

8  including individual notice letters sent by consumers including within a reasonable

9  amount of time after the Thief Friendly Design became public.  After such notice,

10  there was no "offer to cure" by the Defendants to Plaintiffs' Insureds within 30 days

11  after notice was provided.

12      1556. Alternatively, the conduct of the Defendants was an incurable deceptive

13  act within the meaning of I.C. 24-5-0.5-2(a)(8) and was done by the Defendants as

14  part of a scheme, artifice, or device with intent to defraud or mislead.  Defendants

15  intentionally deceived Plaintiffs' Insureds by concealing the existence of the Thief

16  Friendly Design and making statements in the VIN plates and other materials

17  provided with the Vehicles that the Vehicles conformed to the applicable Federal

18  safety and anti-theft standards when the Defendants knew the Vehicles in fact

19  contained the Thief Friendly Designs and did not conform to the standards as

20  advertised. As such, Plaintiffs and Plaintiffs' Insureds did not have a requirement to

21  provide notice to Defendants for such incurable deceptive acts under I.C. 24-5-0.5-

22  2(7), (8); I.C. 24-5-0.5-5(a).

23      1557. As a direct and proximate result of Defendants' deceptive practices,

24  Plaintiffs were obligated by their policies of insurance with their Insureds to make

25  payments for Vehicles that were damaged or lost in the course of thefts made possible

26  by the Thief Friendly Design and suffered ascertainable losses and actual damages in

27  an amount to be proven at trial.

28      1558. Defendants' violations present a continuing risk to Plaintiffs and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Plaintiffs' Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

**D.      Fraud by Omission, Suppression and Concealment**

1559. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1560. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1561. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because a vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate that they needed to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1562. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1563. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

because:

    a.    Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

    b.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    c.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    d.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

    e.    In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1564. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably

induce them to purchase or lease Vehicles from Defendants that they otherwise may
have chosen not to acquire if they had known of the Thief Friendly Design.

1565. For the reasons set forth above, the Thief Friendly Design within the
Vehicles is material to the sale of the Vehicles because a reasonable person would
find anti-theft protection an important factor in purchasing, leasing, or retaining a new
or used motor vehicle, and because it directly impacts the value of the Vehicles
purchased or leased by the Plaintiffs' Insureds.

1566. Defendants intended for the Plaintiffs' Insureds to rely on their
omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing
the Vehicles at prices that they believed included anti-theft protection and not a Thief
Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1567. Plaintiffs' Insureds' reliance was reasonable, as they had no way of
discerning or otherwise learning the facts that Defendants had concealed or failed to
disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on
their own.

1568. Defendants actively concealed and suppressed these material facts, in
whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid
costly recalls that would expose them to liability for those expenses and harm the
commercial reputations of Defendants and their products. They did so at the expense
of Plaintiffs and Plaintiffs' Insureds.

1569. If Defendants had fully and adequately disclosed the Thief Friendly
Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1570. As a direct and proximate result of Defendants' omissions, Plaintiffs
were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for
damage to or loss of Vehicles that were stolen or damaged in the course of being
stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered
ascertainable losses and actual damages as a direct and proximate result of
Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose

material information.

**E.     Negligent Misrepresentation**

1571. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein. Defendants were the manufactures and sellers of the Vehicles, and did enter into a buyer-seller relationship with the Plaintiffs' Insureds, and each of them, for the purchase or lease of the Vehicles.

1572. Because Defendants designed, manufactured, and sold the Vehicles, and self-certified the Vehicles to the Federal agencies responsible for compliance with automobile safety and anti-theft standards, Defendants had knowledge of the Thief Friendly Design that could not have been known to the Plaintiffs' Insureds and therefore were in a position of superiority to them.

1573. Defendants negligently remained silent and failed to inform Plaintiffs' Insureds of the Thief Friendly Design when they had a duty to speak due to their superior position and knowledge.

1574. The Plaintiffs' Insureds relied upon the incomplete statements made by the Defendants in not disclosing that the Vehicles did not comply with all Federal safety and anti-theft standards and in fact had a Thief Friendly Design.  Plaintiffs' Insureds' reliance was reasonable as the Thief Friendly Design was non-obvious, hidden, and could not have been detected by the Plaintiffs' Insureds with the normal inspection of a consumer upon purchase or lease of a vehicle.

1575. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt that Defendants had knowledge of the truth about the Vehicles' features when Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1576. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who

had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead if they had known of the Thief Friendly Design in the Defendants' Vehicles.

1577. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

1578. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**F.      Negligence**

1579. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1580. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.   This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1581. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1582. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1583. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**G.    Gross Negligence**

1584. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1585. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards. Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1586. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they

purchased or leased it for.

1587. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

1588. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1589. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1590. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## **IOWA STATE LAW CLAIMS FOR RELIEF**

**(Alleged by  Plaintiffs, and Members of Iowa Subclasses, against All Defendants)**

1591. Class Plaintiffs, the Hyundai Iowa Subclass and Kia Iowa Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1592. The Iowa Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

Hyundai Vehicles) in Iowa due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; Permanent General Assurance Corporation; Artisan and Truckers Casualty Company; Progressive Northern Insurance Company; Progressive Universal Insurance Company; Garrison Property & Casualty Insurance Company; and USAA General Indemnity Company; who paid policy proceeds to their respective Insureds  in Iowa pursuant to policies of insurance.

## A.      Breach of Implied Warranty (Iowa Code §§ 554.2314 and 554.13212)

1593. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1594. Defendants were at all relevant times "merchants" with respect to motor vehicles under Iowa Code §§ 554.2104(1) and 554.13103(3), and "sellers" of motor vehicles under § 554.2103(1)(d).

1595. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Iowa Code § 554.13103(1)(p).

1596. The Vehicles are and were at all relevant times "goods" within the meaning of Iowa Code §§ 554.2105(1) and 554.13103(1)(h).

1597. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Iowa Code §§ 554.2314 and 554.13212.

1598. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds    with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied,

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1599. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders  Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1600. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs and Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1601. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs'

Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1602. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1603. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1604. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability and fitness for particular purpose, Plaintiffs' Vehicles were and are defective, and the Thief Friendly Design in their Vehicles has not been remedied. As a result, Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**B.     Breach of Express Warranty (Iowa Code §§ 554.2313 and 554.13210)**

1605. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1606. During the relevant time period described above, Plaintiffs' Insureds

1  purchased or leased Vehicles.

2      1607. These Vehicles were manufactured by Defendants during the relevant

3  time period described above. Through the attachment of VIN plates, Defendants made

4  an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor

5  vehicle safety, bumper, and theft prevention standards in effect on the date of

6  manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

7  Vehicle is provided above. On information and belief, similar written warranties were

8  made prior to, or at the point of sale for all Vehicles.

9      1608. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

10  them in accordance with the normal operation of the Vehicles and did not mishandle

11  or otherwise damage the Vehicles in any way that is material to the allegations set

12  forth herein.

13      1609. The Vehicles did not perform as promised in accordance with

14  Defendants' express warranty, as it has become common knowledge that they are

15  capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

16  applicable motor vehicle safety, and theft prevention standards in effect on the date

17  of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily

18  stolen, and thus failed to perform to the terms of the express warranty described in the

19  Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable

20  anti-theft standards.

21      1610. As a direct and proximate result of Defendants' breach of their express

22  warranty to Plaintiffs' Insureds, the Vehicles were stolen or damaged in the course of

23  being stolen.  As a result, Plaintiffs were obligated under their policies of insurance

24  with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course

25  of being stolen, and incurred damages of ascertainable value in an amount according

26  to proof at trial.

27

28

**C.     Violation of the Private Right of Action for Consumer Frauds Act (Iowa Code § 714h.1, et seq.)**

1611.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1612.  Defendants, Plaintiffs, and Plaintiff's Insureds are "persons" within the meaning of Iowa Code § 714H.2(7).

1613.  Plaintiffs' Insureds are "consumers" within the meaning of Iowa Code § 714H.2(3).

1614.  The Vehicles are "merchandise" and "consumer merchandise" within the meanings of Iowa Code § 714H.2(4), and (6).

1615.  The Iowa Private Right of Action for Consumer Frauds Act (the "Iowa CFA") prohibits a person from engaging in any "practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise." Iowa Code § 714H.3(1).

1616.  In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Iowa CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1617.  Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair practices, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of a material fact under the Iowa CFA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief

1    Friendly Design in the Vehicles because, as detailed above:

2              a.    Defendants had exclusive access to and far superior knowledge
3                    about

4              b.    facts regarding the Thief Friendly Design and Defendants knew
5                    these facts were not known to or reasonably discoverable by
6                    Plaintiffs' Insureds;

7              c.    Given the Thief Friendly Design's hidden and technical nature,
8                    Plaintiffs' Insureds lack the sophisticated expertise in vehicle
9                    components that would be necessary to discover the Thief
10                   Friendly Design on their own;

11             d.    Defendants knew that the Thief Friendly Design gave rise to safety
12                   concerns for the consumers who use the Vehicles, and the Thief
13                   Friendly Design would have been a material fact to the decisions
14                   to buy or lease Vehicles; and

15             e.    In uniform advertising and materials provided with each Vehicle,
16                   Defendants intentionally concealed, suppressed, and failed to
17                   disclose to the consumers that the Vehicles contained the Thief
18                   Friendly Design. Because they volunteered to provide information
19                   about the Vehicles that they marketed and offered for sale and
20                   lease to consumers, Defendants had the duty to disclose the whole
21                   truth.

22        1618. As detailed above, the information concerning the Thief Friendly Design
23   was known to Defendants at the time of advertising and selling the Vehicles, all of
24   which was intended to induce consumers to purchase the Vehicles.

25        1619. By misrepresenting the Vehicles as safe and reliable and by failing to
26   disclose and actively concealing the dangers and risks posed by the Thief Friendly
27   Design, Defendants engaged in deceptive acts or practices including, but not limited
28   conduct prohibited by Iowa Code § 714H.3(1).

1620. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1621. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1622. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1623. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1624. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1625. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

1626. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1627. Pursuant to Iowa Code § 714H.5, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages and any other just and proper relief available under the Iowa CFA.

**D.     Fraud by Omission, Suppression or Concealment**

1628. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1629. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1630. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1631. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1632. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

    i.    Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and the false representation of Federal compliance made in advertising and the VIN plate;

    ii.    Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

    iii.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    iv.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    v.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

    vi.    In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1633. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

1634. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

1635. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1636. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1637. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1638. If Defendants had fully and adequately disclosed the Thief Friendly

1   Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2       1639. As a direct and proximate result of Defendants' omissions, Plaintiffs

3   were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for

4   damage to or loss of Vehicles that were stolen or damaged in the course of being

5   stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered

6   ascertainable losses and actual damages as a direct and proximate result of

7   Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose

8   material information.

9   **E.    Negligent Misrepresentation**

10       1640. Plaintiffs reallege and incorporate by reference all preceding allegations

11   as though fully set forth herein.

12       1641. Defendants were in the business of supplying information in connection

13   with transactions in which they had a pecuniary interest.

14       1642. Defendants created and disseminated information about the Vehicles to

15   the public, consumers and to Plaintiffs' Insureds that described the Vehicles as

16   compliant to Federal standards for safety and anti-theft.  This information was used

17   by consumers and Plaintiffs' Insureds to inform their business decisions as to whether

18   or not to purchase or lease the Vehicles, and whether to take additional anti-theft

19   precautions after such purchase or lease.

20       1643. Defendants manufactured the Vehicles for sale to the public and had a

21   pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

22       1644. Defendants had a duty to exercise reasonable care or competence in

23   obtaining and communicating information for the guidance of others in these business

24   transactions.

25       1645. Defendants failed that duty by providing Plaintiffs' Insureds with false

26   or incorrect information when they stated the Vehicles complied with all Federal

27   Standards for safety and anti-theft, when they had information available to them that

28   the Vehicles did not contain an anti-theft immobilizer required by those standards.

Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

1646. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction.

1647. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead had they known of the Thief Friendly Design in the Defendants' Vehicles.

1648. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold.

1649. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

1650. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being

stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**F.     Negligence**

1651. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1652. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1653. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1654. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1655. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

**G.      Gross Negligence**

1656. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1657. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1658. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

1659. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

1660. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1661. Defendants' grossly negligent manufacture and sale of non-compliant

vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1662. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## **KANSAS STATE LAW CLAIMS FOR RELIEF**

### **(Alleged by  Plaintiffs, and Members of Kansas Subclasses, against All Defendants)**

1663. Class Plaintiffs, the Hyundai Kansas Subclass and Kia Kansas Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1664. The Kansas Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Kansas due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; Permanent General Assurance Corporation; GEICO Choice Insurance Company; GEICO Advantage Insurance Company; Teachers Insurance Company; Response Insurance Company; Unitrin Safeguard Insurance Company; Allied Property & Casualty Insurance Company; Nationwide Mutual Insurance Company;

Progressive Northern Insurance Company; Progressive Direct Insurance Company; Progressive Northwestern Insurance Company; Garrison Property & Casualty Insurance Company; and USAA General Indemnity Company who paid policy proceeds to their respective Insureds in Kansas pursuant to policies of insurance.

## A.      Breach of Implied Warranty (Kan. Stat. Ann. §§ 84-2-314 and 84-2A-212)

1665. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1666. For purposes of this count, Defendants together shall be referred to as "Defendants."

1667. Defendants were at all relevant times "merchants" with respect to motor vehicles under Kan. Stat. Ann. §§ 84-2-104(1) and 84-2A-103(3), and "sellers" of motor vehicles under § 84-2-103(1)(d).

1668. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Kan. Stat. Ann. § 84-2A-103(1)(p).

1669. The Vehicles are and were at all relevant times "goods" within the meaning of Kan. Stat. Ann. §§ 84-2-105(1) and 84-2A-103(1)(h).

1670. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Kan. Stat. Ann. §§ 84- 2-314 and 84-2A-212.

1671. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1672. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders  Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1673. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1674. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1675. Plaintiffs have provided Defendants with reasonable notice and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1676. Alternatively, Plaintiffs  were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their  Vehicles to them for repair.

1677. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability and fitness for particular purpose, Plaintiffs' Vehicles were and are defective, and the Thief Friendly Design in their Vehicles has not been remedied. As a result, Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**B.      Breach of Express Warranty (Kan. Stat. Ann. §§ 84-2-2-313 and 84-2a-210)**

1678. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1679. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1680. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1681. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1682. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1683. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1684. As a direct and proximate result of Defendants' breach of their express warranty, the Vehicles were stolen, and either lost or damaged in the course of being stolen. As a result, Plaintiffs were obligated under their policies of insurance with Plaintiffs' Insureds to make payments for lost or damaged Vehicles and have incurred and will continue to incur damages in an ascertainable amount, in addition to costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

**C.     Violation of the Kansas Consumer Protection Act (Kan. Stat. Ann. § 50-623, et seq.)**

1685. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1686. Defendants are "suppliers" within the meaning of Kan. Stat. Ann. § 50-624(l). The Class Members are "consumers" within the meaning of Kan. Stat. Ann. § 50-624(b).

1687. Defendants, Plaintiffs' Insureds and Plaintiffs are all "persons" within the meaning of Kan. 11 Stat. Ann. § 50-624(i).

1688. The sale or lease of the Vehicles is a "consumer transaction" within the meaning of Kan. Stat. Ann. § 50-624(c).

1689. The Kansas Consumer Credit and Protection Act ("Kansas CPA") states "[n]o supplier shall engage in any deceptive act or practice in connection with a consumer transaction." Kan. Stat. Ann. § 50-626(a).

1690. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Kansas CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1691. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Kansas CPA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

a.     Defendants had exclusive access to and far superior knowledge about

b. facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

d. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

e. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1692. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1693. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more unconscionable acts or practices prohibited by Kan. Stat. Ann. § 50-626(b)(1)(A)(D), (F), (G), (b)(3), (b)(5).

a. Representing that the Vehicles had approval, accessories, characteristics, uses, or benefits that they do not have;

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

      b.    Representing that the Vehicles are of a particular standard or quality that they do not have; and

      c.    Representing that the Vehicles have uses, benefits or characteristics that Defendants knew they did not have;

      d.    Failing to state material facts or willfully concealing, suppressing, or omitting material facts regarding the Vehicles; and

      e.    Offering the Vehicles without the intent to sell them as advertised.

1694. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1695. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds and Class Members, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1696. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1697. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above.

1 Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their
2 own.

3     1698. Had they known the truth about the Thief Friendly Design, Plaintiffs'
4 Insureds would not have purchased or leased the Vehicles or would have paid
5 significantly less for them.

6     1699. As a direct and proximate result of Defendants' deceptive acts and
7 practices, the Vehicles contained the Thief Friendly Design and were stolen or
8 attempted to be stolen.  Plaintiffs were obligated under their policies of insurance with
9 Plaintiffs' Insureds make payments for Vehicles lost or damaged in the course of
10 being stolen and suffered ascertainable losses and actual damages in an amount
11 subject to proof at trial.

12     1700. Defendants' violations present a continuing risk to Plaintiffs and
13 Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain
14 unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices
15 complained of herein affect the public interest.

16     1701. Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive
17 acts or practices, and awarding damages and any other just and proper relief available
18 under the Kansas CPA. Kan. Stat. Rev. § 50-634.

19 **D.    Fraud by Omission, Suppression or Concealment**

20     1702. Plaintiffs reallege and incorporate by reference all preceding allegations
21 as though fully set forth herein.

22     1703. As the manufacturers of the Vehicles, Defendants were aware of the
23 Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs'
24 Insureds.

25     1704. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs
26 in connection with the sale of the Vehicles because the Vehicles' compliance with
27 Federal standards are facts basic to the transaction.  The public would expect that all
28 new vehicles in the marketplace offered by large manufacturers who sell to the public

would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1705. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1706. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

a. Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and the false representation of Federal compliance made in advertising and the VIN plate;

b. Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

c. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

d.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

e.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

f.   In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1707. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

1708. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

1709. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief

Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1710. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1711. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1712. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1713. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.      Negligent Misrepresentation**

1714. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1715. Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

1716. Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether

1  or not to purchase or lease the Vehicles, and whether to take additional anti-theft

2  precautions after such purchase or lease.

3      1717. Defendants manufactured the Vehicles for sale to the public and had a

4  pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

5      1718. Defendants had a duty to exercise reasonable care or competence in

6  obtaining and communicating information for the guidance of others in these business

7  transactions.

8      1719. Defendants failed that duty by providing Plaintiffs' Insureds with false

9  or incorrect information when they stated the Vehicles complied with all Federal

10 Standards for safety and anti-theft, when they had information available to them that

11 the Vehicles did not contain an anti-theft immobilizer required by those standards.

12 Further, Defendants omitted or failed to disclose material information when they did

13 not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

14     1720. At the time that Defendants made the incorrect statements or omissions

15 of fact, they had failed to exercise reasonable care or competence in confirming that

16 the information provided to Plaintiffs' Insureds to guide their business transaction was

17 actually true.  Further, Defendants had access to the correct information at the time

18 they made the statements and omissions and negligently failed to confirm the truth of

19 the statements they made about the Vehicles anti-theft compliance before negligently

20 providing misleading and false information to the Plaintiffs' Insureds in the course of

21 the business transaction.

22     1721. The Vehicles' compliance with Federal Standards for safety and anti-

23 theft were material facts to the lease or purchase of the Vehicles by consumers, who

24 had many other vehicles in the marketplace to choose from that did in fact comply

25 with the standards as advertised and that Plaintiffs' Insureds may have chosen instead

26 had they known of the Thief Friendly Design in the Defendants' Vehicles.

27     1722. Plaintiffs' Insureds were justified in relying on the misrepresentations

28 and omissions of Defendants because the information presented by Defendants in the

course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold.

1723. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

1724. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**F.    Negligence**

1725. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1726. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1727. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

by Federal standards, containing the Thief Friendly Design.

1728. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1729. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## G.    Gross Negligence

1730. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1731. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1732. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs'

Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

1733. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

1734. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1735. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1736. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## KENTUCKY STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Kentucky Subclasses, against All Defendants)

1737. Class Plaintiffs, the Hyundai Kentucky Subclass and Kia Kentucky Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1738. The Kentucky Subclasses are comprised of nationwide Hyundai and Kia

Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Kentucky due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Acuity, A Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; Allstate Property & Casualty Insurance Company; American Family Mutual Insurance Company, S.I.;  Erie Insurance Exchange; Erie Insurance Property & Casualty Company; Unitrin Safeguard Insurance Company; Financial Indemnity Company; Unitrin Auto and Home Insurance Company; Progressive Direct Insurance Company; Progressive Casualty Insurance Company; Progressive Paloverde Insurance Company; Progressive Specialty Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Kentucky pursuant to policies of insurance.

**A.      Breach of Implied Warranty (Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212)**

1739. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1740. Defendants were at all relevant times "merchants" with respect to motor vehicles under Ky. Rev. Stat. §§ 355.2-104(1) and 355.2A-103(3), and "sellers" of motor vehicles under § 355.2-103(1)(d).

1741. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Ky. Rev. Stat. § 355.2A-103(1)(p).

1742. The Vehicles are and were at all relevant times "goods" within the meaning of Ky. Rev. Stat. §§ 355.2-105(1) and 355.2A-103(1)(h).

1743. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Ky. Rev. Stat. §§ 335.2-314 and 355.2A-212.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1744. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1745. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders  Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1746. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds  had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1747. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever present risk of them being stolen.

1748. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1749. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1750. The Defendants breached the implied warranty of merchantability and fitness for particular purpose by manufacturing and selling defective Vehicles that contained the Thief Friendly Design and failing to remedy the defect.  As a direct and proximate result of Defendants' breach, Plaintiffs were obligated by their policies of insurance with Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design.

1 As a result, Plaintiffs have incurred and will continue to incur damages and costs and

2 expenses, including attorney's fees, in an amount to be proven at trial.

3 **B.     Breach of Express Warranty (Ky. Rev. Stat. §§ 355.2-313 and 355.2A-210)**

4     1751. Plaintiffs reallege and incorporate by reference all preceding allegations

5 as though fully set forth herein.

6     1752. During the relevant time period described above, Plaintiffs' Insureds

7 purchased or leased Vehicles.

8     1753. These Vehicles were manufactured by Defendants during the relevant

9 time period described above. Through the attachment of VIN plates, Defendants made

10 an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor

11 vehicle safety, bumper, and theft prevention standards in effect on the date of

12 manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

13 Vehicle is provided above. On information and belief, similar written warranties were

14 made prior to, or at the point of sale for all Vehicles.

15     1754. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

16 them in accordance with the normal operation of the Vehicles and did not mishandle

17 or otherwise damage the Vehicles in any way that is material to the allegations set

18 forth herein.

19     1755. The Vehicles did not perform as promised in accordance with

20 Defendants' express warranty, as it has become common knowledge that they are

21 capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

22 applicable motor vehicle safety, and theft prevention standards in effect on the date

23 of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily

24 stolen, and thus failed to perform to the terms of the express warranty described in the

25 Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable

26 anti-theft standards.

27     1756. As a direct and proximate result of Defendants' breach of their express

28 warranty, the Vehicles were stolen, and either lost or damaged in the course of being

stolen. As a result, Plaintiffs were obligated under their policies of insurance with Plaintiffs' Insureds to make payments for lost or damaged Vehicles and have incurred and will continue to incur damages in an ascertainable amount, in addition to costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants.

**C.   Violation of the Consumer Protection Act (Kentucky Rev. Stat. § 367.110, et seq.)**

1757. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1758. Defendants, Plaintiffs and Plaintiffs' Insureds are each a "person" within the meaning of Kentucky Rev. Stat. § 367.110(1).

1759. Defendants are engaged in "trade" and "commerce" within the meaning of Kentucky Rev. Stat. § 367.110(2).

1760. The Kentucky Consumer Protect Action ("Kentucky CPA") states that "[u]nfair, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." Kentucky Rev. Stat. § 367.170.

1761. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Kentucky CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1762. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair, misleading, or deceptive practices under the Kentucky CPA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

      a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1       knew these facts were not known to or reasonably discoverable by

2       Plaintiffs' Insureds;

3    b.  Given the Thief Friendly Design's hidden and technical nature,

4       Plaintiffs' Insureds lack the sophisticated expertise in vehicle

5       components that would be necessary to discover the Thief

6       Friendly Design on their own;

7    c.  Defendants knew that the Thief Friendly Design gave rise to safety

8       concerns for the consumers who use the Vehicles, and the Thief

9       Friendly Design would have been a material fact to the decisions

10      to buy or lease  Vehicles; and

11    d.  In uniform advertising and materials provided with each Vehicle,

12       Defendants intentionally concealed, suppressed, and failed to

13       disclose to the consumers that the Vehicles contained the Thief

14       Friendly Design. Because they volunteered to provide information

15       about the Vehicles that they marketed and offered for sale and

16       lease to consumers, Defendants had the duty to disclose the whole

17       truth.

18   1763. As detailed above, the information concerning the Thief Friendly Design

19 was known to Defendants at the time of advertising and selling the Vehicles, all of

20 which was intended to induce consumers to purchase the Vehicles.

21   1764. By misrepresenting the Vehicles as safe and reliable and free from

22 defects, and by failing to disclose and actively concealing the dangers and risk posed

23 by the Thief Friendly Design, Defendants engaged in unfair, misleading, or deceptive

24 acts or practices in the conduct of trade and commerce as prohibited by Kentucky

25 Rev. Stat. § 367.170(1).

26   1765. Defendants intended for Plaintiffs' Insureds to rely on them to provide

27 adequately designed Vehicles, and to honestly and accurately reveal the safety

28 hazards described above.

375     Case No. 8:22-ML-3052-JVS(KESx).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

1766. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, quality, and true value of the Vehicles.

1767. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1768. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1769. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

1770. As a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information, the Vehicles were stolen, or attempted to be stolen. Plaintiffs were obligated under their policies of insurance with their Insureds to make payments for lost or damaged vehicles, in an ascertainable amount subject to proof at trial.

1771. Defendants' violations present a continuing risk to Plaintiffs' Insureds,

as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1772. Pursuant to Kentucky Rev. Stat. § 367.220, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Kentucky CPA.

**D.    Fraud by Omission, Suppression or Concealment**

1773. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1774. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1775. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1776. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1777. Defendants knew that Plaintiffs' Insureds could not reasonably have

been expected to know of the Thief Friendly Design in the absence of a disclosure by
Defendants. Defendants further had a duty to disclose the Thief Friendly Design
because:

    a.    Defendants knew that unless they disclosed the Thief Friendly
Design that Plaintiff's Insureds would rely on usage of trade, and
the false representation of Federal compliance made in advertising
and the VIN plate;

    b.    Defendants knew the Plaintiff's Insureds were about to enter into
transactions to purchase or lease Vehicles under a mistake of fact
that the Vehicles complied with Federal Safety and anti-theft
standards, in circumstances where Plaintiff's Insureds would
reasonably expect a disclosure of the truth;

    c.    Defendants had exclusive access to and far superior knowledge
about facts regarding the Thief Friendly Design and Defendants
knew these facts were not known to or reasonably discoverable by
Plaintiffs' Insureds;

    d.    Given the Thief Friendly Design's hidden and technical nature,
Plaintiffs' Insureds lack the sophisticated expertise in vehicle
components that would be necessary to discover the Thief
Friendly Design on their own;

    e.    Defendants knew that the Thief Friendly Design gave rise to safety
concerns for the consumers who use the Vehicles, and the Thief
Friendly Design would have been a material fact to the Plaintiffs'
Insureds decisions to buy or lease Vehicles; and

    f.    In uniform advertising and materials provided with each Vehicle,
Defendants intentionally concealed, suppressed, and failed to
disclose to the consumers that the Vehicles contained the Thief
Friendly Design. Because they volunteered to provide information

about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1778. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

1779. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

1780. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1781. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1782. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1783. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1784. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.     Negligent Misrepresentation**

1785. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1786. Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

1787. Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether or not to purchase or lease the Vehicles, and whether to take additional anti-theft precautions after such purchase or lease.

1788. Defendants manufactured the Vehicles for sale to the public and had a pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

1789. Defendants had a duty to exercise reasonable care or competence in obtaining and communicating information for the guidance of others in these business transactions.

1790. Defendants failed that duty by providing Plaintiffs' Insureds with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards. Further, Defendants omitted or failed to disclose material information when they did

1  not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

2  1791. At the time that Defendants made the incorrect statements or omissions

3  of fact, they had failed to exercise reasonable care or competence in confirming that

4  the information provided to Plaintiffs' Insureds to guide their business transaction was

5  actually true.  Further, Defendants had access to the correct information at the time

6  they made the statements and omissions and negligently failed to confirm the truth of

7  the statements they made about the Vehicles anti-theft compliance before negligently

8  providing misleading and false information to the Plaintiffs' Insureds in the course of

9  the business transaction.

10  1792. The Vehicles' compliance with Federal Standards for safety and anti-

11  theft were material facts to the lease or purchase of the Vehicles by consumers, who

12  had many other vehicles in the marketplace to choose from that did in fact comply

13  with the standards as advertised and that Plaintiffs' Insureds may have chosen instead

14  had they known of the Thief Friendly Design in the Defendants' Vehicles.

15  1793. Plaintiffs' Insureds were justified in relying on the misrepresentations

16  and omissions of Defendants because the information presented by Defendants in the

17  course of the transaction did not appear untrue at face value, and they had no reason

18  to doubt the authenticity of the statements provided by Defendants who they had good

19  reason to presume were knowledgeable about the vehicles they manufactured and

20  sold.

21  1794. Plaintiffs' Insureds relied on the negligent misrepresentations of

22  Defendants when they purchased or leased Vehicles they believed were adequately

23  protected from theft in accordance with Federal standards, when in fact the Vehicles

24  were easy to steal and were stolen at a much higher incidence than other vehicles that

25  did comply with the Federal standards.

26  1795. Plaintiffs were obligated under their policies of insurance with their

27  Insureds to pay for the stolen Vehicles, or for Vehicles damaged in the course of being

28  stolen, and incurred damages of ascertainable value in an amount according to proof

1  at trial.

2  **F.    Negligence**

3     1796. Plaintiffs reallege and incorporate by reference all preceding allegations
4  as though fully set forth herein.

5     1797. The National Highway Traffic Safety Administration has a self-
6  certification system of compliance where vehicle manufacturers certify their products
7  meet applicable standards.  Defendants had a duty to the general public as
8  manufacturers and sellers of automobiles, operating in a sector subject to Federal
9  regulation for the benefit and safety of the general public, to ensure that the vehicles
10  they offered for sale were compliant to all applicable Federal standards.  This duty
11  precedes the offering of any vehicle for sale in the United States and territories subject
12  to the jurisdiction of Federal Regulations and is independent of any duties arising
13  through individual contracts for sale or lease that Defendants entered into with
14  Plaintiffs' Insureds.

15     1798. Defendants breached that duty when they negligently manufactured and
16  sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required
17  by Federal standards, containing the Thief Friendly Design.

18     1799. Defendants' negligent manufacture and sale of non-compliant vehicles
19  containing the Thief Friendly Design allowed those vehicles to be targeted for theft
20  at a much higher rate than they would have if the vehicles had not been negligently
21  manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or
22  leased from Defendants were stolen, or damaged in the course of being stolen.

23     1800. As a direct and proximate result of Defendants negligence in
24  manufacturing and selling non-compliant vehicles with the Thief Friendly Design,
25  Plaintiffs were obligated by their policies of insurance with their Insureds to make
26  payments for lost or damaged Vehicles, and incurred damages in an ascertainable
27  amount subject to proof at trial.

28

## G.      Gross Negligence

1801. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1802. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1803. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

1804. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

1805. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1806. Defendants' grossly negligent manufacture and sale of non-compliant

vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1807. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## LOUISIANA STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Louisiana Subclasses, against All Defendants)

1808. Class Plaintiffs, the Hyundai Louisiana Subclass and Kia Louisiana Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1809. The Louisiana Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (of Kia and Hyundai Vehicles) in the State of Louisiana due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate County Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; Erie Insurance Exchange; Horace Mann Insurance Company; American Access Casualty Company; Financial Indemnity Company; Unitrin Auto and Home Insurance Company; Peerless Insurance Company; New Jersey Manufacturers Insurance Company; Mountain Laurel Assurance Company; Progressive Paloverde Insurance Company; Progressive

Security Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Louisiana pursuant to policies of insurance.

## A.     Breach of Implied Warranty of Merchantability/Warranty (La. Civ. Code Art. 2520, 2524)

1810. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1811. Defendants were at all relevant times "merchants" with respect to motor vehicles.

1812. The Vehicles had an implied warranty pursuant to The Louisiana Civil Code, La. C.C. § 2520, which provides an implied warranty, or "redhibition," for all things sold.  Specifically, a seller impliedly warrants the buyer against all redhibitory vices and defects.

1813. Upon manufacture, and before sale or lease to the Plaintiffs' Insureds, the Defendants designed and manufactured the Vehicles with the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1814. The lack of anti-theft compliance allowed the Vehicles to be quickly and easily stolen.  This fact became quickly well known and rendered the Vehicles so useless and inconvenient through the frequent theft and attempted thefts, that the Plaintiffs' Insureds would not have purchased the Vehicles if they had known of the defect, or would have paid substantially less on their purchase or lease.

1815. Under La. C.C. § 2521 the Thief Friendly Design was a redhibitory

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

defect in that it was not disclosed to the Plaintiffs' Insureds and could not have been discovered by any reasonably prudent buyer, including Plaintiffs' Insureds, because The Thief Friendly Design was of a technical nature and hidden within the Vehicle where it could not be observed upon a normal visual inspection, and could only have been discovered with technical expertise in vehicle components that Plaintiffs' Insured and the reasonable consumer did not have.

1816. In addition, the VIN plate affixed to the Vehicle that Plaintiffs' Insureds could easily see stated that the Vehicle complied with all applicable Federal safety and anti-theft standards.  Defendants had a duty to disclose the falsity of that statement because their concealment caused it to be misleading.

1817. Additionally, pursuant to La. C.C. § 2524 and 2529 the Defendants had a duty and implied warranty to Plaintiffs' Insureds that the Vehicles must be reasonably fit for its intended use; and it must be of the particular kind or quality if such was specified in the sale.  The Vehicles were not fit for their intended use of safe, reliable transportation because they were easily stolen and could be lost or damaged at any time.

1818. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties.  Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1819. In addition, pursuant to La. C.C. §§ 2522 and 2545 Plaintiffs and Plaintiffs' Insureds were not required to provide formal notice because the Defendants had actual notice of the defect where they were the manufacturer and it was a design feature they included in some vehicles, but intentionally omitted from the Vehicles purchased or leased by Plaintiffs' Insureds, and as such were deemed to have known

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1    of the defect.

2    　　1820. Alternatively, Plaintiffs were excused from providing Defendants with

3    notice and an opportunity to cure the breach, because it would have been futile. As

4    alleged throughout Plaintiffs' Complaint, Defendants have long known that the

5    Vehicles contained the Thief Friendly Design; however, to date, Defendants have not

6    instituted an adequate and meaningful repair program with respect to the Vehicles. As

7    such, Plaintiffs had no reason to believe that Defendants would have adequately

8    repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

9    　　1821. The implied warranty of redhibition was not effectively excluded or

10   limited by any sales or lease agreement executed with the Plaintiffs' Insureds because

11   the notice of the Thief Friendly Design was not provided in the clear and unambiguous

12   manner required by law and was not brought to the attention of the Plaintiffs'

13   Insureds.  In addition, because the Vehicle did not comply with the Federal Standards

14   as stated on the VIN plates, it was not of the quality declared in the sale and pursuant

15   to La. C.C. § 2548 no exclusion may be made.

16   　　1822. As a direct and proximate result of Defendants' breach of the implied

17   warranties against redhibitory defects and fitness for particular purpose, Plaintiffs

18   were obligated by their policies of insurance with Plaintiffs' Insureds to pay for

19   damage to or loss of Vehicles that were stolen or damaged in the course of being

20   stolen because of the Thief Friendly Design.

21   　　1823. As a result, Plaintiffs have incurred and will continue to incur damages

22   and costs and expenses, including attorney's fees, in an amount to be proven at trial,

23   and herein demand full reimbursement of monies paid for lost or damaged Vehicles,

24   reasonable expense, damages and attorney's fees in accordance with La. C.C. §§ 2541

25   – 2545.

26   **B.    Breach of Express Warranty under La. C.C. § 2529**

27   　　1824. Plaintiffs reallege and incorporate by reference all preceding allegations

28   as though fully set forth herein.

1825. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1826. "Under Louisiana law, an express warranty exists where the manufacturer of a good voluntarily undertakes and extends a guarantee to customers." *Purvis v. Teva Pharm., USA, Inc*., 901 F.Supp.2d 716 (M.D. La.2012).

1827. Additionally, Louisiana's Civil Code also states, "[w]hen the thing the seller has delivered, though in itself free from redhibitory defects, is not of the kind or quality specified in the contract or represented by the seller, the rights of the buyer are governed by other rules of sale and conventional obligations." La. C.C. § 2529. For example, when a defect is material to a plaintiffs' decision to purchase a product or thing, it constitutes a breach of contract pursuant to La. C.C. § 2529. *Swoboda v. SMT Properties, L.L.C*., 42,746 (La.App. 2 Cir. 1/30/08); 975 So.2d 691, writ denied, 2008-0719 (La. 5/30/08); 983 So.2d 899.

1828. The Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1829. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1830. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date

of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1831. As a direct and proximate result of Defendants breach of their express warranty, Plaintiffs were obligated by their policies of insurance to pay for Plaintiffs' Insureds' Vehicles that were stolen or damaged in the course of being stolen and have incurred and will continue to incur damages and costs and expenses, including attorney's fees, in ascertainable amounts subject to proof at trial.

**C.     Violation of the Louisiana Unfair Trade Practices and Consumer Protection Law (La. Rev. Stat. § 51:1401, et seq.)**

1832. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1833. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of La. Rev. Stat. § 51:1402(8).

1834. Plaintiffs stand in the shoes of their Insureds who are "consumers" within the meaning of La. Rev. Stat. § 51:1402(1)

1835. Defendants were and are engaged in "trade" and "commerce" within the meaning of La. Rev. Stat. § 51:1402(10)(a).

1836. The sale or lease of the Vehicles by Defendants are "consumer transactions" within the meaning of La. Rev. Stat. § 51:1402(3).

1837. The Louisiana Unfair Trade Practices and Consumer Protection Law ("Louisiana CPL") states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." La. Rev. Stat. § 51:1405(A).

