QUINN EMANUEL URQUHART & SULLIVAN LLP
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendants Hyundai Motor*
*America and Kia America, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br><br>This Document Relates to:<br><br>*City of Chicago v. Kia America, Inc., Kia Corporation, Hyundai Motor America, and Hyundai Motor Company* | Case No. 8:22-ML-3052-JVS(KESx)<br><br>The Honorable James V. Selna<br><br>**DEFENDANTS' NOTICE OF AND MOTION TO DISMISS FIRST AMENDED COMPLAINT OF PLAINTIFF CITY OF CHICAGO; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:  March 18, 2024<br>Hearing Time: 1:30 pm |

**NOTICE OF MOTION AND MOTION TO DISMISS**

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on March 18, 2024, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable James V. Selna (Courtroom 10C) of the above-entitled Court, located at 411 West 4th Street, Santa Ana, CA 92710, Defendants Kia America, Inc. ("KA"), and Hyundai Motor America ("HMA") (collectively, "Defendants")[1] will and hereby do move the above-entitled Court for an order dismissing Plaintiff City of Chicago's ("Plaintiff['s]" or "City['s]") First Amended Complaint ("FAC")[2] pursuant to Federal Rules of Civil Procedure 12(b)(6) on the grounds that the FAC fails to state any claim upon which relief may be granted.

Defendants' Motion is based on this Notice, the Memorandum of Points and Authorities filed herewith, Defendants' Request for Judicial Notice, any additional briefing on the motion (including Defendants' reply brief), the files and records of this case and the related cases centralized in this Multidistrict Litigation, and such argument as is presented to the Court at the hearing on this Motion.

This Motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place on December 29, 2023, January 2, 2024, and January 4, 2024.

DATED: January 8, 2024              QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                    By _/s/ Steven G. Madison_____

---

[1] The Parties are in the process of negotiating a joint stipulation by which, *inter alia*, Plaintiff will dismiss its claims against Hyundai Motor Company ("HMC") and Kia Corporation ("KC"). Neither HMC nor KC have been served with the First Amended Complaint in this matter.

[2] First Am. Compl., *City of Chicago v. Kia America, Inc.*, No. 2023 CH 07696 (Ill. Cir. Ct. Sept. 18, 2023).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendants Hyundai Motor
America and Kia America, Inc.*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND .................................................................................................. 2

    A.    Neither U.S. Federal Law Nor Regulation Requires Immobilizers ........ 2

    B.    Defendants' Vehicles Comply With Federal Law And NHTSA
        Has Found No Safety Defect Requiring A Recall ................................. 3

    C.    Social Media and Intervening Criminals Caused An
        Unprecedented Increase In Theft ............................................................ 3

LEGAL STANDARD ........................................................................................... 4

ARGUMENT ....................................................................................................... 5

I.    PLAINTIFF'S PUBLIC NUISANCE AND NEGLIGENCE CLAIMS
    FAIL ............................................................................................................ 5

    A.    There Is No Public Right To Be Free From The Threat That
        Members Of The Public May Commit Crimes .................................... 5

    B.    Illinois Law Limits Public Nuisance To Conduct Involving Land
        Use Or A Statutory Violation, And Requires Any Expansion Of
        Public Nuisance Law Be Done By The Legislature .............................. 7

    C.    Defendants Owed No Duty To Protect Against Third-Party
        Criminal Conduct ................................................................................ 8

II.    FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS SEEKING TO
    IMPOSE A DUTY TO INSTALL ENGINE IMMOBILIZERS ...................... 9

    A.    State Tort Claims That Frustrate Significant Objectives Of
        Federal Law Are Preempted ................................................................. 9

    B.    Dictating A Specific Anti-Theft Technology Would Frustrate
        The Objective Of FMVSS 114's Flexibility ...................................... 11

    C.    Plaintiff's Claims Are Preempted Because They Rely On
        Defendants Having A Duty To Install Immobilizers ............................ 12

III.    PLAINTIFF FAILS TO STATE A CLAIM FOR UNFAIR OR
    DECEPTIVE TRADE PRACTICES ............................................................ 13

    A.    Plaintiff Fails To Adequately Plead Deceptive Trade Practices .......... 13

B.     Plaintiff Fails To State A Claim For Unfair Trade Practices.................15

C.     The Statements Plaintiff Challenges Are True, Not Misleading, And Unrelated To Anti-Theft Technology ...........................................16

IV.     PLAINTIFF'S CLAIM UNDER MCC § 1-20-020 ALSO FAILS. ..............18

V.     PLAINTIFF'S REQUEST FOR DAMAGES IS FORECLOSED .................20

A.     The Municipal Cost Recovery Rule Precludes Tort Damages .............20

B.     The Economic Loss Rule Forecloses Plaintiff's Request For Tort Damages .......................................................................................21

CONCLUSION.........................................................................................22

# <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

## <u>Cases</u>

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 4

*Barbara's Sales, Inc. v. Intel Corp.*,
  879 N.E.2d 910 (Ill. 2007) ........................................................................... 18

*Beardsall v. CVS Pharm.*, Inc.,
  953 F.3d 969 (7th Cir. 2020) ....................................................................... 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) ....................................................................................... 4

*Bober v. Glaxo Wellcome PLC*,
  246 F.3d 934 (7th Cir. 2001) ....................................................................... 16

*Butitta v. First Mortgage Corp.*,
  578 N.E.2d 116 (Ill. App. Ct. 1991) ........................................................... 14

*In re Chicago Flood Litig.*,
  680 N.E.2d 265 (Ill. 1997) ........................................................................... 21

*City of Chicago v. Beretta U.S.A. Corp.*,
  821 N.E.2d 1099 (Ill. 2004) ............................................... 1, 5, 6, 7, 8, 9, 20, 21

*City of Chicago v. Purdue Pharma*,
  211 F.Supp. 3d 1058 (N.D. Ill. 2016) .......................................... 15, 16, 18, 19

*City of Gary v. Smith & Wesson*,
  801 N.E.2d 1222 (Ind. 2003) ......................................................................... 7

*Cosmetique, Inc. v. ValueClick, Inc.*,
  753 F. Supp. 2d 716 (N.D. Ill. 2010) ........................................................... 14

*Ford v. Psychopathic Recs., Inc.*,
  2013 WL 5254583 (S.D. Ill. Sept. 17, 2013) ............................................... 8

*Gade v. Nat. Solid Wastes Mgmt. Assn.*,
  505 U.S. 88 (1992) ......................................................................................... 9

*Geier v. American Honda Motor Co.*,
    529 U.S. 861 (2000). ........................................................................... 10

