QUINN EMANUEL URQUHART & SULLIVAN LLP
Steven G Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443 3000
Facsimile:    (213) 443 3100

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br><br>This Document Relates to:<br>   Governmental<br>   Entities Actions | Case No. 8:22-ML-3052-JVS(KESx)<br><br>The Honorable James V. Selna<br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR IMMEDIATE APPEAL AND STAY UNDER 28 U.S.C. § 1292(B)**<br><br>Hearing Date: January 22, 2024<br>Hearing Time: 1:30 pm |

**Table of Contents**

**Page**

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT .............................................................................................. 2

   I.   There Is Substantial Ground for a Difference of Opinion on the Question Presented .................................................................... 2

      A.   A Fair-Minded Judge Could Conclude that a Duty to Protect Against Third-Party Criminal Conduct Cannot Be Based Solely on the Foreseeability of the Alleged Harm in Any of the Seven Jurisdictions ................................ 2

      B.   A Fair-Minded Jurist Could Conclude that a Tort Duty Is an Element of All GE Plaintiffs' Public-Nuisance Damages Claims ........................................................ 8

   II.   Immediate Appeal Would Materially Advance the Termination of the Litigation By Narrowing the Issues or Clarifying the Viability of GE Plaintiffs' Novel Liability Theories. ........................ 11

   III.   GE Plaintiffs' Remaining Arguments Misstate the Applicable Law ............................................................................................ 13

   IV.   A Stay Pending Appeal Is Warranted ................................. 15

CONCLUSION .......................................................................................... 15

**Table of Authorities**

**Page**

**Cases**

*Allen Freight Lines, Inc. v. Consol. Rail Corp.,*
595 N.E.2d 855 (Ohio 1992) .................................................................. 16

*Ashburn v. Anne Arundel Cnty.,*
510 A.2d 1078 (Md. 1986) ..................................................................... 13

*Ass'n of Irritated Residents v. Fred Schakel Dairy,*
634 F. Supp. 2d 1081 (E.D. Cal. 2008) ............................................... 21

*In re Blue Cross Blue Shield Antitrust Litig.,*
No. 2:13-CV-20000-RDP, 2018 WL 3326850 (N.D. Ala. June 12,
2018) ........................................................................................................ 20

*In re Cement Antitrust Litig.,*
673 F.2d 1020 (9th Cir. 1982) .......................................................... 7, 20

*In re Cintas Corp. Overtime Pay Arb. Litig.,*
No. M06-CV-01781-SBA, 2007 WL 1302496 (N.D. Cal. May 2,
2007) ........................................................................................................ 20

*Estate of Ciotto v. Hinkle,*
145 N.E.3d 1013 (Ohio Ct. App. 2019) ............................................... 10

*City of Cincinnati,*
768 N.E.2d at 1144 ................................................................................. 10

*City of Cincinnati v. Beretta U.S.A. Corp.,*
768 N.E.2d 1136 (Ohio 2002) ........................................................ 10, 16

*Clark v. Rice Lake Hous. Auth.,*
822 N.W.2d 737, 2012 WL 4350618 (Wis. Ct. App. Sept. 25, 2012)
(unpublished disposition) ....................................................................... 16

*Couch v. Telescope Inc.,*
611 F.3d 629 (9th Cir. 2010) ................................................................. 19

*Davis v. Widman,*
922 N.E.2d 272 (Ohio Ct. App. 2009) ................................................. 16

*Dix v. Motor Mkt., Inc.,*
540 S.W.2d 927 (Mo. Ct. App. 1976) ................................................... 12

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR 28 U.S.C. § 1292(B) APPEAL

**Table of Authorities**
**(Continued)**

Page

*Donohoe v. State*,
142 P.3d 654 (Wash. Ct. App. 2006) ................................................. 13

*Ests. of Morgan v. Fairfield Fam. Counseling Ctr.*,
673 N.E.2d 1311 (Ohio 1997) ........................................................... 11

*Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*,
543 N.E.2d 769 (Ohio 1989) ............................................................ 10

*Feichtner v. Ohio Dep't of Transp.*,
683 N.E.2d 112 (1995) .................................................................... 11

*Garcia v. 398 Crescent St. Prop., Inc.*,
29 Misc. 3d 1235(A), 2010 WL 5117026 (N.Y. Sup. Ct. Dec. 15,
2010) ............................................................................................ 16

*Gritzner v. Michael R.*,
611 N.W.2d 906 (Wis. 2000) ...................................................... 11, 12

*Hamilton v. Beretta Corp.*,
750 N.E.2d 1055 (N.Y. 2001) ............................................................ 9

*Harper v. Nedd*,
71 F.4th 1181 (9th Cir. 2023) .......................................................... 10

*He v. Apple, Inc.*,
189 A.D.3d 1984 (N.Y. App. Div. 2020) ............................................ 9

*Hutchins v. 1001 Fourth Ave. Assocs.*,
802 P.2d 1360 (Wash. 1991) ........................................................... 14

*ICTSI Or., Inc. v. Int'l Longshore & Warehouse Union*,
22 F.4th 1125 (9th Cir. 2022) ........................................... 8, 14, 17, 18

*Inskeep v. Columbus Zoological Park Ass'n*,
207 N.E.3d 876 (Ohio Ct. App. 2023) .............................................. 10

