**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Alice S. Kim (SBN 317479)
AKim@jenner.com
Madeline P. Skitzki (SBN 318233)
MSkitzki@jenner.com
Jenna L. Conwisar (SBN 341521)
JConwisar@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  +1 213 239 5100
Facsimile:   +1 213 239 5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
PBrennan@jenner.com
Michael T. Brody (*pro hac vice*)
MBrody@jenner.com
353 North Clark Street
Chicago, IL  60654-3456
Telephone:  +1 312 222 9350
Facsimile:   +1 312 527 0484

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ML-3052-JVS(KESx) **HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS THE SUBROGATION PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT FOR LACK OF PERSONAL JURISDICTION; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| This document relates to: ALL SUBROGATION CASES | Judge:   The Honorable James V. Selna Ctrm:    10C Date:    TBD Time:    TBD |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that Defendants Hyundai Motor Company ("HMC") and Kia Corporation ("KC") will and hereby do move this Court, pursuant to Federal Rule of Civil Procedure 12(b)(2), to dismiss the Subrogation Plaintiffs' Amended Consolidated Complaint (titled "First Amended Master Complaint for All Subrogation Plaintiffs") (Dkt. 283) for lack of personal jurisdiction without leave to amend.[1]

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently filed Declarations of Seung Hyun Baik and Seunghee Shin, the pleadings and papers on file in this litigation, any additional briefing on this subject (including HMC and KC's reply brief), and any further evidence or arguments that may be presented to the Court at the hearing on this matter.

This Motion is made following multiple conferences of counsel pursuant to L.R. 7-3.

---

[1] The Subrogation Plaintiffs' Amended Consolidated Complaint is not attached to this Motion because of its length.

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION
AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Dated:  February 23, 2024

JENNER & BLOCK LLP

By: */s/ Peter J. Brennan*

Kate T. Spelman
Alice S. Kim
Madeline P. Skitzki
Jenna L. Conwisar
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:   +1 213 239 5100
Facsimile:   +1 213 239 5199
KSpelman@jenner.com
AKim@jenner.com
MSkitzki@jenner.com
JConwisar@jenner.com

Peter J. Brennan (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654-3456
Telephone:   +1 312 222 9350
Facsimile:   +1 312 527 0484s
PBrennan@jenner.com
MBrody@jenner.com

*Attorneys for Defendants*

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION
AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................ 1

BACKGROUND ................................................................................................. 2

    A.    The Defect Allegations ................................................................ 2

    B.    Personal Jurisdiction Allegations .............................................. 2

    C.    Relevant Procedural Background ............................................... 4

LEGAL STANDARD ......................................................................................... 5

ARGUMENT....................................................................................................... 7

I.    HMC and KC Did Not Purposefully Direct Their Activities at California or Purposefully Avail Themselves of the Privilege of Conducting Business in California. ...................................................... 7

    A.    That Hyundai- and Kia-Branded Vehicles Have Been Sold in California and That the Insureds' Vehicles May Have Been Stolen in California Does Not Establish Purposeful Direction or Availment. ........................................... 9

    B.    The Subrogation Plaintiffs Cannot Rely on a "Stream-of-Commerce" Theory to Establish Purposeful Direction or Availment. .................................................................................. 13

    C.    Operating a Website That is Accessible in California, but Not Targeted at California, Is Not Sufficient to Create Jurisdiction.................................................................................. 13

II.    The Subrogation Plaintiffs Do Not Allege Claims Arising From or Related to Contacts by HMC and KC with California Related to This Matter.................................................................................... 15

    A.    HMC and KC's Filing of Lawsuits in This District Does Not Satisfy the Second Prong of the Specific Jurisdiction Test....................................................................................... 15

    B.    The Existence of HMC and KC's Global Corporate Websites Does Not Satisfy the Second Prong of the Specific Jurisdiction Test......................................................... 17

i

1

III.    The Subrogation Plaintiffs Cannot Impute Contacts to HMC
and KC to Establish Specific Personal Jurisdiction........................... 18

2

3

CONCLUSION.................................................................................................. 22

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Boschetto v. Hansing*,
   539 F.3d 1011 (9th Cir. 2008) ................................................................ 5

*Briskin v. Shopify, Inc.*,
   87 F.4th 404 (9th Cir. 2023) ............................................ 7, 12, 14, 15

*Bristol-Myers Squibb Co. v. Superior Court of California*,
   582 U.S. 255 (2017) ......................................................................... 15

*Brooks v. Y.Y.G.M. SA*,
   No. 21-78, 2021 WL 5450232 (E.D. Cal. Nov. 22, 2021) .................................. 16

*Calder v. Jones*,
   465 U.S. 783 (1984) .......................................................................... 7

*In re California Gasoline Spot Mkt. Antitrust Litig.*,
   No. 20-3131, 2021 WL 4461199 (N.D. Cal. Sept. 29, 2021) ..................... 19, 20

*Clinton v. Boladian*,
   No. 11-10062, 2013 WL 12126107 (C.D. Cal. May 2, 2013) ........................... 17

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ................................................................. 5, 18, 20

*Ditter v. Subaru Corp.*,
   No. 20-2908, 2022 WL 889102 (D. Colo. Mar. 25, 2022) ......................... *passim*

*Dow Chem. Co. v. Calderon*,
   422 F.3d 827 (9th Cir. 2005) ............................................................ 17

*Est. of Daher v. LSH Co.*,
   575 F. Supp. 3d 1231 (C.D. Cal. 2021) ................................................. 21

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
   141 S. Ct. 1017 (2021) ............................................................. 9, 10, 11

*Goodyear Dunlop Tires Ops., S.A. v. Brown*,
   564 U.S. 915 (2011) ......................................................................... 16

*Heber v. Toyota Motor Sales U.S.A., Inc.*,
    No. 16-1525, 2018 WL 3104612 (C.D. Cal. June 11, 2018),
    *overruled on other grounds by Heber v. Toyota Motors Sales
    U.S.A., Inc.*, 823 F. App'x 512 (9th Cir. 2020) ........................................ 20

*Int'l Shoe Co. v. Washington*,
    326 U.S. 310 (1945) ........................................................................................ 5

*J McIntyre Mach., Ltd v. Nicastro*,
    564 U.S. 873 (2011) ................................................................................... 7, 13

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
    22 F.4th 852 (9th Cir. 2022) ................................................................. *passim*

*Long v. Gamo Outdoor S.L.U.*,
    No. 22-670, 2023 WL 2016658 (D. Nev. Feb. 1, 2023) ............................. 19

*Lynn v. Stross*,
    No. 19-397, 2019 WL 6481795 (D. Or. Oct. 7, 2019), *report and
    recommendation adopted*, 2019 WL 6467817 (D. Or. Nov. 30,
    2019) ............................................................................................................. 16

*Mavrix Photo, Inc. v. Brand Techs., Inc.*,
    647 F.3d 1218 (9th Cir. 2011) ...................................................................... 7

*Morrill v. Scott Fin. Corp.*,
    873 F.3d 1136 (9th Cir. 2017) ...................................................................... 5

*Murphy v. DirecTV, Inc.*,
    724 F.3d 1218 (9th Cir. 2013) .................................................................... 19

*Notorious B.I.G. LLC v. Hutson*,
    No. 14-24, 2014 WL 12589626 (C.D. Cal. July 3, 2014) ......................... 16

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) .................................................................... 18

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ................................................................... 6, 7

*Stone v. Advance Am., Cash Advance Centers, Inc.*,
    No. 08-1549, 2009 WL 765665 (S.D. Cal. Mar. 20, 2009), *on
    reconsideration*, 2009 WL 10671553 (S.D. Cal. July 1, 2009) ................ 17

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION
AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

*Swartz v. KPMG LLP,*
    476 F.3d 756 (9th Cir. 2007) ................................................................. 6

*Thornton v. Bayerische Motoren Werke AG,*
    439 F. Supp. 3d 1303 (N.D. Ala. 2020) .................................................*passim*

*Underwood v. O'Reilly Auto Parts, Inc.,*
    No. 21-1766, 2023 WL 1869310 (D. Nev. Feb. 8, 2023) ................................ 15

*Walden v. Fiore,*
    571 U.S. 277 (2014) ........................................................................ 10

*Williams v. Yamaha Motor Co.,*
    851 F.3d 1015 (9th Cir. 2017).............................................................*passim*

*Wood v. N. Am. Van Lines, Inc.,*
    No. 20-2092, 2021 WL 3124155 (C.D. Cal. July 22, 2021)............................. 19

*Worldwide Subsidy Grp., LLC v. Fed'n Int'l de Football Ass'n,*
    No. 14-13, 2014 WL 12631652 (C.D. Cal. June 9, 2014) ............................... 16

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION
AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1

## **INTRODUCTION**

2   The Subrogation Plaintiffs have sued Hyundai Motor Company ("HMC") and

3   Kia Corporation ("KC")—Korean vehicle manufacturers—as well as their

4   American distributors, Hyundai Motor America ("HMA") and Kia America, Inc.

5   ("KA")—on behalf of unidentified insureds whose vehicles they allege were stolen,

6   damaged, or vandalized as a result of an alleged "defect" in the vehicles.  The Court

7   previously rejected the Subrogation Plaintiffs' claim that the Court has general

8   personal jurisdiction over HMC and KC.  The Subrogation Plaintiffs have now made

9   demonstrably false allegations in an attempt to establish specific personal

10  jurisdiction over HMC and KC.  Two courts have recently rejected attempts to assert

11  specific personal jurisdiction over foreign automobile manufacturers with American

12  subsidiaries—*Thornton v. Bayerische Motoren Werke AG*, 439 F. Supp. 3d 1303

13  (N.D. Ala. 2020), and *Ditter v. Subaru Corp.*, No. 20-2908, 2022 WL 889102 (D.

14  Colo. Mar. 25, 2022).  This Court should do the same.

15  The Declarations of Seung Hyun Baik and Seunghee Shin make clear that the

16  vast majority of personal jurisdiction-related allegations in the Amended

17  Consolidated Complaint are false.  HMC and KC do not manufacture, design, test,

18  market, sell, or lease vehicles in California.  And HMC and KC do not control their

19  United States subsidiaries, including HMA and KA, which are separate and distinct

20  entities, or Hyundai and Kia dealerships, which are also fully independent.  Further,

21  HMC and KC did not purposefully direct any activity at California or purposefully

22  avail themselves of the privilege of conducting business in California.  Instead, HMC

23  and KC sold vehicles to HMA and KA in Korea, knowing that some of the vehicles

24  could potentially end up in California.  The fact that Hyundai- and Kia-branded

25  vehicles ended up in California and that some insureds were allegedly injured in

26  California due to the alleged "defect" also does not establish purposeful direction or

27  availment.

28

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION
AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

The Subrogation Plaintiffs correctly allege that HMC and KC engaged in one activity directed at California—filing unrelated lawsuits in California. But courts have repeatedly found that the filing of lawsuits in a state does not subject a party to jurisdiction in unrelated lawsuits in that state.

As such, this Court should dismiss the Subrogation Plaintiffs' claims against HMC and KC for lack of personal jurisdiction.

## BACKGROUND

### A. The Defect Allegations

The Subrogation Plaintiffs allege that certain Hyundai- and Kia-branded vehicles of model years 2011 to 2022 are "defective" because they lack engine immobilizers. Dkt. 283 ("Amended Consolidated Complaint" or "ACC") ¶¶ 1, 17, 306. According to the ACC, a "group of teenagers in Milwaukee" began to "publicize" a method of stealing the vehicles. *Id.* ¶ 307. This social media trend caused thefts of the vehicles to "skyrocket[]" in 2020. *Id.* ¶ 330. The lack of an immobilizer allegedly makes the vehicles more susceptible to theft by criminals. *Id.* ¶ 16.

### B. Personal Jurisdiction Allegations

The ACC asserts claims against HMC, HMA, KC, and KA. It correctly alleges that HMC and KC are Korean corporations with principal places of business in the Republic of Korea. *Id.* ¶¶ 28, 37. It also correctly alleges that HMA is a subsidiary of HMC, and KA is a subsidiary of KC. *Id.* ¶¶ 29, 37.

The ACC includes various allegations suggesting that HMC and KC operate in California and target California in those operations. *See, e.g.*, *id.* ¶ 32 ("HMC conducts substantial business in the State of California"); *id.* ¶ 33 ("HMC further maintains a research and design facility in California and employs thousands of people within the State."); *id.* ¶ 250 (HMC and KC "are global automobile manufacturers who purposely availed themselves of the automobile and automobile-related products' markets in California by extensively promoting, warranting,

selling, leasing and servicing, directly and indirectly, vehicles (including the Class Vehicles) and related automobile products in California"); *id.* ¶ 264 ("Today, over half the cars HMC sells in the United States are designed and manufactured domestically at HMA's facilities, including at its 'design, research, and testing grounds in California' near its corporate headquarters.  In total, HMC and HMA employ approximately 5,000 people at these facilities, and an additional 20,000 employees at U.S. dealerships.").  As set forth in the concurrently filed Declarations and further discussed below, these allegations are false.

The ACC also suggests that HMC and KC engage in activities in California through their subsidiaries, including HMC's subsidiary, Hyundai America Technical Center, Inc. ("HATCI"), and through independent Hyundai and Kia dealerships. *See, e.g., id.* ¶ 34 ("HMC and HMA control details regarding their dealers' operations through various written agreements"); *id.* ¶ 41 ("KA and KC control various details regarding their dealers' operations through various written agreements"); *id.* ¶ 250 (HMC and KC acted "indirectly" in California); *id.* ¶ 265 ("HATCI serves as an 'authorized representative' for HMC, HMA, KC, and KA when dealing with NHTSA in connection with various Safety Standards").  To the extent the Subrogation Plaintiffs seek to attribute the conduct of those entities to HMC and KC, they do not plead a sufficient basis for finding that those entities are the alter egos or agents of HMC and KC for purposes of establishing specific personal jurisdiction.

Indeed, the facts tell a very different story.  HMC and KC sell Hyundai- and Kia-branded vehicles to HMA and KA in the Republic of Korea, and HMA and KA import some of those vehicles to the United States and then distribute them to independent dealers throughout the United States.  Declaration of Seung Hyun Baik ("Baik Decl.") ¶¶ 21–22; Declaration of Seunghee Shin ("Shin Decl.") ¶¶ 20–21. HMC and KC do not manufacture, design, test, market, sell, lease, warrant, or service vehicles in California.  Baik Decl. ¶¶ 21–22, 28–30; Shin Decl. ¶¶ 20–21,

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

26–28.  And HMC, HMA, KC, KA, and HATCI all observe corporate formalities and are separate and distinct entities.  Baik Decl. ¶¶ 14–20; Shin Decl. ¶¶ 13–19.

### C.    Relevant Procedural Background

The Subrogation Plaintiffs' Consolidated Complaint made no attempt to allege that this Court had *specific* personal jurisdiction over HMC and KC.  Instead, it only broadly alleged that this Court had "general personal jurisdiction" over all four Defendants.  Dkt. 176 ("Consolidated Complaint" or "CC") ¶ 248.  Yet, like the ACC, it acknowledged that HMC and KC are Korean corporations with their principal places of business in the Republic of Korea.  *Id.* ¶¶ 29, 36.

HMC and KC moved to dismiss on the ground that this Court lacked general personal jurisdiction over them.  Dkt. 217 at 38–40.  In response, the Subrogation Plaintiffs abandoned their general personal jurisdiction assertion and instead claimed that (1) HMC and KC waived a challenge to personal jurisdiction by making "multiple general appearances in this action without disputing personal jurisdiction; thereby submitting to this Court's jurisdiction"; and (2) this Court had specific personal jurisdiction over HMC and KC.  Dkt. 234 at 6–12.

The Court rejected their waiver argument, finding that (1) any filings by HMC and KC in the subrogation track did not constitute consent to jurisdiction, (2) HMC and KC had explicitly reserved the right to challenge personal jurisdiction in one of the filings, and (3) participating in another track of this MDL did not subject HMC and KC to personal jurisdiction in this subrogation track.  Dkt. 269 at 22–23.  The Court also found that "HMC's and KC's contacts with California, even considered collectively, [did] not justify exercise of general personal jurisdiction."  *Id.* at 21, 23.  Additionally, the Court held that "[b]ecause Subrogation Plaintiffs failed to allege specific personal jurisdiction in their Consolidated Complaint, they [could not] expand their position now and argue specific personal jurisdiction in their Opposition."  *Id.* at 23.  The Court granted leave to amend to "cure the Consolidated

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION
AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Complaint's deficiencies with respect to specific personal jurisdiction over HMC and KC." *Id.*

In amending, the Subrogation Plaintiffs added very little in the way of factual allegations, but they clarified they are now contending the Court has specific personal jurisdiction over HMC and KC.  In the meet-and-confer regarding this Motion, the Subrogation Plaintiffs did not ask for jurisdictional discovery but would not agree to drop their claims against HMC and KC.

## **LEGAL STANDARD**

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014). Because "California's long-arm statute is co-extensive with federal standards, . . . a federal court may exercise personal jurisdiction if doing so comports with federal constitutional due process." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).[2]  "Constitutional due process requires that defendants 'have certain minimum contacts' with a forum state 'such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1141 (9th Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).  To establish minimum contacts, the plaintiff must show the defendant has either "'continuous and systematic general business contacts' with a forum state (general jurisdiction)" or "sufficient contacts arising from or related to specific transactions or activities in the forum state (specific jurisdiction)." *Id.* at 1142 (citation omitted).

The Subrogation Plaintiffs allege that HMC and KC are subject to specific personal jurisdiction in California.  ACC ¶ 250.[3]  The Ninth Circuit applies a three-

---

[2] Because the individual cases that have been subsumed in the ACC were all filed in this District, the Court should look to California's long-arm statute.

[3] The Subrogation Plaintiffs no longer contend this Court has general personal jurisdiction over HMC and KC, which the Subrogation Plaintiffs concede are incorporated in the Republic of Korea and have their principal places of business in the Republic of Korea.  ACC ¶¶ 28, 37.  And the Court already held that "HMC's

5

part test to determine whether a defendant's contacts are sufficient to subject that defendant to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022). "The plaintiff bears the burden of satisfying the first two prongs of the test." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). Only if the plaintiff can satisfy those prongs does the burden shift to the defendant "to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.*

A plaintiff is obligated to *prove* jurisdiction, not merely allege it. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."). "[T]he plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger*, 374 F.3d at 800. Courts may not assume the truth of allegations in a complaint that are contradicted by declaration. *LNS Enterprises*, 22 F.4th at 858 (affirming dismissal for lack of personal jurisdiction where defendants' declarations rebutted plaintiffs' unsupported jurisdictional allegations).

---

and KC's contacts with California, even considered collectively, do not justify exercise of general personal jurisdiction."  Dkt. 269 at 23.

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

## ARGUMENT

**I.**   **HMC and KC Did Not Purposefully Direct Their Activities at California or Purposefully Avail Themselves of the Privilege of Conducting Business in California.**

With respect to the first prong, courts typically apply the purposeful direction analysis in cases "sounding in tort" and the "purposeful availment" analysis in cases "sounding in contract." *Schwarzenegger*, 374 F.3d at 802.   The Subrogation Plaintiffs assert both types of claims, so the Court can consider both analyses. *See Briskin v. Shopify, Inc.*, 87 F.4th 404, 412 (9th Cir. 2023) ("[A] rigid analytical distinction between purposeful direction and purposeful availment is not always helpful or appropriate . . . .").   Given HMC and KC's lack of forum-related activities, this Court lacks personal jurisdiction over HMC and KC under either analysis.

For purposeful direction, courts apply the *Calder* effects test under which "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Briskin*, 87 F.4th at 412 (citing *Calder v. Jones*, 465 U.S. 783 (1984); *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011)).

To establish purposeful availment, Plaintiffs must establish that HMC and KC "engaged in conduct purposefully directed at [California]." *J McIntyre Mach., Ltd v. Nicastro*, 564 U.S. 873, 886 (2011).

The vast majority of the Subrogation Plaintiffs' allegations going to purposeful direction and availment are wrong.   As set forth in the Baik and Shin Declarations:

- HMC and KC do not design, test, manufacture, or assemble vehicles in California.  Baik Decl. ¶ 21; Shin Decl. ¶ 20.
- HMC and KC do not distribute or sell vehicles in California.  Baik Decl. ¶ 22; Shin Decl. ¶ 21.

7

- HMC and KC do not maintain a sales force in California.  Baik Decl. ¶ 8; Shin Decl. ¶ 8.

- HMC and KC are not registered to do business in California.  Baik Decl. ¶ 10; Shin Decl. ¶ 10.

- HMC and KC do not have an agent for service of process in California.  Baik Decl. ¶ 7; Shin Decl. ¶ 7.

- HMC and KC do not own or lease any real property in California.  Baik Decl. ¶ 9; Shin Decl. ¶ 9.

- HMC and KC do not pay taxes in California.  Baik Decl. ¶ 11; Shin Decl. ¶ 11.

- HMC and KC do not conduct any advertising or marketing activity in California (or the United States generally).  Baik Decl. ¶ 27; Shin Decl. ¶ 25.

- HMC and KC do not target specific marketing at California residents.  Baik Decl. ¶ 27; Shin Decl. ¶ 25.

- HMC and KC do not have any relationship, contractual or otherwise, with independent Hyundai and Kia dealers in the United States, or California in particular.  Baik Decl. ¶ 26; Shin Decl. ¶ 24.

- HMC and KC do not operate any sales or service network for any product in California.  Baik Decl. ¶ 28; Shin Decl. ¶ 26.

- HMC and KC do not issue any warranties to consumers in California, and are not responsible for implementing or carrying out the warranty process from California.  Baik Decl. ¶ 30; Shin Decl. ¶ 28.

- HMC and KC do not send technical service bulletins to dealers regarding work procedures for Hyundai- and Kia-branded products into California.  Baik Decl. ¶ 31; Shin Decl. ¶ 29.  HMC and KC do not mail recall notices to consumers in California related to any alleged safety defects.  Baik Decl. ¶ 31; Shin Decl. ¶ 29.

The demonstrated facts refute the Subrogation Plaintiffs' allegations. It is not true that (1) "HMC conducts substantial business in the State of California" (ACC ¶ 32); (2) "HMC shipped over 7,500 shipments of vehicles and parts through California's ports for delivery and sale to California facilities" (*id.* ¶ 32); (3) "HMC . . . maintains a research and design facility in California and employs thousands of people within" California (*id.* ¶¶ 33, 264); (4) HMC "control[s] details" regarding Hyundai dealer operations in California (or anywhere else in the United States) (*id.* ¶ 34); (5) "KC conducts substantial business in the State of California" (*id.* ¶ 38); (6) "KC initiated over 5,000 shipments of vehicles and parts through California's ports for delivery and sale to California facilities" (*id.* ¶ 38); (7) KC "control[s] various details" regarding Kia dealer operations in California (or anywhere else in the United States) (*id.* ¶ 41); and (8) HMC and KC "promot[e]," "warrant[]," "sell[]," "leas[e]," or "servic[e]" vehicles in California (*id.* ¶ 250).

Without these allegations, the Subrogation Plaintiffs are left with the mere facts that (1) Hyundai and Kia-branded vehicles are sold in California by other entities, and insureds may have had vehicles stolen in California; (2) HMC and KC place vehicles into the stream of commerce, knowing some of those vehicles may end up in California; and (3) HMC and KC operate websites that can be accessed in California. None of these facts support the assertion of specific personal jurisdiction.

**A.      That Hyundai- and Kia-Branded Vehicles Have Been Sold in California and That the Insureds' Vehicles May Have Been Stolen in California Does Not Establish Purposeful Direction or Availment.**

Citing *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021), the Subrogation Plaintiffs allege that "[t]his Court . . . has specific personal jurisdiction over all Defendants as they purposely served the California market for automobiles, and in excess of 20,000 insurance claims have been made

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION
AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

within California due to the failures of Defendants' Vehicles in the State."  ACC ¶ 253.  This argument should be rejected.

The fact that vehicles manufactured by a foreign defendant were sold in the forum state by a domestic subsidiary, and the fact that plaintiffs may have suffered injury related to those vehicles in the forum state, cannot establish personal direction or availment as to that state.  *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) (for specific jurisdiction, "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State") (citation omitted).  The Subrogation Plaintiffs' reliance on *Ford Motor Co.* is misplaced.  There, Ford, an American company, admitted that it "[did] substantial business" in two states by marketing, maintaining a dealer network, and distributing replacement parts to those dealers and independent body shops. 141 S. Ct. at 1028.  The Supreme Court found that because Ford had "systematically served" those states by "advertising, selling, and servicing the model of vehicle" at issue in the lawsuit, it was subject to specific personal jurisdiction in those states.  *Id.* at 1022, 1028.

Here, the facts do not support such a conclusion.  As noted above, HMC and KC do not advertise, sell, or service any vehicles in California.  Baik Decl. ¶¶ 22, 27–28; Shin Decl. ¶¶ 21, 25–26.  HMC and KC sell vehicles in Korea, not California.  It is HMA and KA that advertise and distribute vehicles in California.  And, unlike Ford, HMC and KC have refuted the Subrogation Plaintiffs' allegations that they conduct business in California.  This case is instead similar to two recent cases in which courts found that they lacked personal jurisdiction over foreign automobile manufacturers—*Thornton* and *Ditter*.

In *Thornton*, the court found that it did not have specific personal jurisdiction over BMW AG, a German vehicle manufacturer, even though the plaintiff alleged that "BMW AG [did] business in the United States, including Alabama, as BMW Group, and that BMW Group 'has placed vehicles that it designs, tests, and manufactures into the 'stream of commerce' in Alabama through its relationship

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1   with its five BMW dealers in Alabama,' and has marketed and sold vehicles in

2   Alabama." 439 F. Supp. 3d at 1310. BMW AG submitted a declaration establishing

3   that it designs and manufactures vehicles primarily in Germany (and not in

4   Alabama); sells vehicles in Germany to its North American subsidiary; does not

5   maintain a sales force in Alabama; and does not directly sell or distribute vehicles to

6   dealers or consumers in Alabama. The court found that the plaintiff did not offer

7   evidence showing BMW AG did business as BMW Group, and even if she had, she

8   did not offer evidence that "BMW Group or BMW AG specifically targets Alabama

9   for business, or deliberately engaged in significant activities within the state," to

10  contradict "BMW AG's evidence that it does not maintain a sales force in Alabama

11  or distribute BMW vehicles to dealers in Alabama." *Id.* at 1311. The court

12  concluded that "BMW AG's target of the broader United States market, the notices

13  of recall it sent [to customers in Alabama], and [plaintiff's] unilateral decision to

14  purchase the vehicle in Alabama fail[ed] to demonstrate BMW AG's connection to

15  Alabama in a 'meaningful' way." *Id.* (citation omitted).

16      And again in *Ditter*, a court refused to exercise specific personal jurisdiction

17  over a foreign parent of a subsidiary that distributed vehicles in the United States.

18  There, the plaintiffs alleged that Subaru Corporation—a Japanese vehicle

19  manufacturer—purposefully availed itself of the privilege of conducting business in

20  Colorado because "it is a global business that sells hundreds of thousands of products

21  in the United States and serves a market for its products in Colorado." 2022 WL

22  889102, at *6. They further argued that Subaru Corporation's American

23  subsidiary's "contacts with Colorado may be imputed to Subaru Corporation for

24  jurisdictional purposes." *Id.* The court rejected the plaintiffs' arguments. *Id.*

25      First, it found *Ford Motor Co.* inapposite because, in that case, Ford was

26  "responsible for all aspects of the distribution of its automobiles." *Id.* at *7. In

27  contrast, Subaru Corporation was a foreign manufacturer with an American

28  subsidiary responsible for distribution and advertising in the U.S. The "uncontested

facts establish[ed] that Subaru Corporation does not sell or distribute vehicles to dealers or to the general public in Colorado, design or manufacture vehicles in Colorado, maintain a sales force in Colorado, or direct marketing campaigns at Colorado." *Id.* at *8. Next, the court rejected the argument that the "significant sales of Subarus in the United States" and existence of "Subaru dealers in Colorado" established that Subaru Corporation had sufficient minimum contacts with Colorado, "as distribution and sales of Subaru vehicles in the United States [were] controlled by Subaru of America." *Id.*   Finally, the court rejected the plaintiffs' attempt to impute the subsidiary's contacts to Subaru Corporation because the plaintiffs did not provide evidence showing that Subaru Corporation was "the general agent or alter ego of Subaru of America" or that Subaru Corporation "exercises control over Subaru of America's distribution, marketing, or maintenance efforts in the United States." *Id.* at *10.

*Thornton* and *Ditter* are substantially similar to this case.  Like the defendants in those lawsuits, HMC and KC are foreign vehicle manufacturers that sell vehicles abroad to their domestic subsidiaries that in turn distribute them across the United States.  Baik Decl. ¶¶ 21–22; Shin Decl. ¶¶ 20–21.  They do not maintain a sales force in California, sell vehicles in California, or design or manufacture vehicles in California.  Baik Decl. ¶¶ 8, 21–22; Shin Decl. ¶¶ 8, 20–21.  As these authorities establish, the mere fact that plaintiffs may have suffered injury related to a foreign manufacturer's vehicles in a forum state, without more, cannot establish personal direction or availment as to that state.  *Cf. Briskin*, 87 F.4th at 416 ("[I]t is the defendant's contacts with the forum state, not the plaintiff's, that matter, and it is the defendant's contacts with the state itself, and not persons there, that must drive the inquiry.").[4]

---

[4] And, as further discussed below, plaintiffs cannot impute the contacts of a foreign manufacturer's American distributor to create jurisdiction without evidence of substantial control.

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

**B.      The Subrogation Plaintiffs Cannot Rely on a "Stream-of-Commerce" Theory to Establish Purposeful Direction or Availment.**

The Supreme Court and Ninth Circuit have made clear that "[p]lacing 'a product into the stream of commerce'—even if the defendant is aware 'that the stream of commerce may or will sweep the product into the forum state'—'does not convert the mere act of placing the product into the stream of commerce into an act' of purposeful availment." *LNS Enterprises*, 22 F.4th at 860 (citations omitted); *see also Nicastro*, 564 U.S. at 886 (holding state could not exercise specific jurisdiction over foreign defendant merely because its product was distributed through an American company responsible for selling product nationwide).

Accordingly, although HMC and KC sell vehicles to HMA and KA in the Republic of Korea with the understanding that some of those vehicles will be sold to independent dealers in the United States (*see* Baik Decl. ¶¶ 21–22; Shin Decl. ¶¶ 20–21), that is not enough to find purposeful direction or availment as to California. *See Thornton*, 439 F. Supp. 3d at 1310 (finding that plaintiff's contention that BMW AG "placed vehicles in the stream of commerce knowing that they 'would eventually be found in Alabama' . . . . [was] unavailing"); *Ditter*, 2022 WL 889102, at *5 (finding court lacked personal jurisdiction over Subaru Corporation even though it was undisputed that Subaru Corporation and its distributor "place[d] automobiles into the stream of commerce by targeting Colorado through a network of automobile dealers").

**C.      Operating a Website That is Accessible in California, but Not Targeted at California, Is Not Sufficient to Create Jurisdiction.**

The Subrogation Plaintiffs allege that "HMC promotes on its own website all Hyundai models sold by HMA in the United States and directs U.S. consumers to HMA's website," and similarly that "KC's website promotes Kia branded vehicles sold by KA in the United States." ACC ¶¶ 30, 39. Most importantly, these

13

1  allegations do not relate to California.  But even if the Subrogation Plaintiffs alleged

2  that consumers in California can view the Hyundai and Kia global corporate

3  websites, that would not be enough to show purposeful direction or availment as to

4  California.

5  It has long been clear in the Ninth Circuit that, as here, "the mere existence of

6  a 'passive website'"—*i.e.*, a "universally accessible website where anyone can

7  access information"—does not "render [a] company subject to personal jurisdiction

8  in the absence of other contacts." *LNS Enterprises*, 22 F.4th at 863.  And the Ninth

9  Circuit's recent opinion in *Briskin* provides further support.  At issue there was

10  whether the court had specific personal jurisdiction over the defendants who offered

11  a web-based payment processing platform to merchants nationwide.  87 F.4th at 409.

12  The plaintiff was a California resident who made a purchase from a merchant that

13  used defendants' platform.  He sued the defendants for allegedly violating privacy

14  and unfair competition laws by deliberately concealing the platform's involvement

15  in consumer transactions.  *Id.* at 409–10.

16  The court held that the defendants were not subject to specific jurisdiction in

17  California because they did not expressly aim their suit-related conduct at California.

18  *Id.* at 409.  The court explained: "The fact that a broadly accessible web platform

19  knowingly profits from consumers in the forum state is not sufficient to show that

20  the defendant is expressly aiming its intentional conduct there."  *Id.* at 419.  "[T]o

21  establish the 'something more' needed to demonstrate express aiming in suits against

22  internet platforms," a plaintiff must allege (1) "that the defendant platform has a

23  'forum-specific focus[,]'" (2) "that the defendant is specifically 'appeal[ing] to . . .

24  an audience in a particular state,'" or (3) that the defendant is "'actively target[ing]'

25  the forum state."  *Id.* at 419–20.  Further, courts should consider "the specific nature

26  and structure of the defendant's business matters"—" [a]ctions of third parties that

27  the defendant does not control, even those of the defendant's contractors, tend to be

28  less reflective of the defendant's own express aiming toward the forum because they

14

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION
AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

invite a greater degree of attenuation between the plaintiff's injuries and the defendant's jurisdictional contacts." *Id.* at 420.

Under the reasoning in *Briskin*, HMC and KC are not expressly aiming any conduct at California by operating websites that may be accessible in California (and anywhere in the world). Here, the Subrogation Plaintiffs do not allege that HMC and KC operate a "platform" at all. And the Hyundai and Kia websites do not have a "[California]-specific focus," do not "appeal to an audience" in California, and do not "actively target" California. *Id.* at 419–20 (alterations omitted); *see also, e.g.*, *Underwood v. O'Reilly Auto Parts, Inc.*, No. 21-1766, 2023 WL 1869310, at *6 (D. Nev. Feb. 8, 2023) ("At most, this statement supports the proposition that the Omni Defendants maintain a passive website which targets a broad audience. It does not support the contention that the operation of this website demonstrates that the Omni Defendants engaged in conduct directly targeting Nevadans."). And any purchases of Hyundai- and Kia-branded vehicles in California are not through HMC and KC— such purchases are through "third parties," *i.e.*, independent dealers, that HMC and KC "do[] not control." *Briskin*, 87 F.4th at 420. As such, that consumers in California may access Hyundai and Kia global corporate websites does not demonstrate purposeful direction or availment as to California.

In sum, none of the allegations discussed above satisfy the first prong of the specific jurisdiction test—purposeful direction or availment.

## II. <u>The Subrogation Plaintiffs Do Not Allege Claims Arising From or Related to Contacts by HMC and KC with California Related to This Matter.</u>

### A. **HMC and KC's Filing of Lawsuits in This District Does Not Satisfy the Second Prong of the Specific Jurisdiction Test.**

Even if the Subrogation Plaintiffs could meet their burden on the first prong, they would still need to show that their claims here *arise from* or *are related to* the conduct of HMC and KC in California. *See Bristol-Myers Squibb Co. v. Superior*

15

1  *Court of California*, 582 U.S. 255, 265 (2017) (for specific jurisdiction, "[w]hat is

2  needed . . . is a connection between the forum and the specific claims at issue");

3  *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 927 (2011) (even

4  "continuous activity of some sorts within a state" cannot "support the demand that

5  the corporation be amenable to suits unrelated to that activity") (citation omitted).

6  They cannot meet this burden, either.

7         The Subrogation Plaintiffs offer no facts showing HMC and KC engaged in

8  any conduct *in California* other than the fact HMC and KC have each filed lawsuits

9  in this District.  ACC ¶¶ 251–52.  But even if that allegation were sufficient to satisfy

10 the first prong of the specific jurisdiction test, it does not satisfy the second prong,

11 as the Subrogation Plaintiffs' claims do not arise out of or relate to those lawsuits.

12 *See LNS Enterprises*, 22 F.4th at 859.

13        Courts consistently find that a defendant's filing of unrelated lawsuits in the

14 forum at issue is insufficient to establish specific jurisdiction over that defendant.

15 *See, e.g.*, *Worldwide Subsidy Grp., LLC v. Fed'n Int'l de Football Ass'n*, No. 14-13,

16 2014 WL 12631652, at *11 (C.D. Cal. June 9, 2014) ("The lawsuit FIFA earlier filed

17 in this district—which alleged the manufacture and sale of goods and merchandise

18 infringing its copyrights and trademarks—is not related in any way to WSG's

19 claims. Consequently, it will not support the exercise of specific jurisdiction over

20 FIFA in this action."); *Notorious B.I.G. LLC v. Hutson*, No. 14-24, 2014 WL

21 12589626, at *4–5 (C.D. Cal. July 3, 2014) (finding the fact that defendant had

22 previously filed a lawsuit in the same district did not confer specific jurisdiction for

23 purposes of the instant lawsuit because prior lawsuit did not cause the instant

24 litigation); *Lynn v. Stross*, No. 19-397, 2019 WL 6481795, at *4 (D. Or. Oct. 7,

25 2019), *report and recommendation adopted*, 2019 WL 6467817 (D. Or. Nov. 30,

26 2019) ("Instituting a single separate civil action against an unrelated third party is

27 likely insufficient to establish purposeful availment."); *Brooks v. Y.Y.G.M. SA*, No.

28 21-78, 2021 WL 5450232, at *4 (E.D. Cal. Nov. 22, 2021) ("Defendant's prior

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION
AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

complaint does not support a finding that Defendant purposefully directed its actions towards California such that specific jurisdiction is appropriate."); *Stone v. Advance Am., Cash Advance Centers, Inc.*, No. 08-1549, 2009 WL 765665, at *7 (S.D. Cal. Mar. 20, 2009), *on reconsideration*, 2009 WL 10671553 (S.D. Cal. July 1, 2009) (finding there was no personal jurisdiction even though defendants had filed more than 50 lawsuits in the state because plaintiff did "not allege or submit any evidence to demonstrate that these lawsuits had any relation to Plaintiff or any other members of the class, or that these lawsuits had any relation to the claims asserted in the FAC").[5]

Accordingly, because the Subrogation Plaintiffs do not even contend that HMC and KC's prior lawsuits in this District are related to their claims *in this case*, those lawsuits cannot serve as a basis for exercising specific jurisdiction here.

### B. The Existence of HMC and KC's Global Corporate Websites Does Not Satisfy the Second Prong of the Specific Jurisdiction Test.

As discussed above, the fact that HMC and KC operate global corporate websites does not satisfy the first prong. But even if it did, the Subrogation Plaintiffs do not allege that they or their insureds relied on or viewed those websites, thereby failing the second prong. *See LNS Enterprises*, 22 F.4th at 863 (affirming dismissal for lack of jurisdiction where, even if plaintiff could have established defendant's contacts with forum, plaintiff failed to show injuries arose out of or related to those contacts).

---

[5] Defendants also did not consent to this Court's jurisdiction by filing unrelated lawsuits, as those lawsuits did not "concern[] the same transaction or occurrence" as this matter. *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 834 (9th Cir. 2005); *see also Clinton v. Boladian*, No. 11-10062, 2013 WL 12126107, at *1 (C.D. Cal. May 2, 2013) ("[A] party may only impliedly consent to jurisdiction by bringing a separate action based on the same transaction or arising out of the same nucleus of operative facts.").

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1    **III.    The Subrogation Plaintiffs Cannot Impute Contacts to HMC and KC to**
2    **Establish Specific Personal Jurisdiction.**

3    Finally, the Subrogation Plaintiffs cannot satisfy either of the first two prongs
4    by imputing any contacts of HMA, KA, or HATCI (or independent dealers) to HMC
5    and KC.  The ACC includes no facts supporting an agency or alter ego relationship
6    as a basis for specific personal jurisdiction.

7    As an initial matter, it is not clear that an agency relationship can create
8    specific personal jurisdiction over a non-resident parent corporation.  It is well-
9    established that "[t]he existence of a parent-subsidiary relationship is insufficient,
10   on its own, to justify imputing one entity's contacts with a forum state to another for
11   the purpose of establishing personal jurisdiction."  *Ranza v. Nike, Inc.*, 793 F.3d
12   1059, 1070 (9th Cir. 2015).  Consistent with that, in *Daimler*, 571 U.S. at 134, the
13   Supreme Court rejected the Ninth Circuit's prior agency standard for imputing
14   contacts for the purpose of establishing *general* personal jurisdiction.  *Williams v.*
15   *Yamaha Motor Co.*, 851 F.3d 1015, 1023 (9th Cir. 2017).  In *Williams*, the Ninth
16   Circuit found that the Supreme Court's rejection of that agency standard would apply
17   "with equal force regardless of whether the standard is used to establish general or
18   specific jurisdiction."  *Id.* at 1024.

19   Nonetheless, assuming, without deciding, "that some standard of agency
20   continues to be 'relevant to the existence of specific jurisdiction,'" the Ninth Circuit
21   in *Williams* found that an agency theory was insufficient to support jurisdiction over
22   a foreign parent with an American subsidiary.  *Id.* (quoting *Daimler*, 571 U.S. at 135
23   n.13) (emphasis omitted).

24   Even assuming an agency relationship could be the basis for a court's exercise
25   of specific personal jurisdiction, the Subrogation Plaintiffs fail to establish such a
26   relationship between HMC and KC and their subsidiaries (or the independent
27   dealers).  "Fundamental tenets of agency theory require that an agent 'act on the
28   principal's behalf and subject to the principal's control.'"  *Williams*, 851 F.3d at

18

1024–25.  Put another way, "[a]gency requires that the principal maintain control over the agent's actions."  *Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1232 (9th Cir. 2013).  Given the requirements that the defendant "purposefully direct his activities" at the forum or "perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum," and that the plaintiff's claims relate to the defendant's forum-related activities, for an agency relationship to establish specific personal jurisdiction, a plaintiff must show that the parent controlled its subsidiary and directed the actions of the subsidiary in conduct targeted at the forum connected to the claims in the case.  *See Wood v. N. Am. Van Lines, Inc.*, No. 20-2092, 2021 WL 3124155, at *3–4 (C.D. Cal. July 22, 2021) (finding no specific personal jurisdiction under agency theory where plaintiff failed to allege or show that principal "substantially controlled [agent's] activities relevant to th[e] dispute").

"[N]ormal oversight of a parent over a subsidiary" is not enough.  *In re California Gasoline Spot Mkt. Antitrust Litig.*, No. 20-3131, 2021 WL 4461199, at *2 (N.D. Cal. Sept. 29, 2021); *see also Long v. Gamo Outdoor S.L.U.*, No. 22-670, 2023 WL 2016658, at *4 (D. Nev. Feb. 1, 2023) (finding no agency relationship for purposes of establishing specific personal jurisdiction where parent "exercise[d] the typical amount of control expected in a parent-subsidiary relationship").  The Ninth Circuit made that clear in *Williams*.  There, as here, the foreign defendant owned all of the domestic subsidiary's stock.  Still, the court declined to exercise jurisdiction over the foreign defendant, where, as here, there were no factual assertions regarding the parent's "control" over the subsidiary.  851 F.3d at 1025 n.5.

*In re California Gasoline Spot Mkt. Antitrust Litig.* is instructive.  There, the court found that it did not have specific personal jurisdiction based on an agency relationship because the plaintiff did not show that the subsidiary was "doing the bidding of the parent."  2021 WL 4461199, at *2.  In so holding, the court rejected several arguments the plaintiffs advanced to demonstrate control.  First, the court found that "closely monitoring" the subsidiary's trading activities and engaging in

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

1  "risk management" did not constitute sufficient "control" for establishing an agency

2  relationship.  *Id.*  Second, the court found that even "a parent corporation's

3  involvement in some hiring decisions does not show that it directs the subsidiary's

4  day-to-day operations." *Id.* at *3.  Finally, the court held that "[b]eing concerned

5  with profitability and insisting that a subsidiary follow corporate-wide policies"

6  were also insufficient.  *Id.*  Ultimately, the court explained that finding jurisdiction

7  in these circumstances would mean that "parent corporations cannot act as a parent

8  corporation without becoming subject to personal jurisdiction based on a

9  subsidiary's conduct," which would be inconsistent with *Daimler* and *Williams*. *Id.*

10 at *5.

11        To the extent the Subrogation Plaintiffs seek to impute the actions of HMA

12 and KA to HMC and KC via an agency theory, they do not come close to making

13 the required factual showing.  First, the Subrogation Plaintiffs allege that HMC states

14 in promotional materials that it "help[s] [its] overseas subsidiaries, sales

15 corporations, and newly established enterprises in particular to establish the

16 direction of their customer service strategies."  ACC ¶ 31.  This is akin to the

17 "concern[] with profitability" allegations the court rejected in *In re California*

18 *Gasoline Spot Mkt. Antitrust Litig.*, 2021 WL 4461199, at *2.  Similarly, the

19 Subrogation Plaintiffs allege that HMC and KC exercise "control" over "various

20 details" of dealership operations through "various written agreements." ACC ¶¶ 34,

21 41.  In the face of HMC and KC's evidence that they do not have any relationship

22 with U.S. dealers, these bare statements cannot support a finding of specific

23 jurisdiction. *See Heber v. Toyota Motor Sales U.S.A., Inc.*, No. 16-1525, 2018 WL

24 3104612, at *3 (C.D. Cal. June 11, 2018), *overruled on other grounds by Heber v.*

25 *Toyota Motors Sales U.S.A., Inc.*, 823 F. App'x 512 (9th Cir. 2020) (dismissing

26 claims against Toyota Japan for lack of personal jurisdiction and rejecting argument

27 that Toyota Japan's control over U.S. subsidiary was "implicit," where evidence

28

1  showed the foreign parent did "not control the distribution of vehicles [in the] United

2  States").

3      Next, the Subrogation Plaintiffs allege that HMC and KC "availed themselves

4  of the automobile and automobile-related products' markets in California by

5  extensively promoting, warranting, selling, leasing and servicing, directly and

6  *indirectly*, vehicles (including the Class Vehicles) and related automobile products

7  in California." ACC ¶ 250 (emphasis added).  Again, HMC and KC do not take such

8  direct actions, and vague allegations of "indirect[]" actions are insufficient to

9  establish control over the subsidiaries related to the allegations in this matter.  *See*

10  *Williams*, 851 F.3d at 1025 n.5 (courts need not credit "conclusory legal statement[s]

11  unsupported by any factual assertion regarding [parent's] control over

12  [subsidiary]").

13      Further, the Subrogation Plaintiffs allege that "HMC and HMA employ

14  approximately 5,000 people" at HMA's "facilities," including those in California,

15  and "an additional 20,000 employees at U.S. dealerships." ACC ¶ 264.  With respect

16  to HMC, those allegations are simply untrue.  *See* Baik Decl. ¶¶ 22, 24, 26.

17      And the vague allegation that "HATCI serves as an 'authorized

18  representative' for HMC, HMA, KC, and KA when dealing with NHTSA in

19  connection with various Safety Standards" also does not establish HMC or KC

20  controlled HATCI in conduct related to the allegations in this case.  *See Est. of Daher*

21  *v. LSH Co.*, 575 F. Supp. 3d 1231, 1238 (C.D. Cal. 2021) (finding no specific

22  personal jurisdiction under agency theory where plaintiff "alleged that [defendant]

23  acted through agents, . . . but there were no allegations as to whether [defendant]

24  either exercised control over its agents or had the right to substantially control its

25  agents").

26      Accordingly, even assuming an agency relationship could create specific

27  personal jurisdiction, the Subrogation Plaintiffs cannot establish that HMC and KC

28  controlled either their subsidiaries or dealerships in California (or the United States

21

generally) to create such a relationship.   They cannot show that HMC or KC controlled HMA and KA in conduct directed or aimed at California that is connected to the claims in this case.[6]

## CONCLUSION

For the foregoing reasons, HMC and KC respectfully request that the Court grant this Motion and dismiss the Subrogation Plaintiffs' claims against HMC and KC without leave to amend.

Dated:  February 23, 2024                    JENNER & BLOCK LLP

                              By:   */s/ Peter J. Brennan*
                                    Kate T. Spelman
                                    Alice S. Kim
                                    Madeline P. Skitzki
                                    Jenna L. Conwisar
                                    JENNER & BLOCK LLP
                                    515 South Flower Street, Suite 3300
                                    Los Angeles, CA  90071-2246
                                    Telephone:  +1 213 239 5100
                                    Facsimile:   +1 213 239 5199
                                    KSpelman@jenner.com
                                    AKim@jenner.com
                                    MSkitzki@jenner.com
                                    JConwisar@jenner.com

                                    Peter J. Brennan (*pro hac vice*)
                                    Michael T. Brody (*pro hac vice*)
                                    JENNER & BLOCK LLP
                                    353 North Clark Street
                                    Chicago, IL  60654-3456
                                    Telephone:  +1 312 222 9350
                                    Facsimile:   +1 312 527 0484s
                                    PBrennan@jenner.com
                                    MBrody@jenner.com

                                    *Attorneys for Defendants*

---

[6] The Subrogation Plaintiffs also cannot establish that HMA and KA are "alter egos" for purposes of establishing specific personal jurisdiction.  They do not even attempt to allege that these entities are "not really separate" from each other, which would require showing "(1) that there is such unity of interest and ownership that the separate personalities of the two entities no longer exist and (2) that failure to disregard their separate identities would result in fraud or injustice."  *Williams*, 851 F.3d at 1021.

22

HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendants Hyundai Motor Company and Kia Corporation certify this brief contains 6,963 words, which complies with the word limit of L.R. 11-6.1.

Dated:  February 23, 2024          JENNER & BLOCK LLP

                                           By:   */s/ Peter J. Brennan*
                                                 Peter J. Brennan

                                                 *Attorneys for Defendants*