QUINN EMANUEL URQUHART & SULLIVAN LLP
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendants Hyundai Motor
America and Kia America, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br><br>This Document Relates to:<br><br>*City of Chicago v. Kia America, Inc., Kia Corporation, Hyundai Motor America, and Hyundai Motor Company* | Case No. 8:22-ML-3052-JVS(KESx)<br><br>The Honorable James V. Selna<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT OF PLAINTIFF CITY OF CHICAGO**<br><br>Hearing Date:  March 18, 2024<br>Hearing Time: 1:30 pm |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ............................................................................. 1

ARGUMENT ......................................................................................................... 2

I.     ILLINOIS LAW HAS NEVER RECOGNIZED PLAINTIFF'S ASSERTED PUBLIC RIGHT ............................................................. 2

II.    PLAINTIFF'S PUBLIC NUISANCE CLAIM DOES NOT INVOLVE THE REQUISITE USE OF LAND OR A RELEVANT STATUTORY VIOLATION ....................................................................................... 4

III.   UNDER ILLINOIS LAW, DEFENDANTS OWE NO DUTY TO PLAINTIFF TO GUARD AGAINST THIRD-PARTY THEFT AND ILLEGAL USE OF FEDERALLY-COMPLIANT AUTOMOBILES ........... 5

IV.   FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS SEEKING TO IMPOSE A DUTY TO INSTALL IMMOBILIZERS ....................................... 7

V.    PLAINTIFF FAILS TO STATE A CLAIM FOR UNFAIR PRACTICES ....................................................................................... 8

     A.    Defendants' Conduct Did Not Offend Public Policy. ........................... 8

     B.    Defendants' Conduct Was Not Immoral, Unethical, Oppressive, or Unscrupulous. ........................................................................... 9

     C.    Plaintiff Fails to Adequately Plead That Defendants' Conduct Caused Significant Injury to Consumers. ............................................... 10

VI.   PLAINTIFF FAILS TO STATE A CLAIM FOR DECEPTIVE PRACTICES ................................................................................... 11

     A.    Plaintiff Fails to Adequately Plead Deceptive Practices. ..................... 11

     B.    Defendants' Representations Amount to Puffery. ................................ 12

VII.  DEFENDANTS' STATEMENTS ARE TRUE, NOT MISLEADING, AND UNRELATED TO ANTI-THEFT TECHNOLOGY. ........................... 13

VIII. PLAINTIFF'S CLAIM UNDER MCC § 1-20-020 ALSO FAILS ............... 15

IX.   PLAINTIFF'S REQUESTS FOR ECONOMIC DAMAGES ARE FORECLOSED UNDER ILLINOIS LAW ................................................. 18

CONCLUSION ................................................................................................. 19

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4

5

*Adams v. N. Illinois Gas Co.*,
   809 N.E.2d 1248 (Ill. 2004)........................................................................ 15

6

7

*Ash v. PSP Distrib., LLC*,
   226 N.E.3d 748 (Ill. App. Ct. 2023) ................................................... 11, 14

8

9

*Barbara's Sales, Inc. v. Intel Corp.*,
   879 N.E.2d 910 (Ill. 2007)......................................................................... 12

10

*Butitta v. First Mortgage Corp.*,
   578 N.E.2d 116 (Ill. App. Ct. 1991) ......................................................... 11

11

12

*Car Carriers, Inc. v. Ford Motor Co.*,
   745 F.2d 1101 (7th Cir. 1984) ..................................................................... 7

13

14

*City of Chicago v. Beretta U.S.A. Corp.*,
   821 N.E.2d 1099 (Ill. 2004)..........................................................2, 3, 4, 5, 6, 19

15

16

*City of Chicago v. BP P.L.C. et al.*,
   No. 2024CH01024 (Ill. Cir. Ct. Feb. 20, 2024) ....................................... 15

17

18

*City of Chicago v. Monsanto Co. et al.*,
   No. 2023L009542 (Ill. Cir. Ct. Sept. 19, 2023) ....................................... 15

19

20

*City of Chicago v. Purdue Pharma*,
   211 F.Supp. 3d 1058 (N.D. Ill. 2016)............................................8, 9, 15, 16

21

22

*City of Chicago v. Purdue Pharma L.P.*,
   2021 WL 1208971 (N.D. Ill. Mar. 31, 2021) ......................................5, 8, 10, 16

23

24

*Connick v. Suzuki Motor Co.*,
   275 Ill. App. 3d 705 (1995) ....................................................................... 12

25

*Cosmetique, Inc. v. ValueClick, Inc.*,
   753 F. Supp. 2d 716 (N.D. Ill. 2010)................................................... 11, 12

26

27

*Elder v. Coronet Ins. Co.*,
   558 N.E.2d 1312 (Ill. App. Ct. 1990) ......................................................... 8

28

*Fast Trak Inv. Co., LLC v. Sax*,
    962 F.3d 455 (9th Cir. 2020) ............................................................................ 3

*Frenzel v. Aliphcom*,
    76 F. Supp. 3d 999 (N.D. Cal. 2014)............................................................... 7

*FTC v. IFC*,
    543 F.Supp. 2d 925 (N.D. Ill. 2008) ............................................................... 9

*FTC v. Walmart Inc.*,
    664 F.Supp. 3d 808 (N.D. Ill. 2023) ............................................................... 9

*Hatter v. Dryer*,
    154 F. Supp. 3d 940 (C.D. Cal. 2015).............................................................. 7

*Lee v. City of L.A.*,
    250 F.3d 668 (9th Cir. 2001) ............................................................................ 7

*Maksimovic v. Tsogalis*,
    687 N.E.2d 21 (Ill. 1997)................................................................................. 15

*In re Nat'l Prescription Opiate Litig.*,
    2019 WL 3737023 (N.D. Ohio June 13, 2019) ............................................ 18

*In re Nat'l Prescription Opiate Litig.*,
    458 F. Supp. 3d 665 (N.D. Ohio 2020) ......................................................... 18

*Pappas v. Pella Corp.*,
    844 N.E. 2d 995 (Ill. App. Ct. 2006) ............................................................ 13

*Phillips v. DePaul University*,
    19 N.E.3d 1019 (Ill. Ct. App. 2014) .............................................................. 14

*Tapia Carmona v. Cnty. of San Mateo*,
    2019 WL 4345973 (N.D. Cal. 2019).............................................................. 18

*Truck Ins. Exch. v. D'Orazio*,
    2021 WL 1206557 (Ill. App. Ct. Mar. 30, 2021) ........................................ 12

*Warren v. LeMay*,
    491 N.E.2d 464 (Ill. App. Ct. 1986)............................................................... 11

**Statutes/Rules**

Federal Trade Commission Act Section 5(a) .......................................................... 9

Federal Rule of Civil Procedure 9(b) ................................................................ 10, 11

Federal Rule of Civil Procedure 12(b)(6)................................................................. 7

# **PRELIMINARY STATEMENT**

Plaintiff City of Chicago's ("Plaintiff" or "City") opposition asks this Court to overturn 20 years of settled Illinois law to pin liability for the acts of third-party criminals on Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") ("Defendants").  The Court should reject Plaintiff's misguided overreach for the following reasons:

*First*, Plaintiff can identify no Illinois case that has *ever* recognized a legally cognizable right to be free from the threat of illegal conduct by others;

*Second*, Plaintiff offers no authority supporting the extension of Illinois public nuisance law beyond conduct involving the use of land or violation of a statute defining the conduct as a public nuisance (and it is undisputed that neither is present here);

*Third*, Plaintiff seeks an unprecedented expansion of the duty of care owed by commercial enterprises, which the Illinois Supreme Court has expressly rejected;

*Fourth*, Plaintiff's claims are preempted by federal law because Plaintiff here explicitly seeks to mandate installation of immobilizers, which is preempted by federal regulation;

*Fifth*, Plaintiff fails to adequately plead that Defendants' conduct amounts to unfair practices, as it still has identified no specific public policy that Defendants' purported conduct offends; fails to plead that consumers had no choice but to purchase the vehicles at issue; and fails to link Defendants' alleged conduct to the alleged injury to consumers;

*Sixth*, Plaintiff fails to adequately plead deceptive practice claims, because they do not satisfy the particularity requirements of Rule 9(b), do not adequately allege materiality or intent, and because the representations constitute mere puffery;

*Seventh*, relatedly, Plaintiff's unfair and deceptive trade practices claims necessarily fail because, as Plaintiff fails to dispute, Defendants' statements are true;

*Eighth*, contrary to Plaintiff's assertion, MCC § 1-20-020 does *not* permit recovery for violations of state common law, and Plaintiff has cited no case in which the ordinance was applied in the manner Plaintiff seeks; and

*Ninth*, recovery is similarly barred under the municipal cost recovery and economic loss rules, which foreclose damages in tort and reaffirm there is no basis for relief.

The first amended complaint should be dismissed without leave to amend.

**ARGUMENT**

## I.   ILLINOIS LAW HAS NEVER RECOGNIZED PLAINTIFF'S ASSERTED PUBLIC RIGHT

Plaintiff's public nuisance claim relies on the existence of a "right to be free from unreasonable 'interference with the peaceful use of public streets.'"  Opp. 11. But the Illinois Supreme Court clearly found "no authority for the unprecedented expansion of the concept of public rights to encompass [this] right." *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116 (Ill. 2004) (rejecting a "public right to safe passage on the highways" or "to be free from the threat that other drivers may defy [] laws"); *see also* Mot. 5–6.

Plaintiff attempts to distinguish *Beretta* by arguing that Defendants (i) sold "defective" cars in Chicago, and (ii) misrepresented the cars' safety in Chicago.  Opp. 11 (citing FAC ¶¶ 66–83).  As an initial matter, the FAC fails to even make the first allegation, nor does the FAC allege that Chicago consumers were exposed to the three alleged misrepresentations that the FAC identifies, *see* FAC ¶¶ 25–28, 18–20, and Plaintiff cannot use its Opposition brief to amend its AC. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) ("When the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), review is limited to the complaint.") (cleaned up); *Hatter v. Dryer*, 154 F. Supp. 3d 940, 943 n.2 (C.D. Cal. 2015) (refusing to consider additional allegations in opposition to motion to dismiss that were not pleaded in the complaint); *Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal.

2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (*citing Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984)).

In any event, there is no exception under *Beretta* where the sale of the product at issue occurred in Chicago, or where the alleged misrepresentations occurred in Chicago.  Nor did the *Beretta* court premise its analysis of the public right on the presence or absence of a "defect"—nor could it, as the public right analysis looks at the nature of the right invaded, not the defendant's level of fault.  Rather, the *Beretta* court's discussion of any alleged "defect" was in the context of whether the defendant's conduct represented an "unreasonable interference"—not whether a public right existed.  *Beretta*, 321 N.E.2d 377-78. The Illinois Supreme Court's holding that what Chicago alleges would be an "unprecedented expansion of the concept of public rights" is the law of the State of Illinois, and this Court should decline Plaintiff's invitation to make new Illinois state law.

Further, both of the allegations intended by Plaintiff to escape the *Beretta* holding are legally insufficient to do so.  First, Plaintiff cannot plausibly allege that the subject vehicles are "defective" in the face of NHTSA's statement that "NHTSA has not determined that this issue constitutes either a safety defect or noncompliance . . ." *See* RJN Ex. 2.  The design, manufacture, and distribution of federally compliant vehicles does not constitute "unlawful conduct in Chicago (or anywhere else)."  Opp. 11.  Second, Plaintiff has not sufficiently alleged any actionable misrepresentations in marketing, Mot. 13–18, *infra* Sections V–VI, and any argument that Defendants' alleged design or marketing of the vehicles interferes with the "peaceful use of public streets"—distinct from the theft or illegal use of those vehicles—strains credulity.

Confronting binding Illinois law vitiating its claim, Plaintiff's Opposition urges this Court to rely on its own prior decision interpreting and applying *other* states' laws.  *See* Opp. 11–12.  Illinois state law was not at issue in the Consolidated Governmental Entities Complaint.  In assessing this City's claims, this Court for the

1    first time is "predicting how [Illinois's] highest court would decide the case." *Fast*
2    *Trak Inv. Co., LLC v. Sax*, 962 F.3d 455, 465 (9th Cir. 2020).  The Illinois Supreme
3    Court's discussion in *Beretta* makes clear that Court would dismiss the City's claims
4    here, as should this Court.

5    **II.    PLAINTIFF'S PUBLIC NUISANCE CLAIM DOES NOT INVOLVE**
6    **THE REQUISITE USE OF LAND OR A RELEVANT STATUTORY**
7    **VIOLATION**

8    Plaintiff's Opposition does not contend that its public nuisance claim involves
9    the use of land, *see* Opp. 12-15, as *Beretta* would mandate.  *See Beretta*, 821 N.E.2d
10   at 1117 (the Illinois Supreme Court "found no Illinois case in which a public nuisance
11   was found in the absence of" either "the defendant's conduct in creating the public
12   nuisance involved the defendant's use of land, or the conduct at issue was in violation
13   of a statute or ordinance").

14   Conceding as it must that there is no use of land by Defendants here, Plaintiff's
15   Opposition turns toward allegations regarding Defendants' marketing activity as
16   supplying the alternative "violation of a statute or ordinance" necessary to constitute
17   a public nuisance under Illinois law, *see* Opp. 12:6-13, 13:14-23, but those allegations
18   are insufficient on their face.  The *Beretta* court held that a public nuisance may be
19   found where there were "legislative declaration[s] ***that certain other conditions***
20   ***[other than use of land] constitute nuisances*.**  *Beretta*, 821 N.E.2d at 1120
21   (emphasis added).  But Plaintiff's allegations do not involve land use, and none of the
22   ordinances Plaintiff relies on here contains the requisite legislative declaration.  *See*
23   MCC §§ 4-276-470 & 2-25-090 (neither declare a violation of the ordinances to be a
24   public nuisance).[1]   Removing all doubt, even assuming *arguendo* the required
25   legislative declaration had been made (it was not), Plaintiff's allegations are
26
27   _____
     [1]   The irony that the City Council of Plaintiff City of Chicago failed to include the
28   requisite legislative declaration in these ordinances, is apparently lost on Plaintiff.

1  insufficient to state a claim under those ordinances, so the public nuisance claim falls

2  away of its own weight.  Mot. 13–18; *infra* Sections V–VI.

3  　　　Illinois courts have never found a public nuisance in the absence of the use of

4  land, or a violation of a statute containing a legislative declaration that failure to

5  comply constitutes a public nuisance, and Plaintiff fails to sustain its burden that the

6  Illinois Supreme Court would decide otherwise.[2]

7  **III.   UNDER ILLINOIS LAW, DEFENDANTS OWE NO DUTY TO**

8  **PLAINTIFF TO GUARD AGAINST THIRD-PARTY THEFT AND**

9  **ILLEGAL USE OF FEDERALLY-COMPLIANT AUTOMOBILES**

10  　　　Plaintiff urges this Court to rely on its prior decision interpreting and applying

11  *other* states' laws regarding the existence of a duty, and hold that Defendants owed a

12  duty to Chicago to guard against third parties' theft and criminal use of federally

13  compliant automobiles under *Illinois* law.  *See* Opp. 12–14.  But Illinois law was not

14  before the Court in its scrutiny of the GCEG, and on this motion this Court's mission

15  is to apply Illinois law to Chicago's claims.  The Illinois Supreme Court held in

16  *Beretta* that there is no duty to the City to prevent third parties' criminal misuse of

17  legal products, based on four public policy factors.  *Beretta*, 821 N.E.2d at 1126.  That

18  holding is on all fours here, Mot. 8, and other states' laws are irrelevant.

19  　　　Plaintiff again attempts to distinguish *Beretta* (Opp. 13), now by arguing that

20  Defendants "unlawfully marketed" the stolen vehicles, citing *City of Chicago v.*

21  *Purdue Pharma L.P.*, 2021 WL 1208971 (N.D. Ill. Mar. 31, 2021)—a deceptive

22  marketing practices case involving neither public nuisance nor negligence claims.

23

24  [2]  Plaintiff seemingly implies it can plead around this fundamental flaw by alleging

25  Defendants were negligent and breached some common law duty.  *See* Opp. 12–14.
    Plaintiff's arguments regarding duty and negligence are addressed separately below.

26  *Infra* Section III.  Plaintiff's proposal would create a new third category of public
    nuisance under Illinois law, beyond the use of land or a legislative declaration of

27  public nuisance.  There is no reason to think the Illinois Supreme Court would oblige

28  Plaintiff by making new law in this way, so this Court should decline to do so.

And unlike the alleged unlawful marketing in *Purdue*—where the marketing campaign was a proximate cause of the opioid epidemic, 2021 WL 1208971 at *11-12. Here, Plaintiffs allege no nexus between Defendants' marketing activity here and the recent wave of theft promoted and boasted of in videos on social media platforms. Plaintiff's allegations are also inadequate to support a claim challenging Defendants' marketing statements, and therefore cannot form the basis of such a duty here in any event. Mot. 13–18; *infra* Sections V–VI.

Plaintiff then asserts, without any support, that this Court should find a duty on public policy grounds because imposing alterations on Defendants' business practices here would involve no "immense burden." Opp. 14. If Plaintiff refers only to the rolling out of the software update, or use of engine immobilizers in new cars distributed in the U.S. moving forward, that is already being done. *See* RJN Ex. 5 ("Hyundais built after November 2021 and Kias built in 2022 have engine immobilizers"). But Plaintiff entirely fails to appreciate the "immense burden" involved in "installing engine immobilizers" *post hoc* in some 9 million vehicles that were *already* designed, *already* manufactured, and *already* sold *without* that technology, and which have been driven by consumers for the better part of a decade. Further, "installing engine immobilizers" is far from the only burden that such a duty would impose—Plaintiff's claims would require automakers to envision and predict potential third-party criminal operations up to a decade into the future (regardless how unprecedented they might be).

Further, despite Plaintiff's conclusory argument otherwise (Opp. 14–15), finding a common law duty would encroach on the role of the legislature, contrary to *Beretta*. *See Beretta*, 821 N.E.2d 1121 ("We are reluctant to interfere in the lawmaking process in the manner suggested by plaintiffs, especially when the product at issue is already so heavily regulated by both the state and federal governments"). As in *Beretta*, the industry here is heavily regulated at the federal and state level. Such policy determinations are best reserved for legislatures.

Plaintiff's negligence claim, and public nuisance claim premised on negligent conduct fail under Illinois law for lack of any duty owed to Plaintiff, and should be dismissed.

## IV.   FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS SEEKING TO IMPOSE A DUTY TO INSTALL IMMOBILIZERS

Plaintiff does not dispute that imposition of a duty to install immobilizers would be preempted under federal law.  *See* Opp. 19–20.

Instead, Plaintiff again seeks to invoke this Court's prior decision regarding the Consolidated Governmental Entities Complaint ("CGEC"), in which this Court declined to dismiss other GE Plaintiffs' claims on the basis of preemption, finding allegations in the CGEC that "use broad language to describe what would have been permissible conduct by Defendants."  Dkt. 270 at 6; *see also* Opp. 19–20.  But the FAC here, drafted by different counsel on behalf of a different Plaintiff, includes no such broad language.  Plaintiff urges this Court (Opp. 19–20) to ignore the many statements in the FAC asserting in no uncertain terms a duty to install engine immobilizers, *see*, *e.g.*, FAC ¶¶ 67– 73, 76–82, 85–95, and instead focus on the phrases "often simple" and "technologies" appearing in an introductory paragraph, *id.* ¶ 2.  But from the first mention of engine immobilizers in the very next paragraph (*id.* ¶ 3), the FAC makes it abundantly clear that the only "technologies" Plaintiff seeks to require are engine immobilizers.

Moreover, to the extent Plaintiff is now attempting to rewrite the FAC by weaving into its Opposition an *entirely new* allegation—that Defendants' vehicles lacked *any* anti-theft technology, *see* Opp. 3 ("Defendants not only failed to install engine immobilizers ***or any equally effective anti-theft technology*** in the Defective Vehicles. . . "), *id.* ("Although the omission of engine immobilizers ***or an equivalent anti-theft device*** from the Defective Vehicles saved Defendants money in the short run . . .")—again, this effort is wholly improper.  *See Lee*, 250 F.3d 668 at ("When the legal sufficiency of a complaint's allegations is tested by a motion under Rule

12(b)(6), review is limited to the complaint.") (cleaned up); *Hatter*, 154 F. Supp. 3d at 943 n.2 (refusing to consider additional allegations in opposition to motion to dismiss that were not pleaded in the complaint); *Frenzel*, 76 F. Supp. 3d at 1009 ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Because the FAC, unlike the CGEC, indisputably seeks to impose a requirement to install engine immobilizers specifically, Plaintiffs' claims are preempted on their face and should be dismissed.

## V.     PLAINTIFF FAILS TO STATE A CLAIM FOR UNFAIR PRACTICES

Plaintiff's claim for unfair practices under MCC § 2-25-090 also fails, because Plaintiff failed to allege the practice "(1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) causes substantial injury to consumers." *City of Chicago v. Purdue Pharma*, 211 F.Supp. 3d 1058, 1074 (N.D. Ill. 2016).

### A.     Defendants' Conduct Did Not Offend Public Policy.

A practice "offends public policy" under Section 2-25-090 only if it "violates a standard of conduct contained in an existing statute or common-law doctrine that typically applies to such a situation," and the existence of such a public policy should not be inferred. *Purdue*, 211 F.Supp. 3d at 1074–75; Mot. 15. *Elder v. Coronet Ins. Co.*, 558 N.E.2d 1312, 1316 (Ill. App. Ct. 1990), cited by Plaintiff (Opp. 9–10), is not to the contrary. In *Elder*, the plaintiff alleged that defendants committed an unfair practice contrary to public policy by denying insurance claims on the basis of polygraph test results. In determining that there was a public policy against that practice, the court pointed to two separate regulations promulgated by the Illinois Department of Insurance prohibiting an insurer from requiring an insured to submit to a polygraph test; two Illinois statutes prohibiting a party from using a polygraph test in civil or criminal proceedings; judicial decisions by Illinois courts barring polygraph test results from administrative proceedings; and federal law making it unlawful for employers to require polygraph tests from employees. *Id.* at 1316.

Here, Plaintiff alleges vaguely that "[r]egulators have long articulated a public policy that automobiles should not be unreasonably susceptible to theft."  Opp. 10; *see also* FAC ¶ 89 (alleging this public policy "has been recognized by the NHTSA since the promulgation of the FMVSS").  However, in stark contrast to *Elder*, Plaintiff fails to identify *any* specific policy, regulation, or statute (from NHTSA or otherwise) that purportedly requires immobilizers.  Indeed, the only regulation Plaintiff mentions at all is FMVSS 114, FAC ¶ 43,  which NHTSA explicitly concluded "does not require an immobilizer."  *See* RJN Ex. 2.

Plaintiff's improper request that this Court infer the existence of a public policy should be rejected, as it was in *Purdue*.  *See* 211 F.Supp. 3d at 1075.

## B.   Defendants' Conduct Was Not Immoral, Unethical, Oppressive, or Unscrupulous.

Plaintiff misleadingly suggests that Defendants' conduct *must* have been immoral, unethical, oppressive, or unscrupulous because "failure to disclose that the Defective Vehicles lacked anti-theft technology meant that consumers 'were not making fully informed choices.'"  Opp. 10 (citing *FTC v. Walmart Inc.*, 664 F.Supp. 3d 808, 836 (N.D. Ill. 2023) (finding that victims of fraud who used Walmart's money transfer services could not reasonably avoid injury, where, *inter alia*, Walmart knew that sweepstakes and impersonator scams used its services, and did not ask certain senders to present identification).

Although Illinois courts interpreting MCC § 2-25-090 are permitted to consider court's interpretations of Section 5(a) of the Federal Trade Commission Act, *see* MCC § 2-25-090, Plaintiff's citation to *Walmart* misstates the relevant standard.  Whether challenged conduct "meant that consumers 'were not making fully informed choices,'" Opp. 10, is *not* the applicable test for determining whether conduct is immoral, unethical, oppressive, or unscrupulous under Illinois law.  Instead, the absence of fully informed consumer choice goes only to whether a plaintiff has proven substantial injury caused by the conduct, and "whether the injury was reasonably

avoidable by the consumers themselves." *FTC v. IFC*, 543 F.Supp. 2d 925, 945 (N.D. Ill. 2008); *see also* 1980 FTC Policy Statement on Unfairness (Dec. 17, 1980) (discussing "obstacle[s] to the free exercise of consumer decisionmaking" in the context of "consumer injury").   It does not establish that the alleged conduct was immoral, unethical, oppressive, or unscrupulous.

Illinois's standard for immoral, unethical, oppressive, or unscrupulous conduct under MCC § 2-25-090 requires that Plaintiff had no other choice.  *Purdue*, 211 F.Supp. 3d at 1075.  The FAC does not, and could not, make those allegations.  Mot. 16.  Plaintiff thus fails to adequately plead that Defendants' conduct was immoral, unethical, oppressive, or unscrupulous.

## C.    Plaintiff Fails to Adequately Plead That Defendants' Conduct Caused Significant Injury to Consumers.

Plaintiff incorrectly asserts that "Defendants do not dispute that their conduct caused substantial injury to consumers."  Opp. 9.  To the contrary, Defendants deny causing any harm to consumers, and the FAC does not sufficiently allege that Defendants' engaged in deceptive or false advertising or that they harmed Plaintiff. *See* Mot. 19-20.

In *Purdue*, the court held that the City of Chicago "has [not] alleged enough to connect defendants' alleged deceptive marketing with [costs] covered by the City." *Purdue*, 211 F.Supp. at 1075 (finding that, under Rule 9(b)'s standard, the City failed to "allege[] enough particularities about injuries to consumers or that those injuries or the monetary damage to the City incurred were caused by prescriptions written as a result of defendants' alleged deceptive marketing").  Here too, Plaintiff fails to plead specific facts showing that Defendants' advertising caused thefts of Kia or Hyundai vehicles, or caused Plaintiff to respond to those thefts.  Plaintiff's unfair practices claim under MCC § 2-25-090 therefore fails as a matter of law.

## VI. PLAINTIFF FAILS TO STATE A CLAIM FOR DECEPTIVE PRACTICES

### A. Plaintiff Fails to Adequately Plead Deceptive Practices.

Similarly, Plaintiff has failed to plead deceptive trade practices under MCC §§ 2-25-090 or 4-276-470 with the particularity required by Federal Rule of Civil Procedure 9(b).

*First*, Plaintiff effectively concedes that it has not identified any affirmative misrepresentations in seven of the ten advertisements cited in footnote 2 of the FAC. *See* FAC ¶ 19; Opp. 6 (describing the "what" in Rule 9(b)'s heightened pleading standard as 'Defendants['] representations suggesting that they met and even exceeded "industry quality and safety standards[]"). Plaintiff instead groups these seven advertisements into what it deems a deceptive or fraudulent "theme across advertising campaigns." FAC ¶ 19. But "Rule 9(b) does not require plaintiffs to give some examples of fraud to give the defendant a flavor of what the case is about. Rule 9(b) requires a plaintiff to specifically identify the alleged fraudulent or deceptive statements that are the basis of the instant action." *See Cosmetique, Inc. v. ValueClick, Inc.*, 753 F. Supp. 2d 716, 721 (N.D. Ill. 2010) (dismissing claims premised on advertisements merely alleged to be part of a "fraudulent and deceptive advertising scheme"). Plaintiff is required to "provide Defendants with notice of each and every statement that [it] believes was fraudulent and deceptive so that Defendants could effectively respond to such accusations in a prompt manner." *Id.* As to seven of ten of the advertisements, Plaintiff is unable to do so and makes no such effort.

*Second*, although the FAC alleges in a conclusory manner that Defendants' purported misrepresentations and omissions were "material," Opp. 8, FAC ¶¶ 42, 70, 72, it does not allege any facts to support its conclusory statements. *See Ash v. PSP Distrib., LLC*, 226 N.E.3d 748, 757 (Ill. App. Ct. 2023) (under the ICFA, "factual allegations must support the critical element of materiality"); *Butitta v. First Mortgage Corp.*, 578 N.E.2d 116, 121 (Ill. App. Ct. 1991) (absence of allegation that

one would have acted differently "[m]ay suggest a lack of materiality"). Even the plaintiffs in *Connick v. Suzuki Motor Co.*, to which Plaintiff cites, alleged that "the safety problems of the [vehicle at issue, namely excessive risk of rollover] were a material fact in that [the plaintiffs] would not have purchased the vehicles if [the defendant] had disclosed the [vehicle's] safety risk." 675 N.E.2d 584, 595 (Ill. 1996). No such allegation exists in Plaintiff's FAC.

*Third*, Plaintiff concedes "the Complaint does not expressly allege that Defendants intended consumers to rely on their deception." Opp. 9. The Court need engage in no further analysis on this point. Although a party may be considered to intend the necessary consequence of his acts, *Warren v. LeMay*, 491 N.E.2d 464, 474 (Ill. App. Ct. 1986), Illinois courts have not excused plaintiffs from adhering to pleading requirements. *See, e.g., Cosmetique*, 753 F. Supp. 2d at 719 (requiring a plaintiff to establish the defendant's intent that the plaintiff rely on the deception). Absent from the FAC is any allegation that Defendants intended Chicago consumers to rely on their advertising, or what the necessary consequence of the advertising was.

Plaintiff's brief citation to this Court's order in the subrogation track of this MDL ("Subrogation Plaintiffs sufficiently explained how critical anti-theft technology is to car buyers, and how they [the Subrogation Plaintiffs] had been injured in reliance on Defendants' deception," Opp. 8 (citing Dkt. 269 at 13-14))—is unavailing on whether the Plaintiff *here* has made sufficient factual allegations *in its own FAC* that *the alleged misrepresentations or omissions in the FAC here* were material to *Chicago consumers*.

**B.    Defendants' Representations Amount to Puffery.**

Plaintiff's reference (Opp. 8) to *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910 (Ill. 2007), proves too much as that case holds that to be actionable representations a product's attributes must be "capable of precise measuring," *id.* at 928, and that descriptors like "better" and "best" were "so vague as to leave the standards for interpretation open to a number of plausible criteria for judgment." *Id.*

at 927.  Similarly here, words like "[a]dvanced" and "comprehensive" "leave the standards for interpretation open to a number of plausible criteria for judgment," and are unactionable puffery.  *See also* Mot. 16–18; *see also Truck Ins. Exch. v. D'Orazio*, 2021 WL 1206557, at *9 (Ill. App. Ct. Mar. 30, 2021) (representation in advertising materials that company provided "comprehensive coverage" held mere puffery); *Connick v. Suzuki Motor Co.*, 275 Ill. App. 3d 705, 723 (1995) (automobile manufacturer's advertisement that model had "all the goodies of 4-wheel drive" was a subjective description that could not amount to fraudulent misrepresentation of fact).

While an omission cannot constitute puffery in the abstract, Opp. 8 (citing *Pappas v. Pella Corp.*, 844 N.E. 2d 995, 1001–02 (Ill. App. Ct. 2006)), Plaintiff's failure-to-disclose claims should be dismissed for the other reasons explained above and below.  *Supra* Section VI.A, *infra* Section VI.C.

## VII.   DEFENDANTS' STATEMENTS ARE TRUE, NOT MISLEADING, AND UNRELATED TO ANTI-THEFT TECHNOLOGY.

That the statements in Defendants' advertising materials, which Plaintiff cites in its FAC, are true, not misleading, and unrelated to anti-theft technology provides an additional basis for dismissal of Plaintiffs' affirmative misrepresentation- and omission-based claims.  Plaintiff does not dispute that the three statements it identifies in support of its deceptive trade practices claims are in fact true—and completely irrelevant to Plaintiff's allegations about vehicles that do not have immobilizers.  *Cf.* Mot. 16-18 *and* Opp. 8.  While Defendants do not dispute that sellers may not "say that [products] have attributes that they do not possess," Opp. 8, *Plaintiff has not alleged that to have occurred here*—Plaintiff points to statements about what safety features the vehicles *do* have, FAC ¶ 19, but does not identify any claims of attributes that the vehicles do *not* possess.

Indeed, in only a half-hearted attempt to defend its allegations as to only one of the three statements, Plaintiff claims that language in a 2012 Kia Forte brochure advertising a "comprehensive list of advanced safety systems" is a misrepresentation

because a reader would need to flip from page three to pages 18 and 22 of the brochure to learn that this reference to "safety systems" relate to *traffic* safety.  *See* Opp. 7–8. But the complete sentences quoted partially by Plaintiff reads as follows: "***From six airbags to Electronic Stability Control (ESC)***, the Forte has a comprehensive list of advanced safety systems. These safety features are standard equipment on every Forte."  RJN Ex. 6 (emphasis added).  Contrary to Plaintiff's assertion (Opp. 8), there is no need to "hunt" for further context for the statement Plaintiff challenges; one need only read the sentence in full to see the references are to safety features that function while the vehicle is being driven.

Finally, Defendants' purported omissions are not actionable because the marketing statements Plaintiff identifies, FAC ¶ 19 n.2–n.5, from which disclosure of the lack of an immobilizer is allegedly missing, do not discuss anti-theft technology, so no reasonable consumer could believe the materials implied anything whatsoever about the presence or absence of anti-theft features.  *Phillips v. DePaul University*, 19 N.E.3d 1019 (Ill. Ct. App. 2014), is instructive.  In *Phillips*, the plaintiffs alleged that DePaul University, which provided percentages of its law graduates employed within the first nine months after graduation, had deceptively failed to disclose the proportion within these figures of graduates employed in nonlegal and part-time positions.  The plaintiffs claimed that this omission caused them to believe that the percentages related only to full-time employment.  In finding that the plaintiffs' interpretation of "this generalized employment statistic" was unreasonable as a matter of law, the court noted that there were "no allegations by plaintiffs that DePaul ever expressly indicated that its employment information referred only to full-time, legal employment requiring a J.D. degree."  *Id.* at 1029.  While DePaul "could certainly have been more specific," the plaintiffs had identified no affirmative misrepresentation by DePaul of those figures.  *Id.* at 1030; *see also Ash*, 226 N.E. 3d at 756 ("an omission is not actionable as fraud if it gives rise to 'an incomplete' as opposed to an affirmatively 'false impression.'") (*citing Phillips*, 19 N.E.3d at 1030).

## VIII.  PLAINTIFF'S CLAIM UNDER MCC § 1-20-020 ALSO FAILS

*First*, Plaintiff cannot and does not dispute that its claim for cost recovery under MCC § 1-20-020 based on violations of MCC §§ 2-25-090 and 4-276-470 fails if Plaintiff's claims under those sections fail.  *See* Opp. 15.

*Second*, Plaintiff cites no precedent holding that MCC § 1-20-020 allows recovery for a violation of common law, citing only a *Sixth Circuit concurrence* which states generally that common law is a species of state law (Opp. 15); of course that decision was not interpreting the Chicago ordinance at issue here.  In fact, although the City of Chicago has recently begun to assert expansive applications of MCC § 1-20-020 in litigation, s*ee, e.g., City of Chicago v. BP P.L.C. et al.*, No. 2024CH01024 (Ill. Cir. Ct. Feb. 20, 2024) (seeking cost recovery under MCC § 1-20-020 for costs combatting climate change), *City of Chicago v. Monsanto Co. et al.*, No. 2023L009542 (Ill. Cir. Ct. Sept. 19, 2023) (seeking cost recovery under MCC § 1-20-020 for costs responding to PCB contamination), Defendants have not found a single case applying the ordinance to enable Plaintiff to recover costs for common law negligence or public nuisance.  Nor does Plaintiff cite any.

Further, the Illinois Supreme Court has long required that "[a] legislative intent to abrogate the common law must be clearly and plainly expressed, and such an intent will not be presumed from ambiguous or doubtful language." *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 24 (Ill. 1997); *see also Adams v. N. Illinois Gas Co.*, 809 N.E.2d 1248, 1271 (Ill. 2004) ("Illinois courts have limited all manner of statutes in derogation of the common law to their express language, in order to effect the least—rather than the most—change in the common law").  Plaintiff's circumstantial review of the legislative history fails to meet this requirement.  Given both the lack of *any* Illinois decision applying MCC § 1-20-020 based on alleged violations of common law, and the lack of express language in that ordinance seeking to abrogate common law application of the municipal cost recovery and economic loss rules, this Court should not embrace Plaintiff's novel argument.

*Third*, Plaintiff has failed to plead causation.  To sufficiently plead causation under MCC § 1-20-020, Plaintiff must show a direct link between the costs it incurred and Defendants' statements and/or omissions.  *See Purdue*, 211 F. Supp. 3d at 1076 ("To state a claim for recovery of costs, plaintiff must allege that defendants '*cause[d]* the city . . . to incur costs in order to provide services reasonably related to . . . defendants'] violation of any federal, state or local law.'") (emphasis in original); *see also* MCC § 1-20-020 ("Any person who causes the city or its agents to incur costs in order to provide services ***reasonably related*** to such person's violation of any federal, state or local law, or such person's failure to correct conditions which violate any federal, state or local law when such person was under a legal duty to do so, shall be liable to the city for those costs.") (emphasis added).  Plaintiff cannot plausibly explain how Defendants' advertisements proximately caused Plaintiff's alleged costs for "police, emergency, health, prosecutions, corrections, youth rehabilitation, [] other services . . . repairing property damage, and public outreach." FAC ¶ 137.  Similarly, Plaintiff does not allege any connection between any unspecified injury and the damages Plaintiff seeks, *see* Mot. 22, and thus likewise cannot recover under MCC § 1-20-020 on the basis of a purported violation of common law.

In an effort to save its claim (Opp. 18), Plaintiff mischaracterizes *City of Chicago v. Purdue Pharma L.P.*, 2021 WL 1208971 (N.D. Ill. Mar. 31, 2021) ("*Purdue II*").  In *City of Chicago v. Purdue Pharma*, 211 F.Supp. 3d 1058, 1063 (N.D. Ill. 2016) ("*Purdue I*"), the City of Chicago sought to recover, under MCC § 1-20-020, costs it allegedly incurred in connection with its claims that opioid manufacturers' misleading and fraudulent marketing caused doctors to write medically inappropriate prescriptions, and as a result, submit false claims for opioid prescriptions to the City's health plans.  In the earlier round of motion to dismiss briefing addressed in *Purdue I*, the court dismissed the City's claim under MCC § 1-20-020 for failing to plead a "link" between prescribers who were exposed to the

allegedly deceptive advertising and prescribers who actually prescribed the manufacturers' opioids for which the City paid. *Purdue I*, at 1083; *see also* Mot. 19.

The case was thereafter consolidated with others in an MDL.  After the parties had completed discovery, the City sought to file a fifth amended complaint, and in *Purdue II* the defendants advanced a similar argument that the City had insufficiently pleaded causation-in-fact. *Purdue II*, at *42–*43.  This time, the court found that, "given the totality of the allegations . . . [the City] need not make specific allegations connecting each Chicago prescriber to specific misrepresentations and omissions," *Purdue II*, at *12, and allowed the City's MCC § 1-20-020 claim to survive, in particular because the City had "significantly altered" the *Purdue I* complaint to include expert testimony suggesting that Purdue's marketing activities "caused an increase in opioid use, which caused an increase in opioid-related harm in Chicago and other communities," *id.*

But unlike the complaint at issue in *Purdue II*, Plaintiff's FAC offers no allegations of a connection between Defendants' marketing activities and the costs the City alleges to have incurred.

Moreover, while Plaintiff claims that Illinois precedent allows courts to assume the "plausib[ility]" of Defendants having deceived "'at least one' of their thousands of Chicago customers," Opp. 19, the case on which Plaintiff relies is inapposite.  In *Cosmetique*, the defendants actually alleged that Illinois consumers interacted with the marketing at issue—responding to and joining a beauty club through the advertisements and promotional offers.  753 F. Supp. at 723.  It is in that context that the court held that it was plausible for "at least one" consumer to have been allegedly deceived.  *Id.*  Here, again, Plaintiff has not even done the bare minimum by alleging that Chicago consumers saw any of the referenced Hyundai or Kia advertisements.

Nor is it "far too early to require" Plaintiff to plead the elements of a claim under MCC § 1-20-020.  Opp. 18.  That is precisely what is required at the motion to dismiss stage.  Contrary to Plaintiff's contention, Defendants have never insisted that

1   Plaintiff "identify *every*" consumer allegedly harmed at this stage of this litigation.

2   *Id.*   That being said, Plaintiff may not hide behind the Court's opinion in the

3   Subrogation track of this MDL (which has no relation to this City of Chicago

4   ordinance) to discharge itself from the requirements imposed by the *Purdue I* court—

5   namely, to identify the parties who were exposed to the alleged misrepresentations or

6   omissions, and link them to the City's expenditures.  *See* Mot. 19.

7   **IX.   PLAINTIFF'S   REQUESTS   FOR   ECONOMIC   DAMAGES   ARE**

8   **FORECLOSED UNDER ILLINOIS LAW**[3]

9          Plaintiff tries to avoid the application of Illinois' municipal cost recovery rule

10  by citing to *other states*' exceptions to that rule.   Opp. 21–22 (*citing In re Nat'l*

11  *Prescription   Opiate   Litig.*, 2019 WL 3737023, at *8 (N.D. Ohio June 13, 2019)

12  (discussing Ohio, Oklahoma, and Montana law) *and In re Nat'l Prescription Opiate*

13  *Litig.*, 458 F. Supp. 3d 665, 685 (N.D. Ohio 2020) (applying Michigan law)).   But

14  Plaintiff identifies no case applying those exceptions under ***Illinois*** law.

15         While Plaintiff correctly notes that neither the municipal cost recovery rule nor

16  the economic loss rule foreclose non-economic damages (*i.e.*, where physical injury

17  occurs), Opp. 22, the FAC both (i) fails to allege any facts evidencing property

18  damage, making only conclusory references to unspecified property damage, FAC

19  ¶ 111, and (ii) requests economic damages unrelated to property.  *See id.* ("economic

20  damages,   including   significant   expenditures   for   police,   emergency,   health,

21  prosecution, ***and other services and costs to repair property damage*** and for public

22  outreach") (emphasis added).   These purely economic damages are foreclosed.

23         Plaintiff also asserts its damages are merely the cost of abatement, and therefore

24

25  [3]   Plaintiff cites MCC § 1-20-020 to argue its damages are "authorized by statute."
    Opp. 21–22.  Because Plaintiff brings a separate cause of action for recovery under
26  this statute, that argument is addressed in Section VII.  The municipal cost recovery
    rule and economic loss rule foreclose economic damages under Plaintiff's public
27  nuisance and negligence claims, for which Plaintiff cites no statute or ordinance
    expressly permitting damages.
28

not foreclosed under either rule, Opp. 21–22, despite its own allegation that "Chicago has been unable, on its own, to abate the nuisance." FAC ¶ 56. Plaintiff provides no reason to be believe this inability to abate the nuisance will suddenly change with additional funds. Plaintiff's conclusory allegation that the nuisance "is abatable" therefore need not be credited. *Tapia Carmona v. Cnty. of San Mateo*, 2019 WL 4345973, at *9 (N.D. Cal. 2019) ("[g]eneral, conclusory allegations need not be credited [] when they are belied by more specific allegations of the complaint"). Given Chicago's admission that abatement is not feasible, the exception for abatement does not apply. *Beretta*, 821 N.E.2d at 1147. And at any rate, Plaintiff seeks damages beyond future costs of abatement which are foreclosed regardless of the abatement exception. *See* FAC ¶¶ 113, 130.

The municipal cost recovery rule and economic loss rule independently foreclose, and at a minimum limit, Plaintiff's request for economic damages under its public nuisance and negligence claims.

## CONCLUSION

For the foregoing reasons, this Court should dismiss the FAC in its entirety.

DATED: March 4, 2024          QUINN EMANUEL URQUHART & SULLIVAN, LLP


                              By  */s/ Steven G. Madison*
                                  Steven G. Madison (SBN: 101006)
                                  stevemadison@quinnemanuel.com
                                  Justin C. Griffin (SBN: 234675)
                                  justingriffin@quinnemanuel.com
                                  865 South Figueroa Street, 10th Floor
                                  Los Angeles, California 90017-2543
                                  Telephone:  (213) 443-3000
                                  Facsimile:  (213) 443-3100

                                  *Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

19