UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | March 21, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:** [IN CHAMBERS] Order Regarding Motion to Dismiss (*City of Chicago*) [286]

Before the Court is Defendants Hyundai Motor America ("HMA") and Kia America, Inc.'s ("KA") (collectively, "Defendants") motion to dismiss. (Mot., Dkt. No. 286.) Plaintiff City of Chicago ("Chicago") oppose. (Opp'n, Dkt. No. 305.) Defendants replied. (Reply, Dkt. No. 325.)

For the following reasons, the Court **GRANTS** the motion.

## I. BACKGROUND

The following comes from Chicago's First Amended Complaint ("FAC").

Defendants did not install engine immobilizers in approximately 24 automobile models between 2011 and 2022. (FAC ¶¶ 26–27.) Meanwhile, Defendants represented that the vehicles "led the industry in quality and safety." (Id. ¶ 29.) On social media, word spread that the cars were easily stolen, and a wave of thefts thus "ran rampant across the country." (Id.) In 2022, social media videos went viral depicting "how easy it was to steal the Defective Vehicles because they lacked engine immobilizers," documenting the process by which a thief "need only remove the plastic cover (called a cowl) under the steering column and use a USB cable to start the stolen vehicle." (Id. at 31.)

In August 2022, "the Chicago Police Department's 15th District announced in a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | March 21, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

community advisory that, 'vehicle theft is up an astounding 767% due to an emerging TikTok challenge.'" (Id. ¶ 32.)  In October 2022, Chicago set a record for the most vehicles stolen in a month over the past twenty years—more than 3,100 vehicles were stolen.  (Id.)  By the end of 2022, "Chicago had experienced a 55% increase in vehicle thefts."  (Id.)

In the first half of 2022, more than 500 Kias and Hyundais were stolen in Chicago, but that number "skyrocketed to over 8,350" over the second half.  (Id. ¶ 33.)  "Kias and Hyundais only make up approximately 7% of the vehicles in Chicago," but they accounted for 41% of vehicle thefts in 2022.  (Id. ¶ 34.)  The trend continued into 2023, with Kia and Hyundai accounting for more than 50% of vehicles stolen in Chicago.  (Id. ¶ 35.)

The thefts have resulted in "significant out-of-pocket costs and impacts" on the lives of victims, and even if vehicles are recovered, "they are almost always ransacked, damaged, or totaled altogether."  (Id. ¶ 37.)  Thefts also pose public safety concerns, and "criminals used stolen Hyundais in more than a dozen murders from October 2022 through January 2023."  (Id. ¶¶ 43, 48.)  Chicago's police and other public safety resources have seen "heightened demands" due to the thefts. (Id. ¶ 54.)

In January 2023, Chicago's Police Superintendent sent Defendants a letter "explaining the ongoing public safety crisis caused by the thefts and asking the companies to help address it by recalling or installing immobilizers in the Defective Vehicles."  (Id. ¶ 59.)  Defendants developed a software update that "extends the length of the car alarm from 30 seconds to one minute and purportedly requires a key to be in the ignition to start the car."  (Id. ¶ 60.)  As of July 2023, "only approximately 15% of the eligible vehicles had received the software upgrade," and some vehicle owners have reported their vehicles stolen after having received the update.  (Id. ¶¶ 61–62.)  "[I]t is not clear that the update will cover all models, and for those not covered, Defendants are offering nothing more than wheel locks or rebates for already purchased wheel locks."  (Id. ¶ 63.)

By forgoing the installation of wheel locks, "Defendants have effectively passed safety costs on to Chicago, which is pouring resources into responding to thefts and associated crimes, educating the community, distributing anti-theft steering wheel locks, and reimbursing for GPS trackers installed on Defective Vehicles."  (Id. ¶ 64.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS-KES                     Date  March 21, 2024

Title  In Re: Kia Hyundai Vehicle Theft Litigation

On September 18, 2023, Chicago filed its FAC in Illinois State Court alleging six claims: (1) deceptive trade practices in violation of Municipal Code of Chicago ("MCC") § 4-276-470; (2) deceptive trade practices in violation of MCC § 2-25-090; (3) unfair trade practices in violation of MCC § 2-25-090; (4) public nuisance; (5) negligence; and violation of MCC § 1-20-020.  (Not. of Removal, Ex. B, FAC, Dkt. No. 1-2, 8:23-cv-02045-JVS-KES.)  On September 22, 2023, Defendants removed to the United States District Court for the Northern District of Illinois.  (Not. of Removal, Dkt. No. 1, 8:23-cv-02045-JVS-KES).  The United States Judicial Panel for Multi District Litigation transferred the case to the Central District of California, initially under the case number 8:23-cv-02045-JVS-KES, and then consolidated it with the ongoing multi district litigation In re: Kia Hyundai Vehicle Theft Litigation.  (Dkt. No. 10, 8:23-cv-02045-JVS-KES.)

## II. Legal Standard

Under Rule 12(b)(6), a defendant may move to dismiss for failure to state a claim upon which relief can be granted.  A plaintiff must state "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

In resolving a 12(b)(6) motion under Twombly, the Court must follow a two-pronged approach.  First, the Court must accept all well-pleaded factual allegations as true, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. Nor must the Court "'accept as true a legal conclusion couched as a factual allegation.'" Id. at 678–80 (quoting Twombly, 550 U.S. at 555).  Second, assuming the veracity of well-pleaded factual allegations, the Court must "determine whether they plausibly give rise to an entitlement to relief." Id. at 679.  This determination is context-specific, requiring the Court to draw on its experience and common sense, but there is no plausibility "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." Id.

## III. Discussion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | March 21, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

Defendants argue that Chicago "seeks to use state tort law to impose a rigid duty to use immobilizers." (Mot. at 11.) Defendants assert that the Federal Motor Vehicle Safety Standard ("FMVSS") 114 imposes two anti-theft performance requirements, "mandat[ing] that a vehicle's starting system prevent (1) 'normal activation' of the engine and (2) 'steering or forward self-mobility' when the key is removed"—neither of which require immobilizers. (Id. at 2 (quoting 49 C.F.R. § 571.114 S5.1.1 (2021)).) Defendants contend that the U.S. Department of Transportation's National Highway Traffic Safety Administration's ("NHTSA") regulation is deliberately flexible to best protect against theft by "permit[ting] as many specific devices as possible." (Mot. at 11–12 (quoting 33. Fed. Reg. 6472 (Apr. 27, 1968).) Defendants conclude that Chicago's claims are preempted by federal law because the FAC uses state tort law to "seek to mandate Defendants' use of immobilizers, running afoul of FMVSS 114." (Id. at 13.)

Defendants cite Geier v. American Honda Motor Co., 529 U.S. 861 (2000), and Williamson v. Mazda Motor Co. of America, 562 U.S. 323 (2011), to support of their position. In Geier, the Supreme Court held,

> In effect, petitioners' tort action depends upon its claim that manufacturers had a duty to install an airbag when they manufactured the 1987 Honda Accord. Such a state law—i.e., a rule of state tort law imposing such a duty—by its terms would have required manufacturers of all similar cars to install airbags rather than other passive restraint systems, such as automatic belts or passive interiors. It thereby would have presented an obstacle to the variety and mix of devices that the federal regulation sought.

529 U.S. at 881. Similarly, in Williamson, the Supreme Court held that the regulation left manufacturers a choice, and the tort suit would restrict that choice. 562 U.S. at 332; see also Priester v. Cromer, 401 S.C. 38 (2012) (alleging that a state tort rule required automobile manufacturers to use only laminated glass); Soliman v. Daimler AG, No. 10-408, 2011 U.S. Dist. LEXIS 112599 (E.D.N.Y. Sept. 29, 2011) (alleging a state tort duty to anchor seatbelts to automobile frames).

Chicago responds that their "claims do not depend on the use of immobilizers." (Opp'n at 19.) Chicago points to paragraphs 2 and 90 in the FAC in which it refers to "Defendants' choice 'to forego (often simple) industry-standard, anti-theft

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | March 21, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

technologies'" without mentioning immobilizers.  (Id. (quoting FAC ¶ 2).)  Chicago argues that its FAC is analogous to the Consolidated Governmental Entities Complaint—which the Court ruled was not preempted— because it mentioned engine immobilizers just as the FAC does here.  (Id. at 20 (citing Order, Dkt. No. 270).)

In arguing against preemption, Chicago does not dispute the notion that FMVSS 114 preempts a state's narrow requirement of engine immobilizers.  Instead, Chicago asserts that the FAC does not rely on such a requirement.  In support of this argument, Chicago cites the only passages of the FAC that make use of general "anti-theft technology" language without using the word "immobilizers."  In context, however, those passages still refer to engine immobilizers in context, rather than more broadly referring to *any* sufficient anti-theft technology.

Paragraph 2 of the FAC begins, "[f]or years, automakers Kia and Hyundai chose to forego (often simple) industry-standard, anti-theft technologies in many of their cars."  (FAC ¶ 2.)  This reference to "anti-theft technologies," though, comes before the FAC has introduced the term "engine immobilizer."  In the immediately following paragraph, Chicago defines "engine immobilizers as standard anti-theft equipment" for the first time and explains that "an electronic engine immobilizer is a security technology that functions by requiring a smart key with a special chip that sends an encrypted signal to start the car."  (Id. ¶ 3.)  The next sentence states, "[u]nlike nearly every other major car manufacturer, however, Kia and Hyundai failed to install *this critical anti-theft technology*."  (Id. (emphasis added).)  The use of the demonstrative pronoun "this" in reference to immobilizers, rather than more broad language like "any anti-theft technology," further underscores the FAC's focus on immobilizers.

In the paragraph preceding paragraph 90, Chicago states that "[t]he public policy against the manufacture and sale of cars unreasonably susceptible to theft has been recognized by the NHTSA since the promulgation of the FMVSS in the 1970s and adopted as standard in the United States motor vehicle industry where nearly all vehicles produced by other manufacturers included *engine immobilizers as standard equipment*."  (FAC ¶ 89 (emphasis added).)  Then, having defined "standard equipment" as "engine immobilizers," the FAC states that "Defendants continued to manufacture and sell Defective Vehicles without industry-standard anti-theft equipment."  (Id. ¶ 90.)  In its opposition, Chicago further underscores that "immobilizers are industry-standard anti-theft technology," (Mot. at 20), which further basis for the Court to interpret "standard

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS-KES               Date  March 21, 2024

Title     In Re: Kia Hyundai Vehicle Theft Litigation

equipment" as a reference to immobilizers.  Perhaps most conclusively sealing Chicago's claims as pertaining specifically to immobilizers, the next paragraph declares, "The wave of thefts of Defective Vehicles in Chicago would have been prevented had Defendants included engine immobilizers."  (Id. ¶ 91.)  The general language in paragraphs 2 and 90 are the exception, not the rule in the FAC.  The FAC is replete with references to immobilizers—approximately fifty, under the Court's count.  Taking it as a whole, the FAC's claims are based on the vehicles' lack of an engine immobilizer, specifically.

While Chicago is correct that the Court previously rejected Defendants' preemption arguments, we did so in the context of a complaint that, despite a handful of references to immobilizers, discussed anti-theft technology overall in a broad sense that permitted solutions other than solely engine immobilizers.  The FAC here definitively rests its claims the allegation that Defendants failed to use engine immobilizers.  Like Geier and Williamson, this specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement.

Accordingly, Chicago's claims are preempted.  Thus, the Court does not reach the parties' remaining arguments.  Chicago is granted twenty days to replead.

### IV.  CONCLUSION

For the foregoing reasons, the Court **GRANTS** the motion.

**IT IS SO ORDERED.**