ELLIOTT R. FELDMAN
NATHAN DOOLEY (SBN 224331)
KEVIN CARAHER
COZEN O'CONNOR
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-2071

WILLIAM J. HOFFMANN
ADAM M. ROMNEY (SBN 261974)
SUSAN M. BENSON (SBN 146837)
GROTEFELD HOFFMANNN LLP
15303 Ventura Blvd, Ste. 1505
Sherman Oaks, California 91403
Telephone: (747) 233-7150

TIMOTHY E. CARY (SBN 093608)
DANIEL HOGAN
STUTMAN LAW
1260 Corona Pointe Court, Suite 306
Corona, California 92879
Telephone: (951) 387-4700

CRAIG S. SIMON (SBN 78158)
STEPHANIE H. NG (SBN 309389)
BERGER KAHN, A Law Corporation
1 Park Plaza, Suite 340
Irvine, California 92614
Telephone: (949) 474-1880

*Attorneys for Subrogation Insurance Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 22-ML-03052-JVS-KES |
| | The Honorable James V. Selna |
| | **SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR CORPORTION AND KIA CORPORATION, INC.'S MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT** |
| | Judge: Hon. James V. Selna<br>Ctrm: 10C<br>Date: April 19, 2024<br>Time: 9:00 a.m. |
| This document relates to:<br><br>ALL SUBROGATION CASES | |

1

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR CORPORTION AND KIA
CORPORATION, INC.'S MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT
Case No.: 22-ML-03052-JVS-KES

## **TABLE OF CONTENTS**

**INTRODUCTION** ...................................................................................................**4**

**RELEVANT FACTUAL BACKGROUND** ........................................................**5**

**LEGAL STANDARDS**.........................................................................................**7**

**ARGUMENT**.........................................................................................................**8**

    **A.**    **The Korean Entities' Declarations Do Not Refute Plaintiffs' Claims** ....**8**

    **B.**    **Publicly Available Customs Records Disprove Defendants' Claims**....**11**

    **C.**    **This Court Has Specific Personal Jurisdiction Over the Korean Entities** .................................................................................................**14**

    **D.**    **Thornton and Ditter are Not Controlling Precedent**............................**16**

    **E.**    **The Korean Entities Internet Presence and Sales Activities Also Constitute a Basis for Personal Jurisdiction**...........................................**17**

    **F.**    **Jurisdictional Discovery** .........................................................................**19**

**CONCLUSION** ...................................................................................................**19**

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR CORPORTION AND KIA CORPORATION, INC.'S MOTION TO DISMISS THE AMENDED CONSOLIDATED COMPLAINT

Case No.: 22-ML-03052-JVS-KES

# TABLE OF AUTHORITIES

**Page(s)**

*Cases*

*AirWair Int'l Ltd. v. Schultz*, 73 F. Supp. 3d 1225 (N.D. Cal. 2014) ........................ 15

*Axiom Foods, Inc. v. Acherchem Int'l, Inc.*, 874 F. 3d 1064 (9th Cir. 2017) ............. 7

*Ballard v. Savage*, 65 F.3d 1495 (9th Cir. 1995) ................................................. 7

*Boschetto v. Hansing*, 539 F.3d 1011 (9th Cir. 2008) ........................................ 7, 19

*Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023) .............................................. 17

*Daimler AG v. Bauman*, 134 S.Ct. 746 (2014) ...................................................... 8

*Ditter v. Subaru Corporation* (D. Colo., Mar. 25, 2022, No. 20-CV-02908-PAB-MEH) 2022 WL 889102 .................................................................................... 17

*Falco v. Nissan N. Am. Inc*., 96 F. Supp. 3d 1053 (C.D. Cal. 2015) ........................ 15

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. 351 (2021) .... 4, 7, 11

*Gibson v. Chrysler Corp*., 261 F.3d 927 (9th Cir. 2001) ......................................... 19

*Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085 (9th Cir. 2023) ................... 18

*LNS Enterprises LLC v. Continental Motors, Inc.* 22 F.4th 852 (9th Cir. 2022) .passim

*Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218 (9th Cir.2011) ................. 7, 9

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) ............. 15

*Thornton v. Bayerische Motoren Werke AG,* 439 F.Supp.3d 1303 (N.D. Ala. 2020) ................................................................................................................. 16

*World-Wide Volkswagen v. Woodson,* 444 U.S. 286 (1980) .................................... 14

*Zakikhan v. Hyundai Motor Co*., 2021 WL 4805454, at \*4 (C.D. Cal. June 28, 2021) ................................................................................................................. 4

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR CORPORATION AND KIA CORPORATION, INC.'S MOTION TO DISMISS

Case No.: 22-ML-03052-JVS-KES

## **INTRODUCTION**

Defendants only challenge this Court's personal jurisdiction over two Defendants: Kia Corporation ("KC") and Hyundai Motor Company ("HMC") (collectively the "Korean entities"). Despite Defendants' protestations to the contrary, this Court may, and historically has, asserted personal jurisdiction over the Korean entities. As Defendants are well aware, the Central District of California has already rejected functionally identical personal jurisdiction challenges brought by both KC and HMC. *See, e.g., Zakikhan v. Hyundai Motor Co.*, 2021 WL 4805454, at *4 (C.D. Cal. June 28, 2021) (finding personal jurisdiction over KC and HMC); *see also Ford Motor Co. v. Mont. Eighth Judicial Dist.* 592 U.S. 351 (2021), 1022 (2021). On similar facts, this case should produce the same result.

Notably, Defendants **do not dispute** that the allegations contained within Plaintiffs' complaint are sufficient to establish specific personal jurisdiction over the Korean entities. Instead, relying exclusively on carefully-worded declarations authored by the their in-house counsel, Defendants argue that Plaintiffs' jurisdictional allegations are "demonstrably false." *See* DKT No. 312 at p. 1. Unfortunately, facts are sticky things, and the meticulous digital record keeping of modern commerce renders it impossible for the Korean entities to alter reality simply by submitting self-serving declarations. While Defendants may dispute Plaintiffs' allegations, they cannot realistically deny the facts memorialized by objective governmental records.

Over twenty years' worth of publicly available United States Customs data plainly demonstrates the Korean entities have systematically and purposely directed the vast majority of their North American shipments of vehicles and vehicle parts to the State of California. Furthermore, despite the Korean Defendants' claims that their vehicles are sold to their American subsidiaries "in the Republic of Korea," the corresponding shipping records plainly show that the Korean Defendants are the actual exporters of those products to the California market. Finally, those same

4

shipment records reveal that the Korean entities regularly send test vehicles to their facility in California for safety and compliance testing – placing key portions of their manufacturing processes within the State of California. Because the records of the Korean entities' purposeful direction and availment are so extensive, Plaintiffs do not rely on a bare "stream-of-commerce" theory to establish personal jurisdiction: rendering substantial portions of Defendants' Motion irrelevant. Based upon Plaintiffs' well-sourced factual allegations, this Court plainly has jurisdiction and Defendants' motion must be denied.

## **RELEVANT FACTUAL BACKGROUND**

The facts of this case are already well known to this Court. This multi-district litigation concerns allegations that Defendants knowingly sold at least 14.3 million vehicles (the "Vehicles") which lack vital safety components. *See* Dkt. No. 283 ¶ 1. The failure to include those components, along with other related design flaws, constitutes a failure to implement Federal Motor Vehicle Safety Standards promulgated by the National Highway Traffic Safety Administration ("NHTSA."). *See* Dkt. No. 200 at 2. These Vehicles suffer from a series of design flaws that allow thieves to steal the vehicles in less than ninety seconds ("Thief Friendly Design"). *Id.* This Thief Friendly Design has resulted in significant and ongoing injury to both people and property, sometimes resulting in death. *Id.*

Plaintiffs' Amended Master Complaint plainly alleges facts sufficient to establish specific personal jurisdiction over the Korean Entities. Specifically, Plaintiffs allege:

- HMC conducts substantial business in the State of California." *See* Dkt No. 176 at ¶ 32;

- "HMC shipped over 7,500 shipments of vehicles and parts through California's ports for delivery and sale to California facilities." *Id.*

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO DISMISS

Case No.: 22-ML-03052-JVS-KES

- HMC "maintains a research and design facility in California and employs thousands of people within" California. *Id*. at ¶¶ 33, 264;

- HMC controls key operational aspects of Hyundai dealership operations in California and the United States.  *Id*. at ¶ 34;

- "KC conducts substantial business in the State of California." *Id*. at ¶ 38;

- "KC initiated over 5,000 shipments of vehicles and parts through California's ports for delivery and sale to California facilities." *Id*. at ¶ 38;

- KC controls key operational aspects of Kia dealership operations in California and the United States. *Id*. at ¶ 41;

- HMC and KC "purposely availed themselves" of the California market by "extensively promoting, warranting, selling, leasing and servicing" vehicles in California. *Id*. at ¶ 250;

- HMC and KC intentionally and specifically designed and sold vehicle models without immobilizers or comparable, equally effective anti-theft equipment uniquely into the United States market. *Id*. at ¶¶ 3, 293;

- HMC purposely availed itself of the protections of this very District Court, by pleading in 2015 that it "manufactures Hyundai-branded parts for sale in the United States and abroad."  *Id*. at ¶ 251;

- KC purposely availed itself of the protections of this very District Court, by pleading in 2021 that it "manufactures, sells and distributes KIA branded automobiles and parts throughout the United States[.]"  *Id*. at ¶ 252; and

- HMC and KC "purposely served the California market for automobiles, and in excess of 20,000 insurance claims have been made within California due to the failures of Defendants' Vehicles in the State."  *Id*. at ¶ 253.

///

///

///

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA
AMERICA, INC.'S MOTION TO DISMISS

Case No.: 22-ML-03052-JVS-KES

Taken individually and collectively, Plaintiffs' allegations supporting specific personal jurisdiction over the Korean entities are overwhelming.  And, as detailed more fully below, the declarations authored by the Korean entities' in-house counsel do not actually contradict many of Plaintiffs' jurisdictional allegations; rendering those allegations effectively uncontroverted.

## **LEGAL STANDARDS**

In opposing a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing that personal jurisdiction is proper. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).  To establish personal jurisdiction "the plaintiff need only make a *prima facie* showing of jurisdictional facts to withstand the motion to dismiss." *Mavrix Photo, Inc. v. Brand Tech., Inc.*, 647 F.3d 1218, 1223 (9th Cir.2011).  Personal jurisdiction does not need to be plead as a discrete issue, and "the plaintiff need only demonstrate facts that if true would support jurisdiction over the defendant." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Uncontroverted allegations in the Plaintiffs' complaint must be taken as true.  *LNS Enterprises LLC v. Continental Motors, Inc.* 22 F.4th 852, 859 (9th Cir. 2022).

Plaintiffs may establish specific personal jurisdiction by pleading that their claims "arise out of or relate to the defendant's contacts" with the forum state.  *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. 351, 359 (2021). In the Ninth Circuit, personal jurisdiction attaches when (1) The defendant either "purposefully directs" its activities toward the forum or "purposefully avails" itself of the privileges of conducting activities in the forum; (2) the claim arises out of the defendants' forum-related activities; and (3) the exercise of jurisdiction is reasonable. *Axiom Foods, Inc. v. Acherchem Int'l, Inc.*, 874 F. 3d 1064, 1068 (9th Cir. 2017).  A State may assert specific jurisdiction over a foreign vehicle manufacturer that has "deliberately extended" its business there – "even though the vehicle had been designed and made overseas and sold" elsewhere. *Ford Motor Co.* 592 U.S. at 363.

On that basis, specific personal jurisdiction attaches when a vehicle manufacturer "serves a market for a product in the forum State and the product malfunctions there." *Id.*

Plaintiffs may also rely upon evidence outside the pleadings, including declarations, affidavits and other materials, to establish personal jurisdiction. *See Daimler AG v. Bauman*, 134 S.Ct. 746, 752 (2014).  When parties present opposing affidavits or declarations, **the court is "obligated to resolve conflicting statements in Plaintiffs' favor."** *LNS Enterprises LLC v. Continental Motors, Inc.* 22 F.4th 852, 859 (9th Cir. 2022)emphasis added).

## ARGUMENT

The Korean entities are subject to specific personal jurisdiction in California's courts because they have purposely directed sales of their vehicles and automobile parts, including the Vehicles that are the subject of this action, into the State on a systematic and continual basis. Defendants' motion does not dispute that such purposeful direction in sufficient to establish specific personal jurisdiction. Instead, Defendants' motion relies upon declarations authored by in-house counsel to prove that although the Korean entities knew "some of the vehicles could potentially end up in California," Plaintiffs' jurisdictional allegations are "demonstrably false." Dkt No. 312 at p. 1.  Even taken at face value, the contents of those declarations cannot justify the dismissal of the Korean entities.

### A.    The Korean Entities' Declarations Do Not Refute Plaintiffs' Claims

The nearly identically-worded declarations provided by KC's Senior Counsel Seunghee Shin and HMC's Counsel Seung Hyun Baik are the sole factual statements proffered by Defendants in an effort to refute Plaintiffs' jurisdictional allegations. However, a close reading of those documents demonstrates that, although they are carefully worded to give the appearance of evidentiary relevance, the declarations stop short of actually contradicting Plaintiffs' allegations. Read literally, and stripped

of the suggestive power of innuendo, the declarations do not support a finding that this Court lacks jurisdiction because "uncontroverted allegations in the complaint must be taken as true." *Mavrix Photo, Inc. v. Brand Techs., Inc.,* 647 F.3d 1218, 1223 (9th Cir. 2011).

By way of example, Plaintiffs' Complaint, citing HMC's public website, alleges that HMC "maintains a research and design facility in California and employs thousands of people within the State." *See* Dkt No. 176 at ¶ 33. The declaration of HMC's counsel does not deny either of these allegations. In fact, HMC's counsel does not make any statements about HMC's research and design facilities in general; instead limiting its scope to a statement that a single location - "Hyundai America Technical Center, Inc." (HACTI) is a separately incorporated United States subsidiary. *See* Dkt No. 312-1 at ¶¶ 13, 14, 19, 20. Thus, the declaration declines to state that HMC *does not* maintain a research and design facility in California. Instead, HMC's declaration merely *implies* that HACTI's American incorporation disproves Plaintiffs' larger allegation. Plaintiffs' actual allegations remain unrefuted.

Similarly, neither HMC's nor KC's declarations deny that the Koren entities "employ thousands of people within the State." Instead, both declarations make the much narrower claim that they do "not maintain a sales force in California (or anywhere else in the United States)." *See* Dkt No. 312-1 at ¶ 8; Dkt No. 312-2 at ¶ 8. Obviously, the general class of "employees" is larger than the smaller category of a "sales force." Consequently, both Plaintiffs' allegations and Defendants' declaration can be true simultaneously. The Korean entities may "employ thousands of people within the State" while none of those employees are part of HMC's and KC's "sales force." Thus, the Korean entities' declarations do not put forth any evidence denying Plaintiffs' claims of a substantial, ongoing corporate presence within the State.

Moreover, Defendants do not actually contest that HMC dispatched "over 7,500 shipments of vehicles and parts through California's ports for delivery and sale to California facilities" or that KC similarly "initiated over 5,000 shipments of vehicles and parts through California's ports for delivery and sale to California facilities." *See* Dkt No. 176 at ¶ 32; 38.  Such shipments obviously constitute a *prima facie* showing that the Korean entities purposely directed their activities toward the forum State. In truth, the declarations simply ignore the salient issue of specific quantities of shipments sent directly to California's ports. In lieu of denying Plaintiffs' allegations, the declarations avoid the directed shipments entirely — stating instead that the Korean entities sell "some those vehicles to [an American subsidiary] in the Republic of Korea."  *See* Dkt No. 312-1 at ¶ 21; Dkt No. 312-2 at ¶ 20.  That statement addresses only the location where the on-paper legal title of "some" (but not all) vehicles sent to the United States changed hands.  Even more pointedly, the declarations don't even attempt to deny, because they cannot, that the Korean entities are the actual exporters of the Vehicles to the forum State of California.

Finally, Plaintiffs' Complaint alleges that the Korean entities control certain aspects of their California dealers' operations including:

- Granting each dealer a license to use their respective trademarks and intellectual property;

- Furnishing each dealer with marketing materials to assist in the sale of their vehicles;

- Providing training to dealership personnel to assist in their sales activities;

- Providing guidance to dealerships, and dealership personnel in handling complaints regarding the Thief Friendly Design; and

- Prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Vehicles.  *See* Dkt No. 176 at ¶¶ 31, 41.

10

The declarations do not dispute any of those allegations establishing connections between the Korean entities and the business activities of their related California-based dealerships.  Instead, the declarations merely disclaim any direct contractual relationships, and state that the Korean Entities does not "certify or provide certification training to mechanics who work at independent [dealerships] in California."  *See* Dkt No. 312-1 at ¶ 26; Dkt No. 312-2 at ¶ 24.  Plaintiffs' actual jurisdictional allegations, again, remain unchallenged.

As a whole, the Defendants' declarations deny *something* – but entirely fail to rebut the actual text of Plaintiffs' Complaint. Consequently, Defendants' declarations fall far short of "refut[ing] the Subrogation Plaintiffs' allegations."  *See* Dkt No. 312 at p. 9.   Examination of the Korean entities' actual factual support demonstrates that this motion should be denied.

### B.   Publicly Available Customs Records Disprove Defendants' Claims

"[S]pecific jurisdiction attached in cases" where a vehicle manufacturer "serves a market for a product in the forum State and the product malfunctions there."  *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. 351, 363 (2021). When the manufacturer's "business deliberately extend[s] into" California then California's "courts can "hold the companies accountable … even though the vehicle had been designed and made overseas[.]"  *Id.* That the Korean entities have intentionally directed their activities towards the California market by exporting their vehicles, parts, and designs into the State is a matter of verifiable public record.  The attached declaration of Nickie Bonenfant[1], the Chief Operating Officer of ImportGenius, conclusively establishes the Korean entities purposely directed their business activities into the State of California. ImportGenius is a business that "provides access

---

[1] *See* Declaration of Bonenfant ("Bonenfant Decl."), Appendixes ("Apx.") A (A Detailed Compilation of all Products and Items Shipped by HYUNDAI to a California port), B (A Detailed Compilation of all Products and Items Shipped by  KIA to a U.S. port), C (A Detailed Compilation of all Products and Items Shipped by  KIA to a California port), D (A Detailed Compilation of all Products and Items Shipped by  KIA to a U.S. port).

to shipping databases from Customs agencies in the United States[.]" Bonenfant Decl. ¶ 3. ImportGenius' records are compiled directly from US Customs Bills of Lading and reflect "real-time, accurate information on actual ocean freight shipments passing through all US ports." *Id.* ¶ 4, 5. The information obtained from ImportGenius is also reliable. Due to its accuracy, ImportGenius has become the industry standard for governments and economists to interpret and project the state of international trade. *See id*, Exs. 1-8.

The appendices attached to the Declaration of Mr. Bonenfant prove that the Korean Entities, rather than their US-based subsidiaries, were the shipper of record for thousands of the shipments from the Republic of Korea to the State California. *See* Bonenfant Decl., Apxs. A-D. Consistent with Plaintiffs' jurisdictional allegations, the vast majority of these shipments were delivered to the State of California before being delivered to the Korean California-based subsidiaries.  These systematic and repeated shipments conclusively demonstrate that the Koren entities "deliberately reach out beyond its home" and that its contacts with California are not "random, isolated, or fortuitous."  *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court,* 592 U.S. 351, 359.

Furthermore, information culled from the bills of lading establish that the Korean entities regularly shipped "test cars" to California as part of their manufacturing process.  For example, in the excerpted portion of Appendix A below, the Korean entities are listed as the "shippers" for "test vehicle new car[s]" that arrived at the Port of Long Beach for ultimate delivery to a US subsidiary in Irvine, CA.

| | PRODUCT DESCRIPTION | ARRIVAL DATE | US PORT | CONSIGNEE | CONSIGNEE ADDRESS | SHIPPER |
|---|---|---|---|---|---|---|
| 3376 | TEST VEHICLE NEW CAR | | 7/27/2016 | Long Beach, California | HYUNDAI AMERICA TECHNICAL CENTER | 81 BUNSEN IRVINE, CA 92618 USA | HYUNDAI MOTOR COMPANY & KIA MOTORS |
| 3377 | TEST VEHICLE NEW CAR | | 7/27/2016 | Long Beach, California | HYUNDAI AMERICA TECHNICAL CENTER | 81 BUNSEN IRVINE, CA 92618 USA | HYUNDAI MOTOR COMPANY & KIA MOTORS |

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO DISMISS

Case No.: 22-ML-03052-JVS-KES

Those facts directly support Plaintiffs' allegations that Hyundai and Kia were sending "test vehicles" to California, in order to ensure manufacturing compliance with applicable NHTSA safety standards. *See* Dkt No. 176 at ¶ 265.  These forum-specific testing and manufacturing practices independently demonstrate sufficient minimum contacts for the assertion of personal jurisdiction because the Korean entities "design[ed] the product for the market in the forum State[.]" *LNS Enterprises LLC v. Continental Motors, Inc.* 22 F.4th 852, 861 (9th Cir. 2022).  Those forum-specific design decisions and interactions with US based regulators formed the basis of the Central District's decision to assert personal jurisdiction over the Korean entities less than three years ago. *Zakikhan v. Hyundai Motor Company* (C.D. Cal., June 28, 2021) 2021 WL 4805454, at *4.

Publicly available documents, tracked, recorded, and cataloged by an international-trade industry expert, prove that Plaintiffs' jurisdictional allegations are factually true. In fact, the majority of the Korean entities' shipments to the United States were directed at California specifically.  The records show that, between November 1, 2006 and March 1, 2024, HMC initiated approximately 10,510 shipments to U.S. ports. *See* Bonenfant Decl., Apx. B.  More than 70% of HMC's shipments (7,503) were delivered directly to the State of California.  *See* Bonenfant Decl., Apx. A.  Similarly, KC directed approximately 4,868 shipments of vehicles and automobile parts to the State of California.  *See* Bonenfant Decl., Apx. C. Shipments to California constituted approximately 77% of all of KC's to the United States over the same period of time. *See* Bonenfant Decl., Apx. C, D.  Entities that dispatch the vast majority of their United States-bound product to California cannot plausibly dispute that they purposely directed their business activities toward the State. At minimum, the ImportGenius shipping records establish facts which contradict the representations contained within the Defendants' declarations. As a

matter of law, those contradictions must be resolved in Plaintiffs' favor - mandating. *LNS Enterprises LLC v. Continental Motors, Inc.* 22 F.4th 852, 859 (9th Cir. 2022)

## C.    This Court Has Specific Personal Jurisdiction Over the Korean Entities

The United States Supreme Court has addressed specific personal jurisdiction in the context of global car manufacturers in two cases: *World-Wide Volkswagen v. Woodson,* 444 U.S. 286 (1980) and *Ford v. Montana Eighth Judicial Dist.,* 592 U.S. 351 (2021). Those decisions make it abundantly clear this Court may exercise specific personal jurisdiction over the Korean Entities.  In fact, if this Court were to accept Defendants' position, it is difficult to imagine a factual scenario where *any* court, state or federal, could constitutionally hold KC or HMC liable for injuries in the United States.  That is plainly not the law.

*World-Wide Volkswagen* established the bedrock rule that "[w]hen a corporation purposefully avails itself of the privilege of conducting activities within the forum State it has clear notice that it is subject to suit there[.]" 444 U.S. at 297. Hence, if the sale of a vehicle manufacturer's product "arises from the efforts of the manufacturer" to serve the California market "it is not unreasonable to subject it to suit" here when its "defective merchandise has there been the source of injury to its owner or to others." *Id.*

Forty years later, the *Ford* Court confirmed that purposeful availment, in the very specific context of global vehicle manufacturers, encompasses both direct and indirect efforts: "specific jurisdiction attaches in cases identical to this one--when a company cultivates a market for a product in the forum State and the product malfunctions there." 592 U.S. at 363. Whether coached as "directly or indirectly" or "cultivates a market" or "serves a market," the intent of the court, as applicable to multi-national product manufacturers, is both clear and logical. Their products do not fortuitously or accidently wind up in the United States generally and each of its

fifty states specifically. Consistent with the *Ford* court's holding, Plaintiffs'

Complaint alleges, "HMC and KC intentionally and specifically designed and sold

vehicle models without immobilizers uniquely into the United States market." *Dkt

No.*176 at ¶¶ 3, 293. "When a company like Ford serves a market for a product in a

State and that product causes injury in the State to one of its residents, the State's

courts may entertain the resulting suit." *Id.* at 355. That exact same analysis applies

here. The Korean entities are also foreign corporation who serve the market for

automobiles and automotive parts in the State of California.

Furthermore, the evidence that the Korean entities intentionally directed their

activities into California is overwhelming. For personal jurisdiction purposes the

"threshold of what constitutes an intentional act is *relatively low*[.]" *AirWair Int'l Ltd.

v. Schultz*, 73 F. Supp. 3d 1225, 1233 (N.D. Cal. 2014). In foreign manufacturer cases,

"[a] showing that a defendant purposefully directed his conduct toward a forum state

[. . .] usually consists of evidence of the defendant's actions outside the forum state

that are directed at the forum, such as the distribution in the forum state of goods

originating elsewhere." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797,

803 (9th Cir. 2004).  Similarly, personal jurisdiction attaches when a foreign vehicle

manufacturer retains some control over its manufacturing processes within California.

*Falco v. Nissan N. Am. Inc*., 96 F. Supp. 3d 1053, 1058 (C.D. Cal. 2015).  While the

defendants disingenuously imply that Plaintiffs rely upon a "stream of commerce"

theory, the key allegations and facts contained within Plaintiffs' Complaint comport

with the Supreme Court's holdings in *World-Wide Volkswagen* and *Ford.*  The Korean

entities demonstrably shipped and directed vehicles and vehicle parts to this State and

tested them here. In short, *Ford* applies, and this Court may exercise personal

jurisdiction.

///

///

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA
AMERICA, INC.'S MOTION TO DISMISS

Case No.: 22-ML-03052-JVS-KES

**D.    Thornton and Ditter are Not Controlling Precedent**

Defendants ask this Court to ignore decades of Supreme Court precedent mandating personal jurisdiction, and instead apply two non-binding decisions from different circuits. A cursory review of those cases demonstrates they are plainly inapplicable to this matter. *Thornton* is a decision from the Northern District of Alabama that predates *Ford* by a year and thus could not have accounted for the Supreme Court's further explication of its personal jurisdiction jurisprudence at all. *Thornton v. Bayerische Motoren Werke AG,* 439 F.Supp.3d 1303 (N.D. Ala. 2020). Even more critically, the *Thornton* court's decision applied a legal test specific to the 11th Circuit; noting that "in this Circuit, a tort arises out of or relates to the defendant's activity in a state only if the activity is a 'but-for' cause of the tort." *Id.* at 1309.(internal citations omitted).  There is no similar "but-for" test in the 9th Circuit, and the validity of the *Thornton* court's application of this test is highly doubtful following the Supreme Court's subsequent guidance in *Ford.*

Furthermore, the record in this case differs substantially.  In *Thornton.* the German manufacturer BMW submitted declarations contesting personal jurisdiction. *Id.* at 1310. The Plaintiff responded only by making "conclusory" allegations about BMW's contacts with the forum state and failed to "cite[] any evidence to support [them] or provide[] any specific facts about the nature and extent of the alleged relationships." *Id.* at 1311. For that reason, the *Thornton* court determined the Plaintiff failed to meet her burden to establish minimum contacts or purposeful availment. *Id.* Here, Plaintiffs have provided detailed and specific evidence of the Korean entities' activities in the Forum state – precisely what the *Thornton* court said the Plaintiff there lacked.  Plaintiffs' submission of detailed customs records alone demonstrate that *Thornton* does not apply.

*Ditter,* an unreported case from the District of Colorado in the 10th  Circuit, has even less precedential value. *Ditter v. Subaru Corporation* (D. Colo., Mar. 25, 2022,

16

No. 20-CV-02908-PAB-MEH) 2022 WL 889102. There, the Plaintiffs based their personal jurisdiction theories entirely upon a stream-of-commerce theory that had been specifically disclaimed by the 10th Circuit. *Id.* at *4. The *Ditter* court also noted that the plaintiffs did "not contradict Subaru Corporation's affidavit regarding Subaru Corporation's lack of contacts with Colorado." *Id.* at *8. In essence, the *Ditter* Plaintiffs effectively conceded Subaru's underlying factual contentions, and failed to create even a question of fact that would give them a chance to prevail on the merits. The Plaintiffs in this matter have not permitted the Defendants' contentions to go unrebutted, and *Ditter* does not apply because the Court is "obligated to resolve conflicting statements in Plaintiffs' favor." *LNS Enterprises LLC v. Continental Motors, Inc.* 22 F.4th 852, 859 (9th Cir. 2022).

## E.     The Korean Entities Internet Presence and Sales Activities Also Constitute a Basis for Personal Jurisdiction

The Korean entities can also be subjected to personal jurisdiction based upon the combination of their contacts with the forum state and their operation of a geographically-aimed interactive website. In their argument to the contrary, Defendants lean heavily upon a misplaced application of *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023) and *LNS Enterprises LLC v. Cont'l Motors, Inc*., 22 F.4th 852, 859-61 (9th Cir. 2022). *Briskin* involved statutory data-privacy claims resulting from California users accessing globally accessible interactive websites. The *Briskin* court held that it lacked personal jurisdiction over Shopify, a cloud-based entity with no almost physical presence, because there was no evidence that Shopify ever specifically aimed its conduct or commercial operations at the forum State. 87 F.4th at 419. The Ninth Circuit explained that, without "something more" personal jurisdiction could not be exerted over an out-of-state defendant for operating an interactive website.

*Briskin* is inapplicable because the Plaintiffs in this case clearly allege "something more" (*id.* at 419-20) than just operating a website accessible from anywhere. Here, Hyundai- and Kia-branded vehicles, *physical objects*, were designed and manufactured by the Korean entities.  Those physical objects were then stolen and damaged in California as a result of their defective designs. Those thefts are geographically anchored in the forum state, establishing precisely the connection between the Korean entities and California contemplated by the Supreme Court in *Ford. See Ford Motor Co.* 592 U.S. at 363.

*LNS Enterprises LLC* is similarly inapplicable. *LNS Enterprises LLC v. Continental Motors, Inc.* 22 F.4th 852, 859 (9th Cir. 2022). There, the plaintiff sued a manufacturer of airplane engines. The plaintiff did not allege that the engine manufacturer made any attempts to sell engines to Arizona residents at the trial court level, instead improperly presenting that evidence for the first time on appeal. *Id.* at 862.  Furthermore, the plaintiff only alleged that the manufacturer's website provided information on how to find installation and repair shops within the state, rather than making any attempt to actually sell products into the State. *Id.* at 863. This case's factual record plainly differs substantially. The Korean entities actively operate and maintain interactive websites which invite users to enter their specific geographical location in order to purchase specific Hyundai- or Kia- branded vehicle anywhere in the United States: including California.[2] In *LNS Enterprises LLC*, the plaintiffs could only allege the existence of a point passive website and assert "stream of commerce" theory. Here Plaintiffs have done far more.

By way of comparison, the Korean entities conveniently neglect to cite applicable 9th Circuit precedent in the form of *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1094 (9th Cir. 2023). In *Herbal Brands,* the court properly asserted

---

[2] *See* https://www.hyundai.com/gd/en/build-a-car/request-a-brochure;
https://owners.kia.com/content/owners/en/manuals.html

personal jurisdiction because the defendant's interactive website invited Arizona residents to insert their geographical location. Subsequently, the defendant sold products to those Arizona residents. The court held that the assertion of personal jurisdiction was proper *despite* noting about haling out-of-state defendants into foreign courts simply because they operate interactive websites. It did so because the defendant, using the website, had purposely initiated sales and market activity in the forum state.  This case is plainly more similar to *Herbal Brands* than to *Briskin* or to *LNS Enterprises LLC.* The Korean entities directed their website and sales activities towards California on a geographically differentiated basis. They are, as a result, subject to jurisdiction in California.

### F.    Jurisdictional Discovery

In the event this Court is inclined to grant Defendants' Motion, Plaintiffs request they be provided an opportunity to conduct discovery in order to more fully develop a sufficient record. As more fully elaborated in Plaintiffs Motion for Leave to Conduct Jurisdictional Discovery, "[d]iscovery is available in federal court to establish the presence of personal jurisdiction in that court." *Gibson v. Chrysler Corp*., 261 F.3d 927, 948 (9th Cir. 2001) (citations omitted).  Jurisdictional discovery is particularly appropriate when "pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (quoting *Data Disc, Inc*., 557 F. 2d at 1285 n.1.).

### <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Hyundai and Kia's Motion based on personal jurisdiction. If the Court however finds there are questions of fact that cannot be resolved based on the current record, Plaintiffs ask the Court to hold any personal jurisdiction in decision in abeyance and grant Plaintiffs leave to conduct jurisdictional discovery.

1    In the alternative, if the Court grants the Motion in whole or in part, Plaintiffs
2 respectfully request that the Court grant Plaintiffs leave to amend.

3

4

5 Dated: March 22, 2024             Respectfully submitted,

6                                   COZEN O'CONNOR

7                                   By: _s/Nathan Dooley_____

8

9                                   GROTEFELD HOFFMANN

10                                  By: s/_William Hoffmann_____

11

12                                  LAW OFFICES OF ROBERT A. STUTMAN, P.C.

13                                  By: _s/Timothy E. Cary_____

14

15                                  BERGER KAHN, A LAW CORPORATION

16                                  By: _s/Craig S. Simon_____

17                                  *Attorneys for Subrogation Plaintiffs*

18

19

20

21

22

23

24

25

26

27

28
                                    20

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Subrogation Plaintiffs certifies that this brief contains 4,819 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 22, 2024                    COZEN O'CONNOR

                                         By:   /s/ *Megan Peitzke*
                                               Megan Peitzke
                                               *Lead Attorneys for*
                                               *Subrogation Plaintiffs*

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO DISMISS
Case No.: 22-ML-03052-JVS-KES

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 22, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Grace Graham-Zamudio*

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO DISMISS

Case No.: 22-ML-03052-JVS-KES