Elliott R. Feldman (*Pro Hac Vice*)
Nathan Dooley (SBN 224331)
Megan R. Peitzke (SBN 230375)
Kevin P. Caraher (*Pro Hac Vice*)
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: 215.665.2071
*EFeldmanM.@cozen.com*

*Attorneys for Class Subrogation Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 22-ML-03052-JVS-KES |
| | The Honorable James V. Selna |
| | **CLASS SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO STRIKE CLASS ALLEGATIONS FROM THE AMENDED CONSOLIDATED COMPLAINT** |
| | Judge: Hon. James V. Selna<br>Ctrm:  10C<br>Date:  April 19, 2024<br>Time:  9:00 a.m. |
| This document relates to:<br><br>ALL SUBROGATION CASES | |

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO
STRIKE CLASS ALLEGATIONS

## <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

I.   INTRODUCTION .................................................................................................9

II.  BACKGROUND ...............................................................................................11

III. LEGAL STANDARD .......................................................................................12

  A.   Federal Rule of Civil Procedure 12(f) .......................................................12

IV.  ARGUMENT ....................................................................................................13

  A.   Common Questions Clearly Outweigh Individualized Inquiries ...............14

    1)   Subrogation Claims do not Present Limitless Individualized Questions ....15

      a.   Subrogation Does Not Involve a Two-Part Inquiry .................................17

      b.   Subrogation Does Not Turn on Individualized Questions .......................20

      c.   The Insureds' Claims Do Not Turn on Individualized Questions ...........21

    2)   A Nationwide Class of Subrogation Plaintiffs is Proper ...........................23

      a.   Any Variation in Subrogation Rights by State is Not Material ...............23

      b.   This Court's Holdings in *Forcellati* and *Khorrami* are Dispositive ........26

  B.   The Class Allegations Satisfy the Superiority Requirement .......................27

V.   CONCLUSION .................................................................................................29

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO STRIKE CLASS ALLEGATIONS

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adelstein ex rel. Adelstein v. Unicare Life & Health Ins. Co.*,
   No. 99-1544-28, 2000 WL 35808378 (M.D. Fla. Dec. 27, 2000) ...............19, 20

*Amchem Prods., Inc. v. Windsor*,
   521 U.S. 591 (1997) ........................................................................14

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ........................................................23

*Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*,
   718 F.Supp.2d 1167 (N.D. Cal. 2010).................................................12

*Blackie v. Barrack*,
   524 F.2d 891 (9th Cir. 1975) .........................................................14, 15

*Bradach v. Pharmavite, LLC*,
   735 F.App'x 251 (9th Cir. 2018).......................................................22

*Bruno v. Eckhart Corp.*,
   280 F.R.D. 540 (C.D. Cal. 2012).......................................................26

*Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*,
   217 F.Supp.2d 1028 (C.D. Cal. 2002)................................................12

*Cameron v. E.M. Adams & Co.*,
   547 F.2d 473 (9th Cir.1976) ............................................................22

*Chandler v. State Farm Mut. Auto Ins. Co.*,
   596 F.Supp.2d 11314 (C.D. Cal. 2008)...........................................24, 25

*Cheatham v. ADT Corp.*,
   161 F.Supp.3d 815 (D. Ariz. 2016) ...................................................14

*Cholakyan v. Mercedes-Benz USA, LLC*,
   796 F.Supp.2d 1220 (C.D. Cal. 2011) ...............................................13

*Clark v. State Farm Mut. Auto Ins. Co.*,
   231 F.R.D. 405 (C.D. Cal. 2005).......................................................13

*Cole v. Asurion Corp.*,
  No. CV 06–6649PSGJTLX, 2008 WL 5423859 (C.D. Cal. Dec. 30, 2008) ............................................................................................................. 13

*Employers Mut. Liab. Inc Co. v. Pac. Indemnity Co.*,
  167 Cal.App.2d 369 (1959) ............................................................................ 16

*Esurance Prop. & Cas. Ins. Co. v. Mich. Assigned Claims Plan*,
  968 N.W.2d 482 (Mich. 2021) ........................................................................ 19

*Fed. Ins. Co. v. Arthur Andersen & Co.*,
  75 N.Y.2d 366 (N.Y. Ct. App. 1990) .............................................................. 18

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*,
  65 Cal.App.4th 1279 (1998) ................................................................. 16, 17, 19

*Forcellati v. Hyland's, Inc.*,
  876 F.Supp.2d 1155 (C.D. Cal. 2012) ..................................................... 26, 27

*Frost v. Porter Leasing Corp.*,
  386 Mass. 425 (Mass. 1982) .......................................................................... 20

*GEICO Corp. v. Autoliv, Inc.*,
  345 F.Supp. 3d 799 (E.D. Mich. 2018) ......................................................... 23

*Gibbs v. Hawaiian Eugenia Corp.*,
  966 F.2d 101 (2d. Cir. 1992) .......................................................................... 20

*Glacier Gen. Assur. Co. v. G. Gordon Symons Co., Ltd.*,
  631 F.2d 131 (9th Cir. 1980) .......................................................................... 19

*Haley v. Medtronic, Inc.*,
  169 F.R.D. 643 (C.D. Cal. 1996) .................................................................... 14

*Head v. Citibank, N.A.*,
  340 F.R.D. 145 (D. Ariz. 2022) ...................................................................... 21

*In re Jamster Mktg. Litig.*,
  No. 05CV0819 JM (CAB), 2009 WL 1456632 (S.D. Cal. May 22, 2009) .............................................................................................................. 13

*Jorski Mill & Elevator Co. v. Farmers Elevator Mut. Ins. Co.*,
  404 F.2d 143 (10th Cir. 1968) ........................................................................ 18

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO STRIKE CLASS ALLEGATIONS

*In re JUUL Labs, Inc., Mktg. Sales Practices and Products Liability Litig.*,
609 F.Supp.3d 942 (N.D. Cal. 2022) ................................................................. 22

*Kamm v. Cal. Cty Dev. Co.*,
509 F.2d 205 (9th Cir. 1975) .............................................................................. 27

*Keck v. Alibaba.com, Inc.*,
2018 WL 4181955 (N.D. Cal. July 31, 2018) ................................................... 14

*Keegan v. Am. Honda Motor Co., Inc.*,
284 F.R.D. 504 (C.D. Cal. 2012) ....................................................................... 23

*Khorrami v. Lexmark Intern. Inc.*,
2007 WL 8031909 (C.D. Cal. Sept. 13, 2007) ....................................... 21, 26, 27

*In Re Kia Hyundai Vehicle Theft Litig.*,
2023 WL 8126869 (C.D. Cal. Nov. 15, 2023) 9, 11, 17, 18, 19, 20, 21, 22, 23, 24

*Krzesniak v. Cendant Corp.*,
2007 WL 1795703 (N.D. Cal. June 20, 2007) ................................................... 28

*In re Land Rover LR3 Tire Wear Products Liability Litig.*,
2012 WL 5473736 (C.D. Cal. Oct. 24, 2012) .................................................... 13

*Leyva v. Medline Industries Inc.*,
716 F.3d 510 (9th Cir. 2013) .............................................................................. 28

*Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*,
244 F.3d 1152 (9th Cir. 2001) ............................................................................ 15

*Lopez v. Progressive Cnty. Mut. Ins. Co.*,
No. 19-380, 2020 WL 6391214 (W.D. Tex. Nov. 2, 2020) ......................... 19, 20

*Mazza v. Am. Honda Motor Co., Inc.*,
666 F.3d 581 (9th Cir. 2012) ................................................................... 10, 23, 26

*Muller v. Society Ins.*,
750 N.W.2d 1 (Wis. 2008) ................................................................................. 25

*Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*,
265 F.3d 601 (7th Cir. 2001) .............................................................................. 20

*Ngethpharat v. State Farm Mut. Ins. Co.*,
   339 F.R.D. 154 (W.D. Wash. 2021) ................................................................... 28

*Offer v. Sup. Ct. of San Fransisco*,
   194 Cal. 114 (1924) ............................................. 10, 16, 18, 19, 20, 24

*Ogala v. Chevron Corp.*,
   No. 14-cv-173-SC, 2014 WL 4145408 (N.D. Cal. Aug. 21, 2014) ................... 12

*Platte Anchor Bolt, Inc. v. IHI, Inc.*,
   352 F.Supp.2d 1048 (N.D. Cal. 2004) ............................................................. 12

*Pulte Home Corp. v. CBR Elec., Inc.*,
   50 Cal.App.5th 216 (2020) ............................................................................. 21

*Romero v. Securus Tech., Inc.*,
   331 F.R.D. 391 (S.D. Cal. 2018) ...................................................................... 28

*Rosales v. FitFlop USA, LLC*,
   882 F.Supp.2d 1168 (S.D. Cal. 2012) .............................................................. 13

*S.E.C. v. Sands*,
   902 F.Supp. 1149 (C.D. Cal. 1995) .................................................................. 13

*Scottsdale Ins. Co. v. Kat Constr. LLC*,
   No. CV 21-00278, 2022 WL 20652788 (D.N.J. Oct. 5, 2022) ......................... 24

*Sereboff v. Mid Atlantic Med. Servs., Inc.*,
   547 U.S. 356 (2006) ........................................................................................ 25

*Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*,
   17 Cal.4th 553 (1998) ..................................................................................... 11

*Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   No. C-13-1803 EMC, 2014 WL 1048710 (N.D. Cal. Mar. 14, 2014) .............. 12

*Torres v. Mercer Canyons Inc.*,
   835 F.3d 1125 (9th Cir. 2016) ......................................................................... 14

*Tyson Foods, Inc. v. Bouaphakeo*,
   136 S.Ct. 1036 (2016) ..................................................................................... 14

*US Airways, Inc v. McCutchen*,
   569 U.S. 88 (2013) .......................................................................................... 17

*In re V. Pangori & Sons, Inc.*,
    53 B.R. 711 (E.D. Mich. 1985) ................................................................. 18

*Valencia v. Volkswagen Grp. of Am. Inc.*,
    Case No. 15-cv-00887-HSG, 2015 WL 4760707 (N.D. Cal. Aug.
    11, 2015) ................................................................................................... 26

*Valentino v. Carter–Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ................................................................... 28

*Viriyapanthu v. California*,
    2018 WL 6265091 (C.D. Cal. June 7, 2018) ........................................... 10

*In re Wal-Mart Stores, Inc. Wage and Hour Litig.*,
    505 F.Supp.2d 609 (N.D. Cal. 2007) ...................................................... 27

*Waller v. Hewlett-Packard Co.*,
    295 F.R.D. 472 (S.D. Cal. 2013) ............................................................. 22

*Wang v. Chinese Daily News, Inc.*,
    737 F.3d 538 (9th Cir. 2013) ................................................................... 14

*Winkelmann v. Excelsior Ins. Co.*,
    650 N.E.2d 841 (N.Y. 1995) ............................................................. 24, 25

*Wolin v. Jaguar Land Rover N. Am., LLC*,
    617 F.3d 1168 (9th Cir. 2010) ........................................................... 27, 28

*Wren v. RGIS Inventory Specialists*,
    256 F.R.D. 180 (N.D. Cal. 2009) ............................................................ 28

*In re Yanke*,
    230 B.R. 374 (8th Cir. 1999) ................................................................... 17

*Zinser v. Accufix Rsch. Inst., Inc.*,
    253 F.3d 1180 (9th Cir.) ........................................................................... 27

*Zurich-American Ins. Co. v. Eckert*,
    770 F.Supp. 269 (E.D. Pa. 1991) ............................................................ 18

**Other Authorities**

Bisco and Fier, *How's Recovery? Salvage and Subrogation in the
    Property Liability Insurance Industry* (2023) ........................................ 10

F. R. Civ. Proc. 17(a) ..................................................................................... 19

Fed. R. Civ. P. 23 ................................................................................................ 11, 13

Fed. R. Civ. P. 23 (2) ................................................................................................ 13

Fed. R. Civ. P. 23(b)(3) ............................................................... 9, 14, 15, 17, 27

Fed. R. Civ. P. 23(b)(3)(A)-(D) ........................................................................ 11, 27

Fed. R. Civ. P. 23(b)(3)(A) through (D) ................................................................ 27

Federal Rule of Civil Procedure 12(f) .................................................................... 12

Johnny Parker, "The Made Whole Doctrine: Unravelling the Enigma
    Wrapped in the Mystery of Insurance Subrogation." 70 Mo. L. Rev.
    723, 723 (2005) ................................................................................................ 24

I.    **INTRODUCTION**

Defendants prematurely move to strike class allegations, contending no such class could ever be certified in any jurisdiction, even after discovery, because establishing derivative subrogation rights will fail the test of predominance and superiority in Rule 23(b)(3). They are wrong for multiple, independent reasons. Defendants gravely mischaracterize the law. Defendants' over-reach is apparent from their arguments as to the made-whole doctrine, which can only apply if Defendants are insolvent, and consumers had not already settled their class claims (with a carve-out for subrogation claims). Tellingly, *outside of this filing*, Defendants *do not appear to have publicly disclosed any threat of bankruptcy*. [1]

Regarding predominance, this Court held it unnecessary for Class Plaintiffs to plead specifics for each insured, *see In Re Kia Hyundai Vehicle Theft Litig.*, 2023 WL 8126869, at *7 (C.D. Cal. Nov. 15, 2023) (hereinafter "Theft Litig."), yet Defendants again argue that Class Plaintiffs, at the pleading stage, "must individually prove (1) their own right to proceed on an insured's behalf and (2) their insured's claim against a third-party." Dkt. 307, at p. 2: 8-10. Defendants also incorrectly claim the Court must individually review every insurance policy and individual proof of every insured's reliance on Defendants' misrepresentations and omissions, *see id.* at p. 14: 3-5, but again, this Court already rejected similar arguments. *See Theft Litig.*, 2023 WL 8126869, at *8. Thus, Defendants' Motion seems a disguised motion for reconsideration. They "misunderstand the principles of a subrogation claim," this time perhaps deliberately, to create an illusion of individual issues to counter the predominate common liability issues. *Id.* at *13 n. 7.

---

[1] The basis for Defendants' arguments based on the made whole doctrine should be squarely addressed so that any issues as to Defendants' possible bankruptcy can be quickly resolved and their shareholders appropriately informed. Notably, Defendants elsewhere claim they are well-capitalized when it suits them. *See, e.g.*, Dkt. 312-1 ¶ 15 and Dkt. 312-2 ¶ 14. This apparent discrepancy also helps to show why jurisdictional discovery is warranted.

Second, Defendants erroneously claim "subrogation law varies significantly by state in potentially outcome-determinative ways." Dkt. 307; p. 2: 17-18. However, Defendants fail to cite to a material difference between California and any another state, while making the blanket assertion such differences will affect this litigation. Their failure to meet this burden mandates denial of their Motion.[2] *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 590-91 (9th Cir. 2012) (the defendant "exhaustively detailed the ways in which California law differ[ed] from the laws of the 43 other jurisdictions in which class members reside," but the Court found that the defendant "had not met its burden of demonstrating that any of these differences were material").

In every jurisdiction, subrogation is rooted in equity and favored by courts because it places the burden of paying for wrongful conduct on the party who, in equity and good conscience, should bear that responsibility as the tortfeasor. *See, e.g.*, *Offer v. Sup. Ct. of San Fransisco*, 194 Cal. 114, 116-19 (1924). The policy goals of subrogation, by placing financial responsibility on the wrongdoer, "allow insurers[s] to keep rates lower than they would otherwise be without these recovery options." *See* Bisco and Fier, *How's Recovery? Salvage and Subrogation in the Property Liability Insurance Industry* (2023).

Subrogation also preserves defenses that can be raised in this action. Subrogation rights are so favored that, in an insurance context, they arise by operation of law or equity, by contract and by statute–a simple fact Defendants ignore. Class treatment is the best procedure to ensure efficient adjudication of Defendants' liability while protecting the interests of unnamed plaintiffs.[3]

---

[2] To the extent Defendants intend to make additional arguments in their Reply that they failed to make in their Motion, such argument should be disregarded. *See Viriyapanthu v. California*, 2018 WL 6265091, at *12 n. 1 (C.D. Cal. June 7, 2018).
[3] Defendants state in the opening paragraph that other carriers are opting out and speculate as to the reasons for that decision. This assertion appears to be an unseemly attempt to pierce the veil of attorney client privilege and drive a wedge between Plaintiff groups, as Defendants face a multi-billion-dollar class action due to their own wrongful conduct. Defendants cannot possibly surmise the reasons why any insurance carrier might opt out. It should not be difficult to imagine why parties that are often

Regarding superiority, Defendants fail to apply the correct standard for assessing the four non-exclusive factors to determine whether class treatment is superior. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). In fact, Defendants incorrectly focus their analysis almost exclusively on the first of the four factors without addressing the others, each of which weigh in favor of superiority. The application of the correct standard reveals Class Plaintiffs easily satisfy the superiority requirement.

Finally, no portion of Rule 23 precludes the assertion of subrogation rights in a class action. Defendants contend the need for individual proof overwhelms common issues; however, as this Court stated in the Order denying Defendants' Motion to Dismiss, these can be adequately addressed during discovery. *See Theft Litig.*, 2023 WL 8126869, at *7. Similar to how damages will be established, Defendants can raise all their defenses at the appropriate time, but raising them at the pleading stage is premature. Consumer class actions similar to the one described in the Amended Consolidated Complaint ("ACC") are often certified for litigation or settlement, as was the Consumer Class in this case. This case should be no different simply because Class Plaintiffs are subrogees standing in the shoes of consumers who already settled their claims.

## II.   **BACKGROUND**

The ACC alleges nationwide classes, and subclasses in each state, the District of Columbia, and Puerto Rico. Defendants knowingly sold at least 14.3 million vehicles (the "Vehicles") which lacked vital safety components, including immobilizers to prevent thefts of the Vehicles, per Defendants' own customer satisfaction campaigns. *See* Dkt. 176 ¶ 1. Defendants' failure to include necessary safety components, and related design flaws (hereinafter referred to collectively as

---

subject to class action complaints–including actions brought by the same consumer counsel appearing in this MDL–may be hesitant to adopt the procedure they often oppose. Finally, there is no authority holding an insurance carrier class could not be certified. *See Stop Youth Addiction, Inc. v. Lucky Stores, Inc.*, 17 Cal.4th 553, 561 (1998) (holding a corporation could bring a UCL representative action on behalf of the general public).

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO STRIKE CLASS ALLEGATIONS

"Thief Friendly Design"), constitute a violation of Federal Motor Vehicle Safety Standards promulgated by the National Highway Traffic Safety Administration ("NHTSA") and a flagrant disregard for public safety. *See* Dkt. 200 at 2. The Thief Friendly Design allows thieves to steal the Vehicles in less than ninety seconds. *Id.* After the "Kia Boyz" publicized that fact, thefts increased exponentially. *Id.* As a result, consumers sustained property and personal injury, sometimes resulting in death. *Id.* As a result, Class Plaintiffs issued payments in excess of $1 billion.

Defendants' Thief Friendly Design is well-documented, including consistent media coverage since at least 2020. *See* Dkt. 200 at 2. Notably, this Court initially declined to approve the consumer class action proposed settlement until the Court obtained further assurances the design flaws would be remediated. *Id.* at 24–26, 30.

## III.   **LEGAL STANDARD**

### A.   **Federal Rule of Civil Procedure 12(f)**

Motions to strike "are generally disfavored because the motions may be used as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F.Supp.2d 1167, 1170 (N.D. Cal. 2010). They "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F.Supp.2d 1048, 1057 (N.D. Cal. 2004).

A motion to strike class allegations is subject to "a very strict standard." *Ogala v. Chevron Corp.*, No. 14-cv-173-SC, 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014). Class allegations may only be stricken under "rare circumstances" where "the complaint demonstrates that a class action cannot be maintained on the facts alleged." *Tasion Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014) (citation omitted).

The court "views the pleadings in the light most favorable to the non-moving party." *Cal. Dep't of Toxic Substances Control v. Alco Pac., Inc.*, 217 F.Supp.2d 1028, 1033 (C.D. Cal. 2002). Defendant bears the burden of proving the class is not

certifiable as the defendant is bringing the motion in advance of discovery. *See In re Land Rover LR3 Tire Wear Products Liability Litig.*, 2012 WL 5473736, at *2 (C.D. Cal. Oct. 24, 2012). The grounds for a motion to strike must appear on the face of the pleading. *See S.E.C. v. Sands*, 902 F.Supp. 1149 (C.D. Cal. 1995).

Although "addressing these arguments at a later date will require additional time and expense on the part of the defendants, this Court has held that it is 'reluctant to preemptively deny [a] [p]laintiff at least the opportunity to present a motion for class certification.'" *Cole v. Asurion Corp.*, No. CV 06–6649PSGJTLX, 2008 WL 5423859, *14 (C.D. Cal. Dec. 30, 2008). Finally, "[e]ven though the arguments of [the defendant[s]] may ultimately prove persuasive," courts have "declined to address the issues of class certification" in a motion to strike class allegations under the premise that "[p]iece-meal resolution of issues related to the prerequisites for maintaining a class action do not serve the best interests of the court or parties." *In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, *7 (S.D. Cal. May 22, 2009). Thus, if class allegations (1) address each of the elements of Rule 23, (2) relate to the subject matter of the litigation, and (3) are not redundant, immaterial, or impertinent, then the allegations are sufficient to survive a motion to strike. *Rosales v. FitFlop USA, LLC*, 882 F.Supp.2d 1168, 1179 (S.D. Cal. 2012) (quoting *Clark v. State Farm Mut. Auto Ins. Co.*, 231 F.R.D. 405, 407 (C.D. Cal. 2005)).

## IV.   <u>ARGUMENT</u>

Defendants claim class certification discovery would "merely waste time and money" and is unwarranted. *See* Dkt. 307 at 8. Defendants ignore it is exceedingly rare for a court to grant a motion to strike class allegations. *See, e.g.*, *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F.Supp.2d 1220, 1245-46 (C.D. Cal. 2011). Courts are reluctant to grant these because it may allow parties to skirt Rule 23 without actually evaluating an appropriate motion for class certification. *Rosales v. FitFlop USA, LLC*, 882 F.Supp.2d 1168, 1179 (S.D. Cal. 2012).

This Court should follow the clear precedent denying motions to strike class allegations as premature. *See, e.g.*, *Keck v. Alibaba.com, Inc.*, 2018 WL 4181955, at *3 (N.D. Cal. July 31, 2018); *Cheatham v. ADT Corp.*, 161 F.Supp.3d 815, 834 (D. Ariz. 2016). Defendants fail to explain why discovery would be unwarranted. Thus, this Court should deny the Motion and allow discovery.

## A.    Common Questions Clearly Outweigh Individualized Inquiries

Under Rule 23(b)(3), a class action may be certified where questions of law or fact common to the class "predominate" over questions affecting the individual members. Fed. R. Civ. Proc. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The ultimate predominance question is "whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045 (2016). Notably, "more important questions apt to drive the resolution of the litigation" carry greater weight than less significant individualized questions. *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016). So, "even if just one common question predominates, the action may be considered proper under Rule 23(b)(3) even though other important matters will have to be tried separately." *Tyson Foods, Inc*, 136 S.Ct. at 1045; *see also Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 545 (9th Cir. 2013).

Differentiated damages provide insufficient grounds to defeat a proposed class based on common liability issues. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 651 (C.D. Cal. 1996) ("the fact that plaintiffs will be entitled to different damages does not mean that common questions do not predominate."). Plaintiffs' class arguments are akin to

arguments based on differing amounts of damages and should not provide a basis for granting Plaintiffs' Motion.

Moreover, Class Plaintiffs' claims need not be identical. *See Local Joint Exec. Bd. of Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.*, 244 F.3d 1152, 1163 (9th Cir. 2001). Rather, the focus is whether the "variation [in the class member's claims] is enough to defeat predominance under Rule 23(b)(3)." *Id.* at 1163; *see also Blackie*, 524 F.2d at 902 ("[C]ourts have taken the common sense approach that the class is united by a common interest in determining whether defendant's course of conduct is in its broad outlines actionable, which is not defeated by slight differences in class members' positions[.]"). The predominant issues here are liability issues relating to whether the Vehicles were defectively designed.

Defendants rely on Judge Staton's *Engine I (Subrogation)* Order granting Mot. to Strike (Dkt. 81, at *6) to support their argument that Plaintiffs cannot satisfy predominance due to (1) individualized showings for core elements of Plaintiffs' claims, (2) individualized issues like statute of limitations, and (3) the application of the law in multiple states. That case, however, is easily distinguishable, including on the grounds that the same arguments as to the statute of limitation do not apply.

### 1) Subrogation Claims do not Present Limitless Individualized Questions

Examination of the requisite subrogation claim factors reveals these claims do not present unlimited individualized inquiries. Those factors are whether (1) the insured suffered a loss for which the defendant is liable; (2) the claimed loss was one for which the insurer was *not* primarily liable; (3) the insurer has compensated the insured in whole or in part for the loss; (4) the insurer has paid the claim of its insured to protect its own interest and not as a volunteer; (5) the insured has an existing, assignable cause of action which the insured could have asserted had it not been compensated by the insurer; (6) the insurer has suffered damages caused by the act or omission; (7) justice requires that the loss be entirely shifted from the insurer to the

defendant; and (8) the insurer's damages are in a liquidated sum. *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1292 (1998).

Establishing the first factor is the most critical element, and indisputably involves evidence common to all the Vehicles which contain the same defects, as opposed to individualized proof unique to each vehicle damaged or stolen. *Id.* Defendants seemingly do not contest the Class Vehicles contain a similar flawed design and rather sought to remedy it. Class Plaintiffs will prove their insureds suffered losses due to these common defects. Thus, there are not any individualized inquiries with respect to the first factor.

Establishing the second factor also involves common issues as the claimed losses are indisputably all "one[s] for which the insurer[s] [were] *not* primarily liable." *Fireman's Fund Ins. Co.*, 65 Cal.App.4th at 1292 (emphasis in original). The remaining factors are similarly easily satisfied without recourse to individualized proof.

Proving the third factor for each insurer merely requires proof of payment pursuant to an existing policy, a fact easily satisfied through discovery. The fourth factor is satisfied by producing information showing the claim was paid pursuant to a policy–another fact unlikely to vary by insured. The volunteer issue is inconsequential as "the courts have given a very liberal interpretation to the 'interest' required to distinguish a person from being a volunteer." *Employers Mut. Liab. Inc Co. v. Pac. Indemnity Co.*, 167 Cal.App.2d 369, 379 (1959). Insurance companies do not just give away money. The very act of making "good faith" payments eliminates volunteerism and establishes subrogation.

The fifth factor also involves common issues  By law, the very act of payment creates an existing, assignable cause of action against Defendants that each insured could have asserted had they not been compensated by Class Plaintiffs. *Offer*, 194 Cal. at 121. ("[T]he act of the insurance company in paying the amount of the loss

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO STRIKE CLASS ALLEGATIONS

suffered by the collision vested a complete ownership and right of action in such insurance company.")

The proof to establish (f) is also common as every insurer in the proposed Class suffered damages caused by Defendants' acts or omissions resulting in liability. The actual aggregated amounts of the payments represent the damages of each insurer and will be provided in discovery with information connecting the payments to Defendants' negligence. The issues of justice and superior equities raised in (g) are also unquestionably common, and the Court has already determined that Plaintiffs are not barred by the superior equities doctrine. *Theft Litig.*, 2023 WL 8126869, at *9-10. Finally, (h) involves the common issue that all of the insurers' damages "are in a liquidated sum, generally the amount paid to the insured[s]," which will be provided in discovery. *Fireman's Fund Ins. Co.*, 65 Cal.App.4th at 1292.

Comparing the required equitable subrogation elements to the Rule 23(b)(3) predominance standard, it is clear individual issues do not predominate. Defendants' arguments are based on a misunderstanding of law and should be rejected.

### a.   Subrogation Does Not Involve a Two-Part Inquiry

Defendants erroneously claim subrogation's derivative nature requires a two-part inquiry by cherry-picking quotes out of context. *See* Dkt. 307 at p. 10: 4-10. Defendants then stretch to propose "subrogation inquiries are inherently individualized" because they require this alleged two-part inquiry. *Id.* This argument simply misstates the law. "Subrogation simply means substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's right against a third party." *US Airways, Inc v. McCutchen*, 569 U.S. 88, 97 n.5 (2013) (citation omitted). What Defendants claim to be a two-part inquiry is actually one step. *See, e.g.*, *In re Yanke*, 230 B.R. 374, 378 (8th Cir. 1999) ("the surety's right of subrogation remains inchoate until payment is made to the oblige, but at the moment the payment is made, the surety steps into the shoes of the oblige and becomes entitled to pursue his cause of action in subrogation against the

principal"); *In re V. Pangori & Sons, Inc.*, 53 B.R. 711, 716 (E.D. Mich. 1985) ("the right of subrogation arises when the surety becomes obligated to satisfy the debts of its principal."). In short, Defendants attempt to split subrogation into a two-part inquiry where, by nature of the insurer standing in the shoes of the insured, the insurer uses the same facts to prove its right to relief as the basis for establishing liability. *See* Dkt. 307 at p. 10: 4-10 (internal quotations and citations omitted). As the California Supreme Court observed 100 years ago:

> The principle upon which the right of subrogation is founded applies to cases of suretyship, but it is applied in all cases in which "one party pays a debt for which another is primarily answerable, and which, in equity and good conscience, should have been discharged by the latter." . . . This right of the insurer against the wrongdoer does not rest upon any relation of contract or of privity between them, but arises out of the nature of the contract of insurance as a contract of indemnity. The right arises independent of a provision in the contract of insurance which gives the insurer the right to recover damages from the person responsible for the loss.

*Offer*, 194 Cal. at 118 (citations omitted); *see also Fed. Ins. Co. v. Arthur Andersen & Co.*, 75 N.Y.2d 366, 372 (N.Y. Ct. App. 1990) ("the rights of an insurer against a third party as equitable subrogee arise independently of any agreement").

In sum, establishing subrogation rights is an administerial act of producing limited policy information and the loss amounts paid. This Court already rejected the proposition "that Subrogation Plaintiffs must identify every insured on whose behalf they are seeking to recover or allege facts supporting the claims of each of those insureds." *See Theft Litig.*, 2023 WL 8126869, at *7. Nothing has changed to alter that analysis since November. Whether the claim arises as a matter of law, or by contract, does not change the grounds for subrogation. *See Zurich-American Ins. Co. v. Eckert*, 770 F.Supp. 269, 272 (E.D. Pa. 1991) ("whether contractually declared or founded in equity, the right to subrogation is to be governed by equitable principles"). Moreover, "[t]he right arises independent of a provision in the contract of insurance which gives the insurer the right to recover damages from the person responsible for the loss." *Offer*, 194 Cal. at 121; *see also Jorski Mill & Elevator Co. v. Farmers Elevator Mut. Ins. Co.*, 404 F.2d 143, 147 (10th Cir. 1968) ("Recognition of the

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO STRIKE CLASS ALLEGATIONS

principle that subrogation may arise, independently of contract[] because of legal or equitable considerations . . .").

The insured's entitlement to relief rests on the same analysis. "In the case of insurance, subrogation takes the form of an insurer's right to be put in the position of the insured in order to pursue recovery from third parties legally responsible for a loss the insurer has both insured and paid." *Fireman's Fund Ins. Co. v. Maryland Cas. Co.,* 65 Cal.App.4th 1279, 1291-92 (1988). Therefore, there is no two-step process. Proof of insurance and payment can be provided in discovery (*Theft Litig.*, 2023 WL 8126869, at *7).

Further, the Federal Rules, identical to California law, require an action to be prosecuted in the name of the real party in interest (*see* F. R. Civ. Proc. 17(a)) "so that the act of the insurance company in paying the amount of the loss suffered by the collision vested a complete ownership and right of action in such insurance company." *Offer*, 194 Cal. at 121. (emphasis in original); *see also Glacier Gen. Assur. Co. v. G. Gordon Symons Co., Ltd.*, 631 F.2d 131, 134 (9th Cir. 1980) ("subrogor is a real party in interest").

To argue subrogation inquiries are inherently individualized, Defendants cite three out-of-circuit opinions, which are factually distinguishable from this litigation and none of which state *all* subrogation claims are inherently individualized. Defendants' first case, a state court opinion, *Esurance Prop. & Cas. Ins. Co. v. Mich. Assigned Claims Plan*, 968 N.W.2d 482, 488 (Mich. 2021), states that "[e]quitable subrogation . . . must proceed on [a] case-by-case analysis." Defendants other two cases, *Lopez v. Progressive Cnty. Mut. Ins. Co.*, No. 19-380, 2020 WL 6391214, at *7 (W.D. Tex. Nov. 2, 2020) and *Adelstein ex rel. Adelstein v. Unicare Life & Health Ins. Co.*, No. 99-1544-28, 2000 WL 35808378, at *3 (M.D. Fla. Dec. 27, 2000), reveal in their parentheticals that the quotes Defendants cherry-pick are relegated to the facts of those specific cases, which are different from the facts here, rather than standing for the broad proposition that subrogation cases are inherently individualized. *See*

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO STRIKE CLASS ALLEGATIONS

Dkt. 307 at p. 10-11. Specifically, the *Lopez* Court noted that the "proposed class," not all subrogation classes, "encompasse[d] too many distinct factors regarding each subrogation claim to be collectively resolved in 'in one stroke.'" *Lopez*, 2020 WL 6391214, at *7. Similarly, the *Adelstein* Court found that the resolution of the proposed subrogation class would require distinctly fact-specific inquiries" in that particular case, not in all subrogation cases. *Adelstein*, 2000 WL 35808378, at *3. Therefore, Defendants' argument that *all* subrogation claims are inherently individualized is meritless.

### b.     Subrogation Does Not Turn on Individualized Questions

Defendants contend individual evidence is required, including analysis of each insurance policy, to assess the existence of subrogation rights. *See* Dkt. 307 at 11. *Offer* established the law now universally recognized that "the right [of subrogation] arises independent of a provision in the contract of insurance that gives the insurer a right to recover from [Defendants] responsible for the loss." *Offer v. Sup. Ct. of San Fransisco*, 194 Cal. 114, 118 (1924); *see also Mut. Serv. Cas. Ins. Co. v. Elizabeth State Bank*, 265 F.3d 601, 626 (7th Cir. 2001) ("the right to subrogation does not invariably depend on the existence of an agreement . . . [it] can arise simply from the fact of payment."); *Gibbs v. Hawaiian Eugenia Corp.*, 966 F.2d 101, 106 (2d. Cir. 1992) ("As a creature of equity, the right of subrogation does not arise from, nor is it dependent upon, statute or the terms of the contract of insurance."); *Frost v. Porter Leasing Corp.*, 386 Mass. 425, 427 (Mass. 1982) ("An insurer's right of subrogation may be reserved in an agreement between the insurer and the insured . . . or may arise by implication, as a matter of general law"). This Court already noted it "disagrees with Defendants that Class Plaintiffs must . . . allege facts supporting the claims of *each* of those insureds at this stage of litigation" because "that information is appropriately suited for discovery." *Theft Litig.*, 2023 WL 8126869, at *7. Defendants ignore that holding.

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO
STRIKE CLASS ALLEGATIONS

Defendants also contend the insurance payments and spreadsheets attached to the ACC require individualized inquiries. *See* Dkt. 307 at 12. However, this directly contravenes binding precedent establishing that "if liability can be determined at a class-wide basis, common issues predominate," and "[t]his is true even if, at the damages stage, there are 'non-injured' class members and individualized damages calculations are required." *Head v. Citibank, N.A.*, 340 F.R.D. 145, 152 (D. Ariz. 2022); *see also Theft Litig.*, 2023 WL 8126869, at *7 ("facts supporting the claims of *each* of those insureds at this stage of litigation" is best left for the discovery stage). Defendants also contend "[t]he extent and cause of payments will be a hotly contested issue based on the practices of individual insurers," thereby conceding the point that discovery is required before the Court can rule on this issue. *See* Dkt. 307 at p. 12: 12-14. "[T]o strike the nationwide class now, it would in effect be ruling that nationwide or multi-state class action suits could never exist because of the variation in each state's substantive laws" without giving Class Plaintiffs the opportunity to advance to discovery. *Khorrami v. Lexmark Intern. Inc.*, 2007 WL 8031909, at *4 (C.D. Cal. Sept. 13, 2007).

### c.   The Insureds' Claims Do Not Turn on Individualized Questions

Defendants claim insurers must also prove each individual insured's claim against Defendants, citing to one of the eight elements of an insurer's cause of action for equitable subrogation in *Pulte Home Corp. v. CBR Elec., Inc.*, 50 Cal.App.5th 216, 229 (2020). *See* Dkt. 307 at 13. This Court already expressly held it was unnecessary for Class Plaintiffs to plead specifics for each insured. *See Theft Litig.*, 2023 WL 8126869, at *7 (C.D. Cal. Nov. 15, 2023). Defendants also argue "all of the claims will be subject to the question of whether the alleged losses were causally connected to Defendant's conduct" and that "every claim could potentially be barred by a statute of limitations defense." Dkt. 307 at p. 13-14: 26-27, 1-2. The same was true of the underlying consumer class action. The law is clear "the presence of

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO
STRIKE CLASS ALLEGATIONS

individual issues of compliance with the statute of limitations [] *does not defeat the predominance of common questions*." *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir.1976) (emphasis added).

Further, Defendants contend claims based on misrepresentations and omissions also require proof of each insured's reliance. *See* Dkt. 307 at 14. However, this Court already held "Subrogation Plaintiffs do not need to plead *each* individual insured's specific reliance on Defendant's misrepresentations at this stage of the litigation." *Theft Litig.*, 2023 WL 8126869, at *8 (emphasis in original). Relief under the UCL "is available without any proof of deception, reliance, or damages." *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 485 (S.D. Cal. 2013). The requirement to plead the insureds' reliance is no different in this case than in the consumer class. *See In re JUUL Labs, Inc., Mktg. Sales Practices and Products Liability Litig.*, 609 F.Supp.3d 942, 997 (N.D. Cal. 2022) (rejecting the defendants' argument that an individualized inquiry was necessary to prove reliance for each insured). Also, class members in CLRA actions "are not required to prove their individual reliance on the allegedly misleading statements" as the standard "is whether members of the public are likely to be deceived." *Bradach v. Pharmavite, LLC*, 735 F.App'x 251, 254 (9th Cir. 2018). "For this reason, courts have explained that CLRA . . . claims are ideal for class certification because they will not require the court to investigate class members' individual interaction with the product." *Id.* at 254–55. The class allegations here clearly meet that standard by pleading Defendants' misrepresentations deceived the insureds. Defendants attempt to relitigate this Court's prior determination that individual inquiries surrounding Class Plaintiffs' insureds is irrelevant to predominance.

Finally, Defendants contend the liability of third-party thieves will present individual issues. *See* Dkt. 307 at 15. That argument exceeds the scope of Class Plaintiffs' claims in this case and was rejected in connection with Plaintiffs' Motion to Dismiss:

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO STRIKE CLASS ALLEGATIONS

> For pleading purposes, the Court finds that Subrogation Plaintiffs have alleged sufficient facts to establish causation. In an effort to advance the disposition of the case, the Court orders the Subrogation Plaintiffs to attach to their amended complaint the current spreadsheets containing claims data for thefts and attempted thefts of the Vehicles to Defendants.

*See Theft Litig.*, 2023 WL 8126869, at *9. Defendants' argument also fails for the independent reason they cannot identify any individualized questions which will outweigh, let alone overwhelm, the significant common liability questions.

### 2)   A Nationwide Class of Subrogation Plaintiffs is Proper

Defendants contend varied state laws defeat the predominance requirement. *See* Dkt. 307 at 15. Defendants, "as the parties asserting that variations in state law defeat predominance, bear the burden on the issue." *Keegan v. Am. Honda Motor Co., Inc.*, 284 F.R.D. 504, 541 (C.D. Cal. 2012). They fail to meet their burden. The Court in *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 313-14 (N.D. Cal. 2018) noted variations in state law do not necessarily preclude a nationwide class action as the potential differences between state consumer protection laws may not be sufficiently substantive to predominate over the common claims of the class. Further, as Defendants noted, "[a] problem only arises if differences in state law are *material*, that is, if they make a difference in this litigation." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) (emphasis added). Here, the differences in subrogation law are inconsequential.

### a.   Any Variation in Subrogation Rights by State is Not Material

Defendants contend both equitable and contractual subrogation have "many threshold requirements" and "vary significantly by state." Dkt. 307 at p. 16: 6-9. However, Defendants' only evidence for this sweeping proposition is the out-of-circuit case *GEICO Corp. v. Autoliv, Inc.*, 345 F.Supp.3d 799, 831 (E.D. Mich. 2018), which merely states "an insurer's right of subrogation . . . varies from state to state." Defendants fail to identify any other authority showing there are *specific* material variations between California subrogation law and other states, to even describe what these alleged variations are, and to explain why they are *material*. Defendants cannot

meet their burden. Subrogation has its roots in Equity, and while there may be some minor differences in state laws, virtually every state considers insurance an indemnity contract, and the very act of payment, by law, creates the right of subrogation. *Offer v. Sup. Ct. of San Francisco*, 194 Cal. 114, 121 (1924) (". . . so that the act of the insurance company in paying the amount of the loss suffered by the collision vested a complete ownership and right of action in such insurance company."). In the event the policy language is even relevant, Class Plaintiffs include several dozen major insurance groups, all of whom use standard terms. If there are any material differences, that can only be shown through discovery.

The Made Whole Doctrine is irrelevant to this matter. *See Scottsdale Ins. Co. v. Kat Constr. LLC*, No. CV 21-00278, 2022 WL 20652788, at *3 (D.N.J. Oct. 5, 2022). The United States District Court for the District of New Jersey determined the "made whole doctrine" is not an available defense to a tortfeasor. *Id.* Insurers conceded, and the Court recognized in its Order, that insurers are only suing for their own losses. *See Theft Litig.*, 2023 WL 8126869, at *13 n. 5. Their insureds incurred deductible and out-of-pocket damages, which are not part of any subrogation claim. Any such claims are, or were, part of the Consumer Class Action. In fact, the Settlement Agreement for the consumer class specifically excludes subrogation claims. The reason for the Made Whole Doctrine is to protect insureds from an attempt to overreach by an insurer, allowing an insured to be paid first when there are limited funds. *See* Johnny Parker, "The Made Whole Doctrine: Unravelling the Enigma Wrapped in the Mystery of Insurance Subrogation." 70 Mo. L. Rev. 723, 723 (2005); *Winkelmann v. Excelsior Ins. Co.*, 650 N.E.2d 841, 843 (N.Y. 1995) ("[t]he doctrine is liberally applied for the protection of those who are its natural beneficiaries–insurers that have been compelled by contract to pay the loss caused by the negligence of another"); *Chandler v. State Farm Mut. Auto Ins. Co.*, 596 F.Supp.2d 11314, 1317–21 (C.D. Cal. 2008) ("[t]he Court finds the reasoning in *Winkelmann* persuasive and consistent with the fundamental notion that, whenever possible, the tortfeasor should

bear responsibility for losses resulting from her conduct"). "Subrogation is also a principle of priority: where the wrongdoer has a fixed amount of assets, it is fair that the insured has the priority of rights to collect the full amount of compensation before the insurer may seek to collect from the wrongdoer." *Chandler*, 596 F.Supp.2d at 1320 (internal quotations and citations omitted); *see also Muller v. Society Ins.*, 750 N.W.2d 1, 15 (Wis. 2008) ("[T]he made whole doctrine . . . does not apply when the inequitable prospect of an insurer competing with its own insured for limited settlement funds is absent."). Rather, the insurer should bear the risk only where it is clear "the loss of one of the two must go unsatisfied." *Winkelmann*, 650 N.E.2d at 845.

Here, Defendants claim to be adequately capitalized. *See, e.g.*, Dkt. 312-1 ¶ 15 and Dkt. 312-2 ¶ 14. Unless Defendants contend they cannot pay the alleged funds awarded to claimants from the Consumer Class Action Settlement, the Made Whole Doctrine has no application.

Further, the doctrine is an equitable defense, which Defendants have the burden of establishing. *See, e.g.*, *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 368 (2006). As an equitable defense, the fact that there may be variations in state law do not affect Class Plaintiffs' claims and cannot defeat the class.

Lastly, Defendants argue state subrogation statutes and regulations differ in material ways that would impact this litigation, citing Indiana and New York codes relating to subrogation. *See* Dkt. 307 at 17. Defendants simply cite to language from both statutes but do not explain how the differences are material or how they would impact the litigation. *See id.* Defendants again fail to establish material state law variations and provide no substantive explanation the effects on *this* litigation. Claim-splitting similarly does not apply because there is no danger of double recovery, and the consumer claims were also before this court.

**b.    This Court's Holdings in *Forcellati* and *Khorrami* are Dispositive**

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 590 (9th Cir. 2012) illustrates the reasons why Defendants have failed to meet their burden. In *Mazza*, the defendants "exhaustively detailed the ways in which California law differ[ed] from the laws of the 43 other jurisdictions in which class members reside[d]." 666 F.3d at 591. Defendants have not come close to meeting that burden here. Defendants' burden is to show that another state's law should apply to class claims. *See Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 545 (C.D. Cal. 2012); *see also Valencia v. Volkswagen Grp. of Am. Inc.*, Case No. 15-cv-00887-HSG, 2015 WL 4760707, at *1 (N.D. Cal. Aug. 11, 2015) ("Whether California law differs from the laws of other states in a way that is material *to this litigation* is not a proper inquiry at the pleading stage.") (emphasis in original). Defendants have not explained why another state's law is better suited in this case. As in *Forcellati*, variances in state laws would not overwhelm any common issues or preclude a finding of predominance at the pleading stage. *See Forcellati v. Hyland's, Inc.*, 876 F.Supp.2d 1155, 1159 (C.D. Cal. 2012). In *Forcellati*, this Court highlighted that "until the Parties have explored the facts in this case, it would be premature to speculate about whether the differences in various states' consumer protection laws are material in this case." *Id.* This Court added that "once the relevant facts of the case have been explored during discovery, it is possible that Plaintiff could narrow or define the class in such a way at the class certification stage to make any differences between applicable laws immaterial." *Id.*

Further, in *Khorrami,* the defendant made the same argument which Defendants assert, that a nationwide class action relying upon state law is inherently unmanageable and therefore should be stricken. *See Khorrami v. Lexmark Intern. Inc.*, 2007 WL 8031909, at *3 (C.D. Cal. Sept. 13, 2007). The *Khorrami* Court noted the plaintiffs lacked an opportunity to explain how they "intend to limit or subdivide the

OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO
STRIKE CLASS ALLEGATIONS

class to avoid violating the due process rights of those plaintiffs who live in states with laws that might conflict in any material way with California law." *Id.* (internal quotations and citations omitted). The Court also held that "[n]otwithstanding those details, taking the allegations in the complaint as true, [plaintiffs] ha[ve] made a showing that individuals across the country were harmed by [defendant]'s actions, and that various causes of action provide[d] redress" and that "[d]iscovery could reveal where exactly the various class members reside, and the varying state law to which they are subject," resulting in the Court finding denying defendant's motion to strike. *Id.* Ultimately, the Court concluded "plaintiffs should at least be given the opportunity to make the case for certification based on appropriate discovery." *Id.* at 4 (quoting *In re Wal-Mart Stores, Inc. Wage and Hour Litig.*, 505 F.Supp.2d 609, 616 (N.D. Cal. 2007)). This Court should follow its *Forcellati* and *Khorrami* analyses and find the state law variations do not create material differences and predominance is satisfied.

## B. The Class Allegations Satisfy the Superiority Requirement

District courts have "broad discretion" in determining whether class treatment is superior for purposes of Rule 23(b)(3). *Kamm v. Cal. Cty Dev. Co.*, 509 F.2d 205, 210 (9th Cir. 1975). Moreover, "[t]he purpose of superiority is to assure the class is the most efficient and effective means of resolving controversy." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010).

Defendants' superiority discussion ignores the proper assessment of superiority as stated in *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1190 (9th Cir.). The Court balances four non-exclusive factors set forth in Rule 23(b)(3)(A) through (D). *See id.*; *see also* Fed. R. Civ. P. 23(b)(3)(A)-(D). These factors are: (1) class members' interest in controlling separate actions; (2) the existence and extent of any current litigation; (3) the desirability of the forum; and (4) the difficulties in managing a class action. *See* Fed. R. Civ. P. 23(b)(3)(A)-(D). While these factors are guideposts, not every factor must be considered, and some courts have unilaterally determined

superiority exists from the size of the class. *See, e.g.*, *Romero v. Securus Tech., Inc.*, 331 F.R.D. 391, 412 (S.D. Cal. 2018). Here, each factor weighs in favor of superiority.

The second factor weighs in favor of superiority because there is currently no other pending theft litigation by any class members against Defendants. This forum is also plainly preferable for a variety of reasons including that California law applies to many of Class Plaintiffs' claims, satisfying the third factor. *See e.g. Ngethpharat v. State Farm Mut. Ins. Co.*, 339 F.R.D. 154, 170 (W.D. Wash. 2021) (applying Washington law to residents who had the same policies) . Moreover, Defendants have not once pointed to any other jurisdiction that would be a more appropriate forum than this Court. *See Krzesniak v. Cendant Corp.*, 2007 WL 1795703, at *19 (N.D. Cal. June 20, 2007) (observing defendants "have not shown that another venue would be more beneficial to all potential class members").

Regarding the last factor, the Ninth Circuit noted "a class action is the superior method for managing litigation if no realistic alternative exists." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). Numerous individual actions are unrealistic, risk inconsistent outcomes, and unnecessarily strain judicial resources. *See Wren v. RGIS Inventory Specialists*, 256 F.R.D. 180, 210 (N.D. Cal. 2009); *see also Wolin*, 617 F.3d at 1175 (the superiority requirement met because "[p]roposed class members face[d] the option of participating in this class action, or filing hundreds of individual lawsuits that could involve duplicating discovery and costs that exceed the extent of proposed class members' individual injuries."); *Leyva v. Medline Industries Inc.*, 716 F.3d 510, 515 (9th Cir. 2013) (district court abused its discretion when it assessed this factor through the lens of needing to individually calculate damages per class member). Thus, the class members' varying damage amounts is inconsequential and Plaintiffs meet the fourth factor. *See id.*

Therefore, by meeting 23(b)(3)'s second, third, and fourth factors, Plaintiffs sufficiently satisfy the superiority requirement.

## V.   **CONCLUSION**

For the foregoing reasons, Class Plaintiffs respectfully request the Court deny Defendants' Motion to Strike in its entirety, or if the Court grants the motion, grant leave to amend.

Dated: March 22, 2024                    Respectfully submitted,

COZEN O'CONNOR

By: /s/  *Megan Peitzke*
Elliott R. Feldman
Nathan Dooley
Megan R. Peitzke
Kevin P. Caraher

*Attorneys Class for Subrogation Plaintiffs*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Class Plaintiffs certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 22, 2024                    COZEN O'CONNOR

By:     /s/ *Megan Peitzke*
Megan Peitzke
*Attorneys for Class Subrogation Plaintiffs*