ELLIOTT R. FELDMAN
NATHAN DOOLEY (SBN 224331)
KEVIN P. CARAHER
MEGAN R. PEITZKE (SBN 230375)
COZEN O'CONNOR
One Liberty Place 1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: 215.665.2071
Fax: 215.701.2282
EFeldman@cozen.com

TIMOTHY E. CARY (SBN 093608)
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
1260 Corona Pointe Court, Ste 306
Corona, California 92879
Tel: 951.387.4700
Fax: 951.963.1298
CaryT@Stutmanlaw.com

WILLIAM HOFFMANN
ADAM ROMNEY (SBN 261974)
SUSAN BENSON (SBN 146837)
GROTEFELD HOFFMANN
5535 Balboa Blvd., Ste. 219
Encino, California 91316
Tel: 747.233.7150
Fax: 747.233.7143

CRAIG S. SIMON (SBN 78158)
BERGER KAHN, A LAW CORPORATION
2 Park Plaza, Suite 650
Irvine, CA 92614
Tel: 949.474.880
Fax: 949.313.5029
csimon@bergerkahn.com

*Attorneys for Subrogation Plaintiffs*

## UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 8:22-ml-03052-JVS-KES |
| | The Honorable James V. Selna |
| | **NOTICE OF MOTION AND MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| This document relates to: APPLIES TO ALL SUBROGATION CLAIMS | Judge: Hon. James V. Selna<br>Ctrm: 10C<br>Date: April 29, 2024<br>Time: 1:30 p.m. |

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE THAT on Monday, April 29, 2024, at 1:30 p.m. in Courtroom 10C, of the above-entitled court, Plaintiffs will and hereby do move this Court for an Order granting them leave to seek jurisdictional discovery that Hyundai Motor Company ("Hyundai") and Kia Motor Company ("Kia") are subject to specific personal jurisdiction in California.

The parties met and conferred as to the arguments underlying this Motion for Leave to Seek Jurisdictional Discovery (the "Motion") on March 8th and March 13th, via email, and on March 18th at 11:00 a.m. via telephone. *See* Declaration of Nathan Dooley.

Dated: March 22, 2024

Respectfully submitted,

COZEN O'CONNOR

By: /s/   *Nathan Dooley*
Elliott R. Feldman
Kevin Caraher
Nathan Dooley
Megan R. Peitzke
*Attorneys for Subrogation Plaintiffs*

# TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................6

SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY ............10

ARGUMENT .............................................................................................12

   I.   Legal Standard ....................................................................................12

   II.   Plaintiffs Are Able to Demonstrate A Colorable Basis For Personal Jurisdiction .......................................................................................13

CONCLUSION ..........................................................................................17

NOTICE OF MOTION AND MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
   788 F.2d 535 (9th Cir. 1986) ................................................................. 13

*Chapman v. Krutonog*,
   256 F.R.D. 645 (D. Haw. 2009) .......................................................... 15

*HaloSongs, Inc. v. Sheeran*,
   No. SACV161062JVSJCGX, 2017 WL 5198248 (C.D. Cal. Jan. 13,
   2017) ................................................................................................... 12

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.*,
   328 F.3d 1122 (9th Cir. 2003) ........................................................... 16

*Macias d.*, 2021 WL 780478, at *5-6 .................................................. 16

*Mintan v. Feeney*,
   497 F.Supp.2d 1113 (C.D. Cal. 2001) ............................................... 15

*Orchid Biosciences, Inc. v. St. Louis University*,
   198 F.R.D. 670 (S.D. Cal. 2001) ........................................................ 12

*Riot Games, Inc. v. Suga PTE, Ltd.*,
   638 F. Supp. 3d 1102 (C.D. Cal. 2022) .............................................. 12

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ............................................................. 12

*Seedman v. Cochlear Americas*,
   No. SACV1500366JVSJCGX, 2015 WL 4768239 (C.D. Cal. Aug.
   10, 2015) ............................................................................................ 13

*Sher v. Johnson*,
   911 F.2d 1357 (9th Cir. 1990) ........................................................... 12

*Wells Fargo & Co. v. Wells Fargo Exp. Co.*,
   556 F.2d 406 (9th Cir.1977) .............................................................. 13

NOTICE OF MOTION AND MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Yagman v. Kelly*,
    No. CV176022MWFPJWX, 2018 WL 2138461 (C.D. Cal. Mar. 20,
    2018) ................................................................................................... 15

*Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*,
    No. 23-55350, 2024 WL 838707 (9th Cir. Feb. 28, 2024) ................................. 16

*Zakikhan v. Hyundai Motor Co.*,
    No. 820CV01584SBJDEX, 2021 WL 4805454 (C.D. Cal. June 28,
    2021) ................................................................................................... 16

NOTICE OF MOTION AND MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

### INTRODUCTION

Hyundai Motor Company ("Hyundai") and Kia Motor Company ("Kia") (collectively "Defendants") have challenged the Court's authority to exercise jurisdiction over each company, despite each of them (1) owning companies based in California, (2) using California ports to import their vehicles, while (3) selling and marketing their vehicles to Californians on a daily basis.  Substantial publicly available evidence reveals that exercising personal jurisdiction over Kia and Hyundai is appropriate.  If there is any question as to whether the Court may exercise jurisdiction over Kia or Hyundai, the law entitles Plaintiffs to jurisdictional discovery before ruling on Defendants' Motion to Dismiss provided that Plaintiffs demonstrate a "colorable basis" to conclude that personal jurisdiction may exist. That low standard is easily satisfied in this case, particularly when the sole basis for Defendants' Motion is provided by two employee declarations that appear to contradict publicly available import data.

To that end, Plaintiffs seek written discovery and corporate deposition testimony on the following topics related directly to personal jurisdiction:

1. Specific details behind Defendants' imports into California;
2. Sworn deposition testimony from the two declarants to explain the basis for their declarations and to ask related questions;
3. The scope, duration, and exclusivity of the relationships between Kia, Hyundai, and their California-based subsidiaries (who, Defendants' concede, sell the vehicles "throughout the United States, including California") [Baik Decl. ¶ 22; Shin Decl. ¶ 21]);
4. What active steps the Defendants took to do business in California;
5. Whether the Defendants exerted significant control over the manufacturing operations of their U.S. based subsidiaries;

6.  The control the Korean parents exert of their U.S. subsidiaries, including their involvement in day-to-day operations;

7.  The composition of the boards of directors of the U.S. subsidiaries and corporate parents, which already show overlap;

8.  Whether the Korean parents share staff, executives, or office locations with their U.S. subsidiaries, how transactions among the related companies are handled and whether they are at arms' length, and whether the U.S. subsidiaries properly adhere to corporate formalities;

9.  The burdens, if any, on the Defendants in litigating in California;

10. Whether any of the test vehicles imported into California include the makes and models at issue in this lawsuit;

11. The decision to design and sell vehicles with immobilizers in Canada in September 2007, as opposed to the faulty vehicles sold in California without an immobilizer, or any theft prevention device, including whether the decision process occurred in California;

12. Information to confirm that both sets of vehicles – those destined for California without immobilizers, and those destined for Canada with immobilizers, were imported through the same California-based ports initially as test vehicles, and subsequently as vehicles intended for sale to consumers;

13. The decision to design and sell vehicles with immobilizers in the United States beginning in November 2021, when Defendants started to manufacture all of their vehicles intended for sale in the United States with the inclusion of an immobilizer, including any evidence showing whether the decision process occurred in California, including the identity of all individuals involved in making that decision;

14. All documents showing discussions, reviews or analyses relating to the decision to make and sell vehicles without immobilizers, or comparable anti-

theft equipment, including consideration of economic, safety and other relevant factors, including the identity of individuals who made these decisions, and if these decisions and related discussions, reviews or analyses occurred in California or Korea;

15. Defendants' analysis of the effectiveness, reliability, cost, and enhanced safety protection provided by immobilizers in preventing vehicle thefts, including whether any of this analysis occurred in California and whether any of the data behind this analysis was gathered in California;

16. Defendants' board meeting notes or minutes relating, directly or indirectly, to Defendants' consideration, evaluation and/or decision to include, or not include, immobilizers or other comparable and equally effective anti-theft equipment in the vehicles, including if these occurred in California;

17. The design, development, and engineering of immobilizers installed in the vehicles sold in any geographic market other than the United States, including if the design, development or engineering occurred in California, including but not limited to:

    a. Design Failure Mode and Effects Analyses (DFMEAs);

    b. Software Failure Mode and Effects Analyses (SFMEAs);

    c. Design and engineering drawings;

    d. Design, engineering, and material specifications;

    e. Design and engineering standards;

    f. Engineering Change Orders and Approvals;

    g. Design objectives;

    h. Performance Standards;

    i. Design Verification testing and reports;

    j. Performance Validation testing and reports;

    k. Quality assurance and quality control testing;

    l. End user testing or analysis;

    m. Safety testing;

    n.  Reliability testing;

    o.  Changes and revisions to manufacture and design

18. Theft rate studies, reports and other tangible compilations of data for the vehicles made and sold with immobilizers, in comparison with the vehicles made and sold without immobilizers, both for vehicles sold in the United States and vehicles sold in other geographic markets, including if these studies, reports and other tangible compilations of data occurred in California;

19. Defendants' communications with NHTSA and the state Attorneys General relating to immobilizers, FMVSS 114 and/or anti-theft protection for vehicles, including if these communications occurred in California;

20. The identify of senior executives from Hyundai and Kia that overlap with the senior executives for the California subsidiaries (HMA and KA), the duration of those executives' stay in California and their duties while in California, the duties and tasks of Kia and Hyundai's senior executives with respect to the Subject Vehicles while in California, and the duties and tasks of the same executives with respect to the Subject Vehicles while they are in Korea;

21. The origin and nature of communications and information directed to the California-based subsidiaries of Hyundai and KIA with respect to the Subject Vehicles, including communications related to the sales, marketing and maintenance of the Subject Vehicles;

22. How design and manufacturing decisions are made for the subject vehicles destined to be sold in California, and the identity of individuals who made those decisions;

23. What incentives Hyundai and Kia provide for the sale of Subject Vehicles sold or marketed in California with the theft friendly design;

24. The contracts between Kia, Hyundai, and their California-based subsidiaries (or other California entities), including any provisions that specifically incorporate or contemplate California law;

25. Information regarding flawed designs and/or manufacturing processes for the Subject Vehicles (including the thief friendly design) and the individuals responsible at Kia and Hyundai for their decision to incorporate the thief friendly design into the vehicles it intended to sell to the California-based subsidiaries;

26. The role Kia and Hyundai play in supervising sales and marketing that target California customers;

27. All facts supporting Hyundai's public statement that it "help[s] [its] overseas subsidiaries, sales corporations, and newly established enterprises in particular to establish the direction of their customer service strategies," and any similar statements, and if Hyundai disavows these statements, the basis for this disavowal;

28. Any activities at Hyundai's California-based design facility that has any bearing on the Subject Vehicles;

29. Any design or manufacturing activity conducted by Kia in California with respect to the Subject Vehicles;

30. The promotion of Subject Vehicles by Hyundai through its website and other means that target California consumers, whether or not those Vehicles are sold or distributed through a subsidiary; and

31. The promotion of Subject Vehicles by Kia through its website and other means that target California consumers, whether or not those Vehicles are sold or distributed through a subsidiary.

**SUMMARY OF RELEVANT FACTS AND PROCEDURAL HISTORY**

The facts of this case are well known to the Court. This multi-district litigation concerns Plaintiffs allegations that Defendants knowingly sold at least 14.3 million

vehicles (the "Vehicles") which lack vital safety components. *See* Dkt. No. 283 ¶ 1. The failure to include those components, along with other related design flaws, constitute a failure to implement Federal Motor Vehicle Safety Standards promulgated by the National Highway Traffic Safety Administration ("NHTSA."). *See* Dkt. No. 200 at 2. These design flaws allow thieves to steal the vehicles in a matter of seconds ("Thief Friendly Design"). *Id.* This Thief Friendly Design has resulted in significant and ongoing injury to both people and property, sometimes resulting in death. *Id.*

"Beginning in 2020, a group of teenagers in Milwaukee, who dubbed themselves the 'Kia Boyz,' discovered the alleged Defect and began to post videos showing how to steal Class Vehicles in a matter of seconds." *Id.* at 3. Notably, this Court initially declined to approve a proposed $200 million settlement of all consumer class action claims without further reassurances that the Vehicles' design flaws would truly be remediated through the application of Defendants' proposed software upgrades. *Id.* at p. 24–26, 30.

It is clear, and alleged in the Complaint, that Hyundai and Kia deliberately introduced their vehicles into the California. To that end Plaintiffs allege (1) "HMC conducts substantial business in the State of California" (ACC ¶ 32); (2) "HMC shipped over 7,500 shipments of vehicles and parts through California's ports for delivery and sale to California facilities" (*id.* ¶ 32); (3) "HMC . . . maintains a research and design facility in California and employs thousands of people within" California (*id.* ¶¶ 33, 264); (4) HMC "control[s] details" regarding Hyundai dealer operations in California (or anywhere else in the United States) (*id.* ¶ 34); (5) "KC conducts substantial business in the State of California" (*id.* ¶ 38); (6) "KC initiated over 5,000 shipments of vehicles and parts through California's ports for delivery and sale to California facilities" (id. ¶ 38); (7) KC "control[s] various details" regarding Kia dealer operations in California (or anywhere else in the United States) (*id.* ¶ 41); and (8) HMC and KC "promot[e]," "warrant[]," "sell[]," "leas[e]," or "servic[e]" vehicles

in California (*id*. ¶ 250). These contentions are supported by publicly available information. (*See* Declaration of Nathan Dooley ¶¶ 2-17) [*hereinafter* "Dooley Decl."].) While these facts are sufficient on their own to confer jurisdiction over Kia and Hyundai, substantial additional facts that support the exercise of personal jurisdiction over the Defendants are readily available to Defendants. Plaintiffs are entitled to discovery regarding all of Defendants' contacts with the forum in light of their challenge to the Court's authority.

## ARGUMENT

### I.    Legal Standard

As this Court has noted, personal jurisdiction "refers to a court's power to render a valid and enforceable judgment" and "[t]he contours of that power are shaped, in large part, by the Due Process Clause of the Fourteenth Amendment, which requires sufficient 'contacts, ties, or relations' between the defendant and the forum state." *HaloSongs, Inc. v. Sheeran*, No. SACV161062JVSJCGX, 2017 WL 5198248, at *3 (C.D. Cal. Jan. 13, 2017).  "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004) (citing *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990)); *see also Riot Games, Inc. v. Suga PTE, Ltd.*, 638 F. Supp. 3d 1102, 1112 (C.D. Cal. 2022). District courts may grant plaintiffs leave to conduct jurisdictional discovery while a motion to dismiss is pending and may stay a ruling on a motion to dismiss pending jurisdictional discovery. *See Orchid Biosciences, Inc. v. St. Louis University*, 198 F.R.D. 670, 672 (S.D. Cal. 2001).

"Although the Ninth Circuit has not definitively ruled on the necessary showing for plaintiffs to obtain jurisdictional discovery, Ninth Circuit district courts have consistently ordered discovery when plaintiffs established a 'colorable basis' for personal jurisdiction."  *HaloSongs*, at *3. The colorable basis standard is lower than the *prima facie* standard, and is premised on the fact that the Ninth Circuit requires

only a prima facie case to defeat a motion to dismiss based on lack of personal jurisdiction. As such, "[i]t would … be counterintuitive to require a plaintiff, *prior* to conducting discovery, to meet the same burden that would be required to defeat a motion to dismiss." eMag Solutions, LLC v. Toda Kogyo Corp., No. C 02–1611, 2006 WL 3783548, *2 (N.D. Cal. Dec.21, 2006) (allowing limited jurisdictional discovery because plaintiff was able to provide "some evidence" of defendant's contacts with the forum).

Jurisdictional discovery "should ordinarily be granted where 'pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary.'" *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986) (quoting *Data Disc, Inc.*, 557 F.2d at 1285 n. 1; *Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n. 24 (9th Cir.1977)). Where, without jurisdictional discovery, the Court would only be presented with a defendants' perspective on a jurisdictionally relevant relationship, jurisdictional discovery is appropriate. *See, e.g., Seedman v. Cochlear Americas*, No. SACV1500366JVSJCGX, 2015 WL 4768239, at *6 (C.D. Cal. Aug. 10, 2015).

**II.    Plaintiffs Are Able to Demonstrate A Colorable Basis For Personal Jurisdiction**

There is no question the Plaintiffs can establish a "colorable basis" for jurisdiction over each of the moving Defendants. Both companies have admitted, as they must, that they own subsidiaries based in California that are incorporated in California, and have their principal places of businesses in California. (Baik Decl. ¶ 22; Shin Decl. ¶ 21.) They have also admitted longstanding contractual relationships with their California-based subsidiaries to sell the vehicles, including the defective vehicles at the heart of this action, "throughout the United States, *including California*" (Baik Decl. ¶ 22; Shin Decl. ¶ 21 [emphasis added]). Indeed, abundant evidence supports the conclusion both Kia and Hyundai have purposefully availed themselves of the forum exists, including:

- Hyundai Motor Company spent over $100 million on advertising in digital, print, and national television in the United States last year. (Dooley Decl., ¶ 16, Ex. 19 [Hyundai Motor Company | Advertising Profile | See Their Ad Spend! | MediaRadar].)

- Hyundai Motor Company's 2023 financial report indicates it made retail sales of 269,000 vehicles in Q4 2023 alone.[1] (Dooley Decl., ¶ 15, Ex. 18 [q4-2023-earnings-call-pt-en-v2.pdf].)

- The chief operating officer of Hyundai Motor Company, Jose Munoz, is "based in Fountain Valley, California" and "will report to Hyundai Motor Company's top leadership in Seoul." (Dooley Decl., ¶ 5(b), Ex. 5 [20190419_Hyundai Motor Appoints Jose Munoz as COO].)

- Kia and Hyundai share board members with their California subsidiaries.  (Dooley Decl., ¶ 5.)

- Upon information and belief, Kia and Hyundai officials regularly travel to California on business to direct their subsidiaries' business decisions, including decisions related to their decision to sell defective Vehicles.

- Import data indicates that Kia and Hyundai make substantial use of California ports, including for the import of vehicles for testing in California. (Bonefant Decl., Apx. A, C.)

- Kia sponsors numerous sporting events that take place in or are viewed in California, including Riot Games' League of Legends Championship Series, considered the premier esports league in North America. (Dooley Decl., ¶ 17, Ex. 20 [Kia's League of Legends Championship Series sponsorship demonstrates its long-term outlook toward esports - Digiday].)

The facts that support a colorable basis for jurisdiction over each of the moving Defendants are too numerous to outline in full. The point, however, is that the

---

[1] Confusingly, the same document also indicates 3,909,000 unit sold in Q4 2023 in the United States alone.  *See* Dooley Decl., ¶ 15, Ex. 18.

NOTICE OF MOTION AND MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY;
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

assurance the law demands – that jurisdictional discovery is not being requested without a colorable basis for jurisdiction – is easily met. Indeed, the "colorable basis" standard is intentionally a low bar and "should be understood as something less than a prima facie showing, and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *Chapman v. Krutonog*, 256 F.R.D. 645, 649 (D. Haw. 2009) (quoting *Mintan v. Feeney*, 497 F.Supp.2d 1113, 1119 (C.D. Cal. 2001).) The mere fact they own subsidiaries incorporated in California that sell their vehicles here is alone sufficient to meet the standard requiring a mere showing of "some evidence."

Moreover, jurisdictional discovery is appropriate to provide the Court with the Plaintiffs' perspective on the relationships between Kia and Hyundai and their U.S. subsidiaries, and to allow the Court to determine if the entities are mere alter egos. *See, e.g., Yagman v. Kelly*, No. CV176022MWFPJWX, 2018 WL 2138461, at *9 (C.D. Cal. Mar. 20, 2018). Courts permit jurisdictional discovery in the alter ego context where, as here, plaintiffs support their assertions that discovery may establish facts showing defendants are subject to the court's jurisdiction. *See id.*

Currently the Court has before it all of the facts Defendants believe support their challenge to the Court's authority – all in the form of two employee declarations. However, evidence exists indicating the Korean Kia and Hyundai entities may in fact be the alter egos of their California subsidiaries. Specifically, as noted above, the companies do bear features of alter egos, including the sharing of employees, executives and board members, unquestioned complete control over the subsidiary, the use of subsidiary office space for parent employees, among other facts. If additional alter ego factors support a finding that the subsidiaries are mere alter egos of their Korean parents, then the contacts of the California subsidiaries would be attributed the moving Defendants.

NOTICE OF MOTION AND MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd*., 328 F.3d 1122 (9th Cir. 2003) ("*Harris Rutsky*") is instructive.  In *Harris Rutsky*, the Ninth Circuit Court of Appeals held that the district court abused its discretion in denying jurisdictional on the grounds that discovery might have demonstrated facts sufficient to constitute a basis for personal jurisdiction. *See id.* at 1136 (remanding to the district court for discovery and to create a record about the relationship between the parent company and subsidiary); *see also Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc*., No. 23-55350, 2024 WL 838707, at *2 (9th Cir. Feb. 28, 2024)(reversing district court for denying jurisdictional discovery into agency relationship and terms of the contractual relationship between domestic and foreign entity).  Prudence dictates that fulsome jurisdictional discovery be granted here, particularly when other courts have determined they may exercise personal jurisdiction over Defendants. *See Zakikhan v. Hyundai Motor Co.,* No. 820CV01584SBJDEX, 2021 WL 4805454, at *4 (C.D. Cal. June 28, 2021).

Allowing jurisdictional discovery in this matter, limited to the topics the Plaintiffs specifically outline above, will more than likely produce additional evidence – evidence to which the Plaintiffs are entitled – that will show Hyundai and KIA intentionally targeted California audiences and availed themselves of California's jurisdiction. Indeed, the categories of discovery above were derived from, among other things, information provided in Baik's and Shin's declarations. Those declarations contain obvious informational gaps and factual disputes that must be addressed by discovery. *Youngevity Int'l, Inc.*, 2024 WL 838707, at *2 (addressed an informational gap); *Macias d*., 2021 WL 780478, at *5-6 (resolving disputed jurisdictional facts).

Accordingly, the discovery sought by Plaintiffs may show that Defendants' self-serving Declarations are not accurate, and would help to shed light on Defendants' relationship with their California-based subsidiaries, as well as the decisions Kia and Hyundai made regarding the design, manufacture, and sale of

subject vehicles in California.  It is important to learn, for example, when Kia and Hyundai designed and manufactured the subject vehicles, what testing and design for the California market was performed in California, and whether their California-based subsidiaries were involved.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for leave to conduct limited jurisdictional discovery. Further, in order for the jurisdictional discovery to be conducted in a fulsome manner, Plaintiffs should be permitted three months to conduct the jurisdictional discovery and then file its Opposition to Hyundai and KIA's Motion to Dismiss the following month.

Dated: March 22, 2024

Respectfully submitted,

COZEN O'CONNOR

By: /s/   Megan R. Peitzke
Elliott R. Feldman
Kevin Caraher
Nathan Dooley
Megan R. Peitzke
*Attorneys for Subrogation Plaintiffs*

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned counsel of record for Subrogation Plaintiffs certifies that this brief contains 3,273 words, which complies with the word limit of L.R. 11-6.1.

Dated: March 22, 2024

COZEN O'CONNOR

By:   /s/ *Megan Peitzke*
Megan Peitzke
*Lead Attorneys for*
*Subrogation Plaintiffs*