**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Alice S. Kim (SBN 317479)
AKim@jenner.com
Madeline P. Skitzki (SBN 318233)
MSkitzki@jenner.com
Jenna L. Conwisar (SBN 341521)
JConwisar@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  +1 213 239 5100
Facsimile:   +1 213 239 5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
PBrennan@jenner.com
Michael T. Brody (*pro hac vice*)
MBrody@jenner.com
353 North Clark Street
Chicago, IL  60654-3456
Telephone:  +1 312 222 9350
Facsimile:   +1 312 527 0484

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ML-3052-JVS(KESx) **HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S NOTICE OF MOTION AND MOTION TO SEVER; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| This document relates to: ALL SUBROGATION CASES | Judge:   The Honorable James V. Selna Ctrm:   10C Date:   April 29, 2024 Time:   1:30 p.m. |

**TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on April 29, 2024, at 1:30 p.m., or as soon thereafter as the matter may be heard, in Courtroom 10C of the United States District Court, Central District of California, located at 411 West Fourth Street, Santa Ana, CA 92701-4516,  Defendants Hyundai Motor America ("HMA")  and Kia America, Inc. ("KA") will and hereby do move this Court to (1) dismiss all but the first-named Subrogation Plaintiffs in the individual subrogation cases that have been coordinated and/or consolidated in this MDL pursuant to Federal Rules of Civil Procedure 20 and 21; and (2) sever each underlying insured's claim and require that any such claims (to the extent they are refiled) be refiled as separate actions pursuant to Federal Rule of Civil Procedure 21.

This Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the pleadings and papers on file in this litigation, any additional briefing on this subject (including HMA and KA's reply brief), and any further evidence or arguments that may be presented to the Court at the hearing on this matter.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on March 18, 2024.

Dated:  March 25, 2024

JENNER & BLOCK LLP

By:   */s/ Peter J. Brennan*

Kate T. Spelman
Alice S. Kim
Madeline P. Skitzki
Jenna L. Conwisar
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:   +1 213 239 5100
Facsimile:   +1 213 239 5199
KSpelman@jenner.com
AKim@jenner.com
MSkitzki@jenner.com
JConwisar@jenner.com

Peter J. Brennan (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL  60654-3456
Telephone:   +1 312 222 9350
Facsimile:   +1 312 527 0484s
PBrennan@jenner.com
MBrody@jenner.com

*Attorneys for Defendants*

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................................... 1

BACKGROUND ................................................................................................... 2

    A.    The Underlying Cases ............................................................. 2

    B.    Judge Staton's Order on Misjoinder in *Engine I (Subrogation)* ........................................................................... 3

ARGUMENT .......................................................................................................... 5

    I.    The Subrogation Plaintiffs Cannot Satisfy Rule 20's Standard for Permissive Joinder ............................................................. 6

    A.    The Subrogation Plaintiffs' Claims Do Not Arise Out of the Same Transaction or Occurrence ........................................... 6

    B.    Individualized Questions of Law and Fact Predominate. ........ 11

    II.    Joinder of the Subrogation Plaintiffs in the Individual Actions Is Fundamentally Unfair and Prejudicial to Defendants ..................... 11

    III.    The Court Should Sever Both the Subrogation Plaintiffs' and the Insureds' Claims. ................................................................ 14

    IV.    Severance Is Appropriate Despite the Existence of the MDL. ........... 17

CONCLUSION .................................................................................................... 19

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO SEVER

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adelstein ex rel. Adelstein v. Unicare Life & Health Ins. Co.*,
   No. 99-1544-28, 2000 WL 35808378 (M.D. Fla. Dec. 27, 2000) ...................... 8

*Allstate Ins. Co. v. Electrolux Home Prod.*,
   No. 18-699, 2018 WL 3707377 (E.D. Pa. Aug. 3, 2018) ..................... 14, 15, 17

*In re: Baycol Products Liability Litigation*,
   No. MDL1431, 2002 WL 32155269 (D. Minn. July 5, 2002) ........................... 18

*Byorth v. USAA Cas. Ins. Co.*,
   No. 17-153, 2020 WL 6204333 (D. Mont. June 4, 2020) .................................. 9

*Campos v. Fresno Deputy Sheriff's Ass'n*,
   535 F. Supp. 3d 913 (E.D. Cal. 2021) ........................................................ 14

*CineTel Films, Inc. v. Does 1-1,052*,
   853 F. Supp. 2d 545 (D. Md. 2012) ........................................................... 14

*Coleman v. Quaker Oats Co.*,
   232 F.3d 1271 (9th Cir. 2000) .............................................................. 5, 13

*Corley v. Google, Inc.*,
   316 F.R.D. 277 (N.D. Cal. 2016) ............................................................ *passim*

*Coughlin v. Rogers*,
   130 F.3d 1348 (9th Cir. 1997) ........................................................... 5, 6, 11

*In re Diet Drugs*,
   325 F. Supp. 2d 540 (E.D. Pa. 2004) .......................................................... 18

*Esurance Prop. & Cas. Ins. Co. v. Mich. Assigned Claims Plan*,
   968 N.W.2d 482 (Mich. 2021) ................................................................. 8

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*,
   65 Cal. App. 4th 1279 (1998) ................................................................. 7

*Flauta v. Johnson & Johnson*,
   No. 12-9095, 2013 WL 12138986 (C.D. Cal. Jan. 10, 2013) ........................... 12

*Fleites v. MindGeek S.A.R.L.,*
    No. 21-492, 2022 WL 1314035 (C.D. Cal. Feb. 10, 2022)........................*passim*

*GEICO Corp. v. Autoliv, Inc.,*
    345 F. Supp. 3d 799 (E.D. Mich. 2018) ............................................................ 11

*Gonzalez v. City of Maywood,*
    No. 07–3469, 2008 WL 11336944 (C.D. Cal. Jan. 29, 2008)............................ 5

*Grijalva v. Kevin Mason, P.A.,*
    No. 18-2010, 2019 WL 13027072 (C.D. Cal. Dec. 30, 2019) ........................... 11

*In re Hamada,*
    291 F.3d 645 (9th Cir. 2002) ............................................................................. 9

*Justo v. Indymac Bancorp,*
    No. 09-1116, 2010 WL 623715 (C.D. Cal. Feb. 19, 2010)................................ 6

*Kunde Enterprises, Inc. v. Nat'l Sur. Corp.,*
    No. 19-6636, 2019 WL 9654857 (N.D. Cal. Dec. 18, 2019) ............................. 9

*Lopez v. Progressive Cnty. Mut. Ins. Co.,*
    No. 19-380, 2020 WL 6391214 (W.D. Tex. Nov. 2, 2020) ................................ 8

*In re Orthopedic Bone Screw Products Liability Litigation,*
    No. MDL1014, 1995 WL 428683 (E.D. Pa. July 17, 1995) ............................. 18

*Phila. Indem. Ins. Co. v. Simplex Grinnell, L.P.,*
    No. 12-567, 2012 WL 1668979 (N.D. Cal. May 11, 2012) ................................ 8

*Rubio v. Monsanto Co.,*
    181 F. Supp. 3d 746 (C.D. Cal. 2016) ........................................................ 12, 13

*Seibels Bruce Grp., Inc. v. R.J. Reynolds Tobacco Co.,*
    No. 99-593, 1999 WL 760527 (N.D. Cal. Sept. 21, 1999) ................................ 8

*Texas Farmers Insurance Co. v. Louisiana-Pacific Corp.,*
    321 F.R.D. 561 (E.D. Tex. 2017) .................................................... 14, 15, 16, 17

*Visendi v. Bank of Am., N.A.,*
    733 F.3d 863 (9th Cir. 2013) .................................................................. 6, 10, 19

*Wanke v. Invasix, Inc.,*
    No. 19-2978, 2019 WL 7997250 (C.D. Cal. Aug. 7, 2019)................................ 5

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO SEVER

*In re Zantac (Ranitidine) Products Liability Litigation*,
    343 F.R.D. 347 (S.D. Fla. 2023) ..............................................................17, 18, 19

**Statutes**

28 U.S.C. § 1407.................................................................................................. 17

**Court Rules**

Fed. R. Civ. P. 18 .............................................................................................. 15

Fed. R. Civ. P. 20.........................................................................................*passim*

Fed. R. Civ. P. 21 .....................................................................................5, 14, 15

Fed. R. Civ. P. 23 ................................................................................................ 4

Fed. R. Civ. P. 42 .............................................................................................. 18

**Other Authorities**

16 Steven Plitt et al., Couch on Ins. § 223:41 (3d ed. 2023)...............................8, 11

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO SEVER

## INTRODUCTION

The Subrogation Plaintiffs continue to flout the Federal Rules of Civil Procedure.  They joined multiple unrelated insurer-plaintiffs pursuing tens, hundreds, or even thousands of unrelated insureds' claims in single lawsuits that are now coordinated in this MDL (referred to herein as the "Individual Actions") to avoid having to plead or prove the elements of each insured's claim at any later stage of this case.  This tactic is not permitted under Federal Rule of Civil Procedure 20, which requires that plaintiffs joined in a case "assert a[] right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences."  None of the insureds' claims arise out of the "same transaction, occurrence, or series of transactions or occurrences."  To the contrary, each subrogation claim involves a separate contract and transaction between a Subrogation Plaintiff and insured, as well as separate circumstances of, among other things, reliance, causation, and injury.

Given the individualized issues of law and fact that exist as to every insured's claim (and every insurer's entitlement to subrogation), the Subrogation Plaintiffs should be severed in the Individual Actions based on misjoinder and to prevent unfairness and prejudice to Defendants.[1]  In addition to severing the Subrogation Plaintiffs, the claims of each individual insured should be severed to avoid the same hazards.  The Court must be able to decide choice-of-law issues on an insured-by-insured basis, and a jury cannot be expected to sort through the varying issues of law and fact for each individual claim in a single trial.  To be sure, Defendants recognize that the Individual Actions are part of an MDL and do not seek to dissolve that MDL.  But the MDL exists only to coordinate and/or consolidate claims for pre-trial proceedings; future disposition of those claims—including through trial—must be

---

[1] Only Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") bring this Motion.  Although Hyundai Motor Corporation and Kia Corporation are named as defendants in several of the individual actions, they contest this Court's jurisdiction and therefore do not join in the filing of this Motion.

handled on an individual basis, necessitating severance of the Individual Actions and their underlying claims joined in this MDL.

## BACKGROUND

### A.    The Underlying Cases

The subrogation track of this MDL consists of eight cases that were filed in this District and one case that HMA and KA removed to this District: (1) *State Automobile Mutual Insurance Company v. Hyundai Motor America*, No. 8:23-cv-00443 (C.D. Cal., filed March 10, 2023); (2) *The Standard Fire Insurance Company v. Hyundai Motor America*, No. 8:23-cv-00792 (C.D. Cal., filed May 5, 2023); (3) *21st Century Centennial Insurance Company v. Hyundai Motor America*, No. 2:23-cv-04288 (C.D. Cal., filed June 1, 2023); (4) *State Farm Automobile Insurance Company v. Hyundai Motor America*, No. 8:23-cv-00981 (C.D. Cal., filed June 5, 2023); (5) *Zurich American Insurance Company v. Kia America, Inc.*, No. 8:23-cv-01051 (C.D. Cal., filed June 14, 2023); (6) *American National Property & Casualty Company v. Hyundai Motor America*, No. 8:23-cv-01225 (C.D. Cal., filed July 10, 2023); (7) *Grange Insurance Association v. Hyundai Motor America*, No. 8:23-cv-01354 (C.D. Cal., filed July 27, 2023); (8) *Westfield Insurance Company v. Hyundai Motor America*, No. 2:23-cv-06212 (C.D. Cal., filed Aug. 1, 2023); and (9) *American Mercury Insurance Company v. Hyundai Motor America*, No. 8:24-cv-00519 (C.D. Cal., removed on March 11, 2024) (together, these make up the "Individual Actions" defined above).

Seven of those nine Individual Actions were brought by multiple plaintiffs: *State Automobile Mutual* has 68 plaintiffs; *Standard Fire* has 39 plaintiffs; *21st Century* has 36 plaintiffs; *State Farm* has 8 plaintiffs; *Zurich* has 51 plaintiffs; *Westfield* has 5 plaintiffs; and *American Mercury* has 9 plaintiffs.  Subrogation Plaintiffs have also sought to add new plaintiffs through various types of notices.[2]

---

[2] Cozen O'Connor has sought to add 134 plaintiffs to the *State Automobile Mutual* complaint through notices of appearance.  Dkts. 109, 118, 169.  Sixteen plaintiffs were added to the *Standard Fire* action, and thirty-three plaintiffs were added to the

2

In total, approximately 401 insurance companies are purporting to assert subrogation claims in this action.  Counsel for the Subrogation Plaintiffs claimed during the most recent status conference that they are seeking to bring claims on behalf of around 400,000 insureds.  *See* Mar. 4, 2024 Status Conf. Tr. At 7:12–15.

The first eight filed Individual Actions were originally consolidated into the Consolidated Complaint on July 28, 2023.  Dkt. 176.  The Amended Consolidated Complaint (the "ACC"), which contains the claims of those eight Individual Actions, was filed on December 26, 2023.  Dkt. 283.[3]  Neither the consolidated complaints nor the underlying complaints in the Individual Actions contain allegations specific to the individual Subrogation Plaintiffs or the individual insureds on whose behalf they are bringing their claims.  Despite that, the claims spreadsheets the Subrogation Plaintiffs submitted as Exhibit C to the ACC and provided as part of their initial disclosures make clear that the circumstances surrounding every insured's claim are different.

## B.    Judge Staton's Order on Misjoinder in *Engine I (Subrogation)*

Cozen O'Conner filed two subrogation putative class actions in this District against Hyundai and Kia entities on March 10, 2023—one in this MDL (*State Automobile Mutual Insurance Company v. Hyundai Motor America*, No. 8:23-cv-00443 (C.D. Cal.)), and one related to an alleged engine defect (*State Automobile Mutual Insurance Company v. Hyundai Motor America*, No. 8:23-cv-00439 (C.D. Cal.) ("*Engine I (Subrogation)*")).  In *Engine I (Subrogation)*, as in the ACC and the Individual Actions, the insurer-plaintiffs alleged that defects in certain Hyundai and Kia vehicles caused damage to the insurer-plaintiffs' insureds' vehicles, and the

---

*State Automobile Mutual* action through a method specified in the Scheduling Conference Order.  Dkt. 300 ¶ 6; Dkts. 332, 336.  Defendants agreed to that procedure as an efficient mechanism for adding new plaintiffs in light of the current procedural posture of the MDL without conceding that joinder was proper.

[3] Although the *American Mercury* case was filed and removed after the ACC was filed, its complaint can be considered subsumed by the ACC.  *See* Dkt. 300 ¶ 5.

1  insurer-plaintiffs made payments to the insureds to compensate their losses.  The

2  *Engine I (Subrogation)* case was before the Honorable Josephine L. Staton.

3  On January 12, 2024, Judge Staton granted HMA and KA's motion to strike

4  class allegations, holding that the court could "determine from the face of the

5  complaint that individual questions predominate over common questions—and

6  discovery would not alter that conclusion."  *Engine I (Subrogation)*, Dkt. 81 at 6.

7  Following that order, on January 18, 2024, Judge Staton issued an Order to Show

8  Cause Re: Misjoinder ("OSC").  *Engine I (Subrogation)*, Dkt. 82.  In that OSC, the

9  court noted that, in striking the class allegations, it had determined that "'individual

10  questions overwhelm common ones' such that Plaintiffs' action could not possibly

11  be certified under Rule 23(b)(3)."  *Id.* at 2.  The court explained that, "[f]or similar

12  reasons," it was "now question[ing] whether the 98 Plaintiffs named in th[e] action

13  can, under Federal Rule 20, and/or should, in the Court's discretion, litigate their

14  subrogation claims against Defendants in a single action."  *Id.*  Accordingly, the

15  court ordered the plaintiffs to "show cause why the Court should not dismiss all but

16  the first named Plaintiff from this action."  *Id.*

17  On February 27, 2024, Judge Staton ruled on her OSC and dismissed all but

18  the first named insurer-plaintiff upon finding that joining the 98 insurer-plaintiffs in

19  one action "does not comport with the principles of fundamental fairness, would

20  undermine trial efficiency, and would prejudice Defendants."  *Engine I*

21  *(Subrogation)*, Dkt. 92 at 3 (citations and internal quotation marks omitted).  Judge

22  Staton reasoned that "primary aspects of this action would require the fact-finder to

23  make thousands of individual, insured-by-insured findings."  *Id.* at 3 (citations and

24  internal quotation marks omitted).  This would include individualized showings for

25  each plaintiff-insurer and each insured.  *Id.*  Ultimately, such individualized inquiries

26  "would lead to hundreds [if not thousands] of mini-trials."  *Id.* (citations and internal

27  quotation marks omitted).  On March 18, 2024, the insurer-plaintiff that remained in

28  the case voluntarily dismissed the case.  *Engine I (Subrogation)*, Dkts. 95, 96.

## **ARGUMENT**

"To join together in one action, plaintiffs must meet two specific requirements: (1) the right to relief asserted by each plaintiff must arise out of or relate to the same transaction or occurrence, or series of transactions or occurrences; and (2) a question of law or fact common to all parties must arise in the action." *Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (citing Fed. R. Civ. P. 20(a)).

A court may, "at any time," "drop a party" or "sever any claim against a party" either where the plaintiffs are improperly joined under Rule 20 or where joinder does not "comport with the principles of fundamental fairness" or "would result in prejudice to either side." Fed. R. Civ. P. 21; *Fleites v. MindGeek S.A.R.L*, No. 21-492, 2022 WL 1314035, at *4 (C.D. Cal. Feb. 10, 2022) (internal quotations omitted); *Coughlin*, 130 F.3d at 1351 ("If joined plaintiffs fail to meet both of [the Rule 20] requirements, the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance."); *Wanke v. Invasix, Inc.*, No. 19-2978, 2019 WL 7997250, at *2 (C.D. Cal. Aug. 7, 2019) (noting that, even where the plaintiffs satisfy the two Rule 20 requirements, "the district court may sever the trial in order to avoid prejudice") (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)).  A court need not await discovery to sever plaintiffs or claims because "judicial economy is best served" by ordering severance "sooner, rather than later."  *Gonzalez v. City of Maywood*, No. 07-3469, 2008 WL 11336944, at *4 (C.D. Cal. Jan. 29, 2008).

The Court should sever the Subrogation Plaintiffs in the Individual Actions because they do not satisfy Rule 20's requirements for permissive joinder, and, as Judge Staton found in *Engine I (Subrogation)*, joinder does not "comport with the principles of fundamental fairness" and "would result in prejudice" to HMA and KA.  The Court should also sever the individual insureds' claims in the Individual

1 Actions for the same reasons of promoting fairness and preventing prejudice to
2 HMA and KA.

3 **I.** **The Subrogation Plaintiffs Cannot Satisfy Rule 20's Standard for**
4 **Permissive Joinder.**

5 The Subrogation Plaintiffs cannot establish either of the two requirements for
6 permissive joinder in the Individual Actions because their claims involve
7 individualized issues of fact and law with respect to both (1) their entitlement to
8 subrogation, and (2) their insureds' claims against Defendants.

9 **A.** **The Subrogation Plaintiffs' Claims Do Not Arise Out of the Same**
10 **Transaction or Occurrence.**

11 Plaintiffs may only be joined in a suit if "they assert any right to relief jointly,
12 severally, or in the alternative with respect to or *arising out of the same transaction,*
13 *occurrence, or series of transactions or occurrences*." Fed. R. Civ. P. 20(a)(1)(A)
14 (emphasis added). Significantly, Rule 20's "single transaction or occurrence
15 requirement is not met where plaintiffs would have to prove their claims or
16 defendants would have to litigate their defenses on an individualized basis." *Corley*
17 *v. Google, Inc.*, 316 F.R.D. 277, 284 (N.D. Cal. 2016). Indeed, the Ninth Circuit has
18 stressed that a mere common allegation of wrongdoing, "in and of itself, does not
19 suffice to create a common transaction or occurrence." *Coughlin*, 130 F.3d at 1350;
20 *see also Justo v. Indymac Bancorp*, No. 09-1116, 2010 WL 623715, at *10 (C.D.
21 Cal. Feb. 19, 2010) (Selna, J.) ("The fact that Plaintiffs' legal theories are similar is
22 insufficient to join their claims."). Thus, where an action involves "distinct . . .
23 transactions" and interactions among parties that "were not uniform," there is no
24 common transaction or occurrence because "factual disparities . . . are too great to
25 support permissive joinder." *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th
26 Cir. 2013).

27 *Corley* is instructive. There, the plaintiffs filed two actions, joining around
28 700 and 175 plaintiffs in each, based on their allegation that Google violated the

6
HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO SEVER

1    Wiretap Act in the same manner as to every plaintiff.  316 F.R.D. at 279.  Although

2    all of the plaintiffs' allegations were based on the same theory of liability and claim

3    against the same defendant, the court nonetheless found that the plaintiffs did not

4    satisfy the "same transaction or occurrence" requirement in light of the "[t]he fact-

5    specific nature of the consent inquiry," which would "require[] an examination of

6    many different transactions or occurrences."  *Id.* at 285.  The court found that,

7    because Google "must have the opportunity to fully and fairly litigate against each

8    Plaintiff," which would require that Google be permitted to "review and present

9    defenses against each Plaintiff," the plaintiffs' claims did "not arise from the same

10   transaction or occurrence, and Plaintiffs ha[d] been misjoined."  *Id.* at 287.

11       Here, the Subrogation Plaintiffs' complaints in the Individual Actions raise

12   individualized issues with respect to both (1) their transactions with their insureds,

13   and (2) the circumstances surrounding each insured's individual claims against

14   Defendants.  The Subrogation Plaintiffs cannot satisfy the "same transaction or

15   occurrence" requirement because the Subrogation Plaintiffs would have to "prove

16   their claims," and "Defendants would have to litigate their defenses" "on an

17   individualized basis."  *Id.* at 284.

18       As set forth in HMA and KA's Motion to Strike Class Allegations (Dkt. 307),

19   the nature of subrogation claims presents individualized issues.  In the insurance

20   context, "subrogation takes the form of an insurer's right to be put in the position of

21   the insured in order to pursue recovery from third parties legally responsible to the

22   insured for a loss which the insurer has both insured and paid." *Fireman's Fund Ins.*

23   *Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1291–92 (1998).  The insurer

24   "stand[s] in the shoes" of its insured and accordingly "has no greater rights than the

25   insured and is subject to the same defenses assertable against the insured."  *Id.* at

26   1292.

27       Claims in subrogation, thus, necessitate a two-part inquiry.  Because

28   subrogation claims are derivative, each Subrogation Plaintiff must prove "facts

7

reflecting the insured's entitlement to relief" as well as "the facts on which the claim of subrogation is based." *Phila. Indem. Ins. Co. v. Simplex Grinnell, L.P.*, No. 12-567, 2012 WL 1668979, at *3 (N.D. Cal. May 11, 2012); *Seibels Bruce Grp., Inc. v. R.J. Reynolds Tobacco Co.*, No. 99-593, 1999 WL 760527, at *8 (N.D. Cal. Sept. 21, 1999).[4]

In other words, subrogation inquiries are inherently individualized and focus on (a) the insurer's contractual or other relationship with the insured (and any resulting payments), and (b) whether the insured has valid claims against a third-party tortfeasor. *See, e.g.*, *Esurance Prop. & Cas. Ins. Co. v. Mich. Assigned Claims Plan*, 968 N.W.2d 482, 488 (Mich. 2021) ("Equitable subrogation . . . should and must proceed on the case-by-case analysis characteristic of equity jurisprudence.") (citation and internal quotation marks omitted); *Lopez v. Progressive Cnty. Mut. Ins. Co.*, No. 19-380, 2020 WL 6391214, at *7 (W.D. Tex. Nov. 2, 2020) (denying class certification in a subrogation case because "there is no common answer to [the plaintiff-insured's] proposed common question of whether [the defendant-insurer] can subrogate payments made to third parties" and concluding that the "proposed class simply encompasses too many distinct factors regarding each subrogation claim to be collectively resolved 'in one stroke'"); *Adelstein ex rel. Adelstein v. Unicare Life & Health Ins. Co.*, No. 99-1544-28, 2000 WL 35808378, at *3 (M.D. Fla. Dec. 27, 2000) ("In the instant case, resolution of the proposed [subrogation] class action would require distinctly case-specific inquiries into the facts

---

[4] As a leading insurance treatise explains:

> [S]ubrogation encompasses two basic issues. The first issue is whether the circumstances surrounding the loss are sufficient, in fact, to give rise to a cause of action on the part of the insured against the third party, which focuses on such issues as whether a tortfeasor is, in fact, liable for a particular loss under the laws applicable to the events and whether the tortfeasor is immune from suit. . . . The second issue is whether the insurer is entitled to be subrogated to the insured's claim, which focuses on such issues as rules precluding the assignment or subrogation of particular types of claims.

16 Steven Plitt et al., Couch on Ins. § 223:41 (3d ed. 2023).

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO SEVER

1  surrounding each alleged incident of discrimination.") (internal quotations and

2  citation omitted).  Both parts require individualized inquiries.

3          With respect to the first part, under the law of any jurisdiction, whether a

4  Subrogation Plaintiff has subrogation rights will require analysis of its underlying

5  policies with insureds and the insurance payments it claims to have made.[5]  *See In*

6  *re Hamada*, 291 F.3d 645, 649 (9th Cir. 2002) ("'Conventional' or 'contractual'

7  subrogation rights arise from an express or implied agreement between the subrogor

8  and subrogee.").

9          Indeed, courts have found that cases involving similar allegations of

10 wrongdoing but separate insurance policies or handling of insurance claims do not

11 satisfy the "same transaction or occurrence" requirement.  *See, e.g.*, *Kunde*

12 *Enterprises, Inc. v. Nat'l Sur. Corp.*, No. 19-6636, 2019 WL 9654857, at *3 (N.D.

13 Cal. Dec. 18, 2019) ("Any similarity between the insurance policy giving rise to

14 VWE's claims and the insurance policy giving rise to Kunde's claims is outweighed

15 by the fact that the insurance policies are distinct instruments, issued by separate

16 entities, applying to separate covered property."); *Byorth v. USAA Cas. Ins. Co.*, No.

17 17-153, 2020 WL 6204333, at *1 (D. Mont. June 4, 2020) (where plaintiffs alleged

18 that USAA violated Montana's Unfair Trade Practices Act through its claims

19 processing program and breached its contracts with plaintiffs, finding "same

20 transaction or occurrence" requirement was not satisfied because the "claims arose

21 from injuries sustained in two separate car accidents," "plaintiffs received different

22 medical treatment from different medical providers, . . . each submitted a separate

23 claim for benefits to USAA," and "their claims were processed by different claims

24 
25 [5] *See* ACC ¶ 18 (alleging the Subrogation Plaintiffs are "legally, equitably and contractually subrogated to the rights of their Insureds to recover compensation from the Defendants" as a result of their payments to their insureds); *State Automobile*, No. 8:23-cv-00443, Dkt. 1 ¶ 136 (similar); *Standard Fire*, No. 8:23-cv-00792, Dkt. 1 ¶ 6 (similar); *21st Century*, No. 2:23-cv-04288, Dkt. 1 ¶ 93 (similar); *State Farm*, No. 8:23-cv-00981, Dkt. 1 ¶ 66 (similar); *Zurich*, No. 8:23-cv-01051, Dkt. 1 ¶ 115 (similar); *American National*, No. 8:23-cv-01225, Dkt. 1 ¶ 67 (similar); *Grange*, No. 8:23-cv-01354, Dkt. 1 ¶ 61 (similar); *Westfield*, No. 2:23-cv-06212, Dkt. 1 ¶ 71 (similar); *American Mercury*, No. 8:24-cv-00519, Dkt. 1-1 ¶ 6 (similar).

adjusters and underwent different processing actions"). Accordingly, "[t]he 'intensely individualized' nature" of each Subrogation Plaintiff's relationship with each insured, including the specific contracts between insurer and insured and the specific circumstances in which payments were made to the insureds, prevents the Subrogation Plaintiffs from satisfying the "same transaction or occurrence" requirement. *Corley*, 316 F.R.D. at 285.

And with respect to the second part, the Subrogation Plaintiffs must prove each insured's claim against Defendants on an individualized basis. As discussed in HMA and KA's Motion to Dismiss and Motion to Strike Class Allegations, to prevail on all of their claims, the Subrogation Plaintiffs must prove causation for each insured, *i.e.*, they must prove that each insured's vehicle was stolen due to "defect" they allege. Dkt. 217 at 20–21; Dkt. 307 at 13–14. And to succeed on misrepresentation claims requiring reliance, the Subrogation Plaintiffs must prove reliance as to every insured on an individualized basis. Dkt. 217 at 19–20; Dkt. 307 at 14. Because Defendants "must have the opportunity to fully and fairly litigate against each [Subrogation] Plaintiff in this case," which requires that Defendants be permitted to "review and present defenses against each [Subrogation] Plaintiff," given "the individualized nature" of the claims and defenses in this action, joinder of the Subrogation Plaintiffs in the Individual Actions is improper here. *Corley*, 316 F.R.D. at 287; *see also Visendi*, 733 F.3d at 870 ("While Plaintiffs allege in conclusory fashion that Defendants' misconduct was 'regular and systematic,' their interactions with Defendants were not uniform. Factual disparities of the magnitude alleged are too great to support permissive joinder."); *Fleites*, 2022 WL 1314035, at *5 (finding that plaintiffs did not satisfy the "same transaction or occurrence" requirement in light of the "vast factual distinctions between the individualized circumstances of Plaintiffs' claims").

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO SEVER

### B.    Individualized Questions of Law and Fact Predominate.

Courts have found that the second requirement for permissive joinder—common questions of law and fact—is not satisfied where the claims at issue involve "highly individualized questions of fact" and claims under varying states' laws.  *See Fleites*, 2022 WL 1314035, at *6.  Put differently, "[w]hen joined plaintiffs' claims are 'discrete[ ] and involve[] different legal issues, standards, and procedures' that would require the Court to 'give each claim individualized attention,' they are inadequate under Rule 20(a)'s second requirement."  *Grijalva v. Kevin Mason, P.A.*, No. 18-2010, 2019 WL 13027072, at *2 (C.D. Cal. Dec. 30, 2019) (quoting *Coughlin*, 130 F.3d at 1351).

As discussed in HMA and KA's Motion to Strike Class Allegations, a court will have to apply varying states' laws to both (1) the threshold requirements for subrogation, and (2) the insureds' underlying claims against Defendants.  *See, e.g.*, *GEICO Corp. v. Autoliv, Inc.*, 345 F. Supp. 3d 799, 831 (E.D. Mich. 2018) (although there are "general contours of the law of subrogation," "an insurer's right of subrogation . . . varies from state to state"); Plitt et al., *supra*, § 223:41 ("[S]ubrogation is necessarily dependent on the underlying substantive law, which frequently adds to the time and expense of any subrogation case in which the liability of the third party to the insured is questionable").  And the Subrogation Plaintiffs have not made any effort to clarify which laws apply to which Subrogation Plaintiffs' or insureds' claims.  Further, each claim involves "individualized" questions of fact that will require "individualized attention" going to causation and reliance, among other elements.  Accordingly, the Subrogation Plaintiffs also cannot satisfy the second requirement of Rule 20.

## II.    **Joinder of the Subrogation Plaintiffs in the Individual Actions Is Fundamentally Unfair and Prejudicial to Defendants.**

Even if the Subrogation Plaintiffs could satisfy the requirements of permissive joinder (which they cannot), the Court should exercise its discretion to sever the

---

Subrogation Plaintiffs in the Individual Actions because joinder is unfair and prejudicial to Defendants. *See Fleites*, 2022 WL 1314035, at *4 ("Courts have denied joinder to avoid prejudice or delay, to ensure judicial economy, or to safeguard principles of fundamental fairness.") (citation omitted). As noted above, in *Engine I (Subrogation)*, Judge Staton dismissed all but the first named insurer-plaintiff upon finding that joining the 98 insurer-plaintiffs in one action "does not comport with the principles of fundamental fairness, would undermine trial efficiency, and would prejudice Defendants." *Engine I (Subrogation)*, Dkt. 92 at 3 (citations and internal quotation marks omitted). That reasoning applies here as well.

As Judge Staton found, "primary aspects of this action would require the fact-finder to make thousands of individual, insured-by-insured findings." *Id.* at 3 (citations and internal quotation marks omitted). This would include individualized showings for each plaintiff-insurer and each insured. *Id.* Ultimately, such individualized inquiries "would lead to hundreds [if not thousands] of mini-trials." *Id.* (citations and internal quotation marks omitted).

"[S]everal courts have found substantial prejudice where a 'defendant's defense would, in effect, require [hundreds of] mini-trial[s].'" *Corley*, 316 F.R.D. at 289 (citation omitted). Put another way, "[t]he purposes of Rule 20(a) are not served when the claims are similar in nature or share some commonalities but are predicated on distinct factual scenarios." *Flauta v. Johnson & Johnson*, No. 12-9095, 2013 WL 12138986, at *3 (C.D. Cal. Jan. 10, 2013). There is no dispute that the Subrogation Plaintiffs will have to litigate each of their insureds' claims at summary judgment and at trial on an individualized basis, as each claim is "predicated on [a] distinct factual scenario[]." Permitting the Subrogation Plaintiffs to join their claims in single actions to avoid individually litigating their claims prejudices Defendants.

*Rubio v. Monsanto Co.*, 181 F. Supp. 3d 746 (C.D. Cal. 2016), is illustrative. There, two plaintiffs brought products liability, negligence, and warranty claims

based on the allegation that the defendant's herbicide, Roundup, caused them to develop cancer. *Id.* at 753–55. Although the plaintiffs argued that "joining their two claims [was] efficient because they contain[ed] a number of common issues of fact, namely the allegedly dangerous properties of Roundup, as well as Monsanto's knowledge of those properties at the time Roundup was developed, tested, and marketed," the court nonetheless found that joinder would be inefficient and prejudicial and severed the claims. *Id.* at 758–59. The court reasoned that, although the "[p]laintiffs appear[ed] to view their most important task in th[e] case as being the need to prove that Roundup causes cancer generally," "[i]n order to state a claim, . . . they must also demonstrate that Roundup caused their *individual* instances of cancer." *Id.* at 758. Thus, joining the claims could create a "prejudicial inference"; [i]n other words, by trying the two claims together, one plaintiff, despite a weaker case of causation, could benefit merely through association with the stronger plaintiff's case." *Id.*

The same prejudice—multiplied exponentially—exists here. Even if the Subrogation Plaintiffs can establish that Defendants are liable for some "defect" or "misrepresentation" related to that "defect," joinder is nonetheless prejudicial because the Subrogation Plaintiffs will need to prove reliance as to each insured and that the "defect" caused the theft of or damage to each insured's vehicle. The Subrogation Plaintiffs should not be able to create a "prejudicial inference" as to reliance and causation simply by showing reliance and causation as to a limited number of insureds.

Relatedly, the variation in state laws supports severance both to promote judicial economy and prevent jury confusion. *See, e.g.*, *Coleman*, 232 F.3d at 1297 (holding that district court could consider the "possibility of factual and legal confusion on the part of the jury" in its severance inquiry); *Fleites*, 2022 WL 1314035, at *7 (severing plaintiffs' claims, reasoning, in part, that "[g]iven the

13

choice-of-law issues the Complaint presents, the Court will spend considerable resources analyzing the laws of multiple different states and foreign countries").

Ultimately, the Subrogation Plaintiffs seek to lump their claims to hide the innumerable flaws that would have been exposed in individual pleadings. By joining so many plaintiffs in a handful of actions, the Subrogation Plaintiffs have placed "an 'enormous burden' on the parties and the court," which "does not promote 'the administration of justice.'" *Corley*, 316 F.R.D. at 292 (quoting *CineTel Films, Inc. v. Does 1-1,052*, 853 F. Supp. 2d 545, 554 n.4 (D. Md. 2012)).

## III.   <u>The Court Should Sever Both the Subrogation Plaintiffs' and the Insureds' Claims.</u>

As noted above, Rule 21 permits a court to "add or drop a party" *and* "sever any claim against a party." Thus, although Rule 20 only explicitly refers to joinder of "persons," Rule 21 makes clear that a court can sever as to both parties and claims. *See also Allstate Ins. Co. v. Electrolux Home Prod.*, No. 18-699, 2018 WL 3707377, at *6 (E.D. Pa. Aug. 3, 2018) ("A case with multiple claims may be severed under Rule 21 where doing so would advance the goals of the 'convenience of the parties, avoidance of prejudice to either party, and promotion of the expeditious resolution of the litigation.'") (citation omitted); *Campos v. Fresno Deputy Sheriff's Ass'n*, 535 F. Supp. 3d 913, 929 (E.D. Cal. 2021) (severing claims under Rule 21). For the same reason the Subrogation Plaintiffs should be severed, the claims of the individual insureds should also be severed.

Two cases in the subrogation context highlight the propriety of severing the individual insureds' claims in addition to the plaintiffs. *Texas Farmers Insurance Co. v. Louisiana-Pacific Corp.*, 321 F.R.D. 561 (E.D. Tex. 2017), involved a single insurer suing a manufacturer of a radiant barrier product used in home construction on behalf of two insureds whose houses used the product and caught fire after being struck by lightning. *Id.* at 562. The insurer brought negligence, product liability, and breach of warranty claims based on the allegation that the "improper design,

manufacture, and marketing" of the product "caused the damage" to the insureds' properties.  *Id.*  Even though the court found that the claims were properly joined under Rule 18, the court still severed the insureds' claims upon finding that "not all claims properly joined under Rule 18 should proceed to a single trial."  *Id.* at 563.  The court further reasoned that (1) each claim would involve different witnesses that would "have to testify about causation and damages as they relate to the specific fire of which they have knowledge"; (2) "a large amount of documentary evidence [would] be unique to each claim"; and (3) "[d]efending against the[] two claims in one trial" would be "prejudicial" to the defendant "because [the plaintiff-insurer] must prove 'the particulars' of each claim," and "[i]f one claim's causation argument is stronger than the other, the other claim may receive an improper benefit by association with the stronger claim."  *Id.* at 564–65.  The court concluded that "principles of fairness and equity weigh[ed] in favor of severance" because there were "multiple issues that [were] unique to each claim . . . , especially as it pertains to causation, damages, and whether [the defendant] 'knew or should have known' of defects in" the product.  *Id.* at 565.

The court in *Allstate Insurance Co.* similarly severed a single insurer's insureds' claims.  In that case, an insurer sued the manufacturer of a dryer on behalf of 86 insureds whose dryers allegedly caught fire.  2018 WL 3707377, at *1.  The court severed the claims under Rule 21 on the grounds that allowing the claims to continue as a single action would not "facilitate" "judicial economy" or "justice" because the claims arose "out of twenty-one different states and, accordingly, would potentially involve the application of the laws of each of those twenty-one states on complex doctrines such as products liability and negligence."  *Id.* at *7.  "In particular," the court found that "attempting to charge a jury on the substantive laws of twenty-one states and requiring the jury to compartmentalize the evidence and substantive law as it pertains to each of the eighty-six claims is nothing short of an insurmountable task."  *Id.*

The reasoning in both of these cases applies with equal force here.  Each insured's claim will require different witnesses and documentary evidence, and issues of causation and damages are "unique to each claim."  *Texas Farmers Insurance Co.*, 321 F.R.D. at 564–65.  At a basic level, the Subrogation Plaintiffs must demonstrate that the injury each individual insured allegedly suffered was caused by the "defect" the Subrogation Plaintiffs allege and is connected to a specific legal claim the Subrogation Plaintiffs assert.  For that reason, there can be no dispute that the evidence necessary to prove each claim will vary by *insured*, even for claims asserted by the same Subrogation Plaintiff.

Moreover, severance at the insured level is necessary to prevent the Subrogation Plaintiffs from evading scrutiny and adjudication of nonviable claims.  The Subrogation Plaintiffs have made clear through their statements to the Court and in the claims data they have thus far shared with Defendants that they are seeking to recover for claims related to widely disparate categories of vehicles, some of which have little connection to the allegations and claims in the ACC, including, among others, (a) vehicles with immobilizers; (b) vehicles that were broken into/vandalized but not stolen; (c) vehicles that were stolen and never recovered; and (d) vehicles that were stolen by a means unrelated to the "Thief Friendly Design" described in Paragraph 17 of the ACC.  This Court suggested at the recent status conference that the parties propose a method to determine whether the Subrogation Plaintiffs can pursue claims for disputed categories of vehicles.  *See* Mar. 4, 2024 Status Conf. Tr. at 24:25–25:6.  To the extent the Court ultimately agrees that certain challenged categories of claims are not viable, Defendants need to be able to identify individual claims that fall within those categories to remove them from this action.  Defendants will have no way to accomplish this unless the individual insureds' claims are severed.

Further, requiring Defendants to defend against all the claims in combined trials will be "prejudicial" because the Subrogation Plaintiffs will use their stronger

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO SEVER

claims to bolster their weaker claims. *Texas Farmers Insurance Co.*, 321 F.R.D. at 565. And allowing hundreds, thousands, or in some cases hundreds of thousands of claims to continue in a single action would also not "facilitate" "judicial economy" or "justice" because the claims arise out of 50 states' laws, and "attempting to charge a jury on the substantive laws" of all 50 states and "requiring the jury to compartmentalize the evidence and substantive law as it pertains to each" of the hundreds of thousands of claims "is nothing short of an insurmountable task." *Allstate Insurance Co.*, 2018 WL 3707377, at *7. Put simply, Defendants have a due process right to defend against each individual claim at every stage of the case— severance of both the Subrogation Plaintiffs' and their individual insureds' claims is necessary to protect that right.

**IV.**     **Severance Is Appropriate Despite the Existence of the MDL.**

HMA and KA do not dispute that the Subrogation Plaintiffs and their claims can be coordinated and/or consolidated for pre-trial purposes. Indeed, the MDL exists to establish "coordinated or consolidated pretrial proceedings." 28 U.S.C. § 1407. But "coordination" and "consolidation" in an MDL proceeding are not the same as "joinder" in originally filed actions. Notably, numerous courts have rejected plaintiffs' attempts to improperly join plaintiffs in single actions in the MDL context.

In *In re Zantac (Ranitidine) Products Liability Litigation*, a pharmaceutical products liability action, the court rejected the plaintiffs' request to file 330 complaints separated by law firm instead of 58,000 individual cases on behalf of each plaintiff. 343 F.R.D. 347, 349 (S.D. Fla. 2023). The court held that the plaintiffs could not "be joined simply because of the fact that they are represented by the same law firm, regardless of the judicial district in which they reside and in the absence of an effort to identify how the Plaintiffs' claims arose 'out of the same transaction.'" *Id.* at 352. Further, the court held that, even if the plaintiffs could satisfy Rule 20, the court would still exercise its discretion to sever the plaintiffs because, among other reasons, trying thousands of claims in one trial would

prejudice the defendants.  *Id.* at 353.  The court required all plaintiffs to file individual complaints that would "contain[] all of the . . . claims" to which they would eventually be required to "prove individual causation" in order to "stage the . . . claims for eventual remand to their home district." *Id.* at 349.

In *In re: Baycol Products Liability Litigation*, the plaintiffs requested to file complaints that contained 50 plaintiffs each pursuant to Federal Rule 42(a).  No. MDL1431, 2002 WL 32155269, at *1 (D. Minn. July 5, 2002).  The court first held that Rule 42(a) "allows the Court to consolidate actions that are pending," but "it does not provide for the initial filing of a complaint with fifty plaintiffs." *Id.*  The court then denied the plaintiffs' request because the plaintiffs did not satisfy Rule 20. *Id.* at *2–3.

In *In re Diet Drugs*, where the plaintiffs alleged they were injured from ingesting diet drugs, the court severed the claims of 62 plaintiffs who had filed a single complaint after opting out of a settlement in an MDL.  325 F. Supp. 2d 540, 541 (E.D. Pa. 2004).  The court held that the plaintiffs' claims "clearly [did] not arise out of the same transaction, occurrence or series of transactions or occurrences," and "proceeding with this one action with multiple plaintiffs would severely impair the efficient administration of justice." *Id.*

And in *In re Orthopedic Bone Screw Products Liability Litigation*, where the plaintiffs had the same medical device implanted near their spines, the court found that Rule 20 would not permit "simply group[ing] the plaintiffs by judicial district" or "simply group[ing] them primarily for filing convenience," given the "many differences between the unique histories of each plaintiff."  No. MDL1014, 1995 WL 428683, at *2 (E.D. Pa. July 17, 1995).

These cases illustrate that the existence of an MDL does not override Rule 20's joinder requirements.  And even if permitting misjoined claims may seem more efficient at the outset, it is imperative that individual claims that depend on individualized questions of law and fact be filed in their own actions to avoid

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION TO SEVER

prejudice at later stages of the case.  This Court should require the Subrogation

Plaintiffs to file each insured's claim as a separate action, as the court in *In re Zantac*

required each consumer's claim to be filed in a separate complaint, without prejudice

to coordinating and/or consolidating those claims in the MDL for pre-trial purposes

only.[6]

## **CONCLUSION**

For the foregoing reasons, HMA and KA respectfully request that the Court

grant this Motion and (1) dismiss all but the first-named Subrogation Plaintiffs in

the Individual Actions; and (2) sever each insured's claim and require that any such

claims (to the extent they are refiled) be refiled as separate actions.

Dated:  March 25, 2024                    JENNER & BLOCK LLP

                                          By:  */s/ Peter J. Brennan*
                                          _____
                                              Kate T. Spelman
                                              Alice S. Kim
                                              Madeline P. Skitzki
                                              Jenna L. Conwisar
                                              JENNER & BLOCK LLP
                                              515 South Flower Street, Suite 3300
                                              Los Angeles, CA  90071-2246
                                              Telephone:  +1 213 239 5100
                                              Facsimile:   +1 213 239 5199
                                              KSpelman@jenner.com
                                              AKim@jenner.com
                                              MSkitzki@jenner.com
                                              JConwisar@jenner.com

                                              Peter J. Brennan (*pro hac vice*)
                                              Michael T. Brody (*pro hac vice*)
                                              JENNER & BLOCK LLP
                                              353 North Clark Street
                                              Chicago, IL  60654-3456
                                              Telephone:  +1 312 222 9350
                                              Facsimile:   +1 312 527 0484s
                                              PBrennan@jenner.com
                                              MBrody@jenner.com

                                              *Attorneys for Defendants*

---

[6] The Subrogation Plaintiffs will not be prejudiced by severance, "as they remain free to pursue their claims individually" and to the extent they are coordinated and/or consolidated in this MDL.  *Visendi*, 733 F.3d at 870.

1

**CERTIFICATE OF COMPLIANCE**

2          The undersigned counsel of record for Defendants Hyundai Motor America

3    and Kia America, Inc. certify this brief contains 6,231 words, which complies with

4    the word limit of L.R. 11-6.1.

5

6    Dated:  March 25, 2024               JENNER & BLOCK LLP

7
                                    By:  _/s/ Peter J. Brennan_____
8                                        Peter J. Brennan

9                                        *Attorneys for Defendants*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28