**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Alice S. Kim (SBN 317479)
AKim@jenner.com
Madeline P. Skitzki (SBN 318233)
MSkitzki@jenner.com
Jenna L. Conwisar (SBN 341521)
JConwisar@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
PBrennan@jenner.com
Michael T. Brody (*pro hac vice*)
MBrody@jenner.com
353 North Clark Street
Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br><br><br>This document relates to:<br><br>ALL SUBROGATION CASES | Case No. 8:22-ml-3052-JVS(KESx)<br><br>The Honorable James V. Selna<br><br>**HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS FROM THE SUBROGATION PLAINTIFFS' AMENDED CONSOLIDATED COMPLAINT**<br><br>Judge: The Honorable James V. Selna<br>Ctrm: 10C<br>Date: April 19, 2024<br>Time: 9:00 a.m. |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT ...................................................................................................... 2

    I.    The Class Subrogation Plaintiffs Cannot Satisfy Predominance .......... 3

        A.    Individualized Inquiries Predominate As to Subrogation Claims. ..................................................................................... 3

            1.    Establishing an Insurer's Entitlement to Subrogation Raises Countless Individualized Inquiries. ........................................................................ 4

            2.    Establishing an Insured's Entitlement to Recover from Defendants Also Raises Individualized Inquiries. ........................................................................ 6

        B.    The Variation in State Laws Also Precludes the Class Subrogation Plaintiffs from Establishing Predominance. ........ 11

    II.    The Class Subrogation Plaintiffs Cannot Satisfy Superiority. ........... 13

CONCLUSION ................................................................................................. 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Brown v. Fed. Express Corp.*,
    249 F.R.D. 580 (C.D. Cal. 2008) ....................................................................... 15

*Brown v. Nat'l Life Ins. Co.*,
    No. 13-2547, 2013 WL 12096508 (C.D. Cal. Oct. 15, 2013) ............................ 9

*Cameron v. E.M. Adams & Co.*,
    547 F.2d 473 (9th Cir. 1976) ............................................................................... 8

*Castillo v. Bank of Am., NA*,
    980 F.3d 723 (9th Cir. 2020) ..................................................................... 7, 9, 10

*Employers Mut. Liab. Inc Co. v. Pac. Indemnity Co.*,
    167 Cal. App. 2d 369 (1959) ............................................................................... 6

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*,
    65 Cal. App. 4th 1279 (1998) .............................................................................. 4

*Fireman's Fund Ins. Co. v. Morse Signal Devices*,
    151 Cal. App. 3d 681 (1984) ............................................................................... 5

*Hamilton v. Genesis Logistics, Inc.*,
    No. 13-1848, 2014 WL 4187941 (C.D. Cal. Aug. 22, 2014) ........................... 14

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................................... 7

*Jenkins v. Cnty. of Riverside*,
    398 F.3d 1093 (9th Cir. 2005) ........................................................................... 13

*Kroeger v. Vertex Aerospace LLC*,
    No. 20-3030, 2020 WL 3546086 (C.D. Cal. June 30, 2020) ........................... 12

*Liberty Mut. Ins. Co. v. Tribco Const. Co.*,
    185 F.R.D. 533 (N.D. Ill. 1999) ....................................................................... 15

*Mazza v. American Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012) ............................................................................. 13

*McKinney v. Corsair Gaming, Inc.*,
    646 F. Supp. 3d 1133 (N.D. Cal. 2022) ............................................................... 13

*Ono v. Head Racquet Sports USA, Inc.*,
    No. 13-4222, 2016 WL 6647949 (C.D. Cal. Mar. 8, 2016) ................................... 9

*Pepka v. Kohl's Dep't Stores, Inc.*,
    No. 16-4293, 2016 WL 8919460 (C.D. Cal. Dec. 21, 2016) ............................ 2, 3

*Potter v. Chevron Prod. Co.*,
    No. 17-6689, 2018 WL 4053448 (N.D. Cal. Aug. 24, 2018) ............................ 12

*Rios v. Cnty. of Sacramento*,
    562 F. Supp. 3d 999 (E.D. Cal. 2021) ................................................................... 7

*Saliba v. KS Statebank Corp.*,
    No. 20-503, 2021 WL 2105608 (D. Ariz. May 25, 2021) ................................... 7

*Sanders v. Apple Inc.*,
    672 F. Supp. 2d 978 (N.D. Cal. 2009) ............................................................ 3, 13

*Scottsdale Ins. Co. v. Kat Constr. LLC*,
    No. 21-278, 2022 WL 20652788 (D.N.J. Oct. 5, 2022) .................................... 12

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
    802 F. Supp. 2d 1125 (C.D. Cal. 2011) .............................................................. 13

*Stiner v. Brookdale Senior Living, Inc.*,
    665 F. Supp. 3d 1150 (N.D. Cal. 2023) .............................................................. 10

*Stokes v. CitiMortgage, Inc.*,
    No. 14-278, 2015 WL 709201 (C.D. Cal. Jan. 16, 2015) .................................... 2

*Urena v. Earthgrains Distribution, LLC*,
    No. 16-634, 2017 WL 4786106 (C.D. Cal. July 19, 2017) ................................ 14

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................. 12

*Whittlestone, Inc v. Handi-Craft Co.*,
    618 F.3d 970 (9th Cir. 2010) ................................................................................. 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*Zinser v. Accufix Rsch. Inst., Inc.*,
   253 F.3d 1180 (9th Cir. 2001), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) ........................................................... 14, 15

**Court Rules**

Fed. R. Civ. P. 12 ........................................................................................ 7

Fed. R. Civ. P. 23 ............................................................................... *passim*

HMA AND KA'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS

### INTRODUCTION

As with *Engine I (Subrogation)*, this action "suffers from a fundamental defect" on both parts of the Rule 23(b)(3) inquiry.[1]  In *Engine I (Subrogation)*, Judge Staton struck substantially similar class allegations based on nearly identical arguments to those Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") make here.[2]  The Class Subrogation Plaintiffs do not attempt to distinguish that case or call into question Judge Staton's holding.  This Court should reach the same conclusion.

The Opposition is premised on several fundamental fallacies.  For example, in arguing that common issues predominate, the Class Subrogation Plaintiffs rely extensively on the Court's order on Defendants' motion to dismiss the Consolidated Complaint.  Yet that order turned on the sufficiency of the allegations to state a claim, not on whether the Class Subrogation Plaintiffs will be able to *prove* the claims of each putative class member-insurer, as well as the underlying claims of their unnamed insureds, through *common evidence*.  The myriad issues that must be addressed on an insured-by-insured basis to establish each claim—including, among others, causation, reliance, privity, and compliance with the statute of limitations—defeat predominance and make class certification inappropriate here.

Additionally, the Class Subrogation Plaintiffs dispute that their claims are subject to a two-step inquiry, and they refuse to acknowledge the differences between subrogation claims and claims in a traditional consumer class action.  Nonetheless, they tacitly admit that their claims turn on *both* (a) whether each

---

[1] January 12, 2024 Order Granting Defendants' Motion to Strike Class Allegations from Plaintiffs' Third Amended Complaint, *State Automobile Mutual Insurance Company v. Hyundai Motor America*, No. 8:23-cv-00439 (C.D. Cal. filed Mar. 10, 2023) ("*Engine I (Subrogation)*"), Dkt. 81 at 5 ("*Engine I (Subrogation)* Order Granting Mot. to Strike").

[2] Although HMC and KC are currently defendants in this action and are thus included in the definition of "Defendants," they contest this Court's jurisdiction and therefore did not join in the filing of the Motion.

HMA AND KA'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS

putative class member-insurer is entitled to recover in subrogation; and (b) whether each putative class member-insurer's individual insureds can establish their causes of action against Defendants.  There can be no question that subrogation claims are inherently unsuited for class-wide resolution, as they raise individualized inquiries (including separate choice-of-law inquiries) at each step of the analysis.  The Class Subrogation Plaintiffs' failure to cite a single case certifying a subrogation class is telling.  Predominance cannot be satisfied.

Finally, the Class Subrogation Plaintiffs do not legitimately dispute that they cannot satisfy superiority.  This MDL involves the claims of over 400 individual, sophisticated insurers seeking to recover more than $1 billion.  Thus, there is extensive pending litigation even absent the class allegations, and many putative class members have made clear their "interest[] in individually controlling the prosecution . . . of separate actions."  Fed. R. Civ. P. 23(b)(3)(A)–(B).  Moreover, the numerous individualized inquiries that will be required at both an insurer-by-insurer and insured-by-insured level create "likely difficulties in managing a class action," further weighing against superiority.  Fed. R. Civ. P. 23(b)(3)(D).

Accordingly, because it is apparent based on the pleadings that the Class Subrogation Plaintiffs will not be able to establish predominance and superiority, HMA and KA respectfully request that the Court grant their Motion to Strike.

## ARGUMENT

There is no dispute that this Court has the authority to strike class allegations "when no class action can possibly be maintained" based "on the face of the pleading."  *Pepka v. Kohl's Dep't Stores, Inc.*, No. 16-4293, 2016 WL 8919460, at *1 (C.D. Cal. Dec. 21, 2016); *see generally* Mot. at 6–7.  Striking class allegations at the pleading stage allows a defendant to "avoid the expenditure of time and money" from "litigating spurious issues" when a complaint "cannot possibly move forward on a classwide basis."  *Pepka*, 2016 WL 8919460, at *1; *Stokes v. CitiMortgage, Inc.*, No. 14-278, 2015 WL 709201, at *4 (C.D. Cal. Jan. 16, 2015);

HMA AND KA'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS

*see also Whittlestone, Inc v. Handi-Craft Co*., 618 F.3d 970, 973 (9th Cir. 2010) ("The function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial[.]") (citation omitted).   Although the Class Subrogation Plaintiffs contend that "[c]ourts are reluctant to grant" motions to strike class allegations (Opp'n at 13), their Opposition makes clear that "no class action can possibly be maintained" here and that permitting this matter to proceed as a putative class action would only waste the parties' and the Court's resources.  The class allegations should be stricken.

## I.   The Class Subrogation Plaintiffs Cannot Satisfy Predominance.

A court should strike class allegations that "are insufficient to show that common issues would predominate over individual ones." *Pepka*, 2016 WL 8919460, at *4; *see also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 991 (N.D. Cal. 2009) (striking class allegations where court "would be forced to engage in individual inquiries of each class member with respect to" multiple elements of claims at issue, and "individual inquiries very likely would be subject to the differing state laws").  The Class Subrogation Plaintiffs do not dispute the elements of a subrogation claim, yet they ignore the individualized nature of such claims in contending they could possibly satisfy predominance.  They also fail to legitimately contest that choice-of-law issues and variations in 50 states' laws will overwhelm the very limited common questions that may arise.  Given the innumerable individualized inquiries that are obvious at this stage, a class action can never be certified in these circumstances, and there is no reason to permit the class allegations to proceed.

### A.   Individualized Inquiries Predominate As to Subrogation Claims.

As set forth in the Motion, subrogation claims present individualized inquiries at two separate levels. *See generally* Mot. at 10–11.  Although the Class Subrogation Plaintiffs spill significant ink disputing the existence of this "two-part inquiry"

---
HMA AND KA'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS

(Opp'n at 17-20), the purported dispute on this point is ultimately semantic, as the Class Subrogation Plaintiffs acknowledge that to succeed on a subrogation claim, they must establish both (a) the right of the insurer to recover on behalf of the insured in subrogation; and (b) a claim by the insured against the defendant.  Indeed, the eight-factor test on which the Class Subrogation Plaintiffs rely can be divided neatly between these two levels.

To establish the right of the insurer to recover on behalf of the insured in subrogation, the Class Subrogation Plaintiffs concede they must prove (2) "the claimed loss was one for which the insurer was not primarily liable"; (3) "the insurer has compensated the insured in whole or in part for the same loss for which the defendant is primarily liable"; (4) "the insurer has paid the claim of its insured to protect its own interest and not as a volunteer"; (6) "the insurer has suffered damages caused by the act or omission upon which the liability of the defendant depends"; (7) "justice requires that the loss be entirely shifted from the insurer to the defendant, whose equitable position is inferior to that of the insurer"; and (8) "the insurer's damages are in a liquidated sum."  *See* Opp'n at 15–16; *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal. App. 4th 1279, 1292 (1998).  And to establish a claim by the insured, they must prove (1) "the insured suffered a loss for which the defendant is liable"; and (5) "the insured has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit had it not been compensated for its loss by the insurer."  *See* Opp'n at 15–16; *Fireman's Fund*, 65 Cal. App. 4th at 1292.  Despite the Class Subrogation Plaintiffs' protestations to the contrary, these factors cannot be established with common evidence.

        1.   *Establishing an Insurer's Entitlement to Subrogation Raises Countless Individualized Inquiries.*

As to the six factors related to the insurer's right to recover in subrogation, the Class Subrogation Plaintiffs are wrong that satisfying those factors requires only "an

---

4

administerial act of producing limited policy information and the loss amounts paid." Opp'n at 18. Instead, for each insurer and each insured on whose behalf the putative class members bring claims, the Class Subrogation Plaintiffs must establish the fact and amount of payment; that any such payment was to compensate for the "same loss" for which Defendants are liable; the basis for the payment (*i.e.*, based on a specific insurance contract); and that the equities support shifting the losses to Defendants, rather than the insurer. The Class Subrogation Plaintiffs' cursory analysis of these factors misses the mark.

With respect to the second factor, the Class Subrogation Plaintiffs provide no explanation of how the Court can determine that an insurer's losses are "one[s] for which the insurer was not primarily liable" without individualized evidence *as to each insured's claims*. With respect to the third factor, the Class Subrogation Plaintiffs are wrong that they need only provide "proof of payment pursuant to an existing policy" to establish that such payment was for the "same loss" for which the defendant is allegedly liable. Opp'n at 16. Instead, such a determination requires an analysis of the specific alleged loss and the insured's specific claims. *See Fireman's Fund Ins. Co. v. Morse Signal Devices*, 151 Cal. App. 3d 681, 691 (1984) (finding that insurer could not succeed in subrogation for antitrust claim because the insurer had "not compensated its insureds for the same losses contemplated under the antitrust claim," as "[n]one of [insurer's] compensation paid to its insured is related to pricing terms of the alarm systems"). And discovery as to the Class Subrogation Plaintiffs will obviously not provide the evidence necessary to prove the claims of unnamed and unidentified class member-insurers and their unnamed and unidentified insureds.

With respect to the fourth factor, even if, as the Class Subrogation Plaintiffs argue, some courts "have given a very liberal interpretation to the 'interest' required to distinguish a person from being a volunteer," some showing is still required, and the Class Subrogation Plaintiffs have not explained how they can make this showing

without individualized evidence *as to each insured*.  Opp'n at 16 (quoting *Employers Mut. Liab. Inc Co. v. Pac. Indemnity Co.*, 167 Cal. App. 2d 369, 379 (1959)).  With respect to the sixth and eighth factors, the Class Subrogation Plaintiffs have not explained how payments made *by individual insurers as to individual insureds' claims* are a "common issue"—because they are not.  Opp'n at 17.  Finally, with respect to the seventh factor, a weighing of the equities must be done at least on an insurer-by-insurer basis, and will depend on the insurer's knowledge about the alleged theft vulnerability of the vehicles at issue, the premiums the insurer has collected for those vehicles, and likely a host of other issues.[3]

Accordingly, simply determining whether a class member-insurer is entitled to recover in subrogation—before even evaluating the underlying claims against Defendants—raises scores of individualized inquiries.

## 2. Establishing an Insured's Entitlement to Recover from Defendants Also Raises Individualized Inquiries.

Although the individualized inquiries that arise in connection with determining an insurer's eligibility for subrogation are undoubtedly enough to defeat predominance on their own, the individualized inquiries do not stop there.  Factors one and five—which both go to the right of each insured to recover against the defendant—are also not subject to common proof.

The first factor—determining that "the insured suffered a loss for which the defendant is liable"—equates to proving an insured's causes of action against Defendants.  As discussed in the Motion to Strike, establishing an insured's causes of action will raise individualized inquiries on an insured-by-insured basis as to, for example, causation, reliance, privity, and compliance with statutes of limitations.  *See* Mot. at 13–15.  The Class Subrogation Plaintiffs' responses are unavailing.

---

[3] The Class Subrogation Plaintiffs are wrong in arguing that this Court has ruled that individual claims cannot be "barred by the superior equities doctrine" (Opp'n at 17); rather, the Court's holding on the motion to dismiss applied only to the general information pleaded in the Consolidated Complaint (and only as to California law).

HMA AND KA'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS

In response to HMA and KA's causation argument, the Class Subrogation Plaintiffs advance two unpersuasive arguments. First, they argue that "[t]his Court already expressly held it was unnecessary for Class Plaintiffs to plead specifics for each insured." Opp'n at 21. Yet that is irrelevant to the inquiry here. The Court held only that at the motion to dismiss stage, *i.e.*, "[f]or pleading purposes," the Subrogation Plaintiffs had sufficiently alleged causation. Dkt. 269 at 14–15. Although "ultimate proof is not the standard in resolving a motion to dismiss under Rule 12(b)(6)," *Rios v. Cnty. of Sacramento*, 562 F. Supp. 3d 999, 1018 (E.D. Cal. 2021), in order to satisfy predominance, a plaintiff must "provide a common method of *proof* to establish . . . classwide liability," *Castillo v. Bank of Am., NA*, 980 F.3d 723, 732 (9th Cir. 2020) (emphasis added). Thus, to certify a class, the Class Subrogation Plaintiffs would need to show that causation can be *proven*, and not simply pleaded, with common evidence. They will not be able to do so, which is why the Court found, even for purposes of a motion to dismiss, that causation presented a "close question." Dkt. 269 at 15.

Second, the Class Subrogation Plaintiffs seem to argue that causation can be established on a class-wide basis because the Court has already preliminarily certified a consumer class in this MDL for settlement purposes. Opp'n at 21. However, that ruling, like the ruling on the motion to dismiss, is inapposite. The Court held only that predominance was satisfied "for settlement purposes." Dkt. 256 at 6. As the Ninth Circuit has held, "whether a proposed class is sufficiently cohesive to satisfy Rule 23(b)(3) is informed by whether certification is for litigation or settlement. A class that is certifiable for settlement may not be certifiable for litigation if the settlement obviates the need to litigate individualized issues that would make a trial unmanageable." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 558 (9th Cir. 2019); *see also Saliba v. KS Statebank Corp.*, No. 20-503, 2021 WL 2105608, at *2 (D. Ariz. May 25, 2021) ("It is well established that trial courts should use a lower standard for determining the propriety of certifying a settlement

HMA AND KA'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS

class, as opposed to a litigation class."). Indeed, Judge Staton relied on the same Ninth Circuit passage in rejecting a similar argument in *Engine I (Subrogation)*. *See Engine I (Subrogation)* Order Granting Mot. to Strike at 10. And Judge Staton further reasoned that "the *Engine I* consumer class did not have the added layer of individual questions required by subrogation's elements." *Id.* That reasoning applies here as well. Thus, the preliminary approval of the consumer settlement should have no bearing on whether a class could possibly be certified in this subrogation track.

For that same reason, the Class Subrogation Plaintiffs' first argument as to the individualized statute of limitations issues falls flat. Opp'n at 21. The Class Subrogation Plaintiffs also argue that "[t]he law is clear 'the presence of individual issues of compliance with the statute of limitations [] does not defeat the predominance of common questions." *Id.* (quoting *Cameron v. E.M. Adams & Co.*, 547 F.2d 473, 478 (9th Cir. 1976)) (emphasis omitted). But that is a gross misrepresentation of the law. In *Cameron*, the Ninth Circuit found only that "the presence of individual issues of compliance with the statute of limitations *here* does not defeat the predominance of the common questions." 547 F.2d at 478 (emphasis added). Thus, the court explicitly limited its holding to the facts of that case. And there, plaintiffs had argued that "few, if any, class members" would be subject to the statute of limitations. *Id.* In contrast, the Class Subrogation Plaintiffs have not made and cannot make such an argument here, as statutes of limitations will be at issue for a substantial number of insureds' claims, given that the putative Class Vehicles include those as old as Model Year 2011. As Judge Staton held, "individualized statute-of-limitations inquiries" predominate and support striking the class. *Engine I (Subrogation)* Order Granting Mot. to Strike at 6.

The Class Subrogation Plaintiffs' responses to HMA and KA's reliance argument are also misguided. Again, they contend that because the Court held that the Subrogation Plaintiffs did "not need to *plead* each individual insured's specific

reliance" on alleged misrepresentations "at [the pleading] stage," that somehow means reliance will not require individualized proof at the merits stage. Opp'n at 22 (quoting Dkt. 269 at 14) (alterations added). But, as discussed above, to establish predominance, they must identify a "common method of *proof*" for their claims. *Castillo*, 980 F.3d at 732 (emphasis added). And even if there are limited circumstances in which two of their hundreds of causes of action may not require that reliance be established on an individual basis (Opp'n at 22), that does not change that they will not be able to certify a class for all claims that *do* require such individualized proof. *See, e.g.*, *Ono v. Head Racquet Sports USA, Inc.*, No. 13-4222, 2016 WL 6647949, at *10 (C.D. Cal. Mar. 8, 2016) (denying motion to certify class to pursue fraud, negligent misrepresentation, UCL, and CLRA claims where "the question of exposure would have to be resolved on an individual rather than classwide basis"); *Brown v. Nat'l Life Ins. Co.*, No. 13-2547, 2013 WL 12096508, at *7 (C.D. Cal. Oct. 15, 2013) ("[T]he misrepresentation claim will require individualized analysis of each class member's detrimental reliance on the alleged misrepresentations and omissions. Therefore, predominance has not been met.").

Finally, the Class Subrogation Plaintiffs do not dispute that implied warranty claims are subject to individualized inquiries, including that (1) the insureds did not purchase the vehicles from Defendants (and are therefore not in privity with Defendants), and (2) the Song-Beverly Act does not apply to transactions where title was taken outside of California. *See* Mot. at 14.

Further, factor five—determining that an insured "has an existing, assignable cause of action against the defendant which the insured could have asserted for its own benefit"—is not subject to common proof. Defendants must be able to litigate on an individualized basis whether an insured has received compensation from Defendants for his or her losses (outside the settlement agreement in the consumer track of the MDL). The Class Subrogation Plaintiffs do not attempt to explain how this can be done on a class-wide basis.

HMA AND KA'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS

These are only a handful of examples of individualized questions that will arise in determining whether the class within the class—*i.e.*, the unnamed and unidentified insureds—will be able to establish their claims against Defendants. Although the Class Subrogation Plaintiffs argue that HMA and KA's arguments "are akin to arguments based on differing amounts of damages," that is not the case. Opp'n at 14–15.  Rather, as the Class Subrogation Plaintiffs admit, the "predominant issues here are liability issues," (*id.* at 15), and the Ninth Circuit has made clear that predominance is not satisfied where a plaintiff does "not provide[] a common method of proof to determine liability."  *Castillo*, 980 F.3d at 733; *see also Stiner v. Brookdale Senior Living, Inc.*, 665 F. Supp. 3d 1150, 1199 (N.D. Cal. 2023) (finding predominance was not satisfied where "individualized inquiry [was] necessary to determine [the defendant's] *liability* to any given class member as a threshold matter").  Even if the Class Subrogation Plaintiffs could somehow establish that "the Vehicles were defectively designed" (which they cannot), that would be insufficient to establish liability on even a single claim.  Opp'n at 15.  A class can never be certified in such circumstances.

Judge Staton was, thus, correct in holding in *Engine I (Subrogation)* that "core elements of Plaintiffs' subrogation claims require individualized showings not just as to each Class Member-Insurer but as to every insured whose rights are being asserted."  *Engine I (Subrogation)* Order Granting Mot. to Strike at 6.  These individualized showings would be required to, among other things: (1) "determine that each insurer has, in fact, 'compensated the insured'"; (2) "evaluate whether each payment was 'voluntary' by looking at each underlying insurance policy to determine whether the insurer had a 'reasonable belief' regarding its obligation to pay"; (3) "determine whether there was, in fact" a loss event, and "whether it was, in fact, caused by the alleged defect and not some other intervening cause"; and (4) determine whether a claim is barred by an "individualized statute-of-limitations

inquir[y]." *Engine I (Subrogation)* Order Granting Mot. to Strike at 6–7. Those individualized inquiries "weigh[] strongly against predominance" here as well. *Id*.

The Class Subrogation Plaintiffs do not challenge that holding or its applicability to this matter, contending only, without any support or explanation, that the opinion "is easily distinguishable." Opp'n at 15. But it isn't. The same individualized issues (and countless more) predominate here and make class certification impossible.

### B. The Variation in State Laws Also Precludes the Class Subrogation Plaintiffs from Establishing Predominance.

As set forth in the Motion, courts routinely find that predominance is not satisfied where they would have to apply different states' laws with material variations across a class. *See* Mot. at 15. The Class Subrogation Plaintiffs do not dispute that, unlike a non-subrogation case, choice-of-law issues would arise at two levels for every individual insured's claims. That is, for each claim, the Court would have to determine which state's law governs both (a) the right of the insurer to recover on behalf of the insured in subrogation; and (b) the insured's right to recover against Defendants. The impossibility of doing this on a class-wide basis is self-evident and undisputed. And again, the Class Subrogation Plaintiffs fail to explain why Judge Staton's reliance on the nationwide scope of the putative class and the variation in 50 states' laws in striking the *Engine I (Subrogation)* class does not similarly doom their class allegations. *Engine I (Subrogation)* Order Granting Mot. to Strike at 6.

The Class Subrogation Plaintiffs focus only on the choice-of-law question at the first level of inquiry, yet even there they do not persuasively dispute that material variation in state laws precludes a showing of predominance. *See* Opp'n at 23–26. As an initial matter, the Class Subrogation Plaintiffs' assertion that "any variation in subrogation rights by state is not material" cannot be squared with their prior argument that the superior equities doctrine varies between states in potentially

---

11

1    outcome-determinative ways.  *See* Opp'n at 23; Dkt. 234 at 27–28.  The Class

2    Subrogation Plaintiffs also do not contest that subrogation law varies materially by

3    state as to the made-whole doctrine and claim splitting.  Instead, they rely on the law

4    of one jurisdiction to argue that the made-whole doctrine does not apply here, and

5    they cite no support for their contention that claim splitting is likewise inapplicable.

6    Opp'n at 24–25.  In doing so, they have simply highlighted the need for the Court to

7    address these defenses under each state's law based on the individualized facts of

8    each insured's claims.[4]  Indeed, the court in *Scottsdale Ins. Co. v. Kat Constr. LLC*,

9    No. 21-278, 2022 WL 20652788 (D.N.J. Oct. 5, 2022)—the case on which the Class

10   Subrogation Plaintiffs rely—made clear that its ruling was based on "New Jersey

11   subrogation law" and that the applicability of the made-whole doctrine depends on

12   the "express terms" in the contract between insurer and insured (*i.e.*, an

13   individualized inquiry).  *Id.* at *3 (citation omitted).  Critically, the Class

14   Subrogation Plaintiffs ignore that Judge Staton relied on the *differences* in state law

15   as to the made-whole doctrine in determining that choice-of-law issues "defeated

16   predominance."  *Engine I (Subrogation)* Order Granting Mot. to Strike at 9–10.

17   Their failure to even address that holding is telling.

18        Further, the Class Subrogation Plaintiffs do not attempt to dispute that state

19   law varies as to each individual insured's underlying causes of action against

20   Defendants, and that, as a result, choice-of-law inquiries will need to be conducted

21   for each insured.  *See generally* Mot. at 17–18.  They have, thus, conceded the issue.

22   *See Kroeger v. Vertex Aerospace LLC*, No. 20-3030, 2020 WL 3546086, at *8 (C.D.

---

[4] The Class Subrogation Plaintiffs seem to argue, without support, that variations in state law as to "equitable defense[s]" cannot "defeat [a] class."  Opp'n at 25.  It is not clear what they mean by "equitable defense[s]."  But in any event, differences in elements of affirmative defenses are material in a choice-of-law inquiry.  *See Potter v. Chevron Prod. Co.*, No. 17-6689, 2018 WL 4053448, at *11 (N.D. Cal. Aug. 24, 2018).  And a plaintiff cannot satisfy predominance where the applicability of affirmative defenses must be decided on an individualized basis.  *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 367 (2011) ("[A] class cannot be certified on the premise that Wal–Mart will not be entitled to litigate its statutory defenses to individual claims.").

Cal. June 30, 2020) (holding that plaintiff conceded argument by failing to address it in his opposition brief); *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011) (similar); *cf. Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005) (plaintiff abandoned claims by not raising them in opposition to motion for summary judgment).   And in any event, courts have stricken nationwide class allegations in consumer class actions in light of the material variation in laws across states.  *See, e.g.*, *Sanders*, 672 F. Supp. 2d at 991 (striking nationwide class allegations where "individual inquiries" as to reliance and materiality "very likely would be subject to the differing state laws that may or may not apply"); *McKinney v. Corsair Gaming, Inc.*, 646 F. Supp. 3d 1133, 1142–45 (N.D. Cal. 2022) (striking nationwide class allegations as to consumer protection claims).[5]

Ultimately, discovery will not change that state law varies materially as to both subrogation law and the underlying causes of action, and thus that choice-of-law inquiries must be conducted at both levels for each insured.  A class cannot be certified in such circumstances.

## II.   The Class Subrogation Plaintiffs Cannot Satisfy Superiority.

As set forth in the Motion, a class action is not "superior to other available methods for fairly and efficiently adjudicating the controversy" because (1) the absent insurers that the Class Subrogation Plaintiffs seek to represent are sophisticated litigants with large individual claims and significant resources; (2) hundreds of insurers have brought their own cases and have already expressed their intent to opt out of a class; and (3) this case presents limitless individualized

---

[5] The Class Subrogation Plaintiffs' citation of *Mazza v. American Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012), is misplaced.  Opp'n at 10, 26.  Although it is true that the defendant in *Mazza* "exhaustively detailed the ways in which California law differs from the laws of the 43 other jurisdictions in which class members reside," the Ninth Circuit did not impose such a requirement for defendants arguing against certification of a nationwide class.  *Id.* at 591.  The differences in laws that the defendant briefed in *Mazza* also exist here.

inquiries.  *See* Mot. at 18–19; Fed. R. Civ. P. 23(b)(3).  The Class Subrogation Plaintiffs present little opposition.  Although they argue that HMA and KA "incorrectly focus their analysis" on one of the four superiority factors, that is not true.  Opp'n at 11.  And in any event, they acknowledge that "not every factor must be considered" and fail to show how any of the factors support their position.  Opp'n at 27–28.

The first factor—"the class members' interests in individually controlling the prosecution or defense of separate actions"—unquestionably supports striking the class allegations (which may explain why the Class Subrogation Plaintiffs ignore it in their Opposition).  Fed. R. Civ. P. 23(b)(3)(A).  The subrogation track of the MDL contains 166 insurer-plaintiffs that are not represented by counsel for the Class Subrogation Plaintiffs and that have expressed an intention to opt out of a class (in the event one is certified).  *See* Dkt. 283 ¶ 7 ("[T]he Independent Subrogation Plaintiffs intend to opt-out of any subrogation class action certified by this Court pursuant to Fed. R. Civ. P. 23(c)(2).").  Courts often deny certification where putative class members express an intention to opt out pre-certification.  *See, e.g.*, *Urena v. Earthgrains Distribution, LLC*, No. 16-634, 2017 WL 4786106, at *11 (C.D. Cal. July 19, 2017) ("While those Distributors' interests could be vindicated through opting out post-certification, the Court frankly believes that it would be undesirable to certify a class purportedly to resolve all Distributors' legal claims only to likely face the need to decertify the class due to opt outs."); *Hamilton v. Genesis Logistics, Inc.*, No. 13-1848, 2014 WL 4187941, at *8 (C.D. Cal. Aug. 22, 2014) (finding superiority not satisfied where "more than a fifth" of the putative class members "ha[d] already signaled, through their signing declarations in opposition to class certification, that they would likely opt out of the class").

Similarly, the size of the putative class members' claims also suggests that they would be interested in "individually controlling" their claims.  *See, e.g.*, *Zinser v. Accufix Rsch. Inst., Inc.*, 253 F.3d 1180, 1191 (9th Cir. 2001), *opinion amended*

---

14

*on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001) (finding that high minimum claims per class member weighed against class certification); *Liberty Mut. Ins. Co. v. Tribco Const. Co.*, 185 F.R.D. 533, 541 (N.D. Ill. 1999) ("[C]ourts often find that class actions are not appropriate when the individual members are sophisticated and have large claims.").

The second factor—"the extent and nature of any litigation concerning the controversy already begun by or against class members"—weighs against a finding of superiority for similar reasons.   Fed. R. Civ. P. 23(b)(3)(B).   The Class Subrogation Plaintiffs are plainly wrong that "there is currently no other pending theft litigation by any class members against Defendants."   Opp'n at 28.   To the contrary, there are 404 named insurer-plaintiffs in this MDL, and thus 404 putative class members bringing their own claims.   And, as noted above, 166 of those putative class members have expressed an intention to opt out of a class.

The third factor—"the desirability or undesirability of concentrating the litigation of the claims in the particular forum"—is not particularly relevant in the context of an MDL.   Fed. R. Civ. P. 23(b)(3)(C).   Whether or not a class is certified, the claims will remain concentrated in this forum.

Finally, the fourth factor—"the likely difficulties in managing a class action"—further weighs against a finding of superiority.   Fed. R. Civ. P. 23(b)(3)(D).   The Class Subrogation Plaintiffs do not successfully dispute that each class member would have "to litigate numerous and substantial separate issues to establish [its] right to recover individually."   Mot. at 19 (quoting *Brown v. Fed. Express Corp.*, 249 F.R.D. 580, 587 (C.D. Cal. 2008) (internal quotations and alterations omitted)).   Moreover, as the Ninth Circuit held in *Zinser*, superiority is not satisfied where, as here, it would be "difficult to establish a common cause of injury."   253 F.3d 1180 at 1192. The Class Subrogation Plaintiffs' argument that "[n]umerous individual actions are unrealistic, risk inconsistent outcomes, and unnecessarily strain judicial resources," makes little sense given the reality of this litigation, which involves

hundreds of named plaintiffs coordinated and consolidated in an MDL.  Opp'n at 19.

Accordingly, the Class Subrogation Plaintiffs cannot satisfy superiority.

## **CONCLUSION**

Because it is clear at this stage that the Class Subrogation Plaintiffs will not be able to establish predominance and superiority, the Court should strike the class allegations from the Subrogation Plaintiffs' Amended Consolidated Complaint.


Dated:  April 5, 2024                         JENNER & BLOCK LLP


                                              _/s/ Peter J. Brennan_
                                              Kate T. Spelman
                                              Alice S. Kim
                                              Madeline P. Skitzki
                                              Jenna L. Conwisar
                                              JENNER & BLOCK LLP
                                              515 South Flower Street, Suite 3300
                                              Los Angeles, CA  90071-2246
                                              Telephone:  +1 213 239 5100
                                              Facsimile:   +1 213 239 5199
                                              KSpelman@jenner.com
                                              AKim@jenner.com
                                              MSkitzki@jenner.com
                                              JConwisar@jenner.com

                                              Peter J. Brennan (_pro hac vice_)
                                              Michael T. Brody (_pro hac vice_)
                                              JENNER & BLOCK LLP
                                              353 North Clark Street
                                              Chicago, IL  60654-3456
                                              Telephone:  +1 312 222 9350
                                              Facsimile:   +1 312 527 0484
                                              PBrennan@jenner.com
                                              MBrody@jenner.com

                                              _Attorneys for Defendants_

HMA AND KA'S REPLY IN SUPPORT OF MOTION TO STRIKE CLASS ALLEGATIONS