**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Alice S. Kim (SBN 317479)
AKim@jenner.com
Madeline P. Skitzki (SBN 318233)
MSkitzki@jenner.com
Jenna L. Conwisar (SBN 341521)
JConwisar@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  +1 213 239 5100
Facsimile:   +1 213 239 5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
PBrennan@jenner.com
Michael T. Brody (*pro hac vice*)
MBrody@jenner.com
353 North Clark Street
Chicago, IL  60654-3456
Telephone:  +1 312 222 9350
Facsimile:   +1 312 527 0484

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ml-3052-JVS(KESx) |
| | The Honorable James V. Selna |
| | **HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY** |
| This document relates to: | |
| ALL SUBROGATION CASES | Judge:   The Honorable James V. Selna |
| | Ctrm:   10C |
| | Date:    April 19, 2024 |
| | Time:    9:00 a.m. |

1

## <u>TABLE OF CONTENTS</u>

2

INTRODUCTION ................................................................................................... 1

3

BACKGROUND .................................................................................................... 2

4

ARGUMENT .......................................................................................................... 4

5

6

    I.      The Subrogation Plaintiffs Are Not Entitled to Jurisdictional
Discovery. ......................................................................................... 5

7

8

           A.      Most of the Subrogation Plaintiffs' "Evidence" Is
Unconnected to California and/or the Claims in this

9

                 Action. ..................................................................................... 6

10

           B.      The Shipping Records Do Not Contradict HMC and
KC's Declarations and Do Not Support Jurisdiction. ............... 7

11

12

           C.      The Subrogation Plaintiffs Cannot Seek Jurisdictional
Discovery Based on an Alter Ego Theory. ............................... 11

13

14

           D.      The Subrogation Plaintiffs Cannot Seek Jurisdictional
Discovery Simply to Test the Accuracy of HMC and

15

                 KC's Declarations ................................................................... 15

16

    II.     In the Event the Court Orders Jurisdictional Discovery, It
Should Be Significantly Limited. ..................................................... 17

17

18

CONCLUSION ...................................................................................................... 18

19

20

21

22

23

24

25

26

27

28

HMC AND KC'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR
LEAVE FOR JURISDICTIONAL DISCOVERY

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

5    *Barantsevich v. VTB Bank*,
     954 F. Supp. 2d 972 (C.D. Cal. 2013)..............................................................4, 13

6

7    *Bristol-Myers Squibb Co. v. Superior Court of California*,
     582 U.S. 255 (2017) ............................................................................................6, 7

8

9    *Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
     788 F.2d 535 (9th Cir. 1986) ...................................................................................16

10

11   *Getz v. Boeing Co.*,
     654 F.3d 852 (9th Cir. 2011) ...................................................................................16

12

13   *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*,
     76 F.4th 1266 (9th Cir. 2023) ..................................................................................9

14

15   *Greystone Hous. Found., Inc. v. Fantasy Holdings, LLC*,
     No. 16-300, 2017 WL 11421364 (S.D. Cal. Jan. 12, 2017)...............................17

16

17   *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
     328 F.3d 1122 (9th Cir. 2003).........................................................................14, 15

18   *Infinite Peripherals, Inc. v. Custom S.P.A.*,
     No. 19-1983, 2020 WL 5045315 (C.D. Cal. Apr. 10, 2020) ...........................16

19

20   *J. McIntyre Mach., Ltd. v. Nicastro*,
     564 U.S. 873 (2011) .................................................................................................8

21

22   *Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*,
     No. 19-7831, 2019 WL 8064196 (C.D. Cal. Dec. 5, 2019) ........................10, 16

23

24   *LNS Enters. LLC v. Cont'l Motors, Inc.*,
     22 F.4th 852 (9th Cir. 2022)............................................................................*passim*

25

26   *Macias v. LG Chem Ltd.*,
     No. 20-2416, 2021 WL 780478 (C.D. Cal. Feb. 28, 2021)...............................17

27

28   *Martinez v. Manheim Cent. California*,
     No. 10-1511, 2011 WL 1466684 (E.D. Cal. Apr. 18, 2011).........................5, 13

HMC AND KC'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR
LEAVE FOR JURISDICTIONAL DISCOVERY

*Petzilla, Inc. v. Anser Innovation LLC*,
No. 14-1354, 2014 WL 12705567 (N.D. Cal. May 20, 2014) ........................... 17

*Ranza v. Nike, Inc.*,
793 F.3d 1059 (9th Cir. 2015) ................................................ 11, 12, 13

*Reynolds v. Binance Holdings Ltd.*,
481 F. Supp. 3d 997 (N.D. Cal. 2020) ............................................. 13

*Signature Fin., LLC v. McClung*,
No. 16-3621, 2019 WL 4418127 (C.D. Cal. June 3, 2019) ............................. 16

*Symettrica Ent., Ltd. v. UMG Recordings, Inc.*,
No. 19-1192, 2019 WL 8806093 (C.D. Cal. Sept. 20, 2019) ........................... 5

*Tangle, Inc. v. Buffalo Games, LLC*,
No. 22-7024, 2023 WL 5672178 (N.D. Cal. Sept. 1, 2023) ............................ 10

*Williams v. Yamaha Motor Co.*,
851 F.3d 1015 (9th Cir. 2017) ................................................ 11, 14

*Yagman v. Kelly*,
No. 17-6022, 2018 WL 2138461 (C.D. Cal. Mar. 20, 2018) ........................... 16

*Yamashita v. LG Chem, Ltd.*,
62 F.4th 496 (9th Cir. 2023) ................................................ *passim*

*Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*,
No. 23-55350, 2024 WL 838707 (9th Cir. Feb. 28, 2024) .......................... 14, 15

*Zakikhani v. Hyundai Motor Co.*,
No. 20-1584, 2021 WL 4805454 (C.D. Cal. June 28, 2021) ............................ 15

HMC AND KC'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR
LEAVE FOR JURISDICTIONAL DISCOVERY

# **INTRODUCTION**

Nearing the end of the second round of briefing on Hyundai Motor Company ("HMC") and Kia Corporation's ("KC") motions to dismiss for lack of personal jurisdiction, the Subrogation Plaintiffs—for the very first time—profess a need for jurisdictional discovery to establish specific personal jurisdiction as to HMC and KC.  Putting aside the tardiness of their request for jurisdictional discovery, the request should be denied because the Subrogation Plaintiffs do not demonstrate that "pertinent facts bearing on the question of jurisdiction are controverted" or that "a more satisfactory showing of the facts is necessary."  *LNS Enters. LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 864 (9th Cir. 2022) (citation omitted).

As an initial matter, much of the "evidence" the Subrogation Plaintiffs cite as allegedly supporting a "colorable" basis for specific jurisdiction does not demonstrate targeting of California and/or is unconnected to the claims at issue in this action.  The Subrogation Plaintiffs also rely on shipping records, which they claim demonstrate that HMC and KC regularly ship vehicles to California ports.  Yet these records (1) contain a substantial number of obviously irrelevant entries; and (2) do not support specific personal jurisdiction, as they only confirm that HMC and KC sell vehicles to their subsidiaries FOB South Korea, meaning the vehicles belong to the subsidiaries the moment they leave South Korea, and HMC and KC are not involved in the distribution of vehicles once they reach the United States.  Further, although the Subrogation Plaintiffs attempt to impute the activity of KC's and HMC's American distributors, Hyundai Motor America ("HMA") and Kia America, Inc. ("KA"), to HMC and KC under a newly articulated alter ego theory, their baseless allegations contradict the declarations HMC and KC submitted with their Motion to Dismiss, which make clear that each entity maintains corporate separateness.

In a last-ditch effort to support their baseless Motion, the Subrogation Plaintiffs request jurisdictional discovery because it allegedly "may show that

HMC AND KC'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY

Defendants' self-serving Declarations are not accurate."  Dkt. 338 ("Motion for Leave") at 16.  But the Ninth Circuit has made clear that jurisdictional discovery should not be ordered based on a "mere hunch."  *Yamashita v. LG Chem, Ltd*., 62 F.4th 496, 507 (9th Cir. 2023) (citation omitted).  Ultimately, the unquestionably broad categories of discovery the Subrogation Plaintiffs seek only serve to confirm that their request for jurisdictional discovery is "little more than a fishing expedition," which should not be permitted.  *Id.* at 508.

Accordingly, this Court should deny the Subrogation Plaintiffs' Motion, and the Subrogation Plaintiffs should not be granted leave to conduct jurisdictional discovery.

## **BACKGROUND**

HMC and KC filed their Motion to Dismiss the Amended Consolidated Complaint for Lack of Personal Jurisdiction on February 23, 2024 ("Motion to Dismiss").  Dkt. 312.  The Motion to Dismiss addressed the bases on which the Amended Consolidated Complaint ("ACC") purported to rely to establish personal jurisdiction.  Those included allegations that (1) HMC and KC directly conducted business in California; (2) some vehicles at issue in the action may have been stolen in California; (3) some vehicles manufactured by HMC and KC may have been sold in California; (4) HMC and KC operate passive websites in California; (5) HMC and KC have filed lawsuits unrelated to this MDL in this District; and (6) HMC and KC acted indirectly through their subsidiaries in California.

HMC and KC's Motion to Dismiss, and its supporting declarations from an HMC employee and a KC employee, conclusively demonstrate that the personal jurisdiction-related allegations in the ACC are either untrue or insufficient to establish personal jurisdiction.  HMC and KC do not engage in any actions targeted at California that are relevant to this matter.  The fact that they sell vehicles in South Korea that may end up in California (or that may be stolen in California) also does not help their personal jurisdiction case. And the Subrogation Plaintiffs did not

1  allege (and cannot establish) that the Court can impute any relevant contacts of the
2  American subsidiaries to HMC and KC for purposes of establishing specific
3  personal jurisdiction.

4       The Subrogation Plaintiffs focused their Opposition to the Motion to Dismiss
5  on HMC and KC's alleged direct targeting of California.  Indeed, they summarized
6  their entire basis for specific personal jurisdiction as follows: HMC and KC "are
7  subject to specific personal jurisdiction in California's courts because they have
8  purposely directed sales of their vehicles and automobile parts, including the
9  Vehicles that are the subject of this action, into the State on a systematic and
10 continual basis."  Dkt. 335 ("Opp'n to Mot. to Dismiss") at 8.  Although their brief
11 is far from a model of clarity, to support that argument, they seem to be relying on
12 five sets of purported "facts": (1) HMC "maintains a research and design facility in
13 California"; (2) HMC and KC "employ thousands of people" in California; (3) HMC
14 and KC "control certain aspects of their California dealers' operations"; (4) HMC
15 and KC operate a "geographically-aimed interactive website"; and (5) "HMC
16 dispatched 'over 7,500 shipments of vehicles and parts through California's ports
17 for delivery and sale to California facilities,'" and "KC similarly 'initiated over
18 5,000 shipments of vehicles and parts through California's ports for delivery and
19 sale to California facilities.'"  *Id.* at 9–11, 17–19 (quoting ACC ¶¶ 32–33, 38).
20 Defendants intend to respond to those contentions in their Reply in Support of the
21 Motion to Dismiss.

22      On the same day the Subrogation Plaintiffs filed their Opposition to HMC and
23 KC's Motion to Dismiss, they filed their Motion for Leave.  The Motion for Leave
24 is almost entirely unrelated to their Opposition to the Motion to Dismiss.  The
25 Motion for Leave recites new and miscellaneous contentions in an attempt to support
26 jurisdiction, including the Subrogation Plaintiffs' sudden contention that they have
27 a basis to impute the contacts of the American subsidiaries to HMC and KC via an
28 alter ego theory.

HMC AND KC'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR
LEAVE FOR JURISDICTIONAL DISCOVERY

1    Notably, at no point during the meet and confer process before HMC and KC

2    filed their Motion to Dismiss did the Subrogation Plaintiffs mention that they needed

3    to conduct jurisdictional discovery to establish that HMC and KC are subject to

4    personal jurisdiction.  Declaration of Peter J. Brennan ("Brennan Decl.") ¶ 3.  To the

5    contrary, they expressed confidence in their position.  *Id.* ¶ 4.  For example, on

6    November 29, 2023, counsel for the Subrogation Plaintiffs asserted in an email that

7    "[t]he evidence is so overwhelming" that HMC and KC should just answer the

8    "amended complaint, as opposed to [filing] another motion to dismiss on

9    jurisdictional grounds."  *Id.* ¶ 5; *id.*, Ex. 1.  On December 7, 2023, counsel for the

10   Subrogation Plaintiffs similarly indicated that once the Amended Consolidated

11   Complaint was filed, they would have more than sufficient factual allegations to

12   meet their burden.  *Id.* ¶ 5; *id.*, Ex. 1.

13   Two weeks before their deadline to oppose the Motion to Dismiss, the

14   Subrogation Plaintiffs sent a "meet and confer" letter requesting jurisdictional

15   discovery, which provided no legitimate basis supporting any entitlement to

16   jurisdictional discovery, relying only on their contention that HMC and KC "have

17   longstanding and potentially exclusive sales relationships with California-based

18   entities that are also its subsidiaries."  *Id.* ¶ 6; *id.*, Ex. 2.  Their Motion for Leave

19   contains new arguments not articulated in their "meet and confer" letter.

20                                   **ARGUMENT**

21   Jurisdictional discovery should be granted only "where pertinent facts bearing

22   on the question of jurisdiction are controverted or where a more satisfactory showing

23   of the facts is necessary."  *LNS Enters.*, 22 F.4th at 864 (citation omitted) (affirming

24   denial of jurisdictional discovery).  "[A] mere hunch that discovery might yield

25   jurisdictionally relevant facts" is an "insufficient reason[] for a court to grant

26   jurisdictional discovery."  *Yamashita*, 62 F.4th at 507 (citation omitted) (affirming

27   denial of jurisdictional discovery).  Relatedly, jurisdictional discovery should not be

28   permitted "if the request amounts merely to a 'fishing expedition.'"  *Barantsevich v.*

4

*VTB Bank*, 954 F. Supp. 2d 972, 996 (C.D. Cal. 2013). Thus, to seek jurisdictional discovery the Subrogation Plaintiffs must put forth a "colorable basis"—*i.e.*, "'some evidence' tending to establish personal jurisdiction" over Defendants. *Martinez v. Manheim Cent. California*, No. 10-1511, 2011 WL 1466684, at *4 (E.D. Cal. Apr. 18, 2011) (citations omitted).

"In the context of a motion for jurisdictional discovery, just as in the context of a motion to dismiss for lack of jurisdiction, bare allegations are trumped by sworn statements to the contrary." *Yamashita*, 62 F.4th at 508. As such, to the extent the Subrogation Plaintiffs dispute the evidence HMC and KC cited to support their Motion to Dismiss, the Subrogation Plaintiffs must "provide[] . . . information to support a contrary conclusion." *LNS Enters.*, 22 F.4th at 865. They must also "demonstrate how further discovery would allow" them to "contradict" HMC and KC's declarations. *Symettrica Ent., Ltd. v. UMG Recordings, Inc.*, No. 19-1192, 2019 WL 8806093, at *5 (C.D. Cal. Sept. 20, 2019) (internal quotation marks and citations omitted).

The Subrogation Plaintiffs are not entitled to jurisdictional discovery because they do not provide a "colorable basis" to support their claims for jurisdiction, do not legitimately controvert the evidence HMC and KC submitted with their Motion to Dismiss, and seek to embark on a fishing expedition for supporting evidence. The unlimited scope of the categories they seek only underscores the illegitimacy of their pursuit.

I. **The Subrogation Plaintiffs Are Not Entitled to Jurisdictional Discovery.**

The Subrogation Plaintiffs seem to premise their "colorable basis" for specific personal jurisdiction on (1) miscellaneous information reflecting HMC and KC's alleged targeting of the United States generally; (2) unexplained shipping records that contain obviously irrelevant data; and (3) information allegedly showing that HMC and KC are alter egos of their subsidiaries. The first category is irrelevant to establishing specific personal jurisdiction, and the second and third categories do not

legitimately controvert the evidence HMC and KC submitted with their Motion.  At most, the Subrogation Plaintiffs set forth their "mere hunch" that they "may show that Defendants' self-serving Declarations are not accurate," which is not enough to permit jurisdictional discovery. Mot. for Leave at 16; *Yamashita*, 62 F.4th at 507.

## A. Most of the Subrogation Plaintiffs' "Evidence" Is Unconnected to California and/or the Claims in this Action.

As discussed further in the Motion to Dismiss, the Subrogation Plaintiffs must establish both that (1) Defendants purposefully directed their activities at California or performed some act by which they purposefully availed themselves of the privilege of conducting activities in California; and (2) their claims arise out of or relate to Defendants' activities in California.  *LNS Enters.*, 22 F.4th at 859.

Much of the "evidence" the Subrogation Plaintiffs cite does not demonstrate targeting of California and/or is unconnected to the claims at issue in this action and therefore does not provide even a "colorable basis" for personal jurisdiction.  Both their contention that HMC "spent over $100 million on advertising in digital, print, and national television in the United States last year" and that HMC's "2023 financial report indicates it made retail sales of 269,000 vehicles in Q4 2023 alone" do not show purposeful direction toward or availment of California, as those contentions relate to advertising and sales in the United States generally.  And their contention that KC "sponsors numerous sporting events that take place in or are viewed in California, including Riot Games' League of Legends Championship Series, considered the premier esports league in North America" has nothing to do with their claims in this matter.  Mot. for Leave at 14; *see Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 265 (2017) (for specific jurisdiction, "[w]hat is needed . . . is a connection between the forum and the specific claims at issue").[1]

---

[1] The Declaration of Nathan Dooley in support of Plaintiffs' Motion for Leave for Jurisdictional Discovery ("Dooley Decl."), Dkt. 339-1, also contains other irrelevant

HMC AND KC'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY

1    Accordingly, because the Subrogation Plaintiffs do not assert that any of the

2    above activity was directed at California or is related to their claims in this case, such

3    "evidence" cannot serve as a basis for exercising jurisdiction here and does not

4    support a request for jurisdictional discovery.

5        **B.    The Shipping Records Do Not Contradict HMC and KC's**

6             **Declarations and Do Not Support Jurisdiction.**

7        The Subrogation Plaintiffs also try to establish a "colorable basis" for specific

8    personal jurisdiction by referring to the shipping records they attached to their

9    Opposition to the Motion to Dismiss, which they claim "indicate[] that [KC] and

10   [HMC] make substantial use of California ports, including for the import of vehicles

11   for testing in California."  Mot. for Leave at 14.  According to the Subrogation

12   Plaintiffs, these records "show that, between November 1, 2006 and March 1, 2024,

13   HMC initiated approximately 10,510 shipments to U.S. ports" with "[m]ore than

14   70% of HMC's shipments (7,503) [going] directly to the State of California" and

15   "KC directed approximately 4,868 shipments of vehicles and automobile parts to the

16   State of California" with approximately 77% of those shipments going directly to

17   California.  Opp'n. to Mot. to Dismiss at 13.  Upon analysis, these records do not

18   controvert Defendants' declarations and do not support the Subrogation Plaintiffs'

19   argument.

20       As a threshold matter, the Subrogation Plaintiffs do not explain how the

21   records support specific personal jurisdiction over HMC and KC.  As noted above,

22   to establish specific jurisdiction, there must be "a connection between the forum and

23   the specific claims at issue."  *Bristol-Myers*, 582 U.S. at 265.  The Subrogation

24   Plaintiffs make no attempt to articulate that connection here.  And that connection is

25   _____

26   evidence that is not cited in the Motion for Leave.  It claims that, in 2005, KC
     "unveiled a concept car for its model Soul," which it "touted" "as being a product of
     a collaborative design effort between its Californian and Korean design centers."
27   Dooley Decl. ¶ 8.  And it asserts that KC "stated that it would be providing new cars
     to the U.S. market."  *Id.* ¶ 11.  The Subrogation Plaintiffs do not explain how those
28   statements are relevant to the specific personal jurisdiction analysis.

HMC AND KC'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR
LEAVE FOR JURISDICTIONAL DISCOVERY

not readily apparent, given the prevalence of obviously irrelevant information in the records, including (i) shipments from Hyundai Motor Brasil, Hyundai Motor Shanghai, Hyundai Motor Europe, Kia India, Kia Mexico, and various entities other than HMC and KC, *see, e.g.*, Declaration of Nickie Bonenfant, App. A at 5, 23, 104 & *id.*, App. C at 3, 30; (ii) shipments far predating the relevant time period (which includes Model Year 2011 vehicles and later), *see, e.g.*, *id.*, App. A at 248–77 & *id.*, App C. at 326–74; (iii) shipments containing vehicles with VIN country codes that are clearly intended for non-US markets, *see, e.g.*, *id.*, App. A at 3 & *id.*, App. C at 3; and (iv) shipments containing Jeep Wranglers and other non-Hyundai or non-Kia vehicles, *see, e.g.*, *id.*, App. A at 3, 12.[2]  Given the Subrogation Plaintiffs' failure to explicate the relevance of the records, the Court should disregard them.

Equally importantly, HMC and KC never disputed that they manufacture vehicles in South Korea and sell those vehicles to their subsidiaries, who then import the vehicles in the United States.  Baik Decl. ¶¶ 21–22; Shin Decl. ¶¶ 20–21.  The Subrogation Plaintiffs fail to explain how the records tell a different story.  Under the Subrogation Plaintiffs' theory, all foreign vehicle manufacturers who sell vehicles to subsidiary-distributors who import those vehicles to the United States are subject to specific personal jurisdiction wherever those subsidiary-distributors choose to ship the vehicles.  The case law does not support that theory.

As set forth in the Motion to Dismiss, the Supreme Court and Ninth Circuit have made clear that "[p]lacing 'a product into the stream of commerce'—even if the defendant is aware 'that the stream of commerce may or will sweep the product into the forum state'—'does not convert the mere act of placing the product into the stream of commerce into an act' of purposeful availment." *LNS Enters.*, 22 F.4th at 860 (citations omitted); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (holding state could not exercise specific jurisdiction over foreign

---

[2] The Subrogation Plaintiffs do not cite or explain the relevance of Appendices B or D in the Motion for Leave.

HMC AND KC'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR
LEAVE FOR JURISDICTIONAL DISCOVERY

defendant merely because its product was distributed through an American company responsible for selling product nationwide).   The shipping records show nothing more than that HMC and KC placed vehicles into the stream of commerce in South Korea that were then imported into California, whether for wholesale distribution by HMA and KA, for testing by separate U.S. affiliates, or for some other purpose.

To the extent the Subrogation Plaintiffs suggest that HMC and KC own the vehicles while they are in transit to the United States or direct the vehicle shipments to California, they are wrong.  *See* Opp'n to Mot. to Dismiss at 12; Mot. for Leave at 14.  In reality, for all vehicles that are imported into the United States to be sold to consumers, the vehicles become the inventory of HMA and KA at the time the ship containing the vehicles leaves the port in South Korea.  Declaration of Michael Orange ("Orange Decl.) ¶ 3; Declaration of Robert Kuntze ("Kuntze Decl.") ¶ 3.  Once the vehicles are loaded onto the ship, HMA and KA take liability of the vehicles.  Orange Decl. ¶ 4; Kuntze Decl. ¶ 4.  And HMA and KA are responsible for submitting insurance claims for any vehicles damaged while in transit.  Orange Decl. ¶ 5; Kuntze Decl. ¶ 5.  That is because HMA and KA import vehicles from HMC and KC FOB Origin from South Korea.  Orange Decl. ¶ 6; Kuntze Decl. ¶ 6.  FOB (free on board) Origin is a shipment term that means the buyer accepts the title of the goods at the shipment point and assumes all risk once the seller ships the product.  Orange Decl. ¶ 7; Kuntze Decl. ¶ 7; *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1276 (9th Cir. 2023) ("[W]hen a delivery term is F.O.B., the goods are delivered at a designated location, usually a transportation depot, at which legal title and thus the risk of loss passes from seller to buyer.") (citations and internal quotation marks omitted).  The buyer (here, HMA and KA) is responsible if the goods are damaged or lost while in transit.  Orange Decl. ¶ 7; Kuntze Decl. ¶ 7.

Further, HMA and KA continue to have responsibility for the vehicles once they reach the United States.  HMA and KA are responsible for all necessary import documentation and customs clearance procedures once the vehicles arrive at a

9

United States port.  Orange Decl. ¶ 8; Declaration of Jason Kwon ¶ 3.  HMA and KA arrange port vehicle inspections, processing, unloading, and transportation logistics through their partner, Glovis America.  Orange Decl. ¶ 9; Kuntze Decl. ¶ 8.  HMA and KA then distribute vehicles to dealers throughout the United States, including in California.  Baik Decl. ¶ 22; Shin Decl. ¶ 21.  HMC and KC do not control HMA or KA's distribution of the vehicles and do not direct HMA or KA to sell them to any particular dealer or state.  Orange Decl. ¶¶ 10–11; Kuntze Decl. ¶¶ 9–10.

The same is true with respect to Hyundai and Kia vehicles that HMC's subsidiary, Hyundai America Technical Center, Inc. ("HATCI"), imports for test purposes.  Those vehicles are also imported FOB Origin from South Korea, and therefore HATCI takes inventory and liability of the vehicles at the time the vehicles are loaded onto the ship in South Korea.  Declaration of Joselyn Smith ¶¶ 3–7.  And HATCI continues to have responsibility for the vehicles once they reach the United States.  *Id*. ¶¶ 8–10.

As such, although the Subrogation Plaintiffs try to muddy the waters by introducing unexplained shipping records, to the extent those records are even relevant, they are fully consistent with the declarations HMC and KC submitted with their Motion to Dismiss, as they show nothing more than that HMC and KC sold vehicles in South Korea that were imported by other entities into the United States. The shipping records, thus, do not support even a colorable basis for personal jurisdiction.  *See Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, No. 19-7831, 2019 WL 8064196, at *7–8 (C.D. Cal. Dec. 5, 2019) (holding that plaintiff "failed to make a colorable showing that jurisdiction exists such that it would be appropriate to order jurisdictional discovery" where plaintiff did not contest that the foreign entity defendant "deliver[ed] its goods to [California] 'FOB' Shanghai, or that the [defendant] company passes its ownership of [the products] off as soon as it delivers them to a Shanghai warehouse"); *Tangle, Inc. v. Buffalo Games, LLC*, No.

10

1   22-7024, 2023 WL 5672178, at *4 (N.D. Cal. Sept. 1, 2023) (finding shipments to

2   California did not constitute express aiming where declaration averred that

3   distributor "assumed ownership in the goods" in China).

4       **C.**    **The Subrogation Plaintiffs Cannot Seek Jurisdictional Discovery**

5               **Based on an Alter Ego Theory.**

6         The Subrogation Plaintiffs also claim to have "evidence" to support their

7   contention that HMC and KC "may in fact be the alter egos of their California

8   subsidiaries," and seek to conduct discovery to further this theory.  Mot. for Leave

9   at 15.  This argument is unavailing.

10         "The existence of a parent-subsidiary relationship is insufficient, on its own,

11   to justify imputing one entity's contacts with a forum state to another for the purpose

12   of establishing personal jurisdiction" because "[a] basic tenet of American corporate

13   law is that the corporation and its shareholders are distinct entities."  *Ranza v. Nike,*

14   *Inc.*, 793 F.3d 1059, 1070 (9th Cir. 2015) (citation omitted).  Thus, the Subrogation

15   Plaintiffs are wrong in contending, without support, that "[t]he mere fact [HMC and

16   KC] own subsidiaries incorporated in California that sell their vehicles here is alone

17   sufficient to meet the standard requiring a mere showing of 'some evidence'" to seek

18   jurisdictional discovery.  Mot. for Leave at 15.

19         To have personal jurisdiction based on an alter ego theory, the "foreign entity"

20   must "not really" be "separate from its domestic affiliate."  *Williams v. Yamaha*

21   *Motor Co.*, 851 F.3d 1015, 1021 (9th Cir. 2017) (citation omitted).  "To satisfy this

22   test, 'a plaintiff must make out a prima facie case (1) that there is such unity of

23   interest and ownership that the separate personalities of the two entities no longer

24   exist and (2) that failure to disregard their separate identities would result in fraud

25   or injustice.'"  *Id*. (citation omitted).

26         "The 'unity of interest and ownership' prong of this test requires 'a showing

27   that the parent controls the subsidiary to such a degree as to render the latter the mere

28   instrumentality of the former.'"  *Ranza*, 793 F.3d at 1073 (citations omitted).  "This

test envisions pervasive control over the subsidiary, such as when a parent corporation 'dictates every facet of the subsidiary's business—from broad policy decisions to routine matters of day-to-day operation.'"  *Id*. (citations omitted). "Total ownership and shared management personnel are alone insufficient to establish the requisite level of control."  *Id*.  "[A] plaintiff does not meet the unity of interest and ownership prong when the evidence shows only an active parent corporation involved directly in decision-making about its subsidiaries' holdings, but each entity observe[s] all of the corporate formalities necessary to maintain corporate separateness."  *Id*. (citation and internal quotation marks omitted).

The Subrogation Plaintiffs have no basis to contend that HMC and KC dictate every facet of HMA's, KA's, or HATCI's business or that they do not observe corporate formalities.  As set forth in the Baik and Shin Declarations, HMC and KC are separate legal entities from HMA, KA, and HATCI; HMC, KC, HMA,  KA, and HATCI are adequately capitalized entities; HMC, KC, HMA, KA, and HATCI each observe corporate formalities, including maintaining independent bank accounts, maintaining separate corporate records, maintaining separate financial records, and not comingling assets; HMC and KC do not pay HMA's, KA's, or HATCI's taxes; HMC and KC are not responsible for owning or leasing HMA's,  KA's, or HATCI's facilities in the United States; HMA, KA, and HATCI make their own decisions regarding their operations; and HMA, KA, and HATCI operate and contract in their own name.  Baik Decl. ¶¶ 14–20; Shin Decl. ¶¶ 13–19.

In support of their "alter ego" assertion, the Subrogation Plaintiffs rely on three types of "evidence": (1) a limited number of overlapping board members and executives between the Korean entities and their American subsidiaries; (2) the claim that "[u]pon information and belief, Kia and Hyundai officials regularly travel to California on business to direct their subsidiaries' business decisions, including decisions related to their decision to sell defective Vehicles"; and (3) KC's purported "involvement in providing benefits" for KA employees."  Mot. for Leave at 14;

12

Dooley Decl. ¶¶ 5–6, 10, 12.[3]   They characterize this "evidence" as showing (a) "sharing of employees, executives and board members," (b) "unquestioned complete control over the subsidiary," and (c) "the use of subsidiary office space for parent employees." Mot. for Leave at 15. But the Baik and Shin Declarations defeat any allegation of "unquestioned complete control over the subsidiary." And the fact that "[s]ome employees and management personnel move between the entities . . . does not undermine the entities' formal separation." *Ranza*, 793 F.3d at 1074. Further, with respect to the second type of "evidence," as noted above, "bare allegations are trumped by sworn statements to the contrary." *Yamashita*, 62 F.4th at 508.

Courts have consistently denied requests for jurisdictional discovery where plaintiffs have not provided a sufficient basis to support an alter ego theory. *See, e.g., Reynolds v. Binance Holdings Ltd*., 481 F. Supp. 3d 997, 1010 (N.D. Cal. 2020) (denying request for jurisdictional discovery where plaintiff had not "offer[ed] any details supporting the assertion that discovery will establish facts supporting this Court's jurisdiction over Binance under Plaintiff's alter-ego theory"); *Barantsevich*, 954 F. Supp. 2d at 997 (denying request for jurisdictional discovery into alter ego theory because the defendant's evidence "concerning the legal separateness of the entities [was] uncontroverted," and the plaintiff had "adduced no evidence that [the defendant] controls the day-to-day operations of its subsidiaries"); *Martinez*, 2011 WL 1466684, at *6 (denying request for jurisdictional discovery into alter ego theory even though the evidence showed that the parent and subsidiary were "headquartered in the same place" and "share[d] one common director" because that evidence did "not indicate that the two corporations ha[d] indistinct personalities"). As in those cases, the Subrogation Plaintiffs have provided no basis to challenge the corporate

---

[3] The Dooley Declaration also makes statements about testing and design facilities for Hyundai- and Kia-branded vehicles, but the Motion for Leave does not cite those statements or explain why they are relevant to the personal jurisdiction analysis. *See* Dooley Decl. ¶¶ 7, 9, 12, 13.

HMC AND KC'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY

separateness of the Korean and American entities, and they are therefore not entitled to jurisdictional discovery to support their baseless alter ego allegations.

Moreover, even if Subrogation Plaintiffs could establish "there is such unity of interest and ownership that the separate personalities of the . . . entities no longer exist" (which they cannot), they have set forth no evidence showing that such "failure to disregard their separate identities would result in fraud or injustice." *Williams*, 851 F.3d at 1021 (citation omitted). Indeed, they cannot make such a showing because the American entities are fully solvent, as reflected in the public audited financial statements the Subrogation Plaintiffs submit with the Motion for Leave. *See* 339-2 at 165. No amount of discovery can change that critical fact. The Subrogation Plaintiffs' failure to establish the necessary fraud and injustice prevents them from ever being able to premise personal jurisdiction on an alter ego theory.

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd*., 328 F.3d 1122 (9th Cir. 2003), on which the Subrogation Plaintiffs rely (Mot. for Leave at 16), does not support granting jurisdictional discovery here. There, the Ninth Circuit held that the court abused its discretion in denying jurisdictional discovery on an alter ego theory because the plaintiff had submitted evidence suggesting that the parent company may be exercising "control over day-to-day activities" of the subsidiary. 328 F.3d at 1135. The Subrogation Plaintiffs have not made such a showing here.

*Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*, No. 23-55350, 2024 WL 838707 (9th Cir. Feb. 28, 2024), an unpublished case on which the Subrogation Plaintiffs rely (Mot. for Leave at 16), is also inapposite because the Ninth Circuit directed the district court to allow jurisdictional discovery only upon finding that "[f]urther discovery on [the alter ego] issue might well demonstrate facts sufficient to constitute a basis for jurisdiction" over the defendant. 2024 WL 838707, at *2. Given the undisputed corporate separateness of the Korean and American entities and the lack of fraud or injustice that would result from recognizing that corporate separateness, and the Subrogation Plaintiffs' failure to offer any evidence calling

1  that corporate separateness into doubt or demonstrating fraud or injustice, this Court
2  would have no basis to reach a similar conclusion.

3      In the same paragraph in which the Subrogation Plaintiffs cite *Harris Rutsky*
4  and *Youngevity* in support of their alter ego assertion, they also cite *Zakikhani v.*
5  *Hyundai Motor Co*., No. 20-1584, 2021 WL 4805454 (C.D. Cal. June 28, 2021).
6  Mot. for Leave at 16.  But they make no attempt to explain why *Zakihkani* is relevant
7  to an alter ego analysis (or relevant to the personal jurisdiction analysis here at all).
8  Because it is not.  There, the court found that allegations that HMC and KC "were
9  intimately involved with the decisions to track vehicle malfunctions, determine the
10 cause of the problem, and ultimately to disclose that information to NHTSA and
11 initiate [a] recall effort[]"—which were uncontroverted by HMC and KC—were
12 sufficient to establish purposeful direction.  2021 WL 4805454, at *4.  The
13 Subrogation Plaintiffs do not attempt to base jurisdiction on anything even remotely
14 similar here.

15      In sum, the Subrogation Plaintiffs do not advance a "colorable basis" to seek
16 jurisdictional discovery as to an alter ego theory.

17  **D.    The Subrogation Plaintiffs Cannot Seek Jurisdictional Discovery**
18  **Simply to Test the Accuracy of HMC and KC's Declarations.**

19      Apparently aware that they have provided no evidence demonstrating that
20 "pertinent facts bearing on the question of jurisdiction are controverted" or that "a
21 more satisfactory showing of the facts is necessary," the Subrogation Plaintiffs resort
22 to arguing that they should be permitted jurisdictional discovery because it "may
23 show that Defendants' self-serving Declarations are not accurate."  Mot. for Leave
24 at 16; *LNS Enters.*, 22 F.4th at 864.  That is not a legitimate basis for seeking
25 jurisdictional discovery.

26      As noted above, the Ninth Circuit has held that "a mere hunch that discovery
27 might yield jurisdictionally relevant facts" is an "insufficient reason[] for a court to
28 grant jurisdictional discovery."  *Yamashita*, 62 F.4th at 507 (citation omitted); *see*

*also Getz v. Boeing Co*., 654 F.3d 852, 860 (9th Cir. 2011) (affirming denial of jurisdictional discovery where plaintiffs' allegations of jurisdictional contacts were "purely speculative," and plaintiffs failed to identify any "specific facts, transactions, or conduct" that might support the exercise of personal jurisdiction); *Butcher's Union Local No. 498 v. SDC Inv., Inc*., 788 F.2d 535, 540 (9th Cir. 1986) (affirming denial of request for jurisdictional discovery based only on plaintiffs' statements that "they 'believe' that discovery will enable them to demonstrate sufficient California business contacts to establish the court's personal jurisdiction").

For that reason, courts have resoundingly rejected requests based on similarly speculative arguments. *See, e.g.*, *Yagman v. Kelly*, No. 17-6022, 2018 WL 2138461, at *9 (C.D. Cal. Mar. 20, 2018) (denying plaintiff's request for jurisdictional discovery to challenge declarant's alleged "conclusory, self-serving contentions as to jurisdiction," reasoning that "[p]laintiff's speculation and his subjective mistrust of Defendants and Mr. Lee is not a basis for permitting jurisdictional discovery"); *Signature Fin., LLC v. McClung*, No. 16-3621, 2019 WL 4418127, at *4 (C.D. Cal. June 3, 2019) (denying request for jurisdictional discovery to "test the veracity of [the declarant's] statements that JMOS has no contacts with California"); *Infinite Peripherals, Inc. v. Custom S.P.A.*, No. 19-1983, 2020 WL 5045315, at *8 (C.D. Cal. Apr. 10, 2020) (denying request for jurisdictional discovery where plaintiff argued that defendant's declarations were "'self-serving declarations' and therefore insufficient"); *Kellytoy Worldwide, Inc.*, 2019 WL 8064196, at *8 ("[T]he Court declines to allow Plaintiff to search far and wide for 'other efforts . . . to sell its Infringing Plush in California,' especially in light of two declarations that no such efforts exist.").

Accordingly, the Subrogation Plaintiffs should not be permitted to seek discovery on the basis that it "may show" that Defendants' declarations "are not accurate." Mot. for Leave at 16.

## II.  In the Event the Court Orders Jurisdictional Discovery, It Should Be Significantly Limited.

The Subrogation Plaintiffs seek "written discovery" and "corporate deposition testimony" on *thirty-one* topics they claim are "related directly to personal jurisdiction." Mot. for Leave at 6. These broad categories of merits discovery highlight that the Subrogation Plaintiffs' request for jurisdictional discovery is "little more than a fishing expedition," which further supports denying the motion in its entirety. *Yamashita*, 62 F.4th at 508. For example, categories 11, 13–15, 17, 22, and 25—which seek documents and information regarding decision-making, design, and testing—constitute a transparent attempt to obtain merits discovery despite HMC and KC's challenge of personal jurisdiction.

But in the event the Court permits jurisdictional discovery, the categories the Subrogation Plaintiffs seek are far too broad and should be significantly limited to pertain to the specific bases on which the Subrogation Plaintiffs have supported their claims for specific personal jurisdiction. *See, e.g., Petzilla, Inc. v. Anser Innovation LLC*, No. 14-1354, 2014 WL 12705567, at *2 (N.D. Cal. May 20, 2014) (limiting jurisdictional discovery to defendant's "relationships with distributors and retailers—in particular, whether [defendant] contracted with an exclusive distributor or retailer to sell the patented product in California and the agreement was analogous to an exclusive patent license"); *Greystone Hous. Found., Inc. v. Fantasy Holdings, LLC*, No. 16-300, 2017 WL 11421364, at *2 (S.D. Cal. Jan. 12, 2017) (requiring that jurisdictional discovery be "limited in scope to aiding the inquiry into whether Defendants have purposefully availed themselves of the State of California through their e-commerce and/or Defendants' contacts related to the contract in this case").[4]

---

[4] *Macias v. LG Chem Ltd.*, No. 20-2416, 2021 WL 780478 (C.D. Cal. Feb. 28, 2021), does not support the Subrogation Plaintiffs' broad request for jurisdictional discovery because the court allowed only limited jurisdictional discovery as to "the extent and nature of LGCAI's advertising and marketing" of the specific product at issue "to California retailers." Mot. for Leave at 16.

1

## CONCLUSION

2          For the foregoing reasons, HMC and KC respectfully request that the Court

3    deny the Subrogation Plaintiffs' motion for leave to conduct jurisdictional discovery.

4

5

6    Dated:  April 8, 2024            JENNER & BLOCK LLP

7

8                             */s/ Peter J. Brennan*
                         Kate T. Spelman

9                             Alice S. Kim
                         Madeline P. Skitzki

10                            Jenna L. Conwisar
                         JENNER & BLOCK LLP

11                            515 South Flower Street, Suite 3300
                         Los Angeles, CA  90071-2246

12                            Telephone:  +1 213 239 5100
                         Facsimile:   +1 213 239 5199

13                            KSpelman@jenner.com
                         AKim@jenner.com

14                            MSkitzki@jenner.com
                         JConwisar@jenner.com

15                            Peter J. Brennan (*pro hac vice*)

16                            Michael T. Brody (*pro hac vice*)
                         JENNER & BLOCK LLP

17                            353 North Clark Street
                         Chicago, IL  60654-3456

18                            Telephone:  +1 312 222 9350
                         Facsimile:   +1 312 527 0484

19                            PBrennan@jenner.com
                         MBrody@jenner.com

20                            *Attorneys for Defendants*

21

22

23

24

25

26

27

28

HMC AND KC'S OPPOSITION TO THE SUBROGATION PLAINTIFFS' MOTION FOR
LEAVE FOR JURISDICTIONAL DISCOVERY

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

3

4

The undersigned counsel of record for Defendants Hyundai Motor Company and Kia Corporation certify this brief contains 5,524 words, which complies with the word limit of L.R. 11-6.1.

5

6

Dated:  April 8, 2024

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*/s/ Peter J. Brennan*
Peter J. Brennan