QUINN EMANUEL URQUHART & SULLIVAN LLP
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 8:22-ML-03052-JVS-(KESx) |
| | The Honorable James V. Selna |
| | **DEFENDANTS' NOTICE OF AND MOTION TO DISMISS PLAINTIFF CITY OF LORAIN, OHIO'S COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates to: | |
| *City of Lorain, Ohio v. Hyundai Motor America and Kia America, Inc.*, Case No. 8:23-cv-02083 | Hearing Date:  July 15, 2024 Hearing Time: 1:30 pm |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on July 15, 2024, at 1:30 pm, or as soon hereafter as counsel may be heard, in the courtroom of the Honorable James V. Selna (Courtroom 10C) of the above-entitled Court, located at 411 West 4th Street, Santa Ana, CA 92710, Defendants Kia America, Inc. ("KA"), and Hyundai Motor America ("HMA") (collectively, "Defendants") will and hereby do move the above-entitled Court for an order dismissing Plaintiff City of Lorain, Ohio's Complaint[1] pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint fails to state any claim upon which relief may be granted.

Defendants' Motion is based on this Notice, the Memorandum of Points and Authorities filed herewith, Defendants' Request for Judicial Notice, any additional briefing on the Motion (including Defendants' reply brief), the files and records of this case and the related cases centralized in this Multidistrict Litigation, and such argument as is presented to the Court at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on April 4, 2024.

DATED:  April 12, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ Steven G. Madison*

---

[1]  Compl., *City of Lorain, Ohio v. Hyundai Motor America et al.*, No. 8:23-cv-02083 (C.D. Cal. Nov. 6, 2023), Dkt. 1.

Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendants Hyundai Motor
America and Kia America, Inc.*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ....................................................................................2

    A.    No U.S. Federal Law Or Regulation Requires Immobilizers ................2

    B.    Defendants' Vehicles Comply With Federal Law And NHTSA Has Found No Safety Defect Requiring A Recall ................................3

    C.    Social Media And Intervening Criminals Caused An Unprecedented Increase In Theft ...............................................3

LEGAL STANDARD ..............................................................................4

ARGUMENT ........................................................................................4

I.     FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS, WHICH SEEK TO IMPOSE A DUTY TO INSTALL ENGINE IMMOBILIZERS ..............4

    A.    State Tort Claims That Frustrate Significant Objectives Of Federal Law Are Preempted ..............................................................4

    B.    Dictating A Specific Anti-Theft Technology Would Frustrate The Objective Of FMVSS 114's Flexibility ....................................5

    C.    Plaintiff's Claims Are Preempted Because They Rely On Defendants Having A Duty To Install Immobilizers .........................7

II.    THE OPLA SUBSUMES PLAINTIFF'S PUBLIC NUISANCE CLAIMS .........................................................................................10

III.   PLAINTIFF'S CLAIMS ALSO FAIL DUE TO SUPERSEDING THIRD-PARTY CRIMINAL ACTS ...............................................11

    A.    Under Ohio Law, Post-Theft Criminal Conduct Is Unforeseeable As A Matter Of Law ......................................................11

    B.    Plaintiff's Claims Must Be Dismissed Because They Are Based On Post-Theft Conduct ...................................................14

IV.   DEFENDANTS OWE NO DUTY TO PROTECT PLAINTIFF FROM THIRD PARTIES .....................................................................15

CONCLUSION ...................................................................................17

1

## **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4

*Allen Freight Lines, Inc. v. Consol. Rail Corp.*,
5        595 N.E.2d 855 (Ohio 1992)......................................................................15, 17

6

*Am. Winds Flight Acad. v. Garmin Int'l*,
7        2010 WL 3783136 (N.D. Ohio Sept. 17, 2010)................................................11

8

*Ashcroft v. Iqbal*,
9        556 U.S. 662 (2009)...............................................................................4, 8, 16

10

*Bell Atl. Corp. v. Twombly*,
11        550 U.S. 544 (2007)....................................................................................4, 8

12

*Browning v. Am. Honda Motor Co.*,
          549 F. Supp. 3d 996 (N.D. Cal. 2021)...............................................................9
13

14

*Bugaj v. Nationwide Ins.*,
          2009 WL 2678938 (Ohio Ct. App. Aug. 28, 2009) ..........................................13
15

*Carrel v. Allied Prods. Corp.*,
16        677 N.E.2d 795 (Ohio 1997)..........................................................................10

17

*Cascone v. Herb Kay Co.*,
18        451 N.E.2d 815 (Ohio 1983)..........................................................................12

19

*City of Cincinnati v. Beretta U.S.A. Corp.*,
20        768 N.E.2d 1136 (Ohio 2002).........................................................................11

21

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.*,
22        621 F. Supp. 2d 513 (N.D. Ohio 2009), *aff'd sub nom. City of
          Cleveland v. Ameriquest Mort. Sec., Inc.*, 615 F.3d 496 (6th Cir.
23        2010) ...............................................................................................15, 17

24

*Davis v. Widman*,
25        922 N.E.2d 272 (Ohio Ct. App. 2009)............................................................15, 17

26

*Est. of Ciotto v. Hinkle*,
27        145 N.E.3d 1013 (Ohio Ct. App. 2019)............................................................15, 16

28

*Ests. of Morgan v. Fairfield Fam. Counseling Ctr.*,
673 N.E.2d 1311 (Ohio 1997)..........................................................................16

*Farrales v. Ford Motor Co.*,
2022 WL 1239347 (N.D. Cal. Apr. 27, 2022) ...................................................9

*Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*,
543 N.E.2d 769 (Ohio 1989)...........................................................................16

*Feichtner v. Ohio Dep't of Transp.*,
683 N.E.2d 112 (Ohio Ct. App. 1995).............................................................16

*Fox v. Kia Am., Inc.*,
2024 WL 1328730 (N.D. Ohio Mar. 28, 2024) .....................................2, 12, 15

*Gabbard v. Madison Loc. Sch. Dist. Bd. of Educ.*,
179 N.E.3d 1169 (Ohio 2021) .........................................................................11

*Gade v. Nat. Solid Wastes Mgmt. Assn.*,
505 U.S. 88 (1992)............................................................................................4

*Geier v. Am. Honda Motor Co.*,
529 U.S. 861 (2000)......................................................................................4, 7

*Inskeep v. Columbus Zoological Park Assn.*,
207 N.E.3d 876 (Ohio Ct. App. 2023).............................................................16

*Jacobson v. Kaforey*,
75 N.E.3d 203 (Ohio 2016)..............................................................................11

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018).............................................................................4

*Lagowski v. Shelly & Sands, Inc.*,
38 N.E.3d 456 (Ohio Ct. App. 2015)................................................................13

*McDougall v. Smith*,
944 N.E.2d 1218 (Ohio Ct. App. 2010)............................................................12

*Miles v. Cedar-Lee Chrysler-Plymouth, Inc.*,
1978 WL 218347 (Ohio Ct. App. Apr. 27, 1978) .............................................13

*In re Nat'l Prescription Opiate Litig.*,
2018 WL 6628898 (N.D. Ohio Dec. 19, 2018).................................................16

*In re Nat'l Prescription Opiate Litig.*,
　　82 F.4th 455 (6th Cir. 2023)...................................................................10

*Pelayo v. Hyundai Motor Am., Inc.*,
　　2021 WL 1808628 (C.D. Cal. May 5, 2021) ..........................................9

*Pendrey v. Barnes*,
　　479 N.E.2d 283 (Ohio 1985)..................................................................13

*State ex rel. Prade v. Ninth Dist. Ct. of Appeals*,
　　87 N.E.3d 1239 (Ohio 2017)..................................................................11

*Priester v. Cromer*,
　　736 S.E.2d 249 (S.C. 2012)................................................................5, 7

*Raynaldo v. Am. Honda Motor Co.*,
　　2022 WL 4358096 (N.D. Cal. Sept. 20, 2022) ...................................8, 9

*Ross v. Nutt*,
　　203 N.E.2d 118 (Ohio 1964)............................................................11, 13

*Soliman v. Daimler AG*,
　　2011 WL 4594313 (E.D.N.Y. Sept. 30, 2011) ....................................5, 7

*Stiner v. Amazon.com, Inc.*,
　　164 N.E.3d 394 (Ohio 2020)..................................................................10

*Tilton v. Austintown Motors, Inc.*,
　　1997 WL 816526 (Ohio Ct. App. Dec. 30, 1997).................................13

*Williams v. Bos. Sci. Corp.*,
　　2023 WL 9596983 (N.D. Ohio Dec. 11, 2023).......................................9

*Williamson v. Mazda Motor of Am., Inc.*,
　　562 U.S. 323 (2011)........................................................................5, 7, 9

### Statutes

49 U.S.C. Chapter 301 ....................................................................................2

49 U.S.C. Chapter 331 ....................................................................................2

49 U.S.C. § 105 ...............................................................................................2

Ohio Rev. Code § 2307.71(A)(13)...........................................................10, 11

Ohio Rev. Code § 2307.71(B)......................................................................10

## Other Authorities

49 C.F.R. § 571.114............................................................................2, 6

33 Fed. Reg. 6471 (Apr. 27, 1968).........................................................3, 6

55 Fed. Reg. 21868 (May 30, 1990).............................................................6

56 Fed. Reg. 12464 (Mar. 26, 1991) ............................................................7

71 Fed. Reg. 17752 (Apr. 7, 2006)..........................................................3, 7

## **PRELIMINARY STATEMENT**

Plaintiff City of Lorain, Ohio ("Plaintiff") alleges Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") (collectively, "Defendants") are liable under Ohio state law for post-theft conduct of third-party car thieves spurred on by social media videos promoting such performative criminal acts.  In three causes of action, Plaintiff's Complaint alleges that Defendants, *by failing to install immobilizers*, negligently designed vehicles that "fell below minimum industry-standard security measures" and created a "public nuisance."

*First*, all of Plaintiff's claims are preempted by federal law because Plaintiff explicitly seeks to impose state tort liability for failing to install immobilizers, which is contrary to the deliberate flexibility expressly prescribed by the U.S. Department of Transportation's National Highway Traffic Safety Administration's ("NHTSA") decision not to require immobilizers (or any other specific theft protection devices)— as this Court held when dismissing the City of Chicago's similar complaint. Plaintiff's claims are not saved by its token references to general "anti-theft" technology because, in context, those references still refer to immobilizers, and because such vague allegations fail to meet federal pleading standards.

*Second*, the Ohio Product Liability Act ("OPLA") subsumes and forecloses Plaintiff's causes of action for "common law absolute public nuisance" and "common law qualified public nuisance."   Plaintiff's claims track the OPLA's plain and unambiguous language.

*Third*, all three of Plaintiff's claims fail because they rely on the flawed conclusion that Defendants' alleged conduct proximately caused Plaintiff's injuries. Where, as here, the independent, reckless, and criminal actions of third parties sever the causal link between Defendants' alleged negligence and the Plaintiff's injuries, Defendants cannot be held liable.  The Northern District of Ohio recently relied on this black-letter law when it dismissed a design defect claim against Kia America (a defendant in this case) by a plaintiff who was injured after a stolen Kia, allegedly

lacking an immobilizer, collided with her vehicle. *Fox v. Kia Am., Inc.*, 2024 WL 1328730, at \*13–14 (N.D. Ohio Mar. 28, 2024) (citing to an "unbroken line of authority" to hold that, "as a matter of law, the theft and subsequent reckless operation of the [vehicle] involved in Plaintiff's accident constitute an intervening, superseding cause that breaks the chain of causation with respect to Defendant Kia").

*Lastly*, all three of Plaintiff's claims—or, at a minimum, its negligence and qualified public nuisance claims—fail because Ohio law does not impose a duty on Defendants to protect against third-party conduct in the absence of a special relationship, which Plaintiff has not and cannot allege.

For these reasons, and as further explained below, Plaintiff's Complaint should be dismissed without leave to amend.

## BACKGROUND

### A.     No U.S. Federal Law Or Regulation Requires Immobilizers

NHTSA is exclusively vested with the authority to regulate automobile safety. *See* 49 U.S.C. § 105.  Federal law, including the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. Chapter 301, and Motor Vehicle Theft Law Enforcement Act, 49 U.S.C. Chapter 331, and regulations promulgated thereunder by NHTSA, govern vehicle safety and anti-theft performance standards. *See id.* § 105(c).

In 1968, NHTSA promulgated Federal Motor Vehicle Safety Standard ("FMVSS") 114, imposing two anti-theft performance requirements.  49 C.F.R. § 571.114, S1, S2, & S5.1.  This standard does not require vehicles to be 100 percent impenetrable to thieves.  *See id.*

Neither FMVSS 114 nor any federal law or regulation has ever mandated installation of immobilizers.  *See* 49 C.F.R. § 571.114.  Rather, NHTSA seeks to provide automobile manufacturers with a choice in the anti-theft technology they adopt.  When FMVSS 114 was enacted, NHTSA rejected requests to prescribe "specific theft protection devices," because "it would be unwise to establish a standard in terms so restrictive as to discourage technological innovation in the field of theft

inhibition." 33 Fed. Reg. 6471, 6472 (Apr. 27, 1968). As such, "the standard has been framed to permit as many specific devices as possible to meet its requirements." *Id.*; *see also* 71 Fed. Reg. 17752, 17752–53 (Apr. 7, 2006).

**B.   Defendants' Vehicles Comply With Federal Law And NHTSA Has Found No Safety Defect Requiring A Recall**

On April 20, 2023, 18 state Attorneys General wrote to NHTSA (the "State AGs' Recall Request") asking the agency to:

> use its authority to institute a recall of unsafe Hyundai and Kia vehicles manufactured between 2011 and 2022 whose easily-bypassed ignition switches and lack of engine immobilizers make them particularly vulnerable to theft.

RJN Ex. 1 at 1 (cited at Compl. ¶¶ 88, 91, 93). Not surprisingly, Plaintiff fails to mention NHTSA's response, in which the agency unequivocally rejected the State AGs' Recall Request and their contention that the lack of immobilizers in Defendants' vehicles violates FMVSS:

> At this time, NHTSA has not determined that this issue constitutes either a safety defect or noncompliance requiring a recall … FMVSS No. 114, does not require an engine immobilizer.

RJN Ex. 2 at 2. NHTSA added, "[h]ere, the safety risk arises from unsafe use of a motor vehicle by an unauthorized person after taking significant destructive actions to parts of the vehicle." *Id.*

**C.   Social Media And Intervening Criminals Caused An Unprecedented Increase In Theft**

The Complaint includes no allegations that, *before* late 2020, either the general public or Defendants were aware of the multi-step process required to steal Defendants' vehicles (a procedure the Kia Boyz promoted on social media, *see* RJN Ex. 3). Indeed, according to Plaintiff's allegations, the "unprecedented" increase in thefts began in Lorain in 2023—over a decade after some vehicles were manufactured and sold. Compl. ¶¶ 100–01. Defendants did not injure Plaintiff; Plaintiff's purported damages are the result of an alleged theft epidemic that has been spurred on by a social

media fad in which thieves "challenge[] teens to steal a car off the street" in a "coordinated effort."  *See* RJN Ex. 4; *see also* Compl. § VI.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks omitted).  Rather, the plaintiff must "allege more by way of factual content to nudge his claim" of unlawful action "across the line from conceivable to plausible."  *Id.* at 683 (cleaned up).

In ruling on a motion to dismiss, a court may consider: (1) all material within the pleadings; (2) documents incorporated into the complaint by reference; and (3) matters of which a court may take judicial notice.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENT

## I. FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS, WHICH SEEK TO IMPOSE A DUTY TO INSTALL ENGINE IMMOBILIZERS

### A. State Tort Claims That Frustrate Significant Objectives Of Federal Law Are Preempted

Federal law preempts state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat. Solid Wastes Mgmt. Assn.*, 505 U.S. 88, 98 (1992).  That includes state tort rules that "impose legal duties" in "conflict directly with federal regulatory mandates."  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 871, 881–82 (2000) (FMVSS provision allowing manufacturers to select from a variety of passive restraints preempted a state tort suit premised on a manufacturer's failure to install driver's side airbags because the federal standard imposed flexible performance requirements, rather than mandating a particular type of passive restraint, and a state

tort theory mandating one specific restraint thus would stand "'as an obstacle to the accomplishment and execution of' the important … federal objectives" of the standard).  Federal regulations carry out statutory commands, and so preempt any tort claim that would frustrate a "significant objective of [a] federal regulation." *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011) (federal regulation giving manufacturers options for compliance preempts state rules restricting those options when, as in *Geier*, flexibility was a "significant objective" of the regulation).

For example, a state tort rule requiring auto manufacturers to use only laminated glass was preempted by FMVSS 205, which allowed for use of **either** laminated **or** tempered glass.  *Priester v. Cromer*, 736 S.E.2d 249, 260 (S.C. 2012).  Federal law likewise preempted a state-law tort duty to anchor seatbelts to automobile frames, because federal regulations recognize that giving manufacturers options would "encourage the correct use of safety belts and [] increase the overall safety belt usage rate."  *Soliman v. Daimler AG*, 2011 WL 4594313, at *5 (E.D.N.Y. Sept. 30, 2011).

## B.    Dictating A Specific Anti-Theft Technology Would Frustrate The Objective Of FMVSS 114's Flexibility

Plaintiff does not allege that Defendants failed to comply with FMVSS 114.  Nor can it given NHTSA's explicit statement in its rejection of the State AGs' Recall Request that "FMVSS No. 114 [] does not require an engine immobilizer."  *See supra* Background B; RJN Ex. 2, at 2.  Unable to assert non-compliance with FMVSS 114's flexible mandate, Plaintiff attempts to use state tort law to impose a rigid duty to use immobilizers.  *See* Compl. ¶ 139 ("Defendants had a duty … to exercise care to assure that the vehicles were safe and equipped with industry-standard anti-theft measures"), ¶ 96 ("Defendants could have, and should have, initially included a fob-integrated engine immobilizer, consistent with the industry standard."); *see also infra* Section I.C.  Plaintiff's attempt runs headlong into *Geier*, *Priester*, and *Soliman*.

Here, as in those cases, flexibility is a significant objective of NHTSA's regulation. FMVSS 114 does not prescribe a particular anti-theft technology, but instead mandates that a vehicle's starting system prevent (1) "normal activation" of the engine and (2) "steering, or forward self-mobility" when the key is removed. *See* 49 C.F.R. § 571.114 S5.1.1. *Any* technology meeting these performance requirements satisfies FMVSS 114. NHTSA's Test Procedures for FMVSS 114, which the agency uses to verify compliance, underscore the standard's flexibility. By testing compliance through reference to objective criteria, such as whether the car engine starts or steering wheel can rotate when the key is removed, the Test Procedures contemplate that a range of technologies may satisfy FMVSS 114. RJN Ex. 5, at 4, 16.

NHTSA's decision to let manufacturers select among different theft-prevention technologies is not merely an afterthought, but a significant regulatory objective. For decades, NHTSA's position has been that a flexible performance standard best protects against vehicle theft. Prior to enacting FMVSS 114, NHTSA received "many" requests to prescribe "specific theft protection devices," including brake locks and "so-called 'pop-out' keys which automatically eject from the locking system." 33 Fed. Reg. 6471, 6472 (Apr. 27, 1968). NHTSA declined to mandate those, or any, technologies because "it would be unwise to establish a standard in terms so restrictive as to discourage technological innovation in the field of theft inhibition. Consequently, the standard has been framed to permit as many specific devices as possible to meet its requirements." *Id.*

NHTSA has repeatedly reaffirmed this objective. In 1990, NHTSA considered adding certain requirements to FMVSS 114, but when NHTSA asked manufacturers whether its proposed changes "would … improperly restrict design flexibility," some responded that "the proposal established overly precise requirements, which would limit new designs and innovations." 55 Fed. Reg. 21868, 21869, 21871 (May 30, 1990). NHTSA therefore expanded its new rule to identify various alternative

mechanisms of compliance. *Id.* at 21871–72. In response to petitions for reconsideration, NHTSA further amended the rule in 1991 and 1992 to "provide manufacturers with greater flexibility in designing" their locking and transmission systems to meet the performance standard. 56 Fed. Reg. 12464, 12464 (Mar. 26, 1991). In another revision in 2006, NHTSA agreed with a manufacturer's petition that the existing rule used "terminology that was unnecessarily design-restrictive," and elected to broaden the standard. 71 Fed. Reg. 17752, 17753 (Apr. 7, 2006).

Because flexibility and the innovation it drives have always been "significant objective[s]" of NHTSA's theft-prevention regulation, *Williamson*, 562 U.S. at 330, the regulation preempts state tort duties that would undercut that flexibility, eliminate manufacturer choice, and impose rigid technological mandates that NHTSA has rejected—precisely what Plaintiff's claims would do.

### C. Plaintiff's Claims Are Preempted Because They Rely On Defendants Having A Duty To Install Immobilizers

Plaintiff expressly alleges that "Defendants had a duty … to exercise care to assure that the vehicles were safe and equipped with industry-standard anti-theft measures," Compl. ¶ 139, and that "Defendants could have, and should have, initially included a fob-integrated engine immobilizer, consistent with the industry standard," *id.* ¶ 96; *see also id.* ¶¶ 3, 52, 87, 97, 116, 120–121, 161–63. Like the City of Chicago, Plaintiff "definitively rests its claims [on] the allegation that Defendants failed to use engine immobilizers." Dkt. 334 at 6. Plaintiff's claims are thus preempted, because "this specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement." *Id.* (dismissing Chicago's claims on this basis); *see also Geier*, 529 U.S. at 881–82; *Priester*, 736 S.E.2d at 260; *Soliman*, 2011 WL 4594313, at *5.

Plaintiff's claims are not saved by the vague references to "other reasonable anti-theft" measures or devices in its Complaint. Revealingly, Plaintiff's Complaint references immobilizers at least 65 times—approximately 15 more times than the City

of Chicago referenced immobilizers in its complaint—and Plaintiff's references to other anti-theft measures in its Complaint "still refer to engine immobilizers in context, rather than more broadly referring to *any* sufficient anti-theft technology." Dkt. 334 at 5.  Indeed, Plaintiff unambiguously alleges that "Defendants could have, and should have, initially included a fob-integrated engine immobilizer, *consistent with the industry standard*," Compl. ¶ 96 (emphasis added), and that "the lack of *industry standard* anti-theft devices in most Hyundai and Kia vehicles has led to a wave of thefts," *id.* § IV.C (cleaned up, emphasis added); *see also id.* ¶ 3 (Defendants "intentionally ignored industry-standard practices" by designing, manufacturing, and distributing "automobile models without engine immobilizers"), ¶ 52 ("Defendants' choice not to use [industry-standard engine immobilizers] predictably led to rampant car thefts and resulted in a threat to public safety and an ongoing public nuisance."), ¶ 87 ("Defendants have refused to implement a recall to install engine immobilizers"), ¶ 97 ("Because Hyundai and Kia have not implemented a mandatory recall for the installation of immobilizers, millions of the Susceptible Vehicles remain on the road."), ¶ 139 (Defendants had a duty to equip vehicles "with industry-standard anti-theft measures"), ¶¶ 161–163 ("Defendants knew or, in the exercise of reasonable care, should have known that the omission of an engine immobilizer in the Susceptible Vehicles could cause Plaintiff's injuries and thus created a dangerous and unreasonable risk of injury to the City of Lorain.").  Taking the Plaintiff's Complaint "as a whole … [its] claims are based on the vehicles' lack of an engine immobilizer, specifically."  Dkt. 334 at 6.

Even if Plaintiff's references to "other reasonable anti-theft" measures did not refer to immobilizers—which they clearly do—Plaintiff's Complaint should still be dismissed because such vague references to "other" unidentified measures fail to satisfy federal pleading standards.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *see also, e.g.*, *Raynaldo v. Am. Honda Motor Co.*, 2022 WL 4358096, at *4–5 (N.D. Cal. Sept. 20, 2022) (dismissing claims for failure to identify specific defect

with vehicle's electrical systems); *Williams v. Bos. Sci. Corp.*, 2023 WL 9596983, at *2 (N.D. Ohio Dec. 11, 2023) (allegations that a product failed are insufficient to state Ohio design defect claim).  For product liability claims, "a complaint gives fair notice to the defendant of a defect if it (1) identifies the particular part or system affected by the defect, and (2) describes the problems allegedly caused by the defect." *Raynaldo*, 2022 WL 4358096, at *4.  Courts consistently apply this standard to dismiss automobile defect claims which fail to identify the allegedly defective part or system. *See, e.g.*, *id.*; *Pelayo v. Hyundai Motor Am., Inc.*, 2021 WL 1808628, at *5 (C.D. Cal. May 5, 2021) ("Plaintiffs' theory that Defendants, through their negligence, failed to prevent *some* defect in the Gamma Engines is, again, insufficient notice of what defect is at issue.  In sum, the FAC describes only the *effects* of the alleged defect, which is insufficient."); *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1006 (N.D. Cal. 2021) (identification of "transmission defect" is inadequate notice); *Farrales v. Ford Motor Co.*, 2022 WL 1239347, at *6 (N.D. Cal. Apr. 27, 2022) (same for "engine cooling system").  Other than immobilizers, Plaintiff's complaint does not identify *any* particular vehicle part(s) or system(s) that are allegedly defective, or explain how the defect(s) caused a foreseeable wave of thefts in Lorain, Ohio.

In sum, Plaintiff would have this Court use state tort law to impose a universal mandate to use a single anti-theft technology (*i.e.*, immobilizers), where federal regulators have for decades strived to safeguard design flexibility, and Plaintiff has identified no other technology it believes would have been sufficient.  Plaintiff may believe that NHTSA's judgment is wrong and that engine immobilizers provide theft-protection superior to other technologies FMVSS 114 permits.  But Plaintiff's attempt to impose that judgment in lieu of NHTSA's would override NHTSA's longstanding pursuit of flexible safety standards and impermissibly impair a "significant objective of [a] federal regulation," *Williamson*, 562 U.S. at 330, and Plaintiff's vague references to "other" unidentified technologies do not pass muster under *Iqbal*.

Accordingly, as this Court held when dismissing the City of Chicago's complaint, Dkt. 334, all of Plaintiff's claims should be dismissed as preempted.

## II.     THE OPLA SUBSUMES PLAINTIFF'S PUBLIC NUISANCE CLAIMS[2]

By its plain language, the Ohio Products Liability Act forecloses Plaintiff's claims alleging Defendants created an absolute and/or qualified public nuisance. When first enacted, the Supreme Court of Ohio held that "all common-law products liability causes of action survive the enactment" of the OPLA. *Carrel v. Allied Prods. Corp.*, 677 N.E.2d 795, 800 (Ohio 1997). However, the Act was later amended to expressly "abrogate *all* common law product liability claims or causes of action." Ohio Rev. Code § 2307.71(B) (emphasis added); *Stiner v. Amazon.com, Inc.*, 164 N.E.3d 394, 401 (Ohio 2020) (describing the amended language as a "clear statement of legislative intent that the statutory text now controls Ohio's products-liability law"). This specifically "includes *any* public nuisance claim or cause of action at common law in which it is alleged that the design, manufacture, supply, marketing, distribution, … or sale of a product unreasonably interferes with a right common to the general public." Ohio Rev. Code § 2307.71(A)(13) (emphasis added).

For both claims, Plaintiff alleges that Defendants created a public nuisance—defined in Plaintiff's Complaint as "an unreasonable interference with a right common to the general public, including the rights to public health and public safety"—by designing, manufacturing, and distributing "unsafe vehicles." Compl. ¶¶ 111, 113, 135. Plaintiff's public nuisance claims thus track the plain, unambiguous language

---

[2]     The Ohio Supreme Court is currently deciding "[w]hether the Ohio Product Liability Act … abrogates a common law claim of absolute public nuisance resulting from the sale of a product in commerce in which the plaintiffs seek equitable abatement, including both monetary and injunctive remedies," *In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455, 462–63 (6th Cir. 2023), and oral argument on this issue took place on March 26, 2024. This Court previously held that "dismissal as the Ohio Supreme Court weighs this … question would be premature." Dkt. 270 at 14. Defendants move for abrogation and dismissal under the OPLA to preserve their rights.

of the OPLA, Ohio Rev. Code. § 2307.71(A)(13), and should therefore be dismissed. *See State ex rel. Prade v. Ninth Dist. Ct. of Appeals*, 87 N.E.3d 1239, 1242 (Ohio 2017) (where "the meaning of a statute is unambiguous and definite, it must be applied as written"); *Gabbard v. Madison Loc. Sch. Dist. Bd. of Educ.*, 179 N.E.3d 1169, 1175 (Ohio 2021) ("When the statutory language is unambiguous, we apply it as written without resorting to rules of statutory interpretation or considerations of public policy."); *Jacobson v. Kaforey*, 75 N.E.3d 203, 206 (Ohio 2016) ("If the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation, because an unambiguous statute is to be applied, not interpreted.") (internal quotation marks omitted).

## III.   PLAINTIFF'S CLAIMS ALSO FAIL DUE TO SUPERSEDING THIRD-PARTY CRIMINAL ACTS

Plaintiff City of Lorain fails to plausibly allege a core element of all three of its claims: that Defendants' alleged conduct proximately caused its injuries.  *See City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1147–48 (Ohio 2002); *Am. Winds Flight Acad. v. Garmin Int'l*, 2010 WL 3783136, at *8 (N.D. Ohio Sept. 17, 2010); *see also Ross v. Nutt*, 203 N.E.2d 118, 120 (Ohio 1964) (requiring "that the injury sustained [] be the natural and probable consequence of the negligence alleged").  While this Court previously held that ***theft*** is a foreseeable consequence of allegedly faulty anti-theft systems, Dkt. 270 at 10, Ohio law squarely holds that ***post-theft reckless and criminal conduct*** is not foreseeable as a matter of law.  Plaintiff's alleged injuries arise from such post-theft conduct which could not have, as a matter of Ohio law, been proximately caused by Defendants' alleged conduct.

### A.   Under Ohio Law, Post-Theft Criminal Conduct Is Unforeseeable As A Matter Of Law

Defendants are not liable for Plaintiff's alleged damages because the alleged harm done to it was caused by unforeseeable intervening forces: the Kia Boyz challenge and the criminals responsible for the city's theft wave.  In a recent case filed

11

in the Northern District of Ohio, a plaintiff sued Kia America (one of the defendants here), after being injured when a thief fleeing the police in a stolen Kia (which allegedly lacked an immobilizer) collided with the plaintiff's vehicle. *See Fox v. Kia Am., Inc.*, 2024 WL 1328730, at *13–14 (N.D. Ohio Mar. 28, 2024). While the plaintiff in *Fox* originally alleged claims for negligence, absolute and qualified public nuisance, and product liability against Kia, the plaintiff filed an amended complaint in response to a motion to dismiss based on, *inter alia*, abrogation under the OPLA. *Fox v. Kia Am., Inc.*, No. 1:23-cv-01881 (N.D. Ohio), Dkt. 10 & 12; *see also Fox*, 2024 WL 1328730, at *5. In its amended complaint, the *Fox* plaintiff dropped all claims except for the product liability claim under the OPLA and alleged that her injuries were caused by the defective design and manufacture of the Kia vehicle. *Id.* at *1, 5.

The court in *Fox* dismissed the OPLA claim against Kia on the grounds that the plaintiff could not plausibly allege that Kia's alleged conduct proximately caused her injuries, as "the theft and subsequent reckless operation of the Kia Sportage … constitute[s] an intervening, superseding cause that breaks the chain of causation" between the alleged defect and the plaintiff's injuries. *Id.* at *13. The *Fox* court noted that "Ohio courts have consistently found, as a matter of law, that the theft of a motor vehicle constitutes an intervening cause that breaks the chain of causation with respect to the car owner's liability for personal injuries arising from that theft." *Id.* at *11 (citing cases). Indeed, "Ohio courts have consistently found that, when a defendant allegedly fails to protect against vehicle theft, the subsequent negligent operation of a stolen motor vehicle is not foreseeable." *Id.* at *13. "Moreover, Ohio courts have held generally that '[o]ne is permitted to assume that others will follow the law and exercise ordinary care.'" *Id.* (quoting *McDougall v. Smith*, 944 N.E.2d 1218, 1220 (Ohio Ct. App. 2010)). Thus, the thief's "reckless operation of the Kia Sportage [was] … both a new and independent intervening negligent act that [broke] the causal connection with respect to Kia as a matter of Ohio law." *Id.* at *14; *see also Cascone*

*v. Herb Kay Co.*, 451 N.E.2d 815, 819 (Ohio 1983) (operative test is "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor").

*Fox* is just one in an unbroken string of decisions under Ohio law holding that a car thief's negligent or reckless driving, or intentional criminal acts committed *post-theft*, are unforeseeable as a matter of law, and therefore break the chain of causation from any negligence that allegedly contributed to the theft.  *Ross v. Nutt*, 203 N.E.2d 118, 119–21 (Ohio 1964) (upholding directed verdict in favor of defendant because it was "beyond the realm of reason to attach liability to an owner for acts of a nonpermissive user, a thief"); *Pendrey v. Barnes*, 479 N.E.2d 283, 283–84 (Ohio 1985) (upholding summary judgment against plaintiff despite proffer of statistical evidence indicating "stolen cars … have a tendency to become involved in accidents" because "no action or inaction on [defendant's] part could have induced negligent or reckless behavior on the part of the car thief once the car had already been taken"); *Tilton v. Austintown Motors, Inc.*, 1997 WL 816526 at *1–2, *4 (Ohio Ct. App. Dec. 30, 1997) (relying on *Pendrey* to affirm judgment on the pleadings, and holding that any alleged negligence on the part of the automobile dealership "was superseded by the intervening act of theft" committed by the car thief).[3]   In short, "*Tilton* and *Pendrey* establish the principle that the theft of a motor vehicle, even when the keys are left in the ignition by the owner, is an intervening superseding cause breaking the chain of proximate cause in a negligence case." *Lagowski v. Shelly & Sands, Inc.*, 38 N.E.3d 456, 459 (Ohio Ct. App. 2015).

---

[3]   *See also Miles v. Cedar-Lee Chrysler-Plymouth, Inc.*, 1978 WL 218347, at *1–2 (Ohio Ct. App. Apr. 27, 1978) (relying on *Ross* to hold the same); *Bugaj v. Nationwide Ins.*, 2009 WL 2678938, at *1–2 (Ohio Ct. App. Aug. 28, 2009) (relying on *Ross* and *Pendrey*).

### B.   Plaintiff's Claims Must Be Dismissed Because They Are Based On Post-Theft Conduct

Here, the public nuisance alleged by Plaintiff is the "threat to public safety" posed by the reckless driving, robberies, shootings and other crimes which allegedly occur *after* Hyundai and Kia vehicles are stolen. *See* Compl. ¶ 103 ("The high rate of thefts has led to increased threats to public safety"); *see also id.* ¶ 1 (preventing car thefts "protects … the public by keeping dangerous drivers in stolen vehicles off the roads"), ¶ 11 ("Vehicle theft goes hand in hand with reckless driving, which in turn can result in injuries and/or death."), ¶ 12 (Lorain residents "subjected to increasingly dangerous conditions on their streets, as car thieves … engage[] in reckless driving, endangering Plaintiff's employees, residents, and property"), ¶ 74 ("Stolen cars are often driven recklessly—particularly in this case, where cars are stolen for joyriding or use in the commission of other crimes"), ¶ 76 ("the recent wave of Hyundai and Kia thefts often involves teenagers joyriding, posting videos of themselves driving recklessly, and then abandoning the stolen vehicles-often after collisions"), ¶ 78 (police officers face "serious safety threats" responding to vehicle thefts, including "be[ing] shot, shot at, and stabbed").  According to Plaintiff, such threats to public safety were triggered by an unprecedented onslaught of viral videos posted and promoted on social media showing youth "engaging in reckless driving after stealing Kias and Hyundais," including "rife [] examples" of "joyriding through school zones or through crowds of bystanders, and drivers hitting other cars." *Id.* ¶¶ 70, 77.  In Lorain, the threats to public safety, occurring *after* a car theft, allegedly include: car thieves driving 90 mph, running red lights, and "disobey[ing] traffic laws," *id.* ¶ 103, and attempted robberies, *id.* ¶ 104.

The causal link that Plaintiff attempts to trace between Defendants' alleged conduct and the City of Lorain's alleged injuries is far weaker than those which were rejected in *Ross*, *Pendrey*, *Tilton*, *Miles*, *Lagowski*, and *Bugaj*, as additional extraordinary intervening forces are present here, including an unprecedented social-

Case No. 8:22-ML-03052-JVS-(KESx)
NOTICE OF AND MOTION TO DISMISS COMPLAINT

media campaign encouraging juveniles to steal Defendants' vehicles and drive recklessly.  Pursuant to the unbroken line of Ohio caselaw described above which holds that a car thief's reckless driving and other criminal acts supersede any alleged negligence earlier in the causal chain, and therefore stands alone as the sole proximate cause of any resulting injury, Plaintiff's claims should be dismissed.

## IV. DEFENDANTS OWE NO DUTY TO PROTECT PLAINTIFF FROM THIRD PARTIES[4]

Plaintiff's public nuisance and negligence claims also fail because, as a matter of law, Defendants owe no duty to protect local governments from harm caused by criminal third-party conduct.  *See City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 621 F. Supp. 2d 513, 521 (N.D. Ohio 2009), *aff'd sub nom. City of Cleveland v. Ameriquest Mort. Sec., Inc.*, 615 F.3d 496 (6th Cir. 2010) (public nuisance claim must "allege facts sufficient to demonstrate that Defendants owed Plaintiff a duty"); *Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 595 N.E.2d 855, 856 (Ohio 1992) ("there was no negligence, and therefore no nuisance, because no duty … existed"); *Davis v. Widman*, 922 N.E.2d 272, 282–83 (Ohio Ct. App. 2009) (similar).

Outside of the premises liability context, "[a] duty … requires more than just foreseeability." *Est. of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1019 (Ohio Ct. App. 2019) ("If foreseeability alone created a duty, then such liability could, potentially, arise without limit.").  Foreseeability merely "defin[es] the scope and extent of [a] duty." *Id.* at 1019–20 (internal quotation marks omitted).  Where, as here, a plaintiff seeks to impose "a common law duty predicated on nonfeasance, or failure to act," there must be a "special relationship" between the parties. *Id.* at 1027.  Importantly, "there

---

[4]   The Ninth Circuit is currently considering what role foreseeability plays in establishing a tort duty.  Dkt. 298 at 5.  The Court can dismiss Plaintiff's Complaint without waiting for the Ninth Circuit to reach a decision because "Ohio courts have expressly found that a thief's reckless operation of a stolen vehicle is not reasonably foreseeable as a matter of law."  *Fox*, 2024 WL 1328730, at *14; *see also supra* Section III.A.

is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third party, which gives rise to a duty to control." *Inskeep v. Columbus Zoological Park Assn.*, 207 N.E.3d 876, 881 (Ohio Ct. App. 2023); *see also Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 543 N.E.2d 769, 772–73 (Ohio 1989) (similar).

Plaintiff's public nuisance and negligence claims are plainly based on a theory of "nonfeasance" or "failure to act": specifically that "Hyundai and Kia deviated from the industry standard by electing *not* to include immobilizers in the Susceptible Vehicles," Compl. § IV.B (emphasis added), and "*[t]he lack of industry standard anti-theft devices* in most Hyundai and Kia Vehicles has led to a wave of thefts," *id.* § IV.C (emphasis added).[5]  Accordingly, Plaintiff must identify a special relationship with Defendants in order to impose a duty here.  *Est. of Ciotto*, 145 N.E.3d at 1027; *Inskeep*, 207 N.E.3d at 881; *Fed. Steel & Wire Corp.*, 543 N.E.2d at 772–73; *Ests. of Morgan v. Fairfield Fam. Counseling Ctr.*, 673 N.E.2d 1311, 1319 (Ohio 1997); *Feichtner v. Ohio Dep't of Transp.*, 683 N.E.2d 112, 119–20 (Ohio Ct. App. 1995). But, the City only alleges that its injuries were foreseeable.  Compl. ¶¶ 119, 142, 155 n.90, 160–61, 165, 167.  It does not and cannot allege that Defendants had any special relationship with Plaintiff or the third-party car thieves that created a duty to protect

---

[5]  Plaintiff attempts to fabricate a duty by alleging that Defendants "failed to prevent and/or created, incubated, and maintained the conditions necessary for a secondary market of unsafe and stolen vehicles." *See* Compl. ¶¶ 113, 135, 155; *see also id.* ¶ 155 n.90 (citing *In re Nat'l Prescription Opiate Litig.*, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018), to claim that "opioid manufacturers owed local governments a duty not to create foreseeable secondary markets"); *id.* ¶¶ 113 n.88, 135 n.89 (similar).  Plaintiff's conclusory allegations are meritless and contradicted by other allegations in the Complaint.  *See, e.g.*, *id.* ¶ 74 (stating that any "[s]tolen cars … in this case … [were] stolen for joyriding or use in the commission of other crimes, rather than for parts or resale"); *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).

Case No. 8:22-ML-03052-JVS-(KESx)

NOTICE OF AND MOTION TO DISMISS COMPLAINT

against the alleged injuries.  Plaintiff's claims should therefore be dismissed.  *See, e.g.*, *City of Cleveland*, 621 F. Supp. 2d at 521, 536; *Allen Freight Lines*, 595 N.E.2d at 856, 858; *Davis*, 922 N.E.2d at 282–83.  Or, at a minimum, the Court should dismiss Plaintiff's negligence claim and Plaintiff's qualified public nuisance claim, which relies on the allegation that "Defendants negligently engaged in conduct or omissions," *see* Compl. ¶ 138.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint in its entirety.

DATED:  April 12, 2024             QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ Steven G. Madison*
    Steven G. Madison (SBN: 101006)
    stevemadison@quinnemanuel.com
    Justin C. Griffin (SBN: 234675)
    justingriffin@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
    Telephone:   (213) 443-3000
    Facsimile:    (213) 443-3100

    *Attorneys for Defendants*
    *Hyundai Motor America and*
    *Kia America, Inc.*

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Hyundai Motor America and Kia America, Inc., certifies that this brief contains 5,530 words, which complies with the word limit of L.R. 11-6.1.

DATED:  April 12, 2024          QUINN EMANUEL URQUHART & SULLIVAN, LLP


                               By  */s/ Steven G. Madison*
                               Steven G. Madison (SBN: 101006)
                               stevemadison@quinnemanuel.com
                               Justin C. Griffin (SBN: 234675)
                               justingriffin@quinnemanuel.com
                               865 South Figueroa Street, 10th Floor
                               Los Angeles, California 90017-2543
                               Telephone:  (213) 443-3000
                               Facsimile:   (213) 443-3100

                               *Attorneys for Defendants*
                               *Hyundai Motor America and*
                               *Kia America, Inc.*