Elliott R. Feldman (*Pro Hac Vice*)
Nathan M. Dooley (SBN 224331)
Megan R. Peitzke (SBN 230375)
Kevin P. Caraher (*Pro Hac Vice*)
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Tel.: 215.665.2071
Fax: 215.701.2282
*EFeldmanM.@cozen.com*

Timothy E. Cary (SBN 093608)
LAW OFFICES OF ROBERT A.
STUTMAN, P.C.
1260 Corona Pointe Court, Ste 306
Corona, California 92879
Tel: 951.387.4700
Fax: 951.963.1298
*CaryT@Stutmanlaw.com*

Craig S. Simon (SBN 78158)
BERGER KAHN, A LAW CORPORATION
2 Park Plaza, Suite 650
Irvine, CA 92614
Tel: 949.474.880
Fax:  949.313.5029
*csimon@bergerkahn.com*

William Hoffmann
Adam Romney (SBN 261974)
Susan Benson (SBN 146837)
GROTEFELD HOFFMANN
5535 Balboa Blvd., Ste. 219
Encino, California 91316
Tel: 747.233.7150
Fax: 747.233.7143

*Attorneys for Subrogation Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 22-ML-03052-JVS-KES |
| | The Honorable James V. Selna |
| | **REPLY IN SUPPORT OF SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Judge: Hon. James V. Selna |
| | Ctrm:  10C |
| | Date:   April 19, 2024 |
| | Time:  9:00 a.m. |
| This document relates to: ALL SUBROGATION CASES | |

LEGAL\69994505\1                                    1                    Case No.: 22-ML-03052-JVS-KES

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL
DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF CONTENTS

Page

I. INTRODUCTION ................................................................................................. 5

II. ARGUMENT ...................................................................................................... 6

   A. Plaintiffs Are Entitled to Jurisdictional Discovery ................................... 6

      i. The Evidence Shows A Nexus Between California and Plaintiffs' Claims... 6

      ii. The Shipping Records Contradict Defendants' Declarations and Weigh in Favor of Jurisdictional Discovery ................................................................. 7

      iii. The Evidence Shows That Korean Defendants Exported Vehicles to California ....................................................................................................... 10

      iv. Defendants Admit Key Executives Are Working Within This District for the Korean Parent Corporations and Local Entities ................................... 11

      v. Defendants' Analysis and Applicability of the Alter Ego Test is Flawed on Multiple Levels ............................................................................................ 122

      vi. Plaintiffs are Permitted to Test the Accuracy of Defendants' Declarations with Jurisdictional Discovery ..................................................................... 1414

   B. The Scope of Jurisdictional Discovery is Narrowly Tailored and Should Not be Further Limited ................................................................................. 17

III. CONCLUSION ................................................................................................ 19

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Butcher's Union Local No. 498 v. SDC Inv., Inc.*,
    788 F.2d 535 (9th Cir. 1986) ................................................................. 15

*Fleites v. MindGeek S.A.R.L.*,
    No. 22104920CJCADSX, 2023 WL 3526180 (C.D. Cal. Apr. 7,
    2023) ................................................................................................. 13, 18

*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*,
    592 U.S. 351 (2021) ............................................................................... 8

*Getz v. Boeing Co.*,
    654 F.3d 852 (9th Cir. 2011) ................................................................. 15

*Greystone Hous. Found., Inc. v. Fantasy Holdings*,
    LLC, No. 16-300, 2017 WL 11421364 (S.D. Cal. Jan. 12, 2017) ...................... 19

*HaloSongs, Inc. v. Sheeran*,
    No. SACV161062JVSJCGX, 2017 WL 5198248 (C.D. Cal. Jan. 13,
    2017) ....................................................................................................... 5

*Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*,
    328 F.3d 1122 (9th Cir. 2003) ............................................................... 18

*Infinite Peripherals, Inc. v. Custom S.P.A.*,
    No. 19-1983, 2020 WL 5045315 (C.D. Cal. Apr. 10, 2020) ................ 15, 16, 17

*Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*,
    No. 19-7831, 2019 WL 8064196 (C.D. Cal. Dec. 5, 2019) ........................... 8, 9

*Macias v. LG Chem Ltd.*,
    No. SACV2002416DOCADSX, 2021 WL 780478 (C.D. Cal. Feb.
    28, 2021) ............................................................................................... 13

*Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union
    Int'l Missionary Soc.*,
    298 F.R.D. 633 (S.D. Cal. 2014) ........................................................... 13

*Never Too Hungover, LLC v. Drinkaid LLP*,
    2024 WL 402659 (D. Nev. Feb. 1, 2024) ............................................... 15

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL
DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

*Petzilla, Inc. v. Anser Innovation LLC*,
    No. 14-1354, 2014 WL 12705567 (N.D. Cal. May 20, 2014) .................... 18, 19

*Rhoades v. Avon Products, Inc.*,
    504 F.3d 1151 (9th Cir. 2007) ............................................................ 14

*Rodoni v. Royal Outdoor Prod., Inc.*,
    2019 WL 2300400 (D. Mont. May 30, 2019) ...................................... 18

*Signature Fin., LLC v. McClung*,
    No. 16-3621, 2019 WL 4418127 (C.D. Cal. June 3, 2019) ................. 15, 16, 17

*Tangle, Inc. v. Buffalo Games, LLC*,
    No. 22-7024, 2023 WL 5672178 (N.D. Cal. Sept. 1, 2023) ........................... 8, 9

*Yagman v. Kelly*,
    No. 17-6022, 2018 WL 2138461 (C.D. Cal. Mar. 20, 2018) ................ 15, 16, 17

*Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*,
    No. 23-55350, 2024 WL 838707 (9th Cir. Feb. 28, 2024)................................ 13

*Zakikhan v. Hyundai Motor Co.*,
    No. 820CV01584SBJDEX, 2021 WL 4805454 (C.D. Cal. June 28,
    2021) ........................................................................................................ 12

**Other Authorities**

Editorial Department, *The forefront of finished vehicle exploration! The
    Hyundai Glovis Processing Center* ...................................................... 8

LR 37-1 ................................................................................................... 17

Michael Stewart, *Hyundai Motor Group Promotes Brian Latouf to
    President and Global Chief Safety and Quality Officer* ..................... 11

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL
DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# I.    **INTRODUCTION**

Plaintiffs easily meet their burden to show that there is a "colorable basis" to conclude that facts and evidence may be uncovered through jurisdictional discovery to resolve the issue of personal jurisdiction. *HaloSongs, Inc. v. Sheeran*, No. SACV161062JVSJCGX, 2017 WL 5198248, at *4 (C.D. Cal. Jan. 13, 2017). There is already significant evidence suggesting that the Court can find personal jurisdiction over Defendants Hyundai Motor Company ("Hyundai") and Kia Motor Company ("Kia") (collectively "Defendants"). Defendants' clear admissions and the evidence submitted in support of this Motion show the Korean Defendants designed and tested the defective vehicles in California, imported test vehicles into California for that purpose, and that key individuals working on the precise safety problems at issue in this case work for the Korean defendants at offices just miles from this Courthouse. The evidence also shows extensive overlap between key executives and that Defendants' highest ranking California-based subsidiaries' corporate officers hold themselves out as directly answerable to Defendants' corporate officers.

This evidence easily establishes a colorable basis to conduct jurisdictional discovery, precluding any contention that the request for jurisdictional discovery is a "fishing expedition" or being executed on a "hunch." Notably, Defendants also have no explanation as to why they claim the "made whole" doctrine is applicable, meaning they are inadequately capitalized, (*see* Dkt. 307 at 16: 15-26), while in connection with this Motion, they claim there is no danger of insolvency. They cannot have it both ways.

Defendants attempt to discount the evidence–going so far as to "cherry-pick" some portions of it while ignoring others–and erroneously reframing the low "colorable basis" standard to mean that Plaintiffs must make a *prima facie* showing that Plaintiffs must already have evidence of every aspect of every theory on which personal jurisdiction exists. That is not the standard. Plaintiffs must (and did) put forth evidence showing a colorable basis exists for jurisdictional discovery. That evidence

Case No.: 22-ML-03052-JVS-KES

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

shows Defendants intentionally targeted California and did business through their alter egos.

Finally, Defendants categorically refused to meet and confer on the scope of the proposed discovery, refusing any attempt to even discuss narrowing the topics proposed by Plaintiffs, thereby waiving any argument as to the scope of the proposed discovery.

## II.    ARGUMENT

### A.    Plaintiffs Are Entitled to Jurisdictional Discovery

#### i.    The Evidence Shows A Nexus Between California and Plaintiffs' Claims

Defendants inadvertently admitted the truth of evidence showing that jurisdictional discovery is appropriate. They began their substantive arguments by attempting to discount evidence showing that they targeted California. (*See* Opp. at 5-6.) They isolate specific evidentiary facts–the $100 million in advertising, 269,000 vehicles sold, and sponsoring of sporting events–as part of an attempt to misconstrue those facts and assert that they are irrelevant because those facts purportedly only show targeting of the United States, not California. (*See* Opp. at 6.) This argument did two things: (1) it admitted those facts as true by not disputing them and (2) showed there is a basis for jurisdictional discovery to determine the extent to which those activities were directed at California, this country's most important auto market, as opposed to the United States in general.

Jurisdictional discovery would allow the parties to determine how much advertising and marketing was targeted at California, while showing the proportion of sales (revenue and profits) derived from California as opposed to the United States in general. It would also help the parties determine whether Defendants' event sponsorship was used to market and advertise the subject vehicles in California. So, while Defendants try to explain away evidence as being irrelevant, they inadvertently prove the appropriateness of jurisdictional discovery.

### ii.  The Shipping Records Contradict Defendants' Declarations and Weigh in Favor of Jurisdictional Discovery

Defendants' Opposition admits vehicles were imported for testing. *See* Opp. at 10 (citing Joselyn Smith Declaration, ¶¶ 3-7). That admission directly supports Plaintiffs' Motion, as Plaintiffs contend part of the Korean Defendants' manufacturing process is taking place in California for the defective vehicles described in the complaint ("Subject Vehicles"). The results of testing on the Subject Vehicles were presumably not relegated to a file folder within HATCI's offices. As Defendants' Financial Reports suggest, the test results are being used by the entire Hyundai and Kia operations, including the operations coordinated from Korea (which appears to be all of Defendants' operations). Plaintiffs are entitled to discovery as to why the vehicles at issue were imported for testing.

One of the key issues in this lawsuit is the ultimate decision by Defendants to manufacture, and then market the Subject Vehicles without sufficient anti-theft devices. Notably, the import data shows that while the Korean Defendants exported the defective vehicles to California, the same Defendants simultaneously exported identical makes and models into Canada *with* anti-theft devices (albeit different subsidiaries and banks taking title), all through the same port in this judicial district. That process, and related decisions, along with the admission of testing of defective vehicles in California, and the strong implication of surrounding evidence, shows (1) portions of the manufacturing process is taking place in California while (2) the decision to import defective vehicles into California is being made in Seoul, Korea. Jurisdictional discovery will ultimately allow the parties to determine the extent of the testing and how it is being used by the Korean Defendants to make these decisions. In other words, jurisdictional discovery will allow the parties to confirm whether Defendants' conduct specifically targeted California.

Moreover, Defendants provide a startlingly inaccurate and self-serving interpretation of the Excel spreadsheets detailing their shipments. They claim the

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL
DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

spreadsheets are replete with irrelevant information about shipments to and from third-party entities. (*See* Opp. at 8.) Fortunately, Microsoft has a solution to the problem Defendants raise. Excel has a filter function that allows the user to exclude third-party entities, which is how Plaintiffs calculated their figures. Defendants' arguments do nothing to controvert those figures.

Defendants also impermissibly attempt to reframe the Motion as an opposition to a motion to dismiss as they repeatedly claim they have done nothing more than place vehicles into the stream of commerce, relying on the declarations of Michael Orange (¶¶ 3-7) and Robert Kuntze (¶¶ 3-7). (*See* Opp. at 9-10.) Putting aside momentarily how Defendants' admission about testing destroyed its substantive stream-of-commerce argument, their argument is that Plaintiffs will not be able to establish that the Korean Defendants decided to ship the defective vehicle because HMA and KA took possession of the vehicles in Korea. (*Id.* [citing *Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd*., No. 19-7831, 2019 WL 8064196, at *7–8 (C.D. Cal. Dec. 5, 2019); *Tangle, Inc. v. Buffalo Games, LLC*, No. 22-7024, 2023 WL 5672178, at *4 (N.D. Cal. Sept. 1, 2023)].) The evidence suggests otherwise, and it is, of course, not difficult to surmise that the Korean parent corporations directed their local subsidiaries to do so as part of an ill-starred effort to avoid the implications of *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U.S. 351 (2021). The Korean parent corporations' decision to target California with defective vehicles, moreover, is not put into dispute by Defendants' contention that local subsidiaries are purportedly taking possession of the vehicles at the port in Mokpo, as opposed to Long Beach.[1] A review of Defendants' case law, moreover, strongly undermines their argument.

---

[1] This is all the more true given that the *Korean* Defendants apparently make final decisions regarding trim level for export to different jurisdictions at their "Globe-Us" facilities in Mokpo. *See* Editorial Department, *The forefront of finished vehicle exploration! The Hyundai Glovis Processing Center*, Hyundai Glovis WESBZINE, The forefront of finished vehicle exportation! The Hyundai Glovis Processing Center – HYUNDAI GLOVIS WEBZINE (July 21, 2022). Decisions regarding trim level for the Subject Vehicles are one of the key issues in this case, as those

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

In *Kellytoy Worldwide, Inc.*, the Court concluded the request for jurisdictional discovery was a "fishing expedition" because the plaintiff "ha[d] no offices or staff in California; ha[d] no California business registration; ha[d] no registered agent in California; pays no California taxes; ha[d] not directed Walmart to ship to California; and has not (itself) directly sold or advertised its MUSHMILLOWS in California." 2019 WL 8064196, at *7. That is not the case here, as Defendants admit. (*See* Opp. at 12-14 [conceding corporate officer overlap and that HMA's and KA's officers answer directly to Defendants' officers].) Because Defendants concede such evidence exists, more will likely be discovered, and Defendants' reliance on *Kellytoy Worldwide, Inc.* is entirely misplaced.

Defendants next cite *Tangle, Inc.* for the proposition that the Court found shipments to California did not constitute express aiming. (*See* Opp. at 10-11). However, that case is inapplicable for three reasons. *First*, the Court in *Tangle, Inc.* was adjudicating a motion to dismiss a first amended complaint for lack of personal jurisdiction **after** the Court previously granted the plaintiff's request for jurisdictional discovery and the plaintiff still failed to establish jurisdiction. At this juncture, the Court is not adjudicating the merits of a motion to dismiss. Rather, it is only looking for a colorable basis to determine whether evidence is discoverable, which the Court in *Tangle, Inc.* had previously found. Defendants' use of *Tangle, Inc.* puts the cart before the horse. *Second*, Defendants inappropriately rely on *Tangle, Inc.* because the *Tangle, Inc.* court was looking at shipping evidence in isolation. *Third*, Plaintiffs brought forward evidence of marketing, distributing, and advertising the Subject Vehicles. The Court should therefore allow jurisdictional discovery so Plaintiffs can determine how many shipments were made while Defendants had possession.

//

//

---

decisions appear to have determined whether the Subject Vehicles were outfitted with any kind of anti-theft technology. *See* Dkt. 283 at 24:16-28.

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

### iii.     The Evidence Shows That Korean Defendants Exported Vehicles to California

Defendants are mistaken when they suggest that they only "sell vehicles to their subsidiaries FOB South Korea." (Opp. at 1:17-18.) Using available filters on Appendix A, it appears that the Korean Defendants were the consignees for shipments of vehicles and vehicle parts passing through California's ports. (*See* Bonefant Decl., Appx. A.) Below is a snapshot of a preliminary finding for Hyundai.

### Hyundai Spreadsheet (Appx. A)



Similarly, using the same filter function on Appendix C showing Kia shipments to California ports, it is clear that Kia was also a consignee of vehicle shipments passing through California ports. Another snap shot is shown below:

### Hyundai Spreadsheet (Appx. C)



So, there is clear evidence showing that Defendants are targeting California with vehicles. Ultimately, the core question is whether there is a colorable basis for

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL
DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

jurisdictional discovery, and this evidence shows that there is already substantial evidence in the record showing that the Korean Defendants targeted California with the defective vehicles.

### iv.    Defendants Admit Key Executives Are Working Within This District for the Korean Parent Corporations

Defendants repeatedly failed to deny that key executives overlap between their Korean and California operations, including Jose Munoz and the individual in charge of safety, Brian Latouf. *See* Dkt. No. 175 at 8:12-15; Dkt. Nos. 352, 354, 356, 358, 360. According to Hyundai, Mr. Latouf is currently the "President and Global Chief Safety and Quality Officer (GCSQO)" and reports "jointly to Jay Chang, Hyundai Motor Company CEO and Ho Sung Song, Kia Corporation CEO."[2] On behalf of Kia and Hyundai, Mr. Latouf is responsible for "field issues, **safety recalls, safety-based field actions for service campaigns**, extended warranties, and other responsibilities." *Id.* Notably, Mr. Latouf is also "the Chief Safety Officer of HMA," the local Hyundai entity. Dkt. Nos. 352 at ¶ 33, 354 at ¶ 33, 356 at ¶ 33, 358 at ¶ 36, 360 at ¶ 33. He has held that position for Hyundai's California-based subsidiary since 2019.[3] In other words, Hyundai boasts that the individual in charge of Defendants' disastrous safety record *was promoted* from "Chief Safety Officer of HMA" to oversee safety operations, including matters related to recalls, for both Korean Defendants–all during time periods relevant to this litigation.

This startling set of facts reveals one reason why the Korean Defendants cannot deny they have key individuals working in California on matters directly related to the design and testing of the Subject Vehicles. Not only do they have people working

---

[2] Michael Stewart, *Hyundai Motor Group Promotes Brian Latouf to President and Global Chief Safety and Quality Officer*, Hyundai Newsroom, Hyundai Motor Group Promotes Brian Latouf to President and Global Chief Safety and Quality Officer - Hyundai Newsroom (last updated Dec. 20, 2023).

[3] Michael Stewart, *Hyundai Motor Group Promotes Brian Latouf to President and Global Chief Safety and Quality Officer*, Hyundai Newsroom, Hyundai Motor Group Promotes Brian Latouf to President and Global Chief Safety and Quality Officer - Hyundai Newsroom (last updated Dec. 20, 2023).

in this judicial district on matters specifically alleged in the ACC, the evidence shows Defendants are importing vehicles from Korean for design and testing, while the head of safety for both Korean Defendants–presumably the individual in charge of this entire fiasco–appears to do his work just miles from this Courthouse.

With that as a background, it is no wonder that Defendants have been unable to distinguish the holding in *Zakikhan v. Hyundai Motor Co.,* No. 820CV01584SBJDEX, 2021 WL 4805454, at *4 (C.D. Cal. June 28, 2021) (exercising personal jurisdiction over the Korean Defendants). Defendants observe that in *Zakikhan*, the Court found personal jurisdiction because Defendants "were intimately involved with the decisions to track vehicle malfunctions, determine the cause of the problem, and ultimately to disclose that information to NHTSA and initiate [a] recall effort[]"—which were uncontroverted by HMC and KC—were sufficient to establish purposeful direction." Dkt. 346 at 15:9-12. Similar allegations *are* made in this case, (*see* Dkt. 283 ¶¶ 265-67, 294-95, 306, 311-12, 314, 384-85, 506, 508, 509), and Defendants merely ask for jurisdictional discovery to determine the extent to which those allegations are true–a proposition that seems very likely given Mr. Latouf's job responsibilities for the Korean Defendants.

### v.    Defendants' Analysis and Applicability of the Alter Ego Test is Flawed on Multiple Levels

Defendants argue that Plaintiffs have "no basis" to contend that the they "control every facet of HMA's, KA's, or HATCI's business or that they do not observe corporate formalities." (Opp. at 12.) This is risible. To support this argument, Defendants recycled the Declarations of Baik (¶¶ 14-20) and Shin (¶¶ 13-19), which state that the entities observe corporate formalities and operate separately. They then run through the first and second prong of the alter ego test and claim that Plaintiffs do not meet either prong of the multi-factor test. However, Defendants' analysis of the alter ego test is flawed on multiple levels. As noted above, they simply sidestep their curious contention that there are inadequate funds for the consumer Plaintiffs to be

made whole in connection with the Motion to Strike (*see* Dkt. 307 at 16: 15-26) while simultaneously arguing here that they are adequately capitalized in connection with this Motion.  They cannot have it both ways.

First, Plaintiffs are not required to establish at this juncture that Defendants have complete control over HMA and KA. Plaintiffs may, as they are requesting, seek discovery into specific areas of control that are relevant to these issues in this case. *See, e.g.*, *Macias v. LG Chem Ltd.*, No. SACV2002416DOCADSX, 2021 WL 780478, at *6 (C.D. Cal. Feb. 28, 2021); *Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l Missionary Soc.*, 298 F.R.D. 633, 645 (S.D. Cal. 2014); *see also Fleites v. MindGeek S.A.R.L.*, No. 22104920CJCADSX, 2023 WL 3526180, at *2 (C.D. Cal. Apr. 7, 2023) (broad jurisdictional discovery for alter-ego issue was permitted). When courts assess whether to grant a motion for jurisdictional discovery in relation to the alter ego test, they are not looking for whether the defendant parent corporation exercises total control over the subsidiary in the forum state. *See, e.g.*, *Youngevity Int'l, Inc. v. Innov8tive Nutrition, Inc.*, No. 23-55350, 2024 WL 838707, at *2 (9th Cir. Feb. 28, 2024); *Fleites v. MindGeek S.A.R.L.*, No. 22104920, 2023 WL 3526180, at *2 (C.D. Cal. Apr. 7, 2023); *Macias v. LG Chem Ltd.*, No. SACV2002416, 2021 WL 780478, at *6 (C.D. Cal. Feb. 28, 2021). Instead, courts focus on the parent corporation's control over their subsidiary's particular and tortious activity, which amounts to the forum-related activities aspect of personal jurisdiction. *Id.* Plaintiffs, therefore, do not need to show that Defendants completely control HMA and KA, rather that Defendants exercised distribution, marketing, and advertising control over HMA and KA's tortious activities in California related to the sale of the defective vehicles.

Second, Defendants curiously admit that there are dueling declarations and evidence. They claim Plaintiffs' evidence about overlapping corporate executives and the Korean Defendants' involvement in HMA and KA's operations should be summarily rejected by the Court because of the presence of Baik's and Shin's

Declarations. (*See* Opp. at 12-13.) This is a curious argument given that a "colorable basis" is all that is required for further discovery.

Defendants appear to concede that a colorable basis exists by acknowledging that they are merely attempting to controvert Plaintiffs' evidence while asking this Court to make a credibility determination in their favor as if this were a bench trial. To the extent Defendants want their Motion to Dismiss to be adjudicated on the merits, it must be denied given that all they can do is suggest there may be conflicts between dueling declarations. *See Rhoades v. Avon Products, Inc.*, 504 F.3d 1151, 1160 (9th Cir. 2007) ("conflicts between the facts contained in declarations submitted by the two sides must be resolved in the plaintiff's favor.") (internal citation and quotation marks omitted). In short, jurisdictional discovery is appropriate in this case because Plaintiffs have presented sufficient threshold evidence showing a colorable basis for jurisdictional discovery, and Defendants appear to admit as much in their Opposition.

### vi. Plaintiffs are Permitted to Test the Accuracy of Defendants' Declarations with Jurisdictional Discovery

Defendants contend Plaintiffs are merely seeking jurisdictional discovery to contradict Baik and Shin, or purely operating on a "hunch." (*See* Opp. at 15.) However, that is not the case. As argued extensively in the moving papers and above, evidence exists showing (1) shipments made by the Korean entities to California, (2) the same goods passing through California ports, (3) part of their manufacturing process taking place in California, (4) marketing and advertising directed by Defendants took place, and (5) they have telltale signs that HMA and KA are controlled by Defendants. Indeed, Plaintiffs even showed that HMA's and KA's highest officers hold themselves out as answerable to Defendants' officers. (*See* Dooley Decl. ¶ 6(a)-(b)., Exs. 9-10.) As a result, Defendants' argument about Plaintiffs seeking discovery on a whim is nothing more than an outright attempt to mislead the Court.

Furthermore, Plaintiffs also showed that the Baik and Shin Declarations, in part, laid the foundation for Plaintiffs to seek jurisdictional discovery. (*See* Mot. at 16.) Plaintiffs argued they are seeking discovery to fill in the notable gaps created by the Baik and Shin Declarations. Defendants' contention that Plaintiffs only seek to contradict the Baik and Shin Declarations–although contradictory evidence does exist–is specious at best.

Plaintiffs are not simply stating that they "believe" they will uncover facts to create personal jurisdiction, as Defendants suggest by citing to *Getz v. Boeing Co.*, 654 F.3d 852, 860 (9th Cir. 2011) and *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 540 (9th Cir. 1986). In those cases, the courts rejected the plaintiffs' requests for jurisdictional discovery because the plaintiffs' requests were merely based on "belief" or "pure[] speculative."

Again, Plaintiffs have evidence that illustrates why jurisdictional discovery is warranted. This, in fact, draws a parallel to *Never Too Hungover, LLC v. Drinkaid LLP*, 2024 WL 402659, at *1-2 (D. Nev. Feb. 1, 2024). There, the Court noted that because the plaintiffs' evidence showed that "[a]s the volume of sales and the methods of marketing to Nevada consumers may impact the reasonableness of exercising personal jurisdiction over the defendants, [the Court] require[s] a more satisfactory showing of facts on these issues. Therefore jurisdictional discovery is appropriate." Similarly, here, the evidence Plaintiffs have adduced regarding the volume of sales and the methods of marketing to California consumers would also impact the reasonableness of exercising personal jurisdiction over Defendants, thus warranting jurisdictional discovery.

Further, Defendants mistakenly rely on *Yagman v. Kelly*, No. 17-6022, 2018 WL 2138461, at *9 (C.D. Cal. Mar. 20, 2018); *Signature Fin., LLC v. McClung*, No. 16-3621, 2019 WL 4418127, at *4 (C.D. Cal. June 3, 2019); and *Infinite Peripherals, Inc. v. Custom S.P.A.*, No. 19-1983, 2020 WL 5045315, at *8 (C.D. Cal. Apr. 10, 2020) for the proposition that courts have rejected requests that test the veracity of the

defendant's declarations. Those cases are easily distinguished. First, in *Yagman*, the Court denied the plaintiff's request for jurisdictional discovery, challenging the declarant's alleged conclusory, self-serving contentions as to jurisdiction and reasoning that the plaintiff's speculation and his subjective mistrust of Defendants' declaration was insufficient. *See* 2018 WL 2138461, at *9. Moreover, the Court found that the plaintiff "offered zero details supporting his assertion that discovery will establish that Aetna, Inc., Aetna Life, Coventry, and/or the Individual Defendants are subject to this Court's jurisdiction or that Mr. Lee is a 'liar.'" *Id.*

Similarly, in *Signature*, the plaintiff was attempting to prove that the defendant did, in fact, have contacts in California, but the Court noted that even if this was true, the plaintiff still needed to prove more than a parent-subsidiary relationship for jurisdictional discovery. *See* 2019 WL 4418127, at *4. As the plaintiff was not able to make any mention of anything more than a parent-subsidiary relationship between the defendants and their subsidiary, the court denied jurisdictional discovery. *Id.*

Here, as opposed to *Yagman* and *Signature*, Plaintiffs have demonstrated evidence that shows a colorable basis for further discovery by, among other things: (1) shipments made by Defendants to California, (2) Defendants receiving goods passing through California ports, (3) part of Defendants' manufacturing process taking place in California, (4) marketing and advertising directed by Defendants took place, and (5) the fact that HMA and KA are controlled by Defendants. Indeed, Plaintiffs even showed that HMA's and KA's highest officers hold themselves out as answerable to Defendant's officers. (*See* Dooley Decl. ¶ 6(a)-(b), Exs. 9-10.) As a result, Defendants' argument about Plaintiffs seeking discovery on a whim or a hunch appears to be nothing more than unsupportable arguments of counsel that are entitled to no deference.

Defendants cite *Infinite Peripherals, Inc. v. Custom S.P.A.*, No. 19-1983, 2020 WL 5045315, at *8 (C.D. Cal. Apr. 10, 2020) for the proposition that the Court rejected the plaintiff's argument that the foreign defendants' declarations were self-

serving and "therefore insufficient." The language quoted by Defendants, however, is taken out of context. The Court's real reasoning for denying jurisdictional discovery was the fact that the plaintiff did not explain, at all, what jurisdictionally relevant facts it sought to discover. *See* 2020 WL 5045315, at \*8. By contrast, here, Plaintiffs explain what facts they are trying to discover. Thus, Defendants' reliance on *Infinite,* as well as the holdings in *Yagman* and *Signature*, is misplaced.

### B.      The Scope of Jurisdictional Discovery is Narrowly Tailored and Should Not be Further Limited

Defendants refer to Plaintiffs' Motion as a "fishing expedition," and they point out that many of the requested areas of jurisdictional discovery extend into the merits of the case and are not confined to jurisdictional issues. (*See* Opp. at 17.) They specifically point out that Plaintiffs' Categories 11, 13-15, 17, 22, and 25 seek documents and information regarding decision-making, design, and testing and therefore, discovery should be limited. (*Id.*) Notably, during the meet and confer process, Defendants rejected any attempt to narrow jurisdictional discovery, and suggested that no amount of narrowing would be productive. *See* Reply Decl. of Nathan Dooley at ¶ 6. Having declined to meet and confer on this issue, Defendants' argument should be rejected. *Id.*

At this stage, after Defendants refused to engage on this topic, Plaintiffs respectfully suggest that the appropriate path forward is for interrogatories, requests for admission, and requests for document production to be propounded according to the categories identified in Plaintiffs' Motion, with the scope to be discussed as appropriate during the meet and confer process prior to bringing motions before the Court. *See* LR 37-1 ("Before filing any motion relating to discovery under F. Rs. Civ. P. 26-37, counsel for the parties must confer in a good-faith effort to eliminate the necessity for hearing the motion or to eliminate as many of the disputes as possible.").

The Ninth Circuit is clear that jurisdictional discovery should be granted where "discovery on th[e] issue might well demonstrate facts sufficient to constitute a basis

for jurisdiction." *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003). More specifically, in *Rodoni v. Royal Outdoor Prod., Inc.*, 2019 WL 2300400, at *5 (D. Mont. May 30, 2019), the Court authorized jurisdictional discovery based on the finding that the plaintiff might "uncover facts that suggest that Royal Defendants specifically targeted Home Depot or other third-party distributors within Montana," and that if Royal had "specifically targeted the Montana home-improvement market," specific jurisdiction would exist. *Id.* The facts of Plaintiffs' case fit within the reasoning used by the *Rodoni* Court in that jurisdictional discovery would, as in *Rodoni*, likely uncover facts that Defendants specifically targeted California and the California market with vehicle sales and distribution.

The categories of information identified by Plaintiffs speak directly to discovery that is likely to uncover further facts showing further bases for this Court to exercise jurisdiction over Defendants. If jurisdictional discovery is allowed (which it should be), then discovery into the listed categories is appropriate. Moreover, in *Fleites v. MindGeek S.A.R.L.*, No. 22104920CJCADSX, 2023 WL 3526180, at *2 (C.D. Cal. Apr. 7, 2023), the Court agreed that "broad" jurisdictional discovery was appropriate to determine the alter ego issue in the case. Here, the alter ego issue is one of several issues, including, but not limited to, marketing, advertising, and manufacturing that targeted California.

The two cases Defendants cite in support of limiting discovery are notably distinguishable. First, Defendants cite to *Petzilla, Inc. v. Anser Innovation LLC*, No. 14-1354, 2014 WL 12705567, at *2 (N.D. Cal. May 20, 2014) for the proposition that it is appropriate for the Court to limit jurisdictional discovery to the defendant's "relationships with distributors and retailers—in particular, whether [defendant] contracted with an exclusive distributor or retailer to sell the patented product in California and the agreement was analogous to an exclusive patent license." In *Petzilla*, however, the Court noted that the plaintiff's "narrowly tailored" request for jurisdictional discovery, while warranted, was not actually narrowly tailored due to

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

the sheer amount of discovery requested (i.e. 29 document requests on Anser; 7 interrogatories on Anser; a 30(b)(6) deposition of Anser; a deposition of Anser's CEO [who submitted a declaration in support of Anser's motion to dismiss]; and 5 third-party subpoenas). *Id.* The Court further found that the plaintiff failed to explain why such extensive discovery would be necessary. *Id.* By contrast, here, the jurisdictional discovery requested by Plaintiffs is markedly different and not as extensive. Thus, *Petzilla* is inapposite on the point of limiting jurisdictional discovery.

Defendants also rely on *Greystone Hous. Found., Inc. v. Fantasy Holdings*, LLC, No. 16-300, 2017 WL 11421364, at *2 (S.D. Cal. Jan. 12, 2017) for the proposition that the Court required jurisdictional discovery to be "limited in scope to aiding the inquiry into whether Defendants have purposefully availed themselves of the State of California through their e-commerce and/or Defendants' contacts related to the contract in this case." Interestingly, the defendants in *Greystone* made some of the same arguments that Defendants make here in that the discovery sought is irrelevant to whether jurisdiction exists in this case and that the request itself was untimely. *Id.* The *Greystone* Court rejected these arguments and noted that while the plaintiff had "not made a prima facie showing at this time that personal jurisdiction exists over Defendants, the Court acknowledges that [the plaintiff] has come forward with some evidence tending to establish personal jurisdiction over Defendants." *Id.* (internal quotations and citations omitted). *Greystone* does nothing to help Defendants' argument to limit the scope of jurisdictional discovery. Thus, Plaintiffs respectfully request that this Court grant jurisdictional discovery in full. The propriety of any individual discovery process can be worked out between the parties, and if necessary, adjudicated by the magistrate judge if necessary.

## III.   <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the motion for leave to conduct limited jurisdictional discovery. Further, in order for the jurisdictional discovery to be conducted in a fulsome manner, Plaintiffs should be

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

permitted three months to conduct the jurisdictional discovery, with answers being due within 30 days, an additional 30 days for depositions, and the Opposition to Defendants' Motion to Dismiss the following month. Of course, this time should be tolled if Defendants interpose objections requiring court intervention.

Dated: April 15, 2024                  Respectfully submitted,

COZEN O'CONNOR

By:  *s/Nathan Dooley*


GROTEFELD HOFFMANN

By:  s/*William Hoffmann*


LAW OFFICES OF ROBERT A. STUTMAN, P.C.

By:  *s/Timothy E. Cary*


BERGER KAHN, A LAW CORPORATION

By:  *s/Craig S. Simon*

*Attorneys for Subrogation Plaintiffs*

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1

## **CERTIFICATE OF COMPLIANCE**

2       The undersigned counsel of record for Subrogation Plaintiffs certifies that this

3   brief contains 4,829 words, which complies with the word limit of L.R. 11-6.1.

4

5   Dated: April 15, 2024                    COZEN O'CONNOR

6

7                                    By:    /s/ *Megan Peitzke*
                                            Megan Peitzke
8                                           *Lead Attorneys for*
                                            *Subrogation Plaintiffs*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY ISO SUBROGATION PLAINTIFFS' MOTION FOR LEAVE FOR JURISDICTIONAL
DISCOVERY; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF