Steve W. Berman
HAGENS BERMAN SOBOL
SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain
HUMPHREY FARRINGTON &
McCLAIN, P.C.
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Plaintiffs' Consumer Class Action Leadership Committee*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.:   8:22-ml-03052-JVS-KES **CONSUMER CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |
| This document relates to: ALL CONSUMER CLASS ACTION CASES | Judge: Hon. James V. Selna Date:   July 15, 2024 Time:  1:30 p.m. Courtroom:  10C |

PLEASE TAKE NOTICE that at 1:30 p.m. on July 15, 2024, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James V. Selna, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Courtroom 10C, Santa Ana, California 92701, Consumer Class Plaintiffs (who are identified in pages 10-194 of the Consolidated Amended Class Action Complaint ("CAC"). Dkt. 84) ("Plaintiffs") will and hereby do move for an order of the Court to finally approve the class action Settlement and reaffirm its certification of the Settlement Class.

Plaintiffs' unopposed Motion is based on this Notice; the accompanying Memorandum of Law; the Joint Declaration of the Consumer Class Action Leadership Counsel In Support of Final Approval ("Leadership FA Decl."), and all attachments thereto (including the Amended Settlement Agreement); the Proposed Order Granting Final Approval of the Hyundai and Kia Vehicle Theft Litigation Consumer Plaintiffs Amended Settlement Agreement (the "Settlement," "Settlement Agreement," or "ASA"); and all other papers filed and proceedings had in this Action.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 18, 2024. Defendants support the request to grant final approval to the proposed settlement.

Dated: April 18, 2024                    Respectfully Submitted.

By:  */s/ Steve W. Berman*
    Steve W. Berman, Esq.
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
    1301 Second Avenue, Suite 2000
    Seattle, Washington 98101
    Telephone: 206-623-7292
    Facsimile: 206-623-0594
    Email: steve@hbsslaw.com

1

2

3

4

5

6

By:  /s/ Elizabeth A. Fegan
     Elizabeth A. Fegan, Esq.
     **FEGAN SCOTT LLC**
     150 S. Wacker Dr., 24th Floor
     Chicago, Illinois 60606
     Telephone:  312.741.1019
     Fax:        312.264.0100
     Email: beth@feganscott.com

7

8

9

10

11

12

By:  /s/ Kenneth B. McClain
     Kenneth B. McClain, Esq.
     **HUMPHREY FARRINGTON & McCLAIN**
     221 W. Lexington Ave., Suite 400
     Independence, Missouri 64050
     Telephone:   816.836.5050
     Facsimile:   816.836.8966
     Email: kbm@hfmlegal.com

13

14

15

16

17

18

By:  /s/ Roland Tellis
     Roland Tellis, Esq.
     **BARON & BUDD, P.C.**
     15910 Ventura Boulevard, Suite 1600
     Encino, California 91436
     Telephone: 818.839.2333
     Facsimile:   214.523.5500
     Email: rtellis@baronbudd.com

19

20

     *Consumer Class Action Leadership Counsel and Counsel for Plaintiffs*

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................... 1

II.   FACTUAL BACKGROUND ................................................................. 2

    A.   Preliminary Approval of the Proposed Settlement. .......................... 2

    B.   Notice was Provided to the Class. ................................................... 3

    C.   Class Counsel Conducted Confirmatory Discovery. ........................ 3

III.  ARGUMENT ........................................................................................ 5

    A.   The Court Should Reaffirm its Certification of the Settlement
       Class. ............................................................................................... 5

    B.   The Settlement is Fair, Reasonable, and Adequate. ......................... 5

        1.   The strength of Plaintiffs' case, and the risk, expense,
           complexity, and duration of further litigation support final
           approval. ................................................................................... 7

        2.   The risk of maintaining a class action through trial
           supports final approval. .......................................................... 10

        3.   The amount offered in the Settlement supports final
           approval. ................................................................................. 11

        4.   The extent of discovery and the stage of the proceedings
           support final approval. ............................................................ 14

        5.   The experience and views of Counsel support final
           approval. ................................................................................. 16

        6.   The presence of a governmental participant supports final
           approval. ................................................................................. 16

        7.   The reaction of the Class supports final approval. ................. 19

        8.   The Settlement is not the product of collusion. ..................... 19

    C.   The Best Notice Practicable was Given to All Class Members. ..... 20

IV.   CONCLUSION .................................................................................... 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007)........................................................................10

*Banh v. Am. Honda Motor Co.*,
2021 WL 3468113 (C.D. Cal. June 3, 2021)........................................................20

*Barragan v. Populus Fin. Grp., Inc.*,
2023 U.S. Dist. LEXIS 27605
(C.D. Cal. Feb. 10, 2023) ....................................................................................10

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ...........................................................................6, 19

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017) .............................................................................21

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ...............................................................................5

*Chambers v. Whirlpool Corp.*,
214 F. Supp. 3d 877 (C.D. Cal. 2016) ............................................................5, 10

*Conti v. Am. Honda Motor Co.*,
2022 U.S. Dist. LEXIS 1561
(C.D. Cal. Jan. 4, 2022) .......................................................................................14

*Contreras v. Armstrong Flooring*,
2021 WL 4352299 (C.D. Cal. July 6, 2021) .......................................................20

*In re Gen. Motors Corp. Pick-Up Truck Fuel
Tank Prod. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) ..................................................................................10

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ...............................................................................6

*Hardmon v. Ascena Retail Grp., Inc.*,
  2022 WL 17572098 (C.D. Cal. Nov. 29, 2022) ....................................16

*Hemphill v. San Diego Ass'n of Realtors*,
  225 F.R.D. 616 (S.D. Cal. 2004) ........................................................19

*In re Hyundai & Kia Fuel Econ. Litig.*,
  926 F.3d 539 (9th Cir. 2019) (en banc) ...............................................5

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...............................................15

*Kaupelis v. Harbor Freight Tools USA Inc.*,
  2022 WL 2288895
  (C.D. Cal. Jan. 12, 2022) (Selna, J.) ..................................................21

*Kearney v. Hyundai Motor Am.*,
  2013 WL 3287996 (C.D. Cal. June 28, 2013)..............................14, 16

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ...............................................................5

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ............................................................14

*In re Lithium Ion Batteries Antitrust Litig.*,
  853 Fed. App'x 56 (9th Cir. 2021) .....................................................21

*Longo v. OSI Sys., Inc.*,
  2022 U.S. Dist. LEXIS 158606
  (C.D. Cal. Aug. 31, 2022).................................................................20

*Lyter v. Cambridge Sierra Holdings*,
  2019 WL 13153197 (C.D. Cal. June 18, 2019)....................................15

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) .....................................................6, 9, 16

*Mendoza v. Hyundai Motor Co.*,
  2017 WL 342059 (N.D. Cal. Jan. 23, 2017)........................................15

*Miller v. Wise Co.*,
  2020 WL 1129863 (C.D. Cal. Feb. 11, 2020) .......................................6

v

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004)...............................................................10, 16

*Officers for Just. v. Civ. Serv.*
   *Comm'n of San Francisco*,
   688 F.2d 615 (9th Cir. 1982) ..........................................................................7, 11

*Rannis v. Recchia*,
   380 F. App'x 646 (9th Cir. 2010).........................................................................21

*Rodriguez v. W. Publ'g Corp.*,
   563 F.3d 948 (9th Cir. 2009) ...........................................................................7, 21

*Ruiz v. JCP Logistics, Inc.*,
   2016 WL 6156212 (C.D. Cal. Aug. 12, 2016) .....................................................10

*Satchell v. Fed. Exp. Corp.*,
   2007 WL 1114010 (N.D. Cal. Apr. 13, 2007).....................................................19

*Scolaro v. RightSourcing, Inc.*,
   2017 WL 11630969
   (C.D. Cal. Mar. 20, 2017) (Selna, J.).................................................................20

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994) ..............................................................................21

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................6

*In re Toyota Motor Corp. Unintended Acceleration*
   *Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2013 WL 12327929 (C.D. Cal. July 24, 2013) ....................................................18

*In re Toyota Motor Corp. Unintended Acceleration*
   *Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2013 WL 3224585 (C.D. Cal. June 17, 2013) (Selna, J.).....................................13

*True v. Am. Honda Motor Co.*,
   749 F. Supp. 2d 1052 (C.D. Cal. 2010)...............................................................17

*Wallace v. Countrywide Home Loans, Inc.*,
   2015 WL 13284517 (C.D. Cal. Apr. 17, 2015)....................................................19

vi

*Zakikhani v. Hyundai Motor Co.*,
2023 WL 4544774 (C.D. Cal. May 5, 2023)...............................................7, 10, 16

*Zubia v. Shamrock Foods Co.*,
2017 WL 10541431 (C.D. Cal. Dec. 21, 2017)...................................................10

**Statutes & Rules**

Class Action Fairness Act, 28 U.S.C. § 1715(a)-(b) ...............................................17

National Traffic and Motor Vehicle Safety Act,
49 U.S.C. Chapter 301 ...........................................................................8

49 C.F.R. § 571.114 ...............................................................................8

Fed. R. Civ. P. 23 .............................................................2, 5, 6, 7, 9, 20, 21

## I.    INTRODUCTION

Plaintiffs seek final approval of the Settlement, which resolves novel claims that millions of vehicles manufactured and sold by Defendants Hyundai Motor Company ("HMC"), Hyundai Motor America ("HMA"), KIA Corporation ("KC"), and KIA America, Inc. ("KA") (collectively "Defendants") contain a series of design flaws that allows thieves to quickly steal Class Vehicles. The Settlement offers significant relief to Class members who will receive virtually all the relief that Plaintiffs originally sought in this first-of-its-kind action. It provides a non-reversionary common fund of up to $145,000,000, but no less than $80,000,000, to compensate Class members (subject to reasonable caps based on litigation risk) for losses stemming from the thefts and attempted thefts of their Class Vehicles, such as car rentals or ride shares, up to the value of a total loss of the vehicle.[1] Eligible Class Vehicles will also receive a free anti-theft Software Upgrade, which Defendants will warrant for the life of each vehicle, and reimbursement (paid separately from the Common Fund and uncapped) for the purchase of a steering wheel lock. For Class Vehicles ineligible for the Software Upgrade, the Settlement provides up to $300 in cash payments (also paid separately from the Common Fund and uncapped) to Class members for their purchase of equivalent anti-theft systems.

This Settlement was achieved after more than eight months of arms'-length negotiations under the guidance of the Honorable Margaret M. Morrow (Ret.). Class Counsel conducted extensive pre-filing and post-filing investigations and engaged in several additional months of confirmatory discovery with Defendants. Class Counsel's efforts, combined with their vast experience litigating similar claims in complex

---

[1] All capitalized terms shall have the same meaning as in the Settlement Agreement, filed as Dkt. No. 247-1. The Class Vehicles refer to certain model year 2011-2022 Hyundai and Kia vehicles manufactured without an engine immobilizer that were sold in the United States (including Puerto Rico, Virgin Islands, and Guam). *See* ASA, § I.G.

automotive defect class action cases, allowed them to be well informed as to the strength of the claims and ultimately resulted in the Settlement before the Court.

This fair, reasonable, and adequate Settlement ensures that Class members receive comprehensive benefits that address their interests now, bypassing the uncertainties and risks associated with prolonged litigation that might not yield any relief in years to come. Class members have also received the best notice practicable of the Settlement through multiple channels, in accordance with Rule 23 and this Court's preliminary approval order. Accordingly, Plaintiffs respectfully request that this Court grant final approval of the Settlement.

## II.    FACTUAL BACKGROUND

### A.    Preliminary Approval of the Proposed Settlement.

On September 27, 2023, Plaintiffs filed their Amended Notice of Motion and Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 228, the "Motion"), which sought approval of the Amended Settlement Agreement. Plaintiffs' Motion summarized Plaintiffs' allegations that Defendants knowingly sold approximately nine million Hyundai and Kia vehicles that suffer from a series of design flaws that allow thieves to steal them in less than ninety seconds, chronicled the history of the litigation and the negotiations that led to the proposed Settlement, and detailed the extensive benefits that the proposed Settlement provides to the Class.  *See* Dkt. No. 228 at 6-17. Rather than reproduce here the 11 pages of facts set forth in the Motion, Plaintiffs incorporate that material by reference. *See also* Amended Joint Declaration of the Consumer Class Action Leadership Counsel in Support of Motion for Preliminary Approval of Class Action Settlement (Dkt. No. 228-1) and exhibits attached thereto.

On October 31, 2023, the Court granted the amended motion and ordered dissemination of notice to the Class pursuant to the Settlement's notice plan. Dkt. Nos. 256, 259.

**B.      Notice was Provided to the Class.**

Hyundai, along with Angeion, the Claims Administrator, provided Notice to the Class in accordance with the Settlement Agreement and the Court's Preliminary Approval Order. Leadership FA Decl., ¶¶ 44-50 & Exs. 18 and 19 (Declaration of Steven Platt ("Platt Decl.")) and Declaration of Elizabeth Fernandex ("Fernandez Decl."). In total, 17,969,123.00 first-class mail notices were sent out to Class members (10,834,388.00 by Hyundai and 7,134,735 by Angeion). Fernandez Decl., ¶¶ 7-8. Platt Decl., ¶ 13. Email notice containing a copy of the Class Notice in the body of the email and links to the settlement website and the claims administrator's phone numbers was sent to 14,090,529 email addresses. *Id.*, ¶ 16. Angeion also established Settlement-dedicated phone lines to field Class member inquiries regarding the Settlement. *Id.*, ¶ 9. Angeion launched the settlement websites (KiaTheftSettlement.com and HyundaiTheftSettlement.com) on or about February 9, 2024. *Id.*, ¶ 4. Angeion also issued a national press release providing notice of the Settlement on March 4, 2024, and has four additional, national press releases scheduled. *Id.*, ¶ 18.

The Objection and Opt-Out deadline is May 3, 2024. Dkt. No. 256 at ¶ 46. Plaintiffs' response to any objections is due June 3, 2024. *Id*. Class members who do not opt out have until at least January 11, 2025, to submit claims for reimbursements.

**C.      Class Counsel Conducted Confirmatory Discovery.**

On May 18, 2023, Plaintiffs served Defendants with their first set of Requests for Production of Documents ("Requests for Production"). Leadership FA Decl., ¶ 37. The Requests for Production sought documents relating to, *inter alia*: (1) Defendants' investigation about the theft risk in Class Vehicles; (2) Defendants' interactions with

NHTSA concerning the alleged Defect; (3) the development, efficacy, and roll-out of the Software Upgrade remedy; (4) insurance coverage for Class Vehicles; and (5) Defendants' efforts to mitigate the risk of theft in Class Vehicles.

On December 13, 2023, Plaintiffs served their second set of Requests for Production, which sought records relating to, *inter alia*, Defendants' analyses concerning the efficacy of the Software Update and the analyses performed by Defendants' expert, James Smith of Exponent, relating to the same. *Id*., ¶ 38. The Parties conducted several meet and confers concerning the two sets of Requests for Production. *Id*. Defendants produced 1,250 pages of documents and written responses in lieu of documents for certain requests. *Id*.

Plaintiffs also interviewed Mr. Smith. *Id*., ¶ 40. Plaintiffs' examination of Mr. Smith concerned Defendants' development of the Software Upgrade, a technical analysis of the Software Upgrade and how it operates, incidents of Class Vehicle thefts which had the Software Upgrade installed in the vehicles, Defendants' roll-out of the Software Upgrade, and anti-theft devices made available to Class Vehicles that are not eligible for the Software Upgrade, including the ignition cylinder protectors announced by Defendants in December 2023. *Id*.

In addition to the formal and adversarial confirmatory discovery, as part of their efforts to confirm the fairness and adequacy of the Settlement, Plaintiffs continued to conduct independent investigations relating to the efficacy of the Software Upgrade. *Id*., ¶ 41. Among other things, Plaintiffs monitored the theft rate and theft methods reported since the Settlement was reached and the Software Upgrade began to rollout to Class members, spoke with hundreds of Class members relating to their experiences and the effectiveness of the Software Upgrade, and analyzed alleged insurance coverage and pricing trends for Class Vehicles. *Id*. ¶¶ 41-42.

### III.    ARGUMENT

**A.    The Court Should Reaffirm its Certification of the Settlement Class.**

The Court certified a Class for settlement purposes upon Preliminary Approval, finding that requirements under Rule 23(a) and Rule 23(b)(3) are satisfied. Dkt. Nos. 200, 259. Nothing has changed that would affect the Court's ruling on class certification. *See Chambers v. Whirlpool Corp.*, 214 F. Supp. 3d 877 (C.D. Cal. 2016) (reconfirming the certification set forth in the preliminary approval order "[b]ecause the circumstances have not changed" since that order).[2] Accordingly, the Court should grant final certification of the settlement Class.

**B.    The Settlement is Fair, Reasonable, and Adequate.**

As the Court noted when granting class certification, there is a "'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" Dkt. No. 200 at 20 (quoting *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020) (quoting *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc))). Final approval of a class action settlement asks the court to "evaluate the fairness of a settlement as a whole," and find that the settlement is "'fair, reasonable, and adequate.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012) (quoting Fed. R. Civ. P. 23(e)(2)); *id.* at 819 ("the question whether a settlement is fundamentally fair within the meaning of Rule 23(e) is different from the question whether the settlement is perfect in the estimation of the reviewing court."). In the Ninth Circuit, courts consider the following non-exhaustive factors: (1) the strength of plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed, and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of

---

[2] Internal citations and quotations omitted and emphasis added throughout, unless otherwise indicated.

a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Id*. No one factor is decisive or even necessarily appropriate for consideration in every class action settlement. *Miller v. Wise Co*., 2020 WL 1129863, at *5 (C.D. Cal. Feb. 11, 2020). Rather, "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." S*taton v. Boeing Co.*, 327 F.3d 938, 960 (9th Cir. 2003) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)). Where, as here, a settlement is reached prior to formal class certification, the Court must also consider whether the settlement is the "product of collusion among the negotiating parties." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)).

The Fed. R. Civ. P. 23(e)(2) factors for settlement approval substantially overlap with the Ninth Circuit's factors analyzed herein and at preliminary approval. The Court considered and found that Plaintiffs and Class Counsel adequately represented the Settlement Class at preliminary approval. Dkt. No. 200 at 17; *see also* Dkt. No. 259; Fed. R. Civ. P. 23(e)(2)(A). The Court also found no signs of collusion or improper bargaining at preliminary approval (Dkt. No. 200 at 17; Dkt. 259 at 4), and Plaintiffs revisit this in section III.B.8 *infra*. *See* Fed. R. Civ. P. 23(e)(2)(B) (whether the settlement was negotiated at arm's length). Plaintiffs address the adequacy of the Settlement relief in section III.B.3 *infra*. *See* Fed. R. Civ. P. 23(e)(2)(C) (requiring consideration of costs, risks, and delay of trial and appeal (*see* sections IV.B.1-3 *infra*); effectiveness of method for distributing settlement relief, including claims processing (*see* section III.B.3 *infra*); terms of any proposed award of attorney's fees, including timing of payment (*see* ASA § V.1-5; section III.B.8 *infra*, and Plaintiffs' motion for attorneys' fees filed concurrently herewith); and any agreement identified under Rule

23(e)(3) (none other than contained in the Settlement Agreement). Last, the Court found that the Settlement compensates Class members for their harm suffered (Dkt. No. 200 at 29; *see also* Dkt. No. 259), and Plaintiffs address the Settlement's equitable treatment of class members relative to each other in section III.B.3 *infra*. *See* Fed. R. Civ. P. 23(e)(2)(D).

### 1. The strength of Plaintiffs' case, and the risk, expense, complexity, and duration of further litigation support final approval.

"No one formula governs the Court's determination of the likelihood of Plaintiffs' success, which the Ninth Circuit has described as 'nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" *Zakikhani v. Hyundai Motor Co.*, 2023 WL 4544774, at *4 (C.D. Cal. May 5, 2023) (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009) (quoting *Officers for Just. v. Civ. Serv. Comm'n of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982))).

Plaintiffs allege that for over a decade Defendants sold approximately nine million Class Vehicles which contain a uniform design flaw (namely, the lack of an engine immobilizer) that made them prone to theft, and consequently, do not comply with federal motor vehicle safety standards. Plaintiffs further contend that Defendants are liable for damages caused by professional and amateur thieves that exploit the alleged Defect. Based on their extensive pre-suit investigation and discovery expected to be produced in the action, Plaintiffs were prepared to present evidence that the Class Vehicles do not satisfy the federal standards, Defendants had pre-sale knowledge that the Class Vehicles were prone to theft, and that instead of disclosing the Defect, Defendants concealed it. If the litigation had proceeded, Plaintiffs believe that they could demonstrate that Defendants violated state consumer protection laws, breached their implied warranties, and engaged in fraud.

Despite Plaintiffs' confidence in the strength of their claim, this Court has already recognized that "there are substantial risks for the Class should the case proceed

to trial" and that "[i]n addition to the level of risk, expense, and complexity typically present in class actions, there are several other risk factors present in this case." Dkt. No. 200 at 26.

Based on their experience, Class Counsel believe that Defendants would argue throughout this litigation that: (1) the Class Vehicles are not defective, and that the vast majority of Class Vehicles have not experienced a manifestation of the Defect (*i.e.*, theft); (2) even if the Defect did exist, Defendants did not have pre-sale knowledge of its existence. This litigation concerns dozens of vehicle models, some of which were designed and sold over a decade ago. Thus, establishing Defendants' knowledge of the Defect at the time of sale through records which may be more than a decade old presents considerable difficulties; and (3) Plaintiffs' claims rest upon novel and untested theories of liability which may not withstand summary judgment or an appeal. In particular, Plaintiffs' claims depend upon a finding that the Class Vehicles do not comply with federal standards and that the criminal actions of third parties do not eliminate Defendants' liability. To try and defeat Plaintiffs' theory, Defendants would rely on a June 5, 2023, letter from NHTSA to the California Attorney General concerning the Class Vehicle thefts, in which NHTSA took the following position:

> At this time, NHTSA has not determined that this issue constitutes either a safety defect or noncompliance requiring a recall under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. Chapter 301. The Federal Motor Vehicle Safety Standard identified in your letter, FMVSS No. 114, does not require an engine immobilizer. *See* 49 C.F.R. § 571.114. Also, the test procedure specified in that standard does not contemplate actions taken by criminal actors to break open or remove part of the steering column and take out the ignition lock to start a vehicle. *See id*. § 571.114, S6. Here, the safety risk arises from unsafe use of a motor vehicle by an unauthorized person after taking significant destructive actions to parts of the vehicle.

Leadership FA Decl.,¶ 58, Ex. 20 (Acting Associate Administrator for Enforcement

Cem Hatipoglu Letter to California Attorney General Rob Bonta, June 5, 2023).[3]

Given the size and scope of the Class, Defendants would also present a robust opposition to class certification. *See, e.g.,* Hyundai Motor America And Kia America, Inc.'s Motion To Sever, Dkt. No. 340; Hyundai Motor America and Kia America, Inc.'s Motion to Strike Class Allegations from The Subrogation Plaintiffs' Amended Consolidated Complaint, Dkt. No. 307.

Even if Plaintiffs were to overcome Defendants' arguments, Class Members would face several more years of hard-fought and costly litigation for the chance to obtain future relief for the present harm they are suffering. The Parties and the Court need not speculate as to the likely duration of this action given that the alternative to a Settlement is playing out in the Subrogation track of this MDL. On January 31, 2024, the Court entered a scheduling order in the Subrogation track, which provides for class certification to be fully briefed September 15, 2025, and dispositive motions to be fully briefed on April 23, 2026. Dkt. No. 300. Moreover, the Subrogation schedule does not account for a Rule 23(f) appeal, which Defendants will certainly seek if the Court certifies the class, thereby ensuring that a trial is unlikely to begin before 2027.

In contrast, through this Settlement, Class Members can avoid the meaningful risks and expenses posed by continued litigation and enjoy the significant and guaranteed benefits years before the earliest date possible through continued litigation. This weighs strongly in favor of granting final approval. *See In re Mego*, 213 F.3d at 459 (settlement amounting to "only a fraction of the potential recovery" was fair "given

---

[3] After the Parties reached this Settlement, the Court issued Orders in the Subrogation and Governmental Entities tracks in which it found those plaintiffs' claims were not preempted by federal law. *See* Dkt. Nos. 259-260. Although those plaintiffs survived initial rounds of motions to dismiss based on preemption, the issue is likely to go to the Ninth Circuit and remains a real risk in the actions. Further, the Court subsequently dismissed the City of Chicago's complaint as preempted based on its finding that FMVSS No. 114 does not require the installation of engine immobilizers. *See* Dkt. No. 334.

the difficulties in proving the case"); *Barragan v. Populus Fin. Grp., Inc.*, 2023 U.S. Dist. LEXIS 27605, at *8 (C.D. Cal. Feb. 10, 2023) ("An immediate recovery for class members is preferable to prolonged risk and expense of further litigation."); *Zakikhani*, 2023 WL 4544774, at *4 ("[U]nless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004)); *Ruiz v. JCP Logistics, Inc.*, 2016 WL 6156212, at *5 (C.D. Cal. Aug. 12, 2016) ("Settlement eliminates the risks inherent in continued litigation, and it may be the last chance for class members to obtain relief.").

### 2. The risk of maintaining a class action through trial supports final approval.

There is a risk that Plaintiffs would not be able to maintain class certification, including a nationwide class as provided in the Settlement, through trial. As discussed above, class certification is an uphill battle here due to, *inter alia*, the size of the Class, relevant time period, differences in steering column components and the design of each Class Vehicle, and the individualized issues presented by third party thieves. Given these facts, there is a risk that a class could not be maintained through trial. *Zubia v. Shamrock Foods Co.*, 2017 WL 10541431, at *12 (C.D. Cal. Dec. 21, 2017) ("The uncertainty surrounding class certification favors approval of the Settlement here, especially 'because settlement was reached prior to a hearing on Plaintiffs' motion for class certification . . . a time when there was still risk that the class would not be certified by the Court.'") (quoting *Chambers*, 214 F. Supp. 3d at 888-89); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 392 (C.D. Cal. 2007) (acknowledging value of class action depends largely on certification and "class certification undeniably represents a serious risk for plaintiffs in any class action") (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 817 (3d Cir. 1995)).

### 3.  The amount offered in the Settlement supports final approval.

The Ninth Circuit has explained that "the proposed settlement is not to be judged against a hypothetical or speculative measure of what *might* have been achieved by the negotiators." *Officers for Just.*, 688 F.2d at 625. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Id.* at 628.

Here, the Settlement offers multiple elements of immediate relief and compensation that reflect the varying degrees to which Class members were harmed or suffered losses due to the Defect in an equitable manner. Dkt. No. 200 at 29 (noting that "the Settlement provides differing types of relief to groups of Class Members who have suffered different types of harms. This type of differentiation is permissible.").

As detailed above, the Settlement provides substantial monetary compensation for damages incurred because of the Defect. For individuals that suffered Qualifying Losses[4] (*e.g.*, insurance deductibles, stolen personal property, and damage to Class Vehicles caused by a Qualifying Theft), the Settlement creates a non-reversionary Common Fund of up to $145,000,000, but no less than $80,000,000, from which all Class members may receive cash payments.[5] Given the collective value of the claims submitted to date (over $230 million), Class Counsel expect that Defendants will pay out the full $145 million. Leadership FA Decl., ¶ 56. The amount of compensation available to Class members that suffered a Qualifying Theft or Qualifying Theft Attempt is tied directly to each Class Vehicle's value, and thus, the harm suffered by each Class member. *See* Declaration of Edward M. Stockton, Dkt. No. 228-3 at 5. Despite claim caps that generally reflect discounts based on litigation risk, "most

---

[4] "Qualifying Loss" refers to an out-of-pocket loss or uncompensated loss resulting from a Qualifying Theft or Qualifying Theft Attempt of a Class Vehicle, provided such loss is reimbursable under Section II.D.3 of the ASA. ASA, § I.Y

[5] The Common Fund will also be used to reimburse class members for Software Upgrade Related Expenses. ASA, § II.D.5.

insured class members are likely to receive near full compensation for their qualifying events, even based upon risk-adjusted payment amounts." *Id.*, ¶ 44.[6] And the probability that uninsured Class members can be exposed to large monetary losses that would not be compensated for in the Settlement "is infrequent." *Id.*, ¶ 16.[7]

The Settlement next offers each Class member an opportunity to remedy the alleged Defect affecting their Class Vehicle. Owners and lessees of eligible Class Vehicles are entitled to a free anti-theft Software Upgrade for their vehicles. The Software Upgrade was thoroughly tested and has been proven to be effective at preventing the TikTok method of theft. Leadership FA Decl., ¶¶ 40-42; *see also* Declaration of James Smith filed in connection with preliminary approval, Dkt. No. 230-1; Dkt. No. 259 at 7-9. Defendants are required to install the Software Upgrade whenever a Class Vehicle is brought into an authorized dealership, "without the need for a request by the Class member." ASA, § II.A.3. As part of the Settlement, Defendants will provide each eligible Class member a warranty that the Software Upgrade will work as designed for the life of the vehicle.

Class Members that own or lease a Class Vehicle that is not eligible for the Software Upgrade are entitled to up to $300 for the cost of an equivalent third-party anti-theft system. Notably, after the Parties reached the Settlement, Defendants announced that these Class Vehicles are entitled to receive an ignition cylinder protector, which makes it difficult to breach the steering column and tamper with the ignition cylinder; indeed, the device has been described as a "vault for the ignition." Leadership FA Decl., ¶ 39. This device directly addresses Plaintiffs' allegations that

---

[6] Class Members who purchased a steering wheel lock prior to the availability of the Software Upgrade are also entitled to make a claim for reimbursement up to $50, which is not deduced from the Common fund.

[7] The reason why this is the case is: (1) fewer than 25% of Class members are estimated to not have insurance coverage for thefts; and (2) uninsured vehicles are likely to be "low-value vehicles" with damages not exceeding $10,000. Dkt. No. 228-3, ¶ 16

1    the Class Vehicles do not contain an adequate hardened steering column collar. CAC,

2    ¶¶ 1302-06; Leadership FA Decl., ¶ 39. Thus, the opportunity to receive up to $300 for

3    the purchase of an anti-theft device supplements the considerable anti-theft benefits

4    provided by the ignition cylinder protector.

5         The Settlement includes other benefits that inure to Class members. Defendants

6    were required to issue a nationwide press campaign promoting the Software Upgrade

7    and discussing its availability and effectiveness at preventing vehicle thefts and

8    implement a driver awareness and instructional campaign regarding the Software

9    Upgrade. Also, the cost of administration of the Settlement will not be taken from the

10   Common Fund or reduce the Settlement benefits available to Class members. ASA, §

11   II.E.

12        As a whole, the Settlement is valued at more than $275,500,000 ($145,000,000

13   Common Fund plus the cost of notice and administration and the cost of developing

14   and implementing the Software Upgrade). Leadership FA Dec., ¶ 56.

15        The Settlement also outlines a streamlined claims process to ensure the effective

16   distribution of the Settlement benefits. To receive cash payments under the Settlement,

17   Class members must complete a claim form (either online or by mail) and submit

18   documentation supporting the claim within 180 days of the final approval and

19   expiration of appellate rights. ASA, § III.B.C. Courts regularly endorse this process.

20   *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, &*

21   *Prods. Liab. Litig.*, 2013 WL 3224585, at *18 (C.D. Cal. June 17, 2013) (Selna, J.)

22   ("The requirement that class members download a claim form or request in writing a

23   claim form, complete the form, and mail it back to the settlement administrator is not

24   onerous.").[8] Angeion is required to review claims within 60 days of receipt and provide

25   Class members an opportunity to cure any deficiency. ASA, § III.C.1. Class members

26

27   _____

     [8] The earliest date the claim submission period may expire is January 11, 2025.

28

then have 45 days to cure, after which Angeion must provide a final determination within 45 days to issue its final determination as to the approval or denial of the claim. *Id.*, § III.C.2. Further, in the event a dispute arises between Defendants and a Class member, the Settlement offers an appeal process, with the costs to be borne by Defendants. *Id.*, § III.D. When claims are approved, the Settlement provides for various methods of distribution, including digital payment. *Id.*, § III.F.

In sum, the Settlement provides substantial and comprehensive prospective and retrospective relief to all Class members on an equitable basis depending on the specific harm each person suffered because of the Defect. *See Conti v. Am. Honda Motor Co.*, 2022 U.S. Dist. LEXIS 1561, at *47 (C.D. Cal. Jan. 4, 2022) (granting final approval where "[t]he Settlement Agreement… strikes an appropriate balance among the various ways Class Members may have suffered because of the defects").

### 4. The extent of discovery and the stage of the proceedings support final approval.

This factor asks the Court to evaluate whether "the parties have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998). For purposes of this factor, "[d]iscovery can be both formal and informal." *Kearney v. Hyundai Motor Am.*, 2013 WL 3287996, at *6 (C.D. Cal. June 28, 2013).

As this Court previously found, "the parties have conducted sufficient discovery and investigation of the facts and law during the prosecution of this case prior to reaching a settlement." Dkt. No. 200 at 21. Plaintiffs conducted substantial pre- and post-filing investigations, which the comprehensive CAC demonstrates. *See* Leadership FA Decl., ¶ 14. Among other things, "Class Counsel reviewed publicly available sources of technical information, conducted hundreds of interviews with putative Class Members and potential class representatives, reviewed technical analyses relating to the design of the steering wheel columns and ignition assemblies

in the Class Vehicles, and consulted with automotive experts." Dkt. No. 200 at 21-22; Leadership FA Decl., ¶ 24. "After filing the CAC, the Parties exchanged initial disclosures, and Plaintiffs served Defendants with their first set of requests for production of documents on April 19, 2023. . . . The parties additionally researched the law as applied to the claims of Plaintiffs as well as potential defenses and damages." Dkt. No. 200 at 21-22; *see also* Leadership FA Decl., ¶ 27.

The strengths and weaknesses of Plaintiffs' claims were a frequent point of discussion throughout the mediations and briefed in Defendants' motion to dismiss the CAC. *See Lyter v. Cambridge Sierra Holdings,* 2019 WL 13153197, at *5 (C.D. Cal. June 18, 2019) (finding that the parties were sufficiently informed where they engaged in significant informal discovery and engaged in adversarial motion practice, including a motion to dismiss); *Mendoza v. Hyundai Motor Co.*, 2017 WL 342059, at *7 (N.D. Cal. Jan. 23, 2017) (finding this factor weighed in favor of final approval even in the absence of formal discovery and motion practice); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (finding "the Parties have a clear view of the strengths and weaknesses of their cases" even though a settlement was reached before the PSLRA stay on discovery was lifted).

Following the execution of the MOU, the Parties engaged in formal and informal confirmatory discovery, which continued until the filing of the instant motion. *See* Leadership FA Decl., ¶¶ 37-42. Plaintiffs' confirmatory discovery efforts focused upon the efficacy of the Software Upgrade and other means to address the alleged Defect, as well as the harms suffered by Class members. *See id.*. Following the production of 1,250 pages of documents and written responses to Plaintiffs' inquiries, Plaintiffs interviewed Defendants' expert.

Accordingly, the foregoing work conducted by Plaintiffs provided Class Counsel sufficient information to negotiate a highly favorable settlement on behalf of all Class

Members. *See In re Mego*, 213 F.3d at 459 (finding plaintiffs had "sufficient information to make an informed decision about the [s]ettlement" even though formal discovery had not been completed because Class Counsel had "conducted significant investigation, discovery and research, and presented the court with documentation supporting those services"); *Hardmon v. Ascena Retail Grp., Inc.*, 2022 WL 17572098, at *5-6 (C.D. Cal. Nov. 29, 2022) (finding this factor supported final approval even where the docket did "not reflect vigorous litigation" but plaintiffs' counsel "conducted extensive research and assessed the documents that were exchanged informally"); *Kearney*, 2013 WL 3287996, at *6 (despite settlement being reached prior to any dispositive motions, the parties demonstrated "that they have spent significant time investigating this action to allow for an informed decision, but not so much time that the settlement amount will be unnecessarily depleted by extensive costs and fees").

### 5.  The experience and views of Counsel support final approval.

As the Court recognized, "Class Counsel is experienced in consumer class actions, including having previously represented consumers in litigation against Hyundai and Kia." Dkt. No. 200 at 21. Based on their extensive investigations, including confirmatory discovery, Class Counsel believe that the Settlement offers an excellent result for the Class. Leadership FA Decl., ¶¶ 51-62; *see also Hardmon*, 2022 WL 17572098, at *6 ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Zakikhani*, 2023 WL 4544774, at *4 ("Where Class Counsel recommend the proposed terms of settlement, courts are to give their determination '[g]reat weight,' because counsel 'are most closely acquainted with the facts of the underlying litigation.'") (quoting *Nat'l Rural Telecomm.*, 221 F.R.D. at 528).

### 6.  The presence of a governmental participant supports final approval.

This factor looks to "the views of governmental participants" regarding the

Settlement.  *True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1082 (C.D. Cal. 2010).  In accordance with the governmental notice provision of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(a)-(b), on October 6, 2023, the Settlement Administrator gave timely notice of the proposed settlement to the United States Attorney General, as well the Attorneys General for each state, and the Attorney General for all possessions and territories of the United States. Platt Decl, ¶ 10.

In response to the filing of the initial settlement, the Governmental Entity Plaintiffs in this MDL stated that they "are pleased to see that Hyundai and Kia are taking initial steps to address the problems caused by Defendants' decisions to forgo the installation of engine immobilizers in many of their 2011–2022 model year vehicles…  and take no position on the sufficiency of the monetary relief provided or whether the proposed consumer settlement should be approved[.]" Dkt. No. 183 at 3. Five states attorneys general ("AGs") then filed a "letter to support the Governmental Entities' submission" and share their "perspective." Dkt. No. 186 at 1. "Just as the Governmental Entity Plaintiffs, [the AGs] take no position on the adequacy of the monetary relief provided in the Settlement Agreement." *Id*. at 4 n.8. Yet, the letter raises purported issues with the Settlement—none of which demonstrate that the Settlement is not fair, adequate, and reasonable. The AGs' August 2023 letter relies on unverified media reports concerning ongoing theft rates and the effectiveness of the Software Upgrade. *Id*. at 2-3. But as shown in the Declaration of James Smith filed by Defendants in connection with preliminary approval, the Software Upgrade adequately addresses the ability to steal the Class Vehicles using the TikTok method, and investigations of post-Software Upgrade reports of theft do not support the AGs' contention that the software fails to address the alleged Defect. Dkt. No. 230-1 at 9-15 (cited favorably in Dkt. No. 259 at 9). Further, since the AGs filed their letter, the theft rate for Class Vehicles has started to fall as more Class members bring their vehicles

into Hyundai and Kia dealerships. Leadership FA Decl., ¶ 60. As for the minority of Class Vehicles that are unable to receive the Software Upgrade, the rate of theft will drop further as these Class members obtain compensation for the installation of third-party anti-theft systems and the free ignition cylinder protector.

Ultimately, the AGs complained that "[n]one of the steps taken by Hyundai and Kia to date correct the underlying problem that their vehicles lack engine-immobilizer technology." Dkt. No. 186 at 3. Consequently, the AGs primarily lobbied for a "voluntary recall to install engine-immobilizer technology" in all Class Vehicles. Dkt. No. 186 at 4. But the unnamed governmental elephant-in-the-room, NHTSA, has made clear that "FMVSS No. 114[] does not require an engine immobilizer," Leadership FA Decl., ¶ 59 & Ex. 20, and in the absence of a violation of federal safety standards, NHTSA cannot compel a recall, nor are Defendants required to conduct one. Moreover, any attempt by Plaintiffs to compel the installation of engine immobilizer through this consumer protection class action would likely be preempted. *See* Dkt. No. 270 at 6 (finding Governmental Plaintiffs' claims were not preempted by federal law because "[t]he claims do not impose a narrow engine-immobilizer requirement as alleged by Defendants."); Dkt. No. 269 at 7-9 (same for Subrogation track); Dkt. No. 334 at 6 (dismissing City of Chicago's complaint because it "definitively rests its claims [on] the allegation that Defendants failed to use engine immobilizers" and "this specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement.").

Accordingly, this factor favors approval. *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 WL 12327929, at *18 (C.D. Cal. July 24, 2013) (finding the settlement "bears the silent imprimatur of government approval because despite receiving notice, no state or federal official has filed an objection to the proposed settlement.").

### 7.  The reaction of the Class supports final approval.

It is premature to consider this factor. The deadline for objecting is May 4, 2024. Class Counsel will respond to any objections lodged on the June 3, 2024, deadline. At this stage, this factor is neutral.

### 8.  The Settlement is not the product of collusion.

Collusion among settling parties can be found explicitly or in "more subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Bluetooth*, 654 F.3d at 947. Subtle signs of collusion include (1) "when counsel receive a disproportionate distribution of the settlement," (2) "when the parties negotiate a 'clear sailing' arrangement providing for the payment of attorneys' fees separate and apart from class funds," and (3) "when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund." *Id.* A mediator's involvement in the settlement supports the argument that a settlement is non-collusive. *Wallace v. Countrywide Home Loans, Inc.*, 2015 WL 13284517, at *7 (C.D. Cal. Apr. 17, 2015) (citing *Satchell v. Fed. Exp. Corp.*, 2007 WL 1114010, at *4 (N.D. Cal. Apr. 13, 2007)).

Here, the initial Settlement was reached after multiple mediation sessions over the course of eight months, under the guidance of the Hon. Margaret M. Morrow (Ret.), and further negotiated over the course of six weeks following the Court's initial Order denying preliminary approval. Leadership FA Decl., ¶¶ 16-34. Moreover, the Settlement does not include a clear sailing provision. *See* ASA § V. *See Hemphill v. San Diego Ass'n of Realtors*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("As a general principle, 'the courts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered.'" (quoting NEWBERG § 11.51)). And no amount of the common fund will revert to Defendants. *See* ASA § V.

After reaching agreement on the benefits to be provided to the Class, the Parties agreed that Class Counsel would petition the Court for an attorneys' fee and cost award, which Defendants can oppose at any level. ASA, §§ V.1; Dkt. No. 200 at 17. Further, although attorneys' fees are to be paid from the Common Fund, other benefits, including reimbursements for anti-theft systems installed in Class Vehicles not eligible for Software Upgrade, will not be affected by a fee award.

Finally, Class Counsel seeks fees and expenses of $13,403,485.60, which is approximately 9.2% of the value of the Common Fund or 4.9% of the total value of the Settlement. *See Scolaro v. RightSourcing, Inc.,* 2017 WL 11630969, at *7 (C.D. Cal. Mar. 20, 2017) (Selna, J.) (finding no signs of collusion or self-interest where attorneys' fees capped at 25% and settlement did not include a clear sailing agreement); *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist. LEXIS 158606, at *16 (C.D. Cal. Aug. 31, 2022) (finding no signs of collusion and that a attorneys' fees request for 25% of gross settlement amount is not a disproportionate share of the settlement); *Contreras v. Armstrong Flooring*, 2021 WL 4352299, at *8 (C.D. Cal. July 6, 2021) ("the Court is not concerned about collusion based on Class Counsel's fee request" equal to 25% of settlement fund).

In sum, "[t]he Settlement is the result of informed, good-faith, arm's-length negotiations between the Parties and their capable and experienced counsel and is not the result of collusion." Dkt. No. 256 at 2. *See Banh v. Am. Honda Motor Co.*, 2021 WL 3468113, at *6 (C.D. Cal. June 3, 2021) (no evidence of collusion where there was no clear sailing provision, "attorneys' fees will not diminish the benefits awarded to class members," and the settlement was reached after numerous mediations).

## C.    The Best Notice Practicable was Given to All Class Members.

Before approving a class settlement, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R.

Civ. P. 23(e)(1). Where the settlement class is certified under Rule 23(b)(3), the notice must also be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). *See Rannis v. Recchia*, 380 F. App'x 646, 650 (9th Cir. 2010) (Rule 23(c)(2)(B) "does not necessarily require that every in-state class member 'actually receive' notice.") (quoting *Silber v. Mabon,* 18 F.3d 1449, 1453-54 (9th Cir. 1994)). As to its contents, "'[n]otice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Kaupelis v. Harbor Freight Tools USA Inc.*, 2022 WL 2288895, at *7 (C.D. Cal. Jan. 12, 2022) (Selna, J.) (quoting *Rodriguez*, 563 F.3d at 962.

Here, the Court previously found that "the proposed notice meets the requirements of Rule 23(c)(2)(B)." Dkt. No. 200 at 32; *see also* Dkt. No. 256 at 3 ("The proposed notice plan and forms of notice satisfy Rule 23 and due process requirements"); Dkt. 259 at 22 (ordering "dissemination of notice to the Class pursuant to the proposed notice plan"). As discussed *supra* § II.B, the Claims Administrator substantially implemented the Class Notice plan, by providing notice through U.S. mail, email, nationwide press release, and dedicated settlement websites. Accordingly, all Class Members have an opportunity to opt-out or object and appear at the Fairness Hearing, and therefore, the notice plan satisfies Rule 23 and comports with due process. *See Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1129 (9th Cir. 2017) (noting that Rule 23 "does not insist on actual notice to all class members in all cases and recognizes it might be impossible to identify some class members for purposes of actual notice"); *In re Lithium Ion Batteries Antitrust Litig.*, 853 Fed. App'x 56, 59 (9th Cir. 2021) (affirming the adequacy of notice where not all class members received a direct mailing).

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court grant the final approval of the Settlement.

Dated: Dated: April 18, 2024          Respectfully Submitted.

By:  /s/ Steve W. Berman
    Steve W. Berman, Esq.
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
    1301 Second Avenue, Suite 2000
    Seattle, Washington 98101
    Telephone: 206-623-7292
    Facsimile: 206-623-0594
    Email: steve@hbsslaw.com

By:  /s/ Elizabeth A. Fegan
    Elizabeth A. Fegan, Esq.
    **FEGAN SCOTT LLC**
    150 S. Wacker Dr., 24th Floor
    Chicago, Illinois 60606
    Telephone:   312.741.1019
    Fax:            312.264.0100
    Email: beth@feganscott.com

By:  /s/ Kenneth B. McClain
    Kenneth B. McClain, Esq.
    **HUMPHREY FARRINGTON & McCLAIN**
    221 W. Lexington Ave., Suite 400
    Independence, Missouri 64050
    Telephone:   816.836.5050
    Facsimile:   816.836.8966
    Email: kbm@hfmlegal.com

By:  /s/ Roland Tellis
    Roland Tellis, Esq.
    **BARON & BUDD, P.C.**
    15910 Ventura Boulevard, Suite 1600

22

Encino, California 91436
Telephone: 818.839.2333
Facsimile:    214.523.5500
Email: rtellis@baronbudd.com

*Consumer Class Action Leadership Counsel
and Counsel for Plaintiffs*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,880 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 18, 2024.                    Respectfully Submitted.

By:  */s/ Steve W. Berman*
     Steve W. Berman, Esq.
     **HAGENS BERMAN SOBOL SHAPIRO LLP**
     1301 Second Avenue, Suite 2000
     Seattle, Washington 98101
     Telephone: 206-623-7292
     Facsimile: 206-623-0594
     Email: steve@hbsslaw.com