Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain
HUMPHREY FARRINGTON & McCLAIN, P.C.
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Plaintiffs' Consumer Class Action Leadership Committee*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.:   8:22-ml-03052-JVS-KES |
| | **CONSUMER CLASS PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR CLASS COUNSEL FEE AND EXPENSE AWARD AND CLASS REPRESENTATIVE AWARDS** |
| This document relates to:<br><br>ALL CONSUMER CLASS ACTION CASES | Judge: Hon. James V. Selna<br>Date:   July 15, 2024<br>Time:  1:30 p.m.<br>Courtroom:  10C |

PLEASE TAKE NOTICE that at 1:30 p.m. on July 15, 2024, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James V. Selna, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Courtroom 10C, Santa Ana, California 92701, Consumer Class Plaintiffs identified in pages 10-194 of the Consolidated Amended Class Action Complaint ("CAC") (Dkt. No. 84) ("Plaintiffs") will and hereby do move for an order of the Court awarding Class Counsel $13,403,485.60 in attorneys' fees and $244,526.81 in litigation expenses, as well as $1,000 to each Class Representative.

Plaintiffs' unopposed Motion is based on this Notice; the accompanying Memorandum of Law; the Joint Declaration of the Consumer Class Action Leadership Counsel ("Leadership FA Decl."), and all attachments thereto; the Proposed Order Granting Consumer Class Plaintiffs' Motion for Preliminary Approval of Class Action Settlement; and all other papers filed and proceedings had in this Action.

This Motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on April 18, 2024. Defendants do not oppose an award of reasonable fees costs, and will assess the specifics of this motion.

Dated: April 18, 2024.                    Respectfully Submitted.

By:  /s/ Steve W. Berman
      Steve W. Berman, Esq.
      **HAGENS BERMAN SOBOL SHAPIRO LLP**
      1301 Second Avenue, Suite 2000
      Seattle, Washington 98101
      Telephone: 206-623-7292
      Facsimile: 206-623-0594
      Email: steve@hbsslaw.com

By:  /s/ Elizabeth A. Fegan
      Elizabeth A. Fegan, Esq.
      **FEGAN SCOTT LLC**

iii

150 S. Wacker Dr., 24th Floor
Chicago, Illinois 60606
Telephone:   312.741.1019
Fax:          312.264.0100
Email: beth@feganscott.com

By:  _/s/ Kenneth B. McClain_____
Kenneth B. McClain, Esq.
**HUMPHREY FARRINGTON & McCLAIN**
221 W. Lexington Ave., Suite 400
Independence, Missouri 64050
Telephone:   816.836.5050
Facsimile:   816.836.8966
Email: kbm@hfmlegal.com

By:  _/s/ Roland Tellis_____
Roland Tellis, Esq.
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: 818.839.2333
Facsimile:   214.523.5500
Email: rtellis@baronbudd.com

*Consumer Class Action Leadership Counsel and Counsel for Plaintiffs*

1

# **TABLE OF CONTENTS**

I.    INTRODUCTION ............................................................................. 1

II.   FACTUAL BACKGROUND ............................................................ 2

   A.   History of the Litigation. ......................................................... 2

   B.   Settlement Negotiations and the Proposed Settlement. ........... 5

   C.   Certification of the Settlement Class and Preliminary Approval. .................. 6

III.  ARGUMENT ................................................................................... 7

   A.   Class Counsel are Entitled to Compensation Based upon the Benefits Created by the Litigation. .................. 8

   B.   The Percentage-of-the-Fund Method is the Appropriate Method for Calculating Attorneys' Fees in this Circuit and in this Case. .................. 8

   C.   The Requested Fee is Fair and Reasonable as a Percentage of the Benefits Achieved for the Class. .................. 10

       1.   The results achieved support the requested award. .................. 11

       2.   The substantial risks and complexity of the litigation support the requested award. .................. 13

       3.   The skill required and quality of work performed by Class Counsel support the requested award. .................. 14

       4.   The contingent nature of the fee supports the requested award.   15

       5.   Awards made in similar cases support the requested award. .................. 16

       6.   The reaction of the Class supports the requested award. .................. 17

       7.   The lodestar cross-check confirms the requested fee's reasonableness. .................. 18

   D.   Class Counsel's Expenses are Reasonable and Necessarily Incurred to Benefit the Class. .................. 20

   E.   An Award of Compensation to the Named Plaintiffs and Class Representatives is Appropriate. .................. 21

IV.   CONCLUSION ................................................................................ 22

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adderley v. NFL Players Ass'n*,
   2009 U.S. Dist. LEXIS 115742
   (N.D. Cal. Nov. 23, 2009) ...................................................................16

*In re Animation Workers Antitrust Litig.*,
   2016 U.S. Dist. LEXIS 156720
   (N.D. Cal. Nov. 11, 2016) ...................................................................20

*Beaver v. Tarsadia Hotels*,
   2017 U.S. Dist. LEXIS 160214
   (S.D. Cal. Sep. 28, 2017)....................................................................17

*Bendorf, et al. v. Kia America, Inc., et al.*,
   No. 4:22-cv-00465-RK (W.D. Mo.).......................................................2

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) .................................................................8

*Blum v. Stenson*,
   465 U.S. 886 (1984).............................................................................19

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980)...............................................................................8

*Bouman v. Block*,
   940 F.2d 1211 (9th Cir. 1991) .............................................................19

*Briggs v U.S.*,
   2010 U.S. Dist. LEXIS 50990
   (N.D. Cal. Apr. 30, 2010) ....................................................................16

*Camacho v. Bridgeport Fin., Inc.*,
   523 F.3d 973 (9th Cir. 2008) ...............................................................19

*Canava v. Rail Delivery Servs. Inc.*,
   2022 WL 18359143 (C.D. Cal. Dec. 2, 2022)......................................21

*Class Plaintiffs v. Jaffe & Schlesinger*,
   19 F.3d 1306 (9th Cir. 1994) ................................................................. 16

*Cohen, et al. v. Kia America, Inc., et al.*,
   No. 8:22-cv-01664 (C.D. Cal.) ................................................................ 2

*In re Critical Path, Inc. Secs. Litig.*,
   2002 U.S. Dist. LEXIS 26399
   (N.D. Cal. June 18, 2002) ........................................................... 15, 19

*Gerstein v. Micron Tech., Inc.*,
   1993 U.S. Dist. LEXIS 21215
   (D. Idaho Sept. 10, 1993) ...................................................................... 10

*In re Google Referrer Header Privacy Litig.*,
   869 F.3d 737 (9th Cir. 2017) ................................................................. 18

*Grove v. Wells Fargo Fin. Cal., Inc.*,
   606 F.3d 577 (9th Cir. 2010) ................................................................. 19

*Gutierrez v. Amplify Energy Corp.*,
   2023 U.S. Dist. LEXIS 72861
   (C.D. Cal. Apr. 24, 2023) ........................................................................ 9

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ...................................................... 8, 9, 16

*In re Heritage Bond Litig.*,
   2005 U.S. Dist. LEXIS 13627
   (C.D. Cal. June 10, 2005) ........................................................... 13, 15

*Herrera v. Wells Fargo Bank, N.A.*,
   2021 U.S. Dist. LEXIS 221364
   (C.D. Cal. Nov. 16, 2021) (Selna, J.) ...................................... 16, 17, 20, 21

*In re Hyundai & Kia Fuel Econ. Litig.*,
   926 F.3d 539 (9th Cir. 2019) ................................................................... 8

*In re Immune Response Sec. Litig.*,
   497 F. Supp. 2d 1166 (S.D. Cal. 2007) ................................................. 20

*Ingram v. Coca-Cola Co.*,
   200 F.R.D. 685 (N.D. Ga. 2001) .......................................................... 21

*Kakani v. Oracle Corp.*,
  2007 U.S. Dist. LEXIS 95496
  (N.D. Cal. Dec. 21, 2007) ................................................................. 19

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ............................................................. 9

*Knight v. Red Door Salons, Inc.*,
  2009 U.S. Dist. LEXIS 11149
  (N.D. Cal. Feb. 2, 2009) .................................................................. 15

*Martin v. Toyota Motor Credit Corp.*,
  2022 U.S. Dist. LEXIS 208358
  (C.D. Cal. Nov. 15, 2022) (Selna, J.) ......................................... 17, 19

*Mashburn v. National Healthcare, Inc.*,
  684 F. Supp. 679 (M.D. Ala. 1988) .................................................... 8

*McNerney v. Kia America, Inc.*,
  No. 8:22-cv-01548 (C.D. Cal.) ......................................................... 2

*Morrow et al. v. Hyundai Motor America, Inc. et al.*,
  No. 8:22-cv-01674 (C.D. Cal.) ......................................................... 2

*Nitsch v. DreamWorks Animation SKG Inc.*,
  2017 U.S. Dist. LEXIS 86124
  (N.D. Cal. June 5, 2017) ................................................................. 20

*Ochinero v. Ladera Lending*,
  2021 U.S. Dist. LEXIS 192406
  (C.D. Cal. July 19, 2021) (Selna, J) ............................................. 9, 18

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ......................... 9, 13, 15, 18, 20

*In re Oracle Sec. Litig.*,
  852 F. Supp. 1437 (N.D. Cal. 1994) ................................................. 10

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ......................................................... 8, 9

*Pennsylvania v. Delaware Valley Citizens'
  Council for Clean Air*,
  483 U.S. 711 (1987) ....................................................................... 19

*Perez v. Rash Curtis & Assocs.*,
2020 U.S. Dist. LEXIS 68161
(N.D. Cal. Apr. 17, 2020) ...................................................................... 18

*In re Petroleum Prods. Antitrust Litig.*,
109 F.3d 602 (9th Cir. 1997) ................................................................. 16

*Pinto v. Princess Cruise Lines*,
513 F. Supp. 2d 1334 (S.D. Fla. 2007) ................................................... 8

*Powers v. Eichen*,
229 F.3d 1249 (9th Cir. 2000) ............................................................... 16

*Ramirez v. Rite Aid Corp.*,
2022 U.S. Dist. LEXIS 109069
(C.D. Cal. May 3, 2022) ........................................................................ 17

*In re Rite Aid Corp. Sec. Litig.*,
146 F. Supp. 2d 706 (E.D. Pa. 2001) ..................................................... 18

*In re Rite Aid Corp. Secs. Litig.*,
396 F.3d 294 (3d Cir. 2005) .................................................................. 15

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ................................................................. 21

*Singer v. Becton Dickinson & Co.*,
2010 U.S. Dist. LEXIS 53416
(S.D. Cal. June 1, 2010) ......................................................................... 21

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
904 F.2d 1301 (9th Cir. 1990) ........................................................... 9, 10

*In re Southern Ohio Correctional Facility*,
175 F.R.D. 270 (S.D. Ohio 1997) .......................................................... 21

*Spann v. J.C. Penney Corp.*,
211 F. Supp. 3d 1244 (C.D. Cal. 2016) .................................................. 19

*State Automobile Mutual Insurance Company
et al. v. Hyundai Motor America et al.*,
No. 8:23-cv-00443 (C.D. Cal. Mar. 10, 2023) ........................................ 3

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................... 9, 21

*Steiner v. American Broad. Co.*,
   248 Fed. Appx. 780 (9th Cir. 2007) ................................................... 19

*In re Thirteen Appeals Arising out of the San*
   *Juan Dupont Plaza Hotel Fire Litig.*,
   56 F.3d 295 (1st Cir. 1995) .................................................................. 8

*Torrisi v. Tucson Elec. Power Co.*,
   8 F.3d 1370 (9th Cir. 1993) ................................................................ 16

*In re Toyota Motor Corp. Unintended Acceleration*
   *Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2013 U.S. Dist. LEXIS 94485
   (C.D. Cal. June 17, 2013) .................................. 10, 11, 13, 15, 16, 18, 20

*In re Toyota Motor Corp. Unintended Acceleration*
   *Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2013 U.S. Dist. LEXIS 123298
   (C.D. Cal. July 24, 2013) (Selna, J.) .............................................. 9, 11

*Van Vranken v. Atlantic Richfield Co.*,
   901 F. Supp. 294 (N.D. Cal. 1995) ............................................... 18, 21

*Vasquez v. Coast Valley Roofing, Inc.*,
   266 F.R.D. 482 (E.D. Cal. 2010) ....................................................... 21

*Velez v. Roche*,
   2004 U.S. Dist. LEXIS 29848
   (N.D. Cal. Sept. 22, 2004) ................................................................. 19

*Vizcaino v. Microsoft*,
   142 F. Supp. 2d 1299 (W.D. Wash. 2001) ......................................... 18

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................. 9, 10, 15, 16, 18, 19

*In re Washington Pub. Power Supply*
   *Sys. Sec. Litig.*,
   19 F.3d 1291 (9th Cir. 1994) .................................... 10, 13, 15, 16, 19

**Statutes & Rules**

28 U.S.C. § 1407 ................................................................................................ 2

Fed. R. Civ. P. 23 ........................................................................................ 7, 14

# I.   INTRODUCTION

After delivering an outstanding Settlement with a value exceeding $275 million, Class Counsel seeks an order awarding from the common fund (1) $13,403,485.60 in attorney fees, (2) actual costs of $244,526.81 for reimbursement of reasonably incurred litigation expenses, and (3) $1,000 to each named Consumer Class Plaintiff as service awards.

As discussed below and more fully in Plaintiffs' Motion for Final Approval, the Settlement offers significant relief to Class members in the form of: (1) a non-reversionary common fund of up to $145,000,000, but no less than $80,000,000 for losses stemming from the thefts and attempted thefts of Class Vehicles; (2) the installation of a free anti-theft Software Upgrade to address the method of theft popularized on TikTok, which underlies the Consumer Class Plaintiffs' claims; and (3) cash payments of up to $300 (which are paid separately from the common fund and uncapped) to Class members whose vehicles are not eligible for the Software Upgrade for their purchase of equivalent anti-theft systems. To date, Defendants have received over $230 million in claims on the Common Fund and have spent tens-of-millions of dollars in connection with the Software Upgrade.

Counsel's fee request, applying a reasonable 2.0 multiplier of lodestar, represents 4.9% of the total Settlement value, which includes more than $130 million for a robust Class notice program and the costs incurred to date by Defendants to roll out the Software Upgrade, and a modest 9.2% of the $145,000,000 cash fund. Given the excellent result achieved for the Class, the substantial risks and complexity of this first of its kind litigation, the contingent nature of the fee, the work performed by Class Counsel, awards made in similar cases, and the reaction of the Class, Plaintiffs submit that the fee and expense requests are reasonable and respectfully request the Court approve them. The requested class representative service awards are also at the bottom end of the range approved by this Court and are warranted here in recognition

of the Consumer Class Plaintiffs' commitment to this important litigation, which were indispensable to its successful resolution.

## II.    FACTUAL BACKGROUND

### A.    History of the Litigation.

As the epidemic of Class Vehicle thefts spread throughout the country, dozens of class actions were filed nationwide based on Defendants' omission of anti-theft devices in Class Vehicles. Leadership FA Decl., ¶ 9. Beginning in July 2022, dozens of class actions were filed by consumers nationwide against Defendants relating to this alleged defect. On July 21, 2022, Humphrey Farrington & McClain filed a class action complaint relating to the Theft Prone Defect styled: *Bendorf, et al. v. Kia America, Inc., et al.*, No. 4:22-cv-00465-RK (W.D. Mo.). On August 19, 2022, Hagens Berman filed a class action complaint relating to the Theft Prone Defect styled: *McNerney v. Kia America, Inc.*, No. 8:22-cv-01548 (C.D. Cal.). On September 9, 2022, Fegan Scott filed a class action complaint relating to the Theft Prone Defect styled: *Cohen, et al. v. Kia America, Inc., et al.*, No. 8:22-cv-01664 (C.D. Cal.). On September 12, 2022, Baron &Budd filed a class action complaint relating to the Theft Prone Defect styled: *Morrow et al.  v.  Hyundai Motor America, Inc. et al.*, No. 8:22-cv-01674 (C.D. Cal.). Leadership FA Decl., ¶¶ 10-13.

Prior to filing these complaints, our firms undertook significant independent investigations, which included a review of publicly available sources of technical information, research into the design of the steering wheel columns and ignition assemblies in the Class Vehicles, analysis of online victim reports relating to the Theft Prone Defect, and discussions with numerous putative class members. Our investigations continued post-filing and throughout the course of the litigation. Leadership FA Decl., ¶ 4. By the end of August 2022, at least fifteen putative class actions relating to the Theft Prone Defect were filed across the country. On August 31, 2022, a group of plaintiffs moved for consolidation pursuant to 28 U.S.C. § 1407.

MDL No. 3052 ("JPML Dkt."), Dkt. 1; Leadership FA Decl., ¶ 15. On December 13, 2022, the Judicial Panel on Multidistrict Litigation ("JPML") issued an order transferring related actions from fourteen District Courts to this Court for consolidation and pre-trial coordination. Leadership FA Decl., ¶ 18. Cases from more than two-dozen District Courts are currently pending in this MDL.

Shortly after the MDL was established, the JPML conditionally transferred related cases filed by several cities alleging public nuisance caused by the Defect. *See* JPML Dkt. Nos. 142, 154, 159. Additionally, on March 10, 2023, a group of insurance plaintiffs (the "Subrogation Plaintiffs") filed a class action complaint on behalf of similarly situated insurance companies, and on March 21, 2023, the case was transferred to the MDL proceeding. *See State Automobile Mutual Insurance Company et al. v. Hyundai Motor America et al.*, No. 8:23-cv-00443 (C.D. Cal. Mar. 10, 2023) (Dkt. 1, 16).

On December 22, 2022, the Court appointed Mr. Berman, Ms. Fegan, and Mr. McClain as Initial Conference Counsel, tasked with conferring and obtaining consensus regarding the most pressing issues affecting the case. Dkt. No. 2 at 2. On January 30, 2023, Initial Conference Counsel and Defendants submitted their Joint Preliminary Report outlining their respective positions regarding, *inter alia*, an appropriate leadership structure for Plaintiffs' counsel, plans for discovery, and various anticipated issues in the litigation. Dkt. No. 40. On February 9, 2023, the Court appointed Mr. Berman, Ms. Fegan, Mr. McClain, and Mr. Tellis to the Plaintiffs' Consumer Class Action Leadership Committee. Dkt. No. 50 at 3. The Court also appointed Jeffrey Goldenberg, Amanda K. Klevorn, and Tiffany Marko Yiatras to the Fact Discovery Committee, and Jason S. Rathod, Michael F. Ram, and Matthew D. Schelkopf to the Expert Discovery Committee. *Id.*

Immediately upon their appointment to the Plaintiffs' Consumer Class Action Leadership Committee, Class Counsel began a comprehensive effort to draft a

consolidated complaint that details the factual, regulatory, and legal issues relating to the Defect. Leadership FA Decl., ¶ 24. Counsel conducted an extensive investigation concerning the Defect and spoke with hundreds of putative Class members. *Id.*

On April 10, 2023, Plaintiffs filed their 897-page Consolidated Amended Consumer Class Action Complaint ("CAC"). Dkt. No. 84. The CAC includes eighty-five Plaintiffs and asserts claims under the laws of all 50 states. CAC, ¶¶ 37-1206, 1536-4817. In general, Plaintiffs assert claims for (1) violation of state consumer protection statutes, (2) breach of implied warranty, (3) fraud by omission and concealment, and (4) unjust enrichment. *Id.*, ¶¶ 1536-4817.

The Parties submitted an agreed-upon ESI Order, Protective Order, and a Joint Stipulation Regarding Foreign Discovery on April 5, 2023. Dkt. No. 79. The Parties exchanged initial disclosures on April 14, 2023. Leadership FA Decl., ¶ 27. On April 19, 2023, Plaintiffs served HMA and KA with their First Set of Requests for Production of Documents. *Id.*

On May 1, 2023, Defendants moved to dismiss the CAC. Dkt. No. 95. In accordance with the Court's March 13, 2023, Order (Dkt. No. 70), their motion addressed the laws of California, Florida, Missouri, Pennsylvania, Texas, and New York. Plaintiffs immediately analyzed the motion and began working on their opposition. Leadership FA Decl., ¶ 28. Class Counsel continued to litigate the case to be sure they were fully informed of the strength and weakness of their positions and the risks they faced at class certification and trial, even while settlement negotiations continued.

On May 19, 2023, the Court stayed all deadlines unrelated to settlement approval in the Consumer Class Plaintiffs' cases considering the Parties' settlement in principle. Dkt. No. 111.

**B.**     **Settlement Negotiations and the Proposed Settlement.**

The litigation has proceeded on simultaneous, dual tracks. In late 2022, while consolidation was pending before the JPML, the Parties began settlement discussions. Leadership FA Decl., ¶ 16. On November 15, 2022, a mediation session was conducted before the Honorable Margaret M. Morrow (Ret.). *Id.*, ¶ 17. Although the mediation was productive, the Parties did not reach a resolution.

After the Initial Status Conference on December 22, 2022 (Dkt. 2), the Parties reinitiated settlement discussions. *Id.*, ¶ 20. These negotiations continued over the next month, and the Parties exchanged multiple drafts of a memorandum of understanding. *Id.*, ¶¶ 25-26. The Parties participated in additional mediation sessions with Judge Morrow on April 4 and 5, 2023. *Id.*, ¶ 26.

On May 18, 2023, the Parties notified the Court they had reached a settlement in principle and executed a Memorandum of Understanding ("MOU"). *See* Dkt. No. 107. The general terms of the MOU, which are memorialized in the Settlement Agreement (Dkt. No. 247-1, "ASA"), were publicly disseminated by the Parties in press releases and widely covered in the media. Leadership FA Decl., ¶¶ 29-31. In addition to the robust benefits for Class members, the MOU entitled Plaintiffs to confirmatory discovery to obtain information necessary to support the Settlement terms, including the nature and scope of the Software Upgrade, and provides that Defendants will pay all costs and expenses for class notice and claims administration. *Id.*, ¶ 32.

Shortly after the Parties executed the MOU, they began negotiating and drafting the Settlement Agreement and Plaintiffs went to work on confirmatory discovery. *Id.*, ¶¶ 33, 37.

After the Court issued its Order granting class certification and denying Plaintiffs' initial preliminary approval motion (discussed below), the Parties began

1  additional negotiations aimed at satisfying the directives of the Order. These talks
2  took approximately six weeks and concluded with executing an Amended Settlement
3  Agreement. *Id.*, ¶ 34.

4  **C.    Certification of the Settlement Class and Preliminary Approval.**

5          On July 20, 2023, Plaintiffs filed their motion for preliminary approval of the
6  first iteration of the Settlement and sought certification of the Settlement Class. Dkt.
7  No. 166. On August 16, 2023, the Court issued its order granting the motion for
8  certification and denying the motion for preliminary approval. Dkt. No. 200. In its
9  Order, the Court identified several issues with the initial settlement and allowed
10 Plaintiffs to file an amended motion for preliminary approval. *Id.*

11         On September 27, 2023, Plaintiffs filed their amended motion for preliminary
12 approval, which sought approval of the Amended Settlement Agreement. Dkt. No.
13 228. On October 31, 2023, the Court granted the amended motion and ordered
14 dissemination of notice to the Class pursuant to the Settlement's notice plan. Dkt.
15 Nos. 256, 259.

16 **D.    Confirmatory Discovery.**

17         On May 18, 2023, Plaintiffs served Defendants with their first set of Requests
18 for Production of Documents ("Requests for Production"). Leadership FA Decl., ¶
19 37. The Requests for Production sought documents relating to, *inter alia*: (1)
20 Defendants' investigation about the theft risk in Class Vehicles; (2) Defendants'
21 interactions with NHTSA concerning the alleged Defect; (3) the development,
22 efficacy, and roll-out of the Software Upgrade remedy; (4) insurance coverage for
23 Class Vehicles; and (5) Defendants' efforts to mitigate the risk of theft in Class
24 Vehicles.

25         On December 13, 2023, Plaintiffs served their second set of Requests for
26 Production, which sought records relating to, *inter alia*, Defendants' analyses
27 concerning the efficacy of the Software Update and the analyses performed by

28

Defendants' expert, James Smith of Exponent, relating to the same. *Id.*, ¶ 38. The Parties conducted several meet and confers concerning the two sets of Requests for Production. *Id.* Defendants produced, and Plaintiffs analyzed, 1,250 pages of documents, along with written responses provided instead of documents for certain requests. *Id.*

Plaintiffs also interviewed Mr. Smith. *Id.*, ¶ 40. Plaintiffs' examination of Mr. Smith concerned Defendants' development of the Software Upgrade, a technical analysis of the Software Upgrade and how it operates, incidents of Class Vehicle thefts which had the Software Upgrade installed in the vehicles, Defendants' roll-out of the Software Upgrade, and anti-theft devices made available to Class Vehicles that are not eligible for the Software Upgrade, including the ignition cylinder protectors announced by Defendants in December 2023. *Id.*

In addition to confirmatory discovery, as part of their efforts to confirm the fairness and adequacy of the Settlement, Plaintiffs continued to conduct independent investigations relating to the efficacy of the Software Upgrade. *Id.*, ¶ 41. Among other things, Plaintiffs monitored the theft rate and theft methods reported since the Settlement was reached and the Software Upgrade began to rollout to Class members, spoke with hundreds of Class members relating to their experiences and the effectiveness of the Software Upgrade, and analyzed alleged insurance coverage and pricing trends for Class Vehicles. *Id.* Plaintiffs' investigation demonstrated that the Software Upgrade was thoroughly tested and appears to be effective. *Id.*, ¶ 42.

## III.   ARGUMENT

Rule 23 permits a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement

itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).[1]

### A. Class Counsel are Entitled to Compensation Based upon the Benefits Created by the Litigation.

A lawyer who recovers "a common fund for the benefit of persons other than himself or his client" is entitled to reasonable attorney fees from the fund. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980). The common-fund doctrine's fundamental purpose is to spread the burden of a party's litigation expenses among those who are benefited. *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271 (9th Cir. 1989). Indeed, the doctrine "is founded on the equitable principle that those who have profited from litigation should share its costs." *In re Thirteen Appeals Arising out of the San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 n.6 (1st Cir. 1995).

Substantial fee awards in successful cases, such as the present action, encourage and support meritorious class actions, and promote private enforcement of, and compliance with, consumer protection laws. Moreover, awards of attorney fees help to ensure adequate enforcement of class members' legal rights. "[A] financial incentive is necessary to entice capable attorneys, who otherwise could be paid regularly by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Pinto v. Princess Cruise Lines*, 513 F. Supp. 2d 1334, 1338 (S.D. Fla. 2007) (quoting *Mashburn v. National Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988)).

### B. The Percentage-of-the-Fund Method is the Appropriate Method for Calculating Attorneys' Fees in this Circuit and in this Case.

"Courts in this circuit determine attorney's fees in class actions using either the lodestar method or the percentage-of-recovery method." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (*citing Hanlon v. Chrysler Corp.*, 150

---

[1] Internal citations and quotations omitted and emphasis added throughout, unless otherwise indicated.

F.3d 1011, 1029 (9th Cir. 1998)). Percentage-of-the-Fund has become the prevailing method for awarding fees in common fund cases in the Ninth Circuit. *See*, *e.g.*, *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ("a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"); *Paul, Johnson*, 886 F.2d at 272; *Ochinero v. Ladera Lending*, 2021 U.S. Dist. LEXIS 192406, at *21 n.2 (C.D. Cal. July 19, 2021) (Selna, J) ("Despite this discretion, use of the percentage method in common fund cases appears to be dominant."). In the percentage method, "the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee," using 25% as a benchmark. *Hanlon*, 150 F.3d at 1029; *cf. Gutierrez v. Amplify Energy Corp.*, 2023 U.S. Dist. LEXIS 72861, at *21 (C.D. Cal. Apr. 24, 2023) ("However, in most common fund cases, the award exceeds that 25% benchmark.").

In determining the value of the settlement, courts also consider benefits provided to class members outside the fund as well as non-monetary benefits conferred. *Staton v. Boeing Co.*, 327 F.3d 938, 973-74 (9th Cir. 2003) (value of non-monetary benefits may be considered as part of the value of a common fund for purposes of applying the percentage method of determining fees if the non-monetary benefits can reasonably be valued); *Hanlon*, 150 F.3d at 1029 (same); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prods. Liab. Litig.*, 2013 U.S. Dist. LEXIS 123298, at *298 (C.D. Cal. July 24, 2013) (Selna, J.).

The percentage method is desirable because it most fairly correlates the compensation of counsel with the benefit conferred upon the class. *See In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (citing authorities that describe the advantages of using the percentage method). It aligns the lawyers' interest in being paid a fair fee with the interest of the class in achieving the maximum possible recovery in the shortest amount of time. *Kirchoff v. Flynn*, 786

F.2d 320, 325 (7th Cir. 1986); *In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1454 (N.D. Cal. 1994). Further, it decreases the burden imposed on courts by eliminating a detailed and time-consuming lodestar analysis and assuring that the beneficiaries do not experience undue delay in receiving their share of the settlement. *See, e.g., Gerstein v. Micron Tech., Inc.*, 1993 U.S. Dist. LEXIS 21215, at *14 (D. Idaho Sept. 10, 1993). It is also consistent with the practice in the private marketplace where contingent-fee attorneys are customarily compensated by a percentage of the recovery.

"The benchmark percentage should be adjusted, or replaced with a lodestar calculation, when special circumstances indicate that the percentage recovery would be either too small or too large in light of the hours devoted to the case or other relevant factors." *In re Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 94485, *205-206 (C.D. Cal. June 17, 2013) (approving fee of approximately 12.3% of the total settlement value) (quoting *Six (6) Mexican Workers*, 904 F.2d at 1311). The Ninth Circuit also encourages district courts to employ an enhanced lodestar analysis to cross-check the reasonableness of the result. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, ("*WPPSS*"), 19 F.3d 1291, 1296-98 (9th Cir. 1994); *Vizcaino*, 290 F.3d at 1050.

## C.   The Requested Fee is Fair and Reasonable as a Percentage of the Benefits Achieved for the Class.

The requested fee of $12,438,308 represents 9.2% of the $145,000,000 common fund,[2] which falls well below the 25% benchmark. When adding the cost of Class notice and settlement administration and expenses incurred in connection with the Software Upgrade ($104.5 million), the requested fee represents approximately

---

[2] Based on the claims filed to date of over $230 million, the Parties anticipate that Defendants will pay $145,000,000 in valid claims. Regardless, even if evaluating Plaintiffs' fees request based on a percentage of the minimum non-reversionary common fund of $80,000,000, the request equates to 16.8% of the fund and still reasonable and consistent with fee awards in the Ninth Circuit.

4.9% of the total $275,500,000 Settlement value. *In re Toyota .,* 2013 U.S. Dist. LEXIS 123298, at *298 n.7  (adding the value of non-monetary benefits, including a software solution for vehicle defect, and the cost of notice and administration to the total settlement value).[3]

Nonetheless, the Court "must consider whether this percentage should be adjusted based on all the circumstances." *In re Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 94485, at *209. Courts in this Circuit consider the following factors: (i) the results achieved; (ii) the risks and complexity of the litigation; (iii) the skill of counsel; (iv) the contingent nature of the fee; (v) awards made in similar cases; (vi) reaction of the class to the proposed fee and expense requests; and (vii) a lodestar cross-check. *Id.*, at *209-220. As discussed below, applying these factors here confirms that the requested fee is reasonable and justified.

### 1.    The results achieved support the requested award.

This is an ***excellent*** settlement by any metric. The non-reversionary common fund of up to $145 million is an outstanding result for the Class. This common fund will be used to compensate Class members for out-of-pocket and unreimbursed losses stemming from the thefts and attempted thefts of their Class Vehicles, such as car rentals or ride shares, up to the value of a total loss of the vehicle. Despite claim caps that generally reflect discounts based on litigation risk, "most insured class members are likely to receive near full compensation for their qualifying [theft or attempted theft], even based upon risk-adjusted payment amounts." *See* Declaration of Edward M. Stockton, Dkt. 228-3 ¶ 44. And the probability that uninsured Class members can be exposed to large monetary losses that would not be compensated for in the Settlement "is infrequent." *Id*. ¶ 16.[4] The fund will also be used to cover certain expenses related to obtaining the Software Upgrade. ASA § III.D.5.a.

---

[3] As noted below, the Settlement provides for other monetary and non-monetary benefits to Class members.

[4] The reason why this is the case is: (1) fewer than 25% of Class members are

The Settlement also provides monetary compensation that will be paid outside of the common fund and have no aggregate caps. For example, Class members who purchased a steering wheel lock prior to the availability of the Software Upgrade can make a claim for reimbursement up to $50. ASA § II.B.1. Based on the total number of Class Vehicles (8,937,817 per Defendants' interrogatory responses), this could provide up to $446 million in additional cash reimbursements paid outside of the common fund to Class members. Class members that own Class Vehicles that are not eligible for the Software Upgrade are also entitled to reimbursements for up to $300 for the cost to install an alternative anti-theft device. ASA §§ I.Z., II.C. Again, these cash payments to Class members are not taken from the common fund and based on the total number of qualifying Class Vehicles, could exceed $500 million. *Id.*

In addition to the common fund and reimbursements for qualifying anti-theft devices, Defendants have incurred substantial costs providing other material benefits to the Class. Pursuant to the Settlement, Defendants have and will continue to incur the cost of Class notice and settlement administration. ASA § II.E. Additionally, the Settlement includes a free anti-theft Software Upgrade for eligible Class Vehicles. To date, more than 6.9 million Class Vehicles, or approximately 75%, are eligible for the Software Upgrade. Defendants warrant the Software Upgrade will work as designed for the life of the Class Vehicle and will extend the availability of the Software Upgrade. *See id.* § II.A.5.   As of March 15, 2024, the costs of notice and administration and the costs of developing and implementing the Software Upgrade exceed $130 million, which will increase as more Class members bring their Class Vehicles into dealerships to install the Software Upgrade. Leadership FA Decl., ¶ 43.

---

estimated to not have insurance coverage for thefts; and (2) uninsured vehicles are likely to be "low-value vehicles" with damages not exceeding $10,000. Dkt. No. 228-3 at ¶ 16.

Finally, the Settlement includes other non-monetary benefits. Defendants issued a nationwide press campaign promoting the Software Upgrade and discussing its availability and effectiveness at preventing vehicle thefts, which included publication on social media platforms. ASA § II.A.6; Leadership FA Decl., ¶ 46. Class Counsel also worked with Defendants on the form and content of a driver awareness and instructional campaign regarding the Software Upgrade. *Id*. The results achieved strongly support the requested award.

## 2.   The substantial risks and complexity of the litigation support the requested award.

The risk that further litigation might result in Plaintiffs not recovering at all is an important factor in determining a fair fee award. *See*, *e.g.*, *In re Toyota Motor Corp.*, 2013 U.S. Dist. LEXIS 94485, at *213; *Omnivision*, 559 F. Supp. 2d at 1047; *WPPSS*, 19 F.3d at 1299-1301; *see also In re Heritage Bond Litig.*, 2005 U.S. Dist. LEXIS 13627, at *44 (C.D. Cal. June 10, 2005) ("[t]he risks assumed by Class Counsel, particularly the risk of non-payment or reimbursement of expenses, is a factor in determining counsel's proper fee award"). Although Plaintiffs believe that their claims have merit, Class Counsel acknowledges the significant risks and expense necessary to prosecute the Consumer Class Plaintiffs' claims through trial and subsequent appeals, as well as the inherent difficulties and delays complex litigation like this entails. Indeed, this Court has already recognized that "there are substantial risks for the Class should the case proceed to trial" and that "[i]n addition to the level of risk, expense, and complexity typically present in class actions, there are several other risk factors present in this case." Dkt. No. 200 at 26.

Based on their experience, Class Counsel believes that Defendants would argue throughout this litigation that: (1) the Class Vehicles are not defective, and that the vast majority of Class Vehicles have not experienced a manifestation of the Defect (*i.e.*, theft); (2) even if the Defect did exist, Defendants did not have pre-sale knowledge of its existence; (3) a class cannot be certified given the size and scope of

13

the Class; (4) the Consumer Class Plaintiffs' claims rest upon novel and untested theories of liability which may not withstand summary judgment or an appeal; (5) the Consumer Class Plaintiffs' claims depend upon a finding that the Class Vehicles do not comply with federal standards and that the criminal actions of third parties do not eliminate Defendants' liability, yet NHTSA advised the California Attorney General that NHTSA has not determined that this issue constitutes either a safety defect or noncompliance requiring a recall under the National Traffic and Motor Vehicle Safety Act and that the relevant Federal Motor Vehicle Safety Standard, FMVSS No. 114, does not require an engine immobilizer; and (6) while the Consumer Class Plaintiffs would strongly resist such a comparison, it is also likely that Defendants will cite the Court's recent decision in the City of Chicago's case as a basis to claim that their claims are similarly preempted.

Even if the Consumer Class Plaintiffs were to overcome Defendants' arguments, Class members would face several more years of hard-fought and costly litigation for the chance to obtain future relief (which would be similar to the relief secured under the Settlement) for the present harm they are suffering. The Parties and the Court need not speculate as to the likely duration of this action as the alternative to a Settlement is clearly laid out in the Subrogation track of this MDL, in which class certification and dispositive motions will not be fully briefed until September 15, 2025, and April 23, 2026, respectively (which does not account for a Rule 23(f) appeal). Dkt. No. 300.

In sum, this is a difficult and risky economic loss class action of nationwide scope. Despite the foregoing complexities and risk, Class Counsel took on this consolidated litigation on a contingent-fee basis and obtained valuable benefits for the Class.  Under these circumstances, the requested fee is fully justified.

### 3.    The skill required and quality of work performed by Class Counsel support the requested award.

Courts recognize that the "prosecution and management of a complex national

14

1   class action requires unique legal skills and abilities." *In re Toyota Motor Corp.*, 2013

2   U.S. Dist. LEXIS 94485, at *213 (quoting *Knight v. Red Door Salons, Inc*., 2009 U.S.

3   Dist. LEXIS 11149, at *16 (N.D. Cal. Feb. 2, 2009)); *Heritage Bond*, 2005 U.S. Dist.

4   LEXIS 13627, at *39; *see also Vizcaino*, 290 F.3d at 1048. The reputation,

5   experience, and skill of Class Counsel were essential to the success of this litigation.

6   *See In re Rite Aid Corp. Secs. Litig.*, 396 F.3d 294, 304 (3d Cir. 2005). Class Counsel

7   are among the most experienced and skilled practitioners in national class actions and

8   have a long and successful track record in such cases, including in automobile defect

9   class actions. We well understand the procedural and substantive complexities

10  (including technical) of the case. From the outset, we engaged in a concerted effort to

11  obtain the maximum recovery for the Class. Class Counsel's investigation and skillful

12  work enabled them to plead detailed allegations and negotiate the Settlement.

13          The quality and vigor of opposing counsel is also important in evaluating the

14  services rendered by Class Counsel. Defendants are represented by large, respected

15  law firms with tremendous resources. That Class Counsel achieved the Settlement for

16  the Class in the face of formidable legal opposition further evidences the quality of

17  their work.

18          **4.      The contingent nature of the fee supports the requested award.**

19          Attorneys are entitled to a larger fee when their compensation is contingent in

20  nature. *See Vizcaino*, 290 F.3d at 1048-50. This fee enhancement stems from the

21  "established practice in the private legal market to reward attorneys for taking the risk

22  of non-payment by paying them a premium over their normal hourly rates for

23  winning contingency cases." *WPPSS*, 19 F.3d at 1299; *see also Omnivision*, 559 F.

24  Supp. 2d at 1047 ("[t]he importance of assuring adequate representation for plaintiffs

25  who could not otherwise afford competent attorneys justifies providing those

26  attorneys who do accept matters on a contingent-fee basis a larger fee than if they

27  were billing by the hour or on a flat fee"); *In re Critical Path, Inc. Secs. Litig.*, 2002

28

---

15

U.S. Dist. LEXIS 26399, at *29-30 (N.D. Cal. June 18, 2002) (citing *Class Plaintiffs v. Jaffe & Schlesinger*, 19 F.3d 1306, 1308 (9th Cir. 1994)). Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours, yet received no remuneration whatsoever despite their diligence and expertise.

Counsel have invested more than $6.7 million in lodestar and over $244,000 in expenses in the case. Leadership FA Decl., ¶ 4. In addition to this significant investment of time and money, lawyers working on the case have forgone the business opportunity to devote time to other cases. *See Vizcaino*, 290 F.3d at 1050. Any fee award has always been at risk and completely contingent on the result achieved and on this Court's discretion in awarding fees and expenses. The percentage fee and expense award requested is reasonable considering the contingent nature of the fee and the financial burden carried by counsel. *See In re Toyota Motor Corp.,* 2013 U.S. Dist. LEXIS 94485, at *216-17 ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for contingency cases.") (quoting *WPPSS*, 19 F.3d at 1299).

### 5. Awards made in similar cases support the requested award.

As noted above, the Ninth Circuit has repeatedly held that 25% of the settlement value is the appropriate fee benchmark. *Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Hanlon*, 150 F.3d at 1029; *In re Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also Adderley v. NFL Players Ass'n*, 2009 U.S. Dist. LEXIS 115742, at *7 (N.D. Cal. Nov. 23, 2009); *Briggs v U.S.*, 2010 U.S. Dist. LEXIS 50990, at *26 (N.D. Cal. Apr. 30, 2010). Percentage fee awards in the Ninth Circuit commonly fall in the 25-33% range. *In re Toyota Motor Corp.,* 2013 U.S. Dist. LEXIS 94485, at *218-19; *see also Herrera v. Wells Fargo Bank, N.A.*, 2021

U.S. Dist. LEXIS 221364, *32-33 (C.D. Cal. Nov. 16, 2021) (Selna, J.) (awarding 21.5% of settlement value or 27%, depending on whether value of future benefits included in the value); *Martin v. Toyota Motor Credit Corp.*, 2022 U.S. Dist. LEXIS 208358, at *34-35 (C.D. Cal. Nov. 15, 2022) (Selna, J.) (awarding 17.6% fee in case that "was resolved relatively quickly" on the heels of related litigation); *Beaver v. Tarsadia Hotels*, 2017 U.S. Dist. LEXIS 160214, at *39 (S.D. Cal. Sep. 28, 2017) (awarding 33.3% fee award and finding that "[a]ttorneys with comparable skill and experience, and who litigate class actions on a contingency basis routinely charge one-third of the recovery, or 40% or more if the case goes to trial."). At 4.9% of the total Settlement value[5] (and 9.2% of the common fund), the requested amount here falls well below most percentage fee awards in the Ninth Circuit. *See* Dkt. 200 at 28-29 ("Courts in this district typically adhere to the 25% benchmark in cases in which there is little active litigation pre-settlement.") (citing *Ramirez v. Rite Aid Corp.*, 2022 U.S. Dist. LEXIS 109069, at *23 (C.D. Cal. May 3, 2022) (25% "is a benchmark that this Court… almost always adheres to in cases where there is little active litigation pre-settlement")).

### 6. The reaction of the Class supports the requested award.

Over 7.1 million notices were mailed to Class members, while email notice containing a copy of the Class Notice and links to the settlement website was sent to over 7.4 million email addresses. Declaration of Steven Platt Regarding Class Notice and Settlement Administration, ¶¶ 13, 16, The notice informed Class members that Class Counsel may seek up to 25% of the common fund in fees plus their out-of-pocket expenses. The objection deadline is May 3, 2024, yet no objections to the fee request have been received to date.

---

[5] *See Herrera*, 2021 U.S. Dist. LEXIS 221364, at *34-35 (including costs of notice and administration in value of settlement for purposes of evaluating reasonableness of percentage of the fund fee award).

### 7. The lodestar cross-check confirms the requested fee's reasonableness.

Although district courts are not required to conduct a lodestar cross-check to assess the reasonableness of a fee award, *Perez v. Rash Curtis & Assocs.*, 2020 U.S. Dist. LEXIS 68161, at *52-53 (N.D. Cal. Apr. 17, 2020) (citing *In re Google Referrer Header Privacy Litig.*, 869 F.3d 737, 748 (9th Cir. 2017)) ("[c]alculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award"); *In re Toyota Motor Corp.,* 2013 U.S. Dist. LEXIS 94485, at *219 (quoting *Vizcaino v. Microsoft*, 290 F.3d at 1050-51; *Omnivision*, 559 F. Supp. 2d at 1048). In *Vizcaino*, the Ninth Circuit affirmed a fee awarded in this district that equaled 28% of the settlement fund and a lodestar multiplier of 3.65. *Vizcaino v. Microsoft*, 142 F. Supp. 2d 1299, 1302 (W.D. Wash. 2001). Indeed, "[m]ultipliers in the 3-4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atlantic Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995); *see also In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706 (E.D. Pa. 2001) (finding multipliers of 4.5-8.5 within the reasonable range); *Ochinero*, 2021 U.S. Dist. LEXIS 192406, at *24 (finding "lodestar multipliers of 1.5 to 3.0 are most common").

A lodestar "cross-check" here confirms that the requested fee amount is reasonable.  In support of the lodestar determination, Class Counsel submit the declarations of Plaintiffs' counsel attesting to their total hours, hourly rates, experience, and efforts to prosecute this action. Leadership FA Decl., Exs. 2-17. Plaintiffs' attorneys' lodestar is $6,701,742.80 based on 9,175.6 hours worked on the case, and their litigation expenses are $244,526.81, for a total investment of $6,946,269.61. Dividing just the lodestar into the $13,403,485.60 requested fee award yields a multiplier of only 2.0. This is at the low to median end of the range of multipliers that courts regularly approve as fair and reasonable. *See*, *e.g.*, *Vizcaino*,

290 F.3d at 1051-52 (affirming fee award where the lodestar multiplier was 3.65 and including table of common multipliers); *Steiner v. American Broad. Co.*, 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming fee award where the lodestar multiplier was 6.85 and finding it fell well within the range of multipliers that courts have allowed); *Martin*, 2022 U.S. Dist. LEXIS 208358, at *42 (6.33 multiplier in lodestar cross-check reasonable in case that "was resolved relatively quickly" on the heels of related litigation). *Kakani v. Oracle Corp.*, 2007 U.S. Dist. LEXIS 95496, at *11 (N.D. Cal. Dec. 21, 2007) (summarizing *Vizcaino* table to conclude that a 1.0 to 4.0 multiplier is "typically awarded in common-fund cases"); *In re Critical Path*, 2002 U.S. Dist. LEXIS 26399, at *32-33 (3.2–3.7 multiplier in a case that settled quickly and at "the low end of reasonableness"); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1265 (C.D. Cal. 2016) (noting that a 3.07 multiplier is "well within the range for reasonable multipliers").

Plaintiffs' counsel's hourly rates are also reasonable. When determining a reasonable hourly rate, the forum in which the district court sits is the relevant community. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The rates prevailing in this district for "similar services by lawyers of reasonably comparable skill, experience, and reputation" thus furnish the proper measure of the reasonableness of the rates billed. *Blum v. Stenson*, 465 U.S. 886, 896 n.11 (1984); *Grove v. Wells Fargo Fin. Cal., Inc.*, 606 F.3d 577, 583 (9th Cir. 2010). Courts often apply each attorney's current rates for all hours of work regardless of when performed as a means of compensating for delays in payment. *See, e.g.*, *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 483 U.S. 711, 716 (1987); *WPPSS*, 19 F.3d at 1305; *Velez v. Roche*, 2004 U.S. Dist. LEXIS 29848, at *13-14 (N.D. Cal. Sept. 22, 2004) (citing *Bouman v. Block*, 940 F.2d 1211, 1235 (9th Cir. 1991)). In 2021, this Court approved hourly rates ranging from $900 to $1000 for partners, $550 to $875 for mid-level attorneys, staff attorneys, and senior level

attorneys, $350-$550 for junior attorneys and associates, and $150-$450 for paralegals. *Herrera*, 2021 U.S. Dist. LEXIS 221364, at *37; *see also In re Animation Workers Antitrust Litig.*, 2016 U.S. Dist. LEXIS 156720, at *20 (N.D. Cal. Nov. 11, 2016) (finding rates of senior attorneys of between $845 to $1,200 per hour to be reasonable); *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 U.S. Dist. LEXIS 86124, at *32 (N.D. Cal. June 5, 2017) (finding rates for senior attorneys of between $870 to $1200 per hour to be reasonable). Plaintiffs' Counsel's experience, reputation and ability justify the hourly rates charged and are comparable to rates for similar services by lawyers of reasonably comparable skill, experience, and reputation in this legal community.

**D.    Class Counsel's Expenses are Reasonable and Necessarily Incurred to Benefit the Class.**

"An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund." *In re Toyota Motor Corp.,* 2013 U.S. Dist. LEXIS 94485, at *219 (citing *Omnivision*, 559 F. Supp. 2d at 1048). "The award 'should be limited to typical out-of-pocket expenses that are charged to a fee paying client and should be reasonable and necessary.'" *Id.* (quoting *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007)). The litigation expenses incurred in this litigation in the amount of $244,526.81are described in the declarations attached as Exhibits 2-17 to the Leadership FA Declaration. They are the type of expenses typically billed by attorneys to paying clients in the marketplace and include such costs paid for computerized research and other services, court filing and service costs, costs associated with the document depository, printing, copying, shipping costs, and travel costs. These expenses were reasonable and necessary to prosecute this litigation, and Class Counsel advanced these expenses without assurance that they would be recouped.

**E.    An Award of Compensation to the Named Plaintiffs and Class Representatives is Appropriate.**

Courts routinely approve incentive awards to compensate named plaintiffs for the services they provided and the financial or reputational risks they incurred during the class action litigation, "and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009); *Staton*, 327 F.3d at 977 (holding that "… named plaintiffs … are eligible for reasonable incentive payments."); *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 490 (E.D. Cal. 2010) ("Courts routinely approve incentive awards to compensate named plaintiffs for the services they provide and the risks they incurred during the course of the class action litigation."); *see also In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 272-73 (S.D. Ohio 1997) (collecting cases in which awards to named representatives were approved.  In some cases, the awards have been substantial. *See*, *e.g.*, *Singer v. Becton Dickinson & Co.*, 2010 U.S. Dist. LEXIS 53416, at *18-19 (S.D. Cal. June 1, 2010) ($25,000 awarded to named plaintiff); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (approving service awards of $300,000 to each named plaintiff); *Van Vranken*, 901 F. Supp. at 299 (approving $50,000 participation award to plaintiffs).

Plaintiffs request service awards of $1,000 per Named Plaintiff which is at the very low-end typically awarded in the Ninth Circuit. *See, e.g.*, *Herrera*, 2021 U.S. Dist. LEXIS 221364, at *42-43 (approving service awards ranging from $1,500 to $7,500); *Canava v. Rail Delivery Servs. Inc.*, 2022 WL 18359143, at *2 (C.D. Cal. Dec. 2, 2022) (recognizing that "[a] service award of $5,000 to named plaintiffs is considered presumptively reasonable in the Ninth Circuit."). Each Named Plaintiff actively and effectively fulfilled their obligations as Plaintiffs and as proposed representatives for the Class. Leadership FA Decl., ¶ 63. The Settlement would not exist without the efforts of the Plaintiffs.

## IV.    CONCLUSION

With no assurance of success, the Consumer Class Plaintiffs and Class Counsel pursued this litigation and obtained a Settlement valued at more than $275 million—without including payments made to Class members outside the common fund or certain non-monetary benefits included in the Settlement. The Settlement reflects Class Counsel's efforts in the face of significant risk. Accordingly, we respectfully submit that the Court should approve the fee application and award Class Counsel $13,403,485.60 in attorneys' fees and $244,526.81 in litigation expenses and provide the requested awards for the Named Plaintiffs and Class Representatives.  A proposed order is submitted herewith.

Dated: April 18, 2024.                  Respectfully Submitted.


By:  _/s/ Steve W. Berman_
    Steve W. Berman, Esq.
    **HAGENS BERMAN SOBOL SHAPIRO LLP**
    1301 Second Avenue, Suite 2000
    Seattle, Washington 98101
    Telephone: 206-623-7292
    Facsimile: 206-623-0594
    Email: steve@hbsslaw.com

By:  _/s/ Elizabeth A. Fegan_
    Elizabeth A. Fegan, Esq.
    **FEGAN SCOTT LLC**
    150 S. Wacker Dr., 24th Floor
    Chicago, Illinois 60606
    Telephone:   312.741.1019
    Fax:            312.264.0100
    Email: beth@feganscott.com

By:  _/s/ Kenneth B. McClain_
    Kenneth B. McClain, Esq.
    **HUMPHREY FARRINGTON & McCLAIN**
    221 W. Lexington Ave., Suite 400
    Independence, Missouri 64050

22

Telephone:   816.836.5050
Facsimile:   816.836.8966
Email: kbm@hfmlegal.com

By:  _/s/ Roland Tellis_
Roland Tellis, Esq.
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600
Encino, California 91436
Telephone: 818.839.2333
Facsimile:   214.523.5500
Email: rtellis@baronbudd.com

*Consumer Class Action Leadership Counsel
and Counsel for Plaintiffs*

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,936 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 18, 2024.                     Respectfully Submitted.


By:  */s/ Steve W. Berman*
       Steve W. Berman, Esq.
       **HAGENS BERMAN SOBOL SHAPIRO LLP**
       1301 Second Avenue, Suite 2000
       Seattle, Washington 98101
       Telephone: 206-623-7292
       Facsimile: 206-623-0594
       Email: steve@hbsslaw.com