Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain
HUMPHREY FARRINGTON & McCLAIN, P.C.
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Plaintiffs' Consumer Class Action Leadership Committee*

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

*This document relates to:*

*CONSUMER CLASS ACTION CASES*

Case No.: 8:22-ML-3052 JVS(KESx)

**JOINT DECLARATION OF THE CONSUMER CLASS ACTION LEADERSHIP COUNSEL IN SUPPORT OF MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND MOTION FOR CLASS COUNSEL FEE AND EXPENSE AWARD AND CLASS REPRESENTATIVE AWARDS**

We, STEVE W. BERMAN, ELIZABETH A. FEGAN, KENNETH B. MCCLAIN, and ROLAND TELLIS, declare as follows:

1. We are admitted to appear in this litigation, are counsel of record for the Consumer Class Action Plaintiffs, and were appointed to the Consumer Class Action Leadership Counsel in *In re Kia Hyundai Vehicle Theft Marketing, Sales Practices, And Products Liability Litigation*, No. 8:22-ML-3052 JVS(KESx) (C.D. Cal.). We could and would competently testify to the matters stated in this declaration based on personal knowledge or discussions with counsel in our firms.

2. We submit this declaration in support of the Consumer Class Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Class Counsel Fee and Expense Award and Class Representative Awards.

3. Attached hereto as **Exhibit 1** is a true and correct copy of the Amended Settlement Agreement signed by counsel ("Amended Settlement Agreement"), and respective exhibits, dated September 27, 2023.

4. Attached hereto as **Exhibits 2-17** are true and correct copies of declarations submitted by the undersigned counsel and each attorney appointed by this Court to represent Plaintiffs in the Consumer Class Action and other attorneys who reported time to Class Action Leadership Counsel.

a. Declaration of Steve W. Berman (Exhibit 2);

b. Declaration of Elizabeth Fegan (Exhibit 3);

c. Declaration of Kenneth B. McClain (Exhibit 4);

d. Declaration of Roland Tellis (Exhibit 5);

e. Declaration of Jeffrey S. Goldenberg (Exhibit 6);

f. Declaration of Amanda K. Klevorn (Exhibit 7);

g. Declaration of Tiffany Marko Yiatras (Exhibit 8);

h. Declaration of Jason S. Rathod (Exhibit 9);

i. Declaration of Michael F. Ram (Exhibit 10);

j. Declaration of Matthew D. Schelkopf (Exhibit 11);

k. Declaration of Amber L. Schubert (Exhibit 12);

l. Declaration of Robert K. Shelquist (Exhibit 13);

m. Declaration of William Caldes (Exhibit 14);

n. Declaration of Anne T. Regan (Exhibit 15);

o. Declaration of Garrett D. Blanchfield (Exhibit 16); and

p. Declaration of Joe Lyon (Exhibit 17).

These declarations demonstrate that Plaintiffs' Counsel have invested more than $6.7 million in unaudited lodestar and over $244,000 in expenses in the case., as summarized in the following table:

| FIRM | HOURS | LODESTAR | COSTS |
|---|---|---|---|
| **Hagens Berman Sobol Shapiro LLP** | **2259.30** | **$1,566,700.00** | **$118,802.68** |
| **Humphrey, Farrington & McClain, P.C.** | **1472.60** | **$1,131,620.00** | **$28,173.95** |
| **Fegan Scott LLC** | **979.00** | **$609,255.00** | **$11,803.14** |
| **Baron & Budd P.C.** | **1873.80** | **$1,537,150.50** | **$31,500.23** |
| Consumer Protection Legal, LLC | 224.90 | $215,952.90 | $2,173.69 |
| Goldenberg Schneider, LPA | 738.70 | $429,100.00 | $8,496.67 |
| The Lyon Firm | 72.60 | $32,322.00 | $0.00 |
| Spector Roseman & Kodroff, PC | 335.30 | $256,345.50 | $16,470.01 |

| | | | |
|---|---|---|---|
| Migliaccio & Rathod LLP | 122.50 | $102,661.60 | $1,321.38 |
| Hellmuth & Johnson, PLLC | 199.40 | $123,092.50 | $6,887.87 |
| Schubert Jonckheer & Kolbe LLP | 46.20 | $23,490.00 | $2,647.73 |
| Saltz Mongeluzzi & Bendesky, PC | 0.30 | $232.50 | $0.00 |
| Morgan & Morgan | 21.60 | $12,876.80 | $2,904.60 |
| Sauder Schelkopf | 379.20 | $280,215.00 | $3,157.49 |
| Burns Charest LLP | 214.50 | $210,370.00 | $5,070.35 |
| Reinhardt Wendorf & Blanchfield | 179.80 | $118,282.50 | $3,088.31 |
| Lockridge Grindal Nauen PLLP | 55.90 | $52,076.00 | $2,028.71 |
| **Totals** | **9175.60** | **$6,701,742.80** | **$244,526.81** |

5. Attached hereto as **Exhibit 18** is a true and correct copy of the Declaration of Steven Platt Regarding Class Notice and Settlement Administration. Attached hereto as **Exhibit 19** is a true and correct copy of the Declaration of Elizabeth Fernandez Platt Regarding Class Notice and Settlement Administration.

6. Attached hereto as **Exhibit 20** is a true and correct copy a letter from the National Highway Traffic Safety Administration's Acting Associate Administrator for Enforcement Cem Hatipoglu to California Attorney General Rob Bonta, dated June 5, 2023, concerning the Class Vehicle thefts and compliance with Federal Motor Vehicle Safety Standard Number 114.

7. As summarized below, we have undertaken extensive analyses of the claims and defenses in this case, as well as the underlying facts, the benefits conferred by the Settlement, and the risks associated with continued litigation. Based on that comprehensive assessment and our experience litigating complex class actions, we believe the Settlement is fair, reasonable, and adequate for the proposed Class.

## I. THE SETTLEMENT IS THE RESULT OF SERIOUS, INFORMED, ARM'S-LENGTH NEGOTIATIONS BY EXPERIENCED CLASS COUNSEL

8. This multi-district litigation concerns Plaintiffs' allegations that Defendants Hyundai Motor Company ("HMC"), Hyundai Motor America ("HMA"), KIA Corporation ("KC"), and KIA America, Inc. ("KA") (collectively "Defendants") produced and sold more than nine million Class Vehicles, which contain a safety defect that makes them highly prone to theft (the "Theft Prone Defect").

9. Beginning in July 2022, dozens of class actions were filed by consumers nationwide against Defendants relating to this alleged Defect.

10. On July 21, 2022, Humphrey Farrington & McClain filed a class action complaint relating to the Theft Prone Defect styled: *Bendorf, et al. v. Kia America, Inc., et al.*, No. 4:22-cv-00465-RK (W.D. Mo.).

11. On August 19, 2022, Hagens Berman filed a class action complaint relating to the Theft Prone Defect styled: *McNerney v. Kia America, Inc.*, No. 8:22-cv-01548 (C.D. Cal.).

12. On September 9, 2022, Fegan Scott filed a class action complaint relating to the Theft Prone Defect styled: *Cohen, et al. v. Kia America, Inc., et al.*, No. 8:22-cv-01664 (C.D. Cal.).

13. On September 12, 2022, Baron & Budd filed a class action complaint relating to the Theft Prone Defect styled: *Morrow et al. v. Hyundai Motor America, Inc. et al*., No. 8:22-cv-01674 (C.D. Cal.).

14. Before filing these complaints, our firms undertook significant independent investigations, which included a review of publicly available sources of technical information, research into the design of the steering wheel columns and ignition assemblies in the Class Vehicles, online victim reports relating to the Theft Prone Defect, and discussions with numerous putative class members. Our investigations continued post-filing, throughout the course of the litigation and continue to this day.

15. By the end of August 2022, at least fifteen putative class actions relating to the Theft Prone Defect were filed across the country. On August 31, 2022, the *McNerney* Plaintiffs moved for consolidation under 28 U.S.C. § 1407. *See* MDL No. 3052 ("JPML Dkt."), Dkt. No. 1.

16. While consolidation was pending before the Judicial Panel on Multidistrict Litigation ("JPML"), the nationwide epidemic of stolen Hyundai and Kia vehicles was growing and becoming an ever-increasing danger for Plaintiffs. Accordingly, in October 2022, the Parties began to hold informal settlement discussions in an effort to provide expeditious relief to consumers. Such discussions began with a meeting on October 18, 2022, at Hagen Berman's offices in Seattle. The meeting concluded without a resolution, but the Parties agreed to exchange information necessary to evaluate a resolution.

17. Following the initial settlement meeting in October 2022, the Parties engaged the services of the Hon. Margaret M. Morrow (Ret.) who held a formal, full-day mediation session in Los Angeles on November 15, 2022. Although the mediation was productive, the Parties did not reach a resolution. Thereafter, for the balance of November and into early December 2022, the Parties participated in numerous phone calls and Zoom meetings with Judge Morrow and continued to work on a potential

resolution. The Parties also exchanged additional information and proposed term sheets. However, despite their best efforts, no resolution was reached.

18. On December 13, 2022, the JPML issued an order transferring related actions from fourteen District Courts across the United States to the Central District of California for consolidation and pre-trial coordination.

19. On December 22, 2022, the Court appointed Mr. Berman, Ms. Fegan, and Mr. McClain as Initial Conference Counsel tasked with conferring and obtaining consensus regarding the most pressing issues affecting the case. Dkt. No. 2 at 2.

20. Shortly after the Court appointed Initial Conference Counsel, the Parties sought to resume their settlement efforts. Over the coming weeks, the Parties exchanged information relating to the Theft Prone Defect and negotiated terms of a potential settlement. Among other things, Defendants provided information concerning their forthcoming Software Upgrade (discussed below) and discussed their ongoing efforts to offer a remedy for the Theft Prone Defect.

21. After reviewing the qualifications of many well qualified applicants, on February 9, 2023, the Court appointed Mr. Berman, Ms. Fegan, Mr. McClain, and Mr. Tellis to the Plaintiffs' Consumer Class Action Leadership Committee. Dkt. No. 50 at 3.

22. Following the formation of the Consumer Class Action Leadership Committee, the Parties continued their exchange of information and negotiations.

23. Although Plaintiffs were committed to providing comprehensive relief to putative Class members in a timely manner, the Consumer Class Action Leadership Committee employed a dual-track litigation strategy, whereby our efforts to prosecute these claims were unimpeded by our settlement negotiations.

24. We undertook an exhaustive effort to draft a consolidated complaint and consult with experts, while simultaneously engaging in settlement negotiations. Our investigation concerning the underlying Theft Prone Defect was extensive. It involved a

review of publicly available sources of technical information, hundreds of interviews with putative Class members and potential class representatives, technical analyses relating to the design of the steering wheel columns and ignition assemblies in the Class Vehicles, and consultation with automotive experts. These efforts not only resulted in the Consolidated Amended Consumer Class Action Complaint ("CAC") that was filed on April 10, 2023 (Dkt. No. 84) but also informed our settlement negotiations.

25. After several rounds of further negotiations, the Parties determined that it would be beneficial to reconvene another mediation before Judge Morrow.

26. Under the guidance of Judge Morrow, the Parties participated in mediation sessions on April 4 and 5, 2023, where drafts memoranda of understanding were discussed. The Parties did not leave the mediation sessions with an agreement, but we continued working toward that goal, while actively litigating the case.

27. The following week, on April 14, 2023, the Parties exchanged initial disclosures, and on April 19, 2023, Plaintiffs served HMA and KA with their First Set of Requests for Production of Documents.

28. On May 1, 2023, Defendants moved to dismiss the CAC. Dkt. No. 95. We immediately analyzed the motion and began working on Plaintiffs' opposition. Our analysis of the motion also informed our views as to the strength and weakness of Plaintiffs' claims.

29. On May 18, 2023, the Parties notified the Court that they reached a settlement in principle resulting in a fully executed Memorandum of Understanding ("MOU"). *See* Dkt. No. 107.

30. The general terms of the MOU, which were memorialized in the initial Settlement Agreement, were publicly disseminated by the Parties in press releases and widely covered in the media.[1]

31. In our press release, we disclosed that the Settlement would provide: (i) up to $145 million for out-of-pocket losses, which would be subject to individual claim caps; (ii) a no cost software upgrade for certain Class Vehicles that addresses the cars' lack of an immobilizer and the TikTok theft method (the "Software Upgrade"); and (iii) up to $300 payments to Class members whose Class Vehicles are not eligible for the Software Upgrade.[2] To date, the response we received from Class members has been overwhelmingly positive.

32. In addition to the benefits for Class members, the MOU provided that Plaintiffs are entitled to confirmatory discovery relating to, *inter alia*, the nature and scope of the Software Upgrade, and Defendants will pay all costs and expenses for class notice and claims administration.

33. Over the subsequent months, we continued hard fought negotiations over the final terms of the Settlement Agreement. As part of their negotiation of the Settlement Agreement, the Parties held several telephonic and videoconference meetings during which they discussed key issues affecting the Class benefits.

---

[1] *See, e.g.*, https://www.nbcnews.com/business/hyundai-kia-car-theft-settlement-details-who-is-eligible-rcna85250 (last visited April 14, 2024); https://www.caranddriver.com/news/a43941743/hyundai-kia-vehicle-theft-settlement/ (last visited April 14, 2024); https://www.npr.org/2023/05/18/1177005881/kia-hyundai-theft-settlement-tiktok (last visited April 14, 2024); https://www.cnn.com/2023/05/18/business/hyundai-kia-theft-settlement/index.html (last visited April 14, 2024).

[2] https://www.businesswire.com/news/home/20230517005834/en/Hagens-Berman-Hyundai-Kia-Theft-Class-Action-Lawsuit-Reaches-Settlement-Valued-at-More-Than-200-Million (last visited April 14, 2024).

34. On July 20, 2023, Plaintiffs moved for preliminary approval of that initial settlement and for class certification. In its August 16, 2023, Order Regarding Motion for Preliminary Approval and Class Certification (Dkt. No. 200, the "Order"), the Court granted the motion for class certification and denied the motion for preliminary settlement approval. The Order suggested that certain changes be made to the settlement. Subsequently, the Parties spent approximately six weeks negotiating amendments to the prior agreement, and those negotiations resulted in the Amended Settlement Agreement.

35. On September 27, 2023, Plaintiffs filed their amended motion for preliminary approval, which sought approval of the Amended Settlement Agreement. Dkt. No. 228.

36. On October 31, 2023, the Court granted the amended motion for preliminary approval and ordered dissemination of notice to the Class pursuant to the Settlement's notice plan. Dkt. Nos. 256, 259.

## II. CONFIRMATORY DISCOVERY

37. Following the execution of the MOU, Plaintiffs' counsel began formal confirmatory discovery. On May 18, 2023, Plaintiffs served Defendants with their first set of Requests for Production of Documents (the "Requests for Production"). The Requests for Production sought documents relating to, *inter alia*: (1) Defendants' investigation about the theft risk in Class Vehicles; (2) Defendants' interactions with NHTSA concerning the Defect; (3) the development, efficacy, and roll-out of the Software Upgrade remedy (discussed below); (4) insurance coverage for Class Vehicles; and (5) Defendants' efforts to mitigate the risk of theft in Class Vehicles.

38. On December 13, 2023, Plaintiffs served their second set of Requests for Production, which sought records relating to, *inter alia*, Defendants' analyses concerning the efficacy of the Software Upgrade and the analyses performed by Defendants' expert, James Smith of Exponent, relating to the same. The Parties conducted several meet and

confers concerning the two sets of Requests for Production. Defendants produced 1,250 pages of documents and written responses in lieu of documents for certain requests.

39. In December 2023, Defendants announced the roll-out of an additional anti-theft solution designed for a subset of Class Vehicles vehicles that are not eligible for the Software Upgrade.[3] Specifically, Defendants will install a new hardware modification, called an ignition cylinder protector, which addresses the TikTok theft method by reinforcing the ignition cylinder body and preventing its removal. The device has been described as a "vault for the ignition."[4] This device directly addresses Plaintiffs' allegations that the Class Vehicles do not contain an adequate hardened steering column collar. CAC, ¶¶ 1302-06.

40. Following the production of documents relating to his analysis of the Defect, Plaintiffs interviewed Mr. Smith. Plaintiffs' examination of Mr. Smith focused upon Defendants' development of the Software Upgrade, a technical analysis of the Software Upgrade and how it operates, incidents of Class Vehicle thefts which had the Software Upgrade installed in the vehicles, Defendants' roll-out of the Software Upgrade, and anti-theft devices made available to Class Vehicles that are not eligible for the Software Upgrade, including the ignition cylinder protectors announced by Defendants in December 2023.

41. In addition to the formal and adversarial confirmatory discovery, as part of their efforts to confirm the fairness and adequacy of the Settlement, Plaintiffs' counsel continued to conduct independent investigations relating to the efficacy of the Software Upgrade. Among other things, Plaintiffs monitored the theft rate and theft methods

---

[3] https://www.hyundainews.com/en-us/releases/4027 (last visited April 14, 2024); https://www.kiamedia.com/us/en/media/pressreleases/21626/kia-introduces-new-theft-deterrent-device-for-vehicles-not-eligible-for-software-upgrade (last visited April 14, 2024).

[4] https://www.motor1.com/news/702952/kia-theft-deterrent-device/ (last visited April 14, 2024).

reported since the Settlement was reached and the Software Upgrade began to roll-out to Class members, spoke with hundreds of Class members relating to their experiences and the effectiveness of the Software Upgrade, and analyzed alleged insurance coverage and pricing trends for Class Vehicles.

42. Based on our investigation, we found that the Software Upgrade was thoroughly tested and has been proven to be effective at preventing the TikTok method of theft.

43. We have been informed that the cost of notice and the cost of developing and implementing the Software Upgrade, together, exceed $130,000,000. This will increase as more Class Members bring their Class Vehicles into dealerships to install the Software Upgrade.

## III. NOTICE OF THE SETTLEMENT

44. Following preliminary approval of the Amended Settlement Agreement, Plaintiffs' counsel spent many hours working with Defendants' counsel managing and the Settlement Administrator, Angeion Group, overseeing the Class Notice process.

45. Among other things, attorneys at our firms reviewed and edited the form and content of the settlement websites and any necessary changes to the Long Form Notice and claim forms, in accordance with Paragraph 52 of the Court's preliminary approval order. Dkt. No. 256.

46. Our firms also conferred with Defendants concerning the nationwide press campaign promoting the Software Upgrade, discussing its availability and effectiveness at preventing vehicle thefts, which included publication on social media platforms, and an instructional campaign for Class members regarding the Software Upgrade.

47. Attached as **Exhibit 18** and **Exhibit 19** are declarations from Steven Platt of Claims Administrator Angeion and Elizabeth Fernandez Platt from Hyundai providing details about the robust notice campaign that was implemented.

48. Since the settlement websites went live and Class Members received notice of the Settlement, our firms have received calls and emails from Class Members daily.

49. The Settlement also received considerable media attention.[5]

50. Attorneys at our firms continue to assist Class Members with filing claim forms and answering questions they have about the litigation, the benefits offered to Class Members, and their right to object or opt-out of the Settlement if they so choose.

## IV. THE VIEWS OF COUNSEL

51. Before agreeing to the proposed Settlement, we were well informed as to the underlying facts and the strength of Plaintiffs' case, which allowed for meaningful negotiations.

52. We devoted significant time to prosecuting these claims and pursuing relief on behalf of all Class members. We conducted substantial pre- and post-filing investigations, which are evinced by the comprehensive CAC. Indeed, after executing the MOU, we continued our investigation into the alleged Defect, including the Software Upgrade.

53. The Parties also conducted confirmatory discovery, which allowed us to verify the fairness of the benefits provided in the Settlement and obtain testimony from Hyundai and Kia's expert, James Smith, with knowledge of the Defect and proposed remedies, including the Software Upgrade, prior to final approval.

---

[5] *See, e.g.*, https://www.usatoday.com/story/money/2024/02/28/kia-theft-settlement-hyundai-owners/72775295007/ (last visited April 14, 2024); https://6abc.com/kia-hyundai-car-theft-settlement/14482999/ (last visited April 14, 2024); https://www.prnewswire.com/news-releases/angeion-group-kia-theft-settlement-administrator-announces-proposed-settlement-in-in-re-kia-hyundai-vehicle-theft-marketing-sales-practices-and-products-liability-litigation-302078863.html (last visited April 14, 2024); https://www.cbsnews.com/chicago/news/kia-hyundai-owners-settlement-lawsuit-thefts/ (last visited April 14, 2024); https://www.consumeraffairs.com/news/kiahyundai-reaches-settlement-with-stolen-car-owners-022624.html (last visited April 14, 2024).

54. In the course of resolving this litigation, Class Counsel had a strong understanding of the strength and weakness of Plaintiffs' case and were well-situated to make an informed decision regarding settlement. Based on our substantial experience litigating class actions, and specifically automotive defect class actions, the information received was sufficient to evaluate the fairness of the proposed Settlement.

55. Our negotiations with Defendants were adversarial and conducted at arms'-length, resulting in a proposed Settlement that is fair, reasonable, and adequate. After mediating and reaching a settlement in principle, we spent months meeting and conferring with Defendants' representatives by phone, videoconference, and in writing to hammer out the details of the Settlement Agreement. Additionally, we have represented consumers in many significant class actions, including the following actions against Hyundai and Kia in this District, which were deemed fair, reasonable, and adequate: *In re Hyundai and Kia Fuel Economy Litigation*, No. 2:13-md-2424-GW-FFM (C.D. Cal.) (Hagens Berman); *In re Kia Engine Litigation ("Engine I")*, No. 8:17-cv-00838-JLS-JDE (C.D. Cal.) (Hagens Berman); *Zakikhani et al. v. Hyundai Motor Company et al.*, No. 8:20-cv-01584-SB-JDE (C.D. Cal.) (Fegan Scott and Hagens Berman); and *In re: Hyundai and Kia Engine Litigation II* ("Engine II"), No. 8:18-cv-02223-JLS (C.D. Cal.) (Hagens Berman).

56. Class Counsel believe that Class members maximized the recovery they could have achieved in settlement of this matter and the benefits offered to Class members through the Settlement compares extremely favorably to what Class members could receive at trial. The Settlement offers significant relief to Class members who will receive virtually all the relief that Plaintiffs originally sought in this action. Given the collective value of the claims submitted to date (over $230 million), Class Counsel expect that Defendants will pay out the full $145 million Common Fund. As a whole,

the Settlement is valued at more than $275,000,000 ($145,000,000 Common Fund plus the cost of notice and the cost of developing and implementing the Software Upgrade).

57. Despite claim caps that generally reflect discounts based on litigation risk, "most insured class members are likely to receive near full compensation for their qualifying events, even based upon risk-adjusted payment amounts." Declaration of Edward M. Stockton, Dkt. No. 228-3 at ¶ 44.[6] And the probability that uninsured Class members can be exposed to large monetary losses that would not be compensated for in the Settlement "is infrequent." *Id*. at ¶ 16.[7] The Settlement also offers Class members that ability to safeguard against the TikTok theft method, whether through installation of the Software Upgrade or with the installation of an alternative antitheft device in addition to the ignition cylinder protector.

58. Additionally, Class Counsel believes that the Settlement is in the best interests of all Class members given the significant risks that their claims face in further litigation, trial, and appeals—which this Court previously recognized. *See* Dkt. No. 200 at 26. This belief is based, in part, on the fact that following the Parties executing the MOU, NHTSA issued a statement in which the agency rejected Plaintiffs' allegation that the Class Vehicles do not comply with FMVSS No. 114. *See* **Exhibit 20** at 2. Moreover, should litigation proceed in this action, the Court may find that Plaintiffs' claims are preempted, as it did in an action brought by the City of Chicago in this MDL. Dkt. No. 334 at 6.

---

[6] Class Members who purchased a steering wheel lock prior to the availability of the Software Upgrade are also entitled to make a claim for reimbursement up to $50, which is not deduced from the Common fund.

[7] The reason why this is the case is: (1) fewer than 25% of Class members are estimated to not have insurance coverage for thefts; and (2) uninsured vehicles are likely to be "low-value vehicles" with damages not exceeding $10,000. Dkt. No. 228-3 at ¶ 16

59. The Settlement also provides timely relief to Class members that would otherwise suffer and wait at minimum two more years to receive any compensation.

60. Further, since the MOU was reached and the Software Upgrade has rolled out the theft rate for Class Vehicles has started to fall. For example, in a CBS News report from February 22, 2024, the Minneapolis Police Chief Brian O'Hara noted that "[e]ach week the proportion of cars stolen that are Kias and Hyundais have been decreasing" and car thefts across all brands year-to-date in Minneapolis have decreased by 34%.[8] Similarly, Chicago theft data for October through November 2023 shows a year-over-year decrease of 33% to 42% for Kia and Hyundai vehicles, and compared to October 2022, December 2023 auto thefts are 46% lower for Kia and Hyundai vehicles.[9]

61. Based on their years of complex litigation experience, and specifically automotive defect class actions, and their personal involvement in the prosecution of this case from start to finish, Class Counsel believes the Settlement is not only fair, reasonable, adequate, but also is in the best interests of all Class members in light of all known facts and circumstances and should therefore be finally approved by the Court.

62. Plaintiffs, who all seek to be Class Representatives, have no interests that conflict with the Settlement Class members and will continue to vigorously protect Class interests, as they have throughout this litigation. Plaintiffs understand their duties as class representatives, have agreed to consider the interests of absent Settlement Class members, have assisted counsel in this litigation, and will continue to do so. Further, Class Counsel have no conflicts with the Class Representatives and Class members.

---

[8] https://www.cbsnews.com/minnesota/news/minneapolis-city-council-calls-for-federal-recall-of-vulnerable-hyundai-kia-vehicles/#:~:text=%22Each%20week%20the%20proportion%20of,%2C%22%20said%20O'Hara.&text=While%20still%20a%20serious%20threat,have%20also%20dropped%20nearly%2029%25 (last visited April 14, 2024).

[9] https://www.cbsnews.com/chicago/news/chicago-vehicle-thefts-dropping-thieves-kia-hyundai/ (last visited April 14, 2024).

63. Each Named Plaintiff actively and effectively fulfilled their obligations as Plaintiffs as proposed representatives for the Class. The Settlement would not exist without the efforts of the Plaintiffs. We recommend that the Court approve the award of $1,000 to each Class Representative.

* * *

We declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed April 18, 2024, at Seattle, Washington.

By: *_/s/ Steve W. Berman_*
Steve W. Berman, Esq.
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Executed April 18, 2024, at Chicago, Illinois.

By: *_/s/ Elizabeth A. Fegan_*
Elizabeth A. Fegan, Esq.
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Executed April 18, 2024, at Independence, Missouri.

By: *_/s/ Kenneth B. McClain_*
Kenneth B. McClain, Esq.
HUMPHREY FARRINGTON & McCLAIN
221 W. Lexington Ave., Suite 400
Independence, MO 64050

Executed April 18, 2024, 2023, at Encino, California.

By: _/s/ Roland Tellis_

Roland Tellis, Esq.
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Consumer Class Action Leadership Counsel and Counsel for Plaintiffs*