James B. Barton, Esq. (admitted *pro hac vice*)
*jbb@bartoncerjak.com*
BARTON CERJAK S.C.
313 N. Plankinton Ave., Ste. 207
Milwaukee, WI 53203
Telephone: (414) 488-1822
Facsimile: (414) 877-3039
*Counsel for Plaintiffs In The Marvin*
*& Henry Actions*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>CONSUMER CLASS ACTION | CASE NO.: 8:22-ML-3052 JVS(KESx)<br><br>**THE *MARVIN* & *HENRY* PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FEE & EXPENSE AWARD**<br><br>Date: July 15, 2024<br>Time: 1:30 p.m.<br>Place: 411 W. Fourth St.<br>Santa Ana, CA 92701<br>Courtroom 10C |

PLEASE TAKE NOTICE that at 1:30 p.m. on July 15, 2024, or as soon thereafter as the matter may be heard, in the courtroom of the Honorable James V. Selna, located at the Ronald Reagan Federal Building and U.S. Courthouse, 411 West 4th Street, Courtroom 10C, Santa Ana, California 92701, the *Marvin & Henry* Plaintiffs will and hereby do move for an order of the Court awarding Barton Cerjak S.C., f/k/a Barton Legal S.C. ("Barton Cerjak" or the "Firm"), $2.175MM in attorneys' fees and $11,032.66 in litigation expenses out of the Common Fund created in this case should final approval of the revised settlement agreement be granted.

This Motion is based on this Notice; the accompanying Memorandum of Law; the Declaration of James B. Barton; the Declaration of Lauren Kawetschansky; the Declaration of Lauren Hernandez; the Declaration of Gerald Smith; the Declaration of Erin K. Dickinson; all attachments thereto; the Proposed Order Granting the *Marvin & Henry* Plaintiffs Motion for Fee & Expense Award; and all other papers filed and proceedings had in this Action.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, as detailed and set forth in the Declaration of James B. Barton.

Dated: April 18, 2024                    Respectfully Submitted.

                    **BARTON CERJAK S.C.**

                    By:    /s/ James B. Barton
                    James B. Barton (admitted *pro hac vice*)
                    jbb@bartoncerjak.com
                    313 N. Plankinton Ave., Suite 207
                    Milwaukee, WI 53203
                    T: (414) 488-1822
                    F: (414) 877-3039

                    *Counsel for the Marvin & Henry Plaintiffs*

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION.................................................................1

II.    FACTS & PROCEDURAL POSTURE.....................................1

    A. Barton Cerjak Starts Investigating the Explosion of Thefts In The Class Vehicles...................................................................1

    B. The *Marvin* Action is Filed in Wisconsin State Court....................2

    C. Barton Cerjak Intensifies Its Investigation And Identifies Additional Class Representatives to Augment The *Marvin* Action's Scope................................................................ 2

    D. Barton Cerjak Files The Marvin FAC And Actively Litigates The Case For A Year While It Remains Under Seal............................3

    E. The Marvin FAC Becomes Public And A Hydra Of Litigation Ensues...................................................................4

    F. The MDL, The Resultant Settlement, And Barton Cerjak's Involvement.............................................................5

III.   LEGAL STANDARD.........................................................7

    A. Fee Awards Under Rule 23..............................................7

    B. Lodestar v. Percentage Of Recovery.....................................7

    C. Non-Lead Counsel & The Common Benefit Doctrine..................7

IV.   ARGUMENT

    A. Barton Cerjak Provided Meaningful Benefit To The Class And Is Consequently Entitled To An Award From The Common Fund....................................................................9

    B. The Fee Request is Supported By A Lodestar Crosscheck............11

       1. Counsel's Rates Are Reasonable................................11

       2. The Hours Spent Were Reasonable.........................13

       3. The Resulting Multiplier Is Appropriate..................13

    C. The Expenses Incurred Are Reasonable.........................13

D. Other Considerations.........................................................................14

V.      CONCLUSION.............................................................................................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Activision Sec. Litig.*,
723 F. Supp. 1373, 1374–77
(N.D. Cal. 1989)...................................................................................7

*AdTrader, Inc. v. Google LLC*,
Case No. 17–cv–07082–BLF, 2020 WL 1921774 at *6
(N.D. Cal. March 24, 2020)...............................................................10

*In re Bluetooth Headset Prods. Liability Litig.*,
654 F.3d 935, 941
(9th Cir. 2011)......................................................................................7

*Boeing Co. v. Van Gemert*,
444 U.S. 472, 478
(1980).............................................................................................7– 8

*Carson v. Billings Police Dep't*,
470 F.3d 889, 892
(9th Cir. 2006)....................................................................................11

*In re Cendant Corp. Securities Litigation*,
404 F.3d 173, 197
(3d Cir. 2005).......................................................................................9

*Chalmers v. City of Los Angeles*,
796 F.2d 1205, 1210–11
(9th Cir. 1986)....................................................................................12

*In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*,
55 F.3d 768, 820
(3d Cir. 1995).......................................................................................7

*Georgino v. Sur la Table, Inc.*,
No. CV1103522MMMJEMX, 2013 WL 12122430, at *18
(C.D. Cal. May 9, 2013)............................................................................11

*Indep. Living Ctr. of S. Cal., Inc. v. Kent*,
909 F.3d 272, 284
(9th Cir. 2018)........................................................................................8

*Ingram v. Oroudjian*,
647 F.3d 925, 928
(9th Cir. 2011)........................................................................................12

*Madenlian v. Flax USA, Inc.*,
No. SACV131748JVSJPRX, 2015 WL 13754685, at *7
(C.D. Cal. Mar. 16, 2015).........................................................................7

*In re Mercury Interactive Corp.*,
618 F.3d 988, 992
(9th Cir. 2010)........................................................................................7

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454, 459
(9th Cir. 2000)........................................................................................10

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036, 1046
(N.D. Cal. 2008)......................................................................................7

*Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*,
281 F. Supp. 3d 833, 851
(N.D. Cal. 2017)......................................................................................12

*Rodriguez v. Disner*,
688 F.3d 645, 653
(9th Cir. 2012)........................................................................................8

*Sandler Partners, LLC v. Masergy Commc'ns, Inc.*,
No. CV 19–6841–JFW(MAAX), 2020 WL 7347869, at *2
(C.D. Cal. Sept. 30, 2020).......................................................................12

*Sarabia v. Ricoh USA, Inc.,*
No. 820CV00218JLSKES, 2023 WL 3432160, at *8
(C.D. Cal. May 1, 2023)..........................................................................................12

*Schwarz v. Sec'y of Health & Human Servs.,*
73 F.3d 895, 906
(9th Cir. 1995)......................................................................................................12

*Title Tracy Anderson Mind & Body, LLC v. Roup,*
No. 222CV04735PSGEX, 2023 WL 6890744, at *3
(C.D. Cal. Sept. 11, 2023).....................................................................................12

*In re Toys R Us–Delaware ("Toys R Us"), Inc.–Fair & Accurate Credit Transactions Act
(FACTA) Litig.,*
295 F.R.D. 438, 461
(C.D. Cal. 2014)...................................................................................................12

*Vincent v. Hughes Air West, Inc.,*
557 F.2d 759
(9th Cir. 1977)........................................................................................................7

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.,*
914 F.3d 623, 641
(9th Cir. 2019)........................................................................................................8

*Vizcaino v. Microsoft Corp.,*
290 F.3d 1043, 1048–50
(9th Cir. 2002)........................................................................................................9

*Welch v. Metro. Life Ins. Co.,*
480 F.3d 942, 947
(9th Cir. 2007)......................................................................................................11

## I.  INTRODUCTION

Three years ago, as the Milwaukee metropolitan area was being enveloped in an auto theft "epidemic," as the Milwaukee Police Department ("MPD") put it, Barton Cerjak S.C., f/k/a Barton Legal S.C. ("Barton Cerjak" or the "Firm"), began investigating why the vehicles of two importers, Kia America, Inc. ("Kia") and Hyundai Motor America ("Hyundai"), comprised nearly 70% of these thefts. Those efforts culminated in filing the first class action in the U.S. against Kia, Hyundai, and an affiliate entity, Hyundai Kia America Technical Center, Inc. ("HATCI"); that case identified the defect causing these thefts and, relevant here, spawned the hydra of litigation that led to the creation of this MDL.

Ultimately, however, the Firm who championed this case from the outset was not selected to meaningfully participate once the MDL was convened and the case resolved shortly thereafter, creating a significant common fund for the Class from which MDL Class Counsel is now seeking their fees and costs. To be sure, no one quarrels with Class Counsel seeking the fees that it has earned. But the entirety of the settlement—including the fees awarded to all participants—must be reasonable.

## II.  FACTS & PROCEDURAL POSTURE

### A.  Barton Cerjak Starts Investigating The Explosion Of Thefts In The Class Vehicles.

In May 2021, Barton Cerjak began assessing potential claims against Kia and Hyundai after learning of the vehicle theft crisis through social media posts and news articles. (Declaration of James Barton ("Barton Decl."), ¶¶ 6–7.) Over the next few weeks, the Firm conducted an investigation to glean what caused this crisis. Mr. Barton and his team reviewed scores of news articles and social media posts documenting the sharp rise in thefts of Kia and Hyundai vehicles in Milwaukee; they gathered information from online forums discussing potential defects in these vehicles' ignition systems that made them easy to steal; they purchased exemplar

steering columns to test and diagnose the defect; and they reviewed a legion of regulatory filings to understand why Kia and Hyundai vehicles were being disproportionately targeted. (Barton Decl. ¶¶ 6–7.)

**B.    The *Marvin* Action is Filed In Wisconsin State Court.**

Those research findings culminated in filing the first class action in the nation against Kia, Hyundai, and HATCI in the Milwaukee County Circuit Court on June 23, 2021; a case that was then removed to the Eastern District of Wisconsin (discussed *infra*). *See Marvin v. Kia America, Inc. et al.*, E.D. Wis. Case No. 2:21-cv-01146-PP (the "*Marvin* Action" or the "First-Filed Suit"), *renumbered as* C.D. Cal. Case No. 8:22-CV-02304-JVS-KESx (hereafter, the "*Marvin* Dkt.").

**C.    Barton Cerjak Intensifies Its Investigation And Identifies Additional Class Representatives To Augment The *Marvin* Action's Scope.**

Meanwhile, the Firm's investigation intensified. It thoroughly analyzed the history and purpose of Federal Motor Vehicle Safety Standard 114, which sets minimum anti-theft requirements for vehicles. The Firm researched immobilizer technology and its widespread adoption by other automakers decades earlier. Crime data, NHTSA petitions, and communications with Kia and Hyundai were carefully reviewed. The firm consulted with an automotive engineering expert to further understand and identify the multi-faceted defect that was plaguing these vehicles.

Through these efforts, the Firm identified how Defendants' failure to incorporate standard immobilizer technology in virtually all their models—along with other design defects to these vehicles' ignition systems—precipitated the scourge of auto theft plaguing metropolitan Milwaukee. What is more, the Firm uncovered evidence which appeared to indicate that Defendants had actual or constructive knowledge of this problem for years. Additional impacted clients were retained to expand the scope of the *Marvin* Action, but Defendants rejected all settlement overtures, so the Firm prepared to expand the *Marvin* Action's scope and add new claims and parties.

**D.      Barton Cerjak Files The *Marvin* FAC And Actively Litigates The Case For A Year While It Remains Under Seal.**

With a significant amendment to the complaint underway, Defendants were served and removed the *Marvin* Action to the Eastern District of Wisconsin. (*Marvin* Dkt. # 1.) Thereafter, counsel for the parties stipulated to various procedural matters, including: (1) the date by which Plaintiffs would amend their pleadings and add additional class representatives; and (2) a briefing schedule on Defendants' forthcoming motion to dismiss. (*Id*. Dkt. 3.) The First Amended Complaint ("FAC") in the *Marvin* Action was filed under seal on November 4, 2021, (*id*. Dkt. 12 to 12–21); Defendants' motions to dismiss the FAC were filed on December 22nd, (*id*. Dkt. 19–20); Plaintiffs' omnibus brief in opposition was filed on February 28, 2022, (Dkt. 30); and Defendants' reply brief was filed on March 25, (*id*. Dkt. 32).

Despite the parties' starkly divergent views of the case, there was one thing on which they agreed: the FAC painstakingly alleged a defect, which Plaintiffs asserted was the root cause of the auto theft crisis unfolding in Milwaukee. (*See id*. Dkt. 12–1.[1]) Thus, the parties agreed that this pleading—like the original *Marvin* Complaint—should remain sealed. (*Id*. Dkt. 26.) Cognizant of the need for open and transparent court proceedings, however, the parties also stipulated to a set of redactions to keep less-widely reported—albeit, readily discernable—aspects of the defect shielded from the passing glance of the public eye. (*Id*.)

Indeed, given the FAC's detailed allegations, Plaintiffs raised serious concern that publishing this information in one, cohesive document could cause auto thefts to proliferate—both in Wisconsin and beyond its borders. (*Id*.) Judge Pepper ultimately agreed, finding there was good cause to seal this pleading and approving

---

[1] The foregoing citation is to the sealed version of the FAC. As noted below, a redacted, publicly available version was filed on July 8, 2022. (See Marvin Dkt. # 35.)

the proposed redactions, so that a publicly-available version of the FAC could be filed in an effort to mitigate these risks:

> *Having reviewed the 168-page amended complaint and the proposed redactions*, the court is satisfied that the parties have made sufficient effort to narrowly tailor the redactions to prevent the disclosure of the design defect that allegedly makes it easy to steal the Kia and Hyundai cars. *While some of this information could be discovered through an internet search, not all of it appears to be publicly available or consolidated into a single document.* The court finds that the parties have established good cause for restricting the amended complaint and for filing a redacted version of the same.

(*Marvin* Dkt. # 34 (emphasis added).) With Defendants' motions fully briefed and awaiting disposition, the Firm continued its investigation and began exploring other theories of liability, as the auto theft epidemic showed no sign of relenting.

**E.    The *Marvin* FAC Becomes Public And A Hydra Of Litigation Ensues.**

The redacted FAC in *Marvin*—including its numerous exhibits containing the "publicly available" information marshaled through the Firm's exhaustive research efforts—was publicly filed on July 8, 2022. (*Marvin* Dkt. # 35.) A deluge of suits were filed in the weeks thereafter, many of which crib—and in some instances, copy verbatim—myriad unredacted allegations from the FAC. (Barton Decl., Ex. 3.)

To expand the scope of the *Marvin* Suit, and given the situs of Defendants' corporate headquarters, Barton Cerjak filed a separate action in the Central District of California that was initially assigned to Judge Holcomb. *See Henry v. Kia America, Inc.*, C.D. Cal. Case No. 8:22-cv-01729 (the "*Henry* Suit"). Meanwhile, lawyers from around the country were briefing a motion to transfer and consolidate filed before the JPML.

**F.      The MDL, The Resultant Settlement, And Barton Cerjak's Involvement.**

On December 13, 2022, the JPML ordered all pending class actions to be consolidated before this Court. (Dkt. 1.) The Court convened a hearing and appointed a leadership committee on February 9, 2024. (Dkt. 50.) A Consolidated Class Action Complaint ("CAC") was filed on April 10. (Dkt. 84.) As with scores of prior pleadings, the CAC finds its lifeblood in the *Marvin* FAC.

Defendants filed their motion to dismiss the CAC on May 1, 2023, noting that the genesis of the MDL started with *Marvin*. (Dkt. 95 at 22/65 (explaining when *Marvin* was filed and stating that "[l]ike the copycat actions that would follow, *Marvin* alleged that certain security features on certain Hyundai and Kia vehicles were inadequate"); *see also id.* ("Starting over a year after the filing of the original [*Marvin*] complaint, . . . *several law firms began filing nearly–identical actions in other jurisdictions.*") (emphasis added).) Notably, however, Defendants' motion to dismiss the CAC abandoned defenses they previously asserted to dismiss the *Marvin* FAC; contentions that Barton Cerjak addressed and thoroughly debunked in response to Defendants' original motion.[2]

As for Defendants' renewed contention they raised in both cases—namely, that they cannot be held liable for the criminal conduct of third parties—Barton Cerjak emailed Class Counsel to explain why Defendants' attempt to inject tort defenses into a contract case was dubious. But this quickly became a moot point; on May 18, 2023, less than three weeks after Defendants moved to dismiss the CAC, the parties filed a joint statement and stipulation to indicate that they had reached a settlement in principle of the consumer class action claims. (Dkt. # 107.)

---

[2] Specifically, Defendants abandoned their preemption defense and standing arguments they invoked in *Marvin* to dismiss the entire case and/or substantially reduce the size of the class. (*Compare Marvin* Dkt. # 20 (raising those arguments) *with* Dkt. # 95 (dropping arguments entirely); *see also Marvin* Dkt. # 30 (*Marvin* Pl.'s Opp'n Br. explaining why those defenses fail).)

As this filing indicates, the settlement was a byproduct of "months of negotiations, including multiple mediation sessions with the Honorable Margaret M. Morrow (ret.)." (*Id.*) In other words, Defendants reassessed their exposure *after* the *Marvin* FAC and *Henry* Actions were filed and their original motion to dismiss in *Marvin* was fully briefed to conclude that a classwide settlement was more prudent. In fact, settlement discussions began even prior to the creation of the MDL, and which contemplated resolving the *Marvin* and *Henry* Actions. (*See* Barton Decl., ¶ 24.)

In seeking preliminary approval before discovery began in earnest, the parties represented that they relied on work done in the *Marvin* Action to justify the sufficiency of their investigation; a critical step that allows counsel and the court to properly assess the merits of a classwide resolution. (Dkt. # 166 at 24/43 ("Plaintiffs also understood the strengths and weaknesses of their claims, which were a topic of discussion throughout the mediations and briefed in Defendants' motion to dismiss the CAC, *as well as the motions filed in the Marvin action*.") (emphasis added).)

The Court granted preliminary approval of the Revised Settlement Agreement on October 31, 2023. (Dkt. 256.) The Settlement Agreement is "governed by and construed in accordance with the substantive laws of California without giving effect to any choice or conflict of law provision, or rule that would cause the application of the laws of any other jurisdiction." (Dkt. 247-1 at 31/70, § X(A).) The Court's Preliminary Approval Order set an **April 18, 2024** deadline by which to file Motions for Awards of Attorneys' Fees, Expenses, and Service Awards.[3] (Dkt. # 256.)

---

[3] Out of courtesy to all parties, and out of the utmost caution in compliance with the Local Rules, Barton Cerjak attempted to meet-and-confer with Class Counsel and Defendants' counsel to avoid filing this motion. Those efforts were not successful. (*See* Barton Decl., ¶¶ 30–31.)

### III.   LEGAL STANDARD

**A.    Fee Awards Under Rule 23**

Rule 23 permits a court to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prods. Liability Litig.*, 654 F.3d 935, 941 (9th Cir. 2011).

**B.    Lodestar v. Percentage Of Recovery**

"Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." *Id.* at 942 (citing *In re Mercury Interactive Corp.*, 618 F.3d 988, 992 (9th Cir. 2010)) (further citations omitted).  Notwithstanding this discretion, "use of the percentage method in common fund cases appears to be dominant." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (collecting cases); *see also In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1374–77 (N.D. Cal. 1989) (collecting authority and describing benefits of the percentage method over the lodestar method).  If the Court elects to calculate fees under the percentage method, "[t]he benchmark percentage of recovery for attorneys' fees in a common fund settlement is 25 percent of the total settlement fund." *Madenlian v. Flax USA, Inc.*, No. SACV131748JVSJPRX, 2015 WL 13754685, at *7 (C.D. Cal. Mar. 16, 2015) (collecting cases). This percentage may then be adjusted upward or downward depending on a variety of factors. *Id.*

**C.    Non-Lead Counsel & The Common Benefit Doctrine**

The Common Benefit Doctrine ("CBD") "provides that a private plaintiff, or plaintiff's attorney, whose efforts create, discover, increase, or preserve a fund to which others also have a claim, is entitled to recover from the fund the costs of his

litigation, including attorneys' fees." *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 820 (3d Cir. 1995) (citing *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759 (9th Cir. 1977)); *see also Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigation or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."). Indeed, the Ninth Circuit has repeatedly held that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 284 (9th Cir. 2018); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, 914 F.3d 623, 641 (9th Cir. 2019) ("Appellants would be entitled to attorneys' fees only if they contributed to the creation of a common fund or otherwise benefited the class."); *Vincent*, 557 F.2d at 769 ("The common fund doctrine provides that a private plaintiff, or his attorney, whose efforts create, discovery, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees.").

To have an entitlement to attorneys' fees under the CBD, the Ninth Circuit has identified three factors that must be established: "(1) the class of beneficiaries is sufficiently identifiable, (2) the benefits can be accurately traced, and (3) the fee can be shifted with some exactitude to those benefitting." *Indep. Living Ctr.*, 909 F.3d at 285. At the same time, the Ninth Circuit has not required any causal connection between a lawsuit and common fund; rather, the Ninth Circuit has stated that the "central issue" is "whether [plaintiffs'] efforts meaningfully benefited the class." *In re Volkswagen*, 914 F.3d at 642; *see also Indep. Living Ctr.*, 909 F.3d at 285 (the question is "whether a plaintiff has conferred a benefit on others"). "The guiding principle is that attorneys' fees be reasonable under the circumstances." *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012).

## IV.   ARGUMENT

**A.   Barton Cerjak Provided Meaningful Benefit To The Class And Is Consequently Entitled To An Award From The Common Fund.**

As noted above, "[t]he benchmark percentage of recovery for attorneys' fees in a common fund settlement is 25 percent of the total settlement fund." *Madenlian v. Flax USA, Inc.*, No. SACV131748JVSJPRX, 2015 WL 13754685, at *7 (C.D. Cal. Mar. 16, 2015) (collecting cases). This figure may then be "adjusted from the benchmark after taking into account several factors, such as the results achieved, the risk involved in undertaking the litigation, the generation of benefits beyond the cash settlement fund, the market rate for services, the contingent nature of the fee, the financial burden to counsel, the skill required, the quality of the work, and the awards in similar cases." *Id.*; *see also In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (setting forth these factors) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

Applied here, Class Counsel is independently seeking an award from the $145,000,000 common fund and will undoubtedly address the reasons why such an award is appropriate. Counsel for the *Marvin* & *Henry* Plaintiffs agree. Class Counsel is entitled to an award, provided it falls within the range of reasonableness. The only consideration here is whether the time and effort expended by counsel for the *Marvin* & *Henry* Plaintiffs should *also* be included and, if so, at what amount.

As noted above, the "central issue" is "whether [plaintiffs'] efforts meaningfully benefited the class." *In re Volkswagen*, 914 F.3d at 642; *see also Indep. Living Ctr.*, 909 F.3d at 285 (the question is "whether a plaintiff has conferred a benefit on others"). For instance, "attorneys who alone discover grounds for a suit, based on their own investigation rather than on public reports, legitimately create a benefit for the class." *In re Cendant Corp. Securities Litigation*, 404 F.3d 173, 197 (3d Cir. 2005). In those cases, "[s]uch attorneys should generally be compensated out of

the class's recovery, even if the lead plaintiff does not choose them to represent the class." *Id.*

Thus, "*attorneys whose complaints contain factual research or legal theories that lead counsel did not discover, and upon which lead counsel later rely, will have a claim on a share of the class's recovery.*" *Id.* (emphasis added). "The Ninth Circuit has not required any causal connection between the lawsuit and the common fund." *AdTrader, Inc. v. Google LLC*, Case No. 17–cv–07082–BLF, 2020 WL 1921774 at *6 (N.D. Cal. March 24, 2020). The focus is on whether the lawyer's efforts "meaningfully benefited" the class. *Id.* (citing *In re Volkswagen*, 914 F.3d at 642).

Applied here, Class Counsel's ability to drive a settlement through the quality of its work should be lauded. It is undeniable, however, that portions of its work were derived from Barton Cerjak's previous efforts. (Barton Decl. Ex. 3.) And once the MDL was created, the case settled in its infancy before Defendants' motion to dismiss was even adjudicated. This matters here because plaintiffs justified the sufficiency of their investigation by again relying on the briefing in the *Marvin* Action to educate themselves about the case. Thus, the work undertaken by Barton Cerjak served as one of the conduits to achieve the classwide settlement. *Cf. In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("In the context of class action settlements, 'formal discovery is not a necessary ticket to the bargaining table' where the parties have sufficient information to make an informed decision about settlement.") (citation omitted).

Accordingly, a relatively nominal percentage fund—1.5% of a $145,000,000 common fund totaling $2,175,000—is appropriate, even when factoring in Class Counsel's petition from the same fund. *See, e.g.*, *AdTrader, Inc.*, 2020 WL 1921774 at *6 (awarding 1.1% of the common fund for litigants' efforts that prompted Google to take action and issue refunds). This is particularly appropriate here given the risks attendant to the litigation. Barton Cerjak took the risk of filing this case more than

10

a year before any other firm in the country. There was no roadmap; the road was created through exhaustive research that culminated in a 168–page complaint that served as a template for scores of subsequently filed actions. Accordingly, 1.5% of the common fund—23.5% less than the "benchmark" rate established by the Ninth Circuit—is a reasonable sum for these efforts.

**B.      The Fee Request Is Supported By A Lodestar Crosscheck.**

"In cases where courts apply the percentage method to calculate fees, they generally use a rough calculation of the lodestar as a cross–check to assess the reasonableness of the percentage award." *Georgino v. Sur la Table, Inc.*, No. CV1103522MMMJEMX, 2013 WL 12122430, at *18 (C.D. Cal. May 9, 2013) (citing *Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award")). In these situations, multiples of 1x to 4x the lodestar are within the range of reasonableness. *Reyes*, 281 F. Supp. 3d at 860 (collecting cases). As demonstrated below and set forth in the accompanying declaration, Barton Cerjak's lodestar calculation totals $1,174,564.50 based off 2,409.4 hours of work, meaning a $2.175MM award from the $145MM common fund results in a multiplier of 1.85x the lodestar. (*See* Barton Decl., ¶ 32.)

**1.      Counsel's Rates Are Reasonable**

The Ninth Circuit repeatedly holds that "the determination of a reasonable hourly rate 'is not made by reference to the rates actually charged the prevailing party.'" *Welch v. Metro. Life Ins. Co.*, 480 F.3d 942, 947 (9th Cir. 2007) (collecting cases); *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) (holding that the prevailing market rate, not the individual contract between the applicant attorney and the client, "provides the standard for lodestar calculations"). Rather, "[t]o determine a reasonable hourly rate, the court looks to 'the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience,

11

and reputation.'" *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 281 F. Supp. 3d 833, 851 (N.D. Cal. 2017) (quoting *Chalmers v. City of Los Angeles*, 796 F.2d 1205, 1210–11 (9th Cir. 1986)). The relevant community refers to the "forum community." *Reyes*, 281 F. Supp. 3d at 851 (citing *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d 895, 906 (9th Cir. 1995)); *accord In re Toys R Us–Delaware* ("*Toys R Us*"), *Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 461 (C.D. Cal. 2014) (stating that "the relevant community is that in which the district court sits") (citing *Schwarz, supra*).

Courts in this Circuit have repeatedly held that "[d]eclarations regarding the prevailing market rate in the relevant community suffice to establish a reasonable hourly rate." *Toys R Us, supra* (collecting cases). Courts also rely on other evidence to determine the reasonableness of the rate sought, including: (a) survey data, *Toys R Us, supra*; (b) other cases approving similar rates, *Sandler Partners, LLC v. Masergy Commc'ns, Inc.*, No. CV 19–6841–JFW(MAAX), 2020 WL 7347869, at *2 (C.D. Cal. Sept. 30, 2020) (collecting cases); and (c) the court's "own knowledge and experience" of rates, *Ingram v. Oroudjian*, 647 F.3d 925, 928 (9th Cir. 2011).

Applied here, the Declaration of Erin Dickinson is being submitted herewith to establish the reasonableness of Barton Cerjak's hourly rates, which also catalogues caselaw supporting this analysis. Further, cases in this district establish the rates are below average. *See, e.g., Title Tracy Anderson Mind & Body, LLC v. Roup*, No. 222CV04735PSGEX, 2023 WL 6890744, at *3 (C.D. Cal. Sept. 11, 2023) (relying on the Real Rate Report and stating that "In Los Angeles, the median hourly rate for commercial litigation attorneys is $849 for partners and $686 for associates, while the fee rates in the upper quartile of attorneys are $1,071 for partners and $876 for associates."); *see also Sarabia v. Ricoh USA, Inc.*, No. 820CV00218JLSKES, 2023 WL 3432160, at *8 (C.D. Cal. May 1, 2023) (median rate for paralegals is $225). Thus, Mr. Barton's rate of $765 per hour is well below the median for partners as is Mr.

Greenberg's rate of $445 per hour. (*See* Barton Decl. ¶¶ 32–34.) Further, Mr. Edelstein's role is also below these figures. (*See* Barton Decl., ¶ 32.)

### 2. The Hours Spent Were Reasonable

The hours spent litigating the case were also reasonable. The Firm conducted exhaustive research that culminated in filing a 168–page Complaint; it fully briefed Defendants' motions to dismiss in the *Marvin* Action; and it also filed the *Henry* Action. Along the way, it interacted with thousands of auto theft victims, including multiple class members. (Barton Decl. ¶ 15.) To further substantiate the reasonableness of its hours incurred, the Firm proffered the Declaration of Erin Dickinson, who also stated they were reasonable. (Dickinson Decl. ¶¶ 6–7.) As noted in Mr. Barton's declaration, the Firm is amenable to submit its billing records for *in camera* review should the Court deem necessary. (Barton Decl., ¶ 33.)

### 3. The Resulting Multiplier Is Appropriate

As noted above, a multiplier between 1x and 4x the lodestar is within the range of reasonableness. *Reyes*, 281 F. Supp. 3d at 860 (collecting cases). Applied here, an award of 1.5% of the common fund amounts to $2,175,000. When juxtaposed against the Firm's lodestar of $1,174,564.50, this would amount to a multiplier of 1.85x, which is within an acceptable range. This multiplier is appropriate here given that the Firm's work product was extensively utilized by others in the MDL. Further, this case was risky insofar as Defendants' express warranties disclaimed theft and Defendants could point to the criminal conduct of third parties to escape liability. All told, the case presented significant risk, which justifies the requested multiplier.

## C. The Expenses Incurred Are Reasonable

As the accompanying declaration indicates, Barton Cerjak incurred total expenses of $11,032.66 in connection with prosecuting the action. (Barton Decl. ¶ 43–44; *see also id*. Exs. 1–2.)

**D.      Other Considerations**

Finally, it is axiomatic that an important factor used to determine the reasonableness of a class action settlement is the reaction of the class members. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) (cataloguing the factors a court must consider to determine whether a class action settlement is "fair, adequate, and reasonable[,]" which includes "the reaction of the class members of the proposed settlement") (collecting cases). At the Final Approval Hearing, the Court will weigh voluminous evidence regarding these reasonableness factors to determine whether to grant final approval. Because this Petition bears on the calculus, the reaction of the Class Members is no less relevant.

Applied here, three of the Firm's clients—Lauren Hernandez (Minnesota), Gerlad Smith (Ohio), and Lauren Kawetschansky (Oklahoma)—were selected by Lead Counsel to represent their respective states as named plaintiffs in the CAC. Mrs. Hernandez, Mr. Smith, and Mrs. Henry have each prepared declarations in support of this Fee Petition that detail: (a) their interactions with Barton Cerjak throughout the pendency of this case; (b) the lack of interaction each has had with other lawyers involved (even after being selected as Class Plaintiffs); and (c) their views on whether Barton Cerjak should be entitled to an award based on the Firm's efforts since the outset of the disputes culminating in this MDL. (See *generally* Declarations of these Class Representatives, which are being filed herewith.)

<u>CONCLUSION</u>

For the foregoing reasons, Barton Cerjak S.C., as counsel for the *Marvin* & *Henry* Plaintiffs, requests an award from the common fund totaling 1.5% of $2.175MM based on a lodestar of $1,174,564.50 that, pursuant to a lodestar crosscheck equates to a multiplier of 1.85x.  Counsel further requests that its $11,032.66 be deemed reasonable and awarded as well.

BARTON CERJAK S.C.

*/s/ James B. Barton*

James B. Barton (admitted *pro hac vice*)
*jbb@bartoncerjak.com*
313 N. Plankinton Ave., Suite 207
Milwaukee, WI 53203
T: (414) 488–1822
F: (414) 877–3039

*Counsel for the Marvin & Henry Plaintiffs*

1

## <u>CERTIFICATE OF COMPLIANCE</u>

I, James B. Barton, Counsel for Plaintiffs in *in Marvin et al. v. Kia America Inc., et al.*, No. 8:22–cv–02304–JVS–KES (E.D. Wis.), and *Henry et al. v. Kia America Inc., et al.*, No. 8:22–cv–01729–JWH–DFM (C.D. Cal.), hereby certify that the Foregoing Fee Motion contains 4,429 words, which complies with the word limit set forth in L.R. 11–6.1. I further certify that on April 18, 2024, I caused the foregoing Fee Motion to be electronically filed using the Court's CM/ECF system, thereby electronic serving it upon on all counsel of record.

*/s/ James B. Barton*
James B. Barton