James B. Barton, Esq. (admitted *pro hac vice*)
*jbb@bartoncerjak.com*
BARTON CERJAK S.C.
313 N. Plankinton Ave., Ste. 207
Milwaukee, WI 53203
Telephone: (414) 488-1822
Facsimile: (414) 877-3039
*Counsel for Plaintiffs In The Marvin*
*& Henry Actions*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>CONSUMER CLASS ACTION | CASE NO.: 8:22-ML-3052 JVS(KESx)<br><br>**DECLARATION OF JAMES B. BARTON**<br><br>Date: July 15, 2024<br>Time: 1:30 p.m.<br>Place: 411 W. Fourth St.<br>Santa Ana, CA 92701<br>Courtroom 10C |

## DECLARATION OF JAMES B. BARTON

I, James B. Barton, submit the following declaration pursuant to 28 U.S.C. § 1746, and hereby declare as follows:

1.      My name is James Bennett Barton and I am the founding shareholder of Barton Cerjak S.C., f/k/a Barton Legal S.C.  I serve as counsel of record for the plaintiffs *Marvin et al. v. Kia America Inc., et al.*, *No. 8:22–cv–02304–JVS–KES (E.D. Wis.)* (the "*Marvin* Action") *& Henry et al. v. Kia America Inc., et al.*, *No. 8:22–cv–01729–JWH –DFM (C.D. Cal.)* (the "*Henry* Action"), which were consolidated in this court. My bio was previously filed with the Court in connection with my leadership application. (See Dkt. # 21.)

2.      Barton Cerjak is a litigation boutique that focuses on complex commercial litigation, class action, and personal injury matters. We have represented plaintiffs and defendants in a wide variety of business fraud cases, shareholder disputes, and contract disputes as well as civil rights, medical malpractice, defamation, insurance coverage, and personal injury cases. Over time, we have developed a wide–ranging and ever–growing class–action practice, and the firm and its attorneys have significant class action litigation experience. For example, within the last nine months, we have brought the following class–action matters:

- *Russo v. BRP US Inc.*, Eastern District of Wisconsin Case No. 2:23–cv–01355–LA (co-lead counsel in consumer product liability class action);

- *Bowen v. Community Within the Corridor Limited Partnership*, Milwaukee County Case No. 2023CV4417 (lead counsel in environmental contamination class action in which court has issued final approval for class–wide settlement);

- *Holt v. Brinshore Development, L.L.C.*, Milwaukee County Case No. 2023CV8601 (lead counsel on behalf of tenants in landlord–tenant class action); and

- *Ngaruko v. Cypress Bayshore Residential, LP*, Milwaukee County Case No. 2023CV5730 (lead counsel in environmental contamination class action).

3.     For cases in which the firm is involved, my partner Michael Cerjak and I generally manage client relationships, investigate facts and potential legal theories, provide leadership and case strategy, perform legal research, draft pleadings, and undertake discovery. Based on the novel theories at involved in this case, a substantial amount of investigation was necessary, and because of extensive news coverage that this matter has generated, particularly in our area, our firm has been contacted by over 12,000 individuals affected by the defect at issue in this case. Given the amount of work involved, I relied on Associate Attorney Joshua Greenberg to provide support with legal research and legal writing, and to provide another point of contact for clients or potential clients. Attorney Greenberg just recently left our office, and his biography is now available at the following webpage: https://gassturek.com/attorneys/joshua-s-greenberg/. I also relied on other staff members, including Contract Attorney Jonathan Wiest, Paralegal Benjamin Edelstein, Law Clerk Ian Clark, and Legal Assistant Kristie Leahy, to assist.

4.     Since May 2021, our firm has devoted in excess of two thousand hours to investigate and prosecute various consumer protection and related claims against Kia America, Inc. ("Kia"), Hyundai Motor America ("Hyundai"), and Hyundai Kia America Technical Center, Inc. ("HATCI"). Our work on this matter started in response to a growing auto–theft epidemic of which we learned in May 2021.

5.     As the Marvin Complaint and First Amended Complaint ("FAC") detail, thefts of certain Kia and Hyundai models were up 2,500% and auto thefts

were plaguing metropolitan Milwaukee. Apart from the victims of these auto thefts, the sheer number of stolen vehicles were making roadways unsafe. Media outlets were reporting people being injured and killed in motor vehicle accidents involving stolen Kias and Hyundais.

6.     Thus, our firm undertook a robust investigation to determine the root of the problem. Our research first centered on what made Kias and Hyundais, seemingly two distinct auto manufacturers, vulnerable to the same type of auto theft. Thus, we began investing the corporate structure of these importers, their Koren parent companies, their affiliate financing arm, their respective dealerships, and HATCI, their joint-design center.

7.     We also knew that there was an overlap in model years affecting both vehicles that began in 2011. Thus, we needed to understand what changed in both manufacturers' vehicles following the 2010 model years. This research caused us to focus on the ignition assembly and housing of both vehicles, which we also learned shared common features given the interrelated nature of both companies.

8.     Accordingly, we bought two steering columns from certain model years we believed were problematic—one Kia column and one Hyundai column—to better understand the mechanical features. Attached hereto as **Exhibit 1** is a true and correct copy of the invoice reflecting the purchase of these steering columns.

9.     Getting our hands on these steering columns proved invaluable, for we were quickly able to identify a mechanical design flaw that—when coupled with the vehicles' lack of an immobilizer systems—made them a prime target for auto theft.

10.     Based on this research, we filed the *Marvin* Complaint in Milwaukee County Circuit Court on June 23, 2021. At the time, however, our named plaintiffs had older model cars, so the vehicle warranties had expired and the limitations period on any consumer protection claims had passed.  Thus, we proceeded with a

DECLARATION OF JAMES B. BARTON

product liability claim—a statutory cause of action, *see* Wis. Stat. § 895.047—because the economic loss doctrine does not apply to statutory claims.

11.     But this theory of liability had not been actively litigated in Wisconsin, so we recognized the need to add additional plaintiffs into the case with newer model vehicles that were still under warranty. Not only would this increase our likelihood on the merits, but it would further demonstrate the substantial similarity of the design flaw we believed we identified across a swath of Defendants' vehicles. Accordingly, we began identifying other potential class representatives including Chad Just, Chaid Przybylski, Amy Flasch, and Lydia Davis, who ultimately joined the *Marvin* Action.

12.     Before doing so, however—and in an effort to resolve this matter with Kia and Hyundai—we submitted their respective claims through BBB Autoline as required under Kia and Hyundai's respective warranties. Every claim we filed was rejected. We then provided pre-suit notice under the U.C.C. and the Magnuson–Moss Warranty Act in a further effort to resolve this dispute. Those attempts to resolve the dispute were also rejected.

13.     Accordingly, we added these additional plaintiffs to the case once it was removed to federal court and filed the FAC on November 4, 2021.

14.     Of course, we also needed to ensure our theory was correct, so we also retained an engineering expert to confirm our findings were correct. Attached hereto as **Exhibit 2** is a true and correct copy of a check for the invoice, which we paid in September 2021.

15.     All told, the work we devoted to investigate and litigate this problem towards a resolution was substantial and involved: (a) reviewing hundreds of pages of regulatory filings; (b) thousands of pages of caselaw to hone our theory of the case; (c) scores of news articles and social media posts; (d) drafting two extremely complex complaints; (e) regularly communicating with current clients and putative class

DECLARATION OF JAMES B. BARTON

members; (f) parsing through client documents  and helping them preserve their rights by initiating BBB arbitrations and drafting pre-suit notices; (g) assisting co-counsel in preparing for mediations before the MDL was formed; (h) working with an expert to hone our theory of liability against Defendants; and (i) fully briefing Defendants' motion to dismiss in the *Marvin* Action.

16.     Significantly, however, the *Marvin* Plaintiffs' Complaint and First Amended Complaint ("FAC") were filed under seal given the detailed allegations associated with the defects afflicting Defendants' vehicles. We believed this was necessary to potentially mitigate the proliferation of auto thefts plaguing the City of Milwaukee.

17.     Recognizing the need for open and transparent court proceedings, however, we also worked with Defendants' counsel, Peter Brennan of Jenner & Block, to stipulate to a set of redactions to the *Marvin* FAC, so that a publicly available version could be filed.

18.     Judge Pepper, who was presiding over the *Marvin* Action in the Eastern District of Wisconsin, agreed this was sensible, stating that with respect to the 168-page *Marvin* FAC, although "some of this information could be discovered through an internet search, not all of it appears to be publicly available or consolidated into a single document." (*Marvin* Dkt. # 34.)

19.     Following this order, the redacted version of the *Marvin* FAC was filed on July 8, 2022. (*Marvin* Dkt. # 35 (FAC) & Dkt. 35-1 to 35-19 (Exs.).) Thirteen days later, the first related case against Defendants was filed. See, e.g., *Bendorf v. Kia America, Inc. et al.*, W.D. Mo. Case No. 4:22-cv-465-RK, which acknowledged the *Marvin* Action because its class definition excluded Wisconsin consumers. (See *Bendorf* Dkt. # 1, ¶ 27.) By August 31, 2022, when the *McNerney* Plaintiffs' Motion to Transfer and Consolidate was filed with the JPML, there were 16 lawsuits on file, many of which cribbed or copied verbatim the now-publicly available allegations in

DECLARATION OF JAMES B. BARTON

the *Marvin* FAC *and* the *Marvin* Plaintiffs' theory of liability; namely, holding Defendants liable for a breach of the implied warranty on account of the security concerns attendant to the thefts of these vehicles.  By way of example, attached hereto as **Exhibit 3** is a true and correct copy of a table that juxtaposes the factual allegations in the complaints filed by many of the attorneys appointed as Consumer Plaintiffs' Counsel against the *Marvin* FAC.

20.    Our firm prepared this chart to demonstrate the significant impact our investigative efforts—culminating in the filing of the *Marvin* FAC—had on the related actions that were filed thereafter, and which led to the creation of this MDL. The percentages reflected in the "Overview" page of the chart were calculated by taking the number of factual allegations that are the same or substantially similar to allegations found in the *Marvin* FAC and dividing that number by the total number of common factual allegations in that pleading.

21.    The similarity of these pleadings to the *Marvin* FAC—all of which were filed after the *Marvin* FAC was unsealed—is hardly a coincidence. Our work product played a crucial role in identifying the defect and related information to establish Defendants' culpability that led to these related actions being filed in short sequence after the *Marvin* FAC became public; efforts that directly culminated in the parties reaching a settlement in principle less than sixty days after the Consolidated Class Action Complaint in this case was filed.

22.    As the sharp increase in thefts of Kias and Hyundais began to proliferate throughout the country, we began receiving calls from persons affected in various other states. Our firm was fielding dozens of calls a week about this growing problem. We initially contemplating filing a second amendment to the *Marvin* Action, but Defendants' Motion to Dismiss had been fully briefed for months and had been awaiting disposition. Thus, any amendment would have mooted the currently pending briefing.

DECLARATION OF JAMES B. BARTON

23. Thus, we elected to partner with another firm, Sauder Schelkopf, to file a related case in California, this time on a nationwide basis. *See Henry et al. v. Kia America Inc., et al., No. 8:22–cv–01729–JWH –DFM (C.D. Cal.)* (the "*Henry* Action"). Three of the named plaintiffs in the *Henry* Action–(1) Gerald Smith (Ohio), (2) Lauren Hernandez (Minnesota), and (3) Lauren Kawetschansky (formerly, Ms. Lauren Henry) (Oklahoma)–were ultimately selected to serve as Class Representatives in the Consolidated Class Action Complaint ("CAC") once this MDL was created.

## PRE–MDL MEDIATION INVOLVEMENT

24. Even prior to the MDL, Defendants changed their position regarding a potential classwide resolution to this matter and agreed to mediate the dispute. My co-counsel attended the mediation, and I assisted him in preparing for it. The MOU generated in connection with that mediation is confidential, but settlement discussions contemplated resolving the *Marvin* & *Henry* Actions at the outset of this case.

25. The timing and uncertainty of the MDL briefly slowed discussions, but a settlement in principle was reached in May 2023 shortly after Class Counsel was appointed. While Class Counsel successfully resolved the case soon after being appointed, it is undeniable that significant work leading up to that point had been accomplished as a result of the filing and litigation of the *Marvin* Action and subsequent settlement negotiations that had taken place before the MDL.

## POST–MDL CONTRIBUTIONS

26. As noted below, my firm's lodestar does <u>not</u> include any time or expenses incurred following the Court's appointment of Class Counsel. Although we stayed abreast and in contact with various participants to keep our clients informed, we did not feel it was fair to seek these costs and expenses from the

DECLARATION OF JAMES B. BARTON

common fund because it would detract from Class Counsel's fee motion and operate to charge the Class twice.

27. Although our time spent on this matter has diminished since the MDL was created, the impact our initial efforts have on the case remains. For instance, the CAC—similar to the original suits that prompted the MDL—borrows heavily from the *Marvin* FAC to substantiate the classwide claims against Defendants.

28. In fact, Paragraph 1315 of the CAC is a photo of the steering columns that we originally purchased to diagnose the defect two years prior.

29. Further, I also put our expert in touch with Class Counsel, who I believe was retained to further assist Plaintiffs in this case.

30. In short, the impact our initial efforts had on the case are self-evident. Prior to the creation of the MDL, we devoted more time to this problem than any firm in the United States. Because we were not appointed to the Committee, however, our only ability to recoup the investment in this case was to work with Class Counsel or file this motion under the Common Benefit Doctrine. Thus, I contacted Class Counsel a few weeks ago, explaining that as a matter of professional courtesy, I wanted to discuss our contribution to the case to determine whether our hours could be submitted in connection with Class Counsel's Fee Petition. I provided the information requested but have not received a response.

31. Out of an abundance of caution, I also reached out to Defendants' counsel to ensure we complied with any meet-and-confer obligation. In that correspondence, I explained that because our entitlement to any fees would be through the common fund that Defendants agreed to fund, I assumed they took no position on our motion, but wanted to inform them nonetheless. As of the filing of this correspondence, I also have not heard back from them.

DECLARATION OF JAMES B. BARTON

## **LODESTAR**

32.     As of February 8, 2023, my firm has spent a total of 2,049.4 hours working on the *Marvin/Henry* Actions, for a total lodestar amount of $1,174,564.50, as reflected in the chart below:

| Name | Role | Rate | Hours | Lodestar |
|------|------|------|-------|----------|
| James Barton | Partner | $765 | 958.5 | $733,252.50 |
| Joshua Greenberg | Associate | $445 | 873.0 | $388,485.00 |
| Jonathan Wiest | Contract Atty. | $350 | 56.9 | $19,915.00 |
| Benjamin Edelstein | Paralegal | $225 | 104.4 | $23,490.00 |
| Ian Clark | Law Clerk | $195 | 39.6 | $7,722.00 |
| Kristie Leahy | Legal Asst. | $100 | 17 | $1,700.00 |
| **Totals** | | | *2,409.4* | *$1,174,564.50* |

33.     Given the amount of privileged information contained in the hourly billing records, which memorialize discussions with various clients, they are not attached here, but will be provided *in camera* should the Court deem appropriate.

34.     Before submitting this declaration, I reviewed our firm's time entries and itemized expenses in connection with calculating the lodestar for our efforts in the *Marvin* & *Henry* Actions. I then eliminated any expense or time entry that, in my professional judgment, could be viewed as redundant or unnecessary.

35.     For example, there are no time entries that post-date the Court's appointment of Class Counsel in this MDL. Although we stayed abreast of the status of the case, so that we could competently answer any questions, comments, or concerns that our clients had, none of that time is included in the lodestar. In fact, much of it was not even recorded.

36.     Rather, any time our firm spent to monitor the case once Class Counsel was appointed was done: (a) to stay informed about how the case we first initiated in June 2021 would unfold; and (b) more importantly, out of a sense of obligation to our numerous clients who are class members, including three clients who were selected as Consumer Plaintiffs in the Consolidated Class Action Compliant; specifically, Mr. Gerald Smith (Ohio), Ms. Lauren Kawetschansky (formerly, Ms. Lauren Henry) (Oklahoma), and Ms. Lauren Hernandez (Minnesota).

37.     Nor is my firm seeking attorneys' fees in connection with bringing this instant fee motion, which are typically recoverable. *See, e.g., Kries v. City of San Diego*, No. 17-CV-1464-GPC–BGS, 2021 WL 120830, at *14 (S.D. Cal. Jan. 13, 2021) (stating that "'[f]ees-on-fees'—or fees for work on a motion for attorney's fees—are typically recoverable") (collecting cases).

38.     Rather, this fee motion is based on the significant time and related expenses that my firm incurred to develop the theory of liability against Defendants and then litigate the *Marvin* & *Henry* Actions *before* the Court appointed Class Counsel in the MDL. In fact, the majority of these fees and expenses relate to our firm's effort in actively litigating the first-filed *Marvin* Action, all of which pre-date the MDL and the slew of actions that followed by more than a year.

39.     The hourly rates of Barton Cerjak attorneys in this case range from $445 per hour for associate work to $745 per hour for partner work. Legal assistants and paralegals range from $100 per hour to $225 per hour. These rates are based on the current, customary hourly billing rates of professionals at the firm.

40.     One contract attorney was also billed at a reasonable rate of $350 per hour.

41.     These rates are based on a study of the prevailing market rates in this District for attorneys of comparable skill, experience, and qualifications as well as the Declaration of Erin K. Dickinson, which is being filed herewith. I am aware of

DECLARATION OF JAMES B. BARTON

the hourly rates charged by other attorneys with comparable experience as well as the attorneys within my firm who worked on this matter. Thus, I believe that these rates are consistent with the market rates for attorneys and legal professionals in the Los Angeles Area with similar skillsets. They are also comparable to reasonable rates of attorneys that specialize in complex litigation around the country, which I have done my entire career. Based on this information, I believe the rates charged by Barton Cerjak S.C. are reasonable and appropriate fees for those with comparable skills and qualifications.

42.    The work performed in this case was reasonable and necessary to the prosecution of this case and played a material part in driving an early resolution of this matter. Our significant factual investigation during the prosecution of this action was used in connection with the filing of scores of lawsuits around the country, including by those selected to various committees in this MDL. In fact, it was only after the *Marvin* FAC was filed and motion was briefed that Defendants decided to re-evaluate an early settlement. I'm sure other reasons bore on this calculus, but our work product and litigation in the *Marvin* and *Henry* Actions played a large part. Indeed, Class Counsel was able to settle this case for a very substantial sum within sixty days of filing the Consolidated Class Action Complaint without a motion to dismiss ever being ruled upon. Accordingly, I respectfully submit that the *Marvin* & *Henry* Plaintiffs provided a material benefit to the Settlement Class, for which reasonable compensation is warranted.

## EXPENSES

43.    As of February 8, 2023, my firm has incurred $11,032.66 in costs associated with this litigation. The majority of these expenses were incurred in connection with retaining an engineering expert to assist us in identifying and describing the various facet of the Defect. (See Ex. 2.) We also purchased steering columns of Kia and Hyundai vehicles to test and hone our theory of the case. (See

Ex. 1.) The remaining expenses (e.g., filing fees, postage, travel expenses, etc.) are set forth in the table below and reflected in the books and records of my firm.

| Date | Description | Amount |
|------|-------------|--------|
| 6/18/2021 | B&M Auto Receipt for Wheel Columns | $178.50 |
| 6/23/2021 | Filing Fee for Summons and Complaint | $296.95 |
| 7/6/2021 | Paper Street Invoice for Website Work | $300.00 |
| 7/13/2021 | Quantum Invoice for Scanning Just Docs | $50.64 |
| 9/16/2021 | Process Server Invoice for Serving HATCI | $170.56 |
| 9/16/2021 | Receipt for Mailing S&C to Process Servers | $154.50 |
| 9/23/2021 | FedEx Receipt for Mailing Notice Ltrs. | $57.44 |
| 9/25/2021 | Expert Invoice | $7,500.00 |
| 10/1/2021 | FedEx Receipt for Ltrs. to Kia | $49.10 |
| 10/5/2021 | FedEx Receipt for Gordon Notice Ltr. to Kia | $28.85 |
| 10/12/2021 | Dane Cty. Civil Process Invoice for Service | $90.00 |
| 10/19/2021 | Quantum Invoice for Breese Docs | $189.90 |
| 10/27/2021 | Quantum Invoice for Emily S. Docs | $63.30 |
| 11/19/2021 | USPS Receipt for Lemon Law Notice to Kia | $7.20 |
| 1/5/2022 | USPS Receipt for Docs to Cari Hudson | $3.65 |
| 3/8/2022 | USPS Receipt for Docs back to Muniz | $4.45 |
| 8/1/2022 | Quantum Invoice for Coke Docs | $12.54 |
| 8/5/2022 | Quantum Invoice for Henry Docs | $10.55 |
| 8/12/2022 | USPS Receipts for Pre-Suit Notice to Ds | $34.14 |
| 8/30/2022 | USPS Receipts for Pre-Suit Notice to Ds | $31.98 |
| 11/22/2022 | Airfare (MDL Hearing) | $402.19 |
| 11/30/2022 | Taxi (MDL Hearing) | $70.00 |
| 12/1/2022 | Uber (MDL Hearing) | $96.83 |
| 12/1/2022 | Taxi (MDL Hearing) | $41.62 |

DECLARATION OF JAMES B. BARTON

| 12/2/2022 | Hotel Expense (MDL Hearing) | $897.03 |
|---|---|---|
| 2/7/2023 | Car Rental (CDCA Hearing) | $133.74 |
| 2/8/2023 | O'Hare Parking (CDCA Hearing) | $157.00 |
| | TOTAL | $11,032.66 |

44.     These books and records are supported by receipts to sufficiently make bookkeeping entries in our firm's accounting software. All the expenses incurred were reasonable and necessary to the prosecution of this case.

45.     Should the Court require additional information concerning these remaining expenses, it can be submitted upon request.

46.     In support of this motion, I have also attached the following declarations that are appended hereto: (a) the Declaration of Erin Dickinson is being attached hereto as **Exhibit 4**; (b) the Declaration of Lauren Hernandez is being attached hereto as **Exhibit 5**; (c) the Declaration of Lauren Kawetschansky is being attached hereto as **Exhibit 6**; and (d) the Declaration of Gerald Smith is attached hereto as **Exhibit 7**.

47.     On behalf of the *Marvin* & *Henry* Plaintiffs, I respectfully request that the Court award the requested fees and costs as set forth in the corresponding motion.

I declare under penalty of perjury that the foregoing is true and correct. Dated this 18th day of April, 2024

            */s/ Electronically Signed by James B. Barton*
            James B. Barton