ELLIOTT R. FELDMAN
NATHAN DOOLEY (SBN 224331)
KEVIN CARAHER
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-2071
Facsimile: (215) 701-2282
EFeldman@cozen.com

WILLIAM J. HOFFMANN
ADAM M. ROMNEY (SBN 261974)
SUSAN M. BENSON (SBN 146837)
GROTEFELD HOFFMANN LLP
15303 Ventura Blvd, Ste. 1505
Sherman Oaks, California 91403
Telephone: (747) 233-7150
Facsimile: (747) 233-7143

TIMOTHY E. CARY (SBN 093608)
DANIEL HOGAN
THOMAS PAOLINI
LAW OFFICES OF ROBERT A.
STUTMAN, P.C.
1260 Corona Pointe Court, Suite 306
Corona, California 92879
Telephone: (951) 387-4700
Facsimile: (951) 963-1298
CaryT@Stutmanlaw.com

CRAIG S. SIMON (SBN 78158)
STEPHANIE H. NG (SBN 309389)
BERGER KAHN, A Law Corporation
1 Park Plaza, Suite 340
Irvine, California 92614
Telephone: (949) 474-1880
Facsimile: (949) 313-5029
csimon@bergerkahn.com

*Attorneys for Subrogation Insurance Plaintiffs*

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 22-ML-03052-JVS-KES |
| | The Honorable James V. Selna |
| | **SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA'S MOTION TO SEVER** |
| This document relates to: | Judge: Hon. James V. Selna |
| ALL SUBROGATION CASES | Ctrm: 10C<br>Date: June 10, 2024<br>Time: 3:00 p.m. |

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................8

BACKGROUND ........................................................................................................9

I.    Defendants Successfully Seek MDL Consolidation Of Theft Claims.................9

ARGUMENT ...........................................................................................................12

I.    Defendants Have Not Met Their Burden for Severance ...................................12

   A.    Each Plaintiff Has Properly Joined Multiple Claims Against Defendants Pursuant to FRCP 18(a)....................................................................................12

   B.    Each Subrogation Plaintiff Is Properly Joined into One Action Pursuant to FRCP 20(a)(1) ...............................................................................................14

      1.    All Plaintiffs' Claims Arise out of the Same Transaction, Occurrence, or Series of Transactions or Occurrences. ..............................................15

      2.    Plaintiffs' Claims Share Common Questions of Law and Fact. ............20

      3.    Defendants Have Failed to Identify Any Issue Peculiar to Subrogation That Would Preclude Rule 20(a)(1)(A) Joinder ......................................20

   C.    Judicial Economy Is Facilitated by the Provisional Joinder of the Subrogation Claims .........................................................................................22

   D.    The Joinder of Plaintiffs Is Fundamentally Fair and Not Prejudicial to Defendants ......................................................................................................23

   E.    The Same Witnesses and Documentary Proof Will Be Necessary to Prove Plaintiffs' Allegations of Common Defect and Contradict Defendants' Affirmative Defenses.......................................................................................26

II.   The Defendants Have Waived Their Objection to Provisional Joinder by Stipulating to the Present Joinder of Plaintiffs.....................................................27

III.  Dismissal Is Not a Proper Remedy Under FRCP 21 and May Prejudice Plaintiffs .............................................................................................27

CONCLUSION........................................................................................................28

# TABLE OF AUTHORITIES

**Cases**

*Abraham v. Volkswagen of America Inc.*, 795 F.2d 238 (2nd Cir. 1986)...................14

*Adelstein ex rel. Adelstein v. Unicare Life and Health Ins. Co.*,
   (M.D. Fla., Dec. 27, 2000, No. 6:99-CV-1544-ORL-28C) 2000 WL 35808378..18

*Allstate Fire & Cas. Ins. Co. v. Electrolux Home Products, Inc.*, 16-CV-02080-
   PAB-STV, 2017 WL 4236309 (D. Colo. Sept. 22, 2017) ....................................19

*Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 1:16-cv-09639,
   (N.D. Ill. Mar. 31, 2017) ........................................................................................19

*Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 1:16CV1946, 2016 WL
   6995271 (N.D. Ohio Nov. 30, 2016) ......................................................................19

*Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 16-4276
   (E.D. Pa. Sept. 22, 2016)........................................................................................20

*Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 16cv6804
   (S.D.N.Y. Dec. 5, 2016)..........................................................................................19

*Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. CV 16-6514,
   (C.D. Cal. Nov. 3, 2016) .........................................................................................20

*Allstate Ins. Co. v. Electrolux Home Products, Inc.*, 4:16-CV-03666-RBH, 2017 WL
   2216298 (D.S.C. May 19, 2017) .............................................................................19

*Allstate Ins. Co. v. Wal-Mart Stores, Inc.*, 00 CV 0307, 2000 WL 960736
   (N.D. Ill. July 11, 2000) ..........................................................................................20

*Allstate Insurance Company v. Electrolux Home Products*,
   (E.D. Pa., Aug. 3, 2018, No. 5:18-CV-00699) 2018 WL 3707377 ......................23

*Allstate Insurance Company v. Electrolux Home Products, Inc.*, No. 3:17-CV-391
   (JCH)) 2017 WL 10718329 (D. Conn., Sept. 18, 2017)........................................19

*Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.*,
   (C.D. Cal. 2015) 99 F.Supp.3d 1110.......................................................................13

3

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA
AMERICA'S MOTION TO SEVER
Case No.: 22-ML-03052-JVS-KES

*American Hardware Mut. Ins. Co. v. Fire Equipment Sales & Service, Inc.*,
   (W.D.N.Y., June 9, 2004, No. 01CV416) 2004 WL 1563087 ..............................20

*Broadcom Corp. v. Sony Corp.*,
   (C.D. Cal., Dec. 20, 2016, No. SACV161052JVSJCGX) 2016 WL 9108039 10, 22

*Byorth v. USAA Cas. Ins. Co.* No. 17-153, 2020 WL 6204333
   (D. Mont. June 4, 2020). ........................................................................17

*Cashatt v. Ford Motor Company*, 2023 WL 2646366
   (W.D. Wash. Mar. 27, 2023)...........................................................15, 18

*Coughlin v. Rogers*, 130 F.3d 1348 (9th Cir. 1997)....................................14

*Desert Empire Bank v. Insurance Co. of North America*, (9th Cir. 1980)
   623 F.2d 1371........................................................................22

*Dobbas v. Vitas* 191 Cal. App. 4th 1442 (2011)......................................20

*El Fakih v. Nissan N. Am., Inc.* No. 18-cv-60638, 2018 WL 4193675
   (S.D. Fla. July 26, 2018) ......................................................15

*Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279 (1998) ........19

*Grover v. BMW of North America, LLC*, 434 F. Supp. 3d 617 (N.D. Ohio 2020) ...15

*Hausmann v. Farmers Ins. Exchange*, 213 Cal.App.2d 611 (1963) ........................11

*Holt v. County of Orange,* (9th Cir. 2024) 91 F.4th 1013 ..........................26

*Horowitz v. Chen,* (C.D. Cal., May 20, 2020, No. SACV1700432CJCDFMX)
   2020 WL 4805466........................................................................10

*In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1168 (5th Cir. 1979).........11

*In re Kia Hyundai Vehicle Theft Litigation,* (U.S. Jud. Pan. Mult. Lit. 2022)
   648 F.Supp.3d 1374 ......................................................8, 18, 24

*In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, No. ML1902905JAKFFMX,
   2021 WL 9181832 (C.D. Cal. Aug. 20, 2021)......................................15

*Jacques v. Hyatt Corp.*, 2012 WL 3010969, (N.D. Cal. July 23, 2012) ..................18

4

*Kehr v. Yamaha Motor Corp., U.S.A.*, 596 F.Supp.2d 821 (S.D.N.Y.2008)
   (McMahon, J.) ............................................................................................... 15, 24

*Kunde Enterprises, Inc. v. Nat'l Sur. Corp.*, No. 19-6636, 2019 WL 9654857
   (N.D. Cal. Dec. 18, 2019). ..................................................................................... 17

*Lanier Business Products v. Graymar Co.*, 342 F.Supp. 1200 (D. Md. 1972) ......... 13

*League to Save Lake Tahoe v. Tahoe Regl. Plan. Agency*, 558 F.2d 914
   (9th Cir. 1977) ............................................................................................... 13, 19

*Lopez v. Progressive County Mutual Insurance Company,*
   (W.D. Tex., Nov. 2, 2020, No. SA-19-CV-00380-FB) 2020 WL 6391214 .......... 17

*Markham v. Home Depot USA, Inc.,*
   (C.D. Cal., Jan. 10, 2014, No. CV 13-8431-GHK JCGX) 2014 WL 117102 ....... 25

*Miller v. Nissan N. Am., Inc.*, No. 4:18CV00340RLW, 2018 WL 4211370
   (E.D. Mo. Sept. 4, 2018) ........................................................................................ 15

*National Asbestos Workers Medical Fund v. Philip Morris, Inc.*,
   74 F.Supp.2d 221, 238 (E.D. NY 1999) ................................................................ 11

*Nationwide Mutual Company v. Ft. Myers Total Rehab Center, Inc.*,
   657 F.Supp.2d 1279, 1286 (M.D. Fla. 2009) ........................................................ 11

*Poleon v. Gen. Motors Corp.*, No. Civ. 1999-127, 1999 WL 1289473
   (D.V.I. Jan. 5, 1999) .............................................................................................. 16

*Rush v. Sport Chalet, Inc.* (9th Cir. 2015) 779 F.3d 973 ......................................... 26

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*
   (2010) 559 U.S. 393 .............................................................................................. 22

*Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315 (M.D. Fla. 2010) .......... 14

*State Auto Ins. Companies v. Whirlpool Corp.*, 62 F. Supp. 3d 857
   (W.D. Wis. 2014) ................................................................................................... 20

*State Farm Fire and Cas. Co. v. Electrolux Home Products, Inc.*
   (N.D. Ill., Apr. 16, 2012, No. 11 C 8946) 2012 WL 1287698 ........................ 11, 19

5

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA
AMERICA'S MOTION TO SEVER
Case No.: 22-ML-03052-JVS-KES

*Texas Farmers Insurance Company v. Louisiana-Pacific Corporation,*
(E.D. Tex. 2017) 321 F.R.D. 561 ................................................................. 22

*United Mine Workers of Am. v. Gibbs*, 383 U.S. 715 (1966) .................................. 13

*United States v. Aetna Cas. & Surety Co.*, 338 U.S. 366, 379, 70 S.Ct. 207 (1949) 11

*United States v. Burke Eng'g Co.*, 356 F. Supp. 2d 1119 (C.D. Cal. 2005) ............. 14

*Visendi v. Bank of Am., N.A.*, 733 F.3d 863 (9th Cir. 2013) ............................. 14, 21

*Walker v. Bryson*, 2012 WL 5186658 (E.D. Cal. Oct. 16, 2012)............................. 18

*Western Cas. & Sur. Co. v. Meyer*, 301 Ky. 487, 192 S.W.2d 388 (1946)............... 20

*Westfield Ins. Co. v. Interline Brands, Inc.,*
(D.N.J., Dec. 20, 2013, No. CIV. 12-6775 JBS/JS) 2013 WL 6816173 ............. 20

*Wilkins v. Macomber,* (E.D. Cal., Feb. 11, 2022, No. 216CV0475TLNDMCP)
2022 WL 428963 ......................................................................................... 17

*Wolde-Meskel v. Vocational Instruction Project*, 166 F.3d 59, 62 (2d Cir, 1999) ...11

**Statutes**

28 U.S.C. § 1404(a) ......................................................................................... 24

**Rules**

6A FED. PRAC. & PROC. CIV. § 1586 *Joinder of Claims Under Rule 18(a) —
Relationship Between Rule 18(a) and Rule 42(b)*................................................. 13

FED. R. CIV. P. 21 ......................................................................................... 27

FRCP 18(a) ........................................................................................... 12, 13

FRCP 20(a)(1)............................................................................................... 14

**Treatises**

§ 1653 *Permissive Joinder of Parties under Rule 20(a)—The Transaction and
Common-Question Requirements*, 7 FED. PRAC. & PROC. CIV. § 1653 (3d ed.)....15

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA
AMERICA'S MOTION TO SEVER

§ 1655 *Permissive Joinder of Parties under Rule 20(a)—Relationship
Between Joinder of Parties and Joinder of Claims*, 7 FED. PRAC. &
PROC. CIV. § 1655 (3d ed.) ....................................................................... 18

§ 222:10. What Law Governs, 16 COUCH ON INS. § 222:10 ..................................... 21

§ 59:169. *Requirements of same transaction or occurrence and common
question of law or fact for permissive joinder of plaintiff*, 25 Fed. Proc.,
L. Ed. § 59:169 ............................................................................................ 15

6A FED. PRAC. & PROC. CIV. § 1582 *Joinder of Claims Under
Rule 18(a) – General* ................................................................................. 13

## **INTRODUCTION**

While asking this Court to order the Plaintiffs to file hundreds of thousands of separate complaints in the name of "fairness," Defendants' motion conveniently omits *why* Plaintiffs undertook the time and expense to formulate a common pleading for all subrogation claims in this MDL in the first place. Plaintiffs' claims were joined into a single master complaint by Order of this Court and with Defendants' agreement: both orally in open court[1] and in their written submissions.[2] Today, the circumstances of this litigation remain the same as they were when the Defendants agreed to, at minimum, a provisional joinder of the subrogation claims.  The only thing that has changed is the Defendants' litigation position. In that context, absent the plainly premature discussion of "trial" concerns, it comes as little surprise that Defendants' motion completely fails to articulate any potential unfairness caused by the joinder to which they agreed.

As subrogees of their policyholders, each of the Insurer Plaintiffs is the real party in interest to multiple claims against Defendants. Those claims are properly joined into one action pursuant to FRCP 18. At this stage of the proceedings, a provisional joinder of each Plaintiff together under FRCP 20 is proper because all Plaintiffs uniformly allege their subrogated claims arise from a single cause, i.e. the Defendants' "Thief Friendly Design." As such, the Insurer Plaintiffs each assert rights "with respect to or arising out of the same ...series of transactions or occurrences", and more than one "question of law or fact common to all plaintiffs will arise in the action", so that the Plaintiffs are properly joined in one action pursuant to FRCP 20. Finally, because Defendants have failed to show that any two Plaintiffs' claims are dissimilar enough to cause prejudice or unfairness at this stage of the proceeding, Defendants' motion to sever must be denied.

---

[1] Transcript of June 12, 2023 Status Conference, *In re: Kia Hyundai Vehicle Theft Litigation*, CASE NO. SAML-22-03052-JVS, pp. 15-16 (Attached hereto as Exhibit "A").
[2] (Doc. 108, FN 2); (Doc. 289).

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA'S MOTION TO SEVER

## BACKGROUND

### I.   Defendants Successfully Seek MDL Consolidation of Theft Claims

In seeking MDL centralization, Defendants represented to the Judicial Panel on Multidistrict Litigation that the claims asserted against them "rely on the same basic factual premise" and should be consolidated to increase efficiency, convenience, and consistency of law, as well as to reduce costs. Defendants argued:

> "***The Related Actions all rely on the same basic factual premise***, with various theories common in consumer class actions that have the ***same or similar*** putative classes and/or ***class vehicles***. Allowing pretrial proceedings in the 27 Related Actions to be conducted together, rather than separately before at least 20 different district court judges in 16 different district courts, would provide the following benefits: ***convenience to the parties and witnesses, avoidance of duplicative discovery and motions practice, consistency and avoidance of differing or conflicting rulings across the district courts, reduction of unnecessary fees and costs to the parties, and reduced burden on the district courts and their staff***."

*In re Kia Hyundai Vehicle Theft Litigation*, MDL No. 3052, Doc. 44, (p. 4). In concluding coordinated and consolidated proceedings were appropriate, the MDL Court specifically found that common defects were alleged across the Defendants' product types:

> "Plaintiffs in all actions purchased or leased Kia and Hyundai branded vehicles that they allege are defective because the cars lack engine immobilizer technology, which prevents them from being started unless a code is transmitted from a unique smart key. The vehicles at issue include 2011-2022 Kia vehicles and 2015-2022 Hyundai vehicles that were equipped with traditional "insert-and-turn" steel key ignition systems. Plaintiffs argue that vehicles that lack immobilizer technology are particularly susceptible to being stolen.  All actions can be expected to share factual questions surrounding the marketing, sale and manufacture of these vehicles and defendants' knowledge of the alleged defect."

9

*In re Kia Hyundai Vehicle Theft Litigation,* (U.S. Jud. Pan. Mult. Lit. 2022) 648 F.Supp.3d 1374, 1375.

After successfully consolidating and centralizing the claims against them, on June 8, 2023, Defendants informed the Court that they had no objection to the State Auto Plaintiffs adding additional plaintiffs to their complaint, stating "**To the extent the *State Automobile Insurance Company* Plaintiffs seek to amend their complaint to add other named plaintiffs, Defendants do not oppose that request.**" (Doc. 108, FN 2).

Later in the proceedings, on June 12, 2023, the Defendants and the Court agreed that it would be "simpler" if all Subrogation Plaintiffs joined a single complaint:

> "**The Court**: At least at the pleading stage, it would seem to me I'm going to be asked to make a number of legal decisions that would apply across the board whether the particular carrier is there in a class membership category or there individually. I don't know why I should split that up.
> **[…]**
> The Court: Okay. Mr. Brennan?
> **Mr. Brennan:** Obviously one complaint would be simpler. I suspect they can—when they maneuver it around, they'll be able to solve that problem as you suggest, your Honor."

(Transcript of June 12, 2023 Status Conference, *In re: Kia Hyundai Vehicle Theft Litigation*, CASE NO. SAML-22-03052-JVS, pp. 15-16, attached hereto as Exhibit "A"). That same day, the Subrogation Plaintiffs were ordered to file a single consolidated complaint. (Doc. 145).

As previously observed by the Court, the current complaint is now 805 pages long and contains 4,079 paragraphs. (Doc. 300, ¶ 3). In consideration of the size of the pleading, the Parties agreed to allow Defendants to "generally deny" the allegations (*Id.* at ¶ 3), to automatically deem future complaints "incorporated into" the FAC (*Id.* at ¶ 5), and Defendants were relieved of any duty to respond to future

incorporated complaints (*Id.*). Each of these agreements were presented to the Court by the Parties in the form of an ***agreed*** Proposed Order on January 10, 2024 (Doc. 289).

Nevertheless, less than two months after stipulating to joinder of these claims, the Defendants filed this motion to Sever. Defendants' motion acknowledges that they previously "agreed" to the joinder procedure for Plaintiffs, but paradoxically denies that joinder was proper: "***Defendants agreed to that procedure*** as an efficient mechanism for adding new plaintiffs in light of the current procedural posture of the MDL ***without conceding that joinder was proper***." (Defendants Memorandum at p. 2, FN2). Defendants do not further elaborate as to how they can simultaneously stipulate to joinder while claiming that it is improper and unduly prejudicial to their interests. Now Defendants seek to push their new-found objections to their logical extreme, arguing that ***any*** joinder of plaintiffs or claims in this MDL is improper, claiming "[t]he Subrogation Plaintiffs continue to flout the Federal Rules of Civil Procedure." (Defendants Memorandum at p. 1.).

Even after filing their Motion to Sever, during an April 19, 2024 status conference, the Court stated that the MDL proceeding remained both viable and valuable. Defendants agreed:

> THE COURT: It seems to me that the MDL is still valuable. It will decide the liability issues, or at least get the discovery out there for the liability issues so that they can be tried either here or elsewhere. So, I think this docket is still viable. [...]

> MR. BRENNAN: Your Honor, we would like to reflect on that. What we think and what we have suggested is ***we agree that the MDL is still viable. You know, for summary judgment, we had suggested when we get there that there could be various ways that it could be structured. What we're thinking is once we're through discovery, we'll have a better sense of what the most appropriate way is that things could be structured***, and I think that's most likely, but we want to digest what you said obviously today as well, so we'll be prepared next time.

11

(Transcript of April 19, 2024 Status Conference, *In re: Kia Hyundai Vehicle Theft Litigation*, CASE NO. SAML-22-03052-JVS, pp. 35-36, attached hereto as Exhibit "B").

## ARGUMENT

### I.   Defendants Have Not Met Their Burden for Severance

Defendants have failed to meet their burden to demonstrate either why severance is appropriate at this juncture or why the joinder procedures they agreed to must now be abandoned. The Court's order requiring provisional joinder of claims is common practice — particularly within the context of product defect litigation — and well within an MDL Court's discretion. Ignoring the overwhelmingly adverse impact of severance upon the management and conduct of this MDL ***prior*** to trial, Defendants cite case law analyzing severance ***for purposes of trial***. While severance of certain claims or issues for trial may be appropriate at some future date, the Parties are still litigating personal jurisdiction, and the Defendants are still actively seeking summary adjudication of common issues.

Under Rule 21, "[t]he party seeking severance bears the burden of proving that separation of the claims is necessary." *Horowitz v. Chen* (C.D. Cal., May 20, 2020, No. SACV1700432CJCDFMX) 2020 WL 4805466, at *2. "Courts consider the following five factors when examining whether to sever a case: whether (1) the claims arise out of the same transaction or occurrence; (2) the claims present some common questions of law or fact; (3) settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided if severance were granted; and (5) different witnesses and documentary proof are required for the separate claims." *Broadcom Corp. v. Sony Corp.,* (C.D. Cal., Dec. 20, 2016, No. SACV161052JVSJCGX) 2016 WL 9108039, at *2.

#### A.   Each Plaintiff Has Properly Joined Multiple Claims Against Defendants Pursuant to FRCP 18(a)

Defendants' Motion fails to recognize that the insurers—not the insureds—are the real party in interest for their subrogation claims. In failing to recognize this foundational principle of subrogation, Defendants have failed to analyze FRCP 18, which expressly allows each Plaintiff to join as many claims as they may have against the Defendants *without any relation requirement*. "As subrogees, the plaintiffs are real parties in interest who possess their own substantive rights." *National Asbestos Workers Medical Fund v. Philip Morris, Inc.*, 74 F.Supp.2d 221, 238 (E.D. NY 1999), (Weinstein, J.) citing *United States v. Aetna Cas. & Surety Co.*, 338 U.S. 366, 379, 70 S.Ct. 207 (1949); *Hausmann v. Farmers Ins. Exchange*, 213 Cal.App.2d 611, 614 (1963). "As real parties in interest, plaintiffs have a right, pursuant to Rule 18, to join as many claims as they have against a defendant." *Id.* at 238.

FRCP 18(a) expressly provides, "A party asserting a claim ...may join, as independent or alternative claims, as many claims as it has against an opposing party." That procedural rule concerning the Joinder of Claims "does not require that the aggregated claims be factually related." *Nationwide Mutual Company v. Ft. Myers Total Rehab Center, Inc.*, 657 F.Supp.2d 1279, 1286 (M.D. Fla. 2009), citing *Wolde-Meskel v. Vocational Instruction Project*, 166 F.3d 59, 62 (2d Cir, 1999). "Rule 18(a) ...grants the plaintiffs complete freedom to join in a single action all claims that they may have against any of the defendants." *In re Beef Industry Antitrust Litigation*, 600 F.2d 1148, 1168 (5th Cir. 1979); *State Farm Fire and Cas. Co. v. Electrolux Home Products, Inc.,* (N.D. Ill., Apr. 16, 2012, No. 11 C 8946) 2012 WL 1287698, at *4 (holding that, under FRCP 18, subrogated insurance carriers may bring as many claims as they have against a defendant, whether or not the claims are related).

Although "a party is permitted to join all claims against an opponent as a matter of right", Plaintiffs recognize that "Rule 18(a) deals only with the scope of joinder at the pleading stage and not with questions of trial convenience or jurisdiction and

/ / /

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA'S MOTION TO SEVER

Case No.: 22-ML-03052-JVS-KES

venue". 6A FED. PRAC. & PROC. CIV. § 1582 *Joinder of Claims Under Rule 18(a) – General.* Pursuant to FRCP 42(b), the trial court has "extensive discretionary power to order separate trials of claims or issues" in order to manage efficiently the claims that have been properly joined in this action. 6A FED. PRAC. & PROC. CIV. § 1586 *Joinder of Claims Under Rule I8(a) — Relationship Between Rule 18(a) and Rule 42(b).* Such case management issues will necessarily be addressed at the appropriate time and pursuant to the applicable rules but, at this early stage of the litigation, each Plaintiffs' joinder of their multiple claims into a single complaint is proper under FRCP 18(a).

Moreover, because all Plaintiffs may still join their claims under FRCP 18, there is no practical benefit of severing claims now instead of evaluating these issues for trial under Rule 42: all claims would remain consolidated before this Court under identical pleadings. This Court has already adjudicated a motion to dismiss attacking the sufficiency of the Subrogation Plaintiffs' complaint, holding that "Subrogation Plaintiffs do not need to plead individual facts for each insured to survive a motion to dismiss." (Doc. 269, Page ID, 7129). Thus, individual Plaintiffs, many with tens of thousands of pending subrogation claims, may still file a single pleading under FRCP 18 and the law of this case. *Id*. If, in the future, any prejudice is established from summary resolution of common legal issues, vetting of common experts, or the joinder of claims for trial, these matters may be severed under Rule 42 without any prejudice to either party for having been provisionally joined for pre-trial proceedings. Because severance will make no practical difference at this stage of the proceedings, Defendants have failed to meet their burden under Rule 21.

## B.    Each Subrogation Plaintiff Is Properly Joined into One Action Pursuant to FRCP 20(a)(1)

The current joinder of Plaintiffs in this MDL, undertaken with the Defendants' explicit agreement, is properly within the discretion of this Court at this early stage of

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA
AMERICA'S MOTION TO SEVER
Case No.: 22-ML-03052-JVS-KES

the proceeding. FRCP 20(a)(1) expressly provides, "Persons may join in one action as plaintiffs if (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same ... series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." In imposing these two requirements, the purpose of Rule 20(a) is to address the "broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966); *Lanier Business Products v. Graymar Co.*, 342 F.Supp. 1200, 1203 (D. Md. 1972) ("A party should be able to join all the claims he has against his opponent as a matter of course to avoid multiplicity of litigation and possible claims of *res judicata* at a later date."). Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Regl. Plan. Agency*, 558 F.2d 914, 917 (9th Cir. 1977); *Almont Ambulatory Surgery Center, LLC v. UnitedHealth Group, Inc.,* (C.D. Cal. 2015) 99 F.Supp.3d 1110, 1187–1188 ("On the whole, the transaction and common-question requirements prescribed by Rule 20(a) are not rigid tests, but rather are flexible concepts used by the courts to implement the purpose of Rule 20 and therefore are to be read as broadly as possible whenever doing so is likely to promote judicial economy.").

### 1. All Plaintiffs' Claims Arise out of the Same Transaction, Occurrence, or Series of Transactions or Occurrences.

Plaintiffs' claims need not arise out of a single occurrence, so long as their claims are "with respect to or arising out of the same ... series of transactions or occurrences." FRCP 20 (a)(1). Where claims arise out of multiple occurrences at different times and places (as in the instant action), federal courts consider those claims to have arisen from a "series of transactions or occurrences" so long as they are logically related. The "logical relationship test" enables the federal courts to

promote judicial economy by permitting the joinder of different plaintiffs with "reasonably related claims for relief." § 1653 *Permissive Joinder of Parties under Rule 20(a)—The Transaction and Common-Question Requirements*, 7 FED. PRAC. & PROC. CIV. § 1653 (3d ed.); *United States v. Burke Eng'g Co.*, 356 F. Supp. 2d 1119, 1121-22 (C.D. Cal. 2005) (applying logical relationship test).

The Ninth Circuit has indicated that the requirement of "same transaction, occurrence, or series of transactions or occurrences" refers to the similarity in the factual background between the claims. *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997) (stating that "the 'same transaction' requirement[ ] refers to similarity in the factual background of a claim"); *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (Rule 20(a)(1) "[b]y its terms […] requires factual similarity in the allegations supporting Plaintiffs' claims."). Federal courts have also found a logical relationship under FRCP 20 where "the facts on which one claim rests activate additional legal rights supporting the other claim." § 59:169. *Requirements of same transaction or occurrence and common question of law or fact for permissive joinder of plaintiff*, 25 Fed. Proc., L. Ed. § 59:169; (citing *Smith v. Trans-Siberian Orchestra*, 728 F. Supp. 2d 1315 (M.D. Fla. 2010).

In *Abraham v. Volkswagen of America Inc.*, the Second Circuit concluded it was an abuse of discretion for the district court to refuse to allow 75 plaintiffs to join their claims against Volkswagen. 795 F.2d 238, 251 (2nd Cir. 1986). Each plaintiff owned a Volkswagen Rabbit from the model years 1975–79. Id. at 241. Although the plaintiffs did not all suffer the same type of damage to their cars, each alleged the damage was caused by "a single defective part, the valve stem seal." *Id*. The Second Circuit determined this single alleged defect satisfied the same transaction or occurrence requirement because the defect was part of "a series of logically related transactions." *Id*. at 251. District Courts in this Circuit and around the country have similarly interpreted FRCP 20 broadly as applied to common defects alleged in

16

automobiles. *Cashatt v. Ford Motor* Company, 2023 WL 2646366, at *4 (W.D. Wash. Mar. 27, 2023) (collecting cases, and rejecting Ford's argument that the presence of different model years in the Class Vehicles necessitated severance because each vehicle "contained the same Exhaust Fume Defect" and because "expert testimony for each claim […] will be mostly the same as it will center on the alleged … Defect"); *In re ZF-TRW Airbag Control Units Prod. Liab. Litig.*, No. ML1902905JAKFFMX, 2021 WL 9181832, at *10 (C.D. Cal. Aug. 20, 2021) (denying motion to sever claims involving a defective airbags because of overlapping proof and duplication of testimony); *Grover v. BMW of North America, LLC*, 434 F. Supp. 3d 617 (N.D. Ohio 2020) (vehicle owners' warranty claims logically related where the owners alleged that they each purchased a vehicle with a defective engine, the manufacturer knew the engines were defective, the owners notified defendant, and the defendant denied the defect); *Miller v. Nissan N. Am., Inc.*, No. 4:18CV00340RLW, 2018 WL 4211370, at *3 (E.D. Mo. Sept. 4, 2018) (plaintiffs "alleged the same defect affected their transmissions and caused their damage and are alleging breach of the same new vehicle limited warranty," and "such a common defect and warranty is sufficient for Plaintiffs to meet the same transaction or occurrence test for permissive joinder pursuant to Rule 20(a)."); *El Fakih v. Nissan N. Am., Inc.,* No. 18-cv-60638, 2018 WL 4193675 at *1 (S.D. Fla. July 26, 2018) (denying the motion to sever because plaintiffs' defect and negligent repair claims were all "premised on the same faulty transmissions," even though plaintiffs "individually purchased their vehicles and [took] them to varying dealerships for repairs"); *Kehr v. Yamaha Motor Corp.*, U.S.A., 596 F.Supp.2d 821, 822, 826–28 (S.D.N.Y.2008) (McMahon, J.) (vehicle accidents involving distinct factual scenarios at different times and places held to be "logically related" claims for purposes of Rule 20 joinder of plaintiffs alleging common design defects); *Poleon v. Gen. Motors Corp.*, No. Civ. 1999-127, 1999 WL 1289473, at *2 (D.V.I. Jan. 5, 1999) ("Although there may be differences in the way

the accidents happened or the injuries sustained by the plaintiffs, the existence of defective brake and air bag systems is central to all the cases.").

The Subrogation Plaintiffs allege that Defendants knowingly manufactured and sold more than fourteen million Hyundai and Kia Vehicles ("the Vehicles") that do not contain an engine immobilizer or any equivalent operational anti-theft equipment as required by the Federal Motor Vehicle Safety Standards promulgated by the National Highway Traffic Safety Administration. (FAC ¶¶ 1, 21.) "Specifically, design flaws in the Vehicles allow thieves to easily steal the Vehicles in seconds because the Vehicles do not contain engine immobilizers or any other comparable and effective anti-theft equipment ("Thief Friendly Design")." (Id. ¶ 17.) Because of Defendants' failure to include an anti-theft system in the Vehicles, Subrogation Plaintiffs paid for covered damages sustained by their Insureds "as a result of theft, attempted theft, vandalism or other damage to the Vehicles arising from the Thief Friendly Design, including theft of or damage to other property." (Id. ¶ 18.). Thus, all claims, brought by each Plaintiff, arise out of a single series of occurrences of vehicle thefts resulting from the same defective manufacture and design.

Further, Plaintiffs' damages arising from "attempted theft" and vandalism without a completed theft ("Vandalized Vehicles") does not alter the FRCP 20 analysis. (FAC ¶ 21). For each of the Vandalized Vehicles, Plaintiffs allege that the common defect, i.e. "Thief Friendly Design," proximately caused the attempted theft and damages. While some thefts may not have been completed for various reasons—including the possibility that these vehicles had an anti-theft protection system installed by the Defendants or by the insureds—Plaintiffs allege the damage to the Vandalized Vehicles was proximately caused by the common defect and thus arise from the same series of transactions under FRCP 20. Claims for Vandalized Vehicles do not differ in causation because they arise from the same common defect (the sole conceptual distinction lies in the measure of damages) and are thus not subject to an

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA'S MOTION TO SEVER
Case No.: 22-ML-03052-JVS-KES

FRCP 20 analysis. Because FRCP 18 operates independently of FRCP 20, Plaintiffs may join these "Vandalized Vehicle" claims even if they were held to be unrelated to the other common claims so long as each Plaintiff shares one common claim. § 1655 *Permissive Joinder of Parties under Rule 20(a)—Relationship Between Joinder of Parties and Joinder of Claims*, 7 FED. PRAC. & PROC. CIV. § 1655 (3d ed.); *Wilkins v. Macomber* (E.D. Cal., Feb. 11, 2022, No. 216CV0475TLNDMCP) 2022 WL 428963, at *1-2.

Defendants' supporting case law does not undermine the precedent set in automobile defect cases. In fact, the cases relied upon by Defendants do not involve "product defects" or "property subrogation" of any kind; Defendants rely chiefly on precedent involving insurance coverage actions between insurers and insureds. The court in *Kunde Enterprises, Inc. v. Nat'l Sur. Corp*., granted the defendant's motion to sever because each plaintiff was individually suing a different insurer for breaches of distinct contracts. No. 19-6636, 2019 WL 9654857, at *3 (N.D. Cal. Dec. 18, 2019). The only connection between the plaintiffs' claims was a wildfire that necessitated the plaintiffs calling upon their insurers. Defendants also cite *Byorth v. USAA Cas. Ins. Co*, another insurance coverage case which is equally inapplicable to product defect claims. No. 17-153, 2020 WL 6204333, at *1 (D. Mont. June 4, 2020). There, the two plaintiffs were involved in unrelated car accidents, received different medical treatments for different injuries, and had two distinct insurance adjusters make different benefits decisions. *Id*.

Defendants also cite Rule 23 cases that do not involve any common allegations of product defect. *Lopez v. Progressive County Mutual Insurance Company* (W.D. Tex., Nov. 2, 2020, No. SA-19-CV-00380-FB) 2020 WL 6391214; *Adelstein ex rel. Adelstein v. Unicare Life and Health Ins. Co.* (M.D. Fla., Dec. 27, 2000, No. 6:99-CV-1544-ORL-28C) 2000 WL 35808378. Similar to *Kunde* and *Byorth* above, both *Lopez* and *Adelstein* were class actions involving direct actions against insurers. *Id*

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA
AMERICA'S MOTION TO SEVER

Case No.: 22-ML-03052-JVS-KES

Other than the fact these cases involved "insurance companies" as litigants, there are no similarities between a Rule 23 analysis involving direct actions against insurers for idiosyncratic misconduct and a Rule 20 analysis alleging common product defects. *Cashatt v. Ford Motor Company* (W.D. Wash., Mar. 27, 2023, No. 19-CV-05886-LK) 2023 WL 2646366, at *6 (citing case law in support of "a broad interpretation of 'transaction or occurrence' in the products liability context.").

2.   <u>Plaintiffs' Claims Share Common Questions of Law and Fact.</u>

The second prong of the Rule 20 test is "not a particularly stringent test" because there need only be a single common question of law or fact, and commonality in the context of joinder does not require the common question to be the predominant issue in the litigation. *Walker v. Bryson*, 2012 WL 5186658, at *4 (E.D. Cal. Oct. 16, 2012). "[T]here need only be a minimum of at least one common question of law or fact," and "[t]he fact that there may be questions that are not common to all [parties] does not defeat the showing on this requirement." *Jacques v. Hyatt Corp.*, 2012 WL 3010969, at *4 (N.D. Cal. July 23, 2012). Plaintiffs' claims share a common question of fact: whether the Defendants designed and manufactured vehicles without mandatory anti-theft equipment. As previously held by the JPML, "[a]ll actions can be expected to share factual questions surrounding the marketing, sale and manufacture of these vehicles and defendants' knowledge of the alleged defect." *In re Kia Hyundai Vehicle Theft Litigation* (U.S. Jud. Pan. Mult. Lit. 2022) 648 F.Supp.3d 1374, 1375. Thus, the second prong is easily met in this case.

3.   <u>Defendants Have Failed to Identify Any Issue Peculiar to Subrogation That Would Preclude Rule 20(a)(1)(A) Joinder</u>

Defendants failed to cite any authority holding that the acquisition of a subrogation interest prevents joinder. Instead, Defendants string together quotations referring generally to the concept of subrogation that do not support their conclusion that joinder rules are somehow different for subrogated carriers. Once again,

subrogees are "standing in the shoes" of their subrogors, holding the same claims and subject to the same defenses. *Fireman's Fund Ins. Co. v. Maryland Cas. Co.*, 65 Cal.App.4th 1279, 1291-93 (1998). The theft and property damage "occurrences" being analyzed under Rule 20, therefore, occurred to the insured—not the insurer. *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977) (the right to the individual relief plaintiffs requested against the defendants arose out of the same occurrence because it was related to the common illegal conduct at issue).

Contrary to Defendants' suggestions, the case law on the aggregation of product defect subrogation claims overwhelmingly favors joinder of these claims. *State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.*, No. 11 C 8946, 2012 WL 1287698 and Doc. 85 (N.D. Ill. Apr. 16, 2012, July 20, 2012) (denying defendant's motion to sever three plaintiffs and 210 claims for dryer fires that occurred in 33 different states); *see also Allstate Fire & Cas. Ins. Co. v. Electrolux Home Products, Inc.*, 16-CV-02080-PAB-STV, 2017 WL 4236309 (D. Colo. Sept. 22, 2017) (two subrogation claims); *Allstate Insurance Company v. Electrolux Home Products, Inc.*, No. 3:17-CV-391 (JCH)) 2017 WL 10718329, at *2–3 (D. Conn., Sept. 18, 2017) (four subrogation claims); *Allstate Ins. Co. v. Electrolux Home Products, Inc.*, 4:16-CV-03666-RBH, 2017 WL 2216298 (D.S.C. May 19, 2017) (five subrogation claims); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 1:16CV1946, 2016 WL 6995271 (N.D. Ohio Nov. 30, 2016) (six subrogation claims); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 1:16-cv-09639, Doc. 23 (N.D. Ill. Mar. 31, 2017) (forty-six subrogation claims); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 16cv6804, Doc. 27 (S.D.N.Y. Dec. 5, 2016) (eighteen subrogation claims); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. CV 16-6514, Doc. 25 (C.D. Cal. Nov. 3, 2016) (twenty-four subrogation claims); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 16-4276, Doc. 17 (E.D. Pa. Sept. 22, 2016) (nine subrogation

claims); *State Auto Ins. Companies v. Whirlpool Corp.*, 62 F. Supp. 3d 857, 866–67
(W.D. Wis. 2014) (five subrogation claims); *Westfield Ins. Co. v. Interline Brands,
Inc.* (D.N.J., Dec. 20, 2013, No. CIV. 12-6775 JBS/JS) 2013 WL 6816173, at *10–12
(four subrogation claims);  *Allstate Ins. Co. v. Wal-Mart Stores, Inc.*, 00 CV 0307,
2000 WL 960736 (N.D. Ill. July 11, 2000) (fifteen subrogation claims).

Further, Defendants do not articulate any individualized matters of proof or law
necessary for a subrogation claim *which would prevent joinder*. Under the equitable
subrogation elements identified by the Court in *Dobbas v. Vitas*, the only element of
proof which is truly "unique" to the insurer is that it has paid its insured's damages.
191 Cal. App. 4th 1442, 1449-50 (2011); *American Hardware Mut. Ins. Co. v. Fire
Equipment Sales & Service, Inc.* (W.D.N.Y., June 9, 2004, No. 01CV416) 2004 WL
1563087, at *7 (finding equitable subrogation applied "even if the insurance policy
terms were violated" because the insurer paid the claimed damages, a point conceded
by all parties). The fact of that payment is an extraordinarily simple matter of proof
which, from our research, has *never* prevented joinder of any kind. Furthermore,
while there may be unique state laws in the medical insurance context, this action
involves only property damage subrogation. Defendants have failed to articulate any
difference in state law for an insurer's *equitable* subrogation interest arising from
property damage. § 222:10. What Law Governs, 16 COUCH ON INS. § 222:10 ("When
the [subrogation] rights derive from equity, in fact, there is authority that the entire
matter of choice of law is irrelevant."); *Western Cas. & Sur. Co. v. Meyer*, 301 Ky.
487, 192 S.W.2d 388 (1946) (holding that choice of law is immaterial when
determining equitable subrogation because "equity is the same everywhere").

## C.   Judicial Economy Is Facilitated by the Provisional Joinder of the Subrogation Claims

Defendants' motion does not contest that provisional joinder is the most
efficient means of conducting pre-trial proceedings. As discussed above, Defendants

have taken the position that the task of answering a <u>single</u> 805 page complaint is too burdensome.[3] Yet, Defendants' now seek severance, dismissal, and refiling of over three-hundred thousand (300,000) separate subrogation complaints. There can be no dispute that such a remedy would create an unprecedented burden on the Parties, the Court, and the venire pool. Even if each of the over four hundred (400) subrogated insurers were to join their claims under FRCP 18 and file separate 805 page pleadings, Defendants' severance proposal would be a colossal waste of judicial resources, without any identifiable benefit. As Defendants argued before the JPML, joinder of these claims will undoubtedly facilitate judicial economy.

**D.    The Joinder of Plaintiffs Is Fundamentally Fair and Not Prejudicial to Defendants**

Defendants have repeatedly agreed to provisional joinder in this matter, and therefore, there can be no fundamental unfairness at this stage of the litigation. According to the Ninth Circuit, "even once [FRCP 20a] requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side." *Visendi v. Bank of America, N.A.* (9th Cir. 2013) 733 F.3d 863, 870. "For example, when making a decision whether to allow the permissive joinder of a party, a court should consider such factors as the possible prejudice that may result to any of the parties in the litigation, the delay of the moving party in seeking an amendment to his pleadings, the motive that the moving party has in seeking such amendment, the closeness of the relationship between the new and the old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action." *Desert Empire Bank v. Insurance Co. of North America,* (9th Cir. 1980) 623 F.2d 1371, 1375. Absent some unique prejudicial circumstance, however, the pre-trial application of FRCP 20

---

[3] Defendants requested relief from the Court from the FRCP 8(b)(3) requirement to provide specific denials of the allegations of the master subrogation complaint and all future complaints. (Doc. 289, ¶¶ 3, 5); (Doc 300, ¶¶ 3, 5).

does not abridge a defendant's rights. *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.* (2010) 559 U.S. 393, 408 ("we think it obvious that rules allowing multiple claims (and claims by or against multiple parties) to be litigated together are also valid. *See, e.g.*, FRCP 18 (joinder of claims), 20 (joinder of parties), 42(a) (consolidation of actions). Such rules neither change plaintiffs' separate entitlements to relief nor abridge defendants' rights; they alter only how the claims are processed.").

Defendants argue that unfairness and prejudice might arise if a single trier of fact was required to perform "hundreds of mini-trials," citing to *Corley* and *Engine I (Subrogation)*. (Memo. at p. 12).[4] That concern is obviously premature and any concerns about prejudice should be addressed closer to trial—after the issues and claims remaining in the case are more crystalized—through consideration of a separate trial under Rule 42. *Broadcom Corp.*, 2016 WL 9108039, at *4. It is not yet known which of the over 300,000 claims will remain in the case and be selected for trial. The Parties have not yet exchanged contentions or performed any discovery, no design documents have been produced, expert discovery has not been disclosed, and there have been no pre-trial rulings. Consequently, Defendants' Motion fails to identify ***any two subrogation cases*** which possess meaningful differences.

For purposes of ***pre-trial proceedings***, Defendants have failed to articulate, much less prove, any "prejudice" incurred without severance. The closest Defendants come to identifying prejudice is a single unsupported statement: "the Subrogation Plaintiffs seek to lump their claims to hide the innumerable flaws that would have been exposed in individual pleadings." (Def. Memorandum, at p. 14). That "justification" barely amounts to anything more than gross speculation.

Furthermore, Defendants have already litigated and lost this issue while attacking the adequacy of the factual allegations in the Subrogation Plaintiffs'

---

[4] *See e.g. Texas Farmers Insurance Company v. Louisiana-Pacific Corporation* (E.D. Tex. 2017) 321 F.R.D. 561 (severing claims for trial).

pleading. (Doc. 269, Page ID, 7129). In its opinion, the Court held "Subrogation Plaintiffs do not need to plead individual facts for each insured to survive a motion to dismiss." *Id*. Further, Defendants have not identified any claim which might require any Subrogation Plaintiff to file a "different" pleading than the one currently at issue should it be severed. Thus, Defendants' request for a single complaint to be separated into 400,000 identical complaints to be refiled in the Central District of California has no rational basis except to needlessly complicate and delay these proceedings.

The only subrogation case cited by the Defendants to support severance at an early stage is *Allstate Insurance Company v. Electrolux Home Products*, and yet this case undermines Defendants' position. (E.D. Pa., Aug. 3, 2018, No. 5:18-CV-00699) 2018 WL 3707377.  *Allstate* did not involve an MDL proceeding and so its rationale was premised entirely upon the remedy of transfer to appropriate state forums under 28 U.S.C. § 1404(a). Further, the *Allstate* Court specifically disagreed that severance was proper on the facts of the eighty-six subrogation cases before it, because each of the eight-six cases alleged a common defect in the dryers. *Id.* at FN 10. Instead, the *Allstate* Court based its decision entirely on the differences in state law, opting to transfer cases controlled by the laws of other states to the appropriate forum in those states. *Id*. at 9. For the cases which remained in its jurisdiction, however, the Court subsequently allowed joinder of those claims due to the allegations of common defect. (E.D. Pa., Oct. 3, 2018, No. 5:18-CV-00699) 2018 WL 4770683, at *4 (stating "the benefits of consolidation are obvious" and granting Plaintiffs' motion to join those claims).

Unlike *Allstate*, the Defendants in this MDL actively sought both MDL consolidation and the joinder of Plaintiffs' subrogation claims into a single District, and Defendants are not seeking to transfer any of the pending claims away from this District. In other words, Defendants chose to litigate any common pre-trial issues in a single forum. Now that the Parties, the JPML, and this Honorable Court have agreed

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA'S MOTION TO SEVER
Case No.: 22-ML-03052-JVS-KES

that a nationwide consolidation of claims is appropriate, there is no utility in pre-trial
severance, particularly where, as here, the Parties have already agreed, drafted, filed,
and answered a single complaint separating out unique allegations for the law of each
state. Further, it must be noted that *Allstate v. Electrolux* was an extreme outlier.
Every other District Court to analyze the joinder of dryer subrogation claims against
Electrolux upheld the provisional joinder of those claims.[5] Because there is no rational
basis for severing claims during the pleading stage when all Subrogation claims must
remain in the same MDL forum, Defendants' motion must be denied.

**E.    The Same Witnesses and Documentary Proof Will Be Necessary to
Prove Plaintiffs' Allegations of Common Defect and Contradict
Defendants' Affirmative Defenses**

Defendants do not dispute that all pre-trial discovery as to the allegations of
common defect will involve the same witnesses and documentary proof. *In re Kia
Hyundai Vehicle Theft Litigation* (U.S. Jud. Pan. Mult. Lit. 2022) 648 F.Supp.3d
1374, 1375 ("All actions can be expected to share factual questions surrounding the
marketing, sale and manufacture of these vehicles and defendants' knowledge of the
alleged defect."); *Kehr v. Yamaha Motor Corp.*, 596 F.Supp.2d 821, 827-28 (S.D. NY
2008) (plaintiffs' claims arose from common products and defects so that much
discovery, depositions and proof relating to those products and defects would be
identical). Discovery and all other pretrial proceedings in this action will undeniably
be managed most conveniently and efficiently, and eliminate redundancy of
document productions, depositions and discovery disputes, with all of the claims

---

[5] *State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.*, No. 11 C 8946, 2012 WL 1287698,
and Doc. 85 (N.D. Ill. Apr. 16, 2012, July 20, 2012) (denying defendant's motion to sever three
plaintiffs and 210 claims for dryer fires that occurred in 33 different states); *Allstate Insurance
Company v. Electrolux Home Products, Inc.*, No. 3:17-CV-391 (JCH)) 2017 WL 10718329, at *2–
3 (D. Conn., Sept. 18, 2017) (citing six other District Courts which denied Electrolux's motions to
sever); *Allstate Fire & Cas. Ins. Co. v. Electrolux Home Products, Inc.*, 16-CV-02080-PAB-STV,
2017 WL 4236309 (D. Colo. Sept. 22, 2017) (denying motion to sever two subrogation claims);
*Allstate Ins. Co. v. Electrolux Home Products, Inc.*, 4:16-CV-03666-RBH, 2017 WL 2216298
(D.S.C. May 19, 2017) (denying motion to sever five subrogation claims).

remaining joined together in a single proceeding before the same court and the parties represented by the same counsel.

## II. The Defendants Have Waived Their Objection to Provisional Joinder by Stipulating to the Present Joinder of Plaintiffs

Defendants have waived any objection to the provisional joinder order of this Court (Doc. 145) by repeatedly stipulating to the joinder of Plaintiffs and their claims in this MDL. Under analogous circumstances, this Court has held that a defendant waived a fraudulent joinder argument "by stipulating to Plaintiffs' requests to amend their Complaint." *Markham v. Home Depot USA, Inc.,* (C.D. Cal., Jan. 10, 2014, No. CV 13-8431-GHK JCGX) 2014 WL 117102, at *2. As explained above, Defendants have repeatedly stipulated to both the Plaintiffs' amendment requests to join additional Plaintiffs and the Court's orders which implemented those stipulations throughout the MDL. (Doc. 108, FN 2; Doc 289; Transcript of June 12, 2023 Status Conference, In re: Kia Hyundai Vehicle Theft Litigation, CASE NO. SAML-22-03052-JVS (attached hereto as Exhibit "A")). Moreover, Defendants admitted to the JPML that the claims against it "all rely on the same basic factual premise." *In re Kia Hyundai Vehicle Theft Litigation*, MDL No. 3052, Doc. 44, (p. 4). This admission should be sufficient to satisfy Rule 20's "same transaction" test under Ninth Circuit precedent. *Coughlin*, 130 F.3d at 1350 (stating that "the 'same transaction' requirement [..] refers to similarity in the factual background of a claim"). As such, Defendants should be held to have waived their objection to the provisional joinder of Plaintiffs' claims for pre-trial purposes. *Markham*, 2014 WL 117102, at *2.

## III. Dismissal Is Not a Proper Remedy Under FRCP 21 and May Prejudice Plaintiffs

In its prayer for relief, Defendants improperly seek "dismissal" of all Plaintiffs other than the first named Plaintiff, rather than mere severance. Yet, the rule they invoke, Rule 21, explicitly states that "*[m]isjoinder of parties is not a ground for*

*dismissing an action*." FED. R. CIV. P. 21. Furthermore, a dismissal will likely prejudice Plaintiffs by creating issues related to statutes of limitation for certain claims if those actions must be refiled as original actions. *Holt v. County of Orange* (9th Cir. 2024) 91 F.4th 1013, 1021 ("it is well established that dismissal of a party for improper joinder does not toll the statute of limitations for the period that party's claims were pending before the dismissal"). Accordingly, the Ninth Circuit has found an abuse of discretion where the district court failed to evaluate the prejudice caused to plaintiff by dismissal of misjoined claims, as opposed to severance. *Rush v. Sport Chalet, Inc.,* (9th Cir. 2015) 779 F.3d 973, 975; *see Holt*, 91 F.4th at 1021.

In filing their claims into a single consolidated complaint, Plaintiffs relied upon multiple express agreements with the Defendants and the Orders of this Court. Defendants must be estopped from taking contradictory positions on procedural joinder which results in prejudice to the Plaintiffs and the application of a statute of limitation defense which would not otherwise be applicable.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' Motion for Severance.

Dated: May 3, 2024                    Respectfully submitted,

COZEN O'CONNOR

By:  *s/Elliott R. Feldman*_____


GROTEFELD HOFFMANN

By:  *s/Jonathan Tofilon*_____

1   LAW OFFICES OF ROBERT A. STUTMAN, P.C.

2   By: *s/Timothy E. Cary*

3

4   BERGER KAHN, A LAW CORPORATION

5   By: *s/Craig S. Simon*

6   *Attorneys for Subrogation Plaintiffs*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA
AMERICA'S MOTION TO SEVER
Case No.: 22-ML-03052-JVS-KES

1

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Subrogation Plaintiffs certifies that this brief contains 6,918 words, which complies with the word limit of L.R. 11-6.1.

Dated: May 3, 2024                    GROTEFELD HOFFMANN


By:     *s/Jonathan Tofilon*
        Jonathon Tofilon
        *Attorneys for Subrogation Plaintiffs*

SUBROGATION PLAINTIFFS' OPPOSITION TO HYUNDAI MOTOR AMERICA AND KIA AMERICA'S MOTION TO SEVER
Case No.: 22-ML-03052-JVS-KES