1  QUINN EMANUEL URQUHART & SULLIVAN LLP
2  Steven G. Madison (SBN: 101006)
   stevemadison@quinnemanuel.com
3  Justin C. Griffin (SBN: 234675)
   justingriffin@quinnemanuel.com
4  865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100
7
8  *Attorneys for Defendants*
9
10                UNITED STATES DISTRICT COURT

11                CENTRAL DISTRICT OF CALIFORNIA

| 12 | In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 8:22-ML-03052-JVS-(KESx) |
|---|---|---|
| 13 | | The Honorable James V. Selna |
| 14 | | **DEFENDANTS' NOTICE OF AND MOTION TO DISMISS PLAINTIFF CITY OF LORAIN, OHIO'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| 17 | This Document Relates to: | |
| 18 | *City of Lorain, Ohio v. Hyundai Motor Company, Hyundai Motor America, Kia Corporation, and Kia America, Inc.*, Case No. 8:23-cv-02083 | Hearing Date:  August 12, 2024 Hearing Time: 1:30 pm |

21
22
23
24
25
26
27
28

# NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on August 12, 2024, at 1:30 pm, or as soon hereafter as counsel may be heard, in the courtroom of the Honorable James V. Selna (Courtroom 10C) of the above-entitled Court, located at 411 West 4th Street, Santa Ana, CA 92710, Defendants Kia America, Inc. ("KA"), and Hyundai Motor America ("HMA") (collectively, "Defendants") will and hereby do move the above-entitled Court for an order dismissing with prejudice Plaintiff City of Lorain, Ohio's First Amended Complaint[1] (the "FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the FAC fails to state any claim upon which relief may be granted.

Defendants' Motion is based on this Notice, the Memorandum of Points and Authorities filed herewith, Defendants' Request for Judicial Notice, any additional briefing on the Motion (including Defendants' reply brief), the files and records of this case and the related cases centralized in this Multidistrict Litigation, and such argument as is presented to the Court at the hearing on this Motion.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on May 15, 2024.

//

//

//

//

//

---

[1]  First Amended Complaint, *City of Lorain, Ohio v. Hyundai Motor Company et al.*, No. 8:23-cv-02083 (C.D. Cal. May 3, 2024), Dkt. 30.  Plaintiff City of Lorain's FAC also named Hyundai Motor Company ("HMC") and Kia Corporation ("KC") as defendants to maintain the same posture as other governmental entity plaintiffs in this multidistrict litigation.  Dkt. 418.  On May 13, 2024, the parties stipulated to dismissing without prejudice the claims against HMC and KC.  *Id.*

DATED: May 22, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _/s/ Steven G. Madison_

Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendants*

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ...................................................................................... 2

    A.    This Court Determined That A Prescription Of Specific Anti-Theft Technology Runs Afoul Of FMVSS 114 ................................. 2

    B.    Defendants' Vehicles Comply With Federal Law And NHTSA Has Found No Safety Defect Requiring A Recall ................................. 3

    C.    Social Media And Intervening Criminals Caused An Unprecedented Increase In Theft ................................. 3

LEGAL STANDARD ............................................................................... 4

ARGUMENT ............................................................................................ 4

I.    PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW ............. 4

    A.    State Tort Claims That Frustrate FMVSS 114's Objective Of Flexibility Are Preempted ................................. 4

    B.    Plaintiff's Claims Fail Federal Pleading Standards Because They Do Not Identify A Particular Defect, Apart From A Lack of Immobilizers ................................. 6

II.    THE OPLA SUBSUMES PLAINTIFF'S PUBLIC NUISANCE CLAIMS ................................. 8

III.    PLAINTIFF'S CLAIMS ALSO FAIL DUE TO SUPERSEDING THIRD-PARTY CRIMINAL ACTS ................................. 9

    A.    Under Ohio Law, Post-Theft Criminal Conduct Is Unforeseeable As A Matter Of Law ................................. 10

    B.    Plaintiff's Claims Must Be Dismissed Because They Are Based On Post-Theft Conduct ................................. 12

IV.    DEFENDANTS OWE NO DUTY TO PROTECT PLAINTIFF FROM THIRD PARTIES ................................. 14

V.    PLAINTIFF'S ABSOLUTE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT DEFENDANTS INTENTIONALLY CREATED A NUISANCE ................................. 16

CONCLUSION ................................. 18

# TABLE OF AUTHORITIES

## CASES

*Allen Freight Lines, Inc. v. Consol. Rail Corp.*,
595 N.E.2d 855 (Ohio 1992) .................................................................. 14, 16

*Am. Winds Flight Acad. v. Garmin Int'l*,
2010 WL 3783136 (N.D. Ohio Sept. 17, 2010) ........................................ 9

*Angerman v. Burick*,
2003 WL 1524505 (Ohio Ct. App. Mar. 26, 2003) ................................. 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................ 4, 6, 15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................................ 4, 6

*Bugaj v. Nationwide Ins.*,
2009 WL 2678938 (Ohio Ct. App. Aug. 28, 2009) .............................. 12, 13

*Carrel v. Allied Prods. Corp.*,
677 N.E.2d 795 (Ohio 1997) ...................................................................... 8

*Cascone v. Herb Kay Co.*,
451 N.E.2d 815 (Ohio 1983) .................................................................... 11

*City of Cincinnati v. Beretta U.S.A. Corp.*,
768 N.E.2d 1136 (Ohio 2002) ............................................................... 9, 15

*City of Cleveland v. Ameriquest Mort. Sec., Inc.*,
615 F.3d 496 (6th Cir. 2010) ................................................................... 16

*City of Cleveland v. Ameriquest Mortg. Sec., Inc.*,
621 F. Supp. 2d 513 (N.D. Ohio 2009) .................................................. 16

*Davis v. Widman*,
922 N.E.2d 272 (Ohio Ct. App. 2009) .................................................... 16

*Est. of Ciotto v. Hinkle*,
145 N.E.3d 1013 (Ohio Ct. App. 2019) ............................................... 14, 15

*Ests. of Morgan v. Fairfield Fam. Counseling Ctr.*,
673 N.E.2d 1311 (Ohio 1997) ................................................................. 15

*Farrales v. Ford Motor Co.*,
2022 WL 1239347 (N.D. Cal. Apr. 27, 2022) .......................................... 7

*Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*,
543 N.E.2d 769 (Ohio 1989) ................................................................... 15

*Feichtner v. Ohio Dep't of Transp.*,
683 N.E.2d 112 (Ohio Ct. App. 1995) ............................................... 15, 16

*Fox v. Kia Am., Inc.,*
  2024 WL 1328730 (N.D. Ohio Mar. 28, 2024) ................2, 10, 11, 14

*Gabbard v. Madison Loc. Sch. Dist. Bd. of Educ.,*
  179 N.E.3d 1169 (Ohio 2021) ....................................................9

*Gade v. Nat. Solid Wastes Mgmt. Assn.,*
  505 U.S. 88 (1992) ...................................................................5

*Geier v. Am. Honda Motor Co.,*
  529 U.S. 861 (2000) ..............................................................3, 5

*In re Nat'l Prescription Opiate Litig.,*
  2018 WL 6628898 (N.D. Ohio Dec. 19, 2018) ............................15

*In re Nat'l Prescription Opiate Litig.,*
  82 F.4th 455 (6th Cir. 2023) ...................................................8

*Inskeep v. Columbus Zoological Park Assn.,*
  207 N.E.3d 876 (Ohio Ct. App. 2023) ......................................15

*Jacobson v. Kaforey,*
  75 N.E.3d 203 (Ohio 2016) .....................................................9

*Khoja v. Orexigen Therapeutics, Inc.,*
  899 F.3d 988 (9th Cir. 2018) ..................................................4

*Lagowski v. Shelly & Sands, Inc.,*
  38 N.E.3d 456 (Ohio Ct. App. 2015) ....................................12, 13

*Lawton v. Hyundai Motor America, Inc. et al.,*
  Case No. 24-cv-00097 (W.D. Mo. May 20, 2024), Dkt. 58 ...........11, 15

*McDougall v. Smith,*
  944 N.E.2d 1218 (Ohio Ct. App. 2010) .....................................11

*Miles v. Cedar-Lee Chrysler-Plymouth, Inc.,*
  1978 WL 218347 (Ohio Ct. App. Apr. 27, 1978) .....................12, 13

*Nottke v. Norfolk S. Ry. Co.,*
  264 F. Supp. 3d 859 (N.D. Ohio 2017) ...................................16, 17

*Pelayo v. Hyundai Motor Am., Inc.,*
  2021 WL 1808628 (C.D. Cal. May 5, 2021) ...............................7

*Pendrey v. Barnes,*
  479 N.E.2d 283 (Ohio 1985) ............................................11, 12, 13

*Priester v. Cromer,*
  736 S.E.2d 249 (S.C. 2012) .....................................................5

*Raynaldo v. Am. Honda Motor Co.,*
  2022 WL 4358096 (N.D. Cal. Sept. 20, 2022) ...........................6, 7

*Ross v. Nutt*,
   203 N.E.2d 118 (Ohio 1964) ................................................9, 11, 12, 13

*Soliman v. Daimler AG*,
   2011 WL 4594313 (E.D.N.Y. Sept. 30, 2011) ................................... 5

*State ex rel. Prade v. Ninth Dist. Ct. of Appeals*,
   87 N.E.3d 1239 (Ohio 2017) ................................................................ 9

*Stiner v. Amazon.com, Inc.*,
   164 N.E.3d 394 (Ohio 2020) ................................................................ 8

*Taylor v. Cincinnati*,
   55 N.E.2d 724 (Ohio 1944) ................................................................ 14

*Tilton v. Austintown Motors, Inc.*,
   1997 WL 816526 (Ohio Ct. App. Dec. 30, 1997) ....................... 12, 13

*Wallace v. Ohio Dep't of Com.*,
   773 N.E.2d 1018 (Ohio 2002) ........................................................... 14

*Williams v. Bos. Sci. Corp.*,
   2023 WL 9596983 (N.D. Ohio Dec. 11, 2023) .................................. 6

*Williamson v. Mazda Motor Am.*,
   562 U.S. 323 (2011)............................................................... 3, 5, 6

## STATUTES

Ohio Rev. Code § 2307.71 .................................................................. 8, 9

## OTHER AUTHORITIES

33 Fed. Reg. 6471 (Apr. 27, 1968) ..................................................... 2, 5

49 C.F.R. § 571.114 ............................................................................. 2, 5

55 Fed. Reg. 21868 (May 30, 1990) ........................................................ 5

56 Fed. Reg. 12464 (Mar. 26, 1991) ................................................... 2, 5

71 Fed. Reg. 17752 (Apr. 7, 2006) ...................................................... 2, 6

*Fox v. Kia Am., Inc.*,
   Case No. 23-cv-01881 (N.D. Ohio), Dkt. 10 & 12............................. 10

Restatement (Second) of Torts § 825 ................................................... 17

## **PRELIMINARY STATEMENT**

Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") (collectively, "Defendants") filed a motion to dismiss the Original Complaint of Plaintiff City of Lorain, Ohio ("Plaintiff"), forcing Plaintiff to file a First Amended Complaint (the "FAC") in an effort to save its claims.  Most notably, to avoid clear preemption law prohibiting Plaintiff from suing on the grounds that Defendants' vehicles lacked immobilizers, Plaintiff formulaically added the phrase "or other reasonable anti-theft technology" after its references to immobilizers.  Even with these amendments, Plaintiff's claims fail.

*First*, Plaintiff's claims are still preempted by federal law.  As this Court held when dismissing the City of Chicago's complaint, Plaintiff may not require Defendants to install immobilizers.  Dkt. 334 at 6.  Plaintiff's vague allegation that Defendants' vehicles lacked "reasonable anti-theft technology" fails to satisfy federal pleading standards and contradicts Plaintiff's own allegations, and thus cannot serve as the basis for Plaintiff's claims.  The FAC therefore still "definitively rests its claims [on] the allegation that Defendants failed to use engine immobilizers" and should be dismissed with prejudice.  *Id.*

*Second*, the Ohio Product Liability Act ("OPLA") subsumes and forecloses Plaintiff's causes of action for "common law absolute public nuisance" and "common law qualified public nuisance."  Plaintiff's claims track the OPLA's plain and unambiguous language.

*Third*, all three of Plaintiff's claims fail because they rely on the flawed conclusion that Defendants' alleged conduct proximately caused Plaintiff's injuries.  Where, as here, the independent, reckless, and criminal actions of third parties sever the causal link between Defendants' alleged negligence and the Plaintiff's injuries, Defendants cannot be held liable.  The Northern District of Ohio recently relied on this black-letter law when it dismissed a design-defect claim against Kia America (a defendant in this case) by a plaintiff who was injured after a stolen Kia, allegedly

lacking an immobilizer, collided with her vehicle. *Fox v. Kia Am., Inc.*, 2024 WL 1328730, at *13–14 (N.D. Ohio Mar. 28, 2024) (citing to an "unbroken line of authority" to hold that, "as a matter of law, the theft and subsequent reckless operation of the [vehicle] involved in Plaintiff's accident constitute an intervening, superseding cause that breaks the chain of causation with respect to Defendant Kia").

*Fourth*, Plaintiff's negligence and qualified public nuisance claims fail because Ohio law does not impose a duty on Defendants to protect against third-party conduct in the absence of a special relationship, which Plaintiff has not and cannot allege.

*Lastly*, Plaintiff's absolute public nuisance claim fails because Plaintiff fails to plausibly allege that Defendants intended to create a public nuisance.

For these reasons, and as further explained below, Plaintiff's FAC should be dismissed without leave to amend.

## BACKGROUND

### A.    This Court Determined That A Prescription Of Specific Anti-Theft Technology Runs Afoul Of FMVSS 114

Neither Federal Motor Vehicle Safety Standard ("FMVSS") 114 nor any federal law or regulation has ever mandated installation of engine immobilizers. *See* 49 C.F.R. § 571.114. Rather, the U.S. Department of Transportation's National Highway Traffic Safety Administration's ("NHTSA") position has been that a flexible performance standard best protects against vehicle theft. *See, e.g.*, 56 Fed. Reg. 12464 (Mar. 26, 1991) (amending FMVSS 114 in 1991 and 1992 to "provide manufacturers with greater flexibility in designing" their locking and transmission systems to meet the performance standard); 71 Fed. Reg. 17752, 17753 (Apr. 7, 2006); 33 Fed. Reg. 6471, 6472 (Apr. 27, 1968).

In keeping with NHTSA's objective of flexibility, this Court dismissed claims against Defendants brought by the City of Chicago that attempted to impose upon Defendants a rigid duty to use engine immobilizers. Dkt. 334 at 6. This Court held that this "specific of a prescription runs afoul of federal government regulations that

do not impose such a narrow requirement." *Id.*; *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 871, 881–82 (2000); *Williamson v. Mazda Motor Am.*, 562 U.S. 323, 330 (2011).

## B. Defendants' Vehicles Comply With Federal Law And NHTSA Has Found No Safety Defect Requiring A Recall

On April 20, 2023, 18 state Attorneys General wrote to NHTSA (the "State AGs' Recall Request") asking the agency to:

> use its authority to institute a recall of unsafe Hyundai and Kia vehicles manufactured between 2011 and 2022 whose easily-bypassed ignition switches and lack of engine immobilizers make them particularly vulnerable to theft.

RJN Ex. 1 at 1 (cited at FAC ¶¶ 90, 93, 95). Plaintiff fails to mention NHTSA's response, in which the agency unequivocally rejected the State AGs' Recall Request and their contention that the lack of immobilizers in Defendants' vehicles violates FMVSS:

> At this time, NHTSA has not determined that this issue constitutes either a safety defect or noncompliance requiring a recall … FMVSS No. 114, does not require an engine immobilizer.

RJN Ex. 2 at 2. NHTSA added, "[h]ere, the safety risk arises from unsafe use of a motor vehicle by an unauthorized person after taking significant destructive actions to parts of the vehicle." *Id.*

## C. Social Media And Intervening Criminals Caused An Unprecedented Increase In Theft

The FAC includes no allegations that, *before* late 2020, either the general public or Defendants were aware of the multi-step process required to steal Defendants' vehicles (a procedure the Kia Boyz promoted on social media, *see* RJN Ex. 3). Indeed, according to Plaintiff's allegations, the "unprecedented" increase in thefts began in Lorain in 2023—over a decade after some vehicles were manufactured and sold. FAC ¶¶ 102–03. Defendants did not injure Plaintiff; Plaintiff's purported damages are the result of an alleged theft wave that has been spurred on by a social

media fad in which thieves "challenge[] teens to steal a car off the street" in a "coordinated effort."  *See* RJN Ex. 4; *see also* FAC § VI.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do."  *Id.* (internal quotation marks omitted).  Rather, the plaintiff must "allege more by way of factual content to nudge his claim" of unlawful action "across the line from conceivable to plausible."  *Id.* at 683 (cleaned up).

In ruling on a motion to dismiss, a court may consider: (1) all material within the pleadings; (2) documents incorporated into the complaint by reference; and (3) matters of which a court may take judicial notice.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENT

## I.   PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW

In response to Defendants' motion to dismiss and in an effort to circumvent dismissal of its claims on preemption grounds, Plaintiff filed an amended complaint and replaced almost every reference to "immobilizers" with "immobilizers or other reasonable anti-theft technology," or some variation thereof.  *See, e.g.*, FAC ¶¶ 3, 6, 64, 90, 99.  As discussed below, these vague and formulaic recitals fail to satisfy federal pleading standards.  Plaintiff therefore still "definitively rests its claims [on] the allegation that Defendants failed to use engine immobilizers" and the FAC should be dismissed with prejudice.  Dkt. 334 at 6.

### A.   State Tort Claims That Frustrate FMVSS 114's Objective Of Flexibility Are Preempted

Federal law preempts state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Gade v. Nat. Solid Wastes Mgmt. Assn.*, 505 U.S. 88, 98 (1992). That includes state tort rules that "impose legal duties" in "conflict directly with federal regulatory mandates." *Geier*, 529 U.S. at 871, 881–82. Federal regulations carry out statutory commands, and so preempt any tort claim that would frustrate a "significant objective of [a] federal regulation." *Williamson*, 562 U.S. at 330 (federal regulation giving manufacturers options for compliance preempts state rules restricting those options when, as in *Geier*, flexibility was a "significant objective" of the regulation); *see also Priester v. Cromer*, 736 S.E.2d 249, 260 (S.C. 2012); *Soliman v. Daimler AG*, 2011 WL 4594313, at *5 (E.D.N.Y. Sept. 30, 2011).

As this Court found when it dismissed the City of Chicago's complaint, flexibility is a significant objective of FMVSS 114. *See generally* Dkt. 334. FMVSS 114 does not prescribe a particular anti-theft technology, but instead mandates that a vehicle's starting system prevent (1) "normal activation" of the engine and (2) "steering, or forward self-mobility" when the key is removed. *See* 49 C.F.R. § 571.114 S5.1.1. *Any* technology meeting these performance requirements satisfies FMVSS 114. NHTSA's Test Procedures for FMVSS 114, which the agency uses to verify compliance, underscore the standard's flexibility. By testing compliance through reference to objective criteria, such as whether the car engine starts or steering wheel can rotate when the key is removed, the Test Procedures contemplate that a range of technologies may satisfy FMVSS 114. RJN Ex. 5, at 4, 16.

NHTSA's decision to let manufacturers select among different theft-prevention technologies is not merely an afterthought, but a significant regulatory objective that has been repeatedly reaffirmed throughout the decades. 33 Fed. Reg. 6471, 6472 (Apr. 27, 1968) ("the standard has been framed to permit as many specific devices as possible to meet its requirements"); 55 Fed. Reg. 21868, 21869, 21871–72 (May 30, 1990) (expanding rule to identify alternative mechanisms of compliance due to concerns that proposed changes "would … improperly restrict design flexibility"); 56 Fed. Reg. 12464 (Mar. 26, 1991) (amending rule to "provide manufacturers with

greater flexibility in designing" their locking and transmission systems to meet the performance standard); 71 Fed. Reg. 17752, 17753 (Apr. 7, 2006) (broadening the standard because the existing rule used "terminology that was unnecessarily design-restrictive").

Because flexibility and the innovation it drives have always been "significant objective[s]" of NHTSA's theft-prevention regulation, *Williamson*, 562 U.S. at 330, the regulation preempts state tort duties that would undercut that flexibility, eliminate manufacturer choice, and impose rigid technological mandates that NHTSA has rejected. Recognizing this rule, this Court dismissed the City of Chicago's complaint which sought to require Defendants to install immobilizers, finding that this "specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement." Dkt. 334 at 6.

### B. Plaintiff's Claims Fail Federal Pleading Standards Because They Do Not Identify A Particular Defect, Apart From A Lack of Immobilizers

Plaintiff's vague and formulaic references to "other reasonable anti-theft technology" cannot serve as the basis for its claims against Defendants because such allegations fail to identify any defect and thus do not satisfy federal pleading standards. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *see also, e.g.*, *Raynaldo v. Am. Honda Motor Co.*, 2022 WL 4358096, at *4–5 (N.D. Cal. Sept. 20, 2022) (dismissing claims for failure to identify specific defect with vehicle's electrical systems); *Williams v. Bos. Sci. Corp.*, 2023 WL 9596983, at *2 (N.D. Ohio Dec. 11, 2023) (allegations that a product failed are insufficient to state Ohio design-defect claim).

For product liability claims, "a complaint gives fair notice to the defendant of a defect if it (1) identifies the particular part or system affected by the defect, and (2) describes the problems allegedly caused by the defect." *Raynaldo*, 2022 WL 4358096, at *4. Courts consistently apply this standard to dismiss automobile defect

claims which fail to identify the allegedly defective part or system.  *See, e.g.*, *Pelayo v. Hyundai Motor Am., Inc.*, 2021 WL 1808628, at *5 (C.D. Cal. May 5, 2021) ("Plaintiffs' theory that Defendants, through their negligence, failed to prevent *some* defect in the Gamma Engines is, again, insufficient notice of what defect is at issue. In sum, the FAC describes only the *effects* of the alleged defect, which is insufficient."); *Farrales v. Ford Motor Co.*, 2022 WL 1239347, at *6 (N.D. Cal. Apr. 27, 2022) (same for "engine cooling system"); *Raynaldo*, 2022 WL 4358096, at *4–5 (dismissing claims for failure to identify specific defect with vehicle's electrical systems).

Plaintiff's allegations do not give fair notice to Defendants.  Other than the vehicles' alleged omission of immobilizers, the FAC does not identify *any* particular vehicle part(s) or system(s) that are allegedly defective, or explain how the defect(s) caused a foreseeable wave of thefts in Lorain, Ohio.  In fact, Plaintiff's allegations indicate that Defendants' vehicles ***are*** equipped with anti-theft technology NHTSA finds reasonable.  The FAC describes FMVSS 114 as "requir[ing] automobile manufacturers to include reasonable anti-theft technology, of which engine immobilizers are the industry standard, to make it harder for would-be thieves to steal cars."  FAC ¶ 66.  Plaintiff does not and cannot allege that Defendants' vehicles violate FMVSS 114; indeed, NHTSA reviewed this matter and did not find that the vehicles failed to comply with FMVSS 114.  *See supra* Background § B; RJN Ex. 2 at 2.  Thus, according to Plaintiff's own allegations, Defendants' vehicles include "reasonable anti-theft technology"; just not *immobilizers specifically*.  Further, Plaintiff dismisses out of hand the reasonableness of Defendants' software updates and free steering-wheel locks, FAC ¶¶ 89–90, even though, according to Plaintiff's own authorities, a "range of crime prevention options [are] available to reduce car theft," including steering-wheel locks, RJN Ex. 6 at 75—again making clear that under Plaintiff's claims, only immobilizers are sufficient.

In sum, state tort law cannot be used to impose a universal mandate to use a single anti-theft technology (*i.e.*, immobilizers) because federal regulators have for decades strived to safeguard design flexibility.  Plaintiff's vague claim that Defendants' vehicles lack "reasonable anti-theft technology" does not provide Defendants adequate notice of what defect is at issue and is contradicted by Plaintiff's own allegations, such that the FAC still "definitively rests its claims [on] the allegation that Defendants failed to use engine immobilizers."  Accordingly, as this Court held when dismissing the City of Chicago's complaint, Dkt. 334, all of Plaintiff's claims should be dismissed as preempted.

## II.    THE OPLA SUBSUMES PLAINTIFF'S PUBLIC NUISANCE CLAIMS[2]

By its plain language, the Ohio Products Liability Act forecloses Plaintiff's public nuisance claims.  When first enacted, the Supreme Court of Ohio held that "all common-law products liability causes of action survive the enactment" of the OPLA. *Carrel v. Allied Prods. Corp.*, 677 N.E.2d 795, 800 (Ohio 1997).  However, the Act was later amended to expressly "abrogate *all* common law product liability claims or causes of action."  Ohio Rev. Code § 2307.71(B) (emphasis added); *Stiner v. Amazon.com, Inc.*, 164 N.E.3d 394, 401 (Ohio 2020) (describing the amended language as a "clear statement of legislative intent that the statutory text now controls Ohio's products-liability law").  This specifically "includes *any* public nuisance claim or cause of action at common law in which it is alleged that the design, manufacture, supply, marketing, distribution, … or sale of a product unreasonably interferes with a

---

[2]    The Ohio Supreme Court is currently deciding "[w]hether the Ohio Product Liability Act … abrogates a common law claim of absolute public nuisance resulting from the sale of a product in commerce in which the plaintiffs seek equitable abatement, including both monetary and injunctive remedies," *In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455, 462–63 (6th Cir. 2023), and oral argument on this issue took place on March 26, 2024.  This Court previously held that "dismissal as the Ohio Supreme Court weighs this … question would be premature."  Dkt. 270 at 14. Defendants move for abrogation and dismissal under the OPLA to preserve their rights.

right common to the general public." Ohio Rev. Code § 2307.71(A)(13) (emphasis added).

Plaintiff alleges that Defendants created a public nuisance—defined in the FAC as "an unreasonable interference with a right common to the general public, including the rights to public health and public safety"—by designing, manufacturing, and distributing "unsafe vehicles that were statistically more vulnerable to theft." FAC ¶¶ 113, 115, 138. Plaintiff's public nuisance claims thus track the plain, unambiguous language of the OPLA, Ohio Rev. Code. § 2307.71(A)(13), and should therefore be dismissed. *See State ex rel. Prade v. Ninth Dist. Ct. of Appeals*, 87 N.E.3d 1239, 1242 (Ohio 2017) (where "the meaning of a statute is unambiguous and definite, it must be applied as written"); *Gabbard v. Madison Loc. Sch. Dist. Bd. of Educ.*, 179 N.E.3d 1169, 1175 (Ohio 2021) ("When the statutory language is unambiguous, we apply it as written without resorting to rules of statutory interpretation or considerations of public policy."); *Jacobson v. Kaforey*, 75 N.E.3d 203, 206 (Ohio 2016) ("If the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation, because an unambiguous statute is to be applied, not interpreted.") (internal quotation marks omitted).

## III.   PLAINTIFF'S CLAIMS ALSO FAIL DUE TO SUPERSEDING THIRD-PARTY CRIMINAL ACTS

Plaintiff City of Lorain fails to plausibly allege a core element of all three of its claims: that Defendants' alleged conduct proximately caused its injuries. *See City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1147–48 (Ohio 2002); *Am. Winds Flight Acad. v. Garmin Int'l*, 2010 WL 3783136, at *8 (N.D. Ohio Sept. 17, 2010); *see also Ross v. Nutt*, 203 N.E.2d 118, 120 (Ohio 1964) (requiring "that the injury sustained [] be the natural and probable consequence of the negligence alleged"). While this Court previously held that ***theft*** is a foreseeable consequence of allegedly faulty anti-theft systems, Dkt. 270 at 10, Ohio law squarely holds that ***post-***

*theft reckless and criminal conduct* is not foreseeable as a matter of law.  Plaintiff's alleged injuries arise from such post-theft conduct which could not have, as a matter of Ohio law, been proximately caused by Defendants' alleged conduct.

> ### A.    Under Ohio Law, Post-Theft Criminal Conduct Is Unforeseeable As A Matter Of Law

Defendants are not liable for Plaintiff's alleged damages because the alleged harm done to it was caused by unforeseeable intervening forces: the Kia Boyz challenge and the criminals responsible for the city's theft wave.  In a recent case filed in the Northern District of Ohio, a plaintiff sued Kia America (one of the defendants here), after being injured when a thief fleeing the police in a stolen Kia (which allegedly lacked an immobilizer) collided with the plaintiff's vehicle.  *See Fox v. Kia Am., Inc.*, 2024 WL 1328730, at *13–14 (N.D. Ohio Mar. 28, 2024).  While the plaintiff in *Fox* originally alleged claims for negligence, absolute and qualified public nuisance, and product liability against Kia, the plaintiff filed an amended complaint in response to a motion to dismiss based on, *inter alia*, abrogation under the OPLA.  *Fox v. Kia Am., Inc.*, Case No. 23-cv-01881 (N.D. Ohio), Dkt. 10 & 12; *see also Fox*, 2024 WL 1328730, at *5.  In its amended complaint, the *Fox* plaintiff dropped all claims except for the product liability claim under the OPLA and alleged that her injuries were caused by the defective design and manufacture of the Kia vehicle.  *Id.* at *1, 5.

The court in *Fox* dismissed the OPLA claim against Kia on the grounds that the plaintiff could not plausibly allege that Kia's alleged conduct proximately caused her injuries, as "the theft and subsequent reckless operation of the Kia Sportage … constitute[s] an intervening, superseding cause that breaks the chain of causation" between the alleged defect and the plaintiff's injuries.  *Id.* at *13.  The *Fox* court noted that "Ohio courts have consistently found, as a matter of law, that the theft of a motor vehicle constitutes an intervening cause that breaks the chain of causation with respect to the car owner's liability for personal injuries arising from that theft."  *Id.* at *11

(citing cases).  Indeed, "Ohio courts have consistently found that, when a defendant allegedly fails to protect against vehicle theft, the subsequent negligent operation of a stolen motor vehicle is not foreseeable."  *Id.* at *13.  "Moreover, Ohio courts have held generally that '[o]ne is permitted to assume that others will follow the law and exercise ordinary care.'"  *Id.* (quoting *McDougall v. Smith*, 944 N.E.2d 1218, 1220 (Ohio Ct. App. 2010)).  Thus, the thief's "reckless operation of the Kia Sportage [was] … both a new and independent intervening negligent act that [broke] the causal connection with respect to Kia as a matter of Ohio law."  *Id.* at *14; *see also Cascone v. Herb Kay Co.*, 451 N.E.2d 815, 819 (Ohio 1983) (operative test is "whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor").

*Fox* is just one in an unbroken string of decisions under Ohio law holding that a car thief's negligent or reckless driving, or intentional criminal acts committed *post-theft*, are unforeseeable as a matter of law, and therefore break the chain of causation from any negligence that allegedly contributed to the theft.[3]  *Ross*, 203 N.E.2d at 119–21 (upholding directed verdict in favor of defendant because it was "beyond the realm of reason to attach liability to an owner for acts of a nonpermissive user, a thief"); *Pendrey v. Barnes*, 479 N.E.2d 283, 283–84 (Ohio 1985) (upholding summary judgment against plaintiff despite proffer of statistical evidence indicating "stolen cars … have a tendency to become involved in accidents" because "no action or inaction

---

[3]   On May 20, 2024, Chief Judge Beth Phillips of the Western District of Missouri held that the same was true under Missouri law when she dismissed claims against HMA, alleging that HMA improperly "designed the [plaintiff's] car in a manner that made it easy to be stolen" by not including an immobilizer.  *See Lawton v. Hyundai Motor America, Inc. et al.*, Case No. 24-cv-00097 (W.D. Mo. May 20, 2024), Dkt. 58, at 2; *id.* at 10 (allegations that plaintiff's injury was foreseeable and the "natural and probable consequence" of defendants' vehicle design are "insufficient to establish proximate cause as a matter of law because the chain of causation involved two distinct criminal acts by third parties").

on [defendant's] part could have induced negligent or reckless behavior on the part of the car thief once the car had already been taken"); *Tilton v. Austintown Motors, Inc.*, 1997 WL 816526 at *1–2, *4 (Ohio Ct. App. Dec. 30, 1997) (relying on *Pendrey* to affirm judgment on the pleadings, and holding that any alleged negligence on the part of the automobile dealership "was superseded by the intervening act of theft" committed by the car thief).[4]  In short, "*Tilton* and *Pendrey* establish the principle that the theft of a motor vehicle … is an intervening superseding cause breaking the chain of proximate cause in a negligence case." *Lagowski v. Shelly & Sands, Inc.*, 38 N.E.3d 456, 459 (Ohio Ct. App. 2015).

## B.   Plaintiff's Claims Must Be Dismissed Because They Are Based On Post-Theft Conduct

Here, the public nuisance alleged by Plaintiff is the "threat to public safety" posed by the reckless driving, robberies, shootings and other crimes which allegedly occur *after* Hyundai and Kia vehicles are stolen.[5]  *See* FAC ¶ 105 ("The high rate of thefts has led to increased threats to public safety"); *see also id.* ¶ 1 (preventing car thefts "protects … the public by keeping dangerous drivers in stolen vehicles off the roads"), ¶ 11 ("Vehicle theft goes hand in hand with reckless driving, which in turn can result in injuries and/or death."), ¶ 12 (Lorain residents "subjected to increasingly dangerous conditions on their streets, as car thieves … engage[] in reckless driving, endangering Plaintiff's employees, residents, and property"), ¶ 76 ("Stolen cars are often driven recklessly—particularly in this case, where cars are stolen for joyriding or use in the commission of other crimes"), ¶ 78 ("the recent wave of Hyundai and

---

[4]   *See also Miles v. Cedar-Lee Chrysler-Plymouth, Inc.*, 1978 WL 218347, at *1–2 (Ohio Ct. App. Apr. 27, 1978) (relying on *Ross* to hold the same); *Bugaj v. Nationwide Ins.*, 2009 WL 2678938, at *1–2 (Ohio Ct. App. Aug. 28, 2009) (relying on *Ross* and *Pendrey*).

[5]   In noting that Plaintiff's claims are premised on post-theft conduct, Defendants do not concede that the car thefts, which likewise constitute intentional criminal acts, were foreseeable.

Kia thefts often involves teenagers joyriding, posting videos of themselves driving recklessly, and then abandoning the stolen vehicles—often after collisions"), ¶ 80 (police officers face "serious safety threats" responding to vehicle thefts, including "be[ing] shot, shot at, and stabbed").  According to Plaintiff, such threats to public safety were triggered by an unprecedented onslaught of viral videos posted and promoted on social media showing youth "engaging in reckless driving after stealing Kias and Hyundais," *id.* ¶ 72, including "rife [] examples" of "joyriding through school zones or through crowds of bystanders, and drivers hitting other cars," *id.* ¶ 79.  In Lorain, the threats to public safety, occurring *after* a car theft, allegedly include: car thieves driving 90 mph, running red lights, and "disobey[ing] traffic laws," *id.* ¶ 105, and attempted robberies, *id.* ¶ 106.

The causal link that Plaintiff attempts to trace between Defendants' alleged conduct and the City of Lorain's alleged injuries is far weaker than those which were rejected in *Ross*, *Pendrey*, *Tilton*, *Miles*, *Lagowski*, and *Bugaj*, as (1) additional extraordinary intervening forces are present here, including an unprecedented social-media campaign encouraging juveniles to steal Defendants' vehicles and drive recklessly; and (2) the alleged theft methodology requires more extensive criminal conduct than the key-in-the-ignition cases, including smashing the vehicle windows, ripping off the ignition casing, and engaging the ignition using a screw-driver or USB-A cable.  Pursuant to the unbroken line of Ohio caselaw described above which holds that a car thief's reckless driving and other criminal acts supersede any alleged negligence earlier in the causal chain, and therefore stands alone as the sole proximate cause of any resulting injury, Plaintiff's claims should be dismissed.

## IV.  DEFENDANTS OWE NO DUTY TO PROTECT PLAINTIFF FROM THIRD PARTIES[6]

Plaintiff's negligence and qualified public nuisance claims also fail because, as a matter of law, Defendants owe no duty to protect local governments from harm caused by criminal third-party conduct.

Duty is an essential element of Plaintiff's negligence claim.  *See Wallace v. Ohio Dep't of Com.*, 773 N.E.2d 1018, 1025 (Ohio 2002) ("the existence of a legal duty" is a "well settled" element of a "negligence suit").  Further, because qualified public nuisance claims are by definition premised on negligent conduct, "negligence must be averred and proven to warrant a recovery."  *Taylor v. Cincinnati*, 55 N.E.2d 724, 731 (Ohio 1944).  Thus, the absence of a legal duty defeats both a negligence claim and a qualified nuisance claim resting on the same conduct.  *See, e.g.*, *Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 595 N.E.2d 855, 856 (Ohio 1992) ("there was no negligence, and therefore no nuisance, because no duty … existed").

Outside of the premises liability context, "[a] duty … requires more than just foreseeability."  *Est. of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1019 (Ohio Ct. App. 2019) ("If foreseeability alone created a duty, then such liability could, potentially, arise without limit.").  Foreseeability merely "defin[es] the scope and extent of [a] duty."  *Id.* at 1019–20 (internal quotation marks omitted).  Where, as here, a plaintiff seeks to impose "a common law duty predicated on nonfeasance, or failure to act," there must be a "special relationship" between the parties.  *Id.* at 1027.  Importantly, "there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship

---

[6]    The Ninth Circuit is currently considering what role foreseeability plays in establishing a tort duty.  Dkt. 298 at 5.  The Court can dismiss Plaintiff's Complaint without waiting for the Ninth Circuit to reach a decision because "Ohio courts have expressly found that a thief's reckless operation of a stolen vehicle is not reasonably foreseeable as a matter of law."  *Fox*, 2024 WL 1328730, at *14; *see also supra* Section III.A.

between the actor and the third party, which gives rise to a duty to control." *Inskeep v. Columbus Zoological Park Assn.*, 207 N.E.3d 876, 881 (Ohio Ct. App. 2023); *see also Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.*, 543 N.E.2d 769, 772–73 (Ohio 1989) (similar).[7]

Plaintiff's public nuisance and negligence claims are plainly based on a theory of "nonfeasance" or "failure to act": specifically that "Hyundai and Kia deviated from the industry standard by electing *not* to include immobilizers or other reasonable anti-theft technology in the Susceptible Vehicles," FAC § IV.B (emphasis added), and "Defendants' *choice not to use* this industry-standard anti-theft technology or other reasonable anti-theft measures predictably led to rampant car thefts and resulted in a threat to public safety and an ongoing public nuisance," *id.* ¶ 52 (emphasis added).[8] Accordingly, Plaintiff must identify a special relationship with Defendants in order to impose a duty here. *Est. of Ciotto*, 145 N.E.3d at 1027; *Inskeep*, 207 N.E.3d at 881; *Fed. Steel & Wire Corp.*, 543 N.E.2d at 772–73; *Ests. of Morgan v. Fairfield Fam. Counseling Ctr.*, 673 N.E.2d 1311, 1319 (Ohio 1997); *Feichtner v. Ohio Dep't of*

---

[7]   In the *Lawton* case, *supra* n.3, the court also found that, as a matter of Missouri law, HMA "did not have a duty to protect Plaintiff from … car thieves" because no special relationship existed between the parties.  Case No. 24-cv-00097 (W.D. Mo. May 20, 2024), Dkt. 58, at 8–9.

[8]   Plaintiff attempts to fabricate a duty by alleging that Defendants "failed to prevent and/or created, incubated, and maintained the conditions necessary for a secondary market of unsafe and stolen vehicles."  *See* FAC ¶¶ 115, 138, 159; *see also id.* ¶ 159 n.91 (citing *In re Nat'l Prescription Opiate Litig.*, 2018 WL 6628898 (N.D. Ohio Dec. 19, 2018), to claim that "opioid manufacturers owed local governments a duty not to create foreseeable secondary markets"); *id.* ¶¶ 115 n.89, 138 n.90 (citing *City of Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002) to claim that "plaintiff had 'adequately pled its public-nuisance claim,' by alleging the defendants facilitate the flow of firearms into an illegal, secondary market").  Plaintiff's conclusory allegations are meritless and contradicted by other allegations in the FAC. *See, e.g.*, *id.* ¶ 76 (stating that any "[s]tolen cars … in this case … [were] stolen for joyriding or use in the commission of other crimes, rather than for parts or resale"); *Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do.") (internal quotation marks omitted).

Case No. 8:22-ML-03052-JVS-(KESx)

NOTICE OF AND MOTION TO DISMISS FAC

*Transp.*, 683 N.E.2d 112, 119–20 (Ohio Ct. App. 1995).  But, the City only alleges that its injuries were foreseeable.  FAC ¶¶ 121, 145, 164–65, 168, 170.  It does not and cannot allege that Defendants had any special relationship with Plaintiff or the third-party car thieves that created a duty to protect against the alleged injuries.  Plaintiff's negligence and qualified public nuisance claims should therefore be dismissed.  *See, e.g.*, *Allen Freight Lines*, 595 N.E.2d at 856, 858; *see also City of Cleveland v. Ameriquest Mortg. Sec., Inc.*, 621 F. Supp. 2d 513, 521, 536 (N.D. Ohio 2009), *aff'd sub nom. City of Cleveland v. Ameriquest Mort. Sec., Inc.*, 615 F.3d 496 (6th Cir. 2010); *Davis v. Widman*, 922 N.E.2d 272, 282–83 (Ohio Ct. App. 2009).

## V.    PLAINTIFF'S ABSOLUTE PUBLIC NUISANCE CLAIM SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO PLAUSIBLY ALLEGE THAT DEFENDANTS INTENTIONALLY CREATED A NUISANCE

Plaintiff's failure to plausibly allege that Defendants intended to or were substantially certain they would create a public nuisance requires dismissal of its absolute public nuisance claim.  "An absolute nuisance, or nuisance per se, is based on intentional conduct or an abnormally dangerous condition that cannot be maintained without injury to property. . . ."  *Nottke v. Norfolk S. Ry. Co.*, 264 F. Supp. 3d 859, 862 (N.D. Ohio 2017).  Plaintiff does not purport to allege an abnormally dangerous condition and therefore its absolute public nuisance claim must rise or fall on whether it has adequately alleged intentional conduct.  It has not.

Plaintiff asserts that "[t]he public nuisance is an absolute public nuisance because Defendants' nuisance-creating conduct was intentional."  FAC ¶ 117.  But "[i]ntentional, in this context, means … that the creator of [a nuisance] intended to bring about the conditions which are in fact found to be a nuisance."  *Nottke*, 264 F. Supp. 3d at 863 (quoting *Angerman v. Burick*, 2003 WL 1524505 (Ohio Ct. App. Mar. 26, 2003)).  The FAC alleges no facts plausibly supporting an inference that Defendants intended to bring about the conditions Plaintiff describes as a public nuisance here.

In particular, the FAC describes the alleged public nuisance as "rampant car thefts," FAC ¶ 52, and a "substantial[] interfere[nce] with the public's right to safe and reasonable access to public thoroughfares," *id.* ¶ 119.  None of the FAC's allegations plausibly suggest that Defendants intended those outcomes or knew those outcomes were substantially certain to occur as a result of Defendants' alleged conduct.[9]  Plaintiff alleges in conclusory terms that Defendants' conduct was "substantially certain to result in an increase in vehicle theft that would interfere with public safety," *id.* ¶ 124, but offers no factual support for that remarkable claim.  The facts Plaintiff does allege tell a different story:  that Defendants marketed vehicles without engine immobilizers beginning in 2011, *id.* ¶ 70, with no alleged public-safety harms in Lorain for 12 years, *see id.* ¶¶ 102–03.  Even then, the alleged "unprecedented" increase in car thefts occurred only after an equally-unprecedented social media phenomenon.  *Supra* Background § C.  Plaintiff alleges no facts suggesting that this social-media phenomenon—and the "rampant car thefts" and "interfere[nce] with the public's right to safe and reasonable access to public thoroughfares" that allegedly resulted—was intended by Defendants or that Defendants knew it was substantially certain to occur.  That failure requires dismissal of Plaintiff's absolute public nuisance claim.

//

//

---

[9]   Restatement (Second) of Torts § 825 states that a defendant intends to cause a public nuisance when it "acts for the purpose of causing" an interference with a public right or "knows that [a public nuisance] is resulting or is substantially certain to result from [its] conduct."  Defendants are aware of no precedential Ohio case recognizing absolute public nuisance liability under the "substantially certain" prong of this test.  *See, e.g.*, *Nottke*, 264 F. Supp. 3d at 863 (intent under Ohio law requires that defendant "intended to bring about the conditions which are in fact found to be a nuisance").  Regardless, because the FAC fails to plausibly allege that Defendants were "substantially certain" the alleged nuisance condition would result from their distribution of the vehicles at issue, dismissal of Plaintiff's absolute nuisance claim is required under any standard.

# <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss Plaintiff's FAC without leave to amend.

DATED:  May 22, 2024  QUINN EMANUEL URQUHART & SULLIVAN, LLP


By <u>*/s/ Steven G. Madison*</u>
  Steven G. Madison (SBN: 101006)
  stevemadison@quinnemanuel.com
  Justin C. Griffin (SBN: 234675)
  justingriffin@quinnemanuel.com
  865 South Figueroa Street, 10th Floor
  Los Angeles, California 90017-2543
  Telephone:   (213) 443-3000
  Facsimile:    (213) 443-3100

  *Attorneys for Defendants*

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants Hyundai Motor America and Kia America, Inc., certifies that this brief contains 5788 words, which complies with the word limit of L.R. 11-6.1.


DATED:  May 22, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  /s/ Steven G. Madison
   Steven G. Madison (SBN: 101006)
   stevemadison@quinnemanuel.com
   Justin C. Griffin (SBN: 234675)
   justingriffin@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
   Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
   Facsimile:   (213) 443-3100

   *Attorneys for Defendants*