1  QUINN EMANUEL URQUHART & SULLIVAN LLP
2  Steven G. Madison (SBN: 101006)
   stevemadison@quinnemanuel.com
3  Justin C. Griffin (SBN: 234675)
   justingriffin@quinnemanuel.com
4  865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100
7
8  *Attorneys for Defendants*
9
10                **UNITED STATES DISTRICT COURT**
11                **CENTRAL DISTRICT OF CALIFORNIA**
12

| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ML-3052-JVS-(KESx) |
|---|---|
| | The Honorable James V. Selna |
| | **DEFENDANTS' NOTICE OF AND MOTION TO DISMISS SECOND AMENDED COMPLAINT OF PLAINTIFF CITY OF CHICAGO; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates to: | |
| *City of Chicago v. Kia America, Inc. and Hyundai Motor America*, Case No. 23-cv-02045 | Hearing Date:  August 5, 2024 Hearing Time: 1:30 pm |

13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on August 5, 2024, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable James V. Selna (Courtroom 10C) of the above-entitled Court, located at 411 West 4th Street, Santa Ana, CA 92710, Defendants Kia America, Inc. ("KA"), and Hyundai Motor America ("HMA") (collectively, "Defendants")[1] will and hereby do move the above-entitled Court for an order dismissing Plaintiff City of Chicago's ("Plaintiff" or "City") Second Amended Complaint ("SAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the SAC fails to state any claim upon which relief may be granted.

Defendants' Motion is based on this Notice, the Memorandum of Points and Authorities filed herewith, Defendants' Request for Judicial Notice, any additional briefing on the Motion (including Defendants' reply brief), the files and records of this case and the related cases centralized in this Multidistrict Litigation, and such argument as is presented to the Court at the hearing on this Motion.

This Motion is made following the conferences of counsel pursuant to L.R. 7-3, which took place on April 17, 2024.

DATED:  May 24, 2024

QUINN EMANUEL URQUHART & SULLIVAN. LLP

By:  */s/ Steven G. Madison*

Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for Defendants*

---

[1] The Second Amended Complaint does not name HMC and KC as defendants.

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................... 1

BACKGROUND .................................................................................... 2

    A.    This Court Determined That A Prescription of Specific Anti-Theft Technology Runs Afoul of FMVSS 114 ........................ 2

    B.    Defendants' Vehicles Comply With Federal Law And NHTSA Has Found No Safety Defect Requiring A Recall ................... 2

    C.    Social Media and Intervening Criminals Caused An Unprecedented Increase In Theft ............................................. 3

LEGAL STANDARD ............................................................................. 4

ARGUMENT .......................................................................................... 4

I.     PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW .............. 4

    A.    Plaintiff's Claims Are Preempted Because They Rely On Defendants Having A Duty To Install Immobilizers Or "Equivalent" Technology ........................................................ 4

    B.    Plaintiff's New Allegations Fail Federal Pleading Standards ............... 6

II.    PLAINTIFF'S PUBLIC NUISANCE AND NEGLIGENCE CLAIMS FAIL FOR ADDITIONAL REASONS ................................................. 7

    A.    There Is No Public Right To Be Free From The Threat That Members Of The Public May Commit Crimes ....................... 7

    B.    Illinois Law Limits Public Nuisance To Conduct Involving Land Use Or A Statutory Violation, And Any Expansion Of Public Nuisance Law Must Be By The Legislature ......................... 9

    C.    Defendants Owed No Duty To Protect Against Third-Party Criminal Conduct .................................................................. 10

III.   PLAINTIFF FAILS TO STATE A CLAIM FOR UNFAIR AND DECEPTIVE TRADE PRACTICES ............................................... 11

    A.    Plaintiff's Claims For Unfair And Deceptive Trade Practices Fail To Satisfy Rule 9(b) ................................................ 11

B. Plaintiff's Claims for Unfair and Deceptive Trade Practices Also Fail Because The Challenged Statements Are Unrelated To Anti-Theft Technology And Puffery. ........................................................... 13

C. Additional Reasons Plaintiff Fails To State A Claim For Unfair Trade Practices ........................................................... 17

1. The City Does Not Plausibly Plead That Defendants' Practices Offended Public Policy ............................... 17

2. The City Does Not Allege Acts That Are Immoral, Unethical, Oppressive, Or Unscrupulous. ................ 19

3. The City Does Not Allege Acts That Caused Substantial Injury to Consumers. ............................................... 19

IV. PLAINTIFF'S CLAIM UNDER MCC § 1-20-020 ALSO FAILS. ............... 20

V. THE ECONOMIC LOSS RULE FORECLOSES PLAINTIFF'S REQUEST FOR TORT DAMAGES .............................................. 21

CONCLUSION ........................................................................... 22

NOTICE OF AND MOTION TO DISMISS SECOND AMENDED COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

### <u>Cases</u>

*Ash v. PSP Distrib., LLC*,
226 N.E.3d 748 (Ill. App. Ct. 2023) ................................................................. 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ......................................................................................... 4, 6

*Barbara's Sales, Inc. v. Intel Corp.*,
879 N.E.2d 910 (Ill. 2007) ................................................................................ 16

*Batson v. Live Nation Entm't, Inc.*,
2013 WL 992641 (N.D. Ill. Mar. 13, 2013) ...................................................... 19

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ......................................................................................... 4, 6

*Browning v. Am. Honda Motor Co.*,
549 F. Supp. 3d 996 (N.D. Cal. 2021) ................................................................. 6

*In re Chicago Flood Litig.*,
680 N.E.2d 265 (Ill. 1997) ................................................................................ 21

*City of Chicago v. Beretta U.S.A. Corp.*,
821 N.E.2d 1099 (Ill. 2004) ........................................... 1, 7, 8, 9, 10, 11, 21

*City of Chicago v. Equte LLC*,
2023 WL 6173593 (N.D. Ill. Sept. 19, 2023) ................................................... 20

*City of Chicago v. Purdue Pharma*,
211 F.Supp. 3d 1058 (N.D. Ill. 2016) .......................................... 17, 18, 19, 20, 21

*City of Gary v. Smith & Wesson*,
801 N.E.2d 1222 (Ind. 2003) .............................................................................. 9

*Coleman v. E. Joliet Fire Prot. Dist.*,
46 N.E. 3d 741 (Ill. 2016) ................................................................................. 18

*Cosmetique, Inc. v. ValueClick, Inc.*,
753 F. Supp. 2d 716 (N.D. Ill. 2010) ................................................................ 12

*Darne v. Ford Motor Co.*,
   2017 WL 3836586 (N.D. Ill. Sept. 1, 2017).......................................................12

*Farrales v. Ford Motor Co.*,
   2022 WL 1239347 (N.D. Cal. Apr. 27, 2022)...................................................6, 7

*Ford v. Psychopathic Recs., Inc.*,
   2013 WL 5254583 (S.D. Ill. Sept. 17, 2013) .....................................................10

*Fuchs v. Menard, Inc.*,
   2017 WL 4339821 (N.D. Ill. Sept. 29, 2017).......................................14, 15, 16

*Gade v. Nat. Solid Wastes Mgmt. Assn.*,
   505 U.S. 88 (1992) ................................................................................................4

*Galvan v. Northwestern Mem'l Hosp.*,
   888 N.E.2d 529 (Ill. 2008)..................................................................................18

*Garland v. Child's Place, Inc.*,
   2024 WL 1376353 (N.D. Ill. Apr. 1, 2024).......................................................17

*Garrett v. Rentgrow, Inc.*,
   2005 WL 1563162 (N.D. Ill. July 1, 2005) .......................................................18

*Geier v. American Honda Motor Co.*,
   529 U.S. 861 ..........................................................................................................5

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ......................................................................4, 12

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ................................................................................4

*Muir v. Playtex Products, LLC*,
   983 F. Supp. 2d 980 (N.D. Ill. 2013).................................................................17

*O'Connor v. Ford Motor Co.*,
   477 F. Supp. 3d 705 (N.D. Ill. 2020).................................................................12

*O'Connor v. Ford Motor Co.*,
   567 F.Supp. 3d 915 (N.D. Ill. 2021)..................................................................17

*Pelayo v. Hyundai Motor Am., Inc.*,
   2021 WL 1808628 (C.D. Cal. May 5, 2021)........................................................6

*People v. Johnson & Johnson*,
  2021 Ill. Cir. LEXIS 387 (Ill. Cir. Ct. Jan. 8, 2021) ........................................ 8

*Phillips v. DePaul U.*,
  19 N.E.3d 1019 (Ill. App. Ct. 2014) ................................................ 14

*Raynaldo v. Am. Honda Motor Co.*,
  2022 WL 4358096 (N.D. Cal. Sept. 20, 2022) ........................................ 6

*Robinson v. Toyota Motor Credit Corp.*,
  775 N.E.2d 951 (Ill. 2002) ................................................ 19

*Salameh v. Tarsadia Hotel*,
  726 F.3d 1124 (9th Cir. 2013) ................................................ 12, 13

*Siegel v. Shell Oil Co.*,
  612 F.3d 932 (7th Cir. 2010) ................................................ 19

*Truck Ins. Exch. v. D'Orazio*,
  2021 WL 1206557 (Ill. App. Ct. Mar. 30, 2021) ........................................ 17

*Young v. Bryco Arms*,
  821 N.E.2d 1078 (Ill. 2004) ................................................ 8

## Statutes

15 U.S.C. § 45 ................................................ 20

815 ILCS 505/2 ................................................ 20

815 ILCS 510/2 ................................................ 20

Fed. R. Civ. P. 9(b) ................................................ 4, 11, 12

Fed. R. Civ. P. 12(b)(6) ................................................ 2

L.R. 7-3 ................................................ 2

## Other Authorities

33 Fed. Reg. 6471 ................................................ 6

33 Fed. Reg. 6472 ................................................ 6

49 C.F.R. § 571.114 ................................................ 2, 5

56 Fed. Reg. 12464 ................................................................................................... 2

71 Fed. Reg. 17752 ................................................................................................... 6

71 Fed. Reg. 17753 ................................................................................................... 6

## PRELIMINARY STATEMENT

This Court dismissed Plaintiff's FAC on preemption grounds, spurring Plaintiff to file this SAC to resurrect its case.  To avoid yet another dismissal on the same grounds, Plaintiff formulaically replaced almost every reference to "immobilizers" with "immobilizers or equivalent anti-theft technology," or a variation thereof.  Even with these amendments, Plaintiff's claims fail.

*First*, all of Plaintiff's claims are still preempted by federal law.  Plaintiff's allegations still seek to require immobilizers, and Plaintiff's vague alternative allegations that Defendants' vehicles lack anti-theft technology "equivalent" to immobilizers fail to satisfy federal pleading standards.  Even if the Court were to credit these new allegations, Plaintiff's claims are still preempted because they seek to establish a specific standard—an immobilizer or its equivalent—that hinders technological innovation by requiring some specific anti-theft technology.

*Second*, the Illinois Supreme Court's decision in *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099 (Ill. 2004) disposes of Plaintiff's claims for public nuisance and negligence on three independent grounds under Illinois law:  (a) there is no right to be free from the threat of illegal conduct by others and therefore no cognizable nuisance claim; (b) public nuisance liability in Illinois has only attached where the nuisance arose from a defendant's use of real property, or violation of a statute or ordinance declaring specific conduct a nuisance; and (c) Plaintiff cannot plead the essential element of duty because Defendants have no duty to protect against third-party criminal conduct in Illinois as a matter of law.

*Third*, Plaintiff's claims under Municipal Code of Chicago ("MCC") sections 4-276-470 and 2-25-090 for unfair or deceptive trade practices fail because Plaintiff fails to state a claim under either ordinance, and Defendants' statements are unrelated to immobilizers or anti-theft technology, and in any event, are non-actionable puffery.

*Fourth*, Plaintiff's claim under MCC section 1-20-020 fails because it depends on an antecedent violation of law which Plaintiff fails to adequately plead, and

because Plaintiff fails to plausibly plead causation between the alleged unfair or deceptive vehicle advertising, and the costs Plaintiff purportedly incurred.

*Fifth*, the economic loss doctrine precludes Plaintiff from seeking damages for negligence and public nuisance.

Plaintiff's SAC should be dismissed with prejudice.

## BACKGROUND

### A.   This Court Determined That A Prescription of Specific Anti-Theft Technology Runs Afoul of FMVSS 114

Neither Federal Motor Vehicle Safety Standard ("FMVSS") 114 nor any federal law or regulation has ever mandated installation of engine immobilizers, or technology "equivalent" to an immobilizer.  *See* 49 C.F.R. § 571.114.  Rather, the U.S. Department of Transportation's National Highway Traffic Safety Administration's ("NHTSA") position has been that a flexible performance standard best protects against vehicle theft.  *See, e.g.*, 56 Fed. Reg. 12464 (Mar. 26, 1991) (amending FMVSS 114 in 1991 and 1992 to "provide manufacturers with greater flexibility in designing" systems to meet the performance standard).

In keeping with NHTSA's objective of flexibility, this Court dismissed Plaintiff's FAC on preemption grounds and rejected Plaintiff's attempt to impose upon Defendants a rigid duty to use specific anti-theft technology, namely engine immobilizers.  Dkt. 334 at 6.

### B.   Defendants' Vehicles Comply With Federal Law And NHTSA Has Found No Safety Defect Requiring A Recall

On April 20, 2023, 18 state Attorneys General—including the Illinois Attorney General—wrote to NHTSA (the "State AGs' Recall Request") asking the agency to:

> use its authority to institute a recall of unsafe Hyundai and Kia vehicles manufactured between 2011 and 2022 whose easily-bypassed ignition switches and lack of engine immobilizers make them particularly vulnerable to theft.

RJN Ex. 1.  Plaintiff's failure to mention the State AGs' Recall Request to NHTSA, mentioning only the State AGs' recall request sent directly to Defendants, *see* SAC

¶¶ 91, is understandable—NHTSA unequivocally rejected the request, and the contention that a lack of engine immobilizers in Defendants' vehicles violates FMVSS:

> At this time, NHTSA has not determined that this issue constitutes either a safety defect or noncompliance requiring a recall…FMVSS No. 114, does not require an engine immobilizer.

RJN Ex. 2 at 2. NHTSA added, "[h]ere, the safety risk arises from unsafe use of a motor vehicle by an unauthorized person after taking significant destructive actions to parts of the vehicle." *Id.*

### C. Social Media and Intervening Criminals Caused An Unprecedented Increase In Theft

The SAC includes no allegations that, *before* mid-2022, either the general public or Defendants were aware of the multi-step process required to steal Defendants' vehicles, or that Defendants' vehicles were stolen at higher rates relative to other manufacturers or distributors. *See* SAC ¶¶ 64–68. Rather, the source data for Plaintiff's Figure 6 indicates thefts of Defendants' vehicles constituted 7% of vehicle thefts in each of 2019, 2020, and 2021, RJN Ex. 3—a share of thefts exactly proportional to ownership of Defendants' vehicles, *see id.* ¶ 67 (Defendants' vehicles "make up approximately 7% of the vehicles in Chicago").

Plaintiff alleges the theft epidemic underlying its claims began in Summer 2022, when the "Kia Boyz" started posting videos on social media providing step-by-step instructions for stealing Defendants' vehicles. *Id.* ¶ 64. Even according to Plaintiff, the unprecedented increase in thefts arose from this "emerging TikTok challenge," *id.* ¶ 65, which began over a decade after some vehicles were manufactured and sold, *id.* ¶ 64 ("thefts exploded…when social media users began posting 'how-to' videos…prompt[ing] a wave of teens and young adults [] to start filming themselves and others engaging in reckless driving and other criminal behavior").

## **LEGAL STANDARD**

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations omitted). Rather, the plaintiff must "allege more by way of factual content to nudg[e] his claim" of unlawful action "across the line from conceivable to plausible." *Id.* at 683 (citations omitted).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for claims "grounded in fraud" and "sound[ing] in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Such claims "must state with particularity the circumstances constituting fraud[.]" Fed. R. Civ. P. 9(b).

In ruling on a motion to dismiss, a court may consider: (1) all material within the pleadings; (2) documents incorporated into the complaint by reference; and (3) matters of which a court may take judicial notice. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## **ARGUMENT**

### I.  **PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW**

#### A.  **Plaintiff's Claims Are Preempted Because They Rely On Defendants Having A Duty To Install Immobilizers Or "Equivalent" Technology**

Federal law preempts state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Gade v. Nat. Solid Wastes Mgmt. Assn.*, 505 U.S. 88, 98 (1992). This Court dismissed Plaintiff's FAC, which "definitively rest[ed] its claims [on] the allegation that Defendants failed to use engine immobilizers," because such "specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement." Dkt. 334 at 6.

In an effort to circumvent dismissal of the SAC on the same grounds, Plaintiff has replaced almost every reference to "immobilizers" with references to immobilizers, "equivalent anti-theft technology," or "industry-standard antitheft technology", or some variation thereof. *See, e.g.*, SAC ¶¶ 4, 99, 124, 155. But Plaintiff's claims are not saved by the SAC's vague, formulaic mentions of "industry standard" or "equivalent" anti-theft technology.

First, while Plaintiff alleges Defendants failed to equip vehicles with, and disclose the purported lack of, "industry-standard anti-theft" technology, *see, e.g.*, SAC ¶ 76 ("Kia and Hyundai marketed the Defective Vehicles…knowing [they] lacked industry-standard anti-theft equipment"); *see also id.* ¶¶ 106, 116, 176 (similar), in the context of Plaintiff's SAC, these allegations refer specifically to immobilizers only. *See id.* ¶ 125 ("in the United States…nearly all vehicles produced by other manufacturers included ***engine immobilizers as standard equipment***") (emphasis added); *see also* Dkt. 334 at 5 (acknowledging this language "define[s] 'standard equipment' as 'engine immobilizers'").

Second, references to immobilizers or "other equivalent anti-theft technology" still seek to impose upon Defendants an impermissibly narrow requirement entirely based on immobilizers. Federal law preempts state law that "present[s] an obstacle to the variety and mix of devices that [a] federal regulation sought." *Geier v. American Honda Motor Co.*, 529 U.S. 861, 881 (2000). Neither FMVSS 114 (with which Plaintiff does not dispute Defendants complied) nor any federal law or regulation has ever mandated installation of engine immobilizers or technology "equivalent" to an immobilizer, or established an anti-theft standard *based* on immobilizers. Rather, FMVSS 114 mandates that a vehicle's starting system prevent (1) "normal activation" of the engine and (2) "steering, or forward self-mobility" when the key is removed. *See* 49 C.F.R. § 571.114 (2021). *Any* technology meeting these performance requirements satisfies FMVSS 114. *See* RJN Ex. 4. Indeed, NHTSA declined to mandate any specific technologies because "it would be unwise

to establish a standard in terms so restrictive as to discourage technological innovation in the field of theft inhibition."  33 Fed. Reg. 6471, 6472 (Apr. 27, 1968).  As such, "the standard has been framed to permit as many specific devices as possible to meet its requirements."  *Id.*; *see also* 71 Fed. Reg. 17752, 17753 (Apr. 7, 2006).

Plaintiff has nevertheless created its own specific standard—an immobilizer or its equivalent—that hinders technological innovation by requiring some specific anti-theft technology based on immobilizers.  These allegations are flawed in the same way the FAC was because such "specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement," Dkt. 334 at 6, and the SAC must likewise be dismissed as preempted.

### B.    Plaintiff's New Allegations Fail Federal Pleading Standards

Nor do Plaintiff's references to unspecified "equivalent anti-theft technology" save its claims from preemption, because vague references to unidentified measures fail to satisfy federal pleading standards.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

For product liability claims, "a complaint gives fair notice to the defendant of a defect if it (1) identifies the particular part or system affected by the defect, and (2) describes the problems allegedly caused by the defect."  *Raynaldo v. Am. Honda Motor Co.*, 2022 WL 4358096, at *4 (N.D. Cal. Sept. 20, 2022) (dismissing claims for failure to identify specific defect with vehicle's electrical system).  Courts consistently apply this standard to dismiss automobile defect claims which fail to identify the allegedly defective part or system.  *See, e.g.*, *id.*; *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1006 (N.D. Cal. 2021) (identification of "transmission defect" is inadequate notice); *Pelayo v. Hyundai Motor Am., Inc.*, 2021 WL 1808628, at *5 (C.D. Cal. May 5, 2021) ("Plaintiffs' theory that Defendants…failed to prevent *some* defect in the Gamma Engines is…insufficient notice of what defect is at issue…[T]he FAC describes only the *effects* of the alleged defect, which is insufficient."); *Farrales v. Ford Motor Co.*, 2022 WL 1239347, at *6

(N.D. Cal. Apr. 27, 2022) (suggestion that defect may involve "engine cooling system" is inadequate notice).

Plaintiff's allegations do not give fair notice to Defendants. Besides the vehicle's lack of immobilizers, Plaintiff's SAC does not identify *any* particular alleged defective vehicle part or system, or explain how the defect caused a foreseeable wave of theft in Chicago. Accordingly, Plaintiff's claim should be dismissed for failing to meet pleading standards. Moreover, because Plaintiff asks this Court to use state tort law to impose a universal mandate to use specific anti-theft technology, and has identified no other technology it believes would have been sufficient, all of Plaintiff's claims should be dismissed as preempted, with prejudice.

## II. PLAINTIFF'S PUBLIC NUISANCE AND NEGLIGENCE CLAIMS FAIL FOR ADDITIONAL REASONS

### A. There Is No Public Right To Be Free From The Threat That Members Of The Public May Commit Crimes

Plaintiff fails to allege a cognizable "public right" because the Illinois Supreme Court has held there is no public right to be free from the threat of criminal acts by third parties.

In *Beretta*, the City brought a public nuisance claim against gun manufacturers, alleging they oversaturated the gun market knowing that guns legally sold in other jurisdictions would be resold unlawfully in Chicago and used to commit violent crimes. 821 N.E.2d at 1107–09. The City claimed the defendants' role in designing and distributing those firearms constituted an unreasonable interference with the "right of the general public to be free from the threat of gun violence and from jeopardy to health and safety." *Id.* at 1109. But the Illinois Supreme Court refused to "break new ground" by recognizing an unprecedented right to be free from the threat of illegal conduct by others. *Id.* at 1116. The court reasoned the City's alleged "public right" was "merely an assertion, on behalf of the entire community, of the individual right not to be assaulted," and expressed "reluctan[ce] to state that there is a public right to be free from the threat that some individuals may use an otherwise

legal product (be it a gun, liquor, *a car*, a cell phone, or some other instrumentality) in a manner that may create a risk of harm to another." *Id*. (emphasis added).  The Illinois Supreme Court explained:

> For example, the purchase and consumption of alcohol by adults is legal, while driving under the influence is a crime.  If there is public right to be free from the threat that others may use a lawful product to break the law, that right would include the right to drive upon the highways, free from the risk of injury posed by drunk drivers.  This public right to safe passage on the highways would provide the basis for public nuisance claims against brewers and distillers, distributing companies, and proprietors of bars, taverns, liquor stores, and restaurants with liquor licenses, all of whom could be said to contribute to an interference with the public right.
>
> Similarly, cell phones, DVD players, and other lawful products may be misused by drivers, creating a risk of harm to others.  In an increasing number of jurisdictions, state legislatures have acted to ban the use of these otherwise legal products while driving.  A public right to be free from the threat that other drivers may defy these laws would permit nuisance liability to be imposed on an endless list of manufacturers, distributors, and retailers of manufactured products that are intended to be, or are likely to be, used by drivers, distracting them and causing injury to others.

*Id.*; *see also Young v. Bryco Arms*, 821 N.E.2d 1078, 1084 (Ill. 2004) ("doubt[ing] the wisdom of recognizing such a broad and ill-defined right" as the right to "use the public space without undue risk of injury"); *People v. Johnson & Johnson*, 2021 Ill. Cir. LEXIS 387, at \*22 (Ill. Cir. Ct. Jan. 8, 2021) (emphasizing *Beretta's* rejection of a common right "to be free *from conduct* that creates a disturbance," including misuse of products by third parties).

As in *Beretta*, Plaintiff's purported "public right" is an assertion, on behalf of the entire community, of individual rights to be free from third-party criminal acts. *See, e.g.*, SAC ¶¶ 142, 145.  The Illinois Supreme Court has expressly rejected such an "unprecedented expansion of the concept of public rights."  *Beretta*, 821 N.E.2d at 1116.  This Court should do the same.

**B.**     **Illinois Law Limits Public Nuisance To Conduct Involving Land Use Or A Statutory Violation, And Any Expansion Of Public Nuisance Law Must Be By The Legislature**

Plaintiff also fails to identify Illinois authority permitting the application of public nuisance law under these circumstances.  Illinois courts have limited public nuisance to cases where either: (1) "the defendant's conduct in creating the public nuisance involved the defendant's use of land," or (2) "the conduct at issue was in violation of a statute or ordinance," *id.* at 1117.

Plaintiff thus asks this Court to expand Illinois public nuisance law "to encompass a third circumstance"—conditions created by lawful conduct not involving the use of land.  *Id.*  But the Illinois Supreme Court considered and rejected that expansion in *Beretta*, because doing so would be "acting without an established and recognized standard."  *Id.* at 1121.  Further, the court found that "an analysis of the harm caused by firearms versus their utility is better suited to legislative fact-finding and policymaking," and that "despite the existence of numerous statutes declaring various practices and conditions to constitute public nuisances," the legislature provided "no indication [] that it would be inclined to impose public nuisance liability…especially when the product at issue is already so heavily regulated by both the state and federal governments." *Id.*  The court concluded "there are strong public policy reasons to defer to the legislature in the matter of regulating the manufacture, distribution, and sale of firearms."[2]  *Id.*; *see also Young*, 821 N.E.2d at 1091 (declining to impose public nuisance for manufacture and sale of a legal product "[u]ltimately" on the basis of public policy).

---

[2]   The Illinois Supreme Court also rejected the applicability of *City of Gary v. Smith & Wesson*, 801 N.E.2d 1222 (Ind. 2003), an Indiana case that found "a nuisance claim may be predicated on a lawful activity conducted in such a manner that it imposes costs on others."  *Beretta*, 821 N.E.2d at 1119 (citing *City of Gary*, 801 N.E.2d at 1234).

Defendants have been unable to locate any case applying Illinois law in which a court allowed a public nuisance claim to proceed, where the defendant's conduct at issue (1) did not "involve[] the defendant's use of land," or (2) was not "in violation of a statute or ordinance" declaring such conduct a nuisance, *Beretta*, 821 N.E.2d at 1117. Plaintiff, without legislative authorization, seeks an expansion of Illinois common law public nuisance "to encompass a third circumstance" involving the illegal use by a third party of a legal product. Accordingly, Plaintiff's nuisance claim should be dismissed.

## C.   Defendants Owed No Duty To Protect Against Third-Party Criminal Conduct

Plaintiff's public nuisance and negligence claims also fail because the Illinois Supreme Court has held there is no "duty upon commercial enterprises to guard against the criminal misuse of their products by others[.]" *Id.* at 1126.

Public nuisance claims sounding in negligent (rather than unlawful) conduct require plaintiffs to satisfy the same elements as negligence, including by alleging defendants owed a duty. *Id.* at 1125. To determine whether a duty is owed, Illinois courts weigh four public policy factors: (1) reasonable foreseeability of the injury; (2) likelihood of the injury; (3) magnitude of the burden of guarding against the injury; and (4) consequences of placing that burden on the defendant. *Id.*

The *Beretta* court held these factors weighed against finding gun manufacturers owed any duty to the public.[3] *Id.* at 1126. The court reasoned that, while "[i]t is reasonably foreseeable…that criminals will obtain guns" and "inevitable[] that injuries and death will result…[i]t is less foreseeable…that the criminal conduct of

---

[3]   Analysis of these factors applies equally to the question of duty under public nuisance and negligence theories. *See Ford v. Psychopathic Recs., Inc.*, 2013 WL 5254583, at *8 n.6 (S.D. Ill. Sept. 17, 2013) ("Though the duty calculus in *Beretta* is part of a public nuisance analysis, the Supreme Court of Illinois was clear that it was congruent with the reasoning in [cases] 'in which the theories of liability included…negligence.'") (cleaned up).

individuals who illegally take firearms into a particular community will result in the creation of a public nuisance[.]" *Id.* The court also reasoned that "the magnitude of the burden [on defendants]…by altering their business practices is immense," and that "[t]he negative consequence of judicially imposing a duty upon commercial enterprises to guard against the criminal misuse of their products by others will be an unprecedented expansion of the law of public nuisance." *Id.*

So too here. These public policy factors foreclose any duty to design, manufacture, or distribute products in such a manner as to minimize third-party crimes resulting in local government expenditures (the injury pleaded here). Plaintiff fails to allege a reasonably foreseeable injury meriting imposition of a novel tort duty. As in *Beretta*, even assuming it was foreseeable that *some* criminals would steal *some* cars, it was not foreseeable that conduct would result in an unprecedented wave of thefts or subsequent criminal acts that would amount to a public nuisance. Additionally, Plaintiff's claims would impose an immense burden by requiring Defendants to alter business practices—including anticipating scenarios where criminals broadcast step-by-step methods to exploit potential vulnerabilities through social media campaigns (even a decade after vehicle sales). That duty would not be limited to Defendants, but would extend to all automobile companies and manufacturers more generally. *See, e.g.*, Compl., *Cho v. Gen. Motors Co.*, No. 8:24-cv-00819 (C.D. Cal. Apr. 12, 2024) (citing "1,185% increase" in stolen Camaros from 2022 to 2023). Public policy would not be served by the "unprecedented expansion of the law of public nuisance" that would result, impacting "countless other types of commercial enterprises" with broad-ranging consequences. *Beretta*, 821 N.E.2d at 1126.

## III.    PLAINTIFF FAILS TO STATE A CLAIM FOR UNFAIR AND DECEPTIVE TRADE PRACTICES

### A.    Plaintiff's Claims For Unfair And Deceptive Trade Practices Fail To Satisfy Rule 9(b)

Plaintiff fails to meet Rule 9(b)'s pleading standard on its claims for unfair or deceptive trade practices under MCC §§ 2-25-090 and 4-276-470, which are based on

allegations that Defendants intentionally published misleading advertising "in order to sell more vehicles," SAC ¶ 51, and are thus grounded in or sound in fraud. *See Kearns*, 567 F.3d at 1125.

Plaintiff provides just a handful of "examples" of advertisements containing language it claims "show[s] a pattern and practice of Kia and Hyundai touting the Defective Vehicles as having some of the most advanced technology and safety features of vehicles on the market," *id.* ¶ 42, and claims these examples are representative of the "same themes" contained in most of the 97 total advertisements Plaintiff "reviewed," *id.* ¶¶ 37, 41, Ex. A. But Rule 9(b) requires not that "plaintiffs…give some examples of fraud to give the defendant a flavor of what the case is about…[but rather that] a plaintiff…specifically identify the alleged fraudulent or deceptive statements that are the basis of the instant action." *Cosmetique, Inc. v. ValueClick, Inc.*, 753 F. Supp. 2d 716, 721 (N.D. Ill. 2010). Plaintiff is required to "provide Defendants with notice of each and every statement…[it] believes was fraudulent and deceptive so that Defendants [can] effectively respond to such accusations…prompt[ly]." *Id.*; *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (plaintiff must "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."). Similarly, as it pertains to claims of omission, Plaintiff is required to identify the specific communication from which the material fact has allegedly been omitted. *See, e.g.*, *Darne v. Ford Motor Co.*, 2017 WL 3836586, at *10 (N.D. Ill. Sept. 1, 2017) ("Under the ICFA, an 'omission' is an omission from a communication, rather than a general failure to disclose."); *O'Connor v. Ford Motor Co.*, 477 F. Supp. 3d 705, 720 (N.D. Ill. 2020) (dismissing ICFA claim based on a material omission theory because the plaintiff failed to "identify any particular direct statements from Defendant that contain[ed] material omissions").

Plaintiff does neither.  As to the handful of marketing materials from which Plaintiff excerpts, *see* SAC ¶¶ 36–40, Plaintiff quotes the language it deems relevant, but never explains *why* each statement or omission is false or misleading, *see Salameh*, 726 F.3d at 1133.  And despite allegations that 77 of the 97 advertisements Plaintiff "reviewed" contain no reference to immobilizers or equivalent anti-theft technology, and that eleven others referenced immobilizers in small print, *id.* ¶¶ 43–44, the SAC is unclear about which of the 97 advertisements Plaintiff concluded are misleading or why, or what specific language within each advertisement is misleading.

## B. Plaintiff's Claims for Unfair and Deceptive Trade Practices Also Fail Because The Challenged Statements Are Unrelated To Anti-Theft Technology And Puffery.

Further, the handful of specific statements Plaintiff does identify in support of its claims (from six marketing materials), are insufficiently pleaded, irrelevant to Plaintiff's allegations that the vehicles at issue lack immobilizers or "equivalent" anti-theft technology, and, at most, puffery.

As discussed further below, neither the alleged misrepresentations nor alleged omissions are actionable because the statements at issue relate neither to immobilizers nor anti-theft technology, and Plaintiff has not plausibly alleged that they are misleading.  Rather, Plaintiff points to statements about the vehicles' *safety*—which, in the context of the advertisements at issue, refer to the vehicles' *safety while driving*—and does not plausibly allege facts indicating that reasonable consumers would believe these statements to be representations about anti-theft features.  *See Ash v. PSP Distrib., LLC*, 226 N.E.3d 748, 756 (Ill. App. Ct. 2023) (dismissing ICFA claim because no reasonable consumer would believe that defendant's product description of 'ground flaxseed' implied that no other ingredients were present, and that alternative interpretations were "so obvious that they render plaintiff's inferences unreasonable"); *Ash*, 226 N.E.3d at 756 ("an omission is not actionable as fraud if it gives rise to 'an incomplete' as opposed to an affirmatively 'false impression'");

*Phillips v. DePaul U.*, 19 N.E.3d 1019, 1029–30 (Ill. App. Ct. 2014) (similar).  Nor does Plaintiff offer *any* allegations that the vehicles do not contain the driving safety features described in the advertisements.  Accordingly, Plaintiff has not adequately pleaded that the challenged statements are false or misleading, or why.

In one of its four examples, Plaintiff cites to a brochure advertising the 2012 Kia Forte's "comprehensive list of advanced safety systems," which are "standard equipment on every Forte."  SAC ¶ 37; RJN Ex. 5 at 3.  The brochure provides no indication that such "safety systems"—which the brochure explains are "designed to help minimize injury when a traffic accident is unavoidable," *id.* at 18—relate to theft or immobilizers.[4]  Moreover, a list of such safety systems can be found in a section of the brochure titled "Restraint & Safety Systems," which makes no reference to anti-theft technology, *id.* at 22; *see also Fuchs v. Menard, Inc.*, 2017 WL 4339821, at *4 (N.D. Ill. Sept. 29, 2017). ("deceptiveness is evaluated…in light of 'all the information available to the consumer'").  Plaintiff offers no plausible factual allegations that a reasonable consumer would have been misled into believing that "safety systems" "designed to help minimize injury when a traffic accident is unavoidable" referred to immobilizers or other anti-theft features, nor does Plaintiff allege that the list of "Restraint & Safety Systems" provided in the brochure was inaccurate.  And even if Defendants could have been more specific about the types of safety systems to which they were referring (an implausible assertion, given the "Restraint & Safety Systems" list in the brochure), in the absence of any statement that is misleading in light of the information omitted, there is and can be no cognizable claim.  *See Phillips*, N.E.3d at 1029–30.

---

[4]   In fact, NHTSA recognizes two categories of "safety systems," neither of which relates to anti-theft, and both of which "help[] drivers avoid or mitigate crashes."  *See* RJN Ex. 6 at 24 (active "safety systems" are those which "proactively anticipate and assist drivers who may not respond to immediate and/or imminent dangers around them," and passive "safety systems" are "technologies [that] alert drivers of potential risk situations to give the driver time to respond").

In its second example, Plaintiff quotes from a 2015 Kia Sorento brochure that states the "Sorento is equipped with technologically advanced features dedicated to enhance your driving experience," and that Kia is committed to producing "world-class vehicles" including "innovative features and advanced safety systems." SAC ¶ 38; RJN Ex. 7 at 5, 10. Again, reference to "advanced safety systems" does not relate to anti-theft technology, as made clear by the brochure's "highly detailed" Features and Specifications page, SAC ¶ 38, to which the brochure directs consumers, and which identifies the systems being referenced under a section titled "Restraint & Safety Systems." RJN Ex. 7 at 12 (listing rollover sensor and anti-lock braking system, among others). Further, statements about "technologically advanced features" enhancing customers' "driving experience," *id.* at 5, are likewise irrelevant to Plaintiff's allegations, which concern vehicle thefts. Plaintiff alleges no plausible factual allegations that a reasonable consumer would have understood that statements about "advanced features to enhance your driving experience" or "advanced safety systems"—particularly in light of the "Restraint & Safety Systems" list, *see Fuchs*, 2017 WL 4339821, at *4—would be understood by a reasonable consumer to describe immobilizers or anti-theft technology, nor does Plaintiff allege that the list of "Restraint & Safety Systems" provided in the brochure is false.

In its third example, Plaintiff takes issue with a 2018 Hyundai Accent brochure advertising that "the performance and safety features offered on the all-new Accent are beyond what you'd expect from a car in its class." SAC ¶ 39; RJN Ex. 8 at 5. A review of all of the information available to the consumer demonstrates that the "list of safety features at the end of the brochure," SAC ¶ 39, relates to safety features while driving, such as Forward Collision-Avoidance Assist and Vehicle Stability Management—not theft prevention. RJN Ex. 8 at 11. Once again, Plaintiff does not plausibly allege that consumers would understand that to refer to anti-theft technology, or that the list of safety features described in the brochure was inaccurate.

In its fourth example, Plaintiff challenges a brochure stating that the 2016 Hyundai Elantra is "filled with the sort of premium features you'd only expect to find on luxury cars," and equipped with "performance, safety and communications technologies so advanced, it's capable of doing things beyond any compact car you've ever owned." SAC ¶ 40; RJN Ex. 9 at 17. Once again, these statements do not relate to anti-theft technology, and Plaintiff has not plausibly alleged facts otherwise. Any doubt is relieved by the sentences that follow, touting that the Elantra earned a NHTSA 5-Star Overall Safety rating and was an Insurance Institute for Highway Safety ("IIHS") Top Safety Pick in 2015. *Id.*; *see also Fuchs*, 2017 WL 4339821, at *4. Indeed, NHTSA's 5-Star Safety Ratings program "evaluates how vehicles perform in crash tests," RJN Ex. 10 at 2, and IIHS's vehicle ratings are based on two safety aspects: "crashworthiness—how well a vehicle protects its occupants in a crash—and crash avoidance and mitigation—technology that can prevent a crash or lessen its severity." RJN Ex. 11 at 1. Neither relates to anti-theft measures.

Plaintiff's challenges to Defendants' websites similarly fail, as references to safety features relate to safety *while driving*. *See* SAC ¶ 36, RJN Ex. 12 at 1–3 (in "striving to make our safety features more advanced and innovative," Hyundai recognizes that "bad things…can transpire *while driving*" and identifies those features as including emergency braking and designs to improve "frontal crash safety, side crash safety and rollover safety") (emphasis added); SAC ¶ 36, RJN Ex. 13 (Kia's reference to a "suite of advanced safety features designed to give you extra peace of mind," in full context of the advertisement, are "designed to create an elevated *driving experience*").

In any event, the statements Plaintiff challenges at most  constitute non-actionable puffery. *See Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 926 (Ill. 2007) ("Puffing in the usual sense signifies meaningless superlatives that no reasonable person would take seriously, and so it is not actionable as fraud."). Statements of puffery are too vague to be "'capable of precise measuring,' such that

a reasonable consumer would not rely on them." *O'Connor v. Ford Motor Co.*, 567 F.Supp. 3d 915, 962 (N.D. Ill. 2021) (citing *Muir v. Playtex Products, LLC*, 983 F. Supp. 2d 980, 989 (N.D. Ill. 2013)).   No reasonable consumer would interpret Defendants' assertions as representations that the vehicles employed any particular safety technology besides those explicitly listed in the advertisements themselves— nor would they interpret those statements to represent that the cars contained immobilizers or equivalent technology.  *See Truck Ins. Exch. v. D'Orazio*, 2021 WL 1206557, at *9 (Ill. App. Ct. Mar. 30, 2021) (representation in advertising materials that company provided "comprehensive coverage" was mere puffery).

### C.   Additional Reasons Plaintiff Fails To State A Claim For Unfair Trade Practices

Plaintiff's claim of unfair practices under MCC § 2-25-090 fails for additional reasons.   To state a claim for unfair practices, Plaintiff must allege the practice "(1) offends public policy, (2) is immoral, unethical, oppressive, or unscrupulous, or (3) causes substantial injury to consumers."[5]  *City of Chicago v. Purdue Pharma*, 211 F.Supp. 3d 1058, 1074 (N.D. Ill. 2016) ("*Purdue I*").   Here, Plaintiff alleges Defendants' conduct in marketing, manufacturing, and selling vehicles while allegedly knowing these vehicles were "unreasonably susceptible to theft" was unfair. SAC ¶¶ 124, 126.  The contention fails for multiple reasons.

#### 1.   The City Does Not Plausibly Plead That Defendants' Practices Offended Public Policy

The City claims that Defendants' advertising and sale of vehicles without immobilizers or technology equivalent to immobilizers offended "[t]he public policy against the manufacture and sale of cars unreasonably susceptible to theft [which] has

---

[5]   Although Illinois courts have held that a plaintiff may meet any of the test's three prongs to plead a claim for unfair practices, Defendants are not aware of any court having concluded that a plaintiff stated a claim for unfair practices based on the "substantial injury" factor alone.  *See Garland v. Child's Place, Inc.*, 2024 WL 1376353, at *8 (N.D. Ill. Apr. 1, 2024) (unaware of same).

been recognized by the NHTSA since the promulgation of the FMVSS in the 1970s and adopted as standard in the United States motor vehicle industry, where nearly all vehicles produced by other manufacturers included engine immobilizers as standard equipment," *id.* ¶ 125. But under the ICFA, a plaintiff must "point to an[] established statute or common law doctrine" defining an offended public policy, *Garrett v. Rentgrow, Inc.*, 2005 WL 1563162, at *3 (N.D. Ill. July 1, 2005), and cannot simply "infer" the policy, *Purdue I*, 211 F. Supp. 3d at 1074–75; *see also id.* at 1074 ("A practice offends public policy when it violates a standard of conduct contained in an existing statute or common-law doctrine that typically applies to such a situation."); *Coleman v. E. Joliet Fire Prot. Dist.*, 46 N.E. 3d 741, 757 (Ill. 2016) ("Determination of public policy is…primarily a legislative function.").

Plaintiff identifies no statute or common law doctrine establishing a public policy requiring immobilizers or "equivalent" anti-theft technology. That the legislature has chosen not to enact such laws reinforces that Defendants' conduct does not offend public policy. *See Galvan v. Northwestern Mem'l Hosp.*, 888 N.E.2d 529, 539 (Ill. 2008) ("[T]he contentions of the plaintiff should be directed to the deliberative process of the legislature."). To the extent Plaintiff relies on the FMVSS generally (which is improper, *see, e.g.*, *Garrett*, 2005 WL 1563162, at *3), such regulations likewise do not require immobilizers or equivalent technology. *See* RJN Ex. 2. And this Court should not "infer" any public policy. *See Purdue I*, 211 F.Supp. 3d at 1074 ("Without more than an assertion that these federal statutes reflect the public policy the City infers, the Court is hesitant to affirm that such a public policy exists or is one the legislature intended.").

Accordingly, Plaintiff has not adequately pleaded that Defendants' conduct offended public policy.

2.  **The City Does Not Allege Acts That Are Immoral, Unethical, Oppressive, Or Unscrupulous.**

Plaintiff also fails to sufficiently allege that Defendants' conduct was immoral, unethical, oppressive, or unscrupulous.

Illinois case law "make[s] clear that [this factor] is not satisfied where a consumer can avoid the defendant's practice and obtain alternative products or services elsewhere." *Batson v. Live Nation Entm't, Inc.*, 2013 WL 992641, at \*5 (N.D. Ill. Mar. 13, 2013). Nowhere does Plaintiff allege consumers were coerced into purchasing Hyundai- and Kia-branded vehicles, lacked alternative vehicle options in the marketplace, or "could [not] have gone elsewhere." *Robinson v. Toyota Motor Credit Corp.*, 775 N.E.2d 951, 962 (Ill. 2002); *see also Purdue I*, 211 F. Supp. 3d at 1075 (opioid manufacturers' conduct did not leave consumers with "no choice," where there were other pain management options). Indeed, Plaintiff concedes that (1) Chicago consumers had choices, *see* SAC ¶ 104 ("a substantial number of Chicago consumers saw Defendants' deceptive advertisements and ***considered that information when deciding to purchase*** the Defective Vehicles") (emphasis added), and (2) "other vehicles on the market" were available to consumers, *id.* ¶ 62.

3.  **The City Does Not Allege Acts That Caused Substantial Injury to Consumers.**

Nor does Plaintiff sufficiently allege the requisite "substantial injury."

To qualify as a substantial injury under the ICFA, the injury must: "(1) be substantial; (2) not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and (3) be an injury that consumers themselves could not reasonably have avoided." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010).

Even if Defendants' conduct caused substantial injury (it did not), Plaintiff's claim fails the third prong—whether consumers themselves could have avoided the harm. As stated above, Plaintiff does not allege that consumers were forced to purchase Hyundai or Kia vehicles. Rather, "[i]t was entirely within [Chicago]

consumers' power to *not* purchase [the vehicles] from…Defendants, meaning that they were capable of avoiding the harm." *City of Chicago v. Equte LLC*, 2023 WL 6173593, at *13 (N.D. Ill. Sept. 19, 2023).  Plaintiff therefore has not adequately pleaded substantial injury.[6]

## IV.   PLAINTIFF'S CLAIM UNDER MCC § 1-20-020 ALSO FAILS.

Plaintiff also brings a claim under MCC § 1-20-020 seeking to recover costs for providing public services.  SAC ¶ 178–79.  But to state such a claim, "plaintiff must allege that defendants '*cause[d]* the city…to incur costs in order to provide services reasonably related to…[defendants'] violation of any federal, state or local law.'"  *Purdue I*, 211 F.Supp. 3d at 1083.  Plaintiff fails to do so.

*First*, because Section 1-20-020 requires an antecedent violation of some law, Plaintiff's claim falls with its underlying claims.  *Supra* Argument I–III.[7]

*Second*, Plaintiff fails to plausibly plead causation between the alleged unfair or deceptive conduct and the costs it incurred.  *Purdue I* is instructive.  There, the City brought claims against Purdue for deceptive and unfair practices and sought to recover, under MCC § 1-20-020, costs it allegedly incurred in connection with its claims that opioid manufacturers' misleading and fraudulent marketing caused doctors to write medically inappropriate prescriptions, and as a result, submit false claims for opioid prescriptions to the City's health plans.  211 F.Supp. 3d at 1067.

---

[6]   To the extent Plaintiff bases its unfair trade practices claim on Defendants' advertising, Plaintiff does not assert that Defendants' alleged misrepresentations and omissions caused substantial injury; rather, it purports to trace a substantial injury to Defendants' vehicle sales. *See, e.g.*, SAC ¶ 128.

[7]   To the extent Plaintiff has attempted to plead a violation of 815 ILCS 505/2, it fails for the same reasons Plaintiff's deceptive and unfair practice claims fail, *supra* Argument III.  *See* MCC § 2-25-090(a) ("In construing [§ 2-25-090], consideration shall be given to court interpretations relating to the [ICFA.]").  To the extent Plaintiff tries to plead a violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510/2 does not create a cause of action.  And Plaintiff cannot bring a claim under 15 U.S.C. § 45, which is reserved for the Federal Trade Commission.

The City argued Purdue's marketing campaign was deceptive because it falsely implied the drugs were FDA-approved as safe and effective for chronic pain treatment. *Id.* The court dismissed the City's claim under MCC § 1-20-020 because it failed to identify parties who were exposed to defendants' alleged misrepresentations, link those parties to subsequent prescriptions of defendants' drugs, and link such prescriptions to the City's expenditures. *Id.* at 1083 ("Without this link, plaintiff has not adequately alleged that defendants caused the City to incur costs."). As in *Purdue*, and despite alleging to have received over 130 consumer complaints, SAC ¶ 57, Plaintiff fails to identify consumers exposed to Defendants' alleged misrepresentations and omissions (and alleges on "information and belief" that Chicago consumers were exposed to these statements, *id.* ¶ 55), and likewise fails to connect such parties with eventual vehicle thefts, let alone allege that any of Defendants' conduct *caused* those thefts.

## V.   THE ECONOMIC LOSS RULE FORECLOSES PLAINTIFF'S REQUEST FOR TORT DAMAGES

The economic loss rule also forecloses Plaintiff's request for tort damages.

Under the economic loss rule, solely economic losses are generally not recoverable in tort actions, to avoid "the consequences of open-ended tort liability." *In re Chicago Flood Litig.*, 680 N.E.2d 265, 274 (Ill. 1997) (cleaned up). Illinois courts have applied the doctrine to bar municipalities' recovery of economic damages in negligence and public nuisance actions. In *Beretta*, the City sought damages "representing the cost of providing governmental services made necessary by the widespread unlawful possession and use of firearms." 821 N.E.2d at 1139. The Illinois Supreme Court barred such damages, finding they raised "concerns regarding speculativeness and potential magnitude of damages" and concluding they were "'solely economic damages' in the sense that they represent costs incurred in the absence of harm to a plaintiff's person or property." *Id.* at 1143.

Here, Plaintiff similarly alleges economic damages representing the cost of providing governmental services made necessary by the wave of vehicle theft.  *See* SAC ¶¶ 6, 149, 165.  But Plaintiff's references to unspecified "property damage," *id.* ¶¶ 6, 88, 165, are supported by a single factual allegation of a Hyundai vehicle hitting a City sanitation truck, and do not allege any connection between any unspecified property injury and the damages Plaintiff seeks.  Plaintiff cannot seek damages based on public nuisance or negligence claims under the economic loss rule.

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss the SAC in its entirety with prejudice.

DATED:  May 24, 2024                 QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                     By */s/ Steven G. Madison*
                                     Steven G. Madison (SBN: 101006)
                                     stevemadison@quinnemanuel.com
                                     Justin C. Griffin (SBN: 234675)
                                     justingriffin@quinnemanuel.com
                                     865 South Figueroa Street, 10th Floor
                                     Los Angeles, California 90017-2543
                                     Telephone:  (213) 443-3000
                                     Facsimile:   (213) 443-3100

                                     *Attorneys for Defendants*

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Section 5 of Order No. 1, I certify that the parties conferred in a good-faith effort to resolve the matter without court action prior to the filing of this Motion.

DATED:  May 24, 2024       QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _/s/ Steven G. Madison_____

*Attorneys for Defendants*

# **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants certifies that this brief contains 6,997 words, which complies with the word limit of L.R. 11-6.1.

DATED:  May 24, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Steven G. Madison*

Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendants*