**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Alice S. Kim (SBN 317479)
AKim@jenner.com
Madeline P. Skitzki (SBN 318233)
MSkitzki@jenner.com
Jenna L. Conwisar (SBN 341521)
JConwisar@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:   +1 213 239 5100
Facsimile:    +1 213 239 5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
PBrennan@jenner.com
Michael T. Brody (*pro hac vice*)
MBrody@jenner.com
353 North Clark Street
Chicago, IL  60654-3456
Telephone:   +1 312 222 9350
Facsimile:    +1 312 527 0484

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL SUBROGATION CASES | Case No. 8:22-ml-3052-JVS(KESx)<br><br>The Honorable James V. Selna<br><br>**DEFENDANTS HYUNDAI MOTOR COMPANY AND KIA CORPORATION'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

ARGUMENT ............................................................................................................. 2

I. The Subrogation Plaintiffs' Purported Evidence Does Not Establish Specific Personal Jurisdiction Over HMC and KC. .......................................... 2

    A. HMC Does Not Operate A "Research and Design Facility" in California. ....................................................................................... 3

    B. HMC and KC Do Not Employ Thousands of People in California. ....................................................................................... 3

    C. HMC and KC Do Not Control Hyundai and Kia Dealers. ................... 4

    D. HMC's and KC's Globally Accessible Websites Are Not Expressly Aimed at California. ............................................................ 4

    E. The Shipping Records Do Not Support Jurisdiction. .......................... 6

II. The Case Law Does Not Support Exercising Specific Personal Jurisdiction Over HMC and KC. ............................................................... 11

CONCLUSION ....................................................................................................... 16

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*In re Air Bag Prod. Liab. Litig.*,
  7 F. Supp. 2d 792 (E.D. La. 1998) ........................................................................ 8

*AMA Multimedia, LLC v. Wanat*,
  970 F.3d 1201 (9th Cir. 2020) .............................................................................. 5

*Briskin v. Shopify, Inc.*,
  No. 22-15815, 2024 WL 2148754 (9th Cir. May 14, 2024) ................................ 5

*Bristol-Myers Squibb Co. v. Superior Court of California*,
  582 U.S. 255 (2017) ............................................................................................ 6

*Ditter v. Subaru Corp.*,
  No. 20-2908, 2022 WL 889102 (D. Colo. Mar. 25, 2022) ................................ 15

*Falco v. Nissan N. Am. Inc.*,
  96 F. Supp. 3d 1053 (C.D. Cal. 2015) ............................................................... 14

*Ford v. Montana Eighth Judicial District*,
  592 U.S. 351 (2021) .............................................................................. 11, 12, 13

*Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*,
  76 F.4th 1266 (9th Cir. 2023) .............................................................................. 8

*Herbal Brands, Inc. v. Photoplaza, Inc.*,
  72 F.4th 1085 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024) ................. 5, 6

*Int'l Shoe Co. v. Washington*,
  326 U.S. 310, 316 (1945) .................................................................................. 10

*J. McIntyre Mach., Ltd. v. Nicastro*,
  564 U.S. 873 (2011) ............................................................................... 7, 13, 14

*Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*,
  No. 19-7831, 2019 WL 8064196 (C.D. Cal. Dec. 5, 2019) .............................. 11

*LNS Enterprises LLC v. Cont'l Motors, Inc.*,
  22 F.4th 852, 859 (9th Cir. 2022) ........................................................... 2, 5, 7, 13

*Morrill v. Scott Fin. Corp.*,
   873 F.3d 1136 (9th Cir. 2017) .................................................................................. 10

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ................................................................................................... 2

*Reeves v. Keesler*,
   921 S.W.2d 16 (Mo. Ct. App. 1996) ........................................................................ 8

*Rodriguez v. Nissan N. Am., Inc.*,
   No. 22-1672, 2023 WL 2683162 (C.D. Cal. Jan. 30, 2023) ................................ 9

*Schwarzenegger v. Fred Martin Motor Co.*,
   374 F.3d 797 (9th Cir. 2004) ................................................................................. 13

*Tangle, Inc. v. Buffalo Games, LLC*,
   No. 22-7024, 2023 WL 5672178 (N.D. Cal. Sept. 1, 2023) .............................. 11

*Thornton v. Bayerische Motoren Werke AG*,
   439 F. Supp. 3d 1303 (N.D. Ala. 2020) ................................................................ 15

*World-Wide Volkswagen v. Woodson*,
   444 U.S. 286 (1980) ........................................................................................... 11, 12

*Zakikhani v. Hyundai Motor Co.*,
   No. 20-1584, 2021 WL 4805454 (C.D. Cal. June 28, 2021) ........................ 14, 15

## INTRODUCTION

Hyundai Motor Company ("HMC") and Kia Corporation ("KC") must be dismissed from this lawsuit because the Subrogation Plaintiffs cannot establish either purposeful availment/direction or that their claims are connected to any forum-related activities on the part of HMC or KC.

In response to HMC and KC's Motion, the Subrogation Plaintiffs rely on conclusory assertions stated as purported "facts" that fail to contradict HMC's and KC's sworn factual declarations. To begin, the Subrogation Plaintiffs assert that HMC "maintains a research and design facility in California" and that HMC and KC "employ thousands of people" in California, but those assertions are clearly inconsistent with the evidence submitted with the Motion. And the declarations make clear that HMC and KC have no relationship with independent Hyundai and Kia dealers, yet the Subrogation Plaintiffs allege without support that HMC and KC have "control" of those dealers' operations. The Subrogation Plaintiffs also claim that HMC and KC operate websites that allow users to purchase Hyundai and Kia vehicles in California, which is not true. Finally, the Subrogation Plaintiffs grossly mischaracterize the import of the vehicle shipping records, which the Court already recognized in ruling on the Subrogation Plaintiffs' motion for jurisdictional discovery. The shipping records only confirm that HMC and KC sell vehicles to their United States subsidiaries FOB South Korea, meaning the vehicles belong to the subsidiaries at the time the ship containing the vehicles leaves the port in South Korea.

Absent the baseless and contradicted allegations in the Opposition, the case law on which the Subrogation Plaintiffs rely does not support their position. HMC and KC respectfully request the Court dismiss the Subrogation Plaintiffs' claims against them without leave to amend.

# ARGUMENT

The Subrogation Plaintiffs do not dispute that they bear the burden of demonstrating that (1) HMC and KC "purposefully direct[ed]" their activities at California or "purposefully avail[ed]" themselves of the privilege of conducting activities in California, and (2) their claims "arise[] out of or relate[] to" HMC and KC's "forum-related activities." Mot. at 6 (citing *LNS Enterprises LLC v. Cont'l Motors, Inc.*, 22 F.4th 852, 859 (9th Cir. 2022)); *see Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). They also do not contest that this Court may not assume the truth of the allegations that HMC and KC have contradicted by declaration. *See* Mot. at 6 (citing *LNS Enterprises*, 22 F.4th at 858). The Subrogation Plaintiffs fail to meet their burden of establishing either prong because they rely on supposed "facts" that HMC and KC have shown are untrue and on misinterpretations of the relevant case law.

## I. The Subrogation Plaintiffs' Purported Evidence Does Not Establish Specific Personal Jurisdiction Over HMC and KC.

The Subrogation Plaintiffs seem to base purposeful availment/direction on five sets of purported "facts": (1) HMC "maintains a research and design facility in California"; (2) HMC and KC "employ thousands of people" in California; (3) HMC and KC "control certain aspects of their California dealers' operations"; (4) HMC and KC operate a "geographically-aimed interactive website"; and (5) "HMC dispatched 'over 7,500 shipments of vehicles and parts through California's ports for delivery and sale to California facilities'" and "KC similarly 'initiated over 5,000 shipments of vehicles and parts through California's ports for delivery and sale to California facilities.'" Opp'n at 9–14, 17–19 (quoting ACC ¶¶ 32, 38). These "facts" are untrue and therefore cannot provide a basis for jurisdiction.

### A. HMC Does Not Operate A "Research and Design Facility" in California.

Although the Subrogation Plaintiffs claim that HMC "does not deny" that it "maintains a research and design facility in California" (Opp'n at 9), the Baik Declaration proves the contrary. That declaration makes clear that (a) HMC does not maintain a place of business in California (Baik Decl. ¶ 6); (b) HMC does not own or lease any real property in California (*id.* ¶ 9); (c) HMC is not registered to do business in California (*id.* ¶ 10); (d) HMC does not pay taxes to the State of California (*id.* ¶ 11); and (e) HMC designs, tests, manufactures, and assembles Hyundai-branded vehicles in the Republic of Korea (*id.* ¶ 21). These facts refute the assertion that HMC "maintains a research and design facility in California." But to provide further confirmation, Ms. Baik has submitted a Supplemental Declaration with this Reply explicitly denying the allegation. *See* Supplemental Declaration of Seung Hyun Baik ("Suppl. Baik Decl.") ¶ 3; *see also* Supplemental Declaration of Seunghee Shin ("Suppl. Shin Decl.") ¶ 3 (confirming that KC does not maintain a research and design facility in California either).

### B. HMC and KC Do Not Employ Thousands of People in California.

Similarly, the Subrogation Plaintiffs state that "neither HMC's nor KC's declarations deny that the Koren [sic] entities 'employ thousands of people within the State.'" Opp'n at 9. But a fair reading of the declarations demonstrates that HMC and KC do not employ thousands of people in California. Given that HMC and KC do not maintain a place of business in California, do not own or lease any real property in California, are not registered to do business in California, and do not pay taxes to the State of California, the allegation that they employ thousands of people in California is illogical. *See* Shin Decl. ¶¶ 6, 9–11; Baik Decl. ¶¶ 6, 9–11. But, again, to clear up any uncertainty, the Supplemental Declarations clarify that HMC and KC do not employ thousands of people in California. *See* Suppl. Baik Decl. ¶ 4; Suppl. Shin Decl. ¶ 4.

### C. HMC and KC Do Not Control Hyundai and Kia Dealers.

The Subrogation Plaintiffs do not explain the relevance of their allegation that HMC and KC "control certain aspects of their California dealers' operations," as they assert neither an alter ego nor agency theory on which to base specific personal jurisdiction. Opp'n at 10. In any event, their allegations are clearly contradicted by the Baik and Shin Declarations.

The Subrogation Plaintiffs claim, without support, that HMC and KC "[g]rant[] each dealer a license to use their respective trademarks and intellectual property"; "[f]urnish[] each dealer with marketing materials to assist in the sale of their vehicles"; "[p]rovid[e] training to dealership personnel to assist in their sales activities"; "[p]rovid[e] guidance to dealerships, and dealership personnel in handling complaints regarding the Thief Friendly Design"; and "[p]rohibit[] their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Vehicles." *Id*. Yet Ms. Baik and Ms. Shin stated in their declarations that HMC and KC do not have *any* relationship, contractual or otherwise, with Hyundai or Kia dealers in the United States. Shin Decl. ¶ 24; Baik Decl. ¶ 26. Although this should be enough to contradict the Subrogation Plaintiffs' unsupported allegations, Ms. Baik and Ms. Shin have expressly denied the allegations in their Supplemental Declarations. *See* Suppl. Baik Decl. ¶¶ 5–9; Suppl. Shin Decl. ¶¶ 5–9.

### D. HMC's and KC's Globally Accessible Websites Are Not Expressly Aimed at California.

The Subrogation Plaintiffs claim that HMC and KC "actively operate and maintain interactive websites which invite users to enter their specific geographical location in order to purchase specific Hyundai- or Kia- branded vehicle anywhere in the United States: including California." Opp'n at 18 & n.2. This statement is untrue. Of the two websites Subrogation Plaintiffs identify, only the Hyundai website—https://www.hyundai.com/gd/en/build-a-car/request-a-brochure—

permits a user to interact with it at all, and neither website permits users to purchase vehicles. As set forth in the Declarations, HMC and KC do not distribute or sell vehicles in California (or anywhere else in the United States), through a website or otherwise. Baik Decl. ¶ 22; Shin Decl. ¶ 21.

The Subrogation Plaintiffs do not dispute that "the mere existence of a 'passive website'"—*i.e.*, "universally accessible website where anyone can access information"—"is insufficient to render the company subject to personal jurisdiction in the absence of other contacts." Mot. at 14; *LNS Enters.*, 22 F.4th at 863. And they do not explain why the Kia website they cite is anything more than such a "passive website" (in fact, that is precisely what it is). Further, even if the Hyundai website they cite could be considered more than a "passive website," it is not expressly aimed at California and therefore does not subject HMC to specific personal jurisdiction in California. The Ninth Circuit has made clear that "operation of an interactive website does not, by itself, establish express aiming." *Herbal Brands, Inc. v. Photoplaza, Inc.*, 72 F.4th 1085, 1091 (9th Cir. 2023), *cert. denied*, 144 S. Ct. 693 (2024). A court may find express aiming where (1) a "website with national viewership and scope appeals to, and profits from, an audience in a particular state"; (2) "the site ha[s] a forum-specific focus or the defendant exhibit[s] an intent to cultivate an audience in the forum;" or (3) "a defendant, in its regular course of business, sells a physical product via an interactive website and causes that product to be delivered to the forum." *Id.* at 1092–93. Knowledge that a website "would attract a substantial number of viewers" in the forum state is not sufficient. *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210 (9th Cir. 2020).[1]

---

[1] HMC and KC cited *Briskin v. Shopify, Inc.*, 87 F.4th 404 (9th Cir. 2023), in their Motion. The Ninth Circuit has since vacated that opinion and granted rehearing *en banc*. *Briskin v. Shopify, Inc.*, No. 22-15815, 2024 WL 2148754 (9th Cir. May 14, 2024). Regardless, as reflected above, pre-*Briskin* case law supports HMC and KC's position.

The Hyundai and Kia websites the Subrogation Plaintiffs cite do not "appeal[] to, and profit[] from, an audience" in California or have a "[California]-specific focus." *Herbal Brands*, 72 F.4th at 1092. Further, HMC and KC do not sell vehicles through those websites. *Id.* at 1093. Accordingly, the Ninth Circuit's holding in *Herbal Brands*—that, for the court to have specific jurisdiction, a defendant need not "specifically target[] th[e] forum" with its interactive website if it, "in its regular course of business, sells a physical product via [that] interactive website and causes that product to be delivered to the forum"—has no bearing on this case. *Id.* And the fact that HMC and KC design and manufacture "physical objects" that were allegedly "damaged" in California is irrelevant to this analysis, as those "physical objects" (unlike in *Herbal Brands*) were not sold via the website. *See* Opp'n at 18.

### E. The Shipping Records Do Not Support Jurisdiction.

Finally, the Subrogation Plaintiffs mischaracterize the shipping records they cite. They claim those records "indicate[] that [KC] and [HMC] make substantial use of California ports, including for the import of vehicles for testing in California." Dkt. 338 at 14. According to the Subrogation Plaintiffs, these records "show that, between November 1, 2006 and March 1, 2024, HMC initiated approximately 10,510 shipments to U.S. ports" with "[m]ore than 70% of HMC's shipments (7,503) [going] directly to the State of California" and "KC directed approximately 4,868 shipments of vehicles and automobile parts to the State of California" with approximately 77% of those shipments going directly to California. Opp'n at 13. These records, in fact, align with HMC and KC's declarations and do not provide a basis for specific personal jurisdiction here.

As a threshold matter, the Subrogation Plaintiffs do not explain how the records support specific personal jurisdiction over HMC and KC, which requires "a connection between the forum and the specific claims at issue." *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255, 265 (2017). The Subrogation Plaintiffs make no attempt to articulate that connection here. And that

connection is not readily apparent, given the prevalence of obviously irrelevant information in the records, including (i) shipments from Hyundai Motor Brasil, Hyundai Motor Shanghai, Hyundai Motor Europe, Kia India, Kia Mexico, and various entities other than HMC and KC, *see, e.g.*, Declaration of Nickie Bonenfant, App. A at 5, 23, 104 & *id.*, App. C at 3, 30; (ii) shipments far predating the relevant time period (which includes Model Year 2011 vehicles and later), *see, e.g.*, *id.*, App. A at 248–77 & *id.*, App C. at 326–74; (iii) shipments containing vehicles with VIN country codes that are clearly intended for non-US markets, *see, e.g.*, *id.*, App. A at 3 & *id.*, App. C at 3; and (iv) shipments containing Jeep Wranglers and other non-Hyundai or non-Kia vehicles, *see, e.g.*, *id.*, App. A at 3, 12.

Equally importantly, HMC and KC never disputed that they manufacture vehicles in South Korea and sell those vehicles to their subsidiaries, who then import the vehicles in the United States. Baik Decl. ¶¶ 21–22; Shin Decl. ¶¶ 20–21. The Subrogation Plaintiffs fail to explain how the records tell a different story. Under the Subrogation Plaintiffs' theory, all foreign vehicle manufacturers who sell vehicles to subsidiary-distributors who import those vehicles to the United States are subject to specific personal jurisdiction wherever those subsidiary-distributors choose to ship the vehicles. The case law does not support that theory.

As set forth in the Motion to Dismiss, the Supreme Court and Ninth Circuit have made clear that "[p]lacing 'a product into the stream of commerce'—even if the defendant is aware 'that the stream of commerce may or will sweep the product into the forum state'—'does not convert the mere act of placing the product into the stream of commerce into an act' of purposeful availment." *LNS Enters.*, 22 F.4th at 860 (citations omitted); *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (holding state could not exercise specific jurisdiction over foreign defendant merely because its product was distributed through an American company responsible for selling product nationwide). The shipping records show nothing more than that HMC and KC placed vehicles into the stream of commerce in South

Korea that were then imported into California by U.S. entities, whether for wholesale distribution by HMA and KA, for testing by separate U.S. affiliates, or for some other purpose.

To the extent the Subrogation Plaintiffs suggest that HMC and KC own the vehicles while they are in transit to the United States or direct the vehicle shipments to California, they are wrong. *See* Opp'n at 12; Dkt. 338 at 14. In reality, for all vehicles that are imported into the United States to be sold to consumers, the vehicles become the inventory of HMA and KA at the time the ship containing the vehicles leaves the port in South Korea. Declaration of Michael Orange (Dkt. 346-4) ("Orange Decl.) ¶ 3; Declaration of Robert Kuntze (Dkt. 346-5) ("Kuntze Decl.") ¶ 3. Once the vehicles are loaded onto the ship, HMA and KA take liability of the vehicles. Orange Decl. ¶ 4; Kuntze Decl. ¶ 4. And HMA and KA are responsible for submitting insurance claims for any vehicles damaged while in transit. Orange Decl. ¶ 5; Kuntze Decl. ¶ 5. That is because HMA and KA import vehicles from HMC and KC FOB Origin from South Korea. Orange Decl. ¶ 6; Kuntze Decl. ¶ 6. FOB (free on board) Origin is a shipment term that means the buyer accepts the title of the goods at the shipment point and assumes all risk once the seller ships the product. Orange Decl. ¶ 7; Kuntze Decl. ¶ 7; *Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc.*, 76 F.4th 1266, 1276 (9th Cir. 2023) ("[W]hen a delivery term is F.O.B., the goods are delivered at a designated location, usually a transportation depot, at which legal title and thus the risk of loss passes from seller to buyer.") (citations and internal quotation marks omitted). The buyer (here, HMA and KA) is responsible if the goods are damaged or lost while in transit. Orange Decl. ¶ 7; Kuntze Decl. ¶ 7.

Further, HMA and KA continue to have responsibility for the vehicles once they reach the United States. HMA and KA are responsible for all necessary import documentation and customs clearance procedures once the vehicles arrive at a United States port. Orange Decl. ¶ 8; Declaration of Jason Kwon in Support of HMC and KC's Opposition to the Subrogation Plaintiffs' Motion for Jurisdictional

8

HMC AND KC'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

Discovery (Dkt. 346-6) ¶ 3.  HMA and KA arrange port vehicle inspections, processing, unloading, and transportation logistics through their partner, Glovis America. Orange Decl. ¶ 9; Kuntze Decl. ¶ 8.  HMA and KA then distribute vehicles to dealers throughout the United States, including in California.  Baik Decl. ¶ 22; Shin Decl. ¶ 21.  HMC and KC do not control HMA or KA's distribution of the vehicles and do not direct HMA or KA to sell them to any particular dealer or state. Orange Decl. ¶¶ 10–11; Kuntze Decl. ¶¶ 9–10.

The same is true with respect to Hyundai and Kia vehicles that HMC's subsidiary, Hyundai America Technical Center, Inc. ("HATCI"), imports for test purposes.  Those vehicles are also imported FOB Origin from South Korea, and therefore HATCI takes inventory and liability of the vehicles at the time the vehicles are loaded onto the ship in South Korea.  Declaration of Joselyn Smith (Dkt. 346-7) ¶¶ 3–7.  And HATCI continues to have responsibility for the vehicles once they reach the United States.  *Id.* ¶¶ 8–10.  Although the Subrogation Plaintiffs contend that the shipping records "reveal that the Korean entities regularly send test vehicles to their facility in California for safety and compliance testing," they do not identify records supporting that statement.  Opp'n at 4–5; *see also id.* at 12–13.  As established above, HMC and KC do not have a "facility" in California.  *See supra* Section I.A.  And the two entries the Subrogation Plaintiffs cite in their Opposition, which list HATCI as the consignee, align with the vehicles being imported by HATCI FOB Origin from South Korea.  Opp'n at 12.

Faced with these facts, the Subrogation Plaintiffs contended in their reply in support of their motion for leave for jurisdictional discovery that HMC and KC "were the consignees for shipments of vehicles and vehicle parts passing through California's ports." Dkt. 367 at 10.  Yet they neglected to mention that the shipping records only identify *five* shipments out of *thousands* where HMC appears to be the consignee and *three* shipments out of *thousands* where KC appears to be the consignee between 2006 and 2024, which the Court recently highlighted when it

HMC AND KC'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

denied the Subrogation Plaintiffs' motion for leave for jurisdictional discovery. *See* Dkt. 390 at 2 (noting that "the Subrogation Plaintiffs only point to five HMC shipments and three KC shipments out of the 7,700 shipments contained in the appendices"). And Defendants' internal records confirm that at least four of these records are erroneous—in actuality, HMA, KA, and a foreign subsidiary were the consignees of records in each of those shipments, not HMC or KC.[2] *See* Suppl. Baik Decl. ¶ 11; Declaration of Jason Kwon ¶¶ 3–5; Declaration of Andrea Stacey ¶¶ 3–5. Notably, when HMC and KC raised some of these erroneous shipments at the oral argument on the motion for jurisdictional discovery, "[t]he Subrogation Plaintiffs failed to respond." Dkt. 390 at 2. Further, two of the shipments were likely used as display vehicles in the United States and then returned to the Republic of Korea, and are thus unrelated to the Subrogation Plaintiffs' claims here. Suppl. Shin Decl. ¶ 10. But even if some of those eight entries were legitimate, a handful of shipments to HMC and KC in California over a ten-year period that have no apparent relevance to this dispute are not "sufficient contacts arising from or related to specific transactions or activities in the forum state" to establish specific jurisdiction. *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

As such, although the Subrogation Plaintiffs try to muddy the waters by introducing unexplained shipping records, to the extent those records are even relevant, they are fully consistent with the declarations HMC and KC submitted with their Motion to Dismiss. With the exception of a handful of possibly erroneously recorded entries, they show nothing more than that HMC and KC sold vehicles in

---

[2] In addition, one of these shipments occurred in 2007, which is outside the relevant time period. *See* Suppl. Shin Decl. ¶ 10, Ex. A; ACC ¶ 1 (stating that the vehicles at issue are "2011-2022 Kia vehicles and 2011-2022 Hyundai vehicles"). And one of the records appears to incorrectly identify HMC as both the shipper of record and the consignee of record on the shipment containing Bill of Lading No. OCBSS00775343, as the consignee address is listed as the address for the California Proving Ground, which is owned by HMA and leased to HATCI.

South Korea that were imported by other entities into the United States. In similar circumstances, courts have declined to find express aiming where foreign defendants shipped goods to American entities FOB origin. *See Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, No. 19-7831, 2019 WL 8064196, at *7–8 (C.D. Cal. Dec. 5, 2019) (granting motion to dismiss where plaintiff did not contest that the foreign entity defendant "deliver[ed] its goods to [California] 'FOB' Shanghai, or that the [defendant] company passes its ownership of [the products] off as soon as it delivers them to a Shanghai warehouse"); *Tangle, Inc. v. Buffalo Games, LLC*, No. 22-7024, 2023 WL 5672178, at *4 (N.D. Cal. Sept. 1, 2023) (finding shipments to California did not constitute express aiming where declaration averred that distributor "assumed ownership in the goods" in China).

## II. The Case Law Does Not Support Exercising Specific Personal Jurisdiction Over HMC and KC.

Once the false "factual" assertions are disregarded, the Subrogation Plaintiffs are left only with the following facts going to purposeful direction: (1) Hyundai and Kia-branded vehicles are sold in California by other entities, and insureds may have had vehicles stolen in California; (2) HMC and KC place vehicles into the stream of commerce, knowing some of those vehicles may end up in California; and (3) HMC and KC operate websites that can be accessed in California. The case law does not support exercising specific personal jurisdiction in these circumstances.

The two main cases on which the Subrogation Plaintiffs rely—*World-Wide Volkswagen v. Woodson*, 444 U.S. 286 (1980), and *Ford v. Montana Eighth Judicial District*, 592 U.S. 351 (2021)—do not help the Subrogation Plaintiffs. At issue in *World-Wide Volkswagen* was whether a court in Oklahoma could exercise jurisdiction over a regional distributor and a retail dealer of automobiles, both of which were headquartered and incorporated in New York, in a product liability lawsuit involving a vehicle "sold in New York to New York residents," which "happened to suffer an accident while passing through Oklahoma." 444 U.S. at 287,

295.  The Court held that the exercise of jurisdiction was improper.  In so holding, the Court rejected the argument that jurisdiction could be based on the "foreseeability" that a vehicle could cause injury in another state, reasoning that "amenability to suit" should not "travel with the chattel."  *Id.* at 295–96.

Yet that is exactly the basis on which the Subrogation Plaintiffs try to assert jurisdiction here.  According to the Subrogation Plaintiffs, because HMC and KC manufacture vehicles that are ultimately sold in California, they should be subject to jurisdiction in California even if they do not expressly target the state.  But that is not the law.  The Subrogation Plaintiffs selectively quote *World-Wide Volkswagen* for the proposition that "if the sale of a vehicle manufacturer's product 'arises from the efforts of the manufacturer' to serve the California market 'it is not unreasonable to subject it to suit' here when its 'defective merchandise has there been the source of injury to its owner or to others.'"  Opp'n at 14 (quoting 444 U.S. at 297).  But the quotation they cite is clearly dicta, as the Court held that jurisdiction there was lacking.  *See Ford*, 592 U.S. at 1027 (referring to the statement as "dicta").  In any event, the Subrogation Plaintiffs have not shown that HMC and KC have made efforts to "serve" the market for Hyundai and Kia-branded vehicles in California.  Finally, the reasonableness of the exercise of jurisdiction is only one prong of the specific jurisdiction test, which a court only reaches once the plaintiff establishes the first two prongs (which the Subrogation Plaintiffs do not do here).

The Subrogation Plaintiffs also fail to show how *Ford* is relevant here.  The issue in *Ford* was whether a court in a product liability case could exercise jurisdiction over Ford, a domestic manufacturer, which was engaged in "advertising, selling, and servicing" the vehicle model at issue in the case in the forum state, even though the *particular* vehicle at issue was not sold, designed, or manufactured in the forum state.  592 U.S. at 355.  The Court found that jurisdiction was proper.

The facts in *Ford* bear little resemblance to the facts here.  Unlike HMC and KC, "Ford markets, sells, and services its products across the United States."  *Id.* at

12

HMC AND KC'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF
PERSONAL JURISDICTION

355. Further, unlike here, Ford did "not contest that it does substantial business in Montana and Minnesota," *i.e.*, "that it actively seeks to serve the market for automobiles and related products in those States." *Id.* at 361. Indeed, Ford targeted those states "[b]y every means imaginable," including "billboards, TV and radio spots, print ads, and direct mail." *Id.* at 365. Given Ford's undisputed close contacts with the forum states, the Court was only considering whether "the connection between the plaintiffs' claims and Ford's activities" was "close enough to support specific jurisdiction." *Id.* at 371. Here, the Subrogation Plaintiffs have provided no evidence showing that HMC and KC—as opposed to HMA and KA—are "actively seek[ing] to serve the market for automobiles and related products" in California. Without such a connection, this Court need not address the question at issue in *Ford*.

The remainder of the cases on which the Subrogation Plaintiffs rely also do not compel the exercise of personal jurisdiction over HMC and KC here. In *Schwarzenegger v. Fred Martin Motor Co.*, the Ninth Circuit stated that "[a] showing that a defendant purposefully directed his conduct toward a forum state . . . usually consists of evidence of the defendant's actions outside the forum state that are directed at the forum, such as the distribution in the forum state of goods originating elsewhere." 374 F.3d at 803. To support that point, the court cited cases in which the courts found purposeful direction where the defendants themselves engaged in distribution of their products in the forum state. *Id.* Given the Supreme Court and Ninth Circuit's rejection of the stream-of-commerce theory for jurisdiction, *LNS Enters.*, 22 F.4th at 860; *J. McIntyre Mach., Ltd.*, 564 U.S. at 886, the fact that a defendant manufactures products that may later be distributed in the forum state does not automatically subject that defendant to personal jurisdiction in the forum state.[3]

---

[3] Although the Subrogation Plaintiffs argue that "if this Court were to accept Defendants' position, it is difficult to imagine a factual scenario where any court, state or federal, could constitutionally hold KC or HMC liable for injuries in the United States," which "is plainly not the law," the Supreme Court in *J. McIntyre*, in

13
HMC AND KC'S REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

*Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053 (C.D. Cal. 2015), and *Zakikhani v. Hyundai Motor Co.*, No. 20-1584, 2021 WL 4805454 (C.D. Cal. June 28, 2021), are also inapposite. *See* Opp'n at 13, 15. In *Falco*, the court found that it had personal jurisdiction over a foreign vehicle manufacturer because that manufacturer "intend[ed] for the components at issue to be sold in California"; "worked closely" with its American distributor on "the distribution, sale, lease, servicing, and warranting" of the subject vehicles; "appear[ed] to engage in direct advertising aimed at the American market, including California, for at least some of the vehicles at issue"; and "put[] out press releases touting the activities of [its distributor] in the United States, including in California." 96 F. Supp. 3d at 1059–60. The Subrogation Plaintiffs have not shown that any of those facts are true as to HMC and KC.

And *Zakikhani* is not, in fact, "functionally identical" to the circumstances here. Opp'n at 4. There, the plaintiffs brought claims against HMC, KC, HMA, and KA regarding alleged defects in the anti-lock brake systems and hydraulic electronic control units in certain Hyundai and Kia-branded vehicles. 2021 WL 4805454, at *1. The plaintiffs alleged—and HMC and KC did not dispute—that they "were intimately involved with the decisions to track vehicle malfunctions, determine the cause of the problem, and ultimately to disclose that information to NHTSA and initiate recall efforts." *Id.* at *4. Because HMC and KC "continuous[ly] monitor[ed] and test[ed]" the alleged defect for two years before initiating recall proceedings, the court held it could "be reasonably inferred that HMC and K[C] were involved in the relevant decision-making process from the outset" and their delay "negatively impacted the putative class members who purchased Class Vehicles." *Id.* For that reason, the court concluded that the plaintiffs had sufficiently alleged that HMC and

---

fact, accepted that there are situations in which "a defendant may in principle be subject to the jurisdiction of the courts of the United States but not of any particular State." Opp'n at 14; *J. McIntyre Mach., Ltd.*, 564 U.S. at 884.

KC purposefully directed their conduct at California.  *Id.*  Even putting aside the questionable validity of this holding, the Subrogation Plaintiffs cannot establish similar facts here.  Although they contend that the same "forum-specific design decisions and interactions with US based regulators" that underlay the *Zakikhani* decision support jurisdiction here, they do not cite any such "forum-specific design decisions and interactions with US based regulators."  Opp'n at 12.

This Court should instead look to the two recent district court cases HMC and KC cited in the Motion involving foreign vehicle manufacturers—*Thornton v. Bayerische Motoren Werke AG*, 439 F. Supp. 3d 1303 (N.D. Ala. 2020), and *Ditter v. Subaru Corp.*, No. 20-2908, 2022 WL 889102 (D. Colo. Mar. 25, 2022).  The courts in both cases found that they lacked specific personal jurisdiction over the defendant foreign vehicle manufacturers that did not themselves sell vehicles in the forum state, conduct sales or advertising campaigns in the forum state, or specifically target distribution of the vehicles in the forum state.  The courts also rejected the argument that the defendants were subject to jurisdiction simply because the defendants knew that their vehicles would be sold in the forum state.

The Subrogation Plaintiffs' attempts to distinguish these cases are unavailing.  The *Thornton* court's holding did not depend on its "but-for" causation standard, given the lack of contacts between BMW AG and the forum state.  Opp'n at 16.  Further, as demonstrated above, the Subrogation Plaintiffs are wrong that they "have provided detailed and specific evidence of the Korean entities' activities in the Forum state."  *Id.*  Relatedly, just like the plaintiffs in *Ditter*, the Subrogation Plaintiffs here have not effectively rebutted HMC and KC's evidence.  *Id.* at 17.

As such, the case law does not support the exercise of jurisdiction in light of the limited contacts the Subrogation Plaintiffs have shown here.

# CONCLUSION

For the foregoing reasons, HMC and KC respectfully request that the Court grant their Motion and dismiss the Subrogation Plaintiffs' claims against HMC and KC without leave to amend.

Dated: May 30, 2024

JENNER & BLOCK LLP

/s/ Peter J. Brennan
Kate T. Spelman
Alice S. Kim
Madeline P. Skitzki
Jenna L. Conwisar
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199
KSpelman@jenner.com
AKim@jenner.com
MSkitzki@jenner.com
JConwisar@jenner.com

Peter J. Brennan (*pro hac vice*)
Michael T. Brody (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484
PBrennan@jenner.com
MBrody@jenner.com

*Attorneys for Defendants*