1  QUINN EMANUEL URQUHART & SULLIVAN LLP
2  Steven G. Madison (SBN: 101006)
   stevemadison@quinnemanuel.com
3  Justin C. Griffin (SBN: 234675)
   justingriffin@quinnemanuel.com
4  865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:   (213) 443-3100
7
8  *Attorneys for Defendants Hyundai Motor*
   *America and Kia America, Inc.*
9

10              **UNITED STATES DISTRICT COURT**

11             **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ML-3052-JVS-(KESx) |
| | The Honorable James V. Selna |
| | **DEFENDANTS' NOTICE OF AND MOTION TO DISMISS PLAINTIFF CITY OF NEWARK'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT THEREOF** |
| This Document Relates to: | |
| *City of Newark v. Hyundai Motor Company, Hyundai Motor America, Kia Corporation, and Kia America, Inc.*, Case No. 8:24-cv-00323 | Hearing Date:  August 26, 2024 Hearing Time: 1:30 p.m. |

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on August 26, 2024, at 1:30 p.m., or as soon hereafter as counsel may be heard, in the courtroom of the Honorable James V. Selna (Courtroom 10C) of the above-entitled Court, located at 411 West 4th Street, Santa Ana, CA 92710, Defendants Kia America, Inc. ("KA") and Hyundai Motor America ("HMA") (collectively, "Defendants") will and hereby do move the above-entitled Court for an order dismissing Plaintiff City of Newark's ("Plaintiff") First Amended Complaint[1] ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the FAC fails to state any claim upon which relief may be granted.

Defendants' Motion is based on this Notice, the Memorandum of Points and Authorities filed herewith, Defendants' Request for Judicial Notice, any additional briefing on the Motion (including Defendants' reply brief), the files and records of this case and the related cases centralized in this Multidistrict Litigation, and such argument as is presented to the Court at the hearing on this Motion.

/ /
/ /
/ /
/ /
/ /
/ /
/ /
/ /

---

[1]   Dkt 412-1.  Plaintiff's FAC also named Hyundai Motor Company ("HMC") and Kia Corporation ("KC") as defendants to maintain the same posture as other Governmental Entity plaintiffs in this Multidistrict Litigation.  *Id.*  On May 17, 2024 the parties stipulated to dismissing without prejudice the claims against HMC and KC, Dkt. 423, which the Court granted on May 21, 2024, Dkt. 426.

This Motion is made following the conference of counsel pursuant to L.R. 7-3, which took place on June 5, 2024.

DATED:  June 12, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Steven G. Madison*

Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ...................................................................................... 3

    A.   This Court Determined That A Prescription Of Specific Anti-Theft Technology Runs Afoul Of FMVSS 114 ................................... 3

    B.   Defendants' Vehicles Comply With Federal Law And NHTSA Has Found No Safety Defect Requiring A Recall ................................. 3

    C.   Social Media And Intervening Criminals Caused An Unprecedented Increase In Theft ................................................ 4

LEGAL STANDARD ............................................................................... 4

ARGUMENT ........................................................................................... 5

I.     PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW ............. 5

    A.   State Tort Claims That Frustrate FMVSS 114's Objective Of Flexibility Are Preempted ................................................ 5

    B.   Plaintiff's Claims Fail Federal Pleading Standards Because They Do Not Identify A Particular Defect, Apart From A Lack Of Immobilizers ................................................................. 7

II.    THE NJPLA SUBSUMES ALL OF PLAINTIFF'S CLAIMS ..................... 9

III.   PLAINTIFF'S COMMON LAW PUBLIC NUISANCE CLAIM ALSO FAILS BECAUSE DEFENDANTS NEITHER CREATED NOR CONTROL THE ALLEGED NUISANCE ................................................ 12

IV.   PLAINTIFF'S FRAUD AND NJCFA CLAIMS ARE INSUFFICIENTLY PLED FOR ADDITIONAL REASONS ........................ 15

    A.   Plaintiff's Claims Fail To Pass Muster Under Rule 9 .......................... 15

    B.   Plaintiff's Claims Are Impermissibly Based On The Public's Alleged Reliance ................................................................. 17

V.    PLAINTIFF'S UNJUST ENRICHMENT CLAIM ALSO FAILS BECAUSE DEFENDANTS HAVE NO INDEPENDENT DUTY TO PAY COSTS ASSUMED BY PLAINTIFF .............................................. 18

VI.   NEWARK MUNICIPAL NUISANCE CODE § 16:15 IS UNCONSTITUTIONALLY VAGUE ........................................................ 19

CONCLUSION ........................................................................................ 23

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Abbott v. Doctors Ridgik, Steinberg & Assocs., P.A.*,
609 F. Supp. 1216 (D.N.J. 1985) .......................................................... 19

*Arlandson v. Hartz Mountain Corp.*,
792 F. Supp. 2d 691 (D.N.J. 2011) ........................................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................... 4, 5, 7

*Bailey v. Wyeth, Inc.*,
37 A.3d 549 (N.J. Super. Ct. Law Div. 2008), *aff'd sub nom.*,
*DeBoard v. Wyeth, Inc.*, 28 A.3d 1245
(N.J. Super. Ct. App. Div. 2011) .......................................................... 10

*Behrens v. Amazon.com, Inc.*,
2023 WL 5985287 (D.N.J. Sept. 14, 2023)................................................. 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................... 4, 7

*Browning v. Am. Honda Motor Co.*,
549 F. Supp. 3d 996 (N.D. Cal. 2021)....................................................... 7

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*,
637 F.3d 1047 (9th Cir. 2011) ........................................................ 15, 16

*Callano v. Oakwood Park Homes Corp.*,
219 A.2d 332 (N.J. Super. Ct. App. Div. 1966)............................................. 18

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.*,
273 F.3d 536 (3d Cir. 2001) .......................................................... 12, 14

*Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*,
123 F. Supp. 2d 245 (D.N.J. 2000)............................................... 12, 13, 14, 15

*Farrales v. Ford Motor Co.*,
2022 WL 1239347 (N.D. Cal. Apr. 27, 2022)................................................. 8

*Frederico v. Home Depot*,
507 F.3d 188 (3d Cir. 2007) .......................................................... 16, 17

*Gade v. Nat. Solid Wastes Mgmt. Assn.*,
   505 U.S. 88 (1992) ...................................................5

*Geier v. Am. Honda Motor Co.*,
   529 U.S. 861 (2000) ............................................. 3, 5

*Grewal v. Purdue Pharma L.P.*,
   2018 WL 4829660 (N.J. Super. Ct. Ch. Div. Oct. 2, 2018) ..................... 10, 11

*Guidi v. Atl. City*,
   668 A.2d 1098 (N.J. Super. Ct. App. Div. 1996) .................. 19, 20, 21

*Indian Brand Farms v. Novartis Crop Prot., Inc.*,
   890 F. Supp. 2d 534 (D.N.J. 2012) ....................................9, 10

*Kaufman v. i-Stat Corp.*,
   754 A.2d 1188 (N.J. 2000) ................................................ 17

*Khoja v. Orexigen Therapeutics, Inc.*,
   899 F.3d 988 (9th Cir. 2018) ..............................................5

*Kolender v. Lawson*,
   461 U.S. 352 (1983) ................................................ 19, 20

*In re Lead Paint Litig.*,
   924 A.2d 484 (N.J. 2007) ...................... 9, 10, 12, 14, 17

*In re Lead Paint Litig.*,
   2005 WL 1994172 (N.J. Super. Ct. App. Div. Aug. 17, 2005).................. 17, 18

*In re Lead Paint Litig.*,
   2002 WL 31474528 (N.J. Super. Ct. Law Div. Nov. 4, 2002) ........................ 18

*Lemus v. Rite Aid Corp.*,
   613 F. Supp. 3d 1269 (C.D. Cal. 2022) ...............................5

*Levari Enterprises, LLC v. Kenworth Truck Co.*,
   2022 WL 248101 (D.N.J. Jan. 27, 2022) .......................... 10

*Lewis v. Lead Indus. Ass'n, Inc.*,
   793 N.E.2d 869 (Ill. App. 2003)........................................ 18

*Medford v. Eon Labs, Inc.*,
   2021 WL 5204035 (D.N.J. Nov. 9, 2021) ............................. 10

*N.J. Dep't of Env't Prot. v. Exxon Corp.*,
    376 A.2d 1339 (N.J. Super. Ct. Ch. Div. 1977) ........................................... 13, 14

*N.J. Dep't of Env't Prot. v. Larchmont Farms, Inc.*,
    628 A.2d 761 (N.J. Super. Ct. App. Div. 1993) ................................................. 19

*P.E.T.A. v. Whole Foods Mkt. Cal., Inc.*,
    2016 WL 362229 (N.D. Cal. Jan. 29, 2016) ................................................. 15, 16

*Pelayo v. Hyundai Motor Am., Inc.*,
    2021 WL 1808628 (C.D. Cal. May 5, 2021) ..................................................... 7, 8

*Priester v. Cromer*,
    736 S.E.2d 249 (S.C. 2012) ................................................................................. 6

*Raynaldo v. Am. Honda Motor Co.*,
    2022 WL 4358096 (N.D. Cal. Sept. 20, 2022) ..................................................... 7

*Roncal v. Aurobindo Pharma USA, Inc.*,
    2022 WL 1237888 (D.N.J. Apr. 27, 2022) ......................................................... 10

*Salameh v. Tarsadia Hotel*,
    726 F.3d 1124 (9th Cir. 2013) ............................................................... 15, 16, 17

*Sisolak v. Ford Motor Co.*,
    2019 WL 3503057 (D.N.J. July 31, 2019) ........................................................... 9

*Soliman v. Daimler AG*,
    2011 WL 4594313 (E.D.N.Y. Sept. 30, 2011) ..................................................... 6

*State v. Golin*,
    833 A.2d 660 (N.J. Super. Ct. App. Div. 2003) ..................................... 19, 20, 21

*Sun Chem. Corp. v. Fike Corp.*,
    235 A.3d 145 (N.J. 2020) .............................................................................. 9, 11

*Williamson v. Mazda Motor Am.*,
    562 U.S. 323 (2011) ..................................................................................... 3, 6, 7

*Zaza v. Marquess & Nell, Inc.*,
    675 A.2d 620 (N.J. 1996) ..................................................................................... 9

## Federal Regulations

49 C.F.R. § 571.114 ....................................................................3, 4, 5, 6, 7, 8

33 Fed. Reg. 6471 (Apr. 27, 1968) ........................................................... 3, 6

55 Fed. Reg. 21868 (May 30, 1990) ............................................................. 6

56 Fed. Reg. 12464 (Mar. 26, 1991) ........................................................ 3, 6

71 Fed. Reg. 17752 (Apr. 7, 2006) .......................................................... 3, 6

## Other Authorities

Atlantic City Code 190-1 ......................................................................... 20

Black's Law Dictionary (11th Ed. 2019)................................................... 22

East Windsor Ordinance 18-3.1 .......................................................... 20, 21

Federal Rule of Civil Procedure 9(b) ........................................... 2, 5, 15, 16

New Jersey Consumer Fraud Act .................................................. 2, 10, 11, 15, 17

New Jersey Product Liability Act........................................... 1, 2, 9, 10, 11

New Jersey Statutes §§ 26:3-45 *et seq.* ................................................... 22

Newark Municipal Code § 16:15...............................2, 11, 19, 20, 21, 22

Restatement (Second) of Torts § 834 (1979)............................................ 12

## **PRELIMINARY STATEMENT**

Rather than contest Defendants' motion to dismiss its complaint, Plaintiff City of Newark ("Plaintiff" or "Newark") filed a First Amended Complaint ("FAC").  The FAC seeks to avoid dismissal of all its claims based on preemption, which as this Court has found bars the imposition of state law tort liability based on the absence of engine immobilizers.  The amendments are woefully insufficient to salvage Newark's claims.  Appearing to use "cut and paste" word processing and instead of alleging that Defendants failed to install immobilizers, Newark now alleges that Defendants failed to install "immobilizers or other reasonable anti-theft technology."

The FAC also drops Newark's claim under the New Jersey Product Liability Act ("NJPLA"), a tacit admission that any other claims are subsumed by the NJPLA.  All of the FAC's claims are subsumed by the NJPLA whether or not Newark has brought such a claim, so this amendment is also ineffective.  As discussed in detail herein, the FAC should be dismissed with prejudice for the following reasons:

**First**, all of Plaintiff's claims are preempted by federal law.  As this Court held when dismissing the City of Chicago's complaint, Plaintiff may not impose state law tort liability on Defendants for distributing cars without immobilizers.  *See* Dkt. 334 at 6.  Adding vague allegations that Defendants' vehicles lacked immobilizers and other unspecified "reasonable anti-theft technology" plainly fails to satisfy federal pleading standards, and such allegations flatly contradict Plaintiff's other allegations.  The FAC still "definitively rests its claims [on] the allegation that Defendants failed to use engine immobilizers" and should be dismissed with prejudice.  *Id.*

**Second**, the NJPLA subsumes and requires dismissal of all of Plaintiff's claims.  New Jersey law is clear that where, as here, the "essential nature" of a claim is that of a traditional product liability action—including allegations of flawed product design and inadequate product warnings—the NJPLA is the sole remedy.  In dropping their NJPLA claim, Plaintiff "doth protesteth too much."  Because Newark's suit clearly

alleges product liability, the NJPLA subsumes all other claims, whether or not Plaintiff pleads an NJPLA claim.

**Third**, assuming *arguendo* Newark could overcome the federal preemption and NJPLA subsumption doctrines (they cannot), Plaintiff's common law public nuisance claim fails because where, as here, the independent actions of third parties caused the nuisance (which would not have existed but for that third-party conduct), New Jersey courts have held as a matter of law that only those who actually control or create the nuisance may be held liable.  Indeed, allegations that a defendant has control over a purported nuisance via their "design," "manufacture," or "distribution" of a lawful product, which third parties then misuse, have been squarely rejected by New Jersey courts, and likewise fail here.

**Fourth**, both of Plaintiff's fraud-based claims, at common law and under the New Jersey Consumer Fraud Act ("NJCFA"), are insufficiently pled because they rely on conclusory allegations that fall short of Federal Rule of Civil Procedure ("FRCP") 9(b)'s particularized pleading standard and because a municipality may not sue for fraud based on the allegation that its citizens or the general public relied on misrepresentations or omissions.

**Fifth**, Plaintiff's unjust enrichment claim fails because Plaintiff does not allege Defendants have a direct relationship with Plaintiff or any independent duty to shoulder costs assumed by Plaintiff, as is required for unjust enrichment under New Jersey law.

**Finally**, the statute relied upon for Plaintiff's statutory public nuisance claim (Newark Municipal Code § 16:15) is unconstitutionally vague under binding New Jersey case law and that claim falls away of its own weight for this additional infirmity.

For these reasons, and as demonstrated below, Plaintiff's FAC should be dismissed without leave to amend.

# BACKGROUND

**A.     This Court Determined That A Prescription Of Specific Anti-Theft Technology Runs Afoul Of FMVSS 114**

Neither Federal Motor Vehicle Safety Standard ("FMVSS") 114 nor any federal law or regulation has ever mandated installation of engine immobilizers. *See* 49 C.F.R. § 571.114. Rather, the U.S. Department of Transportation's National Highway Traffic Safety Administration's ("NHTSA") position has been that a flexible performance standard best protects against vehicle theft. *See, e.g.*, 56 Fed. Reg. 12464 (Mar. 26, 1991) (amending FMVSS 114 in 1991 and 1992 to "provide manufacturers with greater flexibility in designing" their locking and transmission systems to meet the performance standard); 71 Fed. Reg. 17752, 17753 (Apr. 7, 2006); 33 Fed. Reg. 6471, 6472 (Apr. 27, 1968).

In keeping with NHTSA's objective of flexibility, this Court dismissed claims against Defendants brought by the City of Chicago that attempted to impose upon Defendants a rigid duty to use engine immobilizers. Dkt. 334 at 6. This Court held that this "specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement." *Id.*; *see also Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 881–82 (2000); *Williamson v. Mazda Motor Am.*, 562 U.S. 323, 330 (2011).

**B.     Defendants' Vehicles Comply With Federal Law And NHTSA Has Found No Safety Defect Requiring A Recall**

On April 20, 2023, 18 state Attorneys General—including the New Jersey Attorney General—wrote to NHTSA (the "State AGs' Recall Request") asking the agency to:

> use its authority to institute a recall of unsafe Hyundai and Kia vehicles manufactured between 2011 and 2022 whose easily-bypassed ignition switches and lack of engine immobilizers make them particularly vulnerable to theft.

RJN Ex. 1 at 1 (cited at FAC ¶ 69).  Plaintiff fails to mention NHTSA's response, in which the agency unequivocally rejected the State AGs' Recall Request, and their contention that the lack of immobilizers in Defendants' vehicles violates FMVSS:

> At this time, NHTSA has not determined that this issue constitutes either a safety defect or noncompliance requiring a recall…FMVSS No. 114, does not require an engine immobilizer.

RJN Ex. 2 at 2.  NHTSA added, "[h]ere, the safety risk arises from unsafe use of a motor vehicle by an unauthorized person after taking significant destructive actions to parts of the vehicle."  *Id.*

## C.   Social Media And Intervening Criminals Caused An Unprecedented Increase In Theft

The FAC includes no allegations that, *before* mid-2021, either the general public or Defendants were aware of the multi-step process required to steal Defendants' vehicles (a procedure the Kia Boyz promoted on social media, *see* RJN Ex. 3), or that Defendants' vehicles were stolen at higher rates relative to other manufacturers or distributors, *see* FAC ¶ 73.  Rather, Plaintiff alleges Defendants' vehicles constituted only 11% of vehicle thefts in Newark in 2022.  *See id.* ¶ 58.

Even according to Plaintiff's allegations, the unprecedented increase in thefts began in Newark in 2023, *id.* ¶¶ 59–60, over a decade after Defendants started manufacturing and selling the vehicles at issue, *id.* ¶ 2.  And the theft wave has been spurred on by a social media challenge in which thieves "post[] their methods on Tik Tok and other popular social media platforms."  *See* RJN Ex. 4.

## LEGAL STANDARD

"[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* (citation omitted).  Rather, the plaintiff must "allege

more by way of factual content to nudge his claim" of unlawful action "across the line from conceivable to plausible."  *Id.* at 683 (cleaned up) (citation omitted).

FRCP 9(b) imposes a heightened pleading standard for claims sounding in fraud.  *Lemus v. Rite Aid Corp.*, 613 F. Supp. 3d 1269, 1278–79 (C.D. Cal. 2022).  An allegation of fraud "must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).

In ruling on a motion to dismiss, a court may consider: (1) all material within the pleadings; (2) documents incorporated into the complaint by reference; and (3) matters of which a court may take judicial notice.  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018).

## ARGUMENT

## I.   PLAINTIFF'S CLAIMS ARE PREEMPTED BY FEDERAL LAW

In response to Defendants' motion to dismiss, and in an effort to circumvent dismissal of its claims on preemption grounds, Plaintiff filed an amended complaint and replaced almost every reference to "immobilizers" with "immobilizers or other reasonable anti-theft technology," or some variation thereof.  *See, e.g.*, FAC ¶¶ 2, 50, 79, 83–84, 111.  As discussed below, these vague and formulaic recitals fail to satisfy federal pleading standards.  Plaintiff therefore still "definitively rests its claims [on] the allegation that Defendants failed to use engine immobilizers," and the FAC should thus be dismissed with prejudice.  Dkt. 334 at 6.

### A.   State Tort Claims That Frustrate FMVSS 114's Objective Of Flexibility Are Preempted

Federal law preempts state law that "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."  *Gade v. Nat. Solid Wastes Mgmt. Assn.*, 505 U.S. 88, 98 (1992) (citation omitted).  That includes state tort rules that "impose legal duties" that "conflict directly with federal regulatory mandates."  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 871, 881–82 (2000).  Federal regulations carry out statutory commands, and so preempt

any tort claim that would frustrate a "significant objective of [a] federal regulation." *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011) (federal regulations giving manufacturers options for compliance preempt state rules restricting those options when, as in *Geier*, flexibility is a "significant objective" of the regulation); *see also Priester v. Cromer*, 736 S.E.2d 249, 260 (S.C. 2012); *Soliman v. Daimler AG*, 2011 WL 4594313, at \*5 (E.D.N.Y. Sept. 30, 2011).

As this Court found when it dismissed the City of Chicago's complaint, flexibility is a significant objective of FMVSS 114. *See generally* Dkt. 334.  FMVSS 114 does not prescribe a particular anti-theft technology, but instead mandates that a vehicle's starting system prevent (1) "normal activation" of the engine and (2) "steering, or forward self-mobility" when the key is removed.  *See* 49 C.F.R. § 571.114 S5.1.1.  *Any* technology meeting these performance requirements satisfies FMVSS 114.  NHTSA's Test Procedures for FMVSS 114, which the agency uses to verify compliance, underscore the standard's flexibility.  By testing compliance using objective criteria, such as whether the car engine starts or steering wheel can rotate when the key is removed, the Test Procedures contemplate that a range of technologies may satisfy FMVSS 114.  RJN Ex. 5 at 17.

NHTSA's decision to let manufacturers select among different theft prevention technologies is not merely an afterthought, but a significant regulatory objective that has been repeatedly reaffirmed.  *See*, *e.g.*, 33 Fed. Reg. 6471, 6472 (Apr. 27, 1968) ("the standard has been framed to permit as many specific devices as possible to meet its requirements"); 55 Fed. Reg. 21868, 21869, 21871–72 (May 30, 1990) (expanding rule to identify alternative mechanisms of compliance due to concerns that proposed changes "would…improperly restrict design flexibility"); 56 Fed. Reg. 12464 (Mar. 26, 1991) (amending rule to "provide manufacturers with greater flexibility in designing" their locking and transmission systems to meet the performance standard); 71 Fed. Reg. 17752, 17753 (Apr. 7, 2006) (broadening the standard because the existing rule used "terminology that was unnecessarily design-restrictive").

Because flexibility and the innovation it drives have always been "significant objective[s]" of NHTSA's theft-prevention regulation, *Williamson*, 562 U.S. at 330, FMVSS 114 preempts state tort duties that would undercut that flexibility, eliminate manufacturer choice, and impose rigid technological mandates NHTSA has rejected. Recognizing this principle, this Court dismissed the City of Chicago's complaint, which sought to require Defendants to install immobilizers, finding that this "specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement."  Dkt. 334 at 6.

**B.**    **Plaintiff's Claims Fail Federal Pleading Standards Because They Do Not Identify A Particular Defect, Apart From A Lack Of Immobilizers**

Plaintiff's vague and formulaic references to "other reasonable anti-theft technology" cannot serve as the basis for its claims against Defendants because such allegations fail to identify any defect and thus do not satisfy federal pleading standards.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570; *see also, e.g.*, *Raynaldo v. Am. Honda Motor Co.*, 2022 WL 4358096, at *4–6 (N.D. Cal. Sept. 20, 2022) (dismissing claims for failure to identify specific defect with vehicle's electrical systems).

For product liability claims, "a complaint gives fair notice to the defendant of a defect if it (1) identifies the particular part or system affected by the defect, and (2) describes the problems allegedly caused by the defect."  *Raynaldo*, 2022 WL 4358096, at *4.  Courts consistently apply this standard to dismiss automobile defect claims which fail to identify the allegedly defective part or system.  *See, e.g.*, *id.* at *4–6; *Browning v. Am. Honda Motor Co.*, 549 F. Supp. 3d 996, 1006 (N.D. Cal. 2021) (identification of "transmission defect" is inadequate notice); *Pelayo v. Hyundai Motor Am., Inc.*, 2021 WL 1808628, at *5 (C.D. Cal. May 5, 2021) ("Plaintiffs' theory that Defendants…failed to prevent *some* defect in the Gamma Engines is…insufficient notice of what defect is at issue…[T]he FAC describes only the

*effects* of the alleged defect, which is insufficient."); *Farrales v. Ford Motor Co.*, 2022 WL 1239347, at *6 (N.D. Cal. Apr. 27, 2022) (suggestion that defect may involve "engine cooling system" is inadequate notice).

Plaintiff's allegations do not give fair notice to Defendants.  Other than the vehicles' alleged omission of immobilizers, the FAC does not identify *any* particular alleged defective vehicle part or system, or explain how the defect caused a foreseeable wave of thefts in Newark.  In fact, Plaintiff's allegations indicate that Defendants' vehicles *are* equipped with anti-theft technology NHTSA finds reasonable.  The FAC describes FMVSS 114 as "requir[ing] automobile manufacturers to include *reasonable anti-theft technology*, such as engine immobilizers for example, to make it harder for would-be thieves to steal cars."  FAC ¶ 51 (emphasis added).  Plaintiff does not allege Defendants' vehicles violate FMVSS 114; indeed, Plaintiff *removed* such allegations when it filed the FAC, *see* Compl., No. 2:24-cv-00245-ES-LDW, ¶ 21 (D.N.J. filed Jan. 16, 2024), and NHTSA reviewed this matter and did not find that the vehicles failed to comply with FMVSS 114, *see supra* Background, Section  B; RJN Ex. 2 at 2.  Thus, according to Plaintiff's own allegations, Defendants' vehicles include "reasonable anti-theft technology"—just not *immobilizers specifically*.

In sum, state tort law cannot be used to impose a universal mandate to use a single anti-theft technology (*i.e.*, immobilizers) because federal regulators have for decades strived to safeguard design flexibility.  Plaintiff's vague claim that Defendants' vehicles lack "reasonable anti-theft technology" does not provide Defendants adequate notice of what other supposed defect is at issue and is contradicted by Plaintiff's own allegations, such that the FAC still "definitively rests its claims [on] the allegation that Defendants failed to use engine immobilizers." Dkt. 334 at 6.  Accordingly, as this Court held when dismissing the City of Chicago's complaint, *id.*, all of Plaintiff's claims should be dismissed as preempted.

## II.    THE NJPLA SUBSUMES ALL OF PLAINTIFF'S CLAIMS

Assuming *arguendo* that Plaintiff's claims are not preempted, the NJPLA subsumes them whether or not an NJPLA claim is pled.  In enacting the NJPLA, the New Jersey Legislature sought "to limit the expansion of products-liability law," specifically by "limit[ing] the liability of manufacturers so as to balance the interests of the public and the individual with a view towards economic reality." *Zaza v. Marquess & Nell, Inc.*, 675 A.2d 620, 627 (N.J. 1996) (cleaned up) (citation omitted).  To determine whether claims are subsumed by the NJPLA, New Jersey courts look to whether the "essential nature" of the claims is that of "a traditional product liability action." *Indian Brand Farms v. Novartis Crop Prot., Inc.*, 890 F. Supp. 2d 534, 544, 547 (D.N.J. 2012); *see also In re Lead Paint Litig.*, 924 A.2d 484, 503 (N.J. 2007) (finding that the "essential nature" of plaintiffs' fraud and public nuisance claims "sound[s] in products liability").  In short, "[i]f a claim is premised upon a product's manufacturing, warning, or design defect, that claim must be brought under the [NJ]PLA with damages limited to those available under that statute; [NJ]CFA claims for the same conduct are precluded." *Sun Chem. Corp. v. Fike Corp.*, 235 A.3d 145, 155 (N.J. 2020); *see also Sisolak v. Ford Motor Co.*, 2019 WL 3503057, at *4 (D.N.J. July 31, 2019) ("if the facts of a case suggest that the claim is about defective manufacture, flawed product design, or failure to give an adequate warning, then the [NJ]PLA governs and the other claims are subsumed") (citation omitted).

In *Lead Paint*, 26 municipalities (including the City of Newark) filed complaints against lead paint manufacturers and distributors for, *inter alia*, public nuisance, seeking to recover the costs of detecting and removing lead paint from buildings, providing medical care to affected residents, and developing education programs about the dangers of lead paint. *In re Lead Paint*, 924 A.2d at 487.  The New Jersey Supreme Court ordered dismissal of the cities' public nuisance claims, in part because the NJPLA subsumed them. *Id.* at 505.  The court considered first that "the paint products distributed or sold by defendants were intended to be used by

consumers" and "the harms plaintiffs seek to vindicate" include "physical damage to property, personal physical illness or injury, and the like." *Id.* at 503 (cleaned up). The court then clarified, "[w]ere there any doubt" about whether the plaintiffs' claims sounded in products liability, "a careful reading would demonstrate" that "[t]he central focus of plaintiffs' complaints is that defendants were aware of dangers associated with lead…and failed to warn of those dangers." *Id.*  The court explained that "[t]his classic articulation of tort law duties, that is, to warn of or to make safe, is squarely within the theories included in the PLA." *Id.*

Following *Lead Paint*, New Jersey courts have consistently found the NJPLA to subsume—and therefore require dismissal of—common law, statutory, and equitable claims that sound in products liability.  *See Roncal v. Aurobindo Pharma USA, Inc.*, 2022 WL 1237888, at *4 (D.N.J. Apr. 27, 2022) ("[N]otwithstanding Plaintiffs' attempt to shoehorn their allegations into other causes of action, it is clear that Plaintiffs' negligence and fraud claims…sound in products liability causes of action and must be dismissed") (cleaned up) (citation omitted); *Levari Enterprises, LLC v. Kenworth Truck Co.*, 2022 WL 248101, at *2–3 (D.N.J. Jan. 27, 2022) (negligence, implied warranty, and NJCFA claims subsumed even though the complaint included "boilerplate language that [defendant] 'affirmatively misrepresented' the quality of the trucks"); *Behrens v. Amazon.com, Inc.*, 2023 WL 5985287, at *3 (D.N.J. Sept. 14, 2023) (negligence and implied warranty claims subsumed where plaintiff did not plead conduct "unrelated to any alleged inherent defect"); *Medford v. Eon Labs, Inc.*, 2021 WL 5204035, at *3 n.3 (D.N.J. Nov. 9, 2021) (negligence and NJCFA claims subsumed); *see also Bailey v. Wyeth, Inc.*, 37 A.3d 549, 582–83 (N.J. Super. Ct. Law Div. 2008) (NJCFA and common law misrepresentation claims), *aff'd sub nom.*, *DeBoard v. Wyeth, Inc.*, 28 A.3d 1245 (N.J. Super. Ct. App. Div. 2011); *Novartis*, 890 F. Supp. 2d at 547–48 (same); *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 703–04 (D.N.J. 2011) (unjust enrichment, NJCFA, and breach of implied warranty claims); *Grewal v. Purdue*

*Pharma L.P.*, 2018 WL 4829660, at \*17 (N.J. Super. Ct. Ch. Div. Oct. 2, 2018) (public nuisance claim).

All of Plaintiff's claims are "premised upon a product's manufacturing, warning, or design defect," *Sun Chem. Corp.*, 235 A.3d at 155, and should be dismissed. *See, e.g.*, FAC ¶ 83 (first cause of action—common law public nuisance) ("Defendants created…a public nuisance when they intentionally…designed, manufactured, marketed, sold, and distributed unsafe vehicles"), ¶ 106 (second cause of action—negligence) ("Defendants had a duty to exercise ordinary care and/or reasonable care in the design, research, development, manufacture, testing, and distribution of their vehicles…including a duty to exercise care to assure that the vehicles were safe."), ¶ 122 (third cause of action—fraud) ("Having been aware that its vehicles lacked the basic industry-standard anti-theft features present in other competing vehicles, Defendants had a duty to disclose that fact"), ¶ 128 (fourth cause of action—unjust enrichment) ("As an expected and intended result of their conscious wrongdoing as set forth in this Complaint, Defendants have profited and benefited from the cost-savings realized in failing to equip their vehicles with reasonable anti-theft measures."), ¶ 141 (fifth cause of action—NJCFA) ("Defendants intentionally suppressed the fact that their cars' anti-theft technology was not comparable to conventional industry standards or reasonable under the circumstances"), ¶ 146 (sixth cause of action—statutory public nuisance) ("Defendants' conduct…in designing, manufacturing, selling, distributing, and refusing to fix the vehicles at issue constitutes a public nuisance pursuant to Newark Municipal code 16:15.").

Because the essential nature of Plaintiff's claims sounds in traditional product liability, Plaintiff's claims should be dismissed as subsumed under the NJPLA.

/ /

/ /

/ /

/ /

### III.   PLAINTIFF'S COMMON LAW PUBLIC NUISANCE CLAIM ALSO FAILS BECAUSE DEFENDANTS NEITHER CREATED NOR CONTROL THE ALLEGED NUISANCE

Plaintiff's common law public nuisance claim remains fatally defective because it does not plausibly allege that Defendants created or have control over the purported nuisance.

An alleged public nuisance is actionable if a defendant participates "to a substantial extent in carrying [the nuisance] on" or "exert[s] a certain degree of control over its source." *Camden Cnty. Bd. of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 265–67 (D.N.J. 2000) (quoting Restatement (Second) of Torts § 834 (1979)) (granting motion to dismiss public nuisance claim because defendant gun manufacturers did not "endorse[] or condone[]," and therefore did not control, the nuisance), *aff'd*, 273 F.3d 536 (3d Cir. 2001); *Camden Cnty. Bd. of Chosen Freeholders v. Beretta, U.S.A. Corp.,* 273 F.3d 536, 539, 541 (3d Cir. 2001) ("Even if public nuisance law could be stretched far enough to encompass the lawful distribution of lawful products, the County has failed to allege that the manufacturers exercise sufficient control over the source of the interference with the public right."); *see also In re Lead Paint*, 924 A.2d at 501–02 (dismissing public nuisance claim for failure to state a claim where lead paint manufacturers and distributors did not have sufficient control over plaintiffs' poorly maintained premises).

Under New Jersey law, the requisite "control" is not satisfied simply where the defendants were allegedly designers, manufacturers, or distributers of a product that was eventually linked to an alleged public nuisance due to the acts of a third party. *See Camden Cnty.,* 123 F. Supp. 2d at 267 (alleged manufacturing and distributing guns does not constitute "control" over the criminal gun market); *In re Lead Paint*, 924 A.2d at 501–02 (alleged manufacturers and distributors of lead paint did not exert sufficient control over the public nuisance that resulted from landlords' subsequent negligent use of their product). Rather, if a nuisance caused by intervening third-party

conduct cannot be linked to a manufacturer or distributor defendant's conduct "by further control or substantial participation," then as a matter of law "there simply is not a sufficient nexus between the defendants' conduct and the alleged injury," and the claim should be dismissed.  *Camden Cnty.*, 123 F. Supp. 2d at 267.  Public nuisance "does not sweep so broadly as to impose liability on manufacturers of a legal product, who follow relevant regulations, and who do not control or participate in irresponsible secondary and tertiary acts that are more directly responsible for the end harm."  *Id.*

In *Camden County*, the County alleged that various gun manufacturers recklessly and negligently marketed and distributed guns, facilitated straw purchases and the creation of a criminal market for guns, and failed to monitor or supervise their distributors.  *Id.* at 250–51.  In connection with its public nuisance claim, the County further asserted that the manufacturers' conduct—the creation and implementation of gun distribution and marketing policies—endangered public safety, health, and peace.  *Id.* at 251–52.  In dismissing the public nuisance claim, the court found that the County had failed to plausibly allege the gun manufacturers exercised control over, or "endorsed or condoned the alleged end result of their marketing policies, which is the criminal gun market in Camden."  *Id.* at 266–67.

Further, the court concluded that "the defendants' allegedly wrongful conduct…could *never* ripen into a public nuisance absent the conduct of third parties…*i.e.*, criminals."  *Id.* at 266.  "[D]efendants have no duty to control the misconduct of third parties" and are not liable for conduct that they themselves did not "control or participate in."  *Id.* at 266–67.  Thus, "the defendant must have a tangible role in creating and carrying out the nuisance" in order for liability to reach him.  *Id.*  The *Camden County* court held that, "[w]here the acts of independent, third parties are the cause of the nuisance, parties that have neither controlled nor created the nuisance should not be held responsible."  *Id.* at 267; *see also N.J. Dep't of Env't Prot. v. Exxon Corp.*, 376 A.2d 1339, 1343–44, 1350 (N.J. Super. Ct. Ch. Div. 1977)

1  (dismissing public nuisance claim where the escape of petroleum into waters
2  "occur[red] without the intervention of [defendant]"); *Camden Cnty.*, 273 F.3d at 541
3  ("If independent third parties cause the nuisance, parties that have not controlled or
4  created the nuisance are not liable.").   Both the district court and Third Circuit in
5  *Camden County* refused the County's attempt "to extend the limits of public nuisance
6  law so far as to eliminate the requirement that the defendants control or participate in
7  the harm to be abated."  123 F. Supp. 2d at 267; 273 F.3d at 540–42.

8       Similarly, in *In re Lead Paint Litigation*, the New Jersey Supreme Court held
9  that lead paint manufacturers did not create or control a public nuisance consisting of
10  health harms from residential lead paint because "the conduct that has given rise to
11  the public health crisis is…poor maintenance of premises where lead paint may be
12  found by the owners of those premises."  924 A.2d at 501.  The court added that
13  imposing nuisance liability on the manufacturers would make "the conduct of merely
14  offering an everyday household product for sale…suffice for the purpose of
15  interfering with a common right."  *Id.*  "Such an interpretation would far exceed any
16  cognizable cause of action."  *Id.*

17       Like the plaintiffs in *Camden County* and *In re Lead Paint*, Newark attempts
18  to stretch public nuisance law to hold manufacturers liable for "irresponsible
19  secondary and tertiary acts that are more directly responsible for the end harm" that
20  Plaintiff alleges.  *Camden Cnty.*, 123 F. Supp. 2d at 267.  Here, Plaintiff claims in a
21  conclusory manner that "Defendants created…and maintained a public nuisance
22  when they…designed, manufactured, marketed, sold, and distributed unsafe vehicles
23  that were statistically more vulnerable to theft without an engine immobilizer or other
24  reasonable anti-theft technology."  FAC ¶ 83; *see also id.* ¶ 91 ("Defendants had
25  control over the design and manufacture of the Susceptible Vehicles and their
26  shipping of automobiles to Newark.  Defendants continued to maintain control over
27  the conduct through the ability, and failure, to provide the Susceptible Vehicles,
28  initially or retroactively, with reasonable anti-theft technology.").   But these

allegations—which merely point to Defendants "design[ing]," "manufactur[ing]," and "distribut[ing]" certain vehicle models without immobilizers—are insufficient as a matter of law to plausibly allege the requisite control under New Jersey law.  *See, e.g., Camden Cnty.,* 123 F. Supp. 2d at 267.

The Kia Boyz social media craze encouraged car thieves, over whom Defendants have no control, to steal vehicles.  Just as the criminal misuse of guns in *Camden County* would not have occurred "absent the conduct of third parties…*i.e.*, criminals," *id.* at 266, so too the vehicle theft wave here would not have occurred but for the conduct of third-party criminals.  Defendants' alleged actions—manufacturing and distributing vehicles—"could *never* ripen into a public nuisance absent the conduct of third parties…*i.e.*, criminals." *Id.*  Not to mention that Plaintiff alleges Defendants have made extensive efforts to prevent vehicle thefts.  *See, e.g.*, FAC ¶¶ 75–76.

Because the "acts of independent, third parties are the cause of the nuisance, [Defendants, who] have neither controlled nor created the nuisance should not be held responsible." 123 F. Supp. 2d at 267.  The Court should dismiss the public nuisance claim.

## IV.   PLAINTIFF'S FRAUD AND NJCFA CLAIMS ARE INSUFFICIENTLY PLED FOR ADDITIONAL REASONS

### A.   Plaintiff's Claims Fail To Pass Muster Under Rule 9

Because Plaintiff fails to even approach the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), its common law fraud and NJCFA claims must be dismissed.

FRCP 9(b), which applies to both of Plaintiff's fraud-based claims, requires a plaintiff to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055

1    (9th Cir. 2011)); *see also P.E.T.A. v. Whole Foods Mkt. Cal., Inc.*, 2016 WL 362229,

2    at *4 (N.D. Cal. Jan. 29, 2016) (same); *Frederico v. Home Depot*, 507 F.3d 188, 200–

3    01 (3d Cir. 2007) (similar).

4          Plaintiff's allegations lack *any* particularity whatsoever.  Plaintiff alleges only

5    that Defendants represented to "Plaintiff and its citizens that their cars were safe,"

6    FAC ¶¶ 121, 140, and that "Defendants intentionally suppressed the fact that their

7    cars' anti-theft technology was not comparable to conventional industry standards,"

8    *id*. ¶¶ 124, 141.  While Defendants would contest the veracity of these allegations at

9    the appropriate time, even accepting the allegations *arguendo*, Plaintiff does not

10   specify *how* Defendants supposedly suppressed information regarding their vehicles'

11   anti-theft technology.  Plaintiff does not allege the date, time, or place of the alleged

12   fraud.  Nor does Plaintiff specify the publication or statement in which Defendants

13   allegedly made a misrepresentation (or omission), what the specific misrepresentation

14   (or omission) was, or the recipients thereof.  These bare-bone, conclusory allegations

15   fail to satisfy the Rule 9(b) pleading standard.

16         For example, in *P.E.T.A.*, plaintiffs argued that their fraud claims were alleged

17   with sufficient particularity because they purported to identify "the who (Whole

18   Foods), the what (misrepresentations regarding superior animal treatment and

19   omission that standards are not enforced or a meaningful improvement), the when

20   (since four years prior to the complaint being filed and throughout the class period),

21   the where (in-store signs, placards, and napkins), and the how (misrepresentations and

22   omissions resulting in premium payments that would not have otherwise been made)."

23   2016 WL 362229, at *4.  The *P.E.T.A.* court rejected plaintiffs' argument and

24   dismissed their complaint because "[t]his type of allegation, which identifies a general

25   sort of fraudulent conduct but specifies no particular circumstances of any discrete

26   fraudulent statement, is precisely what Rule 9(b) aims to preclude."  *Id.* (quoting

27   *Cafasso*, 637 F.3d at 1057); *see also, e.g.*, *Salameh*, 726 F.3d at 1133 ("Plaintiffs'

28   common-law fraud allegations fall short of Rule 9(b)'s standard because they do not

identify when Defendants made the representations that Plaintiffs purport to be false."); *Frederico*, 507 F.3d at 200–01 (affirming dismissal where "[n]one of these broad statements disclose…the substance of the misrepresentation" let alone its time and place or the identity of the speaker).

For these additional reasons, Plaintiff's common law fraud and NJCFA claims should be dismissed.

**B.      Plaintiff's Claims Are Impermissibly Based On The Public's Alleged Reliance**

Even assuming *arguendo* that Plaintiff sufficiently alleged that Defendants made material misrepresentations or omissions, Plaintiff cannot state a claim for common law fraud or under the NJCFA based on the allegation that its citizens or the general public relied on those alleged representations or omissions. *See, e.g.*, *In re Lead Paint Litig.*, 2005 WL 1994172, at *19 (N.J. Super. Ct. App. Div. Aug. 17, 2005), *rev'd on other grounds*, 924 A.2d 484 (affirming dismissal of fraud claim because plaintiff alleged only that "the public" was misled by defendants' statements and did not "plead that they—as individual municipalities—received, whether directly or indirectly, any of defendants' alleged misrepresentations, or that they relied on them in any way"); *Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1195–96 (N.J. 2000) (rejecting fraud on the market theory for reliance element and finding that "[t]he actual receipt and consideration of any misstatement remains central to the case of any plaintiff seeking to prove that he or she was deceived by the misstatement or omission.").

In support of its common law fraud claim, Plaintiff alleges in a conclusory manner that Defendants made representations and/or omissions "to Plaintiff and its citizens," FAC ¶ 121, but Plaintiff does not allege who from the municipality allegedly received the misrepresentations or omissions, and only alleges that "the public, including citizens of Newark, reasonably relied on Defendants' misrepresentations and omissions," *id.* ¶ 125. Likewise, to support its NJCFA claim,

Plaintiff alleges only that it was damaged by "Defendants' fraud on its consumers," not fraud against Plaintiff.  *See id.* ¶¶ 142–43.  Accordingly, these allegations fail to state cognizable claims under New Jersey law, and Plaintiff's fraud-based claims should therefore be dismissed.

## V.  PLAINTIFF'S UNJUST ENRICHMENT CLAIM ALSO FAILS BECAUSE DEFENDANTS HAVE NO INDEPENDENT DUTY TO PAY COSTS ASSUMED BY PLAINTIFF

Defendants have no duty to pay the costs borne by Plaintiff, as required for Plaintiff's unjust enrichment claim.  Because the doctrine of unjust enrichment is "an element of quasi-*contractual* liability," *In re Lead Paint*, 2005 WL 1994172, at *14 (emphasis added), New Jersey law traditionally has required "some direct relationship between the parties."  *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 335 (N.J. Super. Ct. App. Div. 1966).  Plaintiff has alleged none here.

In *Lead Paint*, plaintiff municipalities argued that "defendants' creation of the public nuisance caused plaintiffs to spend money to abate the nuisance."  2005 WL 1994172, at *15.  In affirming the trial court's dismissal of the unjust enrichment claims, the appellate court noted "there must be some independent basis which establishes a duty on the part of the defendant to act."  *Id.* at *16 (quoting *Lewis v. Lead Indus. Ass'n, Inc.*, 793 N.E.2d 869, 877 (Ill. App. 2003)).  A claim for unjust enrichment "involves a direct relationship between the parties," but no such relationship existed between the local government entities and the manufacturers and promoters of lead paint.  *In re Lead Paint Litig.*, 2002 WL 31474528, at *22 (N.J. Super. Ct. Law Div. Nov. 4, 2002).  Accordingly, the plaintiffs' "unjust-enrichment theory provide[d] them no added basis for recovery."  *In re Lead Paint*, 2005 WL 1994172, at *16.

Given almost identical contentions here—that Plaintiff paid for municipal services allegedly made necessary by Defendants' vehicles, *see, e.g.*, FAC ¶¶ 130, 131—and the similar lack of any alleged direct or contractual relationship whatsoever

Case No. 8:22-ML-3052-JVS-(KESx)
NOTICE OF AND MOTION TO DISMISS FAC

between Plaintiff and Defendants, Plaintiff's unjust enrichment claim should be dismissed.

## VI.   NEWARK   MUNICIPAL   NUISANCE   CODE   §   16:15   IS UNCONSTITUTIONALLY VAGUE

Plaintiff asserts Defendants violate NMC § 16:15, a penal ordinance that prohibits various activities (none of which relate to automobiles) as nuisances. Plaintiff relies specifically on NMC §§ 16:15-1(a)(14) and (15), which prohibit causing, maintaining, or permitting, "[a]ny matter, thing, condition or act" which is or may become (1) "detrimental or a menace to the health of the inhabitants of this municipality," or (2) "an annoyance, or interfere with the comfort or general well-being of the inhabitants of this municipality."  Plaintiff's claim fails because NMC § 16:15 contains language identical to other statutory provisions which New Jersey courts have twice invalidated for being unconstitutional. *See State v. Golin*, 833 A.2d 660, 663–66 (N.J. Super. Ct. App. Div. 2003); *Guidi v. Atl. City*, 668 A.2d 1098, 1098–99 (N.J. Super. Ct. App. Div. 1996).

NMC § 16:15 is a penal statute and must be strictly construed.  New Jersey defines a penal statute as "one which imposes punishment for an offense against the state as compared to a wrong against an individual."  *N.J. Dep't of Env't Prot. v. Larchmont Farms, Inc.*, 628 A.2d 761, 770 (N.J. Super. Ct. App. Div. 1993) (holding that the Pesticide Control Act of 1971 is penal in nature because of its design to penalize those who perpetrate a public wrong—harm to the environment) (quoting *Abbott v. Doctors Ridgik, Steinberg & Assocs., P.A.*, 609 F. Supp. 1216, 1218 (D.N.J. 1985)).  NMC § 16:15 seeks to punish for conduct perpetrated against the public rather than an individual, and provides for no private right of action.  *See* NMC §§ 16:15-1(a)(14)–(15) (prohibiting public nuisance impacting "health" and "comfort or general well-being" of "the inhabitants of this municipality").  And "[t]o withstand a void-for-vagueness challenge, a penal ordinance must define the offense 'with sufficient definiteness [such] that ordinary people can understand what conduct is

prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.'" *Golin*, 833 A.2d at 665 (quoting *Kolender v. Lawson*, 461 U.S. 352, 357 (1983)).

New Jersey courts have held that language identical to that of NMC §§ 16:15-1(a)(14) and (15) violates due process and is therefore unconstitutional.  In *Guidi v. City of Atlantic City*, a New Jersey court strictly construed and struck down a penal provision of the Atlantic City Code mirroring NMC § 16:15-1(a)(15).[2]  668 A.2d at 1098–99.  There, the defendant was charged under Atlantic City Code 190-1 for "[f]eeding [] birds resulting in heavy accumulations of bird feces" in public areas, thereby "interfering with comfort and general well-being of residents." *Id.* at 1098.  The court struck down this provision for unconstitutional vagueness because it "subject[ed] a defendant to an unascertainable standard" and did not "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Id.* at 1098–99 (citation omitted).  Ultimately, the court noted that "[a] violation of an ordinance should not depend upon which enforcement officer, or for that matter which judge, happens to be considering the actor's conduct." *Id.* at 1099 (internal quotation marks and citation omitted).

Similarly, in *Golin*, a New Jersey court held that two statutory provisions that mirror NMC §§ 16:15-1(a)(14) and (15) were unconstitutionally vague. 833 A.2d at 665.  There, the defendant was convicted of violating, and required to pay fines under, two penal provisions of East Windsor Ordinance 18-3.1, Sections 2.1(a) and 2.1(b), for allowing tree branches on her property to overhang and obstruct a public

---

[2]   Atlantic City Code 190-1 § 2.1(b) prohibited "[a]ny matter, thing, condition or act which is or may become an annoyance, or interfere with the comfort or general well-being of the inhabitants of this municipality."  668 A.2d at 1098.  Although the plaintiff in *Guidi* also charged the defendant with violating Section 2.1(a), which mirrors the language of NMC § 16:15-1(a)(14), the plaintiff only challenged (and thus the court only addressed) the unconstitutionality of Section 2.1(b).  *Id.*

sidewalk.[3]  *Id.* at 662–63.  But the court there echoed the *Guidi* decision, noting that there was "no reason that the municipality [could not] enact a more specific ordinance to proscribe the objectionable conduct."  *Id.* at 666.  The court held that "there [was] no discernable difference between the[] two provisions" because "[t]hey both contain identical, vague language referring to 'any matter, thing, condition or act'" and "[b]oth set forth unascertainable standards that encourage arbitrary and discriminatory enforcement."  *Id.* at 665–66.

Here, Plaintiff relies on the same overly broad and vague statutory penal language deemed unconstitutionally vague by the *Guidi* and *Golin* courts.  Neither NMC § 16:15-1(a)(14) nor NMC § 16:15-1(a)(15)—both of which contain identical, vague references to "[a]ny matter, thing, condition or act"—provide "sufficient definiteness" such that an ordinary person could understand what conduct is prohibited.  *Id.* at 665.  In fact, nothing in NMC § 16:15-1, which prescribes fifteen categories of prohibited conduct, relates to automobiles whatsoever—making it incomprehensible how the ordinance could *ever* be interpreted to require immobilizers.  *See, e.g.*, NMC § 16:15-1(a)(4) (prohibiting "garbage…to leak…from any…vessel in which such matter…may be…carried"); NMC § 16:15-1(a)(10) (prohibiting "shaking of mops…from any roof…of any building"); NMC § 16:15-1(a)(11) (prohibiting "growing of [] weeds…which are liable to become the breeding grounds for mosquitoes").  Rather, Plaintiff's interpretation of NMC §§ 16:15-1(a)(14) and (15) would result in precisely what the *Guidi* and *Golin* courts warned against: arbitrary enforcement of legal conduct nowhere proscribed as unlawful by statute.  *See Guidi*, 668 A.2d at 1099; *Golin*, 833 A.2d at 665–66.  New Jersey courts have made clear that this type of discriminatory enforcement violates due process,

---

[3]  East Windsor Ordinance 18-3.1 §§ 2.1(a) and 2.1(b) prohibited, respectively: "[a]ny matter, thing, condition or act which is or may become detrimental or a menace to the health of the inhabitants of this municipality," and "[a]ny matter, thing, condition or act which is or may become an annoyance, or interfere with the comfort or general well-being of the inhabitants of this municipality."  833 A.2d at 663.

Case No. 8:22-ML-3052-JVS-(KESx)
NOTICE OF AND MOTION TO DISMISS FAC

and so too here, NMC §§ 16:15-1(a)(14) and (15) violate Defendants' due process of law.

In addition, assuming *arguendo* the Court finds that NMC § 16:15 is not penal in nature, dismissal is still warranted because Plaintiff has no authority under NMC § 16:15 to seek either abatement or damages for any purported nuisance. NMC § 16:15-4(b) allows for damages only "on conviction" of the ordinance; no such conviction has been obtained here. *See* Black's Law Dictionary 421–22 (11th Ed. 2019) (defining "convict" as "to find (a person) guilty of a criminal offense upon a criminal trial, [or] a plea of guilty"). Moreover, while NMC § 16:15-4(c) permits abatement, it requires Plaintiff to proceed under N.J.S. §§ 26:3-45 *et seq.*, which vests authority in a "***local board*** [to] recover, by a civil action, the expenses incurred in such removal and abatement…" N.J.S. § 26:3-54. Rather than enlist a local board, Newark has taken it upon itself to attempt to enforce NMC § 16:15, contrary to the ordinance's requirements.

This claim should therefore be dismissed.

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

/ /

## **CONCLUSION**

For the foregoing reasons, this Court should dismiss Plaintiff's FAC in its entirety.


DATED:  June 12, 2024                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


                                         By  */s/ Steven G. Madison*
                                             Steven G. Madison (SBN: 101006)
                                             stevemadison@quinnemanuel.com
                                             Justin C. Griffin (SBN: 234675)
                                             justingriffin@quinnemanuel.com
                                             865 South Figueroa Street, 10th Floor
                                             Los Angeles, California 90017-2543
                                             Telephone:   (213) 443-3000
                                             Facsimile:    (213) 443-3100

                                             *Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

# **CERTIFICATE OF COMPLIANCE**

Pursuant to Section 5 of Order No. 1, I certify that the parties conferred in a good-faith effort to resolve the matter without court action prior to the filing of this Motion.

DATED:  June 12, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Steven G. Madison*
    Steven G. Madison (SBN: 101006)
    stevemadison@quinnemanuel.com
    Justin C. Griffin (SBN: 234675)
    justingriffin@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
    Telephone:  (213) 443-3000
    Facsimile:   (213) 443-3100

*Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

Case No. 8:22-ML-3052-JVS-(KESx)
NOTICE OF AND MOTION TO DISMISS FAC

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Defendants certifies that this brief contains 6992 words, which complies with the word limit of L.R. 11-6.1.

DATED:  June 12, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _/s/ Steven G. Madison_
    Steven G. Madison (SBN: 101006)
    stevemadison@quinnemanuel.com
    Justin C. Griffin (SBN: 234675)
    justingriffin@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
    Telephone:   (213) 443-3000
    Facsimile:    (213) 443-3100

    *Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*