**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
  Shon Morgan (Bar No. 187736)
  shonmorgan@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100
  Cristina Henriquez (Bar No. 317445)
  cristinahenriquez@quinnemanuel.com
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, California 94065
Telephone:  (650) 801-5000
Facsimile:   (650) 801-5100

*Attorneys for Defendants*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | CASE No. 8:22-ml-03052-JVS-KES **DEFENDANTS' RESPONSE TO DONALD K. BIRNER OBJECTION (DKT. 407)** |
| This document relates to: CONSUMER CLASS ACTION | |

# **TABLE OF CONTENTS**

Page

ARGUMENT ...........................................................................................2

I.  BIRNER DOES NOT PROVIDE ANY BASIS TO DISRUPT THE COURT'S PRELIMINARY FINDING THAT THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE .........................................2

    A.  The Settlement Addresses The Impetus For The Consumer Action ..................................................................................................2

    B.  The Settlement Addresses Uncompensated Losses Stemming From The Class' Liability Theory ............................................3

    C.  The Claims Process Is Not Unduly Burdensome...................8

    D.  Birner's Low Claims Rate Assumption Is Unfounded ........10

II.  THERE IS NO COMMON FUND REVERSION TO DEFENDANTS ........11

III.  THE *CY PRES* ISSUE IS NOT RIPE FOR DETERMINATION .................12

IV.  THE RELEASE COMPORTS WITH THE COURT'S DIRECTION...........12

CONCLUSION.......................................................................................14

## TABLE OF AUTHORITIES

Page

### Cases

*Abadilla v. Precigen, Inc.*,
 2023 WL 7305053 (N.D. Cal. Nov. 6, 2023) ..................................................... 6, 9

*In re Anthem, Inc. Data Breach Litig.*,
 327 F.R.D. 299 (N.D. Cal. 2018) ..................................................................... 5, 9

*In re Apple Inc. Device Performance Litig.*,
 50 F.4th 769 (9th Cir. 2022) .......................................................................... 5, 10

*In re Apple Inc. Device Performance Litig.*,
 2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ...................................................... 5

*Bloyed v. Gen. Motors Corp.*,
 881 S.W.2d 422 (Tex. App. 1994) ...................................................................... 3

*Buchet v. ITT Consumer Fin. Corp.*,
 845 F. Supp. 684 (D. Minn. 1994) ...................................................................... 3

*Class Plaintiffs v. City of Seattle*,
 955 F.2d 1268 (9th Cir. 1992) .......................................................................... 13

*Dennis v. Kellogg Co.*,
 697 F.3d 858 (9th Cir. 2012) ............................................................................ 12

*Desue v. 20/20 Eye Care Network, Inc.*,
 2023 WL 4420348 (S.D. Fla. July 8, 2023) ....................................................... 12

*Free Range Content, Inc. v. Google, LLC*,
 2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ..................................................... 6

*Hanlon v. Chrysler Corp.*,
 150 F.3d 1011 (9th Cir. 1998) ............................................................................ 4

*Helfend v. S. Cal. Rapid Transit Dist.*,
 465 P.2d 61 (Cal. 1970) ..................................................................................... 7

*Lane v. Facebook, Inc.*,
 696 F.3d 811 (9th Cir. 2012) .............................................................................. 8

*In re Linkedin User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) .......................................................................... 8

*Martinelli v. Johnson & Johnson*,
2022 WL 4123874 (E.D. Cal. Sept. 9, 2022) ..................................................... 12

*In re Mego Fin. Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000), *as amended* (June 19, 2000)................................ 7

*In re Mid-Atl. Toyota Antitrust Litig.*,
564 F. Supp. 1379 (D. Md. 1983)......................................................................... 3

*In re Navistar Diesel Engine Prods. Liab. Litig.*,
2013 WL 10545508 (N.D. Ill. July 3, 2013) ....................................................... 2

*Officers for Just. v. Civ. Serv. Comm'n of City &
Cnty. of San Francisco*,
688 F.2d 615 (9th Cir. 1982) ............................................................................... 7

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006) ............................................................................. 13

*Rodriguez v. Disner*,
688 F.3d 645 (9th Cir. 2012) ............................................................................. 14

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ............................................................................. 12

*Schulte v. Fifth Third Bank*,
805 F. Supp. 2d 560 (N.D. Ill. 2011)......................................................... 8, 10, 11

*Shaffer v. Debbas*,
21 Cal. Rptr. 2d 110 (Cal. Ct. App. 1993),
*as modified* (July 13, 1993) ............................................................................... 7

*Shay v. Apple Inc.*,
2024 WL 1184693 (S.D. Cal. Mar. 19, 2024)................................................. 9, 13

*TBK Partners, Ltd. v. W. Union Corp.*,
675 F.2d 456 (2d Cir. 1982) ............................................................................. 13

*Torchia v. W.W. Grainger, Inc.*,
304 F.R.D. 256 (E.D. Cal. 2014)......................................................................... 5

*In re TracFone Unlimited Serv. Plan Litig.*,
   112 F. Supp. 3d 993 (N.D. Cal. 2015) .................................................................... 1

*Tuttle v. Audiophile Music Direct, Inc.*,
   2023 WL 8891575 (W.D. Wash. Dec. 26, 2023) .................................................. 9

### **<u>Statutes</u>**

California Civil Code Section 1542 ........................................................................ 13

National Traffic and Motor Vehicle Safety Act, 49 U.S.C. Chapter 301 ................. 2

## **PRELIMINARY STATEMENT**

Birner is a class action attorney whose hodgepodge of complaints about the Settlement rest on either misinterpretation of the Agreement[1] or the law or otherwise reflect his failure to acknowledge, let alone address, record facts that undermine his position.

For example, contrary to Birner's assertion, the Settlement does squarely address the concerns that prompted the underlying action by offering free anti-theft software upgrades and reimbursements for steering wheel locks and/or other anti-theft measures.  That Birner would prefer a different suite of benefits that might not even be achievable in litigation (a recall, buy-back options, and monetary compensation for "loss of value"), is not a reason to reject the Settlement.  Settlements should not be assessed against hypothetical wish lists or speculation about best-case scenarios had plaintiffs risked any relief at trial and prevailed.  The Settlement provides myriad valuable benefits, including substantial monetary compensation, that distinguish this Settlement from the coupon resolutions to which Birner inexplicably compares it.

Birner's other objections are similarly unfounded.  The Common Fund will not revert to defendants under any circumstances; the scope of the release complies with the Court's directives and law; and the claims process is not unduly burdensome and does not discourage claims submissions, but rather encourages them.  Moreover, no *cy pres* issue is or will be ripe for determination because claims will exceed the $80 million Common Fund floor.

For these and other reasons discussed below, Birner's objection provides no reason to reject the proposed Settlement.[2]

---

[1]   Unless otherwise stated, all capitalized terms have the same meaning as in the Amended Settlement Agreement (Dkt. 247-1, "ASA").

[2]   Birner has objected without success to two other class settlements.  *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1000–02 (N.D. Cal. 2015) ("Even if Birner had standing to object, and he does not, this objection is without

**ARGUMENT**

**I.   BIRNER DOES NOT PROVIDE ANY BASIS TO DISRUPT THE COURT'S PRELIMINARY FINDING THAT THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE[3]**

**A.   <u>The Settlement Addresses The Impetus For The Consumer Action</u>**

Birner suggests the Settlement does not sufficiently address the underlying issue in the Consumer Action, namely allegations that vehicles did not include sufficient anti-theft technology (Obj. at 1, 3, 7, 17).  For example, he contends there is a safety defect and points out that others have called for the National Highway Traffic Safety Administration ("NHTSA") to initiate a recall here (*id.* at 1, 3, 17).  As the Court knows—but Birner fails to acknowledge—NHTSA responded to one of those recall requests by stating immobilizer technology is *not* required and that no safety defect exists that might justify a recall:

> NHTSA has not determined that this issue constitutes either a safety defect or noncompliance requiring a recall under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. Chapter 301. . . . FMVSS [Federal Motor Vehicle Safety Standards] No. 114, does not require an engine immobilizer. . . . Here, the safety risk arises from unsafe use

---

merit. . . . Contrary to Objector Birner's arguments that the monetary relief obtained in this settlement is too low, the $40 million settlement represents a good monetary result for class members. . . . Birner's specific arguments regarding the alleged inadequacy of the monetary relief in this settlement are all predicated on untenable assumptions, and must be rejected."); *In re Navistar Diesel Engine Prods. Liab. Litig.*, 2013 WL 10545508, at *3 (N.D. Ill. July 3, 2013) ("The objections, in large part, either misunderstood the terms of the settlement agreement, understated the risk of failure that this litigation faced, focused on the amount of attorney's fees, expenses, and service awards requested, and/or expressed a desire that the benefits should be more generous. None of these objections suggests that the settlement is unfair or unreasonable. The Court acknowledges that the settlement does not provide class members with everything they might have wanted or with everything they might have gotten had they prevailed after protracted and expensive litigation. That, however, is not the test of a fair and reasonable settlement.").

[3]   Birner, like objector Ruth Rubin, overestimates the strength of the Class' claims and scope of potential liability.  Dkt. 407 ("Obj.") at 4–6; *see* Defendants' Response to Rubin Objection.

of a motor vehicle by an unauthorized person after taking significant destructive actions to parts of the vehicle.

Dkt. 189, Ex. B (June 5, 2023 NHTSA response letter).

And contrary to Birner's assertions (Obj. at 1, 3, 7), the Settlement Agreement provides multiple options for Class members who prefer additional anti-theft options, including a *free* Software Upgrade available for eligible Class Vehicles and reimbursements for steering wheel locks and other anti-theft measures for non-software eligible Class Vehicles.  ASA § II.A–C.  Birner fails to provide any reasoned argument or evidence that would undermine the Court's determination at preliminary approval that these benefits provided fair and reasonable relief.

### B.   The Settlement Addresses Uncompensated Losses Stemming From The Class' Liability Theory

**The Settlement offers valuable benefits to the Class.**  This Settlement does not bear any resemblance to the coupon settlements Birner invokes as supposed comparators (Obj. at 8).  *See Bloyed v. Gen. Motors Corp.*, 881 S.W.2d 422, 431–33 (Tex. App. 1994) (finding abuse of discretion by trial court in approving settlement providing class members only with certificates redeemable for or upon purchase of other vehicles of defendant's make); *Buchet v. ITT Consumer Fin. Corp.*, 845 F. Supp. 684, 693–97 (D. Minn. 1994) (declining final approval of proposed settlement where class members would receive only $25 certificates on new loans from defendants); *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1385–86 (D. Md. 1983) (*granting* preliminary approval of certificate settlement where certificates could be redeemed for cash).

Here, the Settlement offers multiple, tangible and valuable benefits to Class members.  In addition to the anti-theft protections described above, the Settlement establishes a non-reversionary Common Fund worth up to $145 million in cash payments to Class Members to provide compensation for (1) Qualifying Losses resulting from a Qualifying Theft or Theft Attempt and (2) certain expenses incurred

in connection with the Software Upgrade (key fob purchases and lost income and/or childcare costs).  ASA § II.D.[4]  Defendants are also separately paying for Settlement Administration, estimated at $26 million.  *Id.* § II.E.[5]

Defendants will also pay Class Counsel up to $600,000 for their work reviewing claims appeals.  *Id.* § II.F.  Birner confusingly contends that this provision somehow creates an attorney-client relationship between Class Counsel and defendants.  Obj. at 14–15.  There is no reason that would be so.  Class Counsel's review of appeals would be performed on behalf of Class members to ensure the Settlement Administrator's review, processing, and handling of Class claims is fair and accords with the Settlement.  This review is not in any way a service to defendants.[6]

**That complete recovery may not be possible under the Settlement is not a reason to reject it.**  Birner also appears to object that the Settlement is not adequate,

---

[4]  Under Qualifying Losses, Class members may be eligible for compensation for Total Loss of a Class Vehicle, damage to a Class Vehicle and personal property, reimbursements of insurance deductibles up to $375, and reimbursements up to $250 for other related expenses (including alternative transportation, towing, or fines.  ASA § II.D.  Birner claims insured Class members who suffered total loss or partial damage of their Class Vehicles on account of a Qualifying Theft or Qualifying Theft Attempt will receive no benefits from the Common Fund other than a partial reimbursement of their deductible.  Obj. at 10-11.  Not so.  To the extent any compensation received from other sources for the partial loss or total loss did not make someone whole, they can still seek the remainder from the Settlement.

[5]  Birner inaccurately contends that defendants supplied an expert estimate of the settlement amount likely to reach claimants (Obj. at 9).  Defendants did not make any such submission.

[6]  Birner also disregards the abundant case law that endorses Class Counsel fees from a Common Fund and instead claims that too creates a conflict of interest between the Class and Class Counsel.  *Compare* Obj. at 14 *with Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("The percentage method means that the court simply awards the attorneys a percentage of the fund sufficient to provide class counsel with a reasonable fee.  This circuit has established 25% of the common fund as a benchmark award for attorney fees.") (citation omitted).

reasonable, or fair because it does not guarantee Class members a specified "minimum" amount or particular benefit, or otherwise make them whole (Obj. at 2, 8, 10–14, 17).   None of these reasons, inherent in nearly every class settlement, provides reason to reject final approval.

Settlements do not have to guarantee each Class Member a specified "minimum" amount (Obj. at 2, 8, 17) to be reasonable, adequate, and fair, particularly where, as here, the recovery caps for each benefit, the recovery calculation formulas (where applicable), and the Common Fund range are clear.  *See Torchia v. W.W. Grainger, Inc.*, 304 F.R.D. 256, 263, 270 (E.D. Cal. 2014) (approving settlement that applied distribution formulas to determine the amount paid to class members who submitted valid claims).

Birner also objects that no particular benefit under the Common Fund is guaranteed to every Class member (Obj. at 14).   But that is because each Class members' circumstances vary, and it is a virtue of this Settlement, not a flaw, that it is structured to account for each Class member's circumstances and compensate him or her accordingly.  *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 332 (N.D. Cal. 2018) (finding "fair, adequate, and reasonable" distribution plan "structured to fit the slightly distinct injuries that different Settlement Class Members face").  That not every Class Member will have suffered one of the harms for which compensation is provided under the Settlement Agreement does not render it unfair, inadequate, or unreasonable.  *See In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 781 (9th Cir. 2022) (finding limitation of "recovery to the subset of [class members] who can attest that 'they experienced' the alleged defects" did not render settlement unfair); *In re Apple Inc. Device Performance Litig.*, No. 5:18-md-02827, 2023 WL 2090981, at * 10 (N.D. Cal. Feb. 17, 2023) (adopting Ninth Circuit's finding regarding attestation requirement in approving class settlement upon remand).

Birner's speculation that some Class members might not be made whole (Obj. at 10–11) does not provide a basis to reject the Settlement.   Few if any class

settlements—invariably the product of compromise by both parties—offer complete relief to all.  As Courts have recognized, a "settlement generally requires a level of compromise under which litigants receive a certain recovery less than the full amount of their losses." *Abadilla v. Precigen, Inc.*, 2023 WL 7305053, at *13 (N.D. Cal. Nov. 6, 2023) ("[T]he Court finds the Settlement Agreement, including the Settlement Amount and the Plan of Allocation, to be fair, reasonable, and adequate"); *see also Free Range Content, Inc. v. Google, LLC*, 2019 WL 1299504, at *8 (N.D. Cal. Mar. 21, 2019) ("Of course, every litigant hopes to recover the full amount of his losses, but the very nature of a settlement is that the parties must compromise and accept less than a full recovery, in exchange for no longer facing the risk of losing on the merits and losing any chance of recovery.").[7]

**There is no reason the Settlement should compensate the Class for amounts they recovered from insurers.**  Birner also contends that Settlement recovery should not be restricted to uncompensated losses and instead encompass payments the Class already received from insurers (Obj. at 4, 11–12).  But here the insurers are separately suing to recover alleged losses paid to Class members, and the Court required that the Settlement clearly preserve those claims, Dkt 247-1 § VI.2 ("The Settlement Agreement and release do not release past, present, or future claims for . . . subrogation claims by licensed insurers[.]").  Birner suggests the Settlement should make payments to Class members "as trustees of the insurers" (Obj. at 4, 11–12), a complicated proposal that would needlessly expose Class members to legal claims by the insurers.

In all events, the cases Birner cites involved the collateral source rule, which applies only in litigation against the tortfeasor that caused the harm—here, the third

---

[7] Birner's objection that uninsured vehicles might not be physically available (Obj. at 14) is also irrelevant.  The Settlement Agreement does not require any vehicle to be physically available, and contains a rebuttable presumption that a stolen and unrecovered Class Vehicle is a Qualifying Theft.  ASA § I.AA.

party criminals who stole or attempted to steal the Class Vehicles.  *See, e.g.*, *Helfend v. S. Cal. Rapid Transit Dist.*, 465 P.2d 61, 67 (Cal. 1970) (applying collateral source rule in personal injury action against the tortfeasor and stating "double recovery is justified only in the face of some exceptional, supervening reason, as in the case of accident or life insurance, where it is felt unjust that the tortfeasor should take advantage of the thrift and prescience of the victim in having paid the premium") (quotations omitted); *Shaffer v. Debbas*, 21 Cal. Rptr. 2d 110, 113 (Cal. Ct. App. 1993), *as modified* (July 13, 1993) (applying collateral source rule in action by homeowners against builders and others for breach of warranty and negligence in home construction).  Here by contrast, the Class chose to pursue claims against manufacturers and U.S. distributors of Hyundai and Kia vehicles, rather than against the third-party criminals who stole or tried to steal those vehicles.  Accordingly, Birner's objection and proposal regarding amounts paid by insurers to Class members should be rejected.

**That the Settlement does not provide every benefit, or as much as Birner would like, is irrelevant.**  Birner likewise suggests that the Settlement is inadequate because it does not include benefits like a buy-back option, recall, or other categories of compensation such as "loss of market value."  (Obj. at 3, 17.)  But what Birner would personally prefer as Settlement compensation or benefits is irrelevant. Settlements should neither be judged against hypothetical measures of what could have been negotiated nor should they be expected to equal the amounts that might have been available upon a victory at trial.  *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982) ("The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators."); *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), *as amended* (June 19, 2000) ("[T]he Settlement amount of almost $2 million was roughly one-sixth of the potential recovery, which, given the difficulties in proving the case, is fair and adequate."); *Lane v. Facebook, Inc.*,

696 F.3d 811, 822 (9th Cir. 2012) ('We also reject Objectors' claim that the settlement agreement's *cy pres* structure is impermissible because the parties elected to create a new grant-making entity, DTF, rather than give *cy pres* funds to an already-existing online privacy organization.").   Indeed, "the proper standard for approval of the proposed settlement is whether it is fair, reasonable, adequate, and free from collusion—not whether the class members could have received a better deal in exchange for the release of their claims." *In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015).   Despite Birner's personal preferences, the Settlement is fair, reasonable, and adequate.

### C.   <u>The Claims Process Is Not Unduly Burdensome</u>

Birner's contentions that the claims process "is unduly burdensome" (Obj. at 3–4, 9–10) likewise cannot withstand scrutiny.   Class members submit the Claim Form (either online or by mail) and provide the supporting documentation specified. ASA at 52.   If Class members do not have receipts for cash payments for which they are seeking reimbursement or have not recovered their Class Vehicles after Qualifying Thefts, they can choose to use the pre-formulated attestations available for them on the Claim Form. *Id.* at 70.

Birner's objections about the claims process rest on unfounded misinterpretations of the law and the requirements of the Settlement Agreement or otherwise on claimed "facts" that are self-evidently incorrect.   For example, Birner asserts the Claim Form is in size 5 font (Obj. at 12), but it is not.   Birner also seems to think the entirety of the eight-page Claim Form must be completed (Obj. at 10), but Class members only need to fill out the portions relevant to the applicable claim(s) they are submitting.   Notably, the length of the Claim Form and Notice have both already been approved by this Court. *See* Dkt. 256 ¶ 25; *see also Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 591 (N.D. Ill. 2011) ("[T]he Court . . . concludes that [the claim form] is not unduly burdensome, long, or complex[, where a]ll

information called for on the form is required of the claims administrator . . . to process claims.").

Birner also objects to the requirement that Class members provide objectively reliable documentation supporting each claim[8] or otherwise use an attestation if they lack certain of the required documentation (Obj. at 10). But he fails to show how either common sense requirement can be fairly characterized as unduly burdensome or intimidating (they are not). Courts regularly approve settlements that require documentation of losses that should ordinarily be available to class members as a means of limiting fraud, thereby ensuring only class members receive the benefits of the settlement. *E.g.*, *Anthem*, 327 F.R.D. at 325 (N.D. Cal. 2018) ("Although Settlement Class Members must also submit supporting documentation, the Settlement requires only 'documentation [that] should naturally exist and have been retained or is obtainable.' In addition to eliminating the need to prove causation, this mode of substantiation is significantly less than what Class Members would have had to produce at trial.") (citation omitted); *Abadilla*, 2023 WL 7305053, at *12 ( "[T]he Court finds the process of requiring transaction records necessary to ensure that Net Settlement Fund proceeds are not paid to individuals who do not belong to the Settlement Class."); *Tuttle v. Audiophile Music Direct, Inc.*, 2023 WL 8891575, at *11 (W.D. Wash. Dec. 26, 2023) ( "[T]he court finds that providing proof of purchase and ownership is necessary to ensure that payment is properly made to individuals belonging to the settlement class."); *Shay v. Apple Inc.*, No. 3:20-cv-1629, 2024 WL 1184693, at *9 (S.D. Cal. Mar. 19, 2024) ("[Where the] proof of purchase requirement was successful[ ] at weeding out many fraudulent claims, . . . the claims process was

---

[8] Such documentation includes proof of payment for the reimbursement sought, proof of ownership of the Class Vehicle, proof of the Qualifying Theft or Attempted Theft (such as a police or insurance report), proof of installation of the additional anti-theft system purchased, proof of Total Loss, and documentation on prior payments for the same benefit requested under the Settlement. ASA at 62–70.

not unduly burdensome and was in fact both reasonable and necessary"); *Apple*, 50 F.4th at 781 (finding attestation requirement, which limited recovery to  subset of owners who could attest they experienced alleged defects, was reasonable).

Similarly, despite Birner's contentions (Opp. at 3–4, 9–10), the claims process here encourages submissions because it includes settlement websites for online claim submissions and toll-free numbers to contact the Settlement Administrator, each listed at the bottom of every page of the Claim Form.  Dkt. 378, Ex. 18 ("Platt Decl.") ¶¶ 4–7, 9; ASA at 61–70; *Schulte*, 805 F. Supp. 2d at 591 ("The parties' use of a settlement website [for claim submissions] and toll free number suggests that the claims process was designed to encourage—not discourage—the filing of claims.").

Finally, Birner's assertion that the claim submissions deadline of 180 days after final approval is unduly burdensome because "most" class members might not know that date (Obj. at 12–13), is also without merit.  For Class members' ease of reference, since the launch of the settlement websites, (Platt Decl. ¶ 4) each website lists an estimated January 11, 2025 claims submission deadline,  which will consistently be revised as necessary to reflect the 180 days deadline after final approval.[9]  Kia Theft Settlement, https://kiatheftsettlement.com/; Hyundai Theft Settlement, https://hyundaitheftsettlement.com/.   In sum, there is nothing unduly burdensome about the Settlement's claim process.

### D.  Birner's Low Claims Rate Assumption Is Unfounded

Birner surmises the Settlement will have a low take rate based only on a third-party-written white paper discussing claims rates on certain class action settlements that he uncritically assumes will apply here (average of 4.91 percent and median of 3.9 percent).  (Obj. at 9–10).

---

[9]  Birner contends submission of claims before final approval is troubling (Obj. at 4), but it is customary for the claims process to begin upon preliminary approval to help advance distribution of class benefits.  Claims cannot be processed and paid until final approval and judgment.

But claims rates and average claim amount for this Settlement are consistent with, if not better than, those estimated by Class plaintiffs' expert, Edward M. Stockton[10] (Dkt. 228-3, ¶ 46), whose declaration was submitted in support of preliminary approval. The excellent claims rates result from the numerous ways the Settlement facilitates and encourages claims submissions, for example, by making easily accessible on the Claim Form: each of the requirements for the different benefits, the relevant settlement website, a toll-free number to contact the Settlement Administrator, pre-formulated, fill-in attestations available for certain missing documentation, and information on the multiple payment options. ASA at 61–70; *see Schulte*, 805 F. Supp. 2d at 591 ("The parties' use of a settlement website [for claim submissions] and toll free number suggests that the claims process was designed to encourage—not discourage—the filing of claims").

## II.   THERE IS NO COMMON FUND REVERSION TO DEFENDANTS

Contrary to Birner's misinterpretation of the Settlement (Obj. at 15), the $80 million minimum Common Fund will not revert to defendants under any circumstances. ASA § II.D.6 ("If the aggregate amount of approved claims does not equal or exceed $80,000,000, the caps in this Section II.D.5 shall not apply and approved claims shall be increased proportionately until the $80,000,000 minimum Common Fund is met"); *id.* at III.C.4 ("If the total Claims fall below the $80 million Common Fund floor (inclusive of Class Counsel's attorneys' fees, costs, and expenses), Class Counsel shall confer with Defendants to provide guidance to the Settlement Administrator as to the pro rata increase in payments to be made to the Claimants.").

Similarly, Birner's proposed "revision" to the Settlement that any pro rata decreases occur only if the Common Fund cap of $145 million is exceeded (Obj. at 17) is unnecessary because that is exactly what the Settlement provides. ASA § II.D.6

---

[10]   Contrary to Birner's assertion, defendants did not retain Stockton.

1    ("Payments from the Common Fund to satisfy approved claims are subject to a pro-
2    rata decrease based on the amount of approved claims if the Common Fund is
3    insufficient to pay all approved claims."); *see id.* § III.C.1.d ("[A]ny determination as
4    to Claims for payments from the Common Fund are going to be processed at the end
5    of the claims period.").  And courts routinely approve of pro rata decreases in similar
6    circumstances where a cap has been approved.  *E.g.*, *Desue v. 20/20 Eye Care
7    Network, Inc.*, 2023 WL 4420348, at *1–*2 (S.D. Fla. July 8, 2023) (granting final
8    approval of settlement that would employ pro rata decreases "[t]o the extent the total
9    amount of the Approved Claims at the end of the Claims Period were to exceed . . .
10   the amount in the Settlement Fund"); *Martinelli v. Johnson & Johnson*, 2022 WL
11   4123874, at *5–*6 (E.D. Cal. Sept. 9, 2022) (same).

12   **III.   THE *CY PRES* ISSUE IS NOT RIPE FOR DETERMINATION**

13          Birner's concern about a *cy pres* beneficiary (Dkt. 407 at 15–16) is unripe.
14   Unlike the case on which he relies, here it is too early to determine whether any *cy
15   pres* beneficiary will be necessary and the amount, if any, that would be distributed
16   thereto.  *Compare Dennis v. Kellogg Co.*, 697 F.3d 858, 864–65 (9th Cir. 2012)
17   (holding *cy pres* issue was ripe for determination where claim submission deadline
18   had long passed and "claims submitted totaled roughly $800,000, leaving almost $2
19   million in the settlement fund for *cy pres* distribution") *with Rodriguez v. W. Publ'g
20   Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) ("[The *cy press*] issue becomes ripe only if
21   the entire settlement fund is not distributed to class members.").

22          Claims submissions have been robust and met or exceeded projections.
23   Although submitted claims must be processed and verified, there is no reason on the
24   current record to believe this Settlement will ever trigger a need for a *cy pres*
25   distribution.  This concern raised by Birner is a non-issue.

26   **IV.   THE RELEASE COMPORTS WITH THE COURT'S DIRECTION**

27          Birner's concerns about the scope of the release (Obj. at 4, 16–17) were
28   encompassed by the Court's similar comments before preliminary approval, which

-12-

resulted in revisions to the Settlement at that time, which the Court already considered and approved. The release is properly tailored to address claims based on the lack of engine immobilizers or other anti-theft protections. Dkt 259 at 9-10; ASA § VI.1.

Birner's other qualms with the Release (Obj. at 16-17)—specifically, the release of non-parties and unknown and unsuspected claims, including the waiver of Section 1542 of the California Civil Code and its equivalents—likewise do not warrant a revision of the Settlement Agreement. Courts consistently uphold similar releases in class action settlements. *E.g.*, *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) ("A class settlement may also release factually related claims against parties not named as defendants[.]"); *Shay*, 2024 WL 1184693, at *8 ("The release of non-party retailers is common practice in cases such as this, where the released claims against these non-parties concern an identical injury arising from common facts."); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) ("The weight of authority holds that a federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action*.") (emphasis in original) (quotations omitted); *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456, 460 (2d Cir. 1982) ("We therefore conclude that in order to achieve a comprehensive settlement that would prevent relitigation of settled questions at the core of a class action, a court may permit the release of a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action.").[11]

---

[11] Defendants reserve the right to oppose any motion for fees by Birner who did not participate in the litigation, did not bring any new argument or expertise to it, and did not confer any benefit on the Class. *See Rodriguez v. Disner*, 688 F.3d 645, 659

1

**CONCLUSION**

2

Birner's objection lacks merit and provides no basis to reject the proposed

3

Settlement.

4

5

6

DATED:  June 17, 2024

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By_____/s/ Shon Morgan_____
    Shon Morgan

*Attorneys for Kia America, Inc., Kia
Corporation, Hyundai Motor America, and
Hyundai Motor Company*

_____

(9th   Cir. 2012) (upholding denial of fees for objectors who "did not confer any
material benefit on the class").

**<u>L.R. 11-6.2. Certificate of Compliance</u>**

The undersigned, counsel of record for defendants, certifies that this brief contains 4,553 words, which complies with the word limit of L.R. 11-6.1.

DATED:  June 17, 2024                    QUINN EMANUEL URQUHART & SULLIVAN, LLP


By _____/s/ Shon Morgan_____
   Shon Morgan

   *Attorneys for Kia America, Inc., Kia Corporation, Hyundai Motor America, and Hyundai Motor Company*

Case No. 8:22-ml-03052-JVS-KES
DEFENDANTS' RESPONSE TO DONALD K. BIRNER OBJECTION (DKT. 407)