ELLIOTT R. FELDMAN
NATHAN DOOLEY (SBN 224331)
KEVIN CARAHER
COZEN O'CONNOR
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-2071
Facsimile: (215) 701-2282
EFeldman@cozen.com

WILLIAM J. HOFFMANN
ADAM M. ROMNEY (SBN 261974)
SUSAN M. BENSON (SBN 146837)
GROTEFELD HOFFMANN LLP
15303 Ventura Blvd, Ste. 1505
Sherman Oaks, California 91403
Telephone: (747) 233-7150
Facsimile: (747) 233-7143

TIMOTHY E. CARY (SBN 093608)
DANIEL HOGAN
THOMAS PAOLINI
LAW OFFICES OF ROBERT A. STUTMAN, P.C.
1260 Corona Pointe Court, Suite 306
Corona, California 92879
Telephone: (951) 387-4700
Facsimile: (951) 963-1298
CaryT@Stutmanlaw.com

CRAIG S. SIMON (SBN 78158)
STEPHANIE H. NG (SBN 309389)
BERGER KAHN, A Law Corporation
1 Park Plaza, Suite 340
Irvine, California 92614
Telephone: (949) 474-1880
Facsimile: (949) 313-5029
csimon@bergerkahn.com

*Attorneys for Subrogation Insurance Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL SUBROGATION CASES | Case No.: 22-ML-03052-JVS-KES<br><br>The Honorable James V. Selna<br><br>**SUBROGATION PLAINTIFFS' SUPPLEMENTAL BRIEFING RE: BELLWETHER SELECTION**<br><br>Judge: Hon. James V. Selna<br>Ctrm: 10C<br>Date: June 10, 2024<br>Time: 3:00 p.m. |

1

## A. SELECTING BELLWETHERS IS IN ACCORD WITH NINTH CIRCUIT PRECEDENT AND FEDERAL COURT PRACTICE

Pursuant to Federal Rule of Civil Procedure 42(b), courts have the authority to order separate trials of issues or claims "[f]or convenience, to avoid prejudice, or to expedite and economize" their processes. Fed.R.Civ.P. 42(b); *Collazo v. WEN by Chaz Dean, Inc.* (C.D. Cal., July 12, 2018, No. 215CV01974ODWAGR) 2018 WL 3424957, at *2. "A bellwether trial is a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky questions of causation or liability." *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015). "[T]he purpose of a bellwether trial i[s] clarifying and streamlining the relevant issues." *In re Hanford Nuclear Reservation Litigation* 534 F.3d 986, 1007–1008 (9th Cir. 2008).

In the Ninth Circuit, "bellwether trials can be held when a large number of plaintiffs assert the same or similar claims against a common defendant or defendants." *Dunson v. Cordis Corporation* 854 F.3d 551, 555 (9th Cir. 2017). Here, subrogation Plaintiffs assert identical claims against the Defendants for knowingly manufacturing and selling more than fourteen million vehicles without an engine immobilizer or any equivalent anti-theft devices. Although the consolidated complaint presents a voluminous quantity of total claims, the legal issues presented by those claims are comparatively limited. As a result, selecting and trying a limited number of bellwethers is the preferred procedural mechanism for streamlining this Court's processes.

The bellwether process has achieved wide-spread acceptance because it is effective in "producing reliable information about other" tort claims. MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315 (2004); *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). Furthermore, examination of bellwether claims would permit this Court to better determine whether the issues and defenses presented by non-bellwether claims can be tried on an aggregate basis. This is particularly true

where, as here, the Defendants assert that determination of causation may differ across claims. As the Manual for Complex Litigation explains:

> If there are few prior verdicts, judgments, or settlements, additional information may be needed to determine whether aggregation is appropriate. The need for such information may lead a judge to require a number of single-plaintiff, single-defendant trials, or other small trials. These trials would test the claims of causation and damages and whether the evidence applies across groups, in order to provide the necessary information as to whether aggregation is appropriate, the form and extent of aggregation, and the likely range of values of the various claims.

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.314 (4th ed.).

Selection of bellwethers also assists the parties in ultimately resolving the entire action. Bellwether claims can "precipitate and inform settlement negotiations ... by providing guidance on how similar claims may fare before subsequent juries." *Collazo v. WEN by Chaz Dean, Inc.* (C.D. Cal., July 12, 2018, No. 215CV01974ODWAGR) 2018 WL 3424957, at *2 (citing ELDON E. FALLON ET. AL., Bellwether Trials in Multidistrict Litigation, 82 TUL. L. REV. 2323, 2337 (2008). "The notion that the trial of some members of a large group of claimants may provide a basis for enhancing prospects of settlement or for resolving common issues or claims is a sound one that has achieved general acceptance by both bench and bar." *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir.1997). Following the conclusion of selected bellwether trials, experience shows that resolution of the remaining claims on a mass basis is virtually assured.

Finally, the utility of the bellwether procedure specifically mitigates the complexity occasioned by the large number of claims within this MDL. *In re Ampicillin Antitrust Litigation*, 88 F.R.D. 174, 178, 1981-1 Trade Cas. (CCH) ¶ 64059 (D.D.C. 1980). While the Court expressed hesitancy at oral argument to permit litigation involving a large number of claims to proceed forward, "bellwether trials

have been successfully used in healthcare fraud cases **involving hundreds of thousands of claims** for medical services." *TML Recovery, LLC v. Cigna Corporation* (C.D. Cal., Dec. 23, 2020, No. 820CV00269DOCJDE) 2020 WL 12584276, at *3(emphasis added). To the extent that the Court is concerned that the sheer numerosity of claims renders this litigation unmanageable, the bellwether process is the empirically effective solution to that problem without prejudicing the parties.

## B. SELECTION OF THE FIRST LISTED CLAIM IS PERMISSIBLE FOR TRYING COMMON ISSUES OF LAW AND FACT

The Court's minute order (Doc. 453) proposes selecting the first listed claim associated with each of the ten individual complaints identified in the Court's tentative ruling[1]. The Court's proposed method of selecting the first-listed claim is one permissible random selection method for determining bellwether claims; as the first-listed claim is correlated only with the name of the insured-claimant rather than the particular facts of the loss.

A random selection process is a time-tested method for creating efficiencies and expediting the ultimate resolution of similar MDL consolidated tort claims. Even at this early stage of the litigation, it is clear that the cases in the MDL present numerous common questions of law which may be resolved through an initial bellwether process, including but not limited to the following:

(1) Plaintiffs' claim that Defendants' failed to comply with FMVSS 114 and otherwise violated industry standards by failing to equip their vehicles with anti-theft protection;

---

[1] The Court's minute order references the "first named Plaintiff." In the context of a subrogation action, the first named Plaintiff would be an insurer asserting many subrogated claims rather than an individual theft. Based upon the Court's discussion at oral argument, Subrogation Plaintiffs believe the Court is proposing to select the first listed claim on the claims spreadsheet associated with each filed complaint.

(2) the Defendants' equitable affirmative defenses such as laches, waiver, unclean hands, and the doctrine of superior equities;

(3) anticipated discovery disputes on the relevance of underwriting files;

(4) threshold *Daubert* issues regarding expert testimony admissibility; and

(5) numerous pre-trial motions *in limine* on common evidence related to Defendants' Thief Friendly Design.

Resolution of these issues through bellwether trials will greatly streamline any future proceedings even if the bellwethers do not precisely duplicate the remaining claims. In the Ninth Circuit, "[a] bellwether trial need only capture the major issues of fact and law necessary to decide the validity of the claims in dispute" and "there is great flexibility as to how a bellwether trial should proceed…." *TML Recovery, LLC v. Cigna Corporation* (C.D. Cal., Dec. 23, 2020, No. 820CV00269DOCJDE) 2020 WL 12584276, at *2.

Furthermore, random selection is explicitly approved by the Manual for Complex Litigation's recommendations for mass tort claims for which there have been few, or no, trials conducted. According to the Manual:

> "Some judges permit the plaintiffs and defendants to choose which cases to try initially, but this technique may skew the information that is produced. To obtain the most representative cases from the available pool, a judge should direct the parties to select test cases randomly or limit the selection to cases that the parties agree are typical of the mix of cases."

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315 (4th ed.) Because adverse parties often cannot agree on how to select bellwethers, it is standard practice for the claims to be selected randomly. *See Hilao v. Estate of Marcos* (9th Cir. 1996) 103 F.3d 767, 782 (affirming use of random sampling by a special master to determine average damage awards for certain types of injuries suffered by plaintiffs in massive class action in which over 10,000 claims were filed). Random sampling is strongly

preferred to allowing each side to pick the "best" and "worst" cases in an effort to bias the bellwether process in their favor. *In re Chevron U.S.A., Inc.*, (5th Cir. 1997) 109 F.3d 1016, 1021 (rejecting as unrepresentative a pool of 30 purported bellwether cases, half of which were picked by the plaintiffs, the other half by the defendants).

Furthermore, the selection of a representative claim from each of the individual complaints is vastly preferable to trying only a single theft case from the full MDL and severing the remainder. Selecting bellwethers through random sampling, staying all other claims, conducting discovery on, and ultimately trying, only the bellwethers will likely speed resolution of the remainder of the actions in the MDL. The Manual for Complex Litigation counsels:

> Test cases should produce a sufficient number of representative verdicts and settlements to enable the parties and the courts to determine the nature and strength of the claims, whether they can be fairly developed and litigated on a group basis and what range of values the cases may have if resolution is attempted on a group basis.

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.315 (4th ed.); *In re Hydroxycut Marketing and Sales Practice Litigation* (S.D. Cal., June 29, 2012, No. 3:09-MD-2087-BTM KSC) 2012 WL 2522859, at *2. The Court's proposed procedure for random selection, with claims taken from the ten individual complaints, thus provides a mechanism for selecting a sufficiently numerous set of claims to ultimately speed resolution of the entire MDL. If the non-bellwether claims were severed, there would be no judicial mechanism to relate piecemeal verdicts to one another and aid the parties in ultimately bringing this litigation to a conclusion.

### C. STAYING MOST CLAIMS AND SELECTING BELLWETHERS AVOIDS PREJUDICING ANY PARTY

The district court possess "inherent authority to stay federal proceedings pursuant to its docket management powers." *Ernest Bock, LLC v. Steelman,* 76 F.4th

827, 842 (9th Cir. 2023).  A district court may "find it is efficient for its own docket and the fairest course for the parties to enter a stay" pending resolution of other claims. *Mediterranean Enters., Inc. v. Ssangyong Corp.,* 708 F.2d 1458, 1465 (9th Cir. 1983). The decision to issue a docket-management stay is an exercise in judgment, and the court should evaluate: (1) the possible damage which may result from the granting of a stay; (2) the hardship suffered by a party being required to go forward; and (3) the judicial efficiency occasioned by simplifying issues, evidence and questions of law. *In re PG&E Corporation Securities Litigation* 100 F.3th 1076, 1085 (9th Cir. 2024). Each of these considerations plainly counsels in favor of issuing a stay on non-bellwether claims in this matter.

Notably, the Complex Litigation Manual specifically recommends staying non-bellwether claims:

> Before making aggregation decisions, […] The judge […] might consider setting several individual cases on a schedule for pretrial motions, discovery, and trial as test cases, **while holding other cases or claims in abeyance**. […]. Identifying and implementing such approaches promptly will avoid unnecessary delay.

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 22.314 (4th ed.)(emphasis added). In this context, issuing a stay poses no risk of damaging the stayed claims.  The bellwether process is designed, like the MDL procedures generally, to help resolve common issues and ultimately hasten resolution of all claims; even those nominally stayed by the MDL court.  The primary risk of harming a case by staying all proceedings is the damage occasioned through delay.  However, because entering a stay would ultimately resolve the stayed claims more quickly there is no apparent hardship and the first factor plainly supports the Court's proposed plan of issuing a stay rather than dismissing hundreds of thousands of claims.

Furthermore, no party will suffer a hardship as a result of the bellwether claims moving forward. In moving to sever, the Defendants' sole articulated claim of prejudice was that the aggregation of claims would prevent the Defendants from fully litigating individual claims on the merits in violation of their due process rights. (Defendants' Reply in Support of Motion to Sever, Doc. 430, at pp. 2, 16, FN 12). Issuing a stay and selecting bellwethers completely eliminates the proposed prejudicial impact of hearing Plaintiffs' claims jointly because there is no risk of a jury imputing liability simply because of the sheer multiplicity of similar claims. Additionally, the selection of bellwethers would permit the parties to fully investigate and litigate the chosen claims, including individualized causation defenses, while holding the remaining claims in abeyance.  This procedure would alleviate Defendants' concerns while not binding the parties to any MDL-wide claim of res judicata for dissimilar claims which have not been fully and fairly litigated. *See Dunson v. Cordis Corporation* (9th Cir. 2017) 854 F.3d 551, 555. A proposal to hold a bellwether trial "does not constitute a proposal to try the plaintiffs' claims jointly" because the results of the bellwether trial will not have a "preclusive effect on the plaintiffs in the other cases as well." *Id.* at 555.  This removal of the specter of a joint trial neatly resolves Defendants' claims of potential prejudice, and there is no significant "hardship" placed on any party as a result of moving forward.  Thus, the second factor also supports the court's plan of issuing a stay.

Finally, and by way of contrast, the proposed alternative of severing and dismissing the remainder of Plaintiffs' claims would effectively terminate the MDL entirely and cause Plaintiffs substantial hardship. Dismissal of Plaintiffs' claims to effectuate a severance is plainly prejudicial to the extent that it inevitably exposes Plaintiffs to statutes of limitations concerns. *Holt v. County of Orange* (9th Cir. 2024) 91 F.4th 1013, 1021.  Plaintiffs would need to refile new complaints for each timely filed claim, and dismissal for improper joinder does not toll the statute of limitations. *Id.* On that basis, failure to consider the prejudice to Plaintiffs caused by dismissal of

claims constitutes an abuse of discretion. *Rush v. Sport Chalet, Inc.* 779 F.3d 973, 975 (9th Cir. 2015).

      Defendants' proposed solution of stipulating to a 90-day continuation of the statutes of limitations is not a workable solution. To echo the cold mathematical logic of the Court's "reality check," refiling a separate complaint for each claim would require Plaintiffs to file roughly 4,500 complaints every day (or 187 complaints every hour) in order to timely file all claims within the offered ninety-day period. Complying with that refiling deadline is plainly physically impossible. Moreover, to the extent that Plaintiffs would be required to file hundreds of thousands of separate complaints alleging the same set of claims on similar facts, the sheer numerosity of the prospective separate cases would enact a tremendously inefficient use of judicial resources distributed throughout the United States. The practical impact of forcing the Plaintiffs to litigate each claim separately, without the aid of consolidated motion practice and discovery, would ultimately enact a chilling effect on Plaintiffs' ability to prosecute these cases at all. The real impact would be to deprive Plaintiffs of the ability to seek effective redress; depriving them of their substantive due process right of recourse to the court system. As a result, enacting a stay and selecting bellwether claims plainly inflicts less hardship on the Parties collectively than severing and dismissing Plaintiff's claims.

      Additionally, the Parties have already engaged in extensive motion practice challenging the sufficiency of Plaintiffs' Complaint and this Court has issued orders determining critical issues in this litigation. In the event Plaintiffs' claims are dismissed and refiled, the new filings will be new operative complaints that will not benefit from the painstaking labors already undertaken by all parties at great effort and expense. Compounding this prejudice, the parties will be forced to essentially relitigate these pleading sufficiency issues anew hundreds of thousands of times in different forums; potentially to different results. There is simply no argument that

ordering an erasure and hard reset of all proceedings to date represents an efficient use of judicial resources.

Lastly, the Parties have all already acknowledged that preserving the MDL is in the best interests of judicial efficiency. Defendants specifically represented that "obviously one complaint would be simpler" when asking this Court to order the subrogation Plaintiffs to state all claims in a single consolidated pleading. *See* Subrogation Plaintiffs' Opposition to Motion to Strike at p. 6. Plaintiffs, and this Court, took Defendants at their word that a consolidated complaint was their preferred procedural mechanism for adjudicating these claims. Even after executing an abrupt about-face and moving for severance, Defendants repeatedly took the position that the MDL should continue. During an April 19, 2024 status conference, the Defendants' agreed that the MDL proceeding remained both viable and valuable:

> THE COURT: It seems to me that the MDL is still valuable. It will decide the liability issues, or at least get the discovery out there for the liability issues so that they can be tried either here or elsewhere. So, I think this docket is still viable. […]
>
> MR. BRENNAN: Your Honor, we would like to reflect on that. What we think and what we have suggested is we agree that the MDL is still viable. You know, for summary judgment, we had suggested when we get there that there could be various ways that it could be structured. What we're thinking is once we're through discovery, we'll have a better sense of what the most appropriate way is that things could be structured, and I think that's most likely, but we want to digest what you said obviously today as well, so we'll be prepared next time.

*See* Subrogation Plaintiffs' Opposition to Motion to Strike at p. 7-8. Later, in their Reply to the Motion to Sever, Defendants repeatedly advocated for the continuance of this MDL and the utility of a single consolidated complaint:

> "*Yet Defendants made clear in their Motion that they do not dispute coordination and/or consolidation in the MDL for pre-trial purposes, including the use of a consolidated complaint.*" (pp. 8-9).
>
> "*Defendants do not object to the coordination and/or consolidation of the Individual Actions in this MDL and in a consolidated complaint for purposes of streamlining this MDL.*" (p. 15)

*See* Defendants' Reply in Support of Motion to Sever, Doc. 430.

Although Defendants may now see an advantage of pressing this Court to dismiss the vast majority of Plaintiffs' claims, and then reconsolidating them or coordinating them, they are judicially estopped from doing so in light of their previous demands that Plaintiffs assert all claims on a single consolidated complaint. *Hamilton v. State Farm Fire & Cas. Co.* 270 F.3d 778, 782-783 (9th Cir. 2001). A party is precluded from taking a clearly inconsistent position in the same proceeding when it "has succeeded in persuading a court to accept that party's earlier position" and the party would "derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped." *Id.* This Court ordered Plaintiffs to file a consolidated Complaint that comported with Defendants' preferred procedures for adjudicating these cases. Today, Defendants insist that the previous litigation of hundreds of thousands of claims should be vacated, and claims refiled with new complaints. That is plainly inconsistent with the proceedings in this matter to date. Worse, a sudden reversal of this Court's prior orders, coupled with a dismissal of Plaintiffs' claims, would clearly present Defendants with an unfair advantage to Plaintiffs' detriment. Simple principles of equity and judicial estoppel should counsel this Court to pursue the much simpler, and fairer, path of simply selecting bellwethers and staying the non-bellwether cases.

Dated: June 18, 2024  Respectfully submitted,

COZEN O'CONNOR

By: *s/Elliott R. Feldman*

GROTEFELD HOFFMANN

By*:  s/Jonathan Tofilon*

LAW OFFICES OF ROBERT A. STUTMAN, P.C.

By:  *s/Timothy E. Cary*

BERGER KAHN, A LAW CORPORATION

By: *s/Craig S. Simon*

*Attorneys for Subrogation Plaintiffs*

# **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Subrogation Plaintiffs certifies that this brief contains 3,177 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 18, 2024        GROTEFELD HOFFMANN

                            By:    /s/ Adam Romney
                                   Adam Romney
                                   *Lead Attorneys for*
                                   *Subrogation Plaintiffs*