**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Alice S. Kim (SBN 317479)
AKim@jenner.com
Madeline P. Skitzki (SBN 318233)
MSkitzki@jenner.com
Jenna L. Conwisar (SBN 341521)
JConwisar@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:  +1 213 239 5100
Facsimile:   +1 213 239 5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
PBrennan@jenner.com
Michael T. Brody (*pro hac vice*)
MBrody@jenner.com
353 North Clark Street
Chicago, IL  60654-3456
Telephone:  +1 312 222 9350
Facsimile:   +1 312 527 0484

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ml-3052-JVS (KESx)<br><br>**HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S BRIEF RE: COURT'S PROPOSAL TO SEVER AND STAY AND CONDUCT BELLWETHERS**<br><br>Judge:   The Honorable James V. Selna<br>Ctrm:    10C |
| This document relates to:<br><br>ALL SUBROGATION CASES | |

# <u>TABLE OF CONTENTS</u>

INTRODUCTION ...................................................................................................... 1

ARGUMENT............................................................................................................. 1

    I.    Dismissal Will Not Prejudice the Subrogation Plaintiffs and Is Proper. ..................................................................................................... 2

    II.    The Proposed Bellwether Process Is Premature and Inappropriate. ........................................................................................ 4

    III.    A Stay Is Inappropriate. ................................................................... 6

    IV.    Severance Followed by Dismissal Presents the Fairest and Most Efficient Path Forward for These Cases. ........................................... 8

CONCLUSION........................................................................................................ 10

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S BRIEF RE: COURT'S
PROPOSAL TO SEVER AND STAY AND CONDUCT BELLWETHERS

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re 2004 DuPont Litig.*,
No. 04-191, 2006 WL 5097316 (E.D. Ky. Mar. 8, 2006)....................................6

*Acuna v. Brown & Root Inc.*,
200 F.3d 335 (5th Cir. 2000) ........................................................................10

*Adams v. Deva Concepts, LLC*,
No. 20-9056, 2023 WL 6518771 (S.D.N.Y. Oct. 4, 2023) .........................4, 6, 8

*Am. Pipe & Const. Co. v. Utah*,
414 U.S. 538 (1974) ........................................................................................3

*Andres v. Town of Wheatfield*,
621 F. Supp. 3d 395 (W.D.N.Y. 2022) ...........................................................10

*Auchard v. Tennessee Valley Auth.*,
No. 09-54, 2011 WL 444845 (E.D. Tenn. Feb. 1, 2011) ...................................5

*Bolding v. NAV-LVH Casino, LLC*,
No. 16-617, 2016 WL 7115889 (D. Nev. Oct. 25, 2016), *report
and recommendation adopted*, No. 16-617, 2016 WL 7116001 (D.
Nev. Dec. 6, 2016)...........................................................................................3

*In re Chevron U.S.A., Inc.*,
109 F.3d 1016 (5th Cir. 1997) .........................................................................4

*Crawford v. Prison Health Servs.*,
No. 12-409, 2012 WL 4740219 (W.D. Mich. Oct. 3, 2012)..............................3

*Crown, Cork & Seal Co. v. Parker*,
462 U.S. 345 (1983) ........................................................................................2

*In re Fosamax Prod. Liab. Litig.*,
No. 06-1789, 2012 WL 5877418 (S.D.N.Y. Nov. 20, 2012)............................10

*In re: Gen. Motors LLC Ignition Switch Litig.*,
No. 14-2543, 2016 WL 1441804 (S.D.N.Y. Apr. 12, 2016).............................4

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S BRIEF RE: COURT'S
PROPOSAL TO SEVER AND STAY AND CONDUCT BELLWETHERS

*Harris v. Gerth*,
    No. 08-12374, 2009 WL 368011 (E.D. Mich. Feb. 11, 2009) ............................ 3

*IO Grp., Inc. v. Does 1-19*,
    No. 10-3851, 2010 WL 5071605 (N.D. Cal. Dec. 7, 2010) ................................ 3

*Landis v. North American Co.*,
    299 U.S. 248 (1936) .............................................................................. 6, 7

*Lockyer v. Mirant Corp.*,
    398 F.3d 1098 (9th Cir. 2005) ................................................................ 6, 7

*Malcolm v. Nat'l Gypsum Co.*,
    995 F.2d 346 (2d Cir. 1993) ................................................................... 1, 9

*Meranus v. Gangel*,
    No. 85-9313, 1991 WL 120484 (S.D.N.Y. June 26, 1991) ............................... 6

*Zito v. Leasecomm Corp.*,
    233 F.R.D. 395 (S.D.N.Y. 2006) ............................................................... 6

**Rules**

Fed. R. Civ. P. 11 ....................................................................................... 8, 10

Fed. R. Civ. P. 20 ........................................................................................... 1

Fed. R. Civ. P. 21 ........................................................................................... 3

**Other Authorities**

Manual for Complex Litigation § 22.315 (4th ed. 2004) ...................................... 5

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S BRIEF RE: COURT'S
PROPOSAL TO SEVER AND STAY AND CONDUCT BELLWETHERS

## INTRODUCTION

"The benefits of efficiency can never be purchased at the cost of fairness." *Malcolm v. Nat'l Gypsum Co.*, 995 F.2d 346, 350 (2d Cir. 1993). At the June 10, 2024 hearing, the Court ordered the parties to brief their positions on the Court's proposal to stay the claims of all but one insured per first named Subrogation Plaintiff and to use those ten cases as bellwethers. June 10, 2024 Tr. at 25:23–26:14.[1] Although Defendants understand the efficiency and prejudice concerns motivating that proposal, ordering a stay and bellwethers at this time is fundamentally unfair to Defendants and will ultimately result in significant inefficiencies.

As discussed further below, severance and dismissal (1) will not prejudice the Subrogation Plaintiffs because the dismissed claims can be tolled; and (2) will present the fairest and most efficient path forward because the Subrogation Plaintiffs will necessarily re-file only those cases with sufficient factual and legal support, and separation into individual cases will facilitate the resolution of those that remain. Further, bellwethers, which must be "representative" of the universe of cases, should not be considered until discovery is sufficiently complete, and even then, may not be valuable in this matter. Finally, even if the Court were inclined to consider bellwethers now, staying the non-bellwether cases would result in significant inefficiency and prejudice to Defendants.

## ARGUMENT

In its Tentative Order, the Court found that (1) the Subrogation Plaintiffs did not satisfy either prong of Rule 20 and were therefore misjoined; (2) severance of the Subrogation Plaintiffs and their insureds' claims was warranted to remedy

---

[1] Although the Court's Minutes following the hearing ordered briefing on "the viability of staying all but the first named Plaintiff and conducting a bellwether case for each individual action," Dkt. 453, the Court's statements at the hearing make clear it is contemplating a stay of the "first [named] plaintiff *and* all but the first [named] plaintiff's first claim." June 10, 2024 Tr. at 18:2–6 (emphasis added); *see, e.g.*, *id*. at 25:23–26:2 (repeatedly referring to the "first of the first").

misjoinder as well as to promote judicial economy and fundamental fairness and to avoid prejudice to Defendants; and (3) severance should be effectuated via dismissal.  At the June 10 hearing, the Subrogation Plaintiffs did not challenge the Court's finding regarding misjoinder and did not dispute that severance would remedy the prejudice to Defendants of joinder.  Instead, the Subrogation Plaintiffs argued that severance would have no practical benefit, and they would be prejudiced by dismissal.  The Subrogation Plaintiffs are wrong on both counts.  The Court need not reconsider its Tentative Order.  Severance plus dismissal, rather than severance with a stay and bellwethers, is the fairest and most efficient path forward.

# I.   Dismissal Will Not Prejudice the Subrogation Plaintiffs and Is Proper.

The Subrogation Plaintiffs argued on June 10 that they would be prejudiced by dismissal of the severed claims for one reason: Because the statute of limitations will run from the date the new cases are refiled, they will be deprived of the benefit of the original filing date for limitations purposes.  *Id.* at 4:21–5:16.  This argument ignores the many possibilities for tolling.  Because any statute of limitations concerns can be easily addressed, and the Subrogation Plaintiffs have no other basis for alleging prejudice from dismissal, the Court should sever and dismiss all but one insured's claim for each of the first named Subrogation Plaintiffs, consistent with the Tentative Order.[2]

*First*, the statute of limitations was tolled from March 10, 2023—when *State Automobile Mutual Insurance Company v. Hyundai Motor America*, No. 8:23-cv-00443 (C.D. Cal.), was filed—until April 22, 2024, when the Court struck the class allegations.  The Supreme Court has held that the commencement of a class action tolls the statute of limitations as to all putative class members until class certification is denied.  *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353–54 (1983) (citing

---

[2] As Defendants noted at the June 10 hearing, many of the Subrogation Plaintiffs' claims would be barred by the statute of limitations and additional doctrines even with such tolling.  June 10, 2024 Tr. at 22:1–8.

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S BRIEF RE: COURT'S PROPOSAL TO SEVER AND STAY AND CONDUCT BELLWETHERS

*Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538, 554 (1974)).   All Subrogation Plaintiffs were putative class members of the stricken class, thus tolling their claims.

*Second*, the Court may order equitable tolling such that any cases that are re-filed in the same original district within a specified period of time (*e.g.*, 90 days) relate back to the original dates of filing for statute of limitations purposes.   In severing and dismissing parties, courts have permitted plaintiffs to relate their new cases filed in the same forum back to the original filing date.  *See, e.g.*, *IO Grp., Inc. v. Does 1-19*, No. 10-3851, 2010 WL 5071605, at *4 (N.D. Cal. Dec. 7, 2010) (severing and dismissing defendants and noting that, "[i]f plaintiff files new complaints within twenty (20) days, such actions shall be deemed a continuation of the original action for purposes of the statute of limitations"); *Bolding v. NAV-LVH Casino, LLC*, No. 16-617, 2016 WL 7115889, at *2 (D. Nev. Oct. 25, 2016), *report and recommendation adopted*, No. 16-617, 2016 WL 7116001 (D. Nev. Dec. 6, 2016) (severing and dismissing plaintiff and permitting him to "refile his claims nunc pro tunc, so they will relate back to the time of the filing of this original complaint to avoid the effect of this order resulting in violations of statutes of limitations" to "assure that no substantial right will be prejudiced by the severance"); *Crawford v. Prison Health Servs.*, No. 12-409, 2012 WL 4740219, at *3 (W.D. Mich. Oct. 3, 2012) (severing and dismissing plaintiffs and finding that "the time during which the current suit was pending will . . . toll the statute of limitations"); *Harris v. Gerth*, No. 08-12374, 2009 WL 368011, at *2 (E.D. Mich. Feb. 11, 2009) (severing and dismissing defendants and finding no prejudice to plaintiff because "the time during which the current suit was pending will . . . toll the statute of limitations").  This Court can do the same.

Discretionary tolling aligns with the Court's authority under Rule 21 to "drop a party" on "just terms."  The Court can toll either for the entire period from the filing of the complaints or for the period between the date the class allegations were stricken and the date the Court enters the order on the motion to sever, conditioned

on the Subrogation Plaintiffs filing in the specified time period.  Accordingly, given the Court's ability to prevent prejudice caused by the running of the statute of limitations, severance with dismissal is appropriate here.

## II.  **The Proposed Bellwether Process Is Premature and Inappropriate.**

As the Fifth Circuit explained, "[t]he term bellwether is derived from the ancient practice of belling a wether (a male sheep) selected to lead his flock.  The ultimate success of the wether selected to wear the bell was determined by whether the flock had confidence that the wether would not lead them astray."  *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997).  There is no question the proposed bellwether process here would lead the parties and the Court "astray."  The process will not generate representative cases (and it is not clear that representative cases could even be selected here).  Additionally, even if it made sense to use bellwethers in this matter, those bellwethers should not be selected until sufficient discovery has been conducted to identify representative cases, both to promote efficiency and protect Defendants' due process rights.  *See id.* at 1020 (finding that courts must consider "due process concerns" in employing bellwethers).

As a threshold matter, the Court's proposed bellwethers would not have any value because they would not be "representative."  *See, e.g.*, *id.* at 1019 (noting that for a bellwether trial "to achieve its value ascertainment function for settlement purposes or to answer troubling causation or liability issues common to the universe of claimants," it must be "representative[]," *i.e.*, "randomly selected" and "of sufficient size so as to achieve statistical significance"); *Adams v. Deva Concepts, LLC*, No. 20-9056, 2023 WL 6518771, at *5 (S.D.N.Y. Oct. 4, 2023) ("For bellwether trials to serve as effective 'information indicators' or to produce reliable information, their test cases must be representative."); *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-2543, 2016 WL 1441804, at *9 (S.D.N.Y. Apr. 12, 2016) ("[B]ecause the primary purpose of bellwether trials is to provide data points for settlement discussions with respect to the universe of cases, the goal is to select

the 'best' representatives of the universe of cases . . . ."); MANUAL FOR COMPLEX LITIGATION § 22.315 (4th ed. 2004) ("If individual trials, sometimes referred to as bellwether trials or test cases, are to produce reliable information about other mass tort cases, the specific plaintiffs and their claims should be representative of the range of cases.").  Indeed, the Subrogation Plaintiffs admitted at the June 10 hearing that a bellwether process involves "selecting claims that would be representative of all the other claims."  June 10, 2024 Tr. at 7:22–25.  The Court's proposed method of selection, which is based solely on the Subrogation Plaintiffs that happen to be listed first in each case (and then either the first insureds who happen to be listed on the spreadsheets or some other method of random- or party-selection), would not generate representative cases, as it does not involve any scientific selection method.

Further, a bellwether process would be unlikely to provide value here given the individualized nature of the subrogation claims at issue.  As this Court has previously found, the insureds' claims involve, among other differences, (i) insurance policies that vary on an insurer-by-insurer and likely an insured-by-insured basis; (ii) 50 states' laws (at two levels of inquiry); (iii) varying factual scenarios and issues of causation; and (iv) differing superior equities analyses that depend, in part, on the knowledge of and the premiums collected by each Subrogation Plaintiff.  Given the number of potentially dispositive variables—and only one allegedly common issue, *i.e.*, the "defect"—a "representative sample" (if one could even be selected) would likely include thousands of cases, providing little efficiency.  Indeed, bellwethers do not make sense where they would "at best, determine a single issue," and "individualized causation and damages determinations [would] remain in the[] cases." *Auchard v. Tennessee Valley Auth.*, No. 09-54, 2011 WL 444845, at *3 (E.D. Tenn. Feb. 1, 2011).

Even assuming bellwethers may be appropriate at some point in this matter, this is not the right time to consider them.  "Courts should be wary of premature

decision-making regarding the bellwether process . . . ." *Adams*, 2023 WL 6518771, at \*3.  To that end, courts have made clear that discovery must proceed to identify "the pertinent characteristics and categorization of the plaintiffs" for purposes of selecting bellwethers.  *Meranus v. Gangel*, No. 85-9313, 1991 WL 120484, at \*1 (S.D.N.Y. June 26, 1991); *see also Adams*, 2023 WL 6518771, at \*7 ("Because the Court cannot choose 'representative plaintiffs for bellwether discovery . . . in a vacuum,' . . . plenary discovery must be conducted before, if at all, proceeding to the staggered, bellwether-centric approach . . . . Proceeding prematurely now would produce only inefficiencies and delay.") (citation omitted); *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 400 (S.D.N.Y. 2006) (where plaintiffs requested a bellwether process, finding that "[w]hether there is some rational basis for deciding how to group the cases for trial is a matter best deferred until the close of discovery"); *In re 2004 DuPont Litig.*, No. 04-191, 2006 WL 5097316, at \*2 (E.D. Ky. Mar. 8, 2006) ("concur[ring]" with defendants' objection to bellwether approach based on "due process and Seventh Amendment concerns" and finding bellwethers "not appropriate" "at least until additional discovery [was] obtained by defendants").  Here, all the insureds' cases must proceed through discovery to identify their material variables, categorize the cases accordingly, and determine whether a representative sample of cases can be selected.

## III.   **<u>A Stay Is Inappropriate.</u>**

Even if the Court were inclined to pursue a bellwether process now, it should not stay the remaining cases/claims.  Although "[a] district court has discretionary power to stay proceedings in its own court under *Landis v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936)," a stay is not appropriate here. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005).  In deciding whether to issue a stay, courts must consider "the competing interests which will be affected by the granting or refusal to grant a stay." *Id.* at 1110 (citing *Landis*, 299 U.S. at 255).  Those competing interests include: (1) "the possible damage which may result

from the granting of a stay," (2) "the hardship or inequity which a party may suffer in being required to go forward," and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *Id.* (citing *Landis*, 299 U.S. at 255).  None of these factors support granting the proposed stay here.

*First*, if the Court enters the proposed stay, Defendants will not have the opportunity to seek discovery from over 400 Subrogation Plaintiffs for several hundred thousand insureds' claims until after the trials of ten insureds' claims (from only 10 Subrogation Plaintiffs).  There is no way for this matter to reach resolution without the Subrogation Plaintiffs providing all relevant discovery.  For example, on an insurer level, to weigh the viability of the claims, Defendants need discovery regarding each Subrogation Plaintiff's knowledge of the alleged theft vulnerability of vehicles without immobilizers.   And on an insured level, Defendants need discovery regarding the circumstances surrounding the theft of each vehicle and the insureds' alleged reliance on Defendants' representations.  Without this information, Defendants cannot evaluate the Subrogation Plaintiffs' claims in the manner necessary for global resolution.  Pushing off this discovery until summary judgment or trials on the ten bellwether cases have been completed will add several years to the proceedings, which is undoubtedly "damag[ing]" to Defendants and inefficient for the parties and the Court.  *Lockyer*, 398 F.3d at 1110.  And, as discussed further below, the Court can achieve efficiencies without a stay.

*Second*, neither side faces any hardship or inequity if the cases are not stayed.  The Subrogation Plaintiffs are seeking over a billion dollars in damages and must be required to provide discovery for all their claims in order for the matter to proceed to resolution.   Defendants would be significantly prejudiced if the Subrogation Plaintiffs were able to avoid their discovery burden almost entirely while Defendants' discovery burden remained unchanged.   After all, any burden the

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S BRIEF RE: COURT'S
PROPOSAL TO SEVER AND STAY AND CONDUCT BELLWETHERS

1   Subrogation Plaintiffs face "is the burden they elected" in choosing to bring their

2   claims. *Adams*, 2023 WL 6518771, at *8.

3   **IV.     Severance Followed by Dismissal Presents the Fairest and Most Efficient**

4          **Path Forward for These Cases.**

5          Severance effectuated via dismissal will narrow the claims at issue, and the

6   separation of the claims into individual cases will facilitate resolution.  As an initial

7   matter, if the Court severs on an insured-by-insured basis and dismisses all but one

8   insured's claim for each of the first named Subrogation Plaintiffs, the Subrogation

9   Plaintiffs will necessarily only re-file the claims of insureds for which they possess

10  independent factual and legal support sufficient to meet their Rule 11 obligations.

11  That will appropriately narrow the claims at issue, as the Subrogation Plaintiffs have

12  thus far had no incentive to investigate the claims of individual insureds because

13  they did not identify those insureds in their complaints.

14         Indeed, the claims spreadsheets the Subrogation Plaintiffs submitted as

15  Exhibit C to the ACC and provided as part of their initial disclosures/discovery

16  responses make clear that they have put minimal effort into limiting their claims to

17  those tied to the allegations in the ACC (or their individual complaints).   For

18  example, the claims spreadsheets include entries for vehicles stolen with keys left in

19  the ignition and vehicles whose catalytic converters (and nothing else) were stolen.

20  And the majority of the entries on the spreadsheets do not provide enough detail to

21  determine whether the claims are even related to the allegations in the complaints.

22  Further, the Subrogation Plaintiffs have shifted their claims to encompass vehicles

23  *with* immobilizers after they contended in the motion to dismiss hearing that "this

24  case is not about cars that are stolen for reasons other than the thief-friendly design"

25  (*i.e.*, vehicles *stolen for reasons other than not containing* immobilizers).  Nov. 13,

26  2023 Tr. at 23:11–17.   Put simply, requiring the Subrogation Plaintiffs to file

27  separate complaints for each insured will cause the Subrogation Plaintiffs to focus

28  their theories of liability and help limit the universe to only potentially viable claims.

Equally importantly, and as the Court noted in its Tentative Order, separation into individual cases is necessary to protect Defendants' due process right to defend against each individual claim at every stage of the case. Tentative Order at 13 ("Defendants assert that 'severance is necessary now to prevent the Subrogation Plaintiffs from insulating their claims from attack at all stages before trial.' According to Defendants, they 'have a due process right to defend against the claims on an insurer-by-insurer and insured-by-insured basis,' which cannot be done without severance. The Court finds the Subrogation Plaintiffs' argument to delay consideration of severance of claims and plaintiffs until after discovery unpersuasive.") (citing Motion and Reply). As the Second Circuit aptly put it, "[t]he systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's—and defendant's—cause not be lost in the shadow of a towering mass litigation." *Malcolm*, 995 F.2d at 350. Defendants must be able to address and dispose of each insured's claims on an individualized basis. The claims spreadsheets, which the Subrogation Plaintiffs can revise at any time (and indeed, have already revised) and are not bound by, do not allow for such disposition. Moreover, severance into individualized cases is necessary for the Court to apply the appropriate choice-of-law inquiry on a claim-by-claim basis. *See* Tentative Order at 11 (agreeing that severance is necessary to conduct a choice-of-law inquiry for each insured's claim).

The Court has options for creating efficiencies in handling the individual cases. The Subrogation Plaintiffs endorsed this view at the June 10 hearing in suggesting that the parties could come up with "creative solutions" for "narrow[ing]" the claims and issues. June 10, 2024 Tr. at 11:22–24. Even if the claims are severed and dismissed, and the Subrogation Plaintiffs re-file hundreds of thousands of cases, the Court may still address certain legal issues *en masse*, as the Subrogation Plaintiffs acknowledged. *Id.* at 11:24–12:1; *see also id.* at 17:15–17 ("[I]f it's . . . a dispositive motion process, then only the law would apply, and it would apply to all

9

1    claims.").[3]  For example, the Court can rule that any cases involving vehicles with

2    immobilizers are inconsistent with the theories of liability alleged in the individual

3    complaints (or the ACC).  Or the Court can rule that vehicles that are not stolen but

4    only "vandalized" are similarly inconsistent with the complaints' allegations.  If the

5    Court rules on such issues, it will be most efficient for the parties and the Court to

6    eliminate *cases* rather than *entries in spreadsheets* (that may not even be

7    identifiable).

8        Relatedly, the Court can enter case management orders to expedite resolution

9    at the appropriate time, including a *Lone Pine* or similar order to facilitate

10    categorization and elimination of meritless claims.  *See Acuna v. Brown & Root Inc.*,

11    200 F.3d 335, 340 (5th Cir. 2000) (affirming trial court's issuance of orders for

12    affidavits that "essentially required . . . information which plaintiffs should have had

13    before filing their claims pursuant to Fed.R.Civ.P. 11(b)(3)"); *Andres v. Town of*

14    *Wheatfield*, 621 F. Supp. 3d 395, 401 (W.D.N.Y. 2022) (issuing order to provide "a

15    mechanism for categorizing claims and eliminating potentially frivolous claims");

16    *In re Fosamax Prod. Liab. Litig.*, No. 06-1789, 2012 WL 5877418, at *3 (S.D.N.Y.

17    Nov. 20, 2012) (issuing *Lone Pine* order and reasoning, in part, that "the primary

18    purpose of *Lone Pine* orders is to eliminate meritless cases").  In sum, severance

19    plus dismissal, rather than a stay and bellwethers, will best facilitate resolution.

20                     **<u>CONCLUSION</u>**

21        For the foregoing reasons, Defendants respectfully request that the Court

22    (1) reject its stay and bellwether proposal; and (2) enter its Tentative Order on the

23    Motion to Sever and sever and dismiss all but one insured for each of the first named

24    Subrogation Plaintiffs.

25

26

---

27    [3] Although the Subrogation Plaintiffs contended that these options would not be

28    available "if these claims are severed and spread throughout the country," the
   severed cases can still be consolidated in this MDL.  June 10, 2024 Tr. at 12:1–3.

HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S BRIEF RE: COURT'S
PROPOSAL TO SEVER AND STAY AND CONDUCT BELLWETHERS

1    Dated:  June 18, 2024                    JENNER & BLOCK LLP

2
                                    By:   */s/ Peter J. Brennan*
3                                        Kate T. Spelman
                                         Alice S. Kim
4                                        Madeline P. Skitzki
                                         Jenna L. Conwisar
5                                        JENNER & BLOCK LLP
                                         515 South Flower Street, Suite 3300
6                                        Los Angeles, CA  90071-2246
                                         Telephone:  +1 213 239 5100
7                                        Facsimile:   +1 213 239 5199
                                         KSpelman@jenner.com
8                                        AKim@jenner.com
                                         MSkitzki@jenner.com
9                                        JConwisar@jenner.com

10                                       Peter J. Brennan (*pro hac vice*)
                                         Michael T. Brody (*pro hac vice*)
11                                       JENNER & BLOCK LLP
                                         353 North Clark Street
12                                       Chicago, IL  60654-3456
                                         Telephone:  +1 312 222 9350
13                                       Facsimile:   +1 312 527 0484s
                                         PBrennan@jenner.com
14                                       MBrody@jenner.com

15                                       *Attorneys for Defendants*

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    11

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Hyundai Motor America and Kia America, Inc., certifies that this brief consists of 10 pages, which complies with the page limit set by court order dated June 11, 2024 (Dkt. 453).

Dated:  June 18, 2024

*/s/ Peter J. Brennan*
Peter J. Brennan