Steve W. Berman
HAGENS BERMAN SOBOL SHAPIRO LLP
1301 Second Avenue, Suite 2000
Seattle, WA 98101

Elizabeth A. Fegan
FEGAN SCOTT LLC
150 S. Wacker Dr., 24th Floor
Chicago, IL 60606

Kenneth B. McClain
HUMPHREY, FARRINGTON & McCLAIN, P.C.
221 W. Lexington Ave, Suite 400
Independence, MO 64050

Roland Tellis
BARON & BUDD, P.C.
15910 Ventura Blvd., Suite 1600
Encino, CA 91436

*Plaintiffs' Consumer Class Action Leadership Counsel*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re:  KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ml-3052 JVS(KESx) |
| | **CONSUMER CLASS PLAINTIFFS' OPPOSITION TO *MARVIN* & *HENRY* PLAINTIFFS' MOTION FOR FEE AND EXPENSE AWARD** |
| *This document relates to*: | |
| CONSUMER CLASS ACTION | Judge: Hon. James V. Selna<br>Date:  July 15, 2024<br>Time: 1:30 p.m.<br>Place: 411 W. Fourth St.<br>        Santa Ana, CA  92701<br>        Courtroom 10C |

# TABLE OF CONTENTS

I.  INTRODUCTION .................................................................................................. 1

II.  FACTS AND PROCEDURAL HISTORY ........................................................... 2

    A.  The formation of this MDL and Plaintiffs' Leadership's successful efforts to litigate and ultimately resolve this case. .................................... 3

    B.  The *Marvin* action. ..................................................................................... 5

III.  LEGAL STANDARD ........................................................................................... 7

IV.  ARGUMENT ......................................................................................................... 8

    A.  Barton fails to demonstrate how it created, increased, protected, or preserved the Common Fund or otherwise provided substantial benefits to the Class. ................................................................................................... 8

    B.  Alternatively, if the Court were to consider the merits of Barton's request for fees and costs for its pre-MDL work, the request greatly exceeds any benefit that Barton provided the Class. .................................................... 13

    C.  Barton's expenses should not be paid from the Common Fund. ............. 15

V.  CONCLUSION ................................................................................................... 16

1

CONSUMER CLASS PLAINTIFFS' OPPOSITION TO *MARVIN* AND *HENRY* PLAINTIFFS' MOTION FOR FEE AND EXPENSE AWARD
CASE NO.:  8:20-CV-01584-SB-JDE

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*AdTrader, Inc. v. Google LLC*,
    2020 WL 1921774 (N.D. Cal. March 24, 2020) ................................................15

*Bautista-Perez v. Juul Labs, Inc.*,
    2022 WL 2239838 (N.D. Cal. June 22, 2022)...................................................15

*In re Cendant Corp. Litig.*,
    404 F.3d 173 (3rd Cir. 2005).........................................................................8, 10

*Class Plaintiffs v. Jaffe & Schlesinger, P.A.*,
    19 F.3d 1306 (9th Cir. 1994) ........................................................................7, 8

*Dyer v. Wells Fargo Bank, N.A.*,
    303 F.R.D 326 (N.D. Cal. 2014) .......................................................................14

*In re Educ. Testing Serv. Praxis Principles of Learning & Teaching
Grades 7-12 Litig.*, 555 F. Supp. 2d 661 (E.D. La. 2007)...................................8

*Garcia v. Los Angeles Cnty. Sheriff's Dep't*,
    2015 WL 13646906 (C.D. Cal. Sept. 14, 2015).................................................14

*Henry v. Kia America, Inc.*,
    C.D. Cal. Case No. 8:22-cv-01729.............................................................*passim*

*In re Heritage Bond Litig.*,
    No. 02-ML-1475 DT, 2005 WL 1594403 (C.D. Cal. June 10, 2005).........*passim*

*Indep. Living Ctr. of S. Cal., Inc. v. Kent*,
    909 F.3d 272 (9th Cir. 2018) .............................................................................8

*Marvin v. Kia America, Inc. et al.*,
    E.D. Wis. Case No. 2:21-cv-01146-PP ......................................................*passim*

*Nitsch v. DreamWorks Animation SKG Inc.*,
    2017 WL 2423161 (N.D. Cal. June 5, 2017)....................................................16

*Rodriguez v. Disner*,
    688 F.3d 645 (9th Cir. 2012) ..............................................................................7

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
914 F.3d 623 (9th Cir. 2019) ............................................................................... 8

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................... 7, 10

# I.    INTRODUCTION

At the outset of this litigation, Court-appointed lead counsel for the Consumer Plaintiffs ("Plaintiffs' Leadership") requested that all plaintiffs' counsel submit monthly time reports for any authorized common benefit work performed in this MDL. Many firms complied, but Barton Cerjack, S.C. ("Barton") did not. And, for good reason – Barton *did not* perform *any* common benefit work for the Consumer Class in this MDL. Instead, Barton opted to wait until Plaintiffs' Leadership negotiated and obtained preliminary approval of a settlement that is valued at more than $275.5 million (*see* Dkt. No. 376 at 13), which includes a $145 million Consumer Class Action Settlement Fund (the "Common Fund"), to seek approximately ***$2.2 million*** in attorneys' fees and costs from the Common Fund for work Barton performed ***prior to the formation of this MDL*** in two of its cases: (1) *Marvin v. Kia America, Inc. et al.*, E.D. Wis. Case No. 2:21-cv-01146-PP ("*Marvin*"), a class action case brought only on behalf of Wisconsin plaintiffs; and (2) *Henry v. Kia America, Inc.*, C.D. Cal. Case No. 8:22-cv-01729 ("*Henry*"), a class action case brought on behalf of a nationwide class, but after the JPML petition was filed.[1]

To justify its unwarranted request, Barton contends, among other things, that Plaintiffs' Leadership could not have negotiated the $145 million Common Fund without the *Marvin* First Amended Complaint, which notably was *filed under seal*, relied exclusively on *publicly available* information, and was the subject of a pleading challenge solely under Wisconsin law that was *never ruled on*. Barton's efforts to litigate its own cases prior to the formation of this MDL simply had no connection to the comprehensive benefits that Plaintiffs' Leadership obtained for the Consumer Class. Indeed, Plaintiffs' Leadership undertook significant efforts ***without*** assistance from Barton to litigate this case and secure the Common Fund, including: (1) an extensive independent investigation of the Class Vehicles and the Theft Prone Defect; (2) drafting

---

[1] The *Henry* Complaint was filed under seal and remains under seal to this day.

1

Consumer Class Plaintiffs' Opposition to *Marvin* and *Henry* Plaintiffs' Motion for Fee and Expense Award
Case No.:   8:20-cv-01584-SB-JDE

and filing a 897-page Consolidated Class Action Complaint, in which 85 Class Representatives bring nationwide claims, and claims on behalf of 50 state subclasses; (3) preparing a draft opposition to Defendants' 47-page motion to dismiss claims brought under the laws of California, Missouri, Florida, New York, Pennsylvania, and Texas; (4) engaging in several months of negotiations with Defendants that resulted in a non-reversionary Common Fund; (5) engaging with Defendants in confirmatory discovery, including an interview of Defendants' expert regarding the Software Upgrade; (6) securing Preliminary Approval of the Consumer Class Settlement; and (7) working to provide notice to the proposed class as directed by the Court.

Barton simply cannot meet its heavy burden of establishing that its pre-MDL work played any role, let alone a substantial role, in creating, increasing, protecting, or preserving the Common Fund negotiated here by Plaintiffs' Leadership, or that Barton's pre-MDL work provided a substantial benefit to the Consumer Class, independent of the work performed by Plaintiffs' Leadership. In sum, for the reasons addressed below, the Court should deny Barton's request for attorneys' fees and costs.

## II.    FACTS AND PROCEDURAL HISTORY

Approximately four years ago, car thieves began exploiting a design defect (the "Theft Prone Defect") in certain Hyundai and Kia vehicles (the "Class Vehicles") that made them highly susceptible to theft. *See* Dkt No. 84, Consolidated Amended Consumer Class Action Complaint ("CAC"), ¶¶ 8-9. The outbreak of thefts accelerated rapidly as individual car thieves and gangs such as the "Kia Boyz" posted "how to" videos on social media platforms. The increase in thefts of Class Vehicles triggered sustained nationwide media attention over the last couple of years on how the lack of adequate anti-theft system features were harming owners and lessees of Class Vehicles and endangering communities. *See, e.g.*, *id.* ¶¶ 9-10, 1353-85.

Alerted by the nationwide attention, law firms across the United States filed dozens of class actions that were based on information provided by the owners and lessees of Class Vehicles, publicly available information on social media and in news

reports, articles in automotive magazines, statements made by politicians, "Hot Wheels" reports on automobile thefts, and reports from police department across the country. *See, e.g.*, *id.* ¶¶ 3-10, 1358-87.

## A.    The formation of this MDL and Plaintiffs' Leadership's successful efforts to litigate and ultimately resolve this case.

On December 13, 2022, the JPML consolidated and transferred this action to this Court. On February 9, 2023, the Court appointed Steve W. Berman, Elizabeth A. Fegan, Kenneth B. McClain and Roland Tellis as the Plaintiffs' Consumer Class Action Leadership Committee ("Lead Counsel"), after considering almost two dozen applications for various leadership positions, including James Barton's application. *See* Dkt. No. 21; *see also* Dkt. No. 50 at 3. The Court also appointed three attorneys to serve on a Fact Discovery Committee and three attorneys to serve on an Expert Discovery Committee (along with Lead Counsel, the "Plaintiffs' Leadership"). Dkt No. 50 at 3. While Mr. Barton's leadership application and oral presentation detailed the work his firm did in *Marvin* and *Henry*, Dkt. No. 21; Dkt. No. 51 at 34:6-39:24, Mr. Barton was not chosen by the Court to be Lead Counsel or to serve on the Fact or Expert Discovery Committees.

Plaintiffs' Leadership went right to work and continued their extensive investigations of the Class Vehicles and the Theft Prone Defect. *See* Dkt No. 378 ¶¶ 14, 24 (detailing counsel's investigative efforts). The information compiled through these exhaustive efforts laid the foundation for Plaintiffs' CAC and informed Plaintiffs' settlement negotiations with Defendants. *Id.* ¶ 24.

On April 10, 2023, Plaintiffs filed their 897-page CAC. *See* Dkt. No. 84. Among other things, the CAC carefully documents the Theft Prone Defect and Defendants' decision not to add engine immobilizers to the Class Vehicles. CAC ¶¶ 37-1206, 1523-28, and 1536-4817. Barton did not participate in Plaintiffs' Leadership's investigation leading up to the filing of the CAC, nor did Barton assist with preparing the CAC.

On May 1, 2023, Defendants filed a 47-page motion to dismiss claims brought in

the CAC under the laws of six states—California, Missouri, Florida, New York, Pennsylvania, and Texas. Dkt. No. 95. None of the state laws at issue in Defendants' motion were at issue in the single-state *Marvin* action. Mot. at 2:4-10. Upon receipt of Defendants' motion, Plaintiffs began preparing an opposition brief. Dkt. No. 378 ¶ 28. This briefing helped deepen Plaintiffs' understanding of the case's strengths and weaknesses. *Id.* Barton did not help draft Plaintiffs' opposition to Defendants' motion to dismiss the CAC.

On May 18, 2023, after months of mediations and discussions between Lead Counsel and Defendants' counsel, under the guidance of the Hon. Margaret M. Morrow (Ret.), the parties informed the Court that they had reached a settlement in principle. Dkt. No. 107. Lead Counsel engaged in extensive negotiations with Defendants over the terms of the Settlement Agreement. Dkt. No. 378 ¶ 33. Barton was not a part of the settlement discussions to resolve this MDL, nor did it play a role in negotiating the Settlement Agreement.

Confirmatory discovery then began immediately, with Plaintiffs serving their First Set of Requests for Production of Documents on Defendants on May 18, 2023. *Id.* ¶ 37. Plaintiffs' First Set of Requests sought documents related to, *inter alia*: (1) Defendants' investigation about the theft risk in Class Vehicles; (2) Defendants' interactions with NHTSA concerning the Theft Prone Defect; (3) the development, efficacy, and roll-out of the Software Upgrade; (4) insurance coverage for Class Vehicles; and (5) Defendants' efforts to mitigate the risk of theft in Class Vehicles. *Id.*

On December 13, 2023, Plaintiffs served Defendants with their Second Set of Requests for Production, which sought documents concerning the efficacy of the Software Upgrade and the analyses performed by Defendants' expert, James Smith, relating to the same. *Id.* ¶ 38. Barton did not assist with preparing any of the discovery served on Defendants nor did Barton assist in reviewing the documents produced by Defendants in response to Plaintiffs' confirmatory discovery.

After receiving documents regarding Mr. Smith's analysis of the Theft Prone

Defect, Plaintiffs interviewed him about Defendants' development of the Software Upgrade, a technical analysis of the Software Upgrade and how it operates, incidents of Class Vehicle thefts which had the Software Upgrade installed in the vehicles, Defendants' roll-out of the Software Upgrade, and anti-theft devices made available to Class Vehicles that are not eligible for the Software Upgrade, including the ignition cylinder protectors announced by Defendants in December 2023. *Id.* ¶ 40. Barton did not contribute to counsel's preparation for, nor attend, Mr. Smith's interview.

On July 20, 2023, Plaintiffs moved for preliminary approval of the initial settlement and for class certification. *Id.* ¶ 34. While the Court granted the motion for class certification, it suggested changes to the Settlement. *Id.*; *see also* Dkt. No. 200. The parties spent another six weeks negotiating the Amended Settlement Agreement. *See* Dkt. No. 228. On October 31, 2023, the Court preliminarily approved the Settlement negotiated by Lead Counsel and approved issuing notice to the Class. *See* Dkt. Nos. 256, 259. As before, Barton did not assist Lead Counsel in securing preliminary approval of the Settlement. Nor did Barton assist Lead Counsel with the extensive Class notice process or respond to the hundreds of Class member inquiries regarding the Settlement. *See* Dkt No. 466 at 4.

## B.   The *Marvin* action.

Barton filed *Marvin* in the Milwaukee County Circuit Court under seal on behalf of Wisconsin residents on June 23, 2021. Mot. at 2:4-10, 3:16-18. The case was subsequently removed to the Eastern District of Wisconsin but remained under seal. *See Marvin v. Kia America, Inc. et al.*, E.D. Wis. Case No. 2:21-cv-01146-PP, renumbered as C.D. Cal. Case No. 8:22-cv-02304-JVS-KESx ("*Marvin* Dkt." No. 1).

According to Barton, after filing *Marvin*, the firm "intensified" its research into "immobilizer technology and the adoption of this technology by automobile manufacturers, related crime data, NHTSA petitions, and communications between Kia and Hyundai." Mot. at 2:13-18. Barton also spent $7,500 on an engineering expert to "ensure [their] theory was correct." *See* Declaration of James Barton ("Barton Decl."),

1   Dkt. No. 380, ¶ 14. Barton's Declaration makes no mention of the parties in *Marvin*
2   engaging in any discovery.

3        Barton filed the *Marvin* First Amended Complaint ("*Marvin* FAC") under seal
4   on November 4, 2021. *See Marvin* Dkt. No. 12. The *Marvin* defendants moved to
5   dismiss the sealed *Marvin* FAC on December 22, 2021. *Id.,* Nos. 19-20. The *Marvin*
6   plaintiffs filed their opposition on February 28, 2022, and the *Marvin* defendants filed
7   a reply on March 25, 2021. *Id.,* Nos. 30, 32. The *Marvin* court never heard oral
8   arguments nor ruled on the *Marvin* defendants' motion to dismiss.

9        A redacted version of the *Marvin* FAC was filed on the public docket on July 8,
10  2022. *Id.* at No. 35. Even though details regarding the Theft Prone Defect were already
11  publicly available, the *Marvin* court granted the parties request to redact some of those
12  details in the *Marvin* FAC. *Id.* at No. 34; Mot. at 3:21-4:12. Indeed, Barton admits in
13  the Motion that the redactions were meant to shield "less-widely reported—***albeit,***
14  ***readily discernable***—aspects of the defect from the passing glance of the public eye."
15  Mot. at 3:17-20 (emphasis added). In its order granting the parties' request, the *Marvin*
16  court also noted that, "[w]hile some of this information could be discovered through an
17  internet search, not all of it appears to be publicly available or consolidated into a single
18  document." *Marvin* Dkt. No. 34 at 5.

19       On September 21, 2022, after many of the members of Plaintiffs' Leadership had
20  filed complaints regarding the Theft Prone Defect, Barton filed *Henry v. Kia America,*
21  *Inc*., C.D. Cal. Case No. 8:22-cv-01729 ("*Henry* Complaint"). Barton contends that the
22  *Henry* Complaint was filed to "expand the scope of the *Marvin* Suit" and because of the
23  location of "Defendants' corporate headquarters." Mot. at 4:21-24. The *Henry*
24  Complaint appears to have included a nationwide class. Barton Decl. ¶ 23. But the
25  *Henry* Complaint was filed and remains under seal. *See Henry v. Kia America, Inc*., No.
26  8:22-cv-01729-JWH-DFM (C.D. Cal.), Dkt. No. 15.

27       Barton now asks the Court to order the Class to pay it a fee of $2,175,000 based
28  on a lodestar amount of $1,174,564.50 (with a 1.85x multiplier), **exclusively for the**

**time Barton spent litigating *Marvin* and *Henry*.** *See* Barton Decl. ¶ 32 ("As of February 8, 2023, my firm has spent a total of 2049.4 hours working on the *Marvin*/*Henry* Actions"); *see also* Mot. at 11:15-18, 13:5-8. Barton also seeks $11,032.66 in costs to cover, among other things, an engineering expert retained by the firm for *Marvin*, James Barton's travel expenses to make his bid for MDL leadership and filing fees it incurred when filing *Marvin* in the Milwaukee County Circuit Court. Barton Decl. ¶ 43.

For the reasons discussed below, Barton's work in *Marvin* and *Henry* did not create, increase, protect, or preserve the Common Fund, and, thus, does not warrant compensation from the Common Fund created exclusively by Lead Counsel for the benefit of the Consumer Class.

## III.   LEGAL STANDARD

Rule 23 permits a federal court in class actions to award "reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "If there is no contractual or statutory basis to award attorneys' fees in a class action case, a court may rely on the 'common fund doctrine,' a traditional equitable doctrine 'rooted in concepts of quasi-contract and restitution.'" *Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012) (internal quotation and citation omitted). An attorney's fee award from the common fund depends on the extent, if any, to which that attorney's specific legal services "tended to create, increase, protect, or preserve the fund." *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994).

"'The equitable common fund/common benefit doctrine authorizes attorney fees only when the litigants preserve or create a common fund for the benefit of others as well as themselves.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *25 (C.D. Cal. June 10, 2005) (quoting *Vizcaino v. Microsoft,* 290 F.3d 1043, 1051–52 (9th Cir. 2002)). Thus, attorneys who seek fees from a common fund bear a significant burden of establishing entitlement to such monies by clearly demonstrating the nexus between the alleged specific expenditures of legal effort and

the measurable benefits obtained for the class by those expenditures. *Id.* (counsel seeking fees must make "clear showing of a connection between the conduct of counsel and the preservation or creation of a common fund for the benefits of others[.]"); *In re Cendant Corp. Litig.*, 404 F.3d 173, 197 (3rd Cir. 2005) ("The mere fact that a non-designated counsel worked diligently and competently with the goal of benefiting the class is *not* sufficient to merit compensation."); *see also In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 914 F.3d 623, 642-45 (9th Cir. 2019) (relying on *In re Cendant* and finding that the district court did not abuse its discretion in denying motions for attorneys' fees filed by non-Class Counsel for work conducted pre- and post-appointment of Class Counsel).

## IV.   ARGUMENT

### A.   Barton fails to demonstrate how it created, increased, protected, or preserved the Common Fund or otherwise provided substantial benefits to the Class.

Barton falls far short of demonstrating that its specific legal services and other expenditures "tended to create, increase, protect, or preserve the fund." *Class Plaintiffs*, 19 F.3d at 1308; *Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 284 (9th Cir. 2018); *In re Heritage Bond*, 2005 WL 1594403, at *25. Barton repeatedly *states* that it satisfies that burden *without* demonstrating *how* it meaningfully created, increased, protected, or preserved the Common Fund, or otherwise provided substantial benefits to the Class independent of the efforts of Plaintiffs' Leadership. Simply "asserting that work is for the common benefit does not make it so." *In re Educ. Testing Serv. Praxis Principles of Learning & Teaching Grades 7-12 Litig.*, 555 F. Supp. 2d 661, 668-69 (E.D. La. 2007). Indeed, the mere fact that Barton may have "worked diligently and competently with the goal of benefiting the class is not sufficient to merit compensation" from the Common Fund. *In re Cendant*, 404 F.3d at 197.

Barton advances three arguments for why its legal work prior to the formation of the MDL substantially contributed to the creation of the Common Fund: (1) "portions" of Class Counsel's work were purportedly "derived from" Barton's "previous efforts,"

8

CONSUMER CLASS PLAINTIFFS' OPPOSITION TO *MARVIN* AND *HENRY* PLAINTIFFS' MOTION FOR FEE AND EXPENSE AWARD
CASE NO.:  8:20-CV-01584-SB-JDE

Mot. at 10; (2) the parties "relied on the briefing in the *Marvin* Action" in reaching the Settlement, *id*. at 6; and (3) three of the named plaintiffs from the sealed *Henry* complaint are named Plaintiffs in the CAC, *id*. at 14. But none withstand scrutiny because, as detailed below, neither Barton's complaint nor its motion to dismiss briefing in the *Marvin* Action meaningfully contributed to the Settlement in this case. Additionally, Barton does not explain how representing three named plaintiffs, who did not participate in discovery, out of a total of 85 in the CAC could legally entitle it to over $2 million in attorneys' fees and reimbursed costs.

*First*, Barton argues that because *Marvin* was the first-filed case in the consolidated MDL proceedings, and some of the allegations in the single-state *Marvin* action are similar to allegations in the pre-MDL complaints filed by Plaintiffs' Leadership, the Court should conclude that Barton's work was the foundation of the entire litigation. *See, e.g.*, Mot. at 1. But its argument ignores the enormous amount of public information that was available by the time Plaintiffs' Leadership began filing their underlying complaints in July 2022, including statements from Defendants themselves along with media reports, social media posts, and law enforcement agency statistics. *See* Barton Decl., Ex. 3. This argument also ignores Barton's admission that *its own* investigation into the Theft Prone Defect was precipitated by "social media posts and news articles," and that the initial complaint in *Marvin* was based solely on that media attention rather than any independent investigation. *See* Mot. at 1-2.

Indeed, Barton fails to identify with any specificity the unique facts that it purportedly discovered that were not readily discernible to Plaintiffs' Leadership. To be sure, Barton claims that "the Firm identified how Defendants' failure to incorporate standard immobilizer technology in virtually all their models—along with other design defects to these vehicles' ignition systems—precipitated the scourge of auto theft plaguing metropolitan Milwaukee." Mot. at 2. However, "identifying" facts that were in the public record is not particularly novel or notable, and to the extent that Barton suggests that it was the first to discover the lack of an immobilizer as the underlying

factor giving rise to the plague of threats, that claim is dubious at best. *Marvin* was filed on June 23, 2021, yet three weeks later, on July 13, 2021, Kia put out a public statement noting that it was "supporting the Milwaukee Police Department in combatting the rise in thefts of vehicles that are not fitted with an engine immobilizer."[2] It is unlikely (and there is nothing in the record to support the view) that Barton's June 2021 complaint in *Marvin* was the first time the lack of an immobilizer in the Class Vehicles and the increased thefts were linked, and that the allegations in Barton's *sealed* complaint served as the catalyst to Kia's public admission weeks later.

In any event, the *Marvin* FAC was filed under seal and remained that way until July 8, 2022, when a heavily redacted version of the complaint was filed with what Barton concedes were "numerous exhibits **containing [] 'publicly available' information**[.]" Mot. at 4.[3] The redacted complaint admittedly added no new facts or details to the public record that was not already public information, which is unsurprising since Barton conducted no discovery at all during the pendency of *Marvin*. Therefore, at the time Plaintiffs' Leadership began filing their complaints later that month, any details about the Theft Prone Defect were not attributable to any work Barton did.

It is true that "attorneys who **alone** discover grounds for a suit, based on their own investigation **rather than on public reports**, legitimately create a benefit for the class" and warrant an award of fees and expenses. *In re Cendant*, 404 F.3d at 197 (emphasis added). However, "[s]imply being the first to allege facts that appear in newspapers, or to advance a legal theory that is apparent to all lawyers involved" does not warrant compensation. *Id.* at 205. As described above, Barton concedes that its own investigation was prompted by media reports and the *Marvin* FAC, when finally

---

[2] *See, e.g.*, https://www.cbs58.com/news/mpd-partners-with-hyundai-and-kia-to-stop-vehicle-thefts-free-steering-wheel-locks-available.

[3] Notably, Barton admits that the even the redacted portion of the *Marvin* complaint detailing the Theft Prone Defect and how to exploit it were "readily discernible," Mot. at 3:17-4:12, suggesting that Barton's investigation did not extend beyond identifying public information.

unsealed, in part, did not contain anything other than publicly available information that the unblinking investigative stare of Plaintiffs' Leadership uncovered through their own diligent efforts.

Contrary to Barton, the factual foundation of the CAC was derived from Plaintiffs' Leadership's independent investigations, consultations with their own automotive experts, and in a large degree from scouring volumes of publicly available information. Joint Decl. ¶¶ 7-14, 24, 37-42. Plaintiffs' Leadership researched, wrote, and filed the CAC which, in its 897 pages, alleged seven nation-wide counts brought under California law and counts covering the other 49 states for separate sub-Classes of Kia and Hyundai owners. CAC ¶¶ 37-1206, 1523-28, 1536-4817. The CAC presents detailed narratives for 85 class representatives spread over thirty states. *Id*. ¶¶ 37-1206. Over nearly 70 pages, the CAC alleges in an extremely detailed manner the technical and operational essence of the Theft Prone Defect, Defendants' failure to provide adequate anti-theft devices, the harm caused by the Defect, how the Defect violated federal regulations, that Defendants knew or should have known of the Theft Prone Defect, and Defendants' sustained failure to remedy the Defect. CAC ¶¶ 199-267. Put simply, Barton fails to meet its burden to demonstrate that Plaintiffs' Leadership's extensive work was meaningfully "derived from" Barton's work.

*Second*, Barton argues that it contributed to the development of the Common Fund because "plaintiffs justified the sufficiency of their investigation by again relying on the briefing in the *Marvin* Action to educate themselves about the case." Mot. at 8; *see also id*. at 6. But that is a distortion of the facts. In their motion for preliminary approval of the settlement, which Barton relies upon for this argument, Plaintiffs stated that they "understood the strengths and weaknesses of their claims, which were a topic of discussion throughout the mediations and briefed in Defendants' motion to dismiss the CAC, as well as the motions filed in the *Marvin* action." Dkt. 228 at 19. So, while Plaintiffs did mention in passing the motions to dismiss that Defendants filed in *Marvin*—not Barton's opposition brief—it was only in the context of explaining that

Plaintiffs were well-aware of Defendants' legal arguments through mediation discussions and Defendants' motion to dismiss in this MDL. Plaintiffs did not attribute any unique insight to the proceedings in *Marvin*, nor could they have since the *Marvin* court *never held oral argument nor ruled upon Defendants' motion to dismiss*. And Barton's motion is bereft of any attempt to explain how its opposition brief added unique value to the Settlement.

Barton does, however, argue that the mere fact that the motion to dismiss was fully briefed in *Marvin* caused Defendants to "reassess[] their exposure ... to conclude that a classwide settlement was more prudent." Mot. at 6. This, of course, is mere speculation, as Barton offers nothing at all to support it. It also makes no sense given Barton itself was unsuccessful in its pre-MDL settlement talks with Defendants. *See* Mot. at 6 ("Defendants rejected all settlement overtures."). Indeed, the vastly more plausible explanation for the early Settlement in this case is that the law firms appointed by this Court with extensive experience in large automobile defect class action litigation in particular were able to execute a highly effective dual-prong strategy of pursuing intense mediator-assisted settlement negotiations while simultaneously pressing litigation forward and filing the 897-page CAC, which convincingly pled nationwide Class claims as well as claims for Subclasses for each of the 50 states.

Thus, on this second point, Barton fails to meet its burden to demonstrate that it is legally entitled to any of the over $2 million in attorneys' fees and costs it requests from the Common Fund by not explaining how Plaintiffs materially relied on work Barton did responding to Defendants' motions to dismiss in *Marvin* in reaching the Settlement, or how Barton simply briefing a motion to dismiss convinced Defendants to settle the case after the MDL was created.

*Third*, Barton's attempt to justify its request for attorneys' fees and costs by noting that three plaintiffs from the sealed *Henry* complaint were selected as Class Representatives for the CAC—out of 85 total Class Representatives—finds no support in the law. *See* Mot. at 14. Barton attempts to sidestep this lack of support for its implied

argument that contributing class representatives justifies its fee request by arguing instead that that the reaction of the Class Members is an important factor in determining the reasonableness of the Settlement, and those three Class Representatives are Class Members and support Barton's request. *Id*. The opinions on the fairness of the Settlement of three Class Members out of millions is certainly important on that point, but not particularly relevant to the *legal* issue before the Court of who should recover fees and costs from a Common Fund in an MDL. *See In re Heritage Bond*, 2005 WL 1594403, at \*26 (noting that there is a "presumption of correctness that applies to lead plaintiff's decision not to compensate non-lead counsel's fee submissions for work performed after appointment of lead counsel." (citing *Cendant*, 404 F.3d at 195)).

**B.  Alternatively, if the Court were to consider the merits of Barton's request for fees and costs for its pre-MDL work, the request greatly exceeds any benefit that Barton provided the Class.**

Even if the Court accepts Barton's contention that time spent on *Marvin* and *Henry*, and time spent conferring with counsel before this Court appointed Plaintiffs' Leadership, helped create the Common Fund (and it should not), there remain compelling grounds to deny Barton's request that his firm receive $2,175,000 from the Common Fund based on 2,049.4 hours of pre-MDL work.

*First*, as detailed in section II.A *supra*, Plaintiffs' Leadership and others appointed by this Court to lead this MDL did considerable work ***after their appointment*** to both advance the litigation and secure the Common Fund for the Class, and nothing in the record supports Barton's notion that these efforts were possible only because of Barton and his filing of *Marvin*. Indeed, as explained in sections II.B and IV.A *supra*, Mr. Barton himself has conceded that his firm relied on publicly available information when drafting and filing the *Marvin* FAC, and Barton identifies no facts that it developed that were outside public record at the time Plaintiffs' Leadership filed their pre-MDL complaints. Further, Barton's summary of the work it did does not identify any efforts that materially contributed to the Settlement above and beyond what Plaintiffs' Leadership could have done and did do itself:

1        (a) reviewing hundreds of pages of regulatory filings; (b)

2        thousands of pages of caselaw to hone our theory of the case; (c)

3        scores of news articles and social media posts; (d) drafting two

4        extremely complex complaints; (e) regularly communicating

5        with current clients and putative class members; (f) parsing

6        through client documents and helping them preserve their rights

7        by initiating BBB arbitrations and drafting pre–suit notices; (g)

8        assisting co–counsel in preparing for mediations before the MDL

9        was formed; (h) working with an expert to hone our theory of

10       liability against Defendants; and (i) fully briefing Defendants'

11       motion to dismiss in the *Marvin* Action.

12   *See* Barton Decl. at ¶ 15.

13       *Second*, Barton's request for a 1.85x multiplier extends even further beyond the

14   bounds of reason than his fee request. Plaintiffs do not dispute that in this Circuit,

15   multipliers in the 1x-4x range are "presumptively acceptable." *Dyer v. Wells Fargo*

16   *Bank, N.A.*, 303 F.R.D 326, 334 (N.D. Cal. 2014). However, the most important factor

17   when considering a multiplier is the benefit obtained for the class. *See, e.g.*, *Garcia v.*

18   *Los Angeles Cnty. Sheriff's Dep't*, 2015 WL 13646906, at *16 (C.D. Cal. Sept. 14,

19   2015) ("'The court may adjust [the lodestar] upward or downward by an appropriate

20   positive or negative multiplier reflecting a host of reasonableness factors . . . ***Foremost***

21   ***among these considerations, however, is the benefit obtained for the class***.'")

22   (emphasis added) (quoting *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935,

23   942 (9th Cir. 2011)). Barton's argument that it is entitled to a positive multiplier for

24   time spent on *pre-MDL work* for a case it concedes was unsuccessful in settling is

25   simply implausible. *See* Mot. at 2:22-26. For the reasons identified above, there is

26   simply no basis for a multiplier on Barton's lodestar.

27       *Third*, Barton's assertion that his $2,175,000 fee request is appropriate because

28   it is, "a relatively nominal percentage" (1.5%) of the top-end of the Common Fund

14

CONSUMER CLASS PLAINTIFFS' OPPOSITION TO *MARVIN* AND *HENRY* PLAINTIFFS' MOTION FOR FEE AND EXPENSE AWARD
CASE NO.:   8:20-CV-01584-SB-JDE

($145,000,000) completely misses the mark. *Id.*, at 10:22-24. The basis for a fee award is not whether the fee equates to a "nominal" percentage of the fund. It is whether the attorney's work provided a benefit to the common fund. *See In re Heritage Bond*, 2005 WL 1594403, at *25 (noting that the common benefit doctrine, "authorizes attorney fees only when the litigants preserve or create a common fund for the benefit of others as well as themselves.").

The sole case cited by Barton in support, *AdTrader, Inc. v. Google LLC*, 2020 WL 1921774 (N.D. Cal. March 24, 2020), is readily distinguishable. In *AdTrader*, the plaintiffs brought a class action case against Google for failing to issue refunds to advertisers on one of its advertising platforms. *Id.,* at *1. During the litigation, Google issued $65.7 million in credits to its affected advertisers. *Id.* Following the issue of these credits, plaintiffs' counsel filed a motion for attorneys' fees on the grounds that they, "played a critical role in securing $65.7 million in refunds for DBM advertisers." *Id.,* at *2. The Court ultimately found that plaintiffs' counsel was entitled to attorneys' fees under the common fund doctrine because their "efforts provided a meaningful benefit to others by 'increas[ing] or preserv[ing] a fund to which others also have a claim." *Id.* at **5-6 (citation omitted). Here, Barton cannot point to any of its efforts that created, increased, or preserved the Common Fund, or furthered this litigation for the Class.

## C.   Barton's expenses should not be paid from the Common Fund.

Barton also asks the Court to reimburse it $11,032.66 from the Common Fund for expenses that were incurred when litigating *Marvin* and *Henry*, and travel expenses related to James Barton's efforts to get a leadership position in this MDL. *See* Barton Decl. ¶ 43. Barton's reimbursement request should be rejected in its entirety.

"An attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation costs from that fund." *Bautista-Perez v. Juul Labs, Inc.*, 2022 WL 2239838, at *9 (N.D. Cal. June 22, 2022) (citing *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994)). "In common fund cases, the Ninth Circuit has stated that the reasonable expenses of acquiring the fund can be reimbursed to

counsel who has incurred the expense." *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 2423161, at \*13 (N.D. Cal. June 5, 2017) (citations omitted).

Here, Barton did not create the Common Fund, nor did it incur expenses in connection with efforts to secure the Common Fund. The lion's share of Barton's expenses is a $7,500 pre-MDL invoice from an expert that was retained for *Marvin* to assist in, "identifying and describing the various facet of the Defect." Barton Decl. ¶ 43. Barton's cursory explanation of what the expert did for *Marvin* falls far short in explaining how that work furthered efforts to secure the Common Fund.

Barton's remaining expenses do not fare any better under this analysis. For example, Barton seeks reimbursement of the filing fee it paid for the *Marvin* summons and complaint, and for serving the *Marvin* defendants with the *Marvin* complaint. Barton Decl. ¶ 43. Barton also seeks reimbursement for "Website Work," services related to presumably its clients' documents, and for travel expenses incurred in connection with James Barton's efforts for a leadership position in this MDL.[4] *Id.* In short, none of Barton's expenses were incurred to secure the Common Fund nor did they provide any benefit to the Consumer Class, and thus, should not be reimbursed from the Common Fund.

## V.   CONCLUSION

For all the reasons set forth above, Plaintiffs respectfully request that the Court deny the Marvin and Henry Plaintiffs' Motion for Award of Attorney Fees & Expenses.

Dated: June 24, 2024            Respectfully Submitted.

By:  */s/ Roland Tellis*
Roland Tellis, Esq.
**BARON & BUDD, P.C.**
15910 Ventura Boulevard, Suite 1600

---

[4] Barton's travel expenses are not compensable. *See In re Heritage Bond*, 2005 WL 1594403, at \*26 (finding non-lead counsel time spent on seeking lead counsel in MDL not reimbursable from a common fund).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Encino, California 91436
Telephone: 818.839.2333
Facsimile: 214.523.5500
Email: rtellis@baronbudd.com


By:  */s/ Steve W. Berman*
    Steve W. Berman, Esq.
    **HAGENS BERMAN SOBOL**
    **SHAPIRO LLP**
    1301 Second Avenue, Suite 2000
    Seattle, Washington 98101
    Telephone: 206-623-7292
    Facsimile: 206-623-0594
    Email: steve@hbsslaw.com


By:  */s/ Elizabeth A. Fegan*
    Elizabeth A. Fegan, Esq.
    **FEGAN SCOTT LLC**
    150 S. Wacker Dr., 24th Floor
    Chicago, Illinois 60606
    Telephone: 312.741.1019
    Fax: 312.264.0100
    Email: beth@feganscott.com


By:  */s/ Kenneth B. McClain*
    Kenneth B. McClain, Esq.
    **HUMPHREY FARRINGTON & McCLAIN**
    221 W. Lexington Ave., Suite 400
    Independence, Missouri 64050
    Telephone: 816.836.5050
    Facsimile: 816.836.8966
    Email: kbm@hfmlegal.com


    *Consumer Class Action Leadership Counsel*
    *and Counsel for Plaintiffs*

## **L.R. 11-6.2 CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 6,193 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 24, 2024                      Respectfully Submitted.

                                          By:  _/s/ Roland Tellis_
                                               Roland Tellis, Esq.
                                               **BARON & BUDD, P.C.**
                                               15910 Ventura Boulevard, Suite 1600
                                               Encino, California 91436
                                               Telephone: 818.839.2333
                                               Facsimile: 214.523.5500
                                               Email: rtellis@baronbudd.com