DONALD K. BIRNER, Esq.
256 Osprey Circle
Saint Marys, GA 31558
309-642-1589
d.birner@comcast.net

FILED
CLERK, U.S. DISTRICT COURT

07/01/2024

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ IGU _____ DEPUTY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALE PRACTICES, AND PRODUCTS LIABILITY LITIGATION | CASE NO. 8:22-ml-03052-JVS-KES |
| | The Honorable James V. Selna |
| This document relates to: ALL CONSUMER CLASS ACTION CASES | **OBJECTOR DONALD K. BIRNER'S REPLY TO RESPONSE OF DEFENDANTS (DKT 469)** |

# TABLE OF CONTENTS

Page

I.      CRUX OF THE MATTER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

III.    THE DEFENSES RAISED BY DEFENDANTS' MOTION TO DISMISS AND
        REPEATED IN ITS RESPONSE TO THIS OBJECTOR ARE NOT SUPPORTED BY
        APPLICABLE CASE LAW IN VIRTUALLY ALL JURISDICTIONS.. . . . . . . . . . . . 4

        A.      The consolidated complaint is a procedural device and moving to dismiss all
                of the underlying consolidated matters disregards the separate and distinct
                identities of those cases . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.      The  reasonably foreseeable thefts do not break the causative chain of events, nor
                negate the duty of the manufacturer to design theft deterrent devices to account for
                foreseeable risks. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

        C.      Product design must account for reasonably foreseeable risks. . . . . . . . . . . . . . . 6

        D.      The intervening criminal act defense does not relieve negligent wrongdoer of
                liability for his own negligence when the intervening act is foreseeable . . . . . . . .7

                1.      Reasonably foreseeable vehicle theft occurs every 32 seconds
                        according to NHTSA in the United States . . . . . . . . . . . . . . . . . . . . . . . . 8

                2.      Duty to design reasonably safe theft  not obviated by criminal  conduct . . 8

                3.      The authority relied upon by defendants in its motion to dismiss is
                        taken out of context or misquoted by defendants . . . . . . . . . . . . . . . . . . . 9

        E.      Special relationship exists between seller & purchaser of commercial product . . 11

IV .    VEHICULAR THEFT IS THE BASIS FOR THEFT DETERRENT DEVICES. . . . . . 12

V.  AN ADMINISTRATIVE AGENCY'S INTERPRETATION OF A STATUTE OR RULE, INCLUDING A STATUTE OR RULE IT IS CHARGED WITH ADMINISTRATING, IS NOT BINDING UPON A COURT OF LAW MUCH LESS ONE OPINION OF A CORPORATE OFFICIAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

VI. THE INADEQUACIES AND UNFAIRNESS OF THE PROPOSED SETTLEMENT ARE SIGNIFICANT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

 A. The so called 'Free Anti-Theft Software Upgrade' will leave millions of theft prone affected ineligible vehicles on U.S. roads . . . . . . . . . . . . . . . . . . . . 17

 B. The proposed settlement does not state any monetary amounts that are not subject to proration . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

 C. The monetary payments in most instances are not outright payments to class members, rather they are limited reimbursements for the purchase and installation of specified items . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

 D. Use of the Black book values further undermine the amount of the payout already presently reduced by 40% . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

 E. The claim process is unduly burdensome . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

 F. The plan does not reimburse class members for loss of market value of their class vehicle . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

 G. Those class members who sustained personal injuries or even died as a result of these thefts or attempted thefts are denied  relief . . . . . . . . . . . . . . . . . . . . . 20

 H.  The clause in the settlement agreement regarding class counsel's review of appeals is troublesome. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

VII. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

<u>TABLE OF AUTHORITIES</u>

Page

<u>Cases</u>

Bailey v. Innovative Management & Investment, Inc.,
    916 S.W.2d 805, 808 (Mo. Ct. App. 1995) ..................................... 5

Benda v. Girard,
    585 N.W.2d 422, 425 (Minn. Ct. App. 1998) ................................. 13

Bigbee v. Pacific Tel. & Tel. Co.,
    34 Cal.3d 49 (Cal. 1983) ..................................................... 7

Bilyeu v. Standard Freight Lines,
    182 Cal.App.2d 536, 541 (Cal. Ct. App. 1960) ............................... 8

Branson v. Department of Revenue,
    168 Ill.2d 247, 254 (1995) .................................................. 13

R.W. Claxton, Inc. v. Schaff,
    83 U.S.App.D.C. 217 [169 F.2d 303] ......................................... 10

Collins v. Navistar, Inc.,
    No. C060468, at *3 (Cal. Ct. App. Mar. 29, 2013) ............................ 6

Davis-Lynch Inc. v. Asgard Techs, LLC,
    472 S.W. 3d 50, 64 (Tex. App. 2015) ..................................... 9,10

Deitrick v. Costa,
    No. 06-1556, 2015 WL 1605700 at *16 (M.D.Pa Apr. 9, 2015)................... 9

Deskovic v. City of Peekskill,
    673 F. Supp. 2d 154, 161 (S.D.N.Y. 2009) ................................... 10

Dougherty v. City of Detroit
    No. 354624, at *9 (Mich. Ct. App. Feb. 3, 2022) ............................. 9

Douglas v. Ad Astra Information Systems,
    296 Kan. 552, 559, 293 P.3d 723 [2013] .................................... 13

Du Page County Board of Review v. Property Tax Appeal Board,

284 Ill. App.3d 649, 653 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Eads v. Marks,
    39 Cal.2d 807, 812, 249 P.2d 257, 260 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Jack v. Axiom Strategies, LLC,
    No. 22-CV-0412-CVE-MTS, at *10 (N.D. Okla. July 10, 2023) . . . . . . . . . . . . . . . . . . 9

Le v. Armour Eckrich Meats, & Safety Nat'l Cas. Corp.
    No. 110,761, at *1 (Kan. Ct. App. Oct. 24, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,
    523 U.S. 26, 40, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) . . . . . . . . . . . . . . . . . . . . . . . . 4

Lockhart v. Loosen,
    943 P.2d 1074 at 1079 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

May v. Cline,
    304 Kan. 671, 675, 372 P.3d 1242 (2016) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

In re Mercedes-Benz Tele Aid Contract Litig.,
    257 F.R.D. 46, 56 (D.N.J.2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Morris v. Bolling,
    31 Tenn. App. 577 [218 S.W.2d 754] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Mosley v. Arden Farms Co.,
    26 Cal.2d 213, 157 P.2d 372, 158 A.L.R. 872 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ney v. Yellow Cab Co.,
    348 Ill. App. 161 [108 N.E.2d 508] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Osborn v. City of Whittier,
    103 Cal.App.2d 609, 230 P.2d 132 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Ostergard v. Frisch,
    333 Ill. App. 359 [77 N.E.2d 537] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Phan Son Van v. Pena,
    990 S.W.2d 751, 753 (Tex.1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Propulsid Products Liability Litigation,

208 F.R.D. 133 at 141–42 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Richards v. Stanley,
    43 Cal, 2d 60 (1954) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Ross v. Hartman,
    78 U.S.App.D.C. 217 [ 139 F.2d 14, 158 A.L.R. 1370],
    cert. den. 321 U.S. 790 [64 S.Ct. 790, 88 L.Ed. 1080] . . . . . . . . . . . . . . . . . . . . . . . . 10,11

Sagamore Ins. Co. v. Volvo Grp. N. Am., LLC,
    No. 3-14-1351, at *2 (M.D. Tenn. Oct. 13, 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Schaff v. R.W. Claxton, Inc.,
    79 U.S.App. D.C. 207 [144 F.2d 532] . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Soule v. General Motors Corp.,
    8 Cal.4th 548 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

St. Regis Paper,
    689 S.W.2d at 671 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Stasulat v. Pacific Gas Electric Co.,
    8 Cal.2d 631, 637, 67 P.2d 678 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Timberwalk Apartments, Partners, Inc. v. Cain,
    972 S.W.2d 749, 756 (Tex.1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

In re Toyota Motor Corp.. Unintended Acceleration Mktg.,
    785 F. Supp. 2d 925, 929 (C.D. Cal. 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 5

In re Vioxx Prods. Liab. Litig.,
    239 F.R.D. 450, 454 (E.D.La.2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5


Resources

Black's Law Dictionary (8th ed) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Managing Class Action Litigation: A Pocket Guide for Judges,
    3rd. ed 2010 at pg. 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Restatement of the Law of  Torts 3rd Chapter 16 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12

Case No. 8:22-ml-03052-JVS-KES
v       OBJECTOR DONALD K. BIRNER'S REPLY TO RESPONSE OF DEFENDANTS (DKT 469)

## I.    CRUX OF THE MATTER

If the proposed settlement, which  excludes all persons injured or killed as a result of vehicular theft, is approved by the court,  millions of class vehicles, ineligible for the software upgrade, will remain on the road exposing  innocent vehicle operators, passengers, pedestrians, bystanders and the public at large to the inherent risks of  carjackings, with their predictable incidents of reckless driving, high speed chases, crashes, as well as, the furtherance of other crimes resulting in inevitable individual personal injuries, fatalities, and property damage avoidable by a buybacks and/or retrofit immobilizers much like the remedy initiated in the VW pollution case and others.

Furthermore, those eligible class vehicles who do receive the 'free' software upgrade, will constrictive test pilots for speculative and unproven methodology putting  their health and well being at risk and on the line— ironically on behalf of  two corporate conglomerates that deceived class member consumers from the outset, regarding a crucial security flaw which subverted the safety of its product.

## II.    BACKGROUND.

Defendants purported, defenses previously urged in its unopposed motion to dismiss (DKT 95) and again in its Response to Objection (DKT 469) are contrary to well-established case law and do not constitute a basis for reducing class damages by 40%.  The parties stipulated to a  stay, hence the motion to dismiss was unchallenged.  This concession by class counsel was a disservice to class members, because by not responding class counsel implied these defenses

have merit, which they do not.

The first defense relates to defendants' ill conceived notion that the theft of its vehicle breaks the causative chain of events and inexplicitly resolves the design defect present in over 8 million vehicles manufactured over the past decade, a defect which enabled and inspired the thefts.

The well-established rule is the intervening theft of the vehicle does not break the causative chain, unless the criminal conduct is not reasonably foreseeable. Since the thefts of class cars lacking immobilizer technology were a common event with serious repercussions, one can not claim the thefts were unforeseen.

The second defense is premised upon defendants misguided belief —that *purported* compliance with NHSTA rules or standards, which are minimal standards, doom a product liability matter based upon the independent theories of negligence, strict product liability based upon defective design, implied warranty, as well as, defendant's failure to warn both pre sale and post sale that its product was, in essence, susceptible to thefts by anyone with a screw driver and USB cord.

Defendants manufactured over 8 million class vehicles which, chose profits over people by deliberately omitting industry standard theft deterrent devices to save a buck, ultimately leading to a public safety crisis that spurred state attorney generals to plea to the court "*that Hyundai and Kia quickly remove all theft prone vehicles from the roads necessary to protect public safety in the collective states caused by these vehicles.* ( DKT 193 last paragraph.)

Case No. 8:22-ml-03052-JVS-KES
2        OBJECTOR DONALD K. BIRNER'S REPLY TO RESPONSE OF DEFENDANTS (DKT 469)

Kia and Hyundai, rather than accepting responsibility for the product defect, attempt to shift blame to social media platforms and the reasonably foreseeable criminal conduct of thieves who are inspirered by the defective design.  Defendants fail to admit they are, in fact, tortfeasors who bear responsibility for the rampant theft of class vehicles and the harm both in terms of property damage, personal injury and even death because defendants made a deliberate choice to forego industry standard immobilizers resulting in  theft prone vehicles.

These defenses first appear on the record via defendants motion to dismiss.  (DKT 95) Unfortunately, class counsel did not respond to or challenge these defenses giving these defenses undeserved credibility.  Indeed, class counsel ultimately endorsed these defenses to the court in the following manner:

On May 1, 2023, defendants Kia and Hyundai filed their motion to dismiss, wherein defendants allege, inter alia, they could not be held accountable for the criminal conduct of third-party thieves.  The motion fails to mention that industry standards do require an adequately designed immobilizers, that defendants competitors' vehicles unanimously include immobilizers and that commencing with model years 2022 all Kai and Hyundai vehicles include immobilizer technology.

The motion to dismiss sought to dismiss plaintiffs consolidated amended consumer class action complaint, notwithstanding that state laws from over 67 joined actions differ considerably and each state has a local interest.   The consolidated complaints in an MDL proceedings are usually considered to be procedural devices, rather than a substantive pleading with the power to alter choice of law rules or susceptible for dismissal.

Subsequently,  May 18, 2023, the parties filed their joint stipulation staying the case, including any briefing on the motion to dismiss. The court proceeded to grant the stay. Consequently, the record opposing the motion was not  developed for any court assessment of the merits of defendants' contentions regarding causation and government standards.

On August 16, 2023, the court entered its Chambers Order. (DKT 200)   Specifically, it took into consideration class counsel's 'attestation' that those  specific arguments undermined class claims and primarily based upon these risks and counsel's attestation, considered a reduction of class claims across the board by 40%  to be reasonable.  See page 26, second paragraph for this discussion. (DKT  200)

The lack of any opposition to the motion to dismiss resulted in an incomplete record regarding the efficacy of defendants' contentions. Therefore, this objector responds to those alleged defenses to supplement the record and suggests that the 40% reduction is not appropriate.

**III.     THE DEFENSES RAISED BY DEFENDANTS'  MOTION TO DISMISS AND REPEATED IN ITS RESPONSE TO THIS OBJECTOR ARE NOT SUPPORTED BY APPLICABLE CASE LAW**

**A.     The consolidated complaint is a procedural device and moving to dismiss all of the underlying consolidated matters disregards the separate and distinct identities of those cases.**

"Multidistrict Litigation Must be Managed in Manner that Maintains Separate and Distinct Identities of Individual Cases." In re Toyota Motor Corp. Unintended Acceleration Mktg., 785 F. Supp. 2d 925, 929 (C.D. Cal. 2011)   As of 8/16/2023 seventy-nine (79) cases from more than two dozen district courts were currently consolidated by the MDL according to the Chambers Order pg. 3 DKT 200.  "While effectively consolidated for pretrial purposes, the cases

1  retained separate and distinct identities in preparation for their eventual return to their home

2  states." Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 40, 118 S.Ct.

3  956, 140 L.Ed.2d 62 (1998) (characterizing § 1407(a) as "straightforward language imposing the

4  Panel's responsibility to remand" upon the conclusion of pretrial proceedings. The use of a

5  consolidated complaint has been described as "a procedural device rather than a substantive

6  pleading with the power to alter the choice of laws and rules applicable to the plaintiffs' claims."

7  In re Mercedes-Benz Tele Aid Contract Litig., 257 F.R.D. 46, 56 (D.N.J.2009); In re Toyota

8  Motor Corp. Unintended Acceleration Mktg., 785 F. Supp. 2d 925, 931 (C.D. Cal. 2011)

9  "Consolidation of a master complaint is merely a procedural device designed to promote judicial

10  economy, and, as such, it does not affect the rights of the parties in separate suits." In re Vioxx

11  Prods. Liab. Litig., 239 F.R.D. 450, 454 (E.D.La.2006); In re Propulsid Products Liability

12  Litigation, 208 F.R.D. 133 at 141–42

### B.   The reasonably foreseeable thefts do not break the causative chain of events, nor negate the duty of the manufacturer to design theft deterrent devices to account for foreseeable risks.

18  Liability may be predicated on the theory of negligence in product liability cases. St.

19  Regis Paper, 689 S.W.2d at 671. Bailey v. Innovative Management & Investment, Inc., 916

20  S.W.2d 805, 808 (Mo. Ct. App. 1995)[1] However, the theory of negligence is by no means

---

[1]Strict liability is a basis for a product liability suit. A plaintiff may also sue based on the negligence of the defendant. See, e.g., Heyen v. Sanborn Mfg. Co., 223 Ill. App.3d 307, 165 Ill.Dec. 407, 584 N.E.2d 841 (4th Dist. 1991) (discussing pleading requirements of products liability case sounding in negligence). Negligence differs from strict liability in that the fault issue surfaces for the first time — liability cannot be imposed unless plaintiff can demonstrate that the defendant was at fault for plaintiff's injuries. Baltus, 199 Ill. App.3d at 829, 145 Ill.Dec. at 815, 557 N.E.2d at 585; cf. Coney v. J. L. G. Indus., Inc., 97 Ill.2d 104, 117-18, 73 Ill.Dec. 337, 343, 454 N.E.2d 197, 203 (1983) (discussing application of contributory negligence doctrine in strict liability cases).

exclusive.  Plaintiffs may and often do seek recovery based upon the theory of strict liability due to either a manufacturing defect or  design defect, or failure to adequately warn was a substantial factor resulting in the claimant's harm which can be loss of property or personal injury.

In most states, "a products liability action includes all actions based upon the following theories: strict liability in tort, negligence, and failure to warn." Sagamore Ins. Co. v. Volvo Grp. N. Am., LLC, No. 3-14-1351, at *2 (M.D. Tenn. Oct. 13, 2015)

**C.  Product design must account for reasonably foreseeable risks**.

The rationale supporting this Objector's view is clearly stated in the relatively recent product liability  case *of   Collins v. Navistar, Inc., No. C060468, at *3 (Cal. Ct. App. Mar. 29, 2013)* involving a strict product liability case where the court considered;

> *"whether the criminal nature of a juvenile's act of throwing rocks and concrete from a freeway overpass relieves a truck manufacturer of the duty to design windshields capable of withstanding common road hazards, such as objects hitting windshields. For the reasons that follow, we conclude the criminal nature of the rock throwing does not cut off  liability or negate the duty of the manufacturer to design the truck's windshield to account for reasonably foreseeable risks.  We also explain that the definition of negligence for premises liability has no application in strict products liability.*"

In this case at bar, the industry standard for the past decade was to incorporate into the design of the theft deterrent devices an immobilizer, which defendant deliberately chose not to install on over 8 million class vehicles spanning a decade or more, purely to increase profits — preferring profits over people.

Nonetheless, the duty arising from strict liability is not grounded in negligence or

ordinary care principles, but rather based upon the defectiveness of the design. And since the product is supposedly designed to deter theft, the concept postured by defendants that criminal conduct (in this case the theft itself), would foreshadow or relieve the manufacturer of its duty to produce a reasonably safe product is inherently inconsistent with the strict liability concept of responsibility —which was no doubt known to defendants, as well as class counsel, which renders  it difficult not to infer collusion between the parties.

In the seminal case of Soule v. General Motors Corp., 8 Cal.4th 548, the  California Supreme Court commented on the fundamental premise of  strict products liability: "A manufacturer, distributor, or retailer is liable in tort if a defect in the manufacture or design of its product causes injury while the product is being used in a reasonably foreseeable way." (Id. at p. 560.)  Because traffic accidents are foreseeable, vehicle manufacturers must consider collision safety when they design and build their products." (Soule, 8 Cal.4th at p. 560.)  See also Bigbee v. Pacific Tel. & Tel. Co., 34 Cal.3d 49 (Cal. 1983) allowing a suit claiming negligent placement of a phone booth to go forward against the telephone company by a plaintiff who was struck while in the phone booth by a negligent driver who veered off the road.  It was of 'no consequence that the harm to plaintiff in the telephone booth came about through the negligent acts of  Roberts (driver)' "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, **intentionally tortuous, or criminal** does not prevent the actor from being liable for harm caused thereby." (emphasis supplied)

Class counsel touting the premise to the court that criminal conduct in this matter (i.e the

theft of the vehicle) is a formidable defense that might break the causative chain negating the duty of manufacturer to produce and implement a reasonably safe design, lacked the candor counsel owed to the court, not to mention the class, whose damages were reduced by 40% based at least in part to class counsel's sponsorship that defendants' causation defense had merit, when it did not.

> **D.** **The intervening criminal act defense does not relieve negligent wrongdoer of liability for his own negligence when the intervening act is foreseeable.**

> **1.** **Reasonably foreseeable vehicle theft occurs every 32 seconds according to NHTSA[2] in the United States.**

The bold, unqualified assertion by defendants that they are not at all responsible - for injuries caused by the easy theft of their mass produced class vehicles despite the lack of industry standard theft prevention devices - is  unsupported by any product liability case law involving the defective design of manufactured products.

> **2.** **Duty to design reasonably safe theft design is not extinguished by criminal  conduct**

The assertion that the duty of defendants to design a reasonably safe theft deterrent simply because the theft of a vehicle is a crime accomplished by criminal actors, is one whimsical defense indeed.   The intervening act of stealing the vehicle is not only reasonably foreseeable, the defective design  motivates and encourages the criminal enterprise.  and the design is only called into play because of  theft or attempted theft.

---

[2]A motor vehicle was stolen every 32 seconds in the United States in 2022. one million plus. NHTSA is required by 49 U.S.C. 33104(b)(4) to periodically obtain and publish accurate and reliable theft data.

The established general rule in state courts relative to actions grounded in negligence, including California and its sister states country wide, is, "Where the intervening act is reasonably foreseeable, the chain of causation is not broken, and the original actor remains liable." Eads v. Marks, 39 Cal.2d 807, 812, 249 P.2d 257, 260, citing Mosley v. Arden Farms Co., 26 Cal.2d 213, 157 P.2d 372, 158 A.L.R. 872 and Osborn v. City of Whittier, 103 Cal.App.2d 609, 230 P.2d 132; Stasulat v. Pacific Gas Electric Co., 8 Cal.2d 631, 637, 67 P.2d 678; Bilyeu v. Standard Freight Lines, 182 Cal.App.2d 536, 541 (Cal. Ct. App. 1960) When the intervening act is a reasonably foreseeable consequence of the primary negligence, the original wrongdoer will not be relieved of liability.  Lockhart v. Loosen, 943 P.2d 1074 at 1079. See also: Dougherty v. City of Detroit No. 354624, at *9 (Mich. Ct. App. Feb. 3, 2022) [If the intervening act is reasonably foreseeable, the causation chain is not broken, nor is the original actor relieved of liability.]  ("The issue of whether the consequences of the original act could have been reasonably foreseen is one of fact."). Jack v. Axiom Strategies, LLC, No. 22-CV-0412-CVE-MTS, at *10 (N.D. Okla. July 10, 2023)

> **3.**     **The authority relied upon by defendants in its motion to dismiss is taken out of context or misquoted by defendants**.

Defendants attempt to isolate three  states ( Pennsylvania, Texas and New York) claiming in conclusory fashion that 'intervening criminal conduct constitutes a superseding cause of the alleged injury' is erroneous.   Indeed, the Pennsylvania case of Deitrick v. Costa No. 06-1556, 2015 WL 1605700 at *16 (M.D.Pa Apr. 9, 2015) (does not contain the quote attributed to the case by defendants) pg. ln19-23.

The Texas case relied upon by defendants of Davis-Lynch Inc. v. Asgard Techs, LLC 472

S.W. 3d 50, 64 (Tex. App. 2015) is taken entirely out of context. The full quote coincides with the prevailing rule "<u>if a criminal's conduct is a foreseeable result of the prior negligence of a party, the criminal act may not excuse that party's liability</u>. See full quote immediately below.

The actual quote reads: "<u>As a general rule</u>, 'a person has no legal duty to protect another from the criminal acts of a third person.'" Timberwalk Apartments, Partners, Inc. v. Cain, 972 S.W.2d 749, 756 (Tex.1998). This is because the criminal conduct of a third party is a superseding cause that extinguishes any liability of the previous actor. See Phan Son Van v. Pena, 990 S.W.2d 751, 753 (Tex.1999). *<u>However, if a criminal's conduct is a foreseeable result of the prior negligence of a party, the criminal act may not excuse that party's liability</u>*." See id. Davis-Lynch, Inc. v. Asgard Technologies, LLC, 472 S.W.3d 50 (Tex. App. 2015) [emphasis supplied] See also Tatham v. Wabash R. Co., 412 Ill. 568, a Federal Employers' Liability suit, adopted an interpretation of the United States Supreme Court ( Lillie v. Thompson, 332 U.S. 459) under which an employer was held to the duty of making reasonable provision against a foreseeable danger involving intentional misconduct of a third person.

And the New York case of Deskovic v. City of Peekskill 673 F. Supp. 2d 154, 161 (S.D.N.Y. 2009) also relied upon by defendants, is a §1983 action, which states, "*Tort defendants are responsible "for the 'natural consequences' of their actions." "Thus, 'an actor may be held liable for those consequences attributable to reasonably foreseeable intervening forces, including the acts of third parties*. (internal citations omitted)

Defendants do produce one case related to the theft of automobile left unattended with the key in the ignition and the car was stolen who hit the plaintiff, Richards v. Stanley, 43 Cal, 2d 60

Case No. 8:22-ml-03052-JVS-KES
10      OBJECTOR DONALD K. BIRNER'S REPLY TO RESPONSE OF DEFENDANTS (DKT 469)

(1954).  In passing, we observe that this case pre dates mandatory insurance laws. We hasten to observe that Richards is not a product case.  The court did conclude that absent a special relationship, there was no duty to control the conduct of a third person from causing harm to another and there was no reason for the woman to anticipate the possible theft. (concurring op.).

However, as the dissent in *Richards, id* so aptly, points out, there is a split of authority on such a factual proposition.  In similar circumstances, the contrary has been held upon the premise that there may be a plurality of causes cooperating to produce plaintiff's injuries, each of which is sufficient to permit a jury to impose liability. (Ostergard v. Frisch, 333 Ill. App. 359 [77 N.E.2d 537]; (key left in ignition)  Ney v. Yellow Cab Co., 348 Ill. App. 161 [ 108 N.E.2d 508]; Morris v. Bolling, 31 Tenn. App. 577 [218 S.W.2d 754]; Ross v. Hartman, 78 U.S.App.D.C. 217 [ 139 F.2d 14, 158 A.L.R. 1370], cert. den. 321 U.S. 790 [64 S.Ct. 790, 88 L.Ed. 1080]; Schaff v. R.W. Claxton, Inc., 79 U.S.App. D.C. 207 [144 F.2d 532]; R.W. Claxton, Inc. v. Schaff, 83 U.S.App.D.C. 217 [169 F.2d 303].)

For instance, in Ross v. Hartman, supra, the owner's employee violated an ordinance when he left the automobile parked on the street with the key in the ignition switch.   The violation was deemed negligence *per se* and constituted the proximate cause of the injuries to plaintiff, requiring the owner of the car to respond in damages notwithstanding the theft of the car and its negligent unauthorized operation by the thief had intervened.

**E.    Special relationship exists between purchaser of commercial product.**

Furthermore, the lack of a special relationship in Richards v. Stanley, supra, is present in this matter.  The manufacturer, putting a product into the stream of commerce, is under a duty to

produce a product that is not unreasonably dangerous and forms a special relationship with the public at large, as well as the owners/purchasers of its vehicle.  Defendants profit from the commercial relationship unlike the lone hapless woman, who left the key in the ignition of her car and may not have had liability insurance in 1954 rendering it a 'hard case.'

**IV .   VEHICULAR THEFT IS THE REASON FOR THEFT DETERRENT DEVICES**

Criminal conduct of a third party in the usual negligence action does not serve to break the causal chain, unless the criminal conduct is not reasonably foreseeable. Vehicular theft is hardly an unforeseeable event.  In fact, a vehicle was stolen in the United States in 2022 every 32 seconds on average according to the NHTSA website accounting for more that a million thefts that year alone.

As a result, vehicle manufacturers, such as these defendants  know that thieves will attempt to hijack vehicles and know the manufacturers/sellers are duty bound to design adequate theft deterrent devices. The thefts and its consequences are the reason for the safeguards.  To suggest, or at least imply, that the thievery whitewashes defective designs and the harm caused by them is, in sum, ludicrous.

Secondly, the liability of the manufacturer or commercial seller stems from harm caused by the defective product, in this case, a design defect of the theft deterrent devices that failed to meet industry standards.  The theft is the event that exposes the defect much like a collision or crash might expose the poor vehicular crash worthiness or its lack thereof.

By way of analogy, using the concept of vehicular crash worthiness, the commercial seller of the product is not responsible for the collision itself, but the seller is responsible for the harm

Case No. 8:22-ml-03052-JVS-KES
12        OBJECTOR DONALD K. BIRNER'S REPLY TO RESPONSE OF DEFENDANTS (DKT 469)

caused by the defective [un-crashworthy] design.  Likewise, a seller might not be responsible for the theft itself.   The seller  is responsible for the defective design that caused unnecessary harm.

In this case, the lack of an immobilizer actually encourages theft.  In the usual product liability scenario, the seller in some instances is not responsible for the event, but is still liable for product defects causing avoidable harm.  It is also true that a product might be defective because of inadequate warnings both pre sale and post sale especially when the design defect involves safety considerations.

A *design defect,* according to the *Restatement of the Law of  Torts 3rd Chapter 16,* is when the foreseeable risk of harm posed by the product could have been reduced or avoided by the adoption of a reasonable alternative design by the seller with the omission of the alternative design rendering the product or a component not reasonably safe.  Here, the complaint plausibly states that an immobilizer could have and should have been adopted as a reasonable alternative design (the industry standard since the late 90's).  Some courts have opined that some designs are manifestly unreasonable and that liability should attach, absent the showing of an alternative design. §2 Categories of product defects, comment  [Rest. Of the Law Torts, Third  Product Liability]

**V.      AN ADMINISTRATIVE AGENCY'S INTERPRETATION OF A STATUTE OR RULE, INCLUDING A STATUTE OR RULE IT IS CHARGED WITH ADMINISTRATING, IS NOT BINDING UPON A COURT OF LAW MUCH LESS ONE OPINION OF A CORPORATE OFFICIAL.**

It is a function of the court to effectuate the legislature's intention.

The interpretation of a statute is a question of law. Branson v. Department of Revenue, 168 Ill.2d 247, 254 (1995). An administrative agency's finding on a question of law or an

interpretation of a statute, including a statute it is charged with administering, is not binding upon this court. Branson, 168 Ill.2d at 254. Our review of legal issues is de novo. Du Page County Board of Review v. Property Tax Appeal Board, 284 Ill. App.3d 649, 653 (1996). To the same effect: Le v. Armour Eckrich Meats, & Safety Nat'l Cas. Corp.No. 110,761, at *1 (Kan. Ct. App. Oct. 24, 2015)

The interpretation of a statute by an administrative agency is not binding upon a court, and we owe no deference to an agency's interpretation of its own regulations. See May v. Cline, 304 Kan. 671, 675, 372 P.3d 1242 (2016) (citing Douglas v. Ad Astra Information Systems, 296 Kan. 552, 559, 293 P.3d 723 [2013] ) Benda v. Girard 585 N.W.2d 422, 425 (Minn. Ct. App. 1998) [entitled to deference]

The interpretation of standard upon which defendants rely is quite strained.  Bearing in mind that theft by definition *is the felonious taking and removing of another's personal property with the intent of depriving the true owner of it*; *larceny*  (Black's Law Dictionary (8th ed))

It is common knowledge, that access to a locked vehicle is sometimes gained by smashing the window and then compromising or 'hot wiring' the ignition system .  And various sources suggest dating back to the 2011 model year, thieves can start the cars without the key because it lacks a theft immobilizer whereby computer chips in the car keys and steering column must recognized each other before the engine will start.

Yet, the acting *associate* administrator who published the opinion relied upon by defendants simply concludes that the FMVSS "does not require an engine immobilizer" and that "the safety risk arises from the unsafe use of a motor vehicle by an unauthorized person after

taking significant destructive action to parts of the vehicle." Our response is; "Well isn't theft the unauthorized control of a vehicle by an unauthorized person who is not above taking destructive action to complete his unlawful task in the shortest time frame possible?"  Such as smashing windows to enter or  taking the steering column apart. And although the standard may not explicitly use the term  immobilizer  it instructs that "self mobility shall be prevented when the key is removed."  See FMVSS 114 S 4.2 below and Exhibit "1" attached to this reply

*Each vehicle shall have a key-locking system which, whenever the key is removed, prevents:*

*(a) The normal activation of the vehicles engine or motor; and*

*(b) Either steering or forward self-mobility of the vehicle or both.*

We note that another higher ranking NHTSA official namely chief counsel for the agency interprets the same standard to require immobilizers since 1968.  *See Exhibit "1" attached hereto.*

Furthermore, the *purported* compliance or lack of compliance with NHTSA standards is not crucial.  Government standards are minimal standards and the interpretation of the standards by one individual of an agency is not binding upon the court especially when that opinion misconceives the meaning and intent of the standard and is contradicted by one of higher rank.

**VI.    THE INADEQUACIES AND UNFAIRNESS OF THE PROPOSED SETTLEMENT ARE SIGNIFICANT.**

**A.    The so called 'Free Anti-Theft Software Upgrade' will leave millions of theft prone affected ineligible vehicles on U.S. roads all subject to theft.**

The Notice of  Proposed Settlement reflects that millions of Class Vehicles will not be

eligible for the software update; for instance, Class Vehicles include Kia Soul Model Years 2011-2022.  Yet the upgrade only covers model years' 2020-2022.  The modification is  not free.

The upgrade bypasses, for example, over one million Kia Souls sold in the U. S. between 2011-2022.  Actually, according to public records1,236,882 vehicles to be exact.

As of August 2023, Hyundai and Kia estimate that 6.9 million theft prone vehicles are eligible for the software update. [See: Consumer Class Pls. Notice Mot. & Mot. Prelim. Approval Class Action Settlement at p. 12;  See also In re Kia Hyundia Vehicle Theft marketing, sale practices and product liability litigation 8:22-ml-03052-JVS-KES]

This means at least 2.3 million Kia and Hyundai are ineligible for the software upgrade and these vehicles will remain on the road –each being easy pickings for criminals and car thieves and a constant threat to safety and well being of owners and occupants of these vehicles as well as the public at large.  In addition, news reports from owners who have had their cars stolen after the software upgrades in the usual manner.

Furthermore, the software is not activated if one forgets to lock the vehicle with the key FOB therefore  a would be thief merely has to check and see if the door is unlocked and then proceed as he or she intends. Also, the cost of the key FOB and programming which is a cost of the class member at the dealer will probably exceed the *up to $350.00 allowance* so the upgrade is not necessarily 'free' as advertised.

Moreover, these upgrades are voluntary in nature and the proposed settlement agreement does not require Kia or Hyundai to directly notify owners of Software eligible Class Vehicle that they are eligible for the software update. It shifts the burden of resolving the defect unfairly to

innocent class members and deadlines the software modification application to a six month claim period.

Any settlement agreement should require Kia and Hyundai to resolve the underlying deficit by installing engine-immobilizer technology in these class vehicles, which is just and feasible.

This is not an Objector seeking a best case scenario as claimed by defense counsel. This is enforcing the legal obligation of a manufacturer to correct a known product defect that has caused great harm and will continue to cause harm to any persons associated with these vehicles and their theft or attempted theft as well as the public at large with countless vehicles infected with this design flaw still on the road post settlement.[3]

**B.   The proposed settlement does not state any monetary amounts that are not subject to proration**.

Managing Class Action Litigation: A Pocket Guide for Judges, 3rd. ed 2010 at pg. 16 entitled "Appraisal of Settlement that *"Your appraisal of the settlement should focus on the value actually distributed to the class—base upon the number and percentage of class members who have filed a claim."* The manual goes on to state that at the preliminary stage, some settlement

---

[3]Personal injury and death are by products of this defective design to wit consolidate comp. ¶ 1401 there have already been reports of fatalities involving Class Vehicles taken for joy rides, including the death of a 70-year-old bystander.103 In another incident, a 16-year-old boy was killed after the Class Vehicle he stole was involved in a head-on crash following a police chase.104 Of his two 12-year-old passengers, one was in critical condition when taken to a hospital; the other suffered two broken legs. 1403 A coalition of 22 attorneys general noted in a letter to HMA and KA,dated March 20, 2023, that Class Vehicle "thefts often result in more than simple property crimes."106 The letter cited several incidents that resulted in fatal injuries, including an incident where "four teens were killed after the stolen Kia they were riding in crashed into an embankment at high speed

terms show their potential unfairness on their face; we call them "hot button indicators." *      *

*"Hot button indicators includes any remedy to which you cannot confidently assign a cash value."*

We submit that almost of the remedies which are couched in terms of up to a capped figure and subject to proration cannot confidently be assigned a cash value.

**C.    The monetary payments in most instances are not outright payments to class members, rather they are limited reimbursements for the purchase and installation of specified items**.

Furthermore, these alleged benefits, if one meets the criteria, such as steering wheel locks and key FOBS are not outright payments to class members. They are 'reimbursements' to the class members for such items after the *"purchase and installation of [specified items]* paid for by the class member.  The script of this ruse is that the class member is required to expend his or her own funds to fix defendants 'theft enabled vehicle' and actually trust it works to prevent theft.

Only after *the purchase and installation of specified items* by class members and after they have jumped through the hoops may the class member anticipate reimbursement "up to" a stated cap.

**D.    Use of the Black Book values further undermine the amount of the payout presently reduced by 40%.**

The primary reason the parties or at least the defendants chose the Black book to determine vehicle values is that it is dealer oriented and provides data on wholesale prices at auction and does not factor in retail sales prices.

Other valuation guides such as Kelly Blue Book or Edmunds are considered more consumer oriented and endeavor to determine fair value for private transactions or trade ins and

Case No. 8:22-ml-03052-JVS-KES
18      OBJECTOR DONALD K. BIRNER'S REPLY TO RESPONSE OF DEFENDANTS (DKT 469)

are usually a higher valuation because they factor in retail sale prices.  Since the class members who have been deprived of their vehicle by theft would normally replace it with a retail purchase, it is overreaching on the part of defendants to utilize Black Book values vehicles lowest of all appraisal sources which is dealer oriented and tracks wholesale prices.  **Kelly Blue Book** endeavors to provide the value of your trade or the value to expect in private transactions. **Edmonds** offers a pricing transaction price for new or used vehicles in a local area.  The Black Book typically provides lower trade-in values because it is geared towards dealers.  On the other hand, consumer-oriented guides like Kelley Blue Book (KBB) and Edmunds often offer slightly higher values since they are designed for consumers and factor in retail sale prices.   See https://www.edmunds.com/appraisal/ and https://www.kbb.com/

        **E.**      **The claim process is unduly burdensome.**

        The claim process is unduly burdensome and designed to discourage claims.  The form encompasses 10 pages and it states the form must be submitted and completed.   In an obvious attempt to intimidate, it requires swearing under penalty of perjury under the laws of the United States.  The eligibility requirements are daunting.

        **F.**      **The plan does not reimburse class members for loss of market value of their class vehicle.**

        ***The plan does not reimburse class members for loss of market value of their class vehicle***.  Yet the plan wholly fails to provide for compensation or restitution for the loss of market value of class vehicles, which affects virtually every class member.

**G.    Those class members who sustained personal injuries or even died as a result of these thefts or attempted thefts are denied any relief and if the proposed plan is approved unfortunately more injuries and fatalities are likely to continue to emerge.**

The number of injuries suffered or deaths is not a matter of record.  Objector suggests that this information is probably available to defendants by use of serial numbers and this court should have access to that information before any final action.

Obviously defendants want this matter confined to property loss, however, car-jackings often injure, maim or result in fatalities which defendants knew when they practiced to deceive consumers.

**H.    The clause in the settlement agreement regarding class counsel's review of appeals is troublesome.**

Section F Cost of Class Counsel's review of appeals provides that class counsel will review the appeals of class members and be paid up to $600,000.00 by defendants if they report the time spent and appeals reviewed to defendants. The clause is not clear for whose benefit is the review is being conducted but it is clear that defendants' class counsel are paying for the review and class members and defendants' interest in the appeals are directly adverse.

**VI.    CONCLUSION.**

The supervening act defense has no merit in this product liability action.  The interpretation by the governmental official is nonsensical.  Consequently, the 40% reduction is a disservice to the class members who were harmed by the defective design.  This Reply was necessary to develop the record as far as the objective risks of litigation are concerned.

Over  8 million Kia and Hyundia theft prone vehicles spanning a decade were

produced without industry standard engine immobilizers as a by product of the thefts resulting in traffic collisions, injuries and fatalities. [ DKT (189) & (193) A.G  Letters to Judge.]

 Approximately 2.3 million Kia and Hyundai vehicles are not eligible for the upgrade and will continue to be targeted for theft resulting in additional personal injuries and fatalities.

       The only rational solution is to require Hyundia and Kia to remove all theft-prone vehicles from the roads pursuant to buyback and trade in options necessary to abate the risk to public safety and remediate the harm to consumers. The proposed settlement should be denied approval for all these reasons.

Dated: June 30, 2024

         /S/ *Donald K. Birner*

          Donald K. Birner, pro se
          256 Osprey Circle
          Saint Marys, GA 31558
          d.birner@comcast.net
          309-642-1589

### L.R. 11-6.2. Certificate of Compliance

The undersigned certifies that this brief contains 6,288 words, which complies with the word limit of L.R. 11-6.1.

Dated: June 30, 2024

/S/ *Donald K. Birner*
Donald K. Birner, *pro se*
256 Osprey Circle
Saint Marys, GA 31558
d.birner@comcast.net
309-642-1589

1
2
3
4
5
6
7
8 **EXHIBIT "1"**
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**Exhibit "1" to  Objector's Reply to Response**

--------------------------------------------------------------------------------------------------------------------------

NHTSA

Interpretation ID: GF005229-2

Dear [ ]

This responds to your letter asking whether a key locking system, which includes an engine control module immobilizer, could be used to meet the requirements of S4.2 of Federal Motor Vehicle Safety Standard (FMVSS) No. 114, Theft Protection. More specifically, you asked whether such a system would meet the requirements of S4.2 by (a) preventing normal activation of the vehicles engine by removal of the key, and (b) preventing vehicle forward self-mobility by the presence of the immobilizer. As discussed below, the answer to your question is yes.

Before I address your question, I note that you requested confidential treatment for the identity of your company and for yourself, as well as for additional information provided in your letter. You also provided a redacted version of your letter. I agree to keep your name and the name of your company confidential. All information in bold brackets [     ] in our letter will be kept confidential. The redacted version of your letter will be made public. We will send a separate letter providing a complete response to your request for confidentiality.

SECTION S4.2

FMVSS No. 114 specifies requirements for theft protection to reduce the incidence of crashes resulting from unauthorized operation of a motor vehicle. S4.2 of the standard specifies:

Each vehicle shall have a key-locking system which, whenever the key is removed, prevents:

(a) The normal activation of the vehicles engine or motor; and

(b) Either steering or forward self-mobility of the vehicle or both.

As you noted in your letter, "self-mobility" is not defined in the standard. Manufacturers have typically prevented forward self-mobility by installing transmission lever locks.

YOUR SYSTEM

Your vehicle features an engine control module immobilizer system that uses a multi-level coding process (hash code), which differentiates between a constant key code and a

continuously varying authorization code.

First, for normal vehicle activation, an operator must insert the properly coded electronic key into the electronic ignition lock. After insertion, a 2-way data exchange takes place for positive verification of the drive authorization. The engine can be started only after the positive verification occurs.

Second, if a key without the proper electronic code is used, or an attempt is made to bypass the electronic ignition lock in order to start the vehicle through other means (e.g. , through "hot-wiring" of the vehicle), the immobilizer will lock out the engine control module effectively preventing engine operation.

You believe that the presence of this engine control module immobilizer prevents forward self-mobility in the context of S4.2(b) because without engine operation, the vehicle is incapable of moving forward under its own power.

DISCUSSION

We agree that the type of system you describe would meet the requirements of S4.2(a) because it prevents normal activation of the vehicles engine when the key is removed. We also agree that the type of system you describe would meet the requirements of S4.2(b) because engine control module immobilizer prevents vehicle forward self-mobility when the key is removed.

As you discussed in your letter, the two provisions of S4.2 were intended to reduce unauthorized operation of a motor vehicle in different ways. Provision (a) was intended to prevent unauthorized operation of a motor vehicle by requiring that the vehicle could not be started without the key. Provision (b) was intended to further impede unauthorized operation of a motor vehicle by preventing vehicle operation outside the normal activation method. That is, if an attempt were made to circumvent the ignition lock (through "hot-wiring," for example), another device would prevent unauthorized operation of a motor vehicle.  (*emphasis suppplied*)

We note that in promulgating FMVSS No. 114, the agency expressed concern about car thieves who could bypass the ignition lock. In response to this concern, the agency decided to require a device, which would prevent either self-mobility or steering even if the ignition lock were bypassed (see 33 FR 4471, April 27, 1968).

The engine control module immobilizer described in your letter satisfies the requirements of S4.2(b) because it locks out the engine control module if an attempt is made to start the vehicle without the correct key or to bypass the electronic ignition system. When the engine control module is locked, the vehicle is not capable of forward self-mobility because it is incapable of moving forward under its own power.

I hope you find this information helpful. If you need further assistance, please contact George Feygin of my staff at this address or at (202) 366-2992.

Sincerely,

Jacqueline Glassman
Chief Counsel

ref:114
d.9/24/04


National Highway Traffic Safety Administration

1200 New Jersey Avenue, SE
Washington, D.C. 20590

888-327-4236
888-275-9171 (TTY)


        Also; THE TOPIC

Protect Your Ride
  Immobilizing-Type Devices: These prevent thieves from bypassing a vehicle's ignition system and hot-wiring the vehicle. Some incorporate computer chips in ignition keys or disable the flow of electricity or fuel to the engine. (emphasis supplied)

NHTSA web site comment