James B. Barton, Esq. (admitted *pro hac vice*)
*jbb@bartoncerjak.com*
BARTON CERJAK S.C.
313 N. Plankinton Ave., Ste. 207
Milwaukee, WI 53203
Telephone: (414) 488-1822
Facsimile: (414) 877-3039
*Counsel for Plaintiffs In The Marvin*
*& Henry Actions*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br>CONSUMER CLASS ACTION | CASE NO.: 8:22-ML-3052 JVS(KESx)<br><br>**THE *MARVIN* & *HENRY* PLAINTIFFS' REPLY BRIEF IN SUPPORT OF MOTION FOR FEE & EXPENSE AWARD**<br><br>Date: July 15, 2024<br>Time: 1:30 p.m.<br>Place: 411 W. Fourth St.<br>          Santa Ana, CA 92701<br>          Courtroom 10C |

# TABLE OF CONTENTS

I.   INTRODUCTION ................................................................................... 1

II.  ARGUMENT ......................................................................................... 2

A. Class Counsel Misconstrues The Common Benefit Doctrine To Improperly Elevate The Legal Burden That Governs Its Applicability ...................................................................................... 2

B. Properly Framed, Barton Cerjak Provided A "Meaningful Benefit" To The Class .......................................................................................... 5

    1. Class Counsel Distorts The Record And Discounts The Timing Of All Later Filed Actions In A Disingenuous Attempt To Minimize Barton Cerjak's Contributions ......... 5

    2. Class Counsel's Post-MDL Efforts Do Not Diminish The Meaningful Benefit To The Class That Barton Cerjak Provided Before The MDL Was Created ........................... 12

        a. The CAC, Like The Class Counsel's Prior Complaints, Relies Heavily On Barton Cerjak's Work Product .... 13

        b. The Fact That Class Counsel Inked The Settlement Agreement With Defendants Does Not Minimize The Substantial Benefit That Barton Cerjak Provided ..... 13

        c. Without The Benefit Of Barton Cerjak's Work Product, Class Counsel's Resultant Lodestar Would Have Been Much Higher ........................................... 15

    3. The 1.85x Multiplier On Barton Cerjak's Lodestar Is Reasonable ........................................................................ 17

C. The Expenses Barton Cerjak Incurred To Litigate *Marvin* & *Henry* Are Compensable ........................................................................ 19

D. Kia And Hyundai Lack Standing To Oppose The *M&H* Fee Motion And Their Response Is Inaccurate In Any Event........................... 20

1. Defendants Lack Standing To Selectively Challenge Fee Awards From The Common Fund...................................... 21

2. Defendants' Attempt To "Correct Any Misimpression" In The *M&H* Fee Motion Mischaracterizes The Record......... 21

III. CONCLUSION........................................................................... 23

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**Cases**

4

5

*AdTrader, Inc. v. Google LLC,*
Case No. 17-cv-07082-BLF, 2020 WL 1921774
(N.D. Cal. March 24, 2020)....................................................................... 18

7

*In re Auction Houses Antitrust Litig.,*
No. 00 Civ. 0648, 2001 WL 210697, *3-4
(S.D.N.Y. Feb. 26, 2001)....................................................................... 5, 6

10

*In re Bank One S'holders Class Actions,*
96 F. Supp. 2d 780, 790 n.13
(N.D. Ill. 2000)....................................................................... 12

13

*Boeing Co. v. Van Gemert,*
444 U.S. 472, 478
(1980)....................................................................... 3, 21

16

*CBS Interactive, Inc. v. Etilize, Inc.,*
257 F.R.D. 195, 202
(N.D. Cal. 2009)....................................................................... 9

19

*In re Cendant Corp. Securities Litig.,*
404 F.3d 173, 193
(3d Cir. 2005)....................................................................... 3, 4, 5, 6, 7, 8, 12, 20

22

*Class Plaintiffs v. Jaffe & Schlesinger,*
*P.A.,* 19 F.3d 1306, 1308
(9th Cir. 1994)....................................................................... 2

24

*Doe v. Cin-Lan Inc.,*
Case No. 08-CV-12719, 2011 WL 13266312, *2
(E.D. Mich. July 15, 2011)....................................................................... 15

6

8

9

11

12

14

15

17

18

20

21

23

25

26

27

28

*Gottlieb v. Barry*,
43 F.3d 474, 489
(10th Cir. 1994) .................................................................................... 3, 12, 19

*Haggart v. Woodley*,
809 F.3d 1336, 1356
(Fed. Cir. 2016) ...................................................................................... 3

*In re Heritage Bond Litig.*,
No. 02-ML-1475, 2005 WL 1594403, *26
(C.D. Cal. June 10, 2005) ...................................................................... 4, 17

*Indep. Living Ctr. of S. Cal., Inc. v. Kent*,
909 F.3d 272, 285
(9th Cir. 2018) ...................................................................................... 14

*Martin v. Toyota Motor Credit Corp.*,
2022 U.S. Dist. LEXIS 208358, at *34–35
(C.D. Cal. Nov. 15, 2022) ...................................................................... 16

*In re Nat'l Collegiate Athletic Ass'n Student–Athlete Concussion Inj. Litig.*,
332 F.R.D. 202, 228
(N.D. Ill. 2019) ...................................................................................... 19

*Ramirez v. Rite Aid Corp.*,
2022 U.S. Dist LEXIS 109069, at *23
(C.D. Cal. May 3, 2022) ........................................................................ 15

*Reiser v. Del Monte Properties Co.*,
605 F.2d 1135, 1140 n.4
(9th Cir. 1979) ...................................................................................... 14

*Sprague v. Ticonic Nat'l Bank*,
307 U.S. 161, 166–67
(1939) ................................................................................................... 14

*Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*,
802 F. Supp. 2d 1125, 1132
(C.D. Cal. 2011) .................................................................................... 20

*Tennille v. W. Union Co.*,
809 F.3d 555, 559
(10th Cir. 2015)................................................................................ 21

*U.S. Airways, Inc. v. McCutchen*,
569 U.S. 88, 98
(2013)............................................................................................... 3

*Victor v. Argent Classic Convertible Arbitrage Fund L.P.*,
623 F.3d 82, 87
(2d Cir. 2010).......................................................................... 3, 6, 8

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043, 1048
(9th Cir. 2002)............................................................................... 18

*In re Volkswagen and Audi Warranty Extension Litig.*,
89 F. Supp. 3d 155, 181
(D. Mass. 2015)............................................................. 3, 7, 8, 12, 13

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*,
914 F.3d 623, 642
(9th Cir. 2019)......................................................................... 2, 5, 6, 14

*In re Washington Public Power Supply System Sec. Litig.*,
19 F.3d 1291, 1300
(9th Cir. 1994)................................................................................. 3

*Walker v. Nat'l Collegiate Athletic Ass'n*,
No. 19–2638, 2019 WL 8058082
(7th Cir. Oct. 25, 2019)................................................................. 19

**Statutes & Rules**

Fed R. Civ. P. 23(h)(2)................................................................... 21

Private Securities Litigation Reform Act of 1995 (PSLRA)........................... 4, 5, 6

**Other Authority**

Bruce H. Kobayashi, Larry E. Ribstein, *Class Action Lawyers As Lawmakers*, 46 Ariz. L. Rev. 733 (2004).................................................................................. 19

Barton Cerjak S.C., f/k/a Barton Legal S.C. ("Barton Cerjak" or the "Firm"), submits the following reply brief in support of the *Marvin & Henry* Plaintiffs' Motion for Fee & Expense Award (the "*M&H* Fee Motion").

## I.     INTRODUCTION

Ignoring bedrock principles of equity and the corollary legal standard governing common benefit cases, Class Counsel style their opposition to the *M&H* Fee Motion as a zero-sum game in which the Common Fund was created either by the efforts of Plaintiffs' Leadership or Barton Cerjak, but not both. Class Counsel further contend that because Leadership was appointed to lead the MDL, they are the only lawyers entitled to seek fees from the common fund. While it is obvious that Leadership's work benefited the class, it is equally obvious that Leadership extensively relied on Barton Cerjak's work to file their own lawsuits; incorporated Barton Cerjak's work product into their Consolidated Class Action Complaint ("CAC"); and upon reaching a settlement in principle with Defendants to resolve this facet of the MDL—less than *forty days* after filing the CAC—represented to the Court that they again relied on Barton Cerjak's work in the *Marvin* Action to further inform them of the dispute.

Now, however, Class Counsel opposes the *M&H* Fee Motion, contending that Barton Cerjak's contributions did not meaningfully benefit the Class. To support their position, Class Counsel misconstrue the Common Benefit Doctrine ("CBD") and the equitable principles in which it is rooted. Worse still, they distort the record in a misleading attempt to undermine Barton Cerjak's efforts that helped drive a fair and equitable resolution. The law does not countenance a "*to the victor go the spoils*" approach to fee awards—it says exactly the opposite. The record plainly demonstrates that Barton Cerjak's efforts did provide a meaningful benefit to the class, and any contention to the contrary borders on the frivolous.

For their part, Kia and Hyundai filed a response to the *M&H* Fee Motion, in which they: (i) "join in full" with Class Counsel's opposition brief; and (ii) seek to correct certain "misimpression[s]" ostensibly created in prior briefing. Defendants' opposition to the *M&H* Fee Motion—while approving Leadership's fee motion—is odd, considering that as the creators of the common fund, Defendants lack standing to challenge its disbursement. Kia and Hyundai's newfound symbiosis with Class Counsel aside, their response is inaccurate. Defendants wanted the *Marvin* FAC redacted; they dropped arguments following the motion to dismiss briefing in that case; and they began discussing settlement only after *Marvin* was extensively litigated for a year, months before the MDL was even created. Thus, Defendants' opposition adds little to the analysis.

## II.   ARGUMENT

### A.   CLASS COUNSEL MISCONSTRUE THE CBD TO IMPROPERLY INFLATE THE LEGAL BURDEN THAT GOVERNS ITS APPLICABILITY.

Class Counsel distort caselaw construing the CBD to contend that "attorneys who seek fees from a common fund bear a *significant burden* of establishing entitlement to such monies by clearly demonstrating a nexus between the alleged specific expenditures of legal effort and measurable benefits obtained for the class by those expenditures." (Dkt. 478 at 11–12 (emphasis added).) As demonstrated below, that is not the correct standard and nothing suggests judicial hostility to fee requests by non-lead counsel based on pre-appointment work that benefitted the class.

The "central issue" at the heart of the *M&H* Fee Motion is whether Barton Cerjak's efforts in the eighteen months before the creation of this MDL "meaningfully benefited the class." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, 914 F.3d 623, 642 (9th Cir. 2019). That is, "whether they tended to create, increase, protect or preserve that fund." *Class Plaintiffs v. Jaffe & Schlesinger, P.A.*, 19 F.3d 1306, 1308 (9th Cir. 1994). If so, then principles of equity dictate that

Barton Cerjak is entitled under the CBD to a reasonable fee for its work. *In re Washington Public Power Supply System Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("When awarding fees in a common fund case like this one, the guiding principle is "the equitable notion that those who benefit from the creation of the fund should share the wealth with lawyers whose skill and effort helped create it.") (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)).

After all, "recovery under the common fund doctrine derives from the equitable power of courts to create the obligation for attorney fees against benefits received as a result of the advocacy of another." *Haggart v. Woodley*, 809 F.3d 1336, 1356 (Fed. Cir. 2016). To that end, "recovery [under the CBD] requires the existence of an inequitable outcome, which in turn requires redressability." *Id.* In other words, the CBD is "designed to prevent freeloading." *U.S. Airways, Inc. v. McCutchen*, 569 U.S. 88, 98 (2013).

Relevant here, the CBD is frequently invoked to award compensation for "work performed by non-class counsel prior to consolidation . . . if the work conferred benefits on the multidistrict class." *In re Volkswagen and Audi Warranty Extension Litig.*, 89 F. Supp. 3d 155, 181 (D. Mass. 2015); *In re Cendant Corp. Securities Litig.* ("*Cendant II*"), 404 F.3d 173, 193 (3d Cir. 2005) ("The common fund doctrine survives most robustly in the period running from the accrual of the cause of action to the appointment of lead plaintiff."); *Victor v. Argent Classic Convertible Arbitrage Fund L.P.*, 623 F.3d 82, 87 (2d Cir. 2010) (discussing pre-appointment work done by non-lead counsel holding that "when a substantial benefit has been conferred on the class, non-lead counsel are entitled to reasonable compensation"); *Gottlieb v. Barry*, 43 F.3d 474, 489 (10th Cir. 1994) ("[W]e fail to see why the work of counsel later designated as class counsel should be fully compensated, while the work of counsel who were not later designated class counsel, *but on whose shoulders class counsel admittedly stood*, should be wholly uncompensated.") (emphasis added).

To support their assertion that non–lead counsel face a heavy burden in seeking compensation for their work, Class Counsel place heavy stock in two class actions[1] brought under the Private Securities Litigation Reform Act ("PSLRA"), which provides a specific mechanism for the selection of lead plaintiff. *Cendant II*, 404 F.3d at 180. Because the PSLRA grants lead plaintiff responsibility for selecting and supervising the attorneys who represent the class, lead counsel's decision on whether to compensate non–lead counsel for work done *after* the appointment of a lead plaintiff is presumed correct. *See In re Heritage Bond Litig.*, No. 02-ML-1475, 2005 WL 1594403, *26 (C.D. Cal. June 10, 2005) ("There is no adequate basis to disturb the presumption of correctness that applies to lead plaintiff's decision not to compensate non–lead counsel's fee submissions for work performed after appointment of lead counsel.") (citing *Cendant II*, *supra* at 195).

But this heightened burden is irrelevant when the court considers whether non–lead counsel's *pre–appointment* efforts benefited the class. In those cases, "[t]he court, not the lead plaintiff, must decide for itself what firms deserve compensation for work done on behalf of the class *prior to the appointment of lead plaintiff*." *Cendant II*, *supra* at 195 (emphasis added). Thus, Class Counsel's suggestion that this higher burden applies or that Barton Cerjak must refute some "presumption of correctness" is clearly erroneous. (Dkt. 478 at 17.)

Yet even in post–appointment cases where this heightened burden applies, the court must still independently engage in a reasonable analysis of the fee request, mindful of the fact that "lead counsel has an incentive to undercompensate non–lead counsel, as such compensation typically decreases lead counsel's own recovery." *Victor*, 623 F.3d at 89–90; *see also id.* ("How much deference is due the fox who recommends how to divvy up the chickens?") (citations omitted). In short, no

---

[1] *See* Dkt. 478 at 12 (citing *In re Heritage Bond Litig.*, 2005 WL 1594403 at *26 and *Cendant II*, 404 F.3d at 193).

amount of creative argument divests this Court of its obligation to determine counsel's respective contributions to allocate a fair and equitable fee award.

**B.   PROPERLY FRAMED, BARTON CERJAK PROVIDED A "MEANINGFUL BENEFIT" TO THE CLASS.**

The seminal question, then, is whether Barton Cerjak's pre-appointment efforts "meaningfully benefited the class." *Volkswagen Clean Diesel Litig.*, 914 F.3d at 642. As demonstrated below, and even accepting Class Counsel's indulgences with the law, the answer is yes: Barton Cerjak's work product did provide a meaningful benefit to the Class and it strains credulity for Class Counsel to now claim otherwise.

**1.   Class Counsel Distort The Record And Discount The Timing Of All Later Filed Actions In A Disingenuous Attempt To Minimize Barton Cerjak's Contributions.**

Class Counsel contend that because information in the *Marvin* FAC was "publicly available," Barton Cerjak's efforts in researching and identifying the full extent of the defect and actively litigating the *Marvin* Action for more than a year before the next-filed suit does not translate into a meaningful benefit worthy of compensation. (Dkt. 478 at 13–15.) Class Counsel misstate the law and misconstrue the record.

Their argument rests on cases analyzing non-lead counsel's request for compensation under the PSLRA and similar cases. In *Cendant II*, for example, the Third Circuit examined when compensation to non-lead counsel was warranted in situations where the lead plaintiff chose different counsel as lead counsel. *Id.* at 180. The court's analysis was framed by the "realities of many securities class actions[,]" *id.* at 194, in which the "dominant paradigm . . . is probably *not careful investigation* to discover hidden abuses, but *rapid filing in response to abuses publicized by regulators, the media, or the issuer itself.*" *Id.* (emphasis added) (citing *In re Auction Houses Antitrust Litig.* ("*Auction Houses*"), No. 00 Civ. 0648, 2001 WL 210697, *3–4 (S.D.N.Y. Feb.

26, 2001). In other words, *Cendant II* acknowledged that "complaints [in securities class actions] are often spurred by news reports or press releases disclosing wrongdoing—or by reports that other firms have filed complaints—as by independent investigation." *Cendant II*, *supra* at 196. In fact, the court explained that the impetus of the PSLRA was a "reaction against this race-to-the-courthouse model of securities litigation." *Id.* (citing S. Rep. No. 104-98 (1995) at 11, *reprinted in* 1995 U.S.C.C.A.N. 679, 690 ("*Since no deference is given to the most thoroughly researched complaint, the lawyers spend minimal time preparing complaints in securities class actions*") (emphasis added)).

Courts have applied *Cendant II*'s reasoning in other cases where, for example, government regulators or a media exposé reveal corporate wrongdoing, thereby supplying the factual predicate that spawns a slew of copycat suits in a "race-to-the-courthouse." *See, e.g.*, *Auction Houses*, 2001 WL 210697 at *4 (refusing to award fees to non-class counsel who filed complaints in response to a *New York Times* article, because "[n]one of these counsel who simply jumped on the bandwagon made any significant contribution to the conduct of the litigation, let alone the recovery"); *Volkswagen Clean Diesel Litig.*, 914 F.3d at 636 & 643 (affirming district court's denial of fees to non-class counsel who filed complaints "soon after" the EPA issued Notices of Violation (NOVs) alleging that Volkswagen used "defeat devices" in its "clean diesel" vehicles, as there was "no indication" that this work "benefited the class in any meaningful way"); *Victor*, 623 F.3d at 88-89 ("Upon the breaking of news of perceived fraud involving potentially large damages, the old 'race-to-the-courthouse system' would likely gain new life if counsel thought that being first with some claim or other could, possibly, result in a fee of lodestar times a large multiple even though counsel were not the choice of lead plaintiffs").

Here, however, there was no governmental enforcement action, securities filing, or corporate admission of wrongdoing that neatly packaged Defendants'

malfeasance in one document, thereby spawning a "race-to-the-courthouse." Class Counsel's attempt to downplay the importance of Barton Cerjak's efforts fails because they rely on cases holding that the mere filing of duplicative complaints does not benefit the class because non-class counsel failed to conduct any independent analysis, investigation, or research. This case is vastly different.

Indeed, since as early as 2019,[2] media outlets were reporting on the increase in Kia and Hyundai thefts but none of these news stories explained with any semblance of detail _how_ or _why_ this was happening. There was no report that cogently summarized the scope and history of FMVSS 114; analyzed NHTSA's various measures to curb auto theft; amalgamated data from the National Insurance Crime Bureau; tracked the history and implementation of various anti-theft devices to mitigate auto theft; summarized NHTSA regulatory filings pertaining to immobilizer technology and other auto theft devices; explained how vehicular security concerns amounted to a safety defect; detailed Defendants' knowledge about these issues to explain what they knew and when they knew it; catalogued scores of articles and social media posts documenting the crisis; and identified and developed legal theories under which a product manufacturer could be held responsible irrespective of the criminal conduct of third parties. But that is _exactly_ what Barton Cerjak's work in _Marvin_ did—independent of assistance from others.

Thus, the PSLRA-like concerns underpinning the court's analysis in _Cendant II_—where lawyers simply file lawsuits to garner compensation upon the breaking of a news story—cannot be employed to discount Barton Cerjak's efforts in filing and prosecuting _Marvin. See, e.g., Volkswagen and Audi Warranty Litig._, 89 F. Supp. 3d at

---

[2] Liz Gerlardi, "Denver police see spike in reports of stolen Kia vehicles," ABC DENVER 7,

https://www.thedenverchannel.com/news/local-news/denver-police-see-spike-in-reports-of-stolen-kia-vehicles

181 (awarding non-class counsel fees for pre-MDL work and "constru[ing] the record generously in [their] favor" because, *inter alia*, "there is little evidence that any Non-Class Counsel seeks pre-consolidation fees for the kind of opportunistic copycat work which is underserving of compensation").

Even under this PSLRA line of cases, however—where a corporate defendant's wrongdoing is neatly packaged in a cohesive report that prompts a hydra of copycat litigation—*Cendant II* and its progeny still acknowledged that "attorneys who alone discover grounds for the suit, based on their own investigation rather than on public reports, *legitimately create a benefit for the class . . .* [and] *should generally be compensated out of the class's recovery*, even if the lead plaintiff does not choose them to represent the class." *Cendant II, supra* at 197 (emphasis added). "More generally," *Cendant II* explained, "attorneys whose complaints contain factual research or legal theories that lead counsel did not discover, and upon which lead counsel later rely, *will have a claim on a share of the class's recovery*." *Id.* (emphasis added). Relying in *Cendant II*, the Second Circuit cogently summarized how to make this analysis to determine whether non-lead counsel did, in fact, confer a substantial benefit:

> **A qualitative comparison between non-lead counsel and lead counsels' work products is certainly appropriate when determining whether non-lead counsel has provided a substantial benefit to the class. For instance, comparing the complaint filed by non-lead counsel with other complaints filed in the action, including the complaint filed by lead counsel, will often show whether non-lead counsel contributed important factual information or innovative or novel legal theories.**

*Victor*, 623 F.3d at 88 (emphasis added).

That is *exactly* what Barton Cerjak did here. Class Counsel spill pages of ink touting their own efforts while *eliding any reference* to the comparison chart in the *M&H* Fee Motion, which shows that the *Marvin* FAC was either acknowledged or

8

copied wholesale and incorporated into Leadership's later-filed actions. (*Compare* Dkt. 380-3 (chart showing the rampant copying of Barton Cerjak's work product) *with* Dkt. 478 (failing to explain how this occurred).) In the face of this evidence, Class Counsel's "silence [is] deafening[,]" *CBS Interactive, Inc. v. Etilize, Inc.*, 257 F.R.D. 195, 202 (N.D. Cal. 2009), for it proves that Barton Cerjak's efforts—not some wholly independent investigation—prompted the slew of copycat suits.

Indeed, one need only juxtapose when the *Marvin* FAC became publicly available to when the slew of copycat suits were filed to reveal that Barton Cerjak's *work product was the exposé* that prompted the "race-to-the-courthouse," which culminated in the creation of this MDL:

- **06/24/21:** *Marvin* Complaint filed in state court.
- **11/04/21:** *Marvin* FAC is filed under seal after removal to federal court.
- **07/08/22:** Redacted *Marvin* FAC becomes publicly available.
- **07/21/22:** Humphrey, Farrington, & McClain ("HFM") files *Bendorf v. Kia America, Inc.* in the Western District of Missouri, No. 4:22-cv-00465, which is the first case filed after *Marvin* and carves out Wisconsin residents given *Marvin's* precedence.[2]
- **07/25/22:** HFM files *Simmons v. Kia America, Inc.* in the District of Kansas, No. 2:22-cv-02288, *renumbered* 8:22-CV-02294-JVS-KESx.
- **08/02/22:** HFM files *Hall v. Kia America, Inc.* in the District of Nebraska, No. 4:22-cv-03155, *renumbered* 8:22-cv-02299-JVS-KESx.
- **08/03/22:** HFM files *Yeghiaian v. Kia America, Inc.* in the Central District of California, No. 8:22-cv-01440.

- **08/03/22:** HFM files *Fruhling v. Kia Motors America, Inc.* in the Southern District of Ohio, No. 1:22-cv-00451, *renumbered* 8:22-CV-02302-JVS-KESx.

- **08/04/22:** HFM files *Loburgio v. KIA America, Inc.* in the Northern District of Illinois, No. 1:22-cv-04071, *renumbered* 8:22-CV-02293-JVS-KESx.

- **08/04/22:** HFM files *Day v. Kia America, Inc.* in the Eastern District of Kentucky, No. 5:22-cv-00202, *renumbered* 8:22-CV-02296-JVS-KESx.

- **08/04/22:** HFM files *Brady v. Kia America, Inc.* in the Southern District of Iowa, No. 4:22-cv-00252, *renumbered* 8:22-CV-02294-JVS-KESx.

- **08/04/22:** HFM files *Bodie v. Kia America, Inc.* in the Southern District of Texas, No. 4:22-cv-02603, *renumbered* 8:22-CV-02303-JVS-KESx.

- **08/12/22:** HFM files *Pue v. Kia America, Inc.* in the Middle District of Florida, No. 6:22-cv-01440, *renumbered* 8:22-CV-02292-JVS-KESx.

- **08/18/22:** HFM files *Jones v. Kia America, Inc.* in the District of Colorado, No. 1:22-cv-02123, *renumbered* 8:22-CV-02291-JVS-KESx.

- **08/19/22:** Hagens Berman & Goldenberg Schneider file *McNerney v. Kia America, Inc.* in the Central District of California, No. 8:22-cv-01548.

- **08/30/22:** HFM files *Moon v. Kia America, Inc.* in the Southern District of New York, No. 1:22-cv-07433, *renumbered* 8:22-CV-02300-JVS-KESx.

THE *MARVIN* & *HENRY* PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FEE & EXPENSE AWARD

- **09/01/22:** HFM files *Zanmiller v. Kia America, Inc.* in the District of Minnesota, No. 0:22-cv-02149, *renumbered* 8:22-cv-02346-JVS-KESx.

- **09/09/22:** Fegan Scott files *Cohen v. Kiam America, Inc.* in the Central District of California, No. 8:22-cv-01664.

- **09/12/22:** Baron and Budd files *Morrow v. Hyundai Motor America Inc.* in the Central District of California, No. 8:22-cv-01674.

- **09/19/2022:** Morgan and Morgan files *Hufford v. Kia America, Inc.* in the Central District of California, No. 8:22-cv-01715.

- **10/20/2022:** Consumer Protection Legal files *Fehrenbach v. Hyundai Motor America* in the Central District of California, No. 8:22-cv-01922.

- **11/10/2022:** Morris Law Firm files *Sellers v. Kia America Inc.*, in the Central District of California, No. 8:22-cv-02065.

- **01/13/2023:** Migliaccio & Rathod files *Beneman v. Kia America Inc.* in the District of Maryland, No. 8:23-cv-00103, *renumbered* 8:23-cv-00191-JVS-KESx.

Although Class Counsel assert that the "unblinking investigative stare of Plaintiffs' Leadership" just so happened to uncover the same information, this merely begs the question: if Barton Cerjak did so little to benefit the class because all information to build a case against Defendants was in the public domain, why didn't anyone else do it until after the *Marvin* FAC was unsealed? More to the point, how did Leadership's "own diligent efforts" yield such remarkably similar (read: plagiarized) work when they filed their own respective lawsuits?

No matter, the standard is not whether Class Counsel *could have* performed the analysis to identify the details of the defect and frame a viable legal theory to hold Defendants liable. Rather, the Court's inquiry is whether Barton Cerjak's work

materially benefited the class. It did. And for Class Counsel to now suggest otherwise, claim $13.4MM in attorneys' fees, and leave the Firm whose work they copied without a nickel defiles any notion of equity and fair play. *Gottlieb*, 43 F.3d at 478; *Audi and VW Warranty Litig.*, 89 F. Supp. 3d at 181 (noting that such a "stingy approach to recognizing Non-Class Counsel's pre-consolidation work creates poor incentives for future counsel").

Indeed, even under the more rigid strictures of *Cendant II*, Barton Cerjak's work is compensable for the substantial benefit it provided. *Cendant II*, *supra* at 197 (explaining that in "the unlikely case that lead plaintiffs appropriate that work and attempt to deny compensation," courts are instructed to "nonetheless reward the earlier attorney's work on behalf of the class"); *accord In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 790 n.13 (N.D. Ill. 2000) (concluding that non-lead counsel who drafted the operative complaint should be "fully compensated" because "[i]t would obviously be unfair to impose that as a labor of love on the part of lawyer who thus served the common weal by providing services that benefited all the prospective class representatives").

**2.     Class Counsel's Post-MDL Efforts Do Not Diminish The Meaningful Benefit To The Class That Barton Cerjak Provided Before The MDL Was Created.**

Class Counsel's opposition focuses heavily on identifying the "significant efforts [they undertook] without assistance from Barton to litigate this case and secure the Common Fund." (Dkt. 478 at 1.) This is a red herring. Barton Cerjak does not dispute that other firms helped secure the Common Fund after the MDL was created. That is why Class Counsel submitted a fee request for $13.4MM; a *516% increase* over the $2.175MM in fees sought by Barton Cerjak. Why Class Counsel devote so much energy to combatting phantom criticisms is strange, but ultimately of no moment. As discussed below, Barton Cerjak's work product pervades the CAC

and the resultant settlement of this case does not diminish Barton Cerjak's involvement.

### a. The CAC, Like The Class Counsel's Prior Complaints, Relies Heavily On Barton Cerjak's Work Product.

Class Counsel maintain that Barton Cerjak's work product did not contribute to the CAC. They assert that following their appointment, "Plaintiffs' leadership went right to work" and it was *only* their "exhaustive efforts [that] laid the foundation for Plaintiffs' CAC[;]" a process in which Barton Cerjak "did not assist." (Dkt. 478 at 3.) Just like Leadership's respective complaints to seek appointment in the MDL, however, Barton Cerjak's work product appears throughout the CAC, both verbatim and slightly restyled, although substantively the same. Indeed, as the comparative analysis between the CAC and the *Marvin* FAC demonstrates, large swaths of the latter were used to draft the former. (Declaration of James Barton ("Barton Decl."), ¶ 5, Ex. 1.) Thus, Class Counsel's hollow rhetoric notwithstanding, Barton Cerjak's work product was foundational to, and infused throughout, the CAC.[3]

### b. The Fact That Class Counsel Inked The Settlement Agreement With Defendants Does Not Minimize The Meaningful Benefit That Barton Cerjak Provided.

Class Counsel also assert that because Barton Cerjak was not involved in their negotiation of the "early Settlement" with Defendants in the MDL, Barton Cerjak

---

[3] To the extent Leadership simply restyled the core allegations in the *Marvin* FAC, those duplicative efforts should not be rewarded at the expense of depriving Barton Cerjak, the original author, of compensation. *Volkswagen and Audi Warranty Litig.*, 89 F. Supp. 3d at 181 (chiding Class Counsel for failing to "draw on the full array of the resources made available to them by Non-Class Counsel" or "to derive benefit for the class from Non-Class Counsel's pre-consolidation work"); *see also id.* (non-class counsel's "pre-consolidation ... ought to receive the benefit of the doubt and deserve recognition unless it is clear that the work contributing nothing to, or actively detracted from, the class's interest").

13

failed to meet its burden to demonstrate why a fee award under the CBD would be appropriate. (Dkt. 478 at 16.)  This argument also misses the mark.

For starters, this argument fails because it rests on the premise that the common fund must have been created by either Class Counsel's work or Barton Cerjak's work. This is a false dilemma. Class Counsel helped create the common fund, but so did Barton Cerjak. Class Counsel did not start from ground zero, and it defies common sense to ignore this reality.

Further, it is axiomatic that "a final settlement agreement or adjudication on the merits is not a prerequisite to the formation of a common fund." *Indep. Living Ctr. of S. Cal., Inc. v. Kent*, 909 F.3d 272, 285 (9th Cir. 2018) (citing *Reiser v. Del Monte Properties Co.*, 605 F.2d 1135, 1140 n.4 (9th Cir. 1979) (noting that it is not necessary to an award of attorneys' fees that a suit be litigated on the merits; *see also Reiser, supra* ("[T]he formalities of the litigation . . . hardly touch the power of equity in doing justice between a party and the beneficiaries of his litigation.") (alterations in original) (quoting *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 166–67 (1939)).

Again, the standard is whether Barton Cerjak's work "meaningfully benefited the class." *Volkswagen Clean Diesel Litig.*, 914 F.3d at 642. Notably, Class Counsel omits that settlement discussions began in earnest *before* the MDL was even created. (*See* Dkt. 380, ¶ 24.) At the time, *Marvin* was the only case in the country that had been actively litigated and the slew of copycat cases that followed—between July 2022 (when the *Marvin* FAC was unsealed) and November 2022 (when the first mediation was held)—were based on Barton Cerjak's work product.

What is more, Kia and Hyundai announced they were rolling out the Software Upgrade—a $100MM non-monetary feature of the ultimate settlement—in February

2023,[4] days after the appointment of Class Counsel, (*see* Dkt. 50), and months before the CAC in the MDL was even filed. (*See* Dkt. 84.) In fact, Defendants stated as early as October 2022, in the infancy of the parties' settlement discussions, that they intended to implement this software upgrade. (Barton Decl., ¶¶ 12–14.)

Not only was this the primary relief sought in *Marvin*, (Dkt. 460-3, Wherefore Clause, § (C)), but it created an obvious and tangible benefit for scores of Wisconsin Class Members who bore the brunt of this crisis in the years preceding this retrofit to curb these thefts. Thus, Class Counsel's attempt to diminish Barton Cerjak's efforts in connection with the settlement fall flat. *See, e.g.*, *Doe v. Cin-Lan Inc.*, Case No. 08-CV-12719, 2011 WL 13266312, *2 (E.D. Mich. July 15, 2011) (rejecting class counsel's opposition to non-class counsel's fee request because non-class counsel litigated a case on behalf of Nevada plaintiffs that were included in the global settlement, "which undoubtedly increased the amount of the total settlement pool to cover potential class members in [non-class counsel's] Nevada action").

### c.  Without The Benefit Of Barton Cerjak's Work Product, Class Counsel's Fee Request Would Have Been Much Higher.

Barton Cerjak's efforts to meaningfully benefit the Class are perhaps best demonstrated through Class Counsel's decision to seek a fraction of the 25% "benchmark" award in common fund cases. Class Counsel's fee motion details the law supporting this 25% benchmark, even noting that "Courts in this district typically adhere to the 25% benchmark in cases in which there is little active litigation pre-settlement." (Dkt. 377 at 27 (quoting Dkt. 200 at 28–29 (citing *Ramirez v. Rite Aid Corp.*, 2022 U.S. Dist. LEXIS 109069, at *23 (C.D. Cal. May 3, 2022))).

---

[4] *See* National Highway Traffic Safety Administration, *Hyundai and Kia Launch Service Campaign to Prevent Theft of Millions of Vehicles Targeted by Social Media Challenge* (Feb. 14, 2023), https://www.nhtsa.gov/press-releases/hyundai-kia-campaign-prevent-vehicle-theft.

Ultimately, however, Class Counsel's $13.4MM request "falls well below [this] 25% benchmark," amounting to 9.2% of the $145MM common fund and just 4.9% of the total settlement when the non-monetary benefits of the Software Upgrade ($104.5MM) are considered. (Dkt. 377 at 20–21.)

Although Class Counsel never explains why their request dramatically departs from this benchmark, three things are certain: *first*, the case resolved shortly after Plaintiffs' Leadership was appointed in the MDL (Dkt. 111); *second*, a global resolution was already in the works well before the MDL was even convened (Dkt. 380, ¶ 24); and *third*, the prosecution of this class action—by Class Counsel, Barton Cerjak, or any firm—while laudable, is not purely an altruistic endeavor. Thus, had Class Counsel believed that they could have credibly sought more in compensation, they surely would have done so.

Here, however, Class Counsel inherited a case that Barton Cerjak was resolutely litigating, who had already taken the foundational steps to identify the defect, establish defendant's knowledge thereof, plead strong claims, and mount challenges to Defendants' arguments, which revealed the weakness of their position. Thus, not only was Class Counsel better positioned to negotiate an early settlement, but they could more accurately calculate the risks of litigation through Barton Cerjak's efforts, who was litigating *Marvin* for more than a year. *Cf. Martin v. Toyota Motor Credit Corp.*, 2022 U.S. Dist. LEXIS 208358, at *34–35 (C.D. Cal. Nov. 15, 2022) (Selna, J.) (awarding 17.6% fee in case that "was resolved relatively quickly" on the heels of related litigation). It follows that the 15.8% delta between the 25% benchmark and Class Counsel's requested award of 9.2% is attributable—at least in part—to the groundwork laid by Barton Cerjak. In fact, even if one amalgamates the fee applications submitted by Class Counsel and Barton Cerjak, the total fee award would be 10.7% of the $145MM monetary award and 5.6% of the $275.5MM total Settlement Value—still far less than the 25% benchmark.

### 3.     The 1.85x Multiplier On Barton Cerjak's Lodestar Is Reasonable.

Class Counsel argues in the alternative that even if Barton Cerjak's efforts helped create the common fund, "there remain compelling grounds to deny Barton's request that his firm receive $2,175,000 from the Common Fund based on 2,049.4 hours of pre-MDL work." (Dk. 478 at 17.) In support of this contention, Class Counsel repackages its prior arguments for denying the fee petition *in toto*.

*First*, Class Counsel claims that "Barton identifies no facts that it developed that were outside [of the] public record at the time Plaintiffs' Leadership filed their pre-MDL complaints." As discussed above, however, Class Counsel ignores that they <u>did rely</u> on Barton Cerjak's work product—verbatim, in some instances—to prepare and file their respective pleadings, including the CAC. (Dkt. 380-3; *see also* Barton Decl., ¶ 5, Ex. 1.) Other than Barton Cerjak's work product in *Marvin*, Class Counsel cannot point to a single article, report, or story that cogently packages a wealth of information from otherwise disparate sources to establish Defendants' culpability.

*Second*, Class Counsel states that although a 1.85x multiplier is "presumptively reasonable," it is unwarranted here because awarding a multiplier "for time spent on *pre-MDL work* for a case [Barton Cerjak] concedes [it] was unsuccessful in settling is simply implausible." (Dkt. 478 at 18 (emphasis in original).) Not only does this distort the scope, timing, and extent of the parties' settlement discussions, (*see supra*), but it is not supported by the law. To portray *Marvin* as an unsuccessful endeavor is silly. Barton Cerjak was not "unsuccessful" in settling the case; it was sent to the MDL before a settlement could be inked, at which point Class Counsel finalized the agreement within months of being appointed.[5]

---

[5] Thus, how Barton Cerjak positioned *Marvin* is vastly different than non-lead counsel's prior litigation in *In re Heritage Bond Litig.*, which was litigated, lost, and actually harmed the class. 2005 WL 1594403 at *25.

17

*Third*, Class Counsel contends that awarding 1.5% of the Common Fund is not congruent with the benefit Barton Cerjak provided. Class Counsel's argument puts undue emphasis on the final step in creating the Common Fund—the settlement agreement—at the expense of the universe of work that benefitted the class. As the court in *AdTrader, Inc. v. Google LLC*, Case No. 17-cv-07082-BLF, (N.D. Cal. March 24, 2020) made clear, however, no "causal connection between the lawsuit and the common fund" is required; rather, the central issue is whether counsel has meaningfully benefited the class. *Id.* at *6. The mere fact that Barton Cerjak did not execute the settlement agreement on the Class's behalf does not mean, as Class Counsel argue, that Barton Cerjak's work was irrelevant.

Indeed, Barton Cerjak undertook tremendous risk to bring this case, a relevant factor in determining an appropriate fee award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002). It was the early investor, devoting significant time and money before anyone had diagnosed the root of the problem or identified a viable claim against Defendants. Barton Cerjak hired experts to further understand the defect; identified class members and representatives from thousands of contacts; and drafted foundational pleadings on which later investors relied, all with no assurances that the litigation would be successful.

Conversely, Plaintiffs' Leadership waited until the *Marvin* FAC was public to file their respective suits. (*See supra*.) Yet by the time this race to the courthouse ensued, Barton Cerjak had already identified the defect and already developed the theory of liability. Defendants had already shown their anticipated defenses, and Barton Cerjak had already mounted strong responses thereto. Thus, awarding 1.5% of the Common Fund is both fair and equitable, especially compared to Barton Cerjak's lodestar, which seeks a smaller multiplier than Plaintiffs' Leadership. (*Compare* Dkt. 379 (Barton Cerjak – 1.85x) *with* Dkt. 377 (Leadership – 2.0x).)

18

The reasonableness of Barton Cerjak's request is also exemplified by comparing it to Class Counsel's request. It is undeniable that Barton Cerjak's work product served as the predicate for the slew of copycat suits that gave rise to the MDL, in which a settlement in principle was reached months later. Various law firms now stand to collectively make millions of dollars and the ticket to entry was based on the unabashed copying of Barton Cerjak's work.[6] Thus, awarding Barton Cerjak $2.175MM—a mere 16.2% of Leadership's $13.4MM fee request—is reasonable. *See, e.g.*, *Gottlieb*, 43 F.3d at 489 (holding that district court abused its discretion in refusing to award non-lead counsel 10% of fee award when class counsel "admittedly stood" on the shoulders of non-class counsel's work product); *In re Nat'l Collegiate Athletic Ass'n Student-Athlete Concussion Inj. Litig.*, 332 F.R.D. 202, 228 (N.D. Ill. 2019) (the "ratio of [objectors'] fees to the total attorneys' fees awarded is approximately 11% [and] [g]iven the benefit the objectors provided to the settlement process, the Court finds this ratio reasonable"), *aff'd sub nom. Walker v. Nat'l Collegiate Athletic Ass'n*, No. 19-2638, 2019 WL 8058082 (7th Cir. Oct. 25, 2019).

## C. BARTON CERJAK'S EXPENSES TO LITIGATE *MARVIN* & *HENRY* ARE COMPENSABLE.

The lion's share of the expenses Barton Cerjak incurred in litigating the *Marvin* Action helped create the common fund. This includes $7,500 for an expert who helped identify and describe the details of the Defect and—based on Mr. Barton's later interaction with Mr. Berman and the expert—was then "*retained to further assist Plaintiffs in this case.*" (Dkt. 380, ¶ 29 (emphasis added).) Plaintiffs do not

---

[6] For an interesting scholarly analysis of the negative effect on the development of the common law due to disincentives for lawyers to put in the tremendous effort necessary for the creation of well-crafted complaints, see Bruce H. Kobayashi, Larry E. Ribstein, *Class Action Lawyers As Lawmakers*, 46 Ariz. L. Rev. 733 (2004) (discussing the insufficiency of copyright law to protect lawyer's investment in creating innovative complaints).

19

contend otherwise, thus waiving the point. *Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D. Cal. 2011). Retaining an expert was necessary precisely because Barton Cerjak invested significant and valuable research and analysis into the *Marvin* FAC that prompted the slew of copycat lawsuits. Class Counsel's own retention of experts to assess the Software Upgrade further belies any argument that the Defect was so obvious that the *Marvin* FAC offered no independent analysis that benefited the Class. (Dkt. 378-2 at 9; Dkt. 378-5 at 7.)

At best, Class Counsel contend that Barton Cerjak's car rental and parking expenses to attend the initial MDL hearing in February 2023 (totaling $290.74) are not reimbursable. Fair enough, but Class Counsel also seek to deny Barton Cerjak reimbursement for procuring the steering columns used to assist in diagnosing the defect, *despite depicting photos of the same steering columns*—taken from Barton Cerjak's office, no less—*in the CAC*. (*See* Dkt. 280, ¶ 28 (citing Dkt. 84, ¶ 1315) (emphasis added).). If anything, this underscores why Class Counsel's opposition cannot be taken seriously. Indeed, this is one of those unfortunate, "unlikely case[s]" discussed in *Cendant II*, where "lead plaintiffs appropriate [non-class counsel's] work and attempt to deny compensation." 404 F.3d at 197.

## D.   KIA AND HYUNDAI LACK STANDING TO OPPOSE THE *M&H* FEE MOTION AND THEIR RESPONSE IS INACCURATE IN ANY EVENT.

As for Kia and Hyundai, they purport to "join in full Class Plaintiffs' Opposition to" the *M&H* Fee Motion and submit their own brief to correct certain "misimpression[s]" that they imply were created in Barton Cerjak's motion papers. (Dkt. 481 at 1.) As discussed below, however, Kia and Hyundai's opposition brief is irrelevant. Not only do they lack standing to challenge disbursements from the non-reversionary common fund, but their ostensible attempt to correct certain "misimpressions" is not remotely accurate.

1.   **Defendants Lack Standing To Selectively Challenge Fee Awards From The Common Fund.**

Defendants lack standing to oppose *M&H* Fee Motion (as well as Class Counsel's Fee Motion) because the attorneys' fees sought will be paid from the common fund that Defendants created for the Class Members' benefit. *See, e.g., Boeing Co. v. Van Gemert*, 444 U.S. 472, 481 n.7 (1980) ("Boeing had no cognizable interest in further litigation between the class and its lawyers over the amount of fees ultimately awarded from money belonging to the class."); *see also Tennille v. W. Union Co.*, 809 F.3d 555, 559 (10th Cir. 2015) ("Generally, a settling defendant in a class action has no interest in the amount of attorney fees awarded when those fees are to be paid from the class recovery rather than the defendant's coffers.").

The Federal Rules of Civil Procedure further support this point, for they provide that "[a] class member, *or a party from whom payment is sought*, may object to the motion" for an award of reasonable attorney's fees and nontaxable costs in a certified class action. Fed R. Civ. P. 23(h)(2). As this text makes plain, the rules do not contemplate a defendant who creates a common fund to settle a class action to object when the class and counsel will be compensated from the same fund. *See id.* Accordingly, Kia and Hyundai's inconsistent positions regarding Class Counsel's Fee Motion versus the *M&H* Fee Motion are irrelevant.

2.   **Defendants' Attempt To "Correct Any Misimpression" In The *M&H* Fee Motion Mischaracterizes The Record.**

Defendants' opposition brief also seeks to "correct any misimpression created by the [*M&H*] fee motion concerning the background of [those] litigations and discussions by those counsel with defendants." (Dkt. 481 at 2.) Defendants' unsupported claims are inaccurate.

*First*, Defendants claim they did not agree that the *Marvin* complaint alleged a purported defect and "merely did not oppose the *Marvin* & *Henry* plaintiffs'

contention in their sealing papers that '[n]o public purpose is served by publishing and/or republishing how these vehicles can be stolen.'" (Dkt. 481 at 2.) Yet the record shows that Defendants did not merely acquiesce to certain redactions about the alleged defect in the FAC, they actively advanced that effort. Indeed, not only did Defendants propose a host of redactions themselves, (Barton Decl., ¶ 7, Ex. 3), *they drafted the very motion* for Barton Cerjak's signature which they now claim they "merely did not oppose." (*Id.* ¶ 6, Ex. 2 (Brennan 2/9/22 Email: "*I also drafted a motion for you to submit to get it approved and noted in there that it was with our concurrence.*") (emphasis added); *see also id.* (Defendants' draft motion containing the very language incorporated into *Marvin* Dkt. 27, which Defendants attribute to Barton Cerjak).) Thus, for Defendants to now suggest that the *Marvin* FAC did not exhaustively allege the Defect, or that they were otherwise indifferent about redacting aspects of it, is remarkably disingenuous.

Second, Defendants claim that the *Marvin* briefing did not alter their position on certain defenses,[7] including their preemption defense that they "continue to assert . . . across the MDL tracks being litigated." (Dkt. 481 at 2.) But how other plaintiffs styled their pleadings, and whether those allegations gave rise to a preemption defense, is of no moment. The point is that following *Marvin*, Kia and Hyundai abandoned federal preemption as a basis to dismiss the <u>Consumer</u> Class's CAC. (*See generally* Dkt. 95.)

---

[7] Defendants further claim that they raised a standing argument in moving to dismiss the CAC, but that was limited to statutory standing for claims brought under California law (*see* Dkt. 95 at 32 (contending that Plaintiffs "lack statutory standing to bring UCL, FAL, and CLRA claims")). This was not the same standing argument that Defendants raised in *Marvin*, which sought to pare down the size of the class. (See *Marvin* Dkt. 20 at 34 (contending that "although Plaintiffs may have standing to bring claims with respect to their own vehicle makes, models, and years, their claims with respect to all other vehicles should be dismissed").)

*Finally*, Defendants feign ignorance regarding the "settlement overtures" made by various plaintiffs before the *Marvin* FAC was filed, as well as Defendants' repeated failure to engage. Defendants' selective recall aside, these overtures are well documented. (*See* Barton Decl., ¶¶ 8–11, Exs. 4–7 (describing attempts to initiate arbitration through BBB Autoline and offering to engage in settlement discussions before filing the *Marvin* FAC).) But Defendants changed their tune and began discussing a global resolution after the *Marvin* FAC was filed, after the motions to dismiss were fully briefed, and after a slew of copycat lawsuits were filed based on Barton Cerjak's work product. (Dkt. 380, ¶ 24; *see also* Barton Decl., ¶¶ 12 –14.)

True, those settlement discussions culminated in the settlement agreement between Defendants and "Court-appointed lead counsel for the consumer plaintiffs." (Dkt. 481 at 3.) But Defendants omit that these discussions began in earnest no later than October 2022 and a settlement framework was established at mediations in November 2022 that occurred before the JPML even heard argument to consolidate these cases on December 1, 2022. (Barton Decl., ¶¶ 12 –14.) If anything, the uncertainty around who would be appointed to lead the MDL delayed settlement discussions, but the timing and sequence of consolidation order bears little substance on who, in fact, meaningfully benefitted the class.

## III.   CONCLUSION

For the foregoing reasons, Barton Cerjak S.C. respectfully requests the Court to grant the *Marvin & Henry* Plaintiffs' Fee & Expense award.

BARTON CERJAK S.C.

*/s/ James B. Barton*

James B. Barton (admitted *pro hac vice*)
*jbb@bartoncerjak.com*
313 N. Plankinton Ave., Suite 207
Milwaukee, WI 53203
T: (414) 488–1822
F: (414) 877–3039

*Counsel for the Marvin & Henry Plaintiffs*

THE *MARVIN* & *HENRY* PLAINTIFFS' REPLY BRIEF IN SUPPORT OF FEE & EXPENSE AWARD

### <u>CERTIFICATE OF COMPLIANCE</u>

I, James B. Barton, Counsel for Plaintiffs in in *Marvin et al. v. Kia America Inc., et al.*, No. 8:22–cv–02304–JVS–KES (E.D. Wis.), and *Henry et al. v. Kia America Inc., et al.*, No. 8:22–cv–01729–JWH–DFM (C.D. Cal.), hereby certify that the foregoing Reply Brief In Support Of Motion For Fee & Expense Award contains 6,814 words, which complies with the word limit set forth in L.R. 11–6.1. I further certify that on July 3, 2024, I caused the foregoing Reply Brief In Support Of Motion For Fee & Expense Award to be electronically filed using the Court's CM/ECF system, thereby electronic serving it upon on all counsel of record.

*/s/ James B. Barton*
James B. Barton

25