# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS (KESx)          Date    July 2, 2024

Title    In Re: Kia Hyundai Vehicle Theft Litigation

Present: The Honorable    **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:**    **[IN CHAMBERS] <u>Order Regarding Motion to Sever [340]</u>**

Defendants Hyundai Motor America ("HMA") and KIA America, Inc. ("KA") (collectively, "Defendants")[1] move to dismiss all but the first-named Subrogation Plaintiff in the individual subrogation cases that have been consolidated in this multidistrict litigation and sever each underlying insured's claims and require that any such claims be refiled as separation actions. (Mot., Dkt. No. 340.) The Subrogation Plaintiffs opposed the Motion. (Opp'n, Dkt. No. 405.) Defendants replied. (Reply, Dkt. No. 430.)

At the hearing on June 10, 2024, the Court ordered the parties to file simultaneous briefs discussing the viability of staying all but the first-named Plaintiff and conducting a bellwether case for each individual action. (Dkt. No. 453.) On June 18, 2024, the Defendants and Subrogation Plaintiffs filed their briefs. (Defendants' Suppl. Br., Dkt. No. 474; Subrogation Plaintiffs' Suppl. Br., Dkt. No. 471.)

For the following reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Sever.

## I. BACKGROUND

The parties are familiar with the facts of this multidistrict litigation, so the Court recites them here only as necessary to resolve this Motion. (<u>See</u> Order Regarding Motion

---

[1] Although Hyundai Motor Company ("HMC") and KIA Corporation ("KC") are Defendants in this action, they contest this Court's jurisdiction over them and thus did not join in the Motion to Sever. (<u>See</u> Mot. at 1 n.1.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   July 2, 2024

Title   In Re: Kia Hyundai Vehicle Theft Litigation

to Dismiss, Dkt. No. 269; Order Regarding Motion to Strike, Dkt. No. 390.)

The subrogation track of this multidistrict litigation consists of eight cases that were filed in the Central District, one case that Defendants removed to this District, and one case that the Judicial Panel on Multidistrict Litigation ("JPML") transferred to this District (collectively, "Individual Actions"). (See State Auto. Mutual Ins. Co. v. Hyundai Motor Am., No. 23-cv-00443 (C.D. Cal. filed Mar. 10, 2023); Standard Fire Ins. Co. v. Hyundai Motor Am., No. 23-cv-00792 (C.D. Cal. filed May 5, 2023); 21st Century Centennial Ins. Co. v. Hyundai Motor Am., No. 23-cv-04288 (C.D. Cal. filed June 1, 2023); State Farm Mutual Auto. Ins. Co. v. Hyundai Motor Am., No. 23-cv-00981 (C.D. Cal. filed June 5, 2023); Zurich Am. Ins. Co. v. Kia Am., Inc., No. 23-cv-01051 (C.D. Cal. filed June 14, 2023); Am. Nat'l Prop. & Cas. Co. v. Hyundai Motor Am., No. 23-cv-01225 (C.D. Cal. filed July 10, 2023); Grange Ins. Ass'n v. Hyundai Motor Am., No. 23-cv-01354 (C.D. Cal. filed July 27, 2023); Westfield Ins. Co. v. Hyundai Motor Am., No. 23-cv-06212 (C.D. Cal. filed Aug. 1, 2023); Am. Mercury Ins. Co. v. Hyundai Motor Am., No. 24-cv-00519 (C.D. Cal. removed Mar. 11, 2024); AMICA Mutual Ins. Co. v. Hyundai Motor Am. et al., No. 24-cv-01261 (C.D. Cal. transferred June 17, 2024).) Seven of the ten Individual Actions were brought by multiple plaintiffs. (See, e.g., State Auto. Mutual Ins. Co. (68 plaintiffs); Standard Fire Ins. Co. (39 plaintiffs); 21st Century Centennial Ins. Co. (36 plaintiffs); State Farm Mutual Auto. Ins. Co. (8 plaintiffs); Zurich Am. Ins. Co. (51 plaintiffs); Westfield Ins. Co. (5 plaintiffs); Am. Mercury Ins. Co. (9 plaintiffs).) The Subrogation Plaintiffs also seek to add new plaintiffs through various types of notices. For instance, 158 plaintiffs seek to be added to the State Auto. Mutual Ins. Co. complaint through notices of appearances. (See Dkt. Nos. 109, 118, 169, 345, 404, 479.) Moreover, sixteen plaintiffs were added to the Standard Fire Ins. Co. complaint, thirty-three plaintiffs were added to the State Auto. Mutual Ins. Co. action through a method specified in the Scheduling Conference Order, fifteen plaintiffs were added to the Zurich Am. Ins. Co. complaint, and three plaintiffs were added to the Westfield Ins. Co. complaint. (Dkt. No. 300, ¶ 6; Dkt. Nos. 332, 336, 395, 451, 485.)

In total, about 444 insurance companies are claiming to assert subrogation claims in this multidistrict litigation. The first eight Individual Actions were consolidated into the Consolidated Complaint on July 28, 2023. (Dkt. No. 176.) The Amended Consolidated Complaint ("ACC") contains the claims of eight Individual Actions and was filed on December 26, 2023. (Dkt. No. 283.) Although Am. Mercury Ins. Co. was filed and removed after the ACC was filed, its complaint can be considered subsumed by

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 2, 2024 |

| | |
|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

the ACC.  (See Dkt. No. 300 ¶ 5.)  Since AMICA Mutual Ins. Co. was transferred to this Court on June 17, 2024, that complaint can also be considered subsumed by the ACC. (Id.)

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 21 permits a court to "sever any claim against a party" under a district court's broad discretion.  Fed. R. Civ. P. 21; see Coleman v. Quaker Oats Co., 232 F.3d 1271, 1297 (9th Cir. 2000).  "It is the interest of efficient judicial administration that is to be controlling under the rule, rather than the wishes of the parties."  Viasat, Inc. v. Space Sys./loral, Inc., No. 12-cv-00260, 2012 WL 12844702, at *2 (S.D. Cal. Aug. 23, 2012) (quoting Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2388 (3d ed. 2012)).

Rule 20 provides that "[p]ersons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action."  Fed. R. Civ. P. 20(a)(1).  Rule 20's "single transaction or occurrence requirement is not met where plaintiffs would have to prove their claims or defendants would have to litigate their defenses on an individualized basis."  Corley v. Google, Inc., 316 F.R.D. 277, 284 (N.D. Cal. 2016); see also Coughlin v. Rogers, 130 F.3d 1348, 1350 (9th Cir. 1997) ("Plaintiffs' claims are not sufficiently related to constitute the same transaction or occurrence.").

Courts consider the following five factors when examining whether to sever a case: whether (1) the claims arise out of the same transaction or occurrence; (2) the claims present some common questions of law or fact; (3) settlement of the claims or judicial economy would be facilitated; (4) prejudice would be avoided if severance were granted; and (5) different witnesses and documentary proof are required for the separate claims. Anticancer, Inc. v. Pfizer Inc., No. 11CV107, 2012 WL 1019796, at *1 (S.D. Cal. Mar. 26, 2012) (citing SEC v. Leslie, No. C 07-3444, 2010 U.S. Dist. LEXIS 76826, at *10–11 (N.D. Cal. July 29, 2010)).

"[E]ven once [Rule 20's] requirements are met, a district court must examine whether permissive joinder would comport with the principles of fundamental fairness or

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                Date   July 2, 2024

Title   In Re: Kia Hyundai Vehicle Theft Litigation

would result in prejudice to either side." <u>Visendi v. Bank of Am., N.A.</u>, 733 F.3d 863, 870 (9th Cir. 2013) (cleaned up). "[T]he potential for hundreds of mini-trials and the likelihood of jury confusion" strongly suggest joinder would be unfair and prejudicial. <u>Corley</u>, 316 F.R.D. at 289. Moreover, courts are to apply the joinder and misjoinder rules "to promote trial convenience and to expedite the final determination of disputes." <u>League to Save Lake Tahoe v. Tahoe Reg. Planning Agency</u>, 558 F.2d 914, 917 (9th Cir. 1977). "A determination on the question of joinder of parties lies within the discretion of the district court." <u>Corley</u>, 316 F.R.D. at 282 (internal quotation marks omitted and citation omitted).

Standing alone, "[m]isjoinder of parties is not a ground for dismissing an action." Fed. R. Civ. P. 21. Rather, "the court may at any time, on just terms, add or drop a party." <u>Id.</u> "Thus, if plaintiffs fail to meet the standard for permissive joinder, 'the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance.'" <u>Visendi</u>, 733 F.3d at 870–71 (quoting <u>Coughlin</u>, 130 F.3d at 1351). "In appropriate cases, courts can remedy misjoinder by dismissing the claims of all but the first named plaintiff without prejudice to the filing of individual actions." <u>Id.</u> at 871.

### III. DISCUSSION

#### A.   *Federal Rule of Civil Procedure 18*

First, the Subrogation Plaintiffs argue that Defendants fail to recognize Federal Rule of Civil Procedure 18, "which expressly allows each Plaintiff to join as many claims as they may have against the Defendants without any relation requirement." (Opp'n at 13–14 (citing out-of-circuit cases).) However, as Defendants contend, Rule 18 "has no bearing on the impropriety of the joinder of multiple Subrogation Plaintiffs in the Individual Actions." (Reply at 3.) Moreover, the Subrogation Plaintiffs do not dispute that Rule 21 permits courts to sever parties and claims. (<u>See generally</u> Opp'n.) Thus, although claims may be properly joined under Rule 18, that does not prohibit severance under Rule 21. <u>See, e.g.</u>, <u>Marquez v. Gottstein Corp.</u>, No. 20-cv-08984, 2021 WL 4816625, at *2 (C.D. Cal. May 17, 2021) (severing claims after finding them properly joined under Rule 18); <u>Lewis v. Nevada</u>, No. 13-cv-00312, 2014 WL 65799, at *3 n.9 (D. Nev. Jan. 7, 2014) (noting that, although joinder of claims by a single plaintiff is generally governed by Rule 18, such joinder "would appear to be subject to possible

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS (KESx)                    Date    July 2, 2024

Title    In Re: Kia Hyundai Vehicle Theft Litigation

severance under Rule 21 where such severance is in the interests of justice and efficient conduct of the litigation").

   B.    *Federal Rule of Civil Procedure 20*

   "To join together in one action, plaintiffs must meet two specific requirements: (1) the right to relief asserted by each plaintiff must arise out of or relate to the same transaction or occurrence, or series of transactions or occurrences; and (2) a question of law or fact common to all parties must arise in the action." Coughlin, 130 F.3d at 1351 (citing Fed. R. Civ. P. 20(a)).  Defendants argue that "[t]he Court should sever the Subrogation Plaintiffs in the Individual Actions because they do not satisfy Rule 20's requirements for permissive joinder, and . . . joinder does not comport with the principles of fundamental fairness and would result in prejudice to HMA and KA."  (Mot. at 5 (internal quotation marks and citation omitted).)  Defendants also argue that the Court should sever the insureds' claims in the Individual Actions to promote fairness and prevent prejudice to Defendants.  (Id. at 5–6.)

        1.    Same Transaction or Occurrence

   Plaintiffs may only be joined in a suit if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences."  Fed. R. Civ. P. 20(a)(1)(A).  Rule 20's "single transaction or occurrence requirement is not met where plaintiffs would have to prove their claims or defendants would have to litigate their defenses on an individualized basis."  Corley, 316 F.R.D. at 284.  The Ninth Circuit has stated that "the existence of a common allegation of [wrongdoing], in and of itself, does not suffice to create a common transaction or occurrence."  Coughlin, 130 F.3d at 1350.

   Corley is instructive.  In Corley, plaintiffs filed two actions, joining 879 individuals in total, based on their allegation that Google violated the Wiretap Act in the same manner as to every plaintiff.  316 F.R.D. at 279–80.  While the plaintiffs' allegations were based on the same theory of liability and claim against Google, the court found that the plaintiffs did not satisfy the "same transaction or occurrence" requirement because the "intensely individualized" question of consent "requires an examination of many different transactions or occurrences."  Id. at 285 (internal quotation marks omitted).  Given the "individualized nature" of the consent analysis, "Google must have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   July 2, 2024

Title   In Re: Kia Hyundai Vehicle Theft Litigation

the opportunity to fully and fairly litigate against each Plaintiff in this case," which requires "allow[ing] Google to review and present defenses against each Plaintiff." Id. at 287.  As a result, the court held that plaintiffs' claims "d[id] not arise from the same transaction or occurrence, and Plaintiffs ha[d] been misjoined." Id.

Here, Defendants argue that the Subrogation Plaintiffs cannot satisfy the "same transaction or occurrence" requirement because the Subrogation Plaintiffs would have to "prove their claims" and "Defendants would have to litigate their defenses" on an individualized basis.  (Mot. at 7 (quoting Corley, 316 F.R.D at 284).)  Moreover, Defendants assert that "the nature of subrogation claims presents individualized issues." (Id.)  The Court agrees with Defendants.  As stated in the Court's prior order granting the motion to strike class allegations, the Subrogation Plaintiffs' claims raise individualized questions of each Subrogation Plaintiffs' underlying insurance policies and transactions with their insureds as well as each insured's specific claims against Defendants.  (See Order Regarding Motion to Strike at 6–11.)  Thus, whether a Subrogation Plaintiff has any subrogation rights will require "evaluating each underlying insurance policy of each insurer" and the insurance payments it claims to have made.  (Id. at 7–11.)  See, e.g., Justo v. Indymac Bancorp, No. 09-1116, 2010 WL 623715, at *10 (C.D. Cal. Feb. 19, 2010) ("It is clear that the Plaintiffs claims do not arise out of the same transactions or occurrences.  Each had a separate loan from a separate lender and different representations regarding loan modification were made to them. . . . The fact that Plaintiffs' legal theories are similar is insufficient to join their claims. "); Kunde Enters., Inc. v. Nat'l Sur. Corp., No. 19-cv-06636, 2019 WL 9654857, at *3 (N.D. Cal. Dec. 18, 2019) ("Kunde and VWE's individual claims arise out of their two separate policies with two separate insurers.  Any similarity between the insurance policy giving rise to VWE's claims and the insurance policy giving rise to Kunde's claims is outweighed by the fact that the insurance policies are distinct instruments, issued by separate entities, applying to separate covered property.").

Defendants also assert that "the Subrogation Plaintiffs must prove each insured's claim against Defendants on an individualized basis."  (Mot. at 10.)  But the Subrogation Plaintiffs argue that joinder is appropriate because "[w]here claims arise out of multiple occurrences at different times and places (as in the instant action), federal courts consider those claims to have arisen from a 'series of transactions or occurrences' so long as they are logically related."  (Opp'n at 15.)  However, the Subrogation Plaintiffs do not cite any Ninth Circuit cases that apply the "logical relationship" test.  (See generally id.)  Instead,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 2, 2024 |

| | |
|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

the Subrogation Plaintiffs rely on two out-of-circuit cases to support their position. See Smith v. Trans-Siberian Orchestra, 728 F. Supp. 2d 1315, 1319 (M.D. Fla. 2010) ("In the Eleventh Circuit, courts apply the logical relationship test."); Abraham v. Volkswagen of Am., Inc., 795 F.2d 238, 251 (2d Cir. 1986) (finding that allegations of the "faulty valve stem seal as a single defect that caused the various damages" "amply satisfie[d] the requirement of a series of logically related transactions" because "it is indisputable that the remaining plaintiffs raise common questions of law and fact"). And the one case in this District that the Subrogation Plaintiffs cite concerned subject-matter jurisdiction under the False Claims Act. See United States ex rel. Anthony v. Burke Eng'g Co., 356 F. Supp. 2d 1119, 1121–23 (C.D. Cal. 2005) (discussing subject-matter jurisdiction under 31 U.S.C. § 3732(b) and finding that the "same transaction or occurrence" includes "a system or scheme of false claims").

The Subrogation Plaintiffs further assert that "[d]istrict [c]ourts in this Circuit and around the country have similarly interpreted [Rule] 20 broadly as applied to common defects alleged in automobiles." (Opp'n at 16–17.) However, the unpublished and out-of-circuit cases that the Subrogation Plaintiffs rely on do not support their argument because none of the cases present the individualized questions of fact regarding causation of the thefts or attempted thefts of each insured's vehicle that are prevalent in this case. Nor do any of the cases cited involve subrogation claims. See, e.g., Cashatt v. Ford Motor Co., No. 19-cv-05886, 2023 WL 2646366, at *3–5 (W.D. Wash. Mar. 27, 2023) ("The Court cannot at this stage evaluate the degree of difference between manifold designs or ascertain the impact of any such difference on causation. It is entirely possible that—as Plaintiffs allege—the Exhaust Fume Defect plagued several generations of Interceptor notwithstanding intervening redesigns."); In re ZF-TRW Airbag Control Units Prod. Liab. Litig., No. 19-02905, 2021 WL 9181832, at *8–9 (C.D. Cal. Aug. 20, 2021) ("The issue of whether all [airbag control units] containing the DS84 ASIC are defective, despite the level and effectiveness of protective circuitry, satisfies the 'common question' requirement."); Grover v. BMW of N. Am., LLC, 434 F. Supp. 3d 617, 623–24 (N.D. Ohio 2020) (denying motion to sever plaintiffs' claims because each plaintiff "purchased a BMW automobile with a defective N63 engine;" "BMW knew the N63 engine was defective;" "[t]he plaintiffs notified authorized BMW dealerships that the Vehicles consumed excessive engine oil during the warranty period;" "BMW assured plaintiffs that excessive oil consumption was normal and not the result of a defect;" and "BMW did not repair the defect in accordance with the Warranty"); El Fakih v. Nissan N. Am., Inc., No. 18-cv-60638, 2018 WL 4193675, at *4 (S.D. Fla. July 26, 2018)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                Date   July 2, 2024

Title   In Re: Kia Hyundai Vehicle Theft Litigation

("Although Plaintiffs individually purchased their vehicles and brought them to varying dealerships for repairs, Plaintiffs' claims all arise from the same series of transactions or occurrences: sale of the NNA vehicles containing the faulty transmission and NNA's failed attempts to honor the warranty by properly informing its dealerships how to remedy the defect."); Miller v. Nissan N. Am., Inc., No. 18CV00340, 2018 WL 4211370, at *2–3 (E.D. Mo. Sept. 4, 2018) (denying motion to sever even though plaintiffs purchased different models of vehicles because plaintiffs "alleged the same defect affected their transmissions and caused their damage and are alleging breach of the same new vehicle limited warranty").  While the Subrogation Plaintiffs all allege that their insureds' vehicles were stolen or damaged due to Defendants' Thief Friendly Design (ACC ¶¶ 17–18), the insurance policies of each Subrogation Plaintiff, the payments made to each insured, and the circumstances causing the alleged theft and damage of each insureds' vehicle do not arise out of the same transaction or occurrence.  Thus, the subrogation claims and circumstances surrounding the alleged thefts or attempted thefts distinguish this case from the cases cited by the Subrogation Plaintiffs.

For reasons stated in its prior order granting Defendants' motion to strike class allegations, the Court agrees with Defendants that the claims do not arise from the same transaction or occurrence.  (Order Regarding Motion to Strike at 6–7 ("But even if the Class Subrogation Plaintiffs prevailed on the common question that Defendants misled or concealed a defect that caused class vehicles to be susceptible to theft, the question of whether each insured's vehicle was stolen or damaged due to Defendants' Thief Friendly Design raises individualized inquiries.").)  For instance, the Court would need to determine whether each insured's claim "was, in fact, caused by the Thief Friendly Design and not some other intervening cause, such as a different defect or the insured's own neglect in protecting his or her vehicle." (Id. at 8.)  Due to the individualized nature of each insured's claim against Defendants, the Subrogation Plaintiffs fail to satisfy the same transaction or occurrence requirement.  See Visendi, 733 F.3d at 870 ("While Plaintiffs allege in conclusory fashion that Defendants' misconduct was 'regular and systematic,' their interactions with Defendants were not uniform.  Factual disparities of the magnitude alleged are too great to support permissive joinder."); Fleites v. MindGeek S.A.R.I., No. CV 21-04920, 2022 WL 1314035, at *5 (C.D. Cal. Feb. 10, 2022) ("Defendants' alleged pattern and practice does not vitiate the Court's significant concerns about the vast factual distinctions between the individualized circumstances of Plaintiffs' claims."); see also Corley, 316 F.R.D. at 286 ("Courts have recognized that the predominance analysis under Rule 23(b) and the single transaction or occurrence analysis

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 2, 2024 |

| | |
|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

under Rule 20(a) may, in some instances, be two sides of the same coin.")  Thus, the
Subrogation Plaintiffs' claims do not arise from the same transaction or occurrence.

    2.    Common Questions of Law and Fact

    Defendants argue that the Subrogation Plaintiffs also fail to satisfy the second
requirement for permissive joinder—common questions of law and fact.  (Mot. at 10.)
As the Court has already explained in its prior order, each Subrogation Plaintiff's claim
involves different facts.  In response, the Subrogation Plaintiffs argue that "there need
only be a single common question of law or fact, and commonality in the context of
joinder does not require the common question to be the predominant issue in the
litigation."  (Opp'n at 20.)  The Subrogation Plaintiffs cite two unpublished, district court
cases to support their proposition.  (Id. (citing Walker v. Bryson, No. 11-cv-01195, 2012
WL 5186658 (E.D. Cal. Oct. 16, 2012); Jacques v. Hyatt Corp., No. 11-05364, 2012 WL
3010969 (N.D. Cal. July 23, 2012)).)  But unlike this action, those two cases do not
contain subrogation claims.  Rather, Walker concerned a retaliation claim under Title VII
and the Age Discrimination and Employment Act, and one plaintiff's retaliation claim
depended on the defendants' treatment of the other plaintiff.  2012 WL 5186658, at *8;
see id. ("Specifically, [plaintiff] Braun asserts that he was retaliated against for
complaints he made to his supervisors regarding Defendants' treatment of Plaintiff
Walker.").  Thus, in Walker, one plaintiff's claim necessarily related to the facts in the
other plaintiff's claim.  That is not the case here.  Moreover, in Jacques, the court found
that the plaintiff's "preexisting conditions, contributing factors, and the nature and extent
of [the plaintiff's] injuries are [] common questions of fact for both claims" against
multiple defendants.  2012 WL 3010969, at *4.  However, the number of plaintiffs and
individual questions of fact underlying each insured's claim distinguish this case from
Jacques.  While Jacques only concerned one plaintiff, this case involves more than 400
subrogation plaintiffs bringing claims on behalf of hundreds, if not thousands, of
insureds.  Thus, the cases cited by the Subrogation Plaintiffs are easily distinguishable
from the instant action.

    Moreover, Defendants argue that joinder is improper due to the application of
multiple states' laws to each individual insured's underlying claims against Defendants.
(Mot. at 11.)  For reasons previously mentioned in its prior order, the Court agrees with
Defendants that the Subrogation Plaintiffs' claims involve individualized questions of
law and fact.  (Order Regarding Motion to Strike at 12–15 (finding that state law varies

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   July 2, 2024

Title   In Re: Kia Hyundai Vehicle Theft Litigation

as to the Defendants' defenses and each individual insured's underlying causes of action).)  See, e.g., Fleites, 2022 WL 1314035, at *6 ("The 34 separate Plaintiffs in this action bring 18 different claims under both state and federal law.  The state law claims alone would raise numerous state law differences and highly individualized questions of fact."); Grijalva v. Kevin Mason, P.A., No. 18-cv-02010, 2013 WL 13027072, at *2 (C.D. Cal. Dec. 30, 2019) ("[T]he Court would need to conduct an individualized factual analysis of the allegations underlying each Plaintiff's claims and then apply the laws of a number of states.  This clearly demonstrates that Plaintiffs have also failed to meet Rule 20(a)'s second requirement.").  Even if California law governed all of the Subrogation Plaintiffs' state law claims, that would not resolve the individualized questions of fact regarding causation.  Thus, "trial efficiency will not be promoted by allowing all Plaintiffs to bring a single case.  Each claim raises potentially different issues, and must be viewed in a separate and individual light by the Court."  Coughlin, 130 F.3d at 1351.

The Subrogation Plaintiffs further assert that "case law on the aggregation of product defect subrogation claims overwhelmingly favors joinder of these claims." (Opp'n at 21.)  To support their argument, the Subrogation Plaintiffs cite unpublished, out-of-circuit cases in which district courts have denied motions to sever subrogation claims and plaintiffs.  (Id. at 21–22 (citing cases).)  But all the cases cited involved less than five subrogation plaintiffs and less than ten subrogation claims.  Only three cases involved more than fifteen subrogation claims, and the case with the largest number of subrogation claims had only 210 claims.  As indicated above, the substantial number of subrogation plaintiffs and claims distinguish this case from others.  In this case, there are more than 400 Subrogation Plaintiffs, each of which is bringing claims on behalf of hundreds, if not thousands, of insureds.  For example, in support of their claims in the ACC, the Subrogation Plaintiffs submitted as Exhibit C "claim spreadsheets[] containing claim data for thefts and attempted thefts of the Vehicles reported and paid to date." (ACC ¶ 22; id., Ex. C.)  Exhibit C contains over 300,000 individual insurance claims provided by five of the eight sets of Subrogation Plaintiffs in this case.  (Id., Ex. C.) Thus, the cases cited by the Subrogation Plaintiffs substantially differ from the number of plaintiffs and claims in this action.

C.    *Judicial Economy*

"Rule 20 is designed to promote judicial economy, and reduce inconvenience, delay, and added expense."  Coughlin, 130 F.3d at 1351.  Defendants argue that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS (KESx)          Date   July 2, 2024

Title     In Re: Kia Hyundai Vehicle Theft Litigation

"allowing hundreds, thousands, or in some cases hundreds of thousands of claims to continue in a single action would not 'facilitate' 'judicial economy' or 'justice' because the claims arise out of 50 states' laws." (Mot. at 17.) In response, the Subrogation Plaintiffs assert that "there is no utility in pre-trial severance" because the ACC "separat[es] out unique allegations for the law of each state." (Opp'n at 26.) However, as Defendants contend, "the ACC omits all of the information that would be needed to conduct a choice-of-law inquiry as to each insured." (Reply at 11.) Thus, "the Court has no way of applying the appropriate state allegations to each particular claim." (Id.) The Court finds that proceeding with the Subrogation Plaintiffs' and their individual insureds' claims in one action will result in inconvenience, delay, and added expense. As stated above, the ACC contemplates that all 50 states' substantive laws may apply to various claims, requiring the Court to expend significant time and resources to analyzing the laws of multiple different states. See, e.g., Fleites, 2022 WL 1314035, at *7 ("Given the choice-of-law issues the Complaint presents, the Court will spend considerable resources analyzing the laws of multiple different states and foreign countries."); see also Flauta v. Johnson & Johnson, No. 12-9095, 2013 WL 12138986, at *3 (C.D. Cal. Jan. 10, 2013) ("The purposes of Rule 20(a) are not served when the claims are similar in nature or share some commonalities but are predicated on distinct factual scenarios. In such a case, the joinder of multiple parties decreases judicial economy and efficiency, rather than promoting it, because it requires the court to view each claim in 'a separate and individual light.'" (quoting Coughlin, 130 F.3d at 1351)).

### D.  Fundamental Fairness and Prejudice

Defendants assert that joinder is unfair and prejudicial to them. (Mot. at 12–14.) Defendants rely on Rubio v. Monsanto Co., 181 F. Supp. 3d 746 (C.D. Cal. 2016), to support their argument. In Rubio, two plaintiffs brought products liability, negligence, and warranty claims based on the allegation that the defendant's herbicide, Roundup, caused them to develop cancer. Id. at 753–55. The plaintiffs argued that "joining their two claims [wa]s efficient because they contain[ed] a number of common issues of fact, namely the allegedly dangerous properties of Roundup, as well as [Defendant]'s knowledge of those properties at the time Roundup was developed, tested, and marketed." Id. at 758. Nevertheless, the court exercised its discretion to sever the cases because it found that "trying the two claims together may be prejudicial." Id. While "Plaintiffs appear[ed] to view their most important task in this case as being the need to prove that Roundup causes cancer generally," the court noted that "[i]n order to state a

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   July 2, 2024

Title   In Re: Kia Hyundai Vehicle Theft Litigation

claim, however, they must also demonstrate that Roundup caused *their individual* instances of cancer." Id. (emphasis in original). Thus, according to the court, joining the two claims could give rise to a "prejudicial inference" because "one plaintiff, despite a weaker case of causation, could benefit merely through association with the stronger plaintiff's case." Id. Defendants claim that a similar prejudice exists in this case because even if "the Subrogation Plaintiffs can establish that Defendants are liable for some 'defect' or 'misrepresentation' related to that 'defect,' . . . the Subrogation Plaintiffs will need to prove reliance as to each insured and that the 'defect' caused the theft of or damage to each insured's vehicle." (Mot. at 13.) As in Rubio, Defendants argue that joining the claims of all insureds may create a "prejudicial inference" because "the Subrogation Plaintiffs will use their stronger claims to bolster their weaker claims." (Id. at 13, 16–17.) The Court agrees with Defendants. Given the substantial number of claims and Subrogation Plaintiffs in this case, the Court finds that the trial would be unmanageable and difficult to present in a manner that does not conflate the issues for jury members. See also Todd v. Tempur-Sealy Int'l, Inc., No. 13-cv-04984, 2017 WL 2840272, at *3–4 (N.D. Cal. June 30, 2017) (finding joinder would be prejudicial because "the testimony of certain Plaintiffs is stronger or more credible than others" regarding reliance on advertisements).

In their Opposition, the Subrogation Plaintiffs fail to respond to the merits of Defendants' arguments. (See generally Opp'n.) Rather, the Subrogation Plaintiffs claim that Defendants' concerns are "obviously premature and any concerns about prejudice should be addressed closer to trial—after the issues and claims remaining in the case are more crystalized—through consideration of a separation trial under Rule 42." (Id. at 24.) The Subrogation Plaintiffs assert that "[i]t is not yet known which of the over 300,000 claims will remain in the case and be selected for trial[,]" and the parties "have not yet exchanged contentions or performed any discovery, no design documents have been produced, expert discovery has not been disclosed, and there have been no pre-trial rulings." (Id.) However, Defendants argue that "the parties have now propounded discovery on each other, and HMA and KA have served responses." (Reply at 11.) Moreover, Defendants assert that "severance is necessary now to prevent the Subrogation Plaintiffs from insulating their claims from attack at all stages before trial." (Id.) According to Defendants, they "have a due process right to defend against the claims on an insurer-by-insurer and insured-by-insured basis," which cannot be done without severance. (Id.) The Court finds the Subrogation Plaintiffs' argument to delay consideration of severance of claims and plaintiffs until after discovery unpersuasive.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                    Date   July 2, 2024

Title   In Re: Kia Hyundai Vehicle Theft Litigation

    The Subrogation Plaintiffs also argue that "Defendants have already litigated and lost this issue while attacking the adequacy of the factual allegations in the Subrogation Plaintiffs' pleading." (Id. at 24–25 (citing Order Regarding Motion to Dismiss).) However, the Court finds the Subrogation Plaintiffs' reference to its Order on the Motion to Dismiss inapposite because that Order turned on the sufficiency of the allegations to state a claim, not on whether the claims or plaintiffs were properly joined.

    Additionally, Judge Staton's order dismissing all plaintiffs except for the first named plaintiff in State Automobile Mutual Insurance Co. v. Hyundai Motor America, is illustrative. No. 23-cv-00439, 2024 U.S. Dist. LEXIS 34757 (C.D. Cal. Feb. 27, 2024). In State Auto. Mut. Ins. Co., the insurer-plaintiffs allege that defects in certain Hyundai and Kia vehicles caused damage to the insurer-plaintiffs' and putative class members' insureds' vehicles. 2024 U.S. Dist. LEXIS 34757, at *1–2. The insurer-plaintiffs, through subrogation, seek to recover payments they made to their insureds for harms allegedly caused by Hyundai and Kia. Id. In an order to show cause regarding misjoinder, Judge Staton noted that "[i]n its prior order granting Defendants' motion to strike class allegations, the Court determined that 'individual questions overwhelm common ones' such that Plaintiffs' action could not possibly be certified under Rule 23(b)(3)." State Auto. Mutual Ins. Co. v. Hyundai Motor Am., No. 23-cv-00439, 2024 U.S. Dist. LEXIS 9450, at *2 (C.D. Cal. Jan. 18, 2024). The court then explained that "[f]or similar reasons," it "now questions whether the 98 Plaintiffs named in th[e] action can, under Federal Rule 20, and/or should, in the Court's discretion, litigate their subrogation claims against Defendants in a single action." Id. As a result, the court issued an order to "show cause why the Court should not dismiss all but the first named Plaintiff from th[e] action." Id. On February 27, 2024, Judge Staton ruled on the order to show cause and dismissed all but the first named plaintiff upon finding "that joining all 98 Plaintiffs in one action does not 'comport with the principles of fundamental fairness,' would undermine trial efficiency, and would prejudice Defendants." 2024 U.S. Dist. LEXIS 34757, at *3 (citations omitted). Judge Staton noted that "primary aspects of this action would require the fact-finder to make thousands of individual, insured-by-insured findings." Id. at *4 (internal quotation marks and citation omitted). Thus, the court stated that "[f]or the reasons that the Court concluded that Plaintiffs' putative class claims lacked predominance, the Court now finds that allowing all 98 insurers to proceed in the same action would lead to 'hundreds [if not thousands] of mini-trials.'" Id. at *3 (citation omitted); see also Corley, 316 F.R.D. at 289 ("[K]eeping 879 Plaintiffs in these actions would cause significant prejudice to Google. Indeed, several courts have found

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.  8:22-ml-03052-JVS (KESx)                    Date  July 2, 2024

Title      In Re: Kia Hyundai Vehicle Theft Litigation

substantial prejudice where a defendant's defense would, in effect, require [hundreds of] mini-trial[s]." (internal quotation marks and citation omitted)).

### E.     Different Witnesses and Documentary Proof

Defendants argue that "[e]ach insured's claim will require different witnesses and documentary evidence." (Mot. at 16.)  Specifically, Defendants claim that "the Subrogation Plaintiffs must demonstrate that the injury each individual insured allegedly suffered was caused by the 'defect' the Subrogation Plaintiffs allege and is connected to a specific legal claim the Subrogation Plaintiffs assert." (Id.)  Thus, Defendants argue that "there can be no dispute that the evidence necessary to prove each claim will vary by insured, even for claims asserted by the same Subrogation Plaintiff." (Id.)  The Subrogation Plaintiffs fail to respond to this argument. (See generally Opp'n.)  Instead, the Subrogation Plaintiffs assert that "all pre-trial discovery as to the allegations of common defect will involve the same witnesses and documentary proof." (Id. at 26.)  While discovery as to the existence of the alleged Thief Friendly Design will include the same witnesses and documentary proof, the Court finds that each subrogation claim and every underlying insured's claim will require different witnesses and documentary proof, which warrants severance of the plaintiffs and claims.

### F.     Waiver of Objections to Joinder

The Subrogation Plaintiffs claim that Defendants have waived their objection to "provisional joinder" by repeatedly stipulating to the joinder of plaintiffs and their claims in this multidistrict litigation.[2]  (Opp'n at 27.)  However, Defendants claim that they "made clear in their Motion that they do not dispute coordination and/or consolidation in the MDL for pre-trial purposes, including the use of a consolidated complaint." (Reply at 8–9; Mot. at 17.)  Instead, Defendants "seek only to sever the Subrogation Plaintiffs and their claims in the Individual Actions into separate cases." (Reply at 9.)  The Court finds the Subrogation Plaintiffs' argument regarding "provisional joinder" unpersuasive.

---

[2]  The one case the Subrogation Plaintiffs cite to support their argument is inapposite. (Opp'n at 27 (citing Markham v. Home Depot USA, Inc., No. 13-8431, 2014 WL 117102 (C.D. Cal. Jan. 10, 2014)).)  Markham concerned a waiver of an objection to "fraudulent joinder" for purposes of removal, which is not at issue here.  2014 WL 117102, at *2.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)          Date   July 2, 2024

Title   In Re: Kia Hyundai Vehicle Theft Litigation

The Subrogation Plaintiffs also argue that "Defendants have repeatedly stipulated to both the Plaintiffs' amendment requests to join additional Plaintiffs and the Court's orders which implemented those stipulations throughout the MDL." (Id. (citing Dkt. No. 108 at 2 n.2; Dkt. No. 289; 6/12 Tr., Dkt. No. 150, at 15–16).) While Defendants agreed to that procedure as an efficient mechanism for adding new plaintiffs due to the procedural posture of the multidistrict litigation, they did so without conceding that joinder was proper. (See Dkt. No. 108 at 2 n.2; Dkt. No. 289; Dkt. No. 300; 6/12 Tr., Dkt. No. 150, at 15–16.) Nor do the Subrogation Plaintiffs "explain how agreement to the concept of a consolidated MDL complaint . . . and to the continued viability of the MDL after this Court struck the class allegations . . . constitutes waiver of an objection to joinder of Subrogation Plaintiffs and their insureds' claims in the Individual Actions." (Reply at 15.) Thus, the Court finds that Defendants' stipulations did not waive their right to seek severance of the Subrogation Plaintiffs and claims in the Individual Actions.

Furthermore, the Subrogation Plaintiffs contend that "Defendants admitted to the JPML that the claims against it 'all rely on the same basic factual premise.'" (Opp'n at 27 (quoting In re Kia Hyundai Vehicle Theft Mktg., Sales Pracs., & Prods. Liab. Litig., No. 22-ml-3052, Response in Opposition to Motion for Transfer, Dkt. No. 44 at 4 (J.P.M.L. Sept. 23, 2022)).) However, Defendants note that they "filed the JPML submission at issue (in which they noted that they did not oppose centralization in the MDL) on September 23, 2022, when there were twenty-seven consumer class actions and zero subrogation actions pending." (Reply at 14.) Because the "first Individual Action was not filed until almost six months later," "Defendants could not possibly have taken any position on the propriety, fairness, or prejudice of joinder of the Subrogation Plaintiffs or their claims in that filing." (Id. at 14–15.) The Subrogation Plaintiffs also rely on the JPML's finding that

> [p]laintiffs in all actions purchased or leased Kia and Hyundai branded vehicles that they allege are defective because the cars lack engine immobilizer technology, which prevents them from being started unless a code is transmitted from a unique smart key. . . . All actions can be expected to share factual questions surrounding the marketing, sale and manufacture of these vehicles and defendants' knowledge of the alleged defect.

(Id. at 9 (quoting In re Kia Hyundai Vehicle Theft Litig., 648 F. Supp. 3d 1374, 1375

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS (KESx)                    Date    July 2, 2024

Title    In Re: Kia Hyundai Vehicle Theft Litigation

(J.P.M.L. 2022)).)  But, as Defendants assert, "the JPML ruled on coordination and/or consolidation in the MDL on December 13, 2022, again before any subrogation case had been filed, so its ruling has no bearing on the joinder issue here."  (Reply at 15.)  Thus, the Court finds Defendants' statement before the JPML and the JPML's decision regarding the consumer cases unpersuasive to support the Subrogation Plaintiffs' waiver argument.

> G.    *Staying All but the First-Named Plaintiff and All but the First-Named Plaintiff's First Claim*

A district court may stay proceedings pursuant to its inherent power to "control the disposition of the cases on its docket with economy of time and effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254 (1936); Ernest Bock, LLC v. Steelman, 76 F.4th 827, 842 (9th Cir. 2023) (stating that "the district court ha[s] the inherent authority to stay federal proceedings pursuant to its docket management powers").  "The exertion of this power calls for the exercise of a sound discretion."  CMAX, Inc. v. Hall, 300 F.2d 265, 268 (9th Cir. 1962).  The competing interests that a district court must weigh in deciding whether to grant a stay include the following: (1) "the possible damage which may result from the granting of a stay"; (2) "the hardship or inequity which a party may suffer in being required to go forward"; and (3) "the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay."  Id. (citing Landis, 299 U.S. at 254–55); see also Doyle v. OneWest Bank, N.A., No. 13-05951, 2015 U.S. Dist. LEXIS 100526, at *9 (C.D. Cal. May 21, 2015) ("The power to stay also includes the power to do so sua sponte.").

> 1.    Damage from a Stay

The Court first finds that neither party would be damaged if a stay is issued.  "A stay should not be granted unless it appears likely the other proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented to the court."  Leyva v. Certified Grocers of Cal., Ltd., 593 F.2d 857, 864 (9th Cir. 1979).  The Subrogation Plaintiffs argue that "issuing a stay poses no risk of damaging the stayed claims."  (Subrogation Plaintiffs' Suppl. Br. at 7.)  The Court agrees with the Subrogation Plaintiffs because there is no urgency to resolve the claims of the stayed Plaintiffs.  In their supplemental brief and at oral argument, Defendants argued that "[t]here is no way

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)                     Date   July 2, 2024

Title   In Re: Kia Hyundai Vehicle Theft Litigation

for this matter to reach resolution without the Subrogation Plaintiffs providing all relevant discovery." (Defendants' Suppl. Br. at 7.)  Specifically, on an insurer level, "Defendants need discovery regarding each Subrogation Plaintiff's knowledge of the alleged theft vulnerability of vehicles without immobilizers.  And on an insured level, Defendants need discovery regarding the circumstances surrounding the theft of each vehicle and the insureds' alleged reliance on Defendants' representations."  (Id.) Defendants thus allege that "[p]ushing off this discovery" for all but ten Subrogation Plaintiffs and their insureds will be damaging to Defendants because it "will add several years to the proceedings."  (Id.)  However, the Court contemplates a relatively short stay that will still allow for discovery as to Defendants and the first-named Plaintiff and its insured, permitting this case to move forward.  Nor did the Defendants indicate at oral argument that there was any urgency in resolving all the claims of the Subrogation Plaintiffs.  Rather, Defendants' sole argument was that they should be entitled to discovery as to every Subrogation Plaintiff and its insured.  But when asked at oral argument how dismissal of all but the first of the first would advance Defendants' desire for discovery of the facts and circumstances with respect to processing each insured's claim, Defendants did not have an answer.  Thus, the Court finds Defendants' discovery argument unpersuasive and premature at this time.

       The Court concludes that neither party would be harmed by a stay for present purposes.  Thus, this factor weighs in favor of a stay.

                    2.       Hardship or Inequity to the Parties

       Second, the Court finds that neither party would face hardship or inequity if the Court stays all but the first-named Plaintiff.  As previously mentioned, Defendants argue that they will suffer prejudice if the claims are not severed because of the risk that a jury may impute liability merely through association with a stronger plaintiff's case. However, as the Subrogation Plaintiffs argue, issuing a stay for the time being eliminates any proposed prejudicial impact of hearing Plaintiffs' claims jointly.  (Subrogation Plaintiffs' Suppl. Br. at 8.)  Additionally, the Subrogation Plaintiffs argue that dismissing, rather than staying, all but the first-named Plaintiff will likely prejudice Plaintiffs by creating statute of limitations issues.  (Id. at 8–9 (citing Holt v. Cnty. of Orange, 91 F.4th 1013, 1021 (9th Cir. 2024) ("[I]t is well established that dismissal of a party for improper joinder does not toll the statute of limitations for the period that party's claims were pending before the dismissal."); Rush v. Sport Chalet, Inc., 779 F.3d 973, 975 (9th Cir.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS (KESx)                    Date    July 2, 2024

Title    In Re: Kia Hyundai Vehicle Theft Litigation

2015) ("The district court abused its discretion, however, by dismissing rather than severing Rush's complaint against Sport Chalet and Petsmart without evaluating the prejudice to Rush.")).)

If dismissed, the Subrogation Plaintiffs contend that they "would need to refile new complaints for each timely filed claim, and dismissal for improper joinder does not toll the statute of limitations." (Id. at 8.)  In response, Defendants argue that "the Court may order equitable tolling such that any cases that are re-filed in the same original district within a specified period of time (e.g., 90 days) relate back to the original dates of filing for statute of limitations purposes." (Defendants' Suppl. Br. at 3.)  But the Subrogation Plaintiffs claim that a ninety-day continuation of the statute of limitations is not a feasible solution. (Subrogation Plaintiffs' Suppl. Br. at 9.)  According to the Subrogation Plaintiffs, "refiling a separate complaint for each claim would require Plaintiffs to file roughly 4,500 complaints every day (or 187 complaints every hour) in order to timely file all claims within the offered ninety-day period." (Id.)  The Court agrees with the Subrogation Plaintiffs that complying with this refiling deadline is impractical.  As previously mentioned, the Court finds that Defendants' argument regarding potential prejudice from meeting future discovery requirements is premature at this time. (Defendants' Suppl. Br. at 7 ("The Subrogation Plaintiffs are seeking over a billion dollars in damages and must be required to provide discovery for all their claims in order for the matter to proceed to resolution.  Defendants would be significantly prejudiced if the Subrogation Plaintiffs were able to avoid their discovery burden almost entirely while Defendants' discovery burden remained unchanged.").)

Moreover, while this case shares various similarities with State Auto. Mut. Ins. Co., there is one meaningful difference that affects how this Court effectuates severance. In State Auto. Mut. Ins. Co., the court effectuated severance by dismissing all but the first-named plaintiff because plaintiffs conceded that "the running of the statute of limitations [wa]s not apparent on the face of the [complaint]." 2024 U.S. Dist. LEXIS 34757, at *5 (citation omitted).  As indicated above, that is not the case here.  If all but the first-named Plaintiff were dismissed in this case, then the dismissed Plaintiffs would likely be prejudiced because "improper joinder does not toll the statute of limitations for the period that party's claims were pending before the dismissal."  Holt, 91 F.4th at 1021. Defendants underestimate the burden to Plaintiffs if all but the first of the first are dismissed.  Thus, severance must be effectuated in another way that does not prejudice the Subrogation Plaintiffs.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 2, 2024 |

| | |
|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation |

The Court therefore concludes that this factor weighs in favor of a stay.

> 3.     Simplification of Issues, Proof, and Questions of Law

The Court finds that a stay for present purposes would simplify some issues, proof, and questions of law. Staying all but the first-named Plaintiff and allowing the parties to go forward with discovery will likely simplify issues concerning Defendants' alleged Thief Friendly Design and causation, promoting judicial economy. As the Court stated at oral argument, rather than prejudicing Plaintiffs by dismissing all but the first of the first, it is better to stay those Plaintiffs and think of creative ways to resolve the claims once discovery has commenced. And in their supplemental brief, Defendants acknowledge that waiting until discovery is warranted here. (Defendants' Suppl. Br. at 4 ("[B]ellwethers should not be selected until sufficient discovery has been conducted to identify representative cases, both to promote efficiency and protect Defendants' due process rights.").)

This factor therefore weighs in favor of a stay. Collectively, the Court finds that the Landis stay factors counsel in favor of staying all but the first-named Plaintiff for the present.

> H.     *Bellwether Trials Are Premature*

The Subrogation Plaintiffs argue that "selecting and trying a limited number of bellwethers is the preferred procedural mechanism for streamlining this Court's processes." (Subrogation Plaintiffs' Suppl. Br. at 2.) According to the Subrogation Plaintiffs, "examination of bellwether claims would permit this Court to better determine whether the issues and defenses presented by non-bellwether claims can be tried on an aggregate basis." (Id. (citing Briggs v. Merck Sharp & Dohme, 796 F.3d 1038, 1051 (9th Cir. 2015) ("A bellwether trial is a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky questions of causation or liability.")).)

However, Defendants argue that a bellwether trial is premature at this time. (Defendants' Suppl. Br. at 4–6.) The Court agrees with Defendants, as courts have indicated that sufficient discovery should be conducted prior to selecting bellwethers. See, e.g., Adams v. Deva Concepts, LLC, No. 20-cv-9056, 2023 WL 6518771, at *7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.   8:22-ml-03052-JVS (KESx)          Date   July 2, 2024

Title   In Re: Kia Hyundai Vehicle Theft Litigation

(S.D.N.Y. Oct. 4, 2023) ("Because the Court cannot choose 'representative plaintiffs for bellwether discovery . . . in a vacuum,' plenary discovery must be conducted before, if at all, proceeding to the staggered, bellwether-centric approach suggested by Plaintiffs. Proceeding prematurely now would produce only inefficiencies and delay." (internal citation omitted)); Zito v. Leasecomm Corp., 233 F.R.D. 395, 399–400 (S.D.N.Y. 2006) (finding that "[w]hether there is some rational basis for deciding how to group the cases for trial is a matter best deferred until the close of discovery"); In re 2004 DuPont Litig., No. 04-191, 2006 WL 5097316, at *2 (E.D. Ky. Mar. 8, 2006) ("The court concurs that, at least until additional discovery is obtained by defendants, the 'bellwether' approach is not appropriate."). Here, discovery as to Defendants and all but the first-named Plaintiff should be conducted prior to determining whether a bellwether trial is appropriate. Thus, the Court concludes that conducting a bellwether trial is premature at this moment.

I.    *Reality Check*

For a moment, the Court puts aside the analysis laid out above and just takes a hard look at the numbers.

Assume that the Court spent just ten minutes at trial on the individual issues posed by each claimant. In a single Court day, the Court would view about 32 claims.[3] There are approximately 200 Court days per year. That means that if the Court did nothing else, it could consider about 6,400 claims a year.

The record indicates that there are at least 300,000 individual claims. That would take a judge about 47 years to work through the backlog.

This back-of-the-envelope calculation confirms that such a mass venture would be unduly burdensome and prejudicial to all, and certainly not a good use of judicial resources.

Accordingly, the Court severs each underlying insured's claims and stays all but the first-named Plaintiff and all but the first-named Plaintiff's first claim in the individual subrogation cases for the present.

---

[3] The normal jury day results in about 5 1/4 hours of evidence. That converts to about 32 ten-minute segments per day.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No.    8:22-ml-03052-JVS (KESx)                    Date    July 2, 2024

Title    In Re: Kia Hyundai Vehicle Theft Litigation

**IV. CONCLUSION**

For the foregoing reasons, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Sever.

**IT IS SO ORDERED.**