UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| Elsa Vargas | Not Present |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**    **[IN CHAMBERS] Order Regarding Motion to Dismiss [312]**

    Defendants Hyundai Motor Company ("HMC") and KIA Corporation ("KC") (collectively, "Defendants") move to dismiss the Subrogation Plaintiffs Amended Consolidated Complaint ("ACC")[1] for lack of personal jurisdiction. (Mot., Dkt. No. 312.) The Subrogation Plaintiffs opposed the Motion. (Opp'n, Dkt. No. 335.) Defendants replied. (Reply, Dkt. No. 441.)

    For the following reasons, the Court **GRANTS** Defendants' Motion without leave to amend.

## I. BACKGROUND

    The parties are familiar with the facts of this multidistrict litigation, so the Court recites them here only as necessary to resolve this Motion. (See Order Regarding Motion to Dismiss, Dkt. No. 269; Order Regarding Motion to Strike, Dkt. No. 390.) The following allegations are taken from the Subrogation Plaintiffs' ACC. (ACC, Dkt. No. 283.)

    The ACC alleges that HMC and KC are South Korean corporations with their headquarters located in Seoul, South Korea. (ACC ¶¶ 28, 37.) Hyundai Motor America ("HMA") is a subsidiary of HMC, and Kia America, Inc. ("KA") is a subsidiary of KC. (Id. ¶¶ 29, 37.) The ACC alleges that HMC "conducts substantial business in the State of

---

    [1] The ACC "consolidates statements and allegations previously contained within Complaints filed in this Court by two separate and distinct groups of subrogated insurance carriers." (ACC, Dkt. No. 283, ¶ 5.)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

California," "shipped over 7,500 shipments of vehicles and parts through California's port of delivery and sale to California facilities," and "maintains a research and design facility in California and employs thousands of people within the State." (Id. ¶¶ 32–33.) "Today, over half the cars HMC sells in the United States are designed and manufactured domestically at HMA's facilities, including at its 'design, research, and testing grounds in California' near its corporate headquarters." (Id. ¶ 264.) "In total, HMC and HMA employ approximately 5,000 people at these facilities, and an additional 20,000 employees at U.S. dealerships." (Id.) The ACC also alleges that KC "conducts substantial business in the State of California," "initiated over 5,000 shipments of vehicles and parts through California's ports for delivery and sale to California facilities," and "promotes Kia branded vehicles sold by KA in the United States" on its website. (Id. ¶¶ 38–39.)

According to the ACC, HMC and KC "are global automobile manufacturers who purposely availed themselves of the automobile and automobile-related products' markets in California by extensively promoting, warranting, selling, leasing and servicing, directly and indirectly, vehicles (including the Class Vehicles) and related automobile products in California." (Id. ¶ 250.) HMC and KC also "purposefully availed" themselves of the protections of California's various statutes by filing actions in this District and pleading that they manufacture, sell, and distribute KIA and Hyundai branded automobiles and parts throughout the United States. (Id. ¶¶ 251–252.) Moreover, the ACC alleges that HMC and KC "control details regarding their dealers' operations through various written agreements," and Hyundai-KA Technical Center, Inc. ("HATCI") "serves as an 'authorized representative' for HMC, HMA, KC, and KA when dealing with NHTSA in connection with various Safety Standards." (Id. ¶¶ 34, 41, 265.)

## II. LEGAL STANDARD

Personal jurisdiction refers to a court's power to render a valid and enforceable judgment against a particular defendant. See World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980); Pennoyer v. Neff, 95 U.S. 714, 720 (1877), overruled in part by Shaffer v. Heitner, 433 U.S. 186, 206 (1977). The contours of that power are shaped, in large part, by the Due Process Clause of the Fourteenth Amendment, which requires sufficient "contacts, ties, or relations" between the defendant and the forum state before "mak[ing] binding a judgment *in personam* against an individual or corporate defendant." Int'l Shoe Co. v. Washington, 326 U.S. 310, 319

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

(1945). Due Process requires that "there exist 'minimum contacts' between the defendant and the forum" in order to protect the defendant "against the burdens of litigating in a distant or inconvenient" court and lend "a degree of predictability to the legal system." World-Wide Volkswagen, 444 U.S. at 291, 292, 297.

Jurisdiction must also comport with the law of the forum state. See Fed. R. Civ. P. 4(k)(1)(A); Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme, 433 F.3d 1199, 1205 (9th Cir. 2006) (en banc). Because California's long-arm statute allows the exercise of jurisdiction on any basis consistent with the state and federal constitutions, the jurisdictional analyses of state law and federal due process are the same. Cal. Code. Civ. Proc. § 410.10; see also Yahoo!, 433 F.3d at 1205.

Federal Rule of Civil Procedure 12(b)(2) allows a defendant to move for dismissal based on a lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper." Ranza v. Nike, Inc., 793 F.3d 1059, 1068 (9th Cir. 2015). In the absence of an evidentiary hearing, "[h]owever, this demonstration requires that the plaintiff 'make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006) (quoting Doe v. Unocal Corp., 248 F.3d 915, 922 (9th Cir. 2001)).

A plaintiff may not simply rest on the "bare allegations of [the] complaint." Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 800 (9th Cir.2004) (quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977)). Courts "may not assume the truth of allegations in a pleading which are contradicted by affidavit." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1223 (9th Cir. 2011). "[D]isputed allegations in the complaint that are not supported with evidence or affidavits cannot establish jurisdiction." AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1207 (9th Cir. 2020). "But uncontroverted allegations must be taken as true, and '[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" Ranza, 793 F.3d at 1068 (quoting Schwarzenegger, 374 F.3d at 800).

Personal jurisdiction may be premised on general personal jurisdiction (based on a defendant's continuous presence in a state) or specific personal jurisdiction (based on

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

specific contacts with the state specifically related to the claims at issue).

### III. DISCUSSION

*A. Specific Personal Jurisdiction*

The ACC does not allege that the Court has general personal jurisdiction over Defendants. Rather, the ACC only alleges that the Court has specific personal jurisdiction over HMC and KC. (ACC ¶ 250; see also id. ¶ 253.)

Specific jurisdiction exists when the suit "aris[es] out of or relate[s] to the defendant's contacts with the forum." Daimler AG v. Bauman, 571 U.S. 117, 127 (2014) (citation omitted). The Ninth Circuit employs a three-part test to determine whether a court possesses specific jurisdiction over a particular defendant: (1) the defendant must have "performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum"; (2) the claim must "arise[] out of or result[] from the defendant's forum-related activities"; and (3) the exercise of jurisdiction must be reasonable. Pebble Beach, 453 F.3d at 1155.

The plaintiff bears the burden on the first two prongs. Schwarzenegger, 374 F.3d at 802. If the plaintiff fails to satisfy either prong, "jurisdiction in the forum would deprive the defendant of due process of law." See Omeluk v. Langsten Slip & Batbyggeri A/S, 52 F.3d 267, 270 (9th Cir. 1995). "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Schwarzenegger, 374 F.3d at 802 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476–78 (1985)).

        1.    Purposeful Direction or Availment

With respect to the first prong, courts apply the "purposeful direction analysis" in cases "sounding in tort" and the "purposeful availment analysis" in cases "sounding in contract." Schwarzenegger, 374 F.3d at 802. Because the Subrogation Plaintiffs assert both types of claims, the Court considers both analyses. Courts evaluate the purposeful direction analysis under the Calder v. Jones, 465 U.S. 783 (1984), effects test, which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

requires that "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." Mavrix Photo, Inc. v. Brand Techs., Inc., 647 F.3d 1218, 1228 (9th Cir. 2011) (quoting Brayton Purcell LLP v. Recordon & Recordon, 606 F.3d 1124, 1128 (9th Cir. 2010)). For the purposeful availment analysis, Plaintiffs must establish that Defendants "engaged in conduct purposefully directed at [California]." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 886 (2011).

Defendants argue that this Court lacks personal jurisdiction under either analysis because of HMC's and KC's lack of forum-related activities. (Mot. at 7.) To support their position, Defendants attached the declarations of Seung Hyun Baik ("Baik"), Counsel at HMC, and Seunghee Shin ("Shin"), Senior Counsel at KC. (Declaration of Seung Hyun Baik ("Baik Decl."), Dkt. No. 312-1; Declaration of Seunghee Shin ("Shin Decl."), Dkt. No. 312-2.) As set forth in the declarations, HMC and KC do not design, test, manufacture, or assemble vehicles in California. (Baik Decl. ¶ 21; Shin Decl. ¶ 20.) Nor do HMC and KC distribute or sell vehicles in California. (Baik Decl. ¶ 22; Shin Decl. ¶ 21.) Defendants do not maintain a sales force in California, are not registered to do business in California, do not have an agent for service of process in California, do not own or lease any real property in California, and do not pay taxes in California. (Baik Decl. ¶¶ 7–11; Shin Decl. ¶¶ 7–11.) Defendants also do not conduct any advertising or marketing activity in California or the United States generally. (Baik Decl. ¶ 27; Shin Decl. ¶ 25.) Nor do Defendants target specific marketing at California residents. (Baik Decl. ¶ 27; Shin Decl. ¶ 25.) Defendants do not have any relationship, contractual or otherwise, with independent Hyundai and Kia dealers in the United States or California. (Baik Decl. ¶ 26; Shin Decl. ¶ 24.) Defendants do not operate any sales or service network for any product in California, send technical service bulletins to dealers regarding work procedures for Hyundai- and Kia-branded products into California, or mail recall notices to consumers in California related to any alleged safety defects. (Baik Decl. ¶¶ 28, 31; Shin Decl. ¶¶ 26, 29.) Moreover, Defendants do not issue any warranties to consumers in California and are not responsible for implementing or carrying out the warranty process from California. (Baik Decl. ¶ 30; Shin Decl. ¶ 28.)

Defendants assert that the statements made in the declarations refute the Subrogation Plaintiffs' allegations. (Mot. at 9 (citing ACC ¶¶ 32–34, 38, 41, 264).) However, the Subrogation Plaintiffs argue that "although [the declarations] are carefully worded to give the appearance of evidentiary relevance, the declarations stop short of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

actually contradicting Plaintiffs' allegations." (Opp'n at 8.) Specifically, the Subrogation Plaintiffs claim that the Baik Declaration does not deny the allegation that HMC "maintains a research and design facility in California and employs thousands of people within the State." (Opp'n at 9 (quoting ACC ¶ 33).) In response, Defendants assert that the Baik Declaration makes clear that HMC does not maintain a place of business in California; does not own or lease any real property in California; does not maintain a sales force in California; is not registered to do business in California; does not pay taxes to California; and designs, tests, manufactures, and assembles Hyundai-branded vehicles in Korea. (Reply at 3 (citing Baik Decl. ¶¶ 6, 8–11, 21); see also Shin Decl. ¶¶ 6, 8–11, 20.) According to Defendants, "[t]hese facts refute the assertion that HMC 'maintains a research and design facility in California.'" (Reply at 3 (quoting ACC ¶ 33).) Defendants also contend that given the aforementioned statements made in the declarations, "the allegation that [Defendants] employ thousands of people in California is illogical." (Id.) The Court finds that the declarations do rebut the ACC's allegations. See Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1284 (9th Cir. 1977) ("[W]e may not assume the truth of allegations in a pleading which are contradicted by affidavit."). And to provide further confirmation, Defendants submitted supplemental declarations explicitly denying the allegations. (Supplemental Declaration of Seung Hyun Baik ("Baik Suppl. Decl."), Dkt. No. 441-1, ¶¶ 3–4 ("HMC does not maintain a research and design facility in California. HMC does not employ thousands of people within California."); Supplemental Declaration of Seunghee Shin ("Shin Suppl. Decl."), Dkt. No. 441-4, ¶¶ 3–4 ("KC does not maintain a research and design facility in California. KC does not employ thousands of people within California.").)

In the ACC, the Subrogation Plaintiffs allege that the Court has "specific personal jurisdiction over all Defendants as they purposely served the California market for automobiles, and in excess of 20,000 insurance claims have been made within California due to the failures of Defendants' Vehicles in the State." (ACC ¶ 253.) However, Defendants argue that the "fact that vehicles manufactured by a foreign defendant were sold in the forum state by a domestic subsidiary, and the fact that plaintiffs may have suffered injury related to those vehicles in the forum state, cannot establish [purposeful] direction or availment as to that state." (Mot. at 10.) For reasons explained below, the Court agrees with Defendants. See Walden v. Fiore, 571 U.S. 277, 284 (2014) (holding that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State" for specific jurisdiction) (citation omitted) (emphasis in original); see also Pebble Beach Co., 453 F.3d at 1158 ("[W]ithout 'something more' than possible

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

effect, there was simply no individualized targeting of California, or the type of wrongful conduct, that could be construed as being directed at the forum state." (citation omitted)).

The ACC cites Ford Motor Co. v. Montana Eighth Judicial District Court, 592 U.S. 351 (2021), to support its allegation. (ACC ¶ 253; see also Opp'n at 14–15.) But the Subrogation Plaintiffs' reliance on Ford Motor Co. is misplaced because in that case, Ford, an American company, "d[id] not contest that it does substantial business in Montana and Minnesota—that it actively seeks to serve the market for automobiles and related products in those States." 592 U.S. at 361; see also id. ("Or to put that concession in more doctrinal terms, Ford agrees that it has 'purposefully avail[ed] itself of the privilege of conducting activities' in both places. Ford's claim is instead that those activities do not sufficiently connect to the suits, even though the resident-plaintiffs allege that Ford cars malfunctioned in the forum States." (citation omitted)). Moreover, in Ford Motor Co., Ford admitted to "distribut[ing] replacement parts both to its own dealers and to independent auto shops in the two States." Id. at 365; see also id. at 355 ("[Ford] is incorporated in Delaware and headquartered in Michigan. But its business is everywhere. Ford markets, sells, and services its products across the United States and overseas."). The Supreme Court also found that "[s]mall wonder that Ford has here conceded 'purposeful availment' of the two States' markets. By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles, including (at all relevant times) Explorers and Crown Victorias." Id. at 365.

Here, HMC and KC heavily contest that they have purposefully availed themselves of the privilege of conducting activities in California. And as the declarations quoted above demonstrate, the facts in this case are easily distinguishable from the facts in Ford Motor Co.[2] Unlike Ford, HMC and KC have provided declarations contradicting the ACC's bare allegations. Moreover, in Ford Motor Co., the plaintiffs sued only one company, Ford, a "global auto company" that is "incorporated in Delaware and

---

[2] The Subrogation Plaintiffs also cite World-Wide Volkswagen, 444 U.S. 286, for support. (Opp'n at 14–15.) However, World-Wide Volkswagen concerned a regional distributor and a retail dealer of automobiles, both of which were headquartered and incorporated in New York. 444 U.S. at 288–89. The case involved a vehicle "sold in New York to New York residents," who "happened to suffer an accident while passing through Oklahoma." Id. at 295. And in World-Wide Volkswagen, the Court actually held that the exercise of jurisdiction was improper, rejecting the argument that "foreseeability" that a vehicle would cause injury in another state is sufficient to establish personal jurisdiction. Id. at 295–96.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

headquartered in Michigan," but its "business is everywhere." 592 U.S. at 355. According to the Court, Ford was responsible for all aspects of the distribution of its automobiles. Id. at 355–56 ("Ford markets, sells, and services its products across the United States and overseas. . . . And Ford's own network of dealers offers an . . . ongoing relationship between Ford and its customers."). Here, however, the Subrogation Plaintiffs have sued both the Korean entities, HMC and KC, and the American subsidiaries, HMA and KA. Thus, the Subrogation Plaintiffs in this case must provide plausible allegations establishing personal jurisdiction over the Korean entities, HMC and KC. For the reasons discussed below, the Court finds that the Subrogation Plaintiffs have failed to do so.

In this case, all Hyundai- and Kia-branded advertising is done by the American subsidiaries, HMA and KA, not HMC or KC. (See Baik Decl. ¶¶ 26–27 ("HMC also does not share in the cost of any advertisements made by independent Hyundai dealers. . . . HMC does not conduct any advertising or marketing activity in California (or the United States generally). HMC also does not target specific marketing at California residents."); Shin Decl. ¶¶ 24–25 ("KC also does not share in the cost of any advertisements made by independent Kia dealers. . . . KC does not conduct any advertising or marketing activity in California (or the United States generally). KC also does not target specific marketing at California residents.").) Thus, while the "purposeful availment" prong was not at issue in Ford Motor Co. because Ford conceded the issue, purposeful availment is the main issue in this case.

Moreover, Ford Motor Co. found that Ford conducted substantial business operations in the forum states, including advertising, selling, and servicing Ford vehicles there. 592 U.S. at 365 (stating that Ford marketed and sold its products in the forum states, engaged in advertising campaigns in the forum states and the United States generally, and had a network of dealerships and repair operations in the forum states). However, the jurisdictional facts here do not show that HMC and KC marketed, sold, or distributed vehicles in California or the United States. The declarations submitted by Defendants explicitly deny such allegations. (Baik Decl. ¶ 22 ("HMA distributes (sells) Hyundai-branded vehicles to independent dealers throughout the United States, including California. HMC does not distribute or sell vehicles in California (or anywhere else in the United States)."); Shin Decl. ¶ 21 ("KA distributes (sells) Kia-branded vehicles to independent dealers throughout the United States, including California. KC does not distribute or sell vehicles in California (or anywhere else in the United States).").)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

Additionally, the Subrogation Plaintiffs generally allege that

> [t]he very same Vehicles that Defendants sold without the legally required anti-theft equipment in the United States were sold with engine immobilizers in Canada and various other countries in Europe and elsewhere. Defendants made immobilizers available to some purchasers of the defective Vehicles in the United States, but only on the condition that those purchasers were willing to pay for expensive upgrades and luxury trim packages.

(ACC ¶¶ 3, 293; see also id. ¶ 292 ("Engine immobilizers have become an industry standard component in consumer vehicles across the globe: including in vehicles produced by Defendants.").) But the Subrogation Plaintiffs fail to differentiate between HMC, KC, HMA, and KA. And the uncontested facts establish that HMC and KC do not distribute or sell vehicles in California or the United States, maintain a sales force in California, or direct marketing campaigns in California. (Baik Decl. ¶¶ 8, 22, 27; Shin Decl. ¶¶ 8, 21, 25.) Instead, HMA and KA control the distribution of vehicles throughout the United States. (Baik Decl. ¶ 22; Shin Decl. ¶ 21.) Thus, the jurisdictional facts fail to establish that HMC and KC "systematically served a market in [California] for the very vehicles that the plaintiffs allege" have a Thief Friendly Design. Ford Motor Co., 592 U.S. at 365.

While the sale of Hyundai- and Kia-branded vehicles in California "is not simply an isolated occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product[s]," World-Wide Volkswagen, 444 U.S. at 297, and although "a corporation can purposefully avail itself of a forum by directing its agents or distributors to take action there," Daimler, 571 U.S. at 135 n.13, the ACC's bare allegations are insufficient to plausibly establish that HMC and KC took efforts to serve California's market or directed HMA and KA to "take action" in California. Nor do the Subrogation Plaintiffs contradict the numerous affidavits regarding HMC's and KC's lack of contacts with California. At oral argument, the Subrogation Plaintiffs failed to present any additional evidence to support their position.

Defendants also assert that the Subrogation Plaintiffs cannot rely on a stream of commerce theory to establish purposeful direction or availment. (Mot. at 13.) Specifically, Defendants claim that while "HMC and KC sell vehicles to HMA and KA in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

the Republic of Korea with the understanding that some of those vehicles will be sold to independent dealers in the United States, that is not enough to find purposeful direction or availment as to California." (Id. (citing Baik Decl. ¶¶ 21–22; Shin Decl. ¶¶ 20–21).) The Subrogation Plaintiffs do not respond to this argument. (See generally Opp'n.) Rather, the Subrogation Plaintiffs claim that they allege more than a stream of commerce theory. (Id. at 5, 18.) The Court finds that the case law supports Defendants' position. See LNS Enters. LLC v. Cont'l Motors, Inc., 22 F.4th 852, 860 (9th Cir. 2022) ("Placing 'a product into the stream of commerce'—even if the defendant is aware 'that the stream of commerce may or will sweep the product into the forum state'—'does not convert the mere act of placing the product into the stream of commerce into an act' of purposeful availment." (citation omitted)); Nicastro, 564 U.S. at 886 (holding that the state could not exercise specific jurisdiction over a foreign defendant merely because its product was distributed through an American company responsible for selling the product nationwide).

Furthermore, the ACC alleges that "HMC promotes on its own website all Hyundai models sold by HMA in the United States and directs U.S. consumers to HMA's website," and "KC's website promotes Kia branded vehicles sold by KA in the United States." (ACC ¶¶ 30, 39.) As a preliminary matter, Defendants argue that these allegations cannot establish personal jurisdiction because they do not relate to California. (Mot. at 13–14.) But even if the ACC alleged that consumers in California could view the Hyundai and Kia global corporate websites, that would still not be enough to establish personal jurisdiction. (Id.) The case law is clear that "[m]ere passive operation of a website is insufficient to demonstrate express aiming." Will Co. v. Ka Yeung Lee, 47 F.4th 917, 922 (9th Cir. 2022); see also Mavrix, 647 F.3d at 1231 ("Not all material placed on the Internet is, solely by virtue of its universal accessibility, expressly aimed at every state in which it is accessed."); LNS Enters., 22 F.4th at 863 ("[T]he mere existence of a 'passive website'"—"universally accessible website where anyone can access information"—"maintained by [defendant] is insufficient to render the company subject to personal jurisdiction in the absence of other contacts.").

In response, the Subrogation Plaintiffs argue that HMC and KC "actively operate and maintain interactive websites which invite users to enter their specific geographical location in order to purchase specific Hyundai- or Kia-branded vehicle anywhere in the United States." (Opp'n at 18 & n.2.) But Defendants contend that neither website actually permits users to purchase vehicles. (Reply at 4–5.) This is consistent with the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

declarations that Defendants submitted in support of their Motion. (See Baik Decl. ¶ 22 ("HMA distributes (sells) Hyundai-branded vehicles to independent dealers throughout the United States, including California. HMC does not distribute or sell vehicles in California (or anywhere else in the United States)."); Shin Decl. ¶ 21 ("KA distributes (sells) Kia-branded vehicles to independent dealers throughout the United States, including California. KC does not distribute or sell vehicles in California (or anywhere else in the United States).").) Besides the bare allegation and citation to Defendants' websites, the Subrogation Plaintiffs fail to explain how the websites are anything more than "passive websites." (See generally Opp'n.)

Moreover, as the Ninth Circuit recently held,

> operation of an interactive website does not, by itself, establish express aiming. Otherwise, every time a seller offered a product for sale through an interactive website, the seller would be subjecting itself to specific jurisdiction in every forum in which the website was visible, whether or not the seller actually consummated a sale. That result would be too broad to comport with due process.

Herbal Brands, Inc. v. Photoplaza, Inc., 72 F.4th 1085, 1091 (9th Cir. 2023). Defendants thus argue that they "are not expressly aiming any conduct at California by operating websites that may be accessible in California (and anywhere in the world)." (Mot. at 15.) The Court agrees with Defendants. The ACC does not allege that HMC or KC operate any platform at all. (See generally ACC.) Nor does the ACC allege that Defendants' websites specifically target California. (Id.) And as made clear in the declarations, any purchase of Hyundai- and Kia-branded vehicles in California is not through HMC or KC—such purchases are through independent dealers that Defendants do not control. (See generally Baik Decl.; Baik Suppl. Decl.; Shin Decl.; Shin Suppl. Decl.) Therefore, the fact that consumers in California may access Hyundai and Kia global corporate websites does not demonstrate Defendants' purposeful direction or availment as to California. See, e.g., Herbal Brands, 72 F.4th at 1092 (holding that defendants' "interactive websites"—where "visitors can exchange information with the host computer by inputting data directly"—"alone does not establish 'express aiming,'" but "jurisdiction exists because Defendants actually sold infringing products via an interactive website and caused them to be delivered to forum residents"); AMA Multimedia, LLC v. Wanat, 970 F.3d 1201, 1210 (9th Cir. 2020) ("Although [defendant] may have foreseen that [the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
|---|---|---|---|
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

website] would attract a substantial number of viewers in the United States, this alone does not support a finding of express aiming.").

In their Opposition, the Subrogation Plaintiffs claim that the ACC alleges how Defendants "control details regarding their dealers' operations though various written agreements," including

> (i) granting each dealer a license to use their respective trademarks and intellectual property; (ii) furnishing each dealer with marketing materials to assist in the sale of their vehicles; (iii) providing training to dealership personnel to assist in their sales activities; (iv) providing guidance to dealerships, and dealership personnel as to how to handle customers, including, but not limited to, handling complaints regarding the Thief Friendly Design; and (v) prohibiting their dealers from engaging in certain practices that otherwise detract from their respective brands or undermine the sale of their respective vehicles, including the Vehicles.

(Opp'n at 10 (quoting ACC ¶¶ 34, 41).) In response, Defendants argue that the Subrogation Plaintiffs do not explain the relevance of their allegations as they do not assert an agency or alter ego theory on which to base specific personal jurisdiction. (Reply at 4.) See Ranza v. Nike, Inc., 793 F.3d 1059, 1070 (9th Cir. 2015) ("The existence of a parent-subsidiary relationship is insufficient, on its own, to justify imputing one entity's contacts with a forum state to another for the purpose of establishing personal jurisdiction."). Defendants further assert that the declarations submitted in support of their Motion make clear that "HMC and KC do not have any relationship, contractual or otherwise, with Hyundai and Kia dealers in the United States." (Reply at 4 (citing Baik Decl. ¶ 26; Shin Decl. ¶ 24).) And Defendants submitted supplemental declarations expressly contradicting the Subrogation Plaintiffs' allegations. (Baik Suppl. Decl. ¶¶ 5–9 ("HMC does not grant California-based Hyundai dealers a license to use the Hyundai trademarks and intellectual property. . . . HMC does not control the conduct of California-based Hyundai dealers."); Shin Suppl. Decl. ¶¶ 5–9 ("KC does not grant California-based Kia dealers a license to use the Kia trademarks and intellectual property. KC does not furnish California-based Kia dealers with marketing materials to assist in the sale of Kia vehicles. KC does not provide training to personnel at California-based Kia dealers to assist in their sales activities. KC does not provide

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

guidance for handling customer complaints to California-based Kia dealerships and their personnel.  KC does not control the conduct of California-based Kia dealers.").)  Given the contradictions made in the declarations, the Court finds that the ACC's bare allegations regarding Defendants' control of independent Hyundai and Kia dealerships is insufficient to establish specific personal jurisdiction.  Schwarzenegger, 374 F.3d at 800 ("The plaintiff cannot 'simply rest on the bare allegations of its complaint,' [but] uncontroverted allegations in the complaint must be taken as true." (quoting Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc., 551 F.2d 784, 787 (9th Cir. 1977))).

      In their Opposition and at oral argument, the Subrogation Plaintiffs argued that Nickie Bonenfant's ("Bonenfant") Declaration and appendices demonstrated that "the Korean entities have intentionally directed their activities towards the California market by exporting their vehicles, parts, and designs into the State."  (Opp'n at 11; Declaration of Nickie Bonenfant ("Bonenfant Decl."), Dkt. No. 335-13.)  As stated in the declaration, Bonenfant is the Chief Operating Officer at ImportGenius, "which provides access to shipping databases from Customs agencies in the United States via www.importgenius.com, which is a subscription based, paid service."  (Bonenfant Decl. ¶¶ 2–3.)  According to Bonenfant, "[t]he United States import data accessible via www.importgenius.com service is a compilation of data [his] company has obtained directly from US Customs Bills of Lading," and "the database information is exactly how the data was provided to [them] by the US Customs office."  (Id. ¶¶ 4, 6.)  The Subrogation Plaintiffs claim that the appendices "prove that the Korean Entities, rather than their US-based subsidiaries, were the shipper of record for thousands of the shipments from the Republic of Korea to the State California."  (Opp'n at 12; Apps. A–D, Dkt. Nos. 335-1–4; ACC ¶¶ 32, 38.)  According to the Subrogation Plaintiffs, the submitted data shows that HMC and KC use California ports and send testing vehicles to California.  (Opp'n at 12–13; Apps., A–D.)  Specifically, the Subrogation Plaintiffs contend that the appendices show that "[m]ore than 70% of HMC's shipments (7,503) were delivered directly to the State of California," and "[s]hipments to California constituted approximately 77% of all of KC's to the United States."  (Opp'n at 13; Apps. A–D; Bonenfant Decl. ¶¶ 20–23 ("The 7,696 import records identified in Appendix A show the search results from the ImportGenius database identifying shipments from 'Hyundai AND motor*' and arriving in any California port from November 1, 2006 to March 1, 2024.  The 10,510 import records identified in Appendix B show the search results from the ImportGenius database identifying shipments from 'Hyundai AND motor*' and Consignees, using the search terms 'California' or 'CA' arriving in any U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

port from November 1, 2006 to March 1, 2024. The 5,289 import records identified in Appendix C show the search results from the ImportGenius database identifying shipments from 'Kia' and arriving in any California port from November 1, 2006 to March 1, 2024. The 9,344 import records identified in Appendix D show the search results from the ImportGenius database identifying shipments from 'Kia' and Consignees, using the search terms 'California' or 'CA' arriving in any U.S. port from November 1, 2006 to March 1, 2024.").) As a result, the Subrogation Plaintiffs argue that "the ImportGenius shipping records establish facts which contradict the representations contained within the Defendants' declarations." (Opp'n at 13.)

However, Defendants contend that the shipping records do no contradict their declarations or establish purposeful direction. First, Defendants assert that the Subrogation Plaintiffs do not explain how the shipping records support specific personal jurisdiction over Defendants, which requires "a connection between the forum and the specific claims at issue." (Reply at 6 (quoting Bristol-Myers Squibb Co. v. Superior Ct., 582 U.S. 255, 265 (2017)).) That connection is not made here. As Defendants point out, the shipping records include shipments from Hyundai Motor Brasil, Hyundai Motor Shanghai, Hyundai Motor Europe, Kia India, Kia Mexico, and others (see App. A at 5, 23, 104; App. C at 3, 32); shipments before 2011 (see App. A at 248–77; App. C at 326–74); shipments containing vehicles with VIN country codes that are intended for non-U.S. markets (see App. A at 3; App. C at 3); and shipments containing Jeep Wranglers and other non-Hyundai or non-Kia vehicles (see App. A at 3, 12). (Opp'n at 7.)

Additionally, Defendants contend that the shipping records actually align with their declarations. (Reply at 6.) Specifically, Defendants claim that "HMC and KC never disputed that they manufacture vehicles in South Korea and sell those vehicles to their subsidiaries, who then import the vehicles in the United States." (Opp'n at 7 (citing Baik Decl. ¶¶ 21–22; Shin Decl. ¶¶ 20–21).) HMC and KC thus assert that the "shipping records show nothing more than that HMC and KC placed vehicles into the stream of commerce in South Korea that were then imported into California by U.S. entities, whether for wholesale distribution by HMA and KA, for testing by separate U.S. affiliates, or for some other purpose." (Id. at 7–8.) To support their argument, HMC and KC rely on the declarations of employees at HMA and KA, who state that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

> [f]or all [Hyundai- or] Kia-branded vehicles that are manufactured by [HMC or] KC in South Korea and imported into the United States to be sold to consumers in the United States, the vehicles become the inventory of [HMA or] KA at the time the ship containing the vehicles leaves the port in South Korea.

(Id. at 8 (quoting Declaration of Michael Orange ("Orange Decl."), Dkt. No. 346-4, ¶ 3; Declaration of Robert Kuntze ("Kuntze Decl."), Dkt. No. 346-5, ¶ 3).) According to those two employees, HMA and KA import vehicles from HMC and KC FOB Origin from South Korea, meaning that "the buyer accepts the title of the goods at the shipment point and assumes all risk once the seller ships the product." (Orange Decl. ¶¶ 6–7; Kuntze Decl. ¶¶ 6–7.) Thus, HMA and KA take liability of the vehicles once the vehicles are loaded onto the ship, and HMA and KA are responsible for submitting insurance claims for any vehicles damaged while in transit. (Orange Decl. ¶¶ 4–5; Kuntze Decl. ¶¶ 4–5.) HMA and KA also arrange "port vehicle inspections, processing, unloading, and transportation logistics through [their] partner, Glovis America." (Orange Decl. ¶ 9; Kuntze Decl. ¶ 8.) Thus, according to the employees, HMC and KC "do[] not have control over HMA's [or] KA's distribution of the vehicles in the United States." (Orange Decl. ¶ 10; Kuntze Decl. ¶ 9.) HMC and KC further assert that "[t]he same is true with respect to Hyundai and Kia vehicles that HMC's subsidiary, Hyundai America Technical Center, Inc. ('HATCI'), imports for test purposes." (Opp'n at 9.) According to a paralegal at HATCI, "HATCI imports all vehicles from HMC and KC FOB Origin from South Korea." (Declaration of Joselyn Smith ("Smith Decl."), Dkt. No. 346-7, ¶¶ 4–5; see also id. ¶¶ 6–7 (stating that HACTI takes inventory and liability of the vehicles at the time they are loaded onto the ship in South Korea).) And the two entries that the Subrogation Plaintiffs cite in their Opposition list HATCI as the consignee, which "align[s] with the vehicles being imported by HATCI FOB Origin from South Korea." (Reply at 9 (citing Opp'n at 12).) Thus, the Court finds that the shipping records do not establish a basis for specific personal jurisdiction as to HMC and KC. See Glob. Master Int'l Grp., Inc. v. Esmond Nat., Inc., 76 F.4th 1266, 1276 (9th Cir. 2023) ("When a delivery term is F.O.B., the goods are delivered at a designated location, usually a transportation depot, at which legal title and thus the risk of loss passes from seller to buyer." (internal quotation marks and citation omitted)).

In their Reply in support of their motion for jurisdictional discovery, the Subrogation Plaintiffs argued that the shipping reports indicated that HMC and KC "were

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

the consignees for shipments of vehicles and vehicle parts passing through the California's ports." (Dkt. No. 367 at 10; see also Apps. A, C.) But as HMC and KC stated at oral argument for that motion and again in their Reply, the Subrogation Plaintiffs only point to five HMC shipments and three KC shipments out of the 7,700 shipments contained in the appendices. (Reply at 9; see also Apps. A, C.) Moreover, Defendants provided additional declarations to support their assertion. (See Baik Suppl. Decl. ¶ 11 ("HMC's internal records confirm that Hyundai Auto Canada Corp. is the consignee of record on this shipment, and the final destination of this shipment was Canada."); Declaration of Jason Kwon ("Kwon Decl"), Dkt. No. 441-9, ¶¶ 3–5 ("Both the Sea Waybill and the Commercial Invoice confirm that the shipper of record on Bill of Lading No. EUKOKRSA551506W1 was Kia Motors Corporation, and the consignee of record was Kia Motors America, Inc. The final destination of this shipment was Midlothian, Texas."); Declaration of Andrea Stacey ("Stacey Decl"), Dkt. No. 441-6, ¶¶ 3–5 ("The Customs Invoice Summary for the December 2013 shipment confirms that HMC was the shipper of record on Bill of Lading Nos. EUKOHUSD51527 l W and EUKOHUSD515272W, and HMA was the consignee of record."); Shin Suppl. Decl. ¶ 10 ("After conferring with individuals in the relevant departments at KC, I understand Bill of Lading Nos. EUKOKRSA551878W1 and EUKOKRUS551863W1 were likely used as display vehicles in the United States and then returned to the Republic of Korea.").) The Subrogation Plaintiffs have not presented any evidence to the contrary. Nor did the Subrogation Plaintiffs address these eight entries in their Opposition. (See generally Opp'n.) And at oral argument, the Subrogation Plaintiffs failed to discuss how any of these eight entries spanning several years are related to the conduct at issue in this case. Thus, even if the eight entries in the four appendices do state that HMC and KC were the consignees for said shipments, those few scattered entries are not enough to satisfy the expressly aiming requirement. "'[R]andom, fortuitous, or attenuated contacts[]' are insufficient to create the requisite connection to the forum." Kellytoy Worldwide, Inc. v. Jay at Play Int'l H.K. Ltd., No. 19-cv-07831, 2019 U.S. Dist. LEXIS 228117, at *11–12 (C.D. Cal. Dec. 5, 2019) (citations omitted); Tiw Holdings LLC v. Hotbox Farms LLC, No. 23-cv-01957, 2024 U.S. Dist. LEXIS 79770, at *12 (C.D. Cal. Jan. 18, 2024). The Court cannot find express aiming here.[3]

---

[3] The Subrogation Plaintiffs also cite Zakikhan v. Hyundai Motor Co., No. 20-cv-01584, 2021 WL 4805454 (C.D. Cal. June 28, 2021), for support. (Opp'n at 13.) In Zakikhan, the plaintiffs brought claims against HMC, HMA, KC, and KA for alleged defects in the anti-lock brake systems and hydraulic electronic control units in certain Hyundai and Kia vehicles. 2021 WL 4805454, at *1.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
|---|---|---|---|

| Title | In Re: Kia Hyundai Vehicle Theft Litigation |
|---|---|

Accordingly, none of the allegations in the ACC satisfy the first prong of the specific personal jurisdiction test.

### 2. Arising Out of Forum-Related Activities

Even if the Subrogation Plaintiffs could satisfy the first prong, they would need to show that their claims arise from or are related to Defendants' conduct in California. See Bristol-Myers Squibb Co., 582 U.S. at 265. Defendants argue that the Subrogation Plaintiffs "offer no facts showing HMC and KC engaged in any conduct in California other than the fact HMC and KC have each filed lawsuits in this District." (Mot. at 16 (citing ACC ¶¶ 251–252).) In the ACC, the Subrogation Plaintiffs do not even allege that Defendants' prior lawsuits in this District are related to the claims in this case. (See ACC ¶¶ 251–252.) Additionally, courts have consistently held that a defendant's filing of unrelated lawsuits in the forum state is insufficient to establish specific personal jurisdiction over that defendant. See, e.g., Worldwide Subsidy Grp., LLC v. Fed'n Int'l de Football Ass'n, No. 14-00013, 2014 WL 12631652, at *11 (C.D. Cal. June 9, 2014) ("The lawsuit FIFA earlier filed in this district—which alleged the manufacture and sale of goods and merchandise infringing its copyrights and trademarks—is not related in any way to WSG's claims. Consequently, it will not support the exercise of specific jurisdiction over FIFA in this action."); Brooks v. Y.Y.G.M. SA, No. 21-cv-00078, 2021 WL 5450232, at *4 (E.D. Cal. Nov. 22, 2021) ("Defendant's prior complaint does not support a finding that Defendant purposefully directed its actions towards California such

---

However, unlike in this case, the plaintiffs in Zakikhan alleged that HMC and KC "were intimately involved with the decisions to track vehicle malfunctions, determine the cause of the problem, and ultimately to disclose that information to NHTSA and initiate recall efforts." Id. at *4. And HMC and KC did not dispute those allegations, as both HMC and KC "continuous[ly] monitor[ed] and test[ed]" the alleged defect for two years before initiating recall proceedings. Id. As a result, the court in Zakikhan held that it could "be reasonably inferred that HMC and KMC were involved in the relevant decision-making process from the outset" and their delay "negatively impacted the putative class members who purchased Class Vehicles during this delay." Id. That is not the case here, as the Subrogation Plaintiffs have not made similar allegations. And as previously stated, the shipping records do not support the assertion that Defendants made "forum-specific design decisions and interact[ed] with US based regulators." (Opp'n at 12.) Nor have the Subrogation Plaintiffs presented any evidence to contradict the declarations submitted by Defendants.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

that specific jurisdiction is appropriate."). The Subrogation Plaintiffs fail to respond to this argument in their Opposition. (See generally Opp'n.)

Thus, the Court finds that none of the ACC's allegations satisfy the second prong of the specific personal jurisdiction test.

Accordingly, the Court **GRANTS** Defendants' Motion to dismiss HMC and KC for lack of personal jurisdiction.

    B.    *Leave to Amend*

The Subrogation Plaintiffs request that the Court grant them leave to amend. (Opp'n at 20.) In their Opposition, the Subrogation Plaintiffs rely on the same shipping records they included in their motion to conduct jurisdictional discovery. As stated above and explained in this Court's prior order regarding jurisdictional discovery, the shipping records are insufficient to exercise specific personal jurisdiction over Defendants. Nor have the Subrogation Plaintiffs presented any other evidence to support their bare allegations and contradict the declarations submitted by HMC and KC. And as indicated in its prior order, the Court finds that an agency or alter ego theory is not the appropriate basis for establishing personal jurisdiction in this case. (See Order Regarding Motion to Strike at 19–24.) Given the multiple rounds of briefing and repetitive bare allegations, the Court finds that the Subrogation Plaintiffs would be unable to advance any new arguments or theories to establish specific personal jurisdiction over HMC and KC. Accordingly, granting leave to amend would be futile. See Cervantes v. Countrywide Home Loans, Inc., 656 F.3d 1034, 1041 (9th Cir. 2011) (setting forth the standard of review and stating that leave to amend may be denied where amendment would be futile); Armstrong v. Reynolds, 22 F.4th 1058, 1071 (9th Cir. 2022) ("[P]laintiffs should be granted leave to amend their complaints unless it is clear, upon de novo review, that the complaint could not be saved by any amendment." (internal citations omitted)); Air Aromatics, LLC v. Victoria's Secret Stores Brand Mgmt., 744 F.3d 595, 600 (9th Cir. 2014) ("A party cannot amend pleadings to 'directly contradic[t] an earlier assertion made in the same proceeding.'" (quoting Russell v. Rolfs, 893 F.3d 1033, 1037 (9th Cir. 1990))).

**IV. CONCLUSION**

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS (KESx) | Date | July 5, 2024 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

For the foregoing reasons, the Court **GRANTS** Defendants' Motion without leave to amend.

The Court orders Defendants to submit a Rule 54(b) Judgment.

**IT IS SO ORDERED.**