Gretchen Freeman Cappio (*pro hac vice*)
gcappio@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3200
Seattle, WA 98101
Telephone: (206) 623-1900
Fax: (206) 623-3384

*Counsel for City of Lorain, Ohio*

(additional counsel listed below)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*City of Lorain, Ohio v. Hyundai Motor Company, Hyundai Motor America, Kia Corporation, and Kia America, Inc.,*<br><br>Case No. 8:23-cv-02083 | No. 8:22-ML-03052-JVS-KES<br><br>The Honorable James V. Selna<br><br>PLAINTIFF CITY OF LORAIN, OHIO'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>Hearing Date: August 12, 2024<br>Hearing Time: 1:30 PM |

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................1

II.  BACKGROUND ..................................................................................4

     A.   Defendants Knew Their Cost Cutting Would Harm GEs
          like Lorain. ..............................................................................4

     B.   Defendants' Motion to Dismiss Lorain's FAC Needlessly
          Consumes the Court's and the Parties' Resources. ..........................5

III. LEGAL STANDARD ..........................................................................6

IV.  ARGUMENT........................................................................................7

     A.   Lorain's Claims Do Not Raise a Question of Preemption. ...............7

     B.   Lorain's Claims Do Not Conflict with Federal Law. .......................7

     C.   Lorain's Claims Satisfy Federal Pleading Standards. ......................9

     D.   Foreseeable Downstream Acts of Third Parties Do Not
          Sever Causation. ......................................................................11

          1.   Foreseeability is a question for the trier of fact. ...................11

          2.   This Court, other courts, and Defendants have
               already distinguished the cases Defendants
               contend sever causation as a matter of law. ...........................12

     E.   Lorain Sufficiently Pleads Two Separate Duties Under
          Ohio Negligence Law Based on Foreseeability and
          Public Policy. ..........................................................................15

          1.   Defendants have a general duty to exercise
               reasonable care in the design and distribution of
               their vehicles. ........................................................................16

          2.   Defendants' duty to prevent the distribution of
               vehicles that are so easy to steal, and the

subsequent secondary market for stolen vehicles, is
supported by foreseeability and public policy
considerations. ....................................................................17

F.   The Ohio Products Liability Act Does Not Abrogate
Lorain's Claims. ..................................................................19

G.   Lorain's Absolute Public Nuisance Claim Adequately
Pleads Intentionality. ..........................................................21

V.   CONCLUSION .................................................................22

No. 8:22-ML-03052-JVS-KES          OPP. TO DEFS.' MOT. TO DISMISS
LORAIN'S FAC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen Freight Lines, Inc. v. Consol. Rail Corp.*,
  595 N.E.2d 855 (Ohio 1992) ........................................................................ 19

*Am. Winds Flight Acad. v. Garmin Int'l*,
  No. 5:07-cv-3401, 2010 WL 3783136 (N.D. Ohio Sept. 17, 2010) ................ 12

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................... 6

*Austin v. Univ. of Or.*,
  925 F.3d 1133 (9th Cir. 2019) ........................................................................ 6

*Carrel v. Allied Products Corp.*,
  677 N.E.2d 795 (1997) .................................................................................. 20

*Cascone v. Herb Kay Co.*,
  451 N.E.2d 815 (Ohio 1983) ........................................................................ 12

*Cincinnati v. Beretta U.S.A. Corp.*,
  768 N.E.2d 1136 (Ohio 2002) ............................................................... *passim*

*Crosby v. Nat'l Foreign Trade Council*,
  530 U.S. 363 (2000) ....................................................................................... 8

*Czarney v. Porter*,
  853 N.E.2d 692 (Ohio Ct. App. 2006) .................................................... 11, 12

*Davis v. Widman*,
  922 N.E.2d 272 (Ohio Ct. App. 2009) ......................................................... 19

*Est. of Ciotto v. Hinkle*,
  145 N.E.3d 1013 (Ohio Ct. App. 2019) ................................................... 18, 19

*Farrales v. Ford Motor Co.*,
   No. 21-cv-07624-HSG, 2022 WL 1239347 (N.D. Cal. Apr. 27, 2022) ................................................................................10

*Fox v. Kia Am., Inc.*,
   No. 1:23-cv-1881, 2024 WL 1328730 (N.D. Ohio Mar. 28, 2024)... 3, 13, 14, 22

*Geier v. Am. Honda Motor Co.*,
   529 U.S. 861 (2000).................................................................7, 8

*Gelbman v. Second Nat'l Bank of Warren*,
   458 N.E.2d 1262 (Ohio 1984).......................................................16

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
   63 F.4th 747 (9th Cir. 2023)..........................................................6

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)........................................................6

*LaPuma v. Collinwood Concrete*,
   661 N.E.2d 714 (Ohio 1996).........................................................20

*Lawton v. Hyundai Motor Am., Inc.*,
   No. 24-00097-cv-W-BP, 2024 WL 2318623 (W.D. Mo. May 20, 2024) ..............................................................................3, 14

*Lawton* v. *Hyundai Motor Am., Inc.*,
   No. 8:23-cv-01797-JVS (KES), 2024 WL 1135734 (C.D. Cal. Feb. 8, 2024)...........................................................................3, 14

*Leibreich v. A.J. Refrigeration, Inc.*,
   617 N.E.2d 1068 (Ohio 1993).......................................................11

*Miles v. Cedar-Lee Chrysler-Plymouth, Inc.*,
   No. 38574, 1978 WL 218347 (Ohio Ct. App. Apr. 27, 1978) ........................13

*In re Nat'l Prescription Opiate Litig.*,
   406 F.Supp.3d 672 (N.D. Ohio 2019) ..............................................21

*In re Nat'l Prescription Opiate Litig.*,
   589 F.Supp.3d 739 (N.D. Ohio 2022) ..............................................14

iv

*In re Nat'l Prescription Opiate Litig.*,
    589 F.Supp.3d 790 (N.D. Ohio 2022) ....................................... 10, 19

*In re Nat'l Prescription Opiate Litig.*,
    82 F.4th 455 (6th Cir. 2023)....................................................19

*Pelayo v. Hyundai Motor Am., Inc.*,
    No. 8:20-cv-01503-JLS-ADS, 2021 WL 1808628 (C.D. Cal. May
    5, 2021).............................................................................10

*Pendrey v. Barnes*, 479 N.E.2d 283 (Ohio 1985) .................................13

*Raynaldo v. Am. Honda Motor Co., Inc.*,
    No. 21-cv-05808-HSG, 2022 WL 4358096 (N.D. Cal. Sept. 20,
    2022) ................................................................................9

*Ross v. Nutt*,
    203 N.E.2d 118 (Ohio 1964)...................................................13

*Simpson v. Big Bear Stores Co.*,
    652 N.E.2d 702 (1995)......................................................16, 17

*Starr v. Baca*,
    652 F.3d 1202 (9th Cir. 2011).................................................6

*Tilton v. Austintown Motors, Inc.*,
    No. 96-CO-71, 1997 WL 816526 (Ohio Ct. App. Dec. 30, 1997) ...................13

*Wallace v. Ohio Dep't of Commerce*,
    773 N.E.2d 1018 (Ohio 2002)..................................................18

*Williams v. Bos. Sci. Corp.*,
    No. 3:23 CV 1409, 2023 WL 9596983 (N.D. Ohio Dec. 11, 2023)..........3, 9, 10

*Williamson v. Mazda Motor of Am., Inc.*,
    562 U.S. 323 (2011)...........................................................9

**Statutes**

2004 Ohio Laws File 144 (Am. Sub. S.B. 80)...................................20

2006 Ohio Laws File 198 (Am. Sub. S.B. 117)..................................20

Ohio Products Liability Act, Ohio Rev. Code § 2307 *et seq.*..........................*passim*

Ohio Rev. Code § 2307.71(A)(13) ...........................................................20

Ohio Rev. Code § 2307.71(B)..................................................................20

Ohio Rev. Code § 2307.72..........................................................................20

No. 8:22-ML-03052-JVS-KES        OPP. TO DEFS.' MOT. TO DISMISS
LORAIN'S FAC

1

## I.    INTRODUCTION

The City of Lorain, Ohio ("Plaintiff" or "Lorain") has experienced a skyrocketing increase in the thefts of Hyundai and Kia vehicles in its jurisdiction. Dkt. No. 406-1 ("First Amended Complaint" or "FAC") ¶ 101. Like the claims of the seventeen governmental entities ("GEs") in the Consolidated Governmental Entities Complaint ("CGEC"), **including those of other Ohio jurisdictions that the Court has already fully analyzed and allowed to proceed**, Lorain seeks to hold Defendants Hyundai Motor America ("HMA") and Kia America, Inc., ("KA") (collectively, "Defendants"),[1] accountable for the public safety crisis they caused by choosing not to equip millions of their vehicles with reasonable anti-theft technology. Defendants' decision to design, manufacture, and distribute these "Susceptible Vehicles"[2] has foreseeably led to significant downstream impacts on public safety and welfare in Lorain's community.

There is nothing substantively new in Defendants' motion to dismiss against Lorain, Ohio. In moving to dismiss Lorain's FAC, Defendants recycle the same arguments that they advanced against Cincinnati, Cleveland, and Columbus, Ohio—all of which the Court rejected—in their motion to dismiss the CGEC:

1. ***Preemption***. Defendants again argue that federal law preempts the claims of GEs like Lorain (Mot. at 4), despite this Court's prior recognition that the formulation of the claims in the CGEC—which Lorain's FAC tracks—"does not even raise a question of preemption." Dkt. No. 270 at 6.

---

[1] The parties filed, and the Court granted, a stipulation to voluntarily dismiss without prejudice and toll Lorain's claims against the Defendants' foreign parents, Hyundai Motor Corporation and Kia Corporation. Dkt. Nos. 418, 420.

[2] The Susceptible Vehicles include all Hyundai and Kia vehicles that were designed, manufactured, and distributed without engine immobilizers or other reasonable anti-theft technology. *See* FAC ¶ 3.

1

2. ***Proximate Cause***. Defendants also repeat their argument that a social media challenge and third-party criminal conduct breaks the causal chain for Plaintiff's negligence and nuisance claims. Mot. at 10–12. But the Court already rejected these arguments too. Dkt. No. 270 at 11 ("The fact that the theft exploitation and the thefts themselves are broadcast on . . . social media . . . does not foreclose proximate causation"), and 10 (distinguishing cases involving "a car thief's breaking of the causal chain between a *vehicle owner* and a third party's injury").

3. ***Legal Duty***. Defendants once more contend they "owe no duty to protect local governments from harm caused by criminal third-party conduct" (Mot. at 14), even though the Court has already recognized two separate duties Defendants owe to cities like Lorain under Ohio law. *See* Dkt. No. 270 at 9 (recognizing the duty to (1) "exercise reasonable care in the design and manufacture" of Defendants' vehicles and (2) "guard against the . . . criminal conduct of third parties").

4. ***Product Liability Abrogation***. Defendants also renew their claim that the Ohio Products Liability Act ("OPLA") abrogates Plaintiff's nuisance claims, despite authority to the contrary and this Court's prior recognition that dismissal would be premature while the Ohio State Supreme Court considers a related question. *Id.* at 14.

5. ***Intentional Conduct***. Last, Defendants argue that they did not intentionally create a nuisance, but they again misunderstand the requisite intent for an absolute nuisance claim. The Court ruled that Defendants' "intent to forgo installation of . . . anti-theft technology and simultaneous knowledge of" the "consequences on the public" effectively disposed of the argument that prior Ohio GE Plaintiffs' absolute nuisance claims insufficiently pled "intent or inherently dangerous activity." *Id.* at 15.

Defendants present no good reason for the Court to diverge from its prior order. The only thing that is arguably new is Defendants' attempt to repackage their arguments on preemption and proximate cause, respectively. Of the cases Defendants rely on to support those arguments, only three were decided after the Court denied the motion to dismiss the CGEC. ***None*** of these three cases are binding on the Court, and each involved distinguishable facts, claims, and plaintiffs from the instant case.

The first is a product defect case that Defendants contend requires Lorain to meet a heightened pleading standard. Mot. at 6 (citing *Williams v. Bos. Sci. Corp.*, No. 3:23-cv-1409, 2023 WL 9596983 (N.D. Ohio Dec. 11, 2023)). But Lorain brings claims for public nuisance and negligence, which the Ohio State Supreme Court has never analyzed under a heightened pleading standard even when the claims involved products. *See infra* § IV.C.

The second and third are personal injury cases that Defendants argue the Court should rely on to reverse its decision on proximate causation. Mot. at 10 (citing *Fox v. Kia Am., Inc.*, No. 1:23-cv-1881, 2024 WL 1328730 (N.D. Ohio Mar. 28, 2024)); *id.* at 11 n.3 (citing *Lawton v. Hyundai Motor Am., Inc.*, No. 24-00097-cv-W-BP, 2024 WL 2318623 (W.D. Mo. May 20, 2024) ("*Lawton II*")). But Hyundai, this Court, and the court deciding *Fox* have already distinguished those cases from the claims of GEs like Lorain, not to mention that *Lawton* does not even involve Ohio law. *See, e.g.*, *Fox*, 2024 WL 1328730, at *15 (distinguishing Fox's claims from those in the MDL); *see also Lawton* v. *Hyundai Motor Am., Inc.*, No. 8:23-cv-01797-JVS (KES), 2024 WL 1135734, at *4 (C.D. Cal. Feb. 8, 2024) ("*Lawton I*") (agreeing with Hyundai that transferring a personal injury case to the MDL "would be inappropriate" given that case's "'unique issues including the circumstances of

Plaintiff's shooting, the circumstances of the theft of her vehicle, *causation*, and personal-injury damages'") (emphasis added) (citation omitted).

In short, the "new" arguments are unavailing, and the "old" arguments suffer the same shortcomings they did in Defendants' motion to dismiss the CGEC. Any further briefing and oral argument on settled issues would unnecessarily divert judicial and the parties' resources. Accordingly, Lorain requests that the Court deny Defendants' motion to dismiss.

## II.     BACKGROUND

### A.     Defendants Knew Their Cost Cutting Would Harm GEs like Lorain.

Like other GEs, Lorain is experiencing an unprecedented increase in thefts of Hyundai and Kia vehicles. FAC ¶ 101. As thefts of these vehicles skyrocketed, Lorain was forced to divert additional time and resources to protect public safety and security. *Id.* ¶ 107. These harms can be traced back to Defendants' decision not to equip the Susceptible Vehicles with reasonable anti-theft measures, despite knowing the foreseeable harms that would result. *Id.* ¶¶ 1, 8, 67.

Over fifty years ago, federal agencies recognized "that stolen cars constitute a major hazard to life and limb on the highways." *Id.* ¶ 50. Accordingly, the National Highway Traffic Safety Administration ("NHTSA") concluded that "a reduction of the incidence of auto theft would make a substantial contribution to motor vehicle safety," and promulgated vehicle safety standards. *Id.*

Following the dramatic rise in vehicle thefts in the 1980s and 1990s due to "hotwiring"—wherein car thieves would bypass a vehicle motor's ignition switch— many car manufacturers began installing passive engine immobilizers. *Id.* ¶¶ 53, 55. This anti-theft technology proved successful—reducing the overall rate of car theft by approximately 40 percent from 1995 through 2008. *Id.* ¶ 59. Equally important, academics noted that increased anti-theft technology like engine immobilizers made

it less easy for adolescents to steal cars, reducing the number of juveniles who embarked on a life of crime or became career criminals. *Id.* ¶ 61. Defendants took note and themselves touted the efficacy of immobilizers in seeking an exemption from certain parts-marking requirements for their higher-end models. *Id.* ¶ 67.

Yet, despite decades of research and findings supporting the deterrence effect of such anti-theft technology, Defendants chose not to install reasonable anti-theft measures in the Susceptible Vehicles. *Id.* ¶¶ 67–68. The vulnerability of the Susceptible Vehicles—which is unique to Hyundai and Kias—has led to a foreseeable rise in thefts of those vehicles in Lorain and throughout the country. *Id.* ¶ 73. In the months that followed, consumers, governmental entities, and insurance companies began suing Defendants, eventually resulting in the instant multidistrict litigation.

**B.  Defendants' Motion to Dismiss Lorain's FAC Needlessly Consumes the Court's and the Parties' Resources.**

Lorain brings the same nuisance and negligence claims as Cleveland, Cincinnati, and Columbus, Ohio, who were part of the CGEC. Dkt. No. 175. The parties briefed and the Court already determined their claims may proceed. Dkt. No. 270. While the Court later permitted Defendants to seek interlocutory review on a narrow question of duty under the laws of Ohio (and New York and Wisconsin), Dkt. No. 298, the Court has been steadfast that, "I thought I got it right because that's the decision we issued." Dkt. No. 302 (Hrg. Tr. Jan. 29, 2024) at 10:15–16.

Around this same time, eight other GEs filed standalone complaints.[3] To date, Defendants have answered five of the eight complaints and moved to dismiss

---

[3] The eight other GE complaints, in order of filing, include (1) Chicago, Illinois; (2) Louisville Metro, Kentucky; (3) Anne Arundel County, Maryland; (4) Fort Wayne, Indiana; (5) Amherst, New York; (6) Syracuse, New York; (7) Lorain, Ohio; and (8) Newark, New Jersey.

amended complaints filed by Chicago, Illinois; Lorain, Ohio; and Newark, New Jersey.[4] Of these, Lorain's is most puzzling because the Court already permitted Ohio claims to proceed.

### III.   LEGAL STANDARD

Unless "a heightened pleading standard applies, a motion to dismiss under Rule 12(b)(6) is analyzed using the pleading standard of Rule 8(a)." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 763 (9th Cir. 2023). "[U]nder Rule 8(a), a plaintiff need only provide 'enough facts to state a claim to relief that is plausible on its face.'" *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

The court must accept "[a]ll factual allegations . . . as true" and draw "all reasonable inferences . . . in favor of the plaintiff." *Austin*, 925 F.3d at 1137. The court will uphold a claim if the plaintiff provides "'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence'" to support the allegations. *Starr v. Baca*, 652 F.3d 1202, 1213 (9th Cir. 2011) (citation omitted). Further, "[w]here fraud is not an essential element of a claim," as it is not here, "only those allegations of a complaint which aver fraud are subject to Rule 9(b)'s heightened pleading standard." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009).

---

[4] Chicago's first amended complaint was previously dismissed with leave to amend. Dkt. No. 334.

## IV.   ARGUMENT

### A.   Lorain's Claims Do Not Raise a Question of Preemption.

Defendants again argue—incorrectly—that Lorain's claims rest on Defendants' failure to install engine immobilizers and are therefore preempted by federal law. Mot. at 4. This Court previously rejected the very same argument because the CGEC, like Lorain's FAC, "does not impose a narrow engine-immobilizer requirement." Dkt. No. 270 at 6. Rather, the CGEC faults Defendants for failing to equip their vehicles with reasonable anti-theft technology, which this Court has held "is consistent with the broad standard for required devices under FMVSS 114." *Id*. Lorain's FAC is no different.

Defendants point to the Court's order dismissing the City of Chicago's complaint, but they tellingly omit the Court's observation that this Court "previously rejected Defendants' preemption arguments . . . in the context of a complaint [*i.e.*, the CGEC] that, despite a handful of references to immobilizers, discussed anti-theft technology overall in broad sense." Dkt. No. 334 at 6. Just as in the CGEC, the FAC provides a historical overview that describes immobilizers as a widely accepted and effective anti-theft method. As in the CGEC, the FAC's claims do not rest on a failure by Defendants to use immobilizers specifically. *See generally* FAC ¶¶ 123, 125, 143, 150, 162–163. The Court may end its analysis there and find that "a full preemption analysis is not required." Dkt. No. 270 at 6.

### B.   Lorain's Claims Do Not Conflict with Federal Law.

Federal law can expressly or impliedly preempt state law. Defendants do not argue that express preemption applies to Lorain's common law claims, nor is there support for such an argument in either the Safety Act or FMVSS 114. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 868 (2000) (holding that the express preemption provision in the Safety Act "excludes common-law actions").

Accordingly, Defendants must show the Act impliedly preempts state law based on Congress's intent to occupy the field at issue ("field preemption") or because state law "conflict[s] with a federal statute," ("conflict preemption"). *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

Conflict preemption applies when conflicts between state and federal law (1) "make it 'impossible' for private parties to comply with both state and federal law" or (2) "prevent or frustrate the accomplishment of a federal objective." *Geier*, 529 U.S. at 873 (citation omitted).

Here, Defendants raise no argument that field preemption applies. Instead, as they did before, they argue that the FAC would frustrate FMVSS 114's purported objective of ensuring flexibility for manufacturers—a form of conflict preemption. But Defendants' assertion of a conflict rests on an improper characterization of the claims asserted in the FAC and ignores other important policy objectives of FMVSS 114.

Contrary to Defendants' arguments, the FAC does not seek the use of a specific technology, such as engine immobilizers. Rather, Lorain seeks to hold Defendants responsible for designing, manufacturing, and distributing vehicles that are unreasonably easy to steal. Defendants can comply with their duties in a myriad of ways and without restricting the flexibility Defendants contend underpins FMVSS 114.

Moreover, unlike *Geier* where the choices at issue included "airbags" versus "other passive restraint systems, such as automatic belts or passive interiors[,]" *id.* at 881, Plaintiff's claims do not rely on the use of a conflicting or even a single technology. As this Court previously recognized, such language regarding the need for some reasonable "'anti-theft technology' is consistent with the broad standard for required devices under FMVSS 114." Dkt. No. 270 at 6.

No. 8:22-ML-03052-JVS-KES                OPP. TO DEFS.' MOT. TO DISMISS
                                                    LORAIN'S FAC

Even if the claims in the FAC would restrict a manufacturer's choice for the use of anti-theft devices (and they do not), such a restriction does not implicate conflict preemption where "it does not 'stan[d] as an obstacle to the accomplishment . . . of the full purposes and objectives' of federal law." *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 336 (2011) (alterations in original) (citation omitted). Defendants paint a narrow picture of FMVSS 114 as requiring complete deference and flexibility to vehicle manufacturers. But Defendants forget that the primary goals in enacting federal safety regulations such as FMVSS 114 are to prevent vehicle theft and improve public safety. Accordingly, Defendants fail to show that the FAC's claims conflict with the full purposes and objectives of federal law.

## C. Lorain's Claims Satisfy Federal Pleading Standards.

In incorrectly arguing that the FAC must specifically identify the defects at issue here, Mot. at 6–8, Defendants again mischaracterize the nature of Lorain's claims. Specifically, Defendants rely on inapplicable caselaw regarding *product liability* claims where courts required plaintiffs to identify the particular defect at issue and the problem caused by the defect. *Id.* at 6.

As this Court previously noted, "Defendants unduly narrow the alleged harm by focusing solely on design defects." Dkt. No. 270 at 13. Nothing has changed since then. Lorain's claims, like those the Court previously found sufficient, are not premised on a design defect. The design defect cases Defendants cite do not change that and whatever holdings they reach are limited to product liability claims. *See, e.g.*, *Raynaldo v. Am. Honda Motor Co., Inc.*, No. 21-cv-05808-HSG, 2022 WL 4358096, at *4 (N.D. Cal. Sept. 20, 2022) (dismissing *product liability* claims related to allegedly defective electrical system because the plaintiffs' complaint "d[id] not describe the components that comprise each electrical system, or how any of the electrical systems relate to the alleged defect"); *Williams*, 2023 WL 9596983, at *2–

No. 8:22-ML-03052-JVS-KES                    OPP. TO DEFS.' MOT. TO DISMISS
                                                      LORAIN'S FAC

3 (dismissing *product liability* claims for failing to show how the product was improperly designed, manufactured, or distributed with inadequate warnings); *Pelayo v. Hyundai Motor Am., Inc.*, No. 8:20-cv-01503-JLS-ADS, 2021 WL 1808628, at *4 (C.D. Cal. May 5, 2021) (dismissing *product liability* claims where plaintiffs "failed to allege that any specific design feature, component, mechanism, or function within the [product] is defective"); *Farrales v. Ford Motor Co.*, No. 21-cv-07624-HSG, 2022 WL 1239347, at *6 (N.D. Cal. Apr. 27, 2022) (same for "engine cooling system") (internal quotation marks omitted).

Public nuisance and negligence claims are not subject to the same heightened pleading standards as product liability claims. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 589 F.Supp.3d 790, 813 n.101 (N.D. Ohio 2022) (ruling that the governmental entity plaintiffs' public nuisance claims were *not* product liability claims subject to requirements of OPLA, including OPLA's requirement that the plaintiff show the defective aspect of the product proximately caused the plaintiff's injury). Additionally, in *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136 (Ohio 2002), the Supreme Court of Ohio expressly discussed the requisite notice pleading standards for that city's product liability claims, but such a standard was irrelevant to the city's separate public nuisance and negligence claims the court upheld. *Compare id.* at 1146 (product liability claims withstood pleading standard requirements by alleging the manufacture or supply of "defective guns without appropriate safety features"), *with id.* at 1141–45 (specific nature of the guns' defect not mentioned in determining the viability of the city's public nuisance and negligence claims).

Thus, Lorain's claims do not hinge on sufficiently demonstrating the specifics of an automobile defect but rather by showing that Defendants' *conduct* substantially contributed to the creation of a public nuisance and/or that Defendants' conduct was

negligent, which Lorain has pled at length. *See, e.g.*, FAC ¶¶ 53–65 (describing Defendants' misconduct).

**D.      Foreseeable Downstream Acts of Third Parties Do Not Sever Causation.**

The acts of third parties do not cut-off liability when their acts are a foreseeable result of a defendant's misconduct. Whether an act is foreseeable is a question for the trier of fact. Defendants' contentions to the contrary rely on factually and procedurally distinct cases, none of which involve public nuisance claims brought by GEs such as Lorain. Rather, again mimicking their prior briefing on the motion to dismiss the CGEC, Defendants cite to inapposite personal injury cases against vehicle owners where a third-party's theft and reckless conduct severed proximate cause. This Court already distinguished these types of cases, noting they do not "directly implicate the prevention of theft the way it is [raised by GE Plaintiffs]." Dkt. No. 270 at 10. Additionally, any reliance on these or more recent personal injury cases against these same Defendants are inapposite from the harms, conduct, and claims alleged in Lorain's FAC.

**1.      Foreseeability is a question for the trier of fact.**

The Supreme Court of Ohio has "repeatedly recognized that the issue of intervening causation generally presents factual issues to be decided by the trier of fact." *Leibreich v. A.J. Refrigeration, Inc.*, 617 N.E.2d 1068, 1071 (Ohio 1993) (collecting cases). This is so because the "determination of intervening causation involves a weighing of the evidence, and an application of the appropriate law to such facts[.]" *Id.* (cleaned up). "The test is whether the original and successive acts may be joined together as a whole, linking each of the actors as to the liability, or whether there is a new and independent act or cause which intervenes and thereby absolves the original negligent actor." *Id.* (cleaned up); *see also Czarney v. Porter*, 853 N.E.2d 692, 695 (Ohio Ct. App. 2006) (same). "'Independent' means 'the

absence of any connection or relationship of cause and effect between the original and subsequent act of negligence,' and 'new' means that the second act could not have reasonably been foreseen." *Czarney*, 853 N.E.2d at 695 (quoting *Queen City Terminals, Inc. v. Gen. Am. Transp. Corp.*, 653 N.E.2d 661, 671 (Ohio 1995)). Whether Defendants' conduct was the proximate cause of Plaintiff's injuries and may be linked together with the conduct of subsequent actors is a highly fact-sensitive question for a trier of fact and cannot be resolved properly as a matter of law upon Defendants' motion to dismiss.

It is unsurprising then that many of the cases Defendants cite analyzed proximate cause at the *summary judgment* phase, where the lower court had the benefit of discovery to consider whether there was no issue of material fact as to the foreseeability of a superseding cause. *See, e.g.*, *Am. Winds Flight Acad. v. Garmin Int'l*, No. 5:07-cv-3401, 2010 WL 3783136, at *8–9 (N.D. Ohio Sept. 17, 2010) (ruling that the plaintiffs' expert testimony raised an issue of material fact on direct causation, but not legal causation); *see also Cascone v. Herb Kay Co.*, 451 N.E.2d 815, 820 (Ohio 1983) (reversing summary judgment given the material issue of fact raised as to the foreseeability that a forklift may have been used by the plaintiff's employer, "after it knew that the lift was leaking oil").

**2.    This Court, other courts, and Defendants have already distinguished the cases Defendants contend sever causation as a matter of law.**

Defendants contend—incorrectly—that intervening acts cut off their liability to Lorain, but the Court has already rejected that argument in the context of the CGEC. Dkt. No. 270 at 10. In pressing the matter against Lorain, Defendants offer no new arguments, only additional personal injury cases this and other courts have

12

OPP. TO DEFS.' MOT. TO DISMISS LORAIN'S FAC

already distinguished from the facts, claims, and law at issue here. As before, this Court should reject Defendants' attempt to analogize to this inapposite caselaw.

The inapposite caselaw Defendants rest much of their argument on is comprised of cases where a victim injured by a thief sued the vehicle owner. *See* Mot. at 10 (citing *Pendrey v. Barnes*, 479 N.E.2d 283 (Ohio 1985) (owner left their car unlocked with keys in the ignition); *Ross v. Nutt*, 203 N.E.2d 118 (Ohio 1964) (same); *Miles v. Cedar-Lee Chrysler-Plymouth, Inc.*, No. 38574, 1978 WL 218347 (Ohio Ct. App. Apr. 27, 1978) (lawsuit against vehicle owner and car dealership based on the dealership's employee leaving keys in the vehicle's ignition); *Tilton v. Austintown Motors, Inc.*, No. 96-CO-71, 1997 WL 816526 (Ohio Ct. App. Dec. 30, 1997) (car dealership left vehicle that they owned unattended and unlocked with keys in the ignition)). The decision to cut off an owner's liability in these cases stem from a public policy determination that "mere ownership of an automobile does not make the owner thereof an insurer of the public in relation to the operation thereof by a third person." *Ross*, 203 N.E.2d at 121.

This Court has already distinguished these cases against vehicle owners from those involving GEs like Lorain. As the Court recognized in the context of the CGEC, the public policy "considerations 'are markedly different when the defendants are manufacturers selling millions of cars without anti-theft technology, rather than individual car owners inadvertently leaving their keys in their vehicles.'" Dkt. No. 270 at 10–11 (quoting Dkt. No. 240 at 15–16). In such cases, it is not "beyond the realm of reason to attach liability" to a car manufacturer, as this Court previously held. *Ross*, 203 N.E.2d at 121.

The two other cases Defendants cite do not change that calculus. Mot. at 10 (citing *Fox*, 2024 WL 1328730); *id.* at 11 n.3 (citing *Lawton II*, 2024 WL 2318623). *Fox*, which involved a sole product liability claim, distinguished its own ruling on

proximate cause from the claims in the instant MDL proceeding. *See* 2024 WL 1328730, at *15 (distinguishing the claims of Subrogation Plaintiffs that were based on the failure to install certain anti-theft measures and damages arising subsequent to widespread thefts); *see also id.* at *15 n.4 (distinguishing claims of GE Plaintiffs for similar reasons). And both Defendants and this Court distinguished the personal injury claims at issue in *Lawton*—which were brought under *Missouri law*—in declining to consolidate that case with this MDL. *Lawton I*, 2024 WL 1135734, at *4 (considering Defendants' arguments about the "unique issues" in Lawton's case, "including the circumstances of Plaintiff's shooting, the circumstances of the theft of her vehicle, *causation*, and personal-injury damages" and concluding that "Lawton's personal injury claim does not fall within the subject matter of the MDL") (emphasis added) (internal quotation marks and citation omitted). Those distinguishing characteristics have not changed, and these cases remain inapplicable to the facts in this matter.

Additionally, all of the above cases are inapplicable to Lorain's public nuisance claims. Unlike the product liability and negligence claims at issue in the cases Defendants cite, public nuisance claims in Ohio are subject to a different causal standard. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 589 F.Supp.3d 739, 786–87 (N.D. Ohio 2022) (recognizing that Ohio adopts "the Restatement's 'substantial factor' test" whereby a defendant "is liable for a public nuisance which would have occurred even in the absence of the defendant's wrongful conduct, so long as that defendant's conduct was a substantial factor in bringing about the nuisance"). Similar to the Ohio GE Plaintiffs before it, Lorain adequately pleads that Defendants substantially contributed to the creation of a public nuisance. FAC ¶¶ 115, 138.

No. 8:22-ML-03052-JVS-KES                    OPP. TO DEFS.' MOT. TO DISMISS
                                             LORAIN'S FAC

**E.      Lorain Sufficiently Pleads Two Separate Duties Under Ohio Negligence Law Based on Foreseeability and Public Policy.**

Lorain asserts two distinct duties: (1) the duty "to act as a reasonably careful person would under the circumstances in the design, research . . ., and distribution of Defendants' products"; and (2) the duty "to take all reasonable steps necessary to prevent (a) the design, manufacture, distribution, and/or sale of a product that was so easy to steal and (b) the creation, incubation, or maintenance of the conditions necessary for a secondary market of unsafe and stolen vehicles." *Id.* ¶¶ 158, 159. This is similar to the duties the Ohio GE Plaintiffs alleged in the CGEC and that the Court found Defendants owed to those plaintiffs. *See* Dkt. No. 270 at 9.

While the Court gave Defendants permission to seek review of one of those duties, the Court reiterated at the hearing that it believed it "got it right" when it found Defendants owed that duty. *See* Dkt. No. 302 (Hrg. Tr. Jan. 29, 2024) at 10:15–16. Regardless, a reversal of this Court on the question certified will not dispose of every duty that Lorain asserts. Dkt. No. 298 at 7 (certifying the question of "whether a tort duty to protect against third-party criminal conduct can be based solely on the foreseeability of harms—even in the absence of a special relationship"). That is because third-party conduct is separate and irrelevant to the general duty Lorain asserts Defendants owed to act as a reasonably careful automaker would act under the circumstances. Such a duty is supported by binding Ohio authority, as well as the harm Defendants *foreseeably* saw GEs like Lorain would suffer from Defendants' failure to comply with their duties. The second duty—to prevent the design and distribution of a product that is so easy to steal and/or to incubate conditions necessary for a secondary market of unsafe and stolen vehicles—also is supported by binding precedent, the foreseeability of harm to Plaintiff, and public policy factors.

Defendants' assertion that this Court may nevertheless dismiss Lorain's FAC based on a lack of legal duty again relies on inapt, non-binding caselaw concerning an individual motorist asserting a product liability claim.

**1. Defendants have a general duty to exercise reasonable care in the design and distribution of their vehicles.**

Plaintiff adequately pleads that Defendants owe a general duty to exercise reasonable care, particularly given the foreseeable harms Defendants knew would result if they did not comply with that duty. In *Beretta*, the Supreme Court of Ohio held that where Plaintiffs are, "from Defendants' perspective, foreseeable plaintiffs . . . . *the court need not decide whether Defendants owed a duty greater than the basic duty*." 768 N.E.2d at 1145 (emphasis added). As this Court aptly observed, "[i]t is difficult to envision a product more 'public' than the automobile." Dkt. No. 270 at 8. Accordingly, it is foreseeable that "the lengths a manufacturer will go—or not go—to design their cars with protections against theft will determine the burden others will bear to respond to such theft." *Id.* In this instance, the burden that falls on GEs like Lorain is entirely foreseeable, as this Court already found. *Id.* (recognizing the "foreseeability of the harm to local governments as a result of" Defendants' decision not to use reasonable anti-theft technology). Rulings from lower courts in Ohio do not alter *Beretta*'s holding.

Defendants argue that duty requires more than foreseeability outside of the premises liability context. Mot. at 14 (citing *Est. of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1019 (Ohio Ct. App. 2019)). But Defendants ignore that *Beretta*— a case that, like here, was also brought by a GE asserting public nuisance and negligence claims against a product manufacturer—did not implicate premises liability, and in fact distinguished cases involving property owners and the duty to invitees. 768 N.E.2d at 1144 (distinguishing *Gelbman v. Second Nat'l Bank of Warren*, 458 N.E.2d 1262

(Ohio 1984), and *Simpson v. Big Bear Stores Co.*, 652 N.E.2d 702 (1995)). Rather, because the issue in *Beretta* turned on the manufacturer's own negligent conduct—"'the foreseeable result of which was to cause harm to Plaintiffs'"—the court determined that a basic duty was owed to the GE plaintiff. *Id.* (citation omitted). Here too, the same analysis controls based on the FAC's repeated reference to the unique susceptibility of Defendants' vehicles to theft and the natural and downstream consequences that flow to GEs like Lorain in responding to thefts. FAC ¶¶ 62–65, 105–108. Defendants' failure to exercise reasonable care in the design, manufacture, and distribution of the Susceptible Vehicles unreasonably exposed Lorain to harm.

### 2. Defendants' duty to prevent the distribution of vehicles that are so easy to steal, and the subsequent secondary market for stolen vehicles, is supported by foreseeability and public policy considerations.

Separate from the basic duty to exercise reasonable care, the FAC adequately pleads a duty not to distribute cars that are so easy to steal or help maintain a secondary market for stolen vehicles. *Beretta* is again instructive. There, the gun manufacturer defendants affirmatively contributed to an illegal, secondary firearms market "'by designing or selling firearms without regard to the likelihood the firearms would be placed in the hands of juveniles,'" and "'felons.'" 768 N.E.2d at 1144 (citation omitted). The manufacturers' malfeasance meant that recognition of a duty did not require a special relationship. *See id.* (determining that "the 'special relationship' rule is not determinative" where the conduct is based on Defendants' own malfeasance rather than nonfeasance). Here, too, Lorain alleges that Defendants did more than simply fail to act. Rather, they made the conscious decision to design, manufacture, and distribute vehicles without reasonable anti-theft technology; that without such technology the vehicles would be easily stolen, often by juveniles; and

that stolen vehicles pose a significant risk to public safety. *See, e.g.*, FAC ¶¶ 54–55, 61, 67 n.40, and 101.

As also in *Beretta*, the harm that Defendants' misconduct caused—for example, an illegal market[5] of stolen vehicles, among other things—was eminently foreseeable. Consciously forgoing reasonable anti-theft devices, and affirmatively distributing vehicles lacking such devices, is sure to cause theft, since "[t]heft is the very foreseeable conduct that *anti-theft* devices specifically protect against." Dkt. No. 270 at 10. Thus, the foreseeability of harm supports the imposition of a legal duty on Defendants to prevent the maintenance of a secondary stolen car market.

Such a duty is also supported by public policy goals in ensuring public safety. The Supreme Court of Ohio recognizes that duty is not guided by some "'formula'" but rather by "'the court's expression of the sum total of those considerations of *policy* which lead the law to say that the particular plaintiff is entitled to protection.'" *Wallace v. Ohio Dep't of Commerce*, 773 N.E.2d 1018 (Ohio 2002) (emphasis added) (quoting *Mussivand v. David*, 544 N.E.2d 265, 270 (Ohio 1989)).

In *Hinkle*, the Ohio Court of Appeals declined to find a legal duty for a parent to secure a firearm given the absence of prior conduct showing her son's propensity to use the firearm to commit a violent crime. 145 N.E.3d at 1026. Here, the history of car thieves, and juvenile car thieves in particular, in targeting cars that are easy to steal, supports rather than undermines the imposition of a duty to prevent such harm.

---

[5] Defendants attempt to distinguish *Beretta* because, unlike the firearms at issue there, Defendants' vehicles are not always disassembled for parts as part of an "illegal, secondary market." Mot. at 15 n.8. But the FAC adequately alleges that the increase in thefts has led to a secondary market for thieves, often juveniles, to steal larger quantities of the Susceptible Vehicles—both for reckless joyriding and to assist with the commission of other crimes. FAC ¶¶ 108–109. Whether the thieves use the entire vehicle, or its parts, does not change the existence of a secondary criminal market.

18

No. 8:22-ML-03052-JVS-KES                          OPP. TO DEFS.' MOT. TO DISMISS
                                                                          LORAIN'S FAC

Unlike in *Hinkle*, the FAC asserts that Defendants had ample evidence that their decision to cut costs by not equipping vehicles with reasonable anti-theft technology would make their vehicles uniquely susceptible to theft. FAC ¶¶ 54–55, 61, 67.

Defendants' other cases on duty are also factually distinct from the circumstances supporting a duty in this case, either because of a controlling statute that disclaimed a duty requirement or where the claim necessarily relied upon real property considerations. *See Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 595 N.E.2d 855, 857 (Ohio 1992) (affirming summary judgment where the statute at issue expressly "eliminated any duty [for a governmental entity, railroad company, or other private corporation] to provide clearance for maximum-height vehicles"); *Davis v. Widman*, 922 N.E.2d 272, 283 (Ohio Ct. App. 2009) (no duty to replace pipe for undersized driveway-drainage tile that flooded plaintiff's property where plaintiff failed to allege facts constituting a trespass). Neither circumstance exists here.

**F.     The Ohio Products Liability Act Does Not Abrogate Lorain's Claims.**

Defendants again argue that OPLA abrogates Lorain's public nuisance claims. But the only authority on point contradicts them. *See In re Nat'l Prescription Opiate Litig.*, 589 F.Supp.3d at 812 (reaffirming prior holding that "public nuisance claims [that do not seek to recover compensatory damages for harm] clearly fall *outside* the scope of the OPLA") (emphasis in original). While that decision is currently pending appeal, this Court previously ruled that "dismissal as the Ohio Supreme Court weighs this very question would be premature." Dkt. No. 270 at 14. The procedural posture remains the same, as the Ohio Supreme Court's decision is still pending. *See In re Nat'l Prescription Opiate Litig.*, 82 F.4th 455, 462–63 (6th Cir. 2023). Accordingly, any dismissal of the FAC's nuisance claims based on the statutory language of OPLA is improper at this time.

Defendants acknowledge the Court's prior ruling that it would be premature to weigh in further until the Ohio Supreme Court weighs in. Mot. at 8 n.2. Even so, Defendants' repeated abrogation arguments remain incorrect because Plaintiff's public nuisance claims do not seek compensatory damages for harm and are thus not considered "product liability claims" under OPLA.

OPLA provides a statutory mechanism for bringing product liability claims. Ohio Rev. Code § 2307 *et seq*. Relevant here, OPLA preempts only common law "product liability claims." Ohio Rev. Code § 2307.71(B). The statute defines "[p]roduct liability claim" as a claim that "seeks to recover compensatory damages" for "death, physical injury to person, emotional distress, or physical damage to property other than the product in question." Ohio Rev. Code § 2307.71(A)(13). An action does not concern a "product liability claim" that is subject to abrogation under OPLA "unless it alleges damages other than economic ones." *LaPuma v. Collinwood Concrete*, 661 N.E.2d 714, 716 (Ohio 1996) (relying on Ohio Rev. Code § 2307.72). In 2005, the Ohio General Assembly amended OPLA to abrogate a prior holding of the Ohio Supreme Court in *Carrel v. Allied Products Corp.*, 677 N.E.2d 795 (1997), that had allowed a negligent design claim to survive OPLA abrogation. *See* 2004 Ohio Laws File 144 (Am. Sub. S.B. 80). Thus, the 2005 amendment served to "abrogate all common law product liability causes of action." *Id.* Critically, though, the General Assembly did not displace the Supreme Court of Ohio's holding in *LaPuma*—allowing cases that involve products but did not seek non-economic damages to survive OPLA abrogation. Then, in 2007, the Ohio General Assembly again amended OPLA by adding "any public nuisance claim" to the definition of a "product liability claim." 2006 Ohio Laws File 198 (Am. Sub. S.B. 117). Again, the 2007 amendment did not abrogate absolute public nuisance claims seeking equitable

OPP. TO DEFS.' MOT. TO DISMISS LORAIN'S FAC

remedies. Both before and after the 2007 amendment, a public nuisance claim is an example of a "product liability claim" only if non-economic damages are sought.

Like the three Ohio GEs in the CGEC, Lorain's FAC does not immediately implicate OPLA, as the FAC does not seek non-economic damages, such as death, physical injury, emotional distress, or property damage. FAC ¶¶ 134, 156, 181. Accordingly, OPLA does not abrogate Lorain's common-law nuisance claims.

## G.   Lorain's Absolute Public Nuisance Claim Adequately Pleads Intentionality.

Similar to the other claims raised in the instant motion, this Court previously considered and denied Defendants' motion to dismiss the absolute public nuisance claims asserted by three other Ohio GE Plaintiffs on the same grounds. Dkt. No. 270 at 15, 18. Specifically, the Court determined that Defendants' "intent to forgo installation of anti-theft technology and simultaneous knowledge of its consequences to the public," *id.* at 15, plausibly formed the basis for intentionality for the Ohio GE Plaintiffs' absolute nuisance claim.

Ohio law does not require that Defendants intended to create a public nuisance. In *Beretta*, the court upheld the plaintiffs' absolute public nuisance claim based on the defendant gun manufacturers' intentional acts in distributing a product that they "'know, or reasonably should know, will be obtained by persons with criminal purposes.'" 768 N.E.2d at 1143 (citation omitted). In the Opioids MDL, the court determined that the plaintiff merely needs to show the defendant intended to bring about the conditions for the nuisance to occur. *In re Nat'l Prescription Opiate Litig.*, 406 F.Supp.3d 672, 675 (N.D. Ohio 2019).

Here, as in the Opioids MDL, the harm to Lorain is the "necessary consequence[] of . . . or is incident to" Defendants' intended acts in forgoing the installation of reasonable anti-theft technology in their vehicles that allowed those

OPP. TO DEFS.' MOT. TO DISMISS LORAIN'S FAC

same vehicles to be stolen in a matter of minutes. *Id.* (quoting *Taylor v. City of Cincinnati*, 55 N.E.2d 724, 727 (Ohio 1944)). Accordingly, Defendants intentionally created the conditions for a public nuisance and Plaintiff has adequately pled absolute public nuisance.

## V.    CONCLUSION

The same reasons leading to the Court's outright denial of the motion to dismiss the nuisance and negligence claims in the CGEC support a similar outcome here. The claims in the FAC are identical in all material respects to the claims of the Ohio GEs in the CGEC, and there is no reason to depart from this Court's prior order permitting those claims to proceed. Defendants' only "new" arguments fail to appreciate the nature of the claims at issue here. Lorain does not bring a product liability claim, so there is no heightened pleading standard to identify a particular defect. Additionally, the product liability claim and personal injuries at issue in the *Fox* case are entirely distinct from the harms, conduct, and claims at issue in the FAC, including nuisance claims that are not subject to the same proximate cause standard. Accordingly, Defendants' motion to dismiss the FAC should be denied.

RESPECTFULLY SUBMITTED this 8th day of JULY, 2024.

CITY OF LORAIN

By */s/ Patrick D. Riley*
Patrick D. Riley
Law Director
Department of Law
200 W Erie Avenue, 3rd Floor
Lorain, OH 44052
Telephone: (440) 204-2250
Fax: (440) 204-2257
Patrick_Riley@cityoflorain.org

KELLER ROHRBACK L.L.P.

By */s/ Gretchen Freeman Cappio*
Gretchen Freeman Cappio (*pro hac vice*)
Derek W. Loeser (*pro hac vice*)
Ryan McDevitt (*pro hac vice*)
Alison Gaffney (*pro hac vice*)
Garrett Heilman (*pro hac vice*)
Zachary Gussin (*pro hac vice*)
Kylie Fisher (*pro hac vice*)
1201 Third Avenue, Suite 3200

22

No. 8:22-ML-03052-JVS-KES

OPP. TO DEFS.' MOT. TO DISMISS
LORAIN'S FAC

*Counsel for Plaintiff City of Lorain, Ohio*

Seattle, WA 98101-3052
Telephone: (206) 623-1900
Fax: (206) 623-3384
gcappio@kellerrohrback.com
dloeser@kellerrohrback.com
rmcdevitt@kellerrohrback.com
agaffney@kellerrohrback.com
gheilman@kellerrohrback.com
zgussin@kellerrohrback.com
kfisher@kellerrohrback.com

*Counsel for Plaintiff City of Lorain, Ohio*

23

OPP. TO DEFS.' MOT. TO DISMISS
LORAIN'S FAC

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff City of Lorain, Ohio, certifies that this brief contains 6,663 words, which complies with the word limit of L.R. 11-6.1.

KELLER ROHRBACK L.L.P.

By */s/ Gretchen Freeman Cappio*
Gretchen Freeman Cappio (*pro hac vice*)
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Fax: (206) 623-3384
gcappio@kellerrohrback.com

*Counsel for Plaintiff City of Lorain, Ohio*