Raymond M. Brown, Esq., NJSB#010891974
Janie Byalik, Esq., NJB#040702006
**PASHMAN STEIN WALDER HAYDEN PC**
21 Main Street, Suite 200
Hackensack, NJ 07601
Telephone: (201) 488-8200
Fax: (201) 488-5556
rbrown@pashmanstein.com
jbyalik@pashmanstein.com
*Counsel for Plaintiff City Newark, New Jersey*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICE, and PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>*City of Newark v. Hyundai Motor Company, et al.,*<br><br>Case No. 8:24-cv-00323-JVS-KES | No. 8:22-ML-03052-JVS-KES<br><br>The Honorable James V. Selna<br><br>PLAINTIFF CITY OF NEWARK'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>Hearing Date: August 26, 2024<br>Hearing Time: 1:30 PM |

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

# **TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................1

II.     FACTUAL BACKGROUND.................................................................3

III.    ARGUMENT..........................................................................................5

      I.      NEWARK ADEQUATELY PLED A CLAIM FOR COMMON LAW PUBLIC NUISANCE.....................................5

      II.     NEWARK HAS STATED A CLAIM FOR UNJUST ENRICHMENT ..............................................................10

      III.    NEWARK CAN MAINTAIN ITS CONSUMER FRAUD CLAIM ....................................................................13

      IV.     NEWARK CAN INVOKE NEWARK MUNICIPAL CODE § 16:15 ........................................................................15

      V.      THE NJPLA DOES NOT SUBSUME NEWARK'S CLAIMS .............................................................................18

      VI.     NEWARK'S CLAIMS ARE NOT PREEMPTED BY FEDERAL LAW .................................................................24

IV.     CONCLUSION ...................................................................................28

# <u>TABLE OF AUTHORITIES</u>

## <u>Cases</u>

*Acosta v. City of Costa Mesa,*
   718 F.3d 800 (9th Cir. 2013) ...................................................................27

*Arlandson v. Hartz Mountain Corp.,*
   792 F. Supp. 2d 691 (D.N.J. 2011)...........................................................21

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................5

*Austin v. Univ. of Or.,*
   925 F.3d 1133 (9th Cir. 2019) ....................................................................5

*Bailey v. Wyeth, Inc.,*
   37 A.3d 549 (Law. Div. 2008) ..................................................................21

*Bd. of Educ. of City of Chicago v. A, C & S, Inc.,*
   546 N.E.2d 580 (Ill. 1989).........................................................................11

*Behrens v. Amazon.com, Inc.,*
   2023 WL 5985287 (D.N.J. Sept. 14, 2023)...............................................21

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ....................................................................................5

*Bosland v. Warnock Dodge, Inc.,*
   197 N.J. 543 (2009)....................................................................................13

*Callano v. Oakwood Park Homes Corp.,*
   219 A.2d 332 (N.J. 1966) .................................................................... 10, 11

*Camden County v. Beretta USA Corp.,*
   123 F.Supp.2d 245 (D.N.J. 2000)................................................................7

*Chamberlan v. Ford Motor Co.,*
   314 F. Supp. 2d 953 (N.D. Cal. 2004)................................................. 25, 26

ii

*City of Newark v. City of New York*,
 No. CV 19-20931, 2021 WL 11139488 (D.N.J. Oct. 29, 2021) ...........................6

*City of Paterson v. Fargo Realty Inc.*,
 415 A.2d 1210 (D.N.J. 1980) ...................................................................28

*Cox v. Sears Roebuck & Co.*,
 138 N.J. 2 (1994) ................................................................................. 13, 14

*Crosby v. Nat'l Foreign Trade Council*,
 530 U.S. 363 (2000) ...............................................................................25

*D'Agostino v. Maldonado*,
 216 N.J. 168 (2013) ............................................................................ 13, 14

*DeFrank v. Samsung Elecs. Am., Inc.*,
 2020 WL 6269277 (D.N.J. Oct. 26, 2020) ...............................................12

*Fed. Trade Comm'n v. Affiliate Strategies, Inc.*,
 No. 09-4104-JAR-KGS, 2010 WL 11470099 (D. Kan. June 4, 2010) ...............14

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
 458 U.S. 141 (1982) ...............................................................................25

*Geier v. Am. Honda Motor Co.*,
 529 U.S. 861 (2000) ...............................................................................26

*Gonzalez v. Ideal Tile Importing Co.*,
 877 A.2d 1247 (N.J. 2005) ......................................................................24

*Gov't of U.S. Virgin Islands v. Takata Corp.*,
 67 V.I. 316 (V.I. Super. Ct. 2017) .............................................................26

*Guidi v. City of Atlantic City*,
 286 N.J. Super. 243 (App. Div. 1996) .......................................................16

*Harris v. Great Dane Trailers, Inc.*,
 234 F.3d 398 (8th Cir. 2020) ...................................................................26

iii

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

*Harvey v. Board of Chosen Freeholders of Essex County*,
  153 A.2d 10 (N.J. 1959) .................................................................15

*Hindermyer v. B. Braun Med. Inc.*,
  419 F. Supp. 3d 809 (D.N.J. 2019).................................................19

*Iliadis v. Wal–Mart Stores, Inc.*,
  922 A.2d 710 (N.J. 2007) ...............................................................10

*In re Lead Paint Litig.*,
  2005 WL 1994172 (N.J. Super. Ct. App. Div. Aug. 17, 2005)...........11

*In re Lead Paint Litig.*,
  924 A.2d 484 (N.J. 2007) ........................................................ passim

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*,
  754 F. Supp. 2d. 1145 (C.D. Cal. 2010)...................................... 24, 25

*James v. Arms Tech., Inc.*,
  820 A.2d 27 (N.J. App. Div. 2003) ........................................... passim

*Julian v. TTE Tech., Inc.*,
  2020 WL 6743912 (N.D. Cal. Nov. 17, 2020).................................12

*Kirsch Holding Co. v. Borough of Manasquan*,
  93 A.2d 582 (N.J. App. Div. 1952) .................................................28

*Kugler v. Romain*,
  58 N.J. 522 (1971) .........................................................................13

*Lassen v. Nissan N. Am., Inc.*,
  211 F. Supp. 3d 1267 (C.D. Cal. 2016)...........................................26

*Lemelson Med., Educ. & Rsch. Found., Ltd. P'ship v. Intel Corp.*,
  No CIV.98-01413PHX(HRH), 2002 WL 453212 (D. Ariz. Feb. 26, 2002)........27

*Loughrin v. United States*,
  573 U.S. 351 (2014) .......................................................................27

iv

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

*Magdaleno v. Indymac Bancorp, Inc.*,
    853 F. Supp. 2d 983 (E.D. Cal. 2011) ................................................................15

*Mauerhan v. Principi*,
    16 Vet. App. 436 (2002) ......................................................................................27

*Medford v. Eon Labs, Inc.*,
    No. CV 20-00412, 2021 WL 5204035 (D.N.J. Nov. 9, 2021) ...........................21

*Mueller v. Kean University*,
    287 A.3d 796 ...................................................................................................7, 8

*New Hope Pipe Liners, LLC v. Composites One, LCC*,
    No. CIV. 09–3222, 2009 WL 4282644 (D.N.J. Nov. 30, 2009) .........................20

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
    461 U.S. 190 (1983) ...........................................................................................24

*Roncal v. Aurobindo Pharma USA, Inc.*,
    No. 3:20-CV-02643, 2022 WL 1237888 (D.N.J. Apr. 27, 2022) .......................21

*Sea Isle City v. Caterina*,
    303 A.2d 351 (Cape May County Ct. 1973) ......................................................15

*Severa v. Solvay Specialty Polymers USA, LLC*,
    524 F.Supp.3d 381 (D.N.J. 2021) ........................................................................6

*Severa*,
    524 F. Supp. ..........................................................................................................8

*Sinclair v. Merck & Co.*,
    948 A.2d 587 (N.J. 2008) ...............................................................................19, 20

*State ex rel. Brady v. Publishers Clearing House*,
    787 A.2d 111 (Del. Ch. 2001) .............................................................................14

*State v. Burkert*,
    174 A.3d 987 (N.J. 2017) ...............................................................................16, 17

No. 8:22-ML-03052-JVS-KES

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

*State v. Clarksburg Inn*,
    868 A.2d 1120 (N.J. App. Div. 2005) .....................................................17

*State v. Golin*,
    363 N.J. Super. 474 (App. Div. 2003) .............................................. 16, 17

*State v. N.T.*,
    223 A.3d 206 (N.J. Super. App. Div. 2019) .........................................27

*State v. Ulesky*,
    241 A.2d 671 (Monmouth County Ct. 1968) .......................................15

*Stewart v. Beam Glob. Spirits & Wine, Inc.*,
    877 F. Supp. 2d 192 (D.N.J. 2012) .......................................................11

*Sun Chemical Corporation v. Fike Corp.*,
    235 A.3d 145 (N.J. 2020) .......................................................................19

*Thiedemann v. Mercedes–Benz USA, L.L.C.*,
    183 N.J. 234 (2005) ................................................................................14

*Volin v. Gen. Elec. Co.*,
    189 F. Supp. 3d 411 (D.N.J. 2016) .......................................................19

*Williamson v. Mazda Motor of Am., Inc.*,
    562 U.S. 323 (2011) ...............................................................................28

**<u>Statutes</u>**

N.J.S.A 2A:58C-1(b)(2) ............................................................................ 19, 20

N.J.S.A 56:8-1 to -20 ........................................................................................13

N.J.S.A. § 2A:58C-1(b)(3) ...............................................................................18

N.J.S.A. 2C:33-4 ...............................................................................................17

N.J.S.A. 56:8-2 ..................................................................................................13

No. 8:22-ML-03052-JVS-KES

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

**<u>Rules</u>**

FRCP 9(b) ................................................................................................15

**<u>Other Authorities</u>**

*Assembly Bill No. 2402* ...........................................................................13

No. 8:22-ML-03052-JVS-KES

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

## I.      **INTRODUCTION**

The crux of plaintiff City of Newark's complaint against defendants Kia America, Inc. and Hyundai Motor America is that defendants' deliberate omission of anti-theft technology in their vehicles led to a foreseeable surge in vehicle thefts, causing extensive financial and operational burdens on the City.  Newark, already grappling with historical socioeconomic challenges, has experienced significant effects from defendants' misconduct. Thefts of Hyundais and Kias in Newark increased by over 1000% between 2022 and 2023, costing the City over $1 million in police overtime in 2023 alone.  Defendants' intentional sales of vehicles without anti-theft technology produced a car theft epidemic in Newark that greatly burdened its public safety and ability to provide municipal services.

Newark's Amended Complaint adequately pleads claims for public nuisance, unjust enrichment, and violations of consumer protection laws. Newark has stated a nuisance claim by pleading that defendants' intentional business-driven decision to omit reasonable anti-theft technology from its vehicles has resulted in enormous burden on Newark's public safety resources and has led to secondary crimes, endangering the public. Defendants' argument that they did not "control" the nuisance is fundamentally flawed. Public nuisance law does not require *actual* control; contributing to the nuisance with knowledge of the consequences suffices to impose liability.

1

No. 8:22-ML-03052-JVS-KES

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

Newark's remaining claims are also well-founded. Newark has pled unjust enrichment by showing that defendants received a financial benefit by saving costs on anti-theft technology at the expense of the city. Newark's consumer fraud claims are based on defendants' deceptive practices in failing to disclose the lack of adequate anti-theft technology in their vehicles, which has contributed to the public safety crisis. And the Newark Municipal Code supports claims against defendants for creating a public nuisance through their deliberate omission of anti-theft measures; it is not unconstitutionally vague, as the conduct here could not have been anticipated nor legislated against.

Newark's claims are preempted by federal law, as defendants argue. Newark does not seek to impose a specific duty to install engine immobilizers; rather, Newark argues for the inclusion of any reasonable anti-theft technology and references to immobilizers are simply illustrative of one such technology. That does not contravene federal regulations that encourage the adoption of effective anti-theft measures but do not mandate a specific technology, allowing flexibility and innovation.

Last but not least, Newark's claims are not subsumed by the New Jersey Products Liability Act (NJPLA). The NJPLA governs claims for harm caused by defective products, focusing on manufacturing defects, design defects, and failure to warn. Newark's claims, however, do not hinge on the inherent danger of the vehicles

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

but on defendants' broader conduct and its impact on public safety and municipal resources. The harms alleged by Newark are economic and regulatory, not personal injury or property damage and do not fall within traditional products liability claims.

Beyond the legal support for Newark's claims, strong public policy considerations highlight the necessity of permitting those claims to proceed. As a public body, Newark has an obligation to safeguard the welfare of its citizens, ensure the efficient use of public resources, and exercise its authority to abate nuisances and recover associated costs. The increase in vehicle thefts and resulting crime and safety concerns has necessitated additional policing, and other municipal interventions to abate the nuisance that defendants have created. Those efforts have cost the city millions of dollars in resources that could have been allocated to other critical public services such as education, healthcare, and infrastructure. Defendants must be held accountable. Their motion should be denied.

## II.   <u>FACTUAL BACKGROUND</u>

As long as automobiles have existed, there has been a need for anti-theft protection. The federal government imposed minimum theft-protection standards as early as the 1970s, noting the dangers stolen cars pose to public safety. Am. Compl. ¶¶ 37-39. Yet, millions of Hyundai and Kia vehicles manufactured between 2011 and 2022 do not contain engine immobilizers or other reasonable anti-theft technology (the "Susceptible Vehicles"). *Id.* at ¶¶ 50-56. Defendants' omission of

3

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

that technology was intentional; they included that technology in vehicles sold in Europe and Canada and in higher-end models sold in the United States. *Id.* at ¶ 53.

Defendants' deliberate business decision to forgo engine immobilizers or an equivalent, reasonable anti-theft device from the Susceptible Vehicles has led to a surge in vehicle thefts, significantly impacting public safety and municipal resources in Newark. Over 1,178 Hyundais and 723 Kias were reported stolen in just the first ten months of 2023—a more than 1000% increase from 2022. *Id.* at ¶ 3. This massive theft wave has placed a considerable strain on Newark's public safety resources, requiring the Newark Police Division to dedicate thousands of overtime hours to address this crisis, costing approximately over $1 million in 2023 alone. *Id.* at ¶¶ 5, 65. The theft epidemic has led to numerous secondary crimes and has endangered the public. Stolen Hyundai and Kia vehicles have been used in violent crimes, including shootings and robberies, further straining Newark's emergency services. *Id.* at ¶ 64. The thefts have also resulted in tragic outcomes, including high-speed chases and accidents causing injuries and deaths. *Id.* at ¶¶ 91-94. The lack of reasonable anti-theft technology in defendants' vehicles has created a public nuisance, significantly impacting public safety and municipal functions in Newark. *Id.* at ¶64.

4

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

## III.   **ARGUMENT**

To defeat a Rule 12(b)(6) motion, a plaintiff must state "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has "facial plausibility" if the plaintiff pleads facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). The court must accept "[a]ll factual allegations ... as true" and draw "all reasonable inferences ... in favor of the plaintiff." *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019) (citing *Iqbal*, 556 U.S. at 678).

As explained below, Newark has adequately pled its claims.[1]

## I.   **NEWARK ADEQUATELY PLED A CLAIM FOR COMMON LAW PUBLIC NUISANCE**

Boiled down to its essence, Newark seeks to address the substantial and unreasonable interference with public safety and municipal functions caused by defendants' conduct. That is a quintessential claim for public nuisance.

"A public nuisance is an unreasonable interference with a right common to the general public." *In re Lead Paint Litig.*, 924 A.2d 484, 496 (N.J. 2007) (quoting

---

[1] Defendants' argument that Newark has failed the federal pleading standard because it has not identified a "particular defect" (Def. Br., at 7-8) misses the mark, as that that argument is premised on *product liability* law. As explained *infra,* this is not a product liability case defendants' argument on this point and the case law cited is utterly irrelevant.

5

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

Restatement (Second) of Torts § 821B (1979)). "[I]nterference with a public right is unreasonable ... [where] the conduct involves a significant interference with the public health, the public safety, the public peace, the public comfort or the public convenience." *Ibid.* Here, Newark has alleged that the public has a right to safely use their streets, sidewalks, and businesses, and that right was invaded because of a purposeful cost-cutting business decision made by defendants. Am. Compl. ¶ 4. Such interference i constitutes an unreasonable disruption of public rights. *See, e.g.*, *Severa v. Solvay Specialty Polymers USA, LLC*, 524 F.Supp.3d 381, 393-94 (D.N.J. 2021) (holding that releasing chemicals into the municipal water supply was a significant interference with public health and safety). Defendants do not appear to contest that fact.

Instead, defendants argue that the nuisance claim fails because they "neither created nor have control over the nuisance." Def. Br. at 12. Defendants are wrong. "There is no requirement that a defendant have <u>actual</u> control over the instrumentality of the nuisance at the time and place it does harm." *City of Newark v. City of New York*, No. CV 19-20931, 2021 WL 11139488, at *6 (D.N.J. Oct. 29, 2021) (citations omitted) (emphasis added). "Contributing to a public nuisance through or with the conduct of others is sufficient for liability if the defendant knew or should have known the consequences." *James v. Arms Tech., Inc.*, 820 A.2d 27, 52 (N.J. App. Div. 2003).

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

Defendants rely extensively on *Camden County v. Beretta USA Corp.*, 123 F.Supp.2d 245 (D.N.J. 2000), *aff'd*, 273 F.3d 536 (3d Cir. 2001) in arguing that under New Jersey law, the requisite "control" element is not satisfied where defendants were merely the "designers, manufacturers, or distributers of a product that was eventually linked to an alleged public nuisance due to the acts of a third party." Def. Br. at 12. But *Camden County's* analysis – authored by a federal court exercising diversity jurisdiction – was rejected by the New Jersey Appellate Division in upholding Newark's suit against gun industry defendants alleging negligent distribution of firearms and creation of a public nuisance. *James*, 820 A.2d at 38; *Mueller v. Kean University*, 287 A.3d 796, 804 n. 4 (N.J. App. Div. 2022) (citations omitted) (stating "a federal court's decision on a question of New Jersey law is not binding on any court in [New Jersey].").

The *James* court rejected the gun manufacturer defendants' argument – the same argument defendants make here – that they are not liable for public nuisance because "they do not control the tortious conduct [of third parties] constituting the nuisance." *Id.* at 52. The court stated that "the City does not claim that defendants have control over, or the capacity to control the illegal use of the firearms." *Ibid.* Instead, it charges that defendants "created and fueled an illegal gun market, thereby unreasonably interfering with the public welfare, knowing, or having reason to know, that their conduct has a significant effect upon a public right." *Ibid.* (citing

7

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

Restatement (Second) of Torts § 821B). "The 'instrumentality' defendants 'control' is the creation and supply of this illegal market." *Ibid.*

The *James* decision is on all-fours with this case. Just as gun manufacturers could be liable absent direct "control" over the illegal use of firearms so could defendants be liable absent direct "control" over third-party thieves. Defendants' failure to install anti-theft technology in their vehicles, which are present in virtually all other manufacturers' vehicles—and present in defendants' own vehicles sold in other markets, including Canada and Europe (Am. Compl. ¶ 53), rendered them at a substantially greater risk of being stolen. The critical factor here, as it was in *James,* is not actual control over third parties' actions but defendants' role in creating the conditions that led to the nuisance. *See James*, 820 A.2d at 52-53; *see also, Severa*, 524 F. Supp. at 394 (rejecting defendants' argument that they did not "control" the nuisance because National Park decided where to draw groundwater and how to treat it for drinking water; the nuisance was the chemicals discharged into the environment by defendants that ended up in the water supply over which defendants had control).

The New Jersey Supreme Court's decision in *In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007) does not alter the analysis. There, municipalities and counties sought to recover from manufacturers and distributors of lead paints the cost of detecting and removing lead paint from buildings, and of providing medical care to residents

8

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

affected with lead poisoning. The New Jersey Supreme Court concluded that plaintiffs did not state a public nuisance claim because the conduct that gave rise to the nuisance was the poor maintenance of premises by the owners and not the conduct of merely offering an everyday household product for sale. 924 A.2d at 501.

Significantly, in *Lead Paint* the lead-based paint did not become a nuisance until after it was manufactured, purchased, used, and allowed to deteriorate in buildings on private properties to which lead paint manufacturers had no access or power to affect change. In other words, plaintiffs' claims were deemed too remote from the conduct that caused harm. Here, by contrast, defendants have the ability to abate the nuisance on their own accord – thereby maintaining "control" over the nuisance in the same way the gun manufacturer defendants in *James* did.

In Newark's case, the harm – vehicle thefts and the resulting safety ramifications and expenditure of municipal resources – is a direct and foreseeable consequence of defendants' intentional decision not to include reasonable anti-theft devices in their vehicles. Indeed, in declining to dismiss the GE plaintiffs' nuisance claims – predicated upon the same conduct as Newark's claims, this Court held that "[t]heft is the very foreseeable conduct that *anti-theft devices* specifically protect against." Doc. No. 270, p.10. The nuisance claim is adequately pled.

9

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

## II.   NEWARK HAS STATED A CLAIM FOR UNJUST ENRICHMENT

Newark's claim for unjust enrichment is well-founded. Defendants received a financial benefit while Newark was burdened with increased costs for public safety and municipal resources; defendants' tortious conduct caused significant financial harm to the city, creating an expectation of remuneration.

To prove a claim for unjust enrichment, a party must demonstrate that the opposing party "received a benefit and that retention of that benefit without payment would be unjust." *Iliadis v. Wal–Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (citations omitted). Plaintiff should show that it expected, or would have expected, payment from the defendant when the benefit was conferred. *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334 (N.J. 1966). Newark has met that standard. It pled that defendants received a financial benefit by saving costs on reasonable anti-theft technology that they chose not to include in their vehicles. Am. Compl. ¶ 128. That omission led to increased vehicle thefts, placing a significant financial burden on Newark, as the city had to allocate resources to address the resulting public safety issues. *Id.* at ¶ 130. Defendants' failure to provide the technology unjustly enriched them, while Newark bore costs in the form of increased policing and other municipal expenditures for which it expected remuneration. Retention of the benefit by defendants without compensating Newark states a claim for unjust enrichment.

10

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

Defendants argue that they have no "independent duty" to pay Newark's costs, and there was no "direct relationship" between the parties. The law is not so black and white. Only one New Jersey case mentions the term "independent duty," *In re Lead Paint Litig.*, 2005 WL 1994172, at *16 (N.J. Super. Ct. App. Div. Aug. 17, 2005),[2] and that reference stems from an Illinois case interpreting a claim for restitution under Section 115 of the Restatement. *Bd. of Educ. of City of Chicago v. A, C & S, Inc.*, 546 N.E.2d 580, 598 (Ill. 1989). But there is no evidence that New Jersey has adopted that Restatement Section nor has the term "independent duty" ever been cited outside of *Lead Paint*. It can hardly be said that is the law.

Defendants further argue that a "direct relationship" between Newark and defendants is required to state a claim, and rely on *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 335 (App. Div. 1966), where the court stated, "quasi-contract [unjust enrichment] cases involve either some direct relationship between the parties or a mistake on the part of the person conferring the benefit." That statement, however, is not a bright line rule. The notion that "some direct relationship" exist between the parties is "simply meant to preclude a plaintiff from seeking recovery from a defendant whose involvement is too far removed or too attenuated from the facts and circumstances giving rise to the plaintiff's claim." *Stewart v. Beam Glob.*

---

[22] That decision was reversed by the Supreme Court, but the issue of unjust enrichment was not the subject of the appeal.

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

*Spirits & Wine, Inc.*, 877 F. Supp. 2d 192, 200 (D.N.J. 2012) (holding that defendants engaging in false marketing campaigns designed to deceive consumers were not innocent third parties; they had sufficiently "direct relationship" with consumers); *DeFrank v. Samsung Elecs. Am., Inc.*, 2020 WL 6269277, at *25 (D.N.J. Oct. 26, 2020) (permitting unjust enrichment claim against manufacturer engaged in a false marketing campaign); *Julian v. TTE Tech., Inc.*, 2020 WL 6743912, at *7 (N.D. Cal. Nov. 17, 2020) (declining to dismiss unjust enrichment claim under New Jersey law even though "Plaintiffs did not directly purchase their televisions from defendant," noting "the critical issue is whether defendant can plausibly be deemed a wrongdoer").

The same logic applies here. By omitting standard anti-theft technology, defendants not only saved costs but created a foreseeable public safety issue that required Newark to allocate municipal resources to address. Defendants' tortious conduct that caused financial harm to Newark triggered an expectation of remuneration. That conduct should be treated the same way as manufacturers' false advertising conduct in the above cases. Unjust enrichment is grounded in equity; it is inequitable for defendants to retain the financial benefits gained by cost-cutting measures while Newark bears the cost.

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

III.   **<u>NEWARK CAN MAINTAIN ITS CONSUMER FRAUD CLAIM</u>**

Newark's Consumer Fraud Act (CFA) claim is grounded in the defendants' unlawful conduct and its resulting devastating harm to the city. Acting in an enforcement capacity for the public benefit, Newark brings these claims to protect against defendants' deceptive practices that have led to substantial financial repercussions.

The New Jersey Consumer Fraud Act, N.J.S.A 56:8-1 to -20 ("CFA"), is intended to be "one of the strongest consumer protection laws in the nation." *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15 (1994) (quoting *Governor's Press Release for Assembly Bill No. 2402,* at 1 (Apr. 19, 1971)). The statute establishes "a broad business ethic" applied "to balance the interests of the consumer public and those of the sellers." *Kugler v. Romain*, 58 N.J. 522, 543-44 (1971). Contrary to defendants' argument, no showing of reliance is necessary; CFA claims require only a showing of: (1) unlawful conduct by defendant, (2) an ascertainable loss by plaintiff, and (3) a causal relationship between the unlawful conduct and the ascertainable loss. *D'Agostino v. Maldonado*, 216 N.J. 168, 184 (2013) (quoting *Bosland v. Warnock Dodge, Inc.*, 197 N.J. 543, 557 (2009)).

Unlawful conduct under the CFA includes "any commercial practice that is unconscionable or abusive, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any

No. 8:22-ML-03052-JVS-KES

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

material fact with intent that others rely upon [it]." N.J.S.A. 56:8-2. Proof of any one

of those acts or omissions suffices to establish unlawful conduct. *Cox*, 138 N.J. at

19. "An ascertainable loss under the CFA is one that is 'quantifiable or measurable,'

not 'hypothetical or illusory.'" *D'Agostino*, 216 N.J. at 185 (quoting *Thiedemann v.

Mercedes–Benz USA, L.L.C.*, 183 N.J. 234, 248 (2005)).

 Newark has pled a claim under the CFA. It has alleged that defendants have

committed an unconscionable act by failing to install anti-theft technology

comparable to conventional industry standards and have intentionally concealed that

fact from the public, resulting in an explosion of thefts and secondary crimes

experienced by Newark. Am. Compl. ¶¶ 139-43. To the extent defendants rely on a

heightened pleading standard for fraud claims, courts have held that imposing strict

pleading requirements to consumer protection enforcement cases is inconsistent with

the remedial objectives of these laws. *See State ex rel. Brady v. Publishers Clearing

House*, 787 A.2d 111, 117 (Del. Ch. 2001) (finding CFA enforcement action brought

by the Attorney General to protect the consuming public not subject to Rule 9(b));

*Fed. Trade Comm'n v. Affiliate Strategies, Inc.*, No. 09-4104-JAR-KGS, 2010 WL

11470099, at *10 (D. Kan. June 4, 2010) ("this Court declines to impose upon the

Attorney General the obligation of pleading 'who, what, where, and when' when he

or she brings a claim to protect the public interest").

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

Newark is acting in the same capacity as an attorney general in an enforcement action under a state statute to protect consumers. Rule 9(b)'s heightened pleading standards should not apply to Newark's nuisance-based claims. But even under heightened pleading of Rule 9(b), the Amended Complaint contains sufficient information to notify defendants of the nature of allegations against them. *Magdaleno v. Indymac Bancorp, Inc.*, 853 F. Supp. 2d 983, 993 (E.D. Cal. 2011) ("The purpose of FRCP 9(b) is to ensure that defendants accused of the conduct specified have adequate notice of what they are alleged to have done, so that they may defend against the accusations."). If the Court deems Newark's fraud claims are not pled with the requisite particularity required, Newark could amend its complaint to add more specific detail.

## IV.    NEWARK CAN INVOKE NEWARK MUNICIPAL CODE § 16:15

Courts "delicately exercise[]" their power to declare a statute or municipal ordinance unconstitutional. *Harvey v. Board of Chosen Freeholders of Essex County*, 153 A.2d 10, 14 (N.J. 1959). A municipal ordinance is "cloaked with a strong presumption of constitutionality." *Sea Isle City v. Caterina*, 303 A.2d 351, 354 (Cape May County Ct. 1973). To invalidate an ordinance, it must be shown to be unconstitutional beyond a reasonable doubt. *State v. Ulesky*, 241 A.2d 671, 675 (Monmouth County Ct. 1968), *rev'd on other grounds* 252 A.2d 720 (N.J. 1969).

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

Defendants argue that Newark's municipal code – which defines nuisance to include "[a]ny matter, thing, condition or act" which may be "detrimental or a menace to the health of the inhabitants" (§ 16:15-1(a)(14)) or that "may become an annoyance, or interfere with the comfort or general well-being of the inhabitants" (§16:15-1(a)(15)) – is unconstitutionally vague.[3] This argument is unavailing.

---

[3] Defendants rely on two cases where New Jersey courts struck down statutes containing references to "[a]ny matter, thing, condition or act" for lack of sufficient definiteness. Those cases, however, are different. In *Guidi v. City of Atlantic City*, 286 N.J. Super. 243 (App. Div. 1996), the alleged nuisance was the "[f]eeding of birds resulting in heavy accumulations of bird feces on building roof tops and vehicles." *Id.* at 244. The court stated simply: "Pigeons are a common enough problem for a municipality to address." *Id.* at 247. It thus concluded that this behavior "should be specifically prohibited by ordinance" and reliance on a broad statute should not be necessary.

Similarly, *State v. Golin*, 363 N.J. Super. 474, 478 (App. Div. 2003) involved a property owner whose grass and trees were overgrown, and whose tree branches obstructed a public sidewalk in front of her home. The court found the ordinance overbroad. 363 N.J. Super. at 484. The court repeated, "[T]here is no reason that the municipality cannot enact a more specific ordinance to proscribe the objectionable conduct. Sidewalks and tree branches are at least as common in East Windsor as pigeons are in Atlantic City." *Ibid.*

Those cases are inapposite here. The nuisance here is not as commonplace as overgrown trees or pigeons. An explosion of car thefts due to a lack of reasonable anti-theft technology is not the sort of problem that a municipality could have anticipated and legislated against. Nor is there a concern about discriminatory enforcement that the court in *Guidi* was concerned about. There are not dozens of car manufacturers committing the same offense to selectively prosecute, distinguishing defendant's conduct from that of pigeon-feeders and property owners with overhanging trees.

16

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

New Jersey courts have upheld similar statutes using a reasonableness analysis. For example, in *State v. Burkert*, 174 A.3d 987 (N.J. 2017), the New Jersey Supreme Court upheld a criminal harassment statute that is as "vague" as the ordinance defendants complain about. That statute defines harassment to include "any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4. Rather than striking down the statute, the high court narrowed the terms to make it consistent with its intent to prohibit communications that "put that person in fear for his safety or security or that intolerably interfere with that person's reasonable expectation of privacy," despite much of that language being absent from the statute itself. *Burkert*, 174 A.3d 1002.

Similarly, the New Jersey Appellate Division has upheld noise ordinances despite their apparent vagueness. In *State v. Clarksburg Inn*, 868 A.2d 1120 (N.J. App. Div. 2005), the statute prohibited "loud, unnecessary or unusual noise" or any noise that is "likely to annoy, disturb, [or] injure" the comfort or peace of others. The court rejected defendants' argument that those terms were subjective and reasoned that nuisance arises from unreasonable amounts of noise, and that the reasonableness of such noise depends on the conditions of the locality and needs of the maker when balanced against the needs of the listener. *Id.* at 1127. The court stated it "should not give undue emphasis to the presence or absence of a single

17

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

word. The ordinance should be examined in the context of the entirety of its language giving due deference to the title and its overall intent." *Id.* at 635 (quotations omitted).

Here, the same flexibility should apply, and the nuisance statute similarly read in the context of Newark's compelling need to protect its citizens from unexpected nuisances like the one defendants created. That need justifies the language used in the statute.[4]

## V.     **THE NJPLA DOES NOT SUBSUME NEWARK'S CLAIMS**

Defendants' contention that the NJPLA subsumes Newark's claims is without merit. Not all claims involving products fall under product liability law. The NJPLA addresses claims for physical harm caused by defective products; Newark's claims go beyond product liability and focus on the broader impact of defendants' conduct on public safety and municipal operations. Newark's claims are not subsumed.

The NJPLA defines "product liability action" as "any claim or action brought by a claimant for harm caused by a product, irrespective of the theory underlying the claim, except actions for harm caused by breach of an express warranty." N.J.S.A. § 2A:58C-1(b)(3). "To determine whether the NJPLA subsumes a particular claim, the

---

[4] As a practical m atter, the constitutionality of a New Jersey local ordinance is best determined by a New Jersey court, rather than asking a federal court to declare a local ordinance unconstitutional at the motion to dismiss stage.

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

court must ascertain the type of harm that a plaintiff is alleging. . . . That is, courts do not simply determine whether or not the victim's injury was literally caused by a product, but rather, courts tend to look at the essence of the claims and decide whether or not the plaintiff is disguising what would traditionally be considered a products liability claim as an alternative cause of action." *Hindermyer v. B. Braun Med. Inc.*, 419 F. Supp. 3d 809, 818 (D.N.J. 2019) (quotations omitted). In explaining the "essential nature" of a claim, the New Jersey Supreme Court stated it is best understood as "whether the claim is based upon a product's manufacturing, warning, or design defect and therefore covered by the [NJ]PLA." *Sun Chemical Corporation v. Fike Corp.*, 235 A.3d 145, 156 (N.J. 2020) (holding CFA claim alleging affirmative misrepresentations was not subsumed by the PLA).

The NJPLA contains a specific definition of "harm," which includes, among other harms not relevant here, "physical damage to property, other than to the product itself" or "personal physical illness, injury or death." N.J.S.A 2A:58C-1(b)(2). The injury portion of the definition is deemed to require "physical injury." *Sinclair v. Merck & Co.*, 948 A.2d 587, 595 (N.J. 2008) ("[W]e read the injury portion of the definition to require 'personal physical' injury, just like there must be a 'personal physical' illness and 'personal physical' death"). As such, the NJPLA subsumes claims that a defective product caused harm "but only as a 'claim' or 'harm' is defined in the PLA"). *Volin v. Gen. Elec. Co.*, 189 F. Supp. 3d 411, 418

19

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

(D.N.J. 2016), as amended (May 31, 2016) (finding CFA, implied warranty, and unjust enrichment counts and "harm" alleged not to fall under the PLA); *see also*, *Hindermyer*, 419 F. Supp. 3d at 821 ("'[t]he essential question is whether plaintiffs' effort to recover . . . damages is limited by the definition of 'harm' in the PLA'. . . .") (alterations in original) (quoting *Sinclair*, 948 A.2d at 594)). As one court noted:

> Taken literally, the language of the PLA is broad—so broad in fact, that a literal reading must be discarded. For example, whenever somebody commits a battery with a commercially-made object, the victim suffers "harm caused by a product," but nobody maintains that the PLA has subsumed the tort of battery.
>
> [*New Hope Pipe Liners, LLC v. Composites One, LCC*, No. CIV. 09–3222, 2009 WL 4282644, at *2 (D.N.J. Nov. 30, 2009).]

Thus, when the "essential nature" of the claim is not that of a PLA claim, "the plaintiff may maintain a separate cause of action." *Ibid.* The point is that not all claims involving products are subsumed into the PLA – only the three codified in the statute (defective manufacture, failure to warn, and defective design); and those claims must trigger the type of "harm" contemplated by the NJPLA – physical bodily injury or property damages. N.J.S.A § 2A:58C-1(b)(2). Defendants' own cases illustrate that principle.

For example, defendants' primary case, *Lead Paint*, 924 A.2d 484, concerned a "failure to warn" claim, which the New Jersey Supreme Court found to fall

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

"squarely within the theories included in the PLA." *Id.* at 503. That case also involved physical bodily injuries – i.e., poisoning from the inhalation of paint dust containing lead, and property damage – thereby falling under the NJPLA's definition of "harm." *Ibid.* Defendants' other cases fare no better. *Roncal v. Aurobindo Pharma USA, Inc.*, No. 3:20-CV-02643, 2022 WL 1237888, at *1 (D.N.J. Apr. 27, 2022), concerned claims for products liability, manufacturing defect, and failure to warn resulting from injuries sustained due to a drug used to treat atrial fibrillation. *Medford v. Eon Labs, Inc.*, No. CV 20-00412, 2021 WL 5204035, at *1 (D.N.J. Nov. 9, 2021), similarly concerned physical injuries or death resulting from ingestion of the same atrial fibrillation drug over a "failure to warn" claim. *Behrens v. Amazon.com, Inc.*, 2023 WL 5985287, at *1 (D.N.J. Sept. 14, 2023) involved "severe and permanent" physical injuries sustained following the use of Cottonelle Fresh Feel Flushable Wet Wipes for Adults. In *Arlandson v. Hartz Mountain Corp.*, 792 F. Supp. 2d 691, 695-96 (D.N.J. 2011), purchasers of flea and tick control products brought a class action against manufacturers alleging that the products were unsafe because they sickened or killed their pets. *Bailey v. Wyeth, Inc.*, 37 A.3d 549, 569, 581 (Law. Div. 2008) concerned a plaintiff who contracted breast cancer after being treated with hormone replacement therapy drugs and sued under a "failure to warn" theory.

21

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

The cases defendants cite are all factually distinguishable. The "essence" of Newark's claims is not grounded in a manufacturing defect or failure to warn, despite defendants' cherry-picked phrases of the Amended Complaint that mentions those terms. This is, at its core, an action by a municipality to abate a nuisance alleging that "Defendants intentionally and unreasonably chose not to equip the Susceptible Vehicles with reasonable anti-theft technology" and [i]f not for defendants' intentional and unreasonable conduct, vehicle theft in Newark would not have become so widespread, and the enormous public safety issues that now exist would have been averted." Am. Compl. ¶ 94.

In that regard, this case falls squarely within *James*, which rejected the argument made by amici, who asserted that allegations of defendants creating and fueling an illegal gun market was a products liability claim disguised as nuisance claim that is subsumed by the NJPLA. 820 A.2d at 49. The Appellate Division disagreed, holding that the claims "do not focus on the design defects of defendants' product or defendants' failure to warn of its dangerous propensities…[but] are predicated on defendants' *conduct;* their purposeful or negligent 'feeding' of their product to an illegal gun market." *Id.* at 50 (emphasis in original).

The same rationale applies here. Despite mention of "manufacturing" unsafe vehicles, the "essence" of Newark's nuisance claim is premised upon defendants' creation of "the conditions necessary for a secondary market of unsafe and stolen

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

vehicles." Am. Comp., at ¶ 83. That rationale also extends to the claim alleging violation of Newark Municipal Public Nuisance Code, NMC 16:15-4. Am. Compl. ¶ 147. In other words, the nuisance claims are predicated upon "defendants' *conduct*" as in *James*. 820 A.2d at 50. Newark's remaining claims are also not grounded in products liability. Its fraud claims are predicated upon defendants' misrepresentations about their vehicles (Am. Compl. ¶¶ 121-25, 141-43); and the unjust enrichment claim is premised upon defendants' profits from the cost-savings in failing to equip their vehicles with anti-theft measures at Newark's expense (*id.* at ¶¶ 128-33).[5] Thus, the "essence" of Newark's claims is not grounded in products liability principles.

Moreover, whereas traditional product liability cases seek recovery for physical injuries or property damages – i.e., statutory definitions of "harm," Newark's claims seek recovery of economic losses and abatement and do not hinge on the inherent danger of the vehicles manufactured. The "harm" in Newark's case is not bodily injury or property damage as contemplated by the statute, but a widespread disruption of public safety and municipal operations. *See, e.g.*, *James*,

---

[5] Newark also stated a claim for negligence (Count II), which defendants did not move to dismiss. That count also focuses on defendants' *conduct* (Am. Compl. ¶¶ 107; 116), and is therefore, not subsumed.

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

820 A.2d at 41 (noting "the City's entire claim is bottomed on the cost of governmental services. Those costs are entirely distinct from the medical expenses incurred in the treatment of the victims of gun violence."). This distinction is critical because the PLA is designed to address claims of harm directly caused by products themselves, not the broader impacts of a manufacturer's failure to implement preventive measures. The claims here do not sound in products liability and are not subsumed.

## VI.   NEWARK'S CLAIMS ARE NOT PREEMPTED BY FEDERAL LAW

Newark's claims are not preempted by federal law because they do not conflict with any federal statutes or regulations. The Motor Vehicle Safety Act (Safety Act) expressly allows for state remedies to supplement federal requirements, and Newark's claims fit within that framework.

The party arguing preemption must clearly state what they contend is preempted and the basis for it. *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1195 (C.D. Cal. 2010) (Defendant failed to identify "specific claims asserted by Plaintiffs that are preempted by the Safety Act"). "Preemption may be express or implied." *Gonzalez v. Ideal Tile Importing Co.*, 877 A.2d 1247, 1249 (N.J. 2005). Express preemption requires "explicit preemptive language." *Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 203 (1983). The Safety Act does not

24

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

contain such "explicit preemptive language." *Ibid.* Indeed, the Safety Act "expressly provides that rights and remedies . . . are supplemental to rights and remedies provided by State law." *In re Toyota*, 754 F. Supp. 2d at 1195 (citing 49 U.S. § 30103(d)). Thus, neither the Safety Act nor FMVSS 114 expressly preempt Newark's claims.

Absent express preemption, state law impliedly yields to federal law in two situations: (1) "[w]hen Congress intends federal law to 'occupy the field'" and (2) where state law "conflict[s] with a federal statute." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000). There are thus 2 kinds of implied preemption: field preemption and conflict preemption. Neither apply here.

As to field preemption, courts must first determine whether a presumption against preemption applies, depending on the regulatory field. Here, because the regulatory field in question involves motor vehicle safety, the presumption against preemption applies. *See Chamberlan v. Ford Motor Co.*, 314 F. Supp. 2d 953, 958 (N.D. Cal. 2004) (field of motor vehicle safety is "an area of traditional State police power"). Given that presumption, defendants must show that "it was Congress' 'clear and manifest' intent to preempt" Newark's claims. *In re Toyota*, 754 F. Supp. 2d at 1197 (quoting *Chamberlan*, 314 F. Supp. 2d at 962). Defendants fail to meet that burden.

25

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

Field preemption applies where a federal regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 (1982). There is no evidence – and defendants cite none – that Congress intended to "occupy the field." Indeed, courts have held the opposite. *Lassen v. Nissan N. Am., Inc.*, 211 F. Supp. 3d 1267, 1276 (C.D. Cal. 2016) (rejecting automakers' assertion that "federal law has occupied the entire field of vehicle safety regulation such that field preemption applies."); *Chamberlan*, 314 F. Supp. 2d at 960 ("Congress did not intend the [Safety Act] to be a pervasive scheme, but rather intentionally left certain areas of safety regulation to the States."); *Harris v. Great Dane Trailers, Inc.*, 234 F.3d 398, 400 (8th Cir. 2020) (same).

Conflict preemption arises when the conflicts between state and federal law (1) "make it 'impossible' for private parties to comply with both state and federal law" or (2) "prevent or frustrate the accomplishment of a federal objective." *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 873 (2000). A court should be convinced that compliance with both federal and state law is "impossible" before concluding that state law is preempted. *See Gov't of U.S. Virgin Islands v. Takata Corp.*, 67 V.I. 316, 434 (V.I. Super. Ct. 2017). That is not the case here.

Newark does not seek to impose a duty on defendants to install engine immobilizers specifically, as defendants allege. The term "immobilizers" is used

26

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

throughout the Amended Complaint in an exemplary fashion only – i.e., defendants' failure to install "anti-theft measures, **such as** engine immobilizers." Am. Compl. ¶¶ 1, 46, 51, 54, 93, 111) (emphasis added). The natural construction of the phrase "such as" is that engine immobilizers are just an example of the more general "reasonable anti-theft technology." *See, e.g.*, *Lemelson Med., Educ. & Rsch. Found., Ltd. P'ship v. Intel Corp.*, No CIV.98-01413PHX(HRH), 2002 WL 453212, at *4 (D. Ariz. Feb. 26, 2002) (noting "the phrase 'such as' commonly indicates that what is to follow is an example," and "in no way limits" the meaning); *Mauerhan v. Principi*, 16 Vet. App. 436, 442 (2002) (explaining that "'such as' means 'for example' or 'like or similar to'" (quoting Webster's New World Dictionary 1337 (3d coll. ed. 1988)), and, therefore, "[t]he use of the term 'such as' demonstrates that the symptoms after that phrase are not intended to constitute an exhaustive list, but rather are to serve as examples. . . .").

In other instances, the term "immobilizers" is supplemented by the phrase "**or** other reasonable anti-theft technology." Am. Compl. ¶¶ 2, 50, 79, 83, 84). Once again, the construction of that phrase, and in particular, the use of the word "or" indicates that the sentence must be read in the disjunctive and that an immobilizer is simply one alternative. *See, e.g.*, *Loughrin v. United States*, 573 U.S. 351, 357 (2014) (stating the "ordinary use  [of the term 'or'] is almost always disjunctive, that is, the words it connects are to be given separate meanings."); *Acosta v. City of Costa Mesa*,

27

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

718 F.3d 800, 815 (9th Cir. 2013) (stating that the term "or" has a disjunctive meaning; "the function of the word 'or' is to mark an alternative such as either this or that."); *State v. N.T.*, 223 A.3d 206, 210 (N.J. Super. App. Div. 2019) (interpreting the word "or" "a disjunctive particle indicating an alternative.").

Newark's Amended Complaint speaks broadly about anti-theft technology and uses immobilizers as just one example of such technologies, leaving room for "any technology meeting the performance requirements of FMVSS 114" (Def. Br. at 6) to be employed. In that regard, Newark's Complaint is not the same as Chicago's that the Court dismissed (which was replete with specific references to only immobilizers), and leaves defendants a choice to forgo immobilizers in favor of any other reasonable anti-theft technology. As such, it does not conflict with the "flexibility" and "innovation" that drives the NHTSA's theft prevention regulation. *Id.* at 7 (citing *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 330 (2011)).

## IV.   **<u>CONCLUSION</u>**

The claims in Newark's Amended Complaint are well-pled. In addition to legal grounds supporting Newark's claims, compelling public policy considerations underscore the necessity of permitting the claims to proceed and holding defendants accountable. As a public body, Newark has a duty to protect the welfare of its citizens and ensure the efficient use of public resources, as well as the power to abate nuisances and recover costs for such abatement. *See, e.g.*, *Kirsch Holding Co. v.*

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

*Borough of Manasquan*, 93 A.2d 582, 587 (N.J. App. Div. 1952) (recognizing that "[t]he purpose of the exercise by a municipality of the police powers granted it by the Legislature is the abatement of nuisances, the protection of the health, safety and welfare of its inhabitants. . . ."); *City of Paterson v. Fargo Realty Inc.*, 415 A.2d 1210, 1215 (D.N.J. 1980) ("a municipality is entitled to recoup the entire cost it incurs in abating the nuisance.").

Defendants' deliberate decision to exclude adequate anti-theft technology from their vehicles has forced the city to divert significant tax dollars toward addressing the resultant surge in vehicle thefts, thereby imposing an undue financial burden on taxpayers. As a public body tasked with protecting its citizens, Newark must address this nuisance on behalf of its residents. The wide-reaching implications for public safety and municipal governance here necessitates permitting these claims to proceed. For the reasons set forth above, the Court should deny defendants' motion.

OPP. TO DEFS.' MOT. TO DISMISS NEWARK'S FAC

RESPECTFULLY SUBMITTED this 15th day of July, 2024.

| CITY OF NEWARK | PASHMAN STEIN WADER HAYDEN, PC |
|---|---|
| By */s/ Kenyatta K. Stewart* | By */s/ Raymond M. Brown* |
| Kenyatta K. Stewart | Raymond M. Brown (*pro hac vice*) |
| Corporation Counsel | Janie Byalik (*pro hac vice*) |
| City of Newark Law Department | 21 Main Street, Suite 200 |
| 920 Broad Street, Room 316 | Hackensack, NJ 07601 |
| Newark, NJ 07102 | Telephone: (201) 488-8200 |
| Telephone: (973) 733-6560 | Fax: (201) 488-5556 |
| Fax: (440) 204-2257 | rbrown@pashmanstein.com |
| stewartk@ci.newark.nj.us | jbyalik@pashmanstein.com |
| | *Counsel for Plaintiff City of Newark* |

30

OPP. TO DEFS.' MOT.
TO DISMISS NEWARK'S FAC

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

3

The undersigned, counsel of record for Plaintiff City of Newark, certifies that this

4

brief contains 6,876 words, which complies with the word limit of L.R. 11-6.1.

5

6

7  July 15, 2024                                    *By /s/ Raymond M. Brown*
                                                     Raymond M. Brown (pro hac vice)
8                                                    Janie Byalik (pro hac vice)
                                                     21 Main Street, Suite 200
9                                                    Hackensack, NJ 07601
                                                     Telephone: (201) 488-8200
10                                                   Fax: (201) 488-5556
                                                     rbrown@pashmanstein.com
11                                                   jbyalik@pashmanstein.com
                                                     Counsel for Plaintiff City of
12                                                   Newark

13

14

15

16

17

18

19

20

21

22

23

1

OPP. TO DEFS.' MOT.
                                                              TO DISMISS NEWARK'S FAC