QUINN EMANUEL URQUHART & SULLIVAN LLP
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br><br>This Document Relates to:<br><br>*City of Lorain, Ohio v. Hyundai Motor Company, Hyundai Motor America, Kia Corporation, and Kia America, Inc.,*<br>Case No. 8:23-cv-02083 | Case No. 8:22-ML-3052-JVS-(KESx)<br><br>The Honorable James V. Selna<br><br>**DEFENDANTS' REPLY MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF CITY OF LORAIN, OHIO'S FIRST AMENDED COMPLAINT**<br><br>Hearing Date:  August 12, 2024<br>Hearing Time: 1:30 PM |

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ...................................................................1

ARGUMENT ...........................................................................................2

I.     PLAINTIFF'S CLAIMS ARE PREEMPTED...................................2

     A.     Plaintiff's Invocation Of "Other Reasonable Anti-Theft Technology" Does Not Shield Its Claims From Preemption ................2

     B.     Plaintiff's Attempt To Skirt Preemption—By Misstating Both Its Claims And The Law—Should Be Rejected ....................................2

     C.     Plaintiff's Assertion That Its Pleading Failures Can Be Ignored Because Its Claims Do Not Conflict With Federal Law Is Meritless ....................................................................................5

II.     AS EVERY OHIO COURT TO CONSIDER THE ISSUE HAS CONCLUDED, PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW DUE TO THIRD-PARTY INTERVENING ACTS ...........................5

     A.     Plaintiff's Suggestion That Causation Cannot Be Decided On The Pleadings Is Contrary To Ohio Law ................................................5

     B.     Plaintiff's Attempt To Distinguish Ohio Court Orders Dismissing Complaints Against These Defendants Arising From Virtually Identical Facts Is Meritless....................................................7

     C.     Plaintiff's Suggestion That A Different Causal Standard Should Be Applied To Its Claims Is Wrong And Irrelevant Because Its Claims Fail Under Its Proposed (Lower) Standard ..............................9

III.     THERE IS NO DUTY TO PROTECT AGAINST THIRD-PARTY CRIMINAL ACTS ..............................................................11

     A.     Plaintiff Cannot Dispute That It Has Not Alleged A Special Relationship That Would Create A Duty To Protect Against Third-Party Criminal Conduct Or Sustain A Duty Based On Defendants' Failure To Act....................................................11

     B.     Plaintiff's Attempts To Repackage Its Claims As Not Relying On Third-Party Acts Or As Based On Defendants' Affirmative Malfeasance Are Unsuccessful ....................................................12

     C.     Plaintiff's Reliance On The Court's Previous Decision And Attempts To Distinguish Defendants' Authorities Are Unconvincing....................................................15

IV.     PLAINTIFF'S ABSOLUTE PUBLIC NUISANCE CLAIMS FAIL TO PLEAD INTENTIONALITY ....................................................17

V.    THE    OHIO    PRODUCT    LIABILITY    ACT    ABROGATES
      PLAINTIFF'S PUBLIC NUISANCE CLAIMS..............................................19

CONCLUSION ..................................................................................................21

## TABLE OF AUTHORITIES

**Page**

### Cases

*Angerman v. Burick,*
   2003 WL 1524505 (Ohio Ct. App. Mar. 26, 2003)..............................................17

*Estate of Ciotto v. Hinkle,*
   145 N.E.3d 1013 (Ohio Ct. App. 2019)....................................... 12, 14, 16

*Cincinnati v. Beretta U.S.A. Corp.,*
   768 N.E.2d 1136 (Ohio 2002)........................... 4, 13, 14, 17, 19, 20

*City of Boston v. Smith & Wesson Corp.,*
   2000 WL 1473568 (Sup. Ct. Mass. July 13, 2000)..........................................13

*City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.,*
   863 F.3d 474 (6th Cir. 2017)..........................................................10

*City of Cleveland v. Ameriquest Mort. Securities, Inc.,*
   615 F.3d 496 (6th Cir. 2010)...................................................... 10, 14

*Cleveland v. JP Morgan Chase Bank, N.A.,*
   2013 WL 1183332 (Ohio Ct. App. Mar. 21, 2013)..................................... 10, 14

*Fox v. Kia Am., Inc.,*
   2024 WL 1328730 (N.D. Ohio Mar. 28, 2024) ......................... 6, 7, 8, 9, 10, 16

*Frenzel v. Aliphcom,*
   76 F. Supp. 3d 999 (N.D. Cal. 2014)...............................................15

*Hatter v. Dryer,*
   154 F. Supp. 3d 940 (C.D. Cal. 2015) .............................................14

*Inskeep v. Columbus Zoological Park Ass'n,*
   207 N.E.3d 876 (Ohio Ct. App. 2023)........................................... 11, 16

*In re Kia and Hyundai Vehicle Theft Litig.,*
   2024 WL 1135736 (C.D. Cal. Jan. 29, 2024) ........................................9

*Lagowski v. Shelly & Sands, Inc.,*
   38 N.E.3d 456 (Ohio Ct. App. 2015)...............................................7

*Moshi v. Kia Am., Inc.*,
    2024 WL 3178689 (S.D. Ohio June 26, 2024) .................................. 6, 8, 10, 16

*In re Nat'l Prescription Opiate Litig.*,
    406 F. Supp. 3d 672 (N.D. Ohio 2019) ..................................................... 18, 19

*In re Nat'l Prescription Opiate Litig.*,
    589 F. Supp. 3d 790 (N.D. Ohio 2022) ............................................................. 4

*Nottke v. Norfolk S. Ry. Co.*,
    264 F. Supp. 3d 859 (N.D. Ohio 2017) .......................................................... 17

*Pendrey v. Barnes*,
    479 N.E.2d 283 (Ohio 1985)........................................ 7, 8, 9, 10, 11, 15

*Richards v. Stanley*,
    271 P.2d 23 (Cal. 1954) ................................................................................. 12

*Ross v. Nutt*,
    203 N.E.2d 118 (Ohio 1964) ...................................................... 7, 8, 10, 15

*Simpson v. Big Bear Stores Co.*,
    652 N.E.2d 702 (Ohio 1995) ......................................................................... 16

*Strench v. Hyundai Motor Am. Corp.*,
    2024 WL 3178681 (S.D. Ohio June 26, 2024) .............................. 6, 8, 10, 16

*Taylor v. City of Cincinnati*,
    55 N.E.2d 724 (Ohio 1944)........................................................................... 19

*Tilton v. Austintown Motors, Inc.*,
    1997 WL 816526 (Ohio Ct. App. Dec. 30, 1997).................................. 6, 8, 10

*Trumbull County v. Purdue Pharma, L.P.*,
    Case No 2023-1155 ....................................................................................... 19

*York v. Ohio State Hwy. Patrol*,
    573 N.E.2d 1063 (Ohio 1991).......................................................................... 4

## Statutes

Ohio Product Liability Act.............................................................................. 1, 19

## Other Authorities

33 Fed. Reg. 6471, 6472 ........................................................................................ 5

*Judge Pamela A. Barker Sworn In*, UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO, June 19, 2019,
https://www.ohnd.uscourts.gov/news/judge-pamela-barker-sworn....................7

Restatement (Second) of Torts Section 324A (Am. L. Instit. 1965) ......................15

Case No. 8:22-ML-3052-JVS-(KESx)
REPLY IN SUPPORT OF MOTION TO DISMISS FAC

## **PRELIMINARY STATEMENT**

Plaintiff City of Lorain's Opposition ignores critical arguments and mischaracterizes the claims, defenses, and relevant case law at issue. The Court should reject Plaintiff's FAC for the following reasons:

*First*, Plaintiff's claims are preempted by federal law because they seek to impose a duty to install immobilizers. Plaintiff's Opposition does not respond to the fact that Defendants' vehicles comply with FMVSS 114 and therefore, according to Plaintiff's own allegations, "include reasonable anti-theft technology"—just not immobilizers specifically. Plaintiff also fails to show that allegations about "reasonable anti-theft technology" satisfy federal pleading standards. As a result, the FAC definitively rests on a lack of immobilizers.

*Second*, an "unbroken line of authority" establishes that, as a matter of Ohio law, the theft and subsequent reckless operation of a vehicle constitutes an intervening, superseding cause that breaks the chain of causation. Based on this black-letter law, multiple Ohio courts have dismissed claims against Defendants that were based on the same underlying theory that Plaintiff asserts here. By contrast, Plaintiff does not cite to a single Ohio decision holding that Defendants are liable for post-theft conduct.

*Third*, Plaintiff fails to allege facts giving rise to a duty of care for Defendants, instead relying on inapposite case law involving defendants' affirmative malfeasance and creation of illegal secondary markets.

*Fourth*, Plaintiff fails to adequately plead its absolute public nuisance claim because Plaintiff's allegations fail to satisfy the claim's intentionality requirements.

*Lastly*, Plaintiff's public nuisance claims are abrogated by the Ohio Product Liability Act.

The FAC should be dismissed without leave to amend.

## ARGUMENT

## I.   PLAINTIFF'S CLAIMS ARE PREEMPTED

### A.   Plaintiff's Invocation Of "Other Reasonable Anti-Theft Technology" Does Not Shield Its Claims From Preemption

Plaintiff claims its complaint does not raise a question of preemption because it purportedly seeks to impose an obligation to install not just immobilizers, but in the alternative other unspecified "reasonable anti-theft technology." Opp. 7. Not so. Plaintiff's own allegations acknowledge Defendants' vehicles *are* equipped with reasonable anti-theft technology, *see* FAC ¶ 66 (alleging that FMVSS 114 requires "reasonable anti-theft technology," but not alleging that Defendants' vehicles fail to comply with FMVSS 114); they just do not have immobilizers. Even assuming that the vehicles were missing some required technology, Plaintiff's claims fail federal pleading standards because Plaintiff does not identify *any* other existing anti-theft technology apart from immobilizers that would allegedly be "reasonable." *See* Mot. 6–8. Indeed, Plaintiff's allegations dismiss out of hand the reasonableness of software updates and steering wheel locks, FAC ¶¶ 89–90, despite the fact that this Court expressly overruled objections about the adequacy of Defendants' software updates in connection with the Consumer Settlement, July 15, 2024 Tentative Order at 15–17. Accordingly, despite Plaintiff's artful pleading, the effect of its allegations is to seek to require installation of immobilizers, which "runs afoul of federal government regulations that do not impose such a narrow requirement." *See* Dkt. 334 at 6.

### B.   Plaintiff's Attempt To Skirt Preemption—By Misstating Both Its Claims And The Law—Should Be Rejected

Plaintiff asserts this Court can ignore authority requiring specification of an alleged defect because Plaintiff's claims "are not premised on a design defect." Opp. 9. Plaintiff is wrong.

First, Plaintiff's representation that its claims are "not premised on a design defect" is false. As Plaintiff well knows, it expressly seeks to hold Defendants liable

for their conduct in the design and manufacture of Defendants' vehicles. *See, e.g.*, FAC ¶¶ 3, 115, 138, 142, 147, 158–59, 166–67. Indeed, Plaintiff doubles down on these allegations in its Opposition. *See* Opp. 1 ("Lorain seeks to hold Defendants … accountable for the public safety crisis they caused by choosing not to equip millions of their vehicles with reasonable anti-theft technology. Defendants' decision to design, manufacture, and distribute these 'Susceptible Vehicles' has foreseeably led to significant downstream impacts on public safety and welfare in Lorain's community."); *id.* at 4 ("These harms can be traced back to Defendants' decision not to equip the Susceptible Vehicles with reasonable anti-theft measures…."); *id.* at 17 ("Defendants' failure to exercise reasonable care in the design, manufacture, and distribution of the Susceptible Vehicles unreasonably exposed Lorain to harm."). There is no difference between alleging that a defendant's product has a defective design and alleging that a defendant's "conduct" was unreasonable because they designed a defective product.

Second, the case law Plaintiff asks the Court to ignore establishes that a plaintiff asserting claims that are *based* on a defect—*not just so-called "product liability" claims*—must identify the defect at issue with specificity. In *Raynaldo v. American Honda Motor Co.*, the Court dismissed **thirty-three** claims against Honda, including fraudulent omission and concealment, unjust enrichment, consumer protection, and breach of warranty claims, because the claims were "premised on [an] alleged defect" and "faile[d] to provide adequate notice to Honda of the alleged defect." 2022 WL 4358096, at *6 (N.D. Cal. Sept. 20, 2022); *Raynaldo* Amended Class Action Compl. § IX , 2022 WL 4358096 (N.D. Cal. Sept. 20, 2022) (No. 15). And the courts in *Pelayo v. Hyundai Motor America, Inc.* and *Farrales v. Ford Motor Co.* likewise dismissed broad swaths of claims due to the plaintiffs' failure to put the defendants on notice of the specific defect at issue. *See Pelayo*, 2021 WL 1808628, at *3–5 (C.D. Cal. May 5, 2021); *Farrales*, 2022 WL 1239347, at *5–6 (N.D. Cal. Apr. 27, 2022). Because Plaintiff did not attempt to identify any allegedly defective part or system at

all—beyond the lack of an immobilizer—much less provide the required specificity, its claims rely on the absence of an immobilizer and are preempted.

Third, Plaintiff's attempt to avoid the applicable standards by analogizing its claims to those brought in *In re National Prescription Opiate Litigation* and *Cincinnati v. Beretta U.S.A. Corp.*, Opp. 10, must also be rejected. The claims in *In re National Prescription Opiate Litigation* arose "from an alleged oversupply of otherwise safe and non-defective drugs that were diverted into the black market"; the claims did not "stem from the products themselves, but from the manner in which Defendants dispensed the products – that is, Defendants' failure to provide effective controls to detect 'red flags' and prevent diversion." 589 F. Supp. 3d 790, 813 (N.D. Ohio 2022). By contrast, the claims alleged here *do* challenge the alleged design and manufacture of the vehicles themselves—not the *marketing* of the vehicles. Plaintiff's reliance on *Beretta* fares no better. *Beretta* involved *Ohio state notice pleading* standards, not *federal* pleading standards. 768 N.E.2d 1136, 1146 (Ohio 2002) (noting that "since Ohio is a notice-pleading state, Ohio law does not ordinarily require a plaintiff to plead operative facts with particularity," so "as long as there is a set of facts, consistent with the plaintiff's complaint, which would allow the plaintiff to recover, the court may not grant a defendant's motion to dismiss.") (quoting *York v. Ohio State Hwy. Patrol*, 573 N.E.2d 1063, 1065 (Ohio 1991)). But even setting that aside, the plaintiff in *Beretta* identified a list of specific absent, feasible safety features, including "internal locking devices to 'personalize' guns to prevent unauthorized users from firing them, chamber-loaded indicators to indicate that a round is in the chamber, and magazine-disconnect safeties that prevent guns from firing when the magazine is removed." *Id.* at 1147 n.7. Plaintiff's vague and formulaic references to "other reasonable anti-theft technology" do not remotely approach the level of specificity in *Beretta*, and fail to satisfy Plaintiff's burden to give fair notice to Defendants of its claims.

### C.   Plaintiff's Assertion That Its Pleading Failures Can Be Ignored Because Its Claims Do Not Conflict With Federal Law Is Meritless

Plaintiff further claims that "[e]ven if the claims in the FAC would restrict a manufacturer's choice for the use of anti-theft devices … such a restriction does not implicate conflict preemption" here, because "Defendants fail to show that the FAC's claims conflict with the full purposes and objectives of federal law." Opp. 9. Plaintiff cites to no authority supporting its position, nor could it given that "the standard has been framed to permit as many specific devices as possible to meet its requirements." 33 Fed. Reg. 6471, 6472; *see also* Mot. 5–6. In any event, this Court already necessarily determined that flexibility was a significant objective of FMVSS 114 when it concluded that the City of Chicago's claims were preempted, holding that a specific prescription of anti-theft technology "runs afoul of federal government regulations that do not impose such a narrow requirement." Dkt. 334 at 6.

## II.   AS EVERY OHIO COURT TO CONSIDER THE ISSUE HAS CONCLUDED, PLAINTIFF'S CLAIMS FAIL AS A MATTER OF LAW DUE TO THIRD-PARTY INTERVENING ACTS

Defendants' Motion showed that Defendants are not liable for Plaintiff's alleged damages because, under Ohio law, the theft and subsequent reckless operation of vehicles is an intervening, superseding cause that breaks the chain of causation. Mot. 10–12. Plaintiff's attempts to avoid this result are meritless.

### A.   Plaintiff's Suggestion That Causation Cannot Be Decided On The Pleadings Is Contrary To Ohio Law

Plaintiff first contends that intervening causation is a factual matter not to be determined on the pleadings. Opp. 11–12. But while that may be true in *some* types of cases, in three separate cases filed against Defendants, courts in Ohio, applying Ohio law, have dismissed complaints at the pleadings stage where the plaintiff alleged that Defendants caused injury by producing vehicles without immobilizers, because an intervening third-party criminal's conduct severed causation *as a matter of law*.

*See Fox v. Kia Am., Inc.*, 2024 WL 1328730, at *11, *13 (N.D. Ohio Mar. 28, 2024); *Moshi v. Kia Am., Inc.*, 2024 WL 3178689, at *1–3 (S.D. Ohio June 26, 2024); *Strench v. Hyundai Motor Am. Corp.*, 2024 WL 3178681, at *1–3 (S.D. Ohio June 26, 2024).

As explained in the Motion, the *Fox* court relied on an "unbroken line of authority" to hold that Plaintiff's defective design claim is "subject to dismissal" at the pleadings stage, "because, *as a matter of law, the theft and subsequent reckless operation of the Kia* … constitute an intervening, superseding cause that breaks the chain of causation…." *Fox*, 2024 WL 1328730, at *13; *see also* Mot. 1–2, 10–12. Other courts have now followed the reasoning in *Fox*, dismissing the complaints at the pleadings stage. In *Moshi*, a decision issued after Defendants' opening brief here, KA was sued for, *inter alia*, public and private nuisance and negligence, seeking to hold KA responsible for the death of an individual killed when he was struck by a thief fleeing from police, which injury the plaintiff alleged was caused by KA's failure to install immobilizers. 2024 WL 3178689, at *1. The *Moshi* court relied on "[a] long line of Ohio case law," including *Fox*, to dismiss all of the claims as a matter of law because the plaintiff failed to sufficiently allege proximate causation. *Id.* at *2– 3. And similarly in *Strench*, a plaintiff sued HMA for, *inter alia*, public and private nuisance and negligence after he was injured in a collision with a fleeing car thief, which plaintiff likewise alleged was a result of HMA failing to install immobilizers. 2024 WL 3178681, at *1. The *Strench* court also dismissed all of the claims on the pleadings because the car thief's conduct "[was] an intervening act … that breaks the causal connection between Hyundai's conduct and Plaintiff's injuries as a matter of Ohio law." *Id.* at *2–3.

These cases are not outliers. At least two Ohio Court of Appeals decisions dealing with similar facts dismissed cases on the pleadings because causation was severed by a third-party criminal as a matter of law. *See Tilton v. Austintown Motors, Inc.*, 1997 WL 816526, at *2 (Ohio Ct. App. Dec. 30, 1997) (dismissing negligence

claims against a car dealership at the pleadings); *see also Lagowski v. Shelly & Sands, Inc.*, 38 N.E.3d 456, 459 (Ohio Ct. App. 2015) ("Unless Appellant alleged facts that remove his case out of the realm of the rules established in *Pendrey* and *Tilton*, it was appropriate for the court to dismiss the case as a matter of law.").  This Court should do the same here.

B.     **Plaintiff's Attempt To Distinguish Ohio Court Orders Dismissing Complaints Against These Defendants Arising From Virtually Identical Facts Is Meritless**

Plaintiff argues that Defendants cite "inapposite" cases that "[t]his Court has already distinguished."  Opp. 11–13; *see also id.* at 12 ("the Court has already rejected that argument in the context of the CGEC"); *id.* at 12–13 (claiming this Court has "already distinguished from the facts, claims, and law at issue here").  But as referenced above, since the time that this Court rendered its prior decision with respect to the CGEC, there have been *three new decisions by courts in Ohio, under Ohio law*, dismissing similar claims against Defendants.  Those decisions were rendered by judges steeped in Ohio law—indeed, Judge Pamela A. Barker, who issued the decision in *Fox*, served as an Ohio state court judge for nearly ten years prior to joining the federal judiciary.  *Judge Pamela A. Barker Sworn In*, UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF OHIO, June 19, 2019, https://www.ohnd.uscourts.gov/news/judge-pamela-barker-sworn.

Further, as noted by Judge Barker in *Fox*, the decision upholding the CGEC did not specifically address certain case law from the Ohio Supreme Court relevant to this issue (*Ross v. Nutt*, 203 N.E.2d 118 (Ohio 1964) and *Pendrey v. Barnes*, 479 N.E.2d 283 (Ohio 1985)), when distinguishing other states' law regarding proximate cause and the foreseeability of the acts of car thieves.  *Compare* Dkt. 270 at 10–11 (addressing foreseeability under Missouri, New York, and Wisconsin law), *with Fox*, 2024 WL 1328730, at *15 n.4 (the "*In re Kia* decision does not acknowledge or address the Ohio Supreme Court's decisions in *Ross* and/or *Pendrey*"); *see also*

*Moshi*, 2024 WL 3178689, at *3; *Strench*, 2024 WL 3178681, at *3. *Ross* found "[i]t would be beyond the realm of reason to attach liability to an owner for acts of a nonpermissive user, a thief." 203 N.E.2d at 121. And *Pendrey*, applying *Ross*, instructs that "while the theft may have been anticipatable, the subsequent negligent use of the vehicle to injure a third party [is] not." 479 N.E.2d at 283–84 (applying *Ross*, 203 N.E.2d at 120). Thus, "theft of [a] motor vehicle [is] a sufficient superseding cause" to sever proximate cause. *Pendrey*, 479 N.E.2d at 283.

Absent case law in its favor, Plaintiff argues instead that public policy would have this Court distinguish between claims against an individual car owner and those against a manufacturer. *See* Opp. 13 (citing to this Court's decision on the CGEC). But the three decisions rendered *after* this Court's prior order say *there is no relevant distinction* under Ohio law between vehicle owners and vehicle manufacturers, and all dismissed claims *against these same alleged manufacturers*. *Fox*, 2024 WL 1328730, at *14 (recognizing there is "no language in any of the Ohio decisions … that would support limiting those courts' holdings only to the liability of individual vehicle owners," and such public policy arguments are "without merit"); *see also Moshi*, 2024 WL 3178689, at *3 (applying the holding in *Fox*, which "rejected arguments, also made by Plaintiff here," that previous Ohio case law is "distinguishable because [it] involved a single car owner"); *Strench*, 2024 WL 3178681, at *3 (same). Indeed, in both *Tilton* and *Miles v. Cedar-Lee Chrysler-Plymouth*, the central holdings of *Ross* and *Pendrey* were applied to dismiss claims against auto dealerships (not individual vehicle owners). *See Tilton*, 1997 WL 816526, at *2–3; *Miles*, 1978 WL 218347, at *2 (Ohio Ct. App. Apr. 28, 1978).

Plaintiff next claims that *Fox* is inapplicable here because the *Fox* court "distinguished its own ruling … from the claims in the instant MDL proceeding." Opp. 13–14 (citing *Fox*, 2024 WL 1328730, at *15 n.4). But *Fox* distinguished the claims in the MDL as dealing "only with the foreseeability of *theft* of Kia vehicles – not the further question of the foreseeability of a car thief's subsequent *negligent or*

*reckless operation* of Kia vehicles."   2024 WL 1328730, at *15 n.4.[1]   In fact, Plaintiff's public nuisance claims, like the claims in *Fox*, are not based solely on the thefts of vehicles, but instead on the allegation that third-party criminals' *post-theft criminal conduct*, including "reckless driving," FAC ¶ 12, "teenagers joyriding, posting videos of themselves driving recklessly, and then abandoning the stolen vehicles—often after collisions," *id.* ¶ 78, and using stolen cars "in the commission of other crimes," *id.* ¶ 76, resulted in "threats to public safety," *id.* ¶ 105.   *See also id.* ¶¶ 105–06 (alleging threats to Plaintiff include drivers of "stolen vehicles reach[ing] speeds of 90 miles per hour," "run[ning] red lights and disobey[ing] traffic laws," and "attempt[ing] robberies of businesses"); Mot. 9–10, 12–13.   Indeed, post-theft conduct is *indispensable* to Plaintiff's claims as without it, Plaintiff would not be able to allege a public nuisance.   Plaintiff makes no attempt to refute this point, instead arguing (contrary to Ohio case law) that such post-theft criminal conduct does not sever causation.   *See* Opp. 11.

## C.   Plaintiff's Suggestion That A Different Causal Standard Should Be Applied To Its Claims Is Wrong And Irrelevant Because Its Claims Fail Under Its Proposed (Lower) Standard

Plaintiff's assertion, based on *In re National Prescription Opiate Litigation*, that its public nuisance claims should be held to a "different causal standard," Opp. 14, is wrong.

---

[1]   The *Fox* court went on to say:  "Moreover, the Court notes that the November 17, 2023 *In re Kia* decision does not acknowledge or address the Ohio Supreme Court's decisions in *Ross* and/or *Pendrey*, *supra*.  Finally, the Court notes that the *In re Kia* court recently granted defendants' motion to certify for interlocutory appeal the question of whether, under Ohio law, 'a tort duty to protect against third-party criminal conduct can be based solely on the foreseeability of harms—even in the absence of a special relationship.'   *In re Kia and Hyundai Vehicle Theft Litigation*, 2024 WL 1135736 (C.D. Cal. Jan. 29, 2024).  Thus, until that interlocutory appeal is decided, it is not clear that the district court's denial of the defendants' motion to dismiss the GE Plaintiffs' Ohio negligence claims will stand."   *Fox*, 2024 WL 1328730, at *15 n.4.

First, both *Moshi* and *Strench* dismissed *public and private nuisance claims* under Ohio law—not just personal injury claims—because intervening criminal conduct broke the causal chain as a matter of law. *Moshi*, 2024 WL 3178689, at *1–3; *Strench*, 2024 WL 3178681, at *1–3. There is thus no reason to believe that an Ohio court would apply a different standard to Plaintiff's public nuisance claims.

Second, *In re National Prescription Opiate Litigation* involved claims of a public crisis "caused by a confluence of failures by virtually everyone: from federal, state, and local governments to the litany of named defendants," and only because the "plaintiff ha[d] alleged the conduct of multiple defendants," the court applied the substantial factor test. 589 F. Supp. 3d 739, 786–87. But just as the courts did in *Fox*, *Moshi*, and *Strench*, Ohio law overwhelmingly applies a directness and foreseeability test to assess proximate cause in public nuisance cases, particularly where (as here) Plaintiff seeks to blame only Defendants. *See City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 477–81 (6th Cir. 2017) (finding proximate cause an essential public nuisance element); *City of Cleveland v. Ameriquest Mort. Securities, Inc.*, 615 F.3d 496, 502–07 (6th Cir. 2010) (affirming dismissal of a complaint alleging public nuisance based on lack of directness of injuries); *Cleveland v. JP Morgan Chase Bank, N.A.*, 2013 WL 1183332, at *3–6, *9 (Ohio Ct. App. Mar. 21, 2013) (affirming dismissal of public nuisance claim based on lack of proximate cause).

Third, even under Plaintiff's "substantial factor" rubric, the outcome would be no different: "[A]ssuming *arguendo* that a 'connection or relationship of cause and effect' may exist between the failure of Kia to install anti-theft measures … and the theft of [a Kia vehicle], Ohio courts have repeatedly declined to extend that cause and effect 'connection or relationship' to the subsequent reckless operation of a stolen vehicle." *Fox*, 2024 WL 1328730, at *14 (citing *Pendrey*, 479 N.E.2d at 283–84; *Ross*, 203 N.E.2d at 118; *Tilton*, 1997 WL 816526, at *3) (further citations omitted). The Supreme Court of Ohio recognizes as a matter of law that "acts of an

intermeddler, after [a] car has been stolen, are a sufficient intervening or superseding cause to break the chain of causation." *Pendrey*, 479 N.E.2d at 284. Applying a "substantial factor" test does not change that result.

## III. THERE IS NO DUTY TO PROTECT AGAINST THIRD-PARTY CRIMINAL ACTS

Plaintiff attempts to manufacture a duty to protect against the harm done by third-party criminals, a duty unrecognized under Ohio law.

Defendants' Motion explains that Plaintiff's negligence and qualified public nuisance claims rest on allegations that Defendants failed to act by not installing immobilizers or other reasonable anti-theft technology in their vehicles. *See* Mot. 14–16. Plaintiff essentially ignores this, and in response simply claims to have asserted two duties in the FAC: "(1) the duty 'to act as a reasonably careful person would under the circumstances in the design, research …, and distribution of Defendants' products'; and (2) the duty 'to take all reasonable steps necessary to prevent (a) the design, manufacture, distribution, and/or sale of a product that was so easy to steal and (b) the creation, incubation, or maintenance of the conditions necessary for a secondary market of unsafe and stolen vehicles.'" Opp. 15 (citing FAC ¶¶ 158–59). But the allegation of these purported duties does nothing to save Plaintiff's claims.

### A. Plaintiff Cannot Dispute That It Has Not Alleged A Special Relationship That Would Create A Duty To Protect Against Third-Party Criminal Conduct Or Sustain A Duty Based On Defendants' Failure To Act

As reflected in Defendants' Motion, "there is no duty to control the conduct of a third person by preventing him or her from causing harm to another, except in cases where there exists a special relationship between the actor and the third party, which gives rise to a duty to control." *Inskeep v. Columbus Zoological Park Ass'n*, 207 N.E.3d 876, 881 (Ohio Ct. App. 2023) (quotation and citation omitted); Mot. 14–15. And in Ohio, Plaintiff must show a special relationship where, as here, Plaintiff

attempts to assert "a common law duty predicated on *nonfeasance*, or *failure to act*." *Estate of Ciotto v. Hinkle*, 145 N.E.3d 1013, 1027 (Ohio Ct. App. 2019) (emphasis added).

As effectively conceded in its Opposition, Plaintiff has made no effort to allege a special relationship here.  Accordingly, Plaintiff cannot rely upon the existence of a "special relationship" to give rise to a duty by Defendants to protect Plaintiff from the criminal conduct of third parties, or to support a duty based on Defendants' nonfeasance or failure to act.

**B.     Plaintiff's Attempts To Repackage Its Claims As Not Relying On Third-Party Acts Or As Based On Defendants' Affirmative Malfeasance Are Unsuccessful**

Having failed to allege a special relationship, Plaintiff struggles to identify any cognizable duty under Ohio law.

First, Plaintiff attempts to avoid a special-relationship analysis by claiming that "third-party conduct is separate and irrelevant to" two of the duties it purports to have alleged (the duty "to act as a reasonably careful person would under the circumstances in the design, research …, and distribution of Defendants' products," and the indistinguishable duty "to take all reasonable steps necessary to prevent … the design, manufacture, distribution, and/or sale of a product that was so easy to steal").  Plaintiff asserts these "duties" require only a "basic duty" analysis based on foreseeability of harm, and do not necessitate a special relationship.  Opp. 15–16 (citing FAC ¶¶ 158–59).  But the special-relationship requirement would mean nothing if Plaintiff could avoid it by simply describing the duty at issue by reference to Defendants' allegedly "unreasonable conduct" rather than the ***third-party crimes*** that allegedly injured Plaintiff.  *See Richards v. Stanley*, 271 P.2d 23, 27 (Cal. 1954) ("[I]n light of the rule that [defendant] owed no duty to protect plaintiff from harm resulting from the activities of third persons, we conclude that her duty to exercise reasonable care in the management of her automobile did not encompass a duty to protect plaintiff from

the negligent driving of a thief.").  Here, Defendants' purported duty to exercise reasonable care in the design of their products likewise did not encompass a duty to protect against negligent driving of stolen vehicles.  Here, Plaintiff fails to identify any harm Defendants owed a duty to prevent *aside from injuries allegedly stemming from third parties' conduct*.

Plaintiff's reliance on *Beretta* for the principle that a special-relationship analysis is not needed here and that this Court can simply look to "foreseeability" to find a duty, Opp. 16, or that Plaintiff has sufficiently alleged a duty not to "help maintain a secondary market for stolen vehicles," Opp. 17, is misguided.  The court in *Beretta* found plaintiff sufficiently alleged a duty based on the *affirmative malfeasance* of gun manufacturers that lead to the creation of illegal, secondary markets.  768 N.E.2d at 1144–45 (quoting *City of Boston v. Smith & Wesson Corp.*, 2000 WL 1473568, at *15 (Sup. Ct. Mass. July 13, 2000)).  Indeed, as the court explained in *Smith & Wesson* (cited by the *Beretta* court), defendant gun manufacturers had "engaged in *affirmative acts* (i.e., creating an illegal, secondary firearms market)" by distributing guns to illegal markets through "straw purchases …, multiple sales …, and sales to 'kitchen table' dealers," among other shady distribution methods.  2000 WL 1473568 at *1, *15 (emphasis added).  Likewise, *Beretta* found a duty for gun manufacturers that were "themselves negligent by *manufacturing, marketing, and distributing firearms in a way that creates an illegal firearms market* that results in foreseeable injury."  768 N.E.2d at 1144 (emphasis added).  Plaintiff acknowledges this distinction in its Opposition, stating that, in *Beretta*, the "manufacturers' malfeasance meant that recognition of a duty did not require a special relationship."  Opp. 17 (citing *Beretta*, 768 N.E.2d at 1144).

Ohio courts have since recognized the unique allegations in *Beretta*, allowing the case to proceed beyond a motion to dismiss.  For example, in *JP Morgan*, the court explained that "Cincinnati's claim in *Beretta* was that firearm manufacturers *created or supplied a black market for the illegal sale and distribution of firearms*.  It was

alleged that, *through the direct action of the gun manufacturers*, such a market existed." 2013 WL 1183332, at *6 (emphasis added). And in *Ameriquest*, the court found that public nuisance claims against a subprime mortgage provider were not analogous to the claims in *Beretta* because "[t]he complaint in *Beretta* accused the defendants of *financing an illegal market for guns,* whereas, here, the Defendants allegedly financed a *legal* subprime mortgage market." 615 F.3d at 505 n.6 (emphasis added).

But here, unlike *Beretta*, Plaintiff has not plausibly alleged *any* affirmative act, including no affirmative malfeasance by Defendants that allegedly created an illegal "secondary market" that could give rise to a duty. To the contrary, they allege Defendants' *inaction* has caused Plaintiff harm. *See, e.g.*, FAC ¶ 52 ("Defendants *choice not to use* this industry-standard anti-theft technology…") (emphasis added). And as referenced above, a claim under Ohio law based on a defendant's *failure to act* requires a special relationship that is not present here. *See Hinkle*, 145 N.E.3d at 1027.

Nor has Plaintiff alleged Defendants' affirmative acts helped maintain a secondary market. To be sure, Plaintiff claims—in its Opposition brief—to have alleged the existence of a "subsequent secondary market for stolen vehicles," Opp. 17, "maintain[ance of] a secondary market for stolen vehicles," *id.*, or that Defendants' conduct "caused—for example, an illegal market of stolen vehicles, among other things," Opp. 18 & n.5. But in fact the FAC contains no allegations that Defendants created any "secondary market." To the contrary, Plaintiff alleges the *absence* of a secondary market, stating that the alleged thefts here are "*[d]istinct from many instances of car theft*, where the object is converting the stolen vehicle (either whole or in parts)." FAC ¶ 78 (emphasis added). Plaintiff cannot amend its FAC through its Opposition by referencing some purported "secondary market" that it did not allege in its FAC. *See Hatter v. Dryer*, 154 F. Supp. 3d 940, 943 n.2 (C.D. Cal. 2015) (refusing to consider additional allegations in opposition to motion to dismiss

that were not pleaded in the complaint); *Frenzel v. Aliphcom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quotation and citation omitted). Further, the explanation in Plaintiff's Opposition and its singular citation to the FAC for support of "secondary market" allegations is circular; Plaintiff asserts that the alleged increase in thefts has led to a "secondary market" of *more thefts*. Opp. 18 n.5 (citing FAC ¶¶ 108–09). That is no "secondary market" at all. Indeed, the FAC paragraphs Plaintiff cites do not even purport to describe any kind of a "secondary market." *Id.*

Finally, even assuming *arguendo* that Plaintiff could claim to have alleged affirmative malfeasance establishing a duty to prevent vehicle theft, the harm Plaintiff claims is based on post-theft conduct, *see supra* Section II(B), and the negligent or reckless post-theft usage of vehicles is not foreseeable as a matter of law in Ohio. *See Ross*, 203 N.E.2d at 120–21 ("Even if a person could anticipate that his car would be stolen, he could not reasonably anticipate that such vehicle would be operated in such a manner as to cause an accident …. Such negligence the defendant was not in law bound to foresee…."); *see also Pendrey*, 479 N.E.2d at 283–84 ("[W]hile the theft may have been anticipatable, the subsequent negligent use of the vehicle to injure a third party [is] not."). Plaintiff's duty claim therefore likewise fails on the basis of foreseeability.

## C. Plaintiff's Reliance On The Court's Previous Decision And Attempts To Distinguish Defendants' Authorities Are Unconvincing

Plaintiff asserts its purported duties are similar to duties identified by CGEC plaintiffs, which this Court allowed to survive on a motion to dismiss. Opp. 15 (citing Dkt. 270 at 7–9). However, this Court analyzed duties articulated by CGEC plaintiffs solely under foreseeability and public policy considerations following guidance from the Restatement. *See* Dkt. 270 at 7–9 (citing Restatement (Second) of Torts Section 324A (Am. L. Instit. 1965), as well as case law from Indiana and New York).

Additionally, while, as Plaintiff notes at Opp. 15, the Court felt it "got it right," Dkt. 302 (Hrg. Tr. Jan. 29, 2024) at 10:15–16, when considering the duty to guard against third-party criminal conduct, the Court also felt that "there's still a substantial question with regard to the duty," *id.* at 10:16–18.  Ohio law provides a clear answer that there is no duty to protect against third-party acts causing harm absent a special relationship, and several new cases under Ohio law (issued after this Court's CGEC decision) make clear that post-theft conduct is not foreseeable as a matter of law.  *See, e.g.*, *Inskeep*, 207 N.E.3d at 881; *see also Fox*, 2024 WL 1328730, at *14 ("Ohio courts have expressly found that a thief's reckless operation of a stolen vehicle is not reasonably foreseeable as a matter of law."); *Moshi*, 2024 WL 3178689, at *2–3; *Strench*, 2024 WL 3178681, at *2–3.

Plaintiff's attempts to distinguish Ohio case law are similarly unavailing.  The court in *Hinkle* did not, unlike Plaintiff contends, refuse to find an affirmative duty to prevent against third-party criminal acts based on *foreseeability of harm*.  Opp. 18 (citing *Hinkle*, 145 N.E.3d at 1026).  Rather, the *Hinkle* court found that "common law precedent does not support the existence of a legal duty owed" without a special relationship.  145 N.E.3d at 1027.  Plaintiff's claims are similarly unsupported under Ohio law.  Any factual differences between cases cited in Defendants' motion and the present facts do not change the calculus that "there is no common-law duty to anticipate or foresee criminal activity." *Id.* (quoting *Fed. Steel*, 543 N.E.2d at 769).

And Plaintiff's purported public policy goal of "ensuring public safety," Opp. 18, also falls flat when Plaintiff's argument would require that "this court must also find, for the first time in Ohio jurisprudence, that a duty exists to control the actions of a third person without any special relationship, to prevent that person from harming others, contradicting existing, controlling precedent." *Hinkle*, 145 N.E.3d at 1026 (citing *Simpson v. Big Bear Stores Co.*, 652 N.E.2d 702, 705 (Ohio 1995)).

## IV.   PLAINTIFF'S ABSOLUTE PUBLIC NUISANCE CLAIMS FAIL TO PLEAD INTENTIONALITY

Plaintiff claims that the Court's order in the CGEC disposed of Defendants' position that Plaintiff failed to plead intentionality, as required for an absolute public nuisance claim.  Opp. 21; *see also* Mot. 16–17.  However, in that decision this Court did not specifically address the standard of intentionality required under Ohio law as articulated in *Nottke v. Norfolk Southern Railway Co*., 264 F. Supp. 3d 859, 863 (N.D. Ohio 2017) ("Intentional, in this context, means … that the creator of [a nuisance] intended to bring about the conditions which are in fact found to be a nuisance.") (citation omitted); *see* Dkt. 270 at 14–15 (addressing Washington case law).  Under Ohio law, because "harm and resulting damage" must be "the *necessary consequences* of just what the defendant is *doing*," *Angerman v. Burick*, 2003 WL 1524505, at *3 (Ohio Ct. App. Mar. 26, 2003) (emphasis added), Plaintiff's claims that Defendants' *inactions* ("forgoing the installation" of immobilizers) "allowed those same vehicles to be stolen in a matter of minutes," Opp. 21–22, are insufficient.

Plaintiff claims that Ohio law "does not require that Defendants intended to create a public nuisance," citing *Beretta* for the proposition that knowledge that a legal product "will be obtained by persons with criminal purposes" reflects sufficient "intent," and citing *In re National Prescription Opiate Litigation* for the proposition that a plaintiff "merely needs to show the defendant intended to bring about the conditions for the nuisance to occur."  Opp. 21 (citations omitted).  Both of these cases are distinguishable.   In *Beretta*, the court found that gun manufacturers intentionally created and controlled the supply of an "illegal, secondary market for firearms," 768 N.E.2d at 1143, after plaintiffs alleged in their complaint that the manufacturers employed shady marketing and distribution practices, such as "straw purchasing," where a purchaser buys a gun for an unqualified person, "multiple sales" of guns to a single person, and distribution of guns through corrupt "kitchen table dealers," *Beretta* First Amended Compl. ¶ 79, 2002 WL 34429690 (Aug. 14, 2002)

Case No. 8:22-ML-3052-JVS-(KESx)
REPLY IN SUPPORT OF MOTION TO DISMISS FAC

(No. A9902369).   In *In re National Prescription Opiate Litigation*, the plaintiffs alleged that the defendants "intentionally misrepresented the risks attending opioid use," "falsely represented OxyContin as weaker than morphine," and employed "fraudulent marketing and failures to maintain anti-diversion controls," necessarily "increasing prescription opioid sales."   *See* 406 F. Supp. 3d at 672, 675–76 (N.D. Ohio 2019).   These intentional and knowing acts that facilitated the flow of products into illegal, secondary markets, are inapposite to Defendants' legal sale of federally-compliant vehicles to qualified owners, where Plaintiff has not sufficiently alleged that Defendants intended to "bring about the conditions" that are the public nuisance.

Plaintiff identifies no allegations in the FAC suggesting that "harm to Lorain" is the "necessary consequence[] of … or is incident to" the lack of engine immobilizers in Defendants' vehicles.   Opp. 21–22.   Nor does Plaintiff plausibly allege that such harm was "substantially certain" to occur, or identify any case law applying the "substantial certainty" standard to absolute nuisance claims.   Mot. 17. As Defendant's Motion explained, Plaintiff's FAC identifies 2011 as the first year Defendants' vehicles featured any alleged lack of reasonable anti-theft technology, but Plaintiff claims thefts did not "bec[o]me an explosion" until late 2020, almost a decade later, due to "a group of teenagers … posting 'how-to' videos" on how to steal HMA and KA vehicles.   FAC ¶¶ 70–72.   Plaintiff's Opposition does not even try to explain how a crime wave that began more than a decade after the vehicles were first sold—and only after an unprecedented social-media phenomenon—could be either a "necessary consequence of" or "incident to" those vehicles' sales.

Instead of identifying allegations satisfying Ohio's standard for intentionality, Plaintiff points to the inapposite theories of other plaintiffs in other cases.   The Opioids MDL cited by Plaintiff, Opp. 21–22 (citing *In re Nat'l Prescription Opiate Litig.*, 406 F. Supp. 3d at 676), based its finding of intentionality on a previous decision in the same litigation that found that "massive increases in the supply of prescription opioids" were an "an expected consequence" of opioid "[m]anufacturers

engag[ing] in a widespread promotion and marketing campaign that trivialized the medical risks of addiction and exaggerated the benefits of long-term opioid use," and "a complete failure by Defendants to maintain effective controls against diversion." *See* Causation Order at 3, 8, *In re Nat'l Prescription Opiate Litig.*, 406 F. Supp. 3d 672 (N.D. Ohio 2019) (Doc. No. 2561); *see also Taylor v. City of Cincinnati*, 55 N.E.2d 724, 729–33 (Ohio 1944) (finding a municipality's maintenance of highway trees did not, absent a statutory responsibility, implicate absolute public nuisance). Similarly, in *Beretta*, on which Plaintiff relies, the court found that gun manufacturers intentionally created and controlled the supply of an "illegal, secondary market for firearms," 768 N.E.2d at 1143, after plaintiffs alleged in their complaint that the manufacturers employed shady marketing and distribution practices, such as "straw purchasing," where a purchaser buys a gun for an unqualified person, "multiple sales" of guns to a single person, and distribution of guns through corrupt "kitchen table dealers," *Beretta* First Amended Compl. ¶ 79, 2002 WL 34429690 (Aug. 14, 2002) (No. A9902369).  These intentional and knowing acts that facilitated the flow of products into illegal, secondary markets, are inapposite to Defendants' legal sale of federally-compliant vehicles to qualified owners, where Plaintiff has not sufficiently alleged that Defendants intended to "bring about the conditions" that are the public nuisance.

There is no serious argument that Defendants intended or were substantially certain a theft wave would occur when they marketed vehicles that, according to Plaintiff's own complaint, caused no issue at all for nearly a decade.  Plaintiff points to no allegation supporting such an inference.  Accordingly, it fails to plead a public-nuisance claim as a matter of Ohio law.

## V.    THE OHIO PRODUCT LIABILITY ACT ABROGATES PLAINTIFF'S PUBLIC NUISANCE CLAIMS

Defendants acknowledged in their Motion that they raise the issue of OPLA abrogation to preserve their rights while the Ohio Supreme Court decides *Trumbull*

*County v. Purdue Pharma, L.P.*, Case No 2023-1155.  *See* Mot. 8 n. 2.  Nevertheless, Defendants must address the incorrect claims Plaintiff made in its Opposition.

Plaintiff asserts that "the only authority on point" held that public nuisance claims fall outside of the scope of the OPLA if they do not seek compensatory damages, as Plaintiff claims to have done here.  Opp. 19–20.  As an initial matter, Plaintiff does, in fact, seek compensatory damages in connection with its public nuisance claims.  FAC ¶¶ 134, 156 (requesting "compensation for the economic loss suffered as a result of [the alleged] nuisance").  More importantly, Ohio case law shows that all common law public nuisance claims may be abrogated under the OPLA.  For example, the court in *City of Toledo v. Sherwin-Williams Co.* abrogated a public nuisance claim seeking both damages and equitable remedies, including abatement.  2007 WL 4965044 (Ohio Com. Pl. Dec. 12, 2007).  The plaintiff argued that it was at least allowed "to bring a public nuisance action *to seek abatement* of a condition that is injurious to public health, safety, and welfare," but the court rejected the plaintiff's argument on the grounds that "the [Ohio] product liability statutes were intended to abrogate common law product liability causes of action … including public nuisance claims…."  *Id.* at n.2 (emphasis added).  In coming to this conclusion, the *Toledo* court expressly considered the Ohio Supreme Court's prior ruling in *Beretta* and found that the 2005 and 2007 amendments to the OPLA superseded the decision, *id.*, contrary to Plaintiff's claim that the amendments "did not abrogate … public nuisance claims seeking equitable remedies," Opp. 20–21.  Plaintiff may not avoid abrogation under the OPLA by creating a straw man.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## <u>CONCLUSION</u>

For the foregoing reasons, this Court should dismiss the FAC in its entirety with prejudice, as any further amendment would be futile.

DATED:  July 29, 2024             QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/  Steven G. Madison*
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

21

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**CERTIFICATE OF COMPLIANCE**</u>

The undersigned, counsel of record for Defendants certifies that this brief contains 6773 words, which complies with the word limit of L.R. 11-6.1.

DATED:  July 29, 2024             QUINN EMANUEL URQUHART &
                                  SULLIVAN, LLP


                                  By  */s/ Steven G. Madison*
                                      Steven G. Madison (SBN: 101006)
                                      stevemadison@quinnemanuel.com
                                      Justin C. Griffin (SBN: 234675)
                                      justingriffin@quinnemanuel.com
                                      865 South Figueroa Street, 10th Floor
                                      Los Angeles, California 90017-2543
                                      Telephone:  (213) 443-3000
                                      Facsimile:   (213) 443-3100

                                      *Attorneys for Defendants Hyundai Motor*
                                      *America and Kia America, Inc.*