Gretchen Freeman Cappio (*pro hac vice*)
gcappio@kellerrohrback.com
KELLER ROHRBACK L.L.P.
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Telephone: (206) 623-1900
Fax: (206) 623-3384

*Counsel for City of Tacoma*

(additional counsel listed below)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*City of Tacoma v. Hyundai Motor Company, Hyundai Motor America, Kia Corporation, and Kia America, Inc.*,<br><br>No. 8:24-cv-01193 (C.D. Cal.) | No. 8:22-ML-03052-JVS-KES<br><br>The Honorable James V. Selna<br><br>PLAINTIFF CITY OF TACOMA'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT<br><br>Hearing Date: September 9, 2024<br>Hearing Time: 1:30 pm |

**TABLE OF CONTENTS**

I. INTRODUCTION ........................................................................................... 1

II. BACKGROUND ............................................................................................ 4

    A. Defendants Knew Their Cost Cutting Would Harm GEs like Tacoma. ........................................................................................ 4

    B. Defendants' Motion to Dismiss Needlessly Consumes the Court's and the Parties' Resources. .................................................... 5

III. LEGAL STANDARD .................................................................................... 6

IV. ARGUMENT .................................................................................................. 7

    A. Tacoma's Claim Does Not Raise a Question of Preemption. .................................................................................................. 7

    B. Tacoma's Claim Does Not Conflict with Federal Law. ..................... 8

    C. Tacoma's Complaint Satisfies Federal Pleading Standards. ......................................................................................... 9

V. CONCLUSION ............................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ............................................................................................. 6

*Austin v. Univ. of Or.*,
　925 F.3d 1133 (9th Cir. 2019) ............................................................................. 6

*Crosby v. Nat'l Foreign Trade Council*,
　530 U.S. 363 (2000) ............................................................................................. 8

*Geier v. Am. Honda Motor Co.*,
　529 U.S. 861 (2000) ......................................................................................... 7, 8

*Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*,
　63 F.4th 747 (9th Cir. 2023) ................................................................................ 6

*Kearns v. Ford Motor Co.*,
　567 F.3d 1120 (9th Cir. 2009) ............................................................................. 6

*Raynaldo v. American Honda Motor Co.*,
　No. 21-cv-05808-HSG, 2022 WL 4358096 (N.D. Cal. Sept. 20, 2022) ............................................................................................................... 10

*Starr v. Baca*,
　652 F.3d 1202 (9th Cir. 2011) ............................................................................. 6

*Williamson v. Mazda Motor of Am., Inc.*,
　562 U.S. 323 (2011) ............................................................................................. 9

**Statutes**

RCW 7.48.010 ........................................................................................................ 9, 10

National Traffic and Motor Vehicle Safety Act of 1996, 49 U.S.C. § 30101 *et seq.* ........................................................................................................ 7

Washington Product Liability Act, RCW §§ 7.72.010-.070 ...................................9

## I. INTRODUCTION

The instant motion to dismiss is *déjà vu* all over again because it is comprised solely of arguments this Court has already considered and rejected. Like cities across the country, the City of Tacoma, Washington has experienced a skyrocketing increase in the thefts of Hyundai and Kia vehicles in its jurisdiction. Complaint ("Compl.") ¶ 100, *City of Tacoma v. Hyundai Motor Co.*, No. 8:24-cv-01193 (C.D. Cal. June 3, 2024), Dkt. No. 1. Like the seventeen governmental entities ("GEs") in the Consolidated Governmental Entities Complaint ("CGEC"), Dkt. No. 175, Tacoma seeks to hold Defendants Hyundai Motor America ("HMA") and Kia America, Inc., ("KA") (collectively, "Defendants"),[1] accountable for the public safety crisis they caused by choosing not to equip millions of their vehicles with reasonable anti-theft technology. Defendants' decision to design, manufacture, and distribute these "Susceptible Vehicles"[2] has foreseeably led to significant downstream impacts on public safety and welfare in Tacoma's community. This Court has already permitted identical claims to proceed, including those of the City of Seattle, under the same Washington State laws that Tacoma brings its claim under.

There is nothing new in Defendants' Motion to Dismiss against Tacoma ("Motion" or "Mot."), Dkt. No. 519. Defendants recycle the same preemption and pleading arguments that the Court analyzed and rejected in its previous orders denying Defendants' motions to dismiss the CGEC and the City of Chicago's

---

[1] The parties filed, and the Court granted, a stipulation to voluntarily dismiss without prejudice and toll Tacoma's claim against the Defendants' foreign parents, Hyundai Motor Company and Kia Corporation, in exchange for those parents' agreement to provide certain discovery. Dkt. Nos. 480, 515.

[2] The Susceptible Vehicles include all Hyundai and Kia vehicles that were designed, manufactured, and distributed without engine immobilizers or other reasonable anti-theft technology. *See* Compl. ¶ 3.

Second Amended Complaint. Dkt. Nos. 270, 547.[3] In addition, Defendants take issue with Tacoma's crime statistics, ignoring the elevated crime rates Tacoma cites in its Complaint, and which would at most raise a disputed issue of fact that cannot be grounds for dismissal at the pleading stage.

1. ***Preemption***. Defendants again argue that federal law preempts the claims of GEs like Tacoma (Mot. at 5-6), despite this Court's prior recognition that the formulation of the claims in the CGEC—which Tacoma's Complaint echoes—"does not even raise a question of preemption." Dkt. No. 270 at 6.

2. ***Inapplicable Pleading Standards***. Defendants repeat an argument they raised in their more recent motions to dismiss, a purported pleading standard from product liability cases that is inapplicable to nuisance claims like Tacoma's. Defendants argue that Tacoma's Complaint is *too* specific in its prescription that Defendants install "engine immobilizers or reasonable anti-theft technology," while simultaneously making the contradictory argument that Tacoma's prescription is not specific enough to satisfy federal notice pleading standards. Mot. at 6-10. The Court has already found this inconsistent Goldilocks argument "unavailing," denying Defendants' motion to dismiss Chicago's Second Amended Complaint. Dkt. No. 547 at 6.

3. ***Tacoma Is Experiencing a Hyundai/Kia Theft Epidemic***. Tacoma's Complaint details tragic loss of life, property damage, disruption of quintessential government functions, and public endangerment in Tacoma, all of which are directly linked to Defendants' theft-prone vehicles. *See* Compl. ¶¶ 103, 104 (detailing fatal

---

[3] In the Lorain matter, the Court has yet to issue a formal order but issued a tentative order again rejecting Defendants' preemption and pleading arguments. Dkt. No. 542; Tentative Order Regarding Mot. to Dismiss (*City of Lorain*) [427] at 4-6, https://www.cacd.uscourts.gov/sites/default/files/documents/JVS/TR/22-3052%20In%20re%20Kia%20Hyundai%20-%20Tentative%20Order%20re%20MTD%20City%20of%20Lorain%20427.pdf.

crashes *in Tacoma*); ¶ 106 (detailing a stolen Kia used as a battering ram to crash into a *Tacoma* store as part of a robbery); ¶¶ 108-09 (detailing disruption at *Tacoma* middle schools due to joyriding Hyundais and Kias). That the Complaint also details tragedies in neighboring municipalities only demonstrates how widespread the crisis is, and given the inherent transience of vehicles—that is, they do not necessarily stop at the city limits once stolen, and vehicles stolen in neighboring jurisdictions may be used in crimes in Tacoma—illustrates the impossibility of asking any single municipality to fully solve this crisis. Even if Tacoma allocated *all* of its budget to monitor every Kia or Hyundai registered in its jurisdiction, a would-be-thief could simply steal one from nearby Fircrest, Fife, or Federal Way and drive it recklessly or use it to commit other crimes in Tacoma.

The Complaints' descriptions of the impact of Defendants' cost-cutting are by no means exhaustive, and the tragic events cited in the Complaint are merely illustrative of the severity of the problem. And the problem continues: theft rates remain elevated, and the public remains endangered.

Defendants assert that Tacoma is not experiencing a theft epidemic because more recent theft rates are not at the all-time high reached earlier in the crisis. While Hyundai and Kia theft rates in Tacoma have decreased from the absolute high in late December 2022, when over *350* such thefts were reported that *month*, the "new normal" is still nearly *ten times higher* than the pre-crisis levels. *See id.* ¶ 100.

Mount Rainier—called "Takhóma" by the Nisqually Tribe and "Tacoma" by the Puyallup tribe—is the tallest of the peaks in the Cascade Range. Just as the height of Mount Rainier does not flatten the Cascades, the December 2022 peak in Hyundai and Kia thefts does not change the fact that Tacoma remains in the throes of an unprecedented crime wave that is the foreseeable result of Defendants' conduct. That one specific month's reported thefts was nearly *twenty times higher* than the

pre-crises level does not diminish the severity of the continuing crisis. And Defendants do not challenge that the current rate of theft continues to constitute a public nuisance. *See generally* Motion.

Defendants present no good reason for the Court to diverge from its prior orders. In short, the "new" pleading argument is already stale, having been heard and rejected when raised against Chicago and tentatively rejected in the context of Lorain. The "old" preemption argument suffers the same shortcomings the Court found in denying Defendants' motion to dismiss the CGEC. Any further briefing and oral argument on settled issues would be a waste of the Court's and the Parties' resources. Accordingly, Tacoma requests that the Court deny Defendants' Motion without a hearing.

## II.   BACKGROUND

### A.   Defendants Knew Their Cost Cutting Would Harm GEs Like Tacoma.

Like other GEs, Tacoma is experiencing an unprecedented increase in thefts of Hyundai and Kia vehicles. Compl. ¶¶ 100-09. As thefts of these vehicles skyrocketed, Tacoma was forced to divert additional time and resources to protect public safety and security. *Id.* ¶ 125. These harms can be traced back to Defendants' decision not to equip the Susceptible Vehicles with reasonable anti-theft measures, despite knowing the foreseeable harms that would result. *Id.* ¶¶ 1, 8, 67.

Over fifty years ago, federal agencies recognized "that stolen cars constitute a major hazard to life and limb on the highways." *Id.* ¶ 49 (citation omitted). Accordingly, the National Highway Traffic Safety Administration ("NHTSA") concluded that "a reduction of the incidence of auto theft would make a substantial contribution to motor vehicle safety," and promulgated vehicle safety standards. *Id.* ¶ 50 (citation omitted).

Following the dramatic rise in vehicle thefts in the 1980s and 1990s due to

"hotwiring"—wherein car thieves would bypass a vehicle motor's ignition switch—many car manufacturers began installing passive engine immobilizers. *Id.* ¶¶ 53, 55. This anti-theft technology proved successful—reducing the overall rate of car theft by approximately 40 percent from 1995 through 2008. *Id.* ¶ 59. Equally important, academics noted that increased anti-theft technology like engine immobilizers made it less easy for adolescents to steal cars, reducing the number of juveniles who embarked on a life of crime or became career criminals. *Id.* ¶ 61. Defendants took note and themselves touted the efficacy of immobilizers in seeking an exemption from certain parts-making requirements for their higher-end models. *Id.* ¶ 67.

Yet, despite decades of research and findings supporting the deterrence effect of such anti-theft technology, Defendants chose not to install reasonable anti-theft measures in the Susceptible Vehicles. *Id.* ¶¶ 67-68. The vulnerability of the Susceptible Vehicles—which is unique to Hyundais and Kias—has led to a foreseeable rise in thefts of those vehicles in Tacoma and throughout the country. *Id.* ¶ 73. In the months that followed, consumers, governmental entities, and insurance companies began suing Defendants, eventually resulting in the instant multidistrict litigation.

**B.  Defendants' Motion Needlessly Consumes the Court's and the Parties' Resources.**

Defendants' ground-hog day motion presents no basis for the Court to depart from its well-reasoned decisions in this MDL. Tacoma brings the same nuisance claim under the same state laws as Seattle did in the CGEC. Dkt. No. 175. The Parties briefed Defendants' motion to dismiss that claim, and the Court already determined Seattle's claim should proceed. Dkt. No. 270. While the Court later permitted Defendants to seek interlocutory review on a narrow question of duty under the laws of Ohio, New York, and Wisconsin, it *denied* interlocutory review of

the portion of its Order denying Defendants' motion to dismiss Seattle's claims. Dkt. No. 298.

Around this same time, twelve other GEs filed standalone complaints.[4] To date, Defendants have answered five of those complaints and moved to dismiss complaints filed by Chicago, Illinois; Lorain, Ohio; Newark, New Jersey; and Tacoma, Washington.[5]

### III.   LEGAL STANDARD

Unless "a heightened pleading standard applies, a motion to dismiss under Rule 12(b)(6) is analyzed using the pleading standard of Rule 8(a)." *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 763 (9th Cir. 2023). "[U]nder Rule 8(a), a plaintiff need only provide 'enough facts to state a claim to relief that is plausible on its face.'" *Austin v. Univ. of Or.*, 925 F.3d 1133, 1137 (9th Cir. 2019) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted).

The court must accept "[a]ll factual allegations . . . as true" and draw "all reasonable inferences . . . in favor of the plaintiff." *Austin*, 925 F.3d at 1137. The court will uphold a claim if the plaintiff provides "'enough fact[s] to raise a

---

[4] The twelve other GE complaints, in order of filing, are (1) Chicago, Illinois; (2) Louisville Metro, Kentucky; (3) Anne Arundel County, Maryland; (4) Fort Wayne, Indiana; (5) Amherst, New York; (6) Syracuse, New York; (7) Lorain, Ohio; (8) Newark, New Jersey, (9) Lexington, Kentucky; (10) Durham, North Carolina; (11) Nashville, Tennessee; and (12) Albuquerque, New Mexico.

[5] Chicago's First Amended Complaint was previously dismissed with leave to amend. Dkt. No. 334. The Court denied Defendants' motion to dismiss Chicago's Second Amended Complaint, which motion contained preemption and pleading arguments like those in the instant motion. Dkt. No. 547.

1  reasonable expectation that discovery will reveal evidence'" to support the
2  allegations. *Starr v. Baca*, 652 F.3d 1202, 1213 (9th Cir. 2011) (citation omitted).
3  Further, "[w]here fraud is not an essential element of a claim," as it is not here, "only
4  those allegations of a complaint which aver fraud are subject to Rule 9(b)'s
5  heightened pleading standard." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th
6  Cir. 2009).

## IV. ARGUMENT

### A. Tacoma's Complaint Does Not Raise a Question of Preemption.

Defendants again argue—incorrectly—that Tacoma's Complaint rests on Defendants' failure to install engine immobilizers and is therefore preempted by federal law. Mot. at 4. This Court previously rejected the very same argument because the CGEC, like Tacoma's Complaint, "does not impose a narrow engine-immobilizer requirement." Dkt. No. 270 at 6. Rather, the CGEC faults Defendants for failing to equip their vehicles with reasonable anti-theft technology, which this Court has held "is consistent with the broad standard for required devices under FMVSS 114." *Id.* Tacoma's Complaint is no different.

Defendants point to the Court's order dismissing Chicago's First Amended Complaint, but they tellingly omit the Court's observation that this Court "previously rejected Defendants' preemption arguments . . . in the context of a complaint [i.e., the CGEC] that, despite a handful of references to immobilizers, discussed anti-theft technology overall in a broad sense." Dkt. No. 334 at 6. Just as in the CGEC, Tacoma's Complaint provides a historical overview that describes immobilizers as a widely accepted and effective anti-theft method. As in the CGEC, Tacoma's Complaint does not rest on a failure by Defendants to use immobilizers specifically. *See generally* Compl. ¶¶ 123, 125, 143, 150, 162-63. The Court may end its analysis there and find that a full preemption analysis is not required. Dkt.

7

No. 8:22-ML-03052-JVS-KES            TACOMA OPP'N TO MOT. TO DISMISS

No. 270 at 6.

## B. Tacoma's Complaint Does Not Conflict with Federal Law.

Federal law can expressly or impliedly preempt state law. Defendants do not argue that express preemption applies to Tacoma's common law action, nor is there support for such an argument in either the Safety Act (the "Act") or FMVSS 114. *See Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 868 (2000) (holding that the express preemption provision in the Safety Act "excludes common-law actions"). Accordingly, Defendants must show the Act impliedly preempts state law based on Congress's intent to occupy the field at issue ("field preemption") or because state law "conflict[s] with a federal statute," ("conflict preemption"). *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 372 (2000).

Conflict preemption applies when conflicts between state and federal law (1) "make it 'impossible' for private parties to comply with both state and federal law," or (2) "prevent or frustrate the accomplishment of a federal objective." *Geier*, 529 U.S. at 873 (citation omitted).

Here, Defendants raise no argument that field preemption applies. Instead, as they did before, they argue imposing liability for their corner-cutting would frustrate FMVSS 114's purported objective of ensuring flexibility for manufacturers—a form of conflict preemption. But Defendants' assertion of a conflict rests on an improper characterization of the claim asserted in Tacoma's Complaint and ignores other important policy objectives of FMVSS 114.

Contrary to Defendants' arguments, Tacoma does not seek the use of a specific technology, such as engine immobilizers. Rather, Tacoma seeks to hold Defendants responsible for designing, manufacturing, and distributing vehicles that are unreasonably easy to steal. Defendants can comply with their duties in a myriad of ways and without restricting the flexibility Defendants contend underpins FMVSS

8

No. 8:22-ML-03052-JVS-KES          TACOMA OPP'N TO MOT. TO DISMISS

114.

Moreover, unlike *Geier* where the choices at issue included "airbags" versus "other passive restraint systems, such as automatic belts or passive interiors," *id.* at 881, Tacoma's Complaint does not rely on the use of a conflicting or even a single technology. As this Court previously recognized, such language regarding the need for some reasonable "'anti-theft technology' is consistent with the broad standard for required devices under FMVSS 114." Dkt. No. 270 at 6.

Even if Tacoma's Complaint would restrict a manufacturer's choice of anti-theft devices (and it does not), such a restriction does not implicate conflict preemption where "it does not 'stan[d] as an obstacle to the accomplishment . . . of the full purposes and objectives' of federal law." *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323, 336 (2011) (alterations in original) (citation omitted). Defendants paint a narrow picture of FMVSS 114 as requiring complete deference and flexibility to vehicle manufacturers. But Defendants forget that the primary goals in enacting federal safety regulations such as FMVSS 114 are to prevent vehicle theft and improve public safety. Accordingly, Defendants fail to show that Tacoma's Complaint conflicts with the full purposes and objectives of federal law.

**C.   Tacoma's Complaint Satisfies Federal Pleading Standards.**

In incorrectly arguing that the Complaint must specifically identify the defects at issue here, Mot. at 6-8, Defendants again mischaracterize the nature of Tacoma's legal claim. Specifically, Defendants rely on inapplicable caselaw regarding *product liability* claims where courts required plaintiffs to identify the particular defect at issue and the problem caused by the defect. *Id.* at 6.

Yet, Tacoma does not bring a product liability claim. The sole claim is for public nuisance, a statutory claim governed by RCW 7.48.010, that is not swept into the Washington Product Liability Act. *See City of Seattle v. Monsanto Co.*, 237 F.

9

No. 8:22-ML-03052-JVS-KES            TACOMA OPP'N TO MOT. TO DISMISS

Supp. 3d 1096, 1102 (W.D. Wash. 2017) ("Seattle's claims for public nuisance and equitable indemnity are not preempted because they are not common-law product liability claims."). The Court saw through this "unavailing" argument when denying Defendants' most recent motion to dismiss Chicago's Second Amended Complaint, because Chicago "does not bring a products liability claim." Dkt. No. 547 at 6.

As this Court previously noted, "Defendants unduly narrow the alleged harm by focusing solely on design defects." Dkt. No. 270 at 13. Nothing has changed since then. Tacoma's claim, like those the Court previously found sufficient, are not premised on a design defect. The design defect cases Defendants cite do not change that and whatever holdings they reach are limited to product liability claims and related claims with elements that require defects. For instance, in *Raynaldo v. American Honda Motor Co.*, No. 21-cv-05808-HSG, 2022 WL 4358096 (N.D. Cal. Sept. 20, 2022), the plaintiffs alleged that some unspecified "electrical components" failed to shut down when the subject vehicles were parked and turned off, resulting in battery draining. *Id.* at *1. In this unreported case Defendants rely on, the court dismissed the product liability claims for failing to identify the alleged defect, and also dismissed claims for fraudulent concealment (an element of which was pre-sale knowledge of the defect); and breach of express and implied warranty (an element of which is a defect which violates the applicable warranty). *Id.* at *9, 10, 15. Rather than identify any specific electrical component, or common issue, the plaintiffs inferred "parasitic draining" must exist due to reports of battery draining and electrical issues. *Id.* at *5.

In contrast, the sole claim asserted by Tacoma is one for public nuisance, the elements of which are (1) conduct that contributed to maintaining or creating a condition which (2) obstructs any highway or is injurious to health or an obstruction to the free use of property so as to essentially interfere with the comfortable

enjoyment of life and property. *See* RCW 7.48.010. The existence of a defect, let alone the particularized identification of a defect, is not an element of that claim, and there is no requirement to give notice of a defect in a claim for public nuisance. In *City of Seattle*, a Washington District Court expressly discussed the requisite notice pleading standards for that city's product liability claim, but that standard was not applicable to the city's separate public nuisance claim, which the court allowed to proceed. *Compare* 237 F. Supp. 3d at 1108-09 (product liability claim required identification of defect that existed in the product when it left Monsanto's hands), *with id.* at 1106 (specific nature of the PCB's defect not mentioned in determining the viability of the city's public nuisance claim).

Thus, Tacoma's Complaint does not hinge on sufficiently demonstrating the specifics of an automobile defect but rather by showing that Defendants' *conduct* substantially contributed to the creation of a public nuisance, which Tacoma has pled at length. *See, e.g.*, Compl. ¶¶ 53-65 (describing Defendants' misconduct).

## V.   CONCLUSION

The same reasons that led to the Court's outright denial of the motion to dismiss Seattle's nuisance claim in the CGEC support a similar outcome here. The legal basis for Tacoma's claim is identical in all material respects to Seattle's claim in the CGEC, and there is no reason to depart from this Court's well-reasoned order permitting that claim to proceed. Defendants' only "new" argument fails to appreciate the nature of the sole claim at issue here. Tacoma does not bring a product liability claim, so there is no heightened pleading standard requiring Tacoma to identify a particular defect. Accordingly, Tacoma respectfully requests the Court deny Defendants' Motion.

RESPECTFULLY SUBMITTED this 19th day of AUGUST, 2024.

| CITY OF TACOMA | KELLER ROHRBACK L.L.P. |
|---|---|
| By */s/ Jennifer Taylor*<br>Jennifer Taylor (*pro hac vice*)<br>Deputy City Attorney<br>Tacoma City Attorney's Office<br>747 Market Street, Room 1120<br>Tacoma, WA 98402<br>Telephone: (254) 591-5637<br>Fax: (253) 591-5755<br>jtaylor@cityoftacoma.org<br><br>*Counsel for Plaintiff City of Tacoma* | By */s/ Gretchen Freeman Cappio*<br>Gretchen Freeman Cappio (*pro hac vice*)<br>Derek W. Loeser (*pro hac vice*)<br>Ryan McDevitt (*pro hac vice*)<br>Alison Gaffney (*pro hac vice*)<br>Garrett Heilman (*pro hac vice*)<br>Zachary Gussin (*pro hac vice*)<br>Kylie Fisher (*pro hac vice*)<br>1201 Third Avenue, Suite 3400<br>Seattle, WA 98101<br>Telephone: (206) 623-1900<br>Fax: (206) 623-3384<br>gcappio@kellerrohrback.com<br>dloeser@kellerrohrback.com<br>rmcdevitt@kellerrohrback.com<br>agaffney@kellerrohrback.com<br>gheilman@kellerrohrback.com<br>zgussin@kellerrohrback.com<br>kfisher@kellerrohrback.com<br><br>*Counsel for Plaintiff City of Tacoma* |

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff City of Tacoma, certifies that this brief contains 3,329 words, which complies with the word limit of L.R. 11-6.1.

KELLER ROHRBACK L.L.P.

By */s/ Gretchen Freeman Cappio*
Gretchen Freeman Cappio (*pro hac vice*)
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
Telephone: (206) 623-1900
Fax: (206) 623-3384
gcappio@kellerrohrback.com

*Counsel for Plaintiff City of Tacoma*

**CERTIFICATE OF SERVICE**

I certify that on August 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Gretchen Freeman Cappio*
GRETCHEN FREEMAN CAPPIO