Gretchen Freeman Cappio (*Pro Hac Vice*)
gcappio@kellerrohrback.com
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3268
(206) 623-1900, Fax (206) 623-3384

*Counsel for City of Lorain, Ohio*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION, | No. 8:22-ML-3052-JVS(KESX)<br><br>The Honorable James V. Selna<br><br>**PLAINTIFF CITY OF LORAIN'S NOTICE AND MEMORANDUM OF SUPPLEMENTAL AUTHORITY** |
| *This Document Relates To:*<br><br>*City Of Lorain, Ohio v. Hyundai Motor Company, Hyundai Motor America, Kia Corporation, And Kia America, Inc.,*<br><br>CASE NO. 8:23-CV-02083 | |

Plaintiff the City of Lorain hereby submits supplemental authority in support of its opposition to Defendants' motion to dismiss Plaintiff's First Amended Complaint ("FAC"). In the Court's Tentative Order ("Tentative") and at oral argument, the Court invited the parties to cite additional cases that address, in the "novel set of circumstances" at issue here, whether it is "foreseeable that the decision to not install anti-theft technology in several models of vehicles would not just lead to thefts, but also to thieves hastily driving those vehicles away and causing harm[.]" Tentative at 9. This question relates to the causation element of Lorain's negligence claim, not to its public nuisance claim. The answer to the Court's question is that it is not only foreseeable, but a known risk, and municipal governments like Lorain must address not only the thefts themselves but also their consequences.

As Lorain alleges, NHTSA recognized as early as 1968 that:

> [S]tolen cars constitute a major hazard to life and limb on the highways. The evidence shows that cars operated by unauthorized persons are far more likely to cause unreasonable risk of accident, personal injury, and death than those which are driven by authorized individuals.

FAC ¶ 50; *see also* ¶ 51 ("'a reduction of the incidence of auto theft would make a substantial contribution to motor vehicle safety' and 'protect the many innocent members of the public who are killed and injured by stolen cars each year'"). Harms from post-theft conduct may not be foreseeable to individual car owners or even dealers when their cars are stolen, but as vehicle manufacturers and distributors, Hyundai and Kia knew the benefits of equipping their vehicles with anti-theft devices and chose not to do so, with predictable results. *See* FAC ¶¶ 65–67. That Lorain and cities like it would be harmed by the thefts and the post-theft conduct is foreseeable in light of all attending circumstances, and Defendants' cited authority does not change that.

Defendants cite three non-binding orders in personal injury cases, where federal district courts in Ohio dismissed claims against Hyundai and Kia by individual plaintiffs injured by thieves driving stolen cars. *See* Dkt. Nos. 427, 526 (*citing Fox v. Kia Am., Inc.*, 2024 WL 1328730 (N.D. Ohio Mar. 28, 2024), *Moshi v. Kia Am., Inc.* 2024 WL 3178689

(S.D. Ohio June 26, 2024), *Strench v. Hyundai Motor Am. Corp.*, 2024 WL 3178681 (S.D. Ohio June 26, 2024)). The *Moshi* and *Strench* cases, at least, are now on appeal to the Sixth Circuit. In their orders, those trial courts distinguished these personal injury cases from this Court's orders in the governmental entity and subrogation cases in the MDL. *See, e.g.*, *Fox*, 2024 WL 1328730, at *15; *id.* at *15 n.4.

*Fox*, *Moshi*, and *Strench*, in turn, rest on distinguishable Ohio caselaw involving actions against allegedly negligent vehicle owners or car dealerships. *See Pendrey v. Barnes*, 479 N.E.2d 283 (Ohio 1985); *Ross v. Nutt*, 203 N.E.2d 118 (Ohio 1964); *Tilton v. Austintown Motors, Inc.*, 1997 WL 816526 (Ohio Ct. App. Dec. 30, 1997); *Miles v. Cedar-Lee Chrysler-Plymouth, Inc.*, 1978 WL 218347 (Ohio Ct. App. Apr. 27, 1978). Of course, Defendants could have cited *Pendrey*, *Tilton*, and *Miles* when they moved to dismiss the Consolidated Government Entities' Complaint, which included the claims of several other Ohio municipalities, but they did not. And while Defendants did cite *Ross*, alongside cases with similar facts from other states, the Court considered and distinguished these similar cases. *See* Dkt. No. 270 at 10-11 (rejecting application of cases where vehicle owners inadvertently left their keys in their car).

None of the personal injury cases Defendants cite undermine the Court's reasoning in its order on the Consolidated Governmental Entities Complaint ("CGEC") and in its Tentative that "[t]heft is the very foreseeable conduct that *anti-theft devices* specifically protect against." Tentative at 7 (citing Dkt. No. 270 at 10) (emphasis in original). Nor does the logic of these personal injury cases apply to Lorain's public nuisance claims. *See Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1148 (Ohio 2002) (government entity complaint including public nuisance claims sufficiently alleged that as a result of the Defendants' misconduct, the city suffered injuries, including "'significant expenses for police, emergency, health, prosecution, corrections, and other services'" and thus causation was not too remote).[1]

---

[1] The plaintiffs in these cases purport to assert public nuisance claims in complaints seeking compensatory damages for their personal injuries, which is fundamentally

1  For Lorain's negligence claim, the FAC adequately pleads injuries stemming from Defendants' conduct, based on the resources Lorain has expended. *See, e.g.*, FAC ¶ 14 ("Among other harms, Plaintiff has been forced to divert funds . . . to combat the growing burden caused by increased Hyundai and Kia vehicle thefts and their many associated dangers, including reckless driving"). The harms to Lorain from post-theft conduct differ in type from the injuries at issue in Defendants' cited cases. *Compare id.* at ¶ 107 (discussing dedication of Lorain's resources to a "street crime unit to prevent and deter thefts of these vehicles and a detective to investigate crimes when these vehicles are stolen), *with Moshi*, 2024 WL 3178689, at *1 (thief driving a stolen Kia Optima ran a stop sign and crashed into another car, killing the driver—the plaintiff's decedent).

In examining the circumstances here, Ohio caselaw supports a finding that both damages due to the thefts themselves *and* damages due to post-theft conduct were reasonably foreseeable. If the Court finds foreseeability as to the post-theft conduct to be a close question about which reasonable minds could disagree, it is an issue of fact that should not be the basis for dismissal at the pleadings stage.

## I.     ARGUMENT

### A.    Vehicle Thefts and Post-Theft Conduct Foreseeably Harm Lorain

Ohio courts have long accepted that "the connection between the defendant's negligence as a proximate cause of an injury is not broken, if an intervening event is one which might in the natural and ordinary course of things be anticipated as reasonably probable[.]" *Taylor v. Webster*, 231 N.E.2d 870, 873 (Ohio 1967). Similarly, an intervening cause does not necessarily break the causal chain between a defendant's conduct and the plaintiff's injury "'if the intervening cause was set in motion by the defendant.'" *Mudrich v. Standard Oil Co.*, 90 N.E.2d 859, 863 (Ohio 1950) (quoting

---

different than a government entity's suit to abate a public nuisance affecting the entire community. This Court obviously need not address the merits of the personal injury plaintiffs' claims, and Lorain does not opine on them.

*Mouse v. Cent. Sav. & Tr. Co.*, 167 N.E. 868, 870 (Ohio 1929)); *see also Fed. Steel & Wire Corp. v. Ruhlin Const. Co.*, 543 N.E.2d 769, 775 (Ohio 1989) (defendant "may be liable for injuries to others notwithstanding the intervening criminal acts of some parties, where the defendant knows that there has been a history of repeated tampering or vandalism . . . and it is foreseeable that persons could be injured thereby without the implementation of adequate protective measures"). "The question always is: Was there any unbroken connection between the wrongful act and the injury, a continuous operation? Did the facts constitute a succession of events, so linked together as to make a natural whole[?]" *Mouse*, 167 N.E. at 870. Foreseeability is considered "in the light of all the attending circumstances." *Mudrich*, 90 N.E.2d at 863.

In *Mudrich*, a driver for the Standard Oil Company negligently overfilled an underground tank at a gas station, causing it to overflow and form pools of gasoline on the ground. 90 N.E.2d at 860. A group of young boys began playing at the gas station and one of the boys lit the pools of gasoline on fire, injuring the plaintiff, who was among the group. *Id.* at 860-61. The Supreme Court of Ohio, in affirming judgment against Standard Oil, held that "we cannot say as a matter of law that it cannot reasonably be foreseen that, if gasoline is carelessly left in pools on premises where children congregate and play, these pools will be set afire and in attempting to extinguish the fire a child or children will be burned." *Id.* at 864. Thus, the intervening act of one of the boys in lighting the fire did not sever the causal chain between the defendant's original negligence and the harm suffered. Nor was it "necessary that the defendant should have anticipated the particular injury. It is sufficient that his act is likely to result in an injury to someone." *Id.* at 863.

Here, Defendants' negligence in forgoing reasonable anti-theft technology in millions of its vehicles is akin to overfilling the gas tank in *Mudrich* and then failing to clean up the pools of gasoline, and the ongoing rash of auto thefts is like the ongoing vandalism in *Federal Steel* that resulted from the defendant's failure to take protective measures after the problem began. Despite the intervening acts of third parties, Defendants' cost-cutting decisions to omit anti-theft technology led to foreseeable injury

to governmental entities, like Lorain, that must respond to rampant thefts of those same vehicles, as well as associated crimes. It is eminently foreseeable that thieves do not follow traffic laws and municipalities such as Lorain will be called on to respond, regardless of whether innocent bystanders are injured. *See* FAC ¶ 105 ("officers with the Lorain Police Department have observed the stolen vehicles reach speeds of 90 miles per hour as the drivers of the stolen vehicles run red lights and disobey traffic laws").

Defendants' cited authority relies on the *Ross* and *Pendrey* line of cases, where the plaintiffs were injured individuals and the defendants were allegedly negligent vehicle owners, not vehicle manufacturers. The *Ross* court ruled that "[t]he proximate cause of the injuries . . . was the negligent act of the thief in the operation of the vehicle[,]" as opposed to the alleged negligence of the owner of the vehicle that was then stolen, creating "a new and independent force which severed the chain of causation" between the vehicle owner's original negligence and the plaintiff's harm. *Ross*, 203 N.E.2d at 120; *see also Pendrey*, 479 N.E.2d at 283-84 ("[W]hile the theft may have been anticipatable, the subsequent negligent use of the vehicle to injure a third party was not."). Here, the defendants are car manufacturers, and the plaintiff is the municipal government that has suffered harms caused both by the theft of Defendants' vehicles—thefts that occur on a uniquely widespread basis as a foreseeable result of Defendants' failure to install reasonable anti-theft technology—*and*, at times, the negligent operation of stolen vehicles, or the use of those vehicles to commit other crimes. The nature of Lorain's injuries differs substantially from those of personal injury plaintiffs, and Lorain's injuries are foreseeable by Defendants in a way that personal injuries to an individual might not be to the owner of a vehicle that is stolen.[2]

Unlike the victims in *Fox*, *Strench*, and *Moshi*, harms to municipalities in expending time and resources in responding to vehicle theft exist irrespective of a

---

[2] Even if harm from theft and harm from the post-theft conduct could be neatly separated, Defendants would still be liable for the substantial harm caused solely by thefts.

| Case No. 8:22-ML-3052-JVS(KESX) | 5 | Plaintiff's Not. & Memo of Supplemental Authority |

subsequent collision or accident, and those foreseeable additional risks, when they occur, increase the resources municipalities must expend. That is, post-theft incidents increase the magnitude of the harm to cities like Lorain, but not the type, and are equally foreseeable. *See Beretta*, 768 N.E.2d at 1148 ("'[H]arm to Plaintiffs may exist even if no third party is harmed. . . . Even if no individual is harmed, Plaintiffs sustain many of the damages they allege due to the alleged conduct of Defendants'") (quoting *City of Boston v. Smith & Wesson Corp.*, 2000 WL 1473568, at *6 (Sup. Ct. Mass. July 13, 2000)) (alterations in original); *see also* Dkt. No. 270 at 8 ("Whether it is through the theft of a car, the fleeing of suspects, or the collision with other vehicles . . . perhaps no other product impacts public safety or engages law enforcement and municipal governments to a greater extent than automobiles" and "[g]iven the public nature of automobiles, the burden of theft does not fall on vehicle owners alone, but their municipalities as well.").

**B.     Foreseeability, for Negligence, Is a Question for the Jury**

As this Court has previously recognized, under Ohio law it is reasonably foreseeable that Defendants' negligence would harm government entities, both due to their response and investigation of widespread thefts and through the additional resources required for post-theft crimes or collisions. These are precisely the types of harms that Lorain alleges. *See* FAC ¶ 85 (discussing Lorain's diversion of resources based on need to respond to growing thefts, "leav[ing] fewer resources for combatting other crimes and enhancing community safety"), ¶ 107 (creation of street crime unit to prevent thefts), ¶ 108 (arrests made of "9 people in connection with Kia and Hyundai car thefts—6 of whom were juveniles ranging in age from 13 to 17 years old"). Lorain's situation is readily distinguishable from *Ross* and its progeny, but "[n]ovelty does not impair or preclude that advancement of the law." Dkt. No. 270 at 9. Moreover, the novelty of the instant circumstances illustrates that these are factual determinations to be decided by a jury, with the benefit of discovery, and not to be decided as a matter of law. *See Mudrich*, 90 N.E.2d at 864 ("Whether [intervening action of lighting gasoline pool on fire and attempt to extinguish the fire] were reasonably foreseeable presented a question upon

which reasonable minds might differ and, therefore, . . . the question of foreseeability was one for the jury."); *see also Ohio Fair Plan Underwriting Ass'n v. Arcara*, 417 N.E.2d 115, 120-21 (Ohio Ct. App. 1979) ("There was sufficient evidence for the jury to determine whether, under all the facts and circumstances in the case, the arson and the resulting damage were reasonably foreseeable, and therefore appellee's negligence was the proximate cause of the damage to appellant"). The unique circumstances surrounding Lorain's harms differ in type from the personal injury harms at issue in *Fox*, *Strench*, and *Moshi*. And the factual inquiry and discovery necessary to determine the scope of foreseeability as to all of Lorain's harms cannot be resolved at the pleadings stage.

## II.   CONCLUSION

Nothing in the cases cited by Defendants changes this Court's prior determination that similar cases involving "a car thief's breaking of the causal chain between a *vehicle owner* and a third party's injury" are "'markedly different'" from circumstances where "the defendants are manufacturers selling millions of cars without anti-theft technology, rather than individual car owners inadvertently leaving their keys in their vehicles.'" Dkt. No. 270 at 10-11 (citing Dkt. No. 240 at 15-16). Defendants cite non-binding personal injury cases in which the injuries hinged *entirely* on the intervenor's negligent post-theft conduct. The same cannot be said for Lorain, whose injury begins at the moment a vehicle is reported stolen and extends through responding to any further dangers to public safety that follow. This is a natural and foreseeable consequence of Defendants' decision to forgo reasonable anti-theft technology. The courts in *Fox*, *Strench*, and *Moshi* distinguished this Court's orders in the MDL, and this Court should do the same with those opinions. The Court's Tentative as written would correctly deny Defendants' motion to dismiss, but even if reasonable minds could disagree as to the foreseeability of Lorain's injuries attributable to post-theft conduct, dismissal at the pleadings stage of the negligence claim on causation grounds would not be the correct remedy.

1  DATED this 19th day of August, 2024.

By */s/ Gretchen Freeman Cappio*
Gretchen Freeman Cappio (*pro hac vice*)
Ryan McDevitt (*pro hac vice*)
Garrett Heilman (*pro hac vice*)
Kylie Fisher (*pro hac vice*)
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Fax: (206) 623-3384
gcappio@kellerrohrback.com
rmcdevitt@kellerrohrback.com
gheilman@kellerrohrback.com
kfisher@kellerrohrback.com

*Counsel for Plaintiff City of Lorain, Ohio*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiff City of Lorain, Ohio, certifies that this brief complies with the Court's order on August 19, 2024, that the brief contain no more than seven pages.

DATED this 19th day of August, 2024.

                        KELLER ROHRBACK L.L.P.

                       By */s/ Gretchen Freeman Cappio*
                           Gretchen Freeman Cappio (*pro hac vice*)
                           gcappio@kellerrohrback.com
                           1201 Third Avenue, Suite 3400
                           Seattle, WA 98101-3268
                           (206) 623-1900, Fax (206) 623-3384

                       *Counsel for City of Lorain, Ohio*

# CERTIFICATE OF SERVICE

I certify that on August 19, 2024, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ Gretchen Freeman Cappio
GRETCHEN FREEMAN CAPPIO