QUINN EMANUEL URQUHART & SULLIVAN LLP
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

*Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ML-03052-JVS-(KESx) |
| | The Honorable James V. Selna |
| | **DEFENDANTS' RESPONSE TO PLAINTIFF CITY OF LORAIN'S MEMORANDUM OF SUPPLEMENTAL AUTHORITY** |
| This Document Relates to: | |
| *City of Lorain, Ohio v. Hyundai Motor Company, Hyundai Motor America, Kia Corporation, and Kia America, Inc.*, Case No. 8:23-cv-02083 | |

# **PRELIMINARY STATEMENT**

Plaintiff's Memorandum of Supplemental Authority ("Memo") does not, as the Court requested, provide supplemental authority and brief commentary regarding when a defendant can be liable for downstream harms despite intervening criminal acts. Plaintiff provides no authority, new or otherwise, on this issue. Instead of attempting to supplement its existing causation argument, Plaintiff seeks a do-over, re-framing its positions and offering new arguments. Plaintiff's new contention is that Ohio cases on spilled gasoline and vandalism are more on-point than Ohio cases addressing the precise issue before the Court—whether conduct that allegedly makes a car easier to steal proximately causes car thieves to commit post-theft crimes. Plaintiff does not dispute that every Ohio case to address that question—including three cases analogous to Plaintiff's—has found proximate cause lacking as a matter of law. That unbroken rule precludes Plaintiff from holding Defendants liable for thieves' post-theft criminal conduct.

## **Argument**

## I. **PLAINTIFF'S SUPPLEMENTAL CASES ARE INAPPOSITE**

Plaintiff's supplemental authority consists of three cases—*Mudrich v. Standard Oil Co.*, 90 N.E.2d 859 (Ohio 1950); *Federal Steel & Wire Corp. v. Ruhlin Construction Co.*, 543 N.E.2d 769 (Ohio 1989); and *Ohio Fair Plan Underwriting Association v. Arcara*, 417 N.E.2d 115 (Ohio Ct. App. 1979)—all of which were discussed at the hearing on the Motion to Dismiss. Lorain Hearing Tr. 20:21–22:12. Plaintiff's discussion of these cases takes up less than three pages of its submission, *see* Memo 3–4, 6–7; does not "directly address" whether it is "foreseeable that the decision to not install anti-theft technology in several models of vehicles would not just lead to thefts, but also to thieves hastily driving those vehicles away and causing harm," Tentative 9; and certainly does not explain why these cases justify deviating from the "unbroken line of authority" which establishes that a car thief's post-theft

DEFENDANTS' RESPONSE TO PLAINTIFF'S MEMORANDUM OF SUPPLEMENTAL AUTHORITY

conduct is unforeseeable as a matter of Ohio law and breaks the chain of proximate causation, Mot. 1–2, 9–12.

*Federal Steel* has no bearing on the question of causation. The issue there was one of duty, specifically whether the defendant had a "special duty" to the plaintiff. *Fed. Steel*, 543 N.E.2d at 770. Duty arguments are beyond the scope of this submission. Tentative 8–9; Lorain Hearing Tr. 22:24–25:1. Even if duty were at issue, *Federal Steel*'s narrow holding that a "special duty" can arise where a person "exercis[ing] control over real or personal property" is "aware that the property is subject to repeated third-party vandalism, causing injury … off the controller's premises" has no bearing on this case. *Id.* at 775.[1]

*Ohio Fair* is similarly inapposite. There, the defendant was sued for fire damage to a house caused by a fire started at the defendants' neighboring property. *Ohio Fair*, 417 N.E.2d at 116–17. The court explained that although the fire was started by arsonists and not the defendants, the defendants might still be liable because they had been negligent as a matter of law in maintaining their property. *See id.* at 119. This decision was based on the fact that the dwelling was vacant and had been unoccupied for years, *id.* at 118–19; was in violation of **nineteen** Housing Codes, *id.* at 119; was determined to be a public nuisance months before the fire, *id.* at 117–18, 120; had no windows or doors, *id.* at 119; had been vandalized, *id.*; and had been the location of another fire five or six months before the at-issue fire, *id.* at 117, 120. Thus, the court found that whether another fire was foreseeable was a question for the jury. *Id.* at 120–21. The defendants' repeated, egregious failures in *Ohio Fair* are not

---

[1]  The situation in *Federal Steel* also bears no factual similarity to the situation here. There, the defendant was a construction contractor that "was in exclusive control and management of" a section of a bridge it was repairing that extended over the plaintiff's business. 543 N.E.2d at 770. The defendant was aware of "obvious" and "extraordinary crime problems," including "separate instances of vandals throwing 'rebar' and other construction materials off the bridge," which was the manner in which the plaintiff's property was later damaged. *Id.* at 770–71.

1   comparable to the distribution of vehicles that Plaintiff does not dispute *do* comply

2   with all relevant regulations.  *See* Lorain Hearing Tr. 10:14-17.

3       Plaintiff's reliance on *Mudrich* fares no better.  There, a gasoline deliveryman

4   overfilled underground gasoline tanks, causing standing pools of gasoline to appear

5   in a side yard where children played, and chose to leave the standing pools of gasoline

6   instead of doing something about it.  *Mudrich*, 90 N.E.2d at 860.  Afterwards, two

7   children, both under 8-years old, played on the premises and one was burned by a fire

8   that started in the pools of gasoline.  *Id.* at 860–61.  The claimed intervening cause

9   was not a criminal; rather, the defendant claimed the actions of the children in starting

10  the fire and then trying to put it out in an unreasonable way broke the chain of

11  causation because the burned child caused his own injuries.  *See id.* at 863.

12  Unsurprisingly, the court rejected the argument and held the question of foreseeability

13  was for the jury.  *Id.* at 864.  Plaintiff does not even attempt to equate the claimed

14  intervening cause in *Mudrich* with the intervening cause here.  Instead, Plaintiff

15  argues that "forgoing reasonable anti-theft technology … is akin to overfilling the gas

16  tank in *Mudrich* and then failing to clean up the pools of gasoline."  Memo 4.

17      That strained analogy makes little sense on its own terms, but is especially

18  unconvincing in light of the "unbroken line of authority" holding that a car thief's

19  post-theft criminal conduct is unforeseeable as a matter of Ohio law and breaks the

20  chain of proximate causation.  Mot. 1–2, 9–12.  There is no good reason for the Court

21  to analogize to spilled gasoline, vandalism, or housefires when Ohio courts have

22  repeatedly addressed the question before the Court and held that conduct that

23  allegedly makes a car easier to steal does *not* proximately cause thieves to engage in

24  post-theft bad acts.

25      Plaintiff's inability to cite to apposite cases despite having three opportunities

26  to do so (in its Opposition, at the hearing, and in its Memo) conclusively establishes

27  that the relevant Ohio case law is truly an "unbroken line of authority" that justifies

28  dismissing Plaintiff's claims in their entirety.

## II.    PLAINTIFF'S ARGUMENTS UNRELATED TO ITS SUPPLEMENTAL AUTHORITY ARE BOTH IMPROPER AND INCORRECT

Plaintiff raises a number of arguments not raised in its Opposition. These should be rejected out of hand both because they are beyond the scope of the requested submission (Lorain Hearing Tr. 22:24–23:1) and because Plaintiff waived any arguments not raised in its Opposition. *See, e.g.*, *Qureshi v. Countrywide Home Loans, Inc.*, 2010 WL 841669, at *6 n.2 (N.D. Cal. Mar. 10, 2010) (dismissing a claim without leave to amend to the extent it relied on challenged allegations not defended in opposition to a motion to dismiss). Out of an abundance of caution, Defendants address Plaintiff's improper arguments below.

### A.    Plaintiff's Effort To Cabin Causation To Its Negligence Claim Is Meritless Because Proximate Causation Is An Element Of Each Of Plaintiff's Claims

In its Tentative Order, the Court assumed *arguendo* that car thefts are foreseeable, and asked for cases showing whether it is "foreseeable that the decision to not install anti-theft technology in several models of vehicles would not just lead to thefts, but also to thieves hastily driving those vehicles away and causing harm[.]" Tentative 8–9. Plaintiff asserts—without citing any case law—that "[t]his question relates to the causation element of Lorain's negligence claim, not to its public nuisance claim." Memo 1. Plaintiff is incorrect. Proximate causation is an element of Plaintiff's public nuisance claims. *See, e.g.*, *City of Cincinnati v. Deutsche Bank Nat'l Tr. Co.*, 863 F.3d 474, 480–81 (6th Cir. 2017) (affirming dismissal of public nuisance claims where the city plaintiff failed to establish proximate causation and asserted "attenuated theories of damage: decreased tax revenue, increased police and fire expenditures, and increased administrative costs"). And Plaintiff's public nuisance claims pose exactly the same proximate cause question as its negligence claim: whether conduct that allegedly makes a car easier to steal proximately causes post-theft criminal conduct. Plaintiff offers no argument or authority suggesting that

this identical question should be analyzed differently in public nuisance law, much less that the long line of Ohio law on the subject is inapplicable to public nuisance.

### B.    Car Thieves' Post-Theft Conduct Is Unforeseeable As A Matter Of Ohio Law

Plaintiff spends much of its submission rearguing the merits of Defendants' authority showing that a car thief's post-theft conduct is unforeseeable as a matter of Ohio law and breaks the chain of proximate causation as to other defendants.[2]  Mot. 1–2, 9–12.  Plaintiff focuses much of its fire on *Fox v. Kia America, Inc.*, 2024 WL 1328730 (N.D. Ohio Mar. 28, 2024), *Strench v. Hyundai Motor America Corp. Service Co.*, 2024 WL 3178681 (S.D. Ohio June 26, 2024), and *Moshi v. Kia America, Inc.*, 2024 WL 3178689 (S.D. Ohio June 26, 2024).  Plaintiff, who had an opportunity to address these cases in its Opposition and at the hearing, again attempts to distinguish these actions as being "personal injury cases," but a review of the pleadings and the Ohio courts' dismissal orders shows that the plaintiffs in *Fox*, *Moshi*, and *Strench* asserted the same claims and allegations that Plaintiff asserts here.

The *Fox* plaintiff brought claims for negligence, absolute and qualified public nuisance, and product liability against Kia America, but amended its complaint and dropped all claims except for the product liability claim in response to a motion to dismiss based on, *inter alia*, abrogation under the Ohio Product Liability Act.  Mot. 10.  The plaintiffs in *Moshi* and *Strench* likewise brought negligence and public nuisance claims.  Reply 6.  And all of these cases were dismissed on the pleadings for lack of proximate causation.  *Id.*  Plaintiff cannot show otherwise.  Instead, Plaintiff argues that "[t]he unique circumstances surrounding Lorain's harms differ in type

---

[2]  These cases include: *Ross v. Nutt*, 203 N.E.2d 118 (Ohio 1964); *Pendrey v. Barnes*, 479 N.E.2d 283 (Ohio 1985); *Tilton v. Austin Motors, Inc.*, 1997 WL 816526 (Ohio Ct. App. Dec. 30, 1997); *Miles v. Cedar-Lee Chrysler-Plymouth, Inc.*, 1978 WL 218347 (Ohio Ct. App. Apr. 27, 1978); *Bugaj v. Nationwide Ins.*, 2009 WL 2678938 (Ohio Ct. App. Aug. 28, 2009); *Lagowski v. Shelly & Sands, Inc.*, 38 N.E.3d 456 (Ohio Ct. App. 2015).

from the personal injury harms at issue in *Fox*, *Strench*, and *Moshi*." Memo 7. This argument is meritless: **all of these cases allege public harm and are based on the same factual allegations**. *See, e.g.*, *Fox* Amended Compl. ¶¶ 7, 9, 12, 18–21, 24, 37, 45, 2024 WL 1328730 (No. 12); *Moshi* Second Amended Compl. ¶¶ 3–4, 19, 21, 2024 WL 3178689 (No. 17); *Strench* Amended Compl. ¶¶ 3–4, 19, 21, 2024 WL 3178681 (No. 19). Just like the personal injury plaintiffs in *Fox*, *Moshi*, and *Strench*, Plaintiff alleges that it was injured by the post-theft criminal conduct of car thieves. If, as Ohio law uniformly holds, that conduct is "an efficient intervening cause, a new and independent force which severed the chain of causation," *Pendrey v. Barnes*, 479 N.E.2d 283, 284 (Ohio 1985), then it precludes proximate cause for economic losses like Plaintiff's no less than for personal injury damages like those in *Fox*, *Moshi*, and *Strench*. In other words, if Ohio proximate-cause law bars the plaintiffs in those cases from recovering for their injuries in car accidents, there is no logical reason why it would let Plaintiff recover for the costs of responding to those car accidents.[3]

Plaintiff's suggestion that their injuries were foreseeable because FMVSS 114 notes the risk that stolen cars will be involved in accidents, Memo 1, likewise fails to distinguish *Fox*, *Moshi*, and *Strench*—which rejected identical allegations. *Compare* FAC ¶ 50 (quoting 33 Fed. Reg. 6471) *with Fox* Amended Compl. ¶ 24, 2024 WL 1328730 (No. 12) (same); *Moshi* Second Amended Compl. ¶¶ 3–4, 2024 WL 3178689 (No. 17) ("NHTSA's main motivation in enacting FMVSS 114 was its recognition" of accident risk) *and Strench* Amended Compl. ¶¶ 3–4, 2024 WL 3178681 (No. 19) (same).

---

[3]    Relatedly, Plaintiff argues in a footnote that *Moshi* and *Strench* "purport to assert public nuisance claims in complaints seeking compensatory damages for their personal injuries, which is fundamentally different than a government entity's suit to abate a public nuisance affecting the entire community." Memo 2–3 n.1. Tellingly, Plaintiff cites no authority to support this claim, and fails to mention that it does not merely request abatement as a remedy; it also requests "compensation for the economic loss suffered as a result of [the alleged] nuisance." FAC ¶¶ 134, 156. Plaintiff is a private plaintiff, regardless of how it tries to characterize itself.

Plaintiff cannot credibly argue that its claims are unique when it has based its complaint on the same causal chain asserted by these plaintiffs and has copied some of these allegations verbatim.

### C. Plaintiff's New Argument—That Vehicle Thefts Alone Caused Its Harms—Should Be Rejected

In its Opposition, Plaintiff did not dispute that its harms were based on post-theft conduct, Opp. 11–14, and expressly asserted that it "seeks to hold Defendants … accountable for the public safety crisis they caused," *id.* at 1. Plaintiff now asserts that its claims are based on both theft and post-theft conduct. Memo 5 & n.2. Plaintiff waived this argument by not raising it in its Opposition. *See, e.g.*, *Qureshi*, 2010 WL 841669, at *6 n.2. Regardless, this argument is meritless. If Plaintiff were to have its way, every time a product is stolen, a product manufacturer or distributor would be forced to subsidize any resulting public services. That cannot be the rule.

Further, Plaintiff's public nuisance claims necessarily rely on post-theft conduct—*i.e.*, post-theft reckless driving and crime that threatens public safety. *See, e.g.*, FAC ¶¶ 1, 11, 12, 72, 76, 78–80, 105–06. Vehicle theft alone does not threaten public safety, but is rather, as noted by Plaintiff, "a property crime affecting vehicles." *See id.* ¶ 11. Without a threat to public safety, there is no public right that gives rise to a claim for public nuisance. *See Brown v. Scioto Cnty. Bd. of Comm'rs*, 622 N.E.2d 1153, 1158 (Ohio Ct. App. 1993) ("Conduct does not become a public nuisance merely because it interferes with a large number of people. At common law, there must be some interference with a public right which is common to all members of the general public."). Thus, Plaintiff's public nuisance claims must be dismissed because Defendants did not proximately cause the public safety issues Plaintiff alleges.

### CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiff's FAC without leave to amend.

1

DATED:  August 26, 2024

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  */s/ Steven G. Madison*
    Steven G. Madison (SBN: 101006)
    stevemadison@quinnemanuel.com
    Justin C. Griffin (SBN: 234675)
    justingriffin@quinnemanuel.com
    865 South Figueroa Street, 10th Floor
    Los Angeles, California 90017-2543
    Telephone:   (213) 443-3000
    Facsimile:    (213) 443-3100

    *Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF COMPLIANCE</u>**

       The undersigned, counsel of record for Defendants Hyundai Motor America and Kia America, Inc., certifies that this brief contains 2475 words, which complies with the word limit of L.R. 11-6.1.


DATED:  August 26, 2024      QUINN EMANUEL URQUHART &
                        SULLIVAN, LLP


                        By  */s/ Steven G. Madison*
                        Steven G. Madison (SBN: 101006)
                        stevemadison@quinnemanuel.com
                        Justin C. Griffin (SBN: 234675)
                        justingriffin@quinnemanuel.com
                        865 South Figueroa Street, 10th Floor
                        Los Angeles, California 90017-2543
                        Telephone:  (213) 443-3000
                        Facsimile:   (213) 443-3100

                        *Attorneys for Defendants Hyundai Motor*
                        *America and Kia America, Inc.*

DEFENDANTS' RESPONSE TO PLAINTIFF'S MEMORANDUM OF SUPPLEMENTAL AUTHORITY