QUINN EMANUEL URQUHART & SULLIVAN LLP
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

*Attorneys for Defendants*
*Kia America, Inc. and Hyundai Motor America*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL GOVERNMENTAL ENTITY CASES | Case No.: 8:22-ML-03052-JVS-(KESx)<br><br>**HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S BRIEF RE: USE OF BELLWETHERS AND BELLWETHER SELECTION PROCESS**<br><br>Judge: Hon. James V. Selna |

# TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT ........................................................................ 1

II. ARGUMENT ..................................................................................................... 2

    A. Ordering a Bellwether Process Now Would Be Premature .................... 2

    B. Any Bellwether Case Would Not Be Representative ............................. 5

    C. Bellwethers in the GE Track Will Not Promote Judicial Efficiency ..................................................................................................... 9

III. CONCLUSION ................................................................................................ 10

# TABLE OF AUTHORITIES

**Page**

### Cases

*In re 2004 DuPont Litig.*,
 No. 04-191, 2006 WL 5097316 (E.D. Ky. Mar. 8, 2006) ................................. 3

*Adams v. Deva Concepts*,
 LLC, 2023 WL 6518771 (S.D.N.Y. Oct. 4, 2023) ............................... 2, 3, 5, 7

*Auchard v. Tenn. Valley Auth.*,
 No. 3:09-CV-54, 2011 WL 444845 (E.D. Tenn. Feb. 1, 2011) ......................... 9

*In re Chevron U.S.A., Inc.*,
 109 F.3d 1016 (5th Cir. 1997) ..................................................................... 5, 9

*City of Chicago v. Beretta U.S.A. Corp.*,
 821 N.E.2d 1099 (Ill. 2004) ......................................................................... 6, 7

*Copart Indus., Inc. v. Consol. Edison Co. of N.Y.*,
 41 N.Y.2d 564 (1977) ....................................................................................... 7

*Meranus v. Gangel*,
 No. 85-9313, 1991 WL 120484 (S.D.N.Y. June 26, 1991) .............................. 2

*In re Methyl Tertiary Butyl Ether MTBE Prods. Liab. Litig.*,
 824 F. Supp. 2d 524 (S.D.N.Y. 2011) .............................................................. 6

*Zito v. Leasecomm Corp.*,
 233 F.R.D. 395 (S.D.N.Y. 2006) ..................................................................... 3

### Other Authorities

Manual for Complex Litigation (Fourth) § 22.315 (Fed. Jud. Ctr. 2004) ................ 5

Multidistrict Litigation, 82 Tul. L. Rev. 2323 (2008) ............................................. 9

U.S. CONST. amend. VII .......................................................................................... 3

## I. PRELIMINARY STATEMENT

GE Plaintiffs, as the moving parties, bear the burden of demonstrating that bellwether trials are appropriate here, including by identifying what issues might be decided preclusively using bellwether trials, explaining how the bellwether process will produce efficiencies rather than delay, and providing specific reasons for the selection of each representative case. Given the limited (and deficient) discovery provided to date, GE Plaintiffs cannot meet this burden. And, Defendants lack the basic, critical information necessary to propose a reliable and sound bellwether selection process (let alone choose potential candidates) that will result in the identification of plaintiffs representative of the larger pool. Specifically, GE Plaintiffs have yet to provide critical information about the thefts and attempted thefts, their efforts, if any, to respond to the thefts, the investigation and prosecution of the perpetrators of the thefts, the "related crimes" for which GE Plaintiffs also seek damages, and the budgetary impacts resulting from the alleged "catastrophic" crime wave. Accordingly, the Court should not address the topic of bellwethers, including whether they are appropriate in the first instance, until after the completion of Phase I discovery on January 17, 2025, at which point the Court and all counsel will have the benefit of the Court-ordered structural and foundational discovery —which was the Court's precise intent in constructing the Case Management Order's ("CMO") phased process.

By seeking to impose a bellwether process before the completion of Phase I discovery, GE Plaintiffs seek to relitigate this Court's order requiring all of the GE Plaintiffs to participate in discovery. GE Plaintiffs are pursuing this strategy because Phase I discovery will demonstrate that highly individualized factual inquiries underlying the causation, liability, and damages theories presented by the GE Plaintiffs would render any verdict or settlement in a bellwether case **not** "representative" and largely inapplicable and uninstructive to resolution of other GE cases. Indeed, the use of bellwethers in a track with just 29 plaintiffs, 22 of which are

represented by the same counsel, makes no sense. As a result, the use of bellwethers will not narrow or streamline the non-bellwether cases. Rather, it would only delay discovery and trial in the non-bellwether cases, as opposed to furthering their resolution or settlement—the opposite of efficiency.

Lastly, staying discovery in the non-bellwether cases will encourage other municipalities with unmeritorious claims to join the MDL in hopes of receiving a payout without having to materially participate in discovery. Notably, one GE Plaintiff, Fort Wayne, Indiana, the first GE Plaintiff scheduled to be deposed, has indicated its intent to dismiss its lawsuit with prejudice rather than appear for the Rule 30(b)(6) deposition.

For the reasons discussed further below, the Court should not order bellwethers here due to the individualized nature of the GE track cases. At a minimum, however, the Court should wait until the conclusion of Phase I discovery to discuss the appropriateness of bellwethers and any selection procedures.

## II.   ARGUMENT

### A.   Ordering a Bellwether Process Now Would Be Premature

Bellwethers are not appropriate in the GE Track. *See infra* Section II.B. But to the extent the Court is inclined to use bellwethers, no decisions relating to them should be made until after completion of Phase I discovery. A bellwether decision now would be premature given that discovery has just begun and GE Plaintiffs have yet to provide basic, critical information regarding their claims and alleged injuries. "Courts should be wary of premature decision-making regarding the bellwether process …." *Adams v. Deva Concepts*, LLC, 2023 WL 6518771, at *3 (S.D.N.Y. Oct. 4, 2023). To determine if cases can reliably serve as bellwethers that are representative of a larger pool of plaintiffs, discovery should proceed as to all plaintiffs. For example, discovery may demonstrate that "clusters of plaintiffs … have different attributes" requiring "stratified random sampling rather than pure random selection" which, in turn, requires "identification of the pertinent

2

characteristics and categorization of the plaintiffs according to those factors." *Meranus v. Gangel*, No. 85-9313, 1991 WL 120484, at *1 (S.D.N.Y. June 26, 1991); *see also Adams*, 2023 WL 6518771, at *7 ("Because the Court cannot choose 'representative plaintiffs for bellwether discovery … in a vacuum,' … plenary discovery must be conducted before, if at all, proceeding to the staggered, bellwether-centric approach …. Proceeding prematurely now would produce only inefficiencies and delay.") (citation omitted); *Zito v. Leasecomm Corp.*, 233 F.R.D. 395, 400 (S.D.N.Y. 2006) ("Whether there is some rational basis for deciding how to group the cases for trial is a matter best deferred until the close of discovery."); *In re 2004 DuPont Litig.*, No. 04-191, 2006 WL 5097316, at *2 (E.D. Ky. Mar. 8, 2006) (rejecting bellwethers based on "due process and Seventh Amendment concerns" and finding bellwethers "not appropriate" "at least until additional discovery [was] obtained by defendants"). In addition, as evidenced by GE Plaintiff Fort Wayne's decision on October 31, 2024 to voluntarily dismiss with prejudice, just six days before the city's 30(b)(6) deposition was scheduled, Defendants and the Court need "to flesh out the plaintiffs who are serious about pursuing a claim before proceeding to any eventual bellwether process." *Adams*, 2023 WL 6518771, at *7.

Specifically, Phase I discovery began in earnest on September 9, 2024, when the parties responded to the Court-approved fact sheets. Dkt. 503; Dkt. 536. GE Plaintiffs' Fact Sheet ("PFS") responses were deficient in many material respects. Between September 23, 2024 and October 3, 2024, Defendants met and conferred with each GE Plaintiffs' counsel regarding the deficiencies and, on October 18, 2024, detailed the deficiencies in a letter (the "Deficiency Letter"). GE Plaintiffs have yet to respond to the Deficiency Letter, or agree to a briefing schedule and hearing before Judge Andler on Defendants' anticipated motion to compel. Defendants intend to file a motion to compel before Judge Andler on November 8, 2024, should GE Plaintiffs fail to timely respond or cure the deficiencies by November 5, 2024.

1       The missing information and data is critical to assessing Plaintiffs' claims, their alleged harm, and potential defenses. Indeed, GE Plaintiffs agree the questionnaire responses are material for bellwether-related assessments. *See* Dkt. 368 at 2:19–21 (GE Plaintiffs concede the PFS were "drafted to provide the parties with the information needed to select bellwether(s)"). For example, Question No. 36 requests that each GE Plaintiff "provide the number of Other Crimes reported in [its] geographical area since January 1, 2011 on a month-by-month basis." Although "Other Crimes" is not defined in the PFS, it means crimes for which Plaintiffs' seek damages, *i.e.*, crimes associated with or related to the alleged thefts. Ex. A, June 18, 2024 Hr'g Tr. Before J. Andler, at 46; Dkt. 477-1, at 3:24–26. "Other Crimes" data is necessary because each GE Plaintiff seeks to hold Defendants liable not only for the uptick in thefts in Defendants' vehicles, but also for "opening the floodgates" for "crime sprees" related to such thefts, including reckless driving. *See, e.g.*, CGEC ¶ 88. While the majority of GE Plaintiffs did not include an explanation of how they interpreted the term "Other Crimes" in their responses to Question No. 36, it appears that they applied both incorrect and inconsistent interpretations of this term. Some GE Plaintiffs appear to have provided information about *all* crimes in their jurisdiction except motor vehicle theft, including those not associated with thefts of Defendants' vehicles or the damages GE Plaintiffs seek.

      Other than the deficient PFS responses, Defendants have yet to receive any other written discovery. Consistent with the April 16, 2024 CMO (Dkt. 370), on October 9, 2024, Defendants served 25 requests for productions ("RFPs") and 25 interrogatories ("ROGs") on the GE Plaintiffs. GE Plaintiffs' responses and objections are due November 8, 2024. *Id*. In addition, although Defendants served 30(b)(6) deposition notices on all 29 GE Plaintiffs, the parties have yet to agree on all the deposition dates and only recently resolved a dispute about the topics. The majority of structural and foundational discovery will thus occur between November and January 17, 2025 (the Phase I discovery deadline).

4

Here, as in *Adams*, Defendants are "operating in an information vacuum, and [they are] not able to discern what, exactly, the appropriate bellwether cases or categories would be to meaningfully test its arguments" rebutting GE Plaintiffs' claims. 2023 WL 6518771, at *7. And given the state of discovery, GE Plaintiffs' request for bellwethers cannot possibly be accompanied with "sufficient information that would support either the initial decision to [use bellwethers], or the structure through which to implement any such trials." *Id.* In light of the limited (and deficient) discovery produced by GE Plaintiffs to date and the current status of Phase I discovery, including no responses to written discovery or depositions, decisions regarding whether bellwethers are appropriate, and if so any selection process, should be deferred at minimum until *after* Phase I discovery is complete so Defendants and the Court can assess the differences across the GE plaintiff pool.

### B. Any Bellwether Case Would Not Be Representative

Bellwether trials serve to answer "causation or liability issues common to the universe of claimants" or provide reliable estimates of the settlement value of non-bellwether claims. *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997). To accomplish these goals, bellwethers must be representative of the universe of cases in the litigation. *See id.* (a "core element" of selecting a bellwether is "representativeness"); *Adams*, 2023 WL 6518771, at *5 ("For bellwether trials to serve as effective 'information indicators' or to produce reliable information, their test cases must be representative."); Manual for Complex Litigation (Fourth) § 22.315 (Fed. Jud. Ctr. 2004) (the selected plaintiffs and their claims "should be representative of the range of cases"). Applying trial or summary judgment rulings from non-representative bellwethers to other GE Plaintiff cases may also violate Defendants' due process rights. *See*, *e.g.*, *Chevron*, 109 F.3d at 1020–21. In addition, "[p]laintiffs advocating for a bellwether process should advance a 'basis for the selection of the specific bellwether cases,'" articulate "what issues might be decided preclusively on the basis of the bellwether cases," and "explain[] how proceeding in stages will

5

produce efficiencies rather than delay." *Adams*, 2023 WL 6518771, at *3 (citation omitted).

Each GE Plaintiff's nuisance and other related claims, and the injuries they allege in connection therewith, hinge on highly individualized facts that cannot reliably be extrapolated to other cases in the GE track. For example, in connection with their nuisance claims, GE Plaintiffs have generally alleged, as they must to satisfy the elements of these claims, that Defendants' conduct *substantially interfered* with a public right of the plaintiff. Consol. Gov't Entities Compl. ("CGEC") ¶¶ 311, 392, 410, 463, 501, 507; Dkt. 270 at 11–12. Materially relevant to the analysis of "substantial interference" is the magnitude and duration of the increase in theft of Defendants' vehicles experienced by each GE Plaintiff, which appear to widely differ across GE Plaintiffs based upon the limited information Defendants have obtained to date. *See, e.g.*, *In re Methyl Tertiary Butyl Ether MTBE Prods. Liab. Litig.*, 824 F. Supp. 2d 524, 537–38 (S.D.N.Y. 2011) (public nuisance claims require plaintiffs to show that defendants "*created* a condition that … affected a *substantial* number of people at the same time (*i.e.*, caused **significant harm** …."). For example, some GE Plaintiffs may have experienced modest and short-lived increases in thefts of Defendants' vehicles, while others had more pronounced and prolonged increases. Also relevant to the "substantial interference" element is whether each GE Plaintiff experienced increases in offenses linked to the thefts of Defendants' vehicles (*i.e.*, related crimes). *See, e.g.*, *City of Chicago v. Beretta U.S.A. Corp.*, 821 N.E.2d 1099, 1116–17 (Ill. 2004) (unreasonable interference with a public right includes conduct that "involves a significant interference with the public health … [or] public safety" or is "*of a continuing nature* or has produced a permanent or long-lasting effect, *and* … has a *significant effect* upon the public right"). Some GE Plaintiffs may have experienced modest (or no increases) in related crimes as compared to others. Therefore, whether each GE Plaintiff has a viable public nuisance claim will depend on, among other things, individualized assessments of complex data relating to the

increase (or lack thereof) in thefts of Defendants' vehicles and related crimes for which GE Plaintiffs seek damages, not to mention overall crime rates in each municipality.

Causation assessments in the GE Track will also require fact-intensive inquiries specific to each GE Plaintiff. For example, the timing of the increase in thefts of Defendants' vehicles as compared to pre or simultaneous vehicle theft trends generally is material to assessing whether the alleged nuisance was the result of Defendants' conduct or due to a broader trend in increased vehicle thefts. Some GE Plaintiffs may have experienced increases in thefts of Defendants' vehicles following years of increasing total vehicle thefts, while others experienced increased thefts of Defendants' vehicles following years of flat or decreasing vehicle theft rates.

Also essential to assessing causation is each GE Plaintiff's historical efficacy in addressing vehicle thefts, including but not limited to clearance rates (*e.g.*, the percentage of crimes solved by the police such as when a charge is laid upon an offender), reduction in police forces and budgets, lenient prosecutorial strategies, deliberate decisions not to prosecute particular types of crimes, and more lenient charging policies for juveniles, is relevant to whether the Plaintiffs' own actions (or inaction) caused, or contributed, to the alleged nuisance. *See, e.g.*, *Beretta*, 821 N.E.2d at 1127 (public nuisance causation established only when defendants' conduct is "so closely tied to the plaintiff's injury that he should be held legally responsible for it" and where, as here, "there are multiple factors that may have combined to cause the injury … defendant's conduct was a material element and a substantial factor in bringing about the injury"); *Copart Indus., Inc. v. Consol. Edison Co. of N.Y.*, 41 N.Y.2d 564, 569 (1977) (contributory negligence defense available in nuisance action premised on negligent conduct); *Adams*, 2023 WL 6518771 at *6 ("To meaningfully test these alternative theories of causation, Defendant must be allowed an opportunity to collect nuanced information to support its credible arguments."). Efforts to address vehicle thefts are critical factors for assessing causation and ultimately allocating

7

liability for the alleged nuisances and related claims and likely vary drastically across GE Plaintiffs.

Assessment of GE Plaintiffs' alleged harm will similarly require individualized fact-based inquiries. GE Plaintiffs seek to recover expenses associated with: (1) responding to thefts of Defendants' vehicles and related crimes; (2) retrieving stolen vehicles; (3) providing emergency medical services; and/or (4) repairing damage to public property, including public roads.[1] *See, e.g.*, CGEC ¶¶251, 295, 364, 488, 525. The resources each Plaintiff allegedly diverted or expended to respond to such crimes necessarily implicate municipality budgets and spending unique to each Plaintiff—and an absence in increased police spending might mean no harm at all.

In addition, flat or overall decreases in crime or theft rates during the relevant period would be consistent with *substitution* away from other criminal activity (or thefts of other vehicle makes), meaning increased thefts of Defendants' vehicles did not generate an overall increase in crime (or vehicle thefts) requiring additional resources. Or, if total crime (or vehicle thefts) continued on an upwards trend that predated the increase in thefts of Defendants' vehicles and related crimes, this could also be consistent with substitution away from other criminal activity (or thefts of other vehicle makes) and evidence that additional expenditures were not required. Accordingly, where there is evidence of "substitution," GE Plaintiffs will have difficulty demonstrating harm (*e.g.*, increased or diverted expenditures for police and prosecution departments) as a result of Defendants' alleged conduct. In contrast, GE Plaintiffs that experienced sharply increasing rates of total crime while the theft rates of Defendants' vehicles increased, may have a stronger argument that they have suffered harm in the form of increased or diverted expenditures or resources.

Because the facts relating to causation and liability are unique to each GE Plaintiff and accurate and reliable case assessments will require individualized

---

[1] Each GE Plaintiff also seeks abatement (*see, e.g.*, CGEC ¶¶264, 380, 535), an equitable an fact-specific remedy.

8

assessments of their disparate experiences, there is no "representative bellwether" trial that will provide answers on issues "common to the universe of claimants" or provide reliable estimates of settlement value of non-bellwether claims. Indeed, bellwethers do not make sense where they would, at best, determine the "single issue" of liability and "individualized causation and damages determinations [would] remain in the [non-bellwether] cases." *Auchard v. Tenn. Valley Auth.*, No. 3:09-CV-54, 2011 WL 444845, at *3 (E.D. Tenn. Feb. 1, 2011). Accordingly, the Court should therefore refrain from ordering bellwethers. Or, at most, the Court should make that decision *after* the completion of Phase I discovery, a process with which this Court has already agreed. *See* Dkt. 329 at 14:3–7 (in response to Defendants' argument that their "strong preference" was to conduct "fact discovery from all of the plaintiffs . . .through foundational discovery," the Court stated "I agree with that.")

### C. Bellwethers in the GE Track Will Not Promote Judicial Efficiency

Bellwethers are also the wrong tool to achieve judicial efficiency in the GE Track. *Chevron*, 109 F.3d at 1018, 1021 (the Court's "sympathies and appreciation for the efforts of the district court" to "control its docket and to move this case along" did not outweigh "due process concerns"). The GE track consists of just 29 Plaintiffs, after Fort Wayne's voluntary dismissal, with allegations, remedies, and issues of law and fact that are "quite different" from those in the remaining subrogation track. Ex. B, Feb. 7, 2023 Hr'g Tr. 9:25–10:16, 14:5–9, 15:21–16:1; Ex. C, Nov. 13, 2023 Hr'g Tr. 34:3–35:5. Bellwethers are rarely used with so few plaintiffs. *See, e.g.*, *Auchard*, 2011 WL 444845, at *2 (55 cases involving 450 plaintiffs weighed against using bellwethers, as "there are not thousands of plaintiffs or thousands of cases before the Court"); Eldon E. Fallon *et. al.*, Bellwether Trials in Multidistrict Litigation, 82 Tul. L. Rev. 2323, 2349 (2008) ("[B]ellwether trials will generally only be utilized in large-scale MDL …. typically consist[ing] of thousands of individual cases.").

Defendants want these cases resolved, and the most efficient and fair way to make that happen is for the Court to allow plenary, case-specific discovery into all

GE Plaintiffs' claims and defenses to the same. Allowing Defendants to proceed with all phases of discovery of all GE Plaintiffs will enable the parties to gain a full understanding of the strengths and weaknesses of their claims and defenses, thereby creating an environment conducive to determining which, if any, cases should proceed to trial. And, the substantial fact differences across different GE Plaintiffs will impair bellwethers' utility for helping the parties assess or value non-bellwether claims. As a result, bellwethers would not expedite resolution of this litigation, but instead would likely draw it out, not only because of the delayed non-bellwether cases but also the addition of new municipalities with weak claims hoping to piggyback on the hope for a future global settlement without having to participate in discovery.

### III. CONCLUSION

The Court should not use bellwethers in the GE Track given the factual differences across GE Plaintiff's cases (or wait until after Phase I to make such a determination). Should the Court determine use of bellwethers is appropriate, it should defer selection until sufficient discovery is complete.

DATED: November 5, 2024

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By */s/ Steven G. Madison*
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

*Attorneys for Defendant
Kia America, Inc. and Hyundai Motor America*