KELLER ROHRBACK L.L.P.
Gretchen Freeman Cappio (*pro hac vice*)
gcappio@kellerrohrback.com
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Phone: (206) 623-1900
Fax:     (206) 623-3384

*Chair of the Governmental
Entities Committee*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ML-3052-JVS-(KESx) |
| | The Honorable James V. Selna |
| | **OHIO GOVERNMENTAL ENTITY PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS** |
| *This document relates to:* | |
| OHIO GOVERNMENTAL ENTITY CASES | |

# **TABLE OF CONTENTS**

I.    INTRODUCTION ...........................................................................1

II.    BACKGROUND ..........................................................................2

III.    ARGUMENT.................................................................................4
    A.    This Court Should Not Risk Inconsistent Rulings. .............................4
    B.    Ohio GE Plaintiffs' Negligence Claims Are Not "Product
    Liability Claims" Under OPLA...........................................................6
        1.    OPLA Does Not Abrogate Negligence Claims that Do Not
        Seek Non-Economic "Compensatory Damages".....................8
        2.    The Negligence Claims Are Not Public Nuisance Claims.......10

IV.    CONCLUSION ...........................................................................13

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

5

*Allen Freight Lines, Inc. v. Consol. Rail Corp.*,
    64 Ohio St.3d 274, 595 N.E.2d 855 (1992) .......................................................11

6

7

*Cincinnati v. Beretta U.S.A. Corp.*,
    2002-Ohio-2480, 95 Ohio St. 3d 416 .........................................................4, 10

8

*City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*,
    254 F.3d 882 (9th Cir. 2001)................................................................................5

9

10

*Coinbase, Inc. v. Bielski*,
    599 U.S. 736 (2023)..............................................................................................5

11

12

*Colfor Mfg., Inc. v. Macrodyne Techs., Inc.*,
    668 F. Supp. 3d 718 (N.D. Ohio 2023) .........................................................8, 11

13

14

*Darwish v. Ethicon, Inc.*,
    No. 1:20-CV-1606, 2020 WL 7129582 (N.D. Ohio Dec. 4, 2020) ...................11

15

*Federated Rural Electric Management Corp. v. Electro Switch Corp.*,
    No. 2:19-cv-3049, 2020 WL 3255144 (S.D. Ohio 2020)....................................8

16

17

*Great N. Ins. Co. v. BMW of N. Am. LLC*,
    84 F. Supp. 3d 630 (S.D. Ohio 2015) ...............................................................11

18

19

*Griggs v. Provident Consumer Disc. Co.*,
    459 U.S. 56 (1982)................................................................................................5

20

21

*Huffman v. Electrolux N. Am., Inc.*,
    961 F. Supp. 2d 875 (N.D. Ohio 2013) .......................................................11, 12

22

23

*LaPuma v. Collinwood Concrete*,
    661 N.E.2d 714 (Ohio 1996)................................................................................9

24

25

*Mitchell v. Proctor & Gamble*,
    No. 2:09-CV-426, 2010 WL 728222 (S.D. Ohio Mar. 1, 2010) .......................13

26

27

*In re Nat'l Prescription Opiate Litig.*,
    ___ N.E.3d ___, 2024 WL 5049302 (Ohio Dec. 10, 2024) .......................*passim*

28

*In re Nat'l Prescription Opiate Litig.*,
    622 F. Supp. 3d 584 (N.D. Ohio 2022) ..........................................................3, 4

*Paulus v. Citicorp N. Am., Inc.*,
    No. 2:12-CV-856, 2013 WL 5487053 (S.D. Ohio Sept. 30, 2013) ...................11

*Perry v. Ethicon, Inc.*,
    No. 2:20-CV-6592, 2022 WL 912214 (S.D. Ohio Mar. 29, 2022)....................11

*SolarCity Corp. v. Salt River Project Agric. Improvement & Power
    Dist.*,
    No. 2:15-cv-00374, 2016 WL 5109887 (D. Ariz. Sept. 20, 2016) .................5, 6

*Yokois v. Arizona Dep't of Corr.*,
    No. 2:16-cv-02856, 2020 WL 8996587 (D. Ariz. May 20, 2020)......................6

**Statutes**

Ohio Product Liability Act.................................................................................*passim*

Ohio Rev. Code § 2307.71(A)(13) ....................................................................*passim*

Ohio Rev. Code § 2307.71(B)....................................................................................2

Ohio Rev. Code § 2307.72(C)....................................................................................9

**Other Authorities**

1 CV Ohio Jury Instructions, 401.01 *Negligence* ..................................................11

1 CV Ohio Jury Instructions, 401.41 *Reckless conduct, wanton or
    willful misconduct* ..............................................................................................12

Fed. R. Civ. P. 8(d)(2)..............................................................................................11

Ohio State Constitution.............................................................................................12

Restatement (Second) of Torts § 302B......................................................................10

Allan Ides *The Authority of a Federal District Court to Proceed After a
    Notice of Appeal Has Been Filed*, 143 F.R.D. 307 (1992)................................5

-iii-

Case No. 8:22-ML-03052-JVS-(KESx)                    GE PLTFS.' OPP. TO DEFS.' 12(C) MOT.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

David Ferrara, et al., *Father accused of killing sheriff's deputy after police fatally shot son. What we know*, Cincinnati Enquirer (last updated May 6, 2025, 6:05 PM), https://www.cincinnati.com/story/news/2025/05/04/father-accused-of-killing-hamilton-co-sheriffs-deputy-what-we-know/83443948007/. ...................................................................... 12

U.S. Courts of Appeals Judicial Business *Table B-4-A: Median Times for Civil and Criminal Cases Terminated on the Merits* (Sept. 30, 2024), https://www.uscourts.gov/sites/default/files/202501/jb_b4a_0930.2024.pdf ........................................................................... 6

-iv-

# I.    INTRODUCTION

Years after this litigation was initiated, the Hyundai and Kia theft crisis rages on, with tragic and foreseeable consequences for the GE Plaintiffs and their constituents. Defendants seek to contort the Ohio Product Liability Act ("OPLA") to shield themselves from all liability in Ohio, stretching the statute and the Ohio Supreme Court's recent ruling to essentially abrogate any common-law claims for serious negligence with reckless indifference. Defendants move again to dismiss the Ohio GE Plaintiffs' negligence claims—claims that are currently under review before the Ninth Circuit—based on a recent decision expressly limited to common law public nuisance claims.

Defendants deprived this Court of jurisdiction to consider the present motion when they appealed the negligence claims to the Ninth Circuit. While this Court certified for interlocutory appeal a narrow question of law related to the existence of common law duty, Dkt. 298, Defendants have asked the Ninth Circuit to review the entirety of this Court's Order, Dkt. 270, which largely denied Defendants' motion to dismiss. Defendants make similar arguments to the Ninth Circuit, citing the same new Ohio authority, regarding the same claims that they now also ask this Court to dismiss. *See* Ninth Circuit Appellants' Reply at *19. While the Ninth Circuit may well decline to consider arguments beyond the scope of this Court's certified question, it is possible that the Court of Appeals will reach the issue and enter an order on the merits affirming this Court's ruling that the Ohio common-law negligence claims are well-pled. Rather than invite the risk of inconsistent rulings, this Court should deny Defendants' motion.

If this Court nonetheless chooses to exercise jurisdiction over issues Defendants have also asked the Ninth Circuit to address, the Court should look no further than the text of OPLA. The statute abrogates common law "product liability claims," which it defines, as pertinent to this motion, as claims arising from products that (1) seek non-economic "compensatory damages;" or (2) are predicated on the

interference with "a right common to the general public." Ohio Rev. Code § 2307.71(A)(13). "Compensatory damages," as used in OPLA and as used herein, only covers damages "for death, physical injury to person, emotional distress, or physical damage to property. . . ." Ohio Rev. Code § 2307.71(A)(13). It does not cover claims of pure economic loss. The Ohio GE Plaintiffs' negligence claims expressly disclaim non-economic "compensatory damages" and do not allege or depend on the Court finding Defendants interfered with any public right. OPLA therefore has no effect on these claims and the Court should deny Defendants' motion.

## II.    BACKGROUND

Defendants argued OPLA abrogates the Ohio GE Plaintiffs' common law public nuisance claims in their initial motions to dismiss the Consolidated Governmental Entities Complaint and Lorain's First Amended Complaint. *See* Dkt. 222 (Mot. to Dismiss CGEC) at 54; Dkt. 427 (Mot. to Dismiss Lorain's FAC) at 8. The Court denied Defendants' motions at that time because the scope of OPLA's abrogation was "not immediately clear to the Court," and the Ohio State Supreme Court was then "weigh[ing] this very question." Dkt. 270 (Ord. re Defs.' Mot. to Dismiss CGEC) at 14; Dkt. 596 (Ord. Denying Defs.' Mot. to Dismiss Lorain's FAC) at 7–8 (reaching the same conclusion).

The scope of OPLA's abrogation is grounded in its statutory text. OPLA is "intended to abrogate all common law product liability claims or causes of action." Ohio Rev. Code § 2307.71(B). OPLA defined a "product liability claim" in 2005 as:

> a claim or cause of action that is asserted in a civil action pursuant to sections 2307.71 to 2307.80 of the Revised Code *and that seeks to recover compensatory damages* from a manufacturer or supplier for death, physical injury to person, emotional distress, or physical damage to property other than the product in question, that allegedly arose from [the design, manufacture, distribution, or warnings or failure to warn associated with a product].

//

Ohio Rev. Code § 2307.71(A)(13) (2005) (emphasis added). Under that definition, the product liability claims abrogated by OPLA are limited by both the type of claim and type of remedy sought.

In 2007, in response to a lead paint public nuisance case, OPLA was amended to define "'product liability claim' [to] also include[] any *public nuisance* claim or cause of action at common law *in which it is alleged that . . . a product unreasonably interferes with a right common to the general public*." S.B. 117, 126th Gen. Assemb., Reg. Sess., 2006 Ohio Law File 198 (codified at Ohio Rev. Code § 2307.71(A)(13)) (emphasis added).

When this litigation began, it was unclear whether the 2005 remedy limitation from the general OPLA definition of a "product liability claim" extended to the 2007 public nuisance amendment. At the time, courts had found OPLA did not abrogate public nuisance claims seeking only economic damages. *See, e.g.*, *In re Nat'l Prescription Opiate Litig.*, 622 F. Supp. 3d 584, 599 n.19 (N.D. Ohio 2022). In its recent ruling, the Ohio State Supreme Court clarified that post-2007 the "statutory definition of 'product liability claim' includes *public-nuisance causes of action* regardless of the kind of relief requested." *In re Nat'l Prescription Opiate Litig.*, ___ N.E.3d ___, 2024 WL 5049302, at *4–5 (Ohio Dec. 10, 2024) ("Product-liability claims subsume all public-nuisance claims based on a product . . . The kind of relief requested is immaterial.").

The Ohio GE Plaintiffs do not dispute that the Ohio State Supreme Court's decision is dispositive of their common law public nuisance claims in this action and stipulated to their dismissal. Dkt. 841.

While the Ohio State Supreme Court was considering the scope of OPLA, this Court certified to the Ninth Circuit the narrow question of whether a negligence duty of care could arise under the common law of New York, Ohio, and Wisconsin, absent a special relationship. *See* Dkt. 298 at 1. Despite that narrow certification, Defendants argued that the Ninth Circuit could "review any other issue decided in the order on

-3-

Case No. 8:22-ML-03052-JVS-(KESx)                     GE PLTFS.' OPP. TO DEFS.' 12(C) MOT.

appeal," and invited the Ninth Circuit to specifically consider the effect of the Ohio *Opiate* Opinion. *See* Ninth Circuit Appellants' Reply at *13. GE Plaintiffs argued that the Ninth Circuit should decline that invitation. But the Ninth Circuit could nonetheless reach OPLA's effect on the Ohio GE Plaintiffs' claims, meaning there is a substantial risk of inconsistent rulings.

## III.    ARGUMENT

### A.    This Court Should Not Risk Inconsistent Rulings.

Defendants raise the same issues in this motion as they raised before the Ninth Circuit. In their reply before the Ninth Circuit, Defendants argue that "Plaintiffs' Ohio public-nuisance claims are foreclosed by the Ohio Supreme Court's recent decision holding that the Ohio Product Liability Act abrogates all common-law public-nuisance claims arising from the sale of products." Appellants' Reply at *19 (citing *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302 at *6–7). Similarly, on appeal, Defendants challenged the adequacy of the Ohio common-law negligence claims as pled, attempting to distinguish *Cincinnati v. Beretta U.S.A. Corp.*, 2002-Ohio-2480, 95 Ohio St. 3d 416, based on an archaic distinction between malfeasance and tortious nonfeasance. Appellants' Opening Brief at 23–24 n.6.

As this Court recently stated in the context of a motion in the Consumer Track of this litigation, "'the filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal.'" *In re Hyundai Kia Theft Litigation*, Order re: Motion for Equitable Relief, Dkt. 835 at 2 (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982)). In order to "'avoid the confusion and waste of time that might flow from putting the same issues before two courts at the same time,'" courts generally do not reconsider issues pending before an appellate panel. *Id.* (quoting *Kern Oil & Refining Co. v. Tenneco Oil Co.*, 840 F.2d 730, 734 (9th Cir. 1988)).

//

That principle is well-settled, and militates against this Court's consideration of this motion during the pendency of the Ninth Circuit appeal. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 740 (2023) (*Griggs* principle is "well settled"); *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001) (applying *Griggs* principle in the context of an interlocutory appeal).

The reasoning behind this commonsense principle is apparent here. Were this Court to issue a ruling in favor of Defendants on their motion, it would create an untenable "moving target" for the Ninth Circuit, modifying the order that is on appeal with regard to the claims certified for appeal. This material alteration of the issues on appeal would violate the *Griggs* principle. *See* Allan Ides, *The Authority of a Federal District Court to Proceed After a Notice of Appeal Has Been Filed*, 143 F.R.D. 307, 322 (1992).

Among the actions that impermissibly alter the status quo during the pendency of an interlocutory appeal are reconsiderations of Rule 12 motions like this one, or alterations of previous rulings. *See id.* at 325 n.113 (citing *Pro Sales, Inc. v. Texaco, U.S.A., Div. of Texaco, Inc.*, 792 F.2d 1394, 1396 (9th Cir. 1986)). In *SolarCity Corp.*, an interlocutory appeal was filed regarding whether certain affirmative defenses applied as a matter of law. *See SolarCity Corp. v. Salt River Project Agric. Improvement & Power Dist.*, No. 2:15-cv-00374, 2016 WL 5109887, at *3 (D. Ariz. Sept. 20, 2016). That appeal was found to have deprived the trial court of jurisdiction to consider the motion, as the Ninth Circuit's ruling had the potential to substantially and permanently affect the rights of the parties with regard to claims on appeal. *Id.* The same applies here, and this Court should instead continue with other phases of the litigation without ruling on the merits of claims presently before the Ninth Circuit.

Beyond the moving target concern, there is a substantial risk of conflicting rulings. By putting the question of OPLA abrogation at issue on appeal, and thereby inviting the Ninth Circuit to reach issues not included in the scope of this Court's certified question, Defendants have created a scenario where simultaneous rulings

-5-

related to the abrogative effect of OPLA could issue from two different courts. *See SolarCity Corp.*, 2016 WL 5109887, at *2 (distinguishing between interlocutory appeals of preliminary injunctions, which do not create a risk of inconsistent rulings on the merits, and interlocutory appeals of merits issues and defenses, which create looming risks of inconsistent rulings during the pendency of the appeal).

Rather than rule on the merits of claims that are currently subject to an interlocutory appeal, the Court should simply terminate the motion without prejudice. Not only would this avoid the risk of inconsistent rulings, it would preserve judicial and litigant resources. *See Yokois v. Arizona Dep't of Corr.*, No. 2:16-cv-02856, 2020 WL 8996587, at *1 (D. Ariz. May 20, 2020) (terminating motion without prejudice because it "would require the Court to consider aspects of the case involved in the appeal," which would be "an inefficient use of judicial resources" for both courts to consider the same issues simultaneously) (internal quotations omitted). The Ninth Circuit's oral argument was held on April 8, 2025, just over a month ago. The median time interval from oral argument to opinion or final order for non-prisoner civil appeals before the Ninth Circuit is 1.4 months. *See* U.S. Courts of Appeals Judicial Business, *Table B-4-A: Median Times for Civil and Criminal Cases Terminated on the Merits* (Sept. 30, 2024), https://www.uscourts.gov/sites/default/files/2025-01/jb_b4a_0930.2024.pdf.

To avoid an inconsistent ruling and to promote judicial economy, this Court should terminate the instant motion without prejudice to refiling after the Ninth Circuit's mandate issues.

### B.     Ohio GE Plaintiffs' Negligence Claims Are Not "Product Liability Claims" Under OPLA.

Defendants seek to extend abrogation to encompass *any* common law causes of action factually related to the manufacture, design, or distribution of a product, however fashioned. Defendants' arguments in favor of this radical departure from Ohio law fly in the face of the Ohio State Supreme Court's recent ruling, which

-6-

Case No. 8:22-ML-03052-JVS-(KESx)                          GE PLTFS.' OPP. TO DEFS.' 12(C) MOT.

instructs courts to look to the plain text of the two statutory definitions of a "product liability claim" to determine the abrogative effect of OPLA. *See In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *7. Plaintiffs' claims fall squarely outside of those definitions.

There are two ways a cause of action can fall into the OPLA definition of a "product liability claim." It can either be a common-law claim seeking non-economic "*compensatory damages*" from a manufacturer related to the design, manufacture, distribution, or promotion of a product, or it can be a "*public nuisance claim or cause of action at common law* in which it is alleged that . . . a product unreasonably interferes with a right common to the general public." Ohio Rev. Code § 2307.71(A)(13)) (emphasis added). The analytical framework is simple. If a common-law claim seeks non-economic "*compensatory damages*" related to a product, it is a "product liability claim," and abrogated by OPLA. Even if only economic damages are sought, the Ohio State Supreme Court clarified that OPLA abrogates common-law public nuisance claims related to a product. *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *6. However, if a common law claim seeks only economic damages and is not premised on an invasion of a public right, it is *not* a "product liability claim" abrogated by OPLA. Ohio Rev. Code § 2307.71(A)(13).



GE Plaintiffs, and the Ohio State Supreme Court, interpret "public nuisance" to modify the nouns "claim or cause of action" in "public nuisance claim or cause of

-7-

Case No. 8:22-ML-03052-JVS-(KESx)                    GE PLTFS.' OPP. TO DEFS.' 12(C) MOT.

action at common law," (i.e., OPLA applies to (1) public nuisance claims and (2) public nuisance causes of action). Defendants appear to interpret the same phrase to mean *any* "cause of action at common law," whether based in public nuisance or not, if the plaintiff alleges that the conduct related to a product interferes with any right common the general public. To reach this unsupported outcome, Defendants selectively omit the subjects of sentences, even when the Ohio State Supreme Court italicized those very words for emphasis. *Compare* Mot. at 9, 11 (Dkt. 823) with *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *4. That court's decision, when read completely, makes clear that OPLA does not abrogate negligence claims that do not seek non-economic "compensatory damages" and are not predicated on the invasion of a public right.

       1.   <u>OPLA Does Not Abrogate Negligence Claims that Do Not Seek Non-Economic "Compensatory Damages".</u>

A plaintiff may bring a common law claim for negligence to recover economic damages stemming from a product without running afoul of OPLA. *See Federated Rural Electric Management Corp. v. Electro Switch Corp.*, No. 2:19-cv-3049, 2020 WL 3255144, *2 (S.D. Ohio 2020). While OPLA abrogates most common law product liability claims, Ohio Rev. Code § 2307.71(A)(13), common law claims arising from a product remain viable provided they seek only "economic loss." *See Federated Rural Electric Mgmt. Corp.*, 2020 WL 3255144 at *2 (citing *LaPuma v. Collinwood Concrete*, 661 N.E.2d 714, 716 (Ohio 1996)) ("a cause of action seeking only economic loss is not a 'product liability claim' under the OPLA"); *accord Colfor Mfg., Inc. v. Macrodyne Techs., Inc.*, 668 F. Supp. 3d 718, 722 (N.D. Ohio 2023) ("The plaintiffs' negligence . . . claims seek to recover only 'economic damages and loss,' including 'the value of lost production time and lost profits.' . . . Accordingly, [those claims] do not satisfy the statutory definition of a 'product liability claim,' and the OPLA does not abrogate them.").

//

-8-

Case No. 8:22-ML-03052-JVS-(KESx)          GE PLTFS.' OPP. TO DEFS.' 12(C) MOT.

Not only is this the precedent of Ohio federal and state courts, it flows directly from the plain language of OPLA itself. OPLA is clear that claims for economic loss, other than those for public nuisance, are not abrogated.

> Any recovery of compensatory damages for economic loss based on a claim that is asserted in a civil action, other than a product liability claim, is not subject to sections 2307.71 to 2307.79 of the Revised Code, but may occur under the common law of this state or other applicable sections of the Revised Code.

Ohio Rev. Code § 2307.72(C). The Ohio GE Plaintiffs' claims seek economic loss and are not "product liability" claims under either definition provided in section 2307.71(A)(13)). Thus, they are not abrogated by OPLA, according to the plain text of the Act itself.

Defendants argue, without authority, that *LaPuma* is no longer good law. *See* Mot. at *8. Not so. *LaPuma* addressed whether, under the first paragraph of OPLA's definition of a "product liability claim," a claim that concerned a product was nonetheless outside the purview of OPLA if it sought only economic damages. *LaPuma*, 661 N.E.2d at 716. The recent ruling from the Ohio Supreme Court does not change that analysis. It clarified that the purely-economic damages carveout in the first paragraph does not apply to the public nuisance claims that are covered by the second paragraph defining a "product liability claim." Ohio Rev. Code § 2307.71(A)(13). If the Ohio State Supreme Court intended to overrule its prior decision, it would have done so expressly. Instead, it noted that while the legislature expressed a desire to overrule *Carrel*, the legislature "made no mention of our decision in *LaPuma*." *In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302 at *2.

Defendants cherry pick from the legislative history, conflating statements regarding an intent to abrogate all common law product liability claims with an intent to abrogate all common law claims related to products. *See* Mot. at *8. Setting aside that OPLA is not so sweeping as explained above, the Ohio State Supreme Court made clear in its ruling that resort to the legislative history of that Act is improper, as

the text of the statute is not ambiguous. *See In re Nat'l Prescription Opiate Litig.*, 2024 WL 5049302, at *7. The text of the first definition of a "product liability claim," is unambiguously limited to claims seeking non-economic "compensatory damages." Ohio Rev. Code § 2307.71(A)(13). GE Plaintiffs have disclaimed seeking such relief through their negligence claims. As such, those claims are outside the ambit of OPLA.

### 2. The Negligence Claims Are Not Public Nuisance Claims.

Painting with a broad brush, Defendants treat the negligence claims as public nuisance claims subject to OPLA. But they are not and they do not fit within the second definition of a "product liability claim" under OPLA because they are not predicated on an invasion of a public right.

The Ohio GE Plaintiffs' negligence claims have already been considered by the Court. *See* Dkt. 270 (Ord. re Defs.' Mot. to Dismiss CGEC). The Court found that the "theory of negligence," even if novel, fits within the contours of common-law negligence claims. *See* Dkt. 270 at 9. Put simply, Defendants' unreasonable decision to omit industry-standard anti-theft technology breached a duty of reasonable care and foreseeably led to increased costs on GE Plaintiffs, given the public nature of cars and the "basic duties of local law enforcement and highway patrol." *See id.* at 8.

This theory is clearly and plainly alleged in the CGEC. For instance, Ohio GE Plaintiffs allege that the "Defendants owed and continue to owe *the Ohio GE Plaintiffs* a duty not to expose *the Ohio GE Plaintiffs* to an unreasonable risk of harm," and that the breach of that duty foreseeably led to economic damages for the Ohio GE Plaintiffs. *See* CGEC at ¶¶ 350, 354, 359, 361, 364. These are textbook allegations for negligent conduct that exposes a plaintiff—the individual Ohio GE Plaintiffs—to an unreasonable risk of criminal conduct. *See* Restatement (Second) of Torts § 302B.

These claims are properly brought by the GE Plaintiffs, as only they can recover for the economic losses the municipalities incurred. *See* CGEC at ¶¶ 367–68; *Cincinnati v. Beretta U.S.A. Corp.*, 95 Ohio St.3d 416, 428 (2002).

//

-10-

Case No. 8:22-ML-03052-JVS-(KESx)                    GE PLTFS.' OPP. TO DEFS.' 12(C) MOT.

Defendants gesture towards merger, arguing that the GE Plaintiffs' negligence claims should be considered public nuisance claims. This argument is based on a squares-and-rectangles fallacy. While negligent conduct is an essential element of a qualified public nuisance claim, negligence claims like those asserted by the GE Plaintiffs do not have "interference with a right common to the general public" as an essential element. *See* 1 CV Ohio Jury Instructions, 401.01 *Negligence*. In other words, all qualified nuisance claims in Ohio may be negligence claims, but it does not follow that all negligence claims are public nuisance claims. Thus, while qualified public nuisance claims and negligence claims brought in the same complaint based on the same conduct may be merged at the summary judgment stage, assuming both have survived, *see Allen Freight Lines, Inc. v. Consol. Rail Corp.*, 64 Ohio St.3d 274, 276, 595 N.E.2d 855, 856 (1992), it would be premature to do so through a Rule 12 motion, *see Paulus v. Citicorp N. Am., Inc.*, No. 2:12-CV-856, 2013 WL 5487053, at *7 (S.D. Ohio Sept. 30, 2013). And there is no basis to do so here since the Ohio GE Plaintiffs have stipulated to the dismissal of their common law public nuisance claims. Dkt. 841.

It does not matter that the GE Plaintiffs initially brought public nuisance claims in addition to their negligence claims. Ohio courts allow plaintiffs to plead both OPLA and non-OPLA claims in the same action, even if they arise out of the same nexus of facts, as alternative theories of liability. *See, e.g.*, *Colfor Mfg., Inc. v. Macrodyne Techs.*, Inc., 668 F. Supp. 3d 718, 721–23 (N.D. Ohio 2023); *Perry v. Ethicon, Inc.*, No. 2:20-CV-6592, 2022 WL 912214, at *2–7 (S.D. Ohio Mar. 29, 2022); *Darwish v. Ethicon, Inc.*, No. 1:20-CV-1606, 2020 WL 7129582, at *3–4 (N.D. Ohio Dec. 4, 2020); *Great N. Ins. Co. v. BMW of N. Am. LLC*, 84 F. Supp. 3d 630, 649 (S.D. Ohio 2015); *Huffman v. Electrolux N. Am., Inc.*, 961 F. Supp. 2d 875, 881–82 (N.D. Ohio 2013). Whether analyzed textually, based on OPLA's express language; under the *Erie* doctrine, as Fed. R. Civ. P. 8(d)(2) authorizes pleading in the alternative; or based on the Ohio state constitution, *see Huffman*, 961 F.Supp.2d at 881 *on reconsideration*

-11-

Case No. 8:22-ML-03052-JVS-(KESx)                    GE PLTFS.' OPP. TO DEFS.' 12(C) MOT.

*sub nom. Huffman v. Electrolux Home Products, Inc.*, No. 3:12-CV-2681, 2013 WL 5591939 (N.D. Ohio Sept. 30, 2013), the weight of the authority in Ohio allows plaintiffs to plead OPLA and non-OPLA claims simultaneously, without fear of abrogation-through-contamination.

Similarly, Defendants conflate the "reckless disregard of the safety and health" GE Plaintiffs allege to support their negligence claims with an invasion of a public right alleged to support a public nuisance claim. *See* Mot. at 10–11. GE Plaintiffs plead that allegation in support of their claim for punitive damages: Defendants' misconduct foreseeably created an unreasonable risk of economic harm to the GE Plaintiffs, and such reckless disregard warrants punitive damages.[1] *See* 1 CV Ohio Jury Instructions, 401.41 *Reckless conduct, wanton or willful misconduct*. It is akin to an aggravating factor. Yet, by pointing to specific language related to the now-abrogated Ohio common-law public nuisance claims, Defendants seek to characterize the entire complaint as sounding in public nuisance. *See* Mot. at 10–11. That is not how pleading multiple claims in the alternative works, and it is not how these pleadings are structured. The duty alleged in the negligence claims is to the GE Plaintiffs, not their residents, and the remedies sought are economic and punitive damages, which are non-OPLA remedies.

Separately, Plaintiffs alleged that Defendants interfered with rights common to the public in support of the common law public nuisance claims they have since stipulated to dismiss. *See, e.g.*, Dkt. 175 (CGEC) at ¶¶ 327, 330, 331; Dkt. 841. Defendants may not impute those allegations to the negligence claims. Even if they

---

[1] To be clear, Defendants' misconduct continues to cause unconscionable harm in Plaintiffs' communities. Earlier this month, in Cincinnati, an 18-year-old and, later, an officer both died in connection with an incident involving a stolen Kia. *See* David Ferrara, et al., *Father accused of killing sheriff's deputy after police fatally shot son. What we know*, Cincinnati Enquirer (last updated May 6, 2025, 6:05 PM), https://www.cincinnati.com/story/news/2025/05/04/father-accused-of-killing-hamilton-co-sheriffs-deputy-what-we-know/83443948007/.

could, the Court can disregard the factual allegations supporting the now-dismissed public nuisance claims for Ohio. But if those vestigial references need to be removed, leave to amend to do so should be freely granted.

Defendants demand—without basis—that the Court bar the GE Plaintiffs from amending their pleadings to alter any contested language following the dismissal of their common law public nuisance claims. *See* Mot. at 11–13. Defendants argue that the disclaimer of non-economic damages in the negligence claims has no impact on OPLA abrogation *and* that the same disclaimer would render any leave to amend to add an OPLA claim futile. *Id.* Defendants argument presupposes a bizarre bardo, a space where claims can be both abrogated under OPLA because they could have been pled as an OPLA claim, and simultaneously not cognizable under OPLA because they were not pled as an OPLA claim. The Court should reject Defendants' paradoxical position. In the minority of cases where courts have found dismissal of a non-OPLA claim is proper, such dismissal is typically granted without prejudice to afford the plaintiff the opportunity to replead. *See Mitchell v. Proctor & Gamble*, No. 2:09-CV-426, 2010 WL 728222, *3–5 (S.D. Ohio Mar. 1, 2010). This Court should do the same if it concludes OPLA abrogates the GE Plaintiffs' negligence claims.

## IV.    CONCLUSION

Despite putting the same claims at issue before the Ninth Circuit, with the same arguments, through their interlocutory appeal, Defendants now improperly seek an order from this Court regarding those claims. The Motion should be denied, without prejudice to re-urge it if the Ninth Circuit's forthcoming order does not foreclose such relief.

Even if the Court were to reach the merits, the negligence claims are not "product liability claims," as defined by OPLA. They are not OPLA claims under the first paragraph, as they do not seek non-economic "compensatory damages." Ohio Rev. Code § 2307.71(A)(13). They are not OPLA claims under the second paragraph, as they are not public nuisance claims or predicated on an invasion of a right common

-13-

Case No. 8:22-ML-03052-JVS-(KESx)                                    GE PLTFS.' OPP. TO DEFS.' 12(C) MOT.

to the public. The OPLA abrogation inquiry should stop there, as the Ohio State Supreme Court's recent ruling counseled.

DATED this 19th day of May 2025.

Respectfully submitted,

KELLER ROHRBACK L.L.P.

By */s/ Gretchen Freeman Cappio*
Gretchen Freeman Cappio (*pro hac vice*)
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Phone: (206) 623-1900
Fax: (206) 623-3384
gcappio@kellerrohrback.com

*Chair of the Governmental Entities Committee and Attorney for City of Cleveland, Cincinnati, Lorain, and Parma, Ohio*

ALLEN STOVALL NEUMAN & ASHTON LLP

By */s/ Rick L. Ashton*
Rick L. Ashton (*pro hac vice*)
Ohio Supreme Court No. 0077768
10 West Broad Street, Suite 2400
Columbus, OH 43215
Phone:  (614) 221-8500
Fax: (614) 221-5988
ashton@asnalaw.com

*Member of the Governmental Entities Committee and Attorney for City of Columbus, Ohio*

-14-

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel of record for Governmental Entities Plaintiffs certifies that this brief contains 4,371 words, which complies with L.R. 11-6.1.

DATED this 19th day of May 2025.

KELLER ROHRBACK L.L.P.

By */s/ Gretchen Freeman Cappio*
Gretchen Freeman Cappio (*pro hac vice*)
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Phone: (206) 623-1900
Fax: (206) 623-3384
gcappio@kellerrohrback.com

*Chair of the Governmental Entities Committee*

Case No. 8:22-ML-03052-JVS-(KESx)                        GE PLTFS.' OPP. TO DEFS.' 12(C) MOT.

1

## **CERTIFICATE OF SERVICE**

I certify that on May 19, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

KELLER ROHRBACK L.L.P.


By */s/ Gretchen Freeman Cappio*
Gretchen Freeman Cappio (*pro hac vice*)
1201 Third Avenue, Suite 3400
Seattle, WA 98101
Phone: (206) 623-1900
Fax: (206) 623-3384
gcappio@kellerrohrback.com

*Chair of the Governmental Entities Committee*