# EXHIBIT A

1          **UNITED STATES DISTRICT COURT**

2     **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

3       **HONORABLE JAMES V. SELNA, U.S. DISTRICT JUDGE**

4

5

IN RE: KIA HYUNDAI VEHICLE          )    **Certified Transcript**
6  THEFT MARKETING, SALES              )
   PRACTICES, AND PRODUCTS             )    Case No.
7  LIABILITY LITIGATION                )    SAML-22-03052-JVS
   _____ )

8

9

10

11

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                  MOTION HEARING

16            TUESDAY, NOVEMBER 12, 2024

17                   3:27 P.M.

18            SANTA ANA, CALIFORNIA

19

20

21

22  _____

23          **DEBBIE HINO-SPAAN, CSR 7953, CRR**
            FEDERAL OFFICIAL COURT REPORTER
24          411 WEST 4TH STREET, ROOM 1-053
                SANTA ANA, CA 92701
25              dhinospaan@yahoo.com

**UNITED STATES DISTRICT COURT**

1                       **APPEARANCES OF COUNSEL:**

2

3     **FOR PLAINTIFFS:**

4             KELLER ROHRBACK LLP
              BY:  GRETCHEN F. CAPPIO, ATTORNEY AT LAW
5             1201 3rd Avenue
              Suite 3400
6             Seattle, Washington 98101
              206-623-1900
7             gcappio@kellerrohrback.com

8             KELLER ROHRBACK LLP
              BY:  RYAN P. McDEVITT, ESQ.
9             1201 3rd Avenue
              Suite 3400
10            Seattle, Washington 98101
              206-442-1563
11            rmcdevitt@kellerrohrback.com

12            KELLER ROHRBACK LLP
              BY:  PATRICK MARRIOTT, ESQ.
13            1201 Third Avenue, Suite 3400
              Seattle, WA 98101
14            206-623-1900
              pmarriott@kellerrohrback.com

15
              COZEN O'CONNOR
16            BY:  ELLIOTT R. FELDMAN, ESQ.
              1650 Market Street, Suite 2800
17            Philadelphia, PA 19103
              215-665-2071
18            efeldman@cozen.com

19            COZEN O'CONNOR
              BY:  MEGAN RAE PEITZKE, ATTORNEY AT LAW
20            601 South Figueroa Street
              Suite 3700
21            Los Angeles, California 90017
              213-892-7933
22            mpeitzke@cozen.com

23

24

25

**UNITED STATES DISTRICT COURT**

```
 1                    APPEARANCES OF COUNSEL
                           (Continued:)
 2

 3     FOR PLAINTIFFS:

 4             BENSON LEGAL APC
               BY:  SUSAN M. BENSON, ATTORNEY AT LAW
 5             8550 Balboa Boulevard
               Suite 290
 6             Northridge, California 91325
               818-708-1250
 7             sbenson@bensonlegal.net

 8             GROTEFELD HOFFMANN LLP
               BY:  WILLIAM J. HOFFMANN, ESQ.
 9             407 South Third Street
               Suite 200
10             Geneva, Illinois 60134
               312-551-0200
11             bhoffmann@ghlaw-llp.com

12             LAW OFFICES OF ROBERT A. STUTMAN, P.C.
               BY:  TIMOTHY EDWARD CARY, ESQ.
13             391 North Main Street
               Suite 108
14             Corona, California 92879
               714-235-3062
15             caryt@stutmanlaw.com

16

17     FOR DEFENDANTS:

18
               JENNER & BLOCK LLP
19             BY:  PETER J. BRENNAN, ESQ.
               353 North Clark Street
20             Chicago, Illinois 60654
               312-222-9350
21             pbrennan@jenner.com

22             JENNER & BLOCK LLP
               BY:  JENNA L. CONWISAR, ATTORNEY AT LAW
23             515 South Flower Street, Suite 3300
               Los Angeles, CA 90071
24             213-239-5100
               JConwisar@jenner.com

25
```

**UNITED STATES DISTRICT COURT**

1        APPEARANCES OF COUNSEL
              (Continued:)

2

3   FOR DEFENDANTS:

4           CALLAHAN & BLAINE APLC
            BY:  EDWARD SUSOLIK, ESQ.
5           3 Hutton Centre Drive
            9th Floor
6           Santa Ana, California 92707
            714-241-4444
7           es@callahan-law.com

8           QUINN EMANUEL URQUHART & SULLIVAN LLP
            BY:  JUSTIN C. GRIFFIN, ESQ.
9           865 South Figueroa Street
            10th Floor
10          Los Angeles, California 90017
            213-443-3000
11          justingriffin@quinnemanuel.com

12          QUINN EMANUEL UQUHART & SULLIVAN LLP
            BY:  STEVEN G. MADISON, ESQ.
13          865 South Figueroa Street
            10th Floor
14          Los Angeles, California 90017-2543
            213-443-3150
15          stevemadison@quinnemanuel.com

16

17

    ALSO PRESENT:

18

            HANS HERB, Berger Kahn
19          DELANEY GOLD-DIAMOND, Quinn Emanuel Uquhart &
            Sullivan

20

21

22

23

24

25

UNITED STATES DISTRICT COURT

|   |   |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA; TUESDAY, NOVEMBER 12, 2024** |
| 2 | **3:27 P.M.** |
| 3 | **- - -** |
| 4 |   |
| 03:27PM 5 | THE COURTROOM DEPUTY:  Calling Matter 2, |
| 6 | SAML-22-3052, In re: Kia Hyundai Vehicle Theft litigation. |
| 7 | Counsel, please state your appearances for the |
| 8 | record. |
| 9 | MS. CAPPIO:  Good afternoon, Your Honor.  Gretchen |
| 03:27PM 10 | Cappio of Keller Rohrback for the GE plaintiffs. |
| 11 | THE COURT:  Good afternoon. |
| 12 | MR. McDEVITT:  Ryan McDevitt, also of Keller |
| 13 | Rohrback, for the GE plaintiffs. |
| 14 | THE COURT:  Good afternoon. |
| 03:27PM 15 | MR. FELDMAN:  Hi, Judge.  Elliott Feldman from Cozen |
| 16 | O'Connor for the subrogation plaintiffs. |
| 17 | THE COURT:  Good afternoon. |
| 18 | MS. BENSON:  Good afternoon.  Susan Benson for the |
| 19 | subrogation plaintiffs. |
| 03:28PM 20 | THE COURT:  Good afternoon. |
| 21 | MS. PEITZKE:  Good afternoon, Your Honor.  Megan |
| 22 | Peitzke of Cozen O'Connor, also for various subrogation |
| 23 | plaintiffs. |
| 24 | THE COURT:  Good afternoon. |
| 03:28PM 25 | MR. MARRIOTT:  Good afternoon, Your Honor.  Patrick |

```
 1    Marriott, also of Keller Rohrback, for the governmental entity
 2    plaintiffs.
 3              MR. HOFFMAN:  Good afternoon, Your Honor.  Bill
 4    Hoffman on behalf of the subrogation plaintiffs.
 5              THE COURT:  Good afternoon.
 6              MR. HERB:  Good afternoon, Your Honor.  Hans Herb
 7    from Berger Kahn for the subrogation plaintiffs.
 8              MR. CARY:  Good afternoon, Your Honor.  Tim Cary,
 9    also for the subrogation plaintiffs.
10              THE COURT:  Okay.  Good afternoon.
11              MR. MADISON:  Steven Madison of Quinn Emanuel on
12    behalf of HMA and KA.  With me is my partner, Justin Griffin,
13    who's been here before, Your Honor.  And also Delaney
14    Gold-Diamond, my colleague, who's also been before Your Honor
15    before.
16              MR. SUSOLIK:  Good afternoon, Your Honor.  Edward
17    Susolik of Callahan & Blaine on behalf of the defendants in the
18    subrogation action.
19              THE COURT:  Good afternoon.
20              MR. BRENNAN:  Good afternoon, Your Honor.  Peter
21    Brennan from Jenner & Block, also on behalf of the subrogation
22    defendants, along with my colleague, Jenna Conwisar.
23              THE COURT:  Good afternoon.
24              I want to begin by discussing the governmental
25    entity cases.  One of the main issues for discussion today is
```

```
 1    bellwether cases.  I'm of two minds.  I think --
 2    notwithstanding having considered all the briefing that
 3    bellwethers 1, 2, 3, could be very useful notwithstanding the
 4    fact that there will be major differences in the factual
 5    situations with each entity.  So be it, I still think we'll
 6    learn something.
 7            However, I don't think this is the right time to
 8    designate bellwether.  I think that the governmental entities
 9    put forward a very viable process to select bellwethers.  It
10    could be tweaked a little bit, get some input from the
11    defendants.
12            But it seems to me before we can do that in an
13    intelligent manner, we need to get the Phase 1 discovery
14    concluded.  I read the brief you put in this morning, I guess,
15    Ms. Cappio.  How do we close the gap and get the discovery out
16    there?
17            MS. CAPPIO:  Well, Your Honor, we're working very
18    hard.  This is Gretchen Cappio of Keller Rohrback for the
19    governmental entity plaintiffs.
20            First of all, we're very heartened to hear that
21    you're inclined to use the bellwether process.  We put a lot of
22    thought into it and think it just makes imminent sense here
23    and, frankly, can't think of another way to manage this case in
24    keeping with Rule 1.
25            As you say, the question turns to timing.  And, as
```

03:29PM (line 5)
03:29PM (line 10)
03:30PM (line 15)
03:30PM (line 20)
03:30PM (line 25)

```
 1    you know, in our brief, we put forward a more advanced

 2    selection process.  I'd be happy to share with Your Honor the

 3    reason why we think we could do it sooner.

 4            Bluntly, it comes down to the fact that in

 5    practically no other MDL that we've ever found, and indeed no

 6    other case that we've found, have the parties been doing this

 7    much Phase 1 litigation, all of them.  And I hope that in my

 8    declaration that we file today -- and that's at Docket 657 --

 9    it was very clear -- and if Your Honor needs a copy of that --

10            THE COURT:  No, I've got it.

11            MS. CAPPIO:  Okay.  Great.

12            THE COURT:  Hot off the press.

13            MS. CAPPIO:  You're fast, Your Honor, especially in

14    trial.

15            So, yes, we just wanted to make it very easy for

16    Your Honor to see that we're being extremely diligent and

17    working very hard to do all the discovery that Your Honor has

18    ordered in a tight time frame and to get both sides and the

19    Court any information they would need.  Obviously, we've gotten

20    the fact sheets under our belts and now we're at the --

21            THE COURT:  But are the fact sheets resolved?  I

22    understand that Kia and Hyundai see a number of deficiencies in

23    the fact sheets.

24            MS. CAPPIO:  Well, Your Honor, you will not be

25    surprised to hear that we see that differently, and I'd be
```

03:30PM 5
03:31PM 10
03:31PM 15
03:31PM 20
03:32PM 25

```
 1   happy to address it.  But, in short, the motion to compel that
 2   was filed, I believe it was last Friday, is not ripe.  We told
 3   defendants that we would get them a letter last week, which we
 4   got them.  They actually filed it without us even responding
 5   with our omnibus response.  And to the extent that there have
 6   been delays, I hope that my declaration makes it imminently
 7   clear that plaintiffs are not the source of those delays.
 8            We are facing a lot of headwinds, and basically --
 9   if Your Honor doesn't mind if I use my hands for a second,
10   we --
11            THE COURT:  No.
12            MS. CAPPIO:  -- we have a time frame -- right? -- of
13   Phase 1 discovery.  And what defendants have done is, for
14   example, we met and conferred -- and, in fact, I have, if it
15   would be helpful, a timeline to show you.  Would that be okay
16   if I handed it up?  I have copies.
17            THE COURT:  Sure.
18            Well, I really don't want to dwell on the details of
19   how we got to where we are today.  I want to dwell on how we
20   get this resolved.
21            MS. CAPPIO:  So do we --
22            THE COURT:  I think we need the intervention of the
23   special master sooner rather than later.
24            MS. CAPPIO:  Absolutely.  And, in fact, we reached
25   out to her, you probably saw --
```

```
 1            THE COURT:  Right.  You said you put a call in.
 2            MS. CAPPIO:  -- last evening, because we have
 3   several issues.  Frankly, this motion to compel, for example,
 4   we haven't agreed on the page limits, we haven't agreed that
 5   it's ripe, we haven't agreed that it's properly before her.
 6            What I can tell Your Honor is that we've done the
 7   fact sheets and they are nitpicking.  In addition, I just want
 8   to make a record, Your Honor, that --
 9            THE COURT:  That's fine.
10            MS. CAPPIO:  If I may, that the RFPs, the Requests
11   for Production, we have so far produced 1,560 documents.  For
12   the interrogatories, we have -- or excuse me, I might have
13   those backwards.  The interrogatories, 123,000 pages.  I think
14   I just flipped those.  So that was RFPs and then rogs.
15            And keep in mind, Your Honor, in terms of the timing
16   issue as to bellwethers, usually in MDLs, bellwethers are done
17   with just the plaintiff fact sheet process.  And here, we're
18   dealing with governmental entities, obviously, where a bunch of
19   their information is publicly available online.  I know that
20   because I was helping write the complaints and I was relying,
21   without any discovery, on developing what the facts were.
22            So a whole lot of that information -- if you want to
23   know how big a governmental entity is, what their theft numbers
24   are, all of that stuff is laid out in the plaintiff fact
25   sheets.  So it's not like the plaintiffs in something like
```

03:33PM 5
03:34PM 10
03:34PM 15
03:34PM 20
03:35PM 25

```
           1    individual personal injury cases where you have treating

           2    doctors and that kind of thing.  It is -- the procedure that we

           3    have recommended is very similar to what happened in the Jewel

           4    litigation or in your Toyota unintended acceleration litigation

03:35PM    5    where there was not this full throttle discovery.

           6            So we're, respectfully, in favor of doing it sooner

           7    rather than later because we think the parties have a robust

           8    amount of information already, and it is just developing very

           9    rapidly.

03:35PM   10            I would also just like to make a record, Your Honor,

          11    of what's been going on with the 30(b)(6) depositions because

          12    that is in our timeline, and I think it's very important to

          13    just kind of go through what we've been facing as we've been

          14    jammed.  So if this is the timeline, the compressed activity

03:36PM   15    has all been happening right before now.

          16            First of all, the --

          17            THE COURT:  Well, a side comment.  That's why I

          18    should hold more status conferences from here on out, once a

          19    month, religiously.

03:36PM   20            MS. CAPPIO:  I'll be here religiously, Your Honor.

          21    We let this one go too long --

          22            THE COURT:  Yes.  My fault.

          23            MS. CAPPIO:  I would never be one to blame

          24    Your Honor, but I would just say there are a lot of issues

03:36PM   25    festering right now.
```

1          THE COURT:  Right.

2          MS. CAPPIO:  I read in their brief -- I don't even

3   recognize some of the accusations.  There is no information

4   vacuum.  The information is flowing as it should.  And, again,

03:36PM 5   to the extent that defendants argue otherwise, any delay is of

6   their making.  And I'd be happy to show Your Honor in this

7   timeline, but I'll trust Your Honor to take it back to chambers

8   and read it if you have questions.  We're happy to file it if

9   you'd like.

03:36PM 10          It's almost, like -- truly, the headwinds that our

11   clients are facing, it's almost like if you squeeze us, they'll

12   drop out or do badly at their depositions, they won't be

13   prepared.  And I'd like to just make a record of what's going

14   on with the 30(b)(6) depositions.

03:37PM 15          What do I mean when I say "squeeze"?  We have been

16   hard at work.  Last time we spoke, we were working on the

17   plaintiff fact sheets.  We got those out on September, I

18   believe it was 8th.  How did defendants delay it?  They held

19   back on giving us a deficiency letter for six weeks.  We met

03:37PM 20   and conferred.  We said, "Give us your topics in advance."

21          They did not do that.  We had no agenda for the meet

22   and confer.  They waited until -- I know the date by heart

23   because that was an interesting day in my email --

24   October 18th.  And we got hammered with a 63-page deficiency

03:37PM 25   letter all in one fell swoop.

1      It was open season the following day on written

2  discovery.  Rogs and RFPs could be served.  How did defendants

3  delay?  They waited 30 days to issue the RFPs and rogs.  Did

4  they incorporate the plaintiff fact sheet stuff?  No.  So they

03:38PM 5  just waited.

6      Most importantly, on the 30(b)(6)s -- I'd like to

7  drill down on that for a minute.  Again, these are governmental

8  entities.  It is hard to overstate how seriously they take

9  their responsibilities.  These are men and women who really

03:38PM 10  take their job seriously.  They are trying to testify on behalf

11  of their governmental entity and we're trying to prepare them.

12      We are trying to get a dep notice to this day,

13  Your Honor, that we can prepare a witness with, and depositions

14  are scheduled to start on Monday.  I kid you not.  It is

03:38PM 15  shocking.  I have never seen anything like this in my practice.

16  You have to prepare these witnesses.  To do that, you have to

17  have the topics nailed down.

18      Like I said, October 18th was a fateful day.  They

19  finally served the topics on a Friday night, and they noted the

03:38PM 20  deps to start five business days -- or, sorry, six business

21  days later.  Six business days later.  So we were scrambling on

22  a Friday night with clients on the East Coast and Midwest who

23  were closed.

24      There's a meet-and-confer requirement -- thank you

03:39PM 25  for make letting me make a record of this, Your Honor.

1          There is a meet-and-confer requirement under the

2     rule.  No dice.  They wouldn't agree to narrow it.  We went to

3     Judge Andler.  They agreed to reissue and narrow the topics

4     queueing to the CMO while we worked on dates, okay?  So now we

03:39PM 5     are scrambling to get dates from our clients and to narrow the

6     deposition topics to what's actually in the CMO, meaning

7     structural and foundational topics.

8          We still have live disputes about the topics.  We

9     are prepping our witnesses.  We are planning to produce them.

03:39PM 10    I want to underline that.  We are planning to produce witnesses

11    on Monday in Indianapolis, but we need a dep notice that we can

12    use.  These accusations that the witnesses won't sit is wrong.

13    Mr. McDevitt has a ticket.  But we need a conforming dep notice

14    with time to deal with it.

03:40PM 15         I'd like to also just paint a picture of where we

16    are right now with the 30(b)(6) notices because you mentioned

17    Judge Andler.  The notice that we just got, again, on Friday --

18    Friday we were in the middle of serving all our RFP responses

19    and interrogatory responses and our documents, and it has two

03:40PM 20    new topics.  I'm not going to belabor the topics.  We saw

21    that -- they accused us of not meeting and conferring.

22    Yesterday was a Federal holiday.  We could not meet and confer.

23    Our clients are closed.

24         Judge Andler, we said, "We need your time."  We

03:40PM 25    haven't yet heard from her.  We're sure we're going to hear

```
         1    from her soon, but we need to meet and confer on things like
         2    the topics and just logistics.  Like, how do we remotely
         3    participate for people who need to participate remotely?  I
         4    mean, just all kinds of things like that.  We would like a
03:41PM  5    chance to be able to do that, but everybody knew we were
         6    traveling today.
         7              And so we're here and we're willing to roll up our
         8    sleeves and call them in the morning.
         9              THE COURT:  Well, I think I have the picture.
03:41PM 10              I'd like to hear from Mr. Madison.
        11              MS. CAPPIO:  Thank you, Your Honor.
        12              THE COURT:  Let me say, I think things should move
        13    along, but I see no point in skipping the process that they're
        14    in, in the Local Rules.  Meet and confer.  It doesn't help
03:41PM 15    anybody to just lob in their motion or lob in a 63-page or
        16    however-many-page Complaint.  You folks need to talk.  You're
        17    reasonable people, and I believe you can come up with
        18    reasonable solutions -- or most of the reasonable solutions on
        19    your own.
03:41PM 20              The special master is there, but we're not going to
        21    circumvent the usual procedures, which are based on the
        22    concept, people meet, confer, and talk.
        23              MR. MADISON:  Yes, Your Honor.  And we have met and
        24    conferred ad nauseam about these issues.  And we're either too
03:42PM 25    late because we're accused of waiting.  We're not waiting.
```

1    We're trying to assimilate the questionnaires, which are

2    deficient.  We've met and conferred about that, and we've filed

3    that letter brief with Judge Andler so that she can decide the

4    matter.  And, obviously, we'll be bound by her decisions on

03:42PM  5    that.

6            We then had the second section of Phase 1 discovery,

7    which are the limited written discovery and document

8    production.  We don't want to take depositions until the

9    documents have been received.  And now we've noticed all 30, as

03:42PM 10    we told them all along we were going to do.

11            Your Honor ordered this phasing back in April, in

12    the case management order on April 16.  And now I hear

13    Ms. Cappio complaining that that CMO provides for too much

14    Phase 1 discovery.

03:43PM 15            We have our heads down, and we're trying to work our

16    way through those, but I certainly recall some colloquy with

17    Your Honor that the depositions is really where we can get the

18    information that we're entitled to to be able to advise and

19    propose to Your Honor what bellwethers should look like, if

03:43PM 20    appropriate.  That's all we're trying to do.

21            We have 29 plaintiffs left.  I'm sure you saw --

22            THE COURT:  Right.

23            MR. MADISON:  -- the very first GE plaintiff that we

24    actually confirmed a deposition for, dismissed their case

03:43PM 25    rather than come to the deposition and testify.  I suspect,

```
 1    Your Honor, that there will be more like that.  And we sit here
 2    today --
 3                THE COURT:  Well, I don't think we should structure
 4    the process in a way that drives out plaintiffs or that drives
03:43PM 5    out defendants, for that matter.
 6                MR. MADISON:  No question.  But we're entitled to
 7    the depositions that you ordered back in April, Your Honor.
 8    And what we finally did -- it truly is no good deed goes
 9    unpunished -- we finally said:  Rather than quibble about the
03:44PM 10    topics so that the clock runs out, let's just take Your Honor's
11    CMO, and we will -- we will be bound by what Your Honor
12    described, the discovery that we're entitled to in Phase 1 in
13    Your Honor's CMO.  And we repeat that again today.
14                If they prepare the witnesses on Your Honor's CMO --
03:44PM 15    it's Docket 370 -- and the portions that we are entitled --
16                THE COURT:  I don't think one or two paragraphs
17    serve for a detailed list of topics in a 30(b)(6) notice.
18                MR. MADISON:  We agree, Your Honor.  But we're
19    trying to be reasonable and just get the witnesses to come to a
03:44PM 20    deposition.  There are 17 plaintiffs that counsel won't give us
21    a date for, for the depositions.  And we've got a cutoff, as
22    you know, of Phase 1 of January 17.
23                So when we said, "Let's just use the CMO," we were
24    trying to compromise so that we can get the discovery that
03:45PM 25    Your Honor ordered.
```

1           THE COURT:  Well, I think this needs to go to

2   Judge Andler.

3           MR. MADISON:  Yes, Your Honor.

4           THE COURT:  You need to sit down, everybody gets

03:45PM 5   their hands dirty and gets into the facts, and get some

6   agreement on what you're going to do and when you're going to

7   do it.

8           MR. MADISON:  Yes.  And I would say, Your Honor,

9   that you can't sort of legislate every Q and A in a deposition.

03:45PM 10  There's a process under Your Honor's appointment order.

11  There's a process where the depositions can go forward.

12  Objections can be made.  Judge Andler is available to consult,

13  even during the depositions, provided that we, you know,

14  schedule that with her.

03:45PM 15          Some of it just needs to begin to happen.  And we're

16  grateful that we actually are starting on Monday, as counsel

17  indicated.  And once we get all of the plaintiffs' depos under

18  our belt, we'll be able to come back and advise Your Honor

19  about the bellwethers.

03:46PM 20          THE COURT:  I think that leads me to the magistrate

21  judge's recommendation.  I'm prepared to adopt that virtually

22  wholesale.  It seems to me she's quite wisely pointed out a

23  number of areas where you don't have to turn over every rock to

24  get to the essence of the subject matter.

03:46PM 25          Only thing that I would add, and I'm not sure it's

UNITED STATES DISTRICT COURT

```
 1    clear from the request, seems to me that the manual or the
 2    claims handling manual for the specific --
 3              MR. MADISON:  If you're on the subrogation track,
 4    Your Honor, then I would ask counsel for subrogation.  We're
 5    just here on the GE track.
 6              THE COURT:  Okay.  We'll get back to that, then.
 7              MR. MADISON:  May I raise two other items while I
 8    have the lectern, Your Honor?
 9              THE COURT:  Sure.
10              MR. MADISON:  Thank you.
11              I want to make sure you received the agenda that we
12    lodged.
13              THE COURT:  I did.
14              MR. MADISON:  Thank you, Your Honor.
15              I mentioned Fort Wayne, the city that chose to
16    dismiss their action.  We have a stipulation of dismissal with
17    Your Honor and would appreciate having that order signed in due
18    course.  I know you've been busy with the trial and all.
19              We also both filed a proposed statement or --
20    statement related to the proposed order from the August 29
21    status conference that we had.  And, regrettably, that never
22    happened.  It apparently slipped through the cracks.  And there
23    are some open issues about, for example, the parent company
24    discovery.
25              We have filed a motion with Judge Andler, asking her
```

1    to hear that.  We have set dates for those parent companies in

2    January.  And if we do come back in a month, I expect we'll be

3    able to advise Your Honor about where Judge Andler is on the

4    various issues that we've raised with the parent company depos.

03:48PM 5        Those were the two things that I wanted to raise,

6    Your Honor.

7        THE COURT:  Well, I'm not sure we can accomplish any

8    more without getting Judge Andler involved.

9        MR. MADISON:  We agree, Your Honor.

03:48PM 10       THE COURT:  Let's turn to the subrogation.

11       MR. MADISON:  Yes, Your Honor.

12       MR. McDEVITT:  Can I be heard just very briefly on

13   that last point?  I'll keep it very short.

14       THE COURT:  Very short.  Go to the lectern, please.

03:48PM 15       MR. McDEVITT:  Ryan McDevitt for the GE plaintiffs.

16       On the foreign discovery issue, we viewed

17   Your Honor's guidance at the last status conference as very

18   clear.  And Judge Andler had indicated that because the issue

19   is before you, she wasn't inclined to hear motion practice on

03:48PM 20   it.  So we're a bit at a loss there.  We feel like defendants

21   are relitigating clear guidance from you --

22       THE COURT:  I'm prepared to put it in an order that

23   you can take discovery of -- limited discovery of the parents

24   of each of these cases.  I don't believe that the parties'

03:49PM 25   stipulation bars me from ordering to the -- just a minute --

         1   bars me from ordering to the contrary.

         2          Indeed, I could order the -- what was viewed as the

         3   legitimate receiving party to try and -- just goes to them,

         4   order them to share it with the people in the other track.

03:49PM  5          MR. McDEVITT:  So in the -- we've suggested language

         6   in the joint statement about the proposed order that's before

         7   you.  I think it would be very helpful to have a short and

         8   clear order about the phasing of discovery as it pertains to

         9   the foreign plaintiffs.

03:49PM 10          THE COURT:  I'll get it out this week.

        11          MR. McDEVITT:  Thank you.

        12          MR. MADISON:  May I, Your Honor?

        13          THE COURT:  Well, I understand that you are quite

        14   adamant that you want to limit things to the stipulation.  I'm

03:49PM 15   quite adamant, for the reasons I put on the record and which

        16   were quoted back to me in all these briefs.  But if it's out

        17   there for one, it's all there for all.

        18          MR. MADISON:  We understand that.

        19          THE COURT:  If you want to take a writ, it isn't

03:50PM 20   going to offend me.  But it seems to me, once something's out

        21   there on common issues, it ought to be for everyone.

        22          MR. MADISON:  So this is part of the problem of

        23   doing this on the fly instead of doing it per Your Honor's

        24   appointment order with briefing and time with Judge Andler,

03:50PM 25   because we're talking about several different issues now.

1          The sharing of document discovery is one issue.

2          THE COURT:  Right.

3          MR. MADISON:  The issue that is the principal focus

4    of our motion for protective order is the one deposition of

03:50PM 5    each of the two parent companies that were agreed to outside

6    the Hague Convention as part of the dismissal of the parent

7    companies.  And that is a complicated issue which involves six

8    or eight different facets that we have put into our motion.

9          We filed it with Judge Andler.  She did not --

03:51PM 10   respectfully, I would correct counsel.  She never said she

11   wouldn't hear a motion.  She couldn't do that, frankly, under

12   those rules that Your Honor cited to me.  We have a right to

13   bring a motion for a protective order.

14         THE COURT:  Right.

03:51PM 15         MR. MADISON:  But what counsel told her is that

16   Your Honor was going to take care of these issues --

17         THE COURT:  No.

18         MR. MADISON:  -- and respectfully, we want you to

19   have a record from Judge Andler and not decide these things on

03:51PM 20   the fly.

21         THE COURT:  I think my role vis-à-vis all of you and

22   the special master is to point the direction, with some

23   specificity, and have you go down that direction.

24         MR. MADISON:  Yes, Your Honor.  Yes.

03:51PM 25         THE COURT:  With respect to foreign discovery, I

```
 1    think I've done that.
 2             MR. MADISON:  With regard to documents, we hear you.
 3    With regard to the limited agreement under a stipulation to
 4    give one deposition, when counsel now wants two, three, four
 5    outside the Hague Convention, that is jurisdictional.  Those
 6    foreign companies are nonparties.  They haven't agreed to that.
 7             And, again, that's all the subject of our motion
 8    before Judge Andler.  They'll have an opportunity to oppose,
 9    and we'll create a record, and I'm sure we'll come back with a
10    fulsome report and recommendation.  But we just were not able
11    to do those issues on the fly.  And under the employment order,
12    those are squarely within the referral to Judge Andler and then
13    to come to Your Honor for a record that's fully developed.
14             THE COURT:  Ms. Cappio?
15             MS. CAPPIO:  Your Honor, you know, I'm a mom,
16    and sometimes --
17             THE COURT:  You're what?
18             MS. CAPPIO:  I'm a mother.  And sometimes when my
19    kids don't like the answer that I give them, they go to their
20    father.  And that is literally what is going on here.
21             Your Honor has ruled, I think it's two times now,
22    extremely clearly on the record that the foreign discovery is
23    going forward.  And they are saying we're mischaracterizing
24    that Judge Andler declined to have a motion before her.
25             I'm reading from my email, an email from Alison
```

**UNITED STATES DISTRICT COURT**

Sprague, who is the senior case manager for Judge Andler.  And

she said, "Good morning, Counsel" -- this is October 30th.

"Good morning, Counsel" -- and, again, defendants have asked

her to take up this issue that they're trying to take up with

03:53PM  her now:

"Good morning, Counsel.  The referee defers

on setting a briefing schedule in light of the

representation that the issue is on the agenda for

discussion directly with Judge Selna."

03:53PM  THE COURT:  I didn't have it on the agenda.  Matter

properly goes to the magistrate judge.  I'll get an order out

by the end of the week to clarify this.

MS. CAPPIO:  Your Honor, one more question, and it

has to do with Indianapolis, because it's a matter of some

03:53PM  urgency.  We have a deposition scheduled for Monday morning,

and we do not yet know if Judge Andler has the ability to meet

with us beforehand.

Do you have instruction for how you would like us to

handle the fact that there is still disputed topics if we are

03:53PM  not -- I want to assume that we're all going to be able to

agree on them, but if we are not, because we just got this late

on Friday, I would love some direction from Your Honor on how

you would like that handled.

THE COURT:  Take it to Judge Andler as a priority

03:54PM  item number one.  I doubt it's going to get resolved by Monday,

```
 1    but it seems to me if you come up with the first 30(b)(6)

 2    notice, either agreed or as determined after presentation to

 3    the Court or Judge Andler, that will simplify things down the

 4    line.

 5            So seems to me it makes a lot of sense to hammer out

 6    the first one.  So I will give her a call and ask her to give

 7    priority to that issue.

 8            MS. CAPPIO:  Thank you so much, Your Honor.  That

 9    will be very helpful.

10            THE COURT:  Okay.  Mr. Susolik?

11            MR. SUSOLIK:  Yes, thank you, Your Honor.  On my

12    track --

13            THE COURT:  But wait.  Anything further we need to

14    take up today on the government entities track?

15            MS. CAPPIO:  Your Honor, we would just ask on the

16    bellwether issue, should Your Honor require any additional

17    briefing -- we heard Your Honor, that you're inclined to do it,

18    that you had some timing questions.  If you would like input

19    from us --

20            THE COURT:  I think your briefs on the bellwether

21    issue quite adequately lay out your views as to why it does or

22    does not make sense.  I'm not going to ask for further briefing

23    on that.

24            MS. CAPPIO:  Great.  With that, I don't think

25    there's anything further right now.  We look forward to seeing
```

```
 1   you in a month and not letting these issues kind of fester in
 2   the meantime.  We really appreciate that.
 3            THE COURT:  Okay.
 4            MR. MADISON:  Your Honor, my only caveat is we just
 5   don't have the discovery.  We don't have the depositions.  At
 6   that time, we may want to come back to Your Honor, perhaps at
 7   this next status conference, and ask leave to file a brief
 8   based on the information that Ms. Cappio has but we don't.
 9            THE COURT:  Well, in the first instance, it should
10   go to the special master.
11            MR. MADISON:  Yes, of course.  Thank you.
12            THE COURT:  Okay.
13            Mr. Susolik.
14            MR. SUSOLIK:  Yes.  Thank you, Your Honor.
15            On the subrogation track, we did go to the special
16   master --
17            THE COURT:  Right.
18            MR. SUSOLIK:  -- and we have a very detailed 17-page
19   report and recommendation dated September 14th from the special
20   master -- or I'm sorry, September 5th.  There was a very short
21   two-page objection filed by the plaintiffs, but not on the
22   substance.  It was purely on the procedure, and they wanted
23   clarification for what they called at page 2 of their
24   objection, "This is likely a drafting oversight rather than a
25   considered ruling," and that is, in their interpretation of the
```

         1    report recommendations, they believe that Judge Andler did not

         2    specifically limit her report and recommendations to just the

         3    ten first named plaintiffs, and we disagree.  She specifically

         4    said at --

03:56PM  5           THE COURT:  You've worked out the first of the first

         6    for ten and you're working on some more, but there's

         7    still another 150.

         8           MR. SUSOLIK:  Well, she specifically said it's

         9    limited to the first ten:

03:57PM 10           "As acknowledged by the parties following the

        11       order on the motion to sever, only ten claims are

        12       proceeding at this time."

        13           So her report and recommendation, by her own terms,

        14    is limited to the first ten claims.

03:57PM 15           THE COURT:  How many suits do we have in the

        16    subrogation side?

        17           MR. FELDMAN:  Ten, Your Honor.

        18           THE COURT:  Ten.  Okay.

        19           It sounds like you've got the first of the first by

03:57PM 20    agreement, and that issue is resolved.

        21           MR. SUSOLIK:  Yeah.  The only thing I'm asking for

        22    is if Your Honor would just sign the report and

        23    recommendations --

        24           THE COURT:  Yes.

03:57PM 25           MR. SUSOLIK:  -- as written, and everything will be

```
 1   great on our side.
 2           THE COURT:  I'm going to make one modification I
 3   suggested, but -- well, it seems to me, whether it's expressly
 4   there or not, the claims manual and the claims file with each
 5   of these first of the first ought to be produced.  That's
 6   fairly basic.
 7           MR. SUSOLIK:  Yes, that's correct, Your Honor.
 8           THE COURT:  Okay.
 9           MR. SUSOLIK:  Very good.  Thank you very much.
10           THE COURT:  Mr. Feldman?
11           MR. FELDMAN:  Your Honor, Elliott Feldman -- I guess
12   I should stand here (indicating).  Elliott Feldman for the
13   subrogation plaintiffs.
14           We've already produced the ten claims files for
15   those ten claims.  We've produced the policies for those ten
16   claims.  The limited underwriting information, which
17   Judge Andler indicated in her recommendation would be produced,
18   relates to the presence or absence of the mobilizers in those
19   ten vehicles, and we think that's the appropriate limit.  She
20   denied the other request.
21           THE COURT:  Okay.
22           MR. FELDMAN:  All right.
23           THE COURT:  All right.
24           MR. FELDMAN:  Can I take a moment, Your Honor?
25           THE COURT:  Sure.
```

03:57PM (line 5)
03:57PM (line 10)
03:58PM (line 15)
03:58PM (line 20)
03:58PM (line 25)

```
 1              MR. FELDMAN:  I know it's late.  Just in terms --

 2              THE COURT:  It's only 4:00 o'clock.

 3              MR. FELDMAN:  Well, you've had a long day.

 4              In March of this year -- so we have a discovery

 5  cutoff now, August 15, Your Honor, and we have had numerous

 6  meet and confers and we will continue that process.  We've had

 7  status conferences before Judge Andler.  We've had oral

 8  argument before Judge Andler.  There are remaining issues with

 9  respect to the defendants' production of documents for which

10  they have stated that they are searching for more documents.

11  But nothing has been produced in months, and there aren't

12  ongoing issues with respect to their Answers to Interrogatories

13  and their privilege log.  So we're trying to work out all of

14  these issues as Your Honor suggested should be the case.

15              Meanwhile, we have to -- it was interesting to hear

16  Mr. Madison state that he needs to get these depositions

17  confirmed and scheduled and in the book.

18              So in March of this year, the subrogation claimants

19  had noticed depositions of eight witnesses identified by the

20  defendants in their disclosures and responses.

21              When the dates for those depositions arrived, we

22  were informed by defense counsel that they would not be

23  producing any witnesses.  No reason was given.  We then

24  proceeded to have conferences before Judge Andler.  She said,

25  "Why don't you do this:  Set aside dates for depositions, and
```

```
 1    then you can fill in the names of the witnesses."
 2              We said, "Fine."
 3              So we arranged for a meet and confer with defense
 4    counsel, and they refused to work with us to set aside a single
 5    date.  They would not engage themselves in the process.
 6              THE COURT:  You can be seated, Mr. Brennan.
 7              MR. FELDMAN:  We reported this to Judge Andler, who
 8    said, "Mr. Feldman, when I've encountered this in the past,
 9    what I've done -- what I suggest is notice your depositions.
10    And if the witnesses are not produced, you'll seek the relief
11    that you need."
12              So we have noticed in excess of 20 depositions,
13    giving the defendants more than 60 days' advance notice, which
14    is what was required under stipulation, beginning in
15    mid-January and continuing into April, two or three witnesses
16    per week for most weeks during that period of time.
17              We have had no response whatsoever from the
18    defendants, radio silence, and I am concerned that given the
19    rapidly approaching discovery cutoff date and the defendants'
20    flat refusal to have produced witnesses when depositions
21    previously were noticed and to work with us in coordinating the
22    schedule, that January will come and go and we will not have
23    any witnesses, and we will be back before Your Honor or back
24    before Judge Andler, except months behind schedule.
25              We learned today, Your Honor, that the governmental
```

UNITED STATES DISTRICT COURT

entity plaintiffs and defense counsel have agreed to two

depositions taking place in Seoul, Korea, for the two foreign

defendants.  So on January 15th and January 17th.

We -- as Your Honor stated numerous times from the

bench and earlier today, the subrogation plaintiffs intend to

participate fully in those depositions and in all other

discovery proceedings in this MDL.

The defendants, again, have taken the position that

because we did not agree to their stipulation, Your Honor knows

that argument.  So we're at a point where I think, first of

all, all parties need to coordinate all discovery with all

parties.  That is not happening now.  And all of these

depositions need to be coordinated so that all parties can

participate.

At the same time, while we're, again, working with

defense counsel to secure additional documents, we are at an

interesting juncture.  Many of the defendants' answers and

responses, when it came to providing information or documents

relating to their design and engineering of their vehicles,

took the position that -- a kind of deaf, dumb, and blind

position, "We sell cars.  We don't design them.  We don't make

them.  We don't have access to this information."

The defendants are saying, in addition, to the

extent design and engineering information is produced by the

Korean parents, we will not give that.  We will not share that

1    with the subrogation plaintiffs.

2         We then -- so neither of those sources of

3    information right now, per the defendants, are being made

4    available to us.  The U.S. defendants say they don't have the

04:03PM 5    information or don't have access to it.  I'm not sure I buy

6    that, but that's what they're saying.  And they are saying that

7    to the extent their Korean parents produce this information, we

8    are not going to get it.

9         In addition, we served the subpoena upon HATCI.

04:04PM 10   HATCI is the sister company of the defendants Hyundai and Kia

11   Technical Center, and they are identified by the defendants as

12   being the Hyundai and Kia entity that is responsible for design

13   engineering and compliance testing of the cars that the U.S.

14   defendants sell in the U.S.

04:04PM 15        We received HATCI's response to our subpoena a

16   couple of days ago.  They are represented by the same defense

17   counsel who are here in court representing Kia and Hyundai.

18   They objected to every single request.  There were no

19   statements that, "We are searching for these documents.  We

04:04PM 20   will produce them."

21        Every single request was objected to.  Nothing was

22   produced.  So we're basically at a point now where we're going

23   to have to file motions to compel because the defendants seem

24   to be taking the position that we're not entitled to anything

04:05PM 25   relating to the design or engineering of their cars.

|            |    |                                                                          |
|------------|----|--------------------------------------------------------------------------|
|            | 1  | So I say that to let Your Honor know that we, you                        |
|            | 2  | know, need to go forward with the depositions beginning in               |
|            | 3  | January, but we also need the underlying design and engineering          |
|            | 4  | information that has not yet been produced.  Part of this,               |
| 04:05PM    | 5  | again, relates to foreign discovery, where we think we have an           |
|            | 6  | absolute right to participate fully, and part of it just                 |
|            | 7  | relates to the refusal on the part of the U.S. defendants to             |
|            | 8  | provide that information to us.                                          |
|            | 9  | The other areas, Your Honor, the first claim issues,                    |
| 04:05PM    | 10 | I think, all have been resolved.  There are ongoing discussions          |
|            | 11 | with respect to how we should drop or add claims to the claim            |
|            | 12 | schedules that we produced.                                             |
|            | 13 | So Your Honor had entered the scheduling order and                      |
|            | 14 | had simply said if the plaintiffs -- relating to                        |
| 04:06PM    | 15 | adding additional subrogation plaintiffs.  If the plaintiffs             |
|            | 16 | are going to add plaintiffs, they simply have to provide notice          |
|            | 17 | to all parties.                                                          |
|            | 18 | And we suggest something like that, Your Honor, is                      |
|            | 19 | the simplest, most efficient, way to address the claims                  |
| 04:06PM    | 20 | schedules as well.                                                      |
|            | 21 | To give you an idea of the magnitude of the                             |
|            | 22 | continued theft, one of the companies that I represent has              |
|            | 23 | updated their claim schedule to me, which we are reviewing now,          |
|            | 24 | and there were $50 million in additional payments over the last         |
| 04:06PM    | 25 | several months since the previous claim schedule was updated.           |

1  So this epidemic of stolen vehicles is not going down.  It's

2  increasing.

3          So what we are suggesting, Your Honor, is an order

4  providing simply that plaintiffs can update their claim

04:07PM 5  schedules by providing notice to defendants.  And to the extent

6  we are dropping claims because they are inapplicable, same

7  process.  We simply notice the defendants that these claims are

8  updated either with added claims or claims that have been

9  dropped.

04:07PM 10          THE COURT:  I mean, how does that differ from what

11  the subrogation plaintiffs have been doing all along?

12          MR. FELDMAN:  It's no different.  It's no different.

13          THE COURT:  I mean, suddenly it appears on the

14  docket another 50 represented by the same counsel in the same

04:07PM 15  lawsuit.  I mean, they're stayed, obviously.

16          MR. FELDMAN:  Yeah, exactly.  All of these claims

17  fare stayed, other than Ted Lee claims.  It's just that we want

18  a very simple process similar to the process Your Honor put

19  into effect for adding new plaintiffs for updating the claim

04:08PM 20  schedules with additions or subtractions.  We think that's the

21  simplest approach as opposed to some of the suggestions that we

22  heard from defense counsel.

23          Last point, Judge, is this:  We had submitted a

24  scheduling order with additional discovery and motion cutoff

04:08PM 25  dates following August 15, and Your Honor said you would take

1    that up at the next conference.

2         Right now, we have an August 15 discovery cutoff,

3    but we have no dates after that, and we think it is important

4    to put those dates in place so the parties understand what the

04:08PM 5    post-fact discovery cutoff date is for expert depositions for

6    dispositive motions, things of that nature.

7         I had suggested, Your Honor, we simply use the same

8    intervals, the same periods of time, that we had from the

9    original order, which cutoff discovery, I think, February 2 or

04:09PM 10    February 3, and simply tack that onto the August 15th date.

11         THE COURT:  All right.

12         MR. FELDMAN:  The last point is discovery -- the

13    subrogation leadership.  We submitted recommendations for that.

14         THE COURT:  Okay.  On that, with respect to

04:09PM 15    leadership on all, it's been about a year since we reorganized

16    the docket, and I will send out an order.  It is my practice to

17    make people put an application for reappointment and tell me

18    what you've been doing, how many hours has your firm put in,

19    how much time have you personally spent, so I get a real idea

04:09PM 20    of who's doing what.

21         The response to the request for application, you can

22    request to seal any portion of it you want.  It's really not

23    for the benefit of the defendants.  It's for the benefit of the

24    Court.

04:09PM 25         MR. FELDMAN:  So you want us to submit that now

UNITED STATES DISTRICT COURT

```
 1   from --
 2              THE COURT:  Well, let me get an order out, and I'll
 3   tell you in detail what I want.  I went back to the orders, and
 4   I couldn't find anywhere in any of the case management orders
 5   where I indicated that if anyone intended at the end of the day
 6   to seek attorneys' fees, that person was going to have to put
 7   in periodic billing statements.
 8              That's exactly what I did in Toyota, and they were
 9   filed in camera.  It gave me, really, on a monthly basis, some
10   idea of who's doing what.  And I think it's essential for -- if
11   we get down to fee applications at the end of the road, to have
12   that track record there.
13              MR. FELDMAN:  Sure.  Absolutely, Judge.  We'll wait
14   for your order.
15              Was there anything else?  All right.
16              Thank you very much, Your Honor.
17              THE COURT:  Mr. Brennan?
18              MR. BRENNAN:  Good afternoon, Your Honor.
19              So this is exactly why, when you don't give agenda
20   items, as they didn't, they just come up and say --
21              THE COURT:  Well, what the Court should have done
22   and will do in the future --
23              MR. BRENNAN:  Not just that, Your Honor.
24              THE COURT:  Wait a minute -- is to invite, a week in
25   advance, put in one document with all the issues each side
```

1    wants to raise, so I can think about it.  I was remiss in not

2    asking for that.

3              MR. BRENNAN:  It's not -- and it's not just that,

4    Your Honor.  It's -- obviously there have been meet and confers

04:11PM  5    on various topics.  For example, adding claims.  You have a

6    procedure set for that.  Judge Andler could have been useful on

7    that.

8              We don't agree they should just be able to add

9    claims.  We've had a whole bunch of discussions that I have

04:11PM 10    gotten involved in to try to get the --

11              THE COURT:  Well, what's the alternative?  They've

12    got these insurance companies out there that, in theory, have

13    the same claims, at least generically, as all the people who

14    are in one of the existing ten lawsuits.

04:11PM 15              So we don't do that, so they file a new lawsuit.

16    All right.  It cost them $400.  And where does it come?  Comes

17    right back here, and it gets in the queue of stayed things.

18              MR. BRENNAN:  Or another alternative, Your Honor,

19    would be they could provide us a schedule, we could review it

04:12PM 20    and see, as happens in many cases, whether we oppose or are

21    agreeable to the amendment and adding of the claims that

22    they're adding.

23              THE COURT:  Can you oppose their ability to file a

24    new Complaint with a new set of plaintiffs?

04:12PM 25              MR. BRENNAN:  We can't oppose that, but we certainly

```
 1  can point out to them, when they give us their schedule with
 2  some basic underlying facts, like a description, of things that
 3  should not be added to this case.
 4          To give you an example, Your Honor, so one of the
 5  smaller insurers had 500 cases.  All right?  That's it, 500
 6  cases.  Well, once we got into the meet-and-confer process on
 7  the first insured, 220 of those 500 cases disappeared, because
 8  they're, like, "We need to take that out."
 9          And we believe we have agreement now that for the
10  entities that were above the first insured, that really were
11  the first insured that they wanted to drop out, that they will
12  now dismiss those with prejudice.  And, you know, we hope to
13  get an order on that and --
14          THE COURT:  Did the entities or the --
15          MR. BRENNAN:  Yeah, whatever the person is.
16  Person A, John Smith.
17          THE COURT:  Right.
18          MR. BRENNAN:  John Smith was the first named insured
19  of the first named insurer.  And John Smith, it turns out, the
20  insurer has decided they want to drop that claim.  So they go
21  to the next claim, John B. Smith.  So John Smith should be
22  dismissed with prejudice.
23          And that makes sense, if they want to dismiss claims
24  and substitute what otherwise would be -- otherwise, we get
25  into the card-shuffling issue that we talked about last time.
```

**UNITED STATES DISTRICT COURT**

1    I'm sure you remember that discussion.

2              THE COURT:  Right.

3              MR. BRENNAN:  So we think that's the appropriate

4    procedure, is they can simply -- when they want to add claims,

04:13PM  5    instead of just, "Oh, we mixed them in, and go find them" --

6              THE COURT:  How quickly can you process any such

7    showing?

8              MR. BRENNAN:  If each of us give -- if they give us

9    a schedule and give us two or three weeks to take a look at it,

04:13PM 10    we can either say we object or don't object or try to talk

11    through some of the things that we think they shouldn't be

12    adding.

13              Obviously, as you know, we don't agree -- we

14    obviously think they should all be dismissed; right?  But at

04:14PM 15    least it fits within their realm of facts that they've alleged

16    in this case.  And a lot of them don't.  That's why the one

17    that had 500 claims, all of a sudden they go down to 300

18    claims.  That's what I was --

19              THE COURT:  How about adopting a prefiling

04:14PM 20    procedure?  Before any filing to add additional plaintiffs,

21    they give you 21 days' notice?

22              MR. BRENNAN:  That would be an appropriate

23    procedure.

24              And, by the way, if we had met and conferred on that

04:14PM 25    particular topic, we might have come up to a resolution like

```
 1    that.  But when you just raise them at the status conference,
 2    that's what's happened.
 3              Now, let me move on to something else with respect
 4    to coordination.  So what Mr. Feldman didn't tell you is when
 5    he noticed all these depositions, had he coordinated with the
 6    governmental entities track -- it's not clear that that
 7    happened, because he put them right at the scheduling time when
 8    they're just about ending the governmental entities Phase 1 of
 9    the litigation.
10              So if they're saying that's the deposition notice
11    for both of them or it's just a subrogation track, plaintiff's
12    saying, "Well, here's when we're going to notice the
13    deposition."
14              I thought the message from you had been pretty clear
15    that you wanted things coordinated.  So when they noticed a
16    deposition in the subrogation track, for example, for
17    January 16, that should count for the governmental entities
18    track as well.
19              I had thought the whole idea was to have some level
20    of coordination, which usually would involve some level of
21    discussions between their side and our side, both on the
22    governmental entities track and the subrogation track.
23              THE COURT:  And among the tracks.
24              MR. BRENNAN:  Sorry.
25              THE COURT:  Go ahead.
```

          MR. BRENNAN:  But, instead, what you heard is he
comes up here, for the first time, talking about the
depositions and complaining about this and all the things we
did wrong, all of which could have been taken up with us in the
04:15PM  first place, and then with Judge Andler if we don't make
progress on that.

          So our point is there should be coordination between
the tracks.  There should be a sensible scheduling of
depositions.  We're all willing to do that, meet and confer.

04:16PM  But, instead, what their point is:  Let's see if we
can spend some time and stand up here and make Hyundai and Kia
seem like the bad guys and we just weren't doing anything to
coordinate, when it was all our effort that got them to have
the first named insured of the first named insurers.  And that
04:16PM  was through our going through various discussions with them,
which they were unwilling to do, and they had given us entities
that they don't even want to push forward.

          So in any event, we think we have most of that
solved.  There's one insurer we haven't have a complete
04:16PM  discussion with.  And we still, as we noted in our agenda that
we gave to you, we still need a further schedule from
State Farm.  But we at least have eight out of ten solved.  I
think nine is very close, and I suspect ten will get worked
out, again, because we've had discussion.  I had discussion
04:16PM  with Ms. Benson.  Ms. Conwisar has had multiple discussions

1    with people.

2         With respect to adding additional dates, we think

3    that should be done at a later time, once we know more where

4    things are.  Obviously we have the August 15 cutoff date right

04:17PM  5    now.

6         So that's what we would say.  We're always willing

7    to meet and confer with them.  When they say, "Oh, there aren't

8    any objections," I can actually walk you through, because I

9    personally looked at every single one of those topics, the way

04:17PM  10    they were set up, all sorts of things.

11         But in any event, we'll meet and confer with them.

12    We can't get it solved, we'll take it to Judge Andler.  I think

13    you were very clear on that today.  Judge Andler, she will have

14    these informal discovery conferences and try to get it resolved

04:17PM  15    then.  If she can't do it, she'll allow for briefing.  That's

16    what's happened.

17         As you know, they've been complaining about, you

18    know, they've only gotten thousands and thousands and thousands

19    of documents from us.  They've gotten that, but they want more.

04:17PM  20    Okay, that's fine.  We're willing to meet and confer with them.

21    We've gotten very little from them.

22         Mr. Susolik served, on our behalf -- on the client's

23    behalf discovery in March, and we're here at November 12 and we

24    still don't have any of those documents.  I know you're going

04:18PM  25    to enter the order and we're going to get those documents, but

```
  1    we're way behind getting information from them.  Way, way
  2    behind.
  3              I suspect you've heard enough from me, Your Honor.
  4              THE COURT:  Well, I want to make sure you cover all
04:18PM  5    the issues we think we should share today.
  6              MR. BRENNAN:  I think those are important issues.  I
  7    do think once a month is great for a status conference, and so
  8    we can come back.  But the important thing is what things that
  9    you've assigned to Judge Andler through the delegation order,
04:18PM 10    they should be handled by Judge Andler.  And the status
 11    conferences aren't a substitute for that process, and then just
 12    coming up with them without having even let the other side know
 13    you're raising them.
 14              MR. FELDMAN:  Your Honor, briefly?
04:18PM 15              THE COURT:  Mr. Feldman.
 16              MR. FELDMAN:  Elliott Feldman.
 17              Your Honor, the discussion with Mr. Brennan
 18    conflated perhaps adding new plaintiffs with adding claims.  So
 19    Your Honor has already ordered the process for adding new
04:19PM 20    plaintiffs.  And that's in the scheduling order, file a Notice
 21    of Additional Subrogation Plaintiffs in the action.
 22              It might happen, Your Honor, that by adding new
 23    claims, there may be new plaintiffs.  There may be new member
 24    companies of an insurance group that need to be added.  If so,
04:19PM 25    we'll follow this schedule.  But all that is required to add
```

        1    new plaintiffs is file a notice.

        2              I don't think, Your Honor, respectfully, there

        3    should be a more onerous process for updating the claim

        4    schedule and just providing the defendants with that updated

04:19PM  5    schedule.  We have over 300,000 claims.  If 250 of them are

        6    inapplicable, that's the level of detail that we are going

        7    through to clean them up.  It's hard to bat a thousand, but

        8    we're going to do our best.

        9              For some reason, the defendants don't want to --

04:20PM 10    don't seem to want to accept this.  We're saying we're

       11    reviewing these claims.  If we find ones that somehow or other

       12    is a carjacking that doesn't belong in there, we're going to

       13    remove it.  And we think as our clients receive additional

       14    claims and pay those claims, or make additional payments for

04:20PM 15    previously reported claims, which is a lot of what's going on

       16    as well, it just makes all the sense in the world for us to

       17    provide the defendants with those updated claim schedules under

       18    a very simple process that would be similar to adding

       19    additional plaintiffs.

04:20PM 20              We are thrilled that the defendants agree there

       21    needs to be completely consolidated discovery with all parties

       22    participating.  The subrogation plaintiffs will participate in

       23    the January 15 and January 17 depositions of the Korean

       24    representatives by Zoom.  We think that it would be helpful if

04:20PM 25    there were a clear order from Your Honor and Judge Andler

saying that all discovery will be served upon and coordinated

among all parties in both tracks, just so that there are no

hidden agendas here.

And the last point I would make, Your Honor, on the

04:21PM depositions is we noticed eight depositions.  The defendants

said, "We are not producing anyone."

Judge Andler said, "Why don't you fellas get

together and discuss dates."

The defendants said -- and I am not exaggerating --

04:21PM "We will not speak with you about dates.  We will not work with

you to set aside any dates for any depositions."

So did we notice these 20-odd depositions

unilaterally?  Yes, we did, because that was Judge Andler's

recommendation.  She said, "If they're not working with you,

04:21PM notice the deps and seek relief if witnesses are not produced."

So that's where we stand, Your Honor.

MR. BRENNAN:  Your Honor?

THE COURT:  Mr. Brennan.

MR. BRENNAN:  Your Honor, it's a little hard to hear

04:22PM Mr. Feldman get up and say what he knows is a highly contested

issue, and has already been talked about with respect to them

participating in the depositions over the 30(b)(6) depositions

that are part of the governmental entities track.

So we do not agree with that.  We do not agree they

04:22PM should be allowed to participate in that.  And we believe there

1    are jurisdictional issues.  But, again, that issue will be

2    addressed by Judge Andler.

3         But I just want to be clear.  We never said that.

4    He knows we never said that.  You know we never said that.

04:22PM 5         What I was saying, though, and what we have said all

6    along is that if they're going to notice depositions, they

7    should -- the governmental entities and the subrogation track

8    should talk to each other and say, "Well, what's sensible?"

9    And when are they finishing their Phase 1 discovery, which is

04:22PM 10   part of their track?  And if you then schedule something

11   further in the year...

12        Look, we know August 15 is the discovery cutoff, and

13   discovery is going to be done between now and then.  So that's

14   obviously all I was saying.

04:23PM 15        THE COURT:  I mean, I know from personal experience

16   that kind of coordination can be done on a massive level.  In

17   the Exxon cases, parties met a month or six weeks in advance

18   with what they wanted to do.  And they agreed on what

19   depositions will be taken each week, each segment, for the next

04:23PM 20   month or six weeks.  Everybody comes with what -- with full

21   knowledge of what's wanted and what's needed, and you sit down

22   and do it.

23        MR. BRENNAN:  We're not saying there can't be

24   coordination.  We're certainly not saying there can't be

04:23PM 25   depositions.

```
 1              THE COURT:  Well, there has to be two things:
 2    coordination and results.
 3              MR. BRENNAN:  We agree with that as well,
 4    Your Honor.  We agree with that as well.
 5              With respect to adding plaintiffs, yeah, there is a
 6    procedure for adding individual insurance companies.  That's
 7    true.
 8              THE COURT:  Yeah.
 9              MR. BRENNAN:  But with respect to adding specific
10    claims, that has not been resolved.  What our point is, when
11    they're going to drop claims -- like, he always says --
12    Mr. Feldman always says, "Oh, we're very diligent.  We've gone
13    through all these."
14              And you can see how diligent because when we went to
15    this one insurer who hadn't really heard anything, he's like,
16    "Yeah, we decided to drop 200 out of 500 claims."
17              That's not close to batting a thousand.  Not even
18    close to it.  And our point is, when you drop those claims,
19    those should be dismissed with prejudice because you're done --
20    those are done.  Those are finished claims before Judge Selna.
21    And that's just our point.  Anything that they don't want to be
22    the first insured -- and, quite frankly, anything else that
23    they don't think fits, they should just say, "This is it.
24    These are out."
25              But they haven't spent any effort on it.  There's
```

1    nothing to force them to do it.  And we're just saying those

2    claims should be dismissed with prejudice.  That's an

3    appropriate disposition of those.

4              THE COURT:  Anybody disagree with that?

04:25PM  5              MR. FELDMAN:  We think that's fine, Your Honor, as

6    long as the process is a very simple, straightforward updating

7    process, Your Honor.  That's all we're asking.

8              THE COURT:  Okay.

9              MR. BRENNAN:  So the updating should not be --

04:25PM 10    that's a good point, what he said.  The updating should not be

11    giving us a new spreadsheet that says, "Here's our claims.  Go

12    figure out what we dropped."

13              The updating should be, "Here's our new spreadsheet.

14    These are the claims we're going to pursue.  And here's the" --

04:25PM 15    on one hand.  And on the other hand, "Here's a spreadsheet of

16    all the claims that we are dropping that previously we had on

17    Exhibit C to the" -- and you remember that's part of the

18    Amended Complaint, "Those claims are going to be dismissed with

19    prejudice.  We are dropping those claims."

04:25PM 20              So it should be both of those so we actually make

21    some progress -- or results, as you put it -- in the case.

22              THE COURT:  Okay.

23              MR. BRENNAN:  Thank you, Your Honor.

24              MS. BENSON:  Just quickly, Your Honor.  Susan

04:26PM 25    Benson.

1          We agree to that process.  Those claims are now

2     stayed.  We don't agree with the term "dismissed."  We will

3     remove those damages from our claim spreadsheets.  We will not

4     request them, and we will remove them with prejudice.

04:26PM 5          They were also asking us to put a reason or a cause

6     for removal.  And in causes, they're inapplicable, period.

7          THE COURT:  They're?  I didn't hear you.

8          MS. BENSON:  The reason for removal is that they're

9     inapplicable, period.

04:26PM 10          THE COURT:  Okay.

11          MS. BENSON:  So...

12          THE COURT:  I mean, that's -- I don't think you have

13     to give a reason.  If a plaintiff doesn't want to go forward,

14     so be it.

04:26PM 15          MS. BENSON:  All right.  Thank you.

16          THE COURT:  Especially if the dismissal is with

17     prejudice.

18          MR. BRENNAN:  Your Honor, just to be clear, our

19     position would be that depends.  First of all, it would make

04:27PM 20     progress in the case if they actually gave us some reasons for

21     why they're dismissing so we can see, for other insurers,

22     whether there are similar ones and they intend to dismiss those

23     as well.  That would be some additional progress.

24          But more importantly, with respect to the first

04:27PM 25     named insureds, we did ask for reasons because we wanted to

UNITED STATES DISTRICT COURT

1    know why they were taking what otherwise would be the first

2    named insured and dismissing that.  Was it a legitimate reason

3    or was it they were trying to shuffle it and get to something

4    they prefer?

04:27PM 5    We got all that worked out.  They gave us reasons

6    for when the first insured -- what otherwise would be the first

7    named insured would be dropped.  They explained a reason in the

8    instances where that happened.  It was satisfactory, and we

9    agreed upon that.  I just want to be clear on that.

04:27PM 10    THE COURT:  Okay.

11    MR. BRENNAN:  Thank you, Your Honor.

12    THE COURT:  I think Mr. Feldman suggested one reason

13    for dropping a particular claim, intervention of criminal

14    conduct, from which I infer you're agreeing that a jury would

04:28PM 15    likely find that -- or probably, as a matter of law, that the

16    causal link between the defect and the theft is broken.

17    MR. FELDMAN:  Yeah, I view it kind of more

18    affirmatively, Judge.  Was the defendants' conduct in -- per

19    our allegations, in not equipping these vehicles with required

04:28PM 20    and standard anti-theft protection a substantial contributing

21    factor in bringing about the loss.

22    If a perpetrator goes in and pulls out the ignition

23    switch, breaks it in half, puts a USB device on and starts it,

24    and drives away in 45 seconds, our position is that,

04:29PM 25    quote/unquote, criminal conduct is not a superseding cause.

1      That's a contributing factor.

2              If someone puts a gun to someone's head and says,

3      "Give me your keys" and drives away, then under those

4      circumstances, of course the absence of anti-theft protection

04:29PM 5   is not a factor.  That's the prime distinction we're trying to

6      make, Your Honor.

7              THE COURT:  Okay.

8              MR. FELDMAN:  Thank you.

9              THE COURT:  Do you want to look at calendars and

04:29PM 10  talk about a date for December?

11             MR. MADISON:  Your Honor, before we do that, I just

12     have a point of order --

13             THE COURT:  Sure.

14             MR. MADISON:  -- and that is, Mr. Feldman did stray

04:29PM 15  into our lane in his comments about the stipulated parent

16     company depositions.  That is the subject in part of our motion

17     for protective order before Judge Andler.  And I expect

18     Mr. Feldman will file an opposition if he disagrees with that.

19             THE COURT:  Right.

04:29PM 20  MR. MADISON:  Thank you.

21             THE COURT:  Okay.

22             MR. BRENNAN:  Your Honor, with respect to dates,

23     would December 13th -- Your Honor, we're doing this on the fly,

24     but December 13th, which is a Friday that I know works for

04:30PM 25  Mr. Susolik, hopefully for Mr. Madison --

1          MR. MADISON:  We can do dates on the fly because

2     we'll have dates when we leave the courtroom.

3          THE COURT:  Okay.  Tell you what, come back to me

4     with one or two dates, three, where you think you can all get

04:30PM 5     together.  I prefer to do these late in the afternoon,

6     especially when I'm in trial, so I've got the time to visit

7     with you.

8          MR. MADISON:  Yes, Your Honor.

9          THE COURT:  So why don't you do that for December

04:30PM 10    and then in the last half of January.  So let's get two dates

11    on the calendar.

12         MR. MADISON:  Yes, Your Honor.  And perhaps we can

13    confer with Ms. Vargas off the record to find out what

14    dates are convenient for the Court.

04:30PM 15         THE COURT:  Oh, sure.  Sure.  But 3:00 o'clock on

16    almost any date works, unless I'm not here.  Okay?

17         MR. MADISON:  Thank you.

18         MR. FELDMAN:  Your Honor, I have one final comment.

19    I'm sorry.  There is a deposition --

04:30PM 20         THE COURT:  On the mic, please.  Mic, mic.

21         MR. FELDMAN:  Your Honor, I'm sorry.

22         Elliott Feldman for the subrogation plaintiffs.

23         There is a deposition taking place Monday, as

24    Ms. Cappio noticed, of one of the GE plaintiffs, and they will

04:31PM 25    be testifying about theft rates and similar data in that city.

         1              The subrogation plaintiffs intend to participate in

         2    that deposition and in other GE depositions since that data is

         3    relevant to this MDL and to our case.  So we thought it might

         4    be clearer to have a clearer statement by Your Honor that we

04:31PM  5    have the obvious right to do so.

         6              THE COURT:  Yes.

         7              MR. FELDMAN:  Thank you.

         8              MR. MADISON:  Your Honor, the problem with that is I

         9    don't know what he means, that and other depositions.  If we

04:31PM 10    bring --

        11              THE COURT:  I'm talking about one deposition.

        12              MR. MADISON:  That one, yeah.  That's fine.  I look

        13    forward to seeing Mr. Feldman in Indianapolis.

        14              But we have a motion for protective order on file,

04:31PM 15    and Mr. Feldman knows that.  And if he has a different -- a

        16    disagreement about what that -- request, he should let

        17    Judge Andler know.

        18              THE COURT:  I suspect he will.

        19              MR. MADISON:  Thank you, Your Honor.

04:32PM 20              MR. FELDMAN:  Thank God there's this thing called

        21    Zoom.  We both will be participating remotely, Your Honor.

        22    Thank you.

        23              THE COURT:  Oh, Indianapolis is a fine town.

        24              MS. CAPPIO:  We're all getting concert T-shirts,

04:32PM 25    Your Honor, with, you know, the various cities that we go to.

1           Would you like one?

2           THE COURT:  No.  My collection was cups from all the

3   places I went for Exxon.

4           Okay.  Thank you very much.

04:32PM  5           **(The parties collectively respond "Thank you.")**

6           THE COURTROOM DEPUTY:  All rise.  This Court is

7   adjourned.

8           **(Proceedings concluded at 4:32 p.m.)**

9                       **--oOo--**

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    *CERTIFICATE OF OFFICIAL REPORTER*

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   *Date:  November 25, 2024*

16

17

18

19                              */S/ DEBBIE HINO-SPAAN*

20                              *Debbie Hino-Spaan, CSR No. 7953*
                                *Federal Official Court Reporter*
21

22

23

24

25

**$**

$400 [1] - 37:16
$50 [1] - 33:24

**/**

/S [1] - 55:19

**1**

1 [11] - 7:3, 7:13, 7:24, 8:7, 9:13, 16:6, 16:14, 17:12, 17:22, 40:8, 46:9
1,560 [1] - 10:11
1-053 [1] - 1:24
108 [1] - 3:13
10th [2] - 4:9, 4:13
12 [3] - 1:16, 5:1, 42:23
1201 [3] - 2:5, 2:9, 2:13
123,000 [1] - 10:13
13th [2] - 51:23, 51:24
14th [1] - 26:19
15 [6] - 29:5, 34:25, 35:2, 42:4, 44:23, 46:12
150 [1] - 27:7
15th [2] - 31:3, 35:10
16 [2] - 16:12, 40:17
1650 [1] - 2:16
17 [3] - 17:20, 17:22, 44:23
17-page [1] - 26:18
17th [1] - 31:3
18th [2] - 12:14, 13:18
19103 [1] - 2:17

**2**

2 [4] - 5:5, 7:3, 26:23, 35:9
20 [1] - 30:12
20-odd [1] - 45:12
200 [2] - 3:9, 47:16
2024 [3] - 1:16, 5:1, 55:15
206-442-1563 [1] - 2:10
206-623-1900 [2] - 2:6, 2:14
21 [1] - 39:21
213-239-5100 [1] - 3:24
213-443-3000 [1] - 4:10
213-443-3150 [1] - 4:14

213-892-7933 [1] - 2:21
215-665-2071 [1] - 2:17
220 [1] - 38:7
25 [1] - 55:15
250 [1] - 44:5
28 [1] - 55:8
2800 [1] - 2:16
29 [2] - 16:21, 19:20
290 [1] - 3:5

**3**

3 [3] - 4:5, 7:3, 35:10
30 [2] - 13:3, 16:9
30(b)(6 [6] - 11:11, 12:14, 14:16, 17:17, 25:1, 45:22
30(b)(6)s [1] - 13:6
300 [1] - 39:17
300,000 [1] - 44:5
30th [1] - 24:2
312-222-9350 [1] - 3:20
312-551-0200 [1] - 3:10
3300 [1] - 3:23
3400 [3] - 2:5, 2:9, 2:13
353 [1] - 3:19
370 [1] - 17:15
3700 [1] - 2:20
391 [1] - 3:13
3:00 [1] - 52:15
3:27 [2] - 1:17, 5:2
3rd [2] - 2:5, 2:9

**4**

407 [1] - 3:9
411 [1] - 1:24
45 [1] - 50:24
4:00 [1] - 29:2
4:32 [1] - 54:8
4TH [1] - 1:24

**5**

50 [1] - 34:14
500 [5] - 38:5, 38:7, 39:17, 47:16
515 [1] - 3:23
5th [1] - 26:20

**6**

60 [1] - 30:13
601 [1] - 2:20
60134 [1] - 3:10

60654 [1] - 3:20
63-page [2] - 12:24, 15:15
657 [1] - 8:8

**7**

714-235-3062 [1] - 3:14
714-241-4444 [1] - 4:6
753 [1] - 55:8
7953 [2] - 1:23, 55:20

**8**

818-708-1250 [1] - 3:6
8550 [1] - 3:5
865 [2] - 4:9, 4:13
8th [1] - 12:18

**9**

90017 [2] - 2:21, 4:10
90017-2543 [1] - 4:14
90071 [1] - 3:23
91325 [1] - 3:6
92701 [1] - 1:24
92707 [1] - 4:6
92879 [1] - 3:14
98101 [3] - 2:6, 2:10, 2:13
9th [1] - 4:5

**A**

ability [2] - 24:16, 37:23
able [7] - 15:5, 16:18, 18:18, 20:3, 23:10, 24:20, 37:8
above-entitled [1] - 55:11
absence [2] - 28:18, 51:4
absolute [1] - 33:6
absolutely [2] - 9:24, 36:13
acceleration [1] - 11:4
accept [1] - 44:10
access [2] - 31:22, 32:5
accomplish [1] - 20:7
accusations [2] - 12:3, 14:12
accused [2] - 14:21, 15:25
acknowledged [1] - 27:10
action [3] - 6:18, 19:16, 43:21

activity [1] - 11:14
ad [1] - 15:24
adamant [2] - 21:14, 21:15
add [7] - 18:25, 33:11, 33:16, 37:8, 39:4, 39:20, 43:25
added [3] - 34:8, 38:3, 43:24
adding [15] - 33:15, 34:19, 37:5, 37:21, 37:22, 39:12, 42:2, 43:18, 43:19, 43:22, 44:18, 47:5, 47:6, 47:9
addition [3] - 10:7, 31:23, 32:9
additional [1] - 25:16, 31:16, 33:15, 33:24, 34:24, 39:20, 42:2, 44:13, 44:14, 44:19, 49:23
Additional [1] - 43:21
additions [1] - 34:20
address [2] - 9:1, 33:19
addressed [1] - 46:2
adequately [1] - 25:21
adjourned [1] - 54:7
adopt [1] - 18:21
adopting [1] - 39:19
advance [4] - 12:20, 30:13, 36:25, 46:17
advanced [1] - 8:1
advise [3] - 16:18, 18:18, 20:3
affirmatively [1] - 50:18
afternoon [20] - 5:9, 5:11, 5:14, 5:17, 5:18, 5:20, 5:21, 5:24, 5:25, 6:3, 6:5, 6:6, 6:8, 6:10, 6:16, 6:19, 6:20, 6:23, 36:18, 52:5
agenda [6] - 12:21, 19:11, 24:8, 24:10, 36:19, 41:20
agendas [1] - 45:3
ago [1] - 32:16
agree [14] - 14:2, 17:18, 20:9, 24:21, 31:9, 37:8, 39:13, 44:20, 45:24, 47:3, 47:4, 49:1, 49:2
agreeable [1] - 37:21
agreed [10] - 10:4, 10:5, 14:3, 22:5, 23:6, 25:2, 31:1, 46:18, 50:9

agreeing [1] - 50:14
agreement [4] - 18:6, 23:3, 27:20, 38:9
ahead [1] - 40:25
Alison [1] - 23:25
allegations [1] - 50:19
alleged [1] - 39:15
allow [1] - 42:15
allowed [1] - 45:25
almost [3] - 12:10, 12:11, 52:16
ALSO [1] - 4:17
alternative [2] - 37:11, 37:18
Amended [1] - 48:18
amendment [1] - 37:21
amount [1] - 11:8
Ana [1] - 4:6
ANA [3] - 1:18, 1:24, 5:1
AND [1] - 1:6
Andler [38] - 14:3, 14:17, 14:24, 16:3, 18:2, 18:12, 19:25, 20:3, 20:8, 20:18, 21:24, 22:9, 22:19, 23:8, 23:12, 23:24, 24:1, 24:16, 24:24, 25:3, 27:1, 28:17, 29:7, 29:8, 29:24, 30:7, 30:24, 37:6, 41:5, 42:12, 42:13, 43:9, 43:10, 44:25, 45:7, 46:2, 51:17, 53:17
Andler's [1] - 45:13
ANGELES [1] - 55:3
Angeles [4] - 2:21, 3:23, 4:10, 4:14
answer [1] - 23:19
Answers [1] - 29:12
answers [1] - 31:17
anti [2] - 50:20, 51:4
anti-theft [2] - 50:20, 51:4
APC [1] - 3:4
APLC [1] - 4:4
APPEARANCES [3] - 2:1, 3:1, 4:1
appearances [1] - 5:7
application [2] - 35:17, 35:21
applications [1] - 36:11
appointment [2] - 18:10, 21:24
appreciate [2] - 19:17, 26:2
approach [1] - 34:21

approaching [1] - 30:19
appropriate [5] - 16:20, 28:19, 39:3, 39:22, 48:3
April [4] - 16:11, 16:12, 17:7, 30:15
areas [2] - 18:23, 33:9
argue [1] - 12:5
argument [2] - 29:8, 31:10
arranged [1] - 30:3
arrived [1] - 29:21
aside [3] - 29:25, 30:4, 45:11
assigned [1] - 43:9
assimilate [1] - 16:1
assume [1] - 24:20
AT [4] - 2:4, 2:19, 3:4, 3:22
ATTORNEY [4] - 2:4, 2:19, 3:4, 3:22
attorneys' [1] - 36:6
August [7] - 19:20, 29:5, 34:25, 35:2, 35:10, 42:4, 46:12
available [3] - 10:19, 18:12, 32:4
Avenue [3] - 2:5, 2:9, 2:13

**B**

backwards [1] - 10:13
bad [1] - 41:12
badly [1] - 12:12
Balboa [1] - 3:5
bars [2] - 20:25, 21:1
based [2] - 15:21, 26:8
basic [2] - 28:6, 38:2
basis [1] - 36:9
bat [1] - 44:7
batting [1] - 47:17
beforehand [1] - 24:17
begin [2] - 6:24, 18:15
beginning [2] - 30:14, 33:2
behalf [7] - 6:4, 6:12, 6:17, 6:21, 13:10, 42:22, 42:23
behind [3] - 30:24, 43:1, 43:2
belabor [1] - 14:20
bellwether [5] - 7:1, 7:8, 7:21, 25:16, 25:20
bellwethers [6] - 7:3, 7:9, 10:16, 16:19, 18:19

belong [1] - 44:12
belt [1] - 18:18
belts [1] - 8:20
bench [1] - 31:5
benefit [2] - 35:23
Benson [3] - 5:18, 41:25, 48:25
BENSON [7] - 3:4, 3:4, 5:18, 48:24, 49:8, 49:11, 49:15
Berger [2] - 4:18, 6:7
best [1] - 44:8
between [4] - 40:21, 41:7, 46:13, 50:16
bhoffmann@ghlaw [1] - 3:11
bhoffmann@ghlaw-llp.com [1] - 3:11
big [1] - 10:23
bill [1] - 6:3
billing [1] - 36:7
bit [2] - 7:10, 20:20
BLAINE [1] - 4:4
Blaine [1] - 6:17
blame [1] - 11:23
blind [1] - 31:20
BLOCK [2] - 3:18, 3:22
Block [1] - 6:21
bluntly [1] - 8:4
book [1] - 29:17
Boulevard [1] - 3:5
bound [2] - 16:4, 17:11
breaks [1] - 50:23
BRENNAN [25] - 3:19, 6:20, 36:18, 36:23, 37:3, 37:18, 37:25, 38:15, 38:18, 39:3, 39:8, 39:22, 40:24, 41:1, 43:6, 45:17, 45:19, 46:23, 47:3, 47:9, 48:9, 48:23, 49:18, 50:11, 51:22
Brennan [5] - 6:21, 30:6, 36:17, 43:17, 45:18
brief [5] - 7:14, 8:1, 12:2, 16:3, 26:7
briefing [6] - 7:2, 21:24, 24:7, 25:17, 25:22, 42:15
briefly [2] - 20:12, 43:14
briefs [2] - 21:16, 25:20
bring [2] - 22:13, 53:10
bringing [1] - 50:21
broken [1] - 50:16

bunch [2] - 10:18, 37:9
business [3] - 13:20, 13:21
busy [1] - 19:18
buy [1] - 32:5
BY [7] - 2:8, 2:16, 3:12, 3:22, 4:4, 4:8, 4:12

**C**

CA [2] - 1:24, 3:23
calendar [1] - 52:11
calendars [1] - 51:9
California [7] - 2:21, 3:6, 3:14, 4:6, 4:10, 4:14, 55:7
CALIFORNIA [4] - 1:2, 1:18, 5:1, 55:4
Callahan [1] - 6:17
CALLAHAN [1] - 4:4
camera [1] - 36:9
Cappio [7] - 5:10, 7:15, 7:18, 16:13, 23:14, 26:8, 52:24
CAPPIO [22] - 2:4, 5:9, 7:17, 8:11, 8:13, 8:24, 9:12, 9:21, 9:24, 10:2, 10:10, 11:20, 11:23, 12:2, 15:11, 23:15, 23:18, 24:13, 25:8, 25:15, 25:24, 53:24
card [1] - 38:25
card-shuffling [1] - 38:25
care [1] - 22:16
carjacking [1] - 44:12
cars [3] - 31:21, 32:13, 32:25
CARY [2] - 3:12, 6:8
Cary [1] - 6:8
caryt@stutmanlaw. com [1] - 3:15
case [12] - 7:23, 8:6, 6:12, 16:24, 24:1, 29:14, 36:4, 38:3, 39:16, 48:21, 49:20, 53:3
Case [1] - 1:6
cases [9] - 6:25, 7:1, 11:1, 20:24, 37:20, 38:5, 38:6, 38:7, 46:17
causal [1] - 50:16
causes [1] - 49:6
caveat [1] - 26:4
Center [1] - 32:11
Central [1] - 55:7

CENTRAL [1] - 1:2
Centre [1] - 4:5
certainly [3] - 16:16, 37:25, 46:24
CERTIFICATE [1] - 55:1
Certified [1] - 1:5
certify [1] - 55:7
chambers [1] - 12:7
chance [1] - 15:5
Chicago [1] - 3:20
chose [1] - 19:15
circumstances [1] - 51:4
circumvent [1] - 15:21
cited [1] - 22:12
cities [1] - 53:25
city [2] - 19:15, 52:25
claim [12] - 33:9, 33:11, 33:23, 33:25, 34:4, 34:19, 38:20, 38:21, 44:3, 44:17, 49:3, 50:13
claimants [1] - 29:18
claims [43] - 19:2, 27:11, 27:14, 28:4, 28:14, 28:15, 28:16, 33:11, 33:19, 34:6, 34:7, 34:8, 34:16, 34:17, 37:5, 37:9, 37:13, 37:21, 38:23, 39:4, 39:17, 39:18, 43:18, 43:23, 44:5, 44:11, 44:14, 44:15, 47:10, 47:11, 47:16, 47:18, 47:20, 48:2, 48:11, 48:14, 48:16, 48:18, 48:19, 49:1
clarification [1] - 26:23
clarify [1] - 24:12
Clark [1] - 3:19
clean [1] - 44:7
clear [13] - 8:9, 9:7, 19:1, 20:18, 20:21, 21:8, 40:6, 40:14, 42:13, 44:25, 46:3, 49:18, 50:9
clearer [2] - 53:4
clearly [1] - 23:22
client's [1] - 42:22
clients [5] - 12:11, 13:22, 14:5, 14:23, 44:13
clock [1] - 17:10
close [4] - 7:15, 41:23, 47:17, 47:18
closed [2] - 13:23, 14:23
CMO [7] - 14:4, 14:6,

16:13, 17:11, 17:13, 17:14, 17:23
Coast [1] - 13:22
Code [1] - 55:8
colleague [2] - 6:14, 6:22
collection [1] - 54:2
collectively [1] - 54:5
colloquy [1] - 16:16
coming [1] - 43:12
comment [2] - 11:17, 52:18
comments [1] - 51:15
common [1] - 21:21
companies [8] - 20:1, 22:5, 22:7, 23:6, 33:22, 37:12, 43:24, 47:6
company [4] - 19:23, 20:4, 32:10, 51:16
compel [2] - 9:1, 10:3, 32:23
complaining [3] - 16:13, 41:3, 42:17
Complaint [3] - 15:16, 37:24, 48:18
complaints [1] - 10:20
complete [1] - 41:19
completely [1] - 44:21
compliance [1] - 32:13
complicated [1] - 22:7
compressed [1] - 11:14
compromise [1] - 17:24
concept [1] - 15:22
concerned [1] - 30:18
concert [1] - 53:24
concluded [2] - 7:14, 54:8
conduct [3] - 50:14, 50:18, 50:25
confer [14] - 12:22, 13:24, 14:1, 14:22, 15:1, 15:14, 15:22, 30:3, 38:6, 41:9, 42:7, 42:11, 42:20, 52:13
conference [6] - 19:21, 20:17, 26:7, 35:1, 40:1, 43:7
Conference [1] - 55:12
conferences [5] - 11:18, 29:7, 29:24, 42:14, 43:11
conferred [5] - 9:14, 12:20, 15:24, 16:2, 39:24

conferring [1] - 14:21
confers [2] - 29:6, 37:4
confirmed [2] - 16:24, 29:17
conflated [1] - 43:18
conformance [1] - 55:12
conforming [1] - 14:13
considered [2] - 7:2, 26:25
consolidated [1] - 44:21
consult [1] - 18:12
contested [1] - 45:20
continue [1] - 29:6
continued [1] - 33:22
Continued [2] - 3:1, 4:1
continuing [1] - 30:15
contrary [1] - 21:1
contributing [2] - 50:20, 51:1
convenient [1] - 52:14
Convention [2] - 22:6, 23:5
CONWISAR [1] - 3:22
Conwisar [2] - 6:22, 41:25
coordinate [2] - 31:11, 41:13
coordinated [4] - 31:13, 40:5, 40:15, 45:1
coordinating [1] - 30:21
coordination [6] - 40:4, 40:20, 41:7, 46:16, 46:24, 47:2
copies [1] - 9:16
copy [1] - 8:9
Corona [1] - 3:14
correct [3] - 22:10, 28:7, 55:9
cost [1] - 37:16
COUNSEL [3] - 2:1, 3:1, 4:1
counsel [13] - 17:20, 18:16, 19:4, 22:10, 22:15, 23:4, 29:22, 30:4, 31:1, 31:16, 32:17, 34:14, 34:22
Counsel [4] - 5:7, 24:2, 24:3, 24:6
count [1] - 40:17
COUNTY [1] - 55:3
couple [1] - 32:16
course [3] - 19:18, 26:11, 51:4

COURT [115] - 1:1, 1:23, 5:11, 5:14, 5:17, 5:20, 5:24, 6:5, 6:10, 6:19, 6:23, 8:10, 8:12, 8:21, 9:11, 9:17, 9:22, 10:1, 10:9, 11:17, 11:22, 12:1, 15:9, 15:12, 16:22, 17:3, 17:16, 18:1, 18:4, 18:20, 19:6, 19:9, 19:13, 20:7, 20:10, 20:14, 20:22, 21:10, 21:13, 21:19, 22:2, 22:14, 22:17, 22:21, 22:25, 23:14, 23:17, 24:10, 24:24, 25:10, 25:13, 25:20, 26:3, 26:9, 26:12, 26:17, 27:5, 27:15, 27:18, 27:24, 28:2, 28:8, 28:10, 28:21, 28:23, 28:25, 29:2, 30:6, 34:10, 34:13, 35:11, 35:14, 36:2, 36:17, 36:21, 36:24, 37:11, 37:23, 38:14, 38:17, 39:2, 39:6, 39:19, 40:23, 40:25, 43:4, 43:15, 45:18, 46:15, 47:1, 47:8, 48:4, 48:8, 48:22, 49:7, 49:10, 49:12, 49:16, 50:10, 50:12, 51:7, 51:9, 51:13, 51:19, 51:21, 52:3, 52:9, 52:15, 52:20, 53:6, 53:11, 53:18, 53:23, 54:2, 55:6
Court [8] - 8:19, 25:3, 35:24, 36:21, 52:14, 54:6, 55:6, 55:20
court [1] - 32:17
courtroom [1] - 52:2
COURTROOM [2] - 5:5, 54:6
cover [1] - 43:4
Cozen [2] - 5:15, 5:22
COZEN [2] - 2:15, 2:19
cracks [1] - 19:22
create [1] - 23:9
criminal [2] - 50:13, 50:25
CRR [1] - 1:23
CSR [2] - 1:23, 55:20
cups [1] - 54:2
cutoff [2] - 17:21, 29:5, 30:19, 34:24, 35:2, 35:5, 35:9,

42:4, 46:12

## D

damages [1] - 49:3
data [2] - 52:25, 53:2
Date [1] - 55:15
date [9] - 12:22, 17:21, 30:5, 30:19, 35:5, 35:10, 42:4, 51:10, 52:16
dated [1] - 26:19
dates [18] - 14:4, 14:5, 20:1, 29:21, 29:25, 34:25, 35:3, 35:4, 42:2, 45:8, 45:10, 45:11, 51:22, 52:1, 52:2, 52:4, 52:10, 52:14
days [5] - 13:3, 13:20, 13:21, 32:16
days' [2] - 30:13, 39:21
deaf [1] - 31:20
deal [1] - 14:14
dealing [1] - 10:18
DEBBIE [3] - 1:23, 55:5, 55:19
Debbie [1] - 55:20
December [4] - 51:10, 51:23, 51:24, 52:9
decide [2] - 16:3, 22:19
decided [2] - 38:20, 47:16
decisions [1] - 16:4
declaration [2] - 8:8, 9:6
declined [1] - 23:24
deed [1] - 17:8
defect [1] - 50:16
DEFENDANTS [2] - 3:17, 4:3
defendants [33] - 6:17, 6:22, 7:11, 9:3, 9:13, 12:5, 12:18, 13:2, 17:5, 20:20, 24:3, 29:20, 30:13, 30:18, 31:3, 31:8, 31:23, 32:3, 32:4, 32:10, 32:11, 32:14, 32:23, 33:7, 34:5, 34:7, 35:23, 44:4, 44:9, 44:17, 44:20, 45:5, 45:9
defendants' [4] - 29:9, 30:19, 31:17, 50:18
defense [6] - 29:22, 30:3, 31:1, 31:16, 32:16, 34:22

defers [1] - 24:6
deficiencies [1] - 8:22
deficiency [2] - 12:19, 12:24
deficient [1] - 16:2
Delaney [1] - 6:13
DELANEY [1] - 4:19
delay [3] - 12:5, 12:18, 13:3
delays [2] - 9:6, 9:7
delegation [1] - 43:9
denied [1] - 28:20
dep [3] - 13:12, 14:11, 14:13
depos [2] - 18:17, 20:4
deposition [15] - 14:6, 16:24, 16:25, 17:20, 18:9, 22:4, 23:4, 24:15, 40:10, 40:13, 40:16, 52:19, 52:23, 53:2, 53:11
depositions [39] - 11:11, 12:12, 12:14, 13:13, 16:8, 16:17, 17:7, 17:21, 18:11, 18:13, 26:5, 29:16, 29:19, 29:21, 29:25, 30:9, 30:12, 30:20, 31:2, 31:6, 31:13, 33:2, 35:5, 40:5, 41:3, 41:9, 44:23, 45:5, 45:11, 45:12, 45:22, 46:6, 46:19, 46:25, 51:16, 53:2, 53:9
deps [2] - 13:20, 45:15
DEPUTY [2] - 5:5, 54:6
described [1] - 17:12
description [1] - 38:2
design [6] - 31:19, 31:21, 31:24, 32:12, 32:25, 33:3
designate [1] - 7:8
detail [2] - 36:3, 44:6
detailed [2] - 17:17, 26:18
details [1] - 9:18
determined [1] - 25:2
developed [1] - 23:13
developing [2] - 10:21, 11:8
device [1] - 50:23
dhinospaan@yahoo.com [1] - 1:25
DIAMOND [1] - 4:19
Diamond [1] - 6:14
dice [1] - 14:2
differ [1] - 34:10
differences [1] - 7:4

defers [1] - 24:6

different [5] - 21:25, 22:8, 34:12, 53:15
differently [1] - 8:25
diligent [3] - 8:16, 47:12, 47:14
direction [3] - 22:22, 22:23, 24:22
directly [1] - 24:9
dirty [1] - 18:5
disagree [2] - 27:3, 48:4
disagreement [1] - 53:16
disagrees [1] - 51:18
disappeared [1] - 38:7
disclosures [1] - 29:20
discovery [38] - 7:13, 7:15, 8:17, 9:13, 10:21, 11:5, 13:2, 16:6, 16:7, 16:14, 17:12, 17:24, 19:24, 20:16, 20:23, 21:8, 22:1, 22:25, 23:22, 26:5, 29:4, 30:19, 31:7, 31:11, 33:5, 34:24, 35:2, 35:5, 35:9, 35:12, 42:14, 42:23, 44:21, 45:1, 46:9, 46:12, 46:13
discuss [1] - 45:8
discussing [1] - 6:24
discussion [2] - 6:25, 24:9, 39:1, 41:20, 41:24, 43:17
discussions [5] - 33:10, 37:9, 40:21, 41:15, 41:25
dismiss [3] - 19:16, 38:12, 38:23, 49:22
dismissal [3] - 19:16, 22:6, 49:16
dismissed [7] - 16:24, 38:22, 39:14, 47:19, 48:2, 48:18, 49:2
dismissing [2] - 49:21, 50:2
disposition [1] - 48:3
dispositive [1] - 35:6
disputed [1] - 24:19
disputes [1] - 14:8
distinction [1] - 51:5
DISTRICT [3] - 1:1, 1:2, 1:3
District [2] - 55:6, 55:7
DIVISION [1] - 1:2
Docket [2] - 8:8, 17:15
docket [2] - 34:14, 35:16
doctors [1] - 11:2

document [3] - 16:7, 22:1, 36:25
documents [12] - 10:11, 14:19, 16:9, 23:2, 29:9, 29:10, 31:16, 31:18, 32:19, 42:19, 42:24, 42:25
done [11] - 9:13, 10:6, 10:16, 23:1, 30:9, 36:21, 42:3, 46:13, 46:16, 47:19, 47:20
doubt [1] - 24:25
down [4] - 8:4, 13:7, 13:17, 16:15, 18:4, 22:23, 25:3, 34:1, 36:11, 39:17, 46:21
drafting [1] - 26:24
drill [1] - 13:7
Drive [1] - 4:5
drives [4] - 17:4, 50:24, 51:3
drop [7] - 12:12, 33:11, 38:11, 38:20, 47:11, 47:16, 47:18
dropped [3] - 34:9, 48:12, 50:7
dropping [4] - 34:6, 48:16, 48:19, 50:13
due [1] - 19:17
dumb [1] - 31:20
during [2] - 18:13, 30:16
dwell [2] - 9:18, 9:19

**E**

East [1] - 13:22
easy [1] - 8:15
Edward [1] - 6:16
EDWARD [2] - 3:12, 4:4
efeldman@cozen. com [1] - 2:18
effect [1] - 34:19
efficient [1] - 33:19
effort [2] - 41:13, 47:25
eight [4] - 22:8, 29:19, 41:22, 45:5
either [4] - 15:24, 25:2, 34:8, 39:10
ELLIOTT [1] - 2:16
Elliott [5] - 5:15, 28:11, 28:12, 43:16, 52:22
email [3] - 12:23, 23:25
EMANUEL [2] - 4:8, 4:12
Emanuel [2] - 4:19,

6:11
employment [1] - 23:11
encountered [1] - 30:8
end [3] - 24:12, 36:5, 36:11
ending [1] - 40:8
engage [1] - 30:5
engineering [5] - 31:19, 31:24, 32:13, 32:25, 33:3
enter [1] - 42:25
entered [1] - 33:13
entities [13] - 7:8, 10:18, 13:8, 25:14, 38:10, 38:14, 40:6, 40:8, 40:17, 40:22, 41:16, 45:23, 46:7
entitled [6] - 16:18, 17:6, 17:12, 17:15, 32:24, 55:11
entity [8] - 6:1, 6:25, 7:5, 7:19, 10:23, 13:11, 31:1, 32:12
epidemic [1] - 34:1
equipping [1] - 50:19
es@callahan [1] - 4:7
es@callahan-law. com [1] - 4:7
especially [3] - 8:13, 49:16, 52:6
ESQ [9] - 2:8, 2:12, 2:16, 3:8, 3:12, 3:19, 4:4, 4:8, 4:12
essence [1] - 18:24
essential [1] - 36:10
evening [1] - 10:2
event [2] - 41:18, 42:11
exactly [3] - 34:16, 36:8, 36:19
exaggerating [1] - 45:9
example [6] - 9:14, 10:3, 19:23, 37:5, 38:4, 40:16
except [1] - 30:24
excess [1] - 30:12
excuse [1] - 10:12
Exhibit [1] - 48:17
existing [1] - 37:14
expect [2] - 20:2, 51:17
experience [1] - 46:15
expert [1] - 35:5
explained [1] - 50:7
expressly [1] - 28:3
extent [5] - 9:5, 12:5, 31:24, 32:7, 34:5

extremely [2] - 8:16, 23:22
Exxon [2] - 46:17, 54:3

**F**

facets [1] - 22:8
facing [3] - 9:8, 11:13, 12:11
fact [14] - 7:4, 8:4, 8:20, 8:21, 8:23, 9:14, 9:24, 10:7, 10:17, 10:24, 12:17, 13:4, 24:19, 35:5
factor [3] - 50:21, 51:1, 51:5
facts [4] - 10:21, 18:5, 38:2, 39:15
factual [1] - 7:4
fairly [1] - 28:6
far [1] - 10:11
fare [1] - 34:17
Farm [1] - 41:22
fast [1] - 8:13
fateful [1] - 13:18
father [1] - 23:20
fault [1] - 11:22
favor [1] - 11:6
February [2] - 35:9, 35:10
Federal [2] - 14:22, 55:20
FEDERAL [2] - 1:23, 55:5
fee [1] - 36:11
fees [1] - 36:6
Feldman [16] - 5:15, 28:10, 28:11, 28:12, 30:8, 40:4, 43:15, 43:16, 45:20, 47:12, 50:12, 51:14, 51:18, 52:22, 53:13, 53:15
FELDMAN [23] - 2:16, 5:15, 27:17, 28:11, 28:22, 28:24, 29:1, 29:3, 30:7, 34:12, 34:16, 35:12, 35:25, 36:13, 43:14, 43:16, 48:5, 50:17, 51:8, 52:18, 52:21, 53:7, 53:20
fell [1] - 12:25
fellas [1] - 45:7
fester [1] - 26:1
festering [1] - 11:25
Figueroa [3] - 2:20, 4:9, 4:13
figure [1] - 48:12
file [11] - 8:8, 12:8,

26:7, 28:4, 32:23, 37:15, 37:23, 43:20, 44:1, 51:18, 53:14
filed [8] - 9:2, 9:4, 16:2, 19:19, 19:25, 22:9, 26:21, 36:9
files [1] - 28:14
filing [1] - 39:20
fill [1] - 30:1
final [1] - 52:18
finally [3] - 13:19, 17:8, 17:9
fine [5] - 10:9, 42:20, 48:5, 53:12, 53:23
Fine [1] - 30:2
finished [1] - 47:20
finishing [1] - 46:9
firm [1] - 35:18
first [32] - 7:20, 11:16, 16:23, 25:1, 25:6, 26:9, 27:3, 27:5, 27:9, 27:14, 27:19, 28:5, 31:10, 33:9, 38:7, 38:10, 38:11, 38:18, 38:19, 41:2, 41:5, 41:14, 47:22, 49:19, 49:24, 50:1, 50:6
fits [2] - 39:15, 47:23
five [1] - 13:20
flat [1] - 30:20
flipped [1] - 10:14
Floor [3] - 4:5, 4:9, 4:13
Flower [1] - 3:23
flowing [1] - 12:4
fly [5] - 21:23, 22:20, 23:11, 51:23, 52:1
focus [1] - 22:3
folks [1] - 15:16
follow [1] - 43:25
following [3] - 13:1, 27:10, 34:25
FOR [4] - 2:3, 3:3, 3:17, 4:3
force [1] - 48:1
foregoing [1] - 55:9
foreign [7] - 20:16, 21:9, 22:25, 23:6, 23:22, 31:2, 33:5
format [1] - 55:11
Fort [1] - 19:15
forward [9] - 7:9, 8:1, 18:11, 23:23, 25:25, 33:2, 41:17, 49:13, 53:13
foundational [1] - 14:7
four [1] - 23:4
frame [2] - 8:18, 9:12

frankly [4] - 7:23, 10:3, 22:11, 47:22
Friday [7] - 9:2, 13:19, 13:22, 14:17, 14:18, 24:22, 51:24
full [2] - 11:5, 46:20
fully [3] - 23:13, 31:6, 33:6
fulsome [1] - 23:10
future [1] - 36:22

**G**

gap [1] - 7:15
gcappio@ kellerrohrback.com [1] - 2:7
GE [7] - 5:10, 5:13, 16:23, 19:5, 20:15, 52:24, 53:2
generically [1] - 37:13
Geneva [1] - 3:10
given [3] - 29:23, 30:18, 41:16
God [1] - 53:20
Gold [1] - 6:14
GOLD [1] - 4:19
Gold-Diamond [1] - 6:14
GOLD-DIAMOND [1] - 4:19
government [1] - 25:14
governmental [15] - 6:1, 6:24, 7:8, 7:19, 10:18, 10:23, 13:7, 13:11, 30:25, 40:6, 40:8, 40:17, 40:22, 45:23, 46:7
grateful [1] - 18:16
great [4] - 8:11, 25:24, 28:1, 43:7
GRETCHEN [1] - 2:4
Gretchen [2] - 5:9, 7:18
Griffin [1] - 6:12
GRIFFIN [1] - 4:8
GROTEFELD [1] - 3:8
group [1] - 43:24
guess [2] - 7:14, 28:11
guidance [2] - 20:17, 20:21
gun [1] - 51:2
guys [1] - 41:12

**H**

Hague [2] - 22:6, 23:5
half [2] - 50:23, 52:10
hammer [1] - 25:5

hammered [1] - 12:24
hand [2] - 48:15
handed [1] - 9:16
handle [1] - 24:19
handled [2] - 24:23, 43:10
handling [1] - 19:2
hands [2] - 9:9, 18:5
hans [1] - 6:6
HANS [1] - 4:18
happy [4] - 8:2, 9:1, 12:6, 12:8
hard [6] - 7:18, 8:17, 12:16, 13:8, 44:7, 45:19
HATCI [2] - 32:9, 32:10
HATCI's [1] - 32:15
head [1] - 51:2
heads [1] - 16:15
headwinds [2] - 9:8, 12:10
hear [12] - 7:20, 8:25, 14:25, 15:10, 16:12, 20:1, 20:19, 22:11, 23:2, 29:15, 45:19, 49:7
heard [7] - 14:25, 20:12, 25:17, 34:22, 41:1, 43:3, 47:15
HEARING [1] - 1:15
heart [1] - 12:22
heartened [1] - 7:20
held [2] - 12:18, 55:10
help [1] - 15:14
helpful [4] - 9:15, 21:7, 25:9, 44:24
helping [1] - 10:20
HERB [2] - 4:18, 6:6
Herb [1] - 6:6
hereby [1] - 55:7
Hi [1] - 5:15
hidden [1] - 45:3
highly [1] - 45:20
HINO [3] - 1:23, 55:5, 55:19
Hino [1] - 55:20
HINO-SPAAN [3] - 1:23, 55:5, 55:19
Hino-Spaan [1] - 55:20
HMA [1] - 6:12
HOFFMAN [1] - 6:3
Hoffman [1] - 6:4
HOFFMANN [2] - 3:8, 3:8
hold [1] - 11:18
holiday [1] - 14:22
Honor [122] - 5:9,

5:21, 5:25, 6:3, 6:6, 6:8, 6:13, 6:14, 6:16, 6:20, 7:17, 8:2, 8:9, 8:13, 8:16, 8:17, 8:24, 9:9, 10:6, 10:8, 10:15, 11:10, 11:20, 11:24, 12:6, 12:7, 13:13, 13:25, 15:11, 15:23, 16:11, 16:17, 16:19, 17:1, 17:7, 17:11, 17:18, 17:25, 18:3, 18:8, 18:18, 19:4, 19:8, 19:14, 19:17, 20:3, 20:6, 20:9, 20:11, 21:12, 22:12, 22:16, 22:24, 23:13, 23:15, 23:21, 24:13, 24:22, 25:8, 25:11, 25:15, 25:16, 25:17, 26:4, 26:6, 26:14, 27:17, 27:22, 28:7, 28:11, 28:24, 29:5, 29:14, 30:23, 30:25, 31:4, 31:9, 33:1, 33:9, 33:13, 33:18, 34:3, 34:18, 34:25, 35:7, 36:16, 36:18, 36:23, 37:4, 37:18, 38:4, 43:3, 43:14, 43:17, 43:19, 43:22, 44:2, 44:25, 45:4, 45:16, 45:17, 45:19, 47:4, 48:5, 48:7, 48:23, 48:24, 49:18, 50:11, 51:6, 51:11, 51:22, 51:23, 52:8, 52:12, 52:18, 52:21, 53:4, 53:8, 53:19, 53:21, 53:25
Honor's [6] - 17:10, 17:13, 17:14, 18:10, 20:17, 21:23
HONORABLE [1] - 1:3
hope [3] - 8:7, 9:6, 38:12
hopefully [1] - 51:25
hot [1] - 8:12
hours [1] - 35:18
however-many-page [1] - 15:16
Hutton [1] - 4:5
Hyundai [6] - 5:6, 8:22, 32:10, 32:12, 32:17, 41:11
HYUNDAI [1] - 1:5

I

idea [4] - 33:21, 35:19, 36:10, 40:19

identified [2] - 29:19, 32:11
ignition [1] - 50:22
Illinois [2] - 3:10, 3:20
imminent [1] - 7:22
imminently [1] - 9:6
important [4] - 11:12, 35:3, 43:6, 43:8
importantly [2] - 13:6, 49:24
IN [1] - 1:5
inapplicable [4] - 34:6, 44:6, 49:6, 49:9
inclined [3] - 7:21, 20:19, 25:17
incorporate [1] - 13:4
increasing [1] - 34:2
indeed [2] - 8:5, 21:2
Indianapolis [4] - 14:11, 24:14, 53:13, 53:23
indicated [4] - 18:17, 20:18, 28:17, 36:5
indicating) [1] - 28:12
individual [2] - 11:1, 47:6
infer [1] - 50:14
informal [1] - 42:14
information [18] - 8:19, 10:19, 10:22, 11:8, 12:3, 12:4, 16:18, 26:8, 28:16, 31:18, 31:22, 31:24, 32:3, 32:5, 32:7, 33:4, 33:8, 43:1
informed [1] - 29:22
injury [1] - 11:1
input [2] - 7:10, 25:18
instance [1] - 26:9
instances [1] - 50:8
instead [4] - 21:23, 39:5, 41:1, 41:10
instruction [1] - 24:18
insurance [3] - 37:12, 43:24, 47:6
insured [9] - 38:7, 38:10, 38:11, 38:18, 41:14, 47:22, 50:2, 50:6, 50:7
insureds [1] - 49:25
insurer [4] - 38:19, 38:20, 41:19, 47:15
insurers [3] - 38:5, 41:14, 49:21
intelligent [1] - 7:13
intend [3] - 31:5, 49:22, 53:1
intended [1] - 36:5
interesting [3] - 12:23,

29:15, 31:17
interpretation [1] - 26:25
interrogatories [2] - 10:12, 10:13
Interrogatories [1] - 29:12
interrogatory [1] - 14:19
intervals [1] - 35:8
intervention [2] - 9:22, 50:13
invite [1] - 36:24
involve [1] - 40:20
involved [2] - 20:8, 37:10
involves [1] - 22:7
issue [16] - 10:16, 13:3, 20:16, 20:18, 22:1, 22:3, 22:7, 24:4, 24:8, 25:7, 25:16, 25:21, 27:20, 38:25, 45:21, 46:1
issues [19] - 6:25, 10:3, 11:24, 15:24, 19:23, 20:4, 21:21, 21:25, 22:16, 23:11, 26:1, 29:8, 29:12, 29:14, 33:9, 36:25, 43:5, 43:6, 46:1
item [1] - 24:25
items [2] - 19:7, 36:20

J

JAMES [1] - 1:3
jammed [1] - 11:14
January [11] - 17:22, 20:2, 30:15, 30:22, 31:3, 33:3, 40:17, 44:23, 52:10
JConwisar@jenner. com [1] - 3:24
Jenna [1] - 6:22
JENNA [1] - 3:22
Jenner [1] - 4:22
JENNER [2] - 3:18, 3:22
Jewel [1] - 11:3
job [1] - 13:10
John [5] - 38:16, 38:18, 38:19, 38:21
joint [1] - 21:6
judge [1] - 24:11
Judge [45] - 5:15, 14:3, 14:17, 14:24, 16:3, 18:2, 18:12, 19:25, 20:3, 20:8, 20:18, 21:24, 22:9, 22:19, 23:8, 23:12,

23:24, 24:1, 24:9, 24:16, 24:24, 25:3, 27:1, 28:17, 29:7, 29:8, 29:24, 30:7, 30:24, 34:23, 36:13, 37:6, 41:5, 42:12, 42:13, 43:9, 43:10, 44:25, 45:7, 45:13, 46:2, 47:20, 50:18, 51:17, 53:17
JUDGE [1] - 1:3
judge's [1] - 18:21
Judicial [1] - 55:12
juncture [1] - 31:17
jurisdictional [2] - 23:5, 46:1
jury [1] - 50:14
Justin [1] - 6:12
JUSTIN [1] - 4:8
justingriffin@ quinnemanuel.com [1] - 4:11

K

KA [1] - 6:12
Kahn [2] - 4:18, 6:7
keep [2] - 10:15, 20:13
keeping [1] - 7:24
KELLER [3] - 2:4, 2:8, 2:12
Keller [4] - 5:10, 5:12, 6:1, 7:18
keys [1] - 51:3
KIA [1] - 1:5
Kia [6] - 5:6, 8:22, 32:10, 32:12, 32:17, 41:11
kid [1] - 13:14
kids [1] - 23:19
kind [6] - 11:2, 11:13, 26:1, 31:20, 46:16, 50:17
kinds [1] - 15:4
knowledge [1] - 46:21
knows [4] - 31:9, 45:20, 46:4, 53:15
Korea [1] - 31:2
Korean [3] - 31:25, 32:7, 44:23

L

laid [1] - 10:24
lane [1] - 51:15
language [1] - 21:5
last [12] - 9:2, 9:3, 10:2, 12:16, 20:13, 20:17, 33:24, 34:23, 35:12, 38:25, 45:4,

52:10
**late** [4] - 15:25, 24:21, 29:1, 52:5
**law** [1] - 50:15
**LAW** [5] - 2:4, 2:19, 3:4, 3:12, 3:22
**law.com** [1] - 4:7
**lawsuit** [2] - 34:15, 37:15
**lawsuits** [1] - 37:14
**lay** [1] - 25:21
**leadership** [2] - 35:13, 35:15
**leads** [1] - 18:20
**learn** [1] - 7:6
**learned** [1] - 30:25
**least** [3] - 37:13, 39:15, 41:22
**leave** [2] - 26:7, 52:2
**lectern** [2] - 19:8, 20:14
**Lee** [1] - 34:17
**left** [1] - 16:21
**LEGAL** [1] - 3:4
**legislate** [1] - 18:9
**legitimate** [2] - 21:3, 50:2
**letter** [4] - 9:3, 12:19, 12:25, 16:3
**letting** [2] - 13:25, 26:1
**level** [4] - 40:19, 40:20, 44:6, 46:16
**LIABILITY** [1] - 1:7
**light** [1] - 24:7
**likely** [2] - 26:24, 50:15
**limit** [3] - 21:14, 27:2, 28:19
**limited** [6] - 16:7, 20:23, 23:3, 27:9, 27:14, 28:16
**limits** [1] - 10:4
**line** [1] - 25:4
**link** [1] - 50:16
**list** [1] - 17:17
**literally** [1] - 23:20
**litigation** [5] - 5:6, 8:7, 11:4, 40:9
**LITIGATION** [1] - 1:7
**live** [1] - 14:8
**LLP** [8] - 2:4, 2:8, 2:12, 3:8, 3:18, 3:22, 4:8, 4:12
**llp.com** [1] - 3:11
**lob** [2] - 15:15
**Local** [1] - 15:14
**lodged** [1] - 19:12
**log** [1] - 29:13

**logistics** [1] - 15:2
**look** [6] - 16:19, 25:25, 39:9, 46:12, 51:9, 53:12
**looked** [1] - 42:9
**Los** [4] - 2:21, 3:23, 4:10, 4:14
**LOS** [1] - 55:3
**loss** [2] - 20:20, 50:21
**love** [1] - 24:22

## M

**Madison** [4] - 6:11, 15:10, 29:16, 51:25
**MADISON** [34] - 4:12, 6:11, 15:23, 16:23, 17:6, 17:18, 18:3, 18:8, 19:3, 19:7, 19:10, 19:14, 20:9, 20:11, 21:12, 21:18, 21:22, 22:3, 22:15, 22:18, 22:24, 23:2, 26:4, 26:11, 51:11, 51:14, 51:20, 52:1, 52:8, 52:12, 52:17, 53:8, 53:12, 53:19
**magistrate** [2] - 18:20, 24:11
**magnitude** [1] - 33:21
**Main** [1] - 3:13
**main** [1] - 6:25
**major** [1] - 7:4
**manage** [1] - 7:23
**management** [2] - 16:12, 36:4
**manager** [1] - 24:1
**manner** [1] - 7:13
**manual** [3] - 19:1, 19:2, 28:4
**March** [3] - 29:4, 29:18, 42:23
**Market** [1] - 2:16
**MARKETING** [1] - 1:6
**Marriott** [1] - 6:1
**MARRIOTT** [2] - 2:12, 5:25
**massive** [1] - 46:16
**master** [6] - 9:23, 15:20, 22:22, 26:10, 26:16, 26:20
**Matter** [1] - 5:5
**matter** [7] - 16:4, 17:5, 18:24, 24:10, 24:14, 50:15, 55:11
**McDevitt** [9] - 2:8, 5:12, 14:13, 20:12, 20:15, 21:5, 21:11
**MDL** [3] - 8:5, 31:7, 53:3

**MDLs** [1] - 10:16
**mean** [7] - 12:15, 15:4, 34:10, 34:13, 34:15, 46:15, 49:12
**meaning** [1] - 14:6
**means** [1] - 53:9
**meantime** [1] - 26:2
**meanwhile** [1] - 29:15
**meet** [16] - 12:21, 13:24, 14:1, 14:22, 15:1, 15:14, 15:22, 24:16, 29:6, 30:3, 37:4, 38:6, 41:9, 42:7, 42:11, 42:20
**meet-and-confer** [3] - 13:24, 14:1, 38:6
**meeting** [1] - 14:21
**Megan** [1] - 5:12
**MEGAN** [1] - 2:19
**member** [1] - 43:23
**men** [1] - 13:9
**mentioned** [2] - 14:16, 19:15
**message** [1] - 40:14
**met** [6] - 9:14, 12:19, 15:23, 16:2, 39:24, 46:17
**mic** [1] - 52:20
**mid** [1] - 30:15
**mid-January** [1] - 30:15
**middle** [1] - 14:18
**Midwest** [1] - 13:22
**might** [4] - 10:12, 39:25, 43:22, 53:3
**million** [1] - 33:24
**mind** [2] - 9:9, 10:15
**minds** [1] - 7:1
**minute** [3] - 13:7, 20:25, 36:24
**mischaracterizing** [1] - 23:23
**mixed** [1] - 39:5
**mobilizers** [1] - 28:18
**modification** [1] - 28:2
**mom** [1] - 23:15
**moment** [1] - 28:24
**Monday** [6] - 13:14, 14:11, 18:16, 24:15, 24:25, 52:23
**month** [6] - 11:19, 20:2, 26:1, 43:7, 46:17, 46:20
**monthly** [1] - 36:9
**months** [3] - 29:11, 30:24, 33:25
**morning** [6] - 7:14, 15:8, 24:2, 24:3, 24:6, 24:15
**most** [5] - 13:6, 15:18,

30:16, 33:19, 41:18
**mother** [1] - 23:18
**motion** [15] - 9:1, 10:3, 15:15, 19:25, 20:19, 22:4, 22:8, 22:11, 22:13, 23:7, 23:24, 27:11, 34:24, 51:16, 53:14
**MOTION** [1] - 1:15
**motions** [2] - 32:23, 35:6
**move** [2] - 15:12, 40:3
**mpeitzke@cozen. com** [1] - 2:22
**MR** [97] - 5:12, 5:15, 5:25, 6:3, 6:6, 6:8, 6:11, 6:16, 6:20, 15:23, 16:23, 17:6, 17:18, 18:3, 18:8, 19:3, 19:7, 19:10, 19:14, 20:9, 20:11, 20:12, 20:15, 21:5, 21:11, 21:12, 21:18, 21:22, 22:3, 22:15, 22:18, 22:24, 23:2, 25:11, 26:4, 26:11, 26:14, 26:18, 27:8, 27:17, 27:21, 27:25, 28:7, 28:9, 28:11, 28:22, 28:24, 29:1, 29:3, 30:7, 34:12, 34:16, 35:12, 35:25, 36:13, 36:18, 36:23, 37:3, 37:18, 37:25, 38:15, 38:18, 39:3, 39:8, 39:22, 40:24, 41:1, 43:6, 43:14, 43:16, 45:17, 45:19, 46:23, 47:3, 47:9, 48:5, 48:9, 48:23, 49:18, 50:11, 50:17, 51:8, 51:11, 51:14, 51:20, 51:22, 52:1, 52:8, 52:12, 52:17, 52:18, 52:21, 53:7, 53:8, 53:12, 53:19, 53:20
**MS** [27] - 5:9, 5:18, 5:21, 7:17, 8:11, 8:13, 8:24, 9:12, 9:21, 9:24, 10:2, 10:10, 11:20, 11:23, 12:2, 15:11, 23:15, 23:18, 24:13, 25:8, 25:15, 25:24, 48:24, 49:8, 49:11, 49:15, 53:24
**multiple** [1] - 41:25

## N

**nailed** [1] - 13:17
**named** [8] - 27:3, 38:18, 38:19, 41:14, 49:25, 50:2, 50:7
**names** [1] - 30:1
**narrow** [3] - 14:2, 14:3, 14:5
**nature** [1] - 35:6
**nauseam** [1] - 15:24
**need** [19] - 7:13, 8:19, 9:22, 14:11, 14:13, 14:24, 15:1, 15:3, 15:16, 18:4, 25:13, 30:11, 31:11, 31:13, 33:2, 33:3, 38:8, 41:21, 43:24
**needed** [1] - 46:21
**needs** [5] - 8:9, 18:1, 18:15, 29:16, 44:21
**never** [7] - 11:23, 13:15, 19:21, 22:10, 46:3, 46:4
**new** [13] - 14:20, 34:19, 37:15, 37:24, 43:18, 43:19, 43:22, 42:23, 44:1, 48:11, 48:13
**next** [4] - 26:7, 35:1, 38:21, 46:19
**night** [2] - 13:19, 13:22
**nine** [1] - 41:23
**nitpicking** [1] - 10:7
**nonparties** [1] - 23:6
**North** [2] - 3:13, 3:19
**Northridge** [1] - 3:6
**noted** [2] - 13:19, 41:20
**nothing** [3] - 29:11, 32:21, 48:1
**notice** [18] - 13:12, 14:11, 14:13, 14:17, 17:17, 25:2, 30:9, 30:13, 33:16, 34:5, 34:7, 39:21, 40:10, 40:12, 44:1, 45:12, 45:15, 46:6
**Notice** [1] - 43:20
**noticed** [6] - 16:9, 29:19, 30:12, 30:21, 40:5, 40:15, 45:5, 52:24
**notices** [1] - 14:16
**notwithstanding** [1] - 7:2, 7:3
**NOVEMBER** [2] - 1:16, 5:1
**November** [2] - 42:23,

55:15
**number** [3] - 8:22, 18:23, 24:25
**numbers** [1] - 10:23
**numerous** [2] - 29:5, 31:4

## O

**o'clock** [2] - 29:2, 52:15
**O'CONNOR** [2] - 2:15, 2:19
**O'Connor** [2] - 5:16, 5:22
**object** [2] - 39:10
**objected** [2] - 32:18, 32:21
**objection** [2] - 26:21, 26:24
**objections** [2] - 18:12, 42:8
**obvious** [1] - 53:5
**obviously** [9] - 8:19, 10:18, 16:4, 34:15, 37:4, 39:13, 39:14, 42:4, 46:14
**October** [3] - 12:24, 13:18, 24:2
**OF** [9] - 1:2, 1:14, 2:1, 3:1, 3:12, 4:1, 55:1, 55:3, 55:4
**offend** [1] - 21:20
**OFFICES** [1] - 3:12
**Official** [1] - 55:20
**OFFICIAL** [3] - 1:23, 55:1, 55:5
**omnibus** [1] - 9:5
**once** [6] - 11:18, 18:17, 21:20, 38:6, 42:3, 43:7
**one** [29] - 6:25, 11:21, 11:23, 12:25, 17:16, 21:17, 22:1, 22:4, 23:4, 24:13, 24:25, 25:6, 28:2, 33:22, 36:25, 37:14, 38:4, 39:16, 41:19, 42:9, 47:15, 48:15, 50:12, 52:4, 52:18, 52:24, 53:11, 53:12, 54:1
**onerous** [1] - 44:3
**ones** [2] - 44:11, 49:22
**ongoing** [2] - 29:12, 33:10
**online** [1] - 10:19
**oOo** [1] - 54:9
**open** [2] - 13:1, 19:23
**opportunity** [1] - 23:8
**oppose** [4] - 23:8,

37:20, 37:23, 37:25
**opposed** [1] - 34:21
**opposition** [1] - 51:18
**oral** [1] - 29:7
**order** [30] - 16:12, 18:10, 19:17, 19:20, 20:22, 21:2, 21:4, 21:6, 21:8, 21:24, 22:4, 22:13, 23:11, 24:11, 27:11, 33:13, 34:3, 34:24, 35:9, 35:16, 36:2, 36:14, 38:13, 42:25, 43:9, 43:20, 44:25, 51:12, 51:17, 53:14
**ordered** [5] - 8:18, 16:11, 17:7, 17:25, 43:19
**ordering** [1] - 20:25, 21:1
**orders** [2] - 36:3, 36:4
**original** [1] - 35:9
**otherwise** [5] - 12:5, 38:24, 50:1, 50:6
**ought** [2] - 21:21, 28:5
**outside** [2] - 22:5, 23:5
**oversight** [1] - 26:24
**overstate** [1] - 13:8
**own** [2] - 15:19, 27:13

## P

**P.C** [1] - 3:12
**p.m** [1] - 54:8
**P.M** [2] - 1:17, 5:2
**PA** [1] - 2:17
**page** [5] - 10:4, 15:16, 26:21, 26:23, 55:11
**pages** [1] - 10:13
**paint** [1] - 14:15
**paragraphs** [1] - 17:16
**parent** [6] - 19:23, 20:1, 20:4, 22:5, 22:6, 51:15
**parents** [3] - 20:23, 31:25, 32:7
**part** [9] - 21:22, 22:6, 33:4, 33:6, 33:7, 45:23, 46:10, 48:17, 51:16
**participate** [8] - 15:3, 31:6, 31:14, 33:6, 44:22, 45:25, 53:1
**participating** [4] - 44:22, 45:22, 53:21
**particular** [2] - 39:25, 50:13
**parties** [12] - 8:6, 11:7, 27:10, 31:11, 31:12,

31:13, 33:17, 35:4, 44:21, 45:2, 46:17, 54:5
**parties'** [1] - 20:24
**partner** [1] - 6:12
**party** [1] - 21:3
**past** [1] - 30:8
**Patrick** [1] - 5:25
**PATRICK** [1] - 2:12
**pay** [1] - 44:14
**payments** [2] - 33:24, 44:14
**pbrennan@jenner. com** [1] - 3:21
**PEITZKE** [2] - 2:19, 5:21
**Peitzke** [1] - 5:22
**people** [7] - 15:3, 15:17, 15:22, 21:4, 35:17, 37:13, 42:1
**per** [4] - 21:23, 30:16, 32:3, 50:18
**perhaps** [2] - 26:6, 43:18, 52:12
**period** [3] - 30:16, 49:6, 49:9
**periodic** [1] - 36:7
**periods** [1] - 35:8
**perpetrator** [1] - 50:22
**person** [2] - 36:6, 38:15
**Person** [1] - 38:16
**personal** [2] - 11:1, 46:15
**personally** [2] - 35:19, 42:9
**pertains** [1] - 21:8
**Peter** [1] - 6:20
**PETER** [1] - 3:19
**Phase** [9] - 7:13, 8:7, 9:13, 16:6, 16:14, 17:12, 17:22, 40:8, 46:9
**phasing** [2] - 16:11, 21:8
**Philadelphia** [1] - 2:17
**picture** [2] - 14:15, 15:9
**place** [4] - 31:2, 35:4, 41:5, 52:23
**places** [1] - 54:3
**plaintiff** [6] - 10:17, 10:24, 12:17, 13:4, 16:23, 49:13
**plaintiff's** [1] - 40:11
**plaintiffs** [42] - 5:10, 5:13, 5:16, 5:19, 5:23, 6:2, 6:4, 6:7, 6:9, 7:19, 9:7, 10:25, 16:21, 17:4, 17:20,

20:15, 21:9, 26:21, 27:3, 28:13, 31:1, 31:5, 32:1, 33:14, 33:15, 33:16, 34:4, 34:11, 34:19, 37:24, 39:20, 43:18, 43:20, 43:23, 44:1, 44:19, 44:22, 47:5, 52:22, 52:24, 53:1
**Plaintiffs** [1] - 43:21
**PLAINTIFFS** [2] - 2:3, 3:3
**plaintiffs'** [1] - 18:17
**planning** [2] - 14:9, 14:10
**pmarriott@ kellerrohrback.com** [1] - 2:14
**point** [16] - 15:13, 20:13, 22:22, 31:10, 32:22, 34:23, 35:12, 38:1, 41:7, 41:10, 45:4, 47:10, 47:18, 47:21, 48:10, 51:12
**pointed** [1] - 18:22
**policies** [1] - 28:15
**portion** [1] - 35:22
**portions** [1] - 17:15
**position** [6] - 31:8, 31:20, 31:21, 32:24, 49:19, 50:24
**post** [1] - 35:5
**post-fact** [1] - 35:5
**practically** [1] - 8:5
**practice** [3] - 13:15, 20:19, 35:16
**PRACTICES** [1] - 1:6
**prefer** [2] - 50:4, 52:5
**prefiling** [1] - 39:19
**prejudice** [7] - 38:12, 38:22, 47:19, 48:2, 48:19, 49:4, 49:17
**prepare** [4] - 13:11, 13:13, 13:16, 17:14
**prepared** [3] - 12:13, 18:21, 20:22
**prepping** [1] - 14:9
**presence** [1] - 28:18
**PRESENT** [1] - 4:17
**presentation** [1] - 25:2
**press** [1] - 8:12
**pretty** [1] - 40:14
**previous** [1] - 33:25
**previously** [3] - 30:21, 44:15, 48:16
**prime** [1] - 51:5
**principal** [1] - 22:3
**priority** [2] - 24:24, 25:7

**privilege** [1] - 29:13
**problem** [2] - 21:22, 53:8
**procedure** [7] - 11:2, 26:22, 37:6, 39:4, 39:20, 39:23, 47:6
**procedures** [1] - 15:21
**proceeded** [1] - 29:24
**proceeding** [1] - 27:12
**Proceedings** [1] - 54:8
**proceedings** [2] - 31:7, 55:10
**PROCEEDINGS** [1] - 1:14
**process** [22] - 7:9, 7:21, 8:2, 10:17, 15:13, 17:4, 18:10, 18:11, 29:6, 30:5, 34:7, 34:18, 38:6, 39:6, 43:11, 43:19, 44:3, 44:18, 48:6, 48:7, 49:1
**produce** [4] - 14:9, 14:10, 32:7, 32:20
**produced** [13] - 10:11, 28:5, 28:14, 28:15, 28:17, 29:11, 30:10, 30:20, 31:24, 32:22, 33:4, 33:12, 45:15
**producing** [2] - 29:23, 45:6
**Production** [1] - 10:11
**production** [2] - 16:8, 29:9
**PRODUCTS** [1] - 1:6
**progress** [4] - 41:6, 48:21, 49:20, 49:23
**properly** [2] - 10:5, 24:11
**propose** [1] - 16:19
**proposed** [3] - 19:19, 19:20, 21:6
**protection** [2] - 50:20, 51:4
**protective** [4] - 22:4, 22:13, 51:17, 53:14
**provide** [4] - 33:8, 33:16, 37:19, 44:17
**provided** [1] - 18:13
**provides** [1] - 16:13
**providing** [4] - 31:18, 34:4, 34:5, 44:4
**publicly** [1] - 10:19
**pulls** [1] - 50:22
**purely** [1] - 26:22
**pursuant** [1] - 55:8
**pursue** [1] - 48:14
**push** [1] - 41:17
**put** [17] - 7:9, 7:14,

7:21, 8:1, 10:1, 20:22, 21:15, 22:8, 34:18, 35:4, 35:17, 35:18, 36:6, 36:25, 40:7, 48:21, 49:5
**puts** [2] - 50:23, 51:2

## Q

**questionnaires** [1] - 16:1
**questions** [2] - 12:8, 25:18
**queue** [1] - 37:17
**queueing** [1] - 14:4
**quibble** [1] - 17:9
**quickly** [2] - 39:6, 48:24
**QUINN** [2] - 4:8, 4:12
**Quinn** [2] - 4:19, 6:11
**quite** [5] - 18:22, 21:13, 21:15, 25:21, 47:22
**quote/unquote** [1] - 50:25
**quoted** [1] - 21:16

## R

**radio** [1] - 30:18
**RAE** [1] - 2:19
**raise** [4] - 19:7, 20:5, 37:1, 40:1
**raised** [1] - 20:4
**raising** [1] - 43:13
**rapidly** [2] - 11:9, 30:19
**rates** [1] - 52:25
**rather** [5] - 9:23, 11:7, 16:25, 17:9, 26:24
**re** [1] - 5:6
**RE** [1] - 1:5
**reached** [1] - 9:24
**read** [3] - 7:14, 12:2, 12:8
**reading** [1] - 23:25
**real** [1] - 35:19
**really** [8] - 9:18, 13:9, 16:17, 26:2, 35:22, 36:9, 38:10, 47:15
**realm** [1] - 39:15
**REALTIME** [1] - 55:5
**reappointment** [1] - 35:17
**reason** [9] - 8:3, 29:23, 44:9, 49:5, 49:8, 49:13, 50:2, 50:7, 50:12
**reasonable** [4] - 15:17, 15:18, 17:19

**reasons** [4] - 21:15, 49:20, 49:25, 50:5
**receive** [1] - 44:13
**received** [3] - 16:9, 19:11, 32:15
**receiving** [1] - 21:3
**recognize** [1] - 12:3
**recommendation** [6] - 18:21, 23:10, 26:19, 27:13, 28:17, 45:14
**recommendations** [4] - 27:1, 27:2, 27:23, 35:13
**recommended** [1] - 11:3
**record** [12] - 5:8, 10:8, 11:10, 12:13, 13:25, 21:15, 22:19, 23:9, 23:13, 23:22, 36:12, 52:13
**referee** [1] - 24:6
**referral** [1] - 23:12
**refusal** [2] - 30:20, 33:7
**refused** [1] - 30:4
**regard** [2] - 23:2, 23:3
**regrettably** [1] - 19:21
**regulations** [1] - 55:12
**reissue** [1] - 14:3
**related** [1] - 19:20
**relates** [3] - 28:18, 33:5, 33:7
**relating** [3] - 31:19, 32:25, 33:14
**relevant** [1] - 53:3
**relief** [2] - 30:10, 45:15
**religiously** [2] - 11:19, 11:20
**relitigating** [1] - 20:21
**relying** [1] - 10:20
**remaining** [1] - 29:8
**remember** [2] - 39:1, 48:17
**remiss** [1] - 37:1
**remotely** [3] - 15:2, 15:3, 53:21
**removal** [2] - 49:6, 49:8
**remove** [3] - 44:13, 49:3, 49:4
**reorganized** [1] - 35:15
**repeat** [1] - 17:13
**report** [6] - 23:10, 26:19, 27:1, 27:2, 27:13, 27:22
**reported** [3] - 30:7, 44:15, 55:10
**Reporter** [1] - 55:20

**REPORTER** [3] - 1:23, 55:1, 55:6
**REPORTER'S** [1] - 1:14
**represent** [1] - 33:22
**representation** [1] - 24:8
**representatives** [1] - 44:24
**represented** [2] - 32:16, 34:14
**representing** [1] - 32:17
**request** [8] - 19:1, 28:20, 32:18, 32:21, 35:21, 35:22, 49:4, 53:16
**Requests** [1] - 10:10
**require** [1] - 25:16
**required** [3] - 30:14, 43:25, 50:19
**requirement** [2] - 13:24, 14:1
**resolution** [1] - 39:25
**resolved** [7] - 8:21, 9:20, 24:25, 27:20, 33:10, 42:14, 47:10
**respect** [12] - 22:25, 29:9, 29:12, 33:11, 35:14, 40:3, 42:2, 45:21, 47:5, 47:9, 49:24, 51:22
**respectfully** [4] - 11:6, 22:10, 22:18, 44:2
**respond** [1] - 54:5
**responding** [1] - 9:4
**response** [4] - 9:5, 30:17, 31:15, 35:21
**responses** [4] - 14:18, 14:19, 29:20, 31:18
**responsibilities** [1] - 13:9
**responsible** [1] - 32:12
**results** [2] - 47:2, 48:21
**review** [1] - 37:19
**reviewing** [2] - 33:23, 44:11
**RFP** [1] - 14:18
**RFPs** [4] - 10:10, 10:14, 13:2, 13:3
**ripe** [2] - 9:2, 10:5
**rise** [1] - 54:6
**rmcdevitt@ kellerrohrback.com** [1] - 2:11
**road** [1] - 36:11
**ROBERT** [1] - 3:12
**robust** [1] - 11:7

**rock** [1] - 18:23
**rogs** [3] - 10:14, 13:2, 13:3
**Rohrback** [4] - 5:10, 5:13, 6:1, 7:18
**ROHRBACK** [3] - 2:4, 2:8, 2:12
**role** [1] - 22:21
**roll** [1] - 15:7
**ROOM** [1] - 1:24
**Rule** [1] - 7:24
**rule** [1] - 14:2
**ruled** [1] - 23:21
**rules** [1] - 22:12
**Rules** [1] - 15:14
**ruling** [1] - 26:25
**runs** [1] - 17:10
**Ryan** [2] - 5:12, 20:15
**RYAN** [1] - 2:8

## S

**SALES** [1] - 1:6
**SAML-22-03052-JVS** [1] - 1:7
**SAML-22-3052** [1] - 5:6
**Santa** [1] - 4:6
**SANTA** [3] - 1:18, 1:24, 5:1
**satisfactory** [1] - 50:8
**saw** [3] - 9:25, 14:20, 16:21
**sbenson@ bensonlegal.net** [1] - 3:7
**schedule** [14] - 18:14, 24:7, 30:22, 30:24, 33:23, 33:25, 37:19, 38:1, 39:9, 41:21, 43:25, 44:4, 44:5, 46:10
**scheduled** [3] - 13:14, 24:15, 29:17
**schedules** [5] - 33:12, 33:20, 34:5, 34:20, 44:17
**scheduling** [5] - 33:13, 34:24, 40:7, 41:8, 43:20
**scrambling** [2] - 13:21, 14:5
**seal** [1] - 35:22
**searching** [2] - 29:10, 32:19
**season** [1] - 13:1
**seated** [1] - 30:6
**Seattle** [3] - 2:6, 2:10, 2:13
**second** [2] - 9:9, 16:6

**seconds** [1] - 50:24
**Section** [1] - 55:8
**section** [1] - 16:6
**secure** [1] - 31:16
**see** [8] - 8:16, 8:22, 8:25, 15:13, 37:20, 41:10, 47:14, 49:21
**seeing** [2] - 25:25, 53:13
**seek** [3] - 30:10, 36:6, 45:15
**seem** [3] - 32:23, 41:12, 44:10
**segment** [1] - 46:19
**select** [1] - 7:9
**selection** [1] - 8:2
**sell** [2] - 31:21, 32:14
**Selna** [2] - 24:9, 47:20
**SELNA** [1] - 1:3
**send** [1] - 35:16
**senior** [1] - 24:1
**sense** [5] - 7:22, 25:5, 25:22, 38:23, 44:16
**sensible** [2] - 41:8, 46:8
**Seoul** [1] - 31:2
**September** [3] - 12:17, 26:19, 26:20
**seriously** [2] - 13:8, 13:10
**serve** [1] - 17:17
**served** [5] - 13:2, 13:19, 32:9, 42:22, 45:1
**serving** [1] - 14:18
**set** [7] - 20:1, 29:25, 30:4, 37:6, 37:24, 42:10, 45:11
**setting** [1] - 24:7
**sever** [1] - 27:11
**several** [3] - 10:3, 21:25, 33:25
**share** [4] - 8:2, 21:4, 31:25, 43:5
**sharing** [1] - 22:1
**sheet** [2] - 10:17, 13:4
**sheets** [6] - 8:20, 8:21, 8:23, 10:7, 10:25, 12:17
**shirts** [1] - 53:24
**shocking** [1] - 13:15
**short** [5] - 9:1, 20:13, 20:14, 21:7, 26:20
**show** [2] - 9:15, 12:6
**showing** [1] - 39:7
**shuffle** [1] - 50:3
**shuffling** [1] - 38:25
**side** [7] - 11:17, 27:16, 28:1, 36:25, 40:21, 43:12

**sides** [1] - 8:18
**sign** [1] - 27:22
**signed** [1] - 19:17
**silence** [1] - 30:18
**similar** [5] - 11:3, 34:18, 44:18, 49:22, 52:25
**simple** [3] - 34:18, 44:18, 48:6
**simplest** [2] - 33:19, 34:21
**simplify** [1] - 25:3
**simply** [7] - 33:14, 33:16, 34:4, 34:7, 35:7, 35:10, 39:4
**single** [4] - 30:4, 32:18, 32:21, 42:9
**sister** [1] - 32:10
**sit** [4] - 14:12, 17:1, 18:4, 46:21
**situations** [1] - 7:5
**six** [6] - 12:19, 13:20, 13:21, 22:7, 46:17, 46:20
**skipping** [1] - 15:13
**sleeves** [1] - 15:8
**slipped** [1] - 19:22
**smaller** [1] - 38:5
**Smith** [5] - 38:16, 38:18, 38:19, 38:21
**so..** [1] - 49:11
**solutions** [2] - 15:18
**solved** [3] - 41:19, 41:22, 42:12
**someone** [1] - 51:2
**something's** [1] - 21:20
**sometimes** [2] - 23:16, 23:18
**soon** [1] - 15:1
**sooner** [3] - 8:3, 9:23, 11:6
**sorry** [5] - 13:20, 26:20, 40:24, 52:19, 52:21
**sort** [1] - 18:9
**sorts** [1] - 42:10
**sounds** [1] - 27:19
**source** [1] - 9:7
**sources** [1] - 32:2
**South** [5] - 2:20, 3:9, 3:23, 4:9, 4:13
**SOUTHERN** [1] - 1:2
**Spaan** [1] - 55:20
**SPAAN** [3] - 1:23, 55:5, 55:19
**special** [6] - 9:23, 15:20, 22:22, 26:10, 26:15, 26:19
**specific** [2] - 19:2,

47:9
**specifically** [3] - 27:2, 27:3, 27:8
**specificity** [1] - 22:23
**spend** [1] - 41:11
**spent** [2] - 35:19, 47:25
**Sprague** [1] - 24:1
**spreadsheet** [3] - 48:11, 48:13, 48:15
**spreadsheets** [1] - 49:3
**squarely** [1] - 23:12
**squeeze** [2] - 12:11, 12:15
**stand** [3] - 28:12, 41:11, 45:16
**standard** [1] - 50:20
**start** [2] - 13:14, 13:20
**starting** [1] - 18:16
**starts** [1] - 50:23
**state** [2] - 5:7, 29:16
**STATE** [1] - 55:4
**State** [1] - 41:22
**statement** [4] - 19:19, 19:20, 21:6, 53:4
**statements** [2] - 32:19, 36:7
**States** [3] - 55:6, 55:8, 55:13
**STATES** [1] - 1:1
**status** [8] - 11:18, 19:21, 20:17, 26:7, 29:7, 40:1, 43:7, 43:10
**stayed** [4] - 34:15, 34:17, 37:17, 49:2
**stenographically** [1] - 55:10
**stevemadison@ quinnemanuel.com** [1] - 4:15
**Steven** [1] - 6:11
**STEVEN** [1] - 4:12
**still** [7] - 7:5, 14:8, 24:19, 27:7, 41:20, 41:21, 42:24
**stipulated** [1] - 51:15
**stipulation** [6] - 19:16, 20:25, 21:14, 23:3, 30:14, 31:9
**stolen** [1] - 34:1
**straightforward** [1] - 48:6
**stray** [1] - 51:14
**Street** [8] - 2:16, 2:20, 3:9, 3:13, 3:19, 3:23, 4:9, 4:13
**STREET** [1] - 1:24
**structural** [1] - 14:7

**structure** [1] - 17:3
**stuff** [2] - 10:24, 13:4
**STUTMAN** [1] - 3:12
**subject** [3] - 18:24, 23:7, 51:16
**submit** [1] - 35:25
**submitted** [2] - 34:23, 35:13
**subpoena** [2] - 32:9, 32:15
**subrogation** [27] - 5:16, 5:19, 5:22, 6:4, 6:7, 6:9, 6:18, 6:21, 19:3, 19:4, 20:10, 26:15, 27:16, 28:13, 29:18, 31:5, 32:1, 33:15, 34:11, 35:13, 40:11, 40:16, 40:22, 44:22, 46:7, 52:22, 53:1
**Subrogation** [1] - 43:21
**substance** [1] - 26:22
**substantial** [1] - 50:20
**substitute** [2] - 38:24, 43:11
**subtractions** [1] - 34:20
**sudden** [1] - 39:17
**suddenly** [1] - 34:13
**suggest** [2] - 30:9, 33:18
**suggested** [5] - 21:5, 28:3, 29:14, 35:7, 50:12
**suggesting** [1] - 34:3
**suggestions** [1] - 34:21
**Suite** [9] - 2:5, 2:9, 2:13, 2:16, 2:20, 3:5, 3:9, 3:13, 3:23
**suits** [1] - 27:15
**SULLIVAN** [2] - 4:8, 4:12
**Sullivan** [1] - 4:19
**superseding** [1] - 50:25
**surprised** [1] - 8:25
**Susan** [2] - 5:18, 48:24
**SUSAN** [1] - 3:4
**SUSOLIK** [10] - 4:4, 6:16, 25:11, 26:14, 26:18, 27:8, 27:21, 27:25, 28:7, 28:9
**Susolik** [5] - 6:17, 25:10, 26:13, 42:22, 51:25
**suspect** [4] - 16:25, 41:23, 43:3, 53:18

**switch** [1] - 50:23
**swoop** [1] - 12:25

## T

**T-shirts** [1] - 53:24
**tack** [1] - 35:10
**Technical** [1] - 32:11
**Ted** [1] - 34:17
**ten** [14] - 27:3, 27:6, 27:9, 27:11, 27:14, 27:17, 27:18, 28:14, 28:15, 28:19, 37:14, 41:22, 41:23
**term** [1] - 49:2
**terms** [3] - 10:15, 27:13, 29:1
**testify** [2] - 13:10, 16:25
**testifying** [1] - 52:25
**testing** [1] - 32:13
**THE** [114] - 5:5, 5:11, 5:14, 5:17, 5:20, 5:24, 6:5, 6:10, 6:19, 6:23, 8:10, 8:12, 8:21, 9:11, 9:17, 9:22, 10:1, 10:9, 11:17, 11:22, 12:1, 15:9, 15:12, 16:22, 17:3, 17:16, 18:1, 18:4, 18:20, 19:6, 19:9, 19:13, 20:7, 20:10, 20:14, 20:22, 21:10, 21:13, 21:19, 22:2, 22:14, 22:17, 22:21, 22:25, 23:14, 23:17, 24:10, 24:24, 25:10, 25:13, 25:20, 26:3, 26:9, 26:12, 26:17, 27:5, 27:15, 27:18, 27:24, 28:2, 28:8, 28:10, 28:21, 28:23, 28:25, 29:2, 30:6, 34:10, 34:13, 35:11, 35:14, 36:2, 36:17, 36:21, 36:24, 38:17, 39:2, 39:6, 39:19, 40:23, 40:25, 43:4, 43:15, 45:18, 46:15, 47:1, 47:8, 48:4, 48:8, 48:22, 49:7, 49:10, 49:12, 49:16, 50:10, 50:12, 51:7, 51:9, 51:13, 51:19, 51:21, 52:3, 52:9, 52:15, 52:20, 53:6, 53:11, 53:18, 53:23, 54:2, 54:6
**THEFT** [1] - 1:6

**theft** [6] - 10:23, 33:22, 50:16, 50:20, 51:4, 52:25
**Theft** [1] - 5:6
**themselves** [1] - 30:5
**theory** [1] - 37:12
**they've** [5] - 37:11, 39:15, 42:17, 42:18, 42:19
**Third** [2] - 2:13, 3:9
**thousand** [2] - 44:7, 47:17
**thousands** [3] - 42:18
**three** [4] - 23:4, 30:15, 39:9, 52:4
**thrilled** [1] - 44:20
**throttle** [1] - 11:5
**ticket** [1] - 14:13
**tight** [1] - 8:18
**Tim** [1] - 6:8
**timeline** [4] - 9:15, 11:12, 11:14, 12:7
**timing** [3] - 7:25, 10:15, 25:18
**TIMOTHY** [1] - 3:12
**Title** [1] - 55:8
**today** [11] - 6:25, 8:8, 9:19, 15:6, 17:2, 17:13, 25:14, 30:25, 31:5, 42:13, 43:5
**together** [2] - 45:8, 52:5
**took** [1] - 31:20
**topic** [1] - 39:25
**topics** [15] - 12:20, 13:17, 13:19, 14:3, 14:6, 14:7, 14:8, 14:20, 15:2, 17:10, 17:17, 24:19, 37:5, 42:9
**town** [1] - 53:23
**Toyota** [2] - 11:4, 36:8
**track** [16] - 19:3, 19:5, 21:4, 25:12, 25:14, 26:15, 36:12, 40:6, 40:11, 40:16, 40:18, 40:22, 45:23, 46:7, 46:10
**tracks** [3] - 40:23, 41:8, 45:2
**Transcript** [1] - 1:5
**transcript** [2] - 55:9, 55:11
**TRANSCRIPT** [1] - 1:14
**traveling** [1] - 15:6
**treating** [1] - 11:1
**trial** [3] - 8:14, 19:18, 52:6
**true** [2] - 47:7, 55:9

truly [2] - 12:10, 17:8
trust [1] - 12:7
try [4] - 21:3, 37:10, 39:10, 42:14
trying [12] - 13:10, 13:11, 13:12, 16:1, 16:15, 16:20, 17:19, 17:24, 24:4, 29:13, 50:3, 51:5
TUESDAY [2] - 1:16, 5:1
turn [2] - 18:23, 20:10
turns [2] - 7:25, 38:19
tweaked [1] - 7:10
two [16] - 7:1, 14:19, 17:16, 19:7, 20:5, 22:5, 23:4, 23:21, 26:21, 30:15, 31:1, 31:2, 39:9, 47:1, 52:4, 52:10
two-page [1] - 26:21

**U**

U.S [5] - 1:3, 32:4, 32:13, 32:14, 33:7
under [10] - 8:20, 14:1, 18:10, 18:17, 22:11, 23:3, 23:11, 30:14, 44:17, 51:3
underline [1] - 14:10
underlying [2] - 33:3, 38:2
underwriting [1] - 28:16
unilaterally [1] - 45:13
unintended [1] - 11:4
United [3] - 55:6, 55:8, 55:13
UNITED [1] - 1:1
unless [1] - 52:16
unpunished [1] - 17:9
unwilling [1] - 41:16
up [17] - 9:16, 15:7, 15:17, 24:4, 25:1, 25:14, 35:1, 36:20, 39:25, 41:2, 41:4, 41:11, 42:10, 43:12, 44:7, 45:20
update [1] - 34:4
updated [5] - 33:23, 33:25, 34:8, 44:4, 44:17
updating [6] - 34:19, 44:3, 48:6, 48:9, 48:10, 48:13
UQUHART [1] - 4:12
Uquhart [1] - 4:19
urgency [1] - 24:15
URQUHART [1] - 4:8

USB [1] - 50:23
useful [2] - 7:3, 37:6
usual [1] - 15:21

**V**

vacuum [1] - 12:4
Vargas [1] - 52:13
various [5] - 5:22, 20:4, 37:5, 41:15, 53:25
Vehicle [1] - 5:6
VEHICLE [1] - 1:5
vehicles [4] - 28:19, 31:19, 34:1, 50:19
viable [1] - 7:9
view [1] - 50:17
viewed [2] - 20:16, 21:2
views [1] - 25:21
virtually [1] - 18:21
vis-à-vis [1] - 22:21
visit [1] - 52:6

**W**

WA [1] - 2:13
wait [3] - 25:13, 36:13, 36:24
waited [3] - 12:22, 13:3, 13:5
waiting [2] - 15:25
walk [1] - 42:8
wants [2] - 23:4, 37:1
Washington [2] - 2:6, 2:10
Wayne [1] - 19:15
week [6] - 9:3, 21:10, 24:12, 30:16, 36:24, 46:19
weeks [5] - 12:19, 30:16, 39:9, 46:17, 46:20
WEST [1] - 1:24
whatsoever [1] - 30:17
whole [3] - 10:22, 37:9, 40:19
wholesale [1] - 18:22
WILLIAM [1] - 3:8
willing [4] - 15:7, 41:9, 42:6, 42:20
wisely [1] - 18:22
witness [1] - 13:13
witnesses [14] - 13:16, 14:9, 14:10, 14:12, 17:14, 17:19, 29:19, 29:23, 30:1, 30:10, 30:15, 30:20, 30:23, 45:15

women [1] - 13:9
works [2] - 51:24, 52:16
world [1] - 44:16
writ [1] - 21:19
write [1] - 10:20
written [3] - 13:1, 16:7, 27:25

**Y**

year [3] - 29:4, 29:18, 35:15
year.. [1] - 46:11
yesterday [1] - 14:22

**Z**

Zoom [2] - 44:24, 53:21