# EXHIBIT B

1          **UNITED STATES DISTRICT COURT**

2      **CENTRAL DISTRICT OF CALIFORNIA - SOUTHERN DIVISION**

3        **HONORABLE JAMES V. SELNA, U.S. DISTRICT JUDGE**

4

5

   IN RE:  KIA HYUNDAI VEHICLE THEFT    )   **Certified Transcript**
6  MARKETING, SALES PRACTICES, AND      )
   PRODUCTS LIABILITY LITIGATION.       )   Case No.
7  _____     )   SAML-22-03052-JVS

8

9

10

11

12

13
                  REPORTER'S TRANSCRIPT OF PROCEEDINGS
14                        STATUS CONFERENCE
                   THURSDAY, JANUARY 23, 2025
15                          3:03 P.M.
                     SANTA ANA, CALIFORNIA
16

17

18

19

20

21
   _____
22
            **DEBBIE HINO-SPAAN, CSR 7953, CRR, RMR, CRC**
23            FEDERAL OFFICIAL COURT REPORTER
              411 WEST 4TH STREET, ROOM 1-053
24                 SANTA ANA, CA 92701
                 dhinospaan@yahoo.com
25

**UNITED STATES DISTRICT COURT**

```
 1                    APPEARANCES OF COUNSEL:

 2

 3     FOR PLAINTIFFS:

 4             KELLER ROHRBACK LLP
               BY:  GRETCHEN F. CAPPIO, ATTORNEY AT LAW
 5             1201 3rd Avenue
               Suite 3400
 6             Seattle, Washington 98101
               206-623-1900
 7             gcappio@kellerrohrback.com

 8             BENSON LEGAL APC
               BY:  SUSAN M. BENSON, ATTORNEY AT LAW
 9             8550 Balboa Boulevard
               Suite 290
10             Northridge, California 91325
               818-708-1250
11             sbenson@bensonlegal.net

12             COZEN O'CONNOR
               BY:  ELLIOTT R. FELDMAN, ESQ.
13             1650 Market Street
               Suite 2800
14             Philadelphia, Pennsylvania 19103
               215-665-2071
15             efeldman@cozen.com

16             COZEN O'CONNOR
               BY:  MEGAN RAE PEITZKE, ATTORNEY AT LAW
17             601 South Figueroa Street
               Suite 3700
18             Los Angeles, California 90017
               213-892-7933
19             mpeitzke@cozen.com

20             LAW OFFICE OF ROBERT STUTMAN
               BY:  W. DIANE WAYLAND, ATTORNEY AT LAW
21             391 North Main Street
               Suite 108
22             Corona, California 92879
               951-387-4700
23             waylandd@stutmanlaw.com

24

25
```

**UNITED STATES DISTRICT COURT**

```
 1                    APPEARANCES OF COUNSEL
                          (Continued:)
 2
      FOR PLAINTIFFS:
 3
              KELLER ROHRBACK LLP
 4            BY:  RYAN P. McDEVITT, ESQ.
              1201 3rd Avenue
 5            Suite 3400
              Seattle, Washington 98101
 6            206-442-1563
              rmcdevitt@kellerrohrback.com
 7

 8    FOR DEFENDANTS:

 9            JENNER & BLOCK LLP
              BY:  PETER J. BRENNAN, ESQ.
10            353 North Clark Street
              Chicago, Illinois 60654
11            312-222-9350
              pbrennan@jenner.com
12
              JENNER & BLOCK LLP
13            BY:  JENNA L. CONWISAR, ATTORNEY AT LAW
              515 South Flower Street
14            Suite 3300
              Los Angeles, California 90071
15            213-239-5100
              JConwisar@jenner.com
16
              CALLAHAN & BLAINE APLC
17            BY:  JOHN D. VAN ACKEREN, ESQ.
              3 Hutton Centre Drive
18            9th Floor
              Santa Ana, California 92707
19            714-241-4444
              jvanackeren@callahan-law.com
20
              QUINN EMANUEL UQUHART & SULLIVAN LLP
21            BY:  STEVEN G. MADISON, ESQ.
              865 South Figueroa Street
22            10th Floor
              Los Angeles, California 90017-2543
23            213-443-3150
              stevemadison@quinnemanuel.com
24

25
```

**UNITED STATES DISTRICT COURT**

1          **APPEARANCES OF COUNSEL**
                      **(Continued:)**

2

3    **FOR DEFENDANTS:**

4          CALLAHAN & BLAINE APLC
           BY:  EDWARD SUSOLIK, ESQ.
5          3 Hutton Centre Drive
           9th Floor
6          Santa Ana, California 92707
           714-241-4444
7          es@callahan-law.com

8

9    **ALSO PRESENT:**

10         HANS HERB, Berger Kahn

11         ZACHARY GUSSIN, Keller Rohrback, LLP

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

| | |
|---|---|
| 1 | **SANTA ANA, CALIFORNIA; THURSDAY, JANUARY 23, 2025** |
| 2 | **3:03 P.M.** |
| 3 | **- - -** |
| 4 | |
| 03:03PM 5 | THE COURTROOM DEPUTY:  Please be seated and come to |
| 6 | order. |
| 7 | Calling Item 2, SAML-22-3052, In Re:  Kia Hyundai |
| 8 | Vehicle Theft Litigation. |
| 9 | Counsel, please state your appearances for the |
| 03:03PM 10 | record. |
| 11 | MR. FELDMAN:  Elliott Feldman of Cozen O'Connor on |
| 12 | behalf of the subrogation plaintiffs.  Good afternoon, |
| 13 | Your Honor. |
| 14 | THE COURT:  Good afternoon. |
| 03:03PM 15 | MS. BENSON:  Good afternoon.  Susan Benson on behalf |
| 16 | of the subrogation plaintiffs. |
| 17 | THE COURT:  Good afternoon. |
| 18 | MS. CAPPIO:  Good afternoon, Your Honor.  Gretchen |
| 19 | Cappio of Keller Rohrback for the governmental entity |
| 03:03PM 20 | plaintiffs. |
| 21 | THE COURT:  Good afternoon. |
| 22 | MR. McDEVITT:  Ryan McDevitt of Keller Rohrback for |
| 23 | the government entity plaintiffs. |
| 24 | THE COURT:  Good afternoon. |
| 03:03PM 25 | MR. GUSSIN:  My name is Zachary Gussin on behalf of |

```
 1   the governmental entity plaintiffs, also from Keller Rohrback.
 2   Good afternoon.
 3              THE COURT:  Good afternoon.
 4              MS. WAYLAND:  Good afternoon, Your Honor.  Diane
 5   Wayland on behalf of subrogation plaintiffs.
 6              THE COURT:  Good afternoon.
 7              MS. PEITZKE:  Good afternoon.  Megan Peitzke, Cozen
 8   O'Connor, also on behalf of various subrogation plaintiffs.
 9              THE COURT:  Good afternoon.
10              MR. HERB:  Good afternoon, Your Honor.  I'm Hans
11   Herb from Berger Kahn on behalf of subrogation plaintiffs.
12              THE COURT:  Good afternoon.
13              MR. MADISON:  Good afternoon, Your Honor.  Steven G.
14   Madison of Quinn Emanuel on behalf of the GE defendants,
15   Hyundai Motor America and Kia America.  Good afternoon.
16              THE COURT:  Good afternoon.
17              MR. BRENNAN:  Good afternoon, Your Honor.  Peter
18   Brennan from Jenner & Block on behalf of the subrogation
19   defendants, Hyundai Motor America and Kia America.
20              THE COURT:  Good afternoon.
21              MR. SUSOLIK:  Good afternoon, Your Honor.  Edward
22   Susolik of Callahan & Blaine on behalf of defendants.
23              THE COURT:  Good Afternoon.
24              MR. VAN ACKEREN:  Good afternoon, Your Honor.  John
25   Van Ackeren of Callahan & Blaine on behalf of the defendants on
```

        1    the subrogation track.

        2              THE COURT:  Good afternoon.

        3              MS. CONSISAR:  Good afternoon.  Jenna Conwisar from

        4    Jenner & Block on behalf of defendants on the subrogation

03:04PM  5    track.

        6              THE COURT:  Good afternoon and welcome.  Thank you

        7    for the numerous pleadings that you've put in in advance of

        8    this hearing.

        9              Could I make one suggestion?  It would be helpful to

03:04PM 10    me if -- for each track if there's a proposed agenda that would

       11    be a joint agenda.

       12              Similarly, if you could put together your various

       13    position papers on issues in a single document.  It helps me to

       14    see right there in one place what your expected positions are.

03:05PM 15              And I think that process would be helpful to you, to

       16    have an immediate appreciation of what each side wants to talk

       17    about and views on each issue.

       18              That said, why don't we begin with the government

       19    entity track.  You folks have put in a joint agenda, and why

03:05PM 20    don't we address the status of discovery on the Phase 1 items.

       21              MS. CAPPIO:  Good afternoon, Your Honor.  Gretchen

       22    Cappio of Keller Rohrback for the Government entity plaintiffs.

       23              First of all, my colleagues' and my heart go out to

       24    you, our friends on the other side, and others in the courtroom

03:06PM 25    and beyond who are affected by these terrible fires in your

communities.

We submitted a joint agenda very early on Friday morning. Your Honor probably saw it. And as Your Honor might have guessed from the brevity of the agenda and the late hour or early hour it was filed, we have some work to do to reach consensus on a number of the discovery issues. And I really like your idea, Your Honor, it is well received, to have kind of a GE plaintiffs', GE defendants' stance on these issues, and we'll endeavor to do that going forward, speaking for the plaintiffs.

That difference is reflected in and animated by the amount of discovery produced on each side of the V. It's a dramatic difference. Going through those on the agenda one by one, I'll highlight the lack of symmetry and reciprocity.

It's also highlighted by the fact that we take Your Honor's deadlines very seriously. My dad would have said, "like a heart attack." We take them very seriously.

THE COURT: Don't say that to people of my age.

MS. CAPPIO: Understood, Your Honor. I say it in his memory as well.

The deadlines were bolded and shortened a little in Your Honor's order at Docket 536. Those are the deadlines I'm talking about. And maybe it's just me, but when a federal judge bolds and shortens deadlines from those the parties proposed, I listen up. And it's remarkable, defendants refused

```
 1  to give us any dates for their depositions within the schedule
 2  for Phase 1 discovery set by the Court.  And they did not
 3  produce a single document in response to our request until
 4  72 minutes before discovery was set to close -- that's in this
 5  time zone -- late Friday night.
 6         In total, that production amounted to 2,800 pages,
 7  about 1 percent of what governmental entities produced, as
 8  Your Honor probably saw in my declaration of yesterday.
 9         THE COURT:  I'm not sure that that's an appropriate
10  barometer, but whatever.
11         MS. CAPPIO:  On a rolling basis, the governmental
12  entity plaintiffs have produced over 300,000 pages and about
13  5,000 documents in Phase 1, again, compared to defendants, who
14  made a single production less than two hours before discovery
15  closed.
16         Every single governmental entity plaintiff, besides
17  Newark, which stipulated to a different schedule -- their
18  motion to dismiss is still pending -- has been deposed.  That
19  is no small feat.  Identifying and preparing appropriate
20  designees, especially over a two-month period that included
21  almost all of the federal holidays in that period, Thanksgiving
22  to MLK Day.
23         More than 30 days of testimony were provided with 74
24  designees.  If I look tired, that is why, Your Honor, and my
25  team.  I really thank my team as well.
```

                    Defendants, meanwhile, have dragged their feet every

         step of the way for Phase 1 and are now seeking an extension

         for all Phase 1 discovery, they have informed us.  Defendants

         should not be rewarded with an extension due to their own

03:09PM  shortcomings and stall tactics.

                    The only issues that remain ripe for Phase 1

         discovery relate to these three things, and we're happy to put

         these in writing for Your Honor:  The depositions of

         defendants' own designees; GE plaintiffs' motions to compel on

03:10PM  the defendant fact sheet and written discovery; and the two

         R and Rs issued by the special master, and those pertain to a

         protective order regarding foreign depositions and the

         plaintiff fact sheets.

                    We have sent defendants a draft stipulation to

03:10PM  accommodate an extension for these narrow categories, and it's

         our position that that's it.  We recognize the significance of

         the Court's previously ordered deadlines.  The first of these

         cases was filed two years ago, in January of 2023.  They're

         about a public health and safety concern.  And we see no reason

03:10PM  to further delay the start of Phase 2 discovery.  It's time to

         get the bellwether show on the road.

                    As Your Honor knows, the parties submitted Phase 2

         proposals back in December, and we believe it's time to

         implement our proposal now.  And if Your Honor has any

03:11PM  questions about discrete issues that I've raised, I'm happy to

         1    address those.  I'm also happy to address anything else in the

         2    agenda Your Honor would like.

         3                THE COURT:  I'd like to hear defendants' response on

         4    the discovery issues.

03:11PM  5                MS. CAPPIO:  Thank you, Your Honor.

         6                THE COURT:  Mr. Madison.

         7                MR. MADISON:  Yes.

         8                THE COURT:  Why the delay in giving depositions?

         9                MR. MADISON:  Well, the dates that have been set are

03:11PM 10    for next month for HMA and KA, the two defendants.  The delay

        11    was really occasioned by the GE plaintiffs who didn't notice

        12    the defendants' depositions until I think the very last week

        13    when that was possible.  Their efforts were instead directed at

        14    trying to depose the parent companies pursuant to the

03:11PM 15    stipulation that had been entered into as part of the dismissal

        16    of the parent companies.

        17                But I want to go back a step, if I could,

        18    Your Honor, because there are three phases of Phase 1

        19    discovery, three components, if you will:  The fact sheets,

03:12PM 20    then brief written discovery that Your Honor permitted, and

        21    then the depositions that have been described.

        22                THE COURT:  Have you booked time to --

        23                MR. MADISON:  Pardon, Your Honor?

        24                THE COURT:  Have you booked time with Judge Andler

03:12PM 25    to get to the bottom of the --

1           MR. MADISON:  Yes.  That's what -- exactly what I'm

2     going to address now.  And as I --

3           THE COURT:  How quickly is that going to get

4     resolved, at least in front of her?

03:12PM 5         MR. MADISON:  When is it going to get resolved, Your

6     Honor?

7           THE COURT:  Yeah.

8           MR. MADISON:  I'm sorry --

9           THE COURT:  Yes.  When?

03:12PM 10        MR. MADISON:  So we just received on January 10 a

11    sweeping order on the first component of the Phase 1 discovery

12    granting our motion to compel across the board.  And I'm a bit

13    surprised, and I want to be measured, because I understand that

14    the special master is the place that we should address the

03:13PM 15    merits of discovery.

16          THE COURT:  Right.

17          MR. MADISON:  But Counsel opened the door.  So I

18    want to answer her questions.

19          For all the 74 designees that they put up, we don't

03:13PM 20    have a single theft of a Hyundai or Kia, as described in the

21    consolidated Complaint, that any plaintiff has identified for

22    us.  They've taken the position that they don't have to

23    identify which thefts are at issue and which related crimes are

24    at issue.

03:13PM 25          You'll recall that the claim here is that the thefts

         1    of the so-called susceptible or subject vehicles created a

         2    public nuisance, and that liability exists not just for those

         3    thefts or related to those thefts, but also certain related

         4    crimes that were alleged to have occurred.  And we -- I've

03:13PM  5    taken most of those 74 designee depos myself that I can

         6    represent to Your Honor that the data exists.  The cities have

         7    it.  They've now been ordered by Judge Andler to produce it,

         8    and they still haven't done it.

         9              Now, to be fair, this order came in -- this report

03:14PM 10    and recommendation came in on January 10.  We immediately

        11    lodged it with Your Honor under the appointment order, and

        12    plaintiffs' counsel has 14 days to lodge an objection with

        13    Your Honor.

        14              They haven't informed us whether or not they intend

03:14PM 15    to object, but the appointment order provides, if they don't

        16    object, then, obviously, subject to Your Honor's approval, the

        17    report shall become an order, and we'll then expect to get not

        18    just revised fact sheets, which was the first part, but also

        19    supplemental responses to our written discovery, and then, if

03:14PM 20    necessary, brief sessions of the deponents, or at least some of

        21    them, so that then they can speak to the issues in the case, as

        22    Judge Andler has now ordered.

        23              And Your Honor had previously indicated that with

        24    regard to bellwethers, you would await that decision until the

03:15PM 25    conclusion of Phase 1 --

1          THE COURT:  Right.

2          MR. MADISON:  -- of discovery.  And we believe that

3   continues to be an appropriate approach.

4          We're at a disadvantage right now because until the

03:15PM 5   plaintiffs give us the thefts and related crimes that are at

6   issue in each city, we can't advise Your Honor about what we

7   think would be appropriate if Your Honor wants to choose

8   bellwethers.

9          And I would hope that's not a tactical judgment on

03:15PM 10  the plaintiffs' part, but that is the state of affairs.  And we

11  immediately lodged Judge Andler's order -- report and

12  recommendation, rather, with Your Honor.  And again, we'll find

13  out, I guess, tomorrow at close of business whether or not the

14  plaintiffs are objecting or they're going to comply and provide

03:16PM 15  the information.

16         And I want to note, Your Honor, that Judge Andler,

17  she's obviously very thorough, and she goes through in her

18  report how there's nothing new here.  I mean, Counsel talks

19  about two years in on the litigation.  Judge Andler actually

03:16PM 20  cites the Complaints, Your Honor's case management order from

21  last April, her own prior orders and guidance on discovery

22  disputes that this was no mystery that what we all need to have

23  is the thefts of the Hyundais and Kias without immobilizers in

24  each city and then the related crimes that they allege we have

03:16PM 25  liability for.

1            So I would hope when we come back at the next status

2       conference, which I understand will be March 6th, Your Honor,

3       subject, again, to Your Honor's approval of that date, I think

4       we've all agreed, that we'll be prepared to roll up our sleeves

03:16PM   5       and talk about that.  But we just can't do it unless we have

6       the discovery that Your Honor ordered.

7            In terms of the -- I do want to make sure I've

8       responded fully to Your Honor's question about the companies'

9       depos.  A lot of time and energy and resources, frankly, was

03:17PM  10       attributed to the parent company depositions.  And suffice it

11       to say that the GE plaintiffs have now withdrawn their attempt

12       to take those depositions in Phase 1, and we're going to do

13       those as part of Phase 2, which we believed all along was the

14       correct course.

03:17PM  15            There are still two open issues with regard to

16       those, and those are contained in a report and recommendation

17       from Judge Andler that we lodged with Your Honor I believe on

18       January 10.  And here again, tomorrow, I believe the other side

19       will have an opportunity to state their position on those

03:18PM  20       objections to the protective order, and then we look forward to

21       receiving Your Honor's guidance in connection with that report

22       and recommendation.

23            But we do have dates for the defendant company

24       depositions, and we'll get those done as well.

03:18PM  25            And in terms of the cutoff, the disagreement --

```
 1  really the only disagreement is -- and I think reading
 2  Judge Andler's report and recommendation may provide insight as
 3  to why, but the plaintiffs' view is, "Oh, the cutoff came and
 4  went.  You're out of court.  You can't continue to pursue the
 5  discovery that you already had propounded.  You can't enforce
 6  Judge Andler's procedures around teeing up the discovery
 7  disputes with regard to the written discovery and the
 8  depositions."
 9          Obviously, we disagree and we'll take that up with
10  Judge Andler.  We now have a status conference mid-next week
11  with her, and we expect to get all the other issues resolved
12  with her, again, by the time we come back in March.
13          So unless Your Honor has any more questions of me --
14          THE COURT:  Do you want to address your objections
15  to the order -- with regard to the protective order?
16          MR. MADISON:  Yes, Your Honor.
17          So there were three issues that we moved on with
18  regard to the parent company depositions.  The first was this
19  issue of the scope and timing, and that's been resolved now.
20          THE COURT:  Right.
21          MR. MADISON:  Judge Andler agreed with us that there
22  should only be one deposition of each parent under the
23  stipulation, and the plaintiffs, to their credit, conceded that
24  issue.  And so that's really the underpinning for why we moved
25  it to Phase 2 now, where, again, we always thought it belonged
```

1    there.

2           The second issue is the subrogation plaintiffs'

3    counsel insists on participating in the deposition.  And

4    Judge Andler agreed, I think adhering to Your Honor's many

03:20PM 5    admonitions about coordination of discovery, that they should

6    be allowed to participate.

7           We, and our clients, feel strongly that if they're

8    allowed to observe the testimony, receive the transcript,

9    receive the exhibits, that's fine.  But they should not be

03:20PM 10   permitted to examine these foreign companies because, unlike

11   the GE plaintiffs, they chose to litigate personal jurisdiction

12   and came out on the losing end.  That's now up on appeal.

13   We've asked them, "If you were allowed to examine the parents

14   at this session, would you agree to not seek a duplicative

03:20PM 15   deposition later?"  They rejected that.

16          So they really want to have their cake and eat it

17   too.  They want to have a full place at the deposition now, ask

18   questions, even though they didn't sign the stipulation that

19   permitted it, and then have another bite at the apple later.

03:21PM 20   And our clients are not agreeable to that, Your Honor.

21          THE COURT:  Well, my reaction is one deposition of

22   the parents.  They're at the table with the ability to examine.

23          MR. MADISON:  And examine the witness?

24          THE COURT:  Right.

03:21PM 25          MR. MADISON:  If you'll put that in an order,

```
 1   Your Honor, we will adhere to that order.
 2                THE COURT:  Well, draft what you want.
 3                MR. MADISON:  We will.  We'll submit an order on
 4   that, Your Honor.
 5                THE COURT:  Okay.
 6                MR. MADISON:  And then --
 7                THE COURT:  Well, I want to hear from those folks
 8   first --
 9                MR. MADISON:  Yes, of course.
10                THE COURT:  -- but, I mean, that's my reaction.
11                MR. MADISON:  Yes, Your Honor.  We appreciate that.
12                And again, I think you can understand our clients'
13   perspective.  You know, foreign discovery is no small thing --
14                THE COURT:  Right.
15                MR. MADISON:  -- and we entered into a limited
16   stipulation that provides limited jurisdiction, and the
17   subrogation plaintiffs said, "Nope, not interested.  We want to
18   litigate."  And so it goes down hard for us that they can have
19   their cake and eat it too.
20                But as I said --
21                THE COURT:  You can only eat it once.
22                MR. MADISON:  If we know that it's only once, then,
23   you know, we'll hear what they have to say, but --
24                THE COURT:  Okay.
25                MR. MADISON:  -- I hear Your Honor.
```

03:21PM (line 5)
03:21PM (line 10)
03:21PM (line 15)
03:22PM (line 20)
03:22PM (line 25)

```
 1              The third issue was confounded for me personally
 2    because I've been in a number of cases where there are parallel
 3    state and federal matters pending.  And so here, we've got 28
 4    plaintiffs before Your Honor in the GE track, and we have one
03:22PM  5    in state court, San Diego.  And we have insisted that San Diego
 6    participate in the parent company deposition too.  That was our
 7    understanding when we entered into the stipulation.  There's
 8    language in the stipulation that supports that.
 9              And I think that may have -- I would hope would have
03:22PM 10    resolved itself, given that it's now going to be part of
11    Phase 2.  In state court, we have a demurrer hearing tomorrow
12    morning down in San Diego, and so we may have some more clarity
13    or direction from the state court there.  But that's the Keller
14    firm.  Same counsel.  And, again, our thing is we should take
03:23PM 15    these depositions once and coordinate and come back to
16    Your Honor having done that.  And they were not agreeable to
17    that.  So that's the other thing that we objected to.
18              THE COURT:  I'm not sure I have the power to compel.
19    I probably have the power to compel you to make an invitation.
03:23PM 20    But if those state litigants are not before me, I don't see how
21    I can tell them what they should or should not do.
22              I mean, my experience, particularly in Toyota, there
23    was a very cooperative relationship between myself, the JPML
24    plaintiffs in that case in Los Angeles, and several others
03:23PM 25    around the country, and people sought that out.  But I can't --
```

```
 1   I can't force that cooperation with state litigants.
 2              MR. MADISON:  Well, I would say, Your Honor,
 3   respectfully, that you can in this case.  You can tell the
 4   plaintiffs' counsel you expect the depositions to be taken
 5   once, as you have many times.  And here, we have a stipulation
 6   permitting for some pretty unusual circumstances for foreign
 7   depositions.  So the same lawyers, it's the same issues, and we
 8   struggle with why we can't coordinate around that --
 9              THE COURT:  Well, we'll ask Mr. Feldman and his
10   colleagues.
11              MR. MADISON:  So, I mean, that's our position on it,
12   Your Honor.
13              THE COURT:  Okay.
14              MR. MADISON:  Again, happy to answer any more
15   questions after counsel.
16              THE COURT:  Thank you.
17              MR. MADISON:  Thank you very much.
18              MS. CAPPIO:  Your Honor, may I just be heard on a
19   couple issues that came up?
20              THE COURT:  Sure.  And then I'd like to hear from
21   Mr. Feldman or one of his colleagues.
22              MS. CAPPIO:  I'll be brief, Your Honor, but I just
23   have to correct the record on the defendant depositions.  I'm
24   just going to chalk it up to a lapse of memory or something.
25   We served those back in November -- November -- and noted them
```

1    for January.  So I don't know what's going on -- early January,

2    in fact -- accusing us of delaying.  That is absolutely false.

3            The other issue about other crimes, related crimes,

4    I just want to make a couple comments.  There have been hours

03:25PM 5    of testimony -- I have sat through a lot of it, a lot of

6    counsel in this room have sat through a lot of it -- about

7    theft data.  Millions of lines of theft data have been

8    produced.

9            But I want to acknowledge that every governmental

03:25PM 10    entity keeps records in a different way.  So I'd like to

11    acknowledge what the facts are on this.  And also that, per the

12    R and R, identifying discrete instances of thefts of related

13    crimes is outside the scope of Phase 1.  That's the December

14    R and R.

03:26PM 15            Defendants asked for all documents related to,

16    "related crimes," and a term they define to mean "any violation

17    or offense involving a stolen subject vehicle."

18            As we have explained, it's difficult to identify

19    those, okay?  And here's why.  I just want to be really clear

03:26PM 20    on the record.  Some police departments have record management

21    systems that link two crimes committed under the same incident

22    number -- makes sense -- but the make, model, and the involved

23    car may not be readily available.  In most cases, it would

24    require manual review of underlying police reports, witness

03:26PM 25    statements, surveillance footage, forensic analysis, and

detective notes to see if a stolen Kia or Hyundai was involved.
It's not practical or necessary at this early stage in the
litigation.

When we get to the bellwether plaintiffs, we can all
roll up our sleeves and look at that data.  That's the point.

Instead, for the vast majority of the plaintiffs, we
have produced data about crimes charged under the same incident
or complaint number as a theft or attempted theft.  We have
done our best.  We're not hiding the ball.  That's what we
believe Judge Andler ordered in her most recent R and R when
she referenced "crimes related to one another using a common
incident number and/or specific data field in their system."

And that's the R and R at page 7.

I just -- the thought that we have somehow been
slow, been lazy, been incomplete, that it requires more
deposition testimony is, frankly, offensive after putting up
and preparing 74 witnesses to zero.

I started to do a graph for Your Honor, but I
thought you could probably visualize that pretty well.

Thank you, Your Honor.

THE COURT:  Okay.

MR. MADISON:  May I very briefly, Your Honor?

On the notice date, we're saying the same thing.
Under the orders and stipulations, November was the last time
they could notice the defendants' depositions.  So it was

1    November and it was the last week.  They had noticed the

2    parents two months previously, and that's where all the focus

3    was up to that.

4         And I do want to say, just as a point of order,

03:28PM 5    cherry-picking some comments from a 12-page report and

6    recommendation, which in every aspect ruled in our favor and

7    granted our motion to compel, I think is sort of stepping on

8    the line in terms of where Judge Andler's, you know, role is

9    versus a status conference with Your Honor.

03:29PM 10        We're happy to argue these issues if there's an

11   objection to the order, and Your Honor sets a briefing

12   schedule, and we come back.  But I do object to the use of

13   these sort of conclusory words that don't do justice to

14   Judge Andler's 12-page order.

03:29PM 15        Thank you.

16        MS. CAPPIO:  And if Your Honor wanted to hear

17   anything about the foreign deposition -- I see you're shaking

18   your head no.

19        THE COURT:  No.  But I want to hear from Mr. Feldman

03:29PM 20   on that subject.

21        MR. FELDMAN:  Good afternoon, Your Honor.  We had

22   prepared a proposed agenda with three items; depositions,

23   written discovery, and motion for summary judgment.  With the

24   Court's permission, I'll address the depositions, and then

03:29PM 25   Susan Benson would address the other two if the Court has time

1    to consider those.

2              We noticed eight depositions in March of 2024 to

3    take place in June.  Those are eight witnesses the defendants

4    had identified.  When it came time to confirm the depositions,

03:30PM 5    the defendant said they would not produce the witnesses.  They

6    would not work with us in any way to schedule those

7    depositions.

8              We brought this up before Judge Andler, and in

9    August of this year, she told us, the subrogation plaintiffs,

03:30PM 10    that if we had a meet and confer and "the defendants will not

11    give you dates, you go ahead and notice depositions.  Don't

12    notice them for dates where they're not available or have a

13    conflict, but if you've tried two or three times to get dates,

14    and they won't give you dates -- you have to show diligence,

03:30PM 15    and that's the risk if they are slow paying it -- playing it."

16              So that's what we did.  We renoticed those eight

17    depositions.  The defendants produced documents.  We noticed

18    another 20 depositions for witnesses that had been identified.

19    And included in those approximate 30 depositions were two

03:31PM 20    records, custodian Notices of Deposition, one for each of the

21    defendants, and two 30(b)(6) subject matter Notices of

22    Deposition.

23              All the depositions were noticed in November to take

24    place in January, February, March, and April, bearing in mind

03:31PM 25    we have an August 15 discovery cutoff date, very different

 1    discovery schedule than the GE track.

 2            When we were before Your Honor in November, I

 3    mentioned that we had received no response whatsoever.  I was

 4    concerned about those depositions taking place and it was very

03:31PM  5    important that we do so.

 6            We have a meet and confer with defense counsel on

 7    January 13.  They -- I felt like I was cross-examining a

 8    witness, Your Honor.  I said, "Will you produce any witnesses

 9    for deposition?"  They wouldn't answer the question.

03:31PM 10            "Can we work out dates for depositions to be taken

11    with the names of the witnesses to be filled in?"  They

12    wouldn't give me an answer.

13            Purportedly, their reason for refusing to schedule

14    any depositions is what they continually raise as lack of

03:32PM 15    coordination between the subrogation track and the GE track.

16            It's great that we're all here before Your Honor

17    because Gretchen and Ryan, co-counsel for the GE track and the

18    subrogation plaintiffs, will state in open court that we have

19    and continue to coordinate.  So for all of the individual

03:32PM 20    witnesses whose depositions we have noticed, we have

21    coordinated those dates with counsel for the GE track, and we

22    agree that, unless the defendants withheld documents at the

23    time those depositions take place, there will be one deposition

24    and one deposition only.

03:32PM 25            They have agreed to the dates, everything was worked

out, and yet, the defendants repeatedly bring up this red
herring of lack of coordination.  It simply doesn't exist.

There is an issue, which either Your Honor could
address or Judge Andler, relating to the 30(b)(6) Notices of
Deposition.  So we have noticed records custodian 30(b)(6)
Notices of Dep; the GE plaintiffs have not.  So as to those
records of custodian 30(b)(6)s, there's no duplication.  They
can and should take place.  And the GE plaintiffs agree that
they will participate in those.  And that will be one
deposition and one deposition only.

The GE plaintiffs, as part of their Phase 1
structural and foundational discovery, issued a 30(b)(6) Notice
of Deposition with relatively broad subjects for the
foundational issues.

So during our January 13 meet and confer, defense
counsel said, "Will you agree" -- to the subrogation plaintiffs
-- "essentially not to question our witnesses for any subject
that was identified in the GE plaintiffs' Phase 1 30(b)(6)
Notices of Deposition?"

And we said no, we couldn't agree to that because,
to me, it's a way of precluding us from conducting legitimate
questioning.  We have different tracks.  There are different
discovery structures.

So from my perspective on the structural issues, I'm
sure we can work out an agreement that there would not be

1  duplicative questioning after the GE 30(b)(6) Notice of Dep

2  with respect to our corporate representative depositions.

3        But for the foundational issues, we think that these

4  depositions should take place separately because we have

03:35PM 5  different concerns, different issues, and they are different

6  tracks.  That is the only -- the only deposition, Judge, where

7  I'm suggesting that there will be two separate depositions for

8  the subject matter 30(b)(6) deposition; one for the GE track,

9  one for the subrogation track.

03:35PM 10       All other depositions, I think, would follow

11  Your Honor's request that we coordinate, and absent withholding

12  of documents, that would not be duplication.

13       The -- the defendants continue to suggest, despite

14  Your Honor having addressed this numerous times, that we are

03:35PM 15  prevented from participating in depositions of the Korean

16  defendants.  The case law was clear.  I think of Your Honor's

17  citations now, if you would like it, that when one party to a

18  litigation matter notices a deposition, all parties can

19  participate.  There are no restrictions.  So we also will work

03:36PM 20  with them.  We'll prepare a proposed order.  But it's pretty

21  simple, Judge --

22       THE COURT:  Well, I thought I heard that that issue

23  was resolved.  There will be one deposition and you get to

24  participate.

03:36PM 25       MR. FELDMAN:  That's excellent, Judge.

```
1              THE COURT:  Okay.

2              MR. FELDMAN:  There may be an issue, Judge, with

3     respect to the duration of each deposition.  Seven hours may

4     not be enough time.  I think it's something that should be

03:36PM 5   addressed, perhaps before Judge Andler.

6              The other issue has to do with the number of

7     depositions.  So during the January 13 meet and confer, when I

8     was getting nowhere fast, I said, "How about if we do this?" --

9     their suggestion, defendants' suggestion, was that they should

03:36PM 10  take up to 30 depositions and we should take up to six.  I'm

11    not sure where they got the six from, even though we're

12    entitled to take up to ten.  With the absent leave of court,

13    probably more than ten, given the number of parties involved.

14             And I responded by saying, "How about if we do this?

03:37PM 15  Let's schedule ten depositions per side now.  Let's get those

16    dates in the book, and then we will meet and speak and work out

17    arrangements for the number of additional depositions per side

18    and the duration of the depositions."

19             They refused to do that, Judge.  They just would not

03:37PM 20  engage.  They wouldn't set aside dates.  They wouldn't begin

21    the discovery process.  So what we are asking, respectfully,

22    Judge, is that by February 1, both sides work out a specific

23    schedule for ten depositions per side in the subrogation track,

24    and by February 15, both sides work out and submit an order to

03:37PM 25  Your Honor for the number and length of remaining depositions
```

```
  1   per side.  That will -- and the scheduling of those depositions

  2   so that we have some satisfaction, Judge, that we can complete

  3   those depositions.  There's still a lot of supplemental written

  4   discovery that we are waiting from them, but we can complete

03:38PM 5   the depositions in sufficient time to meet the August 15

  6   discovery cutoff, which we have no interest in extending.

  7          I know the defendants have raised before that

  8   they're agreeable to that.  We are not.  That's not what we're

  9   looking for.  This play of slow game that Judge Andler

03:38PM 10  referenced is exactly what they're doing, and we're simply

 11   requesting that the depositions be scheduled at this time.

 12          THE COURT:  That's a subject for discussion with

 13   Judge Andler this week?

 14          MR. FELDMAN:  Well, I don't know that we have a date

03:38PM 15  set with her.  I mean, you know, I think that --

 16          THE COURT:  I guess my view is let's get going.  Ten

 17   a side now sounds reasonable.  Assess those and go forward.

 18   Before everybody agrees to the last-standing deposition, let's

 19   get going.  That's my view.

03:39PM 20         MR. FELDMAN:  We couldn't agree more.  But I

 21   don't -- we've done exactly what Judge Andler directed us to

 22   do.  She said, "If they won't engage, notice the depositions."

 23   We noticed the depositions.  We gave them more than 60 days'

 24   advance notice, and now it's as if we have to start all over

03:39PM 25  again.  That's not what we're looking for.  We're looking for
```

```
 1   these depositions to take place as scheduled.  The first ten we
 2   noticed on the dates we noticed, we would like those
 3   depositions to take place.
 4              Thank you, Your Honor.
 5              THE COURT:  Okay.
 6              MR. BRENNAN:  Your Honor, may I be heard?
 7              THE COURT:  You may.
 8              MR. BRENNAN:  All right.  So today, for the first
 9   time ever -- we've been trying to get them to agree that when
10   you had an individual deposed in both tracks, they would
11   jointly notice it.  The first time they announced to the Court,
12   or to anybody, was right here when Mr. Feldman got up, all
13   right?  We had asked them before to do it.  They would not do
14   it.  So what you were hearing, as if they had agreed to that
15   all along, was not true.
16              What they were doing was marching down the
17   subrogation track the way they wanted to do it, without
18   coordination.  So I want to be clear on that.
19              THE COURT:  But you're telling me we've made some
20   progress today.
21              MR. BRENNAN:  Correct.  We have made some progress
22   because now today, after we had the meet and confer --
23              THE COURT:  Right.
24              MR. BRENNAN:  -- and we had sent an extensive letter
25   on that, they finally have agreed to that.  But we don't even
```

```
 1   know that because we don't even know if Ms. Cappio is actually
 2   in agreement that that's going to happen.
 3              MS. CAPPIO:  Well, we sent an email to this effect
 4   about a month ago, so --
 5              MR. BRENNAN:  Well, this is the first time that
 6   these two have agreed that this would, in fact, happen.
 7              THE COURT:  Okay.
 8              MR. BRENNAN:  But I didn't stand up during his
 9   presentation.  I can tell you, I couldn't disagree with it
10   more, and I really would like to be heard.
11              With respect to the notice of and participation in
12   the depositions of HMC and KC, I do want to be clear that when
13   you're saying that one deposition, if they're allowed to
14   participate, that is their one and only time, and that entails
15   dropping their appeal.  If they continue to pursue their
16   appeal, they are going to come back, and they are going to say,
17   "Those are a party.  And now" -- if they were to win, if they
18   were to win -- "and now that they're a party, we're going to
19   take additional depositions."
20              So they should have one or the other.  And that's
21   exactly what Mr. Madison was talking about, having their cake
22   and eating it too.  They can take their -- in our view, it's a
23   jurisdictional issue, and they can -- we're willing to -- I
24   think Mr. Madison is willing to offer that as a compromise if
25   they're willing to drop the appeal.
```

```
 1              If they're saying, "Well, we'll take that now,

 2    Your Honor, but we're going to continue to pursue our appeal.

 3    And then if we win the appeal, then we're going to come back

 4    and seek full discovery."

 5              THE COURT:  They'd probably receive a cold shoulder.

 6              MR. BRENNAN:  On the appeal.

 7              THE COURT:  No.

 8              MR. BRENNAN:  I'm sorry, I don't understand,

 9    Your Honor.

10              THE COURT:  I wouldn't be very sympathetic if we go

11    forward.  They're allowed to participate.  They've had their

12    one deposition.  Whether the parents are officially in the case

13    or not, they've -- as far as I'm concerned, they've had their

14    one deposition.

15              Who knows what events may occur to cause the Court

16    to revisit that.  But that's my view regardless of the outcome

17    of the deposition.  If they get their one deposition and

18    participation --

19              MR. BRENNAN:  You mean regardless of the outcome of

20    the appeal, Your Honor?

21              THE COURT:  Yes.

22              MR. BRENNAN:  You said "regardless of the outcome of

23    the deposition."  I just want to make sure --

24              THE COURT:  No.  No.  I misspoke, then.

25              MR. BRENNAN:  Right.  I just want to make sure the
```

**UNITED STATES DISTRICT COURT**

1   record is clear.  If the order is drafted in a way that is

2   the limit of what they can have, then I think we would be in a

3   different position, regardless of the outcome of the appeal.

4         What we don't want to do is not fully litigate that

03:43PM  5   issue.  And, as you know, we feel it's a jurisdictional issue,

6   and that the Court does not have the power to permit them to

7   participate.  Obviously, you have the power, but our view is

8   that you do not because of the jurisdictional finding.

9         But we certainly aren't willing to agree if they can

03:43PM 10   continue to litigate the appeal, and then we have to go argue

11   the appeal.  So it doesn't resolve anything.  Instead, they

12   already have access to the documents that have been produced

13   because you did order that, that this should be their one and

14   only opportunity to take a deposition of HMC or KC and, in

03:43PM 15   fact, their only discovery of HMC and KC.

16         And just for the record, to be clear, HMC is Hyundai

17   Motor Corporation, and KC is Kia Corporation, which are both

18   entities in Korea, and they're subject to an order that is now

19   up on appeal.

03:43PM 20         With respect to -- so that is good that we're agreed

21   on that and -- with respect to the individual depositions, all

22   right?  And because we're coming to the end of Phase 1

23   discovery, the subrogation plaintiffs and the GE plaintiffs

24   will be able to jointly take the depositions and jointly notice

03:44PM 25   the depositions.  So that will, again, be their one and only

```
 1    opportunity.  So that's some progress.

 2            And we did try to -- Mr. Feldman said, "Well" -- he

 3    wasn't sure if Judge Andler could get involved.  We requested

 4    Judge Andler.  Judge Andler's assistant came back with time,

 5    and Mr. Feldman said, "Well, I'm not going to agree to that.

 6    We're going to see Judge Selna and basically see what progress

 7    we can make with him.  And if not, then we'll maybe come back

 8    to Judge Andler."

 9            And that's what's going on here.  I do want to be

10    clear on that.

11            But did he tell you in his presentation, Your Honor,

12    "We refuse to give discovery" -- and Mr. Susolik will give you

13    a better flavor on this -- "with respect to the insurers"?  Did

14    he tell you that there are ten different insurers and that what

15    we had proposed was three depositions per insurer?  Because

16    these are all different insurers, all which have different

17    mindsets, all which are going to have different documents, all

18    which are going to have different underwriting.  And we

19    suggested three for them.

20            So he makes it sound like it's just a massive number

21    of depositions that we're trying to take, and it's ten.  So

22    what he's nicely telling you the reasonable deal that he's

23    offering us is you can have one deposition, maybe, per insurer,

24    and then they'll take a whole bunch of our depositions.  And we

25    don't think that's appropriate.  And as we suggested to them
```

when we had this meeting, let's see if we can work it out.

Where it was left was they were going to go talk to the GE track and get back to us.  What happened instead was they filed their status on -- of course without consulting us -- last, I think, Friday, or very late Thursday, I can't remember -- and then brought these issues before you when we could have tried to get them worked out and should get them worked appropriately with Judge Andler because that's exactly the kind of thing that she can sit down with us and say, "Well, how many depositions do you want?  What's reasonable?"

And she'll get the full story out of us because we'll have our proposal, which are written, instead of what you got in the presentation from Mr. Feldman, which was a very small part of that story because he didn't tell you we're refusing.

And the other part he didn't tell you is on that meet-and-confer call, they were very clear that they will oppose all discovery as to the mindset, as to the documentation, as to their knowledge about the immobilizers, as to their knowledge about the security systems.  All of those vehicles, they have a team -- every one of them has a team that assesses what the premium needs to be charged at.

And to figure that out, they got to take a look at all different aspects of the vehicle and do all sorts of different ratings.  And all of them provide ratings -- in fact,

          1    they have set ratings in all the different categories of

          2    insurance.  So, for example, comprehensive, collision, they

          3    assign numbers.  And they've even, in fact, sent those numbers

          4    to auto manufacturers.  And we have one of them.  So what you

03:47PM   5    got was a very, very incomplete story.

          6           So that's with respect to the number of depositions.

          7    What we were trying to work out was something that would have

          8    reasonable limits.  And what they do is distort it and say,

          9    "Well, we have ten, so you don't really get any discovery."

03:47PM  10           And, quite frankly, if we took the depositions,

         11    given their position, we wouldn't even get any information

         12    because we'd take the depositions, and they'd say, "Well, we're

         13    not giving you any information on that."

         14           So I think that's completely inappropriate.

03:48PM  15    Judge Andler offered a date next week, in fact, two dates.  One

         16    has already been taken by the GE track, and we think we should

         17    go ahead on the other date -- and I forget if it's Tuesday or

         18    Thursday, but it's dates that are available -- and spend some

         19    time with Judge Andler and see what can get worked out.

03:48PM  20           If we can't get any reasonable approach worked out,

         21    that's fine.  Then we can have appropriate motions, and we'll

         22    come back and see you, as indicated, on March 6.

         23           I'm going to ask Mr. Susolik just to address some of

         24    the issues of the lack of discovery that's been --

03:48PM  25           MR. FELDMAN:  Your Honor, as I had mentioned before,

         1    there were three items in our proposed agenda:  Number one was

         2    depositions; number two was written discovery requests.  So,

         3    respectfully, I think the orderly way to proceed might be to

         4    wrap up the deposition discussion, and then we --

03:49PM  5              THE COURT:  Right.

         6              MR. FELDMAN:  -- will address the outstanding

         7    discovery --

         8              THE COURT:  Right.  I want to hear everything anyone

         9    has to say about depositions, and then we'll move to the next

03:49PM 10    topic.

        11              But it sounds to me that you know where each others'

        12    positions are with respect to depositions.  You need

        13    Judge Andler to bring you to agreement as to exactly what

        14    that's going to be, and I take it that's the purpose of getting

03:49PM 15    together with her next week.

        16              MR. FELDMAN:  That's fine, Your Honor.  I didn't

        17    know the extent to which Your Honor would be addressing this --

        18              **(Reporter requests clarification**

        19              **for the record.)**

03:49PM 20              MR. FELDMAN:  I'm sorry.

        21              It's, frankly, not anything that reasonable lawyers

        22    should require a discovery master to address.  We'd like -- we

        23    had scheduled ten depositions.  They were supposed to have

        24    taken place, the first ones, last week.  It's amazing to hear

03:49PM 25    Mr. Brennan say we've never stated before that we have and will

1    coordinate these depositions.  We've said it countless times.

2          But it doesn't matter.  We're all on the same page

3    now.  We just need to get those ten depositions in the book,

4    like now, like, immediately, to get this moving.  They want

03:50PM 5    their ten; we want their ten.  Not to take place sometime in

6    the amorphous future, but to take place in January and

7    February.

8          And then I would think for us to work out a

9    schedule -- not 30 here and six here, but an equitable number

03:50PM 10   of depositions and let those depositions for us to agree upon.

11   That's all we're asking.  But we can't seem to get any dates

12   for any confirmations that witnesses will be produced.

13          And what I didn't hear Mr. Brennan address, and I

14   want to bring it up because they keep using it as an excuse, is

03:50PM 15   what I said before, which is that there are separate tracks.

16   And, respectfully, while we're in full alignment on absent

17   problems with the production of documents, their witnesses will

18   be produced once, that there should be a Phase 1 GE 30(b)(6)

19   Notice of Deposition and a separate subrogation track 30(b)(6)

03:51PM 20   Notice of Deposition.  And we would like to get clarity today

21   that that's agreeable, and then we can work out that schedule.

22          THE COURT:  Have you issued two notices?

23          MR. FELDMAN:  Yes.  Yes, Your Honor.  Four Notices

24   of Deposition; two -- one to each defendant for records and one

03:51PM 25   to each defendant for subject matter.  That's entirely

separate.  That's the only area for which we are saying there
should be separate depositions between the tracks.

MR. BRENNAN:  May I be heard, Your Honor?

THE COURT:  Please.

MR. BRENNAN:  So he's just told you what his tactic
is going to be, is he got a chance, and he got you engaged with
him without having heard from me, so you didn't know about the
three depositions --

THE COURT:  Well, you did expect that I would hear
from you.

MR. BRENNAN:  Well, I did, but I was hoping you
would not give your guidance before you got to hear from me.
And, you know, when you said the ten depositions.  You know,
now he's saying, "Well, that's an order from Judge Selna on the
ten depositions."

But you didn't know when you said that about the
fact that they were unwilling to give the depositions and -- of
their insurers, and we had offered three depositions per party.

The point is we just think your direction should be,
"Go figure it out with Judge Andler and come to a solution."

He's going to go to Judge Andler and say,
"Judge Selna" -- and this is his whole point.  This is why he
got up and did this.  His whole point is "I want Judge Selna to
say something that I can then take to Judge Andler."  And
that's why he still hasn't agreed to the date next week, which

```
 1   he can do, for the hearing with Judge Andler, because he's
 2   like, "We're going to see Judge Selna."
 3           So it's how much I can get from Judge Selna before
 4   Mr. Brennan has a chance to --
 5           THE COURT:  When I give directions for guidance,
 6   they're intended to be that, guidance.  I don't intend to
 7   restrain Judge Andler in what she thinks is the best solution.
 8   Guidance is guidance.
 9           MR. BRENNAN:  Thank you, Your Honor.  That, I think,
10   solves that issue.
11           So there will be -- we'll go figure out the
12   depositions.
13           THE COURT:  Okay.
14           MR. BRENNAN:  I just want to be clear that we did
15   offer.  We wrote it in detail.  This is the first time we're
16   hearing.  And with respect to the 30(b)(6) depositions, what we
17   have said is, on any topic that is noticed, that it should be
18   jointly noticed for both parties, and that you should not be
19   able to take the deposition twice on the same topic, just like
20   you shouldn't be able to take the deposition of an individual,
21   which should also be jointly noticed by both of them twice.
22           That's what real coordination is, not the
23   coordination that they've had where the subrogation had been
24   going -- and you've heard it because he told you, "Well, we
25   went down kind of our own track, and we come here every" -- you
```

03:52PM 5
03:53PM 10
03:53PM 15
03:53PM 20
03:54PM 25

         1    know, complaining about the depositions.  And they know what's

         2    going on in the GE, which is because of the phase discovery.

         3             We're going to be shortly past that or maybe past

         4    that, and then depositions can happen at the same time, jointly

03:54PM  5    noticed, with them sharing the time for the individuals.

         6             And then with respect to each topic, they have --

         7    can jointly issue for that topic, even if, as it has already

         8    happened, there's been a notice for the -- on the GE track by

         9    Ms. Cappio or her team for certain topics.  They should have to

03:54PM 10    take that deposition as well on whatever the topic is or not

        11    take a deposition on their topic.  And that's our point.

        12             Again, we can address all this with Judge Andler,

        13    and she will -- she's very persuasive, shall we say, and is

        14    pretty good, I would say, just my opinion, in trying to get

03:55PM 15    things worked out between the parties.  And if we can't, then

        16    you do -- we'll have you do the motions.

        17             Thank you, Your Honor.

        18             THE COURT:  Okay.

        19             Mr. Susolik?

03:55PM 20             MR. SUSOLIK:  Thank you, Your Honor.  I just wanted

        21    to say one thing on the depositions, which is I've been taking

        22    insurance company depositions for over 30 years.  We

        23    proposed -- there's ten insurance company plaintiffs.  Ten.  We

        24    propose taking three depositions per side.  So they have ten

03:55PM 25    plaintiffs; we have two defendants.  We take three depositions

```
  1   of each of their -- of their parties.

  2         Mr. Feldman's argument is that it's reasonable he

  3   wants to limit me to one deposition per plaintiff, which is

  4   simply untenable and unreasonable.  So while ten and ten may,

03:55PM 5   on the surface, seem somehow proportional.  It's not when you

  6   consider that they have ten plaintiffs.

  7         Thank you, Your Honor.

  8         THE COURT:  Any other issues?

  9         Yes, ma'am.

03:56PM 10        MS. BENSON:  Good afternoon, Judge Selna.  With

  11  respect to the rest of the discovery, both parties are still in

  12  a meet-and-confer phase.  I understand they wanted to set up

  13  this meeting next week, but we haven't finished meeting and

  14  conferring.  We just received letters -- further letters from

03:56PM 15  the defense.  We sent our meet-and-confer letter out several

  16  weeks ago, and we haven't been able to discuss this before we

  17  seek Judge Andler's help.

  18        So while I do agree --

  19        THE COURT:  Well, my view is I leave it to her as to

03:56PM 20  whether there's been sufficient meet-and-confer discussion

  21  before she takes up the matter.  I mean, in fairness to, you

  22  know, the Local Rules and general practice, I mean, that ought

  23  to occur before she takes up the matter for a very substantive

  24  time, and I'll let her determine whether she thinks you've done

03:57PM 25  that.
```

1          MS. BENSON:  Well, both letters -- both our letters

2    and their letters say let's agree upon a time and we can

3    discuss.

4          THE COURT:  Okay.

03:57PM 5          MS. BENSON:  So we certainly can meet with

6    Judge Andler regarding the depositions since that's our highest

7    priority right now.

8          THE COURT:  Okay.

9          MS. BENSON:  Defendants have stated in their agenda

03:57PM 10   that plaintiffs claim that the underwriting documents are not

11   discoverable.

12          And while that is surely our position for many

13   reasons, that's not how we responded to the discovery.  So,

14   obviously, this is an issue for Judge Andler, who we'll discuss

03:57PM 15   that with her.

16          Plaintiffs have produced thousands and thousands and

17   thousands of documents -- the policy, the claims file, the

18   spreadsheets -- setting forth the information for each insurer,

19   the application that the insured filled out for the policy, as

03:58PM 20   directed by Judge Andler.  We still have further issues to

21   discuss, and we will do that by way of a telecom.

22          Defendants also had provided us with a stipulation

23   to dismiss claims, which we're rather confused about.  We're

24   not dismissing claims.  We're not dismissing causes of action.

03:58PM 25   We are removing damages from our claims.  And while I

```
        1   understand why the defendants -- while I understand why the

        2   defendants want a clear record of our damages, and they're

        3   entitled to it, entering into a stipulation is -- we don't feel

        4   is the correct manner to do so.

03:58PM 5        We are spending an inordinate amount of time and

        6   money with an expert who -- we call her our expert -- who is

        7   going through claim sheets for all the plaintiffs.  She's

        8   assigning --

        9        You can discuss it another time, Jennifer.

03:59PM 10       -- but I think that will solve that issue as far as,

       11   you know, not pursuing certain claims that we have with the

       12   insured.

       13        So I wanted to make sure the record was straight

       14   about that because it was misrepresented.  I mean, it -- we

03:59PM 15  don't think it has to be.  I think it's in violation of

       16   Rule 41.

       17        THE COURT:  Well, I don't think bargaining for

       18   dismissal of suits or claims is an appropriate way to go about

       19   resolving discovery disputes.

03:59PM 20       MS. BENSON:  I understand, Your Honor.

       21        I believe that is it.  I think the -- my first

       22   inclination was going to the issue on the underwriting

       23   documents, but I think that probably we should seek

       24   Judge Andler's assistance on that.

04:00PM 25       THE COURT:  Right.  Right.
```

UNITED STATES DISTRICT COURT

1        MS. BENSON:  Okay.  I think that's it.

2        THE COURT:  Thank you.

3        Mr. Brennan?

4        MR. BRENNAN:  Your Honor, with respect to --

04:00PM 5   Mr. Susolik is going to address some of this.  Let me talk

6   about the stipulation to dismiss the claims.  While she refers

7   to it as a stipulation to lower their damages, that's not

8   consistent with the orders that you've entered.  The order that

9   you entered was that each of these are a separate cause of

04:00PM 10  action.  You didn't require them to refile --

11       THE COURT:  Right.

12       MR. BRENNAN:  -- right?  But you did order that each

13  of them is a separate cause of action.  So it's John Smith,

14  Jill Jones, they're all separate.

04:00PM 15       THE COURT:  Right.  Insured 1, Insured 2.

16       MR. BRENNAN:  Correct.  Exactly, Your Honor.

17       And then you ordered the -- everything's going to be

18  stayed except for the first named insured.

19       THE COURT:  Right.

04:00PM 20       MR. BRENNAN:  And our point is if you had -- if

21  insurer -- let's just take Allstate, for example.  If Allstate

22  had ten insureds, and they -- when they went through their

23  process, they said the first nine, we're not going to claim

24  their damages, that those should be dismissed, because

04:01PM 25  otherwise, you're not getting the first insured.  And it's a

```
 1   way to evade your order.
 2              THE COURT:  I get it and I don't understand that.
 3              MR. BRENNAN:  Okay.  The point is if their -- if
 4   their -- what otherwise would have been their first insured --
 5              THE COURT:  Right.
 6              MR. BRENNAN:  -- they're saying, "We're not pursuing
 7   that claim," that claim should be dismissed.  And if they get
 8   to their second insured, and they say, "We're not pursuing that
 9   claim," that should be dismissed.  And we have multiple
10   instances where that happened --
11              THE COURT:  But as I understand it, you have
12   agreement on -- well, on all but one insurance plaintiff as to
13   who the first one is.
14              MR. BRENNAN:  Yes, you read our submission
15   correctly, Your Honor.  That is true.  Where we don't have the
16   agreement is where they dropped people -- they dropped
17   individuals to get to what the first -- what's now the first
18   insured.  And they think they should just -- those should just
19   be able to sit there.  And our position is that those should be
20   dismissed.  If you're not -- if you decide --
21              THE COURT:  But your position was also Named
22   Insured 2 through N should have been dismissed, and I didn't do
23   that.
24              MR. BRENNAN:  Named Insured 2 through 10.  The other
25   one should be dismissed --
```

1          THE COURT:  N.  N.

2          MR. BRENNAN:  2 through N should be dismissed if

3     they're telling us, as they have with many of the claims, that

4     they're not going to go ahead and pursue them.

04:02PM 5          But certainly, any ones that were above that were

6     first on the list -- above the first insureds that they're not

7     pursuing, those should be dismissed, and they should be

8     dismissed with prejudice.  They shouldn't just be allowed to

9     just sit there.  That's the whole point of moving.

04:02PM 10         THE COURT:  But like all the others, 2 through N, N

11    being whatever the number is in mathematical term.

12         MR. BRENNAN:  And my point is whatever they're --

13    yes.  But whatever they're telling us, they're not pursuing on

14    the 2 through N.  Whatever is not in 2 through N, they're

04:03PM 15    telling us they're not going to go ahead and pursue, those

16    should be dismissed as well.  That would make some progress in

17    the litigation, and you would have fewer claims.

18         Her view -- her position is, well, those are just

19    all damages.  And our position is that's not consistent with

04:03PM 20    the order.

21         Let me just make a couple comments, and we can raise

22    this again.  It doesn't have to be resolved today.  With

23    respect to written discovery, obviously anything that's not --

24    that hasn't met the meet-and-confer process, Judge Andler is

04:03PM 25    pretty good about pushing the parties on that.

1          The point of the conference next week with

2   Judge Andler is to try to make progress on all the issues that

3   you heard Mr. Feldman and I go back and forth on.  And as you

4   can tell, we don't have complete agreement on that.  So we do

04:04PM 5   want to go forward with that.

6          And Mr. Susolik has --

7          MR. SUSOLIK:  So two points, Your Honor.  First,

8   with respect to the meet and confer issue raised by Ms. Benson,

9   I certainly believe we have fully and completely complied with

04:04PM 10  the Local Rules on this issue.  On January 13th, we had a Zoom

11  meet and confer with counsel.  It lasted almost two hours, but

12  we covered a lot of issues.

13         We then sent two comprehensive meet and confer

14  letters to them shortly after January 13th.  The next step,

04:04PM 15  pursuant to Local Rules, is to have an IDC with Judge Andler,

16  which we are scheduling.  So I think we're in full and complete

17  compliance.  I don't agree that we have not met and conferred,

18  but --

19         THE COURT:  Well, that's not for me to resolve.  I

04:04PM 20  think Judge Andler is able to tell whether you've done your

21  appropriate homework under the meet-and-confer rules.

22         MR. SUSOLIK:  Exactly, Your Honor.  And we'll take

23  her guidance very seriously next week at the IDC.

24         THE COURT:  Okay.

04:05PM 25         MR. SUSOLIK:  My second point is that I truly don't

1  understand the argument -- or the statement by plaintiffs'

2  counsel that the underwriting issues need to be addressed by

3  Judge Andler.  I fundamentally disagree.  She has already

4  addressed those underwriting issues in a September 5th report

04:05PM 5  and recommendations, and then you issued an order on

6  November 22nd.  I'm going to read two lines from that order.

7          This is at line -- page 10, line 23:

8          "Request for Production of Document Number 5

9      through 8 may be relevant to defendants'

04:05PM 10      affirmative defenses, including waiver, laches,

11      statute of limitations, voluntary payment, and

12      superior equities."

13      This has already been litigated and ordered by you,

14  Your Honor.  And it's a detailed 16-page report and

04:06PM 15  recommendations.  We're not doing a motion for reconsideration

16  on this issue.

17          Likewise, you ordered, and Judge Andler recommended,

18  at line 26 as to RFPs numbered 9 through 12 seeking

19  communications and documents on the issues in litigation:

04:06PM 20      "The discovery special master finds this

21      information is relevant to the claims and defenses

22      in the case."

23      So she has already ordered the underwriting

24  discovery is relevant and must be produced.  And I would say

04:06PM 25  this.  I think this may explain why they are in breach of this

```
 1  order because their attitude is still, "Well, we need to
 2  address this issue again."
 3           So we're going to address it with Judge Andler next
 4  week, but it has already been ordered by this Court.
 5  04:06PM  Thank you, Your Honor.
 6           THE COURT:  Thank you.
 7           Ms. Benson.
 8           MS. BENSON:  Yes, Your Honor, briefly.
 9           With respect to the ten claims, we have reviewed the
10  04:06PM  claims filed for any of the specific documents that
11  Judge Andler ordered, and we produced everything.  So they are
12  taking the position that it's a more general production order,
13  and we are not.  So that's where it stands.
14           THE COURT:  Okay.
15  04:07PM  Ms. Cappio?
16           MS. CAPPIO:  Thank you, Your Honor.
17           As far as your admonition to "let's get going," we
18  had a thought, which is, since we've each exchanged, on the GE
19  side, proposals for a very limited extension of Phase 1 for
20  04:07PM  those three categories on our side, we thought why don't we do
21  a joint proposal to Your Honor, say, a week from now with the
22  GE plaintiffs' proposal and GE defendants' proposal, and then
23  Your Honor can decide where to draw the lines in the extension
24  for Phase 1.
25  04:07PM  THE COURT:  Whatever you want to submit is fine.
```

```
 1                    MR. MADISON:  My immediate reaction is it's not ripe

 2      yet, Your Honor, because we're in front of Judge Andler next

 3      week --

 4                    THE COURT:  Well, yes.

 5                    MR. MADISON:  -- and I'd rather get guidance from

 6      her about how we're going to process the outstanding --

 7                    THE COURT:  I mean, I would too.  We're going to get

 8      going with Phase 2, and I want to get Phase 1 wrapped up --

 9                    MR. MADISON:  Yes, Your Honor.  We hear you.

10                    THE COURT:  -- which means I want a timetable --

11                    MR. MADISON:  Yes, Your Honor.

12                    THE COURT:  -- drop-dead date.  It's done --

13                    MR. MADISON:  You shouldn't use those terms --

14                    THE COURT:  -- not a heart attack.

15                    MR. MADISON:  -- at a certain age.  Yeah.

16                    MS. CAPPIO:  Okay.  So, Your Honor, would you like

17      us to put it in writing to Judge Andler instead?  I just want

18      to make sure we have a clear -- the part -- just to be frank --

19                    THE COURT:  That's fine.

20                    MS. CAPPIO:  -- people are trying to file motions

21      and so forth, and it's our view that the end of Phase 1 means

22      the end of Phase 1, and we don't want to drag it out in a way

23      that doesn't make sense.

24                    THE COURT:  Well --

25                    MS. CAPPIO:  So if proposing it to Judge Andler in
```

1    writing is expedited enough for Your Honor, that works.  But I

2    cannot say enough, we are -- we have done our job in Phase 1

3    and to continue looking for any potential inadequacy or

4    whatever in whatever we have done in Phase 1, the nitpicking,

04:09PM  5    we need to put a stop to it and move on to Phase 2.

6               THE COURT:  Okay.

7               MS. CAPPIO:  And bellwethers and so on are clearly

8    under your purview, Your Honor, when that process kicks off.

9               THE COURT:  One of the functions of concluding

04:09PM 10    Phase 1 in identifying bellwethers in some fashion is we cut

11    off the discovery as to all the other plaintiff entities, and

12    we do all the discovery resources that are comp to the claims

13    of those parties, and we just put aside the individual claims

14    of others not in the bellwether group.

04:09PM 15               MS. CAPPIO:  That's right, Your Honor.  So what

16    we're seeking to do, as the governmental entity plaintiffs, is

17    to enforce the order that Your Honor has already entered that

18    Friday was it.  And we're being asked, believe it or not, to

19    meet and confer about new issues, issues that we had offered

04:10PM 20    dates for many days ago.  We're being asked for new dates.

21    We're being peppered with requests.  As of Friday, the day that

22    discovery was closed, we were being asked for new things.

23               That's what's prompting my urgency, if you hear it

24    in my voice.

04:10PM 25               THE COURT:  I do.

UNITED STATES DISTRICT COURT

1          MS. CAPPIO:  We really think Friday was it.

2          THE COURT:  Okay.

3          MR. MADISON:  Well, Your Honor, this is exactly what

4    Mr. Brennan was describing.  They want some colloquy from

04:10PM 5    Your Honor that they can then take to Judge Andler and say,

6    "See, this 12-page order where you found the GE plaintiffs to

7    be completely deficient in their discovery, Judge Selna

8    disapproved of that, and we don't need to do anything more."

9          And that's not right.  We should adhere to the

04:10PM 10   appointment order.  Judge Andler is well capable of asking us

11   to submit agendas or issues to be teed up.  But this is no

12   small thing, Your Honor, this 12-page report and

13   recommendation.

14         THE COURT:  Well, I don't think it's appropriate,

04:11PM 15   and I won't let it occur, such that parties play ping-pong

16   between me and Judge Andler.

17         MR. MADISON:  Yes, Your Honor.

18         THE COURT:  She has her independence.  She makes her

19   rulings.  If there are concerns about those rules, they come to

04:11PM 20   me.  Until they come to me for a final disposition, I can make

21   some suggestions and give guidance, but I obviously don't rule

22   on the issues until they're submitted to me --

23         MR. MADISON:  Yes, Your Honor.

24         THE COURT:  -- after her consideration, submission

04:11PM 25   of an R and R, and appropriate briefing.

1      MR. MADISON:  I mean, the one thing I'd appreciate

2  hearing, which I posed earlier but haven't heard an answer to,

3  do they intend to object tomorrow to this 12-page report moving

4  to compel?

04:11PM 5      THE COURT:  Well, they can tell us today or we can

6  look at the docket tomorrow.  I look at it every day.

7      MS. CAPPIO:  Yes.  We'll look at it tomorrow too,

8  Your Honor.

9      I just want to be really clear that we agree that

04:12PM 10  the report and recommendations that are pending, they should be

11  resolved in Phase 1.  We're not trying to shortchange anybody

12  on things that have been filed.  What our position is -- and

13  we're eventually probably going to need guidance from the Court

14  about is -- what does the end of Phase 1 mean?

04:12PM 15      THE COURT:  Okay.

16      MS. CAPPIO:  And I'm asking Your Honor, how would

17  you like that presented?  What is the end of Phase 1?

18      THE COURT:  If there's an order that comes to me to

19  compel, I can't cause it to be executed retroactively.  There

04:12PM 20  needs to be some time for compliance.  So, de facto, if I order

21  compliance, there's going to be time for compliance.  And if

22  you want to take that as cleaning up Phase 1 or meeting

23  Phase 2, however you want to characterize it, I think that's

24  the logical process.  We can't close Phase 1 with loose ends.

04:13PM 25      MS. CAPPIO:  Understood, Your Honor.

```
 1              Is it your position that we can file new motions to

 2    compel tomorrow about Phase 1?

 3              THE COURT:  No.  No.

 4              MS. CAPPIO:  So you're talking about motions that

 5    are already filed, they can be resolved.  But we can't sit here

 6    and say if I come up with something on the plane ride home and

 7    I want to file a motion to compel about Phase 1 that defendants

 8    haven't done, I don't get a chance to file a motion on that

 9    day; correct?  Because Phase 1 is passed.  So sad, so sorry.  I

10    should have read the documents sooner.  Is that correct?  I'm

11    just trying to understand what you --

12              THE COURT:  File what you wish to file.  If I think

13    it's inappropriate in terms of timing or for any other reason,

14    I'll simply summarily deny it.

15              MS. CAPPIO:  Okay.  Well, we appreciate that.  What

16    I'm trying to avoid, Your Honor, is an endless Phase 1 where

17    the GE plaintiffs have complied until the cows come home, and

18    we are getting continually requested to do more for -- as you

19    say, for all plaintiffs before the bellwethers are selected.

20    And, frankly, that is a problem on our side of the V.

21              THE COURT:  Okay.  Well, I'm not sure we can

22    accomplish anything further today, and we have to let

23    Judge Andler work her good offices.

24              MS. CAPPIO:  Understood, Your Honor.  Thank you.

25              MR. FELDMAN:  Judge, there was one final item, if I
```

1    may -- Elliott Feldman -- the third item in our proposed agenda

2    related to the filing of a motion for summary judgment.

3              So in a previous hearing before Your Honor, you

4    stated that you were not going to entertain any summary

04:14PM 5    judgment motion that is fact-based as opposed to a straight

6    legal argument.  "If there is a purely legal issue, a different

7    story."

8              So we believe that the defendants' alleged so-called

9    equitable defenses present purely legal issues, and we are

04:14PM 10   requesting leave to file motion for summary judgment on those

11   issues at this time.

12             THE COURT:  I know your reason, Mr. Brennan.

13   They're in the papers.

14             MR. SUSOLIK:  I do have something to add, though,

04:15PM 15   Your Honor, if I could.

16             THE COURT:  Nope.  I think we're going to conclude

17   this for today.

18             MR. SUSOLIK:  Okay.  Thank you, Your Honor.

19             THE COURT:  If I conclude that there is not a -- if

04:15PM 20   the motion doesn't raise strictly legal issues, I'll simply

21   summarily deny it, probably without prejudice.

22             MR. FELDMAN:  That's fair, Your Honor.

23             THE COURT:  But, you know, we can spend a lot of

24   time in motions practice, but I'm not sure it's worthwhile.  If

04:15PM 25   there's something truly dispositive, truly dispositive, such

1    that you might even convince the other side to waive the --

2    withdraw the defense, that's probably worth taking a look at.

3            MR. FELDMAN:  That would test anyone's persuasive

4    powers, Your Honor, but we'll try.

04:15PM 5        The other reason why we think this makes sense,

6    Judge, is to cut off at the pass a bunch of irrelevant and

7    impermissible discovery requests on so-called affirmative

8    defenses --

9            THE COURT:  Well, sir, I can't spit out all

04:16PM 10   ramifications for all actions which people might take.  It's a

11   lot easier when I've got a concrete problem in front of me that

12   has clear parameters.

13           MR. FELDMAN:  Fair enough, Your Honor.  Thank you.

14           MR. BRENNAN:  Your Honor, may I be heard?  I want to

04:16PM 15   make sure we have a full record on this.

16           If they file a -- first of all, we're totally

17   opposed to filing a motion for summary judgment, and you just

18   heard the reason why they want to do it.  They're going to say,

19   "Well, we've got a pending motion for summary judgment.  You

04:16PM 20   don't get any discovery."

21           And Mr. Susolik, who is right here, he can't pursue

22   that anymore.  That's why they want to do it.  And --

23           THE COURT:  I'm unlikely to stay discovery during

24   the pendency of any motion.

04:16PM 25           MR. BRENNAN:  Also, not as simple as just a motion

         1    for summary judgment.  We've got 10 different -- actually, I

         2    think 11 with the addition of --

         3              THE COURT:  Right.

         4              MR. BRENNAN:  -- plaintiffs.  So it should be 11

04:16PM  5    motions for summary judgment, and they should all be briefed,

         6    according to what you're allowing -- I think going to allow

         7    them to do, because they all involve different states' laws and

         8    different concepts.  It's way too early --

         9              THE COURT:  If you're going to file a motion for

04:17PM 10    summary judgment, first file an application to do that.  Lay

        11    out what relief you want against what claims, what defendants,

        12    and why it's truly a legal issue.

        13              MR. BRENNAN:  Yeah.  And there's another issue as

        14    well --

04:17PM 15              THE COURT:  Well, that should provide a reasonable

        16    filter and give you a chance to tell me why you don't think

        17    it's appropriate.

        18              MR. BRENNAN:  And discuss it at the next conference,

        19    Your Honor?

04:17PM 20              THE COURT:  No.  When they put that application in,

        21    I'll probably ask for a fairly short response.  Or if we have

        22    an upcoming session, I'll save it for that.  But, you know...

        23              MR. BRENNAN:  I just want to be clear.  It's

        24    denying -- I want to make sure I have a full and complete

04:17PM 25    record on it.  It's denying us discovery.  It's allowing them

```
 1  to file a motion for summary judgment.  And it's allowing them

 2  to file a motion where there actually aren't the ten complaints

 3  because you didn't require them to replea.  So they don't even

 4  know the breadth of what would apply to each thing, and we

 5  don't have the facts.

 6             THE COURT:  So that's why I'm going to have them

 7  make an application so we can see what the breadth is and

 8  whether it's appropriate to entertain that type of motion at

 9  this point.  And if they make an application, you'll obviously

10  have an opportunity to put your views in.

11             MR. BRENNAN:  Thank you, Your Honor, but we would at

12  least -- we'd like to have a couple weeks to put it in because

13  it is -- you'll see, when you see 10 different states or 11

14  different states, it makes a difference.

15             THE COURT:  Well, I think the complexity and length

16  of the application is probably inversely proportional to the

17  odds it will be granted.

18             MR. BRENNAN:  I can't say how long --

19             THE COURT:  Is that too complicated?

20             MR. BRENNAN:  I can't say how long or how short

21  they're going to do it, Your Honor.

22             Okay.  Well, we've made our record, Your Honor.

23  Obviously, you let them do --

24             THE COURT:  Okay.  Always like to have people make

25  their record.
```

1          MR. BRENNAN:  Thank you, Your Honor.

2          THE COURT:  Mr. Susolik?

3          MR. SUSOLIK:  Yeah, briefly, Your Honor.

4          So I agree with your order on the application, but I

04:19PM 5   simply cannot overstate the fundamental unfairness of what's

6   being proposed here.  I served my discovery on the underwriting

7   documents in March of last year, March 21.  Judge Andler --

8   after they stonewalled me, Judge Andler ruled --

9          THE COURT:  Sir, you're going to discuss that with

04:19PM 10  her this week.  Let's see --

11         MR. SUSOLIK:  I understand.  I'm --

12         THE COURT:  This is the second time you pointed it

13  out, sir.

14         MR. MADISON:  Your Honor, I have two housekeeping

04:19PM 15  items, if I could?

16         THE COURT:  Truly housekeeping?

17         MR. MADISON:  Next status conference, March 6th, I

18  would note that's the spring meeting of the American College of

19  Trial Lawyers, but I think that only impacts you and me, Your

04:19PM 20  Honor --

21         THE COURT:  Well, it doesn't impact me, I regret to

22  tell you.

23         MR. MADISON:  -- I wasn't planning on going, so if

24  that works for Your Honor, can we come back then?

04:19PM 25         THE COURT:  Give me an alternate due date.  There's

```
 1    nothing magic about the 4th --
 2             MR. MADISON:  No, I'm fine with that day if you're
 3    fine.
 4             THE COURT:  Oh, I'm fine.
 5             MR. MADISON:  March 6th, 3:00 p.m.?
 6             THE COURT:  Yeah.
 7             MR. MADISON:  And then the second was you had asked
 8    for an update about the Ninth Circuit appeal.  We provided that
 9    in the --
10             THE COURT:  You did.  You did.
11             MR. MADISON:  We have our reply brief coming up
12    February 7, and the Circuit has asked us for argument, I
13    believe, in May or June.  So we're slowly making progress
14    there.
15             THE COURT:  Yeah, the Circuit is really moving along
16    these days.  All seats are filled and the majority of the
17    judges who have taken senior status are still active to some
18    extent.  So, I mean, they've got resources and they're putting
19    them to work.
20             Okay.
21             MR. MADISON:  Thank you for your patience,
22    Your Honor.
23             THE COURT:  Very good.  Thank you.
24             THE COURTROOM DEPUTY:  All rise.  This Court is
25    adjourned.
```

1     **(Proceedings concluded at 4:20 p.m.)**

2                        --oOo--

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          *CERTIFICATE OF OFFICIAL REPORTER*

2

3    COUNTY OF LOS ANGELES   )
                             )
4    STATE OF CALIFORNIA     )

5              I, DEBBIE HINO-SPAAN, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, in and for the United States District Court for

7    the Central District of California, do hereby certify that

8    pursuant to Section 753, Title 28, United States Code that the

9    foregoing is a true and correct transcript of the

10   stenographically reported proceedings held in the

11   above-entitled matter and that the transcript page format is in

12   conformance with the regulations of the Judicial Conference of

13   the United States.

14

15   *Date:  January 27, 2025*

16

17

18

19                              */S/ DEBBIE HINO-SPAAN*

20                              *Debbie Hino-Spaan, CSR No. 7953*
                                *Federal Official Court Reporter*

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

## /

**/S** [1] - 63:19

## 1

**1** [35] - 7:20, 9:2, 9:7, 9:13, 10:2, 10:3, 10:6, 11:18, 12:11, 13:25, 15:12, 21:13, 26:11, 26:18, 28:22, 33:22, 38:18, 45:15, 50:19, 50:24, 51:8, 51:21, 51:22, 52:2, 52:4, 52:10, 54:11, 54:14, 54:17, 54:22, 54:24, 55:2, 55:7, 55:9, 55:16
**1-053** [1] - 1:23
**10** [7] - 12:10, 13:10, 15:18, 46:24, 49:7, 58:1, 59:13
**108** [1] - 2:21
**10th** [1] - 3:22
**11** [3] - 58:2, 58:4, 59:13
**12** [1] - 49:18
**12-page** [5] - 23:5, 23:14, 53:6, 53:12, 54:3
**1201** [2] - 2:5, 3:4
**13** [3] - 25:7, 26:15, 28:7
**13th** [2] - 48:10, 48:14
**14** [1] - 13:12
**15** [3] - 24:25, 28:24, 29:5
**16-page** [1] - 49:14
**1650** [1] - 2:13
**19103** [1] - 2:14

## 2

**2** [16] - 5:7, 10:20, 10:22, 15:13, 16:25, 19:11, 45:15, 46:22, 46:24, 47:2, 47:10, 47:14, 51:8, 52:5, 54:23
**2,800** [1] - 9:6
**20** [1] - 24:18
**2023** [1] - 10:18
**2024** [1] - 24:2
**2025** [3] - 1:14, 5:1, 63:15
**206-442-1563** [1] - 3:6
**206-623-1900** [1] - 2:6
**21** [1] - 60:7
**213-239-5100** [1] - 3:15

**213-443-3150** [1] - 3:23
**213-892-7933** [1] - 2:18
**215-665-2071** [1] - 2:14
**22nd** [1] - 49:6
**23** [3] - 1:14, 5:1, 49:7
**26** [1] - 49:18
**27** [1] - 63:15
**28** [2] - 19:3, 63:8
**2800** [1] - 2:13
**290** [1] - 2:9

## 3

**3** [2] - 3:17, 4:5
**30** [5] - 9:23, 24:19, 28:10, 38:9, 41:22
**30(b)(6** [10] - 24:21, 26:4, 26:5, 26:12, 26:18, 27:1, 27:8, 38:18, 38:19, 40:16
**30(b)(6)s** [1] - 26:7
**300,000** [1] - 9:12
**312-222-9350** [1] - 3:11
**3300** [1] - 3:14
**3400** [2] - 2:5, 3:5
**353** [1] - 3:10
**3700** [1] - 2:17
**391** [1] - 2:21
**3:00** [1] - 61:5
**3:03** [2] - 1:15, 5:2
**3rd** [2] - 2:5, 3:4

## 4

**41** [1] - 44:16
**411** [1] - 1:23
**4:20** [1] - 62:1
**4th** [1] - 61:1
**4TH** [1] - 1:23

## 5

**5** [1] - 49:8
**5,000** [1] - 9:13
**515** [1] - 3:13
**536** [1] - 8:22
**5th** [1] - 49:4

## 6

**6** [1] - 36:22
**60** [1] - 29:23
**601** [1] - 2:17
**60654** [1] - 3:10
**6th** [3] - 15:2, 60:17, 61:5

## 7

**7** [2] - 22:13, 61:12
**714-241-4444** [2] - 2:18, 3:19, 4:6
**72** [1] - 9:4
**74** [4] - 9:23, 12:19, 13:5, 22:17
**753** [1] - 63:8
**7953** [2] - 1:22, 63:20

## 8

**8** [1] - 49:9
**818-708-1250** [1] - 2:10
**8550** [1] - 2:9
**865** [1] - 3:21

## 9

**9** [1] - 49:18
**90017** [1] - 2:18
**90017-2543** [1] - 3:22
**90071** [1] - 3:14
**91325** [1] - 2:10
**92701** [1] - 1:24
**92707** [2] - 3:18, 4:6
**92879** [1] - 2:22
**951-387-4700** [1] - 2:22
**98101** [2] - 2:6, 3:5
**9th** [2] - 3:18, 4:5

## A

**ability** [1] - 17:22
**able** [6] - 33:24, 40:19, 40:20, 42:16, 46:19, 48:20
**above-entitled** [1] - 63:11
**absent** [3] - 27:11, 28:12, 38:16
**absolutely** [1] - 21:2
**access** [1] - 33:12
**accommodate** [1] - 10:15
**accomplish** [1] - 55:22
**according** [1] - 58:6
**accusing** [1] - 21:2
**Ackeren** [1] - 6:25
**ACKEREN** [2] - 3:17, 6:24
**acknowledge** [2] - 21:9, 21:11
**action** [3] - 43:24, 45:10, 45:13
**actions** [1] - 57:10

**active** [1] - 61:17
**add** [1] - 56:14
**addition** [1] - 58:2
**additional** [2] - 28:17, 31:19
**address** [17] - 7:20, 11:1, 12:2, 12:14, 16:14, 23:24, 23:25, 26:4, 36:23, 37:6, 37:22, 38:13, 41:12, 45:5, 50:2, 50:3
**addressed** [4] - 27:14, 28:5, 49:2, 49:4
**addressing** [1] - 37:17
**adhere** [2] - 18:1, 53:9
**adhering** [1] - 17:4
**adjourned** [1] - 61:25
**admonition** [1] - 50:17
**admonitions** [1] - 17:5
**advance** [2] - 7:7, 29:24
**advise** [1] - 14:6
**affairs** [1] - 14:10
**affected** [1] - 7:25
**afternoon** [28] - 5:12, 5:14, 5:15, 5:17, 5:18, 5:21, 5:24, 6:2, 6:3, 6:4, 6:6, 6:7, 6:9, 6:10, 6:12, 6:13, 6:15, 6:16, 6:17, 6:20, 6:21, 6:24, 7:2, 7:3, 7:6, 7:21, 23:21, 42:10
**Afternoon** [1] - 6:23
**age** [2] - 8:18, 51:15
**agenda** [17] - 7:10, 7:11, 7:19, 8:2, 8:4, 8:13, 11:2, 23:22, 37:1, 43:9, 56:1
**agendas** [1] - 53:11
**ago** [4] - 10:18, 31:4, 42:16, 52:20
**agree** [15] - 17:14, 25:22, 26:8, 26:16, 26:20, 29:20, 30:9, 33:9, 34:5, 38:10, 42:18, 43:2, 48:17, 54:9, 60:4
**agreeable** [4] - 17:20, 19:16, 29:8, 38:21
**agreed** [9] - 15:4, 16:21, 17:4, 25:25, 30:14, 30:25, 31:6, 33:20, 39:25
**agreement** [6] - 26:25, 31:2, 37:13, 46:12, 46:16, 48:4
**agrees** [1] - 29:18
**ahead** [4] - 24:11, 36:17, 47:4, 47:15

**alignment** [1] - 38:16
**allege** [1] - 14:24
**alleged** [2] - 13:4, 56:8
**allow** [1] - 58:6
**allowed** [6] - 17:6, 17:8, 17:13, 31:13, 32:11, 47:8
**allowing** [3] - 58:6, 58:25, 59:1
**Allstate** [2] - 45:21
**almost** [2] - 9:21, 48:11
**ALSO** [1] - 4:9
**alternate** [1] - 60:25
**amazing** [1] - 37:24
**America** [4] - 6:15, 6:19
**American** [1] - 60:18
**amorphous** [1] - 38:6
**amount** [2] - 8:12, 44:5
**amounted** [1] - 9:6
**ANA** [3] - 1:15, 1:24, 5:1
**Ana** [2] - 3:18, 4:6
**analysis** [1] - 21:25
**AND** [1] - 1:6
**Andler** [49] - 11:24, 13:7, 13:22, 14:16, 14:19, 15:17, 16:10, 16:21, 17:4, 22:10, 24:8, 26:4, 28:5, 29:9, 29:13, 29:21, 34:3, 34:4, 34:8, 35:8, 36:15, 36:19, 37:13, 39:20, 39:21, 39:24, 40:1, 40:7, 41:12, 43:6, 43:14, 43:20, 47:24, 48:2, 48:15, 48:20, 49:3, 49:17, 50:3, 50:11, 51:2, 51:17, 51:25, 53:5, 53:10, 53:16, 55:23, 60:7, 60:8
**Andler's** [8] - 14:11, 16:2, 16:6, 23:8, 23:14, 34:4, 42:17, 44:24
**Angeles** [4] - 2:18, 3:14, 3:22, 19:24
**ANGELES** [1] - 63:3
**animated** [1] - 8:11
**announced** [1] - 30:11
**answer** [5] - 12:18, 20:14, 25:9, 25:12, 54:2
**APC** [1] - 2:8
**APLC** [2] - 3:16, 4:4
**appeal** [13] - 17:12, 31:15, 31:16, 31:25,

32:2, 32:3, 32:6, 32:20, 33:3, 33:10, 33:11, 33:19, 61:8
**APPEARANCES** [3] - 2:1, 3:1, 4:1
**appearances** [1] - 5:9
**apple** [1] - 17:19
**application** [7] - 43:19, 58:10, 58:20, 59:7, 59:9, 59:16, 60:4
**apply** [1] - 59:4
**appointment** [3] - 13:11, 13:15, 53:10
**appreciate** [3] - 18:11, 54:1, 55:15
**appreciation** [1] - 7:16
**approach** [2] - 14:3, 36:20
**appropriate** [12] - 9:9, 9:19, 14:3, 14:7, 34:25, 36:21, 44:18, 48:21, 53:14, 53:25, 58:17, 59:8
**appropriately** [1] - 35:8
**approval** [2] - 13:16, 15:3
**approximate** [1] - 24:19
**April** [2] - 14:21, 24:24
**area** [1] - 39:1
**argue** [2] - 23:10, 33:10
**argument** [4] - 42:2, 49:1, 56:6, 61:12
**arrangements** [1] - 28:17
**aside** [2] - 28:20, 52:13
**aspect** [1] - 23:6
**aspects** [1] - 35:24
**assess** [1] - 29:17
**assesses** [1] - 35:22
**assign** [1] - 36:3
**assigning** [1] - 44:8
**assistance** [1] - 44:24
**assistant** [1] - 34:4
**AT** [5] - 2:4, 2:8, 2:16, 2:20, 3:13
**attack** [2] - 8:17, 51:14
**attempt** [1] - 15:11
**attempted** [1] - 22:8
**attitude** [1] - 50:1
**ATTORNEY** [5] - 2:4, 2:8, 2:16, 2:20, 3:13
**attributed** [1] - 15:10
**August** [3] - 24:9, 24:25, 29:5
**auto** [1] - 36:4

**available** [3] - 21:23, 24:12, 36:18
**Avenue** [2] - 2:5, 3:4
**avoid** [1] - 55:16
**await** [1] - 13:24

**B**

**Balboa** [1] - 2:9
**ball** [1] - 22:9
**bargaining** [1] - 44:17
**barometer** [1] - 9:10
**based** [1] - 56:5
**basis** [1] - 9:11
**bearing** [1] - 24:24
**become** [1] - 13:17
**begin** [2] - 7:18, 28:20
**behalf** [11] - 5:12, 5:15, 5:25, 6:5, 6:8, 6:11, 6:14, 6:18, 6:22, 6:25, 7:4
**bellwether** [1] - 10:21, 22:4, 52:14
**bellwethers** [5] - 13:24, 14:8, 52:7, 52:10, 55:19
**belonged** [1] - 16:25
**Benson** [4] - 5:15, 23:25, 48:8, 50:7
**BENSON** [10] - 2:8, 2:8, 5:15, 42:10, 43:1, 43:5, 43:9, 44:20, 45:1, 50:8
**Berger** [4] - 4:10, 6:11
**best** [2] - 22:9, 40:7
**better** [1] - 34:13
**between** [5] - 19:23, 25:15, 39:2, 41:15, 53:16
**beyond** [1] - 7:25
**bit** [1] - 12:12
**bite** [1] - 17:19
**Blaine** [2] - 6:22, 6:25
**BLAINE** [2] - 3:16, 4:4
**Block** [2] - 6:18, 7:4
**BLOCK** [2] - 3:9, 3:12
**board** [1] - 12:12
**bolded** [1] - 8:21
**bolds** [1] - 8:24
**book** [2] - 28:16, 38:3
**booked** [2] - 11:22, 11:24
**bottom** [1] - 11:25
**Boulevard** [1] - 2:9
**breach** [1] - 49:25
**breadth** [2] - 59:4, 59:7
**BRENNAN** [38] - 3:9, 6:17, 30:6, 30:8, 30:21, 30:24, 31:5,

31:8, 32:6, 32:8, 32:19, 32:22, 32:25, 39:3, 39:5, 39:11, 40:9, 40:14, 45:4, 45:12, 45:16, 45:20, 46:3, 46:6, 46:14, 46:24, 47:2, 47:12, 57:14, 57:25, 58:4, 58:13, 58:18, 58:23, 59:11, 59:18, 59:20, 60:1
**Brennan** [7] - 6:18, 37:25, 38:13, 40:4, 45:3, 53:4, 56:12
**brevity** [1] - 8:4
**brief** [4] - 11:20, 13:20, 20:22, 61:11
**briefed** [1] - 58:5
**briefing** [2] - 23:11, 53:25
**briefly** [3] - 22:22, 50:8, 60:3
**bring** [3] - 26:1, 37:13, 38:14
**broad** [1] - 26:13
**brought** [2] - 24:8, 35:6
**bunch** [2] - 34:24, 57:6
**business** [1] - 14:13
**BY** [4] - 3:4, 3:17, 3:21, 4:4

**C**

**CA** [1] - 1:24
**cake** [3] - 17:16, 18:19, 31:21
**California** [8] - 2:10, 2:18, 2:22, 3:14, 3:18, 3:22, 4:6, 63:7
**CALIFORNIA** [4] - 1:2, 1:15, 5:1, 63:4
**Callahan** [2] - 6:22, 6:25
**CALLAHAN** [2] - 3:16, 4:4
**cannot** [2] - 52:2, 60:5
**capable** [1] - 53:10
**CAPPIO** [23] - 2:4, 5:18, 7:21, 8:19, 9:11, 11:5, 20:18, 20:22, 23:16, 31:3, 50:16, 51:16, 51:20, 51:25, 52:7, 52:15, 53:1, 54:7, 54:16, 54:25, 55:4, 55:15, 55:24
**Cappio** [5] - 5:19, 7:22, 31:1, 41:9,

50:15
**car** [1] - 21:23
**Case** [1] - 1:6
**case** [7] - 13:21, 14:20, 19:24, 20:3, 27:16, 32:12, 49:22
**cases** [3] - 10:18, 19:2, 21:23
**categories** [3] - 10:15, 36:1, 50:20
**causes** [1] - 43:24
**Central** [1] - 63:7
**CENTRAL** [1] - 1:2
**Centre** [2] - 3:17, 4:5
**certain** [4] - 13:3, 41:9, 44:11, 51:15
**certainly** [4] - 33:9, 43:5, 47:5, 48:9
**CERTIFICATE** [1] - 63:1
**Certified** [1] - 1:5
**certify** [1] - 63:7
**chalk** [1] - 20:24
**chance** [4] - 39:6, 40:4, 55:8, 58:16
**characterize** [1] - 54:23
**charged** [2] - 22:7, 35:22
**cherry** [1] - 23:5
**cherry-picking** [1] - 23:5
**Chicago** [1] - 3:10
**choose** [1] - 14:7
**chose** [1] - 17:11
**Circuit** [3] - 61:8, 61:12, 61:15
**circumstances** [1] - 20:6
**citations** [1] - 27:17
**cites** [1] - 14:20
**cities** [1] - 13:6
**city** [2] - 14:6, 14:24
**claim** [7] - 12:25, 43:10, 44:7, 45:23, 46:7, 46:9
**claims** [15] - 43:17, 43:23, 43:24, 43:25, 44:11, 44:18, 45:6, 47:3, 47:17, 49:21, 50:9, 50:10, 52:12, 52:13, 58:11
**clarification** [1] - 37:18
**clarity** [2] - 19:12, 38:20
**Clark** [1] - 3:10
**cleaning** [1] - 54:22
**clear** [14] - 21:19, 27:16, 30:18, 31:12,

33:1, 33:16, 34:10, 35:17, 40:14, 44:2, 51:18, 54:9, 57:12, 58:23
**clearly** [1] - 52:7
**clients** [2] - 17:7, 17:20
**clients'** [1] - 18:12
**close** [3] - 9:4, 14:13, 54:24
**closed** [2] - 9:15, 52:22
**co** [1] - 25:17
**co-counsel** [1] - 25:17
**Code** [1] - 63:8
**cold** [1] - 32:5
**colleagues** [2] - 20:10, 20:21
**colleagues'** [1] - 7:23
**College** [1] - 60:18
**collision** [1] - 36:2
**colloquy** [1] - 53:4
**coming** [2] - 33:22, 61:11
**comments** [3] - 21:4, 23:5, 47:21
**committed** [1] - 21:21
**common** [1] - 22:11
**communications** [1] - 49:19
**communities** [1] - 8:1
**comp** [1] - 52:12
**companies** [3] - 11:14, 11:16, 17:10
**companies'** [1] - 15:8
**company** [6] - 15:10, 15:23, 16:18, 19:6, 41:22, 41:23
**compared** [1] - 9:13
**compel** [9] - 10:9, 12:12, 19:18, 19:19, 23:7, 54:4, 54:19, 55:2, 55:7
**complaining** [1] - 41:1
**Complaint** [1] - 12:21
**complaint** [1] - 22:18
**complaints** [1] - 59:2
**Complaints** [1] - 14:20
**complete** [5] - 29:2, 29:4, 48:4, 48:16, 58:24
**completely** [3] - 36:14, 48:9, 53:7
**complexity** [1] - 59:15
**compliance** [4] - 48:17, 54:20, 54:21
**complicated** [1] - 59:19
**complied** [2] - 48:9,

55:17
**comply** [1] - 14:14
**component** [1] - 12:11
**components** [1] - 11:19
**comprehensive** [2] - 36:2, 48:13
**compromise** [1] - 31:24
**conceded** [1] - 16:23
**concepts** [1] - 58:8
**concern** [1] - 10:19
**concerned** [2] - 25:4, 32:13
**concerns** [2] - 27:5, 53:19
**conclude** [2] - 56:16, 56:19
**concluded** [1] - 62:1
**concluding** [1] - 52:9
**conclusion** [1] - 13:25
**conclusory** [1] - 23:13
**concrete** [1] - 57:11
**conducting** [1] - 26:21
**confer** [15] - 24:10, 25:6, 26:15, 28:7, 30:22, 35:17, 42:12, 42:15, 42:20, 47:24, 48:8, 48:11, 48:13, 48:21, 52:19
**Conference** [1] - 63:12
**CONFERENCE** [1] - 1:14
**conference** [6] - 15:2, 16:10, 23:9, 48:1, 58:18, 60:17
**conferred** [1] - 48:17
**conferring** [1] - 42:14
**confirm** [1] - 24:4
**confirmations** [1] - 38:12
**conflict** [1] - 24:13
**conformance** [1] - 63:12
**confounded** [1] - 19:1
**confused** [1] - 43:23
**connection** [1] - 15:21
**consensus** [1] - 8:6
**consider** [2] - 24:1, 42:6
**consideration** [1] - 53:24
**CONSISAR** [1] - 7:3
**consistent** [2] - 45:8, 47:19
**consolidated** [1] - 12:21
**consulting** [1] - 35:4
**contained** [1] - 15:16

**continually** [2] - 25:14, 55:18
**continue** [7] - 16:4, 25:19, 27:13, 31:15, 32:2, 33:10, 52:3
**Continued** [2] - 3:1, 4:1
**continues** [1] - 14:3
**convince** [1] - 57:1
**Conwisar** [1] - 7:3
**CONWISAR** [1] - 3:13
**cooperation** [1] - 20:1
**cooperative** [1] - 19:23
**coordinate** [5] - 19:15, 20:8, 25:19, 27:11, 38:1
**coordinated** [1] - 25:21
**coordination** [6] - 17:5, 25:15, 26:2, 30:18, 40:22, 40:23
**Corona** [1] - 2:22
**corporate** [1] - 27:2
**Corporation** [2] - 33:17
**correct** [8] - 15:14, 20:23, 30:21, 44:4, 45:16, 55:9, 55:10, 63:9
**correctly** [1] - 46:15
**Counsel** [2] - 12:17, 14:18
**COUNSEL** [3] - 2:1, 3:1, 4:1
**counsel** [13] - 5:9, 13:12, 17:3, 19:14, 20:4, 20:15, 21:6, 25:6, 25:17, 25:21, 26:16, 48:11, 49:2
**countless** [1] - 38:1
**country** [1] - 19:25
**COUNTY** [1] - 63:3
**couple** [4] - 20:19, 21:4, 47:21, 59:12
**course** [3] - 15:14, 18:9, 35:4
**COURT** [134] - 1:1, 1:23, 5:14, 5:17, 5:21, 5:24, 6:3, 6:6, 6:9, 6:12, 6:16, 6:20, 6:23, 7:2, 7:6, 8:18, 9:9, 11:3, 11:6, 11:8, 11:22, 11:24, 12:3, 12:7, 12:9, 12:16, 14:1, 16:14, 16:20, 17:21, 17:24, 18:2, 18:7, 18:10, 18:14, 18:21, 18:24, 19:18, 20:9, 20:13,

20:16, 20:20, 22:21, 23:19, 27:22, 28:1, 29:12, 29:16, 30:5, 30:7, 30:19, 30:23, 31:7, 32:5, 32:7, 32:10, 32:21, 32:24, 37:5, 37:8, 38:22, 39:4, 39:9, 40:5, 40:13, 41:18, 42:8, 42:19, 43:4, 43:8, 44:17, 44:25, 45:2, 45:11, 45:15, 45:19, 46:2, 46:5, 46:11, 46:21, 47:1, 47:10, 48:19, 48:24, 50:6, 50:14, 50:25, 51:4, 51:7, 51:10, 51:12, 51:14, 51:19, 51:24, 52:6, 52:9, 52:25, 53:2, 53:14, 53:18, 53:24, 54:5, 54:15, 54:18, 55:3, 55:12, 55:21, 56:12, 56:16, 56:19, 56:23, 57:9, 57:23, 58:3, 58:9, 58:15, 58:20, 59:6, 59:15, 59:19, 59:24, 60:2, 60:9, 60:12, 60:16, 60:21, 60:25, 61:4, 61:6, 61:10, 61:15, 61:23, 63:6
**Court** [10] - 9:2, 23:25, 30:11, 32:15, 33:6, 50:4, 54:13, 61:24, 63:6, 63:20
**court** [6] - 16:4, 19:5, 19:11, 19:13, 25:18, 28:12
**Court's** [2] - 10:17, 23:24
**courtroom** [1] - 7:24
**COURTROOM** [2] - 5:5, 61:24
**covered** [1] - 48:12
**cows** [1] - 55:17
**COZEN** [2] - 2:12, 2:16
**Cozen** [2] - 5:11, 6:7
**CRC** [1] - 1:22
**created** [1] - 13:1
**credit** [1] - 16:23
**crimes** [11] - 12:23, 13:4, 14:5, 14:24, 21:3, 21:13, 21:16, 21:21, 22:7, 22:11
**cross** [1] - 25:7
**cross-examining** [1] - 25:7
**CRR** [1] - 1:22
**CSR** [2] - 1:22, 63:20

**custodian** [3] - 24:20, 26:5, 26:7
**cut** [2] - 52:10, 57:6
**cutoff** [4] - 15:25, 16:3, 24:25, 29:6

# D

**dad** [1] - 8:16
**damages** [5] - 43:25, 44:2, 45:7, 45:24, 47:19
**data** [6] - 13:6, 21:7, 22:5, 22:7, 22:12
**Date** [1] - 63:15
**date** [9] - 15:3, 22:23, 24:25, 29:14, 36:15, 36:17, 39:25, 51:12, 60:25
**dates** [18] - 9:1, 11:9, 15:23, 24:11, 24:12, 24:13, 24:14, 25:10, 25:21, 25:25, 28:16, 28:20, 30:2, 36:15, 36:18, 38:11, 52:20
**days** [4] - 9:23, 13:12, 52:20, 61:16
**days'** [1] - 29:23
**de** [1] - 54:20
**dead** [1] - 51:12
**deadlines** [5] - 8:16, 8:21, 8:22, 8:24, 10:17
**deal** [1] - 34:22
**DEBBIE** [3] - 1:22, 63:5, 63:19
**Debbie** [1] - 63:20
**December** [2] - 10:23, 21:13
**decide** [2] - 46:20, 50:23
**decision** [1] - 13:24
**declaration** [1] - 9:8
**defendant** [6] - 10:10, 15:23, 20:23, 24:5, 38:24, 38:25
**DEFENDANTS** [2] - 3:8, 4:3
**defendants** [28] - 6:14, 6:19, 6:22, 6:25, 7:4, 8:25, 9:13, 10:1, 10:3, 10:14, 11:10, 21:15, 24:3, 24:10, 24:17, 24:21, 25:22, 26:1, 27:13, 27:16, 29:7, 41:25, 43:9, 43:22, 44:1, 44:2, 55:7, 58:11
**defendants'** [9] - 8:8, 10:9, 11:3, 11:12,

22:25, 28:9, 49:9, 50:22, 56:8
**defense** [4] - 25:6, 26:15, 42:15, 57:2
**defenses** [4] - 49:10, 49:21, 56:9, 57:8
**deficient** [1] - 53:7
**define** [1] - 21:16
**delay** [3] - 10:20, 11:8, 11:10
**delaying** [1] - 21:2
**demurrer** [1] - 19:11
**deny** [2] - 55:14, 56:21
**denying** [2] - 58:24, 58:25
**Dep** [2] - 26:6, 27:1
**departments** [1] - 21:20
**deponents** [1] - 13:20
**depos** [2] - 13:5, 15:9
**depose** [1] - 11:14
**deposed** [2] - 9:18, 30:10
**Deposition** [8] - 24:20, 24:22, 26:5, 26:13, 26:19, 38:19, 38:20, 38:24
**deposition** [33] - 16:22, 17:3, 17:15, 17:17, 17:21, 19:6, 22:16, 23:17, 25:9, 25:23, 25:24, 26:10, 27:6, 27:8, 27:18, 27:23, 28:3, 29:18, 31:13, 32:12, 32:14, 32:17, 32:23, 33:14, 34:23, 37:4, 40:19, 40:20, 41:10, 41:11, 42:3
**depositions** [86] - 9:1, 10:8, 10:12, 11:8, 11:12, 11:21, 15:10, 15:12, 15:24, 16:8, 16:18, 19:15, 20:4, 20:7, 20:23, 22:25, 23:22, 23:24, 24:2, 24:4, 24:7, 24:11, 24:17, 24:18, 24:19, 24:23, 25:4, 25:10, 25:14, 25:20, 25:23, 27:2, 27:4, 27:7, 27:10, 27:15, 28:7, 28:10, 28:15, 28:17, 28:18, 28:23, 28:25, 29:1, 29:3, 29:5, 29:11, 29:22, 29:23, 30:1, 30:3, 31:12, 31:19, 33:21, 33:24, 33:25, 34:15, 34:21, 34:24, 35:10, 36:6,

36:10, 36:12, 37:2,
37:9, 37:12, 37:23,
38:1, 38:3, 38:10,
39:2, 39:8, 39:13,
39:15, 39:17, 39:18,
40:12, 40:16, 41:1,
41:4, 41:21, 41:22,
41:24, 41:25, 43:6
**DEPUTY** [2] - 5:5,
61:24
**described** [2] - 11:21,
12:20
**describing** [1] - 53:4
**designee** [1] - 13:5
**designees** [4] - 9:20,
9:24, 10:9, 12:19
**despite** [1] - 27:13
**detail** [1] - 40:15
**detailed** [1] - 49:14
**detective** [1] - 22:1
**determine** [1] - 42:24
**dhinospaan@yahoo.
com** [1] - 1:24
**Diane** [1] - 6:4
**DIANE** [1] - 2:20
**Diego** [2] - 19:5, 19:12
**difference** [3] - 8:11,
8:13, 59:14
**different** [23] - 9:17,
21:10, 24:25, 26:22,
27:5, 33:3, 34:14,
34:16, 34:17, 34:18,
35:24, 35:25, 36:1,
56:6, 58:1, 58:7,
58:8, 59:13, 59:14
**difficult** [1] - 21:18
**diligence** [1] - 24:14
**directed** [3] - 11:13,
29:21, 43:20
**direction** [2] - 19:13,
39:19
**directions** [1] - 40:5
**disadvantage** [1] -
14:4
**disagree** [3] - 16:9,
31:9, 49:3
**disagreement** [2] -
15:25, 16:1
**disapproved** [1] - 53:8
**discoverable** [1] -
43:11
**discovery** [58] - 7:20,
8:6, 8:12, 9:2, 9:4,
9:14, 10:3, 10:7,
10:10, 10:20, 11:4,
11:19, 11:20, 12:11,
12:15, 13:19, 14:2,
14:21, 15:6, 16:5,
16:6, 16:7, 17:5,
18:13, 23:23, 24:25,

25:1, 26:12, 26:23,
28:21, 29:4, 29:6,
32:4, 33:15, 33:23,
34:12, 35:18, 36:9,
36:24, 37:2, 37:7,
37:22, 41:2, 42:11,
43:13, 44:19, 47:23,
49:20, 49:24, 52:11,
52:12, 52:22, 53:7,
57:7, 57:20, 57:23,
58:25, 60:6
**discrete** [2] - 10:25,
21:12
**discuss** [7] - 42:16,
43:3, 43:14, 43:21,
44:9, 58:18, 60:9
**discussion** [3] -
29:12, 37:4, 42:20
**dismiss** [3] - 9:18,
43:23, 45:6
**dismissal** [2] - 11:15,
44:18
**dismissed** [10] -
45:24, 46:7, 46:9,
46:20, 46:22, 46:25,
47:2, 47:7, 47:8,
47:16
**dismissing** [2] - 43:24
**disposition** [1] - 53:20
**dispositive** [2] - 56:25
**disputes** [3] - 14:22,
16:7, 44:19
**distort** [1] - 36:8
**District** [2] - 63:6, 63:7
**DISTRICT** [3] - 1:1,
1:2, 1:3
**DIVISION** [1] - 1:2
**Docket** [1] - 8:22
**docket** [1] - 54:6
**document** [2] - 7:13,
9:3
**Document** [1] - 49:8
**documentation** [1] -
35:19
**documents** [15] -
9:13, 21:15, 24:17,
25:22, 27:12, 33:12,
34:17, 38:17, 43:10,
43:17, 44:23, 49:19,
50:10, 55:10, 60:7
**done** [1] - 13:8,
15:24, 19:16, 22:9,
29:21, 42:24, 48:20,
51:12, 52:2, 52:4,
55:8
**door** [1] - 12:17
**down** [5] - 18:18,
19:12, 30:16, 35:9,
40:25
**draft** [2] - 10:14, 18:2

**drafted** [1] - 33:1
**drag** [1] - 51:22
**dragged** [1] - 10:1
**dramatic** [1] - 8:13
**draw** [1] - 50:23
**Drive** [2] - 3:17, 4:5
**drop** [2] - 31:25, 51:12
**drop-dead** [1] - 51:12
**dropped** [2] - 46:16
**dropping** [1] - 31:15
**due** [2] - 10:4, 60:25
**duplication** [2] - 26:7,
27:12
**duplicative** [2] -
17:14, 27:1
**duration** [2] - 28:3,
28:18
**during** [4] - 26:15,
28:7, 31:8, 57:23

## E

**early** [8] - 8:2, 8:5,
21:1, 22:2, 58:8
**easier** [1] - 57:11
**eat** [3] - 17:16, 18:19,
18:21
**eating** [1] - 31:22
**Edward** [1] - 6:21
**EDWARD** [1] - 4:4
**efeldman@cozen.
com** [1] - 2:15
**effect** [1] - 31:3
**efforts** [1] - 11:13
**eight** [3] - 24:2, 24:3,
24:16
**either** [1] - 26:3
**Elliott** [2] - 5:11, 56:1
**ELLIOTT** [1] - 2:12
**email** [1] - 31:3
**EMANUEL** [1] - 3:20
**Emanuel** [1] - 6:14
**end** [6] - 17:12, 33:22,
51:21, 51:22, 54:14,
54:17
**endeavor** [1] - 8:9
**endless** [1] - 55:16
**ends** [1] - 54:24
**energy** [1] - 15:9
**enforce** [2] - 16:5,
52:17
**engage** [2] - 28:20,
29:22
**engaged** [1] - 39:6
**entails** [1] - 31:14
**entered** [6] - 11:15,
18:15, 19:7, 45:8,
45:9, 52:17
**entering** [1] - 44:3

**entertain** [2] - 56:4,
59:8
**entirely** [1] - 38:25
**entities** [3] - 9:7,
33:18, 52:11
**entitled** [3] - 28:12,
44:3, 63:11
**entity** [9] - 5:19, 5:23,
6:1, 7:19, 7:22, 9:12,
9:16, 21:10, 52:16
**equitable** [2] - 38:9,
56:9
**equities** [1] - 49:12
**es@callahan** [1] - 4:7
**es@callahan-law.
com** [1] - 4:7
**especially** [1] - 9:20
**ESQ** [6] - 2:12, 3:4,
3:9, 3:17, 3:21, 4:4
**essentially** [1] - 26:17
**evade** [1] - 46:1
**events** [1] - 32:15
**eventually** [1] - 54:13
**exactly** [9] - 12:1,
29:10, 29:21, 31:21,
35:8, 37:13, 45:16,
48:22, 53:3
**examine** [4] - 17:10,
17:13, 17:22, 17:23
**examining** [1] - 25:7
**example** [2] - 36:2,
45:21
**excellent** [1] - 27:25
**except** [1] - 45:18
**exchanged** [1] - 50:18
**excuse** [1] - 38:14
**executed** [1] - 54:19
**exhibits** [1] - 17:9
**exist** [1] - 26:2
**exists** [2] - 13:2, 13:6
**expect** [4] - 13:17,
16:11, 20:4, 39:9
**expected** [1] - 7:14
**expedited** [1] - 52:1
**experience** [1] - 19:22
**expert** [2] - 44:6
**explain** [1] - 49:25
**explained** [1] - 21:18
**extending** [1] - 29:6
**extension** [5] - 10:2,
10:4, 10:15, 50:19,
50:23
**extensive** [1] - 30:24
**extent** [2] - 37:17,
61:18

## F

**fact** [13] - 8:15, 10:10,
10:13, 11:19, 13:18,

21:2, 31:6, 33:15,
35:25, 36:3, 36:15,
39:17, 56:5
**fact-based** [1] - 56:5
**facto** [1] - 54:20
**facts** [2] - 21:11, 59:5
**fair** [3] - 13:9, 56:22,
57:13
**fairly** [1] - 58:21
**fairness** [1] - 42:21
**false** [1] - 21:2
**far** [3] - 32:13, 44:10,
50:17
**fashion** [1] - 52:10
**fast** [1] - 28:8
**favor** [1] - 23:6
**feat** [1] - 9:19
**February** [5] - 24:24,
28:22, 28:24, 38:7,
61:12
**federal** [3] - 8:23,
9:21, 19:3
**FEDERAL** [2] - 1:23,
63:5
**Federal** [1] - 63:20
**feet** [1] - 10:1
**FELDMAN** [16] - 2:12,
5:11, 23:21, 27:25,
28:2, 29:14, 29:20,
36:25, 37:6, 37:16,
37:20, 38:23, 55:25,
56:22, 57:3, 57:13
**Feldman** [10] - 5:11,
20:9, 20:21, 23:19,
30:12, 34:2, 34:5,
35:13, 48:3, 56:1
**Feldman's** [1] - 42:2
**felt** [1] - 25:7
**fewer** [1] - 47:17
**field** [1] - 22:12
**Figueroa** [2] - 2:17,
3:21
**figure** [3] - 35:23,
39:20, 40:11
**file** [13] - 43:17, 51:20,
55:1, 55:7, 55:8,
55:12, 56:10, 57:16,
58:9, 58:10, 59:1,
59:2
**filed** [6] - 8:5, 10:18,
35:4, 50:10, 54:12,
55:5
**filing** [2] - 56:2, 57:17
**filled** [3] - 25:11,
43:19, 61:16
**filter** [1] - 58:16
**final** [2] - 53:20, 55:25
**finally** [1] - 30:25
**fine** [8] - 17:9, 36:21,
37:16, 50:25, 51:19,

61:2, 61:3, 61:4
**finished** [1] - 42:13
**fires** [1] - 7:25
**firm** [1] - 19:14
**first** [25] - 7:23, 10:17, 12:11, 13:18, 16:18, 18:8, 30:1, 30:8, 30:11, 31:5, 37:24, 40:15, 44:21, 45:18, 45:23, 45:25, 46:4, 46:13, 46:17, 47:6, 48:7, 57:16, 58:10
**flavor** [1] - 34:13
**Floor** [3] - 3:18, 3:22, 4:5
**Flower** [1] - 3:13
**focus** [1] - 23:2
**folks** [2] - 7:19, 18:7
**follow** [1] - 27:10
**footage** [1] - 21:25
**FOR** [4] - 2:3, 3:2, 3:8, 4:3
**force** [1] - 20:1
**foregoing** [1] - 63:9
**foreign** [5] - 10:12, 17:10, 18:13, 20:6, 23:17
**forensic** [1] - 21:25
**forget** [1] - 36:17
**format** [1] - 63:11
**forth** [3] - 43:18, 48:3, 51:21
**forward** [5] - 8:9, 15:20, 29:17, 32:11, 48:5
**foundational** [3] - 26:12, 26:14, 27:3
**four** [1] - 38:23
**frank** [1] - 51:18
**frankly** [5] - 15:9, 22:16, 36:10, 37:21, 55:20
**Friday** [6] - 8:2, 9:5, 35:5, 52:18, 52:21, 53:1
**friends** [1] - 7:24
**front** [3] - 12:4, 51:2, 57:11
**full** [7] - 17:17, 32:4, 35:11, 38:16, 48:16, 57:15, 58:24
**fully** [3] - 15:8, 33:4, 48:9
**functions** [1] - 52:9
**fundamental** [1] - 60:5
**fundamentally** [1] - 49:3
**future** [1] - 38:6

## G

**game** [1] - 29:9
**gcappio@ kellerrohrback.com** - 2:7
**GE** [29] - 6:14, 8:8, 10:9, 11:11, 15:11, 17:11, 19:4, 25:1, 25:15, 25:17, 25:21, 26:6, 26:8, 26:11, 26:18, 27:1, 27:8, 33:23, 35:3, 36:16, 38:18, 41:2, 41:8, 50:18, 50:22, 53:6, 55:17
**general** [2] - 42:22, 50:12
**given** [3] - 19:10, 28:13, 36:11
**Government** [1] - 7:22
**government** [2] - 5:23, 7:18
**governmental** [7] - 5:19, 6:1, 9:7, 9:11, 9:16, 21:9, 52:16
**granted** [2] - 23:7, 59:17
**granting** [1] - 12:12
**graph** [1] - 22:18
**great** [1] - 25:16
**GRETCHEN** [1] - 2:4
**Gretchen** [3] - 5:18, 7:21, 25:17
**group** [1] - 52:14
**guess** [2] - 14:13, 29:16
**guessed** [1] - 8:4
**guidance** [11] - 14:21, 15:21, 39:12, 40:5, 40:6, 40:8, 48:23, 51:5, 53:21, 54:13
**GUSSIN** [2] - 4:11, 5:25
**Gussin** [1] - 5:25

## H

**HANS** [1] - 4:10
**Hans** [1] - 6:10
**happy** [5] - 10:7, 10:25, 11:1, 20:14, 23:10
**hard** [1] - 18:18
**head** [1] - 23:18
**health** [1] - 10:19
**hear** [14] - 11:3, 18:7, 18:23, 18:25, 20:20, 23:16, 23:19, 37:8, 37:24, 38:13, 39:9,

39:12, 51:9, 52:23
**heard** [11] - 20:18, 27:22, 30:6, 31:10, 39:3, 39:7, 40:24, 48:3, 54:2, 57:14, 57:18
**hearing** [7] - 7:8, 19:11, 30:14, 40:1, 40:16, 54:2, 56:3
**heart** [3] - 7:23, 8:17, 51:14
**held** [1] - 63:10
**help** [1] - 42:17
**helpful** [2] - 7:9, 7:15
**helps** [1] - 7:13
**HERB** [2] - 4:10, 6:10
**Herb** [1] - 6:11
**hereby** [1] - 63:7
**herring** [1] - 26:2
**hiding** [1] - 22:9
**highest** [1] - 43:6
**highlight** [1] - 8:14
**highlighted** [1] - 8:15
**Hino** [1] - 63:20
**HINO** [3] - 1:22, 63:5, 63:19
**Hino-Spaan** [1] - 63:20
**HINO-SPAAN** [3] - 1:22, 63:5, 63:19
**HMA** [1] - 11:10
**HMC** [4] - 31:12, 33:14, 33:15, 33:16
**holidays** [1] - 9:21
**home** [2] - 55:6, 55:17
**homework** [1] - 48:21
**Honor** [123] - 5:13, 5:18, 6:4, 6:10, 6:13, 6:17, 6:21, 6:24, 7:21, 8:3, 8:7, 8:19, 9:8, 9:24, 10:8, 10:22, 10:24, 11:2, 11:5, 11:18, 11:20, 11:23, 12:6, 13:6, 13:11, 13:13, 13:23, 14:6, 14:7, 14:12, 14:16, 15:2, 15:6, 15:17, 16:13, 16:16, 17:20, 18:1, 18:4, 18:11, 18:25, 19:4, 19:16, 20:2, 20:12, 20:18, 20:22, 22:18, 22:20, 22:22, 23:9, 23:11, 23:16, 23:21, 25:2, 25:8, 25:16, 26:3, 27:14, 28:25, 30:4, 30:6, 32:2, 32:9, 32:20, 34:11, 36:25, 37:16, 37:17, 38:23, 39:3, 40:9,

41:17, 41:20, 42:7, 44:20, 45:4, 45:16, 46:15, 48:7, 48:22, 49:14, 50:5, 50:8, 50:16, 50:21, 50:23, 51:2, 51:9, 51:11, 51:16, 52:1, 52:8, 52:15, 52:17, 53:3, 53:5, 53:12, 53:17, 53:23, 54:8, 54:16, 54:25, 55:16, 55:24, 56:3, 56:15, 56:18, 56:22, 57:4, 57:13, 57:14, 58:19, 59:11, 59:21, 59:22, 60:1, 60:3, 60:14, 60:20, 60:24, 61:22
**Honor's** [10] - 8:16, 8:22, 13:16, 14:20, 15:3, 15:8, 15:21, 17:4, 27:11, 27:16
**HONORABLE** [1] - 1:3
**hope** [3] - 14:9, 15:1, 19:9
**hoping** [1] - 39:11
**hour** [2] - 8:4, 8:5
**hours** [4] - 9:14, 21:4, 28:3, 48:11
**housekeeping** [2] - 60:14, 60:16
**Hutton** [2] - 3:17, 4:5
**Hyundai** [6] - 5:7, 6:15, 6:19, 12:20, 22:1, 33:16
**HYUNDAI** [1] - 1:5
**Hyundais** [1] - 14:23

## I

**IDC** [2] - 48:15, 48:23
**idea** [1] - 8:7
**identified** [4] - 12:21, 24:4, 24:18, 26:18
**identify** [2] - 12:23, 21:18
**identifying** [3] - 9:19, 21:12, 52:10
**Illinois** [1] - 3:10
**immediate** [2] - 7:16, 51:1
**immediately** [3] - 13:10, 14:11, 38:4
**immobilizers** [2] - 14:23, 35:19
**impact** [1] - 60:21
**impacts** [1] - 60:19
**impermissible** [1] - 57:7
**implement** [1] - 10:24
**important** [1] - 25:5

**IN** [1] - 1:5
**inadequacy** [1] - 52:3
**inappropriate** [2] - 36:14, 55:13
**incident** [3] - 21:21, 22:7, 22:12
**inclination** [1] - 44:22
**included** [2] - 9:20, 24:19
**including** [1] - 49:10
**incomplete** [2] - 22:15, 36:5
**independence** [1] - 53:18
**indicated** [2] - 13:23, 36:22
**individual** [5] - 25:19, 30:10, 33:21, 40:20, 52:13
**individuals** [2] - 41:5, 46:17
**information** [5] - 14:15, 36:11, 36:13, 43:18, 49:21
**informed** [2] - 10:3, 13:14
**inordinate** [1] - 44:5
**insight** [1] - 16:2
**insisted** [1] - 19:5
**insists** [1] - 17:3
**instances** [2] - 21:12, 46:10
**instead** [6] - 11:13, 22:6, 33:11, 35:3, 35:12, 51:17
**insurance** [4] - 36:2, 41:22, 41:23, 46:12
**Insured** [3] - 45:15, 46:22, 46:24
**insured** [8] - 43:19, 44:12, 45:15, 45:18, 45:25, 46:4, 46:8, 46:18
**insureds** [2] - 45:22, 47:6
**insurer** [4] - 34:15, 34:23, 43:18, 45:21
**insurers** [4] - 34:13, 34:14, 34:16, 39:18
**intend** [3] - 13:14, 40:6, 54:3
**intended** [1] - 40:6
**interest** [1] - 29:6
**interested** [1] - 18:17
**inversely** [1] - 59:16
**invitation** [1] - 19:19
**involve** [1] - 58:7
**involved** [4] - 21:22, 22:1, 28:13, 34:3
**involving** [1] - 21:17

**irrelevant** [1] - 57:6
**issue** [28] - 7:17,
12:23, 12:24, 14:6,
16:19, 16:24, 17:2,
19:1, 21:3, 26:3,
27:22, 28:2, 28:6,
31:23, 33:5, 40:10,
41:7, 43:14, 44:10,
44:22, 48:8, 48:10,
49:16, 50:2, 56:6,
58:12, 58:13
**issued** [4] - 10:11,
26:12, 38:22, 49:5
**issues** [33] - 7:13, 8:6,
8:8, 10:6, 10:25,
11:4, 13:21, 15:15,
16:11, 16:17, 20:7,
20:19, 23:10, 26:14,
26:24, 27:3, 27:5,
35:6, 36:24, 42:8,
43:20, 48:2, 48:12,
49:2, 49:4, 49:19,
52:19, 53:11, 53:22,
56:9, 56:11, 56:20
**item** [2] - 55:25, 56:1
**Item** [1] - 5:7
**items** [4] - 7:20, 23:22,
37:1, 60:15
**itself** [1] - 19:10

## J

**JAMES** [1] - 1:3
**January** [14] - 10:18,
12:10, 13:10, 15:18,
21:1, 24:24, 25:7,
26:15, 28:7, 38:6,
48:10, 48:14, 63:11
**JANUARY** [2] - 1:14,
5:1
**JConwisar@jenner.**
**com** [1] - 3:15
**Jenna** [1] - 7:3
**JENNA** [1] - 3:13
**Jenner** [2] - 6:18, 7:4
**JENNER** [2] - 3:9,
3:12
**Jennifer** [1] - 44:9
**Jill** [1] - 45:14
**job** [1] - 52:2
**JOHN** [1] - 3:17
**John** [2] - 6:24, 45:13
**joint** [4] - 7:11, 7:19,
8:2, 50:21
**jointly** [7] - 30:11,
33:24, 40:18, 40:21,
41:4, 41:7
**Jones** [1] - 45:14
**JPML** [1] - 19:23
**JUDGE** [1] - 1:3

**Judge** [73] - 11:24,
13:7, 13:22, 14:11,
14:16, 14:19, 15:17,
16:2, 16:6, 16:10,
16:21, 17:4, 22:10,
23:8, 23:14, 24:8,
26:4, 27:6, 27:21,
27:25, 28:2, 28:5,
28:19, 28:22, 29:2,
29:9, 29:13, 29:21,
34:3, 34:4, 34:6,
34:8, 35:8, 36:15,
36:19, 37:13, 39:14,
39:20, 39:21, 39:22,
39:23, 39:24, 40:1,
40:2, 40:3, 40:7,
41:12, 42:10, 42:17,
43:6, 43:14, 43:20,
44:24, 47:24, 48:2,
48:15, 48:20, 49:3,
49:17, 50:3, 50:11,
51:2, 51:17, 51:25,
53:5, 53:7, 53:10,
53:16, 55:23, 57:6,
60:7, 60:8
**judge** [2] - 8:24, 55:25
**judges** [1] - 61:17
**judgment** [11] - 14:9,
23:23, 56:2, 56:5,
56:10, 57:17, 57:19,
58:1, 58:5, 58:10,
59:1
**Judicial** [1] - 63:12
**June** [2] - 24:3, 61:13
**jurisdiction** [2] -
17:11, 18:16
**jurisdictional** [3] -
31:23, 33:5, 33:8
**justice** [1] - 23:13
**jvanackeren@**
**callahan** [1] - 3:19
**jvanackeren@**
**callahan-law.com**
[1] - 3:19

## K

**KA** [1] - 11:10
**Kahn** [2] - 4:10, 6:11
**KC** [4] - 31:12, 33:14,
33:15, 33:17
**keep** [1] - 38:14
**keeps** [1] - 21:10
**KELLER** [2] - 2:4, 3:3
**Keller** [6] - 4:11, 5:19,
5:22, 6:1, 7:22,
19:13
**KIA** [1] - 1:5
**Kia** [6] - 5:7, 6:15,
6:19, 12:20, 22:1,

33:17
**Kias** [1] - 14:23
**kicks** [1] - 52:8
**kind** [3] - 8:7, 35:9,
40:25
**know..** [1] - 58:22
**knowledge** [2] -
35:19, 35:20
**knows** [2] - 10:22,
32:15
**Korea** [1] - 33:18
**Korean** [1] - 27:15

## L

**laches** [1] - 49:10
**lack** [4] - 8:14, 25:14,
26:2, 36:24
**language** [1] - 19:8
**lapse** [1] - 20:24
**last** [8] - 11:12, 14:21,
22:24, 23:1, 29:18,
35:5, 37:24, 60:7
**last-standing** [1] -
29:18
**lasted** [1] - 48:11
**late** [3] - 8:4, 9:5, 35:5
**LAW** [6] - 2:4, 2:8,
2:16, 2:20, 2:20,
3:13
**law** [1] - 27:16
**law.com** [2] - 3:19, 4:7
**laws** [1] - 58:7
**lawyers** [2] - 20:7,
37:21
**Lawyers** [1] - 60:19
**lay** [1] - 58:10
**lazy** [1] - 22:15
**least** [2] - 12:4, 13:20,
59:12
**leave** [3] - 28:12,
42:19, 56:10
**left** [1] - 35:2
**legal** [5] - 56:6, 56:9,
56:20, 58:12
**LEGAL** [1] - 2:8
**legitimate** [1] - 26:21
**length** [2] - 28:25,
59:15
**less** [1] - 9:14
**letter** [2] - 30:24,
42:15
**letters** [6] - 42:14,
43:1, 43:2, 48:14
**liability** [2] - 13:2,
14:25
**LIABILITY** [1] - 1:6
**likewise** [1] - 49:17
**limit** [2] - 33:2, 42:3
**limitations** [1] - 49:11

**limited** [3] - 18:15,
18:16, 50:19
**limits** [1] - 36:8
**line** [4] - 23:8, 49:7,
49:18
**lines** [3] - 21:7, 49:6,
50:23
**link** [1] - 21:21
**list** [1] - 47:6
**listen** [1] - 8:25
**litigants** [2] - 19:20,
20:1
**litigate** [4] - 17:11,
18:18, 33:4, 33:10
**litigated** [1] - 49:13
**litigation** [5] - 14:19,
22:3, 27:18, 47:17,
49:19
**LITIGATION** [1] - 1:6
**Litigation** [1] - 5:8
**LLP** [6] - 2:4, 3:3, 3:9,
3:12, 3:20, 4:11
**Local** [3] - 42:22,
48:10, 48:15
**lodge** [1] - 13:12
**lodged** [3] - 13:11,
14:11, 15:17
**logical** [1] - 54:24
**look** [8] - 9:24, 15:20,
22:5, 35:23, 54:6,
54:7, 57:2
**looking** [4] - 29:9,
29:25, 52:3
**loose** [1] - 54:24
**LOS** [1] - 63:3
**Los** [4] - 2:18, 3:14,
3:22, 19:24
**losing** [1] - 17:12
**lower** [1] - 45:7

## M

**ma'am** [1] - 42:9
**MADISON** [45] - 3:21,
6:13, 11:7, 11:9,
11:23, 12:1, 12:5,
12:8, 12:10, 12:17,
14:2, 16:16, 16:21,
17:23, 17:25, 18:3,
18:6, 18:9, 18:11,
18:15, 18:22, 18:25,
20:2, 20:11, 20:14,
20:17, 22:22, 51:1,
51:5, 51:9, 51:11,
51:13, 51:15, 53:3,
53:17, 53:23, 54:1,
60:14, 60:17, 60:23,
61:2, 61:5, 61:7,
61:11, 61:21
**Madison** [4] - 6:14,

11:6, 31:21, 31:24
**magic** [1] - 61:1
**Main** [1] - 2:21
**majority** [2] - 22:6,
61:16
**management** [2] -
14:20, 21:20
**manner** [1] - 44:4
**manual** [1] - 21:24
**manufacturers** [1] -
36:4
**March** [9] - 15:2,
16:12, 24:2, 24:24,
36:22, 60:7, 60:17,
61:5
**marching** [1] - 30:16
**Market** [1] - 2:13
**MARKETING** [1] - 1:6
**massive** [1] - 34:20
**master** [4] - 10:11,
12:14, 37:22, 49:20
**mathematical** [1] -
47:11
**matter** [8] - 24:21,
27:8, 27:18, 38:2,
38:25, 42:21, 42:23,
63:11
**matters** [1] - 19:3
**McDevitt** [3] - 3:4,
5:22
**mean** [14] - 14:18,
18:10, 19:22, 20:11,
21:16, 29:15, 32:19,
42:21, 42:22, 44:14,
51:7, 54:1, 54:14,
61:18
**means** [2] - 51:10,
51:21
**meanwhile** [1] - 10:1
**measured** [1] - 12:13
**meet** [18] - 24:10,
25:6, 26:15, 28:7,
28:16, 29:5, 30:22,
35:17, 42:12, 42:15,
42:20, 43:5, 47:24,
48:8, 48:11, 48:13,
48:21, 52:19
**meet-and-confer** [6] -
35:17, 42:12, 42:15,
42:20, 47:24, 48:21
**meeting** [5] - 35:1,
42:13, 54:22, 60:18
**Megan** [1] - 6:7
**MEGAN** [1] - 2:16
**memory** [2] - 8:20,
20:24
**mentioned** [2] - 25:3,
36:25
**merits** [1] - 12:15
**met** [2] - 47:24, 48:17

**mid** [1] - 16:10
**mid-next** [1] - 16:10
**might** [4] - 8:3, 37:3, 57:1, 57:10
**millions** [1] - 21:7
**mind** [1] - 24:24
**mindset** [1] - 35:18
**mindsets** [1] - 34:17
**minutes** [1] - 9:4
**misrepresented** [1] - 44:14
**misspoke** [1] - 32:24
**MLK** [1] - 9:22
**model** [1] - 21:22
**money** [1] - 44:6
**month** [3] - 9:20, 11:10, 31:4
**months** [1] - 23:2
**morning** [2] - 8:3, 19:12
**most** [3] - 13:5, 21:23, 22:10
**motion** [19] - 9:18, 12:12, 23:7, 23:23, 49:15, 55:7, 55:8, 56:2, 56:5, 56:10, 56:20, 57:17, 57:19, 57:24, 57:25, 58:9, 59:1, 59:2, 59:8
**motions** [8] - 10:9, 36:21, 41:16, 51:20, 55:1, 55:4, 56:24, 58:5
**Motor** [3] - 6:15, 6:19, 33:17
**move** [2] - 37:9, 52:5
**moved** [2] - 16:17, 16:24
**moving** [4] - 38:4, 47:9, 54:3, 61:15
**mpeitzke@cozen. com** [1] - 2:19
**MR** [109] - 5:11, 5:22, 5:25, 6:10, 6:13, 6:17, 6:21, 6:24, 11:7, 11:9, 11:23, 12:1, 12:5, 12:8, 12:10, 12:17, 14:2, 16:16, 16:21, 17:23, 17:25, 18:3, 18:6, 18:9, 18:11, 18:15, 18:22, 18:25, 20:2, 20:11, 20:14, 20:17, 22:22, 23:21, 27:25, 28:2, 29:14, 29:20, 30:6, 30:8, 30:21, 30:24, 31:5, 31:8, 32:6, 32:8, 32:19, 32:22, 32:25, 36:25, 37:6, 37:16, 37:20,

38:23, 39:3, 39:5, 39:11, 40:9, 40:14, 41:20, 45:4, 45:12, 45:16, 45:20, 46:3, 46:6, 46:14, 46:24, 47:2, 47:12, 48:7, 48:22, 48:25, 51:1, 51:5, 51:9, 51:11, 51:13, 51:15, 53:3, 53:17, 53:23, 54:1, 55:25, 56:14, 56:18, 56:22, 57:3, 57:13, 57:14, 57:25, 58:4, 58:13, 58:18, 58:23, 59:11, 59:18, 59:20, 60:1, 60:3, 60:11, 60:14, 60:17, 60:23, 61:2, 61:5, 61:7, 61:11, 61:21
**MS** [33] - 5:15, 5:18, 6:4, 6:7, 7:3, 7:21, 8:19, 9:11, 11:5, 20:18, 20:22, 23:16, 31:3, 42:10, 43:1, 43:5, 43:9, 44:20, 45:1, 50:8, 50:16, 51:16, 51:20, 51:25, 52:7, 52:15, 53:1, 54:7, 54:16, 54:25, 55:4, 55:15, 55:24
**multiple** [1] - 46:9
**must** [1] - 49:24
**mystery** [1] - 14:22

**N**

**name** [1] - 5:25
**named** [2] - 45:18, 46:24
**Named** [1] - 46:21
**names** [1] - 25:11
**narrow** [1] - 10:15
**necessary** [2] - 13:20, 22:2
**need** [8] - 14:22, 37:12, 38:3, 49:2, 50:1, 52:5, 53:8, 54:13
**needs** [2] - 35:22, 54:20
**never** [1] - 37:25
**new** [5] - 14:18, 52:19, 52:20, 52:22, 55:1
**Newark** [1] - 9:17
**next** [15] - 11:10, 15:1, 16:10, 36:15, 37:9, 37:15, 39:25, 42:13, 48:1, 48:14, 48:23, 50:3, 51:2, 58:18, 60:17

**nicely** [1] - 34:22
**night** [1] - 9:5
**nine** [1] - 45:23
**Ninth** [1] - 61:8
**nitpicking** [1] - 52:4
**North** [2] - 2:21, 3:10
**Northridge** [1] - 2:10
**note** [2] - 14:16, 60:18
**noted** [1] - 20:25
**notes** [1] - 22:1
**nothing** [2] - 14:18, 61:1
**Notice** [4] - 26:12, 27:1, 38:19, 38:20
**notice** [11] - 11:11, 22:23, 22:25, 24:11, 24:12, 29:22, 29:24, 30:11, 31:11, 33:24, 41:8
**noticed** [13] - 23:1, 24:2, 24:17, 24:23, 25:20, 26:5, 29:23, 30:2, 40:17, 40:18, 40:21, 41:5
**notices** [2] - 27:18, 38:22
**Notices** [6] - 24:20, 24:21, 26:4, 26:6, 26:19, 38:23
**November** [7] - 20:25, 22:24, 23:1, 24:23, 25:2, 49:6
**nowhere** [1] - 28:8
**nuisance** [1] - 13:2
**Number** [1] - 49:8
**number** [15] - 8:6, 19:2, 21:22, 22:8, 22:12, 28:6, 28:13, 28:17, 28:25, 34:20, 36:6, 37:1, 37:2, 38:9, 47:11
**numbered** [1] - 49:18
**numbers** [2] - 36:3
**numerous** [2] - 7:7, 27:14

**O**

**O'CONNOR** [2] - 2:12, 2:16
**O'Connor** [2] - 5:11, 6:8
**object** [4] - 13:15, 13:16, 23:12, 54:3
**objected** [1] - 19:17
**objecting** [1] - 14:14
**objection** [2] - 13:12, 23:11
**objections** [2] - 15:20, 16:14

**observe** [1] - 17:8
**obviously** [9] - 13:16, 14:17, 16:9, 33:7, 43:14, 47:23, 53:21, 59:9, 59:23
**occasioned** [1] - 11:11
**occur** [3] - 32:15, 42:23, 53:15
**occurred** [1] - 13:4
**odds** [1] - 59:17
**OF** [9] - 1:2, 1:13, 2:1, 2:20, 3:1, 4:1, 63:1, 63:3, 63:4
**offense** [1] - 21:17
**offensive** [1] - 22:16
**offer** [2] - 31:24, 40:15
**offered** [3] - 36:15, 39:18, 52:19
**offering** [1] - 34:23
**OFFICE** [1] - 2:20
**offices** [1] - 55:23
**Official** [1] - 63:20
**OFFICIAL** [3] - 1:23, 63:1, 63:5
**officially** [1] - 32:12
**once** [5] - 18:21, 18:22, 19:15, 20:5, 38:18
**one** [41] - 7:9, 7:14, 8:13, 8:14, 16:22, 17:21, 19:4, 20:21, 22:11, 24:20, 25:23, 25:24, 26:9, 26:10, 27:8, 27:9, 27:17, 27:23, 31:13, 31:14, 31:20, 32:12, 32:14, 32:17, 33:13, 33:25, 34:23, 35:21, 36:4, 36:15, 37:1, 38:24, 41:21, 42:3, 46:12, 46:13, 46:25, 52:9, 54:1, 55:25
**ones** [2] - 37:24, 47:5
**oOo** [1] - 62:2
**open** [2] - 15:15, 25:18
**opened** [1] - 12:17
**opinion** [1] - 41:14
**opportunity** [4] - 15:19, 33:14, 34:1, 59:10
**oppose** [1] - 35:18
**opposed** [2] - 56:5, 57:17
**order** [39] - 5:6, 8:22, 10:12, 12:11, 13:9, 13:11, 13:15, 13:17, 14:11, 14:20, 15:20, 16:15, 17:25, 18:1,

18:3, 23:4, 23:11, 23:14, 27:20, 28:24, 33:1, 33:13, 33:18, 39:14, 45:8, 45:12, 46:1, 47:20, 49:5, 49:6, 50:1, 50:12, 52:17, 53:6, 53:10, 54:18, 54:20, 60:4
**ordered** [11] - 10:17, 13:7, 13:22, 15:6, 22:10, 45:17, 49:13, 49:17, 49:23, 50:4, 50:11
**orderly** [1] - 37:3
**orders** [3] - 14:21, 22:24, 45:8
**others'** [1] - 37:11
**otherwise** [2] - 45:25, 46:4
**ought** [1] - 42:22
**outcome** [4] - 32:16, 32:19, 32:22, 33:3
**outside** [1] - 21:13
**outstanding** [2] - 37:6, 51:6
**overstate** [1] - 60:5
**own** [4] - 10:4, 10:9, 14:21, 40:25

**P**

**p.m** [2] - 61:5, 62:1
**P.M** [2] - 1:15, 5:2
**page** [4] - 22:13, 38:2, 49:7, 63:11
**pages** [2] - 9:6, 9:12
**papers** [2] - 7:13, 56:13
**parallel** [1] - 19:2
**parameters** [1] - 57:12
**pardon** [1] - 11:23
**parent** [6] - 11:14, 11:16, 15:10, 16:18, 16:22, 19:6
**parents** [4] - 17:13, 17:22, 23:2, 32:12
**part** [9] - 11:15, 13:18, 14:10, 15:13, 19:10, 26:11, 35:14, 35:16, 51:18
**participate** [8] - 17:6, 19:6, 26:9, 27:19, 27:24, 31:14, 32:11, 33:7
**participating** [2] - 17:3, 27:15
**participation** [2] - 31:11, 32:18
**particularly** [1] - 19:22
**parties** [11] - 8:24,

10:22, 27:18, 28:13, 40:18, 41:15, 42:1, 42:11, 47:25, 52:13, 53:15
**party** [4] - 27:17, 31:17, 31:18, 39:18
**pass** [1] - 57:6
**passed** [1] - 55:9
**past** [2] - 41:3
**patience** [1] - 61:21
**paying** [1] - 24:15
**payment** [1] - 49:11
pbrennan@jenner. com [1] - 3:11
**PEITZKE** [2] - 2:16, 6:7
**Peitzke** [1] - 6:7
**pendency** [1] - 57:24
**pending** [4] - 9:18, 19:3, 54:10, 57:19
**Pennsylvania** [1] - 2:14
**people** [8] - 8:18, 19:25, 46:16, 51:20, 57:10, 59:24
**peppered** [1] - 52:21
**per** [10] - 21:11, 28:15, 28:17, 28:23, 29:1, 34:15, 34:23, 39:18, 41:24, 42:3
**percent** [1] - 9:7
**perhaps** [1] - 28:5
**period** [2] - 9:20, 9:21
**permission** [1] - 23:24
**permit** [1] - 33:6
**permitted** [3] - 11:20, 17:10, 17:19
**permitting** [1] - 20:6
**personal** [1] - 17:11
**personally** [1] - 19:1
**perspective** [2] - 18:13, 26:24
**persuasive** [2] - 41:13, 57:3
**pertain** [1] - 10:11
**Peter** [1] - 6:17
**PETER** [1] - 3:9
**phase** [2] - 41:2, 42:12
**Phase** [40] - 7:20, 9:2, 9:13, 10:2, 10:3, 10:6, 10:20, 10:22, 11:18, 12:11, 13:25, 15:12, 15:13, 16:25, 19:11, 21:13, 26:11, 26:18, 33:22, 38:18, 50:19, 50:24, 51:8, 51:21, 51:22, 52:2, 52:4, 52:5, 52:10, 54:11, 54:14, 54:17, 54:22, 54:23, 54:24,

55:2, 55:7, 55:9, 55:16
**phases** [1] - 11:18
**Philadelphia** [1] - 2:14
**picking** [1] - 23:5
**ping** [1] - 53:15
**ping-pong** [2] - 53:15
**place** [14] - 7:14, 12:14, 17:17, 24:3, 24:24, 25:4, 25:23, 26:8, 27:4, 30:1, 30:3, 37:24, 38:5, 38:6
**plaintiff** [6] - 9:16, 10:13, 12:21, 42:3, 46:12, 52:11
**plaintiffs** [41] - 5:12, 5:16, 5:20, 5:23, 6:1, 6:5, 6:8, 6:11, 7:22, 8:10, 9:12, 11:11, 14:5, 14:14, 15:11, 16:23, 17:11, 18:17, 19:4, 19:24, 22:4, 22:6, 24:9, 25:18, 26:6, 26:8, 26:11, 26:16, 33:23, 41:23, 41:25, 42:6, 43:10, 43:16, 44:7, 52:16, 53:6, 55:17, 55:19, 58:4
**PLAINTIFFS** [2] - 2:3, 3:2
**plaintiffs'** [10] - 8:8, 10:9, 13:12, 14:10, 16:3, 17:2, 20:4, 26:18, 49:1, 50:22
**plane** [1] - 55:6
**planning** [1] - 60:23
**play** [2] - 29:9, 53:15
**playing** [1] - 24:15
**pleadings** [1] - 7:7
**point** [13] - 22:5, 23:4, 39:19, 39:22, 39:23, 41:11, 45:20, 46:3, 47:9, 47:12, 48:1, 48:25, 59:9
**pointed** [1] - 60:12
**points** [1] - 48:7
**police** [2] - 21:20, 21:24
**policy** [2] - 43:17, 43:19
**pong** [1] - 53:15
**posed** [1] - 54:2
**position** [15] - 7:13, 10:16, 12:22, 15:19, 20:11, 33:3, 36:11, 43:12, 46:19, 46:21, 47:18, 47:19, 50:12, 54:12, 55:1

**positions** [2] - 7:14, 37:12
**possible** [1] - 11:13
**potential** [1] - 52:3
**power** [4] - 19:18, 19:19, 33:6, 33:7
**powers** [1] - 57:4
**practical** [1] - 22:2
**practice** [2] - 42:22, 56:24
**PRACTICES** [1] - 1:6
**precluding** [1] - 26:21
**prejudice** [2] - 47:8, 56:21
**premium** [1] - 35:22
**prepare** [1] - 27:20
**prepared** [2] - 15:4, 23:22
**preparing** [2] - 9:19, 22:17
**PRESENT** [1] - 4:9
**present** [1] - 56:9
**presentation** [3] - 31:9, 34:11, 35:13
**presented** [1] - 54:17
**pretty** [5] - 20:6, 22:19, 27:20, 44:14, 47:25
**prevented** [1] - 27:15
**previous** [1] - 56:3
**previously** [3] - 10:17, 13:23, 23:2
**priority** [1] - 43:7
**problem** [2] - 55:20, 57:11
**problems** [1] - 38:17
**procedures** [1] - 16:6
**proceed** [1] - 37:3
**Proceedings** [1] - 62:1
**PROCEEDINGS** [1] - 1:13
**proceedings** [1] - 63:10
**process** [7] - 7:15, 28:21, 45:23, 47:24, 51:6, 52:8, 54:24
**produce** [4] - 9:3, 13:7, 24:5, 25:8
**produced** [12] - 8:12, 9:7, 9:12, 21:8, 22:7, 24:17, 33:12, 38:12, 38:18, 43:16, 49:24, 50:11
**Production** [1] - 49:8
**production** [4] - 9:6, 9:14, 38:17, 50:12
**PRODUCTS** [1] - 1:6
**progress** [7] - 30:20, 30:21, 34:1, 34:6,

47:16, 48:2, 61:13
**prompting** [1] - 52:23
**proportional** [2] - 42:5, 59:16
**proposal** [5] - 10:24, 35:12, 50:21, 50:22
**proposals** [2] - 10:23, 50:19
**propose** [1] - 41:24
**proposed** [9] - 7:10, 8:25, 23:22, 27:20, 34:15, 37:1, 41:23, 56:1, 60:6
**proposing** [1] - 51:25
**propounded** [1] - 16:5
**protective** [3] - 10:12, 15:20, 16:15
**provide** [4] - 14:14, 16:2, 35:25, 58:15
**provided** [3] - 9:23, 43:22, 61:8
**provides** [2] - 13:15, 18:16
**public** [2] - 10:19, 13:2
**purely** [2] - 56:6, 56:9
**purportedly** [1] - 25:13
**purpose** [1] - 37:14
**pursuant** [3] - 11:14, 48:15, 63:8
**pursue** [6] - 16:4, 31:15, 32:2, 47:4, 47:15, 57:21
**pursuing** [5] - 44:11, 46:6, 46:8, 47:7, 47:13
**purview** [1] - 52:8
**pushing** [1] - 47:25
**put** [12] - 7:7, 7:12, 7:19, 10:7, 12:19, 17:25, 51:17, 52:5, 52:13, 58:20, 59:10, 59:12
**putting** [2] - 22:16, 61:18

Q

**questioning** [2] - 26:22, 27:1
**questions** [5] - 10:25, 12:18, 16:13, 17:18, 20:15
**quickly** [1] - 12:3
**QUINN** [1] - 3:20
**Quinn** [1] - 6:14
**quite** [1] - 36:10

R

**RAE** [1] - 2:16
**raise** [3] - 25:14, 47:21, 56:20
**raised** [3] - 10:25, 29:7, 48:8
**ramifications** [1] - 57:10
**rather** [3] - 14:12, 43:23, 51:5
**ratings** [3] - 35:25, 36:1
**RE** [1] - 1:5
**Re** [1] - 5:7
**reach** [1] - 8:5
**reaction** [3] - 17:21, 18:10, 51:1
**read** [3] - 46:14, 49:6, 55:10
**readily** [1] - 21:23
**reading** [1] - 16:1
**real** [1] - 40:22
**really** [12] - 8:6, 9:25, 11:11, 16:1, 16:24, 17:16, 21:11, 31:10, 36:9, 53:1, 54:9, 61:15
**REALTIME** [1] - 63:5
**reason** [6] - 10:19, 25:13, 55:13, 56:12, 57:5, 57:18
**reasonable** [8] - 29:17, 34:22, 35:10, 36:8, 36:20, 37:21, 42:2, 58:15
**reasons** [1] - 43:13
**receive** [2] - 17:8, 17:9, 32:5
**received** [4] - 8:7, 12:10, 25:3, 42:14
**receiving** [1] - 15:21
**recent** [1] - 22:10
**reciprocity** [1] - 8:14
**recognize** [1] - 10:16
**recommendation** [7] - 13:10, 14:12, 15:16, 15:22, 16:2, 23:6, 53:13
**recommendations** [3] - 49:5, 49:15, 54:10
**recommended** [1] - 49:17
**reconsideration** [1] - 49:15
**record** [13] - 5:10, 20:23, 21:20, 33:1, 33:16, 37:19, 44:2, 44:13, 57:15, 58:25, 59:22, 59:25

**records** [5] - 21:10, 24:20, 26:5, 26:7, 38:24
**red** [1] - 26:1
**referenced** [2] - 22:11, 29:10
**refers** [1] - 45:6
**refile** [1] - 45:10
**reflected** [1] - 8:11
**refuse** [1] - 34:12
**refused** [2] - 8:25, 28:19
**refusing** [2] - 25:13, 35:15
**regard** [5] - 13:24, 15:15, 16:7, 16:15, 16:18
**regarding** [2] - 10:12, 43:6
**regardless** [4] - 32:16, 32:19, 32:22, 33:3
**regret** [1] - 60:21
**regulations** [1] - 63:12
**rejected** [1] - 17:15
**relate** [1] - 10:7
**related** [11] - 12:23, 13:3, 14:5, 14:24, 21:3, 21:12, 21:15, 21:16, 22:11, 56:2
**relating** [1] - 26:4
**relationship** [1] - 19:23
**relatively** [1] - 26:13
**relevant** [3] - 49:9, 49:21, 49:24
**relief** [1] - 58:11
**remain** [1] - 10:6
**remaining** [1] - 28:25
**remarkable** [1] - 8:25
**remember** [1] - 35:6
**removing** [1] - 43:25
**renoticed** [1] - 24:16
**repeatedly** [1] - 26:1
**replea** [1] - 59:3
**reply** [1] - 61:11
**report** [13] - 13:9, 13:17, 14:11, 14:18, 15:16, 15:21, 16:2, 23:5, 49:4, 49:14, 53:12, 54:3, 54:10
**reported** [1] - 63:10
**REPORTER** [3] - 1:23, 63:1, 63:6
**reporter** [1] - 37:18
**Reporter** [1] - 63:20
**REPORTER'S** [1] - 1:13
**reports** [1] - 21:24
**represent** [1] - 13:6
**representative** [1] -

27:2
**Request** [1] - 49:8
**request** [2] - 9:3, 27:11
**requested** [2] - 34:3, 55:18
**requesting** [2] - 29:11, 56:10
**requests** [4] - 37:2, 37:18, 52:21, 57:7
**require** [4] - 21:24, 37:22, 45:10, 59:3
**requires** [1] - 22:15
**resolve** [2] - 33:11, 48:19
**resolved** [9] - 12:4, 12:5, 16:11, 16:19, 19:10, 27:23, 47:22, 54:11, 55:5
**resolving** [1] - 44:19
**resources** [3] - 15:9, 52:12, 61:18
**respect** [15] - 27:2, 28:3, 31:11, 33:20, 33:21, 34:13, 36:6, 37:12, 40:16, 41:6, 42:11, 45:4, 47:23, 48:8, 50:9
**respectfully** [4] - 20:3, 28:21, 37:3, 38:16
**responded** [3] - 15:8, 28:14, 43:13
**response** [4] - 9:3, 11:3, 25:3, 58:21
**responses** [1] - 13:19
**rest** [1] - 42:11
**restrain** [1] - 40:7
**restrictions** [1] - 27:19
**retroactively** [1] - 54:19
**review** [1] - 21:24
**reviewed** [1] - 50:9
**revised** [1] - 13:18
**revisit** [1] - 32:16
**rewarded** [1] - 10:4
**RFPs** [1] - 49:18
**ride** [1] - 55:6
**ripe** [2] - 10:6, 51:1
**rise** [1] - 61:24
**risk** [1] - 24:15
**rmcdevitt@ kellerrohrback.com** [1] - 3:6
**RMR** [1] - 1:22
**road** [1] - 10:21
**ROBERT** [1] - 2:20
**Rohrback** [5] - 4:11, 5:19, 5:22, 6:1, 7:22
**ROHRBACK** [2] - 2:4, 3:3

**role** [1] - 23:8
**roll** [2] - 15:4, 22:5
**rolling** [1] - 9:11
**room** [1] - 21:6
**ROOM** [1] - 1:23
**Rs** [1] - 10:11
**rule** [1] - 53:21
**Rule** [1] - 44:16
**ruled** [2] - 23:6, 60:8
**Rules** [3] - 42:22, 48:10, 48:15
**rules** [4] - 48:21, 53:19
**rulings** [1] - 53:19
**RYAN** [1] - 3:4
**Ryan** [2] - 5:22, 25:17

## S

**sad** [1] - 55:9
**safety** [1] - 10:19
**SALES** [1] - 1:6
**SAML-22-03052-JVS** [1] - 1:7
**SAML-22-3052** [1] - 5:7
**San** [2] - 19:5, 19:12
**SANTA** [3] - 1:15, 1:24, 5:1
**Santa** [2] - 3:18, 4:6
**sat** [2] - 21:5, 21:6
**satisfaction** [1] - 29:2
**save** [1] - 58:22
**saw** [2] - 8:3, 9:8
**sbenson@ bensonlegal.net** [1] - 2:11
**schedule** [10] - 9:1, 9:17, 23:12, 24:6, 25:1, 25:13, 28:15, 28:23, 38:9, 38:21
**scheduled** [3] - 29:11, 30:1, 37:23
**scheduling** [2] - 29:1, 48:16
**scope** [2] - 16:19, 21:13
**seated** [1] - 5:5
**seats** [1] - 61:16
**Seattle** [2] - 2:6, 3:5
**second** [7] - 7:14, 46:8, 48:25, 60:12, 61:7
**Section** [1] - 63:8
**security** [1] - 35:20
**see** [15] - 7:14, 10:19, 19:20, 22:1, 23:17, 34:6, 35:1, 36:19, 36:22, 40:2, 59:7, 59:13, 60:10

**See** [1] - 53:6
**seek** [4] - 17:14, 32:4, 42:17, 44:23
**seeking** [3] - 10:2, 49:18, 52:16
**seem** [2] - 38:11, 42:5
**selected** [1] - 55:19
**Selna** [8] - 34:6, 39:14, 39:22, 39:23, 40:2, 40:3, 42:10, 53:7
**SELNA** [1] - 1:3
**senior** [1] - 61:17
**sense** [3] - 21:22, 51:23, 57:5
**sent** [6] - 10:14, 30:24, 31:3, 36:3, 42:15, 48:13
**separate** [8] - 27:7, 38:15, 38:19, 39:1, 39:2, 45:9, 45:13, 45:14
**separately** [1] - 27:4
**September** [1] - 49:4
**seriously** [3] - 8:16, 8:17, 48:23
**served** [2] - 20:25, 60:6
**session** [2] - 17:14, 58:22
**sessions** [1] - 13:20
**set** [7] - 9:2, 9:4, 11:9, 28:20, 29:15, 36:1, 42:12
**sets** [1] - 23:11
**setting** [1] - 43:18
**seven** [1] - 28:3
**several** [2] - 19:24, 42:15
**shaking** [1] - 23:17
**shall** [2] - 13:17, 41:13
**sharing** [1] - 41:5
**sheet** [1] - 10:10
**sheets** [4] - 10:13, 11:19, 13:18, 44:7
**short** [2] - 58:21, 59:20
**shortchange** [1] - 54:11
**shortcomings** [1] - 10:5
**shortened** [1] - 8:21
**shortens** [1] - 8:24
**shortly** [2] - 41:3, 48:14
**shoulder** [1] - 32:5
**show** [2] - 10:21, 24:14
**side** [14] - 7:16, 7:24, 8:12, 15:18, 28:15,

28:17, 28:23, 29:1, 29:17, 41:24, 50:19, 50:20, 55:20, 57:1
**sides** [2] - 28:22, 28:24
**sign** [1] - 17:18
**significance** [1] - 10:16
**similarly** [1] - 7:12
**simple** [2] - 27:21, 57:25
**simply** [6] - 26:2, 29:10, 42:4, 55:14, 56:20, 60:5
**single** [5] - 7:13, 9:3, 9:14, 9:16, 12:20
**sit** [4] - 35:9, 46:19, 47:9, 55:5
**six** [3] - 28:10, 28:11, 38:9
**sleeves** [2] - 15:4, 22:5
**slow** [3] - 22:15, 24:15, 29:9
**slowly** [1] - 61:13
**small** [4] - 9:19, 18:13, 35:14, 53:12
**Smith** [1] - 45:13
**so-called** [3] - 13:1, 56:8, 57:7
**solution** [2] - 39:20, 40:7
**solve** [1] - 44:10
**solves** [1] - 40:10
**sometime** [1] - 38:5
**sooner** [1] - 55:10
**sorry** [4] - 12:8, 32:8, 37:20, 55:9
**sort** [2] - 23:7, 23:13
**sorts** [1] - 35:24
**sought** [1] - 19:25
**sound** [1] - 34:20
**sounds** [2] - 29:17, 37:11
**South** [3] - 2:17, 3:13, 3:21
**SOUTHERN** [1] - 1:2
**Spaan** [1] - 63:20
**SPAAN** [3] - 1:22, 63:5, 63:19
**speaking** [1] - 8:9
**special** [3] - 10:11, 12:14, 49:20
**specific** [3] - 22:12, 28:22, 50:10
**spend** [2] - 36:18, 56:23
**spending** [1] - 44:5
**spit** [1] - 57:9
**spreadsheets** [1] -

43:18
**spring** [1] - 60:18
**stage** [1] - 22:2
**stall** [1] - 10:5
**stance** [1] - 8:8
**stand** [1] - 31:8
**standing** [1] - 29:18
**stands** [1] - 50:13
**start** [2] - 10:20, 29:24
**started** [1] - 22:18
**STATE** [1] - 63:4
**state** [10] - 5:9, 14:10, 15:19, 19:3, 19:5, 19:11, 19:13, 19:20, 20:1, 25:18
**statement** [1] - 49:1
**statements** [1] - 21:25
**STATES** [1] - 1:1
**states** [2] - 59:13, 59:14
**States** [3] - 63:6, 63:8, 63:13
**states'** [1] - 58:7
**STATUS** [1] - 1:14
**status** [7] - 7:20, 15:1, 16:10, 23:9, 35:4, 60:17, 61:17
**statute** [1] - 49:11
**stay** [1] - 57:23
**stayed** [1] - 45:18
**stenographically** [1] - 63:10
**step** [3] - 10:2, 11:17, 48:14
**stepping** [1] - 23:7
**stevemadison@ quinnemanuel.com** [1] - 3:23
**Steven** [1] - 6:13
**STEVEN** [1] - 3:21
**still** [9] - 9:18, 13:8, 15:15, 29:3, 39:25, 42:11, 43:20, 50:1, 61:17
**stipulated** [1] - 9:17
**stipulation** [12] - 10:14, 11:15, 16:23, 17:18, 18:16, 19:7, 19:8, 20:5, 43:22, 44:3, 45:6, 45:7
**stipulations** [1] - 22:24
**stolen** [2] - 21:17, 22:1
**stonewalled** [1] - 60:8
**stop** [1] - 52:5
**story** [4] - 35:11, 35:14, 36:5, 56:7
**straight** [2] - 44:13, 56:5

**Street** [6] - 2:13, 2:17, 2:21, 3:10, 3:13, 3:21
**STREET** [1] - 1:23
**strictly** [1] - 56:20
**strongly** [1] - 17:7
**structural** [2] - 26:12, 26:24
**structures** [1] - 26:23
**struggle** [1] - 20:8
**STUTMAN** [1] - 2:20
**subject** [6] - 13:1, 13:16, 15:3, 21:17, 23:20, 24:21, 26:17, 27:8, 29:12, 33:18, 38:25
**subjects** [1] - 26:13
**submission** [2] - 46:14, 53:24
**submit** [4] - 18:3, 28:24, 50:25, 53:11
**submitted** [3] - 8:2, 10:22, 53:22
**subrogation** [20] - 5:12, 5:16, 6:5, 6:8, 6:11, 6:18, 7:1, 7:4, 17:2, 18:17, 24:9, 25:15, 25:18, 26:16, 27:9, 28:23, 30:17, 33:23, 38:19, 40:23
**substantive** [1] - 42:23
**suffice** [1] - 15:10
**sufficient** [2] - 29:5, 42:20
**suggest** [1] - 27:13
**suggested** [2] - 34:19, 34:25
**suggesting** [1] - 27:7
**suggestion** [3] - 7:9, 28:9
**suggestions** [1] - 53:21
**Suite** [7] - 2:5, 2:9, 2:13, 2:17, 2:21, 3:5, 3:14
**suits** [1] - 44:18
**SULLIVAN** [1] - 3:20
**summarily** [2] - 55:14, 56:21
**summary** [10] - 23:23, 56:2, 56:4, 56:10, 57:17, 57:19, 58:1, 58:5, 58:10, 59:1
**superior** [1] - 49:12
**supplemental** [2] - 13:19, 29:3
**supports** [1] - 19:8
**supposed** [1] - 37:23
**surely** [1] - 43:12

**surface** [1] - 42:5
**surprised** [1] - 12:13
**surveillance** [1] - 21:25
**Susan** [2] - 5:15, 23:25
**SUSAN** [1] - 2:8
**susceptible** [1] - 13:1
**Susolik** [8] - 6:22, 34:12, 36:23, 41:19, 45:5, 48:6, 57:21, 60:2
**SUSOLIK** [10] - 4:4, 6:21, 41:20, 48:7, 48:22, 48:25, 56:14, 56:18, 60:3, 60:11
**sweeping** [1] - 12:11
**symmetry** [1] - 8:14
**sympathetic** [1] - 32:10
**system** [1] - 22:12
**systems** [2] - 21:21, 35:20

## T

**table** [1] - 17:22
**tactic** [1] - 39:5
**tactical** [1] - 14:9
**tactics** [1] - 10:5
**talks** [1] - 14:18
**team** [5] - 9:25, 35:21, 41:9
**teed** [1] - 53:11
**teeing** [1] - 16:6
**telecom** [1] - 43:21
**ten** [24] - 28:12, 28:13, 28:15, 28:23, 29:16, 30:1, 34:14, 34:21, 36:9, 37:23, 38:3, 38:5, 39:13, 39:15, 41:23, 41:24, 42:4, 42:6, 45:22, 50:9, 59:2
**term** [2] - 21:16, 47:11
**terms** [15] - 15:7, 15:25, 23:8, 51:13, 55:13
**terrible** [1] - 7:25
**test** [1] - 57:3
**testimony** [4] - 9:23, 17:8, 21:5, 22:16
**Thanksgiving** [1] - 9:21
**THE** [133] - 5:5, 5:14, 5:17, 5:21, 5:24, 6:3, 6:6, 6:9, 6:12, 6:16, 6:20, 6:23, 7:2, 7:6, 8:18, 9:9, 11:3, 11:6, 11:8, 11:22, 11:24,

12:3, 12:7, 12:9, 12:16, 14:1, 16:14, 16:20, 17:21, 17:24, 18:2, 18:5, 18:7, 18:10, 18:14, 18:21, 18:24, 19:18, 20:9, 20:13, 20:16, 20:20, 22:21, 23:19, 27:22, 28:1, 29:12, 29:16, 30:5, 30:7, 30:19, 30:23, 31:7, 32:5, 32:7, 32:10, 32:21, 32:24, 37:5, 37:8, 38:22, 39:4, 39:9, 40:5, 40:13, 41:18, 42:8, 42:19, 43:4, 43:8, 44:17, 44:25, 45:2, 45:11, 45:15, 45:19, 46:2, 46:5, 46:11, 46:21, 47:1, 47:10, 48:19, 48:24, 50:6, 50:14, 50:25, 51:4, 51:7, 51:10, 51:12, 51:14, 51:19, 51:24, 52:6, 52:9, 52:25, 53:2, 53:14, 54:15, 54:18, 55:3, 55:12, 55:21, 56:12, 56:16, 56:19, 56:23, 57:9, 57:23, 58:3, 58:9, 58:15, 58:20, 59:6, 59:15, 59:19, 59:24, 60:2, 60:9, 60:12, 60:16, 60:21, 60:25, 61:4, 61:6, 61:10, 61:15, 61:23, 61:24
**theft** [5] - 12:20, 21:7, 22:8
**Theft** [1] - 5:8
**THEFT** [1] - 1:5
**thefts** [7] - 12:23, 12:25, 13:3, 14:5, 14:23, 21:12
**they've** [8] - 12:22, 13:7, 32:11, 32:13, 36:3, 40:23, 61:18
**thinks** [2] - 40:7, 42:24
**third** [2] - 19:1, 56:1
**thorough** [1] - 14:17
**thousands** [3] - 43:16, 43:17
**three** [14] - 10:7, 11:18, 11:19, 16:17, 23:22, 24:13, 34:15, 34:19, 37:1, 39:8, 39:18, 41:24, 41:25, 50:20

**THURSDAY** [2] - 1:14, 5:1
**Thursday** [2] - 35:5, 36:18
**timetable** [1] - 51:10
**timing** [2] - 16:19, 55:13
**tired** [1] - 9:24
**Title** [1] - 63:8
**today** [8] - 30:8, 30:20, 30:22, 38:20, 47:22, 54:5, 55:22, 56:17
**together** [2] - 7:12, 37:15
**tomorrow** [7] - 14:13, 15:18, 19:11, 54:3, 54:6, 54:7, 55:2
**took** [1] - 36:10
**topic** [7] - 37:10, 40:17, 40:19, 41:6, 41:7, 41:10, 41:11
**topics** [1] - 41:9
**total** [1] - 9:6
**totally** [1] - 57:16
**Toyota** [1] - 19:22
**track** [19] - 7:1, 7:5, 7:10, 7:19, 19:4, 25:1, 25:15, 25:17, 25:21, 27:8, 27:9, 28:23, 30:17, 35:3, 36:16, 38:19, 40:25, 41:8
**tracks** [5] - 26:22, 27:6, 30:10, 38:15, 39:2
**Transcript** [1] - 1:5
**transcript** [3] - 17:8, 63:9, 63:11
**TRANSCRIPT** [1] - 1:13
**Trial** [1] - 60:19
**tried** [2] - 24:13, 35:7
**true** [3] - 30:15, 46:15, 63:9
**truly** [5] - 48:25, 56:25, 58:12, 60:16
**try** [3] - 34:2, 48:2, 57:4
**trying** [9] - 11:14, 30:9, 34:21, 36:7, 41:14, 51:20, 54:11, 55:11, 55:16
**Tuesday** [1] - 36:17
**twice** [2] - 40:19, 40:21
**two** [25] - 9:14, 9:20, 10:10, 10:18, 11:10, 14:19, 15:15, 21:21, 23:2, 23:25, 24:13, 24:19, 24:21, 27:7,

31:6, 36:15, 37:2, 38:22, 38:24, 41:25, 48:7, 48:11, 48:13, 49:6, 60:14
**two-month** [1] - 9:20
**type** [1] - 59:8

## U

**U.S** [1] - 1:3
**under** [7] - 13:11, 16:22, 21:21, 22:7, 22:24, 48:21, 52:8
**underlying** [1] - 21:24
**underpinning** [1] - 16:24
**understood** [3] - 8:19, 54:25, 55:24
**underwriting** [7] - 34:18, 43:10, 44:22, 49:2, 49:4, 49:23, 60:6
**unfairness** [1] - 60:5
**United** [3] - 63:6, 63:8, 63:13
**UNITED** [1] - 1:1
**unless** [3] - 15:5, 16:13, 25:22
**unlike** [1] - 17:10
**unlikely** [1] - 57:23
**unreasonable** [1] - 42:4
**untenable** [1] - 42:4
**unusual** [1] - 20:6
**unwilling** [1] - 39:17
**up** [30] - 8:25, 12:19, 15:4, 16:6, 16:9, 17:12, 20:19, 20:24, 22:5, 22:16, 23:3, 24:8, 26:1, 28:10, 28:12, 30:12, 31:8, 33:19, 37:4, 38:14, 39:23, 42:12, 42:21, 42:23, 51:8, 53:11, 54:22, 55:6, 61:11
**upcoming** [1] - 58:22
**update** [1] - 61:8
**UQUHART** [1] - 3:20
**urgency** [1] - 52:23

## V

**Van** [1] - 6:25
**VAN** [2] - 3:17, 6:24
**various** [2] - 6:8, 7:12
**vast** [1] - 22:6
**Vehicle** [1] - 5:8
**vehicle** [2] - 21:17, 35:24
**VEHICLE** [1] - 1:5

**vehicles** [2] - 13:1, 35:21
**versus** [1] - 23:9
**view** [9] - 16:3, 29:16, 29:19, 31:22, 32:16, 33:7, 42:19, 47:18, 51:21
**views** [2] - 7:17, 59:10
**violation** [2] - 21:16, 44:15
**visualize** [1] - 22:19
**voice** [1] - 52:24
**voluntary** [1] - 49:11

## W

**waiting** [1] - 29:4
**waive** [1] - 57:1
**waiver** [1] - 49:10
**wants** [3] - 7:16, 14:7, 42:3
**Washington** [2] - 2:6, 3:5
**Wayland** [1] - 6:5
**WAYLAND** [2] - 2:20, 6:4
**waylandd@ stutmanlaw.com** [1] - 2:23
**week** [15] - 11:12, 16:10, 23:1, 29:13, 36:15, 37:15, 37:24, 39:25, 42:13, 48:1, 48:23, 50:4, 50:21, 51:3, 60:10
**weeks** [2] - 42:16, 59:12
**welcome** [1] - 7:6
**WEST** [1] - 1:23
**whatsoever** [1] - 25:3
**whole** [4] - 34:24, 39:22, 39:23, 47:9
**willing** [4] - 31:23, 31:24, 31:25, 33:9
**win** [3] - 31:17, 31:18, 32:3
**wish** [1] - 55:12
**withdraw** [1] - 57:2
**withdrawn** [1] - 15:11
**withheld** [1] - 25:22
**withholding** [1] - 27:11
**witness** [3] - 17:23, 21:24, 25:8
**witnesses** [10] - 22:17, 24:3, 24:5, 24:18, 25:8, 25:11, 25:20, 26:17, 38:12, 38:17
**words** [1] - 23:13

**works** [2] - 52:1, 60:24
**worth** [1] - 57:2
**worthwhile** [1] - 56:24
**wrap** [1] - 37:4
**wrapped** [1] - 51:8
**writing** [3] - 10:8, 51:17, 52:1
**written** [9] - 10:10, 11:20, 13:19, 16:7, 23:23, 29:3, 35:12, 37:2, 47:23
**wrote** [1] - 40:15

## Y

**year** [2] - 24:9, 60:7
**years** [3] - 10:18, 14:19, 41:22
**yesterday** [1] - 9:8

## Z

**ZACHARY** [1] - 4:11
**Zachary** [1] - 5:25
**zero** [1] - 22:17
**zone** [1] - 9:5
**Zoom** [1] - 48:10

**UNITED STATES DISTRICT COURT**