1  QUINN EMANUEL URQUHART & SULLIVAN LLP
2  Steven G. Madison (SBN: 101006)
   stevemadison@quinnemanuel.com
3  Justin C. Griffin (SBN: 234675)
   justingriffin@quinnemanuel.com
4  865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:   (213) 443-3000
6  Facsimile:   (213) 443-3100
7
   *Attorneys for Defendants Hyundai Motor*
8  *America and Kia America, Inc.*

9            **UNITED STATES DISTRICT COURT**

10           **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11  In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ML-3052-JVS-(KESx) |
| | The Honorable James V. Selna |
| This Document Relates to: | **DEFENDANTS HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.'S MOTION FOR AN ORDER TO SHOW CAUSE RE: CERTAIN GOVERNMENTAL ENTITY PLAINTIFFS' REFUSAL TO FOLLOW COURT ORDER** |
| GOVERNMENTAL ENTITIES TRACK | |
| | Hearing Date:  July 7, 2025 |
| | Hearing Time: 1:30 p.m. |

# NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on Monday, July 7, 2025, at 1:30 p.m. (PST), or as soon hereafter as counsel may be heard, in Courtroom 10C of the Honorable James V. Selna, 411 West 4th Street, Santa Ana, California 92701-4516, Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") will and hereby do move for Motion for an Order to Show Cause why Governmental Entity Plaintiffs City of Buffalo, City of Indianapolis, City of Milwaukee, City of St. Louis, and City of Tacoma (collectively, "GE Plaintiffs" or the "Five Cities") should not be held in civil contempt for their refusal to follow this Court's Order at the April 11, 2025 status conference requiring them to produce information regarding their allegations herein.

Despite the clear requirements of the Court's April 11 Order (the "Five City Order") to proceed with specific discovery for five plaintiffs in the GE Track (each from a different state), the Five Cities have refused to comply. HMA and KA respectfully request that the Court: (1) compel the Five Cities' compliance with the Five City Order; (2) issue an order for the Five Cities to show cause why they should not be held in contempt of Court for their failure and refusal to comply with the Five City Order; (3) schedule an evidentiary hearing regarding the Five Cities' contemptuous conduct; (4) impose coercive sanctions in the amount of $2,500 for each day of continued non-compliance against any GE Plaintiff continuing to fail to comply with the Court's Order; and (5) award monetary sanctions according to proof against the Five Cities, and each of them, to reimburse HMA and KA for the fees and costs that they have incurred in bringing this Motion.[1]

---

[1] This Motion is properly resolved by this Court, not the Discovery Special Master. Contempt is expressly outside the Special Master's authority, and is reserved by this Court. *See* Dkt. 421 (Appointment Order) (granting the Special Master authority to "impose on a Party any *non-contempt* sanction." (emphasis added). Further, the order that is the subject of this Motion and with which GE Plaintiffs refuse to comply was

This Motion is made following a conference of counsel pursuant to Local Rule 7-3, which took place on May 30, 2025.

This Motion is based on the accompanying Memorandum of Points and Authorities, the Declaration of Steven G. Madison, the records and files in this action, any matters of which the Court may take judicial notice, and such evidence and argument as is presented at the hearing on the Motion.

DATED:  June 6, 2025                    QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By  /s/ Steven G. Madison
                                            Steven G. Madison (SBN: 101006)
                                            stevemadison@quinnemanuel.com
                                            Justin C. Griffin (SBN: 234675)
                                            justingriffin@quinnemanuel.com
                                            865 South Figueroa Street, 10th Floor
                                            Los Angeles, California 90017-2543
                                            Telephone:  (213) 443-3000
                                            Facsimile:   (213) 443-3100

                                            *Attorneys for Defendants Hyundai Motor
                                            America and Kia America, Inc.*

issued by this Court, making the Court best-positioned to resolve this dispute. *See F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001) ("All federal courts are vested with inherent powers . . . to ensure obedience to their orders.").

# **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL BACKGROUND ............................................................ 4

    A.    HMA And KA Seek Discovery Of Thefts Of Subject Vehicles And Offender Identity ........................................................................ 5

    B.    The Court Ordered GE Plaintiffs To Produce Police Records For Five GE Plaintiffs During The April 11, 2025 Status Conference ........ 6

    C.    The Five Cities Refuse To Produce The Ordered Information.............. 8

LEGAL STANDARD ............................................................................. 10

ARGUMENT ......................................................................................... 10

I.    GE PLAINTIFFS ARE IN VIOLATION OF THIS COURT'S CLEAR AND UNAMBIGUOUS ORDER ................................................ 10

II.    THE FIVE CITIES DO NOT HAVE VALID GROUNDS FOR NONCOMPLIANCE ................................................................. 11

    A.    HMA And KA's Request For Production Is Procedurally Proper And Authorized............................................................................ 12

    B.    GE Plaintiffs Mischaracterize Key Facts ............................................ 13

    C.    The Five Cities' Relevance And Proportionality Objections Demonstrate Their Bad Faith............................................................ 14

III.    THE COURT SHOULD IMPOSE SANCTIONS TO COERCE COMPLIANCE AND REIMBURSE HMA AND KA FOR THEIR EXPENSES ................................................................................ 15

CONCLUSION...................................................................................... 17

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4

5

*In re Citimortgage, Inc., Home Affordable Modification Program*
    *("HAMP") Litig.*,

6

    2012 WL 10450139 (C.D. Cal. June 7, 2012) .................................. 15

7

*Dreith v. Nu Image, Inc.*,

8

    648 F.3d 779 (9th Cir. 2011) .................................................... 10

9

*Fed. Trade Comm'n v. Productive Mktg., Inc.*,
    136 F. Supp. 2d 1096 (C.D. Cal. 2001) ...................................... 16

10

11

*Gen. Signal Corp. v. Donallco, Inc.*,
    787 F.2d 1376 (9th Cir. 1986) .................................................. 12

12

13

*Hyde & Drath v. Baker*,
    24 F.3d 1162 (9th Cir. 1994) ................................................... 16

14

15

*Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*,
    523 U.S. 26 (1998). No MDL ..................................................... 3

16

17

*Onion Boy, Inc. v. Mike's Bulk Dist. Inc.*,
    2021 WL 8893647 (C.D. Cal. Nov. 30, 2021) (J. Selna) ............ 10, 16

18

19

*Phenylpropanolamine (PPA) Prods. Liability Litig.*,
    460 F.3d 1217 (9th Cir. 2006) .................................................. 16

20

*Richmark Corp. v. Timber Falling Consultants*,
    959 F.2d 1468 (9th Cir. 1992) .................................................. 12

21

22

## **Rules**

23

Fed. R. Civ. P. 34 ........................................................................... 1

24

Fed. R. Civ. P. 37(b)(2) ................................................................ 16

25

26

27

28

# PRELIMINARY STATEMENT

At the April 11, 2025 status conference, this Court issued a clear, unambiguous order: five GE Plaintiffs were to provide discovery forthwith regarding the thefts of Subject Vehicles as alleged in their complaints and the identity of offenders they had identified as having committed the thefts (the Court's April 11 Order is referred to herein as the "Five City Order" or "Order"). Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") were actually *directed* by this Court to serve this discovery, and the five GE Plaintiffs were to comply with it *before* the next status conference. GE Plaintiffs did not file a motion for reconsideration, application for certification of interlocutory appeal, or motion for protective order withdrawing, modifying or limiting the Five City Order. No GE Plaintiff even so much as made a request to meet and confer regarding the Five City Order.

HMA and KA promptly served the ordered discovery on GE Plaintiffs Buffalo, New York, Indianapolis, Indiana, Milwaukee, Wisconsin, St. Louis, Missouri, and Tacoma, Washington (the "Five Cities"). As ordered, each of the Five Cities is from a separate state. Moreover, so as to avoid protracted disputes that would delay the disclosure of this critical information, HMA and KA made compliance with the Court's order easy. A single identical document request was propounded to each of the Five Cities, requiring each to simply produce the police reports and records for a subset of incidents identified in spreadsheets that each had produced in Phase 1 fact discovery. The request required production on May 19, 2025, per Fed. R. Civ. P. 34. Meanwhile, aware that the Five Cities might refuse to disclose the identity of juvenile offenders in the police reports, HMA and KA arranged for local counsel where necessary and prepared draft papers to obtain a court order from the local state court in each jurisdiction, so once the police reports were produced, HMA and KA could seek disclosure of any withheld offender identities.

After the document request was served on the Five Cities, not a single GE Plaintiff moved for reconsideration, applied to certify an interlocutory appeal, sought

a writ, or moved for a protective order withdrawing, modifying or limiting the Five City Order, and none so much as even requested to meet and confer regarding the Order or the single document request.  Indeed, in communications with counsel for GE Plaintiffs regarding the scheduling of the next status conference with this Court, repeated references were made to HMA and KA's need to receive and analyze the police reports from the Five Cities so as to be able to address the issues to be discussed at the next status conference.  GE Plaintiffs never indicated that they did not intend to comply with the Five City Order and produce police reports.

By close of business on May 19, 2025, no documents had been produced.  So counsel for HMA and KA contacted the Five Cities' counsel regarding the status of production.  Later that evening, the Five Cities served "responses and objections" claiming for the first time that they were under no obligation to produce any police reports and that no discovery was permitted until this Court opened Phase 2 fact discovery in the GE track.  Each of these claims was contrary to and contemptuous of the Five City Order.

Not a single police report by any of the Five Cities was produced, not even the police reports for incidents involving adult offenders or with no identified offender at all and thus without confidentiality concerns.  The Five Cities raised other objections, falsely claiming, for example, that they had already produced responsive documents (even though not a single police report has been produced in this litigation).  Counsel confirmed in a meet and confer that the Five Cities contend, as a threshold matter, that this Court did *not* order them to provide the requested information, and they simply refuse to do so based on that ground.  One of the Five Cities, St. Louis, went so far as to claim that not only will any further discovery be limited to "bellwethers," but it will not consent to being a bellwether so it cannot be required to produce any discovery at all until this Court returns the case to the District of Missouri where it was filed.

1    This Court has not determined to use bellwethers herein, and as GE Plaintiffs
2    are well aware, HMA and KA vigorously oppose the use of bellwethers.  There are
3    increasingly compelling reasons not to use them.  This MDL was initially created to
4    process dozens of consumer class actions consolidating the claims of the owners of
5    **9 million** Hyundai and Kia vehicles.  The Subrogation track includes the claims of
6    over **400** insurance companies with **hundreds of thousands of insureds**.
7    Conversely, at its high water mark there were only **30** GE Plaintiffs (out of a total of
8    approximately 22,000 cities and counties nationwide).  Despite the paucity of GE
9    Plaintiffs, even that number has dwindled significantly (no small feat given how low
10   the number was to begin with).  Two GE Plaintiffs' cases (Ft. Wayne, Indiana and
11   Durham, North Carolina) have been dismissed with prejudice in their entirety, as have
12   the public nuisance claims of all five Ohio GE Plaintiffs (Columbus, Cleveland,
13   Cincinnati, Parma and Lorain).[2]   Newark, New Jersey's claims have also been
14   repeatedly dismissed, nearly all with prejudice.  Even including one newly filed case,
15   by Jackson, Mississippi, a small city with relatively few auto thefts, presently only 23
16   GE Plaintiffs have public nuisance claims that have survived the pleadings stage.  The
17   interlocutory appeal, which impacts the five Ohio plaintiffs as well as 12 others from
18   at least three other states, is under submission and awaiting decision.  A reversal of
19   the order denying dismissal of those claims, or even a certification of some of those
20   cases to state supreme courts on the central issue of legal duty, would bring the total
21   down to single digits given 11 GE Plaintiffs filed in their home districts and may opt
22   out of any bellwether consideration, as GE Plaintiff St. Louis apparently already has.
23   *See Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998).  No
24   MDL would ever have been formed to process the public nuisance claims of a handful
25   of disparate cities from around the country.

26

27   _____
   [2]   This Court's tentative order regarding the Ohio GE Plaintiffs' negligence claims
28   dismisses those claims with leave to amend.

This Court could not have been more clear on April 11: the Court will consider bellwethers *after* the production of the Five Cities' police reports as this Court ordered on April 11. Apparently GE Plaintiffs have determined that they—not this Court—will decide the bellwether question and therefore they do not need to comply with the discovery they were plainly ordered to produce to assist the Court in resolving the issue. GE Plaintiffs' tactical presumption that bellwethers will be utilized notwithstanding the contested nature of the issue, as well as the Court's express statement that it will only consider bellwethers after the pending motion for judgement on the pleadings of the Ohio GE Plaintiffs, constitutes further contemptuous conduct. GE Plaintiffs should not be permitted to disobey Court orders *ever*, and particularly where, as here, the Five City Order was intended specifically to assist this Court in its analysis of whether to use bellwethers in the first instance.

This Court should issue an order to show cause why the Five Cities should not be held in contempt, set an evidentiary hearing regarding contempt, mandate the Five Cities' immediate compliance with the Five City Order, and impose monetary sanctions to coerce compliance and reimburse HMA and KA for the fees and costs they have incurred.

## PROCEDURAL BACKGROUND

The GE Plaintiffs' lawsuits describe at length a particular type of auto theft whereby groups of offenders dubbed the "Kia Boyz," encouraged by social media to commit crimes and publicize their actions, steal model year 2011–2021 Hyundai and Kia vehicles without immobilizers, allegedly creating a public nuisance in their communities. Since discovery began, HMA and KA have sought to discover the specific instances of theft of Subject Vehicles alleged in the complaints and the identities of the offenders who committed the offenses. Incredibly, *not one* GE Plaintiff has identified a single theft of a Subject Vehicle as described in their complaint, and no GE Plaintiff has disclosed the identities of all the offenders they determined committed the thefts, even though the litigation is in its third year. The

instant Motion relates to the persistent effort by HMA and KA to obtain this highly salient information—which only GE Plaintiffs possess—and GE Plaintiffs' contemptuous insistence that they will not provide the information even if ordered to do so, as it severely undermines their claims. For example, in one GE Plaintiff's jurisdiction, one juvenile offender had 18 open cases, repeating the conduct over and over with impunity. *See* Ex. H to Madison Decl. The offender stole a car, was apprehended and arrested, released, and then proceeded to steal another car, for which he was apprehended and arrested, … and released once again by the GE Plaintiff! *See* Ex. D to Madison Decl. at 29:14–20.

## A.    HMA And KA Seek Discovery Of Thefts Of Subject Vehicles And Offender Identity

GE Plaintiffs have been aware since at least the inception of discovery and the entry of the CMO that HMA and KA would seek discovery of information regarding Subject Vehicle thefts and offender identities. Dkt. 370 at 3. In fact, the CMO, negotiated by the Parties, specifically contemplated disclosure of information regarding "the thefts of subject vehicles as alleged in GE Plaintiffs' complaints and motor vehicle theft generally (including attempted theft)" as well as "law enforcement and prosecution records." *Id.* at 6. Despite this, and on the basis that this discovery exceeded the limitations of Phase 1 discovery, GE Plaintiffs have refused to provide the requested information and resisted HMA and KA's requests for law enforcement records containing information on thefts, related crimes, and offenders that HMA and KA could use to identify the information themselves. At the April 11 status conference, however, the Court made explicit that Phase 1 was over and no longer "cabined" discovery. Ex. D to Madison Decl. at 18:25–19:1, 31:2, Hr'g Tr. (Apr. 11, 2025).

**B.    The Court Ordered GE Plaintiffs To Produce Police Records For Five GE Plaintiffs During The April 11, 2025 Status Conference**

At the April 11, 2025 status conference, the Court learned that police reports containing critical information regarding Subject Vehicle thefts, related crimes, and offender identities remained outstanding.  Accordingly, the Court authorized HMA and KA to request production of police records containing this information.  *Id.* at 31:1–9 ("THE COURT: I think you're entitled to that data.  To the extent that discovery had been previously cabined by Phase I, there's no longer that limitation. To the extent that your outstanding interrogatory requests contemplate that type of information that goes beyond Phase I, I think you're entitled to … request production and come back to me.").  GE Plaintiffs' counsel attempted to tie this discovery to Phase 2 on the hope and presumption that only bellwethers would need to produce the requested police records.  The Court, however, made clear that the ordered discovery was not limited by previous Phase 1 and Phase 2 limitations and that production of police records was a prerequisite to any discussion regarding the use and selection of bellwethers.

After hearing both sides speak about producing police records, as well as representations from the GE Plaintiffs about the burden of producing such records for all 27 GE Plaintiffs, *see* Ex. D to Madison Decl. at 34:23-35:22, the Court decided to order production from only five GE Plaintiffs.  The Court ordered this discovery to proceed forthwith and indicated that GE Plaintiffs' concerns over the burden of production for *all* GE Plaintiffs would be revisited at a later date when issues such as the use of bellwethers were ready for discussion:

> THE COURT: "For the time being, *I'm going to direct the defendants to narrow the focus of the request to five cases, and just so we're not just standing there, go forward with the five cases*. I'll revisit that issue [of burden] when we visit the new Motions to Dismiss and renew this further discussion of the bellwethers. I agree it may well not make sense to go to that detail on folks whose cases I'm going to stay, but *let's get some of that information out there*."

HMA AND KA'S MOTION FOR AN OSC RE: GE PLAINTIFFS' VIOLATION OF COURT ORDER

Ex. D to Madison Decl. at 35:23–36:5 (emphasis added).

GE Plaintiffs then raised the issue of state law differences between cities that could impact production, at which point the Court ordered that the five GE Plaintiffs subject to the production order should be from different jurisdictions. *See id*. at 36:6-37:5.  The Court reiterated, however, that HMA and KA would get the records they sought from at least five GE Plaintiffs and that production should proceed promptly:

> THE COURT: "*You're going to get the information*, but I don't think it makes sense to do it across the board.  You know, *pick five from different jurisdictions* since the issue you point to, juvenile privacy, ought to be the same throughout a given state."

> MR. MADISON: "So what we're talking about, Your Honor, is producing the police reports.  That has to be something that the Cities knew they were going to have to do at some point."

> THE COURT: "Right."

> MR. MADISON: "And if all the Cities – we'll send a copy service to the Cities.  These are large municipal corporations.  They're in litigation all the time.  We'll do the work. We just want copies of the police reports so that we can then follow up and get the information about the offenders, and then we'll do the work of analyzing."

> THE COURT: "*Let's do that right now for five*. No more than one from any given jurisdiction."

> MR. MADISON: "Any given state, Your Honor?"

> THE COURT: "Any state."

> MR. MADISON: "Yes, we can do that. But we have concerns about that given the uncertainty that the interlocutory appeal sort of casts all over this and the like."

> THE COURT: "Right."

> MR. MADISON: "But if Your Honor's mind is made up –"

THE COURT: "At least you'll have some of the data out there, and see where you think it leads, see how much of a burden it is to produce it. *At least we're going to go forward with five*."

MR. MADISON: "Very well, but I would request that it not be without prejudice to ask to do it for the rest."

THE COURT: "Clearly."

*Id*. at 37:1–38:9 (emphasis added).

GE Plaintiffs expressed their approval of this approach and agreed it "makes a lot of sense to do five plaintiffs." *Id*. at 36:7. At no point in the immediate weeks that followed did GE Plaintiffs indicate that their position had changed or that they intended to challenge the Court's Five City Order. *See* Madison Decl. at 1. They did not seek reconsideration of the Order or any other form of relief to shield themselves from the ordered discovery of police reports. *See id*.

C.      **The Five Cities Refuse To Produce The Ordered Information**

On April 18, 2025, pursuant to the Court's unambiguous Order, HMA and KA served a single request for production on the Five Cities seeking police reports for specific thefts, attempted thefts and related crimes that the GE Plaintiffs had themselves identified (in their Phase 1 productions) as involving a Hyundai- or Kia-branded vehicle, for the period starting January 1, 2020. To remove any doubt as to the scope of the request for production, HMA and KA appended to each request the relevant spreadsheets regarding thefts, attempted thefts, and related crimes that each GE Plaintiff had produced and highlighted the incidents for which records were sought. Ex. E to Madison Decl., HMA and KA's Second Set of Requests for Production to St. Louis, Exs. A-1 and B-1. After receiving HMA and KA's request, none of the Five Cities moved for a protective order, reconsideration or clarification of the Court's Order, or any other form of relief. *See* Madison Decl. at 1. HMA and KA did not receive any communication from counsel for the Five Cities to meet and confer regarding the request. *See id*.

In the period after HMA and KA served the ordered discovery on the Five Cities, counsel for GE Plaintiffs and counsel for HMA and KA also engaged in communications about scheduling the upcoming June 9, 2025 status conference before the Court. *See id.* at 1–2. Counsel for HMA and KA clearly expressed the need for the requested police records and the expectation that the Five Cities would comply with ordered discovery in advance of the status conference so HMA and KA would have "some time to review and analyze that information before the discussion of bellwethers." Ex. A to Madison Decl., Email from S. Madison (May 5, 2025). Counsel for the Five Cities remained silent and did not make any indication that they disagreed with the Court's Order or that they would be refusing to produce anything. *See* Madison Decl. at 2.

On May 19, 2025, after having heard nothing from the Five Cities, counsel for HMA and KA reached out to inquire about their productions and whether it would be helpful to discuss the request. Ex. B to Madison Decl., Email from S. Madison (May 19, 2025). The Five Cities responded with their respective Responses and Objections and without a single production. *See, e.g.*, Ex. F to Madison Decl., Tacoma's Responses and Objections to HMA and KA's Second Set of Requests for Production.[3]

In their responses, the Five Cities disavowed this Court's Order. Beyond making various baseless and inapplicable discovery objections, the Five Cities denied that the request from HMA and KA were authorized by the Court, characterized the request as "procedurally improper," and indicated that they would refuse to produce police records. One of the Five Cities, St. Louis, even asserts that it cannot (and will not) produce the requested discovery even during Phase 2 because it has not waived *Lexecon* and thus cannot be a bellwether. Ex. G to Madison Decl. at 12, St. Louis' Responses and Objections to HMA and KA's Second Set of Requests for Production.

---

[3]    Tacoma's Responses and Objections are virtually identical to those of the other Keller-represented GE Plaintiffs and are thus used as an example.

St. Louis presupposes (incorrectly) that this Court has already decided on the use of bellwethers and that only bellwethers will need to produce materials in Phase 2. However, as the Court made clear, it has not made any decision on bellwethers and the Five City Order required production independent of a GE Plaintiffs' selection as a bellwether.

The Five Cities' refusal to produce the requested discovery, as ordered by the Court, plainly betray their true motivations: to use any excuse, pretext, and tactic to not produce critical discovery until and unless the Court orders bellwethers. The Five Cities cannot unilaterally defy any of this Court's orders, much less do so in clear bad faith in order to shortchange HMA and KA of discovery to which they are entitled. Given this impasse, HMA and KA now seek relief from the Court.

## LEGAL STANDARD

"Civil contempt ... consists of a party's disobedience to a specific and definite court order by failure to take all reasonable steps within the party's power to comply." *Onion Boy, Inc. v. Mike's Bulk Dist. Inc.*, 2021 WL 8893647, at *1 (C.D. Cal. Nov. 30, 2021) (J. Selna). The Court can impose sanctions for civil contempt in order to compel compliance with an order and remedy harm to the wronged party. *Id*. at *2.

## ARGUMENT

## I.    GE PLAINTIFFS ARE IN VIOLATION OF THIS COURT'S CLEAR AND UNAMBIGUOUS ORDER

The Five City Order was valid and binding. *See Dreith v. Nu Image, Inc.*, 648 F.3d 779, 787 (9th Cir. 2011) ("Sanctions may be imposed even for violation of a court's oral order, as long as a party has unequivocal notice that a court has asked that certain documents be produced.") (cleaned up). The Five Cities cannot arbitrarily refuse to comply with orders that they find unfavorable, yet outright refusal is the tactic they have chosen to adopt in their unjustified attempt to deny court-ordered discovery to HMA and KA.

This Court was clear that the Five Cities had to produce information regarding the thefts of Subject Vehicles, related crimes, and the offenders involved. The Court explained that HMA and KA were "entitled to that data" and were "entitled to … request production and come back to me." Ex. D to Madison Decl. at 31:1-9. The Court reiterated its directive repeatedly. *See id.* at 35:23-36:5, 37:1-5, 37:11-20, 38:3-9 ("At least you'll have some of the data out there, and see where you think it leads, see how much of a burden it is to **produce it**. At least *we're going to go forward with five*.") (emphasis added).

HMA and KA followed the Court's Order and served a single request for production to the Five Cities on April 18, 2025. The Five Cities, however, refused to produce a *single* document. This is a blatant violation of the Court's Order for which the Court should issue an order for the Five Cities to show cause to why they should not be held in contempt.

## II.    THE FIVE CITIES DO NOT HAVE VALID GROUNDS FOR NONCOMPLIANCE

None of the Five Cities took any steps to express concerns regarding the Five City Order. Indeed, Ms. Cappio, counsel for GE Plaintiffs, approved of the limited discovery the Court ordered. Responding to the Court's direction to "go forward with the five cases," at the April 11 status conference, Ms. Cappio stated that it "makes a lot of sense to do five plaintiffs," and noted "we're very in favor of doing that -- having it be on a narrow subset of plaintiffs." *Id.* at 35:14-15, 35:25–36:1, 36:7. The chief concern discussed during the April 11 status conference was the issue of state confidentiality laws, which the GE Plaintiffs argued could prohibit production of certain records in certain states. *See id.* at 34:1–15. The Court resolved this by ordering HMA and KA to pick five GE Plaintiffs from five different jurisdictions and to seek local court orders to lift confidentiality for juveniles should the issue arise in connection with identifying information in specific police records. *See id.* at 32:3–8, 32:19–22, 37:1–5.

The objections the Five Cities now raise as part of their strategy of limiting discovery to bellwethers are completely unjustifiable. To the extent the Five Cities had any basis for deviating from the Court's Order, it was incumbent upon them to seek reconsideration of the Order or pursue any other form of available relief. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1479 (9th Cir. 1992) (upholding finding of contempt where a party failed to take steps to limit scope of discovery or otherwise substantially comply); *Gen. Signal Corp. v. Donallco, Inc.*, 787 F.2d 1376, 1379 (9th Cir. 1986) (upholding contempt finding for party that "did not take all reasonable steps to prevent the violations" of a court order). What they could not do is reimagine the Court's Order to falsely claim they were under no obligation to produce police records and then refuse to produce a single document. However, this is the obstructionist approach the Five Cities have taken. The Five Cities' responses reveal a revisionist retelling of the April 11 status conference in hopes of excusing their contemptuous noncompliance.

### A.    HMA And KA's Request For Production Is Procedurally Proper And Authorized

The Five Cities assert in their May 19, 2025 Responses and Objections that HMA and KA's April 19 request was "procedurally improper" because HMA and KA have already exhausted the 25 Requests for Production that the Phase 1 CMO authorized, and that no further discovery can proceed until this Court "enter[s] an order authorizing further discovery." Ex. F to Madison Decl. at 6. They also inexplicably assert that HMA and KA "are barred from seeking" the documents they have requested due to the Special Master's finding that requests for underlying police reports were beyond the scope of Phase 1. *Id*. This is nonsensical. The Court explicitly stated "Phase I is done" and issued the Five City Order so discovery could proceed "so we're not just standing there" while Phase 2's discovery process is formalized. Ex. D to Madison Decl. at 34:18, 35:25–36:1. During the May 30 meet and confer, the Five Cities appeared to adopt a new (and equally absurd) position.

They agreed that HMA and KA were authorized to seek discovery, but argued that the Order to proceed with discovery did not mean they had a corresponding obligation to produce documents in response. This position is too cute by half and shows nothing but contempt for this Court's Order.

### B. GE Plaintiffs Mischaracterize Key Facts

In their responses, the Five Cities misconstrue the discovery requests and the representations made before the Court during the April 11 status conference. First, they allege the requests were "not limited to incidents involving juveniles, in complete disregard of [HMA and KA's] representations to the Court." Ex. F to Madison Decl. at 7. However, HMA and KA never represented that they would only seek records regarding juvenile offenders but made clear that their concern over the lack of discovery extended to adult offenders as well as the identification of Subject Vehicles "stolen as alleged in the Complaint." *See* Ex. D to Madison Decl. at 28:4-6, 28:15-16, 31:17-19. Information regarding juvenile offenders is only a subset of the information HMA and KA need. Second, the Five Cities misrepresent the meet and confer proposal from HMA and KA as well as the process the Parties and the Court discussed for seeking local court orders regarding confidential juvenile information. The Five Cities assert that meeting and conferring and seeking local court orders regarding confidentiality were prerequisites to any discovery. *See* Ex. F to Madison Decl. at 7. Not so. Rather, this plan revolved around GE Plaintiffs *first* producing police records. If, however, GE Plaintiffs redacted certain information from the records *regarding juveniles*, the Parties would meet and confer to ideally resolve the issue or to at least provide some workable information to HMA and KA for petitioning the relevant local court for relief. This is the only reasonable strategy since otherwise HMA and KA would be left without any underlying documents for which they would seek to have confidentiality lifted. *See* Ex. D to Madison Decl. at 33:1-4 (Mr. Madison: "There's a bit of a chicken and egg problem on that because we don't have the names to know who to ask for, so -- but we'll meet and confer and figure out a

1   way to do this.").  The Court also recognized this, noting that HMA and KA could

2   seek to lift confidentiality "if you know for a particular case Doe Male No. 1 did it as

3   a juvenile and you've got a police record." *Id*. at 32:19-22.

4       The process the Five Cities assert HMA and KA failed to comply with, whereby

5   the Parties would first meet and confer regarding the Court's unambiguous Order to

6   immediately proceed with discovery, makes no sense.  The Court made no indication

7   that the ordered discovery was in any way subject to a meet and confer requirement,

8   *see id*. at 37:1-38:18.  HMA and KA were supposedly also required to first seek local

9   court orders that would effectively be advisory opinions on discovery either not yet

10  propounded or to which the Five Cities had not yet responded.  This is the reverse

11  order for seeking relief from a court.  This process also has no bearing on the Five

12  Cities' failure to produce a single document relating to adult offenders or those

13  incidents in which no offender was identified.  After all, the state law confidentiality

14  issue surrounding juvenile offenders was simply the purported concern GE Plaintiffs

15  expressed regarding documents involving *that subset* of offenders, not all.  *See id*. at

16  31:16-17 (Mr. Madison: "[I]t's a technicality that the Cities are relying on for juveniles

17  in particular.").

18      Finally, the Five Cities' assertion that HMA and KA requested more than "just

19  copies of the police reports" is frivolous.  As "police report" is an undefined term,

20  HMA and KA requested the types of documents reasonably covered by a common

21  understanding of the term, such as "arrest reports and records, crime reports and

22  records, investigative reports and records and interview reports and records."  Ex. C

23  to Madison Decl. at 3–6, HMA and KA's Second Set of Requests for Production to

24  Tacoma.

25  **C.   The Five Cities' Relevance And Proportionality Objections**

26  **Demonstrate Their Bad Faith**

27      The Five Cities' objections regarding relevance and disproportionality are not

28  well taken.  The Five Cities continue to assert that "[t]he identity of individuals

involved in incidents of stolen vehicles is irrelevant" and that providing the information "is disproportionate to the needs of the case, particularly at this stage of the litigation." Ex. F to Madison Decl. at 7. This is despite the Court unambiguously ruling that HMA and KA are "entitled to that data" and that the ordered discovery should proceed "right now for five" plaintiffs. Ex. D to Madison Decl. at 31:1, 37:17.

The Five Cities also claim the ordered discovery is burdensome, but the entire purpose of "narrow[ing] the focus of the request to five cases" was to get "some of the data out there, and see where you think it leads, [and] see how much of a burden it is to produce it." *Id.* at 35:24-25, 38:3-6. GE Plaintiffs also approved of the discovery for five cities, with Ms. Cappio admitting that "[f]or a small subset, it is workable" and that it "makes a lot of sense to do five plaintiffs." *Id.* at 35:10, 36:6-8.

Despite representing that producing records for five cities was viable and a good idea, GE Plaintiffs have now changed their stance. In their responses and at the May 30 meet and confer, counsel for the Five Cities disregarded their prior representations and claimed the burden for production for five plaintiffs was prohibitive. Regardless of this bait and switch, the Five Cities' conclusory burden objections cannot stand without supporting evidence, a requirement they recognized (and have now ignored) when they attested to the burden of producing documents for *all* plaintiffs rather than just five. *See id.* at 35:10 ("We can provide declarations on burden."); *see also In re Citimortgage, Inc., Home Affordable Modification Program ("HAMP") Litig.*, 2012 WL 10450139, at *4 (C.D. Cal. June 7, 2012) (rejecting inadequately supported burden objection).

## III.    THE COURT SHOULD IMPOSE SANCTIONS TO COERCE COMPLIANCE AND REIMBURSE HMA AND KA FOR THEIR EXPENSES

Decisive action is necessary to obtain the Five Cities' compliance with the Court's April 11 Order. GE Plaintiffs appear determined to avoid further discovery

1  until a decision from the Court regarding bellwethers in hopes of then only needing
2  to provide discovery on bellwether plaintiffs.  This is part of a pattern of avoiding
3  authorized discovery that has been ongoing for more than a year, *see e.g.*, CMO at 3
4  (authorizing discovery of "the identity of relevant third parties"); the disregard for the
5  Court's Order aligns with this strategy.

6         GE Plaintiffs' stonewalling has now also become highly prejudicial to HMA
7  and KA.  *See Phenylpropanolamine (PPA) Prods. Liability Litig.*, 460 F.3d 1217,
8  1227-28 (9th Cir. 2006) ("Failing to produce documents as ordered is considered
9  sufficient prejudice. … The law also presumes prejudice from unreasonable delay.").
10 Discovery is set to close in August and highly significant determinations regarding
11 bellwethers and the scope of future discovery are impending.  The Court's Order was
12 meant to kickstart productions for these exact purposes.  *See* Ex. D to Madison Decl.
13 at 35:25-36:3 (The Court: "[G]o forward with the five cases.  I'll revisit that issue
14 when we visit the new Motions to Dismiss and renew this further discussion of the
15 bellwethers.").

16        The Five Cities have shown they will not comply with the Court's Order.  As
17 such, the Court should impose coercive sanctions in the amount of $2,500 for each
18 day of continued noncompliance.  *See Fed. Trade Comm'n v. Productive Mktg., Inc.*,
19 136 F. Supp. 2d 1096, 1113 (C.D. Cal. 2001) (imposing coercive per diem monetary
20 sanction).

21        The Five Cities should also be ordered to reimburse HMA and KA for the fees
22 and costs that HMA and KA have incurred in bringing this Motion.  Such sanctions
23 are proper for civil contempt and within the Court's discretion.  *See Onion Boy*, 2021
24 WL 8893647, at *3 (granting attorneys' fees and costs for civil contempt).  They are
25 also specifically provided for by the federal rules unless a party can show its failure
26 to comply with a court order "was substantially justified or other circumstances make
27 an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2); *see also Hyde & Drath v.
28 Baker*, 24 F.3d 1162, 1171 (9th Cir. 1994), as amended (July 25, 1994) (shifting

burden to party being sanctioned).  As discussed, there is no substantial justification for the Five Cities' refusal to obey the Court's Order and produce records that the Court squarely held HMA and KA are entitled to and must be produced.

## **CONCLUSION**

For the foregoing reasons, this Court should (1) compel the Five Cities' compliance with the Five City Order; (2) issue an order for the Five Cities to show cause why they should not be held in contempt of Court for their failure and refusal to comply with the Five City Order; (3) schedule an evidentiary hearing regarding the Five Cities' contemptuous conduct; (4) impose coercive sanctions in the amount of $2,500 for each day of continued non-compliance against any GE Plaintiff continuing to fail to comply with the Court's Order; and (5) award monetary sanctions according to proof against the Five Cities, and each of them, to reimburse HMA and KA for the fees and costs that they have incurred in bringing this Motion.

DATED:  June 6, 2025                        QUINN EMANUEL URQUHART &
                                            SULLIVAN, LLP


                                            By  */s/ Steven G. Madison*
                                                Steven G. Madison (SBN: 101006)
                                                stevemadison@quinnemanuel.com
                                                Justin C. Griffin (SBN: 234675)
                                                justingriffin@quinnemanuel.com
                                                865 South Figueroa Street, 10th Floor
                                                Los Angeles, California 90017-2543
                                                Telephone:   (213) 443-3000
                                                Facsimile:   (213) 443-3100

                                                *Attorneys for Defendants Hyundai Motor
                                                America and Kia America, Inc.*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7-3, I certify that the parties conferred in a good-faith effort to resolve the matter without court action prior to the filing of this Motion.

DATED:  June 6, 2025                    QUINN EMANUEL URQUHART &
                                        SULLIVAN, LLP


                                        By  */s/ Steven G. Madison*
                                            Steven G. Madison (SBN: 101006)
                                            stevemadison@quinnemanuel.com
                                            Justin C. Griffin (SBN: 234675)
                                            justingriffin@quinnemanuel.com
                                            865 South Figueroa Street, 10th Floor
                                            Los Angeles, California 90017-2543
                                            Telephone:  (213) 443-3000
                                            Facsimile:   (213) 443-3100

                                            *Attorneys for Defendants Hyundai Motor
                                            America and Kia America, Inc.*

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants certifies that this brief contains 5,656 words, which complies with the word limit of L.R. 11-6.1.

DATED:  June 6, 2025                QUINN EMANUEL URQUHART &
                                    SULLIVAN, LLP


                                    By  */s/ Steven G. Madison*
                                        Steven G. Madison (SBN: 101006)
                                        stevemadison@quinnemanuel.com
                                        Justin C. Griffin (SBN: 234675)
                                        justingriffin@quinnemanuel.com
                                        865 South Figueroa Street, 10th Floor
                                        Los Angeles, California 90017-2543
                                        Telephone:  (213) 443-3000
                                        Facsimile:   (213) 443-3100

                                        *Attorneys for Defendants Hyundai Motor
                                        America and Kia America, Inc.*