KELLER ROHRBACK L.L.P.
Gretchen Freeman Cappio (*pro hac vice*)
gcappio@kellerrohrback.com
1201 Third Avenue, Suite 3400
Seattle, WA 98101-3052
Telephone: (206) 623-1900
Facsimile:  (206) 623-3384

*Chair of the Governmental
Entities Committee*

QUINN EMANUEL URQUHART &
SULLIVAN LLP
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendants Hyundai
Motor America and Kia America, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>*This document relates to:*<br><br>Governmental Entities Track | Case No. 8:22-ML-3052-JVS-(KESx)<br><br>The Honorable James V. Selna<br><br>**GOVERNMENTAL ENTITY TRACK JOINT SUBMISSION REGARDING THEIR RESPECTIVE POSITIONS REGARDING THE OTHER SIDE'S BELLWETHER NOMINEES** |

In accordance with the Court's Case Management Order, Dkt. No. 1001, the Governmental Entity ("GE") Plaintiffs and Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") submit the following about their respective positions regarding the bellwether nominees.

# GE PLAINTIFFS' POSITION

Pursuant to the Case Management Order, Dkt. No. 1001, the Chair of the Governmental Entity ("GE") Plaintiffs has identified the City of Rochester, New York, and the Metropolitan Government of Nashville and Davidson County, Tennessee, as their bellwether nominees. Below, GE Plaintiffs object to each of Defendants' bellwether nominations—(1) the City of Madison, Wisconsin; (2) Anne Arundel County, Maryland ("AACG"); and (3) the City of Green Bay, Wisconsin.

## I. Bellwether selection criteria.

Ideally, bellwether trials provide an "efficient vehicle to decide common legal issues and rule on the admissibility of key evidence" in the broader MDL proceeding. *See* Melissa J. Whitney, *Bellwether Trials in MDL Proceedings* at 5, Fed. Judicial Ctr. & Judicial Panel on Multidistrict Litig. (2019) (*hereinafter,* "*Whitney*"). Bellwether selection should be geared toward "produc[ing] a sufficient number of representative verdicts … to enable the parties and the court to determine the nature and strength of the claims, … and what range of values the cases may have if resolution is attempted on a group basis." Manual for Complex Litigation (Fourth) § 22.315 (2004). As such, the more representative the bellwether trial is, "the more reliable the information about similar cases will be." *Id.* At bottom, the "primary purpose" of bellwether trials is to generate "meaningful information, experience, and data to allow the parties to make an intelligent and informed decision as to the future course of the litigation." Eldon E. Fallon, *Bellwether Trials*, 89 UMKC L. Rev. 951, 952 (2021). As such, key selection criteria for appropriate bellwethers include (a) the ability to serve, (b) trial-readiness, (c) representativeness, and (d) the nature of governing state laws. *See Whitney* at *21.

## II. Nashville and Rochester are willing and able bellwethers that are representative of a wide swath of the GE Plaintiffs.

<u>Nashville and Rochester are ready and able to serve</u>. Nashville and Rochester are aware of the tight discovery schedule the Court has set and are ready to devote

-1-   Case No. 8:22-ML-3052-JVS-(KESx)
GE TRACK JOINT SUBMISSION REGARDING BELLWETHER NOMINEES

the resources necessary to meet it. Demonstrating their commitment, Nashville has already produced the Police Reports requested by Defendants, and Rochester is proactively collecting their Police Reports, to ensure that, if selected, they can produce responsive documents on the discovery schedule set by the Court. Rochester is uniquely aware of the resources necessary to fulfill the role, as the City has experience serving as a bellwether in the multidistrict litigation related to the Opioids epidemic. *See In Re: Nat'l Prescription Opiate Litig.*, No. 1:17-md-02804-DAP, Dkt. No. 5231 at *1 (N.D. Ohio Oct. 27, 2023).

<u>Nashville is representative</u>. Nashville is a merged entity—comprising both urban and county geographies. This bellwether nominee could thus aptly be used as a proxy for the three other county-GE Plaintiffs, including the recently-filed GE Plaintiff case, *Shelby County, Tennessee v. Hyundai Motor Company*, No. 8:25-cv-01926 (C.D. Cal. Aug. 28, 2025). Nashville is one of two GEs from its state in this litigation, and one of six from the South.[1] As such, Nashville's bellwether trial may catalyze resolution of six or more GE Plaintiffs' cases. *See* Feb. 28, 2024 Status Conf. Tr. at 13:9–13 ("THE COURT: . . . [I]t frequently occurs that in a particular geographic area, given when each state was founded, its law will follow the law of the sister state. That may provide some guidance as to what cases are most appropriate for a bellwether."). Plus, Nashville is more populous than Defendants' pick of Anne Arundel County; Nashville thus offers greater representativeness of a plaintiff pool that includes major cities like Chicago and New York, with urban populations of over two million.

<u>Rochester is representative</u>. Rochester is one of **seven** New York entities that filed suit. A trial of its claims would help to resolve the claims of at least a fourth of

---

[1] The six GEs in the South are: (1) the City of Birmingham, Alabama; (2) Lexington-Fayette Urban County and (3) Louisville / Jefferson County Metro Government, Kentucky; (4) the City of Jackson, Mississippi; (5) Shelby County and (6) the Metropolitan Government of Nashville and Davidson County, Tennessee.

-2-   Case No. 8:22-ML-3052-JVS-(KESx)
GE TRACK JOINT SUBMISSION REGARDING BELLWETHER NOMINEES

the GE Plaintiffs, if not more. As for geographic diversity, the East/Mid-Atlantic is the second-most represented region in this litigation, with nine total GEs including Rochester. The City could therefore help drive resolution not only on a state level, but on a regional scale.

<u>Tennessee: no apparent near-term changes in governing state law</u>. Nashville has brought both public nuisance and negligence claims like numerous other GEs. GE Plaintiffs are not aware of any pertinent appeals of Tennessee public nuisance or negligence law. Further, Nashville has not undergone recent policy changes—unlike Madison and Anne Arundel County, discussed below—that would make it an outlier among the pool of GEs.

<u>New York: no apparent imminent changes in controlling state law</u>. While the Ninth Circuit has certified a question to the New York Court of Appeals regarding duty under negligence law, Dkt. No. 916-3, , GE Entity Track Joint Proposed Agenda Ex. C at 14, that Court has not agreed to answer the question. Any decision is unlikely to come before, or affect, the trials set this spring—unlike the appeals before the Maryland Supreme Court discussed below. Regardless of the Court of Appeals' choice to answer or any answer itself, the New York GEs' public nuisance claims will proceed and need to be resolved.

In sum, GE Plaintiffs' picks of Nashville and Rochester fulfill each of the key bellwether selection criteria. In terms of population, they lie in the middle of the pack. Thus, they are poised to generate data that may be a proxy for a range of GEs, both large and small, and organized as cities and counties—or hybrids, like Lexington.

**III. A trial of Defendants' nominees would be of limited—if any—utility to other GE Plaintiffs.**

<u>Maryland's shifting law</u>. Anne Arundel County is not a suitable bellwether because the applicable public nuisance law has become unclear and is thus not representative of the nearly thirty other GE Plaintiffs. *See Whitney* at *22. The Maryland Supreme Court is set to hear two cases this fall—both of which AACG

brought—regarding public nuisance claims. Specifically, the Maryland Supreme Court agreed to answer the following: "[W]hat are the elements of such a public nuisance claim, and what types of potential relief can a local government plaintiff seek when asserting such a claim?" *Anne Arundel Cnty. v. Express Scripts, Inc., et al.*, No. 24-cv-00090, Dkt. No. 105 at *1 (D. Md. Feb. 21, 2025) (order certifying state law questions). Oral argument is scheduled for September 9, 2025. In the other appeal pending regarding a public nuisance claim against oil and gas companies, oral argument is scheduled for October 6, 2025. *See Mayor of Baltimore v. B.P. P.L.C.*, 490 Md. 278, 334 A.3d 827 (2025) (answering whether "Maryland law preclude[s] nuisance claims based on injuries allegedly caused by the worldwide production, promotion, and sale of a lawful consumer product").

Unlike the New York Court of Appeals, which may decline to answer the question certified to it, the Maryland Supreme Court *will* answer these questions and either decision could shift the legal landscape shortly before or *during* trial next spring. Moreover, the Maryland Supreme Court's decisions could eliminate one of the bellwether trials altogether because AACG did not bring a negligence claim, unlike numerous other Ges, including Rochester.

Wisconsin's minority view. A Wisconsin bellwether will not resolve the claims of other GEs in the state or beyond. Wisconsin negligence law is settled but adopts the *Palsgraf* minority view. *See* Dkt. 900, Memorandum at *4. Any trial of those claims would have limited applicability to GEs outside of Wisconsin. Public nuisance law is more settled, but other GEs in the Midwest (*e.g.*, those in Ohio and Illinois) would likely need to try their ordinance-based public nuisance and CPA claims. A trial of Madison or Green Bay is unlikely to resolve even neighboring Milwaukee's claims because of the differences in magnitude of the problems Milwaukee experienced.

Comparative ability to serve and trial-readiness. Defendants' nominees may have difficulty meeting the expedited discovery schedule in this case. Defendants

did not select AACG, Madison, or Green Bay to be any of the five GEs to produce police reports. As such, they haven't done so. The 30(b)(6) designees for AACG, Madison, and Green Bay have recently retired or moved on. It will take a substantial amount of time to prepare someone else to testify about the issues in this case. The departure of Madison's 30(b)(6) designee poses unique issues because he was the City's point person on this case and ran both the Records section and the Crime & Data Analysis section of the Police Department. Following his departure, his previous job has been reorganized out of existence. Madison's police chief also departed recently, and the City selected a new police chief just last week. Thus, even if the new chief is able to bring Madison's full resources to bear, those resources are limited at this critical time, which is of practical concern for meeting the discovery schedule set for the bellwethers.

Defendants' nominees are unrepresentative due to plaintiff-specific facts. A new Maryland Department of Juvenile Services executive directive makes AACG an outlier in terms of addressing crimes allegedly committed by youth. *See* Maryland Department of Juvenile Services, *Detention Recommendation for New Complaints for Youth on Electronic Monitoring*, DIR-CS-39-25. In Madison, a recent change in public records requests regulations has opened the floodgates to a deluge of requests for video footage that has overwhelmed the already short-staffed records department that. *See Madison Councilman Tries to Block Police from Collecting Newly OK'ed Open Records Fees*, Wis. State J. (Feb. 13, 2025), https://madison.com/news/local/government-politics/article_df5ef2d8-e96b-11ef-8492-3ffb3582eb76.html; 2023 Wis. Act 253 (creating a subsection of the public records statutes, *i.e.*, Wis. Stat. Ann. § 19.35(3)(h)). And Green Bay is not a suitable bellwether because of its barely six-figure population and the comparatively meager resources it could devote to serving as a bellwether.

For the foregoing reasons, GE Plaintiffs respectfully request the Court select Nashville and Rochester to serve as bellwethers.

## HMA AND KA'S POSITION[2]

The Case Management Order Re Phase II in Governmental Entity Track ("CMO," Dkt. 1001), directed the parties to provide "two potential bellwether plaintiffs per side for each trial date," (Dkt. 1001 at 5:8–10), and to respond to the others side's proposal by September 2, 2025, (*id.* at 5:11–12). On August 25, 2025, GE Plaintiffs proposed Rochester, New York, and the Metropolitan Government of Nashville and Davidson County, Tennessee. HMA and KA proposed Madison, Wisconsin and Anne Arundel County, Maryland for the first trial, and Madison and Green Bay, Wisconsin for the second trial.

A. <u>GE Plaintiff Rochester Is Ineligible For Bellwether Consideration</u>

The Court has repeatedly excluded New York entities from bellwether consideration given that a key legal issue has been certified to New York to resolve. The Ninth Circuit certified the question whether under New York law HMA and KA "owe the New York Municipalities a duty to exercise reasonable care in the design, manufacture, and distribution of their vehicles?" *See* Dkt. 901. On June 30, 2025, the Ninth Circuit confirmed that the New York Court of Appeals received the certification. Case No. 24-2350, Dkt. 70.1 (Acknowledgement Letter from Deputy Clerk of New York Court of Appeals). No further action has yet been taken by the New York Court of Appeals.

During a meet and confer in the Courtroom on June 27, 2025, HMA and KA proposed excluding both New York and Ohio GE Plaintiffs from bellwether consideration, whereas GE Plainiffs wished to include both. When the parties sought guidance from the Court regarding their differing positions, the Court replied that the proposals "won't include New York but will include Ohio."

---

[2] The Court has acknowledged HMA and KA's continued objection to the bellwether process, which they reiterate for the record here. *See, e.g.*, June 9, 2025 Tr. at 25:23–24 ("Now, I understand the defendants' position, and I respect it.").

The Court reiterated the same direction on the record at the August 7, 2025 status conference:

> "MR. MADISON: **So when you take out the New York plaintiffs, which are in the New York Court of Appeals pending certification,** *which Your Honor already did* –"
>
> "THE COURT: *Right.*"
>
> "MS. CAPPIO: That's the negligence claim."
>
> "THE COURT: *Put that aside*."
>
> "MR. MADISON: *Your Honor already took those off the table*. We think Ohio is also a poor bellwether candidate because of the pleadings not being resolved, and the fact that the common law public nuisance claim, which is really the predominant claim across all these plaintiffs, would be a poor bellwether. That leaves the Court about eight choices of potential bellwethers, so it shouldn't be difficult to do, is my point. But we'd really like an opportunity to be on a level playing field and have the police report data about the theft."
>
> "THE COURT: But my question is what kind of relief by way of distribution limitations do you need to identify the bellwethers? Who has to get this information that you think can't get it presently?"

August 7, 2025 Tr. at 21:18–23 (emphasis added), a copy of which is attached as Exhibit "A" hereto.

The Court's exclusion of New York GE Plaintiffs was both prudent and necessary. As the issue of the New York GE Plaintiffs' negligence claims is still on appeal, this Court lacks jurisdiction. *See, e.g.*, *City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 886 (9th Cir. 2001) ("[T]he filing of a notice of interlocutory appeal divests the district court of jurisdiction over the particular issues involved in that appeal."); *see also Coinbase, Inc. v. Bielski*, 599 U.S. 736, 742 (2023) ("[C]ourts have held that the *Griggs* principle applies to those aspects of the case involved in a certified interlocutory appeal under 28 U.S.C. § 1292(b)."). Until the New York Court of Appeals resolves the certified question, the viability of New York municipalities' claims remains unripe. Selecting a New York bellwether would

stymie rather than assist in the resolution of the litigation: the Court could not fairly decide dispositive motions, rule on pre-trial matters, or instruct a jury until the certified question is ruled upon. GE Plaintiffs' attempt to sidestep this Court's prior determination should be rejected.

### B. Absent Rochester, GE Plaintiffs Failed to Propose Two Eligible Bellwethers Per Trial as Ordered

The CMO requires each side to "exchange two potential bellwether plaintiffs per side for each trial date." Dkt. 1001 at 5:8–10. By nominating Rochester (which is ineligible as shown above) and Nashville, GE Plaintiffs have in effect proposed only one eligible GE Plaintiff. Even if GE Plaintiffs intended to nominate the same two GE Plaintiffs for each trial, they have still failed to satisfy the requirement.

If the Court intends to select two of HMA and KA's proposed GE Plaintiffs, HMA and KA withdraw this objection. But if the Court intends to select one from each side, GE Plaintiffs should be required to identify another eligible case for each trial date.

### C. Nashville Is an Inappropriate Bellwether

GE Plaintiffs' other nominee—Nashville—although not categorically excluded as was Rochester, is an unsuitable bellwether when judged against the standard of bellwether trials. Nashville is the only GE Plaintiff from Tennessee, meaning its claims would turn on Tennessee state law that applies to no other GE Plaintiff. By contrast, Wisconsin has three GE Plaintiffs, and Kentucky, Maryland, and Missouri each have two. Bellwethers are supposed to be representative, and to do so they should apply the same substantive law as others in the pool. *See* Melissa J. Whitney, *Bellwether Trials in MDL Proceedings: A Guide for Transferee Judges* (Fed. Jud. Ctr. & J.P.M.L. 2019). Nashville fails this test entirely in a real sense—no other GE Plaintiffs' claims are based on Tennessee law—and also relative to the other bellwether options, given that a number of other GE Plaintiffs sue as one of multiple claimants under the same state's law.

Nashville also asserts a claim for gross negligence (one of only three plaintiffs in the entire GE Track to do so) and is subject to the Tennessee Products Liability Act, Tenn. Code Ann. §§ 29-8-101 *et seq*. That statute—like the Ohio Products Liability Act, which preempted common law tort claims for public nuisance resulting in their dismissal with prejudice (Dkt. 881)—further underscores Nashville's ill fit as a bellwether.

DATED this September 2, 2025

Respectfully submitted,

| KELLER ROHRBACK L.L.P. | QUINN EMANUEL URQUHART & SULLIVAN LLP |
|---|---|
| By */s/ Gretchen Freeman Cappio* <br> Gretchen Freeman Cappio (*pro hac vice*) <br> 1201 Third Avenue, Suite 3400 <br> Seattle, WA 98101 <br> Phone: (206) 623-1900 <br> Fax: (206) 623-3384 <br> gcappio@kellerrohrback.com <br><br> *Chair of the Governmental Entities Committee* | By */s/ Steven G, Madison* <br> Steven G. Madison (SBN: 101006) <br> stevemadison@quinnemanuel.com <br> Justin C. Griffin (SBN: 234675) <br> justingriffin@quinnemanuel.com <br> 865 South Figueroa Street, 10th Floor <br> Los Angeles, California 90017-2543 <br> Telephone:  (213) 443-3000 <br> Facsimile:    (213) 443-3100 <br><br> *Attorneys for Defendants Hyundai Motor America and Kia America, Inc.* |

**CERTIFICATE OF SERVICE**

I certify that on September 2, 2025, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Gretchen Freeman Cappio*
Gretchen Freeman Cappio