**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

*This document relates to*:

All Tracks

Case No. 8:22-ML-3052-JVS-(KESx)

The Honorable James V. Selna

COURT'S ORDER RE APEX DEPOSITIONS

The Court adopts in full the Special Master's report (Docket No. 1052-1)with regard to so-called APEX depositions with the following additions:

1. Each side shall have four hours for examination of witnesses.

2. The Courts orders that the deposition of Cole Stutz ("Stutz") proceed before the deposition of Brian Latouf ("Latouf"). The Court is satisfied that the present record justifies the deposition of Latouf. The Court orders that the deposition of Stutz be taken first in order to simplify the Latouf deposition.

A copy of the Special Master's report is attached hereto.

Dated: October 6, 2025

IT IS SO ORDERED.

_____
Hon. James V. Selna
United States District Judge

Hon. Gail Andler (Ret.)
JAMS
5 Park Plaza, Suite 400
Irvine, CA 92614
TEL: (714) 939-1300
FAX: (714) 939-8710

*SPECIAL MASTER*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>*This Document Relates to:*<br><br>Subrogation Entities Track. | Case No.: 8:22-ML-03-052-JVS-(KESx)<br>The Honorable James V. Selna<br><br><br>**REPORT & RECOMMENDATION RE DEFENDANTS MOTION FOR PROTECTIVE ORDER RE APEX DEPOSITIONS** |

The Court appointed the undersigned pursuant to Rule 53 of the Federal Rules of Civil Procedure as Discovery Special Master for all non-dispositive discovery matters arising in the Governmental Entities and Subrogation Tracks by order of appointment dated May 15, 2024 ("May 24, 2024 Order"). (Dtk. 421.)  Under Section I.A. of the May 15, 2024 Order, the Special Master is charged with making "any order, finding, report or recommendation on any and all discovery … issues and disputes … between the Parties …" (*Id.* 2:14-17.)  Following consideration of the parties' submissions, evidence, and oral argument on September 8, 2025, the Discovery Special Master hereby makes the following recommendation to the Court.

REPORT & RECOMMENDATION RE PROTECTIVE ORDER RE APEX DEPOS - 1

## I.    NATURE OF DISCOVERY DISPUTE

The present discovery dispute arises from Subrogation Defendants' Motion for a Protective Order seeking to prohibit or limit the depositions of Brian Latouf ("Latouf"), the President and Global Chief Safety Officer for non-party Hyundai Motor Group, and former Chief Safety Officer of Hyundai Motor America ("HMA") and Jurassic Park ("Park"), Chief Safety Officer of Kia America ("KA") under the apex doctrine ("Motion"). The Special Master provides a brief summary of the events relevant to the current dispute.

On or about May 10, 2024, Defendants served their initial disclosures stating the following individuals "are likely to have discoverable information that Defendants may use to support their defenses in this action" as follows, in pertinent part:

| J.S. Park, Chief Safety Officer, KA | Information concerning the defenses in this action, including knowledge of the communications with the National Highway Traffic Safety Administration ("NHTSA") concerning the relevant Kia-branded vehicles. |
| --- | --- |
| Cole Stutz, Executive Director of Vehicle Safety at HMA | Information concerning the defenses in this action, including knowledge of the communications with the National Highway Traffic Safety Administration ("NHTSA") concerning the relevant Hyundai-branded vehicles. |

(Screenshot Excerpts of Defendants' Initial Disclosures, Exh. A to Opp. pg. 3, emphasis added.)

Over a year later, on or about April 21, 2025, Subrogation Plaintiffs emailed Defendants regarding their intent to depose, among others, apex witnesses Brian Latouf and Jurassic Park, as well as Cole Stutz, a subordinate of Mr. Latouf. (Exh. C to Sabovich Decl.) Mr. Stutz, who served as Mr. Latouf's subordinate, has not yet been deposed. Although Plaintiffs noticed his deposition for September 12, 2025, scheduling conflicts and Defendants' failure to offer an alternative date within the discovery cutoff deadline have prevented it from going forward.

Defendants now propose November 4, 2025, after the October 17, 2025, discovery cutoff date. The Special Master understands that while initially all agreed to a date before the discovery cutoff, neither side realized that the date fell on an important religious holiday that would preclude counsel from appearing at the deposition on the agreed-upon date. It is unclear at this juncture whether relief from the cutoff date will be given based on these circumstances, but it does not appear that such leave has been requested, and Mr. Stutz's deposition is not specifically at-issue by the Motion. However, Defendants have asserted that Mr. Stutz's future deposition testimony would be duplicative of any testimony from apex witness, Mr. Latouf.

Regarding the key witnesses at issue (Mr. Latouf and Mr. Park), the parties engaged in meet-and-confer communications from April through August 2025, without resolution. (Exhs. C-H to Sabovich Decl.) During the meet and confer process, Subrogation Plaintiffs asked "if the defendants will be listing any of these individuals as witnesses to testify at trial." (Exh. F to the Sabovich Decl.) Not getting a definite response, the parties reached an impasse, and on or about July 25, 2025, Subrogation Plaintiffs noticed the depositions of Mr. Latouf (HMA's former Chief Safety Officer) and Mr. Park (KA's Chief Safety Officer). (Exh. F to the Sabovich Decl.)

Following additional unsuccessful meet-and-confer communications in August 2025, Defendants filed the instant Motion for Protective Order on August 21, 2025, seeking an order either prohibiting the depositions of Mr. Latouf and Mr. Park entirely or, in the alternative, limiting the depositions to specific topics for which Subrogation Plaintiffs could demonstrate unique knowledge and exhaustion of other sources, and restricting each deposition to no more than two hours. (Mot. at 2:9-13.) On August 27, 2025, Subrogation Plaintiffs filed their opposition, supported by evidence. After the filing of Defendants' reply, the Court heard oral argument via Zoom on September 8, 2025. The matter was then taken under submission.

REPORT & RECOMMENDATION RE PROTECTIVE ORDER RE APEX DEPOS - 3

## II.     ANALYSIS

### A.  Legal Standard on Motion for Protective Order Re Apex Deposition

Parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." (Fed. R. Civ. P. 26(b)(1)). To be relevant, the information sought "need not be admissible in evidence," but it must be "proportional to the needs of the case." (*Id.*) The broad right to discovery notwithstanding, courts may issue orders "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." (Fed. R. Civ. P. 26(c)(1).)  Thus, for good cause, courts may limit the type, scope, or frequency of discovery allowed against a person or forbid discovery altogether. (*Id.*)

One such type of protective order arises in the context of the apex doctrine. This judicially created doctrine protects certain high-level corporate officers from harassment and cumulative discovery, including depositions. (*Apple Inc. v. Samsung Elecs. Co.* (N.D. Cal. 2012) 282 F.R.D. 259, 263.)  "In determining whether to allow an apex deposition, courts consider (1) whether the deponent has unique first-hand, non-repetitive knowledge of the facts at issue in the case and (2) whether the party seeking the deposition has exhausted other less intrusive discovery methods." (*Id.* at 263.).

Although some district courts have applied the apex deposition doctrine in addressing whether senior executives may be deposed, the Ninth Circuit has not expressly endorsed that doctrine. (*In re Uber Techs., Inc., Passenger Sexual Assault Litig.*, Case No. 23-md-03084-CRB (LJC) (N.D. Cal. Mar. 24, 2025) 2025 WL 896412, at *1 ["As far as this Court is aware, the Supreme Court has never used that term, and neither the Ninth Circuit nor the Supreme Court has ever used the terms 'apex witness,' 'apex deposition,' or 'apex testimony.'"].).

Instead, the Ninth Circuit has considered depositions of high-level executives within the framework of Rule 26(c) protective orders. (*Blankenship v. Hearst Corp.*, (9th Cir. 1975) 519 F.2d 418, 429 (hereinafter "*Blankenship*") [apex deposition of publisher of newspaper]; *Anderson v. Air W., Inc.* (9th Cir. 1976) 542 F.2d 1090, 1092–93 (hereinafter "*Anderson*") [apex deposition of sole shareholder of airline]).

Under Rule 26(c)(1), settled law places the burden on the party moving for a protective order to demonstrate "good cause," which requires a showing "that specific prejudice or harm will result" absent such relief. (*Foltz v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2003) 331 F.3d 1122, 1130; *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.* (9th Cir. 2002) 307 F.3d 1206, 1210–11 ["For good cause to exist, the party seeking protection bears the burden of **showing specific prejudice or harm will result** if no protective order is granted."] (emphasis added).)

Even when the requested protection involves an apex deposition, the moving party bears a "heavy" burden to establish good cause. (*Blankenship*, *supra*, 519 F.2d at 429 [holding that the defendants failed to meet their "heavy burden" demonstrating good cause why the deposition of Mr. Hearst should be precluded]; *In Re Nat'l W. Life Ins. Deferred Annuities Litig.*, (S.D. Cal. Apr. 6, 2011) 2011 WL 1304587, at *4 n.2 [explaining that "the burden is on the defendants to show why the depositions should not be taken, not the other way around" and that the apex doctrine "is not an automatic bar" but a case-by-case protective tool]; *In re Transpacific Passenger Air Transp. Antitrust Litig.* (N.D. Cal. Mar. 6, 2014) 2014 WL 939287, at *2 ["the party opposing discovery ... bears the burden of showing that the deposition should not be allowed"] (citations omitted); *Mansourian v. Bd. of Regents of Univ. of Cal. at Davis*, (E.D. Cal. Dec. 21, 2007) 2007 WL 4557104, at *3 [noting the absence of binding Ninth Circuit or

Supreme Court authority shifting the burden to the party seeking discovery and treating apex considerations as factors rather than prerequisites].).

In *Blankenship*, the Ninth Circuit permitted the deposition of George Hearst ("Mr. Hearst"), publisher of the Herald Examiner, sought by a newspaper distributor who alleged that Hearst Corporation engaged in price-fixing in violation of the antitrust laws. (519 F.2d at 429.) In seeking to prohibits his deposition, the defendants argued that Mr. Hearst's testimony would be cumulative of information available from other sources. The court disagreed, finding that the plaintiff had pointed to reasons Mr. Hearst might possess unique knowledge. On that basis, the court permitted the deposition on remand. It concluded that the defendants had not satisfied their "heavy burden" under Rule 26(c) for issuance of a protective order blocking the deposition. (*Id.*)

Similarly, in *Anderson*, the Ninth Circuit upheld the denial of a protective order sought by a corporate principal, noting that the district court correctly determined that "Hughes probably had some knowledge of the 1970 acquisition, which finding is supported by the record." (*Anderson*, *supra,* 542 F.2d at 1093.)

### B.  Evidence of Harm or Prejudice

Defendants support their Motion with three declarations: (1) James Sabovich, defense counsel, who authenticates exhibits relating to the parties' meet-and-confer communications; (2) Eric Sauck, KA's Director of Safety and Regulatory Compliance, described as Mr. Park's "lieutenant," who testifies that he worked "closely with Park" and asserts that "there is no subject of evaluating and investigating potential safety issues where Park has unique first-hand knowledge that I lack"; and (3) Cole Stutz, HMA's former Executive Director of Vehicle Safety, characterized as Mr. Latouf's "lieutenant," who has not yet been deposed but likewise opines that "there is no subject involving the Safety Department where Latouf has unique first-hand

knowledge relating to thefts of non-immobilizer equipped vehicles that I lack." Notably, none of these declarations address, let alone even reference, the concepts of "harm" or "prejudice." Defendants' declarations and evidence focus on purported duplication by asserting subordinates such as Mr. Sauck has already been deposed and Mr. Stutz's deposition is scheduled in the future. Defendants offered neither evidence nor argument identifying any specific prejudice or harm that would result from the depositions of Mr. Latouf and Mr. Park proceeding. This omission weighs against the issuance of a protective order.

### C. Evidence of Apex Factors

The Special Master also considers the apex factors of whether the requested deponents have any "unique first-hand, non-repetitive knowledge" regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case.

Here, the record establishes that the proposed deponents, J.S. "Jurassic" Park (KA) and Brian Latouf (HMA), are high-level executives whose departments were involved in responding to the theft-related issues underlying this litigation (Sabovich Decl., at Exh. K (Park Org Chart for KA); and Exh. M (Latouf Press Release for HMA); Sauck Decl., at ¶¶ 2-4; Stutz Decl., at ¶¶ 2-5). Subordinate personnel, including Eric Sauck for Mr. Park and Cole Stutz for Mr. Latouf, possess knowledge of many matters handled by the executives (Sabovich Decl., Exh. I (Sauck Dep.) at 158, 166, 170, 173-174; Ex. L (Simmons Dep.) at 174:9-20; Exh. D to Opposition, (Vu Dep.) at 157:24-158:21). For example, Plaintiffs claim that Mr. Latouf "was directly involved in the decision-making processes related to HMA's decision to omit immobilizers or other similar antitheft technology from Hyundai vehicles." (Opp. at 8.)

Further, the excerpts of the subordinate's deposition testimony demonstrate gaps in the record that Mr. Park and Mr. Latouf may be able to address. Specifically, these subordinates

acknowledged they were either not included in certain communications with the National Highway Traffic Safety Administration ("NHTSA") or could not recall the substance of key discussions. (*see,* Ex. B to Opp., Sauck Dep. at 239:7-25 ["Q: But in either conversations with Mr. Park or with members of NHTSA, you never learned who was making this request [plans to address theft issue] of Hyundai and Kia? A. No"], 240:17-20 [Q: Okay. And what did Mr. Park tell you about his communications with Peter? A. I don't know – I don't remember the particulars of the conversation …"], 241:13-18 ["Q: Did you have any conversations with members of the NHTSA about local governments' concerns regarding the increased crimes committed with Kia vehicles? A. No, I don't remember having any communications with NHTSA on that."], 263:7-9 ["Q: And were you involved in crafting a response to Mr. Kivett? A. I don't think I was on this one, no"]; 264:3-11 [Q …Do you know whether KA ever contacted this consumer? A: I'm not sure, no. Q Would Mr. Park know? A: I'm not sure."]; Exh. D to the Opp., Vu Dep. at 158:7-21 [Q: …And what is the plan that Brian Latouf presented to NHTSA? A. I don't know"]; Exh. C to Opp., Simmons Dep. at 174:9-175:11 [ re Brian Latouf surprised that an immobilizer is not standard equipment as of May of 2021]).

Additionally, Mr. Sauck testified that NHTSA often reached out directly to Park regarding theft issues, and that he did not have first-hand knowledge of Mr. Park's analysis or decisions regarding whether the theft wave constituted a safety issue. (Exh. B to Opp., Sauck Dep. at 237:24-239:10, 262:15-17, 263:23-264:11). Similarly, the subordinates confirmed that (1) the requested deponents (Mr. Park and Mr. Latouf) are the ones that made the "ultimate" decisions regarding safety issues; and/or (2) that they lacked knowledge or complete knowledge in certain areas. (*Id.;i.e.,* Exh. D to Opp., Vu Dep. at 157:24-158:21; Ex. B to Opp., Sauck depo. 195:3-20 ["Q: Who makes decisions on whether something is a safety issue? A. That's the chief

REPORT & RECOMMENDATION RE PROTECTIVE ORDER RE APEX DEPOS - 8

safety officer [Park]. Q Okay. And the chief safety officer not only decides whether something is a safety issue, but also what course of action to take in response to it? A. He's the ultimate decision maker in that regard, yes."]).

The evidence reflects that Subrogation Plaintiffs have conducted discovery of subordinate witnesses and reviewed relevant documents.  Thus, the Special Master finds that the record demonstrates that less intrusive means have been pursued to obtain the information. (Sauck Decl., ¶¶ 6-7; Stutz Decl., ¶¶ 4-5; Plaintiffs' Opp. Br. at 4–5). The Special Master further finds that while some aspects of the requested deponents' decisions may involve subsequent remedial measures, which may be inadmissible at trial under Fed. R. Evid. 407, such considerations do not render the information irrelevant at this stage for discovery purposes under Rule 26(b).  (Fed. R. Evid. 407).

In their Reply, Defendants assert "Plaintiffs' Opposition offers no meritorious justification for the Apex Witnesses' depositions." (Reply, at 3:4-5.)  Defendants misstate the burden standard.  Under well-settled law, the burden is placed on the party moving for a protective order to demonstrate "good cause," which requires a showing that specific prejudice or harm will result absent such relief. (*Foltz v. State Farm Mut. Auto. Ins. Co.* (9th Cir. 2003) 331 F.3d 1122, 1130; *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.* (9th Cir. 2002) 307 F.3d 1206, 1210–11 ["For good cause to exist, the party seeking protection bears the burden of ***showing specific prejudice or harm will result*** if no protective order is granted."] (emphasis added).)  Even when the requested protection involves an apex deposition, the moving party still bears a "heavy" burden to establish good cause. (*Blankenship*, *supra,* 519 F.2d at 429 [holding that the defendants failed to meet their "heavy burden" demonstrating good cause why the deposition of Mr. Hearst should be precluded]. The arguments at the hearing on the motion of

REPORT & RECOMMENDATION RE PROTECTIVE ORDER RE APEX DEPOS - 9

burden based on busy executives having to participate in depositions is not a sufficient showing of good cause. The Special Master was not persuaded that the parties needed to wait to confirm a deposition of Mr. Stutz, take the deposition of Mr. Stutz, and identify gaps from his testimony before proceeding with the deposition of Mr. Latouf.

Based on the foregoing, the Special Master finds Defendants have not carried their burden of establishing good cause for the protective order prohibiting the apex depositions. Subrogation Plaintiffs have demonstrated that Mr. Park and Mr. Latouf may have unique first-hand, non-repetitive knowledge regarding nonprivileged matters that are relevant to the present case and proportional to the needs of the case and that they have exhausted other less intrusive discovery methods. Mr. Park and Mr. Latouf may possess knowledge that can fill gaps in the testimony of subordinates who have been deposed, as more fully set forth above. Moreover, there has been no demonstration of specific prejudice or harm necessary to support a protective order. Importantly, the Special Master finds that the Defendants' reliance on declarations from subordinates asserting that they could provide duplicative testimony is speculative and insufficient to show good cause.

Accordingly, the Special Master finds that Defendants have not shown good cause to justify a blanket protective order precluding the depositions of J.S. "Jurassic" Park and Brian Latouf. These depositions are warranted under the apex doctrine and Federal Rule of Civil Procedure 26(c), subject to reasonable limitations. Thus, the Special Master grants the Defendants' alternative request for a protective order seeking reasonable limitations on scope and duration. Subrogation Plaintiffs may depose Mr. Park and Mr. Latouf for no more than three hours each. The scope of the depositions shall be limited to: (1) Defendants' decisions to omit engine immobilizers or other reasonable anti-theft technology from Hyundai and Kia vehicles

during the relevant timeframe alleged in the operative complaint; (2) Defendants' decision not to treat the risk of vehicle theft as a safety issue; and (3) Defendants' actions in response to the nationwide theft wave. (Motion, pg. 1:25-28.)  These limitations appropriately balance the need for discovery with the protection of apex witnesses from harassment.

## III. RECOMMENDATION

Accordingly, the Discovery Special Master respectfully recommends that the Subrogation Plaintiffs' Motion for Protective Order be **GRANTED IN PART and DENIED IN PART**.  The Motion is **DENIED** to the extent that Subrogation Plaintiffs seek a protective order preventing the depositions of J.S. "Jurassic" Park and Brian Latouf *in toto*.   The Motion is GRANTED as to the request for reasonable time and scope limitations. Subrogation Plaintiffs may depose J.S. "Jurassic" Park and Brian Latouf for no more than three hours each.  The scope of the deposition shall be limited to: (1) Defendants' decisions to omit engine immobilizers or other reasonable anti-theft technology from Hyundai and Kia vehicles; (2) Defendants' decision not to treat the risk of vehicle theft as a safety issue; and (3) Defendants' actions in response to the nationwide theft wave.

**IT IS SO RECOMMENDED.**

Dated: September 12, 2025

_____
Hon. Gail Andler (Ret.)
Discovery Special Master

The Court, having read and considered the Special Master's Report & Recommendation, hereby confirms said report or modifies it as follows:

_____
_____
_____
_____

REPORT & RECOMMENDATION RE PROTECTIVE ORDER RE APEX DEPOS - 11

**IT IS SO ORDERED.**

Dated: September ___, 2025

_____
Hon. James V. Selna
U.S. District Court Judge