1  QUINN EMANUEL URQUHART & SULLIVAN LLP
2  Steven G. Madison (SBN: 101006)
   stevemadison@quinnemanuel.com
3  Justin C. Griffin (SBN: 234675)
   justingriffin@quinnemanuel.com
4  865 South Figueroa Street, 10th Floor
5  Los Angeles, California 90017-2543
   Telephone:  (213) 443-3000
6  Facsimile:  (213) 443-3100
7
   *Attorneys for Defendants Hyundai Motor*
8  *America and Kia America, Inc.*
9
10              **UNITED STATES DISTRICT COURT**
11            **CENTRAL DISTRICT OF CALIFORNIA**
12  In re: KIA HYUNDAI VEHICLE      | Case No. 8:22-ML-3052-JVS-(KESx)
13  THEFT MARKETING, SALES
    PRACTICES, AND PRODUCTS          The Honorable James V. Selna
14  LIABILITY LITIGATION
15                                   **DEFENDANTS' NOTICE OF AND
                                     MOTION TO DISMISS
16                                   COMPLAINT OF PLAINTIFF CITY
                                     OF BIRMINGHAM, ALABAMA;**
17  This Document Relates to:        **MEMORANDUM OF POINTS &
                                     AUTHORITIES IN
18  *City of Birmingham v. Hyundai Motor*  SUPPORT THEREOF**
    *Company, Hyundai Motor America, Kia*
19  *Corporation ("KC"), and Kia America,*  Hearing Date:  November 10, 2025
    *Inc.*,                          Hearing Time: 1:30 p.m.
20
21  Case No. 8:25-CV-01532
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO DISMISS

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD

PLEASE TAKE NOTICE that on November 10, at 1:30 p.m., or as soon thereafter as counsel may be heard, in the courtroom of the Honorable James V. Selna (Courtroom 10C) of the above-entitled Court, located at 411 West 4th Street, Santa Ana, CA 92710, Defendants Kia America, Inc. ("KA"), and Hyundai Motor America ("HMA") will and hereby do move the above-entitled Court for an Order dismissing Plaintiff City of Birmingham's Complaint[1] pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the Complaint fails to state any claim upon which relief may be granted.

HMA and KA's Motion is based on this Notice, the Memorandum of Points and Authorities filed herewith, any additional briefing on the Motion (including HMA and KA's reply brief), the files and records of this case and the related cases centralized in this Multidistrict Litigation, and such argument as is presented to the Court at the hearing on this Motion.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

---

[1] Compl., *City of Birmingham v. Hyundai Motor Co.*, No. 8:25-CV-01532 (C.D. Cal. July 11, 2025).

1       This Motion is made following a conference of counsel pursuant to Local

2  Rule 7-3, which took place on October 1, 2025.

3

4  DATED:  October 8, 2025        QUINN EMANUEL URQUHART & SULLIVAN, LLP

5

6                        By  */s/ Steven G. Madison*

7                            Steven G. Madison (SBN: 101006)

8                            stevemadison@quinnemanuel.com
                          Justin C. Griffin (SBN: 234675)

9                            justingriffin@quinnemanuel.com

10                            865 South Figueroa Street, 10th Floor
                          Los Angeles, California 90017-2543

11                            Telephone:   (213) 443-3000

12                            Facsimile:    (213) 443-3100

13                            *Attorneys for Defendants Hyundai Motor*

14                            *America and Kia America, Inc.*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ........................................................................................................1

      A.     No U.S. Federal Law or Regulation Requires Immobilizers—
             And This Court Held That Attempts To Require Immobilizers
             Were Federally Preempted ....................................................................1

      B.     Plaintiff Filed Its Complaint In July 2025, Alleging That a Lack
             of Immobilizers Caused an Increase in Thefts Starting in 2015 ............2

LEGAL STANDARD ................................................................................................3

ARGUMENT .............................................................................................................3

I.     FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS SEEKING TO
      IMPOSE A DUTY TO INSTALL ENGINE IMMOBILIZERS ....................3

      A.     State Tort Claims That Frustrate Significant Objectives Of
             Federal Law Are Preempted ..................................................................3

      B.     Dictating A Specific Anti-Theft Technology Would Frustrate
             The Objective Of FMVSS 114's Flexibility ........................................4

      C.     Plaintiff's Claims Are Preempted Because They Rest Entirely On
             A Duty To Install Immobilizers ...........................................................6

II.    PLAINTIFF'S PUBLIC NUISANCE AND NEGLIGENCE CLAIMS
      ARE TIME-BARRED BY ALABAMA'S STATUTE OF
      LIMITATIONS .............................................................................................7

      A.     Alabama Limits Public Nuisance And Negligence Claims To
             Two Years .............................................................................................7

      B.     The Statute of Limitations Period Began to Run When Plaintiff's
             Alleged Harm Became Apparent in 2015 .............................................7

      C.     Even If the Alleged Nuisance Is Continuous, Plaintiff's Specific
             Allegations Limit Any Actionable Conduct to 2022, So
             Plaintiff's Claims Are Barred by Alabama's Statute of
             Limitations ...........................................................................................8

      D.     Plaintiff Is Subject To Alabama's Statute Of Limitations ....................9

CONCLUSION ........................................................................................................10

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4

5
*Ex parte Abbott Laboratories*,
   342 So. 3d 186 (Ala. 2021) ........................................................................7, 8

6

7
*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)......................................................................................2, 3

8

9
*Board of School Commissioners of Mobile County. v. Architects Group, Inc.*,
   752 So. 2d 489 (Ala. 1999) ..............................................................................9

10

11
*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................2

12

13
*Chandiwala v. Pate Construction Co.*,
   889 So. 2d 540 (Ala. 2004) ...............................................................................7

14

15
*City of Buffalo v. Hyundai Motor Am.*,
   2025 WL 1721053 (9th Cir. June 20, 2025) ......................................................6

16

17
*Ex parte DuPoint De Nemours, Inc.*,
   SC-2024-0514, 2025 WL 1009062 (Ala. Apr. 4, 2025)....................................8

18

19
*Gade v. National Solid Wastes Management Association*,
   505 U.S. 88 (1992)..............................................................................................3

20

21
*Geier v. American Honda Motor Co.*,
   529 U.S. 861 (2000) .......................................................................................3, 6

22

23
*Ex parte Integra LifeSciences Corp.*,
   271 So. 3d 814 (Ala. 2018) ...............................................................................7

24
*Miller v. State*,
   38 Ala. 600 (1863)..............................................................................................9

25

26
*Perry County v. Selma, M. & M.R. Co.*,
   58 Ala. 546 (1877)..............................................................................................9

27

28
*Priester v. Cromer*,
   736 S.E.2d 249 (S.C. 2012)............................................................................4, 6

*Soliman v. Daimler AG*,
 2011 WL 4594313 (E.D.N.Y. 2011) ............................................................4, 6

*State v. Mudd*,
 143 So. 2d 171 (Ala. 1962) ........................................................................9

*Sullen v. Sanofi US Services Inc.*,
 No. 2:23-cv-676-ECM, 2024 WL 3339608 (M.D. Ala. July 9, 2024) ...............7

*Wilson v. Kia America, Inc.*,
 No. 2516-CV04058 (Mo. Cir. Ct. Sep. 12, 2025) ............................................5

## Statutes

49 C.F.R. § 571.114 .......................................................................................1, 4

33 Fed. Reg. 6471, 6472 (Apr. 27, 1968) ......................................................2, 5

55 Fed. Reg. 21869, 21871 (May 30, 1990) ......................................................5

56 Fed. Reg. 12464 (Mar. 26, 1991) .................................................................5

71 Fed. Reg. 17752, 17753 (Apr. 7, 2006) .....................................................2, 5

49 U.S.C. § 105 .................................................................................................1

49 U.S.C. § 301 .................................................................................................1

49 U.S.C. § 331 .................................................................................................1

Ala. Code § 6-2-38(*l*) .....................................................................................6, 8

## PRELIMINARY STATEMENT

Plaintiff City of Birmingham's Complaint is the proverbial "day late and a dollar short." Birmingham filed suit in July 2025, alleges claims this Court has already repudiated, and makes substantially the same allegations found by this Court to render the claims fatally defective under federal preemption in *City of Chicago v. Kia America Inc.* (Dkt. 334); *see, e.g.*, Compl. ¶ 66 ("Defendants' decision not to install the simple and highly effective immobilizer in the Susceptible Vehicles between 2011 and 2022, in contrast to the vast majority of car manufacturers that did choose to install immobilizers in nearly all of their vehicles, has foreseeably, led to the epidemic plaguing Plaintiff."); *id.* ¶ 67 ("Kia and Hyundai chose to flout the industry standard of utilizing an engine immobilizer in the Susceptible Vehicles, which made those vehicles more susceptible to theft."). Birmingham's claims are preempted and should be dismissed.

Even assuming *arguendo* Birmingham's claims were not preempted, they are time-barred as they come years after the statute of limitations had run. By its own allegations, the thefts Birmingham complains of began in 2015 and "exploded" in 2020, placing the July 2025 filing long outside Alabama's two-year statute of limitations. The instant motion should be granted and Birmingham's Complaint should be dismissed.

## BACKGROUND

### A. No U.S. Federal Law or Regulation Requires Immobilizers—And This Court Held That Attempts To Require Immobilizers Were Federally Preempted

The National Highway Traffic Safety Administration ("NHTSA") is exclusively vested with authority to regulate automobile safety. *See* 49 U.S.C. § 105. Federal law—including the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. Chapter 301, the Motor Vehicle Theft Law Enforcement Act, 49 U.S.C. Chapter 331, and regulations promulgated thereunder by NHTSA—govern vehicle safety and anti-theft performance standards. *See, e.g.*, 49 U.S.C. § 105(c).

In 1968, NHTSA promulgated Federal Motor Vehicle Safety Standard ("FMVSS") 114, imposing two anti-theft performance requirements. 49 C.F.R. § 571.114, S1, S2, and S5.1. This standard does not require vehicles to be 100 percent impenetrable to thieves. *See id.*

Neither FMVSS 114 nor any federal law or regulation has ever mandated installation of immobilizers. *See* 49 C.F.R. § 571.114. Rather, NHTSA seeks to provide automobile manufacturers with a choice in the anti-theft technology they adopt. When FMVSS 114 was enacted, NHTSA rejected requests to prescribe "specific theft protection devices," because "it would be unwise to establish a standard in terms so restrictive as to discourage technological innovation in the field of theft inhibition." 33 Fed. Reg. 6471, 6472 (Apr. 27, 1968). As such, "the standard has been framed to permit as many specific devices as possible to meet its requirements." *Id*; *see also, e.g.*, 71 Fed. Reg. 17752, 17752–53 (Apr. 7, 2006).

Based on this law, this Court dismissed Chicago's First Amended Complaint as federally preempted by FMVSS 114, holding that a plaintiff may not "rest[] its claims [on] the allegation that Defendants failed to use engine immobilizers" because "this specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement." Dkt. 334 at 6.

**B.    Plaintiff Filed Its Complaint In July 2025, Alleging That a Lack of Immobilizers Caused an Increase in Thefts Starting in 2015**

Plaintiff filed its Complaint on July 11, 2025, asserting claims for public nuisance and negligence. *See, e.g.*, Compl. ¶¶ 93–112 (Count One – Public Nuisance); *id.* ¶¶ 113–133 (Count Two – Negligence). Plaintiff grounds its claims on the allegation that "Kia and Hyundai chose to flout the industry standard of utilizing an engine immobilizer in [certain vehicles], which made those vehicles more susceptible to theft" and caused an increase in thefts that started in 2015 and "became an explosion in late 2020" after the Kia Boyz began posting videos teaching other third-party criminals how to steal Hyundai and Kia vehicles. *Id.* ¶¶ 67–68; *see also*,

1  e.g., *id.* ¶¶ 3–4, 6–9, 13, 66–67, 72, 81–82, 90–92, 105, 108–09, 117–19, 122 (seeking

2  to impose a duty to install immobilizers and/or attributing Plaintiff's harm to a lack

3  of immobilizers).

4  ## LEGAL STANDARD

5  "[A] complaint must contain sufficient factual matter, accepted as true, to 'state

6  a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

7  (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A pleading

8  that offers labels and conclusions or a formulaic recitation of the elements of a cause

9  of action will not do."  *Id.* (internal quotation marks omitted).  Rather, the plaintiff

10  must "allege more by way of factual content to nudge his claim" of unlawful action

11  "across the line from conceivable to plausible."  *Id.* at 683 (citation modified).

12  ## ARGUMENT

13  **I.  FEDERAL LAW PREEMPTS PLAINTIFF'S CLAIMS SEEKING TO IMPOSE A DUTY TO INSTALL ENGINE IMMOBILIZERS**

14
15  **A.  State Tort Claims That Frustrate Significant Objectives Of Federal Law Are Preempted**

16  Federal law preempts any state law that "stands as an obstacle to the

17  accomplishment and execution of the full purposes and objectives of Congress."

18  *Gade v. Nat. Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98 (1992) (citations omitted).

19  That scope includes state tort rules that "impose legal duties" in "conflict directly with

20  federal regulatory mandates."  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 871

21  (2000).  Federal regulations carry out statutory commands, and so preempt any tort

22  claim that would frustrate a "significant objective of [a] federal regulation."

23  *Williamson v. Mazda Motor Am.*, Inc., 562 U.S. 323, 330 (2011).

24  In *Geier*, the Supreme Court held that an FMVSS provision allowing

25  manufacturers to choose among various passive restraints preempted a state tort suit

26  that claimed a manufacturer should have installed driver-side airbags.  529 U.S. at

27  886.  That federal standard imposed flexible performance requirements, rather than

28  mandating a particular type of passive restraint, because "a mix of devices would help

develop data on comparative effectiveness, [and] would . . . facilitate the development of alternative, cheaper, and safer passive restraint systems." *Id.* at 879. A state tort theory that mandated one specific restraint thus would stand "'as an obstacle to the accomplishment and execution of' the important . . . federal objectives" of the standard. *Id.* at 881.

In *Williamson*, the Court clarified that a federal regulation that granted manufacturers compliance options preempts any state rule that restricts those options when, as in *Geier*, flexibility was a "significant objective" of the regulation. 562 U.S. at 336.

Courts have consistently applied that principle. For example, a state tort rule that required auto manufacturers to use only laminated glass was preempted by FMVSS 205, which allowed for use of ***either*** laminated ***or*** tempered glass. *Priester v. Cromer*, 736 S.E.2d 249, 260 (S.C. 2012). Likewise, a state-law duty to anchor seatbelts to automobile frames was preempted because federal regulations encouraged design flexibility to "increase the overall safety belt usage rate." *Soliman v. Daimler AG*, 2011 WL 4594313, at *5 (E.D.N.Y. 2011).

These authorities establish that when federal law deliberately leaves design choices open, state tort theories that eliminate that flexibility are preempted.

**B.    Dictating A Specific Anti-Theft Technology Would Frustrate The Objective Of FMVSS 114's Flexibility**

Here, as in those cases, flexibility is a significant objective of NHTSA's theft-prevention regulation. FMVSS 114 does not prescribe a particular anti-theft technology. Instead it requires only that a vehicle's starting system prevent (1) "normal activation" of the engine and (2) "steering or forward self-mobility" when the key is removed. *See* 49 C.F.R. § 571.114 S5.1.1 (2021). ***Any*** technology meeting these performance requirements satisfies FMVSS 114. NHTSA's Test Procedures for FMVSS 114, which the agency uses to verify compliance, underscore the standard's flexibility. By testing compliance by reference to objective criteria, such

as whether the car engine starts or steering wheel can rotate when the key is removed, the Test Procedures contemplate that a range of technologies may satisfy FMVSS 114. Ex. A, NHTSA, FMVSS 114 Laboratory Test Procedure, 4, 16.[1]

NHTSA's decision to let manufacturers select among different theft-prevention technologies was deliberate and has always been a significant regulatory objective. When NHTSA first adopted FMVSS 114 in 1968, For decades, NHTSA's position has been that a flexible performance standard most reasonably protects against vehicle theft. Prior to enacting FMVSS 114, it expressly rejected "many" requests to prescribe "specific theft protection devices," including brake locks and "so-called 'pop-out' keys which automatically eject from the locking system." 33 Fed. Reg. 6471, 6472 (Apr. 27, 1968). The agency concluded "it would be unwise to establish a standard in terms so restrictive as to discourage technological innovation in the field of theft inhibition. Consequently, the standard has been framed to permit as many specific devices as possible to meet its requirements." *Id.*

NHTSA has repeatedly reaffirmed that goal. In 1990, when considering revisions to FMVSS 114, NHTSA solicited comment on whether its proposed changes "would…improperly restrict design flexibility." Manufacturers cautioned that the proposal was "overly precise," which "would limit new designs and innovations." 55 Fed. Reg. 21869, 21871 (May 30, 1990). In response, NHTSA amended the rule to preserve multiple compliance pathways. *Id.* at 21871–72. Further amendments in 1991 and 1992 again sought to "provide manufacturers with greater flexibility in designing" their locking and transmission systems. 56 Fed. Reg. 12464 (Mar. 26, 1991). And in 2006, NHTSA agreed that the existing rule used

---

[1] Moreover, as one court astutely observed in dismissing a consumer theft claim in related litigation, FMVSS 114 concerns are not implicated at all here because the mode of theft at issue—which involves forceful and destructive breach of the steering column—does not represent "normal activation" of the engine. Order on Motion to Dismiss at 4 n.3, *Wilson v. Kia Am., Inc.*, No. 2516-CV04058 (Mo. Cir. Ct. Sep. 12, 2025).

1  "terminology that was unnecessarily design-restrictive," and broadened the standard.

2  71 Fed. Reg. 17752, 17753 (Apr. 7, 2006).

3       Because flexibility—and the innovation it encourages—have always been

4  "significant objective[s]" of NHTSA's theft-prevention regulation, *Williamson*, 562

5  U.S. at 330, the regulation preempts state tort duties that would undercut that

6  flexibility, eliminate manufacturer choice, and impose rigid technological mandates

7  that NHTSA has rejected.  That is exactly what Plaintiff's claims would do.

8      **C.**    **Plaintiff's Claims Are Preempted Because They Rest Entirely On A Duty To Install Immobilizers**

9

10       Plaintiff's own allegations confirm that its claims are grounded entirely on the

11  supposed duty to install immobilizers.  The Complaint alleges that "Defendants'

12  decision not to install the simple and highly effective immobilizer in the Susceptible

13  Vehicles between 2011 and 2022, in contrast to the vast majority of car manufacturers

14  that did choose to install immobilizers in nearly all of their vehicles, has, foreseeably,

15  led to the epidemic plaguing Plaintiff" and that "Defendants could have, and should

16  have, initially included a fob-integrated engine immobilizer, consistent with the

17  industry standard." Compl. ¶¶ 66, 90.

18       This Court has already held that claims "definitively rest[ing] on the allegation

19  that Defendants failed to use engine immobilizers" are preempted because "this

20  specific of a prescription runs afoul of federal government regulations that do not

21  impose such a narrow requirement."  Dkt. 334 at 6.  (dismissing Chicago's claims on

22  this basis).  That reasoning applies squarely here.  Plaintiff's claims, like Chicago's,

23  seek to impose through state law precisely the technological mandate that federal law

24  and NHTSA's standards declined to impose.  They are therefore preempted.  *See*

25  *Geier*, 529 U.S. at 881–82; *Priester*, 736 S.E.2d at 260; *Soliman*, 2011 WL 4594313,

26  at *5; *City of Buffalo v. Hyundai Motor Am., Inc.*, 2025 WL 1721053, at *4 (9th Cir.

27  June 20, 2025) (Bade, J., dissenting) ("FMVSS 114 preempts state tort-imposed

28  duties requiring specific anti-theft technology.").

## II. PLAINTIFF'S PUBLIC NUISANCE AND NEGLIGENCE CLAIMS ARE TIME-BARRED BY ALABAMA'S STATUTE OF LIMITATIONS

### A. Alabama Limits Public Nuisance And Negligence Claims To Two Years

Alabama Code Section 6-2-38(*l*) limits "[a]ll actions for any injury to the person or rights of another not arising from contract" and not otherwise specifically enumerated to being brought "within two years." Both of Birmingham's causes of actions, public nuisance and negligence, are subject to this two-year limitations period. *Ex parte Abbott Lab'ys*, 342 So. 3d 186, 194 (Ala. 2021) ("The statute of limitations for a nuisance claim is two years."); *id.* n.7 (finding the same applies to negligence claims). The two year period "begins to run when the cause of action accrues, which [the Alabama Supreme] Court has held is the date the first legal injury occurs." *Ex parte Integra LifeSciences Corp.*, 271 So. 3d 814, 818 (Ala. 2018); *see also Chandiwala v. Pate Constr. Co.*, 889 So. 2d 540, 543 (Ala. 2004) ("A cause of action accrues as soon as the claimant is entitled to maintain an action, regardless of whether the full amount of the damage is apparent at the time of the first legal injury.").

### B. The Statute of Limitations Period Began to Run When Plaintiff's Alleged Harm Became Apparent in 2015

Plaintiff's claims arose—and the accrual period on the statute of limitations began to run—when Plaintiff alleges it first suffered harm, which was 2020 at the latest. *See Sullen v. Sanofi US Servs. Inc.*, No. 2:23-cv-676-ECM, 2024 WL 3339608, at *6–7 (M.D. Ala. July 9, 2024) (finding MDL plaintiff's claim of incomplete hair growth following chemotherapy treatment time-barred as plaintiff failed to regrow hair outside of two year statute of limitations despite continued hair loss). Plaintiff's allegations do not require expert testimony in order to determine the appropriate accrual period; Plaintiff clearly alleges that "the incidence of theft for [Hyundai and Kia vehicles] increased, relative to other models, from 2015 to 2020" and motor vehicle thefts thereafter "became an explosion in late 2020, when a group of teenagers

began posting 'how-to' videos."  Compl. ¶ 67–68; *see also id.* ¶ 79 (alleging that the "rampant thefts of Hyundai and Kia vehicles are still impacting Plaintiff, *years after the rise in thefts of the Susceptible Vehicles first began*") (emphasis added).  But, Plaintiff filed its Complaint in July 2025: ten years after Plaintiff was first allegedly injured and five years after the thefts "became an explosion."  By Plaintiff's own allegations, the Complaint is too little too late.

### C.    Even If the Alleged Nuisance Is Continuous, Plaintiff's Specific Allegations Limit Any Actionable Conduct to 2022, So Plaintiff's Claims Are Barred by Alabama's Statute of Limitations

Plaintiff's Complaint includes a conclusory allegation that the "misconduct alleged in this case does not concern a discrete event" but rather "an ongoing public nuisance from Defendants' intentional conduct and requiring ongoing services and resources."  Compl. ¶ 111.  But, Plaintiff's vague and general allegations about a purported continuous nuisance do not prevent its claims from being barred by Alabama Code § 6-2-38(*l*).

When Alabama courts analyze statutes-of-limitations issues, they may only consider specific allegations of misconduct.  *See, e.g.*, *Ex parte Abbott Lab'ys*, 342 So. 3d at 195.  Thus, in *Abbott Laboratories*, the plaintiffs' allegations of a continuous nuisance perpetuated by opioid marketing defendants were dismissed on the pleadings as the "the <u>specific allegations against Abbott</u> in the complaint" did not mention conduct within the relevant statute of limitations.  *Id.*

Any alleged continued harm felt by Plaintiff is distinct from alleged conduct and does not save Plaintiff's claims from being time-barred as there "must be a connection between the defendant's actions and the ongoing tort."  *Id.* at 195–96 ("[T]hat the alleged opioid epidemic itself was ongoing at the time [plaintiff] filed its original complaint does not mean that [defendant's] conduct in relation to the epidemic is not subject to the statute of limitations. . . . There are no allegations of ongoing wrongdoing <u>by [defendant]</u> within two years. . . . Therefore, [plaintiff's] general allegation of a continuous public nuisance does not save its claims."); *see also*

*Ex parte DuPoint De Nemours, Inc.*, SC-2024-0514, 2025 WL 1009062, at \*18–19 (Ala. Apr. 4, 2025) (finding that general allegations that "<u>in the past</u>" a defendant chemical producer supplied chemicals to carpet mills that went on to contaminate water sources were insufficient to allege ongoing tortious conduct within the applicable limitations period for nuisance, despite continuous unsafe water contaminants).

Here, Plaintiff repeatedly and expressly identifies the alleged actionable conduct and time period during which that conduct occurred: the design, manufacture and distribution of "automobile models without engine immobilizers" for "all model years between 2011 and *2022*." Compl. ¶ 3 (emphasis added); *see also, e.g.*, *id.* ¶ 20 ("Between 2011 and 2022, when the Susceptible Vehicles were sold and distributed in Birmingham, Alabama. . . ."). Plaintiff further emphasizes this limitation by making clear that HMA and KA "opted to install engine immobilizers … in *all of their 2023 vehicles*." *Id.* ¶ 8 (emphasis added). Yet, Plaintiff brought this action in July 2025: over two years after any actionable conduct stopped. Thus, even if there was an ongoing public nuisance, Plaintiff's claims are time barred because HMA and KA stopped distributing vehicles without immobilizers in 2022.

### D.   Plaintiff Is Subject To Alabama's Statute Of Limitations

Birmingham is subject to Alabama's statute of limitations. *See, e.g.*, *Bd. of Sch. Comm'rs of Mobile Cnty. v. Architects Grp., Inc.*, 752 So. 2d 489, 492 (Ala. 1999) (finding Ala. Code 1975 §6–2–38(*l*) statute of limitations ran against county school board); *State v. Mudd*, 143 So. 2d 171, 174 (Ala. 1962) (doctrine of *nullum tempus occurrit reipublicae* "does not apply to the political subdivisions of the State"); *Miller v. State*, 38 Ala. 600, 604 (1863) ("[T]he statute of limitations runs against municipal corporations, and other authorities established to manage the affairs of the public subdivisions of the State."); *Perry Cnty. v. Selma, M. & M.R. Co.*, 58 Ala. 546, 569 (1877) ("[A] county, suing or being sued, is not exempt from the operation of the statutes of limitation, which cover the action sought to be enforced. They are not

privileged from suit, under the principle, that 'time does not run against the sovereignty.' They are not the State."). As such, Birmingham was obligated to bring any suit within the applicable two year period, which it failed to do.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Plaintiff's Complaint with prejudice.

DATED: October 8, 2025      QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  */s/ Steven G. Madison*
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendants Hyundai Motor America and Kia America, Inc.*

1

## CERTIFICATE OF COMPLIANCE

2          Pursuant to Section 5 of Order No. 1, I certify that the parties conferred in a

3   good-faith effort to resolve the matter without court action prior to the filing of this

4   Motion.

5

6   DATED:  October 8, 2025          QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP
7

8

9                                    By  /s/ Steven G. Madison

10                                       *Attorneys for Defendants Hyundai Motor*
                                         *America and Kia America, Inc.*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28