BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section
RYAN C. CHAPMAN (Cal. Bar No. 318595)
Assistant United States Attorney
Federal Building, Suite 7516
300 North Los Angeles Street
Los Angeles, California 90012
Telephone: (213) 894-2471
Facsimile: (213) 894-7819
E-mail: Ryan.Chapman@usdoj.gov

Attorneys for Non-Party
NHTSA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| IN RE: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | No. 8:22-ml-03052-JVS-KES<br><br>**NHTSA'S BRIEF IN RESPONSE TO SUBROGATION PLAINTIFFS' POSITION ON NHTSA VAUGHN INDEX**<br><br>*[Declaration of Ryan C. Chapman with* Vaughn *Index; Declaration of Shonda Humphrey; and Declaration of Dylan Voneiff filed concurrently herewith]*<br><br>Honorable James V. Selna<br>United States District Judge |

# TABLE OF CONTENTS

DESCRIPTION PAGE (S)

TABLE OF AUTHORITIES ..... ii

MEMORANDUM OF POINTS AND AUTHORITIES ..... 1

I. INTRODUCTION ..... 1

II. PROCEDURAL HISTORY ..... 2

A. Subrogation Plaintiffs submit a FOIA request and then a subpoena to NHTSA; following a meet and confer, they agree to proceed on the FOIA request. ..... 2

B. NHTSA continues processing the FOIA request while Subrogation Plaintiffs threaten FOIA litigation; Subrogation Plaintiffs suddenly revive the subpoena after nine months of silence. ..... 4

C. NHTSA produces documents; Subrogation Plaintiffs file a motion to compel; after NHTSA produces the Court-ordered *Vaughn* Index, Subrogation Plaintiffs unilaterally file their brief instead of conferring. ..... 5

III. LEGAL STANDARDS ..... 7

IV. ARGUMENT ..... 8

A. NHTSA properly applied FOIA Exemption (b)(5) to withhold internal agency deliberative discussions and internal agency attorney advice. ..... 8

B. NHTSA properly applied FOIA Exemption (b)(4) to withhold Kia & Hyundai's sensitive commercial information. ..... 12

C. Subrogation Plaintiffs do not challenge the application of FOIA Exemption (b)(6). ..... 12

V. CONCLUSION ..... 13

# TABLE OF AUTHORITIES

DESCRIPTION PAGE (S)

**Federal Cases**

*Berman v. CIA*,
501 F.3d 1136 (9th Cir. 2007) .......... 7

*Bloche v. Dep't of Def.*,
370 F. Supp. 3d 40 (D.D.C. 2019) .......... 8

*Citizens Comm'n on Human Rights v. FDA*,
45 F.3d 1325 (9th Cir. 1995) .......... 7

*Citizens For Resp. & Ethics in Washington v. U.S. Dep't of Lab.*,
478 F. Supp. 2d 77 (D.D.C. 2007) .......... 8

*Exxon Shipping Co. v. U.S. Dep't of Interior*,
34 F.3d 774 (9th Cir. 1994) .......... 11

*Fed. Trade Comm'n v. Grolier, Inc.*,
462 U.S. 19 (1983) .......... 8

*Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*,
736 F. Supp. 2d 202 (D.D.C. 2010) .......... 8

*Lane v. Dept. of Interior*,
523 F.3d 1128 (9th Cir. 2008) .......... 7, 8

*Minier v. CIA*,
88 F.3d 796 (9th Cir. 1996) .......... 8

*Nat'l Wildlife Fed'n v. U.S. Forest Serv.*,
861 F.2d 1114 (9th Cir. 1988) .......... 9

*NLRB v. Sears, Roebuck & Co.*,
421 U.S. 132 (1975) .......... 8

*Osinek v. Permanente Med. Grp., Inc.*,
2024 WL 4906067 (N.D. Cal. Nov. 27, 2024) .......... 11

*S.E.C. v. Selden*,
445 F. Supp. 2d 11 (D.D.C. 2006) .......... 6, 9

*United States v. Acad. Mortg. Corp.*,
968 F.3d 996 (9th Cir. 2020) .......... 11

*Yousuf v. Samantar*,
451 F.3d 248 (D.C. Cir. 2006) .......... 10

**Federal Statutes**

5 U.S.C. § 552(b)(4)....................12
5 U.S.C. § 552(a)(4)(B)....................7
5 U.S.C. § 552(b)(5)....................8
5 U.S.C. § 552(b)(6)....................13

**Federal Regulations**

49 C.F.R. Part 7....................3, 5
49 C.F.R. Part 512....................12
49 C.F.R. § 9.13....................6
49 C.F.R. § 571.114....................2, 10

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

At the September 29, 2025 status conference, the Court ordered non-party National Highway Traffic Safety Administration ("NHTSA") to produce a *Vaughn* Index to the Subrogation Plaintiffs detailing the redactions made in its Freedom of Information Act ("FOIA") production. The parties were then instructed to meet and confer and thereafter stipulate to a briefing schedule on the FOIA withholdings, if necessary. While NHTSA attempted to engage in this meet and confer, the Subrogation Plaintiffs instead filed their position with the Court (Subrogation Plaintiffs' "Position Statement") before agreeing to meet and confer. ECF No. 1130. Not only did the Subrogation Plaintiffs not meet and confer first, but their Position Statement suggests a maximalist view in which there is no room to narrow the issues any further. Given that Subrogation Plaintiffs have unilaterally begun briefing and to avoid prolonging this dispute any further, NHTSA submits this response.

As detailed in NHTSA's *Vaughn* Index, the vast majority of the redactions concern internal deliberations among agency employees and draft statements. Deliberations about how to respond to inquiries and drafts reflecting internal back-and-forth are the quintessential material entitled to protection under Exemption 5. Subrogation Plaintiffs have not identified a single document that bears on this case—indeed, they have failed to even show *categorically* how the views and opinions of individual agency employees are relevant or carry any legal weight to the interpretation of a Federal Motor Vehicle Safety Standard ("FMVSS"). The only redactions to documents from Kia or Hyundai are for confidential business information under Exemption 4. Enough information was left unredacted to make it apparent that those redactions are not relevant.

At bottom, NHTSA correctly applied the FOIA exemptions and produced a detailed *Vaughn* Index that explained every redaction with supporting context. Because this constitutes a full production and is exactly what Subrogation Plaintiffs would have

received in response to their subpoena, the Court should dismiss the motion to compel as moot.

## II. PROCEDURAL HISTORY

### A. Subrogation Plaintiffs submit a FOIA request and then a subpoena to NHTSA; following a meet and confer, they agree to proceed on the FOIA request.

NHTSA's involvement in this litigation began on August 25, 2023, when counsel for Subrogation Plaintiffs submitted two relevant FOIA requests to NHTSA. Declaration of Ryan C. Chapman ("Chapman Decl.") ¶ 3(a) & Ex. B.[1] The first FOIA request asked for four categories of documents: (1) all documents relating to investigations into Kia and Hyundai's violation of or noncompliance with Federal Motor Vehicle Safety Standard ("FMVSS") 114, 49 C.F.R. § 571.114; (2) testing procedures for FMVSS 114; (3) copies of any test failure notices for Kia or Hyundai relating to compliance with FMVSS 114; and (4) all documents relating to how Kia or Hyundai vehicles containing an immobilizer might comply with FMVSS 114. *Id.* Ex. B at 1. The second FOIA request asked for two categories of documents: (1) all NHTSA documents, whether internal or external, relating to the interpretation of FMVSS 114's requirements; and (2) all NHTSA documents, whether internal or external, relating to which specific vehicle components or features NHTSA considers as sufficient to meet FMVSS 114's requirements. *Id.* Ex. B at 3.

Following an acknowledgement of the FOIA requests and email correspondence with Subrogation Plaintiff's counsel, the Subrogation Plaintiffs agreed to withdraw the second FOIA request (the interpretation documents request) and to limit the first FOIA request (the Kia/Hyundai testing requests) to only the last two categories of documents. *Id.* ¶ 3(b) & Ex. C at 1. NHTSA began processing of the FOIA request.

---

[1] While the FOIA requestor was technically Cozen O'Connor, P.C. and *not* the Subrogation Plaintiffs themselves, NHTSA will refer to the Subrogation Plaintiffs as the FOIA requestor for simplicity's sake.

On March 4, 2024, Subrogation Plaintiffs delivered an undated subpoena to NHTSA, with a March 22 response deadline. *Id.* ¶ 3(c) & Ex. D. The subpoena was substantively identical to the first FOIA request and sought the same four categories of documents as to the first FOIA request. *Compare id.* Ex. B at 1, *with id.* Ex. D. at 4–5. In response to the subpoena, NHTSA attorney Allison Hendrickson scheduled a meeting with Subrogation Plaintiffs' counsel that went forward on March 29, 2024. *See id.* ¶ 3(d) & Ex. E at 2 ("NHTSA appreciates having had the opportunity to discuss the subpoena and the Part 7 FOIA process with you during a meeting on Friday, March 29, 2024."). [2] NHTSA came away from this meeting with the understanding that the parties were agreeing to proceed with the processing of the FOIA request and that Subrogation Plaintiffs would not pursue the subpoena. *See id.* Ex. E at 1 (noting that NHTSA expected the subpoena to be withdrawn). NHTSA acknowledged via email on April 9 and April 18, 2024, that they were proceeding with the FOIA request and Subrogation Plaintiffs confirmed this by re-expanding their first FOIA Request to all four categories of documents. *Id.* ¶ 3(e) & Ex. F at 4–6.

On May 3, 2024, NHTSA sent a letter to Subrogation Plaintiffs in response to the March 4 subpoena. *Id.* Ex. E. The letter noted that it was being sent because, even though "[a]s discussed with [Subrogation Plaintiffs' counsel], the Agency is currently processing [the] FOIA request," the Subrogation Plaintiffs had "not yet notified the Agency that the subpoena is withdrawn." *Id.* Ex. E at 1. The letter first explained that NHTSA's regulations require processing third-party document requests in accordance with the procedures "found at 49 C.F.R. Part 7 (Part 7), which implements the [FOIA]." *Id.* Ex. E at 2. NHTSA then formally objected to the subpoena both on regulatory and statutory grounds, as well as evidentiary grounds under Rule 45. *Id.* Subrogation

[2] Subrogation Plaintiffs' Position Statement fails to account for the fact that they delayed delivery of the subpoena by 10 days, thereby depriving NHTSA of the full time to address the subpoena. ECF No. 1120 at 2 (stating that the subpoena was served "upon NHTSA on February 23, 2024"). Had they timely provided the subpoena, this meeting likely could have gone forward prior to the March 22 response deadline.

Plaintiffs did not respond to this letter or express any disagreement with NHTSA's understanding that the subpoena was supposed to have been withdrawn.

**B. NHTSA continues processing the FOIA request while Subrogation Plaintiffs threaten FOIA litigation; Subrogation Plaintiffs suddenly revive the subpoena after nine months of silence.**

NHTSA continued processing the FOIA request throughout the remainder of 2024. NHTSA receives a large volume of FOIA requests each year and often ends the fiscal year with a backlog of over 800 pending requests. Declaration of Shonda Humphrey ("Humphry Decl.") ¶ 9. For requests that seek information relating to FMVSS compliance, such as here, many of the relevant custodians are typically safety investigators or managers in NHTSA's Office of Enforcement. *Id.* ¶ 7. These individuals have day-to-day responsibilities and, in responding to FOIA requests, must divert their attention from their primary duties to search for responsive records. *Id.* Once the relevant custodians are identified and thereafter identify the responsive records, then the agency can begin the laborious process of determining whether any FOIA exemptions apply. *Id.* ¶¶ 13–18.

Subrogation Plaintiffs, understandably frustrated at the length of time it was taking, complained to the agency in June and September 2024 and threatened to file a FOIA lawsuit if the agency did not begin producing documents. Chapman Decl. Ex. F at 1–2. The agency responded to these emails indicating that it was continuing to process the FOIA request and was awaiting the results of supplemental searches. *Id.*

Then, on February 10, 2025, Subrogation Plaintiffs suddenly pivoted back to the subpoena and demanded to know when the *subpoena* would be responded to, while also asking for a meet and confer on a motion to compel. *Id.* ¶ 3(f) Ex. G at 3; *see also id.* (February 12 email repeating request). NHTSA responded, first on February 13 with an update that the agency anticipated a FOIA production by March 7, 2025. *Id.* Ex. G at 2. NHTSA then responded again on February 23, repeating the agency's position that Subrogation Plaintiffs' request was being processed under the FOIA procedures, as

reflected in the May 3, 2024 letter. *Id.* Ex. G at 1. Subrogation Plaintiffs responded to this email that same day—again, not challenging the May 3, 2024 letter or responding to the objections therein—and asked only if the email exchange would qualify as the meet and confer required for a motion to compel. *Id.*

### C. NHTSA produces documents; Subrogation Plaintiffs file a motion to compel; after NHTSA produces the Court-ordered *Vaughn* Index, Subrogation Plaintiffs unilaterally file their brief instead of conferring.

NHTSA began producing documents in response to the FOIA request on March 6, 2025, and made a second production on June 5. Humphrey Decl. ¶¶ 23–24. On April 17, 2025, Subrogation Plaintiffs filed a motion to compel with the Special Master and did not notify NHTSA until May 2. Chapman Decl. ¶ 3(g) & Ex. H at 1. On June 16, 2025, following a hearing with the Special Master, the parties had an informal conference in which the Subrogation Plaintiffs, for the first time, provided specific details about the scope of their FOIA request and potential custodians they were interested in. Humphrey Decl. ¶ 25. NHTSA agreed to conduct supplemental searches and produce documents from these custodians. *Id.* Between July 2 and August 7, 2025, NHTSA made seven additional productions, for a total of nine document productions and 6,772 pages produced, with an additional 747 pages withheld in their entirety. *Id.* ¶¶ 28–34.

On June 18, 2025, the Special Master issued a Report and Recommendation ("R&R") that the motion to compel be granted. ECF No. 905-1. While the R&R recommended that NHTSA's evidentiary objections under Rule 45 had been waived and that NHTSA be ordered to produce documents in response to the subpoena, it was entirely silent on the agency's procedures for production, namely that NHTSA produces documents pursuant to the FOIA procedures at 49 C.F.R. Part 7. *See generally id.*

The Court addressed the R&R at a September 29, 2025 status conference. Chapman Decl. ¶ 4[3] At that conference, undersigned counsel explained that because there was no analysis of the FOIA exemptions in the R&R, merely adopting the R&R would result in the agency re-producing the documents under FOIA, as required by the agency's procedures for responding to subpoenas. *Id.* Ex. I at 9–10, 11, 12; *see* 49 C.F.R. § 9.13; *S.E.C. v. Selden*, 445 F. Supp. 2d 11, 14 & n.6 (D.D.C. 2006) (overruling agency's objections to subpoena and ordering production of documents, while noting that "the [agency] must respond to Selden's subpoenas pursuant to its *Touhy* regulations," which applied FOIA procedures). The Court, recognizing that the FOIA exemptions would have to be addressed at some point, ordered NHTSA to produce a *Vaughn* Index and ordered "the parties to meet and confer and see what can't be resolved. If it's not fully resolved, agree on a shortened briefing schedule for the FOIA Act privileges that are being asserted here." Chapman Decl. Ex. I at 20, 21.

NHTSA produced the *Vaughn* Index to Subrogation Plaintiffs on October 29, 2025. *Id.* ¶¶ 1, 5 & Ex. A. Despite trying to schedule a meet and confer, both in advance and after production of the *Vaughn* Index, Subrogation Plaintiffs' counsel refused to meet until after they filed their Position Statement with the Court. *Id.* ¶¶ 6–7 & Exs. J, K.

[3] At this status conference, Subrogation Plaintiffs raised the issue of tests of "14 Hyundai and Kia vehicles [that] were evaluated by NHTSA for compliance with Federal Motor Vehicle Safety Standard 114" that had not been included in the FOIA production, seemingly suggesting that NHTSA had conducted testing specifically in response to the theft issue in this case. Chapman Decl. Ex. I at 16, 17. After the hearing, NHTSA conducted a supplemental search and undersigned counsel learned that the 14 tests were routine tests conducted since 2004 and were publicly available on NHTSA's website. *Compliance Test Report Database*, NHTSA, https://www.nhtsa.gov/compliance/ (search by FMVSS "114" and Make "Kia"/"Hyundai"). Because these tests were routine and *not* done "in connection with actual and/or potential violations of" FMVSS 114, they do not fall within the FOIA request or subpoena. Chapman Decl. Ex. B at 1 (requested documents limited to investigations/determinations done "in connection with" potential non-compliance as opposed to routine testing). Nevertheless, NHTSA voluntarily agreed to produce those tests and associated communications and made a final production on October 27, 2025. Humphrey Decl. ¶¶ 35–36.

The meet and confer between Subrogation Plaintiffs' counsel and NHTSA's counsel finally occurred on November 14, 2025. *Id.* ¶ 8. Subrogation Plaintiffs' counsel suggested that the parties might be able to compromise if NHTSA would agree to unredact a smaller number of documents. *Id.* Undersigned counsel noted that, while NHTSA could agree to re-review any redactions Subrogation Plaintiffs highlighted for an additional look, the agency could not commit to changing its position. In any event, Subrogation Plaintiffs' Position Statement had already brought the issue to the Court by seeking an immediate order for production of *all* the redacted pages. *Id.* NHTSA could not agree to delay filing a response unless Subrogation Plaintiffs withdrew the Position Statement and informed the Court that they were committing to continued discussions. *Id.* The parties ended the discussion with the understanding that, unless Subrogation Plaintiffs withdrew the Position Statement by November 17, NHTSA would file the instant brief and the dispute would be submitted to the Court. *Id.*

## III. LEGAL STANDARDS

Under FOIA, an agency's decision to withhold information from a FOIA requester is subject to *de novo* review., 5 U.S.C. § 552(a)(4)(B). The agency bears the burden of justifying the nondisclosure of documents and establishing that particular documents are exempt from disclosure. *Lane v. Dept. of Interior*, 523 F.3d 1128, 1135–36 (9th Cir. 2008); *Citizens Comm'n on Human Rights v. FDA*, 45 F.3d 1325, 1328 (9th Cir. 1995). To meet its burden, the agency may rely on affidavits or declarations and other evidence which show that the documents are exempt from disclosure. *Lane*, 523 F.3d at 1135–36. The district court can uphold the redactions solely on the basis of agency affidavits or declarations that describe "the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemptions, and show that the justifications are not controverted by contrary evidence in the record or by evidence of [agency] bad faith." *Berman v. CIA*, 501 F.3d 1136, 1140 (9th Cir. 2007). "If the affidavits contain reasonably detailed descriptions of the documents and allege facts sufficient to establish an exemption, the district court need

look no further." *Lane*, 523 F.3d at 1135–36 (citations omitted). In evaluating an exemption claim, a court "must accord substantial weight to [the agency's] affidavits." *Minier v. CIA*, 88 F.3d 796, 800 (9th Cir. 1996) (quotation omitted).

## IV. ARGUMENT

### A. NHTSA properly applied FOIA Exemption (b)(5) to withhold internal agency deliberative discussions and internal agency attorney advice.

Exemption 5 to the FOIA, exempts from disclosure "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). The exemption applies to documents that are normally privileged in the civil litigation context. Consequently, Exemption 5 permits the withholding of all or portions of any documents that are subject to the deliberative process privilege, the attorney-client privilege, the work-product doctrine, and the common interest doctrine, among other privileges available in the civil litigation context.

The purpose of the deliberative process privilege is to prevent injury to the quality of agency decisions. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 151 (1975); *see also Fed. Trade Comm'n v. Grolier, Inc.*, 462 U.S. 19, 23 (1983) (noting that Exemption 5's "primary purpose" is "to enable the Government to benefit from 'frank discussion of legal or policy matters'" (citation omitted)). To that end, courts have routinely recognized that "draft agency policy documents and the discussions surrounding them" as well as "the formulation of agency responses to statements or inquiries from other entities" generally fall within Exemption 5. *Bloche v. Dep't of Def.*, 370 F. Supp. 3d 40, 51 (D.D.C. 2019); *see also Jud. Watch, Inc. v. U.S. Dep't of Homeland Sec.*, 736 F. Supp. 2d 202, 208–09 (D.D.C. 2010); *Citizens For Resp. & Ethics in Washington v. U.S. Dep't of Lab.*, 478 F. Supp. 2d 77, 81–85 (D.D.C. 2007).

Here, nearly all of NHTSA's withholdings are exempt under Exemption 5, and all of those entirely and correctly fall within one of the two categories mentioned above. For example, many of the withheld documents are internal emails among NHTSA

employes discussing how to respond to public letters from state and local officials. *See, e.g.*, Chapman Decl. Ex. A at 1 ("Email dated October 23, 2023 containing correspondence among NHTSA employees regarding a response to a letter from New York State Assemblymembers").[4] Indeed, many of the withholdings are the pre-decisional draft statements themselves. *See, e.g.*, *id.* Ex. A at 3–4 (several withholdings consisting of "[d]raft letter[s]" to various officials). These types of emails and drafts, consisting of and containing internal agency employee deliberations, are the type directly implicated by Exemption 5. *See Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1121 (9th Cir. 1988) ("Recommendations on how to best deal with a particular issue are themselves the *essence* of the deliberative process.").[5]

The Subrogation Plaintiffs' response to the *Vaughn* Index was *not* to first engage in a meet and confer with NHTSA (as ordered by the Court) but to instead file a statement with the Court that entirely failed to engage with the withholdings and instead pivoted back to the R&R. ECF No. 1130. This response is wholly inadequate.

*First*, by retreating to the R&R, Subrogation Plaintiffs ignore the Court's directive at the September 29, 2025 status conference that instructed the parties to "agree on a shortened briefing schedule for the FOIA Act privileges that are being asserted here." Chapman Decl. Ex. I at 20. As described during that status conference and above, an order merely adopting the R&R would require NHTSA to make a document production having waived the *evidentiary objections* under Rule 45 that were asserted in the May 3, 2024 letter, but still compliant with the agency's regulations requiring it to apply the FOIA procedures to the substance of any production. *See Selden*, 445 F. Supp. 2d at 14 & n.6. NHTSA understands that the Court has skipped the step of merely adopting the R&R and having NHTSA re-produce the same documents by instead treating the FOIA

[4] Though NHTSA only cites to one exemplar email, the *Vaughn* Index describes comparable withholdings of internal discussions throughout, which were clearly labeled to provide Subrogation Plaintiffs the appropriate context.

[5] To aid the Court in its analysis, NHTSA renews its offer to provide a copy of the production to the Court for *in camera* review.

production as though it were the subpoena response. Thus, the parties can efficiently proceed to what would next occur if the R&R were adopted—namely, an assessment of the FOIA redactions. But the Subrogation Plaintiffs have ignored both the reality of the law and the Court's instructions.[6] By not making any argument related to exemptions, the Court should consider the issue waived and uphold NHTSA's application of the FOIA exemptions.

NHTSA pauses briefly to note that, even if the Court were to reassess the evidentiary objections, Subrogation Plaintiffs fail to meet even the expansive definition of relevance provided for in discovery. As the *Vaughn* Index makes clear, NHTSA has not withheld from production communications or material from Kia or Hyundai relating to FMVSS 114 or the theft issue but instead has redacted *wholly internal deliberative emails* wherein agency employees are discussing and formulating policy positions and public responses to inquiries. Considering that an individual employee's view is separate and distinct from the official position of the Agency, it remains unclear what evidentiary value there is in an individual agency employee's opinion on FMVSS 114. Indeed, even assuming these emails contained individual agency employees expressing opinions that agree with Subrogation Plaintiffs' theory of the case, those opinions carry no more persuasive value than any attorney or court interpreting 49 C.F.R. § 571.114.

*Second*, the Subrogation Plaintiffs misstate the law and the facts by repeating their

[6] NHTSA notes that the Subrogation Plaintiffs' reliance on the untimeliness of NHTSA's May 3, 2024 objections to the subpoena, *see* ECF No. 1130 at 2, fails to account for the fact that NHTSA was lulled into untimeliness by Subrogation Plaintiffs' own representations. As the May 3 objections noted. Subrogation Plaintiffs met with NHTSA and the agency came away with the understanding that they had agreed to proceed solely on the FOIA request. Chapman Decl. Ex. E at 1. Because Subrogation Plaintiffs had not formally withdrawn the subpoena, NHTSA filed the objections out of an abundance of caution. *See id.* Subrogation Plaintiffs did not challenge this understanding that the subpoena was withdrawn until *nine months later*. The Special Master never addressed the fact that Subrogation Plaintiffs led the agency into the very "untimely" objections that they now seek to benefit from, and the Court should not allow them to make that argument. *See Yousuf v. Samantar*, 451 F.3d 248, 252 (D.C. Cir. 2006) (district court had discretion to consider untimely objections where third party was acting in good faith and in contact with subpoenaing party prior to filing formal objections).

argument that NHTSA relied on its "internal regulations as the sole justification for the non-compliance" with the subpoena. ECF No. 1130 at 2. Factually, that is not what happened. NHTSA relied on the meeting with Subrogation Plaintiffs' counsel wherein it was understood that NHTSA would process the request under FOIA. Chapman Decl. Ex. E at 1–2. Moreover, Subrogation Plaintiffs' cited cases do not go as far as they repeatedly suggest. ECF No. 1130 at 2 (citing *Exxon Shipping Co. v. U.S. Dep't of Interior*, 34 F.3d 774 (9th Cir. 1994); *United States v. Acad. Mortg. Corp.* 968 F.3d 996 (9th Cir. 2020)).

In *Exxon*, an agency head arbitrarily instructed employees not to sit for a deposition simply because the agency believed the *Touhy* regulations allowed it to entirely ignore a subpoena—there was no suggestion that the subpoenaing party had failed to properly present the subpoena to the agency or that the agency asserted objections or privileges, as NHTSA did here. *See* 34 F.3d at 776. *Academy Mortgage* is inapposite—that case concerned the False Claims Act and held that an order denying the United States' motion to dismiss was not immediately appealable. *See* 968 F.3d at 1005–06 (making an analogy to burdensome discovery under Rule 45 and the denial of a motion to quash not being immediately appealable). Subrogation Plaintiffs have failed to point to any case comparable to the present situation.

*Third*, the only case Subrogation Plaintiffs cite to concerning deliberative process does not address it in the FOIA context, which is what the Court ordered the parties to brief. *See Osinek v. Permanente Med. Grp., Inc.*, 2024 WL 4906067, at *1–*2 (N.D. Cal. Nov. 27, 2024) (motion to compel response to requests for production in a False Claims Act action). In any event, *Osinek* is distinguishable. There, the court rejected the United States' invocation of the deliberative process privilege, in part, based on overbroad withholdings and generic descriptions of documents. *See generally id.* at *15–*22. By contrast, NHTSA's *Vaughn* Index identifies the date and topic of each redacted email so that Subrogation Plaintiffs can understand which specific decisions the email related to. *See generally* Chapman Decl. Ex. A (*Vaughn* Index). Additionally,

each of the redacted emails NHTSA produced were only redacted in part—Subrogation Plaintiffs were able to utilize the date, "From", "To", "Subject" lines, as well as unredacted portions of the emails to provide context as to how the specific email relates to specific deliberative decisions or internal policy discussions.[7] Accordingly, NHTSA has provided Subrogation Plaintiffs enough details for them to understand the content and context of each withholding.

**B. NHTSA properly applied FOIA Exemption (b)(4) to withhold Kia & Hyundai's sensitive commercial information.**

Exemption 4 to the FOIA, 5 U.S.C. § 552(b)(4), exempts from disclosure "trade secrets and commercial or financial information obtained from a person [that is] privileged or confidential." With respect to the material withheld under Exemption 4 to the FOIA, NHTSA determined that a small selection of pages consist of copyrighted or confidential information from third parties, including confidential engineering diagrams from Kia or Hyundai. Chapman Decl. Ex. A at 51, 58, 67–69; Declaration of Dylan Voneiff ¶¶ 14–18. NHTSA evaluated and granted two requests for confidential treatment submitted under 49 C.F.R. Part 512 and properly withheld the confidential information under Exemption 4. *See* Voneiff Decl. ¶¶ 14–18. Furthermore, the context from these partial redactions readily demonstrates that they do not relate to any vehicle's steering column, theft prevention, or FMVSS 114. Accordingly, the agency properly invoked Exemption 4.

**C. Subrogation Plaintiffs do not challenge the application of FOIA Exemption (b)(6).**

Pursuant to an agreement between Subrogation Plaintiffs and NHTSA, the *Vaughn* Index does not log any redaction made pursuant to Exemption 6, which applies to

[7] NHTSA is aware of only two emails designated as redacted in full in the *Vaughn* Index. Chapman Decl. Ex. A at 5, 40 (May 17, 2024 email at 00693; January 23, 2023 email at 04562.). The May 17 email is mistakenly labeled—that email was only partially redacted. The January 23 email was only partially redacted, but it had no text and consisted of only an attachment that was redacted full.

"personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); *see* Chapman Decl. ¶ 5. Accordingly, NHTSA properly invoked this Exemption to redact personal information.

## V. CONCLUSION

For the foregoing reasons, the Court should uphold NHTSA's application of the FOIA Exemptions and dismiss the motion to compel as moot.

Dated: November 17, 2025

Respectfully submitted,

BILAL A. ESSAYLI
First Assistant United States Attorney
DAVID M. HARRIS
Assistant United States Attorney
Chief, Civil Division
DANIEL A. BECK
Assistant United States Attorney
Chief, Complex and Defensive Litigation Section

/s/ *Ryan C. Chapman*
RYAN C. CHAPMAN
Assistant United States Attorney

Attorneys for Non-Party
NHTSA

**L.R. 11-6.1 Certification**

The undersigned counsel of record for NHTSA certifies that this brief contains 4,360 words, which complies with the word limit of L.R. 11-6.1.

Dated: November 17, 2025

/s/ *Ryan C. Chapman*
RYAN C. CHAPMAN
Assistant United States Attorney