**JENNER & BLOCK LLP**
Kate T. Spelman (SBN 269109)
KSpelman@jenner.com
Madeline P. Skitzki (SBN 318233)
MSkitzki@jenner.com
Jenna L. Conwisar (SBN 341521)
JConwisar@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA  90071-2246
Telephone:   +1 213 239 5100
Facsimile:    +1 213 239 5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
PBrennan@jenner.com
Andrianna D. Kastanek (*pro hac vice*)
AKastanek@jenner.com
Elizabeth M. Dassow (*pro hac vice*)
EDassow@jenner.com
353 North Clark Street
Chicago, IL  60654-3456
Telephone:   +1 312 222 9350
Facsimile:    +1 312 527 0484

*Attorneys for Defendants*

Additional Counsel Listed on Signature Page

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No. 8:22-ML-3052-JVS(KESx) <br><br> **DEFENDANTS' STATEMENT RE: PLAINTIFFS FILING OF AN UNAUTHORIZED DOCUMENT AT DOCKET 1213 FALSELY LABELED AS A JOINT STIPULATION, THE FAILURE OF PLAINTIFFS TO IMMEDIATELY WITHDRAW THE UNAUTHORIZED DOCUMENT, AND THE COURT'S ENTRY OF AN ORDER BASED UPON THE UNAUTHORIZED FILING** <br><br> Judge:   The Honorable James V. Selna <br> Ctrm:    10C |
| *This document relates to:* <br> ALL SUBROGATION CASES | |

## INTRODUCTION

Few things can undermine the judicial system in the United States more than filing a document labeled a "stipulation" (Dkt. 1213) without consent of the purported signatory. The damage is compounded when the filing party refuses to withdraw the document immediately upon request of the party whose signature was falsely affixed to such a document. Counsel for the Plymouth Rock entities did both here with respect to the dismissal of a New Jersey case transferred to the MDL for which the subrogee is Plymouth Rock Insurance Company. This Court entered an order of dismissal (Dkt. 1214) because the Court was misinformed by the lawyers that there was a stipulation when, in fact, there was none. We therefore ask the Court to immediately strike the so-called stipulation filed as Dkt. 1213 and withdraw the Order entered as Dkt. 1214.

If counsel for the Plymouth Rock entities wish to dismiss the New Jersey case in which Plymouth Rock Insurance Company is the named plaintiff, counsel can make an appropriate motion at the appropriate time. In Defendants' view, the Court should decline to dismiss that case; the refiling of Plymouth Rock's subrogation claims in the MDL is a clear example of gamesmanship intended to bypass the Supreme Court's ruling in *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach,* 523 U.S. 26 (1998). Regardless, that issue should only be decided after full briefing, and any such briefing should be deferred until the Court lifts the stay with respect to the stayed parties, which includes the Plymouth Rock entities.

Upon the filing of the false stipulation, counsel for Defendants immediately notified counsel for the Plymouth Rock entities that the stipulation was filed without consent and directed that they notify the Court and take steps to correct the record. On subsequent days—including over the holidays—Defendants repeated this request no less than six times. *Eight days passed* before counsel for the Plymouth Rock entities took any action, and even then, counsel refused to withdraw the stipulation—instead using the filing as an opportunity to advocate for the dismissal

1

**DEFENDANTS' STATEMENT RE: PLAINTIFFS FILING OF AN UNAUTHORIZED DOCUMENT AT DOCKET 1213 FALSELY LABELED AS A JOINT STIPULATION**

of Plymouth Rock's New Jersey case. As explained further below, Defendants respectfully request that Your Honor strike the stipulation (Dkt. 1213) and the subsequent Order (Dkt. 1214), and direct that briefing on the dismissal be deferred until after the stay is lifted.

## BACKGROUND

Defendants provide the following background for context:

On **July 3, 2024**, the Court granted HMA and KA's motion to sever, thus creating over 200,000 individual lawsuits. The Court did not require the insurance companies to file each individual suit again and considered sufficient the procedure by which the insurance companies provided spreadsheets to denote their claims. Dkt. 494. In so doing, the Court stayed discovery as to all but the first-listed insured of the first-named insurer in each subrogation case. Two of the 11 non-stayed Subrogation Plaintiffs' cases arose outside of California.

One of the cases filed outside of California involves Plymouth Rock as the subrogee. Specifically, on **October 1, 2024**, Plymouth Rock Insurance Company ("Plymouth Rock") filed a suit against Defendants in the Superior Court of New Jersey. Defendants filed a Notice of Removal of the New Jersey Complaint on November 6, 2024. (Case No.: 8:24-cv-02637-JVS-KES, Dkt. 1). The Plymouth Rock case was subsequently transferred by order of the MDL Panel (CTO-26) and consolidated with this MDL. (Case No. 8:22-ml-03052-JVS-KES, Dkt. 14).

Because Plymouth Rock's suit was filed outside of California, the Court can dispose of the claims on summary judgment, but it cannot try the case. *See Lexecon,* 523 U.S. 26. If a trial is necessary, the case must be transferred back to the District of New Jersey.

As directed by this Court, all insurance companies, regardless of when the subrogation claim was filed, provided a spreadsheet to Defendants of all the Subrogation Plaintiffs' entities and their claims. Plymouth Rock provided their claims spreadsheet to Defendants on **May 19, 2025**. Unlike other Subrogation

2

DEFENDANTS' STATEMENT RE: PLAINTIFFS FILING OF AN UNAUTHORIZED DOCUMENT AT DOCKET 1213 FALSELY LABELED AS A JOINT STIPULATION

Plaintiffs, Plymouth Rock did not include the underwriting entity or insurance group for its claims, requiring Defendants to individually locate the underwriting company for each insured and to deduce the party seeking to recover on each claim. The following non-exhaustive list of entities appear to be the underwriters and insurance companies of claims produced by Plymouth Rock on May 19, 2025: Palisades Insurance Company, Plymouth Rock Assurance Corporation, Plymouth Rock Assurance Preferred Corporation, Plymouth Rock Assurance, Plymouth Rock Management Company of New Jersey, High Point Safety and Insurance Company, Teachers Auto Insurance Company of New Jersey, Teachers Insurance Plan of New Jersey, High Point Property and Casualty Insurance Company, High Point Preferred Insurance Company, High Point Brokerage Company, Inc., Gabi Personal Insurance Agency, and Insurance Answer Center, LLC. All these Plymouth Rock entities were represented by Michael Riehl.

On **September 8, 2025**, Subrogation Plaintiffs' leadership proposed Plymouth Rock as their bellwether on the Subrogation Track, listing the insured as Vanessa A. Granados. Ms. Granados is not the first-named insured on either the complaint or on any spreadsheet provided by Plymouth Rock. Dkt. 1041. Later, the Court determined that the Subrogation Track would proceed with one bellwether: State Automobile Mutual Insurance Company's claim ("State Auto") for their first-named insured, St. Anthony's. *See* Dkt. 1120. Cozen O'Connor represents State Auto.

On **September 24, 2025**, Cozen O'Connor filed a Notice of Additional Subrogation Plaintiffs, including numerous Plymouth Rock entities. Dkt. 1060. This filing sought to incorporate the Plymouth Rock entities into the complaint filed by State Auto, apparently to bypass *Lexecon* by changing the filing forum for the Plymouth Rock entities from New Jersey to the Central District of California. The filing also corrected an error in the name of the Subrogation Plaintiff, from Plymouth Rock Insurance Company to Plymouth Rock Assurance Corporation.

On **December 18, 2025**, Mike Riehl, attorney for Plymouth Rock, filed a document falsely entitled "Stipulation for Voluntary Dismissal Without Prejudice of Plymouth Rock Insurance Company (PRIC)." Dkt. 1213. Although labeled a joint stipulation, and containing the signature of Defendants' counsel, Peter Brennan of Jenner & Block, it was filed without Mr. Brennan's or Defendants' consent or knowledge. On the same day, Mr. Brennan notified Mr. Riehl of the error and directed that the improper stipulation immediately be corrected. It was not.

On **December 19, 2025**, Mr. Riehl apologized for the mistake, stated that he had been "advised that all parties had agreed" to the dismissal, and represented that the issue would be rectified. Later that same day, when there had been no activity on the docket, Defense counsel again requested that the issue be corrected with the Court immediately. Again, it was not.

On **December 22, 2025**, when Plymouth Rock's counsel still had not corrected the issue, Elizabeth Dassow, Counsel for Defendants, called Mr. Riehl, reiterating the urgency of Defendants' request and requesting that Mr. Riehl call her back as soon as he had withdrawn the improper stipulation. Mr. Riehl told Ms. Dassow that he would "immediately" withdraw the stipulation and indicate it was filed in error. At approximately 3 PM CT on December 22, Mr. Riehl left a voicemail for Ms. Dassow, stating that he had called both the Court and Elliott Feldman of Cozen O'Connor and was waiting to hear back from both. Mr. Riehl stated he was trying to get the issue "resolved" that day. Separately, shortly after 5PM CT, Megan Peitzke of Cozen O'Connor left a voice mail for Jenna Conwisar, attorney for Defendants. She indicated she did not understand the "pushback" but stated she was "happy to help out however [she] can." As Mr. Riehl is the one who filed the improper stipulation and submitted a claims spreadsheet to Defendants on behalf of multiple Plymouth Rock entities, Defense counsel continued to communicate with Mr. Riehl.

On the morning of **December 23, 2025**, Ms. Dassow again spoke with Mr.

4

DEFENDANTS' STATEMENT RE: PLAINTIFFS FILING OF AN UNAUTHORIZED DOCUMENT AT DOCKET 1213 FALSELY LABELED AS A JOINT STIPULATION

Riehl, who stated he would be filing a letter with the Court within approximately an hour of the phone call in which he would indicate that the stipulation was filed without Defendants' consent. Mr. Riehl explained that he was prepared to file the letter on December 22, but that Ms. Peitzke told him not to file because she was in contact with Defendants. Again, Ms. Dassow stressed that it was imperative that the stipulation, which was filed without consent, be withdrawn or reversed immediately. In response, Mr. Riehl told Ms. Dassow that he would file a correction with the Court right away. He did not.

At 12:28 PM CT on December 23, Ms. Dassow sent an email to Mr. Riehl summarizing the content of their call, including that Mr. Riehl stated he would file something with the Court that day. The email confirmed that Defendants had *not* authorized the filing, including in conversations with Cozen O'Connor, or otherwise excused any delay in rectifying the error.

At approximately 1:30 PM CT, Ms. Dassow and Mr. Riehl spoke again. Mr. Riehl stated that he had sent the document he was going to file to both his client and Cozen O'Connor. Despite the urgency of the request and having already spent multiple days attempting to correct the false stipulation, Mr. Riehl stated he was told by Cozen O'Connor to ask if Defendants would agree to delay the filing until after the New Year. Defense counsel stated that this was unacceptable. Mr. Riehl repeatedly stated that he understood Defendant's position, stated he would start making phone calls immediately, and told Ms. Dassow that he would call her back later that day.

Shortly after this phone call, Defense counsel followed up with Mr. Riehl to explain that there was no need for Mr. Riehl to obtain Cozen O'Connor's consent or that of his client, given that the filing was unauthorized in the first place. Defense counsel again insisted that Mr. Riehl take all necessary actions to withdraw the stipulation immediately.

At approximately 12 PM CT on **December 24, 2025**, still having heard

5

nothing from Mr. Riehl, Ms. Dassow again emailed Mr. Riehl. Ms. Dassow requested an update on the filing and reiterated the importance of Mr. Riehl filing a correction without any further delay. Defense counsel stated that if nothing was on file by the end of the day, Defendants would be forced to bring this issue to the Court. Again, nothing was filed.

At approximately 11 AM CT on **December 25, 2025**, Mr. Riehl responded, apologized for not responding earlier, and asked her to call him the next day.

At 8:57 AM CT on **December 26, 2025**, Ms. Dassow called Mr. Riehl, again emphasizing the urgency of the situation and stating if something was not on file by 3PM CT that day, Defendants would bring the issue to the Court's attention. Mr. Riehl agreed that this correction should be a "very simple situation," stated that Defendants were "absolutely correct" that the improper stipulation should be withdrawn or reversed immediately, and that he should not have to communicate with his client or Cozen O'Connor to file a retraction for a stipulation that should have never been filed. Mr. Riehl told Ms. Dassow she would hear from him later that day.

About a half hour after that call, Mr. Feldman of Cozen O'Connor emailed Mr. Brennan and Ms. Conwisar of Jenner & Block. Mr. Feldman stated that it was brought to his attention that defense counsel asked to receive a correction for the improper stipulation, stated that Mr. Brennan's consent was "inadvertently" not obtained, and that he "would imagine" that Defendants are now consenting to the dismissal.

At 2:05 PM CT on December 26, Ms. Dassow received a phone call from Mr. Riehl. Mr. Riehl stated he was filing a correction of the joint stipulation filed without Defendants' consent, and that Defendants would receive notification of the filing shortly. Mr. Riehl stated that Defendants' position is "wholly justified in every aspect." At approximately 2:30 PM CT on December 26— more than a week after he was notified that he had filed a joint stipulation without Defendants' consent—

Mr. Riehl filed a letter with the Court regarding the improper joint stipulation. Dkt. 1230. Although the letter briefly acknowledges that the stipulation was filed without Defendants' consent, the letter does not seek to withdraw or reverse the stipulation and does not ask the Court to strike it. It also does not acknowledge that, for more than a week, Defendants had repeatedly requested that the stipulation be withdrawn or reversed. Instead, the letter—which reads like an advocacy piece, not an attempt to rectify a false statement to the Court—asks the Court to stand by its dismissal of the New Jersey case, which the Court entered based upon the improperly filed stipulation.

## CONCLUSION

The actions of counsel for the Plymouth Rock entities regrettably lead Defendants to conclude that the falsely filed stipulation was part of a broader scheme to improperly circumvent the Supreme Court's ruling in *Lexecon* by attempting to re-file the Plymouth Rock entities' claims in the Central District of California, rather than where the entities' claims were originally filed in the District of New Jersey.

This issue of whether the District of New Jersey is the proper venue for a trial on Plymouth Rock's claims should not consume the resources of the Court, particularly in such a roundabout manner when all the Plymouth Rock entities' claims are currently stayed. However, if the Court were to decide whether Subrogation Plaintiffs can bypass the District of New Jersey and ignore Supreme Court precedent by refiling the Plymouth Rock entities' claims in the Central District of California, this should be done in a proper, fully briefed and litigated motion so that there is a complete record on the matter at both the trial and appellate level.

In sum, Defendants respectfully request that Your Honor strike the stipulation filed without Defendants' consent (Dkt. 1213) and promptly withdraw the subsequent Order based on the falsely filed joint stipulation (Dkt. 1214).

|   |   |
|---|---|
| | Respectfully Submitted, |
| Dated: December 29, 2025 | **JENNER & BLOCK** |

*/s/ Peter J. Brennan*
Peter J. Brennan (*pro hac vice*)
Andrianna D. Kastanek (*pro hac vice*)
Elizabeth M. Dassow (*pro hac vice*)
Madeline P. Skitzki
Effiong K. Dampha
Jenna L. Conwisar

**CALLAHAN & BLAINE, APLC**
Edward Susolik (SBN 151081)
John D. Van Ackeren (SBN 240739)
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA  92707
Telephone:  +1 714 862 1081
Facsimile:   +1 714 241 4445
ES@callahan-law.com
JVanAckeren@callahan-law.com

*Attorneys for Defendants*