QUINN EMANUEL URQUHART & SULLIVAN, LLP
Steven G. Madison (SBN: 101006)
stevemadison@quinnemanuel.com
Justin C. Griffin (SBN: 234675)
justingriffin@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:   (213) 443-3100

*Attorneys for Defendants Hyundai Motor*
*America and Kia America, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br><br>*City of Madison v. Hyundai Motor Am., et al., Civ. A. No. 8:23-00555 (C.D. Cal.)* | **Case No. 8:22-ML-3052-JVS-(KESx)**<br><br>**The Honorable James V. Selna**<br><br>**MOTION FOR SUMMARY JUDGMENT OF DEFENDANTS HYUNDAI MOTOR AMERICA AND KIA AMERICA, INC.; STATEMENT OF UNCONTROVERTED FACTS; DECLARATION OF STEVEN G. MADISON AND EXHIBITS THERETO; AND MOTION TO SEAL FILED CONCURRENTLY HEREWITH**<br><br>██████████<br><br>Hearing Date: March 23, 2026_<br><br>Hearing Time: 1:30 p.m. |

NOTICE IS HEREBY GIVEN that on March 23, 2026, at 1:30 p.m. or as soon thereafter as the matter may be heard in the United States District Court for the Central District of California, located at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California, before the Honorable James V. Selna, Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") will and hereby do move for an order granting summary judgment in their favor.  This motion is made pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that there is no genuine dispute as to any material fact and, based on the uncontroverted facts, Defendants are entitled to judgment as a matter of law as to each of the claims Plaintiff City of Madison, Wisconsin ("Madison") asserts in the Consolidated Governmental Entities Complaint ("CGEC").

This motion is made following the conference of counsel pursuant to Local Rule 7-3 on February 13, 2026.  The parties were unable to reach a resolution, thus necessitating the filing of this motion.

This motion is based on this notice of motion; the accompanying memorandum of points and authorities; the accompanying statement of uncontroverted facts; the Declaration of Steven G. Madison and exhibits thereto; the records and files herein; and on such other evidence as may be presented at the hearing on this motion and is properly before the Court.

DATED:  February 20, 2026

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By  /s/ Steven G. Madison

*Attorney for Defendants*

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................1

BACKGROUND ...........................................................................2

I.    FACTUAL BACKGROUND ...........................................................2

    A.    The Parties ........................................................................2

    B.    Defendants' Vehicles Comply With All Applicable Safety Regulations ....................................................................2

    C.    Third-Party Criminals Started An Unprecedented Social Media Trend Demonstrating A Novel Theft Method While Madison's Overall Theft Rate Declined ...............................................3

LEGAL STANDARD .....................................................................4

ARGUMENT .............................................................................4

I.    MADISON'S THEORY IS CONFLICT-PREEMPTED ...........................4

    A.    FMVSS 114 Regulates "Normal Activation"—Not Tamper Resistance—and Does Not Require Immobilizers ........................5

    B.    Consistent With This Court's Prior Rulings, Madison's Failure to Identify Specific Anti-Theft Technology the Vehicles Lacked Is Fatal ............................................................................5

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON MADISON'S PUBLIC NUISANCE CLAIM ......................................7

    A.    Madison Produced No Evidence That a Public Nuisance Exists ..........8

    B.    Madison Has Failed To Adduce Evidence Of Underlying Tortious Conduct ...................................................................10

        1.    HMA and KA did not intentionally create a public nuisance ...................................................................10

        2.    Madison's nuisance claim fails with its negligence claim ........13

III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON MADISON'S NEGLIGENCE CLAIM ........................................13

    A.    Intervening Causes Render Madison's Alleged Harm Too Remote .........................................................................14

    B.    In Retrospect, the Alleged Harm is Too Highly Extraordinary ...........14

    C.    Imposing Negligence Liability Here Would Create an Unreasonable and Indeterminate Burden ................................15

IV.    MADISON'S LACK OF DAMAGES IS FATAL TO BOTH CLAIMS .......15

    A.    The Municipal Cost Recovery Rule Bars Damages............................15

    B.    Madison Cannot Identify Any Damages From Increased Thefts .........16

    C.    Punitive Damages, Attorneys' Fees, and Costs Are Not Available......17

CONCLUSION ....................................................................................................19

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

<u>Cases</u>

4
5

*Bauer v. Armslist, LLC*,
572 F. Supp. 3d 641 (E.D. Wis. 2021), *aff'd sub nom Webber v. Armslist LLC*, 70 F.4th 945 (7th Cir. 2023)......................................................13

6
7

*Berner Cheese Corp. v. Krug*,
312 Wis. 2d 251 (2008)....................................................................................17

8
9

*Bolte v. Joy*,
150 Wis. 2d 744 (Wis. Ct. App. 1989) .....................................................13, 15

10
11

*Brown v. Milwaukee Terminal Ry. Co.*,
199 Wis. 575 (1929) ..........................................................................................8

12
13

*Butler v. Adv. Drainage Sys., Inc.*,
294 Wis. 2d 397 (2006)....................................................................................13

14
15

*Butler v. Advanced Drainage Sys., Inc.*,
282 Wis. 2d 776 (Wis. Ct. App. 2005), *aff'd on other grounds*, 294 Wis. 2d 397 (2006) ........................................................................................16

16
17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986)............................................................................................7

18
19

*Centigram Argentina, S.A. v. Centigram Inc.*,
60 F. Supp. 2d 1003 (N.D. Cal. 1999)................................................................7

20
21

*City of Buffalo v. Hyundai Motor Am.*,
2025 WL 1721053 (9th Cir. Jun. 20, 2025) (Bade, J. dissenting) ......................7

22
23

*City of Milwaukee v. NL Indus.*,
315 Wis. 2d 443 (2008)....................................................................................11

24
25

*Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*,
272 Wis. 2d 46 (2004) ...............................................................................13, 15

26

*Coolidge A L.L.C. v. City of Waukesha*,
393 Wis. 2d 594 (2020)....................................................................................11

27
28

*Dep't of Nat. Res. v. Wisconsin Power & Light Co.*,
108 Wis. 2d 403 (1982)....................................................................................15

*Est. of Kriefall v. Sizzler USA Franchise, Inc.*,
    342 Wis. 2d 29 (2012) ...................................................................18

*Geier v. Am. Honda Motor Co.*,
    529 U.S. 861 (2000)...................................................................4, 5

*Giebel v. Richards*,
    224 Wis. 2d 468 (Wis. Ct. App. 1999) ......................................13, 14

*Gritzner v. Michael R.*,
    235 Wis. 2d 781 (2000)...................................................................13

*Hoida, Inc. v. M & I Midstate Bank*,
    291 Wis. 2d 283 (2006) ...................................................................13

*John Skotzke Concrete Const., Inc. v. Kowalczyk*,
    304 Wis. 2d 635 (Wis. Ct. App. 2007) (unpublished) ......................16

*Mateo v. M/S KISO*,
    805 F. Supp. 761 (N.D. Cal. 1991)....................................................7

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986)..........................................................................4

*Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*,
    277 Wis. 2d 635 (2003)...................................................7, 8, 10, 11

*Nichols v. Progressive N. Ins. Co.*,
    308 Wis. 2d 17 (2008) .....................................................................14

*Physicians Plus Ins. Corp. v. Midwest. Mut. Ins. Co.*,
    254 Wis. 3d 77 (2002) .................................................................7, 8

*Rockweit v. Senecal*,
    197 Wis. 2d 409 (1995)...............................................................13, 14

*Roehl Trans., Inc. v. Liberty Mut. Ins. Co.*,
    325 Wis. 2d 56 (2010) .....................................................................17

*Sawyer v. Midelfort*,
    227 Wis. 2d 124 (1999).....................................................................13

*Sigler v. Kobinsky*,
    314 Wis. 2d 784 (2008).....................................................................13

*Tobias v. Cnty. of Racine*,
   179 Wis. 2d 155 (Wis. Ct. App. 1993) ...........................................................13

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs.,*
   *& Prods. Liab. Litig.*,
   978 F. Supp. 2d 1053 (C.D. Cal. 2013) (Selna, J.) ............................................4

*Vogel v. Grant-Lafayette Elec. Co-op.*,
   201 Wis. 2d 416 (1996)....................................................................................11

*Widemshek v. Fale*,
   17 Wis. 2d 337.................................................................................................17

*Williamson v. Mazda Motor of Am., Inc.*,
   562 U.S. 323 (2011).......................................................................................4, 5

## **Rules and Statutes**

49 C.F.R. § 571.114...............................................................................................3

49 U.S.C. § 105(c) .................................................................................................2

49 U.S.C. § 30103(b)(1).........................................................................................2

49 U.S.C. § 30111...................................................................................................2

Fed. R. Civ. P. 56(a) .............................................................................................4

Fed. R. Civ. P. 56(e) .............................................................................................4

Wis. Stat. 895.043(3) ...........................................................................................17

## **Other Authorities**

33 Fed. Reg. 6471, 6472 (Apr. 27, 1968) ..............................................................5

Barbara J. Van Arsdale, Annotation, *Construction and Application of*
   *"Municipal Cost Recovery Rule" or "Free Public Services*
   *Doctrine",* 32 A.L.R.6th 261 (2008) ................................................................15

Restatement (Second) of Torts § 821B cmt...........................................................8

## **PRELIMINARY STATEMENT**

Madison's public nuisance and negligence claims fail as a matter of law.

Federal law preempts both claims. Madison's case survived dismissal at the pleadings stage by framing its claims as challenging the absence of "immobilizers or equivalent anti-theft equipment." The record, developed through years of discovery, now confirms what was evident from the outset: Madison seeks to impose state tort liability on Defendants for not installing engine immobilizers. When asked to identify such "equivalent" technology repeatedly in discovery, Madison identified none. This Court already dismissed identical claims by the City of Chicago as preempted under federal law because they "definitively rest[ed]" on the absence of engine immobilizers. Madison's case is no different.

Setting preemption aside, Madison's claims independently fail under Wisconsin law. Madison brought suit because it allegedly suffered a public safety crisis of rampant car theft and related crimes. But the undisputed facts show that overall vehicle theft in Madison *decreased* in 2022, ████████████████████ ████████████████████████████████████████████████████ ██████. The undisputed evidence also shows that overall vehicle theft continues to decrease in Madison. When asked at deposition whether Hyundai and Kia vehicles were causing a nuisance in Madison, Madison's own expert, Mr. Michael Nranian, testified, ██████████████████████████ The Court should agree and enter judgment for Defendants on Madison's nuisance claim.

Madison's public nuisance and negligence claims also fail for the independent reason that Madison has failed to adduce facts of Defendants' tortious conduct and cannot overcome Wisconsin public policy. The undisputed facts show thefts of Hyundai and Kia vehicles were unremarkable for nearly a decade, and that any brief increase started only after a novel theft method went viral in an unprecedented social media challenge, which was perpetrated by third-party criminals, many of whom were known to Madison law enforcement and allowed to steal cars again and again. On

-1-

this undisputed record, no reasonable jury could conclude that HMA or KA are legally responsible for a later viral crime wave driven by independent actors.

Madison's claims also fail because it cannot demonstrate cognizable damages. Neither Madison's damages expert, its director of finance, nor any other witness were able to identify a single dollar Madison spent responding to thefts of Hyundai and Kia vehicles.

In short, this case concerns a temporary spike in Hyundai and Kia thefts while Madison's overall vehicle theft rates were the lowest in nearly a decade, driven by viral social media dissemination of criminal methods—not a defect in vehicle design, not a violation of federal standards, and not a legally cognizable public nuisance or act of negligence. Because Madison cannot establish a viable theory of liability consistent with federal law or Wisconsin tort principles, the Court should enter summary judgment in favor of HMA and KA.

## **BACKGROUND**

## I.    FACTUAL BACKGROUND

### A.    The Parties

***Defendants.***  HMA and KA, headquartered in Orange County, California, are the American distributors of Hyundai and Kia vehicles.

***Plaintiff.***  Madison is the Wisconsin state capital, with a population of approximately 280,000 people.  The Madison Police Department ("MPD") is responsible for responding to and investigating vehicle theft. Declaration of Steven G. Madison ("Decl.") ¶ 4, Ex. A.

### B.    Defendants' Vehicles Comply With All Applicable Safety Regulations

The National Highway Traffic Safety Administration ("NHTSA") has exclusive authority to promulgate automotive safety and anti-theft regulations in the United States.  *See, e.g.*, 49 U.S.C. § 105(c); 49 U.S.C. § 30111; 49 U.S.C. § 30103(b)(1).  One such regulation is Federal Motor Vehicle Safety Standard

("FMVSS") 114, codified at 49 C.F.R. § 571.114, which provides that all vehicles must come equipped with a starting system which, when the key is removed, prevents (1) "normal activation of the vehicle's engine or motor," and (2) either "steering, or forward self-mobility, of the vehicle, or both."   49 C.F.R. § 571.114 at S5.1.1. FMVSS 114 does not require immobilizers.  Statement of Undisputed Facts ("SUF") ¶ 1.  NHTSA has determined, and there is no dispute, that Hyundai and Kia vehicles without engine immobilizers fully comply with NHTSA's regulations.  SUF ¶¶ 3–4.

### C.    Third-Party Criminals Started An Unprecedented Social Media Trend Demonstrating A Novel Theft Method While Madison's Overall Theft Rate Declined

From 2011 to 2021, overall vehicle theft in Madison was on the rise, perpetrated by ████████████████████████████████████████████████ ████████████████.  SUF ¶¶ 19, 41.  However, theft rates for Hyundai and Kia vehicles *without* engine immobilizers were ███████████████████████████████ ███████████████████████████████████████████████████████████████████████, SUF ¶¶ 33–34.

Then, in the summer of 2022, the MPD ██████████████████████████ ██████████████████.  SUF ¶ 37.  As depicted in the step-by-step videos, the Kia Boyz method of vehicle theft generally involves: (1) breaking the window; (2) damaging the steering column cover to access the ignition cylinder; (3) breaking the ignition cylinder to reveal the ignition tumbler; and (4) inserting a standard USB-A cord or similar instrument to turn the ignition and start the engine.  Decl. ¶¶ 5, 7, 8–10, Exs. B at ¶ 31, D at ¶ 22, E at ¶ 25, F at ¶ 41, G at 9.  The videos, which spread on TikTok and other social media sites, encouraged participants to steal certain models of Hyundais and Kias without immobilizers and engage in dangerous conduct for the "Kia Challenge."  Decl. ¶ 7, Ex. D, App'x B, at 8–22.

████████████████████████████████████████████████████████████.  SUF ¶ 18.  However, despite the onset of the "Kia Challenge," Madison's overall vehicle

theft numbers **dropped** in 2022.  SUF ¶¶ 20.  By 2024, the number of overall vehicle thefts in Madison was lower than it had been nearly a decade prior.  SUF ¶ 21.

## LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "[T]he nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'"  *Id.* at 587 (citing Fed. R. Civ. P. 56(e)).  Although the court makes inferences in favor of the non-moving party, "inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn."  *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, 978 F. Supp. 2d 1053, 1091 (C.D. Cal. 2013) (Selna, J.).

## ARGUMENT

### I.    MADISON'S THEORY IS CONFLICT-PREEMPTED

Madison's theory of liability rests on the assertion that Defendants were required to design vehicles with immobilizers to prevent "Kia Boyz" thefts.  But federal law does not require immobilizers nor tamper-resistant ignition systems, and it deliberately preserves manufacturer choice as to how vehicles comply with FMVSS 114.  After full discovery, the undisputed record confirms that Madison's theory would eliminate that federally preserved design flexibility.  Under *Geier v. Am. Honda Motor Co.*, 529 U.S. 861 (2000) (holding that state tort claim seeking to hold vehicle manufacturer liable for failing to install airbags "stood as an obstacle to the accomplishment" of federal design-flexibility objectives and was thus barred under conflict-preemption principles (internal citation omitted)), and *Williamson v. Mazda Motor of Am., Inc.*, 562 U.S. 323 (2011), that theory is conflict-preempted.

### A.    FMVSS 114 Regulates "Normal Activation"—Not Tamper Resistance—and Does Not Require Immobilizers

FMVSS 114 requires only that a vehicle's starting system prevent "the normal activation of the vehicle's engine or motor" when the key is removed.  49 C.F.R. § 571.114 S5.1.1(a), S5.1.2, S4.  FMVSS does not require immobilizers.  SUF ¶ 1.  Through FMVSS 114, NHTSA exercised its delegated authority to define the required scope of theft-deterrence performance for vehicle starting systems in the United States while preserving manufacturer choice and flexibility.  *See* 33 Fed. Reg. 6471, 6472 (Apr. 27, 1968) ("the standard [for FMVSS 114] has been framed to permit as many specific devices as possible to meet its requirements"); SUF ¶ 2.

Under *Geier*, state law is conflict-preempted where it would "stand as an obstacle to the accomplishment and execution of the full purposes and objectives" of federal regulation.  529 U.S. at 873 (internal quotation omitted).  Where federal law deliberately preserves manufacturer choice, a state tort claim that effectively eliminates that choice is preempted.  *Id.* at 881.  *Williamson* confirms the same principle: preemption turns on whether federal regulators intended to preserve manufacturer flexibility as part of the regulatory scheme.  562 U.S. at 332–36.  Here, federal law preserves the choice whether to use immobilizers or other compliant designs that prevent normal activation.  A state-law verdict of liability for failing to install immobilizers would eliminate that choice and impose precisely the type of narrow design mandate *Geier* forbids.

### B.    Consistent With This Court's Prior Rulings, Madison's Failure to Identify Specific Anti-Theft Technology the Vehicles Lacked Is Fatal

At the pleading stage, the Court denied dismissal of the Consolidated Governmental Entities Complaint ("CGEC") because the CGEC referenced alleged failure to incorporate "common" or "standard" anti-theft technology or unspecified "equivalent" anti-theft devices.  Dkt. 270 at 6.  In contrast, the Court dismissed Chicago's case because Chicago "definitively rest[ed] its claims [on] the allegation

that Defendants failed to use engine immobilizers," and "[l]ike *Geier* and *Williamson*," this "specific of a prescription runs afoul of federal government regulations that do not impose such a narrow requirement." Dkt. 334 at 6.

Discovery has now clarified what the pleadings obscured. The record demonstrates that Madison's theory, too, rests solely on the absence of immobilizers.

When asked in written discovery to identify the specific anti-theft technologies that allegedly should have been installed, Madison did not identify a single concrete, non-immobilizer alternative, let alone an alternative supported by engineering specifications, testing data, or feasibility analysis. SUF ¶ 5–6.

Madison's experts, in turn, serially failed to articulate a specific, non-immobilizer, alternative anti-theft technology. Although Madison's expert reports generally referred to hypothetical anti-theft devices that are ███████████ or ███████████ immobilizers, they never identified any such devices or how they should or could have been installed in the vehicles at issue. SUF ¶¶ 5, 8, 10. Instead, the reports were devoted to ████████████████████████████████ ████████████████████████████████████████. SUF ¶ 7.

The same problem plagued the experts' depositions. For example, when asked to name any alternative, equivalent anti-theft equipment, Mr. Nranian repeatedly testified: ███████████████████ SUF ¶ 9. Mr. Bloch and Dr. Farrell were ██████████████████████████████████. SUF ¶¶ 10–12. Tellingly, Madison's experts contend that ████████████████ ███████████████████████████████. SUF ¶¶ 13–14. None of Madison's experts identified a non-immobilizer technology that would have prevented the destructive bypass method at issue here while remaining within the design flexibility FMVSS 114 preserves.

At summary judgment, conclusory references to unspecified "equivalent" alternatives are insufficient. A non-movant may not avoid summary judgment

through "mere speculation" or by invoking hypothetical alternatives untethered to admissible evidence. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *see Centigram Argentina, S.A. v. Centigram Inc.*, 60 F. Supp. 2d 1003, 1010 (N.D. Cal. 1999) ("Conclusory speculative testimony is insufficient to raise a genuine issue of material fact and defeat summary judgment"); *Mateo v. M/S KISO*, 805 F. Supp. 761, 775 (N.D. Cal. 1991) ("Conclusory, speculative testimony is insufficient to raise genuine issues of fact and, thereby, defeat summary judgment"). Plaintiffs were required to identify a specific, feasible, non-preempted alternative. They did not.

The undisputed record thus aligns Madison's theory with Chicago's dismissed theory. Although Madison's complaint initially referenced "equivalent" anti-theft technologies, the evidentiary record shows its theory depends ***solely*** on the absence of immobilizers. Under this Court's prior reasoning, that theory "runs afoul of federal government regulations that do not impose such a narrow requirement." Dkt. 334 at 6. Because federal law preserves manufacturer discretion not to install immobilizers, and because Madison's theory would impose liability precisely for exercising that discretion, Madison's claims are conflict-preempted as a matter of law. *See City of Buffalo v. Hyundai Motor Am.*, 2025 WL 1721053, *3–5 (9th Cir. Jun. 20, 2025) (Bade, J. dissenting).

## II. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON MADISON'S PUBLIC NUISANCE CLAIM

To prevail on a claim for public nuisance under Wisconsin law requires proof of two elements: (1) the existence of a public nuisance; and (2) underlying tortious conduct. *See Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 277 Wis. 2d 635, 655–57 (2003) ("A nuisance is nothing more than a particular type of harm suffered; liability depends upon the existence of underlying tortious acts that cause the harm."); *Physicians Plus Ins. Corp. v. Midwest. Mut. Ins. Co.*, 254 Wis. 3d 77 at 113 (2002) ("Since a public nuisance can arise by either negligent or intentional conduct, the first element necessary to prove liability for maintaining a public

nuisance requires only the existence of the public nuisance itself.").  Madison has wholly failed to adduce evidence to support either element.

### A.    Madison Produced No Evidence That a Public Nuisance Exists

"The first step in any nuisance analysis is to determine whether a nuisance actually exists."  *Milwaukee Metro*, 277 Wis. 2d at 655.  "A public nuisance is a condition or activity which substantially or unduly interferes with the use of a public place or with the activities of an entire community."  *Physicians Plus Ins. Corp.*, 254 Wis. 3d at 102.  Madison's public nuisance theory is that an "unreasonable interference (rampant vehicle thefts, associated crimes, and the corresponding diversion of public resources) with a public right (public safety) exists."  Dkt. 270 at 11.  But that theory is wholly unsupported by law or evidence.

Under Wisconsin law, liability for public nuisance "is based on the degree of danger existing even with the best of care."  *Physicians Plus*, 254 Wis. 3d at 106 (citing *Brown v. Milwaukee Terminal Ry. Co.*, 199 Wis. 575, 589 (1929)).  Even with the best of care, no city is free of reckless driving, car theft, or concomitant crimes.  And there is no public right to be generally free from crime.  *See* Restatement (Second) of Torts § 821B cmt. g, at 92 (1979) (a public right is "not like the individual right that everyone has not to be assaulted").  Thus, the proper inquiry here is whether Madison adduced evidence of "activity which *substantially* or *unduly* interferes with the use of a public place or with the activities of an entire community," *Physicians Plus*, 254 Wis. 3d at 89 (emphases added), meaning vehicle theft above a baseline level of crime.

The undisputed evidence shows there is no public nuisance of "rampant" car theft and related crimes in Madison.  When asked in written discovery, Madison was unable to provide a date for when the public nuisance began.  SUF ¶ 15.  At deposition, when asked whether Madison has ████████████████████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████████████  SUF ¶ 16.  None of Madison's experts even

reviewed the police reports at issue, let alone identified specific instances of Kia Boyz thefts or connected those thefts to specific related crimes.  SUF ¶ 17.

███████████████████████████████████████.  SUF ¶ 18. But the undisputed facts show that vehicle theft in Madison had climbed for years and in fact peaked ████████████████████████:



SUF ¶ 19.  Contrary to Madison's claim to be suffering from an epidemic of thefts and related crimes, █████████████████████████ coincided with a sharp *decrease* in auto theft in the city from 837 thefts in 2021 to 694 in 2022. SUF ¶ 20.  The decrease in 2022 is not an outlier: auto thefts in Madison have decreased every year during the purported Kia Boyz epidemic (2023 saw 469 total auto thefts and 2024 saw 306).  SUF ¶¶ 20, 22.  Total car thefts in Madison decreased in 2024 to lows not seen since the middle of the last decade.  SUF ¶ 21.  Not only did the total number of stolen vehicles drop, from 2021 to 2024, car thefts as a percentage of all crimes also decreased year over year.  SUF ¶ 23.

████████████████████████████████████████

"Defendants' conduct … continues to affect a substantial number of people" in Madison.  Dkt. 175 at ¶ 271.  Indeed, Madison's own written discovery responses, ████████████████████████████████████████ ████████████████ vehicle theft in Madison has continued to decrease.  SUF ¶¶ 22,

24–28.  MPD internal reports show a steep decline in vehicle theft since 2022 through 2025.

No public nuisance related to "rampant" vehicle thefts and related crimes and safety issues existed, let alone continues to exist, in Madison.  The first element of Madison's public nuisance claim fails.

## B.    Madison Has Failed To Adduce Evidence Of Underlying Tortious Conduct

Even if Madison could establish the existence of a public nuisance, its claim would still fail because it cannot establish "any liability-forming conduct.  Proof of the underlying tortious conduct is an essential element in a nuisance analysis." *Milwaukee Metro. Sewerage Dist. v. City of Milwaukee*, 277 Wis. 2d 635, 660 ¶ 32 (2005).  Liability for a nuisance may be premised upon either intentional or negligent conduct.  *Id.* at 661 ¶ 33.  Madison cannot prevail on either theory.

### 1.    HMA and KA did not intentionally create a public nuisance

"[A] nuisance is based on intentional conduct when the defendant, through ill will or malice, intends to cause the interference or if the defendant, or without any desire to cause harm, nonetheless has knowledge that his otherwise legal enterprise is causing harm or is substantially certain to cause the invasion at issue." *Milwaukee Metro. Sewerage Dist.*, 277 Wis. 2d at 663 ¶ 37.

Madison does not contend, much less has it developed any evidence that, Defendants acted with any "ill will or malice."  Accordingly, only the second formulation of intentional conduct (in which the defendant knows its conduct is causing or is substantially certain to cause the harm at issue) has any potential application in this case.  For this second formulation of non-malicious intentional misconduct to apply, "the 'knowledge' requirement refers to knowledge that the condition or activity is causing harm to another's interest in the use and enjoyment of land."  *Id.* ¶ 38.  Moreover, "it is not enough to make an invasion intentional that the [defendant] realizes or should realize that his conduct involves a serious risk or

-10-

likelihood of causing the invasion;" "[r]ather, in order for an invasion to be intentional, the [defendant] must either act for the purpose of causing it or know that *it is resulting* or is *substantially certain to result* from his conduct." *Id*. at 664–65 ¶ 39 (emphases added) (citations and internal quotations omitted).

Thus, to establish intentional tortious conduct by Defendants, Madison must do more than adduce evidence that Defendants should have known that distributing vehicles with non-immobilizer anti-theft devices could make them targets for thieves; it must adduce evidence from a which a jury could find Defendants *knew* distributing their vehicles was *substantially certain to result* in the specific nuisance itself (*i.e.*, the alleged public burdens of an epidemic of theft sprees and related criminal conduct leading to unsafe streets instigated by viral social media posts in Madison). *See, e.g.*, *Vogel v. Grant-Lafayette Elec. Co-op.*, 201 Wis. 2d 416, 431–32 (1996) (electric co-op's mere knowledge that power supply could throw stray voltage onto farmers' land did not state claim for nuisance based on intentional conduct where harm to cattle would not "necessarily result" and plaintiffs failed to identify any evidence defendant knew its power system was imposing unreasonable levels of stray voltage on to their farm); *see also City of Milwaukee v. NL Indus.*, 315 Wis. 2d 443, 469 (2008) (insufficient to establish nuisance for city to show defendant lead paint manufacturer anticipated "some harm," which "would in essence result in strict liability for nuisance 'whenever some harm could be anticipated even though nothing close to a *public* nuisance was for[e]seeable;" city had to show defendant anticipated the public nuisance itself, *i.e.*, hazardous childhood lead exposure caused not only by pica but also ingestion from normal hand-to-mouth activity); *Coolidge A L.L.C. v. City of Waukesha,* 393 Wis. 2d 594 ¶ 27 (2020) (to establish intentional nuisance claim plaintiff property owner would have to prove not just that city knew project would cause vibrations to neighboring parties but that it knew "there were vibrations invading Coolidge's property, and that the level of those vibrations . . . were causing

Coolidge's soil to settle such that it interfered with the use and enjoyment of the property").

Accordingly, for the nuisance inquiry, it is irrelevant whether Defendants knew or had reason to know that vehicles without immobilizers might be easier to steal and use in related crimes than others (even though Defendants' vehicles complied with federal anti-theft regulations, SUF ¶¶ 3–4, and, prior to the Kia Challenge, such ███████████████████████████████████████████████████, SUF ¶¶ 33–34).   Rather, Wisconsin nuisance law is clear Madison must show Defendants knew that using an alternative technology was **substantially certain to cause** an epidemic of spree thefts and related criminal conduct leading to unsafe streets instigated by an unprecedented viral social media challenge and incurring above-normal public safety costs in Madison.  There is no evidence that Defendants had—or even could have had—such prescience.  Similarly, there is no evidence that Defendants selected vehicle features with an eye towards harming US municipalities, let alone Madison specifically.  Even if Defendants could have predicted that anyone would take to social media to broadcast their exploitation of the absence of immobilizers in their vehicles, TikTok did not even exist at the time many of these vehicles entered the market.  SUF ¶ 35.  Moreover, social media companies maintain community guidelines and policies prohibiting portrayal of criminality that, when enforced, should prevent criminal "how-to" videos from going viral.  SUF ¶ 30.  And even such ██████████████████████████████████████, either generally or specifically on the streets of Madison.  SUF ¶ 31.  Because Madison can adduce no evidence that Defendants knew using technology other than an immobilizer **was certain to** result in a nuisance in the form of increased public safety burdens in Madison (of which there is no evidence), the Court should grant summary judgment of Madison's nuisance claim.

### 2. Madison's nuisance claim fails with its negligence claim

Because Madison's negligence claim fails on public policy grounds, *see* Part III, *infra*, so too does its nuisance claim predicated on negligent conduct. *Bauer v. Armslist, LLC*, 572 F. Supp. 3d 641, 673 (E.D. Wis. 2021), *aff'd sub nom Webber v. Armslist LLC*, 70 F.4th 945 (7th Cir. 2023); *see also Butler v. Adv. Drainage Sys., Inc.*, 294 Wis. 2d 397, 418 ¶ 31 (2006) ("public policy grounds traditionally used to preclude liability for general negligence claims" apply to nuisance claims "due to the analogous relationship between negligence and nuisance").

## III. THE COURT SHOULD GRANT SUMMARY JUDGMENT ON MADISON'S NEGLIGENCE CLAIM

Even if Madison established the elements of its negligence claim, the Court "may nonetheless determine that public policy considerations preclude liability." *Gritzner v. Michael R.*, 235 Wis. 2d 781, 794, ¶ 26 (2000). These public policy factors include: (1) remoteness of injury; (2) intervening causes; (3) extraordinary harm; and (4) unreasonable burden on the defendant. *Rockweit v. Senecal*, 197 Wis. 2d 409, 425 (1995); *Tobias v. Cnty. of Racine*, 179 Wis. 2d 155, 161–62 (Wis. Ct. App. 1993). These public policy factors restore common sense to Wisconsin's negligence rules. *See, e.g.*, *Tobias*, 179 Wis. 2d at 163–64; *Giebel v. Richards*, 224 Wis. 2d 468, 474–76 (Wis. Ct. App. 1999); *see also Bolte v. Joy*, 150 Wis. 2d 744, 751 (Wis. Ct. App. 1989) ("Liability for damages, caused by a wrong, ceases at a point dictated by public policy or common sense.").

"Liability may be denied solely on the basis of ***one of the factors***," *Fandrey ex rel. Connell v. Am. Fam. Mut. Ins. Co.*, 272 Wis. 2d 46, 72 (2004) (emphasis added), and this Court can and should apply these public policy factors to preclude liability now, at the summary judgment stage, as Wisconsin courts regularly do, *see Hoida, Inc. v. M & I Midstate Bank*, 291 Wis. 2d 283, 312, ¶ 42 (2006) (citing *Sawyer v. Midelfort*, 227 Wis. 2d 124, 141 (1999)) (finding consideration of public policy concerns appropriate at summary judgment stage); *see also Sigler v. Kobinsky*, 314

-13-

Wis. 2d 784, 788 (2008) (affirming summary judgment based on public policy grounds); *cf. Nichols v. Progressive N. Ins. Co.*, 308 Wis. 2d 17, 32 (2008) (reversing the court of appeals and dismissing negligence claim at pleading stage on public policy grounds).

### A.    Intervening Causes Render Madison's Alleged Harm Too Remote

Wisconsin law recognizes that intentional criminal acts by third parties may constitute a superseding cause that severs liability. *See Giebel*, 224 Wis. 2d at 475–76. The question here is not whether theft was conceivable in the abstract, but whether this particular sequence of events is legally attributable to Defendants.

The record reflects the following undisputed facts: (1) theft rates for Hyundai and Kia vehicles without immobilizers ███████      ███████████ ████████████████████████████████; (2) there is no evidence ██ ██████████████████████████████████████ (SUF ¶ 32); (3) in 2022, Hyundai and Kia thefts increased ██████████████████████████████████████ ████████████████████████ (SUF ¶¶ 36–38); and (4) Hyundai and Kia theft rates declined in the years after the viral phenomenon (SUF ¶¶ 39–40). There is no evidence that Defendants could have reasonably anticipated that a then-nonexistent social media platform would later amplify destructive criminal conduct *years* after the vehicles were distributed.

Even crediting Madison's evidence, no reasonable jury could conclude that Defendants' regulatory-compliant vehicles were the legal cause of a later viral crime contagion. ████████████████████. SUF ¶ 42. Any vehicle can be stolen. Under Wisconsin's public policy framework, the alleged injury is too remote and the superseding conduct too substantial to support negligence liability.

### B.    In Retrospect, the Alleged Harm is Too Highly Extraordinary

Wisconsin courts also deny liability where "in retrospect it appears too highly extraordinary that the negligence should have brought about the harm." *Rockweit*,

-14-

197 Wis. 2d at 426.  The undisputed evidence shows that Madison has suffered no harm as a result of increased Hyundai and Kia thefts and related crimes.  *See* Part IV *infra*.  But even assuming harm and with the benefit of hindsight, it is highly extraordinary that lawful vehicle designs exhibiting ordinary theft patterns for years would later become the focal point of a viral criminal trend.  The Court should exercise its "common sense," *Bolte v. Joy*, 150 Wis. 2d at 751, and decline to extend Wisconsin negligence liability so far.

### C.    Imposing Negligence Liability Here Would Create an Unreasonable and Indeterminate Burden

Wisconsin courts may also deny liability where doing so would impose an unreasonable or disproportionate burden relative to the alleged negligence.  Because all vehicles at issue complied with applicable federal anti-theft standards, Madison's negligence theory would effectively require manufacturers to anticipate and design and insure against unforeseeable future crime waves by third parties out of their control.  The unprecedented burden, or any of the other public policy factors ***alone*** are enough to grant summary judgment for Defendants.  *Fandrey*, 272 Wis. 2d at 72.

## IV.    MADISON'S LACK OF DAMAGES IS FATAL TO BOTH CLAIMS

### A.    The Municipal Cost Recovery Rule Bars Damages

Absent explicit statutory authority, governmental entities in Wisconsin may not obtain damages from tortfeasors to recover expenditures of public funds.  *See Dep't of Nat. Res. v. Wisconsin Power & Light Co.*, 108 Wis. 2d 403, 407 (1982) (prohibiting governmental entity from recovering reimbursement for fire suppression expenses absent statutory authority).  This principle, articulated in other jurisdictions as the "municipal cost recovery rule" or "free public services doctrine," "provides that … a county cannot recover the costs of carrying out public services from a tortfeasor whose conduct caused the need for such services."  Barbara J. Van Arsdale, Annotation, *Construction and Application of "Municipal Cost Recovery Rule" or "Free Public Services Doctrine"*, 32 A.L.R.6th 261 (2008).

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Madison's counsel has already conceded that the municipal cost recovery rule would apply here to bar recovery unless Madison experienced something "above a baseline level of crime." SUF ¶ 52. When asked in discovery to "[i]dentify with specificity (i) the 'baseline' level of crime . . . at which point You contend, as claimed during oral argument before the Ninth Circuit . . . that you cannot recover costs from a third party tortfeasor under the principle of the municipal cost recovery rule; and (ii) the level of crime above this 'baseline' level that You contend . . . would trigger Your ability to recover costs from such a third party," Madison refused to answer. SUF ¶ 53. This refusal makes sense in light of Madison's theft and crime data, which shows that vehicle theft is not above a baseline in Madison. Rather, it is the lowest it has been in nearly a decade. SUF ¶ 21. Even during the height of the supposed increase in thefts of Hyundai and Kia vehicles in 2022, vehicle theft in Madison went *down*. SUF ¶ 20. By Madison's own admission, it cannot recover under the municipal cost recovery rule because there is no evidence that it experienced thefts above a baseline.

## B.    Madison Cannot Identify Any Damages From Increased Thefts

Even if the municipal cost recovery rule did not bar recovery, Madison has not identified evidence of recoverable damages. Damages are an essential element of both its public nuisance and negligence claims. *See John Skotzke Concrete Const., Inc. v. Kowalczyk*, 304 Wis. 2d 635, ¶ 13 (Wis. Ct. App. 2007) (unpublished) ("Because there was no evidence of damages for the negligence claims … we conclude the circuit correctly granted summary judgment on those claims."); *Butler v. Advanced Drainage Sys., Inc.*, 282 Wis. 2d 776, 804 (Wis. Ct. App. 2005), *aff'd on other grounds*, 294 Wis. 2d 397 (2006) ("[B]ecause the record does not entitle [the plaintiffs] to a trial on their negligence claim, they are not entitled to a trial on their nuisance claim grounded in negligence.").

David Schmiedicke, Madison's Director of Finance, testified that ███████████ ████████████████████████████████████████████████████████. SUF ¶ 47. He further testified that ██████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████  SUF ¶¶ 48–49.  Indeed, Madison has not identified any evidence that it hired additional officers, diverted municipal funds, sought additional funds, or otherwise incurred any specific expenditures or that its revenues were impacted in any way as a result of Hyundai and Kia thefts and related crimes.  SUF ¶¶ 43–46.  Nor can Madison's damages expert create a triable issue of fact.  Dr. Jonathan Roman testified that ████████████████████████████████████ ██████████████████████  SUF ¶¶ 50.  Dr. Roman conceded that ████████████ ███████████████████████████████████████  SUF ¶ 51.

On this record, Madison has not produced evidence that it incurred identifiable, incremental expenditures as a result of Hyundai or Kia thefts.  In the absence of such evidence, Madison cannot establish damages as a matter of law.

### C.    Punitive Damages, Attorneys' Fees, and Costs Are Not Available

Madison may not recover punitive damages for two reasons.  First, "actual damage must have been suffered before an award of punitive damages can be given." *Widemshek v. Fale*, 17 Wis. 2d 337, 340(1962).  As discussed in Part IV.B. *supra*, Madison is not entitled to punitive damages because it did not suffer actual damages.

Second, Madison has not made the requisite showing that HMA and KA "acted maliciously toward the plaintiff or in an intentional disregard of the rights of the plaintiff."  Wis. Stat. 895.043(3).  "[U]nder this heightened threshold for punitive damages," the Wisconsin Supreme Court "expect[s] [trial courts] to serve as gatekeepers before sending a question on punitive damages to the jury." *Berner Cheese Corp. v. Krug*, 312 Wis. 2d 251, 280 (2008) (affirming trial court's denial of punitive damages at the summary judgment stage).  Wisconsin's punitive damages statute requires evidence of a "purpose to disregard the plaintiff's rights or an awareness that one's actions are substantially certain to result in the plaintiff's rights being disregarded." *Roehl Trans., Inc. v. Liberty Mut. Ins. Co.*, 325 Wis. 2d 56, 126

1   (2010) (affirming trial court's decision to not submit punitive damages question to the

2   jury).

3        As explained in Part II.B.1. *supra*, after taking dozens of depositions and

4   collecting thousands of documents, Madison has been unable to point to a shred of

5   evidence demonstrating that HMA and KA distributed vehicles with malicious intent

6   toward Madison (or anyone).  Nor could HMA and KA have been "substantially

7   certain" that vehicles without engine immobilizers would cause harm to Madison,

8   given that vehicles had been distributed without engine immobilizers since 2010

9   ████████████████████.  SUF ¶ 51.  There is no evidence to suggest that

10  HMA and KA acted maliciously or with intentional disregard for Madison's rights,

11  and this Court should exercise its gatekeeping function and decline to send this

12  question to the jury.

13       Furthermore, Wisconsin follows the American Rule, which provides that

14  parties are to bear their own attorneys' fees and costs.  *Est. of Kriefall v. Sizzler USA*

15  *Franchise, Inc.*, 342 Wis. 2d 29, 70 (2012).  Madison's request for fees and costs is

16  baseless.

17

18

19

20

21

22

23

24

25

26  ///

27  ///

28  ///

-18-

## CONCLUSION

The Court should enter judgment for Defendants on Madison's public nuisance and negligence claims.

DATED:  February 20, 2026          Respectfully submitted,

                                   QUINN EMANUEL URQUHART &
                                   SULLIVAN, LLP


                                   By */s/ Steven G. Madison*
                                       Steven G. Madison (SBN: 101006)
                                       stevemadison@quinnemanuel.com
                                       Justin C. Griffin (SBN: 234675)
                                       justingriffin@quinnemanuel.com
                                       865 South Figueroa Street, 10th Floor
                                       Los Angeles, California 90017-2543
                                       Telephone:  (213) 443-3000
                                       Facsimile:   (213) 443-3100

                                       *Attorneys for Defendants Hyundai Motor
                                       America and Kia America, Inc.*

## **<u>Certificate of Compliance</u>**

I, Steven G. Madison, counsel of record for Defendants Hyundai Motor America and Kia America, Inc., certifies that this brief contains 5,765 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 20, 2026

/s/ Steven G. Madison
Steven G. Madison

1

## **CERTIFICATE OF SERVICE**

I hereby certify that, on February 20, 2026, I caused a true and correct copy of the foregoing to be filed in this Court's CM/ECF system, which sent notification of such filing to counsel of record.


*/s/ Steven G. Madison*
Steven G. Madison