# EXHIBIT Q

### Transcript of Ninth Circuit Oral Argument, April 8, 2025[1]

| | |
|---|---|
| Courtroom Deputy | All rise.  The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. |
| Chief Judge Murguia | Good morning, and welcome to Pasadena, to our Chambers U.S. Court of Appeals Courthouse. It's a pleasure to be here today.  We have a number of cases, but a number have been, and most of them have been submitted on the briefs. If the record could reflect that the first five cases on the calendar have been submitted on the briefs. We're now ready to proceed with the case of City of Buffalo versus Hyundai Motor America Inc. and Kia America Inc. Council's ready to proceed.  You may come forward. |
| Chris Michel | Thank you, your Honor, and may it please the court.  Chris Michel for the appellants.  I'd like to reserve four minutes of time for rebuttal.  For over a decade Hyundais and Kias were among the least stolen cars on the road.  There is no dispute that our vehicles complied with all applicable anti-theft standards at all relevant times.  We are here today because criminals targeted those vehicles following unprecedented online videos promoting theft and subsequent illegal conduct to which Hyundai and Kia responded promptly by providing additional anti-theft measures and other relief for our customers. Plaintiffs in this suit are not our customers. They have no special relationship with Hyundai or Kia.  They are large cities across the country seeking relief for the cost of police response and other government services. Those novel claims arise under the law of four states but they are foreclosed by one rule.  A defendant has no duty to protect a plaintiff against harm from third party criminal conduct absent a special relationship. A federal court sitting in diversity is bound to apply that existing state law not to extend it.  That requires dismissal of plaintiff's claims.  In addition -- |
| Judge Bade | If we were to agree with you that still would not resolve this case. There are other claims from other jurisdictions, correct? |
| Chris Michel | There are a handful, the states that are issued in this case account for 14 of the 17 plaintiffs that are on the consolidated government entity complaint, so it would resolve most but not quite all of the case. |
| Judge Bade | So, this is in an MDL which has another procedural wrinkle in that presumably after some consolidated discovery and maybe bellwether trials, these cases would be returned to the districts from which they came. And those courts would seem to be in a better position to determine the state law issues or the regional circuits in those areas.  So why should we as the Ninth |

---

[1]  This transcription was machine-generated. A video of the oral argument is available here: https://www.youtube.com/watch?v=jUsedT2hOAQ.

|  | Circuit be determining issues of state law for states that are not even within our circuit? |
|---|---|
| Chris Michel | Sure, Your Honor. A couple of responses. First, you know, these are federal court cases. They're in federal court on diversity jurisdiction. Federal courts are going to have to resolve these state law claims one way or the other. I think this court properly accepted the interlocutory appeal, as the court has in prior cases. There's the steering committee case, for example, that we cited in our petition where this court explained that MDLs, including MDLs involving state law claims, are particularly well suited to 1292B appeals, precisely because when you have cross-cutting, clean legal issues like those presented here, both the state, the tort law issues and the preemption issue that I was about to refer to earlier, and it would cleanly resolve the case, it saves the parties, both the plaintiffs and the defendants, and the courts substantial resources by having this court resolve those clean legal issues, and while the district court issued a legal ruling that we don't agree with, the district court did properly recognize that and recognized this court's role in addressing those issues. The preemption issue in particular is cross-cutting. That's a bread and butter federal law issue that this court resolves all the time, and if this court agreed with us on that issue, it would, I think, completely resolve the case, including all of the other cases in the district court, albeit not directly, but obviously the force of this court's precedent would be fully applicable to those cases as well. |
| Chief Judge Murguia | Let me ask you about the Hamilton case, which is about the marketing and distribution of guns. So here plaintiffs are alleging a duty for defendants to reasonably design and manufacture their products. So, I'm just trying to figure out how does based on this, how does Hamilton help your case? |
| Chris Michel | Sure. Hamilton and the series of other New York court of appeals cases like Polka and Demico all stand for the core familiar rule that a defendant has no duty to protect a plaintiff from 3rd party criminal conduct. In that case it was 3rd party conduct by people using guns. In this case it's the 3rd party criminal conduct by these thieves following the online video. So that's Hamilton is I think a helpful case for us by no means the only case. After all this is the rule in the restatement sections 314 and 315. Polka, a case from the New York court of appeals in the 1970s was a case about cars, a case about theft of cars from a dealership and I think that's even more squarely and directly on point here. |
| Judge Bade | Does it matter if the claim is that the manufacturers were negligent in the design of the anti-theft devices rather than in the design of the automobile? |
| Chris Michel | It doesn't matter, ultimately, Your Honor, because the principle is that there's no duty to protect against third party criminal conduct. The question, of course, is duty to whom? And I think this, respectfully, is a particularly straightforward case for the application of that rule, because plaintiffs are not |

2

| | |
|---|---|
| | the consumers or users of the car. They are the cities, the municipalities, who are much further down the stream of commerce. And ultimately, they're invoking something like a duty to the world. They are the government on behalf of the people. And the courts, including the New York Court of Appeals, as I was discussing with Chief Judge Murguia, have been very clear that there is no duty to the world. You can cite Proster. You can cite Holmes. You can cite the restatement. This is the bread and butter established rule in all of these states. Counseling. |
| Judge Sung | What exactly in Hamilton are you relying for that categorical rule? The way I read the case, it is very case specific sort of analysis going through multiple factors and although it says that there shouldn't be liability in that case, they say such broad liability should not be imposed without a more tangible showing that defendants were a direct link in the causal chain that resulted in plaintiff's injuries and so on and it seems to me that there's at least a fair argument here that this is that type of case. |
| Chris Michel | I don't think so, Judge Sung. Of course, the Court of Appeals in Hamilton was responding to the arguments that were presented in that case, but I think what you've discussed follows from the court's invocation of the well-accepted, deeply rooted, no-duty rule, although I'm perfectly happy, as I discussed with Chief Judge Murguia, to rely on cases other than Hamilton from the New York Court of Appeals. I think the Polka case, which is an older and earlier case involving the vehicle context, is particularly helpful. And I'd also refer the court to the Epstein Motors case that we cite, Epstein versus Mediterranean Motors case that we cite. In our brief, that's a case where the plaintiff was the victim of reckless driving by a car thief who stole a car from a dealership, brought a negligence claim, and the appellate division applying New York's law, including the Polka case, said there's no duty from the dealer to the victim of that crime because of the intervening third-party criminal conduct. And if anything, I think this is a clearer case because both ends of the spectrum are more removed. We as vehicle distributors are much further removed than the dealership that left the car unlocked in Mediterranean Motors. And at the other end of the spectrum, the plaintiffs' municipalities are much further removed than the actual victim of the crime in the Mediterranean Motors case. So again, we submit this is a straightforward case under state law. The plaintiffs, I think, are ultimately asking you to extend state law, and that's a claim they can make to the state legislatures or to other states' entities, but it's simply not a claim that a federal court sitting in diversity can accept. |
| Judge Bade | So, your argument depends on the absence of a special relationship between the manufacturers and the plaintiffs and the municipalities. So, the municipalities are not the end purchasers of the vehicles. But what if the claim, I'm trying to think of a hypothetical to put some handles on this as I consider it, but what if the claim were that the vehicles were unduly heavy, or that the way the tires were mounted on them caused damage to the roads? |

3

|  | And so then the municipalities incur damages because they have to resurface and repair roads. They're still not the purchasers. Do they have a special relationship with the manufacturers at that point? Is there a duty then? |
|---|---|
| Chris Michel | I think my answer would probably be not, but I do think that that hypothetical points up that this is a much more straightforward case, because here you have intervening third-party criminal conduct, the very type of conduct that these courts and the Restatement and Proster and Holmes have all said. Don't give rise to a duty under the relevant state tort laws. I think probably there would still not be a special relationship between vehicle distributors on the one hand and, you know, owners of roads on the other hand, but I don't think that you have to agree with that to resolve this case. The special relationship point, I think, is an important one that you raised, Judge Bade, though, because that is sort of a common law safety valve, an outlet for cases when this rule shouldn't be applied. But if there's one thing we all agree on in this case, it's that they are not, the plaintiffs are not invoking a special relationship. Judge Selna recognizes that on page eight of his opinion, and so although that may resolve some other difficult hypotheticals, this case remains straightforward, and that's for good reason. You know, as Hamilton and many other sources have said, the ultimate upshot of the theory plaintiffs are invoking here would be limitless liability. Really any product that could be used foreseeably in crime, credit cards, cell phones, the list goes on. I think that's why you have amicus briefs from the Chamber of Commerce and a number of other organizations explaining that this rule would have, accepting plaintiffs' theory here would really have widespread negative consequences. I'd also submit, recognize that this is a neutral rule. Plaintiffs themselves, in some of the cases, the Lauer case from the New York Court of Appeals, the Jonathan A. Court in the New York Court of Appeals, sorry, not plaintiffs, municipalities have invoked this rule, so this is not a one directional rule that helps one side or the other. It's a well settled common rule that exists for very good reasons. And I do think plaintiffs as municipalities are probably the least apt to ask for an exception to that rule. After all, municipalities have all manner of other tools available to them to address vehicle thefts, which we acknowledge are a problem and that we have addressed. But expanding state tort law is simply not the answer to that. |
| Judge Bade | Would the purchasers of the vehicles have a claim? |
| Chris Michel | So, there's a suit by the purchasers of the vehicles. Judge Selma discusses this in his order. We settled that case with our customers. Ultimately, our position was that we had valid defenses, but we reached a compromise where they received a significant amount of relief, both in terms of anti-theft countermeasures and monetary relief. So I do think that further underscores why there's no practical need for the municipalities case here, the customers from Hyundai and Kia have received substantial relief. I mean, I think ultimately, if the court were to accept the rule that a municipality can receive |

4

|  | reimbursement for police services and other government services, it would really upend a very basic premise of American government as we understand it, which is that municipalities fund, through taxes and other mechanisms, services like police and emergency response. And again, the states could set up different regimes, but that's a decision for the states, not for federal courts. And the states, in this case, simply have not set up those regimes. |
|---|---|
| Judge Bade | So can I ask you to turn to the preemption argument? If the complaint alleges that the manufacturer's design was negligent because it doesn't provide equivalent technology to an immobilizer or industry standard or a particular level of anti-theft protection, does that defeat your preemption claim? |
| Chris Michel | I think it's conceivable that a claim that relied on multiple different technologies would not be preempted, but this is not that claim.  I would submit, Judge Bade, if you read, for example, just the first three pages of the complaint, almost every single paragraph in that introduction. |
| Judge Bade | But I agree with you. I read through it and I highlighted it and it's stark.  I mean, there's dozens and dozens and dozens of references to immobilizers, and there are three references that I could find elsewhere in the complaint to equivalent technology or a level of anti-theft deterrence. So what if we read the complaint liberally or broadly because motion to dismiss stage and conclude that those minimal references are sufficient to allege something other than you have to have an immobilizer? |
| Chris Michel | Right. I think that's just, respectfully, not ultimately a plausible reading of the complaint, where, of course, on a motion to dismiss and the Iqbal-Trombley standard applies.  Notably, plaintiffs have never suggested in the complaint or in the many years of litigation that have followed what even one other equivalent anti-theft technology would be. Perhaps they have another answer this morning. But that is, I think, the classic example of artful pleading or magic words with no substance that this court has said is not sufficient to defeat an otherwise preempt. |
| Judge Sung | On the preemption issue, counsel, preemption is an affirmative defense here, correct? |
| Chris Michel | Yes. |
| Judge Sung | So what do you do with our precedent saying that because it's an affirmative defense, the defendant bears the burden of pleading and supporting its preemption argument, and it's only when the plaintiff pleads itself out of court that we would find preemption on a motion to dismiss? |
| Chris Michel | Sure, Your Honor. They have pleaded themselves out of court, we're not quarreling with that general standard.  They've pleaded themselves out of court for two simple reasons. One, as I was just discussing with Judge Bade, |

5

| | |
|---|---|
| | they have brought a lawsuit that relies on immobilizers. If you look at paragraph three of the complaint, for example, it defines the subject vehicles. |
| Judge Sung | So it depends on how we read the complaint? |
| Chris Michel | Of course, in every case, I think a motion to dismiss depends on how you read the complaint. But here, I think there's only one fair way to read the complaint, and that's that it's turning on immobilizers. And that's not an accident or a fluke. You know, plaintiff's theory of this case is that other car makers had immobilizers, and we didn't. So that's why they brought this lawsuit. They're allowed to have that theory. The problem is that that theory is preempted by Federal Motor Vehicle Standard 114. |
| Judge Sung | But it's not about whether they've now since then introduced, I mean, because you were arguing that they needed to introduce evidence of other technology. I mean, it seems to me that on the motion to dismiss in the pleading rule, we'd be looking at the allegations of the complaint, construing them in the light most favorable of the plaintiff. |
| Chris Michel | I agree with that. I didn't mean to suggest they have to introduce evidence, but I do think they have to plausibly allege something other than immobilizers to support the theory that they are advancing in response to our preemption defense. |
| Chief Judge Murguia | Was preemption raised in your motion for interlocutory appeal, or was it considered by the district court in the certification order? |
| Chris Michel | It was absolutely raised in the motion to dismiss and considered in that order, which is the order on appeal in this court. We did not mention preemption in our petition for interlocutory appeal because the district court had, we think, absolutely rightly certified on the no-duty rule, but it's absolutely before the court because it was in the order that's before the court on appeal. |
| Judge Bade | So, procedurally, if we decided that, at this stage, the complaint says enough to defeat your preemption defense, and you could still raise this, right? I mean, this could be a summary judgment motion if they do not come forward with some other form of technology that is the basis for their claims. Why is that problematic? |
| Chris Michel | Well, I mean, we could and would raise it then, but we think that it is adequately before the court now and on a straightforward fair reading of the complaint. It is preempted. That's, I think, a purpose of the 1292B appeal is to resolve that clean legal issue earlier in the case and save the parties in the lower court a lot of litigation that's unnecessary if these claims are ultimately preempted. |

6

| Chief Judge Murguia | And just your view on foreseeability that it always hinges on the third party, is that correct? |
|---|---|
| Chris Michel | I would put it a little differently. Our position is that there's no duty when there is no duty to protect against the harm of third-party conduct. I do think foreseeability is a separate question. And the New York Court of Appeals, for example, has made very clear that foreseeability and duty are separate issues. So the district court here relied on foreseeability and then said, we think properly in his certification order. Actually, this question is not so clear because of the duty issue that's separate. |
| Chief Judge Murguia | And if it's not so clear, our assuming argument is not so clear as you think it is in New York, would certification be appropriate? |
| Chris Michel | So we don't think certification is appropriate because, as you say, it's so clear. I'll add one. |
| Chief Judge Murguia | You're saying it's really clear. |
| Chris Michel | I am saying it's really clear. |
| Chief Judge Murguia | I'm just saying, if somebody disagrees with you on that clarity, is certification appropriate? |
| Chris Michel | Certification is an option for the court to three of the state supreme courts. The Missouri Supreme Court has decided it wants to accept certification from state court of appeals, from federal courts of appeals. So I can't help you with that. But the other three, it is an option. I think it's notable that in those three states, there are both older decisions, like the Polka decision from the 1970s in New York, the Hill decision in the 1980s from Ohio, and more recent decisions, like the He decision from the New York Appellate Division and the Lombardo decision from the Ohio Court of Appeals. So both old and new, those state courts have made clear that the answer is clear. It's not that I think that. It's that they have said that. So I don't think that the standard for certification would be satisfied. But of course, if the court thought that it would be better to do that, then that's an option before the court, except for Missouri. And if I preserve the routes of my time, thank you your Honor. |
| Ben Gould | Chief Judge Murguia, may it please the court? My name's Ben Gould, representing the Apellis here, and with me is lead counsel for the government entities, Gretchen Freeman Capio. Let me start out with the 1292B point, because while this merits panel can defer to the motions panel, it doesn't have to. And I want to point out that since this appeal began, this MDL has only started to involve more states. So there's, so besides the four states here, although Missouri, respectfully, probably isn't before you, Indiana, Kentucky, Wisconsin, Washington, Tennessee, New Mexico, and |

7

|  | Mississippi. So I think that the considerations mentioned by Judge Bade counsel probably against deciding this appeal on the merits. But to get to those merits, I think, you know, under defendant's argument, a carmaker has no duty at all to exercise reasonable care in equipping its vehicles with an anti-theft measure, no matter how simple the anti-theft measure, how glaring the risk of theft, or how serious the ensuing crime wave. But that's not the law in the three jurisdictions here. Under those laws, it's the defendants owe the municipalities a duty of care. In Ohio, that follows straightforwardly from Beretta. Beretta is right on point. I don't see how defendants distinguish it. And I think this becomes an easy case. In Wisconsin, that conclusion follows pretty straightforwardly from the fact that the whole concept of an absence of duty of care is pretty much alien to Wisconsin tort law. Under Wisconsin tort law, you owe a duty of reasonable care in all your activities to the whole world as long as anyone could be foreseeably injured by your conduct. And in New York, the result here is controlled just by the normal considerations of duty. Because we agree, Hamilton, and I don't think any New York state court decision that I've found, sets a categorical rule that the involvement of a third-party criminal bars a tort duty. |
|---|---|
| Chief Judge Murguia | What about, your friend across the aisle keeps referring to Polka in the Polka case. Tell me why we shouldn't. |
| Ben Gould | So in Polka, the garage was charged with a lack of duty because drivers would leave it and negligently, I guess, run into pedestrians. I think the big, big difference between this case and Polka is that the conduct here is active and directed toward the public. And that distinction isn't my distinction. It's a distinction that you can find in Beretta because there, if you look at the discussion at 1144 of that decision, the court actually characterizes the negligence there as an omission. They manufactured, marketed, advertised, promoted, et cetera, et cetera, their firearms without ensuring that the firearms were safe for their intended and foreseeable use by customers. That's an omission. The key point in Beretta, though, is that it's not the act of negligence that determines whether you look to this third-party rule. What matters is whether this act of negligence, whether it should be characterized as an omission or a commission, took part in a larger active course of conduct. The issue, says the Ohio Supreme Court, is whether the appellees are themselves negligent by manufacturing, marketing, and distributing. And actually, that is also the distinction that you can find in the second restatement of torts, to which my friend alluded. They rely on section 315 of the second restatement of torts. But I would actually direct your attention to section 302B of the second restatement of torts. That states an act or omission may be negligent if the actor should realize that it involves an unreasonable risk of harm to another through the conduct of a third person which is intended to cause harm, even though such conduct is criminal. And so, when is section 315 applicable? And when is section 302B applicable? Because the 315 does, I agree, say that you have no duty to control a third party. Well, the difference, and the clearest commentary on this, I think, can |

8

| | |
|---|---|
| | actually be found in the third restatement of torts, where it's discussing the second restatement. So I'd refer you to the third restatement on physical and emotional harm, section 37. There in the comments, it says that the proper question is not whether an actor's failure to exercise reasonable care entails the commission or omission of a specific act. It's whether the actor's entire conduct created a risk of harm. And it uses the example of, for example, a failure to warn about a latent danger in one's product. That, it says, isn't governed by this third-party rule. Why? Well, because selling a product is active, an activity, and it created a risk of harm. So I think that's the reason that this third-party rule doesn't apply.  And it's also the reason we cited product liability cases. We cited product liability cases, not because this is a product liability case, I agree, we're not the end user or consumer. We cited product liability cases because they're the great example of sort of the dog that didn't bark. If you -- |
| Chief Judge Murguia | In your view, when does the third-party rule apply? |
| Ben Gould | The third-party rule applies when the duty sought to be imposed would require the defendant to embark on a new course of conduct. In other words, to begin a new course of conduct rather than exercise due care in an activity that they were already engaged in. Now, that is the distinction in Beretta. It is a distinction that there are probably peripheral cases that are more difficult to figure out whether one or the other applies, but I think this is a core case. And it's a core case because again, you can't find a product liability case, or at the very least it's been difficult for me to, that applies a third-party cutoff rule to an activity like manufacturing and distributing a product. And yes, again, we're not the end user, but the whole point is they're saying there's a categorical cutoff here. And the product liability cases show that there can't be. We can talk about whether the municipalities should be allowed to sue here, whether we are owed a duty. But that question is controlled by the normal inquiry you'd make in any case about whether there's an existence of a duty, not this categorical rule. So to get then to preemption, unless there are other questions about the state law claims, I think that, I mean. |
| Judge Bade | I'd like to ask you one question. |
| Ben Gould | Yes of course. |
| Judge Bade | So how do you distinguish Becker versus Cardinal Health. |
| Ben Gould | Right, so I think that that's a perfect example of a case where you've got a, the duty alleged is a duty on the part of this healthcare company to reach out and monitor the pharmacies to make sure that they're not giving their opioids out to addicts. It's not a duty of reasonable care in the, in say, the |

9

|  | manufacturer of opioids. It's a duty that extends beyond when you lose possession of the product. |
|---|---|
| Judge Bade | But they owed no duty to the plaintiffs, right? The plaintiffs were alleging that their premiums, their health insurance premiums increased because of the opioid epidemic. And the court said there's no duty between the opioid manufacturers and these people in the community. It seemed, to me, it seemed analogous to the municipalities and whether there's a duty from the car manufacturers. I mean, if you look at the court, |
| Ben Gould | Here's the thing, if there's, defendants have raised this argument, but to be honest, I think it's a play on words, because while it's true that my clients represent the public, they are not actually the general public. They are engaged in certain specific activities, the provision of public services, and when you distribute probably what is the most public of all consumer products that has to be driven on public roads, parked in public places, then you direct your conduct at my clients, and at their core services, and in fact, oh, sorry. |
| Judge Bade | Are there any limits? I mean, a car manufacturer, do they have a duty to everyone because this car is going to be out and be in public and be on the roads? |
| Ben Gould | No. And one reason for that is what's called the, often called the municipal cost recovery rule. It's actually discussed in Beretta, and that holds that municipalities can't recover for one-off emergencies, for a baseline level of crime, for a one-time incident. Rather, the problem in question has to be ongoing and persistent. It has to rise, you know, well above the baseline. That's one of the signal features of this case, and that's one of the reasons that my clients have brought suit. They wouldn't bring suit if this were an isolated problem. So I think that helps put, that helps cabin this case, the municipal cost recovery rule, because, you know, I think that principle shows that otherwise tort feasers might routinely owe duties to municipalities. You wouldn't need this municipal cost recovery rule, in other words, if duty weren't part of the picture. You only need that municipal cost recovery rule because municipalities are within the foreseeable line of harm here. |
| Judge Bade | So going back to my hypothetical to your friend, the cars are heavy as these electric vehicles are heavy with their batteries and they're damaging the roads. It's foreseeable. I mean, does the manufacturer have a duty then to the municipalities? |
| Ben Gould | I think they could conceivably have a duty to the municipalities if, and only if, this was a defect that was caused by a lack of reasonable care, and that was causing an ongoing widespread persistent level of harm to the public roads. If this were merely a pothole here and there, if it were something like |

10

|  | that, then no. You wouldn't have a duty. And another point I want to make, because this is a line of cases on which defendants rely, is the inapplicability of those cases that refuse to put a duty of care on individual car owners or possessors who leave their keys in the ignition. And the reason I think that those are inapplicable is, first of all, if you actually look at those cases, again, there's no categorical third-party rule that's being applied there. That's true in all the cases they cite. The second reason is that there's a big difference in foreseeability between one key in the ignition left one time by one person and a vehicle that, in practical terms, we have nine million of them, and as far as thieves are concerned, the defendants might as well have left nine million keys in nine million ignitions. There, I think, you have a completely different issue. And actually, that shows sort of the dangerous consequences, I think, of the defendant's argument here, is that in such a case, if a car manufacturer designed and distributed keys where the ignition, the keys were permanently in the ignition, you wouldn't have liability because you wouldn't have a duty of care. And what that shows, I think, is that foreseeability here, when it comes to municipalities, has to be viewed as it were in the aggregate. In other words, the reason we're bringing these cases is because in the aggregate, if you do not exercise reasonable care in designing, manufacturing, and distributing anti-theft equipment in a vehicle, in the aggregate, theft is not merely foreseeable, it's inevitable. |
|---|---|
| Judge Bade | So the way you phrase that, negligence in the design of an anti-theft equipment or measure, I didn't see that in your complaint or in the motions to the district court. It seemed like a new spin on the argument that was in the appellate briefs. |
| Ben Gould | Well, I mean, I think that's it's always been our argument that the failure to exercise reasonable care was a failure to exercise it with respect to the anti-theft equipment, it wouldn't be anything else. |
| Judge Bade | And specifically to the failure to have an immobilizer. |
| Ben Gould | Well, so let's talk about that, because I assume that that's being raised in a preemption context. So first of all, let's step back. I agree with the proposition that preemption is an affirmative defense. And they haven't shown it's their burden to show that nothing other than an immobilizer would provide the level of protection necessary. But let's just suppose for the moment that we really did bring an immobilizer-only theory. That, I don't think, would be preempted under Williamson. And in fact, in some ways, this is an easier case than Williamson. And the reason for that is that in Williamson, the federal safety duty prescribed two different ways you could apply, two different designs. And the Supreme Court said, that is not a common law theory that would require you to select one of those designs, isn't preempted, because the existence of that choice between the two designs wasn't a goal in itself of the regulation, the way it was in Geyer, for example. The same thing goes here, except it's an even stronger case, it |

11

|  | seems to me, because here the regulation doesn't actually prescribe a particular design. It prescribes a minimum level of safety, to be sure. But it doesn't say, you may, we affirmatively license you to use x, y, and z designs. It seems to me, in that case, it's a far easier thing to see that the choice wasn't in itself a significant objective of the regulation. |
|---|---|
| Judge Bade | So, the regulation, it seemed that it was to allow flexibility and to encourage innovation, which seem to be very closely related goals, so that there was no specification of the particular equipment that has to be, they're just the effect, right. So -- |
| Ben Gould | Oh, I'm sorry. Go ahead. |
| Judge Bade | So, how- that seems closer to Greer than to Williamson. |
| Ben Gould | I don't think so because what the administrative record actually shows is not, it doesn't say flexibility in and of itself. What it says is we're not going to prescribe any particular design in order to foster innovation, which is something very different. And by the way, if you look at Williamson, one of the goals of that statute of the regulation there was to foster innovation in any event. |
| Chief Judge Murguia | Well, let me ask you, so if the law of any of these states were unclear as to duty, would it be appropriate to certify? I'd like to get your thoughts on certification. |
| Ben Gould | So I mean, in my client's view, I think certification would be an unnecessary delay. I would also say that in Wisconsin, the answer is very clear in part because -- |
| Chief Judge Murguia | I'm more focused on New York. |
| Ben Gould | Oh, sure. So yes, that is the only, I think, jurisdiction where there is an arguable case for certification. This court obviously has the discretion to do so, but in deciding whether to exercise that discretion, I would simply counsel the court to consider the further delays that certification would cause and the need to -- |
| Chief Judge Murguia | So what case do you point to that gives us the clarity that we need to have to predict what the New York courts would do? |
| Ben Gould | Again, I think this is a case of the dog that didn't bark. It's that clarity. It's the lack of a case involving the product where the Court of Appeals applies this third-party no control rule as a categorical limitation upon duty. There's no such case. I think that in itself gives you the answer you need. |

| | |
|---|---|
| Chief Judge Murguia | How about Ohio? There's been some developments in Ohio regarding the public and nuisance. Is there anything that you would want to argue with respect to that? |
| Ben Gould | So the public nuisance claim actually is the subject of a motion on the Ohio public nuisance claim is the subject of a motion for judgment on the pleadings the defendants filed yesterday in the district court. And we agree that under the Ohio Supreme Court's recent decision, the municipalities do not have a common law public nuisance claim under the law of Ohio. So that claim is going to be handled by the district court shortly. So I don't think that's a case where the court needs to step in. |
| Judge Bade | So the district court didn't stay the litigation during this appeal. So what's going on? And why would certification create some additional layer of delay if the litigation is proceeding in any event? |
| Ben Gould | Well, I mean, you're right. I suppose delay is probably not the right question, quite the right term. What I would say is that certification would create a delay in answering the question that the district court posed here. And I'm simply saying that that is a consideration I would ask the court to take into account in deciding whether to certify this case to the New York Court of Appeals. And that is my argument. Thank you very much. |
| Judge Bade | Thank you, Mr. Gould. |
| Chris Michel | Thank you, Your Honor. A few points in rebuttal. First, just to begin with the scope of the appeal. Judge Selma was right. The motions panel was right to certify and accept certification because the statutory criteria in 1292B are plainly satisfied. Resolving these questions of law would materially advance the termination of the litigation, so we'd urge the court to decide them. On the state law claims, I'll start with New York. My friend, I don't think, had any real distinction for the Polka case in that he said at one point that the duty here was directed to the public, but the public parking garage in Polka was equally providing services to the public. And if anything, it's even more foreseeable that a parking garage would have customers who drive over the sidewalk and hurt parties and hurt pedestrians than in this case, where the harm is resulting from this online viral video craze that happened 10 years after these cars were manufactured. He said several times, my friend, that there's no case under New York law that involves application of the no duty rule to a product. That is not correct. The He versus Apple case from the New York appellate division that we cite applies it to Apple on its production of cell phones. The Johnson and Johnson case that we cite from the Southern District of New York applying New York Court of Appeals law applies it to the product of medication. And in particular says there's no duty to have greater anti-tampering restrictions on medicine bottles because of the |

13

|  | no duty rule. So I do think New York law is clear. If not, I think certification in New York would be appropriate, Your Honor. |
|---|---|
| Chief Judge Murguia | Thank you, thank you both for your oral argument presentations here today, very helpful. The case of City of Buffalo versus Hyundai Motor America Inc. and Kia America Inc. is now submitted, and we are adjourned. Thank you very much. |
| Courtroom Deputy | All rise. This court for this session stands adjourned. |

14