ELLIOTT R. FELDMAN
MEGAN PEITZKE (SBN 230375)
JULIE A. LINE
**COZEN O'CONNOR**
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, Pennsylvania 19103
Telephone: (215) 665-2071
Facsimile: (215) 701-2282
*EFeldman@cozen.com*

TIMOTHY E. CARY (SBN 093608)
DANIEL HOGAN
THOMAS PAOLINI
W. DIANE WAYLAND (SBN197802)
**LAW OFFICES OF ROBERT A. STUTMAN, P.C.**
391 N. Main Street, Suite 108
Corona, California 92879
Telephone: (951) 387-4700
Facsimile: (951) 963-1298
*CaryT@Stutmanlaw.com*

WILLIAM J. HOFFMANN
ADAM M. ROMNEY (SBN 261974)
SUSAN M. BENSON (SBN 146837)
**GROTEFELD HOFFMANN LLP**
15303 Ventura Blvd., Bldg. C, Ste. 1505
Sherman Oaks, CA 91403
Telephone: (747) 233-7150
Facsimile: (747) 233-7143
*bhoffmann@ghlaw-llp.com*

CHRISTINE FORSLINE (SBN 333451)
STEPHANIE NG (SBN 309389)
**BERGER KAHN, A Law Corporation**
25910 Acero, Suite 242
Mission Viejo, CA 92691
Telephone: (949) 474-1880
Facsimile: (949) 313-5029
*cforsline@bergerkahn.com*

*Attorneys for Subrogation Insurance Plaintiffs*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION | Case No.: 8:22-ML-03052-JVS-(KESx) |
| | The Honorable James V. Selna |
| | **SUBROGATION PLAINTIFFS' RULE 702 MOTION TO EXCLUDE EXPERT TESTIMONY OF ALLEN ADAMSON** |
| This document relates to: | [Declaration of W. Diane Wayland and Proposed Order filed simultaneously herewith] |
| ALL SUBROGATION CASES | ████████████████████████ |
| | ██████████ |
| | **Date: April 20, 2026** |
| | **Time: 1:30 p.m.** |
| | **Location: Courtroom 10C** |

1

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES……………………………………………………. 3

MEMORANDUM AND POINTS OF AUTHORITIES…………………………... 4

I. INTRODUCTION………………………………………………………. 4

II. ADAMSON'S BACKGROUND AND PROFERRED OPINIONS…………… 5

III. LEGAL STANDARD………………………………………………….… 8

IV. ARGUMENT…………………………………………………………….. 9

A. Adamson's Opinions Are Irrelevant………………………………….. 9

B. Adamson's Opinions Lack an Adequate Factual Foundation………..……. 11

C. Adamson's Opinions Are Not Products of Reliable Methodologies………..14

D. Adamson is not qualified to opine regarding the research and/or

Conclusions of Dr. Vigilante and/or Dr. Stern………………………………15

V. CONCLUSION…………………………………………………………..17

CERTIFICATE OF SERVICE……………………………………………………18

CERTIFICATE OF COMPLIANCE…………………………………………...19

# TABLE OF AUTHORITIES

## Cases

*Daubert v. Merrell Dow Pharmaceuticals*,
590 U.S. 579 (1993)……………………………………………..8, 9, 13, 17

*Gen. Elec. Co. v. Joiner*,
522 U.S. 136 (1997)……………………………………………...12, 14

*Guidroz-Brault v. Missouri Pac. R. Co.*,
254 F. 3d 825 (9th Cir. 2001)…….…………………………….…12, 13

*Kumho Tire Co., Ltd. v. Carmichael*,
526 U.S. 137 (1999)…………………………………………………...9

*Magallon v. Robert Half Int'l, Inc.*,
743 F. Supp. 3d 1237 (D. Or. 2024)…………………………………...10

*Novalogic, Inc. v. Activision Blizzard*,
41 F. Supp. 3d 885 (C.D. Cal. 2013)………………………………………10

*Turner v. ThyssenKrupp Materials, N.A.*,
492 F. Supp. 3d 1045 (C.D. Cal. 2020)…………………………….…14

*United States ex rel. Miller v. ManPow, LLC*,
2023 WL 9005796 (C.D. Cal. November 22, 2023)………………...…12, 13-14

*United States v. Scholl*,
166 F.3d 964 (9th Cir. 1999)……………………………………….……10

## Statutes

F.R.E. 702………………………………………………..….4, 5, 8, 13, 17

3

Subrogation Plaintiffs, by and through the undersigned counsel, hereby submit their Rule 702 Motion to Exclude Expert Testimony of Allen Adamson ("Motion"). This Motion is supported by the below Memorandum of Points and Authorities and certain exhibits attached to the Declaration of W. Diane Wayland, and cited herein.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. <u>INTRODUCTION</u>

The facts of this case are already familiar to the Court. Subrogation Plaintiffs allege Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") knowingly sold millions of cars lacking vital anti-theft components (commonly referred to in this litigation as the "Subject Vehicles"), a failure that renders these Vehicles particularly susceptible to theft. *See* Dkt. No. 283 pp. 24-29. This failure resulted in significant and ongoing property damage. *Id.* Subrogation Plaintiffs now move to preclude Defendants' proffered expert, Allen Adamson, from testifying at trial for the following reasons.  First, none of Adamson's opinions are relevant. Adamson's opinions are limited to branding and marketing, and do not address the Subject Vehicles' design, warnings or any other issues relevant in this case.  Second, Adamson's expressed opinions are not based on an adequate factual foundation.  He never communicated with anyone at HMA, or anyone in the broader automotive industry.  He also never communicated with any consumer, performed any surveys or

conducted any research.  Instead, Adamson simply made unfounded assumptions about the mindset or reasoning employed by HMA and consumers by reviewing a limited number of HMA's marketing materials.  Third, Adamson's opinions are subjective and are not the products of any reliable methodology, in violation of F.R.E. 702.  Finally, Adamson – as a self-professed marketing and branding strategist – is not qualified to interpret, critique or rebut the research or opinions of Subrogation Plaintiffs' human factors and product engineering experts.  For these reasons, Adamson should be precluded from testifying at trial.

## II. ADAMSON'S BACKGROUND AND PROFERRED OPINIONS

Adamson holds himself out as an expert in branding and marketing, fields which involve how companies communicate with prospective consumers in order to facilitate sales of their products or services. [ ███████████████████ ███████████████████ ] His whole report, and all of the opinions contained therein, aims to assess Defendant's communications through a marketing lens.  [ ███████████ ███████████ ] To this end, Adamson opined that ( ███████████

█████. ████████████████████████████████████████████████████

With respect to his opinions in this case, Adamson admittedly is <u>not</u> an expert in product engineering or design, product planning, automobile manufacturing, automobile safety standards, ignition cylinders, or failure mode engineering analysis. He is also not an expert in the development of product instructions, product warnings or human factors.  [████████████████████████████████████████████████] Finally, he is not a survey designer or statistician.  [███████████]

Moreover, although Adamson reportedly believes that research is critical in the marketing field,[1] and he sought to issue marketing-related opinions in this case, he performed virtually no research to develop or support his opinions in this case.  Prior to issuing his expert report, Adamson <u>did not</u> communicate in any way with any: ██ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ███████████████████████████████████████████████████ ████████████████████████████████. ████████████████████ █████████████████████ Adamson did not ask anyone in the ████████████ ████████████████████████████████████████████. ████ In fact,

_____

[1] ████████████████████████████

Adamson did not talk to anyone ███████████████████████████

███████████████████████████████████. ████[2] Similarly,

Adamson did not review: ████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

███████████. ███████████████████████████████████

████████████████████████████ His only "research" involved ████

████████████████████████████████████████████████

██████. ███████████████████████████████████████████

Notably, none of the documents he reviewed included any testimony or materials from

████████████████████████████████████████████████

██████████████████████. ███████████████████████

        Finally, Adamson has admitted that his opinions are not based on any written or verifiable standards, guides or codes. [████████████████████] For example, he is not aware of any standards or guidelines related to ████████████████ ████████████████████, and he cannot point to any standard, survey, research or guideline indicating how ████████████████████████████████

[2] Adamson specifically testified that he "████████████████████████ ████████████████████." [████████████████]

## III.  LEGAL STANDARD

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, and its interpretation in light of *Daubert v. Merrell Dow Pharmaceuticals*, 590 U.S. 579 (1993), and its progeny.  Federal Rule of Evidence 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if…
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702.  As set forth in *Daubert*, "[i]f scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise."  *Daubert*, 509 U.S. at 589 (emphasis added).  The *Daubert* Court made clear that Rule 702 requires trial courts to perform a critical "gatekeeping" function in order to ensure that the "expert… employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  526

8

U.S. at 152. In this vein, when a party moves to introduce opinions requiring scientific, technical, or specialized expertise, the trial court acts as a "gatekeeper" to ensure that the proffered opinion is both reliable and relevant. Only after the court is satisfied that the testimony meets both criteria can it be admitted into evidence and presented to the trier of fact. *Daubert*, 509 U.S. at 589.

The gatekeeping function requires the court to assess the reasoning and methodology underlying an expert's opinions and determine if the reasoning and methodology are both valid and applicable to a particular set of facts. *Daubert,* 509 U.S. at 592-593. "Where [expert] testimony's factual basis, data, principles, methods, or their application are called sufficiently into question the trial judge must determine whether the testimony has a 'reliable basis in knowledge and experience of [the relevant] discipline.'" *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), *quoting Daubert, supra*.

## IV. **ARGUMENT**

A. Adamson's Opinions Are Irrelevant.

At the outset, Adamson's opinions should be excluded from trial because they are irrelevant. Adamson holds himself out as a marketing strategist and branding expert, and has confirmed that his sole role in this case is to evaluate Defendants' communications from a marketing perspective. [███████████████████████ ████████████████████████████████████████ ] As explained by Adamson himself, all of his opinions are set forth in his expert report, and the

"whole report is about marketing communications and branding." [███████████████████████] In this vein, Adamson has specifically opined that ████████ ████████████████████████████████████████████████████. [█████████████████████████████████████████████████]

Importantly, Subrogation Plaintiffs' claims do not hinge on Defendants' marketing strategies or communications. The crux of Subrogation Plaintiffs' claims is instead that the Subject Vehicles were defective because they (a) did not include appropriate anti-theft protection, such as immobilizers, and (b) Defendants failed to provide customers with necessary warnings regarding the propensity for the Vehicles to be stolen. *See* Dkt. 283. Subrogation Plaintiffs' claims turn on product design and warnings issues. Adamson is admittedly not an expert in those fields and does not have any opinions falling within the scope of those fields. [██████████████████ ████████████████████████████████] Consequently Adamson's opinions are irrelevant. They cannot assist the jury in any way and should be excluded from trial. *See, United States v. Scholl,* 166 F.3d 964, 970–71 (9th Cir. 1999) (proffered expert testimony excluded as irrelevant); *Novalogic, Inc. v. Activision Blizzard*, 41 F. Supp. 3d 885, 894 (C.D. Cal. 2013) (proffered testimony should be excluded as irrelevant if the testimony will not "assist the trier of fact to understand the evidence or determine a fact in issue"); *Magallon v. Robert Half Int'l, Inc.*, 743 F. Supp. 3d 1237, 1251 (D. Or. 2024) (Although expert was generally qualified to opine on the matters contained within her report, the expert was precluded from testifying because the opinions were

not relevant to the specific issues in the case and would not aid the jury in deciding the case).

B. Adamson's Opinions Lack an Adequate Factual Foundation.

Next, Adamson's report is riddled with conclusions that are not based on an adequate factual foundation. For example, Adamson claims that ███████████ ███████████████████████, however he admittedly did not speak to ███████████████████████████ about that issue. [██████████████████████████████] He never interviewed anyone at all regarding ███████████████████. [██] Likewise, he did not review any research data from any ███████████ or anyone else. He also did not review any ███████████ ████████████████████████████ ██████████████████. [███████████████████ ████████████████████ ████████████████]

The sole basis for Adamson's conclusions about a ███████████ ████████████████████████████ ████████████████. [███████████ ████████████ He also read depositions by ███████████ ████████████████████████████



██████.[3]    ████    It should be noted that both Adamson and ████████████

admitted that they conducted no surveys or other research – or made any effort

whatsoever – to actually determine or confirm whether ████████████

████████████████████████.    [████████████████████████]

Nonetheless, based on his negligible efforts, Adamson seeks to testify at trial that

████████████████████████████████████.

This should not be permitted given Adamson's lack of investigation or meaningful

analysis.  Simply put, he should not be permitted to avoid doing the work necessary

to determine whether ████████████████████ and then testify at

trial that ██████████.  *See, Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d 825,

830 (9th Cir. 2001) (expert opinion properly excluded when not based on sufficient

facts); *United States ex rel. Miller v. ManPow, LLC*, 2023 WL 9005796, at *3 (C.D.

Cal. Nov. 22, 2023) (courts may preclude expert from testifying where there is "too

great an analytical gap" between the data or underlying facts and the proffered

opinion); *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 519, 139 L. Ed.

2d 508 (1997) (Courts are not required to admit opinion evidence connected to

existing data "only by the *ipse dixit* of the expert").

---

[3] To this end, Adamson's report, in discussing the deposition testimony of ████████
████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████.

Similarly, Adamson claims that ███████████████████████████████████ ███████████████████████████████████████████████████████ ████████████████████████████████████████. [████ ████████████████████████████████████████] He then concluded that ███████████████████████████████████████████ ████████████████████████████████████████████████ █████████████████████████████. [ ███ ] In addition to missing the point – namely that Subrogation Plaintiffs' claims do not depend on the effectiveness or ineffectiveness of Defendants' marketing brochures – Adamson also has no factual basis to support this conclusion. No one told him that █████████████ ████████████████████████████████████████████████████. [████████ ██████████████████████] He read no studies on this issue, and he reviewed no research or any type of actual consumer behavior data. He simply assumed that consumers █████████████████████████████ ██████████████████████████████████████, and he did nothing whatsoever to test, prove or disprove this assumption. [████████████████████ ████████████████████████████] Again, without belaboring the obvious, and consistent with F.R.E. 702 and *Daubert,* Adamson should not be permitted to testify to an irrelevant opinion that is not supported by or based on any investigation, data or meaningful analysis of any type. *Guidroz-Brault v. Missouri Pac. R. Co.*, 254 F.3d at 830; *United States ex rel. Miller v. ManPow, LLC*, 2023 WL

13

9005796, at *3; *Gen. Elec. Co. v. Joiner*, 522 U.S. at 146.

C. Adamson's Opinions Are Not Products of Reliable Methodologies.

Adamson's opinions are also inadmissible because they are subjective and unreliable. "For expert testimony to be reliable, it must be 'based on sufficient facts or data' and be 'the product of reliable principles and methods.'" *Turner v. ThyssenKrupp Materials, N.A.*, 492 F. Supp. 3d 1045, 1048–49 (C.D. Cal. 2020). An expert's opinions do not satisfy the reliability requirement when they are based on subjective beliefs or unsupported speculation. *Id.* To assess the reliability of proffered expert opinions, courts are required to "analyze not what the experts say, but what basis they have for saying it." *Id.* To demonstrate reliability, "the proponent of expert testimony must explain the methodology the experts followed to reach their conclusions and point to any external source to validate that methodology." *Id.* (internal citations and quotations omitted); *see also, Gen. Elec. Co. v. Joiner,* 522 U.S. at 146.

In this case, Adamson's opinions are wholly unreliable because he did not review or analyze any data related to any relevant category of persons or entities. He did not review actual consumer behavior data, or any industry study. He did not perform any consumer research. He never communicated with █████████████████████ ████████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████. [█████████████████████████████████████████████

14

████████████████████████████████████████████ ] On one hand, he touts the importance of research to the fields of marketing and branding.  [██████████ ] On the other hand, he admittedly did no research whatsoever to support his conclusions herein.  By way of example, as discussed *supra,* Adamson opined that ████████████████████████████████████████████ ████████████████████████████████████████████." [████ ██████████████ ] However, when pressed, Adamson could point to no facts, data, principles or methods that he relied upon to develop those opinions.  [████ ████████████████████████████████████████████ ████████████████████████████ ] He has no external source whatsoever to validate his conclusions.  [██ ]   Adamson's opinions are based on nothing more than subjective beliefs and speculation, and consequently, his opinions should be excluded from trial as unreliable.

   D. <u>Adamson is not qualified to opine regarding the research and/or conclusions of Dr. Vigilante and/or Dr. Stern.</u>

   Finally, Adamson has opined that research completed in this case by Dr. Vigilante, a human factors expert, and Dr. Stern, a product engineering / design expert, is deficient <u>from a marketing perspective</u>.  [████████████████████████ ████████████████ ] Adamson essentially argues that the survey questions utilized in the course of a study completed by Dr. Vigilante and Dr. Stern were not organized or phrased such that they would elicit meaningful marketing data for use by marketers

15

or advertisers seeking to sell products.  [███████████████████████] He claims that the problems with the subject research and survey are matters of "common sense," and the survey questions would not withstand the type of "pressure testing" he would typically employ when assessing the effectiveness of a proposed marketing survey. [██]

First, neither Dr. Vigilante nor Dr. Stern are marketers or branding experts.  They did not perform any research, studies or surveys in this case with the goal of marketing or selling a product.  For his part, Adamson admitted he did not know the purpose of their work while critiquing it in his report.  [███████████████████] Although he seeks to opine that the study and survey are insufficient for marketing purposes, Adamson acknowledged that he (a) is not a human factors expert, like Dr. Vigilante; (b) is not a product designer or engineer, like Dr. Stern; and (c) is not a statistician capable of interpreting the statistical significance of their work. [██] Tellingly, Adamson himself concluded that "██████████████████████████████████████████████████████████████." [██████████████████████] It follows that Adamson, a purported marketing expert, does not possess the expertise or qualifications to interpret or critique the work of a human factors expert or a product engineering expert.

Finally, Adamson has not and cannot point to any standard, guideline or methodology that he relied upon in critiquing the work of Dr. Vigilante and Dr. Stern. He cannot identify any standard for "pressure testing" a survey, and he has insisted

that problems with the Vigilante/Stern survey are matters of simple "common sense." [█████████████████████████████]This subjective, unverifiable opinion is thus not reliable and is inadmissible under Rule 702.  *See* F.R.E. 702; *Daubert*, 509 U.S. at 589.

## V.  CONCLUSION

For the reasons set forth herein, Subrogation Plaintiffs respectfully request that Allen Adamson be precluded from offering expert opinion testimony at trial.


DATED: March 13, 2026          COZEN O'CONNOR

                               By: */s/ Megan Peitzke*
                                   Elliott R. Feldman
                                   Megan R. Peitzke
                                   Julie A. Line

DATED: March 13, 2026          GROTEFELD HOFFMANN LLP

                               By: */s/ William J. Hoffmann*
                                   William J. Hoffmann
                                   Adam Romney
                                   Susan Benson

DATED: March 13, 2026          LAW OFFICES OF ROBERT A. STUTMAN, P.C.

                               By: */s/ Daniel Hogan*
                                   Daniel Hogan
                                   Timothy E. Cary
                                   Thomas Paolini
                                   W. Diane Wayland

DATED: March 13, 2026          BERGER KAHN, A Law Corporation

By: /s/ *Stephanie Ng*
      Christine Forsline
      Stephanie Ng

*Attorneys for Subrogation Insurance Plaintiffs*

**CERTIFICATE OF SERVICE**

I certify that on March 13, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ *Stephanie Ng*
Stephanie Ng

## CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Subrogation Plaintiffs certifies that this brief contains 3,316 words, which complies with the word limit of L.R. 11-6.1.

DATED: March 13, 2026    COZEN O'CONNOR

            By: */s/ Megan Peitzke*
             Elliott R. Feldman
             Megan R. Peitzke
             Julie A. Line

DATED: March 13, 2026    GROTEFELD HOFFMANN LLP

            By: */s/ William J. Hoffmann*
             William J. Hoffmann
             Adam Romney
             Susan Benson

DATED: March 13, 2026    LAW OFFICES OF ROBERT A. STUTMAN, P.C.

            By: */s/ Daniel Hogan*
             Daniel Hogan
             Timothy E. Cary
             Thomas Paolini
             W. Diane Wayland

DATED: March 13, 2026    BERGER KAHN, A Law Corporation

            By: */s/ Stephanie Ng*
             Christine Forsline
             Stephanie Ng

            *Attorneys for Subrogation Insurance Plaintiffs*