UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | March 26, 2026 |
| Title | In re: Kia Hyundai Vehicle Theft Litigation | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| | |
|---|---|
| Elsa Vargas | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding Certain Daubert Motions [1380–84, 1387, 1390, 1418, 1459–62, 1473–74, 1476–77] (PUBLIC)**

Defendants Hyundai Motor America ("HMA") and Kia America, Inc. ("KA") (collectively, "Kia" or "Defendants") and Governmental Entity ("GE") Plaintiff City of Madison ("Madison") ("City" or "Plaintiff") move the Court for relief by way of Daubert Motions. (Defendants' Daubert Motions ("Def.'s Mots."), Dkt. Nos. 1384, 1387, 1390, 1418 (under seal); Plaintiff's Daubert Motions, Dkt. Nos. 1380–83 (under seal).) Both parties filed oppositions to each other's motions. (Defendants' Opp'ns, Dkt. Nos. 1511–14; Plaintiff's Opp'ns, Dkt. Nos. 1504, 1506–08, 1465.) Each party replied. (Defendants' Replies, Dkt. Nos. 1510, 1594, 1596–97, 1600; Plaintiff's Replies, Dkt. Nos. 1588–91.)

For the below reasons, the Court issues the following rulings:

- **DENIES** Kia's Motion to Exclude the Testimony of Bloch (Dkt. No. 1387, 1476)
- **DENIES-in-part** Kia's Motion to Exclude the Testimony of Nranian (Dkt. No. 1390, 1477)
- **DENIES** Kia's Motion to Exclude the Testimony of Mourtgos & Alpert (Dkt. No. 1384, 1474)
- **GRANTS** Kia's Motion to Exclude the Testimony of Grodsky (Dkt. No. 1418, 1473)
- **DENIES** the City's Motion to Exclude the Testimony of Bonanti (Dkt. No. 1380, 1459)
- **DENIES** the City's Motion to Exclude the Testimony of Stanley (Dkt. No. 1381, 1461)

- **DENIES** the City's Motion to Exclude the Testimony of Yang (Dkt. No. 1382, 1462)
- **DENIES** the City's Motion to Exclude the Testimony of North (Dkt. No. 1383, 1460)

## I. Kia's Daubert Motions

### *A. Motion to Exclude Testimony of Bloch [1387]*

Defendants seek an order to exclude the testimony of Byron Bloch ("Bloch") for failure to meet the standards of Federal Rules of Evidence 702 ("Rule 702") and Daubert. (Defendants' Mot. to Exc. Bloch, ("Bloch Mot."), Dkt. No. 1387). The City opposed. (Opp'n ("Bloch Opp'n"), Dkt. No. 1504.) Defendants replied. (Reply ("Bloch Reply"), Dkt. No. 1597.)

Bloch's report summarizes the history of vehicle theft prevention, Kia's use and non-use of anti-theft devices, and Kia's remedial measures. (See Expert Report of Byron Bloch ("Bloch Rep."), Dkt. No. 1378-3, generally.)

#### 1. Legal Standard

Rule 702 allows expert testimony where "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). A party who plans to rely on expert testimony must disclose it and comply with the requirements of Rule 26(a)(2), including providing a written expert report. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592–93, 597 (1993), the Supreme Court explained that, in applying Rule 702, "the trial judge plays a 'gatekeeping role,' which 'entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Summit 6, LLC v. Samsung Elecs. Co., 802 F.3d 1283, 1295 (Fed. Cir. 2015). "The Court emphasized that the focus 'must be solely on principles and methodology, not on the conclusions that they generate.'" Id. (quoting Daubert, 509 U.S. at 595). "This admissibility assessment, while a flexible one, may consider the following factors: (1) whether the methodology is scientific knowledge that will assist the trier of fact; (2) whether the methodology has been tested; (3) whether the methodology has been

published in peer-reviewed journals; (4) whether there is a known, potential rate of error; and (5) whether the methodology is generally accepted." Id.; see also Fed. R. Evid. 702, 703. The sponsor of an expert bears the burden to show the it is "more likely than not" that the witness meets the required standard. Fed. R. Evid. 702.

"Under these rules, a district court may exclude evidence that is based upon unreliable principles or methods, legally insufficient facts and data, or where the reasoning or methodology is not sufficiently tied to the facts of the case." Summit 6, 802 F.3d at 1295. Rule 702 gives courts broad discretion to discharge their gatekeeping role. Hangarter v. Provident Life & Acc. Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004). "But the question of whether the expert is credible or the opinion is correct is generally a question for the fact finder, not the court." Summit 6, 802 F.3d at 1296. Indeed, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Daubert, 509 U.S. at 596.

This same legal framework applies to each of the motions discussed below, and need not be repeated.

2. Analysis

*i. Expertise*

Kia argues that Bloch is unqualified to opine on anti-theft technology because his background is in crashworthiness, not anti-theft design. (Bloch Mot. at 4–5.) They also argue that his background renders him ill-suited to opine on the feasibility of a vehicle recall campaign. (See id. at 24.) The Court finds that this framing shortchanges Bloch's expertise. Bloch's experience in "auto safety work for over 40 years" relates to his opinion because inadequate anti-theft features lead to thefts that often subsequently result in crashes. (See Bloch Opp'n at 2–3 (citing Tr. of Bloch Dep. ("Bloch Dep."), Dkt. 1378, Ex. 30 at 9:5–6).) Kia also argues that Bloch's opinion requires engineering expertise, which Bloch lacks. (Bloch Mot. at 5.) Plaintiff responds that Bloch's expertise in "determin[ing] how and why [vehicles] were involved in collision incidents" does not require an engineering degree. (Bloch Opp'n at 3 (citing Bloch Rep. at 1).) The Court agrees with Plaintiff; Kia has not adequately shown that only engineers can be experts on this issue. Thus, Bloch has adequate "scientific, technical, or other

specialized knowledge," in the development of safety features for cars to opine on anti-theft technology, implementation, and remediation. Fed. R. Evid. 702.

*ii. Factual Bases*

Kia makes a number of arguments related to the bases for Bloch's opinions. (Bloch Mot. at 11–17.) Bloch cites his sources as vehicle manuals, technical documents about immobilizers, Kia Technical Service Bulletins ("TSBs") regarding remedial efforts, news articles, and data from the Consolidated Governmental Entities Complaint ("CGEC"). (See Second Corrected Ex. 9, Dkt. No. 1378-5; Bloch Opp'n at 6.) Yet Kia claims that Bloch lacks sufficient factual foundation because he never inspected a vehicle. (Bloch Mot. at 12–14.) For this reason, they challenge Bloch's opinions on cylinder protectors and remedial measures including the software upgrade, as well as his characterization that Kia's anti-theft features were "short-changed" and "well below state-of-the-art. (See id. at 18, 20–22.)

But the Court finds that Bloch's analysis of this robust set of source material, combined with his "specialized knowledge" in auto safety, provides an adequate basis for his opinion. See Fed. R. Evid. 702; United States v. Webb, 115 F.3d 711, 714 (9th Cir. 1997). Bloch could reach his conclusions without inspection of a vehicle. Any concern regarding Bloch's failure to inspect Kia vehicles goes to the weight, not admissibility, of his opinion. See Summit 6, 802 F.3d at 1296.

Kia also argues that Bloch failed to disclose all of the news articles used to formulate his opinion. (See Bloch Mot. at 16–17.) Kia claims that in his deposition, Bloch described relying on "dozens and dozens" of articles but listed only two in the expert report disclosure. (Id.; Bloch Tr. 70:8–72:22; see Second Corrected Ex. 9, generally.) Plaintiff responds that the two news articles disclosed were enough to form the basis of his opinions, and the dozens of articles were a consequence of him keeping current with developments. (Bloch Opp'n at 6–7.) Because Kia did not point out any statements in Bloch's report that were not attributable to the news articles disclosed, the Court accepts Plaintiff's argument and finds no disclosure concern.

Further, Kia argues that Bloch's reliance on CGEC data suggests he worked backwards to reach his conclusion. (Id. at 15.) But this data contains widely reported information, including data from police agencies and findings that comport with sources

including the Insurance Institute for Highway Safety ("IIHS") and Highway Loss Data Institute ("HLDI") data. (See Bloch Opp'n at 6.) The Court sees no issue with an expert using his expertise to opine on publicly available data sources, as Bloch has done here. To the extent Defendants wish to challenge the bases for Bloch's opinions, they may do so at trial.

*iii. Methodology*

Kia also takes issue with the methodology used by Bloch. (Bloch Mot. at 6–11.) They argue that Bloch provides vague generalizations, relying on his years of experience, rather than a verifiable methodology. (Id. at 7, 8–9.) Thus, Kia claims, the Court has no means of assessing the reliability of Bloch's opinions. (Id. at 7.) Unlike other cases in which Bloch's expert testimony was excluded, there is no single event here that could be modeled and tested. (See Bloch Opp'n at 5 (citing Bishop v. Triumph Motorcycles (Am.) Ltd., No. 3:18-CV-186, 2021 WL 4316810, at *1 (N.D. W.V. Sept. 22, 2021); Rupert v. Ford Motor Co., No. 12-331, 2015 WL 757402, at *1 (W.D. Pa. Feb. 23, 2015)). But the Court finds that Bloch's report shows "how [he] went about reaching [his] conclusions and point[s] to some objective source." Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 605 (9th Cir. 2002). Bloch's reasoning links the history of anti-theft technologies, including regulatory developments, to Kia's own records about its immobilizer systems and TSBs following the thefts, to news articles regarding the thefts. (Bloch Opp'n at 4–5.) Unlike, as Kia claims, this methodology is not "ipse dixit" because there is not "simply too great an analytical gap between the data and the opinion proferred." Gen. Elec. Co. v. Joiner, 522 U.S. 136, 146 (1997); (Bloch Mot. at 8.) While Bloch's methodology may not conform to the standards of a statistical analysis, the Court finds that his analysis is nonetheless sufficient to assist the fact finder.

*iv. Legal Conclusions*

Kia also challenges some of Bloch's statements as legal conclusions: that the vehicles were "unreasonably dangerous to the public," and that it was "foreseeable" that the vehicles would be more readily stolen than other cars. (See id. at 19–20; see e.g., Bloch Rep. at 14 ("I believe it was foreseeable that Hyundai and Kia vehicles sold in the U.S. without sufficient anti-theft immobilizer technology would be more readily stolen . . .").) Kia argues that these words have legal meanings under tort law and are thus

improper legal conclusions. (See id.) The Court finds that Bloch uses these terms to aid the jury in understanding the facts, not direct the jury on how to decide. (See Bloch Opp'n at 7–10.); Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004) ("[A] witness may properly be called upon to aid the jury in understanding the facts in evidence even though reference to those facts is couched in legal terms."). To mitigate their concern, Kia may request a limiting instruction to remind the jury that the use of terms with legal meanings are not to be taken as legal conclusions.

Accordingly, the Court DENIES Kia's motion to exclude Bloch's testimony.

*B. Motion to Exclude Testimony of Nranian [1390]*

Defendants seek an order to exclude the testimony of Michael Nranian ("Nranian") for failure to meet the standards of Federal Rules of Evidence 702 ("Rule 702") and Daubert. (Defendants' Mot. to Exc. Nranian, ("Nranian Mot."), Dkt. No. 1390). The City opposed. (Opp'n ("Nranian Opp'n"), Dkt. No. 1508.) Defendants replied. (Reply ("Nranian Reply"), Dkt. No. 1600.)

Nranian's report summarizes industry standards for anti-theft devices. (See Expert Report of Michael Nranian ("Nranian Rep."), Dkt. No. 1378-8, generally.) Nranian also submitted a rebuttal report in response to opinions offered by Kia's experts Dr. Peter Lillo ("Lillo") and Christopher Bonanti ("Bonanti"). (See Rebuttal Report of Michael Nranian ("Nranian Reb. Rep."), Dkt. No. 1378-7, generally.)

1. Additional Legal Standard

Under Rule 26, a party may provide rebuttal expert testimony "if the evidence is intended solely to contradict or rebut evidence on the same subject matter identified by another [expert]." Fed. R. Civ. P. 26(a)(2)(D)(ii). Rebuttal expert testimony "cannot be used to advance new arguments or new evidence," but is limited "to attacking the theories offered by the adversary's experts." Hyundai Motor Co. v. Hyundai Tech. Grp., Inc., No. SA-cv-23-01709, 2025 WL 1711440, at *2 (C.D. Cal. May 14, 2025).

This rule applies to each of the rebuttal experts discussed below, and need not be repeated.

2. Analysis

*i. Alternative Anti-Theft Devices*

Kia first argues that the Court should exclude Nranian's opinions about alternative anti-theft devices. (Nranian Mot. at 4–10.) Nranian's report states that Kia failed to include "an immobilizer or any equivalent anti-theft protection." (See e.g., Nranian Rep. ¶ 7.) Kia argues that this opinion is rooted in an improper legal conclusion stemming from Nranian's misreading of 49 C.F.R. § 543. (See Nranian Mot. at 8–9.) The Court finds that Nranian does not state that the regulation requires an immobilizer or "equally effective" device but refers to the regulation to highlight the auto industry's longstanding recognition of immobilizers as effective anti-theft tools. (See id.; Nranian Opp'n at 6–7, 9.) To the extent his opinion veers into improper legal conclusions during trial, Kia may raise an objection.

Kia also argues this opinion is speculative and unreliable because Nranian never identified any examples of alternatives to immobilizers. (Nranian Mot. at 4–6.) Kia claims Nranian's statement thinly disguises his actual opinion: that immobilizers were required. (Nranian Reply at 10.) The Court finds this claim to be a stretch. Although not explicitly identified by Nranian, Kia's software upgrade may considered one of these alternative anti-theft technologies. (See Nranian Opp'n at 7.) Nranian's opinion is a standard analysis of industry norms, finding that the norm is to use more robust anti-theft technology than minimum standards set by regulation, the most common adopted anti-theft technology is the immobilizer, and if an automaker does not want to use that device, it may invent an equivalently effective technology. (Id. at 7.) Thus, the Court finds Nranian's discussion of alternative anti-theft devices valid under Rule 702.

*ii. Factual Bases*

Kia then seeks to exclude all of Nranian's engineering opinions as unscientific, speculative, and lacking support. (Nranian Mot. at 11–21.) The Court does not agree with Kia's argument that because Nranian did not test the software himself, his opinion is unscientific. (See Nranian Mot. at 16.) Nranian's study contains thousands of pages of discovery documents, scholarly articles, legislative materials, and media reports. (See Nranian Opp'n at 10.) As Plaintiff points out, Rule 702's reliability requirement can be satisfied in a number of ways, including the empirical data and familiarity with the

relevant technology and subject vehicles relied upon here. (See id. at 11.)

Kia challenges Nranian's basis for his opinions about the adequacy of countermeasures: specifically, his reliance on the AutoSafe report, prepared by an auto industry vendor and published on the Internet. (See id. at 17; Nranian Mot. at 15.) Nranian did not have access to AutoSafe's underlying data, but Plaintiff argues the report is valid under Rule 703: "[i]f experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted." Fed. R. Evid. 703; (Nranian Opp'n at 18). However, the Court takes issue with language copied from the AutoSafe report and pasted in Nranian's report without attribution. (See Nranian Reply at 9, 11–12. (Compare Nranian Rep. ¶ 60 ("Unfortunately, the selected lock was already known to be easily defeated . . .") with Ex. G, Dkt. No 1390-8, Flawed Logic: The Hyundai Anti-Theft Campaign, AutoSafe Am. (Dec. 8, 2025) at 16.)) Nranian cannot simply be a conduit for an inadmissible report. See Paddack v. Dave Christensen, Inc., 745 F.2d 1254, 1262 (9th Cir. 1984) (discussing that Rule 703 permits hearsay to explain the basis of the expert's opinion, but not as general proof of the truth of the underlying matter). The Court will entertain objections if Nranian misattributes quotes from the AutoSafe report as his own at trial. But as long as Nranian incorporates the AutoSafe report into his own independent opinion, the Court finds that his reliance on the report appropriate. Issues of weight and credibility are appropriate for cross-examination at trial. See Daubert, 509 U.S. at 59; Bergen v. F/V St. Patrick, 816 F.2d 1345, 1352 n.5 (9th Cir. 1987).

*iii. Legal Conclusions*

Kia also challenges Nranian's mentions of the terms "foreseeable" and "reasonable" as impermissible legal conclusions. These references are brief and disconnected from the ultimate issue. (See Nranian Rep. at 13 ("Hyundai and Kia Did Not Keep Up With Standard Practice In the Automotive Industry, With Foreseeable Results"); id. at 22 ("The Failure to Equip Hyundai and Kia Vehicles with Reasonable Anti-Theft Technology had Predictable Results.")) The Court finds that Nranian's use of these terms do not convey a legal conclusion but are used as a description from industry standards. (See Nranian Opp'n at 23–24); see Hangarter, 373 F.3d at 1017 (9th Cir. 2004). To the extent Kia disagrees, they may object at trial or request a limiting instruction.

*iv. Scope of Rebuttal Report*

Kia challenges elements of the rebuttal report, including Nranian's opinions about cost-cutting and state of mind. (See Nranian Mot. at 21–23.) In response to Kia's expert Bonanti, suggests that Kia switched its ignition switch assembly from metal to plastic as a "cost-cutting decision." (See Nranian Reb. Rep. ¶ 36; Nranian Opp'n at 21–22.) Kia argues this is an improper rebuttal opinion because Bonanti did not offer opinions about ignition assembly design or composition, so there was nothing for Nranian to rebut. (See Nranian Reply at 14.) The Court agrees that Nranian's comment impermissibly advances a new theory outside the scope of Bonanti's report. See Hyundai Motor Co, 2025 WL 1711440, at *2.

Lastly, the Court agrees with Kia that Nranian's statements in his rebuttal report that Kia "knowingly chose to do nothing," "must be aware of the real-world consequences," and only acted when they "feared brand damage" are speculative statements about state of mind and cannot be presented to the jury. (Nranian Reb. Rep. ¶¶ 25, 57, 58; see Nranian Mot. at 21–23; Nranian Reply at 15.) These comments are outside the scope of Nranian's knowledge or expertise.

Thus the Court DENIES-in-part the motion to exclude but ORDERS exclusion of:

- In rebuttal to Bonanti's opinion, statements regarding Kia's economic motivations for switching materials in its ignition switch assembly. (See Nranian Reb. Rep. ¶ 36.)
- Statements regarding Kia's state of mind, including that they "knowingly chose to do nothing," "must be aware of the real-world consequences, and only acted when they "feared brand damage." (Nranian Reb. Rep. ¶ ¶ 25, 57, 58.)

*C. Motion to Exclude Testimony of Mourtgos & Alpert [1384]*

Defendants seek an order to exclude the testimony of Dr. Scott M. Mourtgos ("Mourtgos") and Dr. Geoffrey Alpert ("Alpert") for failure to meet the standards of Federal Rules of Evidence 702 ("Rule 702") and Daubert. (Defendants' Mot. to Exc. Mourtgos & Alpert, ("Mourtgos & Alpert Mot."), Dkt. No. 1384). The City opposed. (Opp'n ("Mourtgos & Alpert Opp'n"), Dkt. No. 1506.) Defendants replied. (Reply ("Mourtgos & Alpert Reply"), Dkt. No. 1594.)

Both Mourtgos and Alpert offer reports to rebut the opinions of Defendants' expert Warren Stanley regarding the effect of vehicle theft on the City's public safety. (See Rebuttal Report of Scott M. Mourtgos ("Mourtgos Reb. Rep."), Dkt. No. 1378-14 and Rebuttal Report of Geoffrey Alpert ("Alpert Reb. Rep."), Dkt. No. 1378-11, generally.)

1. Analysis

*i. Methodology*

Defendants primarily challenge Mourtgos and Alperts' methodology as insufficient because neither expert reviewed the police reports that were the basis of Stanley's analysis. (Mourtgos & Alpert Mot. at 6–7.) Kia claims that without reviewing individual reports, neither expert can rebut incident-level findings. (See id. at 7.) The City responds that because the experts' analyses were focused on critiquing Stanley's report against established standards of policing analysis and criminological reasoning, review of the police reports was unnecessary. (Mourtgos & Alpert Opp'n at 8, 10.) Indeed, Mourtgos and Alpert examine whether Stanley's conclusions are supported by the data he references. (See Alpert Reb. Rep. at 1; Mourtgos Reb. Rep. at 1, 10.) The Court finds that to form this rebuttal opinion, they did not need to replicate Stanley's methodology, namely, reviewing and encoding police reports. (See id. 7–8.) Thus, Mourtgos and Alpert's methodology is not a question of admissibility, but of weight. See Summit 6, 802 F.3d at 1296. The experts' failure to review individual police reports is appropriate fodder for cross-examination. (See Mourtgos & Alpert Opp'n at 9.)

Further, Kia challenges Mourtgos' reliance on historical data and Alpert's reliance on aggregate metrics in their chosen methodologies. (See Mourtgos & Alpert Mot. at 7–8.) But the Court finds Mourtgos and Alpert's methods viable. Each report shows "how [he] went about reaching [his] conclusions and point[s] to some objective source," citing peer-reviewed publications and evidence in the record. Domingo ex rel. Domingo v. T.K., 289 F.3d 600, 605 (9th Cir. 2002); (see Mourtgos & Alpert Opp'n at 7). Kia's concerns about the experts' methodology go to weight, not admissibility. (See Mourtgos & Alpert Mot. at 8–9); see Summit 6, 802 F.3d at 1296.

*ii. Expertise*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:22-ml-03052-JVS-KES Date March 26, 2026

Title In re: Kia Hyundai Vehicle Theft Litigation

Defendants also suggest that Alpert is not qualified as an expert because he "never worked as an employee of a municipal law enforcement agency or as a sworn law enforcement officer." (Mourtgos & Alpert Mot. at 3.) The Court finds that Alpert's 35 years of experience conducting research on police policies more than qualifies him to be an expert on the effect of vehicle theft on the City's public safety. (See Mourtgos & Alpert Opp'n at 6; Alpert Reb. Rep. at 1.)

Finding no basis for exclusion, the Court DENIES Kia's motion to exclude Moutgos and Alpert's testimony.

*D. Motion to Exclude Testimony of Grodsky [1418]*

Defendants seek an order to exclude the testimony of Dr. Eric Grodsky ("Grodsky") for failure to meet the standards of Federal Rules of Evidence 702 ("Rule 702") and Daubert. (Defendants' Mot. to Exc. Grodsky, ("Grodsky Mot."), Dkt. No. 1418). The City opposed. (Opp'n ("Grodsky Opp'n"), Dkt. No. 1465.) Defendants replied. (Reply ("Grodsky Reply"), Dkt. No. 1510.)

Grodsky offers a report to rebut the opinions of Defendants' expert Yang regarding the calculation of auto thefts in Madison. (See Rebuttal Report of Eric Grodsky ("Grodsky Reb. Rep."), Dkt. No. 1378-13, generally.)

1. Analysis

As an initial matter, Defendants object to Grodsky's qualifications to offer an opinion on Yang and Stanley's theft identification method or to offer his own relative risk assessment. (Grodsky Mot. at 4–5.) Grodsky is professor of sociology at the University of Wisconsin–Madison, where he received his Ph.D., and conducts research in the areas of education and social inequality. (Grodsky Rep. at 1.) He has taught courses on statistics and is deputy director of a program "focusing on causal inference and translational research in the field of education." (Id.) As Defendants point out, Grodsky does not have any particular expertise in the field of criminology or experience analyzing theft. (Grodsky Mot. at 4.) Nonetheless, to the extent Grodsky seeks to opine on statistical analysis or generally accepted academic practices, the Court finds that he is qualified to do so. See Thomas v. Newton Int'l Enters., 42 F.3d 1266, 1269 (9th Cir. 1994).

However, with respect to his first opinion, Grodsky exceeds his expertise and cites no material to support is opinions. In his first opinion, Grodsky claims that Yang underestimates auto thefts based on unwarranted assumptions related to causal relationships. (Grodsky Rep. at 2–4.) He opines on various possible other factors such as thieves interrupted in the act, unrecovered vehicles, errors in recording thefts, and keys left in the ignition. (Id. at 3.) Yet, as noted above, Grodsky has no relevant expertise or background to opine on theft or police practices, nor does he cite any outside materials to support his opinions whatsoever. (See id. at 2–4.) As such, the Court finds that his first opinion would not be helpful to the jury and is thus excluded. See Thomas, 42 F.3d at 1269, Daubert, 509 U.S. at 595.

Additionally, while Grodsky is qualified to conduct the relative risk assessment in his second opinion, he fails to cite to any authority establishing that it is an appropriate method of analysis in this context. (See Grodsky Rep. 4–7.) Especially for someone who lacks any background in crime analysis or even as an expert witness at all, external support for a chosen methodology is critical for the Court to determine whether an expert's testimony will be useful to a jury. Daubert, 509 U.S. at 595. Grodsky's report simply does not enable the Court to assess whether his chosen methodology "has been tested," is "peer-reviewed," or is "generally accepted" because it cites zero authority bolstering his choice of analysis. Id. Nor does he cite any unique factors here which would otherwise validate his methodology.

Accordingly, the Court GRANTS Defendants' motion and excludes Grodsky's testimony in full.

## II. City of Madison's Daubert Motions

### *A. Motion to Exclude Testimony of Bonanti [1380]*

The City seeks an order to exclude the testimony of Christopher J. Bonanti ("Bonanti") for failure to meet the standards of Federal Rules of Evidence 702 ("Rule 702") and Daubert. (Plaintiff's Mot. to Exc. Bonanti, ("Bonanti Mot."), Dkt. No. 1380). Defendants opposed. (Opp'n ("Bonanti Opp'n"), Dkt. No. 1512.) The City replied. (Reply ("Bonanti Reply"), Dkt. No. 1588.)

Bonanti's report summarizes the regulatory framework for anti-theft protection in

the motor vehicle industry. (See Expert Report of Christopher J. Bonanti ("Bonanti Rep."), Dkt. No. 1378-15, generally.) Bonanti also submitted a rebuttal report in response to opinions offered by Plaintiff's experts Michael Nranian ("Nranian") and Byron Bloch ("Bloch"). (See Rebuttal Report of Christopher J. Bonanti ("Bonanti Reb. Rep."), Dkt. No. 1378-16, generally.)

1. Analysis

*i. Regulatory Compliance*

The City seeks to exclude Bonanti's opinions regarding regulatory compliance. (Bonanti Mot. at 3–5.) As one of the participants in the rulemaking process, Bonanti has unique insight into the historical origins and policy rationale for the regulation's lack of an immobilizer requirement. (Bonanti Opp'n at 13–14.) This opinion will "assist the jury in determining the issues in the action." Cadena v. Am. Honda Motor Co., No. 2:18-cv-04007-MWF, 2025 WL 3483436, at *7 (C.D. Cal. Dec. 3, 2025.) The Court finds it appropriate for Bonanti to testify on the general regulatory framework, to the extent he does more than restate the regulation. (See Bonanti Mot. at 5–6; Bonanti Opp'n at 13–14.)

But the City argues that Bonanti goes beyond regulatory background, making impermissible legal conclusions by stating that Hyundais and Kias sold without immobilizers "were in full compliance with the regulations." (Bonanti Mot. at 3–4 (citing Bonanti Dep. Feb. 12, 2026, Dkt. No. 1378, Ex. 36 at 216:13–22).) The issue in this case is not whether Defendants violated any of the Federal Motor Vehicle Safety Standards ("FMVSS"), (see Bonanti Reply at 1), but whether Defendants acted unreasonably in distributing vehicles without immobilizers, (see Bonanti Opp'n at 2).[1] Thus, Bonanti's opinions on compliance do not go to the ultimate issue of law. United States v. Diaz, 876 F.3d 1194, 1197 (9th Cir. 2017) ("[A]n expert witness cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law.") (quoting Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1016 (9th Cir. 2004)).) Nonetheless, the City is concerned that Bonanti's opinions will lead jurors "to

[1] Alternatively, the City argues that Bonanti's opinions are irrelevant to their public nuisance and negligence claims. (Id.) The Court agrees with Kia that whether they acted in conformity with federal regulations is relevant in determining the reasonableness of their conduct. (Bonanti Opp'n at 10.)

erroneously conclude that regulatory compliance provided safety." (Bonanti Mot. at 4 (quoting Zetz v. Bos. Sci. Corp., 644 F.Supp.3d 684, 705 (E.D. Cal. 2022)).) The Court finds that the City can adequately address these concerns through cross-examination or experts of their own. Thus, the Court does not find it appropriate to exclude Bonanti's opinions on the regulatory framework or compliance.

*ii. Jury Confusion*

Next, the City alleges that Bonanti's opinions about whether the lack of an immobilizer constitutes a "defect" are irrelevant and could confuse the jury because the negligence and nuisances claims do not depend on an alleged defect. (Bonanti Mot. at 6.) Kia argues that there is no concern about jury confusion because there is no products liability theory in this case, in which the term "defect" would have legal significance. (Bonanti Opp'n at 15–16.) Instead, Bonanti uses the term "defect" as defined by the National Highway Traffic Safety Administration ("NHTSA") in 49 U.S.C. § 30102, determining when a manufacturer should have initiated a voluntary recall. (See id. at 15.) The Court agrees with Kia that Bonanti's testimony on this issue is relevant, particularly in conversation with the City's experts describing the vehicles as "short-changed" and "below industry standards." (See id. at 14.) Thus, the Court declines to exclude Bonanti's opinion about "defect[s]."

*iii. Scope of Rebuttal Report*

Lastly, the City attempts to exclude Bonanti's rebuttal opinion on the same grounds as his expert report. (See Bonanti Mot. at 16.) The Court agrees with Kia that the rebuttal report is properly focused to respond to Nranian and Bloch's opinions about Kia's failure to equip their cars with adequate security features. (See id. at 16–17.) Thus, the Court declines to exclude Bonanti's rebuttal opinion.

Accordingly, the Court DENIES Plaintiff's motion to exclude Bonanti's testimony.

*B. Motion to Exclude Testimony of Stanley [1381]*

The City seeks an order to exclude the testimony of Warren Stanley ("Stanley") for failure to meet the standards of Federal Rules of Evidence 702 ("Rule 702") and

Daubert. (Plaintiff's Mot. to Exc. Stanley, ("Stanley Mot."), Dkt. No. 1381). Defendants opposed. (Opp'n ("Stanley Opp'n"), Dkt. No. 1511.) The City replied. (Reply ("Stanley Reply"), Dkt. No. 1590.)

Stanley's report offers opinions on the thefts of Kias and Hyundais in Madison as well as the practices of its police department. (See Stanley Rep., Dkt. Nos. 1378-19, -20, generally.) Stanley also submitted a rebuttal report in response to opinions offered by Plaintiff in the Farrell and Roman reports. (See Rebuttal Report of Warren Stanley ("Stanley Reb. Rep."), Dkt. No. 1378-21, generally.)

1. Analysis

Stanley is the former commissioner of the California Highway Patrol ("CHP"), the largest state law enforcement agency in the United States. (Stanley Rep. ¶ 1.) He has 38 years of law enforcement experience serving at every level of CHP. (Id.) While the City does not challenge Stanley's qualifications, it does take issue with his process of reviewing each police report produced by the City to assess Kia and Hyundai thefts and their effect on public safety in Madison. (Stanley Mot. at 3.)

*i. Methodology*

First, the City argues that Stanley failed to use an accepted methodology in conducting his review and categorization of police reports related to auto thefts in Madison. (Stanley Mot. at 3.) Stanley individually examined 742 police reports and sorted them into three categories: (1) thefts involving the Kia Boyz method; (2) thefts not involving the Kia Boyz method; and (3) police reports without enough information to reach a conclusion. (Stanley Rep. ¶¶ 12, 33–39.) In assessing the police reports, Stanley relied on the narrative portions and any supplemental information such as crime scene photos to make his determination. (Id. ¶ 34.)

The City argues that Stanley's review amounts to a qualitative analysis that lacks the quality controls expected in an academic setting and fails to describe how different factors were weighed in his analysis. (Stanley Mot. at 3.) It also argues that Stanley improperly relied on overall theft statistics as a proxy in his assessment of public safety risks in Madison. (Id. at 4–5.) Defendants respond by arguing that Stanley's analysis was not scientific in nature, but rather one based on his years of experience in identifying

the *modus operandi* ("MO") of a particular crime. (Stanley Opp'n at 6–7.)

While Stanley's methodology may not conform to the rigorous standards of academic research or statistical analysis, the Court finds that his analysis is nonetheless sufficient to assist the fact finder. Stanley has "specialized knowledge" as a law enforcement expert and his years of experience qualify him to opine on the MO of a particular crime based on information within a police report. See Fed. R. Evid. 702; United States v. Webb, 115 F.3d 711, 714 (9th Cir. 1997). The fact that he reviewed a large volume of police reports does not defeat his qualifications on a case by case basis. See United States v. Hankey, 203 F.3d 1160, 1169 (9th Cir. 2000). To the extent that the City finds shortfalls in Stanley's methodology, the City is free to cross-examine him about these concerns. Daubert, 509 U.S. at 596.

Further, the City's concern regarding Stanley's use of proxies to assess Madison's public safety goes to weight, not admissibility. Notably, the City does not challenge the use of proxies as a reliable method in assessing public safety. (Stanley Mot. at 4–5.) Rather, it takes issue with *which* proxies Stanley used and gave credence. (Id.) The City is free to make these arguments on cross-examination or through its rebuttal expert. The fact finder is in the best position to determine who is more credible. Summit 6, 802 F.3d at 1296.

*ii. Application*

Second, the City argues that even if Stanley's methodology were sound, he does not apply it consistently such that his testimony should be excluded. (Mot. at 5–8.) Specifically, it asserts that Stanley excluded some vehicle thefts that met his criteria for Kia Boyz thefts and that certain thefts with identical notes were nonetheless categorized under two different methods of theft. (Id.)

Neither of the City's concerns warrants wholesale exclusion of Stanley's testimony. First, Stanley's exclusion of some thefts showing signs of the Kia Boyz method is in line with his stated method of excluding Kias and Hyundais that have immobilizers. (Stanley Rep. ¶ 37.) While the City may rightly take issue with this approach in light of its theory of liability, it is not a deviation from Stanley's claimed methodology and thus does not make the report unreliable. Next, the fact that some thefts with identical notes were categorized differently is a concern best raised on cross

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | March 26, 2026 |
| Title | In re: Kia Hyundai Vehicle Theft Litigation | | |

examination. This is particularly true in light of some the discrepancies related to steering column damage identified by Defendants that may explain the difference in categorization. (Stanley Opp'n at 13.) Even if some of the categorizations are truly inconsistent, this is best considered by the fact finder for what weight to give the testimony. Summit 6, 802 F.3d at 1296.

*iii. Policy Conclusions*

Finally, the City challenges Stanley's opinions on Madison's public safety and policing response to auto thefts as lacking an articulable framework for drawing conclusions from the data provided. (Stanley Mot. at 8–12.) As noted above, Stanley's 38 years of law enforcement experience sufficiently qualifies him to opine about policing practices and public safety. (See Stanley Rep. ¶ 1.) While different experts may take different approaches to assessing risks to public safety, Stanley's reliance on overall arrests, vehicle thefts, and operational and budgeting decisions is not so lacking that it warrants exclusion. (See id. ¶¶ 40–50.) Similarly, Stanley's opinions on policing practices with regard to juvenile offenders or vehicle pursuit policies, (id. ¶¶ 51–72), are sufficiently informed by his experience and specialized knowledge. As above, the City has shown that it has ample material to challenge the conclusions drawn by Stanley in his report. But these challenges are best heard by the fact finder and do not justify wholesale exclusion. Daubert, 509 U.S. at 596.

Accordingly, the Court DENIES the City's motion to exclude Stanley.

*C. Motion to Exclude Testimony of Yang [1382]*

The City seeks an order to exclude the testimony of Dr. Crystal Yang ("Yang") for failure to meet the standards of Federal Rules of Evidence 702 ("Rule 702") and Daubert. (Plaintiff's Mot. to Exc. Yang, ("Yang Mot."), Dkt. No. 1382). Defendants opposed. (Opp'n ("Yang Opp'n"), Dkt. No. 1514.) The City replied. (Reply ("Yang Reply"), Dkt. No. 1591.)

Yang's report analyzes auto thefts in Madison and offers opinions on their causation and relationship to the Kia Boyz trend. (See Yang Rep., Dkt. Nos. 1378-22, -23, -24, generally.) Yang also submitted a rebuttal report in response to the Farrell's report. (See Rebuttal Report of Crystal Yang ("Yang Reb. Rep."), Dkt. No. 1385-14,

generally.)

1. Analysis

*i. Factual Assumptions and Methodology*

Yang is a law professor at Harvard Law School and holds a Ph.D. in Economics. (Yang Rep. ¶¶ 1–2.) She specializes in the quantitative research of the economics of crime and the City does not challenge her qualifications or ability to conduct and analysis of auto thefts in Madison and the effects of the Kia Boyz Trend. (Id.) However, the City does challenge the factual assumptions that form the basis of her analysis as well as her methodology when calculating thefts attributable to Defendants. (Yang Mot. at 4–14.)

First, the City challenges a key assumption that Yang used in her analysis: that differences in thefts would be noticed shortly after vehicles without immobilizers were distributed by Defendants in 2011. (Yang Mot. at 4.) This assumption, and the evident lack of increased thefts, leads Yang to opine that "*other* factors must account for the change [in thefts] that emerged in summer 2022." (Yang Rep. ¶ 16.) By contrast, the City's expert claims that there would be lag time between distribution and when potential offenders learn about the vulnerability. (Yang Mot. at 4; Farrell Reb. Rep. at 12–16.) Nonetheless, the Court finds that it is not patently unreasonable for Yang to assume that the lack of immobilizers would have some impact on thefts in the decade or so leading up to the nuisance period. While the City's experts may disagree, explanations for the cause of increased thefts is at the core of this dispute and are best hashed out through "[v]igorous cross-examination." Daubert, 509 U.S. at 596.

Next, the City takes issue with Yang's analysis of Google search terms related to Kia Boyz thefts. Specifically it raises concerns about her use of Google's Search Volume Index ("SVI") and her search term selection. (Yang Mot. at 5–7.) Yang describes her methodology and use of SVI in detail. (See Yang Rep. ¶¶ 35 n.41, 165–66.) She also supports her analysis with additional resources outside of her use of SVI. (Id. ¶ 36.) Similarly, Yang describes her search term selection, noting that she also searched broadly under "Kia" and "Hyundai." (Yang Rep. ¶ 167.) While the City identifies concerns that Google's SVI reliability may have weakened in 2022 and identifies additional search terms that Yang could have used in her analysis, the Court

finds that these issues are not so severe to justify excluding her testimony. Rather, they create issues of credibility that the fact finder should determine. Daubert, 509 U.S. at 596. To the extent the City also takes issue with the conclusions she draws from her analysis such as when Kia Boyz interest first surged or whether such interest preceded or followed increased thefts, it is up to the fact finder, not the Court, to assess the credibility of such conclusions. Summit 6, 802 F.3d at 1295.

Finally, the City highlights various deficiencies that allegedly created an undercount of auto thefts attributable to Defendants. (Yang Mot. at 8–12.) It also contends that Yang's report is fatally flawed because of the assumptions underlying her conclusion that the elevated thefts of Hyundais and Kias merely replace the thefts of other vehicles. (Id. at 12–13.) With regard to the deficiencies in identifying auto thefts, the City raises concerns related to inconsistencies with hand coding, lacking a definitive method of categorization, and unnecessarily limiting the analysis to vehicles without immobilizers. (Id. at 8–12.) As the Court found above with regard to Stanley's report, the issues identified by the City are core to the differing theories of liability between the parties and go to the weight of Yang's testimony. Summit 6, 802 F.3d at 1296. Yang provided a clear description of her methodology that centered around the Kia Boyz method and an analysis of the relevant police reports. (Yang Rep. ¶¶ 135–51.) Yang also considered a broader set of vehicles in her rebuttal report. (Yang Reb. Rep. ¶¶ 16–17, 26.) The strength or appropriateness of her approach should be tested on cross-examination. Daubert, 509 U.S. at 596.

Similarly, the City's issues regarding Yang's substitution theory are a matter of credibility best left to the fact finder. The City claims her opinion is "demonstrably wrong" for failing to consider the possibility that there could have been fewer thefts "in a world where Hyundai and Kia vehicles had industry-standard anti-theft technology." (Yang Mot. at 12.) Ultimately, whether Yang is "right" or "wrong" about substitution as opposed to other theories is an issue of expert conclusions that is not appropriate for the Court to decide before trial. Summit 6, 802 F.3d at 1295–96.

*ii. Alternative Causes*

Lastly, the City contends that Yang offers unsupported conjectures about alternative causes of auto theft that she is not qualified to give. (Yang Mot. at 14–15.) In her report, Yang describes her expertise in the area of the economics of crime and

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 8:22-ml-03052-JVS-KES | Date | March 26, 2026 |
|---|---|---|---|
| Title | In re: Kia Hyundai Vehicle Theft Litigation | | |

applies such an analysis to auto thefts in Madison. (Yang Rep. ¶¶ 87–111.) As part of this analysis, she identifies policies that may have lowered the "cost" of stealing vehicles in Madison such as removal of school resource officers, vehicle pursuit policies, and policies related to juvenile offenders. (Id. ¶¶ 118–126.)

As an initial matter, Yang is qualified to conduct an economics of crime analysis identifying criminal justice policies that may reduce the cost of crime. Yang holds a doctorate in economics and much of her career as a law professor has focused on the intersection of economics and crime. (Id. ¶¶ 1–3, 87.) Further, while she does not conduct a complete causal analysis between each identified and auto theft, she adequately relies on deposition testimony and news reports in forming opinions about their possible effects. (See id. ¶¶ 118–126.) Yang thus offers opinions about policing policies that she is qualified to give and are
a sufficiently supported by evidence. The City's concerns go to weight and are appropriately addressed on cross-examination. Daubert, 509 U.S. at 596.

Accordingly, the Court DENIES the City's motion to exclude Yang.

*D. Motion to Exclude Testimony of North [1383]*

The Cityseeks an order to exclude the testimony of Karen North ("North") for failure to meet the standards of Federal Rules of Evidence 702 ("Rule 702") and Daubert. (Plaintiff's Mot. to Exc. North, ("North Mot."), Dkt. No. 1383). Defendants opposed. (Opp'n ("North Opp'n"), Dkt. No. 1513.) The City replied. (Reply ("North Reply"), Dkt. No. 1589.)

North's rebuttal report, in response to Plaintiff's experts Graham Farrell ("Farrell"), Michael Nranian ("Nranian"), and Byron Bloch ("Bloch"), states that social media trends, including the Kia Boyz and Kia Challenge, were a "substantial factor in driving the criminal activity at issue" in this litigation. (See Expert Report of Karen North ("North Rep."), Dkt. No. 1378-29, generally.)

1. Additional Legal Standard

Rule 37(c)(1) of the Federal Rules of Civil Procedure establishes a self-executing sanction for failing to make required disclosures: "If a party fails to provide information

or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1105–06 (9th Cir. 2001).

2. Analysis

*i. Methodology*

The City argues that North's opinions should be excluded because she does not use an acceptable methodology. (North Mot. at 3–6.) While North's opinion is based on her analysis of collected social media content, Plaintiff claims that North's method of identifying this content cannot be replicated. (Id. at 4.) But Plaintiff does not point to any legal rule that states an opinion must be excluded if its exact results cannot be replicated. North describes a methodology: she used her expertise in psychology and social media to analyze the extent to which challenges encouraging car theft have gone viral, examining key words, hashtags, and other social media communications. (See North Reb. Rep. at 6–9.) North's opinions do not turn on specific search results, but looks to the existence of the content and its effect in the aggregate. (See North Opp'n at 7.) The Court finds that North's report shows "how [she] went about reaching [her] conclusions and point[s] to some objective source." Domingo ex rel. Domingo, 289 F.3d at 605. While North's methodology may not conform to the rigorous standards of a statistical analysis, the Court finds that her analysis is nonetheless sufficient to assist the fact finder.

The City also challenges the basis for North's opinions, claiming that North never specifically factored Madison in her analysis. (See North Mot. at 7–8; North Reply at 5.) The Court agrees with Kia, finding that Dr. North's citations contain admissions from Madison witnesses regarding the circulation of Kia Challenge and Kia Boyz-related content in the city. (See North Opp'n at 11.) Thus, North's opinions are adequately supported.

*ii. Legal Conclusions*

The City argues that North's opinions involving foreseeability are improper legal conclusions. (North Mot. at 6–8; see, e.g., North Reb. Rep. at 24 ("The Kia Challenge . .

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | March 26, 2026 |
| Title | In re: Kia Hyundai Vehicle Theft Litigation | | |

. was unprecedented and therefore not reasonably foreseeable by a reasonable automobile distributor.")) Plaintiff argues that North's statements are inappropriate because in Wisconsin, foreseeability is a question for the jury. (Id. at 6–7 (citing Furrer v. Milwaukee & Suburban Transp. Corp., 40 Wis. 2d 560, 569 (1968)).)

The Court finds that given that causation is the subject of North's testimony, opinions invoking foreseeability are difficult to avoid. While an expert cannot offer opinions as to legal conclusions, "an opinion is not objectionable just because it embraces an ultimate issue." Fed. R. Evid. 704(a); see Diaz, 876 F.3d at 1197. Thus, although North cannot testify that Kia was not at fault, she can testify to the foreseeability of the Kia Challenge. See Lister v. Hyatt Corp., No. C18-0961JLR, 2019 WL 6701407, at *12 (W.D. Wash. Dec. 9, 2019) (describing that, in a negligence case, an expert cannot testify as to liability, but can testify as to the foreseeability of the behavior at issue). To mitigate its concern, the City may request a limiting instruction to remind the jury that while experts may opine on the issues, they are not to take their opinions as legal conclusions.

*iii. Procedural Concerns*

Lastly, the City argues for exclusion on a procedural basis, claiming that Kia amended the report to belatedly disclosed North's reliance materials nine days before her deposition. (North Mot. at 8–10.) Plaintiff argues North is unfamiliar with her own reliance materials because North could not identify the changes to the report at her deposition. (Id. at 8.) But North did not amend her report; rather, Kia submitted a supplemental disclosure when she learned that some materials had been omitted from North's appendix. (See North Opp'n at 13–14.) While it is far from best practice to provide a corrected appendix double the length of the original nine days before a deposition, Kia followed the requirement set out in Rule 26(e). (See id. at 14); Fed. R. Evid. 26(e) (requiring a party to supplement disclosure in a timely manner if the party learns that the disclosure is incomplete or incorrect). Thus, the Court finds no Rule 37(c) procedural issue.

The Court therefore DENIES the motion to exclude North's Rebuttal Report.

## III. Conclusion

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | March 26, 2026 |
| Title | In re: Kia Hyundai Vehicle Theft Litigation | | |

Except in the instances where the Court has excluded an expert or part of an expert's opinions, the Court finds that the offering party has carried its burden to show the it is "more likely than not" that the witness meets the required standard. Fed. R. Evid. 702.

In sum, the Court:

- **DENIES** Kia's Motion to Exclude the Testimony of Bloch (Dkt. No. 1387, 1476)
- **DENIES-in-part** Kia's Motion to Exclude the Testimony of Nranian (Dkt. No. 1390, 1477)
- **DENIES** Kia's Motion to Exclude the Testimony of Mourtgos & Alpert (Dkt. No. 1384, 1474)
- **GRANTS** Kia's Motion to Exclude the Testimony of Grodsky (Dkt. No. 1418, 1473)
- **DENIES** the City's Motion to Exclude the Testimony of Bonanti (Dkt. No. 1380, 1459)
- **DENIES** the City's Motion to Exclude the Testimony of Stanley (Dkt. No. 1381, 1461)
- **DENIES** the City's Motion to Exclude the Testimony of Yang (Dkt. No. 1382, 1462)
- **DENIES** the City's Motion to Exclude the Testimony of North (Dkt. No. 1383, 1460)

* * * * * * * * * * * * *

**Counsel are ordered to advise the parties and all witnesses of the Court's rulings so that there are no inadvertent violations of this Order.**

**In light of the lack of redaction requests from the parties, the Court files this sealed order publicly.**