ELLIOTT R. FELDMAN
MEGAN R. PEITZKE (SBN 230375)
JULIE A. LINE
**COZEN O'CONNOR**
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA 19103
Telephone: (215) 665-2071
Facsimile: (215) 701-2282
EFeldman@cozen.com

TIMOTHY E. CARY (SBN 093608)
DANIEL HOGAN
THOMAS PAOLINI
W. DIANE WAYLAND (SBN 197802)
LAW OFFICES OF ROBERT A.
STUTMAN, P.C.
391 N. Main Street, Suite 108
Corona, California 92879
Telephone: (951) 387-4700
Facsimile: (951) 963-1298
CaryT@Stutmanlaw.com

WILLIAM J. HOFFMANN
ADAM M. ROMNEY (SBN 261974)
SUSAN M. BENSON (SBN 146837)
**GROTEFELD HOFFMANN LLP**
15303 Ventura Blvd., Bldg, C, Suite 1505
Sherman Oaks, CA 91403
Telephone: (747) 233-7150
Facsimile: (747) 233-7143
Bhoffmann@ghlaw-llp.com

STEPHANIE H. NG (SBN 309389)
CHRISTINE FORSLINE (SBN 333451)
**BERGER KAHN, A Law Corporation**
1 Park Plaza, Suite 340
Irvine, California 92614
Telephone: (949) 474-1880
Facsimile: (949) 313-5029
CForsline@bergerkahn.com

***Attorneys for Subrogation Insurance Plaintiffs***

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES, PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>This document relates to:<br><br>ALL SUBROGATION CASES | Case No.: 8:22-ML-03052-JVS-(KESx)<br><br>The Honorable James V. Selna<br><br>**SUBROGATION PLAINTIFFS' REPLY TO DEFENDANTS' OPPOSITION TO RULE 702 MOTION TO EXCLUDE EXPERT TESTIMONY OF PROFESSOR ANDREW JAMES (A.J.) JACOBS**<br><br>**Date: April 28, 2026**<br><br>**Time: 4:00 p.m.**<br><br>**Location: Courtroom 10C** |

# I.   INTRODUCTION

Defendants' 22-page Opposition includes a "Background" section that presents Jacobs' challenged opinions as fact and addresses issues not raised in Subrogation Plaintiffs' ("Plaintiffs") Rule 702 Motion. When Defendants do engage with Plaintiffs' arguments, they distort the issues and make unfounded accusations of misrepresentation of Jacobs' report.

Notwithstanding Defendants' characterization, Jacobs broadly opines that the Kia Boyz trend "represents a complete break from all prior theft patterns in American history" and was therefore unforeseeable. However, he lacks sufficient data to support this conclusion due to his self-imposed focus on one historical theft pattern more than half a century ago (1950s/'60s joyriding). (Dkt. 1557-2 ("Report") at 2.) Undeterred, Jacobs manufactures four "points of distinction" to contrast the Kia Boyz with prior theft patterns, selectively relying upon data that supports his conclusion, but his opinions are ultimately connected to the data only by his *ipse dixit*. Because he fails to reliably apply sociological methods to the facts of the case, and his testimony will only serve to confuse and mislead the trier of fact, Jacobs' testimony should be excluded under Rule 702.

# II.   ARGUMENT

## A.   Jacobs' Opinions are Based on Insufficient Facts and Data

In an effort to characterize as unforeseeable the widespread theft of vulnerable vehicles lacking vital anti-theft components, Jacobs offers sweeping opinions: that the Kia Boyz trend "represents a complete break from *all prior theft patterns in American history*" and "was unforeseeable based on *any historical analysis of automobile theft patterns in America*." (Report at 2, 15 (emphasis added).) As support for his opinions, Jacobs claims to have conducted a comprehensive analysis, having purportedly analyzed "more than 150 articles, books, and reports examining vehicle theft in the United States." (*Id.* at 2; *see also* Dkt. 1793 ("Opp.") at 8:14–21.) But while Jacobs

1

broadly opines on <u>all</u> prior theft patterns, he focuses his comparative analysis on <u>one</u>: 1950s/'60s traditional joyriding.[1]

Defendants deny that Jacobs glosses over the next six decades of history, asserting that "he examined them and found almost no academic literature *on joyriding* during that period." (Opp. at 9:17–19 (emphasis added).) This conflicts with Defendants' later assertion that Jacobs "identified a remarkably stable cluster of behavioral characteristics that defined joyriding across more than six decades." (*Id.* at 15:21–22.) Nevertheless, Defendants' argument proves Plaintiffs' point: Jacobs' self-selected focus on traditional joyriding *ignores other theft patterns in the intervening decades*, underscoring the insufficiency of the facts and data underlying his opinions. What Defendants characterize as an "evidentiary void" and "gap in the historical record" (*id.* at 9:7, 10:14) is in reality a hole in Jacobs' factual foundation.

Defendants next argue that because a court admitted a historian who relied on reports from 1931, 1949, 1953, and 1952 to opine about conduct in 1952 (*Id.* at 10:22–24), Jacobs should be able to offer opinions about "*all prior theft patterns in American history*" based primarily on his understanding of 1950s/'60s joyriding. The comparison is inapposite.

Jacobs' report acknowledges that theft rates peaked in 1991 (decades after the timeframe he studies), yet he offers no account of theft patterns during this period. (Report at 12.) Despite his emphasis on four manufactured pillars of distinction, Jacobs makes no effort to apply his analysis to this period (the height of vehicle thefts in American history)—e.g., why thieves stole (peer recognition vs. profit), what vehicle types were targeted (common vs. luxury/muscle cars), from where the

---

[1] Although Jacobs' report makes passing reference to "professional" theft for profit, he fails to cite authority for his cursory assertions. For example, Jacobs states that professional thieves target high-value vehicles for parts—but he offers no support for this statement and ignores patterns targeting common, high-volume vehicles with a high market demand for used parts. (*See* Report at 7.) Likewise, he makes only passing reference to "other amateur thieves" and theft patterns. (*Id.* at 11, 13.)

vehicles were taken (low-income vs. affluent neighborhoods), or how the stolen vehicles were treated (smashed windows vs. given a wash). (*See id.*) Indeed, Jacobs' report is devoid of any in-depth analysis of automobile theft patterns of the 1970s, 1980s, 1990s, or 2000s (*see id.* at 10–13)—and this critical lack of data bears out in his unreliable testimony.[2]

As Defendants state, "[t]he Rule 702(b) sufficiency question is whether Jacobs had sufficient factual grounds to draw his conclusions." (Opp. at 14:12–13.) He does not. Jacobs admittedly lacks sufficient data to opine, as he purports to do, on "all prior theft patterns in American history," and whole sections of his report amount to conclusory statements without citation to supporting facts. (*See generally* Report.) Defendants argue that Jacobs' opinions can rest on the "weight of [his] bibliography," but in doing so, they wrongly equate quantity with sufficiency. (*Id.* at 8:22–23.)

**B.      Jacobs Does Not Reliably Apply Sociological Methods to the Facts**

Defendants claim that because Jacobs opted to perform only a qualitative analysis (i.e., drawing behavioral patterns from his review of primarily academic literature), we should defer to his "knowledge and experience." (Opp at 14:28–15:3.) The reliability inquiry, however, tests the soundness of an expert's methodology—and the problem here is that Jacobs' selective citation of sociohistorical literature lacks objectivity, which is key to the reliability of a qualitative analysis.

Specifically, not only does Jacobs unreasonably restrict his comparative

---

[2] When asked a basic question about *prior automobile theft patterns in American history*, Jacobs admittedly lacks the data to answer: "Q. Were any of the vehicles being stolen for transportation in the '70s, '80s or '90s? A. I do not have an opinion on that or data to support one way or the other." (Dkt. 1557-3 ("Dep.") at 44:1–5.)

Likewise, although Jacobs emphasizes the violence and "conspicuousness" of broken windows as a defining feature of Kia Boyz thefts, when asked about *prior automobile theft patterns in American history* involving this feature, Jacobs cannot answer: "Q. Prior to the year 2000 did thieves break windows to enter cars? A. I can't honestly answer that they did or did not." (*Id.* at 44:16–19; *see also* Report at 15 ("They brazenly showed off the broken window to every car and person they passed by") and 16 ("the Kia Boyz violently smashed windows"); *see also* Dep. at 44:6–13.)

3

analysis to 1950s/'60s traditional joyriding (discussed *supra*), but he further ignores conflicting evidence within that subset of data. Defendants incorrectly state that "Plaintiffs point to a single passage" as evidence of Jacobs' cherry-picked data. (Opp. at 18:18–21.) In reality, Plaintiffs cite several examples of Jacobs' pattern of selecting data in support of his conclusion and disregarding contrary findings. (*See* Dkt. 1557 ("Mot.") at 7:6–10 (citing Dep. at 95:2–7, 96:3–97:10, 97:23–98:9).)

By way of illustration, Plaintiffs highlight the direct conflict between Jacob's key opinion that traditional joyriders "targeted aspirational luxury and muscle cars" (Report at 2; *see also id.* at 8–9) with the statement by Heitmann & Morales that in the 1960s "thieves, primarily joyriders, preferred the common vehicle over luxury and European models." (Dep. at 38:3–39:11; *see also* Dkt. 1794-5 at 8–9.) Bafflingly, Defendants accuse Plaintiffs of misrepresenting this source to "fabricate a conflict with Jacobs's analysis." (Opp. at 19:1–2.) Defendants' argument is confusing,[3] but the conflict is clear and direct.

Defendants further complain that Jacobs cited McCaghy for a specific proposition (the "motivational typology of joyriders, not for the demographic or geographic profile of thieves") and they remarkably argue that, "Given Jacobs's purpose in citing McCaghy, Subrogation Plaintiffs' question about whether McCaghy 'refuted' Wattenberg & Balistrieri's geographic findings misses the mark; those findings are irrelevant to the proposition for which Jacobs actually used the source."

---

[3] Defendants contend that the passage cited "does not characterize what joyriders *aspired* to drive" and acknowledge that the Chevrolet's status as most stolen car was not due to "joyrider desire but to its 'ignition lock arrangement.'" (Opp. at 19:3-8.) The point is the source indicates 1960s joyriders targeted the "common vehicle"—not, as Jacobs asserts, "aspirational luxury and muscle cars"—and more importantly, that Jacobs willfully ignores this conflicting data from "the seminal work on auto theft in America" (Report at 5), which he otherwise heavily cites.

4

(*Id.* at 19:16–21.[4]) Again, Defendants' argument proves the point: Jacobs wants to choose and take only the beneficial data from a source while ignoring data in the very same source that contradicts his other opinions. That's classic cherry picking.

Defendants also take issue with the contention that Jacobs was always going to find the Kia Boyz' distinguishable from the 1950s/'60s joyriders. (*See* Mot. at 7:25–8:10 (quoting testimony); Opp. at 17:21–18:15.) But once again, their argument proves the point. According to Defendants, Jacobs "was articulating the methodological premise of historical sociology—that human behavior must be understood in its social context, *and that predicting behavior across dramatically different social environments requires accounting for those differences*." (*Id.* at 18:4–7 (emphasis added).)

Although Jacobs contends that the Kia Boyz and traditional joyriders both stole vehicles "to gain exalted status with their peers" (Report at 5), he makes no effort to account for their differences in peer status-seeking behaviors across the "dramatically different social environments" of the 1950s/'60s (with fixed rotary landlines) and the 2000s (with social media and viral challenges, where the brag has a bigger reach). Instead, Jacobs simply speculates:

> Granted, the joyriders of the 1950s and 1960s did not have TikTok, YouTube, or other social media to boast about their deeds. But even if they did, they likely would never have broadcasted their activities on such platforms. This brand-new fad of conspicuous theft is unforeseeable as a historical matter; it is only possible to cultivate today, in an era obsessed with social media and self-image.

---

[4] Defendants further assert that "McCaghy's data present no conflict with Jacobs's opinions." (Opp. at 19:21–25 (quoting McCaghy).)  But reading the subsequent sentences of the quoted text reveals otherwise. (*Compare* Dkt. 1794-6 at 11 ("But it is also apparent that this group does not account for the majority of juvenile auto thieves.") *with* Report at 9 (citing study finding that "more than half of all auto thieves in Detroit were socially well-adjusted teenage boys coming from families with above-average incomes and homes located in higher end neighborhoods.").)

5

(*Id.* at 15.) Again, this reveals Jacobs was *always* going to find the Kia Boyz' distinguishable from the 1950s/'60s joyriders—without performing the required accounting for differences in social environments. Jacobs merely speculates in lieu of applying sociological principles or methods.

Plaintiffs do not, as Defendants suggest, contend that "contextual analysis is disqualifying." (Opp. at 18:10.) Quite the opposite: it is Jacobs' failure to perform this requisite contextual analysis and apply the "methodological premise of historical sociology" that is disqualifying.

## C.    Jacobs' Testimony Will Confuse the Foreseeability Standard

Finally, Defendants deny that Jacobs equates foreseeability with certainty because the language in his report refers to "anticipatable likelihood, not inevitable certainties." (*Id.* at 7:11–15.) Terminology aside, when you look under the hood of Jacobs' opinions, one thing is clear: he would not find the widespread theft of vulnerable vehicles lacking vital anti-theft components foreseeable in the absence of certain, directly equivalent historical precedent—as Defendants put it, "a viral-TikTok-driven theft trend targeting a specific design vulnerability for fun." (*Id.* at 7:16–18.)

If, as Defendants contend, social media amplification is the defining aspect of "this particular phenomenon," then Jacobs' entire comparative analysis of the Kia Boyz and the traditional joyriders of the 1950s and 1960s is unhelpful because, as Jacobs recognizes, the latter "did not have TikTok, YouTube, or other social media to boast about their deeds." (Report at 15.)

That aside, Jacobs describes four features that ostensibly make the Kia Boyz trend "historically unprecedented" and therefore unforeseeable. (*Id.* at 6.) Fundamentally, the "unprecedented" pattern is that of **status-seeking youths** (amplifying their bragging rights via social media, as mentioned above[5]) targeting

---

[5] Notably, Jacobs did not review any sociological studies on social media trends. (Dep. at 111:17–112:10.)

6

**affordable cars** in **low-income neighborhoods** and **using destructive methods (e.g., breaking car windows)** to facilitate the thefts.

Jacobs cannot reasonably claim these features were individually absent from all prior theft patterns in American history. Instead, he appears to require *all features together, in combination,* to find a historical analog and therefore foreseeability.[6] (*See id.* at 18.) But this misapplication of the foreseeability standard will only serve to confuse and mislead the trier of fact and is therefore unhelpful.

## III.   CONCLUSION

Jacobs lacks sufficient factual grounds to draw his conclusions, does not reliably apply sociological methods to the facts, and will confuse and mislead the trier of fact as to the foreseeability standard. Subrogation Plaintiffs therefore respectfully request that their Rule 702 Motion to Exclude Expert Testimony of Professor Andrew James (A.J.) Jacobs be granted.

DATED: April 10, 2026          COZEN O'CONNOR

                                By:  */s/ Megan Peitzke*
                                    Elliott R. Feldman
                                    Megan R. Peitzke
                                    Julie A. Line

DATED: April 10, 2026          GROTEFELD HOFFMANN LLP

                                By:  */s/ William J. Hoffmann*
                                    William J. Hoffmann
                                    Adam Romney
                                    Susan Benson

---

[6] Interestingly, despite Defendants' assertion that "Jacobs combed the record and found no analog", Jacobs himself describes joyriding as "the very category of crime that was *analogous* to the Kia Boyz." (*Compare* Opp. at 4:23–24 *with* Report at 17 (emphasis added).)

7

DATED: April 10, 2026         LAW OFFICES OF ROBERT A. STUTMAN, P.C.

                              By: */s/ Daniel Hogan*
                                  Daniel Hogan
                                  Timothy E. Cary
                                  Thomas Paolini
                                  W. Diane Wayland

DATED: April 10, 2026         BERGER KAHN, A Law Corporation

                              By: */s/ Stephanie Ng*
                                  Christine Forsline
                                  Stephanie Ng

                              *Attorneys for Subrogation Insurance Plaintiffs*

8

## CERTIFICATE OF SERVICE

I certify that on April 10, 2026, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

*/s/ Hal J. Kleinman*
Hal J. Kleinman

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Subrogation Plaintiffs certifies that this brief contains 2,169 words, which complies with the word limit of L.R. 11-6.1.

DATED: April 10, 2026             COZEN O'CONNOR

                                  By: */s/ Megan Peitzke*
                                      Elliott R. Feldman
                                      Megan R. Peitzke
                                      Julie A. Line

DATED: April 10, 2026             GROTEFELD HOFFMANN LLP

                                  By: */s/ William J. Hoffmann*
                                      William J. Hoffmann
                                      Adam Romney
                                      Susan Benson

DATED: April 10, 2026             LAW OFFICES OF ROBERT A. STUTMAN, P.C.

                                  By: */s/ Daniel Hogan*
                                      Daniel Hogan
                                      Timothy E. Cary
                                      Thomas Paolini
                                      W. Diane Wayland

DATED: April 10, 2026             BERGER KAHN, A Law Corporation

                                  By: */s/ Stephanie Ng*
                                      Christine Forsline
                                      Stephanie Ng

                                  *Attorneys for Subrogation Insurance Plaintiffs*