**JENNER & BLOCK LLP**
Sati Harutyunyan (SBN 313138)
SHarutyunyan@jenner.com
Madeline P. Skitzki (SBN 318233)
MSkitzki@jenner.com
Effiong Dampha (SBN 323554)
EDampha@jenner.com
Jenna L. Conwisar (SBN 341521)
JConwisar@jenner.com
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199

**JENNER & BLOCK LLP**
Peter J. Brennan (*pro hac vice*)
PBrennan@jenner.com
Andrianna D. Kastanek (*pro hac vice*)
AKastanek@jenner.com
353 North Clark Street
Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION - SANTA ANA**

| | |
|---|---|
| In re: KIA HYUNDAI VEHICLE THEFT MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION<br><br>*This document relates to:*<br>ALL SUBROGATION CASES | Case No. 8:22-ml-3052-JVS (KESx)<br><br>**DEFENDANT HYUNDAI MOTOR AMERICA'S OPPOSITION TO SUBROGATION PLAINTIFF STATE AUTOMOBILE MUTUAL INSURANCE COMPANY'S MOTION IN LIMINE TO EXCLUDE THE JUNE 5, 2023 NHTSA LETTER FROM CEM HATIPOGLU**<br><br>Judge: The Honorable James V. Selna<br>Ctrm: 10C, 10th Floor<br>Date: May 4, 2026<br>Time: 3:00 PM |

# TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 5

I. The June 5 Letter Reflects NHTSA's Authoritative Interpretation of FMVSS 114. ........ 5

A. Lacking "Legal Authority" Is Not a Reason to Exclude Evidence. ........ 5

B. The June 5 Letter Is Relevant and Not Unduly Prejudicial ........ 6

II. The June 5 Letter Is Not Inadmissible Hearsay. ........ 8

A. The June 5 Letter Is a Verbal Act—Not Hearsay. ........ 8

B. The June 5 Letter Falls Under the Rule 803(8) Public-Records Hearsay Exception. ........ 9

III. Rule 703 Independently Permits HMA's Expert Bonanti to Testify About the June 5 Letter. ........ 12

CONCLUSION ........ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Baker v. Firestone Tire & Rubber Co.*,
793 F.2d 1196 (11th Cir.1986) .......... 9

*Beech Aircraft Corp. v. Rainey*,
488 U.S. 153 (1988) .......... 9, 10

*City of Arcadia v. U.S. EPA*,
265 F. Supp. 2d 1142 (N.D. Cal. 2003) .......... 8

*Cohen v. Gen. Motors Corp.*,
534 F. Supp. 509 (W.D. Mo. 1982) .......... 7

*Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*,
No. 08-8525, 2010 WL 2035800 (C.D. Cal. May 19, 2010) .......... 5

*Contini v. Hyundai Motor Co.*,
840 F. Supp. 22 (S.D.N.Y. 1993) .......... 7

*Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*,
33 F.4th 1202 (9th Cir. 2022) .......... 6

*Ellsworth v. Sherne Lingerie, Inc.*,
303 Md. 581 (1985) .......... 6

*Guild v. Gen. Motors Corp.*,
53 F. Supp. 2d 363 (W.D.N.Y. 1999) .......... 7

*Hana Fin., Inc. v. Hana Bank*,
735 F.3d 1158 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015) .......... 5

*Heath v. Tristar Prods., Inc.*,
No. 17-2869, 2021 WL 3082564 (D. Nev. July 21, 2021) .......... 11

*Hines v. Brandon Steel Decks, Inc.*,
886 F.2d 299 (11th Cir. 1989) .......... 10, 11

*Hoog v. Dometic Corp.*,
No. 20-272, 2024 WL 1244082 (W.D. Okla. Mar. 22, 2024) .......... 12

*Johnson v. City of Pleasanton*,
982 F.2d 350 (9th Cir. 1992) .......... 9

*Kisor v. Wilkie*,
588 U.S. 558 (2019) .......... 6, 7

*Korematsu v. United States*,
584 F. Supp. 1406 (N.D. Cal. 1984) .......... 8

*Livingston v. Isuzu Motors, Ltd.*,
910 F. Supp. 1473 (D. Mont. 1995) .......... 7

*Mazuma Holding Corp. v. Bethke*,
1 F. Supp. 3d 6 (E.D.N.Y. 2014) .......... 5

*Mueller v. Abdnor*,
972 F.2d 931 (8th Cir. 1992) .......... 8

*In re Multi-Piece Rims Prods. Liab. Litig.*,
545 F. Supp. 149 (W.D. Mo. 1982) .......... 7

*Multiple Energy Techs., LLC v. Under Armour, Inc.*,
No. 20-664, 2025 WL 82304 (W.D. Pa. Jan. 13, 2025) .......... 12

*Old Chief v. United States*,
519 U.S. 172 (1997) .......... 7

*Quinn v. Everett Safe & Lock, Inc.*,
53 F. Supp. 3d 1335 (W.D. Wash. 2014) .......... 11

*Ruiz v. Fernandez*,
949 F. Supp. 2d 1055 (E.D. Wash. 2013) .......... 10

*Sullivan v. Dollar Tree Stores, Inc.*,
623 F.3d 770 (9th Cir. 2010) .......... 10, 11, 12

*Stonehocker v. Gen. Motors Corp.*,
587 F.2d 151 (4th Cir. 1978) .......... 6

*Suzuki v. Helicopter Consultants of Maui, Inc.*,
No. 13-575, 2016 WL 9244848 (D. Haw. Oct. 25, 2016) .......... 11

*United States v. Bundy*,
No. 16-46, 2017 WL 4584115 (D. Nev. Oct. 13, 2017) .......... 5

*United States v. Haischer*,
780 F.3d 1277 (9th Cir. 2015) .......... 7

*United States v. NCR Corp.*,
960 F. Supp. 2d 793 (E.D. Wis. 2013) .......... 12

*United States v. Ramirez-Jiminez*,
967 F.2d 1321 (9th Cir. 1992) .......... 6

*Valtierra v. City of Los Angeles*,
99 F. Supp. 3d 1190 (C.D. Cal. 2015) .......... 12

*In re Viagra Prods. Liab. Litig.*,
658 F. Supp. 2d 950 (D. Minn. 2009) .......... 12

*Willis v. Abbott Laboratories*,
No. 15-57, 2017 WL 5988215 (W.D. Ky. Dec. 1, 2017) .......... 8

**Statutes**

49 U.S.C. § 30112 .......... 3

49 U.S.C. § 30118 .......... 8

**Court Rules**

Fed. R. Evid. 401 .......... 1, 6

Fed. R. Evid. 403 .......... 1, 6, 7

Fed. R. Evid. 703 .......... 2, 12

Fed. R. Evid. 801 .......... 8

Fed. R. Evid. 803 .......... *passim*

**Other Authorities**

49 C.F.R. § 571.114 .......... 2, 4

71 Fed. Reg. 17752 (Apr. 7, 2006) .......... 2, 3

**INTRODUCTION**

State Auto asks this Court to exclude the June 5, 2023 National Highway Traffic Safety Administration ("NHTSA") letter, signed by Dr. Cem Hatipoglu, Acting Associate Administrator for Enforcement, Dkt. 1554-15 ("June 5 Letter"). State Auto presents no legitimate basis for exclusion, and its motion, Dkt. 1722 ("Mot."), should thus be denied.

State Auto's primary argument is that the June 5 Letter's author lacked authority to speak for NHTSA on questions of regulatory interpretation. Mot. at 3–6. That argument is self-defeating: State Auto's own motion identifies NHTSA Chief Counsel Ann Carlson as the official holding exclusive interpretative authority—and her office was involved in drafting the June 5 Letter. *Id.* at 5. Plus, seventeen days after NHTSA sent the June 5 Letter, Chief Counsel Carlson herself signed and sent another letter with identical language. The NHTSA official who State Auto concedes can speak did speak—and she said the same thing that Hatipoglu said in the June 5 Letter: there is no defect or noncompliance. The June 5 Letter carries NHTSA's authoritative imprimatur.

But State Auto's administrative-law argument is beside the point. It moves to exclude the June 5 Letter from evidence without identifying any evidentiary law that supports excluding a government communication because its author lacked interpretive authority—because none exists. The June 5 Letter is relevant under Rule 401, its probative value far exceeds any risk of unfair prejudice under Rule 403, and courts routinely admit agency compliance determinations in cases like this one where a Plaintiff argues that a product is defective.

Nor is the June 5 Letter hearsay. A government agency's statement articulating a decision (and the reasons for it) is a verbal act with independent legal significance, not an assertion offered for its truth. Even if it were hearsay, it falls within Rule 803(8)'s public-records exception as a statement of a public office

setting out its activities—and State Auto cannot overcome the strong presumption of trustworthiness that attaches to public records.

Rule 703 provides an independent basis for admissibility regardless. HMA's regulatory compliance expert Christopher Bonanti relied on the June 5 Letter, and he may therefore testify about it and its contents. Regulatory-compliance experts routinely consult agency statements about the standards they administer. And the probative value of the June 5 Letter in helping the jury evaluate his opinion substantially outweighs any risk of unfair prejudice—which cross-examination may address.

## BACKGROUND

Federal Motor Vehicle Safety Standard 114 is a theft-protection standard administered and enforced by NHTSA. It requires only that a starting system, when activated, prevent normal activation of the vehicle's engine without a key or an equivalent device. 49 C.F.R. § 571.114, S5.1. The standard also specifies a test procedure—and that procedure defines the precise conduct FMVSS 114 is designed to prevent.

FMVSS 114 does not require an engine immobilizer. It sets a performance standard—*prevent normal activation without a key*—and leaves manufacturers free to satisfy that standard through any technology they choose. *See* 71 Fed. Reg. 17752, 17753 (Apr. 7, 2006) (declining to mandate specific anti-theft technology and preserving manufacturer choice). A vehicle complies with FMVSS 114 if its starting system, as tested, prevents starting the vehicle through the means the standard's test procedure contemplates—not through any means a criminal might try.

State Auto may seek to establish that the vehicle at issue in this bellwether, a 2019 Hyundai Elantra, was susceptible to a technique that spread through TikTok and other social media platforms starting in 2021 associated with a group calling itself the "Kia Boyz." That technique required thieves to crash through a window, break open the steering column, destroy the components holding the ignition

cylinder in place, remove the ignition lock cylinder, and then use a USB cable to simulate the rotation of the cylinder and start the vehicle. In other words, the theft method entailed dismantling a substantial part of the vehicle's starting-system architecture—and thus could hardly be described as involving "normal activation."

When the theft trend first emerged on social media, NHTSA began closely monitoring it. *See, e.g.*, June 5 Letter. NHTSA repeatedly met with Hyundai Motor America ("HMA") to determine the causes contributing to the thefts, reviewed the scope of differing software and hardware in the affected models, and received regular updates on the companies' action plans. *See, e.g.*, *id.* NHTSA also coordinated with local authorities and contacted numerous national law enforcement associations to spread awareness of available countermeasures. *See, e.g.*, *id.* During that oversight process, Otto Matheke III, Director of NHTSA's Office of Vehicle Safety Compliance documented NHTSA's compliance analysis: Hyundai vehicles satisfied FMVSS 114's requirement at the time of first retail delivery, *see* 49 U.S.C. § 30112(b)(2); and that the Kia Boyz theft method did not relate to "normal activation." Declaration of Peter J. Brennan In Support of HMA's Oppositions to Subrogation Plaintiff State Automobile Mutual Insurance Company's Motion in Limine ("Brennan Decl."), Ex. 1 ("Matheke Email").

By early 2023, the Kia Boyz theft trend had drawn national attention. Eighteen state Attorneys General—led by California Attorney General Rob Bonta—sent a joint letter to NHTSA demanding that NHTSA find a safety defect in certain Hyundai vehicles and mandate a recall. *See* June 5 Letter. Multiple United States Senators, including Senator Richard Blumenthal and Senate Majority Leader Charles Schumer, made the same demand. Brennan Decl., Ex. 2 ("June 22 Letter"). NHTSA declined.

On June 5, 2023, in a letter signed by Cem Hatipoglu, NHTSA's Acting Associate Administrator for Enforcement, NHTSA responded to the Attorneys General (on NHTSA letterhead) as follows:

> At this time, NHTSA has not determined that this issue constitutes either a safety defect or noncompliance requiring a recall under the National Traffic and Motor Vehicle Safety Act, 49 U.S.C. Chapter 301. The federal Motor Vehicle Safety Standard identified in your letter, FMVSS No. 114, does not require an engine immobilizer. *See* 49 C.F.R. § 571.114. Also, the test procedure specified in that standard does not contemplate actions taken by criminal actors to break open or remove part of the steering column and take out the ignition lock to start a vehicle. *See id.* § 571.114, S6. Here, the safety risk arises from unsafe use of a motor vehicle by an unauthorized person after taking significant destructive actions to parts of the vehicle.

June 5 Letter. The Department of Transportation certified the document as "a letter from NHTSA." Dkt. 1554-15.

Seventeen days later, on June 22, 2023, NHTSA Chief Counsel Ann Carlson wrote separately to Senator Blumenthal. Her letter reached the same conclusion in near-identical language: "NHTSA has not determined that this issue constitutes a safety defect or noncompliance requiring a recall" because FMVSS 114 "does not require an engine immobilizer" and its test procedure "does not contemplate actions taken by criminal actors to break open or remove part of the steering column and take out the ignition lock to start a vehicle." June 22 Letter. This is no coincidence—as State Auto's own motion acknowledges, the "Chief Counsel was consulted about the June 5, 2023[] letter," and was involved in "proposed edits of Hatipoglu's letter . . . throughout the month of May 2023." Mot. at 5 (citing Dkt. No. 1115 at 4, 5, 7, 11, 24, 25, 26, 27, 30, 35, 50, 59).

## ARGUMENT

**I. <u>The June 5 Letter Reflects NHTSA's Authoritative Interpretation of FMVSS 114.</u>**

State Auto's lead argument is an administrative-law brief masquerading as a motion in limine. It argues that the signatory of the June 5 Letter, Cem Hatipoglu, lacked authority to issue regulatory interpretations on NHTSA's behalf, and that only NHTSA's Chief Counsel can bind the agency on questions of regulatory construction. Mot. at 3–6. That argument fails on two independent grounds. First, it identifies no basis for exclusion under the Federal Rules of Evidence—or any other authority. Nothing supports excluding a government agency communication on the ground that its author lacked internal administrative authority. Second, it is wrong on its own terms. As mentioned, the Chief Counsel's office was actively involved in drafting the June 5 letter and signed a near identical letter seventeen days later. Mot. at 5; June 22 Letter. State Auto's administrative-law argument collapses on itself.

**A. Lacking "Legal Authority" Is Not a Reason to Exclude Evidence.**

Motions in limine must "state with specificity why such evidence is inadmissible." *Colton Crane Co., LLC v. Terex Cranes Wilmington, Inc.*, No. 08-8525, 2010 WL 2035800, at *1 (C.D. Cal. May 19, 2010). They are not a vehicle to argue the merits. *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir. 2013), *aff'd*, 574 U.S. 418 (2015). So, they must be grounded in the Federal Rules of Evidence or other evidentiary doctrines. *United States v. Bundy*, No. 16-46, 2017 WL 4584115, at *3 (D. Nev. Oct. 13, 2017).

State Auto's lead argument satisfies none of these requirements. Although State Auto dedicates half its motion to whether Hatipoglu had sufficient authority to speak for NHTSA on the interpretation of FMVSS 114, it never explains why that warrants exclusion. It cites no rule of evidence, no evidentiary doctrine, and no case supporting exclusion of a government communication on that basis—because none exists. *See, e.g.*, *Mazuma Holding Corp. v. Bethke*, 1 F. Supp. 3d 6, 12 (E.D.N.Y.

2014) (holding that an agency's disclaimer that its findings are non-binding "does not control their admissibility in federal civil proceedings, wherein admissibility of evidence is governed by the Federal Rules of Evidence" (citation modified)). State Auto has, in sum, failed to "state with specificity why [the NHTSA Letter] is inadmissible." *Colton Crane*, 2010 WL 2035800, at *1.

### B. The June 5 Letter Is Relevant and Not Unduly Prejudicial

Reading its motion charitably, State Auto might be arguing that the June 5 Letter is irrelevant under Rule 401 or substantially more prejudicial than it is probative under Rule 403. Neither argument holds.

The June 5 Letter is straightforwardly relevant and substantially probative. Relevance under Rule 401 and probative value under Rule 403 involve the same question: does the evidence tend to make a material fact more or less likely? *See, e.g.*, *United States v. Ramirez-Jiminez*, 967 F.2d 1321, 1327 (9th Cir. 1992). FMVSS 114 compliance is a central issue in this case. It bears directly on the applicable standard of care. *Ellsworth v. Sherne Lingerie, Inc.*, 303 Md. 581, 602 (1985) ("[C]ompliance with a [federal legal] standard is evidence of due care"). And NHTSA's determination that these vehicles comply—plus the regulatory reasoning underlying that determination (the Kia Boyz method does not involve "normal activation")—makes compliance more likely. *See, e.g.*, *Stonehocker v. Gen. Motors Corp.*, 587 F.2d 151 (4th Cir. 1978) (reversing a district court because it erred in refusing to admit evidence of manufacturer's compliance with an FMVSS). In fact, it establishes it conclusively.

Applying State Auto's own administrative-law frame (despite its irrelevance to evidentiary admissibility) only sharpens this point. *See Kisor v. Wilkie*, 588 U.S. 558, 574–79 (2019); *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.*, 33 F.4th 1202, 1217 (9th Cir. 2022). Under administrative law's *Auer* deference framework, the June 5 Letter reflects NHTSA's fair and considered judgment: before issuing it, NHTSA monitored the Kia Boyz theft trend, met with automotive

companies, reviewed contributing software and hardware vulnerabilities, coordinated with law enforcement nationwide, and issued a Consumer Alert. *See Kisor*, 588 U.S. at 577–78. The June 5 Letter implicates NHTSA's core expertise—whether physically destroying a steering column and removing an ignition lock cylinder constitutes "normal activation" of an engine is precisely the kind of question NHTSA exists to answer. *See id.* at 578. And the June 5 Letter represents NHTSA's official position: Hatipoglu sent it on NHTSA letterhead as Acting Associate Administrator for Enforcement; the Department of Transportation certified it as "a letter from NHTSA," Dkt. 1554-15; and the Chief Counsel ratified it with a nearly identical letter soon after, June 22 Letter. *See Kisor*, 588 U.S. at 577. Whatever deference standard applies—none is required here—the June 5 Letter is a considered, expert, and authoritative agency determination that these vehicles comply with FMVSS 114.

State Auto has been speaking out of both sides of its mouth on this issue: although it has effectively conceded FMVSS 114 compliance, it continues to dispute it. *See* Dkt. 1847-2 ("RSGD") at ¶¶ 21, 49. State Auto cannot simultaneously contest compliance and argue that evidence bearing on compliance is irrelevant.

The June 5 Letter also presents no meaningful risk of unfair prejudice. Under Rule 403, "unfair prejudice" means an undue tendency to suggest a decision on an improper basis—most commonly, an emotional basis. Fed. R. Evid. 403, advisory committee note; *see also Old Chief v. United States*, 519 U.S. 172, 180 (1997); *United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015). The only prejudice State Auto can identify is that the jury might find the June 5 Letter persuasive on the federal-compliance question. But persuasive evidence is not *unfairly* prejudicial evidence. A jury that credits NHTSA's compliance assessment would be deciding the case on an entirely proper basis.

Because they are relevant and not unfairly prejudicial, courts routinely admit NHTSA correspondence communicating its compliance determinations in cases

involving allegedly defective products. *See, e.g.*, *Guild v. Gen. Motors Corp.*, 53 F. Supp. 2d 363, 365 (W.D.N.Y. 1999); *Livingston v. Isuzu Motors, Ltd.*, 910 F. Supp. 1473, 1496–97 (D. Mont. 1995); *Contini v. Hyundai Motor Co.*, 840 F. Supp. 22, 24 (S.D.N.Y. 1993); *In re Multi-Piece Rims Prods. Liab. Litig.*, 545 F. Supp. 149, 152–53 (W.D. Mo. 1982); *Cohen v. Gen. Motors Corp.*, 534 F. Supp. 509, 513 (W.D. Mo. 1982). The Court should do the same here.

## II. The June 5 Letter Is Not Inadmissible Hearsay.

State Auto argues that the June 5 Letter is inadmissible hearsay and that no exception applies. That is wrong twice over. The June 5 Letter is not hearsay—it is a verbal act that HMA intends to offer to prove what NHTSA decided and why. But even if it were hearsay, it would fall squarely within Rule 803(8)'s public-records exception.

### A. The June 5 Letter Is a Verbal Act—Not Hearsay.

A government agency's statement is not hearsay when offered to show that the agency made a decision and the reasons for it. *See, e.g.*, *Korematsu v. United States*, 584 F. Supp. 1406, 1417 (N.D. Cal. 1984) (admitting government letters "as evidence that the statements were made"). The hearsay rule also excludes "verbal acts"—statements that "affect[] the legal rights of the parties or is a circumstance bearing on conduct affecting their rights." Fed. R. Evid. 801(c)(2), advisory committee note. The June 5 Letter is not hearsay under both grounds.

First, because it affected HMA's and other regulated entities' legal rights in numerous ways, the June 5 Letter is admissible as a non-hearsay verbal act. NHTSA had authority to initiate a mandatory recall upon an initial finding of noncompliance. *See* 49 U.S.C. § 30118(a). It chose not to, and the June 5 Letter records that choice—foreclosing the recall process as a legal consequence independent of whether NHTSA's reading of FMVSS 114 is ultimately correct. *See City of Arcadia v. U.S. EPA*, 265 F. Supp. 2d 1142, 1158 n.20 (N.D. Cal. 2003) (admitting a regulatory board's articulation of its enforcement position as non-hearsay "verbal acts"). The

June 5 Letter also interprets "normal activation" in a way that prospectively determines the rights of regulated entities, and it supports HMA's preemption defense—a defense rooted in NHTSA's no-noncompliance determination. Other courts have admitted similar compliance determinations as non-hearsay "verbal acts" because they affect preemption analysis. *See, e.g., Willis v. Abbott Laboratories*, No. 15-57, 2017 WL 5988215, at *9 (W.D. Ky. Dec. 1, 2017).

Second, even if the June 5 Letter does not itself carry operative legal force, it constitutes circumstances "bearing on conduct" affecting HMA's rights. *Mueller v. Abdnor*, 972 F.2d 931, 937 (8th Cir. 1992). The June 5 Letter followed months of sustained oversight activity—monitoring compliance, coordinating with law enforcement, reviewing company action plans, and declining to issue a recall—all of which are susceptible to multiple interpretations. *See, e.g.*, June 5 Letter; June 22 Letter; Matheke Email. The June 5 Letter records and contextualizes that conduct. It is therefore admissible as a verbal part of an act.

**B. The June 5 Letter Falls Under the Rule 803(8) Public-Records Hearsay Exception.**

Rule 803(8) exempts from hearsay any "record or statement of a public office" that sets out "factual findings from a legally authorized investigation," unless "the source of information or other circumstances indicate a lack of trustworthiness." The June 5 Letter is unquestionably a "statement of a public office" that sets out "the office's activities." State Auto raises two objections: that the June 5 Letter is untrustworthy and that it states a pure legal conclusion. Neither has merit.

**1. State Auto Cannot Overcome the Presumption of Trustworthiness**

Rule 803(8) presumes that public records are trustworthy. *Johnson v. City of Pleasanton*, 982 F.2d 350, 352–53 (9th Cir. 1992). The party opposing admission "bears the burden of coming forward with enough negative factors to persuade a court" that a public record "should not be admitted"—a heavy burden. *Id.* State Auto

has not even attempted to bear it. Its trustworthiness argument consists of three sentences reciting the *Beech Aircraft* factors—timeliness, investigator skill, whether a hearing was held, and possible bias—and declaring, without analysis, that each weighs against admission. Mot. at 8. Reciting factors without analysis does not overcome a presumption. In fact, the four *Beech Aircraft* factors all favor admission.

The bias factor asks whether the agency had a litigation-driven motivation to reach a particular result. *See Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 167 n. 11 (1988). Here, NHTSA is not a party to this litigation and cannot have had a litigation-driven motivation to reach a particular result. Some courts also consider evidence of political motivation. *See, e.g.*, *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir.1986) (excluding a Congressional report). But, here, the political pressure ran the other way—18 Attorneys General and multiple United States Senators demanded a mandatory recall, and NHTSA declined. June 5 Letter; June 22 Letter. That resistance to political pressure reflects independence, not bias.

The remaining factors all also favor admission. On timeliness, the June 5 Letter followed months of sustained oversight activity. On investigator skill, any gap in Hatipoglu's individual qualifications is closed by the Chief Counsel's active drafting involvement throughout May 2023 and by Chief Counsel Carlson's independent confirmation of the same conclusion seventeen days later. On the absence of a formal hearing, courts routinely admit agency reports under Rule 803(8) where no formal hearing was held. *Ruiz v. Fernandez*, 949 F. Supp. 2d 1055, 1062–63 (E.D. Wash. 2013). In sum, the June 5 Letter is trustworthy.

**2. The June 5 Letter Mixes Fact and Law.**

Under *Sullivan v. Dollar Tree Stores, Inc.*, the public-records exception does not save "[p]ure legal conclusions." 623 F.3d 770, 777 (9th Cir. 2010); *see also Hines v. Brandon Steel Decks, Inc.*, 886 F.2d 299, 302 (11th Cir. 1989). State Auto seizes on *Sullivan* to argue that NHTSA's statement in the June 5 Letter that "FMVSS No. 114 does not require an engine immobilizer" is exactly such a

conclusion. Mot. at 7–8.[1] But that argument misapplies the "pure legal conclusion" standard in two key respects.

First, the June 5 Letter is sufficiently fact-based. *Sullivan*'s legal-conclusion bar targets naked statutory classifications untethered to factual investigation—not determinations that are legal in form but grounded in technical and empirical assessment. *See, e.g.*, *Sullivan*, 623 F.3d at 777; *Beech Aircraft*, 488 U.S. at 162–63. The June 5 Letter's conclusion that FMVSS 114 does not require an immobilizer flows directly from NHTSA's technical understanding of how ignition systems function, what the standard's test protocol contemplates, and what the Kia Boyz theft method involves. Those are determinations about cars, not determinations of pure law. Courts have admitted analogous mixed fact-and-law agency conclusions as factual findings under Rule 803(8). *Quinn v. Everett Safe & Lock, Inc.*, 53 F. Supp. 3d 1335, 1340 (W.D. Wash. 2014) (admitting a DOL letter that finds a USERRA violation); *Suzuki v. Helicopter Consultants of Maui, Inc.*, No. 13-575, 2016 WL 9244848, at *2–3 (D. Haw. Oct. 25, 2016) (admitting an environmental agency's hazard-risk determination); *Heath v. Tristar Prods., Inc.*, No. 17-2869, 2021 WL 3082564, at *7 (D. Nev. July 21, 2021) (admitting CPSC investigation closure letter). The June 5 Letter's assessment is no different in kind. *Sullivan* thus poses no impediment to admitting the June 5 Letter.

Second, *Sullivan*'s rationale does not extend to an agency's interpretation of its own regulation. *Sullivan* excluded the Department of Labor's ("DOL") conclusion that, under the Family and Medical Leave Act ("FMLA"), Dollar Tree was a "successor in interest" to a retail store whose lease it purchased (Factory 2-U). 623 F.3d at 777. The DOL based this conclusion on a multi-factor statutory test—over which it had no special authority. *Id.* at 776–77. The Ninth Circuit held that the

[1] Though it moves to exclude this statement, State Auto agrees with the substance: State Auto's counsel has acknowledged that FMVSS 114 "doesn't mandate immobilizers." RSGD 21.

DOL's "successor in interest" determination was a "[p]ure legal conclusion[]," beyond what Rule 803(8) permits. *Id.* at 777. But the court's concern was narrow: "'the jury would have no way of knowing whether the preparer of the report was cognizant of the requirements underlying the legal conclusion.'" *Id.* (quoting *Hines*, 886 F.2d at 303).

That concern does not arise here. Unlike a DOL investigator applying the FMLA's successorship factors, NHTSA is the authoritative source of the standard it is interpreting—it is the agency that wrote, administers, and enforces FMVSS 114. The narrow concern that *Sullivan* addresses disappears when the conclusion comes from an authorized interpreter. And Chief Counsel Carlson's letter should eliminate any remaining doubt: State Auto acknowledges that the Chief Counsel holds interpretive authority over FMVSS 114, Mot. at 4, and she exercised it by reaching the identical conclusion in identical language shortly after the June 5 Letter.

The June 5 Letter falls under Rule 803(8).

## III. <u>Rule 703 Independently Permits HMA's Expert Bonanti to Testify About the June 5 Letter.</u>

Rule 703 provides a separate and independent basis for admissibility. An expert may base an opinion on otherwise inadmissible evidence if experts in the relevant field would reasonably rely on that type of information. Fed. R. Evid. 703; *see also Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1197 n.2 (C.D. Cal. 2015); *In re Viagra Prods. Liab. Litig.*, 658 F. Supp. 2d 950, 967 (D. Minn. 2009) (holding that an expert may opine about otherwise inadmissible regulatory evidence). Then, at trial, the proponent may disclose those materials to the jury if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect. Fed. R. Evid. 703.

Bonanti's reliance on the June 5 Letter satisfies Rule 703. Regulatory compliance experts examining an agency's position on a specific vehicle standard would naturally consult the agency's statements about that standard. *Hoog v.*

*Dometic Corp.*, No. 20-272, 2024 WL 1244082, at *5 (W.D. Okla. Mar. 22, 2024) (permitting former NHTSA attorney to testify about NHTSA's standards and practices for vehicle safety recalls, relying in part on NHTSA's own records and agency reports); *see also United States v. NCR Corp.*, 960 F. Supp. 2d 793, 834 (E.D. Wis. 2013) ("experts in [the regulatory compliance] field do traditionally rely on government reports and regulatory investigations"); *Multiple Energy Techs., LLC v. Under Armour, Inc.*, No. 20-664, 2025 WL 82304, at *3 (W.D. Pa. Jan. 13, 2025) (holding that a former FDA official had "good grounds" for relying on FDA letters and regulatory documents as "the type of documents an expert reviewing whether statements are consistent with FDA regulations would rely upon").

The probative value of disclosing the June 5 Letter's contents to the jury substantially outweighs any prejudicial effect. *See supra* I.B. Introducing the June 5 Letter through expert testimony rather than as a standalone exhibit increases its probative value—Bonanti can explain its significance—while reducing the risk of unfair prejudice, since State Auto may cross-examine him about it at trial.

## **CONCLUSION**

For the foregoing reasons, HMA respectfully requests that the Court deny State Auto's motion in limine to exclude the June 5, 2023 NHTSA Letter signed by Cem Hatipoglu.

Dated: April 13, 2026

Respectfully Submitted,

By: */s/ Peter J. Brennan*

Sati Harutyunyan
Madeline P. Skitzki
Effiong Dampha
Jenna L. Conwisar
JENNER & BLOCK LLP
515 South Flower Street, Suite 3300
Los Angeles, CA 90071-2246
Telephone: +1 213 239 5100
Facsimile: +1 213 239 5199
SHarutyunyan@jenner.com
MSkitzki@jenner.com
EDampha@jenner.com
JConwisar@jenner.com

Peter J. Brennan (*pro hac vice*)
Andrianna D. Kastanek (*pro hac vice*)
JENNER & BLOCK LLP
353 North Clark Street
Chicago, IL 60654-3456
Telephone: +1 312 222 9350
Facsimile: +1 312 527 0484
PBrennan@jenner.com
AKastanek@jenner.com

Edward Susolik
John D. Van Ackeren
CALLAHAN & BLAINE
3 Hutton Centre Drive, Ninth Floor
Santa Ana, CA 92707
Telephone: +1 714 862 1081
Facsimile: +1 714 241 4445
ES@callahan-law.com
JVanAckeren@callahan-law.com

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants, certifies that this brief contains 4,073 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 13, 2026

*/s/ Peter J. Brennan*
Peter J. Brennan