UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | May 5, 2026 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

Present: The Honorable **James V. Selna, U.S. District Court Judge**

| | |
|---|---|
| Elsa Vargas | Not Present |
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| Not Present | Not Present |

**Proceedings:** **[IN CHAMBERS] Order Regarding NHTSA's Objections to Subrogation Plaintiffs' Subpoena [1416]**

Pursuant to this Court's order, the National Highway Traffic Safety Administration ("NHTSA") filed objections to Subrogation Plaintiffs' subpoena regarding over 700 responsive documents NHTSA has chosen to withhold or redact. (NHTSA Brief, Dkt. No. 1416.) Subrogation Plaintiffs filed a response. (Plaintiffs Brief, Dkt. No. 1463.)

For the following reasons, the Court **SUSTAINS-in-part** and **OVERRULES-in-part** NHTSA's objections.

## I. BACKGROUND

This dispute originates from a March 2024 subpoena that Subrogation Plaintiffs served upon NHTSA. (See January 26 Court Order, Dkt. No. 1297.) A full description of the this dispute's background is included in the Court's previous order, which involves "over 740 separate documents that were redacted in part or in full . . . ." (See generally January 26 Court Order.)

The Court's previous decision ordered the parties to meet and confer regarding the remaining disputed redactions in NHTSA's Vaughn Index. (Id. at 6; see Vaughn Index, Dkt. No. 1136-2.) After conferring, NHTSA "identified 15 withheld documents that it agreed to produce in full." (NHTSA Brief at 1.) Later, it "further identified two documents previously designated as confidential commercial information" that it also agreed to produce in full. (Id. at 2.) NHTSA asserts that the remaining documents are all protected by either (1) the deliberative process privilege, (2) attorney-client privilege,

or (3) the exemption for Confidential Commercial Information. (Id. at 1.) It also argues that the remaining withheld documents are irrelevant to Subrogation Plaintiffs' claims. (Id. at 8–10.) The Court rules on these objections here.

## II. DISCUSSION

### *A. Deliberative Process Privilege*

The bulk of documents at issue pertain to the deliberative process privilege. (See NHTSA Brief at 2–3; Plaintiffs Brief at 2.) NHTSA contends that 364 of these documents reflect "internal deliberations" regarding policies ("Category One"); 53 of these documents reflect deliberations regarding proposed media responses ("Category Two"); and 134 of these documents are drafts of documents that were ultimately publicly released ("Category Three"). (NHTSA Brief at 2–3.) Subrogation Plaintiffs respond that NHTSA does not sufficiently specify the nature of these decisions: "The Government's vagueness about decision-making and agency analysis dooms its invocation of the deliberative process privilege." (Plaintiffs Brief at 3.)

The modern deliberative process privilege stems from the fifth exemption of the Freedom of Information Act ("FOIA"), which allows administrative agencies to shield "inter-agency or intra-agency memorandums or letters . . . ." 5 U.S.C. § 552(b)(5). It exists to "prevent injury to the quality of agency decisions by ensuring that the frank discussion of legal or policy matters in writing, within the agency, is not inhibited by public disclosure." Maricopa Audubon Soc. v. U.S. Forest Serv., 108 F.3d 1089, 1092–93 (9th Cir. 1997) (internal citations and quotation marks omitted). "The deliberative process privilege has been held to cover all 'recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency,' as well as documents which would 'inaccurately reflect or prematurely disclose the views of the agency.'" Church of Scientology Int'l v. IRS, 845 F. Supp. 714, 723 (9th Cir. 1993) (quoting Nat'l Wildlife Fed'n v. U.S. Forest Serv., 861 F.2d 1114, 1118 (9th Cir. 1988)). In this case, the burden of establishing the deliberative process privilege falls on NHTSA. See Thomas v. Cate, 715 Supp. 2d 1012, 1019 (E.D. Cal. 2010).

The Supreme Court has held that "predecisional communications . . . are privileged" while "communications made after the decision and designed to explain it"

are not. NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975). Although the predecisional-versus-postdecisional line is "not always a bright one," this Circuit has maintained that "[t]he documents must be prepared to assist an agency decision-maker in arriving at a future particular decision . . . ." Id. at 151 n.19; Lahr v. Nat'l Transp. Safety Bd., 569 F.3d 964, 981 (9th Cir. 2009).

Subrogation Plaintiffs do not appear to argue that these documents are either *not* predecisional or *not* deliberative; rather, they contend the privilege is "[i]mproperly [i]nvoked" because NHTSA has not *shown* that they are predecisional and deliberative. (Plaintiffs Brief at 2.) On this point, Transgender L. Ctr. v. ICE ("TLC"), 46 F.4th 771 (9th Cir. 2022) is instructive. In TLC, an organization of activists submitted FOIA requests to two federal agencies seeking government records about the tragic death of a transgender woman who was in federal custody. Id. at 777–78. In response to the request, the agencies "withheld and redacted" various documents on grounds that, *inter alia*, these documents were "drafts" reflecting deliberative process. Id. at 783. However, the court held this was an insufficiently detailed explanation that did not properly invoke the privilege:

> ICE, for example, withheld a draft mortality review, simply stating in its Vaughn index that "this Preliminary report contains information pertaining to medical care and interviews of detention facility personnel." Yet such an explanation contains no references to any decision to which the document pertains. Likewise, the agencies withheld draft press statements without adequately explaining how they reveal a deliberative process. Government deliberations regarding how best to address public relations matters or possible responses to an inquiry received from an outside entity are not necessarily the type of policy decisions the privilege covers. In such instances, the Government failed to meet its burden of demonstrating predecisional status and deliberation.

Id.

Following the guidance of TLC and its predecessors, the Court finds that NHTSA met its burden to show that the documents in Category One and Category Three were predecisional and deliberative, but did not meet its burden with regard to Category Two.

1. Category One

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | May 5, 2026 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

Although NHTSA does not supply the reader with much information about the corresponding decision to which each document relates, it crucially identifies *a* corresponding decision or public-facing document for each Vaughn Index entry. For instance, consider the document described as "Email exchange dated April 23, 2024 between NHTSA staff planning and coordinating a response to a letter received by the agency from the Snohomish County Council." (Vaughn Index at 7, referencing Bates Nos. 865–69.) This email apparently did not even include a *draft* version of the response to the Snohomish City Council's letter, let alone anything actively decisional. In all likelihood, this email reflects one NHTSA employee informing another that the letter was sent, or perhaps sharing comments on the letter NHTSA received. Either way, it involves NHTSA's deliberation on the broader subject that would risk revealing "the personal opinions of the writer [of the email] rather than the policy of the agency." Nat'l Wildlife Fed'n., 861 F.2d at 1118. The 364 documents in Category One are privileged.

2. Category Three

As to Category Three, NHTSA likewise states the purpose of the draft with specificity. For example, it seeks to withhold drafts of the much-debated June 5, 2023 letter from Cem Hatipoglu to 18 state attorneys general ("Hatipoglu Letter") in response to their request for a recall of the Kia and Hyundai vehicles involved in this case. (See, e.g., Vaughn Index at 35, referencing Bates Nos. 3964–95; see also Official Hatipoglu Letter, Dkt. No. 1722-2.) As Subrogation Plaintiffs point out, NHTSA raises this objection no less than 40 times in its 69-page Vaughn Index. (See Plaintiffs Brief at 4; see generally Vaughn Index.) As the basis for its objection, NHTSA states:

> This document contains pre-decisional, deliberative information regarding NHTSA's response to States' AG for enforcement action. Disclosure of internal draft letters would chill NHTSA's work.

(See, e.g., Vaughn Index at 35.) NHTSA gives sufficient information on the topic. Unlike TLC, NHTSA did not passively affix the word "draft" onto a document and expect it to be privileged—it stated what the draft related to: a letter to 18 state attorneys general from Acting Associate Administrator for Enforcement Cem Hatipoglu. (Id.) The final version of the Hatipoglu Letter is not privileged, but its preceding drafts are. Moreover, the Court is unmoved by Subrogation Plaintiffs' contention that the Hatipoglu

Letter "is not a decision of the agency" because it "is not based on any official hearing, investigation, nor is it a final determination." (Plaintiffs Brief at 4.) Although the Court agrees that the Hatipoglu Letter itself was not a binding agency decision (see MSJ Order at 11; MIL Order at 6–13),[1] this does not overcome the objection. As referenced above, a deliberation is predecisional if it would "assist an agency decision-maker in arriving at a future particular decision . . . ." Lahr, 569 F.3d at 981. In other words, the draft need not be to the legally operative document of an agency's official decision in order to be privileged. Rather, the draft need only shed light on the agency's thought process regarding a pending decision. See United States Fish & Wildlife Serv. v. Sierra Club, Inc., 592 U.S. 261, 266 (2021) ("The deliberative process privilege shields documents that reflect an agency's preliminary thinking about a problem, as opposed to its final decision about it."). It would reveal this "preliminary thinking" here, displaying NHTSA's back-and-forth considerations about whether vehicles need an immobilizer to comply with FMVSS 114 or perhaps whether a recall of Subject Vehicles was warranted. The fact that there were over 40 different documents containing drafts of the Hatipoglu Letter only underscores the importance of the privilege in this instance. NHTSA faced a high-profile issue and apparently exchanged many thoughts on the matter before sending something public-facing. To give Subrogation Plaintiffs unfettered access to this deliberation would be a textbook violation of the deliberative process privilege. Thus, the 134 documents in Category Three are privileged.

3. Category Two

Category Two is more complicated. To summarize, these communications "encompass[] proposed media responses, including internal discussions between NHTSA staff regarding inquiries from media outlets and stakeholders and iterations of proposed inquiry responses." (Declaration of Kerry Kolodziej ["Kolodziej Decl."], Dkt. No. 1416-1 ¶ 16.)[2] Subrogation Plaintiffs respond that, again, the context of these documents is

---

[1] As of the filing of this order, the Court has not yet filed the finalized versions of either the MSJ Order or MIL Order. Thus, the precise pagination is subject to change based on the Court's edits. The finalized versions of each of these orders will be filed on the docket within the next week.

[2] Kerry Kolodziej ("Kolodziej") is the Acting Chief Counsel of the Office of the Chief Counsel at NHTSA. In its brief, NHTSA acknowledges that Kolodziej is not the "head" of NHTSA, but that she is nonetheless an "official of sufficient rank to assert the privilege." (NHTSA Brief at 4–5.) The D.C.

not set forth with sufficient specificity. (See Plaintiffs Brief at 4.) The Ninth Circuit has recently held that "Government 'deliberations regarding how best to address public relations matters or possible responses to an inquiry received from an outside entity' are not necessarily the type of policy decisions the [deliberative process] privilege covers." TLC, 46 F.4th at 783 (quoting Al Otro Lado, Inc. v. Wolf, 2020 WL 6449152, at *12–13 (S.D. Cal. Nov. 2, 2020)). With regard to media inquiries, jurisprudence draws the line at protecting "an agency's deliberations over policy or legal issues" from public scrutiny, but not at "Government secrecy pure and simple." Al Otro Lado, 2020 WL 6449152 at *4 (internal quotation marks omitted) (quoting Nat'l Immigr. L. Ctr. v. ICE, 2015 WL 12684437, at *9 (C.D. Cal. Dec. 11, 2015) and Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 9 (2001)). This time, Al Otro Lado is the instructive case.[3] There, the Government sought to "claw back" an inadvertently produced "group of email communications and other documents exchanged to develop a response to an inquiry from an outside entity." 2020 WL 6449152 at *4 (internal quotation marks omitted). Without more context corresponding to the inquiries and the potential decision to which they related, the court found that these documents were "not the type of policy decisions the privilege is intended to protect." Id.

The same is true here. NHTSA points to the documents at Bates Nos. 2695–702 as the typical example of Category Two documents: "Email string dated October 5, 2023 through October 24, 2023 regarding NHTSA staff's proposed responses to and thoughts on media inquiries on NHTSA regulations and policies surrounding anti-theft issues." (Kolodziej Decl. ¶ 16, Vaughn Index at 11.) As the basis for withholding these documents, NHTSA states the following:

> This email string contains pre-decisional, deliberative communications from NHTSA staff to other NHTSA staff, regarding NHTSA's response to a media

---

Circuit has recognized that an official of this level may be sufficient, and Subrogation Plaintiffs do not object on these grounds. See Landry v. FDIC, 204 F.3d 1125, 1135 (D.C. Cir. 2000) (see generally Plaintiffs Brief). Thus, as a procedural matter, the privilege is properly by Kolodziej, and the Court considers her declaration.

[3] Although Al Otro Lado is unpublished, its reasoning on this point is endorsed by the Ninth Circuit in TLC. See TLC, 46 F.4th at 783; see also Ecological Rts. Found. v. EPA, 607 F. Supp. 3d 979 (N.D. Cal. 2022), aff'd, 2023 WL 4342100 (9th Cir. July 5, 2023) (also citing Al Otro Lado on this topic).

> inquiry regarding NHTSA regulations and policies. Disclosure of deliberations and discussions between NHTSA staff regarding such inquiries would chill candid discussions between NHTSA officials.

(Vaughn Index at 11.) This is insufficiently detailed. NHTSA states neither the entities who were inquiring nor the policies the inquiry concerned. "Regulations and policies surrounding anti-theft issues" might refer to Federal Motor Vehicle Safety Standard ("FMVSS") 114—the critical NHTSA regulation in this case—or it might not. The reader has no way of knowing. In the face of the Ninth Circuit's recent reminder that agency responses to media inquiries are not automatically predecisional or deliberative, a greater showing is needed. See TLC, 46 F.4th at 783. Consequently, the documents at Bates Nos. 2695–702 and other documents that do not identify the specific recipient or policy the communications concerned are not privileged. (See, e.g., Vaughn Index at 36, Bates Nos. 4024–27; at 39, Bates Nos. 4103–40; at 40, Bates Nos. 4232–34; at 41, Bates Nos. 4586–4615 (examples of other documents that the Court holds are not privileged).)

Some of these documents are a closer call. At times, NHTSA does identify the entity that sent the media inquiry. (See, e.g., id. at 10–11, Bates Nos. 1193–1204, 1312.) For instance, NHTSA identifies the first of these Category Two objections involved correspondence with "9News KUSA in Denver, Colorado," as well as related internal communications. (Id. at 10, referencing Bates Nos. 1193–98.) Assuming that these communications reflect internal deliberations on policies, and that Subrogation Plaintiffs have access to the *final* draft of these inquiry responses, it is plausible that these documents were predecisional and deliberative. If 9News KUSA asked NHTSA whether it thought FMVSS 114 required immobilizers, and the related internal communications included an exchange of emails between agency officials debating this question that were later converted into a single, official answer, one could see how these emails would limit the ability of NHTSA employees to "freely [] explore possibilities, engage in internal debates, or play devil's advocate without fear of public scrutiny." Assembly of Cal. v. U.S. Dep't of Com., 968 F.2d 916, 920 (9th Cir. 1992).

However, the deliberative process privilege is not so generous. At bottom, it is *NHTSA's* responsibility to "adequately explain how" these communications "reveal a deliberative process." Ecological Rts. Found. v. EPA, 607 F. Supp. 3d 979 (N.D. Cal. 2022), aff'd, 2023 WL 4342100 (9th Cir. July 5, 2023). Even if the Court's above hypothetical is plausible, it is just that: a hypothetical. NHTSA had the burden of

showing that its communications regarding 9News KUSA involved predecisional and deliberative conversations, and it does not meet that burden. The same applies to the other Category Two communications that disclose the source of the inquiry. (See, e.g., Vaughn Index at 11, Bates No. 1312 (Chicago's NBC station); at 29, Bates Nos. 3545–50 (John Glasgow, 9News); at 32, Bates Nos. 3646–51 (Aaron Gordon, senior writer at VICE News).)

The 53 documents in Category Two are not privileged. NHTSA must produce them in full.

4. Whether Plaintiffs Can Overcome the Deliberative Process Privilege

As a fallback, Subrogation Plaintiffs close their deliberative process privilege argument with the following paragraph:

> Even if the deliberative process privilege could be used to as a ground to withhold responsive documents, Judge Andler's ruling on the motion to compel should be upheld and NHTSA should be ordered to comply with the Subrogation Plaintiffs' subpoena because the information withheld is relevant to this litigation, and the Subrogation Plaintiffs cannot access it through other means. The few documents that have been released concerning responses to public inquiries make clear that NHTSA was intimately involved in the issues that are relevant and pivotal to this litigation.

(Plaintiffs Brief at 4–5.) Because the Court has decided that Category One and Category Three are protected by the deliberative process privilege, it must now consider whether the privilege may be overcome by the needs of the case.

"Even if established, the privilege can be overcome because it is a qualified privilege; that is, a litigant may obtain deliberative materials or information if his or her need for the materials or information and the need for accurate fact-finding override the government's interest in non-disclosure." Martins v. ICE, 962 F. Supp. 2d 1106, 1122 (N.D. Cal. 2013). This analysis involves several considerations:

> In deciding whether the qualified deliberative process privilege should be overcome, a court may consider the following factors: (1) the relevance of the

> evidence; (2) the availability of other evidence, (3) the government's role in the litigation, and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions. Other factors that a court may consider include: (5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law.

N. Pacifica, LLC v. City of Pacifica, 274 F. Supp. 2d 1118, 1122 (N.D. Cal. 2003) (internal citations omitted) (citing United States v. Irvin, 127 F.R.D. 169, 173 (C.D. Cal. 1989)). Subrogation Plaintiffs do not address these factors explicitly. Instead, their main contention is that "NHTSA was ultimately involved in the issues that are relevant and pivotal to this litigation," thus "overrid[ing] the Government's vague, unsupported allegations of the deliberative process privilege." (Plaintiffs Brief at 5.)

To address Subrogation Plaintiffs directly, the Court does not find that NHTSA's deliberative process objections with regard to Categories One and Three are "vague" or "unsupported." Although some of the Pacifica / Irvin factors do favor Subrogation Plaintiffs here (i.e., relevance and the interest of the litigant), they do not outweigh NHTSA's important interest in protecting its deliberations on an issue that has invoked considerable public scrutiny. The Fourth Factor looms large here: a full release of the thousands of documents that Subrogation Plaintiffs seek would have significant implications for the agency, and the Court concludes it would undermine the purpose of the deliberative process privilege. See Assembly of Cal., 968 F.2d at 921 ("The underlying purpose of the deliberative process privilege is to ensure that agencies are not forced to operate in a fishbowl.")

The Court's decision as to Categories One and Three are unchanged by Subrogation Plaintiffs' fallback argument.

* * *

Accordingly, the Court **SUSTAINS** NHTSA's objections as to Category One and Category Three of the documents it claims are protected by the deliberative process privilege. However, it **OVERRULES** the objections related to the Category Two

documents. The production of these documents will be subject to a protective order, described below. (See infra, Section II.E.)

*B. Attorney-Client Privilege*

NHTSA next identifies 160 documents it fully or partially withheld on grounds of attorney-client privilege. (Kolodziej Decl. ¶ 8.) Subrogation Plaintiffs respond that this privilege, too, was "[i]mproperly [i]nvoked" because the Vaughn Index "contains a reference to NHTSA's office of chief counsel," but does not meet its burden that the communications contained attempts to obtain legal advice. (Plaintiffs Brief at 5–6.)

The Ninth Circuit applies an "eight-part test" to determine if the attorney-client privilege protects a communication:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

Greer v. County of San Diego, 127 F.4th 1216, 1224 (9th Cir. 2025) (quoting United States v. Graf, 610 F.3d 1148, 1156 (9th Cir. 2010)); see also Matter of Fischel, 557 F.2d 209, 211 (9th Cir. 1977) (in which the Ninth Circuit first discussed the elements of attorney-client privilege). "The burden is on the party asserting the privilege to establish all the elements of the privilege." United States v. Martin, 278 F.3d 988, 999–1000 (9th Cir. 2002). In deciding whether the moving party meets this burden, courts must be cognizant that "the attorney-client privilege is strictly construed" because "it impedes the full and free discovery of the truth . . . ." Weil v. Inv./Indicators, Rsch. & Mgmt., Inc., 647 F.2d 18, 24 (9th Cir. 1981). If the purpose of a communication is disputed, "the primary-purpose test applies to attorney-client privilege claims for dual-purpose communications." In re Grand Jury, 23 F.4th 1088, 1092 (9th Cir. 2021).

On its face, NHTSA's identified communications appear to meet these elements as a general matter. (See Kolodziej Decl. ¶¶ 20–21.) However, Subrogation Plaintiffs contend that these designations fall apart upon closer examination: "The repetitive entries in the Government's *Vaughn* index do not identify the lawyers involved, the

nature of the advice sought, or a reflect a request for confidentiality." (Plaintiffs Brief at 6.) The Court agrees with Subrogation Plaintiffs. The formula for each objection is identical: "This document contains attorney-client communications with counsel from NHTSA Office of Chief Counsel, regarding [topic]." (See, e.g., Vaughn Index at 5, referencing Bates No. 662; at 7, referencing Bates Nos. 732–38; at 17, referencing Bates Nos. 3023–27.) The blanket and boilerplate nature of these objections are "extremely disfavored." Martin, 278 F.3d at 1000 (quoting Clarke v. Am. Com. Nat'l Bank, 974 F.2d 127, 129 (9th Cir. 1992)). The only description that changes across the objections to all 160 documents is the topic to which the objection is regarding. As Subrogation Plaintiffs point out, NHTSA only identifies that the Office of Chief Counsel was *involved* in the communications, not that they sought legal advice. (See Plaintiffs Brief at 5–6.) The Court is left to wonder what the primary purpose of these communications even were; without more, it cannot assume the primary purpose was of each undetailed communication was to seek legal advice. Cf. In re Grand Jury, 23 F4th at 1092. After all, "a communication is not privileged simply because it is made by or to a person who happens to be a lawyer." Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir. 1977); accord Littlefield v. Nutribullet, LLC, 2017 WL 10438897, at *5 (C.D. Cal. Nov. 7, 2017) ("The mere fact that an attorney is involved in a communication does not automatically render the communication privileged."). NHTSA fails to establish that attorney-client privilege protects any of its communications.

As a practical note, this determination regarding attorney-client privilege may not actually lead to the production of more documents. As far as the Court can tell, the 160 documents claimed to be under attorney-client privilege are *also* subject to the objections the Court sustained under Categories One and Three of the deliberative process privilege. (See generally Vaughn Index.) Nevertheless, the parties deserve a ruling on this objection to facilitate discussion between them, and also in case one of these documents is *not* ultimately protected under this Court's ruling in Section II.A.

* * *

Accordingly, the Court **OVERRULES** NHTSA's objections related to attorney-client privilege.

*C. Confidential Commercial Information*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

Case No. 8:22-ml-03052-JVS-KES Date May 5, 2026

Title In Re: Kia Hyundai Vehicle Theft Litigation

NHTSA identified four documents as confidential commercial information that it could not produce. (NHTSA Brief at 3; see Vaughn Index at 67–69.) Subrogation Plaintiffs do not oppose these objections. (Plaintiffs Brief at 6.)

* * *

Accordingly, the Court **SUSTAINS** NHTSA's objections relating to confidential commercial information.

*D. Relevance*

Finally, NHTSA broadly objects to *any* further production of documents "as irrelevant to the Subrogation Plaintiffs' claims." (NHTSA Brief at 8–9.) Because this Court's decision only compels NHTSA to produce documents under Category Two of its deliberative process privilege objections ("Compelled Documents"), the Court analyzes the relevance of these documents alone.

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "[T]he Supreme Court has observed that the 'basic standard of relevance under the Federal Rules of Evidence is a liberal one." United States v. Babichenko, 601 F. Supp. 3d 876, 879 (D. Idaho 2022) (quoting Daubert v. Merrell Dow Pharms, Inc., 509 U.S. 579, 587 (1993)). Here, the Compelled Documents meet the liberal standard of relevance. NHTSA's communications with media outlets shed light on its positions regarding FMVSS 114 and the Kia Boyz thefts generally. Defendants have repeatedly argued—and will likely argue at trial—that NHTSA is on their side, and that it NHTSA has found that Subject Vehicles comply with all federal regulations. Thus, any information that reveals NHTSA's somewhat opaque opinions on these issues is relevant.

* * *

Accordingly, the Court **OVERRULES** NHTSA's relevance objections.

*E. Guidelines for Production*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 8:22-ml-03052-JVS-KES | Date | May 5, 2026 |
| Title | In Re: Kia Hyundai Vehicle Theft Litigation | | |

The Court hereby **ORDERS** that NHTSA produce, without redactions, the Compelled Documents. Because trial is near and NHTSA has already extensively reviewed this information, NHTSA shall complete these productions within ten (10) days of this Order.

Federal Rule of Civil Procedure 26(c) "gives district courts broad latitude to grant protective orders to prevent disclosure of materials for many types of information . . . ." Phillips ex rel. Ests. of Byrd v. Gen. Motors Corp., 307 F.3d 1206, 1211 (9th Cir. 2002). Although the Court overrules some of NHTSA's objections, it finds that a protective order best balances the interests of both the confidentiality of internal agency procedures and the right of Subrogation Plaintiffs to have relevant information at their disposal. Consequently, as necessary, NHTSA may designate Compelled Documents to be "confidential" or "highly confidential" (Attorneys' Eyes Only), precluding their disclosure outside this litigation.

## III. CONCLUSION

For the foregoing reasons, the Court **SUSTAINS-in-part** and **OVERRULES-in-part** NHTSA's objections, as outlined herein.

**IT IS SO ORDERED.**