FOR PUBLICATION

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| In Re: Kia Hyundai Vehicle Theft Marketing, Sales Practices, and Products Liability Litigation: Insurance Subrogation Appeal | No. 24-5219<br><br>D.C. No. 8:22-ml-03052-JVS-KES<br><br>OPINION |

Appeal from the United States District Court
for the Central District of California
James V. Selna, District Judge, Presiding

Argued and Submitted November 19, 2025
Pasadena, California

Filed September 14, 2026

Before: Kim McLane Wardlaw, Marsha S. Berzon, and
Eric D. Miller, Circuit Judges.

Opinion by Judge Miller

## SUMMARY*


### Personal Jurisdiction

The panel reversed the district court's dismissal of plaintiff insurance companies' complaint for lack of personal jurisdiction in a putative nationwide products-liability and consumer protection class action against Hyundai Motor Company and Kia Corporation, Korean vehicle manufacturers and their American subsidiaries.

This appeal involves subrogation claims of plaintiff insurance companies whose policyholders suffered losses from thefts or attempted thefts. They alleged that particular Hyundai and Kia vehicles from model years 2011 to 2022 were defectively designed because the lack of an engine immobilizer left them vulnerable to theft.

The panel held that the foreign manufacturers—the Korean entities—were subject to personal jurisdiction in California.

As a preliminary matter, the plaintiffs argued that the district court improperly weighed competing evidence in ruling on the motion to dismiss. Although plaintiffs alleged in their complaint that the Korean entities advertised vehicles and controlled aspects of the vehicles' distribution in the United States, defendants submitted declarations expressly contradicting those allegations. But plaintiffs did not contest the declarations except by pointing back to the allegations in their complaint. The panel held that the


* This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

district court correctly ignored plaintiffs' contradicted and unsupported allegations.

To determine whether plaintiffs' complaint was sufficient, at the pleading stage, to establish specific personal jurisdiction in California, the panel applied the three-part test for non-resident defendants.

First, the panel considered whether the Korean entities purposefully directed their activities toward California or purposefully availed themselves of the privileges of conducting activities there. The panel concluded that plaintiffs' complaint, taken as a whole, plausibly alleged that the Korean entities satisfied the purposeful availment and direction tests. Even though the Korean entities did not themselves sell the allegedly defective vehicles in California, they expressly aimed their intentional and allegedly tortious actions at California by sending thousands of shipments of vehicles to and through California's ports. In addition, the Korean entities' U.S.-specific design supported the conclusion that they purposefully directed the defective vehicles to California.

Second, the panel held that plaintiffs adequately alleged that their claims arose out of or were related to the Korean entities' California-related activities. Plaintiffs' claims arose out of the Korean entities' California contacts because plaintiffs' injuries were caused by the products that the Korean entities shipped to California. The panel did not consider whether the analysis of specific personal jurisdiction might be different for the state-law claims premised on the losses of insureds who were injured outside of California because defendants forfeited any such challenge on appeal.

Third, the panel considered whether the exercise of jurisdiction would be reasonable. Because plaintiffs' allegations were sufficient at the pleading stage to satisfy the first two parts of the specific jurisdiction test, the burden shifted to the Korean entities to present a compelling case that the exercise of jurisdiction was not reasonable. Because the district court did not consider the reasonableness of exercising personal jurisdiction over the Korean entities, and the parties did not brief that issue on appeal, the panel left it to the district court on remand to resolve that issue in the first instance.

---

## COUNSEL

Adam M. Romney (argued), William J. Hoffmann, and Susan M. Benson, Grotefeld Hoffmann LLP, Sherman Oaks, California; Elliott R. Feldman and Nathan M. Dooley, Cozen O'Connor, Philadelphia, Pennsylvania; Timothy E. Cary, Law Offices of Robert A. Stutman PC, Corona, California; Hal J. Kleinman, Law Offices of Robert A. Stutman PC, Fort Washington, Pennsylvania; for Plaintiff-Appellant.

Andrianna Kastanek (argued), Peter J. Brennan, and Michael T. Brody, Jenner & Block LLP, Chicago, Illinois; Edward Susolik, Callahan & Blaine APLC, Irvine, California; Shon Morgan and Steven G. Madison, Quinn Emanuel Urquhart & Sullivan LLP, Los Angeles, California; John D. Van Ackeren, Callahan & Blaine APLC, Santa Ana, California; Madeline P. Skitzki, Jenna L. Conwisar, Alice S. Kim, and Kate T. Spelman, Jenner & Block LLP, Los Angeles, California; Michael T. Brody, Jenner & Block LLP, Chicago, Illinois; for Defendants-Appellees.

## OPINION

MILLER, Circuit Judge:

In 2020, teenagers in Milwaukee calling themselves the "Kia Boyz" on social media platforms popularized a method for stealing certain Hyundai and Kia vehicles in a matter of seconds. The affected vehicles lacked an engine immobilizer, an anti-theft device that prevents a car from starting without an authorized key. As videos spread demonstrating how to bypass the vehicles' ignition system using only a screwdriver and a USB cable, thefts of Hyundai and Kia vehicles skyrocketed nationwide.

In a master complaint filed as part of multidistrict litigation consolidated before the Central District of California, insurance companies whose policyholders suffered losses from thefts or attempted thefts brought a putative nationwide products-liability and consumer-protection class action, including various state-specific subclasses, against the Korean vehicle manufacturers and their American subsidiaries. The insurers allege that particular Hyundai and Kia vehicles from model years 2011 to 2022 were defectively designed because the lack of an engine immobilizer left them vulnerable to theft. The question before us is whether the foreign manufacturers are subject to personal jurisdiction in California. We hold that they are, and we therefore reverse the district court's dismissal of plaintiffs' complaint for lack of personal jurisdiction.

### I

In the wake of the nationwide surge in thefts of the allegedly defective vehicles, several groups of plaintiffs filed

lawsuits in courts across the country against Kia and Hyundai. The proceedings were consolidated in a multidistrict litigation in the Central District of California, where the district court organized the proceedings into three tracks: subrogation claims, consumer claims, and claims brought by governmental entities. This appeal involves the subrogation claims.

The subrogation plaintiff class consists of approximately 200 insurance companies that paid claims to policyholders whose vehicles were stolen or damaged in thefts or attempted thefts. As subrogees to their insureds' rights, plaintiffs seek to recover the amounts they paid (and will pay) on those claims, as well as related expenses.

Defendants Hyundai Motor Company (HMC) and Kia Corporation (KC) (collectively, the Korean entities) are incorporated in the Republic of Korea and have their principal places of business there. They design and manufacture vehicles sold around the world under the Hyundai and Kia brands. HMC owns a 34 percent stake in KC, and Hyundai- and Kia-branded vehicles share many common components and design features. The Korean entities each have an American subsidiary: Hyundai Motor America (HMA), the distributor of Hyundai vehicles in the United States, and Kia America, Inc. (KA), the distributor of Kia vehicles in the United States.

In addition to suing the American subsidiaries, plaintiffs sued the Korean entities. The operative complaint asserts several causes of action, including claims for breach of express and implied warranties, violations of state consumer-protection statutes, fraud, unjust enrichment, and negligent failure to warn.

The complaint alleges that the Korean entities are subject to specific personal jurisdiction in California. As relevant to this appeal, plaintiffs highlight two contacts between the Korean entities and California. First, plaintiffs allege that the Korean entities sent thousands of shipments of vehicles through California ports for sale by the American subsidiaries. Second, plaintiffs allege that the Korean entities designed standard-model vehicles without engine-immobilizer technology specifically for the U.S. market—reserving the anti-theft equipment for cars with luxury trim packages—while those same standard Kia and Hyundai models included engine immobilizers in Canada and other foreign markets.

The Korean entities moved to dismiss for lack of personal jurisdiction. Plaintiffs opposed the motion to dismiss and submitted bills of lading supporting their allegations that the Korean entities had shipped vehicles into the United States through California ports. Plaintiffs contended that more than 70 percent of HMC's shipments to the United States and approximately 77 percent of KC's shipments to the United States were sent to California ports. Plaintiffs also moved for jurisdictional discovery to further develop the record on "Defendants' imports into California" and the "active steps the Defendants took to do business in California," among other subjects.

The Korean entities argued in reply that the "shipping records show nothing more than that HMC and KC placed vehicles into the stream of commerce in Korea that were then imported into California by U.S. entities" for wholesale distribution. They submitted declarations from the sales executives of their American subsidiaries explaining that the subsidiaries import vehicles from the Korean entities "FOB Origin" from Korea, meaning that "the buyer accepts the title

to the goods at the shipment point and assumes all risk once the seller ships the product." The declarations further explained that the American subsidiaries are responsible for the goods while in transit and are also responsible for all import procedures once the vehicles arrive in the United States. The American subsidiaries arrange "port vehicle inspections, processing, unloading, and transportation logistics."

The district court dismissed the claims against the Korean entities for lack of personal jurisdiction. The court concluded that the shipping records did not establish that the Korean entities had intentionally aimed their shipments to California, and that even if they did, plaintiffs failed to show that their claims arise from or relate to the Korean entities' California-related conduct. The district court also denied plaintiffs' request for leave for amend and plaintiffs' motion for jurisdictional discovery. The district court entered a final judgment under Federal Rule of Civil Procedure 54(b) dismissing the Korean entities from the subrogation track of the multidistrict litigation.

Plaintiffs appeal. We review de novo the district court's dismissal for lack of personal jurisdiction. *Briskin v. Shopify, Inc.*, 135 F.4th 739, 749–50 (9th Cir. 2025) (en banc).

## II

The service of a summons "establishes personal jurisdiction over a defendant . . . who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Fed. R. Civ. P. 4(k)(1)(A); *see Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). In California, state courts may exercise personal jurisdiction to the full extent permissible under the Fourteenth Amendment's Due Process

Clause. Cal. Civ. Proc. Code § 410.10 (West 2026); *see Schwarzenegger*, 374 F.3d at 800–01. The Due Process Clause permits the exercise of jurisdiction over a non-resident defendant only if the defendant has "minimum contacts" with the forum State such that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The defendant's contacts with the forum must make it foreseeable that the defendant may be "haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Personal jurisdiction can be either general or specific. General jurisdiction "extends to 'any and all claims' brought against a defendant," whether or not they "relate to the forum State or the defendant's activity there." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). A court may exercise general jurisdiction "only when a defendant is 'essentially at home' in the State"—for a corporate defendant, when it is incorporated in that State or has its principal place of business there. *Id.* (quoting *Goodyear*, 564 U.S. at 919). Plaintiffs do not argue that the Korean entities are subject to general personal jurisdiction in California. Thus, the only issue before us is whether California may exercise specific personal jurisdiction over the Korean entities.

We have articulated a three-part test for specific personal jurisdiction over non-resident defendants:

> (1) the defendant must either purposefully direct his activities toward the forum or purposefully avail himself of the privileges of

> conducting activities in the forum; (2) the claim must be one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Impossible Foods Inc. v. Impossible X LLC*, 80 F.4th 1079, 1086 (9th Cir. 2023) (quoting *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017)). The plaintiff has the burden of proving the first two elements. *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). If the plaintiff satisfies that burden, "the burden then shifts to the defendant to present a compelling case that the exercise of jurisdiction would not be reasonable." *Axiom Foods*, 874 F.3d at 1068–69 (internal quotation marks omitted) (quoting *Schwarzenegger*, 374 F.3d at 802).

III

As a preliminary matter, plaintiffs argue that the district court improperly weighed competing evidence in ruling on the motion to dismiss. In evaluating personal jurisdiction at this stage, the court must take uncontroverted allegations in the complaint as true. *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 502 (9th Cir. 2023). But the court "cannot 'assume the truth of allegations in a pleading which are contradicted by affidavit.'" *LNS Enters. LLC v. Continental Motors, Inc.*, 22 F.4th 852, 858 (9th Cir. 2022) (quoting *Data Disc, Inc. v. Systems Tech. Assocs., Inc.*, 557 F.2d 1280, 1284 (9th Cir. 1977)). "If both sides submit affidavits, then '[c]onflicts between the parties over statements contained in affidavits must be resolved in the plaintiff's favor.'" *Id.* (alteration in original) (quoting *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008)).

Although plaintiffs alleged in their complaint that the Korean entities advertised vehicles and controlled aspects of the vehicles' distribution in the United States, defendants submitted declarations expressly contradicting those allegations. Had plaintiffs filed declarations in response, then the district court would have been obligated to resolve the conflict in plaintiffs' favor in ruling on the motion to dismiss. *See LNS Enters.*, 22 F.4th at 858. But plaintiffs did not contest the declarations except by pointing back to the allegations in their complaint. The district court therefore correctly ignored plaintiffs' contradicted and unsupported allegations. *See Yamashita*, 62 F.4th at 502.

## IV

We now turn to whether plaintiffs' complaint was sufficient, at the pleading stage, to establish specific personal jurisdiction in California. We consider, first, whether the Korean entities purposefully directed their activities toward California or purposefully availed themselves of the privileges of conducting activities there; second, whether the plaintiffs' claims arise out of or relate to the Korean entities' California-related activities; and third, whether the exercise of jurisdiction would be reasonable. *See Impossible Foods*, 80 F.4th at 1086.

### A

The first part of the test for specific personal jurisdiction requires that the defendant "purposefully direct its activities toward the forum state, purposefully avail itself of the privileges of conducting activities there, or engage in 'some combination thereof.'" *Impossible Foods*, 80 F.4th at 1088 (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc)). For claims sounding in contract, we typically employ

a purposeful availment analysis, and for claims sounding in tort, we typically employ a purposeful direction analysis. *SuperTECH, Inc. v. My Choice Software, LLC*, 158 F.4th 1005, 1010–11 (9th Cir. 2025); *see also Impossible Foods*, 80 F.4th at 1088 (observing that we typically apply the purposeful direction test when "a defendant's conduct primarily occurs outside the forum state"). But "'our cases do not impose a rigid dividing line between' purposeful direction and purposeful availment." *Briskin*, 135 F.4th at 751 n.10 (quoting *Davis v. Cranfield Aerospace Sols., Ltd.*, 71 F.4th 1154, 1162 (9th Cir. 2023)). Because plaintiffs assert both contract and tort claims, we consider both analyses here.

"To satisfy purposeful availment, 'a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" *SuperTECH*, 158 F.4th at 1011 (quoting *Boschetto*, 539 F.3d at 1016). We examine whether the defendant "deliberately reached out beyond [its] home[]—by, for example, exploiting a market in the forum State or entering a contractual relationship centered there." *Yamashita*, 62 F.4th at 503 (quoting *Ford Motor Co.*, 592 U.S. at 359). A defendant's availment "must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Ford Motor Co.*, 592 U.S. at 359 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

Purposeful direction requires that the defendant commit an intentional act that is expressly aimed at the forum State and that causes harm that the defendant knows will be suffered in the forum State. *Briskin*, 135 F.4th at 751. Under our precedent, "[t]he placement of a product into the stream of commerce, without more, is not an act purposefully directed toward a forum state," even if the defendant is

"aware[] that the stream of commerce may or will sweep the product into the forum state." *Holland Am. Line Inc. v. Wärtsilä N. Am., Inc.*, 485 F.3d 450, 459 (9th Cir. 2007) (citing *Asahi Metal Indus. Co. v. Superior Ct.*, 480 U.S. 102, 112 (1987) (plurality opinion)). Instead, our approach—the "stream-of-commerce-plus test," *Yamashita*, 62 F.4th at 503—requires a defendant to "indicate an intent or purpose to serve the market in the forum State," *Asahi*, 480 U.S. at 112 (plurality opinion). The plurality in *Asahi* gave examples of kinds of conduct that indicate an intent or purpose to serve the market in the forum State. That conduct includes "designing the product for the market in the forum State, advertising in the forum State, establishing channels for providing regular advice to customers in the forum State, or marketing the product through a distributor who has agreed to serve as the sales agent in the forum State." *Id.* The Court has elsewhere recognized that "physical entry into the State—either by the defendant in person or through an agent, goods, mail, or some other means—is certainly a relevant contact" to the purposeful availment and direction analyses. *Walden v. Fiore*, 571 U.S. 277, 285 (2014).

We conclude that plaintiffs' complaint, taken as a whole, plausibly alleges that the Korean entities satisfy the purposeful availment and direction tests. Two allegations support our conclusion.

First, even though the Korean entities did not themselves sell the allegedly defective vehicles in California, they nevertheless "expressly aimed their intentional, and allegedly tortious, actions" at California by sending thousands of shipments of vehicles to and through California's ports. *Walden*, 571 U.S. at 288 n.7 (internal quotation marks omitted) (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984)). We held in *Yamashita* that "shipments to

and through" a port located in the forum State are a "sufficiently deliberate contact" to constitute purposeful availment because both shipper and consignee "rel[y] on the laws of [the forum] to protect their property while it [i]s located within its jurisdiction." 62 F.4th at 504. That is just what is alleged here.

The Korean entities characterize this aspect of the complaint as a pure stream-of-commerce theory. They emphasize that the cars were shipped "free on board origin"—that is, both title to the vehicles and any risk of loss passed to the American subsidiaries when the vehicles were loaded onto ships in Korea. But regardless of when title passed, it is undisputed that the Korean entities were listed as the shippers of record in the bills of lading identified by plaintiffs. And the declarations submitted by the Korean entities conspicuously do not deny that, as the shippers, they controlled where the vehicles were shipped. This is not a case in which a manufacturer sold goods to a distributor who then decided independently where to ship them. Nor is it a case in which plaintiffs seek to impute the conduct of the American subsidiaries to their foreign parent entities. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2017) (expressing uncertainty "on the question of agency theory's application to specific jurisdiction"). Rather, by placing the vehicles on ships bound for California ports, the Korean entities purposefully availed themselves of the forum and purposefully aimed their goods at California.

Second, the Korean entities' U.S.-specific design supports our conclusion that they purposefully directed the allegedly defective vehicles to California. Defendants argue that evidence showing that the Korean entities targeted the United States does not, standing alone, establish targeting of California because a defendant's "nationwide contacts" do

not demonstrate that the defendant "purposefully availed itself of the privilege of doing business" in the forum State. *LNS Enters.*, 22 F.4th at 862; *see also J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 886 (2011) (plurality opinion) (finding no purposeful availment where foreign manufacturer sold its goods through a nationwide distributor where there was no evidence that manufacturer singled out the forum state or otherwise directed activity there). Plaintiffs do not argue that the Korean entities' decision to manufacture cars without engine immobilizers was specifically designed to appeal to California customers, as distinct from consumers in other States.

We held in *Briskin*, however, that "differential targeting" or a "forum-specific focus" is not required. 135 F.4th at 757–58 (citation omitted). Instead, a defendant "'expressly aims' its wrongful conduct toward a forum state" when its contacts are sufficiently deliberate, "even if [defendant] cultivates a 'nationwide audience[] for commercial gain.'" *Id.* at 758 (first quoting *Ford Motor Co.*, 592 U.S. at 359; and then quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1230 (9th Cir. 2011)). Although that case dealt with Internet platforms, its logic applies with equal force to the facts here. As we recognized in *Briskin*, "requiring differential targeting would have the perverse effect of allowing a corporation to direct its activities toward all 50 states yet to escape specific personal jurisdiction in each of those states for claims arising from or relating to their relevant contacts in the forum state that injure that state's residents." *Id.* That conclusion accords with *Ford*'s gloss on *World-Wide Volkswagen*, in which the Court explained that

> [i]f the sale of a product of a manufacturer or distributor . . . is not simply an isolated

> occurrence, but arises from the efforts of the manufacturer or distributor to serve, directly or indirectly, the market for its product in [several or all] other States, it is not unreasonable to subject it to suit in one of those States if its allegedly defective merchandise has there been the source of injury to its owner or to others.

*Ford Motor Co.*, 592 U.S. at 363 (alteration in original) (quoting *World-Wide Volkswagen*, 444 U.S. at 297).

We do not suggest that the U.S.-specific design would by itself be sufficient to establish personal jurisdiction in California. But the combination of the Korean entities' shipments to California ports and U.S.-specific design demonstrates that defendants "purposefully 'reach[ed] out beyond' their" home to "'deliberately exploi[t]' a market in the forum State." *Walden*, 571 U.S. at 285 (first quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985); and then quoting *Keeton*, 465 U.S. at 781); *see also LNS Enters.*, 22 F.4th at 861 ("A corporation deliberately extends its business into a forum when it has 'continuously and deliberately exploited [a State's] market' for the corporation's products." (quoting *Ford Motor Co.*, 592 U.S. at 364)). Those contacts are not "random, isolated, or fortuitous," *Keeton*, 465 U.S. at 774, and they are sufficient to satisfy the first part of the personal jurisdiction test.

B

Plaintiffs have also adequately alleged that their claims arise out of or are related to the Korean entities' California contacts. *Ford Motor Co.*, 592 U.S. at 362. In conducting this second part of the specific personal jurisdiction inquiry,

"we consider the extent of the defendant's contacts with the forum and the degree to which the plaintiff's suit is related to those contacts." *Yahoo! Inc.*, 433 F.3d at 1210. "The 'arises out of' test requires the defendant's contacts with the forum to be a but-for cause of the plaintiff's claims." *Doe v. Deutsche Lufthansa AG*, 157 F.4th 1103, 1112 (9th Cir. 2025); *see also Ford Motor Co.*, 592 U.S. at 362; *Yamashita*, 62 F.4th at 506. The "relates to" test does not require a causal relationship but nevertheless demands a "close connection between contacts and injury." *Yamashita*, 62 F.4th at 506. For example, "a plaintiff's injury relates to a defendant's forum contacts if similar injuries will tend to be caused by those contacts" or "if the defendant should have foreseen the risk that its contacts might cause injuries like that of the plaintiff." *Id.* at 505–06. Because the "arises out of" test is satisfied here, we need not consider the "relates to" test.

Plaintiffs' claims arise out of the Korean entities' California contacts because plaintiffs' injuries were caused by the products that the Korean entities shipped to California. The complaint alleges that "HMC shipped over 7,500 shipments of vehicles and parts through California's ports for delivery and sale to California facilities" and that "KC initiated over 5,000 shipments of vehicles and parts through California's ports for delivery and sale to California facilities." As defendants acknowledged, the logical inference from those allegations is that "HMC and KC sold vehicles to HMA and KA in Korea, knowing that some of the vehicles could potentially end up in California" and that "Hyundai- and Kia-branded vehicles ended up in California and . . . some insureds were allegedly injured in California due to the alleged 'defect.'"

That inference distinguishes this case from *Yamashita*. There, we held that a plaintiff injured by a defective battery

in Hawaii failed to show that "his injuries arose out of any [forum] contacts" because, although he alleged that the defendants had shipped batteries to the port of Honolulu, he did "not allege that [the defendants] shipped the subject battery"—that is, the battery that injured him—"into the port of Honolulu." 62 F.4th at 506. Here, by contrast, the shipping records show that more than 70 percent of the vehicles the Korean entities shipped to the United States were shipped through California ports. It is therefore reasonable to infer that many of the allegedly defective vehicles at issue in this litigation were shipped to California ports before ending up in California, and thus that, as to those vehicles, plaintiffs' "claim[s] came about because of the defendant[s'] in-state conduct." *Ford Motor Co.*, 592 U.S. at 362. To the extent that the Korean entities' shipment of allegedly defective vehicles through California's ports is a but-for cause of the injuries to plaintiffs, the claims arise out of defendants' California contacts. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

Defendants have not argued that the "arises out of or relate to" analysis differs for the proposed nationwide class and the state-specific subclasses. *Cf. Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 265 (2017). Because defendants have forfeited any such challenge on appeal, we do not consider whether the analysis of specific personal jurisdiction might be different for the state-law claims premised on the losses of insureds who were injured outside of California.

## C

Because plaintiffs' allegations are sufficient at the pleading stage to satisfy the first two parts of the specific personal jurisdiction test, the burden shifts to the Korean

entities to "'present a compelling case' that the exercise of jurisdiction is not reasonable." *Briskin*, 135 F.4th at 761 (quoting *Schwarzenegger*, 374 F.3d at 802). We have held that courts should assess the reasonableness of exercising jurisdiction by weighing seven factors: (1) the extent of the defendant's purposeful interjection into the forum State's affairs; (2) the burden on the defendant of defending against litigation in the forum; (3) the extent of conflict with the sovereignty of the defendant's State; (4) the forum State's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Freestream Aircraft (Bermuda) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607–09 (9th Cir. 2018).

The district court did not consider the reasonableness of exercising personal jurisdiction over the Korean entities, and the parties have not briefed that issue on appeal. We leave it to the district court on remand to resolve that issue in the first instance. In light of our resolution of plaintiffs' arguments based on the present record, we need not consider whether the district court abused its discretion in denying jurisdictional discovery.

**REVERSED and REMANDED.**