1838. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Louisiana CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

1839. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the CPL in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because:

    a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the decisions to buy or lease Vehicles; and

    d.   In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1840. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1841. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce as prohibited by La. Rev. Stat. § 51:1405(A).

1842. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1843. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1844. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1845. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1846. As a direct and proximate result of Defendants' deceptive practices

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

including Defendants' concealment, misrepresentations, and/or failure to disclose material information about the Thief Friendly Design, the Vehicles were stolen or damaged in the course of being stolen.  Plaintiffs were obligated under their policies of insurance to make payments for Vehicles or damage to Vehicles and suffered ascertainable losses and actual damages in an amount subject to proof at trial.

1847. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1848. Pursuant to La. Rev. Stat. § 51:1409(A), Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding actual damages and other just and proper relief available under the Louisiana CPL.

**D.     Fraud by Omission, Suppression or Concealment under La. Civ. Code § 1953 et. Seq.**

1849. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1850. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1851. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards are facts basic to the transaction.  The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1852. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1853. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

a. Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and the false representation of Federal compliance made in advertising and the VIN plate;

b. Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

c. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

d. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

e.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

f.   In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1854.  In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

1855.  The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

1856.  Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1857.  Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

their own.

1858. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1859. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1860. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose material information.

**E.      Negligent Misrepresentation under La. C.C. §§ 2315 and 2316**

1861. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1862. Defendants had a legal duty to supply correct information to the Plaintiffs' Insureds because Defendants were merchants and Plaintiffs' Insureds were consumers or customers.  In addition, Defendants voluntarily supplied information to the public, and to Plaintiffs' Insureds specifically, stating that the Vehicles complied with all applicable Federal standards for safety and anti-theft.

1863. Defendants breached that duty by providing affirmative statements on the VIN plates affixed to the Vehicles that falsely stated the Vehicle complied with all applicable Federal standards for safety and anti-theft.  Defendants remained silent and did not disclose the existence of the Thief Friendly Design, which made the VIN plate statements misleading.

1864. Defendants further breached their duty by omitting, concealing and failing to disclose the existence of the Thief Friendly Design, which was known to them at the time they offered the Vehicles for sale or lease to the Plaintiffs' Insureds.

1865. As a result of Defendants' breach of their duty to provide complete and truthful information to Plaintiffs' Insureds, Plaintiffs' Insureds justifiably relied on Defendants' false statements and omissions of material facts and purchased or leased the Vehicles believing that they complied with applicable Federal standards for anti-theft and did not contain the Thief Friendly Design.

1866. Plaintiffs' Insureds could not have easily verified the truth or falsity of the information given to them by the Defendants as the lack of an engine immobilizer was not apparent upon visual inspection or short test drives that a reasonable consumer can make when purchasing or leasing a vehicle.

1867. As a direct and proximate result of the Thief Friendly Design and Defendants' negligent and misleading representations of information about the Vehicles compliance with anti-theft Federal standards, the Vehicles were frequently subjected to thefts and theft attempts. As a direct and proximate result, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for lost and damages vehicles, in addition to expenses and attorney's fees, in ascertainable amounts subject to proof at trial.

## F.     Negligence under La. C.C. § 2315

1868. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1869. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty

precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1870. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1871. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1872. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## G.     Gross Negligence La. C.C. § 2315

1873. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1874. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations

1  and is independent of any duties arising through individual contracts for sale or lease

2  that Defendants entered into with Plaintiffs' Insureds.

3      1875. Defendants breached that duty when they manufactured and sold

4  vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by

5  Federal standards, containing the Thief Friendly Design, in reckless indifference to

6  the safety of consumers and the general public, and the rights of the Plaintiffs'

7  Insureds to use a vehicle that was not unreasonably dangerous for the purposes they

8  purchased or leased it for.

9      1876. By intentionally manufacturing and selling certain vehicles with the

10  Thief Friendly Design the Defendants failed to use even slight care in the protection

11  of all their customers equally and in compliance with the Federal standards, conduct

12  that was so careless as to show reckless indifference for the rights and safety of

13  others.  Indeed, Defendants conduct lacked even slight care and diligence and lacked

14  the diligence that even careless persons are accustomed to exercise.

15      1877. At the time Defendants designed, manufactured, and offered for sale

16  certain vehicles with the Thief Friendly Design they made a conscious decision to

17  disregard the substantial and known risk of those vehicles being stolen in order to

18  make profit from the sale of the Vehicles.

19      1878. Defendants' grossly negligent manufacture and sale of non-compliant

20  vehicles containing the Thief Friendly Design allowed those vehicles to be targeted

21  for theft at a much higher rate than they would have if the vehicles had not been

22  negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds

23  purchased or leased from Defendants were stolen, or damaged in the course of being

24  stolen.

25      1879. As a direct and proximate result of Defendants gross negligence and

26  reckless disregard for the safety of the public in manufacturing and selling non-

27  compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their

28  policies of insurance with their Insureds to make payments for lost or damaged

Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

H.     **Product Liability under La. R.S. § 9:2800.54 et seq.**

1880. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1881. When the Defendants designed, manufactured, and sold the Vehicles they intentionally designed some of their vehicles with the Thief Friendly Design, lacking the anti-theft features required for compliance with the applicable Federal standards for safety and anti-theft. The Thief Friendly Design was an integral part of the Vehicles at the time the Vehicles were sold or leased to Plaintiffs' Insureds and were not modified after they left Defendants' control in any way relevant to this action.

1882. At the time the Vehicles left the control of the Defendants they were unreasonably dangerous within the meaning of La. R.S. §2800.56 in that there existed an alternate design for the product that was capable of preventing the damages suffered by Plaintiffs. Other vehicles of the same model were designed and manufactured by the Defendants with integrated anti-theft immobilizers and were compliant to applicable Federal standards for safety and anti-theft. If the Vehicles sold or leased to Plaintiffs' Insureds had been manufactured the same way, the anti-theft immobilizer would have prevented the theft or attempted theft of the Vehicles, and the Vehicles would not have become a known easy-to-steal target for thieves and joyriders.

1883. It was extremely likely that a vehicle publicly known to not comply with Federal anti-theft standards and capable of being stolen in seconds would be stolen, or attempted to be stolen, and that the type of damages suffered by Plaintiffs in the shoes of their Insureds was the inevitable result. The risk to Plaintiffs' Insureds and the general public of serious personal injury or property damage caused by thieves and joy riders in the course of stealing vehicles, greatly outweighed the burden on the manufacturer of putting the Federally compliant anti-theft devices in all of their

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

vehicles, including the ones sold or leased to Plaintiffs' Insureds.  Indeed, the actual cost of the immobilizers in the manufacturing process is a de minimus amount of the total cost of manufacture and would not be a significant impact to the profit earned by the Defendants on the sale of the Vehicles.  The engine immobilizers have no adverse effect on the utility of the product, rather, they allow the Vehicles to be fit for their intended purpose of personal transportation free from the danger of theft.  Not only did Defendants not take reasonable care to provide the public or Plaintiffs' Insureds with an adequate warning about the Thief Friendly Design, they failed to disclose that the VIN plate affixed to the Vehicle was misleading in that it falsely states the Vehicle complies with all applicable Federal safety and anti-theft standards.

1884. The Vehicles were also unreasonably dangerous within the meaning of La. R.S. § 2800.57 because of the lack of an adequate warning by Defendants about the Thief Friendly Design.  At the time the Vehicles left the control of Defendants they contained the Thief Friendly Design, which was highly likely to cause thefts and attempted thefts and damage to the Vehicle with the potential for personal injury and property damage to the public.  The Defendants failed to use reasonable care to provide the Plaintiffs' Insureds with a warning about the Thief Friendly Design and its danger to users of the Vehicles and did not clearly identify the Vehicles with the Thief Friendly Design as non-compliant to the Federal standards and lacking in anti-theft features provided by Defendants in other vehicles of the same model.

1885. Defendants were required to provide an adequate warning about the Vehicles because the Vehicles were dangerous to an extent beyond that contemplated by a user with the ordinary knowledge common to the public as to the Vehicle's characteristics.  Because all vehicles sold in the United States and Territories are required to be compliant to the applicable Federal standards for safety and anti-theft, a user with ordinary knowledge would reasonably expect all the Defendants' vehicles to be compliant, particularly in light of the VIN plate affixed to the Vehicles that stated the Vehicle did in fact comply.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1886. The Plaintiffs' Insureds were unaware of the Thief Friendly Design and could not reasonably be expected to discover it on their own with the normal prudence of a reasonable consumer, given the technical and hidden nature of the defect. Therefore, the Plaintiffs' Insured could not reasonably have known or expected the danger of the Thief Friendly Design.

1887. The Defendants knew that the Vehicles contained the Thief Friendly Design because they designed the Vehicles without the anti-theft features that Defendants did include on other Vehicles of the same or similar model.  Further, Defendants learned of the dangers inherent in their design when the Thief Friendly Design became public and the Vehicles were subject to a much higher risk of theft than other vehicles that did not contain the defect.  Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1888. After learning of the dangers of the Thief Friendly Design, Defendants did not conduct themselves as a reasonably prudent manufacturer would because they failed to use reasonable care and place a recall on the Vehicles or provide an adequate warning of the Thief Friendly Design and its danger to the Vehicle users, including Plaintiffs' Insureds.

1889. Pursuant to La. R.S. § 2800.57, as a direct and proximate result of their failure to adequately and timely warn the public or Plaintiffs' Insureds of the dangers of the Thief Friendly Design, Defendants are liable for damages incurred by Plaintiffs when they were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles due to theft.

1890. The Vehicles were unreasonably dangerous within the meaning of La. R.S. § 2800.58 because they did not conform to the express warranty made by

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Defendants that the Vehicles complied with all applicable Federal standards for safety and anti-theft. Defendants made the express warranty in their advertising and other literature provided with the Vehicles and on the VIN plate affixed to the Vehicles in an area visible to drivers every time they entered the Vehicle.  The express warranties provided by Defendants lulled the Plaintiffs' Insureds into believing the Vehicles were safe and had anti-theft features similar to other Federally compliant vehicles and induced them to purchase or lease the Vehicles and use them without knowing of the Thief Friendly Design.

1891. The Defendants' breach of their express warranty that the Vehicles were compliant to Federal anti-theft standards, when in fact the Vehicles contained the Thief Friendly Design, directly and proximately caused the damages suffered by Plaintiffs when they were obligated under their policies of insurance with their Insureds to pay for lost and damaged Vehicles that were stolen because of the Thief Friendly Design.

1892. As a direct and proximate result of Defendants' design, manufacturing, and sale of the Vehicles with the unreasonably dangerous Thief Friendly Design, and their breach of their express warranty that the Vehicles complied with all applicable Federal safety and anti-theft standards, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## MAINE STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Maine Subclasses, against All Defendants)

1893. Class Plaintiffs, the Hyundai Maine Subclass and Kia Maine Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

1894. The Maine Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses  (including Kia and

Hyundai Vehicles) in the State of Maine due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; Permanent General Assurance Corporation; Progressive Casualty Insurance Company; Progressive Northwestern Insurance Company; and United Financial Casualty Company; all of whom paid policy proceeds to their respective Insureds in Maine pursuant to policies of insurance

## A.      Breach of Implied Warranty (Me. Rev. Stat. Tit. 11 §§ 2-314 and 2-1212)

1895. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1896. Defendants were at all relevant times "merchants" with respect to motor vehicles under Me. Rev. Stat. Ann. Tit. 11 §§ 2-104(1), and 2-1103(3), and is a "seller" of motor vehicles under § 2-103(1)(d).

1897. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Me. Rev. Stat. Ann. Tit. 11 § 2-1103(1)(p).

1898. The Vehicles are and were at all relevant times "goods" within the meaning of Me. Rev. Stat. Ann. Tit. 11 §§ 2-105(1), and 2-1103(1)(h).

1899. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to Me. Rev. Stat. Ann. Tit. 11 §§ 2-314, and 2-1212.

1900. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds  with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and

complied with applicable Federal and state laws and regulations, including FMVSS 114.

1901. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because  the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders  Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1902. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective   Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective   Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs' Insureds. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds . Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1903. Furthermore, the  circumstances  described  herein  caused  Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs  may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds  the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1  them being stolen.

2      1904. Plaintiffs have provided Defendants with reasonable notice and
3  opportunity to cure the breaches of their implied warranties. Additionally, all
4  Defendants were provided notice and opportunity to cure the issues raised in this
5  count and this Complaint by governmental investigations, numerous complaints filed
6  against them, internet videos, news reports, and the many individual notice letters sent
7  by Plaintiffs within a reasonable amount of time after the allegations of Vehicle
8  defects became public.

9      1905. Alternatively, Plaintiffs  were excused from providing Defendants with
10  notice and an opportunity to cure the breach, because it would have been futile. As
11  alleged throughout Plaintiffs' Complaint, Defendants have long known that the
12  Vehicles contained the Thief Friendly Design; however, to date, Defendants have not
13  instituted an adequate and meaningful repair program with respect to the Vehicles. As
14  such, Plaintiffs had no reason to believe that Defendants would have adequately
15  repaired the Thief Friendly Design if they presented their  Vehicles to them for repair.

16      1906. The Defendants breached the implied warranty of merchantability and
17  fitness for particular purpose by manufacturing and selling defective Vehicles that
18  contained the Thief Friendly Design and failing to remedy the defect.  As a direct and
19  proximate result of Defendants' breach, Plaintiffs were obligated by their policies of
20  insurance with Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were
21  stolen or damaged in the course of being stolen because of the Thief Friendly Design.
22  As a result, Plaintiffs have incurred and will continue to incur damages and costs and
23  expenses, including attorney's fees, in an amount to be proven at trial.

24  **B.**     **Breach of Express Warranty (Me. Rev. Stat. Tit. 11 §§ 2-313 and 2-1210)**

25      1907. Plaintiffs reallege and incorporate by reference all preceding allegations
26  as though fully set forth herein.

27      1908. During the relevant time period described above, Plaintiffs' Insureds
28  purchased or leased Vehicles.

1909. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1910. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1911. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1912. As a direct and proximate result of Defendants' breach of their express warranty, the Vehicles were stolen, and either lost or damaged in the course of being stolen. As a result, Plaintiffs were obligated under their policies of insurance with their Insureds to make payments for lost or damaged Vehicles and have incurred and will continue to incur damages in an ascertainable amount, in addition to costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

**C.     Violation of the Maine Unfair Trade Practices Act (Me. Rev. Stat. Ann. Tit. 5 § 205-a, et seq.)**

1913. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1914. Defendants, Plaintiffs,  and Plaintiffs' Insureds are "persons" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(2).

1915. Defendants are engaged in "trade" or "commerce" within the meaning of Me. Rev. Stat. Ann. Tit. 5, § 206(3).

1916. The Maine Unfair Trade Practices Act ("Maine UTPA") states that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are . . . unlawful." Me. Rev. Stat. Ann. Tit. 5, 21 § 207.

1917. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Maine UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the existence of the Thief Friendly Design, as detailed above.

1918. Defendants had an ongoing duty to the Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Maine UTPA in the course of their business. Specifically, Defendants owed the Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

    a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.     Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle

components that would be necessary to discover the Thief Friendly Design on their own;

c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the decisions to buy or lease Vehicles; and

d.   In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1919. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1920. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair and deceptive acts or practices prohibited by Me. Rev. Stat. Ann. Tit. 5, § 207.

1921. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1922. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive

reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, quality, and value of the Vehicles.

1923. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

1924. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1925. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicle or would have paid significantly less for them.

1926. As a direct and proximate result of Defendants' deceptive trade practices, including misrepresentations, omissions, and concealment of material facts, the Vehicles were stolen, and either lost or damaged in the course of being stolen. As a result, Plaintiffs were obligated under their policies of insurance with their Insureds to make payments for lost or damaged Vehicles and have incurred and will continue to incur damages in an ascertainable amount, in addition to costs and expenses, including attorney's fees, as a result of the Thief Friendly Design.

1927. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1928. Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1929. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

1930. Pursuant to Me. Rev. Stat. Tit. 5 § 213, Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, restitution, and any other just and proper relief available under the Maine UTPA.

**D.    Negligence**

1931. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1932. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1933. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

1934. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1935. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**E.      Gross Negligence**

1936. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1937. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.   This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

1938. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they

purchased or leased it for.

1939. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.  Indeed, Defendants conduct lacked even slight care and diligence and lacked the diligence that even careless persons are accustomed to exercise.

1940. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

1941. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

1942. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## MARYLAND STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Maryland Subclasses, against All Defendants)

1943. Class Plaintiffs, the Hyundai Maryland Subclass and Kia Maryland Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

1944. The Maryland Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including both Kia and Hyundai Vehicles) in the State of Maryland due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; Erie Insurance Property & Casualty Company; GEICO Casualty Insurance Company; GEICO General Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Alpha Property & Casualty Insurance Company; Unitrin Auto and Home Insurance Company; Nationwide Property & Casualty Insurance Company; New Jersey Manufacturers Insurance Company; Progressive American Insurance Company; Progressive Direct Insurance Company; Progressive Select Insurance Company; Progressive Specialty Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Maryland pursuant to policies of insurance.

## A. Breach of Implied Warranty of Merchantability (Md. Code Com. Law §§ 2-314 and 2A-212)

1945. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein. Plaintiffs and Subclass Members for each Subclass on behalf of their Insureds reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

1946. Named Subclass Members bring this count individually and on behalf of the other members of the Maryland classes against Defendants.

1947. Defendants are and were at all relevant times "merchants" with respect

to motor vehicles Md. Code Com. Law §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

1948. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under Md. Code. Com. Law § 2A-103(1)(p).

1949. Plaintiffs stand in the shoes of their Insureds, who purchased Vehicles in Maryland and are "buyers" within the meaning of Md. Code. Com. Law § 2-103(1)(a), and who leased  Vehicles in Maryland are "lessees" within the meaning of Md. Code. Com. Law § 2A-103(1)(n).

1950. The Vehicles are and were at all relevant times "goods" within the meaning of Md. Code. Com. Law §§ 2-105(1) and 2A-103(1)(h).

1951. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Md. Code Com. Law §§ 2-314 and 2A-212.

1952. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased by Plaintiffs' Insureds. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles that were manufactured, supplied, distributed, and sold by Defendant were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft and complied with applicable Federal and state laws and regulations, including FMVSS 114.

1953. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

1954. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs or Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

1955. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

1956. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

1957. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs' Insureds had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

1958. The Defendants breached the implied warranty of merchantability and fitness for particular purpose by manufacturing and selling defective Vehicles that contained the Thief Friendly Design and failing to remedy the defect.  As a direct and proximate result of Defendants' breach, Plaintiffs were obligated by their policies of insurance with Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, in an amount to be proven at trial.

**B.     Breach of Express Warranty (Md. Code Com. Law §§ 2-313 and 2A 210)**

1959. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1960. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

1961. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

1962. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

1963. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

1964. As a direct and proximate result of Defendants' breach of their express warranty, the Vehicles were stolen, and either lost or damaged in the course of being stolen. As a result, Plaintiffs were obligated under their policies of insurance with their Insureds to make payments for lost or damaged Vehicles and have incurred and will continue to incur damages in an ascertainable amount, in addition to costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants.

C.     **Violation of the Maryland Consumer Protection Act (Md. Code, Com. Law, § 13-101, et seq.)**

1965. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1966. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of Md. Code, Com. Law, § 13-101(h).

1967. Plaintiffs stand in the shoes of their Insureds, who are "consumers" within the meaning of 19 Md. Code, Com. Law, § 13-101(c).

1968. The Vehicles and installed in them are "merchandise" within the

1    meaning of Md. Code, Com. Law, § 13-101(f).

2        1969. The Maryland Consumer Protection Act ("Maryland CPA") declares that

3    "[a] person may not engage in any unfair, abusive, or deceptive trade practice, as

4    defined in this subtitle or as further defined by the Division." Md. Code, Com. Law,

5    § 13-303. Section 13-301 defines "unfair, abusive or deceptive trade practices." Id. at

6    § 13-301.

7        1970. In the course of their business, Defendants, through their agents,

8    employees, and/or subsidiaries, violated the Maryland CPA by knowingly and

9    intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

10   facts regarding the quality, reliability, and safety of the Vehicles and the Thief

11   Friendly Design, as detailed above.

12       1971. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from

13   unfair or deceptive practices under the Maryland CPA in the course of their business.

14   Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material

15   facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

16              a.    Defendants had exclusive access to and far superior knowledge

17                    about facts regarding the Thief Friendly Design and Defendants

18                    knew these facts were not known to or reasonably discoverable by

19                    Plaintiffs' Insureds;

20              b.    Given the Thief Friendly Design's hidden and technical nature,

21                    Plaintiffs' Insureds lack the sophisticated expertise in vehicle

22                    components that would be necessary to discover the Thief

23                    Friendly Design on their own;

24              c.    Defendants knew that the Thief Friendly Design gave rise to safety

25                    concerns for the consumers who use the Vehicles, and the Thief

26                    Friendly Design would have been a material fact to the Plaintiffs'

27                    Insureds decisions to buy or lease Vehicles; and

28

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

       d.     In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1972. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

1973. By misrepresenting the Vehicles as safe and reliable, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Md. Code, Com. Law, §§ 13-301(1), (2)(i), (2)(iv), (3), (5)(i), and (9)(i):

       a.     Making false or misleading oral or written statements, visual descriptions, or other representations of any kind which had the tendency or effect of deceiving or misleading consumers about the Vehicles;

       b.     Representing that the Vehicles have approval, accessories, characteristics, uses, and benefits that they do not have;

       c.     Representing that the Vehicles are of a particular standard, quality, or grade when they are not;

       d.     Failure to state material facts about the Vehicles that deceives or tends to deceive;

       e.     Advertising the Vehicles with the intent not to sell or lease them as advertised; and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

f.    Engaging in deception, fraud, false pretense, false premise, misrepresentation, or knowing concealment, suppression, or omission of material facts regarding the safety of the Vehicles.

1974. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

1975. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

1976. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease those vehicles.

1977. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1978. Had they known the truth, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

1979. As a direct and proximate result of Defendants' unfair, abusive, and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

deceptive trade practices in concealing the Thief Friendly Design and misrepresenting the Vehicles' compliance to applicable Federal Standards, the Vehicles were stolen or damaged in the process of being stolen.

1980. As a direct result, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost and damaged cars as a result of theft due to the Thief Friendly Design, and suffered ascertainable losses and actual damages in an amount according to proof at trial.

1981. Defendants' violations present a continuing risk to Plaintiffs and Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

1982. Pursuant to Md. Code, Com. Law, § 13-408, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Maryland CPA.

**D.      Fraud by Omission, Suppression or Concealment**

1983. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

1984. As the manufacturers of the Vehicles, Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

1985. Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs in connection with the sale of the Vehicles because the Vehicles' compliance with Federal standards for safety and anti-theft are vital to public safety. The public would expect that all new vehicles in the marketplace offered by large manufacturers who sell to the public would comply with Federal safety and anti-theft standards and would not anticipate a need to inquire about something so fundamental when purchasing or leasing a vehicle. Customs and usage of trade in the manufacture and sale of vehicles is highly regulated, and consumers would reasonably expect a disclosure from the

seller if any vehicle offered for sale to the public did not comply with applicable Federal standards.

1986. And yet, even though Defendants were aware that the Vehicles did not comply with the Federal safety and anti-theft standards, and that consumers were unlikely to inquire due to an expectation that compliance with Federal standards is a basic, entry level requirement for new vehicles, Defendants still omitted the information about the Thief Friendly Design and failed to bring it to the attention of Plaintiff's Insureds when they purchased or leased their Vehicles.

1987. The Thief Friendly Design allowed the Vehicles to be quickly and easily stolen, a fact that became well known to the public.  The easily stolen vehicles were and are attractive not only to criminals but to minors and young adults looking for a thrill or joy ride.  During such thefts or joy rides there is a high risk of personal injury or death to the general public as a result of high speeds and reckless behavior encouraged by the easy access to the Vehicles due to the Thief Friendly Design.  As a result, the Thief Friendly Design was unreasonably and highly unsafe and caused a risk of personal injury and death to the general public, minors attracted to the Thief Friendly Design, and others put at risk by the ease of theft, in addition to property damage.  There is also a risk of personal injury for consumers who are stranded in dangerous situations because their vehicles have been stolen, or damaged beyond use in the course of an attempted theft.

1988. Defendants knew that Plaintiffs' Insureds could not reasonably have been expected to know of the Thief Friendly Design in the absence of a disclosure by Defendants. Defendants further had a duty to disclose the Thief Friendly Design because:

  a. Defendants knew that unless they disclosed the Thief Friendly Design that Plaintiff's Insureds would rely on usage of trade, and the false representation of Federal compliance made in advertising and the VIN plate;

b. Defendants knew the Plaintiff's Insureds were about to enter into transactions to purchase or lease Vehicles under a mistake of fact that the Vehicles complied with Federal Safety and anti-theft standards, in circumstances where Plaintiff's Insureds would reasonably expect a disclosure of the truth;

c. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

d. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

e. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles and the general public, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds decisions to buy or lease Vehicles; and

f. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

1989. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds, knowing that Plaintiffs' Insureds' false belief that the Vehicles complied with Federal standards for safety and anti-theft would justifiably

induce them to purchase or lease Vehicles from Defendants that they otherwise may have chosen not to acquire if they had known of the Thief Friendly Design.

1990. The Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find anti-theft protection an important factor in purchasing, leasing, or retaining a new or used motor vehicle, and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.  In addition, the Thief Friendly Design was a material fact due to the unreasonable risk of personal injury to the general public as previously described.

1991. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment, which Plaintiffs' Insureds did by purchasing and leasing the Vehicles at prices that they believed included anti-theft protection and not a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

1992. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning or otherwise learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

1993. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

1994. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

1995. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with the Plaintiffs' Insureds to pay for damage to or loss of Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of

1  Defendants' fraudulent concealment, misrepresentations, and/or failure to disclose

2  material information.

3  **E.      Negligent Misrepresentation**

4      1996. Plaintiffs reallege and incorporate by reference all preceding allegations

5  as though fully set forth herein.

6      1997. Defendants were the manufacturers and sellers of the Vehicles, and did

7  enter into a buyer-seller relationship with the Plaintiffs' Insureds, and each of them,

8  for the purchase or lease of the Vehicles.

9      1998. Because Defendants designed, manufactured, and sold the Vehicles, and

10  self-certified the Vehicles to the Federal agencies responsible for compliance with

11  automobile safety and anti-theft standards, Defendants had knowledge of the Thief

12  Friendly Design that could not have been known to the Plaintiffs' Insureds and

13  therefore were in a position of superiority to them.

14      1999. Defendants negligently remained silent and failed to inform Plaintiffs'

15  Insureds of the Thief Friendly Design when they had a duty to speak due to their

16  superior position and knowledge.

17      2000. Defendants also made affirmative statements on their VIN plates that the

18  Vehicles complied with applicable Federal Standards for safety and anti-theft, and did

19  not disclose the falsity of that statement to Plaintiffs' Insureds, making those

20  statements misleading. Defendants intended Plaintiffs' Insureds to accept the false

21  statements and rely on Defendants' omissions, in full knowledge that in the absence

22  of Defendants' disclosure of Thief Friendly Design Plaintiffs' Insureds were likely to

23  rely on the affirmative statements of compliance, and on the confidence in Defendants

24  as manufacturer of motor vehicles that were required to comply with Federal

25  standards.

26      2001. The Plaintiffs' Insureds relied upon the incomplete statements made by

27  the Defendants in not disclosing that the Vehicles did not comply with all Federal

28  safety and anti-theft standards and in fact had a Thief Friendly Design.  Plaintiffs'

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

Insureds' reliance was reasonable as the Thief Friendly Design was non-obvious, hidden, and could not have been detected by the Plaintiffs' Insureds with the normal inspection of a consumer upon purchase or lease of a vehicle.

2002. Plaintiffs' Insureds were justified in relying on the misrepresentations and omissions of Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt that Defendants had knowledge of the truth about the Vehicles' features when Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

2003. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead if they had known of the Thief Friendly Design in the Defendants' Vehicles.

2004. In addition, the Thief Friendly Design allowed the Vehicles to be quickly and easily stolen, a fact that became well known to the public.  The easily stolen vehicles were and are attractive not only to criminals but to minors and young adults looking for a thrill or joy ride.  During such thefts or joy rides there is a high risk of personal injury or death to the general public as a result of high speeds and reckless behavior encouraged by the easy access to the Vehicles due to the Thief Friendly Design.  As a result, the Thief Friendly Design was unreasonably and highly unsafe and caused a risk of personal injury and death to the general public, minors attracted to the Thief Friendly Design, and others put at risk by the ease of theft, in addition to property damage.  There is also a risk of personal injury for consumers who are stranded in dangerous situations because their vehicles have been stolen, or damaged beyond use in the course of an attempted theft.

2005. Plaintiffs' Insureds relied on the negligent misrepresentations of Defendants when they purchased or leased Vehicles they believed were adequately

protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

2006. Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

**F.    Negligence**

2007. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2008. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.   This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2009. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

2010. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2011. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## G.    Gross Negligence

2012. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2013. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2014. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

2015. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

2016. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

2017. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2018. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**H.    Product Liability**

2019. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2020. At the time the Defendants manufactured the Vehicles they contained the Thief Friendly Design, in that they did not comply with applicable Federal Standards for safety and anti-theft, and lacked those features required by the standards. Subsequent to manufacture up to the time the Vehicle left the control of Defendants there were no alterations to the Vehicles that affected the Thief Friendly Design.

2021. The Vehicles were unreasonably dangerous in that the Thief Friendly Design allowed the Vehicles to be quickly and easily stolen, a fact that became well known to the public.  The easily stolen vehicles were and are attractive not only to criminals but to minors and young adults looking for a thrill or joy ride.  During such thefts or joy rides there is a high risk of personal injury or death to the general public

as a result of high speeds and reckless behavior encouraged by the easy access to the Vehicles due to the Thief Friendly Design.  As a result, the Thief Friendly Design was unreasonably and highly unsafe and caused a risk of personal injury and death to the general public, minors attracted to the Thief Friendly Design, and others put at risk by the ease of theft, in addition to property damage.  There is also a risk of personal injury for consumers who are stranded in dangerous situations because their vehicles have been stolen, or damaged beyond use in the course of an attempted theft.

2022. As a direct and proximate cause of the Thief Friendly Design, the Vehicles were stolen, or damaged in the course of being stolen after they were purchased or leased by the Plaintiffs' Insureds.

2023. As a direct and proximate result of the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## MASSACHUSETTS STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Massachusetts Subclasses, against All Defendants)

2024. Class Plaintiffs, the Hyundai Massachusetts Subclass and Kia Massachusetts Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2025. The Massachusetts Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the Commonwealth of Massachusetts due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Property & Casualty Insurance Company; Allstate Property & Casualty Insurance Company; Government Employees Insurance Company; Liberty Mutual Fire Insurance

Company; Liberty Surplus Insurance Corporation; Progressive Direct Insurance Company; National Continental Insurance Company;  Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Massachusetts pursuant to policies of insurance

## A.    Breach of Implied Warranty of Merchantability under Mass. Gen. Laws Ch. 106, §§ 2-314 and 2A-212

2026. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2027. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mass. Gen. Laws Ch. 106 §§ 2-314 and 2A-212.

2028. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mass. Gen. Laws Ch. 106 §§ 2-104(a) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(a)(d).

2029. Defendants are and were at all relevant times "lessors" of motor vehicles under Mass. Gen. Laws Ch. 106 § 2A-103(a)(p).

2030. Plaintiffs' Insureds who purchased Vehicles in Massachusetts are "buyers" within the meaning of Mass. Gen. Laws Ch. 106 § 2-103(1)(a).

2031. Plaintiffs' Insureds who leased Vehicles in Massachusetts are "lessees" within the meaning of Mass. Gen. Laws Ch. 106 § 2A-103(1)(n).

2032. The Vehicles are and were at all relevant times "goods" within the meaning of Mass. Gen. Laws. Ch. 106 §§ 2-105(1) and 2A-103(1)(h).

2033. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2034. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2035. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2036. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of

warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2037. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2038. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2039. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty under Mass. Gen. Laws Ch. 106, §§ 2-313**

2040. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2041. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2042. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2043. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2044. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2045. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.      Violation of the Deceptive Acts or Practices Prohibited by Mass. Gen. Laws Ch. 93a §1, *et seq*.**

2046. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2047. Defendants and Plaintiffs "persons" within the meaning of Mass. Gen. Laws Ch. 93A, § 1(a).

2048. Defendants were and are engaged in "trade" or "commerce" within the

1  meaning of Mass. Gen. Laws Ch. 93A, § 1(b).

2      2049. The Massachusetts Consumer Protection Law ("Massachusetts Act")

3  prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in

4  the conduct of any trade or commerce[.]" Mass. Gen. Laws Ch. 93A, § 2.

5      2050. In the course of their business, Defendants, through their agents,

6  employees, and/or subsidiaries, violated the Massachusetts Act by knowingly and

7  intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

8  facts regarding the quality, reliability, and safety of the Vehicles and the Thief

9  Friendly Design, as detailed above.

10      2051. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from

11  unfair or deceptive practices under the Massachusetts Act in the course of their

12  business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the

13  material facts concerning the Thief Friendly Design of the Vehicles because, as

14  detailed above:

15           i.    Defendants had exclusive access to and far superior knowledge

16                about facts regarding the Thief Friendly Design and Defendants

17                knew these facts were not known to or reasonably discoverable by

18                Plaintiffs' Insureds;

19          ii.    Given the Thief Friendly Design's hidden and technical nature,

20                Plaintiffs' Insureds lack the sophisticated expertise in vehicle

21                components that would be necessary to discover the Thief

22                Friendly Design on their own;

23         iii.    Defendants knew that the Thief Friendly Design gave rise to safety

24                concerns for the consumers who use the Vehicles, and the Thief

25                Friendly Design would have been a material fact to the Plaintiffs'

26                Insureds' decisions to buy or lease Vehicles; and

27         iv.    Defendants made incomplete representations about the safety and

28                reliability of Vehicles while purposefully withholding material

facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2052. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2053. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Mass. Gen. Laws Ch. 93A, § 2.

2054. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2055. Defendants' unfair methods of competition and unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2056. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were

exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2057. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2058. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2059. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2060. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2061. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2062. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2063. Pursuant to Mass. Gen. Laws Ch. 93A, § 9, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Massachusetts Act.

**D.      Fraud by Omission and Concealment**

2064. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2065. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2066. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2067. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.      Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.      Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2068. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2069. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.  Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.  Thus, reliance may be presumed.

2070. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2071. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2072. Defendants actively concealed and suppressed these material facts, in

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2073. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2074. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2075. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or taken measures to prevent them from being stolen.

2076. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2077. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

2078. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2079. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2080. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely

susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2081. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2082. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2083. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2084. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## **MICHIGAN STATE LAW CLAIMS FOR RELIEF**

### **(Alleged by  Plaintiffs, and Members of Michigan Subclasses, against All Defendants)**

2085. Class Plaintiffs, the Hyundai Michigan Subclass and Kia Michigan Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2086. The Michigan Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Michigan due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class

Plaintiffs:  Acuity, A Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; American Family Mutual Insurance Company, S.I.;  Permanent General Assurance Company; Citizens United Reciprocal Exchange; GEICO Advantage Insurance Company; GEICO Indemnity Company; GEICO General Insurance Company; Government Employees Insurance Company; Teachers Insurance Company; American Access Casualty Company; Ohio Security Insurance Company; Progressive Direct Insurance Company; Progressive Marathon Insurance Company; Progressive Michigan Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds for losses in Michigan pursuant to policies of insurance.

**A.     Breach of Implied Warranty of Merchantability under Mich. Comp. Laws §§ 440.214 and 440.2862**

2087. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2088. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mich. Comp. Laws §§ 440.214 and 440.2862.

2089. Defendants are and were at all relevant times "merchants" with respect to the motor vehicles under Mich. Comp. Laws §§ 440.2104(1) and 440.2803(3), and "sellers" of motor vehicles under § 440.2103(1)(c).

2090. Defendants are and were at all relevant times "lessors" of motor vehicles under Mich. Comp. Laws § 440.2803(1)(p).

2091. Plaintiffs who purchased Vehicles in Michigan are "buyers" within the meaning of Mich. Comp. Laws § 440.2803(1)(a).

2092. Plaintiffs who leased Vehicles in Michigan are "lessees" within the

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

1  meaning of Mich. Comp. Laws § 440.2803(1)(n).

2  2093. The Vehicles are and were at all relevant times "goods" within the

3  meaning of Mich. Comp. Laws §§ 440.2105(1) and 4400.2803(1)(h).

4  2094. Defendants knew or had reason to know of the specific use for which the

5  Vehicles were purchased or leased. Defendants provided Plaintiffs Insureds with an

6  implied warranty that the Vehicles and any parts thereof were merchantable and fit

7  for the ordinary purposes for which they were sold. This implied warranty included,

8  among other things, a warranty that the Vehicles were manufactured, supplied,

9  distributed, and sold by Defendants, were safe and reliable for providing

10  transportation, would not be vulnerable to an abnormally high risk of theft, and

11  complied with applicable federal and state laws and regulations, including FMVSS

12  114.

13  2095. However, the Vehicles did not comply with the implied warranty of

14  merchantability because they were defective and not in merchantable condition,

15  would not pass without objection in the trade, and were not fit for their ordinary

16  purpose of providing reasonably reliable, safe, and secure transportation at the time

17  of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly

18  Design, lacking any anti-theft features or design elements to provide an adequate theft

19  deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard

20  because the Thief Friendly Design renders Vehicles vulnerable to theft, making them

21  prime targets to be used as instrumentalities through which thieves engage in reckless

22  driving or other criminal activity.

23  2096. Any attempt by Defendants to disclaim or limit the implied warranty of

24  merchantability for their respective Vehicles vis-à-vis consumers is unconscionable

25  and unenforceable. Specifically, Defendants' warranty limitations are unenforceable

26  because Defendants knowingly sold or leased defective Vehicles without informing

27  consumers about the Thief Friendly Design. The time limits contained in Defendants'

28  warranty periods were also unconscionable and inadequate to protect Plaintiffs and

Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2097. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2098. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2099. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2100. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied, and Plaintiffs have been damaged in an amount to be

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1 proven at trial.

2 **B.    Breach of Express Warranty under Mich. Comp. Laws §§ 440.2313**

3    2101. Plaintiffs reallege and incorporate by reference all preceding allegations
4 as though fully set forth herein.

5    2102. During the relevant time period described above, Plaintiffs' Insureds
6 purchased or leased Vehicles.

7    2103. These Vehicles were manufactured by Defendants during the relevant
8 time period described above. Through the attachment of VIN plates, Defendants made
9 an express warranty that the Vehicles conform to all applicable U.S.A. federal motor
10 vehicle safety, bumper, and theft prevention standards in effect on the date of
11 manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima
12 Vehicle is provided above. On information and belief, similar written warranties were
13 made prior to, or at the point of sale for all Vehicles.

14    2104. After Plaintiffs' Insureds purchased or leased the Vehicles, they used
15 them in accordance with the normal operation of the Vehicles and did not mishandle
16 or otherwise damage the Vehicles in any way that is material to the allegations set
17 forth herein.

18    2105. The Vehicles did not perform as promised in accordance with
19 Defendants' express warranty, as it has become common knowledge that they are
20 capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all
21 applicable motor vehicle safety, and theft prevention standards in effect on the date
22 of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily
23 stolen, and thus failed to perform to the terms of the express warranty described in the
24 Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable
25 anti-theft standards.

26    2106. Plaintiffs have incurred and will continue to incur damages and costs and
27 expenses, including attorney's fees, as a result of the Thief Friendly Design and
28 related breach of Defendants' breach of express warranty that the Vehicles conform

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1  to theft prevention standards.

2  **C.   Violation of the Michigan Consumer Protection Act (Mich. Comp. Laws §**
3        **445.901, et seq.)**

4  2107. Plaintiffs incorporate by reference each preceding and succeeding
5  paragraph as though fully set forth at length herein.

6  2108. Defendants and Plaintiffs "persons" within the meaning of Mich. Comp.
7  Laws § 445.902(1)(d).

8  2109. Defendants were and are engaged in "trade" or "commerce" within the
9  meaning of Mich. Comp. Laws § 445.902(1)(g).

10  2110. The Michigan Consumer Protection Act ("Michigan Act") prohibits
11  "[u]nfair methods of competition and unfair or deceptive acts or practices in the
12  conduct of any trade or commerce[.]" Mich. Comp. Laws § 445.903(1).

13  2111. In the course of their business, Defendants, through their agents,
14  employees, and/or subsidiaries, violated the Michigan Act by knowingly and
15  intentionally misrepresenting, omitting, concealing, and/or failing to disclose material
16  facts regarding the quality, reliability, and safety of the Vehicles and the Thief
17  Friendly Design, as detailed above.

18  2112. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from
19  unfair or deceptive practices under the Michigan Act in the course of their business.
20  Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material
21  facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

22  a.   Defendants had exclusive access to and far superior knowledge
23       about facts regarding the Thief Friendly Design and Defendants
24       knew these facts were not known to or reasonably discoverable by
25       Plaintiffs' Insureds;

26  b.   Given the Thief Friendly Design's hidden and technical nature,
27       Plaintiffs' Insureds lack the sophisticated expertise in vehicle

28

1     components that would be necessary to discover the Thief

2     Friendly Design on their own;

3     c.    Defendants knew that the Thief Friendly Design gave rise to safety

4     concerns for the consumers who use the Vehicles, and the Thief

5     Friendly Design would have been a material fact to the Plaintiffs'

6     Insureds' decisions to buy or lease Vehicles; and

7     d.    Defendants made incomplete representations about the safety and

8     reliability of Vehicles while purposefully withholding material

9     facts about a known safety defect. In uniform advertising and

10     materials provided with Vehicle, Defendants intentionally

11     concealed, suppressed, and failed to disclose to the consumers that

12     the Vehicles contained the Thief Friendly Design. Because they

13     volunteered to provide information about the Vehicles that they

14     marketed and offered for sale and lease to consumers, Defendants

15     had the duty to disclose the whole truth.

16     2113. As detailed above, the information concerning the Thief Friendly Design

17 was known to Defendants at the time of advertising and selling the Vehicles, all of

18 which was intended to induce consumers to purchase the Vehicles.

19     2114. By misrepresenting the Vehicles as safe and reliable and by failing to

20 disclose and actively concealing the dangers and risk posed by the Thief Friendly

21 Design, Defendants engaged in unfair methods of competition and unfair or deceptive

22 acts or practices prohibited by Mich. Comp. Laws §§ 445.903:

23     a.    Causing a probability of confusion or misleading as to the

24     approval or certification of the Vehicles;

25     b.    Representing that the Vehicles have approval, characteristics,

26     uses, or benefits which they do not have;

27     c.    Representing that the Vehicles are of a particular standard, quality,

28     and grade when they are not;

d.  Advertising the Vehicles with the intent not to sell or lease them as advertised;

e.  Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; and

f.  Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner. Mich. Comp. Laws §§ 445.903(1)(a), (c), (e), (g), (s), and (cc).

2115. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2116. Defendants' unfair methods of competition and unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2117. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle. Thus, reliance may be presumed.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

2118. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2119. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2120. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2121. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2122. All Defendants were provided notice of the issues raised in this count and this Complaint by letter dated March 09, 2023.  Notice was also provided by governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2123. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2124. Pursuant to Mich. Comp. Laws § 445.911, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and

unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Michigan Act.

**D.      Fraud by Omission, and Concealment**

2125. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2126. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2127. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2128. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

      a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

      b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

      c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.     Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2129. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2130. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

2131. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2132. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2133. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2134. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2135. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2136. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2137. As a direct and proximate result of Defendants' omissions, Plaintiffs' purchased Vehicles susceptible to a high rate of theft that they would not have purchased at all if the Thief Friendly Design had been disclosed to them; and due to the Thief Friendly Design, the Insureds' Vehicles were stolen and/or vandalized. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2138. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

2139. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2140. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2141. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2142. The National Highway Traffic Safety Administration has a self-

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2143. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2144. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2145. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## MINNESOTA STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Minnesota Subclasses, against All Defendants)

2146. Class Plaintiffs, the Hyundai Minnesota Subclass and Kia Minnesota Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2147. The Minnesota Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Minnesota due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Acuity, A Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company;

Allstate New Jersey Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.;  American Standard Insurance Company of Wisconsin; Main Street America Protection Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; GEICO Advantage Insurance Company; GEICO Casualty Company; GEICO Indemnity Company; GEICO General Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Infinity Insurance Company; Merastar Insurance Company; Unitrin Auto and Home Insurance Company; Liberty Insurance Corporation; Ohio Security Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; Progressive Preferred Insurance Company; Progressive Universal Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds for losses in Minnesota pursuant to policies of insurance.

**A.     Breach of Implied Warranty of Merchantability under Minn. Stat. §§ 336.2-314 and 336.2A-212**

2148. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2149. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Minn. Stat. §§ 336.2-314 and 336.2A-212.

2150. Defendants are and were at all relevant times "merchants" with respect to the motor vehicles under Minn. Stat. §§ 336.2-104(1) and 336.2A-103(3), and "sellers" of motor vehicles under § 336.2-103(1)(d).

2151. Defendants are and were at all relevant times "lessors" of motor vehicles

1  under Minn. Stat. § 336.2A-103(1)(p).

2      2152. Plaintiffs who purchased Vehicles in Minnesota are "buyers" within the

3  meaning of Minn. Stat. § 336.2-103(1)(a).

4      2153. Plaintiffs who leased Vehicles in Minnesota are "lessees" within the

5  meaning of Minn. Stat. § 336.2A-103(1)(n)

6      2154. The Vehicles are and were at all relevant times "goods" within the

7  meaning of Minn. Stat. §§ 336.2-105(1) and 336.2A-103(1)(h).

8      2155. Defendants knew or had reason to know of the specific use for which the

9  Vehicles were purchased or leased. Defendants provided Plaintiffs Insureds with an

10  implied warranty that the Vehicles and any parts thereof were merchantable and fit

11  for the ordinary purposes for which they were sold. This implied warranty included,

12  among other things, a warranty that the Vehicles were manufactured, supplied,

13  distributed, and sold by Defendants, were safe and reliable for providing

14  transportation, would not be vulnerable to an abnormally high risk of theft, and

15  complied with applicable federal and state laws and regulations, including FMVSS

16  114.

17      2156. However, the Vehicles did not comply with the implied warranty of

18  merchantability because they were defective and not in merchantable condition,

19  would not pass without objection in the trade, and were not fit for their ordinary

20  purpose of providing reasonably reliable, safe, and secure transportation at the time

21  of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly

22  Design, lacking any anti-theft features or design elements to provide an adequate theft

23  deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard

24  because the Thief Friendly Design renders Vehicles vulnerable to theft, making them

25  prime targets to be used as instrumentalities through which thieves engage in reckless

26  driving or other criminal activity.

27      2157. Any attempt by Defendants to disclaim or limit the implied warranty of

28  merchantability for their respective Vehicles vis-à-vis consumers is unconscionable

and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2158. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2159. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. On March 09, 2023, Plaintiffs provided notice to Defendants that the Thief Friendly Design breached Defendants' implied warranties and violated consumer protection statutes. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2160. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or

repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2161. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.    Breach of Express Warranty under Minn. Stat. §§ 336.2-313**

2162. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2163. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2164. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2165. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2166. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily

LEGAL\67600038\1

stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2167. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.    Violation of the Minnesota Prevention of Consumer Fraud Act pursuant to Minn. Stat. § 325F.68, et seq. and Minn. Stat. § 8.31, subd. 3a**

2168. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2169. Defendants and Plaintiffs "persons" within the meaning of Minn. Stat. § 325F.68(3).

2170. The Vehicles are "merchandise" within the meaning of Minn. Stat. § 325F.68(2).

2171. The Minnesota Prevention Consumer Fraud Act ("Minnesota CFA") prohibits "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with he intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged[.]" Minn. Stat. § 325F.69(1).

2172. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Minnesota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2173. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Minnesota CFA in the course of their business.

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2174. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2175. By misrepresenting the Vehicles as safe and reliable, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly

Design to both consumers and NHTSA, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Minn. Stat. § 325F.69, including use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise.:

2176. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2177. Defendants' unfair methods of competition and unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2178. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2179. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1 own.

2     2180. Had they known the truth about the Thief Friendly Design, Plaintiffs'
3 Insureds would not have purchased or leased the Vehicles, or would have paid
4 significantly less for them.

5     2181. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual
6 damages as a direct and proximate result of Defendants' concealment,
7 misrepresentations, and/or failure to disclose material information.

8     2182. Defendants' violations present a continuing risk to Plaintiffs as well as
9 to the general public, because the Vehicles remain unsafe due to the Thief Friendly
10 Design. Defendants' unlawful acts and practices complained of herein affect the
11 public interest.

12    2183. Pursuant to Minn. Stat. §§ 8.31(3a) and 549.20(1)(a), the Plaintiffs and
13 Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of
14 competition and unfair or deceptive acts or practices and awarding damages and any
15 other just and proper relief available under the Minnesota CFA.

16 **D.    Violation of the Deceptive Trade Practices Act pursuant to Minn. Stat. §**
17      **325D.44**

18    2184. Plaintiffs reallege and incorporate by reference all preceding allegations
19 as though fully set forth herein.

20    2185. Defendants and Plaintiffs "persons" within the meaning of Mass. Gen.
21 Laws Ch. 93A, § 1(a).

22    2186. The Minnesota Deceptive Trade Practices Act ("Minnesota DTPA")
23 prohibits deceptive trade practices in the course of a business, vocation, or occupation.
24 Minn. Stat. § 325D.44, Subd. 1.

25    2187. In the course of their business, Defendants, through their agents,
26 employees, and/or subsidiaries, violated the Minnesota DTPA by knowingly and
27 intentionally misrepresenting, omitting, concealing, and/or failing to disclose material
28 facts regarding the quality, reliability, and safety of the Vehicles and the Thief

Friendly Design, as detailed above.

2188. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Minnesota DTPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2189. As detailed above, the information concerning the Thief Friendly Design

was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2190. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair or deceptive acts or practices prohibited by Minn. Stat. § 325D.44, Subd. 1:

      a.   Causing likelihood of confusion or misunderstanding as the approval or certification of the Vehicles;

      b.   Representing that the Vehicles have characteristics, uses, and benefits which they do not have;

      c.   Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

      d.   Advertising the Vehicles with the intent not to sell or lease them as advertised; and e. Engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

            Minn. Stat. §§ 325D.44, Subd. 1(1) (5), (7), (9), and (13)

2191. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2192. Defendants' unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2193. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were

material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2194. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2195. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased Vehicles susceptible to such high rates of theft, and that were stolen and vandalized due to the Thief Friendly Design.

2196. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2197. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2198. Pursuant to Minn. Stat. §§ 8.31(3a), 325D.45, and 549.20(1)(a), the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Minnesota CFA.

**E.    Fraud by Omission, and Concealment**

2199. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2200. Defendants' misleading representations include affirmative statements

that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2201. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2202. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

      a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

      b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

      c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

      d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2203. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2204. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2205. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2206. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2207. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2208. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2209. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

purchased or pay more for a Vehicle than they otherwise would have paid.

2210. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2211. As a direct and proximate result of Defendants' omissions, the Insureds purchased Vehicles that were susceptible to high rates of theft, that were stolen or vandalized, and that they would not have purchased the Vehicles if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2212. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

## F.  Negligence

2213. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2214. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2215. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2216. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2217. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States

and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2218. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2219. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## MISSISSIPPI STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Mississippi Subclasses, against All Defendants)

2220. Class Plaintiffs, the Hyundai Mississippi Subclass and Kia Mississippi Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2221. The Mississippi Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Mississippi due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Allstate Fire &  Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; Permanent General Assurance Company;  GEICO Advantage Insurance Company; GEICO Indemnity Company; GEICO General Insurance Company; Government Employees Insurance Company; Alliance United Insurance Company; Mountain Laurel Assurance Company; Progressive Gulf Insurance Company; Progressive Paloverde Insurance Company; Progressive Specialty Insurance Company; Root Insurance Company; Root Insurance Company; Garrison Property &

Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Mississippi pursuant to policies of insurance.

**A.    Breach of Implied Warranty of Merchantability under Miss. Code §§ 75-2-314 and 75-2A-212**

2222. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2223. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Miss. Code §§ 75-2-314 and 75-2A-212.

2224. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Miss. Code § 75-2-104(1) and "sellers" of motor vehicles under § 75-2-103(1)(d).

2225. Defendants are and were at all relevant times "lessors" of motor vehicles under Miss. Code § 75-2A-103(1)(p).

2226. The Vehicles are and were at all relevant times "goods" within the meaning of Miss. Code §§ 75-2-105(1) and 75-2A-103(1)(h).

2227. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2228. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition,

would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2229. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2230. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2231. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this

count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2232. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2233. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.    Breach of Express Warranty under Miss. Code § 75-2-313**

2234. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2235. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2236. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2237. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2238. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2239. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.    Violation of the Mississippi Consumer Protection Act under Miss. Code. Ann. § 75-24-1, et seq.**

2240. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2241. Defendants and Plaintiffs "persons" within the meaning of Miss. Code Ann. § 75-24-3(a).

2242. Defendants were and are engaged in "trade" or "commerce" within the meaning of Miss. Code Ann. § 75-24-3(b).

2243. The Mississippi Consumer Protection Act ("Mississippi CPA") states that "[u]nfair methods of competition affecting commerce and unfair or deceptive trade practices in or affecting commerce are prohibited." Miss. Code Ann. § 75-24-5(1).

2244. In the course of their business, Defendants, through their agents,

employees, and/or subsidiaries, violated the Mississippi CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2245. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Mississippi CPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

> a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

> b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

> c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

> d. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they

1    marketed and offered for sale and lease to consumers, Defendants

2    had the duty to disclose the whole truth.

3    2246. As detailed above, the information concerning the Thief Friendly Design

4  was known to Defendants at the time of advertising and selling the Vehicles, all of

5  which was intended to induce consumers to purchase the Vehicles.

6    2247. By misrepresenting the Vehicles as safe and reliable and by failing to

7  disclose and actively concealing the dangers and risk posed by the Thief Friendly

8  Design, Defendants engaged in unfair methods of competition and unfair or deceptive

9  acts or practices prohibited by Miss. Code Ann. § 75-24-5:

10         a.    Misrepresenting the approval or certification of the Vehicles;

11         b.    Representing that the Vehicles have approval, characteristics,

12               uses, or benefits that they do not have;

13         c.    Representing that the Vehicles are of a particular standard, quality,

14               and grade when they are not; and

15         d.    Advertising the Vehicles with the intent not to sell or lease them

16               as advertised. Miss. Code Ann. § 75-24-5(2)(b), (e), (g), and (i).

17    2248. Defendants intended for Plaintiffs' Insureds to rely on them to provide

18  adequately designed Vehicles, and to honestly and accurately reveal the safety

19  hazards described above.

20    2249. Defendants' unfair methods of competition and unfair or deceptive acts

21  or practices were designed to mislead and create a false impression in consumers that

22  the Vehicles had adequate anti-theft protection, and that the Vehicles were not

23  affected by the Thief Friendly Design. Indeed, those misrepresentations,

24  concealments, omissions, and suppressions of material facts did in fact deceive

25  reasonable consumers, including the Plaintiffs' Insureds, about the true safety and

26  reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

27    2250. Defendants' misrepresentations, concealments, omissions, and

28  suppressions of material facts regarding the Thief Friendly Design and true

characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2251. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2252. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2253. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2254. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2255. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2256. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants

have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2257. Pursuant to Miss Code Ann. §§ 75-24-9, -11, and -15, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Mississippi CPA, including but not limited to, restitution under Miss. Code Ann. § 75-24-11.

**D.     Fraud by Omission and Concealment**

2258. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2259. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2260. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2261. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

> a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;
>
> b.  Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1       c.    Defendants knew that the Thief Friendly Design gave rise to safety

2    concerns for the consumers who use the Vehicles, and the Thief

3    Friendly Design would have been a material fact to the Plaintiffs'

4    Insureds' decisions to buy or lease the Vehicles; and

5       d.    Defendants made incomplete representations about the safety and

6    reliability of the Vehicles while purposefully withholding material

7    facts about a known safety defect. In uniform advertising and

8    materials provided with each Vehicle, Defendants intentionally

9    concealed, suppressed, and failed to disclose to the consumers that

10   the Vehicles contained the Thief Friendly Design. Because they

11   volunteered to provide information about the Vehicles that they

12   marketed and offered for sale and lease to consumers, Defendants

13   had the duty to disclose the whole truth.

14   2262. In breach of their duties, Defendants failed to disclose the Thief Friendly

15   Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

16   2263. For the reasons set forth above, the Thief Friendly Design within the

17   Vehicles is material to the sale of the Vehicles because a reasonable person would

18   find it important in purchasing, leasing, or retaining a new or used motor vehicle and

19   because it directly impacts the value of the Vehicles purchased or leased by the

20   Plaintiffs' Insureds.

21   2264. Defendants intended for the Plaintiffs' Insureds to rely on their

22   omissions and concealment—which they did by purchasing and leasing the Vehicles

23   at the prices they paid believing that their vehicles would not have a Thief Friendly

24   Design that would affect the quality, reliability, and safety of the Vehicles.

25   2265. Plaintiffs' Insureds' reliance was reasonable, as they had no way of

26   learning the facts that Defendants had concealed or failed to disclose. Plaintiffs'

27   Insureds did not, and could not, unravel Defendants' deception on their own.

28   2266. Defendants actively concealed and suppressed these material facts, in

whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2267. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2268. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2269. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2270. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds purchased Vehicles that were stolen, or damaged, and they would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages in an amount to be proven at trial.

2271. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

2272. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2273. Named Subclass Members bring this count individually and on behalf of the other members of the Mississippi Subclasses against Defendants.

2274. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2275. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2276. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2277. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2278. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2279. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## MISSOURI STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Missouri Subclasses, against All Defendants)

2280. Class Plaintiffs, the Hyundai Missouri Subclass and Kia Missouri Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2281. The Missouri Subclasses are comprised of named and unnamed

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Missouri due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs:  Acuity, A Mutual Insurance Company; Allstate County Mutual Insurance Company; Allstate Fire & Property Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate North American Insurance Company; Allstate Property & Casualty Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.;  Permanent General Assurance Company; Erie Insurance Exchange; GEICO Casualty Company; GEICO General Insurance Company; Government Employees Insurance Company; Horace Mann Insurance Company; Teachers Insurance Company; American Access Casualty Company; Alpha Property & Casualty Insurance Company; Response Insurance Company; Warner Insurance Company; Employers Insurance Company of Wausau; Ohio Security Insurance Company; Allied Property & Casualty Insurance Company; Nationwide Insurance Company of America; Nationwide General Insurance Company; Progressive Advanced Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Northwestern Insurance Company; Progressive Universal Insurance Company; Root Insurance Company; State Automobile Mutual Insurance Company;  Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Missouri pursuant to policies of insurance.

**A.    Breach of Implied Warranty of Merchantability under Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212**

2282. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2283. A warranty that the Vehicles were in merchantable condition and fit for

the ordinary purpose for which such goods are used is implied by law pursuant to Mo. Rev. Stat. §§ 400.2-314 and 400.2A-212.

2284. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mo. Rev. Stat. §§ 400.2-104(1) and 400.2A-103(3), and "sellers" of motor vehicles under § 400.2-103(1)(d).

2285. Defendants are and were at all relevant times "lessors" of motor vehicles under Mo. Rev. Stat. § 400.2A-103(1)(p).

2286. Plaintiffs' Insureds who purchased Vehicles in Missouri are "buyers" within the meaning of Mo. Rev. Stat. § 400.2-103(1)(a).

2287. Plaintiffs' Insureds who leased Vehicles in Missouri are "lessees" within the meaning of Mo. Rev. Stat. § 400.2A-103(1)(n).

2288. The Vehicles are and were at all relevant times "goods" within the meaning of Mo. Rev. Stat. §§ 400.2-105(1) and 400.2A-103(1)(h).

2289. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2290. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard

because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2291. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2292. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2293. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2294. Alternatively, Plaintiffs were excused from providing Defendants with

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2295. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Mo. Rev. Stat. §§ 400.2-313**

2296. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2297. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2298. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2299. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2300. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are

capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2301. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C.     Violation of Missouri Merchandising Practices Act under Mo. Rev. Stat. § 4070.010, *et seq.*

2302. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2303. Defendants and Plaintiffs' Insureds are "persons" within the meaning of Mo. Rev. Stat. § 407.010(5).

2304. Defendants were and are engaged in "trade or commerce" within the meaning of Mo. Rev. Stat. § 407.010(7).

2305. Vehicles are "merchandise" within the meaning of Mo. Rev. Stat. § 407.010(4).

2306. The sale or lease of the Vehicles is a "sale" within the meaning of Mo. Rev. Stat. § 407.010(6).

2307. The Missouri Merchandising Practices Act ("Missouri MPA") states that "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce . . . is declared to be an unlawful practice." Mo. Rev. Stat. § 407.020(1).

2308. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Missouri MPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2309. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Missouri MPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

  a. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

  b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

  c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

  d. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1                          marketed and offered for sale and lease to consumers, Defendants

2                          had the duty to disclose the whole truth.

3      2310. As detailed above, the information concerning the Thief Friendly Design

4 was known to Defendants at the time of advertising and selling the Vehicles, all of

5 which was intended to induce consumers to purchase the Vehicles.

6      2311. By misrepresenting the Vehicles as safe and reliable and by failing to

7 disclose and actively concealing the dangers and risk posed by the Thief Friendly

8 Design, Defendants engaged in unfair methods of competition and unfair or deceptive

9 acts or practices prohibited by Mo. Rev. Stat. § 407.020(1): using or employing

10 deception, fraud, false pretense, false promise or misrepresentation, unfair practice or

11 the concealment, suppression or omission of a material fact with intent that others rely

12 upon such concealment, suppression or omission, in connection with the sale or

13 advertisement of the Vehicles in trade or commerce.

14      2312. Defendants intended for Plaintiffs' Insureds to rely on them to provide

15 adequately designed Vehicles, and to honestly and accurately reveal the safety

16 hazards described above.

17      2313. Defendants' unfair methods of competition and unfair or deceptive acts

18 or practices were designed to mislead and create a false impression in consumers that

19 the Vehicles had adequate anti-theft protection, and that the Vehicles were not

20 affected by the Thief Friendly Design. Indeed, those misrepresentations,

21 concealments, omissions, and suppressions of material facts did in fact deceive

22 reasonable consumers, including the Plaintiffs' Insureds, about the true safety and

23 reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

24      2314. Defendants' misrepresentations, concealments, omissions, and

25 suppressions of material facts regarding the Thief Friendly Design and true

26 characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to

27 purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were

28 exposed to those misrepresentations, concealments, omissions, and suppressions of

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2315. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2316. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2317. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2318. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2319. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2320. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1  nothing to remedy the Thief Friendly Design.

2  2321. Pursuant to Mo. Rev. Stat. § 407.025, the Plaintiffs and Plaintiffs'

3  Insureds seek an order enjoining Defendants' unfair methods of competition and

4  unfair or deceptive acts or practices and awarding damages and any other just and

5  proper relief available under the Missouri MPA.

6  **D.      Fraud by Omission and Concealment**

7  2322. Plaintiffs incorporate by reference each preceding and succeeding

8  paragraph as though fully set forth at length herein.

9  2323. Defendants' misleading representations include affirmative statements

10 that the Vehicles conform with all applicable safety and anti-theft standards. In reality,

11 however, the Vehicles do not comply with such standards.

12 2324. Defendants were aware of the Thief Friendly Design when they

13 marketed and sold the Vehicles to Plaintiffs' Insureds.

14 2325. Having been aware of the Thief Friendly Design within the Vehicles and

15 having known that Plaintiffs' Insureds could not have reasonably been expected to

16 know of the Thief Friendly Design, Defendants had a duty to disclose the Thief

17 Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

18 Defendants further had a duty to disclose the Thief Friendly Design because:

19          a.      Defendants had exclusive access to and far superior knowledge

20                  about facts regarding the Thief Friendly Design and Defendants

21                  knew these facts were not known to or reasonably discoverable by

22                  Plaintiffs' Insureds;

23          b.      Given the Thief Friendly Design's hidden and technical nature,

24                  Plaintiffs' Insureds lack the sophisticated expertise in vehicle

25                  components that would be necessary to discover the Thief

26                  Friendly Design on their own;

27          c.      Defendants knew that the Thief Friendly Design gave rise to safety

28                  concerns for the consumers who use the Vehicles, and the Thief

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

LEGAL\67600038\1

1    Friendly Design would have been a material fact to the Plaintiffs'

2    Insureds' decisions to buy or lease the Vehicles; and

3    d.    Defendants made incomplete representations about the safety and

4    reliability of the Vehicles while purposefully withholding material

5    facts about a known safety defect. In uniform advertising and

6    materials provided with each Vehicle, Defendants intentionally

7    concealed, suppressed, and failed to disclose to the consumers that

8    the Vehicles contained the Thief Friendly Design. Because they

9    volunteered to provide information about the Vehicles that they

10    marketed and offered for sale and lease to consumers, Defendants

11    had the duty to disclose the whole truth.

12    2326. In breach of their duties, Defendants failed to disclose the Thief Friendly

13    Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

14    2327. For the reasons set forth above, the Thief Friendly Design within the

15    Vehicles is material to the sale of the Vehicles because a reasonable person would

16    find it important in purchasing, leasing, or retaining a new or used motor vehicle and

17    because it directly impacts the value of the Vehicles purchased or leased by the

18    Plaintiffs' Insureds. Any consumer would view the Vehicles' non-compliance with

19    basic anti-theft and safety standards as a material fact that would influence their

20    decision to purchase a Vehicle.

21    2328. Defendants intended for the Plaintiffs' Insureds to rely on their

22    Plaintiffs' Insureds omissions and concealment—which they did by purchasing and

23    leasing the Vehicles at the prices they paid believing that their vehicles would not

24    have a Thief Friendly Design that would affect the quality, reliability, and safety of

25    the Vehicles.

26    2329. Plaintiffs' Insureds' reliance was reasonable, as they had no way of

27    learning the facts that Defendants had concealed or failed to disclose. Plaintiffs'

28    Insureds did not, and could not, unravel Defendants' deception on their own.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

2330. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2331. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2332. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2333. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2334. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2335. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

2336. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2337. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2338. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing

1  that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely
2  susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3     2339. Defendants failed to exercise reasonable care in connection with their
4  manufacture, distribution, sale, and/or leasing of the Vehicles.

5     2340. The National Highway Traffic Safety Administration has a self-
6  certification system of compliance where vehicle manufacturers certify that their
7  products meet applicable standards. Defendants had a duty to the general public to
8  ensure that all vehicles offered for sale were compliant to all applicable federal
9  standards. This duty precedes the offering of any vehicle for sale in the United States
10 and territories subject to the jurisdiction of federal regulations and is independent of
11 any duties arising through individual contracts for sale or lease that Defendants
12 entered into with Plaintiffs' Insureds.

13     2341. Defendants' violation of their duties under applicable law and/or the
14 applicable standard of care included their failure to comply with federal regulatory
15 requirements to equip their vehicles with mandatory anti-theft protection that
16 complies with the requirements of FMVSS.

17     2342. As a result of Defendants' failure to exercise reasonable care, Plaintiffs
18 and Plaintiffs' Insureds suffered damages, including property damage and the loss of
19 use of the Vehicles, together with other damages for which Defendants are liable.

20     **MONTANA STATE LAW CLAIMS FOR RELIEF**

21     **(Alleged by  Plaintiffs, and Members of Montana Subclasses, against All**
22     **Defendants)**

23     2343. Class Plaintiffs, the Hyundai Montana Subclass and Kia Montana
24 Subclass, and Independent Subrogation Plaintiffs allege the following causes of
25 action against All Defendants.

26     2344. The Montana Subclasses are comprised of named and unnamed
27 Members of the nationwide classes with claims stemming from vehicle losses
28 (including Kia and Hyundai Vehicles) in the State of Montana due to Defendants'

Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Permanent General Assurance Company; GEICO Advantage Insurance Company; GEICO General Insurance Company; Teachers Insurance Company; Progressive Direct Insurance Company; Progressive Northwestern Insurance Company; Progressive Specialty Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Montana pursuant to policies of insurance.

## A.   Breach of Implied Warranty of Merchantability under Mont. Code §§ 30-2-314 and 30-2A-212

2345. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2346. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Mont. Code §§ 30-2- 314 and 30-2A-212.

2347. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Mont. Code § 30-2-104(1) and "sellers" of motor vehicles under § 30-2-103(1)(d).

2348. Defendants are and were at all relevant times "lessors" of motor vehicles under Mont. Code § 30-2A-103(1)(p).

2349. The Vehicles are and were at all relevant times "goods" within the meaning of Mont. Code §§ 30-2-105(1) and 30-2A-103(1)(h).5. 904.

2350. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed,

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2351. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2352. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2353. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains,

which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2354. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2355. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2356. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Mont. Code § 30-2-313**

2357. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2358. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2359. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor

vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2360. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2361. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2362. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.      Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1973 (Mont. Code Ann. § 30-14-101, et seq.)**

2363. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2364. Defendants and Plaintiffs are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

2365. Plaintiffs' Insureds are "consumers" within the meaning of Mont. Code Ann. § 30-14-102(1).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

2366. Defendants were and are engaged in "trade" or "commerce" within the meaning of Mont. Code Ann. § 30-14-102(8).

2367. The Montana Unfair Trade Practices and Consumer Protection Act ("Montana CPA") states that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Mont. Code Ann. § 30-14-103.

2368. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Montana CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2369. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Montana CPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

d.   Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2370. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2371. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Mont. Code Ann. § 30-14-103.

2372. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2373. Defendants' unfair and deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2374. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2375. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2376. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2377. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2378. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2379. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2380. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants

have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2381. Pursuant to Mont. Code Ann. §30-14-133, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Montana CPA.

**D.    Fraud by Omission, and Concealment**

2382. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2383. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2384. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2385. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

  c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

  d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2386. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2387. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

2388. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2389. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2390. Defendants actively concealed and suppressed these material facts, in

whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2391. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2392. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2393. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2394. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2395. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.      Negligence**

2396. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2397. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2398. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely

susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2399. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2400. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2401. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2402. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## NEBRASKA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Plaintiffs, and Members of Nebraska Subclasses, against All Defendants)

2403. Class Plaintiffs, the Hyundai Nebraska Subclass and Kia Nebraska Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2404. The Nebraska Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Nebraska due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class

Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Northbrook Insurance Company; American Family Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; Permanent General Assurance Company; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO Casualty Company; GEICO General Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; GEICO Secure Insurance Company; Financial Indemnity Company; Ohio Security Insurance Company; Progressive County Mutual Insurance Company; Progressive Northern Insurance Company; Progressive Universal Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in  Nebraska pursuant to policies of insurance.

## A.    Breach of Implied Warranty of Merchantability under Neb. Rev. St. U.C.C. §§ 2-314 and 2A-212

2405. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2406. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Neb. Rev. St. U.C.C.§§ 2-314 and 2A-212.

2407. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Neb. Rev. St. U.C.C. § 2-104(1) and "sellers" of motor vehicles under § 2-103(1)(d).

2408. Defendants are and were at all relevant times "lessors" of motor vehicles under Neb. Rev. St. U.C.C. § 2A-103(1)(p).

2409. The Vehicles are and were at all relevant times "goods" within the

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

1  meaning of Neb. Rev. St. U.C.C. §§ 2-105(1) and 2A-103(1)(h).

2      2410. Defendants knew or had reason to know of the specific use for which the

3  Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied

4  warranty that the Vehicles and any parts thereof were merchantable and fit for the

5  ordinary purposes for which they were sold. This implied warranty included, among

6  other things, a warranty that the Vehicles were manufactured, supplied, distributed,

7  and sold by Defendants, were safe and reliable for providing transportation, would

8  not be vulnerable to an abnormally high risk of theft, and complied with applicable

9  federal and state laws and regulations, including FMVSS 114.

10      2411. However, the Vehicles did not comply with the implied warranty of

11 merchantability because they were defective and not in merchantable condition,

12 would not pass without objection in the trade, and were not fit for their ordinary

13 purpose of providing reasonably reliable, safe, and secure transportation at the time

14 of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly

15 Design, lacking any anti-theft features or design elements to provide an adequate theft

16 deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard

17 because the Thief Friendly Design renders Vehicles vulnerable to theft, making them

18 prime targets to be used as instrumentalities through which thieves engage in reckless

19 driving or other criminal activity.

20      2412. Any attempt by Defendants to disclaim or limit the implied warranty of

21 merchantability for their respective Vehicles vis-à-vis consumers is unconscionable

22 and unenforceable. Specifically, Defendants' warranty limitations are unenforceable

23 because Defendants knowingly sold or leased defective Vehicles without informing

24 consumers about the Thief Friendly Design. The time limits contained in Defendants'

25 warranty periods were also unconscionable and inadequate to protect Plaintiffs and

26 Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful

27 choice in determining these time limitations, the terms of which unreasonably favored

28 Defendants. A gross disparity in bargaining power existed between Defendants and

Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2413. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2414. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2415. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, upon information and belief, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2416. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Neb. Rev. St. U.C.C. §§ 2-313**

2417. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2418. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2419. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2420. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2421. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2422. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.**     **Violation of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601,** *et seq.***)**

2423. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2424. The Vehicles are "assets" within the meaning of Neb. Rev. Stat. § 59-1601(1).

2425. Defendants and Plaintiffs are "persons" within the meaning of Mont. Code Ann. § 30-14-102(6).

2426. Plaintiffs' Insureds are "consumers" within the meaning of Neb. Rev. Stat. § 59-1601(1).

2427. Defendants were and are engaged in "trade" or "commerce" within the meaning of Neb. Rev. Stat. § 59-1501(2).

2428. The Nebraska Consumer Protection Act ("Nebraska CPA") declares that "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful." Neb Rev. Stat. § 59-1602.

2429. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Nebraska CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2430. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Nebraska CPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

　　　　a.　　Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2431. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2432. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Neb. Rev. Stat. § 59-1602.

2433. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2434. Defendants' unfair and deceptive acts or practices were designed to

mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2435. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2436. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2437. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2438. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2439. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2440. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2441. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2442. Pursuant to Neb. Rev. Stat. § 59-1609, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Nebraska CPA.

**D.     Fraud by Omission, and Concealment**

2443. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2444. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2445. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2446. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2447. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2448. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.  Any consumer would view the Vehicles' non-compliance with

basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2449. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2450. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2451. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2452. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2453. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2454. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2455. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2456. Defendants' acts were done maliciously, oppressively, deliberately, with

intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

2457. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2458. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2459. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2460. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2461. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2462. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2463. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## NEVADA STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Nevada Subclasses, against All Defendants)

2464. Class Plaintiffs, the Hyundai Nevada Subclass and Kia Nevada Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2465. The Nevada Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Nevada due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate County Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Northbrook Indemnity Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO Secure Insurance Company; GEICO Casualty Company; GEICO Secure Insurance Company; Government Employees Insurance Company; Horace Mann Insurance Company; Teachers Insurance Company; Alliance United Insurance Company; American Access Casualty Company; Infinity Insurance Company; Financial Indemnity Company; Liberty Mutual Fire Insurance Company; Root Insurance Company; Progressive Direct Insurance Company; Progressive Garden State Insurance Company; Progressive Select Insurance Company; Progressive West Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Nevada pursuant to policies of insurance.

LEGAL\67600038\1

**A.      Breach of Implied Warranty of Merchantability under Nev. Rev. Stat. §§ 104.2314 and 104A.2212**

2466. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2467. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Nev. Rev. Stat. §§ 104.2314 and 104A.2212.

2468. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Nev. Rev. Stat. §§ 104.2104(1) and 104A.2103(3), and "sellers" of motor vehicles under § 104.2103(1)(c).

2469. Defendants are and were at all relevant times "lessors" of motor vehicles under Nev. Rev. Stat. § 104A.2103(1)(p).

2470. Plaintiffs' Insureds who purchased Vehicles in Nevada are "buyers" within the meaning of Nev. Rev. Stat. § 104.2103(1)(a).

2471. Plaintiffs' Insureds who leased Vehicles in Nevada are "lessees" within the meaning of Nev. Rev. Stat. § 104.2103(1)(a).

2472. The Vehicles are and were at all relevant times "goods" within the meaning of Nev. Rev. Stat. §§ 104.2105(1) and 104A.2103(1)(h).

2473. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2474. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition,

would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2475. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2476. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2477. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this

count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2478. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2479. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Nev. Rev. Stat. § 104.2313**

2480. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2481. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2482. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2483. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

1  them in accordance with the normal operation of the Vehicles and did not mishandle

2  or otherwise damage the Vehicles in any way that is material to the allegations set

3  forth herein.

4       2484. The Vehicles did not perform as promised in accordance with

5  Defendants' express warranty, as it has become common knowledge that they are

6  capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

7  applicable motor vehicle safety, and theft prevention standards in effect on the date

8  of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily

9  stolen, and thus failed to perform to the terms of the express warranty described in the

10  Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable

11  anti-theft standards.

12       2485. Plaintiffs have incurred and will continue to incur damages and costs and

13  expenses, including attorney's fees, as a result of the Thief Friendly Design and

14  related breach of Defendants' breach of express warranty that the Vehicles conform

15  to theft prevention standards.

16  **C.    Violation of the Deceptive Trade Practices Act under Nev. Rev. Stat. §**

17       **598.0903, et seq.**

18       2486. Plaintiffs reallege and incorporate by reference all preceding allegations

19  as though fully set forth herein.

20       2487. The Nevada Deceptive Trade Practices Act ("Nevada DTPA"), Nev.

21  Rev. Stat. § 598.0903, et seq. prohibits the use of deceptive trade practices in the

22  course of business and occupation.

23       2488. In the course of their business, Defendants, through their agents,

24  employees, and/or subsidiaries, violated the Nevada DTPA by knowingly and

25  intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

26  facts regarding the quality, reliability, and safety of the Vehicles and the Thief

27  Friendly Design, as detailed above.

28       2489. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from

unfair or deceptive practices under the Nevada DTPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because they possessed exclusive knowledge; they intentionally concealed the Thief Friendly Design from Plaintiffs' Insureds; and/or they made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

2490. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices prohibited by Nev. Rev. Stat. §§ 598.0915, 598.0923, and 598.0925:

    a.    Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

    b.    Representing that the Vehicles are of a particular standard, quality and grade when they are not;

    c.    Advertising the Vehicles with the intent not to sell or lease them as advertised;

    d.    Failing to disclose the Thief Friendly Design in connection with the sale of the Vehicles; and

    e.    Making an assertion of a scientific fact in an advertisement which would cause a reasonable person to believe that the assertion is true. Nev. Rev. Stat. §§ 598.0915(5), (7), (9), (15), 598.0923(2), and 598.0925.

2491. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2492. Defendants' unfair or deceptive acts or practices were designed to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly

Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2493. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2494. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2495. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2496. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2497. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2498. Pursuant to Nev. Rev. Stat. §§ 41.600, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and

1  unfair or deceptive acts or practices and awarding damages and any other just and

2  proper relief available under the Nevada DPA.

3  **D.    Fraud by Omission, and Concealment**

4  2499. Plaintiffs incorporate by reference each preceding and succeeding

5  paragraph as though fully set forth at length herein.

6  2500. Defendants' misleading representations include affirmative statements

7  that the Vehicles conform with all applicable safety and anti-theft standards.    In

8  reality, however, the Vehicles do not comply with such standards.

9  2501. Defendants were aware of the Thief Friendly Design when they

10 marketed and sold the Vehicles to Plaintiffs' Insureds.

11 2502. Having been aware of the Thief Friendly Design within the Vehicles and

12 having known that Plaintiffs' Insureds could not have reasonably been expected to

13 know of the Thief Friendly Design, Defendants had a duty to disclose the Thief

14 Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

15 Defendants further had a duty to disclose the Thief Friendly Design because:

16        a.    Defendants had exclusive access to and far superior knowledge

17              about facts regarding the Thief Friendly Design and Defendants

18              knew these facts were not known to or reasonably discoverable by

19              Plaintiffs' Insureds;

20        b.    Given the Thief Friendly Design's hidden and technical nature,

21              Plaintiffs' Insureds lack the sophisticated expertise in vehicle

22              components that would be necessary to discover the Thief

23              Friendly Design on their own;

24        c.    Defendants knew that the Thief Friendly Design gave rise to safety

25              concerns for the consumers who use the Vehicles, and the Thief

26              Friendly Design would have been a material fact to the Plaintiffs'

27              Insureds' decisions to buy or lease the Vehicles; and

28

d.  Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2503. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2504. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

2505. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2506. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2507. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

2508. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2509. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2510. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles, would have paid less for them, and could have taken measures to better secure them from theft.

2511. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2512. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

## E.    Negligence

2513. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2514. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

2515. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2516. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

2517. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2518. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2519. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## NEW HAMPSHIRE STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of New Hampshire Subclasses, against All Defendants)

2520. Class Plaintiffs, the Hyundai New Hampshire Subclass and Kia New Hampshire Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2521. The New Hampshire Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of New Hampshire due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; GEICO Advantage Insurance Company; GEICO Secure Insurance Company; Government Employees

Insurance Company; Progressive Northern Insurance Company; Progressive Universal Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; and USAA General Indemnity Company; all of whom paid policy proceeds to their respective Insureds in New Hampshire pursuant to policies of insurance.

## A.    Breach of Implied Warranty of Merchantability under N.H. Rev. Stat. §§ 382-A:2-314 and 2A-212

2522. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2523. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.H. Rev. Stat. §§ 382-A:2-314 and 382-A:2A-212.

2524. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.H. Rev. Stat. § 382-A:2-104(1) and "sellers" of motor vehicles under § 382-A:2- 103(1)(d).

2525. Defendants are and were at all relevant times "lessors" of motor vehicles under N.H. Rev. Stat. § 382-A:2A-103(1)(p).

2526. The Vehicles are and were at all relevant times "goods" within the meaning of N.H. Rev. Stat. §§ 382-A:2-105(1) and 382-A:2A-103(1)(h).

2527. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2528. However, the Vehicles did not comply with the implied warranty of

merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2529. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2530. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2531. Plaintiffs provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties by letter dated March 09, 2023.

Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2532. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2533. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty under N.H. Rev. Stat. §§ 382-A:2-313**

2534. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2535. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2536. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2537. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2538. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2539. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C.    Violation of the New Hampshire Consumer Protection Act under N.H. Rev. Stat. Ann. § 358-a:1, et seq.

2540. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2541. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of N.H. Rev. Stat.§ 358-A:1.

2542. Defendants engaged in "trade" and "commerce" within the meaning of N.H. Rev. Stat.§ 358-A:1.

2543. The New Hampshire Consumer Protection Act ("New Hampshire CPA") declares it unlawful "for any person to use any unfair method of competition or any unfair or deceptive act or practice in the conduct of any trade or commerce within this state." N.H. Rev. Stat.§ 358-A:2.

2544. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New Hampshire CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2545. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the New Hampshire CPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they

1           volunteered to provide information about the Vehicles that they
2           marketed and offered for sale and lease to Plaintiffs' Insureds,
3           Defendants had the duty to disclose the whole truth.

4    2546. By misrepresenting the Vehicles as safe and reliable and by failing to
5 disclose and actively concealing the dangers and risk posed by the Thief Friendly
6 Design, Defendants engaged in unfair methods of competition and unfair or deceptive
7 acts or practices prohibited by N.H. Rev. Stat. 358-A:2:

8        a.    Representing that the Vehicles have characteristics, uses, benefits,
9            and qualities which they do not have;

10       b.    Representing that the Vehicles are of a particular standard, quality
11           and grade when they are not;

12       c.    Advertising the Vehicles with the intent not to sell or lease them
13           as advertised;

14       d.    Failing to disclose the Thief Friendly Design in connection with
15           the sale of the Vehicles; and

16       e.    Making an assertion of a scientific fact in an advertisement which
17           would cause a reasonable person to believe that the assertion is
18           true. N.H. Rev. Stat. § 358-A:2(III), (VII), (IX)

19    2547. Defendants intended for Plaintiffs' Insureds to rely on them to provide
20 adequately designed Vehicles, and to honestly and accurately reveal the safety
21 hazards described above.

22    2548. Defendants' unfair or deceptive acts or practices were designed to
23 mislead and create a false impression in consumers that the Vehicles had adequate
24 anti-theft protection, and that the Vehicles were not affected by the Thief Friendly
25 Design. Indeed, those misrepresentations, concealments, omissions, and suppressions
26 of material facts did in fact deceive reasonable consumers, including the Plaintiffs'
27 Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and
28 the true value of Vehicles.

2549. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2550. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2551. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2552. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2553. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2554. Pursuant to N.H. Rev. Stat.§ 358-A:10, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New Hampshire CPA.

**D.     Fraud by Omission, and Concealment**

2555. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2556. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.   In reality, however, the Vehicles do not comply with such standards.

2557. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2558. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.     Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.     Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.     Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2559. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2560. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2561. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2562. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2563. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2564. If Defendants had fully and adequately disclosed the Thief Friendly

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1  Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2  2565. Through their omissions and concealment with respect to the Thief
3  Friendly Design within the Vehicles, Defendants intended to induce, and did induce,
4  Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have
5  purchased, or pay more for a Vehicle than they otherwise would have paid.

6  2566. Had Plaintiffs' Insureds known of the Thief Friendly Design within the
7  Vehicles, it is reasonably likely they would not have purchased the Vehicles or would
8  have paid less for them.

9  2567. As a direct and proximate result of Defendants' omissions, Plaintiffs'
10  Insureds either overpaid for the Vehicles or would not have purchased the Vehicles
11  at all if the Thief Friendly Design had been disclosed to them. Accordingly,
12  Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

13  2568. Defendants' acts were done maliciously, oppressively, deliberately, with
14  intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights
15  and well-being; and to enrich themselves.

16  **E.    Negligence**

17  2569. Plaintiffs reallege and incorporate by reference all preceding allegations
18  as though fully set forth herein.

19  2570. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

20  2571. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.
21  That duty of care included, at a minimum, the manufacture and sale of vehicles that
22  fully complied with all federal and industry safety and anti-theft standards; and failing
23  that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely
24  susceptible to theft by casual car thieves and miscreants in a matter of seconds.

25  2572. Defendants failed to exercise reasonable care in connection with their
26  manufacture, distribution, sale, and/or leasing of the Vehicles.

27  2573. The National Highway Traffic Safety Administration has a self-
28  certification system of compliance where vehicle manufacturers certify that their

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2574. Defendants breached their duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

2575. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

2576. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## NEW JERSEY STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of New Jersey Subclasses, against All Defendants)

2577. Class Plaintiffs, the Hyundai New Jersey Subclass and Kia New Jersey Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2578. The New Jersey Subclasses are comprised of named and unnamed Members of the nationwide classes with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of New Jersey due to the Defendants Thief Friendly Design; including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate New Jersey Insurance Company; Citizen's United Reciprocal

Exchange; Erie Insurance Exchange; Kemper Independence Insurance Company; Liberty Mutual Fire Insurance Company; Peerless Indemnity Insurance Company; New Jersey Indemnity Insurance Company; New Jersey Manufacturers Insurance Company; Drive New Jersey Insurance Company; Progressive Garden State Insurance Company; Progressive Southeastern Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in New Jersey pursuant to policies of Insurance.

### A.    Breach of Implied Warranty of Merchantability under N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212)

2579. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2580. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.J. Stat. Ann. §§ 12A:2-314 and 12A:2A-212.

2581. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.J. Stat. Ann. §§ 12A:2-104(1) and 12A:2A-103(3), and "sellers" of motor vehicles under § 12A:2-103(1)(d).

2582. Defendants are and were at all relevant times "lessors" of motor vehicles under N.J. Stat. Ann. § 12A:2A-103(1)(n).

2583. Plaintiffs' Insureds who purchased Vehicles in New Jersey are "buyers" within the meaning of N.J. Stat. Ann. § 12A:2-103(1)(a).

2584. Plaintiffs' Insureds who leased Vehicles in New Jersey are "lessees" within the meaning of N.J. Stat. Ann. § 12A:2A-103(1)(n).

2585. The Vehicles are and were at all relevant times "goods" within the meaning of N.J. Stat. Ann. §§ 12A:2-105(1) and 2A-103(1)(h).

2586. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2587. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2588. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at

1  the time of sale.

2      2589. Furthermore, the circumstances described herein caused Defendants'
3  exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and
4  Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of
5  warranties have denied Plaintiffs' Insureds the benefit of their respective bargains,
6  which presupposes they were (or are) able to use the Vehicles in a meaningful manner
7  without the ever–present risk of them being stolen.

8      2590. Plaintiffs have provided Defendants with reasonable notice and
9  opportunity to cure the breaches of their implied warranties. Additionally, all
10  Defendants were provided notice and opportunity to cure the issues raised in this
11  count and this Complaint by governmental investigations, numerous complaints filed
12  against them, internet videos, news reports, and the many individual notice letters sent
13  by Plaintiffs within a reasonable amount of time after the allegations of Vehicle
14  defects became public.

15      2591. Alternatively, Plaintiffs were excused from providing Defendants with
16  notice and an opportunity to cure the breach, because it would have been futile. As
17  alleged throughout Plaintiffs' Complaint, Defendants have long known that the
18  Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or
19  repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to
20  believe that Defendants would have adequately repaired the Thief Friendly Design if
21  they presented their Vehicles to them for repair.

22      2592. As a direct and proximate result of Defendants' breach of the implied
23  warranties, the Insureds' vehicles were and are defective, and the Thief Friendly
24  Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount
25  to be proven at trial.

26  **B.**     **Breach of Express Warranty under N.J. Stat. Ann. § 12A:2-313**

27      2593. Plaintiffs reallege and incorporate by reference all preceding allegations
28  as though fully set forth herein.

2594. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2595. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2596. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2597. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2598. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C.   Violation of New Jersey Consumer Fraud Act under N.J. Stat. Ann. § 56:8-1, et seq.

2599. Plaintiffs reallege and incorporate by reference all preceding allegations

1  as though fully set forth herein.

2     2600. Defendants, Plaintiffs and Plaintiffs' Insureds are "persons" within the

3  meaning of N.J. Stat. Ann. § 56:8-1(d).

4     2601. Vehicles are "merchandise" within the meaning of N.J. Stat. Ann. § 56:8-

5  1(c).

6     2602. The New Jersey Consumer Fraud Act ("New Jersey CFA") prohibits

7  unlawful practices, such as misrepresentation, or the knowing, concealment,

8  suppression, or omission of any material fact. N.J. Stat. Ann. § 56:8-2.

9     2603. In the course of their business, Defendants, through their agents,

10 employees, and/or subsidiaries, violated the New Jersey CFA by knowingly and

11 intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

12 facts regarding the quality, reliability, and safety of the Vehicles and the Thief

13 Friendly Design, as detailed above.

14    2604. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from

15 unfair or deceptive practices under the New Jersey CFA in the course of their

16 business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the

17 material facts concerning the Thief Friendly Design of the Vehicles because, as

18 detailed above:

19          a.    Defendants had exclusive access to and far superior knowledge

20                about facts regarding the Thief Friendly Design and Defendants

21                knew these facts were not known to or reasonably discoverable by

22                Plaintiffs' Insureds;

23          b.    Given the Thief Friendly Design's hidden and technical nature,

24                Plaintiffs' Insureds lack the sophisticated expertise in vehicle

25                components that would be necessary to discover the Thief

26                Friendly Design on their own;

27          c.    Defendants knew that the Thief Friendly Design gave rise to safety

28                concerns for the consumers who use the Vehicles, and the Thief

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1    Friendly Design would have been a material fact to the Plaintiffs'

2    Insureds' decisions to buy or lease Vehicles; and

3    d.    Defendants made incomplete representations about the safety and

4    reliability of Vehicles while purposefully withholding material

5    facts about a known safety defect. In uniform advertising and

6    materials provided with Vehicle, Defendants intentionally

7    concealed, suppressed, and failed to disclose to the consumers that

8    the Vehicles contained the Thief Friendly Design. Because they

9    volunteered to provide information about the Vehicles that they

10    marketed and offered for sale and lease to consumers, Defendants

11    had the duty to disclose the whole truth.

12    2605. As detailed above, the information concerning the Thief Friendly Design

13    was known to Defendants at the time of advertising and selling the Vehicles, all of

14    which was intended to induce consumers to purchase the Vehicles.

15    2606. By misrepresenting the Vehicles as safe and reliable and by failing to

16    disclose and actively concealing the dangers and risk posed by the Thief Friendly

17    Design, Defendants engaged in unfair methods of competition and unfair or deceptive

18    acts or practices prohibited by N.J. Stat. Ann. § 56:8-2: using or employing deception,

19    fraud, false pretense, false promise or misrepresentation, or the concealment,

20    suppression or omission of a material fact with intent that others rely upon such

21    concealment, suppression or omission, in connection with the advertisement and

22    sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived

23    or damaged thereby.

24    2607. Defendants intended for Plaintiffs' Insureds to rely on them to provide

25    adequately designed Vehicles, and to honestly and accurately reveal the safety

26    hazards described above.

27    2608. Defendants'    unlawful    acts    or    practices,    including    their

28    misrepresentations, concealments, omissions, and suppressions of material facts, were

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2609. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2610. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2611. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2612. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2613. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the

1    public interest.

2        2614. All Defendants were provided notice of the issues raised in this count
3    and this Complaint by the governmental investigations, the numerous complaints filed
4    against them, internet videos, news reports and the many individual notice letters sent
5    by Plaintiffs within a reasonable amount of time after the allegations of Vehicle
6    defects became public. Because Defendants failed to remedy their unlawful conduct,
7    Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

8        2615. Alternatively, providing notice to Defendants and an opportunity to cure
9    the breach prior to filing suit would have been futile. As alleged above, Defendants
10   have long known that the Vehicles contained the Thief Friendly Design yet did
11   nothing to remedy the Thief Friendly Design.

12       2616. Pursuant to Pursuant to N.J. Stat. Ann. § 56:8-19, the Plaintiffs and
13   Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of
14   competition and unfair or deceptive acts or practices and awarding damages and any
15   other just and proper relief available under the New Jersey CFA.

16   **D.    Fraud by Omission and Concealment**

17       2617. Plaintiffs incorporate by reference each preceding and succeeding
18   paragraph as though fully set forth at length herein.

19       2618. Defendants' misleading representations include affirmative statements
20   that the Vehicles conform with all applicable safety and anti-theft standards.  In
21   reality, however, the Vehicles do not comply with such standards.

22       2619. Defendants were aware of the Thief Friendly Design when they
23   marketed and sold the Vehicles to Plaintiffs' Insureds.

24       2620. Having been aware of the Thief Friendly Design within the Vehicles and
25   having known that Plaintiffs' Insureds could not have reasonably been expected to
26   know of the Thief Friendly Design, Defendants had a duty to disclose the Thief
27   Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.
28   Defendants further had a duty to disclose the Thief Friendly Design because:

a.  Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.  Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.  Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2621. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2622. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds. Any consumer would view the Vehicles' non-compliance with

basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2623. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2624. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2625. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2626. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2627. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2628. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2629. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2630. Defendants' acts were done maliciously, oppressively, deliberately, with

1  intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights

2  and well-being; and to enrich themselves.

3  **E.      Negligence**

4  2631. Plaintiffs incorporate by reference each preceding and succeeding

5  paragraph as though fully set forth at length herein.

6  2632. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

7  2633. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

8  That duty of care included, at a minimum, the manufacture and sale of vehicles that

9  fully complied with all federal and industry safety and anti-theft standards; and failing

10 that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely

11 susceptible to theft by casual car thieves and miscreants in a matter of seconds.

12 2634. Defendants failed to exercise reasonable care in connection with their

13 manufacture, distribution, sale, and/or leasing of the Vehicles.

14 2635. The National Highway Traffic Safety Administration has a self-

15 certification system of compliance where vehicle manufacturers certify that their

16 products meet applicable standards. Defendants had a duty to the general public to

17 ensure that all vehicles offered for sale were compliant to all applicable federal

18 standards. This duty precedes the offering of any vehicle for sale in the United States

19 and territories subject to the jurisdiction of federal regulations and is independent of

20 any duties arising through individual contracts for sale or lease that Defendants

21 entered into with Plaintiffs' Insureds.

22 2636. Defendants breached their duties when they negligently manufactured

23 and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices

24 required by federal standards, this faulty design known as the Thief Friendly Design.

25 2637. Defendants' violation of their duties under applicable law and/or the

26 applicable standard of care included their failure to comply with federal regulatory

27 requirements to equip their vehicles with mandatory anti-theft protection that

28 complies with the requirements of FMVSS.

2638. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

## NEW MEXICO STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of New Mexico Subclasses, against All Defendants)

2639. Class Plaintiffs, the Hyundai New Mexico Subclass and Kia New Mexico Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2640. The New Mexico Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of New Mexico due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Church Mutual Insurance Company, SI; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO General Insurance Company; Government Employees Insurance Company; Financial Indemnity Company; Unitrin Safeguard Insurance Company; Unitrin Auto and Home Insurance Company; American States Insurance Company; Progressive Direct Insurance Company; Progressive Preferred Insurance Company; Progressive Northern Insurance Company; General Casualty Company of Wisconsin; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in New Mexico pursuant to policies of insurance.

## A.      Breach of Implied Warranty (N.M. Stat. §§ 55-2-314 and 55-2A-212)

2641. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2642. Defendants were at all relevant times "merchants" with respect to motor vehicles under N.M. Stat. § 55-2-104(1) and "sellers" of motor vehicles under § 55-2-103(1)(d).

2643. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under N.M. Stat. § 55-2A-103(1)(p).

2644. The Vehicles are and were at all relevant times "goods" within the meaning of N.M. Stat. §§ 55-2-105(1) and 55-2A-103(1)(h).

2645. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.M. Stat. §§ 55-2- 314 and 55-2A-212.

2646. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs and the Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2647. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft

deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2648. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs and other Class Members. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2649. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2650. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2651. Alternatively, Plaintiffs and the Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles; nor does any such program address the vehicles already stolen or damaged due to the Thief Friendly Design. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2652. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Plaintiffs' Insureds' Vehicles were and are defective, and the Thief Friendly Design in their Vehicles has not been remedied. Therefore, Plaintiffs have been damaged, in an amount to be proven at trial.

**B.     Breach of Express Warranty N.M.S.A. §55-2-313**

2653. Plaintiffs  reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2654. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles manufactured by Defendants.

2655. Through the attachment of VIN plates in an open and obvious position visible upon entry to the Vehicles, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.   On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2656. The written statement that the Vehicles conform to all applicable Federal standards, including those for anti-theft, was an affirmation of fact and a promise of a kind that naturally would induce a buyer to purchase the Vehicles, which they might

not have done had they known the Vehicles did not meet the standards as warranted.

2657. Plaintiffs' Insureds purchased or leased the Vehicles and used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2658. The Vehicles did not perform as promised in accordance with Defendants' express warranty on the VIN plates.   In fact, the Vehicles were manufactured and sold without compliance to the applicable safety and theft prevention standards in effect on the date of manufacture and can be stolen in a matter of seconds, a fact that has become common knowledge. As a result of this Thief Friendly Design, the Vehicles were in fact easily and frequently stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates.

2659. As a direct and proximate result of Defendants' breach of their express warranty, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss to Plaintiff's Insureds' Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

## C.   Violation of the New Mexico Unfair Practices Act (N.M. Stat. Ann. §§ 57-12-1, et seq.)

2660. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2661. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of N.M. Stat. Ann. § 57-12-2.

2662. Defendants are engaged in "trade" or "commerce" within the meaning of N.M. Stat. Ann. § 57-12-2.

2663. The New Mexico Unfair Trade Practices Act ("NM UTPA") makes

unlawful any  [u]nfair methods or deceptive trade practices and unconscionable trade practices [.]" N.M. Stat. Ann. § 57-12-3.

2664. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the NM UPTA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2665. Defendants had an ongoing duty to the Plaintiffs to refrain from unfair or deceptive practices under the NM UTPA in the course of their business. Specifically, Defendants owed the Plaintiffs a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

2666. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

2667. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2668. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

2669. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2670. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2671. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices or unconscionable trade practices prohibited by N.M. Stat. Ann. § 57-12-2(D)(2), (5), (7); N.M. Stat. Ann. § 570-12-2(E)(1)-(2):

      a.    Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

      b.    Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have;

      c.    Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

      d.    Taking advantage of the lack of knowledge, ability, experience, or capacity of a person to grossly unfair degree; and

      e.    Resulting in a gross disparity between the value received by a person and the price paid.

2672. Defendants intended for Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2673. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2674. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

2675. Plaintiffs' and Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2676. Had they known the truth about the Thief Friendly Design, Plaintiffs and Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

2677. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2678. Defendants' violations present a continuing risk to Plaintiffs and Class Members, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2679. Pursuant to N.M. Stat. Ann. § 57-12-10, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the NM UTPA.

**D.      Fraud by Omission, Suppression and Concealment**

2680. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2681. Defendants were aware of the Thief Friendly Design when they

1    marketed and sold the Vehicles to Plaintiffs.

2        2682.  Having been aware of the Thief Friendly Design within the Vehicles, and

3    having known that Plaintiffs could not have reasonably been expected to know of the

4    Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design

5    to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty

6    to disclose the Thief Friendly Design because:

7            a.    Defendants had exclusive access to and far superior knowledge

8                about facts regarding the Thief Friendly Design and Defendants

9                knew these facts were not known to or reasonably discoverable by

10               Plaintiffs' Insureds;

11           b.    Given the Thief Friendly Design's hidden and technical nature,

12               Plaintiffs' Insureds lack the sophisticated expertise in vehicle

13               components that would be necessary to discover the Thief

14               Friendly Design on their own;

15           c.    Defendants knew that the Thief Friendly Design gave rise to safety

16               concerns for the consumers who use the Vehicles, and the Thief

17               Friendly Design would have been a material fact to the Plaintiffs'

18               Insureds' decisions to buy or lease Vehicles; and

19           d.    In uniform advertising and materials provided with each Vehicle,

20               Defendants intentionally concealed, suppressed, and failed to

21               disclose to the consumers that the Vehicles contained the Thief

22               Friendly Design. Because they volunteered to provide information

23               about the Vehicles that they marketed and offered for sale and

24               lease to consumers, Defendants had the duty to disclose the whole

25               truth.

26       2683.  In breach of their duties, Defendants failed to disclose the Thief Friendly

27    Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Instead,

28    Defendants made incomplete representations about the safety and reliability of the

Vehicles while purposefully withholding material facts about a known safety defect.

2684. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs.

2685. Defendants intended for the Plaintiffs to rely on their omissions and concealment, which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

2686. Plaintiffs' reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2687. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs'' Insureds.

2688. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs would have seen such a disclosure.

2689. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

2690. Had Plaintiffs known of the Thief Friendly Design within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

2691. As a direct and proximate result of Defendants' omissions, Plaintiffs and other Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased

the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

**E.    Negligence by Words**

2692.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2693.  Defendants were in the business of supplying information in connection with transactions in which they had a pecuniary interest.

2694.  Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  This information was used by consumers and Plaintiffs' Insureds to inform their business decisions as to whether or not to purchase or lease the Vehicles, and whether to take additional anti-theft precautions after such purchase or lease.

2695.  Defendants manufactured the Vehicles for sale to the public and had a pecuniary interest in the purchase and lease transactions with the Plaintiffs' Insureds.

2696.  Defendants had a duty to exercise reasonable care or competence in obtaining and communicating information for the guidance of others in these business transactions.

2697.  Defendants failed that duty by providing Plaintiffs' Insureds with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards. Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

2698.  At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was

actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction.

2699. Defendants were in a superior position to Plaintiffs' Insureds because they had knowledge about the compliance of the Vehicles to Federal standards, and about anti-theft features in each vehicle, that Plaintiffs' Insureds did not have the technical expertise or access to Defendants' manufacturing and compliance information to ascertain on their own, resulting in a great disparity of bargaining power between Defendants and Plaintiffs' Insureds.

2700. In addition, Defendants made affirmative statements on the VIN plates that were in an open and obvious position where Plaintiffs' Insureds could see them every time they entered the driver's side of the Vehicles.

2701. The Vehicles' compliance with Federal Standards for safety and anti-theft were material facts to the lease or purchase of the Vehicles by consumers, who had many other vehicles in the marketplace to choose from that did in fact comply with the standards as advertised and that Plaintiffs' Insureds may have chosen instead had they known of the Thief Friendly Design in the Defendants' Vehicles.

2702. Plaintiffs' Insureds were justified in relying on the misrepresentations, omissions, and false statements of material fact made by Defendants because the information presented by Defendants in the course of the transaction did not appear untrue at face value, and they had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold.

2703. Plaintiffs' Insureds relied on the negligent words of Defendants they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and

were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

2704. As a direct and proximate result of Defendants' negligence by words, both in concealment and failure to disclose material facts, and written statements that were not true, Plaintiffs' were obligated under policies of insurance with their Insureds to pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

## F.    Negligence

2705. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2706. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2707. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.   This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2708. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

2709. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft

at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2710. Defendants' acted with reckless disregard for the safety of the Plaintiffs' Insureds and their property when they manufactured and sold Vehicles that they knew did not comply with the applicable Federal standards, while omitting to disclose that fact to consumers and making affirmative statements that the Vehicles did comply.

2711. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## NEW YORK STATE LAW CLAIMS FOR RELIEF

### (Alleged by Plaintiffs, and Members of New York Subclasses, against All Defendants)

2712. Class Plaintiffs, the Hyundai New York Subclass and Kia New York Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2713. The New York Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including both Kia and Hyundai Vehicles) in the State of New York due to the Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate County Mutual Insurance Company; Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Insurance Company; Main Street America Protection Insurance Company; Old Dominion Insurance Company; Erie Insurance Company; Erie Insurance Company of New York; Erie Insurance Exchange; Erie Insurance Property & Casualty Company; GEICO General Insurance Company; GEICO Indemnity Company;

Government Employees Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Kemper Independence Insurance Company; Unitrin Direct Insurance Company; Unitrin Safeguard Insurance Company; Warner Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company; New Jersey Manufacturers Insurance Company; Progressive Max Insurance Company; Progressive Advanced Insurance Company; Progressive Casualty Insurance Company; Progressive Garden State Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in New York pursuant to policies of Insurance.

## A.     Breach of Implied Warranty (N.Y. U.C.C. Law §§ § 2-314 and § 2-315)

2714. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2715. Defendants were at all relevant times "sellers" and "merchants" with respect to motor vehicles under NY UCC §§ 2-103 and 2–104, and "Lessors NY UCC § 2-A-103(p).

2716. Plaintiffs stand in the shoes of their Insureds, who were at all relevant times "Buyers" under NY UCC §§ 2-103(1)(a) and "Lessees" under NY UCC § 2-A-103(1)(n).

2717. The Vehicles are and were at all relevant times "goods" within the meaning of NY UCC § 2–105.

2718. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to NY UCC § 2-314, and a warranty that the Vehicles were fit for the particular purpose for which they were sold to Plaintiffs' Insureds is implied by law pursuant to NY UCC § 2-315.

2719. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs and the Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2720. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2721. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2722. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2723. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2724. Alternatively, Plaintiffs and the Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2725. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Plaintiffs' Insureds' Vehicles were and are defective, and the Thief Friendly Design in their Vehicles has not been remedied. Therefore, Plaintiffs have been damaged, in an amount to be proven at trial.

**B.      Breach of Express Warranty NY UCC §2-313**

2726. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2727. Named Subclass Members bring this count individually and on behalf of the other members of the New York Subclasses against Defendants.

2728. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles manufactured by Defendants.

2729. Through the attachment of VIN plates in an open and obvious position visible upon entry to the Vehicles, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.   On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2730. The written statement that the Vehicles conform to all applicable Federal standards, including those for anti-theft, was an affirmation of fact and a promise of a kind that naturally would induce a buyer to purchase the Vehicles, which they might not have done had they known the Vehicles did not meet the standards as warranted.

2731. Plaintiffs' Insureds purchased or leased the Vehicles and used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2732. The Vehicles did not perform as promised in accordance with Defendants' express warranty on the VIN plates.   In fact, the Vehicles were manufactured and sold without compliance to the applicable safety and theft prevention standards in effect on the date of manufacture and can be stolen in a matter of seconds, a fact that has become common knowledge. As a result of this Thief Friendly Design, the Vehicles were in fact easily and frequently stolen, and thus failed

to perform to the terms of the express warranty described in the Vehicles' VIN plates.

2733. As a direct and proximate result of Defendants' breach of their express warranty, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss to Plaintiff's Insureds' Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

**C.      Violation of New York General Business Law § 349 (N.Y. Gen. Bus. Law § 349)**

2734. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2735. Plaintiffs and Plaintiffs' Insureds who are "persons" within the meaning of N.Y. Gen. Bus. Law § 349(h).

2736. Defendants are each a "person," "firm," "corporation," or "association" within the meaning of N.Y. Gen. Bus. Law § 349.

2737. The New York Deceptive Acts and Practices Act ("New York DAPA") prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce[.]" N.Y. Gen. Bus. Law. § 349.

2738. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York DAPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2739. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices under the New York DAPA in the course of their business. Specifically, Defendants owed the Plaintiffs a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

2740. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;

2741. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2742. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles;

2743. Defendants made general affirmative representations about the technological and safety innovations included with the Vehicles without telling consumers that the Vehicles had the Thief Friendly Design that would affect the safety, quality, and performance of the Vehicles; and

2744. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2745. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design to both consumers and NHTSA, Defendants engaged in deceptive acts or practices in the conduct of business, trade or commerce, and/or in the furnishing of any service, as prohibited by N.Y. Gen. Bus. Law § 349.

2746. Defendants intended for Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described

above.

2747. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety, reliability, quality, and true value of the Vehicles.

2748. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

2749. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2750. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

2751. As a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information, Plaintiffs were obligated under their policies of insurance with their Insureds pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

2752. Defendants' violations present a continuing risk to Plaintiffs' Insureds,

as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2753. Pursuant to N.Y. Gen. Bus. Law § 349, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the New York DAPA.

**D.     Violation of New York General Business Law § 350 (N.Y. Gen. Bus. Law § 350)**

2754. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein..

2755. Defendants were and are engaged in "conduct of business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

2756. The New York False Advertising Act ("New York FAA") prohibits "[f]alse advertising in the conduct of any business, trade or commerce." N.Y. Gen. Bus. Law § 350.

2757. Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by exercise of reasonable care should have been known by them to be untrue and misleading to consumers, including Plaintiffs' Insureds. Numerous examples of these statements and advertisements appear in the preceding paragraphs throughout this Complaint.

2758. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the New York FAA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2759. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices under the New York FAA in the course of their business.

Specifically, they owed Plaintiffs a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

    a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.     Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.     Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles;

    d.     In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2760. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design to both consumers and NHTSA, Defendants engaged in the false and misleading advertising practices prohibited by

N.Y. Gen. Bus. Law § 350.

2761. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2762. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

2763. Plaintiffs' and Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2764. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid significantly less for them.

2765. As a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information, Plaintiffs were obligated by the policies of insurance with their Insureds to pay for stolen Vehicles, or Vehicles that were damaged in the course of being stolen and suffered ascertainable losses and actual damages in amounts subject to proof at trial.

2766. Defendants' violations present a continuing risk to Plaintiffs and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

Plaintiffs' Insureds, as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2767. Pursuant to New York FAA, Plaintiffs seek an order enjoining Defendants' false advertising practices and awarding damages and any other just and proper relief available under the New York FAA.

**E.      Fraud by Omission and Concealment**

2768. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2769. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs.

2770. Because Defendants were the designers, manufacturers and sellers of the Vehicles, and their design information and marketing schemes were not ascertainable through publicly available sources, the Defendants had special knowledge and information regarding the Vehicles offered for sale to the Plaintiffs' Insureds that was not ascertainable by the Plaintiffs' Insureds.

2771. Defendants had a duty to disclose the Thief Friendly Design to the Plaintiffs' Insureds before the Vehicles were sold because they knew that the Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design and were relying on Defendants for information on the Vehicles features and compliance to applicable Federal standards for safety and anti-theft. Defendants further had a duty to disclose the Thief Friendly Design because:

a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.      Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle

1                    components that would be necessary to discover the Thief

2                    Friendly Design on their own;

3       c.    Defendants knew that the Thief Friendly Design gave rise to safety

4                    concerns for the consumers who use the Vehicles, and the Thief

5                    Friendly Design would have been a material fact to the Plaintiffs'

6                    Insureds' decisions to buy or lease Vehicles; and

7       d.    In uniform advertising and materials provided with each Vehicle,

8                    Defendants intentionally concealed, suppressed, and failed to

9                    disclose to the consumers that the Vehicles contained the Thief

10                   Friendly Design. Because they volunteered to provide information

11                   about the Vehicles that they marketed and offered for sale and

12                   lease to consumers, Defendants had the duty to disclose the whole

13                   truth.

14     2772. Defendants made incomplete representations about the safety and

15 reliability of the Vehicles while purposefully withholding material facts about a

16 known safety defect. In breach of their duties, Defendants failed to disclose the Thief

17 Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.  In

18 addition, Defendants made affirmative representations that the Vehicle complied with

19 Federal standards to the Plaintiffs' Insureds in the VIN plate affixed to the Vehicle in

20 a prominent place that the driver was exposed to every time they entered the Vehicle

21 and did not disclose to Plaintiffs' Insureds that the VIN plate compliance statement

22 was false with respect to anti-theft standards.

23     2773. The Thief Friendly Design within the Vehicles is material to the sale of

24 the Vehicles because a reasonable person would find it important in purchasing,

25 leasing, or retaining a new or used motor vehicle that it be compliant to applicable

26 Federal safety and anti-theft standards, and because it directly impacts the value of

27 the Vehicles purchased or leased by the Plaintiffs' Insureds.  Other comparable

28 vehicles for sale in the marketplace are compliant to the Federal standards, and the

Thief Friendly Design that made Defendants' Vehicles inferior to other vehicles offered for sale would be a material factor in the Plaintiffs' Insureds' decision whether to buy the Defendants' Vehicle, or one from another manufacturer that did not have the same defect.

2774. Defendants intended for the Plaintiffs to rely on their omissions and concealment by intentionally manufacturing some Vehicles with the Thief Friendly Design and then falsely marking them with the VIN plate as compliant to anti-theft standards, and then intentionally failing to disclose that information to prospective purchasers of the Vehicles.   Defendants made the affirmative statement of compliance, and knowing it to be false, they did not disclose the omitted material facts to the Plaintiffs' Insureds knowing that Plaintiffs' Insureds would rely on their representations about the Vehicle to make their buying or leasing decisions. In fact, the Plaintiffs' Insureds did rely on the Defendants' omissions of material fact and purchased and leased the Vehicles at prices that did not reflect the vehicles' Thief Friendly Design, and in the belief that the Vehicles did not have a defect that affected the quality, reliability, safety, and value of the Vehicles.

2775. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2776. Plaintiffs' reliance was justifiable and reasonable, as they had no way of discerning the facts that Defendants had concealed or failed to disclose. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

2777. Defendants actively and intentionally concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2778. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs would have seen such a disclosure.

2779. As a direct and proximate result of Defendants' omissions, Plaintiffs were obligated by their policies of insurance with their Insureds to pay for stolen Vehicles, or Vehicles damaged in the course of being stolen, and incurred actual damages in an ascertainable amount subject to proof at trial.

**F.    Negligent Misrepresentation**

2780. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2781. Defendants possessed unique and specialized expertise in the features and compliance of the Vehicles because they designed and manufactured the Vehicles and were responsible for the certifications to the cognizant Federal agencies of the Vehicles' compliance to Federal standards.  As such, this placed Defendants in a special position of confidence and trust with the Plaintiffs' Insureds and had a duty to disclose the Thief Friendly Design.

2782. In addition, Defendants created and disseminated information about the Vehicles to the public, consumers and to Plaintiffs' Insureds that described the Vehicles as compliant to Federal standards for safety and anti-theft.  Having made an affirmative statement that was false, the Defendants had a duty to disclose the truth.

2783. At the time the Defendants made these statements they were aware that the Plaintiffs' Insureds would rely on Defendants' statements and proceed with their vehicle purchasing or leasing decision.  The compliance of the Vehicles to Federal standards for safety and anti-theft were material facts because the Plaintiffs' Insureds may have chosen vehicles from other manufacturers that were compliant if they had known Defendants' vehicles did mot meet the Federal standards,  or would have paid less for Defendants' vehicles and been forewarned to take additional anti-theft precautions.

2784. Defendants failed their duties to Plaintiffs' Insureds by providing them

with false or incorrect information when they stated the Vehicles complied with all Federal Standards for safety and anti-theft, when they had information available to them that the Vehicles did not contain an anti-theft immobilizer required by those standards.  Further, Defendants omitted or failed to disclose material information when they did not inform Plaintiffs' Insureds that the Vehicles contained a Thief Friendly Design.

2785. Plaintiffs' Insureds had no way to obtain the information that the Vehicles were not compliant to the Federal standards for anti-theft as the information was not publicly available and could not be discerned without technical expertise and know-how they did not possess. Further, Plaintiffs' Insureds had no reason to doubt the authenticity of the statements provided by Defendants who they had good reason to presume were knowledgeable about the vehicles they manufactured and sold. Therefore, Plaintiffs' Insureds were justified in relying on the negligent misrepresentations by the Defendants when they purchased or leased their Vehicles.

2786. Plaintiffs' Insureds relied on the negligent words of Defendants they purchased or leased Vehicles they believed were adequately protected from theft in accordance with Federal standards, when in fact the Vehicles were easy to steal and were stolen at a much higher incidence than other vehicles that did comply with the Federal standards.

2787. As a direct and proximate result of Defendants' negligence by words, both in concealment and failure to disclose material facts, and written statements that were not true, Plaintiffs' were obligated under policies of insurance with their Insureds to pay for the stolen Vehicles, or for Vehicles damaged in the course of being stolen, and incurred damages of ascertainable value in an amount according to proof at trial.

## G.    Negligence

2788. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2789. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.   This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2790. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

2791. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2792. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**H.     Gross Negligence**

2793. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2794. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products

meet applicable standards.  Vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2795. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

2796. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

2797. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

2798. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2799. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## NORTH CAROLINA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Plaintiffs, and Members of North Carolina Subclasses, against All Defendants)

2800. Class Plaintiffs, the Hyundai North Carolina Subclass and Kia North Carolina Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2801. The North Carolina Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of North Carolina due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate County Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company; Erie Insurance Company; Erie Insurance Exchange; Government Employees Insurance Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; Infinity Insurance Company; Kemper Independence Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Nationwide Insurance Company of America; Titan Insurance Company; Progressive American Insurance Company; Progressive Premier Insurance Company of Illinois; Progressive Southeastern Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Association; all of whom paid their respective Insureds in North Carolina pursuant to policies of Insurance.

**A.    Breach of Implied Warranty (N.C.G.S. §§ 2-314 and § 2-315)**

2802.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2803.  Defendants were at all relevant times "sellers" and "merchants" with respect to Vehicles under N.C.G.S. §§ 2-103 and 2–104, and "Lessors N.C.G.S. § 2-A-103(p).

2804.  Plaintiffs stand in the shoes of their Insureds, who were at all relevant times "Buyers" under N.C.G.S. §§ 2-103(1)(a) and "Lessees" under N.C.G.S. § 2-A-103(1)(n).

2805.  The Vehicles are and were at all relevant times "goods" within the meaning of N.C.G.S. § 2–105.

2806.  A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to N.C.G.S. § 2-314, and a warranty that the Vehicles were fit for the particular purpose for which they were sold to Plaintiffs' Insureds is implied by law pursuant to N.C.G.S. § 2-315.

2807.  Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs and the Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2808.  However, the Vehicles did not comply with the implied warranty of

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2809. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles with respect to consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs. Among other things, Plaintiffs had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2810. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2811. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2812. Alternatively, Plaintiffs and the Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs had no reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2813. As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs' and Plaintiffs' Insureds' Vehicles were and are defective, and the Thief Friendly Design in their Vehicles has not been remedied. Therefore, Plaintiffs have been damaged, in an amount to be proven at trial.

**B.     Breach of Express Warranty N.C.G.S. §2-313.**

2814. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2815. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles manufactured by Defendants.

2816. Through the attachment of VIN plates in an open and obvious position visible upon entry to the Vehicles, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. Federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above.   On information and belief, similar written warranties were made prior to, or at the point

of sale for all Vehicles.

2817. The written statement that the Vehicles conform to all applicable Federal standards, including those for anti-theft, was an affirmation of fact and a promise of a kind that naturally would induce a buyer to purchase the Vehicles, which they might not have done had they known the Vehicles did not meet the standards as warranted.

2818. Plaintiffs' Insureds purchased or leased the Vehicles and used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2819. The Vehicles did not perform as promised in accordance with Defendants' express warranty on the VIN plates.   In fact, the Vehicles were manufactured and sold without compliance to the applicable safety and theft prevention standards in effect on the date of manufacture and can be stolen in a matter of seconds, a fact that has become common knowledge. As a result of this Thief Friendly Design, the Vehicles were in fact easily and frequently stolen, and thus failed to perform pursuant to the terms of the express warranty described in the Vehicles' VIN plates.

2820. As a direct and proximate result of Defendants' breach of their express warranty, Plaintiffs were obligated under their policies of insurance with their Insureds to pay for damage to or loss to Plaintiff's Insureds' Vehicles that were stolen or damaged in the course of being stolen because of the Thief Friendly Design. As a result, Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of their express warranty by Defendants.

## C.     Violation of the North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1.1, et seq.)

2821. Plaintiffs reallege and incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2822. Defendants were and are engaged in "commerce" within the meaning of N.C. Gen. Stat. § 75-1.1(b).

2823. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the North Carolina Unfair and Deceptive Trade Practices Act ("North Carolina UDTPA") by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2824. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices under the North Carolina UDTPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds' a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

2825. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds.

2826. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2827. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

2828. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design.

2829. Because they volunteered to provide information about the Vehicles that

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2830. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2831. By misrepresenting the Vehicles as safe and reliable and free from defects, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce prohibited by N.C. Gen. Stat. § 75-16.

2832. Defendants intended for Plaintiffs to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2833. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs, about the true safety and reliability of Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

2834. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs to purchase and lease those vehicles, as Defendants intended. Plaintiffs were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the      Vehicles were safe and reliable in deciding to purchase and lease Vehicles.

2835. Plaintiffs' and Plaintiffs' Insureds' reliance was reasonable, as they had

no way of discerning that Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiff and Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2836. Had Plaintiffs known the truth about the Thief Friendly Design, Plaintiffs would not have purchased or leased the Vehicles, or would have paid significantly less for them.

2837. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2838. Defendants' violations present a continuing risk to Plaintiff and Class Members, as well as to the general public, because the Vehicles remain unsafe due to the .Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2839. Pursuant to N.C. Gen. Stat. § 75-16, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the North Carolina UDTPA.

**D.    Negligence**

2840. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2841. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.  Defendants had a duty to the general public as manufacturers and sellers of automobiles, operating in a sector subject to Federal regulation for the benefit and safety of the general public, to ensure that the vehicles they offered for sale were compliant to all applicable Federal standards.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising

through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2842. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design.

2843. Defendants' negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2844. As a direct and proximate result of Defendants negligence in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## E.    Gross Negligence

2845. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2846. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify their products meet applicable standards.   Motor vehicles are a significant instrumentality of personal injury and property damage to consumers and the general public, and as designers, manufacturers and sellers of vehicles Defendants had a duty to the general public to ensure that the vehicles they offered for sale were safe and did not create a substantial risk to consumers.  This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of Federal Regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

2847. Defendants breached that duty when they manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by Federal standards, containing the Thief Friendly Design, in reckless indifference to the safety of consumers and the general public, and the rights of the Plaintiffs' Insureds to use a vehicle that was not unreasonably dangerous for the purposes they purchased or leased it for.

2848. By intentionally manufacturing and selling certain vehicles with the Thief Friendly Design the Defendants failed to use even slight care in the protection of all their customers equally and in compliance with the Federal standards, conduct that was so careless as to show reckless indifference for the rights and safety of others.

2849. At the time Defendants designed, manufactured, and offered for sale certain vehicles with the Thief Friendly Design they made a conscious decision to disregard the substantial and known risk of those vehicles being stolen in order to make profit from the sale of the Vehicles.

2850. Defendants' grossly negligent manufacture and sale of non-compliant vehicles containing the Thief Friendly Design allowed those vehicles to be targeted for theft at a much higher rate than they would have if the vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased or leased from Defendants were stolen, or damaged in the course of being stolen.

2851. As a direct and proximate result of Defendants gross negligence and reckless disregard for the safety of the public in manufacturing and selling non-compliant vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurance with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## NORTH DAKOTA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Plaintiffs, and Members of North Dakota Subclasses, against All Defendants)

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

2852. Class Plaintiffs, the Hyundai North Dakota Subclass and Kia North Dakota Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2853. The North Dakota Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of North Dakota due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Northbrook Indemnity Company; American Family Insurance Company; American Family Mutual Insurance Company, SI; Permanent General Assurance Company; GEICO General Insurance Company; GEICO Indemnity Company; Horace Mann Insurance Company; Allied Property & Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Northwestern Insurance Company; USAA Casualty Insurance Company; USAA General Insurance Company; all of whom paid policy proceeds to their respective Insureds in North Dakota pursuant to policies of Insurance.

**A.      Breach of Implied Warranty of Merchantability under N.D. Cent. Code §§ 41-02-31 and 41-02.1-21**

2854. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2855. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to N.D. Cent. Code §§ 41-02-31 and 41-02.1-21.

2856. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under N.D. Cent. Code § 41-02.04(3) and "sellers" of motor vehicles under § 41-02-03(1)(d).

2857. Defendants are and were at all relevant times "lessors" of motor vehicles under N.D. Cent. Code § 41-02.1-03(1)(q).

2858. Plaintiffs' Insureds who purchased Vehicles in North Dakota are "buyers" within the meaning of N.D. Cent. Code § 41-02-03(1)(a).

2859. Plaintiffs' Insureds who leased Vehicles in North Dakota are "lessees" within the meaning of N.D. Cent. Code § 41-02.1-03(1)(o).

2860. The Vehicles are and were at all relevant times "goods" within the meaning of N.D. Cent. Code §§ 41-02-05(2) and 41-02.1-03(1)(h).5.

2861. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2862. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2863. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing

consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2864. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2865. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2866. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2867. As a direct and proximate result of Defendants' breach of the implied

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1  warranties, the Insureds' vehicles were and are defective, and the Thief Friendly

2  Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount

3  to be proven at trial.

4  **B.    Breach of Express Warranty under N.D. Cent. Code § 41-02-30**

5      2868. Plaintiffs reallege and incorporate by reference all preceding allegations

6  as though fully set forth herein.

7      2869. During the relevant time period described above, Plaintiffs' Insureds

8  purchased or leased Vehicles.

9      2870. These Vehicles were manufactured by Defendants during the relevant

10  time period described above. Through the attachment of VIN plates, Defendants made

11  an express warranty that the Vehicles conform to all applicable U.S.A. federal motor

12  vehicle safety, bumper, and theft prevention standards in effect on the date of

13  manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

14  Vehicle is provided above. On information and belief, similar written warranties were

15  made prior to, or at the point of sale for all Vehicles.

16      2871. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

17  them in accordance with the normal operation of the Vehicles and did not mishandle

18  or otherwise damage the Vehicles in any way that is material to the allegations set

19  forth herein.

20      2872. The Vehicles did not perform as promised in accordance with

21  Defendants' express warranty, as it has become common knowledge that they are

22  capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

23  applicable motor vehicle safety, and theft prevention standards in effect on the date

24  of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily

25  stolen, and thus failed to perform to the terms of the express warranty described in the

26  Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable

27  anti-theft standards.

28      2873. Plaintiffs have incurred and will continue to incur damages and costs and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.  Violation of North Dakota Consumer Fraud Act under N.D. Cent. Code § 51-15-02, et seq.**

2874. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2875. Defendants,  Plaintiffs and Plaintiffs' Insureds are "persons" within the meaning of N.D. Cent. Code § 51-15-02(4).

2876. Defendants were and are engaged in "sale" of "merchandise" within the meaning of N.D. Cent. Code § 51-15-02(3), (5).

2877. The North Dakota Consumer Fraud Act ("North Dakota CFA") makes unlawful "[t]he act, use or employment by any person of any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise…" N.D. Cent. Code § 51-15-02.

2878. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the North Dakota CFA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2879. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the North Dakota CFA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

2880. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not

known to or reasonably discoverable by Plaintiffs' Insureds;

2881. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2882. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

2883. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2884. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2885. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by N.D. Cent. Code § 51-15-02: using or employing deception, fraud, false pretense, false promise or misrepresentation, with intent that others rely thereon, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby.

2886. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety

1  hazards described above.

2  2887. Defendants' unfair and deceptive acts or practices were designed to
3  mislead and had a tendency or capacity to mislead and create a false impression in
4  consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles
5  were not affected by the Thief Friendly Design. Indeed, those misrepresentations,
6  concealments, omissions, and suppressions of material facts did in fact deceive
7  reasonable consumers, including the Plaintiffs' Insureds, about the true safety and
8  reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

9  2888. Defendants'    misrepresentations,    concealments,    omissions,    and
10  suppressions of material facts regarding the Thief Friendly Design and true
11  characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to
12  purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were
13  exposed to those misrepresentations, concealments, omissions, and suppressions of
14  material facts, and relied on Defendants' misrepresentations that the Vehicles were
15  safe and reliable in deciding to purchase and lease the Vehicles.

16  2889. Plaintiffs' Insureds' reliance was reasonable, as they had no way of
17  discerning that Defendants' representations were false and misleading and/or
18  otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above.
19  Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their
20  own.

21  2890. Had they known the truth about the Thief Friendly Design, Plaintiffs'
22  Insureds would not have purchased or leased the Vehicles, or would have paid
23  significantly less for them.

24  2891. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual
25  damages as a direct and proximate result of Defendants' concealment,
26  misrepresentations, and/or failure to disclose material information.

27  2892. Defendants' violations present a continuing risk to Plaintiffs as well as
28  to the general public, because the Vehicles remain unsafe due to the Thief Friendly

Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2893. All Defendants were provided notice of the issues raised in this count and this Complaint by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2894. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2895. Pursuant to N.D. Cent. Code Ann. §§ 51-15-07 and 51-15-09, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the North Dakota CFA.

**D.     Fraud by Omission and Concealment**

2896. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2897. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

2898. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

2899. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

Defendants further had a duty to disclose the Thief Friendly Design because:

2900. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

2901. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2902. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

2903. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2904. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

2905. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

2906. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly

Design that would affect the quality, reliability, and safety of the Vehicles.

2907. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2908. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

2909. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

2910. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

2911. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

2912. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

2913. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.   Negligence**

2914. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2915. Plaintiffs had a duty to the Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

2916. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

2917. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

2918. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

2919. As a direct and approximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## F.    Negligent Misrepresentation

2920. Plaintiffs incorporate by reference each preceding and succeeding

1  paragraph as though fully set forth at length herein.

2       2921. In North Dakota, a claim for relief based on negligent misrepresentation

3  arises under statute, N.D. Cent. § 9-03-08(2), as opposed to the general law of

4  negligence. See *Bourgois v. Montana-Dakota Utilities, Co.*, 466 N.W.2d 813, 818

5  (N.D. 1991). However, unliked actual fraud, N.D. Cent. § 9-03-08(2) states: "[t]he

6  positive assertion, in a manner not warranted by the information of the person making

7  it, of that which is not true through he believes it to be true," which requires no

8  knowledge or belief in falsity, but instead only requires a statement based on

9  insufficient evidence.

10      2922. Defendants' misleading representations include affirmative statements

11  that the Vehicles conform with all applicable safety and anti-theft standards. In reality,

12  however, the Vehicles do not comply with such standards.

13      2923. Defendants were aware of the Thief Friendly Design when they

14  marketed and sold the Vehicles to Plaintiffs' Insureds.

15      2924. At the time that Defendants made the incorrect statements or omissions

16  of fact, they had failed to exercise reasonable care or competence in confirming that

17  the information provided to Plaintiffs' Insureds to guide their business transaction was

18  actually true.  Further, Defendants had access to the correct information at the time

19  they made the statements and omissions and negligently failed to confirm the truth of

20  the statements they made about the Vehicles anti-theft compliance before negligently

21  providing misleading and false information to the Plaintiffs' Insureds in the course of

22  the business transaction, sale or lease of Vehicles.

23      2925. Defendants had a duty to disclose the Thief Friendly Design because they

24  consistently marketed that the Vehicles conform to all applicable U.S.A. federal

25  motor vehicle safety, bumper, and theft prevention standards in effect on the date of

26  manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

27  Vehicle is provided above. Once Defendants made representations to the public about

28  safety and theft prevention, Defendants were under a duty to disclose these omitted

facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

2926. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds suffered damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## OHIO STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Ohio Subclasses, against All Defendants)

2927. Class Plaintiffs, the Hyundai Ohio Subclass and Kia Ohio Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

2928. The Ohio Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Ohio due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, SI; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; Erie Insurance Property & Casualty Company; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO Secure Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Alpha Property & Casualty Insurance Company; American Access Casualty Company; Infinity Auto Insurance Company; Response Insurance Company; Liberty Mutual Fire Insurance Company; The Netherlands Insurance Company; Ohio Security Insurance Company; Allied Property & Casualty Insurance Company;

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

Nationwide Mutual Fire Insurance Company; Nationwide General Insurance Company; New Jersey Manufacturers Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Specialty Insurance Company; Progressive Preferred Insurance Company; Root Insurance Company; Milbank Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Ohio pursuant to policies of insurance.

A.      **Breach of Implied Warranty of Merchantability under Ohio Rev. Code Ann. §§ 1302.27 and 1310.19**

2929. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2930. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Ohio Rev. Code §§ 1302.27 and 1310.19.

2931. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Ohio Rev. Code §§ 1302.01(5) and 1310.01(A)(20), and "sellers" of motor vehicles under § 1302.01(4).

2932. Defendants are and were at all relevant times "lessors" of motor vehicles under Ohio Rev. Code § 1310.01(A)(16).

2933. Plaintiffs' Insureds who purchased Vehicles in Ohio are "buyers" within the meaning of Ohio Rev. Code §§ 1302.01(A)(1).

2934. Plaintiffs' Insureds who leased Vehicles in Ohio are "lessees" within the meaning of Ohio Rev. Code § 1310.01(A)(14).

2935. The Vehicles are and were at all relevant times "goods" within the meaning of Ohio Rev. Code §§ 1302.01(8) and 1310.01(A)(8).

2936. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied

warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

2937. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

2938. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

2939. Furthermore, the circumstances described herein caused Defendants'

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

2940. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

2941. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

2942. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Ohio Rev. Code Ann. § 1302.26**

2943. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2944. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

2945. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

2946. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

2947. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

2948. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.      Violation of Ohio Consumer Sales Practices Act under Ohio Rev. Code § 1345.01. et seq.**

2949. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

2950. Defendants,  Plaintiffs and Plaintiffs' Insureds are "persons" within the

meaning of Ohio Rev. Code § 1345.01(B).

2951. Defendants are "supplier[s]" as defined by Ohio Rev. Code § 1345.01(C).

2952. Plaintiffs' Insureds are "consumers" within the meaning of Ohio Rev. Code § 1345.01(D), and their purchase and leases of the Vehicles are "consumer transactions" within the meaning of Ohio Rev. Code § 1345.01(A).

2953. The Ohio Consumer Sales Practices Act ("Ohio CSPA") prohibits unfair or deceptive acts or practices in connection with a consumer transaction. Ohio Rev. Code § 1345.02.

2954. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Ohio CSPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2955. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Ohio CSPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

2956. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

2957. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2958. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

2959. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2960. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2961. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ohio CSPA:

2962. Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have; and

2963. Representing that the Vehicles are of a particular standard, quality, and grade when they are not. Ohio Rev. Code § 1345.02.

2964. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2965. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2966. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.

2967. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2968. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles.

2969. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

2970. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

2971. Plaintiffs provided notice of the issues raised in this count by letter dated March 09, 2023. Alternatively, Defendants had ample notice provided by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

2972. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

2973. Pursuant to Ohio Rev. Code § 1345.09, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Ohio CSPA.

**D.     Violation of Ohio Deceptive Trade Practices Act under Ohio Rev. Code § 4165.01 et seq.**

2974. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

2975. Defendants, Plaintiffs, and Plaintiffs' Insureds are "persons" within the meaning of Ohio Rev. Code § 4165.01(D).

2976. Defendants are engaged in "the course of [their] business" within the meaning of Ohio Rev. Code § 4165.02(A).

2977. The Ohio Deceptive Trade Practices Act ("Ohio DTPA") makes unlawful deceptive trade practices. Ohio Rev. Code § 4165.02(A).

2978. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Ohio DTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

2979. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Ohio DTPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

2980. Defendants had exclusive access to and far superior knowledge about

facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

2981. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

2982. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

2983. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

2984. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

2985. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Ohio DTPA:

2986. Causing likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles;

2987. Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

2988. Representing that the Vehicles are of a particular standard, quality and

grade when they are not; and

2989. Advertising the Vehicles with the intent not to sell or lease them as advertised. Ohio Rev. Code § 4165.02(A).

2990. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

2991. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

2992. Defendants' misrepresentations, concealments, omissions, and suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles.  Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

2993. The Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

2994. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles or would have paid

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1  significantly less for them.

2  2995. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual
3  damages as a direct and proximate result of Defendants' concealment,
4  misrepresentations, and/or failure to disclose material information.

5  2996. Defendants' violations present a continuing risk to Plaintiffs as well as
6  to the general public, because the Vehicles remain unsafe due to the Thief Friendly
7  Design. Defendants' unlawful acts and practices complained of herein affect the
8  public interest.

9  2997. All Defendants were provided notice of the issues raised in this count
10 and this Complaint by the governmental investigations, the numerous complaints filed
11 against them, internet videos, news reports and the many individual notice letters sent
12 by Plaintiffs within a reasonable amount of time after the allegations of Vehicle
13 defects became public. Because Defendants failed to remedy their unlawful conduct,
14 Plaintiffs seek all damages and relief to which Plaintiffs' Insureds are entitled.

15 2998. Alternatively, providing notice to Defendants and an opportunity to cure
16 the breach prior to filing suit would have been futile. As alleged above, Defendants
17 have long known that the Vehicles contained the Thief Friendly Design yet did
18 nothing to remedy the Thief Friendly Design.

19 2999. Pursuant to Ohio Rev. Code §§ 2727.02 and 4165.03, the Plaintiffs and
20 Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of
21 competition and unfair or deceptive acts or practices and awarding damages and any
22 other just and proper relief available under the Ohio DTPA.

23 **E.    Fraud by Misrepresentation, Omission and Concealment**

24 3000. Plaintiffs incorporate by reference each preceding and succeeding
25 paragraph as though fully set forth at length herein.

26 3001. Defendants' misleading representations include affirmative statements
27 that the Vehicles conform with all applicable safety and anti-theft standards. In reality,
28 however, the Vehicles do not comply with such standards.

3002. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3003. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

3004. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

3005. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

3006. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

3007. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3008. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3009. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would

find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

3010. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3011. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3012. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3013. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3014. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased.

3015. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles, would have paid less for them, or taken measures to secure the vehicles from theft.

3016. As a direct and proximate result of Defendants' omissions, the Insureds purchased Vehicles highly susceptible to theft that they would not have purchased at

all if the Thief Friendly Design had been disclosed to them, and those Vehicles were stolen and damaged as a result. The Insureds were also prevented, due to concealment truth, from taking measures to prevent their Vehicles from being stolen or damaged. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3017. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**F.    Negligence**

3018. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3019. Defendants owed a duty to the Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3020. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3021. Defendants breached their duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3022. Defendants' negligent manufacture, sale and lease of non-compliant

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3023. As a direct and approximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## **OKLAHOMA STATE LAW CLAIMS FOR RELIEF**

### **(Alleged by  Plaintiffs, and Members of Oklahoma Subclasses, against All Defendants)**

3024. Class Plaintiffs, the Hyundai Oklahoma Subclass and Kia Oklahoma Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3025. The Oklahoma Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Oklahoma due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Permanent General Assurance Corporation; GEICO Casualty Company; GEICO Choice Insurance Company; GEICO County Mutual Insurance Company; Government Employees Insurance Company; Horace Mann Property & Casualty Insurance Company; Charter Indemnity Company; Unitrin County Mutual Insurance Company; Infinity Insurance Company; Progressive Direct Insurance Company; Nationwide Mutual Insurance Company; Progressive Northern Insurance Company; Progressive County Mutual Insurance Company; Progressive Northwestern Insurance Company; Root Insurance Company; Garrison Property &

Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Oklahoma pursuant to policies of insurance.

## A. Breach of Implied Warranty of Merchantability under Okla. Stat. Ann. Tit. §§ 2-314 and 2A-212

3026. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3027. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Okla. Stat. Ann. Tit. §§ 2-314 and 2A-212.

3028. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Okla. Stat. Ann. tit. 12A, §§ 2-104(1) and 2-A-103(3), and "sellers" of motor vehicles under § 2-103(1)(c).

3029. Defendants are and were at all relevant times "lessors" of motor vehicles under Okla. Stat. Ann. tit. 12A, § 2A-103(1)(p).

3030. Plaintiffs' Insureds who purchased Vehicles in Oklahoma are "buyers" within the meaning of Okla. Stat. Ann. tit. 12A, § 2-103(1)(a).

3031. Plaintiffs' Insureds who leased Vehicles in Oklahoma are "lessees" within the meaning of Okla. Stat. Ann. tit. 12A, § 2A-103(1)(n).

3032. The Vehicles are and were at all relevant times "goods" within the meaning of Okla. Stat. Ann. tit. 12A, §§ 2-105(1) and 2A-103(1)(h).

3033. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would

not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3034. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3035. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3036. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner

without the ever–present risk of them being stolen.

3037. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3038. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3039. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.    Breach of Express Warranty under Okla. Stat. Ann. tit. 12A, § 2-313**

3040. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3041. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3042. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of

manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3043. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3044. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3045. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.    Violation of Oklahoma Consumer Protection Act under Okla. Stat. Ann. tit. 15, § 751, et seq.**

3046. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3047. Defendants,  Plaintiffs and Plaintiffs' Insureds are "persons" within the meaning of Okla. Stat. tit. 15, § 752(1).

3048. Defendants were and are engaged in "consumer transactions" within the meaning of Okla. Stat. tit. 15, § 752(2).

3049. The Vehicles are "merchandise" within the meaning of Okla. Stat. tit.

15, § 752(7).

3050. The Oklahoma Consumer Protection Act ("Oklahoma CPA") prohibits deceptive and unfair trade practices.

3051. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Oklahoma CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3052. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Oklahoma CPA in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design of the Vehicles because, as detailed above:

3053. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

3054. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

3055. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease Vehicles; and

3056. Defendants made incomplete representations about the safety and reliability of Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to

consumers, Defendants had the duty to disclose the whole truth.

3057. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3058. By misrepresenting the Vehicles as safe and reliable and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Okla. Stat. tit. 15, § 753:

3059. Representing that the Vehicles are approved and certified as safe and reliable;

3060. Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

3061. Advertising the Vehicles are safe and free from defects, with the intent not to sell or lease them as advertised; and

3062. Engaging in the immoral, unethical, oppressive, unscrupulous, or substantially injurious behavior to consumers described above, which offends established public policy. Okla. Stat. tit. 15, §§ 753(5), (7), (8), and (20).

3063. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3064. Defendants' unfair and deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including the Plaintiffs' Insureds, about the true safety and reliability of Vehicles, the quality of Vehicles, and the true value of Vehicles.

3065. Defendants'    misrepresentations,    concealments,    omissions,    and

suppressions of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe and reliable in deciding to purchase and lease the Vehicles. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

3066. Plaintiffs' Insureds' reliance was reasonable, as they had no way of discerning that Defendants' representations were false and misleading and/or otherwise learning that the Vehicles had the Thief Friendly Design, as alleged above. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3067. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles.

3068. Plaintiffs and Plaintiffs' Insureds suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3069. Defendants' violations present a continuing risk to Plaintiffs as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3070. Plaintiffs provided notice to Defendants of all issues raised in this count and this Complaint on March 09, 2023.  Notice was also provided by the governmental investigations, the numerous complaints filed against them, internet videos, news reports and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all

damages and relief to which Plaintiffs' Insureds are entitled.

3071. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3072. Pursuant to Okla. Stat. tit. 15, § 761.1, the Plaintiffs and Plaintiffs' Insureds seek an order enjoining Defendants' unfair methods of competition and unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Oklahoma CPA.

## D.   Fraud by Omission and Concealment

3073. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3074. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3075. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3076. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

3077. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

3078. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

3079. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

3080. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3081. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3082. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3083. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3084. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3085. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the

commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3086. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3087. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, and that was highly likely to be stolen, unbeknownst to the Insureds.

3088. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles, would have paid less for them, or could have taken measures to counter the Thief Friendly Design.

3089. As a direct and proximate result of Defendants' omissions, the Insureds purchased Vehicles that they would not have purchased if the Thief Friendly Design had been disclosed to them, and their Vehicles were stolen and damaged due to the Thief Friendly Design. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3090. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

3091. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3092. Plaintiffs owed a duty to the Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3093. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3094. Defendants breached those duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3095. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3096. As a direct and approximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**F.    Negligent Misrepresentation**

3097. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3098. In Oklahoma, a claim for relief based on negligent misrepresentation arises under statute, Okla. Stat. Tit. 15 § 58, as opposed to the general law of negligence. See Farrar v. Chitwood, 282 P. 2d 729 (Sup. Ct. Okla. 1955). However, unlike actual fraud, Okla. Stat. Tit. 15 § 58(2) states: "[t]he positive assertion in a

manner not warranted by the information of the person making it, of that which is not true through he believes it to be true," which requires no knowledge or belief in falsity, but instead only requires a statement based on insufficient evidence. No intent is required.

3099. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3100. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3101. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true.  Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3102. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3103. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds suffered damage,

including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## OREGON STATE LAW CLAIMS FOR RELIEF

**(Alleged by  Plaintiffs, and Members of Oregon Subclasses, against All Defendants)**

3104. Class Plaintiffs, the Hyundai Oregon Subclass and Kia Oregon Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3105. The Oregon Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Oregon due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; American Standard Insurance Company of Wisconsin; GEICO Casualty Company; GEICO Choice Insurance Company; GEICO Secure Insurance Company; Government Employees Insurance Company; Alpha Property & Casualty Insurance Company; Unitrin Safeguard Insurance Company; Valley Property & Casualty Insurance Company; Allied Property & Casualty Insurance Company; Nationwide Affinity Insurance Company of America; Nationwide Mutual Insurance Company; New Jersey Manufacturers Insurance Company; PEMCO Mutual Insurance Company; Artisan and Truckers Casualty Company; Progressive Classic Insurance Company; Progressive Direct Insurance Company; Progressive Universal Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Oregon pursuant to policies of insurance.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

**A.     Breach of Implied Warranty of Merchantability (ORS §72.3140)**

3106. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3107. Pursuant to ORS §72.3140, a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind.

3108. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under ORS § 72.1040

3109. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under ORS §72A.1030(1)(p).

3110. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in Oregon and are therefore "buyers" within the meaning of ORS § 72.1030(1)(a).

3111. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who leased Vehicles in Oregon and are therefore "lessees" within the meaning of ORS §72A.1030(1)(n).

3112. The Vehicles are and were at all relevant times "goods" within the meaning of ORS § 72.1050(1).

3113. Defendants knew or had reason to know the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3114. However, the Vehicles did not comply with the implied warranty of

merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, available, and/or secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles contained the Thief Friendly Design, lacked any anti-theft features or design elements to provide an adequate theft deterrent, or other means sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3115. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of the sale.

3116. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner prior to being stolen, or without the ever-present risk of them being stolen.  Any remedy that has been proposed or offered to date has proven to be inadequate, and at a minimum, does not compensate Plaintiffs for the losses incurred due to the Thief

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Friendly Design.

3117. On March 9, 2023, Plaintiffs and the Subclass Members provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public.

3118. Alternatively, Plaintiffs and the Subclass Members were excused from providing Defendants with notice and an opportunity to cure the breach because it would have been futile. As alleged throughout this Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair. Nor is any such repair possible or effective for Vehicles already stolen.

3119. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty (ORS § 72.3130)**

3120. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3121. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3122. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor

vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3123. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3124. The Vehicles did not perform as promised in accordance with Defendants' express warranty as they are capable of being stolen in a matter of seconds, and that fact has become common knowledge. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3125. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' conduct.

**C.     Violation of Oregon's Unlawful Trade Practices Act (ORS § 646.607)**

3126. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3127. Defendants, Plaintiffs, Plaintiffs' Insureds, and Subclass Members are "persons" within the meaning of ORS § 646.605(4).

3128. The Oregon Trade Practices Act ORS § 646.607 ("Oregon UTPA") states that it is unlawful trade practice to employ unconscionable tactics in connection with selling goods.

3129. In the course of their business, Defendants, through their agents,

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

employees, and/or subsidiaries, violated the Oregon UPTA by unconscionably misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3130. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Oregon UTPA in the course of their business. Specifically Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

a. Defendants expressly warranted that the Vehicles conformed with applicable anti-theft standards when that was not true due to the Thief Friendly Design of the Vehicles;

b. Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c. Given the hidden and technical nature of the Thief Friendly Design, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

d. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the Insureds who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles, as any consumer would hesitate to purchase a vehicle so easy to steal that it did not meet federal or industry standards for anti-theft protection; and

e. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the Insureds that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to the Insureds, Defendants had the duty to disclose the whole truth.

3131. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce Insureds to purchase the Vehicles.

3132. By misrepresenting the Vehicles as safe, reliable, and compliant with applicable anti-theft standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or commerce, as prohibited by the Oregon UTPA.

3133. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3134. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

3135. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those Vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles.

3136. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

3137. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid significantly less for them, and if purchased, could have taken precautions against theft.

3138. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3139. Defendants' violations present a continuing risk to Plaintiffs, their Insureds, as well as the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3140. Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Oregon UTPA

**D.   Fraud**

3141. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3142. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3143. Having been aware of the Thief Friendly within the Vehicles while

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

making affirmative false statements as to the Vehicles compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

    b.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    c.    Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

    d.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

    e.    Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they

volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

3144. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3145. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds.

3146. Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

3147. The Insureds' reliance was reasonable and justified, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

3148. Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3149. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

3150. Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3151. Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or deter theft of the Vehicles on their own.

3152. As a direct and proximate result of Defendants' omissions, the Insureds Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

3153. Defendants' acts were done with a conscious disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

**E.     Negligence**

3154. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3155. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3156. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

3157. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3158. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

3159. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

**F.    Gross Negligence**

3160. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3161. Defendants manufactured, distributed, sold, and/or leased the Vehicles.

3162. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.

3163. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3164. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

3165. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

3166. Defendants' acted with reckless disregard of safety and indifference to the probable consequences of Defendants' acts. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## PENNSYLVANIA STATE LAW CLAIMS FOR RELIEF

### (Alleged by Plaintiffs, and Members of Pennsylvania Subclasses, against All Defendants)

3167. Class Plaintiffs, the Hyundai Pennsylvania Subclass and Kia Pennsylvania Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against all Defendants.

3168. The Pennsylvania Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Hyundai and Kia Vehicles) in the Commonwealth of Pennsylvania due to Defendants' Thief

Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate New Jersey Insurance Company; Main Street American Protection Insurance Company; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; First Chicago Insurance Company; GEICO Advantage Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Horace Mann Property & Casualty Insurance Company; Infinity Auto Insurance Company; Unitrin Safeguard Insurance Company; Ohio Security Insurance Company; Peerless Indemnity Insurance Company; Nationwide Affinity Insurance Company of America; Nationwide Property & Casualty Insurance Company; Victoria Fire & Casualty Company; New Jersey Manufacturers Insurance Company; Progressive Advanced Insurance Company; Progressive Preferred Insurance Company; Progressive Specialty Insurance Company; Progressive Garden State Insurance Company; General Casualty Company of Wisconsin; Root  Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Pennsylvania pursuant to policies of insurance.

## A.    Breach of Implied Warranty of Merchantability (13 Pa. Cons. Stat. §§ 2314 and 2A212)

3169. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3170. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to 13 Pa. Cons. Stat. §§ 2314 and 2A212.

3171. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under 13 Pa. Cons. Stat. §§ 2104 and 2A103(c), and "sellers" of

LEGAL\67600038\1

motor vehicles under § 2103(a).

3172. With respect to leases, Defendants are and were at all relevant times "lessors" of motor vehicles under 13 Pa. Cons. Stat. § 2A103(a).

3173. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who purchased Vehicles in Pennsylvania and are therefore "buyers" within the meaning of 13 Pa. Cons. Stat. § 2103(a).

3174. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who leased Vehicles in Pennsylvania and are therefore "lessees" within the meaning of 13 Pa. Cons. Stat. § 2A103(a).

3175. The Vehicles are and were at all relevant times "goods" within the meaning of 13 Pa. Cons. Stat. §§ 2105(a) and 2A103(a).

3176. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3177. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them

prime targets to be used as instrumentalities through which thieves engage in reckless

driving or other criminal activity.

3178. Any attempt by Defendants to disclaim or limit the implied warranty of

merchantability for their respective Vehicles vis-à-vis consumers is unconscionable

and unenforceable. Specifically, Defendants' warranty limitations are unenforceable

because Defendants knowingly sold or leased defective Vehicles without informing

consumers about the Thief Friendly Design. The time limits contained in Defendants'

warranty periods were also unconscionable and inadequate to protect Plaintiffs and

Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful

choice in determining these time limitations, the terms of which unreasonably favored

Defendants. A gross disparity in bargaining power existed between Defendants and

Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at

the time of the sale.

3179. Furthermore, the circumstances described herein caused Defendants'

exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and

Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of

warranties have denied Plaintiffs' Insureds the benefit of their respective bargains,

which presupposes they were (or are) able to use the Vehicles in a meaningful manner

without the ever-present risk of them being stolen.   Any remedy that has been

proposed or offered to date has proven to be inadequate, and at a minimum, does not

compensate Plaintiffs for the losses incurred due to the Thief Friendly Design.

3180. On March 9, 2023, Plaintiffs and the Subclass Members provided

Defendants with reasonable notice and opportunity to cure the breaches of their

implied warranties. Additionally, all Defendants were provided notice and

opportunity to cure the issues raised in this count and this Complaint by governmental

investigations, numerous complaints filed against them, internet videos, news reports,

and the many individual notice letters sent by Plaintiffs within a reasonable amount

of time after the allegations of Vehicle defects became public.

3181. Alternatively, Plaintiffs and the Subclass Members were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs or their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3182. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty (13 Pa. Cons. Stat. §§ 2313, 2A210, *et seq.*)**

3183. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3184. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3185. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3186. The statements on the VIN plates as to the Vehicles' compliance with safety and anti-theft regulations are affirmations of fact and/or promises made by Defendants to Plaintiffs' Insured.  Those statements amounts to an express warranty under 13 Pa. Cons. Stat. § 2313(a)(1) and § 2A210.

3187. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

1    them in accordance with the normal operation of the Vehicles and did not mishandle

2    or otherwise damage the Vehicles in any way that is material to the allegations set

3    forth herein.

4        3188. The Vehicles did not perform as promised in accordance with

5    Defendants' express warranty, as it has become common knowledge that they are

6    capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

7    applicable motor vehicle safety, and theft prevention standards in effect on the date

8    of manufacture. As a result of the Thief Friendly Design, the Vehicles were easily

9    stolen, and thus failed to perform to the terms of the express warranty described in the

10   Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable

11   anti-theft standards.

12       3189. All Defendants were provided notice and ample opportunity to cure the

13   issues raised in this count and this Complaint by governmental investigations,

14   numerous complaints filed against them, internet videos, news reports, and the many

15   individual notice letters sent by Plaintiffs within a reasonable amount of time after the

16   allegations of Vehicle defects became public. To date, Defendants have failed to

17   remedy the problem and, as a result, thefts continue to escalate.  While Defendants

18   have suggested they are attempting to remedy the Thief Friendly Design, any remedy

19   offered to date is ineffective, and fails to comply with anti-theft standards.

20       3190. Plaintiffs have incurred and will continue to incur damages and costs and

21   expenses, including attorney's fees, as a result of the Thief Friendly Design and

22   related to Defendants' breach of their express warranty.

23   **C.     Violation of the Pennsylvania Unfair Trade Practices and Consumer**

24   **        Protection Law (73 Pa. Cons. Stat. §§ 201-1, *et seq*.)**

25       3191. Plaintiffs reallege and incorporate by reference all preceding allegations

26   as though fully set forth herein.

27       3192. Defendants, Plaintiffs, Plaintiffs' Insureds, and Subclass Members are

28   "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

3193. Plaintiffs' Insureds purchased their Vehicles primarily for personal, family, or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

3194. Defendants were and are engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

3195. The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

3196. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3197. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the Pennsylvania CPL in the course of their business. Specifically, Defendants owed Plaintiffs' Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles because, as detailed above:

a.   Defendants expressly warranted that the Vehicles conformed with applicable anti-theft standards when that was not true due to the Thief Friendly Design of the Vehicles;

b.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c.   Given the hidden and technical nature of the Thief Friendly Design, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

d.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the Insureds who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.   Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the Insureds that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to the Insureds, Defendants had the duty to disclose the whole truth.

3198. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce Insureds to purchase the Vehicles.

3199. By misrepresenting the Vehicles as safe, reliable, and compliant with applicable anti-theft standards, and by failing to disclose and actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by 73 Pa. Cons. Stat. § 201-2(3):

a.   Representing that the Vehicles have characteristics, uses, benefits, and qualities which they do not have;

b.   Representing that the Vehicles are of a particular standard, quality, and grade when they are not;

c.   Advertising the Vehicles with the intent not to sell or lease them as advertised; and

d.      Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding regarding the Vehicles.

73 Pa. Cons. Stat. § 201-1(4)(v), (vii), (ix) and (xxi).

3200. Defendants intended for Plaintiffs' Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3201. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material fact did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety, reliability, and availability of the Vehicles, the quality of those Vehicles, and the risk of theft.

3202. Defendants' misrepresentations, omissions, and concealment of material facts regarding the Thief Friendly Design and true characteristics of the Vehicles were material to the decisions of Plaintiffs' Insureds to purchase and lease those Vehicles, as Defendants intended. Plaintiffs' Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were safe, compliant with applicable anti-theft standards, and reliable in deciding to purchase, insure, and operate the Vehicles.

3203. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design. The Insureds did not, and could not, unravel Defendants' deception on their own.

3204. Had they known the truth about the Thief Friendly Design, Plaintiffs' Insureds would not have purchased or leased the Vehicles, or would have paid

significantly less for them, and if purchased, could have taken precautions against theft.

3205. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3206. Defendants' violations present a continuing risk to Plaintiffs, their Insureds, as well as the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3207. Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), Plaintiffs and Subclass Members for both Subclasses seek an order enjoining Defendants' unfair and/or deceptive acts or practices and any other just and proper relief available under the Pennsylvania CPL.

**D.    Fraud by Omission and Concealment**

3208. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3209. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3210. Having been aware of the Thief Friendly within the Vehicles while making affirmative false statements as to the Vehicles compliance with all applicable anti-theft standards, and having known that Plaintiffs' Insureds could not have reasonably been expected to know those statements were false, let alone of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.    Defendants falsely stated that the Vehicles complied with all applicable anti-theft and other safety standards;

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

b.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

c.   Given hidden and technical nature of the Thief Friendly Design, the Insureds lacked the sophisticated expertise in vehicle components that would be necessary to discover the defect on their own;

d.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Insureds' decisions to buy or lease Vehicles; and

e.   Defendants made false statements about compliance with applicable standards, and incomplete representations about the safety, availability, and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally misrepresented, concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had a duty to disclose the whole truth about those Vehicles.

3211. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3212. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly

impacts the availability of the Vehicles, the risk of theft, and value of the Vehicles purchased or leased by the Insureds. Any consumer would view the Vehicles' non-compliance with basic anti-theft and safety standards as a material fact that would influence their decision to purchase a Vehicle.

3213. Defendants intended for the Insureds to rely on their misstatements, omissions and concealment – which they did by purchasing and leasing the Vehicles at the prices they paid believing their Vehicles would not have a Thief Friendly Design that would affect the quality, availability, reliability, and safety of the Vehicles.

3214. The Insureds' reliance was reasonable, as they had no way of discerning or learning the facts Defendants misrepresented, concealed or failed to disclose. The Insureds did not, and could not, unravel Defendants' deception on their own.

3215. Defendants actively misrepresented, concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for expenses related to the harm they caused, and to preserve their commercial reputations of. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3216. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, the Insureds would have seen such a disclosure.

3217. Through their misstatements, omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, the Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Class Vehicle than they otherwise would have paid.

3218. Had Plaintiffs' Insureds known of the Thief Friendly Design, they would not have purchased the Vehicles or would have been able to take steps to prevent or deter theft of the Vehicles on their own.

3219. As a direct and proximate result of Defendants' omissions, the Insureds Vehicles were stolen and/or damaged, and Plaintiffs sustained losses in relation to the

theft and damage of those Vehicles. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

3220. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the future, which amount shall be determined according to proof at trial.

## E.   Negligence

3221. Plaintiffs reallege and incorporate by reference all allegations as if fully set forth herein.

3222. Defendants manufactured, distributed and sold the Vehicles to Plaintiffs' Insureds.

3223. Defendants owed the Insureds a duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3224. Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

3225. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants

1 entered into with Plaintiffs' Insureds.

2     3226. Defendants breached that duties when they negligently manufactured
3 and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices
4 required by federal standards, this faulty design known as the Thief Friendly Design.

5     3227. The Defendants' violation of their duties owed to Plaintiffs' Insureds
6 under applicable law included their failure to comply with federal regulatory
7 requirements to equip their vehicles with mandatory anti-theft protection that
8 complies with the requirements of FMVSS 114.

9     3228. As a result of Defendants' violation of their duties, Plaintiffs and
10 Plaintiffs' Insureds suffered damage, including property damage and the loss of use
11 the Vehicles, together with other damages for which the Defendants are liable.

12 **F.    Negligent Misrepresentation**

13     3229. Plaintiffs reallege and incorporate by reference all allegations as if fully
14 set forth herein.

15     3230. Defendants made representations to Plaintiffs' Insureds concerning the
16 safety and quality of the Vehicles that were not true, as more fully alleged in the
17 preceding paragraphs.

18     3231. Those misrepresentations were made with the intent of inducing the
19 Insureds into purchasing Vehicles.

20     3232. Defendants had no reasonable grounds for believing these
21 representations were true when they made them, yet they intended that Plaintiffs'
22 Insureds rely on the misrepresentations.

23     3233. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations
24 and, as a direct and proximate result thereof, and Plaintiffs' Insureds suffered damage,
25 including property damage and the loss of use of the Vehicles, and other damages for
26 which the Defendants.

27

28

## **PUERTO RICO LAW CLAIMS FOR RELIEF**

**(Alleged by  Plaintiffs, and Members of Puerto Rico Subclasses, against All Defendants)**

3234. Class Plaintiffs, the Hyundai Puerto Rico Subclass and Kia Puerto Rico Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3235. The Puerto Rico Subclasses are comprised of Members of both nationwide classes with claims (including Kia and Hyundai Vehicles) arising in Puerto Rico including, but not limited to, the following named Class Plaintiffs:  Erie Insurance Company; Erie Insurance Exchange; GEICO Casualty Company; GEICO General Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Liberty Mutual Fire Insurance Company; New Jersey Manufacturers Insurance Company; Progressive Specialty Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Puerto Rico pursuant to policies of Insurance.

**A.     Breach of Implied Warranty of Merchantability (P.R.Laws Ann. tit. 31, § 3841)**

3236. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3237. Defendants designed, built, advertised, sold and/or leased the Vehicles, which were bought or leased by Plaintiffs' Insureds. Defendants are accordingly "vendors" within the meaning of P.R.Laws Ann. tit. 31, § 3841.

3238. In the alternative, if Defendants were not the sellers of the Vehicles to Plaintiffs' Insureds, then Plaintiffs' Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to

consumers, including Plaintiffs' Insureds.

3239. Plaintiffs' Insureds are "vendees" within the meaning of P.R.Laws Ann. tit. 31, § 3841 because they purchased or leased the Vehicles from Defendants.

3240. Plaintiffs, upon making payments to their Insureds for damages and losses which they sustained, and which were covered under the insurance policies issued to them by the Plaintiffs, acquired the rights of their Insureds under policy provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of their Insureds and are authorized to pursue all claims and causes of action belonging to their Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by the Plaintiffs.

3241. Defendants warrantied that the Vehicles were free of any hidden defects that would have caused Plaintiffs' Insureds not to have purchased or leased the Vehicles, or purchased or leased the Vehicles at a lower price pursuant to P.R.Laws Ann. tit. 31, § 3841.

3242. This implied warranty included, among other things, a warranty that the Vehicles manufactured, supplied, distributed, and sold by Defendants were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state law and regulations, including FMVSS 114.

3243. It is reasonably likely that Plaintiffs' Insureds relied on the existence and length of the implied warranties in deciding whether to purchase or lease the Vehicles, or have done so at a lower price.

3244. However, the Vehicles were not fit for their ordinary purpose of providing reasonably reliable and safe transportation at the time of sale or thereafter because the Vehicles were defective and not in merchantable condition, and were not reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, *inter alia*, the Vehicles were plagued by the Theft Friendly Defect, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or

sufficient to satisfy FMVSS 114, resulting in a severe and highly dangerous risk of vehicle theft and causing the Vehicles to be prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3245. Due to the highly technical and invisible nature of the Vehicles' designs, Plaintiffs' Insureds were reasonably unaware of the Easy-to-Steal defect.

3246. As a direct and proximate result of Defendants' breaches of their implied warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, for which the Defendants are liable.

**B.    Breach of Express Warranty**

3247. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3248. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3249. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3250. After the Insureds purchased or leased the Hyundai and Kia branded Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3251. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds.  Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture.  As a result of that Thief Friendly Design, the Vehicles were easily stolen, and thus failed to conform to the terms of the express warranty described in the Vehicles' VIN plates.

3252. Plaintiffs were not required to provide notice of the Thief Friendly Design prior to the vehicles being stolen and/or damaged. Nevertheless, Plaintiffs provided written notice to Defendants of the Thief Friendly Design, and further notice of the Thief Friendly Design was provided in conjunction with numerous cases being filed regarding the same Thief Friendly Design in actions around the county.  While Defendants have suggested that they are attempting to remedy the Thief Friendly Design, any remedy offered to date is ineffective, and fails to comply with anti-theft standards.

3253. Plaintiffs and their Insureds have incurred and will continue to incur damages and costs and expenses as a result of the Thief Friendly Design and related breach of Defendants' express warranty.

**C.     Violation of the Rule 7 of Puerto Rico Rules Against Misleading Practices and Advertisements**

3254. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3255. Defendants engaged in and caused others to engage in deceptive trade practices in Puerto Rico.

3256. Puerto Rico law prohibits false or misleading ads or practices under Rule 7 (A) and (B) which provide that (A) false or misleading ads or practices are banned; and (B) the term misleading practices includes, among other things, the following: representing or expressing an act or an offer if such declaration is misleading or false,

or has the tendency or capacity of creating confusion, or does not have the sufficient information to support itself or hides a relevant fact.

3257. Defendants' deceptive trade practices included but were not limited to knowingly making false representations as to the Vehicles' compliance with all applicable safety and anti-theft standards; and failing to disclose material information concerning the Vehicles. The material information Defendants failed to disclose includes the fact that the Vehicles contained no anti-theft features or design elements that would prevent the Vehicles from achieving either forward self-mobility or steering without a key, and the fact that the Vehicles suffer from defective design(s) and/or manufacturing defect(s) that render them vulnerable to an abnormally high risk of theft.

3258. Defendants also fraudulently concealed the non-compliant nature of their vehicles, which were made in violation of federal safety and anti-theft requirements.

3259. Defendants' failure to disclose such information was intended to induce the Plaintiffs to enter into transactions for the sale of dangerous and defective vehicles that do not have adequate theft protection or comply with FMVSS 114 and failed to warn consumers of the consequent severe risk of theft.

3260. Defendants' misrepresentations, false representations, fraudulent concealment, and omissions concerning the Vehicles were materially false statements that induced the Insureds into purchasing Vehicles, and failing to take appropriate precautions to prevent the Vehicles from being stolen.

3261. Defendants intentionally failed to disclose and actively concealed the fact that the Vehicles were defective and also did not comply with FMVSS 114. In marketing materials, Defendants often advertised that higher-end trim packages came with a "push button start" feature rather than a traditional turn-key ignition. However, Defendants did not inform consumers that the Vehicles were being sold without adequate anti-theft protection to safeguard life and property, or that such protection was required by the federal government. Defendants long have provided immobilizers

as standard technology in select higher-end models and as a feature in higher-end trim packages on other models. Meanwhile, the lower-end trim packages of those same models were manufactured and sold without an immobilizer or any other anti-theft feature or design element that would prevent theft and satisfy FMVSS 114.

3262. The material information Defendants failed to disclose was information Defendants knew at the time of their advertisement or sale of the Vehicles.

3263. Defendants' deceptive trade practices significantly impacted the Municipalities of Puerto Rico and their citizens, including the Insureds in Puerto Rico, and they continue to be directly affected by Defendants' deceptive trade practices.

3264. Defendants engaged in bad faith conduct in their deceptive trade practices meaning they acted fraudulently, willfully, knowingly, and/or intentionally, causing damages and losses to the Plaintiffs.

3265. Defendants intended to deceive consumers with their promotional materials, sales, and other conduct used to sell the Vehicles. This intent is clear based on, among other things, the fact that Defendants were well aware of the need for anti-theft protection, and crafted promotional materials that failed to disclose this need, and requirement, while promoting expensive trim packages.

3266. Had the omitted information been disclosed, Plaintiffs would have behaved differently by avoiding injury caused by the defective Vehicles.

3267. As a direct and proximate result of Defendants' aforesaid fraud, PLAINTIFFS suffered property damage, including the loss of use thereof, and other damages for which the Defendants, and each of them, are liable.

**D.    Fraud based on Misstatements, Omissions and Concealment**

3268. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3269. Defendants engaged in and caused others to engage in consumer fraud and deceptive trade practices in violation of common law rules against fraud.

3270. During the relevant period as set forth above, the Defendants,

individually and through both legitimate and illegitimate means, marketed vehicles with the purpose and intent of representations, omissions, and/or practices to deceive and mislead consumers regarding the Thief Friendly Design.

3271. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards.  In reality, however, the Vehicles do not comply with such standards.

3272. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3273. Having been aware of the Thief Friendly Design while claiming the Vehicles complied with all applicable anti-theft or safety standards, and having known that the Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Easy-to-Steal Defect to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Easy-to-Steal Defect because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Easy-to-Steal Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Easy-to-Steal Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Easy-to-Steal Defect on their own;

    c.    Defendants knew that the Easy-to-Steal Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Easy-to-Steal Defect would have been a material fact to the Plaintiffs' decisions to buy or lease the Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material

facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Easy-to-Steal Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3274. In breach of their duties, Defendants failed to disclose the Thief Friendly Design in connection with the sale of the Vehicles.

3275. For the reasons set forth above, the Thief Friendly Design is material to the sale of the Vehicles because a reasonable person would find it important to know that the Vehicles did not comply with applicable safety and anti-theft standards in purchasing, leasing, or retaining a new or used motor vehicle,  and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs.

3276. As a direct and proximate result of the Insureds' reliance upon Defendants' misrepresentations and omissions, they overpaid for the Vehicles, would not have purchased the Vehicles at all had they known of the defects, and were prevented from taking any action to prevent the Vehicles from being stolen. Accordingly, Defendants are liable to Plaintiffs for their damages.

3277. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs.

3278. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and their Insureds' rights including under Rule 7 of Puerto Rico Rules Against Misleading Practices and Advertisements

**E.    Negligence**

3279.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3280.  Defendants manufactured, distributed and sold the Vehicles to Plaintiffs' Insureds.

3281.  Defendants owed the Insureds a duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3282.  Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

3283.  The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3284.  Defendants breached that duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3285.  The Defendants' violation of their duties owed to Plaintiffs' Insureds under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

3286. As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

## RHODE ISLAND STATE LAW CLAIMS FOR RELIEF

**(Alleged by  Plaintiffs, and Members of Rhode Island Subclasses, against All Defendants)**

3287. Class Plaintiffs, the Hyundai Rhode Island Subclass and Kia Rhode Island Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3288. The Rhode Island Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Rhode Island due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Allstate Property & Casualty Insurance Company; GEICO Advantage Insurance Company; GEICO General Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Horace Mann Property & Casualty Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Progressive Advanced Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; who paid policy proceeds to their respective Insureds in Rhode Island pursuant to policies of insurance.

**A.      Breach of Implied Warranty of Merchantability (R.I. Gen. Laws 1956, §§ 6A-1-201, 6A-2-314, *et seq*.)**

3289. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

3290. Defendants were, at all relevant times: the manufacturers, distributors, and warrantors of the Vehicles; "merchants" of motor vehicles under R.I. Gen. Laws § 6A-2-104; and "seller" of motor vehicles under R.I. Gen. Laws § 6A-2-103(a)(4).

3291. In the alternative, if Defendants were not the sellers of the Vehicles to Plaintiffs' Insureds, then Plaintiffs' Insureds were the intended third-party beneficiaries of any and all sales contracts in which one or more Defendant sold Vehicles to Kia and Hyundai dealers or others with the intent that they be resold to consumers, including Plaintiffs' Insureds.

3292. Plaintiffs' Insureds who purchased Vehicles are "buyers" within the meaning of R.I. Gen. Laws § 6A-2-103(a)(1).

3293. Plaintiffs' Insureds who leased Vehicles are "lessees" within the meaning of R.I. Gen. Laws § 6A-2-103(n).

3294. Plaintiffs, upon making payments to their Insureds for damages and losses which they sustained, and which were covered under the insurance policies issued to them by the Plaintiffs, acquired the rights of their Insureds under policy provisions and by operation of law. Accordingly, Plaintiffs "stand in the shoes" of their Insureds and are authorized to pursue all claims and causes of action belonging to their Insureds against third parties such as the Defendants herein who are legally liable for having caused the damages paid by the Plaintiffs.

3295. The Vehicles were at all relevant times "goods" within the meaning of R.I. Gen. Laws § 6A-2-103(g).

3296. A warranty that the Vehicles were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law pursuant to R.I. Gen. Laws § 6A-2-314.

3297. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased.

3298. Defendants provided Plaintiffs' Insureds with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes

1  for which they were sold.

2      3299. This implied warranty included, among other things, a warranty that the

3  Vehicles manufactured, supplied, distributed, and sold by Defendants were safe and

4  reliable for providing transportation, would not be vulnerable to an abnormally high

5  risk of theft, and complied with applicable federal and state law and regulations,

6  including FMVSS 114.

7      3300. Defendants' warranties were designed and intended for the benefit of

8  Plaintiffs' Insureds as the ultimate consumers and users of the Vehicles.

9      3301. It is reasonably likely that Plaintiffs' Insureds relied on the existence and

10 length of the implied warranties in deciding whether to purchase or lease the Vehicles.

11     3302. However, the Vehicles were not fit for their ordinary purpose of

12 providing reasonably reliable and safe transportation at the time of sale or thereafter

13 because the Vehicles were defective and not in merchantable condition, and were not

14 reasonably reliable, safe, and secure transportation at the time of sale or thereafter

15 because, *inter alia*, the Vehicles were plagued by the Theft Friendly Defect, lacking

16 any anti-theft features or design elements to provide an adequate theft deterrent, or

17 sufficient to satisfy FMVSS 114, resulting in a severe and highly dangerous risk of

18 vehicle theft and causing the Vehicles to be prime targets to be used as

19 instrumentalities through which thieves engage in reckless driving or other criminal

20 activity.

21     3303. Defendants' actions, as complained of herein, breached the implied

22 warranty that the Vehicles were of merchantable quality and fit for their ordinary and

23 intended use.

24     3304. Any attempt by Defendants to disclaim or limit the implied warranty of

25 merchantability for their respective Vehicles vis-à-vis consumers is unconscionable

26 and unenforceable. Specifically, Defendants' warranty limitations are unenforceable

27 because Defendants knowingly sold or leased defective Vehicles without informing

28 consumers about the Theft Friendly Defect. The time limits contained in Defendants'

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Theft Friendly Defect at the time of sale.

3305. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that Plaintiffs Insureds' may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs and Plaintiffs' Insureds the benefit of Plaintiffs' Insureds' bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3306. Plaintiffs and Plaintiffs' Insureds were excused from providing Defendants with notice and an opportunity to cure the breaches, because notice would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Easy-to-Steal Defect; however, to date, Defendants have not instituted an adequate and meaningful repair program with respect to the Vehicles. As such, Plaintiffs and Plaintiffs' Insureds had no reason to believe that Defendants would have adequately repaired the Easy-to-Steal Defect if they presented their Vehicles to Defendants for repair.

3307. As a direct and proximate result of Defendants' breaches of their implied warranties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, for which the Defendants are liable.

**B.    Breach of Express Warranty (R.I. Gen. Laws 1956, §§ 6A-1-201, 6A-2-313, *et seq.*)**

3308. Plaintiffs incorporate by reference and reallege each preceding and succeeding paragraph as though fully set forth at length herein.

3309. During the relevant time period described above, Plaintiffs' Insureds

1  purchased or leased Vehicles.

2  3310. These Vehicles were manufactured by Defendants during the relevant

3  time period described above. Through the attachment of VIN plates, Defendants made

4  an express warranty that the Vehicles conform to all applicable U.S.A. federal motor

5  vehicle safety, bumper, and theft prevention standards in effect on the date of

6  manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima

7  Vehicle is provided above. On information and belief, similar written warranties were

8  made prior to, or at the point of sale for all Vehicles.

9  3311. Defendants' statements about the Vehicles' compliance with all

10  applicable safety and anti-theft standards were affirmative and factual by their nature.

11  Accordingly, Defendants became the basis for the bargains with Plaintiffs' Insureds

12  to buy or lease the Vehicles.

13  3312. The Vehicles did not comply with all applicable safety and anti-theft

14  standards as Defendants' stated. In actuality, the Vehicles had a design defect

15  resulting in the Vehicles being easy to steal.

16  3313. As described above, thieves took advantage of the design flaw.

17  Defendant incurred, as result, significant monetary damages related to Insureds'

18  Hyundai and Kia branded Vehicles being stolen and damaged through exploitation of

19  the design flaw.

20  **C.  Violation of the Rhode Island Unfair Trade Practice and Consumer**

21  **Protection Act (RI Gen L § 6-13.1-11, *et seq.*)**

22  3314. Plaintiffs incorporate by reference and reallege each preceding and

23  succeeding paragraph as though fully set forth at length herein.

24  3315. Defendants and Plaintiffs are "persons" within the meaning of RI Gen.

25  L § 6-13.1-11(3).

26  3316. The Rhode Island Unfair Trade Practice and Consumer Protection Act

27  ("RI CPA") makes unlawful the "any act or practice that is unfair or deceptive to the

28  consumer." RI Gen. L § 6-13.1-11(6)(xiii).

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

3317. In the course of their business, Defendants, through their agents, employees, and/or subsidiaries, violated the RI CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Theft Friendly Defect, as detailed above.

3318. Defendants had an ongoing duty to Plaintiffs to refrain from unfair or deceptive practices under the RI CPA in the course of their business. Specifically, Defendants owed the Plaintiffs a duty to disclose all the material facts concerning the Theft Friendly Defect in the Vehicles because, as detailed above:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Friendly Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;

    b.    Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Friendly Defect on their own;

    c.    Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they volunteered to provide information about the Vehicles that they

marketed and offered for sale and lease to consumers, HMA and
KA had the duty to disclose the whole truth.

3319. As detailed above, the information concerning the Theft Friendly Defect
was known to Defendants at the time of advertising and selling the Vehicles, all of
which was intended to induce consumers to purchase the Vehicles.

3320. Defendants engaged in one or more of the following unlawful acts or
practices prohibited by RI Gen. L § 6-13.1-11: using or employing deception, fraud,
false pretense, false promise, misrepresentation, unfair practice, or the concealment,
suppression, or omission of a material fact with intent that others rely upon such
concealment, suppression or omission, in connection with the advertisement and
sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived
or damaged thereby.

3321. Defendants intended for Plaintiffs to rely on them to provide adequately
designed Vehicles, and to honestly and accurately reveal the safety hazards described
above.

3322. Defendants' unfair or deceptive acts or practices were designed to
mislead and had a tendency or capacity to mislead and create a false impression in
consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles
were not affected by the Theft Friendly Defect. Indeed, those misrepresentations,
concealments, omissions, and suppressions of material facts did in fact deceive
reasonable consumers, including Plaintiffs, about the true safety and reliability of
Vehicles, the quality of the Vehicles, and the true value of the Vehicles.

3323. Defendants' misrepresentations, omissions, and concealment of material
facts regarding the Theft Friendly Defect and true characteristics of the Vehicles were
material to the decisions of Plaintiffs to purchase and lease those vehicles, as
Defendants intended. Plaintiffs were exposed to those misrepresentations,
concealments, omissions, and suppressions of material facts, and relied on
Defendants' misrepresentations that the Vehicles were safe and reliable in deciding

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

to purchase and lease Vehicles.

3324. Plaintiffs' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Theft Friendly Defect, as alleged above. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3325. Had they known the truth about the Theft Friendly Defect, Plaintiffs would not have purchased or leased the Vehicles, or would have paid significantly less for them.

3326. Plaintiffs suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3327. Defendants' violations present a continuing risk to Plaintiffs, as well as to the general public, because the Vehicles remain unsafe due to the Theft Friendly Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3328. Plaintiffs seek an order enjoining Defendants' unfair and/or deceptive acts or practices, and awarding damages, punitive or treble damages, and any other just and proper relief available under the RI CPA.

**D.     Fraud by Omission and Concealment**

3329. Plaintiffs incorporate by reference each preceding and succeeding paragraph as though fully set forth at length herein.

3330. Defendants were aware of the Theft Friendly Defect when they marketed and sold the Vehicles to Plaintiffs.

3331. Having been aware of the Theft Friendly Defect within the Vehicles, and having known that Plaintiffs could not have reasonably been expected to know of the Theft Friendly Defect, Defendants had a duty to disclose the Theft Friendly Defect to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft Friendly Defect because:

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Friendly Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;

b.   Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components that would be necessary to discover the Theft Friendly Defect on their own;

c.   Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3332. In breach of their duties, Defendants failed to disclose the Theft Friendly Defect to Plaintiffs in connection with the sale of the Vehicles.

3333. For the reasons set forth above, the Theft Friendly Defect within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs.

3334. Defendants intended for the Plaintiffs to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Theft Friendly Defect that would affect the quality, reliability, and safety of the Vehicles.

3335. Plaintiffs reliance was reasonable, as they had no way of discerning that learning the facts that Defendants had concealed or failed to disclose. Plaintiffs did not, and could not, unravel Defendants' deception on their own.

3336. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs.

3337. If Defendants had fully and adequately disclosed the Theft Friendly Defect to consumers, Plaintiffs would have seen such a disclosure.

3338. Through their omissions and concealment with respect to the Theft Friendly Defect within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs to either purchase a Vehicle that they otherwise would not have purchased or pay more for a Vehicle than they otherwise would have paid.

3339. Had Plaintiffs known of the Theft Friendly Defect within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

3340. As a direct and proximate result of Defendants' omissions, Plaintiffs either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Theft Friendly Defect had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs for their damages in an amount to be proven at trial.

3341. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' rights and well-being; and to enrich themselves. Defendants' misconduct warrants an assessment of punitive damages, as permitted by law, in an amount sufficient to deter such conduct in the

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

future, which amount shall be determined according to proof at trial.

**E.     Negligence**

3342. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3343. Defendants manufactured, advertised, distributed, sold, and/or leased the Vehicles. Plaintiffs' Insureds purchased and leased the Vehicles.

3344. Accordingly, Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds.  In connection with Defendants' manufacture, distribution, sale, and/or leasing of the Vehicles, Defendants acted with reckless indifference to the rights and/or safety of Plaintiffs and their Insureds.

3345. Defendants owed a duty of care to Plaintiffs and Plaintiffs' Insureds. That duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3346. Defendants failed to exercise reasonable care in connection with their manufacture, distribution, sale, and/or leasing of the Vehicles.

3347. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3348. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that

complies with the requirements of FMVSS.

3349. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

3350. Defendants' violation of their duties under applicable law and/or the applicable standard of care included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS.

3351. As a result of Defendants' failure to exercise reasonable care, Plaintiffs and Plaintiffs' Insureds suffered damages, including property damage and the loss of use of the Vehicles, together with other damages for which Defendants are liable.

**F.     Negligent Misrepresentation**

3352. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3353. Defendants were aware of the Theft Friendly Defect when they marketed and sold the Vehicles to Plaintiffs.

3354. Having been aware of the Theft Friendly Defect within the Vehicles, and having known that Plaintiffs could not have reasonably been expected to know of the Theft Friendly Defect, Defendants had a duty to disclose the Theft Friendly Defect to Plaintiffs in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Theft Friendly Defect because:

   a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Theft Friendly Defect and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs;

   b.   Given the Theft Friendly Defect's hidden and technical nature, Plaintiffs lack the sophisticated expertise in vehicle components

that would be necessary to discover the Theft Friendly Defect on their own;

   c.  Defendants knew that the Theft Friendly Defect gave rise to safety concerns for the consumers who use the Vehicles, and the Theft Friendly Defect would have been a material fact to the Plaintiffs' decisions to buy or lease Vehicles; and

   d.  Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, HMA, and KA intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Theft Friendly Defect. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, HMA and KA had the duty to disclose the whole truth.

3355. In breach of their duties, Defendants failed to disclose the Theft Friendly Defect to Plaintiffs in connection with the sale of the Vehicles.

3356. For the reasons set forth above, the Theft Friendly Defect within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs.

3357. Had Plaintiffs and their Insureds known of the Theft Friendly Defect within the Vehicles, they would not have purchased the Vehicles or would have paid less for them.

3358. As a direct and proximate result of Defendants' omissions, Plaintiffs either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Theft Friendly Defect had been disclosed to them. Accordingly, Defendants are liable

to Plaintiffs for their damages in an amount to be proven at trial.

## SOUTH CAROLINA STATE LAW CLAIMS FOR RELIEF

**(Alleged by  Plaintiffs, and Members of South Carolina Subclasses, against All Defendants)**

3359. Class Plaintiffs, the Hyundai South Carolina Subclass and Kia South Carolina Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3360. The South Carolina Subclasses are comprised of Members of both nationwide classes with claims (including Kia and Hyundai Vehicles) arising in South Carolina including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Permanent General Assurance Corporation; Erie Insurance Exchange; GEICO General Insurance Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Government Employees Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; Unitrin Auto and Home Insurance Company; Liberty Surplus Insurance Corporation; AMCO Insurance Company; Nationwide Affinity Insurance Company of America;  Nationwide Insurance Company of America; Victoria Fire & Casualty Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; Progressive Specialty Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; all of whom paid policy proceeds to their respective insureds in South Carolina pursuant to policies of Insurance.

**A.    Breach of Implied Warranty of Merchantability under S.C. Code Ann. §§ 36-2-314 and 36-2A-212**

3361. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

3362. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to S.C. Code Ann. §§ 36- 2-314 and 36-2A-212.

3363. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under S.C. Code Ann. §§ 36-2-104(1) and 36-2A-103(3), and "sellers" of motor vehicles under § 36-2-103(1)(d).

3364. Defendants are and were at all relevant times "lessors" of motor vehicles under S.C. Code Ann. § 36-2A-103(1)(p).

3365. Plaintiffs' Insureds who purchased Vehicles in South Carolina are "buyers" within the meaning of S.C. Code Ann. § 36-2-103(1)(a).

3366. Plaintiffs' Insureds who leased Vehicles in South Carolina are "lessees" within the meaning of S.C. Code Ann. § 36-2A-103(1)(n).

3367. The Vehicles are and were at all relevant times "goods" within the meaning of S.C. Code Ann. §§ 36-2-105(1) and 36-2A-103(1)(h).

3368. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3369. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly

Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3370. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3371. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3372. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle

1   defects became public.

2      3373. Alternatively, Plaintiffs were excused from providing Defendants with
3   notice and an opportunity to cure the breach, because it would have been futile. As
4   alleged throughout Plaintiffs' Complaint, Defendants have long known that the
5   Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or
6   repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to
7   believe that Defendants would have adequately repaired the Thief Friendly Design if
8   they presented their Vehicles to them for repair.

9      3374. As a direct and proximate result of Defendants' breach of the implied
10   warranties, the Insureds' vehicles were and are defective, and the Thief Friendly
11   Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount
12   to be proven at trial.

13      3375. During the relevant time period described above, Plaintiffs' Insureds
14   purchased or leased Vehicles.

15   **B.      Breach of Express Warranty under S.C. Code Ann. § 36-2-313**

16      3376. Plaintiffs reallege and incorporate by reference all preceding allegations
17   as though fully set forth herein.

18      3377. These Vehicles were manufactured by Defendants during the relevant
19   time period described above. Through the attachment of VIN plates, Defendants made
20   an express warranty that the Vehicles conform to all applicable U.S.A. federal motor
21   vehicle safety, bumper, and theft prevention standards in effect on the date of
22   manufacture, which directly related to condition of the Vehicles and became a basis
23   of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima
24   Vehicle is provided above. On information and belief, similar written warranties were
25   made prior to, or at the point of sale for all Vehicles.

26      3378. After Plaintiffs' Insureds purchased or leased the Vehicles, they used
27   them in accordance with the normal operation of the Vehicles and did not mishandle
28   or otherwise damage the Vehicles in any way that is material to the allegations set

forth herein.

3379. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3380. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C.   Violation of the South Carolina Unfair Trade Practices Act (S.C. Code Ann. §§ 39-5-10, et seq.)

3381. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3382. Plaintiffs and Subclass Members bring this count individually and/or on behalf of the other members of the Subclass, against Defendants.

3383. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning of S.C. Code. Ann. § 39-5-10(a).

3384. Defendants were and are engaged in "trade and commerce" within the meaning of S.C. Code. Ann. § 39-5-10(b).

3385. The South Carolina Unfair Trade Practices Act ("South Carolina UTPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." S.C. Code. Ann. § 39-5-20(a).

3386. In the course of their business, Defendants, through their agents,

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

employees, and/or subsidiaries, violated the South Carolina UTPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3387. Defendants had an ongoing duty to Plaintiffs' Insureds to refrain from unfair or deceptive practices under the South Carolina UTPA in the course of their business. Specifically, Defendants owed the Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3388. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3389. By misrepresenting the Vehicles as safe, reliable, and compliant with all applicable standards, and by failing to disclose while actively concealing the dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair or deceptive acts or practices in the conduct of trade or commerce prohibited by S.C. Code Ann. § 39-5-20(a).

3390. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3391. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3392. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material

facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3393. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3394. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3395. Plaintiffs and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3396. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3397. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

entitled.

3398. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3399. Pursuant to S.C. Code. Ann. § 39-5-140, Plaintiffs and Subclass Members seek an order enjoining Defendant's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the South Carolina UTPA.

**D.      Fraud by Omission and Concealment**

3400. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3401. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3402. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3403. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

> a.      Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3404. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3405. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3406. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3407. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3408. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3409. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3410. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3411. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3412. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3413. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

3414. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3415. Defendants manufactured, distributed and sold the Vehicles to Plaintiffs'

Insureds.

3416. Defendants owed the Insureds a duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3417. Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

3418. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3419. Defendants breached that duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3420. The Defendants' violation of their duties owed to Plaintiffs' Insureds under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

3421. As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

# SOUTH DAKOTA STATE LAW CLAIMS FOR RELIEF

## (Alleged by Plaintiffs, and Members of South Dakota Subclasses, against All Defendants)

3422. Class Plaintiffs, the Hyundai South Dakota Subclass and Kia South Dakota Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3423. The South Dakota Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses in the State of South Dakota due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company; Permanent General Assurance Corporation; GEICO Casualty Company; GEICO Indemnity Company; GEICO General Insurance Company; Government Employees Insurance Company; Depositors Insurance Company; Progressive Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; and USAA General Indemnity Company; all of whom paid policy proceeds to their respective Insureds in South Dakota pursuant to policies of insurance.

## A. Breach of Implied Warranty of Merchantability under S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212

3424. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3425. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to S.D. Codified Laws §§ 57A-2-314 and 57A-2A-212.

3426. Defendants are and were at all relevant times "merchants" with respect

to motor vehicles under S.D. Codified Laws §§ 57A-2-104(1) and 57A-2A-103(3), and "sellers" of motor vehicles under §§ 57A-2-103(1)(d).

3427. Defendants are and were at all relevant times "lessors" of motor vehicles under S.D. Codified Laws § 57A-2A-103(1)(p).

3428. Plaintiffs' Insureds who purchased Vehicles in South Dakota are "buyers" within the meaning of S.D. Codified Laws § 57A-2-103(1)(a)

3429. Plaintiffs' Insureds who leased Vehicles in South Dakota are "lessees" within the meaning of S.D. Codified Laws § 57A-2A-103(1)(n).

3430. The Vehicles are and were at all relevant times "goods" within the meaning of S.D. Codified Laws §§ 57-2-105(1) and 57-2A-103(1)(h).

3431. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3432. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3433. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3434. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3435. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3436. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or

repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3437. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

## B.    Breach of Express Warranty under S.D. Codified Laws § 57A-2-313

3438. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3439. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3440. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3441. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3442. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3443. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are

capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3444. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.    Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws §§ 37-24-1, et seq.)**

3445. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3446. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning of S.D. Codified Laws § 37-24-1.

3447. The Vehicles are "merchandise" within the meaning of S.D. Codified Laws § 37-24-1.

3448. Under the South Dakota Deceptive Trade Practices and Consumer Protection Law, ("South Dakota CPL") "[i]t is a deceptive act or practice for any person to: Knowingly act, use, or employ any deceptive act or practice, fraud, false pretense, false promises, or misrepresentation or to conceal, suppress, or omit any material fact in connection with the sale or advertisement of any merchandise, regardless of whether any person has in fact been misled, deceived, or damaged thereby . . . ." S.D. Codified Laws § 37-24-6.

3449. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the South Dakota CPL by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material

facts regarding the quality, reliability, and safety of the Vehicles and the Theft Prevention Defect, as detailed above.

3450. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the South Dakota CPL in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Theft Prevention Defect in the Vehicles.

3451. As detailed above, the information concerning the Theft Prevention Defect was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3452. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Theft Prevention Defect, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by S.D. Codified Laws § 37-24-6(1): use of fraud, false pretense, false promises, or misrepresentation or concealment, suppression, or omission of material facts in connection with the sale or advertisement of the Vehicles.

3453. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3454. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Theft Prevention Defect. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3455. Defendants' misrepresentations of material fact regarding compliance

with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3456. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Theft Prevention Defect, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3457. Had they known the truth about the Theft Prevention Defect, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Theft Prevention Defect.

3458. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3459. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Theft Prevention Defect. Defendants' unlawful acts and practices complained of herein affect the public interest.

3460. On March 9, 2023, Class Members sent Defendants notice of the Theft Prevention Defect. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their

1  unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are

2  entitled.

3       3461. Alternatively, providing notice to Defendants and an opportunity to cure

4  the breach prior to filing suit would have been futile as Plaintiffs suffered damages

5  due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As

6  alleged above, Defendants have long known that the Vehicles contained the Theft

7  Prevention Defect, however, did nothing to remedy the Theft Prevention Defect.

8       3462. Pursuant to S.D. Codified Laws § 37-24-31, Plaintiffs and Subclass

9  Members seek an order enjoining Defendants' unfair or deceptive acts or practices

10  and awarding damages and any other just and proper relief available under the South

11  Dakota CPL

12  **D.       Fraud by Omission and Concealment**

13       3463. Plaintiffs reallege and incorporate by reference all preceding allegations

14  as though fully set forth herein.

15       3464. Defendants' misleading representations include affirmative statements

16  that the Vehicles conform with all applicable safety and anti-theft standards. In reality,

17  however, the Vehicles do not comply with such standards.

18       3465. Defendants were aware of the Thief Friendly Design when they

19  marketed and sold the Vehicles to Plaintiffs' Insureds.

20       3466. Having been aware of the Thief Friendly Design within the Vehicles and

21  having known that Plaintiffs' Insureds could not have reasonably been expected to

22  know of the Thief Friendly Design, Defendants had a duty to disclose the Thief

23  Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

24  Defendants further had a duty to disclose the Thief Friendly Design because:

25              a.     Defendants had exclusive access to and far superior knowledge

26                     about facts regarding the Thief Friendly Design and Defendants

27                     knew these facts were not known to or reasonably discoverable by

28                     Plaintiffs' Insureds;

b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3467. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3468. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3469. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3470. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3471. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3472. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3473. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3474. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3475. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3476. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

3477. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3478. Defendants manufactured, distributed and sold the Vehicles to Plaintiffs'

Insureds.

3479. Defendants owed the Insureds a duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3480. Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

3481. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3482. Defendants breached that duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3483. The Defendants' violation of their duties owed to Plaintiffs' Insureds under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

3484. As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

## TENNESSEE STATE LAW CLAIMS FOR RELIEF

## (Alleged by  Plaintiffs, and Members of Tennessee Subclasses, against All Defendants)

3485. Class Plaintiffs, the Hyundai Tennessee Subclass and Kia Tennessee Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.  The claims under the Tennessee Consumer Protection Act of 1977, however, are brought on an individual, rather than on a class basis.

3486. The Tennessee Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Tennessee due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate County Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; Permanent General Assurance Corporation; Erie Insurance Company; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO Casualty Insurance Company; GEICO Choice Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Teachers Insurance Company; American Access Casualty Company; Infinity Automobile Insurance Company; Response Insurance Company; AMCO Insurance Company; Nationwide General Insurance Company; Nationwide Property & Casualty Insurance Company; Progressive Direct Insurance Company; Progressive Hawaii Insurance Corporation; Mountain Laurel Assurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Tennessee pursuant to policies of insurance.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

**A.      Breach of Implied Warranty of Merchantability under Tenn. Code Ann. §§ 47-2-314 and 47-2A-212**

3487. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3488. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Tenn. Code Ann. §§ 47-2-314 and 47-2A-212.

3489. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tenn. Code Ann. §§ 47-2-104(1) and 47-2A-103(3), and "sellers" of motor vehicles under § 47-2-103(1)(d).

3490. Defendants are and were at all relevant times "lessors" of motor vehicles under Tenn. Code Ann. § 47-2A-103(1)(p).

3491. Plaintiffs' Insureds who purchased Vehicles in Tennessee are "buyers" within the meaning of Tenn. Code Ann. § 47-2-103(1)(a).

3492. Plaintiffs' Insureds who leased Vehicles in Tennessee are "lessees" within the meaning of Tenn. Code Ann. § 47-2A-103(1)(n).

3493. The Vehicles are and were at all relevant times "goods" within the meaning of Tenn. Code Ann. §§ 47-2-105(1) and 47-2A-103(1)(h).

3494. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3495. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition,

would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3496. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3497. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3498. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this

count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3499. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3500. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under Tenn.  Code Ann. § 47-2-313**

3501. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3502. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3503. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3504. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3505. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3506. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.    Violation of the Tennessee Consumer Protection Act of 1977 (Tenn. Code Ann. §§ 47-18-101, et seq.)**

3507. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3508. Plaintiffs stand in the shoes of their Insureds, who are "persons" within the meaning of Tennessee Code Ann. § 47-18-103(18).

3509. The Class Vehicles are "goods" within the meaning of § 47-18-103(12).

3510. Defendants were and are engaged in "trade" or "commerce" within the meaning of § 47-18-103(24).

3511. The Tennessee Consumer Protection Act of 1977 ("Tennessee CPA") declares that "[u]nfair or deceptive acts or practices affecting the conduct of any trade or commerce constitute unlawful acts or practices . . . ." Tennessee Code Ann. § 47-

18-104(a).

3512. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Tennessee CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3513. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Tennessee CPA in the course of their business. Specifically, Defendants owed the Plaintiffs and their Insureds a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3514. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3515. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited Tennessee Code Ann. § 47-18-104(b):

    a.   Causing likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of the Vehicles;

    b.   Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have, including that they complied with all applicable safety and anti-theft standards;

    c.   Representing that the Vehicles are of a particular standard, quality or grade, including that they complied with all applicable safety and anti-theft standards, when they are not;

    d.   Advertising the Vehicles with intent not to sell them as advertised; and

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

e.  Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the Vehicles, or which may otherwise misrepresent the Vehicles in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised Vehicles to other goods or services. Tennessee Code Ann. § 47-18-104(b)(2), (5), (7), (9), and (21).

3516. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3517. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3518. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3519. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the

Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3520. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3521. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3522. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3523. On March 9, 2023, Plaintiffs sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which they are entitled.

3524. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3525. Pursuant to Tennessee Code Ann. § 47-18-109, Plaintiffs seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Tennessee CPA.

**D.     Fraud by Omission and Concealment**

3526. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3527. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3528. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3529. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.   Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.   Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and

materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3530. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3531. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3532. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3533. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3534. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3535. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3536. Through their omissions and concealment with respect to the Thief

Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3537. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3538. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3539. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

3540. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3541. Defendants manufactured, distributed and sold the Vehicles to Plaintiffs' Insureds.

3542. Defendants owed the Insureds a duty of care included, at a minimum, the manufacture and sale of vehicles that fully complied with all federal and industry safety and anti-theft standards; and failing that, Defendants owed a duty to disclose the fact that the Vehicles were uniquely susceptible to theft by casual car thieves and miscreants in a matter of seconds.

3543. Defendants violated applicable industry standards and otherwise failed to exercise reasonable care in connection with their manufacture, distribution and sale of the Vehicles.

3544. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3545. Defendants breached that duties when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3546. The Defendants' violation of their duties owed to Plaintiffs' Insureds under applicable law included their failure to comply with federal regulatory requirements to equip their vehicles with mandatory anti-theft protection that complies with the requirements of FMVSS 114.

3547. As a result of Defendants' violation of their duties, Plaintiffs and Plaintiffs' Insureds suffered damage, including property damage and the loss of use the Vehicles, together with other damages for which the Defendants are liable.

## **TEXAS STATE LAW CLAIMS FOR RELIEF**

### **(Alleged by  Plaintiffs, and Members of Texas Subclasses, against All Defendants)**

3548. Class Plaintiffs, the Hyundai Texas Subclass and Kia Texas Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3549. The Texas Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Texas due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate County Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance

Company; Permanent General Assurance Corporation; Erie Insurance Exchange; GEICO Advantage Insurance Company; GEICO County Mutual Insurance Company; GEICO General Insurance Company; Government Employees Insurance Company; Teachers Insurance Company; American Access Casualty Company; Home State County Mutual Insurance Company; Infinity County Mutual Insurance Company; Unitrin County Mutual Insurance Company; America First Insurance Company; Liberty Mutual Fire Insurance Company; Allied Property & Casualty Insurance Company; Colonial County Mutual Insurance Company; Nationwide Agribusiness Insurance Company; Nationwide Mutual Insurance Company; Artisan and Truckers Casualty Company; Progressive County Mutual Insurance Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; United Services Automobile Association; First Chicago Insurance Company and Old American County Mutual Fire Insurance Company; all of whom paid policy proceeds to their respective Insureds in Oklahoma pursuant to policies of insurance.

## A.    Breach of Implied Warranty of Merchantability under Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212

3550. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3551. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Tex. Bus. & Com. Code Ann. §§ 2.314 and 2A.212.

3552. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Tex. Bus. & Com. Code Ann. §§ 2.104(a) and 2A.103(c), and "sellers" of motor vehicles under § 2.103(a)(4).

3553. Defendants are and were at all relevant times "lessors" of motor vehicles under Tex. Bus. & Com. Code Ann. § 2A.103(a)(16).

3554. Plaintiffs' Insureds who purchased Vehicles in Texas are "buyers"

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1 within the meaning of Tex. Bus. & Com. Code Ann. § 2.103(a)(1).

2   3555. Plaintiffs' Insureds who leased Vehicles in Texas are "lessees" within

3 the meaning of Tex. Bus. & Com. Code Ann. § 2A.103(a)(14).

4   3556. The Vehicles are and were at all relevant times "goods" within the

5 meaning of Tex. Bus. & Com. Code Ann. §§ 2.105(a) and 2A.103(a)(8).

6   3557. Defendants knew or had reason to know of the specific use for which the

7 Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied

8 warranty that the Vehicles and any parts thereof were merchantable and fit for the

9 ordinary purposes for which they were sold. This implied warranty included, among

10 other things, a warranty that the Vehicles were manufactured, supplied, distributed,

11 and sold by Defendants, were safe and reliable for providing transportation, would

12 not be vulnerable to an abnormally high risk of theft, and complied with applicable

13 federal and state laws and regulations, including FMVSS 114.

14   3558. However, the Vehicles did not comply with the implied warranty of

15 merchantability because they were defective and not in merchantable condition,

16 would not pass without objection in the trade, and were not fit for their ordinary

17 purpose of providing reasonably reliable, safe, and secure transportation at the time

18 of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly

19 Design, lacking any anti-theft features or design elements to provide an adequate theft

20 deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard

21 because the Thief Friendly Design renders Vehicles vulnerable to theft, making them

22 prime targets to be used as instrumentalities through which thieves engage in reckless

23 driving or other criminal activity.

24   3559. Any attempt by Defendants to disclaim or limit the implied warranty of

25 merchantability for their respective Vehicles vis-à-vis consumers is unconscionable

26 and unenforceable. Specifically, Defendants' warranty limitations are unenforceable

27 because Defendants knowingly sold or leased defective Vehicles without informing

28 consumers about the Thief Friendly Design. The time limits contained in Defendants'

warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3560. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3561. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3562. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3563. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly

1    Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount
2    to be proven at trial.

3    **B.      Breach of Express Warranty under Tex. Bus. & Com. Code Ann. § 2.313**

4          3564. Plaintiffs reallege and incorporate by reference all preceding allegations
5    as though fully set forth herein.

6          3565. During the relevant time period described above, Plaintiffs' Insureds
7    purchased or leased Vehicles.

8          3566. These Vehicles were manufactured by Defendants during the relevant
9    time period described above. Through the attachment of VIN plates, Defendants made
10   an express warranty that the Vehicles conform to all applicable U.S.A. federal motor
11   vehicle safety, bumper, and theft prevention standards in effect on the date of
12   manufacture, which directly related to condition of the Vehicles and became a basis
13   of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima
14   Vehicle is provided above. On information and belief, similar written warranties were
15   made prior to, or at the point of sale for all Vehicles.

16         3567. After Plaintiffs' Insureds purchased or leased the Vehicles, they used
17   them in accordance with the normal operation of the Vehicles and did not mishandle
18   or otherwise damage the Vehicles in any way that is material to the allegations set
19   forth herein.

20         3568. The Vehicles did not perform as promised in accordance with
21   Defendants' express warranty, as it has become common knowledge that they are
22   capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all
23   applicable motor vehicle safety, and theft prevention standards in effect on the date
24   of manufacture. As a direct and proximate result of the Thief Friendly Design, the
25   Vehicles were easily stolen, and thus failed to perform to the terms of the express
26   warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact,
27   conform to the applicable anti-theft standards.

28         3569. Plaintiffs have incurred and will continue to incur damages and costs and

expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

## C.    Fraud by Omission and Concealment

3570.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3571.  Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3572.  Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3573.  Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3574. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3575. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3576. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3577. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3578. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3579. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3580. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3581. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3582. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3583. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**D.    Negligence**

3584. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3585. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3586. Defendants breached that duty when they negligently manufactured and

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3587. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3588. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**E.      Negligent Misrepresentation**

3589. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3590. Defendants owed a duty to the general public and to Plaintiffs' Insureds to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3591. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3592. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3593. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3594. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3595. At the time that Defendants made the incorrect statements or omissions of fact, they had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3596. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3597. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

# UTAH STATE LAW CLAIMS FOR RELIEF

## (Alleged by Plaintiffs, and Members of Utah Subclasses, against All Defendants)

3598. Class Plaintiffs, the Hyundai Utah Subclass and Kia Utah Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3599. The Utah Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses in the State of Utah due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Permanent General Assurance Corporation; GEICO Casualty Company; GEICO Indemnity Company; GEICO Secure Insurance Company; Horace Mann Property & Casualty Insurance Company; Alpha Property & Casualty Insurance Company; Trinity Universal Insurance Company; Nationwide Agribusiness Insurance Company; Nationwide Affinity Insurance Company of America; Nationwide General Insurance Company; Progressive Direct Insurance Company; Progressive Classic Insurance Company; United Financial Casualty Company; Root Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; who paid policy proceeds to their respective Insureds in Utah pursuant to policies of insurance.

## A. Breach of Implied Warranty of Merchantability under Utah Code Ann. §§ 70A-2-314 and 70A-2A-212

3600. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Utah Code Ann. §§ 70A-2-314 and 70A-2A-212.

3601. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Utah Code Ann. §§ 70A-2-104(1) and 70A-2A-103(3)(k), and "sellers" of motor vehicles under § 70A-2-103(1)(d).

3602. Defendants are and were at all relevant times "lessors" of motor vehicles under Utah Code Ann. § 70A-2A-103(1)(p).

3603. Plaintiffs' Insureds who purchased Vehicles in Utah are "buyers" within the meaning of Utah Code Ann. § 70A-2-103(1)(a).

3604. Plaintiffs' Insureds who leased Vehicles in Utah are "lessees" within the meaning of Utah Code Ann. § 70A-2A-103(1)(n).

3605. The Vehicles are and were at all relevant times "goods" within the meaning of Utah Code Ann. §§ 70A-2-105(1) and 70A-2A-103(1)(h).

3606. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3607. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless

driving or other criminal activity.

3608. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3609. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3610. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3611. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the

Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3612. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.     Breach of Express Warranty under Utah Code Ann. § 70A-2-313**

3613. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3614. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3615. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3616. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3617. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3618. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.     Violation of the Utah Consumer Sales Practices Act (Utah Code Ann. §§ 13-11-1, et seq.)**

3619. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3620. Plaintiffs and Subclass Members stand in the shoes of their Insureds.

3621. The sale and/or lease of the Vehicles from Defendants to Plaintiffs are "consumer transactions" within the meaning of Utah Code Ann. § 13-11-3(2).

3622. Defendants are "suppliers" within the meaning of Utah Code Ann. § 13-11-3(6).

3623. The Utah Consumer Sales Practices Act ("Utah CPA") mandates that "[a] deceptive act or practice by a supplier in connection with a consumer transaction violates this chapter whether it occurs before, during, or after the transaction." Utah Code Ann. § 13-11-4(1).

3624. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Utah CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3625. Defendants had an ongoing duty to the Plaintiffs and their Insureds to

refrain from unfair or deceptive practices under the Utah CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3626. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3627. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following deceptive acts or practices prohibited by Utah Code Ann. § 13-11-4(2): a. Indicating that the Vehicles, as subjects of a consumer transaction, have sponsorship, approval, performance characteristics, accessories, uses, or benefits, they do not, including that they complied with all applicable safety and anti-theft standards; and b. Representing that the Vehicles are of a particular standard, quality, and grade, including that they complied with all applicable safety and anti-theft standards, when they are not. Utah Code Ann. § 13-11-4(2)(a) and (b).

3628. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3629. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3630. Defendants' misrepresentations of material fact regarding compliance

with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3631. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3632. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3633. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3634. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3635. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their

1  unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are

2  entitled.

3  3636. Alternatively, providing notice to Defendants and an opportunity to cure

4  the breach prior to filing suit would have been futile as Plaintiffs suffered damages

5  due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As

6  alleged above, Defendants have long known that the Vehicles contained the Thief

7  Friendly Design yet did nothing to remedy the Thief Friendly Design.

8  3637. Pursuant to Utah Code Ann. § 13-11-19(4)(a), Plaintiffs and Subclass

9  Members seek an order enjoining Defendants' unfair or deceptive acts or practices

10  and awarding damages and any other just and proper relief available under the Utah

11  CPA.

12  **D.    Fraud by Omission and Concealment**

13  3638. Plaintiffs reallege and incorporate by reference all preceding allegations

14  as though fully set forth herein.

15  3639. Defendants' misleading representations include affirmative statements

16  that the Vehicles conform with all applicable safety and anti-theft standards. In reality,

17  however, the Vehicles do not comply with such standards.

18  3640. Defendants were aware of the Thief Friendly Design when they

19  marketed and sold the Vehicles to Plaintiffs' Insureds.

20  3641. Having been aware of the Thief Friendly Design within the Vehicles and

21  having known that Plaintiffs' Insureds could not have reasonably been expected to

22  know of the Thief Friendly Design, Defendants had a duty to disclose the Thief

23  Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

24  Defendants further had a duty to disclose the Thief Friendly Design because:

25  a.    Defendants had exclusive access to and far superior knowledge

26  about facts regarding the Thief Friendly Design and Defendants

27  knew these facts were not known to or reasonably discoverable by

28  Plaintiffs' Insureds;

b. Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c. Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d. Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3642. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3643. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3644. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

LEGAL\67600038\1

3645. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3646. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3647. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3648. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3649. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3650. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

3651. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3652. The National Highway Traffic Safety Administration has a self-

certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3653. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3654. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3655. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

## F.    Negligent Misrepresentation

3656. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3657. Defendants owed a duty to the general public and to Plaintiffs' Insureds to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3658. Defendants made false representations, in the course of their business, to

the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3659. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3660. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3661. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3662. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3663. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted

facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3664. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## VERMONT STATE LAW CLAIMS FOR RELIEF

### (Alleged by  Plaintiffs, and Members of Vermont Subclasses, against All Defendants)

3665. Class Plaintiffs, the Hyundai Vermont Subclass and Kia Vermont Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3666. The Vermont Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Vermont due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; GEICO General Insurance Company; GEICO Indemnity Company; Unitrin Safeguard Insurance Company; Progressive Direct Insurance Company; Progressive Northern Insurance Company; and USAA Casualty Insurance Company; all of whom paid policy proceeds to their respective Insureds in Vermont pursuant to policies of insurance.

**A.**     **Breach of Implied Warranty of Merchantability under Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212**

3667. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3668. A warranty that the Vehicles (identified in Exhibit "A") were in

merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Vt. Stat. Ann. Tit. 9A, §§ 2-314 and 2A-212.

3669. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Vt. Stat. Ann. Tit. 9A, §§ 2-104(1) and 2A-103(3), and "sellers" of motor vehicles under § 2-103(1)(d).

3670. Defendants are and were at all relevant times "lessors" of motor vehicles under Vt. Stat. Ann. Tit. 9A, § 2A-103(1)(p).

3671. Plaintiffs' Insureds who purchased Vehicles in Vermont are "buyers" within the meaning of Vt. Stat. Ann. Tit. 9A, § 2-103(1)(a).

3672. Plaintiffs' Insureds who leased Vehicles in Vermont are "lessees" within the meaning of Vt. Stat. Ann. Tit. 9A, § 2A-103(1)(n).

3673. The Vehicles are and were at all relevant times "goods" within the meaning of Vt. Stat. Ann. Tit. 9A, §§ 2-105(1) and 2A-103(1)(h).

3674. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3675. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard

because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3676. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3677. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3678. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3679. Alternatively, Plaintiffs were excused from providing Defendants with

notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3680. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.    Breach of Express Warranty under Vt. Stat. Ann. Tit. 9A, § 2-313**

3681. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3682. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3683. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3684. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3685. The Vehicles did not perform as promised in accordance with

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3686. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.      Violation of the Vermont Consumer Protection Act (Vt. Stat. Ann. Tit. 9, § 2451, et seq.)**

3687. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3688. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "consumers" within the meaning of 9 V.S.A. § 2451a(1).

3689. The Vehicles are "goods" within the meaning of § 9 V.S.A. 2451a(2).

3690. Defendants are "sellers" within the meaning of 9 V.S.A. 2451a(3).

3691. The Vermont Consumer Protection Act ("Vermont CPA") declares unlawful "[u]nfair methods of competition in commerce and unfair or deceptive acts or practices in commerce . . . ." 9 V.S.A. § 2453(a).

3692. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Vermont CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3693. Defendants had an ongoing duty to the Plaintiffs and their Insureds to

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

refrain from unfair or deceptive practices under the Vermont CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3694. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3695. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in representations, omissions, and other practices likely to mislead consumers in violation of the Vermont CPA.

3696. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3697. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3698. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants'

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3699. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3700. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3701. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3702. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3703. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3704. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As

alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3705. Pursuant to 9 V.S.A. § 2461(b), Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Vermont CPA.

**D.    Fraud by Omission and Concealment**

3706. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3707. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3708. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3709. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.  Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3710. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3711. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3712. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3713. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3714. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the

commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3715. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3716. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3717. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3718. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3719. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

3720. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3721. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1  entered into with Plaintiffs' Insureds.

2  3722. Defendants breached that duty when they negligently manufactured and

3  sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required

4  by federal standards, this faulty design known as the Thief Friendly Design.

5  3723. Defendants' negligent manufacture, sale and lease of non-compliant

6  vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for

7  theft at a much higher rate than had the Vehicles had not been negligently

8  manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and

9  leased from Defendants were stolen, or damaged in the course of being stolen.

10  3724. As a direct and proximate result of Defendants' negligence in

11  manufacturing and selling non-complaint Vehicles with the Thief Friendly Design,

12  Plaintiffs were obligated by their policies of insurances with their Insureds to make

13  payments for lost or damaged Vehicles, and incurred damages in an ascertainable

14  amount subject to proof at trial.

15  **F.    Negligent Misrepresentation**

16  3725. Plaintiffs reallege and incorporate by reference all preceding allegations

17  as though fully set forth herein.

18  3726. Defendants owed a duty to the general public and to Plaintiffs' Insureds,

19  as part of the general group of persons for whose benefit and guidance the

20  representations were made, to communicate truthful information to the Plaintiffs'

21  Insureds regarding the security of the Vehicles offered for sale and that all Vehicles

22  were compliant with all applicable federal standards.

23  3727. Defendants made false representations, in the course of their business, to

24  the Plaintiffs' Insureds and are liable for supplying false information and

25  misrepresentations to the Insureds by representing that the vehicles have

26  characteristics, uses, benefits, and qualities which they do not have; representing that

27  the Vehicles are of a particular standard of quality when they are not; and omitting

28  material facts in describing the Vehicles.

3728. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3729. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3730. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3731. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3732. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3733. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## <u>VIRGINIA STATE LAW CLAIMS FOR RELIEF</u>

### (Alleged by Plaintiffs, and Members of Virginia Subclasses, against All Defendants)

3734. Class Plaintiffs, the Hyundai Virginia Subclass and Kia Virginia Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3735. The Virginia Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Virginia due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Old Dominion Insurance Company; Erie Insurance Exchange; Erie Insurance Property & Casualty Company; GEICO Advantage Insurance Company; GEICO Choice Insurance Company; GEICO Indemnity Company; Government Employees Insurance Company; Horace Mann Insurance Company; Nationwide General Insurance Company; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company; Progressive Advance Insurance Company; Progressive Gulf Insurance Company; Progressive Select Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Virginia pursuant to policies of insurance.

**B.**   **Breach of Implied Warranty of Merchantability under Va. Code Ann. §§ 8.2-314 and 8.2A-212**

3736. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

3737. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Va. Code Ann. §§ 8.2-314 and 8.2A-212.

3738. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Va. Code Ann. §§ 8.2-104(1) and 8.2A-103(3), and "sellers" of motor vehicles under § 8.2-103(1)(d).

3739. Defendants are and were at all relevant times "lessors" of motor vehicles under Va. Code Ann. § 8.2A-103(1)(p).

3740. Plaintiffs' Insureds who purchased Vehicles in Virginia are "buyers" within the meaning of Va. Code Ann. § 8.2-103(1)(a).

3741. Plaintiffs' Insureds who leased Vehicles in Virginia are "lessees" within the meaning of Va. Code Ann. § 8.2A-103(1)(n).

3742. The Vehicles are and were at all relevant times "goods" within the meaning of Va. Code Ann. §§ 8.2-105(1) and 8.2A-103(1)(h).

3743. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3744. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly

Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3745. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3746. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3747. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

defects became public.

3748. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3749. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

## C.   Breach of Express Warranty under Va. Code Ann. § 8.2-313

3750. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3751. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3752. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3753. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set

forth herein.

3754. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3755. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**D.     Violation of the Virginia Consumer Protection Act (Va. Code Ann. §§ 59.1-196, et seq.)**

3756. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3757. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning of Va. Code Ann. § 59.1-198.

3758. The Vehicles are "goods" within the meaning Va. Code Ann. § 59.1-198.

3759. The sale and/or lease of the Vehicles from Defendants to Plaintiffs are "consumer transactions" within the meaning of Va. Code Ann. § 59.1-198.

3760. Defendants are "suppliers" within the meaning of Va. Code Ann. § 59.1-198.

3761. The Virginia Consumer Protection Act ("Virginia CPA") declares unlawful certain "fraudulent acts or practices committed by a supplier in connection with a consumer transaction. . . ." Va. Code Ann. § 59.1-200(A).

3762. In the course of their business, Defendants through their agents,

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

employees, and/or subsidiaries, violated the Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3763. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Virginia CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3764. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3765. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following fraudulent acts or practices prohibited by Va. Code Ann. § 59.1-200(A): a. Misrepresenting the approval or certification of the Vehicles, including that they complied with all applicable safety and anti-theft standards; b. Misrepresenting the characteristics, uses, or benefits of the Vehicles; c. Misrepresenting the standard, quality, and grade, of the Vehicles, including that they complied with all applicable safety and anti-theft standards when they did not; d. Advertising or offering for sale the Vehicles in a defective and blemished condition without clearly and unequivocally indicating such condition in the advertisement or offer for sale; e. Advertising the Vehicles with the intent not to sell or lease them as advertised; and f. Using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with the advertisement and sale/lease of the Vehicles. Va. Code Ann. § 59.1-200(A)(2), (5), (6), (7), (8), and (14).

3766. Defendants intended for Plaintiffs and their Insureds to rely on them to

provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3767. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3768. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3769. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3770. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3771. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3772. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3773. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3774. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3775. Pursuant to Va. Code Ann. § 59.1-204(A), Plaintiffs and Subclass Members seek an order enjoining Defendants' fraudulent acts or practices and awarding damages and any other just and proper relief available under the Virginia CPA.

**E.     Fraud by Omission and Concealment**

3776. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3777. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3778. Defendants were aware of the Thief Friendly Design when they

1  marketed and sold the Vehicles to Plaintiffs' Insureds.

2   3779. Having been aware of the Thief Friendly Design within the Vehicles and
3  having known that Plaintiffs' Insureds could not have reasonably been expected to
4  know of the Thief Friendly Design, Defendants had a duty to disclose the Thief
5  Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.
6  Defendants further had a duty to disclose the Thief Friendly Design because:

7   a.  Defendants had exclusive access to and far superior knowledge
8      about facts regarding the Thief Friendly Design and Defendants
9      knew these facts were not known to or reasonably discoverable by
10      Plaintiffs' Insureds;

11   b.  Given the Thief Friendly Design's hidden and technical nature,
12      Plaintiffs' Insureds lack the sophisticated expertise in vehicle
13      components that would be necessary to discover the Thief
14      Friendly Design on their own;

15   c.  Defendants knew that the Thief Friendly Design gave rise to safety
16      concerns for the consumers who use the Vehicles, and the Thief
17      Friendly Design would have been a material fact to the Plaintiffs'
18      Insureds' decisions to buy or lease the Vehicles; and

19   d.  Defendants made incomplete representations about the safety and
20      reliability of the Vehicles while purposefully withholding material
21      facts about a known safety defect. In uniform advertising and
22      materials provided with each Vehicle, Defendants intentionally
23      concealed, suppressed, and failed to disclose to the consumers that
24      the Vehicles contained the Thief Friendly Design. Because they
25      volunteered to provide information about the Vehicles that they
26      marketed and offered for sale and lease to consumers, Defendants
27      had the duty to disclose the whole truth.

28   3780. In breach of their duties, Defendants failed to disclose the Thief Friendly

Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3781. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3782. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3783. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3784. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3785. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3786. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3787. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3788. As a direct and proximate result of Defendants' omissions, Plaintiffs'

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3789.  Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**F.     Negligence**

3790.  Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3791.  The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3792.  Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3793.  Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3794.  As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**G.    Constructive Fraud**

3795. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3796. Defendants owed a duty to the general public and to Plaintiffs' Insureds to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3797. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3798. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3799. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3800. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3801. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the

statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3802. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3803. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## WASHINGTON STATE LAW CLAIMS FOR RELIEF

**(Alleged by  Plaintiffs, and Members of Washington Subclasses, against All Defendants)**

3804. Class Plaintiffs, the Hyundai Washington Subclass and Kia Washington Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3805. The Washington Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Washington due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Church

Mutual Insurance Company SI; Acuity, A Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company, S.I.; Main Street America Protection Insurance Company; Permanent General Assurance Corporation; Erie Insurance Exchange; GEICO Choice Insurance Company; GEICO Secure Insurance Company; Horace Mann Insurance Company; Horace Mann Property & Casualty Insurance Company; Alliance United Insurance Company; Charter Indemnity Company; Nationwide Affinity Insurance Company of America; Nationwide Agribusiness Insurance Company; Nationwide Mutual Insurance Company; PEMCO Mutual Insurance Company; Progressive Casualty Insurance Company; Progressive County Mutual Insurance Company; Progressive Direct Insurance Company;  General Casualty Company of Wisconsin; Unigard Insurance Company; Garrison Property & Casualty Insurance Company; USAA Casualty Insurance Company; USAA General Indemnity Company; and United Services Automobile Association; all of whom paid policy proceeds to their respective Insureds in Washington pursuant to policies of insurance.

## A.   Breach of Implied Warranty of Merchantability under Wash. Rev. Code Ann. §§ 62A.2-314 and 62A.2A-212

3806. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3807. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Wash. Rev. Code Ann. §§ 62A.2-314 and 62A.2A-212.

3808. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wash. Rev. Code Ann. §§ 62A.2-104(1) and 62A.2A-103(3), and "sellers" of motor vehicles under § 62A.2-103(1)(d).

3809. Defendants are and were at all relevant times "lessors" of motor vehicles under Wash. Rev. Code Ann. § 62A.2A-103(1)(p).

3810. Plaintiffs' Insureds who purchased Vehicles in Washington are "buyers" within the meaning of Wash. Rev. Code Ann. § 62A.2-103(1)(a).

3811. Plaintiffs' Insureds who leased Vehicles in Washington are "lessees" within the meaning of Wash. Rev. Code Ann. § 62A.2A-103(1)(n).

3812. The Vehicles are and were at all relevant times "goods" within the meaning of Wash. Rev. Code Ann. §§ 62A.2-105(1) and 62A.2A-103(1)(h).

3813. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3814. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3815. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing

consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3816. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3817. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3818. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3819. As a direct and proximate result of Defendants' breach of the implied

1   warranties, the Insureds' vehicles were and are defective, and the Thief Friendly

2   Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount

3   to be proven at trial.

4   **B.    Breach of Express Warranty under Wash. Rev. Code Ann. § 62A.2-313**

5       3820. Plaintiffs reallege and incorporate by reference all preceding allegations

6   as though fully set forth herein.

7       3821. During the relevant time period described above, Plaintiffs' Insureds

8   purchased or leased Vehicles.

9       3822. These Vehicles were manufactured by Defendants during the relevant

10  time period described above. Through the attachment of VIN plates, Defendants made

11  an express warranty that the Vehicles conform to all applicable U.S.A. federal motor

12  vehicle safety, bumper, and theft prevention standards in effect on the date of

13  manufacture, which directly related to condition of the Vehicles and became a basis

14  of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima

15  Vehicle is provided above. On information and belief, similar written warranties were

16  made prior to, or at the point of sale for all Vehicles.

17      3823. After Plaintiffs' Insureds purchased or leased the Vehicles, they used

18  them in accordance with the normal operation of the Vehicles and did not mishandle

19  or otherwise damage the Vehicles in any way that is material to the allegations set

20  forth herein.

21      3824. The Vehicles did not perform as promised in accordance with

22  Defendants' express warranty, as it has become common knowledge that they are

23  capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all

24  applicable motor vehicle safety, and theft prevention standards in effect on the date

25  of manufacture. As a direct and proximate result of the Thief Friendly Design, the

26  Vehicles were easily stolen, and thus failed to perform to the terms of the express

27  warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact,

28  conform to the applicable anti-theft standards.

3825. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.    Violation of the Washington Consumer Protection Act (Wash. Rev. Code Ann. §§ 19.86.010, et seq.)**

3826. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3827. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning of Wash. Rev. Code Ann. § 19.86.010(1).

3828. The Vehicles are "assets" within the meaning of Wash. Rev. Code Ann. § 19.86.010(3).

3829. Defendants were and are engaged in "trade and commerce" within the meaning of Wash. Rev. Code Ann. § 19.86.010(2).

3830. The Washington Consumer Protection Act ("Washington CPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." Wash. Rev. Code Ann. § 19.86.020.

3831. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Washington CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3832. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Washington CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3833. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3834. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in unfair or deceptive business practices in the conduct of trade or commerce prohibited by Wash. Rev. Code Ann. § 19.86.020.

3835. These unfair or deceptive business practices are injurious to the public interest because they have injured and continue to have the capacity to injure other persons because the Vehicles remain unsafe due to the Thief Friendly Design. Wash. Rev. Code Ann. § 19.86.093.

3836. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3837. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3838. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants'

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

1 misrepresentations that the Vehicles were compliant with applicable anti-theft

2 standards, safe and reliable in deciding to purchase or lease Vehicles.

3    3839. The Insureds' reliance was reasonable, as they had no way of discerning

4 Defendants' representations were false and misleading, or otherwise learning that the

5 Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass

6 Members, and their Insureds did not, and could not, unravel Defendants' deception

7 on their own.

8    3840. Had they known the truth about the Thief Friendly Design, the Insureds

9 would not have exposed themselves to the unreasonable risk of theft that was caused

10 by the concealment of the Thief Friendly Design.

11    3841. Plaintiffs, and Subclass Members suffered ascertainable losses and

12 actual damages as a direct and proximate result of Defendants' concealment,

13 misrepresentations, and/or failure to disclose material information.

14    3842. On March 9, 2023, Class Members sent Defendants notice of the Thief

15 Friendly Design. Additionally, all Defendants were provided notice of the issues

16 raised in this count and this Complaint by governmental investigations, numerous

17 complaints filed against them, internet videos, news reports, and the many individual

18 notice letters sent by Plaintiffs within a reasonable amount of time after the allegations

19 of Class Vehicle defects became public. Because Defendants failed to remedy their

20 unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are

21 entitled.

22    3843. Alternatively, providing notice to Defendants and an opportunity to cure

23 the breach prior to filing suit would have been futile as Plaintiffs suffered damages

24 due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As

25 alleged above, Defendants have long known that the Vehicles contained the Thief

26 Friendly Design yet did nothing to remedy the Thief Friendly Design.

27    3844. Pursuant to Wash. Rev. Code Ann. § 19.86.090, Plaintiffs and Subclass

28 Members seek an order enjoining Defendants' unfair or deceptive acts or practices

1  and awarding damages and any other just and proper relief available under the
2  Washington CPA.

3  **D.      Fraud by Omission and Concealment**

4      3845. Plaintiffs reallege and incorporate by reference all preceding allegations
5  as though fully set forth herein.

6      3846. Defendants' misleading representations include affirmative statements
7  that the Vehicles conform with all applicable safety and anti-theft standards. In reality,
8  however, the Vehicles do not comply with such standards.

9      3847. Defendants were aware of the Thief Friendly Design when they
10 marketed and sold the Vehicles to Plaintiffs' Insureds.

11     3848. Having been aware of the Thief Friendly Design within the Vehicles and
12 having known that Plaintiffs' Insureds could not have reasonably been expected to
13 know of the Thief Friendly Design, Defendants had a duty to disclose the Thief
14 Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.
15 Defendants further had a duty to disclose the Thief Friendly Design because:

16          a.    Defendants had exclusive access to and far superior knowledge
17                about facts regarding the Thief Friendly Design and Defendants
18                knew these facts were not known to or reasonably discoverable by
19                Plaintiffs' Insureds;

20          b.    Given the Thief Friendly Design's hidden and technical nature,
21                Plaintiffs' Insureds lack the sophisticated expertise in vehicle
22                components that would be necessary to discover the Thief
23                Friendly Design on their own;

24          c.    Defendants knew that the Thief Friendly Design gave rise to safety
25                concerns for the consumers who use the Vehicles, and the Thief
26                Friendly Design would have been a material fact to the Plaintiffs'
27                Insureds' decisions to buy or lease the Vehicles; and

28

**FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS**

       d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3849. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3850. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3851. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3852. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3853. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3854. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3855. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3856. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3857. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3858. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.   Negligence**

3859. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3860. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

3861. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

3862. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**F.    Negligent Misrepresentation**

3863. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3864. Defendants owed a duty to the general public and to Plaintiffs' Insureds, as part of the general group of persons for whose benefit and guidance the representations were made, to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3865. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3866. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3867. Defendants' misleading representations include affirmative statements

that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3868. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3869. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

3870. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3871. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## **WEST VIRGINIA STATE LAW CLAIMS FOR RELIEF**

### **(Alleged by  Plaintiffs, and Members of West Virginia Subclasses, against All Defendants)**

3872. Class Plaintiffs, the Hyundai West Virginia Subclass and Kia West Virginia Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3873. The West Virginia Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the Commonwealth of West Virginia due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire and Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; Erie Insurance Property & Casualty Company; Horace Man Insurance Company; Nationwide Insurance Company of American; Nationwide Mutual Insurance Company; Nationwide Property & Casualty Insurance Company; Progressive Classic Insurance Company; Progressive Direct Insurance Company; Progressive Max Insurance Company; and Milbank Insurance Company who paid policy proceeds to their respective Insureds in West Virginia pursuant to policies of insurance.

**A.     Breach of Implied Warranty of Merchantability under W. Va. Code Ann. §§ 46-2-314 and 46-2A-212**

3874. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3875. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to W. Va. Code Ann. §§ 46-2-314 and 46-2A-212.

3876. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under W. Va. Code Ann. §§ 46-2-104(1) and 46-2A-103(3), and "sellers" of motor vehicles under § 46-2-103(1)(d).

3877. Defendants are and were at all relevant times "lessors" of motor vehicles under W. Va. Code Ann. § 46-2A-103(1)(p).

3878. Plaintiffs' Insureds who purchased Vehicles in West Virginia are "buyers" within the meaning of W. Va. Code Ann. § 46-2-103(1)(a).

3879. Plaintiffs' Insureds who leased Vehicles in West Virginia are "lessees" within the meaning of W. Va. Code Ann. § 46-2A-103(1)(n).

3880. The Vehicles are and were at all relevant times "goods" within the meaning of W. Va. Code Ann. §§ 46-2-105(1) and 46-2A-103(1)(h).

3881. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3882. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3883. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable

and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3884. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3885. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3886. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

they presented their Vehicles to them for repair.

3887. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.      Breach of Express Warranty under W. Va. Code Ann. § 46-2-313**

3888. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3889. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3890. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3891. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3892. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express

warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3893. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.     Violation of the West Virginia Consumer Credit and Protection Act (W. Va. Code Ann. §§ 46A-1-101, et seq.)**

3894. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3895. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "consumers" within the meaning of W. Va. Code Ann. § 46A-6-102(2).

3896. The Vehicles are "goods" within the meaning of W. Va. Code Ann. § 46A-1-102(21).

3897. Defendants were and are engaged in "trade or commerce" within the meaning of W. Va. Code Ann. § 46A-6-102(6).

3898. The West Virginia Consumer Credit and Protection Act ("West Virginia CPA") declares unlawful "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. . . ." W. Va. Code Ann. § 46A-6-104.

3899. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the West Virginia CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3900. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the West Virginia CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members,

and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3901. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

3902. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by W. Va. Code Ann. § 46A-6-102(7): a. Causing a likelihood of confusion or of misunderstanding as to the approval or certification of the Vehicles; b. Representing that the Vehicles have approval, characteristics, uses, or benefits that they do not have, including that they complied with all applicable safety and anti-theft standards; c. Representing that the Vehicles are of a particular standard, quality, and grade, including that they complied with all applicable safety and anti-theft standards, when they are not; d. Advertising the Vehicles with the intent not to sell or lease them as advertised; e. Engaging in other conduct which created a likelihood of confusion or of misunderstanding; and f. Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression, or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale/lease of the Vehicles, whether or not any person has in fact been misled, deceived or damaged thereby. W. Va. Code Ann. § 46A-6-102(7)(B), (E), (G), (I), (L), and (M).

3903. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3904. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in

consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3905. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3906. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

3907. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

3908. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

3909. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

3910. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design in compliance with W. Va. Code Ann. § 46A-5-108(a).  Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

3911. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As alleged above, Defendants have long known that the Vehicles contained the Thief Friendly Design yet did nothing to remedy the Thief Friendly Design.

3912. Pursuant to  W. Va. Code Ann. § 46A-6-106(a), Plaintiffs and Subclass Members seek an order enjoining Defendants' unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the West Virginia CPA.

**D.      Fraud by Omission and Concealment**

3913. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3914. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3915. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3916. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief

Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

    a.    Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

    b.    Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

    c.    Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

    d.    Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3917. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3918. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and

because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3919. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3920. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3921. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3922. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3923. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3924. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3925. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3926. Defendants' acts were done maliciously, oppressively, deliberately, with

1  intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights

2  and well-being; and to enrich themselves.

3  **E.     Negligence**

4       3927. Plaintiffs reallege and incorporate by reference all preceding allegations

5  as though fully set forth herein.

6       3928. The National Highway Traffic Safety Administration has a self-

7  certification system of compliance where vehicle manufacturers certify that their

8  products meet applicable standards. Defendants had a duty to the general public to

9  ensure that all vehicles offered for sale were compliant to all applicable federal

10 standards. This duty precedes the offering of any vehicle for sale in the United States

11 and territories subject to the jurisdiction of federal regulations and is independent of

12 any duties arising through individual contracts for sale or lease that Defendants

13 entered into with Plaintiffs' Insureds.

14      3929. Defendants breached that duty when they negligently manufactured and

15 sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required

16 by federal standards, this faulty design known as the Thief Friendly Design.

17      3930. Defendants' negligent manufacture, sale and lease of non-compliant

18 vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for

19 theft at a much higher rate than had the Vehicles had not been negligently

20 manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and

21 leased from Defendants were stolen, or damaged in the course of being stolen.

22      3931. As a direct and proximate result of Defendants' negligence in

23 manufacturing and selling non-complaint Vehicles with the Thief Friendly Design,

24 Plaintiffs were obligated by their policies of insurances with their Insureds to make

25 payments for lost or damaged Vehicles, and incurred damages in an ascertainable

26 amount subject to proof at trial.

27 **F.     Negligent Misrepresentation**

28      3932. Plaintiffs reallege and incorporate by reference all preceding allegations

as though fully set forth herein.

3933. Defendants owed a duty to the general public and to Plaintiffs' Insureds, as part of the general group of persons for whose benefit and guidance the representations were made, to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

3934. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

3935. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

3936. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3937. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3938. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the

business transaction, sale or lease of Vehicles.

3939. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

3940. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## WISCONSIN STATE LAW CLAIMS FOR RELIEF

### (Alleged by Plaintiffs, and Members of Wisconsin Subclasses, against All Defendants)

3941. Class Plaintiffs, the Hyundai Wisconsin Subclass and Kia Wisconsin Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

3942. The Wisconsin Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses (including Kia and Hyundai Vehicles) in the State of Wisconsin due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Acuity, A Mutual Insurance Company; Allstate Fire & Casualty Insurance Company; Allstate Indemnity Company; Allstate Insurance Company; American Family Insurance Company; American Family Mutual Insurance Company; The General Automobile

Insurance Company, Inc.; Erie Insurance Company; Erie Insurance Exchange; Horace Mann Insurance Company; Teachers Insurance Company; Root Insurance Company; Root Property & Casualty Insurance Company; State Auto Property & Casualty Insurance Company; Garrison Property & Casualty Insurance Company; and United Services Automobile Association;   all of whom paid policy proceeds to their respective Insureds in Wisconsin pursuant to policies of insurance.

**A.** **Breach of Implied Warranty of Merchantability under Wis. Stat. Ann. §§ 402.314 and 411.212**

3943. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3944. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Wis. Stat. Ann. §§ 402.314 and 411.212.

3945. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wis. Stat. Ann. §§ 402.104(3) and 411.103(3)(k), and "sellers" of motor vehicles under § 402.103(1)(d).

3946. Defendants are and were at all relevant times "lessors" of motor vehicles under Wis. Stat. Ann. § 411.103(1)(p).

3947. Plaintiffs' Insureds who purchased Vehicles in Wisconsin are "buyers" within the meaning of Wis. Stat. Ann. § 402.103(1)(a).

3948. Plaintiffs' Insureds who leased Vehicles in Wisconsin are "lessees" within the meaning of Wis. Stat. Ann. § 411.103(1)(n).

3949. The Vehicles are and were at all relevant times "goods" within the meaning of Wis. Stat. Ann. §§ 402.105(1)(c) and 411.103(1)(h).

3950. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among

other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

3951. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

3952. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

3953. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of

warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

3954. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

3955. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

3956. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

**B.    Breach of Express Warranty under Wis. Stat. Ann. § 402.313**

3957. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3958. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

3959. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

3960. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

3961. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

3962. Plaintiffs have incurred and will continue to incur damages and costs and expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

C.     **Violation of Wisconsin Deceptive Trade Practices Act (Wis. Stat. Ann. § 100.18)**

3963. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3964. Plaintiffs and Subclass Members bring this count individually and/or on behalf of the other members of the Subclass, against Defendants.

3965. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning intended by Wis. Stat. Ann. § 100.18(1).

3966. The Vehicles are "merchandise" within the meaning intended by Wis. Stat. Ann. § 100.18(1).

3967. Defendants are "persons" and had and have an intent to sell and distribute merchandise within the meaning intended by Wis. Stat. Ann. § 100.18(1).

3968. The Wisconsin Deceptive Trade Practices Act ("Wisconsin CPA") states that "[n]o person . . . with intent to sell, distribute. . . merchandise, service, or anything offered by such person . . . directly or indirectly, to the public for sale. . . or with intent to induce the public in any manner to enter into a contract or obligation relating to the purchase, sale, hire, use or lease of any . . . merchandise . . . shall make . . . an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such . . . merchandise . . . which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading." Wis. Stat. Ann. § 100.18(1).

3969. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Wisconsin CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

3970. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Wisconsin CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly Design in the Vehicles.

3971. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

which was intended to induce consumers to purchase the Vehicles.

3972. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants' statements and representations contained assertions, representations and statements of fact which were untrue, deceptive, and misleading in violation of Wis. Stat. Ann. § 100.18(1).

3973. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

3974. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

3975. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments, omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

3976. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception

1   on their own.

2       3977. Had they known the truth about the Thief Friendly Design, the Insureds
3   would not have exposed themselves to the unreasonable risk of theft that was caused
4   by the concealment of the Thief Friendly Design.

5       3978. Plaintiffs, and Subclass Members suffered ascertainable losses and
6   actual damages as a direct and proximate result of Defendants' concealment,
7   misrepresentations, and/or failure to disclose material information.

8       3979. Defendants' violations present a continuing risk to Plaintiffs, Subclass
9   Members, and their Insureds as well as to the general public, because the Vehicles
10  remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and
11  practices complained of herein affect the public interest.

12      3980. On March 9, 2023, Class Members sent Defendants notice of the Thief
13  Friendly Design, including the issues raised within this count. Additionally, all
14  Defendants were provided notice of the issues raised in this count and this Complaint
15  by governmental investigations, numerous complaints filed against them, internet
16  videos, news reports, and the many individual notice letters sent by Plaintiffs within
17  a reasonable amount of time after the allegations of Class Vehicle defects became
18  public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek
19  all damages and relief to which Class Members are entitled.

20      3981. Alternatively, providing notice to Defendants and an opportunity to cure
21  the breach prior to filing suit would have been futile as Plaintiffs suffered damages
22  due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As
23  alleged above, Defendants have long known that the Vehicles contained the Thief
24  Friendly Design yet did nothing to remedy the Thief Friendly Design.

25      3982. Pursuant to Wis. Stat. Ann. § 100.18(11)(b)(2), Plaintiffs and Subclass
26  Members seek an order enjoining Defendants' unfair or deceptive acts or practices
27  and awarding damages and any other just and proper relief available under the
28  Wisconsin CPA.

**D.     Fraud by Omission and Concealment**

3983. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3984. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

3985. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

3986. Having been aware of the Thief Friendly Design within the Vehicles and having known that Plaintiffs' Insureds could not have reasonably been expected to know of the Thief Friendly Design, Defendants had a duty to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles. Defendants further had a duty to disclose the Thief Friendly Design because:

     a.     Defendants had exclusive access to and far superior knowledge about facts regarding the Thief Friendly Design and Defendants knew these facts were not known to or reasonably discoverable by Plaintiffs' Insureds;

     b.     Given the Thief Friendly Design's hidden and technical nature, Plaintiffs' Insureds lack the sophisticated expertise in vehicle components that would be necessary to discover the Thief Friendly Design on their own;

     c.     Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

     d.     Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and

materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

3987. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

3988. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

3989. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

3990. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

3991. Defendants actively concealed and suppressed these material facts, in whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

3992. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

3993. Through their omissions and concealment with respect to the Thief

Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

3994. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

3995. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

3996. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.    Negligence**

3997. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

3998. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

3999. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

4000. Defendants' negligent manufacture, sale and lease of non-compliant

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

4001. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**F.    Negligent Misrepresentation**

4002. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4003. Defendants owed a duty to the general public and to Plaintiffs' Insureds, as part of the general group of persons for whose benefit and guidance the representations were made, to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

4004. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

4005. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

4006. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality,

however, the Vehicles do not comply with such standards.

4007. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

4008. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

4009. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

4010. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

## **WYOMING STATE LAW CLAIMS FOR RELIEF**

### **(Alleged by  Plaintiffs, and Members of Wyoming Subclasses, against All Defendants)**

4011. Class Plaintiffs, the Hyundai Wyoming Subclass and Kia Wyoming Subclass, and Independent Subrogation Plaintiffs allege the following causes of action against All Defendants.

4012. The Wyoming Subclasses are comprised of nationwide Hyundai and Kia Class Members with claims stemming from vehicle losses in the State of Wyoming due to Defendants' Thief Friendly Design, including, but not limited to, the following named Class Plaintiffs: Allstate Fire & Casualty Insurance Company; Progressive Northern Insurance Company; and Progressive Universal Insurance Company; all of whom paid policy proceeds to their respective Insureds in Wyoming pursuant to policies of insurance.

**A.      Breach of Implied Warranty of Merchantability under Wyo. Stat. Ann. §§ 34.1-2-314 and 34.1-2.A-212**

4013. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4014. A warranty that the Vehicles (identified in Exhibit "A") were in merchantable condition and fit for the ordinary purpose for which such goods are used is implied by law pursuant to Wyo. Stat. Ann. §§ 34.1-2-314 and 34.1-2.A-212.

4015. Defendants are and were at all relevant times "merchants" with respect to motor vehicles under Wyo. Stat. Ann. §§ 34.1-2-104(a) and 34.1-2.A-103(c), and "sellers" of motor vehicles under § 34.1-2-103(a)(iv).

4016. Defendants are and were at all relevant times "lessors" of motor vehicles under Wyo. Stat. Ann. § 34.1-2.A-103(a)(xvi).

4017. Plaintiffs' Insureds who purchased Vehicles in Wyoming are "buyers" within the meaning of Wyo. Stat. Ann. § 34.1-2-103(a)(i).

4018. Plaintiffs' Insureds who leased Vehicles in Wyoming are "lessees"

within the meaning of Wyo. Stat. Ann. § 34.1-2.A-103(a)(xiv).

4019. The Vehicles are and were at all relevant times "goods" within the meaning of Wyo. Stat. Ann. §§ 34.1-2-105(a) and 34.1-2.A-103(a)(viii).

4020. Defendants knew or had reason to know of the specific use for which the Vehicles were purchased or leased. Defendants provided Plaintiffs with an implied warranty that the Vehicles and any parts thereof were merchantable and fit for the ordinary purposes for which they were sold. This implied warranty included, among other things, a warranty that the Vehicles were manufactured, supplied, distributed, and sold by Defendants, were safe and reliable for providing transportation, would not be vulnerable to an abnormally high risk of theft, and complied with applicable federal and state laws and regulations, including FMVSS 114.

4021. However, the Vehicles did not comply with the implied warranty of merchantability because they were defective and not in merchantable condition, would not pass without objection in the trade, and were not fit for their ordinary purpose of providing reasonably reliable, safe, and secure transportation at the time of sale or thereafter because, inter alia, the Vehicles contained the Thief Friendly Design, lacking any anti-theft features or design elements to provide an adequate theft deterrent, or sufficient to satisfy FMVSS 114, resulting in a substantial safety hazard because the Thief Friendly Design renders Vehicles vulnerable to theft, making them prime targets to be used as instrumentalities through which thieves engage in reckless driving or other criminal activity.

4022. Any attempt by Defendants to disclaim or limit the implied warranty of merchantability for their respective Vehicles vis-à-vis consumers is unconscionable and unenforceable. Specifically, Defendants' warranty limitations are unenforceable because Defendants knowingly sold or leased defective Vehicles without informing consumers about the Thief Friendly Design. The time limits contained in Defendants' warranty periods were also unconscionable and inadequate to protect Plaintiffs and Plaintiffs' Insureds. Among other things, Plaintiffs' Insureds had no meaningful

choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Plaintiffs' Insureds. Additionally, Defendants knew of the Thief Friendly Design at the time of sale.

4023. Furthermore, the circumstances described herein caused Defendants' exclusive or limited remedy to fail its essential purpose such that the Plaintiffs and Plaintiffs' Insureds may seek alternative remedies. Indeed, these breaches of warranties have denied Plaintiffs' Insureds the benefit of their respective bargains, which presupposes they were (or are) able to use the Vehicles in a meaningful manner without the ever–present risk of them being stolen.

4024. Plaintiffs have provided Defendants with reasonable notice and opportunity to cure the breaches of their implied warranties. Additionally, all Defendants were provided notice and opportunity to cure the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Vehicle defects became public.

4025. Alternatively, Plaintiffs were excused from providing Defendants with notice and an opportunity to cure the breach, because it would have been futile. As alleged throughout Plaintiffs' Complaint, Defendants have long known that the Vehicles contained the Thief Friendly Design; yet have failed to cure, remedy, or repair the breach. As such, neither Plaintiffs nor their Insureds had any reason to believe that Defendants would have adequately repaired the Thief Friendly Design if they presented their Vehicles to them for repair.

4026. As a direct and proximate result of Defendants' breach of the implied warranties, the Insureds' vehicles were and are defective, and the Thief Friendly Design has not been remedied. Therefore, Plaintiffs have been damaged in an amount to be proven at trial.

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

**B.     Breach of Express Warranty under Wyo. Stat. Ann. § 34.1-2-313**

4027. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4028. During the relevant time period described above, Plaintiffs' Insureds purchased or leased Vehicles.

4029. These Vehicles were manufactured by Defendants during the relevant time period described above. Through the attachment of VIN plates, Defendants made an express warranty that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture, which directly related to condition of the Vehicles and became a basis of the bargain. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. On information and belief, similar written warranties were made prior to, or at the point of sale for all Vehicles.

4030. After Plaintiffs' Insureds purchased or leased the Vehicles, they used them in accordance with the normal operation of the Vehicles and did not mishandle or otherwise damage the Vehicles in any way that is material to the allegations set forth herein.

4031. The Vehicles did not perform as promised in accordance with Defendants' express warranty, as it has become common knowledge that they are capable of being stolen in a matter of seconds. Thus, the Vehicles did not meet all applicable motor vehicle safety, and theft prevention standards in effect on the date of manufacture. As a direct and proximate result of the Thief Friendly Design, the Vehicles were easily stolen, and thus failed to perform to the terms of the express warranty described in the Vehicles' VIN plates because the Vehicles did not, in fact, conform to the applicable anti-theft standards.

4032. Plaintiffs have incurred and will continue to incur damages and costs and

expenses, including attorney's fees, as a result of the Thief Friendly Design and related breach of Defendants' breach of express warranty that the Vehicles conform to theft prevention standards.

**C.     Violation of Wyoming Consumer Protection Act (Wyo. Stat. Ann. §§ 40-12-101, et seq.)**

4033. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4034. Plaintiffs and Subclass Members bring this count individually and/or on behalf of the other members of the Subclass, against Defendants.

4035. Plaintiffs and Subclass Members stand in the shoes of their Insureds, who are "persons" within the meaning of Wyo. Stat. Ann. § 40-12-102(a)(i).

4036. The Vehicles are "merchandise" within the meaning of Wyo. Stat. Ann. § 40-12-102(a)(vi).

4037. The sale and/or lease of the Vehicles from Defendants to Plaintiffs are "consumer transactions" within the meaning of Wyo. Stat. Ann. § 40-12-102(a)(ii).

4038. Under the Wyoming Consumer Protection Act ("Wyoming CPA"), "[a] person engages in a deceptive trade practice unlawful under this act when, in the course of his business and in connection with a consumer transaction," he knowingly commits certain acts or practices. Wyo. Stat. Ann. § 40-12-105(a).

4039. In the course of their business, Defendants through their agents, employees, and/or subsidiaries, violated the Wyoming CPA by knowingly and intentionally misrepresenting, omitting, concealing, and/or failing to disclose material facts regarding the quality, reliability, and safety of the Vehicles and the Thief Friendly Design, as detailed above.

4040. Defendants had an ongoing duty to the Plaintiffs and their Insureds to refrain from unfair or deceptive practices under the Wyoming CPA in the course of their business. Specifically, Defendants owed the Plaintiffs, Subclass Members, and Class Members a duty to disclose all the material facts concerning the Thief Friendly

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS

Design in the Vehicles.

4041. As detailed above, the information concerning the Thief Friendly Design was known to Defendants at the time of advertising and selling the Vehicles, all of which was intended to induce consumers to purchase the Vehicles.

4042. By misrepresenting the Vehicles as safe, reliable and compliant with applicable standards, and by failing to disclose and actively concealing the real dangers and risk posed by the Thief Friendly Design, Defendants engaged in one or more of the following unfair or deceptive business practices prohibited by Wyo. Stat. Ann. § 40-12-105(a): a. Representing that the Vehicles are of a particular standard or grade, including that they complied with all applicable safety and anti-theft standards, when they are not; b. Advertising the Vehicles with the intent not to sell or lease them as advertised; and c. Engaging in unfair or deceptive acts or practices. Wyo. Stat. Ann. § 40-12-105(a)(iii), (x), and (xv).

4043. Defendants intended for Plaintiffs and their Insureds to rely on them to provide adequately designed Vehicles, and to honestly and accurately reveal the safety hazards described above.

4044. Defendants' unfair or deceptive acts or practices were designed to mislead and had a tendency or capacity to mislead and create a false impression in consumers that the Vehicles had adequate anti-theft protection, and that the Vehicles were not affected by the Thief Friendly Design. Indeed, those misrepresentations, concealments, omissions, and suppressions of material facts did in fact deceive reasonable consumers, including Plaintiffs' Insureds, about the true safety and reliability of Vehicles, and the quality of the Vehicles.

4045. Defendants' misrepresentations of material fact regarding compliance with relevant standards, and Defendants' omissions, and concealment of material facts regarding the true characteristics of the Vehicles were material to the decisions made by Plaintiffs' Insureds who purchased or leased Vehicles, as Defendants intended. The Insureds were exposed to those misrepresentations, concealments,

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1

omissions, and suppressions of material facts, and relied on Defendants' misrepresentations that the Vehicles were compliant with applicable anti-theft standards, safe and reliable in deciding to purchase or lease Vehicles.

4046. The Insureds' reliance was reasonable, as they had no way of discerning Defendants' representations were false and misleading, or otherwise learning that the Vehicles contained the Thief Friendly Design, as alleged above. Plaintiffs, Subclass Members, and their Insureds did not, and could not, unravel Defendants' deception on their own.

4047. Had they known the truth about the Thief Friendly Design, the Insureds would not have exposed themselves to the unreasonable risk of theft that was caused by the concealment of the Thief Friendly Design.

4048. Plaintiffs, and Subclass Members suffered ascertainable losses and actual damages as a direct and proximate result of Defendants' concealment, misrepresentations, and/or failure to disclose material information.

4049. Defendants' violations present a continuing risk to Plaintiffs, Subclass Members, and their Insureds as well as to the general public, because the Vehicles remain unsafe due to the Thief Friendly Design. Defendants' unlawful acts and practices complained of herein affect the public interest.

4050. On March 9, 2023, Class Members sent Defendants notice of the Thief Friendly Design in compliance with Wyo. Stat. Ann. § 40-12-109. Additionally, all Defendants were provided notice of the issues raised in this count and this Complaint by governmental investigations, numerous complaints filed against them, internet videos, news reports, and the many individual notice letters sent by Plaintiffs within a reasonable amount of time after the allegations of Class Vehicle defects became public. Because Defendants failed to remedy their unlawful conduct, Plaintiffs seek all damages and relief to which Class Members are entitled.

4051. Alternatively, providing notice to Defendants and an opportunity to cure the breach prior to filing suit would have been futile as Plaintiffs suffered damages

1    due to theft of their Insureds' vehicles that could not be cured by repair, or recall. As

2    alleged above, Defendants have long known that the Vehicles contained the Thief

3    Friendly Design yet did nothing to remedy the Thief Friendly Design.

4        4052. Pursuant to Wyo. Stat. Ann. § 40-12-108, Plaintiffs and Subclass

5    Members seek an order enjoining Defendants' unfair or deceptive acts or practices

6    and awarding damages and any other just and proper relief available under the

7    Wyoming CPA.

8    **D.     Fraud by Omission and Concealment**

9        4053. Plaintiffs reallege and incorporate by reference all preceding allegations

10   as though fully set forth herein.

11       4054. Defendants' misleading representations include affirmative statements

12   that the Vehicles conform with all applicable safety and anti-theft standards. In reality,

13   however, the Vehicles do not comply with such standards.

14       4055. Defendants were aware of the Thief Friendly Design when they

15   marketed and sold the Vehicles to Plaintiffs' Insureds.

16       4056. Having been aware of the Thief Friendly Design within the Vehicles and

17   having known that Plaintiffs' Insureds could not have reasonably been expected to

18   know of the Thief Friendly Design, Defendants had a duty to disclose the Thief

19   Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

20   Defendants further had a duty to disclose the Thief Friendly Design because:

21           a.     Defendants had exclusive access to and far superior knowledge

22             about facts regarding the Thief Friendly Design and Defendants

23             knew these facts were not known to or reasonably discoverable by

24             Plaintiffs' Insureds;

25           b.     Given the Thief Friendly Design's hidden and technical nature,

26             Plaintiffs' Insureds lack the sophisticated expertise in vehicle

27             components that would be necessary to discover the Thief

28             Friendly Design on their own;

c.   Defendants knew that the Thief Friendly Design gave rise to safety concerns for the consumers who use the Vehicles, and the Thief Friendly Design would have been a material fact to the Plaintiffs' Insureds' decisions to buy or lease the Vehicles; and

d.   Defendants made incomplete representations about the safety and reliability of the Vehicles while purposefully withholding material facts about a known safety defect. In uniform advertising and materials provided with each Vehicle, Defendants intentionally concealed, suppressed, and failed to disclose to the consumers that the Vehicles contained the Thief Friendly Design. Because they volunteered to provide information about the Vehicles that they marketed and offered for sale and lease to consumers, Defendants had the duty to disclose the whole truth.

4057. In breach of their duties, Defendants failed to disclose the Thief Friendly Design to Plaintiffs' Insureds in connection with the sale of the Vehicles.

4058. For the reasons set forth above, the Thief Friendly Design within the Vehicles is material to the sale of the Vehicles because a reasonable person would find it important in purchasing, leasing, or retaining a new or used motor vehicle and because it directly impacts the value of the Vehicles purchased or leased by the Plaintiffs' Insureds.

4059. Defendants intended for the Plaintiffs' Insureds to rely on their omissions and concealment—which they did by purchasing and leasing the Vehicles at the prices they paid believing that their vehicles would not have a Thief Friendly Design that would affect the quality, reliability, and safety of the Vehicles.

4060. Plaintiffs' Insureds' reliance was reasonable, as they had no way of learning the facts that Defendants had concealed or failed to disclose. Plaintiffs' Insureds did not, and could not, unravel Defendants' deception on their own.

4061. Defendants actively concealed and suppressed these material facts, in

whole or in part, to maintain a market for the Vehicles, to protect profits, and to avoid costly recalls that would expose them to liability for those expenses and harm the commercial reputations of Defendants and their products. They did so at the expense of Plaintiffs and Plaintiffs' Insureds.

4062. If Defendants had fully and adequately disclosed the Thief Friendly Design to consumers, Plaintiffs' Insureds would have seen such a disclosure.

4063. Through their omissions and concealment with respect to the Thief Friendly Design within the Vehicles, Defendants intended to induce, and did induce, Plaintiffs' Insureds to either purchase a Vehicle that they otherwise would not have purchased, or pay more for a Vehicle than they otherwise would have paid.

4064. Had Plaintiffs' Insureds known of the Thief Friendly Design within the Vehicles, it is reasonably likely they would not have purchased the Vehicles or would have paid less for them.

4065. As a direct and proximate result of Defendants' omissions, Plaintiffs' Insureds either overpaid for the Vehicles or would not have purchased the Vehicles at all if the Thief Friendly Design had been disclosed to them. Accordingly, Defendants are liable to Plaintiffs and Plaintiffs' Insureds for their damages.

4066. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud; in reckless disregard of the Plaintiffs' and Plaintiffs' Insureds' rights and well-being; and to enrich themselves.

**E.     Negligence**

4067. Plaintiffs reallege and incorporate by reference all preceding allegations as though fully set forth herein.

4068. The National Highway Traffic Safety Administration has a self-certification system of compliance where vehicle manufacturers certify that their products meet applicable standards. Defendants had a duty to the general public to ensure that all vehicles offered for sale were compliant to all applicable federal standards. This duty precedes the offering of any vehicle for sale in the United States

and territories subject to the jurisdiction of federal regulations and is independent of any duties arising through individual contracts for sale or lease that Defendants entered into with Plaintiffs' Insureds.

4069. Defendants breached that duty when they negligently manufactured and sold vehicles to Plaintiffs' Insureds that did not have the anti-theft devices required by federal standards, this faulty design known as the Thief Friendly Design.

4070. Defendants' negligent manufacture, sale and lease of non-compliant vehicles containing the Thief Friendly Design allowed the Vehicles to be targeted for theft at a much higher rate than had the Vehicles had not been negligently manufactured, and as a result, the Vehicles that Plaintiffs' Insureds purchased and leased from Defendants were stolen, or damaged in the course of being stolen.

4071. As a direct and proximate result of Defendants' negligence in manufacturing and selling non-complaint Vehicles with the Thief Friendly Design, Plaintiffs were obligated by their policies of insurances with their Insureds to make payments for lost or damaged Vehicles, and incurred damages in an ascertainable amount subject to proof at trial.

**F.    Negligent Misrepresentation**

4072. Defendants owed a duty to the general public and to Plaintiffs' Insureds, as part of the general group of persons for whose benefit and guidance the representations were made, to communicate truthful information to the Plaintiffs' Insureds regarding the security of the Vehicles offered for sale and that all Vehicles were compliant with all applicable federal standards.

4073. Defendants made false representations, in the course of their business, to the Plaintiffs' Insureds and are liable for supplying false information and misrepresentations to the Insureds by representing that the vehicles have characteristics, uses, benefits, and qualities which they do not have; representing that the Vehicles are of a particular standard of quality when they are not; and omitting material facts in describing the Vehicles.

4074. Defendants made these representations in the course of their business and in furtherance of a business transaction with the intent to induce the Insureds into purchasing or leasing Vehicles, which constitutes a pecuniary interest.

4075. Defendants' misleading representations include affirmative statements that the Vehicles conform with all applicable safety and anti-theft standards. In reality, however, the Vehicles do not comply with such standards.

4076. Defendants were aware of the Thief Friendly Design when they marketed and sold the Vehicles to Plaintiffs' Insureds.

4077. At the time that Defendants made the incorrect statements or omissions of fact, they carelessly and negligently had failed to exercise reasonable care or competence and breached their duty of care in confirming that the information provided to Plaintiffs' Insureds to guide their business transaction was actually true. Further, Defendants had access to the correct information at the time they made the statements and omissions and negligently failed to confirm the truth of the statements they made about the Vehicles anti-theft compliance before negligently providing misleading and false information to the Plaintiffs' Insureds in the course of the business transaction, sale or lease of Vehicles.

4078. Defendants had a duty to disclose the Thief Friendly Design because they consistently marketed that the Vehicles conform to all applicable U.S.A. federal motor vehicle safety, bumper, and theft prevention standards in effect on the date of manufacture. An example of a VIN plate that was affixed to a 2015 Kia Optima Vehicle is provided above. Once Defendants made representations to the public about safety and theft prevention, Defendants were under a duty to disclose these omitted facts regarding the Thief Friendly Design. Once Defendants spoke as to these issues of safety and theft prevention, Defendants had a duty to speak the whole truth and not conceal any facts which materially qualify the representations made.

4079. Plaintiffs' Insureds reasonably relied on Defendants' misrepresentations and, as a direct and proximate result thereof, and Plaintiffs' Insureds changed their

position by purchasing or leasing the Vehicles, causing them to suffer damage, including property damage and the loss of use of the Vehicles, and other damages for which the Defendants are liable.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment against Defendants, and each of them, as to each cause of action as follows:

    a.   Payment to the Plaintiffs for all damages resulting from the replacement or repair of the defective Vehicles, in an amount to be proven at trial;

    b.   Payment to the Plaintiffs for all damages allowed by law resulting from theft or attempted theft of Defendants' defective Vehicle;

    c.   Restitution as authorized by law;

    d.   An award of reasonable attorneys' fees and costs, as provided and permitted by law;

    e.   Interest as provided by law, including but not limited to pre-judgment and post-judgment interest; and

    f.   Such other and further relief as this Court may deem just, equitable, or proper.

# JURY TRIAL DEMANDED

Plaintiffs, by their counsel, request a trial by jury on those causes of actions set forth herein.

Respectfully submitted,

COZEN O'CONNOR

By: *s/Elliott R. Feldman*

GROTEFELD HOFFMANN

By: *s/William Hoffmann*

LAW OFFICES OF ROBERT A. STUTMAN, P.C.

By: *s/Timothy E. Cary*

BERGER KAHN, A LAW CORPORATION

By: *s/Craig S. Simon*

*Attorneys for Subrogation Plaintiffs*

FIRST AMENDED MASTER COMPLAINT FOR ALL SUBROGATION PLAINTIFFS
LEGAL\67600038\1