*Halperin v. Int'l Web Servs., LLC*,
    123 F. Supp. 3d 999 (N.D. Ill. 2015)................................................... 14

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ............................................................... 4

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ................................................................. 5

*People ex rel. Madigan v. United Constr. Of Am.*,
    981 N.E.2d 404 (Ill. App. Ct. 2012)................................................... 14

*Muir v. Playtex Products, LLC*,
    983 F. Supp. 2d 980 (N.D. Ill. 2013).................................................. 18

*O'Connor v. Ford Motor Co.*,
    567 F.Supp. 3d 915 (N.D. Ill. 2021).................................................. 18

*People v. Johnson & Johnson*,
    2021 Ill. Cir. LEXIS 387 (Ill. Cir. Ct. Jan. 8, 2021) .......................... 6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
    631 F.3d 436 (7th Cir. 2011) ............................................................. 13

*Priester v. Cromer*,
    736 S.E.2d 249 (S.C. 2012) ............................................................... 10

*Robinson v. Toyota Motor Credit Corp.*,
    775 N.E.2d 951 (Ill. 2002)............................................................ 14, 16

*Soliman v. Daimler AG*,
    2011 WL 4594313 (E.D.N.Y. 2011) .................................................. 10

*Truck Ins. Exch. v. D'orazio*,
    2021 WL 1206557 (Ill. App. Ct. Mar. 30, 2021) ............................... 18

*White v. DaimlerChrysler Corp.*,
    856 N.E.2d 542 (Ill. App. Ct. 2006).................................................. 14

*Williamson v. Mazda Motor Am.*,
    562 U.S. 323 (2011) ............................................................. 10, 12, 13

*Wobble Light v. McLain/Smigiel P'ship*,
   890 F.Supp. 721 (N.D. Ill. 1995) ........................................................ 15

*Young v. Bryco Arms*,
   821 N.E.2d 1078 (Ill. 2004) ............................................................ 6, 8

## **Rules/Statutes/Ordinances**

49 C.F.R. § 571.114 ............................................................................ 2

49 C.F.R. § 571.114, S1 & S2 ............................................................. 2

49 C.F.R. § 571.114 S5.1.1 (2021) ..................................................... 11

33 Fed. Reg. 6471, 6472 (Apr. 27, 1968) ...................................... 3, 11, 12

55 Fed. Reg. 21869, 21871 (May 30, 1990) .......................................... 12

56 Fed. Reg. 12464 (Mar. 26, 1991) ..................................................... 12

71 Fed. Reg. 17752, 17753 (Apr. 7, 2006) ....................................... 3, 12

815 ILCS 505/2 .......................................................................... 18, 19

815 ILCS 510/2 .......................................................................... 18, 19

15 U.S.C. § 45 ............................................................................ 18, 19

49 U.S.C. § 105 .................................................................................. 2

49 U.S.C. § 301 .................................................................................. 2

49 U.S.C. § 331 .................................................................................. 2

Federal Rule of Civil Procedure 9(b) ............................................ 4, 13, 14

Federal Rules of Civil Procedure 12(b)(6) .............................................. 2

L.R. 7-3 ............................................................................................ 2

MCC Section 1-20-020 .................................................................. 2, 18, 19

MCC Section 2-25-090 ........................................................ 1, 13, 14, 15, 19

MCC Section 4-276-470 ............................................................... 1, 13, 14

1

## **Other Authorities**

Restatement (Second) of Torts § 821B (1979)..........................................................5

**PRELIMINARY STATEMENT**

Plaintiff City of Chicago ("Plaintiff" or "City") has joined the governmental entities track and it too seeks to blame the unprecedented thefts committed by wrongdoers on the lack of engine immobilizers in certain vehicle models.  The City claims Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") ("Defendants") negligently designed, manufactured, and distributed these vehicles, that this product design created a "public nuisance" requiring abatement, and that Defendants knowingly and intentionally misrepresented and omitted facts relating to their vehicles.  As shown in detail herein, the City's claims fail as a matter of law under binding Illinois precedent, and the Court should dismiss the First Amended Complaint ("FAC").

*First,* the Illinois Supreme Court's decision in *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004) disposes of the City's claims for public nuisance and negligence on three independent grounds under Illinois law:  (a) there is no right to be free from the threat of illegal conduct by others and therefore no cognizable nuisance claim; (b) public nuisance liability in Illinois only attaches where the nuisance arises from a defendant's use of real property, or violation of a statute or ordinance declaring conduct a nuisance; and (c) Plaintiff cannot plead the essential element of duty because Defendants have no duty to protect against third-party criminal conduct in Illinois as a matter of law.

*Second*, Plaintiff's claims are preempted by federal law, because Plaintiff explicitly seeks to impose liability for failing to install immobilizers, a requirement that federal law deliberately rejects, such that the City's claims present an obstacle to the regulatory objectives of flexibility promulgated by the U.S. Department of Transportation's National Highway Traffic Safety Administration ("NHTSA").

*Third,* Plaintiff's claims under Municipal Code of Chicago ("MCC") sections 4-276-470 and 2-25-090 for unfair or deceptive trade practices fail, because Plaintiff fails to state a claim under either ordinance, and Defendants' statements are true,

unrelated to anti-theft features and immobilizers, and in any event are non-actionable puffery.

**Fourth**, Plaintiff's claim under MCC section 1-20-020 fails because it depends on an antecedent violation of law which Plaintiff fails to plead, and because Plaintiff fails to plausibly plead causation between the alleged unfair or deceptive vehicle advertising, and the costs Plaintiff incurred.

**Fifth,** the municipal cost recovery rule and economic loss doctrine preclude Plaintiff from seeking damages for negligence and public nuisance.

Defendants have committed significant resources to do right by consumers impacted by the "Kia Challenge."  Plaintiff's residents have benefitted and will benefit from these efforts.  Plaintiff's claims are a misdirected overreach and the FAC should be dismissed.

## BACKGROUND

### A.    Neither U.S. Federal Law Nor Regulation Requires Immobilizers

NHTSA is exclusively vested with authority to regulate automobile safety. *See* 49 U.S.C. § 105.  Federal law, including the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. § 301, and Motor Vehicle Theft Law Enforcement Act, 49 U.S.C. § 331, and regulations promulgated thereunder by NHTSA, govern vehicle safety and anti-theft performance standards.  *See* 49 U.S.C. § 105(c).

In 1968, NHTSA promulgated Federal Motor Vehicle Safety Standard ("FMVSS") 114, imposing two anti-theft performance requirements.   49 C.F.R. § 571.114, S1 & S2.  This standard does not require vehicles to be 100 percent impenetrable to thieves.  *See id.*

Neither FMVSS 114 nor any federal law or regulation has ever mandated installation of immobilizers.  *See* 49 C.F.R. § 571.114; FAC ¶¶ 21–22.  Rather, NHTSA maintains that automobile manufacturers should have a choice in the anti-theft technology they adopt.  When FMVSS 114 was enacted, NHTSA rejected requests to prescribe "specific theft protection devices," because "it would be unwise

to establish a standard in terms so restrictive as to discourage technological innovation in the field of theft inhibition."  33 Fed. Reg. 6471, 6472 (Apr. 27, 1968).  As such, "the standard has been framed to permit as many specific devices as possible to meet its requirements."  *Id*; *see also* 71 Fed. Reg. 17752, 17753 (Apr. 7, 2006).

## B. Defendants' Vehicles Comply With Federal Law And NHTSA Has Found No Safety Defect Requiring A Recall

On April 20, 2023, 18 state Attorneys General—including the Illinois Attorney General—wrote to NHTSA (the "State AGs' Recall Request") asking the agency to:

> use its authority to institute a recall of unsafe Hyundai and Kia vehicles manufactured between 2011 and 2022 whose easily-bypassed ignition switches and lack of engine immobilizers make them particularly vulnerable to theft.

RJN Ex. 1, State AGs' Recall Request.  Plaintiff's failure to mention the State AGs' Recall Request to NHTSA, and decision to mention only the State AGs' Recall Request sent directly to Defendants, *see* FAC ¶¶ 57, 65, is understandable—NHTSA unequivocally rejected the request, and the contention that a lack of engine immobilizers in Defendants' vehicles violates FMVSS:

> At this time, NHTSA has not determined that this issue constitutes either a safety defect or noncompliance requiring a recall …FMVSS No. 114, does not require an engine immobilizer…

RJN Ex. 2, NHTSA Response, 2.  NHTSA added, "[h]ere, the safety risk arises from unsafe use of a motor vehicle by an unauthorized person after taking significant destructive actions to parts of the vehicle."  *Id.*

## C. Social Media and Intervening Criminals Caused An Unprecedented Increase In Theft

The FAC includes no allegations that, *before* mid-2022, either the general public or Defendants were aware of the multi-step process required to steal Defendants' vehicles (a procedure the Kia Boyz promoted on social media, *see* FAC ¶ 31), or that Defendants' vehicles were stolen at higher rates relative to other manufacturers or distributors, *see id.* ¶¶ 31–35.  Rather, the source data for Plaintiff's

Figure 5 indicates thefts of Defendants' vehicles constituted 7% of vehicle thefts in each of 2019, 2020, and 2021—a share of thefts exactly proportional to ownership of Defendants' vehicles. *See id.* ¶ 34 (Defendants' vehicles make up "approximately 7% of the vehicles in Chicago"), RJN Ex. 5 (Kia and Hyundai thefts represented 7% of thefts in 2019, 2020, and 2021).

Plaintiff alleges the theft epidemic underlying its claims began in Summer 2022, when the "Kia Boyz" started posting videos on social media providing step-by-step instructions for stealing Defendants' vehicles. FAC ¶ 31.

Even according to Plaintiff's allegations, the unprecedented increase in thefts arose from this "emerging TikTok challenge," *id.* ¶ 32, which began over a decade after some vehicles were manufactured and sold. *Id.* ¶ 31 ("thefts exploded…when social media users began posting 'how-to' videos…prompt[ing] a wave of teens and young adults [] to start filming themselves and others engaging in reckless driving and other criminal behavior"). Spurred on by the ensuing social media "challenge," Plaintiff alleges that third-party criminals have embarked on an unprecedented wave of Hyundai and Kia car thefts. *Id.* ¶¶ 31–36, 46.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). Rather, the plaintiff must "allege more by way of factual content to nudg[e] his claim" of unlawful action "across the line from conceivable to plausible." *Id.* at 683 (citations omitted).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for claims "grounded in fraud" and "sound[ing] in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). An allegation of fraud "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b).

In ruling on a motion to dismiss, a court may consider: (1) all material within the pleadings; (2) documents incorporated into the complaint by reference; and (3) matters of which a court may take judicial notice. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENT

I. **PLAINTIFF'S PUBLIC NUISANCE AND NEGLIGENCE CLAIMS FAIL**

A. **There Is No Public Right To Be Free From The Threat That Members Of The Public May Commit Crimes**

Illinois common law adopted the Restatement's definition of public nuisance: "an unreasonable interference with a right common to the general public." *Beretta*, 821 N.E.2d at 1111 (quoting Restatement (Second) of Torts § 821B (1979)). Plaintiff fails to allege a cognizable "public right" because the Illinois Supreme Court has held there is no public right to be free from the threat of criminal acts by third parties.

In *Beretta*, the City brought a public nuisance claim against gun manufacturers, alleging they oversaturated the gun market knowing that guns legally sold in other jurisdictions would be resold unlawfully in Chicago and used to commit violent crimes. *Id.* at 1107–09. The City claimed that the defendant's role in designing and distributing those firearms constituted an unreasonable interference with the "right of the general public to be free from the threat of gun violence and from jeopardy to health and safety." *Id.* at 1109. But the Illinois Supreme Court rejected that theory, refusing to "break new ground" by recognizing an unprecedented right to be free from the threat of illegal conduct by others. *Id.* at 1116. The court reasoned that the City's alleged "public right" was "merely an assertion, on behalf of the entire community, of the individual right not to be assaulted," and expressed a "reluctan[ce] to state that there is a public right to be free from the threat that some individuals may use an otherwise legal product (be it a gun, liquor, *a car*, a cell phone, or some other instrumentality) in a manner that may create a risk of harm to another." *Id.* (emphasis added). The Illinois Supreme Court explained:

For example, the purchase and consumption of alcohol by adults is legal, while driving under the influence is a crime.  If there is public right to be free from the threat that others may use a lawful product to break the law, that right would include the right to drive upon the highways, free from the risk of injury posed by drunk drivers.  This public right to safe passage on the highways would provide the basis for public nuisance claims against brewers and distillers, distributing companies, and proprietors of bars, taverns, liquor stores, and restaurants with liquor licenses, all of whom could be said to contribute to an interference with the public right.

Similarly, cell phones, DVD players, and other lawful products may be misused by drivers, creating a risk of harm to others.  In an increasing number of jurisdictions, state legislatures have acted to ban the use of these otherwise legal products while driving.  A public right to be free from the threat that other drivers may defy these laws would permit nuisance liability to be imposed on an endless list of manufacturers, distributors, and retailers of manufactured products that are intended to be, or are likely to be, used by drivers, distracting them and causing injury to others.

*Id.*; *see also Young v. Bryco Arms*, 821 N.E.2d 1078, 1084 (Ill. 2004) ("continu[ing] to doubt the wisdom of recognizing such a broad and ill-defined right" as the right to "use the public space without undue risk of injury"); *People v. Johnson & Johnson*, 2021 Ill. Cir. LEXIS 387, at *23 (Ill. Cir. Ct. Jan. 8, 2021) (emphasizing *Beretta's* rejection of a common right "to be free *from conduct* that creates a disturbance").

As in *Beretta*, Plaintiff's purported "public right" is an assertion, on behalf of the entire community, of individual rights to be free from third-party criminal acts. *See, e.g.,* FAC ¶¶ 104, 107.  Specifically, Plaintiff seeks to establish a right to be free from the threat that individuals might steal and criminally use an otherwise legal and federally compliant product in a manner that creates a risk of harm.  *See id*.  But the Illinois Supreme Court has expressly rejected such an "unprecedented expansion of the concept of public rights."  *Beretta*, 821 N.E.2d at 1116.  This Court should do the same.

**B.**   **Illinois Law Limits Public Nuisance To Conduct Involving Land Use Or A Statutory Violation, And Requires Any Expansion Of Public Nuisance Law Be Done By The Legislature**

Plaintiff also fails to identify Illinois authority permitting the application of public nuisance law under these circumstances.  Illinois courts have limited public nuisance to cases where either: (1) "the defendant's conduct in creating the public nuisance involved the defendant's use of land," or (2) "the conduct at issue was in violation of a statue or ordinance." *Id.* at 1117.  Plaintiff asks this Court to expand Illinois public nuisance law "to encompass a third circumstance"—conditions created by lawful conduct not involving the use of land. *Id.*

But the Illinois Supreme Court considered and rejected that expansion in *Beretta*, determining that judicial expansion of public nuisance to circumstances unrelated to land use or statutory violation would constitute "acting without an established and recognized standard." *Id.* at 1121.  Further, the court found that "an analysis of the harm caused by firearms versus their utility is better suited to legislative fact-finding and policymaking," and that "despite the existence of numerous statutes declaring various practices and conditions to constitute public nuisances," the legislature provided "no indication [] that it would be inclined to impose public nuisance liability…especially when the product at issue is already so heavily regulated by both the state and federal governments." *Id.*  The court concluded "there are strong public policy reasons to defer to the legislature in the matter of regulating the manufacture, distribution, and sale of firearms."[1] *Id.*; *see also*

---

[1]   The Illinois Supreme Court also rejected the applicability of *City of Gary v. Smith & Wesson*, 801 N.E.2d 1222 (Ind. 2003), which found "a nuisance claim may be predicated on a lawful activity conducted in such a manner that it imposes costs on others." *Beretta*, 821 N.E.2d at 1119 (citing *City of Gary*, 801 N.E.2d at 1234).  *Beretta* noted that *City of Gary* relied on authority involving a nuisance created by "the manner in which the defendant used his real property, and the effect of his conduct on plaintiff's use and enjoyment of his real property[.]" *Id.*  As in *Beretta*, there is no such allegation against Defendants.

*Young*, 821 N.E.2d at 1091 (declining to impose public nuisance for manufacture and sale of a legal product "[u]ltimately" on the basis of public policy).

*Beretta* mandates the same outcome here. Illinois has never found a public nuisance where conduct involves neither the use of land nor a violation of a statute declaring offending conduct a nuisance. Plaintiff alleges neither. Rather, Plaintiff, without legislative authorization, seeks an expansion of the common law "to encompass a third circumstance" involving the illegal use by a third party of a legal product. Accordingly, Plaintiff's nuisance claim should be dismissed.

## C. Defendants Owed No Duty To Protect Against Third-Party Criminal Conduct

Plaintiff's public nuisance and negligence claims also fail because the Illinois Supreme Court has held there is no "duty upon commercial enterprises to guard against the criminal misuse of their products by others." *Beretta*, 821 N.E.2d at 1126.

Public nuisance claims grounded in negligent (rather than unlawful) conduct require plaintiffs satisfy the same elements as negligence, including by alleging defendants owed a duty. *Id.* at 1125. To determine whether a duty is owed, Illinois courts weigh four public policy factors: (1) reasonable foreseeability of the injury; (2) likelihood of the injury; (3) magnitude of the burden of guarding against the injury; and (4) consequences of placing that burden on the defendant. *Id.*

The *Beretta* court held these factors weighed against finding gun manufacturers owed any duty to the public.[2] *Id.* at 1126. The court reasoned that, while "[i]t is reasonably foreseeable…that criminals will obtain guns" and "inevitable [] that injuries and death will result…[i]t is less foreseeable…that the criminal conduct of

---

[2]   Analysis of these factors applies equally to the question of duty under public nuisance and negligence theories. *See Ford v. Psychopathic Recs., Inc.*, 2013 WL 5254583, at *8 n.6 (S.D. Ill. Sept. 17, 2013) ("Though the duty calculus in *Beretta* is part of a public nuisance analysis, the Supreme Court of Illinois was clear that it was congruent with the reasoning in [cases] 'in which the theories of liability included…negligence.'") (cleaned up).

individuals who illegally take firearms into a particular community will result in the creation of a public nuisance." *Id.*  The court also reasoned that "the magnitude of the burden [on defendants]…by altering their business practices is immense" and, that "[t]he negative consequence of judicially imposing a duty upon commercial enterprises to guard against the criminal misuse of their products by others will be an unprecedented expansion of the law of public nuisance." *Id.*

So too here.  These public policy factors foreclose any duty to design, manufacture, or distribute products in such a manner as to minimize third-party crimes resulting in local government expenditures (the injury pleaded here).  Although the FAC alleges the existence of a duty in conclusory terms, *see, e.g.,* FAC ¶¶ 115–16, it fails to allege a reasonably foreseeable injury meriting imposition of a novel tort duty. *First*, as in *Beretta*, even assuming it was foreseeable that *some* criminals would steal *some* cars, it was not foreseeable that conduct would result in an unprecedented wave of thefts or subsequent criminal acts that would amount to a public nuisance.  *Second*, Plaintiff's claims would impose an immense burden by requiring Defendants to alter business practices—including anticipating scenarios where criminals broadcast step-by-step methods to exploit potential vulnerabilities through social media campaigns (even a decade after the vehicle sale).  *Third*, public policy would not be served by the "unprecedented expansion of the law of public nuisance" that would result—these impacts would reach beyond Defendants to "countless other types of commercial enterprises" with broad-ranging consequences.  *Beretta*, 821 N.E.2d at 1126.

Plaintiff's negligence and public nuisance claims must be dismissed.

## II.   FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS SEEKING TO IMPOSE A DUTY TO INSTALL ENGINE IMMOBILIZERS

### A.   State Tort Claims That Frustrate Significant Objectives Of Federal Law Are Preempted

Federal law preempts state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat. Solid Wastes Mgmt. Assn.*, 505 U.S. 88, 98 (1992).  That includes state

tort rules that "impose legal duties" in "conflict directly with federal regulatory mandates." *Geier v. American Honda Motor Co.*, 529 U.S. 861, 871 (2000). Federal regulations carry out statutory commands, and so preempt any tort claim that would frustrate a "significant objective of [a] federal regulation." *Williamson v. Mazda Motor Am.*, 562 U.S. 323, 330 (2011).

In *Geier*, the Supreme Court held that an FMVSS provision allowing manufacturers to select from a variety of passive restraints preempted a state tort suit premised on a manufacturer's failure to install driver's side airbags. 529 U.S. at 886. That federal standard imposed flexible performance requirements, rather than mandating a particular type of passive restraint, because "a mix of devices would help develop data on comparative effectiveness, [and] would…facilitate the development of alternative, cheaper, and safer passive restraint systems." *Id.* at 879. A state tort theory mandating one specific restraint thus would stand "'as an obstacle to the accomplishment and execution of' the important…federal objectives" of the standard. *Id.* at 881.

In *Williamson*, the Court clarified that a federal regulation giving manufacturers options for compliance preempts state rules restricting those options when, as in *Geier*, flexibility was a "significant objective" of the regulation. 562 U.S. at 336. For example, a state tort rule requiring auto manufacturers to use only laminated glass was preempted by FMVSS 205, which allowed for use of ***either*** laminated ***or*** tempered glass. *Priester v. Cromer*, 736 S.E.2d 249, 260 (S.C. 2012). Federal law likewise preempted a state-law tort duty to anchor seatbelts to automobile frames, because federal regulations recognize that giving manufacturers options would "encourage the correct use of safety belts and…increase the overall safety belt usage rate." *Soliman v. Daimler AG*, 2011 WL 4594313, at *5 (E.D.N.Y. 2011).

Plaintiff does not dispute that Defendants have complied with FMVSS 114. In fact, in June 2023, NHTSA rejected a petition by several state Attorneys General asking it to determine that the vehicles violate FMVSS 114 because they do not

employ engine-immobilizer technology, *supra* Background B; RJN Ex. 2, NHTSA Response, at 1–2.  The agency explicitly stated:  "FMVSS No. 114 [] does not require an engine immobilizer."  RJN Ex. 2.

**B.     Dictating A Specific Anti-Theft Technology Would Frustrate The Objective Of FMVSS 114's Flexibility**

Unable to assert non-compliance with FMVSS 114's flexible mandate, Plaintiff seeks to use state tort law to impose a rigid duty to use immobilizers.  *See* FAC ¶¶ 67–73, 76–82, 85–95.  Plaintiff's attempt runs headlong into *Geier*, *Priester*, and *Soliman*.

Here, as in those cases, flexibility is a significant objective of NHTSA's regulation.  FMVSS 114 does not prescribe a particular anti-theft technology, but instead mandates that a vehicle's starting system prevent (1) "normal activation" of the engine and (2) "steering or forward self-mobility" when the key is removed.  *See* 49 C.F.R. § 571.114 S5.1.1 (2021).  ***Any*** technology meeting these performance requirements satisfies FMVSS 114.  NHTSA's Test Procedures for FMVSS 114, which the agency uses to verify compliance, underscore the standard's flexibility.  By testing compliance by reference to objective criteria, such as whether the car engine starts or steering wheel can rotate when the key is removed, the Test Procedures contemplate that a range of technologies may satisfy FMVSS 114.  RJN Ex. 3, NHTSA, FMVSS 114 Laboratory Test Procedure, 4, 16.

NHTSA's decision to let manufacturers select among different theft-prevention technologies is not merely an afterthought, but a significant regulatory objective.  For decades, NHTSA's position has been that a flexible performance standard best protects against vehicle theft.  Prior to enacting FMVSS 114, NHTSA received "many" requests to prescribe "specific theft protection devices," including brake locks and "so-called 'pop-out' keys which automatically eject from the locking system."  33 Fed. Reg. 6471, 6472 (Apr. 27, 1968).  NHTSA declined to mandate those, or any, technologies because "it would be unwise to establish a standard in terms so restrictive as to discourage technological innovation in the field of theft

inhibition.  Consequently, the standard has been framed to permit as many specific devices as possible to meet its requirements."  *Id.*

NHTSA has repeatedly reaffirmed this objective.  In 1990, NHTSA considered adding certain requirements to FMVSS 114, but when NHTSA asked manufacturers whether its proposed changes "would…improperly restrict design flexibility," some responded "the proposal established overly precise requirements, which would limit new designs and innovations."  55 Fed. Reg. 21869, 21871 (May 30, 1990).  NHTSA therefore expanded its new rule to identify various alternative mechanisms of compliance.  *Id.* at 21871–72.  In response to petitions for reconsideration, NHTSA further amended the rule in 1991 and 1992 to "provide manufacturers with greater flexibility in designing" their locking and transmission systems to meet the performance standard.  56 Fed. Reg. 12464 (Mar. 26, 1991).  In another revision in 2006, NHTSA agreed with a manufacturer's petition that the existing rule used "terminology that was unnecessarily design-restrictive," and elected to broaden the standard.  71 Fed. Reg. 17752, 17753 (Apr. 7, 2006).

Because flexibility and the innovation it drives have always been "significant objective[s]" of NHTSA's theft-prevention regulation, *Williamson*, 562 U.S. at 330, the regulation preempts state tort duties that would undercut that flexibility, eliminate manufacturer choice, and impose rigid technological mandates that NHTSA has rejected—precisely what Plaintiff's claims would do.

## C.    Plaintiff's Claims Are Preempted Because They Rely On Defendants Having A Duty To Install Immobilizers

Plaintiff argues that Defendants violated a duty of care by specifically "foregoing installation of engine immobilizers," FAC ¶ 116, and seeks to hold Defendants liable for this omission, *see id.* ¶¶ 90, 103, 115, 116.  Unlike the Consolidated Governmental Entities Complaint, which refers to immobilizers "or an equivalent anti-theft device," Dkt. 175, ¶ 13, Plaintiff explicitly seeks to require engine immobilizers specifically, and leaves no other permissible option to meet anti-

theft industry standards.  *See*, *e.g.*, *id.* ¶ 3 (describing an immobilizer, then asserting that "Kia and Hyundai failed to install this critical anti-theft technology"); ¶¶ 26–28 (defining "Defective Vehicles" as those "without engine immobilizers").  Rather than "use broad language to describe what would have been permissible conduct by Defendants," Dkt. 270 at 6, or "couch[] the reference [to immobilizers] as one permissible option available to Defendants[,]" *id.*, Plaintiff seeks to mandate Defendants' use of immobilizers, running afoul of FMVSS 114.

Plaintiff would have this Court use state tort law to impose a universal mandate to use a single anti-theft technology, where federal regulators have for decades strived to safeguard design flexibility.  Plaintiff may believe that NHTSA's judgment is wrong and that engine immobilizers provide theft-protection superior to other technologies FMVSS 114 permits.  But Plaintiff's attempt to impose that judgment in lieu of NHTSA's would override NHTSA's longstanding pursuit of flexible safety standards and impermissibly impair a "significant objective of [a] federal regulation." *Williamson*, 562 U.S. at 330.

## III.   PLAINTIFF FAILS TO STATE A CLAIM FOR UNFAIR OR DECEPTIVE TRADE PRACTICES

### A.   Plaintiff Fails To Adequately Plead Deceptive Trade Practices

Plaintiff has not adequately pleaded deceptive trade practices under MCC §§ 2-25-090 or 4-276-470.

*First*, because both of Plaintiff's deceptive practice claims sound in fraud, they must be pleaded with particularity under Rule 9(b).  *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011).  But Plaintiff's allegations with respect to seven of the cited advertisements fall short. Plaintiff alleges that Defendants advanced "a theme across advertising campaigns" representing they were "industry leaders in quality and safety" and "failed to clearly and conspicuously disclose to consumers that the Defective Vehicles lacked an engine immobilizer."  FAC ¶¶ 19, 71.  Plaintiff cites to ten Hyundai and Kia advertisements

1  as support for this purported "trend," but identifies purportedly deceptive statements

2  from only three.  *Id.*  For the other seven advertisements (mentioned only in a

3  footnote), Plaintiff fails to plead the "who, what, when, where, and how" necessary

4  to satisfy Rule 9(b).  *Halperin v. Int'l Web Servs., LLC*, 123 F. Supp. 3d 999, 1007

5  (N.D. Ill. 2015); *Cosmetique, Inc. v. ValueClick, Inc.*, 753 F. Supp. 2d 716, 721 (N.D.

6  Ill. 2010) (requiring pleading of "each and every [allegedly deceptive or fraudulent]

7  statement").  They cannot form the basis of the claims.

8  　　　*Second*, Plaintiff fails to sufficiently plead materiality and intent as to any of

9  Defendants' alleged misrepresentations or omissions.  Section 4-276-470 prohibits

10  only omission of "material" facts, where such omissions are made with intent that

11  others rely upon them.  Section 2-25-090(a) incorporates by reference the Illinois

12  Consumer Fraud and Deceptive Business Practices Act ("ICFA"), which precludes

13  misrepresentations or omissions done with "intent that the plaintiff rely on the

14  deception," *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 960 (Ill. 2002),

15  and defines a statement as deceptive "if it is likely to mislead a reasonable customer

16  in a material respect," *Beardsall v. CVS Pharm.*, Inc., 953 F.3d 969, 973 (7th Cir.

17  2020); *see also People ex rel. Madigan v. United Constr. Of Am.*, 981 N.E.2d 404,

18  408–11 (Ill. App. Ct. 2012) (requiring plaintiff to allege that defendant intended for

19  consumers to rely on misrepresentation or omission).

20  　　　Here, Plaintiff makes only conclusory assertions of materiality without

21  plausibly alleging facts suggesting that Chicago consumers would have acted

22  differently had the advertising materials at issue stated that certain models lacked

23  immobilizers.  *See White v. DaimlerChrysler Corp.*, 856 N.E.2d 542, 549 (Ill. App.

24  Ct. 2006) ("A material fact exists where a buyer would have acted differently knowing

25  the information, or if it concerned the type of information upon which a buyer would

26  be expected to rely in making a decision whether to purchase."); *Butitta v. First*

27  *Mortgage Corp.*, 578 N.E.2d 116, 121 (Ill. App. Ct. 1991) (absence of allegation that

28  one would have acted differently "may suggest a lack of materiality").  And although

1  Plaintiff makes a conclusory allegation that Defendants "intentionally omit[ted]"
2  certain models' lack of an immobilizer, FAC ¶¶ 72, 81, nowhere does Plaintiff allege
3  that Defendants did so with the intent that others rely on that purported omission, or
4  any purported misrepresentation, *see Wobble Light v. McLain/Smigiel P'ship*, 890
5  F.Supp. 721, 726 (N.D. Ill. 1995) (plaintiff's allegation that defendants intended to
6  deceive the public was insufficient, where court held that plaintiff was required to
7  specifically plead that defendants intended to deceive plaintiff).

8  **B.      Plaintiff Fails To State A Claim For Unfair Trade Practices**

9          Plaintiff also fails to adequately plead unfair practices under MCC § 2-25-090.

10         To state a claim for unfair practices, Plaintiff must allege the practice "offends
11  public policy," or "is immoral, unethical, oppressive, or unscrupulous."  *City of*
12  *Chicago v. Purdue Pharma*, 211 F.Supp. 3d 1058, 1074 (N.D. Ill. 2016).  Here,
13  Plaintiff alleges Defendants' conduct in continuing to manufacture and sell their
14  vehicles while allegedly knowing these vehicles were "unreasonably susceptible to
15  theft" was unfair.  FAC ¶¶ 88, 90, 92.  The contention fails for multiple reasons.

16         *First*, a practice "offends public policy" under Section 2-25-090 "when it
17  violates a standard of conduct contained in an existing statute or common-law
18  doctrine that typically applies to such a situation," *Purdue*, 211 F.Supp. 3d at 1064,
19  but Plaintiff identifies no such statute or common-law doctrine that has been violated
20  here.  Plaintiff asserts that NHTSA "recognize[s]" the "public policy against the
21  manufacture and sale of cars unreasonably susceptible to theft," and that "the [U.S.]
22  motor vehicle industry" has adopted this public policy as "standard," FAC ¶ 89, but
23  the regulations (and NHTSA) do not require immobilizers, and Plaintiff does not
24  allege that Defendants' vehicles fail to comply with the relevant regulations.  *See*
25  *Purdue*, 211 F.Supp. 3d at 1074 ("Without more than an assertion that these federal
26  statutes reflect the public policy the City infers, the Court is hesitant to affirm that
27  such a public policy exists or is one the legislature intended.").

28

*Second*, Plaintiff fails to allege that Defendants' conduct was so immoral, unethical, oppressive, or unscrupulous that consumers had no meaningful choice in purchasing a vehicle.  *See id.* at 1075 ("The Seventh Circuit has held that a practice is immoral, unethical, oppressive, or unscrupulous when [it] leaves the consumer with little choice but to submit.") (internal citations omitted).  Nowhere does Plaintiff allege that consumers lacked alternative vehicles options, or "could [not] have gone elsewhere."  *Robinson*, 775 N.E.2d at 962; *see also Purdue*, 211 F. Supp. 3d at 1075 (opioid manufacturers' conduct did not leave consumers with "no choice," where there were other pain management options).

### C.    The Statements Plaintiff Challenges Are True, Not Misleading, And Unrelated To Anti-Theft Technology

In any event, the three statements Plaintiff identifies in support of its claims are true (or at a minimum, puffery) and completely irrelevant to Plaintiff's immobilizer-based allegations.  *See Bober v. Glaxo Wellcome PLC*, 246 F.3d 934, 938 (7th Cir. 2001) (statement could not be misleading because it did not convey untrue information).

*First*, Plaintiff cites to a brochure advertising the 2012 Kia Forte's "comprehensive list of advanced safety systems," which are "standard equipment on every Forte."  FAC ¶ 19; RJN Ex. 6, Kia Forte Brochure, 3.  But the brochure clarifies that "Forte's safety systems are designed to help minimize injury when a traffic accident is unavoidable," *id.* at 18, and makes no indication that such systems relate to immobilizers or anti-theft technology.  Moreover, a list of such safety systems can be found in a section of the brochure titled "Restraint and Safety Systems," which does not reference anti-theft technology.  *Id.* at 22.  Plaintiff does not allege how this list is inaccurate or misleading, or explain how this statement about "safety systems" is relevant to anti-theft features generally or immobilizers specifically.  NHTSA recognizes two categories of "safety systems," both of which "help[] drivers avoid or mitigate crashes," and neither which relates to anti-theft features.  *See* RJN Ex. 4,

NHTSA's Safe System Approach (active "safety systems" are those which "proactively anticipate and assist drivers," and passive "safety systems" are "technologies [that] alert drivers of potential risk situations to give the driver time to respond"). The brochure could not have misled any reader into believing that "safety systems" referenced anti-theft features.

*Second*, Plaintiff misleadingly clips a statement from a 2019 Hyundai Tucson brochure stating the Tucson is "equipped with a whole host of advanced safety features." FAC ¶ 19. In full, the statement reads: "Thankfully, Tucson comes equipped with a whole host of advanced safety features *that alert you to what's going on around you on the road.*" RJN Ex. 7, 2019 Hyundai Tucson Brochure, 8 (emphasis added). That sentence is true and irrelevant to Plaintiff's allegations, as the "safety features" referenced relate to helping ensure a driver stays alert *while driving*, and does not relate to anti-theft features, as made clear by the preceding sentences. *Id.* ("The first thing they teach you in driver's ed class is to watch out for other guy. In today's age of distracted drivers, that lesson has never been more important."). Indeed, the page from which Plaintiff quotes identifies several of these specific safety features, such that a reader could not have been misled to believe that the "advanced safety features" referenced related to anti-theft technology. *Id.* (referencing "safety features like a Surround View Monitor, Blind-Spot Collision Warning[] and Rear Cross-Traffic Collision Warning")

*Third*, Plaintiff alleges that an online brochure advertised the 2014 Kia Sorento as "equipped with advanced active and passive safety features designed to ensure your peace of mind by helping you stay in control." FAC ¶ 19. Again, "active and passive safety features" relate to safety features while driving, not theft prevention. *See* RJN Ex. 4, NHTSA's Safe System Approach. And Plaintiff omits the footnote providing detail about the referenced "advanced available features" and instructing consumers to "See Features and Specifications pages" for further information. RJN Ex. 8, Kia Sorento Brochure. Had Plaintiff followed this instruction, it would have discovered

the Sorento's "advanced…features" including a rollover sensor and Break Assist System. *Id.* at 22. The brochure nowhere suggests that these "advanced…features" include an engine immobilizer. Plaintiff has alleged nothing about how this list is purportedly inaccurate or misleading.

At minimum, such statements constitute non-actionable puffery. *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007) ("Puffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud."). Statements of puffery are too vague to be "'capable of precise measuring,' such that a reasonable consumer would not rely on them." *O'Connor v. Ford Motor Co.*, 567 F.Supp. 3d 915, 962 (N.D. Ill. 2021) (citing *Muir v. Playtex Products, LLC*, 983 F. Supp. 2d 980, 989 (N.D. Ill. 2013)).

No reasonable consumer would interpret Defendants' assertions, including that certain models are equipped with "[a]dvanced safety features" and a "comprehensive list of advanced safety systems" as concrete representations that the vehicles employed any particular safety technology besides those explicitly listed in the advertisements themselves. *See Truck Ins. Exch. v. D'Orazio*, 2021 WL 1206557, at *9 (Ill. App. Ct. Mar. 30, 2021) (representation in advertising materials that company provided "comprehensive coverage" was mere puffery).

## IV. PLAINTIFF'S CLAIM UNDER MCC § 1-20-020 ALSO FAILS.

Plaintiff also brings a claim under MCC § 1-20-020 seeking to recover costs for providing public services. FAC ¶ 137. But to state such a claim, "plaintiff must allege that defendants 'cause[d] the city…to incur costs in order to provide services reasonably related to…[defendants'] violation of any federal, state or local law.'" *Purdue*, 211 F.Supp. 3d at 1083. Plaintiff fails to do so.

Here, Plaintiff's claim is based on blanket allegations that (1) Defendants "acted in violation of federal, state, and local law by using deceptive and unfair trade practices in violation of MCC §§ 2-25-090 and 4-276-470; 815 ILCS 505/2 and 510/2; and 15 U.S.C. § 45," FAC ¶ 135, and (2) "[t]he direct and proximate result of

Defendants' violation of federal, state and/or local law was a wave of thefts of the Defective Vehicles, and the resulting costs to Chicago in responding to the wave of thefts and crimes and injuries associated with those thefts," *id.* ¶ 136.

Plaintiff's theory fails. *First*, because Section 1-20-020 requires an antecedent violation of some law, Plaintiff's claim falls with its underlying statutory claims.[3] *Supra* Argument III. *Second*, Plaintiff cannot base its Section 1-20-020 claim on "violations of state common law," FAC ¶ 135, because that Section on its face requires violation of a "federal, state or local law"—it does not reference *common* law. In any event, such a claim would likewise fall with the underlying common law claims. *See supra* Argument I–II.

*Second*, Plaintiff fails to plausibly plead causation between the alleged unfair or deceptive vehicle advertising, and the costs it incurred. *Purdue* is instructive. There, the City brought claims against Purdue for deceptive and unfair practices and sought recovery of costs under Section 1-20-020. 211 F.Supp. 3d at 1067. The City argued Purdue's marketing campaign was deceptive because it falsely implied the drugs were FDA-approved as safe and effective for chronic pain treatment. *Id*. But the court dismissed the City's claim under MCC § 1-20-020 because it failed to identify parties who were exposed to defendants' alleged misrepresentations, link those parties to subsequent prescriptions of defendants' drugs, and link such prescriptions to the city's expenditures. *Id.* at 1083 ("Without this link, plaintiff has not adequately alleged that defendants caused the City to incur costs."). As in *Purdue*, Plaintiff fails to identify consumers exposed to alleged omissions, and likewise fails

---

[3] To the extent Plaintiff has attempted to plead a violation of 815 ILCS 505/2, it fails for the same reasons Plaintiff's deceptive and unfair practice claims fail, *supra* Argument III. *See* MCC § 2-25-090(a) ("In construing [2-25-090], consideration shall be given to court interpretations relating to the [ICFA.]"). To the extent Plaintiff tries to plead a violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 does not create a cause of action. And Plaintiff cannot bring a claim under 15 U.S.C. § 45, which is reserved for the Federal Trade Commission.

1   to connect such parties with eventual vehicle thefts, let alone allege that these alleged
2   misrepresentations or omissions *caused* thefts.

3   **V.    PLAINTIFF'S REQUEST FOR DAMAGES IS FORECLOSED**

4   **A.    The Municipal Cost Recovery Rule Precludes Tort Damages**

5   Plaintiff's efforts to recover "economic damages" and "expenditures over and
6   above its ordinary public services," FAC ¶¶ 111, 126–127, are precluded by the
7   municipal cost recovery rule.

8   Under this rule, "public expenditures made in the performance of governmental
9   functions are not recoverable in tort…based, in part, on the constitutional doctrine of
10  separation of powers." *Beretta*, 821 N.E.2d at 1144.  The *Beretta* court opined "there
11  is little reason for a court to impose an entirely new system of [cost] allocation.  This
12  is particularly true where…allowing recovery of the costs of routine police and other
13  emergency services could have significant unintended consequences." *Id.* at 1145.
14  The court held that, absent statutory authority *expressly* authorizing recovery, the
15  municipal cost recovery rule bars recovery of any "claimed damages [which] do not
16  represent the actual cost of abatement of the nuisance or compensation for actual harm
17  to the city's or county's property." *Id.* at 1147.  That holding requires dismissal of
18  Plaintiff's damages claim here.

19  *First*, Plaintiff cites no authorizing statute or ordinance permitting its request
20  for economic damages.

21  *Second*, Plaintiff cannot plausibly argue the municipal cost recovery rule does
22  not apply due to the alleged nuisance being "ongoing" rather than "discrete." *See,*
23  *e.g.*, FAC ¶¶ 106, 112.  The Illinois Supreme Court rejected that precise distinction in
24  *Beretta*.  821 N.E.2d at 1146–47 ("We reject the distinction between single, discrete
25  disasters…and the unfortunately frequent incidents of handgun violence…when the
26  need for emergency services in response to an alleged nuisance is ongoing, the
27  municipal cost recovery rule is stronger, not weaker[.]'").

28

1    *Third*, Plaintiff is barred from recovery under the rule because its "claimed

2    damages" "do not represent the actual cost of abatement." *Id.* at 1147.  While Plaintiff

3    attempts to characterize its damages as "costs incurred…to abate the nuisance," FAC

4    ¶ 113, Plaintiff elsewhere concedes its inability to abate the nuisance, *id.* ¶ 56

5    ("Despite the City's best efforts…Chicago has been unable, on its own, to abate the

6    nuisance of the Kia and Hyundai theft crisis."); *see Beretta*, 821 N.E.2d at 1147

7    ("[S]ince plaintiffs admit that abatement is not feasible and that the damages they seek

8    do not represent the cost of abatement, the exception [allowing] for such recovery

9    does not apply.").

10    Accordingly, the municipal cost recovery rule prohibits Plaintiff from seeking

11    damages under nuisance and negligence claims.

12    **B.    The Economic Loss Rule Forecloses Plaintiff's Request For Tort
            Damages**

13

14    The economic loss rule also forecloses Plaintiff's request for tort damages.

15    Under the economic loss rule, solely economic losses are generally not

16    recoverable in tort actions, to avoid "the consequences of open-ended tort liability."

17    *In re Chicago Flood Litig.*, 680 N.E.2d 265, 274 (Ill. 1997) (cleaned up).  Illinois

18    courts have applied the doctrine to bar recovery of economic damages in negligence

19    and public nuisance actions.  In *Beretta*, the City sought damages "representing the

20    cost of providing governmental services made necessary by the widespread unlawful

21    possession and use of firearms." *Id.* at 416.  The Illinois Supreme Court barred such

22    damages, finding they raised "concerns regarding speculativeness and potential

23    magnitude of damages" and concluding they were "'solely economic damages' in the

24    sense they represent costs incurred in the absence of harm to a plaintiff's person or

25    property." *Id.* at 423–24.

26    Here, Plaintiff similarly alleges economic damages "representing the cost of

27    providing governmental services" made necessary by the wave of vehicle theft. *See*

28    FAC ¶¶ 6, 111, 126.  But Plaintiff's references to unspecified "property damage," *id.*

¶¶ 6, 54, 111, 126, are unsupported by a single factual allegation, fail to specify whether such "property" belongs to Plaintiff, and do not allege any connection between any unspecified property injury and the damages Plaintiff seeks.  Plaintiff cannot seek damages based on public nuisance or negligence claims under the economic loss rule.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the FAC in its entirety.

DATED:  January 8, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By */s/ Steven G. Madison*
  Steven G. Madison (SBN: 101006)
  stevemadison@quinnemanuel.com
  Justin C. Griffin (SBN: 234675)
  justingriffin@quinnemanuel.com
  865 South Figueroa Street, 10th Floor
  Los Angeles, California 90017-2543
  Telephone:   (213) 443-3000
  Facsimile:   (213) 443-3100

  *Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Section 5 of Order No. 1, I certify that the parties conferred in a good-faith effort to resolve the matter without court action prior to the filing of this Motion.

DATED:  January 8, 2024        QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  /s/ Steven G. Madison
                         *Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*