*Jackson v. City of Blue Springs*,
904 S.W.2d 322 (Mo. Ct. App. 1995) ............................................... 17

*Jankee v. Clark Cnty.*,
612 N.W.2d 297 (Wis. 2000) ........................................................... 11

iv

**Table of Authorities**
**(Continued)**

Page

*Lakoduk v. Cruger*,
  287 P.2d 338 (Wash. 1955) ................................................................... 15

*Little v. Union Tr. Co. of Md.*,
  412 A.2d 1251 (Md. Ct. Spec. App. 1980) ........................................... 15

*Vonder Haar ex rel. Mehochko v. Six Flags*,
  261 S.W.3d 680 (Mo. Ct. App. 2008) .................................................. 17

*Nappier v. Kincade*,
  666 S.W.2d 858 (Mo. Ct. App. 1984) .................................................. 12

*Neal v. IAB Fin. Bank*,
  68 N.E.3d 1114 (Ind. Ct. App. 2017) ................................................... 14

*Pavlides v. Niles Gun Show*,
  637 N.E.2d 404 (Ohio Ct. App. 1994) .................................................. 11

*Pulka v. Edelman*,
  358 N.E.2d 1019 (N.Y. 1976) ................................................................ 9

*Quade v. City of Oshkosh*,
  321 N.W.2d 364, 1982 WL 171919 (Wis. Ct. App. Mar. 25, 1982)
  (unpublished disposition) ..................................................................... 16

*In re Ranbaxy Generic Drug Application Antitrust Litig.*,
  No. 19-MD-02878-NMG, 2020 WL 759369 (D. Mass. Feb. 14,
  2020) ...................................................................................................... 21

*Reese v. BP Expl. (Alaska) Inc.*,
  643 F.3d 681 (9th Cir. 2011) ..................................................... 8, 18, 19

*Scheid v. PNC Bank, N.A.*,
  No. 21-15988, 2022 WL 17430306 (9th Cir. Dec. 6, 2022) ................ 19

*People ex rel. Spitzer v. Sturm, Ruger & Co.*,
  309 A.D.2d 91 (N.Y. App. Div. 2003) .................................................. 16

*Stafford v. Drury Inns, Inc.*,
  165 S.W.3d 494 (Mo. Ct. App. 2005) .................................................. 12

*Steering Comm. v. United States*,
  6 F.3d 572 (9th Cir. 1993) ......................................................... 7, 19, 20

**Table of Authorities**
**(Continued)**

Page

1

2   *Tadjer v. Montgomery Cnty.*,
        479 A.2d 1321 (1984) ............................................................................. 15

3

4   *Taylor v. Stevens Cnty.*,
        759 P.2d 447 (Wash. 1988) ..................................................................... 13

5

6   *U.S. Rubber Co. v. Wright*,
        359 F.2d 784 (9th Cir. 1966) ................................................................... 20

7   *Vollendorff v. United States*,
        951 F.2d 215 (9th Cir. 1991) ................................................................... 19

8

9   *Winffel v. Westfield Prop. Mgmt., LLC*,
        435 F. Supp. 3d 686 (D. Md. 2020) ......................................................... 13

10

11  **Statutes**

12  28 U.S.C. § 1292(b) .................................................................... 7, 19, 20, 21

13  RCW 7.48.120 ......................................................................................... 15

14  **Treatises**

15  16 Edward H. Cooper, Federal Practice and Procedure ....................... 17, 20

16  Restatement (Second) of Torts § 324A .................................................. 13

17

18

19

20

21

22

23

24

25

26

27

28

1

## **PRELIMINARY STATEMENT**

2      GE Plaintiffs do not dispute that this Court's ruling that foreseeability created

3  a tort duty for Defendants to protect GE Plaintiffs from third parties' crimes ("the

4  Decision") presents "a controlling question of law."  *In re Cement Antitrust Litig.*,

5  673 F.2d 1020, 1026 (9th Cir. 1982).  But while they insist the ruling does not

6  present "substantial grounds for difference of opinion," *id.*, GE Plaintiffs cite only a

7  single precedent from any of the seven states at issue premising such a duty on

8  foreseeability alone.   That 1994 Ohio intermediate appellate decision did not

9  purport to consider whether a special relationship is required to impose a duty to

10 prevent third-party crimes—as decades of otherwise uniform Ohio precedents hold.

11 As shown in Defendants' motion and detailed below, substantial authority in the

12 other jurisdictions similarly eschews relying on foreseeability alone to impose a

13 duty to protect against others' crimes.   GE Plaintiffs' arguments that an appeal

14 would not "advance the ultimate termination of the litigation," *id.*, because their

15 non-tort claims would survive reversal, or because GE Plaintiffs may amend their

16 complaint, both fly in the face of Ninth Circuit precedent that holds such

17 circumstances pose no obstacle to appeal under § 1292(b).  Plaintiffs' suggestion

18 that certification is inappropriate because this is a multidistrict litigation involving

19 questions of state law likewise flouts Ninth Circuit precedent, which instructs that

20 certification is "particularly" appropriate in "multiparty negligence cases . . .

21 involving multidistrict litigation." *Steering Comm. v. United States*, 6 F.3d 572,

22 575 (9th Cir. 1993) (applying California negligence law).

23      This litigation will require the parties to litigate facts about complex

24 criminological problems and municipal decision-making by reference to novel and

25 vigorously contested liability theories.  Conclusively resolving the viability of those

26 theories at the outset will promote resolution and ensure that litigation resources are

27 appropriately directed.  All three § 1292(b) factors underscore the straightforward

28 conclusion that the Court should certify the Decision for appeal.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR 28 U.S.C. § 1292(B) APPEAL

1

**ARGUMENT**

2

**I.    There Is Substantial Ground for a Difference of Opinion on the Question**
3
**Presented**

4          Because extensive authority from the relevant jurisdictions provides grounds

5    to differ with the conclusion that tort duties to prevent third-party crimes can arise

6    from foreseeability alone, "fair-minded jurists might reach contradictory

7    conclusions on that question," satisfying the "substantial ground for difference of

8    opinion" prong for certification.  *ICTSI Or., Inc. v. Int'l Longshore & Warehouse*

9    *Union*, 22 F.4th 1125, 1130 (9th Cir. 2022).  GE Plaintiffs suggest that certification

10   is appropriate only "where the circuits are in dispute . . . or if the issue is novel and

11   difficult."  Opp. 7.  But *ICTSI*, which they cite for that proposition, makes clear

12   those are merely "example[s]" of how the substantial-difference prong might be

13   satisfied.  *Id.* at 1130 (emphasis added).  The Ninth Circuit has made clear that

14   certification is appropriate "where reasonable jurists might disagree on an issue's

15   resolution, not merely where they have already disagreed."  *Reese v. BP Expl.*

16   *(Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011).  The question here easily satisfies

17   that standard.

18
                A.    A Fair-Minded Judge Could Conclude that a Duty to Protect Against
19                     Third-Party Criminal Conduct Cannot Be Based Solely on the
                       Foreseeability of the Alleged Harm in Any of the Seven Jurisdictions
20

21         In concluding that Defendants owe a tort duty to "guard against the

22   intentional and/or criminal conduct of third parties," Decision at 9, this Court

23   "rest[ed]" its analysis on "whether foreseeability supports the finding of a duty," *id.*

24   at 7.  The Court further acknowledged that GE Plaintiffs do not attempt to argue

25   that a special relationship exists to support a duty and that Defendants advance "a

26   compelling argument that there is none here."  *Id.*  As Defendants explained in their

27   motion for certification, ample authority in each of the seven jurisdictions at issue

28   would permit a "fair-minded jurist[]" to conclude that foreseeability alone cannot

                                              DEFENDANTS' REPLY IN SUPPORT OF
                                              MOTION FOR CERTIFICATION FOR 28 U.S.C. § 1292(B) APPEAL

1  establish a duty to protect against the criminal acts of third parties.  Mot. 5-8.

2  In response, GE Plaintiffs focus largely on case law establishing *general*

3  standards for imposing a tort duty.  *See, e.g.*, Opp. 10-11.  But GE Plaintiffs do not

4  dispute that their alleged injuries were directly caused by third-party criminals—the

5  thieves who stole Hyundai and Kia cars and, in some cases, allegedly committed

6  other crimes.  Thus, the viability of their tort claims turns not on what standards

7  govern tort duties generally, but what circumstances create a duty to prevent third-

8  party criminal conduct.  GE Plaintiffs fail to rebut Defendants' showing that

9  substantial precedent in all seven states forecloses finding such a duty based on

10  foreseeability alone.

11  ***New York***.  As shown in Defendants' opening brief (Mot. 6), under New

12  York law, "a duty and the corresponding liability it imposes do *not* rise from mere

13  foreseeability of the harm."  *Hamilton v. Beretta Corp.*, 750 N.E.2d 1055, 1062

14  (N.Y. 2001) (emphasis in original).  And a "defendant generally has no duty to

15  control the conduct of third persons so as to prevent them from harming others,"

16  absent a "relationship either between defendant and a third-person tortfeasor that

17  encompasses defendant's actual control of the third person's actions, or between

18  defendant and plaintiff that requires defendant to protect plaintiff from the conduct

19  of others."  *Id.* at 1061 (internal quotation marks omitted).  GE Plaintiffs strain to

20  distinguish *Hamilton* but do not meaningfully contest the numerous New York

21  cases stating the same rule.  *See, e.g.*, *Pulka v. Edelman*, 358 N.E.2d 1019, 1023

22  (N.Y. 1976) (declining to use foreseeability as the "sole means to create duty where

23  none existed before"); *He v. Apple, Inc.*, 189 A.D.3d 1984, 1986 (N.Y. App. Div.

24  2020) (affirming dismissal of negligence claim where there were "no indications of

25  a special relationship that would create . . . a duty" to protect plaintiff from

26  scammers on defendant's platform).

27  ***Ohio***.  As Defendants explained (Mot. 6), outside of the premises-liability

28  context—where a "special relationship may arise based on the foreseeability of the

3

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR 28 U.S.C. § 1292(B) APPEAL

harm"—"foreseeability alone" cannot create a tort duty under Ohio law but merely "defin[es] 'the scope and extent of the duty.'"  *Estate of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1020 (Ohio Ct. App. 2019); *see id.* at 1019 ("A duty arises by law, and requires more than just foreseeability.").  A "duty predicated on nonfeasance," such as the failure to protect against third-party criminal conduct, "requires a special relationship."  *Id.* at 1027; *see also Inskeep v. Columbus Zoological Park Ass'n*, 207 N.E.3d 876, 881 (Ohio Ct. App. 2023) ("In tort law, 'there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third party, which gives rise to a duty to control.'"); *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 543 N.E.2d 769, 772 (Ohio 1989) (similar).

GE Plaintiffs cite *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), for the proposition that a duty may arise absent a special relationship where a manufacturer's "own negligence in 'manufacturing, marketing, and distributing' a product" "results in foreseeable injury."  Opp. 14 (citing *City of Cincinnati*, 768 N.E.2d at 1144).  But *City of Cincinnati* concluded that the special-relationship requirement did not apply because the defendants were alleged to have engaged in the "affirmative conduct" of intentionally "creat[ing] an illegal firearms market" through their marketing and distribution practices.  768 N.E.2d at 1143-44.  Here, while GE Plaintiffs allege in conclusory fashion that Defendants created a "secondary market" of stolen cars, they allege no facts supporting that theory.  *See* ECF No. 222, at 30-31; *see also Harper v. Nedd*, 71 F.4th 1181, 1184 (9th Cir. 2023) ("[U]nwarranted inferences are insufficient to defeat a motion to dismiss.") (cleaned up).  The CGEC plainly targets nonfeasance—Defendants' alleged failure to employ immobilizers to prevent thefts and the resulting harms—rather than the sort of affirmative malfeasance at issue in *City of Cincinnati*.  Ohio law is clear that a "duty predicated on nonfeasance . . . requires a special relationship."  *Estate of Ciotto*, 145 N.E.3d at 1027.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR 28 U.S.C. § 1292(B) APPEAL

GE Plaintiffs likewise fail to distinguish the rule of *Estate of Ciotto* as limited to premises-liability cases.  *See* Opp. 13-14.  That case made clear that "Ohio courts have also considered claims of negligent storage of a firearm ***without reference to premises liability law***, reaching the same conclusion regarding the need for a special relationship." *Id.* at 1021 (emphasis added).  And Ohio courts in cases not involving premises liability routinely apply the "general rule" that "there is no duty to control the conduct of a third person to prevent him from causing physical harm to another unless a 'special relation' exists between the defendant and the third person or between the defendant and the other." *Ests. of Morgan v. Fairfield Fam. Counseling Ctr.*, 673 N.E.2d 1311, 1319 (Ohio 1997) (therapist's duty to prevent harm caused by patient); *see Feichtner v. Ohio Dep't of Transp.*, 683 N.E.2d 112, 119-20 (1995) (no duty for Ohio Department of Transportation to build protective railings preventing third parties from throwing rocks from bridge).

Finally, GE Plaintiffs also point to *Pavlides v. Niles Gun Show*, 637 N.E.2d 404, 410 (Ohio Ct. App. 1994), in which the Court of Appeals held that a reasonable jury could find it foreseeable that minors would have stolen firearms from a gun show and used them to injure third parties.  Opp. 14.  The special-relationship requirement does not appear to have been litigated and was not addressed in *Pavlides*.  To the extent *Pavlides* failed to impose such a requirement, it conflicts with decades of Ohio authority requiring a special relationship as a precondition to prevent third-party crimes.

***Wisconsin***.  Under Wisconsin law (Mot. 6), "[a] person owes no duty to aid or protect a third party unless the person stands in a special relationship to the foreseeable victim." *Jankee v. Clark Cnty.*, 612 N.W.2d 297, 322 (Wis. 2000).  GE Plaintiffs claim that *Jankee*—a decision by the Wisconsin Supreme Court—is an "aberration" that misread prior Wisconsin precedent and has since been "corrected." Opp. 14-15.  But the subsequent case that GE Plaintiffs cite, *Gritzner v. Michael R.*, 611 N.W.2d 906 (Wis. 2000), was decided ***the day after*** *Jankee*.

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR 28 U.S.C. § 1292(B) APPEAL

Although *Gritzner* states that Wisconsin courts limit tort liability by reference to public-policy factors rather than asking whether the "defendant owed a 'duty' to the particular victim," *id.* at 913, the Court nowhere suggested it intended to erase a limit on tort liability it had announced the day before, and devoted extensive discussion to the importance of the relationship between the parties in its public-policy analysis. *See id.* at 914, 918-20.  In any event, any tension between *Jankee* and *Gritzner*—two binding Wisconsin Supreme Court precedents, neither of which overruled the other—merely underscores that there is substantial ground for difference of opinion regarding whether liability for third-party crimes can lie absent a special relationship.

**Missouri**.  Under Missouri law, as Defendants explained (Mot. 7), there are only two exceptions to the general rule that there is "no duty to protect another from deliberate criminal attack by a third person," *Nappier v. Kincade*, 666 S.W.2d 858, 860 (Mo. Ct. App. 1984): a "special circumstances" exception that "deals with the foreseeability of crimes based on past incidents," and a "special relationship" exception that "creates a duty based solely on the positions of the parties."  *Stafford v. Drury Inns, Inc.*, 165 S.W.3d 494, 496 (Mo. Ct. App. 2005). GE Plaintiffs do not dispute that the CGEC fails to allege either a "special relationship" or "special circumstances."  Mot. 7.  Instead, they insist that they have "already distinguished" *Dix v. Motor Mkt., Inc.*, 540 S.W.2d 927 (Mo. Ct. App. 1976).  Opp. 12 (citing ECF No. 240, at 15-16).  But they do not address Defendants' other cases and cite no Missouri authority calling into question the underlying legal rule that there is no duty to protect against third-party criminal attacks absent special circumstances or a special relationship. *See Stafford*, 165 S.W.3d at 496.

**Maryland**.  As explained in the motion for certification (Mot. 5-6), under Maryland law, "[t]he fact that a result may be foreseeable does not itself impose a duty," and there is "no duty to control a third person's conduct . . . unless a 'special relationship' exists either between the actor and the third person or between the

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR 28 U.S.C. § 1292(B) APPEAL

actor and the person injured." *Ashburn v. Anne Arundel Cnty.*, 510 A.2d 1078, 1083 (Md. 1986).  GE Plaintiffs rely on a federal case for the proposition that Maryland does not impose a special relationship requirement, Opp. 12-13 n.18, but that case, *Winffel v. Westfield Prop. Mgmt., LLC*, 435 F. Supp. 3d 686 (D. Md. 2020), shows the opposite.  In *Winffel*, the plaintiffs pointed to Restatement (Second) of Torts § 324A "as establishing a special relationship" between the defendant property-management company and victims shot in a mall where the defendants undertook to provide security.  *Winffel v. Westfield Prop. Mgmt., LLC*, 435 F. Supp. 3d 686, 690 (D. Md. 2020).  The defendants argued that a special relationship under § 324A could not establish a duty to protect against the tortious acts of third parties, but the court rejected that argument, concluding that a special relationship created a tort duty "even when the harm was based on the intentional, criminal acts of third parties."  *Id.* at 691.  Far from suggesting that a special relationship could arise based on foreseeability alone, *Winffel*'s reliance on the special relationship doctrine confirms reasonable minds could disagree with the Court's determination that foreseeability alone can impose a tort duty to protect against third-party crimes. *See* Mot. 5-6.

**Washington**.  Under Washington law, "[o]nly when there is an established special relationship between the defendant and the plaintiff has a defendant in a negligence action generally been held to owe a duty to protect the plaintiff from foreseeable harm by a third party." *Donohoe v. State*, 142 P.3d 654, 660 (Wash. Ct. App. 2006).  GE Plaintiffs' observation that *Donohoe* considered the special-relationship requirement in the context of the public-duty doctrine—the rule that, to be actionable, a duty must be owed to the plaintiff rather than the public in general, *see Taylor v. Stevens Cnty.*, 759 P.2d 447, 449 (Wash. 1988)—does not distinguish it.  *See* Opp. 13 n.18.  Plaintiffs fundamentally premise their claims on the theory that Defendants owed a duty to the public at large to protect against vehicle thefts. In any event, the Washington Supreme Court has applied the same rule, with certain

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR 28 U.S.C. § 1292(B) APPEAL

1   exceptions not applicable here, in cases not implicating the public-duty doctrine.

2   *See, e.g.*, *Hutchins v. 1001 Fourth Ave. Assocs.*, 802 P.2d 1360, 1367-69 (Wash.

3   1991).

4       ***Indiana***.  As Defendants explain (Mot. 7-8) and GE Plaintiffs acknowledge

5   (Opp. 12), Indiana courts balance three factors when determining whether a duty

6   exists: "(1) the relationship between the parties, (2) the reasonable foreseeability of

7   harm, and (3) public policy concerns."  *Neal v. IAB Fin. Bank*, 68 N.E.3d 1114,

8   1117 (Ind. Ct. App. 2017).  GE Plaintiffs argue that the Court's Decision found a

9   duty based on a balancing of these three factors.  *Id.*  But the Decision found

10  Defendants' argument that no special relationship exists "compelling" and

11  explained that its duty analysis "rest[ed] on whether foreseeability supports the

12  finding of a duty."  Decision at 7.

13      In short, in all seven jurisdictions at issue, a "fair-minded jurist[]" could

14  conclude that foreseeability alone cannot establish a tort duty to protect against

15  third-party harms.  Accordingly, the question satisfies the "substantial ground for

16  difference of opinion" for certification.  *ICTSI*, 22 F.4th at 1130.

17          B.    <u>A Fair-Minded Jurist Could Conclude that a Tort Duty Is an Element</u>

18                <u>of All GE Plaintiffs' Public-Nuisance Damages Claims</u>

19      GE Plaintiffs argue that their public-nuisance claims do not require them to

20  establish a duty of care, attempting to distinguish the Maryland and Washington

21  cases cited in Defendants' motion and arguing that other jurisdictions would not

22  recognize the same rule as those states.  Opp. 9.  But aside from Indiana, which

23  does not appear to have addressed the issue, caselaw in the remaining jurisdictions

24  supports the proposition that a duty of care is an element of public-nuisance

25  damages claims.  At the very least, a "fair-minded jurist[]" could so conclude based

26  on the relevant precedent.  *ICTSI*, 22 F.4th at 1130.

27      ***Maryland***.  As Defendants showed (Mot. 6 n.1), Maryland public-nuisance

28  law requires violation of a tort duty.  *See Little v. Union Tr. Co. of Md.*, 412 A.2d

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR 28 U.S.C. § 1292(B) APPEAL

1251, 1255-56 (Md. Ct. Spec. App. 1980). *Little* explained that by "attempting to assert a cause of action based upon public nuisance," the plaintiffs improperly sought to evade the "settled principle[] of Maryland law that . . . [a] landlord is under no duty to keep the premises in repair," and the plaintiffs were therefore required to "proceed by way of traditional negligence theory" rather than public nuisance. *Id.*  GE Plaintiffs argue that *Little* stands for the "unremarkable proposition that there is always a duty not to maintain or create a nuisance." Opp. 9.  But *Little* ***rejected*** the plaintiffs' public-nuisance cause of action on the ground that the defendant was "under no duty to keep the premises in repair." *Little*, 412 A.2d at 1256.  The case explicitly stands for the proposition that a plaintiff may not evade duty requirements by recasting its claim as a public-nuisance claim—precisely what Baltimore seeks to do here.  *See id.* at 1256; *see Tadjer v. Montgomery Cnty.*, 479 A.2d 1321, 1328 (1984) (affirming dismissal of public-nuisance claim that merely attempted to "frame an action in negligence using somewhat different terms").

**Washington**.  As Defendants explained (Mot. 6 n.1), the Washington Supreme Court has held that a city's operation of a traffic control light could "not constitute a nuisance" under RCW 7.48.120 because it had "no duty to install" the light and there was no otherwise "unlawful act." *Lakoduk v. Cruger*, 287 P.2d 338, 341 (Wash. 1955).  GE Plaintiffs respond with numerous *non sequiturs*, including that Washington defines "nuisance" expansively, and that nuisance need not be based on negligence.  Opp. 10.  Neither observation changes the holding of *Lakoduk* or undermines the grounds for reasonable disagreement with this Court's decision to let Seattle's public-nuisance claim go forward.

**New York**.  New York courts have applied the rule that there is no duty to prevent harm inflicted by third parties absent a special relationship in public-nuisance cases, as well as negligence cases, explaining that New York's "resistance to the expansion of duty" is "common to both negligent marketing and public

9

nuisance claims." *People ex rel. Spitzer v. Sturm, Ruger & Co.*, 309 A.D.2d 91, 95-96 (N.Y. App. Div. 2003) (internal quotation marks omitted). As *Sturm, Ruger* explains, allowing public-nuisance claims premised on third-party crimes to proceed would "summarily ignore[e] . . . such concepts as . . . duty" where "violent acts of criminals . . . actually, directly, and most often intentionally[] cause[d] the cited harm." *Id.* at 99; *see Garcia v. 398 Crescent St. Prop., Inc.*, 29 Misc. 3d 1235(A), 2010 WL 5117026, at *2 (N.Y. Sup. Ct. Dec. 15, 2010) (unreported disposition) (dismissing public-nuisance claim for failure to establish duty of care).

**Ohio**. Under Ohio law, where a public-nuisance cause of action is predicated on allegedly negligent conduct, "the allegations of nuisance and negligence . . . merge," and a duty is required to establish public-nuisance damages liability. *Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 595 N.E.2d 855, 856 (Ohio 1992); *see id.* ("there was no negligence, and therefore no nuisance, because no duty . . . existed"); *Davis v. Widman*, 922 N.E.2d 272, 283 (Ohio Ct. App. 2009) (similar). Accordingly, the existence of a duty of care is at a minimum an element of Ohio Plaintiffs' qualified-public-nuisance claims, which by definition sound in negligence. *See City of Cincinnati*, 768 N.E.2d at 1143 n.4.

**Wisconsin**. Under Wisconsin law, a plaintiff alleging public nuisance based on nonfeasance—such as Defendants' alleged failure to take action to protect against car theft—must "plead and prove that there was a duty owed to him." *Quade v. City of Oshkosh*, 321 N.W.2d 364 (Table), 1982 WL 171919, *1 (Wis. Ct. App. Mar. 25, 1982) (unpublished disposition). The same is true for public-nuisance claims based on negligent conduct. *See Clark v. Rice Lake Hous. Auth.*, 822 N.W.2d 737 (Table), 2012 WL 4350618, at *1 (Wis. Ct. App. Sept. 25, 2012) (unpublished disposition) (rejecting plaintiff's argument that "she can maintain an action for negligent maintenance of a public nuisance even though landowners have no duty to remove snow or ice on abutting sidewalks").

**Missouri**. Missouri courts routinely dismiss public-nuisance claims for

10

failure to establish a duty.  *See, e.g.*, *Jackson v. City of Blue Springs*, 904 S.W.2d 322, 329 (Mo. Ct. App. 1995) ("The elements which Mr. Jackson must show to establish his claim for public nuisance under Missouri law are that the Watsons (1) had a duty to trim the vegetation on the corner lot . . . .  If the Watsons had no duty to maintain the corner lot, they would not be liable for any claim of nuisance resulting from the condition of the lot."); *Vonder Haar ex rel. Mehochko v. Six Flags*, 261 S.W.3d 680 (Mo. Ct. App. 2008) (affirming summary judgment dismissing public-nuisance claim for lack of duty).

A "fair-minded jurist[]" could readily conclude from these precedents that a duty of care is an element of all GE Plaintiffs' public-nuisance damages claims. *ICTSI*, 22 F.4th at 1130.  Because, as explained above, substantial case law in GE Plaintiffs' jurisdictions rejects tort liability for third-party crimes based solely on foreseeability, there is substantial grounds for disagreement with the Decision's rationale for allowing GE Plaintiffs' public-nuisance damages claims to proceed.

## II.   Immediate Appeal Would Materially Advance the Termination of the Litigation By Narrowing the Issues or Clarifying the Viability of GE Plaintiffs' Novel Liability Theories.

The "materially advance" prong "is satisfied when the resolution of the question '*may* appreciably shorten the time, effort, or expense of conducting' the district court proceedings." *ICTSI*, 22 F.4th at 1131 (emphasis added) (quoting *In re Cement*, 673 F.2d at 1027).  This prong is met when resolution of the question "involve[s] the possibility of . . . curtailing and simplifying pretrial or trial."  16 Edward H. Cooper, Federal Practice and Procedure (Wright & Miller) § 3930 (3d ed. 2023).  As Defendants explained (Mot. 8-9), the question presented satisfies this statutory requirement because an appellate reversal could lead to dismissal of GE Plaintiffs' tort-damages claims, leaving their public-nuisance abatement claims as the primary focus of the litigation.  The end result would be a substantial streamlining of these proceedings.  Further, even an affirmance of the Decision in

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR 28 U.S.C. § 1292(B) APPEAL

whole or in part would expedite resolution of this litigation by producing legal clarity that facilitates resolution and ensures that litigation resources are appropriately directed.

GE Plaintiffs respond that the "materially advance" prong is not met because "the subset of questions proposed to be certified will not resolve the other outstanding claims of governmental entities cases on file or those that file in the future." Opp. 16. Effectively, GE Plaintiffs argue that because Defendants' proposed interlocutory appeal cannot dispose of this entire MDL, the "materially advance" prong is not met. Binding Ninth Circuit law forecloses that argument, explaining that "neither § 1292(b)'s text nor controlling precedent requires that [an] interlocutory appeal have a final, dispositive effect on the litigation, only that it 'may materially advance' the litigation." *Reese*, 643 F.3d at 688. In *Reese*, the plaintiff argued that the "materially advance" prong was not met because he had filed an amended complaint asserting new claims that would not be resolved by the interlocutory appeal. *Id.* The Ninth Circuit rejected that argument, holding that the possibility that reversal "may" remove a defendant and certain claims from the case was "sufficient to advance materially the litigation" and therefore that certification was appropriate. *Id.* Here, similarly, GE Plaintiffs cannot deny that the dismissal of negligence and public-nuisance damages claims brought by all 17 GE Plaintiffs would greatly narrow this litigation, removing complex novel claims from the action and thereby shortening the "time, effort, [and] expense" of these proceedings. *ICTSI*, 22 F.4th at 1131.

GE Plaintiffs fare no better asserting that appellate reversal will merely lead to "amendment of the GE Plaintiffs' complaints." Opp. 5. GE Plaintiffs do not identify how they could amend their complaints to avoid the impact of an adverse appellate ruling on the question at issue. Their conclusory suggestion that amended pleadings may be on the horizon does not negate the potential efficiencies of certification. *Cf. Reese*, 643 F.3d at 688 ("materially advance" prong met despite

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR 28 U.S.C. § 1292(B) APPEAL

1    amended complaint bringing claims that interlocutory appeal would not resolve).

2    **III.    GE Plaintiffs' Remaining Arguments Misstate the Applicable Law**

3           GE Plaintiffs' hodgepodge of additional arguments against certification

4    should be disregarded because "[a] district court confronting a motion to certify

5    pursuant to § 1292(b) should remain focused on the statutory requirements, not

6    policy considerations which may or may not be furthered by certification." *Couch*

7    *v. Telescope Inc.*, 611 F.3d 629, 635 (9th Cir. 2010).  In any event, GE Plaintiffs'

8    miscellaneous arguments all contravene Ninth Circuit precedent.

9           *First*, GE Plaintiffs argue that the question at issue does not qualify for

10   § 1292(b) because the existence of a duty is a "mixed question of law and fact."

11   Opp. 5-7.  But the Ninth Circuit has made clear that the "existence and extent of the

12   standard of conduct are questions of law," not fact.  *Vollendorff v. United States*,

13   951 F.2d 215, 217 (9th Cir. 1991).  In any event, the Ninth Circuit has certified

14   liability issues requiring application of law to the facts for appeal under § 1292(b),

15   such as a district court's ruling that certain parties in a multidistrict litigation were

16   not negligent.  *See Steering Comm. v. United States*, 6 F.3d 572, 574-75 (9th Cir.

17   1993).  The court held that although the conclusion that no negligence occurred was

18   a "mixed question of law and fact," the dispositive issues remained "questions of

19   law," and were suitable for interlocutory resolution under § 1292(b).  *Id.* at 575.  So

20   too here.

21          *Second*, GE Plaintiffs' argument that state-law questions are not appropriate

22   for certification (Opp. 8) contradicts recent Ninth Circuit precedent reviewing a

23   "district court's . . . interpretation of state law" under § 1292(b).  *Scheid v. PNC*

24   *Bank, N.A.*, No. 21-15988, 2022 WL 17430306, at *1 (9th Cir. Dec. 6, 2022); *see*

25   *also Steering Comm.*, 6 F.3d at 576 (applying California negligence law).

26          *Third*, relying on *In re Cement Antitrust Litig.*, 673 F.2d 1020 (9th Cir.

27   1982), GE Plaintiffs argue that § 1292(b)'s legislative history suggests interlocutory

28   appeal should be limited to "exceptional situations" where immediate appeal would

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR 28 U.S.C. § 1292(B) APPEAL

avoid protracted and expensive litigation. Opp. 4. But *In re Cement* rested that proposition on *U.S. Rubber Co. v. Wright*, 359 F.2d 784 (9th Cir. 1966), which simply explained that § 1292(b) is designed for large, potentially protracted litigations like this one—cases where interlocutory appeal "might avoid protracted and expensive litigation," rather than "ordinary litigation which could otherwise be promptly disposed of" such as "unexceptional contract litigation." *U.S. Rubber*, 359 F.2d at 785 & n.2; *see* 16 Edward H. Cooper, Federal Practice and Procedure (Wright & Miller) § 3930 (3d ed. 2023) (§ 1292(b) appropriate in "big" cases "in which it is expected that prolonged pretrial and protracted trial efforts will follow the disputed ruling"). This litigation, alleging complex and novel liability theories for allegedly "nationwide" harms (Opp. 1), is precisely the sort of exceptional, complex case for which § 1292(b) was designed.

*Finally*, consistent with § 1292(b)'s focus on complex, protracted litigation, many courts, including the Ninth Circuit, have rejected GE Plaintiffs' argument that § 1292(b) certification is inappropriate in MDLs (Opp. 4-5, 16), holding that the complexity and expense of MDLs makes immediate appeal *more*, not less, appropriate. In *Steering Committee*, the Ninth Circuit commented that certification is warranted in "multiparty negligence cases, ***particularly cases involving multidistrict litigation***." 6 F.3d at 575 (emphasis added). A wealth of authority nationwide likewise holds that "certification is particularly appropriate in the context of MDL proceedings." *In re Cintas Corp. Overtime Pay Arb. Litig.*, No. M06-CV-01781-SBA, 2007 WL 1302496, at *3 (N.D. Cal. May 2, 2007); *see, e.g.*, *In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2018 WL 3326850, at *6 (N.D. Ala. June 12, 2018) ("Given the nationwide scope and importance of this multidistrict litigation, the need for § 1292(b) review is particularly compelling."); *In re Ranbaxy Generic Drug Application Antitrust Litig.*, No. 19-MD-02878-NMG, 2020 WL 759369, at *1 (D. Mass. Feb. 14, 2020) ("interlocutory appeals may often be more appropriate in multi-district litigation . . .

14

1   than in ordinary litigation").   These proceedings, consisting of "multiparty

2   negligence cases . . . involving multidistrict litigation," are precisely the sort of

3   litigation § 1292(b) is designed to expedite—all the more so because they present

4   novel liability theories on which reasonable judicial minds could readily disagree.

5   **IV.   A Stay Pending Appeal Is Warranted**

6        Defendants have shown a significant likelihood of success on appeal given

7   the above-cited caselaw holding that a tort duty to protect against third-party crimes

8   cannot be premised on foreseeability alone.   A stay would likewise save all parties

9   the expense of litigating GE Plaintiffs' claims without the benefit of appellate input.

10   Accordingly, a stay pending appeal is warranted.   *See Ass'n of Irritated Residents v.*

11   *Fred Schakel Dairy*, 634 F. Supp. 2d 1081, 1094 (E.D. Cal. 2008) ("Although the

12   filing of an interlocutory appeal does not automatically stay proceedings in the

13   district court, the district court has broad discretion to decide whether a stay is

14   appropriate to 'promote economy of time and effort for itself, for counsel, and for

15   litigants.'") (cleaned up).

16   <u>**CONCLUSION**</u>

17        For the foregoing reasons and those stated in Defendants' opening brief

18   (ECF No. 278), Defendants respectfully request that the Court certify its Decision

19   for immediate review under 28 U.S.C. § 1292(b) and stay proceedings in the trial

20   court while Defendants' appeal is pending.

21

22

23

24

25

26

27

28

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR 28 U.S.C. § 1292(B) APPEAL

Dated:  January 8, 2024

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

By:       */s/ Steven G. Madison*

Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendants*

DEFENDANTS' REPLY IN SUPPORT OF
MOTION FOR 28 U.S.C. § 1292(B) APPEAL

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Hyundai Motor America and Kia America, Inc., certifies that this brief contains 4,942 words, which complies with the word limit of L.R. 11-6.1.

Dated:  January 8, 2024

**QUINN EMANUEL URQUHART & SULLIVAN LLP**

By:      */s/ Steven G. Madison*

Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendants*